**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, SOUTHWEST VOTER REGISTRATION EDUCATION PROJECT, MI FAMILIA VOTA, AMERICAN GI FORUM, LA UNION DEL PUEBLO ENTERO, MEXICAN AMERICAN BAR ASSOCIATION OF TEXAS, TEXAS HISPANICS ORGANIZED FOR POLITICAL EDUCATION, WILLIAM C. VELASQUEZ INSTITUTE, FIEL HOUSTON INC., TEXAS ASSOCIATION OF LATINO ADMINISTRATORS AND SUPERINTENDENTS, EMELDA MENENDEZ, GILBERTO MENENDEZ, JOSE OLIVARES, FLORINDA CHAVEZ, and JOEY CARDENAS, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | | Case No. 3:21-cv-259 |
| *Plaintiffs* | ) ) | |
| v. | ) ) | |
| GREG ABBOTT, in his official capacity as Governor of the State of Texas; JOSE A. ESPARZA, in his official capacity as Deputy Secretary of the State of Texas, | ) ) ) ) ) | |
| *Defendants*. | ) ) | |
| _____ | ) | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**I.**
**INTRODUCTION**

1.     Plaintiffs are individual registered voters and a coalition of organizations that seek--on

behalf of themselves and their members--declaratory and injunctive relief to enforce the

Fourteenth Amendment to the United States Constitution and the Voting Rights Act of 1965. Plaintiffs challenge the redistricting plans adopted by the Texas Legislature for the State House, State Senate, Congress and State Board of Education ("SBOE").

2.      The 2020 Census reported that Texas's population increased by 3,999,944 since 2010.  As a result, Texas is the only one of the fifty states to have been apportioned two additional seats in the U.S. House of Representatives.

3.      More dramatic were the demographic changes within Texas.  Over the past decade, Latinos constituted 50% of the population increase in Texas, and racial minorities comprised 95% of the population increase in Texas (including persons who identify as having more than one race).

4.      According to the U.S. Census, from 2010 to 2020, the Hispanic population in Texas increased by 1.98 million, and the White Non-Hispanic ("Anglo") population in Texas increased by 187,252.

5.      Based on recent demographic trends, the Texas State Data Center estimates that the Latino population of Texas will match the Anglo population in 2021.

6.      The 2020 Census also revealed that the current Texas House, Senate and congressional redistricting plans, which were ordered into effect by the court in *Perez v. Abbott*, No. 5:11-cv-00360 (W.D. Tex.) (the "*Perez* court") and used in the 2020 General Election,[1] do not reflect the population shifts that occurred during the last decade and are unconstitutionally malapportioned. The SBOE redistricting plan, enacted by Texas in 2011, is also unconstitutionally malapportioned.

7.      On October 15, 2021 and October 16, 2021, the 87th Texas Legislature approved

---

[1] The current redistricting plans are also known as H2100, S2100, C2100 and E2100 and are available on the website of the Texas Legislative Council at https://dvr.capitol.texas.gov/.

redistricting plans for the Texas House, Senate and SBOE.[2]  On October 17, 2021, a conference committee of the Texas House and Senate reported out a redistricting plan for Congress.

8.      Plaintiffs seek a declaratory judgment that the redistricting plans for the Texas House (Plan H2316), Senate (Plan S2168), SBOE (Plan E2106) and Congress (C2193) violate their civil rights because the plans unlawfully dilute the voting strength of Latinos.  Plaintiffs further seek a declaratory judgment that the challenged redistricting plans intentionally discriminate against them on the basis of race and national origin.  Plaintiffs seek a permanent injunction prohibiting the calling, holding, supervising, or certifying of any future Texas House, Senate, Congressional and SBOE elections under the challenged redistricting plans.  Plaintiffs further seek the creation of Texas House, Senate, Congressional and SBOE redistricting plans that will not cancel out, minimize or dilute the voting strength of Latino voters in Texas.  Finally, Plaintiffs seek costs and attorney's fees.

## II.
## JURISDICTION

9.      Jurisdiction is based upon 28 U.S.C. § 1343(3) & (4) and upon 28 U.S.C. § 1331 for causes of action arising from 52 U.S.C. §§ 10301 and 10304.  Jurisdiction for Plaintiffs' claim for declaratory relief is based upon 28 U.S.C. §§ 2201 and 2202.  Jurisdiction for Plaintiffs' claims under the Fourteenth Amendment to the U.S. Constitution is based upon 42 U.S.C. § 1983 and 28 U.S.C. § 1331.  Jurisdiction for Plaintiffs' claim for costs and attorney's fees is based upon 42 U.S.C. § 1988 and 52 U.S.C. § 10310(e).  Venue is proper in this Court under 28 U.S.C. 1391(b)

---

[2] The redistricting plans passed by the 87th Texas Legislature on October 15 and 16, 2021 are known as H2316, S2168 and E2106 and are available on the website of the Texas Legislative Council at https://dvr.capitol.texas.gov/.  The congressional redistricting plan reported out of conference committee on October 17, 2021 is known as C2193 and is available on the website of the Texas Legislative Council at https://dvr.capitol.texas.gov/.

