IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, ET AL., | § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § § | Case No. 3:21-cv-259-DCG-JES-JVB |
| GREG ABBOTT, GOVERNOR OF THE STATE OF TEXAS SUED IN HIS OFFICIAL CAPACITY; AND JOHN SCOTT, SECRETARY OF STATE OF TEXAS OF TEXAS SUED IN HIS OFFICIAL CAPACITY, | § § § § § § § | |
| *Defendants*. | § § | |

**DEFENDANTS' PARTIALLY OPPOSED MOTION TO CONSOLIDATE**

## TABLE OF CONTENTS

Table of Contents ............................................................................................................................................ii

Table of Authorities ...................................................................................................................................... iii

Introduction .....................................................................................................................................................1

Background ......................................................................................................................................................2

Argument ..........................................................................................................................................................4

    I.   The First-to-File-Rule Supports Consolidation in This Court ......................................................4

    II.   Rule 42 Supports Consolidation in This Court ...............................................................................6

        A.   The Actions Were Filed in the Same Court .............................................................................7

        B.   The Actions Involve Substantially Similar Parties ..................................................................7

        C.   The Actions Involve Nearly Identical Issues ...........................................................................8

        D.   There is Little Risk of Confusion if the Cases are Consolidated, but Great Risk of Prejudice from Inconsistent Adjudications if They are Not ....................................................................8

        E.   Consolidation Will Conserve Judicial Resources .....................................................................9

        F.   The Actions are at an Early Stage of Development ............................................................. 10

Conclusion .................................................................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Armour v. Ohio*,
  925 F.2d 987, 988 (6th Cir. 1991) (en banc) ...................................................................... 8

*Brooks v. Abbott*,
  No. 1:21-cv-991-LY-JES-JVB (W.D. Tex.) ........................................................................ 3

*Brown v. Fort Hood Fam. Hous. LP*,
  No. 5:20-cv-704, 2020 WL 10758046, at *2 (W.D. Tex. Sept. 25, 2020) .......................... 7

*Dryshod Int'l, LLC v. Haas Outdoors, Inc.*,
  No. 1:18-cv-596, 2019 WL 5149860, at *2 (W.D. Tex. Jan. 18, 2019) ............................. 8

*Dupont v. S. Pac. Co.*,
  366 F.2d 193, 196 (5th Cir. 1966) ...................................................................................... 9

*Frazier v. Garrison Indep. Sch. Dist.*,
  980 F.2d 1514, 1531–32 (5th Cir. 1993) ......................................................................... 7, 9

*Gentry v. Smith*,
  487 F.2d 571, 581 (5th Cir. 1973) ...................................................................................... 6

*Gutierrez v. Abbott*,
  No. 1:21-cv-769-RP-JES-JVB (W.D. Tex.) ........................................................................ 1

*Hart v. Donostia LLC*,
  290 F. Supp. 3d 627, 632 (W.D. Tex. 2018) ...................................................................... 5

*Holmes v. City of San Antonio*,
  No. 5:21-cv-274, 2021 WL 2878551, at *1 (W.D. Tex. Mar. 30, 2021) ....................... 7, 10

*Intertrust Techs. Corp. v. Cinemark Holdings, Inc.*,
  No. 2:19-cv-266, 2020 WL 6479562, at *7 (E.D. Tex. Sept. 30, 2020) ............................. 6

*Jine v. OTA Corp.*,
  No. 8:20-cv-1152, 2020 WL 7129374, at *13–14 (C.D. Cal. Sept. 11, 2020) ................... 9

*John T. Morris v. Texas*,
  No. 4:21-cv-3456 (S.D. Tex. Oct. 20, 2021) ...................................................................... 1

*Lay v. Spectrum Clubs, Inc.*,
  No. 5:12-cv-754, 2013 WL 788080, at *2–3 (W.D. Tex. Mar. 1, 2013) ....................... 8, 10

