IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, ET AL., <br><br> *Plaintiffs*, <br><br> v. <br><br> GREG ABBOTT, GOVERNOR OF THE STATE OF TEXAS SUED IN HIS OFFICIAL CAPACITY; AND JOHN SCOTT, SECRETARY OF STATE OF TEXAS OF TEXAS SUED IN HIS OFFICIAL CAPACITY, <br><br> *Defendants*. | § § § § § § § § § § § § § § § | Case No. 3:21-cv-259-DCG-JES-JVB |

**EXHIBIT B**

**ORIGINAL COMPLAINT,** *MORRIS V. TEXAS*

United States Courts
Southern District of Texas
FILED

OCT 20 2021

Nathan Ochsner, Clerk of Court

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS

JOHN T MORRIS

Plaintiff

v.

STATE OF TEXAS; GREG ABBOTT,
in his official capacity as Governor
of the State of Texas;
RUTH RUGGERO HUGHS,
in her official capacity as Secretary of State
of the State of Texas

Defendants

CIVIL ACTION NO.

4:21CV3456

## PLAINTIFF'S ORIGINAL COMPLAINT FOR DECARATORY AND INJUNCTIVE RELIEF AND REQUEST FOR DESIGNATION OF THREE-JUDGE COURT

COME NOW John T. Morris, Plaintiff, brings this action in respect to the 2021 redistricting of the State of Texas and the plaintiff's first and fourteenth amendment rights guaranteed by the United States Constitution, and Article 1, Section 2, Clause 1 of the U.S. Constitution.

## I. JURISDICTION & VENUE

1. Plaintiff's complaint raises questions arising under the United States Constitution and state and federal law.

1

2. This court has original jurisdiction pursuant to 28 U.S.C. Sections 1331, 1343 (a)(3) and (4); and 42 U.S.C. Section 1983 and 1988.
3. This courts jurisdiction is invoked pursuant to 28 U.S.C. Section 1391 (b).
4. Plaintiff's claim for declaratory and injunctive relief is authorized by 28 U.S.C. Sections 2201 and 2202.
5. Plaintiff requests a three-judge panel pursuant to 28 U.S.C. Section 2284.

## II. PARTIES

6. Plaintiff John T Morris is a naturalized citizen of the United States and registered voter and resides in Harris County of the State of Texas within the jurisdiction of the U.S. District Court – Southern District of Texas, and has standing to bring this action under 42 U.S.C. Section 1983.
7. Defendants are the State of Texas and the officials thereof who have duties and responsibilities under the laws of the state to redistrict congressional districts following the decennial census.
8. Defendant Greg Abbott is the Governor of the State of Texas and under Article IV, Section 1, of the Constitution of the State of Texas, is the chief executive officer of the Defendant State of Texas. He is sued in his official capacity.
9. Defendant Ruth Ruggero Hughs is the Secretary of State for the State of Texas and is responsible under the laws of the state to oversee the conduct of elections. She is sued in her official capacity.

## III. FACTS

10. After the decennial census, which is used to provide for the reapportionment of the U.S. House of Representatives the State of Texas, as well as the other 50 states, must redraw district boundaries in accordance with changes in population densities and/or increases or decreases in the number of apportioned representatives.
11. The State of Texas, being apportioned two new representatives had to "redistrict" in

2

the 2021 regular session though due to the virus pandemic the census data was delayed and the redistricting was undertaken this October 2021. The maps are being challenged in federal court for violations of the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983 & 1988 and Article 1, Section 4, Clause 1 of the U.S. Constitution.

12. The plaintiff, John T. Morris, is a citizen and registered voter in the 2nd Congressional district and resides and is domiciled in Harris County, Texas and his home address is 5703 Caldicote St., Humble, Texas 77346.

13. The new congressional map, SB6, has altered the plaintiff's 2nd Congressional District drastically. Whereas the 2nd district previously included a large area in Harris County Northeast of the city of Houston and then Eastward and to the South in a band that first narrowed and then widened and in effect surrounding three-quarters of the way around the city. The new iteration of the 2nd District now retains that same large area Northeast of the city but now extends towards the East narrowly into the Northern area of Harris County and also into a relatively large area South but also extends North into a large section of Southeast Montgomery County. Now only one quarter (the large area Northeast of the city) of the new district remains from the previous district. To drive from one extent to the other is roughly a 50 mile journey.

