**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, et al., | Civil Action |
| Plaintiffs, | Case No. 3:21-cv-259-DCG-JES-JVB |
| v. | |
| GREG ABBOTT, et al., | |
| Defendants. | |

***VOTO LATINO* PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO CONSOLIDATE**

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................................ii
TABLE OF AUTHORITIES ......................................................................................................... iii
INTRODUCTION .......................................................................................................................... 1
ARGUMENT .................................................................................................................................. 1
    I.   Consolidation is impermissible because *LULAC* and *Voto Latino* are not before the same court. ................................................................................................................................. 1
        A.   Consolidation is permissible only between cases properly before the same court. ........ 2
        B.   *LULAC* is properly before a three-judge court convened under § 2284 and *Voto Latino* is not. ............................................................................................................................ 2
        C.   Three-judge courts convened under § 2284 are separate, standalone "courts," not arms or panels of ordinary district courts. ............................................................................. 5
        D.   Transfer of venue cannot solve this problem because *LULAC* must be heard by a three-judge court and *Voto Latino* may not be. ........................................................................ 8
    II.  Other factors also weigh against consolidation in El Paso. ................................................ 9
CONCLUSION ............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Appalachian Power Co. v. Region Props., Inc.*,
  364 F. Supp. 1273 (W.D. Va. 1973) ................................................................................5

*Bowles v. Russell*,
  551 U.S. 205 (2007) .........................................................................................................4

*Castañon v. United States*,
  444 F. Supp. 3d 118 (D.D.C. 2020) .................................................................................4

*Chestnut v. Merrill*,
  356 F. Supp. 3d 1351 (N.D. Ala. 2019) ...........................................................................3

*Fid. & Deposit Co. of Md. v. Casablanca Constr., Inc.*,
  No. 5:19-CV-62-DCB-MTP, 2020 WL 1238194 (S.D. Miss. Mar. 13, 2020) .................2

*Hart v. Kennedy*,
  314 F. Supp. 823 (W.D. Okla. 1969) ...............................................................................7

*Jacobs v. Tawes*,
  250 F.2d 611 (4th Cir. 1957) ........................................................................................7, 8

*Jehovah's Witnesses in State of Wash. v. King Cnty. Hosp. Unit No. 1 (Harborview)*,
  278 F. Supp. 488 (W.D. Wash. 1967), *aff'd*, 390 U.S. 598 (1968) .................................7

*Kontrick v. Ryan*,
  540 U.S. 443 (2004) .........................................................................................................4

*Mitchell v. Donovan*,
  398 U.S. 427 (1970) .........................................................................................................8

*Mourik Int'l B.V. v. Reactor Servs. Int'l, Inc.*,
  182 F. Supp. 2d 599 (S.D. Tex. 2002) ..........................................................................2, 5

*Nixon v. Richey*,
  513 F.2d 430 (D.C. Cir. 1975) .........................................................................................4

*Sands v. Wainwright*,
  491 F.2d 417 (5th Cir. 1973) ...........................................................................................3

*St. Bernard Gen. Hosp., Inc. v. Hosp. Serv. Ass'n of New Orleans, Inc.*,
  712 F.2d 978 (5th Cir. 1983) ...........................................................................................9

*Swindell-Dressler Corp. v. Dumbauld*,
 308 F.2d 267 (3d Cir. 1962)..................................................................................................2

*Thomas v. Reeves*,
 961 F.3d 800 (5th Cir. 2020) (en banc) (Costa, J., concurring)............................................3, 4

*United States v. Brandt Constr. Co.*,
 826 F.2d 643 (7th Cir. 1987) ................................................................................................5

*United States v. Texas*,
 523 F. Supp. 703 (E.D. Tex. 1981) .......................................................................................4

*Wilson v. Gooding*,
 431 F.2d 855 (5th Cir. 1970) .............................................................................................4, 9

**Statutes**

28 U.S.C. § 46(b) .....................................................................................................................6

28 U.S.C. § 137(a) ...................................................................................................................6

28 U.S.C. § 291(b) ...................................................................................................................6

28 U.S.C. § 292(b) ...................................................................................................................6

28 U.S.C. § 1331......................................................................................................................4

28 U.S.C. § 1404(a) .................................................................................................................8

28 U.S.C. § 2284............................................................................................................ *passim*

