# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | |
|---|---|
| VOTO LATINO, ROSALINDA RAMOS ABUABARA, AKILAH BACY, ORLANDO FLORES, MARILENA GARZA, CECILIA GONZALES, AGUSTIN LOREDO, CINIA MONTOYA, ANA RAMÓN, JANA LYNNE SANCHEZ, JERRY SHAFER, DEBBIE LYNN SOLIS, ANGEL ULLOA, and MARY URIBE, | Civil Action<br><br>Case No. 1:21-cv-00965 |
|         Plaintiffs, | |
|    v. | |
| JOHN SCOTT, in his official capacity as Texas Secretary of State, and GREGORY WAYNE ABBOTT, in his official capacity as the Governor of Texas, | |
|         Defendants. | |

## ADVISORY REGARDING PENDING MOTION TO CONSOLIDATE

On November 11, 2021, Defendants in this matter filed a Partially Opposed Motion to Consolidate in *LULAC et al. v. Abbott et al.*, Case No. 3:21-cv-259-DCG-JES-JVB (W.D. Tex.), seeking to consolidate the instant case—and several other matters—with *LULAC et al. v. Abbott et al.* Defendants' Partially Opposed Motion to Consolidate is attached hereto as **Exhibit 1.** On November 15, 2021, Plaintiffs in the instant matter filed their Opposition to Defendants' Partially Opposed Motion to Consolidate, attached hereto as **Exhibit 2.**

Dated: November 15, 2021.                    Respectfully submitted,

*/s/ Renea Hicks*
Renea Hicks
Attorney at Law
Texas Bar No. 09580400
Law Office of Max Renea Hicks
P.O. Box 303187
Austin, Texas 78703-0504
(512) 480-8231
rhicks@renea-hicks.com

Abha Khanna*
**ELIAS LAW GROUP LLP**
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
Telephone: (206) 656-0177
akhanna@elias.law

Aria C. Branch*
David R. Fox*
Kathryn E. Yukevich*
**ELIAS LAW GROUP LLP**
10 G Street NE, Suite 600
Washington, D.C. 20002
Telephone: (202) 968-4490
abranch@elias.law
dfox@elias.law
kyukevich@elias.law

Kevin J. Hamilton*
**PERKINS COIE LLP**
1201 Third Avenue
Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
khamilton@perkinscoie.com

*Counsel for Plaintiffs*
*Admitted Pro Hac Vice*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on November 15, 2021, and that all counsel of record were served by CM/ECF.

*<u>/s/ Renea Hicks</u>*

**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, ET AL., | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | Case No. 3:21-cv-259-DCG-JES-JVB |
| GREG ABBOTT, GOVERNOR OF THE STATE OF TEXAS SUED IN HIS OFFICIAL CAPACITY; AND JOHN SCOTT, SECRETARY OF STATE OF TEXAS OF TEXAS SUED IN HIS OFFICIAL CAPACITY, | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| *Defendants*. | § | |

**DEFENDANTS' PARTIALLY OPPOSED MOTION TO CONSOLIDATE**

# TABLE OF CONTENTS

Table of Contents ...................................................................................................................ii

Table of Authorities .............................................................................................................iii

Introduction ........................................................................................................................... 1

Background ............................................................................................................................. 2

Argument ................................................................................................................................ 4

    I.   The First-to-File-Rule Supports Consolidation in This Court ............................... 4

    II.  Rule 42 Supports Consolidation in This Court .................................................... 6

        A.  The Actions Were Filed in the Same Court ................................................... 7

        B.  The Actions Involve Substantially Similar Parties ........................................ 7

        C.  The Actions Involve Nearly Identical Issues .................................................. 8

        D.  There is Little Risk of Confusion if the Cases are Consolidated, but Great Risk of Prejudice from Inconsistent Adjudications if They are Not ......................................................................... 8

        E.  Consolidation Will Conserve Judicial Resources ......................................... 9

        F.  The Actions are at an Early Stage of Development ..................................... 10

Conclusion ........................................................................................................................... 10

TABLE OF AUTHORITIES

Page(s)

## Cases

*Armour v. Ohio,*
  925 F.2d 987, 988 (6th Cir. 1991) (en banc)................................................................8

*Brooks v. Abbott,*
  No. 1:21-cv-991-LY-JES-JVB (W.D. Tex.)..................................................................3

*Brown v. Fort Hood Fam. Hous. LP,*
  No. 5:20-cv-704, 2020 WL 10758046, at *2 (W.D. Tex. Sept. 25, 2020).....................7

*Dryshod Int'l, LLC v. Haas Outdoors, Inc.,*
  No. 1:18-cv-596, 2019 WL 5149860, at *2 (W.D. Tex. Jan. 18, 2019)..........................8

*Dupont v. S. Pac. Co.,*
  366 F.2d 193, 196 (5th Cir. 1966) ................................................................................9

*Frazier v. Garrison Indep. Sch. Dist.,*
  980 F.2d 1514, 1531–32 (5th Cir. 1993) .................................................................. 7, 9

*Gentry v. Smith,*
  487 F.2d 571, 581 (5th Cir. 1973) ................................................................................6

*Gutierrez v. Abbott,*
  No. 1:21-cv-769-RP-JES-JVB (W.D. Tex.) .................................................................1

*Hart v. Donostia LLC,*
  290 F. Supp. 3d 627, 632 (W.D. Tex. 2018).................................................................5

*Holmes v. City of San Antonio,*
  No. 5:21-cv-274, 2021 WL 2878551, at *1 (W.D. Tex. Mar. 30, 2021) .................... 7, 10

*Intertrust Techs. Corp. v. Cinemark Holdings, Inc.,*
  No. 2:19-cv-266, 2020 WL 6479562, at *7 (E.D. Tex. Sept. 30, 2020)........................6

*Jine v. OTA Corp.,*
  No. 8:20-cv-1152, 2020 WL 7129374, at *13–14 (C.D. Cal. Sept. 11, 2020) ..................9

*John T. Morris v. Texas,*
  No. 4:21-cv-3456 (S.D. Tex. Oct. 20, 2021) ...............................................................1

*Lay v. Spectrum Clubs, Inc.,*
  No. 5:12-cv-754, 2013 WL 788080, at *2–3 (W.D. Tex. Mar. 1, 2013) .................... 8, 10

*LeGrand v. N.Y. Transit Auth.*,
No. 1:95-cv-333, 1999 WL 342286, at *5 (E.D.N.Y. May 26, 1999)...................................9

*Lester v. Exxon Mobil Corp.*,
879 F.3d 582, 592 (5th Cir. 2018) ...........................................................................10

*MALC v. Texas*,
No. 1:21-cv-988-RP-JES-JVB (W.D. Tex.) ..........................................................3

*Mann Mfg. Inc. v. Hortex, Inc.*,
429 F.2d 403, 408 n.6 (5th Cir. 1971)................................................................ 5, 6, 7

*Mills v. Beech Aircraft Corp.*,
886 F.2d 758, 762 (5th Cir. 1989) ...........................................................................7

*Netlist, Inc. v. SK Hynix Inc.*,
No. 6:20-cv-194, 2021 WL 2954095, at *2 (W.D. Tex. Feb. 2, 2021)....................6

