# EXHIBIT 3-L

| | |
|---|---|
| **From:** | Beverly Powell |
| **To:** | Todd Hunter |
| **Cc:** | Toni Rose; Rafael Anchia; Craig Goldman; Ryan Guillen; Jacey Jetton; Brooks Landgraf; Ina Minjarez; Joe Moody; Geanie Morrison; Andrew Murr; Mike Schofield; Senfronia Thompson; Chris Turner; James White |
| **Subject:** | Concerns Regarding SB 4 and Proposed SD 10 |
| **Date:** | Sunday, October 10, 2021 8:02:00 PM |
| **Attachments:** | Sen Powell Letter to Chair Hunter 10.10.21.pdf <br> 2012 DC Court Opinion.pdf <br> SD10 - plans2100r100.pdf <br> SD10 - plans2100r116_acs1519.pdf <br> SD10 Map Packet.pdf <br> Senate District 10 Facts.pdf |
| **Importance:** | High |

Dear Chairman Hunter and Committee Members,

In advance of tomorrow's committee hearing on Senate Bill 4, I wanted to bring to your attention a proposed redraw of Texas Senate District 10, which would reduce the district's minority population by 8% (according to ACS estimates)—cleaving through minority neighborhoods to prevent minority voters from uniting to elect their preferred candidates. The circles below show over 150,000 minorities, according to the 2020 census, who are removed by the proposed plan and replaced with Anglo residents from seven rural counties. This plan would achieve its aim: Tarrant County's 1.2 million minorities—the majority of the county's population—would lose the only senate district in which they can unite to elect their preferred senator.



The Supreme Court has warned that it is intentional racial discrimination to destroy an effective crossover district like SD10, and federal courts blocked this precise effort to dismantle SD10's minority population in 2011, forcing the State to pay over $1 million in plaintiffs' attorneys' fees.

Attached is a letter to the Chair and committee members, with accompanying attachments.

I bring this information to your attention on behalf of my constituents whose voices would be silenced under the proposed redraw. Cracking apart minority voters and submerging them in districts featuring Anglo bloc voting against minority-preferred candidates violates the Constitution

and the Voting Rights Act. This is unacceptable and a direct attack on the ability of my constituents to elect a candidate of their choice.

Best,

Beverly Powell

Case 3:21-cv-00259-DCG-JES-JVB   Document 39-20   Filed 11/24/21   Page 3 of 9

COMMITTEE ON EDUCATION
COMMITTEE ON HEALTH AND HUMAN SERVICES
COMMITTEE ON STATE AFFAIRS
COMMITTEE ON WATER, AGRICULTURE & RURAL AFFAIRS



**SENATOR BEVERLY POWELL**
DISTRICT 10

October 10, 2021

State Representative Todd Hunter
Chair, House Committee on Redistricting
Room 1W.5
P.O. Box 2910
Austin, TX 78768
**VIA EMAIL**

Dear Chairman Hunter:

    On October 6, 2021, Senate Bill 4 was referred to the House Committee on Redistricting. I am writing to express my deep concerns with the proposed redraw of Senate District 10. Additionally, I have attached electronic copies of information that I provided with the Chair of the Senate Redistricting Committee, Senator Joan Huffman, including: (1) maps showing the location of minority voters within SD10 and showing how they have succeeded electorally, (2) a copy of the 2012 federal court decision ruling that the Legislature's prior effort to dismantle SD10 in 2011 was unlawful intentional discrimination against minority voters, (3) a fact sheet explaining SD10's status as a performing coalition and crossover district for minority voters, and (4) information from the Texas Legislative Council about the demographic makeup of SD10 as it is drawn today.

    Based on the map as passed by the Senate, I have highlighted below several legal deficiencies with the proposed plan. The map below shows, in red circles, the concentrations of minority voters that have been cleaved from SD10, splitting SD10's minority voters apart and submerging them into separate districts dominated by white bloc voting against minority-preferred candidates. The areas shown in the red circles include over 250,000 people with a CVAP (Citizen Voting Age Population) that is 45.9% Anglo, 29% Latino, and 19.6% Black.



SD10 currently has an Anglo CVAP of 53.9%, a Black CVAP of 20.5%, and a Latino CVAP of 20.4%. In addition to being politically cohesive within SD 10, minority voters in SD10 also have consistently succeeded electorally by working together with a minority of Anglo voters who "crossover"—as the United States Supreme Court has characterized it—to vote for minority-preferred candidates.

