# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, <br>     *Plaintiffs*, <br><br> v. <br><br> GREG ABBOTT, *in his official capacity as Governor of the State of Texas*, and JOHN SCOTT, *in his official capacity as Secretary of State of Texas*, <br>     *Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 3:21-cv-259-DCG-JES-JVB <br> [Lead Case] |
| DAMON JAMES WILSON, <br>     *Plaintiff*, <br><br> v. <br><br> THE STATE OF TEXAS, *et al.*, <br>     *Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 1:21-cv-943-RP-JES-JVB <br> [Consolidated Case] |

## DEFENDANTS' MOTION TO DISMISS WILSON'S COMPLAINT

# TABLE OF CONTENTS

Table of Contents .........................................................................................................................ii

Table of Authorities.....................................................................................................................iii

Introduction..................................................................................................................................1

Background....................................................................................................................................1

Argument ......................................................................................................................................3

    I.   Wilson Does Not Have Standing .......................................................................................3

    II.  Wilson Fails to State a Claim for Relief ..........................................................................6

    III. Wilson Has Not Named a Proper Defendant .................................................................9

        A.  Wilson Cannot Sue the State of Texas .................................................................9

        B.  Wilson Cannot Sue the Lieutenant Governor or the Speaker................................10

        C.  Wilson Cannot Sue the Governor or the Secretary................................................13

Conclusion ..................................................................................................................................14

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Abbott*,
  956 F.3d 696 (5th Cir. 2020)........................................................................................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).......................................................................................................................4

*Bogan v. Scott-Harris*,
  523 U.S. 44 (1998).......................................................................................................................13

*Boivin v. Black*,
  225 F.3d 36 (1st Cir. 2000) ...........................................................................................................8

*Borough of Bethel Park v. Stans*,
  319 F. Supp. 971 (W.D. Pa. 1970) ...............................................................................................7

*Borough of Bethel Park v. Stans*,
  449 F.2d 575 (3d Cir. 1971) ...............................................................................................1, 7, 8

*Bostock v. Clayton County*,
  140 S. Ct. 1731 (2020) ................................................................................................................10

*Brown v. Thompson*,
  462 U.S. 835 (1983).....................................................................................................................10

*Bryan v. City of Madison*,
  213 F.3d 267 (5th Cir. 2000).......................................................................................................13

*Burns v. Richardson*,
  384 U.S. 73 (1966)...................................................................................................................1, 10

*Carroll v. Nakatani*,
  342 F.3d 934 (9th Cir. 2003)..........................................................................................................6

*City of Austin v. Paxton*,
  943 F.3d 993 (5th Cir. 2019).............................................................................................10, 11, 12

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013).......................................................................................................................6

*Davis v. United States*,
  597 F.3d 646 (5th Cir. 2009).......................................................................................................14

*District of Columbia v. U.S. Dep't of Com.,*
    789 F. Supp. 1179 (D.D.C. 1992) ..............................................................................7

*Dombrowski v. Eastland,*
    387 U.S. 82 (1967) ...................................................................................................13

*Dye v. McKeithen,*
    856 F. Supp. 303 (M.D. La. 1994) ...........................................................................9

*Empower Texans, Inc. v. Geren,*
    388 F. Supp. 3d 738 (W.D. Tex. 2019) .................................................................13

*Empower Texans, Inc. v. Geren,*
    977 F.3d 367 (5th Cir. 2020).................................................................................13

*Evenwel v. Abbott,*
    136 S. Ct. 1120 (2016) (Thomas, J., concurring) ...................................................9

*FEC v. Akins,*
    524 U.S. 11 (1998)...................................................................................................4

*Fletcher v. Lamone,*
    831 F. Supp. 2d 887 (D. Md. 2011) .........................................................................7

*FW/PBS, Inc. v. City of Dallas,*
    493 U.S. 215 (1990)...............................................................................................3

*Gill v. Whitford,*
    138 S. Ct. 1916 (2018) ............................................................................................5

*Green Valley Special Util. Dist. v. City of Schertz,*
    969 F.3d 460 (5th Cir. 2020) (en banc) (Smith, J.) .............................................10

*Harris County v. MERSCORP Inc.,*
    791 F.3d 545 (5th Cir. 2015)................................................................................11

*Williams ex rel. J.E. v. Reeves,*
    954 F.3d 729 (5th Cir. 2020)................................................................................11

*Jacobson v. Fla. Sec'y of State,*
    974 F.3d 1236 (11th Cir. 2020) ............................................................................12

