IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| THE LEAGUE OF UNITED LATIN AMERICAN CITIZENS (LULAC), et al., <br><br> Plaintiffs, <br><br> v. <br><br> GREGORY W. ABBOTT, et al., <br><br> Defendants. | Civil Action No. 3:21-cv-259 <br> (DCG-JES-JVB) <br> (consolidated cases) |

**STATEMENT OF INTEREST OF THE UNITED STATES**

# Table of Contents

Introduction ............................................................................................................................. 1

Procedural Background .......................................................................................................... 2

Legal Standard ....................................................................................................................... 2

Statutory Background ............................................................................................................ 3

Argument ............................................................................................................................... 3

Conclusion ............................................................................................................................. 8

# Table of Authorities

**Cases**
*Alexander v. Sandoval*, 532 U.S. 275 (2001) ................................................................................ 8
*Allen v. State Bd. of Elections*, 393 U.S. 544 (1969) ................................................................ 4, 6
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................... 2, 3
*Brnovich v. Democratic Nat'l Comm*, 141 S. Ct. 2321 (2021) .............................................. passim
*Casarez v. Val Verde Cnty.*, 957 F. Supp. 847, 852-53 (W.D. Tex. 1997) .................................... 8
*Chisom v. Roemer*, 501 U.S. 380 (1991) ....................................................................................... 3
*City of Mobile v. Bolden*, 446 U.S. 55 (1980) ............................................................................... 5
*Holder v. Hall*, 512 U.S. 874 (1994) ............................................................................................. 6
*Houston Lawyers' Ass'n v. Att'y Gen.*, 501 U.S. 419 (1991) ........................................................ 4
*Lorillard v. Pons*, 434 U.S. 575 (1978) ........................................................................................ 6
*LULAC v. Perry*, 548 U.S. 399 (2006) .......................................................................................... 4
*Mi Familia Vota v. Abbott*, 497 F. Supp. 3d 195 (W.D. Tex. 2020) ............................................. 7
*Mixon v. Ohio*, 193 F.3d 389 (6th Cir. 1999) ................................................................................ 7
*Morse v. Republican Party of Va.*, 517 U.S. 186, 232 (1996) .................................................. 4, 6
*Newman v. Piggie Park Enters.*, 390 U.S. 400 (1968) .................................................................. 5
*Perry-Bey v. City of Norfolk*, 678 F. Supp. 2d 348 (E.D. Va. 2009) ............................................ 7
*Reno v. Bossier Parish Sch. Bd.*, 520 U.S. 471 (1997) ................................................................. 6
*Scanlan v. Tex. A&M Univ.*, 343 F.3d 533 (5th Cir. 2003) ........................................................... 3
*Shelby Cnty. v. Holder*, 570 U.S. 529 (2013) ........................................................................... 3, 6
*Shelby Cnty. v. Lynch*, 799 F.3d 1173 (D.C. Cir. 2015) ............................................................... 5
*Terrazas v. Clements*, 581 F. Supp. 1329 (N.D. Tex. 1984) (three-judge court) .......................... 4
*Tex. All. for Retired Ams. v. Hughs*, 489 F. Supp. 3d 667 (S.D. Tex. 2020) ................................ 7
*Tex. Dep't of Hous. & Cmty. Affairs. v. Inclusive Cmtys. Project, Inc.*,
   576 U.S. 519 (2015) ................................................................................................................. 6
*Thornburg v. Gingles*, 478 U.S. 30 (1986) ....................................................................... 3, 4, 5, 6
*Veasey v. Abbott*, 13 F. 4th 362, 368 (5th Cir. 2021) .................................................................... 5
*Veasey v. Abbott*, 830 F.3d 216 (5th Cir. 2016) (en banc) ........................................................ 3, 4
*Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) ...................................................................................... 8

**Statutes**
28 U.S.C. § 517 ............................................................................................................................... 1
52 U.S.C. § 10301 ................................................................................................................... 1, 3, 7
52 U.S.C. § 10302 ...................................................................................................................... 4, 8
52 U.S.C. § 10303 ........................................................................................................................... 3
52 U.S.C. § 10308 ........................................................................................................................... 1

**Legislative History**
H.R. Rep. No. 97-227 (1981) ..................................................................................................... 6, 8
S. Rep. No. 94-295 (1975) ............................................................................................................. 4
S. Rep. No. 97-417 (1982) ......................................................................................................... 5, 8

## INTRODUCTION

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517, which authorizes the Attorney General "to attend to the interests of the United States in a suit pending in a court of the United States." These consolidated cases present important questions regarding enforcement of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301 (Section 2). Congress has vested the Attorney General with authority to enforce Section 2 on behalf of the United States. *See* 52 U.S.C. § 10308(d). Accordingly, the United States has a substantial interest in ensuring proper interpretation of this provision. The United States submits this Statement of Interest to address the availability of a private cause of action to enforce Section 2.

Private plaintiffs can enforce Section 2 as a statutory cause of action prohibiting both intentional racial discrimination in voting and voting practices that result in denial or abridgment of the right to vote on account of race or membership in a language minority group. The LULAC Plaintiffs, the Voto Latino Plaintiffs, and the Brooks Plaintiffs have brought Section 2 claims challenging Texas's statewide redistricting plans. State Defendants' motions to dismiss assert that these private plaintiffs cannot bring Section 2 claims, despite decades of private Voting Rights Act litigation and numerous Supreme Court decisions addressing Section 2 claims advanced by voters and civil rights groups. Longstanding case law, the structure of the Voting Rights Act, the Act's broad enforcement provisions, and authoritative sources of Congressional intent confirm that there is a private cause of action under Section 2. The United States expresses no view on jurisdictional questions, the merits of any claim, nor any other issues than those set forth in this brief.

1

**PROCEDURAL BACKGROUND**

On October 25, 2021, Governor Greg Abbott signed redistricting legislation for the Texas Congressional delegation, the Texas Senate, the Texas House, and the Texas State Board of Education (SBOE). *See* S.B. 6, 87th Leg., 3d Spec. Sess. (Tex. 2021) (Congress); S.B. 4, 87th Leg., 3d Spec. Sess. (Tex. 2021) (Senate); H.B. 1, 87th Leg., 3d Spec. Sess. (Tex. 2021) (House); S.B. 7, 87th Leg., 3d Spec. Sess. (Tex. 2021) (SBOE). Seven complaints filed by private plaintiffs to challenge one or more of these plans have been consolidated before this Court. *See* Order, ECF No. 16.[1]

Governor Abbott and other state officials ("State Defendants") have thus far moved to dismiss at least three complaints before this Court. As relevant here, State Defendants argue that the LULAC Plaintiffs, the Voto Latino Plaintiffs, and the Brooks Plaintiffs have failed to state a claim upon which relief can be granted because Section 2 does not create a private cause of action. *See* Mot. to Dismiss LULAC 16-19, ECF No. 12; Mot. to Dismiss Voto Latino 9-12, *Voto Latino v. Scott*, No. 1:21-cv-965 (W.D. Tex. Nov. 16, 2021), ECF No. 20; Mot. to Dismiss Brooks 16-19, ECF No. 43.

**LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotation marks omitted); *see also Scanlan v. Tex.*

---

[1] *See LULAC v. Abbott*, No. 3:21-cv-259 (W.D. Tex. Oct. 18, 2021), ECF No. 1; Compl., *Wilson v. Texas*, No. 1:21-cv-943 (W.D. Tex. Oct. 18, 2021), ECF No. 1; Compl., *Voto Latino v. Scott*, No. 1:21-cv-965 (W.D. Tex. Oct. 25, 2021), ECF No. 1; Compl., *Mexican American Legislative Caucus v. Texas*, No. 1:21-cv-988 (W.D. Tex. Nov. 3, 2021); Compl., *Brooks v. Abbott*, No. 1:21-cv-991 (W.D. Tex. Nov. 3, 2021), ECF No. 1; Compl., *Tex. State Conf. of the NAACP v. Abbott*, No. 1:21-cv-1006 (W.D. Tex. Nov. 5, 2021), ECF No. 1; Compl., *Fair Maps Tex. Action Comm. v. Abbott*, No. 1:21-cv-1038 (W.D. Tex. Nov. 16, 2021), ECF No. 1.

*A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (directing district courts to "accept all well-pleaded facts as true, viewing those facts most favorably to the plaintiff"). So long as the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable," the motion to dismiss must be denied. *Iqbal*, 556 U.S. at 678.

## STATUTORY BACKGROUND

Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, imposes a "permanent, nationwide ban on racial discrimination in voting." *Shelby Cnty. v. Holder*, 570 U.S. 529, 557 (2013). Section 2(a) prohibits any state or political subdivision from imposing or applying a "voting qualification," a "prerequisite to voting," or a "standard, practice, or procedure" that "results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color" or membership in a language minority group. 52 U.S.C. § 10301(a); *see also* 52 U.S.C. § 10303(f)(2) (applying protections to language minority groups). Like the Fourteenth and Fifteenth Amendments, Section 2 prohibits voting laws and practices adopted with a discriminatory purpose. *See Chisom v. Roemer*, 501 U.S. 380, 394 n.21 (1991); *see also, e.g.*, *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2330 (2021). A violation of Section 2 can also "be established by proof of discriminatory results alone." *Chisom*, 501 U.S. at 404; *see also, e.g.*, *Veasey v. Abbott*, 830 F.3d 216, 243 (5th Cir. 2016) (en banc). Section 2 therefore prohibits vote dilution, such as the use of redistricting plans that "minimize or cancel out the voting strength of racial [minorities in] the voting population." *Thornburg v. Gingles*, 478 U.S. 30, 47 (1986) (internal citations and quotation marks omitted).

## ARGUMENT

Private plaintiffs can bring a cause of action under Section 2. Throughout decades of Section 2 litigation challenging redistricting plans and voting restrictions in Texas and

elsewhere, courts have never denied a private plaintiff the ability to bring Section 2 claims. *See, e.g.*, *LULAC v. Perry*, 548 U.S. 399 (2006); *Houston Lawyers' Ass'n v. Att'y Gen.*, 501 U.S. 419 (1991); *Gingles*, 478 U.S. at 30; *Veasey*, 830 F.3d at 216; *Terrazas v. Clements*, 581 F. Supp. 1329 (N.D. Tex. 1984) (three-judge court). And for good reason. "[T]he existence of the private right of action under Section 2 . . . has been clearly intended by Congress since 1965," and the Supreme Court, in turn, has "entertained cases brought by private litigants to enforce § 2." *Morse v. Republican Party of Va.*, 517 U.S. 186, 232 (1996) (internal citations and quotation marks omitted); *see also Brnovich*, 141 S. Ct. at 2333 & n.5 (collecting the "steady stream" of private Section 2 cases heard by the Court). In fact, the Supreme Court held that a private cause of action exists to enforce Section 10 of the Voting Rights Act, in part because it would have been "anomalous" for a court "to hold that both § 2 and § 5 are enforceable by private action but § 10 is not." *Morse*, 517 U.S. at 232; *see also Allen v. State Bd. of Elections*, 393 U.S. 544, 557 (1969) (holding that an "individual citizen" may bring suit "to insure that his city or county government complies with" Section 5). Thus, although the Supreme Court has not addressed an express challenge to private Section 2 enforcement, the Court's precedent permits no other holding. *See also Morse*, 517 U.S. at 232-33 (establishing that voters may bring litigation to secure "a right" guaranteed by the Act).

To be sure, the Voting Rights Act does not expressly provide for private enforcement of Section 2. But the structure of the Act makes clear that private plaintiffs can secure their own rights. For example, Section 3 provides for certain remedies in actions brought by "the Attorney General *or an aggrieved person* . . . under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. § 10302(a), (c) (emphasis added); *see also* S. Rep. No. 94-295, at 40 (1975) (stating, in the context of amendments to the Voting Rights Act,

4

that "an individual or an organization representing the interests of injured persons" would be an "aggrieved person").  It would be passing strange for Section 3 to provide a remedy for aggrieved persons to enforce the voting guarantees of the Reconstruction Amendments if such persons could not bring enforcement actions under Section 2, whose original language "elaborates upon that of the Fifteenth Amendment." *City of Mobile v. Bolden*, 446 U.S. 55, 60 (1980).  Similarly, Section 14(e) allows for "the prevailing party, *other than the United States*" to seek attorney's fees "[i]n any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment."  52 U.S.C. § 10310(e) (emphasis added).  The availability of fees presupposes that a private cause of action is available to enforce the core provisions of the Voting Rights Act, including Section 2.  *See Shelby Cnty. v. Lynch*, 799 F.3d 1173, 1185 (D.C. Cir. 2015) ("Congress intended for courts to award fees under the [Voting Rights Act] . . . when prevailing parties helped secure compliance with the statute."); *Newman v. Piggie Park Enters.*, 390 U.S. 400, 402 (1968) ("Congress therefore enacted the provision for counsel fees . . . to encourage individuals injured by racial discrimination to seek judicial relief."); *see also Veasey v. Abbott*, 13 F. 4th 362, 368 (5th Cir. 2021) (affirming availability of attorney's fees to prevailing parties in Section 2 litigation).

Legislative history confirms the existence of a private cause of action to enforce Section 2.  The Report of the Senate Judiciary Committee accompanying the 1982 Voting Rights Act Amendments expressly "reiterate[s] the existence of the private right of action under Section 2, as has been clearly intended by Congress since 1965."  S. Rep. No. 97-417, at 30 (1982).  The Senate Report is the "authoritative source for legislative intent" behind Section 2 of the Voting Rights Act, as amended, *Gingles*, 478 U.S. at 43 & n.7, and the Supreme Court routinely relies on this "oft-cited Report," *Brnovich*, 141 S. Ct. at 2332-33.  *See also, e.g.*, *Reno v. Bossier*

5

*Parish Sch. Bd.*, 520 U.S. 471, 476-77, 479 (1997); *Holder v. Hall*, 512 U.S. 874, 884 (1994); *Gingles*, 478 U.S. at 43-46, 48, 55-56, 62-63, 65-66, 69, 71, 73, 75, 79.  The House Committee Report accompanying the 1982 Amendments similarly recognizes the existence of a private cause of action under Section 2.  H.R. Rep. No. 97-227, at 32 (1981); *see also, e.g.*, *Brnovich*, 141 S. Ct. at 2332 (relying on the 1981 House Report).

These statements of congressional intent not only stand on their own, but also must be understood taking into account the Supreme Court's guidance that "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Lorillard v. Pons*, 434 U.S. 575, 580 (1978).  There is no case before (or after) 1982 denying private plaintiffs a right of action under Section 2, and when Congress amended the Voting Rights Act in 1982, it is presumed to have been "aware of this unanimous precedent." *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 536 (2015).  Thus, it was "with that understanding [that Congress] made a considered judgment to retain the relevant statutory text." *Id.*

The limited federal resources available for Voting Rights Act enforcement reinforce the need for a private cause of action.  As the Supreme Court has noted, "[t]he Attorney General has a limited staff" who may not always be able "to uncover quickly new regulations and enactments passed at the varying levels of state government." *Allen*, 393 U.S. at 556.  This is particularly true now that the formula in Section 4(b) of the Voting Rights Act "can no longer be used as a basis" for requiring states and local jurisdictions to submit voting changes for preclearance. *Shelby Cnty.*, 570 U.S. at 557.  Thus, "[t]he achievement of the Act's laudable goal [would] be severely hampered . . . if each citizen were required to depend solely on litigation instituted at the discretion of the Attorney General." *Allen*, 393 U.S. at 556; *see also Morse*, 517 U.S. at 231-32

(attaching "significance to the fact that the Attorney General had urged us to find that private litigants may enforce the Act").

The State Defendants cite no cases concluding that Section 2 lacks a private cause of action. And they fail to acknowledge that another judge of this Court recently wrote that this argument "has no merit." *Mi Familia Vota v. Abbott*, 497 F. Supp. 3d 195, 223 (W.D. Tex. 2020). In fact, yet another judge of this Court rejected this argument the same day that Defendants moved to dismiss the Voto Latino Plaintiffs' complaint. *See* Tr. at 23:12-24:18, *La Union del Pueblo Entero v. Abbott*, No. 5:21-cv-844 (W.D. Tex. Nov. 16, 2021) (Ex. 1).[2] Instead, Texas trains a myopic eye on the text of Section 2, while ignoring the structure of the statute as a whole, the broader enforcement provisions of the Voting Rights Act, the precedent of which Congress was aware, and authoritative sources of Congressional intent. Mot. to Dismiss LULAC 17-18 (arguing that private plaintiffs cannot bring Section 2 claims because "Section 2's text focuses on the governmental officials it regulates, not individual voters"); Mot. to Dismiss Voto Latino 10-11 (same); Mot. to Dismiss Brooks 17 (same). It is of course true that Section 2 by its terms establishes prohibitions on official racial discrimination in voting. *See* 52 U.S.C. § 10301. But as described above, the Voting Rights Act as a whole establishes rights and remedies for individual voters to challenge such discrimination. Thus, contrary to the State's

---

[2] For the last 25 years, other courts have unanimously reached this same conclusion. *See, e.g.*, *Mixon v. Ohio*, 193 F.3d 389, 406 (6th Cir. 1999); *Tex. All. for Retired Ams. v. Hughs*, 489 F. Supp. 3d 667, 689 n.4 (S.D. Tex. 2020); *Veasey v. Perry*, 29 F. Supp. 3d 896, 905-07 (S.D. Tex. 2014); *Perry-Bey v. City of Norfolk*, 678 F. Supp. 2d 348, 362 (E.D. Va. 2009). Although Justice Gorsuch recently suggested that "[l]ower courts have treated this as an open question," his concurring opinion relied solely on a case from 1981 and did not account for the clarity of Congressional intent following the 1982 Voting Rights Act Amendments. *Brnovich*, 141 S. Ct. at 2350 (Gorsuch, J., concurring) (citing *Washington v. Finlay*, 664 F.2d 913, 926 (4th Cir. 1981)).

argument, the Voting Rights Act creates private remedies for any "aggrieved person," not merely for the federal government, 52 U.S.C. § 10302(a), (c).

Finally, *Alexander v. Sandoval*, 532 U.S. 275 (2001), and its progeny do not eliminate implied causes of action that have consistently been recognized by courts across the nation. *But see* Mot. to Dismiss LULAC 17-19; Mot. to Dismiss Voto Latino 10-12; Mot. to Dismiss Brooks 16-18. *Sandoval* acknowledges that the Supreme Court has "sworn off the habit of venturing beyond Congress's intent" and indicates that the "search for Congress's intent" may begin with statutory "text and structure," 532 U.S. at 287-88, but the decision does not require this Court to ignore Congress's stated intent entirely, *see id.* at 293 n.8 (acknowledging that "evidence of congressional intent" is "the essential predicate for implication of a private remedy" (internal quotation marks and citation omitted)). *See also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017) (rejecting mere abstract inquiries concerning the best means to effectuate legislative purpose). With respect to Section 2, Congressional intent is clear. "It is intended that citizens have a private cause of action to enforce their rights under Section 2." H.R. Rep. No. 97-227, at 30; *see also* S. Rep. No. 97-417, at 30; *Casarez v. Val Verde Cnty.*, 957 F. Supp. 847, 852-53 (W.D. Tex. 1997). And that intent is reflected in the Voting Rights Act's text and structure.

## CONCLUSION

Private plaintiffs have a cause of action under Section 2 of the Voting Rights Act. For the reasons set out above, State Defendants' motions to dismiss should be denied with respect to this issue.

Date: November 30, 2021

                                        PAMELA S. KARLAN
Principal Deputy Assistant Attorney General
Civil Rights Division

*/s/ Daniel J. Freeman*
T. CHRISTIAN HERREN, JR.
TIMOTHY F. MELLETT
DANIEL J. FREEMAN
JANIE ALLISON (JAYE) SITTON
JACKI L. ANDERSON
JASMIN LOTT
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530
(800) 253-3931
daniel.freeman@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on November 30 2021, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system, which will send notification of this filing to counsel of record.

                */s/ Daniel J. Freeman*
                Daniel J. Freeman
                Civil Rights Division
                U.S. Department of Justice
                950 Pennsylvania Ave, NW
                Washington, DC 20530
                (202) 305-4355
                daniel.freeman@usdoj.gov