# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> GREG ABBOTT, *et al.*, <br><br> *Defendants*. | § § § § § § § § § § § § | Case No. 3:21-cv-00259 <br> [Lead Case] |
| VOTO LATINO, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> JOHN SCOTT, *et al.*, <br><br> *Defendants*. | § § § § § § § § § § § § | Case No. 1:21-cv-00965 <br> [Consolidated Case] |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR
## MOTION TO DISMISS VOTO LATINO'S COMPLAINT

# TABLE OF CONTENTS

Introduction ........................................................................................................................................ 1

Legal Standard .................................................................................................................................... 1

Argument ............................................................................................................................................ 2

    I.    Voto Latino Lacks Standing ............................................................................................ 2

        A.    Voto Latino Has Forfeited any Argument on Associational Standing ................... 2

        B.    Voto Latino Fails to Explain Why it Has Organizational Standing ........................ 2

    II.    The Individual Plaintiffs Fail to Meet their Burden to Show Standing. ................................ 5

        A.    The Individual Plaintiffs do not Have Standing Where They Have Failed to Allege Facts Demonstrating an Intent to Vote in the 2022 Election. ..................... 5

        B.    The Individual Plaintiffs Fail to Address the Requirement that they Reside in the Congressional Districts they Challenge. ................................................................ 7

    III.    The Individual Plaintiffs Fail to Provide a Basis for an Implied Private Right of Action .. 8

Conclusion .......................................................................................................................................... 8

TABLE OF AUTHORITIES

**Federal Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................. 7
*Ass'n of Cmty. Orgs. for Reform Now v. Fowler*,
  178 F.3d 350 (5th Cir. 1999) ................................................................................ 3, 4
*Ctr. for Biological Diversity v. EPA*,
  937 F.3d 533, 542 (5th Cir. 2019) ........................................................................... 2
*DiMaio v. Democratic Nat. Comm.*,
  520 F.3d 1299 (11th Cir. 2008) ............................................................................... 6
*Fisher v. Metro. Life Ins. Co.*,
  895 F.2d 1073 (5th Cir. 1990) ................................................................................. 6
*Gilkerson v. Chasewood Bank*,
  1 F. Supp. 3d 570 (S.D. Tex. 2014) ......................................................................... 3
*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ................................................................................................. 2
*Jacquez v. Procunier*,
  801 F.2d 789 (5th Cir. 1986) ................................................................................... 7
*Judicial Watch, Inc. v. Griswold*,
  No. 1:20-cv-2992, 2021 WL 4556089 (D. Colo. Apr. 28, 2021) ............................. 4
*La. ACORN Fair Hous. v. LeBlanc*,
  211 F.3d 298 (5th Cir. 2000) ................................................................................... 2
*LULAC v. Abbott*,
  No. 3:21-cv-259 (W.D. Tex.) ................................................................................... 1
*Middaugh v. InterBank*,
  528 F. Supp. 3d 509 (N.D. Tex. 2021) .................................................................... 6
*NAACP v. City of Kyle*,
  626 F.3d 233 (5th Cir. 2010) ................................................................................... 2
*Nat'l Treasury Emps. Union v. United States*,
  101 F.3d 1423 (D.C. Cir. 1996) ............................................................................... 3
*OCA-Greater Houston v. Texas*,
  867 F.3d 604 (5th Cir. 2017) ................................................................................... 3
*Shaw v. Hunt*,
  517 U.S. 899 (1996) ............................................................................................ 7, 8
*Simon v. E. Ky. Welfare Rights Org.*,
  426 U.S. 26 (1976) ................................................................................................... 3
*Spiller v. City of Tex. City, Police Dep't*,
  130 F.3d 162 (5th Cir. 1997) ................................................................................... 7
*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ................................................................................................... 1
*Stringer v. Whitley*,
  942 F.3d 715 (5th Cir. 2019) ................................................................................... 6

*Summers v. Earth Island Institute*,
   555 U.S. 488 (2009) ............................................................................................................. 2, 6
*Thiebaut v. Colo. Springs Utils.*,
   455 F. App'x 795 (10th Cir. 2011) ........................................................................................... 5
*Union Planters Bank Nat'l Ass'n v. Salih*,
   369 F.3d 457 (5th Cir. 2004) ................................................................................................... 1
*United States v. Hays*,
   515 U.S. 737 (1995) ............................................................................................................ 7, 8
*We Are Am./Somos Am., Coal. of Ariz. v. Maricopa Cnty. Bd. of Supervisors*,
   809 F. Supp. 2d 1084 (D. Ariz. 2011) ..................................................................................... 5
*Women's Med. Ctr. of Providence, Inc. v. Roberts*,
   512 F. Supp. 316 (D.R.I. 1981) ............................................................................................... 5

**Federal Rules**

Fed. R. Civ. P 12(b)(1) ..................................................................................................................... 1
Fed. R. Civ. P. 15(a)(1)(B) ............................................................................................................... 7
Fed. R. Evid. 201 ............................................................................................................................. 6

**Constitutional Provisions**

Article III .................................................................................................................................... 1, 4

**INTRODUCTION**

Defendants' Motion to Dismiss explains why Plaintiffs have not presented a case fit for federal adjudication. Their Response does not make this any less so. This Court lacks jurisdiction over Voto Latino's claims because Voto Latino fails to demonstrate associational or organizational standing to sue. The Individual Plaintiffs lack standing, as well, because they have not alleged that they intend to vote in the 2022 election and because they cannot challenge congressional districts in which they do not reside.

**LEGAL STANDARD**

Plaintiffs suggests Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) is improper because it does not "address[s] the substance of Plaintiffs' claims" but, instead, "convince[s] the Court not to reach them." Dkt. 45 at 6.[1] But such is the nature of jurisdiction. It is axiomatic that a "court may not decide cause of action before resolving whether court has Article III jurisdiction." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998). Thus, this Court must address Defendants' motion to dismiss for lack jurisdiction before considering other challenges or reaching the merits of any case because, without jurisdiction, the court has no power to entertain the case. *Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004) ("[F]ederal courts are duty-bound to examine the basis of subject matter jurisdiction *sua sponte*, even on appeal."). To ask the Court to do so, as Defendants are doing here, is not a concession that Plaintiffs' Complaint states a basis for a claim nor that their claims can be proven meritorious on the evidence. Indeed, because Plaintiffs' Response reveals no way in which this Court can "satisfy itself of its jurisdiction under Article III before it considers the merits of a case," such issues need not be reached. *Steel Co.*, 523 U.S. at 95. For the reasons in Defendants' Motion and as further explained below, this Court should dismiss this suit

---

[1] The citations to the docket contained herein are in reference to the docket numbers as they appear in under the consolidated case *LULAC v. Abbott*, No. 3:21-cv-259 (W.D. Tex.).

for lack of standing.

## ARGUMENT

I. **Voto Latino Lacks Standing**

    A. **Voto Latino Has Forfeited Any Argument on Associational Standing**

Defendants' motion argued that Voto Latino lacked associational standing because the Complaint "fail[s] to 'identify members'" under *Summers v. Earth Island Institute*, 555 U.S. 488 (2009). Dkt. 22 at 8–10. Plaintiffs do not respond to Defendants' arguments challenging Voto Latino's entitlement to associational standing. *See* Dkt. 45. Instead, they argue only that Voto Latino has organizational standing. Dkt. 45 at 17. Voto Latino has forfeited any relevant arguments in favor of associational standing. *See Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 542 (5th Cir. 2019).

    B. **Voto Latino Fails to Explain Why it Has Organizational Standing**

Plaintiffs' Response fails to identify how Voto Latino's mission has been "perceptibly impaired" because it has "diverted significant resources to counteract the defendant's conduct." *NAACP v. City of Kyle*, 626 F.3d 233, 238 (5th Cir. 2010) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). "Not every diversion of resources to counteract the defendant's conduct, however, establishes an injury in fact." *Id.* The Fifth Circuit has "explained that '[t]he mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another party is insufficient to impart standing upon the organization.'" *Id.* (quoting *La. ACORN Fair Hous. v. LeBlanc*, 211 F.3d 298, 305 (5th Cir. 2000)). Activities that do not differ from the organization's "routine" activities do not confer standing. *Id.* at 238. Rather, there must be "concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitut[ing] far more than simply a setback to the organization's abstract social interests." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). The challenged conduct must

2

not only make the organization's "activities more difficult," but also constitute "a direct conflict" with its mission. *See Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1431 (D.C. Cir. 1996).

Voto Latino alleges that it primarily works to "ensure that Latinx voters are enfranchised and included in the democratic process" and it does so by "register[ing] and mobiliz[ing] thousands of Latinx voters each election cycle." Dkt. 7-5 ¶ 14. But Voto Latino fails to explain how SB 6 prevents it from continuing that work. SB 6 does not place any restrictions on Voto Latino's work or otherwise regulate Voto Latino.

Voto Latino's theory seems to be that SB 6 will lead to political outcomes that Voto Latino opposes, specifically the supposedly diluted voting power of certain voters. *See* Dkt. 45 at 12–13. But even "a showing that an organization's mission is in direct conflict with a defendant's conduct is insufficient, in and of itself, to confer standing on the organization to sue on its own behalf." *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 361 n.7 (5th Cir. 1999). If organizational standing were as broad as Voto Latino claims, no group would ever be denied standing. For example, organizations "dedicated to promoting access of the poor to health services" could "establish their standing simply on the basis of that goal" by alleging that a new law makes it harder for the poor to access health services, necessitating a redoubling of the organizations' efforts, but the Supreme Court has rejected such standing. *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 39–40 (1976). Voto Latino relies on cases in which the challenged law "complicate[d] the plaintiff's activities," *OCA-Greater Houston v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017), but they are irrelevant to a case, like this one, in which the plaintiff complains about needing to "combat" the law's "effects on" third parties rather than any direct effect on its own activities. Dkt. 7-5 ¶ 15; *see, e.g., Gilkerson v. Chasewood Bank*, 1 F. Supp. 3d 570, 585 (S.D. Tex. 2014) ("A statement that 'the organization's abstract social interests' were set back is insufficient" to confer organizational standing).

3

Moreover, that Voto Latino is expending resources to pursue this litigation does not confer organizational standing. The Fifth Circuit has explained that "allegations of injury in fact due to resources [an organization] has expended bringing [a suit]" does not obtain standing; such injury is "self-inflicted." *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 358 (5th Cir. 1999). Moreover, their challenge to SB 6 falls with their "routine" activities. *Press Releases*, Voto Latino, https://votolatino.org/media/press-releases/. As their website reflects, Voto Latino is involved in legislative decision-making in numerous ways in order to ensure its goals of "enfranchising Latinx voters." *Id.* Voto Latino "urges" passage of bills that will benefit their constituents, "demand" change from those they deem to be acting contrary to their mission, and, most importantly, file or intervene in voting rights lawsuits.[2] *Id.* Only a few months prior, Voto Latino told another court that they had "**substantial** and **distinct** legal interests" in a voting rights lawsuit given the mission of their organization. *Judicial Watch, Inc. v. Griswold*, No. 1:20-cv-2992, 2021 WL 4556089, at *1 (D. Colo. Apr. 28, 2021) (emphasis added). There is no basis to find Voto Latino has organizational standing on the grounds that they have brought this suit.

### C.  The Court Should Address Voto Latino's Standing

Plaintiffs argue that "the Court need not address Voto Latino's standing" because "Article III requires only that at least one plaintiff must have standing to seek each form of relief requested in the complaint." Dkt. 45 at 13 (quotation and brackets omitted). Even assuming Article III does not require a plaintiff-specific standing analysis, it would remain appropriate for a district court in this situation.

---

[2] In fact, Voto Latino is routinely involved in litigation not only in Texas but also nationwide. *Judicial Watch, Inc. v. Griswold*, No. 1:20-cv-2992, 2021 WL 4272719 (D. Colo. Sept. 20, 2021) (attempting to intervene as Defendants to ensure eligible voters remain registers to vote); *Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183 (10th Cir. 2014) (filing amicus brief in voting rights case); *Voto Latino Foundation v. Hobbs*, Case No. 2:19-cv-5685 (D. Ariz. 2019); *Rock The Vote v. Trump*, No. 3:20-cv-6021 (N.D. Cal. 2020) (lawsuit filed by Voto Latino challenging internet law that impacted their ability to increase voter turnout); *Lewis v. Hughs*, 475 F. Supp. 3d 597 (W.D. Tex. 2020), aff'd and remanded, 20-50654, 2020 WL 5511881 (5th Cir. Sept. 4, 2020), order withdrawn, 20-50654, 2020 WL 6066178 (5th Cir. Oct. 2, 2020) (lawsuit challenging mail-in voting laws); *Commonwealth of Virginia v. Ferriero*, No. 1:20-cv-242 (D.D.C. 2020) (amicus brief in support of the Equal Rights Amendment).

4

"[N]othing in the cases addressing this principle suggests that a court must permit a plaintiff that *lacks* standing to remain in a case whenever it determines that a co-plaintiff has standing." *Thiebaut v. Colo. Springs Utils.*, 455 F. App'x 795, 802 (10th Cir. 2011). Here, multiple factors weigh in favor of fully considering standing: (1) any other approach "would not fully address [this] motion," (2) failing to decide standing "would leave at least some of the plaintiffs in a state of legal limbo," (3) "if one group of plaintiffs lack[s] standing, defendants would at least be entitled to partial dismissal," and (4) "judicial economy" supports streamlining the case. *We Are Am./Somos Am., Coal. of Ariz. v. Maricopa Cnty. Bd. of Supervisors*, 809 F. Supp. 2d 1084, 1092–93 (D. Ariz. 2011).

The judicial-economy factor is crucial. When a case is on appeal after final judgment and one plaintiff has standing to support the judgment, an appellate court's refusal to address another plaintiff's standing likely serves judicial economy. For a district court considering a motion to dismiss, however, the opposite is true. Allowing a plaintiff without standing to continue litigating will only waste the parties' and the court's resources. Having additional parties means scheduling additional depositions and serving additional written discovery. And the standing issue may arise later in the case anyway. One ground for denying attorney's fees to a plaintiff who claims to be a "prevailing party" is that the plaintiff lacked standing. *See, e.g., Women's Med. Ctr. of Providence, Inc. v. Roberts*, 512 F. Supp. 316, 320 (D.R.I. 1981) ("[T]he potential availability of attorney's fees turns the standing question raised by defendants' motions to dismiss into a situation in which a great deal 'may be gained or lost (depending upon) the presence or absence of' multiple plaintiffs.").

## II. The Individual Plaintiffs Fail to Meet their Burden to Show Standing.

### A. The Individual Plaintiffs do not Have Standing Where They Have Failed to Allege Facts Demonstrating an Intent to Vote in the 2022 Election.

Defendants moved to dismiss for lack of standing because the Individual Plaintiffs "do not allege that they intend to vote in 2022 (or any other future election)." Dkt. 22 at 7. In response, the Individual Plaintiffs do not deny that intending to vote is necessary for standing. Nor do they deny

5

that they did not expressly allege an intention to vote in their Complaint.[3] Instead, they urge the Court to *infer* that they intend to vote based on their allegations "that they are U.S. citizens and registered voters." Dkt. 45 at 4. But many citizens and registered voters choose not to vote. Plaintiffs do not allege otherwise. In the 2018 primary elections, only about 17% of registered voters turned out.[4] These and similar statistics are properly subject to judicial notice. *See* Fed. R. Evid. 201. But even if the general statistics suggested most registered voters were likely to vote, that would not help the Individual Plaintiffs here. "[G]eneral data" does not suffice; "Plaintiff-specific" allegations are necessary. *Stringer v. Whitley*, 942 F.3d 715, 722 (5th Cir. 2019). Similarly, the fact "that a plaintiff has taken an action in the past"—here, registering to vote—"does not, by itself, demonstrate a substantial risk that the plaintiff will take the action in the future," much less a different action, like casting a ballot. *Id.*

Plaintiffs also point to their assertions on the merits, including that the new map "will dilute their voting rights," as support for an inference that the Individual Plaintiffs intend to vote in the future. Dkt. 45 at 4. But if claiming to have identified a violation of one's rights were enough to establish standing, standing and merits would merge, and there would be no independent standing requirement. That is not the law. Indeed, no inference can be drawn from a plaintiff's legal assertion about vote dilution. A "formulaic recitation of the elements" of a vote-dilution claim would be

---

[3] Although Plaintiffs' Response claims that the Individual Plaintiffs have a general intent to vote in the future (Dkt. 45 at 11), those allegations are not properly before this Court. *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990) (holding arguments made in response to dispositive motion, but not in the complaint, were not properly before the court); *Middaugh v. InterBank*, 528 F. Supp. 3d 509, 535 (N.D. Tex. 2021) ("As a general rule, claims and allegations that are not raised in the complaint, but raised for the first time in a response to a motion to dismiss are not properly before the court."). Even if some exception to this general rule existed, Plaintiffs do not claim an intent to vote in the 2022 election specifically, but rather, a general "inten[t] to vote in the future." Dkt. 45 at 8–11. Again, this falls short. *DiMaio v. Democratic Nat. Comm.*, 520 F.3d 1299, 1302 (11th Cir. 2008) (requiring intent to vote in specific election); *Summers*, 555 U.S. at 495 (plaintiff's claim that he "visited many national forests" previously and planned to visit several unnamed national forests at an unspecified time "in the future" failed to confer standing).

[4] Texas Secretary of State, Turnout and Voter Registration Figures (1970-current), https://www.sos.state.tx.us/elections/historical/70-92.shtml (showing 10.16% and 7.01% "Percent of Turnout to Registered Voters" for the March 2018 Republican and Democratic gubernatorial primary elections, respectively).

6

"conclusory and not entitled to be assumed true," *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009), but simply asserting that one's vote has been diluted is not even a formulaic recitation of the elements.

The Individual Plaintiffs' failure to allege that they intend to vote may seem trivial, but the very ease with which they could have alleged it, either originally or in response to the motion to dismiss, makes their refusal to do so all the more perplexing. *See* Fed. R. Civ. P. 15(a)(1)(B) (permitting an amended complaint "21 days after service of a motion under Rule 12(b)"). And because they have chosen to claim sufficiency of their Complaint as is, this Court need not provide Plaintiffs further leave to amend their Complaint now. *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Jacquez v. Procunier*, 801 F.2d 789, 792–93 (5th Cir. 1986)) (affirming district court's denial of leave to amend plaintiff's complaint because plaintiff asserted sufficiency of complaint in response to motion to dismiss).

### B. The Individual Plaintiffs Fail to Address the Requirement that they Reside in the Congressional Districts they Challenge.

In *United States v. Hays*, the Supreme Court unequivocally created a distinction for plaintiffs that bring a racial gerrymandering claim: those who live in the district they challenge and those who do not. 515 U.S. 737, 745 (1995). The former has standing to challenge the legislature's alleged reliance on racial criteria when map drawing. *Id.* The latter do not. *Id.* The Court recognized that a plaintiff who does not live in the district they challenge inherently lacks standing to do so because they suffer no "special harms" as a result. *Id.* Thus, the only way a plaintiff can prove standing in this circumstance is to show "specific evidence that he personally has been subjected to a racial classification." *Shaw v. Hunt*, 517 U.S. 899, 904 (1996) (citing *id.* at 737).

Plaintiffs' Response ignores *Hays* entirely. *See* Dkt. 45 at 11–16. Instead, the Individual Plaintiffs readily acknowledge they do not reside in congressional districts 2, 5, 6, 20, 24, 29, 30, 32, 34, and 35. *Id.* Nonetheless, they insist they have standing to challenge these districts because they were drawn in a way that impacted the way in which the districts they *do* reside in were drawn. *Id.*

Were it enough that the redrawing of neighboring district lines constitutes a "special harm" to confer standing, *Hays* and its subsequent authority recognizing the same principles would have no effect. After all, it is hard to imagine any plaintiff that could not plausibly claim that the redrawing of a district next to theirs impacted the way in which their districts was drawn—every district line affects the districts on either side of it.

Plaintiffs failed to show standing to challenge 2, 5, 6, 20, 24, 29, 30, 32, 34, and 35 because they provide no facts that indicate "they personally were assigned to their voting districts on the basis of race." *Shaw*, 517 U.S. at 904. Instead, Plaintiffs' claim is no more than "a generalized grievance against governmental conduct of which he or she does not approve." *Hays*, 515 U.S. at 745. This is not enough to confer standing on the Individual Plaintiffs and so this Court lacks jurisdiction to consider all Plaintiffs challenges to CD's 2, 5, 6, 20, 24, 29, 30, 32, 34, and 35.[5]

### III. The Individual Plaintiffs Fail to Provide a Basis for an Implied Private Right of Action.

Defendants maintain that private plaintiffs, especially non-voting private plaintiffs, do not have an implied private cause of action under Section 2 of the VRA, *see* Dkt. 20 at 9–12, but the Court has already ruled on this issue, *see* Dkt. 58. Although Defendants respectfully disagree with the Court's ruling, they will not burden the Court with further briefing of an already-decided issue here.

#### CONCLUSION

Defendants respectfully request that the Court grant their Motion to Dismiss and dismiss the claims brought against them by the Voto Latino Plaintiffs.

---

[5] As noted in Defendant's Motion, this lack of jurisdiction extends to Voto Latino as well, which faces the same restrictions as to these districts. Dkt. 22 at n. 3.

Date: December 7, 2021                      Respectfully submitted.

KEN PAXTON                                  */s/ Patrick K. Sweeten*
Attorney General of Texas                   PATRICK K. SWEETEN
                                            Deputy Attorney General for Special Litigation
BRENT WEBSTER                               patrick.sweeten@oag.texas.gov
First Assistant Attorney General            Tex. State Bar No. 00798537

                                            WILLIAM T. THOMPSON
OFFICE OF THE ATTORNEY GENERAL              Deputy Chief, Special Litigation Unit
P.O. Box 12548 (MC-009)                     will.thompson@oag.texas.gov
Austin, Texas 78711-2548                    Tex. State Bar No. 24088531
Tel.: (512) 463-2100
Fax: (512) 457-4410                         **COUNSEL FOR DEFENDANTS**

### CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on December 7, 2021, and that all counsel of record were served by CM/ECF.

                                            */s/ Patrick K. Sweeten*
                                            PATRICK K. SWEETEN