# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | |
|---|---|
| LULAC, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>GREG ABBOTT, in his official capacity as Governor of Texas, *et al.*,<br><br>*Defendants.* | Case No.: 21-CV-00259-DCG-JES-JVB<br>[Lead Case] |
| ROY CHARLES BROOKS, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>GREG ABBOTT, in his official capacity as Governor of Texas, *et al.*,<br><br>*Defendants.* | Case No.: 1:21-cv-00988-DCG-JES-JVB<br>[Consolidated Case] |

**BROOKS PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................................i
TABLE OF AUTHORITIES .......................................................................................................... ii
INTRODUCTION .......................................................................................................................... 1
STANDARD OF REVIEW ............................................................................................................ 2
ARGUMENT .................................................................................................................................. 2
    I.    Plaintiffs Have Plausibly Alleged a Section 2 Discriminatory Effects Claim. ................ 2
        A.    Binding Precedent Permits Section 2 Coalition Claims. .................................................. 2
        B.    Plaintiffs Sufficiently Allege that Black and Latino Voters Are Politically Cohesive. ... 5
        C.    Plaintiffs Sufficiently Allege Facts Supporting the Third *Gingles* Prong. ....................... 6
    II.    Plaintiffs Have Adequately Pleaded Their Intent Claim. .................................................. 6
    III.    Plaintiffs Have Plausibly Alleged Standing. .................................................................... 8
    IV.    Section 2 Has a Private Right of Action. ...................................................................... 11
CONCLUSION ............................................................................................................................. 12
CERTIFICATE OF SERVICE ..................................................................................................... 13

## TABLE OF AUTHORITIES

**Cases**

*Ala. Legislative Black Caucus v. Alabama*,
  575 U.S. 254 (2015) ........................................................................................................ 11

*Anne Harding v. County of Dallas, Tex.*,
  948 F.3d 302 (5th Cir. 2020) ............................................................................................ 9

*Badillo v. City of Stockton, Cal.*,
  956 F.2d 884 (9th Cir. 1992) ............................................................................................ 3

*Barrera-Montenegro v. United States*,
  74 F.3d 657 (5th Cir. 1999) .............................................................................................. 9

*Bartlett v. Strickland*,
  556 U.S. 1 (2009) ......................................................................................................... 4, 5

*Bridgeport Coal. for Fair Representation v. City of Bridgeport*
  512 U.S. 1283 (1994) ....................................................................................................... 3

*Bridgeport Coal. for Fair Representation v. City of Bridgeport*,
  26 F.3d 271 (2d Cir. 1994) ............................................................................................... 3

*Campos v. City of Baytown, Tex.*,
  840 F.2d 1240 (5th Cir. 1988) ......................................................................................... 2

*Club Retro, L.L.C. v. Hilton*,
  568 F.3d 181 (5th Cir. 2009) ........................................................................................... 2

*Concerned Citizens of Hardee Cty. V. Hardee Cty. Bd. of Comm'rs*,
  906 F.2d 524 (11th Cir. 1990) ......................................................................................... 3

*Growe v. Emison*,
  507 U.S. 25 (1993) ........................................................................................................... 3

*In re Katrina Canal Breaches Litig.*,
  495 F.3d 191 (5th Cir. 2007) ........................................................................................... 7

*Lane v. Halliburton*,
  529 F.2d 548 (5th Cir. 2008) ...................................................................................... 9, 10

*LULAC v. Clements*,
  999 F.2d 831 (5th Cir. 1993) ........................................................................................... 2

*McLin v. Ard*,
  866 F.3d 682 (5th Cir. 2017) ................................................................................... 2, 6, 7

*Morse v. Republican Party of Virginia*,
  517 U.S. 186 (1996) ....................................................................................................... 11

*Nixon v. Kent Cty.*,
  76 F.3d 1381 (6th Cir. 1996) ........................................................................................... 3

*Perry v. Perez,*
  565 U.S. 388 (2012) ......................................................................................................... 5

*Phillips v. City of Dallas*,
  781 F.3d 772 (5th Cir. 2015) .................................................................................................. 2
*United States v. Texas*,
  No. 21-50949 at *17 (5th Cir. Oct. 14, 2021) ............................................................................ 7
*Veasey v. Abbott*,
  830 F.3d 216 (5th Cir. 2016) .................................................................................................. 7
*Wilson v. Birnberg*,
  667 F.3d 591 (5th Cir. 2012) .................................................................................................. 8

**Rules**

Fed. R. Civ. P. 8(a)(2) ................................................................................................................ 5

**Statutes and Codes**

52 U.S.C. § 10301(a) ................................................................................................................. 3

52 U.S.C. § 10301(b) ................................................................................................................. 3

**Other Authorities**

Texas Secretary of State, *Candidate Information*,
  https://candidate.texas-election.com/Elections/getQualifiedCandidatesInfo.do ........................ 9

## INTRODUCTION

Defendants' motion to dismiss should be denied because it inverts the Rule 12(b)(6) standard by proposing an alternative set of facts and requesting that inferences be drawn in Defendants' favor. Moreover, Defendants' legal arguments are foreclosed by binding precedent.

First, Defendants' contention that Section 2 discriminatory results claims may not be advanced by Black and Hispanic voters in coalition is foreclosed by binding Fifth Circuit precedent.[1] The Fifth Circuit has twice reaffirmed—once sitting *en banc*—the viability of Section 2 coalition claims. Every circuit to consider the issue but one has so ruled. And the Supreme Court has assumed their viability. The Fifth Circuit's rule follows from the plain text of Section 2. Defendants contend that the Supreme Court held otherwise in *Bartlett*, but the Court expressly said it was *not* deciding the question of minority coalition claims under Section 2.

Second, the Brooks Plaintiffs' complaint sufficiently alleges facts supporting a claim for intentional discrimination. Defendants offer alternative explanations and seek for the Court to draw inferences in their favor. This turns the motion-to-dismiss standard upside down.

Third, Defendants' standing arguments are meritless. The complaint and record evidence—which the Court should consider in assessing a Rule 12(b)(1) motion—prove that the Brooks Plaintiffs intend to vote in 2022 and beyond (an inference the Court would in any event properly draw from their filing of a lawsuit on this topic). And the Court has already rejected Defendants' contention that the Voting Rights Act has no private right of action.

---

[1] The Brooks Plaintiffs' Section 2 discriminatory results claim is not part of their pending motion for a preliminary injunction.

1

**STANDARD OF REVIEW**

"To survive a motion to dismiss, a complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2017) (quoting *Phillips v. City of Dallas*, 781 F.3d 772, 776 (5th Cir. 2015)). "In reviewing the complaint [courts] 'draw all inferences in favor of the nonmoving party, and view all facts and inferences in the light most favorable to the nonmoving party." *Id.* (quoting *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009)).

**ARGUMENT**

**I.     Plaintiffs Have Plausibly Alleged a Section 2 Discriminatory Effects Claim.**

The Brooks Plaintiffs have plausibly alleged a Section 2 discriminatory effects claim. Binding Fifth Circuit precedent holds that plaintiffs may allege a Section 2 claim for a coalition of minority voters. The Supreme Court—in the case cited by Defendants—expressly declined to consider the question. This Court thus may not accept Defendants' invitation to defy Fifth Circuit precedent. Moreover, the Brooks Plaintiffs have alleged facts sufficient to state a claim under the second and third *Gingles* prongs.

**A.     Binding Precedent Permits Section 2 Coalition Claims.**

The Fifth Circuit has held that Section 2 plaintiffs may advance claims on behalf of a coalition of minority voters. "There is nothing in the law that prevents the plaintiffs from identify the protected aggrieved minority to include both Blacks and Hispanics. . . . If, together, they are of such numbers residing geographically so as to constitute a majority in a single member district, they cross the *Gingles* threshold as potentially disadvantaged voters." *Campos v. City of Baytown, Tex.*, 840 F.2d 1240, 1244 (5th Cir. 1988). The Fifth Circuit, sitting *en banc*, declined to revisit this holding. *See LULAC v. Clements*, 999 F.2d 831, 864 (5th Cir. 1993) (*en banc*) (noting circuit

2

precedent "allowing aggregation of different minority groups" and noting that "we need not revisit this question here"). The majority of circuit to consider the question agree. *See Bridgeport Coal. for Fair Representation v. City of Bridgeport*, 26 F.3d 271, 276-77 (2d Cir. 1994), *vacated on other grounds*, 512 U.S. 1283 (1994); *Concerned Citizens of Hardee Cty. V. Hardee Cty. Bd. of Comm'rs*, 906 F.2d 524, 526 (11th Cir. 1990); *see also Badillo v. City of Stockton, Cal.*, 956 F.2d 884, 891 (9th Cir. 1992) (noting that in Section 2 coalition claim requires showing of political cohesion among minority groups). The only time the Supreme Court has addressed the issue, it "assum[ed] (without deciding) that it was permissible . . . to combine distinct ethnic and language minority groups for purposes of assessing compliance with § 2." *Growe v. Emison*, 507 U.S. 25, 41 (1993).

The Fifth Circuit's holding flows from the plain text of Section 2. Section 2(a) of the Voting Rights Act ("VRA") prohibits any voting standard or practice that "results in a denial or abridgement of the right of any citizen of the United States to vote *on account of race or color*." 52 U.S.C. § 10301(a) (emphasis added). Section 2(b) sets forth how a violation of Section 2(a) is established, and notes that it applies to "a class of citizens protected by subsection (a)." *Id.* § 10301(b). The "class of citizens" to which Section 2(b) refers is not a singular racial or language minority group, but rather those "protected by subsection (a)"—*i.e.*, "any citizen" subject to a denial or abridgment of voting rights "on account of race or color." *Id.* Nothing in the text of Section 2 requires every member of the "class of citizens" to share the same race, as opposed to the same experience of being politically excluded "on account of race," whatever their race is. *Id.* This plain text reading of Section 2 illustrates the flaw in the Sixth Circuit's holding rejecting coalition claims—the only circuit to adopt Defendants' position. *See Nixon v. Kent Cty.*, 76 F.3d

3

1381, 1393 (6th Cir. 1996) (*en banc*) (concluding that the "class of citizens" means a singular racial group).

Defendants contend that the Supreme Court's decision in *Bartlett v. Strickland*, 556 U.S. 1 (2009) resulted in the overruling of *Campos*. Br. at 3-4. Not so. In *Bartlett*, the Supreme Court held that Section 2 did not require the *creation* of new crossover districts—those in which enough of the majority race's voters "cross over" to support the minority-preferred candidate, even where the minority group(s) do(es) not form a numerical majority. *Id.* at 23.[2] The Supreme Court *expressly disclaimed* the holding that Defendants contend it made: "This Court has referred sometimes to crossover districts as 'coalitional' districts, in recognition of the necessary coalition between minority and crossover majority voters. But that term risks confusion with coalition-district claims in which two minority groups form a coalition to election the candidate of choice. **We do not address that type of coalition district here.**" *Id.* at 13-14 (emphasis added). Defendants did not disclose this in their motion, and instead cherry-picked a quote from the next page of the *Bartlett* decision: "Nothing in § 2 grants special protection to a minority group's right to form political coalitions." *Id.* at 15; *see* Br. at 4. Given the Supreme Court's explanation a page earlier of what it meant by the "political coalition" it was rejecting, versus the one it was not addressing, Defendants' argument is misleading.

Moreover, Defendants' contention that the Supreme Court subsequently unanimously rejected coalition claims by using a "*cf.*" citation to *Bartlett*, Br. at 7, is absurd. *See* Br. at 7. In

---

[2] Importantly, the Supreme Court made clear that the *destruction* of effective crossover districts— as the legislature has done (again) to SD10—"raise[s] serious questions under both the Fourteenth and Fifteenth Amendments." *Id.* at 24. Plaintiffs allege that the destruction of benchmark SD10— a performing crossover district—was intentionally discriminatory. In the alternative, they allege that Section 2 requires the creation of a new district in which Black and Latino voters, in coalition, constitute a majority of the eligible voters.

4

*Perry v. Perez*, the Court noted that it was unclear from the district court's order whether it intended to draw a coalition district, and thus there was "no basis for doing so." 565 U.S. 388, 399 (2012). The "*cf.*" cite to *Bartlett* Defendants emphasize was to pages 13-15—the exact place in which the *Bartlett* Court disclaimed addressing "claims in which two minority groups form a coalition." *Bartlett*, 556 U.S. at 13-14. Defendants' contention that the *Perez* Court silently foreclosed Section 2 coalition claims by employing a "*cf.*" citation to a decision that *declined to rule on Section 2 coalition claims* is nonsensical. Rather, the *Perez* Court's conclusion that the district court had not articulated a basis for drawing the district at issue reflects the requisite showing needed to establish a Section 2 violation—a showing not addressed in the *Perez* district court decision.

Defendants' contention that the Brooks Plaintiffs' Section 2 coalition claim (Count 5) must be dismissed is foreclosed by binding Fifth Circuit precedent, and their effort to manufacture contrary Supreme Court precedent should be rejected.

### B. Plaintiffs Sufficiently Allege that Black and Latino Voters Are Politically Cohesive.

The Brooks Plaintiffs plausibly allege that Black and Latino voters are politically cohesive. Defendants contend that the complaint's allegations regarding Black and Latino political cohesion rests upon a "conclusory assertion" Br. at 8. But the Brooks Plaintiffs specifically pled that "minority voters succeed" in electing their preferred candidates in the benchmark SD10, listing vote totals for six different elections. Compl. ¶ 37. And the Brooks Plaintiffs specify that "Black and Hispanic voters prefer[] Democratic candidates by wide margins." Compl. ¶ 84. The listing of elections, inclusion of vote totals, and identification of the political party Black and Latino voters cohesively support easily satisfies Plaintiffs' obligation to place Defendants on notice with "a short and plain statement of the claim showing that pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

5

A complaint is not supposed to be an expert report; it is supposed to place Defendants on notice of Plaintiff's claims.

### C. Plaintiffs Sufficiently Allege Facts Supporting the Third *Gingles* Prong.

The Brooks Plaintiffs sufficiently allege facts supporting the third *Gingles* prong. The complaint explains that the legislature converted SD10 from a majority-minority district in which minority-preferred candidates prevail into an Anglo-majority district in which Anglo-preferred candidates prevail. Compl. ¶¶ 3, 35-47. As an example of how white bloc voting exists, the complaint explains in detail how converting SD10 to majority-Anglo alters the election results such that the Anglo-preferred candidate would win in the five most recent statewide elections. *Id.* ¶ 47. This plainly states a sufficient allegation that white bloc voting will usually result in the defeat of minority-preferred candidates in the region absent the drawing of a Section 2-compliant district.

Defendants' arguments in favor of dismissing the Brooks Plaintiffs' Section 2 coalition claim are unfounded; the motion should be denied.

## II. Plaintiffs Have Adequately Pleaded Their Intent Claim

Plaintiffs have adequately pleaded their intent claim because the factual allegations in their Complaint, taken as true and in the light most favorable to Plaintiffs, support the inference that the legislature acted with discriminatory intent in adopting enacted SD10. Defendants fail to show that the facts alleged by Plaintiffs, taken as true, are insufficient to state a claim for relief. Instead, Defendants ask the Court to view facts and draw inferences in the light most favorable to Defendants and to disregard facts Defendants find inconvenient. Because this is the opposite of what the Court must do in evaluating a motion to dismiss, *see McLin*, 866 F.3d at 688, the Court should deny the motion.

The bulk of Defendants' motion with respect to Plaintiffs' intent claim consists of proffering a series of alternative inferences regarding the legislature's motives, the legislative process, and the mapmakers reasons for misleading Plaintiff Powell regarding the changes to her district. In other words, Defendants contend that because they have crafted a favorable narrative that purportedly provides a nondiscriminatory basis for the legislatures' dismantling of SD10, the Court must accept that narrative as true and dismiss Plaintiffs' complaint. Defs' Mot. at 10-11. Not so. *See McLin*, 866 F.3d at 688 ("In reviewing the complaint [courts] 'draw all inferences in favor of the nonmoving party, and view all facts and inferences in the light most favorable to the nonmoving party'"). Moreover, Defendants' contention that the complaint itself cites politics, by explaining that the minority preferred candidate will lose SD10, misses the point. Plaintiffs must plead and prove a discriminatory result as part of their discriminatory intent claim. The reconstituted election results show just that—that the intended discriminatory result will occur.

Next, Defendants dispute two specific facts alleged by Plaintiffs. First, they ask the Court to disregard direct testimony that the justifications offered for dismantling SD10 were pretextual. Second, they dispute that the 2011 map was adopted with discriminatory intent.[3] Again, raising factual disputes is improper at the motion to dismiss stage, where the Court must accept facts offered by Plaintiffs as true. *See United States v. Texas*, No. 21-50949 at *17 (5th Cir. Oct. 14, 2021) ("In deciding a 12(b)(6) motion, a 'court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'") (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

---

[3] It was. *See Veasey v. Abbott*, 830 F.3d 216, 240 (5th Cir. 2016) (*en banc*) (citing the 2012 court ruling finding the 2011 map intentionally discriminatory as a "contemporary example of State-sponsored discrimination" in Texas, and holding that the ruling on the merits withstood *Shelby County*).

Finally, Defendants contend that Plaintiffs failed to sufficiently plead their intent claim because they only allege that Senator Huffman acted with discriminatory intent. But Plaintiffs repeatedly alleged that every legislator knew that dismantling SD10 would crack apart Black and Latino voters in Tarrant County, and that the legislators who voted for SD10 did so for the purpose of accomplishing that end. *See, e.g.*, Compl. ¶¶ 2, 4, 5, 56, 59, 66, 67, 74, 75. As such, Defendants claim to the contrary fails.

To the extent Defendants seek to offer an alternative narrative or dispute the facts underlying Plaintiffs' complaint, they are free to do so by filing an Answer and asserting their defenses. On a motion to dismiss, however, the Court must disregard Defendants' preferred inferences and their attempts to dispute the facts as irrelevant. *See Wilson v. Birnberg*, 667 F.3d 591, 600 (5th Cir. 2012) ("at the motion to dismiss stage . . . courts must limit their inquiry to the facts stated in the complaint. . . [defendants'] rebuttals must be ignored, and [plaintiffs'] assertions taken as true.") (internal citations omitted). Because Plaintiffs have sufficiently pleaded that the legislature acted with discriminatory intent in dismantling SD10, Defendants' motion to dismiss the intent claim should be denied.

### III.   Plaintiffs Have Plausibly Alleged Standing

Plaintiffs have plausibly alleged standing because there are sufficient undisputed facts in the record, which together with the complaint, clearly establish that each Plaintiff has suffered an injury traceable to defendants and redressable by the Court. Defendants move to dismiss Plaintiffs' claims for lack of standing under Fed. R. Civ. P. 12(b)(1) on the grounds that Plaintiffs have failed to plausibly allege any injury. In analyzing a motion to dismiss under 12(b)(1), a court "may find a plausible set of facts by considering any of the following: '(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint

8

supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Lane v. Halliburton*, 529 F.2d 548, 557 (5th Cir. 2008) (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1999).

Here, Defendants complain that Plaintiffs lack standing on any of their claims because they failed to allege that they have voted or intend to vote in future elections and because Plaintiff Powell failed to allege that she is a registered voter or that she intends to run for re-election. Defs' Mot. at 14-15. But there is undisputed evidence in the record that each Plaintiff regularly votes and intends to vote 2022 and in subsequent elections. Powell Decl. ¶ 2, ECF 39-3; Brooks Decl. ¶¶ 1, 3, ECF 39-45; Gutierrez Decl. ¶¶ 1, 3, ECF 39-46; Goines Decl. ¶¶ 1, 3, ECF 39-47; Bonilla Decl. ¶¶ 1, 3, ECF 39-48; Faulkner Decl. ¶¶ 1, 3, ECF 39-49; Spell Decl. ¶¶ 1, 3, ECF 39-50. Notably, that Plaintiff Powell regularly votes and intends to vote again in 2022 and in subsequent elections gives rise to a plausible inference that she is indeed a registered voter. Powell Decl. ¶ 2, ECF 39-3. Finally, the Court may take judicial notice of the fact that Plaintiff Powell has filed to run for re-election in SD-10, and this evidence is to show that she indeed intends to run for re-election. *See* Texas Secretary of State, *Candidate Information*, https://candidate.texas-election.com/Elections/getQualifiedCandidatesInfo.do (Search parameters: Election Year – 2022; Election – 2022 Mar. 1 Democratic Primary; Office Type – State; Office Name – State Senator, District 10). In any event, the Fifth Circuit has rejected the idea that voters must allege and prove the level of detail Defendants request in order to establish standing. *See Anne Harding v. County of Dallas, Tex.*, 948 F.3d 302, 307 (5th Cir. 2020) ("It is conceded that each voter resides in a district where their vote has been cracked or packed. *That is enough*." (emphasis added)).

Next, Defendants allege that Plaintiffs lack standing to bring Claims 1-3 and 5 because no Plaintiffs alleges that they "would live in SD10 if their proposed revisions were effective." Defs'

9

Mot. at 15. But again, there is specific and undisputed factual evidence in the record that six of the Plaintiffs would live in SD10 under Plaintiffs' remedial proposals. Brooks Decl. ¶ 2, ECF 39-45; Gutierrez Decl. ¶ 2, ECF 39-46; Goines Decl. ¶ 2, ECF 39-47; Bonilla Decl. ¶ 2, ECF 39-48; Faulkner Decl. ¶ 2, ECF 39-49; Spell Decl. ¶ 2, ECF 39-50. Thus, Defendants' complaints fall flat yet again.

Finally, Defendants allege that Plaintiffs lack standing to bring Claim 4 because they have failed to allege that they were put in one district or another on the basis of race. Defs' Mot at 15. But Plaintiffs clearly allege (1) that Plaintiffs Brooks, Goines, Faulkner, and Spell are Black, Compl. ¶¶ 9, 11, 13, 14; (2) that Plaintiffs Gutierrez and Bonilla are Latino, *id*. 10, 12; (3) that these six Plaintiffs live in Benchmark SD10 but were moved out of enacted SD10, *id*; ¶¶ 9-14; that enacted SD10 excludes Plaintiffs because it was drawn intentionally to discriminated based on race; *id*. ¶ 38 ("The enacted SD10 in Plan S2168 intentionally cracks Tarrant County's minority population in order to dismantle the district's status as a performing crossover district for minority voters"); and that race is the predominate reason why Plaintiffs are no longer in SD10, *id*. ¶¶ 76, 101 (alleging that race predominated in drawing enacted SD10). Defendants' contention that these allegations do not plausibly give rise to an inference that Plaintiffs were drawn out of SD10 based on race elevates form over function and reason. Furthermore, it ignores this Court's obligation to "take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff." *Lane*, 529 F.2d at 557. For this reason, the Court should deny Defendants' 12)(b)(1) motion

Moreover, Plaintiffs' *Shaw* claim alleges that the legislature removed Black and Latino voters on the predominant basis of race and moved into SD10 Anglo voters on the predominant basis of race. This sorting of voters on the basis of race—whether the removal of Black and Latino

10

voters or the addition of Anglo voters—is the "harm that underlie[s] a racial gerrymandering claim" and a voter of the race subject to the classification who "lives in the district attacked" has standing to raise the claim. *Ala. Legislative Black Caucus v. Alabama*, 575 U.S. 254, 263 (2015) (emphasis omitted). The Plaintiffs allege they are Black, Latino, or in the case of Sen. Powell, Anglo, *see* Powell Decl. ¶ live in the benchmark and/or new SD10, and that the legislature moved Black, Latino, and Anglo voters predominantly on the basis of race. This establishes their standing to pursue their *Shaw* claim.

Because there is specific and undisputed factual evidence in the record sufficient to rebut each of the purported deficiencies identified by Defendants with respect to Plaintiffs' standing. This undisputed evidence, together with the complaint, is sufficient to establish that each of the Plaintiffs has suffered an injury-in-fact sufficient to confer standing. As such, the Court should deny Defendants' motion under Fed. R. Civ. P. 12(b)(1).

**IV.     Section 2 Has a Private Right of Action.**

The Court has already denied Defendants' motion to dismiss another plaintiffs' complaint with respect to their argument that Section 2 has no private right of action. The Brooks Plaintiffs thus will not address this argument at length, and incorporate the Court's ruling on this matter herein. But the Brooks Plaintiffs note that Defendants are mistaken in their contention that that the Supreme Court has left unresolved whether Section 2 contains a private right of action. Br. at 16. In *Morse v. Republican Party of Virginia*, five Supreme Court justices agreed that Section 2 contains a private right of action. 517 U.S. 186 (1996); *see id.* at 232 ("Although § 2, like § 5, provides no right to sue on its face, 'the existence of the private right of action under Section 2 . . . has been clearly intended by Congress since 1965.") (Stevens, J., & Ginsburg, J.); *id.* at 240 (Breyer, J., O'Connor, J., & Souter, J., concurring) (agreeing with lead opinion that Section 2 has

11

private right of action). This conclusion was not "fractured" "dicta," but rather a key conclusion in the logical chain resulting in the Court's holding that § 10 of the VRA likewise had a private right of action. This majority holding of the Supreme Court is binding.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied.

December 13, 2021

Respectfully submitted,

*/s/ Chad W. Dunn*
Chad W. Dunn (Tex. Bar No. 24036507)
Brazil & Dunn
4407 Bee Caves Road
Building 1, Ste. 111
Austin, TX 78746
(512) 717-9822
chad@brazilanddunn.com

Mark P. Gaber*
Mark P. Gaber PLLC
P.O. Box 34481
Washington, DC 20
(715) 482-4066
mark@markgaber.com

Jesse Gaines* (Tex. Bar. No. 07570800)
P.O. Box 50093
Fort Worth, TX 76105
817-714-9988
gainesjesse@ymail.com

*Admitted *pro hac vice*

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that all counsel of record were served a copy of the foregoing this 13th day of December, 2021, via the Court's CM/ECF system.

*/s/ Chad W. Dunn*
Chad W. Dunn
