UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**LEAGUE OF UNITED LATIN AMERICAN
CITIZENS**, et al.,

                              *Plaintiffs*,

V.                                                      No. EP:21-cv-259-DCG-JES-JVB
                                                               [Lead Case]

**GREG ABBOTT,** in his Official Capacity as
Governor of the State Texas; et al.,

                              *Defendants;*

_____

**DAMON JAMES WILSON**, for himself
and on behalf of all others similarly situated,

                              *Plaintiff*,

V.                                                      No. 1:21-cv-00943-RP-JES-JVB
                                                               [Consolidated Case]

**THE STATE OF TEXAS**; et al.,

                              *Defendants*

### PLAINTIFF WILSON'S RESPONSE IN OPPOSITION TO

### DEFENDANTS' FIRST MOTION TO DISMISS

Richard Gladden
Texas Bar No. 07991330
1204 West University Dr., Suite 307
Denton, Texas 76201
940/323-9300 (voice)
940/539-0093 (facsimile)
richscot1@hotmail.com (email)
*Attorney-in-Charge for Plaintiff
Damon James Wilson*

December 13, 2021

# TABLE OF CONTENTS

**Page**

Table of Contents…………………………………………………………………...  i

Index of Authorities…………………………………………………………………... iii

I. Introduction...…………………………………………………………………… 1

II.  Defendants' Asserted Grounds for Dismissal………………………………….. 2

III. Standards for Review……………………………………………………………… 4

   a)  Dismissal under Rule 12(b)(1)……………………………………………….. 4

   b)  Dismissal under Rule 12(b)(6)……………………………………………….. 5

IV. Argument………………………………………………………………………… 6

   **1)  The Plaintiff has Standing because he has Plausibly Alleged an "Injury in Fact.**
   …………………………………………………………………………. 6

   **2)  The Constitutional Guarantees to Equal Representation Provided by Article I, §2 of the U.S. Constitution and §2 of the Fourteenth Amendment to the U.S. Constitution are Legally "Cognizable" Rights held by Persons, Including Prison Inmate Such as Plaintiff, Who are Ineligible to Vote under State Laws.**
   …………………………………………………… 7

   **3)  The Plaintiff has Standing because he has Plausibly Alleged an Injury that is "Fairly Traceable" to the Challenged Action of Defendants.**
   …………………………………………………… 10

   **4)  The Plaintiff has Standing because he has Plausibly Alleged an Injury that is Likely to be "Redressed" by the Prospective Equitable Relief he Seeks.**
   …………………………………………………….. 10

   **5)  "Sovereign immunity" held by Defendant Governor Abbott and Defendant Secretary of State Scott under the Eleventh Amendment to the U.S. Constitution Does Not Deprive the Court of Jurisdiction.**
   …………………………………………….. 11

**Page**

6) *"Legislative immunity" held by Defendant Speaker Phelan and Defendant Lieutenant Governor Dan Patrick Does not Deprive the Court of Jurisdiction.* ………………………………………………… 11

7) *Article I, §2 of the U.S. Constitution and §2 of the Fourteenth Amendment to the U.S. Constitution Apply to Intrastate Electoral Districting for Members of the U.S. House of Representatives.* ………………………………………. 12

8) *The "Legal Fiction" Applied by Defendants Treats Prison Inmates Differently, in Relation to Non-Prison Inmates, for Purposes of Determining Equal and Fair Representation in the U.S. House of Representatives.* ………………………………………………….. 13

9) *The "As Nearly as Practicable" and "Good Faith" Standards Established for Equal Representation in* Karcher v. Daggett*, 462 U.S. 725, 730 (1983), Applies to Plaintiff's Claims, Not the "Rational Basis" and "Arbitrary and Capricious" Standards Asserted by Defendant.* …………………………………… 14

10) *The Merit of Plaintiff's Challenge to Defendants' "Legal Fiction" Depends on Where Plaintiff as a Constitutional Matter must be Deemed an "Inhabitant" on "Census Day" (April 1, 2020).* ………………………………… 15

11) *The Framers' Manifest "Intentions" When they Adopted the Federal Constitutional Provisions Invoked by Plaintiff are Relevant to the Merits of Plaintiff's Claims."* ………………………………………………….. 16

Prayer…………………………………………………………............ 16

Certificate of Compliance………………………………………….. 17

Certificate of Service…………………………………………......... 17

ii

## INDEX OF AUTHORITIES

<u>**Cases:**</u>                                                                                                          <u>**Page**</u>

*Ashcroft v. Iqbal*, 556 U.S. 652 (2009)…………………………………………… 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)………………………………… 5

*Benton v. United States*, 960 F.2d 19 (5th Cir. 1992)……………………………… 4

*Bowsher v. Synar*, 478 U.S. 714 (1986)…………………………………………… 16

*Burns v. Richardson*, 384 U.S. 73 (1966)…………………………………………… 8, 15

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000)……………. 5

*Dept. of Commerce v. New York*, --- U.S. ---, 139 S. Ct. 2551 (2019)……………. 7

*Evenwel v. Abbott*, 578 U.S. ---, 136 S. Ct. 720 (2016)…………………………… 8-10, 12

*Ex Parte Young*, 209 U. S. 123 (1908)…………………………………………… 11

*Franklin v. Massachusetts*, 505 U.S. 788 (1992)………………………................... 16

*Karcher v. Daggett*, 462 U.S. 725 (1983)………………………………………… 3, 14, 15

*Leatherman v. Tarrant Co. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993). ………………………………………………………………….. 5

*Mahan v. Howell*, 410 U.S. 315 (1973)…………………………………………… 15

*Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169 (5th Cir. 1994)………………… 4

*Paterson v. Weinberger*, 644 F.2d 521 (5th Cir. 1998)…………………………… 5

*Perez v. Texas*, No. 5:11-cv-00360-OLG (W. D. Tex.)…………………………… 8, 9

*People's Nat'l Bank v. Office of the Comptroller of the Currency of the U.S.*, 362 F.3d 333 (5th Cir. 2004) ………………………………………………………………….... 4

*Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001)………………………..... 4

*Reynolds v. Sims*, 377 U.S. 533 (1964)…………………………………………….. 8

*Rucho v. Common Cause*, 588 U.S. ---, 139 S.Ct. 2484 (2019)…………………… 10

**Page**

*Tellabs v. Makor Issues & Rights*, 551 U.S. 308 (2007)…………………………... 5

*Wesberry v. Sanders*, 376 U.S. 1 (1964)…………………………………………… 14, 15

*Whole Woman's Health v. Jackson*, --- U.S. --- (slip op.)(decided Dec. 10, 2021)... 11

**Statutes, Codes, Rules, and Constitutional Provisions:**

Rule 12(b), Federal Rules of Civil Procedure……………………………………… 1, 2, 4, 5

Local Rule CV-7, Rules of the United States District Court for the Western District of Texas.
…………………………………………………………… 1, 2, 17

Article I, § 2, U.S. Constitution………………………………………………… 3, 7, 12, 14, 16

Section 2, Fourteenth Amendment to the U.S. Constitution………………………... 3, 7, 12, 16

The Equal Protection Clause, Fourteenth Amendment to the U.S. Constitution…... 8, 13

**Other Sources:**

Wright & Miller, *Federal Practice and Procedure* (3d ed. 2004)…………………. 5

*****

**PLAINTIFF WILSON'S RESPONSE IN OPPOSITION TO**

**DEFENDANTS' FIRST MOTION TO DISMISS**

COME NOW Damon James Wilson, Plaintiff in the above-referenced consolidated case, and, pursuant to Rule 12 of the Federal Rules of Civil Procedure, and Local Rule CV- 7(d)(2) of the U.S. District Court for the Western District of Texas, file this *Response in Opposition to Defendants' First Motion to Dismiss* **(ECF No. 44)**, and in this connection would respectfully show unto the Court as follows:

## I.

### INTRODUCTION

On November 29, 2021, the Defendants filed a motion to dismiss Plaintiff's original complaint (ECF No. 44). Four days later, on December 3, 2021, without affording Plaintiff a reasonable opportunity to respond to Defendant's motion to dismiss, the Court granted Defendants' motion to dismiss without prejudice, based solely on its conclusion that Plaintiff's original complaint did not plausibly allege an "injury in fact" (ECF No. 63).

On December 5, 2021, Plaintiff filed an objection to the Court's order of dismissal on the ground that its action contravened Local Rule CV-7(d)(2) of the Rules of the U.S. District Court for the Western District of Texas ("Local Rule")("A response to [a motion other than one pertaining to discovery or case management] shall be filed not later than 14 days after the filing of the motion.")(ECF No. 64). The following day, December 6, 2021, the Court entered a "text" order overruling Plaintiff's objection and denying Plaintiff's request for reconsideration of the order of dismissal (Docket Entry).

This date, December 13, 2021, in accordance with Local Rule CV-15(b), Plaintiff has filed his first amended complaint wherein he has more particularly alleged the basis for his

contentions that he has be subjected to an injury in fact.  In accordance with Local Rule CV-7(d)(2), this response is submitted to address not only the question of whether Plaintiff's first amended complaint adequately alleges an injury in fact (which formed the basis for the Court prior order of dismissal), but also to address other grounds raised by Defendants' first motion to dismiss that were not reached by the Court's order of dismissal.

## II.

## THE DEFENDANTS' ASSERTED GROUNDS

## FOR DISMISSAL

The Defendant contends that Plaintiffs' claims must be dismissed under **Rule 12(b)(1)(lack of "subject matter jurisdiction")** on the grounds that:

a) The Plaintiff lacks standing because he has not plausibly alleged an "injury in fact"[1] that is "fairly traceable" to the challenged action of Defendants[2] which is likely to be "redressed" by the equitable relief he seeks;[3]

b) "Sovereign immunity" held by Defendant Governor Abbott and Defendant Secretary of State Scott under the Eleventh Amendment to the U.S. Constitution deprives the Court of jurisdiction;[4] and,

c) "Legislative immunity" held by Defendant Speaker Phelan and Defendant Lieutenant Governor Dan Patrick deprives the Court of jurisdiction.[5]

The Defendants also contend that Plaintiff's claims must be dismissed under **Rule 12(b)(6)("failure to state a claim")** on the grounds that Plaintiff's claims, as alleged, "would fail on the merits" because:

---

[1] *Defendants' First Motion to Dismiss*, 3-4, 6 (ECF No. 44).
[2] *Id.*, at 3, 9, 11, 13.
[3] *Ibid*.
[4] *Id.*, at 9-11.
[5] *Id.*, at 9, 12-13.

d) Article I, §2 of the U.S. Constitution and §2 of the Fourteenth Amendment to the U.S. Constitution do not apply to intrastate electoral districting for Members of the U.S. House of Representatives;[6]

e) The constitutional guarantees to equal representation provided by Article I, §2 of the U.S. Constitution and §2 of the Fourteenth Amendment to the U.S. Constitution are not legally "cognizable" rights held by persons who are ineligible to vote under states laws;[7]

f) The "legal fiction" applied by Defendants does not treat prison inmates differently, in relation to non-prison inmates, for purposes of determining equal and fair representation in the U.S. House of Representatives;[8]

g) The merit of Plaintiff's challenge to Defendants' "legal fiction" does not depend on where Plaintiff as a constitutional matter must be deemed an "inhabitant" on "Census Day" (April 1, 2020), but instead depends on the location of where Plaintiff is currently confined.[9]

h) A "rational basis" standard, and not the "as nearly as practicable" and "good faith" standards established for equal representation in *Karcher v. Daggett*, 462 U.S. 725, 730 (1983), applies to Plaintiff's claims, and the "legal fiction" applied by Defendants is both "rational" and not "arbitrary";[10] and finally,

i) The Framers' manifest "intentions" when they adopted the federal constitutional provisions upon which Plaintiff relies are irrelevant because the Framers' intentions "are not the law."[11]

---

[6] *Defendants' First Motion to Dismiss*, 7.
[7] *Id.*, at 1-2, 5-6.
[8] *Id.*, at 7.
[9] *Id.*, at 2-3.
[10] *Id.*, at 8.
[11] *Id.*, at 9.

3

# III.

## STANDARDS OF REVIEW

The Defendants seek dismissal both on the ground that the Court is without "subject matter jurisdiction,"[12] and on the ground that Plaintiff's Original Complaint "fails to state a claim upon which relief can be granted."[13] The Plaintiff will first set out the standards applicable to those two issues below.

### A) *Dismissal under Rule 12(b)(1).*

A motion to dismiss under Federal Rule 12(b)(1), including one that urges a plaintiff does not have "standing" to bring a claim for relief, operates to test the jurisdiction of the court. Dismissal should not be granted unless it appears certain that there is no set of circumstances that would entitle the Plaintiff to relief. *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992). Federal courts are courts of limited jurisdiction; that is, without jurisdiction conferred by statute, federal courts lack the power to adjudicate claims. *People's Nat'l Bank v. Office of the Comptroller of the Currency of the U.S.*, 362 F.3d 333, 336 (5th Cir. 2004). A motion to dismiss pursuant to Rule 12(b)(1) must be considered before any other challenge because a court must have jurisdiction before determining the validity of a claim. *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994). When considering a motion to dismiss for lack of subject matter jurisdiction, the court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The plaintiff bears the burden of proof that jurisdiction does in fact exist when jurisdictional facts are controverted. *Id.* Where the motion to dismiss is based on the complaint

---

[12] Fed.R.Civ.P. 12(b)(1)(hereafter "Rule 12(b)(1)").
[13] Fed.R.Civ.P. 12(b)(6)(hereafter "Rule 12(b)(6)").

alone, the court is required to merely decide whether the allegations in the complaint, presumed to be true, sufficiently state a basis for subject matter jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1998).

**B) *Dismissal under Rule 12(b)(6).***

Motions to dismiss for failure to state a claim under Rule 12(b)(6) are viewed with disfavor and are seldom granted. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The District Court must "accept all factual allegations in the complaint as true," *Leatherman v. Tarrant Co. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); and the Court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs v. Makor Issues & Rights*, 551 U.S. 308, 323 (2007), *citing* 5B Wright & Miller, *Federal Practice and Procedure*, § 1357 (3d ed. 2004 and Supp. 2007).

Prior Fifth Circuit precedent applying a "heightened pleading requirement," whereby a plaintiff was once required to plead "specific facts" in an original complaint to avoid dismissal under Rule 12(b)(6), was condemned by the United States Supreme Court in *Leatherman v. Tarrant County Narcotics Coordination & Intelligence Unit*, 507 U.S. 163, 168 (1993). Nonetheless, factual allegations "must be enough to raise a right to relief above the speculation level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also*, *id*., 550 U.S. at 569 n. 14 (distinguishing *Leatherman*, *supra*). In other words, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 652, 678 (2009). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.*

## IV.

## ARGUMENT

**1)  *The Plaintiff has Standing because he has Plausibly Alleged an "Injury in Fact."***[14]

In its order of dismissal the Court concluded Plaintiff's original complaint failed to sufficiently allege facts that "explained why" his "ability to influence or benefit from federal policy is any less than it would be if he were considered a resident of the district where he is domiciled."[15] Additionally, turning to Plaintiff's factual allegation that the State's policy "has adversely affected . . . the responsivity of the U.S. Representative who would otherwise serve as Plaintiff's duly elected Member of Congress," the Court, "accepting this [factual allegation] as true," nonetheless deemed this allegation as "too speculative to support an injury-in-fact."[16]

In his first amended complaint Plaintiff has more particularly "explained why" his "ability to influence or benefit from federal policy" is "less" than it would be if he were considered a resident of the district where he is domiciled. *See Plaintiff's First Amended Complaint*, pp. 14-18, ¶¶ 10-14 (filed Dec. 13, 2021).

With regard to the Court's prior conclusion that Plaintiff's allegation is "too speculative to support an injury-in-fact," insofar as he has alleged Defendants' legal fiction "has adversely affected and will adversely affect the responsivity of the U.S. Representative who would otherwise serve as Plaintiff's duly elected Member of Congress";[17] Plaintiff in his first amended complaint has more particularly alleged the ground on which he asserts he has sustained an

---

[14] *Defendants' First Motion to Dismiss*, 3-4, 6 (ECF No. 44).
[15] *District Court's Order Granting Defendants' Motion to Dismiss*, 2.
[16] *District Court's Order Granting Defendants' Motion to Dismiss*, 2-3.
[17] *Ibid.*

"injury in fact" attributable to Defendants' legal fiction. *See Plaintiff's First Amended Complaint*, p. 17, ¶ 13.

To the extent Plaintiff's legal standing involves an inquiry into Plaintiff's "injury in fact," Plaintiff's standing, as alleged in his first amended complaint, does not rest on mere speculation about the decisions of the congressional staff of U.S. Representative who would represent him in CD30, or on mere speculation about the decisions made by the actual U.S. Representative who would represent Plaintiff in CD30. Rather, as the U.S. Supreme Court has ruled in a similar context, *Dept. of Commerce v. New York*, --- U.S. ---, 139 S. Ct. 2551, 2566 (2019), Plaintiff's alleged "injury in fact" relies instead on the "predictable effect" of Defendants' action on the decisions made by those third-parties (with the "third-party" in this case being the U.S. Representative who would represent Plaintiff's domicile in the U.S. House of Representatives). *Ibid.* (finding standing existed where federal census undercount was alleged to be "attributable at least in part to [third-party] noncitizens' reluctance to answer a citizenship question").

2) ***The Constitutional Guarantees to Equal Representation Provided by Article I, §2 of the U.S. Constitution and §2 of the Fourteenth Amendment to the U.S. Constitution are Legally "Cognizable" Rights held by Persons, Including Prison Inmate Such as Plaintiff, Who are Ineligible to Vote under State Laws***.[18]

In its order of dismissal the Court ruled that Plaintiff's original complaint was deficient "[b]ecause [Plaintiff] cannot vote" and for that reason he has therefore "not shown that he suffers the injury-in-fact needed for standing."[19] Thus, the Court's ruling in this instance concerned the legal "cognizability," for constitutional purposes, of the rights which Plaintiff alleged to be violated in his original complaint. To clarify the basis of his constitutional claims, Plaintiff has

---

[18] *Defendants' First Motion to Dismiss*, at 1-2, 5-6.
[19] *District Court's Order Granting Defendants' Motion to Dismiss*, 2.

included an additional allegation in his first amended complaint. *See Plaintiff's First Amended Complaint*, p. 10, ¶ 2.

According to the U.S. Supreme Court, "the basis of *representation* in the House was [intended] to include all inhabitants…even though States remai[n] free to deny many of those inhabitants the right to participate in the selection of their representatives," *Evenwel v. Abbott*, 578 U.S. ---, 136 S. Ct. 1120, 1127 and n. 8 (2016)(italics in original). Thus, "it remains beyond doubt that the principle of representational equality figured prominently in the decision to count people, whether or not they qualify as voters." *Id.*, 136 S. Ct. at 1129.[20]

The Court's reliance on *Perez v. Texas*, No. 5:11-cv-00360-OLG (W. D. Tex.) as support for its prior order which dismissed Plaintiff's original complaint was improvident. This is so not only because the decision in *Perez* did not have the benefit of the U.S. Supreme Court's subsequent decision in *Evenwel*, *supra*, but also because the factual basis of the plaintiffs' complaint in *Perez* is distinguishable from the present case. In *Perez* a three-judge panel of the District Court dismissed claims brought by certain "voters" (*i.e.*, "non-inmate voters"). The *Perez* plaintiffs complained, *inter alia*, that the State of Texas' use of the legal fiction described above, which assigned inmates to congressional districts in which they did not reside, operated to deprive them of their rights under the Equal Protection Clause of the Fourteenth Amendment.[21] With regard to these specific claims District Court in *Perez* ruled the plaintiffs failed to state a valid claim for two reasons. *First*, after noting there were "no allegations in th[e] case regarding

---

[20] Thus, the Court's decision in *Evenwel v. Abbott*, *supra*, partially modified the Court's prior statement in *Burns v. Richardson*, 384 U.S. 73, 92 (1966), wherein it previously observed that "[n]either in *Reynolds v. Sims* nor in any other decision has this Court suggested that the States are required to include aliens, transients, short-term or temporary residents, or persons denied the vote for conviction of crime in the apportionment base by which their legislators are distributed and against which compliance with the Equal Protection Clause is to be measured." Under *Evenwel*, the federal constitution would not necessarily require "transients" or "short-term temporary residents" who have a domicile out-of-state to be counted in a state's legislative allocation of persons for redistricting purposes, but *Evenwel* plainly does require the counting of a state's "inhabitants" in that calculation.
[21] *Perez v. Texas*, No. 5:11-cv-00360-OLG (W. D. Tex.), *Perez Plaintiffs' Third Amended Complaint*, 6-7)(filed July 19, 2011)(ECM Dkt.# 53).

the discriminatory treatment of prisoners," the District Court ruled that "[w]hile the State could [have] enact[ed] a …statute that modifie[d] the count of prisoners as residents of whatever county they lived in prior to incarceration, there is no federal requirement to do so."[22] *Second*, the District Court in *Perez* ruled that "in the face of the lack of more definitive guidance from the Supreme Court" the "eminently political question" presented by the *Perez* plaintiffs constituted a "political question" that had been "left to the political process."[23]

Since the District Court's decision in *Perez*, the U.S. Supreme Court has provided Districts Courts, including this one, with "more definitive guidance," which the District Court in *Perez* admittedly lacked, concerning whether "the basis of *representation* in the House was [intended] to include all inhabitants…even though States remai[n] free to deny many of those inhabitants the right to participate in the selection of their representatives." *Evenwel v. Abbott*, *supra*, 136 S. Ct. at 1127 and n. 8 (italics in original).

Furthermore, the cause of action alleged by the plaintiffs in *Perez* is factually distinguishable from the Plaintiff's claims herein. The plaintiffs in *Perez* were "voters," not a prison inmate who was ineligible to vote in federal elections; and the plaintiffs in *Perez* alleged *their* personal rights to equal representation were vicariously violated on the basis of the application of Defendants' legal fiction to personal rights of third-parties, *i.e.*, prison inmates who were ineligible to vote in federal elections.  Unlike the present case, no prison inmate was a party to the plaintiff's complaint in *Perez*; and because the plaintiffs in *Perez* had no standing to assert the rights of third-party prison inmates, the District Court's decision in *Perez*, particularly

---

[22] *Perez v. Texas*, *supra, Order on Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and, in the Alternative, Motion for Judgment on the Pleadings*, 24 (W.D.Tex., Sept. 2, 2011)(ECM Dkt.#285)("*District Court's Order of Dismissal*").
[23] *Perez v. Texas*, *supra, District Court's Order of Dismissal*, at 25 (ECM Dkt.#285).

in light of the Supreme Court's provision of "more definitive guidance" in *Evenwel*, *supra*, is entitled to no persuasive weight.[24]

**3)  *The Plaintiff has Standing because he has Plausibly Alleged an Injury that is "Fairly Traceable" to the Challenged Action of Defendants*.[25]**

The Plaintiff's first amended complaint has provided Defendants with notice of the nature of his claim that his injuries in fact are "traceable" to their conduct. *See Plaintiff's First Amended Complaint*, pp. 18-20, ¶ 16. Because these allegations provide Defendants with fair notice, and because the allegations provide a plausible basis to support Plaintiff's standing, Defendants' motion to dismiss must be denied.

**4)  *The Plaintiff has Standing because he has Plausibly Alleged an Injury that is Likely to be "Redressed" by the Prospective Equitable Relief he Seeks*.[26]**

The Plaintiff's first amended complaint has provided Defendants with notice of how he would secure "redress" as a remedy for the constitutional violations that have been alleged. *See Plaintiff's First Amended Complaint*, p. 20, ¶ 17. An order or judgment entered by this Court would be capable of "redressing" the harms about which Plaintiff complains. Because Plaintiff's allegations provide Defendants with fair notice, and because the allegations provide a plausible basis to support Plaintiff's standing, Defendants' motion to dismiss must be denied.

---

[24] Although not raised by Defendants nor considered by the Court herein, the Supreme Court has also provided "more definitive guidance" on the question of whether representational harm claims are "justiciable." *See Evenwel* , *supra*, 136 S. Ct. at 1123-1124 (canvassing the Court's prior precedents and observing its decisions had "set the stage" for the justiciability of representational harm claims notwithstanding concerns that such claims might entangle the federal judiciary in "political thickets."); *Rucho v. Common Cause*, 588 U.S. ---, 139 S.Ct. 2484, 2496 (2019), (observing representational harm claims other than partisan Gerrymandering claims can "be decided under basic equal protection principles."). In the event the Court elects to consider *sua sponte* the independent question of whether Plaintiff's claims are "justiciable," Plaintiff requests an opportunity to brief that separate question before any decision by the Court.
[25] *Defendants' First Motion to Dismiss*, at 3, 9, 11, 13.
[26] *Ibid*.

5)  *"Sovereign immunity" held by Defendant Governor Abbott and Defendant Secretary of State Scott under the Eleventh Amendment to the U.S. Constitution Does Not deprive the Court of Jurisdiction*.[27]

The Plaintiff's first amended complaint has provided Defendants with notice of the legal reasons why their defense of "sovereign immunity" would not defeat the prospective equitable relief Plaintiff seeks. *See Plaintiff's First Amended Complaint*, p. 20, ¶ 18. The Plaintiff's claims seeking prospective remedial relief are not barred by the Eleventh Amendment to the U.S. Constitution or the doctrine of sovereign immunity. While states are generally immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity, the U.S. Supreme Court has recognized an exception to the Eleventh Amendment and the doctrine of sovereign immunity that allows an action that seeks, as in the present case, prospective equitable relief that would prevent state officials from applying or enforcing state laws that are contrary to federal law. *See*, *Whole Woman's Health v. Jackson*, --- U.S. --- , slip op. at 10 (decided Dec. 10, 2021), *citing Ex Parte Young*, 209 U. S. 123, 159-160 (1908). Because the allegations in Plaintiff first amended complaint provide a plausible basis to support the prospective equitable relief Plaintiff seeks, Defendants' motion to dismiss must be denied.

6)  *"Legislative immunity" held by Defendant Speaker Phelan and Defendant Lieutenant Governor Dan Patrick Does Not Deprive the Court of Jurisdiction*.[28]

The Plaintiff's first amended complaint has provided Defendants with notice of the legal reasons why their defense of "legislative immunity" would not defeat the prospective equitable relief Plaintiff seeks. *See Plaintiff's First Amended Complaint*, pp. 20-22, ¶¶ 18-21. Because these allegations provide Defendants with fair notice, and because the allegations provide a

---

[27] *Defendants' First Motion to Dismiss*, at 9-11.
[28] *Defendants' First Motion to Dismiss*, at 9, 12-13.

plausible basis to support the prospective equitable relief Plaintiff seeks, Defendants' motion to dismiss must be denied.

7) ***Article I, §2 of the U.S. Constitution and §2 of the Fourteenth Amendment to the U.S. Constitution Apply to Intrastate Electoral Districting for Members of the U.S. House of Representatives***.

The Defendants in their motion to dismiss contend that "Article I, §2 of the U.S. Constitution and §2 of the Fourteenth Amendment" to the U.S. Constitution "do not apply" to Plaintiff's claims because "apportioning representatives *among* the States is a task undertaken by the federal government" and "[n]either SB 6 nor any other Texas law controls that process."[29] Here Defendants display a truly fundamental misunderstanding of applicable constitutional law.

The federal concession to the several states, that permits them to determine the "requisite qualifications" for voters, did not include a federal delegation to (or a reservation by) the states of discretion concerning the "enumeration" required by Article I, §2, or discretion to determine that a person resides at a location other than where he is an "inhabitant." While it is true that the several states assume no role at all in conducting the federal decennial census, the states nonetheless must adhere to the concept of "equal representation," which the Supreme Court in *Evenwel* referred to as the "theory of the constitution." According to the Supreme Court, that theory, in which Article I, §2, and §2 of the Fourteenth Amendment play a defining role, "underlies not just the method of allocating House seats to States; *it applies as well to the method of apportioning legislative seats within States*." *Id.*, 136 S. Ct. at 1128-1129 (italics added).

---

[29] *Defendants' First Motion to Dismiss*, 7 (italics in original).

**8) *The "Legal Fiction" Applied by Defendants Treats Prison Inmates Differently, in Relation to Non-Prison Inmates, for Purposes of Determining Equal and Fair Representation in the U.S. House of Representatives*.**

In his first amended complaint Plaintiff has alleged, as he did in his original complaint, that Defendants have violated the Equal Protection Clause of the Fourteenth Amendment because, in contrast to "other persons, including military personnel" who are treated by Defendants as inhabitants and permanent residents in accordance with the *animo manendi* doctrine, Defendants for representational purposes arbitrarily treat Plaintiff as an "inhabitant" and permanent resident of a place where he has never been an inhabitant. *See Plaintiff's First Amended Complaint*, pp. 13-14, ¶ 9. In this connection, Defendants contend Plaintiff has failed to state a claim on the merits because "Texas has not treated prisoners any differently from anyone else. Texas uses the official census data—for prisoners and non-prisoners alike—when redistricting."[30]

The Defendants do not deny that they knew on Census Day, April 1, 2020, that Plaintiff was an inhabitant and permanent resident of Grand Prairie, Texas. No do they deny, nor could they deny, that under their legal fiction, which blindly utilizes information they have received from the U.S. Census Bureau, they are knowingly treating Plaintiff as an "inhabitant," within the meaning of the U.S. Constitution, of a place where he has never been an "inhabitant." As full, active participants in this unconstitutional scheme, Defendants' cannot escape accountability for consciously doing so.

---

[30] *Defendants' First Motion to Dismiss*, 7.

13

9) *The "As Nearly as Practicable" and "Good Faith" Standards Established for Equal Representation in* <u>*Karcher v. Daggett*</u>, *462 U.S. 725, 730 (1983), Applies to Plaintiff's Claims, Not the "Rational Basis" and "Arbitrary and Capricious" Standards Asserted by Defendant*.

In his first amended complaint Plaintiff has alleged, as he did in his original complaint, that the "as nearly as practicable" and "good faith" standards established for Equal Representation in *Karcher v. Daggett*, 462 U.S. 725, 730 (1983), applies to Plaintiff's claims. *See Plaintiff's First Amended Complaint*, pp. 12-13, ¶ ¶ 7-8. The Defendants, after wholly ignoring the different levels of scrutiny that apply to "congressional" as opposed to "state legislative" redistricting, contend a "rational basis" standard applies to assess Plaintiff's claims.[31] The Defendants are in error.

When describing the measure for assaying whether "representational harm" has occurred in the related context of congressional redistricting and the "one person, one vote" theory, the Supreme Court has ruled Article I, §2 requires that, "as nearly as practical," states must ensure "one man's vote in a congressional election is to be worth as much as another's." *Wesberry v. Sanders*, 376 U.S. 1, 7-8 (1964). The Court has also ruled "the 'as nearly as practicable' standard" requires a state to make "a good-faith effort to achieve precise mathematical equality," and that "[u]nless population variances among congressional districts are shown to have resulted despite such effort, the State must justify each variance, no matter how small." *Karcher v. Daggett*, 462 U.S. 725, 730 (1983).

While the Supreme Court, upon such a "good faith" showing by a state, has previously given deference to legislative actions involving determinations of where persons reside for the purpose of drawing electoral districts, this deference has been limited to cases wherein available

---

[31] *Defendants' First Motion to Dismiss*, at 8-9.

population data leaves it objectively uncertain where individuals, or a class of individuals, reside. *E.g.*, *Burns v. Richardson*, 384 U.S. 73, 95 (1966)(implicitly finding legislative "good faith" justified population deviations between electoral districts, where "population figures" were "hard to obtain or extrapolate"); *see also*, *Mahan v.  Howell*, 410 U.S. 315, 331 (1973)(affirming interim redistricting plan where District Court was "[l]acking survey data sufficiently precise to permit the creation" of equipopulous electoral districts). In the present case, Defendants consciously knew, and were in actual possession of knowledge about, where Plaintiff was an "inhabitant" and permanent resident on Census Day, but they chose to ignore that information. Although Plaintiff's claims are distinguishable from the "one person, one vote" theory recognized in *Wesberry v. Sanders* (and as clarified in *Karcher v. Daggett*), Plaintiff contends the same "as nearly as practicable" and "good faith effort" requirements apply to the claims he has presented.

**10) *The Merit of Plaintiff's Challenge to Defendants' "Legal Fiction" Depends on Where Plaintiff as a Constitutional Matter must be Deemed an "Inhabitant" on "Census Day" (April 1, 2020)*.**

For reasons that are not altogether clear to Plaintiff, Defendants assert Plaintiff has "failed to state a claim" because, since Census Day, April 1, 2020, he has been involuntarily moved by Defendants to confinement in Fort Bend County, Texas.[32] If nothing else is clear, the only geographical fact relevant to Plaintiff's claims is where he was an "inhabitant," as defined by the U.S. Constitution, on Census Day; where Defendants chose to move Plaintiff thereafter, or where Defendants may choose to move him in the future, is irrelevant.

---

[32] *Defendants' First Motion to Dismiss*, at 2-3.

**11) *The Framers' Manifest "Intentions" When they Adopted the Federal Constitutional Provisions Invoked by Plaintiff are Relevant to the Merits of Plaintiff's Claims."***

Finally, Defendants argue that the Framers' "intentions" when they adopted Article I, §2, and §2 of the Fourteenth Amendment "are not the law."[33] In this regard, Defendants have essentially resorted to a form of constitutional "nullification."

As Plaintiff has previously discussed in the record, because the first Congress included a substantial number of members who had been delegates to the Constitutional Convention of 1787 (including James Madison), the Supreme Court has frequently resorted to legislative acts of the first Congress when seeking to divine the meaning of words or phrases that appear in the U.S. Constitution. Congressional decisions made during the first Congress thus provide "contemporaneous and weighty evidence" of the Constitution's meaning. *Bowsher v. Synar*, 478 U.S. 714, 723-724 (1986). This tool for interpretation has been applied by the Supreme Court to determine what was intended by the Framers when they required a decennial enumeration for the purpose of ensuring "representational equality" in the U.S. House of Representatives. *Franklin v. Massachusetts*, 505 U.S. 788, 803-804 (1992). While perhaps technically not "the law," the intentions of the Framers when adopting constitutional provisions is obviously highly relevant.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays the Defendants' First Motion to Dismiss will in all thing be denied.

---

[33] *Defendants' First Motion to Dismiss*, at 9.

Respectfully submitted,

*/s/ Richard Gladden*
Texas Bar No. 07991330
1204 W. University Dr. Suite 307
Denton, Texas 76201
940.323.9300 (voice)
940.539.0093 (fax)
richscot1@hotmail.com (email)
*Attorney-in-Charge for Plaintiff*

## CERTIFICATE OF COMPLIANCE

This is to certify that this objection is approximately 16 pages in length (exclusive of the caption, index, signature block, any certificate, and accompanying documents) and that it therefore complies with the 20-page limitation provided by Local Rule CV-7(d)(3) of the Rules of the U.S. District Court for the Western District of Texas.

*/s/ Richard Gladden*

## CERTIFICATE OF SERVICE

This is to certify that a true copy of this document was served on all Defendants using the electronic CM/ECF filing system, *via* their Attorney of Record, Patrick K. Sweeten, and by the same means on all Plaintiffs having cases consolidated with this case, on this 13th day of December, 2021.

*/s/Richard Gladden*