UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| LULAC, et. al., | )( |
| | )( |
| *Plaintiffs* | )( |
| | )( |
| Eddie Bernice Johnson, Sheila Jackson-Lee Alexander Green and Jasmine Crockett | )( |
| | )( |
| *Plaintiff-Intervenors* | )) |
| | )( |
| v. | )(  Case No.: EP-21-CV-00259-DCG-JES-JVB [Lead Case] |
| | )( |
| GREG ABBOTT, in his official capacity As Governor of Texas, et. al, | )( |
| | )( |
| *Defendants* | )( |

**MOTION TO INTERVENE BY EDDIE BERNICE JOHNSON, SHEILA JACKSON-LEE, ALEXANDER GREEN, AND JASMINE CROCKETT AS PLAINTIFF-INTERVENORS**

1.      Plaintiff LULAC and other lead Plaintiffs are organizations dedicated to protecting the interests and preserving the civil rights of Latinos in the United States and Texas. The case before the court challenges the redistricting of the United States House of Representatives' Texas Delegation, Texas State House of Representatives, Texas State Senate, and Texas State Board of Education of Texas.

2.      Eddie Bernice Johnson, Sheila Jackson-Lee and Alexander Green, Members of the United States Congress and individually (hereinafter African-American Congressional Intervenors), and Jasmine Crockett a voter who resides in Congressional District 30 in Dallas County (hereinafter Crockett Intervenor) seek intervention to protect their interests and that of all African-American voters in Texas and particularly in counties directly connected with their districts which include Dallas, Tarrant, Harris, Fort Bend, Galveston and Brazoria, and to ensure that the Texas redistricting process is fair and consistent with the Constitutional and statutory protections applying to African-American voters of Texas particularly in the aforementioned counties.

3.      The Congressional Intervenors and Crockett Intervenor request for intervention meets all the prerequisites for intervention as a matter of right: the request for intervention is timely; the rights at stake are directly implicated

1

by claims of the Plaintiffs; and, unless it is part of this action the African-American Congressional Intervenors cannot effectively protect their fundamental right to ensure a fair and unbiased redistricting process and outcome for African-American voters of Texas. Importantly, the applicant intervenors had counsel in attendance of the December 6, 2021 hearing and their interest in the litigation was noted in open court by counsel for the State of Texas. Applicants have no interest in filing for preliminary injunctive relief.

**FACTUAL BACKGROUND**

4.     Congresswoman Eddie Bernice Johnson is an African-American who resides in Dallas Texas and represents CD30. She has served in Congress since 1993. Congresswoman Johnson was the first African-American female Chairperson of a Congressional Subcommittee. She is a former Chair of the Congressional Black Caucus and currently a member of the House Transportation and Infrastructure Committee, the Aviation, Highways and Transit, and Water Resources and Environment Subcommittees. Congresswoman Johnson has worked zealously to represent her district where she ably represents African-American voters and a coalition of African-American and Latino voters. See Exhibit A, letter from Congressperson Johnson to Legislators, which is attached hereto and incorporated herein as if fully set forth.

5.     Congresswoman Sheila Jackson-Lee is in her fourteenth term in the United States Congress. She is a Member of the Judiciary and Homeland Security Committees and is the founder and co-chair of the Congressional Children's Caucus. She has been a true advocate for immigration reform during her tenure in Congress and has worked zealously to represent her district, CD 18, where she ably represents African-American voters and a coalition of African-American and Latino voters. See Exhibit B, joint letter from Congresspersons Jackson-Lee and Green to Legislators which is incorporated herein as if fully set forth.

6.     Congressman Alexander Green is in his ninth term in Congress. He is a member of the Financial Services and Homeland Security Committees. He is the Chair of the Financial Services Sub-Committee on Oversight and Investigations as well as the Chair of the Texas Democratic Congressional Delegation. As a former elected judge of a Harris County small claims justice court as well as a former president of the Houston Branch NAACP, he judiciously and zealously represents African American voters as well as a coalition of African American, Latino, and Asian American voters in CD 9. See Exhibit B, joint letter from Congresspersons Jackson-Lee and Green to Legislators which is incorporated herein as if fully set forth.

7. Representative Crockett is a voter who resides in Congressional District 30 in both the current plan and the adopted plan.  She is a freshman member of the Texas House of Representatives who lives in Dallas and who tendered proposed changes to CD30 that would have permitted it to continue as a 50 percent African-American Citizen Voting Age population district but this was voted down by the Texas House of Representatives.  See Exhibit C, map proposed by Senator Crockett in CD2139 with accompanying citizenship data, which is attached hereto and incorporated for all purposes as if fully set forth herein.  She is a constituent of Congresswoman Johnson.

8. Each of these Congresspersons, represents an African-American opportunity district where each receives overwhelming support from African-American and Latino voters. African-American and Latino groups that have broad community support generally provide exceptionally high marks to each of these Congresspersons on issues of the utmost importance to these communities. The voters' needs in CD 30, 18 and 9 are reflected in the work, efforts, and votes of the African-American Congressional Intervenors.

9. All three Congresspersons were part of the last round of redistricting and were prevailing parties.  The State of Texas is a political subdivision covered under the provisions of the Voting Rights Act, 42 U.S.C. §§ 1973–1973aa-6, and responsible for the actions of its officials with regard to state-wide redistricting.

10. Defendant, Greg Abbott is the duly elected and acting Governor of the State of Texas. Under Article IV, Section 1, of the Texas Constitution, he is the chief executive officer of the Defendant State of Texas. He is sued in his official capacity.

11. Defendant, Dan Patrick is the duly elected and acting Lieutenant Governor of Texas. Under Article IV, Section 16, of the Texas Constitution, he is the President of the Texas Senate. He is sued in his official capacity.

12. Defendant, Dade Phelan is the duly elected and acting Speaker of the Texas House of Representatives and is the presiding officer over the Texas House of Representatives. He is sued in his official capacity.

13. Defendant, John B. Scott Hope is the duly appointed and acting Secretary of State of Texas. He is sued in his official capacity.

**Procedural Posture**

14. This case has only recently been consolidated and just last week a case filed by the United States was consolidated.  The original was filed by Plaintiff LULAC in October and joined with other cases that were filed later

in October or in November. The Court has asked for the parties to consult on a proposed scheduling order and report back to the court by the 15th of December.

15.    Courts have regularly found over time that redistricting plans in Texas have discriminated against African-American voters. *See White v. Register*, 412 U.S. 755, 766-67 (1973) (affirming findings by the district court that African-American voters in Dallas County had been "'effectively excluded from participation in the Democratic primary selection process'") (quoting *Graves v. Barnes*, 343 F. Supp. 704, 726 (W.D. Tex., 1972)); *Rollins v. Fort Bend Indep. Sch. Dist.*, 89 F.3d 1205, 1214 (5th Cir. 1996) ("The parties cannot and do not dispute that FBISD's history is blemished by past racial discrimination."). Though Texas has had a sufficient African-American population for many years, it was not until the 1970's that it had a member who represented an African-American community that was able to affect its choice through voting in the 18th Congressional District. African-Americans were able to gain representation in Congressional District 30 after litigation against a Democratic-controlled state and in Congressional District 9 in the Delay round of redistricting when the government was controlled by Republicans. It was necessary for litigation to take place–for African-Americans to achieve representation in Congress, and it is clear that all of the representation has taken place since the passage of the Voting Rights Act in 1965. Importantly, history has shown that the redistricting process can be key to maintaining African-American representation. If permitted to intervene, the African-American Congresspersons will demonstrate that the current redistricting plans for the United States Congress are not fair and in fact will dilute and diminish the impact of African-American voters on election outcomes. CD 30, 18, and 9 are all drawn in a manner as to be unfair to the African-American community such that the impact of African-American voters has been diminished as well as those ineffective and protected coalitions with the African-American community. Each of the Congresspersons who represents their district and Intervenor Crockett are all in unique positions and in an effective position to provide unique and persuasive information to the decision-making panel and their input is essential to ensure a fair and unbiased redistricting for the voters in the affected counties and CDs 9, 18, and 30.

**ARGUMENT**

**I.      Intervention Is Proper as a Matter of Right**

4

16. The African-American Congressional Intervenors and the Crockett Intervenor who file this Motion to Intervene request intervention as a matter of right under Federal Rules of Civil Procedure 24(a). Intervention as of right should be granted when the following four requirements are met:

(1) the motion to intervene is timely; (2) the potential intervener asserts an interest that is related to the property or transaction that forms the basis of the controversy in the case into which she seeks to intervene; (3) the disposition of that case may impair or impede the potential intervener's ability to protect her interest; and (4) the existing parties do not adequately represent the potential intervenor's interest. *Doe #1 v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001) (citations omitted); and see also *LULAC v. City of Boerne*, 659 F.3d 421 (5th Cir. 2011 (holding that a voter had a right to intervene in a redistricting settlement proceeding).

17. Intervention should be liberally granted as "'[f]federal courts should allow intervention where no one would be hurt and the greater justice could be attained.'" *Id.* at 375 (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)). Thus, "intervention of right must be measured by a practical rather than technical yardstick." *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996).

**A.     The Intervention is Timely**

18. African-American Congressional Intervenors and Intervenor Crockett acted swiftly and with all practicable speed upon learning that the actions were consolidated. Also, on information and belief no substantive hearings have been held and discovery has not commenced.

19. Timeliness is a flexible requirement that differs from case to case. *See McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970). In addition, the Fifth Circuit has determined four factors that address the timeliness of a motion to intervene:

(I)     how long the potential intervener knew or reasonably should have known of her stake in the case into which she seeks to intervene; (2) the prejudice, if any, the existing parties may suffer because the potential intervener failed to intervene when she knew or reasonably should have known of her stake in that case; (3) the prejudice, if any, the potential intervener may suffer if the court does not let her intervene; and (4) any unusual circumstances that weigh in favor of or against a finding of timeliness. *Doe #1*, 256 F.3d at 376.

20. As this motion to intervene has been filed only a short time after the consolidation the court should grant the motion to intervene. As noted in yesterday's hearing, there has been no discovery as yet and the preliminary injunction hearing that has been set is only for the Senate map which is not impacted by this desired intervention.

**1. The African-American Congressional Intervenors Prepared and Filed Its Intervention Motion Well Before Any Substantive Consideration by the Court or Significant Discovery has Been Undertaken.**

5

21. Upon receiving notice of the action, the African-American Congressional Intervenors initiated steps to review the pleadings and confer with the attorneys for some of the Plaintiff groups, Under these facts and the facts of the case, the African-American Congressional Intervenors' motion to intervene is timely.

### 2. Intervention Will Not Prejudice the Plaintiffs

22. Plaintiffs will not suffer any prejudice as a result of the African-American Congressional Intervenors' request for intervention. The lawsuit has only been recently filed. No discovery has been initiated, and no substantive hearings have been held, though the prisoner suit has been dismissed. The case remains near its inception.

### 3. The African-American Congressional Intervenors and Their Constituents and Intervenor Crockett Will Each Suffer Significant Prejudice if Intervention is Denied

23. The African-American Congressional Intervenors and many of their constituents will suffer substantial and significant harm if intervention is not granted. The allegations in Plaintiff's complaint directly implicate the rights of African-American voters. If the present redistricting plan put forth by the Texas Legislature is implemented, the voting power of African-Americans in Texas could be significantly diluted.  Also, the African-American and other minority voters in CD30, 18 and 9, and in the Harris County and DFW Area counties, would see retrogression of their voting strength. The impact of the redistricting plan is vast. Although the African-American Congressional Intervenors acknowledge the good faith of Plaintiffs, the African-American Congressional Intervenors represent a largely different and distinct group of voters with some issues unique to those groups and areas. Many of the interests of many of the constituents of the African-American Congressional Intervenors and many of their constituents are at risk of loss of their interests. This has a particularly harmful impact on the African-American voters in those districts and other protected minorities in those areas who are joined in a coalition with them.

### 4. No Unusual Circumstances Exist That Would Militate Against Intervention. In fact, the African-American Congressional Intervenors are unaware of any circumstances that would operate against their intervention.

24. Neither the African-American Congresspersons or Intervenor Crockett are unaware of any circumstances that would operate against their intervention.

### B. The African-American Congressional Intervenors and Representative Crockett Have Substantial and Legally Protected Interests in the Case That It Cannot Protect Without Intervention and Is Inadequately Protected by the Named Plaintiffs.

25. The African-American Congressional Intervenors are African-American elected officials and voters who have a significant and legally protected interests that are implicated in the present action. The Voting Right Act was passed primarily to prohibit discrimination against African-Americans in voting. 42 U.S.C. §§ 1973 et seq. Courts have historically recognized, and continue to recognize, that redistricting schemes have time and time again been drawn so as to inhibit and dilute the voting strength of African Americans. *See White v. Register*, 412 U.S. 755 (1973); *LULAC v. N. E. Indep. Sch. Dist.*, 903 F. Supp. 1071 (W.D. Tex. 1995). The history of litigation surrounding redistricting plans in Texas have shown that the State of Texas has violated Section 2 of the Federal Voting Rights Act and the Fourteenth Amendment to the US Constitution. *See e.g., LULAC v. Perry*, 548 U.S. 399 (2006); *White v. Register*, 412 U.S. 755 (1973); *Nixon v. Herndon*, 273 U.S. 536 (1927). The Voting Rights Act seeks to ensure realistic possibilities of the voices of African-American voters being heard, and those protected groups working in their areas in coalition with them, and each of the African-American Congressional Intervenors has effectively represented each of those communities and acted to ensure that their voices were heard. Their rights and those of some of their constituents can only be effectively protected if the African-American Congressional Intervenors are granted intervention.

26. Although the African-American Congressional Intervenors acknowledge the good faith of Plaintiffs, the African-American Congressional Intervenors represent a largely different and distinct group of voters with some issues unique to those groups and areas. Many of the interests of many of the constituents of the African-American Congressional Intervenors and many of their constituents are at risk of loss of their interests. This has a particularly harmful impact on the African-American voters in those districts and other protected minorities in those areas who are joined in a coalition with them. Intervention is essential to protect the interests of the African-American Congressional Intervenors, many of their constituents and those protected groups working in coalition with them. The current Congressional Map was drawn in a manner to deny the creation of new Latino or minority coalition districts in the Harris County/Fort Bend and Dallas/Fort Worth Metroplex areas, which are the areas of the state where the African-American Congresspersons districts are located. To implement its plan of vote dilution and racial gerrymandering, the adopted map strategically places minority voters into protected districts where they are not needed or into districts where white voters will dominate or control. Several parties seek the creation of new

7

opportunity districts and the African-American Congresspersons and Representative Crockett agree that such districts should be created but are cognizant of the fact that you can do so and respect the status and character of their districts and other minority opportunity districts in those areas. They further believe that there must be relief to the racial gerrymander. This is just one area of clarity where the unique status of these applicant intervenors cannot be effectively argued or represented by others. A true and correct copy of a proposed Complaint is attached as Exhibit D.

### II. Alternatively, Texas African-American Congressional Intervenors and Intervenor Crockett Should Be Allowed to Intervene Permissively Pursuant to Fed. R. Civ. P. 24(b).

27.     Permissive intervention is a matter of discretion for the court and is appropriate when the intervention is timely, the intervenor's "claim or defense and the main action have a question of law or fact in common" and granting the intervention will not unduly delay or prejudice the original parties in the case. Fed. R. Civ. P. 24(b)(2). As previously discussed, the Texas African-American Congressional Intervenors' motion for intervention is timely. There are common questions of law and fact between the claims of Plaintiffs and Texas African-American Congressional Intervenors and Intervenor Crockett. These include whether the redistricting plan passed by the Texas Legislature violates Section 2 of the Voting Rights Act or the United States Constitution as to Congressional Districts 9, 18, and 30 and the areas of the map in which they are part of, and also overall in that it fails to provide for fair and effective representation of minority voters and those protected groups acting in coalition with them. The current plan will undermine the African-American/Latino coalition in many areas around the State and it puts in jeopardy the continued and proper representation of the African-American community. The effectiveness of the minority community's representation is minimized or diminished by the proposed Congressional Plan which seeks to optimize white voter influence. The proposed plan enhances the rights of white voters in both parties while minimizing or diminishing the rights of minority voters. Thus, as an alternative ground, allowing the Texas African-American Congressional Intervenors and Intervenor Crockett to intervene permissively is appropriate.

### CONCLUSION

28.     Based on the aforementioned reasons, intervention should be granted as a matter of right, or, in the alternative, on a permissive basis.

Respectfully Submitted,