IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.* | § § § | |
| *Plaintiffs,* | § § | |
| V. | § | Case No. 3:21-cv-00259 [Lead Case] |
| GREG ABBOTT, *et al.*, | § § § | |
| *Defendants.* | § § | |
| ROY CHARLES BROOKS, *et al.*, | § § | |
| *Plaintiffs,* | § § | |
| V. | § § | Case No. 1:21-cv-00991 [Consolidated Case] |
| GREG ABBOTT, *et al.*, | § § § | |
| *Defendants.* | § § | |

STATE DEFENDANTS' OBJECTIONS
TO THE BROOKS PLAINTIFFS' PRELIMINARY-INJUNCTION EXHIBITS

The State Defendants object to the exhibits offered by the Brooks Plaintiffs in support of their preliminary-injunction motion as follows:

EXHIBIT 1: DECLARATION OF KEL SELIGER

**Paragraph 7–8: Speculation, relevance, falsity:** Seliger misstates what the 2013 letter from then-Attorney General Abbott says. Further, that letter does not make it more likely that the Legislature drew SD10's lines with the intent to discriminate against voters based on race, with race as a predominating factor, or in a manner that has a disparate impact on certain voters. Seliger's statements about the reasons the redistricting committee approved the benchmark Senate map and what the committee members "all knew" are speculation for which he furnishes no basis.

**Paragraph 9: Vague; speculation.** Seliger does not define "racially polarized voting"—for instance, which races are polarized and in which elections. His statement about the knowledge of current and former Redistricting Committee members is speculation without foundation.

**Paragraph 10: Hearsay:** Seliger's statements about what Sen. Joan Huffman said are hearsay that does not come within an exception.

**Paragraph 12: Improper legal conclusion; lack of foundation; speculation.** Seliger's statement that SD10 violates the Voting Rights Act and the U.S. Constitution is a legal conclusion committed to the Court. Even if it could be proper testimony, Seliger is not tendered as an expert and has neither the expertise nor the education to render such an opinion, nor does he explain the basis for his opinion. In particular, he does not state a basis for his belief that SD10's boundaries were adopted with an intention to discriminate against voters on the basis of their race, as would be required for SD10 to violate the U.S. Constitution.

### EXHIBIT 2: DECLARATION OF BEVERLY POWELL

**Paragraphs 10, 12: Vague; improper opinion.** Powell does not describe which "minority populations" were "cleaved apart." Further, Powell is not tendered as an expert and offers no basis for her opinion that the unidentified "minority populations" constitute a single community of interest capable of being "cleaved apart."

**Paragraph 14: Vague; irrelevant.** Plaintiffs allege that Senator Joan Huffman knew of and deliberately drew district lines based on residents' race. Powell states that Huffman looked at certain maps containing racial data "for longer than less than a second." That could be any amount of time of one second or longer. Such a statement is too vague to tend to show that Huffman gathered information from the maps that would enable her to draw district lines based on race.

### EXHIBIT 3: DECLARATION OF GARRY JONES

**Paragraph 14: Vague; irrelevant.** Plaintiffs allege that Senator Joan Huffman knew of and deliberately drew district lines based on residents' race. Jones states that Huffman looked at certain maps containing racial data "for longer than less than a second." That could be any amount of time of one second or longer. Such a statement is too vague to tend to show that Huffman gathered information from the maps that would enable her to draw district lines based on race.

**Paragraphs 14–15: Vague; improper opinion.** Jones does not describe which "minority populations" were "cleaved apart." Further, Jones is not tendered as an expert and offers no basis for his opinion that the unidentified "minority populations" constitute a single community of interest capable of being "cleaved apart."

### EXHIBIT 3-E: SEPTEMBER 16, 2021, EMAIL FROM GARRY JONES

**Hearsay:** If offered to prove the truth of the matters asserted in it, the email is hearsay that does not fall within an exception.

**Improper opinion:** Jones is not tendered as an expert. If the email is offered to prove the truth of the matters asserted in it, his statement that SD10 "is unlawful intentional racial discrimination and will produce a discriminatory effect" is improper opinion testimony—that determination is the Court's to make, Jones does not have the training or expertise necessary to offer such an opinion, and he offers no basis for that opinion.

**EXHIBIT 3-G: SEPTEMBER 18, 2021, EMAIL TO ALL SENATORS REGARDING SD10**

**Hearsay:** If offered to prove the truth of the matters asserted in it, the email is hearsay that does not fall within an exception.

**EXHIBIT 3-J: AGENDA OF SEPTEMBER 24, 2021, REDISTRICTING COMMITTEE MEETING**

**Hearsay:** If offered to prove the truth of the matters asserted in them, the written testimonies are hearsay that does not fall within an exception.

**EXHIBIT 3-K: SEPTEMBER 16, 2021, LETTER FROM POWELL**

**Hearsay:** If offered to prove the truth of the matters asserted in them, the letter and its attachments are hearsay that does not fall within an exception.

**Improper opinion:** Powell is not tendered as an expert. If the email is offered to prove the truth of the matters asserted in it, her statements are improper opinion testimony—that determination is the Court's to make, Powell does not have the training or expertise necessary to offer such an opinion, and she offers no basis for that opinion.

**EXHIBITS 3-L AND 3-M: EMAILS TO HOUSE MEMBERS**

**Hearsay:** The contents of these emails are identical to those of Exhibit 3-G. As with that exhibit, if offered to prove the truth of the matters asserted in it, each email is hearsay that does not fall within an exception.

**EXHIBITS 4 AND 4-A: RICK SVATORA DECLARATION AND HANDWRITTEN NOTES**

Hearsay: The notes are hearsay that does not fall within an exception. In particular, they are not records of a regularly conducted activity. Svatora's statement that he takes notes during "important meetings" establishes that it is done at his discretion rather than regularly based on Svatora's subjective evaluation of the meeting's importance. Records come within the exception only if they are based on an objective, regular process rather than the declarant's state of mind.

**EXHIBIT 5: CHRIS TURNER DECLARATION**

**Paragraphs 5–9: Relevance; improper opinion testimony; lack of foundation.** Turner's statements regarding the Congressional redistricting map are irrelevant as that map is not at issue in this litigation. Turner's statements regarding what "ordinarily" happens to a bill and the lack of testimony on the Senate redistricting bill are not relevant because redistricting bills are not "ordinary" bills—particularly redistricting bills drawing district lines for the other chamber of the Legislature. In this case, it is deviations from what would normally happen to a Senate redistricting bill in the House that could establish deviations from normal procedure and substance. Further, the 2021 Legislative session is the first time he has served in the House while it considers redistricting bills; he offers no basis for his testimony on the usual practices employed when the Legislature in general, or the House in particular, considers redistricting bills.

**Paragraphs 7–8, 10–11: Relevance; improper opinion testimony.** Turner is not tendered as an expert in redistricting or redistricting law, and there is no basis for his opinion on the importance of expert testimony to redistricting committees in formulating redistricting plans. His characterization of the former Section 5 preclearance process as a chance for "the Department of Justice or the federal courts to advise whether [Texas's] redistricting maps were lawful" is a misstatement of the law. His statements regarding "cracking," crossover districts, and minority voters' preferred candidates are not supported by a proper foundation, and he does not have the experience or education to offer such opinions.

**Paragraphs 7, 9: Hearsay.** Turner's statements about what other committee members requested are hearsay that does not fall within an exception, as is his statement about Rep. Todd Hunter's response to such a request.

### EXHIBITS 6 AND 6-A–C: MARK GRABER DECLARATION AND 2017 EMAILS

**Relevance:** Anna Mackin's representation of the State of Texas in 2017, including her sending emails regarding exhibits in that trial, does not make it more likely that SD10's borders were drawn with the intent to discriminate against certain voters, with a predominant focus on the race, or in a way that causes a disparate impact on certain voters.

### EXHIBIT 6-D: APRIL 18, 2013, LETTER FROM ATTORNEY GENERAL ABBOTT TO REDISTRICTING CHAIRMEN

**Relevance:** A letter written in 2013 regarding boundaries adopted in 2011 does not make it more likely that SD10's boundaries were adopted in 2021 with the intent to discriminate against voters due to their race, with race as a predominant consideration, or in a way that has a disparate impact based on race.

### EXHIBITS 6-E–H: 2013 SENATE PROCEEDINGS

**Relevance:** Senate proceedings in 2013 regarding changes to boundaries adopted in 2011 do not make it more likely that SD10's boundaries were adopted in 2021 with the intent to discriminate against voters due to their race, with race as a predominant consideration, or in a way that has a disparate impact based on race.

### EXHIBIT 7: DECLARATION OF MATT BARRETO

**Authenticity:** The declaration is not signed and therefore lacks necessary indicia of authenticity.

**Reliability; analytical gap:** The declaration lacks sufficient indicia of reliability to be admitted as expert testimony. *See Black v. Food Lion, Inc.*, 171 F.3d 308, 312 (5th Cir. 1999). Further, there is an unexplained analytical gap between the data and Barreto's conclusion. Though Plaintiffs' allegation is that "recent general *and primary elections* illustrate" cohesive minority voting, Compl. ¶ 80 (emphasis added), Barreto's purported analysis includes no data from primary elections. As the State Defendants' opposition demonstrates, Alford Initial Expert Report, ¶¶ 4.1-4.2, these contests frequently pit a candidate preferred by one discrete racial or ethnic group against another

candidate from another such group. Barreto's failure to address any of this data, which undermines his ultimate conclusion, demonstrates that his method and his conclusions are not reliable and that there is an unbridgeable analytical gap between his data and his conclusion. His declaration should therefore be struck.

**Reliability; analytical gap:** Barreto discusses the growth of the Asian American population in SD10. *E.g.*, at 1–4, 6–9. However, he identifies no facts concerning Asian-American voting patterns and does not explain how they affect his analysis of racially polarized voting. In fact, several of his tables show calculations of the specific voting percentages of African Americans and Latinos, but none include Asian Americans. If Barreto includes Asian Americans in his analysis, he neither explains how they factor into that analysis or the effect that factor has. If he does not include Asian Americans in his analysis, he omits without explanation a group that is, in Plaintiffs' own theory of the case, part of the "minority coalition" and whose contributions to (or diminutions of) that coalition must be considered to determine whether racially polarized voting among Anglos and "minorities" exists in SD10. Either way, Barreto's declaration demonstrates that his method and conclusions are unreliable and that there is an unbridgeable analytical gap between his data and his conclusion. His declaration should be struck.

## CONCLUSION

Defendants respectfully request that the Court sustain their objections, strike the indicated exhibits, and exclude those exhibits from consideration of the Brooks Plaintiffs' request for a preliminary injunction.

Date: December 20, 2021                     Respectfully submitted.

KEN PAXTON                                  /s/ Patrick K. Sweeten
Attorney General of Texas                   PATRICK K. SWEETEN
                                            Deputy Attorney General for Special Litigation
BRENT WEBSTER                               Tex. State Bar No. 00798537
First Assistant Attorney General
                                            WILLIAM T. THOMPSON
                                            Deputy Chief, Special Litigation Unit
                                            Tex. State Bar No. 24088531

                                            OFFICE OF THE ATTORNEY GENERAL
                                            P.O. Box 12548 (MC-009)
                                            Austin, Texas 78711-2548
                                            Tel.: (512) 463-2100
                                            Fax: (512) 457-4410
                                            patrick.sweeten@oag.texas.gov
                                            will.thompson@oag.texas.gov

                                            **COUNSEL FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on December 20, 2021, and that all counsel of record were served by CM/ECF.

                                            /s/ Patrick K. Sweeten
                                            PATRICK K. SWEETEN