# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, <br>     *Plaintiffs*, <br><br> v. <br><br> GREG ABBOTT, *in his official capacity as Governor of the State of Texas*, and JOHN SCOTT, *in his official capacity as Secretary of State of Texas*, <br>     *Defendants*. | § § § § § § § § § § § § | Case No. 3:21-cv-259-DCG-JES-JVB <br> [Lead Case] |
| DAMON JAMES WILSON, <br>     *Plaintiff*, <br><br> v. <br><br> THE STATE OF TEXAS, *et al.*, <br>     *Defendants*. | § § § § § § § § § | Case No. 1:21-cv-943-RP-JES-JVB <br> [Consolidated Case] |

## DEFENDANTS' MOTION TO STRIKE AND ALTERNATIVE MOTION TO DISMISS WILSON'S AMENDED COMPLAINT [ECF 86]

i

**TABLE OF CONTENTS**

Table of Contents ........................................................................................................................... ii

Introduction .................................................................................................................................... 1

Background .................................................................................................................................... 2

Argument ....................................................................................................................................... 3

    I.   Plaintiff's Amended Complaint Should Be Struck From The Record ................................... 3

    II.  Wilson Does Not Have Standing ........................................................................................ 4

    III. Wilson Fails to State a Claim for Relief .............................................................................. 9

    IV. Wilson Has Not Named a Proper Defendant .................................................................... 12

        A.  Wilson Cannot Sue the Lieutenant Governor or the Speaker ....................................... 12

        B.  Wilson Cannot Sue the Governor or the Secretary ....................................................... 14

Conclusion ................................................................................................................................... 15

## INTRODUCTION

This Court has already dismissed this action. *See* ECF 63. Instead of requesting that the Court issue a final order of dismissal, however, plaintiff—without leave—filed an Amended Complaint. *See* ECF 86. Plaintiff has no basis or right under applicable federal rules, binding precedent, or the Local Rules of the Western District to amend without leave under the circumstances. In fact, there is no basis to amend at all because the underlying problems that justified dismissal have not changed. Thus, the Court does not need to reach the reargued merits of the motion to dismiss below and should strike plaintiff's Amended Complaint. If, however, the Court reaches the merits of the motion to dismiss, it should again dismiss plaintiff's action.

Courts have rejected prison-malapportionment claims like this one in Texas, *see Perez v. Texas*, No. 5:11-cv-360, 2011 WL 9160142, at *13 (W.D. Tex. Sept. 2, 2011), and across the country, *see, e.g.*, *Borough of Bethel Park v. Stans*, 449 F.2d 575, 582 (3d Cir. 1971). When deciding whether and how to count prisoners for purposes of apportionment, States have significant leeway. *See Burns v. Richardson*, 384 U.S. 73, 92 (1966). Wilson has not plausibly alleged a constitutional violation.

The only material difference between Wilson's case and cases rejecting similar claims is that Wilson has failed to plausibly allege federal jurisdiction. Wilson is not, and does not claim to be, eligible to vote. He does not face a vote-dilution injury that is typically used to support malapportionment claims. Instead, he asserts that his congressman will be less responsive to his concerns, but that assertion is pure speculation, untethered to any factual allegations in the complaint.

Nor has Wilson sued the right defendants. Wilson is primarily concerned with the conduct of federal officials, including a future congressman, but the State defendants sued here have no control over federal officials.

The putative State Defendants Greg Abbott, John Scott, and the State of Texas (State Defendants) respectfully request that the Court strike plaintiff's Amended Complaint (ECF 86), clarify

1

that this action has been dismissed, and issue a final order of dismissal. Because plaintiff did not file a motion for leave to amend, there is no further action required or warranted at this time on plaintiff's last-filed pleading. However, in an abundance of caution, the State Defendants urge that the Court again dismiss plaintiff's action because plaintiff's amended complaint fails to establish subject-matter jurisdiction and fails to state a claim. *See* Fed. R. Civ. P. 12(b)(1), (6).

## BACKGROUND

This is a redistricting case, but Plaintiffs' claims have nothing to do with voting. Plaintiff Damon James Wilson complains about (1) the federal Census Bureau counting him as a resident of a state prison, (2) the Texas Legislature using that information when redistricting, and (3) a federal congressman being less responsive to Wilson's hypothetical future communications.

Wilson is not eligible to vote (and he does not allege otherwise) because he has "been finally convicted of a felony" and has not "fully discharged [his] sentence" or "been pardoned or otherwise released from the resulting disability to vote." Tex. Elec. Code § 11.002(a)(4). Wilson's conviction for family-violence assault, enhanced due to his prior convictions, qualifies as a felony. *See* Tex. Penal Code § 22.01(b)(2); *Wilson v. State*, No. 05-13-00874-CR, 2014 WL 5338510, at *1 (Tex. App.—Dallas Oct. 21, 2014, no pet.); ECF 44-2.[1] TDCJ projects that he will be released in February of 2031. *See* ECF 6 at ¶ 6, p. 31. Wilson does not allege that he will ever vote in an election affected by this round of redistricting.

Wilson claims to reside in Grand Prairie, Texas, but on April 1, 2020—the day relevant to the federal census—Wilson was confined in a Texas prison: the Clements Unit in Amarillo. *See* ECF 86 at ¶¶ 1, 4, p. 30. In keeping with a Department of Commerce regulation and its historical practice, the

---

[1] *See Inmate Information Details*, Texas Department of Criminal Justice (last visited November 9, 2021), https://inmate.tdcj.texas.gov/InmateSearch/viewDetail.action?sid=05608188 (Ex. A); Texas v. Wilson, Judgment of Conviction, (291st Tex. Dist. Ct. June 6, 2013) (Ex. B), available at https://obpublicaccess.dallascounty.org/PublicAccessEP1/CriminalCourts/ (search by Case Number "F1330651").

2

Census Bureau counted Wilson as a resident of Amarillo. *See id.* at 5; Final 2020 Census Residence Criteria and Residence Situations, 83 Fed. Reg. 5525 (Feb. 8, 2018) (ECF 44-3). According to this regulation, prisoners like Wilson are treated as residing where they are incarcerated. *See id.* at 5527–28.

When apportioning Texas's congressional seats among districts, the Texas Legislature uses the Census Bureau's data. Wilson characterizes this use of census data as "assign[ing]" him "the status of a person residing in, and an 'inhabitant' of, Texas Congressional District 13," which "encompasses the location where Plaintiff was confined" but "does not encompass the location of his permanent domicile." ECF 86 at ¶ 5. In reality, however, the statute creating the congressional map does not "assign[]" anyone any "status" or "resid[ence]." It lists the geographic areas that make up each congressional district.[2] It does not say anything about who should be considered a resident of which district.

Even if SB 6 could be interpreted to say something about Wilson's residence when the census was conducted, it would not say anything about Wilson's residence now. Wilson has moved to a different prison. He is currently confined in the Jester III Unit in Richmond. *See* ECF 86 at ¶ 1.

**ARGUMENT**

**I.     Plaintiff's Amended Complaint Should Be Struck From The Record**

The rule in the Fifth Circuit is that an amended complaint is not permitted where the Court has dismissed an action. *Whitaker v. City of Houston, Tex.*, 963 F.2d 831, 835 (5th Cir. 1992). This Court has already dismissed this action because that is the clear implication of dismissing the case based upon the irreparable defect in plaintiff's standing: as an incarcerated felon who cannot vote, plaintiff lacks a basis to complain about voting. *See* ECF 63; *see also Whitaker*, 963 F.2d at 835 ("A district court's order dismissing a complaint constitutes a dismissal of the action when it states or clearly indicates

---

[2] *See generally* Senate Bill 6, 87th Leg. 3d C.S., art. II (Oct. 18, 2021), https://capitol.texas.gov/tlodocs/873/billtext/pdf/SB00006F.pdf.

3

that no amendment is possible . . . or when circumstances otherwise indicate that no amendment is possible . . . [.]"). Because this action has been dismissed, plaintiff's amended complaint is, at best, redundant and should be stricken from the record. *See* Fed. R. Civ. P. 12(f) (providing courts with discretion to strike "any redundant, immaterial, impertinent, or scandalous matter.").

Alternatively, if the Court did not intend to dismiss plaintiff's action, but rather his complaint, plaintiff's amended complaint still should be stricken as immaterial. *See* Fed. R. Civ. P. 12(f). Plaintiff has not sought leave from this Court to amend, contrary to the Federal Rules of Civil Procedure, precedent from the Fifth Circuit, and this Court's Local Rules, this. *See* Fed. R. Civ. P. 15; Local Rules of the Western Dist. of Tex. Rule CV-15(b); *see also Whitaker v. City of Houston, Tex.*, 963 F.2d 831, 835 (5th Cir. 1992) (explaining that where a complaint has been ordered dismissed the plaintiff must seek leave of court to file an amended complaint). The purpose of the exercise is to permit the Court to examine the amendments before refiling to evaluate whether leave to amend should be granted in the first place. Because no motion for leave to amend has been filed or is pending, plaintiff's Amended Complaint is immaterial and impertinent to any motion or issue pending before this Court.[3] *See* Fed. R. Civ. P. 12(f).

## II.    Wilson Does Not Have Standing[4]

"[S]tanding is perhaps the most important of the jurisdictional doctrines." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (quotation omitted). At the pleading stage, plaintiffs must

---

[3] Because this response is not addressed to a motion for leave to amend, this response is not drafted to address all arguments against such a hypothetical motion. However, as noted in the renewed motion to dismiss, the defects that resulted in dismissal of plaintiff's Original Complaint are not fixable, which is to say amending is futile. Thus, allowing the amended complaint is improper in any event. *See Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000) (explaining that granting to leave to amend is futile when the amended complaint would fail to state a claim upon which relief could be granted).

[4] Because plaintiff's action has been dismissed and there is no pending motion for leave to amend, there is no need to reach the question of whether plaintiff's amended complaint established subject matter jurisdiction or states a claim for relief. However, in an abundance of caution, the State Defendants assert that plaintiff's amended complaint suffers the same jurisdictional and pleading defects that warranted dismissal, and urge the Court, if it deems the exercise necessary, to again dismiss plaintiff's action and issue a final order of dismissal concerning the same.

4

"clearly . . . allege facts demonstrating each element" of standing. *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016) (quotation omitted). A plaintiff must show: (1) an actual or imminent, concrete and particularized "injury-in-fact"; (2) that is fairly traceable to the challenged action of the defendant; and (3) that is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Wilson's main argument is that SB 6 "essentially operates as a 'legal fiction' that Plaintiff permanently resides at a location other than where he is an 'inhabitant' and has established and maintained his domicile, has adversely affected (and will adversely affect) the responsivity of the U.S. Representative who would otherwise serve as Plaintiff's duly elected Member of Congress." *Id.* This is wrong for at least three reasons.

First, SB 6 does not create a "legal fiction" about Wilson's residence. As explained above, SB 6 does not say anything about anyone's residence. SB 6 also does not tell federal congressmen to whom they should be responsive. (Nor could it.) The implementation of SB 6 does not require any state or local official to treat Wilson as a resident of Amarillo, and Wilson does not allege otherwise.

Second, Wilson's amended complaint includes a reference to a pamphlet about communicating with Congress, ECF 86 at ¶¶ 12-14, but that reference only reinforces the speculative nature of plaintiff's claims. Generalized guidance about reaching out to Congress does not make concrete the speculation that an unknown future congressman for CD 30 will be less responsive than he would be if the Legislature had redistricted differently.[5] Plaintiff claims in conclusory fashion that injurious indifference to him of an unknown future Congressman for CD30 is a predictable effect of the census count. ECF 86 at ¶ 13. But Wilson alleges nothing predictable here.

---

[5] The incumbent, Representative Eddie Bernice Johnson, has announced that she is not running for reelection. *See Democrat Eddie Bernice Johnson Ending Decades in Congress*, POLITICO (Nov. 20, 2021), https://www.politico.com/news/2021/11/20/eddie-bernice-johnson-democrat-no-reelection-523126 (noting that she "plans to keep a promise . . . that her current term would be her last").

In *Dept. of Commerce v. New York*, the Supreme Court examined a challenge to the decision of the Secretary of Commerce to reinstate in the decennial census a question concerning citizenship status, which included claims under the U.S. Constitution, the Census Act, and the federal Administrative Procedures Act.  139 S.Ct. 2551, 2563 (2019). The Supreme Court held that the state plaintiffs had Article III standing because they demonstrated "that third parties will likely react in predictable ways to the citizenship question[,]" *id.* at 2566; namely, that "noncitizen households [would] respond [ ] . . . at lower rates than other groups, which in turn would cause them to be undercounted[,]" and that this undercounting would, in turn, injure the state and local governments by "diminishment of political representation, loss of federal funds, degradation of census data, and diversion of resources," *id.* at 2565. By contrast, plaintiff speculates that an unknown Congressman from CD 30 may, in the future, not be as receptive to him as plaintiff thinks the Congressman should be. In fact, like the original complaint the amended complaint does not include any allegations about how responsive that future congressman will be to his constituents in general or to non-voting felons like Wilson in particular. Nor does it suggest that Wilson has any plans to try to secure the congressman's attention in the future. As a result, there are also no allegations addressing whether such an attempt would succeed and, if not, whether any failure would be attributable to SB 6 (as opposed to the judicially noticeable fact that congressmen are busy and cannot respond to each concern expressed by each constituent). *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009) (noting an "obvious alternative explanation" that rendered an allegation implausible).

Third, even if SB 6 had some marginal effect on a future congressman's responsiveness, it would not constitute a cognizable injury in fact. "[T]he injury-in-fact requirement requires a plaintiff to allege an injury that is both concrete *and* particularized." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 334 (2016) (quotation marks omitted) Wilson's interest in a congressman's responsiveness is not "*concrete*" because it is not "practical and developed, rather than 'intellectual' and 'abstract.'" *Salermo v. Hughes*

6

*Watters & Askanase LLP*, 516 F. Supp. 3d 696, 704 (S.D. Tex. 2021) (quoting *FEC v. Akins*, 524 U.S. 11, 20 (1998)). Having a responsive congressman is, at best, a procedural interest that might help a plaintiff protect some underlying substantive interest (*e.g.*, convincing a congressman to write a letter of recommendation to support admission to a service academy). *Cf. Lujan*, 504 U.S. at 573 n.8 (explaining that a plaintiff can "enforce procedural rights . . . so long as the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing"). But Wilson does not allege that any lack of responsiveness by a future congressman for CD 30 will affect his substantive interests. Even "procedural rights" do not confer "standing for persons who have no concrete interests affected." *Id.* at 572 n.7. To the extent Wilson complains about a future congressman's responsiveness independent of any "Plaintiff-specific" allegations about an "imminent" request for congressional assistance, Wilson raises "a generalized grievance" that federal courts cannot adjudicate. *Stringer v. Whitley*, 942 F.3d 715, 722 (5th Cir. 2019).

Further, even if Wilson had an underlying substantive interest, he has not alleged that that interest would be less protected by the congressman for CD 13 than the congressman for CD 30. He asserts only that the congressman for CD 30 will be less responsive to Wilson than he would be if the Texas Legislature redistricted differently, not that the congressman for CD 13 will be less responsive to Wilson than the congressman for CD 30 would be. *See* ECF 86 at ¶¶ 11.

Wilson also asserts, without explanation, that "application of the State of Texas' legal fiction, as described above, has adversely affected (and will adversely affect) the federal representational interests shared by Plaintiff with the local community in which he is an actual inhabitant." *Id.* This appears to be a recapitulation of Wilson's "responsiveness" argument, and it fails for the same reasons. This sentence does, however, concede that Wilson's supposed injury is "shared . . . with the local community." *Id.* Such a "collective political interest" or a "general interest common to all members of the public" is a nonjusticiable generalized grievance. *Gill v. Whitford*, 138 S. Ct. 1916, 1932 (2018);

7

*Ex parte Levitt*, 302 U.S. 633, 634 (1937) (per curiam).

Finally, the complaint mentions "'representational harm' to Plaintiff," ECF 1 at 8, but that adds nothing to Wilson's standing argument. The only Supreme Court majority opinion to use that term addressed racial gerrymandering: "Where a plaintiff resides in a racially gerrymandered district, . . . the plaintiff has been denied equal treatment because of the legislature's reliance on racial criteria, and therefore has standing to challenge the legislature's action. Voters in such districts may suffer the special representational harms racial classifications can cause in the voting context." *United States v. Hays*, 515 U.S. 737, 744–45 (1995) (citation omitted).

*Hays* does not help Wilson for at least two reasons. First, it was expressly limited to "the voting context," *id.* at 745, but Wilson is not a voter. This Court should, like the Ninth Circuit, recognize that "the unique justification for recognizing representational harm in the voting context does not apply" because "[t]his is not a voting rights case." *Carroll v. Nakatani*, 342 F.3d 934, 948 (9th Cir. 2003).

Second, *Hays* based standing on the denial of "equal treatment" on the basis of race. *Hays*, 515 U.S. at 745. As discussed below, the equal-treatment concern does not apply here because Wilson is not being treated differently based on race or any other suspect classification. This Court should, like the Eleventh Circuit, "decline to extend" *Hays* beyond cases in which "the government generally uses race to infringe on voters' rights." *Scott v. Taylor*, 470 F.3d 1014, 1018 n.7 (11th Cir. 2006) (per curiam). True, *Hays* referred to "representational harms" to underscore the potentially pernicious effects of discrimination, *id.*, but that did not make such harms an independent basis for standing. After all, the Supreme Court recognized that the occurrence of representational harms was speculative: They "may" occur or not. *Id.* That would not have been sufficient for standing because an injury in fact must be "imminent," meaning "*certainly impending.*" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

Although courts have decided (and rejected) similar prison-based malapportionment claims in the past, Defendants are aware of no case in which a non-voting prisoner had standing by himself to

8

challenge the apportionment of a State's electoral districts. *See, e.g., Perez*, 2011 WL 9160142, at *9 (standing for a voter); *Borough of Bethel Park v. Stans*, 319 F. Supp. 971, 972 (W.D. Pa. 1970), *aff'd*, 449 F.2d 575 (3d Cir. 1971) (plaintiffs included "voters").

### III.  Wilson Fails to State a Claim for Relief

Even if Wilson has standing, his claims would fail on the merits. Courts have repeatedly upheld treating prisoners as residents of their prisons. Wilson provides no persuasive reason to depart from that precedent.

As this Court explained ten years ago, "there is no federal requirement" that Texas "count . . . prisoners as residents of whatever county they lived in prior to incarceration." *Perez v. Texas*, No. 5:11-cv-360, 2011 WL 9160142, at *12 (W.D. Tex. Sept. 2, 2011). The three-judge panel could not find "any case where any court has concluded that such prison counts violate the mandates of the one person, one vote principle." *Id.* at 25.

On the contrary, multiple courts have rejected claims like Wilson's. *See Borough of Bethel Park v. Stans*, 449 F.2d 575, 582 (3d Cir. 1971) (upholding the Census Bureau's decision to count prisoners "as residents of the state where they are confined" and concluding that "the states will be able to draw their congressional districts in a manner which conforms with the requirements of the Constitution"); *Fletcher v. Lamone*, 831 F. Supp. 2d 887, 896 (D. Md. 2011) (explaining Maryland "is not constitutionally obligated" to adjust census data for prisoners' residences); *District of Columbia v. U.S. Dep't of Com.*, 789 F. Supp. 1179, 1188–90 (D.D.C. 1992) (upholding the Census Bureau's decision to treat D.C. prisoners at a facility in Virginia as residents of Virginia).

Wilson has not plausibly alleged a constitutional claim. First, Wilson argues that SB 6 "violates his constitutional right to 'equal representation' as guaranteed by Article I, §2 of the U.S. Constitution and §2 of the Fourteenth Amendment to the U.S. Constitution," ECF 86 at 11, but those provisions do not apply here. They govern how federal representatives "shall be apportioned among the several

9

states." U.S. Const. art. I, § 2; U.S. Const. amend. XIV, § 2. But apportioning representatives *among* the States is a task undertaken by the federal government. Neither SB 6 nor any other Texas law controls that process.

Second, Wilson argues that SB 6 "violates his constitutional right to Equal Protection of the Law under the Fourteenth Amendment." ECF 86 at ¶¶ 4, 11. He asserts that he is being treated "differently from others," *Id.* at 9, but he concedes that he is being treated just like other "inmates who are confined in correctional facilities," *id* at 5. And Texas has not treated prisoners any differently from anyone else. Texas uses the official census data—for prisoners and non-prisoners alike—when redistricting. *See id.* at 5-7.

In any event, Wilson does not allege that locating prisoners in the district of their incarceration implicates a protected or suspect class. Nor could he. Prisoners, as a group, do not constitute a suspect class. *Kaummerling v. Lappin*, 553 F.3d 669, 685 (D.C. Cir. 2008); *see Boivin v. Black*, 225 F.3d 36, 42 (1st Cir. 2000) (collecting cases). For this reason, the State's rule is subject to rational-basis review.

According to that standard, the State of Texas need only "'articulate acceptable reasons for the variations among the populations of the various legislative districts' for the purpose of the apportionment of the State legislature." *Borough of Bethel Park*, 449 F.2d at 579 (quoting *Swann v. Adams*, 385 U.S. 440, 443–44 (1967)). In other words, Wilson must demonstrate that the State "failed to apply the proper criterion in a reasonable manner or its application lacked a rational basis." *Id.*; *see also Kostick v. Nago*, 960 F. Supp. 2d 1074, 1091 (D. Haw. 2013) (applying rational basis to a reapportionment challenge); *Dye v. McKeithen*, 856 F. Supp. 303, 313 (M.D. La. 1994) (applying rational basis to a reapportionment challenge).

Wilson essentially complains that Texas relied on the default federal census data while redistricting. He suggests that Texas should have used "a 'Census Geocoder' computer program" to adjust the default data. ECF 1 at 6. But using the default data provided by the federal government is

simple and efficient. Those are rational bases, especially in light of Wilson's concession that Texas is acting consistent with its own past practice. *See id.* at 15. Nor is Texas the only State to conclude that treating prisoners as residents of their prisons is rational. "By far the majority of states use the population and residence data reported in the census, as is."[6]

Wilson further argues that the Constitution "condemn[s] state congressional redistricting plans that provide unequal representation in the U.S. House of Representatives unless departures from equal representation 'as nearly as practical' are shown to have resulted despite such a 'good faith effort' by a state." ECF 86 at 8. But Wilson does not support that sentence with plausible factual allegations. He does not even allege that he is or will be in an over-populated district. Wilson also fails to allege any effect on "representation" given that he is ineligible to vote.

The Constitution affords states "significant leeway in apportioning their" electoral districts. *Evenwel v. Abbott*, 136 S. Ct. 1120, 1133 (2016) (Thomas, J., concurring). That leeway includes both the decisions of who to include in the districts, and where to include them. As explained by the Supreme Court:

> Neither in Reynolds v. Sims nor in any other decision has this Court suggested that the States are required to include . . . persons denied the vote for conviction of crime in the apportionment base by which their legislators are distributed and against which compliance with the Equal Protection Clause is to be measured.

*Burns v. Richardson*, 384 U.S. 73, 92 (1966). As a result of this discretion, reapportioned districts are presumed valid unless they are shown to be "arbitrarily or invidiously defined." *Id.* at 89 n.16; *see also Brown v. Thompson*, 462 U.S. 835, 842 (1983) (reapportioned districts are valid if they are "consistent and nondiscriminatory"). Here, Wilson does not plausibly allege that there is anything arbitrary about treating his as a resident of his prison, where he is scheduled to remain until 2031. *See* ECF 86 at ¶ 6.

Finally, Wilson argues that treating him as a resident of his prison is inconsistent with what

---

[6] *See Reallocating Inmate Data for Redistricting*, National Conference of State Legislatures (Sept. 27, 2021) (accessed Nov. 25, 2021), https://www.ncsl.org/research/redistricting/reallocating-incarcerated-persons-for-redistricting.aspx.

11

"the Framers . . . intended," ECF 86 at 11, but intentions, and Wilson's interpretations of those intentions, are not the law. *See, e.g.*, *Bostock v. Clayton County*, 140 S. Ct. 1731, 1750 (2020) (rejecting reliance on "legislative intent" and "expected applications").

## IV.     Wilson Has Not Named a Proper Defendant

Wilson's complaint should be dismissed for an additional reason: None of the parties he named are proper defendants. Even if Wilson otherwise could challenge SB 6 (he cannot, for the reasons explained above), he would not be able to sue these particular defendants. Sovereign immunity, legislative immunity, traceability, and redressability prevent these claims from going forward.

### A.     Wilson Cannot Sue the Lieutenant Governor or the Speaker

In addition to barring suits against States themselves, sovereign immunity "prohibits suits against state officials or agencies that are effectively suits against a state." *City of Austin*, 943 F.3d at 997. Wilson presumably relies on the *Ex parte Young* exception, but it does not apply unless "the official has a sufficient 'connection' with the enforcement of the allegedly unconstitutional law." *Mi Familia Vota v. Abbott*, 977 F.3d 461, 467 (5th Cir. 2020). "Otherwise, the suit is effectively against the state itself and thus barred by the Eleventh Amendment and sovereign immunity." *In re Abbott*, 956 F.3d 696, 708 (5th Cir. 2020), *vacated as moot*, *Planned Parenthood Ctr. for Choice v. Abbott*, 141 S. Ct. 1261 (2021); *see also City of Austin*, 943 F.3d at 997.

To "substantiate[] the required connection," the plaintiff must show that the official has "the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Okpalobi v. Foster*, 244 F.3d 405, 416 (5th Cir. 2001) (en banc) (plurality); *accord Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014). Thus, where a defendant is not "likely" to enforce the challenged law, he is not a proper defendant. *City of Austin*, 943 F.3d at 1002.

Wilson does not allege that the Lieutenant Governor or the Speaker can enforce SB 6, much

less that they have demonstrated a willingness to do so. The complaint focuses on their legislative roles, *see* ECF 86 at ¶¶ 3-4, but "[t]he power to promulgate law is not the power to enforce it." *In re Abbott*, 956 F.3d at 709; *accord Mi Familia Vota*, 977 F.3d at 467. For these reasons, Wilson cannot overcome sovereign immunity.

In addition, Wilson lacks standing to sue The Lieutenant Governor or the Speaker because he has not plausibly alleged traceability or redressability. The Fifth Circuit "has acknowledged that our Article III standing analysis and *Ex parte Young* analysis significantly overlap." *City of Austin*, 943 F.3d at 1002 (quotation omitted). That is true here. Wilson's purported injury is not traceable to or redressable by these defendants because they do not enforce SB 6.

A plaintiff's injury must be "fairly . . . trace[able] to the challenged action *of the defendant*," not merely the challenged law. *Lujan*, 504 U.S. at 560. Wilson cannot establish traceability because these "defendants are powerless to enforce" SB 6. *Okpalobi*, 244 F.3d at 426. Allowing Wilson to sue the Lieutenant Governor and the Speaker would violate "the long-standing rule that a plaintiff may not sue a state official who is without any power to enforce the complained-of statute." *Id.* (citing *Muskrat v. United States*, 219 U.S. 346 (1911)).

Similarly, to satisfy redressability, "it must be *the effect of the court's judgment on the defendant*—not an absent third party—that redresses the plaintiff's injury." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1254 (11th Cir. 2020) (quoting *Lewis v. Gov. of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019) (en banc)). Because Wilson's purported injury is based on the responsiveness of a future congressman, *see supra* Part I, redressability would require a remedy that could affect that congressman's behavior. No judgment against the Lieutenant Governor or the Speaker could do that. *See Lujan*, 504 U.S. at 562 (noting standing is less likely when it "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict").

13

Finally, even if Wilson could meet his jurisdictional burdens, the Lieutenant Governor and Speaker would be immune from Wilson's claims because state legislators are entitled to "absolute immunity from civil liability for their legislative activities." *Bogan v. Scott-Harris*, 523 U.S. 44, 46 (1998). This immunity prohibits "§ 1983 actions seeking declaratory or injunctive relief." *Sup. Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 732 (1980).

Legislative immunity is interpreted "broadly," *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967), and "attaches to all actions taken 'in the sphere of legitimate legislative activity,' and 'all acts that occur in the regular course of the legislative process.'" *Empower Texans, Inc. v. Geren*, 388 F. Supp. 3d 738, 743 (W.D. Tex. 2019), *vacated as moot*, 977 F.3d 367 (5th Cir. 2020) (quoting *Tenny v. Brandhove*, 341 U.S. 367, 376 (1951), and *United States v. Brewster*, 408 U.S. 501, 525 (1972)); *see also Bryan v. City of Madison*, 213 F.3d 267, 272 (5th Cir. 2000) (the immunity applies to all "duties that are functionally legislative").

The complaint does not identify any allegedly unlawful actions taken by either the Lieutenant Governor or the Speaker, but it suggests that they were named as defendants because of legislative activity. The complaint notes that the Lieutenant Governor "is the Presiding Officer of the Texas Senate" and that the Speaker is the "Presiding Officer of the Texas House of Representatives." ECF 86 at ¶¶ 3-4. To the extent these defendants have any relevance to this case, it is legislative in nature. They are therefore immune and should be dismissed for this additional reason. *See Empower Texans*, 388 F. Supp. 3d at 742 (citing *Reeder v. Madigan*, 780 F.3d 799, 805–06 (7th Cir. 2015) (Wood, C.J.)).

### B. Wilson Cannot Sue the Governor or the Secretary

As with the Lieutenant Governor and the Speaker, Wilson does not allege any enforcement actions by the Governor or the Secretary that would allow him to overcome sovereign immunity or establish traceability and redressability. *See supra* Part IV.A. Wilson alleges no facts connecting any action by these defendants to the responsiveness of the future congressman for CD 30.

To be sure, the Governor and the Secretary are executive officials with roles in enforcing state

law, but as explained above, that is not enough. The Governor, for example, "order[s] . . . each general election for . . . members of the United States Congress," Tex. Elec. Code § 3.003(a)(1), but Wilson does not allege that ordering an election to be held causes his injury. Nor does he allege that enjoining the Governor from ordering an election would redress his injury. Similarly, the Governor and the Secretary play a role in the "state canvass" of election returns. Tex. Elec. Code § 67.013. But again, Wilson does not allege that his injury is caused by the canvass or redressable by enjoining the canvass. Indeed, given that Wilson is not a voter, his purported injury would seem to be totally disconnected from the Governor's and the Secretary's duties.

In any event, Defendants do not bear the burden of proving a negative. It is Wilson's "burden . . . to allege a plausible set of facts establishing jurisdiction." *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012) (citing *Davis v. United States*, 597 F.3d 646, 649–50 (5th Cir. 2009)). He has not alleged facts sufficient to overcome sovereign immunity or establish standing regarding the Governor or the Secretary.

## CONCLUSION

The State Defendants respectfully request that the Court strike plaintiff's amended complaint (ECF 86); alternatively, the State Defendants request that the Court reaffirm the dismissal of Wilson's claims for lack of subject-matter jurisdiction or failure to state a claim.

| | |
|---|---|
| Date: December 27, 2021 | Respectfully submitted. |
| KEN PAXTON<br>Attorney General of Texas | PATRICK K. SWEETEN<br>Deputy Attorney General for Special Litigation<br>Tex. State Bar No. 00798537 |
| BRENT WEBSTER<br>First Assistant Attorney General | WILLIAM T. THOMPSON<br>Deputy Chief, Special Litigation Unit<br>Tex. State Bar No. 24088531 |
| | */s/ Eric A. Hudson*<br>Senior Special Counsel, Special Litigation Unit<br>Tex. State Bar No. 24059977 |
| | OFFICE OF THE ATTORNEY GENERAL<br>P.O. Box 12548 (MC-009)<br>Austin, Texas 78711-2548<br>Tel.: (512) 463-2100<br>Fax: (512) 457-4410<br>patrick.sweeten@oag.texas.gov<br>will.thompson@oag.texas.gov<br>eric.hudson@oag.texas.gov |

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on December 27, 2021, and that all counsel of record were served by CM/ECF.

*/s/ Eric A. Hudson*
ERIC A. HUDSON