# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.* | § § § | |
| *Plaintiffs,* | § § | Case No. 3:21-cv-00259 |
| v. | § § | [Lead Case] |
| GREG ABBOTT, *et al.*, | § § | |
| *Defendants.* | § § | |
| ROY CHARLES BROOKS, *et al.* | § § | |
| *Plaintiffs,* | § § | |
| v. | § § | Case No. 1:21-cv-00991 |
| GREG ABBOTT, *et al.*, | § § | [Consolidated Case] |
| *Defendants.* | § § | |

# DEFENDANTS' REPLY IN SUPPORT OF
# THEIR MOTION TO DISMISS

## TABLE OF CONTENTS

Table of Contents ..................................................................................................................... i

Table of Authorities ................................................................................................................ ii

Introduction ............................................................................................................................. 1

Argument ................................................................................................................................. 2

    I.   Plaintiffs' Section 2 Effects Claim Fails ............................................................... 2

        A.  Plaintiffs Misapprehend the Law Concerning Coalition Districts ............. 2

        B.  Plaintiffs Do Not Plausibly Allege Voter Cohesion ..................................... 4

        C.  Plaintiffs Do Not Plausibly Allege White-Bloc Voting ................................ 5

    II.  Plaintiffs' Intentional Vote Dilution Claim Fails ................................................ 6

    III. Plaintiffs Lack Standing ......................................................................................... 8

Conclusion ............................................................................................................................. 10

Certificate of Service ............................................................................................................. 11

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott v. Perez*,
   138 S. Ct. 2305 (2018) ...................................................................................................6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................ 1, 7

*Badillo v. City of Stockton*,
   956 F.2d 884 (9th Cir. 1992) ........................................................................................3

*Bartlett v. Strickland*,
   556 U.S. 1 (2009) ............................................................................................... 1, 2, 3

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................1, 6

*Bridgeport Coalition for Fair Representation v. City of Bridgeport*,
   26 F.3d 271 (2d Cir. 1994), *vacated on other grounds*, 512 U.S. 1283 (1994) .............3

*Brnovich v. Democratic National Comm.*,
   141 S. Ct. 2321 (2021) ..................................................................................................8

*Campos v. City of Baytown*,
   840 F.3d 1240 (5th Cir. 1988) ......................................................................................3

*Concerned Citizens of Hardee County v. Hardee County Bd. of Commrs.*,
   906 F.2d 524 (11th Cir. 1990) ......................................................................................3

*Gahagan v. U.S. Citizenship & Immigration Servs.*,
   911 F.3d 298 (5th Cir. 2018) ........................................................................................3

*Georgia State Conference of the NAACP v. Fayette County Bd. of Commrs.*,
   No. 3:11-cv-123, 2012 WL 12861142 (N.D. Ga. 2012) ..............................................3

*Harding v. Dallas County*,
   948 F.3d 302 (5th Cir. 2020) ......................................................................................10

*Hodgson v. United States*,
   No. 5:13-cv-702, 2014 WL 4161777 (W.D. Tex. Aug. 19, 2014) ...............................9

*In re Moncla Marine, LLC*,
   No. 3:19-cv-164, 2019 WL 6878868 (M.D. La. Dec. 17, 2019) .................................9

*Kumar v. Frisco Indep. Sch. Dist.*,
   476 F. Supp. 3d 439 (E.D. Tex. 2020) .........................................................................4

*LULAC v. Clements*,
  986 F.2d 728 (5th Cir. 1993) (*LULAC I*) ................................................................................4

*LULAC v. Clements*,
  999 F.2d 831 (5th Cir. 1993) (en banc) (*LULAC II*) ............................................................ 5, 6

*Middaugh v. InterBank*,
  528 F. Supp. 3d 509 (N.D. Tex. 2021) ....................................................................................9

*Miller v. Gammie*,
  335 F.3d 889 (9th Cir. 2003) (en banc) ..................................................................................3

*Miller v. Johnson*,
  515 U.S. 900 (1995) ............................................................................................................ 6, 7

*Papasan v. Allain*,
  478 U.S. 265 (1986) ................................................................................................................7

*Paterson v. Weinberger*,
  644 F.2d 521 (5th Cir. 1981) ..................................................................................................9

*Perry v. Perez*,
  565 U.S. 388 (2012) ............................................................................................................ 1, 4

*Personnel Administrator of Massachusetts v. Feeney*,
  442 U.S. 256 (1979) ................................................................................................................6

*Rodriguez v. Pataki*,
  308 F. Supp. 2d 346 (S.D.N.Y. 2004) (three-judge court), *aff'd*, 543 U.S. 997 (2004) .......5

*Shelby County v. Holder*,
  570 U.S. 529 (2013) ................................................................................................................7

*Texas v. United States*,
  887 F. Supp. 2d 133 (D.D.C. 2012), *vacated and remanded*, 570 U.S. 928 (2013) ................7

*Thornburg v. Gingles*,
  478 U.S. 30 (1986) ........................................................................................................ 2, 4, 5

*United States v. Hays*,
  515 U.S. 737 (1995) ..............................................................................................................10

*United States v. Munsingwear, Inc.*,
  340 U.S. 36 (1950) ..................................................................................................................8

*Veasey v. Abbott*,
  830 F.3d 216 (5th Cir. 2016) ..................................................................................................7

*Walker v. Beaumont Indep. Sch. Dist.*,
    938 F.3d 724 (5th Cir. 2019) ................................................................................................. 7

**Statutes**

52 U.S.C. § 10301 ........................................................................................................................... 2

**Rules**

Fed. R. Civ. P. 15(a)(2) ................................................................................................................... 9

**INTRODUCTION**

Defendants' Motion to Dismiss explained that the Brooks Plaintiffs' complaint should be dismissed because (a) their claims fail on the merits, and (b) even if their claims plausibly raise a right to relief, Plaintiffs lack standing to assert them. Plaintiffs offer three responses, but these do not fix the problems in their complaint.

First, Plaintiffs argue that circuit precedent allows them to pursue a "coalition district" discriminatory-effects claim under Section 2 of the Voting Rights Act ("VRA"). But as Defendants already explained, that decades-old circuit precedent is inconsistent with subsequent Supreme Court precedent. Simply put, "Section 2 does not impose on those who draw election districts a duty to give minority voters the most potential, or the best potential, to elect a candidate" of their choice, *Bartlett v. Strickland*, 556 U.S. 1, 15 (2009) (plurality op.), and furnishes "no basis" for the theory that legislatures must draw "minority coalition district[s]." *Perry v. Perez*, 565 U.S. 388, 399 (2012).

Second, Plaintiffs argue that the Court should not consider any "alternative narrative" that undermines their intentional-vote-dilution and racial-gerrymandering claims. ECF 84 at 8. But binding precedent specifically requires this court to consider any "obvious alternative explanation" at the pleading stage, including in discrimination cases. *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009) ("obvious alternative explanation" made "purposeful, invidious discrimination . . . not a plausible conclusion"). Here, Plaintiffs have not alleged facts that would rebut the strong presumption of legislative good faith; every fact they have pleaded is "just as much in line with" partisan, rather than racial, motivations in designing Senate District 10 ("SD10"). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

Third, Plaintiffs argue that they can cure their complaint's deficiency with respect to standing by offering extrinsic evidence, but that misunderstands the nature of Defendants' Motion. The Motion does not challenge the factual basis of the complaint; it is a facial attack, explaining that the complaint does not include sufficient allegations to demonstrate the Brooks Plaintiffs have standing to pursue

1

their claims. Factual evidence is therefore immaterial. And in any event, none of Plaintiffs' responsive arguments demonstrate that Senator Powell has standing.

The Court should dismiss the Brooks Plaintiffs' Complaint.

## ARGUMENT

### I. Plaintiffs' Section 2 Effects Claim Fails

Plaintiffs cannot defend their discriminatory-effects claim. Defendants previously explained that they fail to satisfy any of the three preconditions set forth by the Supreme Court in *Thornburg v. Gingles*, 478 U.S. 30 (1986), and Plaintiffs' responses do nothing to change this.

#### A. Plaintiffs Misapprehend the Law Concerning Coalition Districts

The first *Gingles* precondition requires Plaintiffs to plead facts showing the applicable minority group "is sufficiently large and geographically compact to constitute a majority in a single-member district." *Gingles*, 478 U.S. at 50. Defendants explained that, under Supreme Court precedent, Plaintiffs cannot satisfy this precondition with a coalition theory. ECF 43 at 2–7. That is, Plaintiffs cannot allege that several minority groups taken together are large enough to support a single-member district. Yet Plaintiffs do just that, asserting that Fifth Circuit opinions allow it. *See* ECF 84 at 2–5. They do not.

First, contrary to Plaintiffs' accusations, *see* ECF 84 at 4, Defendants did not assert that *Bartlett* held that plaintiffs cannot pursue a coalition-district theory. Rather, Defendants explained that the Supreme Court in *Bartlett* rejected a crossover-district theory because "[t]here is a difference between a racial minority's 'own choice,' and the choice made by a coalition." 556 U.S. at 15. If one minority group cannot "elect [a] candidate based on their own votes and without assistance from others," *id.* at 14, then it cannot be said that the group has "less opportunity than other members of the electorate to . . . elect representatives of their choice." *Id.* (quoting 52 U.S.C. § 10301). And then in *Perez*—which Plaintiffs mention but do not meaningfully address, *see* ECF 84 at 5—the Supreme Court extended *Bartlett*'s logic to coalition districts. 565 U.S. at 399. Reversing a three-judge district court, the *Perez*

2

Court explained: "If the District Court did set out to create a minority coalition district, rather than drawing a district that simply reflected population growth, *it had no basis for doing so.*" *Id.* (emphasis added) (citing *Bartlett*, 556 U.S. at 13–15). These holdings make clear that a district court is incorrect to assume that Section 2 requires the creation of coalition districts.

Rather than address Supreme Court precedent, Plaintiffs argue that the Fifth Circuit's decision in *Campos v. City of Baytown*, 840 F.3d 1240 (5th Cir. 1988), controls. *See* ECF 84 at 2–4. But they ignore that *Campos*'s logic cannot be reconciled with *Bartlett* and *Perez*, which therefore overruled it. *See* ECF 43 at 4–7; *see also Gahagan v. U.S. Citizenship & Immig. Servs.*, 911 F.3d 298, 303 (5th Cir. 2018) (the "overriding consideration" in determining if a case has been overruled "is the similarity of the issues decided"); *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (case is overruled if intervening Supreme Court precedent "undercut[s] the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable").

Plaintiffs do not engage this argument, instead arguing that *Campos* was right. But the cases they cite in support are just as irrelevant as *Campos* because (a) they rely on the same flawed reasoning as *Campos*, and (b) like *Campos*, they pre-date—and were therefore overruled by—*Bartlett* and *Perez*. *See* ECF 84 at 3 (citing *Bridgeport Coal. for Fair Representation v. City of Bridgeport*, 26 F.3d 271, 276–77 (2d Cir. 1994), *vacated on other grounds*, 512 U.S. 1283 (1994); *Concerned Citizens of Hardee Cnty. v. Hardee Cnty. Bd. of Commrs.*, 906 F.2d 524, 526 (11th Cir. 1990); *Badillo v. City of Stockton*, 956 F.2d 884, 891 (9th Cir. 1992)). In fact, the Northern District of Georgia, which would have otherwise been bound by Eleventh Circuit precedent, has since applied *Perez* to reject a coalition-district theory. *See Ga. State Conf. of the NAACP v. Fayette Cnty. Bd. of Commrs.*, No. 3:11-cv-123, 2012 WL 12861142, at *3 (N.D. Ga. 2012). ("[A Section 2 injury] cannot be remedied by the creation of a district in which the minority group constitutes less than fifty percent of the voting population. Indeed, the Supreme Court itself

3

seems to have rejected such an interpretation of *Bartlett*.") (citing *Perez*, 565 U.S. 399). This Court should do the same. *Bridgeport*, *Concerned Citizens*, and *Badillo* are not good law. Neither is *Campos*.

Plaintiffs' coalition-district theory cannot satisfy the first *Gingles* precondition because it has been rejected by the Supreme Court. Plaintiffs' contrary arguments do not grapple with this reality.

### B. Plaintiffs Do Not Plausibly Allege Voter Cohesion

The second *Gingles* precondition requires Plaintiffs to plead facts showing that the applicable minority group "is politically cohesive." 478 U.S. at 51. Even if Section 2 supported a coalition-district theory, Plaintiffs would still have to plausibly allege that black and Latino voters act based on the same underlying values: "The notion of political cohesiveness contemplates that a specified group of voters shares common beliefs, ideals, principles, agendas, concerns, and the like such that they generally unite behind or coalesce around particular candidates and issues." *Kumar v. Frisco Indep. Sch. Dist.*, 476 F. Supp. 3d 439, 502 (E.D. Tex. 2020) (quoting *LULAC v. Clements*, 986 F.2d 728, 744 (5th Cir. 1993) (*LULAC I*)). That showing, in turn, requires that Plaintiffs demonstrate "that a significant number of minority group members usually vote for the same candidates." *LULAC I*, 986 F.2d at 743.

As Defendants explained, *see* ECF 43 at 8–9, Plaintiffs plead no *facts* supporting cohesion. The complaint does not allege that black voters and Latino voters have "common beliefs, ideals, principles, agendas, concerns, and the like." *Kumar*, 476 F. Supp. 3d at 502. Plaintiffs do not contend otherwise. Instead, they point to two paragraphs in their complaint. *See* ECF 84 at 5. Read generously, they might plausibly allege that minority voters, considered as a whole, tend to support Democratic candidates over Republican candidates. *See* Compl. ¶¶ 37, 84. Even so, those allegations suffer from two fundamental defects.

First, Plaintiffs assume that there are no relevant differences between Latino voters and black voters—but that cannot be assumed; it is the very issue they must address through plausible factual allegations. Alleging that minority voters, considered as a whole, tended to support Democrats in past

4

elections does not address whether both black voters and Latino voters, considered separately, each supported the same candidate (or, if so, by what margins).

Second, Plaintiffs ignore primary elections. Even if black and Latino voters tend to support the same candidate in general elections, that does not address whether they unite in primary elections, which "are by far the most probative evidence of cohesion." *Rodriguez v. Pataki*, 308 F. Supp. 2d 346, 421 (S.D.N.Y. 2004) (three-judge court), *aff'd*, 543 U.S. 997 (2004).

These problems render Plaintiffs' complaint deficient. If Plaintiffs proved each fact alleged in their complaint, it would not be enough to establish cohesion between black voters and Latino voters.

### C. Plaintiffs Do Not Plausibly Allege White-Bloc Voting

The third and last *Gingles* precondition requires Plaintiffs to plead facts showing "that the white majority votes sufficiently as a bloc to enable it . . . usually to defeat the minority's preferred candidate." 478 U.S. at 50–51 (citation omitted). As explained before, *see* ECF 43 at 9–10, Plaintiffs' complaint offers only legal conclusions on this precondition. *See* Compl. ¶ 81 ("Anglo bloc voting will usually defeat Black and Hispanic voters' candidates of choice in the region."). In response, Plaintiffs point to their prediction that "the new SD10 will reliably defeat minority voters' preferred candidates" because the Republican candidate would have carried the newly-configured SD10 in several statewide elections. ECF 84 at 6 (citing Compl. ¶ 47). That is not enough. The *en banc* Fifth Circuit rejected a much stronger showing of white-bloc voting when it held "that the failure of minority-preferred candidates to receive support from a majority of whites on a regular basis, without more," did not "prove legally significant racial bloc voting." *LULAC v. Clements*, 999 F.2d 831, 850 (5th Cir. 1993) (en banc) (*LULAC II*). Plaintiffs ask this Court to commit the same error as the district court in *LULAC*: "loos[ing] § 2 from its racial tether and fus[ing] illegal vote dilution and political defeat." *Id.* And they do so without addressing *LULAC* at all. *See* ECF 84 at 6.

5

## II. Plaintiffs' Intentional Vote Dilution Claim Fails

Plaintiffs also fail to defend their intentional vote-dilution claims. When considering this type of claim, "the good faith of a state legislature must be presumed." *Miller v. Johnson*, 515 U.S. 900, 915 (1995). It is "plaintiffs' burden to overcome the presumption of legislative good faith and show that the [Texas] Legislature acted with invidious intent." *Abbott v. Perez*, 138 S. Ct. 2305, 2325 (2018). The required intent is not mere "volition" or "awareness of consequences." *Personnel Admr. of Mass. v. Feeney*, 442 U.S. 256, 279 (1979). It requires that the Legislature have passed a law "'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* Plaintiffs' allegations do not overcome that presumption.

The Supreme Court in *Twombly* stressed that, in pleading an intentional-discrimination claim, the plaintiff must plead facts that disprove the "obvious alternative explanation." 550 U.S. at 567. As Defendants explained in their Motion, *see* ECF 43 at 10–13, and in great detail in their Response to the Plaintiffs' Preliminary Injunction Motion, *see* ECF 102 at 3–25 (Background), 27–38 (Argument on Intentional Vote Dilution), the Senate majority passed SB4 and S2168 based on partisan motives, not racial ones. That is the obvious alternative explanation here. For this reason, to state a claim, Plaintiffs must plead facts that, if proven, would suggest a racial rather than partisan motivation. Otherwise, their claim is not plausible. *See LULAC II*, 999 F.2d at 880 (claim cannot succeed where "the facts demonstrate that partisan affiliation, not race, was responsible" for the actions at issue).

The Brooks Plaintiffs do not meet this standard. If they proved their allegations, they would have demonstrated that the Senate majority targeted SD10 for partisan gain and that Senator Powell repeatedly attempted to inject race into the discussion of that reconfiguration to attempt to thwart it. That is simply insufficient to rebut the strong presumption of legislative good faith.

Plaintiffs' defense of their intentional vote-dilution claims rests on three legal errors. *First*, they say that being made to plead facts that rebut the obvious alternative explanation "turns the motion-

6

to-dismiss standard upside down," ECF 84 at 1, but this ignores the effect of the presumption of legislative good faith. Because "the good faith of a state legislature must be presumed," *Miller*, 515 U.S. at 915, it is Plaintiffs' burden to plead facts rebutting the nondiscriminatory explanations. More, it ignores that one of the Supreme Court's leading cases on pleading held that the plaintiff had not plausibly alleged "purposeful, invidious discrimination" precisely because there was an "obvious alternative explanation." *Iqbal*, 556 U.S. at 682.

*Second*, Plaintiffs improperly ask the Court to "accept [legal conclusions] as true." ECF 84 at 7. They insist the Legislature adopted the 2011 iteration of SD10 with discriminatory intent, and that the Court must accept their legal position at the pleading stage. *Id.* That is wrong. "[B]are assertions" of discriminatory intent "are not entitled to the assumption of truth." *Iqbal*, 550 U.S. at 680–81; *see also Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) ("[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'") (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

As support, Plaintiffs point to a vacated district court decision, *Texas v. United States*, 887 F. Supp. 2d 133 (D.D.C. 2012), *vacated and remanded*, 570 U.S. 928 (2013). Although the court in *Texas* held that the previous version of SD10 violated the VRA, the issue arose in a preclearance proceeding under Section 5, which was subsequently declared unconstitutional in *Shelby County v. Holder*, 570 U.S. 529 (2013). Indeed, the *Texas* decision was vacated shortly after *Shelby County*, and thus has no legal effect. Judge Jones, joined by Judges Jolly, Smith, Clement, and Owen, explained these circumstances as follows: "[T]he D.C. District's opinion in [*Texas*] was vacated by the Supreme Court. Vacated opinions have no precedential or persuasive value." *Veasey v. Abbott*, 830 F.3d 216, 301 n.36 (5th Cir. 2016) (Jones, J., concurring in part and dissenting in part). *See also* ECF 102 at 21–23 (explaining why Plaintiffs' cases are inapposite). Moreover, the constitutional infirmities underlying the plaintiffs' suit in *Texas* meant that no appellate court reviewed the finding on which the Brooks Plaintiffs rely. But

as the Supreme Court has recognized in the mootness context, "unreviewable" decisions should not "spawn[] any legal consequences." *United States v. Munsingwear, Inc.*, 340 U.S. 36, 41 (1950).

Plaintiffs also claim to have "direct testimony that the justifications offered for dismantling SD10 were pretextual," ECF 84 at 7, but they cite nothing in their complaint to support that claim. The complaint mentions "pretext" only when flatly asserting that a single senator offered pretextual reasons. Compl. ¶¶ 61, 73. It points to no "direct testimony." Even if it had, speculation from third parties on the genuineness of *someone else's* beliefs would not make Plaintiffs' theory any more plausible.

*Third*, Plaintiffs fail to grapple with the Supreme Court's rejection of their cat's-paw theory:

> The "cat's paw" theory has no application to legislative bodies. The theory rests on the agency relationship that exists between an employer and a supervisor, but the legislators who vote to adopt a bill are not the agents of the bill's sponsor or proponents. Under our form of government, legislators have a duty to exercise their judgment and to represent their constituents. It is insulting to suggest that they are mere dupes or tools.

*Brnovich v. Democratic Natl. Comm.*, 141 S. Ct. 2321, 2350 (2021). In other words, Plaintiffs cannot allege facts concerning only Senator Huffman and then attribute her alleged discriminatory intent to the rest of the Legislature. Plaintiffs respond that "every legislator knew that dismantling SD10 would crack apart Black and Latino voters in Tarrant County." ECF 84 at 8. But they do not dispute that knowledge of such effects would not establish intentional discrimination under *Feeney*. *See* ECF 43 at 10. Plaintiffs' only other response is to claim they alleged "that the legislators who voted for SD10 did so for the purpose of accomplishing that end." ECF 84 at 8. But the complaint attributes such a purpose to the Legislature as a whole only through baseless legal assertions, not plausible allegations of fact. *See* Compl. ¶ 5 ("The legislature . . . intended the discriminatory result it achieved . . . ."); *id.* ¶ 75 ("The legislature intended the discriminatory result it achieved . . . .").

### III. Plaintiffs Lack Standing

Nor have Plaintiffs pointed out how their Complaint properly alleges standing. Plaintiffs' response rests largely on the erroneous assertion that they can establish standing by relying on evidence

outside the complaint but otherwise "in the record." ECF 84 at 8–9. Plaintiffs conflate the standard for a "factual attack" and a "facial attack." In "a 'factual attack' upon the court's subject matter jurisdiction over the lawsuit, the defendant submits affidavits, testimony, or other evidentiary materials." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). A plaintiff responding to such an attack must "submit facts through some evidentiary method." *Id.* By contrast, when a defendant makes a "facial attack" by challenging the sufficiency of the allegations in the complaint, "review is limited to whether the complaint is sufficient to allege the jurisdiction." *Id.*

Defendants' Motion is a "facial attack" on the Brooks Plaintiffs' standing. It was based on the insufficiency of the allegations in Plaintiffs' complaint. *See* ECF 43 at 13–15. Defendants did not submit evidence with their motion to dismiss, as they would have for a "factual attack." As a result, this Court's "review is limited to whether the complaint is sufficient to allege the jurisdiction." *Paterson*, 644 F.2d at 523; *accord, e.g.*, *In re Moncla Marine, LLC*, No. 3:19-cv-164, 2019 WL 6878868, at *5 (M.D. La. Dec. 17, 2019) ("In a facial attack analysis, the Court is limited to the complaint alone and cannot consider extrinsic materials."); *Hodgson v. United States*, No. 5:13-cv-702, 2014 WL 4161777, at *5 (W.D. Tex. Aug. 19, 2014) ("In evaluating a facial attack, the court considers only the pleadings.").

The allegations in the complaint are not sufficient to establish standing, and for the most part, Plaintiffs do not seriously contend otherwise. Instead, they point to evidence not included in or attached to their complaint. If Plaintiffs believe they can properly allege facts establishing standing, they should seek leave to amend their complaint. *See* Fed. R. Civ. P. 15(a)(2). Their effort to establish standing through later filings violates the "general rule" that "claims and allegations that are not raised in the complaint, but raised for the first time in a response to a motion to dismiss are not properly before the court." *Middaugh v. InterBank*, 528 F. Supp. 3d 509, 535–36 (N.D. Tex. 2021).

Plaintiffs do argue that the Fifth Circuit's recent decision in *Harding v. Dallas County*, 948 F.3d 302, 307 (5th Cir. 2020), relieves them of the obligation to plausibly allege that they will vote in future

elections. *See* ECF 84 at 9. But that decision rested on the concession "that each voter resides in a district where *their vote* has been cracked or packed." *Harding*, 948 F.3d at 307 (emphasis added). It necessarily follows that the plaintiffs had been voting. Thus, the Court had no occasion to consider whether an allegation that one is registered to vote is equivalent to an allegation that one will vote. Here, by contrast, Plaintiffs do not allege any facts that show an intent to vote in future elections.

Even if Plaintiffs' arguments were meritorious—they are not—none of them would help Senator Powell establish standing. She is white, so alleged dilution of minority votes is not a cognizable injury to her right to vote. For Plaintiffs' racial-gerrymandering claim, they suggest Senator Powell has standing because she is "Anglo" and "the legislature moved . . . Anglo voters predominantly on the basis of race." ECF 84 at 11. But even on that theory, the Legislature did not move Senator Powell at all, much less because of her race. She remains in SD 10. *See* Compl. ¶ 15. She therefore has not "personally been subjected to a racial classification." *United States v. Hays*, 515 U.S. 737, 745 (1995).

## CONCLUSION

Defendants respectfully request that the Court dismiss the Brooks Plaintiffs' complaint.

| | |
|---|---|
| Date: December 29, 2021 | Respectfully submitted. |
| | |
| KEN PAXTON | /s/ Patrick K. Sweeten |
| Attorney General of Texas | PATRICK K. SWEETEN |
| | Deputy Attorney General for Special Litigation |
| BRENT WEBSTER | Tex. State Bar No. 00798537 |
| First Assistant Attorney General | |
| | WILLIAM T. THOMPSON |
| | Deputy Chief, Special Litigation Unit |
| | Tex. State Bar No. 24088531 |
| | |
| | OFFICE OF THE ATTORNEY GENERAL |
| | P.O. Box 12548 (MC-009) |
| | Austin, Texas 78711-2548 |
| | Tel.: (512) 463-2100 |
| | Fax: (512) 457-4410 |
| | patrick.sweeten@oag.texas.gov |
| | will.thompson@oag.texas.gov |

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on December 29, 2021, and that all counsel of record were served by CM/ECF.

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN