# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,<br>    *Plaintiffs*,<br><br>v.<br><br>GREG ABBOTT, *in his official capacity as Governor of the State of Texas*, and JOHN SCOTT, *in his official capacity as Secretary of State of Texas*,<br>    *Defendants*. | §§§§§§§§§§§§§ | Case No. 3:21-cv-259-DCG-JES-JVB<br>[Lead Case] |
| DAMON JAMES WILSON,<br>    *Plaintiff*,<br><br>v.<br><br>THE STATE OF TEXAS, *et al.*,<br>    *Defendants*. | §§§§§§§§§§ | Case No. 1:21-cv-943-RP-JES-JVB<br>[Consolidated Case] |
| VOTO LATINO, *et al.*,<br>    *Plaintiffs*,<br><br>v.<br><br>JOHN SCOTT, *in his official capacity as Secretary of State of Texas*, and GREG ABBOTT, *in his official capacity as Governor of the State of Texas*,<br>    *Defendants*. | §§§§§§§§§§§§§ | Case No. 1:21-cv-965-RP-JES-JVB<br>[Consolidated Case] |
| MEXICAN AMERICAN LEGISLATIVE CAUCUS,<br>    *Plaintiff*,<br><br>v.<br><br>THE STATE OF TEXAS, *et al.*,<br>    *Defendants*. | §§§§§§§§§§§ | Case No. 1:21-cv-988-RP-JES-JVB<br>[Consolidated Case] |

| | | |
|---|---|---|
| ROY CHARLES BROOKS, *et al.*,<br>    *Plaintiffs*,<br><br>v.<br><br>GREG ABBOTT, *in his official capacity as Governor of the State of Texas*, and JOHN SCOTT, *in his official capacity as Secretary of State of Texas*,<br>    *Defendants*. | § § § § § § § § § § § § § | Case No. 1:21-cv-991-LY-JES-JVB<br>[Consolidated Case] |
| TEXAS STATE CONFERENCE OF THE NAACP,<br>    *Plaintiff*,<br><br>v.<br><br>GREG ABBOTT, *in his official capacity as Governor of the State of Texas*, and JOHN SCOTT, *in his official capacity as Secretary of State of Texas*,<br>    *Defendants*. | § § § § § § § § § § § § § | Case No. 1:21-cv-1006-RP-JES-JVB<br>[Consolidated Case] |
| FAIR MAPS TEXAS ACTION COMMITTEE, *et al.*,<br>    *Plaintiffs*,<br><br>v.<br><br>GREG ABBOTT, *in his official capacity as Governor of the State of Texas*, and JOHN SCOTT, *in his official capacity as Secretary of State of Texas*,<br>    *Defendants*. | § § § § § § § § § § § § § | Case No. 1:21-cv-1038-RP-JES-JVB<br>[Consolidated Case] |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>    Plaintiff,<br><br>v.<br><br>STATE OF TEXAS, *et al.,*<br>    Defendants. | § § § § § § § § § § § § § | Case No. 3:21-CV-00299-DCG-JES-JVB<br>[Consolidated Case] |
| TREY MARTINEZ FISCHER<br>    *Plaintiff,*<br><br>v.<br><br>GREG ABBOTT, *in his official capacity as Governor of the State of Texas, et al.,*<br>    *Defendants* | § § § § § § § § § § § § § | Case No. 1:21-cv-1038-RP-JES-JVB<br>[Consolidated Case] |

**DEFENDANTS' OPPOSITION TO EDDIE BERNICE JOHNSON, SHEILA JACKSON LEE, ALEXANDER GREEN, AND JASMINE CROCKETT'S MOTION TO INTERVENE**

## INTRODUCTION

Three members of Congress and one State Representative (collectively, the "Putative Intervenors") seek to intervene in these consolidated cases almost two months after the first lawsuit was filed and on the day the parties submitted scheduling orders proposing an already accelerated disposition of these consolidated cases. ECF 91. Because their motion is untimely, and because their presence in this action would not enhance, but instead impede, the speedy resolution of this case, Defendants submit this response in opposition to Putative Intervenors' motion.

As this Court is well-aware, the consolidated action already presents substantial case-management issues due to the sheer number of parties, the number of maps and districts challenged, and the breadth of the claims that plaintiffs assert. Adding Putative Intervenors threatens to complicate matters further, and disrupt the agreed-upon schedule, which already contains tight deadlines and an expedited trial date. Moreover, the interests Putative Intervenors seek to address overlap almost entirely with those raised by the Texas State Conference of the NAACP ("Texas NAACP"). *See* Complaint for Declaratory and Injunctive Relief, *Texas State Conference of the NAACP v. Abbott*, No. 1:21-cv-1006, ECF 1 (W.D. Tex. Nov. 5, 2021). In fact, Texas NAACP's president—Gary Bledsoe—serves as lead counsel to Putative Intervenors.

Putative Intervenors therefore cannot meet their burden for intervention as of right, and circumstances of the case disfavor permissive intervention. Their motion should be denied on all grounds.

## BACKGROUND

Two months ago, on October 25, 2021, Governor Abbott signed bills into law that enacted the new redistricting plans for Congress, the Texas House, the Texas Senate, and the State Board of Education. A week earlier, the first set of plaintiffs, headed by League of United Latin American

1

Citizens ("LULAC"), filed suit against the Governor and other State Defendants, alleging that the maps violate federal law. An additional eight lawsuits were filed in the ensuing weeks, by scores of Plaintiffs against four redistricting maps and dozens of electoral districts, all of which were consolidated into the single, above-captioned action. This includes a lawsuit brought by Texas NAACP, which contends that the Congressional Plan C2193 unlawfully diluted the voting strength of black voters. *See NAACP v. Abbott*, ECF 1 ¶ 218.

Despite the considerable logistical challenges, the parties negotiated in good faith and managed to reach substantial agreement on an accelerated schedule, which this Court recently finalized. *See* ECF 96, 109. The schedule carefully balances the Parties' need for speedy resolution with the practical concern of giving each party—including 58 plaintiffs[1]—sufficient opportunity to develop their facts and legal arguments. Yet, on the day the parties submitted their scheduling proposals, almost two months after the LULAC Plaintiffs filed their complaint, Putative Intervenors sought admission into the case as plaintiffs advancing the same legal theories and same interests of Black voters as Texas NAACP.

Recognizing the prejudice their late addition would cause, Defendants submit this response in opposition to Putative Intervenors' motion.

**STANDARD**

The Federal Rules provide two mechanisms for third-party intervention: intervention of right under Rule 24(a), and permissive intervention under Rule 24(b). For intervention as of right to apply, the movant must demonstrate that: (1) the motion is timely; (2) the putative intervenor asserts an interest that is related to the property or transaction that forms the basis of the controversy in the case; (3) the disposition of the case will impair the putative intervenor's ability

---

[1] This total does not include the five plaintiffs to the consolidated state court action pending in *MALC v. Abbott*, No. D-1-GN-21-006515, or the four additional intervenors this motion addresses.

2

to protect that interest; and (4) the existing parties do not adequately protect that interest. *Saldano v. Roach*, 363 F.3d 545, 551 (5th Cir. 2004). "Failure to satisfy any one requirement precludes intervention as of right." *Haspel & Davis Milling & Planting Co. v. Bd. of Levee Commr's*, 493 F.3d 570, 578 (5th Cir. 2007).

Permissive intervention under Rule 24(b), meanwhile, is permitted at the Court's discretion when: (1) a timely application is made by the intervenor; (2) the intervenor's claim or defense and the main action have a question of law or fact in common; and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. *LULAC v. Clements*, 884 F.2d 185, 189 n.2 (5th Cir. 1989). Permissive intervention "is at the discretion of the court." *Walker v. Alta Colls, Inc.*, No. 1:09-cv-894, 2011 WL 13269547, at *2 (W.D. Tex. Aug. 10, 2011). A district court thus "may deny permissive intervention even when the requirements of Rule 24(b) are met." *United States v. City of New Orleans*, 540 F. App'x 380, 381 (5th Cir. 2013) (per curiam).

## ARGUMENT

### I. Applicants Have Not Established a Right to Intervene

Putative Intervenors have not carried their burden with respect to intervention as of right under Rule 24(a) for at least two reasons.[2] First, their motion is untimely in the context of this accelerated and complex litigation. Second, Putative Intervenors' purported interest is already adequately represented by the existing parties, Texas NAACP in particular.

#### A. Intervention Would Prejudice Existing Parties

Putative Intervenors misapply the standards that govern timeliness under Rule 24(a)(2). In their motion, Putative Intervenors measure their actions from the date they "learn[ed] that the

---

[2] For the sake of judicial economy, Defendants confine their argument to the two largest defects in the Putative Intervenors' Rule 24(a) application. In doing so, Defendants do not concede that the Putative Intervenors meet any of the other elements for intervention as of right.

3

actions were consolidated." ECF 91 ¶ 18. Legally speaking, this is irrelevant. According to the Fifth Circuit, timeliness is based off of "how long the potential intervenor knew or reasonably should have known of her stake in the case into which she seeks to intervene." *Doe v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001).

With respect to Putative Intervenors, that stake was apparent the moment the legislative maps were signed into law and, again, when the LULAC Plaintiffs—or, indeed, any of the 58 plaintiffs—initiated suit.[3] The LULAC Plaintiffs challenge each of Texas's legislative maps, including Texas's Congressional Plan C2193. Although their claims focus on South and West Texas, the nature of redistricting means that a change in part of the state can often have cascading effects throughout. Putative Intervenors concede this point in their motion when they argue that the disposition of this action would impede their purported interests. ECF 91 ¶ 26.

Multiple other redistricting challenges soon followed, and other plaintiff groups contested congressional districts even closer to Putative Intervenors' constituencies. The Texas NAACP filed its lawsuit just eleven days after the bills were signed into law. It asserts statewide challenges against three maps, including six challenges to Congressional districts in Harris and Dallas County. *See* Complaint for Declaratory and Injunctive Relief, *Texas State Conference of NAACP v. Abbott*, No. 1:21-cv-1006, ECF 1 ¶¶ 182–204 (W.D. Tex. Nov. 5, 2021). And the Fair Maps Plaintiffs contend that C2193 discriminates against black voters in the Dallas-Fort-Worth area, and cite Putative Intervenor Johnson's own district as alleged evidence of the violation. *See* Complaint for Declaratory and Injunctive Relief, *Fair Maps Texas Action Committee v. Abbott*, No. 1:21-cv-1038, ECF 1 ¶ 139 (W.D. Tex. Nov. 16, 2021). The *Fair Maps* complaints were consolidated with

---

[3] According to their motion to intervene, Putative Intervenors participated in the State's redistricting process and were actively aware of the litigation as it was unfolding. ECF 91 ¶¶ 3, 4, 7. They knew from the get-go that their interests were implicated.

4

the main action by November 18. And still, Putative Intervenors waited.[4]

Because of this delay, Putative Intervenors' addition to these consolidated cases would prejudice Defendants and other existing parties. Putative Intervenors seek to interject their largely overlapping claims into a multi-party case where a compressed schedule has already been adopted by the Court, and a two-week trial has already been set. The parties are in the midst of proceeding under an accelerated schedule that provides for a six-month discovery period. The addition of four more parties undermines prior negotiations that took place between the parties where many issues were agreed upon. Defendants consented to many of the dates in the scheduling order on the understanding that discovery and motions practice would be limited to the parties and claims then before the court.

Putative Intervenors do not even address the probable impact their intervention would have on Defendants, but instead simply declare that "*Plaintiffs* will not suffer any prejudice as a result of [Putative Intervenors'] request for intervention." ECF 91 ¶ 22 (emphasis added). Again, this misapplies the relevant standard. According to the Fifth Circuit, courts assess the prejudice felt by all the existing parties, not merely the plaintiffs. *See Glickman*, 256 F.3d at 376. Moreover, Putative Intervenors' assertion is not even correct. The several plaintiff groups acted on similar assumptions when negotiating the scheduling order, all of which would collapse with the addition of new parties.

To quote Putative Intervenors, "[t]imeliness is a flexible requirement that differs from case to case." ECF 91 ¶ 19. While a two-month delay may be of little significance in some instances, it has serious repercussions in a fast-track, 58-plaintiff consolidated action, involving diverging claims and defenses, and where Defendants have already filed eight dispositive motions—one of

---

[4] The Texas NAACP complaint also cites the Putative Intervenors' congressional districts as alleged evidence of racial gerrymandering and vote dilution. *See NAACP v. Abbott*, ECF 1 ¶¶ 57–58, 193–204.

which was already granted—and share an acute interest in securing a prompt but well-grounded ruling from this Court. The motion is not timely.

### B. The Existing Parties Adequately Represent Applicants' Purported Interests

Even if Putative Intervenors' inclusion in the case did not promise to prejudice Defendants, Putative Intervenors have also failed to establish that their interests are not aligned with one of the plaintiff groups, who already seek to advance the interests of black voters. ECF 91 ¶ 1. Instead, Putative Intervenors cherry-pick which plaintiffs to distinguish themselves from, confining their analysis to organizations that represent Latino interests. *Id.* But this is not sufficient. To satisfy the fourth prong, Putative Intervenors must show that their interests will not be adequately represented by *any* of the existing parties to the litigation. *Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014). Critically, where the intervenor has "the same ultimate objective as a party to the lawsuit," adequate representation is presumed. *Id.* The presumption can only be overcome by a showing of "adversity of interest, collusion, or nonfeasance on the part of the existing party," which Putative Intervenors fail to establish. *Veasey v. Perry*, 577 F. App'x 261, 263 (5th Cir. 2014) (per curiam) (citing *Brumfield*, 749 F.3d at 345).

Here, Putative Intervenors challenge Plan C2193 and its reconfiguration of Congressional Districts 9, 18 and 30. ECF 91 at 4. But they are silent as to how their interests are not adequately represented other than to assert, without explanation, that they represent a "largely different and distinct group of voters with some issues unique to those groups and areas." ECF 91 ¶ 26. An analysis of their claims and the pleadings pending before this Court paints a different picture. As their proposed complaint reflects, Putative Intervenors' claims are based on allegations of (1) vote dilution of Black votes under Section 2 of the Voting Rights Act; and (2) intentional discrimination against Black voters under the Equal Protection Clause of the Fourteenth Amendment. ECF 91-1

6

(Intervenors' Ex. D) ¶¶ 53–59. One of the cases consolidated herein—*Texas NAACP v. Abbott*—has already made the same challenges[5] to Plan C2193 on the same grounds.[6] ECF 1 at ¶¶ 211–30. In fact, the complaint specifically names two of the four Putative Intervenors, their perceived harms, *and* the relief that would benefit them. *Id.* ¶ 57 (Sheila Jackson Lee); *id.* (Al Green). As Putative Intervenors' claims and relief sought are identical to those already represented by Texas NAACP, it is clear that they share the same objective, and that no aspect of the case is "illuminated by [Putative Intervenors'] presence in th[is] suit." *Associated Indus. of Ala. v. Train,* 543 F.2d 1159 (5th Cir. 1976).

Moreover, the president of the Texas NAACP is Gary Bledsoe,[7] who is also acting as counsel for Putative Intervenors. ECF 91 at 9. In other words, the Putative Intervenors' argument is that only they, through their counsel, can adequately represent their interests because the Texas NAACP, which was founded to protect the rights of black Texans and is headed by their own counsel, cannot. That is illogical. Their further suggestion that they are "without a friend in this litigation" is belied by their counsel's current, prominent role in the *Texas NAACP* suit. *Atlantis Development Corp. v. United States,* 379 F.2d 818, 825 (5th Cir. 1967). There is no reason to find that Putative Intervenors' interests are not adequately represented by the existing organization that they are members of and that their own counsel presides over. *See Gabriel v. Standard Fruit & Steamship Co.,* 448 F.2d 724, 725–26 (5th Cir. 1971) (denying intervention when applicants'

---

[5] In fact, so much so in regard to CD 9 and 18 that Putative Intervenors use mirror language in making their claims. The *Texas NAACP* Complaint states "CDs 9 and 18, both Black opportunity districts that were near optimum size, were unnecessarily changed." ECF. 1 ¶ 201. Putative Intervenors claim that CD 9, 18 and 30, "were all close to . . . optimal size" but then changed by adding new voters. ECF 91-1 (Intervenors' Ex. D) ¶ 2-3, 26.

[6] To the extent Putative Intervenors would argue that the Texas NAACP does not make enough of CDs 9, 18, or 30 in their challenge of C2193 (*but see*, *supra*, n. 4, 5), the fact remains that both parties challenge C2193 on the basis of vote dilution and intentional discrimination against Black voters. The tactical decisions made by Texas NAACP in proving those claims through the districts it chooses to focus on do not render the interests dissimilar with Putative Intervenors. *See, e.g., Bush v. Viterna,* 740 F.2d 350, 358 (5th Cir. 1984).

[7] *See* NAACP, *Gary Bledsoe*, https://naacp.org/people/gary-bledsoe (last visited Dec. 30, 2021).

7

counsel was also attorney for 36 class members).

While Putative Intervenors claim to offer a "vigorous and helpful supplement" to Texas NAACP's arguments, that is insufficient to overcome the presumption of adequate representation and can be accomplished through an amicus brief. *See Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984) (where would-be intervenor "merely underlines issues of law already raised by the primary parties," amicus status is most appropriate).

## II.   This Court Should Deny Applicants Permissive Intervention

Putative Intervenors also request that this Court grant them permissive intervention. Their motion, however, is not timely. It therefore fails to meet a threshold requisite of Rule 24(b)(1) and should be denied outright. However, even if that requirement were met, the existing parties already adequately represent whatever interests Putative Intervenors may have in this case. Their addition would provide no material benefit to the development of underlying factual issues, but it would prejudice Defendants and risk delays, confusion, and expense. Intervention should be denied.[8]

### A.   Applicants Fail to Meet the Threshold Requisites of Permissive Intervention

Putative Intervenors cannot satisfy Rule 24(b)(1)'s timeliness requirement. That alone precludes permissive intervention. In response, Putative Intervenors reference their argument on intervention as of right. *See* ECF 91 ¶ 27. But this fails for two reasons. First, as explained *supra*, Putative Intervenors' motion is not timely in any respect because Putative Intervenors knew about their stake in the litigation but chose to sit on their rights to the detriment of the existing parties. Second, even if this Court determined that their motion was timely for purposes of Rule 24(a)(2), this is not dispositive under Rule 24(b)(1). "Timeliness under mandatory intervention is evaluated

---

[8] "Denials of permissive intervention are only subject to reversal if extraordinary circumstances so require." *Graham v. Evangeline Par. Sch. Bd.*, 132 F. Appx 507, 514 (5th Cir. 2005) (per curiam). As such, this Court is well within its discretionary power to deny Putative Intervenors permissive intervention.

8

more leniently than under permissive intervention." *Rotstain v. Mendez*, 986 F.3d 931, 942 (5th Cir. 2021). Intervenors give no reason why, under the more exacting standard for permissive intervention, their motion is timely when it was filed after litigation was pending for two months, initial dispositive motions have been filed, and a scheduling order has been put in place.

### B. Applicants Do Not Meet Any Other Basis for Permissive Intervention

In any event, this Court should exercise its discretion and deny intervention. "When acting on a request for permissive intervention, a district court should consider, among other factors, whether the intervenors are adequately represented by other parties and whether they are likely to contribute significantly to the development of the underlying factual issues." *LULAC*, 884 F.2d at 189. If these factors counsel against intervention, then the court will often deny applicants' motion "even though . . . the requirements of Rule 24(b) are otherwise satisfied." *See Kneeland v. NCAA*, 806 F.2d 1285, 1289 (5th Cir. 1987); *see also NextEra Energy Capital Holdings, Inc. v. Walker*, 1:19-cv-626, 2020 WL 3580149, at *1 (W.D. Tex. Feb. 26, 2020) (denying intervention because movants were adequately represented, and their inclusion would not be of assistance to court.)

Putative Intervenors share the ultimate objective of the Texas NAACP—namely, the modification of Plan C2193—and there is no possible way a demonstration of adversity could be made here. *See LULAC*, 884 F.2d at 189. As explained above, Putative Intervenors are adequately represented by the Texas NAACP given that the organization is run by the same counsel they have chosen to represent them in their intervention attempt. And Putative Intervenors make no effort to explain how their intervention could assist in the development of the underlying factual issues in this case. After all, the *Texas NAACP* suit, and their counsel's role as the Texas NAACP president, should readily avail them of providing any assistance they *want* to provide as third-party witnesses; their appearance as plaintiffs provides no additional benefit beyond that.

Instead, adding Putative Intervenors as plaintiffs will serve only to "unduly delay" the orderly litigation of this case and needlessly prejudice Defendants and the other existing parties. Fed. R. Civ. P. 24(b)(3). As this Court recognized in its December 17 Order, the questions posed in this case require expedition. ECF 96. The Court therefore issued an accelerated trial schedule that will resolve the legality of the district maps before the start of the next Legislative Session. *Id.* The addition of four more parties threatens to undercut that objective. "Intervenors do not come alone—they bring along more issues to decide, more discovery requests," all of which makes disposition of the case more cumbersome. *South Carolina v. North Carolina*, 558 U.S. 256, 287 (2010) (Roberts, C.J., concurring).

As it stands, Defendants will need to take and respond to discovery from each plaintiff in nine consolidated cases, as well as their experts and fact witnesses. Each of these parties will file pleadings and motions, raise objections, offer arguments, question witnesses, and seek to enter their own evidence and testimony. In light of Putative Intervenors' close relationship with the Texas NAACP, Putative Intervenors have identified no basis that would justify complicating an already complex, crowded, and timed-pressed action. Permissive intervention is inappropriate.

## CONCLUSION

For the foregoing reasons, Putative Intervenors have failed to establish that they are entitled to intervention as of right or that the Court should grant permissive intervention. The Court should deny the Motion in its entirety.

| | |
|---|---|
| Date: December 29, 2021 | Respectfully submitted. |
| | |
| KEN PAXTON | /s/ Patrick K. Sweeten |
| Attorney General of Texas | PATRICK K. SWEETEN |
| | Deputy Attorney General for Special Litigation |
| BRENT WEBSTER | patrick.sweeten@oag.texas.gov |
| First Assistant Attorney General | Tex. State Bar No. 00798537 |
| | |
| | WILLIAM T. THOMPSON |
| OFFICE OF THE ATTORNEY GENERAL | Deputy Chief, Special Litigation Unit |
| P.O. Box 12548 (MC-009) | will.thompson@oag.texas.gov |
| Austin, Texas 78711-2548 | Tex. State Bar No. 24088531 |
| Tel.: (512) 463-2100 | |
| Fax: (512) 457-4410 | **COUNSEL FOR DEFENDANTS** |

### CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on December 29, 2021, and that all counsel of record were served by CM/ECF.

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN