**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*<br><br>*Plaintiffs,*<br>v.<br><br>GREG ABBOTT, *et al.*,<br><br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 3:21-cv-00259<br>[Lead Case] |
| TEXAS STATE CONFERENCE OF THE NAACP,<br><br>*Plaintiff,*<br>v.<br><br>GREG ABBOTT, *et al.*,<br><br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 1:21-cv-01006<br>[Consolidated Case] |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS TEXAS NAACP'S COMPLAINT**

## TABLE OF CONTENTS


Table of Contents ........ i

Index of Authorities ........ ii

Introduction ........ 1

Argument ........ 1

I. Texas NAACP Lacks Standing ........ 1

A. Texas NAACP Lacks Associational Standing ........ 2

B. Texas NAACP Lacks Organizational Standing ........ 4

II. Texas NAACP's Discriminatory Effects Claim Fails ........ 7

A. Texas NAACP's Coalition-District Theory Does Not Satisfy the First *Gingles* Precondition ........ 7

B. Texas NAACP Does Not Satisfy the Second *Gingles* Precondition ........ 7

III. Texas NAACP's Intentional Discrimination Claims Fail Because Its Allegations Show Partisan Motivation, Not Racial Discrimination ........ 8

Conclusion ........ 9

## INDEX OF AUTHORITIES

**Cases**

*Ala. Legis. Black Caucus v. Alabama*,
575 U.S. 254 (2015) .......... 2, 3, 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 1, 9

*Ass'n of Cmty. Orgs. for Reform Now v. Fowler*,
178 F.3d 350 (5th Cir. 1999) .......... 5

*Bartlett v. Strickland*,
556 U.S. 1 (2009) .......... 1, 6, 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 7

*Brnovich v. Democratic Nat'l Comm.*,
141 S. Ct. 2321 (2021) .......... 9

*Comcast Corp. v. National Association of African American-Owned Media*,
140 S. Ct. 1009 (2020) .......... 2, 7

*Cooper v. Harris*,
137 S. Ct. 1455 (2017) .......... 9

*Ctr. for Biological Diversity v. United States Envtl. Prot. Agency*,
937 F.3d 533 (5th Cir. 2019) .......... 2

*Disability Rights Wis., Inc. v. Walworth Cnty. Bd. of Supervisors*,
522 F.3d 796 (7th Cir. 2008) .......... 3

*Draper v. Healey*,
827 F.3d 1 (1st Cir. 2017) .......... 3

*El Paso County, Tex. v. Trump*,
982 F.3d 332 (5th Cir. 2020) .......... 6

*Gill v. Whitford*,
138 S. Ct. 1916 (2018) .......... 4

*Growe v. Emison*,
507 U.S. 25 (1993) .......... 7, 8

*Hunt v. Cromartie*,
526 U.S. 541 (1999) .......... 8

*Hunt v. Washington State Apple Advert. Comm'n*,
432 U.S. 333 (1977)....................................................................................................... 2

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
624 F.3d 1083 (9th Cir. 2010) ........................................................................................ 6

*Louisiana ACORN Fair Hous. v. LeBlanc*,
211 F.3d 298 (5th Cir. 2000) .......................................................................................... 6

*Miller v. Johnson*,
515 U.S. 900 (1995)................................................................................................... 8, 9

*Nat'l Treasury Employees Union v. United States*,
101 F.3d 1423 (D.C. Cir. 1996)....................................................................................... 5

*National Council of La Raza v. Cegavske*,
800 F.3d 1032 (9th Cir. 2015) ........................................................................................ 3

*Perez v. Abbott*,
267 F. Supp. 3d 750 (W.D. Tex. 2017)............................................................................ 4

*Perry v. Perez*,
565 U.S. 388 (2012)................................................................................................... 1, 7

*Rucho v. Common Cause*,
139 S. Ct. 2484 (2019)...................................................................................................... 8

*Shaw v. Reno*,
509 U.S. 630 (1993)........................................................................................................ 8

*Sierra Club v. Morton*,
405 U.S. 727 (1972)........................................................................................................ 5

*Simon v. E. Kentucky Welfare Rights Org.*,
426 U.S. 26 (1976)..................................................................................................... 1, 5

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009)................................................................................................ 1, 2, 4

*Voinovich v. Quilter*,
507 U.S. 146 (1993)........................................................................................................ 7

*Zimmerman v. City of Austin*,
881 F.3d 378 (5th Cir. 2018) .......................................................................................... 6

## INTRODUCTION

The Court should grant Defendants' Motion to Dismiss because Texas NAACP does not plausibly allege standing or any violation of federal law. In response, Texas NAACP stresses its "history of participating in state legislative and congressional redistricting litigation in Texas." ECF 107 at 4. But that does not alter the pleading rules that apply to every plaintiff in federal court.

Plaintiff's claims rest on a series of propositions that have been rejected by the Supreme Court. It seeks to establish associational standing without identifying an injured member. That violates *Summers v. Earth Island Institute*, 555 U.S. 488 (2009). It seeks to establish organizational standing based on its public-policy goals rather than any allegedly inhibited activity. That violates *Simon v. East Kentucky Welfare Rights Organization*, 426 U.S. 26 (1976). It argues that Section 2 of the Voting Rights Act ("VRA") mandate the creation of coalition districts. That violates *Bartlett v. Strickland*, 556 U.S. 1 (2009) and *Perry v. Perez*, 565 U.S. 388 (2012). Finally, it believes it can establish racially discriminatory intent without addressing an obvious alternative explanation. That violates *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). This Court should dismiss for want of jurisdiction or failure to state a claim.

## ARGUMENT

### I. Texas NAACP Lacks Standing

Texas NAACP does not have associational standing because it has not plausibly alleged that its members have standing to sue in their individual capacity. It lacks organizational standing because recitations of an organization's mission and typical activities, combined with allegations of diverting resources, do not plead an injury-in-fact. Its claims should be dismissed because it fails to establish it has standing to bring them.

### A. Texas NAACP Lacks Associational Standing

An association can sue on behalf of its members only if "its members would otherwise have standing to sue in their own right." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Thus, at least one of those members must have independently "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Ctr. for Biological Diversity v. U.S. EPA*, 937 F.3d 533, 536 (5th Cir. 2019).

Conceding that it has not identified a specific member who would have standing, Texas NAACP argued it need not do so at the pleading stage because "it seems highly likely that" it *could* identify an injured member at a later stage in the litigation. ECF 107 at 5. The Supreme Court has considered Plaintiff's approach. That is, it has considered whether an entity-plaintiff can establish standing based on "the organization's self-description of the activities of its members," and the "statistical probability that some of those members are threatened with concrete injury." *Summers*, 555 U.S. at 497. But the Court rejected "probabilistic standing" in favor of requiring associational plaintiffs "to identify members who have suffered the requisite harm," which should not be "a difficult task here, when so many thousands are alleged to have been harmed." *Id.* at 499.

Texas NAACP argues that this requirement should not apply at the pleading stage, but that contradicts *Comcast Corp. v. National Association of African American-Owned Media*, where the Supreme Court explained that "the essential elements of a claim remain constant through the life of a lawsuit." 140 S. Ct. 1009, 1014 (2020). "[T]he legal elements themselves do not change," even if "[w]hat a plaintiff must do to satisfy those elements may increase as a case progresses from complaint to trial." *Id.* "So, to determine what the plaintiff must plausibly allege at the outset of a lawsuit, we usually ask what the plaintiff must prove in the trial at its end." *Id.* Here, Texas NAACP does not dispute that it will have to eventually prove the identity of one of its member, and that he

or she sustained an injury-in-fact. Thus, Texas NAACP must plausibly allege the identity of an injured member in its complaint. Multiple courts of appeals have reached the same result. *See, e.g.*, *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2017) (Souter, J.); *Disability Rights Wis., Inc. v. Walworth Cnty. Bd. of Supervisors*, 522 F.3d 796, 804 (7th Cir. 2008).

Texas NAACP relies on *Alabama Legislative Black Caucus v. Alabama*, which it contends stands for the proposition that evidence similar to its own allegations are sufficient to demonstrate Article III standing. S*ee* ECF 107 at 5 (citing 575 U.S. 254, 270 (2015)). Not so. On the contrary, the Supreme Court determined that the plaintiff had not established standing on the record before it, but that the district court had prematurely *sua sponte* dismissed the plaintiff for lack of standing without affording it an opportunity to submit additional evidence. *See Ala. Leg. Black Caucus*, 575 U.S. at 271. There are no such concerns about notice or the opportunity to present evidence here. But the deficiency in standing remains. If anything, *Alabama Legislative Black Caucus* cuts in Defendants' favor, not against, and supports outright dismissal if Texas NAACP fails to amend its complaint and fix these deficiencies (if it can do so).

Texas NAACP also relies on dicta from *National Council of La Raza v. Cegavske*, 800 F.3d 1032 (9th Cir. 2015), that did not purport to resolve this issue. ECF 107 at 5. That case held that the plaintiffs had organizational standing, not associational standing. *See Nat'l Council of La Raza*, 800 F.3d at 1039–41. Indeed, the Ninth Circuit, uncertain of how to interpret *Summers*, simply noted that the plaintiffs there should have been granted leave to amend to fix any standing issue. *Id*. at 1041. Like *Alabama Legislative Black Caucus*, *National Council of La Raza* might support granting leave to amend. But it does not support denial of the motion to dismiss.

As previously explained, *see* ECF 84 at 3–4, even if Texas NAACP had identified a member, it would still lack standing because it does not allege that any relevant member intends

to vote in a relevant election. Arguing it need not include such allegations, Texas NAACP notes that "the only authority cited by Defendants are cases brought by *individual* plaintiffs—not organizations." ECF 107 at 7. That misses the point. Article III demands no less of associational plaintiffs than individual plaintiffs. *See* ECF 82 at 2. If a complaint would not establish standing for an individual member, then it does not establish standing for the association either.

Finally, Defendants previously explained that Texas NAACP lacks standing because it does not allege that it has members in each of the districts that it challenges. *See* ECF 82 at 4–5. Texas NAACP responds, without citation, that it "has branches throughout the state and 10,000 members . . . who live in areas that will be impacted by the redistricting and its discriminatory intent." ECF 107 at 7. The complaint does allege that Texas NAACP has branches "across the state" and members "registered to vote in Texas." *See* Complaint for Declaratory and Injunctive Relief, *Texas State Conference of NAACP v. Abbott*, No. 1:21-cv-1006, ECF 1 ¶ 18 (W.D. Tex. Nov. 5, 2021). But that does not establish whether any of those alleged members live in any of the challenged districts. Nor does it allow Texas NAACP to bring a statewide claim. As illustrated in Defendants' motion, the Supreme Court requires that redistricting claims be "district specific" and to proceed "district-by-district." ECF 82 at 4–5 (quoting *Gill v. Whitford*, 138 S. Ct. 1916, 1930 (2018) and *Ala. Legislative Black Caucus*, 575 U.S. at 262). Texas NAACP does not attempt to distinguish that precedent or offer contrary caselaw. *See* ECF 107 at 7–8.

**B. Texas NAACP Lacks Organizational Standing**

Texas NAACP also cannot establish organizational standing. It seeks to do so on two bases: that it has suffered an individual injury-in-fact, and that it is forced to divert resources in order to respond to the State's new electoral maps. Neither basis is valid.

First, Texas NAACP cannot establish organizational standing because the challenged laws "neither require nor forbid any action on the part" of the organization. *Summers*, 555 U.S. at 493.

Texas NAACP remains free to undertake all of its normal activities. *See* ECF 107 at 8–9 (listing aspects of the organization's activities and mission). It cites *Perez v. Abbott*, 267 F. Supp. 3d 750 (W.D. Tex. 2017), *aff'd in part, rev'd in part and remanded*, 138 S. Ct. 2305 (2018); *see* ECF 107 at 8, but that case shows how unprecedented Plaintiff's standing theory is. The *Perez* panel was "aware of no redistricting case in which an organizational plaintiff has based its standing on an injury to itself, as described in *Havens*." *Id.* at 772. And it found injury only because the challenged law "reduced [the plaintiff's] membership." *Id*. at 773. Here, by contrast, Texas NAACP does not claim that the new map will reduce its membership.

Instead, Texas NAACP claims organizational standing based on the assertion that "the State's redistricting plans are in direct conflict with Plaintiff's mission of achieving majority-minority coalition districts." ECF 107 at 9. But as Defendants already explained, "a showing that an organization's mission is in direct conflict with a defendant's conduct is insufficient, in and of itself, to confer standing on the organization to sue on its own behalf." ECF 82 at 6 (quoting *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 361 n.7 (5th Cir. 1999)). Texas NAACP offers no response on this point. Nor could it. The Supreme Court stresses that organizations, no matter how "dedicated to" a public-policy goal, can "not establish their standing simply on the basis of that goal." *Simon*, 426 U.S. at 39–40.

Texas NAACP's proposed rule would produce unprecedentedly broad standing. Any group could obtain standing by adopting a mission statement at odds with the law it wanted to challenge. For example, if a group decided to oppose "fiscal irresponsibility," it could, under Texas NAACP's theory, have standing to challenge any law that it thought wasted taxpayer dollars. But that is not how organizational standing works. "Individual persons cannot obtain judicial review of otherwise non-justiciable claims simply by incorporating, drafting a mission statement, and then suing on

behalf of the newly formed and extremely interested organization." *Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1429 (D.C. Cir. 1996). That the Texas NAACP is an established organization rather than a new one does not broaden its standing. *See Sierra Club v. Morton*, 405 U.S. 727, 739 (1972) ("[A] mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization 'adversely affected' or 'aggrieved.'").

Second, Texas NAACP argues that it has standing because it "will have to divert limited resources to combatting the consequences of the loss of political power of the communities it represents." ECF 107 at 9. As an initial matter, and as demonstrated in the motion to dismiss, this diversion-of-resources theory cannot suffice because the alleged diversion is not "in response to a reasonably certain injury imposed by the challenged law." ECF 82 at 5 (quoting *Zimmerman v. City of Austin*, 881 F.3d 378, 390 (5th Cir. 2018)). Texas NAACP does not dispute that it cannot assert a diversion-of-resources theory unless it "would have suffered some other injury if it had not diverted resources to counteracting the problem." *Id.* (quoting *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010)).

And even if Texas NAACP could proceed on this theory, it has "neither mentioned any specific projects" that will have to be put on hold nor "describe[d] in any detail" how it would have to "re-double efforts in the community to combat discrimination." *Louisiana ACORN Fair Hous. v. LeBlanc*, 211 F.3d 298, 305 (5th Cir. 2000). Indeed, it is not obvious that Texas NAACP's alleged diversion of resources differs from its typical allocation of those same resources. *See El Paso County v. Trump*, 982 F.3d 332, 344 (5th Cir. 2020) (holding that an "organization's reaction to the allegedly unlawful conduct must differ from its routine activities" to be considered an injury-in-fact). Here, Texas NAACP only alleges that it will continue with its normal advocacy efforts in

the face of a law it does not like. That does not support organizational standing.

## II. Texas NAACP's Discriminatory Effects Claim Fails

Even if Texas NAACP could establish standing, its claims would still fail on the merits.

### A. Texas NAACP's Coalition-District Theory Does Not Satisfy the First *Gingles* Precondition

Plaintiff's Section 2, coalition-district theory fails the first *Gingles* precondition as a matter of law. ECF 82 at 8–13. Texas NAACP attempts to distinguish *Bartlett*, 556 U.S. at 13, on the ground that it foreclosed crossover-district claims, not coalition-district claim. ECF 107 at 15–16. But Texas NAACP does not dispute that "*Bartlett*'s reasoning rejecting crossover districts applies with equal force to coalition districts." ECF 82 at 9. "There is a difference between a racial minority group's 'own choice' and the choice made by a coalition," but Texas NAACP asks this Court to ignore that difference, "contrary to the mandate of § 2." *Bartlett*, 556 U.S. at 14–15.

Defendants have also explained that the Supreme Court applied *Bartlett* to reject coalition districts in *Perry v. Perez*, 565 U.S. at 398–99. *See* ECF 82 at 12–13. Plaintiff responds that "[i[t is impossible to discern" whether the Court's rejection of the coalition-district theory was based on the absence of a "'basis' in law or in 'fact,'" ECF 107 at 16. Clearly, though, *Perez* was based on generally applicable legal principles. That is why the Court cited to *Bartlett*, which employed substantially the same logic. The Supreme Court was concerned with whether the district court had "followed the appropriate standards," not whether it found facts correctly. 565 U.S. at 399.

### B. Texas NAACP Does Not Satisfy the Second *Gingles* Precondition

The complaint does not plausibly allege minority-group cohesion because it does "not even attempt to allege facts to overcome the 'obvious alternative explanation' for [the alleged voting patterns on which it relies]: partisanship." ECF 82 at 13 (quoting *Twombly*, 550 U.S. at 567). Texas NAACP does not dispute that it has not alleged such facts. Instead, it argues it should not have to.

*See* ECF 107 at 17–18. But the burden of establishing cohesion is on the plaintiff. *See Growe v. Emison*, 507 U.S. 25, 42 (1993); *Voinovich v. Quilter*, 507 U.S. 146, 155–56 (1993). Partisan affiliation is not an affirmative defense to cohesion; it is an "obvious alternative explanation" that makes Texas NAACP's allegation of cohesion implausible. *Twombly*, 550 U.S. at 567; *see also Comcast*, 140 S. Ct. at 1014 ("[T]o determine what the plaintiff must plausibly allege at the outset of a lawsuit, we usually ask what the plaintiff must prove in the trial at its end.").

Texas NAACP's position is especially problematic given its coalition-district theory. Even assuming such a claim is cognizable, "proof of minority political cohesion is all the more essential" in cases where "dilution of the power of such an agglomerated political bloc is the basis for an alleged violation." *Growe*, 507 U.S. at 41. There is "quite obviously a higher-than-usual need for the second of the *Gingles* showings" in such cases. *Id*.

## III. Texas NAACP's Intentional Discrimination Claims Fail Because Its Allegations Show Partisan Motivation, Not Racial Discrimination

Texas NAACP brings an intentional-vote-dilution claim as well as a racial-gerrymandering claim. *See* ECF 1 ¶¶ 205–10, 220–30. Although those claims are "analytically distinct," *Shaw v. Reno*, 509 U.S. 630, 652 (1993), both require some level of discriminatory intent. Specifically, intentional-vote-dilution claims must allege that the State used redistricting "as a purposeful device" that was intended "to minimize or cancel out the voting potential of racial or ethnic minorities." *Miller v. Johnson*, 515 U.S. 900, 911 (1995). Racial-gerrymandering claims allege that race was the "predominant consideration in deciding to place a significant number of voters within or without a particular district." *Ala. Legis. Black Caucus*, 575 U.S. at 260. Texas NAACP has failed to plausibly allege discriminatory intent under either standard.

Texas NAACP's own pleadings lead to the inescapable conclusion that partisanship, not discrimination, was a driving force behind the redistricting decisions being challenged here. *See*

ECF 1 ¶¶ 111, 112, 121, 133, 168, 194, 199 (discussing redistricting in terms of the election of Democrats and Republicans). While partisan motivations may be unpopular in some quarters, *see, e.g.*, *Rucho v. Common Cause*, 139 S. Ct. 2484, 2509 (2019) (Kagan, J., dissenting), the Supreme Court is adamant that "a jurisdiction may engage in constitutional political gerrymandering, even if it so happens that the most loyal Democrats happen to be black Democrats and even if the State were *conscious* of that fact." *Hunt v. Cromartie*, 526 U.S. 541, 551 (1999). After all, "partisan motives are not the same as racial motives." *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2349 (2021). Although "the voting preferences of members of a racial group may make the former look like the latter," *id.*, it is the plaintiff's burden "to disentangle race from politics and prove that the former drove a district's lines," *Cooper v. Harris*, 137 S. Ct. 1455, 1473 (2017). Texas NAACP has not carried that burden.

Texas NAACP's final response is that this issue is "inappropriate for resolution by way of a motion to dismiss," ECF 107 at 20, but that ignores *Iqbal*, and is nonresponsive to Defendants' arguments. Each fact alleged in the complaint is, at least, equally consistent with partisanship as an "obvious alternative explanation" and, taken as a whole, the complaint does not plausibly suggest invidious racial discrimination. *Iqbal*, 556 U.S. at 682. Allowing such allegations to suffice would be especially inappropriate in light of the Supreme Court's frequent admonition that "the good faith of a state legislature must be presumed" in cases alleging intentional discrimination. *Miller*, 515 U.S. at 915.

## CONCLUSION

Defendants respectfully request that the Court grant their Motion to Dismiss and dismiss the claims brought against them by the Texas State Conference of the NAACP.

Date: December 29, 2021

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Respectfully submitted.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
Tex. State Bar No. 24088531

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on December 29, 2021, and that all counsel of record were served by CM/ECF.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN