UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| LULAC, *et al.*,<br><br>   *Plaintiffs,*<br><br>v.<br><br>GREG ABBOTT, in his official capacity as Governor of Texas, *et al.*,<br><br>   *Defendants.* | Case No.: 3:21-CV-00259-DCG-JES-JVB<br>[Lead Case] |
| ROY CHARLES BROOKS, *et al.*,<br><br>   *Plaintiffs*,<br><br>v.<br><br>GREG ABBOTT, in his official capacity as Governor of Texas, *et al.*,<br><br>   *Defendants.* | Case No.1-21-CV-00991-DCG-JES-JVB<br>[Consolidated Case] |

**BROOKS PLAINTIFFS' RESPONSE TO STATE DEFENDANTS' OBJECTIONS TO PRELIMINARY INJUNCTION EXHIBITS**

  The Court has taken the Defendants' objections to the Brooks Plaintiffs' preliminary injunction exhibits under advisement, carried them with the motion (which is set for hearing beginning January 25), and has invited the Brooks Plaintiffs to respond in the meantime. Dec. 21, 2021 Order. The Brooks Plaintiffs respond to the objections below, but reserve the right to raise additional responses at the hearing as presentation of evidence necessitates.

  The Court need not reach Defendants' specific objections because "at the preliminary injunction stage, the procedures in the district court are less formal, and the district court may rely on otherwise inadmissible evidence, including hearsay evidence," including "deposition

1

transcripts and affidavits." *Sierra Club, Lone Star Chapter v. FDIC*, 992 F.2d 545, 551 (5th Cir. 1993). Defendants' objections should be overruled on this basis alone.

**Exhibit 1: Declaration of Kel Seliger**

**Paragraphs 7-8**: Defendants object on the basis of speculation, relevance, and "falsity." "Falsity" is not a cognizable evidentiary objection. If Defendants believe Sen. Seliger's characterization of then-Attorney General Abbott's letter and of the facts he (as the 2011 and 2013 Redistricting Committee Chair) learned and knew are "false," they can proffer evidence to that effect. The Supreme Court has held that the historical context of an official action is relevant to its intent, *see Vill. of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266 (1977); *Abbott v. Perez*, 138 S. Ct. 2305, 2327 (2018). That is especially so because the Chair of the 2021 Committee was a committee member in 2011 and 2013, and the knowledge she gained through that process bears on her state of mind during the 2021 process. Moreover, as the then-Chair of the Committee, Sen. Seliger's knowledge about the information to which Committee members were made aware is not "speculation."

**Paragraph 9:** Sen. Seliger, who chaired the committees, is not speculating by testifying that committee members were aware that voting in Texas is racially polarized—something courts have repeatedly held. Nor is his statement vague; although Defendants profess confusion of the meaning of "racially polarized voting," Defendants routinely *defend* the legislature as acting because it had good reasons to believe voting in Texas is racially polarized. *See, e.g.*, *Abbott*, 138 S. Ct. at 2332 (agreeing with Texas that legislature had good reasons to believe Section 2 required drawing of CD35).

**Paragraph 10:** Sen. Huffman's statements are not being offered to prove the truth of the matter asserted—indeed, Sen. Seliger testifies that Sen. Huffman's statements are false. They are not,

therefore, hearsay. Her statements are being offered to show her pattern of pretextual justifications in the redistricting process. In any event, they are statements of her intent and motive and are thus a hearsay exception. Fed. R. Evid. 803(3).

**Paragraph 12:** Sen. Seliger's statement that it was "obvious to him" that the dismantling of SD10 violates the U.S. Constitution and the Voting Rights Act is not offered as a legal conclusion—this Court will draw its own legal conclusions—but rather shows his state of mind, and reflects the knowledge and information the Legislature had when voting to dismantle SD10. To the extent legislators had reason to believe dismantling SD10 would be unlawful, that fact is highly relevant to the ascertaining legislators' intent. Likewise, it is not "speculation"—Sen. Seliger is not speculating about his *belief* that the dismantling of SD10 was unlawful. And his position as Chair of the 2011 and 2013 committees provides the foundation for his—and other committee members—knowledge and beliefs. Moreover, the fact that a sitting Republican senator and former Chair of the Senate Redistricting Committee came to the conclusion that the dismantling of SD10 was unlawful racial discrimination is relevant to rebut Defendants' partisanship defense and is relevant to his observation of this colleague's actions.

## Exhibit 2: Declaration of Beverly Powell

**Paragraph 10 & 12:** Sen. Powell's declaration is not vague about which minority communities are cleaved apart; she attaches *maps* identifying them. Sen. Powell represents this community and has the personal knowledge and experience to identify the communities of interest she represents.

**Paragraph 14:** Sen. Powell's testimony that Sen. Huffman viewed each racial shading map she was shown, and did so for more than "a second," is relevant to 1) Sen,. Huffman's credibility, given that she denied looking at the maps during the Senate Floor Debate despite doing so, as Sen.

Powell testifies, and 2) her state of mind when she continued to draft plans cracking apart Tarrant County's minority population and voted in favor of doing so.

**Exhibit 3: Declaration of Garry Jones**

**Paragraph 14:** Same response as paragraph 14 to Sen. Powell's declaration

**Paragraphs 14 & 15:** Mr. Jones is the chief of staff to Sen. Powell and has personal knowledge of SD10 and the location of its minority population. The maps attached to his and Sen. Powell's declaration illustrate the minority population that is cleaved apart. His assertions are neither vague nor an improper opinion.

**Exhibit 3-E: September 16, 2021 Email from Garry Jones**

Defendants object that the email his hearsay. First, it is a business record of Sen. Powell's office. Fed. R. Evid. 803(6). Second, it is offered to show that its recipients received and were aware of its contents and is thus not hearsay. For the same reason, the statement that the dismantling of SD10 is racially discriminatory is not an improper opinion, because it is not offered to prove the ultimate issue, but rather to show the legislators' notice, knowledge, and awareness of the allegations regarding SD10 and the underlying data and evidence submitted along with the email.

**Exhibit 3-G: September 18, 2021 Email to All Senators Regarding SD10**

Same response as Ex. 3-E.

**Exhibit 3-J: Agenda of September 24, 2021 Redistricting Committee Meeting**

Public statements submitted to the Legislature and made part of the legislative record show the Legislature's awareness of those statements, which bears on their state of mind when they make legislative choices. Indeed, Sen. Huffman said that all public comments were being read and "tak[en] to heart." Ex. 14 at 4, 19. Individual statements may fall within various hearsay exceptions, which can be addressed as the need arises during the hearing.

4

**Exhibit 3-K: September 16, 2021 Letter from Sen. Powell**

Same response as Exs. 3-J and 3-E.

**Exhibit 3-L and 3-M: Emails to House Members**

Same response as Exs. 3-J and 3-E.

**Exhibits 4 & 4-A: Rick Svatora Declaration and Handwritten Notes**

Mr. Svatora's notes—taken *while* Mr. Opperman made the recorded statement—fall within several hearsay exceptions. First, it is a statement of Mr. Opperman's "then-existing state of mind" and "intent" with respect to SD10. Fed. R. Evid. 803(3). Second, it is a present sense impression of the meeting, made while Mr. Svatora perceived it. Fed. R. Evid. 803(1). Third, it is a record of a regularly conducted activity. Defendants seize on the fact that Mr. Svatora takes handwritten notes in "important" meetings, but attending "important" meetings is his job, and keeping notes of them is his practice. The fact that he does not take notes during unimportant conversations—or does not take notes during *every* meeting—does not call into question the veracity of his notes during important meetings, which he regularly takes. They are admissible under Fed. R. Evid. 803(6). In any event, the statement ended up being false—SD10 was substantially changed—so it would not in any event be hearsay.

**Exhibit 5: Chris Turner Declaration**

**Paragraphs 5-9:** Defendants object that Rep. Turner's testimony regarding the departures from the procedural norm are irrelevant because redistricting legislation is not ordinary. But the departures to which Rep. Turner testifies apply to the ordinary redistricting process, as evidenced by even the 2013 process—the legislative history of which is part of the record of this case—in which resource witnesses and expert witnesses testified to the committees. The Supreme Court's *Arlington Heights* test makes this testimony particularly relevant. Rep. Turner is a member of the

5

redistricting committee and an experienced legislator, he has the personal knowledge to discuss legislative process.

**Paragraphs 7-9, 10-11:** Rep. Turner's statements as a legislator on the redistricting committee are relevant to the Court's *Arlington Heights* analysis and his experience as a committee member and legislative leader provides the foundation for him to discuss concepts that committee members know—cracking, crossover districts, minority-preferred candidates, *etc.* Rep. Turner's relaying of Chair Hunter's refusal to allow expert and resource witness testimony, and his statement that expert witnesses could have the same 3 minutes to testify as the public, are admissible as then-existing state of mind, such as motive and intent, of Chair Hunter. Fed. R. Evid 803(3). The requests of members to have such witnesses is not offered for the truth of the matter asserted (*i.e.*, whether or not they truly wanted to hear from expert or resource witnesses) but to show that the requests *were made* and rejected by Chair Hunter.

### Exhibits 6 and 6-A-C: Mark Gaber Declaration and 2017 Emails

Ms. Mackin's knowledge and familiarity with the density and location of Tarrant County's minority population is highly relevant to her state of mind as she drew the senate plan that fractured Tarrant County's minority population, and directly relevant to rebut Defendants' defense that racial shading was not displayed on the computer screen as redistricting was being conducted.

### Exhibit 6-D: April 18, 2013 Letter from then-Attorney General Abbott

The letter is relevant to show the historical background of the decision-making process under *Arlington Heights* as well as the sender's and recipient's awareness that the dismantling of SD10 was ruled to be intentionally discriminatory. The letter is also relevant to show the Legislature's strategy of following Court orders when intending to remedy intentional discrimination, the opposite strategy employed here.

6

**Exhibit 6-E-H: 2013 Senate Proceedings**

The legislative record of the 2013 senate proceedings—in which the benchmark SD10 was adopted after being ordered in place by courts to remedy intentional discrimination—is relevant to the Legislature's intent. *See Arlington Heights*, 429 U.S. at 266; *Abbott*, 138 S. Ct. at 2327. It is also relevant to show the knowledge and state of mind of the participants, including Sen. Huffman, who was a committee member during the 2011 and 2013 events, and who has acknowledged reading the court decisions arising from those events.

**Exhibit 7: Declaration of Matt Barreto**

Defendants object that the declaration is unsigned, but this was an error that has been corrected. *See* Ex. 44. Defendants object to the reliability of the report—presumably because of the missing signature—but that has been resolved. Defendants object to "analytical gaps," which they briefly say are the absence of analysis of primary elections (which are irrelevant to the intent of the Legislature in dismantling minorities' ability to elect their preferred *general* election candidates) and the absence of data about Asian Americans. These objections are misplaced, but the Court's scheduling order permits Defendants to file a *Daubert* motion, which is the proper vehicle to raise their purported "analytical gap" objections.

## CONCLUSION

Defendants objections should be overruled.

January 4, 2022                                      Respectfully submitted,

                                                      */s/ Chad W. Dunn*
                                                     Chad W. Dunn (Tex. Bar No. 24036507)
                                                     Brazil & Dunn
                                                     4407 Bee Caves Road
                                                     Building 1, Ste. 111
                                                     Austin, TX 78746
                                                     (512) 717-9822
                                                     chad@brazilanddunn.com

        Mark P. Gaber*
        Mark P. Gaber PLLC
        P.O. Box 34481
        Washington, DC 20043
        (715) 482-4066
        mark@markgaber.com

        Jesse Gaines* (Tex. Bar. No. 07570800)
        P.O. Box 50093
        Fort Worth, TX 76105
        817-714-9988
        gainesjesse@ymail.com

        *Admitted *pro hac vice*

        *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that all counsel of record were served a copy of the foregoing this 4th day of January, 2022, via the Court's CM/ECF system.

        */s/ Chad W. Dunn*
        Chad W. Dunn