UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**LEAGUE OF UNITED LATIN AMERICAN
CITIZENS**, et al.,

*Plaintiffs,*

V.

No. EP:21-cv-259-DCG-JES-JVB
[Lead Case]

**GREG ABBOTT,** in his Official Capacity as
Governor of the State Texas; et al.,

*Defendants;*

---

**DAMON JAMES WILSON**, for himself
and on behalf of all others similarly situated,

*Plaintiff,*

V.

No. 1:21-cv-00943-RP-JES-JVB
[Consolidated Case]

**THE STATE OF TEXAS**; et al.,

*Defendants*

**PLAINTIFF WILSON'S RESPONSE IN OPPOSITION TO**

**DEFENDANTS' MOTION TO STRIKE AND**

**SECOND MOTION TO DISMISS**

Richard Gladden
Texas Bar No. 07991330
1204 West University Dr., Suite 307
Denton, Texas 76201
940/323-9300 (voice)
940/539-0093 (facsimile)
richscot1@hotmail.com (email)
*Attorney-in-Charge for Plaintiff
Damon James Wilson*

January 11, 2022

## TABLE OF CONTENTS

<u>**Page**</u>

Table of Contents……………………………………………………………...  i

Index of Authorities……………………………………………………………...  iii

I. Introduction...…………………………………………………………… 1

II.  Response in Opposition to Defendants' Motion to Strike……………………..  2

III. Standards of Review Applicable to Defendants' Motion to Dismiss…………..  3

    a)  Dismissal under Rule 12(b)(1)……………………………………....... 4

    b)  Dismissal under Rule 12(b)(6)…………………………………………. 5

IV. The Defendants' Asserted Grounds for Dismissal…………………………..  6

V.  Argument…………………………………………………………………… 8

    1)  ***The Plaintiff has Standing because he has Plausibly Alleged an "Injury in Fact."***
        ........................................................................................................ 8

    2)  ***The Constitutional Guarantees to Equal Representation Provided by Article I, §2 of the U.S. Constitution and §2 of the Fourteenth Amendment to the U.S. Constitution are Legally "Cognizable" Rights held by Persons, Including Prison Inmates Such as Plaintiff, Who are Ineligible to Vote under State Laws.***
        …………………………………………………… 11

    3)  ***The Plaintiff has Standing because he has Plausibly Alleged an Injury that is "Fairly Traceable" to the Challenged Action of Defendants, and the Harm Claimed by Plaintiff is Capable of "Redress" by this Court.***
        ………………………………………………….. 14

    4)  ***"Sovereign Immunity" held by Defendant Governor Abbott and Defendant Secretary of State Scott under the Eleventh Amendment to the U.S. Constitution Does Not Deprive the Court of Jurisdiction.***
        …………………………………………….. 15

    5)  ***"Legislative Immunity" held by Defendant Speaker Phelan and Defendant Lieutenant Governor Dan Patrick.***
        …………………………………………………… 16

**Page**

6) *Article I, §2 of the U.S. Constitution and §2 of the Fourteenth Amendment to the U.S. Constitution Apply to "Intrastate" Electoral Districting for Members of the U.S. House of Representatives.*
…………………………………… 16

7) *The "Legal Fiction" Applied by Defendants Treats Prison Inmates Differently, in Relation to Non-Prison Inmates, for Purposes of Determining Equal and Fair Representation in the U.S. House of Representatives.*
………………………………………………….. 17

8) *The "As Nearly as Practicable" and "Good Faith" Standards Established for Equal Representation in* Karcher v. Daggett, *462 U.S. 725, 730 (1983), Applies to Plaintiff's Claims, Not the "Rational Basis" and "Arbitrary and Capricious" Standards Asserted by Defendant.*
……………………………………….. 17

9) *The Merit of Plaintiff's Challenge to Defendants' "Legal Fiction" Depends on Where Plaintiff as a Constitutional Matter must be Deemed an "Inhabitant" on "Census Day" (April 1, 2020).*
………………………………… 19

10) *The Framers' Manifest "Intentions" When they Adopted the Federal Constitutional Provisions Invoked by Plaintiff are Relevant to the Merits of Plaintiff's Claims."*
………………………………………………….. 20

Prayer………………………………………………….............. 21

Certificate of Compliance…………………………………………… 21

Certificate of Service…………………………………………........ 21

## INDEX OF AUTHORITIES

**Cases:**

*Ashcroft v. Iqbal*, 556 U.S. 652 (2009)…………………………………… 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)………………………… 5

*Benton v. United States*, 960 F.2d 19 (5th Cir. 1992)……………………… 4

*Bowsher v. Synar*, 478 U.S. 714 (1986)…………………………………… 20

**Page**

*Burns v. Richardson*, 384 U.S. 73 (1966)……………………………………………….. 12, 18

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)……………………………….  9

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000)……………... 5

*Daniels v. JP Morgan Chase Bank*, 574 Fed. Appx. 337 (5th Cir. June 23, 2014)(not designated for publication).
……………………………………………….. 2

*Dept. of Commerce v. New York*, --- U.S. ---, 139 S. Ct. 2551 (2019)…………….  9

*District of Columbia v. U.S. Dep't of Com.*, 789 F. Supp. 1179 (D.D.C. 1992)…...  12

*Duarte ex rel. Duarte v. City of Lewisville*, 759 F.3d 514 (5th Cir. 2014)……………   4

*Evenwel v. Abbott*, 578 U.S. ---, 136 S. Ct. 720 (2016)…………………………… 12-14, 16, 19

*Ex Parte Young*, 209 U. S. 123 (1908)…………………………………………… 15

*Fletcher v. Lamone*, 831 F. Supp. 2d 887 (D. Md. 2011)…………………………  12

*Franklin v. Massachusetts*, 505 U.S. 788 (1992)…………………….....................   20

*Karcher v. Daggett*, 462 U.S. 725 (1983)……………………………………….. 7, 17-19

*Leatherman v. Tarrant Co. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993).
……………………………………………………………….. 5

*Mahan v. Howell*, 410 U.S. 315 (1973)…………………………………………… 18

*Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169 (5th Cir. 1994)………………… 4

*Paterson v. Weinberger*, 644 F.2d 521 (5th Cir. 1998)……………………………. 5

*Perez v. Texas*, No. 5:11-cv-00360-OLG (W. D. Tex.)…………………………… 13, 14

*People's Nat'l Bank v. Office of the Comptroller of the Currency of the U.S.*, 362 F.3d 333 (5th Cir. 2004)
………………………………………………….. 4

**Page**

*Pierre v. Vasquez*, 2022 WL 68970 (5th Cir. Jan. 6, 2022)(not designated for publication).
.................................................................... 3, 4

*Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001)............................... 4

*Reynolds v. Sims*, 377 U.S. 533 (1964)............................................... 12

*Sims v. Young*, 556 F.2d 732 (5th Cir. 1977)......................................... 3

*Tellabs v. Makor Issues & Rights*, 551 U.S. 308 (2007)............................... 5

*United States v. Carmack*, 329 U.S. 230 (1946)...................................... 19

*Wesberry v. Sanders*, 376 U.S. 1 (1964)............................................. 18, 19

*Whole Woman's Health v. Jackson*, --- U.S. ---, 142 S. Ct. 522 (2021)............... 15

**Statutes, Codes, Rules, and Constitutional Provisions:**

Rule 12(b), Federal Rules of Civil Procedure.......................................... 1-6, 11

Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure.............................. 1, 2

Local Rule CV-7, Rules of the United States District Court for the Western District of Texas.
.................................................................... 1, 21

Article I, § 2, U.S. Constitution...................................................... 7, 11, 16, 18, 20

Section 2, Fourteenth Amendment to the U.S. Constitution............................. 7, 11, 16, 20

The Equal Protection Clause, Fourteenth Amendment to the U.S. Constitution......... 14, 17

**Other Sources:**

BLACK'S LAW DICTIONARY (6th ed. 1990)............................................ 19

Cong. Globe, 39th Cong., 1st Sess. (1866)........................................... 19, 20

Wright & Miller, *Federal Practice and Procedure* (3d ed. 2004)...................... 5

*****

**PLAINTIFF WILSON'S RESPONSE IN OPPOSITION TO**

**DEFENDANTS' MOTION TO STRIKE AND SECOND MOTION TO DISMISS**

COMES NOW Damon James Wilson, Plaintiff in the above-referenced consolidated case, and, pursuant to Rule 12 of the Federal Rules of Civil Procedure, and Local Rule CV-7(d)(2) of the U.S. District Court for the Western District of Texas, timely files this *Response in Opposition to Defendants' Motion to Strike and Second Motion to Dismiss* (ECF No. 112), and in this connection would respectfully show unto the Court as follows:

## I.

## INTRODUCTION

On November 29, 2021, the Defendants filed their first motion to dismiss Plaintiff's original complaint (ECF No. 44). Four days later, on December 3, 2021, without receiving a response from Plaintiff to Defendants' motion to dismiss, the Court granted Defendants' motion without prejudice based solely on its conclusion that Plaintiff's original complaint did not plausibly allege an "injury in fact" (ECF No. 63).

On December 5, 2021, Plaintiff filed an objection to the Court's order of dismissal on the ground that its action contravened Local Rule CV-7(d)(2) of the Rules of the U.S. District Court for the Western District of Texas ("Local Rule")("A response to [a motion other than one pertaining to discovery or case management] shall be filed not later than 14 days after the filing of the motion.")(ECF No. 64). The following day, December 6, 2021, the Court entered a "text" order overruling Plaintiff's objection and denying Plaintiff's request for reconsideration of the order of dismissal (Docket Entry).

On December 13, 2021, in accordance with Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure ("Rule 15(a)(1)(B)"), and within 21 days after Defendants filed their first motion

to dismiss, Plaintiff filed his first amended complaint without leave (ECF No. 86). On December 27, 2021, Defendants filed, in a single pleading, a motion to strike Plaintiff's first amended complaint, and in the alternative, a second motion to dismiss (ECF No. 112). As grounds in support of their motion to strike Defendants assert "Plaintiff ha[d] no basis or right under applicable federal rules, binding precedent, or the Local Rules of the Western District to amend without leave under the circumstances."[1] In their second motion to dismiss Defendant essentially reprised the grounds stated in their first motion to dismiss as filed on November 29, 2021 (ECF No. 44). For the reasons stated below Defendants' motion to strike and their second motion to dismiss must be denied.

## II.

## RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE

As grounds in support of their motion to strike Plaintiff's first amended complaint Defendants assert "Plaintiff has no basis or right under applicable federal rules, binding precedent, or the Local Rules of the Western District to amend without leave under the circumstances."[2] As amended in 2009, Rule 15(a)(1)(B) provides that Plaintiff had "the right to amend once as a matter of course" and without leave until "21 days after service of a motion under Rule 12(b)." *See also*, Advisory Committee Note on 2009 Amendment to Rule 15; *Daniels v. JP Morgan Chase Bank*, 574 Fed. Appx. 337, 338-339 (5th Cir. June 23, 2014)(not designated for publication). The Defendants served Plaintiff with and filed their first motion to dismiss on November 29, 2021 (ECF No. 44). The Plaintiff's first amended complaint was filed on December 13, 2021 (ECF No. 86). The Defendants' motion to strike is without merit and must be denied.

---

[1] *Defendants' Motion to Strike and Second Motion to Dismiss*, 1, 4 (ECF No. 112)(hereinafter "Defendants' Second Motion to Dismiss")
[2] *Ibid.*

# III.

## STANDARDS OF REVIEW APPLICABLE TO DEFENDANTS'

## MOTIONS TO DISMISS

The Defendants seek dismissal both on the ground that the Court is without "subject matter jurisdiction,"[3] and on the ground that Plaintiff's Original Complaint "fails to state a claim upon which relief can be granted."[4] Under Fifth Circuit precedent the sufficiency of a plaintiff's complaint under Rule 12(b)(1) is generally measured "by the same standard" that applies to a determine the sufficiency of a complaint under Rule 12(b)(6). *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992).

However, notwithstanding the fact that the sufficiency of a plaintiff's complaint under Rule 12(b)(1) is generally measured "by the same standard" that applies to a determine the sufficiency of a complaint under Rule 12(b)(6), the Fifth Circuit has repeatedly emphasized, and has reiterated very recently, one analytical distinction that requires different treatment between these two types of motions.  The question of whether a plaintiff has adequately alleged an "injury in fact" for purposes of determining "standing" under Rule 12(b)(1) is conceptually distinct from whether the plaintiff's allegations "plausibly" state a claim for relief under Rule 12(b)(6).[5]  In other words, a plaintiff's "standing in no way depends on the merits of the plaintiff's claims,"[6] and a plaintiff's "standing" consequently does not depend on, and is not governed by, whether under Rule 12(b)(6) the plaintiff has "plausibly" alleged (or has plausibly "stated") a claim in relation to the "ultimate merits" of his claims. It is therefore reversible error to "conflate" an

---

[3] Fed.R.Civ.P. 12(b)(1)(hereafter "Rule 12(b)(1)").
[4] Fed.R.Civ.P. 12(b)(6)(hereafter "Rule 12(b)(6)").
[5] *Pierre v. Vasquez*, 2022 WL 68970, *2-3 (5th Cir. Jan. 6, 2022)(not designated for publication); *Sims v. Young*, 556 F.2d 732, 734 (5th Cir. 1977)(ruling a plaintiff who has a "personal stake in the outcome" has "certainly" satisfied he "injury in fact" requirement for "standing" even if his claims "do not rise to the level" of a constitutional violation on the merits).
[6] *Pierre v. Vasquez*, *supra*, 2022 WL 68970, at *2, *quoting Warth v. Seldin*, 422 U.S. 490, 500 (1975).

assessment of "the merits" of a plaintiff's claims with the distinct inquiry of whether the plaintiff has alleged an "injury in fact" or has otherwise alleged "standing."[7] Having noted this analytical distinction between the treatment required for motions under Rule 12(b)(1) and motions under Rule 12(b)(6), the Plaintiff has set out below the standards that apply to each type of motion.

### A)  *Dismissal under Rule 12(b)(1).*

A motion to dismiss under Federal Rule 12(b)(1), including one that urges a plaintiff does not have "standing" to bring a claim for relief, operates to test the jurisdiction of the court. Dismissal should not be granted unless it appears certain that there is no set of circumstances that would entitle the Plaintiff to relief. *Benton v. United States*, *supra*, 960 F.2d at 21. Federal courts are courts of limited jurisdiction; that is, without jurisdiction conferred by statute, federal courts lack the power to adjudicate claims. *People's Nat'l Bank v. Office of the Comptroller of the Currency of the U.S.*, 362 F.3d 333, 336 (5th Cir. 2004). A motion to dismiss pursuant to Rule 12(b)(1) must be considered before any other challenge because a court must have jurisdiction before determining the validity of a claim. *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994). When considering a motion to dismiss for lack of subject matter jurisdiction, the court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The plaintiff bears the burden of proof that jurisdiction does in fact exist when jurisdictional facts are controverted. *Id.* However, when a motion to dismiss for lack of standing is based on the complaint alone, the court is required to merely decide whether the allegations in the complaint,

---

[7] *Pierre v. Vasquez*, *supra*, 2022 WL 68970, at *4 (Oldham, J., concurring); *Duarte ex rel. Duarte v. City of Lewisville*, 759 F.3d 514, 520 (5th Cir. 2014) ("[T]he district court erroneously granted summary judgment for lack of standing because it conflated the actual-injury inquiry for standing purposes with the underlying merits of the [plaintiffs'] constitutional claims.").

presumed to be true, sufficiently state a basis for subject matter jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1998).

**B)** *Dismissal under Rule 12(b)(6).*

Motions to dismiss for failure to state a claim under Rule 12(b)(6) are viewed with disfavor and are seldom granted. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The District Court must "accept all factual allegations in the complaint as true," *Leatherman v. Tarrant Co. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); and the Court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs v. Makor Issues & Rights*, 551 U.S. 308, 323 (2007), *citing* 5B Wright & Miller, *Federal Practice and Procedure*, § 1357 (3d ed. 2004 and Supp. 2007).

Prior Fifth Circuit precedent applying a "heightened pleading requirement," whereby a plaintiff was once required to plead "specific facts" in an original complaint to avoid dismissal under Rule 12(b)(6), was condemned by the United States Supreme Court in *Leatherman v. Tarrant County Narcotics Coordination & Intelligence Unit*, 507 U.S. 163, 168 (1993). Nonetheless, factual allegations "must be enough to raise a right to relief above the speculation level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also*, *id.*, 550 U.S. at 569 n. 14 (distinguishing *Leatherman*, *supra*). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 652, 678 (2009). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.*

## IV.

## THE DEFENDANTS' ASSERTED GROUNDS

## FOR DISMISSAL

The Defendants contend Plaintiffs' claims must be dismissed under **Rule 12(b)(1)(lack of "subject matter jurisdiction")** on the grounds that:

a) The Plaintiff lacks standing because he has not plausibly alleged an "injury in fact"[8] that is "fairly traceable" to the challenged action of Defendants[9] which is likely to be "redressed" by the equitable relief he seeks;[10]

b) "Sovereign immunity" held by Defendant Governor Abbott and Defendant Secretary of State Scott under the Eleventh Amendment to the U.S. Constitution deprives the Court of jurisdiction;[11] and,

c) "Legislative immunity" held by Defendant Speaker Phelan and Defendant Lieutenant Governor Dan Patrick deprives the Court of jurisdiction.[12]

The Defendants also contend that Plaintiff's claims must be dismissed under **Rule 12(b)(6)("failure to state a claim")** on the grounds that Plaintiff's claims, as alleged, "would fail on the merits" because:

---

[8] *Defendants' Second Motion to Dismiss*, 6-9.
[9] *Id.*, 14-15.
[10] *Ibid.*
[11] *Id.*, 12-14.
[12] *Id.*, 14-15.

d)  Article I, §2 of the U.S. Constitution and §2 of the Fourteenth Amendment to the U.S. Constitution do not apply to "intrastate" electoral districting for Members of the U.S. House of Representatives;[13]

e)  The constitutional guarantees to equal representation provided by Article I, §2 of the U.S. Constitution and §2 of the Fourteenth Amendment to the U.S. Constitution are not legally "cognizable" rights held by persons who are ineligible to vote under state laws;[14]

f)  The "legal fiction" applied by Defendants does not treat prison inmates differently, in relation to non-prison inmates, for purposes of determining equal and fair representation in the U.S. House of Representatives;[15]

g)  The merit of Plaintiff's challenge to Defendants' "legal fiction" does not depend on where Plaintiff as a constitutional matter must be deemed an "inhabitant" on "Census Day" (April 1, 2020), but instead depends on the location of where Plaintiff is currently confined.[16]

h)  A "rational basis" standard, and not the "as nearly as practicable" and "good faith" standards established for equal representation in *Karcher v. Daggett*, 462 U.S. 725, 730 (1983), applies to Plaintiff's claims; and the "legal fiction" applied by Defendants is both "rational" and not "arbitrary";[17] and finally,

i)  The Framers' manifest "intentions" when they adopted the federal constitutional provisions upon which Plaintiff relies are irrelevant because the Framers' intentions "are not the law."[18]

---

[13] *Defendants' Second Motion to Dismiss*, 9-10.
[14] *Id.*, 9-12.
[15] *Id.*, 10.
[16] *Id.*, 3.
[17] *Id.*, 10-11.
[18] *Id.*, 11-12.

# V.

## ARGUMENT

1) ***The Plaintiff has Standing Because he has a "Personal Stake in the Outcome" and Because he has Plausibly Alleged an "Injury in Fact."***[19]

In its prior order of dismissal the Court concluded Plaintiff's original complaint failed to sufficiently allege facts that "explained why" his "ability to influence or benefit from federal policy is any less than it would be if he were considered a resident of the district where he is domiciled."[20] Additionally, turning to Plaintiff's factual allegation that the State's policy "has adversely affected . . . the responsivity of the U.S. Representative who would otherwise serve as Plaintiff's duly elected Member of Congress," the Court, "accepting this [factual allegation] as true," nonetheless deemed this allegation as "too speculative to support an injury-in-fact."[21]

In his first amended complaint Plaintiff has more particularly "explained why" his "ability to influence or benefit from federal policy" is "less" than it would be if he were considered a resident of the district where he is domiciled. *See Plaintiff's First Amended Complaint*, pp. 14-18, ¶¶ 10-14 (ECF No. 86)(filed Dec. 13, 2021).  With regard to the Court's prior conclusion that Plaintiff's allegation is "too speculative to support an injury-in-fact" (insofar as he has alleged Defendants' legal fiction "has adversely affected and will adversely affect the responsivity of the U.S. Representative who would otherwise serve as Plaintiff's duly elected Member of Congress");[22] Plaintiff in his first amended complaint has more particularly alleged the grounds upon which he asserts an "injury in fact" attributable to Defendants' legal fiction. *See Plaintiff's First Amended Complaint*, p. 17, ¶ 13 (ECF N. 86).

---

[19] *Defendants' Second Motion to Dismiss*, 6-9.
[20] *District Court's Order Granting Defendants' First Motion to Dismiss*, 2.
[21] *Id.,* 2-3.
[22] *Ibid.*

The Defendants have invoked the Supreme Court's decision in *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) in support of their argument that Plaintiff does not have standing. However, the legal standing claimed by Plaintiff does not rest on "mere speculation" concerning the decisions of the congressional staff of a U.S. Representative who would represent him in CD30, or on mere speculation about the decisions made by the actual U.S. Representative who would represent Plaintiff in CD30. Rather, as the Supreme Court ruled in a similar context when clarifying its earlier decision in *Clapper v. Amnesty Int'l USA*, *supra,* Plaintiff contends he may adequately allege an "injury in fact," and thereby demonstrate standing, by plausibly describing a "predictable effect" that Defendants' conduct would have on the decisions made by third-parties. *See*, *Dept. of Commerce v. New York*, --- U.S. ---, 139 S. Ct. 2551, 2566 (2019), *See also, ibid*. (finding standing existed where federal census undercount was alleged to be "attributable at least in part to [third-party] noncitizens' reluctance to answer a citizenship question"). The "third-party" in this case, as alleged by Plaintiff, is the U.S. Representative who would represent Plaintiff's domicile in the U.S. House of Representatives and his or her congressional staff. Whatever may be the ultimate merits of Plaintiff's claim on this point, Plaintiff has "plausibly alleged" Defendants' false assignment to a congressional district wherein he has never been an "inhabitant" would have a "predicable effect," *i.e.*, a diminution of the responsivity towards Plaintiff of the U.S. Representative elected to represent him at the location of his permanent residence.

The Defendants' motion to dismiss is confined to the face of Plaintiff's first amended complaint, and Defendants have not adverted to any relevant testimony or evidence that is extraneous to Plaintiff's first amended complaint in support of their motion to dismiss. In contrast Plaintiff has alleged, and has attached to his first amended complaint an affidavit

wherein he states, *inter alia*, that the voting record of U.S. Representatives who have been or would be elected to Congress from what is now Congressional District 13, discloses "nothing short of outright hostility to the public policy objectives" he holds, as a permanent residence in Grand Prairie, Texas, within Congressional District 30 (CD30").[23] Furthermore, Plaintiff in his first amended complaint has referred to extensive academic research that has concluded the particular location of a person's residence, as reported by state authorities, dramatically affects adversely the responsiveness of a U.S. Representative to any communication he or she receives.[24] Finally, Plaintiff in his first amended complaint alleges Defendants' legal fiction, which falsely classifies him as a permanent resident of Congressional District 13 ("CD13") rather than a permanent resident of CD30, would diminish the scope and efficacy of communications he receives from the Representative who would be elected to represent him as a constituent of CD30.[25] In connection with the latter allegation, Plaintiff asserts federal statutory law, which regulates the "franking" privileges of a U.S. Representative, limits communications sent via the U.S. mail by a U.S. Representative based on where a state has officially recognized a person to be an "inhabitant" for congressional redistricting purposes. In this way, Plaintiff alleges, Defendants' legal fiction prevents him from receiving full information from his U.S. Representative in CD30 (as would be provided to other constituents who permanently reside in CD30 but for Defendants' legal fiction), upon which Plaintiff could then express his public policy opinions to his Representative, and thereby acquire a response to those opinions from his Representative.

---

[23] *Plaintiff's First Amended Complaint*, p. 14, ¶ 10 (ECF No. 86); and *id.*, "Exhibit A, appended thereto, at p. 4.
[24] *Id.*, p. 15-16, ¶ 12 and n. 1.
[25] *Id.* p. 17-18, ¶ 14.

The Plaintiff respectfully submits that the Court, when it previously concluded Plaintiff lacks standing due to his failure to allege an "injury in fact," erroneously "conflated" the standing inquiry under Rule 12(b)(1) with the ultimate merits of his claims. The allegations in Plaintiff's first amended complaint adequately describe "concrete" injuries, that are "particularized" to Plaintiff, and which are "imminent" because Defendants persist in their assertion that they may arbitrarily declare where a person permanently resides, for congressional redistricting purposes, regardless of information which establishes where the person is an "inhabitant."

2) ***The Constitutional Guarantees to Equal Representation Provided by Article I, §2 of the U.S. Constitution and §2 of the Fourteenth Amendment to the U.S. Constitution are Legally "Cognizable" Rights held by Persons, Including Prison Inmates Such as Plaintiff, Who are Ineligible to Vote under State Laws***.[26]

In its prior order of dismissal the Court ruled Plaintiff's original complaint was deficient "[b]ecause [Plaintiff] cannot vote" and for that reason he has therefore "not shown that he suffers the injury-in-fact needed for standing."[27] Thus, the Court's ruling in this instance concerned the legal "cognizability," for constitutional purposes, of the representational rights that Plaintiff claims. As such, the Court's prior ruling on this point must be examined under Rule 12(b)(6) because it relates to the "plausibility" of Plaintiff's claims on the merits.

The Plaintiff in his first amended complaint adheres to his earlier claims, as they appeared in his original complaint, insofar as they asserted the legal "cognizability," for constitutional purposes, of his right to equal representation in the U.S. House of Representatives. The Plaintiff thus adheres to that claim notwithstanding the fact that he is ineligible to vote in

---

[26] *Defendants' Second Motion to Dismiss*, 9-12.
[27] *District Court's Order Granting Defendants' First Motion to Dismiss*, 2.

federal elections under Texas law. In support of his constitutional claim that those who are ineligible to vote may unconstitutionally be subjected to "representational harm" cognizable under the U.S. Constitution, Plaintiff relies principally on *Evenwel v. Abbott*, 578 U.S. ---, 136 S. Ct. 1120 (2016).

In *Evenwel v. Abbott, supra,* the Supreme Court ruled that "the basis of *representation* in the House was [intended] to include all inhabitants…even though States remai[n] free to deny many of those inhabitants the right to participate in the selection of their representatives." *Id*., 136 S. Ct. at 1127 (emphasis added); *see also*, *id*., 136 S. Ct. at 1127 n. 8 ("the Framers understood" that citizens who were ineligible "to cast ballots" were "nonetheless entitled to representation in government."); and *id*., 136 S. Ct. at 1129 ("[I]t remains beyond doubt that the principle of representational equality figured prominently in the decision to count people, whether or not they qualify as voters."). When contending that persons who are ineligible to vote in federal elections under state law *are not* entitled to any representation (much less equal representation) in the U.S. House of Representatives, Defendants rely on two U.S. District Court cases decided before the Supreme Court's decision in *Evenwel v. Abbott, supra,*[28] as well as on the Supreme Court's decision in *Burns v. Richardson*, 384 U.S. 73 (1966).[29] In *Richardson*, prior to its decision in *Evenwel*, the Supreme Court observed, with regard to state legislative electoral districts, that:

> "Neither in *Reynolds v. Sims* nor in any other decision has this Court suggested that the States are required to include aliens, transients, short-term or temporary residents, or *persons denied the vote for conviction of crime* in the apportionment base by which their legislators are distributed and against which compliance with the Equal Protection Clause is to be measured."[30]

---

[28] *Defendants' Second Motion to Dismiss*, 9, citing *Fletcher v. Lamone*, 831 F. Supp. 2d 887 (D. Md. 2011), and *District of Columbia v. U.S. Dep't of Com.*, 789 F. Supp. 1179 (D.D.C. 1992).
[29] *Defendants' Second Motion to Dismiss*, 11.
[30] *Burns v. Richardson, supra,* 384 U.S. at 92 (emphasis added).

What Defendants predictably omit to mention, of course, is that *Evenwel v. Abbott*, which concerned equal representation in the U.S. House of Representatives and not representation in state legislatures, clarified the statement they cite from *Richardson* insofar as it might otherwise be construed to define the constitutional right to *federal* representation. The quotations from *Evenwel* provided by Plaintiff on the preceding page of this response disclose this fact.

Under *Evenwel*, the federal constitution would not necessarily require "aliens, transients, short-term or temporary residents" who have a domicile out-of-state to be counted in a state's legislative allocation of persons for redistricting purposes. That would depend on application of the *animo manendi* doctrine. But *Evenwel* plainly *does require* states to count its "inhabitants" for federal representational purposes, regardless of whether they are eligible to vote in federal elections or not. The constitutional question presented by Plaintiff is thus whether Defendants, *having counted* prison inmates for federal representational purposes, may then arbitrarily declare where an inmate permanently resides, and is therefore an "inhabitant" within the meaning of the U.S. Constitution, for purposes of congressional redistricting.

This Court's reliance on *Perez v. Texas*, No. 5:11-cv-00360-OLG (W. D. Tex.) as support for its prior order which dismissed Plaintiff's original complaint was improvident. This is true not only because the decision in *Perez* did not have the benefit of the U.S. Supreme Court's subsequent decision in *Evenwel*, *supra* (with which *Perez* now conflicts), but also because the factual basis of the plaintiffs' complaint in *Perez* is distinguishable from the present case.

In *Perez* a three-judge panel of the District Court dismissed claims brought by certain "voters" (*i.e.*, "non-inmate voters"). The *Perez* plaintiffs complained, *inter alia*, that the State of Texas' use of the legal fiction described above, which assigned inmates to congressional districts in which they did not reside, operated to deprive them of their rights under the Equal Protection

Clause of the Fourteenth Amendment.[31] With regard to these specific claims the District Court in *Perez* ruled the plaintiffs failed to state a valid claim for relief. After noting there were "no allegations in th[e] case regarding the discriminatory treatment of prisoners," the District Court added that "[w]hile the State could [have] enact[ed] a …statute that modifie[d] the count of prisoners as residents of whatever county they lived in prior to incarceration, there is no federal requirement to do so."[32]

The cause of action alleged by the plaintiffs in *Perez* is factually distinguishable from the Plaintiff's claims. The plaintiffs in *Perez* were "voters," not a prison inmate who was ineligible to vote in federal elections; and the plaintiffs in *Perez* alleged *their own* personal rights to equal representation were vicariously violated by application of Defendants' legal fiction to the personal rights of third-parties, *i.e.*, prison inmates who were ineligible to vote in federal elections.  Unlike the present case, no prison inmate was a party to the plaintiffs' complaint in *Perez*; and because the plaintiffs in *Perez* had no standing to assert the rights of third-party prison inmates, the District Court's decision in *Perez*, particularly in light of the Supreme Court's more definitive guidance in *Evenwel*, *supra*, is entitled to no persuasive weight.[33]

3) ***The Plaintiff has Standing because he has Plausibly Alleged an Injury that is "Fairly Traceable" to the Challenged Action of Defendants, and the Harm Claimed by Plaintiff is Capable of "Redress" by this Court.***[34]

The Plaintiff's first amended complaint has provided Defendants with notice of the nature of his claims and with notice of how his injuries in fact are "traceable" to their conduct. *See*

---

[31] *Perez v. Texas*, No. 5:11-cv-00360-OLG (W. D. Tex.), *Perez Plaintiffs' Third Amended Complaint*, 6-7)(filed July 19, 2011)(ECM Dkt.# 53).

[32] *Perez v. Texas*, *supra*, Order on Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and, in the Alternative, Motion for Judgment on the Pleadings, 24 (W.D.Tex., Sept. 2, 2011)(ECM Dkt.#285).

[33] Although not raised by Defendants, in the event the Court elects to consider *sua sponte* the independent question of whether Plaintiff's claims are "justiciable," Plaintiff requests an opportunity to brief that separate question before any decision by the Court on that issue in the present case. The Plaintiff's claims herein are "justiciable."

[34] *Defendants' Second Motion to Dismiss*, 14-15.

*Plaintiff's First Amended Complaint*, pp. 18-20, ¶ 16. The Defendants do not deny, nor could they seriously deny, that the State of Texas, for whom they act in an official capacity, is responsible for the conduct about which Plaintiff complains. The Plaintiff's first amended complaint has also provided Defendants with notice of how he would secure "redress" as a remedy for the constitutional violations he has alleged. *See Plaintiff's First Amended Complaint*, p. 20, ¶ 17. An order or judgment entered by this Court would be capable of "redressing" the harms about which Plaintiff complains. In short, because these allegations provide Defendants with fair notice and a plausible basis to support Plaintiff's standing, Defendants' motion to dismiss must be denied on these grounds as well.

**4)**   ***"Sovereign Immunity" held by Defendant Governor Abbott and Defendant Secretary of State Scott under the Eleventh Amendment to the U.S. Constitution does not deprive the Court of Jurisdiction.***[35]

The Plaintiff's claims seeking declaratory and prospective remedial relief are not barred by the Eleventh Amendment to the U.S. Constitution or the doctrine of sovereign immunity. While states are generally immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity, the U.S. Supreme Court has recognized an exception to these doctrines that allows an action for declaratory and prospective equitable relief which would prevent state officials "from enforcing state laws that are contrary to federal law." *See*, *Whole Woman's Health v. Jackson*, --- U.S. ---, 142 S. Ct. 522, 532 (2021), *citing Ex Parte Young*, 209 U. S. 123, 159-160 (1908). Because the allegations in Plaintiff's first amended complaint provide a plausible basis to support the equitable relief Plaintiff seeks, Defendants' motion to dismiss must be denied on this ground.

---

[35] *Defendants' Second Motion to Dismiss*, 12-14.

5) *"Legislative Immunity" held by Defendant Speaker Phelan and Defendant Lieutenant Governor Dan Patrick.*[36]

    After further consideration the Plaintiff hereby abandons his claims for declaratory and prospective equitable relief against, but only against, Defendant Speaker Phelan and Defendant Lieutenant Governor Dan Patrick, and abandons any other claims he has alleged against these two Defendants, only.

6) *Article I, §2 of the U.S. Constitution and §2 of the Fourteenth Amendment to the U.S. Constitution Apply to "Intrastate" Electoral Districting for Members of the U.S. House of Representatives.*

    The Defendants in their motion to dismiss contend that "Article I, §2 of the U.S. Constitution and §2 of the Fourteenth Amendment" to the U.S. Constitution "do not apply" to Plaintiff's claims because "apportioning representatives *among* the States is a task undertaken by the federal government" and "[n]either SB 6 nor any other Texas law controls that process."[37] Here, Defendants are attempting to confuse or distract the Court concerning the claims Plaintiff has actually alleged, by pretending to defend against a claim Plaintiff has not alleged.

    While it is true the several states assume no role at all in conducting the federal decennial census, the states nonetheless must adhere to the concept of "equal representation," which the Supreme Court in *Evenwel* referred to as the "theory of the constitution." According to the Supreme Court, that theory, in which Article I, §2, and §2 of the Fourteenth Amendment play a defining role, "underlies not just the method of allocating House seats to States; *it applies as well to the method of apportioning legislative seats within States.*" *Id.*, 136 S. Ct. at 1128-1129 (emphasis added). The Defendants' feeble attempt at misdirection should be condemned.

---

[36] *Defendants' Second Motion to Dismiss*, 14-15.
[37] *Defendants' Second Motion to Dismiss*, 9-10 (emphasis in original).

**7)** ***The "Legal Fiction" Applied by Defendants Treats Prison Inmates Differently, in Relation to Non-Prison Inmates, for Purposes of Determining Equal and Fair Representation in the U.S. House of Representatives.***

In his first amended complaint Plaintiff alleges Defendants have violated the Equal Protection Clause of the Fourteenth Amendment because, in contrast to "other persons, including military personnel" who are treated by Defendants as "inhabitants" in accordance with the *animo manendi* doctrine, Defendants' legal fiction arbitrarily treats Plaintiff as an "inhabitant" of a place where he has never been an inhabitant within the meaning of the U.S. Constitution. *See Plaintiff's First Amended Complaint*, pp. 13-14, ¶ 9. The Defendants contend Plaintiff has failed to state a claim on the merits because "Texas has not treated prisoners any differently from anyone else" and because "Texas uses the official census data—for prisoners and non-prisoners alike—when redistricting."[38] Once again, Defendants here attempt to confuse the Court concerning the claims Plaintiff has actually alleged, by pretending to defend against a claim Plaintiff has not alleged. Lest there be any confusion, Plaintiff alleges Defendants have violated the Equal Protection Clause of the Fourteenth Amendment because, in contrast to how they treat Plaintiff, their legal fiction treats "other persons, including military personnel" as inhabitants in accordance with the *animo manendi* doctrine as required by the U.S. Constitution. The Defendants are not bound by law to treat Plaintiff differently; and as full, active participants in this unconstitutional scheme Defendants cannot escape accountability for doing so.

**8)** ***The "As Nearly as Practicable" and "Good Faith" Standards Established for Equal Representation in*** <u>***Karcher v. Daggett***</u>***, 462 U.S. 725, 730 (1983), Applies to Plaintiff's Claims, Not the "Rational Basis" and "Arbitrary and Capricious" Standards Asserted by Defendants.***

---

[38] *Defendants' Second Motion to Dismiss*, 10.

In his first amended complaint Plaintiff alleges the "as nearly as practicable" and "good faith" standards established for Equal Representation in *Karcher v. Daggett*, 462 U.S. 725, 730 (1983), applies with equal force to his claims. *See Plaintiff's First Amended Complaint*, pp. 12-13, ¶ ¶ 7-8. The Defendants, after wholly ignoring the different levels of scrutiny that apply to "congressional" as opposed to "state legislative" redistricting, contend the "rational basis" and the "arbitrary and capricious" standards apply to assess Plaintiff's claims.[39] The Defendants are in error, and Plaintiff has plausibly alleged a legal theory that supports his claims.

When describing the measure for assaying whether "representational harm" has occurred in the related context of congressional redistricting and the "one person, one vote" theory, the Supreme Court has ruled Article I, §2 requires that, "as nearly as practical," states must ensure "one man's vote in a congressional election is to be worth as much as another's." *Wesberry v. Sanders*, 376 U.S. 1, 7-8 (1964). The Court has also ruled "the 'as nearly as practicable' standard" requires a state to make "a good-faith effort to achieve precise mathematical equality," and that "[u]nless population variances among congressional districts are shown to have resulted despite such effort, the State must justify each variance, no matter how small." *Karcher v. Daggett*, 462 U.S. 725, 730 (1983).

While the Supreme Court, upon such a "good faith" showing by a state, has previously given deference to legislative actions involving determinations of where persons reside for the purpose of drawing electoral districts, this deference has been limited to cases wherein available population data leaves it *objectively uncertain where* individuals, or a class of individuals, reside. *E.g.*, *Burns v. Richardson*, *supra*, 384 U.S. at 95 (implicitly finding legislative "good faith" justified population deviations between electoral districts, where "population figures" were "hard to obtain or extrapolate"); *see also*, *Mahan v. Howell*, 410 U.S. 315, 331 (1973)(affirming

---

[39] *Defendants' Second Motion to Dismiss*, 10.

interim redistricting plan where District Court was "[l]acking survey data sufficiently precise to permit the creation" of equipopulous electoral districts). In the present case, Defendants consciously knew and were in possession of information that established where Plaintiff was an "inhabitant" and permanent resident on Census Day, but they chose to ignore that information. Although Plaintiff's claims are distinguishable from the "one person, one vote" theory recognized in *Wesberry v. Sanders* (and clarified in *Karcher v. Daggett*), Plaintiff contends the same "as nearly as practicable" and "good faith effort" requirements apply to the claims he has presented. *The Plaintiff's claims comprise merely another, but no less constitutionally valid, species of the "theory of the Constitution" that guarantees "equal representation*."[40] Moreover, Defendants' conduct would not even satisfy the more deferential level of scrutiny they espouse. The word "arbitrary" is commonly defined as an action taken "without consideration and regard for facts and circumstances presented." BLACK'S LAW DICTIONARY (6th ed. 1990).[41] In light of the fact that Defendants knew they were declaring Plaintiff to be an "inhabitant" of a location at which he had never been an "inhabitant" within the meaning of the U.S. Constitution, Defendants' actions when drawing congressional districts fits the definition of "arbitrary," notwithstanding Defendants' assertions to the contrary.

**9)  *The Merit of Plaintiff's Challenge to Defendants' "Legal Fiction" Depends on Where Plaintiff as a Constitutional Matter must be Deemed an "Inhabitant" on "Census Day" (April 1, 2020)*.**

For reasons that are not altogether clear to Plaintiff, Defendants assert Plaintiff has "failed to state a claim" because, since Census Day, April 1, 2020, he has been involuntarily

---

[40] *Evenwel v. Abbott, supra,* 136 S. Ct. at 1128, *quoting* Cong. Globe, 39th Cong., 1st Sess., 2766–2767 (1866) ("Numbers, not voters; numbers, not property; this is the theory of the Constitution" with regard to representation).
[41] S*ee also*, *United States v. Carmack*, 329 U.S. 230, 243 n. 14 (1946).

moved by the Defendants to confinement in Fort Bend County, Texas.[42] If nothing else is clear, the only geographical fact relevant to Plaintiff's claims is where he was an "inhabitant," as defined by the U.S. Constitution, on Census Day. Where Defendants chose to move Plaintiff involuntarily thereafter, or where Defendants may choose to move him involuntarily in the future, is irrelevant.

**10)** ***The Framers' Manifest "Intentions" When they Adopted the Federal Constitutional Provisions Invoked by Plaintiff are Relevant to the Merits of Plaintiff's Claims.***

Finally, Defendants argue the Framers' "intentions" when they adopted Article I, §2, and §2 of the Fourteenth Amendment "are not the law."[43] In this regard, Defendants essentially ask this Court to engage in constitutional "nullification." As Plaintiff has previously discussed,[44] because the first Congress included a substantial number of members who had been delegates to the Constitutional Convention of 1787, the Supreme Court has frequently resorted to legislative acts of the first Congress when seeking to divine the meaning of words or phrases that appear in the U.S. Constitution. Congressional decisions made during the first Congress thus provide "contemporaneous and weighty evidence" of the Constitution's meaning. *Bowsher v. Synar*, 478 U.S. 714, 723-724 (1986). This tool for interpretation has been applied by the Supreme Court to determine what was intended by the Framers when they required a decennial enumeration for the purpose of ensuring "representational equality" in the U.S. House of Representatives. *Franklin v. Massachusetts*, 505 U.S. 788, 803-804 (1992). While Defendants understandably wish it were otherwise, what the Framers "intended" IS "the law." To reiterate: "Numbers, not voters; numbers, not property; this is the theory of the Constitution." See *ante*, this response, at 19 n.40.

---

[42] *Defendants' Second Motion to Dismiss*, 3 ("SB 6…would say nothing about [Plaintiff's] residence now.").
[43] *Id.*, 9.
[44] Plaintiff's *Verified Memorandum of Law in Support of Motion for Certification of Class Action*, 8-9 (ECF No. 55)(filed Nov. 24, 2021)(discussing at length the original intent of the Framers concerning the "usual residence" of prison inmates for decennial census purposes).

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays the Defendants' motion to strike Plaintiff's first amended complaint, and Defendants' second motion to dismiss, will both be denied.

Respectfully submitted,

*/s/ Richard Gladden*
Texas Bar No. 07991330
1204 W. University Dr. Suite 307
Denton, Texas 76201
940.323.9300 (voice)
940.539.0093 (fax)
richscot1@hotmail.com (email)
*Attorney-in-Charge for Plaintiff*

## CERTIFICATE OF COMPLIANCE

This is to certify that this document is 20 pages in length and that it therefore complies with the 20-page limitation provided by Local Rule CV-7(d)(3) of the Rules of the U.S. District Court for the Western District of Texas.

*/s/ Richard Gladden*

## CERTIFICATE OF SERVICE

This is to certify that a true copy of this document was served on all Defendants using the electronic CM/ECF filing system, *via* their Attorney of Record, Patrick K. Sweeten, and by the same means on all Plaintiffs having cases consolidated with this case, on this 11th day of January, 2022.

*/s/Richard Gladden*