# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| MEXICAN AMERICAN LEGISLATIVE CAUCUS, TEXAS HOUSE OF REPRESENTATIVES, | § § § | Civil Action |
| | § | |
| Plaintiffs | § | |
| | § | Case No. 21-cv-259-DCG-JES-JVB |
| v. | § | |
| | § | |
| STATE OF TEXAS, GREG ABBOTT, GOVERNOR OF THE | § § | |
| STATE OF TEXAS, in his official capacity, and JOHN SCOTT, | § § | |
| SECRETARY OF STATE OF TEXAS, in his official capacity | § § | |
| Defendants | § | |

## PLAINTIFF MALC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 2

I.    Plaintiffs Have Standing. ........................................................................................ 2

    A.   MALC Has Adequately Alleged Voting Injury. .............................................. 2

    B.   MALC Has Organizational Standing. .............................................................. 6

II.    The State of Texas Is Not Immune From Suit. ........................................................ 7

III.    MALC Alleges Plausible Violations of The VRA and the United States Constitution. ........ 7

    A.   The Texas Legislature Violated Section 2 of the VRA. .................................... 8

        1.   Plaintiff satisfied the Gingles standards. ................................................. 8

           a.   MALC adequately alleged a sufficiently large and compact minority group on a district-by-district or regional basis. .................................... 8

           b.   MALC has adequately alleged political cohesion and Anglo bloc voting. ............. 11

        2.   Plaintiff's allegations related to Spanish language discriminatory effect are relevant. .... 13

    B.   MALC Has Sufficiently Alleged Discriminatory Intent Claims Under the *Arlington Heights* standard. ........................................................ 14

IV.    MALC Has Alleged Plausible Racial Gerrymandering Claims. .............................. 16

V.    MALC Has Alleged Plausible Malapportionment Claims. ..................................... 18

VI.    Alternatively, MALC Should Be Granted Leave To Re-plead. ............................... 20

VII.    Conclusion. ............................................................................................................ 20

## TABLE OF AUTHORITIES

**Cases**

*Alabama Legis. Black Caucus v. Alabama*, 575 U.S. 254 (2015) .................................................. 21

*Ashscroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................................... 17

*Cox v. Larios*, 542 U.S. 947 (2004) ......................................................................................... 19, 20

*Ex Parte Young*, 209 U.S. 123 (2018) .............................................................................................. 1

*Foman v. Davis*, 371 U.S. 178 (1962) ........................................................................................ 5, 21

*Harding v. Cnty. of Dallas*, 948 F.3d 302 (5th Cir. 2020) ............................................................. 3

*Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033 (D.C. Cir. 2003) ..................................... 12

*League of United Latin American Citizens v. Perry*, 548 U.S. 399 (2006) .................................. 16

*Metts v. Murphy*, 363 F.3d 8 (1st Cir. 2004) ................................................................................... 9

*OCA-Greater Houston v. Texas*, 867 F.3d 604 (5th Cir. 2017) ...................................................... 7

*Perez v. Abbott*, 267 F. Supp. 3d 750 (W.D. Tex. 2017), *aff'd in part, rev'd in part and remanded*, 138 S. Ct. 2305, 201 L. Ed. 2d 714 (2018) .................................................................................. 6, 7

*Shaw v. Reno*, 509 U.S. 630 (1993) ......................................................................................... 17, 19

*Tenth St. Residential Ass'n v. City of Dallas*, 968 F.3d 492 (5th Cir. 2020) ................................. 2

*Thornburg v. Gingles*, 478 U.S. 30 (1986) ..................................................................................... 8

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977).......... 15, 18

*Washington v. Davis*, 426 U.S. 229 (1976)) ............................................................................. 15, 16


**Statutes and Constitutional Provisions**

Tex. Const. Art. III Sec. 6 ................................................................................................................. 3

Tex. Elec. Code § 11.002 .................................................................................................................. 3

**INTRODUCTION**

In the third special legislative session of 2021, the 87th Texas Legislature adopted a series of redistricting maps that intentionally discriminated against Hispanic and Latino communities. The redistricting maps for the Texas House of Representatives, Congressional delegation, and the State Board of Education all reduce or minimize Hispanic and Latino voting strength or otherwise fail to provide an equal opportunity for Hispanic and Latino communities to participate in the political process and elect candidates of their choice. Plaintiff Mexican American Legislative Caucus ("MALC" or "Plaintiff") brings claims under Section 2 of the Voting Rights Act of 1965 ("VRA") as well as the Fourteenth and Fifteenth Amendments to the United States Constitution to remedy these wrongs.

Defendants' Motion to Dismiss ("Mot."), ECF No. 71, makes three basic arguments for dismissal. All should be rejected. First, Defendants argue MALC does not have standing because it has suffered no injury-in-fact. MALC has been considered a proper plaintiff in previous federal redistricting lawsuits and is a proper plaintiff here. Defendants' arguments ignore the pleadings related to the membership of MALC, the districts and regions where the members reside that are adversely affected, and the relevant interests that MALC seeks to pursue and protect as an association and organization. All these pleadings demonstrate injury-in-fact.

Second, Defendants argue the State of Texas is immune from suit under the doctrine of sovereign immunity. This argument ignores controlling precedent holding the State's immunity is waived for claims brought under Section 2 of the VRA. Defendants also concede, as they must, that the other named Defendants are properly named under *Ex Parte Young*, 209 U.S. 123 (2018).

Third, Defendants argue the pleadings are insufficient to state claims under either the VRA or the United States Constitution. But these assertions are more properly cast as merely merits-based

disagreements over either the statistical significance of Hispanic or Latino populations and their voting patterns or the intent and motives of the Texas Legislature in passing the redistricting maps. These issues (a) deserve and require discovery to further refine or detail and (b) require the decision of the ultimate fact finder after a trial on the merits. MALC's Complaint provides a detailed account of the suspicious circumstances giving rise to passage of the redistricting maps, a historical context of racial discrimination in redistricting in Texas in which the maps were passed, statistical evidence of reduced or eliminated Hispanic and Latino voting power, and a district-by-district or region-specific detail of the adverse impacts of the redistricting maps. At the pleadings stage, this is more than sufficient.

But even if the Court believes the pleadings are inadequate, not a single argument from the Defendants justifies dismissal as a matter of law. At most, the Court should simply permit Plaintiff an opportunity to amend. The issues in this case are too important for the foundation of our democratic system of government to rule otherwise.

## ARGUMENT

### I.    Plaintiffs Have Standing.

Defendants are correct in stating that, "[a]n entity like MALC 'can establish the first standing element, injury-in-fact, under two theories: associational standing or organizational standing.'" Mot. at 2 (quoting *Tenth St. Residential Ass'n v. City of Dallas*, 968 F.3d 492, 500 (5th Cir. 2020) (internal quotation marks omitted). MALC satisfies both standards because it properly alleges a voting injury on behalf of its members and because it has direct organizational standing for claims related to the Texas House of Representatives.

### A.    MALC Has Adequately Alleged Voting Injury.

Defendants assert MALC fails to allege that its members suffer voting injuries because it "does not allege that any of its members are registered voters or even intend to vote in upcoming

elections." Mot. at 6. However, MALC properly pleads it is a legislative caucus whose members are Texas House Representatives and that it "has one or more members who reside in the challenged districts and who have had their ability to elect representatives of their choice injured on account of being Latino." Compl. at ¶ 1. Defendants elide the fact that in order to be a member of the Texas House of Representatives, one must be a "qualified voter of this State," Tex. Const. Art. III Sec. 6, and in order to be a "qualified voter," one must be a "registered voter," Tex. Elec. Code § 11.002(a)(6). Further, "Fifth Circuit precedent has held that it is 'enough' that 'each voter resides in a district where their vote has been cracked or packed,'" and it is not necessary to specifically allege they intend to vote in a specific manner at a specific time. Memorandum Opinion and Order at 2, Doc. 119 (Dec. 30, 2021) (quoting *Harding v. Cnty. of Dallas*, 948 F.3d 302, 307 (5th Cir. 2020). Of course, it is nevertheless self-evident in the allegation that members have had their ability to elect representatives of the choice injured and that the members intend to vote for particular representatives, namely themselves and other Latino candidates of choice.

Defendants also contend MALC failed to allege district-specific injuries but rather "challenge the State's House, Congressional, and SBOE maps as a whole." Mot. at 7. On the contrary, MALC identifies by name which of its members reside in which challenged district or region and further make district and region-specific allegations throughout the Complaint. Compl. at ¶ 2. For present and future clarity, below is a table of individuals specifically enumerating the challenged region they reside in, *see id.*, and what legal claims are supported by the pleadings.

| Individual | Challenged District/Region | Claims |
|---|---|---|
| Abel Herrero | CD 27; Insufficient Latino opportunity Texas House districts in Nueces County/South Texas | Section 2 (diluted Congressional district; packed House district); Intentional Discrimination |
| Alex Dominguez | SBOE District 2; Weakening of Latino voting strength in Cameron County-area Texas House Districts | Section 2 (dilution); Intentional Discrimination |
| Eddie Lucio | SBOE District 2; Weakening of Latino voting strength in Cameron County-area Texas House Districts | Section 2 (packed House district); Intentional Discrimination |

3

| Terry Canales | CD 15 | Section 2 (dilution); Intentional Discrimination |
|---|---|---|
| Eddie Morales | CD 23; Insufficient Latino opportunity Texas House districts in Southwest Texas | Section 2 (packed Texas House District, diluted Congressional District); Intentional Discrimination; Lives in illegitimately overpopulated Texas House district (*Cox v. Larios*) |
| Mary González | CD 23; Insufficient Latino opportunity Texas House districts in Southwest Texas | Section 2 (packed Texas House District, diluted Congressional District); Intentional Discrimination; Lives in illegitimately overpopulated Texas House district (*Cox v. Larios*) |
| Claudia Ordaz-Perez | Elimination of HD 76 as a Latino opportunity district/Insufficient Latino opportunity Texas House districts in Southwest Texas | Section 2 (elimination of existing opportunity district); Intentional Discrimination; Lives in illegitimately overpopulated Texas House district (*Cox v. Larios*) |
| Lina Ortega | Insufficient Latino opportunity Texas House districts in Southwest Texas | Section 2 (packed district); Intentional Discrimination; Lives in illegitimately overpopulated Texas House district (*Cox v. Larios*) |
| Joe Moody | Insufficient Latino opportunity Texas House districts in Southwest Texas | Section 2 (packed district); Intentional Discrimination; Lives in illegitimately overpopulated Texas House district (*Cox v. Larios*) |
| Art Fierro | Insufficient Latino opportunity Texas House districts in Southwest Texas | Section 2 (packed district); Intentional Discrimination; Lives in illegitimately overpopulated Texas House district (*Cox v. Larios*) |
| Sergio Mora[1] | HD 80 | Section 2 (dilution); Intentional Discrimination |
| Bobbi Garza-Hernandez[2] | No existing Latino opportunity Texas House or SBOE District in Central Texas (between Bexar and Travis Counties) | Section 2 Intentional Discrimination |

---

[1] To the extent necessary to be responsive to this Motion, MALC specifically requests leave to amend to add Plaintiffs Sergio Mora and Bobbi Garza-Hernandez, individuals residing in HD 80 and 45 who wish to join this lawsuit as plaintiffs to vindicate their voting rights under Section 2. MALC intends to file a motion for leave to amend and add these parties as co-plaintiffs in a subsequent filing in any event. Because amendments should be freely given when justice so requires and this case is in its earliest stages, there is no basis to not follow the policy of liberal amendment of pleadings set forth in Federal Rule of Civil Procedure 15. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Regardless of the addition of these individual Plaintiffs, MALC maintains organizational standing, as discussed below, to assert its claims over Texas House Districts in these regions.

[2] *See* n.1 *supra.*

| Ramon Romero | HD 90 | Section 2 (dilution); Intentional discrimination |
|---|---|---|
| Rafael Anchía | Dallas-area Congressional Districts | Section 2 (insufficient opportunity districts, lives in packed district); Intentional Discrimination; *Shaw* racial gerrymandering |
| Terry Meza | Dallas-area Congressional Districts | Section 2 (insufficient opportunity districts, lives in packed district); Intentional Discrimination; *Shaw* racial gerrymandering |
| Armando Walle | Harris County SBOE and Congressional Districts | Section 2 (insufficient opportunity districts, lives in packed Congressional district, cracked SBOE district); Intentional Discrimination; *Shaw* racial gerrymandering |
| Christina Morales | Harris County SBOE and Congressional Districts; HD 145 | Section 2 (insufficient opportunity districts, lives in cracked districts); Intentional Discrimination; *Shaw* racial gerrymandering |
| Penny Morales Shaw | Harris County SBOE and Congressional Districts; HD 148 | Section 2 (insufficient opportunity districts, lives in cracked districts); Intentional Discrimination; *Shaw* racial gerrymandering |

The majority of claims are based on an individual residing in a challenged district drawn in violation of the VRA or the United States Constitution. Some of the claims are based on an individual residing in a region that could support an additional opportunity district were it not for the cracking and packing of districts. Both are accepted theories of voter standing and MALC has alleged them adequately.

During last decade's redistricting, the Court considered the circumstance where an individual resided in an existing opportunity district but in a region with insufficient opportunity districts. In a holding left untouched by the Supreme Court, the trial court recognized that although voting rights are individual in nature, claims that deal with the propriety of additional opportunity districts necessarily implicate a geographic region rather than a single existing district in isolation. *Perez v. Abbott*, 267 F. Supp. 3d 750, 774 (W.D. Tex. 2017), *aff'd in part, rev'd in part and remanded*, 138

S. Ct. 2305, 201 L. Ed. 2d 714 (2018) (upholding the standing of MALC to challenge Nueces County-area districts based on the standing of Rep. Abel Herrero) ("the injury suffered by a § 2 plaintiff asserting a claim that additional minority opportunity districts are required goes beyond the boundaries of a single district and includes a geographic area. . . . For these reasons, this Court . . . holds that plaintiffs who reside in a reasonably compact area that could support an additional minority opportunity district have standing to pursue § 2 claims, even if they currently reside in an opportunity district.").

## B. MALC Has Organizational Standing.

MALC has quintessential associational standing for each of its claims and the inquiry could thus end there, but nevertheless, MALC also has organizational standing to pursue its claims related to the Texas House of Representatives. MALC stands in a unique position as an organization composed of members of the Texas House of Representatives. As with last decade's redistricting litigation:

> This is not a case where the Court must assess the expenditure of resources to counteract a certain enactment's effect to determine whether there is a sufficient injury; nor is this a case where MALC's nonmonetary efforts in counteracting the Plan are at issue.  Instead, the injury here is as direct as can be—***MALC's very existence, its raison d'être, depends on its membership and growing that membership*** . . . .

*Perez*, 267 F. Supp. 3d at 773.

MALC is injured by the direct elimination of Latino opportunity districts, such as HD 76 represented by its member Rep. Claudia Ordaz-Perez, as well as the overall systemic under-representation of Latinos. *See* Compl. at ¶ 90 ("Plan H2316 entirely removes HD 76 from El Paso and moves it to Fort Bend County where it [is no longer a majority Latino district]."); ¶ 176 ("Under the recently enacted plan for the Texas House of Representatives, Latinos would only comprise a majority of the CVAP in 30 out of 150 districts (20%), falling 15 seats short of proportional representation."); ¶ 179 ("It is geographically possible for Latinos to comprise a reasonably compact

majority of the CVAP in at least . . . 43 Texas House Districts, . . . ."). By losing existing members and failing to gain new members, MALC's existential strength is thus undermined by Defendants' VRA and Constitutional violations, which lead to fewer Latino opportunity districts (and hence fewer MALC members) than would otherwise exist.

## II.      The State of Texas Is Not Immune From Suit.

Defendants broadly assert that "[t]he State of Texas is [i]mmune from MALC's [c]laims." Mot. at 8. They, however, do not dispute that the State is a proper party under Fifth Circuit precedent for Count II of the Complaint, *id.* at 9, n.1 (accepting that *OCA-Greater Houston v. Texas*, 867 F.3d 604, 614 (5th Cir. 2017) controls),[3] nor do they dispute the applicability of the *Ex Parte Young* exception as it applies to all counts against Defendants Abbott and Scott. MALC is asserting claims under Section 2 of the VRA against the State, and appropriately so.

## III.      MALC Alleges Plausible Violations of The VRA and the United States Constitution.

Subsection 2(a) of the VRA prevents states from imposing "any standards, practices, or procedures which result in the denial or abridgement of the right to vote of any citizen who is a member of a protected class of racial and language minorities." *Thornburg v. Gingles*, 478 U.S. 30, 43 (1986). Subsection 2(b) provides that a violation of § 2(a) is established if:

> [B]ased on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a [protected] class . . . in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

52 U.S.C. § 10301(b).

In *Thornburg v. Gingles*, the Supreme Court explained that "[t]he essence of a § 2 claim is that a certain electoral law, practice, or structure interacts with social and historical conditions to

---

[3] Defendants recognize this precedent but seek to preserve for appeal the argument that the VRA does not waive sovereign immunity. Should the Court consider revisiting settled law, Plaintiff respectfully requests an opportunity to brief the issue separately. As Defendants concede, the "Fifth Circuit has held that [the Voting Rights Act] does [abrogate state sovereign immunity]." Mot. at 9, n.1.

7

cause an inequality in the opportunities enjoyed by [minority] and white voters to elect their preferred representatives." 478 U.S. at 47. Congress amended Section 2 of the VRA in 1982 to "make clear that a [§ 2] violation could be proved by showing discriminatory effect alone" and that proof of discriminatory intent was not required. *Id.* at 35.

To establish a Section 2 vote-dilution claim the plaintiff must first prove three "necessary preconditions." *Id.* at 50-51. First, the plaintiff must establish that the effected minority group "is sufficiently large and geographically compact to constitute a majority in a single-member district." *Id.* at 50. Second, the plaintiff must demonstrate the minority group "is politically cohesive." *Id.* at 51. And third, the plaintiff must show "that the white majority votes sufficiently as a bloc to enable it—in the absence of special circumstances, such as the minority candidate running unopposed— usually to defeat the minority's preferred candidate." *Id.* (citations omitted).

MALC has plead sufficient facts to satisfy each of these three preconditions. Courts have long recognized the rarity of Rule 12 dismissals of cases under the VRA: "It is no accident that most cases under section 2 have been decided on summary judgment or after a verdict, and not on a motion to dismiss." *Metts v. Murphy*, 363 F.3d 8, 11 (1st Cir. 2004).

## A. The Texas Legislature Violated Section 2 of the VRA.

### 1. Plaintiff satisfied the *Gingles* standards.

#### a. MALC adequately alleged a sufficiently large and compact minority group on a district-by-district or regional basis.

Defendants argue that the Complaint does not satisfy the first *Gingles* factor because MALC "fails to identify the 'relevant geographic area' where Hispanic voters constitute a majority of the citizen voting-population." Mot. at 13. Incorrect. With respect to the redistricting map for the Texas House of Representatives, H2316, MALC pleads on a district-by-district and regional basis at least eight specific violations of the VRA. *See generally* Compl. at ¶¶ 87-145.

MALC alleges violations related to HD 76 and 77 in the El Paso geographic region. As alleged in the

Complaint, "[e]very El Paso district in the benchmark is a performing Latino opportunity district" with sufficiently large and geographically compact Hispanic communities. *Id.* at 88. The Complaint alleges that the "wholesale removal of an effective and longstanding Latino opportunity district [in HD 76]" is improper and cannot be justified and that "multiple configurations of Texas House districts exist, and were presented to the legislature, which would maintain four seats wholly contained within El Paso and have a fifth seat anchored with at least half of its population in El Paso…" *Id.* at ¶ 90, 94. This is both district-specific and regionally specific and sufficient to provide the Defendants notice of the claim and plausibly satisfy the first *Gingles* element under Rule 12(b)(6).

MALC alleges violations related to HD 31 specifically pleading that "HD 31 is a performing Latino and Spanish language opportunity district, which consistently elects the Latino and Spanish language community candidate of choice." *Id.* at ¶ 96. The Complaint alleges that under Plan H2316, multiple indicia of Latino voting power are significantly reduced. *Id.* at ¶ 99-101. Again, this is both district-specific and regionally specific and sufficient to satisfy the first *Gingles* element.

MALC alleges violations related to HD 37 specifically pleading that House Districts 35, 37, and 38 in Cameron and Hidalgo counties "all consistently elect the candidate of choice for Latinos and the Spanish language community." *Id*. at ¶ 104. MALC also alleges that the House redistricting map significantly reduces multiple indicia of Latino voting strength for the district. *Id.* at ¶ 108-10.

MALC similarly alleges the necessary *Gingles* element regarding a large and geographically compact minority group with respect to HD 80 (*see id.* at ¶¶ 112, 117, 118), HD 90 (*see id.* at ¶¶ 122-125), HD 118 (*see id.* at ¶¶ 126-130), Harris County (*see id.* at 135, 136, and 141), West Texas near Odessa (*see id.* at ¶ 142), Central Texas along the I-35 corridor between Bexar and Travis counties (*see id.* at ¶ 143), and Nueces County (*see id.* at 144). These allegations establish a sufficiently large and geographically compact minority group on both a district-specific and regionally specific basis, which provides the Defendants notice of the claim and plausibly satisfies the first *Gingles* element. Rule 12(b)(6) does not require more.

With respect to the Texas Congressional delegation, MALC alleges directly that Congressional District 23 has "been a repeated target of the Texas legislature for Latino vote dilution," *id.* at ¶ 146, and cites the history and similarity of VRA violations that courts have found in relation to the District. *Id.* at ¶¶ 147-152. MALC alleges that CD 23 in its current configuration under the benchmark is a sufficiently large and geographically compact majority Latino district. *See id.* at ¶ 153. MALC alleges that the Congressional redistricting map, C2193, specifically reduces the Hispanic citizen voting age population below a majority and that Latinos and Spanish speakers are sufficiently numerous and compact in the region to form a majority minority group. *Id.* at ¶¶ 154-155.

MALC has also made the same sufficient allegations with respect to CD 15 and CD 27. *Id.* at ¶¶ 156-160. Indeed, MALC specifically pleads that "a district configuration which puts some or all of Nueces County into CD 15 and Central Texas counties such as Wilson, Guadalupe, and Karnes into CD 27 – or a district configuration which puts some or all of Nueces County into CD 34 while putting more of Hidalgo County into CD 15 and the Central Texas counties into CD 27 – would provide Latino and Spanish language communities in CD 15 and Nueces County with a more equal opportunity to elect candidates of their choice." *Id.* at ¶ 160.

With respect to regional allegations of missing minority opportunity groups, Defendants' arguments also miss the mark. MALC specifically alleges that sufficiently large and geographically compact Latino communities exist in both DFW and Harris County that would justify drawing additional Latino opportunity districts in those regions. *See id.* at ¶¶ 161-164. These are region specific and provide Defendants with both notice and opportunity to defend the claims sufficient to satisfy Rule 12(b)(6).

Similarly, MALC alleged both district-specific and regional violations related to the State Board of Education. Paragraph 165 of MALC's Complaint, for example, pleads that under the State

Board of Education redistricting plan, E2106, "the performance of two out of three of the existing Latino opportunity districts is at best marginal" and that this is a result of "bringing in distant, predominantly Anglo counties such as Wilson, Dewitt, Lavaca, Goliad, and Jackson." *Id.* The Complaint alleges further that "large populations of Latinos in Central Texas between Bexar and Travis County are included in a district where they have an equal opportunity to elect candidates of their choice in primary elections…" *Id.* at ¶ 166.

All the foregoing specific allegations satisfy Defendants' complaint that "MALC fails to identify the 'relevant geographic area'…" Mot. at 13. Defendants' argument is really just a complaint about the particularity of the allegations, but Federal Rule of Civil Procedure 8 and 12(b)(6) do not require such particularized pleading. This is not a claim of fraud or mistake *See* FED. R. CIV. P. 9(b). Under Rule 8 and 12's pleading standards, the allegations are more than adequate. *See e.g., Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) ("In order to survive a motion to dismiss under rule 12(b)(6), appellants were required only to allege that the Ward Redistricting Act dilutes minority voting strength such that minority voters in the relevant wards have 'less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.'").

### b.   MALC has adequately alleged political cohesion and Anglo bloc voting.

Defendants claim MALC has not set forth any district-specific allegations on Latino and Anglo voting patterns and electoral results. Mot. at 14. But this is patently wrong. MALC alleges that a wholesale district was removed in El Paso fragmenting the region's political cohesion. Compl. at ¶ 90, 93, 94, and 95 ("El Paso is a cohesive community with identifiable communities of interest. Plan H2316 deprives these communities of equal representation."). MALC alleges that in HD 31 "due to the dilution of Latino and Spanish community voting strength coupled with the inclusion of new high Anglo turnout counties with extreme Anglo bloc voting, such as Wilson and Karnes

Counties, the Latino and Spanish Language community candidate of choice would be practically unable to win an election in HD 31." *Id.* at ¶ 101. MALC alleges that current benchmark districts in HD 35, 37, and 38 "all consistently elect the candidate of choice for Latinos and the Spanish language community" and that "due to the systematic arrangement of high turnout, extreme Anglo bloc voting, less Spanish-speaking areas in HD 37, Latinos and the Spanish language community would face significant hurdles to electing the candidate of their choice for Representative." *Id.* at ¶¶ 104, 110.

MALC makes the same or similar types of *factual* allegations with respect to HD 80, 90, 118, Harris County, West Texas, Central Texas, Nueces County, CD 23, CD 15, CD 27, and SBOE Districts 2 and 3. *See id.* at ¶¶ 112, 117 (HD 80), 122-124 (HD 90), 126-130 (HD 118), 135-141 (Harris County region), 142-145 (West Texas, Central Texas and Nueces County), 152-155 (CD 23), 156-157, 160 (CD 15 and 27), 161-162 (DFW Congressional), 163-164 (Harris County Congressional), and 165-169 (SBOE).

MALC also alleges that "voting is polarized between Anglo and Latino voters and Spanish language voters at levels which are legally significant in the regions" described in the complaint. *Id.* at ¶ 170-171. MALC alleges that Anglo bloc voting is both present and sufficiently cohesive to prevent an equal opportunity for Latino voters. *Id.* at ¶ 172. Defendants focus their Motion only on these last two allegations arguing that they are bare legal conclusions. First, they are not legal conclusions; rather, they are factual averments that both racially polarized voting actually exists and occurs in the affected regions and districts. Second, the analysis supporting these allegations is almost certainly going to be the subject of extensive expert opinion and testimony in this case.

Indeed, in virtually every Section 2 case seeking to establish statistical dilution and the existence of racially polarized voting, expert opinion is necessary to evaluate the claims. Nothing at the Rule 12 pleadings stage or Section 2 jurisprudence requires a plaintiff to plead the entirety of its case before discovery even commences and this Court should reject Defendants' invitation to import

such a standard into this case.[4] *See e.g., Harding v. County of Dallas*, 2015 WL 11121002, at *1 (N.D. Tex. May 28, 2015) ("And it is worth nothing that, although Rule 12(b)(6) dismissals are certainly possible in voting rights cases, the typical case (like this one) is permitted to move past the pleadings stage to an exploration of the merits.").

> ### 2.    Plaintiff's allegations related to Spanish language discriminatory effect are relevant.

Defendants also argue that MALC's pleadings related to Spanish language discriminatory effect should be stricken pursuant to Federal Rule of Civil Procedure 12(f). The allegations, however, should not be stricken. Although a court has never had to decide whether there is a distinct Section 2 claim for language minority groups as a specifically non-English speaking subgroup of an ethnicity, that does not render the allegations meaningless. These metrics of voting strength, as alleged in the Complaint, are certainly relevant in determining whether, under the totality of the circumstances, the political process is equally open to voters of Hispanic origin and whether any unconstitutional discrimination has occurred.

Spanish-speaking Latinos represent a discrete, insular, and particularly vulnerable community of interest within the larger Latino community. Though in one section of the VRA, Congress defines "language minority group" more broadly as "persons who are American Indian, Asian American, Alaskan Natives or of Spanish heritage," 52 U.S.C. § 10310, the text of the Act itself is replete with references to the unique discrimination against language minorities qua non-English speakers.[5] Given the particular history of discrimination against Spanish-speaking Latinos

---

[4] Defendant also argues in a footnote that Section 2 of the Voting Rights Act does not apply to redistricting. Again, Plaintiff requests the opportunity to separately brief this issue should the Court consider revisiting settled law to the contrary. Defendants concede the argument is "currently foreclosed by precedent." Mot. at 15, n.3.

[5] *See e.g.,* 52 U.S.C. § 10303(f)(1) ("The Congress finds that voting discrimination against citizens of language minorities is pervasive and national in scope. Such minority citizens are from environments in which the dominant language is other than English. In addition, they have been denied equal educational opportunities by State and local governments, resulting in severe disabilities and continuing illiteracy in the English language. The Congress further finds that, where State and local officials conduct elections only in English, language minority citizens are excluded from participating in the electoral process. In many areas of the country, this exclusion is aggravated by acts of physical, economic, and

and continued socio-economic disparities they face, *see, e.g.*, Complaint at 3, ¶¶ 189-90, 193, 211, any systematic burdening of Spanish-speaking voters—either in terms of intent or effect—undoubtedly informs the totality of the circumstances inquiries under the Section 2 and *Arlington Heights* frameworks.

Defendants further fault MALC's use of "information and belief" pleadings in this context. Mot. at 12. However, the Complaint identifies a factual basis for this information and belief—American Community Survey data—and includes the caveat only to indicate that this is a preliminary analysis. MALC intends to rely on further factual development and expert testimony to demonstrate the role of discrimination against Spanish-speaking communities in the drawing of challenged districts, and it would be prejudicial to strike these factual allegations from the Complaint.

### B.   MALC Has Sufficiently Alleged Discriminatory Intent Claims Under the *Arlington Heights* standard.

Defendants assert MALC fails to allege a claim for intentional discrimination. Mot. at 17-18. Yet again, Defendants ignore large relevant sections of Plaintiff's pleading, and their argument for dismissal in this regard is merely a factual disagreement with the allegations or the inferences that may be reasonably drawn from those factual pleadings.

First, Defendants assert MALC has not plausibly alleged discriminatory effect. *Id* at 17. As just detailed, MALC goes through extensive region and district-specific allegations detailing the discriminatory effects of the Legislature's redistricting plans. Additionally, MALC also specifically alleges that each of the plans severely under-represents Latinos as compared to their percentage of the citizen voting age population, while nevertheless increasing representation for Anglos regardless of their partisanship. Compl. at ¶¶ 173-80. This sort of disparate impact is highly relevant to a determination of discriminatory intent. *See Village of Arlington Heights v. Metropolitan Housing*

---

political intimidation. The Congress declares that, in order to enforce the guarantees of the fourteenth and fifteenth amendments to the United States Constitution, it is necessary to eliminate such discrimination by prohibiting English-only elections, and by prescribing other remedial devices.").

*Development Corp.*, 429 U.S. 252, 266 (1977) (quoting *Washington v. Davi*s, 426 U.S. 229, 242 (1976)) ("[t]he impact of the official action" and "whether 'it bears more heavily on one race than another'" as "an important starting point" for the intentional discrimination inquiry.").

As this Court knows, both Section 2 of the VRA and the Fourteenth and Fifteenth Amendments prohibit the use of redistricting plans adopted for a discriminatory purpose. Because "smoking gun" evidence or other clear evidence of intent is both rare and not required to establish discriminatory purpose, courts often look at circumstantial evidence to evaluate discriminatory intent. *Arlington Heights* outlines a non-exclusive list of factors relevant in evaluating intent claims: (1) the impact of the decision; (2) the historical background of the redistricting decision; (3) the sequence of events leading up to the decision; (4) whether the challenged plan departs, either procedurally or substantively, from the normal practice; and (5) contemporaneous statements and viewpoints held by the decisionmakers. *See id.* at 266-68. Importantly, discriminatory intent must only be one motivating factor behind the challenged decision to violate Section 2 and does not have to be the exclusive motivating factor. *See League of United Latin American Citizens v. Perry*, 548 U.S. 399, 440 (2006).

Here, MALC alleged facts that when taken as true, which this Court must, create a clear inference of discriminatory intent, satisfying both the *Arlington Heights* and Section 2 "totality of the circumstances" frameworks at the pleading stage. MALC pleads Texas has a long history of intentional discrimination and violations of the VRA and continues to administer elections and enforce laws depriving Latinos and Spanish speakers of an equal opportunity to participate. *See* Compl. at ¶ 181-193. MALC pleads that the racial dynamics of modern political campaigns and appeals are racially animated and meant to discourage or intimidate Latino voters. *See id.* at ¶ 194-215. MALC alleges that traditional redistricting principles, which may otherwise support valid redistricting plans, were applied unequally and often to the specific, intended detriment of Latino or Spanish-speaking legislators and communities. *See id.* at ¶ 216-220.

And in the context of these specific factual allegations satisfying *Arlington Heights*, MALC also made specific and detailed allegations about the suspicious, truncated, and anti-deliberative lawmaking process that culminated in the passage of the redistricting maps at issue. *See id.* at ¶¶ 24-85. Defendants posit that the short-circuited nature of the legislative process was entirely the result of delayed census results. Mot. at 18-19. But this is a quintessential factual disagreement. *See Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009) ("*Twombly* . . . made it clear. . . that a court must take the allegations as true, no matter how skeptical the court may be.").

And beyond the truncated nature of the debate, MALC specifically alleges procedural departures that targeted minorities, such as refusing to accept questions or amendments from minority representatives or that would have benefited minority opportunity districts. *See, e.g.*, Compl. at ¶¶ 36, 37, 53, 54, 55, 74, 75, 77, 79, 80, 85. Additionally, non-English speakers were prevented from participating fully in the process. *Id.* at ¶ 46. Further, even if the census delay necessitated shortened deliberations, intentional discrimination need be only *a* motivating factor for a successful Section 2 claim under the VRA, not the exclusive factor. In other words, Defendants may think they have an excuse for the legislative irregularities, but they have offered nothing more than a pretext for racial discrimination.

## IV.    MALC Has Alleged Plausible Racial Gerrymandering Claims.

Defendants argue that MALC has not alleged plausible racial gerrymandering claims because the pleadings are too general. But MALC has adequately alleged a claim for racial gerrymandering.

Specifically, MALC alleges in paragraph 221 of the Complaint that the "shape and composition of many districts – in particular the Texas House, Congressional, and SBOE districts in Harris County, and the Congressional districts in the DFW metroplex – are inexplicable except on the grounds of race." Defendants assert this is a legal conclusion, but it is not; rather, it is a factual statement that the districts are drawn in contorted, misshapen ways that cannot be explained on

grounds other than race. The seminal case on the issue of racial gerrymandering held that "redistricting legislation that is so bizarre on its face that it is 'unexplainable on grounds other than race,' demands the same close scrutiny that we give other state laws that classify citizens by race. Our voting rights precedents support that conclusion." *Shaw v. Reno*, 509 U.S. 630, 644 (1993) (quoting *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266 (1977). This is precisely what MALC alleges.

MALC also pleads that the House leadership explicitly made race a part of their justification for H2316 yet refused to answer questions or accept amendments that highlighted or illustrated specific racially discriminatory effects. *See* Compl. at ¶¶ 222-230. For example, MALC alleges "amendments were offered, and in some cases accepted, on the explicit grounds that they made districts hit certain arbitrary racial metrics without substantive analysis of if doing so was relevant to a Voting Rights Act violation." Similarly, an "amendment which would have created a new, Voting Rights Act-compliant Latino opportunity district in Dalla County was rejected on the grounds that it lowered the Latino population in the coalition-type CD 33. No substantive analysis was provided as to why creating a new Latino majority district in Dallas County at the expense of slightly reducing the Latino population in CD 33 presented a problem under the Voting Rights Act." *Id.* at. ¶ 230.

MALC's pleading is regionally specific – MALC is targeting racial gerrymandering as a practice in the DFW Metroplex (e.g., Dallas and Tarrant Counties) and Harris County. The obvious and practical implication is that the districts drawn in these regions are all tainted racial gerrymanders. The Complaint even specifies CD 6 and 33 as obviously misshapen and contorted efforts that are inexplicable other than on racial grounds. Compl. at ¶ 229. A cursory look at the map itself confirms the absurdly drawn districts:



Excerpt from Congressional Plan 2193 (https://dvr.capitol.texas.gov/Congress/56/PLANC2193).

In addition, the specific allegations set forth above for each of the challenged districts under the VRA also support claims that the districts were drawn with race as the primary consideration, and they are specific district-by-district factual allegations.

The remainder of the Defendants' complaints are all just disagreements or discounts of the evidentiary significance of Plaintiff's factual allegations. *See* Mot. at 22-23. But this type of argument requires the Court to draw inferences against the Plaintiff, which it is not permitted to do at the pleadings stage. At bottom, the law does not require more specificity at the pleading stage and, notably, Defendants cite to no such authority. The seminal case on racial gerrymanders, *Shaw v. Reno*, 509 U.S. 630 (1993), certainly does not require such specific pleading and neither do any of the other authorities Defendants cite.

## V.    MALC Has Alleged Plausible Malapportionment Claims.

Defendants finally argue that MALC's claim for malapportionment under *Cox v. Larios*, 542 U.S. 947 (2004) should be dismissed. Defendants' argument is a misapprehension of MALC's *Larios* claim and over-generalizes the claim. Defendants' motion should be denied.

In *Larios*, the Supreme Court refused to create a complete safe-harbor for population deviations within 10% between the largest and smallest districts and specifically found that the Constitution's protection under the equal protection clause for one-person, one-vote was sufficiently

strong that it precluded racial, regional, and even partisan gerrymanders in Georgia maps. *Larios*, 542 U.S. at 949 ("In challenging the District Court's judgment, appellant invites us to weaken the one-person, one-vote standard by creating a safe harbor for population deviations of less than ten percent, within which districting decisions could be made for any reason whatsoever. The Court properly rejects that invitation.").

Here, MALC alleges that systematic over-population of districts in El Paso with Hispanic and Latino voters and systematic under-population of Anglo voter districts in North and East Texas improperly diluted Hispanic and Latino voting strength in House Districts 74, 75, and 77. *See* Compl. at ¶¶ 218, 241. As alleged in the Complaint, "population deviations in Plan H2316 were severely manipulated in West Texas to overpopulate every Latino opportunity district and underpopulate every Anglo controlled district…" This allegation coupled with MALC's pleading that "the configuration and systematic overpopulation of Texas House Districts in El Paso, in particular the consolidation of House Districts 76 and 77, dilutes the voting power of cohesive Latino communities," provides a factual basis consistent with the Complaint's allegation that "there is no legal justification for maintaining a deviation of 9.98% for these purposes." *Id.*

These allegations track and are consistent with the rule in *Larios* that manipulations of populations to dilute voting power of communities of interest violates the Equal Protection Clause's one-person, one-vote requirement and are sufficient to state a plausible claim for relief. Indeed, just as in *Larios*, candidates were paired against each other to reduce voting power of the affected demographic, the difference being that the candidates were paired not based on partisanship but instead paired on account of race and region. MALC has stated a malapportionment claim and the motion should be denied.

**VI.     Alternatively, MALC Should Be Granted Leave To Re-plead.**

To the extent the Court believes the pleadings are deficient or otherwise inadequate, MALC respectfully requests leave to amend to cure any such defects.[6]

**VII.    Conclusion.**

MALC has asserted serious and detailed claims of both discriminatory effect and discriminatory intent with respect to the redistricting plans adopted in the third special session of the 87th Texas Legislature. Defendants' challenges to the claims are either wrong legally or mere factual disagreements that must be resolved at an ultimate trial on the merits. The Court should not permit Texas to continue its long history of racially discriminatory redistricting practices. The first step in ending that discrimination is denying Defendants' motion and permitting the case to proceed to discovery and, ultimately, to trial.

---

[6] *See Foman*, 371 U.S. at 182; *see also Alabama Legis. Black Caucus v. Alabama*, 575 U.S. 254, 256 (2015) (membership organization should have opportunity to bolster its claim of associational standing).

Dated: January 14, 2022.

Respectfully submitted,

SOMMERMAN, MCCAFFITY,
QUESADA &GEISLER, L.L.P.

*/s/ Sean J. McCaffity*
_____

George (Tex) Quesada
State Bar No. **16427750**
Email:  quesada@textrial.com

Sean J. McCaffity
State Bar No. 24013122
Email:  smccaffity@textrial.com

3811 Turtle Creek Boulevard, Suite 1400
Dallas, Texas  75219-4461
214/720-0720 (Telephone)
214/720-0184 (Facsimile)

-and-

Joaquin Gonzalez
Texas Bar No. 24109935
1055 Sutton Dr.
San Antonio, TX  78228
jgonzalez@malc.org

### ***ATTORNEYS FOR PLAINTIFFS***

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Response to Motion to Dismiss was filed and served via CM/ECF electronic service on January 14, 2022 to all counsel of record.

*/s/ Sean J. McCaffity*
_____

PLAINTIFF MALC'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS