# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **LEAGUE OF UNITED LATIN AMERICAN CITIZENS,** *et al.*, | § § § | |
| ***Plaintiffs,*** | § | |
| **v.** | § § | **EP-21-CV-00259-DCG-JES-JVB** |
| **GREG ABBOTT,** *in his official capacity as Governor of the State of Texas,* ***et al.***, | § § § | **[Lead Case]** |
| ***Defendants.*** | § § | |
| **ROY CHARLES BROOKS,** *et al.*, | § § | |
| ***Plaintiffs,*** | § § | |
| **v.** | § § | |
| **GREG ABBOTT,** *in his official capacity as Governor of the State of Texas,* ***et al.*** | § § § | **Case No. 1:21-CV-00991-LY-JES-JVB** **[Consolidated Case]** |
| ***Defendants.*** | § § § | |

## MEMORANDUM OPINION AND ORDER

In their Motion to Dismiss the Brooks Plaintiffs' Claims (ECF No. 43), Defendants assert that those Plaintiffs have failed to state a claim. We have already addressed Defendants' arguments that Plaintiffs lack a private cause of action to enforce Section 2 of the Voting Rights Act (VRA) and that they have failed to show standing, *see* Order Denying in Part Defs.' Mot. to Dismiss, ECF No. 58; Mem. Op. & Order, ECF No. 119, and now turn to Defendants' remaining objections. Insofar as it addresses the Brooks Plaintiffs' failure to state a claim, the motion to dismiss is DENIED.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter which, when taken as true, states 'a claim to relief that is plausible on its face.'" *Innova Hosp.*

*San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plaintiffs need not make evidentiary showings or demonstrate that they are likely to prevail.  But "[t]hreadbare recitals of the elements of a cause of action" are not enough.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, Plaintiffs must "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  In reviewing the complaint, we accept its factual allegations as true and view those facts in the light most favorable to Plaintiffs.  *Innova Hosp.*, 892 F.3d at 726. Our task is to determine whether Plaintiffs have "stated a legally cognizable claim that is plausible, not to evaluate [their] likelihood of success."  *Doe* ex rel*. Magee v. Covington Cnty. Sch. Dist*. ex rel. *Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (en banc) (cleaned up).[1]

Defendants divide their merits objections into two categories.  First, they maintain that Plaintiffs have failed to plausibly allege discriminatory effects as required by Count 5 of Plaintiffs' complaint.  Second, Defendants maintain that Plaintiffs have failed to plausibly allege discriminatory intent as required by the remaining counts.  We examine each category in turn.

## I.

To allege a discriminatory effects claim under Section 2 of the VRA, Plaintiffs must show that Senate District ("SD") 10, the object of this litigation, plausibly meets three conditions set forth in *Thornburg v. Gingles*, 478 U.S. 30 (1986).  Those conditions are: (1) a minority population that is sufficiently large and compact to form a majority of a single district, (2) the minority group is politically cohesive, and (3) the majority votes as a bloc to defeat the minority. *See id.* at 50–51.

---

[1] *Cf. Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that . . . a recovery is very remote and unlikely."  (cleaned up)).

On the first *Gingles* condition, Defendants take issue with Plaintiffs' use of a "coalition" theory—Plaintiffs allege that black and Hispanic voters together are sufficiently numerous to form the majority of a state senate district, but not that either group is sufficiently numerous on its own.  Compl. at 27, *Brooks v. Abbott*, No. 1:21-CV-00991-LY-JES-JVB (W.D. Tex.), ECF No. 1.  But as Defendants acknowledge, the Fifth Circuit has held that such coalitions *can* satisfy the first *Gingles* condition.  *See Campos v. City of Baytown*, 840 F.2d 1240, 1244 (5th Cir. 1988).  Defendants contend that the Supreme Court has overruled *Campos*, but we disagree and therefore apply it.

Defendants point to two Supreme Court decisions: *Bartlett v. Strickland*, 556 U.S. 1 (2009), and *Perry v. Perez*, 565 U.S. 388 (2012).  In *Bartlett*, the Supreme Court held that *Gingles* does not require the creation of "crossover" districts, meaning ones in which a portion of the majority votes with the minority.  *See Bartlett*, 556 U.S. at 25–26 (plurality opinion). Defendants maintain that the Supreme Court's logic applies inescapably to coalition districts as well as crossover districts, but the Court itself did not think so—it specifically declined to address districts in which "two minority groups form a coalition to elect the candidate of the coalition's choice."  *Id.* at 13.  We take the Court at its word and do not read *Bartlett* to conflict with *Campos*.

As for *Perry*, the Supreme Court in that case, in an eight-Justice[2] *per curiam* opinion, vacated a decision by this Court on several grounds, one of which was that we had been "unclear" in our approach to drawing certain districts.  *Id.* at 398 (per curiam).  The Court mentioned we might have attempted to draw a coalition district, and that if that was the case then

---

[2] Justice Thomas concurred in the judgment because he disagreed with the Court's premise that Section 5 of the VRA was constitutional.  *See Perry*, 565 U.S. at 399 (Thomas, J., concurring in the judgment).

we had "no basis for doing so." *Id.* at 399.  In support of that point, the Supreme Court cited,

with a "*cf.*" signal, the pages of *Bartlett* on which the Court had clarified that it was not

addressing coalition districts.  *Id.* (citing *Bartlett*, 556 U.S. at 13–15 (plurality opinion)).  We

read Supreme Court opinions closely, but to conclude, as do Defendants, that the "no basis"

aside overruled *Campos* is nothing more than speculation.  We reject that reading.[3]  The question

of coalition districts' viability under *Gingles* is subject to a circuit split and would doubtless

benefit from clarification.[4]  But until that happens, *Campos* binds us to conclude that Plaintiffs

have properly alleged a district that would satisfy the first *Gingles* condition.

On the second *Gingles* condition, Defendants protest that Plaintiffs have not plausibly

alleged political cohesion between the black and Hispanic voters in their proposed coalition.

Defendants accuse Plaintiffs of making a mere conclusory assertion on that front.  Mot. to

Dismiss at 8, ECF No. 43.  But the complaint does list the results of several recent elections in

which, it says, minority-preferred candidates have succeeded.  Compl. at 9–10.  Reading those

election results favorably to Plaintiffs, they plausibly indicate that SD 10's blacks and Hispanics

vote cohesively for Democratic candidates.  Though Defendants press a more abstract definition

of political cohesiveness, a showing that a group tends to vote the same way is sufficient to

satisfy the second *Gingles* condition.  *See, e.g.*, *Gingles*, 478 U.S. at 56; *Campos* 840 F.2d at

124; *LULAC v. Clements*, 986 F.2d 728, 743 (5th Cir. 1993).  The complaint by no means

resolves all factual doubts on that score—as Defendants correctly point out, it does not discuss

---

[3] *See United States v. Guerrero*, 768 F.3d 351, 359 (5th Cir. 2014) ("[F]or a Supreme Court decision to change our Circuit's law, it must be more than merely illuminating with respect to the case before the court and must unequivocally overrule prior precedent." (cleaned up)).

[4] *Compare Nixon v. Kent Cnty.*, 76 F.3d 1381, 1388 (6th Cir. 1996) (en banc) (rejecting coalition districts), *with Concerned Citizens of Hardee Cnty. v. Hardee Cnty. Bd. of Comm'rs*, 906 F.2d 524, 526 (11th Cir. 1990) (accepting them).

primary elections,[5] which are sometimes deemed highly probative in assessing political

cohesiveness.  *See Rodriguez v. Pataki*, 308 F. Supp. 2d 346, 421 (S.D.N.Y.) (three judge court),

*aff'd*, 543 U.S. 997 (2004) (mem.).  But Plaintiffs have successfully crossed the line from

conceivable to plausible.  *See Twombly*, 550 U.S. at 555 ("[A] complaint attacked by a Rule

12(b)(6) motion to dismiss does not need detailed factual allegations.").

On the third *Gingles* condition, Defendants complain that, while Plaintiffs allege that the

non-Hispanic white voters added to SD 10 tend to vote for Republicans, Plaintiffs do not

distinguish between illegal vote dilution and ordinary defeat at the polls.  Mot. to Dismiss at 10.

As Defendants point out, the Fifth Circuit has held that when racially divergent voting patterns

are best explained by mere partisanship, a *Gingles* claim fails.  *See LULAC v. Clements*, 999

F.2d 831, 850 (5th Cir. 1993) (en banc).  That court acknowledged, however, that partisanship

may sometimes serve as a proxy for race, *id.* at 860, and the Supreme Court has often placed

great weight on partisan election results in assessing whether *Gingles*'s third condition is met,

*see, e.g.*, *LULAC v. Perry*, 548 U.S. 399, 427 (2006); *Cooper v. Harris*, 137 S. Ct. 1455, 1470

(2017).  Plaintiffs allege that non-Hispanic whites in the redrawn SD 10 vote by large margins

for Republican candidates and against Democratic candidates, who are preferred by the large

majority of blacks and Hispanics.  Compl. at 9–14.  While much remains to be proven, those

allegations are enough to make it plausible that Plaintiffs will satisfy the third *Gingles* condition.

## II.

Turning to Plaintiffs' discriminatory intent claims, Defendants' objection is more easily

summarized: Plaintiffs' allegations are indicative of a legislature driven purely by partisanship

---

[5] *See* Mot. to Dismiss at 8; *id.* at 9 n.2 (stating at this stage, the Court need not tackle the issue of whether general or primary elections are more probative in part because Plaintiffs have not alleged facts regarding primary elections).

rather than race.  Defendants point out that Plaintiffs must carry a heavy burden to overcome the presumption of legislative good faith.  *See Miller v. Johnson*, 515 U.S. 900, 915 (1995).  And they urge that partisanship serves as an "obvious alternative explanation" that, because Plaintiffs cannot discount it, renders their allegations implausible.  *See Iqbal*, 556 U.S. at 681–83 (holding allegations of purposeful, invidious discrimination implausible where an "obvious alternative explanation" appears a "more likely" cause of the claimed misconduct).

Racial and partisan motives in redistricting are indeed difficult to disentangle.  *See Cooper*, 137 S. Ct. at 1473 ("[A] trial court has a formidable task: It must make a sensitive inquiry into all circumstantial and direct evidence of intent to assess whether the plaintiffs have managed to disentangle race from politics and prove that the former drove a district's lines." (cleaned up)).  Plaintiffs are not required to produce a "smoking gun," especially not in their initial complaint, to make a plausible allegation of racial intent.  Rather, Plaintiffs may point to circumstantial evidence including recent history, departures from normal procedure, and legislative history to infer racially discriminatory intent.  *See Reno v. Bossier Parish Sch. Bd.*, 520 U.S. 471, 488–89 (1997) (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 366 (1977)).  While such showings are difficult, they are not impossible.  *See, e.g.*, *Cooper*, 137 S. Ct. at 1477; *Perez v. Abbott*, 253 F. Supp. 3d 864, 962 (W.D. Tex. 2017) (three judge court).

Here, Plaintiffs make numerous allegations including that Texas legislators were aware that a previous redrawing of SD 10 along similar lines had been found to be intentionally discriminatory, that the legislature rushed its normal hearings process, and that the senator most responsible for the redistricting gave unconvincing reasons for her decisions.  Compl. at 15–21. In arguing that the legislature's motive was "merely partisan," not racial (Defendants' suggested

"obvious alternative explanation"), Defendants seize upon two allegations: that in the old SD 10, Democrats won eight of eight races and that in newly redistricted SD 10, Republicans would have won five of five races.  Mot. to Dismiss at 10 (citing Compl. at ¶¶ 37, 47).  Defendants' alternative explanation drawn from these two allegations is not so obvious as to render Plaintiffs' claims facially implausible.  *Cf. Cooper*, 137 S. Ct. at 1473 (noting "political and racial reasons are capable of yielding similar oddities in a district's boundaries" where the voting population is one in which race and political affiliation are highly correlated).

Defendants suggest various other explanations, such as that pandemic-related delays forced the legislature to hurry, that, they seem to posit, unmoor any inference of intentional discrimination from Plaintiffs' allegations.  Mot. to Dismiss at 12.  These explanations, though they are themselves plausible, do not on their own render Plaintiffs' allegations implausible.  *See Arnold v. Williams*, 979 F.3d 262, 268 (5th Cir. 2020) (At the 12(b)(6) stage, "it is inappropriate for a district court to weigh the strength of the allegations.").[6]  Defendants also protest that statements of one senator, even a committee chair, cannot be presumed to have been accepted by all those who voted to redraw SD 10.  Mot. to Dismiss at 13; *see also Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2350 (2021).  Indeed, they cannot be, but in an inquiry as open-ended as the search for discriminatory intent, *see Arlington Heights*, 429 U.S. at 266, those statements can still provide significant evidence.

On the road ahead, Plaintiffs face a heavy evidentiary burden, and Defendants may well prevail.  But it is striking that while Defendants cite several cases rejecting allegations of discriminatory intent in the voting rights context, seemingly all of them reached that conclusion

---

[6] *See also Wilson v. Ark. Dep't of Hum. Servs.*, 850 F.3d 368, 373 (8th Cir. 2017) ("Requiring a plaintiff to rule out every possible lawful explanation for the conduct he challenges would impose the sort of probability requirement at the pleading stage which *Iqbal* and *Twombly* explicitly reject." (cleaned up)).

by weighing evidence produced at trial.  *See Abbot v. Perez*, 138 S. Ct. 2305, 2328–30 (2018); *Brnovich*, 141 S. Ct. at 2349–50; *City of Mobile v. Bolden*, 446 U.S. 55, 71–74 (1980) (plurality opinion).  At the pleading stage, however, we are not to evaluate Plaintiffs' likelihood of success. *Doe* ex rel. *Magee*, 675 F.3d at 854, *supra*.  Plaintiffs' allegations here are not so threadbare or conclusory as to prevent them from making their case.  The complaint's allegations of discriminatory intent are sufficiently plausible to survive Defendants' motion to dismiss.

### III.

For the reasons explained, Defendants' motion to dismiss (ECF No. 43) is **DENIED** insofar as it addresses failure to state a claim.  This order does not address whether Plaintiffs have shown a likelihood of success on the merits of any of their claims.

The District Clerk shall TERMINATE Defendants' motion to dismiss (ECF No. 43) indicating that it has been granted in part and denied in part collectively by the Court's Order Denying in Part Defendants' Motion to Dismiss (ECF No. 58), its Memorandum Opinion and Order (ECF No. 119), and this Memorandum Opinion and Order.

**So ORDERED and SIGNED on this   18th   day of January 2022.**

**DAVID C. GUADERRAMA**
**UNITED STATES DISTRICT JUDGE**

*And on behalf of:*

| | | |
|---|---|---|
| **Jerry E. Smith** | | **Jeffrey V. Brown** |
| **United States Circuit Judge** | *-and-* | **United States District Judge** |
| **U.S. Court of Appeals, Fifth Circuit** | | **Southern District of Texas** |