## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

|  |  |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>GREG ABBOTT, in his official capacity as Governor of the State of Texas, *et al.*,<br><br>*Defendants*. | CIVIL ACTION NO.<br>3:21-cv-00259-DCG-JES-JVB<br>[Consolidated Lead Case] |

### <u>RULE 26(f) CONFERENCE REPORT</u>

Pursuant to the Court's December 17, 2021 Scheduling Order (Dkt. 96), as amended by the Court's December 27, 2021 order (Dkt. 109), and Rule 26(f) of the Federal Rules of Civil Procedure, the parties conducted a Rule 26(f) conference by Zoom on January 6, 2022.  In attendance were:  Nina Perales, Samantha Serna and Kenneth Parreno for the plaintiffs in *League of United Latin American Citizens (LULAC) v. Abbott*;  Richard Gladden for the plaintiff in *Wilson v. Texas*; David Fox for the plaintiffs in *Voto Latino v. Scott*; Sean McCaffity for the plaintiff in *Mexican American Legislative Caucus (MALC) v. Texas*; Chad Dunn and Mark Graber for the plaintiffs in *Brooks v. Abbott*; Ezra Rosenberg and Robert Notzon for the plaintiff in *Texas State Conference of the NAACP v. Abbott*; Noor Taj for the plaintiffs in *Fair Maps Texas Action Committee v. Abbott*; Timothy Mellett and Daniel Freeman for the plaintiff in *United States v. Texas*; Martin Golando for the plaintiff in *Martinez Fischer v. Abbott*; and Patrick Sweeten, Eric Hudson, Will Thompson and Kathleen Hunker for Defendants.  Counsel for Plaintiff-Intervenors

Eddie Bernice Johnson, Sheila Jackson Lee, Alexander Green and Jasmine Crockett was not present at the Rule 26(f) conference but joins the other Plaintiffs' position expressed herein.[1]

The parties conferred regarding the topics set forth in Fed. R. Civ. P. 26(f) and report as follows:

## I. Possibility of Settlement

The parties agree that there is no possibility of settlement.

## II. Nature and Basis of the Parties' Claims and Defenses

The following summarizes the claims and defenses asserted by each Plaintiff group and Defendants.

### A.    *LULAC Plaintiffs*[2]

LULAC Plaintiffs assert that the redistricting plans enacted by the 87th Texas Legislature for the Texas House of Representatives ("Texas House"), Texas Senate, Texas State Board of Education ("SBOE") and Congress violate the United States Constitution and the Voting Rights Act of 1965.

Regarding the newly enacted Texas House plan, LULAC Plaintiffs contend that Defendants failed to create an additional Latino citizen voting age majority district in (1) Harris County, (2) the geographic area including portions of Caldwell, Hays and Travis counties and (3)

---

[1]  Additionally, on January 13, 2022—after the parties' Rule 26(f) conference—the Court consolidated *Escobar v. Abbott*, 3:22-cv00022-DCG-JES-JVB (W.D. Tex.), with the instant suit.  Dkt. 137.  Although Plaintiff Escobar did not participate in the conference, she joins the other Plaintiffs' positions expressed herein.

[2] LULAC Plaintiffs include League of United Latin American Citizens, Southwest Voter Registration Education Project, Mi Familia Vota, American GI Forum of Texas, La Union del Pueblo Entero, Mexican American Bar Association of Texas, Texas Hispanics Organized for Political Education, William C. Velasquez Institute, Fiel Houston, Inc., Texas Association of Latino Administrators and Superintendents, Proyecto Azteca, Reform Immigration for Texas Alliance, Workers Defense Project, Emelda Menendez, Gilberto Menendez, Jose Olivares, Florinda Chavez, Joey Cardenas, Paulita Sanchez, Jo Ann Acevedo, David Lopez, Diana Martinez Alexander and Jeandra Ortiz.

the geographic area including portions of Ector and Midland counties. LULAC Plaintiffs also assert that Defendants purposefully manipulated district boundaries to weaken Latino voting strength, such that Latinos lack the ability to elect their preferred candidates in House Districts 31, 37 and 118. Additionally, LULAC Plaintiffs allege that Defendants systematically and deliberately malapportioned districts in West Texas to favor voters of certain regions at the expense of voters in other regions, and to favor Anglo voters at the expense of Latino voters.

Regarding the newly enacted Texas Senate plan, LULAC Plaintiffs contend that Defendants failed to create additional Latino citizen voting age majority districts in (1) the geographic area including portions of Dallas and Tarrant counties and (2) the geographic area including portions of Bexar, Hays, Caldwell, Guadalupe, Comal and Travis counties. LULAC Plaintiffs also assert that Defendants manipulated district boundaries in Senate District 27 with the purpose of reducing Latino voting strength and making it more difficult for Latinos to elect their preferred candidates.

Regarding the newly enacted Texas SBOE plan, LULAC Plaintiffs contend that Defendants failed to create an additional Latino citizen voting age majority district in Harris County. LULAC Plaintiffs also assert that Defendants manipulated the district boundaries of SBOE District 3 with the purpose of reducing Latino voting strength and making it more difficult for Latinos to elect their preferred candidates. Additionally, LULAC Plaintiffs allege that Defendants manipulated district boundaries in South Texas to limit Latino electoral opportunity in SBOE Districts 2 and 3.

Regarding the newly enacted congressional plan, LULAC Plaintiffs contend that Defendants failed to create additional Latino citizen voting age majority districts in (1) the geographic area including portions of Dallas and Tarrant counties, (2) Harris County, (3)

south/central Texas, including portions of Nueces, San Patricio, Bee, Goliad, Karnes, Gonzales, Caldwell, Bastrop and Travis counties and (4) the geographic area of enacted Congressional District 35.   LULAC Plaintiffs also assert that Defendants purposefully manipulated district boundaries to weaken Latino voting strength in Congressional District 23, such that Latinos lack the ability to elect their preferred candidates.   Additionally, LULAC Plaintiffs allege that Defendants manipulated district boundaries in Congressional District 15 with the purpose of reducing Latino voting strength and making it more difficult for Latinos to elect their preferred candidates.

Finally, LULAC Plaintiffs contend that the benchmark redistricting plans for the Texas House, Texas Senate and Congress are unconstitutionally malapportioned.

B.    *Plaintiff Wilson*

Plaintiff Damon James Wilson permanently resides in Grand Prairie, Texas.   On "Census Day" (April 1, 2020), Plaintiff Wilson was an inmate in the William P. Clements Unit of the Correctional Institutional Division of the Texas Department of Criminal Justice in Amarillo, Texas.   Plaintiff Wilson is currently being confined in the Jester III Unit in Richmond, Texas.

On October 18, 2021, the 87th Texas Legislature adopted "Plan C2193."   In accordance with official policy of the State of Texas, under Plan 2193 Plaintiff Wilson was officially classified as a constituent of Texas Congressional District 13 ("CD13").   CD13 encompasses the location where Plaintiff Wilson was confined on Census Day (April 1. 2020), and it does not encompass the location where Plaintiff Wilson currently is, and was on Census Day (April 2020), an "inhabitant" within the meaning of the U.S. Constitution.   Plaintiff Wilson contends that for purposes of representation in the U.S. House of Representatives he is an "inhabitant" of Texas Congressional District 30 ("CD30"), not CD13.   Plaintiff Wilson further claims the policy of the

State of Texas, which for federal representational purposes classifies him as an inhabitant of a location where he has never resided, violates his constitutional right to "equal representation" guaranteed by Article I, § 2 of the U.S. Constitution and § 2 of the Fourteenth Amendment to the U.S. Constitution.  Plaintiff Wilson also contends the policy of the State of Texas, described above, violates his constitutional right to Equal Protection of the Law under § 1 of the Fourteenth Amendment.

C.      *Voto Latino Plaintiffs*[3]

Voto Latino Plaintiffs assert that Senate Bill 6, which established new congressional districts for Texas based on the 2020 census, violates Section 2 of the Voting Rights Act by cracking and packing Texas communities of color to dilute their votes, ensuring that white Texans, despite making up just 40% of Texas's population, now form a majority of eligible voters in more than 60% of Texas's congressional districts.  Voto Latino Plaintiffs specifically challenge Senate Bill 6's failure to create two additional majority-Latino districts in South and West Texas, one additional majority-Latino or majority–Black and Latino district in the Dallas–Fort Worth area, and one additional majority-Latino or majority–Black and Latino district in the Houston area. Voto Latino Plaintiffs also challenge Senate Bill 6's re-drawing of Congressional District 23 to reduce its Latino population and prevent Latino voters in that district from electing their representatives of choice.

---

[3] Voto Latino Plaintiffs include Voto Latino, Rosalinda Ramos Abuabara, Akilah Bacy, Orlando Flores, Marilena Garza, Cecilia Gonzales, Augustin Loredo, Cinia Montoya, Ana Ramon, Jana Lynne Sanchez, Jerry Schafer, Debbie Lynn Solis, Angel Ulloa, and Mary Uribe.

D.    *Plaintiff MALC*

Plaintiff MALC brings Voting Rights Act and constitutional claims against the Texas Legislature's redistricting plans for the Texas House of Representatives, United States House of Representatives, and the Texas SBOE.

In particular, Plaintiff MALC alleges that Texas House districts 31, 37, 80, 90, 118, 145, and 148 were drawn to undermine Latino voting power in those regions and deprive Latinos of an equal opportunity to participate in the political process and elect candidates of their choice. Additionally, Plaintiff MALC alleges that the failure to draw additional Latino opportunity districts in West Texas in and around El Paso County, in Central Texas between Bexar and Travis Counties, in South Texas, and in Harris County violates the Voting Rights Act and constitution. Plaintiff MALC also alleges that the Legislature drew Texas House districts in Harris County using race as a predominant factor without a compelling justification for doing so.  Plaintiff MALC further alleges that the population deviations of Texas House districts in West Texas were manipulated for illegitimate ends in order to systematically favor Anglos and residents of the Plains and Panhandle regions while disfavoring Latinos and residents of the Transpecos region.

Plaintiff MALC alleges that Congressional Districts 23 and 15 were manipulated so as to undermine Latino voting strength and not give Latino residents in the region an equal opportunity to elect candidates of their choice.  Plaintiff MALC also alleges that the failure to draw additional Latino opportunity districts in the Dallas and Harris County areas.  Plaintiff MALC further alleges that the Congressional Districts in the DFW metroplex and in Harris County were improperly drawn using race as a predominant factor without a compelling justification.

Plaintiff MALC alleges that the Voting Rights Act requires the creation of a new Latino opportunity SBOE district in Harris County.  Additionally, it argues that the lines of SBOE

Districts 2 and 3 leave large Latino communities in Central Texas without an equal opportunity to elect candidates of their choice.

Plaintiff MALC alleges that all of the districts and regions described above were drawn with a discriminatory intent to underrepresent Latinos in the Texas House, United States Congress, and SBOE.

E.    *Brooks Plaintiffs[4]*

Brooks Plaintiffs challenge Senate Bill 4 ("SB4") for the dismantling of Senate District 10, which was an effective crossover district for minority voters, but which under SB4 will no longer perform to allow minority voters to elect their preferred candidates.  Brooks Plaintiffs allege that the dismantling of SD10 was the product of intentional racial discrimination and that race predominated in the drawing of SD10.  Brooks Plaintiffs also allege that SB4 violates the Section 2 results test because a new Tarrant County senate district can be drawn in which Black and Latino voters, who form a cohesive coalition, can form the majority of eligible voters in an alternative district configuration, which will perform to overcome white bloc voting, and which is necessary to be drawn under the totality of the circumstances.

F.    *Plaintiff Texas NAACP*

Plaintiff Texas State Conference of the NAACP ("Texas NAACP") challenges the State of Texas's redistricting plans for state house (H2316), state senate (S1268), and U.S. House (C2193) under the U.S. Constitution and Section 2 of the Voting Rights Act of 1965.  The claims are as follows:

***Racial Gerrymandering:***  Plaintiff Texas NAACP alleges that the H2316, S1268, and C2193 redistricting plans violate the Fourteenth and Fifteenth Amendments to the United States

---

[4] Brooks Plaintiffs include Roy Charles Brooks, Felipe Gutierrez, Phyllis Goines, Eva Bonilla, Clara Faulkner, Deborah Spell, and Beverly Powell.

Constitution, because the map drawers were predominately motivated by race.  Specifically, the complaint alleges that state senate districts 2, 9, 10, 11, 12, 15, 16, 17, 18, and 22; state house districts 26, 132, and 126 (Harris/Waller), 66, 67, and 112 (Collin/Denton), 108 (Dallas), 54 (Bell), 121 (Bexar), 93, 94, 96 and 97 (Tarrant), 57, 63, 64, and 65 (Wise/Denton), 25 and 29 (Fort Bend/Brazoria), 83 and 84 (Lubbock); and congressional districts 2, 6, 22, 24, 31, and 38 constitute unconstitutional racial gerrymanders.

*Vote Dilution:*  Plaintiff Texas NAACP alleges that the H2316, S1268, and C2193 redistricting plans violate Section 2 of the Voting Rights Act, because they impermissibly dilute the voting strength of Black, Hispanic, and Asian voters.  The complaint alleges that the map drawers failed to draw sufficient minority coalition districts in regions that witnessed significant population growth of people of color over the past decade.  Specifically, the complaint alleges that coalition districts could have been—but were not—drawn for state senate districts in Tarrant, Fort Bend, and Dallas Counties, among others; state house districts in Tarrant, Dallas, Wise, Denton, Brazoria, and Lubbock Counties, among others; and congressional districts in Tarrant, Dallas, Harris, and Fort Bend Counties, among others.

*Intentional discrimination on the basis of race:*  Plaintiff Texas NAACP alleges that the H2316, S1268, and C2193 redistricting plans, in the above-specified districts and overall, violate the Fourteenth Amendment to the Constitution and Section 2 of the Voting Rights Act, because the plans were drawn for the purpose of disadvantaging voters of color—in particular, Black, Hispanic, and Asian voters—relative to white voters across the State.

G.     *Fair Maps Plaintiffs*[5]

Fair Maps Plaintiffs assert that House Plan 2316, Senate Plan 2168, and Congressional Plan 2193, which were adopted and will be implemented by Defendants, violate the Fourteenth and Fifteenth Amendments of United States Constitution, and the Voting Rights Act of 1965, because they are intentionally discriminatory, dilute the votes of Texans of color, crack and pack minority districts, fail to create new opportunity districts, and constitute racial gerrymanders.

Moreover, House Plan 2316, Senate Plan 2168, and Congressional Plan 2193 violate Section 2 because in intention and effect they dilute the votes of Texans of color by cracking and packing minority districts throughout Texas and failing to create new opportunity districts, including districts where coalitions of minority voters could together elect candidates of their choice. Specifically, Defendants violated Section 2 by failing to create minority opportunity districts, including coalition districts, in Harris and/or Fort Bend Counties in Plans H2316, S2168, and C2198; the Dallas-Fort Worth area in Plan C2198; Collin County in Plan H2316; Bell County in Plan H2316; and Tarrant County in Plan S2168.

House Plan 2316, Senate Plan 2168, and Congressional Plan 2193 all violate the Equal Protection Clause of the Fourteenth Amendment because they constitute racial gerrymanders. Specifically, race was the predominant factor in the cracking of the AAPI community in Collin County in Plans H2316 and C2193 and in Fort Bend County in Plan H2316. Race was also the predominant factor in the cracking of minority communities in Tarrant County in Plan S2168, particularly in Senate Districts 10 and 22.

---

[5] Fair Maps Plaintiffs include Fair MAPS Texas Action Committee, OCA-Greater Houston, North Texas Chapter of the Asian Pacific Islander Americans Public Affairs Association, Emgage, Khanay Turner, Angela Rainey, Austin Ruiz, Aya Eneli, Sofia Sheikh, Jennifer Cazares, Niloufar Hafizi, Lakshmi Ramakrishnan, Amatulla Contractor, Deborah Chen, Arthur Resa, Sumita Ghosh, Anand Krishnaswamy.

H.     *The United States*

The United States alleges that Texas's 2021 Congressional Plan and 2021 House Plan violate Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, by denying or abridging the right of citizens of the United States to vote on account of race, color, or membership in a language minority group.  In the Congressional plan, the United States specifically challenges District 23 in West Texas for its discriminatory purpose and discriminatory result, the Dallas-Fort Worth (DFW) configuration for its discriminatory purpose, and the Harris County configuration for its discriminatory result.  In the House plan, the United States challenges District 118 in Bexar County, District 31 in South Texas, and the El Paso and West Texas configuration, all for discriminatory results.  Section 2 prohibits vote dilution, including the use of redistricting plans that "minimize or cancel out the voting strength of racial [minorities in] the voting population." *Thornburg v. Gingles*, 478 U.S. 30, 47 (1986) (internal citations and quotation marks omitted). Intentional vote dilution occurs when "the disputed plan was conceived or operated as a purposeful device to further racial discrimination."  *City of Mobile v. Bolden*, 446 U.S. 55, 66 (1980) (internal quotation marks, original alteration marks, and citation omitted).

I.     *Plaintiff Martinez Fischer*

Plaintiff Trey Martinez Fischer asserts that the redistricting plans enacted by the 87th Texas Legislature for the Congress violate the United States Constitution and the Voting Rights Act of 1965.

Regarding the newly enacted congressional plan, Plaintiff Martinez Fischer contends that Defendants failed to create an additional Latino citizen voting age majority district in the geographic area of enacted Congressional District 35.  Plaintiff Martinez Fischer also asserts that

Defendants purposefully weakened Latino voting strength in Congressional District 35, such that Latinos lack the ability to elect their preferred candidates.

J.     *Plaintiff-Intervenors Johnson, Jackson Lee, Green and Crockett*[6]

Plaintiff-Intervenors Johnson, Jackson Lee, Green and Crockett assert that the redistricting plan for Congress adopted by the Texas Legislature is unconstitutional in that it violates the 14th and 15th Amendments to the United States Constitution. The plan further violates the rights of the Plaintiff-intervenors and African-American and other covered minority voters with whom they have formed effective voting alliances. Specifically, the plan is retrogressive, and this retrogression constitutes a violation of section 2 of the Voting Rights Act when joined with other forms of illegal voting discrimination such as the many that are included in the adopted map. The plan also discriminates against minority voters by moving, packing and cracking, and using other similarly harmful drafting measures against minorities and or minority communities in a manner that minimizes or dilutes the voting strength of African-American and Latino voters. This discrimination against African-American and Latino voters deprives the voters of the equal opportunity to elect candidates of their choice and diminishes their participation in the process. Minority voters were moved to destroy naturally occurring and/or historically existent districts where minorities could join with others to elect the candidate of their choice, and the Legislature failed and refused to create new Congressional seats where minorities could effectively coalesce to ensure the election of their candidate of choice, while newly created seats were drawn so that white voters without regard to party could dominate. All these actions were taken in a Legislature that acted as part of a new political fabric in Texas that continued the historical discrimination against African-Americans and Latinos.

---

[6] Plaintiff-Intervenors include Eddie Bernice Johnson, Sheila Jackson Lee, Alexander Green and Jasmine Crockett.

African-American and Latino voters were moved around, packed and cracked and placed wherever they need be placed in order to facilitate an extreme racial gerrymander that enhances the power of white voters at the expense of African-American and Latino voters including those in the 9th, 18th and 30th Congressional District or in House District 100.  The map dilutes the voting strength of African-American and Latino voters, and deprives the same voters of the equal opportunity to elect candidates of their choice to Congress.  Voters in the 9th, 18th, and 30th Congressional Districts were moved into and out of the districts on the basis of race to cement or bolster the political preferences of the white majority.  The 9th, 18th and 30th Congressional Districts were all of nearly optimum size prior to the creation of the new map, but thereafter the victim of major surgery in contrast to the dictates of traditional redistricting principles in order to facilitate the creation of a map that would enhance the power of white voters even though white voters are diminishing in terms of their percentage of the State's relevant political population.

The actions of the Legislature were intentionally discriminatory, as the map along with knowledge of relevant and surrounding circumstances, reveal a clear design to discriminate against African-American voters, elected officials and other protected minority voters with whom African-Americans have joined to demonstrate political strength.

K.   *Plaintiff Escobar*

Plaintiff Veronica Escobar asserts that the redistricting plans enacted by the 87th Texas Legislature for the Congress violate the United States Constitution and the Voting Rights Act of 1965.

Regarding the newly enacted congressional plan, Plaintiff Escobar contends that Defendants failed to create additional Latino citizen voting age majority districts in the geographic area of enacted Congressional District 23, in part because of alterations made around the border of

CD 16.   Plaintiff Escobar also asserts that Defendants purposefully weakened Latino voting strength in Congressional District 23, such that Latinos lack the ability to elect their preferred candidates.   Finally, Plaintiff Escobar contends that the removal of Ft. Bliss from CD 16 and the adoption of SB 6 were infected with intentional racial discrimination.

*L.*     *Defendants*

Defendants deny that any of the challenged maps or districts is unlawful. Neither the federal Constitution nor the Voting Rights Act prohibits the adoption or implementation of the challenged maps and districts. The Texas Legislature validly exercised its power to redistrict when it adopted the congressional, house, senate, and SBOE maps. Moreover, other barriers to Plaintiffs' claims preclude relief, including standing, sovereign immunity, and the *Purcell* principle.

## III. Any Issues Regarding Preserving Discoverable Information

The parties discussed all known issues regarding the preservation of discoverable information.

## IV. Exchange of Initial Disclosures

In accordance with the Court's December 17, 2021 Scheduling Order (Dkt. 96), as amended by the Court's December 27, 2021 order (Dkt. 109), all parties in the suit have exchanged or will exchange their Initial Disclosures by January 21, 2022.

## V. Further Proposed Amendments to Discovery Schedule

The parties disagree over whether further amendment to the discovery schedule set forth in the Court's December 17, 2021 Scheduling Order, as amended by the Court's December 27, 2021 order (Dkt. 109), is necessary.

Plaintiffs propose that, where a party objects to a discovery request, the objecting party must respond within 15 days of service of the discovery request with the basis for the objection(s).

Plaintiffs contend that such a deadline will allow the requesting party to address any potential objections in a timely manner and allow discovery to progress forward as efficiently as possible, especially in light of the accelerated timeline of the instant litigation.

Defendants disagree and state the following: Federal Rules of Civil Procedure 33, 34 and 36 already govern written discovery between the parties and provide the answering party thirty days to respond to discovery requests. Defendants object to requests to supplant multiple provisions of the FRCP with a self-serving proposal that would effectively cut in half the amount of time the Defendants would have to object to discovery requests. The State Defendants are defending against more than eight lawsuits filed by approximately 60 different Plaintiffs that collectively challenge all four redistricting maps, dozens of districts, and involve diverging legal theories claims and defenses. The Plaintiffs have articulated no reason that the FRCP should be modified in this case.

Plaintiffs also propose that a responding party must submit the corresponding privilege log within 30 days of the due date of a discovery response. Plaintiffs contend that such a deadline will allow the requesting party to address any potential assertions of privilege in a timely manner and allow discovery to progress forward as efficiently as possible, especially in light of the accelerated timeline of the instant litigation. Defendants disagree and contend that privilege logs should be submitted within a reasonable time depending on the circumstances relevant to particular requests. A one-size-fits-all thirty-day deadline may not be workable for some requests that implicate large amounts of privileged material. Guaranteeing submission of a privilege log in that timeframe, without regard to the underlying discovery request, removes an important incentive for requesting parties to ensure that their discovery requests do not needlessly implicate large amounts of privileged material.

In light of the disagreement between the parties following good-faith negotiations, Plaintiffs respectfully request that the Court enter an order adopting their proposed changes to the discovery schedule. Defendants request denial of Plaintiffs' attempts to seek drastic departure from those procedures provided by the FRCP.

## VI. Subjects on which Discovery May Be Needed

Plaintiffs expect to conduct discovery on subjects including but not limited to:

- the release of 2020 Census data to Texas and the use of that data in the redistricting process preceding and during the 87th Texas Legislature;

- the legislative history of the bills implementing Plans H2316, S2168, C2193 and E2106 preceding and during the 87th Texas Legislature, including but not limited to the consideration of testimony and amendments, as well as the purpose for the enactment of those bills and any evidence supporting or undermining the reasons offered for the enactment of those bills;

- the factors considered by the map drawers of Plans H2316, S2168, C2193 and E2106 and the legislators considering those plans;

- the factors considered preceding and during the 87th Texas Legislature by map drawers and legislators regarding any proposed redistricting plans, or proposed amendments to redistricting plans, for the Texas House, Texas Senate, Congress or Texas SBOE;

- the effects of Plans H2316, S2168, C2193, and E2106, including but not limited to any and all harms on the Latino, Black and Asian American populations across Texas; and

- the history of race discrimination in Texas and its impact on elections and voting rights.

Defendants will attempt to seek discovery regarding Plaintiffs' myriad allegations aimed at redistricting legislation governing four maps that were passed into law by the 87th Legislature. In addition to the above categories, Defendants intend to conduct discovery including but not limited to the following areas:

- organizational, associational and individual standing of the approximately sixty plaintiffs in this action.
- the factual basis of Plaintiffs' claims against each of the four legislatively enacted redistricting maps.

## VII. Any Issues About the Disclosure, Discovery or Preservation of Electronically Stored Information

The parties are negotiating and will seek to submit a joint proposed stipulated order regarding discovery of Electronically Stored Information as soon as possible.

## VIII. Any Issues About Claims of Privilege or of Protection as Trial-Preparation Materials

The parties are negotiating and will seek to submit jointly the following as soon as possible:

- A proposed stipulated order regarding the disclosure of privileged information, pursuant to Federal Rule of Evidence 502.
- A motion for entry of consent confidentiality and protective order.
- A proposed consent confidentiality and protective order.

## IX. Proposed Changes to the Limitations on Discovery Imposed Under the Federal Rules of Civil Procedure and the Court's Local Rules

The parties propose the following changes to the limitations on discovery.

*A.    Number of Depositions*

The parties agree to discuss  hour limitations  or number limitations of depositions after they have exchanged Initial Disclosures.  Accordingly, the parties propose a deadline of January 28, 2022 to inform the Court of any stipulated agreement (or lack thereof) as to the number of depositions allowed per side.

B.     *Remote Participation in Depositions*

The parties agree that they may attend depositions remotely, on the condition that any party that seeks to attend a deposition remotely must bear any additional costs associated with remote attendance.  The parties also agree that, where a party seeks to attend a deposition remotely, the deposition can be delayed for no more than 30 minutes (in total) because of technical problems experienced by the remote participants, and on the condition that counsel that participates remotely shall bear any costs incurred on account of any technical difficulties related to that counsel's participation.

C.     *Number of Interrogatories*

As an initial matter, the parties disagree on the number of interrogatories to which each plaintiff group is entitled under Federal Rule of Civil Procedure 33.  Rule 33 states that, "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories[.]"  Fed. R. Civ. P. 33(a)(1).

Plaintiffs contend that, under the plain language of Rule 33(a), each plaintiff within each consolidated suit is entitled to serve 25 interrogatories on each defendant (*e.g.*, within the *LULAC* suit, Plaintiff LULAC may serve 25 interrogatories on each defendant, as can Plaintiff Southwest Voter Registration Education Project, etc.).  *See Mirakl, Inc. v. VTEX Com. Cloud Sols. LLC*, No. 20-CV-11836-RWZ, --- F. Supp. 3d ----, ----, 2021 WL 2419502, at *1, (D. Mass. June 9, 2021); *Dixon v. Spurlin*, No. 1:18-CV-00133, 2020 WL 6707325, at *3 (W.D. La. Nov. 13, 2020) ("Under

the plain language of Rule 33(a), each Plaintiff is entitled to propound upon [a defendant] 25 interrogatories . . . without leave of court.").  Defendants contend that the plaintiffs in each of the consolidated cases are entitled to serve, collectively, 25 interrogatories on Defendants.

In an effort to reach a compromise between the two positions, Plaintiffs propose two alternatives:  (1) a limitation of 50 interrogatories per consolidated case or (2) a limitation of 25 interrogatories per map challenged in each consolidated case.  Plaintiffs assert that, given the scope of the claims in the instant litigation and the varying number of maps challenged across the consolidated suits, these proposals carefully balance the discovery needs of Plaintiffs while addressing Defendants' purported concerns about the burden of discovery in this suit.  Further, to the extent that Defendants believe any of Plaintiffs' interrogatories are unreasonably cumulative or duplicative, Defendants may still object to those specific interrogatories—regardless of the numerical limit on discovery requests—pursuant to Fed. R. Civ. P. 26.

Defendants assert that there are, at last count, 58 plaintiffs and four intervenors in this case. If each plaintiff were accorded 25 interrogatories in this case, Defendants could conceivably receive 1,450 interrogatories. Even under Plaintiffs' alternative proposal, Defendants would still be required to answer hundreds of interrogatories. In conferences, Plaintiffs' counsel has not articulated a need for such a large number of interrogatories to be issued.

Defendants propose that each side in each case be allocated 25 interrogatories.  Plaintiffs' proposal to increase this number is premature and would improperly cut-off the ability of Defendants to seek relief from cumulative or duplicative discovery from the plaintiffs' groups. If the parties subsequently determined that 25 interrogatories are insufficient, the parties could meet and confer regarding the allocation of additional interrogatories.

In light of the parties' disagreement, Plaintiffs respectfully request that the Court enter an order imposing either (1) a limitation of 50 interrogatories per consolidated case or (2) a limitation of 25 interrogatories per map challenged in each consolidated case. Defendants respectfully request that the Court limit the parties to 25 interrogatories per side.

D.    *Number of Requests for Admission*

Under Local Rule CV-36, parties may serve no more than 30 requests for admission absent a showing of good cause.  The parties disagree whether there is good cause to increase this limit at this time.

Plaintiffs propose that the Court increase the number of requests for admission from 30 to 60 per party.  As an alternative, Plaintiffs propose that the Court increase the limit on requests for admission from 30 to 30 per party per map challenged in that case, along with unlimited requests for admission as to authenticity (*e.g.*, Voto Latino Plaintiffs would be entitled to 30 requests for admission because they challenge only the congressional map).

Defendants contend that the number of requests for admission should not be increased. Each side should be limited to 30 requests for admission, as the local rules provide, because Plaintiffs have not shown that additional requests for admission would efficiently advance the litigation rather than burden the parties. Defendants do not understand Plaintiffs to be requesting 60 requests for admission per party (which would leave Defendants to answer 3,480 requests), but even 60 requests for admission per side would leave Defendants answering hundreds of requests.

In light of the parties' disagreement regarding the number of requests for admission, Plaintiffs respectfully request that the Court increase the number of requests for admission from 30 to 60 per party.  As an alternative, Plaintiffs propose that the Court increase the limit on requests for admission from 30 to 30 per party per map challenged in that case, along with unlimited

requests for admission as to authenticity. To the extent that the Court wishes to impose a separate limit on the number of requests for admission as to the authenticity of documents, Plaintiffs respectively reserve the issue of an appropriate number at this time. Defendants respectfully request that the Court limit each side to 30 requests for admission.

E.      *Authenticity and Admissibility of Information from the Texas Legislative Council*

Plaintiffs propose that the parties stipulate to the authenticity and admissibility of information provided by the Texas Legislative Council.

Defendants have advised Plaintiffs that stipulating to the authenticity and admissibility of what they term "information provided by the Texas Legislative Council" is far too non-specific and open ended for purposes of agreeing to authenticity *and admissibility* at early stages in a case. Plaintiffs' broad description could potentially encompass materials prepared by TLC that no party currently contemplates utilizing. At the same time, Defendants already informed Plaintiffs they do not intend to object to redistricting data commonly generated by TLC including public plans, "Red reports." or statistical data. And while Defendants decline to stipulate to the categorical description that Plaintiffs proffer, they are confident authenticity and admissibility issues can be resolved—in the unlikely event they even arise—as the litigation progresses.

Plaintiffs request that the Court order that information provided by the Texas Legislative Council is authentic and admissible in this case. Defendants respectfully request that Plaintiffs' unusual request for a ruling at the 26(f) stage on authenticity and admissibility of "information provided by the Texas Legislative Counsel" be denied.

## X. Any Other Orders that the Court Should Consider Under Rule 26(c) or Rule 16(b) and (c)

The parties agree that there are no other orders that the Court should consider under Rule 26(c) or Rule 16(b) and (c).  The parties also agree that the discovery plan ordered into effect on

December 17, 2021 (Dkt. 96), as amended by the Court's December 27, 2021 order (Dkt. 109),

sufficiently addresses any other discovery issues known at this time.

DATED:  January 20, 2022                          Respectfully submitted,

                                                  */s/ Nina Perales*

                                                  Nina Perales
                                                  Texas Bar No. 24005046
                                                  Mexican American Legal Defense and
                                                  Educational Fund
                                                  110 Broadway Street #300
                                                  San Antonio, TX 78205
                                                  (210) 224-5476
                                                  Fax: (210) 224-5382
                                                  Samantha Serna
                                                  Texas Bar No. 24090888
                                                  Fatima Menendez**
                                                  Texas Bar No. 24090260
                                                  Kenneth Parreno*
                                                  Massachusetts BBO No. 705747
                                                  110 Broadway, Suite 300
                                                  San Antonio, TX 78205
                                                  nperales@maldef.org
                                                  sserna@maldef.org
                                                  fmenendez@maldef.org
                                                  kparreno@maldef.org

                                                  *Counsel for LULAC Plaintiffs*

                                                  */s/ Richard Gladden*
                                                  Richard Gladden
                                                  Texas Bar No. 07991330
                                                  1204 W. University Dr. Suite 307
                                                  Denton, Texas 76201
                                                  940.323.9300 (voice)
                                                  940.539.0093 (fax)
                                                  richscot1@hotmail.com (email)

                                                  *Counsel for Plaintiff Wilson*

                                                  */s/ Abha Khanna*
                                                  Abha Khanna*
                                                  ELIAS LAW GROUP LLP

1700 Seventh Ave, Suite 2100
Seattle, WA 98101
Telephone: (206) 656-0177
akhanna@elias.law

David R. Fox*
Kathryn E. Yukevich*
ELIAS LAW GROUP LLP
10 G Street NE, Suite 600
Washington, D.C. 20002
Telephone: (202) 968-4490
dfox@elias.law
kyukevich@elias.law

Kevin J. Hamilton*
PERKINS COIE
1201 Third Avenue
Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
khamilton@perkinscoie.com

Renea Hicks
Attorney at Law
Texas Bar No. 09580400
Law Office of Max Renea Hicks
P.O. Box 303187
Austin, Texas 78703-0504
(512) 480-8231
rhicks@renea-hicks.com

*Counsel for Voto Latino Plaintiffs*

*/s/ Sean J. McCaffity*
Sean J. McCaffity
State Bar No. 24013122
smccaffity@textrial.com
SOMMERMAN, MCCAFFITY,
QUESADA &GEISLER, L.L.P.
3811 Turtle Creek Boulevard, Suite 1400
Dallas, Texas 75219-4461
214/720-0720 (Telephone)
214/720-0184 (Facsimile)
George (Tex) Quesada
State Bar No. 16427750
quesada@textrial.com

Joaquin Gonzalez
Texas Bar No. 24109935
1055 Sutton Dr.
San Antonio, TX 78228
jgonzalez@malc.org

*Counsel for Plaintiff MALC*

/s/ *Mark P. Gaber*
Mark P. Gaber*
Mark P. Gaber PLLC
P.O. Box 34481
Washington, DC 20
(715) 482-4066
mark@markgaber.com
Chad W. Dunn (Tex. Bar No. 24036507)
Brazil & Dunn
4407 Bee Caves Road
Building 1, Ste. 111
Austin, TX 78746
(512) 717-9822
chad@brazilanddunn.com
K. Scott Brazil (Tex. Bar No. 02934050)
Brazil & Dunn
13231 Champion Forest Drive, Ste. 406
Houston, TX 77069
(281) 580-6310
scott@brazilanddunn.com

Jesse Gaines*
Tex. Bar. No. 07570800
P.O. Box 50093
Fort Worth, TX 76105
817-714-9988
gainesjesse@ymail.com

*Counsel for Brooks Plaintiffs*

/s/ *Ezra D. Rosenberg*
Ezra D. Rosenberg
Jon Greenbaum
Pooja Chaudhuri
Sofia Fernandez Gold
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW

1500 K Street, Suite 900
Washington, DC 20005
(202) 662-8600
erosenberg@lawyerscommittee.org
jgreenbaum@lawyerscommittee.org
pchaudhuri@lawyerscommittee.org
sfgold@lawyerscommittee.org

Lindsey B. Cohan
Texas Bar No. 24083903
DECHERT LLP
515 Congress Avenue, Suite 1400
Austin, TX 78701
(512) 394-3000
lindsey.cohan@dechert.com

Neil Steiner
Brian Raphel
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3822
neil.steiner@dechert.com
brian.raphel@dechert.com

Robert Notzon
Texas Bar No. 00797934
THE LAW OFFICE OF ROBERT
NOTZON
1502 West Avenue
Austin, Texas 78701
(512) 474-7563
robert@notzonlaw.com

Janette M. Louard
Anthony P. Ashton
Anna Kathryn Barnes
NAACP OFFICE OF THE GENERAL
COUNSEL
4805 Mount Hope Drive
Baltimore, MD 21215
(410) 580-577
jlouard@naacpnet.org
aashton@naacpnet.org
abarnes@naacpnet.org

*Counsel for Plaintiff Texas NAACP*

*/s/ Noor Taj*
Noor Taj*
P.A. State Bar No. 309594
Allison J. Riggs*
N.C. State Bar No. 40028
Hilary Harris Klein*
N.C. State Bar No. 56122
Mitchell Brown*
N.C. State Bar No. 56122
SOUTHERN COALITION FOR SOCIAL
JUSTICE
1415 West Highway 54, Suite 101
Durham, NC 27707
Tel. (919) 323-3380
Fax. (919) 323-3942
allison@southerncoalition.org
noor@scsj.org
hilaryhklein@scsj.org
mitchellbrown@scsj.org

David A. Donatti
TX Bar No. 24097612
Ashley Harris
TX Bar No. 24078344
Thomas Buser-Clancy
TX Bar No. 24123238
Andre I. Segura
TX Bar No. 24107112
ACLU FOUNDATION OF TEXAS, INC.
P.O. Box 8306
Houston, TX 77288
Tel. (713) 942-8146
Fax. (713) 942-8966
ddonatti@aclutx.org
aharris@aclutx.org
tbuser-clancy@aclutx.org
asegura@aclutx.org

Jerry Vattamala
N.Y. State Bar No. 4426458*
Susana Lorenzo-Giguere
N.Y. State Bar No. 2428688*
Patrick Stegemoeller**
N.Y. State Bar No. 5819982*

ASIAN AMERICAN LEGAL DEFENSE
AND EDUCATION FUND
99 Hudson Street, 12th Floor
New York, NY 10013

*Counsel for Fair Maps Plaintiffs*

PAMELA S. KARLAN
Principal Deputy Assistant Attorney General
Civil Rights Division

*/s/ Daniel J. Freeman*
T. CHRISTIAN HERREN, JR.
TIMOTHY F. MELLETT
DANIEL J. FREEMAN
JANIE ALLISON (JAYE) SITTON
MICHELLE RUPP
JACKI L. ANDERSON
JASMIN LOTT
HOLLY F.B. BERLIN
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530

*Counsel for United States of America*

*/s/ Martin Golando*

The Law Office of Martin Golando, PLLC
Texas Bar No. 24059153
2326 W. Magnolia Ave.
San Antonio, Texas 78201
Office: (210) 471-1185
Fax: (210) 405-6772
Email: martin.golando@gmail.com

*Counsel for Plaintiff Martinez Fischer and
Escobar*

*/s/ Gary Bledsoe*
The Bledsoe Law Firm PLLC
State Bar No. 02476500
6633 Highway 290 East #208
Austin, Texas 78723-1157

Telephone:  512-322-9992
Fax:  512-322-0840
Email:  gbledsoe@thebledsoelawfirm.com
garybledsoe@sbcglobal.net

*Counsel for Plaintiff-Intervenors Eddie
Bernice Johnson, Sheila Jackson Lee,
Alexander Green and Jasmine Crockett*

*\*Admitted pro hac vice*
*\*\*Application for admission pro hac vice
forthcoming*

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special
Litigation
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
Tex. State Bar No. 24088531

OFFICE OF THE ATTORNEY GENERAL
P.O. BOX 12548 (MC-009)
Austin, Texas 78711-2548
Tel. (512) 463-2100
Fax. (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov

*Counsel for Defendants*


## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that she has electronically submitted for filing a true and correct copy of the above and foregoing in accordance with the Electronic Case Files System of the Western District of Texas on the 20th day of January 2022.

_/s/ Nina Perales___
Nina Perales