UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| LULAC, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>GREG ABBOTT, in his official capacity as Governor of Texas, *et al.*,<br><br>*Defendants.* | Case No.: 3:21-CV-00259-DCG-JES-JVB<br>[Lead Case] |
| ROY CHARLES BROOKS, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>GREG ABBOTT, in his official capacity as Governor of Texas, *et al.*,<br><br>*Defendants.* | Case No.1-21-CV-00991-DCG-JES-JVB<br>[Consolidated Case] |

**BROOKS PLAINTIFFS' SUPPLEMENTAL BRIEF ON PRELIMINARY INJUNCTION REMEDIES**

The Brooks Plaintiffs respectfully submit this supplemental brief on remedies for their preliminary injunction motion in light of the timing of the Court's adjudication of their motion and the election calendar. This brief sets forth remedial options that permit the Court to grant relief without altering the work underway to conduct the March 2022 primary. In particular, the Brooks Plaintiffs identify two alternative remedial options in the event the Court determines it is too late to order relief in time to affect the March 2022 primary: (1) a May 24, 2022 primary for any districts affected by the Court's remedial plan (the same day that primary runoff elections are currently scheduled to be held, and the alternative primary date already approved by the

1

Legislature), with any necessary runoff election to be held in July, or (2) an open primary on the November 2022 ballot, with a subsequent December runoff election if no candidate receives a majority in the affected districts. Both options are consistent with prior practice in Texas. Indeed, Defendants' own declarant, Collin County Election Administrator Bruce Sherbet—formerly the Election Administrator for Dallas County—testified in favor of the November open primary option in a prior Texas redistricting case.

## BACKGROUND

The Brooks Plaintiffs promptly filed suit and moved for a preliminary injunction after SB4 was enacted, with their preliminary injunction motion filed on November 24, 2021. At the same time, the Brooks Plaintiffs moved for expedited briefing and hearing to ensure their motion could be adjudicated and relief granted without disrupting the March 2022 primary. ECF No. 40. The Court denied the motion for expedited briefing, and instead placed the Brooks Plaintiffs' motion for a preliminary injunction in abeyance. ECF No. 56. The Court then set the Brooks Plaintiffs' motion for a hearing beginning January 25, 2022.

## ARGUMENT

The Court has multiple options to afford relief should it conclude that Plaintiffs are likely to succeed on the merits of their claims, including remedies that do not disrupt the March 2022 primary election. "Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971). Indeed, a district court has "not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." *Louisiana v. United States*, 380 U.S. 145, 154 (1965). The Court has considerable

2

flexibility: "[e]quitable remedies must be flexible if these underlying principles are to be enforced with fairness and precision." *Freeman v. Pitts*, 503 U.S. 467, 487 (1992). Moreover, "[w]hen federal law is at issue and the public interest is involved, a federal court's equitable powers assume an even broader and more flexible character than when only a private controversy is at stake." *Kansas v. Nebraska*, 574 U.S. 445, 456 (2015). These principles apply in redistricting cases, where the Court "must undertake an equitable weighing process to select a fitting remedy for the legal violations it has identified, taking account of what is necessary, what is fair, and what is workable." *North Carolina v. Covington*, 137 S. Ct. 1625, 1625 (2017) (internal quotation marks and citation omitted).

In *Vera v. Bush*, following the Supreme Court's ruling that certain Texas congressional districts were unconstitutionally racially gerrymandered, the district court provided the legislature an opportunity to adopt a remedial plan, which it declined to do. 933 F. Supp. 1341, 1344 (S.D. Tex. 1996). On August 6, 1996, three months before the November general election, the district court ordered special elections on the November 1996 ballot, with open primaries and a runoff, if needed, to be scheduled in December. In doing so, the court "relie[d] on submissions" of election administrators, including then "Dallas County Elections Administrator Bruce Sherbert" [*sic*] testifying that a remedial plan—even one ordered in August—could be imposed "if the Court minimizes split 'VTDs' (election precincts); orders an open primary to be held in conjunction with the November elections, followed, if need be, by runoff elections in December; and adjusts dates such as the candidate registration date and ballot-by-mail deadlines to accommodate the special election." *Id.* at 1347.

In ordering relief, the *Vera* court considered and rejected various objections, relying upon the testimony of Mr. Sherbet and other election administrators that the minor scheduling changes

were not problematic. *Id.* at 1347-48. Moreover, the Court noted that instructions could be provided to voters accustomed to the then-extant "straight ticket" voting option to ensure voters did not fail to participate in the congressional open primaries. *Id.* at 1348-49. Likewise, the Court rejected as "misleading" the contention that the March primary voters would have their choices "disenfranchised," given that "the incumbents and challengers who are running remain viable candidates, with one possible exception." *Id.* at 1349. The special open primary elections ordered by the *Vera* court affected "one-third of the voters of Texas." *Id.*

The *Vera* court was not alone in concluding that alterations to election schedules are necessary where a redistricting plan is found to have unlawful features. *See, e.g.*, *Arbor Hill Concerned Citizens v. Cty. of Albany*, 357 F.3d 260, 262 (2d Cir. 2004) (Finding that the district court had equitable power to order a special election under a Voting Rights Act complaint districting plan after the approval of the VRA complaint plan was adopted too late to conduct a regular November election); *Goosby v. Town Board of the Town of Hempstead,* 180 F.3d 476, 498 (2d Cir. 1999) (Affirming the district court's ordering of a special election to remedy a Voting Rights Act violation); *Wright v. Sumter Cty. Bd. of Elections & Registration*, 361 F. Supp. 3d 1296, 1305 (M.D. Ga. 2018), *aff'd*, 979 F.3d 1282 (11th Cir. 2020) (affirming district court's order enjoining a general election where remedial plan was not adopted in time for election). Indeed, the Supreme Court has established factors for a district court to consider when determining whether to truncate *existing terms* of legislators and order new special elections when a plan is deemed to violate the law. *Covington*, 137 S. Ct. at 1625-26.

This case is on even stronger footing than *Vera*. Here, it is January, not August, and the November election is still ten months away. Texas has repealed straight-ticket voting, eliminating the risk that some voters will not know to cast a vote in a special open primary election. Far fewer

4

voters will be affected by the changes needed to remedy the violations with respect to SD10. And even if the Court concludes it is too late to alter the March 2022 ballot, the Court can order the Secretary of State to direct that the affected districts' primary results not be tallied.[1] And notices to that effect could be posted in the effected voting locations.

Finally, if the Court were to instead order a primary on May 24, 2022 for the affected districts, this timeline would be consistent with the alternative schedule adopted by the Legislature, Tex. Elec. Code 41.0075, as well as the mid-July runoff schedule imposed by Executive Order of the Governor in 2020. *See* Proclamation by the Governor of the State of Texas (Mar. 20, 2020), https://gov.texas.gov/uploads/files/press/PROCLAMATION_COVID-19_May_26_Primary_Runoff_Election_03-20-2020.pdf; *see also* Defs.' Ex. 52 § 29 (Director of Elections Keith Ingram testifying that a mid-July runoff would not interfere "with the efficient administration of the November election.").

## CONCLUSION

The March 2022 primary does not pose a barrier to effective, fair, and workable relief for the Brooks Plaintiffs. Past practice in Texas redistricting litigation proves that—as must be the case—this wrong can be remedied.

---

[1] The Texas legislature has contemplated that elections outside the regular calendar may be set by the courts. Tex. Elec. Code § 41.001(b)(3).

January 24, 2022

Respectfully submitted,

Chad W. Dunn (Tex. Bar No. 24036507)
Brazil & Dunn
4407 Bee Caves Road
Building 1, Ste. 111
Austin, TX 78746
(512) 717-9822
chad@brazilanddunn.com

/s/ Mark P. Gaber
Mark P. Gaber*
Mark P. Gaber PLLC
P.O. Box 34481
Washington, DC 20043
(715) 482-4066
mark@markgaber.com

Jesse Gaines* (Tex. Bar. No. 07570800)
P.O. Box 50093
Fort Worth, TX 76105
817-714-9988
gainesjesse@ymail.com

Molly E. Danahy*
P.O. Box 26277
Baltimore, MD 21211
(208) 301-1202
danahy.molly@gmail.com

Sonni Waknin
10300 Venice Blvd. # 204
Culver City, CA 90232
732-610-1283
Sonniwaknin@gmail.com


*Admitted *pro hac vice*

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that all counsel of record were served a copy of the foregoing this 24th day of January, 2022, via the Court's CM/ECF system.

<i>/s/ Mark P. Gaber</i><br>
Mark P. Gaber