```
 1                   UNITED STATES DISTRICT COURT
                 FOR THE WESTERN DIVISION OF TEXAS
 2                        EL PASO DIVISION

 3  LULAC, et al.,              )
                                )
 4        Plaintiffs,           )
                                )
 5  vs.                         )   Case No.:3:21-CV-00259-
                                )   DCG-JES-JVB [Lead Case]
 6  GREG ABBOTT, in his         )
    official capacity as        )
 7  Governor of Texas, et al.,  )
                                )
 8        Defendants,           )
                                )
 9                              )
    ROY CHARLES BROOKS,         )
10  et al.,                     )
                                )
11        Plaintiffs,           )
                                )
12  vs.                         )   Case No.:1-21-CV-00991-
                                )   DCG-JES-JVB
13  GREG ABBOTT, in his         )   [Consolidated Case]
    official capacity as        )
14  Governor of Texas, et al.,  )
                                )
15        Defendants.           )

16

17                     ORAL DEPOSITION OF

18

19                   SENATOR JOAN HUFFMAN

20

21                      January 21, 2022

22

23

24

25
```

Page 2

```
 1      ORAL DEPOSITION OF SENATOR JOAN HUFFMAN, produced as
 2 a witness at the instance of the Plaintiffs and duly
 3 sworn, was taken in the above-styled and numbered cause
 4 on January 21, 2022, from 9:06 a.m. to 9:46 a.m., before
 5 Amy M. Clark, Certified Shorthand Reporter in and for
 6 the State of Texas, reported by computerized stenotype
 7 machine at the offices of Brazil & Dunn, 4401 Bee Caves
 8 Road, Building 1, Suite 111, Austin, Texas 78746,
 9 pursuant to the Federal Rules of Civil Procedure and the
10 provisions stated on the record or attached hereto.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1                         APPEARANCES
 2
   FOR PLAINTIFFS:
 3
      Mr. Chad W. Dunn
 4    Brazil & Dunn LLP
      4407 Bee Caves Road
 5    Building 1, Suite 111
      Austin, TX  78746
 6    Telephone: (512) 717-9822
      Fax:  (512) 515-9355
 7    Email: chad@brazilanddunn.com
   AND
 8    Mr. Mark Gaber
      Mark P. Gaber, PLLC
 9    PO Box 34481
      Washington, D.C. 20043
10    Phone: (715)482-4066
      Email: mark@markgaber.com
11
   FOR DEFENDANTS:
12
      Mr. Christopher D. Hilton
13    Mr. Patrick K. Sweeten
      Office of the Texas Attorney General
14    300 West 15th Street
      Austin, Texas 78701
15    Telephone: (512) 463-2120
      Email: christopher.hilton@oag.texas.gov
16    Email: patrick.sweeten@oag.texas.gov
17 FOR NAACP OF TEXAS:
18    Mr. Robert Notzon via Zoom videoconference
      The Law Office of Robert Notzon
19    1502 West Avenue
      Austin, Texas 78701
20    Telephone: (512)474-7563
      Email: robert@notzonlaw.com
21 AND
      Ms. Pooja Chaudhuri  via Zoom videoconference
22    Lawyer's Committee for Civil Rights Under Law
      1500 K Street NW
23    Suite 900
      Washington, DC 20005
24    Phone: (202) 662-8319
      Email: pchaudhuri@lawyerscommittee.org
25
```

Page 4

```
 1 FOR FAIR MAPS PLAINTIFFS:
 2    Ms. Samantha Serna Uribe via Zoom videoconference
      Mr. Kenneth Parreno via Zoom videoconference
 3    Ms. Nina Perales via Zoom videoconference
      MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL
 4    FUND, INC.
      110 Broadway
 5    Suite 300
      San Antonio, TX 78205
 6    Phone: (210) 224-5476
      Fax: (210) 224-5382
 7    Email: nperales@maldef.org
   AND
 8    Ms. Ashley Harris via Zoom videoconference
      American Civil Liberties Union, Texas
 9    PO Box 8306
      Houston, Texas 77288
10    Phone: (713)942-8146
      Email: aharris@aclutx.org
11 AND
      Ms. Noor Taj via Zoom videoconference
12    Southern Coalition for Social Justice
      1415 West Highway 54
13    Suite 101
      Durham, NC 27707
14    Phone: (919)323-3380 Ext. 126
      Email: noor@scsj.org
15
16 FOR U.S. DEPARTMENT OF JUSTICE:
17    Ms. Michelle Rupp via Zoom videoconference
      U.S. Department of Justice
18    950 Pennsylvania Avenue, NW
      Washington, DC 20530-0001
19    Phone: (202)305-0565
      Email: michelle.rupp@usdoj.gov
20
   ALSO PRESENT VIA ZOOM VIDEOCONFERENCE:
21
      Ms. Alexandra Wolfson,
22        Southern Coalition for Social Justice, Fellow
23
24
25
```

Page 5

```
 1
 2                         INDEX
 3                                                    PAGE
 4 Appearances ......................................3
 5 SENATOR JOAN HUFFMAN
 6 Examination by Mr. Dunn ..........................6
   Court Reporter's Certificate ....................34
 7
 8
 9                         EXHIBITS
10            (None offered)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 6

1          SENATOR JOAN HUFFMAN,
2 having been first duly sworn, testified as follows:
3          EXAMINATION
4 BY MR. DUNN
5    Q.   Please tell us your name.
6    A.   Joan Huffman.
7    Q.   Senator Huffman, my name's Chad Dunn. I
8 represent the Brooks Plaintiffs in this lawsuit in
9 El Paso.
10          I assume you've been told a bit about our
11 case in El Paso; is that true?
12   A.   Yes, sir.
13   Q.   You're a lawyer, as I understand it?
14   A.   Yes.
15   Q.   Have you ever practiced law?
16   A.   I was a prosecutor for many years in Harris
17 County, Texas.
18   Q.   Have you ever handled civil matters?
19   A.   No.
20   Q.   Have you ever taken a deposition?
21   A.   Yes.
22   Q.   On how many occasions?
23   A.   Not taken -- well, been a witness in a
24 deposition. I've never led a deposition.
25   Q.   Okay.

Page 7

1    A.   To clarify, yes.
2    Q.   Okay. So just to make sure it's clear, you've
3 never questioned a witness in a deposition?
4    A.   Correct.
5    Q.   Okay. But you have testified a few times?
6    A.   Right.
7    Q.   Or once?
8    A.   Once or twice.
9    Q.   Once. Okay.
10   A.   I recall that.
11   Q.   Well, I'd like to know a little bit about that.
12 I'll ask you about that in just a minute. But just --
13   A.   Okay.
14   Q.   I can already tell one issue we're gonna have
15 is -- is we're talking over one another, which is making
16 it difficult for our court reporter. So I'll do better
17 at letting you answer the question. And if you could
18 try to help me by letting me finish the question before
19 you answer. Okay?
20   A.   Yes.
21   Q.   Obviously, as you know, they can only take down
22 words here. So I'm gonna ask you is that a yes or, you
23 know, is that a no. I'm not trying to be rude to you.
24 I'm just trying to make sure our transcript reflects
25 what you've said or what your -- what your testimony is.

Page 8

1          Other than that, as you know, you're not
2 trapped in this chair, by any means. So if you need to
3 take a break, you let us know; happy to do that. We may
4 have a question or two we want to wrap up before we take
5 a break, but we'll always accommodate that.
6          And then, you know, you're the only person
7 that knows whether you understand the question. So if
8 you -- if you answer it and you don't tell me you didn't
9 understand it, we'll all assume you did. So I -- I can
10 assure you-all I will almost certainly ask you a
11 question that you won't understand because it won't make
12 any sense. So just let me know that, and I'll do my
13 best to rephrase it so you can understand it.
14          And then, finally, you know, I don't plan
15 on this deposition being any more aggressive than our
16 conversation has been so far. We -- we -- this is our
17 one chance to talk to you before the hearing to find out
18 what your recollection is as to some various facts
19 and -- so that's all we -- that's all we ask to do
20 today. Okay?
21   A.   Yes.
22   Q.   I will say, though, as -- as friendly and
23 professional as I expect to be, you understand it is
24 critically important you tell us the truth today?
25   A.   Of course.

Page 9

1    Q.   Yeah. Okay.
2          Well, I wanted to back up. You said
3 you've testified, you think, one or two times.
4          Can you recall what kind of matters those
5 were?
6    A.   There was a -- a lawsuit many years ago when I
7 was a judge in Harris County, Texas, where a defendant
8 filed a federal lawsuit. I seem to recall that there
9 was a deposition in that.
10          Secondly, I was a party to a civil lawsuit
11 that my husband and I had filed. I was the -- testified
12 in a deposition in pursuit of that lawsuit.
13   Q.   What was the general nature of the case?
14   A.   Of which case?
15   Q.   The lawsuit that you filed.
16   A.   It had to do with faulty installation of music
17 and television speaker equipment in our home.
18          MR. HILTON: I'm sorry. Chad, just before
19 we get too far into it.
20          Could we have the folks watching on Zoom
21 announce?
22          MR. DUNN: Sure. Can you hear us there in
23 the Zoom?
24          MS. URIBE: Yes, we can. Thank you.
25          MR. DUNN: Then we'd -- we'd like to have

Page 10

1 announcements of who is participating by Zoom, please.

2         MS. URIBE:  Sure.  I'm Samantha Serna
3 Uribe.  I'm with MALDEF representing LULAC, et al.  And
4 joining me is Kenneth Parreno also with MALDEF.

5         MR. DUNN:  Anyone else?

6         MS. TAJ:  This is Noor Taj -- sorry.  Go
7 ahead.

8         MR. NOTZON:  Robert Notzon with the Texas
9 NAACP.

10         MS. TAJ:  This is Noor Taj from SCSJ
11 representing the Fair Maps Plaintiffs.

12         MS. HARRIS:  This is Ashley Harris from
13 ACLU of Texas representing the Fair Maps Plaintiffs.

14         MS. WOLFSON:  This is Alexandra Wolfson
15 from SCSJ representing the Fair Maps Plaintiffs.

16         MS. ROOT:  Michelle Rupp from the U.S.
17 Department of Justice.

18         MS. CHOWDHURY:  Pooja Chaudhuri
19 representing the Texas NAACP.

20         MR. DUNN:  Anyone else?

21         Okay.

22         MR. HILTON:  Thanks, Chad.

23         MR. DUNN:  Okay.

24   Q.   (By Mr. Dunn) So let's sort of just kind of
25 start with your political career.

Page 11

1         You mentioned you were a judge.

2         But just to get a sense of, you know,
3 when -- when did you first start in public service?

4   A.   I became a prosecutor -- well, I started as a
5 secretary at the district attorney's office in 1981
6 while I was still in law school.  And then when I
7 graduated from law school, I was hired as a prosecutor.
8 I served as a prosecutor until, I believe, it was 19 --
9 around 1997.  Then I became a judge, I believe, in 1999.
10 I served five years -- no -- six years, I believe, as a
11 judge in Harris County in a criminal -- 183rd Criminal
12 District Court in Harris County.

13         And then I ran for the senate in 2008.
14 Was elected in December 2008, and have served as the
15 senator representing the Senate District 17 since
16 December of 2008 to the present.

17   Q.   Thank you.

18         The -- have you had any contested races?

19   A.   Yes.

20   Q.   Would you describe most of your elections as
21 contested or most of them uncontested?

22   A.   Most contested.

23   Q.   What were the -- did you have democratic and
24 republican opponents when you were elected in
25 December of 2008?

Page 12

1   A.   Yes.

2   Q.   Have you had a democratic opponent each cycle
3 since then?

4   A.   I don't recall specifically.

5   Q.   Have you run an election contest and been
6 unsuccessful?

7   A.   No.

8   Q.   Now, when you started your service in the
9 legislature in 2008, I assume you were assigned some
10 committees and you began your work as senator; is that
11 right?

12   A.   Correct.

13   Q.   Can you give -- can you identify the committees
14 that you've served on?

15   A.   The entire time?

16   Q.   Yeah.  To the best you can.  I know you...

17   A.   To the best I can.  It won't be exact.  I want
18 to preface with that.

19         But some of the first committees I served
20 on was health and human services.  I believe I served --
21 did not serve on criminal justice my first term, I don't
22 believe.  Higher education at some point.  These are no
23 particular order.  State affairs; I was the chair for
24 several sessions.  Jurisprudence administration.  I've
25 been the vice chair of criminal justice since, I

Page 13

1 believe, my second session.  Redistricting both in
2 2000- -- I guess that was '11 and, of course, this time
3 around.  Those are some of them.  Would not be totally
4 inclusive.

5   Q.   On the redistricting committee, can you recall
6 when you were first appointed to it?

7   A.   No.

8   Q.   Was it sometime in advance of 2011?

9   A.   I don't recall.

10   Q.   Have you served on the redistricting committee
11 from 2011 until present?

12   A.   No.

13   Q.   When was it that you were off the committee?

14   A.   I don't recall, but the committee would have
15 been disbanded at some point after the 2011 political
16 process.

17   Q.   Did you serve on the committee when it met in
18 2013?

19   A.   I don't recall.

20   Q.   Is there anything that you recall from the
21 2011, 2013 redistricting process?

22         MR. HILTON:  I'm just gonna object there
23 to the breadth of the question, but also to the extent
24 that it is broad, could implicate some privileged
25 matters, particularly legislative privilege, which

Page 14

1 Senator Huffman is going to be asserting today to the
2 full extent provided by law, including communications
3 where other legislators and their staffs, her staff as
4 well as her thoughts, opinions, mental processes, and
5 mental impressions.
6          So with -- with -- with that objection,
7 I'll instruct you, Senator, you can answer that
8 question, but don't reveal any legislative privileged
9 information.  You can answer based on nonprivileged
10 information or give a nonprivileged answer.
11    A.   Could you repeat the question.
12    Q.   (By Mr. Dunn) Is there anything you remember
13 from the 2011 committee process that you can think of
14 here today that is not covered by this legislative
15 privilege?
16    A.   No.
17    Q.   Now, I understand your lawyer just said that.
18         But for the purposes of your record, I
19 just want to make sure it's clear:  Are you invoking
20 legislative privilege today?
21    A.   Yes.
22    Q.   Okay.  And are you invoking it to the fullest
23 extent possible?
24    A.   Yes.
25    Q.   Are you able to tell us why you're invoking

Page 15

1 legislative privilege?
2    A.   No.
3         MR. SWEETEN:  Objection.
4         MR. HILTON:  And, also, just object to the
5 extent that it indicates privilege, also attorney-client
6 privilege.
7         But you can answer.
8         MR. GABER:  Interrupt really quick.  I'm
9 gonna ask the folks on Zoom to all mute your lines.
10    Q.   (By Mr. Dunn) Have you, to the best of your
11 knowledge, invoked the legislative privilege prior to
12 today in any testimony?
13    A.   I don't recall.
14    Q.   You're not able to list any today anyway prior
15 to -- to now?
16    A.   I don't recall.
17    Q.   Okay.  Do you have an understanding -- and,
18 again, I'm not trying to get into your conversations
19 with your lawyers.
20         But do you have an understanding of whose
21 legislative privilege it is and whose right it is to
22 invoke it?
23         MR. HILTON:  Again, object to the extent
24 that it could call for attorney-client information
25 privilege.

Page 16

1         So don't reveal any conversations.
2    A.   You're asking me -- repeat it.
3    Q.   (By Mr. Dunn) Do you have an understanding of
4 who can invoke legislative privilege and who can choose
5 to waive it?
6    A.   Yes.
7    Q.   Okay.  And -- and the reason I'm asking you
8 this -- I understand your lawyer's probably given you
9 some advice, and I'm not trying to get into that.  But
10 you're a lawyer yourself.  So I don't know the line
11 between what you know on your own and what your lawyers
12 have told you.
13         So if you tell me, you know, all I know is
14 what my lawyers have told me, then I'll move on to
15 something else.
16         But what is your understanding of
17 whether -- of whether you have an individual legislative
18 privilege or it's the body as a whole?
19         MR. HILTON:  I'm gonna object to those
20 questions to the extent that it's getting into
21 privileged information, both legislative and
22 attorney-client.
23         There's no -- you know, Senator Huffman is
24 a lay witness; she's not an expert for this purpose.
25 There is no way to separate any sort of preexisting or

Page 17

1 independent knowledge from the legal advice that she may
2 have obtained.
3         So I'm gonna -- on that basis, I'm gonna
4 instruct the witness not to answer.
5         MR. DUNN:  So is it the case that we won't
6 be answering any more testimony today about legislative
7 privilege?
8         MR. HILTON:  I don't know until you ask
9 your question.
10         MR. DUNN:  All right.
11    Q.   (By Mr. Dunn) On the -- so going back to your
12 service in 2011.  I think you said -- and I just want to
13 make sure I have it right -- you don't recall whether
14 you served on the committee in 2013; is that true?
15    A.   Correct.
16    Q.   Okay.  You do understand that there was
17 litigation in the last decade about redistricting in
18 Texas?
19    A.   Yes.
20    Q.   Do you understand that the U.S. Supreme Court
21 had at least two opportunities to rule on redistricting
22 in Texas?
23    A.   I don't recall how many there were.
24    Q.   Okay.  Do you recall reading any of those
25 decisions at any point?

Page 18

1    A.  No.

2    Q.  Do you recall whether you read any of the
3 decisions of the San Antonio three-judge court?

4    A.  No.

5    Q.  Do you recall whether you read any of the
6 decisions of the three-judge federal court in
7 Washington, D.C.?

8    A.  No.

9    Q.  And just to make sure our record's clear.

10          You don't recall or you didn't, you know
11 you didn't?

12   A.  I don't recall.

13   Q.  Okay.  Are there any authorities in the last 10
14 years for redistricting for the Supreme Court that you
15 do recall reviewing?

16          MR. HILTON:  Objection to the extent that
17 it could call for attorney-client privileged information
18 or legislative privileged information.

19          You can answer to the extent that you can
20 without revealing any privileged information.

21   A.  Repeat the question, please.

22   Q.  (By Mr. Dunn) Are there any U.S. Supreme Court
23 decisions on redistricting in the last decade that you
24 do remember having reviewed?

25   A.  No.

Page 19

1    Q.  Okay.  And you were the chair of the
2 redistricting committee here in this most recent cycle
3 in Texas; is that true?

4    A.  Yes.

5    Q.  When was it that you were appointed to the
6 committee this -- this go around?

7    A.  I don't recall the exact date.

8    Q.  Do you recall a year?

9    A.  No.

10   Q.  Okay.  Who was it that would have appointed you
11 to the committee?

12   A.  Lieutenant Governor Dan Patrick.

13   Q.  Did he have any discussions with you at the
14 time of your appointment?

15          MR. HILTON:  I'm gonna object to that
16 question to the extent that calls for legislative
17 privileged information and instruct the witness not to
18 answer to the extent that it would reveal any
19 legislative privileged information.

20   Q.  (By Mr. Dunn) Have you had any conversations at
21 any point with the lieutenant governor about your
22 service on the redistricting committee?

23          MR. HILTON:  I'm gonna object to the
24 extent that it could call for legislative privileged
25 information.  The fact of a conversation may not be

Page 20

1 privileged, but certainly the content would be, and the
2 question calls for inquiry into the content of
3 privileged conversations.

4    Q.  (By Mr. Dunn) The -- at some point in time,
5 the -- you geared up to do redistricting and you engaged
6 some lawyers; is that true?

7    A.  Correct.  Yes.

8    Q.  Do you recall who it is that you obtained legal
9 services from in the redistricting chair capacity?

10   A.  I don't remember their names, their law firm
11 name.

12   Q.  Do you --

13   A.  I know it was Scott and Todd, if that helps.

14   Q.  Okay.  All right.  That Scott and Todd were
15 first names of the lawyers or...

16   A.  Yes.

17   Q.  Yeah.  Okay.

18          Did you have any lawyers on staff?

19   A.  Yes.

20   Q.  Who were they?

21   A.  Anne Mackin and Sean Opperman.

22   Q.  Any other lawyers you can recall that you
23 conferred with?

24   A.  Other than the attorney general, no.

25   Q.  Oh.

Page 21

1    A.  Attending general staff, I should say, not the
2 attorney general.

3    Q.  Were you the person that -- I'm gonna focus on
4 Sean Opperman and Anne Mackin for a moment.

5          Were you the person that -- that, you
6 know, sort of interviewed and hired those positions?

7    A.  Yes.

8    Q.  Did you interview other candidates, other than
9 the two of them?

10   A.  I don't recall.

11   Q.  Do you recall who suggested them to you?

12   A.  No.

13   Q.  Do you recall what their qualifications were
14 for the position?

15   A.  No.

16   Q.  Do you have any awareness of Ms. Mackin's
17 participation in redistricting in Texas prior to being
18 hired by your office?

19   A.  Yes.

20   Q.  What was that?

21          MR. HILTON:  You can answer, just don't go
22 too far and reveal any legislative privilege or
23 attorney-client information.  I think you can answer
24 without revealing privileged information.  But...

25   A.  I knew she had participated in the last

Page 22

1 redistricting cycle as an employee -- excuse me -- at
2 the attorney general's office.
3    Q.   (By Mr. Dunn) Did you -- did you have any more
4 detailed understanding of her participation, other than
5 that she participated?
6          MR. HILTON:  Same objection.
7          You can answer to the extent that you can
8 answer without revealing privileged information.
9    A.   No.  I knew she was on the team.
10    Q.   (By Mr. Dunn) Do you know how you became aware
11 of her as a -- as an applicant for this position?
12          MR. HILTON:  Same objection.
13          You can answer to the extent you can
14 without revealing priveledged information.
15    A.   I don't recall.
16    Q.   (By Mr. Dunn) And then the -- on Mr. Opperman,
17 how is it that you became aware of his application for
18 the position or of him?
19    A.   Mr. Opperman has been my general counsel and
20 worked for me for -- for several years.
21    Q.   Does he still work for you today?
22    A.   Yes.
23    Q.   Does Ms. Mackin still work with you today?
24    A.   No.
25    Q.   When did she leave your employment?

Page 23

1    A.   I believe her last date was -- geez, I don't
2 recall specifically.
3    Q.   Has it been recently?
4    A.   It's been fairly recently.  I just don't
5 remember the exact date.
6    Q.   Do you remember if you've read or reviewed any
7 of Ms. Mackin's writing as counsel in
8 redistricting-related matters?
9          MR. HILTON:  Object to the extent that
10 that calls for legislative privileged information and
11 attorney-client information.  I'm gonna instruct her not
12 to answer to the extent it would reveal any privileged
13 information.
14    Q.   (By Mr. Dunn) So are you able to answer the
15 question without...
16    A.   Could you...
17    Q.   Sure.
18    A.   Have I read anything that Anne Mackin has ever
19 wrote?
20    Q.   In -- in redistricting-related litigation.
21    A.   I don't -- I'm not gonna answer that because --
22 just invoke my privilege.
23    Q.   Okay.  And you made some statements on the
24 floor of the senate when you were laying out the bill
25 for the -- for the senate district map.

Page 24

1    A.   For the map?
2    Q.   Yes.
3    A.   Yes.  Okay.
4    Q.   Are -- is it your position that, other than
5 what you said on the senate floor, everything else that
6 you know about the senate map is legislative privilege?
7          MR. HILTON:  I'm gonna object to the
8 breadth of the question.  There's -- there's no way to
9 answer that question without knowing what you're asking
10 for.  Also, I'm gonna object to the extent that it calls
11 for legislative privileged information and calls for the
12 witness to make a legal conclusion about what may or may
13 not be privileged information.
14    Q.   (By Mr. Dunn) Okay.  Well, there was some
15 discussion in both the committee and on the senate floor
16 about what the U.S. Supreme Court ruled on House
17 District 90 in Tarrant County.
18          Do you remember any -- any of that
19 discussion?
20    A.   I don't recall.
21    Q.   Do you recall what the U.S. Supreme Court ruled
22 with respect to House District 90?
23    A.   No.
24    Q.   Do you know whether you considered that in the
25 way you crafted the senate plan in Tarrant County?

Page 25

1          MR. HILTON:  I'm gonna object and instruct
2 the witness not to answer.  That calls for legislative
3 privileged information.
4    Q.   (By Mr. Dunn) Were there any questions that you
5 can recall having answered publicly about House District
6 90 and the Supreme Court's ruling on it?
7    A.   Anything I said -- I don't recall.
8    Q.   At some point in time, you stated publicly what
9 your motivations were in crafting the senate plan.
10          You recall what those were?
11          MR. HILTON:  I'm gonna object to the
12 question to the extent that it characterizes
13 conversations that may or may not have happened.  It's
14 vague, needs to be more specific.
15          If you have something you'd like to show
16 the witness, a transcript, certainly you can do that.
17          But that -- that -- that question is
18 extremely broad and is --
19          You know, I'm gonna instruct you not to
20 answer to the extent that you can't do so without
21 revealing legislative privileged information.
22    Q.   (By Mr. Dunn) Do you recall saying anything
23 publicly about your motivations for the senate district
24 plan?
25          MR. HILTON:  Again, I'm gonna object to

Page 26

1 the extent that it could call for legislative
2 priveledged information.
3        If you can limit your answer only to
4 public statements and if you understand the question,
5 you can answer.
6    A.   Without waiving my legislative privilege, yes,
7 I believe I made public statements --
8    Q.   (By Mr. Dunn) Okay.  Can you --
9    A.   -- on the floor of senate.
10   Q.   Can you recall any of those?
11   A.   I believe I could.
12        These, of course, without waiving my
13 privilege, are statements that I've made publicly on the
14 floor of the senate that are part of the public record.
15        I believe I talked about making sure that
16 the maps were legally compliant, the need to equalize
17 population.  We talked about preserving, to the extent
18 possible, political subdivisions, communities of
19 interest.  To the extent possible, preserving the core
20 district -- the core of the district, of the existing
21 district.  Talked about accommodating members of parties
22 where possible.  Talked about assuring incumbent
23 protection where possible.  Talked about geographic
24 compactness, and talked about the partisan issues
25 involved in redistricting.

Page 27

1        I think that's a summation.  I may have
2 left something out.  That's the best of my recollection
3 at this point that I said publicly.
4    Q.   Would you describe the senate map as a partisan
5 gerrymander?
6        MR. HILTON:  Objection.  Calls for the
7 witness to reveal legislative privileged information
8 about her opinions and mental processes regarding
9 legislation.  I'm gonna instruct the witness not to
10 answer.
11        Yeah.  To the extent you can answer based
12 on public statements or any nonprivileged information,
13 you can.
14   A.   I do believe -- again, without giving up my
15 privilege.  I do believe that there were statements made
16 that the -- the partisan considerations were taken into
17 consideration.  You know, the -- so, yes.
18   Q.   (By Mr. Dunn) With respect to the -- the
19 specific lines in Senate District 10, were they partisan
20 motivated?
21   A.   Yes.
22   Q.   Is that a statement that you made publicly?
23   A.   Yes.  And, again, I'm not giving up my
24 privilege, but I do believe I said that publicly.
25        MR. GABER:  Patrick, if you could avoid

Page 28

1 nodding yes and no to the witness.
2        MR. SWEETEN:  Okay.  If you can avoid
3 instructing me, whether I'm nodding or not.  And -- and,
4 you know, it's not really your place to instruct me not
5 to do that.  I haven't -- and if you're -- if you're
6 making some allegation, go ahead and make it.
7        MR. GABER:  No.  I'm just asking you --
8        MR. SWEETEN:  I'm allowed to nod, if I'd
9 like to do that.  If you're -- if you're insinuating
10 that I'm -- I'm, you know, telling the witness how to
11 answer it, then make the allegation.
12        MR. GABER:  No.  I'm just asking you --
13        MR. SWEETEN:  I'm not.  Okay?
14        MR. GABER:  I'm asking you not to nod,
15 even if you're just answering it to yourself.
16        THE WITNESS:  Sir, excuse me.  I'm
17 perfectly capable of answering these questions and not
18 taking my lawyer's answers.  Thank you.
19        MR. HILTON:  I'm just going to state for
20 the record, Senator Huffman's is providing her own
21 answers here today.  She's not taking any instruction or
22 following any queues from her counsel.  Her answers are
23 under oath, and they are her own.
24        And, Senator Huffman, I'm also going to
25 ask you if you can just wait a beat between Mr. Dunn's

Page 29

1 question and your response so that we can think about
2 the question and object, if needed.
3        THE WITNESS:  Certainly.
4        MR. DUNN:  I'm gonna take a break at this
5 moment.
6        (Recess from 9:28 a.m. to 9:42 a.m.)
7    Q.   (By Mr. Dunn) We're back from the break,
8 Senator.
9        It sounds like we have some disagreements
10 amongst the lawyers about some legal issues.  So I just
11 want to ask you a couple of questions.  I think we can
12 wrap up, and then we'll put some matters to the Court.
13   A.   Okay.
14   Q.   I just want to be clear.
15        Have I been courteous to you today?
16   A.   Yes.
17   Q.   Now, on the -- on the -- you know, I understand
18 you're gonna object to this.  I just want to ask a
19 couple of questions, and then we'll -- you know, we'll
20 have, I think, what we need to let the Court decide the
21 legal issues.
22        But is there anything you can tell me
23 about the motivation behind the Senate District 10 part
24 of the senate plan that you haven't said publicly today
25 without invoking privilege?

Page 30

1           MR. HILTON:  I'm gonna object to the
2 extent it's overbroad and vague as to what it's calling
3 for, but also to the extent it calls for legislative
4 privileged information.
5           To the extent you can answer without
6 revealing privileged information by referring to your
7 public statements.
8     A.   Could you repeat.
9           THE WITNESS:  I'm sorry.  Spoke over you.
10    A.   Could you repeat the question, please.
11    Q.   (By Mr. Dunn) Sure.  Is there anything about
12 the particular motivation behind the Senate District 10
13 part of the senate plan that you can testify about today
14 that hasn't already been said -- said publicly without
15 invoking the legislative privilege?
16    A.   No, sir.
17           MR. HILTON:  Same objection.
18    Q.   (By Mr. Dunn) And is there anything about the
19 particular lines, you know, and the location of the
20 lines for Senate District 10 that you can tell us about
21 today without invoking legislative privilege that hasn't
22 already been said publicly?
23           MR. HILTON:  Same objection.  Calls for
24 legislative privileged information.
25           If you can answer without revealing

Page 31

1 priveledged information.
2     A.   No.
3     Q.   (By Mr. Dunn) Okay.  Now, I think -- just gonna
4 say something to your lawyer, and I think we're gonna
5 wrap up.
6           MR. DUNN:  I think we've got a
7 disagreement about the scope of privilege and when it
8 can be invoked here.  I don't think it's worth y'all's
9 time or mine, and certainly not the senator's, to go
10 through a bunch of questions, have privilege invoked,
11 not have answers.
12           So I'm gonna suggest that you reserve your
13 rights on the question; we reserve our rights on the
14 question.  We'll continue this deposition.  We'll put
15 the matters to the Court.
16           We understand in all likelihood and almost
17 certainly that means if there is a reconvened
18 deposition, it will be after the preliminary injunction
19 hearing.  But we'll take the matter up with the Court.
20 Okay?
21           Any dispute?
22           MR. SWEETEN:  And to be clear, I just want
23 to -- Chad, I think what you're saying is you believe
24 that there's a -- that the assertion of legislative
25 privilege in this case that's been made thus far, you

Page 32

1 believe it to have been what?  You don't believe
2 legislative privilege applies, or do you believe it's --
3 it's -- the contours of it have not been accurately
4 indicated?
5           MR. DUNN:  Both.
6           MR. SWEETEN:  Okay.  So -- so it is the
7 position of the Plaintiffs in this case there is no
8 legislative privilege?
9           MR. DUNN:  No.  I'm not saying that's the
10 position.  I think we have a disagreement about what
11 legislative privilege can be invoked, under what
12 circumstances, and what kind of case claims and
13 defenses.
14           MR. SWEETEN:  Okay.
15           MR. HILTON:  Well, yeah, it -- I think
16 it's fine to reserve further questioning.  And if you
17 don't wish to proceed, that's -- that's fine.  I think
18 it's gonna be our position that, you know, it's not
19 necessarily the case that reopening this deposition will
20 be proper.
21           I think all of our objections are well
22 within the contours of the legislative privilege and
23 they have been proper.  And to the extent I've
24 instructed the witness not to answer, it's only to the
25 extent that doing so would reveal privileged

Page 33

1 information.
2           You're free to question her on
3 nonprivileged issues.  And our position would be that
4 now is your opportunity.  And even if we do have some
5 sort of motions for access in front of the Court and
6 we -- we have to come back here about the scope of
7 privilege, this is your opportunity to ask about
8 nonprivileged matters, to the extent you haven't already
9 done so.
10           I'll also add that, you know, I -- I've
11 been summarizing my objections here and, believe it or
12 not, trying to limit the length of my speaking
13 objections.  We're gonna reserve the right to fully
14 brief this for the Court and explain in detail the
15 contours of the legislative privilege.
16           But, again, our position is that all of
17 the objections have been proper and now is your
18 opportunity to question the witness, if you want to.
19           MR. DUNN:  Sounds like we all got a speech
20 out this morning, so I'll move to adjourn.
21           (Proceedings concluded at 9:46 a.m.)
22
23
24
25

Pages  34..35

Page 34

1  STATE OF TEXAS

2  COUNTY OF TRAVIS

3

4                    REPORTER'S CERTIFICATE

5        ORAL DEPOSITION OF SENATOR JOAN HUFFMAN

6                    January 21, 2022

7

8        I, the undersigned Certified Shorthand Reporter in

9  and for the State of Texas, certify that the facts

10 stated in the foregoing pages are true and correct.

11       I certify that in accordance with Rule 30(e)(1),

12 signature was waived.

13       I further certify that I am neither attorney or

14 counsel for, related to, nor employed by any parties to

15 the action in which this testimony is taken and,

16 further, that I am not a relative or employee of any

17 counsel employed by the parties hereto or financially

18 interested in the action.

19

20

21

22

23

24

25

Page 35

1        SUBSCRIBED AND SWORN TO under my hand and seal of

2  office on this the 23rd day of January, 2022.

3

4

5        Amy M. Clark, CSR

         Texas CSR 8753

6        Expiration:  10/31/2023

         Ken Owen & Associates, LP

7        Firm No. 115

         801 West Avenue

8        Austin, Texas 78701

         (512)472-0882

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**1**

**10** 18:13 27:19 29:23

**11** 13:2

**17** 11:15

**183rd** 11:11

**19** 11:8

**1981** 11:5

**1997** 11:9

**1999** 11:9

**2**

**2000-** 13:2

**2008** 11:13,14,16,25 12:9

**2011** 13:8,11,15,21 14:13 17:12

**2013** 13:18,21 17:14

**9**

**90** 24:17,22 25:6

**9:28** 29:6

**9:42** 29:6

**A**

**a.m.** 29:6

**accommodate** 8:5

**accommodating** 26:21

**ACLU** 10:13

**administration** 12:24

**advance** 13:8

**advice** 16:9 17:1

**affairs** 12:23

**aggressive** 8:15

**ahead** 10:7 28:6

**Alexandra** 10:14

**allegation** 28:6,11

**allowed** 28:8

**Anne** 20:21 21:4 23:18

**announce** 9:21

**announcements** 10:1

**answering** 17:6 28:15,17

**answers** 28:18,21, 22

**Antonio** 18:3

**applicant** 22:11

**application** 22:17

**appointed** 13:6 19:5,10

**appointment** 19:14

**Ashley** 10:12

**asserting** 14:1

**assigned** 12:9

**assume** 6:10 8:9 12:9

**assure** 8:10

**assuring** 26:22

**Attending** 21:1

**attorney** 20:24 21:2 22:2

**attorney's** 11:5

**attorney-client** 15:5,24 16:22 18:17 21:23 23:11

**authorities** 18:13

**avoid** 27:25 28:2

**aware** 22:10,17

**awareness** 21:16

**B**

**back** 9:2 17:11 29:7

**based** 14:9 27:11

**basis** 17:3

**beat** 28:25

**began** 12:10

**bill** 23:24

**bit** 6:10 7:11

**body** 16:18

**breadth** 13:23 24:8

**break** 8:3,5 29:4,7

**broad** 13:24 25:18

**Brooks** 6:8

**C**

**call** 15:24 18:17 19:24 26:1

**calls** 19:16 20:2 23:10 24:10,11 25:2 27:6

**candidates** 21:8

**capable** 28:17

**capacity** 20:9

**career** 10:25

**case** 6:11 9:13,14 17:5

**Chad** 6:7 9:18 10:22

**chair** 8:2 12:23,25 19:1 20:9

**chance** 8:17

**characterizes** 25:12

**Chaudhuri** 10:18

**choose** 16:4

**CHOWDHURY** 10:18

**civil** 6:18 9:10

**clarify** 7:1

**clear** 7:2 14:19 18:9 29:14

**committee** 13:5,10, 13,14,17 14:13 17:14 19:2,6,11,22 24:15

**committees** 12:10,

13,19

**communications** 14:2

**communities** 26:18

**compactness** 26:24

**compliant** 26:16

**conclusion** 24:12

**conferred** 20:23

**consideration** 27:17

**considerations** 27:16

**considered** 24:24

**content** 20:1,2

**contest** 12:5

**contested** 11:18,21, 22

**conversation** 8:16 19:25

**conversations** 15:18 16:1 19:20 20:3 25:13

**core** 26:19,20

**Correct** 7:4 12:12 17:15 20:7

**counsel** 22:19 23:7 28:22

**County** 6:17 9:7 11:11,12 24:17,25

**couple** 29:11,19

**court** 7:16 11:12 17:20 18:3,6,14,22 24:16,21 29:12,20

**Court's** 25:6

**courteous** 29:15

**covered** 14:14

**crafted** 24:25

**crafting** 25:9

**criminal** 11:11 12:21,25

**critically** 8:24

**cycle** 12:2 19:2 22:1

---
**D**
---

**D.C.** 18:7

**Dan** 19:12

**date** 19:7 23:1,5

**decade** 17:17 18:23

**December** 11:14,16, 25

**decide** 29:20

**decisions** 17:25 18:3,6,23

**defendant** 9:7

**democratic** 11:23 12:2

**Department** 10:17

**deposition** 6:20,24 7:3 8:15 9:9,12

**describe** 11:20 27:4

**detailed** 22:4

**difficult** 7:16

**disagreements** 29:9

**disbanded** 13:15

**discussion** 24:15, 19

**discussions** 19:13

**district** 11:5,12,15 23:25 24:17,22 25:5, 23 26:20,21 27:19 29:23

**duly** 6:2

**Dunn** 6:4,7 9:22,25 10:5,20,23,24 14:12 15:10 16:3 17:5,10, 11 18:22 19:20 20:4 22:3,10,16 23:14 24:14 25:4,22 26:8 27:18 29:4,7

**Dunn's** 28:25

---
**E**
---

**education** 12:22

**EI** 6:9,11

**elected** 11:14,24

**election** 12:5

**elections** 11:20

**employee** 22:1

**employment** 22:25

**engaged** 20:5

**entire** 12:15

**equalize** 26:16

**equipment** 9:17

**et al** 10:3

**exact** 12:17 19:7 23:5

**EXAMINATION** 6:3

**excuse** 22:1 28:16

**existing** 26:20

**expect** 8:23

**expert** 16:24

**extent** 13:23 14:2,23 15:5,23 16:20 18:16, 19 19:16,18,24 22:7, 13 23:9,12 24:10 25:12,20 26:1,17,19 27:11

**extremely** 25:18

---
**F**
---

**fact** 19:25

**facts** 8:18

**Fair** 10:11,13,15

**fairly** 23:4

**faulty** 9:16

**federal** 9:8 18:6

**filed** 9:8,11,15

**finally** 8:14

**find** 8:17

**finish** 7:18

**firm** 20:10

**floor** 23:24 24:5,15 26:9,14

**focus** 21:3

**folks** 9:20 15:9

**friendly** 8:22

**full** 14:2

**fullest** 14:22

---
**G**
---

**GABER** 15:8 27:25 28:7,12,14

**geared** 20:5

**geez** 23:1

**general** 9:13 20:24 21:1,2 22:19

**general's** 22:2

**geographic** 26:23

**gerrymander** 27:5

**give** 12:13 14:10

**giving** 27:14,23

**governor** 19:12,21

**graduated** 11:7

**guess** 13:2

---
**H**
---

**handled** 6:18

**happened** 25:13

**happy** 8:3

**Harris** 6:16 9:7 10:12 11:11,12

**health** 12:20

**hear** 9:22

**hearing** 8:17

**helps** 20:13

**Higher** 12:22

**HILTON** 9:18 10:22 13:22 15:4,23 16:19 17:8 18:16 19:15,23 21:21 22:6,12 23:9 24:7 25:1,11,25 27:6 28:19

**hired** 11:7 21:6,18

**home** 9:17

**House** 24:16,22 25:5

**Huffman** 6:1,6,7 14:1 16:23 28:24

**Huffman's** 28:20

**human** 12:20

**husband** 9:11

---
**I**
---

**identify** 12:13

**implicate** 13:24

**important** 8:24

**impressions** 14:5

**including** 14:2

**inclusive** 13:4

**incumbent** 26:22

**independent** 17:1

**individual** 16:17

**information** 14:9,10 15:24 16:21 18:17, 18,20 19:17,19,25 21:23,24 22:8,14 23:10,11,13 24:11,13 25:3,21 26:2 27:7,12

**inquiry** 20:2

**insinuating** 28:9

**installation** 9:16

**instruct** 14:7 17:4 19:17 23:11 25:1,19 27:9 28:4

**instructing** 28:3

**instruction** 28:21

**interest** 26:19

**Interrupt** 15:8

interview 21:8

interviewed 21:6

invoke 15:22 16:4 23:22

invoked 15:11

invoking 14:19,22, 25 29:25

involved 26:25

issue 7:14

issues 26:24 29:10, 21

**J**

Joan 6:1,6

joining 10:4

judge 9:7 11:1,9,11

Jurisprudence 12:24

justice 10:17 12:21, 25

**K**

Kenneth 10:4

kind 9:4 10:24

knew 21:25 22:9

knowing 24:9

knowledge 15:11 17:1

**L**

law 6:15 11:6,7 14:2 20:10

lawsuit 6:8 9:6,8,10, 12,15

lawyer 6:13 14:17 16:10

lawyer's 16:8 28:18

lawyers 15:19 16:11,14 20:6,15,18, 22 29:10

lay 16:24

laying 23:24

leave 22:25

led 6:24

left 27:2

legal 17:1 20:8 24:12 29:10,21

legally 26:16

legislation 27:9

legislative 13:25 14:8,14,20 15:1,11, 21 16:4,17,21 17:6 18:18 19:16,19,24 21:22 23:10 24:6,11 25:2,21 26:1,6 27:7

legislators 14:3

legislature 12:9

letting 7:17,18

lieutenant 19:12,21

limit 26:3

lines 15:9 27:19

list 15:14

litigation 17:17 23:20

LULAC 10:3

**M**

Mackin 20:21 21:4 22:23 23:18

Mackin's 21:16 23:7

made 23:23 26:7,13 27:15,22

make 7:2,24 8:11 14:19 17:13 18:9 24:12 28:6,11

making 7:15 26:15 28:6

MALDEF 10:3,4

map 23:25 24:1,6 27:4

maps 10:11,13,15 26:16

matters 6:18 9:4 13:25 23:8 29:12

means 8:2

members 26:21

mental 14:4,5 27:8

mentioned 11:1

met 13:17

Michelle 10:16

minute 7:12

moment 21:4 29:5

motivated 27:20

motivation 29:23

motivations 25:9,23

move 16:14

music 9:16

mute 15:9

**N**

NAACP 10:9,19

name's 6:7

names 20:10,15

nature 9:13

needed 29:2

nod 28:8,14

nodding 28:1,3

nonprivileged 14:9, 10 27:12

Noor 10:6,10

Notzon 10:8

**O**

oath 28:23

object 13:22 15:4,23 16:19 19:15,23 23:9 24:7,10 25:1,11,25 29:2,18

objection 14:6 15:3 18:16 22:6,12 27:6

obtained 17:2 20:8

occasions 6:22

office 11:5 21:18 22:2

opinions 14:4 27:8

Opperman 20:21 21:4 22:16,19

opponent 12:2

opponents 11:24

opportunities 17:21

order 12:23

**P**

Parreno 10:4

part 26:14 29:23

participated 21:25 22:5

participating 10:1

participation 21:17 22:4

parties 26:21

partisan 26:24 27:4, 16,19

party 9:10

Paso 6:9,11

Patrick 19:12 27:25

perfectly 28:17

person 8:6 21:3,5

place 28:4

Plaintiffs 6:8 10:11, 13,15

plan 8:14 24:25 25:9, 24 29:24

point 12:22 13:15 17:25 19:21 20:4 25:8 27:3

political 10:25 13:15 26:18

Pooja 10:18

population 26:17

Index: position..summatio

position 21:14
  22:11,18 24:4

positions 21:6

practiced 6:15

preexisting 16:25

preface 12:18

present 11:16 13:11

preserving 26:17,19

prior 15:11,14 21:17

priveledged 22:14
  26:2

privilege 13:25
  14:15,20 15:1,5,6,11,
  21,25 16:4,18 17:7
  21:22 23:22 24:6
  26:6,13 27:15,24
  29:25

privileged 13:24
  14:8 16:21 18:17,18,
  20 19:17,19,24 20:1,
  3 21:24 22:8 23:10,
  12 24:11,13 25:3,21
  27:7

process 13:16,21
  14:13

processes 14:4
  27:8

professional 8:23

prosecutor 6:16
  11:4,7,8

protection 26:23

provided 14:2

providing 28:20

public 11:3 26:4,7,
  14 27:12

publicly 25:5,8,23
  26:13 27:3,22,24
  29:24

purpose 16:24

purposes 14:18

pursuit 9:12

put 29:12

**Q**

qualifications
  21:13

question 7:17,18
  8:4,7,11 13:23 14:8,
  11 17:9 18:21 19:16
  20:2 23:15 24:8,9
  25:12,17 26:4 29:1,2

questioned 7:3

questions 16:20
  25:4 28:17 29:11,19

queues 28:22

quick 15:8

**R**

races 11:18

ran 11:13

read 18:2,5 23:6,18

reading 17:24

reason 16:7

recall 7:10 9:4,8 12:4
  13:5,9,14,19,20
  15:13,16 17:13,23,24
  18:2,5,10,12,15 19:7,
  8 20:8,22 21:10,11,
  13 22:15 23:2 24:20,
  21 25:5,7,10,22
  26:10

recent 19:2

recently 23:3,4

recess 29:6

recollection 8:18
  27:2

record 14:18 26:14
  28:20

record's 18:9

redistricting 13:1,5,
  10,21 17:17,21
  18:14,23 19:2,22
  20:5,9 21:17 22:1
  26:25

redistricting-
related 23:8,20

reflects 7:24

remember 14:12
  18:24 20:10 23:5,6
  24:18

repeat 14:11 16:2
  18:21

rephrase 8:13

reporter 7:16

represent 6:8

representing 10:3,
  11,13,15,19 11:15

republican 11:24

respect 24:22 27:18

response 29:1

reveal 14:8 16:1
  19:18 21:22 23:12
  27:7

revealing 18:20
  21:24 22:8,14 25:21

reviewed 18:24 23:6

reviewing 18:15

Robert 10:8

ROOT 10:16

rude 7:23

rule 17:21

ruled 24:16,21

ruling 25:6

run 12:5

Rupp 10:16

**S**

Samantha 10:2

San 18:3

school 11:6,7

Scott 20:13,14

SCSJ 10:10,15

Sean 20:21 21:4

secretary 11:5

senate 11:13,15
  23:24,25 24:5,6,15,
  25 25:9,23 26:9,14
  27:4,19 29:23,24

senator 6:1,7 11:15
  12:10 14:1,7 16:23
  28:20,24 29:8

sense 8:12 11:2

separate 16:25

Serna 10:2

serve 12:21 13:17

served 11:8,10,14
  12:14,19,20 13:10
  17:14

service 11:3 12:8
  17:12 19:22

services 12:20 20:9

session 13:1

sessions 12:24

show 25:15

sir 6:12 28:16

sort 10:24 16:25 21:6

sounds 29:9

speaker 9:17

specific 25:14 27:19

specifically 12:4
  23:2

staff 14:3 20:18 21:1

staffs 14:3

start 10:25 11:3

started 11:4 12:8

state 12:23 28:19

stated 25:8

statement 27:22

statements 23:23
  26:4,7,13 27:12,15

subdivisions 26:18

suggested 21:11

summation 27:1

Index: Supreme..Zoom

**Supreme** 17:20 18:14,22 24:16,21 25:6

**SWEETEN** 15:3 28:2,8,13

**sworn** 6:2

---

**T**

**Taj** 10:6,10

**taking** 28:18,21

**talk** 8:17

**talked** 26:15,17,21, 22,23,24

**talking** 7:15

**Tarrant** 24:17,25

**team** 22:9

**television** 9:17

**telling** 28:10

**term** 12:21

**testified** 6:2 7:5 9:3, 11

**testimony** 7:25 15:12 17:6

**Texas** 6:17 9:7 10:8, 13,19 17:18,22 19:3 21:17

**thoughts** 14:4

**three-judge** 18:3,6

**time** 12:15 13:2 19:14 20:4 25:8

**times** 7:5 9:3

**today** 8:20,24 14:1, 14,20 15:12,14 17:6 22:21,23 28:21 29:15,24

**Todd** 20:13,14

**told** 6:10 16:12,14

**totally** 13:3

**transcript** 7:24 25:16

**trapped** 8:2

**true** 6:11 17:14 19:3 20:6

**truth** 8:24

---

**U**

**U.S.** 10:16 17:20 18:22 24:16,21

**uncontested** 11:21

**understand** 6:13 8:7,9,11,13,23 14:17 16:8 17:16,20 26:4 29:17

**understanding** 15:17,20 16:3,16 22:4

**unsuccessful** 12:6

**Uribe** 9:24 10:2,3

---

**V**

**vague** 25:14

**vice** 12:25

---

**W**

**wait** 28:25

**waive** 16:5

**waiving** 26:6,12

**wanted** 9:2

**Washington** 18:7

**watching** 9:20

**Wolfson** 10:14

**words** 7:22

**work** 12:10 22:21,23

**worked** 22:20

**wrap** 8:4 29:12

**writing** 23:7

**wrote** 23:19

---

**Y**

**year** 19:8

**years** 6:16 9:6 11:10 18:14 22:20

**you-all** 8:10

---

**Z**

**Zoom** 9:20,23 10:1 15:9

ken@kenowen.com  *  www.kenowen.com
800.829.6936  *  512.472.0880