# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, § § § § § § § § § § § | | |
| *Plaintiffs*, | § | Case No. 3:21-cv-00259 |
| v. | § | [Lead Case] |
| GREG ABBOTT, *et al.*, | | |
| *Defendants*. | | |

| | | |
|---|---|---|
| MEXICAN AMERICAN LEGISLATIVE CAUCUS, § § § § § § § § § § § § | | |
| *Plaintiff*, | § | Case No. 1:21-cv-00988 |
| v. | § | [Consolidated Case] |
| THE STATE OF TEXAS, *et al.*, | | |
| *Defendants*. | | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
THE MEXICAN AMERICAN LEGISLATIVE CAUCUS'S COMPLAINT,
FOR A MORE DEFINITE STATEMENT, OR TO STRIKE**

## TABLE OF CONTENTS

Table of Contents ..................................................................................................................................i

Table of Authorities ............................................................................................................................ii

Introduction ........................................................................................................................................1

Standard ..............................................................................................................................................1

Argument ............................................................................................................................................2

    I.   This Court Lacks Jurisdiction Over MALC's Claims .....................................................2

        A.  MALC Has Not Plausibly Alleged Standing .............................................................2

            1.   MALC Lacks Organizational Standing ..............................................................2

            2.   MALC Also Lacks Associational Standing ........................................................3

        B.  The State of Texas is Immune from MALC's Claims ...........................................4

    II.  MALC's Claims Fail on the Merits ..................................................................................4

        A.  The Court Should Dismiss MALC's Section 2 Effects Claim ............................4

            1.   MALC Has Not Alleged Facts Required by *Gingles* ....................................4

            2.   MALC's Allegations regarding Spanish Language Speakers are Legally Irrelevant to its Claims ...........................................................................................................7

        B.  The Court Should Dismiss MALC's Intentional Discrimination Claim .........8

        C.  The Court Should Dismiss MALC's Racial Gerrymandering Claim ............10

        D.  The Court Should Dismiss MALC's Malapportionment Claim ....................12

Conclusion .......................................................................................................................................14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott v. Perez*,
　138 S. Ct. 2305 (2018) ............................................................................................................8

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) (Souter, J., dissenting) ............................................................... 1, 7, 9, 11

*Ass'n of Cmty. Orgs. for Reform Now v. Fowler*,
　178 F.3d 350 (5th Cir. 1999) ...................................................................................................2

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (Stevens, J., dissenting) ...............................................................................*passim*

*Brnovich v. Democratic Natl. Cmte.*,
　141 S. Ct. 2321 (2021) ..........................................................................................................13

*Comptroller of Treas. of Maryland v. Wynne*,
　575 U.S. 542 (2015) ..............................................................................................................13

*Cooper v. Harris*,
　137 S. Ct. 1455 (2017) ..........................................................................................................11

*Cox v. Larios*,
　542 U.S. 947 (2004) ........................................................................................................ 12, 13

*Easley v. Cromartie*,
　532 U.S. 234 (2001) ..............................................................................................................10

*Evenwel v. Abbott*,
　136 S. Ct. 1120 (2016) ..........................................................................................................12

*Fusilier v. Landry*,
　963 F.3d 447 (5th Cir. 2020) ...................................................................................................8

*Georgia v. Ashcroft*,
　539 U.S. 461 (2003) ................................................................................................................5

*Gilkerson v. Chasewood Bank*,
　1 F. Supp. 3d 570 (S.D. Tex. 2014) .........................................................................................2

*Gomillion v. Lightfoot*,
　364 U.S. 339 (1960) ................................................................................................................9

*Harding v. Dallas County*,
    948 F.3d 302 (5th Cir. 2020) ...................................................................................... 5, 10

*Harris v. Arizona Indep. Redistricting Comm'n*,
    578 U.S. 253 (2016) .............................................................................................. 12, 13, 14

*Holder v. Hall*,
    512 U.S. 874 (1994) ........................................................................................................ 5

*Jacquez v. Procunier*,
    801 F.2d 789 (5th Cir. 1986) .......................................................................................... 4

*Kimbrough v. Khan*,
    No. 2:18-civ-82, 2020 WL 10963979 (N.D. Tex. Apr. 8, 2020) (Kacsmaryk, J.) ........... 1

*Kingman Park Civic Ass'n v. Williams*,
    348 F.3d 1033 (D.C. Cir. 2003) ...................................................................................... 1

*LULAC v. Clements*,
    986 F.2d 728 (5th Cir. 1993) .......................................................................................... 6

*Metts v. Murphy*,
    363 F.3d 8 (1st Cir. 2004) ............................................................................................... 1

*Middaugh v. InterBank*,
    528 F. Supp. 3d 509 (N.D. Tex. 2021) ........................................................................... 3

*Miller v. Johnson*,
    515 U.S. 900 (1995) ........................................................................................... 8, 10, 11, 13

*Mobile v. Bolden*,
    446 U.S. 55 (1980) (plurality opinion) ........................................................................... 8

*Perez v. Abbott*,
    253 F. Supp. 3d 864 (W.D. Tex. 2017) ......................................................................... 13

*Prejean v. Foster*,
    227 F.3d 504 (5th Cir. 2000) .......................................................................................... 8

*Rodriguez v. Harris County*,
    946 F. Supp. 2d 686 (S.D. Tex. 2013), *aff'd sub nom. Gonzalez v. Harris County*, 601
    F. App'x 255 ..................................................................................................... 6, 12, 13

*Rucho v. Common Cause*,
    139 S. Ct. 2484 (2019) ............................................................................................... 8, 13

*Schuette v. Coal. to Defend Affirmative Action, Integration & Immigrant Rts. & Fight for
    Equal. By Any Means Necessary (BAMN)*,
    572 U.S. 291 (2014) ........................................................................................................ 6

*Shaw v. Reno*,
    509 U.S. 630 (1993).................................................................................................................11

*Simon v. E. Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976).....................................................................................................................2

*Spiller v. Tex. City, Police Dep't*,
    130 F.3d 162 (5th Cir. 1997).....................................................................................................4

*Thornburg v. Gingles*,
    478 U.S. 30 (1986)......................................................................................................4, 5, 6, 7

*United States v. Hays*,
    515 U.S. 737 (1995).................................................................................................................11

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*,
    429 U.S. 252 (1977)...............................................................................................................8, 9

*Washington v. Davis*,
    426 U.S. 229 (1976)...............................................................................................................8, 9

*Yick Wo v. Hopkins*,
    118 U.S. 356 (1886)...................................................................................................................9

**Statutes**

52 U.S.C. § 10303(f)(3)......................................................................................................................7

Tex. Elec. Code § 11.002(a)(6)..........................................................................................................3

**Other Authorities**

Tex. Const. Art. III. Sec. 6 ...............................................................................................................3

Fed. R. Civ. P. 15(a)(2).....................................................................................................................3

**INTRODUCTION**

MALC's memorandum in opposition to Defendants' motion to dismiss only serves to confirm the serious flaws in its Complaint. MALC lacks standing, the State of Texas should be dismissed as a Defendant from most of the claims, and MALC has failed to plead legitimate claims for violations of Section 2 of the Voting Rights Act, or a bevy of claims under the Fourteenth Amendment: intentional discrimination, discrimination, racial gerrymandering, and malapportionment of state legislative districts.

**STANDARD**

MALC cites (at 8) a pre-*Iqbal/Twombly* case for its argument for the rarity of dismissals of Voting Rights Act claims (quoting *Metts v. Murphy*, 363 F.3d 8, 11 (1st Cir. 2004)). And it cites (at 11) a pre-*Iqbal/Twombly* case in favor of the adequacy of the particularity of its allegations of the relevant geographic area (quoting *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003)). MALC fails to understand "[t]he *Twombly* and *Iqbal* '[p]lausibility' [r]evolution" where "[t]he Supreme Court radically changed course" in those 2007 and 2009 cases. *Kimbrough v. Khan*, No. 2:18-civ-82, 2020 WL 10963979, at *8 (N.D. Tex. Apr. 8, 2020) (Kacsmaryk, J.).

MALC is not completely unaware of *Iqbal* and *Twombly*, however—it just prefers the dissents in those cases. It parrots (at 11) a line of reasoning from the dissent in *Twombly* that the particularity rule for fraud claims mean that other claims may just make general assertions of the elements of claims. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 576 n.3 (Stevens, J., dissenting). It also cites (at 16) the dissent in *Iqbal*, without noting it as such (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009) (Souter, J., dissenting)).

MALC plead its allegations under the old standard, but it fails the current standard that this Court must apply. Its claims should be dismissed.

1

**ARGUMENT**

I. **This Court Lacks Jurisdiction Over MALC's Claims**

    A. **MALC Has Not Plausibly Alleged Standing**

        1. **MALC Lacks Organizational Standing**

MALC maintains (at 6–7) that it has organizational standing merely because it has the purpose, or mission, of growing its own membership, making any threat to reducing that membership, including any denial of proportional ethnic representation in Texas, an injury in fact.

But even "a showing that an organization's *mission* is in direct conflict with a defendant's conduct is insufficient, in and of itself, to confer standing on the organization to sue on its own behalf." *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 361 n.7 (5th Cir. 1999) (emphasis added). That MALC has the mission of growing its membership of elected members of the Texas House of Representatives does not give it standing to challenge any law that may make it less likely that its membership may increase—standing must be based on injury to an organization's *activities*, not its societal objectives. If organizational standing were as broad as MALC claims, no group would ever be denied standing. For example, organizations "dedicated to promoting access of the poor to health services" could "establish their standing simply on the basis of that goal" by alleging that a new law makes it harder for the poor to access health services, necessitating a redoubling of the organizations' efforts, but the Supreme Court has rejected such standing. *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 39–40 (1976); *see, e.g., Gilkerson v. Chasewood Bank*, 1 F. Supp. 3d 570, 585 (S.D. Tex. 2014) ("A statement that 'the organization's abstract social interests' were set back is insufficient" to confer organizational standing).

Finally, MALC has no response to the point that it doesn't even have an organizational *interest* in challenging the districts for Congress or the State Board of Education—its membership only includes the Texas House of Representatives. *See* ECF 1 ¶ 1. Even under its lax theory of

2

organizational standing, it would have no basis to challenge those districts.

### 2. MALC Also Lacks Associational Standing

MALC cannot establish associational standing in the alternative because it fails to plead that any of its members are registered to vote. In its memorandum in opposition, MALC attempts to remedy this problem with an argument akin to a series of Russian nesting dolls: reasoning that because it alleges (at 3) that its members are also members of the Texas House of Representatives, that is also sufficient to allege they are registered voters because the Texas Constitution requires a Representative to "be 'a qualified voter of this State,' Tex. Const. Art. III. Sec. 6, and in order to be a 'qualified voter,' one must be a 'registered voter,' Tex. Elec. Code § 11.002(a)(6)."

First, MALC is erroneously attempting to amend its pleadings via its memorandum in opposition to the motion to dismiss. None of the allegations argued in its briefing are pleaded in the complaint. If MALC believes it can properly allege facts establishing standing, it should seek leave to amend its complaint. *See* Fed. R. Civ. P. 15(a)(2). Its effort to establish standing through later filings violates the "general rule" that "claims and allegations that are not raised in the complaint, but raised for the first time in a response to a motion to dismiss are not properly before the court." *Middaugh v. InterBank*, 528 F. Supp. 3d 509, 535–36 (N.D. Tex. 2021).

Second, even were the Court to accept MALC's chain-of-causation argument, it does not get it across the line to standing. MALC misleadingly truncates the quote (at 3) for the constitutional provision for qualification for members of the Texas House of Representatives. That provision states that "No person shall be a Representative, unless he be . . . *at the time of his election*, a qualified voter of this State . . . ." Tex. Const. Art. III. Sec. 7 (Qualifications of Representatives) (emphasis added). This provision only requires that the Representatives be registered voters *on election day*—there is nothing in this provision that institutes any ongoing monitoring or reporting that voter registration be maintained. Representatives may lose their status as registered voters for any number of reasons, such

3

as by moving to a different county within their district during their term or by being convicted of a felony. MALC's failure to allege that any of its members are registered to vote is therefore not cured by their mere status as members of the Texas House of Representatives, and this omission is fatal to MALC's standing for all of its claims.

### B.     The State of Texas is Immune from MALC's Claims

As MALC does not dispute (at 7) that Texas is immune from all of its claims save for its claim under Section 2 of the Voting Rights Act, the State should be dismissed as a Defendant for Counts I, III, and IV.

## II.     MALC's Claims Fail on the Merits

Because MALC has chosen to claim sufficiency of its Complaint as is, this Court need not provide MALC further leave to amend its Complaint now. *Spiller v. Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Jacquez v. Procunier*, 801 F.2d 789, 792–93 (5th Cir. 1986)) (affirming district court's denial of leave to amend plaintiff's complaint because plaintiff asserted sufficiency of complaint in response to motion to dismiss). An abbreviated attempt to squeeze a motion for leave to amend into its memorandum in opposition (at 2 and 4 n.1) is improper and should be ignored.

### A.     The Court Should Dismiss MALC's Section 2 Effects Claim

MALC fails to allege facts satisfying the three preconditions for each of the districts it purports to challenge. Its Section 2 claim therefore fails on the merits.

#### 1.     MALC Has Not Alleged Facts Required by *Gingles*

MALC was required to make factual allegations for each of the *Gingles* factors for each district it is challenging. Instead, it merely repeats the element for each factor, making a mere legal conclusion disguised as a factual allegation that is forbidden by the *Iqbal/Twombly* pleading requirements.

Under Supreme Court precedent interpreting Section 2, plaintiffs must establish three "necessary preconditions":

4

> (1) The minority group must be able to demonstrate that it is sufficiently large and geographically compact to constitute a majority in a single-member district;
>
> (2) The minority group must be able to show that it is politically cohesive; and
>
> (3) The minority must be able to demonstrate that the white majority votes sufficiently as a bloc to enable it—in the absence of special circumstances, such as the minority candidate running unopposed—usually to defeat the minority's preferred candidate.

*Thornburg v. Gingles*, 478 U.S. 30, 50–51 (1986). "Failure to establish any one of these threshold requirements is fatal." *Harding v. Dallas County*, 948 F.3d 302, 308 (5th Cir. 2020) (quotation omitted).

As to the first *Gingles* factor, MALC continues (at 9–11) to press its claim that Section 2 allows it to challenge districts based on retrogression. But this is wrong. *See Holder v. Hall*, 512 U.S. 874, 884 (1994); *Georgia v. Ashcroft*, 539 U.S. 461, 478 (2003). All of the Texas House Districts in El Paso County remain majority Hispanic HCVAP (ECF 80 at 15 n. 4). As are HD 118 (ECF 1 at ¶ 128); HD 31 (ECF 80 at 15 n.5); HD 37 (*id.*); and HD 80 (ECF 1 at ¶ 180). So are CD 23 (*id.* at ¶ 154); and CD 15 (ECF 80 at 15 n. 5). Any Section 2 claims based on these districts are not viable and must be dismissed.

MALC also fails to allege any geographic specifics that would permit any analysis of the plausibility of a claim that the populations of Hispanics are sufficiently large and geographically compact to constitute a majority within a district. It cannot simply allege a legal conclusion that, for example "Latinos in Central Texas, in regions between Bexar and Travis Counties, are sufficiently numerous and geographically compact to comprise a majority of the eligible voter population in at least one single member district." ECF 1 at ¶ 143. This is a mere "label and conclusion[,] and a formulaic recitation of the elements of the cause of action [that] will not do." *Twombly*, 550 U.S. at 555. These same problems are present in its allegations for HD 90, Harris County, West Texas, Nueces County, the El Paso districts, CD 27, and the State Board of Education districts.

The second *Gingles* factor fares worse. MALC makes no allegations that Hispanics are politically cohesive in any particular district because they "share[] common beliefs, ideals, principles, agendas, concerns, and the like such that they generally unite behind or coalesce around particular

5

candidates or issues." *LULAC v. Clements*, 986 F.2d 728, 744 (5th Cir. 1993). MALC makes no allegation that Hispanics in any particular district "usually vote for the same candidate." *Rodriguez v. Harris County*, 946 F. Supp. 2d 686, 754 (S.D. Tex. 2013), *aff'd sub nom. Gonzalez v. Harris County*, 601 F. App'x 255 (5th Cir. 2015 (per curiam). The Court is apparently supposed to just assume as self-evident that Hispanics all vote alike and have the same interests everywhere. *But see Schuette v. Coal. to Defend Affirmative Action, Integration & Immigrant Rts. & Fight for Equal. By Any Means Necessary (BAMN)*, 572 U.S. 291, 308 (2014) ("It cannot be entertained as a serious proposition that all individuals of the same race think alike."). MALC only defends its Complaint on this ground (at 11) by pointing to its allegations that "El Paso is a cohesive community with identifiable communities of interest. Plan H2316 deprives these communities of equal representation." (quoting ECF 1 at ¶ 95). Not only does MALC being able to list this one allegation as its only example in its Complaint damning in itself, but even this is another bare recital of the *Gingles* factor, not a factual allegation the Court should credit against a motion to dismiss.

Finally, MALC hardly addressed the third *Gingles* factor at all. MALC makes no factual allegations regarding Anglo bloc voting that enable it to defeat a Hispanic–preferred candidate in any particular district. The allegations in the Complaint on this factor include this blanket allegation that applies statewide to all of the challenged districts: "On information and belief, voting is polarized between Anglo and Latino voters at levels which are legally significant in the regions described in paragraph 86–169 above," ECF 1 at ¶ 170, and "Anglo bloc voting in the regions detailed in paragraphs 86-169 above is sufficient to prevent Latino and/or Spanish language voters from having an equal opportunity to elect candidates of their choice in those regions under the adopted plans." ECF 1 at ¶ 172. There are also scattered similar conclusory allegations for particular districts of "Anglo bloc voting," *id.* at ¶ 101, "extreme Anglo bloc voting," *id.* at ¶ 110, or "extreme polarized Anglo regions," *id.* at ¶ 112, but those are no less conclusory.

These allegations do not constitute factual allegations of Anglo bloc voting but merely restate the third *Gingles* factor. Each is a mere "label and conclusion[,] and a formulaic recitation of the elements of the cause of action [that] will not do." *Twombly*, 550 U.S. at 555. Such "mere conclusory statements do not suffice." *Iqbal*, 556 U.S. at 678 (cleaned up). MALC alleges no recent election results in any district that would allow any inference of Anglo bloc voting in any of the challenged districts. *See Gingles*, 478 U.S. at 57 (noting that longtime voting patterns are highly probative of racial polarization).

Failing to satisfy the pleading requirements for any one of the *Gingles* factors would be enough to scuttle MALC's Section 2 claims. But it fails at every step. This claim should be dismissed as to every district challenged.

### 2. MALC's Allegations regarding Spanish Language Speakers are Legally Irrelevant to its Claims

MALC continues (at 13–14) to press its allegations based on effects on Spanish speakers, as opposed to Hispanics as an ethnic group, despite the binding case law limiting Section 2 claims to the latter classification. *See* ECF 80, Motion to Dismiss at 11. It cites (at 13 n.5) the irrelevant provision in the Voting Rights Act that prohibits tests or devices to determine eligibility to vote, including "any practice or requirement by which any State or political subdivision provided any registration or voting notices, forms, instructions, assistance, or other materials or information relating to the electoral process, including ballots, only in the English language, where the Director of the Census determines that more than five per centum of the citizens of voting age residing in such State or political subdivision are members of a single language minority." 52 U.S.C. § 10303(f)(3). This provision has nothing to do with the redistricting decisions being challenged in this case. All of the allegations regarding populations of districts that speak Spanish at home should be struck as irrelevant to any claim.

### B. The Court Should Dismiss MALC's Intentional Discrimination Claim

As an initial matter, MALC appears to assert (at 14) that a failure to have some sort of proportional representation can be an indicator of discriminatory intent. But "[t]he Equal Protection Clause of the Fourteenth Amendment does not require proportional representation as an imperative of political organization." *Rucho v. Common Cause*, 139 S. Ct. 2484, 2499 (2019) (quoting *Mobile v. Bolden*, 446 U.S. 55, 75–76 (1980) (plurality opinion)). Failure to adopt a racial or ethnic quota cannot be evidence of an equal protection violation.

MALC relies (at 14–15) on *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977) in support of its claim that the impact of the action and whether it affects one race more heavily than another can be "an important starting point" in ascertaining discriminatory intent. (citing *id.* at 266) (quoting *Washington v. Davis*, 426 U.S. 229, 242 (1976)). First, for the same reasons that MALC has failed to allege any racially discriminatory effect under Section 2, its intentional discrimination claim must fall with no such effect. ECF 80 at 17. However, MALC fails to plausibly plead even the necessary intent to discriminate based on race (or, more accurately here, ethnicity).

*Arlington Heights* does not support MALC's claim here. First, unlike in that case—which involved a mere local government—the claim here involves a state legislature and its task of redistricting, where "the good faith of a state legislature must be presumed." *Miller v. Johnson*, 515 U.S. 900, 915 (1995). Indeed, "the Supreme Court has long cautioned against the quick attribution of improper motives, which would interfere with the legislature's rightful independence and ability to function." *Fusilier v. Landry*, 963 F.3d 447, 464 (5th Cir. 2020). It is therefore MALC's "burden to overcome the presumption of legislative good faith and show that the [Texas] Legislature acted with invidious intent." *Perez*, 138 S. Ct. at 2325. Thus, "showing that a redistricting plan intentionally discriminates is not ordinarily an easy task." *Prejean v. Foster*, 227 F.3d 504, 509 (5th Cir. 2000).

Second, *Arlington Heights* does not allow some free-wheeling use of disparate impact to show

8

discriminatory intent. The language from that case that MALC cites should be examined in context:

> Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available. The impact of the official action whether it "bears more heavily on one race than another," *Washington v. Davis*, [426 U.S. 229, (1976)] may provide an important starting point. Sometimes a clear pattern, unexplainable on grounds other than race, emerges from the effect of the state action even when the governing legislation appears neutral on its face. . . . The evidentiary inquiry is then relatively easy. But such cases are rare. Absent a pattern as stark as that in *Gomillion* [*v. Lightfoot*, 364 U.S. 339 (1960)] or *Yick Wo* [*v. Hopkins*, 118 U.S. 356 (1886], impact alone is not determinative, and the Court must look to other evidence.

*Arlington Heights*, 429 U.S. at 266. MALC's allegations do not evidence such a "rare" case or "pattern as stark" as the two cases cited. *Gomillion* involved redistricting where "the boundaries of the City of Tuskegee [went]. . . from a square to an uncouth twenty-eight-sided figure." *Gomillion*, 364 U.S at 340. And *Yick Wo* involved a situation where all 200 Chinese laundry operators were denied the right to operate, while all 80 non-Chinese operators were granted the right under the same conditions. *Yick Wo*, 118 U.S. at 374.

MALC fails to make any factual allegations—as opposed to legal conclusions—about any of the districts it challenges that allow any inference of intentional discrimination. In *Iqbal*, the Court examined the pleading requirements for a claim of intentional discrimination. There, the plaintiff alleged intentional discrimination because of his ethnicity (Arab) and religion (Muslim) by being targeted by federal law enforcement after the September 11 attacks. *Iqbal*, 556 U.S. at 682. The Court rejected the adequacy of the allegations because the plaintiff had failed to rebut the "obvious alternative explanation"—that he had been arrested based on "nondiscriminatory intent to detain aliens who were illegally present in the United States and who had potential connections to those who committed terrorist acts." *Iqbal*, 556 U.S. at 682.

Similarly here, partisan advantage is the obvious alternative explanation for the substance of the maps, and the pandemic-induced census delay is the obvious alternative explanation for the truncated legislative process of which MALC complains.

### C. The Court Should Dismiss MALC's Racial Gerrymandering Claim

The burden of proof required for racial gerrymandering claims is especially "demanding," *Easley v. Cromartie*, 532 U.S. 234, 241 (2001), and courts must "exercise extraordinary caution in adjudicating claims that a State has drawn district lines on the basis of race." *Miller,* 515 U.S. at 916.

As an initial matter, MALC fails to address the arguments in the motion to dismiss, ECF 80 at 22, that its allegations regarding the County Line Rule are precluded by sovereign immunity and that the allocation of prison populations in the districts they are incarcerated is lawful.

A racial gerrymandering claim must allege that race was not simply *a* motivation for the drawing of a district, but the *predominant* factor motivating the legislature's districting decision, so MALC must plausibly show that a facially neutral law is unexplainable on grounds other than race. *Easley*, 532 U.S. at 241–42. MALC makes no factual allegations, as required for a racial gerrymandering claim, regarding lack of "compactness, contiguity, and respect for political subdivisions or communities defined by actual shared interests." *Harding*, 948 F.3d at 312 (quoting *Miller*, 515 U.S. at 911).

The only defense MALC makes of the actual configuration of any districts (at 17–18) is limited to two congressional districts and consists of no substantive description but solely naked legal conclusions. (citing ECF 1 at ¶ 229 ("The shapes and interplay of Congressional Districts 6 and 33 are also inexplicable except on the grounds of race.")). MALC also defends (at 16) its blanket statement that "[t]he shape and composition of many districts—in particular the Texas House, Congressional, and SBOE districts in Harris County, and the Congressional Districts in the DFW metroplex—are inexplicable except on the grounds of race." (quoting ECF 1 ¶ 221). It defends this allegation by comparing it (at 17) to the language of "[t]he seminal case on the issue of racial gerrymandering" that demanded strict scrutiny redistricting legislation "that it is unexplainable on grounds other than race," quoting *Shaw v. Reno*, 509 U.S. 630, 644 (1993), and "[t]his is precisely what MALC alleges." Yes—and

10

that mere copying of language from the U.S. Reports is the problem. MALC makes no factual allegations but mere "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

When partisanship is consistent with allegations of racial gerrymandering, as it is here, allegations against "the challenged district's conformity to traditional districting principles" often "loses much of its value . . . because a bizarre shape . . . can arise from a 'political motivation' as well as a racial one." *Cooper v. Harris*, 137 S. Ct. 1455, 1473 (2017). Districts drawn for partisan advantage is an "obvious alternative explanation" consistent with MALC's allegations of racial gerrymandering. *Twombly*, 550 U.S. at 567; *see also id.* at 557 (explaining "[t]he need at the pleading stage for allegations plausibly suggesting (not merely consistent with)" a legal violation). Indeed, MALC alleges that "amendments that furthered the political ambitions of members of the body received extended consideration time, and favorable passage [relating to Congressional Districts]." ECF 1 ¶ 58.

MALC also questions the sincerity (at 17) of the justification of compliance with the Voting Rights Act, but it puts forth no factual allegations to overcome the presumption of good-faith of the legislature, *Miller*, 515 U.S. at 915—and a good-faith belief to comply with Voting Right Act is a legitimate consideration to recognize race or ethnicity in redistricting. *Cooper*, 137 S. Ct. at 1470. Mere awareness of racial consequences is especially insufficient in the redistricting context. "[E]vidence tending to show that the legislature was aware of the racial composition of" a district "is inadequate to establish injury in fact," much less a violation on the merits. *United States v. Hays*, 515 U.S. 737, 745–46 (1995). "[T]he legislature always is aware of race when it draws district lines, just as it is aware of age, economic status, religious and political persuasion, and a variety of other demographic factors. That sort of race consciousness does not lead inevitably to impermissible race discrimination." *Shaw v. Reno*, 509 U.S. 630, 646 (1993).

### D. The Court Should Dismiss MALC's Malapportionment Claim

MALC defends (at 18–19) its perfunctory malapportionment allegations despite the rule of presumptive constitutionality when a maximum population deviation between the largest and smallest districts for state legislative districts is less than 10%, *Evenwel v. Abbott*, 136 S. Ct. 1120, 1124 (2016), as is the case here, because of a supposed exception to that rule recognized in *Cox v. Larios*, 542 U.S. 947 (2004).

First, *Larios* was a summary affirmance of the judgment of a three-judge court, with no opinion. Characteristic of its memorandum in opposition to the motion to dismiss, MALC cites (at 19) a concurring opinion by two justices as if it were an opinion of the Court.

Second, MALC's pleadings do not come anywhere close to alleging what is needed for claims of malapportionment relating to maximum deviations under 10% that "will succeed only rarely, in unusual cases." *Harris v. Arizona Indep. Redistricting Comm'n*, 578 U.S. 253, 259 (2016).

MALC asserts (at 19) that its claim of malapportionment survives under *Larios* because the illegitimate factor of Hispanic ethnicity is enough to take it out of the zone of presumptive constitutionality. But for the same reasons it failed to allege its Section 2 claim and its claim for intentional discrimination, it has not plausibly plead any such allegations.

In *Harris*, the Court rejected an attempt to make a claim under *Larios* because, in *Larios*, "population deviation as well as the shape of many districts did not result from any attempt to create districts that were compact or contiguous, or to keep counties whole, or to preserve the cores of prior districts. No legitimate purposes could explain them." *Harris*, 578 U.S. at 264 (cleaned up); legislatures are permitted to deviate "to accommodate traditional districting objectives, among them, preserving the integrity of political subdivisions, maintaining communities of interest, and creating geographic compactness." *Evenwel*, 136 S. Ct. at 1124 (citation omitted). Here, MALC makes no allegations that the Texas House districts are not the result of such attempts to create districts based on such criteria.

MALC thus suffers from the same "inability [of the appellants in *Harris*] to show that the present plan's deviations and boundary shapes result from the predominance of similarly illegitimate factors that makes [*Larios*] inapposite here." *Harris*, 578 U.S. at 264. Because of the presumption of good faith afforded state legislatures in redistricting, *Miller*, 515 U.S. at 915, MALC has the burden at this stage make allegations that can plausibly overcome the presumption that those legitimate redistricting objectives were pursued.

The status of *Larios* as a mere summary affirmance already made it of "considerably less precedential value than an opinion on the merits," *Comptroller of Treas. of Maryland v. Wynne*, 575 U.S. 542, 559–60 (2015), and *Harris's* treatment of the partisanship question as open, when it was key to the judgment of the three-judge court summarily affirmed in *Larios*, 542 U.S. at 947, demonstrates the desperation of relying on it for a malapportionment claim. But "partisan motives are not the same as racial motives." *Brnovich v. Democratic Natl. Cmte.*, 141 S. Ct. 2321, 2349 (2021). Districts drawn for partisan advantage is an "obvious alternative explanation" consistent with MALC's attempt at a fused racial/ malapportionment claim. *Twombly*, 550 U.S. at 567; *see also id.* at 557 (explaining "[t]he need at the pleading stage for allegations plausibly suggesting (not merely consistent with)" a legal violation).

*Harris* also "assum[ed], without deciding, that partisanship is an illegitimate redistricting factor," for purposes of a *Larios* claim. But that decision has now been made—partisanship is a legitimate redistricting factor. *See Rucho*, 139 S. Ct. at 2497 ("To hold that legislators cannot take partisan interests into account when drawing district lines would essentially countermand the Framers' decision to entrust districting to political entities."); *Perez*, 253 F. Supp. 3d 864, 985 (W.D. Tex. 2017) ("An attempt to dislodge an incumbent political adversary should logically be viewed as a permissible redistricting principle, as is true for the traditional principle of protecting an incumbent. It only stands to reason that if a partisan political majority can exercise its legislative weight to protect its friends, it can do that to punish its enemies for political, non-racial reasons.") (Smith, J., dissenting) (three-judge

13

district court).

MALC's malapportionment allegations do not demonstrate one of those "rare," "unusual cases" with a viable claim of malapportionment where the maximum population deviations are under 10%. *Harris*, 578 U.S. at 259. This claim should be dismissed.

## CONCLUSION

Defendants respectfully request that the Court dismiss MALC's claims and strike any pleadings that are redundant, immaterial, impertinent, or scandalous. In the alternative, Defendants move the Court to require a more definite statement in which MALC specifically identifies each district it intends to challenge under each of its legal theories, and the specific bases of those challenges.

| | |
|---|---|
| Date: January 28, 2022 | Respectfully submitted. |
| | |
| KEN PAXTON | /s/ Patrick K. Sweeten |
| Attorney General of Texas | PATRICK K. SWEETEN |
| | Deputy Attorney General for Special Litigation |
| BRENT WEBSTER | patrick.sweeten@oag.texas.gov |
| First Assistant Attorney General | Tex. State Bar No. 00798537 |
| | |
| | WILLIAM T. THOMPSON |
| OFFICE OF THE ATTORNEY GENERAL | Deputy Chief, Special Litigation Unit |
| P.O. Box 12548 (MC-009) | will.thompson@oag.texas.gov |
| Austin, Texas 78711-2548 | Tex. State Bar No. 24088531 |
| Tel.: (512) 463-2100 | |
| Fax: (512) 457-4410 | **COUNSEL FOR DEFENDANTS** |

### CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on January 28, 2022, and that all counsel of record were served by CM/ECF.

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN