**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS (LULAC), et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 3:21-cv-00259 |
| GREGORY W. ABBOTT et al., | (Lead Case) |
| Defendants. | |
| ------------------------------------------------------- | |
| FAIR MAPS TEXAS ACTION COMMITTEE, et al., | |
| Plaintiffs, | Civil Action No. 3:21-cv-01038 |
| v. | (Consolidated case) |
| GREG ABBOTT et al., | |
| Defendants. | |

**<u>FAIR MAPS PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

INTRODUCTION...................................................................................................... 1

STANDARD ............................................................................................................... 1

ARGUMENT .............................................................................................................. 2

    I.    Plaintiffs Sufficiently Alleged Standing. ........................................................ 2

       A.   Entity Plaintiffs Have Sufficiently Alleged Associational Standing. ............................ 2

       B.   Entity Plaintiffs Have Sufficiently Alleged Organizational Standing. ........................... 8

       C.   Plaintiffs Collectively Have Standing For Each Challenged District. .......................... 10

    II.   Plaintiffs Have Adequately Alleged a Valid Section 2 Effects Claim........................... 14

    III.  Plaintiffs Have Adequately Alleged a Valid Intentional Discrimination Claim............ 15

    IV.  Plaintiffs Have Adequately Alleged a Valid Racial Gerrymandering Claim. .............. 18

    CONCLUSION ......................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                       **Page(s)**

*Ala. Legislative Black Caucus v. Alabama*,
   575 U.S. 254 (2015)..............................................................................................6, 7

*Am. C.R. Union v. Martinez-Rivera*,
   166 F. Supp. 3d 779 (W.D. Tex. 2015).....................................................................2

*Arnold v. Williams*,
   979 F.3d 262 (5th Cir. 2020) .................................................................................19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................................15, 18

*Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*,
   627 F.3d 547 (5th Cir. 2010) ...................................................................................3

*Ass'n of Cmty. Organizations for Reform Now v. Fowler*,
   178 F.3d 350 (5th Cir. 1999) ..........................................................................2, 8, 10

*Bartlett v. Strickland*,
   556 U.S. 1 (2009)...................................................................................................18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................................15, 18, 19

*Campos v. City of Baytown*,
   840 F.2d 1240 (5th Cir. 1988) ...............................................................................14

*DiMaio v. DNC*,
   520 F.3d 1299 (11th Cir. 2008) ...............................................................................6

*Disability Rights Wis. Inc. v. Walworth Cnty., Bd. Of Supervisors*
   522 F.3d 796 (7th Cir. 2008) ...................................................................................5

*Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*,
   675 F.3d 849 (5th Cir. 2012) ...........................................................................15, 17

*Draper v. Healey*,
   827 F.3d 1 (1st Cir. 2016).........................................................................................5

*Ga. Repub. Party v. SEC*,
   888 F. 3d 1198 (11th Cir. 2018) ..............................................................................5

*Gallagher v. N.Y. State Board of Elections*,
   496 F. Supp. 3d 842 (S.D.N.Y. 2020)......................................................................6

*Hancock Cnty. Bd. of Sup'rs v. Ruhr,*
    487 F. App'x 189 (5th Cir. 2012) ........................................................5

*Harding v. Cnty. of Dall.,*
    948 F.3d 302 (5th Cir. 2020) ............................................................6

*Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (1982)..............................................................8, 9, 10

*Hoyt v. Am. Nat'l Ins. Co.,*
    Civil Action No. 3:20-CV-545-L, 2021 U.S. Dist. LEXIS 125069 (N.D. Tex.
    July 6, 2021)....................................................................................15

*Hunt v. Cromartie,*
    526 U.S. 541 (1999)..........................................................................19

*Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.,*
    892 F.3d 719 (5th Cir. 2018) ............................................................1

*Kaufman ex rel. Kaufman v. Robinson Prop. Grp. Ltd. P'ship,*
    331 F. App'x 276 (5th Cir. 2008) .....................................................1

*Lewis v. Hughs,*
    475 F. Supp. 3d 597 (W.D. Tex. 2020)...................................5, 8, 10

*Little v. KPMG LLP,*
    575 F.3d 533 (5th Cir. 2009) ............................................................2

*Lormand v. US Unwired, Inc.,*
    565 F.3d 228 (5th Cir. 2009) ............................................................6

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992)......................................................................2, 10

*LULAC v. Pub. Interest Legal Found.,*
    No. 1:18-cv-00423, 2018 U.S. Dist. LEXIS 136524 (E.D. Va. Aug. 13, 2018) ...................11

*Mi Familia Vota v. Abbott,*
    497 F. Supp. 3d 195 (W.D. Tex. 2020)..............................................2

*Miller v. Johnson,*
    515 U.S. 900 (1995)..........................................................................18

*Mingo v. Meritplan Ins. Co.,*
    No. 2:06 CV 1914, 2007 U.S. Dist. LEXIS 89462 (W.D. La. Dec. 4, 2007)...........................1

*Nat'l Council of La Raza v. Cegavske,*
    800 F.3d 1032 (9th Cir. 2015) ..........................................................6

*OCA-Greater Hous. v. Texas*,
   867 F.3d 604 (5th Cir. 2017) .................................................................8

*Perez v. Abbott*,
   253 F. Supp. 3d 864 .....................................................................3, 18

*Perez v. Abbott*,
   267 F. Supp 3d (W.D. Tex. 2017)................................................. *passim*

*Perez v. Texas*,
   No. CIV.A. 11-CA-360-OLG, 2011 WL 9160142 (W.D. Tex. Sept. 2, 2011) ...............3, 5, 6

*Taylor v. Realty Execs. Int'l, Inc.*,
   No. 08-CA-746-LY, 2008 U.S. Dist. LEXIS 127896 (W.D. Tex. Dec. 12, 2008) ..................................................................................1

*Tex. League of United Latin Am. Citizens v. Abbott*,
   493 F. Supp. 3d 548 (W.D. Tex. 2020) *vacated on other grounds sub nom. Texas League of United Latin Am. Citizens v. Hughs*, No. 20-50867, 2021 WL 1446828 (5th Cir. Feb. 22, 2021) ................................................5

*Texas All. for Retired Americans v. Hughs*,
   976 F.3d 564 (5th Cir. 2020) ...........................................................2

*Town of Chester v. Laroe Estates, Inc.*,
   137 S. Ct. 1645 (2017).................................................................11

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
   429 U.S. 252 (1977)...................................................................16

*Wilson v. Ark. Dep't of hum. Servs.*,
   850 F. 3d 368 (8th Cir. 2017) .........................................................15

*Yazzie v. Hobbs*,
   977 F.3d 964 (9th Cir. 2020) ..........................................................6

**Statutes**

Voting Rights Act Section 2 ...................................................... *passim*

**Other Authorities**

Rule 12(b)(1)......................................................................1, 2

Rule 12(b)(6)......................................................................1, 2

# INTRODUCTION

All of Defendants' arguments are based on mischaracterizations of Plaintiffs' Complaint and on misstatements of the law, many of which this Court has already rejected. In the end, Defendants' arguments largely raise factual disputes about Plaintiffs' claims. A motion to dismiss is not the place to resolve factual disputes. Under well-established pleading standards, Plaintiffs have sufficiently alleged each of their claims under Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments of the United States Constitution. Plaintiffs have likewise sufficiently alleged that they have standing to bring each of the claims asserted.

# STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter which, when taken as true, states 'a claim to relief that is plausible on its face.'" *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A motion to dismiss "is viewed with disfavor and is rarely granted." *Taylor v. Realty Execs. Int'l, Inc.*, No. 08-CA-746-LY, 2008 U.S. Dist. LEXIS 127896, at *5 (W.D. Tex. Dec. 12, 2008) (citing *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)). A complaint may be dismissed only if it "seems beyond doubt that plaintiff cannot prove any set of facts entitling her to relief." *Kaufman ex rel. Kaufman v. Robinson Prop. Grp. Ltd. P'ship*, 331 F. App'x 276, 277 (5th Cir. 2008).

A motion to dismiss for lack of standing is properly brought under Rule 12(b)(1). *Mingo v. Meritplan Ins. Co.*, No. 2:06 CV 1914, 2007 U.S. Dist. LEXIS 89462, at *3–4 (W.D. La. Dec.

4, 2007). Motions to dismiss under Rule 12(b)(1) are evaluated under the same standard as motions brought under Rule 12(b)(6). *Id*.

## ARGUMENT

### I.    Plaintiffs Sufficiently Alleged Standing.

Plaintiffs' allegations easily satisfy the "minimal showing" necessary to demonstrate a justiciable case-or-controversy at this stage of the litigation. *Texas All. for Retired Americans v. Hughs*, 976 F.3d 564, 568 n.1 (5th Cir. 2020); *see also, Mi Familia Vota v. Abbott*, 497 F. Supp. 3d 195, 208–09 (W.D. Tex. 2020). Article III standing requires (1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). At the pleading stage, Plaintiffs need only "make general factual allegations that indicate that standing is plausible," *Am. C.R. Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 787 (W.D. Tex. 2015); *accord Ass'n of Cmty. Organizations for Reform Now v. Fowler*, 178 F.3d 350, 357 (5th Cir. 1999) (same), and such allegations are "liberally construed" and accepted as true at this stage of the proceedings, *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009).

### A.    Entity Plaintiffs Have Sufficiently Alleged Associational Standing.

Plaintiffs Fair Maps Texas Action Committee ("Action Committee"), OCA-Greater Houston ("OCA-GH"), North Texas Chapter of the Asian Pacific Islander Americans Public Affairs Association ("North Texas APAPA"), and Emgage (together, "Entity Plaintiffs"), each have properly asserted associational standing on behalf of their members. "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the

2

participation of individual members in the lawsuit." *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (quoting *Hunt v. Wash. St. Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). Defendants challenge only the first prong of this test. Defs.' Mot. to Dismiss ("Mot.") at 3. Each of Defendants' arguments fails because Entity Plaintiffs have sufficiently pleaded that they have members with standing to sue in their own right.[1]

### i.   Plaintiff Action Committee has members with standing.

Legislative Defendants allege that Plaintiff Fair Maps Action Committee ("Action Committee") lacks standing because each of its constituent organizations did not assert that they have members in the challenged districts. Mot. at 3. This argument is a red herring. Plaintiff Action Committee has sufficient members within its constituent organizations to establish standing. Compl. ¶¶ 8a, 8e, 8g, 9, 31; *see Perez v. Texas*, No. CIV.A. 11-CA-360-OLG, 2011 WL 9160142, at *9 (W.D. Tex. Sept. 2, 2011).

Plaintiff Action Committee is one entity, comprised of seven nonpartisan organizations[2] collectively "dedicated to outreach, education, mobilization, and organizing in favor of equitable redistricting." Compl. ¶ 7. The Action Committee has associational standing based on the standing of the numerous individual members in constituent organizations collectively. Courts have previously found associational standing for coalition groups based on the membership of constituent organizations, without requiring that each individual constituent organization allege their members were harmed. *See Perez v. Abbott*, 253 F. Supp. 3d 864, 931 n. 82 (W.D. Tex. 2017)

---

[1] While Defendants state that they contest Entity Plaintiffs' showing as to the third prong of the test for associational standing, Mot. at 3, Defendants make no arguments as to why the participation of individual members is required, *see id.* at 10–13. Further, courts have previously acknowledged that associations can stand in for their members in redistricting challenges. *E.g.*, *Perez v. Abbott*, 253 F. Supp. 3d 864, 931 n. 82.

[2] The Action Committee is comprised of the seven following constituent organizations: League of Women Voters of Texas, Clean Elections Texas, Texans Against Gerrymandering, Our Vote Texas, American Civil Liberties Union of Texas, National Council of Jewish Women-Greater Dallas Section, and Common Cause Texas.

(finding associational standing for the Latino Redistricting Task Force based on individuals in its constituent organizations) (citing *Action All. for Senior Citizens of Greater Philadelphia v. Shapp*, 400 F. Supp. 1208, 1214 (E.D. Pa. 1975); *Campaign Clean Water, Inc. v. Ruckelshaus*, 361 F. Supp. 689, 693 (E.D. Va. 1973), *modified on other grounds sub nom. Campaign Clean Water, Inc. v. Train*, 489 F.2d 492 (4th Cir. 1973), *vacated on other grounds*, 420 U.S. 136 (1975); *Sexual Minorities Uganda v. Lively*, 960 F. Supp. 2d 304, 326 (D. Mass. 2013) (finding standing for an umbrella coalition of Ugandan organizations whose individual members had suffered harm)).

In other words, it is sufficient that several of the Action Committee's constituent organizations plead that they have members who would otherwise have standing to sue in their own right. For instance, League of Women Voters of Texas alleges that it has members throughout Texas, including in Bell, Collin, Dallas, Denton, Fort Bend, Harris, and Tarrant Counties, and has identified a member, Angela Rainey, who lives in a challenged district. Compl. ¶¶ 8a, 19. Similarly, constituent organizations ACLU TX and Common Cause have members throughout Texas, including the specific areas mentioned in the Complaint. *Id.* ¶¶ 8e, 8g (listing counties). Defendants concede in their motion that, at the very least, the League of Women Voters has identified a member with standing, and that ACLU TX and Common Cause allege they have members in certain Texas counties. Mot. at 3. It is therefore unnecessary for the remaining constituent organizations in the Action Committee to independently plead that they have members with standing. Plaintiff Action Committee has sufficiently pleaded that it has members who would otherwise have standing.

### ii.    *Entity Plaintiffs have sufficiently identified members.*

Legislative Defendants further allege that the other Entity Plaintiffs lack standing. Although Defendants admit that Entity Plaintiffs "allege that they have members . . . generally,"

4

Defendants argue that the organizations must identify "specific" members. Mot. at 3. Defendants' argument is not supported. Each of the Entity Plaintiffs has sufficiently pleaded that they have members in relevant counties who are harmed by unlawful and discriminatory redistricting. Compl. ¶¶ 8a, 8e, 8g, 9, 12–17. This is sufficient at the pleading stage, when courts "presume that general allegations embrace those specific facts that are necessary to support the claim." *Perez v. Texas*, No. CIV.A. 11-CA-360-OLG, 2011 WL 9160142, at *9 (W.D. Tex. Sept. 2, 2011) (finding standing at the motion to dismiss stage where the Latino Redistricting Task Force alleged it had Latino members residing in challenged districts).

At the pleading stage, the Fifth Circuit has held that "nam[ing] names" or otherwise identifying a particular member is not required for standing. *Hancock Cnty. Bd. of Sup'rs v. Ruhr*, 487 F. App'x 189, 198 (5th Cir. 2012) (unpublished).[3] Defendants' citations fail to support their assertion that Entity Plaintiffs must identify specific members. *See* Mot. at 3-4. For instance, the Seventh Circuit in *Disability Rights Wis. Inc. v. Walworth Cnty., Bd. Of Supervisors* observed that properly pleading associational standing "allows for the member on whose behalf the suit is filed to remain unnamed by the organization." 522 F.3d 796, 802 (7th Cir. 2008) (citing *Doe v. Stincer*, 175 F.3d 879, 882 (11th Cir. 1999)).[4] Here, Entity Plaintiffs have met the pleading standard in the

---

[3] District courts applying *Hancock* routinely reject the argument that plaintiffs must name names at the pleading stage. *E.g.*, *Lewis v. Hughs*, 475 F. Supp. 3d 597, 613 (W.D. Tex. 2020) (organizations had associational standing based on allegation that "they are membership organizations and that challenged restrictions injure their memberships' right to vote"); *Tex. League of United Latin Am. Citizens v. Abbott*, 493 F. Supp. 3d 548, 570 (W.D. Tex. 2020) ("[I]t is sufficient at this stage that the organizational plaintiffs have alleged that some of their members have suffered an injury, even without naming specific members.") *vacated on other grounds sub nom. Texas League of United Latin Am. Citizens v. Hughs*, No. 20-50867, 2021 WL 1446828 (5th Cir. Feb. 22, 2021)).

[4] Defendants' additional citations are inapposite. In *Ga. Repub. Party v. SEC*, 888 F. 3d 1198, 1203 (11th Cir. 2018), the court evaluated whether the plaintiff had satisfied its burden to show standing under a heightened summary judgment standard, and found that the plaintiff organization failed to allege or provide evidence that any member was injured by the challenged regulation. *Id.* at 1201, 1203. This is inapplicable to the pleading stage at issue here. Further, *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016), evaluated the sufficiency of an affidavit submitted to establish standing, which is not at issue here. To the extent that *Draper* stands for the proposition that associational standing requires naming specific members at the pleading stage, that is not the law in the Fifth Circuit, as established above. *Hancock*, 487 F. App'x at 198.

5

Fifth Circuit to sufficiently allege that they have members who are harmed. Compl. ¶ 8a, 8e, 8g, 9, 12–17, 31; *see Perez v. Texas*, No. CIV.A. 11-CA-360-OLG, 2011 WL 9160142, at *9 (W.D. Tex. Sept. 2, 2011).

iii.    *Entity Plaintiffs' members intend to vote.*

Defendants next argue that Entity Plaintiffs have not alleged that their members intend to vote in future elections. Mot. at 4. Entity Plaintiffs have indeed sufficiently alleged affected members' intention to vote. Specifically, Entity Plaintiffs allege that discriminatory redistricting prevents their members from "electing their candidates of choice," Compl. ¶¶ 9, 13, 15, 17, which necessarily requires an inference that their members intend to vote in future elections.

Further, at the pleading stage, the Court can easily infer that Entity Plaintiffs, each of which is dedicated to redistricting and increasing and supporting political participation, and who have membership in the enumerated counties throughout the state, have members who intend to vote in the future. *Id*. at ¶¶ 7–17; *see Ala. Legislative Black Caucus v. Alabama*, 575 U.S. 254, 270 (2015) ("[I]t seems highly likely that a 'statewide' organization with members in 'almost every county,' the purpose of which is to help 'blacks and other minorities and poor people,' will have members in each majority-minority district."); *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015); *Harding v. Cnty. of Dall.*, 948 F.3d 302, 307 (5th Cir. 2020) (holding that it is "enough" that "each voter resides in a district where their vote has been cracked or packed"); *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 264 (5th Cir. 2009) (in evaluating a motion to dismiss, courts must "draw all reasonable plausible inferences from the complaint in favor of the plaintiff."). Defendants' cited cases do not support a greater showing,[5] Mot. at 4, and this Court has already rejected the same argument and the applicability of these cases. ECF No. 119 at 3 n.1.

---

[5] For instance, in *DiMaio v. DNC*, 520 F.3d 1299, 1302 (11th Cir. 2008), the plaintiff never "even so much as suggested that he intended to vote." Likewise, in *Yazzie v. Hobbs*, 977 F.3d 964, 967 (9th Cir. 2020), and *Gallagher v. N.Y. State*

iv.     *Entity Plaintiffs have sufficiently identified where their members live.*

Defendants additionally argue that Entity Plaintiffs have not adequately pleaded where their members reside. However, Entity Plaintiffs have specifically alleged the counties in which they have members. Compl. ¶¶ 8a, 8e, 8g, 12, 14, 16 (identifying counties where Entity Plaintiffs have members, including in Bell, Brazoria, Collin, Dallas, Denton, Fort Bend, Harris, Tarrant, and Waller Counties). These counties adequately encompass the districts that Plaintiffs challenge. *Id.* at ¶¶ 153 (alleging that Defendants violated Section 2 by failing to create minority opportunity districts in Harris and Fort Bend Counties, the Dallas-Fort Worth area, Collin County, Bell County, and Tarrant County), 159 (alleging that Defendants violated the Fourteenth Amendment through racial gerrymandering in Collin County, Fort Bend County, and Tarrant County). To the extent that Defendants argue that identifying the counties where Entity Plaintiffs' members live is insufficient to allege that they live in the challenged districts, this is contrary to *Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254 (2015). There, the Supreme Court observed that "it seems highly likely that a 'statewide' organization with members in 'almost every county,' the purpose of which is to help 'blacks and other minorities and poor people,' will have members in each majority-minority district." *Id.* at 270. At the pleading stage, the Court here can easily infer that Entity Plaintiffs who have members living in counties that overlap with the challenged districts, have members with standing to challenge those districts.

Defendants seem to argue that Entity Plaintiffs allege only "a prohibited statewide challenge" in Counts I and II. Mot. at 5. Defendants misstate Plaintiffs' claims. In Count I,

---

*Board of Elections*, 496 F. Supp. 3d 842, 845–46 (S.D.N.Y. 2020), which required greater showings to support motions for preliminary injunctions, plaintiffs challenged voting procedures specific to voting by mail during the Covid-19 pandemic without alleging that they intended to vote by mail. Entity Plaintiffs have specifically alleged that their members are harmed by newly drawn districts in the counties where they live and are prevented from electing their candidates of choice in elections. Compl. ¶¶ 9, 13, 15, 17, 31.

Plaintiffs bring Section 2 claims based on the specific districts and counties described throughout their Complaint. Compl. ¶ 153. Plaintiffs also assert that Defendants intentionally discriminated against voters of color statewide creating a ripple effect that limits opportunity districts and harms Plaintiffs' members across the state. *Id*. at ¶¶ 152, 156. For the statewide claims, Entity Plaintiffs have collectively pleaded that they have members in counties throughout the state who are harmed by intentionally discriminatory and unlawful redistricting in individual districts and statewide. Accordingly, each of the Entity Plaintiffs have sufficiently alleged that they have members with standing for each of the pleaded claims, as required for associational standing.

### B.     Entity Plaintiffs Have Sufficiently Alleged Organizational Standing.

Entity Plaintiffs have additionally established organizational standing by alleging an injury to themselves and their core mission flowing from the State's unlawful redistricting. *See, e.g*., *Fowler*, 178 F.3d at 356 ("An organization has standing to sue on its own behalf if it meets the same standing test that applies to individuals."). One way to meet this test is "by alleging that [the organization] must divert resources from its usual activities in order to lessen the challenged restriction's harm to its mission." *Lewis v. Hughes*, 475 F. Supp. 3d 597, 612 (W.D. Tex. 2020) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)); *see also OCA-Greater Hous. v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017) (finding plaintiff had organizational standing where it alleged that its mission was harmed by time and effort spent explaining a challenged provision which "frustrate[d] and complicate[d] its routine community outreach activities"). This court has specifically extended organizational standing for claims stemming from unlawful redistricting, finding that "courts have consistently found standing under *Havens* for organizations to challenge alleged violations of § 2 of the VRA and the Fourteenth Amendment." *Perez*, 267 F. Supp 3d at 774.

Plaintiffs have sufficiently alleged that Defendants' challenged practice will both impede their activities and require the expenditure of resources to counteract such practice. As alleged in Plaintiffs' complaint, Entity Plaintiffs are membership organizations working to promote civic engagement and advance coalition and community building among AAPI communities throughout Texas, including the challenged districts. They engage in voter initiatives and leadership development, and educate members of their communities on opportunities for active participation in civic affairs, all aimed at developing an engaged, empowered, informed, and civic-minded community of citizens. Compl. ¶¶ 7, 12, 13, 14, 15, 16, 17. By virulently disenfranchising AAPI, Black, and Latino voters and disassembling communities of interest through unlawful redistricting practices, creating disaffected citizens and disempowered communities, the State's actions impede the Entity Plaintiffs from pursuing their clearly identifiable activities. "[T]here can be no question that [an] organization has suffered injury in fact" when Defendants have "perceptibly impaired" an organization's activities, and Entity Plaintiffs have sufficiently alleged such an impairment. *Havens Realty Corp.*, 455 U.S. at 379; Compl. ¶¶ 9, 13, 15, 17.

Entity Plaintiffs will be forced to expend their limited resources counteracting the effects of discriminatory redistricting, which threatens their missions and undermines their work. Compl. ¶¶ 9, 13, 15, 17. As organizations dedicated to promoting civic engagement and participation in the political process, they will have to divert resources they could have spent elsewhere to combat the effects of disempowered communities and the disenfranchisement of voters whose ability to participate in the political process and elect their candidate of choice, responsive to their community's issues and concerns, is diminished. This diversion of resources due to the impairment of the Entity Plaintiffs' activities is an injury that is sufficient to establish organizational standing. *See, e.g., Perez*, 267 F. Supp. 3d at 757 ("An organization will have political standing if it 'prove[s]

a drain on its resources resulting from counteracting the effects of the defendant's actions.'") (quoting *ACORN*, 178 F. 3d at 356–62).

Defendants claim that "a redistricting map cannot impair the Entity Plaintiffs' activities. Each of the Entity Plaintiffs remain free to conduct the various activities that they allege to be the purpose of the particular organization." Mot. at 7. But this is not the relevant standard. The question is not whether an organization is allowed to conduct activities, but whether the challenged practice will impede the organization's purpose and force a "draining" of its limited resources in response to the challenged practice. *See, e.g.*, *Fowler*, 178 F.3d at 360; *Perez*, 267 F. Supp. 3d at 771; *Havens Realty Corp.*, 455 U.S. at 379; *Lewis v. Hughs*, 475 F. Supp. 3d 597, 612 (W.D. Tex. 2020). Entity Plaintiffs have alleged such impediments, and at the pleading stage such allegations are sufficient to establish organizational standing. *See Lujan*, 504 U.S. at 561 (at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim").

### C.    Plaintiffs Collectively Have Standing For Each Challenged District.

Although Defendants purport to challenge the Individual Plaintiffs' standing, Defendants do not actually argue that any of the Individual Plaintiffs lack standing. *See* Mot. at 7–8. Instead, Defendants claim that there are no named individual Plaintiffs who live in the following districts which were mentioned in the Complaint: (a) House Districts 33, 61, 66, 89; (b) Senate District 22; or (c) Congressional Districts 4, 6, 9, 26, 30, and 33. Defendants argue that claims "regarding those districts" should be dismissed. Defendants misstate both the facts alleged in the Complaint and the applicable law.

First, Defendants seem to suggest that there must be a named individual plaintiff in each of the districts mentioned in the Complaint. But that is not correct. As already explained above, at the pleading stage, the Court may infer that the Entity Plaintiffs, who have members living in counties that overlap with the challenged districts, have members with standing to assert each district-specific claim. Claims regarding House Districts 33, 61, 66, 89, Senate District 22, and Congressional Districts 4, 6, 9, 26, 30, and 33 should therefore not be dismissed. *See Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017) ("At least one plaintiff must have standing to seek each form of relief requested in the complaint."); *LULAC v. Pub. Interest Legal Found.*, No. 1:18-cv-00423, 2018 U.S. Dist. LEXIS 136524, at *6 (E.D. Va. Aug. 13, 2018) (explaining that Supreme Court has "held that the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement.").

Secondly, Defendants misstate the applicable legal standard for standing regarding certain Section 2 claims. Plaintiffs assert that Defendants failed to create opportunity coalition districts in certain areas of Texas. Contrary to Defendants' argument, "[t]he injury suffered by a § 2 plaintiff asserting a claim that additional minority opportunity districts are required goes beyond the boundaries of a single district and includes a geographic area." *Perez v. Abbott*, 267 F. Supp. 3d 750, 774 (W.D. Tex. 2017). Plaintiffs have sufficiently pleaded that there is *at least* one plaintiff who has standing to challenge each of the specific geographic areas named in the Complaint, which are comprised of the specific districts listed in Defendants' motion.

For instance, Plaintiffs allege that AAPI voters in Collin County are splintered among House Districts 33, 61, 66, 67, 70, and 89, and that voters of color in Collin County vote cohesively to elect their preferred candidate of choice. Compl. ¶¶ 104–09. Plaintiffs further allege that a coalition district could be drawn that "would create an opportunity for voters of color to elect their

candidate of choice in Collin County." *Id*. at ¶ 109. Under the new redistricting plan, Plaintiff Anand Krishnaswamy lives in House District 67. *Id*. at ¶ 30. Because he lives in one of the districts in which AAPI and other voters of color have been cracked in Collin County, he has standing to bring a Section 2 claim regarding a potential coalition district in that region. *See Perez*, 267 F. Supp. 3d at 774. Moreover, several Entity Plaintiffs have sufficiently alleged that they have members who live in Collin County and therefore have standing to challenge the districts in Collin County in which their members were packed, cracked, and racially discriminated against. Compl. ¶¶ 8a, 8e, 8g, 14, 16. Claims "regarding" House Districts 33, 61, 66 should therefore not be dismissed.

Similarly, Plaintiffs allege that voters of color in Tarrant County are cracked between Senate Districts 10 and 22. Compl. ¶¶ 120–27 ("If communities of color in Tarrant County were not cracked, there would have been an effective coalition district."). Under the new redistricting plan, Plaintiff Angela Rainey lives in Senate District 10. *Id.* ¶ 19. Because she lives in one of the districts that voters of color have been cracked between in Tarrant County, Plaintiff Angela Rainey has standing to challenge Defendants' failure to create an opportunity district for voters of color in Tarrant County. *Perez*, 267 F. Supp. 3d at 774. And again, several Entity Plaintiffs have sufficiently alleged that they have members who live in Tarrant County and therefore have standing to challenge Senate Districts 10 and 22 in Tarrant County. *Id.* ¶¶ 8a, 8e, 8g, 14. Claims "regarding" Senate District 22 should therefore not be dismissed.

Plaintiffs also allege that voters of color are split between different congressional districts in Fort Bend County, including specifically that "Districts 7, 9, and 22 significantly crack the AAPI community." *Id.* ¶¶ 131–32. Under the new redistricting plan, Plaintiffs Sofia Sheikh, Jennifer Cazares, Niloufar Hafizi, and Sumita Ghosh live in Congressional District 22, and Plaintiffs

Lakshmi Ramakrishnan and Deborah Chen live in Congressional District 7. *Id.* ¶¶ 22–25, 27, 29. Because these plaintiffs live in the area in Fort Bend County where AAPI voters have been cracked between several districts, they have standing to challenge Defendants' failure to create an opportunity district for voters of color in Fort Bend County. *Perez*, 267 F. Supp. 3d at 774. Additionally, several Entity Plaintiffs have sufficiently alleged that they have members who live in Fort Bend County and therefore have standing to challenge these districts in Fort Bend County. *Id.* ¶¶ 8a, 8e, 8g, 12, 16.

Plaintiffs also allege that voters of color are cracked among the 9 different congressional districts in the Dallas-Fort Worth area. Compl. ¶ 137. Specifically, Plaintiffs allege that "Congressional District 6 appears to slice into District 33 to crack the Latino population," Black voters were cracked among Congressional Districts 6, 30, and 33, and that without such blatant cracking, map-drawers could have created another opportunity district in that region. *Id.* at ¶¶ 138–140. The districts include Dallas and Tarrant, counties.  *Id.* at ¶¶ 138–39. Several organizational plaintiffs have sufficiently alleged that they have members who live in these counties and therefore have standing to challenge the failure to create an opportunity district in the Dallas-Fort Worth area. *Id.* at ¶¶ 8a, 8e, 8g, 14, 16. Moreover, under the new redistricting plan, Plaintiff Anand Krishnaswamy lives in Congressional District 3. Plaintiff Anand Krishnaswamy therefore has standing to challenge these congressional districts where AAPI voters of color were cracked in the Dallas-Fort Worth area. *See id.* at ¶ 141.

Accordingly, at least one Individual Plaintiff or Entity Plaintiff has standing to challenge each of the districts identified in Plaintiffs' complaint.

**II.     Plaintiffs Have Adequately Alleged a Valid Section 2 Effects Claim.**

Defendants contend that Plaintiffs cannot establish any Section 2 claim because there is no private right of action under the VRA and because the VRA does not require the Texas Legislature to draw opportunity districts for coalitions of minority voters. Mot. at 8, 17. As this Court has already concluded, Defendants are wrong on both points. ECF Nos. 58, 144. Plaintiffs therefore rely on this Court's Orders rejecting these arguments.[6]

Defendants also argue that Plaintiffs' allegations fail to "satisfy" the second and third *Gingles* conditions relating to the existence of racially polarized voting in the challenged districts. Mot. at 15–17. But as Defendants concede, Plaintiffs do indeed allege that Black, Latino and AAPI voters are politically cohesive in each of the specific regions challenged in the Complaint, and that the white majority votes as a bloc to defeat their preferred candidate. Compl. ¶ 3, 90, 102, 108, 117, 126, 145. Plaintiffs' allegations are tied to each challenged district, going beyond "mere conclusory statements" and sufficiently meeting the pleading standard. *See, e.g.*, *id.* ¶ 126.

Defendants' real argument is that this Court should impose an unprecedented standard of proof that is above and beyond what is appropriate or required at the pleading stage, namely that Plaintiffs must "overcome the 'obvious alternative explanation' for these voting patterns: partisanship." Mot. at 15. According to Defendants, it is "Plaintiffs' burden to plausibly allege that 'race,' not 'partisan affiliation,' 'best explains' any alleged bloc voting." *Id.* at 23 (quoting *LULAC v. Clements*, 999 F.2d 831, 850 (5th Cir. 1993) (en banc)). That is not the standard for notice pleading. To evaluate the motion to dismiss, this Court must only determine whether Plaintiffs "stated a legally cognizable claim that is plausible, not to evaluate [their] likelihood of success."

---

[6] To be clear, Plaintiffs agree that *Campos v. City of Baytown*, 840 F.2d 1240 (5th Cir. 1988) is binding Fifth Circuit precedent, which provides that coalition districts may satisfy the first *Gingles* condition, and that it has not been overruled by the Supreme Court.

14

ECF No. 144 at 2 (quoting *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (en banc) (cleaned up)). Plaintiffs have met this pleading requirement, as noted above, by alleging that Black, Latino and AAPI voters are politically cohesive in each of the specific regions challenged in the Complaint. At this stage in proceedings, "[p]laintiffs need not make evidentiary showings or demonstrate that they are likely to prevail." *Id.* Nor do plaintiffs have the burden of ruling out alternative explanations. *Wilson v. Ark. Dep't of Hum. Servs.*, 850 F. 3d 368, 373 (8th Cir. 2017) ("Requiring a plaintiff to rule out every possible lawful explanation for the conduct he challenges would impose the sort of probability requirement at the pleading stage which *Iqbal* and *Twombly* explicitly reject." (cleaned up)); *see also Hoyt v. Am. Nat'l Ins. Co.*, Civil Action No. 3:20-CV-545-L, 2021 U.S. Dist. LEXIS 125069, at *21 (N.D. Tex. July 6, 2021) (explaining that case cannot be dismissed where plaintiff states a plausible claim of discrimination even if there are "obvious alternative explanations"). Whether race or partisanship best explains racially polarized voting in Texas is certainly a factual question that is not appropriate for determination at this stage.[7] Defendants' motion to dismiss Plaintiffs' Section 2 claims should therefore be denied.

## III.   Plaintiffs Have Adequately Alleged a Valid Intentional Discrimination Claim.

Defendants next argue that Plaintiffs failed to state any intentional discrimination claims because the Complaint does not allege both discriminatory intent and effect. Mot. at 17–18. Defendants fail, however, to state the proper standard for intentional discrimination claims. Plaintiffs only have to plead that racial discrimination was a "motivating factor" in the passage of

---

[7] Defendants also seem to suggest that Plaintiffs must meet some undefined higher pleading standard when alleging racially polarized voting in coalition districts. Mot. at 16. Defendants do not, and cannot, cite to any case law for that notion. Coalition districts are valid under the VRA, and alleging such districts does not impose on Plaintiffs a higher pleading standard than required for all other cases.

the plans, which Plaintiffs have adequately done. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 255–56 (1977) ("Determining whether invidious discriminatory purpose was a *motivating factor* demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available….") (emphasis added). To determine whether there was intentional discrimination, courts consider the following: (1) the discriminatory "impact of the official action," (2) the "historical background," (3) the "specific sequence of events leading up to the challenged decision," (4) departures from procedures or substance, and (5) the "legislative or administrative history," including any "contemporary statements" of the lawmakers. *Id.* at 266–68.

Plaintiffs have alleged facts in support of each of these factors. First, the effect of the enacted plans on these voters is well-documented in the Complaint. *See, e.g.*, Compl. ¶¶ 93, 102, 108, 110, 117, 126, 135–36, 140. Populations of voters of color are cracked throughout Texas, and this has the effect of diluting the voting power of these communities, especially when white voting blocs in these districts are able to defeat the candidates of choice for these communities. *Id.* at ¶¶ 90, 102, 108, 117, 126, 135, 142. The districts in which minority voters are packed, also dilute their voting power, especially in surrounding districts. *See, e.g.*, *id*. at ¶ 136.

As Defendants concede, Plaintiffs also alleged several facts about Texas's long history of racial discrimination (*Id.* at ¶¶ 42–52, 146–48), departures from normal legislative procedure (*Id.* at ¶¶ 53–58, 61–62, 69–82), and the legislative history of the enacted plans (*Id.* at ¶¶ 59–68).[8] *See Arlington Heights* 429 U.S. at 266–67. Indeed, Plaintiffs devote 17 pages of their Complaint to detailing the specific choices made by the Texas Legislature to crack or pack voters of color into several House, Senate, and Congressional districts. *Id.* at ¶¶ 83–142. For example, Plaintiffs

---

[8] Defendants argue that the delay of the Census data provides the reason why the legislative process was rushed, but as this court previously stated, "[t]hese explanations, though they are themselves plausible, do not on their own render Plaintiffs' allegations implausible." ECF No. 144  at 7 (quoting *Arnold v. Williams*, 979 F.3d 262, 268 (5th Cir. 2020)).

specifically allege that SD 10 was a functioning coalition district, and during the redistricting process Fort Worth councilmembers called SD 10 an "effective coalition cross over district." *Id.* at ¶¶ 121–22. But despite several proposed amendments aimed at preserving SD 10, it was dismantled, cracking and subsuming voters of color into majority-white districts. *Id.* at ¶¶ 120–23. This runs afoul of the Supreme Court's admonition that the intentional destruction of a functioning crossover district would "raise serious questions under both the Fourteenth and Fifteenth Amendments." *Bartlett v. Strickland*, 556 U.S. 1, 24 (2009). Plaintiffs also allege that the Legislature's choice to draw the enacted plans without reference to race, means that they ignored legal experts' testimony about compliance with the VRA and Constitution, and ignored the impact that the enacted plans would have on voters of color, indicating that racial discrimination was a motivating factor in the passage of the plans. *Id.* at ¶¶ 64, 67–68. Plaintiffs therefore adequately allege that racial discrimination was a motivating factor in the passage of the enacted House, Senate, and Congressional plans.

Although they acknowledge all of these allegations, Defendants nevertheless argue that these are insufficient to support an inference of racial discrimination because they do not "rebut the presumption of legislative good faith". Mot. at 22. Defendants' argument is one of fact to be established at trial. This Court has already disposed of this argument, explaining that "it [is] inappropriate for a district court to weigh the strength of allegations [at the motion to dismiss stage,]" ECF No. 144 at 7 (quoting *Arnold v. Williams*, 979 F.3d 262, 268 (5th Cir. 2020)). Additionally, district courts do not "evaluate Plaintiffs' likelihood of success [at the pleading stage]." *Doe ex rel. Magee*, 675 F.3d 849, 854 (2012). Specifically, with regard to intent claims, this Court noted that "Plaintiffs are not required to produce a 'smoking gun,' especially not in their initial complaint," but can rely on the aforementioned factors to make a plausible allegation of

17

racial intent. ECF No. 144 at 6. Defendants' motion to dismiss Plaintiffs' intentional discrimination claims should therefore be denied.

## IV.   Plaintiffs Have Adequately Alleged a Valid Racial Gerrymandering Claim.

Plaintiffs have also alleged sufficient facts to establish valid racial gerrymandering claims under the pleading standard. As Defendants note, to prove a racial gerrymandering claim, Plaintiffs must show "either through circumstantial evidence of a district's shape and demographics or more direct evidence going to legislative purpose, that race was the predominant factor motivating the legislature's decision to place a significant number of voters within or without a particular district." *Miller v. Johnson*, 515 U.S. 900, 916 (1995). But "[w]hile an intentional vote dilution and a *Shaw* claim are analytically distinct, meaning the Court must analyze them under different rubrics, they are not mutually exclusive, and the allegations are sufficient to support both types of claims." *Perez v. Abbott*, 253 F. Supp. 3d 864, 892 n.29 (W.D. Tex. 2017).

Defendants absurdly state that Plaintiffs' only allegation regarding racial gerrymandering exists solely in paragraph 160 of the Complaint. That is clearly incorrect. Plaintiffs specify the particular districts in which voters were assigned to House, Senate, and Congressional districts based on their racial identities, to the exclusion of traditional redistricting criteria. *Id*. at ¶¶ 88–93. 104–108, 120–125, 141–142. The Complaint even offers visual evidence of the cracking and packing of minority communities and demographic tables, which show a clear departure from traditional redistricting criteria. *Id.* at ¶¶ 88, 105, 115, 116, 132, 138, 139, 141. Altogether (and including the relevant allegations regarding intentional discrimination), these factual allegations are more than sufficient to give Defendants "fair notice of the nature of the claims" and "plausibly give rise to an entitlement of relief." *Twombly*, 556 U.S. at 555 n.3, *Iqbal*, 556 U.S. at 679.

As with all of the other claims, Defendants improperly assert alternative explanations for this racial sorting. Defendants argue that "the Legislature acted in partisan interest" and "the awareness and use of racial demographics and statistics do not by themselves show discriminatory purpose." Mot. at 21–22. As this Court already determined, whether Defendants acted with partisan intent is a factual question that cannot be answered at the pleading stage. "At the 12(b)(6) stage of litigation, it is inappropriate for a district court to weigh the strength of the allegations." *Arnold v. Williams*, 979 F.3d 262, 268 (2020). Instead, the court "must accept the facts in the complaint as true," *id.* at 266, and "[t]he legislature's motivation is itself a factual question." *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999). As a result, Defendants' alternative factual assertions are immaterial, and the Court should defer such determinations for trial.

Because Plaintiffs have alleged sufficient facts to "raise a reasonable expectation that discovery will reveal" evidence of racial gerrymandering, Defendants' motion to dismiss Plaintiffs' racial gerrymandering claim must be denied. *Twombly*, 550 U.S. at 556.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to dismiss Plaintiffs' Complaint.

Dated: February 18, 2022

Respectfully submitted,

*/s/ Noor Taj (by permission)*
Noor Taj
P.A. State Bar No. 309594*
Allison J. Riggs
N.C. State Bar No. 40028*
Hilary Harris Klein
N.C. State Bar No. 53711*
Mitchell Brown

19

N.C. State Bar No. 56122*
Southern Coalition for Social Justice
1415 West Highway 54, Suite 101
Durham, NC 27707
Telephone: 919-323-3380
Fax: 919-323-3942
Allison@southerncoalition.org
Noor@scsj.org
hilaryhklein@scsj.org
mitchellbrown@scsj.org
David A. Donatti
TX Bar No. 24097612
Ashley Harris
TX Bar No. 24078344
Thomas Buser-Clancy
TX Bar No. 24123238
Andre I. Segura
TX Bar No. 24107112
ACLU Foundation of Texas, Inc.
P.O. Box 8306
Houston, TX 77288
Tel. (713) 942-8146 Fax. (713) 942-8966
ddonnati@aclutx.org
aharris@aclutx.org
tbuser-clancy@aclutx.org
asegura@aclutx.org

Jerry Vattamala
N.Y. State Bar No. 4426458*
Susana Lorenzo-Giguere
N.Y. State Bar No. 2428688*
Patrick Stegemoeller
N.Y. State Bar No. 5819982*
ASIAN AMERICAN LEGAL DEFENSE
AND EDUCATION FUND
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 966-5932 (phone)
(212) 966 4303 (fax)
jvattamala@aaldef.org
slorenzo-giguere@aaldef.org
pstegemoeller@aaldef.org

*Admitted Pro Hac Vice

Counsel for Fair Maps Texas Plaintiffs

20

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 18, 2022, the foregoing response was served on all counsel of record via the Court's ECF.

<u>*/s/ Ashley Harris*</u>
Ashley Harris