**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, | § § § | |
| *Plaintiffs,* | § § | Case No. 3:21-cv-259 |
| v. | § § | [Lead Case] |
| GREG ABBOTT, *et al.*, | § § | |
| *Defendants.* | § § | |
| TREY MARTINEZ FISCHER, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Case No. 3:21-cv-306 |
| | § | [Consolidated Case] |
| GREG ABBOTT, *et al.*, | § § | |
| *Defendants.* | § § | |

**DEFENDANTS' MOTION TO DISMISS
PLAINTIFF TREY MARTINEZ FISCHER'S ORIGINAL COMPLAINT**

TABLE OF CONTENTS

Table of Contents ........................................................................................................................ii

Table of Authorities..................................................................................................................iii

Introduction ................................................................................................................................1

Standard.......................................................................................................................................1

Argument ....................................................................................................................................2

    I.   This Court Lacks Jurisdiction to Hear Plaintiff's Claims ...........................................2

        A.  Plaintiff lacks standing to bring a statewide challenge to the congressional map.................2

        B.  Plaintiff lacks standing to challenge CD 35.....................................................3

        C.  Plaintiff lacks standing to sue in his official capacity. ...................................4

    II. Plaintiff Has Not Plausibly Alleged a Discriminatory-Effects Claim...........................6

        A.  Plaintiff does not allege the first *Gingles* precondition. ...............................7

        B.  Plaintiff's allegation of Latino-voter cohesion is nothing more than a formulaic recitation and is insufficient.....................................................................8

        C.  Plaintiff's allegation of white-voter bloc voting is nothing more than a formulaic recitation and is insufficient. ...............................................................9

    III. Plaintiff Has Not Plausibly Alleged a Discriminatory-Intent Claim...........................10

        A.  Plaintiff has failed to allege facts showing discriminatory intent. .......................10

        B.  Plaintiff's discriminatory-intent claim fails due to his failure to sufficiently allege discriminatory effects.....................................................................11

    IV. Section 2 Does Not Confer a Private Right of Action, and the Court Should Certify the Question If Prefers Not to Revisit the Issue.................................................12

Conclusion ...............................................................................................................................13

Certificate of Service................................................................................................................14

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Perez,*
138 S. Ct. 2305 (2018) ........................................................................................... 10, 11

*Ala. Legis. Black Caucus v. Alabama,*
575 U.S. 254 (2015).......................................................................................................3

*Alexander v. Sandoval,*
532 U.S. 275 (2001)..................................................................................................... 12

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n,*
576 U.S. 787 (2015).......................................................................................................5

*Ark. State Conf. NAACP v. Ark. Bd. of Apportionment,*
No. 4:21-cv-012390-LPR, 2022 WL 496908 (E.D. Ark. Feb. 17, 2022)........................... 12

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..................................................................................... 1, 8, 9, 10, 11

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)..................................................................................... 1, 8, 9, 10, 11

*Benavidez v. Irving Indep. Sch. Dist.,*
690 F. Supp. 2d 451 (N.D. Tex. 2010) ............................................................................7

*Bethune-Hill v. Va. State Bd. of Elections,*
137 S. Ct. 788 (2017).....................................................................................................3

*Brown v. Todd,*
53 S.W.3d 297 (Tex. 2001) .............................................................................................5

*Cactus Corner, LLC v. U.S. Dep't of Agric.,*
346 F. Supp. 2d 1075 (E.D. Cal. 2004), *aff'd*, 450 F.3d 428 (9th Cir. 2006) .....................9

*Chisom v. Roemer,*
501 U.S. 380 (1991)..................................................................................................... 12

*City of Mobile v. Bolden,*
446 U.S. 55 (1980)................................................................................................. 10, 11

*Conley v. Gibson,*
355 U.S. 41 (1957)........................................................................................................1

*Evenwel v. Abbott,*
    578 U.S. 54 (2016) .................................................................................................. 4

*FW/PBS, Inc. v. City of Dallas,*
    493 U.S. 215 (1990) ................................................................................................ 2

*Gill v. Whitford,*
    138 S. Ct. 1916 (2018) ............................................................................................ 2

*Gohmert v. Pence,*
    510 F. Supp. 3d 435 (E.D. Tex. 2021) .................................................................... 5

*Growe v. Emison,*
    507 U.S. 25 (1993) ............................................................................................... 6, 7

*Harding v. Dallas Cnty.,*
    948 F.3d 302 (5th Cir. 2020) ............................................................................... 7, 9

*Hooks v. Dir., TDCJ-CID,*
    No. 2:04cv389, 2008 WL 3852757 (E.D. Tex. Aug. 14, 2008) ............................. 9

*Knox v. Butler,*
    884 F.2d 849 (5th Cir. 1989) .................................................................................. 9

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ................................................................................................ 2

*LULAC v. Clements,*
    999 F.2d 831 (5th Cir. 1993) ............................................................................. 8, 11

*LULAC v. N.E. Indep. Sch. Dist.,*
    903 F. Supp. 1071 (W.D. Tex. 1995) ................................................................... 12

*Miller v. Johnson,*
    515 U.S. 900 (1995) .............................................................................................. 10

*Palmer v. Thompson,*
    403 U.S. 217 (1971) .............................................................................................. 12

*Pers. Adm'r of Mass. v. Feeney,*
    442 U.S. 256 (1979) .............................................................................................. 10

*Raines v. Byrd,*
    521 U.S. 811 (1997) ................................................................................................ 5

*Rodriguez v. Harris Cnty.,*
    964 F. Supp. 2d 686 (S.D. Tex. 2013) ................................................................. 12

*Shaw v. Reno*,
    509 U.S. 630 (1993) .................................................................................................. 12

*Sinkfield v. Kelley*,
    531 U.S. 28 (2000) ...................................................................................................... 3

*Spokeo, Inc. v. Robbins*,
    578 U.S. 330 (2016) ..................................................................................................... 2

*Thornburgh v. Gingles*,
    478 U.S. 30 (1986) ................................................................................ 6, 7, 8, 9, 10

*Turner v. Arkansas*,
    784 F. Supp. 553 (E.D. Ark. 1991), *aff'd*, 504 U.S. 952 (1992) ........................ 12

*United States v. Hays*,
    515 U.S. 737 (1995) ................................................................................................. 2, 3

*United States v. O'Brien*,
    391 U.S. 367 (1968) .................................................................................................. 12

*Valdespino v. Alamo Heights Indep. Sch. Dist.*,
    168 F.3d 848 (5th Cir. 1999) .................................................................................. 7, 9

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977) .................................................................................................. 11

STATUTES

13 U.S.C. § 141(a) ........................................................................................................... 11

13 U.S.C. § 141(c) ........................................................................................................... 11

52 U.S.C. § 10301(a) ........................................................................................................ 6

OTHER AUTHORITIES

TEX. CONST. art. III, § 40 ................................................................................................ 11

FED. R. EVID. 201(b)(2) .................................................................................................... 9

## INTRODUCTION

Plaintiff Trey Martinez Fischer brings two claims: an alleged violation of Section 2 of the Voting Rights Act (VRA); and an alleged violation of the Equal Protection Clause of the Fourteenth Amendment. *Fischer v. Abbott*, No. 3:21-cv-306, ECF 1 ¶¶ 45–48 (W.D. Tex. Dec. 13, 2021) ("Compl."). These claims fail as a matter of law.

First, this Court lacks jurisdiction to hear Plaintiff's claims. To the extent he raises claims about districts other than the one in which he lives, he lacks standing. To the extent he challenges only the district in which he currently lives, he still lacks standing. And to the extent Plaintiff brings this suit in his official capacity, he has not alleged facts that entitle him to legislator standing. Second, Plaintiff has not plausibly alleged discriminatory effects and therefore has no VRA claim. Third, he has not plausibly alleged discriminatory intent and therefore has no equal-protection claim.

For these reasons, the Court should dismiss this Complaint.

## STANDARD

A complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

ARGUMENT

## I.     This Court Lacks Jurisdiction to Hear Plaintiff's Claims

The Supreme Court has long recognized that "standing is perhaps the most important of the jurisdictional doctrines." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (quotation omitted). At the pleading stage, plaintiffs must "clearly . . . allege facts demonstrating each element" of standing. *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 339 (2016) (quotation omitted). These are (1) an actual or imminent, concrete and particularized injury-in-fact (2) that is fairly traceable to the challenged action of the defendant and (3) that is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

### A.   Plaintiff lacks standing to bring a statewide challenge to the congressional map.

Where, as here, a plaintiff's "alleged harm is the dilution of [his] vote[], that injury is district specific." *Gill v. Whitford*, 138 S. Ct. 1916, 1930 (2018). Because any injury to a plaintiff "results from the boundaries of the particular district in which he resides," any remedy "lies in the revision of the boundaries of the individual's own district." *Id.* Plaintiff alleges that he is a registered voter in HD 116, Compl. ¶ 6, but he does not challenge the house map. Plaintiff also alleges that he is a registered voter in Congressional District 35 (CD 35), *id.*, but he does not limit his challenge to that district. On the contrary, he challenges the congressional map in toto. *See, e.g.*, Compl. ¶¶ 4, 46, 48, 55. He has no standing to do so, and his challenge should be dismissed for all districts other than CD 35.

Plaintiff's challenge cannot go beyond the district in which he votes. This is in keeping with Supreme Court precedent restricting standing to bring related redistricting claims. In a "racial gerrymandering" case, for example, a voter does not have Article III standing to challenge a map "in its entirety." *United States v. Hays*, 515 U.S. 737, 746 (1995). Establishing "individualized harm" requires showing that the "plaintiff resides in a racially gerrymandered district." *Id.* at 744–45. "On the other hand, where a plaintiff does not live in such a district," he lacks standing unless there is some other

2

basis for concluding "that the plaintiff has personally been subjected to a racial classification." *Id.* at 745; *see also Sinkfield v. Kelley*, 531 U.S. 28, 30 (2000) (per curiam). Thus, "[a] racial gerrymandering claim" must proceed "district-by-district," and courts do not analyze the State "as an undifferentiated 'whole.'" *Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 262 (2015); *accord Bethune-Hill v. Va. State Bd. of Elections*, 137 S. Ct. 788, 800 (2017).

The Court has already recognized this standing requirement, dismissing one of the *Brooks* plaintiffs on this basis. *See* ECF 119 at 6 ("[Plaintiff Spell] instead resides in SD 22, a large district that borders SD 10. . . . She has not adequately alleged standing."). Accordingly, Plaintiff's claims should be dismissed to the extent they challenge districts other than CD 35.

## B. Plaintiff lacks standing to challenge CD 35.

Plaintiff claims that CD 35 is unlawful because it should have more Latino voters, but he has not alleged that he would or could benefit from such a district. Defendants challenged the Brooks Plaintiffs' standing based on a similar argument. *See* ECF 43 at 15. This Court's analysis of that argument demonstrates why Plaintiff's allegations do not establish standing.

This Court previously ruled that six plaintiffs had standing to challenge SD 10 because (1) they "allege[d] that they live in benchmark SD10," (2) they would have been satisfied with "a new version of SD 10 largely similar to the benchmark," and (3) SD 10's boundaries had previously been and could have remained "essentially unchanged." ECF 119 at 5–6. The Court dismissed Plaintiff Spell's claims, on the other hand, because she "[did] not live in benchmark SD 10 or the newly enacted SD 10," meaning the Court was "unable to discern how she ha[d] been injured by the redrawing of SD 10 or how a redrawing more in line with the benchmark would redress that injury." *Id.* at 6.

Those same considerations undermine Plaintiff's claim of standing here. First, Plaintiff does not allege that he lives in benchmark CD 35. True, Plaintiff alleges that he lives in the new version of CD 35, *see* Compl. ¶ 6, but that is not the same as living in the old version of CD 35. In fact, the

benchmark configuration of CD 35 exlcuded Plaintiff's house.[1] Second, the complaint does not indicate that Plaintiff would be satisfied with the benchmark configuration of CD 35. Third, the Legislature could not have left CD 35's boundaries "essentially unchanged." Based on the 2020 census, CD 35 was substantially overpopulated. The ideal size for a congressional district in Texas was 766,987 people,[2] but CD 35 had 832,396 people. The Legislature needed to reduce its population by more than 65,000 people because, under the one-person-one-vote principle, "[s]tates must draw congressional districts with populations as close to perfect equality as possible." *Evenwel v. Abbott*, 578 U.S. 54, 59 (2016). Changes to CD 35 could easily move Plaintiff into another district. Moving CD 35's boundary south by even a single block would cause it to exclude Plaintiff's house.[3]

For these reasons, it is pure speculation whether the alleged issues with CD 35 have injured Plaintiff and whether redrawing CD 35 would redress any such injury. Plaintiff has not plausibly alleged standing.

### C. Plaintiff lacks standing to sue in his official capacity.

From the caption and complaint, it is unclear if Plaintiff sues individually or in his official capacity as a state representative. *See* Compl. at 1 ("TREY MARTINEZ FISCHER, Texas State Representative (HD 116)"). To the extent he sues in his official capacity, Plaintiff lacks standing.

---

[1] Defendants have not included Plaintiff's address in this filing, but it is publicly available through official property-tax records. *See Bexar County Appraisal District*, https://bexar.trueautomation.com/clientdb/Property.aspx?cid=110&prop_id=384062 (last visisted Mar. 11, 2022). The boundaries of benchmark CD 35 can be seen on District Viewer at https://dvr.capitol.texas.gov/Congress/2/PLANC2100.

[2] *District Population Analysis with County Subtotals: Congressional Districts – PlanC2100*, TEX. LEGISLATURE ONLINE: DISTRICTVIEWER, at 1 of 46, https://data.capitol.texas.gov/dataset/d76b111c-63a8-4868-b937-2f689d61060b/resource/f3048060-7279-49a4-8614-e7dd416a5bea/download/planc2100_map_report_package.pdf.

[3] Again, Plaintiff's address is publicly available through official property-tax records, *see Bexar County Appraisal District*, https://bexar.trueautomation.com/clientdb/Property.aspx?cid=110&prop_id=384062 (last visisted Mar. 11, 2022), and the proximity of that address to the border of CD 35 can be seen on District Viewer at https://dvr.capitol.texas.gov/Congress/56/PLANC2193.

Legislators have standing to sue in their official capacity when their legislative role is impeded or their votes are not given full effect. *Compare Raines v. Byrd*, 521 U.S. 811, 823–24 (1997) ("[Plaintiffs] have not alleged that they voted for a specific bill, that there were sufficient votes to pass the bill, and that the bill was nonetheless deemed defeated. In the vote on the Act, their votes were given full effect."), *with Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 800, 803–04 (2015) (holding that the Arizona legislature had standing to challenge a voter-passed proposition stripping the legislature of its responsibility for redistricting). The crux of legislator standing is particularized injury to the legislator as a member of a legislative institution. *See Ariz. State Legislature*, 576 U.S. at 802 ("The Arizona Legislature, in contrast [to the *Raines* plaintiffs], is an institutional plaintiff asserting an institutional injury . . . .").

Conversely, officials lack legislator standing to bring claims of "wholly abstract and widely dispersed" generalized grievances that "necessarily damage[]" all other members of the legislature (and the public). *Gohmert v. Pence*, 510 F. Supp. 3d 435, 440 (E.D. Tex. 2021) (quoting *Raines*, 521 U.S. at 821, 829). The Supreme Court of Texas has drawn on the federal analysis for legislator standing and held likewise. In 2001, the Court denied legislator standing to a city council member challenging a mayoral order, explaining that "a [legislator] plaintiff [must] allege some injury distinct from that sustained by the public at large." *Brown v. Todd*, 53 S.W.3d 297, 302–04 (Tex. 2001) (relying on *Raines* in concluding that the plaintiff lacked legislator standing).

Here, Plaintiff has not alleged any interference with his legislative function. Rather, he alleges vote dilution—the exact same injury that the general voting public would face. Compl. ¶¶ 2, 15, 20, 41, 42. Thus, as Plaintiff lacks legislator standing, this suit should be dismissed to the extent that he sues in his official capacity.

## II.     Plaintiff Has Not Plausibly Alleged a Discriminatory-Effects Claim

Plaintiff alleges that Defendants violated the VRA by failing "to create new Hispanic opportunity districts" and by allegedly eliminating "an emerging Latino district like CD 35." Compl. ¶ 20; *see also id.* ¶ 19 (alleging statewide failure to create new Latino opportunity districts). This is not enough to plausibly allege a Section 2 discriminatory-effects violation.

Section 2 of the VRA prohibits a "standard, practice, or procedure" from being "imposed or applied . . . in a manner which results in a denial or abridgement of the right . . . to vote on account of race or color." 52. U.S.C. § 10301(a). To establish a violation, a plaintiff must show that:

> [T]he political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

*Id.* § 10301(b). A court can consider "[t]he extent to which members of a protected class have been elected to office in the State," but "nothing in [Section 2] establishes a right to have members of a protected class elected in numbers equal to their proportion in the population." *Id.* A plaintiff bringing such a suit must first establish three "necessary preconditions" (the *Gingles* test):

1. The minority group must be able to demonstrate it is sufficiently large and geographically compact to constitute a majority in a single-member district;

2. The minority group must be able to show that it is politically cohesive; and

3. The minority [group] must be able to demonstrate that the white majority votes sufficiently as a bloc to enable it—in the absence of special circumstances, such as the minority candidate running unopposed—usually to defeat the minority's preferred candidate.

*Thornburgh v. Gingles*, 478 U.S. 30, 50–51 (1986); *see Growe v. Emison*, 507 U.S. 25, 39–41 (1993) (explaining that "*Gingles* preconditions" are required in "a § 2 dilution challenge to a single-member districting scheme").

The *Gingles* preconditions are a "bright line test." *Valdespino v. Alamo Heights Indep. Sch. Dist.*, 168 F.3d 848, 8852 (5th Cir. 1999); *accord Benavidez v. Irving Indep. Sch. Dist.*, 690 F. Supp. 2d 451, 456 (N.D. Tex. 2010). "Failure to establish any one of those threshold requirements is fatal." *Harding v. Dallas Cnty.*, 948 F.3d 302, 308 (5th Cir. 2020) (quotation omitted). Meeting the *Gingles* test is necessary but not sufficient to prevail. Yet here, Plaintiff fails to allege facts that would meet any of the *Gingles* preconditions.[4]

### A. Plaintiff does not allege the first *Gingles* precondition.

Plaintiff has the burden of plausibly alleging that Latino voters are "sufficiently large and geographically compact to constitute a majority in a single-member district." *Gingles*, 478 U.S. at 50. Such an allegation is "needed to establish that the minority has the potential to elect a representative of its own choice in some single-member district"—here, CD 35. *Growe*, 507 U.S. at 40. But Plaintiff does not even assert, much less plausibly allege, that the Legislature could have drawn CD 35 to satisfy the first *Gingles* precondition.

The closest Plaintiff comes is his allegation that, "[b]y the end of the [last] decade, CD 35 was [a] 52.6% Hispanic Citizen Voting Age District." Compl. ¶ 13. But the fact that applying new population numbers to the old map produced a Latino-majority district does not help Plaintiff.[5] As explained above, the Legislature could not leave CD 35's boundaries the same. Under federal precedent addressing the one-person-one-vote principle, CD 35 required significant changes. *See supra* Part I.B.

---

[4] Plaintiff also alleges facts that are not germane to its discriminatory-effect and discriminatory-intent claims. *E.g.*, Compl. ¶¶ 1, 3, 9. This Court should disregard these allegations.

[5] *American Community Survey Special Tabulation Using Census and American Communicty Survey Data: Congressional Districts – PlanC235*, TEX. LEGISLATURE ONLINE: DISTRICTVIEWER, at 2, https://data.capitol.texas.gov/dataset/87d7ad5f-68f5-47dc-bfc2-8f25ff54e290/resource/5ef9cc07-ce12-421d-9983-9587dc758888/download/plancc235_red116_acs_ special_ tabulation_2015-2019.pdf (showing a Hisapnic CVAP of 52.9% using a map based on the 2010 census and CVAP estimates from the 2015-2019 American Community Surveys).

Plaintiff also alleges more generally that "[i]t is possible to create more Hispanic majority congressional districts," Compl. ¶ 21, but that says nothing about whether it is possible to make CD 35 a Hispanic-majority district. Even assuming that the Legislature could have created more Hispanic-majority districts somewhere in the State, that would not support any inference about whether CD 35 could have been made into such a district.

For these reasons, Plaintiff has not plausibly alleged the first *Gingles* precondition. His VRA claim therefore fails as a matter of law.

**B. Plaintiff's allegation of Latino-voter cohesion is nothing more than a formulaic recitation and is insufficient.**

Plaintiff fails to allege facts supporting the second *Gingles* precondition—that "the minority group . . . be able to show that it is politically cohesive." 478 U.S. at 51. First, Plaintiff's sole allegation as to the cohesiveness of Latino voters amounts to nothing more than a "formulaic recitation" of the second *Gingles* element. *Twombly*, 550 U.S. at 555; *see* Compl. ¶ 25 ("Latinos are politically cohesive in CD 35 and vote as a block [*sic*] for the Latino-preferred candidate."). Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Second, Plaintiff does not even try to allege facts to overcome the "obvious alternative explanation" for this alleged voting pattern: partisanship. *See Twombly*, 550 U.S. at 567. It is Plaintiff's burden to plausibly allege that "race," not "partisan affiliation," "best explains" any alleged bloc voting. *LULAC v. Clements*, 999 F.2d 831, 850 (5th Cir. 1993) (en banc). By neglecting to even mention partisanship as an explanation, much less address the extent to which it accounts for bloc-voting behavior, Plaintiff has failed to "nudge[] [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Plaintiff has therefore failed to plausibly allege a discriminatory-effects claim.

This Court previously found allegations of political cohesion sufficient when other plaintiffs' complaint "list[ed] the results of several recent elections" and discussed their significance. ECF 144 at 4. Yet here Plaintiff does not discuss any recent election results.

### C. Plaintiff's allegation of white-voter bloc voting is nothing more than a formulaic recitation and is insufficient.

Similarly, Plaintiff fails to allege facts supporting the third *Gingles* precondition—namely, "that the white majority votes sufficiently as a bloc to enable it . . . usually to defeat the minority's preferred candidate." *Gingles*, 478 U.S. at 50–51. Again, satisfying this requirement is a "bright-line test," *Valdespino*, 168 F.3d at 852, and Plaintiff's failure to satisfy it "is fatal." *Harding*, 948 F.3d at 308.

Plaintiff simply asserts—rather than alleges facts showing—that the third *Gingles* precondition is met. He does not cite election results. He does not even allege the percentage of voting-age citizens who are white. Doing so would have fatally undermined his claim. White voters are barely one-third of CD 35's voting-age citizens.[6] Rather, the sum total of his allegation of white bloc voting is two sentences: "In Texas and in CD 35, Anglos (White Non-Hispanics) vote sufficiently as a bloc to enable them, in the absence of special circumstances (e.g. single-member districts), to defeat the minority voters' preferred candidates of choice. In CD 35 and throughout Texas as a whole, Anglos vote as a politically cohesive bloc against minority-preferred candidates." Compl. ¶ 26.

That is not a factual allegation. It is a "[t]hreadbare recital[] of the elements of a cause of action," *Iqbal*, 556 U.S. at 678, and courts need not "accept as true a legal conclusion couched as a

---

[6] The Hispanic CVAP for CD 35 is 48.0%, and the white CVAP is 33.9%. *Plan C2193 Map Report Package*, TEX. LEGISLATURE ONLINE: DISTRICTVIEWER, at 17, https://data.capitol.texas.gov/dataset/b806b39a-4bab-4103-a66a-9c99bcaba490/resource/b916a06b-b7e3-42fe-997c-d06f97cd1724/download/planc2193_map_report_package.pdf. These data and other similar statistics are judicially noticeable. FED. R. EVID. 201(b)(2); *see Knox v. Butler*, 884 F.2d 849, 852 n.7 (5th Cir. 1989) (courts may take judicial notice of census data); *Hooks v. Dir., TDCJ-CID*, No. 2:04cv389, 2008 WL 3852757, at *5 (E.D. Tex. Aug. 14, 2008) (citing *Knox*); *Cactus Corner, LLC v. U.S. Dep't of Agric.*, 346 F. Supp. 2d 1075, 1099 (E.D. Cal. 2004), *aff'd*, 450 F.3d 428 (9th Cir. 2006) (census report "is judicially noticeable").

factual allegation," *Twombly*, 550 U.S. at 544. Indeed, it is a near word-for-word quotation from *Gingles* itself. *See* 478 U.S. at 50–51. For this reason too, Plaintiff has not adequately alleged a Section 2 discriminatory-effects claim.

## III.   Plaintiff Has Not Plausibly Alleged a Discriminatory-Intent Claim

### A.   Plaintiff has failed to allege facts showing discriminatory intent.

Plaintiff has not alleged facts sufficient to infer a discriminatory purpose to support his Section 2 or Equal Protection claims. In redistricting cases, "the good faith of a state legislature must be presumed." *Miller v. Johnson*, 515 U.S. 900, 915 (1995). It is "plaintiffs' burden to overcome the presumption of legislative good faith and show that the [Texas] Legislature acted with invidious intent." *Abbott v. Perez*, 138 S. Ct. 2305, 2325 (2018). The required intent is not mere "volition" or "awareness of consequences." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979). Rather, the Legislature must have passed a law "'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.*

Plaintiff proffers naked assertions that the Texas Legislature acted with discriminatory intent. Compl. ¶¶ 20, 22, 43. These assertions "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim." *Iqbal*, 556 U.S. at 681. "As such, the allegations are conclusory and not entitled to be assumed true," even at the pleading stage. *Id.*

The limited factual allegations that Plaintiff does make are insufficient. First, Plaintiff points to unrelated legislation to infer that the Texas Legislature acted with discriminatory intent in passing this map. Compl. ¶¶ 27–33. But the Supreme Court recently reiterated that "past discrimination cannot, in the manner of original sin, condemn governmental action that is not itself unlawful." *Perez*, 138 S. Ct. at 2324 (quoting *City of Mobile v. Bolden*, 446 U.S. 55, 74 (1980) (plurality op.)). Instead, the "ultimate question remains whether a discriminatory intent has been proven *in a given case.*" *Mobile*, 446

U.S. at 74 (emphasis added). Even if Plaintiffs could prove each of these allegations, it would not support an inference of discriminatory intent regarding the congressional map.

Second, Plaintiff decries the procedure surrounding adoption of the congressional map. He complains that the process was too "rushed," Compl. ¶ 44, that no "new Hispanic opportunity districts" were created, *id.* ¶ 20, and that the Legislature rejected "ameliorative amendments," *id.* ¶ 22. Although "[d]epartures from the normal procedural sequence . . . might afford evidence that improper purposes are playing a role" in government decision-making, *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977), they raise no inference of "invidious discrimination" when there is an "obvious alternative explanation." *Iqbal*, 556 U.S. at 682 (quoting *Twombly*, 550 U.S. at 567). And Plaintiff alleges nothing that contravenes the "obvious alternative explanation" of partisanship. *Twombly*, 550 U.S. at 567; *LULAC v. Clements*, 999 F.2d at 850.

Plaintiff also ignores a ready and obvious explanation that the complaint itself provides for the complained-of exigencies: the federal census was delayed due to the pandemic, so the results were not delivered until more than ten weeks after the Texas Legislature's 87th Regular Session ended. Compl. ¶¶ 10–11. That was more than four months after the statutory deadline of April 1. *See* 13 U.S.C. § 141(a), (c). As a result, the Texas Legislature had to redistrict during a special session, which is constitutionally limited to thirty days. *See* TEX. CONST. art. III, § 40. With a compressed schedule due to pandemic-related delays, an allegedly rushed process would hardly be surprising, much less give a reason to infer intentional invidious discrimination. In *Abbott v. Perez*, the Supreme Court could "not see how the brevity of the legislative process can give rise to an inference of bad faith." 138 S. Ct. at 2328–29. The evidence there was insufficient; the allegations here are even weaker.

### B. Plaintiff's discriminatory-intent claim fails due to his failure to sufficiently allege discriminatory effects.

Even if Plaintiff had plausibly alleged discriminatory intent, that would not be enough. This follows from "a familiar principle of constitutional law that this Court will not strike down an

11

otherwise constitutional statute on the basis of an alleged illicit legislative motive." *United States v. O'Brien*, 391 U.S. 367, 383 (1968). "[N]o case in [the Supreme] Court has held that a legislative act may violate equal protection solely because of the motivations of the men who voted for it." *Palmer v. Thompson*, 403 U.S. 217, 224 (1971). Courts routinely require discriminatory effect in intentional-discrimination redistricting cases. *See, e.g.*, *Shaw v. Reno*, 509 U.S. 630, 649 (1993) ("We have . . . required plaintiffs to demonstrate that the challenged practice has the purpose and effect of diluting a racial group's voting strength."); *Rodriguez v. Harris Cnty.*, 964 F. Supp. 2d 686, 800 (S.D. Tex. 2013) ("purpose and operative effect"); *LULAC v. N.E. Indep. Sch. Dist.*, 903 F. Supp. 1071, 1093 (W.D. Tex. 1995) ("intentional discrimination" and "a resultant discriminatory effect").

The same is true under Section 2. "[T]he statute proscribes intentional discrimination only if it has a discriminatory effect, but proscribes practices with discriminatory effect whether or not intentional." *Chisom v. Roemer*, 501 U.S. 380, 406 (1991) (Scalia, J., dissenting); *accord Turner v. Arkansas*, 784 F. Supp. 553, 565 (E.D. Ark. 1991), *aff'd*, 504 U.S. 952 (1992).

As explained *supra* in Part II, Plaintiff has not plausibly alleged a discriminatory effect. Because Plaintiff has not plausibly alleged that CD 35 could have been a Hispanic-majority district (or otherwise more favorable to Plaintiff), he has not established any real-world effect resulting from the alleged discriminatory intent.

## IV. Section 2 Does Not Confer a Private Right of Action, and the Court Should Certify the Question If Prefers Not to Revisit the Issue

Plaintiff's claims should be dismissed because Section 2 does not create a private right of action. As another district court recently recognized, under *Alexander v. Sandoval*, there is no private right of action under Section 2 because Congress did not create one. *See Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*, No. 4:21-v-01239-LPR, 2022 WL 496908, at *9–17 (E.D. Ark. Feb. 17, 2022) (citing 532 U.S. 275 (2001)). Defendants recognize that the Court has already decided this issue, *see*

*generally* ECF 58, and do not wish to burden the Court with duplicative briefing. Defendants incorporate by reference their previous briefing. *See* ECF 12 at 16–19.

**CONCLUSION**

Defendants respectfully ask the Court to dismiss Plaintiff's claims.

Date: March 14, 2022                          Respectfully submitted.

KEN PAXTON                                     /s/ Patrick K. Sweeten
Attorney General of Texas                      PATRICK K. SWEETEN
                                               Deputy Attorney General for Special Litigation
BRENT WEBSTER                                  Tex. State Bar No. 00798537
First Assistant Attorney General

                                               WILLIAM T. THOMPSON
                                               Deputy Chief, Special Litigation Unit
                                               Tex. State Bar No. 24088531

                                               ARI M. HERBERT
                                               Assistant Attorney General, Special Litigation Unit
                                               Tex. State Bar No. 24126093

                                               OFFICE OF THE ATTORNEY GENERAL
                                               P.O. Box 12548 (MC-009)
                                               Austin, Texas 78711-2548
                                               Tel.: (512) 463-2100
                                               Fax: (512) 457-4410
                                               patrick.sweeten@oag.texas.gov
                                               will.thompson@oag.texas.gov

                                               **COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on March 14, 2022, and that all counsel of record were served by CM/ECF.

                                               /s/ Patrick K. Sweeten
                                               PATRICK K. SWEETEN