IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS (LULAC), et al., <br><br> Plaintiffs, <br><br> v. <br><br> GREG ABBOTT, et al., <br><br> Defendants. | Civil Action No. 3:21-cv-259 (DCG-JES-JVB) (consolidated cases) |

## UNITED STATES' MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM THE STATE OF TEXAS

The State of Texas takes the position in this litigation that it lacks independent possession, custody, or control of any documents or ESI. However, the State has demonstrated practical control over such materials in other voting rights litigation and has legal control over documents held by its counsel. Moreover, the definition of a State for purposes of litigation includes officials and agencies specifically involved in the matter at issue. Therefore, the United States respectfully moves for an order compelling the State of Texas to produce documents and ESI responsive to the United States' First Request for Production.

### I. BACKGROUND

In this action, the United States alleges that Defendant the State of Texas violated Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, by enacting and implementing the 2021 Congressional Redistricting Plan and 2021 State House Redistricting Plan. U.S. Compl. ¶¶ 162-167, *United States v. Texas*, No. 3:21-cv-299 (W.D. Tex. Dec. 6, 2021), ECF No. 1. The United States has served requests for production on the State to obtain documents and ESI relevant to

the United States' claims and the State's defenses, including the allegation that Texas enacted the 2021 Congressional Plan, at least in part, for a racially discriminatory purpose. *See* U.S. 1st Request for Production (Jan. 12, 2022) (Ex. 1). In responding to these requests, Texas has limited its search to custodians within the Office of the Texas Secretary of State, the other defendant named by the United States. Email from Jack DiSorbo to Jacki Anderson (Mar. 18, 2022) (Ex. 2). The State specifically rejected a request to search documents in the possession of the Office of the Texas Attorney General ("OAG") or the Office of the Governor ("OOG"), *see id.*, and ultimately took the position that it would not search for documents held by custodians other than the Office of the Secretary of State.

In effect, Texas has taken the position that as a party to this suit, it lacks possession, custody, or control of any documents or ESI. But it is clear that the State can produce materials not held by the Secretary of State; counsel for Texas has advised the United States that "of our own accord, we also intend to produce a number of documents relating to the legislative history of the redistricting bills, such as hearing transcripts." Email from Jack DiSorbo to Daniel Freeman (March 29, 2022) (Ex. 3). Moreover, in another ongoing Voting Rights Act matter in which only the State of Texas and the Secretary of State are named defendants, the State has produced excerpts of databases maintained by the Texas Department of Public Safety as party discovery. *See* Stipulated Protective Order, *La Unión del Pueblo Entero v. Abbott*, No. 5:21-cv-844 (W.D. Tex. Dec. 23, 2022), ECF No. 162 (Ex. 4). And in past Voting Rights Act litigation brought by the State alone against the United States and brought by the United States against the State and agency officials, Texas demonstrated possession, custody, or control of documents held within OOG, OAG, relevant state agencies, and the Texas Legislative Council. *See* Privilege Log Excerpts, *Texas v. Holder*, No. 1:12-cv-128 (D.D.C.) (Ex. 5); Initial Disclosures at

33, *Veasey v. Perry*, No. 2:13-cv-193 (S.D. Tex.) (Ex. 6); Privilege Log Excerpt, *Veasey v. Perry*, No. 2:13-cv-193 (S.D. Tex.) (Ex. 7).  The State has provided no substantive explanation for its new purported inability to obtain documents from these custodians in relation to this case.

## II.   LEGAL STANDARD

"A party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if the other party "fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34."  Fed. R. Civ. P. 37(a)(3)(B)(iv).  Rule 34 permits parties to serve upon each other "a request within the scope of Rule 26(b)" to produce certain items "in the responding party's possession, custody, or control."  Fed. R. Civ. P. 34(a)(1).  In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," which includes consideration of "the importance of the issues at stake in the action," "the parties' relative access to relevant information," and "the importance of the discovery in resolving the issues," among other factors.  Fed. R. Civ. P. 26(b)(1).

## III.   DOCUMENTS IN THE POSSESSION OF THE STATE ARE LIKELY PROBATIVE OF DISCRIMINATORY INTENT AND RESULTS.

It is by now axiomatic that "[d]etermining whether invidious discriminatory purpose was a motivating factor [in a decision] demands a sensitive inquiry into such circumstantial and direct evidence as may be available."  *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977).[1]  Similarly, the totality of the circumstances inquiry under the Section 2 results

---

[1] "Legislation is frequently multipurposed: the removal of even a 'subordinate' purpose may shift altogether the consensus of legislative judgment supporting the statute." *McGinnis v. Royster*, 410 U.S. 263, 276-77 (1973).  It is for exactly that reason that in cases under the Voting Rights Act, courts have recognized that nonpublic communications between key supporters and top aides may contain evidence that is highly probative of whether the legislation's passage was motivated, even in part, by discriminatory intent.  *See Reno v. Bossier Parish*, 520 U.S. 471, 488

test requires "a searching practical evaluation of the past and present reality" in a jurisdiction, *Thornburg v. Gingles*, 478 U.S. 30, 79 (1986) (quoting S. Rep. No. 97-417, at 30 (1982)), and polarized voting and the extent of minority electoral success are "the two most important factors considered in [this] inquiry," *Clark v. Calhoun County*, 88 F.3d 1393, 1397 (5th Cir. 1996) (citing *Gingles*, 478 U.S. at 48 n.15).  There is little question that OOG and OAG helped shape the redistricting plans at issue.  *See, e.g.*, Harvey Kronberg, *State Supreme Court Hears Arguments on Whether Texas House Map Violates the State Constitution*, Quorum Report, Mar. 23, 2022 (Ex. 8) (describing personal lobbying by the Governor's chief of staff in favor of a controversial amendment); Tr. 75:6-11 (Jan. 27, 2022 a.m.) (Sen. Huffman) (Ex. 9) (describing interaction between OAG and Senator Huffman).  Furthermore, OAG conducts technical analysis of racially polarized voting, *see* Tr. 79:7-81:7 (Jan. 27, 2022 p.m.) (Dr. Alford) (Ex. 10), which it has selectively disclosed to legislators during past redistricting cycles, *see, e.g.*, Findings of Fact at 29-30, 41, 57, 71, *Perez v. Abbott*, No. 5:11-cv-360 (W.D. Tex. Apr. 20, 2017), ECF No. 1364.  *See also* Tr. 115:13-116:14 (Jan. 27, 2022 a.m.) (Sen. Huffman) ("We were more than willing to run a VRA analysis on that, which, in fact, we have done with everything submitted.").

### IV.  TEXAS HAS POSSESSION, CUSTODY, OR CONTROL OF RESPONSIVE DOCUMENTS AND ESI HELD BY OAG AND OOG.

The State's possession, custody, or control of documents and ESI within OAG and OOG rests on multiple independently sufficient grounds.  This Court may order the production based on the role of OAG as counsel for the State in this case, the State's demonstrated control of such

---

(1997); *Garza v. County of Los Angeles*, 756 F. Supp. 1298, 1314-18 (C.D. Cal.), *aff'd*, 918 F.2d 763, 768 (9th Cir. 1990); *United States v. Irvin*, 127 F.R.D. 169, 173 (C.D. Cal. 1989).  Reliance on public statements alone undercuts the inquiry because it is rare for "officials acting in their official capacities [to] announce on the record that they are pursuing a particular course of action because of their desire to discriminate against a racial minority."  *Smith v. Town of Clarkton*, 682 F.2d 1055, 1064 (4th Cir. 1982).

4

materials, and incorporation of OAG and OOG in the definition of "the State of Texas" for purposes of this litigation.

The Office of the Texas Attorney General is obligated to search its own files as counsel for the State in this case and produce responsive documents. The requirement to disclose relevant documents such as those concerning "the legislative history of the redistricting bills" does not turn on OAG's willingness to produce particular documents "of [its] own accord." *See* Mar. 18 Email, *supra*. "It is well established that documents in the possession of a party's agent, such as an attorney or accountant, are deemed to be in the party's possession because the party retains control over the documents." *Ntakirutimana v. CHS/Cmty. Health Sys., Inc.*, No. 5:09-cv-114, 2011 WL 13135608, at *1 (S.D. Tex. June 28, 2011) (quoting *Lans v. Gateway 2000, Inc.*, 110 F. Supp. 2d 1, 5 (D.D.C. 2000)); *see also, e.g.*, *Bhasker v. Kemper Cas. Ins. Co.*, 361 F. Supp. 3d 1045, 1119 (D.N.M. 2019) ("Because a client has the right 'to obtain copies of documents gathered or created by its attorneys pursuant to their representation of that client, such documents are clearly within the client's control.'" (quoting *ASPCA v. Ringling Bros. and Barnum & Bailey Circus*, 233 F.R.D. 209, 212 (D.D.C. 2006))). Thus, the State of Texas has effective control over numerous documents concerning redistricting in the possession of OAG.[2]

The State of Texas has also demonstrated a practical ability to obtain documents within OOG and OAG, among other agencies, in Voting Rights Act litigation. "Rule 34's definition of 'possession, custody, or control,' includes more than actual possession or control of the materials; it also contemplates a party's legal right or practical ability to obtain the materials from a nonparty to the action." *Mir v. L-3 Commc'ns Integrated Sys.*, 319 F.R.D. 220, 230 (N.D.

---

[2] Although the Texas Attorney General may represent offices or officials in particular matters, he ultimately represents the State. *See* Tex. Const. Art. IV, § 22; Tex. Gov. Code § 402.021.

Tex. 2016). And in *La Unión del Pueblo Entero v. Abbott*, *Texas v. Holder*, and *Veasey v. Perry*, the State of Texas—a named defendant in *La Unión del Pueblo Entero* and *Veasey* and the sole plaintiff in *Texas v. Holder*—produced numerous documents held by officials and agencies not separately named as parties. *See* Part I, *supra*; *see also Veasey v. Perry*, No. 2:13-cv-193, 2014 WL 1340077, at *1 (S.D. Tex. Apr. 3, 2014) (directing OAG to produce documents gathered from other state officials during prior representation of the State); Tr. at 3:13-25, *Texas v. Holder*, No. 1:12-cv-128 (Apr. 16, 2012) (Ex. 11) ("We have collected and produced documents from agencies."). Texas cannot meaningfully distinguish these cases or reasonably claim to have lost the practical control it once had over documents held by these custodians.

Finally, this Court could reasonably determine that the State must produce documents within OAG and OOG because those offices are part of "the State of Texas" for purposes of this litigation. The State has previously conceded that in statewide litigation under the Voting Rights Act, OOG "can be considered part of the State." Tr. 4:4:1-13, *Texas v. Holder*, No. 1:12-cv-128 (Apr. 16, 2012). The broader legal question of what constitutes a State for purposes of this litigation is complex, but what is clear is that executive agencies closely involved in relevant decision-making are subject to party discovery. *See United States v. AT&T Co.*, 461 F. Supp. 1314, 1333-34 (D.D.C. 1978). In effect, discovery is available if documents sought are "relevant to the intent and actions of government employees and agencies" impacting the underlying claim. *Tri-State Hosp. Supply Corp. v. United States*, 226 F.R.D. 118, 127-29 (D.D.C. 2005); *see also, e.g.*, *North Dakota v. United States*, 1:19-cv-150, 2021 WL 6278456, at *4 (D.N.D. Mar. 24, 2021) (concluding that "the United States' obligation to respond to discovery requests is not limited to an agency named in the action"); *United States v. UBS Securities LLC*, 1:18-CV-6369, 2020 WL 7062789, at *6 (E.D.N.Y. Nov. 30, 2020) ("For purposes of party discovery . . .

6

the definition of 'United States' also includes agencies that inform the policies, rules, and regulations that the executive branch sets."). Thus, the question turns on whether OAG and OOG possess relevant information. They almost certainly do. *See* Part I, *supra*.

Fundamentally, if the State's position were correct, had the United States not named Secretary of State John Scott as a co-defendant, Texas need not have produced any documents at all in discovery. This argument is untenable and undermines Congressional authorization for the United States to sue States for violations of the Voting Rights Act. *See* 52 U.S.C. § 10308(d); *see also Louisiana v. United States*, 380 U.S. 145, 151 (1965); *United States v. Mississippi*, 380 U.S. 128, 136 (1965); *cf. United States v. Texas*, 143 U.S. 621, 646 (1892) (recognizing that consent to suit by the United States "was given by Texas when admitted into the Union"). This Court should require that Texas produce documents in its possession, custody, or control.

### V.     CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court issue an order compelling the State of Texas to conduct a reasonable search for responsive documents and ESI held by the Office of the Texas Attorney General, the Office of the Governor, and any other agency known to the State to possess such documents. A proposed order is attached hereto.

Dated: April 1, 2022

        PAMELA S. KARLAN
        Principal Deputy Assistant Attorney General
        Civil Rights Division

        */s/ Holly F.B. Berlin*
        T. CHRISTIAN HERREN, JR.
        TIMOTHY F. MELLETT
        DANIEL J. FREEMAN
        JANIE ALLISON (JAYE) SITTON
        MICHELLE RUPP
        JACKI L. ANDERSON
        JASMIN LOTT
        HOLLY F.B. BERLIN
        Attorneys, Voting Section
        Civil Rights Division
        U.S. Department of Justice
        950 Pennsylvania Avenue NW
        Washington, DC 20530

**CERTIFICATE OF CONFERRAL**

      I hereby certify that on March 18, 2022, counsel for the United States met and conferred with counsel for the State of Texas concerning the subject of this motion.  During and after this conference, the State of Texas did not agree to conduct a search for responsive documents held by any custodian other than the Secretary of State.

      */s/ Holly F.B. Berlin*
      Holly F.B. Berlin
      Voting Section
      Civil Rights Division
      U.S. Department of Justice
      holly.berlin@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 1, 2022, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system, which will send notification of this filing to counsel of record.

*/s/ Holly F.B. Berlin*
Holly F.B. Berlin
Voting Section
Civil Rights Division
U.S. Department of Justice
holly.berlin@usdoj.gov