**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, | § § § | |
| *Plaintiffs,* | § § | |
| | § § | Case No. 3:21-cv-00259 [Lead Case] |
| V. | § § | |
| GREG ABBOTT, *et al.*, | § § | |
| *Defendants.* | § | |
| UNITED STATES OF AMERICA, | § § | |
| *Plaintiff,* | § § | |
| | § § | Case No. 3:21-cv-00299 [Consolidated Case] |
| V. | § § | |
| STATE OF TEXAS, *et al.*, | § § | |
| *Defendants.* | § | |

**DEFENDANTS AND SUBPOENA RECIPIENTS'
MOTION TO QUASH OR, IN THE ALTERNATIVE,
MOTION FOR PROTECTIVE ORDER**

T<small>ABLE OF</small> C<small>ONTENTS</small>

Table of Contents ...................................................................................................................... i

Introduction ............................................................................................................................. 1

Background .............................................................................................................................. 2

Argument ................................................................................................................................. 5

    I.   State Law Makes Individual Legislators, not TLC, the Custodians of Legislators' Documents ............................................................................................................... 6

        A.   Directing a Subpoena to TLC for Legislators' and Other State Officials' Documents Is Improper ........................................................................................ 6

        B.   The Subpoena Should be Quashed in its Entirety Unless the United States Can Articulate a Basis for it Other than Seeking Individual Legislators' and Other State Officials' Documents ............................................................................. 9

    II.   In the Alternative, the Subpoena Should be Modified to Exclude Documents Falling Squarely Within the Legislative and Attorney-Client Privileges ............................ 10

        A.   Applicable Privileges Apply to Communications Accessible by TLC ............................ 11

        B.   State Officials Have Invoked Legislative Privilege, and Only Those Individual Legislators, the Lieutenant Governor, and Other Officials May Waive Applicable Privileges ................................................................................................. 15

Conclusion ............................................................................................................................. 19

Certificate of Conference ....................................................................................................... 20

Certificate of Service ............................................................................................................. 20

## INTRODUCTION

Legislative privilege has existed for centuries "to protect the integrity of the legislative process by insuring the independence of individual legislators." *United States v. Brewster*, 408 U.S. 501, 507 (1972); *see United States v. Johnson*, 383 U.S. 169, 178 (1966). In the United States, the privilege has protected some state governments for longer than the Constitution itself. *See Tenney v. Brandhove*, 341 U.S. 367, 373–75 (1951). Texas is no exception; legislative privilege has protected Texas legislators for nearly 150 years. *See* Tex. Const. art. III, § 21; Tex. Gov't Code § 306.008(a).

But here, the United States is deploying a third-party subpoena in an attempt to circumvent those guarantees. In its redistricting challenge to the reapportioned Texas congressional and house districts, the United States has issued subpoenas for any and all redistricting-related documents from more than two dozen state officials including individual legislators, staff, and the lieutenant governor. The subpoenas cover "[a]ll documents relating to any redistricting proposal," including "draft" legislation or "criteria, requirements, priorities, or guidelines used," "[a]ll documents relating to the redistricting process," "[a]ll documents . . . exchanged" between various government officials, and more. *See generally* Ex. A (subpoenas issued to twenty-six legislators and staff). Because the subpoenas seek materials and communications falling squarely within the protections of legislative privilege and attorney-client privilege, the individual subpoena recipients have objected to the sweeping subpoenas on those grounds. *See generally* Ex. B (objections and responses to subpoenas *duces tecum* to the twenty-six subpoena recipients).[1] In an attempted end-run around those objections, the United States has issued a nearly identical third-party subpoena seeking the same redistricting-related documents from the Texas Legislative Council, a state legislative agency. *See* Ex. C (TLC subpoena). For its part, TLC has also served vigorous objections based on, among other things, overbreadth and various privileges.

---

[1]   Defendants have conducted a robust review and production of documents responsive to the United States' subpoenas, despite their being substantially overbroad and calling for privileged information. To date, Defendants have produced nearly 18,000 pages of documents in response to the twenty-six individual subpoenas.

That end-run around the individual legislators' and state officials' privilege objections is improper. It contravenes basic notions of *who* may be subpoenaed and *what* can be subpoenaed when legislators' documents are at the heart of such demands. Accordingly, Defendants, alongside the already-subpoenaed individual state officials[2] hereby seek an order quashing the subpoena or a protective order limiting the scope of the TLC subpoena. The United States can demand that TLC turn over only that which is TLC's to turn over, and even then, only that which is not privileged.

## BACKGROUND

During the second half of 2021, the Texas Legislature reapportioned Texas's congressional, senate, house, and State Board of Education districts. Soon after, the United States, along with several plaintiffs' groups, brought lawsuits challenging the new districts. The complaints allege that the districts violate Section 2 of the Voting Rights Act, among other claims. The suits have been consolidated and discovery has begun while Defendants' motion to dismiss the United States' complaint is pending. *See* Mot. to Dismiss, ECF 111.[3]

The United States has since taken the lead in discovery, issuing document subpoenas for more than two dozen Texas government officials, most of whom are individual legislators. The subpoenas seek any and all documents relating to redistricting from the Lieutenant Governor, leaders of the

---

[2]   The individual state officials already subpoenaed include Lieutenant Governor Dan Patrick; Speaker of the Texas House Dade Phelan; Senate Special Committee on Redistricting Chairwoman Joan Huffman, Texas House Redistricting Committee Chairman Todd Hunter; Texas House Representatives Tom Craddick, Philip Cortez, John Lujan, Geanie Morrison, Andrew Murr, Steve Allison, Jacey Jetton, Brooks Landgraf, Ken King, J.M. Lozano, and Ryan Guillen; and eleven staff members to the elected lieutenant governor, senators, and representatives. All of the individual subpoena recipients are currently represented by the Texas Office of the Attorney General, also representing Defendants.

[3]   In the interim, the Supreme Court has indicated that it will be revisiting the legal standard for adjudicating such Voting Rights Act challenges. *See Merrill v. Milligan*, 142 S. Ct. 879 (2022). The Court has stayed district court orders enjoining Alabama's congressional districts. *Id.* In deciding the Alabama appeal next term, the Court will clarify the "notoriously unclear and confusing" Voting Rights Act obligations in redistricting and "resolve the wide range of uncertainties arising under" the existing test of *Thornburg v. Gingles*, 478 U.S. 30 (1986). *Id.* at 879 (Kavanaugh, J., concurring in grant of stay); *id.* (Roberts, C.J., dissenting from grant of stay). The Supreme Court's scheduling of the Alabama cases raises serious questions about the propriety of moving ahead with any discovery pending the Supreme Court's clarification of the very rules governing the claims for which discovery is sought. At the very least, it counsels against the duplicative discovery the United States seeks here.

senate and house redistricting committees, and eleven other individual state legislators and their staff

members. An exemplar subpoena is included as Exhibit A. All such subpoenas ask for any conceivable

state house or congressional redistricting documents, covering:

1. "All documents relating to any redistricting proposal," including any "redistricting proposal drawn, discussed or considered," including "the origination(s) or source(s) or any such redistricting proposal," "the impetus, rationale, background, or motivation for any such redistricting proposal," "all drafts in the development or revision of any such redistricting proposals," "pairing of any incumbents in any such redistricting proposal," "any redistricting amendment" to such proposals, "Negotiations regarding any redistricting proposal," and "all calculations, reports, audits, estimates, projections, or other analyses, from any source, relating to the effect or impact, of any kind…including on Texas minority voters . . . .";

2. "All documents relating to the redistricting process . . . .";

3. "All documents relating to voting patterns" regarding race, including "any calculations, reports, audits, estimates, projections, or other analyses";

4. "All documents relating to whether . . . any . . . redistricting proposal drawn, discussed, or considered . . . complies with the Voting Rights Act, including but not limited to any calculations, reports, audits estimates, projections, or other analyses";

5. "All documents relating to redistricting . . . exchanged between, among, with, or within" various government offices, committees, the Texas Legislative Council, any elected representatives or candidates, national or local parties, consultants, law firms, or other organizations;

6. "All other documents relating to redistricting . . . including but not limited to redistricting criteria," "correspondence," "notes," "studies," and so forth;

7. "All documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center . . . .";

8. "All documents relating to payment for services; agreements of representation, consultation, employment, services, confidentiality, or common interest" or "any other type of contract related to redistricting"; and

9. "All non-privileged documents relating to the instant lawsuit or preceding investigation of Texas by the U.S. Department of Justice."

Ex. A at 6–9.

In response to the subpoenas, all individual subpoena recipients have asserted various

defenses. *See generally* Ex. B. Those defenses include that documents sought are subject to legislative

privilege or attorney-client privilege, or are otherwise protected attorney work product. *E.g.*, *id.* at 5–12 (objections and responses of Lieutenant Governor Patrick). All individual subpoena recipients have made clear that they will not be producing such privileged documents. For non-privileged documents that are not otherwise subject to other objections, the individual subpoena recipients have begun a rolling production of responsive documents. These include submissions to the committee from the public, public meeting notices or press releases, and other documents existing in the publicly available legislative record leading to the passage of the challenged legislation.

Instead of conferring about the productions from the individual legislators, the United States has subpoenaed the Texas Legislative Council for the same documents. TLC is a service agency of the Texas legislature. TLC assists legislators and staff in drafting and analyzing proposed legislation and provides computer support, among other services. Tex. Gov't Code § 323.001, *et seq*. The TLC subpoena is nearly identical to the subpoenas issued to individual members. It seeks all of the above categories of documents except for the last catch-all category for "documents relating to the instant lawsuit or preceding [DOJ] investigation." *Compare* Ex. C at 9, *with* Ex. A. And it adds the following catch-all category, which removes all doubt about that the subpoena seeks documents belonging to individual legislators or other officers from TLC:

> All other documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives in the possession, custody, or control of the Texas Legislative Council, including documents located on any email server or on any shared or network drive, such as the "X-Drive" space assigned to individual legislators or their staff and the "Y-Drive" space shared between legislators or their staff. This request includes emails, memoranda, correspondence, calendar invitations, meeting minutes, agendas, attendance sheets, call logs, notes, presentations, studies, advocacy, letters, public statements, or other communications.

Ex. C at 9.

Counsel for the Defendants and all individual subpoena recipients have formally met and conferred with the United States on the scope of the TLC subpoena. The United States has taken the position that it can seek any individual legislators' and other officials' documents from TLC,

disregarding unequivocal state law that such documents are not TLC's to give. It has also taken the position that legislative privilege is inapplicable to any such documents unless and until individual legislators affirmatively invoke legislative privilege in this Court. But that disregards the objections that individual subpoena recipients have already served on the United States and other applicable state law and federal procedure. Moreover, to the extent the United States seeks documents from legislators and staff who have not received subpoenas, trying to get those documents from TLC, without any notice to the affected individuals and holders of the privilege, circumvents basic notions of fair notice.

**ARGUMENT**

Movants now seek an order quashing the TLC subpoena or, alternatively, a protective order from this Court that prohibits the United States from seeking documents from TLC that must instead be obtained from individual state officials or documents that are otherwise privileged. *See Kilmon v. Saulsbury Indus., Inc.*, No. 17-cv-99, 2018 WL 5800759, at *4 (W.D. Tex. Feb. 13, 2018) ("motion for a protective order may be made by any party and such party may seek a Rule 26(c) protective order 'if it believes its own interest is jeopardized by discovery sought from a third person'" (quoting Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2035 (3d ed. 2011)); *see, e.g., Citizens Union of City of New York v. Att'y Gen. of New York*, 269 F. Supp. 3d 124, 172 (S.D.N.Y. 2017) (granting Governor and intervening State Assembly and Senate's motion to quash subpoena seeking privileged documents); *Holdquin v. Celebrity Cruises, Inc.*, No. 1:10-cv-20215, 2010 WL 6698221, at *2 (S.D. Fla. July 22, 2010) (granting a party's motion for a protective order to stop third-party discovery of privileged materials); *Gulf Coast Energy LLC v. Bank of Am. Corp.*, No. 4:13-cv-2985, 2014 WL 12616133, at *2 (S.D. Tex. Dec. 2, 2014) (modifying a third-party subpoena document-production requests based on a party's claim of privilege). At best, the TLC subpoena is duplicative of individual subpoenas already served on individual legislators and other state officials; at worst, it is a failed and egregious end-run around legislative privilege.

5

## I.    State Law Makes Individual Legislators, not TLC, the Custodians of Legislators' Documents

The United States demands "[a]ll documents relating to any redistricting proposal," "[a]ll documents relating to the redistricting process," and more from TLC. Ex. C at 6–7. The subpoena specifically states that TLC is to produce any such documents "located on any email server or on any shared network drive," including those on network spaces "*assigned to individual legislators* or their staff" or "*shared between legislators* and their staff." *Id.* at 9 (emphasis added). The United States appears to believe that TLC must produce these documents because it necessarily has access to them as the legislative service agency providing computer support to the legislature. That tack is contrary to state law and federal procedure. Unsurprisingly, these demands of TLC raise a host of privilege issues that ought to instead be resolved directly between the United States and individual legislators or other state officials. The subpoena should be quashed and the documents sought from the proper document custodians themselves (as the United States has already done for more than two dozen individual subpoena recipients).

### A.    Directing a Subpoena to TLC for Legislators' and Other State Officials' Documents Is Improper

Rule 45 requires production of materials that are in a third-party subpoena recipient's "possession, custody or control." Fed. R. Civ. P. 45(a)(1)(A)(iii); *accord* Fed. R. Civ. P. 34. "Control" entails determining who has the "legal right to obtain documents requested . . . ." *Provost v. Kia Motors Am.*, No. 3:05-cv-36, 2006 WL 8432737, at *1 (M.D. La. Feb. 9, 2006) (*quoting Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984)); *McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 78 (D.D.C. 1999) ("[C]ontrol generally addresses the legal right, authority, or ability of the party whom/which the [discovery] request is directed to exercise lawful possession over the premises or documents at issue."). A discovery seeker cannot subpoena documents from an individual who is not properly the custodian of documents. *See, e.g., St. Pierre v. Dearborn Nat'l Life Ins. Co.*, No. 3:19-cv-223, 2020 WL 6122555, at

*4 (W.D. Tex. Apr. 14, 2020) (rejecting the notion that "hav[ing] a close working relationship" or "a mere contractual relationship" is sufficient) (Guaderrama, J.); *Liberty Mut. Ins. v. Ravannack*, No. 2:00-cv-1209, 2002 WL 1770936, at *3 (E.D. La. Aug. 1, 2002); *Gen. Env't Sci. Corp. v. Horsfall*, 25 F.3d 1048, 1994 WL 228256, at *10 n.15 (6th Cir. May 25, 1994) (per curiam) (observing that "access to the documents" is not the same as being able to "command their production"); *Estate of Young v. Holmes*, 134 F.R.D. 291, 294 (D. Nev. 1991) ("The party must be able to command the release of the documents . . ." which is "usually the result of statute, affiliation or employment.").

In this case, state law directly answers the question of who is the custodian of the subpoenaed documents. It is not TLC. Rather, an individual member of the legislature, the lieutenant governor, and house and senate officers (such as the parliamentarian) remain the custodians of their documents, however they are stored. That is so even if such documents are accessible to TLC because they are transmitted, stored, or maintained on legislative computer systems:

> A member of the legislature, the lieutenant governor, an officer of the house or senate, or a legislative agency, office, or committee that uses a system made available by the [Texas Legislative C]ouncil to transmit, store, or maintain records:
>
> (1)  possesses, maintains, or controls the records for purposes of litigation; and
>
> (2)  is the custodian of the records for purposes of Chapter 552.

Tex. Gov't Code § 306.009; *accord id.* § 323.021 (providing the same in statute creating TLC).

Sections 306.009 and 323.021 thus remove any doubt that TLC cannot turn over individual members' or other officials' documents in litigation, without the members' consent to do so. The documents must be subpoenaed from the individual members themselves (or the lieutenant governor himself). TLC has no legal "right" or "authority" or "practical ability" under its originating statute, Texas Government Code § 323.021, to turn over documents that remain in the possession, custody, and control of those individual members or other officials. *Perez v. Perry*, No. 5:11-cv-360, 2014 WL 1796661, at *2 (W.D. Tex. May 6, 2014); *see, e.g., Correia v. Town of Framingham*, 2013 WL 952332, at *3

(D. Mass. Mar. 8, 2013) (looking to state law to determine whether a party has control over certain documents for federal discovery purposes); *cf. Balt. City Bd. of Sch. Cmr's v. Warren Ehret Co. of Md., Inc.*, 2014 WL 6390300, at *6 (D. Md. Nov. 12, 2014) (looking to state law for "corporate custodian relating to forfeiture" to determine diversity jurisdiction).

The United States cannot ignore state law to circumvent that legal reality. *See, e.g.*, *Robinson v. Moskus*, 491 F. Supp. 3d 359, 363 (C.D. Ill. 2020) (preventing discovery on defendant state employees for certain documents when "nothing in the [state] statute . . . confers a right upon a [state] employee to demand documents from [an agency], his or her employer"); *Page v. Va. State Bd. of Elections*, 15 F. Supp. 3d 657, 663–64 (E.D. Va. 2014) (relying on state law to determine whether an outside consultant could invoke legislative privilege). As the United States seemingly already realizes—as shown by the more than two dozen individual subpoenas already served—it has no right to subpoena the same documents from TLC.

All of this is for good reason. Section 306.009, mirroring 323.021 of the Texas Government Code, exists to stop the very litigation tactics at play here. It confirms that a discovery seeker cannot circumvent longstanding legislative and attorney-client privileges held by individual members and other state officials by seeking documents merely because they are accessible to a state agency offering computer support services to those individuals—just as it would be fanciful to issue a third-party subpoena a law firm's office administrator for thousands of privileged documents between the firm's attorneys and clients. The legislators, lieutenant governor, and other legislative officers remain the custodians of their own documents, and the existence of TLC does not change that. *See* Tex. Gov't Code § 306.008(a)(3) (confirming that private communications concerning legislative activities or functions remain "confidential and subject to legislative privilege," including when such communications are among or between "a member of the governing body of a legislative agency" or "a legislative employee," among others). If the United States seeks to subpoena individual members'

or other officials' documents, it must subpoena them from those custodians—something the United States, tellingly, has already done. At the very least, the United States should be ordered to limit its subpoena to exclude such documents already subpoenaed from the individual legislators and other state officials, documents that TLC has no authority to turn over.

>   **B.**    **The Subpoena Should be Quashed in its Entirety Unless the United States Can Articulate a Basis for it Other than Seeking Individual Legislators' and Other State Officials' Documents**

The most obvious way to address the complexities created by the TLC subpoena—duplicative of subpoenas already issued to more than a dozen state officials and seeking the same categories of privileged information—is for the Court to quash the TLC subpoena. Indeed, the United States has not yet asserted any other basis for the subpoena other than as a means to seek those individual legislators' and other state officials' own redistricting-related documents, which Texas law confirms belong to the individual legislators and other state officials and not to TLC. Tex. Gov't Code § 306.009. The subpoena expressly clarifies that TLC should be turning over documents from email servers and shared network drives "*assigned to individual legislators* or their staff" or "shared between legislators or their staff." Ex. A at 9 (emphasis added). As such, the subpoena is entirely duplicative of subpoenas already served on individual members and their staff; it appears to seek redistricting-related documents belonging only to those individual members and other state officials. *Compare* Ex. A *with* Ex. C.

To fully appreciate the absurdity of such a duplicative subpoena, imagine what TLC will have to do if the subpoena remains in place. Because TLC does not formally possess or control the documents, it will be obligated to coordinate with individual members already subject to duplicative subpoenas from the United States and other state officials. Beyond that, presumably the United States would demand a detailed and burdensome privilege log that will be no different than dozens that will

be created in response to the individual subpoenas that the United States has already issued.

For these reasons alone, the TLC subpoena should be quashed. *See Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979) (party has standing to quash a non-party subpoena if it can allege a "personal right or privilege with respect to the materials subpoenaed"); *see, e.g., Bryant Gulf Coast Energy*, 2014 WL 12616133, at *2 (granting Merrill Lynch's motion to quash subpoena seeking confidential Merrill Lynch information from FINRA); *Bryant v. Mattel, Inc.*, No. 2:04-cv-9049, 2010 WL 11463910, at *2–3 (C.D. Cal. July 8, 2010) (collecting various cases regarding a party's standing to quash a third-party subpoena when the information sought is the party's privileged or protected material). Short of quashing the subpoena, there will be substantial and unnecessary procedure to affirm that each individual legislator—whether having anything to do with this litigation or not—has legislative privilege. State law and federal procedure already solve that problem: direct subpoenas to the true custodians of the documents, the individual legislators and other state officials.

## II.   In the Alternative, the Subpoena Should be Modified to Exclude Documents Falling Squarely Within the Legislative and Attorney-Client Privileges

If the subpoena is not quashed, a protective order is necessary to clarify that the United States must limit the scope of the TLC subpoena to exclude documents that are privileged, whether or not TLC is deemed to be the proper custodian of such documents. Redirecting a subpoena to TLC is no way to circumvent the legislative privilege, attorney-client privilege, and other protections that extend to the documents sought by the subpoena. But that appears to be exactly what the United States seeks to do. For example, the subpoena seeks "[a]ll documents relating to any redistricting proposal," including "draft[s]" as well as "documents relating to the impetus, rationale, background, or motivation for any such redistricting proposal" or "negotiations regarding any redistricting proposal," among others. Ex. C at 6–7. The subpoena seeks those documents even if they are located on drives assigned to or shared by individual legislators and their staff. *Id.* at 9. Likewise, the subpoena seeks documents "relating to whether any redistricting proposal complies with the Voting Rights Act" and

10

related "analyses," without regard to the request's obvious encroachment into the attorney-client privilege. *Id.* at 7–8.

### A.      Applicable Privileges Apply to Communications Accessible by TLC

As an initial matter, state law makes clear that any applicable legislative or attorney-client privilege extends to documents accessible by TLC. While in many States legislative privilege exists as a creature of common law and general constitutional protections, *see, e.g.*, Tex. Const. art. III, § 21, the Texas Government Code additionally and expressly codifies legislative privilege protections as necessary "[t]o protect the public's interest in the proper performance of the deliberative and policymaking responsibilities of the legislature and to preserve the legislative branch's independence." Tex. Gov't Code § 306.008(a). By statute, a communication remains "confidential and subject to legislative privilege if the communication:"

    (1)  is given privately;

    (2)  concerns a legislative activity or function; and

    (3)  is among or between any of the following:

        (A) a member of the house or senate;

        (B) the lieutenant governor;

        (C) an officer of the house or senate;

        (D) a member of the governing body of a legislative agency; or

        (E) a legislative employee.

*Id.*; *accord id.* § 323.017 (defining confidential and privileged communications between members and TLC).[4]

---

[4]   "Legislative employee" is defined broadly to include either "an employee of, assistant to, or credentialed intern for any part of the legislative branch of state government, including the house, the senate, a member of the house or senate, the lieutenant governor, an officer of the house or senate, a house or senate committee, a joint committee, or a legislative agency" or "a person performing services under a contract entered into with the house, the senate, a house or senate committee, or a legislative agency." Tex. Gov't Code § 306.008(e)(3)(A), (B).

These codified protections mirror and ought to be interpreted as coextensive with the common-law privileges afforded to legislators, legislative officers, and staff to protect the legislative process. State governments, some well before the federal Constitution was ratified, have guaranteed legislative privilege to protect the independence of their legislative processes. *See Tenney*, 341 U.S. at 373–75 (collecting examples for proposition that "[t]he provision in the United States Constitution" for federal legislative privilege "was a reflection of political principles already firmly established in the States"). These constitutionally prescribed legislative privileges mirror the federal Speech or Debate Clause for congressional representatives. *Id.* at 375. And this commitment to "legislative privilege" reflects the strong presumption *against* "judicial inquiries into legislative . . . motivation." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 n.18 (1977). Such inquiries are disfavored because they "represent a substantial intrusion into the workings of other branches of government." *Id.*; *see also United States v. Johnson*, 383 U.S. 169, 179 (1966); *United States v. Helstoski*, 442 U.S. 477, 491 (1979). At whatever level of government, "the exercise of legislative discretion should not be inhibited by judicial interference," and it is simply "'not consonant with our scheme of government for a court to inquire into the motives of legislators.'" *Bogan v. Scott-Harris*, 523 U.S. 44, 52, 55 (1998) (quoting *Tenney*, 341 U.S. at 377); *accord Citizens Union of City of New York*, 269 F. Supp. 3d at 141 ("sparse legislative record . . . does not justify turning discovery into a fishing expedition into non-public information that may or may not have been considered important by individual legislators and the Governor in connection with passage of [challenged legislation]; nor does it warrant the disclosure of privileged materials").

In Texas and elsewhere, those protections extend to legislative staff and service agencies. Again, Texas makes that express by statute. *See* Tex. Gov't Code § 306.008(a). And state and federal courts have confirmed that the privilege so extends. *See, e.g., Veasey v. Perry*, No. 2:13-cv-193, 2014 WL 1340077, at *2 (S.D. Tex. Apr. 3, 2014); *Texas v. Holder*, No. 1:12-cv-128, 2012 WL 13070059, at *3

(D.D.C. May 21, 2012) ("To the extent that a TLC employee is engaged in a legislative act[] that would have [been] privileged if performed by the [legislator] personally. Texas has a strong argument that the communications are privileged." (quotation marks omitted)); *see also In re Perry*, 60 S.W.3d 857 859–60 (Tex. 2001) (applying the "fundamental separation-of-powers tenets" embodied in "the Texas and federal constitutions" and "extend[ing] the legislative immunity doctrine beyond federal and state legislators to other individuals performing legitimate legislative functions" to prevent discovery); *Clear Lake City Water Auth. v. Salazar*, 781 S.W.2d 347, 348 (Tex. App.—Houston [14th Dist.] 1989) (no writ) (preventing discovery from local legislators); *accord Gravel v. United States*, 408 U.S. 606, 618 (1972) (federal privilege "applies not only to a Member, but also to his aides insofar as the conduct of the latter would be a protected legislative act if performed by the Member himself"); *id.* at 625 (describing privilege to attach to those "integral part[s] of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation," whether or not performed by the member himself); *see also Doe v. McMillan*, 412 U.S. 306, 312 & n.7 (1973) (rejecting argument that congressional committee staff and a congressional consultant and investigator were beyond the scope of federal privilege).

Applied here, TLC's role as a legislative service agency places it within the privileged sphere of legislative acts. *See* Tex. Gov't Code § 306.008(a); *In re Perry*, 60 S.W.3d at 858 (extending legislative privilege to the Legislative Redistricting Board that was "acting in a legislative capacity"); *Canfield v. Gresham*, 17 S.W. 390, 393 (Tex. 1891) (holding that "[t]he command of the house protected the sergeant at arms" from suit); *see also Gravel*, 408 U.S. at 616–17 (aides' day-to-day assistance is "so critical to the [legislators'] performance that they must be treated as the [legislators'] alter egos").

That TLC might have access to draft bills by shared network drives, for example, does nothing to thwart the legislative privilege that clearly attaches to such draft bills. The inquiry is not *who* may access those documents within the Texas Legislature, but instead *what* is the nature of such documents.

The privilege attaches to "legitimate legislative activities," meaning an action taken within the course of the "legislative process itself." *Cole v. Gray*, 638 F.2d 804, 811 (5th Cir. 1981); *In re Hubbard*, 803 F.3d 1298, 1308 (11th Cir. 2015). If they are documents relating to the Legislature's indisputably legislative act of crafting redistricting legislation, they are privileged. *See Bogan*, 523 U.S. at 55–56 (activity is "legislative" when it is part of a "discretionary, policymaking decision" or involves "a field where legislators traditionally have power to act"); *see also, e.g.*, *Brewster*, 408 U.S. at 512 ("A legislative act has consistently been defined as an act generally done in Congress in relation to the business before it."); *In re Perry*, 60 S.W.3d at 860–61.

There is thus no argument that the United States can circumvent the privileged nature of such documents by seeking them from TLC versus from the individual legislators or the lieutenant governor or other state officials to whom the documents actually belong. *See* Fed. R. Evid. 501. Legislative privilege protects nearly all of the documents the United States seeks from TLC, and they may be properly withheld for that reason, whether sought from TLC or sought from the proper legislative officials. *See, e.g.*, *Holder*, 2012 WL 13070113 at *4; *see also Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 624 (5th Cir. 2017) (observing that if "the councilmembers' reasons for passing the resolutions are privileged," then "they cannot be directly compelled to disclose them"); *compare Gravel*, 408 U.S. at 616–17.

Likewise, TLC maintains attorney-client privilege with other legislative officials. Private communications that concern a legislative activity or function are "subject to attorney-client privilege if:"

> (1) one of the parties to the communication is a legislative attorney or a legislative employee working at the direction of a legislative attorney; and

> (2) the communication is made in connection with the legislative attorney's provision of legal advice or other legal services.

Tex. Gov't Code § 306.008(b).

The United States also cannot ignore these privileges by subpoenaing TLC instead of or in addition to individual legislators and other legislative officials. If, for example, TLC provided privileged legal advice to legislators with legal advice in relation to a redistricting proposal's compliance with applicable state or federal law (*see* Ex. C at 8), such legal advice remains privileged and protected from discovery. Fed. R. Evid. 501, 502. Explained below, that privilege is *not* waivable by TLC and the TLC subpoena is not an appropriate end-run around it.

### B. State Officials Have Invoked Legislative Privilege, and Only Those Individual Legislators, the Lieutenant Governor, and Other Officials May Waive Applicable Privileges

A protective order is also necessary because the United States appears to believe that it can bait TLC into waiving legislative or attorney-client privileges that are only waivable by the individual legislators or other legislative officers themselves. TLC has no authority to disclose the individual's documents, let alone to waive privileges on his or her behalf. *See, e.g.*, Tex. Gov't Code § 306.008(c) ("A member of the house or senate, the lieutenant governor, or an officer of the house or senate may choose to disclose all or part of a communication to which [legislative or attorney-client privilege] applies and to which the individual or legislative employee acting on behalf of the individual was a party.").[5] Unless and until there is a waiver of legislative or attorney-client privilege by the individual legislator, the lieutenant governor, or other appropriate legislative officer, and the United States well knows that there has been no such waiver here given the individual subpoena recipients' objections, the United States cannot circumvent those privileges by subpoenaing a legislative agency.

A waiver of legislative privilege entails "explicit and unequivocal renunciation of the

---

[5]   Officers of the house or senate include the house chief clerk, the house journal clerk, the house reading clerks, the house sergeant-at-arms, the house door keeper, the house chaplain, the house voting clerk, the house committee coordinator, the house parliamentarian, the senate secretary, the senate journal clerk, the senate calendar clerk, the senate enrolling clerk, the senate sergeant-at-arms, the senate doorkeeper, and the senate chaplain. Tex. H. Rule 2 (87th Legis. 2021); Tex. S. Rule 1.04 (87th Legis. 2021). Those associated with TLC are not included within the meaning of "officer."

protection," for "any lesser standard would risk intrusion by the Executive and the Judiciary [into legislative matters]." *United States v. Helstoski*, 442 U.S. 477, 491 (1979); *accord Clear Lake City Water Auth.*, 81 S.W.2d at 350–51 (rejecting waiver argument because "privilege is a personal one which cannot be imputed to all officials of a governmental body merely on the basis that one or two members waived it"); *Co. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, No. 11-cv-5065, 2011 WL 4837508, at *11 (N.D. Ill. Oct. 12, 2011) (prohibiting plaintiffs "from subpoenaing . . . documents from individual members of the General Assembly unless the member affirmatively waives his or her legislative privilege in writing"); *ACORN v. Cnty. of Nassau*, No. 05-cv-2301, 2007 WL 2301, at *5, *6 (E.D.N.Y. Sept. 25, 2007) (denying the plaintiff's motion to compel where the legislative privilege applied and the plaintiff failed to prove waiver); *McDonough v. City of Portland*, No. 2:15-cv-153, 2015 WL 12683663, at *9 (D. Me. Dec. 31, 2015) (recommending denying a motion to compel privileged information where privilege had not been waived). There has been nothing of the sort in these consolidated cases.

Most relevant here, the United States has subpoenaed more than two dozen individual legislators, staffers, and the lieutenant governor so far. Those third-party subpoenas necessarily reflect who the United States believe will have privileged information related to the dispute. In response to every one of those subpoenas, the subpoena recipients have invoked legislative privilege and attorney-client privileges to the federal government's sweeping requests. *See generally* Ex. B. These objections are beyond sufficient to establish that legislative privilege has and will continue to be invoked, consistent with state and federal common law protections.

To the extent that the United States disagrees with the individual subpoena recipients' invocation of legislative privilege, the proper course is to litigate the privilege issues as part of a motion to compel documents from those individual subpoena recipients, over their privilege objections. After all, the applicable privileges belong to those individuals, not TLC. *See Bogan*, 523 U.S. at 48–49; *Martin*

16

*v. Crestline Hotels & Resorts, LLC*, No. 1:19-cv-470, 2020 WL 3145694, at *3 (W.D. Tex. June 12, 2020) (quashing subpoena and rejecting as contrary to the patient-physician privilege a subpoena seeking "the medical information of non-parties who have not waived their patient-physician privileges in this case," which belonged to the non-party patients themselves and not patients' insurance carrier); *Hall v. Louisiana*, No. 3:12-cv-657, 2014 WL 1652791, at *4 (M.D. La. Apr. 23, 2014) (quashing third-party subpoena for privileged information and explaining that "attorney-client privilege is held by the clients, not [subpoena recipient], and [subpoena recipient] is without authority to waive it"). Any dispute that the United States wishes to raise over the scope of that privilege should thus be litigated against the individuals who hold the privilege.

But rather than litigate any dispute over the privilege objections raised by the individual subpoena recipients, the United States has attempted an end-run around those objections by subpoenaing TLC. There is no basis for such a proxy war on legislative privilege, leaving it to TLC to hold the line on a privilege belonging to legislators and other state officials. While the United States might wish to litigate that privilege battle with TLC, as a third-party agency not represented by Defendants' or the individual subpoena recipients' counsel, the United States should be prohibited from removing from that battle the members to whom the privilege belongs. Avoiding that proxy war is the very reason why Texas law expressly states that the documents belong to the members' themselves, not TLC. *See* Tex. Gov't Code §§ 306.009, 323.021.

Likewise, to the extent that the United States intends to argue that it may subpoena TLC for privileged documents belonging to other members whom the United States has not yet individually subpoenaed, that argument should be rejected out of hand. The United States is not entitled to have documents from TLC belonging to all 181 members of the legislature—ranging from those no more involved in the redistricting bills than voting for them to those who were centrally involved and who have already been individually subpoenaed. And yet, the United States has gestured at the idea that

TLC must produce all documents of all members, privileged or not, unless and until all such members must insert themselves in this litigation to affirm what state law already says about legislative privilege. To articulate that idea is to reject it; all 181 members of the Texas Legislature need not intervene to invoke legislative privilege over documents to which TLC has access but which belong to the legislators and other officials themselves.

Here again, the federal government's litigation strategy is an end-run around federal procedure and state law. If the United States wants to hear from all 181 members, then the United States must take the risks associated with such sweeping and unnecessary discovery, *see, e.g.*, Fed. R. Civ. P. 45(d)(1), and subpoena the document custodians themselves. State law already cements that the subpoenaed documents do not belong to TLC, Tex. Gov't Code § 306.009, and that legislative privilege attaches to those documents, *id.* § 306.008(a). TLC is *not* in possession, custody, or control of all 181 members' documents for purposes of litigation, and cannot waive any of the associated privileges in any event. *Id.* §§ 306.009, 323.021. Ultimately, if the United States seeks to probe the privilege of individual members, it is the United States that must make the calculated decision about whom to subpoena and thereafter survive all of the limitations put in place by the Federal Rules to protect third parties from such improper, unnecessary, burdensome, and irrelevant discovery. It is not the burden of Defendants (let alone a third-party subpoena recipient without custody over the subpoenaed documents) to additionally procure 181 affirmative statements repeating the same: that the individual legislators own their own documents and that long-held privilege protections, confirmed by state law, remain long-held here.[6]

---

[6] Even if such a thing could be required, the United States has not given reasonable time for compliance, let alone a proposed procedure short of 181 individual legislators intervening in this litigation for the sole purpose of affirming their legislative privilege. TLC as a third-party subpoena recipient should not be made to procure 181 such statements, most of which will be from individual legislators who as of now have no connection to (if even awareness of) this ongoing litigation, within the brief amount of time allotted by the subpoena. The subpoena should thus be quashed or the time to comply modified on that basis too. *See* Fed. R. Civ. P. 45(d)(3)(A)(i) (permitting motion to quash or modify a subpoena that "fails to allow reasonable time to comply").

The United States cannot short-circuit these protections by seeking any and all redistricting documents from a legislative agency, which neither owns the documents nor can waive privilege to such documents.

## CONCLUSION

For the foregoing reasons, Defendants and the individual subpoena recipients seek an order quashing the TLC subpoena or, in the alternative, a protective order to preclude the United States from demanding documents from TLC that are not TLC's to give. Individual members' documents, the lieutenant governor's documents, and other state officials' documents belong to the officials themselves. That TLC might be able to access such documents *via* shared networks or otherwise does not change this fact. The documents must thus be sought from the individual custodians—as the United States has already done. The United States, moreover, cannot circumvent the legislative and other applicable privileges invoked by those individual subpoena recipients by seeking the same documents from TLC. The same privileges that bar the United States from seeking documents that are part and parcel of the legislative redistricting process from the individual members bar the United States from seeking the same from TLC. Defendants respectfully request a protective order accordingly limiting the subpoena.

Date: April 6, 2022                           Respectfully submitted.

KEN PAXTON                                    /s/ Patrick K. Sweeten
Attorney General of Texas                     PATRICK K. SWEETEN
                                              Deputy Attorney General for Special Litigation
BRENT WEBSTER                                 Tex. State Bar No. 00798537
First Assistant Attorney General
                                              WILLIAM T. THOMPSON
                                              Deputy Chief, Special Litigation Unit
                                              Tex. State Bar No. 24088531

                                              JACK B. DISORBO
                                              Assistant Attorney General, Special Litigation Unit
                                              Tex. State Bar No. 24120804

                                              OFFICE OF THE ATTORNEY GENERAL
                                              P.O. Box 12548 (MC-009)
                                              Austin, Texas 78711-2548
                                              Tel.: (512) 463-2100
                                              Fax: (512) 457-4410
                                              patrick.sweeten@oag.texas.gov
                                              will.thompson@oag.texas.gov
                                              jack.disorbo@oag.texas.gov

                                              **COUNSEL FOR MOVANTS**

### CERTIFICATE OF CONFERENCE

I certify that counsel for Defendants and the individual subpoena recipients conferred with counsel for the United States on two occasions regarding the subject of this motion. Counsel for the United States indicated it opposed any modification of the TLC subpoena, which confirms opposition to the relief sought here.

                                              /s/ Patrick K. Sweeten
                                              PATRICK K. SWEETEN


### CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on April 6, 2022, and that all counsel of record were served by CM/ECF.

                                              /s/ Patrick K. Sweeten
                                              PATRICK K. SWEETEN