# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, | § § § § | |
| *Plaintiffs,* | § § | |
| | § | Case No. 3:21-cv-00259 |
| v. | § § | [Lead Case] |
| GREG ABBOTT, *et al.*, | § § | |
| *Defendants.* | § § | |
| UNITED STATES OF AMERICA, | § § | |
| *Plaintiff,* | § § | |
| | § | Case No. 3:21-cv-00299 |
| v. | § § | [Consolidated Case] |
| STATE OF TEXAS, *et al.*, | § § | |
| *Defendants.* | § § | |

## EXHIBIT B

## COMPILATION OF OBJECTIONS

**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS *et al.*, | § § § | |
| *Plaintiffs*, | § § | Case No. 3:21-cv-259-DCG-JES-JVB (Consolidated Cases) |
| v. | § § | |
| GREG ABBOTT, *et al.*, | § § | |
| *Defendants*. | § § | |

**LIEUTENANT GOVERNOR DAN PATRICK'S OBJECTIONS AND RESPONSES TO THE UNITED STATES' SUBPOENA FOR DOCUMENTS AND RECORDS**

TO:   Michelle Rupp, U.S. Department of Justice, Civil Rights Division, Voting Section, 950 Pennsylvania Ave. NW, 4CON 8th Floor, Washington, D.C. 20530 Email: michelle.rupp@usdoj.gov   Phone: 202-305-0565

Pursuant to the Federal Rules of Civil Procedure, Lieutenant Governor Dan Patrick hereby serves Objections and Responses to the United States' Subpoena for Documents and Records.

Date: February 18, 2022

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Respectfully submitted.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
Tex. State Bar No. 24088531

ERIC A. HUDSON
Senior Special Counsel
Tex. Bar No. 24059977

KATHLEEN T. HUNKER
Special Counsel
Tex. State Bar No. 24118415

LEIF A. OLSON
Special Counsel

1

Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
Tex. State Bar No. 24064380

JACK B. DISORBO
Assistant Attorney General
Tex. State Bar No. 24120804

Office of the Attorney General
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov

**Counsel for Lieutenant Governor Dan Patrick**

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2022, the attached Objections and Responses to the United States' Subpoena for Documents and Records was served on opposing counsel via electronic mail.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation

## OBJECTIONS RELEVANT TO EACH REQUEST

Lieutenant Governor Patrick asserts that each of the following objections applies specifically to each request below. In the interest of brevity, these objections are offered here to avoid unnecessary repetition of objections to definitions, scope, and similar issues that afflict each request. These objections are as follows:

There is currently no protective order in place between the United States Department of Justice ("DOJ") and Lieutenant Governor Patrick. To the extent that documents may be identified that are discoverable but require additional protections to prevent public disclosure, any such documents that are identified will be withheld and described in the responses, with the clarification that such production will first require entry of a protective order before the documents may be disclosed.

The Federal Rules provide that the "attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). While nonparty subpoenas are governed by Rule 45, they are also subject to the parameters established by Rule 26. *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 607 (W.D. Tex. 2019) ("As with any other forms of discovery, the scope of discovery through a Rule 45 subpoena is governed by Rule 26(b)."). Therefore, the discovery sought here is still limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The twin demands for relevancy and proportionality "are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Thus, if the information sought is irrelevant to the party's claims or defenses, "it is not necessary to determine whether it would be proportional if it *were* relevant." *Walker v. Pioneer Prod. Servs., Inc.*, No. CV 15-0645, 2016 WL 1244510, at *3 (E.D. La. Mar. 30, 2016). Conversely, "relevance alone does not translate into automatic discoverability" because "[a]n assessment of proportionality is essential." *Motorola Sols., Inc. v. Hytera Comm'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Accordingly, Lieutenant Governor Patrick objects to these requests to the extent that the information sought is either irrelevant or disproportionate.

Given Lieutenant Governor Patrick's role as president of the Texas Senate, and that the requested production directly relates to legislative activities, much of the requested production is subject to legislative privilege. That privilege traces its roots to before the founding of the Republic, as it has "taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries." *Tenney v. Brandhove*, 341 U.S. 372 (1951). The privilege protects not only legislators, but their staff and aides as well. *See Gravel v. United States*, 408 U.S. 606, 615-16 (1972). Here, DOJ's attempt to compel disclosure of Lieutenant Governor Patrick's "thought processes or the communications [he] had with other legislators" falls squarely within the well-established contours of legislative privilege. *Perez v. Abbott*, No. 5:11-cv-360, 2014 WL 3495414 (W.D. Tex. July 11, 2014). Additional privileges, including but not limited to, attorney-client privilege, the attorney work product doctrine, and deliberative process may also be implicated by DOJ's requests, and Lt. Gov. Patrick anticipates asserting all applicable privileges implicated by the DOJ's requests. To the extent that documents responsive to DOJ's requests, Lt. Gov. Patrick anticipates withholding the materials, preparing a log that complies with the Federal Rules of Civil Procedure, and producing that log within a reasonable time.

The inadvertent production or disclosure of any privileged documents or information shall not constitute or be deemed to be a waiver of any applicable privilege with respect to such document or information (or the contents or subject matter thereof) or with respect to any other such document or discovery now or hereafter requested or provided. Lieutenant Governor Patrick reserves the right not to produce documents that are in part protected by privilege, except on a redacted basis, and to require the return of any document (and all copies thereof) inadvertently produced. Lieutenant Governor Patrick likewise does not waive the right to object, on any and all grounds, to (1) the evidentiary use of documents produced in response to these requests; and (2) discovery requests relating to those documents.

A portion of the requested production is also irrelevant to DOJ's claims and is thus identified individually below. But a much larger portion of the request is not proportional to the needs of the case. The proportionality language was inserted into Rule 26(b) in 2015 "to emphasize the need for proportionality," *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017), and "highlight[] its significance," *Mannina v. D.C.*, 334 F.R.D. 336, 339 n.4 (D.D.C. 2020); *see also* Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States,[1] ("Rule 26(b)(1) crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality[.]"). As the Advisory Committee explained, this addition of overt "proportional" language was meant to better reflect the intent of the 1983 amendments, which were designed "to deal with the problem of over-discovery." Fed. R. Civ. P. 26(b) advisory committee's note (2015) (quoting the 1983 advisory notes). However, this "clear focus of the 1983 provisions may have been softened, although inadvertently, by the amendments made in 1993." *Id.* Thus, the 2015 amendment sought to "restore[] the proportionality factors to their original place in defining the scope of discovery" and reinforce the parties' obligation "to consider these factors in making discovery requests, responses, or objections." *Id.* As fully restored, the proportionality requirement "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 672 (2019). Accordingly, Lieutenant Governor Patrick objects to the DOJ's subpoena to the extent that it falls short of this more stringent proportionality standard.

These responses and objections are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information or documents requested. All answers are given without prejudice to Lieutenant Governor Patrick's right to object to the discovery of any documents, facts, or information discovered after the date hereof. Likewise, these responses and objections are not intended to be, and shall not be construed as, agreement with the DOJ's characterization of any facts, circumstances, or legal obligations. Lieutenant Governor Patrick reserves the right to contest any such characterization as inaccurate and object to the Requests insofar as they contain any express or implied assumptions of fact or law concerning matters at issue in this litigation.

Lieutenant Governor Patrick will provide responses based on terms as they are commonly understood and consistent with the Federal Rules of Civil Procedure. Lieutenant Governor Patrick objects to and will refrain from extending or modifying any words employed in the Requests to comport with any expanded definitions or instructions. Lieutenant Governor Patrick will answer the Requests to the extent required by the Federal Rules of Civil Procedure and the Local Rules of the Western District of Texas.

---

[1] https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Lieutenant Governor Patrick objects to the definition of "document" to the extent that it calls for documents protected from disclosure by legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or any other applicable privilege.

Lieutenant Governor Patrick objects to the definitions of "Legislator," "Member of the U.S. House of Representatives," "individual person," "entity," and "organization," *see* ¶¶ 2–3, 9–10 because they are overbroad and inaccurate. They improperly group all persons and entities having any relation to a particular person or entity, when in fact the particular person or entity is independent of those related persons or entities. The Lieutenant Governor objects to the implied application to any related persons or entities without specific enumeration.

Lieutenant Governor Patrick further objects to the time period in Instruction 21, which defines the relevant time period for these responses as beginning on January 1, 2019. The claims and issues in this litigation pertain to redistricted maps that were drawn based upon data received from the United States Census Bureau in the late summer of 2021 and finalized in the fall of 2021. Accordingly, it is unreasonable and disproportionate to the needs of this case to look back to January of 2019 for documents responsive to these requests.

## RESPONSES

**Document Request 1**. All documents relating to any redistricting proposal for the Texas delegation to the U.S. House of Representatives or the Texas House, including but not limited to House Bill 1, Senate Bill 6, and any other Congressional or House redistricting proposal drawn, discussed, or considered. This request includes but is not limited to:

a.  The origination(s) or source(s) of any such redistricting proposal;

b.  The impetus, rationale, background, or motivation for any such redistricting proposal;

c.  All drafts in the development or revision of any such redistricting proposal, including but not limited to shapefiles, files or datasets used in mapping software, each RED report, each PAR report, demographic data (including but not limited to Citizen Voting Age Population, Hispanic Citizen Voting Age Population, Black Citizen Voting Age Population, Voting Age Population, Hispanic Voting Age Population, and Black Voting Age Population), election data (including but not limited to reconstituted election analyses), and files related to precinct names, precinct lines, split precincts, partisan indexes, population shifts, population deviations, voter registration, Spanish Surname Voter Registration, voter affiliation, Spanish Surname Voter Turnout, or changing census geography;

d.  The pairing of any incumbents in any such redistricting proposal;

e.  Any redistricting amendment, whether partial or total, to each such proposal;

f.  Negotiations regarding any redistricting proposal; and

g.  all calculations, reports, audits, estimates, projections, or other analyses, from any source, relating to the effect or impact, of any kind—including on (1) Texas minority voters, (2) existing or emerging minority opportunity districts, or (3) voter turnout (including Spanish

Surname Voter Turnout)—that could result from the implementation of any such redistricting proposal.

**Response**. Lieutenant Governor Patrick objects to this request because it calls for the production of documents that are subject to legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. In particular, requesting analyses "from any source" is likely to encompass documents that are protected by legislative privilege. Requesting "the origination(s)" and "the impetus, rationale, background, or motivation" of certain legislative proposals would impermissibly expose thought processes and mental impressions, which are also subject to legislative privilege. Requesting analyses that were "considered by" the Legislature, "draft in the development or revision of" redistricting proposals, "negotiations" and "calculations, reports, audits, estimates, projections, or other analyses" would be subject to legislative privilege for the same reason.

Lieutenant Governor Patrick further objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request generally seeks shapefiles, data sets, reconstituted election analyses, amendments, information concerning the pairing of incumbents, and other general information, Lieutenant Governor directs DOJ to the Texas Legislative Council's Capitol Data Portal, https://data.capitol.texas.gov/organization/tlc, where such information may be found. Insofar as the request seeks such information specifically considered by Lieutenant Governor Patrick, the request calls for information subject to the legislative privilege.

Lastly, insofar as the request seeks legal analysis concerning the "effect or impact" of redistricting proposals on "minority voters," "existing or emerging minority opportunity districts," or "voter turnout," it seeks information that may be subject to the attorney-client privilege or constitute attorney work product.

Lieutenant Governor Patrick is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 2**. All documents relating to the redistricting process for the Texas House or the Texas delegation to the U.S. House of Representatives, including but not limited to planning, timing, hearings, outreach, publicity, public or expert participation, deadlines, limitations, staffing, and persons or entities involved.

**Response**. Lieutenant Governor Patrick objects to this request because it calls for documents that are subject to the legislative privilege. The request seeks documents relating to the "planning" and "timing" of the redistricting process. These go to mental impressions and legislative strategy, which are at the core of the legislative privilege. Lieutenant Governor Patrick objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Lieutenant Governor Patrick also objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request seeks information on the attendance and date of hearings, and persons and entities involves, such information may be found at the Texas Senate and Texas House of Representatives websites, as well as on the Texas Legislature Online ("TLO") website. *See* https://senate.texas.gov/index.php (Senate); https://house.texas.gov/ (House); https://capitol.texas.gov/Home.aspx (TLO).

Lieutenant Governor Patrick is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 3**. All documents relating to voting patterns in Texas elections with respect to race, ethnicity, or language minority status, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Insofar as this request asks for calculations, reports, audits, estimates, projections, or other analyses used as part of the redistricting process, the Lieutenant Governor objects on the basis that such a request calls for documents that are subject to the legislative privilege. Documents used for the purpose of formulating legislation are at the core of the legislative privilege. Lieutenant Governor Patrick objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

The Lieutenant Governor also objects to this request because it is facially overbroad. It calls for "all" documents relating to voting patterns, without any temporal limitation (other than the one included in the instructions) or further specification. For this reason, documents relating to voting patterns in Texas may well be irrelevant to the United States' claims—which are limited to several districts in the Texas House of Representatives map and Congressional map.

Lieutenant Governor Patrick is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 4**. All documents relating to whether House Bill 1, Senate Bill 6, or any other redistricting proposal drawn, discussed, or considered with respect to the Texas House or the Texas delegation to the U.S. House of Representatives complies with the Voting Rights Act, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. The Lieutenant Governor objects to this request because, by its very nature, it calls for documents that are subject to the attorney-client privilege, the legislative privilege, and constitute attorney work product. Legal analysis concerning whether HB1, SB6, or other related redistricting bills

comply with the VRA will necessarily implicate these privileges. Further, communications between legislators and legislators and their staffs are privileged communications covered by the legislative privilege.

Lieutenant Governor Patrick is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 5**. All documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives exchanged between, among, with, or within the Office of the Governor, the Office of the Lieutenant Governor, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate to represent Texas in the U.S. House of Representatives, any candidate for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any local elected official in Texas, any consultant, any expert, any law firm or attorney, any vendor, any other political or community group or organization, or any member of the public.

**Response**. The Lieutenant Governor objects to this request because it is overbroad. The request calls for "all documents relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to documents that are irrelevant to the United States' claims in this case.

Lieutenant Governor Patrick also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of the Lieutenant Governor, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

The Lieutenant Governor also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to redistricting exchanged between the Lieutenant Governor and the many third

parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Lieutenant Governor Patrick is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 6**. All other documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives from July 1, 2021, to the present, including but not limited to redistricting criteria, public statements, correspondence, calendar invitations, scheduling emails, meeting minutes, agendas, attendance sheets, call logs, notes, presentations, studies, advocacy, letters, or other communications.

**Response**. The Lieutenant Governor objects to this request because it is overbroad. The request calls for "all documents relating redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to make documents that are irrelevant to the United States' claims in this case.

The Lieutenant Governor also objects to this request because it calls for documents that are subject to the legislative privilege. Among others, documents concerning "presentations," "redistricting criteria," and "meeting minutes" go to the Lieutenant Governor's mental impressions and motivations concerning pending legislation, which is clearly covered by the privilege. Of course, communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991).

Lieutenant Governor Patrick is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 7**. All documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes, race, ethnicity, language minority status, or United States citizenship that were exchanged between, among, with, or within the Office of the Governor, the Office of the Lieutenant Governor, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate for the Texas House, any candidate to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any national political party, any state political party organization, any local political party organization, any national congressional campaign

committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any consultant, any expert, any law firm or attorney, any vendor, any group or organization, or any member of the public.

**Response**. The Lieutenant Governor objects to this request because it is overbroad. The request calls for "all documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes," without any qualifications (other than the listed recipients). That is an extremely broad request, and will likely apply to make documents that are irrelevant to the United States' claims in this case.

Lieutenant Governor Patrick also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of the Lieutenant Governor, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–40 (1980)).

The Lieutenant Governor also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to demographic enumerations or estimates exchanged between the Lieutenant Governor and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

The Lieutenant Governor objects on the basis that much the information sought by this request may be made publicly available by the U.S. Census Bureau and the Texas Demographic Center.

Lieutenant Governor Patrick is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 8**. All documents relating to payment for services; agreements of representation, consultation, employment, services, confidentiality, or common interest; or any other type of contract relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives that include any of the following individuals or entities: Adam Foltz, Akin Gump Strauss Hauer & Feld LLP, Michael Best Strategies, any consultant, any political operative, any expert, the Office of the Texas Attorney General, any other law firm, any other attorney, any other vendor, or any other person or entity.

**Response**. The Lieutenant Governor objects to this request because it is overbroad and harassing. Although it appears to be bounded by specific persons and entities, the end of the request provides that the request applies to "any other attorney," "any other vendor," or "any other person or entity." The net effect is that the initial limitations are swallowed by the sheer breadth of a request that asks for "all documents" that "[relate] to redistricting" and that include "any other person or entity." Accordingly, this request is overly broad and conducting a search of this scope and breadth without any reasonable limitation is disproportionate to the needs of this case. Further, Lieutenant Governor Patrick is not a party to this litigation, and should not be required to produce, for example, "all documents" that "[relate] to redistricting" that include "any political operative." Such a facially overbroad requests create an undue burden. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

In addition, Lieutenant Governor Patrick objects to this request because it calls for documents that are subject to the legislative privilege and the attorney-client privilege. Documents relating to services provided by third parties for a legislative purpose are subject to the legislative privilege. *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)). And documents relating to the Lieutenant Governor and any legal representation, by the Office of the Texas Attorney General or otherwise, is subject to the attorney-client privilege.

The Lieutenant Governor also objects on the basis that this request does not contend an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any contracts or other agreements entered into after the filing of this complaint would necessarily be irrelevant.

Lieutenant Governor Patrick is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 9**. All non-privileged documents relating to the instant lawsuit or preceding investigation of Texas by the U.S. Department of Justice.

**Response**. The Lieutenant Governor objects to this request because it is overbroad. It is unclear from the face of this request why "all documents relating" to this lawsuit or the United States' preceding investigation would be relevant to the United States' claims. And insofar as these documents relate to the United States' investigation, these are documents that are more likely to be within the care, custody, or control of the United States. If such materials are more commonly held by others, including state and local law enforcement agencies, production should be requested from them rather than from an individual legislator. Given the availability of these documents from other sources, the burden of requiring the Lieutenant Governor to collect them far exceeds any benefit that might result. *See Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (stating that courts should "consider what information is available to the requesting party from other sources" when analyzing "the benefit side of the ledger").

The Lieutenant Governor also objects on the basis that this request does not contend an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any documents originating after the filing of this complaint would necessarily be irrelevant.

11

Lieutenant Governor Patrick is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS *et al.*, | § § § | |
| *Plaintiffs*, | § § | Case No. 3:21-cv-259-DCG-JES-JVB |
| v. | § § | (Consolidated Cases) |
| GREG ABBOTT, *et al.*, | § § § | |
| *Defendants*. | § § | |

## DARRELL DAVILA'S OBJECTIONS AND RESPONSES TO THE UNITED STATES' SUBPOENA FOR DOCUMENTS AND RECORDS

TO:     Michelle Rupp, U.S. Department of Justice, Civil Rights Division, Voting Section, 950 Pennsylvania Ave. NW, 4CON 8th Floor, Washington, D.C.  20530    Email: michelle.rupp@usdoj.gov   Phone:  202-305-0565

Pursuant to the Federal Rules of Civil Procedure, Darrell Davila hereby serves Objections and Responses to the United States' Subpoena for Documents and Records.

Date: February 18, 2022

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Respectfully submitted.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
Tex. State Bar No. 24088531

ERIC A. HUDSON
Senior Special Counsel
Tex. Bar No. 24059977

KATHLEEN T. HUNKER
Special Counsel
Tex. State Bar No. 24118415

LEIF A. OLSON
Special Counsel

1

Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
Tex. State Bar No. 24064380

JACK B. DISORBO
Assistant Attorney General
Tex. State Bar No. 24120804

Office of the Attorney General
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov

**Counsel for Darrell Davila**

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2022, the attached Objections and Responses to the United States' Subpoena for Documents and Records was served on opposing counsel via electronic mail.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation

2

## OBJECTIONS RELEVANT TO EACH REQUEST

Mr. Davila asserts that each of the following objections applies specifically to each request below. In the interest of brevity, these objections are offered here to avoid unnecessary repetition of objections to definitions, scope, and similar issues that afflict each request. These objections are as follows:

There is currently no protective order in place between the United States Department of Justice ("DOJ") and Mr. Davila. To the extent that documents may be identified that are discoverable but require additional protections to prevent public disclosure, any such documents that are identified will be withheld and described in the responses, with the clarification that such production will first require entry of a protective order before the documents may be disclosed.

The Federal Rules provide that the "attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). While nonparty subpoenas are governed by Rule 45, they are also subject to the parameters established by Rule 26. *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 607 (W.D. Tex. 2019) ("As with any other forms of discovery, the scope of discovery through a Rule 45 subpoena is governed by Rule 26(b)."). Therefore, the discovery sought here is still limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The twin demands for relevancy and proportionality "are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Thus, if the information sought is irrelevant to the party's claims or defenses, "it is not necessary to determine whether it would be proportional if it *were* relevant." *Walker v. Pioneer Prod. Servs., Inc.*, No. CV 15-0645, 2016 WL 1244510, at *3 (E.D. La. Mar. 30, 2016). Conversely, "relevance alone does not translate into automatic discoverability" because "[a]n assessment of proportionality is essential." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Accordingly, Mr. Davila objects to these requests to the extent that the information sought is irrelevant or disproportionate.

Given Mr. Davila's role as Lieutenant Governor Dan Patrick's chief of staff, and that the requested production directly relates to legislative activities, much of the requested production is subject to legislative privilege. That privilege traces its roots to before the founding of the Republic, as it has "taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries." *Tenney v. Brandhove*, 341 U.S. 372 (1951). The privilege protects not only legislators, but their staff and aides as well. *See Gravel v. United States*, 408 U.S. 606, 615-16 (1972). Here, DOJ's attempt to compel disclosure of Mr. Davila's "thought processes or the communications [he] had with other legislators" falls squarely within the well-established contours of legislative privilege. *Perez v. Abbott*, No. 5:11-cv-360, 2014 WL 3495414 (W.D. Tex. July 11, 2014). Additional privileges, including but not limited to, attorney-client privilege, the attorney work product doctrine, and deliberative process may also be implicated by DOJ's requests, and Mr. Davila anticipates asserting all applicable privileges implicated by the DOJ's requests. To the extent that documents responsive to DOJ's requests, Mr. Davila anticipates withholding the materials, preparing a log that complies with the Federal Rules of Civil Procedure, and producing that log within a reasonable time.

The inadvertent production or disclosure of any privileged documents or information shall not constitute or be deemed to be a waiver of any applicable privilege with respect to such document

or information (or the contents or subject matter thereof) or with respect to any other such document or discovery now or hereafter requested or provided. Mr. Davila reserves the right not to produce documents that are in part protected by privilege, except on a redacted basis, and to require the return of any document (and all copies thereof) inadvertently produced. Mr. Davila likewise does not waive the right to object, on any and all grounds, to (1) the evidentiary use of documents produced in response to these requests; and (2) discovery requests relating to those documents.

A portion of the requested production is also irrelevant to DOJ's claims and is thus identified individually below. But a much larger portion of the request is not proportional to the needs of the case. The proportionality language was inserted into Rule 26(b) in 2015 "to emphasize the need for proportionality," *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017), and "highlight[] its significance," *Mannina v. D.C.*, 334 F.R.D. 336, 339 n.4 (D.D.C. 2020); *see also* Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States,[1] ("Rule 26(b)(1) crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality[.]"). As the Advisory Committee explained, this addition of overt "proportional" language was meant to better reflect the intent of the 1983 amendments, which were designed "to deal with the problem of over-discovery." Fed. R. Civ. P. 26(b) advisory committee's note (2015) (quoting the 1983 advisory notes). However, this "clear focus of the 1983 provisions may have been softened, although inadvertently, by the amendments made in 1993." *Id.* Thus, the 2015 amendment sought to "restore[] the proportionality factors to their original place in defining the scope of discovery" and reinforce the parties' obligation "to consider these factors in making discovery requests, responses, or objections." *Id.* As fully restored, the proportionality requirement "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 672 (2019). Accordingly, Mr. Davila objects to the DOJ's subpoena to the extent that it falls short of this more stringent proportionality standard.

These responses and objections are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information or documents requested. All answers are given without prejudice to Mr. Davila's right to object to the discovery of any documents, facts, or information discovered after the date hereof. Likewise, these responses and objections are not intended to be, and shall not be construed as, agreement with the DOJ's characterization of any facts, circumstances, or legal obligations. Mr. Davila reserves the right to contest any such characterization as inaccurate and object to the Requests insofar as they contain any express or implied assumptions of fact or law concerning matters at issue in this litigation.

Mr. Davila will provide responses based on terms as they are commonly understood and consistent with the Federal Rules of Civil Procedure. Mr. Davila objects to and will refrain from extending or modifying any words employed in the Requests to comport with any expanded definitions or instructions. Mr. Davila will answer the Requests to the extent required by the Federal Rules of Civil Procedure and the Local Rules of the Western District of Texas.

---

[1] https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Mr. Davila objects to the definition of "document" to the extent that it calls for documents protected from disclosure by legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or any other applicable privilege.

Mr. Davila objects to the definitions of "Legislator," "Member of the U.S. House of Representatives," "individual person," "entity," and "organization," *see* ¶¶ 2–3, 9–10 because they are overbroad and inaccurate. They improperly group all persons and entities having any relation to a particular person or entity, when in fact the particular person or entity is independent of those related persons or entities. Mr. Davila objects to the implied application to any related persons or entities without specific enumeration.

Mr. Davila further objects to the time period in Instruction 21, which defines the relevant time period for these responses as beginning on January 1, 2019. The claims and issues in this litigation pertain to redistricted maps that were drawn based upon data received from the United States Census Bureau in the late summer of 2021 and finalized in the fall of 2021. Accordingly, it is unreasonable and disproportionate to the needs of this case to look back to January of 2019 for documents responsive to these requests.

## RESPONSES

**Document Request 1**. All documents relating to any redistricting proposal for the Texas delegation to the U.S. House of Representatives or the Texas House, including but not limited to House Bill 1, Senate Bill 6, and any other Congressional or House redistricting proposal drawn, discussed, or considered. This request includes but is not limited to:

a. The origination(s) or source(s) of any such redistricting proposal;

b. The impetus, rationale, background, or motivation for any such redistricting proposal;

c. All drafts in the development or revision of any such redistricting proposal, including but not limited to shapefiles, files or datasets used in mapping software, each RED report, each PAR report, demographic data (including but not limited to Citizen Voting Age Population, herpanic Citizen Voting Age Population, Black Citizen Voting Age Population, Voting Age Population, herpanic Voting Age Population, and Black Voting Age Population), election data (including but not limited to reconstituted election analyses), and files related to precinct names, precinct lines, split precincts, partisan indexes, population shifts, population deviations, voter registration, Spanish Surname Voter Registration, voter affiliation, Spanish Surname Voter Turnout, or changing census geography;

d. The pairing of any incumbents in any such redistricting proposal;

e. Any redistricting amendment, whether partial or total, to each such proposal;

f. Negotiations regarding any redistricting proposal; and

g. all calculations, reports, audits, estimates, projections, or other analyses, from any source, relating to the effect or impact, of any kind—including on (1) Texas minority voters, (2) existing or emerging minority opportunity districts, or (3) voter turnout (including Spanish

Surname Voter Turnout)—that could result from the implementation of any such redistricting proposal.

**Response**. Mr. Davila objects to this request because it calls for the production of documents that are subject to legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. In particular, requesting analyses "from any source" is likely to encompass documents that are protected by legislative privilege. Requesting "the origination(s)" and "the impetus, rationale, background, or motivation" of certain legislative proposals would impermissibly expose thought processes and mental impressions, which are also subject to legislative privilege. Requesting analyses that were "considered by" the Legislature, "draft in the development or revision of" redistricting proposals, "negotiations" and "calculations, reports, audits, estimates, projections, or other analyses" would be subject to legislative privilege for the same reason.

Mr. Davila further objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request generally seeks shapefiles, data sets, reconstituted election analyses, amendments, information concerning the pairing of incumbents, and other general information, Mr. Davila directs DOJ to the Texas Legislative Council's Capitol Data Portal, https://data.capitol.texas.gov/organization/tlc, where such information may be found. Insofar as the request seeks such information specifically considered by Mr. Davila, the request calls for information subject to the legislative privilege.

Lastly, insofar as the request seeks legal analysis concerning the "effect or impact" of redistricting proposals on "minority voters," "existing or emerging minority opportunity districts," or "voter turnout," it seeks information that may be subject to the attorney-client privilege or constitute attorney work product.

Mr. Davila is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable response deadline of March 7, 2022, to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 2**. All documents relating to the redistricting process for the Texas House or the Texas delegation to the U.S. House of Representatives, including but not limited to planning, timing, hearings, outreach, publicity, public or expert participation, deadlines, limitations, staffing, and persons or entities involved.

**Response**. Mr. Davila objects to this request because it calls for documents that are subject to the legislative privilege. The request seeks documents relating to the "planning" and "timing" of the redistricting process. These go to mental impressions and legislative strategy, which are at the core of the legislative privilege. Mr. Davila objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Mr. Davila also objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request seeks information on the attendance and date of hearings, and persons and entities involves, such information may be found at the Texas Senate and Texas House of Representatives websites, as well as on the Texas Legislature Online ("TLO") website. *See* https://senate.texas.gov/index.php (Senate); https://house. texas.gov/ (House); https://capitol.texas.gov/Home.aspx (TLO).

Mr. Davila is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable response deadline of March 7, 2022, to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 3**. All documents relating to voting patterns in Texas elections with respect to race, ethnicity, or language minority status, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Insofar as this request asks for calculations, reports, audits, estimates, projections, or other analyses used as part of the redistricting process, Mr. Davila objects on the basis that such a request calls for documents that are subject to the legislative privilege. Documents used for the purpose of formulating legislation are at the core of the legislative privilege. Mr. Davila objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Mr. Davila also objects to this request because it is facially overbroad. It calls for "all" documents relating to voting patterns, without any temporal limitation (other than the one included in the instructions) or further specification. For this reason, documents relating to voting patterns in Texas may well be irrelevant to the United States' claims—which are limited to several districts in the Texas House of Representatives map and Congressional map.

Mr. Davila is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable response deadline of March 7, 2022, to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 4**. All documents relating to whether House Bill 1, Senate Bill 6, or any other redistricting proposal drawn, discussed, or considered with respect to the Texas House or the Texas delegation to the U.S. House of Representatives complies with the Voting Rights Act, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Mr. Davila objects to this request because, by its very nature, it calls for documents that are subject to the attorney-client privilege, the legislative privilege, and constitute attorney work product. Legal analysis concerning whether HB1, SB6, or other related redistricting bills comply with the VRA will necessarily implicate these privileges. Further, communications between legislators and their staffs are privileged communications covered by the legislative privilege.

Mr. Davila is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 5**. All documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives exchanged between, among, with, or within the Office of the Governor, the Office of Mr. Davila, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate to represent Texas in the U.S. House of Representatives, any candidate for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any local elected official in Texas, any consultant, any expert, any law firm or attorney, any vendor, any other political or community group or organization, or any member of the public.

**Response**. Mr. Davila objects to this request because it is overbroad. The request calls for "all documents relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to documents that are irrelevant to the United States' claims in this case.

Mr. Davila also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of Mr. Davila, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

Mr. Davila also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to redistricting exchanged between Mr. Davila and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Mr. Davila is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable response deadline of March 7, 2022, to the extent they are not withheld based upon any of the foregoing privileges or objections. Should

responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 6**. All other documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives from July 1, 2021, to the present, including but not limited to redistricting criteria, public statements, correspondence, calendar invitations, scheduling emails, meeting minutes, agendas, attendance sheets, call logs, notes, presentations, studies, advocacy, letters, or other communications.

**Response**. Mr. Davila objects to this request because it is overbroad. The request calls for "all documents relating redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to make documents that are irrelevant to the United States' claims in this case.

Mr. Davila also objects to this request because it calls for documents that are subject to the legislative privilege. Among others, documents concerning "presentations," "redistricting criteria," and "meeting minutes" go to Mr. Davila's mental impressions and motivations concerning pending legislation, which is clearly covered by the privilege. Of course, communications and deliberations by legislators and their staff about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991).

Mr. Davila is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable response deadline of March 7, 2022, to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 7**. All documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes, race, ethnicity, language minority status, or United States citizenship that were exchanged between, among, with, or within the Office of the Governor, the Office of Mr. Davila, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate for the Texas House, any candidate to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any consultant, any expert, any law firm or attorney, any vendor, any group or organization, or any member of the public.

**Response**. Mr. Davila objects to this request because it is overbroad. The request calls for "all documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes," without any qualifications (other than the listed recipients).

That is an extremely broad request, and will likely apply to make documents that are irrelevant to the United States' claims in this case.

Mr. Davila also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators and their staff, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of Mr. Davila, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

Mr. Davila also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to demographic enumerations or estimates exchanged between Mr. Davila and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Mr. Davila objects on the basis that much the information sought by this request may be made publicly available by the U.S. Census Bureau and the Texas Demographic Center.

Mr. Davila is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable response deadline of March 7, 2022, to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 8**. All documents relating to payment for services; agreements of representation, consultation, employment, services, confidentiality, or common interest; or any other type of contract relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives that include any of the following individuals or entities: Adam Foltz, Akin Gump Strauss Hauer & Feld LLP, Michael Best Strategies, any consultant, any political operative, any expert, the Office of the Texas Attorney General, any other law firm, any other attorney, any other vendor, or any other person or entity.

**Response**. Mr. Davila objects to this request because it is overbroad and harassing. Although it appears to be bounded by specific persons and entities, the end of the request provides that the request applies to "any other attorney," "any other vendor," or "any other person or entity." The net effect is that the initial limitations are swallowed by the sheer breadth of a request that asks for "all documents" that "[relate] to redistricting" and that include "any other person or entity." Accordingly, this request is overly broad and conducting a search of this scope and breadth without any reasonable limitation is disproportionate to the needs of this case. Further, Mr. Davila is not a party to this litigation, and should not be required to produce, for example, "all documents" that "[relate] to redistricting" that include "any political operative." Such a facially overbroad requests create an undue burden. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

10

In addition, Mr. Davila objects to this request because it calls for documents that are subject to the legislative privilege and the attorney-client privilege. Documents relating to services provided by third parties for a legislative purpose are subject to the legislative privilege. *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)). And documents relating to Mr. Davila and any legal representation, by the Office of the Texas Attorney General or otherwise, is subject to the attorney-client privilege.

Mr. Davila also objects on the basis that this request does not contend an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any contracts or other agreements entered into after the filing of this complaint would necessarily be irrelevant.

Mr. Davila is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable response deadline of March 7, 2022, to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 9**. All non-privileged documents relating to the instant lawsuit or preceding investigation of Texas by the U.S. Department of Justice.

**Response**. Mr. Davila objects to this request because it is overbroad. It is unclear from the face of this request why "all documents relating" to this lawsuit or the United States' preceding investigation would be relevant to the United States' claims. And insofar as these documents relate to the United States' investigation, these are documents that are more likely to be within the care, custody, or control of the United States. If such materials are more commonly held by others, including state and local law enforcement agencies, production should be requested from them rather than from an individual legislator. Given the availability of these documents from other sources, the burden of requiring Mr. Davila to collect them far exceeds any benefit that might result. *See Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (stating that courts should "consider what information is available to the requesting party from other sources" when analyzing "the benefit side of the ledger").

Mr. Davila also objects on the basis that this request does not contend an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any documents originating after the filing of this complaint would necessarily be irrelevant.

Mr. Davila is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable response deadline of March 7, 2022, to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS *et al.*, | § § § | |
| *Plaintiffs,* | § § | Case No. 3:21-cv-259-DCG-JES-JVB (Consolidated Cases) |
| v. | § § | |
| GREG ABBOTT, *et al.*, | § § | |
| *Defendants.* | § § | |

---

**REPRESENTATIVE GEANIE W. MORRISON'S OBJECTIONS AND RESPONSES TO
THE UNITED STATES' SUBPOENA FOR DOCUMENTS AND RECORDS**

TO:  Michelle Rupp, U.S. Department of Justice, Civil Rights Division, Voting Section, 950 Pennsylvania Ave. NW, 4CON 8th Floor, Washington, D.C. 20530 Email: michelle.rupp@usdoj.gov   Phone: 202-305-0565

Pursuant to the Federal Rules of Civil Procedure, Representative Geanie W. Morrison hereby serves Objections and Responses to the United States' Subpoena for Documents and Records.

Date: February 18, 2022

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
Tex. State Bar No. 24088531

ERIC A. HUDSON
Senior Special Counsel
Tex. Bar No. 24059977

KATHLEEN T. HUNKER
Special Counsel
Tex. State Bar No. 24118415

LEIF A. OLSON
Special Counsel

1

Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
Tex. State Bar No. 24064380

JACK B. DISORBO
Assistant Attorney General
Tex. State Bar No. 24120804

Office of the Attorney General
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov

**Counsel for Representative Geanie W. Morrison**

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2022, the attached Objections and Responses to the United States' Subpoena for Documents and Records was served on opposing counsel via electronic mail.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation

2

## OBJECTIONS RELEVANT TO EACH REQUEST

Representative Morrison asserts that each of the following objections applies specifically to each request below. In the interest of brevity, these objections are offered here to avoid unnecessary repetition of objections to definitions, scope, and similar issues that afflict each request. These objections are as follows:

There is currently no protective order in place between the United States Department of Justice ("DOJ") and Representative Morrison. To the extent that documents may be identified that are discoverable but require additional protections to prevent public disclosure, any such documents that are identified will be withheld and described in the responses, with the clarification that such production will first require entry of a protective order before the documents may be disclosed.

The Federal Rules provide that the "attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). While nonparty subpoenas are governed by Rule 45, they are also subject to the parameters established by Rule 26. *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 607 (W.D. Tex. 2019) ("As with any other forms of discovery, the scope of discovery through a Rule 45 subpoena is governed by Rule 26(b)."). Therefore, the discovery sought here is still limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The twin demands for relevancy and proportionality "are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Thus, if the information sought is irrelevant to the party's claims or defenses, "it is not necessary to determine whether it would be proportional if it *were* relevant." *Walker v. Pioneer Prod. Servs., Inc.*, No. CV 15-0645, 2016 WL 1244510, at *3 (E.D. La. Mar. 30, 2016). Conversely, "relevance alone does not translate into automatic discoverability" because "[a]n assessment of proportionality is essential." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Accordingly, Representative Morrison objects to these requests to the extent that the information sought is irrelevant or disproportionate.

Given Representative Morrison's role as a member of the Texas House Representative, and that the requested production directly relates to legislative activities, much of the requested production is subject to legislative privilege. That privilege traces its roots to before the founding of the Republic, as it has "taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries." *Tenney v. Brandhove*, 341 U.S. 372 (1951). The privilege protects not only legislators, but their staff and aides as well. *See Gravel v. United States*, 408 U.S. 606, 615-16 (1972). Here, DOJ's attempt to compel disclosure of Representative Morrison's "thought processes or the communications [she] had with other legislators" falls squarely within the well-established contours of legislative privilege. *Perez v. Abbott*, No. 5:11-cv-360, 2014 WL 3495414 (W.D. Tex. July 11, 2014). Additional privileges, including but not limited to, attorney-client privilege, the attorney work product doctrine, and deliberative process may also be implicated by DOJ's requests, and Representative Morrison anticipates asserting all applicable privileges implicated by the DOJ's requests. To the extent that documents responsive to DOJ's requests, Representative Morrison anticipates withholding the materials, preparing a log that complies with the Federal Rules of Civil Procedure, and producing that log within a reasonable time.

The inadvertent production or disclosure of any privileged documents or information shall not constitute or be deemed to be a waiver of any applicable privilege with respect to such document

or information (or the contents or subject matter thereof) or with respect to any other such document or discovery now or hereafter requested or provided. Representative Morrison reserves the right not to produce documents that are in part protected by privilege, except on a redacted basis, and to require the return of any document (and all copies thereof) inadvertently produced. Representative Morrison likewise does not waive the right to object, on any and all grounds, to (1) the evidentiary use of documents produced in response to these requests; and (2) discovery requests relating to those documents.

A portion of the requested production is also irrelevant to DOJ's claims and is thus identified individually below. But a much larger portion of the request is not proportional to the needs of the case. The proportionality language was inserted into Rule 26(b) in 2015 "to emphasize the need for proportionality," *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017), and "highlight[] its significance," *Mannina v. D.C.*, 334 F.R.D. 336, 339 n.4 (D.D.C. 2020); *see also* Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States,[1] ("Rule 26(b)(1) crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality[.]"). As the Advisory Committee explained, this addition of overt "proportional" language was meant to better reflect the intent of the 1983 amendments, which were designed "to deal with the problem of over-discovery." Fed. R. Civ. P. 26(b) advisory committee's note (2015) (quoting the 1983 advisory notes). However, this "clear focus of the 1983 provisions may have been softened, although inadvertently, by the amendments made in 1993." *Id.* Thus, the 2015 amendment sought to "restore[] the proportionality factors to their original place in defining the scope of discovery" and reinforce the parties' obligation "to consider these factors in making discovery requests, responses, or objections." *Id.* As fully restored, the proportionality requirement "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 672 (2019). Accordingly, Representative Morrison objects to the DOJ's subpoena to the extent that it falls short of this more stringent proportionality standard.

These responses and objections are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information or documents requested. All answers are given without prejudice to Representative Morrison's right to object to the discovery of any documents, facts, or information discovered after the date hereof. Likewise, these responses and objections are not intended to be, and shall not be construed as, agreement with the DOJ's characterization of any facts, circumstances, or legal obligations. Representative Morrison reserves the right to contest any such characterization as inaccurate and object to the Requests insofar as they contain any express or implied assumptions of fact or law concerning matters at issue in this litigation.

Representative Morrison will provide responses based on terms as they are commonly understood and consistent with the Federal Rules of Civil Procedure. Representative Morrison objects to and will refrain from extending or modifying any words employed in the Requests to comport with any expanded definitions or instructions. Representative Morrison will answer the Requests to the extent required by the Federal Rules of Civil Procedure and the Local Rules of the Western District of Texas.

---

[1] https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Representative Morrison objects to the definition of "document" to the extent that it calls for documents protected from disclosure by legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or any other applicable privilege.

Representative Morrison objects to the definitions of "Legislator," "Member of the U.S. House of Representatives," "individual person," "entity," and "organization," *see* ¶¶ 2–3, 9–10 because they are overbroad and inaccurate. They improperly group all persons and entities having any relation to a particular person or entity, when in fact the particular person or entity is independent of those related persons or entities. The Representative objects to the implied application to any related persons or entities without specific enumeration.

Representative Morrison further objects to the time period in Instruction 21, which defines the relevant time period for these responses as beginning on January 1, 2019. The claims and issues in this litigation pertain to redistricted maps that were drawn based upon data received from the United States Census Bureau in the late summer of 2021 and finalized in the fall of 2021. Accordingly, it is unreasonable and disproportionate to the needs of this case to look back to January of 2019 for documents responsive to these requests.

## RESPONSES

**Document Request 1**. All documents relating to any redistricting proposal for the Texas delegation to the U.S. House of Representatives or the Texas House, including but not limited to House Bill 1, Senate Bill 6, and any other Congressional or House redistricting proposal drawn, discussed, or considered. This request includes but is not limited to:

a.  The origination(s) or source(s) of any such redistricting proposal;

b.  The impetus, rationale, background, or motivation for any such redistricting proposal;

c.  All drafts in the development or revision of any such redistricting proposal, including but not limited to shapefiles, files or datasets used in mapping software, each RED report, each PAR report, demographic data (including but not limited to Citizen Voting Age Population, herpanic Citizen Voting Age Population, Black Citizen Voting Age Population, Voting Age Population, herpanic Voting Age Population, and Black Voting Age Population), election data (including but not limited to reconstituted election analyses), and files related to precinct names, precinct lines, split precincts, partisan indexes, population shifts, population deviations, voter registration, Spanish Surname Voter Registration, voter affiliation, Spanish Surname Voter Turnout, or changing census geography;

d.  The pairing of any incumbents in any such redistricting proposal;

e.  Any redistricting amendment, whether partial or total, to each such proposal;

f.  Negotiations regarding any redistricting proposal; and

g.  all calculations, reports, audits, estimates, projections, or other analyses, from any source, relating to the effect or impact, of any kind—including on (1) Texas minority voters, (2) existing or emerging minority opportunity districts, or (3) voter turnout (including Spanish

Surname Voter Turnout)—that could result from the implementation of any such redistricting proposal.

**Response**. Representative Morrison objects to this request because it calls for the production of documents that are subject to legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. In particular, requesting analyses "from any source" is likely to encompass documents that are protected by legislative privilege. Requesting "the origination(s)" and "the impetus, rationale, background, or motivation" of certain legislative proposals would impermissibly expose thought processes and mental impressions, which are also subject to legislative privilege. Requesting analyses that were "considered by" the Legislature, "draft in the development or revision of" redistricting proposals, "negotiations" and "calculations, reports, audits, estimates, projections, or other analyses" would be subject to legislative privilege for the same reason.

Representative Morrison further objects to this request because it asks her to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request generally seeks shapefiles, data sets, reconstituted election analyses, amendments, information concerning the pairing of incumbents, and other general information, the Representative directs DOJ to the Texas Legislative Council's Capitol Data Portal, https://data.capitol.texas.gov/organization/tlc, where such information may be found. Insofar as the request seeks such information specifically considered by Representative Morrison, the request calls for information subject to the legislative privilege.

Lastly, insofar as the request seeks legal analysis concerning the "effect or impact" of redistricting proposals on "minority voters," "existing or emerging minority opportunity districts," or "voter turnout," it seeks information that may be subject to the attorney-client privilege or constitute attorney work product.

Representative Morrison is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 2**. All documents relating to the redistricting process for the Texas House or the Texas delegation to the U.S. House of Representatives, including but not limited to planning, timing, hearings, outreach, publicity, public or expert participation, deadlines, limitations, staffing, and persons or entities involved.

**Response**. Representative Morrison objects to this request because it calls for documents that are subject to the legislative privilege. The request seeks documents relating to the "planning" and "timing" of the redistricting process. These go to mental impressions and legislative strategy, which are at the core of the legislative privilege. Representative Morrison objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Representative Morrison also objects to this request because it asks her to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request seeks information on the attendance and date of hearings, and persons and entities involves, such information may be found at the Texas Senate and Texas House of Representatives websites, as well as on the Texas Legislature Online ("TLO") website. *See* https://senate.texas.gov/index.php (Senate); https://house.texas.gov/ (House); https://capitol.texas.gov/Home.aspx (TLO).

Representative Morrison is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 3**. All documents relating to voting patterns in Texas elections with respect to race, ethnicity, or language minority status, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Insofar as this request asks for calculations, reports, audits, estimates, projections, or other analyses used as part of the redistricting process, the Representative objects on the basis that such a request calls for documents that are subject to the legislative privilege. Documents used for the purpose of formulating legislation are at the core of the legislative privilege. Representative Morrison objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

The Representative also objects to this request because it is facially overbroad. It calls for "all" documents relating to voting patterns, without any temporal limitation (other than the one included in the instructions) or further specification. For this reason, documents relating to voting patterns in Texas may well be irrelevant to the United States' claims—which are limited to several districts in the Texas House of Representatives map and Congressional map.

Representative Morrison is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 4**. All documents relating to whether House Bill 1, Senate Bill 6, or any other redistricting proposal drawn, discussed, or considered with respect to the Texas House or the Texas delegation to the U.S. House of Representatives complies with the Voting Rights Act, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. The Representative objects to this request because, by its very nature, it calls for documents that are subject to the attorney-client privilege, the legislative privilege, and constitute attorney work product. Legal analysis concerning whether HB1, SB6, or other related redistricting bills

comply with the VRA will necessarily implicate these privileges. Further, communications between legislators and their staffs are privileged communications covered by the legislative privilege.

Representative Morrison is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 5**. All documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives exchanged between, among, with, or within the Office of the Governor, the Office of the Representative, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate to represent Texas in the U.S. House of Representatives, any candidate for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any local elected official in Texas, any consultant, any expert, any law firm or attorney, any vendor, any other political or community group or organization, or any member of the public.

**Response**. The Representative objects to this request because it is overbroad. The request calls for "all documents relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to documents that are irrelevant to the United States' claims in this case.

Representative Morrison also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of the Representative, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

The Representative also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to redistricting exchanged between the Representative and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Representative Morrison is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 6**. All other documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives from July 1, 2021, to the present, including but not limited to redistricting criteria, public statements, correspondence, calendar invitations, scheduling emails, meeting minutes, agendas, attendance sheets, call logs, notes, presentations, studies, advocacy, letters, or other communications.

**Response**. The Representative objects to this request because it is overbroad. The request calls for "all documents relating redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to make documents that are irrelevant to the United States' claims in this case.

The Representative also objects to this request because it calls for documents that are subject to the legislative privilege. Among others, documents concerning "presentations," "redistricting criteria," and "meeting minutes" go to the Representative's mental impressions and motivations concerning pending legislation, which is clearly covered by the privilege. Of course, communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991).

Representative Morrison is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 7**. All documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes, race, ethnicity, language minority status, or United States citizenship that were exchanged between, among, with, or within the Office of the Governor, the Office of the Representative, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate for the Texas House, any candidate to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist,

any political activist or operative, any other governmental entity, any consultant, any expert, any law firm or attorney, any vendor, any group or organization, or any member of the public.

**Response**. The Representative objects to this request because it is overbroad. The request calls for "all documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes," without any qualifications (other than the listed recipients). That is an extremely broad request, and will likely apply to make documents that are irrelevant to the United States' claims in this case.

Representative Morrison also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of the Representative, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

The Representative also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to demographic enumerations or estimates exchanged between the Representative and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

The Representative objects on the basis that much the information sought by this request may be made publicly available by the U.S. Census Bureau and the Texas Demographic Center.

Representative Morrison is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 8**. All documents relating to payment for services; agreements of representation, consultation, employment, services, confidentiality, or common interest; or any other type of contract relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives that include any of the following individuals or entities: Adam Foltz, Akin Gump Strauss Hauer & Feld LLP, Michael Best Strategies, any consultant, any political operative, any expert, the Office of the Texas Attorney General, any other law firm, any other attorney, any other vendor, or any other person or entity.

**Response**. The Representative objects to this request because it is overbroad and harassing. Although it appears to be bounded by specific persons and entities, the end of the request provides that the request applies to "any other attorney," "any other vendor," or "any other person or entity." The net effect is that the initial limitations are swallowed by the sheer breadth of a request that asks for "all

documents" that "[relate] to redistricting" and that include "any other person or entity." Accordingly, this request is overly broad and conducting a search of this scope and breadth without any reasonable limitation is disproportionate to the needs of this case. Further, Representative Morrison is not a party to this litigation, and should not be required to produce, for example, "all documents" that "[relate] to redistricting" that include "any political operative." Such a facially overbroad requests create an undue burden. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

In addition, Representative Morrison objects to this request because it calls for documents that are subject to the legislative privilege and the attorney-client privilege. Documents relating to services provided by third parties for a legislative purpose are subject to the legislative privilege. *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)). And documents relating to the Representative and any legal representation, by the Office of the Texas Attorney General or otherwise, is subject to the attorney-client privilege.

The Representative also objects on the basis that this request does not contend an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any contracts or other agreements entered into after the filing of this complaint would necessarily be irrelevant.

Representative Morrison is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 9**. All non-privileged documents relating to the instant lawsuit or preceding investigation of Texas by the U.S. Department of Justice.

**Response**. The Representative objects to this request because it is overbroad. It is unclear from the face of this request why "all documents relating" to this lawsuit or the United States' preceding investigation would be relevant to the United States' claims. And insofar as these documents relate to the United States' investigation, these are documents that are more likely to be within the care, custody, or control of the United States. If such materials are more commonly held by others, including state and local law enforcement agencies, production should be requested from them rather than from an individual legislator. Given the availability of these documents from other sources, the burden of requiring the Representative to collect them far exceeds any benefit that might result. *See Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (stating that courts should "consider what information is available to the requesting party from other sources" when analyzing "the benefit side of the ledger").

The Representative also objects on the basis that this request does not contend an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any documents originating after the filing of this complaint would necessarily be irrelevant.

Representative Morrison is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified

pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS *et al.*, | § § § | |
| *Plaintiffs*, | § § | Case No. 3:21-cv-259-DCG-JES-JVB |
| v. | § § | (Consolidated Cases) |
| GREG ABBOTT, *et al.*, | § § | |
| *Defendants.* | § § | |

## REPRESENTATIVE JOHN LUJAN'S OBJECTIONS AND RESPONSES TO THE UNITED STATES' SUBPOENA FOR DOCUMENTS AND RECORDS

TO:  Michelle Rupp, U.S. Department of Justice, Civil Rights Division, Voting Section, 950 Pennsylvania Ave. NW, 4CON 8th Floor, Washington, D.C. 20530    Email: michelle.rupp@usdoj.gov   Phone: 202-305-0565

Pursuant to the Federal Rules of Civil Procedure, Representative John Lujan hereby serves Objections and Responses to the United States' Subpoena for Documents and Records.

Date: February 18, 2022

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Respectfully submitted.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
Tex. State Bar No. 24088531

ERIC A. HUDSON
Senior Special Counsel
Tex. Bar No. 24059977

KATHLEEN T. HUNKER
Special Counsel
Tex. State Bar No. 24118415

LEIF A. OLSON
Special Counsel

1

Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
Tex. State Bar No. 24064380

JACK B. DISORBO
Assistant Attorney General
Tex. State Bar No. 24120804

Office of the Attorney General
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov

**Counsel for Representative John Lujan**

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2022, the attached Objections and Responses to the United States' Subpoena for Documents and Records was served on opposing counsel via electronic mail.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation

2

## OBJECTIONS RELEVANT TO EACH REQUEST

Representative Lujan asserts that each of the following objections applies specifically to each request below. In the interest of brevity, these objections are offered here to avoid unnecessary repetition of objections to definitions, scope, and similar issues that afflict each request. These objections are as follows:

There is currently no protective order in place between the United States Department of Justice ("DOJ") and Representative Lujan. To the extent that documents may be identified that are discoverable but require additional protections to prevent public disclosure, any such documents that are identified will be withheld and described in the responses, with the clarification that such production will first require entry of a protective order before the documents may be disclosed.

The Federal Rules provide that the "attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). While nonparty subpoenas are governed by Rule 45, they are also subject to the parameters established by Rule 26. *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 607 (W.D. Tex. 2019) ("As with any other forms of discovery, the scope of discovery through a Rule 45 subpoena is governed by Rule 26(b)."). Therefore, the discovery sought here is still limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The twin demands for relevancy and proportionality "are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Thus, if the information sought is irrelevant to the party's claims or defenses, "it is not necessary to determine whether it would be proportional if it *were* relevant." *Walker v. Pioneer Prod. Servs., Inc.*, No. CV 15-0645, 2016 WL 1244510, at *3 (E.D. La. Mar. 30, 2016). Conversely, "relevance alone does not translate into automatic discoverability" because "[a]n assessment of proportionality is essential." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Accordingly, Representative Lujan objects to these requests to the extent that the information sought is irrelevant or disproportionate.

Given Representative Lujan's role as a member of the Texas House Representative, and that the requested production directly relates to legislative activities, much of the requested production is subject to legislative privilege. That privilege traces its roots to before the founding of the Republic, as it has "taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries." *Tenney v. Brandhove*, 341 U.S. 372 (1951). The privilege protects not only legislators, but their staff and aides as well. *See Gravel v. United States*, 408 U.S. 606, 615-16 (1972). Here, DOJ's attempt to compel disclosure of Representative Lujan's "thought processes or the communications [he] had with other legislators" falls squarely within the well-established contours of legislative privilege. *Perez v. Abbott*, No. 5:11-cv-360, 2014 WL 3495414 (W.D. Tex. July 11, 2014). Additional privileges, including but not limited to, attorney-client privilege, the attorney work product doctrine, and deliberative process may also be implicated by DOJ's requests, and Representative Lujan anticipates asserting all applicable privileges implicated by the DOJ's requests. To the extent that documents responsive to DOJ's requests, Representative Lujan anticipates withholding the materials, preparing a log that complies with the Federal Rules of Civil Procedure, and producing that log within a reasonable time.

The inadvertent production or disclosure of any privileged documents or information shall not constitute or be deemed to be a waiver of any applicable privilege with respect to such document

or information (or the contents or subject matter thereof) or with respect to any other such document or discovery now or hereafter requested or provided. Representative Lujan reserves the right not to produce documents that are in part protected by privilege, except on a redacted basis, and to require the return of any document (and all copies thereof) inadvertently produced. Representative Lujan likewise does not waive the right to object, on any and all grounds, to (1) the evidentiary use of documents produced in response to these requests; and (2) discovery requests relating to those documents.

A portion of the requested production is also irrelevant to DOJ's claims and is thus identified individually below. But a much larger portion of the request is not proportional to the needs of the case. The proportionality language was inserted into Rule 26(b) in 2015 "to emphasize the need for proportionality," *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017), and "highlight[] its significance," *Mannina v. D.C.*, 334 F.R.D. 336, 339 n.4 (D.D.C. 2020); *see also* Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States,[1] ("Rule 26(b)(1) crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality[.]"). As the Advisory Committee explained, this addition of overt "proportional" language was meant to better reflect the intent of the 1983 amendments, which were designed "to deal with the problem of over-discovery." Fed. R. Civ. P. 26(b) advisory committee's note (2015) (quoting the 1983 advisory notes). However, this "clear focus of the 1983 provisions may have been softened, although inadvertently, by the amendments made in 1993." *Id.* Thus, the 2015 amendment sought to "restore[] the proportionality factors to their original place in defining the scope of discovery" and reinforce the parties' obligation "to consider these factors in making discovery requests, responses, or objections." *Id.* As fully restored, the proportionality requirement "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 672 (2019). Accordingly, Representative Lujan objects to the DOJ's subpoena to the extent that it falls short of this more stringent proportionality standard.

These responses and objections are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information or documents requested. All answers are given without prejudice to Representative Lujan's right to object to the discovery of any documents, facts, or information discovered after the date hereof. Likewise, these responses and objections are not intended to be, and shall not be construed as, agreement with the DOJ's characterization of any facts, circumstances, or legal obligations. Representative Lujan reserves the right to contest any such characterization as inaccurate and object to the Requests insofar as they contain any express or implied assumptions of fact or law concerning matters at issue in this litigation.

Representative Lujan will provide responses based on terms as they are commonly understood and consistent with the Federal Rules of Civil Procedure. Representative Lujan objects to and will refrain from extending or modifying any words employed in the Requests to comport with any expanded definitions or instructions. Representative Lujan will answer the Requests to the extent required by the Federal Rules of Civil Procedure and the Local Rules of the Western District of Texas.

---

[1] https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Representative Lujan objects to the definition of "document" to the extent that it calls for documents protected from disclosure by legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or any other applicable privilege.

Representative Lujan objects to the definitions of "Legislator," "Member of the U.S. House of Representatives," "individual person," "entity," and "organization," *see* ¶¶ 2–3, 9–10 because they are overbroad and inaccurate. They improperly group all persons and entities having any relation to a particular person or entity, when in fact the particular person or entity is independent of those related persons or entities. The Representative objects to the implied application to any related persons or entities without specific enumeration.

Representative Lujan further objects to the time period in Instruction 21, which defines the relevant time period for these responses as beginning on January 1, 2019. The claims and issues in this litigation pertain to redistricted maps that were drawn based upon data received from the United States Census Bureau in the late summer of 2021 and finalized in the fall of 2021. Accordingly, it is unreasonable and disproportionate to the needs of this case to look back to January of 2019 for documents responsive to these requests.

## RESPONSES

**Document Request 1**. All documents relating to any redistricting proposal for the Texas delegation to the U.S. House of Representatives or the Texas House, including but not limited to House Bill 1, Senate Bill 6, and any other Congressional or House redistricting proposal drawn, discussed, or considered. This request includes but is not limited to:

a. The origination(s) or source(s) of any such redistricting proposal;

b. The impetus, rationale, background, or motivation for any such redistricting proposal;

c. All drafts in the development or revision of any such redistricting proposal, including but not limited to shapefiles, files or datasets used in mapping software, each RED report, each PAR report, demographic data (including but not limited to Citizen Voting Age Population, herpanic Citizen Voting Age Population, Black Citizen Voting Age Population, Voting Age Population, herpanic Voting Age Population, and Black Voting Age Population), election data (including but not limited to reconstituted election analyses), and files related to precinct names, precinct lines, split precincts, partisan indexes, population shifts, population deviations, voter registration, Spanish Surname Voter Registration, voter affiliation, Spanish Surname Voter Turnout, or changing census geography;

d. The pairing of any incumbents in any such redistricting proposal;

e. Any redistricting amendment, whether partial or total, to each such proposal;

f. Negotiations regarding any redistricting proposal; and

g. all calculations, reports, audits, estimates, projections, or other analyses, from any source, relating to the effect or impact, of any kind—including on (1) Texas minority voters, (2) existing or emerging minority opportunity districts, or (3) voter turnout (including Spanish

Surname Voter Turnout)—that could result from the implementation of any such redistricting proposal.

**Response**. Representative Lujan objects to this request because it calls for the production of documents that are subject to legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. In particular, requesting analyses "from any source" is likely to encompass documents that are protected by legislative privilege. Requesting "the origination(s)" and "the impetus, rationale, background, or motivation" of certain legislative proposals would impermissibly expose thought processes and mental impressions, which are also subject to legislative privilege. Requesting analyses that were "considered by" the Legislature, "draft in the development or revision of" redistricting proposals, "negotiations" and "calculations, reports, audits, estimates, projections, or other analyses" would be subject to legislative privilege for the same reason.

Representative Lujan further objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request generally seeks shapefiles, data sets, reconstituted election analyses, amendments, information concerning the pairing of incumbents, and other general information, the Representative directs DOJ to the Texas Legislative Council's Capitol Data Portal, https://data.capitol.texas.gov/organization/tlc, where such information may be found. Insofar as the request seeks such information specifically considered by Representative Lujan, the request calls for information subject to the legislative privilege.

Lastly, insofar as the request seeks legal analysis concerning the "effect or impact" of redistricting proposals on "minority voters," "existing or emerging minority opportunity districts," or "voter turnout," it seeks information that may be subject to the attorney-client privilege or constitute attorney work product.

Representative Lujan is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 2**. All documents relating to the redistricting process for the Texas House or the Texas delegation to the U.S. House of Representatives, including but not limited to planning, timing, hearings, outreach, publicity, public or expert participation, deadlines, limitations, staffing, and persons or entities involved.

**Response**. Representative Lujan objects to this request because it calls for documents that are subject to the legislative privilege. The request seeks documents relating to the "planning" and "timing" of the redistricting process. These go to mental impressions and legislative strategy, which are at the core of the legislative privilege. Representative Lujan objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Representative Lujan also objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request seeks information on the attendance and date of hearings, and persons and entities involves, such information may be found at the Texas Senate and Texas House of Representatives websites, as well as on the Texas Legislature Online ("TLO") website. *See* https://senate.texas.gov/index.php (Senate); https://house.texas.gov/ (House); https://capitol.texas.gov/Home.aspx (TLO).

Representative Lujan is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 3**. All documents relating to voting patterns in Texas elections with respect to race, ethnicity, or language minority status, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Insofar as this request asks for calculations, reports, audits, estimates, projections, or other analyses used as part of the redistricting process, the Representative objects on the basis that such a request calls for documents that are subject to the legislative privilege. Documents used for the purpose of formulating legislation are at the core of the legislative privilege. Representative Lujan objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

The Representative also objects to this request because it is facially overbroad. It calls for "all" documents relating to voting patterns, without any temporal limitation (other than the one included in the instructions) or further specification. For this reason, documents relating to voting patterns in Texas may well be irrelevant to the United States' claims—which are limited to several districts in the Texas House of Representatives map and Congressional map.

Representative Lujan is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 4**. All documents relating to whether House Bill 1, Senate Bill 6, or any other redistricting proposal drawn, discussed, or considered with respect to the Texas House or the Texas delegation to the U.S. House of Representatives complies with the Voting Rights Act, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. The Representative objects to this request because, by its very nature, it calls for documents that are subject to the attorney-client privilege, the legislative privilege, and constitute attorney work product. Legal analysis concerning whether HB1, SB6, or other related redistricting bills

comply with the VRA will necessarily implicate these privileges. Further, communications between legislators and their staffs are privileged communications covered by the legislative privilege.

Representative Lujan is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 5**. All documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives exchanged between, among, with, or within the Office of the Governor, the Office of the Representative, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate to represent Texas in the U.S. House of Representatives, any candidate for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any local elected official in Texas, any consultant, any expert, any law firm or attorney, any vendor, any other political or community group or organization, or any member of the public.

**Response**. The Representative objects to this request because it is overbroad. The request calls for "all documents relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to documents that are irrelevant to the United States' claims in this case.

Representative Lujan also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of the Representative, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

The Representative also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to redistricting exchanged between the Representative and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Representative Lujan is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 6**. All other documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives from July 1, 2021, to the present, including but not limited to redistricting criteria, public statements, correspondence, calendar invitations, scheduling emails, meeting minutes, agendas, attendance sheets, call logs, notes, presentations, studies, advocacy, letters, or other communications.

**Response**. The Representative objects to this request because it is overbroad. The request calls for "all documents relating redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to make documents that are irrelevant to the United States' claims in this case.

The Representative also objects to this request because it calls for documents that are subject to the legislative privilege. Among others, documents concerning "presentations," "redistricting criteria," and "meeting minutes" go to the Representative's mental impressions and motivations concerning pending legislation, which is clearly covered by the privilege. Of course, communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991).

Representative Lujan is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 7**. All documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes, race, ethnicity, language minority status, or United States citizenship that were exchanged between, among, with, or within the Office of the Governor, the Office of the Representative, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate for the Texas House, any candidate to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist,

any political activist or operative, any other governmental entity, any consultant, any expert, any law firm or attorney, any vendor, any group or organization, or any member of the public.

**Response**. The Representative objects to this request because it is overbroad. The request calls for "all documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes," without any qualifications (other than the listed recipients). That is an extremely broad request, and will likely apply to make documents that are irrelevant to the United States' claims in this case.

Representative Lujan also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of the Representative, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

The Representative also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to demographic enumerations or estimates exchanged between the Representative and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

The Representative objects on the basis that much the information sought by this request may be made publicly available by the U.S. Census Bureau and the Texas Demographic Center.

Representative Lujan is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 8**. All documents relating to payment for services; agreements of representation, consultation, employment, services, confidentiality, or common interest; or any other type of contract relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives that include any of the following individuals or entities: Adam Foltz, Akin Gump Strauss Hauer & Feld LLP, Michael Best Strategies, any consultant, any political operative, any expert, the Office of the Texas Attorney General, any other law firm, any other attorney, any other vendor, or any other person or entity.

**Response**. The Representative objects to this request because it is overbroad and harassing. Although it appears to be bounded by specific persons and entities, the end of the request provides that the request applies to "any other attorney," "any other vendor," or "any other person or entity." The net effect is that the initial limitations are swallowed by the sheer breadth of a request that asks for "all

documents" that "[relate] to redistricting" and that include "any other person or entity." Accordingly, this request is overly broad and conducting a search of this scope and breadth without any reasonable limitation is disproportionate to the needs of this case. Further, Representative Lujan is not a party to this litigation, and should not be required to produce, for example, "all documents" that "[relate] to redistricting" that include "any political operative." Such a facially overbroad requests create an undue burden. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

In addition, Representative Lujan objects to this request because it calls for documents that are subject to the legislative privilege and the attorney-client privilege. Documents relating to services provided by third parties for a legislative purpose are subject to the legislative privilege. *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)). And documents relating to the Representative and any legal representation, by the Office of the Texas Attorney General or otherwise, is subject to the attorney-client privilege.

The Representative also objects on the basis that this request does not contend an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any contracts or other agreements entered into after the filing of this complaint would necessarily be irrelevant.

Representative Lujan is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 9**. All non-privileged documents relating to the instant lawsuit or preceding investigation of Texas by the U.S. Department of Justice.

**Response**. The Representative objects to this request because it is overbroad. It is unclear from the face of this request why "all documents relating" to this lawsuit or the United States' preceding investigation would be relevant to the United States' claims. And insofar as these documents relate to the United States' investigation, these are documents that are more likely to be within the care, custody, or control of the United States. If such materials are more commonly held by others, including state and local law enforcement agencies, production should be requested from them rather than from an individual legislator. Given the availability of these documents from other sources, the burden of requiring the Representative to collect them far exceeds any benefit that might result. *See Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (stating that courts should "consider what information is available to the requesting party from other sources" when analyzing "the benefit side of the ledger").

The Representative also objects on the basis that this request does not contend an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any documents originating after the filing of this complaint would necessarily be irrelevant.

Representative Lujan is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified

pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS *et al.*, | § § § | |
| *Plaintiffs*, | § § | Case No. 3:21-cv-259-DCG-JES-JVB (Consolidated Cases) |
| v. | § § | |
| GREG ABBOTT, *et al.*, | § § | |
| *Defendants*. | § § | |

**KOY KUNKEL'S OBJECTIONS AND RESPONSES TO
THE UNITED STATES' SUBPOENA FOR DOCUMENTS AND RECORDS**

TO:    Michelle Rupp, U.S. Department of Justice, Civil Rights Division, Voting Section, 950 Pennsylvania Ave. NW, 4CON 8th Floor, Washington, D.C.   20530        Email: michelle.rupp@usdoj.gov   Phone: 202-305-0565

Pursuant to the Federal Rules of Civil Procedure, Koy Kunkel hereby serves Objections and Responses to the United States' Subpoena for Documents and Records.

Date: February 18, 2022                    Respectfully submitted.

KEN PAXTON                                  */s/ Patrick K. Sweeten*
Attorney General of Texas                   PATRICK K. SWEETEN
                                            Deputy Attorney General for Special Litigation
BRENT WEBSTER                               Tex. State Bar No. 00798537
First Assistant Attorney General

                                            WILLIAM T. THOMPSON
                                            Deputy Chief, Special Litigation Unit
                                            Tex. State Bar No. 24088531

                                            ERIC A. HUDSON
                                            Senior Special Counsel
                                            Tex. Bar No. 24059977

                                            KATHLEEN T. HUNKER
                                            Special Counsel
                                            Tex. State Bar No. 24118415

                                            LEIF A. OLSON

1

Special Counsel
Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
Tex. State Bar No. 24064380

JACK B. DISORBO
Assistant Attorney General
Tex. State Bar No. 24120804

Office of the Attorney General
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov

**Counsel for Koy Kunkel**


## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2022, the attached Objections and Responses to the United States' Subpoena for Documents and Records was served on opposing counsel via electronic mail.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation

2

## OBJECTIONS RELEVANT TO EACH REQUEST

Mr. Kunkel asserts that each of the following objections applies specifically to each request below. In the interest of brevity, these objections are offered here to avoid unnecessary repetition of objections to definitions, scope, and similar issues that afflict each request. These objections are as follows:

There is currently no protective order in place between the United States Department of Justice ("DOJ") and Mr. Kunkel. To the extent that documents may be identified that are discoverable but require additional protections to prevent public disclosure, any such documents that are identified will be withheld and described in the responses, with the clarification that such production will first require entry of a protective order before the documents may be disclosed.

The Federal Rules provide that the "attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). While nonparty subpoenas are governed by Rule 45, they are also subject to the parameters established by Rule 26. *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 607 (W.D. Tex. 2019) ("As with any other forms of discovery, the scope of discovery through a Rule 45 subpoena is governed by Rule 26(b)."). Therefore, the discovery sought here is still limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The twin demands for relevancy and proportionality "are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Thus, if the information sought is irrelevant to the party's claims or defenses, "it is not necessary to determine whether it would be proportional if it *were* relevant." *Walker v. Pioneer Prod. Servs., Inc.*, No. CV 15-0645, 2016 WL 1244510, at *3 (E.D. La. Mar. 30, 2016). Conversely, "relevance alone does not translate into automatic discoverability" because "[a]n assessment of proportionality is essential." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Accordingly, Mr. Kunkel objects to these requests to the extent that the information sought is irrelevant or disproportionate.

Given Mr. Kunkel's former role as committee clerk of the Special Senate Redistricting Committee, and that the requested production directly relates to legislative activities, much of the requested production is subject to legislative privilege. That privilege traces its roots to before the founding of the Republic, as it has "taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries." *Tenney v. Brandhove*, 341 U.S. 372 (1951). The privilege protects not only legislators, but their staff and aides as well. *See Gravel v. United States*, 408 U.S. 606, 615-16 (1972). Here, DOJ's attempt to compel disclosure of Mr. Kunkel's "thought processes or the communications [he] had with other legislators" falls squarely within the well-established contours of legislative privilege. *Perez v. Abbott*, No. 5:11-cv-360, 2014 WL 3495414 (W.D. Tex. July 11, 2014). Additional privileges, including but not limited to, attorney-client privilege, the attorney work product doctrine, and deliberative process may also be implicated by DOJ's requests, and Mr. Kunkel anticipates asserting all applicable privileges implicated by the DOJ's requests. To the extent that documents responsive to DOJ's requests, Mr. Kunkel anticipates withholding the materials, preparing a log that complies with the Federal Rules of Civil Procedure, and producing that log within a reasonable time.

The inadvertent production or disclosure of any privileged documents or information shall not constitute or be deemed to be a waiver of any applicable privilege with respect to such document

or information (or the contents or subject matter thereof) or with respect to any other such document or discovery now or hereafter requested or provided. Mr. Kunkel reserves the right not to produce documents that are in part protected by privilege, except on a redacted basis, and to require the return of any document (and all copies thereof) inadvertently produced. Mr. Kunkel likewise does not waive the right to object, on any and all grounds, to (1) the evidentiary use of documents produced in response to these requests; and (2) discovery requests relating to those documents.

A portion of the requested production is also irrelevant to DOJ's claims and is thus identified individually below. But a much larger portion of the request is not proportional to the needs of the case. The proportionality language was inserted into Rule 26(b) in 2015 "to emphasize the need for proportionality," *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017), and "highlight[] its significance," *Mannina v. D.C.*, 334 F.R.D. 336, 339 n.4 (D.D.C. 2020); *see also* Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States,[1] ("Rule 26(b)(1) crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality[.]"). As the Advisory Committee explained, this addition of overt "proportional" language was meant to better reflect the intent of the 1983 amendments, which were designed "to deal with the problem of over-discovery." Fed. R. Civ. P. 26(b) advisory committee's note (2015) (quoting the 1983 advisory notes). However, this "clear focus of the 1983 provisions may have been softened, although inadvertently, by the amendments made in 1993." *Id.* Thus, the 2015 amendment sought to "restore[] the proportionality factors to their original place in defining the scope of discovery" and reinforce the parties' obligation "to consider these factors in making discovery requests, responses, or objections." *Id.* As fully restored, the proportionality requirement "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 672 (2019). Accordingly, Mr. Kunkel objects to the DOJ's subpoena to the extent that it falls short of this more stringent proportionality standard.

These responses and objections are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information or documents requested. All answers are given without prejudice to Mr. Kunkel's right to object to the discovery of any documents, facts, or information discovered after the date hereof. Likewise, these responses and objections are not intended to be, and shall not be construed as, agreement with the DOJ's characterization of any facts, circumstances, or legal obligations. Mr. Kunkel reserves the right to contest any such characterization as inaccurate and object to the Requests insofar as they contain any express or implied assumptions of fact or law concerning matters at issue in this litigation.

Mr. Kunkel will provide responses based on terms as they are commonly understood and consistent with the Federal Rules of Civil Procedure. Mr. Kunkel objects to and will refrain from extending or modifying any words employed in the Requests to comport with any expanded definitions or instructions. Mr. Kunkel will answer the Requests to the extent required by the Federal Rules of Civil Procedure and the Local Rules of the Western District of Texas.

---

[1] https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Mr. Kunkel objects to the definition of "document" to the extent that it calls for documents protected from disclosure by legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or any other applicable privilege.

Mr. Kunkel objects to the definitions of "Legislator," "Member of the U.S. House of Representatives," "individual person," "entity," and "organization," *see* ¶¶ 2–3, 9–10 because they are overbroad and inaccurate. They improperly group all persons and entities having any relation to a particular person or entity, when in fact the particular person or entity is independent of those related persons or entities. Mr. Kunkel objects to the implied application to any related persons or entities without specific enumeration.

Mr. Kunkel further objects to the time period in Instruction 21, which defines the relevant time period for these responses as beginning on January 1, 2019. The claims and issues in this litigation pertain to redistricted maps that were drawn based upon data received from the United States Census Bureau in the late summer of 2021 and finalized in the fall of 2021. Accordingly, it is unreasonable and disproportionate to the needs of this case to look back to January of 2019 for documents responsive to these requests.

## RESPONSES

**Document Request 1**. All documents relating to any redistricting proposal for the Texas delegation to the U.S. House of Representatives or the Texas House, including but not limited to House Bill 1, Senate Bill 6, and any other Congressional or House redistricting proposal drawn, discussed, or considered. This request includes but is not limited to:

a. The origination(s) or source(s) of any such redistricting proposal;

b. The impetus, rationale, background, or motivation for any such redistricting proposal;

c. All drafts in the development or revision of any such redistricting proposal, including but not limited to shapefiles, files or datasets used in mapping software, each RED report, each PAR report, demographic data (including but not limited to Citizen Voting Age Population, herpanic Citizen Voting Age Population, Black Citizen Voting Age Population, Voting Age Population, herpanic Voting Age Population, and Black Voting Age Population), election data (including but not limited to reconstituted election analyses), and files related to precinct names, precinct lines, split precincts, partisan indexes, population shifts, population deviations, voter registration, Spanish Surname Voter Registration, voter affiliation, Spanish Surname Voter Turnout, or changing census geography;

d. The pairing of any incumbents in any such redistricting proposal;

e. Any redistricting amendment, whether partial or total, to each such proposal;

f. Negotiations regarding any redistricting proposal; and

g. all calculations, reports, audits, estimates, projections, or other analyses, from any source, relating to the effect or impact, of any kind—including on (1) Texas minority voters, (2) existing or emerging minority opportunity districts, or (3) voter turnout (including Spanish

Surname Voter Turnout)—that could result from the implementation of any such redistricting proposal.

**Response**. Mr. Kunkel objects to this request because it calls for the production of documents that are subject to legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. In particular, requesting analyses "from any source" is likely to encompass documents that are protected by legislative privilege. Requesting "the origination(s)" and "the impetus, rationale, background, or motivation" of certain legislative proposals would impermissibly expose thought processes and mental impressions, which are also subject to legislative privilege. Requesting analyses that were "considered by" the Legislature, "draft in the development or revision of" redistricting proposals, "negotiations" and "calculations, reports, audits, estimates, projections, or other analyses" would be subject to legislative privilege for the same reason.

Mr. Kunkel further objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request generally seeks shapefiles, data sets, reconstituted election analyses, amendments, information concerning the pairing of incumbents, and other general information, Mr. Kunkel directs DOJ to the Texas Legislative Council's Capitol Data Portal, https://data.capitol.texas.gov/organization/tlc, where such information may be found. Insofar as the request seeks such information specifically considered by Mr. Kunkel, the request calls for information subject to the legislative privilege.

Lastly, insofar as the request seeks legal analysis concerning the "effect or impact" of redistricting proposals on "minority voters," "existing or emerging minority opportunity districts," or "voter turnout," it seeks information that may be subject to the attorney-client privilege or constitute attorney work product.

Mr. Kunkel is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 2**. All documents relating to the redistricting process for the Texas House or the Texas delegation to the U.S. House of Representatives, including but not limited to planning, timing, hearings, outreach, publicity, public or expert participation, deadlines, limitations, staffing, and persons or entities involved.

**Response**. Mr. Kunkel objects to this request because it calls for documents that are subject to the legislative privilege. The request seeks documents relating to the "planning" and "timing" of the redistricting process. These go to mental impressions and legislative strategy, which are at the core of the legislative privilege. Mr. Kunkel objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Mr. Kunkel also objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request seeks information on the attendance and date of hearings, and persons and entities involves, such information may be found at the Texas Senate and Texas House of Representatives websites, as well as on the Texas Legislature Online ("TLO") website. *See* https://senate.texas.gov/index.php (Senate); https://house. texas.gov/ (House); https://capitol.texas.gov/Home.aspx (TLO).

Mr. Kunkel is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 3**. All documents relating to voting patterns in Texas elections with respect to race, ethnicity, or language minority status, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Insofar as this request asks for calculations, reports, audits, estimates, projections, or other analyses used as part of the redistricting process, Mr. Kunkel objects on the basis that such a request calls for documents that are subject to the legislative privilege. Documents used for the purpose of formulating legislation are at the core of the legislative privilege. Mr. Kunkel objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Mr. Kunkel also objects to this request because it is facially overbroad. It calls for "all" documents relating to voting patterns, without any temporal limitation (other than the one included in the instructions) or further specification. For this reason, documents relating to voting patterns in Texas may well be irrelevant to the United States' claims—which are limited to several districts in the Texas House of Representatives map and Congressional map.

Mr. Kunkel is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 4**. All documents relating to whether House Bill 1, Senate Bill 6, or any other redistricting proposal drawn, discussed, or considered with respect to the Texas House or the Texas delegation to the U.S. House of Representatives complies with the Voting Rights Act, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Mr. Kunkel objects to this request because, by its very nature, it calls for documents that are subject to the attorney-client privilege, the legislative privilege, and constitute attorney work product. Legal analysis concerning whether HB1, SB6, or other related redistricting bills comply with the VRA will necessarily implicate these privileges. Further, communications between legislators and their staffs are privileged communications covered by the legislative privilege.

Mr. Kunkel is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 5**. All documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives exchanged between, among, with, or within the Office of the Governor, the Office of Mr. Kunkel, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate to represent Texas in the U.S. House of Representatives, any candidate for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any local elected official in Texas, any consultant, any expert, any law firm or attorney, any vendor, any other political or community group or organization, or any member of the public.

**Response**. Mr. Kunkel objects to this request because it is overbroad. The request calls for "all documents relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to documents that are irrelevant to the United States' claims in this case.

Mr. Kunkel also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of Mr. Kunkel, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

Mr. Kunkel also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to redistricting exchanged between Mr. Kunkel and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Mr. Kunkel is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should

responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 6**. All other documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives from July 1, 2021, to the present, including but not limited to redistricting criteria, public statements, correspondence, calendar invitations, scheduling emails, meeting minutes, agendas, attendance sheets, call logs, notes, presentations, studies, advocacy, letters, or other communications.

**Response**. Mr. Kunkel objects to this request because it is overbroad. The request calls for "all documents relating redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to make documents that are irrelevant to the United States' claims in this case.

Mr. Kunkel also objects to this request because it calls for documents that are subject to the legislative privilege. Among others, documents concerning "presentations," "redistricting criteria," and "meeting minutes" go to Mr. Kunkel's mental impressions and motivations concerning pending legislation, which is clearly covered by the privilege. Of course, communications and deliberations by legislators and their staff about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991).

Mr. Kunkel is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 7**. All documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes, race, ethnicity, language minority status, or United States citizenship that were exchanged between, among, with, or within the Office of the Governor, the Office of Mr. Kunkel, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate for the Texas House, any candidate to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any consultant, any expert, any law firm or attorney, any vendor, any group or organization, or any member of the public.

**Response**. Mr. Kunkel objects to this request because it is overbroad. The request calls for "all documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes," without any qualifications (other than the listed recipients).

That is an extremely broad request, and will likely apply to make documents that are irrelevant to the United States' claims in this case.

Mr. Kunkel also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators and their staff, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of Mr. Kunkel, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

Mr. Kunkel also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to demographic enumerations or estimates exchanged between Mr. Kunkel and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Mr. Kunkel objects on the basis that much the information sought by this request may be made publicly available by the U.S. Census Bureau and the Texas Demographic Center.

Mr. Kunkel is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 8**. All documents relating to payment for services; agreements of representation, consultation, employment, services, confidentiality, or common interest; or any other type of contract relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives that include any of the following individuals or entities: Adam Foltz, Akin Gump Strauss Hauer & Feld LLP, Michael Best Strategies, any consultant, any political operative, any expert, the Office of the Texas Attorney General, any other law firm, any other attorney, any other vendor, or any other person or entity.

**Response**. Mr. Kunkel objects to this request because it is overbroad and harassing. Although it appears to be bounded by specific persons and entities, the end of the request provides that the request applies to "any other attorney," "any other vendor," or "any other person or entity." The net effect is that the initial limitations are swallowed by the sheer breadth of a request that asks for "all documents" that "[relate] to redistricting" and that include "any other person or entity." Accordingly, this request is overly broad and conducting a search of this scope and breadth without any reasonable limitation is disproportionate to the needs of this case. Further, Mr. Kunkel is not a party to this litigation, and should not be required to produce, for example, "all documents" that "[relate] to redistricting" that include "any political operative." Such a facially overbroad requests create an undue burden. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

In addition, Mr. Kunkel objects to this request because it calls for documents that are subject to the legislative privilege and the attorney-client privilege. Documents relating to services provided by third parties for a legislative purpose are subject to the legislative privilege. *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)). And documents relating to Mr. Kunkel and any legal representation, by the Office of the Texas Attorney General or otherwise, is subject to the attorney-client privilege.

Mr. Kunkel also objects on the basis that this request does not contend an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any contracts or other agreements entered into after the filing of this complaint would necessarily be irrelevant.

Mr. Kunkel is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 9**. All non-privileged documents relating to the instant lawsuit or preceding investigation of Texas by the U.S. Department of Justice.

**Response**. Mr. Kunkel objects to this request because it is overbroad. It is unclear from the face of this request why "all documents relating" to this lawsuit or the United States' preceding investigation would be relevant to the United States' claims. And insofar as these documents relate to the United States' investigation, these are documents that are more likely to be within the care, custody, or control of the United States. If such materials are more commonly held by others, including state and local law enforcement agencies, production should be requested from them rather than from an individual legislator. Given the availability of these documents from other sources, the burden of requiring Mr. Kunkel to collect them far exceeds any benefit that might result. *See Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (stating that courts should "consider what information is available to the requesting party from other sources" when analyzing "the benefit side of the ledger").

Mr. Kunkel also objects on the basis that this request does not contend an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any documents originating after the filing of this complaint would necessarily be irrelevant.

Mr. Kunkel is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS *et al.*, | § § § | |
| *Plaintiffs*, | § § | Case No. 3:21-cv-259-DCG-JES-JVB (Consolidated Cases) |
| v. | § § | |
| GREG ABBOTT, *et al.*, | § § | |
| *Defendants*. | § § | |

## MOLLY SPRATT'S OBJECTIONS AND RESPONSES TO THE UNITED STATES' SUBPOENA FOR DOCUMENTS AND RECORDS

TO:   Michelle Rupp, U.S. Department of Justice, Civil Rights Division, Voting Section, 950 Pennsylvania Ave. NW, 4CON 8th Floor, Washington, D.C.   20530       Email: michelle.rupp@usdoj.gov   Phone:  202-305-0565

Pursuant to the Federal Rules of Civil Procedure, Molly Spratt hereby serves Objections and Responses to the United States' Subpoena for Documents and Records.

Date: February 18, 2022

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Respectfully submitted.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
Tex. State Bar No. 24088531

ERIC A. HUDSON
Senior Special Counsel
Tex. Bar No. 24059977

KATHLEEN T. HUNKER
Special Counsel
Tex. State Bar No. 24118415

LEIF A. OLSON
Special Counsel

1

Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
Tex. State Bar No. 24064380

JACK B. DISORBO
Assistant Attorney General
Tex. State Bar No. 24120804

Office of the Attorney General
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov

**Counsel for Molly Spratt**


## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2022, the attached Objections and Responses to the United States' Subpoena for Documents and Records was served on opposing counsel via electronic mail.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation

2

## OBJECTIONS RELEVANT TO EACH REQUEST

Ms. Spratt asserts that each of the following objections applies specifically to each request below. In the interest of brevity, these objections are offered here to avoid unnecessary repetition of objections to definitions, scope, and similar issues that afflict each request. These objections are as follows:

There is currently no protective order in place between the United States Department of Justice ("DOJ") and Ms. Spratt. To the extent that documents may be identified that are discoverable but require additional protections to prevent public disclosure, any such documents that are identified will be withheld and described in the responses, with the clarification that such production will first require entry of a protective order before the documents may be disclosed.

The Federal Rules provide that the "attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). While nonparty subpoenas are governed by Rule 45, they are also subject to the parameters established by Rule 26. *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 607 (W.D. Tex. 2019) ("As with any other forms of discovery, the scope of discovery through a Rule 45 subpoena is governed by Rule 26(b)."). Therefore, the discovery sought here is still limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The twin demands for relevancy and proportionality "are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Thus, if the information sought is irrelevant to the party's claims or defenses, "it is not necessary to determine whether it would be proportional if it *were* relevant." *Walker v. Pioneer Prod. Servs., Inc.*, No. CV 15-0645, 2016 WL 1244510, at *3 (E.D. La. Mar. 30, 2016). Conversely, "relevance alone does not translate into automatic discoverability" because "[a]n assessment of proportionality is essential." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Accordingly, Ms. Spratt objects to these requests to the extent that the information sought is irrelevant or disproportionate.

Given Ms. Spratt's former role as chief of staff to Senator Joan Huffman, and that the requested production directly relates to legislative activities, much of the requested production is subject to legislative privilege. That privilege traces its roots to before the founding of the Republic, as it has "taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries." *Tenney v. Brandhove*, 341 U.S. 372 (1951). The privilege protects not only legislators, but their staff and aides as well. *See Gravel v. United States*, 408 U.S. 606, 615-16 (1972). Here, DOJ's attempt to compel disclosure of Ms. Spratt's "thought processes or the communications [she] had with other legislators" falls squarely within the well-established contours of legislative privilege. *Perez v. Abbott*, No. 5:11-cv-360, 2014 WL 3495414 (W.D. Tex. July 11, 2014). Additional privileges, including but not limited to, attorney-client privilege, the attorney work product doctrine, and deliberative process may also be implicated by DOJ's requests, and Ms. Spratt anticipates asserting all applicable privileges implicated by the DOJ's requests. To the extent that documents responsive to DOJ's requests, Ms. Spratt anticipates withholding the materials, preparing a log that complies with the Federal Rules of Civil Procedure, and producing that log within a reasonable time.

The inadvertent production or disclosure of any privileged documents or information shall not constitute or be deemed to be a waiver of any applicable privilege with respect to such document

or information (or the contents or subject matter thereof) or with respect to any other such document or discovery now or hereafter requested or provided. Ms. Spratt reserves the right not to produce documents that are in part protected by privilege, except on a redacted basis, and to require the return of any document (and all copies thereof) inadvertently produced. Ms. Spratt likewise does not waive the right to object, on any and all grounds, to (1) the evidentiary use of documents produced in response to these requests; and (2) discovery requests relating to those documents.

A portion of the requested production is also irrelevant to DOJ's claims and is thus identified individually below. But a much larger portion of the request is not proportional to the needs of the case. The proportionality language was inserted into Rule 26(b) in 2015 "to emphasize the need for proportionality," *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017), and "highlight[] its significance," *Mannina v. D.C.*, 334 F.R.D. 336, 339 n.4 (D.D.C. 2020); *see also* Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States,[1] ("Rule 26(b)(1) crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality[.]"). As the Advisory Committee explained, this addition of overt "proportional" language was meant to better reflect the intent of the 1983 amendments, which were designed "to deal with the problem of over-discovery." Fed. R. Civ. P. 26(b) advisory committee's note (2015) (quoting the 1983 advisory notes). However, this "clear focus of the 1983 provisions may have been softened, although inadvertently, by the amendments made in 1993." *Id.* Thus, the 2015 amendment sought to "restore[] the proportionality factors to their original place in defining the scope of discovery" and reinforce the parties' obligation "to consider these factors in making discovery requests, responses, or objections." *Id.* As fully restored, the proportionality requirement "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 672 (2019). Accordingly, Ms. Spratt objects to the DOJ's subpoena to the extent that it falls short of this more stringent proportionality standard.

These responses and objections are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information or documents requested. All answers are given without prejudice to Ms. Spratt's right to object to the discovery of any documents, facts, or information discovered after the date hereof. Likewise, these responses and objections are not intended to be, and shall not be construed as, agreement with the DOJ's characterization of any facts, circumstances, or legal obligations. Ms. Spratt reserves the right to contest any such characterization as inaccurate and object to the Requests insofar as they contain any express or implied assumptions of fact or law concerning matters at issue in this litigation.

Ms. Spratt will provide responses based on terms as they are commonly understood and consistent with the Federal Rules of Civil Procedure. Ms. Spratt objects to and will refrain from extending or modifying any words employed in the Requests to comport with any expanded definitions or instructions. Ms. Spratt will answer the Requests to the extent required by the Federal Rules of Civil Procedure and the Local Rules of the Western District of Texas.

---

[1] https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Ms. Spratt objects to the definition of "document" to the extent that it calls for documents protected from disclosure by legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or any other applicable privilege.

Ms. Spratt objects to the definitions of "Legislator," "Member of the U.S. House of Representatives," "individual person," "entity," and "organization," *see* ¶¶ 2–3, 9–10 because they are overbroad and inaccurate. They improperly group all persons and entities having any relation to a particular person or entity, when in fact the particular person or entity is independent of those related persons or entities. Ms. Spratt objects to the implied application to any related persons or entities without specific enumeration.

Ms. Spratt further objects to the time period in Instruction 21, which defines the relevant time period for these responses as beginning on January 1, 2019. The claims and issues in this litigation pertain to redistricted maps that were drawn based upon data received from the United States Census Bureau in the late summer of 2021 and finalized in the fall of 2021. Accordingly, it is unreasonable and disproportionate to the needs of this case to look back to January of 2019 for documents responsive to these requests.

## RESPONSES

**Document Request 1**. All documents relating to any redistricting proposal for the Texas delegation to the U.S. House of Representatives or the Texas House, including but not limited to House Bill 1, Senate Bill 6, and any other Congressional or House redistricting proposal drawn, discussed, or considered. This request includes but is not limited to:

a.  The origination(s) or source(s) of any such redistricting proposal;

b.  The impetus, rationale, background, or motivation for any such redistricting proposal;

c.  All drafts in the development or revision of any such redistricting proposal, including but not limited to shapefiles, files or datasets used in mapping software, each RED report, each PAR report, demographic data (including but not limited to Citizen Voting Age Population, herpanic Citizen Voting Age Population, Black Citizen Voting Age Population, Voting Age Population, herpanic Voting Age Population, and Black Voting Age Population), election data (including but not limited to reconstituted election analyses), and files related to precinct names, precinct lines, split precincts, partisan indexes, population shifts, population deviations, voter registration, Spanish Surname Voter Registration, voter affiliation, Spanish Surname Voter Turnout, or changing census geography;

d.  The pairing of any incumbents in any such redistricting proposal;

e.  Any redistricting amendment, whether partial or total, to each such proposal;

f.  Negotiations regarding any redistricting proposal; and

g.  all calculations, reports, audits, estimates, projections, or other analyses, from any source, relating to the effect or impact, of any kind—including on (1) Texas minority voters, (2) existing or emerging minority opportunity districts, or (3) voter turnout (including Spanish

Surname Voter Turnout)—that could result from the implementation of any such redistricting proposal.

**Response**. Ms. Spratt objects to this request because it calls for the production of documents that are subject to legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. In particular, requesting analyses "from any source" is likely to encompass documents that are protected by legislative privilege. Requesting "the origination(s)" and "the impetus, rationale, background, or motivation" of certain legislative proposals would impermissibly expose thought processes and mental impressions, which are also subject to legislative privilege. Requesting analyses that were "considered by" the Legislature, "draft in the development or revision of" redistricting proposals, "negotiations" and "calculations, reports, audits, estimates, projections, or other analyses" would be subject to legislative privilege for the same reason.

Ms. Spratt further objects to this request because it asks her to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request generally seeks shapefiles, data sets, reconstituted election analyses, amendments, information concerning the pairing of incumbents, and other general information, Ms. Spratt directs DOJ to the Texas Legislative Council's Capitol Data Portal, https://data.capitol.texas.gov/organization/tlc, where such information may be found. Insofar as the request seeks such information specifically considered by Ms. Spratt, the request calls for information subject to the legislative privilege.

Lastly, insofar as the request seeks legal analysis concerning the "effect or impact" of redistricting proposals on "minority voters," "existing or emerging minority opportunity districts," or "voter turnout," it seeks information that may be subject to the attorney-client privilege or constitute attorney work product.

Ms. Spratt is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 2**. All documents relating to the redistricting process for the Texas House or the Texas delegation to the U.S. House of Representatives, including but not limited to planning, timing, hearings, outreach, publicity, public or expert participation, deadlines, limitations, staffing, and persons or entities involved.

**Response**. Ms. Spratt objects to this request because it calls for documents that are subject to the legislative privilege. The request seeks documents relating to the "planning" and "timing" of the redistricting process. These go to mental impressions and legislative strategy, which are at the core of the legislative privilege. Ms. Spratt objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Ms. Spratt also objects to this request because it asks her to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request seeks information on the attendance and date of hearings, and persons and entities involves, such information may be found at the Texas Senate and Texas House of Representatives websites, as well as on the Texas Legislature Online ("TLO") website. *See* https://senate.texas.gov/index.php (Senate); https://house. texas.gov/ (House); https://capitol.texas.gov/Home.aspx (TLO).

Ms. Spratt is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 3**. All documents relating to voting patterns in Texas elections with respect to race, ethnicity, or language minority status, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Insofar as this request asks for calculations, reports, audits, estimates, projections, or other analyses used as part of the redistricting process, Ms. Spratt objects on the basis that such a request calls for documents that are subject to the legislative privilege. Documents used for the purpose of formulating legislation are at the core of the legislative privilege. Ms. Spratt objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Ms. Spratt also objects to this request because it is facially overbroad. It calls for "all" documents relating to voting patterns, without any temporal limitation (other than the one included in the instructions) or further specification. For this reason, documents relating to voting patterns in Texas may well be irrelevant to the United States' claims—which are limited to several districts in the Texas House of Representatives map and Congressional map.

Ms. Spratt is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 4**. All documents relating to whether House Bill 1, Senate Bill 6, or any other redistricting proposal drawn, discussed, or considered with respect to the Texas House or the Texas delegation to the U.S. House of Representatives complies with the Voting Rights Act, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Ms. Spratt objects to this request because, by its very nature, it calls for documents that are subject to the attorney-client privilege, the legislative privilege, and constitute attorney work product. Legal analysis concerning whether HB1, SB6, or other related redistricting bills comply with the VRA will necessarily implicate these privileges. Further, communications between legislators and their staffs are privileged communications covered by the legislative privilege.

Ms. Spratt is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 5**. All documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives exchanged between, among, with, or within the Office of the Governor, the Office of Ms. Spratt, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate to represent Texas in the U.S. House of Representatives, any candidate for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any local elected official in Texas, any consultant, any expert, any law firm or attorney, any vendor, any other political or community group or organization, or any member of the public.

**Response**. Ms. Spratt objects to this request because it is overbroad. The request calls for "all documents relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to documents that are irrelevant to the United States' claims in this case.

Ms. Spratt also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of Ms. Spratt, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

Ms. Spratt also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to redistricting exchanged between Ms. Spratt and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Ms. Spratt is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should

responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 6**. All other documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives from July 1, 2021, to the present, including but not limited to redistricting criteria, public statements, correspondence, calendar invitations, scheduling emails, meeting minutes, agendas, attendance sheets, call logs, notes, presentations, studies, advocacy, letters, or other communications.

**Response**. Ms. Spratt objects to this request because it is overbroad. The request calls for "all documents relating redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to make documents that are irrelevant to the United States' claims in this case.

Ms. Spratt also objects to this request because it calls for documents that are subject to the legislative privilege. Among others, documents concerning "presentations," "redistricting criteria," and "meeting minutes" go to Ms. Spratt's mental impressions and motivations concerning pending legislation, which is clearly covered by the privilege. Of course, communications and deliberations by legislators and their staff about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991).

Ms. Spratt is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 7**. All documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes, race, ethnicity, language minority status, or United States citizenship that were exchanged between, among, with, or within the Office of the Governor, the Office of Ms. Spratt, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate for the Texas House, any candidate to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any consultant, any expert, any law firm or attorney, any vendor, any group or organization, or any member of the public.

**Response**. Ms. Spratt objects to this request because it is overbroad. The request calls for "all documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes," without any qualifications (other than the listed recipients).

That is an extremely broad request, and will likely apply to make documents that are irrelevant to the United States' claims in this case.

Ms. Spratt also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators and their staff, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of Ms. Spratt, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

Ms. Spratt also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to demographic enumerations or estimates exchanged between Ms. Spratt and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Ms. Spratt objects on the basis that much the information sought by this request may be made publicly available by the U.S. Census Bureau and the Texas Demographic Center.

Ms. Spratt is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 8**. All documents relating to payment for services; agreements of representation, consultation, employment, services, confidentiality, or common interest; or any other type of contract relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives that include any of the following individuals or entities: Adam Foltz, Akin Gump Strauss Hauer & Feld LLP, Michael Best Strategies, any consultant, any political operative, any expert, the Office of the Texas Attorney General, any other law firm, any other attorney, any other vendor, or any other person or entity.

**Response**. Ms. Spratt objects to this request because it is overbroad and harassing. Although it appears to be bounded by specific persons and entities, the end of the request provides that the request applies to "any other attorney," "any other vendor," or "any other person or entity." The net effect is that the initial limitations are swallowed by the sheer breadth of a request that asks for "all documents" that "[relate] to redistricting" and that include "any other person or entity." Accordingly, this request is overly broad and conducting a search of this scope and breadth without any reasonable limitation is disproportionate to the needs of this case. Further, Ms. Spratt is not a party to this litigation, and should not be required to produce, for example, "all documents" that "[relate] to redistricting" that include "any political operative." Such a facially overbroad requests create an undue burden. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

In addition, Ms. Spratt objects to this request because it calls for documents that are subject to the legislative privilege and the attorney-client privilege. Documents relating to services provided by third parties for a legislative purpose are subject to the legislative privilege. *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)). And documents relating to Ms. Spratt and any legal representation, by the Office of the Texas Attorney General or otherwise, is subject to the attorney-client privilege.

Ms. Spratt also objects on the basis that this request does not contend an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any contracts or other agreements entered into after the filing of this complaint would necessarily be irrelevant.

Ms. Spratt is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 9**. All non-privileged documents relating to the instant lawsuit or preceding investigation of Texas by the U.S. Department of Justice.

**Response**. Ms. Spratt objects to this request because it is overbroad. It is unclear from the face of this request why "all documents relating" to this lawsuit or the United States' preceding investigation would be relevant to the United States' claims. And insofar as these documents relate to the United States' investigation, these are documents that are more likely to be within the care, custody, or control of the United States. If such materials are more commonly held by others, including state and local law enforcement agencies, production should be requested from them rather than from an individual legislator. Given the availability of these documents from other sources, the burden of requiring Ms. Spratt to collect them far exceeds any benefit that might result. *See Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (stating that courts should "consider what information is available to the requesting party from other sources" when analyzing "the benefit side of the ledger").

Ms. Spratt also objects on the basis that this request does not contend an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any documents originating after the filing of this complaint would necessarily be irrelevant.

Ms. Spratt is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

11

**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS *et al.*, | § § § | |
| *Plaintiffs*, | § § | Case No. 3:21-cv-259-DCG-JES-JVB (Consolidated Cases) |
| v. | § § | |
| GREG ABBOTT, *et al.*, | § § | |
| *Defendants.* | § § | |

## REPRESENTATIVE PHILIP CORTEZ'S OBJECTIONS AND RESPONSES TO THE UNITED STATES' SUBPOENA FOR DOCUMENTS AND RECORDS

TO:    Michelle Rupp, U.S. Department of Justice, Civil Rights Division, Voting Section, 950 Pennsylvania Ave. NW, 4CON 8th Floor, Washington, D.C. 20530 Email: michelle.rupp@usdoj.gov   Phone: 202-305-0565

      Pursuant to the Federal Rules of Civil Procedure, Representative Philip Cortez hereby serves Objections and Responses to the United States' Subpoena for Documents and Records.

Date: February 18, 2022

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Respectfully submitted.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
Tex. State Bar No. 24088531

ERIC A. HUDSON
Senior Special Counsel
Tex. Bar No. 24059977

KATHLEEN T. HUNKER
Special Counsel
Tex. State Bar No. 24118415

LEIF A. OLSON

1

Special Counsel
Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
Tex. State Bar No. 24064380

JACK B. DISORBO
Assistant Attorney General
Tex. State Bar No. 24120804

Office of the Attorney General
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov

**Counsel for Representative Philip Cortez**

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2022, the attached Objections and Responses to the United States' Subpoena for Documents and Records was served on opposing counsel via electronic mail.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation

2

## OBJECTIONS RELEVANT TO EACH REQUEST

Representative Cortez asserts that each of the following objections applies specifically to each request below. In the interest of brevity, these objections are offered here to avoid unnecessary repetition of objections to definitions, scope, and similar issues that afflict each request. These objections are as follows:

There is currently no protective order in place between the United States Department of Justice ("DOJ") and Representative Cortez. To the extent that documents may be identified that are discoverable but require additional protections to prevent public disclosure, any such documents that are identified will be withheld and described in the responses, with the clarification that such production will first require entry of a protective order before the documents may be disclosed.

The Federal Rules provide that the "attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). While nonparty subpoenas are governed by Rule 45, they are also subject to the parameters established by Rule 26. *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 607 (W.D. Tex. 2019) ("As with any other forms of discovery, the scope of discovery through a Rule 45 subpoena is governed by Rule 26(b)."). Therefore, the discovery sought here is still limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The twin demands for relevancy and proportionality "are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Thus, if the information sought is irrelevant to the party's claims or defenses, "it is not necessary to determine whether it would be proportional if it *were* relevant." *Walker v. Pioneer Prod. Servs., Inc.*, No. CV 15-0645, 2016 WL 1244510, at *3 (E.D. La. Mar. 30, 2016). Conversely, "relevance alone does not translate into automatic discoverability" because "[a]n assessment of proportionality is essential." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Accordingly, Representative Cortez objects to these requests to the extent that the information sought is irrelevant or disproportionate.

Given Representative Cortez's role as a member of the Texas House Representative, and that the requested production directly relates to legislative activities, much of the requested production is subject to legislative privilege. That privilege traces its roots to before the founding of the Republic, as it has "taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries." *Tenney v. Brandhove*, 341 U.S. 372 (1951). The privilege protects not only legislators, but their staff and aides as well. *See Gravel v. United States*, 408 U.S. 606, 615-16 (1972). Here, DOJ's attempt to compel disclosure of Representative Cortez's "thought processes or the communications [he] had with other legislators" falls squarely within the well-established contours of legislative privilege. *Perez v. Abbott*, No. 5:11-cv-360, 2014 WL 3495414 (W.D. Tex. July 11, 2014). Additional privileges, including but not limited to, attorney-client privilege, the attorney work product doctrine, and deliberative process may also be implicated by DOJ's requests, and Representative Cortez anticipates asserting all applicable privileges implicated by the DOJ's requests. To the extent that documents responsive to DOJ's requests, Representative Cortez anticipates withholding the materials, preparing a log that complies with the Federal Rules of Civil Procedure, and producing that log within a reasonable time.

The inadvertent production or disclosure of any privileged documents or information shall not constitute or be deemed to be a waiver of any applicable privilege with respect to such document

or information (or the contents or subject matter thereof) or with respect to any other such document or discovery now or hereafter requested or provided. Representative Cortez reserves the right not to produce documents that are in part protected by privilege, except on a redacted basis, and to require the return of any document (and all copies thereof) inadvertently produced. Representative Cortez likewise does not waive the right to object, on any and all grounds, to (1) the evidentiary use of documents produced in response to these requests; and (2) discovery requests relating to those documents.

A portion of the requested production is also irrelevant to DOJ's claims and is thus identified individually below. But a much larger portion of the request is not proportional to the needs of the case. The proportionality language was inserted into Rule 26(b) in 2015 "to emphasize the need for proportionality," *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017), and "highlight[] its significance," *Mannina v. D.C.*, 334 F.R.D. 336, 339 n.4 (D.D.C. 2020); *see also* Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States,[1] ("Rule 26(b)(1) crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality[.]"). As the Advisory Committee explained, this addition of overt "proportional" language was meant to better reflect the intent of the 1983 amendments, which were designed "to deal with the problem of over-discovery." Fed. R. Civ. P. 26(b) advisory committee's note (2015) (quoting the 1983 advisory notes). However, this "clear focus of the 1983 provisions may have been softened, although inadvertently, by the amendments made in 1993." *Id.* Thus, the 2015 amendment sought to "restore[] the proportionality factors to their original place in defining the scope of discovery" and reinforce the parties' obligation "to consider these factors in making discovery requests, responses, or objections." *Id.* As fully restored, the proportionality requirement "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 672 (2019). Accordingly, Representative Cortez objects to the DOJ's subpoena to the extent that it falls short of this more stringent proportionality standard.

These responses and objections are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information or documents requested. All answers are given without prejudice to Representative Cortez's right to object to the discovery of any documents, facts, or information discovered after the date hereof. Likewise, these responses and objections are not intended to be, and shall not be construed as, agreement with the DOJ's characterization of any facts, circumstances, or legal obligations. Representative Cortez reserves the right to contest any such characterization as inaccurate and object to the Requests insofar as they contain any express or implied assumptions of fact or law concerning matters at issue in this litigation.

Representative Cortez will provide responses based on terms as they are commonly understood and consistent with the Federal Rules of Civil Procedure. Representative Cortez objects to and will refrain from extending or modifying any words employed in the Requests to comport with any expanded definitions or instructions. Representative Cortez will answer the Requests to the extent required by the Federal Rules of Civil Procedure and the Local Rules of the Western District of Texas.

---

[1] https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Representative Cortez objects to the definition of "document" to the extent that it calls for documents protected from disclosure by legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or any other applicable privilege.

Representative Cortez objects to the definitions of "Legislator," "Member of the U.S. House of Representatives," "individual person," "entity," and "organization," *see* ¶¶ 2–3, 9–10 because they are overbroad and inaccurate. They improperly group all persons and entities having any relation to a particular person or entity, when in fact the particular person or entity is independent of those related persons or entities. The Representative objects to the implied application to any related persons or entities without specific enumeration.

Representative Cortez further objects to the time period in Instruction 21, which defines the relevant time period for these responses as beginning on January 1, 2019. The claims and issues in this litigation pertain to redistricted maps that were drawn based upon data received from the United States Census Bureau in the late summer of 2021 and finalized in the fall of 2021. Accordingly, it is unreasonable and disproportionate to the needs of this case to look back to January of 2019 for documents responsive to these requests.

## RESPONSES

**Document Request 1**. All documents relating to any redistricting proposal for the Texas delegation to the U.S. House of Representatives or the Texas House, including but not limited to House Bill 1, Senate Bill 6, and any other Congressional or House redistricting proposal drawn, discussed, or considered. This request includes but is not limited to:

a. The origination(s) or source(s) of any such redistricting proposal;

b. The impetus, rationale, background, or motivation for any such redistricting proposal;

c. All drafts in the development or revision of any such redistricting proposal, including but not limited to shapefiles, files or datasets used in mapping software, each RED report, each PAR report, demographic data (including but not limited to Citizen Voting Age Population, herpanic Citizen Voting Age Population, Black Citizen Voting Age Population, Voting Age Population, herpanic Voting Age Population, and Black Voting Age Population), election data (including but not limited to reconstituted election analyses), and files related to precinct names, precinct lines, split precincts, partisan indexes, population shifts, population deviations, voter registration, Spanish Surname Voter Registration, voter affiliation, Spanish Surname Voter Turnout, or changing census geography;

d. The pairing of any incumbents in any such redistricting proposal;

e. Any redistricting amendment, whether partial or total, to each such proposal;

f. Negotiations regarding any redistricting proposal; and

g. all calculations, reports, audits, estimates, projections, or other analyses, from any source, relating to the effect or impact, of any kind—including on (1) Texas minority voters, (2) existing or emerging minority opportunity districts, or (3) voter turnout (including Spanish

Surname Voter Turnout)—that could result from the implementation of any such redistricting proposal.

**Response**. Representative Cortez objects to this request because it calls for the production of documents that are subject to legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. In particular, requesting analyses "from any source" is likely to encompass documents that are protected by legislative privilege. Requesting "the origination(s)" and "the impetus, rationale, background, or motivation" of certain legislative proposals would impermissibly expose thought processes and mental impressions, which are also subject to legislative privilege. Requesting analyses that were "considered by" the Legislature, "draft in the development or revision of" redistricting proposals, "negotiations" and "calculations, reports, audits, estimates, projections, or other analyses" would be subject to legislative privilege for the same reason.

Representative Cortez further objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request generally seeks shapefiles, data sets, reconstituted election analyses, amendments, information concerning the pairing of incumbents, and other general information, the Representative directs DOJ to the Texas Legislative Council's Capitol Data Portal, https://data.capitol.texas.gov/organization/tlc, where such information may be found. Insofar as the request seeks such information specifically considered by Representative Cortez, the request calls for information subject to the legislative privilege.

Lastly, insofar as the request seeks legal analysis concerning the "effect or impact" of redistricting proposals on "minority voters," "existing or emerging minority opportunity districts," or "voter turnout," it seeks information that may be subject to the attorney-client privilege or constitute attorney work product.

Representative Cortez is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 2**. All documents relating to the redistricting process for the Texas House or the Texas delegation to the U.S. House of Representatives, including but not limited to planning, timing, hearings, outreach, publicity, public or expert participation, deadlines, limitations, staffing, and persons or entities involved.

**Response**. Representative Cortez objects to this request because it calls for documents that are subject to the legislative privilege. The request seeks documents relating to the "planning" and "timing" of the redistricting process. These go to mental impressions and legislative strategy, which are at the core of the legislative privilege. Representative Cortez objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

6

Representative Cortez also objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request seeks information on the attendance and date of hearings, and persons and entities involves, such information may be found at the Texas Senate and Texas House of Representatives websites, as well as on the Texas Legislature Online ("TLO") website. *See* https://senate.texas.gov/index.php (Senate); https://house.texas.gov/ (House); https://capitol.texas.gov/Home.aspx (TLO).

Representative Cortez is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 3**. All documents relating to voting patterns in Texas elections with respect to race, ethnicity, or language minority status, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Insofar as this request asks for calculations, reports, audits, estimates, projections, or other analyses used as part of the redistricting process, the Representative objects on the basis that such a request calls for documents that are subject to the legislative privilege. Documents used for the purpose of formulating legislation are at the core of the legislative privilege. Representative Cortez objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

The Representative also objects to this request because it is facially overbroad. It calls for "all" documents relating to voting patterns, without any temporal limitation (other than the one included in the instructions) or further specification. For this reason, documents relating to voting patterns in Texas may well be irrelevant to the United States' claims—which are limited to several districts in the Texas House of Representatives map and Congressional map.

Representative Cortez is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 4**. All documents relating to whether House Bill 1, Senate Bill 6, or any other redistricting proposal drawn, discussed, or considered with respect to the Texas House or the Texas delegation to the U.S. House of Representatives complies with the Voting Rights Act, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. The Representative objects to this request because, by its very nature, it calls for documents that are subject to the attorney-client privilege, the legislative privilege, and constitute attorney work product. Legal analysis concerning whether HB1, SB6, or other related redistricting bills

comply with the VRA will necessarily implicate these privileges. Further, communications between legislators and their staffs are privileged communications covered by the legislative privilege.

Representative Cortez is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 5**. All documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives exchanged between, among, with, or within the Office of the Governor, the Office of the Representative, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate to represent Texas in the U.S. House of Representatives, any candidate for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any local elected official in Texas, any consultant, any expert, any law firm or attorney, any vendor, any other political or community group or organization, or any member of the public.

**Response**. The Representative objects to this request because it is overbroad. The request calls for "all documents relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to documents that are irrelevant to the United States' claims in this case.

Representative Cortez also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of the Representative, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

The Representative also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to redistricting exchanged between the Representative and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Representative Cortez is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 6**. All other documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives from July 1, 2021, to the present, including but not limited to redistricting criteria, public statements, correspondence, calendar invitations, scheduling emails, meeting minutes, agendas, attendance sheets, call logs, notes, presentations, studies, advocacy, letters, or other communications.

**Response**. The Representative objects to this request because it is overbroad. The request calls for "all documents relating redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to make documents that are irrelevant to the United States' claims in this case.

The Representative also objects to this request because it calls for documents that are subject to the legislative privilege. Among others, documents concerning "presentations," "redistricting criteria," and "meeting minutes" go to the Representative's mental impressions and motivations concerning pending legislation, which is clearly covered by the privilege. Of course, communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991).

Representative Cortez is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 7**. All documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes, race, ethnicity, language minority status, or United States citizenship that were exchanged between, among, with, or within the Office of the Governor, the Office of the Representative, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate for the Texas House, any candidate to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist,

any political activist or operative, any other governmental entity, any consultant, any expert, any law firm or attorney, any vendor, any group or organization, or any member of the public.

**Response**. The Representative objects to this request because it is overbroad. The request calls for "all documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes," without any qualifications (other than the listed recipients). That is an extremely broad request, and will likely apply to make documents that are irrelevant to the United States' claims in this case.

Representative Cortez also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of the Representative, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

The Representative also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to demographic enumerations or estimates exchanged between the Representative and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

The Representative objects on the basis that much the information sought by this request may be made publicly available by the U.S. Census Bureau and the Texas Demographic Center.

Representative Cortez is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 8**. All documents relating to payment for services; agreements of representation, consultation, employment, services, confidentiality, or common interest; or any other type of contract relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives that include any of the following individuals or entities: Adam Foltz, Akin Gump Strauss Hauer & Feld LLP, Michael Best Strategies, any consultant, any political operative, any expert, the Office of the Texas Attorney General, any other law firm, any other attorney, any other vendor, or any other person or entity.

**Response**. The Representative objects to this request because it is overbroad and harassing. Although it appears to be bounded by specific persons and entities, the end of the request provides that the request applies to "any other attorney," "any other vendor," or "any other person or entity." The net effect is that the initial limitations are swallowed by the sheer breadth of a request that asks for "all

documents" that "[relate] to redistricting" and that include "any other person or entity." Accordingly, this request is overly broad and conducting a search of this scope and breadth without any reasonable limitation is disproportionate to the needs of this case. Further, Representative Cortez is not a party to this litigation, and should not be required to produce, for example, "all documents" that "[relate] to redistricting" that include "any political operative." Such a facially overbroad requests create an undue burden. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

In addition, Representative Cortez objects to this request because it calls for documents that are subject to the legislative privilege and the attorney-client privilege. Documents relating to services provided by third parties for a legislative purpose are subject to the legislative privilege. *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)). And documents relating to the Representative and any legal representation, by the Office of the Texas Attorney General or otherwise, is subject to the attorney-client privilege.

The Representative also objects on the basis that this request does not contend an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any contracts or other agreements entered into after the filing of this complaint would necessarily be irrelevant.

Representative Cortez is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 9**. All non-privileged documents relating to the instant lawsuit or preceding investigation of Texas by the U.S. Department of Justice.

**Response**. The Representative objects to this request because it is overbroad. It is unclear from the face of this request why "all documents relating" to this lawsuit or the United States' preceding investigation would be relevant to the United States' claims. And insofar as these documents relate to the United States' investigation, these are documents that are more likely to be within the care, custody, or control of the United States. If such materials are more commonly held by others, including state and local law enforcement agencies, production should be requested from them rather than from an individual legislator. Given the availability of these documents from other sources, the burden of requiring the Representative to collect them far exceeds any benefit that might result. *See Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (stating that courts should "consider what information is available to the requesting party from other sources" when analyzing "the benefit side of the ledger").

The Representative also objects on the basis that this request does not contend an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any documents originating after the filing of this complaint would necessarily be irrelevant.

Representative Cortez is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified

pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS *et al.*, | § § § | |
| *Plaintiffs*, | § § | Case No. 3:21-cv-259-DCG-JES-JVB (Consolidated Cases) |
| v. | § § | |
| GREG ABBOTT, *et al.*, | § § § | |
| *Defendants*. | § | |

## REPRESENTATIVE TOM CRADDICK'S OBJECTIONS AND RESPONSES TO THE UNITED STATES' SUBPOENA FOR DOCUMENTS AND RECORDS

TO:   Michelle Rupp, U.S. Department of Justice, Civil Rights Division, Voting Section, 950 Pennsylvania Ave. NW, 4CON 8th Floor, Washington, D.C.   20530       Email: michelle.rupp@usdoj.gov   Phone:  202-305-0565

Pursuant to the Federal Rules of Civil Procedure, Representative Tom Craddick hereby serves Objections and Responses to the United States' Subpoena for Documents and Records.

Date: February 18, 2022               Respectfully submitted.

KEN PAXTON                    */s/ Patrick K. Sweeten*
Attorney General of Texas           PATRICK K. SWEETEN
                              Deputy Attorney General for Special Litigation
BRENT WEBSTER                 Tex. State Bar No. 00798537
First Assistant Attorney General

                              WILLIAM T. THOMPSON
                              Deputy Chief, Special Litigation Unit
                              Tex. State Bar No. 24088531

                              ERIC A. HUDSON
                              Senior Special Counsel
                              Tex. Bar No. 24059977

                              KATHLEEN T. HUNKER
                              Special Counsel
                              Tex. State Bar No. 24118415

                              LEIF A. OLSON
                              Special Counsel

Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
Tex. State Bar No. 24064380

JACK B. DISORBO
Assistant Attorney General
Tex. State Bar No. 24120804

Office of the Attorney General
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov

**Counsel for Representative Tom Craddick**

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2022, the attached Objections and Responses to the United States' Subpoena for Documents and Records was served on opposing counsel via electronic mail.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation

## OBJECTIONS RELEVANT TO EACH REQUEST

Representative Craddick asserts that each of the following objections applies specifically to each request below. In the interest of brevity, these objections are offered here to avoid unnecessary repetition of objections to definitions, scope, and similar issues that afflict each request. These objections are as follows:

There is currently no protective order in place between the United States Department of Justice ("DOJ") and Representative Craddick. To the extent that documents may be identified that are discoverable but require additional protections to prevent public disclosure, any such documents that are identified will be withheld and described in the responses, with the clarification that such production will first require entry of a protective order before the documents may be disclosed.

The Federal Rules provide that the "attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). While nonparty subpoenas are governed by Rule 45, they are also subject to the parameters established by Rule 26. *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 607 (W.D. Tex. 2019) ("As with any other forms of discovery, the scope of discovery through a Rule 45 subpoena is governed by Rule 26(b)."). Therefore, the discovery sought here is still limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The twin demands for relevancy and proportionality "are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Thus, if the information sought is irrelevant to the party's claims or defenses, "it is not necessary to determine whether it would be proportional if it *were* relevant." *Walker v. Pioneer Prod. Servs., Inc.*, No. CV 15-0645, 2016 WL 1244510, at *3 (E.D. La. Mar. 30, 2016). Conversely, "relevance alone does not translate into automatic discoverability" because "[a]n assessment of proportionality is essential." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Accordingly, Representative Craddick objects to these requests to the extent that the information sought is irrelevant or disproportionate.

Given Representative Craddick's role as a member of the Texas House Representative, and that the requested production directly relates to legislative activities, much of the requested production is subject to legislative privilege. That privilege traces its roots to before the founding of the Republic, as it has "taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries." *Tenney v. Brandhove*, 341 U.S. 372 (1951). The privilege protects not only legislators, but their staff and aides as well. *See Gravel v. United States*, 408 U.S. 606, 615-16 (1972). Here, DOJ's attempt to compel disclosure of Representative Craddick's "thought processes or the communications [he] had with other legislators" falls squarely within the well-established contours of legislative privilege. *Perez v. Abbott*, No. 5:11-cv-360, 2014 WL 3495414 (W.D. Tex. July 11, 2014). Additional privileges, including but not limited to, attorney-client privilege, the attorney work product doctrine, and deliberative process may also be implicated by DOJ's requests, and Representative Craddick anticipates asserting all applicable privileges implicated by the DOJ's requests. To the extent that documents responsive to DOJ's requests, Representative Craddick anticipates withholding the materials, preparing a log that complies with the Federal Rules of Civil Procedure, and producing that log within a reasonable time.

The inadvertent production or disclosure of any privileged documents or information shall not constitute or be deemed to be a waiver of any applicable privilege with respect to such document

or information (or the contents or subject matter thereof) or with respect to any other such document or discovery now or hereafter requested or provided. Representative Craddick reserves the right not to produce documents that are in part protected by privilege, except on a redacted basis, and to require the return of any document (and all copies thereof) inadvertently produced. Representative Craddick likewise does not waive the right to object, on any and all grounds, to (1) the evidentiary use of documents produced in response to these requests; and (2) discovery requests relating to those documents.

A portion of the requested production is also irrelevant to DOJ's claims and is thus identified individually below. But a much larger portion of the request is not proportional to the needs of the case. The proportionality language was inserted into Rule 26(b) in 2015 "to emphasize the need for proportionality," *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017), and "highlight[] its significance," *Mannina v. D.C.*, 334 F.R.D. 336, 339 n.4 (D.D.C. 2020); *see also* Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States,[1] ("Rule 26(b)(1) crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality[.]"). As the Advisory Committee explained, this addition of overt "proportional" language was meant to better reflect the intent of the 1983 amendments, which were designed "to deal with the problem of over-discovery." Fed. R. Civ. P. 26(b) advisory committee's note (2015) (quoting the 1983 advisory notes). However, this "clear focus of the 1983 provisions may have been softened, although inadvertently, by the amendments made in 1993." *Id.* Thus, the 2015 amendment sought to "restore[] the proportionality factors to their original place in defining the scope of discovery" and reinforce the parties' obligation "to consider these factors in making discovery requests, responses, or objections." *Id.* As fully restored, the proportionality requirement "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 672 (2019). Accordingly, Representative Craddick objects to the DOJ's subpoena to the extent that it falls short of this more stringent proportionality standard.

These responses and objections are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information or documents requested. All answers are given without prejudice to Representative Craddick's right to object to the discovery of any documents, facts, or information discovered after the date hereof. Likewise, these responses and objections are not intended to be, and shall not be construed as, agreement with the DOJ's characterization of any facts, circumstances, or legal obligations. Representative Craddick reserves the right to contest any such characterization as inaccurate and object to the Requests insofar as they contain any express or implied assumptions of fact or law concerning matters at issue in this litigation.

Representative Craddick will provide responses based on terms as they are commonly understood and consistent with the Federal Rules of Civil Procedure. Representative Craddick objects to and will refrain from extending or modifying any words employed in the Requests to comport with any expanded definitions or instructions. Representative Craddick will answer the Requests to the extent required by the Federal Rules of Civil Procedure and the Local Rules of the Western District of Texas.

---

[1] https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Representative Craddick objects to the definition of "document" to the extent that it calls for documents protected from disclosure by legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or any other applicable privilege.

Representative Craddick objects to the definitions of "Legislator," "Member of the U.S. House of Representatives," "individual person," "entity," and "organization," *see* ¶¶ 2–3, 9–10 because they are overbroad and inaccurate. They improperly group all persons and entities having any relation to a particular person or entity, when in fact the particular person or entity is independent of those related persons or entities. The Representative objects to the implied application to any related persons or entities without specific enumeration.

Representative Craddick further objects to the time period in Instruction 21, which defines the relevant time period for these responses as beginning on January 1, 2019. The claims and issues in this litigation pertain to redistricted maps that were drawn based upon data received from the United States Census Bureau in the late summer of 2021 and finalized in the fall of 2021. Accordingly, it is unreasonable and disproportionate to the needs of this case to look back to January of 2019 for documents responsive to these requests.

## RESPONSES

**Document Request 1**. All documents relating to any redistricting proposal for the Texas delegation to the U.S. House of Representatives or the Texas House, including but not limited to House Bill 1, Senate Bill 6, and any other Congressional or House redistricting proposal drawn, discussed, or considered. This request includes but is not limited to:

a.  The origination(s) or source(s) of any such redistricting proposal;

b.  The impetus, rationale, background, or motivation for any such redistricting proposal;

c.  All drafts in the development or revision of any such redistricting proposal, including but not limited to shapefiles, files or datasets used in mapping software, each RED report, each PAR report, demographic data (including but not limited to Citizen Voting Age Population, herpanic Citizen Voting Age Population, Black Citizen Voting Age Population, Voting Age Population, herpanic Voting Age Population, and Black Voting Age Population), election data (including but not limited to reconstituted election analyses), and files related to precinct names, precinct lines, split precincts, partisan indexes, population shifts, population deviations, voter registration, Spanish Surname Voter Registration, voter affiliation, Spanish Surname Voter Turnout, or changing census geography;

d.  The pairing of any incumbents in any such redistricting proposal;

e.  Any redistricting amendment, whether partial or total, to each such proposal;

f.  Negotiations regarding any redistricting proposal; and

g.  all calculations, reports, audits, estimates, projections, or other analyses, from any source, relating to the effect or impact, of any kind—including on (1) Texas minority voters, (2) existing or emerging minority opportunity districts, or (3) voter turnout (including Spanish

Surname Voter Turnout)—that could result from the implementation of any such redistricting proposal.

**Response**. Representative Craddick objects to this request because it calls for the production of documents that are subject to legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. In particular, requesting analyses "from any source" is likely to encompass documents that are protected by legislative privilege. Requesting "the origination(s)" and "the impetus, rationale, background, or motivation" of certain legislative proposals would impermissibly expose thought processes and mental impressions, which are also subject to legislative privilege. Requesting analyses that were "considered by" the Legislature, "draft in the development or revision of" redistricting proposals, "negotiations" and "calculations, reports, audits, estimates, projections, or other analyses" would be subject to legislative privilege for the same reason.

Representative Craddick further objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request generally seeks shapefiles, data sets, reconstituted election analyses, amendments, information concerning the pairing of incumbents, and other general information, the Representative directs DOJ to the Texas Legislative Council's Capitol Data Portal, https://data.capitol.texas.gov/organization/tlc, where such information may be found. Insofar as the request seeks such information specifically considered by Representative Craddick, the request calls for information subject to the legislative privilege.

Lastly, insofar as the request seeks legal analysis concerning the "effect or impact" of redistricting proposals on "minority voters," "existing or emerging minority opportunity districts," or "voter turnout," it seeks information that may be subject to the attorney-client privilege or constitute attorney work product.

Representative Craddick is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 2**. All documents relating to the redistricting process for the Texas House or the Texas delegation to the U.S. House of Representatives, including but not limited to planning, timing, hearings, outreach, publicity, public or expert participation, deadlines, limitations, staffing, and persons or entities involved.

**Response**. Representative Craddick objects to this request because it calls for documents that are subject to the legislative privilege. The request seeks documents relating to the "planning" and "timing" of the redistricting process. These go to mental impressions and legislative strategy, which are at the core of the legislative privilege. Representative Craddick objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Representative Craddick also objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request seeks information on the attendance and date of hearings, and persons and entities involves, such information may be found at the Texas Senate and Texas House of Representatives websites, as well as on the Texas Legislature Online ("TLO") website. *See* https://senate.texas.gov/index.php (Senate); https://house.texas.gov/ (House); https://capitol.texas.gov/Home.aspx (TLO).

Representative Craddick is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 3**. All documents relating to voting patterns in Texas elections with respect to race, ethnicity, or language minority status, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Insofar as this request asks for calculations, reports, audits, estimates, projections, or other analyses used as part of the redistricting process, the Representative objects on the basis that such a request calls for documents that are subject to the legislative privilege. Documents used for the purpose of formulating legislation are at the core of the legislative privilege. Representative Craddick objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

The Representative also objects to this request because it is facially overbroad. It calls for "all" documents relating to voting patterns, without any temporal limitation (other than the one included in the instructions) or further specification. For this reason, documents relating to voting patterns in Texas may well be irrelevant to the United States' claims—which are limited to several districts in the Texas House of Representatives map and Congressional map.

Representative Craddick is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 4**. All documents relating to whether House Bill 1, Senate Bill 6, or any other redistricting proposal drawn, discussed, or considered with respect to the Texas House or the Texas delegation to the U.S. House of Representatives complies with the Voting Rights Act, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. The Representative objects to this request because, by its very nature, it calls for documents that are subject to the attorney-client privilege, the legislative privilege, and constitute attorney work product. Legal analysis concerning whether HB1, SB6, or other related redistricting bills

7

comply with the VRA will necessarily implicate these privileges. Further, communications between legislators and their staffs are privileged communications covered by the legislative privilege.

Representative Craddick is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 5**. All documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives exchanged between, among, with, or within the Office of the Governor, the Office of the Representative, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate to represent Texas in the U.S. House of Representatives, any candidate for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any local elected official in Texas, any consultant, any expert, any law firm or attorney, any vendor, any other political or community group or organization, or any member of the public.

**Response**. The Representative objects to this request because it is overbroad. The request calls for "all documents relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to documents that are irrelevant to the United States' claims in this case.

Representative Craddick also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of the Representative, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

The Representative also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to redistricting exchanged between the Representative and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Representative Craddick is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 6**. All other documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives from July 1, 2021, to the present, including but not limited to redistricting criteria, public statements, correspondence, calendar invitations, scheduling emails, meeting minutes, agendas, attendance sheets, call logs, notes, presentations, studies, advocacy, letters, or other communications.

**Response**. The Representative objects to this request because it is overbroad. The request calls for "all documents relating redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to make documents that are irrelevant to the United States' claims in this case.

The Representative also objects to this request because it calls for documents that are subject to the legislative privilege. Among others, documents concerning "presentations," "redistricting criteria," and "meeting minutes" go to the Representative's mental impressions and motivations concerning pending legislation, which is clearly covered by the privilege. Of course, communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991).

Representative Craddick is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 7**. All documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes, race, ethnicity, language minority status, or United States citizenship that were exchanged between, among, with, or within the Office of the Governor, the Office of the Representative, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate for the Texas House, any candidate to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist,

any political activist or operative, any other governmental entity, any consultant, any expert, any law firm or attorney, any vendor, any group or organization, or any member of the public.

**Response**. The Representative objects to this request because it is overbroad. The request calls for "all documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes," without any qualifications (other than the listed recipients). That is an extremely broad request, and will likely apply to make documents that are irrelevant to the United States' claims in this case.

Representative Craddick also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of the Representative, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

The Representative also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to demographic enumerations or estimates exchanged between the Representative and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

The Representative objects on the basis that much the information sought by this request may be made publicly available by the U.S. Census Bureau and the Texas Demographic Center.

Representative Craddick is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 8**. All documents relating to payment for services; agreements of representation, consultation, employment, services, confidentiality, or common interest; or any other type of contract relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives that include any of the following individuals or entities: Adam Foltz, Akin Gump Strauss Hauer & Feld LLP, Michael Best Strategies, any consultant, any political operative, any expert, the Office of the Texas Attorney General, any other law firm, any other attorney, any other vendor, or any other person or entity.

**Response**. The Representative objects to this request because it is overbroad and harassing. Although it appears to be bounded by specific persons and entities, the end of the request provides that the request applies to "any other attorney," "any other vendor," or "any other person or entity." The net effect is that the initial limitations are swallowed by the sheer breadth of a request that asks for "all

documents" that "[relate] to redistricting" and that include "any other person or entity." Accordingly, this request is overly broad and conducting a search of this scope and breadth without any reasonable limitation is disproportionate to the needs of this case. Further, Representative Craddick is not a party to this litigation, and should not be required to produce, for example, "all documents" that "[relate] to redistricting" that include "any political operative." Such a facially overbroad requests create an undue burden. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

In addition, Representative Craddick objects to this request because it calls for documents that are subject to the legislative privilege and the attorney-client privilege. Documents relating to services provided by third parties for a legislative purpose are subject to the legislative privilege. *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)). And documents relating to the Representative and any legal representation, by the Office of the Texas Attorney General or otherwise, is subject to the attorney-client privilege.

The Representative also objects on the basis that this request does not contend an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any contracts or other agreements entered into after the filing of this complaint would necessarily be irrelevant.

Representative Craddick is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 9**. All non-privileged documents relating to the instant lawsuit or preceding investigation of Texas by the U.S. Department of Justice.

**Response**. The Representative objects to this request because it is overbroad. It is unclear from the face of this request why "all documents relating" to this lawsuit or the United States' preceding investigation would be relevant to the United States' claims. And insofar as these documents relate to the United States' investigation, these are documents that are more likely to be within the care, custody, or control of the United States. If such materials are more commonly held by others, including state and local law enforcement agencies, production should be requested from them rather than from an individual legislator. Given the availability of these documents from other sources, the burden of requiring the Representative to collect them far exceeds any benefit that might result. *See Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (stating that courts should "consider what information is available to the requesting party from other sources" when analyzing "the benefit side of the ledger").

The Representative also objects on the basis that this request does not contend an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any documents originating after the filing of this complaint would necessarily be irrelevant.

Representative Craddick is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified

pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS *et al.*, | § § § | |
| *Plaintiffs*, | § § | Case No. 3:21-cv-259-DCG-JES-JVB |
| v. | § § | (Consolidated Cases) |
| GREG ABBOTT, *et al.*, | § § | |
| *Defendants.* | § § | |

## ADAM FOLTZ'S OBJECTIONS AND RESPONSES TO
## THE UNITED STATES' SUBPOENA FOR DOCUMENTS AND RECORDS

TO:    Michelle Rupp, U.S. Department of Justice, Civil Rights Division, Voting Section, 950 Pennsylvania Ave. NW, 4CON 8th Floor, Washington, D.C. 20530      Email: michelle.rupp@usdoj.gov    Phone: 202-305-0565

Pursuant to the Federal Rules of Civil Procedure, Adam Foltz hereby serves Objections and Responses to the United States' Subpoena for Documents and Records.

Date: February 23, 2022

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
Tex. State Bar No. 24088531

ERIC A. HUDSON
Senior Special Counsel
Tex. Bar No. 24059977

KATHLEEN T. HUNKER
Special Counsel
Tex. State Bar No. 24118415

LEIF A. OLSON
Special Counsel

1

Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
Tex. State Bar No. 24064380

JACK B. DISORBO
Assistant Attorney General
Tex. State Bar No. 24120804

Office of the Attorney General
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov

**Counsel for Adam Foltz**

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2022, the attached Objections and Responses to the United States' Subpoena for Documents and Records was served on opposing counsel via electronic mail.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation

## OBJECTIONS RELEVANT TO EACH REQUEST

Mr. Foltz asserts that each of the following objections applies specifically to each request below. In the interest of brevity, these objections are offered here to avoid unnecessary repetition of objections to definitions, scope, and similar issues that afflict each request. These objections are as follows:

There is currently no protective order in place between the United States Department of Justice ("DOJ") and Mr. Foltz. To the extent that documents may be identified that are discoverable but require additional protections to prevent public disclosure, any such documents that are identified will be withheld and described in the responses, with the clarification that such production will first require entry of a protective order before the documents may be disclosed.

The Federal Rules provide that the "attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). While nonparty subpoenas are governed by Rule 45, they are also subject to the parameters established by Rule 26. *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 607 (W.D. Tex. 2019) ("As with any other forms of discovery, the scope of discovery through a Rule 45 subpoena is governed by Rule 26(b)."). Therefore, the discovery sought here is still limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The twin demands for relevancy and proportionality "are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Thus, if the information sought is irrelevant to the party's claims or defenses, "it is not necessary to determine whether it would be proportional if it *were* relevant." *Walker v. Pioneer Prod. Servs., Inc.*, No. CV 15-0645, 2016 WL 1244510, at *3 (E.D. La. Mar. 30, 2016). Conversely, "relevance alone does not translate into automatic discoverability" because "[a]n assessment of proportionality is essential." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Accordingly, Mr. Foltz objects to these requests to the extent that the information sought is irrelevant or disproportionate.

Given Mr. Foltz's employment by the House Redistricting Committee, and that the requested production directly relates to legislative activities, much of the requested production is subject to legislative privilege. That privilege traces its roots to before the founding of the Republic, as it has "taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries." *Tenney v. Brandhove*, 341 U.S. 372 (1951). The privilege protects not only legislators, but their staff and aides as well. *See Gravel v. United States*, 408 U.S. 606, 615-16 (1972). Here, DOJ's attempt to compel disclosure of Mr. Foltz's "thought processes or the communications [he] had with other legislators" falls squarely within the well-established contours of legislative privilege. *Perez v. Abbott*, No. 5:11-cv-360, 2014 WL 3495414 (W.D. Tex. July 11, 2014). Additional privileges, including but not limited to, attorney-client privilege, the attorney work product doctrine, and deliberative process may also be implicated by DOJ's requests, and Mr. Foltz anticipates asserting all applicable privileges implicated by the DOJ's requests. To the extent that documents responsive to DOJ's requests, Mr. Foltz anticipates withholding the materials, preparing a log that complies with the Federal Rules of Civil Procedure, and producing that log within a reasonable time.

The inadvertent production or disclosure of any privileged documents or information shall not constitute or be deemed to be a waiver of any applicable privilege with respect to such document

or information (or the contents or subject matter thereof) or with respect to any other such document or discovery now or hereafter requested or provided. Mr. Foltz reserves the right not to produce documents that are in part protected by privilege, except on a redacted basis, and to require the return of any document (and all copies thereof) inadvertently produced. Mr. Foltz likewise does not waive the right to object, on any and all grounds, to (1) the evidentiary use of documents produced in response to these requests; and (2) discovery requests relating to those documents.

A portion of the requested production is also irrelevant to DOJ's claims and is thus identified individually below. But a much larger portion of the request is not proportional to the needs of the case. The proportionality language was inserted into Rule 26(b) in 2015 "to emphasize the need for proportionality," *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017), and "highlight[] its significance," *Mannina v. D.C.*, 334 F.R.D. 336, 339 n.4 (D.D.C. 2020); *see also* Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States,[1] ("Rule 26(b)(1) crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality[.]"). As the Advisory Committee explained, this addition of overt "proportional" language was meant to better reflect the intent of the 1983 amendments, which were designed "to deal with the problem of over-discovery." Fed. R. Civ. P. 26(b) advisory committee's note (2015) (quoting the 1983 advisory notes). However, this "clear focus of the 1983 provisions may have been softened, although inadvertently, by the amendments made in 1993." *Id.* Thus, the 2015 amendment sought to "restore[] the proportionality factors to their original place in defining the scope of discovery" and reinforce the parties' obligation "to consider these factors in making discovery requests, responses, or objections." *Id.* As fully restored, the proportionality requirement "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 672 (2019). Accordingly, Mr. Foltz objects to the DOJ's subpoena to the extent that it falls short of this more stringent proportionality standard.

These responses and objections are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information or documents requested. All answers are given without prejudice to Mr. Foltz's right to object to the discovery of any documents, facts, or information discovered after the date hereof. Likewise, these responses and objections are not intended to be, and shall not be construed as, agreement with the DOJ's characterization of any facts, circumstances, or legal obligations. Mr. Foltz reserves the right to contest any such characterization as inaccurate and object to the Requests insofar as they contain any express or implied assumptions of fact or law concerning matters at issue in this litigation.

Mr. Foltz will provide responses based on terms as they are commonly understood and consistent with the Federal Rules of Civil Procedure. Mr. Foltz objects to and will refrain from extending or modifying any words employed in the Requests to comport with any expanded definitions or instructions. Mr. Foltz will answer the Requests to the extent required by the Federal Rules of Civil Procedure and the Local Rules of the Western District of Texas.

---

[1] https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Mr. Foltz objects to the definition of "document" to the extent that it calls for documents protected from disclosure by legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or any other applicable privilege.

Mr. Foltz objects to the definitions of "Legislator," "Member of the U.S. House of Representatives," "individual person," "entity," and "organization," *see* ¶¶ 2–3, 9–10 because they are overbroad and inaccurate. They improperly group all persons and entities having any relation to a particular person or entity, when in fact the particular person or entity is independent of those related persons or entities. Mr. Foltz objects to the implied application to any related persons or entities without specific enumeration.

Mr. Foltz further objects to the time period in Instruction 21, which defines the relevant time period for these responses as beginning on January 1, 2019. The claims and issues in this litigation pertain to redistricted maps that were drawn based upon data received from the United States Census Bureau in the late summer of 2021 and finalized in the fall of 2021. Accordingly, it is unreasonable and disproportionate to the needs of this case to look back to January of 2019 for documents responsive to these requests.

## RESPONSES

**Document Request 1**. All documents relating to any redistricting proposal for the Texas delegation to the U.S. House of Representatives or the Texas House, including but not limited to House Bill 1, Senate Bill 6, and any other Congressional or House redistricting proposal drawn, discussed, or considered. This request includes but is not limited to:

a.  The origination(s) or source(s) of any such redistricting proposal;

b.  The impetus, rationale, background, or motivation for any such redistricting proposal;

c.  All drafts in the development or revision of any such redistricting proposal, including but not limited to shapefiles, files or datasets used in mapping software, each RED report, each PAR report, demographic data (including but not limited to Citizen Voting Age Population, herpanic Citizen Voting Age Population, Black Citizen Voting Age Population, Voting Age Population, herpanic Voting Age Population, and Black Voting Age Population), election data (including but not limited to reconstituted election analyses), and files related to precinct names, precinct lines, split precincts, partisan indexes, population shifts, population deviations, voter registration, Spanish Surname Voter Registration, voter affiliation, Spanish Surname Voter Turnout, or changing census geography;

d.  The pairing of any incumbents in any such redistricting proposal;

e.  Any redistricting amendment, whether partial or total, to each such proposal;

f.  Negotiations regarding any redistricting proposal; and

g.  all calculations, reports, audits, estimates, projections, or other analyses, from any source, relating to the effect or impact, of any kind—including on (1) Texas minority voters, (2) existing or emerging minority opportunity districts, or (3) voter turnout (including Spanish

Surname Voter Turnout)—that could result from the implementation of any such redistricting proposal.

**Response**. Mr. Foltz objects to this request because it calls for the production of documents that are subject to legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. In particular, requesting analyses "from any source" is likely to encompass documents that are protected by legislative privilege. Requesting "the origination(s)" and "the impetus, rationale, background, or motivation" of certain legislative proposals would impermissibly expose thought processes and mental impressions, which are also subject to legislative privilege. Requesting analyses that were "considered by" the Legislature, "draft in the development or revision of" redistricting proposals, "negotiations" and "calculations, reports, audits, estimates, projections, or other analyses" would be subject to legislative privilege for the same reason.

Mr. Foltz further objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request generally seeks shapefiles, data sets, reconstituted election analyses, amendments, information concerning the pairing of incumbents, and other general information, Mr. Foltz directs DOJ to the Texas Legislative Council's Capitol Data Portal, https://data.capitol.texas.gov/organization/tlc, where such information may be found. Insofar as the request seeks such information specifically considered by Mr. Foltz, the request calls for information subject to the legislative privilege.

Lastly, insofar as the request seeks legal analysis concerning the "effect or impact" of redistricting proposals on "minority voters," "existing or emerging minority opportunity districts," or "voter turnout," it seeks information that may be subject to the attorney-client privilege or constitute attorney work product.

Mr. Foltz is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 2**. All documents relating to the redistricting process for the Texas House or the Texas delegation to the U.S. House of Representatives, including but not limited to planning, timing, hearings, outreach, publicity, public or expert participation, deadlines, limitations, staffing, and persons or entities involved.

**Response**. Mr. Foltz objects to this request because it calls for documents that are subject to the legislative privilege. The request seeks documents relating to the "planning" and "timing" of the redistricting process. These go to mental impressions and legislative strategy, which are at the core of the legislative privilege. Mr. Foltz objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Mr. Foltz also objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request seeks information on the attendance and date of hearings, and persons and entities involves, such information may be found at the Texas Senate and Texas House of Representatives websites, as well as on the Texas Legislature Online ("TLO") website. *See* https://senate.texas.gov/index.php (Senate); https://house. texas.gov/ (House); https://capitol.texas.gov/Home.aspx (TLO).

Mr. Foltz is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 3**. All documents relating to voting patterns in Texas elections with respect to race, ethnicity, or language minority status, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Insofar as this request asks for calculations, reports, audits, estimates, projections, or other analyses used as part of the redistricting process, Mr. Foltz objects on the basis that such a request calls for documents that are subject to the legislative privilege. Documents used for the purpose of formulating legislation are at the core of the legislative privilege. Mr. Foltz objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Mr. Foltz also objects to this request because it is facially overbroad. It calls for "all" documents relating to voting patterns, without any temporal limitation (other than the one included in the instructions) or further specification. For this reason, documents relating to voting patterns in Texas may well be irrelevant to the United States' claims—which are limited to several districts in the Texas House of Representatives map and Congressional map.

Mr. Foltz is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 4**. All documents relating to whether House Bill 1, Senate Bill 6, or any other redistricting proposal drawn, discussed, or considered with respect to the Texas House or the Texas delegation to the U.S. House of Representatives complies with the Voting Rights Act, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Mr. Foltz objects to this request because, by its very nature, it calls for documents that are subject to the attorney-client privilege, the legislative privilege, and constitute attorney work product. Legal analysis concerning whether HB1, SB6, or other related redistricting bills comply with the VRA will necessarily implicate these privileges. Further, communications between legislators and their staffs are privileged communications covered by the legislative privilege.

Mr. Foltz is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 5**. All documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives exchanged between, among, with, or within the Office of the Governor, the Office of Mr. Foltz, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate to represent Texas in the U.S. House of Representatives, any candidate for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any local elected official in Texas, any consultant, any expert, any law firm or attorney, any vendor, any other political or community group or organization, or any member of the public.

**Response**. Mr. Foltz objects to this request because it is overbroad. The request calls for "all documents relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to documents that are irrelevant to the United States' claims in this case.

Mr. Foltz also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of Mr. Foltz, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

Mr. Foltz also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to redistricting exchanged between Mr. Foltz and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Mr. Foltz is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should

responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 6**. All other documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives from July 1, 2021, to the present, including but not limited to redistricting criteria, public statements, correspondence, calendar invitations, scheduling emails, meeting minutes, agendas, attendance sheets, call logs, notes, presentations, studies, advocacy, letters, or other communications.

**Response**. Mr. Foltz objects to this request because it is overbroad. The request calls for "all documents relating redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to make documents that are irrelevant to the United States' claims in this case.

Mr. Foltz also objects to this request because it calls for documents that are subject to the legislative privilege. Among others, documents concerning "presentations," "redistricting criteria," and "meeting minutes" go to Mr. Foltz's mental impressions and motivations concerning pending legislation, which is clearly covered by the privilege. Of course, communications and deliberations by legislators and their staff about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991).

Mr. Foltz is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 7**. All documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes, race, ethnicity, language minority status, or United States citizenship that were exchanged between, among, with, or within the Office of the Governor, the Office of Mr. Foltz, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate for the Texas House, any candidate to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any consultant, any expert, any law firm or attorney, any vendor, any group or organization, or any member of the public.

**Response**. Mr. Foltz objects to this request because it is overbroad. The request calls for "all documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes," without any qualifications (other than the listed recipients).

That is an extremely broad request, and will likely apply to make documents that are irrelevant to the United States' claims in this case.

Mr. Foltz also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators and their staff, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of Mr. Foltz, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

Mr. Foltz also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to demographic enumerations or estimates exchanged between Mr. Foltz and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Mr. Foltz objects on the basis that much the information sought by this request may be made publicly available by the U.S. Census Bureau and the Texas Demographic Center.

Mr. Foltz is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 8**. All documents relating to payment for services; agreements of representation, consultation, employment, services, confidentiality, or common interest; or any other type of contract relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives that include any of the following individuals or entities: Adam Foltz, Akin Gump Strauss Hauer & Feld LLP, Michael Best Strategies, any consultant, any political operative, any expert, the Office of the Texas Attorney General, any other law firm, any other attorney, any other vendor, or any other person or entity.

**Response**. Mr. Foltz objects to this request because it is overbroad and harassing. Although it appears to be bounded by specific persons and entities, the end of the request provides that the request applies to "any other attorney," "any other vendor," or "any other person or entity." The net effect is that the initial limitations are swallowed by the sheer breadth of a request that asks for "all documents" that "[relate] to redistricting" and that include "any other person or entity." Accordingly, this request is overly broad and conducting a search of this scope and breadth without any reasonable limitation is disproportionate to the needs of this case. Further, Mr. Foltz is not a party to this litigation, and should not be required to produce, for example, "all documents" that "[relate] to redistricting" that include "any political operative." Such a facially overbroad requests create an undue burden. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

In addition, Mr. Foltz objects to this request because it calls for documents that are subject to the legislative privilege and the attorney-client privilege. Documents relating to services provided by third parties for a legislative purpose are subject to the legislative privilege. *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)). And documents relating to Mr. Foltz and any legal representation, by the Office of the Texas Attorney General or otherwise, is subject to the attorney-client privilege.

Mr. Foltz also objects on the basis that this request does not contend an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any contracts or other agreements entered into after the filing of this complaint would necessarily be irrelevant.

Mr. Foltz is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 9**. All non-privileged documents relating to the instant lawsuit or preceding investigation of Texas by the U.S. Department of Justice.

**Response**. Mr. Foltz objects to this request because it is overbroad. It is unclear from the face of this request why "all documents relating" to this lawsuit or the United States' preceding investigation would be relevant to the United States' claims. And insofar as these documents relate to the United States' investigation, these are documents that are more likely to be within the care, custody, or control of the United States. If such materials are more commonly held by others, including state and local law enforcement agencies, production should be requested from them rather than from an individual legislator. Given the availability of these documents from other sources, the burden of requiring Mr. Foltz to collect them far exceeds any benefit that might result. *See Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (stating that courts should "consider what information is available to the requesting party from other sources" when analyzing "the benefit side of the ledger").

Mr. Foltz also objects on the basis that this request does not contend an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any documents originating after the filing of this complaint would necessarily be irrelevant.

Mr. Foltz is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS *et al.*, | § § § | |
| *Plaintiffs*, | § § | Case No. 3:21-cv-259-DCG-JES-JVB |
| v. | § § | (Consolidated Cases) |
| GREG ABBOTT, *et al.*, | § § | |
| *Defendants.* | § § | |

## REPRESENTATIVE ANDREW MURR'S OBJECTIONS AND RESPONSES TO THE UNITED STATES' SUBPOENA FOR DOCUMENTS AND RECORDS

TO:   Michelle Rupp, U.S. Department of Justice, Civil Rights Division, Voting Section, 950 Pennsylvania Ave. NW, 4CON 8th Floor, Washington, D.C. 20530 Email: michelle.rupp@usdoj.gov Phone: 202-305-0565

Pursuant to the Federal Rules of Civil Procedure, Representative Andrew Murr hereby serves Objections and Responses to the United States' Subpoena for Documents and Records.

Date: February 23, 2022

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
Tex. State Bar No. 24088531

ERIC A. HUDSON
Senior Special Counsel
Tex. Bar No. 24059977

KATHLEEN T. HUNKER
Special Counsel
Tex. State Bar No. 24118415

LEIF A. OLSON
Special Counsel

1

Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
Tex. State Bar No. 24064380

JACK B. DISORBO
Assistant Attorney General
Tex. State Bar No. 24120804

Office of the Attorney General
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov

**Counsel for Representative Andrew Murr**

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2022, the attached Objections and Responses to the United States' Subpoena for Documents and Records was served on opposing counsel via electronic mail.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation

2

## OBJECTIONS RELEVANT TO EACH REQUEST

Representative Murr asserts that each of the following objections applies specifically to each request below. In the interest of brevity, these objections are offered here to avoid unnecessary repetition of objections to definitions, scope, and similar issues that afflict each request. These objections are as follows:

There is currently no protective order in place between the United States Department of Justice ("DOJ") and Representative Murr. To the extent that documents may be identified that are discoverable but require additional protections to prevent public disclosure, any such documents that are identified will be withheld and described in the responses, with the clarification that such production will first require entry of a protective order before the documents may be disclosed.

The Federal Rules provide that the "attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). While nonparty subpoenas are governed by Rule 45, they are also subject to the parameters established by Rule 26. *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 607 (W.D. Tex. 2019) ("As with any other forms of discovery, the scope of discovery through a Rule 45 subpoena is governed by Rule 26(b)."). Therefore, the discovery sought here is still limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The twin demands for relevancy and proportionality "are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Thus, if the information sought is irrelevant to the party's claims or defenses, "it is not necessary to determine whether it would be proportional if it *were* relevant." *Walker v. Pioneer Prod. Servs., Inc.*, No. CV 15-0645, 2016 WL 1244510, at *3 (E.D. La. Mar. 30, 2016). Conversely, "relevance alone does not translate into automatic discoverability" because "[a]n assessment of proportionality is essential." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Accordingly, Representative Murr objects to these requests to the extent that the information sought is irrelevant or disproportionate.

Given Representative Murr's role as a member of the Texas House Representatives, and that the requested production directly relates to legislative activities, much of the requested production is subject to legislative privilege. That privilege traces its roots to before the founding of the Republic, as it has "taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries." *Tenney v. Brandhove*, 341 U.S. 372 (1951). The privilege protects not only legislators, but their staff and aides as well. *See Gravel v. United States*, 408 U.S. 606, 615-16 (1972). Here, DOJ's attempt to compel disclosure of Representative Murr's "thought processes or the communications [he] had with other legislators" falls squarely within the well-established contours of legislative privilege. *Perez v. Abbott*, No. 5:11-cv-360, 2014 WL 3495414 (W.D. Tex. July 11, 2014). Additional privileges, including but not limited to, attorney-client privilege, the attorney work product doctrine, and deliberative process may also be implicated by DOJ's requests, and Representative Murr anticipates asserting all applicable privileges implicated by the DOJ's requests. To the extent that documents responsive to DOJ's requests, Representative Murr anticipates withholding the materials, preparing a log that complies with the Federal Rules of Civil Procedure, and producing that log within a reasonable time.

The inadvertent production or disclosure of any privileged documents or information shall not constitute or be deemed to be a waiver of any applicable privilege with respect to such document

or information (or the contents or subject matter thereof) or with respect to any other such document or discovery now or hereafter requested or provided. Representative Murr reserves the right not to produce documents that are in part protected by privilege, except on a redacted basis, and to require the return of any document (and all copies thereof) inadvertently produced. Representative Murr likewise does not waive the right to object, on any and all grounds, to (1) the evidentiary use of documents produced in response to these requests; and (2) discovery requests relating to those documents.

A portion of the requested production is also irrelevant to DOJ's claims and is thus identified individually below. But a much larger portion of the request is not proportional to the needs of the case. The proportionality language was inserted into Rule 26(b) in 2015 "to emphasize the need for proportionality," *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017), and "highlight[] its significance," *Mannina v. D.C.*, 334 F.R.D. 336, 339 n.4 (D.D.C. 2020); *see also* Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States,[1] ("Rule 26(b)(1) crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality[.]"). As the Advisory Committee explained, this addition of overt "proportional" language was meant to better reflect the intent of the 1983 amendments, which were designed "to deal with the problem of over-discovery." Fed. R. Civ. P. 26(b) advisory committee's note (2015) (quoting the 1983 advisory notes). However, this "clear focus of the 1983 provisions may have been softened, although inadvertently, by the amendments made in 1993." *Id.* Thus, the 2015 amendment sought to "restore[] the proportionality factors to their original place in defining the scope of discovery" and reinforce the parties' obligation "to consider these factors in making discovery requests, responses, or objections." *Id.* As fully restored, the proportionality requirement "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 672 (2019). Accordingly, Representative Murr objects to the DOJ's subpoena to the extent that it falls short of this more stringent proportionality standard.

These responses and objections are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information or documents requested. All answers are given without prejudice to Representative Murr's right to object to the discovery of any documents, facts, or information discovered after the date hereof. Likewise, these responses and objections are not intended to be, and shall not be construed as, agreement with the DOJ's characterization of any facts, circumstances, or legal obligations. Representative Murr reserves the right to contest any such characterization as inaccurate and object to the Requests insofar as they contain any express or implied assumptions of fact or law concerning matters at issue in this litigation.

Representative Murr will provide responses based on terms as they are commonly understood and consistent with the Federal Rules of Civil Procedure. Representative Murr objects to and will refrain from extending or modifying any words employed in the Requests to comport with any expanded definitions or instructions. Representative Murr will answer the Requests to the extent required by the Federal Rules of Civil Procedure and the Local Rules of the Western District of Texas.

---

[1] https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Representative Murr objects to the definition of "document" to the extent that it calls for documents protected from disclosure by legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or any other applicable privilege.

Representative Murr objects to the definitions of "Legislator," "Member of the U.S. House of Representatives," "individual person," "entity," and "organization," *see* ¶¶ 2–3, 9–10 because they are overbroad and inaccurate. They improperly group all persons and entities having any relation to a particular person or entity, when in fact the particular person or entity is independent of those related persons or entities. The Representative objects to the implied application to any related persons or entities without specific enumeration.

Representative Murr further objects to the time period in Instruction 21, which defines the relevant time period for these responses as beginning on January 1, 2019. The claims and issues in this litigation pertain to redistricted maps that were drawn based upon data received from the United States Census Bureau in the late summer of 2021 and finalized in the fall of 2021. Accordingly, it is unreasonable and disproportionate to the needs of this case to look back to January of 2019 for documents responsive to these requests.

## RESPONSES

**Document Request 1.** All documents relating to any redistricting proposal for the Texas delegation to the U.S. House of Representatives or the Texas House, including but not limited to House Bill 1, Senate Bill 6, and any other Congressional or House redistricting proposal drawn, discussed, or considered. This request includes but is not limited to:

a. The origination(s) or source(s) of any such redistricting proposal;

b. The impetus, rationale, background, or motivation for any such redistricting proposal;

c. All drafts in the development or revision of any such redistricting proposal, including but not limited to shapefiles, files or datasets used in mapping software, each RED report, each PAR report, demographic data (including but not limited to Citizen Voting Age Population, herpanic Citizen Voting Age Population, Black Citizen Voting Age Population, Voting Age Population, herpanic Voting Age Population, and Black Voting Age Population), election data (including but not limited to reconstituted election analyses), and files related to precinct names, precinct lines, split precincts, partisan indexes, population shifts, population deviations, voter registration, Spanish Surname Voter Registration, voter affiliation, Spanish Surname Voter Turnout, or changing census geography;

d. The pairing of any incumbents in any such redistricting proposal;

e. Any redistricting amendment, whether partial or total, to each such proposal;

f. Negotiations regarding any redistricting proposal; and

g. all calculations, reports, audits, estimates, projections, or other analyses, from any source, relating to the effect or impact, of any kind—including on (1) Texas minority voters, (2) existing or emerging minority opportunity districts, or (3) voter turnout (including Spanish

Surname Voter Turnout)—that could result from the implementation of any such redistricting proposal.

**Response**. Representative Murr objects to this request because it calls for the production of documents that are subject to legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. In particular, requesting analyses "from any source" is likely to encompass documents that are protected by legislative privilege. Requesting "the origination(s)" and "the impetus, rationale, background, or motivation" of certain legislative proposals would impermissibly expose thought processes and mental impressions, which are also subject to legislative privilege. Requesting analyses that were "considered by" the Legislature, "draft in the development or revision of" redistricting proposals, "negotiations" and "calculations, reports, audits, estimates, projections, or other analyses" would be subject to legislative privilege for the same reason.

Representative Murr further objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request generally seeks shapefiles, data sets, reconstituted election analyses, amendments, information concerning the pairing of incumbents, and other general information, the Representative directs DOJ to the Texas Legislative Council's Capitol Data Portal, https://data.capitol.texas.gov/organization/tlc, where such information may be found. Insofar as the request seeks such information specifically considered by Representative Murr, the request calls for information subject to the legislative privilege.

Lastly, insofar as the request seeks legal analysis concerning the "effect or impact" of redistricting proposals on "minority voters," "existing or emerging minority opportunity districts," or "voter turnout," it seeks information that may be subject to the attorney-client privilege or constitute attorney work product.

Representative Murr is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 2**. All documents relating to the redistricting process for the Texas House or the Texas delegation to the U.S. House of Representatives, including but not limited to planning, timing, hearings, outreach, publicity, public or expert participation, deadlines, limitations, staffing, and persons or entities involved.

**Response**. Representative Murr objects to this request because it calls for documents that are subject to the legislative privilege. The request seeks documents relating to the "planning" and "timing" of the redistricting process. These go to mental impressions and legislative strategy, which are at the core of the legislative privilege. Representative Murr objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Representative Murr also objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request seeks information on the attendance and date of hearings, and persons and entities involves, such information may be found at the Texas Senate and Texas House of Representatives websites, as well as on the Texas Legislature Online ("TLO") website. *See* https://senate.texas.gov/index.php (Senate); https://house.texas.gov/ (House); https://capitol.texas.gov/Home.aspx (TLO).

Representative Murr is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 3**. All documents relating to voting patterns in Texas elections with respect to race, ethnicity, or language minority status, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Insofar as this request asks for calculations, reports, audits, estimates, projections, or other analyses used as part of the redistricting process, the Representative objects on the basis that such a request calls for documents that are subject to the legislative privilege. Documents used for the purpose of formulating legislation are at the core of the legislative privilege. Representative Murr objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

The Representative also objects to this request because it is facially overbroad. It calls for "all" documents relating to voting patterns, without any temporal limitation (other than the one included in the instructions) or further specification. For this reason, documents relating to voting patterns in Texas may well be irrelevant to the United States' claims—which are limited to several districts in the Texas House of Representatives map and Congressional map.

Representative Murr is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 4**. All documents relating to whether House Bill 1, Senate Bill 6, or any other redistricting proposal drawn, discussed, or considered with respect to the Texas House or the Texas delegation to the U.S. House of Representatives complies with the Voting Rights Act, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. The Representative objects to this request because, by its very nature, it calls for documents that are subject to the attorney-client privilege, the legislative privilege, and constitute attorney work product. Legal analysis concerning whether HB1, SB6, or other related redistricting bills

comply with the VRA will necessarily implicate these privileges. Further, communications between legislators and their staffs are privileged communications covered by the legislative privilege.

Representative Murr is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 5**. All documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives exchanged between, among, with, or within the Office of the Governor, the Office of the Representative, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate to represent Texas in the U.S. House of Representatives, any candidate for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any local elected official in Texas, any consultant, any expert, any law firm or attorney, any vendor, any other political or community group or organization, or any member of the public.

**Response**. The Representative objects to this request because it is overbroad. The request calls for "all documents relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to documents that are irrelevant to the United States' claims in this case.

Representative Murr also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of the Representative, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

The Representative also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to redistricting exchanged between the Representative and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Representative Murr is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 6**. All other documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives from July 1, 2021, to the present, including but not limited to redistricting criteria, public statements, correspondence, calendar invitations, scheduling emails, meeting minutes, agendas, attendance sheets, call logs, notes, presentations, studies, advocacy, letters, or other communications.

**Response**. The Representative objects to this request because it is overbroad. The request calls for "all documents relating redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to make documents that are irrelevant to the United States' claims in this case.

The Representative also objects to this request because it calls for documents that are subject to the legislative privilege. Among others, documents concerning "presentations," "redistricting criteria," and "meeting minutes" go to the Representative's mental impressions and motivations concerning pending legislation, which is clearly covered by the privilege. Of course, communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991).

Representative Murr is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 7**. All documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes, race, ethnicity, language minority status, or United States citizenship that were exchanged between, among, with, or within the Office of the Governor, the Office of the Representative, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate for the Texas House, any candidate to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist,

any political activist or operative, any other governmental entity, any consultant, any expert, any law firm or attorney, any vendor, any group or organization, or any member of the public.

**Response**. The Representative objects to this request because it is overbroad. The request calls for "all documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes," without any qualifications (other than the listed recipients). That is an extremely broad request, and will likely apply to make documents that are irrelevant to the United States' claims in this case.

Representative Murr also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of the Representative, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

The Representative also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to demographic enumerations or estimates exchanged between the Representative and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

The Representative objects on the basis that much the information sought by this request may be made publicly available by the U.S. Census Bureau and the Texas Demographic Center.

Representative Murr is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 8**. All documents relating to payment for services; agreements of representation, consultation, employment, services, confidentiality, or common interest; or any other type of contract relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives that include any of the following individuals or entities: Adam Foltz, Akin Gump Strauss Hauer & Feld LLP, Michael Best Strategies, any consultant, any political operative, any expert, the Office of the Texas Attorney General, any other law firm, any other attorney, any other vendor, or any other person or entity.

**Response**. The Representative objects to this request because it is overbroad and harassing. Although it appears to be bounded by specific persons and entities, the end of the request provides that the request applies to "any other attorney," "any other vendor," or "any other person or entity." The net effect is that the initial limitations are swallowed by the sheer breadth of a request that asks for "all

documents" that "[relate] to redistricting" and that include "any other person or entity." Accordingly, this request is overly broad and conducting a search of this scope and breadth without any reasonable limitation is disproportionate to the needs of this case. Further, Representative Murr is not a party to this litigation, and should not be required to produce, for example, "all documents" that "[relate] to redistricting" that include "any political operative." Such a facially overbroad requests create an undue burden. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

In addition, Representative Murr objects to this request because it calls for documents that are subject to the legislative privilege and the attorney-client privilege. Documents relating to services provided by third parties for a legislative purpose are subject to the legislative privilege. *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)). And documents relating to the Representative and any legal representation, by the Office of the Texas Attorney General or otherwise, is subject to the attorney-client privilege.

The Representative also objects on the basis that this request does not contend an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any contracts or other agreements entered into after the filing of this complaint would necessarily be irrelevant.

Representative Murr is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 9**. All non-privileged documents relating to the instant lawsuit or preceding investigation of Texas by the U.S. Department of Justice.

**Response**. The Representative objects to this request because it is overbroad. It is unclear from the face of this request why "all documents relating" to this lawsuit or the United States' preceding investigation would be relevant to the United States' claims. And insofar as these documents relate to the United States' investigation, these are documents that are more likely to be within the care, custody, or control of the United States. If such materials are more commonly held by others, including state and local law enforcement agencies, production should be requested from them rather than from an individual legislator. Given the availability of these documents from other sources, the burden of requiring the Representative to collect them far exceeds any benefit that might result. *See Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (stating that courts should "consider what information is available to the requesting party from other sources" when analyzing "the benefit side of the ledger").

The Representative also objects on the basis that this request does not contend an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any documents originating after the filing of this complaint would necessarily be irrelevant.

Representative Murr is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified

pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS *et al.*, | § § § | |
| *Plaintiffs*, | § § | Case No. 3:21-cv-259-DCG-JES-JVB |
| v. | § § | (Consolidated Cases) |
| GREG ABBOTT, *et al.*, | § § | |
| *Defendants.* | § § | |

**ANNA MACKIN'S OBJECTIONS AND RESPONSES TO**
**THE UNITED STATES' SUBPOENA FOR DOCUMENTS AND RECORDS**

TO:    Michelle Rupp, U.S. Department of Justice, Civil Rights Division, Voting Section, 950 Pennsylvania Ave. NW, 4CON 8th Floor, Washington, D.C.   20530        Email: michelle.rupp@usdoj.gov    Phone:  202-305-0565

Pursuant to the Federal Rules of Civil Procedure, Anna Mackin hereby serves Objections and Responses to the United States' Subpoena for Documents and Records.


Date: February 23, 2022                    Respectfully submitted.

KEN PAXTON                                 */s/ Patrick K. Sweeten*
Attorney General of Texas                  PATRICK K. SWEETEN
                                           Deputy Attorney General for Special Litigation
BRENT WEBSTER                              Tex. State Bar No. 00798537
First Assistant Attorney General
                                           WILLIAM T. THOMPSON
                                           Deputy Chief, Special Litigation Unit
                                           Tex. State Bar No. 24088531

                                           ERIC A. HUDSON
                                           Senior Special Counsel
                                           Tex. Bar No. 24059977

                                           KATHLEEN T. HUNKER
                                           Special Counsel
                                           Tex. State Bar No. 24118415

                                           LEIF A. OLSON
                                           Special Counsel

1

Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
Tex. State Bar No. 24064380

JACK B. DISORBO
Assistant Attorney General
Tex. State Bar No. 24120804

Office of the Attorney General
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov

**Counsel for Anna Mackin**

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2022, the attached Objections and Responses to the United States' Subpoena for Documents and Records was served on opposing counsel via electronic mail.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation

## OBJECTIONS RELEVANT TO EACH REQUEST

Ms. Mackin asserts that each of the following objections applies specifically to each request below. In the interest of brevity, these objections are offered here to avoid unnecessary repetition of objections to definitions, scope, and similar issues that afflict each request. These objections are as follows:

There is currently no protective order in place between the United States Department of Justice ("DOJ") and Ms. Mackin. To the extent that documents may be identified that are discoverable but require additional protections to prevent public disclosure, any such documents that are identified will be withheld and described in the responses, with the clarification that such production will first require entry of a protective order before the documents may be disclosed.

The Federal Rules provide that the "attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). While nonparty subpoenas are governed by Rule 45, they are also subject to the parameters defined by Rule 26. *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 607 (W.D. Tex. 2019) ("As with any other forms of discovery, the scope of discovery through a Rule 45 subpoena is governed by Rule 26(b)."). Therefore, the discovery sought here is still limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The twin demands for relevancy and proportionality "are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Thus, if the information sought is irrelevant to the party's claims or defenses, "it is not necessary to determine whether it would be proportional if it *were* relevant." *Walker v. Pioneer Prod. Servs., Inc.*, No. CV 15-0645, 2016 WL 1244510, at *3 (E.D. La. Mar. 30, 2016). Conversely, "relevance alone does not translate into automatic discoverability" because "[a]n assessment of proportionality is essential." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Accordingly, Ms. Mackin objects to these requests to the extent that the information sought is irrelevant or disproportionate.

Given Ms. Mackin's former role as special counsel to the Senate Redistricting Special Committee, and that the requested production directly relates to legislative activities, much of the requested production is subject to legislative privilege. That privilege traces its roots to before the founding of the Republic, as it has "taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries." *Tenney v. Brandhove*, 341 U.S. 372 (1951). The privilege protects not only legislators, but their staff and aides as well. *See Gravel v. United States*, 408 U.S. 606, 615-16 (1972). Here, DOJ's attempt to compel disclosure of Ms. Mackin's "thought processes or the communications [she] had with other legislators" falls squarely within the well-established contours of legislative privilege. *Perez v. Abbott*, No. 5:11-cv-360, 2014 WL 3495414 (W.D. Tex. July 11, 2014). Additional privileges, including but not limited to, attorney-client privilege, the attorney work product doctrine, and deliberative process may also be implicated by DOJ's requests, and Ms. Mackin anticipates asserting all applicable privileges implicated by the DOJ's requests. To the extent that documents responsive to DOJ's requests, Ms. Mackin anticipates withholding the materials, preparing a log that complies with the Federal Rules of Civil Procedure, and producing that log within a reasonable time.

The inadvertent production or disclosure of any privileged documents or information shall not constitute or be deemed to be a waiver of any applicable privilege with respect to such document

or information (or the contents or subject matter thereof) or with respect to any other such document or discovery now or hereafter requested or provided. Ms. Mackin reserves the right not to produce documents that are in part protected by privilege, except on a redacted basis, and to require the return of any document (and all copies thereof) inadvertently produced. Ms. Mackin likewise does not waive the right to object, on any and all grounds, to (1) the evidentiary use of documents produced in response to these requests; and (2) discovery requests relating to those documents.

A portion of the requested production is also irrelevant to DOJ's claims and is thus identified individually below. But a much larger portion of the request is not proportional to the needs of the case. The proportionality language was inserted into Rule 26(b) in 2015 "to emphasize the need for proportionality," *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017), and "highlight[] its significance," *Mannina v. D.C.*, 334 F.R.D. 336, 339 n.4 (D.D.C. 2020); *see also* Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States,[1] ("Rule 26(b)(1) crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality[.]"). As the Advisory Committee explained, this addition of overt "proportional" language was meant to better reflect the intent of the 1983 amendments, which were designed "to deal with the problem of over-discovery." Fed. R. Civ. P. 26(b) advisory committee's note (2015) (quoting the 1983 advisory notes). However, this "clear focus of the 1983 provisions may have been softened, although inadvertently, by the amendments made in 1993." *Id.* Thus, the 2015 amendment sought to "restore[] the proportionality factors to their original place in defining the scope of discovery" and reinforce the parties' obligation "to consider these factors in making discovery requests, responses, or objections." *Id.* As fully restored, the proportionality requirement "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 672 (2019). Accordingly, Ms. Mackin objects to the DOJ's subpoena to the extent that it falls short of this more stringent proportionality standard.

These responses and objections are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information or documents requested. All answers are given without prejudice to Ms. Mackin's right to object to the discovery of any documents, facts, or information discovered after the date hereof. Likewise, these responses and objections are not intended to be, and shall not be construed as, agreement with the DOJ's characterization of any facts, circumstances, or legal obligations. Ms. Mackin reserves the right to contest any such characterization as inaccurate and object to the Requests insofar as they contain any express or implied assumptions of fact or law concerning matters at issue in this litigation.

Ms. Mackin will provide responses based on terms as they are commonly understood and consistent with the Federal Rules of Civil Procedure. Ms. Mackin objects to and will refrain from extending or modifying any words employed in the Requests to comport with any expanded definitions or instructions. Ms. Mackin will answer the Requests to the extent required by the Federal Rules of Civil Procedure and the Local Rules of the Western District of Texas.

---

[1] https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Ms. Mackin objects to the definition of "document" to the extent that it calls for documents protected from disclosure by legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or any other applicable privilege.

Ms. Mackin objects to the definitions of "Legislator," "Member of the U.S. House of Representatives," "individual person," "entity," and "organization," *see* ¶¶ 2–3, 9–10 because they are overbroad and inaccurate. They improperly group all persons and entities having any relation to a particular person or entity, when in fact the particular person or entity is independent of those related persons or entities. Ms. Mackin objects to the implied application to any related persons or entities without specific enumeration.

Ms. Mackin further objects to the time period in Instruction 21, which defines the relevant time period for these responses as beginning on January 1, 2019. The claims and issues in this litigation pertain to redistricted maps that were drawn based upon data received from the United States Census Bureau in the late summer of 2021 and finalized in the fall of 2021. Accordingly, it is unreasonable and disproportionate to the needs of this case to look back to January of 2019 for documents responsive to these requests.

## RESPONSES

**Document Request 1**. All documents relating to any redistricting proposal for the Texas delegation to the U.S. House of Representatives or the Texas House, including but not limited to House Bill 1, Senate Bill 6, and any other Congressional or House redistricting proposal drawn, discussed, or considered. This request includes but is not limited to:

a. The origination(s) or source(s) of any such redistricting proposal;

b. The impetus, rationale, background, or motivation for any such redistricting proposal;

c. All drafts in the development or revision of any such redistricting proposal, including but not limited to shapefiles, files or datasets used in mapping software, each RED report, each PAR report, demographic data (including but not limited to Citizen Voting Age Population, herpanic Citizen Voting Age Population, Black Citizen Voting Age Population, Voting Age Population, herpanic Voting Age Population, and Black Voting Age Population), election data (including but not limited to reconstituted election analyses), and files related to precinct names, precinct lines, split precincts, partisan indexes, population shifts, population deviations, voter registration, Spanish Surname Voter Registration, voter affiliation, Spanish Surname Voter Turnout, or changing census geography;

d. The pairing of any incumbents in any such redistricting proposal;

e. Any redistricting amendment, whether partial or total, to each such proposal;

f. Negotiations regarding any redistricting proposal; and

g. all calculations, reports, audits, estimates, projections, or other analyses, from any source, relating to the effect or impact, of any kind—including on (1) Texas minority voters, (2) existing or emerging minority opportunity districts, or (3) voter turnout (including Spanish

Surname Voter Turnout)—that could result from the implementation of any such redistricting proposal.

**Response**. Ms. Mackin objects to this request because it calls for the production of documents that are subject to legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. In particular, requesting analyses "from any source" is likely to encompass documents that are protected by legislative privilege. Requesting "the origination(s)" and "the impetus, rationale, background, or motivation" of certain legislative proposals would impermissibly expose thought processes and mental impressions, which are also subject to legislative privilege. Requesting analyses that were "considered by" the Legislature, "draft in the development or revision of" redistricting proposals, "negotiations" and "calculations, reports, audits, estimates, projections, or other analyses" would be subject to legislative privilege for the same reason.

Ms. Mackin further objects to this request because it asks her to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request generally seeks shapefiles, data sets, reconstituted election analyses, amendments, information concerning the pairing of incumbents, and other general information, Ms. Mackin directs DOJ to the Texas Legislative Council's Capitol Data Portal, https://data.capitol.texas.gov/organization/tlc, where such information may be found. Insofar as the request seeks such information specifically considered by Ms. Mackin, the request calls for information subject to the legislative privilege.

Lastly, insofar as the request seeks legal analysis concerning the "effect or impact" of redistricting proposals on "minority voters," "existing or emerging minority opportunity districts," or "voter turnout," it seeks information that may be subject to the attorney-client privilege or constitute attorney work product.

Ms. Mackin is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 2**. All documents relating to the redistricting process for the Texas House or the Texas delegation to the U.S. House of Representatives, including but not limited to planning, timing, hearings, outreach, publicity, public or expert participation, deadlines, limitations, staffing, and persons or entities involved.

**Response**. Ms. Mackin objects to this request because it calls for documents that are subject to the legislative privilege. The request seeks documents relating to the "planning" and "timing" of the redistricting process. These go to mental impressions and legislative strategy, which are at the core of the legislative privilege. Ms. Mackin objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Ms. Mackin also objects to this request because it asks her to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request seeks information on the attendance and date of hearings, and persons and entities involves, such information may be found at the Texas Senate and Texas House of Representatives websites, as well as on the Texas Legislature Online ("TLO") website. *See* https://senate.texas.gov/index.php (Senate); https://house. texas.gov/ (House); https://capitol.texas.gov/Home.aspx (TLO).

Ms. Mackin is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 3**. All documents relating to voting patterns in Texas elections with respect to race, ethnicity, or language minority status, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Insofar as this request asks for calculations, reports, audits, estimates, projections, or other analyses used as part of the redistricting process, Ms. Mackin objects on the basis that such a request calls for documents that are subject to the legislative privilege. Documents used for the purpose of formulating legislation are at the core of the legislative privilege. Ms. Mackin objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Ms. Mackin also objects to this request because it is facially overbroad. It calls for "all" documents relating to voting patterns, without any temporal limitation (other than the one included in the instructions) or further specification. For this reason, documents relating to voting patterns in Texas may well be irrelevant to the United States' claims—which are limited to several districts in the Texas House of Representatives map and Congressional map.

Ms. Mackin is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 4**. All documents relating to whether House Bill 1, Senate Bill 6, or any other redistricting proposal drawn, discussed, or considered with respect to the Texas House or the Texas delegation to the U.S. House of Representatives complies with the Voting Rights Act, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Ms. Mackin objects to this request because, by its very nature, it calls for documents that are subject to the attorney-client privilege, the legislative privilege, and constitute attorney work product. Legal analysis concerning whether HB1, SB6, or other related redistricting bills comply with the VRA will necessarily implicate these privileges. Further, communications between legislators and their staffs are privileged communications covered by the legislative privilege.

Ms. Mackin is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 5**. All documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives exchanged between, among, with, or within the Office of the Governor, the Office of Ms. Mackin, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate to represent Texas in the U.S. House of Representatives, any candidate for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any local elected official in Texas, any consultant, any expert, any law firm or attorney, any vendor, any other political or community group or organization, or any member of the public.

**Response**. Ms. Mackin objects to this request because it is overbroad. The request calls for "all documents relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to documents that are irrelevant to the United States' claims in this case.

Ms. Mackin also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of Ms. Mackin, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

Ms. Mackin also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to redistricting exchanged between Ms. Mackin and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Ms. Mackin is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should

responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 6**. All other documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives from July 1, 2021, to the present, including but not limited to redistricting criteria, public statements, correspondence, calendar invitations, scheduling emails, meeting minutes, agendas, attendance sheets, call logs, notes, presentations, studies, advocacy, letters, or other communications.

**Response**. Ms. Mackin objects to this request because it is overbroad. The request calls for "all documents relating redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to make documents that are irrelevant to the United States' claims in this case.

Ms. Mackin also objects to this request because it calls for documents that are subject to the legislative privilege. Among others, documents concerning "presentations," "redistricting criteria," and "meeting minutes" go to Ms. Mackin's mental impressions and motivations concerning pending legislation, which is clearly covered by the privilege. Of course, communications and deliberations by legislators and their staff about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991).

Ms. Mackin is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 7**. All documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes, race, ethnicity, language minority status, or United States citizenship that were exchanged between, among, with, or within the Office of the Governor, the Office of Ms. Mackin, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate for the Texas House, any candidate to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any consultant, any expert, any law firm or attorney, any vendor, any group or organization, or any member of the public.

**Response**. Ms. Mackin objects to this request because it is overbroad. The request calls for "all documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes," without any qualifications (other than the listed recipients).

That is an extremely broad request, and will likely apply to make documents that are irrelevant to the United States' claims in this case.

Ms. Mackin also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators and their staff, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of Ms. Mackin, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

Ms. Mackin also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to demographic enumerations or estimates exchanged between Ms. Mackin and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Ms. Mackin objects on the basis that much the information sought by this request may be made publicly available by the U.S. Census Bureau and the Texas Demographic Center.

Ms. Mackin is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 8**. All documents relating to payment for services; agreements of representation, consultation, employment, services, confidentiality, or common interest; or any other type of contract relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives that include any of the following individuals or entities: Adam Foltz, Akin Gump Strauss Hauer & Feld LLP, Michael Best Strategies, any consultant, any political operative, any expert, the Office of the Texas Attorney General, any other law firm, any other attorney, any other vendor, or any other person or entity.

**Response**. Ms. Mackin objects to this request because it is overbroad and harassing. Although it appears to be bounded by specific persons and entities, the end of the request provides that the request applies to "any other attorney," "any other vendor," or "any other person or entity." The net effect is that the initial limitations are swallowed by the sheer breadth of a request that asks for "all documents" that "[relate] to redistricting" and that include "any other person or entity." Accordingly, this request is overly broad and conducting a search of this scope and breadth without any reasonable limitation is disproportionate to the needs of this case. Further, Ms. Mackin is not a party to this litigation, and should not be required to produce, for example, "all documents" that "[relate] to redistricting" that include "any political operative." Such a facially overbroad requests create an undue burden. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

10

In addition, Ms. Mackin objects to this request because it calls for documents that are subject to the legislative privilege and the attorney-client privilege. Documents relating to services provided by third parties for a legislative purpose are subject to the legislative privilege. *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)). And documents relating to Ms. Mackin and any legal representation, by the Office of the Texas Attorney General or otherwise, is subject to the attorney-client privilege.

Ms. Mackin also objects on the basis that this request does not contend an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any contracts or other agreements entered into after the filing of this complaint would necessarily be irrelevant.

Ms. Mackin is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 9**. All non-privileged documents relating to the instant lawsuit or preceding investigation of Texas by the U.S. Department of Justice.

**Response**. Ms. Mackin objects to this request because it is overbroad. It is unclear from the face of this request why "all documents relating" to this lawsuit or the United States' preceding investigation would be relevant to the United States' claims. And insofar as these documents relate to the United States' investigation, these are documents that are more likely to be within the care, custody, or control of the United States. If such materials are more commonly held by others, including state and local law enforcement agencies, production should be requested from them rather than from an individual legislator. Given the availability of these documents from other sources, the burden of requiring Ms. Mackin to collect them far exceeds any benefit that might result. *See Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (stating that courts should "consider what information is available to the requesting party from other sources" when analyzing "the benefit side of the ledger").

Ms. Mackin also objects on the basis that this request does not contend an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any documents originating after the filing of this complaint would necessarily be irrelevant.

Ms. Mackin is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS *et al.*, | § § § | |
| *Plaintiffs*, | § § | Case No. 3:21-cv-259-DCG-JES-JVB (Consolidated Cases) |
| v. | § § | |
| GREG ABBOTT, *et al.*, | § § | |
| *Defendants.* | § § | |

**SEAN OPPERMAN'S OBJECTIONS AND RESPONSES TO
THE UNITED STATES' SUBPOENA FOR DOCUMENTS AND RECORDS**

TO:   Michelle Rupp, U.S. Department of Justice, Civil Rights Division, Voting Section, 950 Pennsylvania Ave. NW, 4CON 8th Floor, Washington, D.C. 20530 Email: michelle.rupp@usdoj.gov   Phone: 202-305-0565

Pursuant to the Federal Rules of Civil Procedure, Sean Opperman hereby serves Objections and Responses to the United States' Subpoena for Documents and Records.

Date: February 23, 2022          Respectfully submitted.

KEN PAXTON                       */s/ Patrick K. Sweeten*
Attorney General of Texas        PATRICK K. SWEETEN
                                 Deputy Attorney General for Special Litigation
BRENT WEBSTER                    Tex. State Bar No. 00798537
First Assistant Attorney General
                                 WILLIAM T. THOMPSON
                                 Deputy Chief, Special Litigation Unit
                                 Tex. State Bar No. 24088531

                                 ERIC A. HUDSON
                                 Senior Special Counsel
                                 Tex. Bar No. 24059977

                                 KATHLEEN T. HUNKER
                                 Special Counsel
                                 Tex. State Bar No. 24118415

                                 LEIF A. OLSON
                                 Special Counsel

1

Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
Tex. State Bar No. 24064380

JACK B. DISORBO
Assistant Attorney General
Tex. State Bar No. 24120804

Office of the Attorney General
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov

**Counsel for Sean Opperman**

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2022, the attached Objections and Responses to the United States' Subpoena for Documents and Records was served on opposing counsel via electronic mail.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation

2

## OBJECTIONS RELEVANT TO EACH REQUEST

Mr. Opperman asserts that each of the following objections applies specifically to each request below. In the interest of brevity, these objections are offered here to avoid unnecessary repetition of objections to definitions, scope, and similar issues that afflict each request. These objections are as follows:

There is currently no protective order in place between the United States Department of Justice ("DOJ") and Mr. Opperman. To the extent that documents may be identified that are discoverable but require additional protections to prevent public disclosure, any such documents that are identified will be withheld and described in the responses, with the clarification that such production will first require entry of a protective order before the documents may be disclosed.

The Federal Rules provide that the "attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). While nonparty subpoenas are governed by Rule 45, they are also subject to the parameters established by Rule 26. *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 607 (W.D. Tex. 2019) ("As with any other forms of discovery, the scope of discovery through a Rule 45 subpoena is governed by Rule 26(b)."). Therefore, the discovery sought here is still limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The twin demands for relevancy and proportionality "are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Thus, if the information sought is irrelevant to the party's claims or defenses, "it is not necessary to determine whether it would be proportional if it *were* relevant." *Walker v. Pioneer Prod. Servs., Inc.*, No. CV 15-0645, 2016 WL 1244510, at *3 (E.D. La. Mar. 30, 2016). Conversely, "relevance alone does not translate into automatic discoverability" because "[a]n assessment of proportionality is essential." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Accordingly, Mr. Opperman objects to these requests to the extent that the information sought is irrelevant or disproportionate.

Given Mr. Opperman's role as chief of staff to Senator Joan Huffman, and that the requested production directly relates to legislative activities, much of the requested production is subject to legislative privilege. That privilege traces its roots to before the founding of the Republic, as it has "taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries." *Tenney v. Brandhove*, 341 U.S. 372 (1951). The privilege protects not only legislators, but their staff and aides as well. *See Gravel v. United States*, 408 U.S. 606, 615-16 (1972). Here, DOJ's attempt to compel disclosure of Mr. Opperman's "thought processes or the communications [he] had with other legislators" falls squarely within the well-established contours of legislative privilege. *Perez v. Abbott*, No. 5:11-cv-360, 2014 WL 3495414 (W.D. Tex. July 11, 2014). Additional privileges, including but not limited to, attorney-client privilege, the attorney work product doctrine, and deliberative process may also be implicated by DOJ's requests, and Mr. Opperman anticipates asserting all applicable privileges implicated by the DOJ's requests. To the extent that documents responsive to DOJ's requests, Mr. Opperman anticipates withholding the materials, preparing a log that complies with the Federal Rules of Civil Procedure, and producing that log within a reasonable time.

The inadvertent production or disclosure of any privileged documents or information shall not constitute or be deemed to be a waiver of any applicable privilege with respect to such document

3

or information (or the contents or subject matter thereof) or with respect to any other such document or discovery now or hereafter requested or provided. Mr. Opperman reserves the right not to produce documents that are in part protected by privilege, except on a redacted basis, and to require the return of any document (and all copies thereof) inadvertently produced. Mr. Opperman likewise does not waive the right to object, on any and all grounds, to (1) the evidentiary use of documents produced in response to these requests; and (2) discovery requests relating to those documents.

A portion of the requested production is also irrelevant to DOJ's claims and is thus identified individually below. But a much larger portion of the request is not proportional to the needs of the case. The proportionality language was inserted into Rule 26(b) in 2015 "to emphasize the need for proportionality," *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017), and "highlight[] its significance," *Mannina v. D.C.*, 334 F.R.D. 336, 339 n.4 (D.D.C. 2020); *see also* Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States,[1] ("Rule 26(b)(1) crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality[.]"). As the Advisory Committee explained, this addition of overt "proportional" language was meant to better reflect the intent of the 1983 amendments, which were designed "to deal with the problem of over-discovery." Fed. R. Civ. P. 26(b) advisory committee's note (2015) (quoting the 1983 advisory notes). However, this "clear focus of the 1983 provisions may have been softened, although inadvertently, by the amendments made in 1993." *Id.* Thus, the 2015 amendment sought to "restore[] the proportionality factors to their original place in defining the scope of discovery" and reinforce the parties' obligation "to consider these factors in making discovery requests, responses, or objections." *Id.* As fully restored, the proportionality requirement "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 672 (2019). Accordingly, Mr. Opperman objects to the DOJ's subpoena to the extent that it falls short of this more stringent proportionality standard.

These responses and objections are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information or documents requested. All answers are given without prejudice to Mr. Opperman's right to object to the discovery of any documents, facts, or information discovered after the date hereof. Likewise, these responses and objections are not intended to be, and shall not be construed as, agreement with the DOJ's characterization of any facts, circumstances, or legal obligations. Mr. Opperman reserves the right to contest any such characterization as inaccurate and object to the Requests insofar as they contain any express or implied assumptions of fact or law concerning matters at issue in this litigation.

Mr. Opperman will provide responses based on terms as they are commonly understood and consistent with the Federal Rules of Civil Procedure. Mr. Opperman objects to and will refrain from extending or modifying any words employed in the Requests to comport with any expanded definitions or instructions. Mr. Opperman will answer the Requests to the extent required by the Federal Rules of Civil Procedure and the Local Rules of the Western District of Texas.

---

[1] https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Mr. Opperman objects to the definition of "document" to the extent that it calls for documents protected from disclosure by legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or any other applicable privilege.

Mr. Opperman objects to the definitions of "Legislator," "Member of the U.S. House of Representatives," "individual person," "entity," and "organization," *see* ¶¶ 2–3, 9–10 because they are overbroad and inaccurate. They improperly group all persons and entities having any relation to a particular person or entity, when in fact the particular person or entity is independent of those related persons or entities. Mr. Opperman objects to the implied application to any related persons or entities without specific enumeration.

Mr. Opperman further objects to the time period in Instruction 21, which defines the relevant time period for these responses as beginning on January 1, 2019. The claims and issues in this litigation pertain to redistricted maps that were drawn based upon data received from the United States Census Bureau in the late summer of 2021 and finalized in the fall of 2021. Accordingly, it is unreasonable and disproportionate to the needs of this case to look back to January of 2019 for documents responsive to these requests.

## RESPONSES

**Document Request 1**. All documents relating to any redistricting proposal for the Texas delegation to the U.S. House of Representatives or the Texas House, including but not limited to House Bill 1, Senate Bill 6, and any other Congressional or House redistricting proposal drawn, discussed, or considered. This request includes but is not limited to:

a. The origination(s) or source(s) of any such redistricting proposal;

b. The impetus, rationale, background, or motivation for any such redistricting proposal;

c. All drafts in the development or revision of any such redistricting proposal, including but not limited to shapefiles, files or datasets used in mapping software, each RED report, each PAR report, demographic data (including but not limited to Citizen Voting Age Population, herpanic Citizen Voting Age Population, Black Citizen Voting Age Population, Voting Age Population, herpanic Voting Age Population, and Black Voting Age Population), election data (including but not limited to reconstituted election analyses), and files related to precinct names, precinct lines, split precincts, partisan indexes, population shifts, population deviations, voter registration, Spanish Surname Voter Registration, voter affiliation, Spanish Surname Voter Turnout, or changing census geography;

d. The pairing of any incumbents in any such redistricting proposal;

e. Any redistricting amendment, whether partial or total, to each such proposal;

f. Negotiations regarding any redistricting proposal; and

g. all calculations, reports, audits, estimates, projections, or other analyses, from any source, relating to the effect or impact, of any kind—including on (1) Texas minority voters, (2) existing or emerging minority opportunity districts, or (3) voter turnout (including Spanish

Surname Voter Turnout)—that could result from the implementation of any such redistricting proposal.

**Response**. Mr. Opperman objects to this request because it calls for the production of documents that are subject to legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. In particular, requesting analyses "from any source" is likely to encompass documents that are protected by legislative privilege. Requesting "the origination(s)" and "the impetus, rationale, background, or motivation" of certain legislative proposals would impermissibly expose thought processes and mental impressions, which are also subject to legislative privilege. Requesting analyses that were "considered by" the Legislature, "draft in the development or revision of" redistricting proposals, "negotiations" and "calculations, reports, audits, estimates, projections, or other analyses" would be subject to legislative privilege for the same reason.

Mr. Opperman further objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request generally seeks shapefiles, data sets, reconstituted election analyses, amendments, information concerning the pairing of incumbents, and other general information, Mr. Opperman directs DOJ to the Texas Legislative Council's Capitol Data Portal, https://data.capitol.texas.gov/organization/tlc, where such information may be found. Insofar as the request seeks such information specifically considered by Mr. Opperman, the request calls for information subject to the legislative privilege.

Lastly, insofar as the request seeks legal analysis concerning the "effect or impact" of redistricting proposals on "minority voters," "existing or emerging minority opportunity districts," or "voter turnout," it seeks information that may be subject to the attorney-client privilege or constitute attorney work product.

Mr. Opperman is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 2**. All documents relating to the redistricting process for the Texas House or the Texas delegation to the U.S. House of Representatives, including but not limited to planning, timing, hearings, outreach, publicity, public or expert participation, deadlines, limitations, staffing, and persons or entities involved.

**Response**. Mr. Opperman objects to this request because it calls for documents that are subject to the legislative privilege. The request seeks documents relating to the "planning" and "timing" of the redistricting process. These go to mental impressions and legislative strategy, which are at the core of the legislative privilege. Mr. Opperman objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Mr. Opperman also objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request seeks information on the attendance and date of hearings, and persons and entities involves, such information may be found at the Texas Senate and Texas House of Representatives websites, as well as on the Texas Legislature Online ("TLO") website. *See* https://senate.texas.gov/index.php (Senate); https://house. texas.gov/ (House); https://capitol.texas.gov/Home.aspx (TLO).

Mr. Opperman is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 3**. All documents relating to voting patterns in Texas elections with respect to race, ethnicity, or language minority status, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Insofar as this request asks for calculations, reports, audits, estimates, projections, or other analyses used as part of the redistricting process, Mr. Opperman objects on the basis that such a request calls for documents that are subject to the legislative privilege. Documents used for the purpose of formulating legislation are at the core of the legislative privilege. Mr. Opperman objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Mr. Opperman also objects to this request because it is facially overbroad. It calls for "all" documents relating to voting patterns, without any temporal limitation (other than the one included in the instructions) or further specification. For this reason, documents relating to voting patterns in Texas may well be irrelevant to the United States' claims—which are limited to several districts in the Texas House of Representatives map and Congressional map.

Mr. Opperman is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 4**. All documents relating to whether House Bill 1, Senate Bill 6, or any other redistricting proposal drawn, discussed, or considered with respect to the Texas House or the Texas delegation to the U.S. House of Representatives complies with the Voting Rights Act, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Mr. Opperman objects to this request because, by its very nature, it calls for documents that are subject to the attorney-client privilege, the legislative privilege, and constitute attorney work product. Legal analysis concerning whether HB1, SB6, or other related redistricting bills comply with the VRA will necessarily implicate these privileges. Further, communications between legislators and their staffs are privileged communications covered by the legislative privilege.

Mr. Opperman is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 5**. All documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives exchanged between, among, with, or within the Office of the Governor, the Office of Mr. Opperman, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate to represent Texas in the U.S. House of Representatives, any candidate for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any local elected official in Texas, any consultant, any expert, any law firm or attorney, any vendor, any other political or community group or organization, or any member of the public.

**Response**. Mr. Opperman objects to this request because it is overbroad. The request calls for "all documents relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to documents that are irrelevant to the United States' claims in this case.

Mr. Opperman also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of Mr. Opperman, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

Mr. Opperman also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to redistricting exchanged between Mr. Opperman and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Mr. Opperman is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should

responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 6**. All other documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives from July 1, 2021, to the present, including but not limited to redistricting criteria, public statements, correspondence, calendar invitations, scheduling emails, meeting minutes, agendas, attendance sheets, call logs, notes, presentations, studies, advocacy, letters, or other communications.

**Response**. Mr. Opperman objects to this request because it is overbroad. The request calls for "all documents relating redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to make documents that are irrelevant to the United States' claims in this case.

Mr. Opperman also objects to this request because it calls for documents that are subject to the legislative privilege. Among others, documents concerning "presentations," "redistricting criteria," and "meeting minutes" go to Mr. Opperman's mental impressions and motivations concerning pending legislation, which is clearly covered by the privilege. Of course, communications and deliberations by legislators and their staff about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991).

Mr. Opperman is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 7**. All documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes, race, ethnicity, language minority status, or United States citizenship that were exchanged between, among, with, or within the Office of the Governor, the Office of Mr. Opperman, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate for the Texas House, any candidate to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any consultant, any expert, any law firm or attorney, any vendor, any group or organization, or any member of the public.

**Response**. Mr. Opperman objects to this request because it is overbroad. The request calls for "all documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes," without any qualifications (other than the listed recipients).

That is an extremely broad request, and will likely apply to make documents that are irrelevant to the United States' claims in this case.

Mr. Opperman also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators and their staff, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of Mr. Opperman, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

Mr. Opperman also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to demographic enumerations or estimates exchanged between Mr. Opperman and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Mr. Opperman objects on the basis that much the information sought by this request may be made publicly available by the U.S. Census Bureau and the Texas Demographic Center.

Mr. Opperman is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 8**. All documents relating to payment for services; agreements of representation, consultation, employment, services, confidentiality, or common interest; or any other type of contract relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives that include any of the following individuals or entities: Adam Foltz, Akin Gump Strauss Hauer & Feld LLP, Michael Best Strategies, any consultant, any political operative, any expert, the Office of the Texas Attorney General, any other law firm, any other attorney, any other vendor, or any other person or entity.

**Response**. Mr. Opperman objects to this request because it is overbroad and harassing. Although it appears to be bounded by specific persons and entities, the end of the request provides that the request applies to "any other attorney," "any other vendor," or "any other person or entity." The net effect is that the initial limitations are swallowed by the sheer breadth of a request that asks for "all documents" that "[relate] to redistricting" and that include "any other person or entity." Accordingly, this request is overly broad and conducting a search of this scope and breadth without any reasonable limitation is disproportionate to the needs of this case. Further, Mr. Opperman is not a party to this litigation, and should not be required to produce, for example, "all documents" that "[relate] to redistricting" that include "any political operative." Such a facially overbroad requests create an undue burden. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

In addition, Mr. Opperman objects to this request because it calls for documents that are subject to the legislative privilege and the attorney-client privilege. Documents relating to services provided by third parties for a legislative purpose are subject to the legislative privilege. *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)). And documents relating to Mr. Opperman and any legal representation, by the Office of the Texas Attorney General or otherwise, is subject to the attorney-client privilege.

Mr. Opperman also objects on the basis that this request does not contend an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any contracts or other agreements entered into after the filing of this complaint would necessarily be irrelevant.

Mr. Opperman is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 9**. All non-privileged documents relating to the instant lawsuit or preceding investigation of Texas by the U.S. Department of Justice.

**Response**. Mr. Opperman objects to this request because it is overbroad. It is unclear from the face of this request why "all documents relating" to this lawsuit or the United States' preceding investigation would be relevant to the United States' claims. And insofar as these documents relate to the United States' investigation, these are documents that are more likely to be within the care, custody, or control of the United States. If such materials are more commonly held by others, including state and local law enforcement agencies, production should be requested from them rather than from an individual legislator. Given the availability of these documents from other sources, the burden of requiring Mr. Opperman to collect them far exceeds any benefit that might result. *See Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (stating that courts should "consider what information is available to the requesting party from other sources" when analyzing "the benefit side of the ledger").

Mr. Opperman also objects on the basis that this request does not contend an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any documents originating after the filing of this complaint would necessarily be irrelevant.

Mr. Opperman is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS *et al.*, | § § § | |
| *Plaintiffs*, | § § | Case No. 3:21-cv-259-DCG-JES-JVB (Consolidated Cases) |
| v. | § § | |
| GREG ABBOTT, *et al.*, | § § § | |
| *Defendants*. | § | |

**REPRESENTATIVE STEVE ALLISON'S OBJECTIONS AND RESPONSES TO
THE UNITED STATES' SUBPOENA FOR DOCUMENTS AND RECORDS**

TO:     Michelle Rupp, U.S. Department of Justice, Civil Rights Division, Voting Section, 950 Pennsylvania Ave. NW, 4CON 8th Floor, Washington, D.C.   20530     Email: michelle.rupp@usdoj.gov   Phone: 202-305-0565

Pursuant to the Federal Rules of Civil Procedure, Representative Steve Allison hereby serves Objections and Responses to the United States' Subpoena for Documents and Records.

Date: February 23, 2022                   Respectfully submitted.

KEN PAXTON                               */s/ Patrick K. Sweeten*
Attorney General of Texas                PATRICK K. SWEETEN
                                         Deputy Attorney General for Special Litigation
BRENT WEBSTER                            Tex. State Bar No. 00798537
First Assistant Attorney General
                                         WILLIAM T. THOMPSON
                                         Deputy Chief, Special Litigation Unit
                                         Tex. State Bar No. 24088531

                                         ERIC A. HUDSON
                                         Senior Special Counsel
                                         Tex. Bar No. 24059977

                                         KATHLEEN T. HUNKER
                                         Special Counsel
                                         Tex. State Bar No. 24118415

                                         LEIF A. OLSON
                                         Special Counsel

1

Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
Tex. State Bar No. 24064380

JACK B. DISORBO
Assistant Attorney General
Tex. State Bar No. 24120804

Office of the Attorney General
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov

**Counsel for Representative Steve Allison**


## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2022, the attached Objections and Responses to the United States' Subpoena for Documents and Records was served on opposing counsel via electronic mail.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation

2

## OBJECTIONS RELEVANT TO EACH REQUEST

Representative Allison asserts that each of the following objections applies specifically to each request below. In the interest of brevity, these objections are offered here to avoid unnecessary repetition of objections to definitions, scope, and similar issues that afflict each request. These objections are as follows:

There is currently no protective order in place between the United States Department of Justice ("DOJ") and Representative Allison. To the extent that documents may be identified that are discoverable but require additional protections to prevent public disclosure, any such documents that are identified will be withheld and described in the responses, with the clarification that such production will first require entry of a protective order before the documents may be disclosed.

The Federal Rules provide that the "attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). While nonparty subpoenas are governed by Rule 45, they are also subject to the parameters established by Rule 26. *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 607 (W.D. Tex. 2019) ("As with any other forms of discovery, the scope of discovery through a Rule 45 subpoena is governed by Rule 26(b)."). Therefore, the discovery sought here is still limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The twin demands for relevancy and proportionality "are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Thus, if the information sought is irrelevant to the party's claims or defenses, "it is not necessary to determine whether it would be proportional if it *were* relevant." *Walker v. Pioneer Prod. Servs., Inc.*, No. CV 15-0645, 2016 WL 1244510, at *3 (E.D. La. Mar. 30, 2016). Conversely, "relevance alone does not translate into automatic discoverability" because "[a]n assessment of proportionality is essential." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Accordingly, Representative Allison objects to these requests to the extent that the information sought is irrelevant or disproportionate.

Given Representative Allison's role as a member of the Texas House Representatives, and that the requested production directly relates to legislative activities, much of the requested production is subject to legislative privilege. That privilege traces its roots to before the founding of the Republic, as it has "taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries." *Tenney v. Brandhove*, 341 U.S. 372 (1951). The privilege protects not only legislators, but their staff and aides as well. *See Gravel v. United States*, 408 U.S. 606, 615-16 (1972). Here, DOJ's attempt to compel disclosure of Representative Allison's "thought processes or the communications [he] had with other legislators" falls squarely within the well-established contours of legislative privilege. *Perez v. Abbott*, No. 5:11-cv-360, 2014 WL 3495414 (W.D. Tex. July 11, 2014). Additional privileges, including but not limited to, attorney-client privilege, the attorney work product doctrine, and deliberative process may also be implicated by DOJ's requests, and Representative Allison anticipates asserting all applicable privileges implicated by the DOJ's requests. To the extent that documents responsive to DOJ's requests, Representative Allison anticipates withholding the materials, preparing a log that complies with the Federal Rules of Civil Procedure, and producing that log within a reasonable time.

The inadvertent production or disclosure of any privileged documents or information shall not constitute or be deemed to be a waiver of any applicable privilege with respect to such document

or information (or the contents or subject matter thereof) or with respect to any other such document or discovery now or hereafter requested or provided. Representative Allison reserves the right not to produce documents that are in part protected by privilege, except on a redacted basis, and to require the return of any document (and all copies thereof) inadvertently produced. Representative Allison likewise does not waive the right to object, on any and all grounds, to (1) the evidentiary use of documents produced in response to these requests; and (2) discovery requests relating to those documents.

A portion of the requested production is also irrelevant to DOJ's claims and is thus identified individually below. But a much larger portion of the request is not proportional to the needs of the case. The proportionality language was inserted into Rule 26(b) in 2015 "to emphasize the need for proportionality," *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017), and "highlight[] its significance," *Mannina v. D.C.*, 334 F.R.D. 336, 339 n.4 (D.D.C. 2020); *see also* Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States,[1] ("Rule 26(b)(1) crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality[.]"). As the Advisory Committee explained, this addition of overt "proportional" language was meant to better reflect the intent of the 1983 amendments, which were designed "to deal with the problem of over-discovery." Fed. R. Civ. P. 26(b) advisory committee's note (2015) (quoting the 1983 advisory notes). However, this "clear focus of the 1983 provisions may have been softened, although inadvertently, by the amendments made in 1993." *Id.* Thus, the 2015 amendment sought to "restore[] the proportionality factors to their original place in defining the scope of discovery" and reinforce the parties' obligation "to consider these factors in making discovery requests, responses, or objections." *Id.* As fully restored, the proportionality requirement "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 672 (2019). Accordingly, Representative Allison objects to the DOJ's subpoena to the extent that it falls short of this more stringent proportionality standard.

These responses and objections are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information or documents requested. All answers are given without prejudice to Representative Allison's right to object to the discovery of any documents, facts, or information discovered after the date hereof. Likewise, these responses and objections are not intended to be, and shall not be construed as, agreement with the DOJ's characterization of any facts, circumstances, or legal obligations. Representative Allison reserves the right to contest any such characterization as inaccurate and object to the Requests insofar as they contain any express or implied assumptions of fact or law concerning matters at issue in this litigation.

Representative Allison will provide responses based on terms as they are commonly understood and consistent with the Federal Rules of Civil Procedure. Representative Allison objects to and will refrain from extending or modifying any words employed in the Requests to comport with any expanded definitions or instructions. Representative Allison will answer the Requests to the extent required by the Federal Rules of Civil Procedure and the Local Rules of the Western District of Texas.

---

[1] https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Representative Allison objects to the definition of "document" to the extent that it calls for documents protected from disclosure by legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or any other applicable privilege.

Representative Allison objects to the definitions of "Legislator," "Member of the U.S. House of Representatives," "individual person," "entity," and "organization," *see* ¶¶ 2–3, 9–10 because they are overbroad and inaccurate. They improperly group all persons and entities having any relation to a particular person or entity, when in fact the particular person or entity is independent of those related persons or entities. The Representative objects to the implied application to any related persons or entities without specific enumeration.

Representative Allison further objects to the time period in Instruction 21, which defines the relevant time period for these responses as beginning on January 1, 2019. The claims and issues in this litigation pertain to redistricted maps that were drawn based upon data received from the United States Census Bureau in the late summer of 2021 and finalized in the fall of 2021. Accordingly, it is unreasonable and disproportionate to the needs of this case to look back to January of 2019 for documents responsive to these requests.

## RESPONSES

**Document Request 1**. All documents relating to any redistricting proposal for the Texas delegation to the U.S. House of Representatives or the Texas House, including but not limited to House Bill 1, Senate Bill 6, and any other Congressional or House redistricting proposal drawn, discussed, or considered. This request includes but is not limited to:

a.   The origination(s) or source(s) of any such redistricting proposal;

b.   The impetus, rationale, background, or motivation for any such redistricting proposal;

c.   All drafts in the development or revision of any such redistricting proposal, including but not limited to shapefiles, files or datasets used in mapping software, each RED report, each PAR report, demographic data (including but not limited to Citizen Voting Age Population, herpanic Citizen Voting Age Population, Black Citizen Voting Age Population, Voting Age Population, herpanic Voting Age Population, and Black Voting Age Population), election data (including but not limited to reconstituted election analyses), and files related to precinct names, precinct lines, split precincts, partisan indexes, population shifts, population deviations, voter registration, Spanish Surname Voter Registration, voter affiliation, Spanish Surname Voter Turnout, or changing census geography;

d.   The pairing of any incumbents in any such redistricting proposal;

e.   Any redistricting amendment, whether partial or total, to each such proposal;

f.   Negotiations regarding any redistricting proposal; and

g.   all calculations, reports, audits, estimates, projections, or other analyses, from any source, relating to the effect or impact, of any kind—including on (1) Texas minority voters, (2) existing or emerging minority opportunity districts, or (3) voter turnout (including Spanish

Surname Voter Turnout)—that could result from the implementation of any such redistricting proposal.

**Response**. Representative Allison objects to this request because it calls for the production of documents that are subject to legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. In particular, requesting analyses "from any source" is likely to encompass documents that are protected by legislative privilege. Requesting "the origination(s)" and "the impetus, rationale, background, or motivation" of certain legislative proposals would impermissibly expose thought processes and mental impressions, which are also subject to legislative privilege. Requesting analyses that were "considered by" the Legislature, "draft in the development or revision of" redistricting proposals, "negotiations" and "calculations, reports, audits, estimates, projections, or other analyses" would be subject to legislative privilege for the same reason.

Representative Allison further objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request generally seeks shapefiles, data sets, reconstituted election analyses, amendments, information concerning the pairing of incumbents, and other general information, the Representative directs DOJ to the Texas Legislative Council's Capitol Data Portal, https://data.capitol.texas.gov/organization/tlc, where such information may be found. Insofar as the request seeks such information specifically considered by Representative Allison, the request calls for information subject to the legislative privilege.

Lastly, insofar as the request seeks legal analysis concerning the "effect or impact" of redistricting proposals on "minority voters," "existing or emerging minority opportunity districts," or "voter turnout," it seeks information that may be subject to the attorney-client privilege or constitute attorney work product.

Representative Allison is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 2**. All documents relating to the redistricting process for the Texas House or the Texas delegation to the U.S. House of Representatives, including but not limited to planning, timing, hearings, outreach, publicity, public or expert participation, deadlines, limitations, staffing, and persons or entities involved.

**Response**. Representative Allison objects to this request because it calls for documents that are subject to the legislative privilege. The request seeks documents relating to the "planning" and "timing" of the redistricting process. These go to mental impressions and legislative strategy, which are at the core of the legislative privilege. Representative Allison objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Representative Allison also objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request seeks information on the attendance and date of hearings, and persons and entities involves, such information may be found at the Texas Senate and Texas House of Representatives websites, as well as on the Texas Legislature Online ("TLO") website. *See* https://senate.texas.gov/index.php (Senate); https://house.texas.gov/ (House); https://capitol.texas.gov/Home.aspx (TLO).

Representative Allison is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 3**. All documents relating to voting patterns in Texas elections with respect to race, ethnicity, or language minority status, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Insofar as this request asks for calculations, reports, audits, estimates, projections, or other analyses used as part of the redistricting process, the Representative objects on the basis that such a request calls for documents that are subject to the legislative privilege. Documents used for the purpose of formulating legislation are at the core of the legislative privilege. Representative Allison objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

The Representative also objects to this request because it is facially overbroad. It calls for "all" documents relating to voting patterns, without any temporal limitation (other than the one included in the instructions) or further specification. For this reason, documents relating to voting patterns in Texas may well be irrelevant to the United States' claims—which are limited to several districts in the Texas House of Representatives map and Congressional map.

Representative Allison is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 4**. All documents relating to whether House Bill 1, Senate Bill 6, or any other redistricting proposal drawn, discussed, or considered with respect to the Texas House or the Texas delegation to the U.S. House of Representatives complies with the Voting Rights Act, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. The Representative objects to this request because, by its very nature, it calls for documents that are subject to the attorney-client privilege, the legislative privilege, and constitute attorney work product. Legal analysis concerning whether HB1, SB6, or other related redistricting bills

comply with the VRA will necessarily implicate these privileges. Further, communications between legislators and their staffs are privileged communications covered by the legislative privilege.

Representative Allison is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 5**. All documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives exchanged between, among, with, or within the Office of the Governor, the Office of the Representative, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate to represent Texas in the U.S. House of Representatives, any candidate for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any local elected official in Texas, any consultant, any expert, any law firm or attorney, any vendor, any other political or community group or organization, or any member of the public.

**Response**. The Representative objects to this request because it is overbroad. The request calls for "all documents relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to documents that are irrelevant to the United States' claims in this case.

Representative Allison also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of the Representative, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

The Representative also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to redistricting exchanged between the Representative and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Representative Allison is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 6**. All other documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives from July 1, 2021, to the present, including but not limited to redistricting criteria, public statements, correspondence, calendar invitations, scheduling emails, meeting minutes, agendas, attendance sheets, call logs, notes, presentations, studies, advocacy, letters, or other communications.

**Response**. The Representative objects to this request because it is overbroad. The request calls for "all documents relating redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to make documents that are irrelevant to the United States' claims in this case.

The Representative also objects to this request because it calls for documents that are subject to the legislative privilege. Among others, documents concerning "presentations," "redistricting criteria," and "meeting minutes" go to the Representative's mental impressions and motivations concerning pending legislation, which is clearly covered by the privilege. Of course, communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991).

Representative Allison is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 7**. All documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes, race, ethnicity, language minority status, or United States citizenship that were exchanged between, among, with, or within the Office of the Governor, the Office of the Representative, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate for the Texas House, any candidate to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist,

any political activist or operative, any other governmental entity, any consultant, any expert, any law firm or attorney, any vendor, any group or organization, or any member of the public.

**Response**. The Representative objects to this request because it is overbroad. The request calls for "all documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes," without any qualifications (other than the listed recipients). That is an extremely broad request, and will likely apply to make documents that are irrelevant to the United States' claims in this case.

Representative Allison also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of the Representative, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

The Representative also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to demographic enumerations or estimates exchanged between the Representative and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

The Representative objects on the basis that much the information sought by this request may be made publicly available by the U.S. Census Bureau and the Texas Demographic Center.

Representative Allison is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 8**. All documents relating to payment for services; agreements of representation, consultation, employment, services, confidentiality, or common interest; or any other type of contract relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives that include any of the following individuals or entities: Adam Foltz, Akin Gump Strauss Hauer & Feld LLP, Michael Best Strategies, any consultant, any political operative, any expert, the Office of the Texas Attorney General, any other law firm, any other attorney, any other vendor, or any other person or entity.

**Response**. The Representative objects to this request because it is overbroad and harassing. Although it appears to be bounded by specific persons and entities, the end of the request provides that the request applies to "any other attorney," "any other vendor," or "any other person or entity." The net effect is that the initial limitations are swallowed by the sheer breadth of a request that asks for "all

documents" that "[relate] to redistricting" and that include "any other person or entity." Accordingly, this request is overly broad and conducting a search of this scope and breadth without any reasonable limitation is disproportionate to the needs of this case. Further, Representative Allison is not a party to this litigation, and should not be required to produce, for example, "all documents" that "[relate] to redistricting" that include "any political operative." Such a facially overbroad requests create an undue burden. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

In addition, Representative Allison objects to this request because it calls for documents that are subject to the legislative privilege and the attorney-client privilege. Documents relating to services provided by third parties for a legislative purpose are subject to the legislative privilege. *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)). And documents relating to the Representative and any legal representation, by the Office of the Texas Attorney General or otherwise, is subject to the attorney-client privilege.

The Representative also objects on the basis that this request does not contend an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any contracts or other agreements entered into after the filing of this complaint would necessarily be irrelevant.

Representative Allison is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 9**. All non-privileged documents relating to the instant lawsuit or preceding investigation of Texas by the U.S. Department of Justice.

**Response**. The Representative objects to this request because it is overbroad. It is unclear from the face of this request why "all documents relating" to this lawsuit or the United States' preceding investigation would be relevant to the United States' claims. And insofar as these documents relate to the United States' investigation, these are documents that are more likely to be within the care, custody, or control of the United States. If such materials are more commonly held by others, including state and local law enforcement agencies, production should be requested from them rather than from an individual legislator. Given the availability of these documents from other sources, the burden of requiring the Representative to collect them far exceeds any benefit that might result. *See Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (stating that courts should "consider what information is available to the requesting party from other sources" when analyzing "the benefit side of the ledger").

The Representative also objects on the basis that this request does not contend an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any documents originating after the filing of this complaint would necessarily be irrelevant.

Representative Allison is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified

11

pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS *et al.*, | § § § | |
| *Plaintiffs*, | § § | Case No. 3:21-cv-259-DCG-JES-JVB |
| v. | § § | (Consolidated Cases) |
| GREG ABBOTT, *et al.*, | § § | |
| *Defendants*. | § § | |

## REPRESENTATIVE TODD HUNTER'S OBJECTIONS AND RESPONSES TO THE UNITED STATES' SUBPOENA FOR DOCUMENTS AND RECORDS

TO:    Michelle Rupp, U.S. Department of Justice, Civil Rights Division, Voting Section, 950 Pennsylvania Ave. NW, 4CON 8th Floor, Washington, D.C.    20530    Email: michelle.rupp@usdoj.gov    Phone:  202-305-0565

Pursuant to the Federal Rules of Civil Procedure, Representative Todd Hunter hereby serves Objections and Responses to the United States' Subpoena for Documents and Records.

Date: February 23, 2022                Respectfully submitted.

KEN PAXTON                    */s/ Patrick K. Sweeten*
Attorney General of Texas            PATRICK K. SWEETEN
                        Deputy Attorney General for Special Litigation
BRENT WEBSTER                Tex. State Bar No. 00798537
First Assistant Attorney General
                        WILLIAM T. THOMPSON
                        Deputy Chief, Special Litigation Unit
                        Tex. State Bar No. 24088531

                        ERIC A. HUDSON
                        Senior Special Counsel
                        Tex. Bar No. 24059977

                        KATHLEEN T. HUNKER
                        Special Counsel
                        Tex. State Bar No. 24118415

                        LEIF A. OLSON
                        Special Counsel

Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
Tex. State Bar No. 24064380

JACK B. DISORBO
Assistant Attorney General
Tex. State Bar No. 24120804

Office of the Attorney General
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov

**Counsel for Representative Todd Hunter**


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 23, 2022, the attached Objections and Responses to the United States' Subpoena for Documents and Records was served on opposing counsel via electronic mail.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation

## OBJECTIONS RELEVANT TO EACH REQUEST

Representative Hunter asserts that each of the following objections applies specifically to each request below. In the interest of brevity, these objections are offered here to avoid unnecessary repetition of objections to definitions, scope, and similar issues that afflict each request. These objections are as follows:

There is currently no protective order in place between the United States Department of Justice ("DOJ") and Representative Hunter. To the extent that documents may be identified that are discoverable but require additional protections to prevent public disclosure, any such documents that are identified will be withheld and described in the responses, with the clarification that such production will first require entry of a protective order before the documents may be disclosed.

The Federal Rules provide that the "attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). While nonparty subpoenas are governed by Rule 45, they are also subject to the parameters established by Rule 26. *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 607 (W.D. Tex. 2019) ("As with any other forms of discovery, the scope of discovery through a Rule 45 subpoena is governed by Rule 26(b)."). Therefore, the discovery sought here is still limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The twin demands for relevancy and proportionality "are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Thus, if the information sought is irrelevant to the party's claims or defenses, "it is not necessary to determine whether it would be proportional if it *were* relevant." *Walker v. Pioneer Prod. Servs., Inc.*, No. CV 15-0645, 2016 WL 1244510, at *3 (E.D. La. Mar. 30, 2016). Conversely, "relevance alone does not translate into automatic discoverability" because "[a]n assessment of proportionality is essential." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Accordingly, Representative Hunter objects to these requests to the extent that the information sought is irrelevant or disproportionate.

Given Representative Hunter's role as a member of the Texas House Representatives, and that the requested production directly relates to legislative activities, much of the requested production is subject to legislative privilege. That privilege traces its roots to before the founding of the Republic, as it has "taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries." *Tenney v. Brandhove*, 341 U.S. 372 (1951). The privilege protects not only legislators, but their staff and aides as well. *See Gravel v. United States*, 408 U.S. 606, 615-16 (1972). Here, DOJ's attempt to compel disclosure of Representative Hunter's "thought processes or the communications [he] had with other legislators" falls squarely within the well-established contours of legislative privilege. *Perez v. Abbott*, No. 5:11-cv-360, 2014 WL 3495414 (W.D. Tex. July 11, 2014). Additional privileges, including but not limited to, attorney-client privilege, the attorney work product doctrine, and deliberative process may also be implicated by DOJ's requests, and Representative Hunter anticipates asserting all applicable privileges implicated by the DOJ's requests. To the extent that documents responsive to DOJ's requests, Representative Hunter anticipates withholding the materials, preparing a log that complies with the Federal Rules of Civil Procedure, and producing that log within a reasonable time.

The inadvertent production or disclosure of any privileged documents or information shall not constitute or be deemed to be a waiver of any applicable privilege with respect to such document

3

or information (or the contents or subject matter thereof) or with respect to any other such document or discovery now or hereafter requested or provided. Representative Hunter reserves the right not to produce documents that are in part protected by privilege, except on a redacted basis, and to require the return of any document (and all copies thereof) inadvertently produced. Representative Hunter likewise does not waive the right to object, on any and all grounds, to (1) the evidentiary use of documents produced in response to these requests; and (2) discovery requests relating to those documents.

A portion of the requested production is also irrelevant to DOJ's claims and is thus identified individually below. But a much larger portion of the request is not proportional to the needs of the case. The proportionality language was inserted into Rule 26(b) in 2015 "to emphasize the need for proportionality," *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017), and "highlight[] its significance," *Mannina v. D.C.*, 334 F.R.D. 336, 339 n.4 (D.D.C. 2020); *see also* Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States,[1] ("Rule 26(b)(1) crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality[.]"). As the Advisory Committee explained, this addition of overt "proportional" language was meant to better reflect the intent of the 1983 amendments, which were designed "to deal with the problem of over-discovery." Fed. R. Civ. P. 26(b) advisory committee's note (2015) (quoting the 1983 advisory notes). However, this "clear focus of the 1983 provisions may have been softened, although inadvertently, by the amendments made in 1993." *Id.* Thus, the 2015 amendment sought to "restore[] the proportionality factors to their original place in defining the scope of discovery" and reinforce the parties' obligation "to consider these factors in making discovery requests, responses, or objections." *Id.* As fully restored, the proportionality requirement "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 672 (2019). Accordingly, Representative Hunter objects to the DOJ's subpoena to the extent that it falls short of this more stringent proportionality standard.

These responses and objections are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information or documents requested. All answers are given without prejudice to Representative Hunter's right to object to the discovery of any documents, facts, or information discovered after the date hereof. Likewise, these responses and objections are not intended to be, and shall not be construed as, agreement with the DOJ's characterization of any facts, circumstances, or legal obligations. Representative Hunter reserves the right to contest any such characterization as inaccurate and object to the Requests insofar as they contain any express or implied assumptions of fact or law concerning matters at issue in this litigation.

Representative Hunter will provide responses based on terms as they are commonly understood and consistent with the Federal Rules of Civil Procedure. Representative Hunter objects to and will refrain from extending or modifying any words employed in the Requests to comport with any expanded definitions or instructions. Representative Hunter will answer the Requests to the extent required by the Federal Rules of Civil Procedure and the Local Rules of the Western District of Texas.

---

[1] https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Representative Hunter objects to the definition of "document" to the extent that it calls for documents protected from disclosure by legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or any other applicable privilege.

Representative Hunter objects to the definitions of "Legislator," "Member of the U.S. House of Representatives," "individual person," "entity," and "organization," *see* ¶¶ 2–3, 9–10 because they are overbroad and inaccurate. They improperly group all persons and entities having any relation to a particular person or entity, when in fact the particular person or entity is independent of those related persons or entities. The Representative objects to the implied application to any related persons or entities without specific enumeration.

Representative Hunter further objects to the time period in Instruction 21, which defines the relevant time period for these responses as beginning on January 1, 2019. The claims and issues in this litigation pertain to redistricted maps that were drawn based upon data received from the United States Census Bureau in the late summer of 2021 and finalized in the fall of 2021. Accordingly, it is unreasonable and disproportionate to the needs of this case to look back to January of 2019 for documents responsive to these requests.

## RESPONSES

**Document Request 1**. All documents relating to any redistricting proposal for the Texas delegation to the U.S. House of Representatives or the Texas House, including but not limited to House Bill 1, Senate Bill 6, and any other Congressional or House redistricting proposal drawn, discussed, or considered. This request includes but is not limited to:

a.  The origination(s) or source(s) of any such redistricting proposal;

b.  The impetus, rationale, background, or motivation for any such redistricting proposal;

c.  All drafts in the development or revision of any such redistricting proposal, including but not limited to shapefiles, files or datasets used in mapping software, each RED report, each PAR report, demographic data (including but not limited to Citizen Voting Age Population, herpanic Citizen Voting Age Population, Black Citizen Voting Age Population, Voting Age Population, herpanic Voting Age Population, and Black Voting Age Population), election data (including but not limited to reconstituted election analyses), and files related to precinct names, precinct lines, split precincts, partisan indexes, population shifts, population deviations, voter registration, Spanish Surname Voter Registration, voter affiliation, Spanish Surname Voter Turnout, or changing census geography;

d.  The pairing of any incumbents in any such redistricting proposal;

e.  Any redistricting amendment, whether partial or total, to each such proposal;

f.  Negotiations regarding any redistricting proposal; and

g.  all calculations, reports, audits, estimates, projections, or other analyses, from any source, relating to the effect or impact, of any kind—including on (1) Texas minority voters, (2) existing or emerging minority opportunity districts, or (3) voter turnout (including Spanish

5

Surname Voter Turnout)—that could result from the implementation of any such redistricting proposal.

**Response**. Representative Hunter objects to this request because it calls for the production of documents that are subject to legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. In particular, requesting analyses "from any source" is likely to encompass documents that are protected by legislative privilege. Requesting "the origination(s)" and "the impetus, rationale, background, or motivation" of certain legislative proposals would impermissibly expose thought processes and mental impressions, which are also subject to legislative privilege. Requesting analyses that were "considered by" the Legislature, "draft in the development or revision of" redistricting proposals, "negotiations" and "calculations, reports, audits, estimates, projections, or other analyses" would be subject to legislative privilege for the same reason.

Representative Hunter further objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request generally seeks shapefiles, data sets, reconstituted election analyses, amendments, information concerning the pairing of incumbents, and other general information, the Representative directs DOJ to the Texas Legislative Council's Capitol Data Portal, https://data.capitol.texas.gov/organization/tlc, where such information may be found. Insofar as the request seeks such information specifically considered by Representative Hunter, the request calls for information subject to the legislative privilege.

Lastly, insofar as the request seeks legal analysis concerning the "effect or impact" of redistricting proposals on "minority voters," "existing or emerging minority opportunity districts," or "voter turnout," it seeks information that may be subject to the attorney-client privilege or constitute attorney work product.

Representative Hunter is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 2**. All documents relating to the redistricting process for the Texas House or the Texas delegation to the U.S. House of Representatives, including but not limited to planning, timing, hearings, outreach, publicity, public or expert participation, deadlines, limitations, staffing, and persons or entities involved.

**Response**. Representative Hunter objects to this request because it calls for documents that are subject to the legislative privilege. The request seeks documents relating to the "planning" and "timing" of the redistricting process. These go to mental impressions and legislative strategy, which are at the core of the legislative privilege. Representative Hunter objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Representative Hunter also objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request seeks information on the attendance and date of hearings, and persons and entities involves, such information may be found at the Texas Senate and Texas House of Representatives websites, as well as on the Texas Legislature Online ("TLO") website. *See* https://senate.texas.gov/index.php (Senate); https://house.texas.gov/ (House); https://capitol.texas.gov/Home.aspx (TLO).

Representative Hunter is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 3**. All documents relating to voting patterns in Texas elections with respect to race, ethnicity, or language minority status, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Insofar as this request asks for calculations, reports, audits, estimates, projections, or other analyses used as part of the redistricting process, the Representative objects on the basis that such a request calls for documents that are subject to the legislative privilege. Documents used for the purpose of formulating legislation are at the core of the legislative privilege. Representative Hunter objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

The Representative also objects to this request because it is facially overbroad. It calls for "all" documents relating to voting patterns, without any temporal limitation (other than the one included in the instructions) or further specification. For this reason, documents relating to voting patterns in Texas may well be irrelevant to the United States' claims—which are limited to several districts in the Texas House of Representatives map and Congressional map.

Representative Hunter is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 4**. All documents relating to whether House Bill 1, Senate Bill 6, or any other redistricting proposal drawn, discussed, or considered with respect to the Texas House or the Texas delegation to the U.S. House of Representatives complies with the Voting Rights Act, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. The Representative objects to this request because, by its very nature, it calls for documents that are subject to the attorney-client privilege, the legislative privilege, and constitute attorney work product. Legal analysis concerning whether HB1, SB6, or other related redistricting bills

comply with the VRA will necessarily implicate these privileges. Further, communications between legislators and their staffs are privileged communications covered by the legislative privilege.

Representative Hunter is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 5**. All documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives exchanged between, among, with, or within the Office of the Governor, the Office of the Representative, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate to represent Texas in the U.S. House of Representatives, any candidate for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any local elected official in Texas, any consultant, any expert, any law firm or attorney, any vendor, any other political or community group or organization, or any member of the public.

**Response**. The Representative objects to this request because it is overbroad. The request calls for "all documents relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to documents that are irrelevant to the United States' claims in this case.

Representative Hunter also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of the Representative, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

The Representative also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to redistricting exchanged between the Representative and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Representative Hunter is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 6**. All other documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives from July 1, 2021, to the present, including but not limited to redistricting criteria, public statements, correspondence, calendar invitations, scheduling emails, meeting minutes, agendas, attendance sheets, call logs, notes, presentations, studies, advocacy, letters, or other communications.

**Response**. The Representative objects to this request because it is overbroad. The request calls for "all documents relating redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to make documents that are irrelevant to the United States' claims in this case.

The Representative also objects to this request because it calls for documents that are subject to the legislative privilege. Among others, documents concerning "presentations," "redistricting criteria," and "meeting minutes" go to the Representative's mental impressions and motivations concerning pending legislation, which is clearly covered by the privilege. Of course, communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991).

Representative Hunter is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 7**. All documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes, race, ethnicity, language minority status, or United States citizenship that were exchanged between, among, with, or within the Office of the Governor, the Office of the Representative, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate for the Texas House, any candidate to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist,

any political activist or operative, any other governmental entity, any consultant, any expert, any law firm or attorney, any vendor, any group or organization, or any member of the public.

**Response**. The Representative objects to this request because it is overbroad. The request calls for "all documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes," without any qualifications (other than the listed recipients). That is an extremely broad request, and will likely apply to make documents that are irrelevant to the United States' claims in this case.

Representative Hunter also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of the Representative, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

The Representative also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to demographic enumerations or estimates exchanged between the Representative and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

The Representative objects on the basis that much the information sought by this request may be made publicly available by the U.S. Census Bureau and the Texas Demographic Center.

Representative Hunter is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 8**. All documents relating to payment for services; agreements of representation, consultation, employment, services, confidentiality, or common interest; or any other type of contract relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives that include any of the following individuals or entities: Adam Foltz, Akin Gump Strauss Hauer & Feld LLP, Michael Best Strategies, any consultant, any political operative, any expert, the Office of the Texas Attorney General, any other law firm, any other attorney, any other vendor, or any other person or entity.

**Response**. The Representative objects to this request because it is overbroad and harassing. Although it appears to be bounded by specific persons and entities, the end of the request provides that the request applies to "any other attorney," "any other vendor," or "any other person or entity." The net effect is that the initial limitations are swallowed by the sheer breadth of a request that asks for "all

documents" that "[relate] to redistricting" and that include "any other person or entity." Accordingly, this request is overly broad and conducting a search of this scope and breadth without any reasonable limitation is disproportionate to the needs of this case. Further, Representative Hunter is not a party to this litigation, and should not be required to produce, for example, "all documents" that "[relate] to redistricting" that include "any political operative." Such a facially overbroad requests create an undue burden. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

In addition, Representative Hunter objects to this request because it calls for documents that are subject to the legislative privilege and the attorney-client privilege. Documents relating to services provided by third parties for a legislative purpose are subject to the legislative privilege. *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)). And documents relating to the Representative and any legal representation, by the Office of the Texas Attorney General or otherwise, is subject to the attorney-client privilege.

The Representative also objects on the basis that this request does not contend an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any contracts or other agreements entered into after the filing of this complaint would necessarily be irrelevant.

Representative Hunter is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 9**. All non-privileged documents relating to the instant lawsuit or preceding investigation of Texas by the U.S. Department of Justice.

**Response**. The Representative objects to this request because it is overbroad. It is unclear from the face of this request why "all documents relating" to this lawsuit or the United States' preceding investigation would be relevant to the United States' claims. And insofar as these documents relate to the United States' investigation, these are documents that are more likely to be within the care, custody, or control of the United States. If such materials are more commonly held by others, including state and local law enforcement agencies, production should be requested from them rather than from an individual legislator. Given the availability of these documents from other sources, the burden of requiring the Representative to collect them far exceeds any benefit that might result. *See Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (stating that courts should "consider what information is available to the requesting party from other sources" when analyzing "the benefit side of the ledger").

The Representative also objects on the basis that this request does not contend an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any documents originating after the filing of this complaint would necessarily be irrelevant.

Representative Hunter is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified

pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS *et al.*, | § § § | |
| *Plaintiffs*, | § § | Case No. 3:21-cv-259-DCG-JES-JVB (Consolidated Cases) |
| v. | § § § | |
| GREG ABBOTT, *et al.*, | § § | |
| *Defendants.* | § § | |

**SPEAKER OF THE HOUSE DADE PHELAN'S OBJECTIONS AND RESPONSES TO THE UNITED STATES' SUBPOENA FOR DOCUMENTS AND RECORDS**

TO:   Michelle Rupp, U.S. Department of Justice, Civil Rights Division, Voting Section, 950 Pennsylvania Ave. NW, 4CON 8th Floor, Washington, D.C. 20530   Email: michelle.rupp@usdoj.gov   Phone: 202-305-0565

Pursuant to the Federal Rules of Civil Procedure, Speaker of the House Dade Phelan hereby serves Objections and Responses to the United States' Subpoena for Documents and Records.

Date: March 3, 2022

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Respectfully submitted.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
Tex. State Bar No. 24088531

ERIC A. HUDSON
Senior Special Counsel
Tex. Bar No. 24059977

KATHLEEN T. HUNKER
Special Counsel
Tex. State Bar No. 24118415

LEIF A. OLSON
Special Counsel

1

Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
Tex. State Bar No. 24064380

JACK B. DISORBO
Assistant Attorney General
Tex. State Bar No. 24120804

Office of the Attorney General
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov

**Counsel for Speaker of the House Dade Phelan**

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2022, the attached Objections and Responses to the United States' Subpoena for Documents and Records was served on opposing counsel via electronic mail.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation

## OBJECTIONS RELEVANT TO EACH REQUEST

Speaker Phelan asserts that each of the following objections applies specifically to each request below. In the interest of brevity, these objections are offered here to avoid unnecessary repetition of objections to definitions, scope, and similar issues that afflict each request. These objections are as follows:

There is currently no protective order in place between the United States Department of Justice ("DOJ") and Speaker Phelan. To the extent that documents may be identified that are discoverable but require additional protections to prevent public disclosure, any such documents that are identified will be withheld and described in the responses, with the clarification that such production will first require entry of a protective order before the documents may be disclosed.

The Federal Rules provide that the "attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). While nonparty subpoenas are governed by Rule 45, they are also subject to the parameters established by Rule 26. *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 607 (W.D. Tex. 2019) ("As with any other forms of discovery, the scope of discovery through a Rule 45 subpoena is governed by Rule 26(b)."). Therefore, the discovery sought here is still limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The twin demands for relevancy and proportionality "are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Thus, if the information sought is irrelevant to the party's claims or defenses, "it is not necessary to determine whether it would be proportional if it *were* relevant." *Walker v. Pioneer Prod. Servs., Inc.*, No. CV 15-0645, 2016 WL 1244510, at *3 (E.D. La. Mar. 30, 2016). Conversely, "relevance alone does not translate into automatic discoverability" because "[a]n assessment of proportionality is essential." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Accordingly, Speaker Phelan objects to these requests to the extent that the information sought is irrelevant or disproportionate.

Given Speaker Phelan's role as the Speaker of the Texas House of Representatives, and that the requested production directly relates to legislative activities, much of the requested production is subject to legislative privilege. That privilege traces its roots to before the founding of the Republic, as it has "taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries." *Tenney v. Brandhove*, 341 U.S. 372 (1951). The privilege protects not only legislators, but their staff and aides as well. *See Gravel v. United States*, 408 U.S. 606, 615-16 (1972). Here, DOJ's attempt to compel disclosure of Speaker Phelan's "thought processes or the communications [he] had with other legislators" falls squarely within the well-established contours of legislative privilege. *Perez v. Abbott*, No. 5:11-cv-360, 2014 WL 3495414 (W.D. Tex. July 11, 2014). Additional privileges, including but not limited to, attorney-client privilege, the attorney work product doctrine, and deliberative process may also be implicated by DOJ's requests, and Speaker Phelan anticipates asserting all applicable privileges implicated by the DOJ's requests. To the extent that documents responsive to DOJ's requests, Speaker Phelan anticipates withholding the materials, preparing a log that complies with the Federal Rules of Civil Procedure, and producing that log within a reasonable time.

The inadvertent production or disclosure of any privileged documents or information shall not constitute or be deemed to be a waiver of any applicable privilege with respect to such document

or information (or the contents or subject matter thereof) or with respect to any other such document or discovery now or hereafter requested or provided. Speaker Phelan reserves the right not to produce documents that are in part protected by privilege, except on a redacted basis, and to require the return of any document (and all copies thereof) inadvertently produced. Speaker Phelan likewise does not waive the right to object, on any and all grounds, to (1) the evidentiary use of documents produced in response to these requests; and (2) discovery requests relating to those documents.

A portion of the requested production is also irrelevant to DOJ's claims and is thus identified individually below. But a much larger portion of the request is not proportional to the needs of the case. The proportionality language was inserted into Rule 26(b) in 2015 "to emphasize the need for proportionality," *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017), and "highlight[] its significance," *Mannina v. D.C.*, 334 F.R.D. 336, 339 n.4 (D.D.C. 2020); *see also* Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States,[1] ("Rule 26(b)(1) crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality[.]"). As the Advisory Committee explained, this addition of overt "proportional" language was meant to better reflect the intent of the 1983 amendments, which were designed "to deal with the problem of over-discovery." Fed. R. Civ. P. 26(b) advisory committee's note (2015) (quoting the 1983 advisory notes). However, this "clear focus of the 1983 provisions may have been softened, although inadvertently, by the amendments made in 1993." *Id.* Thus, the 2015 amendment sought to "restore[] the proportionality factors to their original place in defining the scope of discovery" and reinforce the parties' obligation "to consider these factors in making discovery requests, responses, or objections." *Id.* As fully restored, the proportionality requirement "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 672 (2019). Accordingly, Speaker Phelan objects to the DOJ's subpoena to the extent that it falls short of this more stringent proportionality standard.

The Speaker objects to the production of any documents or communications created after October 25, 2021 because any documents created after the passage of HB1 and SB6 are irrelevant to the United States' claims.

These responses and objections are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information or documents requested. All answers are given without prejudice to Speaker Phelan's right to object to the discovery of any documents, facts, or information discovered after the date hereof. Likewise, these responses and objections are not intended to be, and shall not be construed as, agreement with the DOJ's characterization of any facts, circumstances, or legal obligations. Speaker Phelan reserves the right to contest any such characterization as inaccurate and object to the Requests insofar as they contain any express or implied assumptions of fact or law concerning matters at issue in this litigation.

Speaker Phelan will provide responses based on terms as they are commonly understood and consistent with the Federal Rules of Civil Procedure. Speaker Phelan objects to and will refrain from extending or modifying any words employed in the Requests to comport with any expanded definitions or instructions. Speaker Phelan will answer the Requests to the extent required by the Federal Rules of Civil Procedure and the Local Rules of the Western District of Texas.

---

[1] https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Speaker Phelan objects to the definition of "document" to the extent that it calls for documents protected from disclosure by legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or any other applicable privilege.

Speaker Phelan objects to the definitions of "Legislator," "Member of the U.S. House of Representatives," "individual person," "entity," and "organization," *see* ¶¶ 2–3, 9–10 because they are overbroad and inaccurate. They improperly group all persons and entities having any relation to a particular person or entity, when in fact the particular person or entity is independent of those related persons or entities. The Speaker objects to the implied application to any related persons or entities without specific enumeration.

Speaker Phelan further objects to the time period in Instruction 21, which defines the relevant time period for these responses as beginning on January 1, 2019. The claims and issues in this litigation pertain to redistricted maps that were drawn based upon data received from the United States Census Bureau in the late summer of 2021 and finalized in the fall of 2021. Accordingly, it is unreasonable and disproportionate to the needs of this case to look back to January of 2019 for documents responsive to these requests.

## RESPONSES

**Document Request 1**. All documents relating to any redistricting proposal for the Texas delegation to the U.S. House of Representatives or the Texas House, including but not limited to House Bill 1, Senate Bill 6, and any other Congressional or House redistricting proposal drawn, discussed, or considered. This request includes but is not limited to:

a. The origination(s) or source(s) of any such redistricting proposal;

b. The impetus, rationale, background, or motivation for any such redistricting proposal;

c. All drafts in the development or revision of any such redistricting proposal, including but not limited to shapefiles, files or datasets used in mapping software, each RED report, each PAR report, demographic data (including but not limited to Citizen Voting Age Population, herpanic Citizen Voting Age Population, Black Citizen Voting Age Population, Voting Age Population, herpanic Voting Age Population, and Black Voting Age Population), election data (including but not limited to reconstituted election analyses), and files related to precinct names, precinct lines, split precincts, partisan indexes, population shifts, population deviations, voter registration, Spanish Surname Voter Registration, voter affiliation, Spanish Surname Voter Turnout, or changing census geography;

d. The pairing of any incumbents in any such redistricting proposal;

e. Any redistricting amendment, whether partial or total, to each such proposal;

f. Negotiations regarding any redistricting proposal; and

g. all calculations, reports, audits, estimates, projections, or other analyses, from any source, relating to the effect or impact, of any kind—including on (1) Texas minority voters, (2)

existing or emerging minority opportunity districts, or (3) voter turnout (including Spanish Surname Voter Turnout)—that could result from the implementation of any such redistricting proposal.

**Response**. Speaker Phelan objects to this request because it calls for the production of documents that are subject to legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. In particular, requesting analyses "from any source" is likely to encompass documents that are protected by legislative privilege. Requesting "the origination(s)" and "the impetus, rationale, background, or motivation" of certain legislative proposals would impermissibly expose thought processes and mental impressions, which are also subject to legislative privilege. Requesting analyses that were "considered by" the Legislature, "draft in the development or revision of" redistricting proposals, "negotiations" and "calculations, reports, audits, estimates, projections, or other analyses" would be subject to legislative privilege for the same reason.

Speaker Phelan further objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request generally seeks shapefiles, data sets, reconstituted election analyses, amendments, information concerning the pairing of incumbents, and other general information, the Speaker directs DOJ to the Texas Legislative Council's Capitol Data Portal, https://data.capitol.texas.gov/organization/tlc, where such information may be found. Insofar as the request seeks such information specifically considered by Speaker Phelan, the request calls for information subject to the legislative privilege.

Lastly, insofar as the request seeks legal analysis concerning the "effect or impact" of redistricting proposals on "minority voters," "existing or emerging minority opportunity districts," or "voter turnout," it seeks information that may be subject to the attorney-client privilege or constitute attorney work product.

Speaker Phelan is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 2**. All documents relating to the redistricting process for the Texas House or the Texas delegation to the U.S. House of Representatives, including but not limited to planning, timing, hearings, outreach, publicity, public or expert participation, deadlines, limitations, staffing, and persons or entities involved.

**Response**. Speaker Phelan objects to this request because it calls for documents that are subject to the legislative privilege. The request seeks documents relating to the "planning" and "timing" of the redistricting process. These go to mental impressions and legislative strategy, which are at the core of the legislative privilege. Speaker Phelan objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Speaker Phelan also objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request seeks information on the attendance and date of hearings, and persons and entities involves, such information may be found at the Texas Senate and Texas House of Representatives websites, as well as on the Texas Legislature Online ("TLO") website.     *See*     https://senate.texas.gov/index.php     (Senate);     https://house.texas.gov/ (House); https://capitol.texas.gov/Home.aspx (TLO).

Speaker Phelan is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 3**. All documents relating to voting patterns in Texas elections with respect to race, ethnicity, or language minority status, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Insofar as this request asks for calculations, reports, audits, estimates, projections, or other analyses used as part of the redistricting process, the Speaker objects on the basis that such a request calls for documents that are subject to the legislative privilege. Documents used for the purpose of formulating legislation are at the core of the legislative privilege. Speaker Phelan objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

The Speaker also objects to this request because it is facially overbroad. It calls for "all" documents relating to voting patterns, without any temporal limitation (other than the one included in the instructions) or further specification. For this reason, documents relating to voting patterns in Texas may well be irrelevant to the United States' claims—which are limited to several districts in the Texas House of Representatives map and Congressional map.

Speaker Phelan is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 4**. All documents relating to whether House Bill 1, Senate Bill 6, or any other redistricting proposal drawn, discussed, or considered with respect to the Texas House or the Texas delegation to the U.S. House of Representatives complies with the Voting Rights Act, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. The Speaker objects to this request because, by its very nature, it calls for documents that are subject to the attorney-client privilege, the legislative privilege, and constitute attorney work product. Legal analysis concerning whether HB1, SB6, or other related redistricting bills comply with the VRA will necessarily implicate these privileges. Further, communications between legislators and their staffs are privileged communications covered by the legislative privilege.

Speaker Phelan is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 5**. All documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives exchanged between, among, with, or within the Office of the Governor, the Office of the Speaker, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate to represent Texas in the U.S. House of Representatives, any candidate for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any local elected official in Texas, any consultant, any expert, any law firm or attorney, any vendor, any other political or community group or organization, or any member of the public.

**Response**. The Speaker objects to this request because it is overbroad. The request calls for "all documents relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to documents that are irrelevant to the United States' claims in this case.

Speaker Phelan also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of the Speaker, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

The Speaker also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to redistricting exchanged between the Speaker and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Speaker Phelan is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should

responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 6**. All other documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives from July 1, 2021, to the present, including but not limited to redistricting criteria, public statements, correspondence, calendar invitations, scheduling emails, meeting minutes, agendas, attendance sheets, call logs, notes, presentations, studies, advocacy, letters, or other communications.

**Response**. The Speaker objects to this request because it is overbroad. The request calls for "all documents relating redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to make documents that are irrelevant to the United States' claims in this case.

The Speaker also objects to this request because it calls for documents that are subject to the legislative privilege. Among others, documents concerning "presentations," "redistricting criteria," and "meeting minutes" go to the Speaker's mental impressions and motivations concerning pending legislation, which is clearly covered by the privilege. Of course, communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991).

Speaker Phelan is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 7**. All documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes, race, ethnicity, language minority status, or United States citizenship that were exchanged between, among, with, or within the Office of the Governor, the Office of the Speaker, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate for the Texas House, any candidate to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any consultant, any expert, any law firm or attorney, any vendor, any group or organization, or any member of the public.

**Response**. The Speaker objects to this request because it is overbroad. The request calls for "all documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes," without any qualifications (other than the listed recipients).

That is an extremely broad request, and will likely apply to make documents that are irrelevant to the United States' claims in this case.

Speaker Phelan also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of the Speaker, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

The Speaker also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to demographic enumerations or estimates exchanged between the Speaker and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

The Speaker objects on the basis that much the information sought by this request may be made publicly available by the U.S. Census Bureau and the Texas Demographic Center.

Speaker Phelan is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**<u>Document Request 8</u>**. All documents relating to payment for services; agreements of representation, consultation, employment, services, confidentiality, or common interest; or any other type of contract relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives that include any of the following individuals or entities: Adam Foltz, Akin Gump Strauss Hauer & Feld LLP, Michael Best Strategies, any consultant, any political operative, any expert, the Office of the Texas Attorney General, any other law firm, any other attorney, any other vendor, or any other person or entity.

**<u>Response</u>**. The Speaker objects to this request because it is overbroad and harassing. Although it appears to be bounded by specific persons and entities, the end of the request provides that the request applies to "any other attorney," "any other vendor," or "any other person or entity." The net effect is that the initial limitations are swallowed by the sheer breadth of a request that asks for "all documents" that "[relate] to redistricting" and that include "any other person or entity." Accordingly, this request is overly broad and conducting a search of this scope and breadth without any reasonable limitation is disproportionate to the needs of this case. Further, Speaker Phelan is not a party to this litigation, and should not be required to produce, for example, "all documents" that "[relate] to redistricting" that include "any political operative." Such a facially overbroad requests create an undue burden. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

In addition, Speaker Phelan objects to this request because it calls for documents that are subject to the legislative privilege and the attorney-client privilege. Documents relating to services provided by third parties for a legislative purpose are subject to the legislative privilege. *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)). And documents relating to the Speaker and any legal representation, by the Office of the Texas Attorney General or otherwise, is subject to the attorney-client privilege.

The Speaker also objects on the basis that this request does not list an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any contracts or other agreements entered into after the filing of this complaint would necessarily be irrelevant.

Speaker Phelan is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 9**. All non-privileged documents relating to the instant lawsuit or preceding investigation of Texas by the U.S. Department of Justice.

**Response**. The Speaker objects to this request because it is overbroad. It is unclear from the face of this request why "all documents relating" to this lawsuit or the United States' preceding investigation would be relevant to the United States' claims. And insofar as these documents relate to the United States' investigation, these are documents that are more likely to be within the care, custody, or control of the United States. If such materials are more commonly held by others, including state and local law enforcement agencies, production should be requested from them rather than from an individual legislator. Given the availability of these documents from other sources, the burden of requiring the Speaker to collect them far exceeds any benefit that might result. *See Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (stating that courts should "consider what information is available to the requesting party from other sources" when analyzing "the benefit side of the ledger").

The Speaker also objects on the basis that this request does not list an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any documents originating after the filing of this complaint would necessarily be irrelevant.

Speaker Phelan is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS *et al.*, | § § § | |
| *Plaintiffs,* | § § § | Case No. 3:21-cv-259-DCG-JES-JVB (Consolidated Cases) |
| v. | § § | |
| GREG ABBOTT, *et al.,* | § § § | |
| *Defendants.* | § | |

---

**JAY DYER'S OBJECTIONS AND RESPONSES TO
THE UNITED STATES' SUBPOENA FOR DOCUMENTS AND RECORDS**

TO:   Michelle Rupp, U.S. Department of Justice, Civil Rights Division, Voting Section, 950 Pennsylvania Ave. NW, 4CON 8th Floor, Washington, D.C. 20530 Email: michelle.rupp@usdoj.gov   Phone: 202-305-0565

Pursuant to the Federal Rules of Civil Procedure, Jay Dyer hereby serves Objections and Responses to the United States' Subpoena for Documents and Records.

Date: March 3, 2022                     Respectfully submitted.

KEN PAXTON                              */s/ Patrick K. Sweeten*
Attorney General of Texas               PATRICK K. SWEETEN
                                        Deputy Attorney General for Special Litigation
BRENT WEBSTER                           Tex. State Bar No. 00798537
First Assistant Attorney General
                                        WILLIAM T. THOMPSON
                                        Deputy Chief, Special Litigation Unit
                                        Tex. State Bar No. 24088531

                                        ERIC A. HUDSON
                                        Senior Special Counsel
                                        Tex. Bar No. 24059977

                                        KATHLEEN T. HUNKER
                                        Special Counsel
                                        Tex. State Bar No. 24118415

                                        LEIF A. OLSON
                                        Special Counsel

Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
Tex. State Bar No. 24064380

JACK B. DISORBO
Assistant Attorney General
Tex. State Bar No. 24120804

Office of the Attorney General
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov

**Counsel for Jay Dyer**


## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2022, the attached Objections and Responses to the United States' Subpoena for Documents and Records was served on opposing counsel via electronic mail.

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation

2

## OBJECTIONS RELEVANT TO EACH REQUEST

Mr. Dyer asserts that each of the following objections applies specifically to each request below. In the interest of brevity, these objections are offered here to avoid unnecessary repetition of objections to definitions, scope, and similar issues that afflict each request. These objections are as follows:

There is currently no protective order in place between the United States Department of Justice ("DOJ") and Mr. Dyer. To the extent that documents may be identified that are discoverable but require additional protections to prevent public disclosure, any such documents that are identified will be withheld and described in the responses, with the clarification that such production will first require entry of a protective order before the documents may be disclosed.

The Federal Rules provide that the "attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). While nonparty subpoenas are governed by Rule 45, they are also subject to the parameters established by Rule 26. *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 607 (W.D. Tex. 2019) ("As with any other forms of discovery, the scope of discovery through a Rule 45 subpoena is governed by Rule 26(b)."). Therefore, the discovery sought here is still limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The twin demands for relevancy and proportionality "are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Thus, if the information sought is irrelevant to the party's claims or defenses, "it is not necessary to determine whether it would be proportional if it *were* relevant." *Walker v. Pioneer Prod. Servs., Inc.*, No. CV 15-0645, 2016 WL 1244510, at *3 (E.D. La. Mar. 30, 2016). Conversely, "relevance alone does not translate into automatic discoverability" because "[a]n assessment of proportionality is essential." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Accordingly, Mr. Dyer objects to these requests to the extent that the information sought is irrelevant or disproportionate.

Given Mr. Dyer's role as deputy chief of staff to Speaker of the House Dade Phelan, and that the requested production directly relates to legislative activities, much of the requested production is subject to legislative privilege. That privilege traces its roots to before the founding of the Republic, as it has "taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries." *Tenney v. Brandhove*, 341 U.S. 372 (1951). The privilege protects not only legislators, but their staff and aides as well. *See Gravel v. United States*, 408 U.S. 606, 615-16 (1972). Here, DOJ's attempt to compel disclosure of Mr. Dyer's "thought processes or the communications [he] had with other legislators" falls squarely within the well-established contours of legislative privilege. *Perez v. Abbott*, No. 5:11-cv-360, 2014 WL 3495414 (W.D. Tex. July 11, 2014). Additional privileges, including but not limited to, attorney-client privilege, the attorney work product doctrine, and deliberative process may also be implicated by DOJ's requests, and Mr. Dyer anticipates asserting all applicable privileges implicated by the DOJ's requests. To the extent that documents responsive to DOJ's requests, Mr. Dyer anticipates withholding the materials, preparing a log that complies with the Federal Rules of Civil Procedure, and producing that log within a reasonable time.

The inadvertent production or disclosure of any privileged documents or information shall not constitute or be deemed to be a waiver of any applicable privilege with respect to such document

or information (or the contents or subject matter thereof) or with respect to any other such document or discovery now or hereafter requested or provided. Mr. Dyer reserves the right not to produce documents that are in part protected by privilege, except on a redacted basis, and to require the return of any document (and all copies thereof) inadvertently produced. Mr. Dyer likewise does not waive the right to object, on any and all grounds, to (1) the evidentiary use of documents produced in response to these requests; and (2) discovery requests relating to those documents.

A portion of the requested production is also irrelevant to DOJ's claims and is thus identified individually below. But a much larger portion of the request is not proportional to the needs of the case. The proportionality language was inserted into Rule 26(b) in 2015 "to emphasize the need for proportionality," *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017), and "highlight[] its significance," *Mannina v. D.C.*, 334 F.R.D. 336, 339 n.4 (D.D.C. 2020); *see also* Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States,[1] ("Rule 26(b)(1) crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality[.]"). As the Advisory Committee explained, this addition of overt "proportional" language was meant to better reflect the intent of the 1983 amendments, which were designed "to deal with the problem of over-discovery." Fed. R. Civ. P. 26(b) advisory committee's note (2015) (quoting the 1983 advisory notes). However, this "clear focus of the 1983 provisions may have been softened, although inadvertently, by the amendments made in 1993." *Id.* Thus, the 2015 amendment sought to "restore[] the proportionality factors to their original place in defining the scope of discovery" and reinforce the parties' obligation "to consider these factors in making discovery requests, responses, or objections." *Id.* As fully restored, the proportionality requirement "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 672 (2019). Accordingly, Mr. Dyer objects to the DOJ's subpoena to the extent that it falls short of this more stringent proportionality standard.

Mr. Dyer objects to the production of any documents or communications created after October 25, 2021 because any documents created after the passage of HB1 and SB6 are irrelevant to the United States' claims.

These responses and objections are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information or documents requested. All answers are given without prejudice to Mr. Dyer's right to object to the discovery of any documents, facts, or information discovered after the date hereof. Likewise, these responses and objections are not intended to be, and shall not be construed as, agreement with the DOJ's characterization of any facts, circumstances, or legal obligations. Mr. Dyer reserves the right to contest any such characterization as inaccurate and object to the Requests insofar as they contain any express or implied assumptions of fact or law concerning matters at issue in this litigation.

Mr. Dyer will provide responses based on terms as they are commonly understood and consistent with the Federal Rules of Civil Procedure. Mr. Dyer objects to and will refrain from extending or modifying any words employed in the Requests to comport with any expanded definitions or instructions. Mr. Dyer will answer the Requests to the extent required by the Federal Rules of Civil Procedure and the Local Rules of the Western District of Texas.

---

[1] https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Mr. Dyer objects to the definition of "document" to the extent that it calls for documents protected from disclosure by legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or any other applicable privilege.

Mr. Dyer objects to the definitions of "Legislator," "Member of the U.S. House of Representatives," "individual person," "entity," and "organization," *see* ¶¶ 2–3, 9–10 because they are overbroad and inaccurate. They improperly group all persons and entities having any relation to a particular person or entity, when in fact the particular person or entity is independent of those related persons or entities. Mr. Dyer objects to the implied application to any related persons or entities without specific enumeration.

Mr. Dyer further objects to the time period in Instruction 21, which defines the relevant time period for these responses as beginning on January 1, 2019. The claims and issues in this litigation pertain to redistricted maps that were drawn based upon data received from the United States Census Bureau in the late summer of 2021 and finalized in the fall of 2021. Accordingly, it is unreasonable and disproportionate to the needs of this case to look back to January of 2019 for documents responsive to these requests.

## RESPONSES

**Document Request 1**. All documents relating to any redistricting proposal for the Texas delegation to the U.S. House of Representatives or the Texas House, including but not limited to House Bill 1, Senate Bill 6, and any other Congressional or House redistricting proposal drawn, discussed, or considered. This request includes but is not limited to:

a.  The origination(s) or source(s) of any such redistricting proposal;

b.  The impetus, rationale, background, or motivation for any such redistricting proposal;

c.  All drafts in the development or revision of any such redistricting proposal, including but not limited to shapefiles, files or datasets used in mapping software, each RED report, each PAR report, demographic data (including but not limited to Citizen Voting Age Population, herpanic Citizen Voting Age Population, Black Citizen Voting Age Population, Voting Age Population, herpanic Voting Age Population, and Black Voting Age Population), election data (including but not limited to reconstituted election analyses), and files related to precinct names, precinct lines, split precincts, partisan indexes, population shifts, population deviations, voter registration, Spanish Surname Voter Registration, voter affiliation, Spanish Surname Voter Turnout, or changing census geography;

d.  The pairing of any incumbents in any such redistricting proposal;

e.  Any redistricting amendment, whether partial or total, to each such proposal;

f.  Negotiations regarding any redistricting proposal; and

g.  all calculations, reports, audits, estimates, projections, or other analyses, from any source, relating to the effect or impact, of any kind—including on (1) Texas minority voters, (2) existing or emerging minority opportunity districts, or (3) voter turnout (including Spanish

Surname Voter Turnout)—that could result from the implementation of any such redistricting proposal.

**Response**. Mr. Dyer objects to this request because it calls for the production of documents that are subject to legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. In particular, requesting analyses "from any source" is likely to encompass documents that are protected by legislative privilege. Requesting "the origination(s)" and "the impetus, rationale, background, or motivation" of certain legislative proposals would impermissibly expose thought processes and mental impressions, which are also subject to legislative privilege. Requesting analyses that were "considered by" the Legislature, "draft in the development or revision of" redistricting proposals, "negotiations" and "calculations, reports, audits, estimates, projections, or other analyses" would be subject to legislative privilege for the same reason.

Mr. Dyer further objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request generally seeks shapefiles, data sets, reconstituted election analyses, amendments, information concerning the pairing of incumbents, and other general information, Mr. Dyer directs DOJ to the Texas Legislative Council's Capitol Data Portal, https://data.capitol.texas.gov/organization/tlc, where such information may be found. Insofar as the request seeks such information specifically considered by Mr. Dyer, the request calls for information subject to the legislative privilege.

Lastly, insofar as the request seeks legal analysis concerning the "effect or impact" of redistricting proposals on "minority voters," "existing or emerging minority opportunity districts," or "voter turnout," it seeks information that may be subject to the attorney-client privilege or constitute attorney work product.

Mr. Dyer is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 2**. All documents relating to the redistricting process for the Texas House or the Texas delegation to the U.S. House of Representatives, including but not limited to planning, timing, hearings, outreach, publicity, public or expert participation, deadlines, limitations, staffing, and persons or entities involved.

**Response**. Mr. Dyer objects to this request because it calls for documents that are subject to the legislative privilege. The request seeks documents relating to the "planning" and "timing" of the redistricting process. These go to mental impressions and legislative strategy, which are at the core of the legislative privilege. Mr. Dyer objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Mr. Dyer also objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request seeks information on the attendance and date of hearings, and persons and entities involves, such information may be found at the Texas Senate and Texas House of Representatives websites, as well as on the Texas Legislature Online ("TLO") website. *See* https://senate.texas.gov/index.php (Senate); https://house.texas.gov/ (House); https://capitol.texas.gov/Home.aspx (TLO).

Mr. Dyer is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 3**. All documents relating to voting patterns in Texas elections with respect to race, ethnicity, or language minority status, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Insofar as this request asks for calculations, reports, audits, estimates, projections, or other analyses used as part of the redistricting process, Mr. Dyer objects on the basis that such a request calls for documents that are subject to the legislative privilege. Documents used for the purpose of formulating legislation are at the core of the legislative privilege. Mr. Dyer objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Mr. Dyer also objects to this request because it is facially overbroad. It calls for "all" documents relating to voting patterns, without any temporal limitation (other than the one included in the instructions) or further specification. For this reason, documents relating to voting patterns in Texas may well be irrelevant to the United States' claims—which are limited to several districts in the Texas House of Representatives map and Congressional map.

Mr. Dyer is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 4**. All documents relating to whether House Bill 1, Senate Bill 6, or any other redistricting proposal drawn, discussed, or considered with respect to the Texas House or the Texas delegation to the U.S. House of Representatives complies with the Voting Rights Act, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Mr. Dyer objects to this request because, by its very nature, it calls for documents that are subject to the attorney-client privilege, the legislative privilege, and constitute attorney work product. Legal analysis concerning whether HB1, SB6, or other related redistricting bills comply with the VRA will necessarily implicate these privileges. Further, communications between legislators and their staffs are privileged communications covered by the legislative privilege.

Mr. Dyer is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 5**. All documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives exchanged between, among, with, or within the Office of the Governor, the Office of Mr. Dyer, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate to represent Texas in the U.S. House of Representatives, any candidate for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any local elected official in Texas, any consultant, any expert, any law firm or attorney, any vendor, any other political or community group or organization, or any member of the public.

**Response**. Mr. Dyer objects to this request because it is overbroad. The request calls for "all documents relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to documents that are irrelevant to the United States' claims in this case.

Mr. Dyer also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of Mr. Dyer, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

Mr. Dyer also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to redistricting exchanged between Mr. Dyer and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Mr. Dyer is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should

responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 6**. All other documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives from July 1, 2021, to the present, including but not limited to redistricting criteria, public statements, correspondence, calendar invitations, scheduling emails, meeting minutes, agendas, attendance sheets, call logs, notes, presentations, studies, advocacy, letters, or other communications.

**Response**. Mr. Dyer objects to this request because it is overbroad. The request calls for "all documents relating redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to make documents that are irrelevant to the United States' claims in this case.

Mr. Dyer also objects to this request because it calls for documents that are subject to the legislative privilege. Among others, documents concerning "presentations," "redistricting criteria," and "meeting minutes" go to Mr. Dyer's mental impressions and motivations concerning pending legislation, which is clearly covered by the privilege. Of course, communications and deliberations by legislators and their staff about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991).

Mr. Dyer is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 7**. All documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes, race, ethnicity, language minority status, or United States citizenship that were exchanged between, among, with, or within the Office of the Governor, the Office of Mr. Dyer, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate for the Texas House, any candidate to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any consultant, any expert, any law firm or attorney, any vendor, any group or organization, or any member of the public.

**Response**. Mr. Dyer objects to this request because it is overbroad. The request calls for "all documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes," without any qualifications (other than the listed recipients).

9

That is an extremely broad request, and will likely apply to make documents that are irrelevant to the United States' claims in this case.

Mr. Dyer also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators and their staff, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of Mr. Dyer, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

Mr. Dyer also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to demographic enumerations or estimates exchanged between Mr. Dyer and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Mr. Dyer objects on the basis that much the information sought by this request may be made publicly available by the U.S. Census Bureau and the Texas Demographic Center.

Mr. Dyer is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 8**. All documents relating to payment for services; agreements of representation, consultation, employment, services, confidentiality, or common interest; or any other type of contract relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives that include any of the following individuals or entities: Adam Foltz, Akin Gump Strauss Hauer & Feld LLP, Michael Best Strategies, any consultant, any political operative, any expert, the Office of the Texas Attorney General, any other law firm, any other attorney, any other vendor, or any other person or entity.

**Response**. Mr. Dyer objects to this request because it is overbroad and harassing. Although it appears to be bounded by specific persons and entities, the end of the request provides that the request applies to "any other attorney," "any other vendor," or "any other person or entity." The net effect is that the initial limitations are swallowed by the sheer breadth of a request that asks for "all documents" that "[relate] to redistricting" and that include "any other person or entity." Accordingly, this request is overly broad and conducting a search of this scope and breadth without any reasonable limitation is disproportionate to the needs of this case. Further, Mr. Dyer is not a party to this litigation, and should not be required to produce, for example, "all documents" that "[relate] to redistricting" that include "any political operative." Such a facially overbroad requests create an undue burden. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

In addition, Mr. Dyer objects to this request because it calls for documents that are subject to the legislative privilege and the attorney-client privilege. Documents relating to services provided by third parties for a legislative purpose are subject to the legislative privilege. *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)). And documents relating to Mr. Dyer and any legal representation, by the Office of the Texas Attorney General or otherwise, is subject to the attorney-client privilege.

Mr. Dyer also objects on the basis that this request does not list an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any contracts or other agreements entered into after the filing of this complaint would necessarily be irrelevant.

Mr. Dyer is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 9**. All non-privileged documents relating to the instant lawsuit or preceding investigation of Texas by the U.S. Department of Justice.

**Response**. Mr. Dyer objects to this request because it is overbroad. It is unclear from the face of this request why "all documents relating" to this lawsuit or the United States' preceding investigation would be relevant to the United States' claims. And insofar as these documents relate to the United States' investigation, these are documents that are more likely to be within the care, custody, or control of the United States. If such materials are more commonly held by others, including state and local law enforcement agencies, production should be requested from them rather than from an individual legislator. Given the availability of these documents from other sources, the burden of requiring Mr. Dyer to collect them far exceeds any benefit that might result. *See Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (stating that courts should "consider what information is available to the requesting party from other sources" when analyzing "the benefit side of the ledger").

Mr. Dyer also objects on the basis that this request does not list an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any documents originating after the filing of this complaint would necessarily be irrelevant.

Mr. Dyer is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS *et al.*, | § § § | |
| *Plaintiffs*, | § § | Case No. 3:21-cv-259-DCG-JES-JVB (Consolidated Cases) |
| v. | § § | |
| GREG ABBOTT, *et al.*, | § § | |
| *Defendants.* | § § | |

**JULIA RATHGEBER'S OBJECTIONS AND RESPONSES TO
THE UNITED STATES' SUBPOENA FOR DOCUMENTS AND RECORDS**

TO:    Michelle Rupp, U.S. Department of Justice, Civil Rights Division, Voting Section, 950 Pennsylvania Ave. NW, 4CON 8th Floor, Washington, D.C. 20530 Email: michelle.rupp@usdoj.gov   Phone: 202-305-0565

Pursuant to the Federal Rules of Civil Procedure, Julia Rathgeber hereby serves Objections and Responses to the United States' Subpoena for Documents and Records.

Date: March 3, 2022                    Respectfully submitted.

KEN PAXTON                             */s/ Patrick K. Sweeten*
Attorney General of Texas              PATRICK K. SWEETEN
                                       Deputy Attorney General for Special Litigation
BRENT WEBSTER                          Tex. State Bar No. 00798537
First Assistant Attorney General
                                       WILLIAM T. THOMPSON
                                       Deputy Chief, Special Litigation Unit
                                       Tex. State Bar No. 24088531

                                       ERIC A. HUDSON
                                       Senior Special Counsel
                                       Tex. Bar No. 24059977

                                       KATHLEEN T. HUNKER
                                       Special Counsel
                                       Tex. State Bar No. 24118415

                                       LEIF A. OLSON
                                       Special Counsel

1

Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
Tex. State Bar No. 24064380

JACK B. DISORBO
Assistant Attorney General
Tex. State Bar No. 24120804

Office of the Attorney General
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov

**Counsel for Julia Rathgeber**

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2022, the attached Objections and Responses to the United States' Subpoena for Documents and Records was served on opposing counsel via electronic mail.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation

2

## OBJECTIONS RELEVANT TO EACH REQUEST

Ms. Rathgeber asserts that each of the following objections applies specifically to each request below. In the interest of brevity, these objections are offered here to avoid unnecessary repetition of objections to definitions, scope, and similar issues that afflict each request. These objections are as follows:

There is currently no protective order in place between the United States Department of Justice ("DOJ") and Ms. Rathgeber. To the extent that documents may be identified that are discoverable but require additional protections to prevent public disclosure, any such documents that are identified will be withheld and described in the responses, with the clarification that such production will first require entry of a protective order before the documents may be disclosed.

The Federal Rules provide that the "attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). While nonparty subpoenas are governed by Rule 45, they are also subject to the parameters established by Rule 26. *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 607 (W.D. Tex. 2019) ("As with any other forms of discovery, the scope of discovery through a Rule 45 subpoena is governed by Rule 26(b)."). Therefore, the discovery sought here is still limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The twin demands for relevancy and proportionality "are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Thus, if the information sought is irrelevant to the party's claims or defenses, "it is not necessary to determine whether it would be proportional if it *were* relevant." *Walker v. Pioneer Prod. Servs., Inc.*, No. CV 15-0645, 2016 WL 1244510, at *3 (E.D. La. Mar. 30, 2016). Conversely, "relevance alone does not translate into automatic discoverability" because "[a]n assessment of proportionality is essential." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Accordingly, Ms. Rathgeber objects to these requests to the extent that the information sought is irrelevant or disproportionate.

Given Ms. Rathgeber's role as former deputy chief of staff to Speaker of the House Dade Phelan, and that the requested production directly relates to legislative activities, much of the requested production is subject to legislative privilege. That privilege traces its roots to before the founding of the Republic, as it has "taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries." *Tenney v. Brandhove*, 341 U.S. 372 (1951). The privilege protects not only legislators, but their staff and aides as well. *See Gravel v. United States*, 408 U.S. 606, 615-16 (1972). Here, DOJ's attempt to compel disclosure of Ms. Rathgeber's "thought processes or the communications [she] had with other legislators" falls squarely within the well-established contours of legislative privilege. *Perez v. Abbott*, No. 5:11-cv-360, 2014 WL 3495414 (W.D. Tex. July 11, 2014). Additional privileges, including but not limited to, attorney-client privilege, the attorney work product doctrine, and deliberative process may also be implicated by DOJ's requests, and Ms. Rathgeber anticipates asserting all applicable privileges implicated by the DOJ's requests. To the extent that documents responsive to DOJ's requests, Ms. Rathgeber anticipates withholding the materials, preparing a log that complies with the Federal Rules of Civil Procedure, and producing that log within a reasonable time.

The inadvertent production or disclosure of any privileged documents or information shall not constitute or be deemed to be a waiver of any applicable privilege with respect to such document

3

or information (or the contents or subject matter thereof) or with respect to any other such document or discovery now or hereafter requested or provided. Ms. Rathgeber reserves the right not to produce documents that are in part protected by privilege, except on a redacted basis, and to require the return of any document (and all copies thereof) inadvertently produced. Ms. Rathgeber likewise does not waive the right to object, on any and all grounds, to (1) the evidentiary use of documents produced in response to these requests; and (2) discovery requests relating to those documents.

A portion of the requested production is also irrelevant to DOJ's claims and is thus identified individually below. But a much larger portion of the request is not proportional to the needs of the case. The proportionality language was inserted into Rule 26(b) in 2015 "to emphasize the need for proportionality," *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017), and "highlight[] its significance," *Mannina v. D.C.*, 334 F.R.D. 336, 339 n.4 (D.D.C. 2020); *see also* Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States,[1] ("Rule 26(b)(1) crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality[.]"). As the Advisory Committee explained, this addition of overt "proportional" language was meant to better reflect the intent of the 1983 amendments, which were designed "to deal with the problem of over-discovery." Fed. R. Civ. P. 26(b) advisory committee's note (2015) (quoting the 1983 advisory notes). However, this "clear focus of the 1983 provisions may have been softened, although inadvertently, by the amendments made in 1993." *Id.* Thus, the 2015 amendment sought to "restore[] the proportionality factors to their original place in defining the scope of discovery" and reinforce the parties' obligation "to consider these factors in making discovery requests, responses, or objections." *Id.* As fully restored, the proportionality requirement "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 672 (2019). Accordingly, Ms. Rathgeber objects to the DOJ's subpoena to the extent that it falls short of this more stringent proportionality standard.

Ms. Rathgeber objects to the production of any documents or communications created after October 25, 2021 because any documents created after the passage of HB1 and SB6 are irrelevant to the United States' claims.

These responses and objections are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information or documents requested. All answers are given without prejudice to Ms. Rathgeber's right to object to the discovery of any documents, facts, or information discovered after the date hereof. Likewise, these responses and objections are not intended to be, and shall not be construed as, agreement with the DOJ's characterization of any facts, circumstances, or legal obligations. Ms. Rathgeber reserves the right to contest any such characterization as inaccurate and object to the Requests insofar as they contain any express or implied assumptions of fact or law concerning matters at issue in this litigation.

Ms. Rathgeber will provide responses based on terms as they are commonly understood and consistent with the Federal Rules of Civil Procedure. Ms. Rathgeber objects to and will refrain from extending or modifying any words employed in the Requests to comport with any expanded definitions or instructions. Ms. Rathgeber will answer the Requests to the extent required by the Federal Rules of Civil Procedure and the Local Rules of the Western District of Texas.

---

[1] https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Ms. Rathgeber objects to the definition of "document" to the extent that it calls for documents protected from disclosure by legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or any other applicable privilege.

Ms. Rathgeber objects to the definitions of "Legislator," "Member of the U.S. House of Representatives," "individual person," "entity," and "organization," *see* ¶¶ 2–3, 9–10 because they are overbroad and inaccurate. They improperly group all persons and entities having any relation to a particular person or entity, when in fact the particular person or entity is independent of those related persons or entities. Ms. Rathgeber objects to the implied application to any related persons or entities without specific enumeration.

Ms. Rathgeber further objects to the time period in Instruction 21, which defines the relevant time period for these responses as beginning on January 1, 2019. The claims and issues in this litigation pertain to redistricted maps that were drawn based upon data received from the United States Census Bureau in the late summer of 2021 and finalized in the fall of 2021. Accordingly, it is unreasonable and disproportionate to the needs of this case to look back to January of 2019 for documents responsive to these requests.

## RESPONSES

**Document Request 1**. All documents relating to any redistricting proposal for the Texas delegation to the U.S. House of Representatives or the Texas House, including but not limited to House Bill 1, Senate Bill 6, and any other Congressional or House redistricting proposal drawn, discussed, or considered. This request includes but is not limited to:

a.   The origination(s) or source(s) of any such redistricting proposal;

b.   The impetus, rationale, background, or motivation for any such redistricting proposal;

c.   All drafts in the development or revision of any such redistricting proposal, including but not limited to shapefiles, files or datasets used in mapping software, each RED report, each PAR report, demographic data (including but not limited to Citizen Voting Age Population, herpanic Citizen Voting Age Population, Black Citizen Voting Age Population, Voting Age Population, herpanic Voting Age Population, and Black Voting Age Population), election data (including but not limited to reconstituted election analyses), and files related to precinct names, precinct lines, split precincts, partisan indexes, population shifts, population deviations, voter registration, Spanish Surname Voter Registration, voter affiliation, Spanish Surname Voter Turnout, or changing census geography;

d.   The pairing of any incumbents in any such redistricting proposal;

e.   Any redistricting amendment, whether partial or total, to each such proposal;

f.   Negotiations regarding any redistricting proposal; and

g.   all calculations, reports, audits, estimates, projections, or other analyses, from any source, relating to the effect or impact, of any kind—including on (1) Texas minority voters, (2) existing or emerging minority opportunity districts, or (3) voter turnout (including Spanish

Surname Voter Turnout)—that could result from the implementation of any such redistricting proposal.

**Response**. Ms. Rathgeber objects to this request because it calls for the production of documents that are subject to legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. In particular, requesting analyses "from any source" is likely to encompass documents that are protected by legislative privilege. Requesting "the origination(s)" and "the impetus, rationale, background, or motivation" of certain legislative proposals would impermissibly expose thought processes and mental impressions, which are also subject to legislative privilege. Requesting analyses that were "considered by" the Legislature, "draft in the development or revision of" redistricting proposals, "negotiations" and "calculations, reports, audits, estimates, projections, or other analyses" would be subject to legislative privilege for the same reason.

Ms. Rathgeber further objects to this request because it asks her to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request generally seeks shapefiles, data sets, reconstituted election analyses, amendments, information concerning the pairing of incumbents, and other general information, Ms. Rathgeber directs DOJ to the Texas Legislative Council's Capitol Data Portal, https://data.capitol.texas.gov/organization/tlc, where such information may be found. Insofar as the request seeks such information specifically considered by Ms. Rathgeber, the request calls for information subject to the legislative privilege.

Lastly, insofar as the request seeks legal analysis concerning the "effect or impact" of redistricting proposals on "minority voters," "existing or emerging minority opportunity districts," or "voter turnout," it seeks information that may be subject to the attorney-client privilege or constitute attorney work product.

Ms. Rathgeber is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 2**. All documents relating to the redistricting process for the Texas House or the Texas delegation to the U.S. House of Representatives, including but not limited to planning, timing, hearings, outreach, publicity, public or expert participation, deadlines, limitations, staffing, and persons or entities involved.

**Response**. Ms. Rathgeber objects to this request because it calls for documents that are subject to the legislative privilege. The request seeks documents relating to the "planning" and "timing" of the redistricting process. These go to mental impressions and legislative strategy, which are at the core of the legislative privilege. Ms. Rathgeber objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Ms. Rathgeber also objects to this request because it asks her to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request seeks information on the attendance and date of hearings, and persons and entities involves, such information may be found at the Texas Senate and Texas House of Representatives websites, as well as on the Texas Legislature Online ("TLO") website. *See* https://senate.texas.gov/index.php (Senate); https://house.texas.gov/ (House); https://capitol.texas.gov/Home.aspx (TLO).

Ms. Rathgeber is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 3**. All documents relating to voting patterns in Texas elections with respect to race, ethnicity, or language minority status, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Insofar as this request asks for calculations, reports, audits, estimates, projections, or other analyses used as part of the redistricting process, Ms. Rathgeber objects on the basis that such a request calls for documents that are subject to the legislative privilege. Documents used for the purpose of formulating legislation are at the core of the legislative privilege. Ms. Rathgeber objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Ms. Rathgeber also objects to this request because it is facially overbroad. It calls for "all" documents relating to voting patterns, without any temporal limitation (other than the one included in the instructions) or further specification. For this reason, documents relating to voting patterns in Texas may well be irrelevant to the United States' claims—which are limited to several districts in the Texas House of Representatives map and Congressional map.

Ms. Rathgeber is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 4**. All documents relating to whether House Bill 1, Senate Bill 6, or any other redistricting proposal drawn, discussed, or considered with respect to the Texas House or the Texas delegation to the U.S. House of Representatives complies with the Voting Rights Act, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Ms. Rathgeber objects to this request because, by its very nature, it calls for documents that are subject to the attorney-client privilege, the legislative privilege, and constitute attorney work product. Legal analysis concerning whether HB1, SB6, or other related redistricting bills comply with the VRA will necessarily implicate these privileges. Further, communications between legislators and their staffs are privileged communications covered by the legislative privilege.

Ms. Rathgeber is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 5**. All documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives exchanged between, among, with, or within the Office of the Governor, the Office of Ms. Rathgeber, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate to represent Texas in the U.S. House of Representatives, any candidate for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any local elected official in Texas, any consultant, any expert, any law firm or attorney, any vendor, any other political or community group or organization, or any member of the public.

**Response**. Ms. Rathgeber objects to this request because it is overbroad. The request calls for "all documents relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to documents that are irrelevant to the United States' claims in this case.

Ms. Rathgeber also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of Ms. Rathgeber, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

Ms. Rathgeber also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to redistricting exchanged between Ms. Rathgeber and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Ms. Rathgeber is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should

responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 6**. All other documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives from July 1, 2021, to the present, including but not limited to redistricting criteria, public statements, correspondence, calendar invitations, scheduling emails, meeting minutes, agendas, attendance sheets, call logs, notes, presentations, studies, advocacy, letters, or other communications.

**Response**. Ms. Rathgeber objects to this request because it is overbroad. The request calls for "all documents relating redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to make documents that are irrelevant to the United States' claims in this case.

Ms. Rathgeber also objects to this request because it calls for documents that are subject to the legislative privilege. Among others, documents concerning "presentations," "redistricting criteria," and "meeting minutes" go to Ms. Rathgeber's mental impressions and motivations concerning pending legislation, which is clearly covered by the privilege. Of course, communications and deliberations by legislators and their staff about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991).

Ms. Rathgeber is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 7**. All documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes, race, ethnicity, language minority status, or United States citizenship that were exchanged between, among, with, or within the Office of the Governor, the Office of Ms. Rathgeber, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate for the Texas House, any candidate to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any consultant, any expert, any law firm or attorney, any vendor, any group or organization, or any member of the public.

**Response**. Ms. Rathgeber objects to this request because it is overbroad. The request calls for "all documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes," without any qualifications (other than the listed recipients).

That is an extremely broad request, and will likely apply to make documents that are irrelevant to the United States' claims in this case.

Ms. Rathgeber also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators and their staff, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of Ms. Rathgeber, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

Ms. Rathgeber also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to demographic enumerations or estimates exchanged between Ms. Rathgeber and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Ms. Rathgeber objects on the basis that much the information sought by this request may be made publicly available by the U.S. Census Bureau and the Texas Demographic Center.

Ms. Rathgeber is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 8**. All documents relating to payment for services; agreements of representation, consultation, employment, services, confidentiality, or common interest; or any other type of contract relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives that include any of the following individuals or entities: Adam Foltz, Akin Gump Strauss Hauer & Feld LLP, Michael Best Strategies, any consultant, any political operative, any expert, the Office of the Texas Attorney General, any other law firm, any other attorney, any other vendor, or any other person or entity.

**Response**. Ms. Rathgeber objects to this request because it is overbroad and harassing. Although it appears to be bounded by specific persons and entities, the end of the request provides that the request applies to "any other attorney," "any other vendor," or "any other person or entity." The net effect is that the initial limitations are swallowed by the sheer breadth of a request that asks for "all documents" that "[relate] to redistricting" and that include "any other person or entity." Accordingly, this request is overly broad and conducting a search of this scope and breadth without any reasonable limitation is disproportionate to the needs of this case. Further, Ms. Rathgeber is not a party to this litigation, and should not be required to produce, for example, "all documents" that "[relate] to redistricting" that include "any political operative." Such a facially overbroad requests create an undue burden. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

In addition, Ms. Rathgeber objects to this request because it calls for documents that are subject to the legislative privilege and the attorney-client privilege. Documents relating to services provided by third parties for a legislative purpose are subject to the legislative privilege. *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)). And documents relating to Ms. Rathgeber and any legal representation, by the Office of the Texas Attorney General or otherwise, is subject to the attorney-client privilege.

Ms. Rathgeber also objects on the basis that this request does not list an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any contracts or other agreements entered into after the filing of this complaint would necessarily be irrelevant.

Ms. Rathgeber is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 9**. All non-privileged documents relating to the instant lawsuit or preceding investigation of Texas by the U.S. Department of Justice.

**Response**. Ms. Rathgeber objects to this request because it is overbroad. It is unclear from the face of this request why "all documents relating" to this lawsuit or the United States' preceding investigation would be relevant to the United States' claims. And insofar as these documents relate to the United States' investigation, these are documents that are more likely to be within the care, custody, or control of the United States. If such materials are more commonly held by others, including state and local law enforcement agencies, production should be requested from them rather than from an individual legislator. Given the availability of these documents from other sources, the burden of requiring Ms. Rathgeber to collect them far exceeds any benefit that might result. *See Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (stating that courts should "consider what information is available to the requesting party from other sources" when analyzing "the benefit side of the ledger").

Ms. Rathgeber also objects on the basis that this request does not list an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any documents originating after the filing of this complaint would necessarily be irrelevant.

Ms. Rathgeber is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS *et al.*, | § § § | |
| *Plaintiffs*, | § § | Case No. 3:21-cv-259-DCG-JES-JVB (Consolidated Cases) |
| v. | § § § | |
| GREG ABBOTT, *et al.*, | § § | |
| *Defendants.* | § § | |

**MARK BELL'S OBJECTIONS AND RESPONSES TO
THE UNITED STATES' SUBPOENA FOR DOCUMENTS AND RECORDS**

TO:   Michelle Rupp, U.S. Department of Justice, Civil Rights Division, Voting Section, 950 Pennsylvania Ave. NW, 4CON 8th Floor, Washington, D.C. 20530 Email: michelle.rupp@usdoj.gov   Phone: 202-305-0565

Pursuant to the Federal Rules of Civil Procedure, Mark Bell hereby serves Objections and Responses to the United States' Subpoena for Documents and Records.

Date: March 3, 2022                    Respectfully submitted.

KEN PAXTON                           */s/ Patrick K. Sweeten*
Attorney General of Texas            PATRICK K. SWEETEN
                                     Deputy Attorney General for Special Litigation
BRENT WEBSTER                        Tex. State Bar No. 00798537
First Assistant Attorney General
                                     WILLIAM T. THOMPSON
                                     Deputy Chief, Special Litigation Unit
                                     Tex. State Bar No. 24088531

                                     ERIC A. HUDSON
                                     Senior Special Counsel
                                     Tex. Bar No. 24059977

                                     KATHLEEN T. HUNKER
                                     Special Counsel
                                     Tex. State Bar No. 24118415

                                     LEIF A. OLSON
                                     Special Counsel

Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
Tex. State Bar No. 24064380

JACK B. DISORBO
Assistant Attorney General
Tex. State Bar No. 24120804

Office of the Attorney General
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov

**Counsel for Mark Bell**

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2022, the attached Objections and Responses to the United States' Subpoena for Documents and Records was served on opposing counsel via electronic mail.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation

2

## OBJECTIONS RELEVANT TO EACH REQUEST

Mr. Bell asserts that each of the following objections applies specifically to each request below. In the interest of brevity, these objections are offered here to avoid unnecessary repetition of objections to definitions, scope, and similar issues that afflict each request. These objections are as follows:

There is currently no protective order in place between the United States Department of Justice ("DOJ") and Mr. Bell. To the extent that documents may be identified that are discoverable but require additional protections to prevent public disclosure, any such documents that are identified will be withheld and described in the responses, with the clarification that such production will first require entry of a protective order before the documents may be disclosed.

The Federal Rules provide that the "attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). While nonparty subpoenas are governed by Rule 45, they are also subject to the parameters established by Rule 26. *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 607 (W.D. Tex. 2019) ("As with any other forms of discovery, the scope of discovery through a Rule 45 subpoena is governed by Rule 26(b)."). Therefore, the discovery sought here is still limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The twin demands for relevancy and proportionality "are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Thus, if the information sought is irrelevant to the party's claims or defenses, "it is not necessary to determine whether it would be proportional if it *were* relevant." *Walker v. Pioneer Prod. Servs., Inc.*, No. CV 15-0645, 2016 WL 1244510, at *3 (E.D. La. Mar. 30, 2016). Conversely, "relevance alone does not translate into automatic discoverability" because "[a]n assessment of proportionality is essential." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Accordingly, Mr. Bell objects to these requests to the extent that the information sought is irrelevant or disproportionate.

Given Mr. Bell's role as former deputy chief of staff to Speaker of the House Dade Phelan, and that the requested production directly relates to legislative activities, much of the requested production is subject to legislative privilege. That privilege traces its roots to before the founding of the Republic, as it has "taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries." *Tenney v. Brandhove*, 341 U.S. 372 (1951). The privilege protects not only legislators, but their staff and aides as well. *See Gravel v. United States*, 408 U.S. 606, 615-16 (1972). Here, DOJ's attempt to compel disclosure of Mr. Bell's "thought processes or the communications [he] had with other legislators" falls squarely within the well-established contours of legislative privilege. *Perez v. Abbott*, No. 5:11-cv-360, 2014 WL 3495414 (W.D. Tex. July 11, 2014). Additional privileges, including but not limited to, attorney-client privilege, the attorney work product doctrine, and deliberative process may also be implicated by DOJ's requests, and Mr. Bell anticipates asserting all applicable privileges implicated by the DOJ's requests. To the extent that documents responsive to DOJ's requests, Mr. Bell anticipates withholding the materials, preparing a log that complies with the Federal Rules of Civil Procedure, and producing that log within a reasonable time.

The inadvertent production or disclosure of any privileged documents or information shall not constitute or be deemed to be a waiver of any applicable privilege with respect to such document

or information (or the contents or subject matter thereof) or with respect to any other such document or discovery now or hereafter requested or provided. Mr. Bell reserves the right not to produce documents that are in part protected by privilege, except on a redacted basis, and to require the return of any document (and all copies thereof) inadvertently produced. Mr. Bell likewise does not waive the right to object, on any and all grounds, to (1) the evidentiary use of documents produced in response to these requests; and (2) discovery requests relating to those documents.

A portion of the requested production is also irrelevant to DOJ's claims and is thus identified individually below. But a much larger portion of the request is not proportional to the needs of the case. The proportionality language was inserted into Rule 26(b) in 2015 "to emphasize the need for proportionality," *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017), and "highlight[] its significance," *Mannina v. D.C.*, 334 F.R.D. 336, 339 n.4 (D.D.C. 2020); *see also* Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States,[1] ("Rule 26(b)(1) crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality[.]"). As the Advisory Committee explained, this addition of overt "proportional" language was meant to better reflect the intent of the 1983 amendments, which were designed "to deal with the problem of over-discovery." Fed. R. Civ. P. 26(b) advisory committee's note (2015) (quoting the 1983 advisory notes). However, this "clear focus of the 1983 provisions may have been softened, although inadvertently, by the amendments made in 1993." *Id.* Thus, the 2015 amendment sought to "restore[] the proportionality factors to their original place in defining the scope of discovery" and reinforce the parties' obligation "to consider these factors in making discovery requests, responses, or objections." *Id.* As fully restored, the proportionality requirement "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 672 (2019). Accordingly, Mr. Bell objects to the DOJ's subpoena to the extent that it falls short of this more stringent proportionality standard.

Mr. Bell objects to the production of any documents or communications created after October 25, 2021 because any documents created after the passage of HB1 and SB6 are irrelevant to the United States' claims.

These responses and objections are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information or documents requested. All answers are given without prejudice to Mr. Bell's right to object to the discovery of any documents, facts, or information discovered after the date hereof. Likewise, these responses and objections are not intended to be, and shall not be construed as, agreement with the DOJ's characterization of any facts, circumstances, or legal obligations. Mr. Bell reserves the right to contest any such characterization as inaccurate and object to the Requests insofar as they contain any express or implied assumptions of fact or law concerning matters at issue in this litigation.

Mr. Bell will provide responses based on terms as they are commonly understood and consistent with the Federal Rules of Civil Procedure. Mr. Bell objects to and will refrain from extending or modifying any words employed in the Requests to comport with any expanded definitions or instructions. Mr. Bell will answer the Requests to the extent required by the Federal Rules of Civil Procedure and the Local Rules of the Western District of Texas.

---

[1] https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Mr. Bell objects to the definition of "document" to the extent that it calls for documents protected from disclosure by legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or any other applicable privilege.

Mr. Bell objects to the definitions of "Legislator," "Member of the U.S. House of Representatives," "individual person," "entity," and "organization," *see* ¶¶ 2–3, 9–10 because they are overbroad and inaccurate. They improperly group all persons and entities having any relation to a particular person or entity, when in fact the particular person or entity is independent of those related persons or entities. Mr. Bell objects to the implied application to any related persons or entities without specific enumeration.

Mr. Bell further objects to the time period in Instruction 21, which defines the relevant time period for these responses as beginning on January 1, 2019. The claims and issues in this litigation pertain to redistricted maps that were drawn based upon data received from the United States Census Bureau in the late summer of 2021 and finalized in the fall of 2021. Accordingly, it is unreasonable and disproportionate to the needs of this case to look back to January of 2019 for documents responsive to these requests.

## RESPONSES

**Document Request 1**. All documents relating to any redistricting proposal for the Texas delegation to the U.S. House of Representatives or the Texas House, including but not limited to House Bill 1, Senate Bill 6, and any other Congressional or House redistricting proposal drawn, discussed, or considered. This request includes but is not limited to:

a.   The origination(s) or source(s) of any such redistricting proposal;

b.   The impetus, rationale, background, or motivation for any such redistricting proposal;

c.   All drafts in the development or revision of any such redistricting proposal, including but not limited to shapefiles, files or datasets used in mapping software, each RED report, each PAR report, demographic data (including but not limited to Citizen Voting Age Population, herpanic Citizen Voting Age Population, Black Citizen Voting Age Population, Voting Age Population, herpanic Voting Age Population, and Black Voting Age Population), election data (including but not limited to reconstituted election analyses), and files related to precinct names, precinct lines, split precincts, partisan indexes, population shifts, population deviations, voter registration, Spanish Surname Voter Registration, voter affiliation, Spanish Surname Voter Turnout, or changing census geography;

d.   The pairing of any incumbents in any such redistricting proposal;

e.   Any redistricting amendment, whether partial or total, to each such proposal;

f.   Negotiations regarding any redistricting proposal; and

g.   all calculations, reports, audits, estimates, projections, or other analyses, from any source, relating to the effect or impact, of any kind—including on (1) Texas minority voters, (2) existing or emerging minority opportunity districts, or (3) voter turnout (including Spanish

Surname Voter Turnout)—that could result from the implementation of any such redistricting proposal.

**Response**. Mr. Bell objects to this request because it calls for the production of documents that are subject to legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. In particular, requesting analyses "from any source" is likely to encompass documents that are protected by legislative privilege. Requesting "the origination(s)" and "the impetus, rationale, background, or motivation" of certain legislative proposals would impermissibly expose thought processes and mental impressions, which are also subject to legislative privilege. Requesting analyses that were "considered by" the Legislature, "draft in the development or revision of" redistricting proposals, "negotiations" and "calculations, reports, audits, estimates, projections, or other analyses" would be subject to legislative privilege for the same reason.

Mr. Bell further objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request generally seeks shapefiles, data sets, reconstituted election analyses, amendments, information concerning the pairing of incumbents, and other general information, Mr. Bell directs DOJ to the Texas Legislative Council's Capitol Data Portal, https://data.capitol.texas.gov/organization/tlc, where such information may be found. Insofar as the request seeks such information specifically considered by Mr. Bell, the request calls for information subject to the legislative privilege.

Lastly, insofar as the request seeks legal analysis concerning the "effect or impact" of redistricting proposals on "minority voters," "existing or emerging minority opportunity districts," or "voter turnout," it seeks information that may be subject to the attorney-client privilege or constitute attorney work product.

Mr. Bell is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 2**. All documents relating to the redistricting process for the Texas House or the Texas delegation to the U.S. House of Representatives, including but not limited to planning, timing, hearings, outreach, publicity, public or expert participation, deadlines, limitations, staffing, and persons or entities involved.

**Response**. Mr. Bell objects to this request because it calls for documents that are subject to the legislative privilege. The request seeks documents relating to the "planning" and "timing" of the redistricting process. These go to mental impressions and legislative strategy, which are at the core of the legislative privilege. Mr. Bell objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Mr. Bell also objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request seeks information on the attendance and date of hearings, and persons and entities involves, such information may be found at the Texas Senate and Texas House of Representatives websites, as well as on the Texas Legislature Online ("TLO") website. *See* https://senate.texas.gov/index.php (Senate); https://house. texas.gov/ (House); https://capitol.texas.gov/Home.aspx (TLO).

Mr. Bell is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 3**. All documents relating to voting patterns in Texas elections with respect to race, ethnicity, or language minority status, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Insofar as this request asks for calculations, reports, audits, estimates, projections, or other analyses used as part of the redistricting process, Mr. Bell objects on the basis that such a request calls for documents that are subject to the legislative privilege. Documents used for the purpose of formulating legislation are at the core of the legislative privilege. Mr. Bell objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Mr. Bell also objects to this request because it is facially overbroad. It calls for "all" documents relating to voting patterns, without any temporal limitation (other than the one included in the instructions) or further specification. For this reason, documents relating to voting patterns in Texas may well be irrelevant to the United States' claims—which are limited to several districts in the Texas House of Representatives map and Congressional map.

Mr. Bell is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 4**. All documents relating to whether House Bill 1, Senate Bill 6, or any other redistricting proposal drawn, discussed, or considered with respect to the Texas House or the Texas delegation to the U.S. House of Representatives complies with the Voting Rights Act, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Mr. Bell objects to this request because, by its very nature, it calls for documents that are subject to the attorney-client privilege, the legislative privilege, and constitute attorney work product. Legal analysis concerning whether HB1, SB6, or other related redistricting bills comply with the VRA will necessarily implicate these privileges. Further, communications between legislators and their staffs are privileged communications covered by the legislative privilege.

Mr. Bell is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 5**. All documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives exchanged between, among, with, or within the Office of the Governor, the Office of Mr. Bell, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate to represent Texas in the U.S. House of Representatives, any candidate for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any local elected official in Texas, any consultant, any expert, any law firm or attorney, any vendor, any other political or community group or organization, or any member of the public.

**Response**. Mr. Bell objects to this request because it is overbroad. The request calls for "all documents relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to documents that are irrelevant to the United States' claims in this case.

Mr. Bell also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of Mr. Bell, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

Mr. Bell also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to redistricting exchanged between Mr. Bell and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Mr. Bell is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should

responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 6**. All other documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives from July 1, 2021, to the present, including but not limited to redistricting criteria, public statements, correspondence, calendar invitations, scheduling emails, meeting minutes, agendas, attendance sheets, call logs, notes, presentations, studies, advocacy, letters, or other communications.

**Response**. Mr. Bell objects to this request because it is overbroad. The request calls for "all documents relating redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to make documents that are irrelevant to the United States' claims in this case.

Mr. Bell also objects to this request because it calls for documents that are subject to the legislative privilege. Among others, documents concerning "presentations," "redistricting criteria," and "meeting minutes" go to Mr. Bell's mental impressions and motivations concerning pending legislation, which is clearly covered by the privilege. Of course, communications and deliberations by legislators and their staff about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991).

Mr. Bell is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 7**. All documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes, race, ethnicity, language minority status, or United States citizenship that were exchanged between, among, with, or within the Office of the Governor, the Office of Mr. Bell, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate for the Texas House, any candidate to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any consultant, any expert, any law firm or attorney, any vendor, any group or organization, or any member of the public.

**Response**. Mr. Bell objects to this request because it is overbroad. The request calls for "all documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes," without any qualifications (other than the listed recipients).

That is an extremely broad request, and will likely apply to make documents that are irrelevant to the United States' claims in this case.

Mr. Bell also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators and their staff, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of Mr. Bell, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

Mr. Bell also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to demographic enumerations or estimates exchanged between Mr. Bell and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Mr. Bell objects on the basis that much the information sought by this request may be made publicly available by the U.S. Census Bureau and the Texas Demographic Center.

Mr. Bell is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 8**. All documents relating to payment for services; agreements of representation, consultation, employment, services, confidentiality, or common interest; or any other type of contract relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives that include any of the following individuals or entities: Adam Foltz, Akin Gump Strauss Hauer & Feld LLP, Michael Best Strategies, any consultant, any political operative, any expert, the Office of the Texas Attorney General, any other law firm, any other attorney, any other vendor, or any other person or entity.

**Response**. Mr. Bell objects to this request because it is overbroad and harassing. Although it appears to be bounded by specific persons and entities, the end of the request provides that the request applies to "any other attorney," "any other vendor," or "any other person or entity." The net effect is that the initial limitations are swallowed by the sheer breadth of a request that asks for "all documents" that "[relate] to redistricting" and that include "any other person or entity." Accordingly, this request is overly broad and conducting a search of this scope and breadth without any reasonable limitation is disproportionate to the needs of this case. Further, Mr. Bell is not a party to this litigation, and should not be required to produce, for example, "all documents" that "[relate] to redistricting" that include "any political operative." Such a facially overbroad requests create an undue burden. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

In addition, Mr. Bell objects to this request because it calls for documents that are subject to the legislative privilege and the attorney-client privilege. Documents relating to services provided by third parties for a legislative purpose are subject to the legislative privilege. *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)). And documents relating to Mr. Bell and any legal representation, by the Office of the Texas Attorney General or otherwise, is subject to the attorney-client privilege.

Mr. Bell also objects on the basis that this request does not list an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any contracts or other agreements entered into after the filing of this complaint would necessarily be irrelevant.

Mr. Bell is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 9**. All non-privileged documents relating to the instant lawsuit or preceding investigation of Texas by the U.S. Department of Justice.

**Response**. Mr. Bell objects to this request because it is overbroad. It is unclear from the face of this request why "all documents relating" to this lawsuit or the United States' preceding investigation would be relevant to the United States' claims. And insofar as these documents relate to the United States' investigation, these are documents that are more likely to be within the care, custody, or control of the United States. If such materials are more commonly held by others, including state and local law enforcement agencies, production should be requested from them rather than from an individual legislator. Given the availability of these documents from other sources, the burden of requiring Mr. Bell to collect them far exceeds any benefit that might result. *See Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (stating that courts should "consider what information is available to the requesting party from other sources" when analyzing "the benefit side of the ledger").

Mr. Bell also objects on the basis that this request does not list an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any documents originating after the filing of this complaint would necessarily be irrelevant.

Mr. Bell is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

11

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS *et al.*, | § § § | |
| *Plaintiffs*, | § § | Case No. 3:21-cv-259-DCG-JES-JVB |
| v. | § § | (Consolidated Cases) |
| GREG ABBOTT, *et al.*, | § § | |
| *Defendants.* | § § | |

## ANGIE FLORES'S OBJECTIONS AND RESPONSES TO THE UNITED STATES' SUBPOENA FOR DOCUMENTS AND RECORDS

TO:   Michelle Rupp, U.S. Department of Justice, Civil Rights Division, Voting Section, 950 Pennsylvania Ave. NW, 4CON 8th Floor, Washington, D.C.   20530        Email: michelle.rupp@usdoj.gov    Phone:  202-305-0565

    Pursuant to the Federal Rules of Civil Procedure, Angie Flores hereby serves Objections and Responses to the United States' Subpoena for Documents and Records.


Date: March 4, 2022                    Respectfully submitted.

KEN PAXTON                         */s/ Patrick K. Sweeten*
Attorney General of Texas              PATRICK K. SWEETEN
                                  Deputy Attorney General for Special Litigation
BRENT WEBSTER                       Tex. State Bar No. 00798537
First Assistant Attorney General

                                  WILLIAM T. THOMPSON
                                  Deputy Chief, Special Litigation Unit
                                  Tex. State Bar No. 24088531

                                  ERIC A. HUDSON
                                  Senior Special Counsel
                                  Tex. Bar No. 24059977

                                  KATHLEEN T. HUNKER
                                  Special Counsel
                                  Tex. State Bar No. 24118415

                                  LEIF A. OLSON
                                  Special Counsel

Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
Tex. State Bar No. 24064380

JACK B. DISORBO
Assistant Attorney General
Tex. State Bar No. 24120804

Office of the Attorney General
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov

**Counsel for Angie Flores**


## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2022, the attached Objections and Responses to the United States' Subpoena for Documents and Records was served on opposing counsel via electronic mail.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation

## OBJECTIONS RELEVANT TO EACH REQUEST

Ms. Flores asserts that each of the following objections applies specifically to each request below. In the interest of brevity, these objections are offered here to avoid unnecessary repetition of objections to definitions, scope, and similar issues that afflict each request. These objections are as follows:

There is currently no protective order in place between the United States Department of Justice ("DOJ") and Ms. Flores. To the extent that documents may be identified that are discoverable but require additional protections to prevent public disclosure, any such documents that are identified will be withheld and described in the responses, with the clarification that such production will first require entry of a protective order before the documents may be disclosed.

The Federal Rules provide that the "attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). While nonparty subpoenas are governed by Rule 45, they are also subject to the parameters established by Rule 26. *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 607 (W.D. Tex. 2019) ("As with any other forms of discovery, the scope of discovery through a Rule 45 subpoena is governed by Rule 26(b)."). Therefore, the discovery sought here is still limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The twin demands for relevancy and proportionality "are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Thus, if the information sought is irrelevant to the party's claims or defenses, "it is not necessary to determine whether it would be proportional if it *were* relevant." *Walker v. Pioneer Prod. Servs., Inc.*, No. CV 15-0645, 2016 WL 1244510, at *3 (E.D. La. Mar. 30, 2016). Conversely, "relevance alone does not translate into automatic discoverability" because "[a]n assessment of proportionality is essential." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Accordingly, Ms. Flores objects to these requests to the extent that the information sought is irrelevant or disproportionate.

Given Ms. Flores's role as chief of staff to Representative Todd Hunter, and that the requested production directly relates to legislative activities, much of the requested production is subject to legislative privilege. That privilege traces its roots to before the founding of the Republic, as it has "taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries." *Tenney v. Brandhove*, 341 U.S. 372 (1951). The privilege protects not only legislators, but their staff and aides as well. *See Gravel v. United States*, 408 U.S. 606, 615-16 (1972). Here, DOJ's attempt to compel disclosure of Ms. Flores's "thought processes or the communications [she] had with other legislators" falls squarely within the well-established contours of legislative privilege. *Perez v. Abbott*, No. 5:11-cv-360, 2014 WL 3495414 (W.D. Tex. July 11, 2014). Additional privileges, including but not limited to, attorney-client privilege, the attorney work product doctrine, and deliberative process may also be implicated by DOJ's requests, and Ms. Flores anticipates asserting all applicable privileges implicated by the DOJ's requests. To the extent that documents responsive to DOJ's requests, Ms. Flores anticipates withholding the materials, preparing a log that complies with the Federal Rules of Civil Procedure, and producing that log within a reasonable time.

The inadvertent production or disclosure of any privileged documents or information shall not constitute or be deemed to be a waiver of any applicable privilege with respect to such document

or information (or the contents or subject matter thereof) or with respect to any other such document or discovery now or hereafter requested or provided. Ms. Flores reserves the right not to produce documents that are in part protected by privilege, except on a redacted basis, and to require the return of any document (and all copies thereof) inadvertently produced. Ms. Flores likewise does not waive the right to object, on any and all grounds, to (1) the evidentiary use of documents produced in response to these requests; and (2) discovery requests relating to those documents.

A portion of the requested production is also irrelevant to DOJ's claims and is thus identified individually below. But a much larger portion of the request is not proportional to the needs of the case. The proportionality language was inserted into Rule 26(b) in 2015 "to emphasize the need for proportionality," *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017), and "highlight[] its significance," *Mannina v. D.C.*, 334 F.R.D. 336, 339 n.4 (D.D.C. 2020); *see also* Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States,[1] ("Rule 26(b)(1) crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality[.]"). As the Advisory Committee explained, this addition of overt "proportional" language was meant to better reflect the intent of the 1983 amendments, which were designed "to deal with the problem of over-discovery." Fed. R. Civ. P. 26(b) advisory committee's note (2015) (quoting the 1983 advisory notes). However, this "clear focus of the 1983 provisions may have been softened, although inadvertently, by the amendments made in 1993." *Id.* Thus, the 2015 amendment sought to "restore[] the proportionality factors to their original place in defining the scope of discovery" and reinforce the parties' obligation "to consider these factors in making discovery requests, responses, or objections." *Id.* As fully restored, the proportionality requirement "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 672 (2019). Accordingly, Ms. Flores objects to the DOJ's subpoena to the extent that it falls short of this more stringent proportionality standard.

Ms. Flores objects to the production of any documents or communications created after October 25, 2021 because any documents created after the passage of HB1 and SB6 are irrelevant to the United States' claims.

These responses and objections are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information or documents requested. All answers are given without prejudice to Ms. Flores's right to object to the discovery of any documents, facts, or information discovered after the date hereof. Likewise, these responses and objections are not intended to be, and shall not be construed as, agreement with the DOJ's characterization of any facts, circumstances, or legal obligations. Ms. Flores reserves the right to contest any such characterization as inaccurate and object to the Requests insofar as they contain any express or implied assumptions of fact or law concerning matters at issue in this litigation.

Ms. Flores will provide responses based on terms as they are commonly understood and consistent with the Federal Rules of Civil Procedure. Ms. Flores objects to and will refrain from extending or modifying any words employed in the Requests to comport with any expanded definitions or instructions. Ms. Flores will answer the Requests to the extent required by the Federal Rules of Civil Procedure and the Local Rules of the Western District of Texas.

---

[1] https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Ms. Flores objects to the definition of "document" to the extent that it calls for documents protected from disclosure by legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or any other applicable privilege.

Ms. Flores objects to the definitions of "Legislator," "Member of the U.S. House of Representatives," "individual person," "entity," and "organization," *see* ¶¶ 2–3, 9–10 because they are overbroad and inaccurate. They improperly group all persons and entities having any relation to a particular person or entity, when in fact the particular person or entity is independent of those related persons or entities. Ms. Flores objects to the implied application to any related persons or entities without specific enumeration.

Ms. Flores further objects to the time period in Instruction 21, which defines the relevant time period for these responses as beginning on January 1, 2019. The claims and issues in this litigation pertain to redistricted maps that were drawn based upon data received from the United States Census Bureau in the late summer of 2021 and finalized in the fall of 2021. Accordingly, it is unreasonable and disproportionate to the needs of this case to look back to January of 2019 for documents responsive to these requests.

## RESPONSES

**Document Request 1**. All documents relating to any redistricting proposal for the Texas delegation to the U.S. House of Representatives or the Texas House, including but not limited to House Bill 1, Senate Bill 6, and any other Congressional or House redistricting proposal drawn, discussed, or considered. This request includes but is not limited to:

a. The origination(s) or source(s) of any such redistricting proposal;

b. The impetus, rationale, background, or motivation for any such redistricting proposal;

c. All drafts in the development or revision of any such redistricting proposal, including but not limited to shapefiles, files or datasets used in mapping software, each RED report, each PAR report, demographic data (including but not limited to Citizen Voting Age Population, herpanic Citizen Voting Age Population, Black Citizen Voting Age Population, Voting Age Population, herpanic Voting Age Population, and Black Voting Age Population), election data (including but not limited to reconstituted election analyses), and files related to precinct names, precinct lines, split precincts, partisan indexes, population shifts, population deviations, voter registration, Spanish Surname Voter Registration, voter affiliation, Spanish Surname Voter Turnout, or changing census geography;

d. The pairing of any incumbents in any such redistricting proposal;

e. Any redistricting amendment, whether partial or total, to each such proposal;

f. Negotiations regarding any redistricting proposal; and

g.  all calculations, reports, audits, estimates, projections, or other analyses, from any source, relating to the effect or impact, of any kind—including on (1) Texas minority voters, (2) existing or emerging minority opportunity districts, or (3) voter turnout (including Spanish Surname Voter Turnout)—that could result from the implementation of any such redistricting proposal.

**Response**. Ms. Flores objects to this request because it calls for the production of documents that are subject to legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. In particular, requesting analyses "from any source" is likely to encompass documents that are protected by legislative privilege. Requesting "the origination(s)" and "the impetus, rationale, background, or motivation" of certain legislative proposals would impermissibly expose thought processes and mental impressions, which are also subject to legislative privilege. Requesting analyses that were "considered by" the Legislature, "draft in the development or revision of" redistricting proposals, "negotiations" and "calculations, reports, audits, estimates, projections, or other analyses" would be subject to legislative privilege for the same reason.

Ms. Flores further objects to this request because it asks her to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request generally seeks shapefiles, data sets, reconstituted election analyses, amendments, information concerning the pairing of incumbents, and other general information, Ms. Flores directs DOJ to the Texas Legislative Council's Capitol Data Portal, https://data.capitol.texas.gov/organization/tlc, where such information may be found. Insofar as the request seeks such information specifically considered by Ms. Flores, the request calls for information subject to the legislative privilege.

Lastly, insofar as the request seeks legal analysis concerning the "effect or impact" of redistricting proposals on "minority voters," "existing or emerging minority opportunity districts," or "voter turnout," it seeks information that may be subject to the attorney-client privilege or constitute attorney work-product.

Ms. Flores is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 2**. All documents relating to the redistricting process for the Texas House or the Texas delegation to the U.S. House of Representatives, including but not limited to planning, timing, hearings, outreach, publicity, public or expert participation, deadlines, limitations, staffing, and persons or entities involved.

**Response**. Ms. Flores objects to this request because it calls for documents that are subject to the legislative privilege. The request seeks documents relating to the "planning" and "timing" of the redistricting process. These go to mental impressions and legislative strategy, which are at the core of the legislative privilege. Ms. Flores objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or

protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Ms. Flores also objects to this request because it asks her to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request seeks information on the attendance and date of hearings, and persons and entities involves, such information may be found at the Texas Senate and Texas House of Representatives websites, as well as on the Texas Legislature Online ("TLO") website. *See* https://senate.texas.gov/index.php (Senate); https://house. texas.gov/ (House); https:// capitol.texas.gov/Home.aspx (TLO).

Ms. Flores is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 3**. All documents relating to voting patterns in Texas elections with respect to race, ethnicity, or language minority status, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Insofar as this request asks for calculations, reports, audits, estimates, projections, or other analyses used as part of the redistricting process, Ms. Flores objects on the basis that such a request calls for documents that are subject to the legislative privilege. Documents used for the purpose of formulating legislation are at the core of the legislative privilege. Ms. Flores objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Ms. Flores also objects to this request because it is facially overbroad. It calls for "all" documents relating to voting patterns, without any temporal limitation (other than the one included in the instructions) or further specification. For this reason, documents relating to voting patterns in Texas may well be irrelevant to the United States' claims—which are limited to several districts in the Texas House of Representatives map and Congressional map.

Ms. Flores is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 4**. All documents relating to whether House Bill 1, Senate Bill 6, or any other redistricting proposal drawn, discussed, or considered with respect to the Texas House or the Texas delegation to the U.S. House of Representatives complies with the Voting Rights Act, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Ms. Flores objects to this request because, by its very nature, it calls for documents that are subject to the attorney-client privilege, the legislative privilege, and constitute attorney work product. Legal analysis concerning whether HB1, SB6, or other related redistricting bills comply with

the VRA will necessarily implicate these privileges. Further, communications between legislators and their staffs are privileged communications covered by the legislative privilege.

Ms. Flores is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 5**. All documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives exchanged between, among, with, or within the Office of the Governor, the Office of Ms. Flores, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate to represent Texas in the U.S. House of Representatives, any candidate for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any local elected official in Texas, any consultant, any expert, any law firm or attorney, any vendor, any other political or community group or organization, or any member of the public.

**Response**. Ms. Flores objects to this request because it is overbroad. The request calls for "all documents relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to documents that are irrelevant to the United States' claims in this case.

Ms. Flores also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of Ms. Flores, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

Ms. Flores also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to redistricting exchanged between Ms. Flores and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Ms. Flores is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 6**. All other documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives from July 1, 2021, to the present, including but not limited to redistricting criteria, public statements, correspondence, calendar invitations, scheduling emails, meeting minutes, agendas, attendance sheets, call logs, notes, presentations, studies, advocacy, letters, or other communications.

**Response**. Ms. Flores objects to this request because it is overbroad. The request calls for "all documents relating redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to make documents that are irrelevant to the United States' claims in this case.

Ms. Flores also objects to this request because it calls for documents that are subject to the legislative privilege. Among others, documents concerning "presentations," "redistricting criteria," and "meeting minutes" go to Ms. Flores's mental impressions and motivations concerning pending legislation, which is clearly covered by the privilege. Of course, communications and deliberations by legislators and their staff about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991).

Ms. Flores is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 7**. All documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes, race, ethnicity, language minority status, or United States citizenship that were exchanged between, among, with, or within the Office of the Governor, the Office of Ms. Flores, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate for the Texas House, any candidate to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any consultant, any expert, any law firm or attorney, any vendor, any group or organization, or any member of the public.

9

**Response**. Ms. Flores objects to this request because it is overbroad. The request calls for "all documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes," without any qualifications (other than the listed recipients). That is an extremely broad request, and will likely apply to make documents that are irrelevant to the United States' claims in this case.

Ms. Flores also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators and their staff, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of Ms. Flores, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

Ms. Flores also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to demographic enumerations or estimates exchanged between Ms. Flores and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Ms. Flores objects on the basis that much the information sought by this request may be made publicly available by the U.S. Census Bureau and the Texas Demographic Center.

Ms. Flores is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 8**. All documents relating to payment for services; agreements of representation, consultation, employment, services, confidentiality, or common interest; or any other type of contract relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives that include any of the following individuals or entities: Adam Foltz, Akin Gump Strauss Hauer & Feld LLP, Michael Best Strategies, any consultant, any political operative, any expert, the Office of the Texas Attorney General, any other law firm, any other attorney, any other vendor, or any other person or entity.

**Response**. Ms. Flores objects to this request because it is overbroad and harassing. Although it appears to be bounded by specific persons and entities, the end of the request provides that the request applies to "any other attorney," "any other vendor," or "any other person or entity." The net effect is that the initial limitations are swallowed by the sheer breadth of a request that asks for "all documents" that "[relate] to redistricting" and that include "any other person or entity." Accordingly, this request is overly broad and conducting a search of this scope and breadth without any reasonable limitation is disproportionate to the needs of this case. Further, Ms. Flores is not a party to this litigation, and should not be required to produce, for example, "all documents" that "[relate] to redistricting" that

include "any political operative." Such a facially overbroad requests create an undue burden. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

In addition, Ms. Flores objects to this request because it calls for documents that are subject to the legislative privilege and the attorney-client privilege. Documents relating to services provided by third parties for a legislative purpose are subject to the legislative privilege. *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)). And documents relating to Ms. Flores and any legal representation, by the Office of the Texas Attorney General or otherwise, is subject to the attorney-client privilege.

Ms. Flores also objects on the basis that this request does not list an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any contracts or other agreements entered into after the filing of this complaint would necessarily be irrelevant.

Ms. Flores is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 9**. All non-privileged documents relating to the instant lawsuit or preceding investigation of Texas by the U.S. Department of Justice.

**Response**. Ms. Flores objects to this request because it is overbroad. It is unclear from the face of this request why "all documents relating" to this lawsuit or the United States' preceding investigation would be relevant to the United States' claims. And insofar as these documents relate to the United States' investigation, these are documents that are more likely to be within the care, custody, or control of the United States. If such materials are more commonly held by others, including state and local law enforcement agencies, production should be requested from them rather than from an individual legislator. Given the availability of these documents from other sources, the burden of requiring Ms. Flores to collect them far exceeds any benefit that might result. *See Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (stating that courts should "consider what information is available to the requesting party from other sources" when analyzing "the benefit side of the ledger").

Ms. Flores also objects on the basis that this request does not list an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any documents originating after the filing of this complaint would necessarily be irrelevant.

Ms. Flores is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS *et al.*, | § § § | |
| *Plaintiffs*, | § § | Case No. 3:21-cv-259-DCG-JES-JVB (Consolidated Cases) |
| v. | § § § | |
| GREG ABBOTT, *et al.*, | § § | |
| *Defendants*. | § § | |

**REPRESENTATIVE BROOKS LANDGRAF'S OBJECTIONS AND RESPONSES TO THE UNITED STATES' SUBPOENA FOR DOCUMENTS AND RECORDS**

TO:   Michelle Rupp, U.S. Department of Justice, Civil Rights Division, Voting Section, 950 Pennsylvania Ave. NW, 4CON 8th Floor, Washington, D.C. 20530 Email: michelle.rupp@usdoj.gov   Phone: 202-305-0565

Pursuant to the Federal Rules of Civil Procedure, Representative Brooks Landgraf hereby serves Objections and Responses to the United States' Subpoena for Documents and Records.

Date: March 4, 2022

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Respectfully submitted.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
Tex. State Bar No. 24088531

ERIC A. HUDSON
Senior Special Counsel
Tex. Bar No. 24059977

KATHLEEN T. HUNKER
Special Counsel
Tex. State Bar No. 24118415

LEIF A. OLSON
Special Counsel

1

Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
Tex. State Bar No. 24064380

JACK B. DISORBO
Assistant Attorney General
Tex. State Bar No. 24120804

Office of the Attorney General
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov

**Counsel for Representative Brooks Landgraf**

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2022, the attached Objections and Responses to the United States' Subpoena for Documents and Records was served on opposing counsel via electronic mail.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation

## OBJECTIONS RELEVANT TO EACH REQUEST

Representative Landgraf asserts that each of the following objections applies specifically to each request below. In the interest of brevity, these objections are offered here to avoid unnecessary repetition of objections to definitions, scope, and similar issues that afflict each request. These objections are as follows:

There is currently no protective order in place between the United States Department of Justice ("DOJ") and Representative Landgraf. To the extent that documents may be identified that are discoverable but require additional protections to prevent public disclosure, any such documents that are identified will be withheld and described in the responses, with the clarification that such production will first require entry of a protective order before the documents may be disclosed.

The Federal Rules provide that the "attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). While nonparty subpoenas are governed by Rule 45, they are also subject to the parameters established by Rule 26. *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 607 (W.D. Tex. 2019) ("As with any other forms of discovery, the scope of discovery through a Rule 45 subpoena is governed by Rule 26(b)."). Therefore, the discovery sought here is still limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The twin demands for relevancy and proportionality "are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Thus, if the information sought is irrelevant to the party's claims or defenses, "it is not necessary to determine whether it would be proportional if it *were* relevant." *Walker v. Pioneer Prod. Servs., Inc.*, No. CV 15-0645, 2016 WL 1244510, at *3 (E.D. La. Mar. 30, 2016). Conversely, "relevance alone does not translate into automatic discoverability" because "[a]n assessment of proportionality is essential." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Accordingly, Representative Landgraf objects to these requests to the extent that the information sought is irrelevant or disproportionate.

Given Representative Landgraf's role as a member of the Texas House Representatives, and that the requested production directly relates to legislative activities, much of the requested production is subject to legislative privilege. That privilege traces its roots to before the founding of the Republic, as it has "taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries." *Tenney v. Brandhove*, 341 U.S. 372 (1951). The privilege protects not only legislators, but their staff and aides as well. *See Gravel v. United States*, 408 U.S. 606, 615-16 (1972). Here, DOJ's attempt to compel disclosure of Representative Landgraf's "thought processes or the communications [he] had with other legislators" falls squarely within the well-established contours of legislative privilege. *Perez v. Abbott*, No. 5:11-cv-360, 2014 WL 3495414 (W.D. Tex. July 11, 2014). Additional privileges, including but not limited to, attorney-client privilege, the attorney work product doctrine, and deliberative process may also be implicated by DOJ's requests, and Representative Landgraf anticipates asserting all applicable privileges implicated by the DOJ's requests. To the extent that documents responsive to DOJ's requests, Representative Landgraf anticipates withholding the materials, preparing a log that complies with the Federal Rules of Civil Procedure, and producing that log within a reasonable time.

The inadvertent production or disclosure of any privileged documents or information shall not constitute or be deemed to be a waiver of any applicable privilege with respect to such document

3

or information (or the contents or subject matter thereof) or with respect to any other such document or discovery now or hereafter requested or provided. Representative Landgraf reserves the right not to produce documents that are in part protected by privilege, except on a redacted basis, and to require the return of any document (and all copies thereof) inadvertently produced. Representative Landgraf likewise does not waive the right to object, on any and all grounds, to (1) the evidentiary use of documents produced in response to these requests; and (2) discovery requests relating to those documents.

A portion of the requested production is also irrelevant to DOJ's claims and is thus identified individually below. But a much larger portion of the request is not proportional to the needs of the case. The proportionality language was inserted into Rule 26(b) in 2015 "to emphasize the need for proportionality," *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017), and "highlight[] its significance," *Mannina v. D.C.*, 334 F.R.D. 336, 339 n.4 (D.D.C. 2020); *see also* Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States,[1] ("Rule 26(b)(1) crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality[.]"). As the Advisory Committee explained, this addition of overt "proportional" language was meant to better reflect the intent of the 1983 amendments, which were designed "to deal with the problem of over-discovery." Fed. R. Civ. P. 26(b) advisory committee's note (2015) (quoting the 1983 advisory notes). However, this "clear focus of the 1983 provisions may have been softened, although inadvertently, by the amendments made in 1993." *Id.* Thus, the 2015 amendment sought to "restore[] the proportionality factors to their original place in defining the scope of discovery" and reinforce the parties' obligation "to consider these factors in making discovery requests, responses, or objections." *Id.* As fully restored, the proportionality requirement "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 672 (2019). Accordingly, Representative Landgraf objects to the DOJ's subpoena to the extent that it falls short of this more stringent proportionality standard.

The Representative objects to the production of any documents or communications created after October 25, 2021 because any documents created after the passage of HB1 and SB6 are irrelevant to the United States' claims.

These responses and objections are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information or documents requested. All answers are given without prejudice to Representative Landgraf's right to object to the discovery of any documents, facts, or information discovered after the date hereof. Likewise, these responses and objections are not intended to be, and shall not be construed as, agreement with the DOJ's characterization of any facts, circumstances, or legal obligations. Representative Landgraf reserves the right to contest any such characterization as inaccurate and object to the Requests insofar as they contain any express or implied assumptions of fact or law concerning matters at issue in this litigation.

Representative Landgraf will provide responses based on terms as they are commonly understood and consistent with the Federal Rules of Civil Procedure. Representative Landgraf objects to and will refrain from extending or modifying any words employed in the Requests to comport with any expanded definitions or instructions. Representative Landgraf will answer the Requests to the

---

[1] https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf

extent required by the Federal Rules of Civil Procedure and the Local Rules of the Western District of Texas.

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Representative Landgraf objects to the definition of "document" to the extent that it calls for documents protected from disclosure by legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or any other applicable privilege.

Representative Landgraf objects to the definitions of "Legislator," "Member of the U.S. House of Representatives," "individual person," "entity," and "organization," *see* ¶¶ 2–3, 9–10 because they are overbroad and inaccurate. They improperly group all persons and entities having any relation to a particular person or entity, when in fact the particular person or entity is independent of those related persons or entities. The Representative objects to the implied application to any related persons or entities without specific enumeration.

Representative Landgraf further objects to the time period in Instruction 21, which defines the relevant time period for these responses as beginning on January 1, 2019. The claims and issues in this litigation pertain to redistricted maps that were drawn based upon data received from the United States Census Bureau in the late summer of 2021 and finalized in the fall of 2021. Accordingly, it is unreasonable and disproportionate to the needs of this case to look back to January of 2019 for documents responsive to these requests.

## RESPONSES

**Document Request 1**. All documents relating to any redistricting proposal for the Texas delegation to the U.S. House of Representatives or the Texas House, including but not limited to House Bill 1, Senate Bill 6, and any other Congressional or House redistricting proposal drawn, discussed, or considered. This request includes but is not limited to:

a. The origination(s) or source(s) of any such redistricting proposal;

b. The impetus, rationale, background, or motivation for any such redistricting proposal;

c. All drafts in the development or revision of any such redistricting proposal, including but not limited to shapefiles, files or datasets used in mapping software, each RED report, each PAR report, demographic data (including but not limited to Citizen Voting Age Population, herpanic Citizen Voting Age Population, Black Citizen Voting Age Population, Voting Age Population, herpanic Voting Age Population, and Black Voting Age Population), election data (including but not limited to reconstituted election analyses), and files related to precinct names, precinct lines, split precincts, partisan indexes, population shifts, population deviations, voter registration, Spanish Surname Voter Registration, voter affiliation, Spanish Surname Voter Turnout, or changing census geography;

d. The pairing of any incumbents in any such redistricting proposal;

e. Any redistricting amendment, whether partial or total, to each such proposal;

    f.   Negotiations regarding any redistricting proposal; and

    g.   all calculations, reports, audits, estimates, projections, or other analyses, from any source, relating to the effect or impact, of any kind—including on (1) Texas minority voters, (2) existing or emerging minority opportunity districts, or (3) voter turnout (including Spanish Surname Voter Turnout)—that could result from the implementation of any such redistricting proposal.

**Response**. Representative Landgraf objects to this request because it calls for the production of documents that are subject to legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. In particular, requesting analyses "from any source" is likely to encompass documents that are protected by legislative privilege. Requesting "the origination(s)" and "the impetus, rationale, background, or motivation" of certain legislative proposals would impermissibly expose thought processes and mental impressions, which are also subject to legislative privilege. Requesting analyses that were "considered by" the Legislature, "draft in the development or revision of" redistricting proposals, "negotiations" and "calculations, reports, audits, estimates, projections, or other analyses" would be subject to legislative privilege for the same reason.

Representative Landgraf further objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request generally seeks shapefiles, data sets, reconstituted election analyses, amendments, information concerning the pairing of incumbents, and other general information, the Representative directs DOJ to the Texas Legislative Council's Capitol Data Portal, https://data.capitol.texas.gov/organization/tlc, where such information may be found. Insofar as the request seeks such information specifically considered by Representative Landgraf, the request calls for information subject to the legislative privilege.

Lastly, insofar as the request seeks legal analysis concerning the "effect or impact" of redistricting proposals on "minority voters," "existing or emerging minority opportunity districts," or "voter turnout," it seeks information that may be subject to the attorney-client privilege or constitute attorney work product.

Representative Landgraf is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 2**. All documents relating to the redistricting process for the Texas House or the Texas delegation to the U.S. House of Representatives, including but not limited to planning, timing, hearings, outreach, publicity, public or expert participation, deadlines, limitations, staffing, and persons or entities involved.

**Response**. Representative Landgraf objects to this request because it calls for documents that are subject to the legislative privilege. The request seeks documents relating to the "planning" and "timing" of the redistricting process. These go to mental impressions and legislative strategy, which are at the core of the legislative privilege. Representative Landgraf objects to this request to the extent

that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Representative Landgraf also objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request seeks information on the attendance and date of hearings, and persons and entities involves, such information may be found at the Texas Senate and Texas House of Representatives websites, as well as on the Texas Legislature Online ("TLO") website. *See* https://senate.texas.gov/index.php (Senate); https://house.texas.gov/ (House); https://capitol.texas.gov/Home.aspx (TLO).

Representative Landgraf is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 3**. All documents relating to voting patterns in Texas elections with respect to race, ethnicity, or language minority status, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Insofar as this request asks for calculations, reports, audits, estimates, projections, or other analyses used as part of the redistricting process, the Representative objects on the basis that such a request calls for documents that are subject to the legislative privilege. Documents used for the purpose of formulating legislation are at the core of the legislative privilege. Representative Landgraf objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

The Representative also objects to this request because it is facially overbroad. It calls for "all" documents relating to voting patterns, without any temporal limitation (other than the one included in the instructions) or further specification. For this reason, documents relating to voting patterns in Texas may well be irrelevant to the United States' claims—which are limited to several districts in the Texas House of Representatives map and Congressional map.

Representative Landgraf is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 4**. All documents relating to whether House Bill 1, Senate Bill 6, or any other redistricting proposal drawn, discussed, or considered with respect to the Texas House or the Texas delegation to the U.S. House of Representatives complies with the Voting Rights Act, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. The Representative objects to this request because, by its very nature, it calls for documents that are subject to the attorney-client privilege, the legislative privilege, and constitute attorney work product. Legal analysis concerning whether HB1, SB6, or other related redistricting bills comply with the VRA will necessarily implicate these privileges. Further, communications between legislators and their staffs are privileged communications covered by the legislative privilege.

Representative Landgraf is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 5**. All documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives exchanged between, among, with, or within the Office of the Governor, the Office of the Representative, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate to represent Texas in the U.S. House of Representatives, any candidate for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any local elected official in Texas, any consultant, any expert, any law firm or attorney, any vendor, any other political or community group or organization, or any member of the public.

**Response**. The Representative objects to this request because it is overbroad. The request calls for "all documents relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to documents that are irrelevant to the United States' claims in this case.

Representative Landgraf also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of the Representative, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

The Representative also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to redistricting exchanged between the Representative and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Representative Landgraf is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 6**. All other documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives from July 1, 2021, to the present, including but not limited to redistricting criteria, public statements, correspondence, calendar invitations, scheduling emails, meeting minutes, agendas, attendance sheets, call logs, notes, presentations, studies, advocacy, letters, or other communications.

**Response**. The Representative objects to this request because it is overbroad. The request calls for "all documents relating redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to make documents that are irrelevant to the United States' claims in this case.

The Representative also objects to this request because it calls for documents that are subject to the legislative privilege. Among others, documents concerning "presentations," "redistricting criteria," and "meeting minutes" go to the Representative's mental impressions and motivations concerning pending legislation, which is clearly covered by the privilege. Of course, communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991).

Representative Landgraf is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 7**. All documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes, race, ethnicity, language minority status, or United States citizenship that were exchanged between, among, with, or within the Office of the Governor, the Office of the Representative, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate for the Texas House, any candidate to represent Texas in the U.S.

House of Representatives, any campaign for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any consultant, any expert, any law firm or attorney, any vendor, any group or organization, or any member of the public.

**Response**. The Representative objects to this request because it is overbroad. The request calls for "all documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes," without any qualifications (other than the listed recipients). That is an extremely broad request, and will likely apply to make documents that are irrelevant to the United States' claims in this case.

Representative Landgraf also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of the Representative, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

The Representative also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to demographic enumerations or estimates exchanged between the Representative and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

The Representative objects on the basis that much the information sought by this request may be made publicly available by the U.S. Census Bureau and the Texas Demographic Center.

Representative Landgraf is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 8**. All documents relating to payment for services; agreements of representation, consultation, employment, services, confidentiality, or common interest; or any other type of contract relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives that include any of the following individuals or entities: Adam Foltz, Akin Gump Strauss Hauer & Feld LLP, Michael Best Strategies, any consultant, any political operative, any expert, the Office of the Texas Attorney General, any other law firm, any other attorney, any other vendor, or any other person or entity.

**Response**. The Representative objects to this request because it is overbroad and harassing. Although it appears to be bounded by specific persons and entities, the end of the request provides that the request applies to "any other attorney," "any other vendor," or "any other person or entity." The net effect is that the initial limitations are swallowed by the sheer breadth of a request that asks for "all documents" that "[relate] to redistricting" and that include "any other person or entity." Accordingly, this request is overly broad and conducting a search of this scope and breadth without any reasonable limitation is disproportionate to the needs of this case. Further, Representative Landgraf is not a party to this litigation, and should not be required to produce, for example, "all documents" that "[relate] to redistricting" that include "any political operative." Such a facially overbroad requests create an undue burden. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

In addition, Representative Landgraf objects to this request because it calls for documents that are subject to the legislative privilege and the attorney-client privilege. Documents relating to services provided by third parties for a legislative purpose are subject to the legislative privilege. *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)). And documents relating to the Representative and any legal representation, by the Office of the Texas Attorney General or otherwise, is subject to the attorney-client privilege.

The Representative also objects on the basis that this request does not list an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any contracts or other agreements entered into after the filing of this complaint would necessarily be irrelevant.

Representative Landgraf is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 9**. All non-privileged documents relating to the instant lawsuit or preceding investigation of Texas by the U.S. Department of Justice.

**Response**. The Representative objects to this request because it is overbroad. It is unclear from the face of this request why "all documents relating" to this lawsuit or the United States' preceding investigation would be relevant to the United States' claims. And insofar as these documents relate to the United States' investigation, these are documents that are more likely to be within the care, custody, or control of the United States. If such materials are more commonly held by others, including state and local law enforcement agencies, production should be requested from them rather than from an individual legislator. Given the availability of these documents from other sources, the burden of requiring the Representative to collect them far exceeds any benefit that might result. *See Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (stating that courts should "consider what information is available to the requesting party from other sources" when analyzing "the benefit side of the ledger").

The Representative also objects on the basis that this request does not list an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any documents originating after the filing of this complaint would necessarily be irrelevant.

Representative Landgraf is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS *et al.*, | § § § | |
| *Plaintiffs*, | § § | Case No. 3:21-cv-259-DCG-JES-JVB |
| v. | § § | (Consolidated Cases) |
| GREG ABBOTT, *et al.*, | § § § | |
| *Defendants*. | § § | |

**COLLEEN GARCIA'S OBJECTIONS AND RESPONSES TO**
**THE UNITED STATES' SUBPOENA FOR DOCUMENTS AND RECORDS**

TO:   Michelle Rupp, U.S. Department of Justice, Civil Rights Division, Voting Section, 950 Pennsylvania Ave. NW, 4CON 8th Floor, Washington, D.C. 20530 Email: michelle.rupp@usdoj.gov   Phone: 202-305-0565

Pursuant to the Federal Rules of Civil Procedure, Colleen Garcia hereby serves Objections and Responses to the United States' Subpoena for Documents and Records.

Date: March 4, 2022                     Respectfully submitted.

KEN PAXTON                              */s/ Patrick K. Sweeten*
Attorney General of Texas               PATRICK K. SWEETEN
                                        Deputy Attorney General for Special Litigation
BRENT WEBSTER                           Tex. State Bar No. 00798537
First Assistant Attorney General
                                        WILLIAM T. THOMPSON
                                        Deputy Chief, Special Litigation Unit
                                        Tex. State Bar No. 24088531

                                        ERIC A. HUDSON
                                        Senior Special Counsel
                                        Tex. Bar No. 24059977

                                        KATHLEEN T. HUNKER
                                        Special Counsel
                                        Tex. State Bar No. 24118415

                                        LEIF A. OLSON
                                        Special Counsel

1

Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
Tex. State Bar No. 24064380

JACK B. DISORBO
Assistant Attorney General
Tex. State Bar No. 24120804

Office of the Attorney General
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov

**Counsel for Colleen Garcia**


## CERTIFICATE OF SERVICE

     I hereby certify that on March 4, 2022, the attached Objections and Responses to the United States' Subpoena for Documents and Records was served on opposing counsel via electronic mail.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation

## OBJECTIONS RELEVANT TO EACH REQUEST

Ms. Garcia asserts that each of the following objections applies specifically to each request below. In the interest of brevity, these objections are offered here to avoid unnecessary repetition of objections to definitions, scope, and similar issues that afflict each request. These objections are as follows:

There is currently no protective order in place between the United States Department of Justice ("DOJ") and Ms. Garcia. To the extent that documents may be identified that are discoverable but require additional protections to prevent public disclosure, any such documents that are identified will be withheld and described in the responses, with the clarification that such production will first require entry of a protective order before the documents may be disclosed.

The Federal Rules provide that the "attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). While nonparty subpoenas are governed by Rule 45, they are also subject to the parameters established by Rule 26. *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 607 (W.D. Tex. 2019) ("As with any other forms of discovery, the scope of discovery through a Rule 45 subpoena is governed by Rule 26(b)."). Therefore, the discovery sought here is still limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The twin demands for relevancy and proportionality "are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Thus, if the information sought is irrelevant to the party's claims or defenses, "it is not necessary to determine whether it would be proportional if it *were* relevant." *Walker v. Pioneer Prod. Servs., Inc.*, No. CV 15-0645, 2016 WL 1244510, at *3 (E.D. La. Mar. 30, 2016). Conversely, "relevance alone does not translate into automatic discoverability" because "[a]n assessment of proportionality is essential." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Accordingly, Ms. Garcia objects to these requests to the extent that the information sought is irrelevant or disproportionate.

Given Ms. Garcia's former role as general counsel and committee clerk to the Texas House Redistricting Committee, and that the requested production directly relates to legislative activities, much of the requested production is subject to legislative privilege. That privilege traces its roots to before the founding of the Republic, as it has "taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries." *Tenney v. Brandhove*, 341 U.S. 372 (1951). The privilege protects not only legislators, but their staff and aides as well. *See Gravel v. United States*, 408 U.S. 606, 615-16 (1972). Here, DOJ's attempt to compel disclosure of Ms. Garcia's "thought processes or the communications [she] had with other legislators" falls squarely within the well-established contours of legislative privilege. *Perez v. Abbott*, No. 5:11-cv-360, 2014 WL 3495414 (W.D. Tex. July 11, 2014). Additional privileges, including but not limited to, attorney-client privilege, the attorney work product doctrine, and deliberative process may also be implicated by DOJ's requests, and Ms. Garcia anticipates asserting all applicable privileges implicated by the DOJ's requests. To the extent that documents responsive to DOJ's requests, Ms. Garcia anticipates withholding the materials, preparing a log that complies with the Federal Rules of Civil Procedure, and producing that log within a reasonable time.

The inadvertent production or disclosure of any privileged documents or information shall not constitute or be deemed to be a waiver of any applicable privilege with respect to such document

3

or information (or the contents or subject matter thereof) or with respect to any other such document or discovery now or hereafter requested or provided. Ms. Garcia reserves the right not to produce documents that are in part protected by privilege, except on a redacted basis, and to require the return of any document (and all copies thereof) inadvertently produced. Ms. Garcia likewise does not waive the right to object, on any and all grounds, to (1) the evidentiary use of documents produced in response to these requests; and (2) discovery requests relating to those documents.

A portion of the requested production is also irrelevant to DOJ's claims and is thus identified individually below. But a much larger portion of the request is not proportional to the needs of the case. The proportionality language was inserted into Rule 26(b) in 2015 "to emphasize the need for proportionality," *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017), and "highlight[] its significance," *Mannina v. D.C.*, 334 F.R.D. 336, 339 n.4 (D.D.C. 2020); *see also* Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States,[1] ("Rule 26(b)(1) crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality[.]"). As the Advisory Committee explained, this addition of overt "proportional" language was meant to better reflect the intent of the 1983 amendments, which were designed "to deal with the problem of over-discovery." Fed. R. Civ. P. 26(b) advisory committee's note (2015) (quoting the 1983 advisory notes). However, this "clear focus of the 1983 provisions may have been softened, although inadvertently, by the amendments made in 1993." *Id.* Thus, the 2015 amendment sought to "restore[] the proportionality factors to their original place in defining the scope of discovery" and reinforce the parties' obligation "to consider these factors in making discovery requests, responses, or objections." *Id.* As fully restored, the proportionality requirement "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 672 (2019). Accordingly, Ms. Garcia objects to the DOJ's subpoena to the extent that it falls short of this more stringent proportionality standard.

Ms. Garcia objects to the production of any documents or communications created after October 25, 2021 because any documents created after the passage of HB1 and SB6 are irrelevant to the United States' claims.

These responses and objections are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information or documents requested. All answers are given without prejudice to Ms. Garcia's right to object to the discovery of any documents, facts, or information discovered after the date hereof. Likewise, these responses and objections are not intended to be, and shall not be construed as, agreement with the DOJ's characterization of any facts, circumstances, or legal obligations. Ms. Garcia reserves the right to contest any such characterization as inaccurate and object to the Requests insofar as they contain any express or implied assumptions of fact or law concerning matters at issue in this litigation.

Ms. Garcia will provide responses based on terms as they are commonly understood and consistent with the Federal Rules of Civil Procedure. Ms. Garcia objects to and will refrain from extending or modifying any words employed in the Requests to comport with any expanded definitions or instructions. Ms. Garcia will answer the Requests to the extent required by the Federal Rules of Civil Procedure and the Local Rules of the Western District of Texas.

---

[1] https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Ms. Garcia objects to the definition of "document" to the extent that it calls for documents protected from disclosure by legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or any other applicable privilege.

Ms. Garcia objects to the definitions of "Legislator," "Member of the U.S. House of Representatives," "individual person," "entity," and "organization," *see* ¶¶ 2–3, 9–10 because they are overbroad and inaccurate. They improperly group all persons and entities having any relation to a particular person or entity, when in fact the particular person or entity is independent of those related persons or entities. Ms. Garcia objects to the implied application to any related persons or entities without specific enumeration.

Ms. Garcia further objects to the time period in Instruction 21, which defines the relevant time period for these responses as beginning on January 1, 2019. The claims and issues in this litigation pertain to redistricted maps that were drawn based upon data received from the United States Census Bureau in the late summer of 2021 and finalized in the fall of 2021. Accordingly, it is unreasonable and disproportionate to the needs of this case to look back to January of 2019 for documents responsive to these requests.

## RESPONSES

**Document Request 1**. All documents relating to any redistricting proposal for the Texas delegation to the U.S. House of Representatives or the Texas House, including but not limited to House Bill 1, Senate Bill 6, and any other Congressional or House redistricting proposal drawn, discussed, or considered. This request includes but is not limited to:

a. The origination(s) or source(s) of any such redistricting proposal;

b. The impetus, rationale, background, or motivation for any such redistricting proposal;

c. All drafts in the development or revision of any such redistricting proposal, including but not limited to shapefiles, files or datasets used in mapping software, each RED report, each PAR report, demographic data (including but not limited to Citizen Voting Age Population, herpanic Citizen Voting Age Population, Black Citizen Voting Age Population, Voting Age Population, herpanic Voting Age Population, and Black Voting Age Population), election data (including but not limited to reconstituted election analyses), and files related to precinct names, precinct lines, split precincts, partisan indexes, population shifts, population deviations, voter registration, Spanish Surname Voter Registration, voter affiliation, Spanish Surname Voter Turnout, or changing census geography;

d. The pairing of any incumbents in any such redistricting proposal;

e. Any redistricting amendment, whether partial or total, to each such proposal;

f. Negotiations regarding any redistricting proposal; and

g. all calculations, reports, audits, estimates, projections, or other analyses, from any source, relating to the effect or impact, of any kind—including on (1) Texas minority voters, (2) existing or emerging minority opportunity districts, or (3) voter turnout (including Spanish Surname Voter Turnout)—that could result from the implementation of any such redistricting proposal.

**Response**. Ms. Garcia objects to this request because it calls for the production of documents that are subject to legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. In particular, requesting analyses "from any source" is likely to encompass documents that are protected by legislative privilege. Requesting "the origination(s)" and "the impetus, rationale, background, or motivation" of certain legislative proposals would impermissibly expose thought processes and mental impressions, which are also subject to legislative privilege. Requesting analyses that were "considered by" the Legislature, "draft in the development or revision of" redistricting proposals, "negotiations" and "calculations, reports, audits, estimates, projections, or other analyses" would be subject to legislative privilege for the same reason.

Ms. Garcia further objects to this request because it asks her to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request generally seeks shapefiles, data sets, reconstituted election analyses, amendments, information concerning the pairing of incumbents, and other general information, Ms. Garcia directs DOJ to the Texas Legislative Council's Capitol Data Portal, https://data.capitol.texas.gov/organization/tlc, where such information may be found. Insofar as the request seeks such information specifically considered by Ms. Garcia, the request calls for information subject to the legislative privilege.

Lastly, insofar as the request seeks legal analysis concerning the "effect or impact" of redistricting proposals on "minority voters," "existing or emerging minority opportunity districts," or "voter turnout," it seeks information that may be subject to the attorney-client privilege or constitute attorney work-product.

Ms. Garcia is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 2**. All documents relating to the redistricting process for the Texas House or the Texas delegation to the U.S. House of Representatives, including but not limited to planning, timing, hearings, outreach, publicity, public or expert participation, deadlines, limitations, staffing, and persons or entities involved.

**Response**. Ms. Garcia objects to this request because it calls for documents that are subject to the legislative privilege. The request seeks documents relating to the "planning" and "timing" of the redistricting process. These go to mental impressions and legislative strategy, which are at the core of the legislative privilege. Ms. Garcia objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or

protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Ms. Garcia also objects to this request because it asks her to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request seeks information on the attendance and date of hearings, and persons and entities involves, such information may be found at the Texas Senate and Texas House of Representatives websites, as well as on the Texas Legislature Online ("TLO") website. *See* https://senate.texas.gov/index.php (Senate); https://house. texas.gov/ (House); https://capitol.texas.gov/Home.aspx (TLO).

Ms. Garcia is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 3**. All documents relating to voting patterns in Texas elections with respect to race, ethnicity, or language minority status, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Insofar as this request asks for calculations, reports, audits, estimates, projections, or other analyses used as part of the redistricting process, Ms. Garcia objects on the basis that such a request calls for documents that are subject to the legislative privilege. Documents used for the purpose of formulating legislation are at the core of the legislative privilege. Ms. Garcia objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Ms. Garcia also objects to this request because it is facially overbroad. It calls for "all" documents relating to voting patterns, without any temporal limitation (other than the one included in the instructions) or further specification. For this reason, documents relating to voting patterns in Texas may well be irrelevant to the United States' claims—which are limited to several districts in the Texas House of Representatives map and Congressional map.

Ms. Garcia is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 4**. All documents relating to whether House Bill 1, Senate Bill 6, or any other redistricting proposal drawn, discussed, or considered with respect to the Texas House or the Texas delegation to the U.S. House of Representatives complies with the Voting Rights Act, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Ms. Garcia objects to this request because, by its very nature, it calls for documents that are subject to the attorney-client privilege, the legislative privilege, and constitute attorney work product. Legal analysis concerning whether HB1, SB6, or other related redistricting bills comply with

the VRA will necessarily implicate these privileges. Further, communications between legislators and their staffs are privileged communications covered by the legislative privilege.

Ms. Garcia is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 5**. All documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives exchanged between, among, with, or within the Office of the Governor, the Office of Ms. Garcia, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate to represent Texas in the U.S. House of Representatives, any candidate for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any local elected official in Texas, any consultant, any expert, any law firm or attorney, any vendor, any other political or community group or organization, or any member of the public.

**Response**. Ms. Garcia objects to this request because it is overbroad. The request calls for "all documents relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to documents that are irrelevant to the United States' claims in this case.

Ms. Garcia also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of Ms. Garcia, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

Ms. Garcia also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to redistricting exchanged between Ms. Garcia and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Ms. Garcia is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 6**. All other documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives from July 1, 2021, to the present, including but not limited to redistricting criteria, public statements, correspondence, calendar invitations, scheduling emails, meeting minutes, agendas, attendance sheets, call logs, notes, presentations, studies, advocacy, letters, or other communications.

**Response**. Ms. Garcia objects to this request because it is overbroad. The request calls for "all documents relating redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to make documents that are irrelevant to the United States' claims in this case.

Ms. Garcia also objects to this request because it calls for documents that are subject to the legislative privilege. Among others, documents concerning "presentations," "redistricting criteria," and "meeting minutes" go to Ms. Garcia's mental impressions and motivations concerning pending legislation, which is clearly covered by the privilege. Of course, communications and deliberations by legislators and their staff about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991).

Ms. Garcia is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 7**. All documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes, race, ethnicity, language minority status, or United States citizenship that were exchanged between, among, with, or within the Office of the Governor, the Office of Ms. Garcia, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate for the Texas House, any candidate to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any consultant, any expert, any law firm or attorney, any vendor, any group or organization, or any member of the public.

9

**Response**. Ms. Garcia objects to this request because it is overbroad. The request calls for "all documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes," without any qualifications (other than the listed recipients). That is an extremely broad request, and will likely apply to make documents that are irrelevant to the United States' claims in this case.

Ms. Garcia also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators and their staff, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of Ms. Garcia, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

Ms. Garcia also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to demographic enumerations or estimates exchanged between Ms. Garcia and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Ms. Garcia objects on the basis that much the information sought by this request may be made publicly available by the U.S. Census Bureau and the Texas Demographic Center.

Ms. Garcia is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 8**. All documents relating to payment for services; agreements of representation, consultation, employment, services, confidentiality, or common interest; or any other type of contract relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives that include any of the following individuals or entities: Adam Foltz, Akin Gump Strauss Hauer & Feld LLP, Michael Best Strategies, any consultant, any political operative, any expert, the Office of the Texas Attorney General, any other law firm, any other attorney, any other vendor, or any other person or entity.

**Response**. Ms. Garcia objects to this request because it is overbroad and harassing. Although it appears to be bounded by specific persons and entities, the end of the request provides that the request applies to "any other attorney," "any other vendor," or "any other person or entity." The net effect is that the initial limitations are swallowed by the sheer breadth of a request that asks for "all documents" that "[relate] to redistricting" and that include "any other person or entity." Accordingly, this request is overly broad and conducting a search of this scope and breadth without any reasonable limitation is disproportionate to the needs of this case. Further, Ms. Garcia is not a party to this litigation, and should not be required to produce, for example, "all documents" that "[relate] to redistricting" that

include "any political operative." Such a facially overbroad requests create an undue burden. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

In addition, Ms. Garcia objects to this request because it calls for documents that are subject to the legislative privilege and the attorney-client privilege. Documents relating to services provided by third parties for a legislative purpose are subject to the legislative privilege. *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)). And documents relating to Ms. Garcia and any legal representation, by the Office of the Texas Attorney General or otherwise, is subject to the attorney-client privilege.

Ms. Garcia also objects on the basis that this request does not list an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any contracts or other agreements entered into after the filing of this complaint would necessarily be irrelevant.

Ms. Garcia is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 9**. All non-privileged documents relating to the instant lawsuit or preceding investigation of Texas by the U.S. Department of Justice.

**Response**. Ms. Garcia objects to this request because it is overbroad. It is unclear from the face of this request why "all documents relating" to this lawsuit or the United States' preceding investigation would be relevant to the United States' claims. And insofar as these documents relate to the United States' investigation, these are documents that are more likely to be within the care, custody, or control of the United States. If such materials are more commonly held by others, including state and local law enforcement agencies, production should be requested from them rather than from an individual legislator. Given the availability of these documents from other sources, the burden of requiring Ms. Garcia to collect them far exceeds any benefit that might result. *See Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (stating that courts should "consider what information is available to the requesting party from other sources" when analyzing "the benefit side of the ledger").

Ms. Garcia also objects on the basis that this request does not list an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any documents originating after the filing of this complaint would necessarily be irrelevant.

Ms. Garcia is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

11

**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS *et al.*, | § § § | |
| *Plaintiffs*, | § § | Case No. 3:21-cv-259-DCG-JES-JVB (Consolidated Cases) |
| v. | § § | |
| GREG ABBOTT, *et al.*, | § § | |
| *Defendants*. | § § | |

## REPRESENTATIVE JACEY JETTON'S OBJECTIONS AND RESPONSES TO THE UNITED STATES' SUBPOENA FOR DOCUMENTS AND RECORDS

TO:  Michelle Rupp, U.S. Department of Justice, Civil Rights Division, Voting Section, 950 Pennsylvania Ave. NW, 4CON 8th Floor, Washington, D.C. 20530   Email: michelle.rupp@usdoj.gov   Phone: 202-305-0565

    Pursuant to the Federal Rules of Civil Procedure, Representative Jacey Jetton hereby serves Objections and Responses to the United States' Subpoena for Documents and Records.

Date: March 4, 2022                           Respectfully submitted.

KEN PAXTON                                    */s/ Patrick K. Sweeten*
Attorney General of Texas                     PATRICK K. SWEETEN
                                              Deputy Attorney General for Special Litigation
BRENT WEBSTER                                 Tex. State Bar No. 00798537
First Assistant Attorney General
                                              WILLIAM T. THOMPSON
                                              Deputy Chief, Special Litigation Unit
                                              Tex. State Bar No. 24088531

                                              ERIC A. HUDSON
                                              Senior Special Counsel
                                              Tex. Bar No. 24059977

                                              KATHLEEN T. HUNKER
                                              Special Counsel
                                              Tex. State Bar No. 24118415

                                              LEIF A. OLSON
                                              Special Counsel

Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
Tex. State Bar No. 24064380

JACK B. DISORBO
Assistant Attorney General
Tex. State Bar No. 24120804

Office of the Attorney General
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov

**Counsel for Representative Jacey Jetton**

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2022, the attached Objections and Responses to the United States' Subpoena for Documents and Records was served on opposing counsel via electronic mail.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation

2

## OBJECTIONS RELEVANT TO EACH REQUEST

Representative Jetton asserts that each of the following objections applies specifically to each request below. In the interest of brevity, these objections are offered here to avoid unnecessary repetition of objections to definitions, scope, and similar issues that afflict each request. These objections are as follows:

There is currently no protective order in place between the United States Department of Justice ("DOJ") and Representative Jetton. To the extent that documents may be identified that are discoverable but require additional protections to prevent public disclosure, any such documents that are identified will be withheld and described in the responses, with the clarification that such production will first require entry of a protective order before the documents may be disclosed.

The Federal Rules provide that the "attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). While nonparty subpoenas are governed by Rule 45, they are also subject to the parameters established by Rule 26. *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 607 (W.D. Tex. 2019) ("As with any other forms of discovery, the scope of discovery through a Rule 45 subpoena is governed by Rule 26(b)."). Therefore, the discovery sought here is still limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The twin demands for relevancy and proportionality "are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Thus, if the information sought is irrelevant to the party's claims or defenses, "it is not necessary to determine whether it would be proportional if it *were* relevant." *Walker v. Pioneer Prod. Servs., Inc.*, No. CV 15-0645, 2016 WL 1244510, at *3 (E.D. La. Mar. 30, 2016). Conversely, "relevance alone does not translate into automatic discoverability" because "[a]n assessment of proportionality is essential." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Accordingly, Representative Jetton objects to these requests to the extent that the information sought is irrelevant or disproportionate.

Given Representative Jetton's role as a member of the Texas House Representatives, and that the requested production directly relates to legislative activities, much of the requested production is subject to legislative privilege. That privilege traces its roots to before the founding of the Republic, as it has "taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries." *Tenney v. Brandhove*, 341 U.S. 372 (1951). The privilege protects not only legislators, but their staff and aides as well. *See Gravel v. United States*, 408 U.S. 606, 615-16 (1972). Here, DOJ's attempt to compel disclosure of Representative Jetton's "thought processes or the communications [he] had with other legislators" falls squarely within the well-established contours of legislative privilege. *Perez v. Abbott*, No. 5:11-cv-360, 2014 WL 3495414 (W.D. Tex. July 11, 2014). Additional privileges, including but not limited to, attorney-client privilege, the attorney work product doctrine, and deliberative process may also be implicated by DOJ's requests, and Representative Jetton anticipates asserting all applicable privileges implicated by the DOJ's requests. To the extent that documents responsive to DOJ's requests, Representative Jetton anticipates withholding the materials, preparing a log that complies with the Federal Rules of Civil Procedure, and producing that log within a reasonable time.

The inadvertent production or disclosure of any privileged documents or information shall not constitute or be deemed to be a waiver of any applicable privilege with respect to such document

or information (or the contents or subject matter thereof) or with respect to any other such document or discovery now or hereafter requested or provided. Representative Jetton reserves the right not to produce documents that are in part protected by privilege, except on a redacted basis, and to require the return of any document (and all copies thereof) inadvertently produced. Representative Jetton likewise does not waive the right to object, on any and all grounds, to (1) the evidentiary use of documents produced in response to these requests; and (2) discovery requests relating to those documents.

A portion of the requested production is also irrelevant to DOJ's claims and is thus identified individually below. But a much larger portion of the request is not proportional to the needs of the case. The proportionality language was inserted into Rule 26(b) in 2015 "to emphasize the need for proportionality," *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017), and "highlight[] its significance," *Mannina v. D.C.*, 334 F.R.D. 336, 339 n.4 (D.D.C. 2020); *see also* Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States,[1] ("Rule 26(b)(1) crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality[.]"). As the Advisory Committee explained, this addition of overt "proportional" language was meant to better reflect the intent of the 1983 amendments, which were designed "to deal with the problem of over-discovery." Fed. R. Civ. P. 26(b) advisory committee's note (2015) (quoting the 1983 advisory notes). However, this "clear focus of the 1983 provisions may have been softened, although inadvertently, by the amendments made in 1993." *Id.* Thus, the 2015 amendment sought to "restore[] the proportionality factors to their original place in defining the scope of discovery" and reinforce the parties' obligation "to consider these factors in making discovery requests, responses, or objections." *Id.* As fully restored, the proportionality requirement "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 672 (2019). Accordingly, Representative Jetton objects to the DOJ's subpoena to the extent that it falls short of this more stringent proportionality standard.

The Representative objects to the production of any documents or communications created after October 25, 2021 because any documents created after the passage of HB1 and SB6 are irrelevant to the United States' claims.

These responses and objections are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information or documents requested. All answers are given without prejudice to Representative Jetton's right to object to the discovery of any documents, facts, or information discovered after the date hereof. Likewise, these responses and objections are not intended to be, and shall not be construed as, agreement with the DOJ's characterization of any facts, circumstances, or legal obligations. Representative Jetton reserves the right to contest any such characterization as inaccurate and object to the Requests insofar as they contain any express or implied assumptions of fact or law concerning matters at issue in this litigation.

Representative Jetton will provide responses based on terms as they are commonly understood and consistent with the Federal Rules of Civil Procedure. Representative Jetton objects to and will refrain from extending or modifying any words employed in the Requests to comport with any

---

[1] https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf

expanded definitions or instructions. Representative Jetton will answer the Requests to the extent required by the Federal Rules of Civil Procedure and the Local Rules of the Western District of Texas.

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Representative Jetton objects to the definition of "document" to the extent that it calls for documents protected from disclosure by legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or any other applicable privilege.

Representative Jetton objects to the definitions of "Legislator," "Member of the U.S. House of Representatives," "individual person," "entity," and "organization," *see* ¶¶ 2–3, 9–10 because they are overbroad and inaccurate. They improperly group all persons and entities having any relation to a particular person or entity, when in fact the particular person or entity is independent of those related persons or entities. The Representative objects to the implied application to any related persons or entities without specific enumeration.

Representative Jetton further objects to the time period in Instruction 21, which defines the relevant time period for these responses as beginning on January 1, 2019. The claims and issues in this litigation pertain to redistricted maps that were drawn based upon data received from the United States Census Bureau in the late summer of 2021 and finalized in the fall of 2021. Accordingly, it is unreasonable and disproportionate to the needs of this case to look back to January of 2019 for documents responsive to these requests.

## RESPONSES

**Document Request 1**. All documents relating to any redistricting proposal for the Texas delegation to the U.S. House of Representatives or the Texas House, including but not limited to House Bill 1, Senate Bill 6, and any other Congressional or House redistricting proposal drawn, discussed, or considered. This request includes but is not limited to:

a. The origination(s) or source(s) of any such redistricting proposal;

b. The impetus, rationale, background, or motivation for any such redistricting proposal;

c. All drafts in the development or revision of any such redistricting proposal, including but not limited to shapefiles, files or datasets used in mapping software, each RED report, each PAR report, demographic data (including but not limited to Citizen Voting Age Population, herpanic Citizen Voting Age Population, Black Citizen Voting Age Population, Voting Age Population, herpanic Voting Age Population, and Black Voting Age Population), election data (including but not limited to reconstituted election analyses), and files related to precinct names, precinct lines, split precincts, partisan indexes, population shifts, population deviations, voter registration, Spanish Surname Voter Registration, voter affiliation, Spanish Surname Voter Turnout, or changing census geography;

d. The pairing of any incumbents in any such redistricting proposal;

e. Any redistricting amendment, whether partial or total, to each such proposal;

    f.   Negotiations regarding any redistricting proposal; and

    g.   all calculations, reports, audits, estimates, projections, or other analyses, from any source, relating to the effect or impact, of any kind—including on (1) Texas minority voters, (2) existing or emerging minority opportunity districts, or (3) voter turnout (including Spanish Surname Voter Turnout)—that could result from the implementation of any such redistricting proposal.

**Response**. Representative Jetton objects to this request because it calls for the production of documents that are subject to legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. In particular, requesting analyses "from any source" is likely to encompass documents that are protected by legislative privilege. Requesting "the origination(s)" and "the impetus, rationale, background, or motivation" of certain legislative proposals would impermissibly expose thought processes and mental impressions, which are also subject to legislative privilege. Requesting analyses that were "considered by" the Legislature, "draft in the development or revision of" redistricting proposals, "negotiations" and "calculations, reports, audits, estimates, projections, or other analyses" would be subject to legislative privilege for the same reason.

Representative Jetton further objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request generally seeks shapefiles, data sets, reconstituted election analyses, amendments, information concerning the pairing of incumbents, and other general information, the Representative directs DOJ to the Texas Legislative Council's Capitol Data Portal, https://data.capitol.texas.gov/organization/tlc, where such information may be found. Insofar as the request seeks such information specifically considered by Representative Jetton, the request calls for information subject to the legislative privilege.

Lastly, insofar as the request seeks legal analysis concerning the "effect or impact" of redistricting proposals on "minority voters," "existing or emerging minority opportunity districts," or "voter turnout," it seeks information that may be subject to the attorney-client privilege or constitute attorney work product.

Representative Jetton is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 2**. All documents relating to the redistricting process for the Texas House or the Texas delegation to the U.S. House of Representatives, including but not limited to planning, timing, hearings, outreach, publicity, public or expert participation, deadlines, limitations, staffing, and persons or entities involved.

**Response**. Representative Jetton objects to this request because it calls for documents that are subject to the legislative privilege. The request seeks documents relating to the "planning" and "timing" of the redistricting process. These go to mental impressions and legislative strategy, which are at the core of the legislative privilege. Representative Jetton objects to this request to the extent that documents

that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Representative Jetton also objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request seeks information on the attendance and date of hearings, and persons and entities involves, such information may be found at the Texas Senate and Texas House of Representatives websites, as well as on the Texas Legislature Online ("TLO") website. *See* https://senate.texas.gov/index.php (Senate); https://house.texas.gov/ (House); https://capitol.texas.gov/Home.aspx (TLO).

Representative Jetton is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 3**. All documents relating to voting patterns in Texas elections with respect to race, ethnicity, or language minority status, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Insofar as this request asks for calculations, reports, audits, estimates, projections, or other analyses used as part of the redistricting process, the Representative objects on the basis that such a request calls for documents that are subject to the legislative privilege. Documents used for the purpose of formulating legislation are at the core of the legislative privilege. Representative Jetton objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

The Representative also objects to this request because it is facially overbroad. It calls for "all" documents relating to voting patterns, without any temporal limitation (other than the one included in the instructions) or further specification. For this reason, documents relating to voting patterns in Texas may well be irrelevant to the United States' claims—which are limited to several districts in the Texas House of Representatives map and Congressional map.

Representative Jetton is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 4**. All documents relating to whether House Bill 1, Senate Bill 6, or any other redistricting proposal drawn, discussed, or considered with respect to the Texas House or the Texas delegation to the U.S. House of Representatives complies with the Voting Rights Act, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. The Representative objects to this request because, by its very nature, it calls for documents that are subject to the attorney-client privilege, the legislative privilege, and constitute attorney work product. Legal analysis concerning whether HB1, SB6, or other related redistricting bills comply with the VRA will necessarily implicate these privileges. Further, communications between legislators and their staffs are privileged communications covered by the legislative privilege.

Representative Jetton is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 5**. All documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives exchanged between, among, with, or within the Office of the Governor, the Office of the Representative, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate to represent Texas in the U.S. House of Representatives, any candidate for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any local elected official in Texas, any consultant, any expert, any law firm or attorney, any vendor, any other political or community group or organization, or any member of the public.

**Response**. The Representative objects to this request because it is overbroad. The request calls for "all documents relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to documents that are irrelevant to the United States' claims in this case.

Representative Jetton also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of the Representative, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

8

The Representative also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to redistricting exchanged between the Representative and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Representative Jetton is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 6**. All other documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives from July 1, 2021, to the present, including but not limited to redistricting criteria, public statements, correspondence, calendar invitations, scheduling emails, meeting minutes, agendas, attendance sheets, call logs, notes, presentations, studies, advocacy, letters, or other communications.

**Response**. The Representative objects to this request because it is overbroad. The request calls for "all documents relating redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to make documents that are irrelevant to the United States' claims in this case.

The Representative also objects to this request because it calls for documents that are subject to the legislative privilege. Among others, documents concerning "presentations," "redistricting criteria," and "meeting minutes" go to the Representative's mental impressions and motivations concerning pending legislation, which is clearly covered by the privilege. Of course, communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991).

Representative Jetton is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 7**. All documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes, race, ethnicity, language minority status, or United States citizenship that were exchanged between, among, with, or within the Office of the Governor, the Office of the Representative, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate for the Texas House, any candidate to represent Texas in the U.S.

House of Representatives, any campaign for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any consultant, any expert, any law firm or attorney, any vendor, any group or organization, or any member of the public.

**Response**. The Representative objects to this request because it is overbroad. The request calls for "all documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes," without any qualifications (other than the listed recipients). That is an extremely broad request, and will likely apply to make documents that are irrelevant to the United States' claims in this case.

Representative Jetton also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of the Representative, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

The Representative also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to demographic enumerations or estimates exchanged between the Representative and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

The Representative objects on the basis that much the information sought by this request may be made publicly available by the U.S. Census Bureau and the Texas Demographic Center.

Representative Jetton is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 8**. All documents relating to payment for services; agreements of representation, consultation, employment, services, confidentiality, or common interest; or any other type of contract relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives that include any of the following individuals or entities: Adam Foltz, Akin Gump Strauss Hauer & Feld LLP, Michael Best Strategies, any consultant, any political operative, any expert, the Office of the Texas Attorney General, any other law firm, any other attorney, any other vendor, or any other person or entity.

**Response**. The Representative objects to this request because it is overbroad and harassing. Although it appears to be bounded by specific persons and entities, the end of the request provides that the request applies to "any other attorney," "any other vendor," or "any other person or entity." The net effect is that the initial limitations are swallowed by the sheer breadth of a request that asks for "all documents" that "[relate] to redistricting" and that include "any other person or entity." Accordingly, this request is overly broad and conducting a search of this scope and breadth without any reasonable limitation is disproportionate to the needs of this case. Further, Representative Jetton is not a party to this litigation, and should not be required to produce, for example, "all documents" that "[relate] to redistricting" that include "any political operative." Such a facially overbroad requests create an undue burden. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

In addition, Representative Jetton objects to this request because it calls for documents that are subject to the legislative privilege and the attorney-client privilege. Documents relating to services provided by third parties for a legislative purpose are subject to the legislative privilege. *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)). And documents relating to the Representative and any legal representation, by the Office of the Texas Attorney General or otherwise, is subject to the attorney-client privilege.

The Representative also objects on the basis that this request does not list an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any contracts or other agreements entered into after the filing of this complaint would necessarily be irrelevant.

Representative Jetton is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 9**. All non-privileged documents relating to the instant lawsuit or preceding investigation of Texas by the U.S. Department of Justice.

**Response**. The Representative objects to this request because it is overbroad. It is unclear from the face of this request why "all documents relating" to this lawsuit or the United States' preceding investigation would be relevant to the United States' claims. And insofar as these documents relate to the United States' investigation, these are documents that are more likely to be within the care, custody, or control of the United States. If such materials are more commonly held by others, including state and local law enforcement agencies, production should be requested from them rather than from an individual legislator. Given the availability of these documents from other sources, the burden of requiring the Representative to collect them far exceeds any benefit that might result. *See Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (stating that courts should "consider what information is available to the requesting party from other sources" when analyzing "the benefit side of the ledger").

The Representative also objects on the basis that this request does not list an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any documents originating after the filing of this complaint would necessarily be irrelevant.

11

Representative Jetton is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS *et al.*, | § § § | |
| *Plaintiffs*, | § § | Case No. 3:21-cv-259-DCG-JES-JVB |
| v. | § § | (Consolidated Cases) |
| GREG ABBOTT, *et al.*, | § § | |
| *Defendants.* | § § | |

## SENATOR JOAN HUFFMAN'S OBJECTIONS AND RESPONSES TO THE UNITED STATES' SUBPOENA FOR DOCUMENTS AND RECORDS

TO:   Michelle Rupp, U.S. Department of Justice, Civil Rights Division, Voting Section, 950 Pennsylvania Ave. NW, 4CON 8th Floor, Washington, D.C.   20530      Email: michelle.rupp@usdoj.gov   Phone:  202-305-0565

Pursuant to the Federal Rules of Civil Procedure, Senator Joan Huffman hereby serves Objections and Responses to the United States' Subpoena for Documents and Records.

Date: March 4, 2022                    Respectfully submitted.

KEN PAXTON                            */s/ Patrick K. Sweeten*
Attorney General of Texas            PATRICK K. SWEETEN
                                     Deputy Attorney General for Special Litigation
BRENT WEBSTER                        Tex. State Bar No. 00798537
First Assistant Attorney General
                                     WILLIAM T. THOMPSON
                                     Deputy Chief, Special Litigation Unit
                                     Tex. State Bar No. 24088531

                                     ERIC A. HUDSON
                                     Senior Special Counsel
                                     Tex. Bar No. 24059977

                                     KATHLEEN T. HUNKER
                                     Special Counsel
                                     Tex. State Bar No. 24118415

                                     LEIF A. OLSON
                                     Special Counsel

1

Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
Tex. State Bar No. 24064380

JACK B. DISORBO
Assistant Attorney General
Tex. State Bar No. 24120804

Office of the Attorney General
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov

**Counsel for Senator Joan Huffman**


## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2022, the attached Objections and Responses to the United States' Subpoena for Documents and Records was served on opposing counsel via electronic mail.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation

## OBJECTIONS RELEVANT TO EACH REQUEST

Senator Huffman asserts that each of the following objections applies specifically to each request below. In the interest of brevity, these objections are offered here to avoid unnecessary repetition of objections to definitions, scope, and similar issues that afflict each request. These objections are as follows:

There is currently no protective order in place between the United States Department of Justice ("DOJ") and Senator Huffman. To the extent that documents may be identified that are discoverable but require additional protections to prevent public disclosure, any such documents that are identified will be withheld and described in the responses, with the clarification that such production will first require entry of a protective order before the documents may be disclosed.

The Federal Rules provide that the "attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). While nonparty subpoenas are governed by Rule 45, they are also subject to the parameters established by Rule 26. *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 607 (W.D. Tex. 2019) ("As with any other forms of discovery, the scope of discovery through a Rule 45 subpoena is governed by Rule 26(b)."). Therefore, the discovery sought here is still limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The twin demands for relevancy and proportionality "are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Thus, if the information sought is irrelevant to the party's claims or defenses, "it is not necessary to determine whether it would be proportional if it *were* relevant." *Walker v. Pioneer Prod. Servs., Inc.*, No. CV 15-0645, 2016 WL 1244510, at *3 (E.D. La. Mar. 30, 2016). Conversely, "relevance alone does not translate into automatic discoverability" because "[a]n assessment of proportionality is essential." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Accordingly, Senator Huffman objects to these requests to the extent that the information sought is irrelevant or disproportionate.

Given Senator Huffman's role as Chair of the Special Senate Committee on Redistricting, and that the requested production directly relates to legislative activities, much of the requested production is subject to legislative privilege. That privilege traces its roots to before the founding of the Republic, as it has "taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries." *Tenney v. Brandhove*, 341 U.S. 372 (1951). The privilege protects not only legislators, but their staff and aides as well. *See Gravel v. United States*, 408 U.S. 606, 615-16 (1972). Here, DOJ's attempt to compel disclosure of Senator Huffman's "thought processes or the communications [she] had with other legislators" falls squarely within the well-established contours of legislative privilege. *Perez v. Abbott*, No. 5:11-cv-360, 2014 WL 3495414 (W.D. Tex. July 11, 2014). Additional privileges, including but not limited to, attorney-client privilege, the attorney work product doctrine, and deliberative process may also be implicated by DOJ's requests, and Senator Huffman anticipates asserting all applicable privileges implicated by the DOJ's requests. To the extent that documents responsive to DOJ's requests, Senator Huffman anticipates withholding the materials, preparing a log that complies with the Federal Rules of Civil Procedure, and producing that log within a reasonable time.

The inadvertent production or disclosure of any privileged documents or information shall not constitute or be deemed to be a waiver of any applicable privilege with respect to such document

or information (or the contents or subject matter thereof) or with respect to any other such document or discovery now or hereafter requested or provided. Senator Huffman reserves the right not to produce documents that are in part protected by privilege, except on a redacted basis, and to require the return of any document (and all copies thereof) inadvertently produced. Senator Huffman likewise does not waive the right to object, on any and all grounds, to (1) the evidentiary use of documents produced in response to these requests; and (2) discovery requests relating to those documents.

A portion of the requested production is also irrelevant to DOJ's claims and is thus identified individually below. But a much larger portion of the request is not proportional to the needs of the case. The proportionality language was inserted into Rule 26(b) in 2015 "to emphasize the need for proportionality," *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017), and "highlight[] its significance," *Mannina v. D.C.*, 334 F.R.D. 336, 339 n.4 (D.D.C. 2020); *see also* Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States,[1] ("Rule 26(b)(1) crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality[.]"). As the Advisory Committee explained, this addition of overt "proportional" language was meant to better reflect the intent of the 1983 amendments, which were designed "to deal with the problem of over-discovery." Fed. R. Civ. P. 26(b) advisory committee's note (2015) (quoting the 1983 advisory notes). However, this "clear focus of the 1983 provisions may have been softened, although inadvertently, by the amendments made in 1993." *Id.* Thus, the 2015 amendment sought to "restore[] the proportionality factors to their original place in defining the scope of discovery" and reinforce the parties' obligation "to consider these factors in making discovery requests, responses, or objections." *Id.* As fully restored, the proportionality requirement "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 672 (2019). Accordingly, Senator Huffman objects to the DOJ's subpoena to the extent that it falls short of this more stringent proportionality standard.

Senator Huffman objects to the production of any documents or communications created after October 25, 2021 because any documents created after the passage of HB1 and SB6 are irrelevant to the United States' claims.

These responses and objections are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information or documents requested. All answers are given without prejudice to Senator Huffman's right to object to the discovery of any documents, facts, or information discovered after the date hereof. Likewise, these responses and objections are not intended to be, and shall not be construed as, agreement with the DOJ's characterization of any facts, circumstances, or legal obligations. Senator Huffman reserves the right to contest any such characterization as inaccurate and object to the Requests insofar as they contain any express or implied assumptions of fact or law concerning matters at issue in this litigation.

Senator Huffman will provide responses based on terms as they are commonly understood and consistent with the Federal Rules of Civil Procedure. Senator Huffman objects to and will refrain from extending or modifying any words employed in the Requests to comport with any expanded definitions or instructions. Senator Huffman will answer the Requests to the extent required by the Federal Rules of Civil Procedure and the Local Rules of the Western District of Texas.

---

[1] https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf

4

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Senator Huffman objects to the definition of "document" to the extent that it calls for documents protected from disclosure by legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or any other applicable privilege.

Senator Huffman objects to the definitions of "Legislator," "Member of the U.S. House of Representatives," "individual person," "entity," and "organization," *see* ¶¶ 2–3, 9–10 because they are overbroad and inaccurate. They improperly group all persons and entities having any relation to a particular person or entity, when in fact the particular person or entity is independent of those related persons or entities. The Senator objects to the implied application to any related persons or entities without specific enumeration.

Senator Huffman further objects to the time period in Instruction 21, which defines the relevant time period for these responses as beginning on January 1, 2019. The claims and issues in this litigation pertain to redistricted maps that were drawn based upon data received from the United States Census Bureau in the late summer of 2021 and finalized in the fall of 2021. Accordingly, it is unreasonable and disproportionate to the needs of this case to look back to January of 2019 for documents responsive to these requests.

## RESPONSES

**Document Request 1**. All documents relating to any redistricting proposal for the Texas delegation to the U.S. House of Representatives or the Texas House, including but not limited to House Bill 1, Senate Bill 6, and any other Congressional or House redistricting proposal drawn, discussed, or considered. This request includes but is not limited to:

a. The origination(s) or source(s) of any such redistricting proposal;

b. The impetus, rationale, background, or motivation for any such redistricting proposal;

c. All drafts in the development or revision of any such redistricting proposal, including but not limited to shapefiles, files or datasets used in mapping software, each RED report, each PAR report, demographic data (including but not limited to Citizen Voting Age Population, herpanic Citizen Voting Age Population, Black Citizen Voting Age Population, Voting Age Population, herpanic Voting Age Population, and Black Voting Age Population), election data (including but not limited to reconstituted election analyses), and files related to precinct names, precinct lines, split precincts, partisan indexes, population shifts, population deviations, voter registration, Spanish Surname Voter Registration, voter affiliation, Spanish Surname Voter Turnout, or changing census geography;

d. The pairing of any incumbents in any such redistricting proposal;

e. Any redistricting amendment, whether partial or total, to each such proposal;

f. Negotiations regarding any redistricting proposal; and

g. all calculations, reports, audits, estimates, projections, or other analyses, from any source, relating to the effect or impact, of any kind—including on (1) Texas minority voters, (2) existing or emerging minority opportunity districts, or (3) voter turnout (including Spanish

Surname Voter Turnout)—that could result from the implementation of any such redistricting proposal.

**Response**. Senator Huffman objects to this request because it calls for the production of documents that are subject to legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. In particular, requesting analyses "from any source" is likely to encompass documents that are protected by legislative privilege. Requesting "the origination(s)" and "the impetus, rationale, background, or motivation" of certain legislative proposals would impermissibly expose thought processes and mental impressions, which are also subject to legislative privilege. Requesting analyses that were "considered by" the Legislature, "draft in the development or revision of" redistricting proposals, "negotiations" and "calculations, reports, audits, estimates, projections, or other analyses" would be subject to legislative privilege for the same reason.

Senator Huffman further objects to this request because it asks her to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request generally seeks shapefiles, data sets, reconstituted election analyses, amendments, information concerning the pairing of incumbents, and other general information, The Senator directs DOJ to the Texas Legislative Council's Capitol Data Portal, https://data.capitol.texas.gov/organization/tlc, where such information may be found. Insofar as the request seeks such information specifically considered by Senator Huffman, the request calls for information subject to the legislative privilege.

Lastly, insofar as the request seeks legal analysis concerning the "effect or impact" of redistricting proposals on "minority voters," "existing or emerging minority opportunity districts," or "voter turnout," it seeks information that may be subject to the attorney-client privilege or constitute attorney work product.

Senator Huffman is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 2**. All documents relating to the redistricting process for the Texas House or the Texas delegation to the U.S. House of Representatives, including but not limited to planning, timing, hearings, outreach, publicity, public or expert participation, deadlines, limitations, staffing, and persons or entities involved.

**Response**. Senator Huffman objects to this request because it calls for documents that are subject to the legislative privilege. The request seeks documents relating to the "planning" and "timing" of the redistricting process. These go to mental impressions and legislative strategy, which are at the core of the legislative privilege. Senator Huffman objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Senator Huffman also objects to this request because it asks her to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request seeks information on the attendance and date of hearings, and persons and entities involves, such information may be found at the Texas Senate and Texas House of Representatives websites, as well as on the Texas Legislature Online ("TLO") website. *See* https://senate.texas.gov/index.php (Senate); https://house.texas.gov/ (House); https://capitol.texas.gov/Home.aspx (TLO).

Senator Huffman is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 3**. All documents relating to voting patterns in Texas elections with respect to race, ethnicity, or language minority status, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Insofar as this request asks for calculations, reports, audits, estimates, projections, or other analyses used as part of the redistricting process, The Senator objects on the basis that such a request calls for documents that are subject to the legislative privilege. Documents used for the purpose of formulating legislation are at the core of the legislative privilege. Senator Huffman objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

The Senator also objects to this request because it is facially overbroad. It calls for "all" documents relating to voting patterns, without any temporal limitation (other than the one included in the instructions) or further specification. For this reason, documents relating to voting patterns in Texas may well be irrelevant to the United States' claims—which are limited to several districts in the Texas House of Representatives map and Congressional map.

Senator Huffman is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 4**. All documents relating to whether House Bill 1, Senate Bill 6, or any other redistricting proposal drawn, discussed, or considered with respect to the Texas House or the Texas delegation to the U.S. House of Representatives complies with the Voting Rights Act, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. The Senator objects to this request because, by its very nature, it calls for documents that are subject to the attorney-client privilege, the legislative privilege, and constitute attorney work product. Legal analysis concerning whether HB1, SB6, or other related redistricting bills comply with

7

the VRA will necessarily implicate these privileges. Further, communications between legislators and their staffs are privileged communications covered by the legislative privilege.

Senator Huffman is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 5**. All documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives exchanged between, among, with, or within the Office of the Governor, the Office of the Representative, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate to represent Texas in the U.S. House of Representatives, any candidate for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any local elected official in Texas, any consultant, any expert, any law firm or attorney, any vendor, any other political or community group or organization, or any member of the public.

**Response**. The Senator objects to this request because it is overbroad. The request calls for "all documents relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to documents that are irrelevant to the United States' claims in this case.

Senator Huffman also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of the Representative, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

The Senator also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to redistricting exchanged between The Senator and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

8

Senator Huffman is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 6**. All other documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives from July 1, 2021, to the present, including but not limited to redistricting criteria, public statements, correspondence, calendar invitations, scheduling emails, meeting minutes, agendas, attendance sheets, call logs, notes, presentations, studies, advocacy, letters, or other communications.

**Response**. The Senator objects to this request because it is overbroad. The request calls for "all documents relating redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to make documents that are irrelevant to the United States' claims in this case.

The Senator also objects to this request because it calls for documents that are subject to the legislative privilege. Among others, documents concerning "presentations," "redistricting criteria," and "meeting minutes" go to the Representative's mental impressions and motivations concerning pending legislation, which is clearly covered by the privilege. Of course, communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991).

Senator Huffman is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 7**. All documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes, race, ethnicity, language minority status, or United States citizenship that were exchanged between, among, with, or within the Office of the Governor, the Office of the Representative, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate for the Texas House, any candidate to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist,

any political activist or operative, any other governmental entity, any consultant, any expert, any law firm or attorney, any vendor, any group or organization, or any member of the public.

**Response**. The Senator objects to this request because it is overbroad. The request calls for "all documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes," without any qualifications (other than the listed recipients). That is an extremely broad request, and will likely apply to make documents that are irrelevant to the United States' claims in this case.

Senator Huffman also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of the Representative, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

The Senator also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to demographic enumerations or estimates exchanged between The Senator and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

The Senator objects on the basis that much the information sought by this request may be made publicly available by the U.S. Census Bureau and the Texas Demographic Center.

Senator Huffman is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 8**. All documents relating to payment for services; agreements of representation, consultation, employment, services, confidentiality, or common interest; or any other type of contract relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives that include any of the following individuals or entities: Adam Foltz, Akin Gump Strauss Hauer & Feld LLP, Michael Best Strategies, any consultant, any political operative, any expert, the Office of the Texas Attorney General, any other law firm, any other attorney, any other vendor, or any other person or entity.

**Response**. The Senator objects to this request because it is overbroad and harassing. Although it appears to be bounded by specific persons and entities, the end of the request provides that the request applies to "any other attorney," "any other vendor," or "any other person or entity." The net effect is that the initial limitations are swallowed by the sheer breadth of a request that asks for "all documents"

that "[relate] to redistricting" and that include "any other person or entity." Accordingly, this request is overly broad and conducting a search of this scope and breadth without any reasonable limitation is disproportionate to the needs of this case. Further, Senator Huffman is not a party to this litigation, and should not be required to produce, for example, "all documents" that "[relate] to redistricting" that include "any political operative." Such a facially overbroad requests create an undue burden. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

In addition, Senator Huffman objects to this request because it calls for documents that are subject to the legislative privilege and the attorney-client privilege. Documents relating to services provided by third parties for a legislative purpose are subject to the legislative privilege. *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)). And documents relating to The Senator and any legal representation, by the Office of the Texas Attorney General or otherwise, is subject to the attorney-client privilege.

The Senator also objects on the basis that this request does not list an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any contracts or other agreements entered into after the filing of this complaint would necessarily be irrelevant.

Senator Huffman is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 9**. All non-privileged documents relating to the instant lawsuit or preceding investigation of Texas by the U.S. Department of Justice.

**Response**. The Senator objects to this request because it is overbroad. It is unclear from the face of this request why "all documents relating" to this lawsuit or the United States' preceding investigation would be relevant to the United States' claims. And insofar as these documents relate to the United States' investigation, these are documents that are more likely to be within the care, custody, or control of the United States. If such materials are more commonly held by others, including state and local law enforcement agencies, production should be requested from them rather than from an individual legislator. Given the availability of these documents from other sources, the burden of requiring The Senator to collect them far exceeds any benefit that might result. *See Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (stating that courts should "consider what information is available to the requesting party from other sources" when analyzing "the benefit side of the ledger").

The Senator also objects on the basis that this request does not list an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any documents originating after the filing of this complaint would necessarily be irrelevant.

Senator Huffman is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified

pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS *et al.*, | § § § | |
| *Plaintiffs*, | § § | Case No. 3:21-cv-259-DCG-JES-JVB |
| v. | § § | (Consolidated Cases) |
| GREG ABBOTT, *et al.*, | § § § | |
| *Defendants*. | § § | |

## REPRESENTATIVE J.M. LOZANO'S OBJECTIONS AND RESPONSES TO THE UNITED STATES' SUBPOENA FOR DOCUMENTS AND RECORDS

TO:   Michelle Rupp, U.S. Department of Justice, Civil Rights Division, Voting Section, 950 Pennsylvania Ave. NW, 4CON 8th Floor, Washington, D.C. 20530; michelle.rupp@usdoj. gov; (202) 305-0565

Pursuant to the Federal Rules of Civil Procedure, Representative J.M. Lozano hereby serves Objections and Responses to the United States' Subpoena for Documents and Records.

Date: March 14, 2022                    Respectfully submitted.

KEN PAXTON                              */s/ Patrick K. Sweeten*
Attorney General of Texas               PATRICK K. SWEETEN
                                        Deputy Attorney General for Special Litigation
BRENT WEBSTER                           Tex. State Bar No. 00798537
First Assistant Attorney General
                                        WILLIAM T. THOMPSON
                                        Deputy Chief, Special Litigation Unit
                                        Tex. State Bar No. 24088531

                                        ERIC A. HUDSON
                                        Senior Special Counsel
                                        Tex. Bar No. 24059977

                                        KATHLEEN T. HUNKER
                                        Special Counsel
                                        Tex. State Bar No. 24118415

1

Leif A. Olson
Special Counsel
Tex. State Bar No. 24032801

Jeffrey M. White
Special Counsel
Tex. State Bar No. 24064380

Jack B. DiSorbo
Assistant Attorney General
Tex. State Bar No. 24120804

Office of the Attorney General
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov

**Counsel for Representative J.M. Lozano**

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2022, the attached Objections and Responses to the United States' Subpoena for Documents and Records was served on opposing counsel via electronic mail.

*/s/ Patrick K. Sweeten*
Patrick K. Sweeten
Deputy Attorney General for Special Litigation

## OBJECTIONS RELEVANT TO EACH REQUEST

Representative Lozano asserts that each of the following objections applies specifically to each request below. In the interest of brevity, these objections are offered here to avoid unnecessary repetition of objections to definitions, scope, and similar issues that afflict each request. These objections are as follows:

There is currently no protective order in place between the United States Department of Justice ("DOJ") and Representative Lozano. To the extent that documents may be identified that are discoverable but require additional protections to prevent public disclosure, any such documents that are identified will be withheld and described in the responses, with the clarification that such production will first require entry of a protective order before the documents may be disclosed.

The Federal Rules provide that the "attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). While nonparty subpoenas are governed by Rule 45, they are also subject to the parameters established by Rule 26. *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 607 (W.D. Tex. 2019) ("As with any other forms of discovery, the scope of discovery through a Rule 45 subpoena is governed by Rule 26(b)."). Therefore, the discovery sought here is still limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The twin demands for relevancy and proportionality "are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Thus, if the information sought is irrelevant to the party's claims or defenses, "it is not necessary to determine whether it would be proportional if it *were* relevant." *Walker v. Pioneer Prod. Servs., Inc.*, No. CV 15-0645, 2016 WL 1244510, at *3 (E.D. La. Mar. 30, 2016). Conversely, "relevance alone does not translate into automatic discoverability" because "[a]n assessment of proportionality is essential." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Accordingly, Representative Lozano objects to these requests to the extent that the information sought is irrelevant or disproportionate.

Given Representative Lozano's role as a member of the Texas House Representatives, and that the requested production directly relates to legislative activities, much of the requested production is subject to legislative privilege. That privilege traces its roots to before the founding of the Republic, as it has "taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries." *Tenney v. Brandhove*, 341 U.S. 372 (1951). The privilege protects not only legislators, but their staff and aides as well. *See Gravel v. United States*, 408 U.S. 606, 615-16 (1972). Here, DOJ's attempt to compel disclosure of Representative Lozano's "thought processes or the communications [he] had with other legislators" falls squarely within the well-established contours of legislative privilege. *Perez v. Abbott*, No. 5:11-cv-360, 2014 WL 3495414 (W.D. Tex. July 11, 2014). Additional privileges, including but not limited to, attorney-client privilege, the attorney work product doctrine, and deliberative process may also be implicated by DOJ's requests, and Representative Lozano anticipates asserting all applicable privileges implicated by the DOJ's requests. To the extent that documents responsive to DOJ's requests, Representative Lozano anticipates withholding the materials, preparing a log that complies with the Federal Rules of Civil Procedure, and producing that log within a reasonable time.

The inadvertent production or disclosure of any privileged documents or information shall not constitute or be deemed to be a waiver of any applicable privilege with respect to such document

3

or information (or the contents or subject matter thereof) or with respect to any other such document or discovery now or hereafter requested or provided. Representative Lozano reserves the right not to produce documents that are in part protected by privilege, except on a redacted basis, and to require the return of any document (and all copies thereof) inadvertently produced. Representative Lozano likewise does not waive the right to object, on any and all grounds, to (1) the evidentiary use of documents produced in response to these requests; and (2) discovery requests relating to those documents.

A portion of the requested production is also irrelevant to DOJ's claims and is thus identified individually below. But a much larger portion of the request is not proportional to the needs of the case. The proportionality language was inserted into Rule 26(b) in 2015 "to emphasize the need for proportionality," *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017), and "highlight[] its significance," *Mannina v. D.C.*, 334 F.R.D. 336, 339 n.4 (D.D.C. 2020); *see also* Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States,[1] ("Rule 26(b)(1) crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality[.]"). As the Advisory Committee explained, this addition of overt "proportional" language was meant to better reflect the intent of the 1983 amendments, which were designed "to deal with the problem of over-discovery." Fed. R. Civ. P. 26(b) advisory committee's note (2015) (quoting the 1983 advisory notes). However, this "clear focus of the 1983 provisions may have been softened, although inadvertently, by the amendments made in 1993." *Id.* Thus, the 2015 amendment sought to "restore[] the proportionality factors to their original place in defining the scope of discovery" and reinforce the parties' obligation "to consider these factors in making discovery requests, responses, or objections." *Id.* As fully restored, the proportionality requirement "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 672 (2019). Accordingly, Representative Lozano objects to the DOJ's subpoena to the extent that it falls short of this more stringent proportionality standard.

The Representative objects to the production of any documents or communications created after October 25, 2021 because any documents created after the passage of HB1 and SB6 are irrelevant to the United States' claims.

These responses and objections are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information or documents requested. All answers are given without prejudice to Representative Lozano's right to object to the discovery of any documents, facts, or information discovered after the date hereof. Likewise, these responses and objections are not intended to be, and shall not be construed as, agreement with the DOJ's characterization of any facts, circumstances, or legal obligations. Representative Lozano reserves the right to contest any such characterization as inaccurate and object to the Requests insofar as they contain any express or implied assumptions of fact or law concerning matters at issue in this litigation.

Representative Lozano will provide responses based on terms as they are commonly understood and consistent with the Federal Rules of Civil Procedure. Representative Lozano objects to and will refrain from extending or modifying any words employed in the Requests to comport with

---

[1] https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf

4

any expanded definitions or instructions. Representative Lozano will answer the Requests to the extent required by the Federal Rules of Civil Procedure and the Local Rules of the Western District of Texas.

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Representative Lozano objects to the definition of "document" to the extent that it calls for documents protected from disclosure by legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or any other applicable privilege.

Representative Lozano objects to the definitions of "Legislator," "Member of the U.S. House of Representatives," "individual person," "entity," and "organization," *see* ¶¶ 2–3, 9–10 because they are overbroad and inaccurate. They improperly group all persons and entities having any relation to a particular person or entity, when in fact the particular person or entity is independent of those related persons or entities. The Representative objects to the implied application to any related persons or entities without specific enumeration.

Representative Lozano further objects to the time period in Instruction 21, which defines the relevant time period for these responses as beginning on January 1, 2019. The claims and issues in this litigation pertain to redistricted maps that were drawn based upon data received from the United States Census Bureau in the late summer of 2021 and finalized in the fall of 2021. Accordingly, it is unreasonable and disproportionate to the needs of this case to look back to January of 2019 for documents responsive to these requests.

## RESPONSES

**Document Request 1**. All documents relating to any redistricting proposal for the Texas delegation to the U.S. House of Representatives or the Texas House, including but not limited to House Bill 1, Senate Bill 6, and any other Congressional or House redistricting proposal drawn, discussed, or considered. This request includes but is not limited to:

a.  The origination(s) or source(s) of any such redistricting proposal;

b.  The impetus, rationale, background, or motivation for any such redistricting proposal;

c.  All drafts in the development or revision of any such redistricting proposal, including but not limited to shapefiles, files or datasets used in mapping software, each RED report, each PAR report, demographic data (including but not limited to Citizen Voting Age Population, herpanic Citizen Voting Age Population, Black Citizen Voting Age Population, Voting Age Population, herpanic Voting Age Population, and Black Voting Age Population), election data (including but not limited to reconstituted election analyses), and files related to precinct names, precinct lines, split precincts, partisan indexes, population shifts, population deviations, voter registration, Spanish Surname Voter Registration, voter affiliation, Spanish Surname Voter Turnout, or changing census geography;

d.  The pairing of any incumbents in any such redistricting proposal;

e.  Any redistricting amendment, whether partial or total, to each such proposal;

f.  Negotiations regarding any redistricting proposal; and

g. all calculations, reports, audits, estimates, projections, or other analyses, from any source, relating to the effect or impact, of any kind—including on (1) Texas minority voters, (2) existing or emerging minority opportunity districts, or (3) voter turnout (including Spanish Surname Voter Turnout)—that could result from the implementation of any such redistricting proposal.

**Response**. Representative Lozano objects to this request because it calls for the production of documents that are subject to legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. In particular, requesting analyses "from any source" is likely to encompass documents that are protected by legislative privilege. Requesting "the origination(s)" and "the impetus, rationale, background, or motivation" of certain legislative proposals would impermissibly expose thought processes and mental impressions, which are also subject to legislative privilege. Requesting analyses that were "considered by" the Legislature, "draft in the development or revision of" redistricting proposals, "negotiations" and "calculations, reports, audits, estimates, projections, or other analyses" would be subject to legislative privilege for the same reason.

Representative Lozano further objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request generally seeks shapefiles, data sets, reconstituted election analyses, amendments, information concerning the pairing of incumbents, and other general information, the Representative directs DOJ to the Texas Legislative Council's Capitol Data Portal, https://data.capitol.texas.gov/organization/tlc, where such information may be found. Insofar as the request seeks such information specifically considered by Representative Lozano, the request calls for information subject to the legislative privilege.

Lastly, insofar as the request seeks legal analysis concerning the "effect or impact" of redistricting proposals on "minority voters," "existing or emerging minority opportunity districts," or "voter turnout," it seeks information that may be subject to the attorney-client privilege or constitute attorney work-product.

Representative Lozano is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 2**. All documents relating to the redistricting process for the Texas House or the Texas delegation to the U.S. House of Representatives, including but not limited to planning, timing, hearings, outreach, publicity, public or expert participation, deadlines, limitations, staffing, and persons or entities involved.

**Response**. Representative Lozano objects to this request because it calls for documents that are subject to the legislative privilege. The request seeks documents relating to the "planning" and "timing" of the redistricting process. These go to mental impressions and legislative strategy, which are at the core of the legislative privilege. Representative Lozano objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege,

deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Representative Lozano also objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request seeks information on the attendance and date of hearings, and persons and entities involves, such information may be found at the Texas Senate and Texas House of Representatives websites, as well as on the Texas Legislature Online ("TLO") website. *See* https://senate.texas.gov/index.php (Senate); https://house.texas.gov/ (House); https://capitol.texas.gov/Home.aspx (TLO).

Representative Lozano is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 3**. All documents relating to voting patterns in Texas elections with respect to race, ethnicity, or language minority status, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Insofar as this request asks for calculations, reports, audits, estimates, projections, or other analyses used as part of the redistricting process, the Representative objects on the basis that such a request calls for documents that are subject to the legislative privilege. Documents used for the purpose of formulating legislation are at the core of the legislative privilege. Representative Lozano objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

The Representative also objects to this request because it is facially overbroad. It calls for "all" documents relating to voting patterns, without any temporal limitation (other than the one included in the instructions) or further specification. For this reason, documents relating to voting patterns in Texas may well be irrelevant to the United States' claims—which are limited to several districts in the Texas House of Representatives map and Congressional map.

Representative Lozano is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 4**. All documents relating to whether House Bill 1, Senate Bill 6, or any other redistricting proposal drawn, discussed, or considered with respect to the Texas House or the Texas delegation to the U.S. House of Representatives complies with the Voting Rights Act, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. The Representative objects to this request because, by its very nature, it calls for documents that are subject to the attorney-client privilege, the legislative privilege, and constitute attorney work product. Legal analysis concerning whether HB1, SB6, or other related redistricting bills comply with the VRA will necessarily implicate these privileges. Further, communications between legislators and their staffs are privileged communications covered by the legislative privilege.

Representative Lozano is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 5**. All documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives exchanged between, among, with, or within the Office of the Governor, the Office of the Representative, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate to represent Texas in the U.S. House of Representatives, any candidate for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any local elected official in Texas, any consultant, any expert, any law firm or attorney, any vendor, any other political or community group or organization, or any member of the public.

**Response**. The Representative objects to this request because it is overbroad. The request calls for "all documents relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to documents that are irrelevant to the United States' claims in this case.

Representative Lozano also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of the Representative, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

The Representative also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents

relating to redistricting exchanged between the Representative and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Representative Lozano is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 6**. All other documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives from July 1, 2021, to the present, including but not limited to redistricting criteria, public statements, correspondence, calendar invitations, scheduling emails, meeting minutes, agendas, attendance sheets, call logs, notes, presentations, studies, advocacy, letters, or other communications.

**Response**. The Representative objects to this request because it is overbroad. The request calls for "all documents relating redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to make documents that are irrelevant to the United States' claims in this case.

The Representative also objects to this request because it calls for documents that are subject to the legislative privilege. Among others, documents concerning "presentations," "redistricting criteria," and "meeting minutes" go to the Representative's mental impressions and motivations concerning pending legislation, which is clearly covered by the privilege. Of course, communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991).

Representative Lozano is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 7**. All documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes, race, ethnicity, language minority status, or United States citizenship that were exchanged between, among, with, or within the Office of the Governor, the Office of the Representative, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate for the Texas House, any candidate to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any national political party, any state political party organization, any

local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any consultant, any expert, any law firm or attorney, any vendor, any group or organization, or any member of the public.

**Response**. The Representative objects to this request because it is overbroad. The request calls for "all documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes," without any qualifications (other than the listed recipients). That is an extremely broad request, and will likely apply to make documents that are irrelevant to the United States' claims in this case.

Representative Lozano also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of the Representative, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

The Representative also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to demographic enumerations or estimates exchanged between the Representative and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

The Representative objects on the basis that much the information sought by this request may be made publicly available by the U.S. Census Bureau and the Texas Demographic Center.

Representative Lozano is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 8**. All documents relating to payment for services; agreements of representation, consultation, employment, services, confidentiality, or common interest; or any other type of contract relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives that include any of the following individuals or entities: Adam Foltz, Akin Gump Strauss Hauer & Feld LLP, Michael Best Strategies, any consultant, any political operative, any expert, the Office of the Texas Attorney General, any other law firm, any other attorney, any other vendor, or any other person or entity.

**Response**. The Representative objects to this request because it is overbroad and harassing. Although it appears to be bounded by specific persons and entities, the end of the request provides that the request applies to "any other attorney," "any other vendor," or "any other person or entity." The net effect is that the initial limitations are swallowed by the sheer breadth of a request that asks for "all documents" that "[relate] to redistricting" and that include "any other person or entity." Accordingly, this request is overly broad and conducting a search of this scope and breadth without any reasonable limitation is disproportionate to the needs of this case. Further, Representative Lozano is not a party to this litigation, and should not be required to produce, for example, "all documents" that "[relate] to redistricting" that include "any political operative." Such a facially overbroad requests create an undue burden. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

In addition, Representative Lozano objects to this request because it calls for documents that are subject to the legislative privilege and the attorney-client privilege. Documents relating to services provided by third parties for a legislative purpose are subject to the legislative privilege. *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)). And documents relating to the Representative and any legal representation, by the Office of the Texas Attorney General or otherwise, is subject to the attorney-client privilege.

The Representative also objects on the basis that this request does not list an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any contracts or other agreements entered into after the filing of this complaint would necessarily be irrelevant.

Representative Lozano is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 9**. All non-privileged documents relating to the instant lawsuit or preceding investigation of Texas by the U.S. Department of Justice.

**Response**. The Representative objects to this request because it is overbroad. It is unclear from the face of this request why "all documents relating" to this lawsuit or the United States' preceding investigation would be relevant to the United States' claims. And insofar as these documents relate to the United States' investigation, these are documents that are more likely to be within the care, custody, or control of the United States. If such materials are more commonly held by others, including state and local law enforcement agencies, production should be requested from them rather than from an individual legislator. Given the availability of these documents from other sources, the burden of requiring the Representative to collect them far exceeds any benefit that might result. *See Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (stating that courts should "consider what information is available to the requesting party from other sources" when analyzing "the benefit side of the ledger").

The Representative also objects on the basis that this request does not list an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any documents originating after the filing of this complaint would necessarily be irrelevant.

Representative Lozano is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS *et al.*, | § § § | |
| *Plaintiffs*, | § § | Case No. 3:21-cv-259-DCG-JES-JVB |
| v. | § § | (Consolidated Cases) |
| GREG ABBOTT, *et al.*, | § § | |
| *Defendants*. | § § | |

**REPRESENTATIVE KEN KING'S OBJECTIONS AND RESPONSES TO
THE UNITED STATES' SUBPOENA FOR DOCUMENTS AND RECORDS**

TO:   Michelle Rupp, U.S. Department of Justice, Civil Rights Division, Voting Section, 950 Pennsylvania Ave. NW, 4CON 8th Floor, Washington, D.C. 20530; michelle.rupp@usdoj.gov; (202) 305-0565

Pursuant to the Federal Rules of Civil Procedure, Representative Ken King hereby serves Objections and Responses to the United States' Subpoena for Documents and Records.

Date: March 14, 2022

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Respectfully submitted.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
Tex. State Bar No. 24088531

ERIC A. HUDSON
Senior Special Counsel
Tex. Bar No. 24059977

KATHLEEN T. HUNKER
Special Counsel
Tex. State Bar No. 24118415

1

LEIF A. OLSON
Special Counsel
Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
Tex. State Bar No. 24064380

JACK B. DISORBO
Assistant Attorney General
Tex. State Bar No. 24120804

Office of the Attorney General
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov

**Counsel for Representative Ken King**

### CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2022, the attached Objections and Responses to the United States' Subpoena for Documents and Records was served on opposing counsel via electronic mail.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation

## OBJECTIONS RELEVANT TO EACH REQUEST

Representative King asserts that each of the following objections applies specifically to each request below. In the interest of brevity, these objections are offered here to avoid unnecessary repetition of objections to definitions, scope, and similar issues that afflict each request. These objections are as follows:

There is currently no protective order in place between the United States Department of Justice ("DOJ") and Representative King. To the extent that documents may be identified that are discoverable but require additional protections to prevent public disclosure, any such documents that are identified will be withheld and described in the responses, with the clarification that such production will first require entry of a protective order before the documents may be disclosed.

The Federal Rules provide that the "attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). While nonparty subpoenas are governed by Rule 45, they are also subject to the parameters established by Rule 26. *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 607 (W.D. Tex. 2019) ("As with any other forms of discovery, the scope of discovery through a Rule 45 subpoena is governed by Rule 26(b)."). Therefore, the discovery sought here is still limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The twin demands for relevancy and proportionality "are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Thus, if the information sought is irrelevant to the party's claims or defenses, "it is not necessary to determine whether it would be proportional if it *were* relevant." *Walker v. Pioneer Prod. Servs., Inc.*, No. CV 15-0645, 2016 WL 1244510, at *3 (E.D. La. Mar. 30, 2016). Conversely, "relevance alone does not translate into automatic discoverability" because "[a]n assessment of proportionality is essential." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Accordingly, Representative King objects to these requests to the extent that the information sought is irrelevant or disproportionate.

Given Representative King's role as a member of the Texas House Representatives, and that the requested production directly relates to legislative activities, much of the requested production is subject to legislative privilege. That privilege traces its roots to before the founding of the Republic, as it has "taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries." *Tenney v. Brandhove*, 341 U.S. 372 (1951). The privilege protects not only legislators, but their staff and aides as well. *See Gravel v. United States*, 408 U.S. 606, 615-16 (1972). Here, DOJ's attempt to compel disclosure of Representative King's "thought processes or the communications [he] had with other legislators" falls squarely within the well-established contours of legislative privilege. *Perez v. Abbott*, No. 5:11-cv-360, 2014 WL 3495414 (W.D. Tex. July 11, 2014). Additional privileges, including but not limited to, attorney-client privilege, the attorney work product doctrine, and deliberative process may also be implicated by DOJ's requests, and Representative King anticipates asserting all applicable privileges implicated by the DOJ's requests. To the extent that documents responsive to DOJ's requests, Representative King anticipates withholding the materials, preparing a log that complies with the Federal Rules of Civil Procedure, and producing that log within a reasonable time.

The inadvertent production or disclosure of any privileged documents or information shall not constitute or be deemed to be a waiver of any applicable privilege with respect to such document

3

or information (or the contents or subject matter thereof) or with respect to any other such document or discovery now or hereafter requested or provided. Representative King reserves the right not to produce documents that are in part protected by privilege, except on a redacted basis, and to require the return of any document (and all copies thereof) inadvertently produced. Representative King likewise does not waive the right to object, on any and all grounds, to (1) the evidentiary use of documents produced in response to these requests; and (2) discovery requests relating to those documents.

A portion of the requested production is also irrelevant to DOJ's claims and is thus identified individually below. But a much larger portion of the request is not proportional to the needs of the case. The proportionality language was inserted into Rule 26(b) in 2015 "to emphasize the need for proportionality," *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017), and "highlight[] its significance," *Mannina v. D.C.*, 334 F.R.D. 336, 339 n.4 (D.D.C. 2020); *see also* Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States,[1] ("Rule 26(b)(1) crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality[.]"). As the Advisory Committee explained, this addition of overt "proportional" language was meant to better reflect the intent of the 1983 amendments, which were designed "to deal with the problem of over-discovery." Fed. R. Civ. P. 26(b) advisory committee's note (2015) (quoting the 1983 advisory notes). However, this "clear focus of the 1983 provisions may have been softened, although inadvertently, by the amendments made in 1993." *Id.* Thus, the 2015 amendment sought to "restore[] the proportionality factors to their original place in defining the scope of discovery" and reinforce the parties' obligation "to consider these factors in making discovery requests, responses, or objections." *Id.* As fully restored, the proportionality requirement "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 672 (2019). Accordingly, Representative King objects to the DOJ's subpoena to the extent that it falls short of this more stringent proportionality standard.

The Representative objects to the production of any documents or communications created after October 25, 2021 because any documents created after the passage of HB1 and SB6 are irrelevant to the United States' claims.

These responses and objections are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information or documents requested. All answers are given without prejudice to Representative King's right to object to the discovery of any documents, facts, or information discovered after the date hereof. Likewise, these responses and objections are not intended to be, and shall not be construed as, agreement with the DOJ's characterization of any facts, circumstances, or legal obligations. Representative King reserves the right to contest any such characterization as inaccurate and object to the Requests insofar as they contain any express or implied assumptions of fact or law concerning matters at issue in this litigation.

Representative King will provide responses based on terms as they are commonly understood and consistent with the Federal Rules of Civil Procedure. Representative King objects to and will refrain from extending or modifying any words employed in the Requests to comport with any

---

[1] https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf

4

expanded definitions or instructions. Representative King will answer the Requests to the extent required by the Federal Rules of Civil Procedure and the Local Rules of the Western District of Texas.

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Representative King objects to the definition of "document" to the extent that it calls for documents protected from disclosure by legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or any other applicable privilege.

Representative King objects to the definitions of "Legislator," "Member of the U.S. House of Representatives," "individual person," "entity," and "organization," *see* ¶¶ 2–3, 9–10 because they are overbroad and inaccurate. They improperly group all persons and entities having any relation to a particular person or entity, when in fact the particular person or entity is independent of those related persons or entities. The Representative objects to the implied application to any related persons or entities without specific enumeration.

Representative King further objects to the time period in Instruction 21, which defines the relevant time period for these responses as beginning on January 1, 2019. The claims and issues in this litigation pertain to redistricted maps that were drawn based upon data received from the United States Census Bureau in the late summer of 2021 and finalized in the fall of 2021. Accordingly, it is unreasonable and disproportionate to the needs of this case to look back to January of 2019 for documents responsive to these requests.

## RESPONSES

**Document Request 1**. All documents relating to any redistricting proposal for the Texas delegation to the U.S. House of Representatives or the Texas House, including but not limited to House Bill 1, Senate Bill 6, and any other Congressional or House redistricting proposal drawn, discussed, or considered. This request includes but is not limited to:

a. The origination(s) or source(s) of any such redistricting proposal;

b. The impetus, rationale, background, or motivation for any such redistricting proposal;

c. All drafts in the development or revision of any such redistricting proposal, including but not limited to shapefiles, files or datasets used in mapping software, each RED report, each PAR report, demographic data (including but not limited to Citizen Voting Age Population, herpanic Citizen Voting Age Population, Black Citizen Voting Age Population, Voting Age Population, herpanic Voting Age Population, and Black Voting Age Population), election data (including but not limited to reconstituted election analyses), and files related to precinct names, precinct lines, split precincts, partisan indexes, population shifts, population deviations, voter registration, Spanish Surname Voter Registration, voter affiliation, Spanish Surname Voter Turnout, or changing census geography;

d. The pairing of any incumbents in any such redistricting proposal;

e. Any redistricting amendment, whether partial or total, to each such proposal;

f. Negotiations regarding any redistricting proposal; and

g. all calculations, reports, audits, estimates, projections, or other analyses, from any source, relating to the effect or impact, of any kind—including on (1) Texas minority voters, (2) existing or emerging minority opportunity districts, or (3) voter turnout (including Spanish Surname Voter Turnout)—that could result from the implementation of any such redistricting proposal.

**Response**. Representative King objects to this request because it calls for the production of documents that are subject to legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. In particular, requesting analyses "from any source" is likely to encompass documents that are equally accessible to Plaintiff. Insofar as the request generally seeks shapefiles, data sets, reconstituted election analyses, amendments, information concerning the pairing of incumbents, and other general information, the Representative directs DOJ to the Texas Legislative Council's Capitol Data Portal, https://data.capitol.texas.gov/organization/tlc, where such information may be found. Insofar as the request seeks such information specifically considered by Representative King, the request calls for information subject to the legislative privilege.

Representative King further objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request generally seeks shapefiles, data sets, reconstituted election analyses, amendments, information concerning the pairing of incumbents, and other general information, the Representative directs DOJ to the Texas Legislative Council's Capitol Data Portal, https://data.capitol.texas.gov/organization/tlc, where such information may be found. Insofar as the request seeks such information specifically considered by Representative King, the request calls for information subject to the legislative privilege.

Lastly, insofar as the request seeks legal analysis concerning the "effect or impact" of redistricting proposals on "minority voters," "existing or emerging minority opportunity districts," or "voter turnout," it seeks information that may be subject to the attorney-client privilege or constitute attorney work product.

Representative King is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 2**. All documents relating to the redistricting process for the Texas House or the Texas delegation to the U.S. House of Representatives, including but not limited to planning, timing, hearings, outreach, publicity, public or expert participation, deadlines, limitations, staffing, and persons or entities involved.

**Response**. Representative King objects to this request because it calls for documents that are subject to the legislative privilege. The request seeks documents relating to the "planning" and "timing" of the redistricting process. These go to mental impressions and legislative strategy, which are at the core of the legislative privilege. Representative King objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process

privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Representative King also objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request seeks information on the attendance and date of hearings, and persons and entities involves, such information may be found at the Texas Senate and Texas House of Representatives websites, as well as on the Texas Legislature Online ("TLO") website. *See* https://senate.texas.gov/index.php (Senate); https://house.texas.gov/ (House); https://capitol.texas.gov/Home.aspx (TLO).

Representative King is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 3**. All documents relating to voting patterns in Texas elections with respect to race, ethnicity, or language minority status, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Insofar as this request asks for calculations, reports, audits, estimates, projections, or other analyses used as part of the redistricting process, the Representative objects on the basis that such a request calls for documents that are subject to the legislative privilege. Documents used for the purpose of formulating legislation are at the core of the legislative privilege. Representative King objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

The Representative also objects to this request because it is facially overbroad. It calls for "all" documents relating to voting patterns, without any temporal limitation (other than the one included in the instructions) or further specification. For this reason, documents relating to voting patterns in Texas may well be irrelevant to the United States' claims—which are limited to several districts in the Texas House of Representatives map and Congressional map.

Representative King is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 4**. All documents relating to whether House Bill 1, Senate Bill 6, or any other redistricting proposal drawn, discussed, or considered with respect to the Texas House or the Texas delegation to the U.S. House of Representatives complies with the Voting Rights Act, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

7

**Response**. The Representative objects to this request because, by its very nature, it calls for documents that are subject to the attorney-client privilege, the legislative privilege, and constitute attorney work product. Legal analysis concerning whether HB1, SB6, or other related redistricting bills comply with the VRA will necessarily implicate these privileges. Further, communications between legislators and their staffs are privileged communications covered by the legislative privilege.

Representative King is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 5**. All documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives exchanged between, among, with, or within the Office of the Governor, the Office of the Representative, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate to represent Texas in the U.S. House of Representatives, any candidate for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any local elected official in Texas, any consultant, any expert, any law firm or attorney, any vendor, any other political or community group or organization, or any member of the public.

**Response**. The Representative objects to this request because it is overbroad. The request calls for "all documents relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to documents that are irrelevant to the United States' claims in this case.

Representative King also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of the Representative, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

The Representative also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents

relating to redistricting exchanged between the Representative and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Representative King is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 6**. All other documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives from July 1, 2021, to the present, including but not limited to redistricting criteria, public statements, correspondence, calendar invitations, scheduling emails, meeting minutes, agendas, attendance sheets, call logs, notes, presentations, studies, advocacy, letters, or other communications.

**Response**. The Representative objects to this request because it is overbroad. The request calls for "all documents relating redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to make documents that are irrelevant to the United States' claims in this case.

The Representative also objects to this request because it calls for documents that are subject to the legislative privilege. Among others, documents concerning "presentations," "redistricting criteria," and "meeting minutes" go to the Representative's mental impressions and motivations concerning pending legislation, which is clearly covered by the privilege. Of course, communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991).

Representative King is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 7**. All documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes, race, ethnicity, language minority status, or United States citizenship that were exchanged between, among, with, or within the Office of the Governor, the Office of the Representative, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate for the Texas House, any candidate to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any national political party, any state political party organization, any

local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any consultant, any expert, any law firm or attorney, any vendor, any group or organization, or any member of the public.

**Response**. The Representative objects to this request because it is overbroad. The request calls for "all documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes," without any qualifications (other than the listed recipients). That is an extremely broad request, and will likely apply to make documents that are irrelevant to the United States' claims in this case.

Representative King also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of the Representative, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

The Representative also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to demographic enumerations or estimates exchanged between the Representative and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

The Representative objects on the basis that much the information sought by this request may be made publicly available by the U.S. Census Bureau and the Texas Demographic Center.

Representative King is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 8**. All documents relating to payment for services; agreements of representation, consultation, employment, services, confidentiality, or common interest; or any other type of contract relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives that include any of the following individuals or entities: Adam Foltz, Akin Gump Strauss Hauer & Feld LLP, Michael Best Strategies, any consultant, any political operative, any expert, the Office of the Texas Attorney General, any other law firm, any other attorney, any other vendor, or any other person or entity.

**Response**. The Representative objects to this request because it is overbroad and harassing. Although it appears to be bounded by specific persons and entities, the end of the request provides that the request applies to "any other attorney," "any other vendor," or "any other person or entity." The net effect is that the initial limitations are swallowed by the sheer breadth of a request that asks for "all documents" that "[relate] to redistricting" and that include "any other person or entity." Accordingly, this request is overly broad and conducting a search of this scope and breadth without any reasonable limitation is disproportionate to the needs of this case. Further, Representative King is not a party to this litigation, and should not be required to produce, for example, "all documents" that "[relate] to redistricting" that include "any political operative." Such a facially overbroad requests create an undue burden. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

In addition, Representative King objects to this request because it calls for documents that are subject to the legislative privilege and the attorney-client privilege. Documents relating to services provided by third parties for a legislative purpose are subject to the legislative privilege. *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)). And documents relating to the Representative and any legal representation, by the Office of the Texas Attorney General or otherwise, is subject to the attorney-client privilege.

The Representative also objects on the basis that this request does not list an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any contracts or other agreements entered into after the filing of this complaint would necessarily be irrelevant.

Representative King is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 9**. All non-privileged documents relating to the instant lawsuit or preceding investigation of Texas by the U.S. Department of Justice.

**Response**. The Representative objects to this request because it is overbroad. It is unclear from the face of this request why "all documents relating" to this lawsuit or the United States' preceding investigation would be relevant to the United States' claims. And insofar as these documents relate to the United States' investigation, these are documents that are more likely to be within the care, custody, or control of the United States. If such materials are more commonly held by others, including state and local law enforcement agencies, production should be requested from them rather than from an individual legislator. Given the availability of these documents from other sources, the burden of requiring the Representative to collect them far exceeds any benefit that might result. *See Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (stating that courts should "consider what information is available to the requesting party from other sources" when analyzing "the benefit side of the ledger").

The Representative also objects on the basis that this request does not list an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any documents originating after the filing of this complaint would necessarily be irrelevant.

Representative King is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS *et al.*, | § § § | |
| *Plaintiffs*, | § § | Case No. 3:21-cv-259-DCG-JES-JVB |
| v. | § § | (Consolidated Cases) |
| GREG ABBOTT, *et al.*, | § § § | |
| *Defendants*. | § § | |

---

### REPRESENTATIVE RYAN GUILLEN'S OBJECTIONS AND RESPONSES TO THE UNITED STATES' SUBPOENA FOR DOCUMENTS AND RECORDS

TO:   Michelle Rupp, U.S. Department of Justice, Civil Rights Division, Voting Section, 950 Pennsylvania Ave. NW, 4CON 8th Floor, Washington, D.C. 20530; michelle.rupp@usdoj.gov; (202) 305-0565

Pursuant to the Federal Rules of Civil Procedure, Representative Ryan Guillen hereby serves Objections and Responses to the United States' Subpoena for Documents and Records.

Date: March 18, 2022

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Respectfully submitted.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
Tex. State Bar No. 24088531

ERIC A. HUDSON
Senior Special Counsel
Tex. Bar No. 24059977

KATHLEEN T. HUNKER
Special Counsel
Tex. State Bar No. 24118415

1

LEIF A. OLSON
Special Counsel
Tex. State Bar No. 24032801

JEFFREY M. WHITE
Special Counsel
Tex. State Bar No. 24064380

JACK B. DISORBO
Assistant Attorney General
Tex. State Bar No. 24120804

Office of the Attorney General
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov

**Counsel for Representative Ryan Guillen**

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2022, the attached Objections and Responses to the United States' Subpoena for Documents and Records was served on opposing counsel via electronic mail.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation

2

## OBJECTIONS RELEVANT TO EACH REQUEST

Representative Guillen asserts that each of the following objections applies specifically to each request below. In the interest of brevity, these objections are offered here to avoid unnecessary repetition of objections to definitions, scope, and similar issues that afflict each request. These objections are as follows:

There is currently no protective order in place between the United States Department of Justice ("DOJ") and Representative Guillen. To the extent that documents may be identified that are discoverable but require additional protections to prevent public disclosure, any such documents that are identified will be withheld and described in the responses, with the clarification that such production will first require entry of a protective order before the documents may be disclosed.

The Federal Rules provide that the "attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). While nonparty subpoenas are governed by Rule 45, they are also subject to the parameters established by Rule 26. *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 607 (W.D. Tex. 2019) ("As with any other forms of discovery, the scope of discovery through a Rule 45 subpoena is governed by Rule 26(b)."). Therefore, the discovery sought here is still limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The twin demands for relevancy and proportionality "are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Thus, if the information sought is irrelevant to the party's claims or defenses, "it is not necessary to determine whether it would be proportional if it *were* relevant." *Walker v. Pioneer Prod. Servs., Inc.*, No. CV 15-0645, 2016 WL 1244510, at *3 (E.D. La. Mar. 30, 2016). Conversely, "relevance alone does not translate into automatic discoverability" because "[a]n assessment of proportionality is essential." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Accordingly, Representative Guillen objects to these requests to the extent that the information sought is irrelevant or disproportionate.

Given Representative Guillen's role as a member of the Texas House Representatives, and that the requested production directly relates to legislative activities, much of the requested production is subject to legislative privilege. That privilege traces its roots to before the founding of the Republic, as it has "taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries." *Tenney v. Brandhove*, 341 U.S. 372 (1951). The privilege protects not only legislators, but their staff and aides as well. *See Gravel v. United States*, 408 U.S. 606, 615-16 (1972). Here, DOJ's attempt to compel disclosure of Representative Guillen's "thought processes or the communications [he] had with other legislators" falls squarely within the well-established contours of legislative privilege. *Perez v. Abbott*, No. 5:11-cv-360, 2014 WL 3495414 (W.D. Tex. July 11, 2014). Additional privileges, including but not limited to, attorney-client privilege, the attorney work product doctrine, and deliberative process may also be implicated by DOJ's requests, and Representative Guillen anticipates asserting all applicable privileges implicated by the DOJ's requests. To the extent that documents responsive to DOJ's requests, Representative Guillen anticipates withholding the materials, preparing a log that complies with the Federal Rules of Civil Procedure, and producing that log within a reasonable time.

The inadvertent production or disclosure of any privileged documents or information shall not constitute or be deemed to be a waiver of any applicable privilege with respect to such document

or information (or the contents or subject matter thereof) or with respect to any other such document or discovery now or hereafter requested or provided. Representative Guillen reserves the right not to produce documents that are in part protected by privilege, except on a redacted basis, and to require the return of any document (and all copies thereof) inadvertently produced. Representative Guillen likewise does not waive the right to object, on any and all grounds, to (1) the evidentiary use of documents produced in response to these requests; and (2) discovery requests relating to those documents.

A portion of the requested production is also irrelevant to DOJ's claims and is thus identified individually below. But a much larger portion of the request is not proportional to the needs of the case. The proportionality language was inserted into Rule 26(b) in 2015 "to emphasize the need for proportionality," *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017), and "highlight[] its significance," *Mannina v. D.C.*, 334 F.R.D. 336, 339 n.4 (D.D.C. 2020); *see also* Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States,[1] ("Rule 26(b)(1) crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality[.]"). As the Advisory Committee explained, this addition of overt "proportional" language was meant to better reflect the intent of the 1983 amendments, which were designed "to deal with the problem of over-discovery." Fed. R. Civ. P. 26(b) advisory committee's note (2015) (quoting the 1983 advisory notes). However, this "clear focus of the 1983 provisions may have been softened, although inadvertently, by the amendments made in 1993." *Id.* Thus, the 2015 amendment sought to "restore[] the proportionality factors to their original place in defining the scope of discovery" and reinforce the parties' obligation "to consider these factors in making discovery requests, responses, or objections." *Id.* As fully restored, the proportionality requirement "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 672 (2019). Accordingly, Representative Guillen objects to the DOJ's subpoena to the extent that it falls short of this more stringent proportionality standard.

The Representative objects to the production of any documents or communications created after October 25, 2021 because any documents created after the passage of HB1 and SB6 are irrelevant to the United States' claims.

These responses and objections are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information or documents requested. All answers are given without prejudice to Representative Guillen's right to object to the discovery of any documents, facts, or information discovered after the date hereof. Likewise, these responses and objections are not intended to be, and shall not be construed as, agreement with the DOJ's characterization of any facts, circumstances, or legal obligations. Representative Guillen reserves the right to contest any such characterization as inaccurate and object to the Requests insofar as they contain any express or implied assumptions of fact or law concerning matters at issue in this litigation.

Representative Guillen will provide responses based on terms as they are commonly understood and consistent with the Federal Rules of Civil Procedure. Representative Guillen objects to and will refrain from extending or modifying any words employed in the Requests to comport with

---

[1] https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf

any expanded definitions or instructions. Representative Guillen will answer the Requests to the extent required by the Federal Rules of Civil Procedure and the Local Rules of the Western District of Texas.

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Representative Guillen objects to the definition of "document" to the extent that it calls for documents protected from disclosure by legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or any other applicable privilege.

Representative Guillen objects to the definitions of "Legislator," "Member of the U.S. House of Representatives," "individual person," "entity," and "organization," *see* ¶¶ 2–3, 9–10 because they are overbroad and inaccurate. They improperly group all persons and entities having any relation to a particular person or entity, when in fact the particular person or entity is independent of those related persons or entities. The Representative objects to the implied application to any related persons or entities without specific enumeration.

Representative Guillen further objects to the time period in Instruction 21, which defines the relevant time period for these responses as beginning on January 1, 2019. The claims and issues in this litigation pertain to redistricted maps that were drawn based upon data received from the United States Census Bureau in the late summer of 2021 and finalized in the fall of 2021. Accordingly, it is unreasonable and disproportionate to the needs of this case to look back to January of 2019 for documents responsive to these requests.

## RESPONSES

**Document Request 1**. All documents relating to any redistricting proposal for the Texas delegation to the U.S. House of Representatives or the Texas House, including but not limited to House Bill 1, Senate Bill 6, and any other Congressional or House redistricting proposal drawn, discussed, or considered. This request includes but is not limited to:

a. The origination(s) or source(s) of any such redistricting proposal;

b. The impetus, rationale, background, or motivation for any such redistricting proposal;

c. All drafts in the development or revision of any such redistricting proposal, including but not limited to shapefiles, files or datasets used in mapping software, each RED report, each PAR report, demographic data (including but not limited to Citizen Voting Age Population, herpanic Citizen Voting Age Population, Black Citizen Voting Age Population, Voting Age Population, herpanic Voting Age Population, and Black Voting Age Population), election data (including but not limited to reconstituted election analyses), and files related to precinct names, precinct lines, split precincts, partisan indexes, population shifts, population deviations, voter registration, Spanish Surname Voter Registration, voter affiliation, Spanish Surname Voter Turnout, or changing census geography;

d. The pairing of any incumbents in any such redistricting proposal;

e. Any redistricting amendment, whether partial or total, to each such proposal;

f. Negotiations regarding any redistricting proposal; and

g. all calculations, reports, audits, estimates, projections, or other analyses, from any source, relating to the effect or impact, of any kind—including on (1) Texas minority voters, (2) existing or emerging minority opportunity districts, or (3) voter turnout (including Spanish Surname Voter Turnout)—that could result from the implementation of any such redistricting proposal.

**Response**. Representative Guillen objects to this request because it calls for the production of documents that are subject to legislative privilege, attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501. In particular, requesting analyses "from any source" is likely to encompass documents that are protected by legislative privilege. Requesting "the origination(s)" and "the impetus, rationale, background, or motivation" of certain legislative proposals would impermissibly expose thought processes and mental impressions, which are also subject to legislative privilege. Requesting analyses that were "considered by" the Legislature, "draft in the development or revision of" redistricting proposals, "negotiations" and "calculations, reports, audits, estimates, projections, or other analyses" would be subject to legislative privilege for the same reason.

Representative Guillen further objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request generally seeks shapefiles, data sets, reconstituted election analyses, amendments, information concerning the pairing of incumbents, and other general information, the Representative directs DOJ to the Texas Legislative Council's Capitol Data Portal, https://data.capitol.texas.gov/organization/tlc, where such information may be found. Insofar as the request seeks such information specifically considered by Representative Guillen, the request calls for information subject to the legislative privilege.

Lastly, insofar as the request seeks legal analysis concerning the "effect or impact" of redistricting proposals on "minority voters," "existing or emerging minority opportunity districts," or "voter turnout," it seeks information that may be subject to the attorney-client privilege or constitute attorney work product.

Representative Guillen is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 2**. All documents relating to the redistricting process for the Texas House or the Texas delegation to the U.S. House of Representatives, including but not limited to planning, timing, hearings, outreach, publicity, public or expert participation, deadlines, limitations, staffing, and persons or entities involved.

**Response**. Representative Guillen objects to this request because it calls for documents that are subject to the legislative privilege. The request seeks documents relating to the "planning" and "timing" of the redistricting process. These go to mental impressions and legislative strategy, which are at the core of the legislative privilege. Representative Guillen objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege,

deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Representative Guillen also objects to this request because it asks him to gather publicly-available documents that are equally accessible to Plaintiff. Insofar as the request seeks information on the attendance and date of hearings, and persons and entities involves, such information may be found at the Texas Senate and Texas House of Representatives websites, as well as on the Texas Legislature Online ("TLO") website. *See* https://senate.texas.gov/index.php (Senate); https://house.texas.gov/ (House); https://capitol.texas.gov/Home.aspx (TLO).

Representative Guillen is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 3**. All documents relating to voting patterns in Texas elections with respect to race, ethnicity, or language minority status, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. Insofar as this request asks for calculations, reports, audits, estimates, projections, or other analyses used as part of the redistricting process, the Representative objects on the basis that such a request calls for documents that are subject to the legislative privilege. Documents used for the purpose of formulating legislation are at the core of the legislative privilege. Representative Guillen objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

The Representative also objects to this request because it is facially overbroad. It calls for "all" documents relating to voting patterns, without any temporal limitation (other than the one included in the instructions) or further specification. For this reason, documents relating to voting patterns in Texas may well be irrelevant to the United States' claims—which are limited to several districts in the Texas House of Representatives map and Congressional map.

Representative Guillen is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 4**. All documents relating to whether House Bill 1, Senate Bill 6, or any other redistricting proposal drawn, discussed, or considered with respect to the Texas House or the Texas delegation to the U.S. House of Representatives complies with the Voting Rights Act, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response**. The Representative objects to this request because, by its very nature, it calls for documents that are subject to the attorney-client privilege, the legislative privilege, and constitute attorney work product. Legal analysis concerning whether HB1, SB6, or other related redistricting bills comply with the VRA will necessarily implicate these privileges. Further, communications between legislators and their staffs are privileged communications covered by the legislative privilege.

Representative Guillen is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 5**. All documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives exchanged between, among, with, or within the Office of the Governor, the Office of the Representative, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate to represent Texas in the U.S. House of Representatives, any candidate for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any local elected official in Texas, any consultant, any expert, any law firm or attorney, any vendor, any other political or community group or organization, or any member of the public.

**Response**. The Representative objects to this request because it is overbroad. The request calls for "all documents relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to documents that are irrelevant to the United States' claims in this case.

Representative Guillen also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of the Representative, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

The Representative also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents

relating to redistricting exchanged between the Representative and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Representative Guillen is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 6**. All other documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives from July 1, 2021, to the present, including but not limited to redistricting criteria, public statements, correspondence, calendar invitations, scheduling emails, meeting minutes, agendas, attendance sheets, call logs, notes, presentations, studies, advocacy, letters, or other communications.

**Response**. The Representative objects to this request because it is overbroad. The request calls for "all documents relating redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request, and will necessarily apply to make documents that are irrelevant to the United States' claims in this case.

The Representative also objects to this request because it calls for documents that are subject to the legislative privilege. Among others, documents concerning "presentations," "redistricting criteria," and "meeting minutes" go to the Representative's mental impressions and motivations concerning pending legislation, which is clearly covered by the privilege. Of course, communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991).

Representative Guillen is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 7**. All documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes, race, ethnicity, language minority status, or United States citizenship that were exchanged between, among, with, or within the Office of the Governor, the Office of the Representative, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate for the Texas House, any candidate to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any national political party, any state political party organization, any

local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any consultant, any expert, any law firm or attorney, any vendor, any group or organization, or any member of the public.

**Response**. The Representative objects to this request because it is overbroad. The request calls for "all documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes," without any qualifications (other than the listed recipients). That is an extremely broad request, and will likely apply to make documents that are irrelevant to the United States' claims in this case.

Representative Guillen also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of the Representative, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

The Representative also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to demographic enumerations or estimates exchanged between the Representative and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

The Representative objects on the basis that much the information sought by this request may be made publicly available by the U.S. Census Bureau and the Texas Demographic Center.

Representative Guillen is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 8**. All documents relating to payment for services; agreements of representation, consultation, employment, services, confidentiality, or common interest; or any other type of contract relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives that include any of the following individuals or entities: Adam Foltz, Akin Gump Strauss Hauer & Feld LLP, Michael Best Strategies, any consultant, any political operative, any expert, the Office of the Texas Attorney General, any other law firm, any other attorney, any other vendor, or any other person or entity.

**Response**. The Representative objects to this request because it is overbroad and harassing. Although it appears to be bounded by specific persons and entities, the end of the request provides that the request applies to "any other attorney," "any other vendor," or "any other person or entity." The net effect is that the initial limitations are swallowed by the sheer breadth of a request that asks for "all documents" that "[relate] to redistricting" and that include "any other person or entity." Accordingly, this request is overly broad and conducting a search of this scope and breadth without any reasonable limitation is disproportionate to the needs of this case. Further, Representative Guillen is not a party to this litigation, and should not be required to produce, for example, "all documents" that "[relate] to redistricting" that include "any political operative." Such a facially overbroad requests create an undue burden. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

In addition, Representative Guillen objects to this request because it calls for documents that are subject to the legislative privilege and the attorney-client privilege. Documents relating to services provided by third parties for a legislative purpose are subject to the legislative privilege. *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)). And documents relating to the Representative and any legal representation, by the Office of the Texas Attorney General or otherwise, is subject to the attorney-client privilege.

The Representative also objects on the basis that this request does not list an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any contracts or other agreements entered into after the filing of this complaint would necessarily be irrelevant.

Representative Guillen is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.

**Document Request 9**. All non-privileged documents relating to the instant lawsuit or preceding investigation of Texas by the U.S. Department of Justice.

**Response**. The Representative objects to this request because it is overbroad. It is unclear from the face of this request why "all documents relating" to this lawsuit or the United States' preceding investigation would be relevant to the United States' claims. And insofar as these documents relate to the United States' investigation, these are documents that are more likely to be within the care, custody, or control of the United States. If such materials are more commonly held by others, including state and local law enforcement agencies, production should be requested from them rather than from an individual legislator. Given the availability of these documents from other sources, the burden of requiring the Representative to collect them far exceeds any benefit that might result. *See Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (stating that courts should "consider what information is available to the requesting party from other sources" when analyzing "the benefit side of the ledger").

The Representative also objects on the basis that this request does not list an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any documents originating after the filing of this complaint would necessarily be irrelevant.

Representative Guillen is conducting a diligent search and will produce responsive, non-privileged documents and communications on a rolling basis, within a reasonable time of March 7, 2022, response deadline to the extent they are not withheld based upon any of the foregoing privileges or objections. Should responsive documents subject to privilege, objection, or both, be identified pursuant to this process, this response will be supplemented to reflect that such documents are being withheld.