IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> GREG ABBOTT, *et al.*, <br><br> *Defendants.* | § § § § § § § § § § § § | Case No. 3:21-cv-00259 <br> [Lead Case] |
| UNITED STATES OF AMERICA, <br><br> *Plaintiff,* <br><br> v. <br><br> STATE OF TEXAS, *et al.*, <br><br> *Defendants.* | § § § § § § § § § § § § § | Case No. 3:21-cv-00299 <br> [Consolidated Case] |

**OPPOSITION TO MOTION TO COMPEL**

It is undisputed that Governor Greg Abbott and Attorney General Ken Paxton are not named parties to the United States' lawsuit. But the United States insists they are proper recipients of party discovery because it has also named *the State of Texas*. There is no logical reason why that is so, and the United States does not identify one in its motion to compel. Rather, according to Section 10305(d) of the Voting Rights Act, *the State of Texas* is limited to those state entities from which the United States could receive relief in connection with its vote-dilution claims. The United States fails to explain how the Governor and Attorney General fall within that definition. Moreover, the United States' motion is both premature and unnecessary.

Defendants remain willing to negotiate regarding document production on behalf of the Governor, given his status as a defendant in most of the private plaintiffs' lawsuits. The United States

1

inaccurately and inappropriately represents otherwise in its motion. What is more, there is no reason why the United States could not send Rule 45 subpoenas to the Governor and Attorney General, if it believes those offices may possess relevant, nonprivileged information. The United States identifies no reason why it would be prejudiced by following the Federal Rules of Civil Procedure for non-party discovery. In short, the motion to compel is improper, lacks merit, and should be denied.

## ARGUMENT

### I.     The Governor and Attorney General Are Not Parties to the United States' Lawsuit

As a preliminary matter, all agree that the Governor and Attorney General are not parties to the United States' lawsuit. And although the Governor is a named defendant in several of the other cases consolidated before the Court, the Attorney General is not a party to any of them. It is hard to imagine why he would be. A state official is a proper defendant only if he "has the authority to enforce the challenged law," *City of Austin v. Paxton*, 943 F.3d 993, 998 (5th Cir. 2019), and an order directed at the official would "afford the Plaintiffs the relief that they seek." *Tex. Alliance for Retired Ams. v. Scott*, 38 F.4th 669 (5th Cir. 2022) (quoting *Mi Familia Vota v. Abbott*, 977 F.3d 461, 468 (5th Cir. 2020)). The Attorney General neither enforces the new electoral districts nor could the United States obtain any relief for their Voting Rights Act claims from an order directed at him. And although the Attorney General is defending the new districts on Defendants' behalf, it is well-established that the broad "duty to enforce and uphold the laws of Texas" does not render the Attorney General a proper defendant. *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 181 (5th Cir. 2020).

Likewise, the United States has failed to explain how it could obtain relief for its claims from an order directed at the Governor. Indeed, when asked why the United States believed the Governor was a proper party, counsel responded that the Governor signed the bills establishing the new electoral districts. But it has long been clear that "a governor cannot be sued for signing a bill into law." *Women's Emergency Network v. Bush*, 323 F.3d 937, 950 (11th Cir. 2003) (citing *Supreme Ct. of Va. v. Consumers*

*Union of U.S., Inc.*, 446 U.S. 719, 731–34 (1980)).

To reiterate, the Governor and Attorney General are not parties to the United States' lawsuit, and therefore are not proper recipients of party discovery. The United States' amalgam of arguments to the contrary are unavailing. First, the United States points to Defendants' intention to produce a number of publicly-available materials related to the redistricting bills legislative history, *see* Motion at 2, arguing that this intention implies that Defendants are obligated to produce materials belonging to the Governor or the Attorney General. But those two things are entirely unrelated. For the efficiency of the litigation and for all parties' convenience, Defendants intend to compile and produce a central body of public documents, including the notices, minutes, witness lists, and handouts available to the public in connection with committee hearings held during the third special session.[1] But this production has nothing to do with whether Defendants must respond to party discovery directed at the Governor and Attorney General, and this Court should not condone the attempted weaponization of professional courtesy.

Likewise, the State Defendants' actions regarding the Department of Public Safety in the SB1 cases, *see La Unión del Pueblo Entero v. Abbott*, No. 5:21-cv-844 (W.D. Tex.), does not support the United States' argument here. Motion at 2. In *LUPE*, in response to highly-sensitive document requests, State Defendants agreed to produce information on behalf of DPS—reserving the right to object on the basis that DPS is not a named defendant. What the motion to compel fails to mention is that the United States has since issued a Rule 45 subpoena to DPS, seeking to take its deposition. *See* Ex. A. Nothing about the State Defendants' actions in a separate series of cases indicates a waiver of Defendants' right in these cases to insist on proper compliance with federal discovery rules. This position is neither new nor unfamiliar to the United States. In fact, the United States has similarly

---

[1]   *See generally* Texas Redistricting Committee, *Past Committee Meetings*, (accessed April 8, 2022), available at https://house.texas.gov/schedules/committee-schedules/advanced-search/search-results/?startDate=01/01/2019&endDate=20220407&chamber=h&committeeCode=C080&legislature=87

asked in the *LUPE* litigation that any discovery requests to the United States Department of Homeland Security or the United States Secretary of State be sent through the Rule 45 subpoena process.

Nor are the United States' references to past litigation at all significant. Motion at 2–3. Most importantly, neither *Texas v. Holder*, No. 1:12-cv-128 (D.D.C.) nor *Veasey v. Perry*, No. 2:13-cv-193 (S.D. Tex.) involved redistricting, and therefore neither informs the scope of party discovery in these circumstances. Moreover, nowhere in the United States' Exhibits 5, 6, and 7 is there mention of the State of Texas parties producing documents on behalf of the Attorney General. *See* ECF 213-6, 213-7, 213-8. The United States is wrong to represent that those exhibits substantiate the assertion that *the State* has "demonstrated possession, custody, or control of documents held within . . . OAG." Motion at 2. In addition, the Governor and Secretary of State were named parties in the *Veasey* case, so the production of OOG and SOS documents *there* says nothing about whether the State must produce documents on behalf of OOG and OAG *here*.

Finally, the United States argues that OAG is a proper recipient of party discovery because the Attorney General is the State's legal representative. *See* Motion at 5. Of course, a party's documents possessed by the party's attorney are deemed within the party's care, custody, or control for purposes of discovery. But the only documents that apply are those that *belong to the client*. Clearly, an opposing party cannot ask a party's lawyer to produce documents belonging to a different client or belonging to the lawyer personally. *Cf. Hickman v. Taylor*, 329 U.S. 495, 510 (1947) ("Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney."). The Attorney General's confidential files and mental impressions, attorney-client communications, and other work product simply are not an appropriate target for discovery.

In this instance, the parties to the United States' lawsuit are the Secretary of State and the State of Texas. As explained below, the Governor and the Attorney General are not included within *the State*

*of Texas* for purposes of these redistricting cases. For this reason, the documents the Attorney General possesses and must search in response to the United States' requests are only those he possesses on behalf the named parties. For these cases, the scope of *the State* is limited to the Secretary of State.[2] The Attorney General has no obligation to search documents he possesses separate and apart from his representation of the Secretary.

II. **The Governor and Attorney General Are Not Included Within *The State of Texas* for Purposes of these Redistricting Cases**

   A. **The Voting Rights Act Limits *The State* to State Entities from which the United States Could Obtain Relief**

As explained above, neither the Governor nor the Attorney General are named defendants in the United States' lawsuit. Rule 34 applies only to *parties*, so the United States cannot direct party discovery to OOG or OAG unless they are included within the scope of "The State of Texas" for purposes of these redistricting lawsuits. The United States does not seriously attempt to establish this premise, dedicating only one cursory paragraph to this portion of its brief. *See* Motion at 6 (conceding that the "legal question of what constitutes a State for purposes of this litigation is complex" and, *id.* at 7, concluding that OOG and OAG must be included because they "possess relevant information").

Moreover, the United States disregards the most important interpretive consideration: the text of statute authorizing it to bring its lawsuit. In its complaint, the United States alleges that it brings its suit under 52 U.S.C. § 10308(d). *See United States v. Texas*, No. 3:21-cv-299, ECF 1 ¶ 7 (W.D. Tex. Dec. 6, 2021). That provision allows the federal Attorney General to file "an action for preventative relief" or "injunctive or other relief" against "the State" or "State or local election officials" where the State or other political subdivision has allegedly violated one of several sections of the Voting Rights Act. Obviously, the purpose of suing the State or State official is to obtain relief in connection with the

---

[2] However, Defendants have not foreclosed the possibility that acceptance of party discovery on behalf of the Governor may be acceptable in this instance, even though the Governor is *the State* and is therefore not a party to the United States' lawsuit. *See infra* Argument Part III.

alleged violation. Logically, then, the scope of *the State* for a lawsuit brought under § 10308(d) is limited to those components of the State than can provide relief from the alleged violation.

Here, the United States alleges that several Texas House and congressional districts dilute the voting strength of racial and ethnic minorities in violation of Section 2. As always, the requested relief flows from the alleged injury. *See* Compl. at 44 (asking the Court to enjoin "Defendants, their agents and successors in office, and all persons acting in concert with them from *administering, implementing, or conducting any future elections* for the Texas Congressional Delegation under the 2021 Congressional Plan and for the Texas House and the 2021 House Plan") (emphasis added). As such, for purposes of these redistricting cases, *the State of Texas* includes only those components of the State that administer, implement, or conduct elections, and could therefore be ordered not to do so until new maps were imposed. *See Okpalobi v. Foster*, 244 F.3d 405, 427 (5th Cir. 2001) (en banc) (It is an "elemental fact" that "a state official cannot be enjoined to act in any way that is beyond his authority to act in the first place."); *Alabama v. United States*, 304 F.3d 583, 590 (5th Cir. 1962) (Fundamentally, "an injunction may compel the performance of *a duty*" a state official already has.) (emphasis added) (quoting *Loisel v. Mortimer*, 277 F. 822, 886 (5th Cir. 1922)).

Defendants do not dispute that—were the United States to prevail on its claims—some form of relief could be obtained from the Secretary of State. But, as discussed above, the United States has failed to point to any relief it could obtain from the Governor or Attorney General. As such, there is only one State entity the parties have identified as being able to give "preventative relief" or "injunctive or other relief," 52 U.S.C. § 10308(d), should the United States prevail on its claims: the Secretary of State. That is the beginning and end of *the State* in the context of the United States' redistricting claims.

      **B.**      **The United States' Definitions of "The State" are Logically Inconsistent**

The United States offers two theories on the scope of *the State of Texas* for purposes of these redistricting cases, but both are illogical. First, the United States argues that any State official or entity

6

that was "involved in relevant decision-making" or "possesses relevant information," Motion at 6–7, is included in *the State*. But that confuses the difference between information that may be discoverable and information that is subject to *party* discovery. It is often the case that third parties may have been involved in the series of events that form the basis of a lawsuit, and that accordingly they may possess discoverable information. But that does not make those persons and entities *parties*. Indeed, such a circumstance is exactly why we have Rule 45.

In fact, the United States implicitly contradicts its position by sending subpoenas to the Texas Legislative Council, Lieutenant Governor Dan Patrick, Speaker Dade Phelan, and twenty-four other legislators and staff. Of course, the latter are agencies and officials of the State of Texas. But no party takes the position that they are *the State* in these circumstances. In effect, the United States concedes that there are Texas agencies and officials who were involved in the redistricting process and who may possess discoverable information, but who are not proper recipients of party discovery. It therefore cannot logically be true that the question of whether a state agency or official is included in *the State of Texas* "turns on whether [the relevant entity] possess[es] relevant information." Motion at 7.

The United States then argues that *the State* includes all "executive agencies." Motion at 6. For this proposition, it cites several cases in which federal agencies were directed to receive party discovery in a case in which *the United States* was a named plaintiff or defendant. For one thing, the United States fails to articulate a rule for when federal agencies are included within *the United States*. Instead, it simply points to three out-of-circuit district-court decisions, none of which involve redistricting, and assumes that they support its assertion here regarding OOG and OAG. They do not.

But even supposing it might be helpful to consider cases outside of the redistricting context, it is clearly inappropriate to analogize to the federal government because, unlike the latter, the State of Texas utilizes a plural executive. The United States' comparison to federal agencies assumes that federal agencies are included within *the United States* because they are controlled by the same

7

executive—the President. Indeed, one of the cases it relies on expressly states as much. *See North Dakota v. United States*, No. 1:19-cv-150, 2021 WL 6278456, at *4 (D.N.D. Mar. 24, 2021) (Proper to order party discovery of federal agencies because "the President ha[s] statutory and constitutional authority over the executive branch agencies and control over the information requested."). The United States wrongly assumes that this logic extends to Texas executive agencies.[3]

But Texas agencies are not controlled by the same executive. Indeed, it is beyond debate that the Governor, Attorney General, and other executives head offices have independent constitutional existence and authority. *See* Tex. Const. art. IV, § 1 ("[T]he Executive Department of the State shall consist of a Governor, who shall be the Chief Executive Officer of the State, a Lieutenant Governor, Secretary of State, Comptroller of Public Accounts, Commissioner of the General Land Office, and Attorney General."); *see also City of Dallas v. Stewart*, 361 S.W.3d 562, 573 (Tex. 2012) ("The structure of Texas government permits the ties between a particular agency and each of the three branches of the state government to be weaker—sometimes far weaker—than they would be in the federal government.") (quotation omitted). The United States' cursory argument regarding federal executive agencies does not extend to Texas executive agencies for the simple reason that the United States and Texas have different executive structure.

Finally, the United States argues that *the State of Texas* must include more than the Secretary of State in this instance, otherwise there would be no need to have independently named the Secretary. Motion at 7. It argues that Defendants' position somehow undermines the VRA's authorization of the federal Attorney General to sue States. That is a *non sequitur*. Both parties agree that—should the United States prevail on the merits—relief could be obtained from the Secretary of State. And the whole purpose of § 10508(d) is to authorize the Attorney General to obtain relief for alleged VRA

---

[3] Indeed, counsel for the United States has insisted that—just as the Department of Justice accepts party discovery on behalf of the United States—so too must OAG accept party discovery on behalf of the State of Texas.

violations. As such, there is no concern that the scope of *the State* in this circumstance will prevent the United States from obtaining appropriate relief, should it be found warranted. In addition, if the State of Texas and the Secretary of State are redundant here, that is the United States' fault, as it is the one who named them as parties to their lawsuit.

### III.   Defendants Did Not Reject Requests for Documents from the Governor

The Governor is not included within *the State* for all the reasons explained above. Nevertheless, Defendants have not foreclosed the possibility of responding to the United States' requests on behalf of the Governor. The United States' assertion that Defendants "specifically rejected a request to search documents in possession of . . . the Office of the Governor," Motion at 2, is belied by the very exhibit they cite. Defendants plainly stated their willingness to discuss the subject.[4]

And for good reason. Although the Governor is not a party to the United States' lawsuit, he is named in most of the complaints filed by the private plaintiff groups. And three of those groups—the LULAC, NAACP, and Voto Latino Plaintiffs—have sent Defendants requests for production that relate to the Governor. Defendants have since produced responsive, nonprivileged documents from OOG. Given the likelihood that these documents will be shared with the United States, Defendants remain open to providing discovery produced to other parties to the United States, even though the Governor is not included within *the State of Texas* in this case.

To reiterate, Defendants did not reject the United States' requests for documents from the Governor. To the contrary, it was counsel for the United States who expressly declined to discuss the subject during the meet and confer. These tactics accentuate the fact that the United States' motion

---

[4] *See* ECF 213-2 (email from Defendants to United States) ("Regarding the United States' RFPs and the Office of the Governor, this is the first time you have raised this issue. As you are aware, DOJ did not sue the Office of the Governor and it is therefore not a party to the United States' lawsuit. In addition, in our responses to your requests for production, we objected to, among other things, the overbreadth of the requests and the United States' overly-broad definition of "Defendants." However, I would note that we have recently received RFPs directed at the Governor, issued by private plaintiffs in this litigation, whose lawsuits named the Governor as a party. We have not yet served our objections and responses to those requests because they are not yet due. But we would be happy to meet and confer concerning your contention that the Governor falls within "The State of Texas" for the exclusive purpose of these redistricting cases.").

to compel is premature, ill-thought-out, and ultimately deficient.

## IV. Rule 45 Remains Available to the United States

Finally, although the United States may not send party discovery to the Governor or Attorney General, there is a proper method by which it can request discoverable information from these offices: Rule 45. Nothing prevents the United States from sending subpoenas *duces tecum* if it believes there is relevant, nonprivileged information within OOG or OAG's care, custody, or control. But counsel for the United States did not even discuss this possibility with counsel for Defendants. Again, the United States demonstrates its disregard for well-established and uncontroversial discovery rules.

## CONCLUSION

Defendants respectfully request that the Court deny the United States' motion to compel.

Date: April 8, 2022                           Respectfully submitted.

KEN PAXTON                                    */s/ Patrick K. Sweeten*
Attorney General of Texas                     PATRICK K. SWEETEN
                                              Deputy Attorney General for Special Litigation
BRENT WEBSTER                                 Tex. State Bar No. 00798537
First Assistant Attorney General
                                              WILLIAM T. THOMPSON
                                              Deputy Chief, Special Litigation Unit
                                              Tex. State Bar No. 24088531

                                              JACK B. DISORBO
                                              Assistant Attorney General, Special Litigation Unit
                                              Tex. State Bar No. 24120804

                                              OFFICE OF THE ATTORNEY GENERAL
                                              P.O. Box 12548 (MC-009)
                                              Austin, Texas 78711-2548
                                              Tel.: (512) 463-2100
                                              Fax: (512) 457-4410
                                              patrick.sweeten@oag.texas.gov
                                              will.thompson@oag.texas.gov
                                              jack.disorbo@oag.texas.gov

                                              **COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on April 8, 2022, and that all counsel of record were served by CM/ECF.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
