IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS (LULAC), et al., <br><br> Plaintiffs, <br><br> v. <br><br> GREG ABBOTT, et al., <br><br> Defendants. | Civil Action No. 3:21-cv-259 (DCG-JES-JVB) <br> (consolidated cases) |

**UNITED STATES' OPPOSITION TO DEFENDANTS'
AND 26 LEGISLATIVE OFFICIALS' MOTION TO QUASH**

The United States' subpoena to the Texas Legislative Council (TLC) is a routine step toward obtaining relevant documents. Nevertheless, Texas claims the subpoena to TLC contravenes notions of who can be subpoenaed and what documents can be subpoenaed. But in prior federal litigation under the Voting Rights Act, the United States has subpoenaed documents from TLC without incident. The State and 26 legislative officials lack standing to fully quash a subpoena to a state legislative agency that they insist is a stranger to this litigation or to invoke legislative privilege on behalf of absent legislators. Furthermore, Texas cannot thwart a federal subpoena by enacting state legislation purporting to redefine "possession, custody, or control" and the scope of legislative privilege. Rather, privilege issues should be addressed with respect to particular documents. The United States respectfully requests that the Court deny Texas's motion to quash the TLC subpoena.

**I.      BACKGROUND**

In February 2022, the United States began serving Rule 45 subpoenas on legislators and other third-party custodians seeking documents relevant to the United States' allegations that the 2021 Texas House plan has a discriminatory result and the 2021 Texas Congressional plan has a discriminatory purpose and discriminatory result, in violation of Section 2 of Voting Rights Act, 52 U.S.C. § 10301. *See, e.g.*, TLC Subpoena (Feb. 28, 2022) (Ex. 1). In this case, a number of legislators and other legislative officials have already produced documents and privilege logs.[1]

---

[1] Texas contends that "Defendants have produced 18,000 pages of documents in response to the twenty-six individual subpoenas." Mot. to Quash at 1 n.1, ECF No. 219. But Defendants have insisted that each subpoena recipient is a third party; Defendants themselves have to date produced only 84 documents. *See also Perez v. Perry*, No. 5:11-cv-360, 2014 WL 1796661 (W.D. Tex. May 6, 2014) (three-judge court) (noting that "Texas contends that the individual legislators are not 'parties' to this lawsuit" because they are not part of the State of Texas). The State continues to shift its position on the composition of "the State of Texas" as Defendant to suit its defense, including to limit its practical ability to obtain documents in response to

The TLC—a nonpartisan state legislative agency that maintains the State's redistricting software, email servers, and other networked resources—served objections on the United States on March 28 and appeared willing and able to respond by the March 30 subpoena return date. On March 29, counsel for State Defendants and 26 legislative officials (Movants) requested an extension of the March 30 deadline, to facilitate the instant motion to quash. *See* Email from Jack DiSorbo to Dan Freeman (Mar. 29, 2022) (Ex. 2). The United States consented to an extension until April 6. Movants filed the instant motion on April 7. Mot. to Quash, ECF No. 219.

## II.   LEGAL STANDARD

Rule 45 permits a party to issue a subpoena that demands a third party "produce designated documents, electronically stored information, or tangible things in that person's possession, custody or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). Courts may then quash or modify a subpoena for one of four reasons, including that the subpoena "requires disclosure of privileged or other protected matter, if no exception or wavier applies." Fed. R. Civ. P. 45(d)(3)(A)(iii). In moving to quash a subpoena, "[t]he moving party has the burden of proof" to establish one of the four enumerated grounds. *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). Although typically "only the third parties have standing" to object to a third-party subpoena, *Guzman v. Latin Am. Ent., LLC*, No. 6:13-cv-41, 2014 WL 12599345, at *1 (S.D. Tex. July 2, 2014), a narrow exception extends to a party's "personal right or privilege with respect to the materials subpoenaed." *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979); *see also Jez v. Dow Chem. Co.*, 402 F. Supp. 2d 783, 785 (S.D. Tex. 2005).

---

discovery. *See* Resp. to Mot. to Compel at 3, ECF No. 221 (describing the State's intention to compile a central corpus of legislative materials).

### III. ARGUMENT

**A. Movants Lack Standing to Quash the Subpoena in its Entirety.**

Texas cannot move to quash a third-party subpoena unless it asserts a personal right or privilege in the documents the subpoena seeks. *See Brown*, 595 F.2d at 967. However, the State has provided no support to claim a personal legislative privilege. Nor could it. "[N]either the Governor, nor the Secretary of State or the State of Texas has standing to assert the legislative privilege on behalf of any legislator or staff member that may be deposed." *Gilby v. Hughes*, 471 F. Supp. 3d 763, 767 (W.D. Tex. 2020) (internal citation and quotation marks omitted). Legislative privilege is personal to a legislator; it cannot be invoked by the State. *See, e.g.*, *Perez v. Perry*, No. 5:11-cv-360, 2014 WL 106927, at *1 (W.D. Tex. Jan. 8, 2014) (three judge court).[2]

Although the 26 Legislative Officials do have a personal interest in some documents at issue, their interest also does not extend to the full set of responsive materials held by the TLC, such as draft maps crafted by other legislators. Thus, they lack standing to quash the subpoena in its entirety. Moreover, to the extent the 26 Legislative Officials move to quash based on TLC's alleged lack of possession, custody, and control over the requested documents, that is not an appropriate basis for a motion to quash. *See* Fed. R. Civ. P. 45(d)(3)(A); *see also, e.g.*, *Williams v. Weems Cmty. Mental Health Ctr.*, No. 4:04-cv-179, 2006 WL 905955, at *1 (deeming the grounds to quash a subpoena articulated in Rule 45 to be exclusive).

---

[2] The State's position is particularly indefensible in light of its contention that in redistricting litigation "the scope of *the State* is limited to the Secretary of State." Resp. to Mot. to Compel at 5, ECF No. 221. Texas cannot have it both ways. If Texas were entitled to invoke legislative privilege, then it would be unnecessary for the United States to have subpoenaed these materials: the legislative materials would instead be subject to party discovery.

### B.  The TLC Has Possession, Custody, or Control over Relevant Materials.

The TLC has de facto possession, custody, or control over documents and ESI that are highly relevant to the United States' claims in this case.  Not only does the TLC and its staff maintain technical files concerning the redistricting process, but the TLC also controls the servers on which Texas Legislators send email and store files.  *See* Tex. Legislative Council, *at* tlc.texas.gov.  In past litigation under the Voting Rights Act, the TLC has produced documents and ESI, including mapping files.  *See, e.g.*, *Perez v. Perry*, No. 5:11-cv-360, 2014 WL 1796661 (W.D. Tex. May 6, 2014) (requiring production, including TLC materials, in redistricting litigation); Order, *Perez v. Perry*, No. 5:11-cv-360 (W.D. Tex. May 20, 2014) (ECF No. 999) (denying reconsideration).  Moreover, in notifying certain redistricting data users of the pending subpoena, the TLC admitted that it holds responsive documents on its servers and databases.  *See* Email from Alyssa Bixby-Lawson to Jasmin Lott (Ex. 3).  There is little question that the TLC has a "practical ability to obtain" the requested files, which establishes "possession, custody, or control."  *E.g.*, *Mir v. L-3 Commc'ns Integrated Sys.*, 319 F.R.D. 220, 230 (N.D. Tex. 2016); *see also, e.g.*, *Tiffany (NJ) LLC v. Qi*, 276 F.R.D. 143, 147 (S.D.N.Y. 2011) ("Regardless of the witness' legal relationship to a document, for the purposes of a Rule 45 subpoena, a document is within a witness's "possession, custody, or control" if the witness has the practical ability to obtain the document.").[3]

---

[3] There is "no requirement that the subpoena be served on the person who owns the documents." *Mattie T. v. Johnston*, 74 F.R.D. 489, 502 (N.D. Miss. 1976) (internal citations omitted).  In fact, "[a] person seeking access to records through the issuance of a subpoena often has the subpoena served on the individual who has possession of the documents," rather than ownership of them. *Id.*; *see also, e.g.*, *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019 (2020) (addressing subpoenas to an accounting firm and two banks regarding client documents).

4

State law cannot immunize a potential subpoena recipient from producing documents in litigation. *Cf.* Mot. to Quash at 6-9. After multiple courts found that Texas had passed voting laws in the early 2010s with racially discriminatory intent—in each case based in part on documents and ESI produced by the TLC—the State enacted House Bill 4181 (2019), which declares that any legislative official who uses TLC systems "possesses, maintains, or controls the records for purposes of litigation." Tex. Gov. Code §§ 306.009(a)(1), 323.021(1).[4] Even if this court were bound by state law with respect to the extent of a subpoena recipient's practical ability to produce documents—and it is not—a document may be under the possession, custody, or control of multiple custodians. *See Perez*, 2014 WL 1796661, at *1 (addressing "documents simultaneously possessed or controlled by both the State and the individual legislators). HB 4181 does not purport to vest *exclusive* possession, maintenance, or control in legislative officials. So long as the TLC remains able to produce responsive documents not subject to a valid assertion of privilege, Rule 45 requires it to do so.[5]

### C. Assertions of Privilege Do Not Warrant Quashing the Subpoena.

Although Texas legislators may claim that some materials in the possession, custody, or control of the TLC are privileged, this is not grounds to quash the TLC subpoena. Many documents held by the TLC are not privileged, and counsel for movants had notice of the TLC

---

[4] *See also, e.g.*, *Veasey v. Perry*, 71 F. Supp. 3d 627 (S.D. Tex. 2014), *aff'd in part and vacated in part*, 830 F.3d 216 (5th Cir. 2016) (en banc); *Texas v. United States*, 887 F. Supp. 2d 133 (D.D.C. 2012) (three-judge court), *vacated and remanded*, 570 U.S. 928 (2013).

[5] Movants claim that this Court must defer to the "legal reality" created by HB 4181, Mot. to Quash 7-8, but federal courts have applied state law in this context only when assessing mechanisms for parties to obtain documents not already in their possession or custody. *See Correia v. Town of Framingham*, 2013 WL 952332, at *3 (D. Mass. Mar. 8, 2013); *Robinson v. Moskus*, 491 F. Supp. 3d 359, 363 (C.D. Ill. 2020). Here, the TLC already has custody of the requested materials. This is precisely why Movants seek to quash the United States' subpoena. If the TLC were unable to produce the highly relevant documents and ESI that the United States seeks, no motion to quash would be necessary.

subpoena with adequate time to assert privileges. Moreover, any assertion of legislative privilege concerning Congressional redistricting materials must yield to the compelling interest in elimination of intentional racial discrimination in voting.

### 1. TLC Documents Are Not Uniformly Privileged.

Movants cannot support their claim that state legislation renders per se unreachable all documents and ESI subject to the TLC subpoena. In a federal court exercising federal question jurisdiction, state-law privileges are not dispositive. *See ACLU of Miss., Inc. v. Finch*, 638 F.2d 1336, 1342-43 (5th Cir. 1981); *see also Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 926 (7th Cir. 2004) ("[T]he evidentiary privileges that are applicable to federal-question suits are given not by state law but by federal law."); *Garza v. Scott & White Mem'l Hosp.* 234 F.R.D. 617, 624 (W.D. Tex. 2005). Rather, the "common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege" absent an applicable constitutional provision, statute, or rule. Fed. R. Evid. 501. Although HB 4181 (2019) purports to create a broad privilege for legislative materials and communications between legislators and the TLC, Tex. Gov. Code §§ 323.017-.018, "[t]he Supremacy Clause of the United States Constitution (as well as Federal Rule of Evidence 501) prevent a State from directing a federal court with regard to the evidence it may order produced in the adjudication of a federal claim." *Kalinoski v. Evans*, 377 F. Supp. 2d 136, 140-41 (D.D.C. 2005).

Federal common law recognizes a state legislative privilege, but its scope is limited.[6] First, "a legislator must properly assert the privilege." *TitleMax of Tex., Inc. v. City of Dallas*,

---

[6] "[J]urisprudence on the Speech and Debate Clause, *i.e.*, cases involving members of Congress, is distinct from federal common law relating to the limited legislative privilege afforded state legislators." *Jackson Mun. Airport Auth. v. Bryant*, No. 3:16-CV-246, 2017 WL 6520967, at *7 (S.D. Miss. Dec. 19, 2017) (collecting cases).

No. 3:21-cv-1040, 2022 WL 326566, at *6 (N.D. Tex. Feb. 3, 2022).  Movants may not assert a personal privilege on behalf of all 181 members of the Texas House and the Texas Senate.  Even where a privilege is claimed, communications with individuals outside of the legislature cannot be withheld, *see, e.g.*, *Perez*, 2014 WL 106927, at *2, and privilege is waived when a legislator communicates with a third party, including members of the executive branch or a private individual, *see, e.g.*, *Gilby v. Hughs*, 471 F. Supp. 3d 763, 767 (W.D. Tex. 2020); *see also TitleMax*, 2022 WL 326566, at *6; *Jackson Mun. Airport Auth. v. Bryant*, No. 3:16-CV-246, 2017 WL 6520967, at *7 (S.D. Miss. Dec. 19, 2017) (collecting cases).  Ultimately, any state legislative privilege "must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth."  *Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 624 (5th Cir. 2017) (quoting *Perez*, 2014 WL 106927 at *1).  Document productions by legislators who have received individual subpoenas establish that legislative privilege does not uniformly preclude production of legislative documents.  *See* Mot. to Quash at 1 n.1.

Even where legislators affirmatively invoke legislative privilege over appropriate documents, "the legislative privilege for state lawmakers is, at best, one which is qualified." *Jefferson*, 849 F.3d at 624 (internal quotation marks and citation omitted); *cf. Finch*, 638 F.2d at 1343 (deeming any state law privilege similarly qualified).  Thus, a privilege log must accompany any assertions of legislative privilege, so that a determination may be made whether the privilege must yield.  *See, e.g.*, *Jackson Mun. Airport Auth.*, 2017 WL 6520967, at *9; *see also Texas v. United States*, No. 12-128, 2012 WL 13071161, at *1 (D.D.C. Apr. 20, 2012) (three-judge court) (declining to address potential legislative privilege claims "before we even

7

know whether they will arise" with "no indication that all of the legislators" subpoenaed will invoke legislative privilege, and therefore finding "no grounds for barring [the United States] entirely from seeking discovery from legislators and their staffs").[7]

Movants' prospective assertion of attorney-client privilege is similarly premature. Even Movants do not claim that this privilege applies to all documents and ESI subject to the TLC subpoena. *See* Mot. to Quash 14-15. Because attorney-client privilege "may protect the content of an attorney-client communication from disclosure," but "may not protect the facts communicated," privilege logs and partial redactions are necessary to ensure only appropriate materials are withheld. *Texas v. United States*, 279 F.R.D. 24, 28 (D.D.C. 2012), *vacated upon consent*, 279 F.R.D. 176 (D.D.C. 2012). HB 4181 purports to create an attorney-client relationship between TLC attorneys and individual legislators. *See* Tex. Gov. Code § 306.008(b). However, not all TLC staff are attorneys, and not all assistance from the TLC is legal advice. Moreover, TLC attorneys cannot establish an attorney-client relationship with every legislator absent express waiver, in light of legislators' conflicting interests with respect to redistricting, and Movants have not provided evidence of wavier. *Cf.* Tex. Disciplinary Rules of Prof'l Conduct 1.06(b)(1). Here, as in *Texas v. United States*, Movants' prospective assertion of attorney-client privilege "offers no evidence to satisfy the elements of an attorney-client relationship between the Council and the Legislature." 279 F.R.D. at 28. *See generally Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 720 (5th Cir. 1985) (defining elements).

---

[7] Movants characterize a privilege log as "detailed and burdensome," Mot. to Quash at 9, but any such burden would fall on the TLC, not Movants. Once again, Texas puts the lie to its claim that the State as Defendant extends no further than the Office of the Secretary of State.

### 2. Movants Have Had Notice and an Opportunity to Assert Privileges.

Movants' motion to quash incorrectly argues that the TLC subpoena is an ambush and an attempt to circumvent the rights of legislators. However, counsel for Movants received a copy of the TLC subpoena prior to service, as envisioned by the Federal Rules. *See* Fed. R. Civ. P. 45(a)(4). Moreover, the TLC has a procedure in place to give certain document owners "the opportunity to assert any applicable privilege claims with the court." Email from Alyssa Bixby-Lawson, *supra*. Because a legislator must affirmatively assert privilege, legislators who do not "respond to . . . counsel's inquiry regarding the assertion of the privilege" waive the opportunity to withhold documents. *Veasey v. Perry*, 2014 WL 1340077, at *2 (S.D. Tex. Apr. 3, 2014). Movants cannot bear their burden of proof absent evidence that they did not receive notice and an opportunity to assert privilege. *See Wiwa*, 392 F.3d at 818.

### 3. The TLC Subpoena is Not Duplicative of Subpoenas on Legislators

The TLC has access to technical files, including shapefiles for redistricting plans stored in RedAppl accounts, and the ability to conduct server-side searches. On the other hand, while TLC possesses Legislators' official documents and emails, the same is not true of Legislators' personal documents and emails. *See Perez*, 2014 WL 1796661 (recognizing that individual subpoenas are needed to obtain personal files, whereas official legislative documents may be obtained by a subpoena to the TLC). Movants' claim that the TLC subpoena is wholly redundant, Mot. to Quash at 9-10, 14, is baseless, and, in any event, potential duplication between subpoenas is not grounds to bar production of other documents not yet disclosed.[8]

---

[8] To the extent that Movants relied upon the TLC to search for official documents responsive to individual subpoenas, the United States would welcome an opportunity to meet and confer to eliminate duplication of effort. The United States does not seek documents from TLC that legislators have already produced. Presumably, those legislators who invoked legislative privilege and withheld documents in response to their individual subpoenas did the same when

9

### 4. Any Assertion of Legislative Privilege Concerning Congressional Redistricting Should Yield.

Movants' request to quash the TLC subpoena on the basis of state legislative privilege is particularly inapt because federal interests in enforcing the constitutional prohibition on intentional racial discrimination in voting must overcome assertions of a qualified privilege.[9] "There can be no doubt that [the Supreme Court] has sanctioned intrusions by Congress, acting under the Civil War Amendments, into the judicial, executive, and legislative spheres of autonomy previously reserved to the States." *Fitzpatrick v. Bitzer*, 427 U.S. 445, 455 (1976). Where Congress has placed "government intent" at the heart of a cause of action, the United States "has a compelling interest in discovery of evidence of such intent." *Jones v. City of College Park*, 237 F.R.D. 517, 521 (N.D. Ga. 2006); *see also United States v. Gillock*, 445 U.S. 360, 373 (1980) (holding that "where important federal interests are at stake . . . , comity yields" and no privilege is afforded to state legislators seeking to withhold relevant testimony or documents). Because the United States has laid out plausible allegations that the 2021 Congressional plan is motivated, at least in part, by discriminatory intent, documents held by the TLC including draft map files, legislative communications, and bill analysis must be produced.

Courts typically weigh the following factors when determining whether the legislative privilege must yield:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by

---

notified of the TLC subpoena. Thus, the United States does not expect to receive documents that properly are duplicative or privileged in response to the TLC subpoena.

[9] *Merrill v. Milligan*, 142 S. Ct. 879 (2022), does not support quashing the TLC subpoena. *See* Mot. to Quash at 2 n.3. Regardless of any "uncertainty regarding the nature and contours of a vote dilution claim," *Milligan*, 142 S. Ct. at 881 (Kavanaugh, J., concurring), the TLC subpoena principally seeks documents relevant to the United States' intentional discrimination claims. In any case, *Milligan* does not provide a basis to pause discovery in all Voting Rights Act matters.

>government employees who will be forced to recognize that their secrets are violable.

*E.g.*, *Jackson Mun. Airport Auth.*, 2017 WL 6520967, at *6 (quoting *Rodriguez v. Pataki*, 89, 101 (S.D.N.Y. 2003)); *Perez*, 2014 WL 106927, at *2 (same); *Veasey*, 2014 WL 1340077, at *2 (same). Consideration of legislative documents in past Voting Rights Act litigation establishes that they are highly relevant and that disclosures have not rendered Texas officials timid in their duties. *See, e.g.*, *Veasey*, 2014 WL 134007, at *2 (noting that such documents bear "directly on whether state legislators, contrary to their public pronouncements, acted with discriminatory intent"). Similarly, legislative materials are a unique source of evidence in Voting Rights Act cases because officials "seldom, if ever, announce on the record that they are pursuing a particular course of action because of their desire to discriminate against a racial minority." *Smith v. Town of Clarkton, N.C.*, 682 F.2d 1055, 1064 (4th Cir. 1982). And under the third and fourth factors, the filing of litigation by the United States asserting discriminatory intent in voting places the government at the center of a matter of great seriousness. Just as "the Government has a fundamental, overriding interest in eradicating racial discrimination in education—discrimination that prevailed, with official approval, for the first 165 years of this Nation's history," *Bob Jones Univ. v. United States*, 461 U.S. 574, 604 (1983), so too with respect to voting: "The governmental interest at stake here is compelling." *Id.*

## IV. CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny Movants' motion to quash.

Dated: April 14, 2022

                                  PAMELA S. KARLAN
                                  Principal Deputy Assistant Attorney General
                                  Civil Rights Division

                                  */s/ Holly F.B. Berlin*
                                  T. CHRISTIAN HERREN, JR.
                                  TIMOTHY F. MELLETT
                                  DANIEL J. FREEMAN
                                  JANIE ALISON (JAYE) SITTON
                                  MICHELLE RUPP
                                  JACKI L. ANDERSON
                                  JASMIN LOTT
                                  HOLLY F.B. BERLIN
                                  Attorneys, Voting Section
                                  Civil Rights Division
                                  U.S. Department of Justice
                                  950 Pennsylvania Avenue NW
                                  Washington, DC 20530

## **CERTIFICATE OF SERVICE**

      I hereby certify that on April 14, 2022, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system, which will send notification of this filing to counsel of record.

                                              */s/ Holly F.B. Berlin*
                                              Holly F.B. Berlin
                                              Voting Section
                                              Civil Rights Division
                                              U.S. Department of Justice
                                              holly.berlin@usdoj.gov