IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS (LULAC), et al., <br><br> Plaintiffs, <br><br> v. <br><br> GREG ABBOTT, et al., <br><br> Defendants. | Civil Action No. 3:21-cv-259 (DCG-JES-JVB) <br> (consolidated cases) |

**UNITED STATES' REPLY IN SUPPORT OF MOTION TO COMPEL**

The United States seeks to engage in routine party discovery and has requested materials in the possession, custody, or control of a named defendant, the State of Texas. Yet Texas contends that for purposes of redistricting litigation "the scope of *the State* is limited to the Secretary of State" and that it lacks possession, custody, or control of documents held by any other officer, agency, or official. Opp. Br. 5, ECF 221. This narrow view of discovery is unsupported by law or fact. Moreover, the Voting Rights Act does not constrain the scope of discovery in this case, and Texas's willingness to accept new discovery requests to third parties is no substitute for party discovery. The United States' motion to compel should be granted.

### I.  THE STATE OF TEXAS HAS DEMONSTRATED POSSESSION, CUSTODY, OR CONTROL OF RELEVANT DOCUMENTS.

The United States brought this Voting Rights Act enforcement action against the State of Texas and the Texas Secretary of State. Yet, Defendants have to date produced only 84 documents, all from the files of the Texas Secretary of State, in response to a comprehensive set of requests for production served on January 12. And in response to the United States' Motion to Compel, Defendants assert that the United States is entitled to nothing more, despite Texas' demonstrated practical ability to produce documents held by a wide range of custodians in other Voting Rights Act enforcement actions. *See* Mot. to Compel at 5-6, ECF No. 213. The fact that prior cases cited in the United States' Motion to Compel did not "involve[] redistricting," Opp. Br. 4, has no bearing on whether Texas must produce redistricting-related documents here, and Texas offers no argument for that distinction. To the contrary: the State of Texas has produced documents held by the Office of the Attorney General and other custodians as both a plaintiff and defendant in redistricting litigation. *See, e.g.*, *Texas v. United States*, 279 F.R.D. 24 (D.D.C. 2012) (three-judge court) (addressing, *inter alia*, "racially polarized voting reports that were generated during the legislative session by the Office of the Attorney General"), *vacated in part*,

1

279 F.R.D. 176 (D.D.C. 2012) (three-judge court); *Perez v. Perry*, No. 5:11-cv-360, 2014 WL 1796661 (W.D. Tex. May 6, 2014) (three-judge court); Order, *Perez v. Perry*, No. 5:11-cv-360 (W.D. Tex. May 20, 2014) (ECF No. 999) (denying reconsideration).

Defendants' further attempts to undermine its demonstrated ability and legal obligation to produce documents fare no better. Defendants disclaim reliance on their proven ability to obtain documents from custodians other than the Secretary of State in this case as a "weaponization of professional courtesy," Opp. Br. 3, but another three-judge court already rejected this argument. "As a matter of logic, if Texas has the ability to produce documents as a courtesy, it cannot deny that it has the 'practical ability' to obtain such documents." *Perez*, 2014 WL 1796661, at *1 n.2. Defendants also contend that the files of the Office of the Attorney General are not subject to discovery because they belong to a client, Opp. Br. 4, but at least with respect to technical materials produced during the redistricting process, that client is ultimately the State of Texas. *See* Tex. Const. Art. IV, § 22; Tex. Gov. Code § 402.021.[1]  Finally, the United States did not concede in the *LUPE* litigation that a Texas agency involved in implementing a challenged statute is not subject to party discovery. *Contra* Opp. Br. 3. Rather, the United States served "a subpoena on the Department of Public Safety pursuant to Rule 45(c)(1)(B)(i), which authorizes subpoenas to secure party participation in depositions." Email from Daniel Freeman to Jeff White (Mar. 17, 2022) (Ex. 1).[2]

---

[1] The United States does not seek communications between counsel of record in this case and recognizes that some relevant documents not directly related to litigation may still include protected attorney work product. However, in the latter instance, OAG must detail the documents and ESI over which it asserts work product protections on a privilege log.

[2] On the other hand, when asked to facilitate discovery requests to four federal agencies in *LUPE*, the United States met with other federal officials and advised the State that entities within the U.S. Department of Justice were subject to party discovery, but the U.S. Department of State and U.S. Department of Homeland Security were not, because those entities had no relationship to the claims. *See, e.g.*, *United States v. AT&T Co.*, 461 F. Supp. 1314, 1333-34 (D.D.C. 1978).

Defendants' insistence that the Governor and Texas Attorney General are not defendants in this lawsuit is a non sequitur. Opp. Br. 2-4. The United States does not seek relief against these officials; nor does the United States seek to serve party discovery requests on them. Rather, the United States seeks documents in their possession, via discovery requests served on the State of Texas.[3] Because the State of Texas has consented to suit by the United States, *see United States v. Texas*, 143 U.S. 621, 646 (1892), the United States may obtain party discovery from the State as a political entity.[4]

## II.   THE VOTING RIGHTS ACT DOES NOT LIMIT "THE STATE OF TEXAS" TO THE SECRETARY OF STATE.

Even setting aside the practical ability test, the State's argument that the Voting Rights Act limits the scope of the State of Texas for purposes of discovery has no basis in text or jurisprudence. Defs. Opp. 1, 5-9. Section 12(d) of the Voting Rights Act authorizes the United States to enforce the Act through "an action for preventive relief, including an application for a temporary or permanent injunction, restraining order, or other order, and including an order directed to the State and State or local election officials." 52 U.S.C. § 10308(d). Avoidance of surplusage dictates that "an order directed to the State" must have a distinct effect from "an order

---

[3] Contrary to Texas's assertion that it did not reject providing documents from the Governor, Opp. Br. 9-10, Texas staked a firm position during a meeting in the afternoon of March 18—after the email on which Texas relies—that the State of Texas as Defendant would produce only documents in the custody of the Office of the Secretary of State. This remains the State's position, and the State's willingness to accept third-party discovery requests to the Governor does not render the instant motion premature. *See also* Part III, *infra*.

[4] Defendants appear to misunderstand the distinction between documents produced "on behalf" of a custodian, Opp Br. 4, and documents produced by a party that has possession, custody, or control over documents held by a broad range of custodians. Texas can produce documents held by officials and agencies on its own behalf. *See, e.g.*, *Perez*, 2014 WL 1796661, at *1; *see also Texas v. Ysleta del Sur Pueblo*, No. 3:17-cv-179, 2018 WL 2348669, *3 (W.D. Tex. May 23, 2018) (accepting the State's assertion that a tribal government had the "legal right or practical ability" to produce documents held by a corporation controlled by the tribe).

3

directed to . . . State or local election officials." *See Corley v. United States*, 556 U.S. 303, 314 (2009) (describing the canon against surplusage). In effect, Defendants seek to impose *Ex Parte Young* restrictions on the United States. *See* Opp. Br. 6 (citing *Okpalobi v. Foster*, 244 F.3d 405, 427 (5th Cir. 2001) (en banc)). But the Voting Right Act provides no basis for this constraint.

Acknowledgment that the composition of a political entity for purposes of discovery is complex is not a concession that the question cannot be answered. *See* Opp. Br. 5. Rather, courts have extended the reach of discovery to those executive officials and agencies that possess documents "relevant to the intent and actions" at issue. *Tri-State Hosp. Supply Corp. v. United States*, 226 F.R.D. 118, 127-29 (D.D.C. 2005). That extends to the Governor and the Texas Attorney General. Exclusion of legislative officials based on separation of powers concerns does not undermine this point. *See United States v. UBS Secs. LLC*, 1:18-cv-6369, 2020 WL 7062789, at *6 (E.D.N.Y. Nov. 30, 2020) (extending discovery throughout the "executive branch")*.* Texas's use of a plural executive does not meaningfully distinguish case law defining the scope of the United States for purposes of discovery. Although ties between components of the State may "be weaker . . . than they would be in the federal government," *City of Dallas v. Stewart*, 361 S.W.3d 562, 573 (Tex. 2012), they remain components of the State of Texas.

### III.     THIRD-PARTY DISCOVERY IS NOT AN ADEQUATE SUBSTITUTE.

Rather than comply with their discovery obligations, Defendants demand that the United States engage in third-party discovery, either through new requests to defendants in other cases consolidated with the instant litigation or via third-party subpoenas. Opp. Br. 9-10. However, these proposed solutions are unwarranted, unduly burdensome, and impractical.

First, by improperly narrowing the scope of documents and information available to the State, Texas would effectively foreclose useful interrogatories and requests for admission, which

4

may only be served on parties.  *See* Fed. R. Civ. P. 33, Fed. R. Civ. P. 36; *see also, e.g.*, SOS Responses to LULAC Interrogatories 9 (Ex. 2) ("SOS was not involved in drawing districts and is not aware of any proposed map that would create an additional Latino-CVAP-majority district in Harris County.").

Second, unnecessary third-party discovery has significant burdens, such as repeat negotiation of ESI agreements and general protective orders.

Finally—and most critically here—the United States served its requests for production on the State more than three months ago.  With more than half of the discovery period elapsed, the United States should not have to begin document discovery over again.

Defendants engage in sleight of hand when they contend that they remained open to searching documents in the possession of the Office of the Governor.  Opp. Br. 9-10. Defendants' brief makes clear that they would not produce documents in the possession of the Governor in response to discovery requests served by the United States on the State of Texas. Opp. Br. 4.  The State's proffered willingness now to accept a new discovery request three months after the United States first served requests for production is no solution at all, particularly as it would condition the United States' ability to obtain discovery from the Office of the Governor in future litigation on the presence of the Governor as a named defendant.  *See also, e.g.*, Mot. to Dismiss 2-3, *La Unión del Pueblo Entero v. Abbott*, No. 5:21-cv-844 (W.D. Tex. Oct. 24, 2021), ECF No. 53 (arguing that the Texas Governor is not a proper defendant in another Voting Rights Act case).

## IV.   CONCLUSION

For the reasons set out above, the United States respectfully requests that this Court grant the United States' motion to compel the production of documents.

Dated: April 15, 2022

                                    PAMELA S. KARLAN
                                    Principal Deputy Assistant Attorney General
                                    Civil Rights Division

                                    */s/ Daniel J. Freeman*
                                    T. CHRISTIAN HERREN, JR.
                                    TIMOTHY F. MELLETT
                                    DANIEL J. FREEMAN
                                    JANIE ALLISON (JAYE) SITTON
                                    MICHELLE RUPP
                                    JACKI L. ANDERSON
                                    JASMIN LOTT
                                    HOLLY F.B. BERLIN
                                    Attorneys, Voting Section
                                    Civil Rights Division
                                    U.S. Department of Justice
                                    950 Pennsylvania Avenue NW
                                    Washington, DC 20530

## **CERTIFICATE OF SERVICE**

  I hereby certify that on April 15, 2022, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system, which will send notification of this filing to counsel of record.

                */s/ Daniel J. Freeman*
                Daniel J. Freeman
                Voting Section
                Civil Rights Division
                U.S. Department of Justice
                daniel.freeman@usdoj.gov