IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, <br><br> *Plaintiffs*, <br> v. <br><br> GREG ABBOTT, *et al.*, <br><br> *Defendants.* | § § § § § § § § § § | Case No. 3:21-cv-259 <br> [Lead Case] |
| TREY MARTINEZ FISCHER, <br><br> *Plaintiff*, <br> v. <br><br> GREG ABBOTT, *et al.*, <br><br> *Defendants.* | § § § § § § § § § § § | Case No. 3:21-cv-306 <br> [Consolidated Case] |

**DEFENDANTS' MOTION TO DISMISS
PLAINTIFF TREY MARTINEZ FISCHER'S FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

Table of Contents ....... ii

Introduction ....... 1

Standard ....... 1

Argument ....... 1

I. Plaintiff Has Not Plausibly Alleged a Discriminatory-Effects Claim ....... 1

A. Plaintiff's allegations of Latino-voter cohesion are nothing more than a formulaic recitation and are insufficient. ....... 3

B. Plaintiff's allegation of white-voter bloc voting is nothing more than a formulaic recitation and is insufficient. ....... 4

II. Plaintiff Has Not Plausibly Alleged a Discriminatory-Intent Claim ....... 6

A. Plaintiff has failed to allege facts showing discriminatory intent. ....... 6

B. Plaintiff's discriminatory-intent claim fails due to his failure to sufficiently allege discriminatory effects. ....... 9

III. Section 2 Does Not Confer a Private Right of Action ....... 10

Conclusion ....... 10

Certificate of Service ....... 11

**INTRODUCTION**

In his First Amended Complaint, Plaintiff has added length but not detail. *Fischer v. Abbott*, No. 3:21-cv-306, ECF 217 ("FAC"). None of the new allegations—virtually all of which are conclusory—satisfy the *Twombly–Iqbal* pleading standard. Because he has failed to allege any plausible factual allegations, Plaintiff cannot state a claim for relief under the VRA or the Equal Protection Clause.

For these reasons, the Court should dismiss this Complaint.

**STANDARD**

A complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

**ARGUMENT**

**I.    Plaintiff Has Not Plausibly Alleged a Discriminatory-Effects Claim**

Plaintiff alleges that Defendants violated the VRA by failing "to create new Hispanic opportunity districts" and by allegedly eliminating "an emerging Latino district like CD 35." FAC ¶ 21; *see also id.* ¶ 19 (alleging statewide failure to create new Latino opportunity districts); *id.* ¶ 20 (fewer Latino opportunity districts in SB6 than in benchmark); ¶¶ 21–25. This is not enough to plausibly allege a Section 2 discriminatory-effects violation.

Section 2 of the VRA prohibits a "standard, practice, or procedure" from being "imposed or applied . . . in a manner which results in a denial or abridgement of the right . . . to vote on account of race or color." 52. U.S.C. § 10301(a). To establish a violation, a plaintiff must show that:

> [T]he political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

*Id.* § 10301(b). A court can consider "[t]he extent to which members of a protected class have been elected to office in the State," but "nothing in [Section 2] establishes a right to have members of a protected class elected in numbers equal to their proportion in the population." *Id.* A plaintiff bringing such a suit must first establish three "necessary preconditions" (the *Gingles* test):

1. The minority group must be able to demonstrate it is sufficiently large and geographically compact to constitute a majority in a single-member district;

2. The minority group must be able to show that it is politically cohesive; and

3. The minority [group] must be able to demonstrate that the white majority votes sufficiently as a bloc to enable it—in the absence of special circumstances, such as the minority candidate running unopposed—usually to defeat the minority's preferred candidate.

*Thornburgh v. Gingles*, 478 U.S. 30, 50–51 (1986); *see Growe v. Emison*, 507 U.S. 25, 39–41 (1993) (explaining that "*Gingles* preconditions" are required in "a § 2 dilution challenge to a single-member districting scheme").

The *Gingles* preconditions are a "bright line test." *Valdespino v. Alamo Heights Indep. Sch. Dist.*, 168 F.3d 848, 8852 (5th Cir. 1999); *accord Benavidez v. Irving Indep. Sch. Dist.*, 690 F. Supp. 2d 451, 456 (N.D. Tex. 2010). "Failure to establish any one of those threshold requirements is fatal." *Harding v. Dallas Cnty.*, 948 F.3d 302, 308 (5th Cir. 2020) (quotation omitted). Meeting the *Gingles* test is necessary

2

but not sufficient to prevail. Yet here, Plaintiff fails to allege facts that would meet two of the *Gingles* preconditions.[1]

### A. Plaintiff's allegations of Latino-voter cohesion are nothing more than a formulaic recitation and are insufficient.

Plaintiff fails to allege facts supporting the second *Gingles* precondition—that "the minority group . . . be able to show that it is politically cohesive." 478 U.S. at 51. First, Plaintiff's repeated conclusory allegations as to the cohesiveness of Latino voters amounts to nothing more than "formulaic recitation[s]" of the second *Gingles* element. *Twombly*, 550 U.S. at 555; *see* FAC ¶ 28 ("Latinos are politically cohesive in CD 35 and vote as a bloc for the Latino-preferred candidate."); FAC ¶ 61; FAC ¶ 70; FAC ¶ 73; FAC ¶¶ 76–80 (alleging merely that "HVAP majority VTDs are strongly politically cohesive"). The fact that Plaintiff repeatedly makes such conclusory allegations makes no difference. Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Second, Plaintiff makes conclusory allegations that Latinos in a proposed CD 37 and a proposed CD 35 would be "politically cohesive." FAC ¶ 61; FAC ¶ 70. Even assuming such conclusory allegations were enough, the second *Gingles* precondition requires showing that the minority group on behalf of whom the plaintiff brings the suit is politically cohesive, *see* 478 U.S. at 50–51; not that some hypothetical minority group in an imagined remedial district be politically cohesive.

Third, Plaintiff does not even try to allege facts to overcome the "obvious alternative explanation" for this alleged voting pattern: partisanship. *See Twombly*, 550 U.S. at 567. It is Plaintiff's burden to plausibly allege that "race," not "partisan affiliation," "best explains" any alleged bloc voting.

---

[1] Plaintiff also alleges facts that are not germane to its discriminatory-effect and discriminatory-intent claims. *E.g.*, FAC ¶¶ 1, 3, 9, 119. This Court should disregard these allegations.

3

*LULAC v. Clements*, 999 F.2d 831, 850 (5th Cir. 1993) (en banc). By neglecting to even mention partisanship as an explanation, much less address the extent to which it accounts for bloc-voting behavior, Plaintiff has failed to "nudge[] [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Plaintiff has therefore failed to plausibly allege a discriminatory-effects claim.

Fourth, Plaintiff conclusorily asserts that "Ordinary Least Squares (OLS)" and "Ecological Inference" have "determined that Latinos are strongly cohesive in enacted CD35 [*sic*] support the same candidates in non-partisan, partisan, and primary elections." FAC ¶ 82; *see* FAC ¶¶ 84–88 (Ecological Inference (EI)). But OLS and EI are methods of analyzing cohesion. Plaintiff must point to an actual study using such methods rather than merely invoke their names as though that alone is enough. Otherwise these are mere conclusory allegations. Conversely, this Court previously found allegations of political cohesion sufficient when other plaintiffs' complaint "list[ed] the results of several recent elections" and discussed their significance. ECF 144 at 4. Here, Plaintiff does not discuss any actual studies or any actual election results. Plaintiff merely conclusorily assures the court that such studies if they were conducted would support his position and that such election results do exist. That is not enough under the second *Gingles* prong.

**B. Plaintiff's allegation of white-voter bloc voting is nothing more than a formulaic recitation and is insufficient.**

Similarly, Plaintiff fails to allege facts supporting the third *Gingles* precondition—namely, "that the white majority votes sufficiently as a bloc to enable it . . . usually to defeat the minority's preferred candidate." *Gingles*, 478 U.S. at 50–51. Again, satisfying this requirement is a "bright-line test," *Valdespino*, 168 F.3d at 852, and Plaintiff's failure to satisfy it "is fatal." *Harding*, 948 F.3d at 308.

Plaintiff simply asserts—rather than alleges facts showing—that the third *Gingles* precondition is met. He does not cite election results. He does not even allege the percentage of voting-age citizens who are white. Doing so would have fatally undermined his claim. White voters are barely one-third

4

of CD 35's voting-age citizens.[2] For this reason alone, Plaintiff has failed to satisfy the third *Gingles* precondition, and his claim fails as a matter of law.

Even if Plaintiff's failure to allege the existence of a white majority were not dispositive, his other allegations fail to satisfy the third *Gingles* precondition. For one thing, Plaintiff's repeated conclusory allegations as to the cohesiveness of white voters amounts to nothing more than "formulaic recitation[s]" of the third *Gingles* element. *Twombly*, 550 U.S. at 555; *see* FAC ¶ 29 ("In Texas and in CD 35, Anglos (White Non-Hispanics) vote sufficiently as a bloc to enable them, in the absence of special circumstances (e.g. single-member districts), to defeat the minority voters' preferred candidates of choice. In CD 35 and throughout Texas as a whole, Anglos vote as a politically cohesive bloc against minority-preferred candidates."); FAC ¶ 62 (similar); FAC ¶ 71 (similar); FAC ¶ 74 (similar).

These are not factual allegations. They are "[t]hreadbare recitals of the elements of a cause of action," *Iqbal*, 556 U.S. at 678, and courts need not "accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 544. Indeed, Plaintiff's purported allegations are simply near word-for-word quotations from *Gingles* itself. *See* 478 U.S. at 50–51. For this reason too, Plaintiff has not adequately alleged a Section 2 discriminatory-effects claim.

Finally, Plaintiff asserts that "OLS finds that Anglos are moderately cohesive in CD 35 around differing candidates than Latinos in CD 35." FAC ¶ 83. Yet, again, OLS is a method of analyzing cohesion. Merely invoking the term "OLS" is not enough. Plaintiff must actually identify OLS studies

---

[2] The Hispanic CVAP for CD 35 is 48.0%, and the white CVAP is 33.9%. *Plan C2193 Map Report Package*, TEX. LEGISLATURE ONLINE: DISTRICTVIEWER, at 17, https://data.capitol.texas.gov/dataset/b806b39a-4bab-4103-a66a-9c99bcaba490/resource/b916a06b-b7e3-42fe-997c-d06f97cd1724/download/planc2193_map_report_package.pdf. These data and other similar statistics are judicially noticeable. FED. R. EVID. 201(b)(2); *see Knox v. Butler*, 884 F.2d 849, 852 n.7 (5th Cir. 1989) (courts may take judicial notice of census data); *Hooks v. Dir., TDCJ-CID*, No. 2:04cv389, 2008 WL 3852757, at *5 (E.D. Tex. Aug. 14, 2008) (citing *Knox*); *Cactus Corner, LLC v. U.S. Dep't of Agric.*, 346 F. Supp. 2d 1075, 1099 (E.D. Cal. 2004), *aff'd*, 450 F.3d 428 (9th Cir. 2006) (census report "is judicially noticeable").

5

that found voter cohesion. Having not done so, Plaintiff presents nothing more than mere conclusory allegations. What is more, Plaintiff does not even allege that there is white voter cohesion; Plaintiff alleges only that there is "moderate[] cohesion."

In sum, Plaintiff fails to allege that there is a white majority; Plaintiff fails to allege that the non-existent white majority votes cohesively; and Plaintiff fails to identify any actual studies or any actual election results that might support his conclusory allegations. Therefore, Plaintiff has failed to plausibly allege a discriminatory-effects claim.

## II. Plaintiff Has Not Plausibly Alleged a Discriminatory-Intent Claim

### A. Plaintiff has failed to allege facts showing discriminatory intent.

Plaintiff has not alleged facts sufficient to infer a discriminatory purpose to support his Section 2 or Equal Protection claims. In redistricting cases, "the good faith of a state legislature must be presumed." *Miller v. Johnson*, 515 U.S. 900, 915 (1995). It is "plaintiffs' burden to overcome the presumption of legislative good faith and show that the [Texas] Legislature acted with invidious intent." *Abbott v. Perez*, 138 S. Ct. 2305, 2325 (2018). The required intent is not mere "volition" or "awareness of consequences." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979). Rather, the Legislature must have passed a law "'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.*

Plaintiff proffers naked assertions that the Texas Legislature acted with discriminatory intent. FAC ¶¶ 46, 47, 93, 102, 103, 107, 112, 118. These assertions "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim." *Iqbal*, 556 U.S. at 681. "As such, the allegations are conclusory and not entitled to be assumed true," even at the pleading stage. *Id.* Plaintiff conveniently tries to hedge against this weakness in its allegations by insisting that "the legislative intent for the policy choices in the map will be difficult to discern" and that "the defendants outsourced their policy choices to unelected third parties[] in order to obscure the real intent of the

6

map." FAC ¶ 102. But these are not allegations of discriminatory intent. They are excuses for an inability to allege with sufficient specificty that there was discriminatory intent.

The limited factual allegations that Plaintiff do make do not remedy this. To start, Plaintiff points to unrelated legislation to infer that the Texas Legislature acted with discriminatory intent in passing this map. FAC ¶¶ 32–36. But the Supreme Court recently reiterated that "past discrimination cannot, in the manner of original sin, condemn governmental action that is not itself unlawful." *Perez*, 138 S. Ct. at 2324 (quoting *City of Mobile v. Bolden*, 446 U.S. 55, 74 (1980) (plurality op.)). Instead, the "ultimate question remains whether a discriminatory intent has been proven *in a given case*." *Mobile*, 446 U.S. at 74 (emphasis added). Even if Plaintiffs could prove each of these allegations, it would not support an inference of discriminatory intent regarding the congressional map.

Next, Plaintiff decries the procedure surrounding adoption of the congressional map. Plaintiff points to the contentious legislative history of SB 6 and "deviations from normal procedure, lack of transparency and public input, and a rushed, inconsistent process leading to enactment." FAC ¶ 47. He complains that "[t]here were precious few public meetings," FAC ¶ 124, that the "candidates of minority preference" were not heard, *id.* ¶¶ 100, 127, 130, that no "new Hispanic opportunity districts" were created, *id.* ¶ 20, and that the Legislature rejected "ameliorative amendments," *id.* ¶¶ 120–24.

But "procedural violations do not demonstrate invidious intent of their own accord." *Rollerson v. Brazos River Harbor Navigation Dist. of Brazoria Cnty. Tex.*, 6 F.4th 633, 640 (5th Cir. 2021); *see also Greater Birmingham Ministries v. Sec'y of State for State of Ala.*, 992 F.3d 1299, 1326–27 (11th Cir. 2021). Although "[d]epartures from the normal procedural sequence . . . might afford evidence that improper purposes are playing a role" in government decision-making, *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977), they raise no inference of "invidious discrimination" when there is an "obvious alternative explanation." *Iqbal*, 556 U.S. at 682 (quoting *Twombly*, 550 U.S. at 567). Instead, procedural violations "must have occurred in a context that suggests the decision-makers

were willing to deviate from established procedures in order to accomplish a discriminatory goal." *Rollerson*, 6 F.4th at 640. To show discriminatory intent, the "fail[ure] to follow the proper procedures" must be "targeted to an[] identifiable minority group." *Rollerson v. Port Freeport*, No. 3:18-CV-00235, 2019 WL 4394584, at *8 (S.D. Tex. Sept. 13, 2019), *aff'd*, 6 F.4th 633 (5th Cir. 2021).

Here, Plaintiffs have alleged no facts affirmatively showing that the Legislature deviated from established procedures to accomplish a discriminatory goal or in a way that targeted a minority group. What is more, Plaintiff alleges nothing that contravenes the "obvious alternative explanation" of partisanship. *Twombly*, 550 U.S. at 567; *LULAC v. Clements*, 999 F.2d at 850. Indeed, the Plaintiff acknowledges that "[m]ost Democratic incumbent congressmen were left ouf of [map] negotiations with outside counsel or the Texas Senate." FAC ¶ 100. Yet nonetheless, Plaintiff concludes that such clearly partisan decisions could not be based on partisanship; rather, Plaintiff concludes—without justification—that they can be based only on intentional racial discrimination. FAC ¶¶ 120–33. That is a nonsequitur. There is a leap in logic that is missing between Plaintiff's allegations and a plausible allegation of discriminatory intent.

Finally, Plaintiff dismisses another ready and obvious explanation that the complaint itself provides for the complained-of exigencies: the federal census was delayed due to the pandemic, so the results were not delivered until more than ten weeks after the Texas Legislature's 87th Regular Session ended. FAC ¶¶ 10–11. That was more than four months after the statutory deadline of April 1. *See* 13 U.S.C. § 141(a), (c). As a result, the Texas Legislature had to redistrict during a special session, which is constitutionally limited to thirty days. *See* TEX. CONST. art. III, § 40. Although Plaintiff argues that the census delay does not explain all of these exigencies, he does concede that "[n]o doubt the brevity of the [legislative] session and some of the failures to hold more hearings on the plan can be explained by the delayed Census." FAC ¶ 132. Given this compressed schedule due to pandemic-related delays, an allegedly rushed process would hardly be surprising, much less give a reason to infer intentional

8

invidious discrimination. In *Abbott v. Perez*, the Supreme Court could "not see how the brevity of the legislative process can give rise to an inference of bad faith." 138 S. Ct. at 2328–29. The evidence there was insufficient; the allegations here are even weaker.

### B. Plaintiff's discriminatory-intent claim fails due to his failure to sufficiently allege discriminatory effects.

Even if Plaintiff had plausibly alleged discriminatory intent, that would not be enough. This follows from "a familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive." *United States v. O'Brien*, 391 U.S. 367, 383 (1968). "[N]o case in [the Supreme] Court has held that a legislative act may violate equal protection solely because of the motivations of the men who voted for it." *Palmer v. Thompson*, 403 U.S. 217, 224 (1971). Courts routinely require discriminatory effect in intentional-discrimination redistricting cases. *See, e.g.*, *Shaw v. Reno*, 509 U.S. 630, 649 (1993) ("We have . . . required plaintiffs to demonstrate that the challenged practice has the purpose and effect of diluting a racial group's voting strength."); *Rodriguez v. Harris Cnty.*, 964 F. Supp. 2d 686, 800 (S.D. Tex. 2013) ("purpose and operative effect"); *LULAC v. N.E. Indep. Sch. Dist.*, 903 F. Supp. 1071, 1093 (W.D. Tex. 1995) ("intentional discrimination" and "a resultant discriminatory effect").

The same is true under Section 2. "[T]he statute proscribes intentional discrimination only if it has a discriminatory effect, but proscribes practices with discriminatory effect whether or not intentional." *Chisom v. Roemer*, 501 U.S. 380, 406 (1991) (Scalia, J., dissenting); *accord Turner v. Arkansas*, 784 F. Supp. 553, 565 (E.D. Ark. 1991), *aff'd*, 504 U.S. 952 (1992).

As explained *supra* in Part I, Plaintiff has not plausibly alleged a discriminatory effect. Because Plaintiff has not plausibly alleged that CD 35 violates the VRA for having discriminatory effect, he has not established any real-world harm resulting from the alleged discriminatory intent.

**III.     Section 2 Does Not Confer a Private Right of Action**

Plaintiff's claims should be dismissed because Section 2 does not create a private right of action. As another district court recently recognized, under *Alexander v. Sandoval*, there is no private right of action under Section 2 because Congress did not create one. *See Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*, No. 4:21-v-01239-LPR, 2022 WL 496908, at *9–17 (E.D. Ark. Feb. 17, 2022) (citing 532 U.S. 275 (2001)). Defendants recognize that the Court has already decided this issue, *see generally* ECF 58, and do not wish to burden the Court with duplicative briefing. Defendants incorporate by reference their previous briefing. *See* ECF 12 at 16–19.

## CONCLUSION

Defendants respectfully ask the Court to dismiss Plaintiff's claims.

Date: April 20, 2022                     Respectfully submitted.

KEN PAXTON                               /s/ Patrick K. Sweeten
Attorney General of Texas                PATRICK K. SWEETEN
                                         Deputy Attorney General for Special Litigation
BRENT WEBSTER                            Tex. State Bar No. 00798537
First Assistant Attorney General

                                         WILLIAM T. THOMPSON
                                         Deputy Chief, Special Litigation Unit
                                         Tex. State Bar No. 24088531

                                         ARI M. HERBERT*
                                         Assistant Attorney General, Special Litigation Unit
                                         Tex. State Bar No. 24126093
                                         *Application for Admission Pending

                                         OFFICE OF THE ATTORNEY GENERAL
                                         P.O. Box 12548 (MC-009)
                                         Austin, Texas 78711-2548
                                         Tel.: (512) 463-2100
                                         Fax: (512) 457-4410
                                         patrick.sweeten@oag.texas.gov
                                         will.thompson@oag.texas.gov

                                         **COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on April 20, 2022, and that all counsel of record were served by CM/ECF.

                                         /s/ Patrick K. Sweeten
                                         PATRICK K. SWEETEN

11