# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

LEAGUE OF UNITED LATIN AMERICAN
CITIZENS, *et al.*,

       *Plaintiffs,*

v.

GREG ABBOTT, *et al.*,

       *Defendants.*

Case No. 3:21-cv-00259
[Lead Case]

**MOTION TO STAY**

TABLE OF CONTENTS

Table of Contents ..................................................................................................................................i

Introduction ......................................................................................................................................... 1

Background .......................................................................................................................................... 2

    I.    The 2021 Redistricting ....................................................................................................... 2

    II.   Parallel State Litigation ...................................................................................................... 3

    III.  This Litigation .................................................................................................................... 3

Argument .............................................................................................................................................. 5

    I.    The Supreme Court's Decision in *Merrill* Will Directly Affect the Course of these Proceedings. ......................................................................................................................... 6

    II.   The Legislature's State-Law Requirement to Redistrict in 2023 Could Moot this Case and Renders Further Litigation on the Current Maps Improper ....................................... 9

        A.   Plaintiffs Have No Prospective Injury ................................................................ 9

        B.   Litigation Should Not Proceed in Advance of 2023 Legislation ................... 10

Conclusion ......................................................................................................................................... 12

Certificate of Service ........................................................................................................................ 13

Certificate of Conference ................................................................................................................ 13

i

## INTRODUCTION

The Supreme Court has repeatedly stated that "[r]edistricting 'is primarily the duty and responsibility of the State,' and '[f]ederal-court review of redistricting legislation represents a serious intrusion on the most vital of local functions." *Abbott v. Perez*, 138 S. Ct. 2305, 2324 (2018) (quoting *Miller v. Johnson*, 515 U.S. 900, 915 (1995)). To minimize that intrusion and preserve the resources of the Court and the parties, Defendants respectfully request a stay of these consolidated redistricting cases pending the Supreme Court's decision in *Merrill v. Milligan*, No. 21-1086 (U.S.), consolidated with *Merrill v. Caster*, 21-1087 (U.S.), lest this Court decide this case and then be required to decide it again. When the Supreme Court announced it would be giving plenary review in those consolidated cases, multiple members observed that the Court's Voting Rights Act case law "is notoriously unclear and confusing," and that "*Gingles* and its progeny have engendered considerable disagreement and uncertainty regarding the nature and contours of a vote dilution claim." *Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring in grant of stay); *id.* at 882-83 (Roberts, C.J., dissenting from grant of stay). There is no reason to press ahead in these Voting Rights Act cases when the Supreme Court, in deciding *Merrill*, is poised to "resolve the wide range of uncertainties arising under *Gingles*." *Id.* at 883 (Roberts, C.J., dissenting from grant of stay).

Staying these proceedings will also preserve the resources of the Court and the parties in an additional way: Between now and the 2024 elections, the Texas Legislature will enact legislation regarding state legislative seats as required by article III, section 28 of the Texas Constitution. A stay of these proceedings ensures that the Court will be reviewing the legislation actually to be used in the next election, again with the benefit of the Supreme Court's forthcoming "resol[ution] of the uncertainties arising under *Gingles*" in cases challenging districts as violative of the VRA. *Id.* Due to that state constitutional requirement, the statutes that Plaintiffs currently challenge will be defunct before this Court can order effective relief. Specifically, article III, section 28 of the Texas Constitution

1

requires that "[t]he Legislature shall, at its first regular session after the publication of each United States decennial census, apportion the state into senatorial and representative districts, agreeable to the provisions of Sections 25 and 26 of" Article III of the Constitution. In this instance, due to the U.S. Census Bureau's delays in releasing the necessary data, that first regular session is the 2023 regular session. The State has already acknowledged that while federal law required the State to reapportion *sooner* than 2023, that does not relieve the State of its obligation to enact redistricting legislation in 2023 as required by its Constitution. Br. for Appellants at 17–18, 41–48, *Abbott v. Mex. Am. Legislative Caucus*, No. 22-0008 (Tex. 2022) ("MALC Br.").

Because the relief at issue here is necessarily directed at the 2024 elections, *cf. Merrill*, 142 S. Ct. 789, further litigation regarding the 2021 redistricting process at the present time will create an unjustified drain on the Court's and the parties' resources. There is every reason to await the Supreme Court's forthcoming *Merrill* decision, likely to dictate a new rule of decision to be applied in these very cases. Pressing ahead with litigation here is wasteful, prejudicial, and unnecessary. In the interim, the State will also be enacting the actual legislation that will govern in the 2024 elections. Once both events occur, there will be ample time to decide Plaintiffs' claims before the next election.

## BACKGROUND

### I. The 2021 Redistricting

Last year, Texas faced a dilemma: under federal law, the U.S. Census Bureau is obligated to release a "decennial census of [the] population," on the first day of April "every 10 years." 13 U.S.C. § 141(a); *see also* U.S. Const. art. I, § 2, cl. 3 (empowering Congress to carry out the census "in such Manner as they shall by Law direct"). And the Texas Constitution *requires* that the Legislature use that data "at its first regular session after [its] publication" to apportion the State according to the requirements of both state and federal law. Tex. Const. art. III, § 28. Failure to do so will cause the Legislature to forfeit its redistricting authority to a Board composed largely of executive-branch

2

officials. *Id.* But due to "COVID-19-related delays," the Census Bureau was late in delivering the census data[1]—so late that the Texas Legislature was unable to begin the redistricting process during its 87th regular session, which ran from January 12, 2021, to May 31, 2021.[2]

In light of Texas's significant change in population, Governor Greg Abbott called a special session of the Legislature to enact a redistricting plan in advance of the 2022 elections rather than wait for the special session in advance of the 2023 elections. Tex. Gov. Proclamation No. 41-3858, 87th Leg., 3d C.S. (2021). During that special session, the Legislature drew the maps currently before the Court, which the Governor signed into law on October 25, 2021.

## II. Parallel State Litigation

In November 2021, a group of current and potential members of the Texas Legislature sued the State on the theory that by seeking to comply with federal law, it had violated section 28 of the Texas Constitution. MALC Br., *supra*, at 8–9. The Defendants explained in their brief in that case that complying with the federal-law requirement to redistrict in advance of the 2022 election did not obviate the State's state-law obligation to redistrict in 2023. *Id.* at 48–53; *see* Tex. Const. art. III, § 28.[3]

## III. This Litigation

These consolidated suits challenge Texas's redistricting plans as violations of the Voting Rights Act, along with related Equal Protection Clause claims. Now, the majority of the plaintiff groups are seeking to amend their complaint to add new plaintiffs, new defendants, new claims, and new facts about the challenged maps. *See* ECF 226 (MALC); ECF 228 (Voto Latino); ECF 229 (Escobar); ECF 230 (LULAC); ECF 231 (Brooks). All plaintiffs are seeking wide-ranging discovery into the thought

---

[1] Press Release, United States Census Bureau, *Census Bureau Statement on Redistricting Data Timeline* (Feb. 12, 2021), https://www.census.gov/newsroom/press-releases/2021/statement-redistricting-data.

[2] Tex. Legislative Council, *Dates of Interest: 87th Legislature*, https://tlc.texas.gov/docs/legref/Dates-of-Interest.pdf; see also Tex. Const. art. III, §§ 5(a), 24(b).

[3] *See also* Oral Argument at 12:00-13:02, *Abbott v. Mex. Am. Legislative Caucus*, No. 22-0008 (Tex. 2022), https://tinyurl.com/yc5jhpex.

processes and deliberations of Texas's 87th Legislature—notwithstanding that Texas has acknowledged that it must revisit the current redistricting in the 88th Legislature.

The United States has since taken the lead in discovery, issuing wide-ranging document subpoenas for more than a dozen Texas officials. The only cause of action in the United States' complaint, filed in December 2021, is the alleged violation of Section 2 of the Voting Rights Act. *See* Compl. ¶¶ 161–67, *United States of America v. Texas*, No. 3:21-cv-299, ECF 1 ("Compl."). With respect to the State's new congressional districts, the United States complains that "Texas designed the two new [congressional] seats to have Anglo voting majorities," "intentionally eliminated a Latino electoral opportunity [district] in Congressional District 23," "failed to draw a seat encompassing the growing Latino electorate in Harris County," and "surgically excised minority communities from the core of the Dallas-Fort Worth Metroplex (DFW) by attaching them to heavily Anglo rural counties, some more than a hundred miles away"—all in violation of Section 2. *Id.* ¶¶ 3, 161–67. With respect to the State's new house districts, the United States complains that Texas violated Section 2 when it allegedly "replaced Latinos in House Districts 118 and 31 with high-turnout Anglo voters" and "reduc[ed] the number of districts in which Latinos make up a citizen voting-age population majority from six to five" in El Paso and West Texas. *Id.* ¶ 4. Simply put, the United States—echoing other Plaintiffs' allegations—believe that Section 2 compelled Texas to draw different districts than those enacted.

The State's motion to dismiss the United States' complaint remains pending. *See* ECF 111.[4] The State's motion explains that the United States failed to state a Section 2 violation with respect to the regions identified in the complaint, including the claim that the El Paso majority-Latino house districts should have numbered six instead of five. *Id.* at 22–23 (El Paso and West Texas); *see also id.* at 3–6 (CD 23); *id.* at 16–18 (Harris County); *id.* at 19–20 (HD 118); *id.* at 20-22 (HD 31). The State's

---

4   Unless otherwise specified, all docket numbers refer to docket entries on the consolidated docket, No. 3:21-cv-259 (W.D. Tex.).

4

motion also preserves the argument that the complaint should be dismissed in its entirety because Section 2 does not apply to redistricting. *Id.* at 24 (citing *Abbott v. Perez*, 138 S. Ct. 2305, 2335 (2018) (Thomas, J. concurring); *Ala. Legislative Black Caucus v. Alabama*, 575 U.S. 254, 294-98 (2015) (Thomas, J., dissenting); *Bartlett v. Strickland*, 556 U.S. 1, 26 (2009) (Thomas, J., concurring in the judgment); *Holder v. Hall*, 512 U.S. 874, 892-93 (1994) (Thomas, J., concurring in the judgment)).

In the interim, the Supreme Court has announced that it will be providing much-needed clarification about what Section 2 requires of States (and what the Equal Protection Clause prohibits) in the context of redistricting. *See Merrill*, 142 S. Ct. at 881 (Kavanaugh, J., concurring in grant of stay) (describing "the underlying question" in *Merrill* as "whether a second-majority minority congressional district … is required by the Voting Rights Act and not prohibited by the Equal Protection Clause"). In consolidated cases regarding Alabama's congressional districts, the Supreme Court will be deciding whether a federal district court erred by requiring Alabama to draw two majority-Black districts where it instead drew only one. *See generally Merrill v. Milligan*, No. 21-1086 (U.S.); *Merrill v. Caster*, No. 21-1087 (U.S.). The Court decided to grant plenary review in *Merrill* after a federal district court enjoined Alabama from using its enacted districts in the next election. In its emergency application, the State argued that the district court's application of Section 2, applying the *Gingles* factors and ignoring the actual "totality of circumstances," 52 U.S.C. §10301(b), exceeded all constitutional bounds. And the State argued that Section 2, if correctly conceived by the district court in that case, could not constitutionally apply to redistricting. The very same statutory and constitutional questions plague Plaintiffs' allegations here.

## ARGUMENT

A stay is warranted pending the Supreme Court's resolution of *Merrill* and the Legislature's resolution of its redistricting obligations in 2023. Principles of fairness and judicial economy counsel against pressing ahead with redistricting litigation in such circumstances.

5

Staying these cases is within the Court's inherent power and discretion. *See, e.g.*, *Landis v. N. Amer. Co.*, 299 U.S. 248, 254 (1936). Consideration of "(1) the potential prejudice to the non-moving party; (2) the hardship and inequity to the moving party if the action is not stayed as well as the (3) judicial resources that would be saved . . . ," further confirm that a stay is warranted. *Sparling v. Doyle*, No. 3:13-cv-323, 2014 WL 12489985, at *2 (W.D. Tex. Mar. 3, 2014) (Guaderrama, J.); *see Clinton v. Jones*, 520 U.S. 681, 706 (1997). All factors weigh in favor of a stay here.

**I.    The Supreme Court's Decision in *Merrill* Will Directly Affect the Course of these Proceedings.**

The Supreme Court's resolution of the Section 2 questions raised in *Merrill*—including the fundamental questions of when additional majority-minority districts are required and when Section 2 can even constitutionally apply to redistricting—will directly affect the course of this litigation. There is thus every reason to stay pending the Supreme Court's decision in *Merrill* to preserve all parties' resources as well as this Court's.

When the Court announced it would be giving plenary review of the Section 2 claims and constitutional issues in *Merrill*, Justice Kavanaugh, Chief Justice Roberts, and Justice Kagan issued separate opinions all confirming that the Court's forthcoming decision would provide (much-needed) clarification of the States' VRA obligations when it comes to redistricting. Justice Kavanaugh, joined by Justice Alito, stated that clarification of the "notoriously unclear and confusing" Section 2 caselaw is much needed. *Merrill*, 142 S. Ct. at 881. The Chief Justice agreed "that *Gingles* and its progeny have engendered considerable disagreement and uncertainty regarding the nature and contours of a vote dilution claim." *Id.* at 882–83 (citing various cases and articles). He added that *Merrill* will "resolve the wide range of uncertainties arising under *Gingles*" when hearing the case on the merits. *Id.* at 883. And Justice Kagan described the Court's intervention in *Merrill* as being based on the "view that the law needs to change." *Id.* at 889.

There is every reason to believe that the current rules governing a Section 2 claim in the

context of redistricting will not be the governing rules following the Court's decision in *Merrill*, and this Court should use its inherent power to stay these proceedings. *See, e.g.*, *Miccosukee Tribe of Indians v. S. Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1198 (11th Cir. 2009) (stay is appropriate when "a federal appellate decision that is likely to have a substantial or controlling effect on the claims and issues in the stayed case"). There is little to no potential prejudice to the non-moving parties if the Court stays these cases pending the Supreme Court's resolution of *Merrill*. This Court has already adjudicated the only request for a preliminary injunction in advance of the 2022 elections. ECF 176. All remaining requests for relief necessarily pertain to the 2024 elections. *Merrill*, 142 S. Ct. 879 (vacating injunction of Alabama's enacted districts in advance of 2022 elections). There would be ample time for the Court to oversee discovery, adjudicate these cases, and issue a decision well in advance of the 2024 primary if it awaits clarification from the Supreme Court regarding the proper standards for Section 2 claims.[5]

On the other side of the ledger, should the cases proceed before the Supreme Court decides *Merrill*, the State faces special hardship. Without a stay, the State will be effectively required to defend itself *twice* against Plaintiffs' claims—first under the current Section 2 regime and later under any clarified regime. That includes substantial and costly discovery burdens. For its part, the United States has already subpoenaed more than two dozen Texas officials. Similarly, the LULAC plaintiffs have issued subpoenas for eight Texas officials and is seeking six more. The Plaintiffs have anticipated an extraordinary number of depositions, and they have been allotted 75 fact depositions or up to 325 hours of deposition testimony for fact witnesses. ECF 220. With *Merrill* poised to change the very rules that govern Plaintiffs' claims, there is no basis to press on with such discovery in addition to all

---

[5] Briefing in *Merrill* will be complete in the next few months, and the Court will then hear argument in the fall. Recently, the Supreme Court has decided redistricting cases roughly four months after oral argument. *See, e.g.*, *Shelby County v. Holder*, 570 U.S. 529 (2013) (argued Feb. 27, 2013, decided June 25, 2013); *Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254 (2015) (argued Nov. 12, 2014, decided March 25, 2015); *Bethune-Hill v. Va. St. Bd. of Elections*, 137 S. Ct. 788 (2017) (argued Dec. 5, 2016, decided March 1, 2017); *Cooper v. Harris*, 137 S. Ct. 1455 (2017) (argued Dec. 5, 2016, decided May 22, 2017); *Abbott v. Perez*, 138 S. Ct. 2305 (2018) (argued April 24, 2018, decided June 25, 2018). Applied here, the Court would most likely issue its decision in *Merrill* between February and March—roughly a year before the State's primary elections.

of the other trappings of defending against Plaintiffs' complaints.

Finally, and most importantly, a stay would save tremendous judicial resources for this Court. It would avoid the risk of fully litigating these cases, including substantial discovery, only to have to do it all over again under new rules. (Or worse, only to find out that all of those efforts were for naught because Section 2 cannot constitutionally apply to redistricting—as the State has already argued in its motion to dismiss and as Alabama has argued before the Supreme Court.) The Supreme Court will clarify longstanding uncertainties in *Merrill* about the very arguments Plaintiffs make here: When is an additional majority-minority district required? And what limitations does the Constitution place on the VRA in such circumstances? *See Merrill*, 142 S. Ct. at 881 (Kavanaugh, J., concurring in grant of stay).

Should this Court decide those claims now, applying the "notoriously unclear and confusing" *Gingles* factors, *id.*, there is a substantial likelihood that the Supreme Court would vacate and remand that decision on appeal in light of *Merrill*.[6] When, for example, a non-prevailing party takes an appeal from a decision of this Court, then that appeal would be pending at the Supreme Court at the same time *Merrill* is before the Supreme Court. The Supreme Court would likely hold any such appeal pending its decision in *Merrill*. Once the Supreme Court decides *Merrill*, the Supreme Court would likely dispose of appeals or petitions for certiorari raising Section 2 issues—including any pending appeal in this case—by granting, vacating, and remanding (or "GVR") in light of *Merrill*. *See, e.g.*, *Dick v. Oregon*, 140 S. Ct. 2717 (2012) (GVR in light of *Ramos v. Louisiana*, 140 S. Ct. 1390 (2020); *Collins v. City of Norfolk*, 478 U.S. 1016 (1986) (GVR in light of *Thornburg v. Gingles*, 478 U.S. 30 (1986)); *City of Bridgeport v. Bridgeport Coalition for Fair Representation*, 512 U.S. 1283 (1994) (GVR in light of *Johnson v. De Grandy*, 512 U.S. 997 (1994)); *Tyus v. Bosley*, 512 U.S. 1249 (1994) (same). For this reason, too, it

---

[6] If the Court issues a decision in late fall, as the scheduling order anticipates, any appeal of that decision would be before the Supreme Court simultaneous with the Supreme Court's consideration of Merrill, which is likely to be argued in October.

8

preserves the parties' and this Court's resources, to await the Supreme Court's forthcoming guidance in the Alabama cases first and then decide the issues presented here, rather than risk trying and deciding the issues presented here two times over.

For all of these reasons, a stay is warranted so that this Court will have the Supreme Court's forthcoming decision in *Merrill first* and *then* decide the issues presented here, rather than risk trying and deciding the issues presented here twice.

## II. The Legislature's State-Law Requirement to Redistrict in 2023 Could Moot this Case and Renders Further Litigation on the Current Maps Improper

A stay is also warranted because the State is constitutionally obligated to enact redistricting legislation in 2023 for the legislative districts. Allowing further litigation to proceed now, when there will be an intervening Supreme Court decision in *Merrill* and legislation before the 2024 elections at issue, makes little sense. Adjudicating Plaintiffs' claims before that intervening legislation arguably exceeds the Court's jurisdiction. At minimum, it would be an unnecessary and intrusive examination of one of the State's "most vital of local functions." *Perez*, 138 S. Ct. at 2324 (quoting *Miller*, 515 U.S. at 915–16).

### A. Plaintiffs Have No Prospective Injury

These cases present important questions touching on one of the most fundamental aspects of our government: how those who govern us are to be selected. And there is a "natural urge to proceed directly to the merits of [an] important dispute and to 'settle' it for the sake of convenience and efficiency." *Hollingsworth v. Perry*, 570 U.S. 693, 704-05 (2013). But if this Court were to proceed with litigation now, it would be unable to afford effective relief.

Plaintiffs challenge the State's existing redistricting legislation, enacted in 2021, but that legislation will apply only to the 2022 elections for legislative districts and not the 2024 elections (for which there will be new legislation). Plaintiffs have already adjudicated their claims with respect to the 2022 elections, *supra*, and any remaining relief will necessarily be directed at the 2024 elections.

9

Enjoining the existing districts in advance of the 2022 elections would contravene well-established rules. *See Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006); *see, e.g.*, *Merrill*, 142 S. Ct. at 880 (Kavanaugh, J., concurring in grant of stay) (collecting various cases where the Supreme Court "has often stayed lower federal court injunctions that contravened th[e] principle" that "federal courts ordinarily should not enjoin a state's election laws in the period close to an election").[7]

Because the 2022 election cycle is the only cycle to which the current legislation will apply, the only relief that the Court could provide with respect to the redistricting legislation is an impermissible advisory opinion. Because plaintiffs could obtain, at most, prospective relief, they cannot obtain relief absent a prospective injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983); *cf. Cook v. Randolph County*, 573 F.3d 1143, 1155 (11th Cir. 2009) (citing *Palmer v. Bd. of Educ. of Cmty. Unit Sch. Dist. 201-U*, 46 F.3d 682, 686 (7th Cir. 1995)) (Section 2 of the Voting Rights Act does not create a cause of action for money damages). Such prospective relief does not exist here because any injury that goes beyond the 2022 elections is yet to be seen. The relevant legislation for the 2024 elections will be forthcoming in 2023 and does not yet exist. Well established rules of justiciability, including ripeness and "the rule against advisory opinions" prevents adjudication of such vague and inchoate harms which lack the "clear concreteness provided when a question emerges precisely framed and necessary from a decision." *Flast v. Cohen*, 392 U.S. 83, 96–97 (1968); *see S.C. State Conf. of NAACP v. McMaster*, No. 3:21-cv-3302, 2021 WL 5282843, at *5 (D.S.C. Nov. 21, 2021) (holding that claims challenging malapportioned electoral maps were "not yet ripe" and "stay[ing] proceedings to give the Legislature the opportunity to timely perform its redistricting duties").

### B. Litigation Should Not Proceed in Advance of 2023 Legislation

Even if the Court has jurisdiction to entertain further litigation about the existing districts,

---

[7] *See also, e.g.*, *DNC v. Wis. State Legislature*, 141 S. Ct. 28, 31 (2020) (Mem.) (Kavanaugh, J., concurring); *Moore v. Harper*, 142 S. Ct. 1089 (2022) (Mem.); *RNC v. DNC*, 140 S. Ct. 1205 (2020); *Veasey v. Petty*, 574 U.S. 951 (2014); *Frank v. Walker*, 574 U.S. 929 (2014).

including the congressional districts, there is no reason to conduct discovery on Plaintiffs' claims two times over. Proceeding with discovery and all of the other trappings of litigation, when there will be additional legislation in 2023, is unwarranted. Whatever motivated the Legislature in 2021, moreover, does not "carr[y] forward" to subsequent legislation. *Perez*, 138 S. Ct. at 2325. The motives of an earlier Legislature are not to be imputed to later Legislatures. *Id.* at 2325; *see also Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2350 (2021) (rejecting "cat's paw" theory of liability for legislators and claims of voting-related discrimination); *United States v. O'Brien*, 391 U.S. 367, 383–84 (1968) ("What motivates one legislator . . . is not necessarily what motivates scores of others . . . ."). After the State enacts new legislation, Plaintiffs will necessarily need to replead their complaint to attempt to "overcome the presumption of legislative good faith" to plausibly show, for example, that any such new legislation is imbued "with invidious intent." *Perez*, 138 S. Ct. at 2325. The discovery to which Plaintiffs are entitled is tied to the nature of those allegations. *E.g.*, *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011) (quoting Fed. R. Civ. P. 26(b)(1)). So again, there is no reason to press ahead now only to have more to do later.

In this instance, Plaintiffs are already fielding substantial discovery requests. As explained in detail in a pending motion to quash by individual subpoena recipients, *see* ECF 219, the United States has subpoenaed the Lieutenant Governor, the Speaker of the Texas House, and twenty-four other legislators and staff broadly seeking all forms of legislative and other privileged information relating to the 2021 redistricting process. Counsel has already produced over 17,000 pages of documents on their behalf. The LULAC plaintiffs have also issued subpoenas to various legislators, similarly seeking documents and information relating to the 2021 legislative redistricting process. And Defendants have received extensive and overbroad party discovery from the United States, and LULAC, NAACP, Voto Latino, and Fair Maps plaintiffs. Responding to the subpoenas and other discovery requests entails

substantial burden for these individual legislators and officials,[8] and yet Plaintiffs will be poised to do it all over again when new legislation is passed. Staying these proceedings will avoid this unwarranted drain on the resources of the parties and the Court.

*   *   *

There is ample time to resolve Plaintiffs' claims once the Supreme Court has clarified the range of redistricting claims that can be brought against the State's redistricting plans. The current formulation of *Gingles* and the VRA more broadly is on borrowed time. It would be of no benefit to the parties or to this Court to litigate Plaintiffs' claims under that test when the Supreme Court will be providing much-needed clarification well before the next round of elections. Moreover, staying proceedings will allow this Court to adjudicate Plaintiffs' claims based on the actual legislation that will govern in that next round of elections. There is no basis for pressing ahead now in light of all that is to come between now and the 2024 elections.

## CONCLUSION

Defendants respectfully request that the Court grant the motion to stay and hold these cases in abeyance pending the Supreme Court's decision in *Merrill* and the 88th regular legislative session.

---

[8] For example, Defendants and the individual subpoena recipients anticipate that there will be substantial disagreement about applicable privileges. The subpoenas received to date are replete with discovery requests intended to probe the minds of individual legislators and other state officials. *But see Veasey v. Abbott*, 830 F.3d 216, 287–88 (5th Cir. 2016) (Jones, J., dissenting in relevant part); *Brnovich*, 141 S. Ct. at 2350. Adjudicating whether the discovery currently sought is both an appropriate area of inquiry and not subject to privilege is likely to be a burdensome task. The Court should not wade into that morass before knowing what rules will even govern the next election cycle.

| | |
|---|---|
| Date: April 20, 2022 | Respectfully submitted. |
| KEN PAXTON<br>Attorney General of Texas | /s/ Patrick K. Sweeten<br>PATRICK K. SWEETEN<br>Deputy Attorney General for Special Litigation<br>Tex. State Bar No. 00798537 |
| BRENT WEBSTER<br>First Assistant Attorney General | |

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
Tex. State Bar No. 24088531

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on April 20, 2022, and that all counsel of record were served by CM/ECF.

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN

**CERTIFICATE OF CONFERENCE**

I certify that I conferred with counsel for plaintiffs regarding this motion. Counsel for each of the plaintiff groups indicated they are opposed to the relief sought here.

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN