IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> GREG ABBOTT, *et al.*, <br><br> *Defendants.* | § § § § § § § § § § § § | Case No. 3:21-cv-00259 <br> [Lead Case] |
| UNITED STATES OF AMERICA, <br><br> *Plaintiff,* <br><br> v. <br><br> STATE OF TEXAS, *et al.*, <br><br> *Defendants.* | § § § § § § § § § § § § | Case No. 3:21-cv-00299 <br> [Consolidated Case] |

**REPLY IN SUPPORT OF MOTION TO QUASH**

The United States describes its subpoena, demanding that a legislative agency turn over all redistricting-related materials stored on the Texas Legislature's computer network, as "routine." Resp. 1. It is not. The subpoena should be quashed altogether, given that the United States has subpoenaed TLC to bypass legislators and other state officials—those to whom the materials (and applicable privileges) belong. Alternatively, the subpoena should be modified or a protective order issued that precludes the United States from seeking materials from TLC that in fact belong to individual legislators' offices, other legislative officials, and remaining state officials.

The third-party subpoena flouts basic rules of discovery. Discovery is "not unlimited, especially when the target is a nonparty." *Rossman v. EN Eng'g, LLC*, 467 F. Supp. 3d 586, 590 (N.D. Ill. 2020) (collecting cases). Burdens placed on nonparties must be balanced against any purported need, taking "reasonable steps to avoid imposing undue burden or expense" on third parties. Fed. R. Civ. P. 45(d)(1); *see also* Fed. R. Civ. P. 26(c)(1) (court may "issue an order to protect … person from annoyance, embarrassment, oppression, or undue burden or expense"); *see, e.g.*, *In re Modern Plastics Corp.*, 890 F.3d 244, 250-51 (6th Cir. 2018) (affirming sanctions for unduly burdensome third-party discovery). Third-party subpoenas that are overly burdensome or that demand privileged or protected information must be quashed. *See W. Life Ins. v. W. Nat'l Life Ins.*, 2010 WL 5174366, at *2, *4 (W.D. Tex. Dec. 13, 2010). Applied here, the subpoena demands that TLC mine all documents, email, and other data on the Legislature's computer network, review that voluminous material for responsiveness, assert applicable privileges and defenses on behalf of all legislators and officials, and more—all in an attempt to remove the actual custodians and privilege holders from the process. The United States cannot deploy a third-party subpoena in this way. *See* Mot. 5–7 (collecting cases).[1]

---

[1] Contrary to the United States' suggestion (Resp. at 2), movants filed a copy of their motion on the agreed-upon date of April 6 as part of their request exceed the page-limit in the local rules. ECF 218. The Court granted that request, and docketed the motion the next day, pursuant to standard procedure in the Western District of Texas. ECF 219.

**I.     Standing Arguments are Meritless**

The United States, Resp. at 2–3, does not dispute that the already-subpoenaed individuals, movants here, have "personal right[s] and privilege[s] with respect to the materials subpoenaed." *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979); *see Alcaraz Valdez v. Mears Grp. Inc.*, 2019 WL 6829471, at *3 (W.D. La. Dec. 12, 2019) ("if the discovery requests seek information that may have been sent by or for the party, the party has a right to challenge the discovery"). The United States cites no authority for its suggestion that Movants must articulate a personal right over every single legislative document to have standing to challenge the sweeping subpoena. Such empty formalism would be especially strange where, as here, the subpoena recipient has already objected on the same grounds.

**II.    The United States Cannot Use a Third-Party Subpoena to Demand Documents That TLC is Not Authorized to Give**

The United States misuses the TLC subpoena as an improper substitute for discovery from the proper custodian. Rather than subpoena those to whom the documents belong, the United States subpoenaed an agency to whom documents are merely accessible. Meeting the United States' demands would require ignoring state law and violating directives from every legislator to TLC. *See* Mot. 7–8; *see, e.g.*, Ex. A (compilation of legislators' directives).[2] Those directives confirm that state law means what it says: the subpoenaed documents are not TLC's to give. *See* Tex. Gov't Code § 306.009.

The United States' discovery tactic burdens not just TLC; it burdens all legislators and officials who are the true custodians of these documents, some of whom have already been subpoenaed and are now subject to duplicative burdens and others whom the United States has not found it worthwhile to subpoena individually. It is no surprise that this kind of abuse is prohibited. *See, e.g., Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975) (affirming order quashing

---

[2] Each member of the Texas Legislature sent TLC a directive "to assert all applicable privileges and obligations on behalf of my office when an individual or entity from outside my office requests information maintained by the council . . . unless I provide my consent for disclosure of the information." Ex. A. The only exceptions are Representatives Brian Harrison and Erin Gamez, who only recently took office as a result of special elections.

"requests . . . sweeping in nature, covering every paper touching on any relationship between [the defendant] and [third-party subpoena recipient]" that "would have required extensive sifting and analysis by [subpoena recipient's] employees"); *Xcaliber Int'l Ltd. v. Ieyoub*, 2006 WL 3412265, at *3–4 (E.D. La. Nov. 27, 2006) (concluding that third-party subpoena ran afoul of state law and, in any event, was unduly burdensome). A subpoena can be directed only to someone with "possession, custody, or control" of the requested documents. Fed. R. Civ. P. 45(a)(1)(A)(iii). And "[t]he party seeking discovery bears the burden to show . . . possession, custody, or control." *St. Pierre v. Dearborn Nat'l Life Ins. Co.*, 2020 WL 6122555, at *4 (W.D. Tex. Apr. 14, 2020). In *Perez v. Perry*, too, the court affirmed the basic rule that there is no obligation to produce "documents that are not within [someone's] possession, custody or control," and ordered the United States to subpoena proper custodians. 2014 WL 1796661, at *2 (W.D. Tex. May 6, 2014).

What Texas has confirmed and clarified since *Perry* is that TLC does not "possess[], maintain[], or control[] the records." Tex. Gov't Code § 306.009(a)(1). Federal courts necessarily consider such state laws to determine whether a subpoena is proper. Mot. 7-8. The United States cites no authority to the contrary. For example, in *Tiffany* (Resp. 4), the court acknowledged that "legal and practical inability to obtain the requested documents from [a] non-party, including by reason of foreign law, may place the documents beyond the control of the [subpoenaed] party…." *Tiffany (NJ) LLC v. Qi*, 276 F.R.D. 143, 148 (S.D.N.Y. 2011). The United States also cites *Mir* (Resp. 4), where the subpoenaed document (the subpoena recipient's own social security disability benefits application) belonged to the subpoena recipient. *Mir v. L-3 Comms. Integrated Sys., L.P.*, 319 F.R.D. 220, 230-31 (N.D. Tex. 2016). The roles are opposite here, where TLC has no "legal right" to turn over the subpoenaed documents. *Resol. Tr. Corp. v. Deloitte & Touche*, 145 F.R.D. 108, 110 (D. Colo. 1992) (collecting cases).

The United States contends TLC has the "practical ability" to access the documents. Resp. 5. But access to a computer network is not synonymous with the "practical ability" to disclose others'

3

documents. "[M]ere access is not possession, custody, or control." *In re Grand Jury Subpoena*, 646 F.2d 963, 969 (5th Cir. 1981); *see In re Disposable Contact Lens Antitrust*, 329 F.R.D. 336, 430-31 (M.D. Fla. 2015) ("practical ability" is more than "the naked ability to 'access' information"); *see also* Mot. 7-8. Just as a plaintiff cannot deploy third-party subpoenas requiring subpoena recipients to forage for others' privileged or otherwise protected documents, the United States cannot subpoena TLC and bypass legislators and others here. *See, e.g.*, *Dotson v. Edmonson*, 2017 WL 4310676, at *5 (E.D. La. Sept. 28, 2017) ("Although the defendants can log onto their employer's website to obtain the documents, this does not necessarily mean that the documents are in their possession, custody, or control.").

### III.     The United States Cannot use a Third-Party Subpoena to Wage a Proxy Privilege Fight

The United States' privilege arguments ignore the fundamental problem here: by bypassing legislators and other officials to whom the subpoenaed documents belong, the subpoena leaves it to TLC to litigate legislators' and others' privileges and defenses on their behalf. That tack is little different than a plaintiff subpoenaing a law firm secretary, demanding that she produce documents accessible to her as a user of the firm's computer system, and obligating her to invoke (and litigate) applicable privileges on absent privilege holders' behalf, *supra*.

In these circumstances, courts must quash a third-party subpoena under Rule 45(d)(3)(iii). *See Nat'l W. Life Ins.*, 2010 WL 5174366, at *2, *4. The United States well knows that it has demanded privileged or other protected matter. TLC has already objected to the subpoena as demanding documents that are not TLC's to give and privileged documents. Movants, more than two dozen individual subpoena recipients, have likewise objected. *See* ECF 219-2. It defies basic discovery limitations, *supra*, to require more: that all legislators and officials—most of whom are strangers to this litigation by virtue of the United States' own subpoena strategy—now insert themselves to confirm that they are the custodians of their documents and they are the privilege holders. All legislators who took part in the redistricting process have already issued directives confirming both, *see* Ex. A. If the

4

United States believes that additional individual subpoenas are justified, then it must make the calculated decision to issue them. It cannot subpoena TLC for any and all documents in the Legislature's computer network, thereby offloading the burden to TLC to coordinate with (and litigate objections *in lieu* of) all 181 individual legislators and others.

Finally, the United States' dispute over the scope of applicable privileges is premature until the actual custodians of the documents are subpoenaed and, only then, if the United States is willing to attempt to compel production of privileged documents. In brief, the United States' preferred balancing test was created from whole-cloth by a New York district court, since repeated in various redistricting cases. Resp. 11 (citing cases quoting *Rodriguez v. Pataki*, 280 F. Supp. 2d 89 (S.D.N.Y. 2003)). As arguments here exemplify (Resp. 11), it is easily manipulated; it is a privilege-destroying test. It thwarts the Supreme Court's warning: "judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government" and any such inquiry "frequently will be barred by privilege." *Vill. of Arlington Heights v. MHDC*, 429 U.S. 252, 268 & n.18 (1977). Heeding that warning, courts have wisely respected legislative privilege and, in turn, safeguarded the legislative process.[3] There is no redistricting exception that would permit this Court to ignore applicable privileges here. *See, e.g.*, *Lee v. City of Los Angeles*, 908 F.3d 1175, 1187-88 (9th Cir. 2018) (rejecting redistricting "Plaintiffs['] call for a categorical exception whenever a constitutional claim directly implicates the government's intent," which "would render the privilege of little value.").

\*   \*   \*

Movants respectfully request an order quashing or modifying the TLC subpoena or alternatively a protective order prohibiting the United States from seeking documents belonging to legislators, legislators' offices, and other officials from TLC.

---

[3] *See, e.g.*, *In re Hubbard*, 803 F.3d 1298, 1307-08 (11th Cir. 2015) (quashing subpoenas for legislators' and Governor's documents); *Biblia Abierta v. Banks*, 129 F.3d 899, 905-06 (7th Cir. 1997) ("An inquiry into a legislator's motives for his actions, regardless of whether those reasons are proper or improper, is not an appropriate consideration for the court."); *accord Bogan v. Scott-Harris*, 523 U.S. 44, 54-55 (1998); *Tenney v. Brandhove*, 341 U.S. 367, 373-74 (1951).

5

| | |
|---|---|
| Date: April 21, 2022 | Respectfully submitted. |
| | |
| KEN PAXTON | /s/ Patrick K. Sweeten |
| Attorney General of Texas | PATRICK K. SWEETEN |
| | Deputy Attorney General for Special Litigation |
| BRENT WEBSTER | Tex. State Bar No. 00798537 |
| First Assistant Attorney General | |
| | WILLIAM T. THOMPSON |
| | Deputy Chief, Special Litigation Unit |
| | Tex. State Bar No. 24088531 |
| | |
| | JACK B. DISORBO |
| | Assistant Attorney General, Special Litigation Unit |
| | Tex. State Bar No. 24120804 |
| | |
| | OFFICE OF THE ATTORNEY GENERAL |
| | P.O. Box 12548 (MC-009) |
| | Austin, Texas 78711-2548 |
| | Tel.: (512) 463-2100 |
| | Fax: (512) 457-4410 |
| | patrick.sweeten@oag.texas.gov |
| | will.thompson@oag.texas.gov |
| | jack.disorbo@oag.texas.gov |

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on April 21, 2022, and that all counsel of record were served by CM/ECF.

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN