# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, <br><br>*Plaintiffs,* <br><br>v. <br><br>GREG ABBOTT, *et al.*, <br><br>*Defendants.* | § § § § § § § § § § § § § | Case No. 3:21-cv-00259 <br> [Lead Case] |
| UNITED STATES OF AMERICA, <br><br>*Plaintiff,* <br><br>v. <br><br>STATE OF TEXAS, *et al.*, <br><br>*Defendants.* | § § § § § § § § § § § § § | Case No. 3:21-cv-00299 <br> [Consolidated Case] |

**LEGISLATORS' MOTION TO QUASH OR MODIFY DEPOSITION SUBPOENAS AND MOTION FOR PROTECTIVE ORDER**

**INTRODUCTION**

The United States wants three sitting legislators to be its very first deponents. But legislators engaged "in the sphere of legitimate legislative activity" are protected "not only from the consequences of litigation's results but also from the burden of defending themselves." *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967) (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)). It is "not consonant with our scheme of government for a court to inquire into the motives of legislators." *Tenney*, 341 U.S. at 377. Redistricting cases are no exception. At the very least, the subpoenas to depose the legislators should be modified or a protective order entered that limits or stays the depositions. The United States' extraordinary discovery request also presents the opportunity for the Court to consider whether the subpoenas ought to be quashed altogether.

**BACKGROUND**

In December 2021, the U.S. Department of Justice sued to invalidate Texas's newly enacted state house and congressional redistricting plans. Its only claim is that the redistricting legislation violates Section 2 of the Voting Rights Act. *See* Compl. ¶¶161-67, *United States v. Texas*, No. 3:21-cv-299, ECF 1. The United States is pursuing extensive third-party discovery, issuing more than 25 third-party subpoenas to legislators, staff members, other officials, and the Texas Legislative Council for all redistricting-related documents. *See generally* Ex. A. to Mot. to Quash TLC Subpoena, *LULAC v. Abbott*, No. 3:21-cv-259, ECF 219-1.

The United States now wishes to depose three sitting legislators "on topics pertinent to the Voting Rights Act enforcement action [it] ha[s] brought against the 2021 Texas House Plan." *See* Ex. A at 7 (4/28/2022 email from D. Freeman); *see also* Ex. B (Rep. Guillen deposition subpoena); Ex. C (Rep. Landgraf deposition subpoena); Ex. D (Rep. Lujan deposition subpoena). The complaint alleges the house redistricting legislation "results in a denial or abridgment" of voting rights "on account of

1

race…." Compl. ¶166 (quoting 52 U.S.C. §10301(a)). The complaint specifically challenges the following house districts:

- **House District 118:** The United States alleges that the San Antonio-area district "eliminates Latino voters' opportunity to elect representatives of their choice," while averring that the Hispanic Citizen Voting Age Population (CVAP) of the district is between 56.4 and 57.5 percent. Compl. ¶¶104, 111. The United States complains that the district elected a Latino Republican in 2016 and 2021 special elections—Representative John Lujan—and he is "not the Latino candidate of choice." *Id.* ¶108. Representative Lujan is one of the three legislators whom the United States now wishes to depose. *See* Ex. D (subpoena).

- **House District 31:** The United States alleges the South Texas district "reduces Latino population share," while averring that the Hispanic CVAP of the district is between 64.5 and 66.6 percent. Compl. ¶¶117, 123. The complaint states that Latino voters have "reelected their preferred candidate by a comfortable margin" but complains that he has now "switched parties." *Id.* ¶¶117, 120. That incumbent is Representative Ryan Guillen, whom the United States now wishes to depose. *See* Ex. B (subpoena).

- **El Paso and West Texas House Districts:** The United States alleges that the 2021 redistricting legislation removed a Latino opportunity district from El Paso County (existing District 76), and overpopulated other El Paso-area districts (deviating from ideal by roughly 4.25 percent). Compl. ¶¶131, 139.

The complaint does not allege that invidious discriminatory intent motivated the house redistricting legislation; the complaint is based on effects alone. *Compare* Compl. ¶166 (house districts), *with id.* ¶¶164-65 (alleging impermissible legislative "purpose" and effect of congressional districts); Opp'n to Mot. to Quash TLC Subpoena, ECF 227 at 11-12 (distinguishing congressional districts claims).

Texas moved to dismiss the United States' complaint and later moved to stay this litigation pending the Supreme Court's decision in *Merrill v. Milligan*, No. 21-1086, and *Merrill v. Caster*, No. 21-1086. *See* ECF 111; ECF 241. The motion to dismiss, arguing that the complaint fails to state a Section 2 claim, is pending. The motion to stay, explaining that the Supreme Court will be considering anew what Section 2 requires of States in redistricting (and what the Equal Protection Clause prohibits),[1] has been denied. ECF 246.

---

[1] *See Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring in grant of stay); Merits Br. of Secretary Merrill, *Merrill v. Milligan*, No. 21-1086, bit.ly/39nC1Iy.

2

The United States now intends to subpoena Texas House Representatives Ryan Guillen, Brooks Landgraf, and John Lujan for depositions later this month—the first depositions that the United States seeks in this case. *See* Ex. B (noticing 5/19/2022 deposition for Rep. Guillen); Ex. C (noticing 5/24/2022 deposition for Rep. Landgraf); Ex. D (noticing 5/25/2022 deposition for Rep. Lujan). The legislators are not named defendants in any complaint, nor have they intervened. Their only connection to the litigation is as house members; two were in office when the State enacted the house redistricting legislation, while the third (Rep. Lujan) was not sworn into office until after the bill passed. The United States has already subpoenaed all redistricting-related documents from each of these representatives and two dozen other third parties. In response, subpoena recipients have produced non-privileged documents and invoked applicable privileges for others.

Counsel have met and conferred. The United States asserted that depositions could "encompass numerous matters over which"—according to counsel—"any common law state legislative privilege applicable in federal courts does not apply." Ex. A at 7 (4/28/2022 email from D. Freeman). Counsel later elaborated that it was entitled to depose the legislators about the *Gingles* standard,[2] including discussion of "population patterns, political behavior, the history of discrimination, socioeconomic disparities, campaign tactics, and other matters." *See* Ex. A at 1 (5/3/2022 email from D. Freeman). The legislators' counsel explained that there were alternative, less intrusive means for the United States to obtain whatever non-privileged, relevant material it believes it could obtain from deposing legislators. Ex. A at 8 (4/27/2022 email from P. Sweeten). In response, counsel for the United States said it was not open to alternatives at this time. *See* Ex. A at 2 (5/2/2022 email from W. Thompson).

---

[2] *See Thornburg v. Gingles*, 478 U.S. 30, 44-45 (1986) (discussing factors from 1982 Senate Report that "typically may be relevant to a §2 claim," though "neither comprehensive nor exclusive," including "history of voting-related discrimination," "racially polarized" voting, "exclusion of members of the minority group from candidate slating processes," or "the extent to which minority group members bear the effects of past discrimination in areas such as education, employment, and health, which hinder their ability to participate effectively in the political process," among others).

**ARGUMENT**

Legislative privilege and immunity safeguard the legislative process. They are safeguards older than the country itself. *See United States v. Johnson*, 383 U.S. 169, 178-82 (1966) (discussing history of English analog and importance of legislator independence). At the founding, legislative privilege and immunity were "deemed so essential" that these safeguards were "written into the Articles of Confederation and later into the Constitution." *Tenney*, 341 U.S. at 372. Still today, they protect legislators from inquiries about what motivated or informed their legislative acts, based on the elementary principle that it is "not consonant with our scheme of government for a court to inquire into the motives of legislators." *Id.* at 377; *see, e.g.*, *Biblia Abierta v. Banks*, 129 F.3d 899, 905 (7th Cir. 1997) ("An inquiry into a legislator's motives for his actions, regardless of whether those reasons are proper or improper, is not an appropriate consideration for the court."); *Lee v. City of Los Angeles*, 908 F.3d 1175, 1187-88 (9th Cir. 2018) (rejecting redistricting "Plaintiffs['] call for a categorical exception whenever a constitutional claim directly implicates the government's intent," which "would render the privilege 'of little value'" (quoting *Tenney*, 341 U.S. at 377)); *In re Hubbard*, 803 F.3d 1298, 1307-08, 1315 (11th Cir. 2015) (quashing subpoenas for legislators' documents); *Reeder v. Madigan*, 780 F.3d 799, 804 (7th Cir. 2015) (raising concerns that it would be "nearly impossible for a legislature to function" without privilege).

These protections are already well-known to this Court. Consistent with centuries of precedent, at the preliminary injunction stage, this Court already ruled that a legislator could testify about that "within the public record," but anything beyond the public record would require a waiver of legislative privilege. PI Tr. 152:1-5 (Vol. 5) ("Senator Huffman will be allowed to testify to everything within the public record; and if she goes outside the public record, she will waive her privilege."); *accord Tenney*, 341 U.S. at 373-77; *Dombrowski*, 387 U.S. at 85; *see also Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573-74 (2019) (refusing to permit extra-record discovery, including deposition, of Commerce Secretary after staying order compelling deposition, *In re Dep't of Commerce*, 139 S. Ct. 16 (2018)); *In re*

4

*Stone*, 986 F.2d 898, 904 (5th Cir. 1993) (explaining that officials "could never do their jobs" if subject to such discovery because they would be less willing to explore all options before them, lest they "be subpoenaed for every case involving their agency"). The Court prohibited plaintiffs from questioning the testifying senator about her mental impressions or opinions regarding legislation, or what otherwise motivated or informed her or others during the legislative process. *See, e.g.*, PI Tr. 152:2-7 (Vol. 6); PI Tr. 25:6-10 (Vol. 7); PI Tr. 29:6-20 (Vol. 7).

Applying those protections again here, movants request that this Court quash or modify the subpoenas to depose sitting legislators. And should any depositions proceed, movants request that this Court enter a protective order prohibiting the United States from deposing legislators about privileged matters, including matters beyond the public record. Relatedly, movants request an administrative stay to postpone the depositions until this Court resolves this motion.

**I.     At the very least, an order modifying the subpoenas or a protective order is warranted.**

There is good reason to quash the subpoenas altogether, *infra* Part II. The United States has not been able to articulate any relevant, non-privileged information that it expects to obtain from the legislators' depositions that could warrant such intrusive and comity-frustrating discovery. Whatever "numerous matters" the United States envisions it could explore by deposing legislators, those matters are either privileged or discoverable through less intrusive means. At the very least, and in light of the obvious legislative immunity and privilege concerns raised by such depositions, the legislators request that the subpoenas be modified or a protective order issued as follows.

**A.** The legislators request that the Court require the United States to first exhaust less intrusive means to discover whatever it is that the United States hopes to discover regarding the house redistricting legislation before resorting to "extraordinary" depositions of legislators. *Vill. of Arlington Heights v. MHDC*, 429 U.S. 252, 268 & n.18 (1977). An extensive public record regarding the house

5

redistricting legislation and the resulting boundaries are readily available to all parties.[3] At this stage of the proceedings, it is implausible that it is necessary to depose Representatives Guillen, Landgraf, and Lujan (and presumably others to come) to answer questions to confirm that the public record says what the public record says.

Exhausting alternative means of discovery is especially warranted in light of counsel's stated purpose for the legislators' depositions. Counsel intends to depose the legislators regarding the house redistricting legislation. *See* Ex. A at 7 (4/28/2022 email from D. Freeman). The United States' allegations regarding that legislation are focused on effects (or "results" alone); the United States does not allege that the legislation was imbued with improper purpose. *See* Compl. ¶166; Ex. A at 4 (5/2/2022 email from D. Freeman) (describing "results claims"); ECF 227 at 10-11 (distinguishing intent-based claims for congressional districts). As pled, the legality of those districts will be largely left to expert opinion about their so-called "effects," to the extent relevant under the Voting Rights Act. There is no utility at this stage of the proceedings to depose sitting legislators about such results-based claims. *See, e.g., Am. Trucking Ass'n, Inc. v. Alviti*, 14 F.4th 76, 88-90 (1st Cir. 2021) (quashing subpoenas to depose state lawmakers because Dormant Commerce Clause claim was predominantly focused on effect of state law, not purpose). The United States has not and likely cannot articulate why already-

---

[3] *See, e.g.,* TX HB1, Texas Legislature Online, capitol.texas.gov/BillLookup/History.aspx?LegSess=873&Bill=HB1 (containing bill history for passage of Texas house districts, including committee report and relevant house journal excerpts); "Texas Redistricting," redistricting.capitol.texas.gov/ (landing page for redistricting materials, including redistricting process and recordings of and notices for all redistricting hearings); "DistrictViewer," dvr.capitol.texas.gov/ (containing more than 100 plans for house and congressional districts, publicly introduced or submitted by legislators or members of the public throughout the legislative process); "Capitol Data Portal," data.capitol.texas.gov/ (containing redistricting datasets, including datasets for enacted plans and proposed alternatives); Texas House Journal, journals.house.texas.gov/hjrnl/home.htm (record of events occurring in the Texas House); Texas House Redistricting Committee, house.texas.gov/committees/committee/?committee=C080 (committee webpage containing various public materials).

issued document subpoenas, an extensive public record, and forthcoming expert discovery are insufficient for such claims.

Deposing a legislator would be "extraordinary" in any case and ordinarily barred by legislative privilege. *Arlington Heights*, 429 U.S. at 268 & n.18. It is all the more extraordinary for the United States to demand the depositions of three legislators as its opening foray here. To the extent plaintiffs deem it necessary to further discuss that which is in the public record or to seek other non-privileged information, the United States can do so in ways far less intrusive than deposing a legislator. *See, e.g.*, *In re Perry*, 60 S.W.3d 857, 861-62 (Tex. 2001) (relying on *Arlington Heights* for admonition that "all other available evidentiary sources must first be exhausted before extraordinary circumstances will be considered"); *Austin Lifecare, Inc. v. City of Austin*, 2012 WL 12850268 (W.D. Tex. Mar. 20, 2012) (quashing deposition notices based, in part, on finding that "Plaintiffs have alternative methods for discovering the information they seek," including the public record); *Harding v. Dallas*, 2016 WL 7426127, at *8-9 (N.D. Tex. Dec. 23, 2016) (finding no extraordinary circumstances warranted deposing county redistricting commissioners); *see also In re F.D.I.C.*, 58 F.3d 1055, 1060 (5th Cir. 1995) ("exceptional circumstances must exist before the involuntary depositions of high agency officials" (quotation marks omitted)). At this stage, the burdens of deposing legislators well outweigh any conceivable benefit to be gained by questions regarding the already-public record, the *Gingles* standard, or whatever other unenumerated non-privileged matters the United States intends to cover in a deposition.

**B.** The legislators further request that any legislative depositions be stayed until the Court decides Defendants' pending motion to dismiss the United States' complaint, which could affect the permissible scope of any depositions. *Cf. Hubbard*, 803 F.3d at 1304 (holding motions to quash in abeyance until motion to dismiss decided); *see also Bickford v. Boerne Indep. Sch. Dist.*, 2016 WL 1430063, at *1 (W.D. Tex. Apr. 8, 2016) (staying discovery pending the disposition of the motion to dismiss under the trial court's "broad discretion and inherent power to stay discovery until preliminary

7

question that may dispose of the case are determined"). The motion argues that that the United States has failed to state any Voting Rights Act claim regarding the house redistricting legislation, ECF 111 at 18-24—the intended topic of discussion at depositions, Ex. A at 4, 7 (4/28/2022 and 5/2/2022 emails from D. Freeman). If granted in whole or in part, the United States' asserted basis for deposing the legislators disappears in whole or in part.

**C.** Relatedly, especially in light of counsel's assertion that depositions are warranted to ask legislators about the Supreme Court's complex *Gingles* standard, Ex. A at 1-2, the legislators request that the Court stay or limit any depositions of legislators pending the Supreme Court's decisions in *Merrill v. Milligan*, No. 21-1086, and *Merrill v. Caster*, No. 21-1087. Even though these cases will not be stayed altogether pending *Merrill*, the more specific question remains: should depositions of legislators in particular be permitted pending *Merrill*? It would be unusual to depose a legislator about *Gingles* in the ordinary case given that expert witnesses are typically deployed for such a task.[4] It is all the more unusual to depose a legislator about *Gingles* now given that the Supreme Court is considering when and how *Gingles* applies to cases involving single-member districts in a way that is consistent with the statutorily required showing that districts are "not equally open" based on the "totality of circumstances." 52 U.S.C. §10301(b). Further confirmed by Alabama's merits brief filed last week, the pendency of *Merrill* sows further doubt about what possible relevance, if any, legislators' depositions about the house districts could serve here. *See generally* Br. of Secretary Merrill at 42-52, 71-80, *Merrill v. Milligan*, No. 21-1086, bit.ly/39nC1Iy (interpreting statutory "totality of circumstances" terminology, arguing for clarification of *Gingles*, proposing race-neutrality as the §2 benchmark, and arguing in the alternative that §2 does not apply to single-member districts).

---

[4] *See, e.g.*, *Rose v. Raffensperger*, 2022 WL 205674, at *11 (N.D. Ga. Jan. 24, 2022) (discussing use of *Gingles* expert testimony in challenge to statewide election procedure).

In short, there is a substantial risk that deposing legislators now will prove itself to have been completely unnecessary after *Merrill*. Alternatively, there is substantial risk that deposing legislators now will not be the last of it, should the Supreme Court clarify §2 in such a way that the United States demands to depose legislators yet again in light of *Merrill*. Either way, such depositions would be premature and unduly burdensome at this time. *See, e.g.*, *Whitford v. Vos*, 2019 WL 4571109 (7th Cir. July 11, 2019) (staying deposition of Speaker of Wisconsin Assembly pending *Rucho v. Common Cause*, 139 S. Ct. 2484 (2019), and then vacating district court's order compelling deposition in light of *Rucho*); *see also, e.g.*, Order, *Thomas v. Merrill*, 2:21-cv-1531 (N.D. Ala. Mar. 21, 2022), ECF 61 (staying VRA challenge to state-level districts pending *Merrill*).

**D.** In the alternative, if any depositions are to proceed, the legislators request a protective order limiting depositions to inquiring about non-privileged information within the public record. That limitation abides by this Court's prior ruling. *See* PI Tr. 152:1-5 (Vol. 5). As discussed throughout this motion, that ruling is consistent with binding precedent; civil discovery cannot probe the minds of legislators, their staff, or others acting in a legislative function about their legislative acts. *See infra* Part II.B. To the extent the "numerous matters" that the United States would like to discuss would in fact implicate privileged information, *see* Ex. A at 7 (4/28/2022 email from D. Freeman), the legislators request a protective order prohibiting such inquiries. And should the United States pursue such an inquiry anyway, the legislators request that the protective order confirm that deponents may invoke privilege and choose not to answer, after which the United States can decide whether to raise its disagreement about the scope of the privilege in a motion to compel. *Accord Perez v. Perry*, 2014 WL 106927, *3 (W.D. Tex. Jan. 8, 2014).

Relatedly, to the extent those "numerous matters" would include questioning Representative Guillen about the United States' allegation that he "switched parties," Compl. ¶117,[5] movants request a protective order excluding any such questions. In addition to implicating legislative and First Amendment privileges,[6] such an inquiry is irrelevant to the United States' §2 claim. Section 2 is about voting rights denied or abridged "on account of race," not politics. 52 U.S.C. §10301(a). Claims fail when the "animating issue … is partisan, not racial." *LULAC v. Abbott*, 369 F. Supp. 3d 768, 786 (W.D. Tex. 2019) (relying upon *Whitcomb v. Chavis*, 403 U.S. 124 (1971), and *LULAC v. Clements*, 999 F.2d 831 (5th Cir. 1993)), *aff'd*, 951 F.3d 311 (5th Cir. 2020). "Section 2 is a balm for racial minorities, not political ones—even though the two often coincide." *Clements*, 999 F.2d at 853-54. It "does not guarantee that nominees of the Democratic Party will be elected, even if [minority] voters are likely to favor that party's candidates. Rather, §2 is implicated only where Democrats lose because they are black, not where blacks lose because they are Democrats." *Id.*

## II. Legislators cannot be called to testify about legislative acts absent extraordinary circumstances.

In light of Supreme Court precedent and recent decisions by other courts applying that precedent, there is good reason to quash the subpoenas altogether.

---

[5] Representative Guillen currently represents House District 31, where Latino voters have repeatedly elected Representative Guillen as their candidate of choice, by the United States' own admission. Compl. ¶117. The United States' qualm is that Representative Guillen has "switched parties." *Id.*

[6] Such questions chill protected First Amendment conduct. For example, in *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010), the Ninth Circuit issued a writ of mandamus to prohibit subpoenas for defendant-intervenors' internal campaign communications. The Ninth Circuit explained that because such discovery could chill the First Amendment right to associate, the information must meet "a more demanding standard"—it must be "highly relevant" to the claims, "carefully tailored to avoid unnecessary interference with protected activities," and "otherwise unavailable." *Id.* at 1161; *accord In re Motor Fuel Temperature Sales Pracs. Litig.*, 641 F.3d 470, 481 (10th Cir. 2011) (prohibiting discovery of lobbying communications). Here, political association should have no relevance; and even if it could be conceivably relevant, deposing a third-party legislator is a most extraordinary first step in seeking such discovery.

### A. Subpoenas compelling sitting legislators' testimony should be quashed based on legislative immunity and privilege.

**1.** State legislators are absolutely immune from civil suit. *Tenney*, 341 U.S. at 376-77; *see Bogan v. Scott-Harris*, 523 U.S. 44, 46 (1998) ("It is well established that federal, state, and regional legislators are entitled to absolute immunity from civil liability for their legislative activities."); *Sup. Ct. of Va. v. Consumers Union of the U.S., Inc.*, 446 U.S. 719, 731-34 (1980) (same). That immunity protects legislators "not only from the consequences of litigation's results but also from the burden of defending themselves." *Dombrowski*, 387 U.S. at 85. It "provides legislators with the breathing room necessary to make these choices in the public's interest" and "reinforc[ing] representative democracy" by "allow[ing] them to focus on their public duties by removing the costs and distractions attending lawsuits" and "shield[ing] them from political wars of attrition in which their opponents try to defeat them through litigation rather than at the ballot box." *E.E.O.C. v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 181 (4th Cir. 2011). Thus, a state legislator acting within the sphere of legitimate legislative activity may not be required to testify, "whether or not legislators themselves have been sued." *Hubbard*, 803 F.3d at 1308; *see Wash. Suburban Sanitary Comm'n*, 631 F.3d at 181 ("Legislative privilege against compulsory evidentiary process exists to safeguard this legislative immunity and to further encourage the republican values it promotes…. Because litigation's costs do not fall on named parties alone, this privilege applies whether or not the legislators themselves have been sued.").

Accordingly, courts have deemed state legislators absolutely immune from testifying about their legislative acts, including in depositions. And redistricting disputes are no exception. *See, e.g., Lee*, 908 F.3d at 1186-87 (barring depositions of legislative actors in redistricting-related Equal Protection Clause case); *In re Perry*, 60 S.W.3d at 860-62 (canvassing state and federal law, explaining that "courts have affirmed that the doctrine generally shields legislative actors not only from liability, but also from being called to testify about their legislative activities," and concluding that it was an abuse of discretion to deny motion to quash depositions of redistricting board members); *Marylanders for Fair*

11

*Representation v. Schaefer*, 144 F.R.D. 292, 299 (D. Md. 1992) (finding "[w]ithout question" that Maryland House and Senate were "acting 'within the sphere of legitimate legislative activity' in failing to enact an alternative redistricting plan" such that legislators "deserve all of the protection the *Tenney* court extended to them" and "entirely barr[ing]" "*any* inquiry"); *see also, e.g.*, *Bagley v. Blagojevich*, 646 F.3d 378, 396-97 (7th Cir. 2011) (finding governor acted in legislative capacity and barring deposition); *M Sec. & Invs., Inc. v. Miami-Dade Cnty.*, 2001 WL 1685515, at *1-2 (S.D. Fla. Aug. 14, 2001) (quashing deposition subpoena of local legislator in Equal Protection Clause case). Here too, there is no basis for demanding that third-party legislators bear that burden of defending themselves in such depositions, *see Dombrowski*, 387 U.S. at 85, especially when plaintiffs haven't even attempted to get relevant, non-privileged discovery through other means, *supra.*

**2.** For the same reasons, legislative privilege, springing from legislative immunity, also counsels in favor of quashing the subpoenas. "[J]udicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government" and will be "frequently barred by privilege" except for "extraordinary circumstances." *Arlington Heights*, 429 U.S. at 268 & n.18. That privilege applies with "full force" even in cases where legislators' motives are at the "factual heart" of plaintiffs' claims. *Hubbard*, 803 F.3d at 1310-11.

Applied here, even if the Court finds that third-party legislators are not altogether immune from the deposition subpoenas, the subpoenas should be quashed as overly burdensome and for targeting privileged or protected information.[7] Any conceivable benefit of deposing the legislators cannot

---

[7] Counsel for the United States has stated that he does "not intend to delve into matters covered by *bona fide* assertions of legislative privilege," Ex. A at 4 (5/2/2022 email from D. Freeman), and that there are "numerous matters over which any common law state legislative privilege applicable in federal courts does not apply," *id.* at 7 (4/28/2022 email from D. Freeman). That beggars belief. The United States has chosen three legislators to be its first deponents; its complaint challenges legislation; and it intends to ask the legislators about that legislation. In all events, the United States' most recently filed brief on related privilege issues reveals that its view on "*bona fide* assertions of legislative privilege" is out-of-step with binding Supreme Court precedent, *infra* Part II.B.

12

outweigh the burdens of deposing them *See* Fed. R. Civ. P. 45(d)(1); Fed. R. Civ. P. 26(c)(1) (court may "issue an order to protect … [a] person from annoyance, embarrassment, oppression, or undue burden or expense"); *see, e.g.*, *W. Life Ins. v. W. Nat'l Life Ins.*, 2010 WL 5174366, at *2-4 (W.D. Tex. Dec. 13, 2010); *RE/MAX Int'l, Inc. v. Century 21 Real Estate Corp.*, 846 F. Supp. 910, 912 (D. Colo. 1994). Any relevant testimony will be privileged or available from other sources, making the deposition an unduly burdensome exercise poised to harass state legislators.

### B. There is no bespoke test for legislative privilege in voting rights cases.

The legislators anticipate that the United States will argue that legislative privilege is so qualified that Voting Rights Act plaintiffs are free to depose sitting state legislators with few, if any, limitations. While federal courts have stated that legislative privilege is qualified in some circumstances, *Jefferson Cmty. Health Care Ctrs Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 624 (5th Cir. 2017), there is no basis for whittling the privilege down to nonexistent in redistricting cases.

The origins for qualifying legislative privilege are the Supreme Court's decision in *United States v. Gillock*, 445 U.S. 360 (1980), and other criminal cases. *See, e.g.*, *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 94 (S.D.N.Y. 2003) (relying on application of privilege in criminal case of *Trammel v. United States*, 445 U.S. 40, 51 (1980)). On its own terms, *Gillock* qualified legislative immunity and privilege for *federal criminal prosecutions*, not civil cases such as this one. 445 U.S. at 474; *accord Gravel v. United States*, 408 U.S. 606, 627 (1972) ("[W]e cannot carry a judicially fashioned privilege so far as to immunize *criminal conduct* proscribed by an Act of Congress or to frustrate the grand jury's inquiry into whether publication of these classified documents violated a *federal criminal statute*." (emphasis added)); *Trammel*, 445 U.S. at 51 (qualifying spousal privilege in federal criminal prosecution); *In re Grand Jury*, 821 F.2d 946, 948 (3d Cir. 1987) (federal criminal grand jury investigation). *Gillock* itself distinguished criminal cases from civil cases: "in protecting the independence of state legislators, *Tenney* and subsequent cases on official immunity have drawn the line *at civil actions*." 445 U.S. at 373 (emphasis added). Whatever

13

important federal interests might justify a more qualified privilege in the enforcement of "criminal statutes," *id.*, they are absent here in this civil action.

But already in this litigation, the United States has transported the Supreme Court's qualification of legislative privilege in criminal matters to this civil matter—endorsing a multi-factor balancing test first deployed by a New York district court in a redistricting dispute. *See* ECF 227 at 10-11 (citing *Rodriguez*, 280 F. Supp. 2d 89). To decide whether privilege applies, that test balances "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable" in deciding whether privilege applies. *Id.*[8] It bears little resemblance to binding Supreme Court precedent regarding the scope of legislative immunity and privilege in civil cases, and applying it here to *abrogate* legislative privilege would be serious error.

**1.** As an initial matter, such a balancing test was not initially conceived as basis for *deposing* a sitting legislator who is a third-party to litigation. In *Rodriguez* itself, the court emphasized that plaintiffs were "*not* seeking any depositions of legislators or their staffs." 280 F. Supp. 2d at 96 (emphasis added). *Rodriguez* and other cases initially applying it involved document discovery. And even then, the privilege largely held. *See, e.g.*, *Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, 2011 WL 4837508, at *10-11 (N.D. Ill. Oct. 12, 2011) (refusing to compel privileged documents "concerning the motives, objectives, plans, reports and/or procedures used by lawmakers" or "the identities of persons who participated in decisions regarding the [challenged] Map"); *Rodriguez*, 280 F. Supp. 2d at 103 (denying

---

[8] *Jefferson Community Health Care Centers*, 849 F.3d at 624, *Veasey v. Perry*, 2014 WL 1340077, at *1 n.3 (S.D. Tex. Apr. 3, 2014), and *Perez*, 2014 WL 106927 at *2, cited *Rodriguez* favorably. *Jefferson Community* cited *Rodriguez* in dictum that privileges are not absolute. *Veasey* did not involve redistricting. Discussed *infra*, *Perez* did involve redistricting and applied *Rodriguez* to conclude that the case did not justify "discarding the privilege"—meaning a legislator's testimony could not be compelled. *Perez*, No. 5:11-cv-360 (W.D. Tex. July 11, 2014), ECF 1138 at 1-2.

14

motion to compel privileged documents "to the extent that the plaintiffs seek information concerning the actual deliberations of the Legislature—or individual legislators—which took place outside [the citizen-legislator redistricting committee]"); *Hall v. Louisiana*, 2014 WL 1652791, at *12 (M.D. La. Apr. 23, 2014) (applying *Rodriguez* but quashing legislator deposition subpoenas). It would be especially inappropriate to apply *Rodriguez* in this case to compel the *depositions* of legislators, when plaintiffs have already sought substantial document discovery from such legislators and when the United States has not otherwise explored alternative, less intrusive, less extraordinary discovery.

**2.** Lessons learned since last decennial's *Perez v. Perry* litigation are also instructive. The court cited *Rodriguez* in a dispute over legislative depositions. 2014 WL 106927 at *2.[9] The court's protocol was to permit deponents to "choose not to answer specific questions, citing the privilege," after which plaintiffs could choose to file a motion to compel. *Id.* at *3. Plaintiffs later filed a motion to compel one legislator's testimony, and the court applied *Rodriguez* as a *shield* the privileged testimony, not as a *sword* to require it. *See Perez*, No. 5:11-cv-360 (W.D. Tex.), ECF 1138 at 1-2.

Since *Perez*, courts have continued to limit legislative discovery, including in redistricting cases. In *Lee*, relying on the Supreme Court's decision in *Tenney*, the Ninth Circuit affirmed an order barring depositions of public officials acting in a legislative capacity, even though plaintiffs' claims were intent-based claims that race predominated in redistricting. 908 F.3d at 1187. Similarly, the Eleventh Circuit in *Hubbard* ordered a district court to quash subpoenas for legislators' documents relating to the passage of legislation, even though plaintiffs' claims were intent-based claims that the legislation was retaliatory. 803 F.3d at 1302-03, 1315. The Eleventh Circuit stated that privilege applied with "full

---

[9] Initially in *Perez*, the privilege dispute involved subpoenas for four legislative staff members. *Perez*, No. 5:11-cv-360 (W.D. Tex.), ECF 62 at 2 n.1. Defendants requested a protective order but did not ask to quash the depositions. *Id.* at 7. Opposing any protective order, plaintiffs endorsed *Rodriguez*'s balancing test, *e.g. id.*, ECF 87 at 6-7, and Defendants' later motion for reconsideration did not challenge the application of *Rodriguez*, *id.*, ECF 930.

15

force against requests for information about the motives for legislative votes and legislative enactments," even if such information was at the heart of plaintiffs' claim. *Id.* at 1310-11. The court refused to require "the lawmakers to peruse the subpoenaed documents, to specifically designate and describe which documents were covered by the legislative privilege, or to explain why the privilege applied to those documents" and ordered that the motion to quash be granted on remand. *Id.* at 1311, 1315; *see also, e.g., Am. Trucking*, 14 F.4th at 89-90 (quashing legislator depositions). More recently in the census litigation, the Supreme Court refused to permit discovery beyond the administrative record, akin to the public record here, including refusing plaintiffs' request to depose the Secretary of Commerce. *See Dep't of Commerce*, 139 S. Ct. at 2573-74; *In re Dep't of Commerce*, 139 S. Ct. at 16-17. Finally, even though intent was at the heart of plaintiffs' claims in the *Gill v. Whitford* partisan gerrymandering litigation, the Seventh Circuit stayed and ultimately vacated an order compelling the deposition of the Speaker of the Wisconsin Assembly. *See Whitford*, 2019 WL 4571109 at *1.

The court in *Perez* ultimately concluded that redistricting claims were not a basis for ignoring legislative privilege. Other courts have since refused to permit plaintiffs to depose legislators. Here too, there is no basis for requiring legislators' depositions at this time.

**3.** Most fundamentally, any bespoke test curtailing legislative privilege in Voting Rights Act cases is at odds with binding precedent, *supra*. And to what end? The United States does not allege that the house redistricting legislation was imbued with any improper purpose. And even if it had, the Supreme Court has repeatedly held that, as a "principle of constitutional law," courts cannot "strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive." *United States v. O'Brien*, 391 U.S. 367, 383 (1968). That is so even in cases turning on legislative purpose. *Id.* at 382-83 (rejecting that three Congressmen's statements in the legislative history established illicit congressional purpose). It is a "fundamental principle" that courts may not "void a statute that is, under well-settled criteria, constitutional on its face, on the basis of what fewer than a handful of

16

Congressmen said about it." *Id.* at 383-84; *see Arizona v. California*, 283 U.S. 423, 455 (1931) ("Into the motives which induced members of Congress to enact the [statute], this court may not inquire."); *Palmer v. Thompson*, 403 U.S. 217, 224 (1971) ("[N]o case in this Court has held that a legislative act may violate equal protection solely because of the motivations of the men who voted for it."); *Am. Trucking*, 14 F.4th at 90 (quashing depositions and describing "inherent challenges of using [deposition] evidence of individual lawmakers' motives to establish that the legislature as a whole enacted [law] with any particular purpose"). Why? Because the Supreme Court has insisted that courts presume legislatures act with good intent and afford them a presumption of legislative good faith including in redistricting disputes. *See Miller v. Johnson*, 515 U.S. 900, 915 (1995). The same rules apply in Voting Rights Act cases. *Id.*; *see Abbott v. Perez*, 138 S. Ct. 2305, 2324-25 (2018) (presumption "not changed by a finding of past discrimination"); *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2350 (2021) (legislators are not agents of one another; rather, each has "a duty to exercise their judgment and to represent their constituents. It is insulting to suggest that they are mere dupes or tools").

## CONCLUSION

For the foregoing reasons, the legislators respectfully request that the Court stay the depositions until it resolves this motion. The legislators further request an order quashing or modifying the subpoenas. In the alternative, movants respectfully request a protective order prohibiting the depositions from probing the minds of legislators on privileged matters, including matters beyond the public record.

17

| | |
|---|---|
| Date: May 4, 2022 | Respectfully submitted, |
| | |
| | /s/ *J. Michael Connolly* |
| Adam K. Mortara* | J. Michael Connolly |
| LAWFAIR LLC | Taylor A.R. Meehan* |
| 125 South Wacker, Suite 300 | Frank H. Chang* |
| Chicago, IL 60606 | Jeffrey S. Hetzel* |
| Tel: (773) 750-7154 | CONSOVOY MCCARTHY PLLC |
| mortara@lawfairllc.com | 1600 Wilson Blvd., Suite 700 |
| | Arlington, VA 22209 |
| | Tel: (703) 243-9423 |
| | mike@consovoymccarthy.com |
| | taylor@consovoymccarthy.com |
| | frank@consovoymccarthy.com |
| | jhetzel@consovoymccarthy.com |
| | |
| | *Counsel for Reps. Guillen, Landgraf, and Lujan* |
| | |
| | *Pro hace vice motions pending |
| | |
| | /s/ *Patrick K. Sweeten* |
| KEN PAXTON | PATRICK K. SWEETEN |
| Attorney General of Texas | Deputy Attorney General for Special Litigation |
| | Tex. State Bar No. 00798537 |
| BRENT WEBSTER | |
| First Assistant Attorney General | WILLIAM T. THOMPSON |
| | Deputy Chief, Special Litigation Unit |
| | Tex. State Bar No. 24088531 |
| | |
| | JACK B. DISORBO |
| | Assistant Attorney General, Special Litigation Unit |
| | Tex. State Bar No. 24120804 |
| | |
| | OFFICE OF THE ATTORNEY GENERAL |
| | |
| | P.O. Box 12548 (MC-009) |
| | Austin, Texas 78711-2548 |
| | Tel.: (512) 463-2100 |
| | Fax: (512) 457-4410 |
| | patrick.sweeten@oag.texas.gov |
| | will.thompson@oag.texas.gov |
| | jack.disorbo@oag.texas.gov |
| | |
| | *Counsel for Reps. Guillen, Landgraf, and Lujan*<br>  *and Defendants* |

## CERTIFICATE OF CONFERENCE

I certify that counsel conferred with counsel for the United States regarding the subject of this motion. Counsel for the United States indicated it opposed any motion to quash or modify the subpoena, which confirms opposition to the relief sought here.

/s/ J. Michael Connolly
J. MICHAEL CONNOLLY

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on May 4, 2022, and that all counsel of record were served by CM/ECF.

/s/ J. Michael Connolly
J. MICHAEL CONNOLLY