# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, | § § § § | |
| *Plaintiffs*, | § § | Case No. 3:21-cv-259 |
| v. | § § | [Lead Case] |
| GREG ABBOTT, *et al.*, | § § § | |
| *Defendants*. | § | |
| TREY MARTINEZ FISCHER, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Case No. 3:21-cv-306 |
| | § § | [Consolidated Case] |
| GREG ABBOTT, *et al.*, | § § § | |
| *Defendants*. | § | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF TREY MARTINEZ FISCHER'S FIRST AMENDED COMPLAINT**

TABLE OF CONTENTS

Table of Contents ...........................................................................................................................i

Introduction..................................................................................................................................1

Argument .....................................................................................................................................1

    I.   Plaintiff All But Concedes That the Third *Gingles* Precondition Is Not Met..............................1

    II.  Plaintiff Has Not Satisfied the Second *Gingles* Precondition Either.............................................3

    III. Plaintiff Has Not Alleged a Racial-Gerrymandering Claim ............................................4

    IV. The Law-of-the-Case Doctrine Does Not Bar This Court From Holding That Section 2 Creates No Private Right of Action ...................................................................6

Conclusion....................................................................................................................................7

Certificate of Service....................................................................................................................8

**INTRODUCTION**

Despite there being no cohesive white majority in CD 35, this amended complaint alleges that CD 35 could have been drawn to ensure that a Latino plurality was instead a Latino majority. That is simply not what the law requires. Furthermore, Plaintiff Trey Martinez Fischer's opposition to the motion to dismiss fails to remedy the host of other deficiencies in his complaint. For these reasons, the Court should grant Defendants' motion and dismiss his complaint.

**ARGUMENT**

**I.      Plaintiff All But Concedes That the Third *Gingles* Precondition Is Not Met**

The *Gingles* test governs both the motion-to-dismiss and evidentiary stages of a VRA lawsuit. *See Thornburgh v. Gingles*, 478 U.S. 30, 50–51 (1986). If a plaintiff fails to satisfactorily allege all three of the *Gingles* preconditions, then his claim fails as a matter of law. *See, e.g.*, *Magnolia Bar Ass'n, Inc. v. Lee*, 884 F.2d 1143, 1151 (5th Cir. 1993) (affirming dismissal due to failure to satisfy *Gingles* preconditions). Most decisive here, the third *Gingles* precondition requires a plaintiff "to demonstrate that the ***white majority***" votes cohesively. *Id.* (emphasis added).

Plaintiff complains that "defendants cite no law or jurisprudence for th[e] extraordinary claim" that there must be a white majority. ECF 260 at 9. Untrue. Defendants repeatedly quoted the Supreme Court's decision in *Gingles* itself. *See, e.g.*, ECF 233 at 4. And lower courts also characterize the third precondition as requiring that there be a white majority. *See, e.g.*, *League of United Latin Am. Citizens v. Abbott*, 369 F. Supp. 3d 768, (W.D. Tex. 2019) (granting a motion to dismiss and noting that "*Gingles* requires that Plaintiffs . . . show . . . 'the white majority votes sufficiently as a bloc'" (quoting *Gingles*)); *Harris v. City of Texarkana*, No. 4:11–cv–4124, 2015 WL 128576, at *6 (W.D. Ark. Jan. 9, 2015) ("Plaintiff has also failed to satisfy the third *Gingles* precondition—that there is a white majority in the geographically relevant area that votes sufficiently as a bloc . . . .").

Plaintiff has failed to adequately allege the existence of a white majority. *See generally* ECF 233.

And Plaintiff's opposition sweeps this deficiency under the rug. Discussing the first and second *Gingles* preconditions, Plaintiff begins by quoting the Supreme Court's opinion, *see* ECF 260 at 4, 6; yet for the third *Gingles* precondition, Plaintiff mysteriously neglects to quote *Gingles*. That is because *Gingles* expressly requires that there be a "white majority" that votes cohesively such that it "usually [can] defeat the minority's preferred candidate." 478 U.S. at 51. Here, there is no white majority, and Plaintiff's complaint alleges no white majority. *See generally* ECF 233. Indeed, for CD 35, the white CVAP is merely 33.9%, whereas the Hispanic CVAP is 48.0%. *See* ECF 233 at 5 & n.2. For this reason alone, the Court must dismiss Plaintiff's claims.

Even if Plaintiff had alleged a white majority, he still has not sufficiently alleged that the white majority votes cohesively. "[P]laintiff has alleged . . . that Latinos and Anglos vote dissimilarly in general and primary election [*sic*]." ECF 260 at 9. That is not the inquiry. The third *Gingles* precondition does not require alleging that Latinos and whites vote dissimilarly. For example, Latinos could vote uniformly (satisfying the second *Gingles* precondition); while whites do ***not*** vote cohesively at all (thus failing the third *Gingles* precondition). Under Plaintiff's conception of *Gingles*, this would satisfy the preconditions. Yet the Supreme Court's formulation of the test in *Gingles* is different. There are three separate and distinct preconditions:

> ***First***—whether there is a minority group that is big enough to constitute a majority if the district lines were redrawn;
>
> ***Second***—whether that minority group votes cohesively; and
>
> ***Third***—whether there exists a white majority that votes cohesively against the minority-preferred candidates.

*See* 478 U.S. at 50–51. Plaintiff has improperly merged the second and third *Gingles* preconditions. Furthermore, Plaintiff's allegations "that CD 35 is no longer a Latino opportunity district" and that "there is enough Latino population throughout Central Texas to create another mandatory Section 2 district" have nothing to do with the third *Gingles* precondition. *See* ECF 260 at 9. What is more,

2

Plaintiff cites no cases defining, or explaining the significance of, the terms "Latino opportunity district" and "mandatory Section 2 district"—terms that appear nowhere within the case law.

Finally, Plaintiff argues that he has met his burden under the third *Gingles* prong because a "complaint . . . does not need detailed factual allegations." ECF 260 at 10. Plaintiff insists that he has "cite[d] EI and OLS analyses based, in part, on [] data that show that in central Texas and in CD 35, elections are racially polarized." ECF 260 at 10. And he insists that he has "offer[ed] specific VTD analyses with regression analyses and the most recent, relevant election outcome for the challenged district." ECF 260 at 10.

Both contentions are wrong. Plaintiff has not cited EI and OLS studies; nor has he identified specific VTD analyses. Plaintiff has merely argued that such studies would show racial polarization. ECF 217 ¶¶ 81–92. Plaintiff does not even argue that whites vote so cohesively that they usually can defeat the minority's preferred candidate; instead, Plaintiff merely argues that whites in CD 35 are "moderately cohesive." ECF 217 ¶ 83. And even if Plaintiff had actually identified studies showing racial polarization, he would have still needed to allege the existence of a white majority. He has not. Therefore, his claims fail as a matter of law.

**II.     Plaintiff Has Not Satisfied the Second *Gingles* Precondition Either**

Plaintiff maintains that his complaint need only "give ample notice to the defendants about pursued claims." ECF 260 at 6. But a complaint must also "contain sufficient factual matter" that if proven true would entitle the plaintiff to recovery. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, Plaintiff has "averred that [Latino] cohesion ***can*** be quantified by several statistical measures." ECF 260 at 5 (emphasis added). This is not the same as averring that Latino cohesion ***has*** been quantified. In other words, the factual basis for Plaintiff's allegation of Latino cohesion is purely hypothetical.

Plaintiff also points to one primary election for Democratic candidate Greg Casar. ECF 260 ¶ 91. But this too fails to allege voter cohesion. Plaintiff does not allege that Latino voters across CD 35,

3

who voted in the Democratic primary, voted cohesively. Plaintiff alleges that "Latino voters in Bexar County and in Travis County preferred someone other than Casar." ECF 260 ¶ 91. Yet CD 35 includes not only parts of Bexar and Travis Counties; it also includes parts of Comal County and Hays County.[1] So Plaintiff has failed to allege that all Latino voters in CD 35 preferred someone other than Greg Casar; he has instead alleged only that some Latino voters in CD 35 preferred someone other than Greg Casar.

Moreover, that is still not to say that Latino voters in CD 35 voted uniformly, or cohesively, for the same candidate. By Plaintiff's allegations, it may be that Latino voters in two counties in CD 35 diverged and voted for several different candidates. That is not the same as cohesion. Therefore, Plaintiff has not alleged Latino cohesion. Finally, this allegation pertains solely to those Latino voters who voted in the Democratic primary. Plaintiff does not allege that the number of Latinos in CD 35 who voted in the most recent Democratic primary constitutes a majority of Latinos in CD 35. Hence, it is not clear from this allegation whether the number of Latinos—from only two of the four counties within CD 35—who voted in the Democratic primary, but did not vote for Greg Casar, is a significant percentage of Latino voters in CD 35 at large.

For these reasons, Plaintiff has still failed to satisfactorily allege the second *Gingles* precondition. And his claims should be dismissed for this reason as well.

## III. Plaintiff Has Not Alleged a Racial-Gerrymandering Claim

In his opposition to the motion to dismiss, Plaintiff asserts that he alleges a racial-gerrymandering claim in his first amended complaint. *See* ECF 260 at 3. But that is not correct. Plaintiff's first amended complaint cannot reasonably be read to include a racial-gerrymandering claim. In listing his causes of action, Plaintiff identifies two counts, yet in neither count does Plaintiff allege

---

[1] *District Viewer*, TEXAS REDISTRICTING, https://dvr.capitol.texas.gov/?PlanHeader=PLANc185.

a racial gerrymander. *See* ECF 217 at 25–26. More than that, Plaintiff does not use the term "racial gerrymander" anywhere in the facts section of the first amended complaint. *See generally* ECF 217. By contrast, the plaintiff in the related action *Escobar v. Abbott*—whose counsel is the same as Fischer's—uses the term "racially gerrymander" repeatedly throughout the facts section of her complaint. *See, e.g.*, ECF 229-1 ¶¶ 15, 16, 55, 85, 86, 120. The *Escobar* plaintiff even dedicates one subheading of her complaint to allegations of a racial gerrymander. ECF 229-1 at 17. This is not to say that the *Escobar* plaintiff's allegation of racial gerrymandering is adequate; rather it is to say that the *Escobar* plaintiff's allegation of racial gerrymandering is at least apparent from the face of the complaint.

The same cannot be said here. Plaintiff Fischer uses the term "gerrymander" only once: in the request for injunctive relief. ECF 217 ¶ 141 ("The policy choice of the State of Texas to racially gerrymander CD 35 and to dilute the Latino majority in CD 35 in the benchmark is an election change that nullifies the electoral voice of the minority voters of CD 35, including the plaintiff."). This sole reference in the request for relief does not constitute a factual allegation of a racial gerrymander. Therefore, Plaintiff has failed to allege a racial-gerrymandering claim.

Even if this one stray reference in the request for relief could be construed as asserting a racial-gerrymandering claim, Plaintiff has failed to plausibly allege such a claim. Plaintiff has fallen far short of plausibly alleging "that race was improperly used in the drawing of the boundaries of one or more specific electoral districts." *Ala. Legislative Black Caucus v. Alabama*, 575 U.S. 254, 263 (2015). A racial-gerrymandering claim must allege that race was not simply a motivation for the drawing of a district, but the overriding reason motivating the Legislature's districting decision. *See Harding v. County of Dallas*, 948 F.3d 302, 313 (5th Cir. 2020) ("[R]ace must have been 'the predominant factor motivating' the redistricting process and 'subordinating traditional race-neutral districting principles, including but not limited to compactness, contiguity, and respect for political subdivisions or communities defined by actual shared interests.'" (quoting *Miller v. Johnson*, 515 U.S. 900, 916 (1995)) (cleaned up)).

The burden of proof required for such claims is especially "demanding." *Easley v. Cromartie*, 532 U.S. 234, 241 (2001). Courts must "exercise extraordinary caution in adjudicating claims that a State has drawn district lines on the basis of race." *Miller*, 515 U.S. at 916. As with an intentional vote-dilution claim, the awareness and use of racial demographics and statistics do not by themselves show discriminatory purpose. *See id.* at 916 (explaining that even though legislatures are "almost always" aware of racial demographics, "it does not follow that race predominates in the redistricting process"). Instead, a plaintiff must show that the Legislature, in designing the district at issue, "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects on an identifiable group." *Id.* (quoting *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)).

Plaintiff has utterly failed to make any such allegations. For these reasons—and for the same reasons Plaintiff failed to plausibly allege facts showing racial discriminatory intent—Fischer has not alleged facts plausibly suggesting that race was the Legislature's predominant concern in drawing the new maps. If the Court finds that Plaintiff has alleged a racial-gerrymandering claim, it should be dismissed.

**IV.   The Law-of-the-Case Doctrine Does Not Bar This Court From Holding That Section 2 Creates No Private Right of Action**

Defendants will not burden the Court with any further briefing regarding the existence of a private right of action under Section 2. Defendants merely wish to clarify that, contrary to Plaintiff's insistence, *see* ECF 260 at 15, this Court retains the power to reconsider this issue. As Plaintiff concedes, the law-of-the-case doctrine is an "amorphous" one. ECF 260 at 15 (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). And in the case Plaintiff cites, the Supreme Court declined to apply the doctrine because the issue there was not about "the ordinary course of litigation." 460 U.S. at 619. Rather, the issue was the Supreme Court's original jurisdiction. *Id.* Similarly, the existence of a private right of action under Section 2 does not touch on "the ordinary course of litigation." Even if

6

it did, the law-of-the-case doctrine applies only when "a legal decision made at one stage of litigation" goes "unchallenged in a subsequent appeal when the opportunity to do so existed." *N. River Ins. Co. v. Phila. Reinsurance Corp.*, 63 F.3d 160, 164 (2d Cir. 1995). No such opportunity existed here.

Lastly, the law-of-the-case doctrine advises that "courts should treat the ***same litigants*** in the ***same case*** the same way throughout the ***same dispute***." BRYAN A. GARNER, ET AL., THE LAW OF JUDICIAL PRECEDENT 441 (2016) (emphasis added). Or as the Supreme Court put it, a decision "should continue to govern the same issues in subsequent stages in the ***same case***." *Arizona*, 460 U.S. at 18 (emphasis added). Yet here, the litigants are not the same as when the Court first decided this issue. Nor is the case or the dispute the same. *See J.G. Link & Co. v. Cont'l Cas. Co.*, 470 F.2d 1133, 1138 (9th Cir. 1972) ("[C]onsolidation does not affect any of the substantive rights of the parties."). Indeed, the Federal Rules of Civil Procedure expressly contemplate that, when multiple claims or "multiple parties are involved," a district court may revisit and "revise" any order "before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

For these reasons, the law-of-the-case doctrine does not preclude this Court from revisiting this issue.

## CONCLUSION

Defendants respectfully ask the Court to dismiss Plaintiff's claims.

| | |
|---|---|
| Date: May 11, 2022 | Respectfully submitted. |
| | |
| KEN PAXTON | /s/ Patrick K. Sweeten |
| Attorney General of Texas | PATRICK K. SWEETEN |
| | Deputy Attorney General for Special Litigation |
| BRENT WEBSTER | Tex. State Bar No. 00798537 |
| First Assistant Attorney General | |
| | WILLIAM T. THOMPSON |
| | Deputy Chief, Special Litigation Unit |
| | Tex. State Bar No. 24088531 |
| | |
| | ARI M. HERBERT* |
| | Assistant Attorney General, Special Litigation Unit |
| | Tex. State Bar No. 24126093 |
| | *Application for Admission Pending |
| | |
| | OFFICE OF THE ATTORNEY GENERAL |
| | P.O. Box 12548 (MC-009) |
| | Austin, Texas 78711-2548 |
| | Tel.: (512) 463-2100 |
| | Fax: (512) 457-4410 |
| | patrick.sweeten@oag.texas.gov |
| | will.thompson@oag.texas.gov |

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on May 11, 2022, and that all counsel of record were served by CM/ECF.

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN