IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS (LULAC), et al., <br><br> Plaintiffs, <br><br> v. <br><br> GREG ABBOTT, et al., <br><br> Defendants. | Civil Action No. 3:21-cv-259 (DCG-JES-JVB) <br> (consolidated cases) |

**UNITED STATES' OPPOSITION TO LEGISLATORS'**
**MOTION TO QUASH DEPOSITION SUBPEONAS**

The United States has brought a claim here under the results test of Section 2 of the Voting Rights Act regarding Texas' 2021 State House redistricting plan and seeks to present the evidence required for an "intensely local appraisal of the design and impact" of challenged electoral districts "in the light of past and present reality, political and otherwise." *See Thornburg v. Gingles*, 489 U.S. 30, 78 (quoting *White v. Regester*, 412 U.S. 755, 769-70 (1973)). To that end, the United States has served deposition subpoenas on the individuals most recently elected from three challenged State House districts: Representative Ryan Guillen (HD 31), Representative Brooks Landgraf (HD 81), and Representative John Lujan (HD 118) (hereafter "Legislators"). Despite the federal courts having repeatedly permitted legislator depositions in statewide Voting Rights Act enforcement litigation in Texas, Legislators seek to quash their deposition subpoenas based on an evidentiary privilege that "is, at best, one which is qualified." *Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Parish Gov't*, 849 F.3d 615, 624 (5th Cir. 2017) (internal quotation marks and citation omitted). This Court should deny the motion to quash and clarify the limited scope of legislative privilege.[1]

**I.    BACKGROUND**

The United States alleges that Defendant the State of Texas violated Section 2 of the Act, 52 U.S.C. § 10301, by enacting and implementing the 2021 Congressional Redistricting Plan and 2021 State House Redistricting Plan. U.S. Compl. ¶¶ 162-167, *United States v. Texas*, No. 3:21-cv-299 (W.D. Tex. Dec. 6, 2021), ECF No. 1. With respect to the State House plan, the United

---

[1] The United States has also asserted discriminatory intent claims in this case under Section 2 regarding the redistricting plan for Congress that are not at issue in this round of depositions or the instant motion to quash, but they will potentially be at issue for future legislative depositions. The United States maintains here, as it has in past briefing on related issues, that the needs of the discriminatory intent claims in this case outweigh the qualified legislative privilege based on the five factors set forth in *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 101 (S.D.N.Y. 2003). *See* Resp. to Mot. to Quash TLC Subpoena at 11, ECF No. 227.

States specifically alleges that House District 118, in Bexar County; House District 31, in South Texas; and the districts in El Paso County and West Texas have discriminatory results. U.S. Compl. ¶¶ 104-146.

The United States served a subpoena on Representative Guillen April 20, seeking to depose the Representative on May 19. *See* Guillen Subpoena, ECF No. 262-2. The United States then served deposition subpoenas on Representative Landgraf and Representative Lujan on May 3, seeking to depose the Representatives on May 24 and May 25, respectively. *See* Landgraf Subpoena, ECF No. 262-3; Lujan Subpoena, ECF No. 262-4. Legislators moved to quash these subpoenas on May 5. *See* Mot. to Quash, ECF No. 262. The information that the United States seeks in the subpoenaed deposition testimony is highly relevant. All three of the representatives have run for office and been elected in challenged districts. Representative Guillen been elected nine times in District 31 and served on the House Redistricting Committee in the 87th Texas Legislature, which was responsible for enacting the challenged plans. Representative Landgraf has been elected four times in District 81—a majority Latino district adjacent to the El Paso/West Texas configuration—and also served on the House Redistricting Committee in the 87th Texas Legislature. Representative Lujan was elected in District 118 in November 2021 and January 2016 special elections, although he lost in the 2016 and 2018 general elections. Living in communities, campaigning, and representing constituents gives these individuals specific knowledge of community characteristics, political behavior, any localized history of discrimination, persistent socioeconomic disparities, and racial appeals in campaigns, all of which are relevant to a Section 2 claim. *See Gingles*, 478 U.S. at 37. Representative Guillen and Representative Landgraf's participation in the redistricting process and subsequent public statements are also relevant to whether policies underlying the House plan

are "tenuous." *Id.* at 37, 45; *see also, e.g.*, *LULAC v. Perry*, 548 U.S. 399, 441 (2006) (indicating that redrawing lines based on political preferences may establish tenuousness); *cf. LULAC v. Abbott*, No. 3:21-cv-259, 2022 WL 1410729, at *4-5, 7, 19-23, 26-27 (W.D. Tex. May 4, 2002) (three-judge court) (relying on testimony of Senator Huffman and Senator Powell).

## II.  LEGAL STANDARD

A party may serve a subpoena under Rule 45 to "command attendance at a deposition." Fed. R. Civ. P. 45(a)(1)(B). The recipient of a subpoena may move to quash only for one of four specific reasons, namely if the subpoena "(1) fails to allow a reasonable time for compliance; (2) requires a person who is not a party to travel more than 100 miles from where the person resides; (3) requires disclosure of privileged or protected matter; or (4) subjects a person to undue burden." *Tex. Keystone, Inc. v. Prime Nat. Res., Inc.*, 694 F.3d 548, 554 (5th Cir. 2012).[2] "The proponent of a motion to quash must meet the heavy burden of establishing that compliance with the subpoena would be unreasonable and oppressive," *SEC v. Reynolds*, 3:08-CV-0438, 2016 WL 9306255, at *2 (N.D. Tex. Apr. 29, 2016), and the oppressiveness of a subpoena "must be determined according to the facts of the case." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). Thus, "a court should give a wider berth of discovery to subpoenas that concern substantial national, rather than merely parochial, interests." *In re Subpoenas to Plains All Am. Pipeline, L.P.*, No. 3:13-2975, 2014 WL 204447, at *3 (S.D. Tex. Jan. 17, 2014).

---

[2] Of these, Legislators appear to argue only the third—that legislator depositions are barred by legislative privilege. Although Legislators' motion references the "burden" of sitting for a deposition, the only concrete burden Legislators identify is ultimately grounded in their broad claims of legislative immunity. *See, e.g.*, Mot. at 1, 7, 11, 12. To alleviate any burdens related to travel, the United States repeatedly offered to conduct the depositions in any location convenient to each legislator. *E.g.*, Email from H. Berlin to P. Sweeten (May 3, 2022) (Ex. 1). Legislators have offered no alternative dates or locations for their depositions.

3

### III.    ARGUMENT

"While the common-law legislative immunity for state legislators is absolute, the legislative privilege for state lawmakers is, at best, one which is qualified." *Jefferson Cmty. Heatlh Care Ctrs.*, 849 F.3d at 624 (quoting *Perez v. Perry* (*Perez II*), No. 5:11-cv-360, 2014 WL 106927, at *2 (W.D. Tex. Jan. 8, 2014) (three-judge court)). "This privilege 'must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth.'" *Id.* (quoting *Perez II*, 2014 WL 106927, at *1). Thus, courts have uniformly denied Texas legislators' requests for blanket protective orders barring depositions in Voting Rights Act enforcement actions in the last decade. *See Perez v. Perry* (*Perez I*), No. 5:11-cv-360 (W.D. Tex. Aug. 1, 2011) (three-judge court), ECF No. 102 (Ex. 2); *Texas v. Holder*, No. 1:12-cv-128 (D.D.C. Apr. 20, 2012) (three-judge court), ECF No. 84 (Ex. 3); *Veasey v. Perry*, No. 2:13-cv-193 (S.D. Tex. June 18, 2014), ECF No. 341 (Ex. 4).

Much of Legislators' motion is based on an erroneous conflation of federal legislators' Speech or Debate Clause immunity, *see, e.g.*, Mot. at 1, 3, 11-12 (citing *Dombrowski v. Eastland*, 387 U.S. 82 (1967)), state legislators' immunity from civil suit, *see, e.g.*, Mot at 1, 4, 11-12 (citing *Tenney v. Brandhove*, 341 U.S. 367 (1951)), and the qualified testimonial privilege applicable here. The Speech or Debate Clause of the U.S. Constitution, U.S. Const. art. I, § 6, cl. 1, shields federal legislators from any award of damages or prospective relief and provides an accompanying testimonial privilege, *see United States v. Gravel*, 408 U.S. 606, 614-15 (1972), but does not apply to state or local legislators, either directly or via incorporation in federal common law. *See United States v. Gillock*, 445 U.S. 360, 368-73 (1980). Whatever protections

4

eighteenth century law afforded to state legislators, Mot. at 4, "[t]here can be no doubt that [the Supreme Court] has sanctioned intrusions by Congress, acting under the Civil War Amendments, into the judicial, executive, and legislative spheres of autonomy previously reserved to the States." *Fitzpatrick v. Bitzer*, 427 U.S. 445, 455 (1976).  And while motive is not typically relevant to the legality of legislation, *see* Mot. at 1, 4, 16-17, there is "a very limited and well-defined class of cases where the very nature of the constitutional question requires an inquiry into legislative purpose." *United States v. O'Brien*, 391 U.S 367, 383 n.30 (1968).  In this case, the United States' claim requires this Court to determine whether the stated policies underlying the House plan are "tenuous."  *Gingles*, 478 U.S. at 37.

The Legislators' motion also incorporates an overbroad conception of legislative privilege that somehow includes communications with executive branch officials and other outsiders, as well as purely factual information.  *See* Mot. at 9-10.  *Contra, e.g.*, *Jackson Mun. Airport Auth. v. Bryant*, No. 3:16-cv-246, 2017 WL 6520967, at *7 (S.D. Miss. Dec. 19, 2017).  Moreover, staying deposition discovery pending the Supreme Court's decision in *Merrill v. Milligan,* No. 21-1086, or until the United States has exhausted discovery of the "public record," Mot. at 5-7, makes little sense.  This Court should permit depositions to go forward and should direct legislators to answer all questions outside the scope of the legislative privilege.

### A. Federal Courts Have Repeatedly Refused to Grant Texas Legislators Blanket Protective Orders Barring Depositions in Voting Rights Cases.

The history of Texas's unsuccessful invocations of a blanket legislative privilege in voting rights cases shows why the Legislators' motion should be denied.  In *Perez v. Perry*, prior statewide redistricting litigation in Texas under Section 2 of the Voting Rights Act, the State sought a protective order barring inquiries "on the issue of individual legislators' motives or purposes . . . if it is based on information or communications other than those contained in the

5

journals and publicly-available reports and acts of the 82nd Legislature." Mot. for Protective Order at 7, *Perez v. Perry*, No. 5:11-cv-360 (W.D. Tex. July 21, 2011), ECF No. 62. The *Perez* Court concluded that "any sort of blanket protective order that would insulate witnesses from testifying would be inappropriate." *Perez I* at 5 (citing *In re Grand Jury*, 821 F.2d 946, 957-58 (3d Cir. 1987)). The Court further ruled as follows:

- First, it found "that the assertion of the privilege is premature." It thus refused to "provide blanket protection to every person who may choose to assert the privilege during the discovery process."

- Second, the Court directed the parties to "proceed with depositions and the deponents must appear and testify even if it appears likely that the privilege may be invoked in response to certain questions."

- Third, the Court decided that a deponent "may invoke the privilege in response to particular questions, but the deponent must then answer the question subject to the privilege."

- Finally, the Court announced that with respect to portions of the transcript that the deponent claimed were privileged, that they "may then be sealed and submitted to the Court for in camera review, along with a motion to compel, if the party taking the deposition wishes to use the testimony in these proceedings. In other words, the testimony will not be disclosed or used unless the Court finds that the privilege does not apply, has been waived and/or should not be enforced."

*Id.* at 5-6 (internal footnote omitted). The State later moved to modify this order, but the *Perez* Court denied the motion. *See Perez II*, 2014 WL 106927, at *1. Nonetheless, the Court afforded alternative procedures under which a deponent might "choose not to answer specific questions, citing the privilege," after which a plaintiff could "file a motion to compel and the Court [would then] determine whether the privilege has been waived or is outweighed by a compelling, competing interest." *Id.* at *3.[3]

---

[3] For example, in *Perez*, following a deposition in which a legislator "declined to answer numerous questions on the grounds of legislative privilege," private plaintiffs moved to compel but did not meet their "burden of establishing" that the privilege should be overcome in that instance. *Perez v. Perry* (*Perez III*), No. 5:11-cv-360 (W.D. Tex. July 11, 2014) (three-judge

6

Despite the deeply probative evidence yielded through legislative discovery in *Perez v. Perry* and *Texas v. United States* (the accompanying preclearance litigation under Section 5 of the Voting Rights Act)—or perhaps because of it—the State again sought a blanket protective order barring all legislative depositions in *Texas v. Holder*, preclearance litigation concerning a photographic voter identification law known as Senate Bill 14 (SB 14). *See* Mot. for Protective Order, *Texas v. Holder*, No. 1:12-cv-128 (D.D.C. Mar. 22, 2012), ECF No. 34.[4] Again, a three-judge court denied this request, ruling, that "[i]f any legislators assert the privilege in response to specific requests for depositions or to justify withholding the production of specific communications, Defendants can move to compel in the appropriate court and Texas can oppose the motion or renew its motion for a protective order." *Texas v. Holder*, *supra*, at 3. All legislators whom the U.S. Attorney General deposed in *Texas v. Holder* asserted privilege and declined to answer numerous questions during depositions. Because some of these objections went beyond the scope of state legislative privilege, the *Texas v. Holder* Court permitted the U.S. Attorney General to reopen key depositions. *See* Order at 15, *Texas v. Holder*, No. 1:12-cv-128 (D.D.C. June 5, 2014), ECF No. 167; Minute Order, *Texas v. Holder*, No. 1:12-cv-128 (D.D.C. June 8, 2012).

Undeterred, Texas legislators and legislative aides again sought to quash deposition subpoenas in *Veasey v. Perry*, a subsequent challenge to SB 14 under Section 2 of the Voting

---

court), ECF No. 1138 (Ex. 5). This illustrates that depositions may proceed without unnecessarily intruding on legislative privilege.

[4] *See also Perez v. Perry*, No. 5:11-cv-360 (W.D. Tex. Mar. 19, 2012) (three-judge court), ECF No. 690 (relying on legislator testimony to find that the Texas Legislature "may have focused on race to an impermissible degree" when crafting the 2011 House plan); *Texas v. United States*, 887 F. Supp. 2d 133, 161 & n.32 (D.D.C. 2012) (three-judge court) (relying on email exchanged among state legislators to conclude that that the 2011 Congressional plan "was motivated, at least in part, by discriminatory intent"), *vacated on other grounds*, 133 S. Ct. 2885 (2013).

7

Rights Act. *See, e.g.*, Mot. to Quash, *Veasey v. Perry*, No. 2:13-cv-193 (S.D. Tex. May 27, 2014), ECF No. 290. The *Veasey* Court denied these motions and permitted depositions to proceed, while permitting legislators to adopt either the *Perez I* procedures or the *Perez II* procedures when asserting legislative privilege. *See Veasey*, *supra*.

The Legislators here have provided no basis for this Court to deviate from those decisions and impose an effective prohibition on plaintiff depositions in this case. *See Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) ("It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error."). Legislators raise numerous decisions regarding legislative immunity, Mot. at 4, 11-12, despite conceding that Legislators "are not named defendants in any complaint," Mot. at 3.[5] They also point to decisions concerning apex depositions, Mot. at 4-5, 7, but the 181 members of the Texas Legislature are not "[t]op executive department officials" protected by the apex doctrine. *See In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995) (internal quotation marks and citation omitted).[6] Although some courts have foreclosed most requests to depose local officials solely concerning legislative intent, even those courts have recognized that legislative privilege may yield and have not prohibited depositions of legislators concerning unprivileged matters. *See Lee v. City of Los Angeles*, 908 F.3d 1175, 1186-88 (9th Cir. 2018). The mere possibility that a deposition may "wander into impermissible terrain is not sufficient reason to halt [an

---

[5] *See also Reeder v. Madigan*, 780 F.3d 799 (7th Cir. 2015) (addressing legislative immunity); *Bagley v. Blagojevich*, 646 F.3d 378, 391-98 (7th Cir. 2011) (same); *Biblia Abierta v. Banks*, 129 F.3d 899 (7th Cir. 1997) (same); *cf. M. Se. & Invs., Inc. v. Miami-Dade Cnty.*, 2001 WL 1685515, at *1-2 (S.D. Fla. Aug. 14, 2001) (erroneously concluding that legislative immunity incorporates wholesale immunity from testimonial discovery).

[6] *See also In re Stone*, 986 F.2d 898, 904 (5th Cir. 1993) (addressing "high-ranking officials of cabinet agencies")); *cf. Harding v. Cnty. of Dallas*, No. 3:15-cv-131, 2016 WL 7426127, at *7-8 (N.D. Tex. Dec. 23, 2016) (applying apex doctrine to county judge and a county commissioner).

8

otherwise] permissible inquiry." *EEOC v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 183 (4th Cir. 2011); *see also Fla. Ass'n of Rehabilitation Facilities, Inc. v. Florida*, 164 F.R.D. 257, 268 (N.D. Fla. 1995) (permitting depositions while noting narrow issues that may be privileged). Finally, because the State has already called a legislator to testify and named another legislator as a likely witness in this case, *see LULAC v. Abbott*, 2022 WL 1410729, at *7; Defs.' Initial Disclosures at 4-5 (Ex. 6), this matter is already one of the "extraordinary" few where legislators are "called to the stand at trial to testify." *Cf. Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 (1977) (addressing only testimony concerning legislative purpose). This Court should follow the path carved by *Perez*, *Texas v. Holder*, and *Veasey v. Perry* and continue to allow legislator depositions in statewide Voting Rights Act enforcement actions.

### B. Legislative Privilege Does Not Extend Beyond Confidential Legislative Acts.

Legislators' motion proposes an expansive legislative privilege contrary to established law.[7] Legislative privilege applies only to "documents or information that contains or involves opinions, motives, recommendations or advice about legislative decisions between legislators or between legislators and their staff." *Jackson Mun. Airport Auth.*, 2017 WL 6520967, at *7. The privilege does not protect non-legislative or factual information. This leaves many areas of inquiry in this case that do not implicate legislative privilege.

As an initial matter, Representative Lujan holds no legislative privilege with respect to the 2021 House plan. Representative Lujan assumed office on November 16, 2021, "after the

---

[7] In this Court's preliminary injunction opinion and order in this case, the Court expressed concern that Defendants' broad conception of legislative privilege here would "raise serious questions about whether this Court (or any court) could ever accurately and effectively determine intent." *LULAC v. Abbott*, 2022 WL 1410729, at *27 n.14. In moving to quash legislator depositions now, Legislators here double down on the overbroad legislative privilege claims that Defendants pressed in the preliminary injunction proceedings.

9

date of [the] enactment." *League of Women Voters of Mich. v. Johnson*, No. 17-14148, 2018 WL 2335805, at *6 (E.D. Mich. May 23, 2018) (citation omitted).  His current status as a legislator does not impart privilege retroactively, nor would it allow him to claim legislative privilege about his personal knowledge regarding the results of the 2021 House plan. *Cf. Jackson Mun. Airport Auth.*, 2017 WL 6520967, at *7 (addressing communications with legislative "outsiders").

The United States can question Representative Guillen and Representative Landgraf regarding a large range of topics not subject to bona fide privilege claims. Foremost, Representative Guillen and Representative Landgraf may be asked about knowledge gained as community leaders and candidates in challenged districts, a subject which lacks a direct relation to the legislative process. Counsel for State Defendants and Legislators have conceded that legislators may "testify as to some non-privileged matters, facts that don't go to legislative acts" and may so do "freely, as any other fact witness." *See* PI Tr. 152:6-16 (Vol. 5); *cf. United States v. Brewster*, 408 U.S. 501, 512 (1972) (explaining that "political" activities are not "legislative").[8] Representative Guillen and Representative Landgraf have also waived privilege regarding specific communications with legislative outsiders, including executive branch officials, Members of Congress, party leaders, and other members of the public. *See, e.g.*, *Perez*

---

[8] Legislators incorrectly seek to collapse the world of information to a false dichotomy between that which is privileged and that which appears in the public record. Mot. at 4-5. As the Court and State Defendants have recognized, many topics are neither privileged nor a part of the legislative record. *See* P.I. Tr. 152:17-22 (Vol. 5). For example, private conversations between Legislators and local officials or prospective candidates are neither privileged nor "in the public record." *See Favors v. Cuomo*, No. 11-CV-5632, 2015 WL 7075960, at *9 (E.D.N.Y. Feb. 8, 2015) (three-judge court) ("If individual defendants had a legislative privilege, it means they were entitled not to divulge their reasons for supporting or opposing legislation, and not to discuss such matters with outsiders. It does not mean they were entitled to discuss those matters with some outsiders but then later invoke the privilege as to others." (quotation marks and citation omitted)).

10

v. Perry (*Perez III*), No. 5:11-cv-360, 2014 WL 106927, at *2 (W.D. Tex. Jan. 8, 2014) (three-judge court); *Gilby v. Hughes*, 471 F. Supp. 3d 763, 767 (W.D. Tex. 2020).[9] Nor does legislative privilege extend to matters "outside the legislative forum," such as draft press statements and public communications. *Favors v. Cuomo*, No. 11-CV-5632, 2015 WL 7075960, at *6-*7 (E.D.N.Y. Feb. 8, 2015) (three-judge court); *see also, e.g.*, *Texas v. Holder*, No. 12-128, 2012 WL 13070060, at *3 (D.D.C. June 5, 2012) (three-judge court). Finally, legislative privilege does not shield factual information. *See, e.g.*, *League of Women Voters of Mich.*, 2018 WL 2335805, at *6; *see also, e.g.*, *Doe v. Nebraska*, 788 F. Supp. 2d 975, 984-85 (D. Neb. 2011). Legislators cannot assert legislative privilege to avoid answering questions about facts related to their own districts—such as political behavior, the history of discrimination, and socioeconomic disparities—that are relevant to the United States' discriminatory results claim against the 2021 House plan. *See Gingles*, 478 U.S. at 37.

### C. Deposition Discovery Should Not Be Stayed.

This Court denied Texas's request for a stay pending the Supreme Court's resolution of *Merrill v. Milligan*, No. 21-1086 less than three weeks ago. *See* Order, ECF No. 246. Nevertheless, with no intervening change in circumstances, Texas and counsel for legislators now ask this Court to stay legislator depositions for the very same reason. Mot. at 7-9. This Court should deny that motion. With little more than two months left in discovery, a stay

---

[9] Legislators suggest that questions about Representative Guillen's political party switch may implicate the First Amendment, *see* Mot. at 10 n.6, but there is no evidence that such questions would chill political participation. *Cf. Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010) (relying on declarations that created "a reasonable inference that disclosure would have the practical effects of discouraging political association and inhibiting internal campaign communications that are essential to effective association and expression"). The First Amendment does not bar an inquiry into whether Representative Guillen took certain actions after enactment of the 2021 House plan because Anglo voters in the district would otherwise "defeat the minority's preferred candidate." *Gingles*, 478 U.S. at 51.

11

pending resolution of the motions to dismiss would endanger the trial schedule; a stay pending resolution of *Merrill* would render a September trial impossible.[10]

Legislators' separate request that depositions be stayed until the United States exhausts "less intrusive means" of discovery, Mot. at 5, bears no scrutiny. There is no legal basis to import exhaustion requirements from the apex doctrine to the discovery sought here. *See In re FDIC*, 58 at 1060. Even if such a requirement were appropriate, the Legislators have provided limited responses to document subpoenas; there are no "alternative means of discovery" left to exhaust with respect to their own knowledge of relevant facts. Mot. at 5-6.[11] "[T]he public record" is no substitute for the personal knowledge of successful candidates in challenged districts. And Legislators have not—and likely cannot—identify other individuals with the same knowledge that the United States might seek to depose first.

Ultimately, there is nothing "extraordinary" about deposing legislators regarding the characteristics and needs of their communities, their communications with non-legislators, and their experience representing their constituents, particularly when those Legislators' districts are being challenged for having racially discriminatory results. *Cf. Arlington Heights*, 429 U.S. at 268 (noting limitations only on testimony concerning legislative purpose). The United States—

---

[10] For similar reasons, the Court should not delay discovery while the motion to dismiss is pending.

[11] At the meet and confer regarding this motion, counsel for Legislators proposed deposing Legislators by written questions. However, "written depositions are inadequate" when, as here, the evidence sought "may be sufficiently nuanced to necessitate follow up questions." *Box v. Dallas Mex. Consulate Gen.*, No. 3:08-cv-1010, 2013 WL 12353107, at *2 (N.D. Tex. Mar. 4, 2013); *see also Sadowski v. Tech. Career Insts., Inc.*, No. 93 Civ. 455, 1994 WL 240546, at *1 (S.D.N.Y. May 27, 1994) (describing why "depositions on written questions are a generally inadequate substitute for an oral deposition"); 8A Fed. Prac. & Proc. Civ. § 2131 (3d ed.) (noting that a deposition on written question "is more cumbersome than an oral examination").

just like Texas—is entitled to non-privileged testimony from legislators "as any other fact witness." P.I. Tr. 152:12-16 (Vol. 5). It is unnecessary to delay Legislator depositions.

## IV. CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny Legislators' motion to quash deposition subpoenas.

Dated: May 11, 2022

                                       PAMELA S. KARLAN
                                       Principal Deputy Assistant Attorney General
                                       Civil Rights Division

                                       */s/ Daniel J. Freeman*
                                       T. CHRISTIAN HERREN, JR.
                                       TIMOTHY F. MELLETT
                                       DANIEL J. FREEMAN
                                       JANIE ALISON (JAYE) SITTON
                                       MICHELLE RUPP
                                       JACKI L. ANDERSON
                                       JASMIN LOTT
                                       HOLLY F.B. BERLIN
                                       Attorneys, Voting Section
                                       Civil Rights Division
                                       U.S. Department of Justice
                                       950 Pennsylvania Avenue NW
                                       Washington, DC 20530

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 11, 2022, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system, which will send notification of this filing to counsel of record.

                                        */s/ Daniel J. Freeman*
                                        Daniel J. Freeman
                                        Voting Section
                                        Civil Rights Division
                                        U.S. Department of Justice
                                        daniel.freeman@usdoj.gov