# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GREG ABBOTT, et al., <br><br> Defendants. | Civil Action No. 3:21-cv-259 <br> (DCG-JES-JVB) <br> (Consolidated Action: Lead Case) |

**PRIVATE PLAINTIFFS' BRIEF IN OPPOSITION TO LEGISLATORS' MOTION TO
QUASH OR MODIFY DEPOSITION SUBPOENAS
AND MOTION FOR PROTECTIVE ORDER**

In every redistricting cycle in Texas for the past five decades, sitting legislators have participated in depositions. This cycle should be no different. But in response to three deposition subpoenas to three sitting Texas state house members, Representatives Ryan Guillen, Brooks Landgraf, and John Lujan ("Legislators"),[1] Legislators now request the Court rule that "legislative privilege and immunity" categorically protects them, and by extension other legislators, from sitting for any depositions at all. That view is unsupported by any precedent in this Circuit, including in the prior round of Texas redistricting, when the three-judge court required legislators to be deposed and emphasized, "[e]ven if the deponent is entitled to invoke it, the application of the privilege depends on the question being posed. *Perry v. Perez*, 2014 WL 106927, at *3 (W.D. Tex. Jan. 8, 2014). In fact, this Court recently remarked not only that it was "concerned about the

---

[1] Legislators are represented by private counsel and the Texas Office of the Attorney General ("OAG").

1

scope of state legislative privilege" as Defendants "conceive of it" but that, if Defendants'
approach to legislative privilege were adopted, "it would raise serious questions about whether
this Court (or any court) could ever accurately and effectively determine intent." Prelim. Inj.
Opinion, Dkt. 258 at 50 n.14.

Private Plaintiffs[2] have a strong interest in the resolution of this motion, as they also
subpoenaed Legislators for depositions and intend to depose other sitting legislators in connection
with Private Plaintiffs' intent and Section 2 results claims.[3] Private Plaintiffs contend that taking
the depositions of sitting legislators will directly shed light on important questions of the intent,
the effect, and the background of this legislation—all of which heavily bear on Private Plaintiffs'
intent and results claims. Thus, for the reasons stated below, Private Plaintiffs request that the
Court deny Legislators' Motion to Quash or Modify the United States' Deposition Subpoenas and
Motion for Protective Order.

## LEGAL STANDARD

The legislative privilege is qualified, not absolute. *Jefferson Cmty. Health Care Ctrs., Inc.
v. Jefferson Par. Gov't*, 849 F.3d 615, 624 (5th Cir. 2017) (citing *Perez*, 2014 WL 106927, at *1).
Despite Legislators' claims to the contrary, "'the proposition that a legislative privilege is not
absolute, particularly where another compelling competing interest is at stake, is not a novel one.'"
*Perez*, 2014 WL 106927, at *2 (quoting *United States v. Gillock*, 445 U.S. 360, 373 (1980)).

---

[2] Private Plaintiffs are plaintiffs in each consolidated case, except for *United States v. Texas*, No.
3:21-cv-00299, as listed on the signature page of this brief, with signature by one counsel per
group.
[3] On May 6, 2022, the LULAC Plaintiffs, on behalf of all Private Plaintiffs, served deposition
subpoenas on Representatives Guillen, Landgraf, and Lujan seeking to depose them on the same
dates as the United States. In response, Defendants invoked legislative privilege as the basis for
their refusal to have the Representatives' depositions taken, noting that such privilege applied to
the Private Plaintiffs' claims and the United States' claims alike.

Legislators must establish the applicability of the legislative privilege in order to quash or modify Private Plaintiffs' and the United States' subpoenas. *Hodges, Grant & Kaufmann v. IRS,* 768 F.2d 719, 721 (5th Cir. 1985) ("The burden of demonstrating the applicability of the privilege rests on the party who invokes it."); *see also Perez,* 2014 WL 106927, at *2. Critically, a court's assessment of the privilege is fact- and context-specific. *Perez,* 2014 WL 106927, at *1 (three-judge court). To make that assessment, courts in this Circuit use a fact-specific balancing test to determine, case by case, the applicability of the legislative privilege. *See, e.g., Harding v. Cty. of Dallas,* 2016 WL 7426127, at *3 (N.D. Tex. Dec. 23, 2016) (applying the *Perez* test to each deposition topic individually); *Veasey v. Perry,* 2014 WL 1340077, at *2 (S.D. Tex. Apr. 3, 2014). To that end, courts in this Circuit consider five factors to determine whether the need for discovery, including oral depositions and written discovery, is outweighed by the legislative privilege. *Id.* Those five factors are (1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the seriousness of the litigation and the issues involved; (4) the role of the government in the litigation; and (5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable. *Perez,* 2014 WL 106927, at *2. The privilege "must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." *Jefferson Cmty.,* 849 F.3d at 624.

## ARGUMENT

### A. Legislators' Conception of Legislative Privilege and Its Scope Is Beyond What Courts in this Circuit and in Others Have Recognized.

Legislators make several unsupported and remarkable claims about the scope of legislative privilege that, if accepted by this Court, would mean no legislator would ever have to sit for a

deposition. Throughout their motion, Legislators contend that "deposing a legislator would be 'extraordinary' in any case and ordinarily barred by legislative privilege." Br. at 5; *see also* Br. at 7, 10, 12. This contravenes the last five decades of redistricting litigation, during which time legislators have consistently and routinely been deposed. Legislators cite footnote 18 in *Arlington Heights* to support that proposition. *Vill. of Arlington Heights v. MHDC*, 429 U.S. 252, 268 & n.18 (1977). But Legislators ignore what actually happened in *Arlington Heights*. There, the Court acknowledged that the plaintiffs already had an opportunity to question decisionmakers about intent, in particular, by "question[ing] Board members fully about materials and information available to them at the time of decision," both "during the discovery phase and at trial." *Id.* at 270 n.20. Thus, on its facts, *Arlington Heights* hardly can be construed as categorically shielding decisionmakers from testifying at depositions. Instead, *Arlington Heights* calls for courts to engage in a fact-specific inquiry based on the needs and circumstances presented in each case. Here, Legislators refuse to sit for depositions altogether, denying Plaintiffs any opportunity to question them in connection with this litigation.

Next, Legislators contend that the privilege protects them from all "inquiries about what motivated or informed their legislative acts." Br. at 4. As discussed above, that is not the standard. In intent cases, knowledge about what motivated a decisionmaker at the time of the decision is relevant and subject to discovery. *See, e.g.*, *Veasey*, 2014 WL 1340077, at *2–3. Legislators mischaracterize the approach this Court took during the hearing on the Brooks Plaintiffs' motion for preliminary injunction, suggesting that the Court "prohibited" plaintiffs from questioning Senator Huffman about "what otherwise motivated or informed her or others during the legislative process." Br. at 4. But the Court did no such thing. The Court certainly did not categorically prohibit questioning on intent during the hearing. Instead, it identified the outer limits of the

privilege, noting, "the scope of state legislative privilege as Senator Huffman and Defendants conceive of it" would effectively bar any court from "ever accurately and effectively determin[ing] intent." Dkt. 258 at 50 n.14. The Court said that even a legislator's refusal to answer a question may in and of itself "strengthen[] the inference" that previously stated reasons for redrawing a map were "at best, highly incomplete, and, at worst, disingenuous." *Id.* at 50.[4] In other words, this Court made clear in that hearing that Legislators are not unilaterally protected from *all* inquiries about intent.

Legislators also seem to suggest that the United States has less "utility" in deposing legislators because their claims are "results claims," not "intent claims." Br. at 6. Even if Legislators are correct as to cases that raise results claims—and they are not—this argument

---

[4] None of the cases to which Legislators cite, Br. at 4, 5, 6, 8, for the proposition that courts prohibit depositions of sitting legislators in redistricting cases involving intent-based claims, support that view. *Lee v. City of L.A.*, 908 F.3d 1175, 1188 (9th Cir. 2018) (refusing to allow depositions based on "the factual record in this case," where court found sufficient support that legislators whom plaintiffs sought to depose did act because of racial motivation, but that subsequent actions by others clearly showed that final maps were not product of that motivation); *Am. Trucking Ass'ns., Inc. v. Alviti*, 14 F.4th 76, 88–89 (1st Cir. 2021) (noting that some private civil cases would warrant setting legislative privilege to one side "because the case turns so heavily on subjective motive or purpose," but finding that proof of state lawmaker's subjective intent in dormant Commerce Cause case concerning tolls unlikely to be significant, because "it is difficult to conceive of a case in which a toll that does not discriminate in effect could be struck down based on discriminatory purpose. . . . [and] equally difficult to conceive of a toll that has a substantial discriminatory effect, yet is saved by the mere absence of proof that the effect was intended"); *In re Hubbard*, 803 F.3d 1298, 1312–13 (11th Cir. 2015) (finding subpoenas in question "d[id] not serve an important federal interest" because the statute in question did not implicate any constitutionally protected conduct and therefore plaintiffs did not present a cognizable First Amendment claim, but noting that its opinion should not be read as unilaterally deciding whether the privilege would apply in a different case with a different kind of constitutional claim); *In re Dep't of Commerce*, 139 S. Ct. 16, 17 (2018) (not addressing legislative privilege directly, but rather dealing with "bad faith" standard to justify deposition of Cabinet Secretary in review of administrative proceeding), *but see Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2564 (2019) (relying on depositions of other sub-Cabinet officers for review of decision below); *Gill v. Whitford*, 2019 WL 4571109, at *1 (7th Cir. July 11, 2019) (not addressing legislative privilege directly, but rather denying the plaintiffs' request for deposition of the Speaker of the Wisconsin Assembly only after partisan gerrymandering claims were held to be nonjusticiable political questions and case was vacated).

undercuts Legislators' insistence that the privilege precludes questioning on intent by conceding that, at a minimum, parties with intent claims—such as many of Private Plaintiffs—have a basis for deposing Legislators. Moreover, Legislators cannot deny that lawmakers' firsthand knowledge of any number of issues—from discrimination within their home districts, to legislator responsiveness to communities of color, to the alternative maps considered during the redistricting process—is probative. In its opinion on Brooks Plaintiffs' motion for preliminary injunction, this Court acknowledged as much when it highlighted the relevance of Senator Kel Seliger's deposition, where he testified that the redrawing of SD 10 "violated the Constitution and the VRA." Dkt. 258 at 12. Thus, Legislators' deposition testimony is highly relevant to this Court's ability to adjudicate on a fulsome evidentiary record, intent claims and results claims alike.

Legislators also erroneously claim that this Court concluded that state legislators can only ever testify to facts "within the public record," and that anything beyond the public record would require a waiver of legislative privilege. Br. at 5, citing PI Tr. 152:1-5 (Vol. 5) ("Senator Huffman will be allowed to testify to everything within the public record; and if she goes outside the public record, she will waive her privilege."). In fact, the Court's statement was in response to the parties' argument over whether Senator Huffman waived her legislative privilege by testifying during the preliminary injunction hearing. PI Tr. 147:19-152:5 (Vol. 5). However, the issue here is not whether Legislators waive legislative privilege by being deposed; instead, the issue is whether the privilege shields legislators from being deposed at all and whether the privilege must yield to countervailing interests. Legislators fail to point to any binding authority that supports their position, and the cases they cite are inapposite.[5]

---

[5] *Tenney v. Brandhove*, 341 U.S. 373, 377 (1951) (citing to Federalist papers and discussing the supremacy of the legislative department in the States during the Revolution); *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967) (involving a merits decision on a motion for summary judgment

Legislators also muddy the waters by conflating legislative immunity and legislative privilege. Br. at 4. To be clear, the two concepts are distinct. Legislative immunity is about whether legislators are liable for their legislative acts. *Consumers Union*, 446 U.S. 719, 732 (1980). Legislative privilege is the qualified testimonial privilege that, in certain instances, protects state legislators from compelled disclosure of documentary and testimonial evidence. At issue in the instant motion is Legislators' legislative privilege, and the immunity cases Legislators cite are therefore irrelevant. What is relevant, instead, is how best to balance Legislators' qualified privilege with plaintiffs' needs and the interests of justice.

### B. Private Plaintiffs' Need for Discovery to Prove Their Claims Outweighs Legislators' Interest in Application of the Legislative Privilege.

To the extent that any deposition testimony implicates legislative privilege, the five-factor *Perez* test adopted by the Fifth Circuit favors Private Plaintiffs' and the United States' positions. First, the evidence sought in legislator depositions is both relevant and vital to Private Plaintiffs' claims under the Voting Rights Act and the Constitution. Private Plaintiffs (and the United States) seek discovery relating to the issues at the core of this case: the intent of the legislators who drew and approved the 2021 redistricting maps, the extent to which race predominated in that map-drawing process, and the effect those maps will have on voters and communities across Texas. Legislators' involvement in, knowledge of, and intent during the legislative and map-drawing process are highly relevant to Private Plaintiffs' intent claims under Section 2 and the Constitution, just as their understanding of demographic patterns, political behavior, socioeconomic disparities,

---

without mention of any discovery disputes, let alone testimony at depositions); *Dep't of Commerce*, 139 S. Ct. at 2573–74 (allowing extra-record discovery, noting "[w]e granted the Government's request to stay the Secretary's deposition pending further review, but we declined to *stay the Acting AAG's deposition or the other extra-record discovery* that the District Court had authorized") (emphasis added).

campaign tactics, and the like in their own districts and beyond are highly relevant to Private Plaintiffs' and the United States' results claims.

Second, the lack of alternative means to obtain evidence weighs in Plaintiffs' favor. Legislators' suggested alternatives—examination of the "public record" or "written questions— are hardly adequate substitutes for in-person depositions, given that officials "seldom, if ever, announce on the record that they are pursuing a particular course of action because of their desire to discriminate against a racial minority." *Veasey*, 2014 WL 1340077, at *3 (quoting *Smith v. Town of Clarkton N.C.*, 682 F.2d 1055, 1064 (4th Cir.1982)). Indeed, this Court recently noted that even if "the legislature may at times have given pretextual reasons for its redistricting decisions" and the "the legislative history suggests that supporters of [SB4] were less than forthright about their motivations," Plaintiffs still must provide evidence that the legislators acted because of racial motivations, such as "secret correspondence." Dkt. 258 at 2, 42–43. Non-public statements of legislators thus may bear on the determination of discriminatory purpose, the effect of discriminatory practices, and the extent to which race played a role in redistricting decisions. Moreover, there is immense value in questioning Legislators in person to evaluate their demeanor in ways that are impossible through written questions and lawyer-mediated responses.[6] *See, e.g.*, Dkt. 258 at 49 (noting that "Senator Huffman's smirk" during her testimony "suggests that she may well have known" that SD 10 did not "need[] population.").

Third, the seriousness of the litigation and the issues involved weigh heavily in Plaintiffs' favor. "The importance of eliminating racial discrimination in voting—the bedrock of this

---

[6] In addition to unique information about legislative purpose, state legislators also have in-depth knowledge of the districts and voters they represent, the regions where they live, and the political landscape in which they operate. All of these topics would be most effectively explored through in-person depositions.

country's democratic system of government—cannot be overstated." *Veasey*, 2014 WL 1340077, at *2; *see also Harding*, 2016 WL 7426127, at *6 ("The federal government's interest in enforcing voting rights statutes is, without question, important."); *Hobart v. City of Stafford*, 784 F. Supp. 2d 732, 765 (S.D. Tex. 2011) ("There is a very strong federal interest in the enforcement of civil rights statutes that provide remedies for violations of the U.S. Constitution."); *United States v. Irvin*, 127 F.R.D. 169, 174 (C.D. Cal. 1989) ("[T]he federal interest in enforcement of the Voting Rights Act weighs heavily in favor of disclosure. . . . This Act requires vigorous and searching federal enforcement."). Given the utmost importance of such claims involving the Fourteenth and Fifteenth Amendments and Section 2—which protect the right most fundamental to the functioning of our democracy—this factor weighs in Plaintiffs' favor.

Fourth, the role of these three legislators directly bears on Plaintiffs' claims concerning the districts these legislators represent and the process and procedure behind the plans' passage. The legislators may have had a significant role in designing the boundaries for their respective districts. For example, Representatives Guillen and Landgraf served on the house redistricting committee, which considered and voted to pass all four challenged maps. Representative Landgraf also served on the ten-member conference committee for the enacted congressional plan. Their assertion that "[t]here is no utility at this stage of the proceedings to depose sitting legislators" strains credulity.Br. at 6.

Fifth, there is no possible chilling effect on government employees; thus, this factor once again weighs in Private Plaintiffs' favor. After all, Texas legislators have participated in the discovery process—including through document production, depositions, and trial appearances— associated with redistricting challenges in dozens of cases for more than five decades of redistricting litigation. *See, e.g.*, *Bush v. Martin*, 251 F. Supp. 484, 495 (S.D. Tex. 1966); *Kilgarlin*

*v. Martin*, 252 F. Supp. 404, 423 (S.D. Tex. 1966); *Graves v. Barnes*, 343 F. Supp. 704, 714 (W.D. Tex. 1972); *Seamon v. Upham*, 536 F. Supp. 931, 1023 (E.D. Tex. 1982); *In re TXE Elec. Co.*, 2001 WL 688128, at *1 (Tex. App.—Dallas 2011, no pet. h.); *Texas v. Holder*, 888 F. Supp. 2d 113, 120–21 (D.D.C. 2012); *Perez* 2014 WL 106927, at *1. None of those courts prevented legislators from testifying altogether because of a hypothetical chilling effect, and indeed no chilling effect has resulted—including after the previous round of redistricting litigation, when the three-judge court there required that depositions proceed in full and allowed legislators to raise any privilege concerns after the deposition through in-camera review. *See Perez*, 2014 WL 106927, at *3. Thus, Legislators' suggestion that depositions disrupt "our scheme of government" is ill founded and false.

A final note on Legislators' critique of this balancing test is also warranted. Legislators erroneously argue that the *Perez* balancing test does not apply, incorrectly asserting that it was not "initially conceived as a basis for deposing a sitting legislator." Br. at 14. Citing *Rodriguez v. Pataki*, a case from the Southern District of New York that served as the foundation for the *Perez* court's balancing test, Legislators argue that the balancing test does not apply in this case. *Id.* at 14–15 (citing *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 101 (S.D.N.Y. 2003). But *Rodriguez* says no such thing. There, the court laid out the factors for the balancing test with language that applied equally to document discovery or depositions, noting factors such as "the relevance of the evidence sought to be protected" and "the availability of other evidence." *Rodriguez*, 280 F. Supp. 2d at 101. Indeed, the court began its opinion by noting, "notwithstanding their immunity from suit, legislators may, at times, be called upon to produce documents *or testify at depositions*." *Id.* at 95

(emphasis added) (quoting *Arlington Heights*, 429 U.S. at 268).[7] Thus, the *Rodriguez* court made no effort to exclude the evaluation of deposition testimony from the scope of its five-factor test, and the Legislators are incorrect to assert as much.

### C. None of the Alternatives or Modifications Suggested by Legislators Can Be Adequate Substitutes for In-Person Depositions.

Here, Legislators' depositions are important to Plaintiffs' ability to develop their claims, and, ultimately, the evidentiary record before this Court. Given Legislators' unwillingness to engage on questions of intent during the legislative process and the State's refusal to provide meaningful information via document discovery, deposing Legislators is all the more important. As the Fifth Circuit recognized, "in this day and age we rarely have legislators announcing an intent to discriminate based upon race, whether in public speeches or private correspondence." *Veasey v. Abbott*, 830 F.3d 216, 235 (5th Cir. 2016) (en banc).[8] Furthermore, as noted in deciding

---

[7] Subsequent decisions, including ones cited by Legislators, apply the *Perez* balancing test to legislator depositions. *See Hobart*, 784 F. Supp. 2d at 766 (applying a modified version of the *Perez* and *Rodriguez* tests); *see also Harding*, 2016 WL 7426127, at *6; *Perez*, 2014 WL 106927, at *1 (same); *Hall v. Louisiana*, 2014 WL 1652791, at *12 (M.D. La. Apr. 23, 2014) (same).

[8] Courts have made the same observation in the context of employment, housing, and other forms of discrimination. *See, e.g.*, *Ports v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir. 1994) ("Because direct evidence is rare, a plaintiff ordinarily uses circumstantial evidence" to prove employment discrimination); *Rutherford v. Harris Cty., Tex.*, 17 F.3d 173, 180 n.4 (5th Cir. 1999) (same); *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016) ("[A]n overt admission of discriminatory intent . . . is rare."); *Erwin v. Potter*, 79 F. App'x 893, 896–97 (6th Cir. 2003) (unpublished) ("Direct evidence of discrimination is rare because employers generally do not announce that they are acting on prohibited grounds."); *Smith.*, 682 F.2d at 1064 ("Municipal officials acting in their official capacities seldom, if ever, announce on the record that they are pursuing a particular course of action because of their desire to discriminate against a racial minority."); *Boston All. of Gay, Lesbian, Bisexual and Transgender Youth v. U.S. Dep't. of Health & Human Servs.*, 557 F. Supp. 3d 224, 245 (D. Mass. 2021) ("[C]ourts have acknowledged that limiting the scope of review to the administrative record makes little sense in the context of an inquiry into illicit animus."); *Cook Cty. Ill. v. Wolf*, 461 F. Supp. 3d 779, 794 (N.D. Ill. 2020) ("Most people know by now that the quiet part should not be said out loud."); *Young v. Gutierrez*, 2018 WL 3443175, at *3 (S.D. Tex. July 17, 2018) ("Those engaging in race discrimination seldom announce their motivations."); *Jim Sowell Constr. Co., Inc. v. City of Coppell*, 6 F. Supp. 2d 542,

the preliminary injunction motion, this Court paid considerable attention to the facial expressions of legislators during the hearing to judge the credibility of justifications. Dkt. 258 at 42, 49. Again, facial expressions and demeanor cannot be gleaned from written testimony. Thus, there is no adequate substitute for in-person depositions.

Legislators further claim that sitting at depositions would be "intrusive" and that less intrusive "alternatives" are available. But they fail to provide any support for those assertions. Br. at 15. The representatives are public officials. They participated in the redistricting process. They have knowledge of facts specific to their districts. If anything, they should expect to have their depositions taken, as has been the custom in past redistricting cases. *See, e.g.*, *Perez*, 2014 WL 106927, at *3. Any burden on the Legislators' time is minor considering the importance of redistricting to their work and to their constituents. Nothing in the cases cited by Legislators, including prior redistricting cases, suggests that a "blanket privilege" for depositions applies and thereby eliminates any accountability for allegedly unlawful redistricting. And, again, none can, since Texas legislators have participated in depositions in every redistricting cycle for the last five decades. In *Perez*, the redistricting litigation from last cycle, the three-judge panel recognized that the court's protocol was to permit deponents to "choose not to answer specific questions, citing the privilege." 2014 WL 106927, at *3. But the *Perez* court never excused legislators from sitting for depositions altogether.[9]

_____

550 (N.D. Tex. 1999) (members of decision making bodies "typically are not so bold or foolish . . . to announce publicly their intent to discriminate against a certain race").

[9] In *Veasey v. Perry*, the court came to a similar conclusion finding, in response to the defendants' refusal to allow legislators to sit for depositions, that the privilege could be invoked "in response to particular questions and then answer subject to the privilege." *See* Order, *Veasey v. Perry*, No. 2:13-cv-00193, Dkt. 341 (S.D. Tex. June 18, 2014).

Alternatively, Legislators ask the Court to stay the deposition subpoenas until after the Court adjudicates the State's motions to dismiss.[10] Br. at 7. But document discovery has moved forward for months since Defendants filed their various motions to dismiss. Changing course at this point would unnecessarily delay proceedings and deny Private Plaintiffs adequate discovery time before trial. The cases Legislators cite in support of this proposition involved determinations that turned on the specific facts of the case, and should not apply here. *See In re Hubbard*, 803 F.3d at 1298  (at the time document subpoenas issued, multiple appeals and a certified question to the Alabama Supreme Court were pending); *Bickford v. Boerne Indep. Sch. Dist.*, 2016 WL 1430063 (W.D. Tex. Apr. 8, 2016) (plaintiffs' right to conduct discovery was contingent upon court deciding the question of qualified immunity).

Legislators also request that the Court stay or limit the number of deposition subpoenas until the Supreme Court decides *Merrill v. Milligan*, No. 21-1086, and *Merrill v. Caster*, No. 21-1087. Br. at 8. This argument is similarly unpersuasive, as neither of those cases involve questions of legislative privilege, let alone discovery issues. And, more important, this Court denied Defendants' earlier motion to stay this entire case until resolution of *Merrill*. *See* Order, Dkt. 246. This Court should similarly reject Legislators' motion here.

Finally, in the alternative, Legislators request the Court enter a protective order that limits the subject matter of the depositions to information in the public record. Br. at 9. There is no basis for such an order. Indeed, in the last round of Texas redistricting, the *Perez* court considered a similar motion regarding legislative privilege and rejected a similar limitation on depositions, ordering instead that depositions should proceed in full. *See* 2014 WL 106927, at *1. Citing to its

---

[10] Some Private Plaintiffs do not even have pending motions to dismiss after the filing of their amended complaints.

earlier ruling on the defendants' motion for a protective order, the *Perez* court noted that it had required deponents to appear and testify even if it appeared likely that the "privilege might be invoked in response to certain questions." *Id.* The court further found that the deponents could then invoke the privilege in response to particular questions but that they must answer the question. *Id.* The court went on, that those portions of the deposition "would be sealed and submitted for in camera review" and that the party taking the deposition could later file a motion to compel, if the party wished to use the testimony. *Id.* Other courts in this Circuit have since taken a similar approach to assessing legislative privilege. *See* Order, *Veasey*, No. Dkt. 341. Accordingly, in making its fact- and context-specific assessments regarding legislative privilege, Private Plaintiffs request that this Court similarly reject Legislators' attempts to avoid or categorically limit their depositions.

## CONCLUSION

For the reasons set out above, Private Plaintiffs request that this Court deny Legislators' Motion in its entirety.

Dated: May 11, 2022

<div style="margin-left:40%">

s/ Lindsey B. Cohan
Lindsey B. Cohan
Texas Bar No. 24083903
DECHERT LLP
515 Congress Avenue, Suite 1400
Austin, TX 78701
(512) 394-3000
*lindsey.cohan@dechert.com*

</div>

Jon Greenbaum*
Ezra D. Rosenberg*
Pooja Chaudhuri*
Sofia Fernandez Gold*
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street, Suite 900
Washington, DC 20005
(202) 662-8600
*jgreenbaum@lawyerscommittee.org*
*erosenberg@lawyerscommittee.org*
*pchaudhuri@lawyerscommittee.org*
*sfgold@lawyerscommittee.org*

Neil Steiner*
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3822
*neil.steiner@dechert.com*

Robert Notzon
Texas Bar No. 00797934
THE LAW OFFICE OF ROBERT
NOTZON
1502 West Avenue
Austin, Texas 78701
(512) 474-7563
*robert@notzonlaw.com*

Gary Bledsoe
Texas Bar No. 02476500
THE BLEDSOE LAW FIRM PLLC
6633 Highway 290 East #208
Austin, Texas 78723-1157
(512) 322-9992
*gbledsoe@thebledsoelawfirm.com*
*Attorney only as to Texas NAACP's claims*
*related to Texas state senate and state house*
*plans*

Janette M. Louard
Anthony P. Ashton
Anna Kathryn Barnes
NAACP OFFICE OF THE GENERAL
COUNSEL

15

4805 Mount Hope Drive
Baltimore, MD 21215
(410) 580-577
*jlouard@naacpnet.org*
*aashton@naacpnet.org*
*abarnes@naacpnet.org*
*Attorneys appearing of counsel*

*Admitted pro hac vice

*ATTORNEYS FOR THE TEXAS STATE
CONFERENCE OF NAACP*

*s/ Nina Perales*
Nina Perales
Texas Bar No. 24005046
Samantha Serna
Texas Bar No. 24090888
Fátima Menendez
Texas Bar No. 24090260
Kenneth Parreno*
Massachusetts Bar No. 705747
MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL FUND
110 Broadway, Suite 300
San Antonio, TX 78205
(210) 224-5476

*Admitted pro hac vice

*ATTORNEYS FOR LULAC PLAINTIFFS*

*s/ Renea Hicks*
Renea Hicks
Texas Bar No. 09580400
LAW OFFICE OF MAX RENEA HICKS
P.O. Box 303187
Austin, Texas 78703-0504
(512) 480-8231
*rhicks@renea-hicks.com*

Abha Khanna*
ELIAS LAW GROUP LLP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101

16

(206) 656-0177
*akhanna@elias.law*

Aria C. Branch*
David R. Fox*
ELIAS LAW GROUP LLP
10 G Street NE, Suite 600
Washington, D.C. 20002
(202) 968-4490
*abranch@elias.law*
*dfox@elias.law*

Kevin J. Hamilton*
PERKINS COIE
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
 (206) 359-8000
*khamilton@perkinscoie.com*

*Admitted *pro hac vice*

*ATTORNEYS FOR VOTO LATINO
PLAINTIFFS*

<u>s/ George Quesada</u>
George (Tex) Quesada
Texas Bar No. 16427750
Sean J. McCaffity
Texas Bar No. 24013122
SOMMERMAN, MCCAFFITY,
QUESADA & GEISLER, L.L.P.
3811 Turtle Creek Boulevard, Suite 1400
Dallas, Texas 75219-4461
(214) 720-0720
*quesada@textrial.com*
*smccaffity@textrial.com*

Joaquin Gonzalez
Texas Bar No. 24109935
Attorney at Law
1055 Sutton Dr.
San Antonio, TX 78228
*jgonzalez@malc.org*

*ATTORNEYS FOR MEXICAN AMERICAN
LEGISLATIVE CAUCUS PLAINTIFFS*

17

_s/ Martin Golando_
Martin Golando
Texas State Bar No. 24059153
Attorney at Law
2326 W. Magnolia
San Antonio, Texas 78201
(210) 471-1185
_Martin.Golando@gmail.com_

_ATTORNEY FOR TREY MARTINEZ_
_FISCHER_

_s/ Chad W. Dunn_
Chad W. Dunn
Texas Bar No. 24036507
BRAZIL & DUNN
4407 Bee Caves Road
Building 1, Suite 111
Austin, TX 78746
(512) 717-9822
_chad@brazilanddunn.com_

Mark P. Gaber*
MARK P. GABER PLLC
P.O. Box 34481
Washington, DC 20043
(715) 482-4066
_mark@markgaber.com_

Jesse Gaines
Tex. Bar. No. 07570800
P.O. Box 50093
Fort Worth, TX 76105
(817) 714-9988
_gainesjesse@ymail.com_

Molly E. Danahy*
P.O. Box 26277
Baltimore, MD 21211
(208) 301-1202
_danahy.molly@gmail.com_

Sonni Waknin*
10300 Venice Blvd. # 204
Culver City, CA 90232

(732) 610-1283
*sonniwaknin@gmail.com*

*Admitted pro hac vice*

*ATTORNEYS FOR BROOKS PLAINTIFFS*

*s/ Noor Taj*
Noor Taj*
PA State Bar No. 309594
Allison J. Riggs*
NC State Bar No. 40028
Hilary Harris Klein*
NC State Bar No. 53711
Mitchell Brown*
NC State Bar No. 56122
SOUTHERN COALITION FOR SOCIAL
JUSTICE
1415 West Highway 54, Suite 101
Durham, NC 27707
(919) 323-3380
*noor@scsj.org*
*allison@southerncoalition.org*
*hilaryhklein@scsj.org*
*mitchellbrown@scsj.org*

David A. Donatti
Texas Bar No. 24097612
Ashley Harris
Texas Bar No. 24078344
Thomas Buser-Clancy
Texas Bar No. 24123238
Andre I. Segura
Texas Bar No. 24107112
ACLU FOUNDATION OF TEXAS, INC.
P.O. Box 8306
Houston, TX 77288
(713) 942-8146
*ddonnati@aclutx.org*
*aharris@aclutx.org*
*tbuser-clancy@aclutx.org*
*asegura@aclutx.org*

Jerry Vattamala*
NY State Bar No. 4426458
Susana Lorenzo-Giguere*

19

NY State Bar No. 2428688
Patrick Stegemoeller*
N.Y. State Bar No. 5819982
ASIAN AMERICAN LEGAL DEFENSE
AND EDUCATION FUND
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 966-5932
*jvattamala@aaldef.org*
*slorenzo-giguere@aaldef.org*
*pstegemoeller@aaldef.org*

*Admitted pro hac vice*

*ATTORNEYS FOR FAIR MAPS
PLAINTIFFS*


*s/ Gary Bledsoe*
Gary Bledsoe
Texas Bar No. 02476500
THE BLEDSOE LAW FIRM PLLC
6633 Highway 290 East #208
Austin, Texas 78723-1157
Telephone: 512-322-9992
*gbledsoe@thebledsoelawfirm.com*

*ATTORNEY FOR CONGRESSPERSONS*