(2) because a substantial part of the events and omissions giving rise to the claims in this case occurred in the Western District of Texas and in El Paso County.

### III.
### PLAINTIFFS

10.     The plaintiff organizations in this case are members of the Texas Latino Redistricting Task Force, an unincorporated association of individuals and organizations committed to securing fair redistricting plans for Texas.

11.     Plaintiff LEAGUE OF UNITED LATIN AMERICAN CITIZENS ("LULAC") is a national organization that works to advance the economic condition, educational attainment, political influence, housing, health and civil rights of Hispanic Americans through community-based programs operating at more than 1,000 LULAC councils nationwide.  LULAC is a membership organization, and members of LULAC reside throughout Texas.  LULAC members in Texas include:  Latino registered voters of Texas who are injured by the dilution of Latino voting strength statewide, and Latino registered voters of Texas who reside in districts that are overpopulated relative to other districts in the state and also districts whose boundaries dilute Latino voting strength.

12.     Plaintiff SOUTHWEST VOTER REGISTRATION EDUCATION PROJECT ("SVREP") is a non-profit and non-partisan organization committed to promoting and increasing the participation of Latinos and other minority communities in the democratic process through voter registration, voter education and voter participation activities.  SVREP conducts its activities with, among others: Latino registered voters of Texas who are injured by the dilution of Latino voting strength statewide, and Latino registered voters of Texas who reside in districts that are overpopulated relative to other districts in the state and also districts whose boundaries dilute Latino voting strength.

13.     Plaintiff MI FAMILIA VOTA is a national civic engagement organization that unites Latino, immigrant and allied communities to promote social and economic justice through citizenship workshops, voter registration and voter participation.  MI FAMILIA VOTA conducts its activities with, among others: Latino registered voters of Texas who are injured by the dilution of Latino voting strength statewide, and Latino registered voters of Texas who reside in districts that are overpopulated relative to other districts in the state and also districts whose boundaries dilute Latino voting strength.

14.     Plaintiff AMERICAN GI FORUM ("GI FORUM") is a veterans organization dedicated to addressing problems of discrimination and inequities endured by Hispanic veterans.  GI FORUM is a membership organization, and members of GI FORUM reside throughout Texas. Members of GI FORUM in Texas include: Latino registered voters of Texas who are injured by the dilution of Latino voting strength statewide, and Latino registered voters of Texas who reside in districts that are overpopulated relative to other districts in the state and also districts whose boundaries dilute Latino voting strength.

15.     Plaintiff LA UNIÓN DEL PUEBLO ENTERO ("LUPE") is a non-partisan membership organization founded by labor rights activists César Chávez and Dolores Huerta.  LUPE's mission is to build strong, healthy communities in the Texas Rio Grande Valley through community organizing and civic engagement.  LUPE is a membership organization, and members of LUPE reside primarily in the Rio Grande Valley of Texas.  Members of LUPE include: Latino registered voters of Texas who are injured by the dilution of Latino voting strength statewide, and Latino registered voters of Texas who reside in districts that are overpopulated relative to other districts in the state and also districts whose boundaries dilute Latino voting strength.

16.     Plaintiff MEXICAN AMERICAN BAR ASSOCIATION OF TEXAS ("MABA-TX") is a

professional association of Latino lawyers located in Texas.  The goals of MABA-TX include: to speak on behalf of the Latino community on legal issues affecting the community; to serve the Latino populace as a professional association by providing services, assistance and advice on matters of legal concern to the community; to preserve high standards of integrity, honor and professional courtesy among Latino lawyers; and utilize legislation, advocacy and education to accomplish these goals.  MABA-TX is a membership organization, and members of MABA-TX reside throughout Texas.  Members of MABA-TX include: Latino registered voters of Texas who are injured by the dilution of Latino voting strength statewide, and Latino registered voters of Texas who reside in districts that are overpopulated relative to other districts in the state and also districts whose boundaries dilute Latino voting strength.

17.     Plaintiff TEXAS HISPANICS ORGANIZED FOR POLITICAL EDUCATION ("TEXAS HOPE") is a non-profit organization that seeks to empower Latinos in Texas through civil engagement, civic education and outreach.  TEXAS HOPE's activities include voter registration of Latino citizens, Get-Out-The-Vote activities, poll watcher service, administering voter education workshops and legislative advocacy on issues important to the Latino community, including education, voting rights, immigrants' rights, healthcare and housing.  TEXAS HOPE is a membership organization, and members of TEXAS HOPE reside throughout Texas.  Members of TEXAS HOPE include: Latino registered voters of Texas who are injured by the dilution of Latino voting strength statewide, and Latino registered voters of Texas who reside in districts that are overpopulated relative to other districts in the state and also districts whose boundaries dilute Latino voting strength.

18.     Plaintiff WILLIAM C. VELASQUEZ INSTITUTE ("WCVI") is a non-profit and non-partisan public policy analysis organization that conducts research to improve the level of political

and economic participation in Latino and other underrepresented communities. WCVI uses its research to provide information relevant to the needs of its constituents to Latino community leaders, including political behavior and opinions of Latinos and the impact of public policies on Latinos. WCVI serves with its research and analysis, among others: Latino registered voters of Texas who are injured by the dilution of Latino voting strength statewide, and Latino registered voters of Texas who reside in districts that are overpopulated relative to other districts in the state and also districts whose boundaries dilute Latino voting strength.

19.     Plaintiff FIEL Houston Inc. ("FIEL") is a non-profit, non-partisan membership organization in Houston, Texas. FIEL is an immigrant-led organization that advocates for just laws for immigrant youth and their families, including access to higher education for all people regardless of immigration status and access to justice for the community. FIEL believes in the American Dream as a fundamental principle on which they can build and better the lives of all people in the United States. FIEL believes in social justice and in civic participation to make things happen. FIEL is a membership organization, and members of FIEL reside primarily in Houston, Texas. FIEL members include: Latino registered voters of Texas who are injured by the dilution of Latino voting strength statewide, and Latino registered voters of Texas who reside in districts that are overpopulated relative to other districts in the state and also districts whose boundaries dilute Latino voting strength.

20.     Plaintiff TEXAS ASSOCIATION OF LATINO ADMINISTRATORS AND SUPERINTENDENTS ("TALAS") is a non-profit organization that advocates for Latino learners' and leaders' growth and advancement in Texas. TALAS provides leadership development, collective impact, advocacy and a proactive voice for Latino and non-Latino leaders passionate about serving the fastest-growing student population in Texas. TALAS is a membership

organization, and members of TALAS reside throughout Texas.  Members of TALAS in Texas include: Latino registered voters of Texas who are injured by the dilution of Latino voting strength statewide, and Latino registered voters of Texas who reside in districts that are overpopulated relative to other districts in the state and also districts whose boundaries dilute Latino voting strength.

21.     Plaintiff Emelda Menendez is Latina and a registered voter of Texas.  She resides in San Antonio, Texas.  In Plans H2316, S2168, C2193 and E2106, Plaintiff E. Menendez resides in Texas House District 120, Senate District 19, Congressional District 28 and SBOE District 2.

22.     Plaintiff Gilberto Menendez is Latino and a registered voter of Texas.  He resides in San Antonio, Texas.  In Plans H2316, S2168, C2193 and E2106, Plaintiff G. Menendez resides in Texas House District 120, Senate District 19, Congressional District 28 and SBOE District 2.

23.     Plaintiff Jose Olivares is Latino and a registered voter of Texas.  He resides in Corpus Christi, Texas.  In Plans H2316, S2168, C2193 and E2106, Plaintiff Olivares resides in Texas House District 49, Senate District 27, Congressional District 27 and SBOE District 2.

24.     Plaintiff Florinda Chavez is Latina and a registered voter of Texas.  She resides in Austin, Texas.  In Plans H2316, S2168, C2193 and E2106, Plaintiff Chavez resides in Texas House District 49, Senate District 21, Congressional District 37 and SBOE District 5.

25.     Plaintiff Joey Cardenas is Latino and a registered voter of Texas.  He resides in Louise, Texas.  In Plans H2316, S2168, C2193 and E2106, Plaintiff Cardenas resides in Texas House District 85, Senate District 17, Congressional District 22 and SBOE District 2.

26.     The dilution of Latino voting strength statewide in Plans H2316, S2168, C2193 and E2106 has injured all plaintiffs, including members of plaintiff organizations.  The dilution of Latino voting strength in individual districts in Plans H2316, S2168, C2193 and E2106 has injured

plaintiffs who reside and vote in those individual districts, including members of plaintiff organizations.

27.     In addition to being malapportioned, the redistricting maps currently in effect for the Texas House, Senate, congressional and SBOE districts injure all plaintiffs by diluting Latino voting strength.  If the 2022 elections are held under the redistricting maps currently in place, Plaintiffs will be injured by having their votes diluted by malapportionment.

## IV.
## DEFENDANTS

28.     Defendant GREGORY W. ("Greg") ABBOTT is the Governor of Texas, and pursuant to Article IV, Section I of the Texas Constitution, is the chief executive officer of the State of Texas. He is sued in his official capacity.

29.     Defendant JOSE A. ESPARZA is the Deputy Secretary of State of Texas.  Because the Office of the Secretary of State of Texas is currently vacant, Esparza, in his official capacity, is currently responsible for overseeing the conduct of elections within Texas.[3]  He is sued in his official capacity.

## V.
## FACTS

**A.     Background**

30.     On March 12, 2020, the U.S. Census Bureau commenced the 2020 Census.  The following day, President Donald J. Trump declared the global pandemic COVID-19 a national emergency. As a result of the COVID-19 pandemic, the Census Bureau suspended field operations until July 2020.   Despite U.S. Commerce Department Secretary Wilbur Ross's initial support of an extension, the Census Bureau ended its door-to-door operations on October 15, 2020.

---

[3] Tex. Elec. Code § 31.001(a); Tex. Gov't Code § 405.004.

31.     On April 26, 2021, the U.S. Secretary of Commerce delivered the 2020 Census state population counts to the President for the purpose of apportioning the seats in the U.S. House of Representatives.[4]   On August 12, 2021, the U.S. Secretary of Commerce published the Texas redistricting data file.[5]

32.     The U.S. Secretary of Commerce released the Texas redistricting data more than ten weeks after the Texas Legislature's 87th Regular Session adjourned *sine die* on May 31, 2021.   The redistricting data revealed that the Texas House, Senate, congressional and SBOE districts used in the 2020 election were malapportioned and needed to be redrawn.

33.     On September 7, 2021, Defendant Abbott called a special session of the Texas Legislature to address redistricting.   That special session began on September 20, 2021.   Following a highly compressed legislative process characterized by departures from normal procedure and substantive considerations, on October 15 and 16, 2021, the Legislature passed redistricting plans for the Texas House (Plan H2316), Senate (Plan S2168) and SBOE (Plan E2106); on October 17, 2021, a conference committee of the Texas House and Senate reported out a redistricting plan for Congress (Plan C2193).

**B.     Texas's 2020 House, Senate, Congressional and SBOE Maps**

34.     Texas's congressional and state legislative maps used in the 2020 election were drawn to remedy findings of minority vote dilution in the previous redistricting cycle.   *See Abbott v. Perez*, 138 S. Ct. 2305, 2316–17, 2330 (2018).

---

[4] U.S. Census Bureau, "2020 Census Apportionment Results Delivered to the President," available at https://www.census.gov/newsroom/press-releases/2021/2020-census-apportionment-results.html (last visited October 14, 2021).
[5] U.S. Census Bureau, "2020 Census Statistics Highlight Local Population Changes and Nation's Racial and Ethnic Diversity- U.S. Census Bureau Delivers Data for States to Begin Redistricting Efforts ," available at https://www.census.gov/newsroom/press-releases/2021/population-changes-nations-diversity.html (last visited October 14, 2021).

35.     In 2011, Texas enacted Texas House, Senate and SBOE redistricting plans during the 82nd Legislature's regular session.  In a subsequent special session that same year, the Legislature adopted a congressional redistricting plan.  At that time, Texas was required to obtain preclearance under Section 5 of the Voting Rights Act of 1965 before it could implement its redistricting plans; only the enacted SBOE redistricting plan received preclearance and went into effect for the 2012 election.

36.     When Texas failed to secure preclearance for its House, Senate and congressional redistricting plans, the *Perez* court created interim maps for the 2012 election.  In those maps, the *Perez* court redrew certain districts pursuant to instructions from the U.S. Supreme Court.  Both the congressional remedial plan and the plan for the Texas House departed significantly from the State's 2011 plans.  At least 8 of the 36 congressional districts and 21 districts in the plan for the Texas House were changed.  *Id.* at 2316.  In 2017, following trial, the *Perez* court concluded that the 2011 State House and congressional plans unlawfully diluted minority voting strength and intentionally discriminated against minority voters.

37.     In 2013, Texas enacted the Court's interim remedial plans, with some changes to the Texas House plan.  Following another trial, the *Perez* court concluded that one of those changes by Texas, to House District 90, was an unconstitutional racial gerrymander.  The U.S. Supreme Court affirmed that ruling, *id.* at 2334–35, and the *Perez* court redrew House District 90 in May 2019 to remedy the constitutional violation.

38.     Thus, as recently as 2019, a federal court redrew Texas district boundaries to cure racial discrimination.  Nevertheless, history repeated itself in the Texas Legislature in 2021.

**C.     Results of the 2020 Census**

39.     According to the 2020 Census, the total population of Texas is 29,145,505.  That figure

11

represents a significant increase from a decade ago, when the 2010 Census reported a total population of 25,145,561. Texas experienced the third-largest percent increase in the population of any state in the United States, and it is the only state to gain two congressional seats in the 2020 congressional apportionment. Beginning with the 2022 election, Texas voters will elect 38 members to the United States House of Representatives.

40.     According to the 2020 Census, the Latino population of Texas is 11,441,717. Latinos constituted 50% of the total population growth in Texas between 2010 and 2020. Latinos are now 39.3% of Texas's population, and Anglos are now 39.7% of the state's population (a decrease from 45.3% a decade ago). The Latino citizen voting age population of Texas is 30% of the total citizen voting age population.

41.     The pattern of strong Latino population growth relative to Anglo population growth was consistent across the state: in Bexar County, the Latino population increased by 184,000, and the Anglo population increased by only 16,609; in Dallas County, the Latino population increased by 151,895, and the Anglo population decreased by 59,706; and in Harris County, the Latino population increased by 363,169, and the Anglo population decreased by 40,053.

42.     In the new redistricting maps, the ideal population is: 194,303 for a State House district; 940,178 for a State Senate district; 766,987 for a congressional district; and 1,943,034 for an SBOE district.

**D.      The Legislature adopts new redistricting plans during a special session called by Defendant Abbott.**

43.     The Texas Legislature convened its 87th Regular Session on January 12, 2021, and adjourned *sine die* on May 31, 2021. The Legislature did not enact redistricting plans during this time because the Census Bureau had not yet released the redistricting data file for Texas.

44.     The U.S. Secretary of Commerce published the redistricting data file for Texas on August

12, 2021, more than ten weeks after the Legislature's 87th Regular Session.

45.     On August 31, 2021, in its second special session, the 87th Texas Legislature passed Senate Bill 1, a controversial new law that prohibits certain voting methods adopted during the COVID-19 pandemic (such as 24-hour and drive-thru voting), increases requirements for assisting limited English proficient and disabled voters, and prohibits certain assistance to mail voters.

46.     On September 7, 2021, Defendant Abbott announced a third special session of the 87th Texas Legislature to address redistricting.  The third special session began on September 20, 2021.

**Texas House Plan**

47.     On September 30, 2021, Texas Representative Todd Hunter filed House Bill 1, a redistricting plan for the Texas House. The presiding officer referred the bill to the House Redistricting Committee the same day.

48.     After the committee held a public hearing on House Bill 1 on October 4, 2021, the next day Representative Hunter introduced a committee substitute for the bill, and the committee voted out the bill the same day.  The committee did not hold a hearing on the substitute bill before voting it out of committee; as a result, there was no opportunity for public testimony on the substitute bill.

49.     On October 12, 2021, the full House heard House Bill 1 on second reading.  On October 13, 2021, the Texas House passed House Bill 1 on the third reading and reported the bill to the Senate.  On October 15, 2021, the Senate Special Committee on Redistricting held a public hearing on House Bill 1 and voted the bill out of committee.  The full Senate passed House Bill 1 that same day and adopted Plan H2316.

**Texas Senate and SBOE Plans**

50.     On September 18, 2021, Texas Senator Joan Huffman filed Senate Bill 4, a redistricting

plan for the Texas Senate.

51.     On September 20, 2021, Senator Huffman filed Senate Bill 7, a redistricting plan for the SBOE. That same day, the lieutenant governor referred Senate Bills 4 and 7 to the Senate Special Committee on Redistricting, and the committee issued a hearing notice for both bills for September 24, 2021.

52.     However, the evening before the committee held its hearing, Senator Huffman filed a committee substitute for Senate Bill 4.   As a result, most witnesses were deprived of the opportunity to analyze the committee substitute and modify their testimony before the hearing the following day.

53.     On September 24 and 25, 2021, the Senate Special Committee on Redistricting held a public hearing on both bills.  The committee voted out both bills on September 28, 2021.

54.     On October 4, 2021, the Texas Senate passed both bills.

55.     On October 11, 2021, the House Redistricting Committee held a public hearing on both bills, and that same day, the committee voted out both bills.   On October 15, 2021, the full House passed Senate Bills 4 and 7, adopting Plans S2168 and E2106, respectively.

**Congressional Plan**

56.     On September 27, 2021, Senator Huffman filed Senate Bill 6, a redistricting plan for congressional districts, and the lieutenant governor referred the bill to the Senate Special Committee on Redistricting.

57.     On September 30, 2021, the Senate Special Committee on Redistricting held a public hearing on Senate Bill 6 and left it pending.  On October 4, 2021, the Senate Special Committee on Redistricting held a public hearing on committee amendments for Senate Bill 6 and voted out

14

a committee substitute. On October 8, 2021, the full Senate passed Senate Bill 6. That same day, the House received the bill, and the presiding officer referred it to the House Redistricting Committee.

58.     On October 13, 2021, the House Redistricting Committee held a public hearing on the bill and voted it out that same day.

59.     On October 16, 2021, the full House adopted several amendments to Senate Bill 6 and passed the bill on the second reading.

60.     On October 17, 2021, the House passed the amended version of Senate Bill 6 on the third reading, and the Senate refused to concur with the amendments. That same day, Senate Bill 6 was referred to a conference committee, and the Senate and House appointed conferees.

61.     On October 17, 2021, the Senate and House conference committee met and reported out Plan C2193.

**E.     The Legislature departed from its normal procedures and failed to consider substantive factors important in redistricting.**

62.     The 87th Texas Legislature's adoption of Plans H2316, S2168, C2193 and E2106 included departures from normal procedures and departures from substantive considerations usually considered important by the Legislature in redistricting.

63.     For example, both the Texas House Redistricting Committee and the Senate Special Committee on Redistricting offered little advance notice of their hearings on the redistricting bills. On the night before the hearing of the Senate Special Committee on Redistricting on the proposed Senate map, Senator Huffman, the Senate Redistricting Committee Chair, released a committee substitute for Senate Bill 4, and the next day the committee held a hearing on the committee substitute. The House Redistricting Committee held a public hearing on the Texas House redistricting map on October 4, 2021 but on October 5, 2021, Representative Hunter, the House

Redistricting Committee Chair, introduced a committee substitute for House Bill 1 and took no public testimony.  The committee voted out the committee substitute within 15 minutes.  On October 12, 2021, the House Redistricting Committee provided only 24-hour notice for a public hearing on the proposed congressional redistricting map and allowed only 12 hours for the public to register for virtual testimony. On October 16, 2021, the full House adopted several amendments to the proposed congressional redistricting map and provided no opportunity for public input on the amendments.

64.     Statements from the House and Senate committee chairs reveal departures from the normal and required substantive standards during the redistricting process.  For example, Senator Joan Huffman, who authored the State Senate and SBOE maps and chairs the Senate Redistricting Committee, told lawmakers and the public that the maps were "drawn blind to race."[6]

65.     Similarly, State Representative Todd Hunter, who authored the State House map and chairs the House Redistricting Committee, told lawmakers and the public that the House map created and evaluated majority-minority districts based on voting age population, instead of citizen voting age population, because citizen voting age population data is "not the same [as those] based on census numbers."[7]

66.     Throughout the process, members of the Legislature, civil rights advocates and community members warned the legislative leadership that the proposed plans violated minority voting rights but the Legislature did not cure the identified deficiencies.

**Texas House Plan**

---

[6] Associated Press, "Texas GOP advances new maps that would tighten slipping grip," October 17, 2021, available at https://apnews.com/article/austin-texas-race-and-ethnicity-racial-injustice-elections-4a40e921b8cec9449e24ed5adc637d87
[7] Texas Tribune, "Texas House committee advances proposed map for lower chamber," October 5, 2021, available at https://www.texastribune.org/2021/10/05/texas-house-redistricting-committee-map/

67.     During its hearing on October 4, 2021, the Texas House Redistricting Committee failed to allow any invited testimony, which provides an opportunity for a legislative committee to hear from experts in the field.  Additionally, at the beginning of the hearing, Committee Chair Representative Todd Hunter announced that the committee would vote the bill out at the end of the hearing, which foreclosed any possibility that the committee would reevaluate the plan or make changes based on witness testimony.

68.     Chair Hunter also limited his bill layout for House Bill 1 to one hour and did not allow committee members to ask him questions during the bill layout.  Instead, Chair Hunter told committee members that they could submit written questions to him and that he would respond to them either after the hearing or on the House floor.

69.     On October 5, 2021, the House Redistricting Committee reconvened for 15 minutes. During that time, Chair Hunter introduced a committee substitute for House Bill 1 but did not allow any testimony.  The committee voted out the substitute bill at the end of the hearing.

70.     On October 13, 2021, the House passed House Bill 1.  The House sent the bill to the Senate that same day, and the lieutenant governor referred the bill to the Senate Special Committee on Redistricting.  On October 15, 2021, the Senate Special Committee on Redistricting held a public hearing on House Bill 1.  The hearing lasted less than one hour, and the committee voted out the bill at the end of the hearing.

71.     The Senate then suspended a rule for the regular order of business, voting out House Bill 1 the same day.

**Texas Senate and SBOE Plans**

72.     On September 20, 2021, the Senate Special Committee on Redistricting issued a hearing notice for Senate Bills 4 and 7, setting a hearing on both bills for September 24, 2021.

73.     Senator Huffman filed a substitute for Senate Bill 4 on September 23, 2021, the night before the hearing.

74.     On September 24 and 25, 2021, the Senate Special Committee on Redistricting held a public hearing on Senate Bill 7 and the committee substitute for Senate Bill 4.  The committee voted out both bills on September 28, 2021.

75.     On October 4, 2021, the full Senate voted to suspend the printing rule for Senate Bills 4 and 7.  That same day, the Senate passed both bills on the second and third readings.

76.     On October 11, 2021, the House Redistricting Committee held a public hearing on Senate Bills 4 and 7.  The committee did not allow for invited testimony on either bill during the hearing, and Committee Chair Hunter limited his bill layout time for each bill to 30 minutes.  At the beginning of the hearing, Chair Hunter announced that the committee would vote out both bills at the end of the hearing, and any introduced committee amendments would occur during the hearing.

77.     Chair Hunter's announcements changed normal procedure.  Typically, committees do not hear and vote on bills on the same day, and votes for introduced amendments are set for a later time.  The normal procedure gives the committee members sufficient time to review the amendments before voting on them and the bill.  Thus, because of these changes in procedures, committee members and the public lacked time to review sufficiently the bills and any proposed amendments.

78.     That same day, the committee voted out both bills.

**Congressional Plan**

79.     On October 12, 2021, the House Redistricting Committee issued a notice for a public hearing on Senate Bill 6, setting the hearing for the very next day.  The committee thus gave only 24 hours notice of the hearing.  The committee also provided only 12 hours for the public to register

to give virtual testimony at the hearing.

80.     At the public hearing on October 13, 2021, Chair Hunter limited the bill layout to just one hour.  At the beginning of the hearing, Chair Hunter announced that the committee would vote out the bill at the end of the hearing and that it would not consider committee amendments until after public testimony.  The committee did not allow invited testimony.  That same day, the committee voted out the bill.

**F.      The Newly Adopted Maps Dilute the Voting Strength of Latinos**

81.     Latinos in Texas--including the areas in which Latino-majority Texas House, Texas Senate, congressional and SBOE districts can be created--are politically cohesive.

82.     Anglos in Texas vote sufficiently as a bloc to enable them--in the absence of special circumstances, such as a Latino candidate running unopposed-- usually to defeat the Latino voters' preferred candidates, including the areas in which Latino majority Texas House, Texas Senate, congressional and SBOE districts can be created.

83.     Plans H2316, S2168, C2193 and E2106 interact with social and historical conditions to cause an inequality in the opportunity of Latino voters to elect representatives of their choice as compared to Anglo voters.  Because these factors are present, Plans H2316, S2168, C2193 and E2106 have the effect of diluting Latino voting strength statewide and in specific districts.

84.     Plans H2316, S2168, C2193 and E2106 also discriminate against Latino voters statewide, and in specific districts, by intentionally manipulating district boundaries to reduce Latino voting strength and by making improper and excessive use of race in redistricting.

**Texas House Representatives Plan**

85.     In the current (also referred to herein as the "benchmark") House plan, which contains 150 House districts, 33 districts contain a majority Latino citizen voting age population ("CVAP").

86. Newly-adopted Plan H2316 reduces the number of Latino CVAP majority districts. In Plan H2316, 30 House districts contain a majority Latino CVAP.

87. The Latino population of Texas is sufficiently numerous and geographically compact to constitute the majority of the CVAP in more than 30 Texas House districts.

88. For example, although the Harris County Latino population has increased by 363,169 people over the past decade, Plan H2316 fails to add any Latino majority House district there.

89. Despite the dramatic growth of the Latino population in Texas since 2010, the failure of Plan H2316 to create at least one additional Latino majority House district statewide means that Latinos have lost voting strength in Texas.

90. In addition to failing to create additional Latino majority districts to reflect Latino population growth in Texas, Plan H2316 weakens existing Latino majority districts. For example, Plan H2316 moves House District 76--currently a Latino majority district--from El Paso County to Fort Bend County. In doing so, Plan H2316 reduces the Latino CVAP to well below 50% in House District 76.

91. Plan H2316 also weakens Latino voting strength in House District 118 in Bexar County while simultaneously increasing Latino voting strength in nearby House Districts 117 and 124, two existing Latino opportunity districts in the county. Plan H2316 weakens House District 118 by manipulating population into and out of House District 117, 118 and 124 based on race.

92. Plan H2316 also creates a total, or "top to bottom," deviation of 9.98% by overpopulating Latino majority districts and underpopulating Anglo majority districts to avoid drawing new Latino majority districts. The systematic overpopulation of Latino majority districts dilutes Latino voting strength in the State House plan.

**Texas Senate Plan**

93.     The benchmark Senate plan contains 31 Senate districts, seven of which contain a majority Latino CVAP.  Plan S2168 maintains the same number of Senate districts that contain a majority Latino CVAP.

94.     The Latino population of Texas is sufficiently numerous and geographically compact to comprise the majority of the CVAP in at least 9 Senate districts.

95.     Despite the dramatic growth of the Latino population in Texas since 2010, the failure of Plan S2168 to create additional Latino majority Senate districts means that Latinos have lost voting strength in Texas.

**SBOE Plan**

96.     The benchmark SBOE plan contains 15 SBOE districts, three of which contain a majority Latino CVAP.  Plan E2106 maintains the same number of SBOE districts with a majority Latino CVAP.

97.     The Latino population of Texas is sufficiently numerous and geographically compact to comprise the majority of the CVAP in at least 4 SBOE districts.

98.     Despite the dramatic growth of the Latino population in Texas since 2010, the failure of Plan E2106 to create an additional Latino majority SBOE district means that Latinos have lost voting strength in Texas.

99.     Additionally, Plan E2106 weakens Latino voting strength in SBOE District 3--a district in South Texas--by manipulating precincts into and out of SBOE District 3 based on race.

**Congressional Plan**

100.    The benchmark congressional plan contains a total of 36 congressional districts, eight of which contain a majority Latino CVAP.  Plan C2193 contains a total of 38 congressional districts, seven of which contain a majority Latino citizen voting age population.

101.     The significant growth of the Latino population in Texas since 2010 allowed Texas to gain one, if not both, of its two new congressional districts.  Despite the growth of the Latino population over the past decade, Plan C2193 dilutes Latino voting strength by failing to create any additional Latino CVAP majority congressional districts.

102.     The Latino population of Texas is sufficiently numerous and geographically compact to comprise the majority of the CVAP in at least two additional congressional districts.

103.     In addition to failing to create additional Latino majority districts to reflect Latino population growth in Texas, C2193 weakens existing Latino majority districts.

104.     For example, in South Texas, Plan C2193 weakens Latino voting strength in Congressional District 15 by intentionally "packing" Latino voters into neighboring Congressional District 34. Plan C2193 also weakens the Latino voting strength in Congressional District 23.  Defendants accomplish the weakening of both districts by manipulating precincts into and out of the districts based on race.

## VI.
## CAUSES OF ACTION

### COUNT 1

*Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution*
*(racial discrimination)*

105.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

106.     Texas House Plan H2316, Senate Plan S2168, Congressional Plan C2193 and SBOE Plan E2106 discriminate against Plaintiffs on the basis of race and national origin in violation of the 14th Amendment to the U.S. Constitution.

### COUNT 2

*Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution*
*(unconstitutional population deviations)*

107.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

108.     The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution "requires that the seats in both houses of a bicameral state legislature [] be apportioned on a population basis." *Reynolds v. Sims*, 377 U.S. 533, 568 (1964).

109.     In light of the significant population shifts that have occurred in Texas since the 2010 Census, Texas's current State House (H2100), State Senate (S2100), congressional (C2100) and SBOE (E2100) redistricting plans – which were drawn based on 2010 Census data – are unconstitutionally malapportioned.   Any future use of Texas's current state legislative, congressional and SBOE redistricting plans would violate the Plaintiffs' constitutional right to an undiluted vote.

110.     In addition, the Texas House Plan H2316 has a total or "top to bottom" deviation of 9.98%. Defendants achieved this deviation by overpopulating Latino majority districts and underpopulating Anglo majority districts to avoid drawing new Latino majority districts and minimize Latino voters' opportunity to participate in the political process.   There is no legal justification for maintaining a deviation of 9.98% when it has such an adverse impact on Latino voting strength.   This 9.98% deviation violates the one person, one vote principle of the Fourteenth Amendment of the United States Constitution.

## COUNT 3

*Section 2 of the Voting Rights Act*

111.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

112.     Texas House Plan H2316, Senate Plan S2168, Congressional Plan C2193 and SBOE Plan E2106 result in a denial or abridgment of the right to vote of individual plaintiffs and organizational plaintiffs' members on account of their race, color or ethnicity by having the intent and effect of

canceling out or minimizing their voting strength as Latinos in Texas. Texas House Plan H2316, Senate Plan S2168, Congressional Plan C2193 and SBOE Plan E2106 do not afford individual plaintiffs and organizational plaintiffs' members an equal opportunity to participate in the political process and to elect representatives of their choice, and deny individual plaintiffs and organizational plaintiffs' members the right to vote in elections without distinction of race, color or previous condition of servitude in violation of 52 U.S.C. §§ 10301 and 10304.

## VII.
## REQUEST FOR THREE JUDGE COURT

113.    Plaintiffs request a three-judge trial court pursuant to 28 U.S.C. § 2284.

## VIII.
## ATTORNEY'S FEES

114.    In accordance with 42 U.S.C. § 1988 and 52 U.S.C. § 10310(e), Plaintiffs are entitled to recover reasonable attorney's fees, expenses and costs.

## IX.
## PRAYER

115.    WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that this Court:

(a)    assume jurisdiction of this action and request a three-judge panel pursuant to 28 U.S.C. § 2284;

(b)    issue a declaratory judgment finding that the Texas House Plan H2316, Senate Plan S2168, Congressional Plan C2193 and SBOE Plan E2106 illegally and unconstitutionally dilute the voting strength of Latino voters in Texas and are unlawful, null and void;

(c)    issue a declaratory judgment finding that the Texas House Plan H2100, Senate Plan S2100, Congressional Plan C2100 and SBOE Plan E2100 are unconstitutionally malapportioned and cannot be used for future elections;

(d)    permanently enjoin Defendants from calling, holding, supervising or certifying any

elections under Texas House Plan H2316, Senate Plan S2168, Congressional Plan C2193 and SBOE Plan E2106.  Plaintiffs have no adequate remedy at law other than the judicial relief sought herein, and unless the Defendants are enjoined from using Texas House Plan H2316, Senate Plan S2168, Congressional Plan C2193 and SBOE Plan E2106, individual plaintiffs and organizational plaintiffs' members will be irreparably harmed by the continued violation of their statutory and constitutional rights;

(e)      set a reasonable deadline for state authorities to enact or adopt redistricting plans for Texas House, Senate, Congress and SBOE that do not dilute, cancel out or minimize the voting strength of Latino voters;

(f)      if state authorities fail to enact or adopt valid redistricting plans by the Court's deadline, order new redistricting plans for Texas House, Senate, Congress and SBOE that do not dilute, cancel out or minimize the voting strength of Latino voters;

(g)      adjudge all costs against Defendants, including reasonable attorney's fees;

(h)      retain jurisdiction to render any and all further orders that this Court may; and

(i)      grant any and all further relief to which Plaintiffs may show themselves to be entitled.

DATED: October 18, 2021                    Respectfully submitted,

MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND

*/s/ Nina Perales*
Nina Perales
Texas Bar No. 24005046
Samantha Serna
Texas Bar No. 24090888
Fatima Menendez*
Texas Bar No. 24090260
Kenneth Parreno*
Massachusetts Bar No. 705747
110 Broadway, Suite 300

San Antonio, TX 78205
(210) 224-5476
FAX (210) 224-5382

*Application for admission *pro hac vice*
forthcoming

## **Certificate of Service**

The undersigned counsel hereby certifies that she has electronically submitted for filing a true and correct copy of the above and foregoing in accordance with the Electronic Case Files System of the Western District of Texas on the 18th day of October 2021.

*/s/ Nina Perales*
Nina Perales