*LeGrand v. N.Y. Transit Auth.*,
   No. 1:95-cv-333, 1999 WL 342286, at *5 (E.D.N.Y. May 26, 1999)...................................................9

*Lester v. Exxon Mobil Corp.*,
   879 F.3d 582, 592 (5th Cir. 2018) ...............................................................................................10

*MALC v. Texas*,
   No. 1:21-cv-988-RP-JES-JVB (W.D. Tex.) ...................................................................................3

*Mann Mfg. Inc. v. Hortex, Inc.*,
   429 F.2d 403, 408 n.6 (5th Cir. 1971) ................................................................................... 5, 6, 7

*Mills v. Beech Aircraft Corp.*,
   886 F.2d 758, 762 (5th Cir. 1989) ..................................................................................................7

*Netlist, Inc. v. SK Hynix Inc.*,
   No. 6:20-cv-194, 2021 WL 2954095, at *2 (W.D. Tex. Feb. 2, 2021).............................................6

*Page v. Bartels*,
   248 F.3d 175, 190 (4th Cir. 2001) .............................................................................................. 5, 8

*Perez v. Texas*,
   No. 5:11-cv-360-OLG-JES-XR (W.D. Tex. July 6, 2011) ............................................................10

*Samarto v. Keller Williams Realty, Inc.*,
   No. 1:21-cv-76, 2021 WL 3596303, at *2–3 (W.D. Tex. Apr. 27, 2021) .........................................7

*Save Power Ltd. v. Syntek Fin. Corp.*,
   121 F.3d 947, 948 (5th Cir. 1997) .............................................................................................. 5, 6

*Settles v. United States*,
   No. 17-cv-1272, 2018 WL 5733195, at *2 (W.D. Tex. May 18, 2018) .........................................10

*Sutter Corp. v. P&P Indus., Inc.*,
   125 F.3d 914, 917 (5th Cir. 1997) .......................................................................................... 4, 5, 6

*Texas v. United States*,
   No. 6:21-cv-16, 2021 WL 3171958, at *2 (S.D. Tex. July 26, 2021) ..............................................7

*TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*,
   91 F.3d 1, 4 (1st Cir.1996)) ............................................................................................................5

*Voto Latino v. Scott*,
   No. 1:21-cv-965-RP-JES-JVB (W.D. Tex.) ...................................................................................3

*Wilson v. Texas*,
   No. 1:21-cv-943-RP-JES-JVB (W.D. Tex.) ...................................................................................2

*Wion v. Dretke*,
    No. 7:05-cv-146, 2006 WL 8441507, at *2 (W.D. Tex. July 14, 2006) .................................................7

*Yeti-Coolers, LLC v. Beavertail Prods., LLC*,
    No. 1:15-cv-415, 2015 WL 4759297, at *1–2 (W.D. Tex. Aug. 12, 2015) .................................... 4, 9

**Other Authorities**

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2382 (5th ed. 2019) .................7

**INTRODUCTION**

There are five federal-court redistricting cases filed in the Western District challenging the new districts for the Texas House of Representatives, Senate, congressional delegation, and State Board of Education ("SBOE"). The cases overlap significantly and present a real risk of inconsistent injunctions. For these reasons and those that follow, the four actions listed below should be consolidated into this action pursuant to the first-to-file rule and Federal Rule of Civil Procedure 42.

Defendants Greg Abbott and John Scott[1] recently moved to consolidate these cases into a case pending in the Austin Division of the Western District of Texas, *Gutierrez v. Abbott*.[2] That motion was denied because *Gutierrez* case was "not the proper anchor for any redistricting cases that have been brought in regard to the Texas Legislature's 2021 statewide redistricting." *Gutierrez*, No. 1:21-cv-769-RP-JES-JVB, ECF 27 at 1 (W.D. Tex. Nov. 9, 2021) (Ex. A). Unlike the other redistricting plaintiffs, the *Gutierrez* plaintiffs challenge the *old* electoral districts and allege that the new maps are unlawful because the Texas Legislature lacked authority to pass them.[3] For this reason, the court explained, the *Gutierrez* complaint "is not a typical redistricting complaint addressing newly-enacted lines for an upcoming election cycle." *Id.* The court specifically noted, however, that its ruling was "without prejudice to any party, in this or any other of the pending three-judge redistricting cases, to seek or suggest consolidation" or other appropriate relief. *Id.* at 2.

In light of the *Gutierrez* panel's ruling, this case is "the proper anchor for any redistricting cases that have been brought in regard to the Texas Legislature's 2021 statewide redistricting." *Id.* at 1. It includes challenges to each of the State's four new maps, and it is the first-filed case to challenge any of the new maps under federal law.

---

[1] The Secretary of State is automatically substituted for the Deputy Secretary of State pursuant to Rule 25(d).

[2] Defendants recently learned of a seventh federal redistricting lawsuit filed in the Southern District, *John T. Morris v. Texas*, No. 4:21-cv-3456, ECF 1 (S.D. Tex. Oct. 20, 2021) (Ex. B). Defendants intend to seek consolidation of that case, but do not include it in this motion because they must first seek transfer from the Southern District.

[3] *See* Original Complaint, *Gutierrez*, No. 1:21-cv-769-RP-JES-JVB, ECF 1 at ¶¶ 12–36 (W.D. Tex. Sept. 1, 2021) (Ex. C).

Because redistricting plaintiffs ask for court-drawn maps, the risk of inconsistent relief is too great to allow cases attacking the same maps to proceed independently. These cases must be consolidated in some fashion, and consolidation into this case is the most practical option on the table.

## BACKGROUND

As demonstrated below, the five Western District redistricting cases are substantially similar.

**Table 1. Summary of Current Federal Redistricting Lawsuits.**

| Case | Number | Date Field | District | Division |
| --- | --- | --- | --- | --- |
| *LULAC v. Abbott* | No. 3:21-cv-259 | 10/18/21 | Western | El Paso |
| *Wilson v. Texas* | No. 1:21-cv-943 | 10/18/21 | Western | Austin |
| *Voto Latino v. Scott* | No. 1:21-cv-965 | 10/25/21 | Western | Austin |
| *MALC v. Texas* | No. 1:21-cv-988 | 11/03/21 | Western | Austin |
| *Brooks v. Abbott* | No. 1:21-cv-991 | 11/03/21 | Western | Austin |

*LULAC v. Abbott.* LULAC and other organizations and individuals sue Governor Abbott and Secretary Scott, challenging Texas's House, Senate, congressional, and SBOE maps. They allege that those maps discriminate against Latino Texans and are malapportioned in violation of the Fourteenth Amendment and that they dilute Latino voting strength in violation of Section 2 of the Voting Rights Act ("VRA"). They ask the Court to prohibit operation of those maps, "set a reasonable deadline" for the Legislature to pass new maps, and if it does not, implement court-drawn maps. *See* ECF 1 ¶¶ 105–12, 115. This case is assigned to Judges Guaderrama, Smith, and Brown.

*Wilson v. Texas.*[4] Damon James Wilson sues the State of Texas, Governor Abbott, Secretary Scott, Speaker Phelan, and Lieutenant Governor Patrick, challenging Texas's congressional map. He alleges that the map designates state prisoners, like himself, as residents of the district where they are

---

[4] Original Complaint, No. 1:21-cv-943-RP-JES-JVB, ECF 1 (W.D. Tex. Oct. 18, 2021) (Ex. D).

incarcerated. He contends that state prisoners are entitled to be designated as residents of the district they lived in prior to incarceration, and that Texas's policy denies him equal representation in violation of the Fourteenth Amendment, and that the congressional districts are malapportioned. Wilson asks the court to prohibit operation of the congressional map, for the Legislature to pass new maps, and if it does not, for the panel to implement court-drawn maps. See Ex. D at 5–12, 18–19. This case is assigned to Judges Pitman, Smith, and Brown.

*Voto Latino v. Scott.*[5] Voto Latino and several individuals sue Secretary Scott and Governor Abbott, challenging Texas's congressional map. Specifying several districts, they allege those districts dilute the voting strength of Black and Latino Texans in violation of Section 2 of the Voting Rights Act. They request that the congressional map be prohibited from operating and replaced with a court-drawn map. Ex. E at ¶¶ 127–36, pp. 32–33. This case is assigned to Judges Pitman, Smith, and Brown.

*MALC v. Texas.*[6] MALC sues the State of Texas, Governor Abbott, and Secretary Scott, challenging Texas's House, congressional, and SBOE maps. Specifying districts in those maps, MALC alleges that they discriminate against Latinos. They bring claims for racial gerrymandering, intentional discrimination, and malapportionment in violation of the Fourteenth and Fifteenth Amendments, and vote dilution under Section 2 of the VRA. They ask the court to prohibit operation of those maps, "set a reasonable deadline" for the Legislature to pass new maps, and if it does not, implement court-drawn maps. Ex. F at ¶¶ 231–41, pp. 52–54. This case is assigned to Judges Pitman, Smith, and Brown.

*Brooks v. Abbott.*[7] Roy Brooks and other individuals sue Governor Abbott and Secretary Scott, challenging the Senate map. They allege SD 10 discriminates against Black and Latino Texans and constitutes intentional discrimination in violation of the Fourteenth and Fifteenth Amendments, and

---

[5] Original Complaint, No. 1:21-cv-965-RP-JES-JVB, ECF 1 (W.D. Tex. Oct. 25, 2021) (Ex. E).
[6] Original Complaint, No. 1:21-cv-988-RP-JES-JVB, ECF 1 (W.D. Tex. Nov. 3, 2021) (Ex. F).
[7] Original Complaint, No. 1:21-cv-991-LY-JES-JVB, ECF 1 (W.D. Tex. Nov. 3, 2021) (Ex. G).

Section 2 of the VRA, and vote dilution under Section 2. They ask the court to prohibit operation of that map, "set a reasonable deadline" for the Legislature to redraw it, and if not, implement court-drawn maps. Ex. G at ¶¶ 94–109, pp. 27–29. This case is assigned to Judges Yeakel, Smith, and Brown.

## ARGUMENT

The litigation of the 2021 reapportionment of Texas's electoral districts is just beginning but accelerating rapidly. These cases require uniformity. Otherwise, Defendants could be forced to defend the same redistricting maps, involving similar challenges in multiple courts with different panels. Further, based on the remedies sought by the various plaintiffs, Defendants could face conflicting injunctions implementing conflicting court-drawn maps. And these five lawsuits are not likely to be the last ones filed in federal court. To avoid this dilemma, Defendants respectfully request that the Court grant their Motion to Consolidate and allow all five redistricting cases to proceed together.

**I.    The First-to-File-Rule Supports Consolidation in This Court**

As explained above, and as informed by the *Gutierrez* court's decision, this case is the first-filed case "for purposes of deciding questions of consolidation and transfer" for the traditional redistricting lawsuits pending in federal court. Ex. A at 2. Of the federal cases that challenge Texas's new electoral districts, this case was filed first.[8] It thus falls to this Court to determine to proper course of action.

The Fifth Circuit's first-to-file rule applies when parties file substantially similar lawsuits. *See Yeti-Coolers, LLC v. Beavertail Prods., LLC*, No. 1:15-cv-415, 2015 WL 4759297, at *1–2 (W.D. Tex. Aug. 12, 2015). The rule is designed "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Sutter Corp. v. P&P Indus., Inc.*, 125 F.3d 914, 917 (5th Cir. 1997) (quotation omitted).

For the rule to apply, the cases need only "overlap on the substantive issues," and do not need

---

[8] To avoid confusion, Defendants note that this case and *Wilson v. Texas* were filed on the same day. But examination of the filing-fee-receipt numbers in each case demonstrates that this case (receipt number 0542-15344799) was filed before *Wilson* (receipt number 0542-15346532).

4

to be identical. *See Mann Mfg. Inc. v. Hortex, Inc.*, 429 F.2d 403, 408 n.6 (5th Cir. 1971). If "the overlap between two suits is less than complete, the judgment is made case by case, based on such factors as the extent of overlap," and the "likelihood of conflict." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 948 (5th Cir. 1997) (quoting *TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir.1996)).

The first-to-file rule "not only determines which court may decide the merits of substantially similar cases, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated." *Sutter*, 125 F.3d at 917. Thus, the consolidation issue is properly before this Court, not the courts presiding over the other actions.

These cases overlap on all pertinent issues. Most importantly, they ask for the same relief: for the court to prohibit operation of the current electoral maps and implement court-drawn ones. ECF 1 at 24–25; Ex. D at 18–19; Ex. E at 32–33; Ex. F at 52–53; Ex. G at 27–28. Thus, allowing the cases to proceed separately could result in five panels drawing three different congressional, and two House, Senate, and SBOE maps. That would impermissibly subject Defendants to inconsistent obligations. Consolidation is particularly appropriate where "a conflicting ruling could arise." *Hart v. Donostia LLC*, 290 F. Supp. 3d 627, 632 (W.D. Tex. 2018). Only then can the first-to-file rule serve its purpose: to "avoid piecemeal resolution of issues that call for a uniform result." *Sutter*, 125 F.3d at 917.

Moreover, the substantive legal challenges in each case are closely related because they all bring redistricting claims. *See* ECF 1 ¶¶ 105–12; Ex. D at 10–14; Ex. E ¶¶ 127–36; Ex. F ¶¶ 231–41; Ex. G ¶¶ 94–109. Regardless of whether a redistricting claim is based on vote dilution, intentional race discrimination, or malapportionment, the essence is the same: that a State drew its electoral maps such they violate an individual's voting rights. As explained by the Fourth Circuit, "it is clear that questions regarding the legitimacy of an apportionment scheme, whether under the Constitution or under the Voting Rights Act of 1965, are intimately related." *Page v. Bartels*, 248 F.3d 175, 190 (4th Cir. 2001).

These cases also involve similar parties. In each, the plaintiffs are individuals challenging the

apportionment of their districts or organizations purporting to bring the same challenge on behalf of their constituents. And in all five cases, Governor Abbott and Secretary Scott are named as defendants. *See* ECF 1 ¶¶ 10–29; Ex. D at 2–5; Ex. E ¶¶ 14–30; Ex. F ¶¶ 1–5; Ex. G ¶¶ 8–17.

Because these five "cases are . . . very similar, efficiency concerns dictate that only one court decide both cases." *Netlist, Inc. v. SK Hynix Inc.*, No. 6:20-cv-194, 2021 WL 2954095, at *2 (W.D. Tex. Feb. 2, 2021) (quotation omitted). True, they are not literally identical, but consolidation under the first-to-file rule "does not . . . require that cases be identical." *Save Power Ltd.,* 121 F.3d at 950. "The crucial inquiry is one of substantial overlap." *Id.* Defendants have met that standard here.

In short, the first-to-file rule provides that where two cases "overlap on the substantive issues," they should "typically" be "consolidated in . . . the jurisdiction first seized of the issues." *Sutter*, 125 F.3d at 917 (quoting *Mann*, 439 F.2d at 408 n.6). In that circumstance, consolidation in "the first-filed action is preferred." *Intertrust Techs. Corp. v. Cinemark Holdings, Inc.*, No. 2:19-cv-266, 2020 WL 6479562, at *7 (E.D. Tex. Sept. 30, 2020) (quotation omitted). These cases overlap on all meaningful substantive issues, and should therefore be consolidated in this Court under the first-to-file rule.

## II.     Rule 42 Supports Consolidation in This Court

Rule 42(a) of the Federal Rules of Civil Procedure gives an additional basis for consolidation. It provides that a court may consolidate two or more related actions if they involve "a common question of law or fact." These cases satisfy that threshold requirement. Most notably, they involve the exact same remedial question: If, in fact, a court *should* draw an interim remedial map, *how* should it do so? There are numerous other overlapping issues, including the effect of the population growth from 2010 to 2020 on Texas demographics and redistricting and whether the four new maps are valid.

Once that threshold condition is satisfied, consolidation is discretionary, but "[i]n this Circuit, district judges have been urged to make good use of Rule 42(a) . . . to expedite the trial and eliminate unnecessary repetition." *Gentry v. Smith*, 487 F.2d 571, 581 (5th Cir. 1973) (quotation omitted).

Whether to consolidate is guided by five factors:

(1) [W]hether the actions are pending in the same court; (2) whether there are common parties; (3) whether there are common questions of law or fact; (4) whether there is risk of prejudice or confusion versus a risk of inconsistent adjudications if the cases are tried separately; and (5) whether consolidation will promote judicial economy.

*Holmes v. City of San Antonio*, No. 5:21-cv-274, 2021 WL 2878551, at *1 (W.D. Tex. Mar. 30, 2021) (citing *Frazier v. Garrison Indep. Sch. Dist.*, 980 F.2d 1514, 1531–32 (5th Cir. 1993)). Courts also consider whether the cases are at "different stages of preparedness for trial." *Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 762 (5th Cir. 1989). Here, each factor favors consolidation.

### A. The Actions Were Filed in the Same Court

The first factor asks whether the actions were filed before the same court. Cases from different districts may not be consolidated, but instead must first be transferred to the home district. *See* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2382 (5th ed. 2019); *Wion v. Dretke*, No. 7:05-cv-146, 2006 WL 8441507, at *2 (W.D. Tex. July 14, 2006); *Mann*, 429 F.2d at 408.

This factor weighs in favor of consolidation because all five cases were filed in the Western District of Texas. That this case was filed in a different division makes no difference because the rule requires only that the cases be before the same *district*, not the same *division*. *See Wion*, 2006 WL 8441507, at *2; *Texas v. United States*, No. 6:21-cv-16, 2021 WL 3171958, at *2 (S.D. Tex. July 26, 2021).

### B. The Actions Involve Substantially Similar Parties

The second factor asks whether and to what extent the actions involve similar parties. As party overlap increases, so too does the efficiency gained by consolidation. *Compare Samarto v. Keller Williams Realty, Inc.*, No. 1:21-cv-76, 2021 WL 3596303, at *2–3 (W.D. Tex. Apr. 27, 2021), *with Brown v. Fort Hood Fam. Hous. LP*, No. 5:20-cv-704, 2020 WL 10758046, at *2 (W.D. Tex. Sept. 25, 2020).

This factor favors consolidation because the actions involve substantially similar parties. Each case includes Governor Abbott and Secretary Scott as defendants. True, there are different plaintiffs, but, as explained above, they are similar insofar as they are concerned with similar interests. *See* ECF

7

1 ¶¶ 10–29; Ex. D at 2–5; Ex. E ¶¶ 14–30; Ex. F ¶¶ 1–5; Ex. G ¶¶ 8–17.

### C. The Actions Involve Nearly Identical Issues

The third factor asks whether and to what extent the actions involve similar questions of fact or law. If substantially similar cases are not consolidated, discovery and motion practice are "likely to be highly duplicative, which risks unnecessary costs and delay." *Dryshod Int'l, LLC v. Haas Outdoors, Inc.*, No. 1:18-cv-596, 2019 WL 5149860, at *2 (W.D. Tex. Jan. 18, 2019).

This factor weighs heavily in favor of consolidation because the five actions present nearly identical issues. Fundamentally, each case challenges the apportionment of Texas's electoral districts. *See* ECF 1 ¶¶ 105–12; Ex. D at 10–14; Ex. E ¶¶ 127–36; Ex. F ¶¶ 231–41; Ex. G ¶¶ 94–109. While an apportionment claim may be based on the Fourteenth Amendment, Section 2 of the VRA, or some other provision, at their core, all such claims are "closely similar, albeit not perfectly identical, challenges to the same state government action." *Page*, 248 F.3d at 191. This fundamental similarity is illustrated by the fact that all five cases will involve the same type of evidence, including demographic data related to the maps. *See Armour v. Ohio*, 925 F.2d 987, 988 (6th Cir. 1991) (en banc) ("The theories of liability and the proof underlying both the constitutional and statutory [redistricting] claims are intimately related.") And each case presents questions about whether the Court can and should order Governor Abbott and Secretary Scott to use court-drawn maps, and if so, *how* it ought to do so.

### D. There is Little Risk of Confusion if the Cases are Consolidated, but Great Risk of Prejudice from Inconsistent Adjudications if They are Not

The fourth factor asks the Court to weigh the risk of confusion if the cases are consolidated against the risk and prejudice of inconsistent adjudications if they are not. *See, e.g., Lay v. Spectrum Clubs, Inc.*, No. 5:12-cv-754, 2013 WL 788080, at *2–3 (W.D. Tex. Mar. 1, 2013).

This factor weighs heavily in favor of consolidation because inconsistent adjudications would be especially prejudicial in these circumstances. Each set of plaintiffs asks for court-drawn maps. *See* ECF 1 at 24–25; Ex. D at 18–19; Ex. E at 32–33; Ex. F at 52–53; Ex. G at 27–28. Needless to say,

having at least three separate sets of congressional, and two sets of House, Senate, and SBOE maps would place Defendants in an untenable position. Courts impose such maps through injunctive relief, so Defendants would face inconsistent obligations on pain of contempt. This reason alone suffices to justify consolidation. *Compare Jine v. OTA Corp.*, No. 8:20-cv-1152, 2020 WL 7129374, at *13–14 (C.D. Cal. Sept. 11, 2020) (contrasting requests for injunctive relief), *with LeGrand v. N.Y. Transit Auth.*, No. 1:95-cv-333, 1999 WL 342286, at *5 (E.D.N.Y. May 26, 1999) (opposite); *see Dupont v. S. Pac. Co.*, 366 F.2d 193, 196 (5th Cir. 1966) (court commits reversible error "[w]here prejudice to rights of the parties obviously results from the order of consolidation").

Similarly, each case is likely to include similar discovery. Inconsistent resolution of privilege issues, for example, would be especially harmful. If the first court sustained a privilege objection while the second court overruled the same objection, the disclosure required by the other courts' rulings would effectively undermine the first court's ruling. The increasing number of redistricting cases only compounds these issues. Perhaps as much as any other type of case, statewide redistricting cases "call for a uniform result." *Yeti Coolers*, 2015 WL 4759297, at *1 (quotation omitted).

On the other side of the scale, consolidation poses no risk of confusion or prejudice. These cases raise only equitable claims, so there will be no jury to confuse the issues. And if consolidation would pose any procedural confusion, it would be far outweighed by the parties' uniformity interests.

### E.     Consolidation Will Conserve Judicial Resources

The fifth factor asks whether consolidation will conserve resources and promote judicial economy. Judicial economy is promoted where the related actions will draw from the same witnesses or sources of discovery, involve similar legal briefing, turn on similar issues of fact or law, or are otherwise able to efficiently proceed together. *Frazier*, 980 F.2d at 1532.

Consolidation is required here because it will prevent unnecessary litigation. There is no need for the parties to go through five rounds of discovery. And there is no need for five different panels

to decide the same redistricting issues, especially given that there is substantial, but incomplete, overlap of panel membership. In short, consolidation would conserve judicial resources because having the same judges decide the same issues on the same relief in a piecemeal fashion would be inefficient.

### F. The Actions are at an Early Stage of Development

Courts also consider whether actions are at similar stages of development. In this regard, it is efficient to consolidate cases that are each newly filed, or ready for trial. Likewise, it is inefficient to consolidate cases that are at different stages in the litigation process. *See Lay*, 2013 WL 788080, at *3.

This factor weighs in favor of consolidation because all five actions are at very early stages of development and were filed only two weeks apart. No discovery has been exchanged nor has an initial conference been held. Consolidation does not delay any action or impose any logistical concerns.

\*   \*   \*

The cases should be consolidated in this action because the "common practice" in the Western District is "for cases to be consolidated into the first-filed case." *Holmes*, 2021 WL 2878551, at *2; *Settles v. United States*, No. 17-cv-1272, 2018 WL 5733195, at *2 (W.D. Tex. May 18, 2018).

Consolidation is the norm for redistricting litigation. Indeed, many different parties and claims were consolidated before the same three-judge panel during the 2010 litigation. *See Perez v. Texas*, No. 5:11-cv-360-OLG-JES-XR, ECF 23 (W.D. Tex. July 6, 2011); *see also id.* ECF 63, 72, 76 (adding further parties and claims). It is simply impractical to have each redistricting case proceed separately, especially when so many sets of plaintiffs want each court to impose a unique map. There must be one forum that ensures consistency. Under the first-to-file rule and Rule 42, this Court should be that forum.[9]

### CONCLUSION

Defendants respectfully request that the Court grant their Motion to Consolidate.

---

[9] To the extent the Court prefers consolidation into a different case, Defendants note that "[a] district court is permitted to order consolidation pursuant to Federal Rule of Civil Procedure 42(a) *sua sponte*." *Lester v. Exxon Mobil Corp.*, 879 F.3d 582, 592 (5th Cir. 2018). *That* the cases are consolidated is more important to Defendants than *where* the cases are consolidated.

| | |
|---|---|
| Date: November 10, 2021 | Respectfully submitted. |
| | |
| KEN PAXTON | */s/Patrick K. Sweeten* |
| Attorney General of Texas | PATRICK K. SWEETEN |
| | Deputy Attorney General for Special Litigation |
| BRENT WEBSTER | Tex. State Bar No. 00798537 |
| First Assistant Attorney General | |
| | WILLIAM T. THOMPSON |
| | Deputy Chief, Special Litigation Unit |
| | Tex. State Bar No. 24088531 |
| | |
| | JACK B. DISORBO |
| | Assistant Attorney General |
| | Tex. State Bar No. 24120804 |
| | |
| | OFFICE OF THE ATTORNEY GENERAL |
| | P.O. Box 12548 (MC-009) |
| | Austin, Texas 78711-2548 |
| | Tel.: (512) 463-2100 |
| | Fax: (512) 457-4410 |
| | patrick.sweeten@oag.texas.gov |
| | will.thompson@oag.texas.gov |
| | jack.disorbo@oag.texas.gov |

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF CONFERENCE**

I certify that on November 10, 2021, counsel for the Defendants conferred with counsel for Plaintiffs about the foregoing motion. Plaintiffs are unopposed to the relief sought. Defendants also conferred with counsel for *Wilson*, *Voto Latino*, and *Brooks*. The *Brooks* Plaintiffs believe their case "should be consolidated with whichever of the earlier filed cases is deemed the lead case," and "take no position as to which case that should be." *Wilson* and *Voto Latino* are opposed. Defendants emailed counsel for *MALC* in the morning of November 10 to confer. At the time of this motion's filing, the *MALC* Plaintiffs had not responded.

*/s/Patrick K. Sweeten*
PATRICK K. SWEETEN

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on November 10, 2021, and that all counsel of record were served by CM/ECF.

*/s/Patrick K. Sweeten*
PATRICK K. SWEETEN

11