14. Article I, Section 2 of the United States Constitution calls for representatives to be "composed of Members to be chosen every Second year by the people...". The original purpose of having elections every two years (a compromise from one year preferred by the colonists) as clearly stated by James Madison in the Federalist papers, and numerous colonists who took part in the ratification of the Constitution, was to provide the people with "frequent elections" in order to allow their constituents to appraise the performance of their representatives and ascertain *sooner than later* whether they wished to vote for them once again. Partisan gerrymandering that moves a candidate out of a district, or by altering the district boundaries, disallows most of his or

3

her previous constituents from voting for or against the candidate in the present election and thus violates the original meaning of this constitutional provision.

15. Due to the manner in which the 2nd district is politically gerrymandered it does not even nominally conform to recognized Supreme Court redistricting criteria. Criteria "such as natural geographical boundaries, contiguity, compactness, and conformity to political subdivisions" Bush v. Vera, 517 U.S. 952 at 959-960. For these reasons it creates logistical, geographical, political interests, and informational complications which place burdens on the citizens and the plaintiff and consequently curtails and inhibits their freedom of speech. This curtailment and inhibition of political expression which encompasses speech, assembly and association is a clear and obvious violation of the First and Fourteenth Amendment.

16. It is a fact that geography in respect to rivers and valleys, the lack of compaction and diverse interests within a district can impede communication and consequently burden First Amendment rights. It is a fact also that incomplete and erroneous media information is likewise a burden that needlessly complicates communication and as such should also be considered a violation of the First Amendment. A district configured to lessen burdens on the constituents political communications must require also that media facts be documented and verifiable, and separate from opinion, whereas if they are not they are also a burden. Hence honest media information must be considered the true basis of a functional district based on the First Amendment that fosters efficient and effective elective decisions by the voters. And in so far as it is the function of government to do what is largely impossible for the individual, the state must use its collective legislative prerogative to compel the media to provide, documented and verifiable, factual information that is separate from press or public opinion - a requirement that would not in effect be an abridgement of freedom of the press - that will allow the citizens to intelligently exercise their right to vote.

4

17. The plaintiff asks the Court to intervene in the redistricting process and prevent the the Texas legislature and governor from changing the plaintiff's district boundaries as little as possible and only to the extent necessary to accommodate the two new districts apportioned to the state of Texas in accordance with the 2020 census. And in so doing prevent the Republican controlled government of Texas from undermining the original purpose of Article I, Section 2, Clause 1 of the U.S. Constitution requiring frequent elections and in effect abridging the plaintiff's right to an effective political voice in respect to his representative's candidacy for a new term in the U.S. House of Representatives. And require the state to ensure that the voter's First Amendment right to factual information separate from opinion is provided by the media.

## IV CAUSES OF ACTION

### First Cause of Action:

18. Plaintiff realleges and incorporates paragraphs 1-17.
19. Plaintiff claims a violation of his First Amendment right to political speech as guaranteed by the 14th Amendment.

### Second Cause of Action:

20. Plaintiff realleges and incorporates paragraphs 1-17.
21. Plaintiff claims a violation of his First Amendment right to a fair and effective vote as guaranteed by the 14th Amendment.

### Third Cause of Action:

22. Plaintiff realleges and incorporates paragraphs 1-17.
23. Plaintiff claims that facts set forth above demonstrate a violation of the intent of Section 2, of Article I of the United States Constitution.

## Fourth Cause of Action:

24. Plaintiff realleges and incorporates paragraph 1-17

25. Plaintiff claims that accurate media facts that are documented and verifiable and separate from opinion are an essential element of a district based on the First Amendment the omission of which is a violation of the First Amendment.

## V  PRAYER FOR RELIEF

In light of the foregoing facts and claims, the plaintiff respectfully requests the following relief:

A. That the court request the convening of a three-judge court pursuant to 28 U.S.C. Section 2284.

B. Declare the current plan for the Texas Congressional districts to be unconstitutional and enjoin their use in any further elections.

C. Grant plaintiff reasonable fees and costs pursuant to 28 U.S.C. Section 2412..

D. Grant such other relief as may be necessary and proper.

John T. Morris
*Plaintiff Pro se*
5703 Caldicote St.
Humble, TX 77346
281-852-6388

6

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**

JOHN T MORRIS

Plaintiff

v.

STATE OF TEXAS; GREG ABBOTT,
in his official capacity as Governor
of the State of Texas;
RUTH RUGGERO HUGHS,
in her official capacity as Secretary of State
of the State of Texas

Defendants

CIVIL ACTION NO.

4:21cv3456

Nathan Ochsner, Clerk of Court

United States Courts
Southern District of Texas
F I L E D

OCT 20 2021

Nathan Ochsner, Clerk of Court

**STATEMENT OF JOHN T MORRIS**
**Pursuant to 28 U.S.C. Par. 1846, declare that:**

**VIOLATION OF FREQUENT ELECTION OBJECTIVE**

1. Article I, Section 2 of the United States Constitution states that "The House of Representatives shall be composed of Members to be chosen every Second year by the people." Having elections every two years was reluctantly agreed to by the colonists who ratified the Constitution since one year was nearly universal throughout the colonies and considered a fundamental element of democracy - they "were familiar with the Whig maxim, 'Where ANNUAL ELECTIONS end, Tyranny begins.'"(1) The demand for "frequent elections" was a common phrase used during this period and was explicitly an element in the constitutions of Virginia, Delaware, Maryland and North Carolina.(2) And

1

the often stated purpose of having frequent elections,

as clearly stated by the framers of the Constitution in the Federalist papers and elsewhere, is to allow the citizens to appraise the performance of their representatives from the previous two years in order to determine *sooner than later* whether they wished to vote for them once again. When "their power is to cease, when their exercise of it is to be reviewed, and when they must descend to the level from which they were raised; there forever to remain unless a faithful discharge of their trust shall have established their title to a renewal of it," James Madison, The Federalist Papers No. 57. "The genius of republican liberty seems to demand on one side not only that all power should be derived from the people, but that those entrusted with it should be kept in dependence on the people by a short duration of their appointments." id, Madison No. 37. The purpose of a frequent election, though not explicit in the words of Madison, it is in the words of Fisher Ames, who was elected to the First Congress, and stated during the Massachusetts ratification debate that "[t]he term of election must be so long that the representative may understand the interests of the people, and yet so limited, that his fidelity may be secured by a dependance upon their approbation" and that "[t]he people will be proportionally attentive to the merits of a candidate. Two years will afford opportunity to the members to deserve well of them, and they will require that he has done it."(3) And "that he has done it" can only mean that if he has not he will lose the people's vote in a subsequent election. In a pamphlet by Mercy Warren, the sister of James Otis, whose argument against British imposed Writs of Assistance initiated the first tendencies of the colonists towards independence, explicitly stated that the "annual election is the basis of responsibility...a frequent return to the bar of their Constituents is the strongest check against the corruption to which men are liable."(4) This can only mean that the people who voted in a previous election must have the opportunity to vote for the same representative in a subsequent election.

2. These above comments by participants in the adoption of the Constitution should

2

leave little doubt that the objective of a frequent election was not simply a matter of custom or practicality but truly based on the insistence by the colonists that they keep a tight reign on their representatives by using their knowledge of, and experiences with them, to determine their future in office. Unfortunately gerrymandering that effectively prevents any voter who voted in a previous election from using his or her accumulated knowledge, and experiences, with an incumbent and/or candidates, without good cause is obviously a violation of the frequent election objective embedded in Article 1, Section 2, of the U.S. Constitution and more importantly an obvious abridgement of the First and 14th Amendment rights of the voters since freedom of speech and of the press are so essential in respect to the citizen's effort to select their representative.

3. Gerrymandering will allow the representative to return to the 2nd District after new district lines have been drawn and effectively be appraised, to a large extent, by a new majority of sympathetic partisan voters who will be largely unfamiliar with the representative and his or her performance during the previous term and swamp out the political voices of those who, now in the minority, and the plaintiff being one of them, who have knowledge of the candidate from previous elections and violate their First and Fourteenth Amendment and Article 1, Section 2 Constitutional voting rights.

RECOGNIZED REDISTRICTING CRITERIA REQUIRED<br>TO PROTECT FIRST AMENDMENT RIGHTS

4. It's the plaintiff's contention that because the 2nd district is politically gerrymandered and clearly does not follow recognized Supreme Court redistricting criteria "such as natural geographical boundaries, contiguity, compactness, and conformity to political subdivisions" Bush v. Vera, 517 U.S. 952 at 959-960, it creates burdens on the citizens and the plaintiff's rights in terms of political expression guaranteed by the First Amendment in respect to speech, press, assembly and association. Districts that are not compact, that are miles long and narrow in width, are more likely to include remote

3

communities that have diverse or even conflicting interests. A district that stretches for many miles in length as does the new 2nd District will undoubtedly create travel and time restrictions for party activists in their efforts to form a politically uniform district. In this respect communication will be burdened and certainly curtailed when, as usual, it is necessary to communicate in person and certainly represent a diminishment of First and Fourteenth Amendment rights. In addition the refashioned district will discourage travel to political gatherings that are again necessary to forge a politically uniform district and inadvertently create separate political communities that will tend to lose sight of the other's interests and in addition lessen the advantage of their combined energy.

5. Being in a district that is dominated by one party will inevitably discourage political activism since one party will be assured of the representative of its choice and the other party will not. Under these large majority small minority circumstances it will be unlikely that citizens holding diverse opinions will find it necessary or even attempt to find a consensus. This can also be considered a constraint on the citizen's of the district and the plaintiff's speech rights when there is little reason to debate in respect to an election that is not in doubt, issues that need to be discussed and debated are not resolved and deny those who wish to express there concerns the opportunity to do so.

6. The new 2nd District drawn now drawn in a manner which does not follow accepted proper redistricting criteria has created logistical and geographic distortions and informational complications that place a burden on this plaintiff's speech, press and assembly rights and are consequently an obvious violation of the plaintiff's First and Fourteenth Amendment rights.

> MEDIA THAT SEPARATES DOCUMENTED AND VERIFIABLE FACTS
> FROM OPINION IS A NECESSARY ELEMENT OF A PROPER DISTRICT

7. When there is an effort to design a district based on accepted criteria that mitigates, to

4

the extent possible, physical and communication burdens and for this reason comply with First and Fourteenth Amendment objectives, media information that is erroneous, incomplete and where opinion is made to appear factual will essentially nullify the result. In a district lacking honest media it matters little how the district is designed since the citizens will be unable to convey credible concerns to their representatives..

8. The purpose of a properly designed district based on accepted Supreme Court criteria is to establish representation that efficiently reflects the primary interests and genuine political views of the majority of the district's residents. If this is to occur and not burden, in any aspect, the First Amendment rights of the citizens, it is essential that they be provided with honest information. The First Amendment, in respect to freedom of the press, implies that media information is essential in the execution of the democratic process the purpose of which is to benefit and protect the people of the nation. It is an essential requirement that the information provided to the public, which is the basis of their political activity, be genuine and where anything to the contrary is, in no uncertain terms, a logical violation of the ultimate objective of the amendment. And in this respect false or misleading information is a burden and subsequent violation of the citizen's First Amendment rights.

9. "[I]n a society in which each individual has but limited time and resources with which to observe at first hand the operations of his government, he relies necessarily upon the press to bring to him in convenient form the *facts* of those operations. Great responsibility is accordingly placed upon the news media to report *fully and accurately* the proceedings of government...Without the information provided by the press, most of us and many of our representatives would be unable to vote intelligently or to register opinions on the administration of government generally." (emphasis added) Cox Broadcasting Corp. V. Cohn, 420 U.S. 469 (1975). Information required for the citizens and the plaintiff to communicate and ultimately vote intelligently cannot be incomplete,

5

distorted or erroneous, and in addition this factual information must be documented and verifiable, and separate from opinion - opinions from the public or the press. Misleading and opinionated information available to the citizens and the plaintiff will only tend to be a distraction at best or a source of confusion or at worst lead the citizens to faulty conclusions. And though publishers may occasionally be deceived, and certainly only temporally, into believing they are providing the public with factual information, what is provided must be clearly divided between what is factual and what is a matter of opinion. *Incomplete, distorted and erroneous media information is a burden on the citizen's right to know and ability to communicate and consequently a violation of the citizen's and the plaintiff's First and Fourteenth Amendment rights.*

10. In order to establish a constitutionally legitimate district based on Court accepted criteria and the citizen's and the plaintiff's First and Fourteenth Amendment rights an essential element must include truthful media information that is documented and verifiable. And it is clear that this can be accomplished without an abridgement of the press when merely requiring fact to be separate from opinion. And since individuals have no means by which to require the media to provide this information the responsibility falls on the state with its collective constitutional power given it by the sovereign citizens.

11. In 1947, A Free and Responsible Press was published with grants from Time, Inc., and Encyclopedia Britannica, Inc.. This report was the work of the Commission on Freedom of the Press, administered by the University of Chicago. The commission was chaired by Robert M. Hutchins the chancellor of the university of Chicago and included Harold Lasswell (professor of law at Yale), Reinhold Neibuhr (professor of ethics and philosophy at Union Theological Seminary), Beardsley Ruml (chairman of the Federal Reserve Bank of New York), and the leading *First Amendment scholar* of the 19th Century, Zechariah Chafee, Jr., who served as vice-chairman. The commission was formed in 1943 to study "the role of the agencies of mass communication in the education of the people in public affairs," and consisted of 225 interviews with members of

6

institutions concerning the press and 176 documents prepared by members or staff. As a guide, what the commission considered was needed from the press was, first of all "*a truthful, comprehensive, and intelligent account of the day's events* in a context that gives them meaning; second, a forum for the exchange of comment and criticism; and third, *a means of projecting the opinions and attitudes* of the groups in the society to one another." In addition to the recommendation that truthful information be provided to the public there is an insinuation also that there be a delineation between fact and opinion. And finally in order to put this on a firm constitutional foundation in respect to a "truthful, comprehensive, and intelligent account of the day's events," in the Federalists Papers No. 84 it was Alexander Hamilton's expectation that "[t]he public papers will be expeditious messengers of intelligence,"; and a distribution "'of a proper knowledge on the part of the constituent of the conduct of the representative body.'" And in a reply in 1787 by "Cincinnatus" [Arthur Lee] I, during the constitutional ratification process and printed in the New York Journal wrote that should "[t]he freedom of the press, the sacred palladium of public liberty ...be pulled down; - all useful knowledge on the conduct of government would be withheld from the people - the press would become subservient to the purpose of bad and arbitrary rulers, and imposition not information, would be its object." (5) And how could it be that anything other than truthful knowledge, separated from opinion, be useful.

NOTES:

(1) The Creation of the American Republic 1776-1787
    Gordon S. Wood, 1996, p. 166

(2) Source Of Our Liberties, Ed. R. L. Perry & J. C. Cooper
    New York University Press, 1972, p. 311, 338, 356

(3) Debate on the Constitution (DOTC), Part One
    The Library of America, Fourth Printing, 1993, p. 892, 895

7

(4) Documentary History of the Ratification of the Constitution
Vol. XVI, Commentaries, Vol. 4, p 278

(5) DOTC, Supra, p. 95

*John T. Morris* (signature)

John T. Morris
*Plaintiff Pro se*
5703 Caldicote St.
Humble, TX 77346
281-852-6388

8

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
John T. Morris (Pro se)

**DEFENDANTS**
State of Texas et al

**(b)** County of Residence of First Listed Plaintiff: Harris
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
John T. Morris (Pro se) 5703 Caldicote St.
Humble, TX 77346 832-978-8943

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation | [x] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | [ ] 950 Constitutionality of State Statutes |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 10/19/2021
SIGNATURE OF ATTORNEY OF RECORD: John T. Morris /s/

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____