**Other Authorities**

Federal Rule of Civil Procedure 42 ...................................................................................2, 5, 8

## INTRODUCTION

The Court cannot do as Defendants ask. Cases must be pending before the same court to be consolidated, and *Voto Latino v. Scott*, No. 1:21-cv-965, and this case, *LULAC v. Abbott*, No. 3:21-cv-259, are not. *LULAC* is before this "district court of three judges," "convened" pursuant to 28 U.S.C. § 2284(a), because *LULAC* includes constitutional challenges to congressional districts and statewide legislative bodies. *LULAC*, ECF No. 1 ¶¶ 105-110, 113. *Voto Latino*, in contrast, is properly before Judge Pitman as a single judge of the Western District of Texas, because *Voto Latino* includes only *statutory* challenges to congressional districts and therefore falls outside the jurisdiction of a three-judge district court.[1] *Voto Latino*, ECF No. 1 ¶¶ 127-136. Because *LULAC* and *Voto Latino* are before different courts, consolidation is impermissible.

Even if consolidation were possible, it would be unwarranted. *Voto Latino* is a far narrower case than *LULAC*: *LULAC* includes both constitutional and statutory challenges to congressional, state house, state senate, and board of education districts, whereas *Voto Latino* consists of only a single statutory challenge to the congressional plan. The parties are not substantially similar, and inconsistent relief is unlikely to be an issue because the cases seek complementary relief.

This Court should deny Defendants' motion to consolidate *Voto Latino* with *LULAC*.

## ARGUMENT

**I. Consolidation is impermissible because *LULAC* and *Voto Latino* are not before the same court.**

Two cases may be consolidated only if they are pending before the same court. Consolidation between *LULAC* and *Voto Latino* is therefore impermissible, because *LULAC* is

---

[1] Chief Judge Owen recently ordered *sua sponte* that a three-judge district court be convened to hear the *Voto Latino* case, *see Voto Latino*, No. 1:21-cv-00965-RP-JES-JVB, ECF No. 13, but as explained below, *infra* Part I.B, and in a pending motion for reconsideration and to remand, *Voto Latino*, ECF No. 14, that order was without statutory authority, and the fact that *Voto Latino* is temporarily and erroneously before a three-judge court does not affect the analysis herein.

1

pending before a three-judge court pursuant to 28 U.S.C. § 2284 and *Voto Latino* falls outside that provision and is not properly before such a court. Section 2284 makes clear that a three-judge court convened under that provision is a separate "court" from the ordinary district court in which a case was filed. And *Voto Latino* cannot be transferred to this three-judge Court to allow consolidation, nor *LULAC* transferred to Judge Pitman as a single judge of the Western District of Texas, because *Voto Latino* could not have been brought before a three-judge court, and *LULAC* may not be heard by an ordinary district court.

### A. Consolidation is permissible only between cases properly before the same court.

Defendants concede that two cases may be consolidated only if they are pending before the same court. Mot. at 7. This limitation comes directly from the text of Federal Rule of Civil Procedure 42(a), which authorizes consolidation only of "actions before the court." Courts have therefore consistently held that cases which are not "actually 'pending before the Court'" in which consolidation is sought are "never subject to Rule 42 consolidation." *Mourik Int'l B.V. v. Reactor Servs. Int'l, Inc.*, 182 F. Supp. 2d 599, 602 (S.D. Tex. 2002). "[A] cause of action pending in one jurisdiction cannot be consolidated with a cause of action pending in another jurisdiction. Rule 42(a) . . . will not permit such a course." *Swindell-Dressler Corp. v. Dumbauld*, 308 F.2d 267, 273 (3d Cir. 1962) (footnotes omitted); *see also Fid. & Deposit Co. of Md. v. Casablanca Constr., Inc.*, No. 5:19-CV-62-DCB-MTP, 2020 WL 1238194, at *1 (S.D. Miss. Mar. 13, 2020) ("The Court may consolidate actions only if they are pending in the same district.").

### B. *LULAC* is properly before a three-judge court convened under § 2284 and *Voto Latino* is not.

The rule against consolidating cases pending before different courts precludes consolidation here, because *LULAC* is properly pending before this specially "convened" "district court of three judges" pursuant to 28 U.S.C. § 2284, and *Voto Latino* is not. *LULAC* includes

2

constitutional challenges to the apportionment of Texas's congressional and state legislative maps, and therefore falls squarely within § 2284's three-judge court provision. *See* 28 U.S.C § 2284(a) ("A district court of three judges shall be convened . . . when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body."); *LULAC*, ECF No. 1 ¶¶ 105-110, 113.

*Voto Latino*, in contrast, brings only a statutory challenge to the apportionment of congressional districts. *Voto Latino*, ECF No. 1 ¶¶ 127-136. It therefore falls outside the scope of Section 2284's three-judge court provision, because it does not "challeng[e] the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body." 28 U.S.C. § 2284(a). While there has been some recent debate in the Fifth Circuit about the scope of the three-judge court requirement in statutory challenges to *state legislative maps*, all eleven judges to address the issue were unanimous that Section 2284 does not provide for a three-judge court to hear purely statutory challenges to congressional maps. *See Thomas v. Reeves*, 961 F.3d 800, 802 (5th Cir. 2020) (en banc) (Costa, J., concurring) (concluding on behalf of six judges that § 2284 "require[s] a three-judge court only for constitutional challenges" to both state and federal maps); *id.* at 811 (Willett, J., concurring) (concluding on behalf of five judges that § 2284 may require a three-judge court for statutory challenges to state legislative maps, but agreeing that "only *constitutional* challenges to *federal* maps require three judges"); s*ee also Chestnut v. Merrill*, 356 F. Supp. 3d 1351, 1354 (N.D. Ala. 2019) ("A claim solely alleging a Section 2 violation falls outside a plain reading of § 2284.").

A three-judge court thus may not be convened under Section 2284 to hear *Voto Latino*. The three-judge court requirement is "'a serious drain upon the federal judicial system'" and must "be narrowly construed." *Sands v. Wainwright*, 491 F.2d 417, 421 (5th Cir. 1973) (quoting *Phillips v.*

*United States*, 312 U.S. 246, 250 (1941)). Three-judge courts therefore may be "convened only where compelled by the express terms of the statute." *United States v. Texas*, 523 F. Supp. 703, 725 (E.D. Tex. 1981). And they are to be used "only and strictly as Congress has prescribed." *Nixon v. Richey*, 513 F.2d 430, 446 (D.C. Cir. 1975).

Moreover, these limitations are jurisdictional. "Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider." *Bowles v. Russell*, 551 U.S. 205, 212 (2007). Statutes "delineating the classes of cases . . . falling within a court's adjudicatory authority" therefore serve as limits on federal courts' "subject-matter jurisdiction." *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004). That is just what § 2284 does in specifying which cases a three-judge court may be convened to hear. *See* 28 U.S.C. § 2284(a). As a result, where a case falls outside of the three-judge court statute, "there is no . . . jurisdiction" to convene a three-judge court to hear the case. *Wilson v. Gooding*, 431 F.2d 855, 858 (5th Cir. 1970); *see also Castañon v. United States*, 444 F. Supp. 3d 118, 128 (D.D.C. 2020) (referring to § 2284 as the three-judge court's "statutory jurisdictional grant"). Once the three-judge court's jurisdiction has been properly invoked in a case, it may be able to "exercise a brand of supplemental jurisdiction" over additional questions in that same case. *See Castañon*, 444 F. Supp. 3d at 128. But that does not excuse the requirement that there be adequate statutory authority to place the case before the three-judge court in the first instance.[2]

---

[2] This issue—that a three-judge court lacks jurisdiction over cases falling *outside* the three-judge court statute—is separate from the issue debated in the concurrences in *Thomas* of whether an ordinary district court lacks jurisdiction over cases falling *within* the three-judge court statute. *See Thomas*, 961 F.3d at 804 n.5 (Costa, J., concurring); *id.* at 826 (Willett, J., concurring). The issue debated in *Thomas* was whether an ordinary district court could hear a case falling within the three-judge court statute. Other federal statutes, including 28 U.S.C. § 1331's grant of federal-question jurisdiction, empower ordinary district courts to hear federal constitutional and statutory challenges to apportionment. The question was therefore whether § 2284 *strips* ordinary district

4

For this reason, while Chief Judge Owen recently, in a *sua sponte* order, convened a three-judge court to hear *Voto Latino*, ECF No. 13, the *Voto Latino* Plaintiffs have moved for reconsideration of that order and remand to Judge Pitman, the single judge of the U.S. District Court for the Western District of Texas to whom *Voto Latino* is assigned. *Voto Latino*, ECF No. 14. The fact that *Voto Latino* is temporarily and erroneously pending before a three-judge court as a result of Chief Judge Owen's *sua sponte* order does nothing to change the analysis, because there was no jurisdiction to convene a three-judge court to adjudicate *Voto Latino*. *Voto Latino*'s status before the three-judge court is akin to that of an action that was improperly removed from state court to federal court without a basis for federal jurisdiction. As courts have explained, such an "improperly removed action [is] never actually 'pending before the Court,' and therefore [is] never subject to Rule 42 consolidation." *Mourik Int'l B.V.*, 182 F. Supp. 2d at 602; *see also, e.g.*, *United States v. Brandt Constr. Co.*, 826 F.2d 643, 647 (7th Cir. 1987) ("Rule 42(a) requires that *both* actions be 'pending before the court' and an improperly removed action does not meet this criterion."); *Appalachian Power Co. v. Region Props., Inc.*, 364 F. Supp. 1273, 1277 (W.D. Va. 1973) ("[T]his court has no authority to consolidate an action of which it has jurisdiction with one of which it does not.").

### C. Three-judge courts convened under § 2284 are separate, standalone "courts," not arms or panels of ordinary district courts.

The fact that only *LULAC*, and not *Voto Latino*, is properly pending before this three-judge court is dispositive, because Section 2284's text makes clear that three-judge courts are separate "courts," not mere arms or panels of the ordinary district courts in which the cases before them

---

courts of such jurisdiction by requiring a three-judge court. In contrast, there is no other source of authority to convene three-judge courts to hear cases, like this one, falling *outside* the three-judge court statute. Three-judge district courts have no independent existence or authority and are "convened" only when necessary and authorized to hear an action within the scope of § 2284, so their authority is necessarily limited by that same statute. *See* 28 U.S.C. § 2284(a).

5

were originally filed. This is so for at least three reasons.

*First*, Section 2284 repeatedly and expressly refers to the body that is "convened" to hear constitutional apportionment challenges as a "district *court* of three judges," not as a mere "panel" of an existing court. *See* 28 U.S.C. § 2284(a) ("A *district court* of three judges shall be convened . . . ."); *id.* § 2284(b) ("In any action required to be heard and determined by a *district court* of three judges . . . ."); *id.* § 2284(b)(1) (judges designated to serve "shall serve as *members of the court* to hear and determine the action or proceeding"). Title 28 elsewhere carefully distinguishes between "panels" and "courts," as when it provides that "[i]n each circuit the *court* may authorize the hearing and determination of cases and controversies by separate *panels*, each consisting of three judges . . . ." *Id.* § 46(b) (emphases added). Had Congress sought to provide for apportionment challenges to be heard by a three-judge panel of an existing district court, rather than convening a new three-judge district court, it could easily have said so.

*Second*, Section 2284's requirement that the chief judge *of the circuit* designate the members of the three-judge district court, and its requirement that one of those judges be a circuit judge, would make little sense if the three-judge court were simply an arm or panel of the district court in which the case is filed. It is the responsibility of the chief judge of *the district court* to "divide the business and assign the cases" before that district court in accordance with the rules of the court. *Id.* § 137(a). Having the chief judge of the circuit assign members makes sense, however, if the three-judge court is a separate, specially-convened district court, because the chief judge of the circuit is ordinarily tasked with designating both circuit and district judges to sit temporarily on *different* district courts within the circuit. *See Id.* §§ 291(b), 292(b).

*Third*, § 2284(b)(3)'s provision allowing a single judge to conduct certain proceedings but providing that "[a]ny action of a single judge may be reviewed *by the full court* at any time before

final judgment" makes sense only if the three-judge district court is a separate "court," rather than an arm or panel of an existing district court. *Id.* § 2284(b)(3) (emphasis added). Title 28 elsewhere specifies that "[e]ach district court shall consist of the district judge or judges for the district in regular active service." *Id.* § 132(b). If a three-judge court convened pursuant to § 2284 were a mere panel or arm of an existing district court, then § 2284(b)(3)'s provision for review "by the full court" would seem unavoidably to empower only *the entire district court*—that is, all active judges of the district court in which the case was originally filed—to review decisions made by a single judge in a three-judge case pursuant to § 2284(b). That would make no sense in the context of a statute that elsewhere makes clear that it is the three designated judges who must "serve as members of the court to hear and determine the action or proceeding." *Id.* § 2284(b)(1).

Section 2284's text thus demonstrates that a three-judge district court convened pursuant to that provision is an entirely separate court from the ordinary district court in which the case was originally filed. Precedent confirms this conclusion. Three-judge courts have held that "[t]he three-judge district court is . . . an extraordinary court and technical requirements relating to its jurisdiction are to be strictly construed." *Jehovah's Witnesses in State of Wash. v. King Cnty. Hosp. Unit No. 1 (Harborview)*, 278 F. Supp. 488, 493 (W.D. Wash. 1967), *aff'd*, 390 U.S. 598 (1968). And they have explained that "[a] three-judge court does not exist until it has been created by the Chief Judge of the Circuit." *Hart v. Kennedy*, 314 F. Supp. 823, 824 (W.D. Okla. 1969). Each of those descriptions is consistent with Section 2284's text in describing the three-judge court as a separate and distinct court from the district court in which suit was filed.[3]

---

[3] In a 1957 case, the Fourth Circuit stated without consideration of the statutory text that a "court of three judges is not a different court from the District Court, but is the District Court composed of two additional judges sitting with the single District Judge before whom the application for injunction has been made." *Jacobs v. Tawes*, 250 F.2d 611, 614 (4th Cir. 1957). That statement

"[T]he three-judge-court legislation is not 'a measure of broad social policy to be construed with great liberality,' but is rather 'an enactment technical in the strict sense of the term and to be applied as such.'" *Mitchell v. Donovan*, 398 U.S. 427, 431 (1970) (quoting *Phillips*, 312 U.S. at 251). The legislation therefore "is to be literally construed." *Id.* And the literal terms of § 2284 make it unmistakably clear that the three-judge court is a separate court, not a mere panel or arm of the district court in which suit is brought. Thus, because *LULAC* is properly pending before a three-judge court and *Voto Latino* is not, the two cases are not pending before the same court, and they may not be consolidated pursuant to Rule 42(a).

### D. Transfer of venue cannot solve this problem because *LULAC* must be heard by a three-judge court and *Voto Latino* may not be.

Usually, if a party wants to consolidate two federal cases that are not pending before a single court, the party will first move to transfer one of the cases to the court that is hearing the other case. Such transfer is impossible here, however. Absent consent, a case may be transferred only to a "district or division where it might have been brought." 28 U.S.C. § 1404(a). Even assuming that this statute authorizes transfer to a three-judge district court specially convened pursuant to Section 2284, which is far from clear, it would not allow the transfer of *Voto Latino* to this three-judge Court, because *Voto Latino* could not "have been brought" in this Court, as it does not fall within Section 2284's three-judge court provision. *Supra* Part I.B. Nor could this Court transfer *LULAC* to the Western District of Texas for it to be heard by a single judge, because Section 2284 requires that *LULAC* be heard by three-judge court. In sum, because Section 2284 both *requires* that *LULAC* be heard by a three-judge court and *precludes* such a court from being convened to hear *Voto Latino*, no transfer of venue could possibly bring the two cases before the

---

was dictum, as the court's holding turned on the scope of the three-judge court requirement, not on the relationship between the three-judge court and the district court in which suit was filed. *See id.* And the court did not address the text of Section 2284 before making that statement. *See id.*

8

same "court" so as to allow consolidation.

## II. Other factors also weigh against consolidation in El Paso.

Even if consolidation were permissible, other factors weigh against it here. *First*, consolidation will prejudice the *Voto Latino* Plaintiffs by unavoidably slowing down adjudication of their claims. *Voto Latino* is a narrow, targeted case: it challenges only the congressional map, and only on the single theory that it violates Section 2 of the Voting Rights Act. *See Voto Latino*, ECF No. 1 ¶¶ 127-136. In contrast, *LULAC* is a far more complex and sprawling action: it challenges four sets of maps (congressional, state senate, state house, and state board of education) on both constitutional and statutory grounds. *See LULAC*, ECF No. 1. The broad claims in *LULAC* will inevitably take far longer to resolve than the more targeted claims in *Voto Latino*. This will prejudice the *Voto Latino* plaintiffs, who will face the danger of elections being held under an unlawful map before their claim can be fully resolved. And as the Fifth Circuit has repeatedly held, "[c]onsolidation is improper if it would prejudice the rights of the parties." *St. Bernard Gen. Hosp., Inc. v. Hosp. Serv. Ass'n of New Orleans, Inc.*, 712 F.2d 978, 989 (5th Cir. 1983) (quoting *Dupont v. S. Pac. Co.*, 366 F.2d 193, 195–96 (5th Cir. 1966)).

*Second*, the parties to the cases are not substantially similar. The only overlap is the two official-capacity defendants—Governor Abbott and Secretary Scott—who are surely defendants in hundreds of lawsuits. The plaintiffs in the cases are entirely separate—different, unrelated organizations, and different individual Texans. Defendants argue that plaintiffs "are similar insofar as they are concerned with similar interests," but they do not cite any case finding parties to be substantially similar for that reason. Mot. at 7. Defendants' tacit assumption that unrelated civil rights groups and individual voters are interchangeable is both offensive and unsupported.

*Third*, for the reasons given in the *Wilson* Plaintiffs' response in opposition to Defendants' Motion, *LULAC*, ECF No. 10 at 5-9, consolidation in El Paso rather than Austin is inconvenient

9

and impractical in a case that relates principally to events that occurred in Austin, and in which Texas counsel overwhelmingly have their offices in Austin.

*Fourth*, Defendants' fear of inconsistent relief is overstated. At the outset, with respect to *Voto Latino*, the concern is limited to the congressional map. There is no prospect for inconsistency with respect to the state legislative maps, because *Voto Latino* does not challenge them. And even with respect to the congressional map, there is no realistic prospect of inconsistent relief. Plaintiffs' claims in the two cases are complementary, not conflicting. Plaintiffs in both cases allege that the congressional map dilutes the voting strength of Latino voters. *See Voto Latino*, ECF No. 1 ¶¶ 129-136; *LULAC*, ECF No. 1 ¶¶ 81-84, 100-104. The *LULAC* plaintiffs allege that "at least two additional congressional districts" in which Latino voters make up a majority are possible, and that existing Latino-majority districts should be strengthened. *LULAC*, ECF No. 1 ¶¶ 100-104. The *Voto Latino* Plaintiffs allege that at least four additional such districts are possible. *Voto Latino*, ECF No. 1 ¶¶ 130, 132. And plaintiffs in both cases seek orders for state authorities to adopt a new congressional plan that addresses this deficiency. *LULAC* ECF No. 1 ¶ 115(e); *Voto Latino*, ECF No. 1 at p. 33. There is no reason to believe that these complementary allegations will produce conflicting instructions that the state authorities are unable to follow. And while it is conceivable that a court will need to itself draw a map, it is premature to allow that as-yet speculative possibility to dictate the entirety of these proceedings. Should a court-drawn map become necessary, coordination within the judiciary—such as the appointment of a common special master in all relevant cases—could resolve any concerns.

## CONCLUSION

For the reasons set forth above, the *Voto Latino* Plaintiffs respectfully request that Defendants' Motion to Consolidate be denied as to *Voto Latino*.

10

Dated: November 15, 2021.                    Respectfully submitted,

*/s/ Renea Hicks*
Renea Hicks
Attorney at Law
Texas Bar No. 09580400
Law Office of Max Renea Hicks
P.O. Box 303187
Austin, TX 78703-0504
(512) 480-8231
rhicks@renea-hicks.com

Abha Khanna*
**ELIAS LAW GROUP LLP**
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
Telephone: (206) 656-0177
akhanna@elias.law

Aria C. Branch*
David R. Fox*
Kathryn E. Yukevich*
**ELIAS LAW GROUP LLP**
10 G Street NE, Suite 600
Washington, D.C. 20002
Telephone: (202) 968-4490
abranch@elias.law
dfox@elias.law
kyukevich@elias.law

Kevin J. Hamilton*
**PERKINS COIE LLP**
1201 Third Avenue
Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
khamilton@perkinscoie.com

*Counsel for Plaintiffs*
*Admitted *Pro Hac Vice*

11

## **CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on November 15, 2021, and that all counsel of record were served by CM/ECF.

*/s/ Renea Hicks*