*Page v. Bartels*,
248 F.3d 175, 190 (4th Cir. 2001) ........................................................................ 5, 8

*Perez v. Texas*,
No. 5:11-cv-360-OLG-JES-XR (W.D. Tex. July 6, 2011) ...................................10

*Samarto v. Keller Williams Realty, Inc.*,
No. 1:21-cv-76, 2021 WL 3596303, at *2–3 (W.D. Tex. Apr. 27, 2021) ............7

*Save Power Ltd. v. Syntek Fin. Corp.*,
121 F.3d 947, 948 (5th Cir. 1997) ....................................................................... 5, 6

*Settles v. United States*,
No. 17-cv-1272, 2018 WL 5733195, at *2 (W.D. Tex. May 18, 2018)................10

*Sutter Corp. v. P&P Indus., Inc.*,
125 F.3d 914, 917 (5th Cir. 1997) ................................................................... 4, 5, 6

*Texas v. United States*,
No. 6:21-cv-16, 2021 WL 3171958, at *2 (S.D. Tex. July 26, 2021)......................7

*TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*,
91 F.3d 1, 4 (1st Cir.1996)) ....................................................................................5

*Voto Latino v. Scott*,
No. 1:21-cv-965-RP-JES-JVB (W.D. Tex.)..........................................................3

*Wilson v. Texas*,
No. 1:21-cv-943-RP-JES-JVB (W.D. Tex.) .........................................................2

*Wion v. Dretke*,
　　No. 7:05-cv-146, 2006 WL 8441507, at *2 (W.D. Tex. July 14, 2006) .................................................7

*Yeti-Coolers, LLC v. Beavertail Prods., LLC*,
　　No. 1:15-cv-415, 2015 WL 4759297, at *1–2 (W.D. Tex. Aug. 12, 2015) .................................... 4, 9

**Other Authorities**

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2382 (5th ed. 2019) ................7

## INTRODUCTION

There are five federal-court redistricting cases filed in the Western District challenging the new districts for the Texas House of Representatives, Senate, congressional delegation, and State Board of Education ("SBOE"). The cases overlap significantly and present a real risk of inconsistent injunctions. For these reasons and those that follow, the four actions listed below should be consolidated into this action pursuant to the first-to-file rule and Federal Rule of Civil Procedure 42.

Defendants Greg Abbott and John Scott[1] recently moved to consolidate these cases into a case pending in the Austin Division of the Western District of Texas, *Gutierrez v. Abbott*.[2] That motion was denied because *Gutierrez* case was "not the proper anchor for any redistricting cases that have been brought in regard to the Texas Legislature's 2021 statewide redistricting." *Gutierrez*, No. 1:21-cv-769-RP-JES-JVB, ECF 27 at 1 (W.D. Tex. Nov. 9, 2021) (Ex. A). Unlike the other redistricting plaintiffs, the *Gutierrez* plaintiffs challenge the *old* electoral districts and allege that the new maps are unlawful because the Texas Legislature lacked authority to pass them.[3] For this reason, the court explained, the *Gutierrez* complaint "is not a typical redistricting complaint addressing newly-enacted lines for an upcoming election cycle." *Id.* The court specifically noted, however, that its ruling was "without prejudice to any party, in this or any other of the pending three-judge redistricting cases, to seek or suggest consolidation" or other appropriate relief. *Id.* at 2.

In light of the *Gutierrez* panel's ruling, this case is "the proper anchor for any redistricting cases that have been brought in regard to the Texas Legislature's 2021 statewide redistricting." *Id.* at 1. It includes challenges to each of the State's four new maps, and it is the first-filed case to challenge any of the new maps under federal law.

---

[1] The Secretary of State is automatically substituted for the Deputy Secretary of State pursuant to Rule 25(d).

[2] Defendants recently learned of a seventh federal redistricting lawsuit filed in the Southern District, *John T. Morris v. Texas*, No. 4:21-cv-3456, ECF 1 (S.D. Tex. Oct. 20, 2021) (Ex. B). Defendants intend to seek consolidation of that case, but do not include it in this motion because they must first seek transfer from the Southern District.

[3] *See* Original Complaint, *Gutierrez*, No. 1:21-cv-769-RP-JES-JVB, ECF 1 at ¶¶ 12–36 (W.D. Tex. Sept. 1, 2021) (Ex. C).

Because redistricting plaintiffs ask for court-drawn maps, the risk of inconsistent relief is too great to allow cases attacking the same maps to proceed independently. These cases must be consolidated in some fashion, and consolidation into this case is the most practical option on the table.

## BACKGROUND

As demonstrated below, the five Western District redistricting cases are substantially similar.

**Table 1. Summary of Current Federal Redistricting Lawsuits.**

| Case | Number | Date Field | District | Division |
|---|---|---|---|---|
| *LULAC v. Abbott* | No. 3:21-cv-259 | 10/18/21 | Western | El Paso |
| *Wilson v. Texas* | No. 1:21-cv-943 | 10/18/21 | Western | Austin |
| *Voto Latino v. Scott* | No. 1:21-cv-965 | 10/25/21 | Western | Austin |
| *MALC v. Texas* | No. 1:21-cv-988 | 11/03/21 | Western | Austin |
| *Brooks v. Abbott* | No. 1:21-cv-991 | 11/03/21 | Western | Austin |

*LULAC v. Abbott.* LULAC and other organizations and individuals sue Governor Abbott and Secretary Scott, challenging Texas's House, Senate, congressional, and SBOE maps. They allege that those maps discriminate against Latino Texans and are malapportioned in violation of the Fourteenth Amendment and that they dilute Latino voting strength in violation of Section 2 of the Voting Rights Act ("VRA"). They ask the Court to prohibit operation of those maps, "set a reasonable deadline" for the Legislature to pass new maps, and if it does not, implement court-drawn maps. *See* ECF 1 ¶¶ 105–12, 115. This case is assigned to Judges Guaderrama, Smith, and Brown.

*Wilson v. Texas.*[4] Damon James Wilson sues the State of Texas, Governor Abbott, Secretary Scott, Speaker Phelan, and Lieutenant Governor Patrick, challenging Texas's congressional map. He alleges that the map designates state prisoners, like himself, as residents of the district where they are

---

[4] Original Complaint, No. 1:21-cv-943-RP-JES-JVB, ECF 1 (W.D. Tex. Oct. 18, 2021) (Ex. D).

incarcerated. He contends that state prisoners are entitled to be designated as residents of the district they lived in prior to incarceration, and that Texas's policy denies him equal representation in violation of the Fourteenth Amendment, and that the congressional districts are malapportioned. Wilson asks the court to prohibit operation of the congressional map, for the Legislature to pass new maps, and if it does not, for the panel to implement court-drawn maps. See Ex. D at 5–12, 18–19. This case is assigned to Judges Pitman, Smith, and Brown.

*Voto Latino v. Scott.*[5] Voto Latino and several individuals sue Secretary Scott and Governor Abbott, challenging Texas's congressional map. Specifying several districts, they allege those districts dilute the voting strength of Black and Latino Texans in violation of Section 2 of the Voting Rights Act. They request that the congressional map be prohibited from operating and replaced with a court-drawn map. Ex. E at ¶¶ 127–36, pp. 32–33. This case is assigned to Judges Pitman, Smith, and Brown.

*MALC v. Texas.*[6] MALC sues the State of Texas, Governor Abbott, and Secretary Scott, challenging Texas's House, congressional, and SBOE maps. Specifying districts in those maps, MALC alleges that they discriminate against Latinos. They bring claims for racial gerrymandering, intentional discrimination, and malapportionment in violation of the Fourteenth and Fifteenth Amendments, and vote dilution under Section 2 of the VRA. They ask the court to prohibit operation of those maps, "set a reasonable deadline" for the Legislature to pass new maps, and if it does not, implement court-drawn maps. Ex. F at ¶¶ 231–41, pp. 52–54. This case is assigned to Judges Pitman, Smith, and Brown.

*Brooks v. Abbott.*[7] Roy Brooks and other individuals sue Governor Abbott and Secretary Scott, challenging the Senate map. They allege SD 10 discriminates against Black and Latino Texans and constitutes intentional discrimination in violation of the Fourteenth and Fifteenth Amendments, and

---

[5] Original Complaint, No. 1:21-cv-965-RP-JES-JVB, ECF 1 (W.D. Tex. Oct. 25, 2021) (Ex. E).
[6] Original Complaint, No. 1:21-cv-988-RP-JES-JVB, ECF 1 (W.D. Tex. Nov. 3, 2021) (Ex. F).
[7] Original Complaint, No. 1:21-cv-991-LY-JES-JVB, ECF 1 (W.D. Tex. Nov. 3, 2021) (Ex. G).

Section 2 of the VRA, and vote dilution under Section 2. They ask the court to prohibit operation of that map, "set a reasonable deadline" for the Legislature to redraw it, and if not, implement court-drawn maps. Ex. G at ¶¶ 94–109, pp. 27–29. This case is assigned to Judges Yeakel, Smith, and Brown.

ARGUMENT

The litigation of the 2021 reapportionment of Texas's electoral districts is just beginning but accelerating rapidly. These cases require uniformity. Otherwise, Defendants could be forced to defend the same redistricting maps, involving similar challenges in multiple courts with different panels. Further, based on the remedies sought by the various plaintiffs, Defendants could face conflicting injunctions implementing conflicting court-drawn maps. And these five lawsuits are not likely to be the last ones filed in federal court. To avoid this dilemma, Defendants respectfully request that the Court grant their Motion to Consolidate and allow all five redistricting cases to proceed together.

## I.     The First-to-File-Rule Supports Consolidation in This Court

As explained above, and as informed by the *Gutierrez* court's decision, this case is the first-filed case "for purposes of deciding questions of consolidation and transfer" for the traditional redistricting lawsuits pending in federal court. Ex. A at 2. Of the federal cases that challenge Texas's new electoral districts, this case was filed first.[8] It thus falls to this Court to determine to proper course of action.

The Fifth Circuit's first-to-file rule applies when parties file substantially similar lawsuits. *See Yeti-Coolers, LLC v. Beavertail Prods., LLC*, No. 1:15-cv-415, 2015 WL 4759297, at *1–2 (W.D. Tex. Aug. 12, 2015). The rule is designed "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Sutter Corp. v. P&P Indus., Inc.*, 125 F.3d 914, 917 (5th Cir. 1997) (quotation omitted).

For the rule to apply, the cases need only "overlap on the substantive issues," and do not need

---

[8] To avoid confusion, Defendants note that this case and *Wilson v. Texas* were filed on the same day. But examination of the filing-fee-receipt numbers in each case demonstrates that this case (receipt number 0542-15344799) was filed before *Wilson* (receipt number 0542-15346532).

to be identical. *See Mann Mfg. Inc. v. Hortex, Inc.*, 429 F.2d 403, 408 n.6 (5th Cir. 1971). If "the overlap between two suits is less than complete, the judgment is made case by case, based on such factors as the extent of overlap," and the "likelihood of conflict." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 948 (5th Cir. 1997) (quoting *TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir.1996)).

The first-to-file rule "not only determines which court may decide the merits of substantially similar cases, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated." *Sutter*, 125 F.3d at 917. Thus, the consolidation issue is properly before this Court, not the courts presiding over the other actions.

These cases overlap on all pertinent issues. Most importantly, they ask for the same relief: for the court to prohibit operation of the current electoral maps and implement court-drawn ones. ECF 1 at 24–25; Ex. D at 18–19; Ex. E at 32–33; Ex. F at 52–53; Ex. G at 27–28. Thus, allowing the cases to proceed separately could result in five panels drawing three different congressional, and two House, Senate, and SBOE maps. That would impermissibly subject Defendants to inconsistent obligations. Consolidation is particularly appropriate where "a conflicting ruling could arise." *Hart v. Donostia LLC*, 290 F. Supp. 3d 627, 632 (W.D. Tex. 2018). Only then can the first-to-file rule serve its purpose: to "avoid piecemeal resolution of issues that call for a uniform result." *Sutter*, 125 F.3d at 917.

Moreover, the substantive legal challenges in each case are closely related because they all bring redistricting claims. *See* ECF 1 ¶¶ 105–12; Ex. D at 10–14; Ex. E ¶¶ 127–36; Ex. F ¶¶ 231–41; Ex. G ¶¶ 94–109. Regardless of whether a redistricting claim is based on vote dilution, intentional race discrimination, or malapportionment, the essence is the same: that a State drew its electoral maps such they violate an individual's voting rights. As explained by the Fourth Circuit, "it is clear that questions regarding the legitimacy of an apportionment scheme, whether under the Constitution or under the Voting Rights Act of 1965, are intimately related." *Page v. Bartels*, 248 F.3d 175, 190 (4th Cir. 2001).

These cases also involve similar parties. In each, the plaintiffs are individuals challenging the

apportionment of their districts or organizations purporting to bring the same challenge on behalf of their constituents. And in all five cases, Governor Abbott and Secretary Scott are named as defendants. *See* ECF 1 ¶¶ 10–29; Ex. D at 2–5; Ex. E ¶¶ 14–30; Ex. F ¶¶ 1–5; Ex. G ¶¶ 8–17.

Because these five "cases are . . . very similar, efficiency concerns dictate that only one court decide both cases." *Netlist, Inc. v. SK Hynix Inc.*, No. 6:20-cv-194, 2021 WL 2954095, at *2 (W.D. Tex. Feb. 2, 2021) (quotation omitted). True, they are not literally identical, but consolidation under the first-to-file rule "does not . . . require that cases be identical." *Save Power Ltd.,* 121 F.3d at 950. "The crucial inquiry is one of substantial overlap." *Id.* Defendants have met that standard here.

In short, the first-to-file rule provides that where two cases "overlap on the substantive issues," they should "typically" be "consolidated in . . . the jurisdiction first seized of the issues." *Sutter*, 125 F.3d at 917 (quoting *Mann*, 439 F.2d at 408 n.6). In that circumstance, consolidation in "the first-filed action is preferred." *Intertrust Techs. Corp. v. Cinemark Holdings, Inc.*, No. 2:19-cv-266, 2020 WL 6479562, at *7 (E.D. Tex. Sept. 30, 2020) (quotation omitted). These cases overlap on all meaningful substantive issues, and should therefore be consolidated in this Court under the first-to-file rule.

## II.    Rule 42 Supports Consolidation in This Court

Rule 42(a) of the Federal Rules of Civil Procedure gives an additional basis for consolidation. It provides that a court may consolidate two or more related actions if they involve "a common question of law or fact." These cases satisfy that threshold requirement. Most notably, they involve the exact same remedial question: If, in fact, a court *should* draw an interim remedial map, *how* should it do so? There are numerous other overlapping issues, including the effect of the population growth from 2010 to 2020 on Texas demographics and redistricting and whether the four new maps are valid.

Once that threshold condition is satisfied, consolidation is discretionary, but "[i]n this Circuit, district judges have been urged to make good use of Rule 42(a) . . . to expedite the trial and eliminate unnecessary repetition." *Gentry v. Smith*, 487 F.2d 571, 581 (5th Cir. 1973) (quotation omitted).

Whether to consolidate is guided by five factors:

(1) [W]hether the actions are pending in the same court; (2) whether there are common parties; (3) whether there are common questions of law or fact; (4) whether there is risk of prejudice or confusion versus a risk of inconsistent adjudications if the cases are tried separately; and (5) whether consolidation will promote judicial economy.

*Holmes v. City of San Antonio*, No. 5:21-cv-274, 2021 WL 2878551, at *1 (W.D. Tex. Mar. 30, 2021) (citing *Frazier v. Garrison Indep. Sch. Dist.*, 980 F.2d 1514, 1531–32 (5th Cir. 1993)). Courts also consider whether the cases are at "different stages of preparedness for trial." *Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 762 (5th Cir. 1989). Here, each factor favors consolidation.

### A.      The Actions Were Filed in the Same Court

The first factor asks whether the actions were filed before the same court. Cases from different districts may not be consolidated, but instead must first be transferred to the home district. *See* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2382 (5th ed. 2019); *Wion v. Dretke*, No. 7:05-cv-146, 2006 WL 8441507, at *2 (W.D. Tex. July 14, 2006); *Mann*, 429 F.2d at 408.

This factor weighs in favor of consolidation because all five cases were filed in the Western District of Texas. That this case was filed in a different division makes no difference because the rule requires only that the cases be before the same *district*, not the same *division*. *See Wion*, 2006 WL 8441507, at *2; *Texas v. United States*, No. 6:21-cv-16, 2021 WL 3171958, at *2 (S.D. Tex. July 26, 2021).

### B.      The Actions Involve Substantially Similar Parties

The second factor asks whether and to what extent the actions involve similar parties. As party overlap increases, so too does the efficiency gained by consolidation. *Compare Samarto v. Keller Williams Realty, Inc.*, No. 1:21-cv-76, 2021 WL 3596303, at *2–3 (W.D. Tex. Apr. 27, 2021), *with Brown v. Fort Hood Fam. Hous. LP*, No. 5:20-cv-704, 2020 WL 10758046, at *2 (W.D. Tex. Sept. 25, 2020).

This factor favors consolidation because the actions involve substantially similar parties. Each case includes Governor Abbott and Secretary Scott as defendants. True, there are different plaintiffs, but, as explained above, they are similar insofar as they are concerned with similar interests. *See* ECF

1 ¶¶ 10–29; Ex. D at 2–5; Ex. E ¶¶ 14–30; Ex. F ¶¶ 1–5; Ex. G ¶¶ 8–17.

### C.      The Actions Involve Nearly Identical Issues

The third factor asks whether and to what extent the actions involve similar questions of fact or law. If substantially similar cases are not consolidated, discovery and motion practice are "likely to be highly duplicative, which risks unnecessary costs and delay." *Dryshod Int'l, LLC v. Haas Outdoors, Inc.*, No. 1:18-cv-596, 2019 WL 5149860, at *2 (W.D. Tex. Jan. 18, 2019).

This factor weighs heavily in favor of consolidation because the five actions present nearly identical issues. Fundamentally, each case challenges the apportionment of Texas's electoral districts. *See* ECF 1 ¶¶ 105–12; Ex. D at 10–14; Ex. E ¶¶ 127–36; Ex. F ¶¶ 231–41; Ex. G ¶¶ 94–109. While an apportionment claim may be based on the Fourteenth Amendment, Section 2 of the VRA, or some other provision, at their core, all such claims are "closely similar, albeit not perfectly identical, challenges to the same state government action." *Page*, 248 F.3d at 191. This fundamental similarity is illustrated by the fact that all five cases will involve the same type of evidence, including demographic data related to the maps. *See Armour v. Ohio*, 925 F.2d 987, 988 (6th Cir. 1991) (en banc) ("The theories of liability and the proof underlying both the constitutional and statutory [redistricting] claims are intimately related.") And each case presents questions about whether the Court can and should order Governor Abbott and Secretary Scott to use court-drawn maps, and if so, *how* it ought to do so.

### D.      There is Little Risk of Confusion if the Cases are Consolidated, but Great Risk of Prejudice from Inconsistent Adjudications if They are Not

The fourth factor asks the Court to weigh the risk of confusion if the cases are consolidated against the risk and prejudice of inconsistent adjudications if they are not. *See, e.g., Lay v. Spectrum Clubs, Inc.*, No. 5:12-cv-754, 2013 WL 788080, at *2–3 (W.D. Tex. Mar. 1, 2013).

This factor weighs heavily in favor of consolidation because inconsistent adjudications would be especially prejudicial in these circumstances. Each set of plaintiffs asks for court-drawn maps. *See* ECF 1 at 24–25; Ex. D at 18–19; Ex. E at 32–33; Ex. F at 52–53; Ex. G at 27–28. Needless to say,

having at least three separate sets of congressional, and two sets of House, Senate, and SBOE maps would place Defendants in an untenable position. Courts impose such maps through injunctive relief, so Defendants would face inconsistent obligations on pain of contempt. This reason alone suffices to justify consolidation. *Compare Jine v. OTA Corp.*, No. 8:20-cv-1152, 2020 WL 7129374, at *13–14 (C.D. Cal. Sept. 11, 2020) (contrasting requests for injunctive relief), *with LeGrand v. N.Y. Transit Auth.*, No. 1:95-cv-333, 1999 WL 342286, at *5 (E.D.N.Y. May 26, 1999) (opposite); *see Dupont v. S. Pac. Co.*, 366 F.2d 193, 196 (5th Cir. 1966) (court commits reversible error "[w]here prejudice to rights of the parties obviously results from the order of consolidation").

Similarly, each case is likely to include similar discovery. Inconsistent resolution of privilege issues, for example, would be especially harmful. If the first court sustained a privilege objection while the second court overruled the same objection, the disclosure required by the other courts' rulings would effectively undermine the first court's ruling. The increasing number of redistricting cases only compounds these issues. Perhaps as much as any other type of case, statewide redistricting cases "call for a uniform result." *Yeti Coolers*, 2015 WL 4759297, at *1 (quotation omitted).

On the other side of the scale, consolidation poses no risk of confusion or prejudice. These cases raise only equitable claims, so there will be no jury to confuse the issues. And if consolidation would pose any procedural confusion, it would be far outweighed by the parties' uniformity interests.

### E.     Consolidation Will Conserve Judicial Resources

The fifth factor asks whether consolidation will conserve resources and promote judicial economy. Judicial economy is promoted where the related actions will draw from the same witnesses or sources of discovery, involve similar legal briefing, turn on similar issues of fact or law, or are otherwise able to efficiently proceed together. *Frazier*, 980 F.2d at 1532.

Consolidation is required here because it will prevent unnecessary litigation. There is no need for the parties to go through five rounds of discovery. And there is no need for five different panels

to decide the same redistricting issues, especially given that there is substantial, but incomplete, overlap of panel membership. In short, consolidation would conserve judicial resources because having the same judges decide the same issues on the same relief in a piecemeal fashion would be inefficient.

### F. The Actions are at an Early Stage of Development

Courts also consider whether actions are at similar stages of development. In this regard, it is efficient to consolidate cases that are each newly filed, or ready for trial. Likewise, it is inefficient to consolidate cases that are at different stages in the litigation process. *See Lay*, 2013 WL 788080, at *3.

This factor weighs in favor of consolidation because all five actions are at very early stages of development and were filed only two weeks apart. No discovery has been exchanged nor has an initial conference been held. Consolidation does not delay any action or impose any logistical concerns.

*       *       *

The cases should be consolidated in this action because the "common practice" in the Western District is "for cases to be consolidated into the first-filed case." *Holmes*, 2021 WL 2878551, at *2; *Settles v. United States*, No. 17-cv-1272, 2018 WL 5733195, at *2 (W.D. Tex. May 18, 2018).

Consolidation is the norm for redistricting litigation. Indeed, many different parties and claims were consolidated before the same three-judge panel during the 2010 litigation. *See Perez v. Texas*, No. 5:11-cv-360-OLG-JES-XR, ECF 23 (W.D. Tex. July 6, 2011); *see also id.* ECF 63, 72, 76 (adding further parties and claims). It is simply impractical to have each redistricting case proceed separately, especially when so many sets of plaintiffs want each court to impose a unique map. There must be one forum that ensures consistency. Under the first-to-file rule and Rule 42, this Court should be that forum.[9]

**CONCLUSION**

Defendants respectfully request that the Court grant their Motion to Consolidate.

---

[9] To the extent the Court prefers consolidation into a different case, Defendants note that "[a] district court is permitted to order consolidation pursuant to Federal Rule of Civil Procedure 42(a) *sua sponte*." *Lester v. Exxon Mobil Corp.*, 879 F.3d 582, 592 (5th Cir. 2018). *That* the cases are consolidated is more important to Defendants than *where* the cases are consolidated.

Date: November 10, 2021

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
Tex. State Bar No. 24088531

JACK B. DISORBO
Assistant Attorney General
Tex. State Bar No. 24120804

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov
jack.disorbo@oag.texas.gov

**COUNSEL FOR DEFENDANTS**

## CERTIFICATE OF CONFERENCE

I certify that on November 10, 2021, counsel for the Defendants conferred with counsel for Plaintiffs about the foregoing motion. Plaintiffs are unopposed to the relief sought. Defendants also conferred with counsel for *Wilson*, *Voto Latino*, and *Brooks*. The *Brooks* Plaintiffs believe their case "should be consolidated with whichever of the earlier filed cases is deemed the lead case," and "take no position as to which case that should be." *Wilson* and *Voto Latino* are opposed. Defendants emailed counsel for *MALC* in the morning of November 10 to confer. At the time of this motion's filing, the *MALC* Plaintiffs had not responded.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on November 10, 2021, and that all counsel of record were served by CM/ECF.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN

11

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, et al.,<br><br>     Plaintiffs,<br><br>  v.<br><br>GREG ABBOTT, et al.,<br><br>     Defendants. | Civil Action<br><br><br>Case No. 3:21-cv-259-DCG-JES-JVB |

***VOTO LATINO* PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO CONSOLIDATE**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ ii

TABLE OF AUTHORITIES ............................................................................................... iii

INTRODUCTION ................................................................................................................ 1

ARGUMENT ........................................................................................................................ 1

    I.    Consolidation is impermissible because *LULAC* and *Voto Latino* are not before the same court. ..................................................................................................................... 1

        A.    Consolidation is permissible only between cases properly before the same court. ........ 2

        B.    *LULAC* is properly before a three-judge court convened under § 2284 and *Voto Latino* is not. ................................................................................................................... 2

        C.    Three-judge courts convened under § 2284 are separate, standalone "courts," not arms or panels of ordinary district courts. .............................................................................. 5

        D.    Transfer of venue cannot solve this problem because *LULAC* must be heard by a three-judge court and *Voto Latino* may not be. ...................................................................... 8

    II.    Other factors also weigh against consolidation in El Paso. ............................................... 9

CONCLUSION .................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Appalachian Power Co. v. Region Props., Inc.*,
    364 F. Supp. 1273 (W.D. Va. 1973) .........................................................................5

*Bowles v. Russell*,
    551 U.S. 205 (2007).........................................................................................4

*Castañon v. United States*,
    444 F. Supp. 3d 118 (D.D.C. 2020)...............................................................4

*Chestnut v. Merrill*,
    356 F. Supp. 3d 1351 (N.D. Ala. 2019)........................................................3

*Fid. & Deposit Co. of Md. v. Casablanca Constr., Inc.*,
    No. 5:19-CV-62-DCB-MTP, 2020 WL 1238194 (S.D. Miss. Mar. 13, 2020).........................2

*Hart v. Kennedy*,
    314 F. Supp. 823 (W.D. Okla. 1969) ...........................................................7

*Jacobs v. Tawes*,
    250 F.2d 611 (4th Cir. 1957) .................................................................7, 8

*Jehovah's Witnesses in State of Wash. v. King Cnty. Hosp. Unit No. 1
(Harborview)*,
    278 F. Supp. 488 (W.D. Wash. 1967), *aff'd*, 390 U.S. 598 (1968) .........................7

*Kontrick v. Ryan*,
    540 U.S. 443 (2004).........................................................................................4

*Mitchell v. Donovan*,
    398 U.S. 427 (1970).........................................................................................8

*Mourik Int'l B.V. v. Reactor Servs. Int'l, Inc.*,
    182 F. Supp. 2d 599 (S.D. Tex. 2002) .....................................................2, 5

*Nixon v. Richey*,
    513 F.2d 430 (D.C. Cir. 1975) .......................................................................4

*Sands v. Wainwright*,
    491 F.2d 417 (5th Cir. 1973) .........................................................................3

*St. Bernard Gen. Hosp., Inc. v. Hosp. Serv. Ass'n of New Orleans, Inc.*,
    712 F.2d 978 (5th Cir. 1983) .........................................................................9

*Swindell-Dressler Corp. v. Dumbauld*,
    308 F.2d 267 (3d Cir. 1962)..................................................................2

*Thomas v. Reeves*,
    961 F.3d 800 (5th Cir. 2020) (en banc) (Costa, J., concurring)............................3, 4

*United States v. Brandt Constr. Co.*,
    826 F.2d 643 (7th Cir. 1987) ...............................................................5

*United States v. Texas*,
    523 F. Supp. 703 (E.D. Tex. 1981) .........................................................4

*Wilson v. Gooding*,
    431 F.2d 855 (5th Cir. 1970) ...........................................................4, 9

**Statutes**

28 U.S.C. § 46(b) ...........................................................................6

28 U.S.C. § 137(a) ..........................................................................6

28 U.S.C. § 291(b) ..........................................................................6

28 U.S.C. § 292(b) ..........................................................................6

28 U.S.C. § 1331 ............................................................................4

28 U.S.C. § 1404(a) ........................................................................8

28 U.S.C. § 2284 ...................................................................... *passim*

**Other Authorities**

Federal Rule of Civil Procedure 42 ....................................................2, 5, 8

## INTRODUCTION

The Court cannot do as Defendants ask. Cases must be pending before the same court to be consolidated, and *Voto Latino v. Scott*, No. 1:21-cv-965, and this case, *LULAC v. Abbott*, No. 3:21-cv-259, are not. *LULAC* is before this "district court of three judges," "convened" pursuant to 28 U.S.C. § 2284(a), because *LULAC* includes constitutional challenges to congressional districts and statewide legislative bodies. *LULAC*, ECF No. 1 ¶¶ 105-110, 113. *Voto Latino*, in contrast, is properly before Judge Pitman as a single judge of the Western District of Texas, because *Voto Latino* includes only *statutory* challenges to congressional districts and therefore falls outside the jurisdiction of a three-judge district court.[1] *Voto Latino*, ECF No. 1 ¶¶ 127-136. Because *LULAC* and *Voto Latino* are before different courts, consolidation is impermissible.

Even if consolidation were possible, it would be unwarranted. *Voto Latino* is a far narrower case than *LULAC*: *LULAC* includes both constitutional and statutory challenges to congressional, state house, state senate, and board of education districts, whereas *Voto Latino* consists of only a single statutory challenge to the congressional plan. The parties are not substantially similar, and inconsistent relief is unlikely to be an issue because the cases seek complementary relief.

This Court should deny Defendants' motion to consolidate *Voto Latino* with *LULAC*.

## ARGUMENT

### I. Consolidation is impermissible because *LULAC* and *Voto Latino* are not before the same court.

Two cases may be consolidated only if they are pending before the same court. Consolidation between *LULAC* and *Voto Latino* is therefore impermissible, because *LULAC* is

---

[1] Chief Judge Owen recently ordered *sua sponte* that a three-judge district court be convened to hear the *Voto Latino* case, *see Voto Latino*, No. 1:21-cv-00965-RP-JES-JVB, ECF No. 13, but as explained below, *infra* Part I.B, and in a pending motion for reconsideration and to remand, *Voto Latino*, ECF No. 14, that order was without statutory authority, and the fact that *Voto Latino* is temporarily and erroneously before a three-judge court does not affect the analysis herein.

pending before a three-judge court pursuant to 28 U.S.C. § 2284 and *Voto Latino* falls outside that provision and is not properly before such a court. Section 2284 makes clear that a three-judge court convened under that provision is a separate "court" from the ordinary district court in which a case was filed. And *Voto Latino* cannot be transferred to this three-judge Court to allow consolidation, nor *LULAC* transferred to Judge Pitman as a single judge of the Western District of Texas, because *Voto Latino* could not have been brought before a three-judge court, and *LULAC* may not be heard by an ordinary district court.

**A. Consolidation is permissible only between cases properly before the same court.**

Defendants concede that two cases may be consolidated only if they are pending before the same court. Mot. at 7. This limitation comes directly from the text of Federal Rule of Civil Procedure 42(a), which authorizes consolidation only of "actions before the court." Courts have therefore consistently held that cases which are not "actually 'pending before the Court'" in which consolidation is sought are "never subject to Rule 42 consolidation." *Mourik Int'l B.V. v. Reactor Servs. Int'l, Inc.*, 182 F. Supp. 2d 599, 602 (S.D. Tex. 2002). "[A] cause of action pending in one jurisdiction cannot be consolidated with a cause of action pending in another jurisdiction. Rule 42(a) . . . will not permit such a course." *Swindell-Dressler Corp. v. Dumbauld*, 308 F.2d 267, 273 (3d Cir. 1962) (footnotes omitted); *see also Fid. & Deposit Co. of Md. v. Casablanca Constr., Inc.*, No. 5:19-CV-62-DCB-MTP, 2020 WL 1238194, at *1 (S.D. Miss. Mar. 13, 2020) ("The Court may consolidate actions only if they are pending in the same district.").

**B. *LULAC* is properly before a three-judge court convened under § 2284 and *Voto Latino* is not.**

The rule against consolidating cases pending before different courts precludes consolidation here, because *LULAC* is properly pending before this specially "convened" "district court of three judges" pursuant to 28 U.S.C. § 2284, and *Voto Latino* is not. *LULAC* includes

constitutional challenges to the apportionment of Texas's congressional and state legislative maps, and therefore falls squarely within § 2284's three-judge court provision. *See* 28 U.S.C § 2284(a) ("A district court of three judges shall be convened . . . when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body."); *LULAC*, ECF No. 1 ¶¶ 105-110, 113.

*Voto Latino*, in contrast, brings only a statutory challenge to the apportionment of congressional districts. *Voto Latino*, ECF No. 1 ¶¶ 127-136. It therefore falls outside the scope of Section 2284's three-judge court provision, because it does not "challeng[e] the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body." 28 U.S.C. § 2284(a). While there has been some recent debate in the Fifth Circuit about the scope of the three-judge court requirement in statutory challenges to *state legislative maps*, all eleven judges to address the issue were unanimous that Section 2284 does not provide for a three-judge court to hear purely statutory challenges to congressional maps. *See Thomas v. Reeves*, 961 F.3d 800, 802 (5th Cir. 2020) (en banc) (Costa, J., concurring) (concluding on behalf of six judges that § 2284 "require[s] a three-judge court only for constitutional challenges" to both state and federal maps); *id.* at 811 (Willett, J., concurring) (concluding on behalf of five judges that § 2284 may require a three-judge court for statutory challenges to state legislative maps, but agreeing that "only *constitutional* challenges to *federal* maps require three judges"); s*ee also Chestnut v. Merrill*, 356 F. Supp. 3d 1351, 1354 (N.D. Ala. 2019) ("A claim solely alleging a Section 2 violation falls outside a plain reading of § 2284.").

A three-judge court thus may not be convened under Section 2284 to hear *Voto Latino*. The three-judge court requirement is "'a serious drain upon the federal judicial system'" and must "be narrowly construed." *Sands v. Wainwright*, 491 F.2d 417, 421 (5th Cir. 1973) (quoting *Phillips v.*

*United States*, 312 U.S. 246, 250 (1941)). Three-judge courts therefore may be "convened only where compelled by the express terms of the statute." *United States v. Texas*, 523 F. Supp. 703, 725 (E.D. Tex. 1981). And they are to be used "only and strictly as Congress has prescribed." *Nixon v. Richey*, 513 F.2d 430, 446 (D.C. Cir. 1975).

Moreover, these limitations are jurisdictional. "Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider." *Bowles v. Russell*, 551 U.S. 205, 212 (2007). Statutes "delineating the classes of cases . . . falling within a court's adjudicatory authority" therefore serve as limits on federal courts' "subject-matter jurisdiction." *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004). That is just what § 2284 does in specifying which cases a three-judge court may be convened to hear. *See* 28 U.S.C. § 2284(a). As a result, where a case falls outside of the three-judge court statute, "there is no . . . jurisdiction" to convene a three-judge court to hear the case. *Wilson v. Gooding*, 431 F.2d 855, 858 (5th Cir. 1970); *see also Castañon v. United States*, 444 F. Supp. 3d 118, 128 (D.D.C. 2020) (referring to § 2284 as the three-judge court's "statutory jurisdictional grant"). Once the three-judge court's jurisdiction has been properly invoked in a case, it may be able to "exercise a brand of supplemental jurisdiction" over additional questions in that same case. *See Castañon*, 444 F. Supp. 3d at 128. But that does not excuse the requirement that there be adequate statutory authority to place the case before the three-judge court in the first instance.[2]

---

[2] This issue—that a three-judge court lacks jurisdiction over cases falling *outside* the three-judge court statute—is separate from the issue debated in the concurrences in *Thomas* of whether an ordinary district court lacks jurisdiction over cases falling *within* the three-judge court statute. *See Thomas*, 961 F.3d at 804 n.5 (Costa, J., concurring); *id.* at 826 (Willett, J., concurring). The issue debated in *Thomas* was whether an ordinary district court could hear a case falling within the three-judge court statute. Other federal statutes, including 28 U.S.C. § 1331's grant of federal-question jurisdiction, empower ordinary district courts to hear federal constitutional and statutory challenges to apportionment. The question was therefore whether § 2284 *strips* ordinary district

For this reason, while Chief Judge Owen recently, in a *sua sponte* order, convened a three-judge court to hear *Voto Latino*, ECF No. 13, the *Voto Latino* Plaintiffs have moved for reconsideration of that order and remand to Judge Pitman, the single judge of the U.S. District Court for the Western District of Texas to whom *Voto Latino* is assigned. *Voto Latino*, ECF No. 14. The fact that *Voto Latino* is temporarily and erroneously pending before a three-judge court as a result of Chief Judge Owen's *sua sponte* order does nothing to change the analysis, because there was no jurisdiction to convene a three-judge court to adjudicate *Voto Latino*. *Voto Latino*'s status before the three-judge court is akin to that of an action that was improperly removed from state court to federal court without a basis for federal jurisdiction. As courts have explained, such an "improperly removed action [is] never actually 'pending before the Court,' and therefore [is] never subject to Rule 42 consolidation." *Mourik Int'l B.V.*, 182 F. Supp. 2d at 602; *see also, e.g.*, *United States v. Brandt Constr. Co.*, 826 F.2d 643, 647 (7th Cir. 1987) ("Rule 42(a) requires that *both* actions be 'pending before the court' and an improperly removed action does not meet this criterion."); *Appalachian Power Co. v. Region Props., Inc.*, 364 F. Supp. 1273, 1277 (W.D. Va. 1973) ("[T]his court has no authority to consolidate an action of which it has jurisdiction with one of which it does not.").

### C.  Three-judge courts convened under § 2284 are separate, standalone "courts," not arms or panels of ordinary district courts.

The fact that only *LULAC*, and not *Voto Latino*, is properly pending before this three-judge court is dispositive, because Section 2284's text makes clear that three-judge courts are separate "courts," not mere arms or panels of the ordinary district courts in which the cases before them

---

courts of such jurisdiction by requiring a three-judge court. In contrast, there is no other source of authority to convene three-judge courts to hear cases, like this one, falling *outside* the three-judge court statute. Three-judge district courts have no independent existence or authority and are "convened" only when necessary and authorized to hear an action within the scope of § 2284, so their authority is necessarily limited by that same statute. *See* 28 U.S.C. § 2284(a).

were originally filed. This is so for at least three reasons.

*First*, Section 2284 repeatedly and expressly refers to the body that is "convened" to hear constitutional apportionment challenges as a "district *court* of three judges," not as a mere "panel" of an existing court. *See* 28 U.S.C. § 2284(a) ("A *district court* of three judges shall be convened . . . ."); *id.* § 2284(b) ("In any action required to be heard and determined by a *district court* of three judges . . . ."); *id.* § 2284(b)(1) (judges designated to serve "shall serve as *members of the court* to hear and determine the action or proceeding"). Title 28 elsewhere carefully distinguishes between "panels" and "courts," as when it provides that "[i]n each circuit the *court* may authorize the hearing and determination of cases and controversies by separate *panels*, each consisting of three judges . . . ." *Id*. § 46(b) (emphases added). Had Congress sought to provide for apportionment challenges to be heard by a three-judge panel of an existing district court, rather than convening a new three-judge district court, it could easily have said so.

*Second*, Section 2284's requirement that the chief judge *of the circuit* designate the members of the three-judge district court, and its requirement that one of those judges be a circuit judge, would make little sense if the three-judge court were simply an arm or panel of the district court in which the case is filed. It is the responsibility of the chief judge of *the district court* to "divide the business and assign the cases" before that district court in accordance with the rules of the court. *Id*. § 137(a). Having the chief judge of the circuit assign members makes sense, however, if the three-judge court is a separate, specially-convened district court, because the chief judge of the circuit is ordinarily tasked with designating both circuit and district judges to sit temporarily on *different* district courts within the circuit. *See Id*. §§ 291(b), 292(b).

*Third*, § 2284(b)(3)'s provision allowing a single judge to conduct certain proceedings but providing that "[a]ny action of a single judge may be reviewed *by the full court* at any time before

final judgment" makes sense only if the three-judge district court is a separate "court," rather than an arm or panel of an existing district court. *Id*. § 2284(b)(3) (emphasis added). Title 28 elsewhere specifies that "[e]ach district court shall consist of the district judge or judges for the district in regular active service." *Id*. § 132(b). If a three-judge court convened pursuant to § 2284 were a mere panel or arm of an existing district court, then § 2284(b)(3)'s provision for review "by the full court" would seem unavoidably to empower only *the entire district court*—that is, all active judges of the district court in which the case was originally filed—to review decisions made by a single judge in a three-judge case pursuant to § 2284(b). That would make no sense in the context of a statute that elsewhere makes clear that it is the three designated judges who must "serve as members of the court to hear and determine the action or proceeding." *Id.* § 2284(b)(1).

Section 2284's text thus demonstrates that a three-judge district court convened pursuant to that provision is an entirely separate court from the ordinary district court in which the case was originally filed. Precedent confirms this conclusion. Three-judge courts have held that "[t]he three-judge district court is . . . an extraordinary court and technical requirements relating to its jurisdiction are to be strictly construed." *Jehovah's Witnesses in State of Wash. v. King Cnty. Hosp. Unit No. 1 (Harborview)*, 278 F. Supp. 488, 493 (W.D. Wash. 1967), *aff'd*, 390 U.S. 598 (1968). And they have explained that "[a] three-judge court does not exist until it has been created by the Chief Judge of the Circuit." *Hart v. Kennedy*, 314 F. Supp. 823, 824 (W.D. Okla. 1969). Each of those descriptions is consistent with Section 2284's text in describing the three-judge court as a separate and distinct court from the district court in which suit was filed.[3]

---

[3] In a 1957 case, the Fourth Circuit stated without consideration of the statutory text that a "court of three judges is not a different court from the District Court, but is the District Court composed of two additional judges sitting with the single District Judge before whom the application for injunction has been made." *Jacobs v. Tawes*, 250 F.2d 611, 614 (4th Cir. 1957). That statement

"[T]he three-judge-court legislation is not 'a measure of broad social policy to be construed with great liberality,' but is rather 'an enactment technical in the strict sense of the term and to be applied as such.'" *Mitchell v. Donovan*, 398 U.S. 427, 431 (1970) (quoting *Phillips*, 312 U.S. at 251). The legislation therefore "is to be literally construed." *Id.* And the literal terms of § 2284 make it unmistakably clear that the three-judge court is a separate court, not a mere panel or arm of the district court in which suit is brought. Thus, because *LULAC* is properly pending before a three-judge court and *Voto Latino* is not, the two cases are not pending before the same court, and they may not be consolidated pursuant to Rule 42(a).

### D.  Transfer of venue cannot solve this problem because *LULAC* must be heard by a three-judge court and *Voto Latino* may not be.

Usually, if a party wants to consolidate two federal cases that are not pending before a single court, the party will first move to transfer one of the cases to the court that is hearing the other case. Such transfer is impossible here, however. Absent consent, a case may be transferred only to a "district or division where it might have been brought." 28 U.S.C. § 1404(a). Even assuming that this statute authorizes transfer to a three-judge district court specially convened pursuant to Section 2284, which is far from clear, it would not allow the transfer of *Voto Latino* to this three-judge Court, because *Voto Latino* could not "have been brought" in this Court, as it does not fall within Section 2284's three-judge court provision. *Supra* Part I.B. Nor could this Court transfer *LULAC* to the Western District of Texas for it to be heard by a single judge, because Section 2284 requires that *LULAC* be heard by three-judge court. In sum, because Section 2284 both *requires* that *LULAC* be heard by a three-judge court and *precludes* such a court from being convened to hear *Voto Latino*, no transfer of venue could possibly bring the two cases before the

---

was dictum, as the court's holding turned on the scope of the three-judge court requirement, not on the relationship between the three-judge court and the district court in which suit was filed. *See id.* And the court did not address the text of Section 2284 before making that statement. *See id.*

same "court" so as to allow consolidation.

## II. Other factors also weigh against consolidation in El Paso.

Even if consolidation were permissible, other factors weigh against it here. *First*, consolidation will prejudice the *Voto Latino* Plaintiffs by unavoidably slowing down adjudication of their claims. *Voto Latino* is a narrow, targeted case: it challenges only the congressional map, and only on the single theory that it violates Section 2 of the Voting Rights Act. *See Voto Latino*, ECF No. 1 ¶¶ 127-136. In contrast, *LULAC* is a far more complex and sprawling action: it challenges four sets of maps (congressional, state senate, state house, and state board of education) on both constitutional and statutory grounds. *See LULAC*, ECF No. 1. The broad claims in *LULAC* will inevitably take far longer to resolve than the more targeted claims in *Voto Latino*. This will prejudice the *Voto Latino* plaintiffs, who will face the danger of elections being held under an unlawful map before their claim can be fully resolved. And as the Fifth Circuit has repeatedly held, "[c]onsolidation is improper if it would prejudice the rights of the parties." *St. Bernard Gen. Hosp., Inc. v. Hosp. Serv. Ass'n of New Orleans, Inc.*, 712 F.2d 978, 989 (5th Cir. 1983) (quoting *Dupont v. S. Pac. Co.*, 366 F.2d 193, 195–96 (5th Cir. 1966)).

*Second*, the parties to the cases are not substantially similar. The only overlap is the two official-capacity defendants—Governor Abbott and Secretary Scott—who are surely defendants in hundreds of lawsuits. The plaintiffs in the cases are entirely separate—different, unrelated organizations, and different individual Texans. Defendants argue that plaintiffs "are similar insofar as they are concerned with similar interests," but they do not cite any case finding parties to be substantially similar for that reason. Mot. at 7. Defendants' tacit assumption that unrelated civil rights groups and individual voters are interchangeable is both offensive and unsupported.

*Third*, for the reasons given in the *Wilson* Plaintiffs' response in opposition to Defendants' Motion, *LULAC*, ECF No. 10 at 5-9, consolidation in El Paso rather than Austin is inconvenient

and impractical in a case that relates principally to events that occurred in Austin, and in which Texas counsel overwhelmingly have their offices in Austin.

*Fourth*, Defendants' fear of inconsistent relief is overstated. At the outset, with respect to *Voto Latino*, the concern is limited to the congressional map. There is no prospect for inconsistency with respect to the state legislative maps, because *Voto Latino* does not challenge them. And even with respect to the congressional map, there is no realistic prospect of inconsistent relief. Plaintiffs' claims in the two cases are complementary, not conflicting. Plaintiffs in both cases allege that the congressional map dilutes the voting strength of Latino voters. *See Voto Latino*, ECF No. 1 ¶¶ 129-136; *LULAC*, ECF No. 1 ¶¶ 81-84, 100-104. The *LULAC* plaintiffs allege that "at least two additional congressional districts" in which Latino voters make up a majority are possible, and that existing Latino-majority districts should be strengthened. *LULAC*, ECF No. 1 ¶¶ 100-104. The *Voto Latino* Plaintiffs allege that at least four additional such districts are possible. *Voto Latino*, ECF No. 1 ¶¶ 130, 132. And plaintiffs in both cases seek orders for state authorities to adopt a new congressional plan that addresses this deficiency. *LULAC* ECF No. 1 ¶ 115(e); *Voto Latino*, ECF No. 1 at p. 33. There is no reason to believe that these complementary allegations will produce conflicting instructions that the state authorities are unable to follow. And while it is conceivable that a court will need to itself draw a map, it is premature to allow that as-yet speculative possibility to dictate the entirety of these proceedings. Should a court-drawn map become necessary, coordination within the judiciary—such as the appointment of a common special master in all relevant cases—could resolve any concerns.

## CONCLUSION

For the reasons set forth above, the *Voto Latino* Plaintiffs respectfully request that Defendants' Motion to Consolidate be denied as to *Voto Latino*.

Dated: November 15, 2021.        Respectfully submitted,

*/s/ Renea Hicks*
Renea Hicks
Attorney at Law
Texas Bar No. 09580400
Law Office of Max Renea Hicks
P.O. Box 303187
Austin, TX 78703-0504
(512) 480-8231
rhicks@renea-hicks.com

Abha Khanna*
**ELIAS LAW GROUP LLP**
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
Telephone: (206) 656-0177
akhanna@elias.law

Aria C. Branch*
David R. Fox*
Kathryn E. Yukevich*
**ELIAS LAW GROUP LLP**
10 G Street NE, Suite 600
Washington, D.C. 20002
Telephone: (202) 968-4490
abranch@elias.law
dfox@elias.law
kyukevich@elias.law

Kevin J. Hamilton*
**PERKINS COIE LLP**
1201 Third Avenue
Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
khamilton@perkinscoie.com

*Counsel for Plaintiffs*
*Admitted *Pro Hac Vice*

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on November 15, 2021, and that all counsel of record were served by CM/ECF.

*/s/ Renea Hicks*