The Senate map passed by the Senate dismantles SD10 as a functioning coalition and crossover district. The map before the House Redistricting Committee redraws SD10 to have an Anglo CVAP of roughly 62%, a Black CVAP of 17%, and a Latino CVAP of 17%—a roughly 8% increase in the Anglo share of the district, according to ACS estimates. Moreover, in addition to cleaving SD10's politically cohesive minority voters, the proposal also eliminates the Tarrant County "crossover" Anglo voters with whom SD10's minority voters have formed a political coalition and replace them with Anglo voters in seven rural counties who uniformly reject minority-preferred candidates. The map below shows in red circles areas including roughly 115,000 people with an Anglo CVAP of 78.1%:



In the areas shown in red, a portion of Anglo voters crossover to support minority-preferred candidates. Together, the areas shown in red are nearly 80% Anglo CVAP, but the Anglo-preferred candidates generally receive vote percentages of 16-19 points below that number (*i.e.* Anglo-preferred candidates receive about 61-64% of the vote in the areas shown in red).[1]

The Senate proposal replaces these people—along with (majority-minority) persons shown in red circles in the first map—with voters from Brown, Callahan, Palo Pinto, Parker (parts), Johnson, Shackelford and Stephens counties. Together, these rural counties have an Anglo CVAP

---

[1] For example, in these areas, Trump prevailed 61.2% to 37.3% in the 2020 presidential election, Cornyn prevailed 64.7% to 33.2% in the 2020 senate election, Cruz prevailed 62.7% to 36.5% in the 2018 senate election, Paxton prevailed 63.0% to 34.7% in the 2018 attorney general election, and Patrick prevailed 63.9% to 33.8% in the 2018 lieutenant governor election.

of 80.4%, but Anglo crossover voting for minority-preferred candidates is nearly nonexistent. Unlike the Anglo voters in Tarrant County, the Anglo-preferred candidates in these rural counties combined generally receive the same percentage of the vote as the Anglo CVAP percentage.[2] Dismantling SD10 and including these rural counties is unlawful.

The proposal achieves its purpose of dismantling SD10's status as an effective coalition and crossover district for minority voters in two ways: (1) it cracks apart and harms the district's minority voters, substantially decreasing SD10's minority population, and (2) it eliminates the Anglo crossover voters who have joined together with minority voters to support minority-preferred candidates.

This is unlawful. As the Supreme Court has explained, "if there were a showing that a State intentionally drew district lines in order to destroy otherwise effective crossover districts, that would raise serious questions under both the Fourteenth and Fifteenth Amendments." *Bartlett v. Strickland*, 556 U.S. 1, 24 (2009) (Kennedy, J., Roberts, C.J., and Alito, J., plurality); *Campos v. City of Baytown, Tex.*, 840 F.2d 1240, 1244 (5th Cir. 1988) (holding that Section 2 protects minority coalition districts). In the Senate plan under SB4, it is clear the author has "intentionally dr[awn] district lines in order to destroy [an] otherwise effective crossover district[]." The Supreme Court has warned against this precise unlawful scheme. Furthermore, the Fifth Circuit decision cited above—binding precedent that the Legislature must follow[3]—also held that coalition districts are protected under federal law, so there is ample legal support for the argument that destroying a coalition district would also be intentionally discriminatory.

I want to make the committee aware that the 2011 Legislature's nearly identical effort to dismantle SD10 was ruled to be intentional racial discrimination. *See Texas v. United States*, 887 F. Supp. 133, 166 (D.D.C. 2012) ("The Senate Plan was enacted with discriminatory purpose as to SD10."). The ruling on discriminatory intent stands today. A federal court has ruled that Sen. Davis was the *prevailing party* in her lawsuit challenging the discriminatory scheme and awarded her attorneys' fees.

The D.C. Circuit affirmed that ruling, rejecting Texas's argument that it had ultimately won the case: "To say that Texas 'prevailed' in this suit because a different litigant in a different suit won on different grounds that Texas specifically told the district court it would *not* raise is, to say the least, an unnatural use of the word 'prevailing.'" *Texas v. United States*, 798 F.3d 1108, 1116

---

[2] For example, Trump carried the counties 80.2% to 18.6%, Cornyn prevailed 80.3% to 17.5%, Cruz prevailed 79.7% to 19.6%, Paxton prevailed 78.1% to 19.6%, and Patrick prevailed 78.4% to 19.7%.

[3] In 2017 testimony in federal court, the prior chair of the House Redistricting Committee—a lawyer—expressed confusion that Texas is in the Fifth Circuit and that the Fifth Circuit's rulings are binding on the State of Texas. I hope this clarifies those facts.

(D.C. Cir. 2015) (emphasis in original). Instead, the D.C. Circuit held that Texas mooted the lawsuit by *acquiescing* to the district court's intentional discrimination ruling, abandoning its effort to dismantle the district, and adopting SD10's current configuration—which has now persisted for twenty years. *Id.* at 1118. It did so before *Shelby County* had any effect on the decision. *Id.* The Supreme Court denied Texas's petition for certiorari. *Texas v. Davis*, 577 U.S. 1119 (2016) (Mem.). Moreover, the Fifth Circuit explained why it was strategically wise for Texas to abandon the changes to SD10 that the D.C. federal court had found intentionally discriminatory. After the Section 5 preclearance formula was invalidated, the Fifth Circuit explained, "it is far from clear that Texas could have automatically prevailed on the merits" had it continued to defend its dismantling of SD10, and instead the San Antonio court could (and likely would) have invalidated the changes to SD10 again "based on Plaintiffs' Section 2 and constitutional claims." *Davis v. Abbott*, 781 F.3d 207, 215 (5th Cir. 2015). After all, the DC federal court had just found the effort was intentional racial discrimination.

Sen. Davis and her co-plaintiffs won her claim that Texas intentionally discriminated against racial minorities by cracking SD10's minority population and submerging them in Anglo-dominated rural districts—a victory that the Supreme Court left undisturbed and that cost Texas taxpayers over $1 million in legal fees. Yet this is what the Senate proposal is proposing to do again.

Moreover, a similar effort to crack apart Tarrant County's minority population was ruled intentionally discriminatory in the 2011 congressional plan. *Perez v. Abbott*, 253 F. Supp. 3d 864, 945-961 (W.D. Tex. 2017). Although Circuit Judge Jerry Smith dissented from most of that three-judge court's decision, he *agreed* that the cracking of minority populations in Tarrant County was unlawful intentional discrimination: "Relatively little about the 2011 Congressional redistricting passes the smell test as to DFW, the largest metropolitan area in Texas with 6.4 million residents in 2010 but where the apparent choice of minority voters in 2010 was reflected only in CD30 (veteran African-American Democrat Congresswoman Eddie Bernice Johnson)." *Id.* at 986 (Smith, J., dissenting). The three-judge court actually redrew the congressional lines in Tarrant County to remedy this intentional fracturing and dilution of minority voting strength.

The 2020 Census reveals that Tarrant County now has over 1 million Black and Latino residents—250,000 *more* than it had following the 2010 Census. By contrast, Tarrant County now has just over 900,000 Anglo residents—over 300,000 *fewer* than it had following the 2010 Census. Yet, the Senate proposal eliminates the *one* senate district in which Tarrant County's minority voters have succeeded in electing their preferred candidate. Senate Bill 4 proposes to do this even though the *same scheme* was found to be intentional racial discrimination after the last Census—*when there were substantially fewer minority voters*.

When the San Antonio district court declined to "bail in" Texas to the Voting Rights Act Section 3 preclearance regime, it unanimously (with the votes of District Judges Rodriguez and Garcia and Circuit Judge Smith) warned the Legislature that it "would be well advised to conduct its redistricting process openly" in 2021 and to abandon its effort from "the 2011 session . . . [of] engag[ing] in traditional means of vote dilution such as cracking and packing in drawing districts" if it wished to avoid federal oversight of its electoral decisions. *Perez v. Abbott*, 390 F. Supp. 3d 803, 820-21 (W.D. Tex. 2019).

On behalf of my constituents, I urge the House Committee to heed that warning, and preserve SD10 as an effective coalition and crossover district for minority voters.

Sincerely,

*Beverly Powell*

Senator Beverly Powell

CC: Members of the House Committee on Redistricting