*Kaummerling v. Lappin,*
    553 F.3d 669 (D.C. Cir. 2008) ................................................................................8

*Kostick v. Nago,*
    960 F. Supp. 2d 1074 (D. Haw. 2013).....................................................................8

*Ex parte Levitt*,
   302 U.S. 633 (1937)...................................................................................................5

*Lewis v. Gov. of Ala.*,
   944 F.3d 1287 (11th Cir. 2019) (en banc)..............................................................13

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)...................................................................................3, 5, 12, 13

*Mi Familia Vota v. Abbott*,
   977 F.3d 461 (5th Cir. 2020)............................................................................ 11, 12

*Morris v. Livingston*,
   739 F.3d 740 (5th Cir. 2014)....................................................................................12

*Muskrat v. United States*,
   219 U.S. 346 (1911)..................................................................................................12

*Okpalobi v. Foster*,
   244 F.3d 405 (5th Cir. 2001) (en banc)..................................................................12

*Perez v. Texas*,
   No. 5:11-cv-360, 2011 WL 9160142 (W.D. Tex. Sept. 2, 2011) ......................1, 7

*Physician Hosps. of Am. v. Sebelius*,
   691 F.3d 649 (5th Cir. 2012)....................................................................................14

*Planned Parenthood Ctr. for Choice v. Abbott*,
   141 S. Ct. 1261 (2021) ..............................................................................................11

*Planned Parenthood Gulf Coast, Inc. v. Phillips*,
   5 F.4th 568 (5th Cir. 2021).......................................................................................11

*Raj v. LSU*,
   714 F.3d 322 (5th Cir. 2013)............................................................................. 10, 11

*Reeder v. Madigan*,
   780 F.3d 799 (7th Cir. 2015) (Wood, C.J.) ..........................................................14

*Salermo v. Hughes Watters & Askanase LLP*,
   516 F. Supp. 3d 696 (S.D. Tex. 2021) .....................................................................4

*Scott v. Taylor*,
   470 F.3d 1014 (11th Cir. 2006) .................................................................................6

*Spokeo, Inc. v. Robbins*,
   578 U.S. 330 (2016).................................................................................................3, 4

*Stringer v. Whitley*,
   942 F.3d 715 (5th Cir. 2019) .................................................................................. 5

*Sup. Ct. of Va. v. Consumers Union of U.S., Inc.*,
   446 U.S. 719 (1980) ............................................................................................. 13

*Swann v. Adams*,
   385 U.S. 440 (1967) ............................................................................................... 8

*Tenny v. Brandhove*,
   341 U.S. 367 (1951) ............................................................................................. 13

*United States v. Brewster*,
   408 U.S. 501 (1972) ............................................................................................. 13

*United States v. Hays*,
   515 U.S. 737 (1995) ............................................................................................... 6

*Va. Office for Prot. & Advocacy v. Stewart*,
   563 U.S. 247 (2011) ............................................................................................. 11

*Will v. Mich. Dep't of State Police*,
   491 U.S. 58 (1989) ............................................................................................... 11

*Wilson v. State*,
   No. 05-13-00874-CR, 2014 WL 5338510 (Tex. App.—Dallas Oct. 21, 2014, no
   pet.) ...................................................................................................................... 2

**Statutes**

28 U.S.C.
   § 2201 ................................................................................................................... 11
   § 2202 ................................................................................................................... 11

42 U.S.C. § 1983 ..................................................................................... 10, 11, 13

Tex. Elec. Code
   § 3.003(a)(1) ........................................................................................................ 14
   § 11.002(a)(4) ........................................................................................................ 2
   § 67.013 ............................................................................................................... 14

Tex. Penal Code § 22.01(b)(2) ................................................................................. 2

**Other Authorities**

U.S. Const. art. I, § 2 ............................................................................................ 8

U.S. Const. amend. XIV, § 2 .................................................................................. 8

Fed. R. Civ. P. 12(b)(1)..................................................................................................1

Fed. R. Civ. P. 12(b)(6)..................................................................................................1

Final 2020 Census Residence Criteria and Residence Situations, 83 Fed. Reg. 5525
    (Feb. 8, 2018) ...........................................................................................................2

Senate Bill 6, 87th Leg. 3d C.S., art. II (Oct. 18, 2021), https://capitol.texas.gov/
    tlodocs/873/billtext/pdf/SB00006F.pdf ....................................................................3

## INTRODUCTION

Courts have rejected prison-malapportionment claims like this one in Texas, *see Perez v. Texas*, No. 5:11-cv-360, 2011 WL 9160142, at *13 (W.D. Tex. Sept. 2, 2011), and across the country, *see, e.g.*, *Borough of Bethel Park v. Stans*, 449 F.2d 575, 582 (3d Cir. 1971). When deciding whether and how to count prisoners for purposes of apportionment, States have significant leeway. *See Burns v. Richardson*, 384 U.S. 73, 92 (1966). Wilson has not plausibly alleged a constitutional violation.

The only material difference between Wilson's case and cases rejecting similar claims is that Wilson has failed to plausibly allege federal jurisdiction. Wilson is not, and does not claim to be, eligible to vote. He does not face a vote-dilution injury that is typically used to support malapportionment claims. Instead, he asserts that his congressman will be less responsive to his concerns, but that assertion is pure speculation, untethered to any factual allegations in the complaint.

Nor has Wilson sued the right defendants. Wilson is primarily concerned with the conduct of federal officials, including a future congressman, but the State defendants sued here have no control over federal officials.

Defendants respectfully request that the Court dismiss Wilson's complaint for lack of subject-matter jurisdiction or failure to state a claim. *See* Fed. R. Civ. P. 12(b)(1), (6).

## BACKGROUND

This is a redistricting case, but Plaintiffs' claims have nothing to do with voting. Plaintiff Damon James Wilson complains about (1) the federal Census Bureau counting him as a resident of a state prison, (2) the Texas Legislature using that information when redistricting, and (3) a federal congressman being less responsive to Wilson's hypothetical future communications.

Wilson is not eligible to vote (and he does not allege otherwise) because he has "been finally convicted of a felony" and has not "fully discharged [his] sentence" or "been pardoned or otherwise released from the resulting disability to vote." Tex. Elec. Code § 11.002(a)(4). Wilson's conviction for

family-violence assault, enhanced due to his prior convictions, qualifies as a felony. *See* Tex. Penal Code § 22.01(b)(2); *Wilson v. State*, No. 05-13-00874-CR, 2014 WL 5338510, at *1 (Tex. App.—Dallas Oct. 21, 2014, no pet.).[1] TDCJ projects that he will be released in February of 2031. *See* ECF 1 at 7; Ex. A. Wilson does not allege that he will ever vote in an election affected by this round of redistricting.

Wilson claims to reside in Grand Prairie, Texas, but on April 1, 2020—the day relevant to the federal census—Wilson was confined in a Texas prison: the Clements Unit in Amarillo. *See* ECF 1 at 2–3. In keeping with a Department of Commerce regulation and its historical practice, the Census Bureau counted Wilson as a resident of Amarillo. *See id.* at 5; Final 2020 Census Residence Criteria and Residence Situations, 83 Fed. Reg. 5525 (Feb. 8, 2018) (Ex. C). According to this regulation, prisoners like Wilson are treated as residing where they are incarcerated. *See id.* at 5527–28.

When apportioning Texas's congressional seats among districts, the Texas Legislature uses the Census Bureau's data. Wilson characterizes this use of census data as "assign[ing]" him "the status of a person residing in, and an 'inhabitant' of, Texas Congressional District 13," which "encompasses the location where Plaintiff was confined" but "does not encompass the location of his permanent domicile." ECF 1 at 7. In reality, however, the statute creating the congressional map does not "assign[]" anyone any "status" or "resid[ence]." It lists the geographic areas that make up each congressional district.[2] It does not say anything about who should be considered a resident of which district.

Even if SB 6 could be interpreted to say something about Wilson's residence when the census was conducted, it would not say anything about Wilson's residence now. Wilson has moved to a

---

[1] *See Inmate Information Details*, Texas Department of Criminal Justice (last visited November 9, 2021), https://inmate.tdcj.texas.gov/InmateSearch/viewDetail.action?sid=05608188 (Ex. A); *Texas v. Wilson*, Judgment of Conviction (291st Tex. Dist. Ct. June 6, 2013) (Ex. B), available at https://obpublicaccess.dallascounty.org/PublicAccessEP1/CriminalCourts/ (search by Case Number "F1330651").

[2] *See generally* Senate Bill 6, 87th Leg. 3d C.S., art. II (Oct. 18, 2021), https://capitol.texas.gov/tlodocs/873/billtext/pdf/SB00006F.pdf.

different prison. He is currently confined in the Jester III Unit in Richmond. *See* ECF 1 at 3.

ARGUMENT

## I.    Wilson Does Not Have Standing

"[S]tanding is perhaps the most important of the jurisdictional doctrines." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (quotation omitted). At the pleading stage, plaintiffs must "clearly . . . allege facts demonstrating each element" of standing. *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016) (quotation omitted). A plaintiff must show: (1) an actual or imminent, concrete and particularized "injury-in-fact"; (2) that is fairly traceable to the challenged action of the defendant; and (3) that is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). These requirements notwithstanding, Wilson's complaint devotes only three sentences to standing. *See* ECF 1 at 8. They do not suffice.

Wilson's main argument is that SB 6 "essentially operates as a 'legal fiction' that Plaintiff permanently resides at a location other than where he is an 'inhabitant' and has established and maintained his domicile, has adversely affected (and will adversely affect) the responsivity of the U.S. Representative who would otherwise serve as Plaintiff's duly elected Member of Congress." *Id.* This is wrong for at least three reasons.

First, SB 6 does not create a "legal fiction" about Wilson's residence. As explained above, SB 6 does not say anything about anyone's residence. SB 6 also does not tell federal congressmen to whom they should be responsive. (Nor could it.) The implementation of SB 6 does not require any state or local official to treat Wilson as a resident of Amarillo, and Wilson does not allege otherwise.

Second, Wilson does not allege any facts to support his assertion that the unknown future congressman for CD 30 will be less responsive than he would be if the Legislature had redistricted differently.[3] The complaint does not include any allegations about how responsive that future

---

[3] The incumbent, Representative Eddie Bernice Johnson, has announced that she is not running for reelection.

3

congressman will be to his constituents in general or to non-voting felons like Wilson in particular. Nor does it suggest that Wilson has any plans to try to secure the congressman's attention in the future. As a result, there are also no allegations addressing whether such an attempt would succeed and, if not, whether any failure would be attributable to SB 6 (as opposed to the judicially noticeable fact that congressmen are busy and cannot respond to each concern expressed by each constituent). *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009) (noting an "obvious alternative explanation" that rendered an allegation implausible).

Third, even if SB 6 had some marginal effect on a future congressman's responsiveness, it would not constitute a cognizable injury in fact. "[T]he injury-in-fact requirement requires a plaintiff to allege an injury that is both concrete *and* particularized." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 334 (2016) (quotation marks omitted) Wilson's interest in a congressman's responsiveness is not "*concrete*" because it is not "practical and developed, rather than 'intellectual' and 'abstract.'" *Salermo v. Hughes Watters & Askanase LLP*, 516 F. Supp. 3d 696, 704 (S.D. Tex. 2021) (quoting *FEC v. Akins*, 524 U.S. 11, 20 (1998)). Having a responsive congressman is, at best, a procedural interest that might help a plaintiff protect some underlying substantive interest (*e.g.*, convincing a congressman to write a letter of recommendation to support admission to a service academy). *Cf. Lujan*, 504 U.S. at 573 n.8 (explaining that a plaintiff can "enforce procedural rights . . . so long as the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing"). But Wilson does not allege that any lack of responsiveness by a future congressman for CD 30 will affect his substantive interests. Even "procedural rights" do not confer "standing for persons who have no concrete interests affected." *Id.* at 572 n.7. To the extent Wilson complains about a future congressman's responsiveness independent of any "Plaintiff-specific" allegations about an

---

*See Democrat Eddie Bernice Johnson Ending Decades in Congress*, Politico (Nov. 20, 2021), https://www.politico.com/news/2021/11/20/eddie-bernice-johnson-democrat-no-reelection-523126 (noting that she "plans to keep a promise . . . that her current term would be her last").

"imminent" request for congressional assistance, Wilson raises "a generalized grievance" that federal courts cannot adjudicate. *Stringer v. Whitley*, 942 F.3d 715, 722 (5th Cir. 2019).

Further, even if Wilson had an underlying substantive interest, he has not alleged that that interest would be less protected by the congressman for CD 13 than the congressman for CD 30. He asserts only that the congressman for CD 30 will be less responsive to Wilson than he would be if the Texas Legislature redistricted differently, not that the congressman for CD 13 will be less responsive to Wilson than the congressman for CD 30 would be. *See* ECF 1 at 8.

Wilson also asserts, without explanation, that "application of the State of Texas' legal fiction, as described above, has adversely affected (and will adversely affect) the federal representational interests shared by Plaintiff with the local community in which he is an actual inhabitant." *Id.* This appears to be a recapitulation of Wilson's "responsiveness" argument, and it fails for the same reasons. This sentence does, however, concede that Wilson's supposed injury is "shared . . . with the local community." *Id.* Such a "collective political interest" or a "general interest common to all members of the public" is a nonjusticiable generalized grievance. *Gill v. Whitford*, 138 S. Ct. 1916, 1932 (2018); *Ex parte Levitt*, 302 U.S. 633, 634 (1937) (per curiam).

Finally, the complaint mentions "'representational harm' to Plaintiff," ECF 1 at 8, but that adds nothing to Wilson's standing argument. The only Supreme Court majority opinion to use that term addressed racial gerrymandering: "Where a plaintiff resides in a racially gerrymandered district, . . . the plaintiff has been denied equal treatment because of the legislature's reliance on racial criteria, and therefore has standing to challenge the legislature's action. Voters in such districts may suffer the special representational harms racial classifications can cause in the voting context." *United States v. Hays*, 515 U.S. 737, 744–45 (1995) (citation omitted).

*Hays* does not help Wilson for at least two reasons. First, it was expressly limited to "the voting context," *id.* at 745, but Wilson is not a voter. This Court should, like the Ninth Circuit, recognize that

"the unique justification for recognizing representational harm in the voting context does not apply" because "[t]his is not a voting rights case." *Carroll v. Nakatani*, 342 F.3d 934, 948 (9th Cir. 2003).

Second, *Hays* based standing on the denial of "equal treatment" on the basis of race. *Hays*, 515 U.S. at 745. As discussed below, the equal-treatment concern does not apply here because Wilson is not being treated differently based on race or any other suspect classification. This Court should, like the Eleventh Circuit, "decline to extend" *Hays* beyond cases in which "the government generally uses race to infringe on voters' rights." *Scott v. Taylor*, 470 F.3d 1014, 1018 n.7 (11th Cir. 2006) (per curiam). True, *Hays* referred to "representational harms" to underscore the potentially pernicious effects of discrimination, *id.*, but that did not make such harms an independent basis for standing. After all, the Supreme Court recognized that the occurrence of representational harms was speculative: They "may" occur or not. *Id.* That would not have been sufficient for standing because an injury in fact must be "imminent," meaning "*certainly impending.*" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

Although courts have decided (and rejected) similar prison-based malapportionment claims in the past, Defendants are aware of no case in which a non-voting prisoner had standing by himself to challenge the apportionment of a State's electoral districts. *See, e.g.*, *Perez*, 2011 WL 9160142, at *9 (standing for a voter); *Borough of Bethel Park v. Stans*, 319 F. Supp. 971, 972 (W.D. Pa. 1970), *aff'd*, 449 F.2d 575 (3d Cir. 1971) (plaintiffs included "voters").

## II.   Wilson Fails to State a Claim for Relief

Even if Wilson had standing, his claims would fail on the merits. Courts have repeatedly upheld treating prisoners as residents of their prisons. Wilson provides no persuasive reason to depart from that precedent.

As this Court explained ten years ago, "there is no federal requirement" that Texas "count . . . prisoners as residents of whatever county they lived in prior to incarceration." *Perez v. Texas*, No. 5:11-cv-360, 2011 WL 9160142, at *12 (W.D. Tex. Sept. 2, 2011). The three-judge panel could not find

"any case where any court has concluded that such prison counts violate the mandates of the one person, one vote principle." *Id.* at 25.

On the contrary, multiple courts have rejected claims like Wilson's. *See Borough of Bethel Park v. Stans*, 449 F.2d 575, 582 (3d Cir. 1971) (upholding the Census Bureau's decision to count prisoners "as residents of the state where they are confined" and concluding that "the states will be able to draw their congressional districts in a manner which conforms with the requirements of the Constitution"); *Fletcher v. Lamone*, 831 F. Supp. 2d 887, 896 (D. Md. 2011) (explaining Maryland "is not constitutionally obligated" to adjust census data for prisoners' residences); *District of Columbia v. U.S. Dep't of Com.*, 789 F. Supp. 1179, 1188–90 (D.D.C. 1992) (upholding the Census Bureau's decision to treat D.C. prisoners at a facility in Virginia as residents of Virginia).

Wilson has not plausibly alleged a constitutional claim. First, Wilson argues that SB 6 "violates his constitutional right to 'equal representation' as guaranteed by Article I, §2 of the U.S. Constitution and §2 of the Fourteenth Amendment to the U.S. Constitution," ECF 1 at 11, but those provisions do not apply here. They govern how federal representatives "shall be apportioned among the several states." U.S. Const. art. I, § 2; U.S. Const. amend. XIV, § 2. But apportioning representatives *among* the States is a task undertaken by the federal government. Neither SB 6 nor any other Texas law controls that process.

Second, Wilson argues that SB 6 "violates his constitutional right to Equal Protection of the Law under the Fourteenth Amendment." ECF 1 at 11. He asserts that he is being treated "differently from others," *Id.* at 13, but he concedes that he is being treated like other "inmates who are confined in correctional facilities," *id.* at 5. And Texas has not treated prisoners any differently from anyone else. Texas uses the official census data—for prisoners and non-prisoners alike—when redistricting. *See id.* at 7.

In any event, Wilson does not allege that locating prisoners in the district of their incarceration

implicates a protected or suspect class. Nor could he. Prisoners, as a group, do not constitute a suspect class. *Kaummerling v. Lappin*, 553 F.3d 669, 685 (D.C. Cir. 2008); *see Boivin v. Black*, 225 F.3d 36, 42 (1st Cir. 2000) (collecting cases). For this reason, the State's rule is subject to rational-basis review.

According to that standard, the State of Texas need only "'articulate acceptable reasons for the variations among the populations of the various legislative districts' for the purpose of the apportionment of the State legislature." *Borough of Bethel Park*, 449 F.2d at 579 (quoting *Swann v. Adams*, 385 U.S. 440, 443–44 (1967)). In other words, Wilson must demonstrate that the State "failed to apply the proper criterion in a reasonable manner or its application lacked a rational basis." *Id.*; *see also Kostick v. Nago*, 960 F. Supp. 2d 1074, 1091 (D. Haw. 2013) (applying rational basis to a reapportionment challenge); *Dye v. McKeithen*, 856 F. Supp. 303, 313 (M.D. La. 1994) (same).

Wilson essentially complains that Texas relied on the default federal census data while redistricting. He suggests that Texas should have used "a 'Census Geocoder' computer program" to adjust the default data. ECF 1 at 6. But using the default data provided by the federal government is simple and efficient. Those are rational bases, especially in light of Wilson's concession that Texas is acting consistent with its own past practice. *See id.* at 15. Nor is Texas the only State to conclude that treating prisoners as residents of their prisons is rational. "By far the majority of states use the population and residence data reported in the census, as is."[4]

Wilson further argues that the Constitution "condemn[s] state congressional redistricting plans that provide unequal representation in the U.S. House of Representatives unless departures from equal representation 'as nearly as practical' are shown to have resulted despite such a 'good faith effort' by a state." ECF 1 at 12. But Wilson does not support that sentence with plausible factual allegations. He does not even allege that he is or will be in an over-populated district. Wilson also fails to allege any

---

[4] *See Reallocating Inmate Data for Redistricting*, National Conference of State Legislatures (Sept. 27, 2021) (accessed Nov. 25, 2021), https://www.ncsl.org/research/redistricting/reallocating-incarcerated-persons-for-redistricting.aspx.

effect on "representation" given that he is ineligible to vote.

The Constitution affords states "significant leeway in apportioning their" electoral districts. *Evenwel v. Abbott*, 136 S. Ct. 1120, 1133 (2016) (Thomas, J., concurring). That leeway includes both who to count and where to count them. As explained by the Supreme Court:

> Neither in Reynolds v. Sims nor in any other decision has this Court suggested that the States are required to include . . . persons denied the vote for conviction of crime in the apportionment base by which their legislators are distributed and against which compliance with the Equal Protection Clause is to be measured.

*Burns v. Richardson*, 384 U.S. 73, 92 (1966). As a result of this discretion, reapportioned districts are presumed valid unless they are shown to be "arbitrarily or invidiously defined." *Id.* at 89 n.16; *see also Brown v. Thompson*, 462 U.S. 835, 842 (1983) (reapportioned districts are valid if they are "consistent and nondiscriminatory"). Here, Wilson does not plausibly allege that there is anything arbitrary about treating his as a resident of his prison, where he is scheduled to remain until 2031. *See* ECF 1 at 7.

Finally, Wilson argues that treating him as a resident of his prison is inconsistent with what "the Framers . . . intended," ECF 1 at 11, but intentions, and Wilson's interpretations of those intentions, are not the law. *See, e.g.*, *Bostock v. Clayton County*, 140 S. Ct. 1731, 1750 (2020) (rejecting reliance on "legislative intent" and "expected applications").

## III.   Wilson Has Not Named a Proper Defendant

Wilson's complaint should be dismissed for an additional reason: None of the parties he named are proper defendants. Even if Wilson otherwise could challenge SB 6 (he cannot, for the reasons explained above), he would not be able to sue these particular defendants. Sovereign immunity, legislative immunity, traceability, and redressability prevent these claims from going forward.

### A.   Wilson Cannot Sue the State of Texas

State "sovereign immunity bars private suits against nonconsenting states in federal court." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). Wilson does not plead any waiver of

sovereign immunity. Nor does he plead abrogation. Indeed, Wilson brings his claims under 42 U.S.C. § 1983, *see* ECF 1 at 1–2, but "Congress has not abrogated state sovereign immunity . . . under § 1983." *Raj v. LSU*, 714 F.3d 322, 328 (5th Cir. 2013). And the *Ex parte Young* exception applies only where the plaintiff names "individual state officials as defendants in their official capacities." *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 471 (5th Cir. 2020) (en banc) (Smith, J.) (quoting *Raj*, 714 F.3d at 328). In other words, "*Ex parte Young* applies to state officials but not to the states themselves." *Planned Parenthood Gulf Coast, Inc. v. Phillips*, 5 F.4th 568, 577 (5th Cir. 2021). After all, *Ex parte Young* is based on the "premise that a state official is 'not *the State* for sovereign-immunity purposes.'" *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 735 (5th Cir. 2020) (quoting *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011)) (emphasis added). That premise cannot apply where, as here, the plaintiff has sued the State directly.

Moreover, even if Wilson could overcome sovereign immunity, he would not have a cause of action. As mentioned above, Wilson brings his claims under Section 1983, *see* ECF 1 at 2, but that statute does not create a cause of action against States. It allows suits against "[e]very person who" takes certain actions, 42 U.S.C. § 1983, but "a State is not a 'person' within the meaning of § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989). Wilson also cites "28 U.S.C. Sections 2201, 2202," ECF 1 at 1, but "the Declaratory Judgment Act alone does not create a federal cause of action." *Harris County v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015). Nor do any of the other authorities Wilson cites. *See* ECF 1 at 1–2.

### B.     Wilson Cannot Sue the Lieutenant Governor or the Speaker

In addition to barring suits against States themselves, sovereign immunity "prohibits suits against state officials or agencies that are effectively suits against a state." *City of Austin*, 943 F.3d at 997. Wilson presumably relies on the *Ex parte Young* exception, but it does not apply unless "the official has a sufficient 'connection' with the enforcement of the allegedly unconstitutional law." *Mi Familia*

*Vota v. Abbott*, 977 F.3d 461, 467 (5th Cir. 2020). "Otherwise, the suit is effectively against the state itself and thus barred by the Eleventh Amendment and sovereign immunity." *In re Abbott*, 956 F.3d 696, 708 (5th Cir. 2020), *vacated as moot*, *Planned Parenthood Ctr. for Choice v. Abbott*, 141 S. Ct. 1261 (2021); *see also City of Austin*, 943 F.3d at 997.

To "substantiate[] the required connection," the plaintiff must show that the official has "the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Okpalobi v. Foster*, 244 F.3d 405, 416 (5th Cir. 2001) (en banc) (plurality); *accord Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014). Thus, where a defendant is not "likely" to enforce the challenged law, he is not a proper defendant. *City of Austin*, 943 F.3d at 1002.

Wilson does not allege that the Lieutenant Governor or the Speaker can enforce SB 6, much less that they have demonstrated a willingness to do so. The complaint focuses on their legislative roles, *see* ECF 1 at 4, but "[t]he power to promulgate law is not the power to enforce it." *In re Abbott*, 956 F.3d at 709; *accord Mi Familia Vota*, 977 F.3d at 467. For these reasons, Wilson cannot overcome sovereign immunity.

In addition, Wilson lacks standing to sue the Lieutenant Governor or the Speaker because he has not plausibly alleged traceability or redressability. The Fifth Circuit "has acknowledged that our Article III standing analysis and *Ex parte Young* analysis significantly overlap." *City of Austin*, 943 F.3d at 1002 (quotation omitted). That is true here. Wilson's purported injury is not traceable to or redressable by these defendants because they do not enforce SB 6.

A plaintiff's injury must be "fairly . . . trace[able] to the challenged action *of the defendant*," not merely the challenged law. *Lujan*, 504 U.S. at 560. Wilson cannot establish traceability because these "defendants are powerless to enforce" SB 6. *Okpalobi*, 244 F.3d at 426. Allowing Wilson to sue the Lieutenant Governor and the Speaker would violate "the long-standing rule that a plaintiff may not sue a state official who is without any power to enforce the complained-of statute." *Id.* (citing *Muskrat*

11

*v. United States*, 219 U.S. 346 (1911)).

Similarly, to satisfy redressability, "it must be *the effect of the court's judgment on the defendant*—not an absent third party—that redresses the plaintiff's injury." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1254 (11th Cir. 2020) (quoting *Lewis v. Gov. of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019) (en banc)). Because Wilson's purported injury is based on the responsiveness of a future congressman, *see supra* Part I, redressability would require a remedy that could affect that congressman's behavior. No judgment against the Lieutenant Governor or the Speaker could do that. *See Lujan*, 504 U.S. at 562 (noting standing is less likely when it "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict").

Finally, even if Wilson could meet his jurisdictional burdens, the Lieutenant Governor and Speaker would be immune from Wilson's claims because state legislators are entitled to "absolute immunity from civil liability for their legislative activities." *Bogan v. Scott-Harris*, 523 U.S. 44, 46 (1998). This immunity prohibits "§ 1983 actions seeking declaratory or injunctive relief." *Sup. Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 732 (1980).

Legislative immunity is interpreted "broadly," *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967), and "attaches to all actions taken 'in the sphere of legitimate legislative activity,' and 'all acts that occur in the regular course of the legislative process.'" *Empower Texans, Inc. v. Geren*, 388 F. Supp. 3d 738, 743 (W.D. Tex. 2019), *vacated as moot*, 977 F.3d 367 (5th Cir. 2020) (quoting *Tenny v. Brandhove*, 341 U.S. 367, 376 (1951), and *United States v. Brewster*, 408 U.S. 501, 525 (1972)); *see also Bryan v. City of Madison*, 213 F.3d 267, 272 (5th Cir. 2000) (the immunity applies to all "duties that are functionally legislative").

The complaint does not identify any allegedly unlawful actions taken by either the Lieutenant Governor or the Speaker, but it suggests that they were named as defendants because of legislative activity. The complaint notes that the Lieutenant Governor "is the Presiding Officer of the Texas

Senate" and that the Speaker is the "Presiding Officer of the Texas House of Representatives." ECF 1 at 4. To the extent these defendants have any relevance to this case, it is legislative in nature. They are therefore immune and should be dismissed for this additional reason. *See Empower Texans*, 388 F. Supp. 3d at 742 (citing *Reeder v. Madigan*, 780 F.3d 799, 805–06 (7th Cir. 2015) (Wood, C.J.)).

    **C.**    **Wilson Cannot Sue the Governor or the Secretary**

    As with the Lieutenant Governor and the Speaker, Wilson does not allege any enforcement actions by the Governor or the Secretary that would allow him to overcome sovereign immunity or establish traceability and redressability. *See supra* Part III.B. Wilson alleges no facts connecting any action by these defendants to the responsiveness of the future congressman for CD 30.

    To be sure, the Governor and the Secretary are executive officials with roles in enforcing state law, but as explained above, that is not enough. The Governor, for example, "order[s] . . . each general election for . . . members of the United States Congress," Tex. Elec. Code § 3.003(a)(1), but Wilson does not allege that ordering an election to be held causes his injury. Nor does he allege that enjoining the Governor from ordering an election would redress his injury. Similarly, the Governor and the Secretary play a role in the "state canvass" of election returns. Tex. Elec. Code § 67.013. But again, Wilson does not allege that his injury is caused by the canvass or redressable by enjoining the canvass. Indeed, given that Wilson is not a voter, his purported injury would seem to be totally disconnected from the Governor's and the Secretary's duties.

    In any event, Defendants do not bear the burden of proving a negative. It is Wilson's "burden . . . to allege a plausible set of facts establishing jurisdiction." *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012) (citing *Davis v. United States*, 597 F.3d 646, 649–50 (5th Cir. 2009)). He has not alleged facts sufficient to overcome sovereign immunity or establish standing regarding the Governor or the Secretary.

## CONCLUSION

Defendants respectfully request that the Court dismiss Wilson's claims for lack of subject-matter jurisdiction or failure to state a claim.

Date: November 29, 2021

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Respectfully submitted.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
Tex. State Bar No. 24088531

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on November 29, 2021, and that all counsel of record were served by CM/ECF.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN