# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>GREG ABBOTT, *et al.*,<br><br>*Defendants.* | § § § § § § § § § § § § | Case No. 3:21-cv-00259<br>[Lead Case] |
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>STATE OF TEXAS, *et al.*,<br><br>*Defendants.* | § § § § § § § § § § § § | Case No. 3:21-cv-00299<br>[Consolidated Case] |

**REPLY IN SUPPORT OF LEGISLATORS' MOTION TO QUASH OR MODIFY DEPOSITION SUBPOENAS AND MOTION FOR PROTECTIVE ORDER**

**REPLY**

All past is prologue—or at least that is what the United States and the private plaintiffs would have this Court believe. As they tell it, legislators have submitted to depositions in other cases; they must do so again in this case, lest "no legislator would ever have to sit for a deposition." Pls. Opp'n 3-4, ECF 272. The legislators' arguments, of course, are not so absolute.[1] They are particular to this dispute. Given the United States' effects-only claim regarding the house districts and its stated aims for depositions,[2] against the backdrop of Supreme Court precedent and recent courts of appeals cases, the subpoenaed legislators cannot be forced to sit for depositions at this time in this particular case. As the legislators' motion readily acknowledges, in "some extraordinary instances" (paradigmatically, federal criminal prosecutions) a decisionmaker might be called to testify; even then, "such testimony frequently will be barred by privilege." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 (1977) (citing *Tenney v. Brandhove*, 341 U.S. 367 (1951); *United States v. Nixon*, 418 U.S. 683, 705 (1974)); *see, e.g.*, *United States v. Gillock*, 445 U.S. 360, 373 (1980). But, of course, these redistricting cases are not criminal prosecutions. And no plaintiff has yet established that these cases present such extraordinary circumstances that could warrant third-party legislators sitting as the very first deponents.

For the reasons stated in the legislators' motion, at the very least, depositions must wait until motions to dismiss are decided and plaintiffs have exhausted alternative means of discovery. Mot. 5-8.[3] The extraordinary step of deposing a legislator, moreover, is unwarranted when the Supreme Court

---

[1] The legislators filed their motion on May 4, 2022, not on May 5, 2022—as misstated in the United States' opposition brief. *See* Mot., ECF 259 (filed May 4, 2022); *but see* U.S. Opp'n at 2, ECF 271.

[2] The private plaintiffs emailed their own deposition subpoenas for Representatives Guillen, Landgraf, and Lujan on May 6, 2022. The legislators will imminently file a motion to quash those separate subpoenas. That motion will address the private plaintiffs' arguments regarding their intent claims, which they argue places them on different footing than the United States, as well as this Court's recently stated concerns about adjudicating intent in cases where privilege applies. *See* Pls. Opp'n 4-5.

[3] The United States asserts that "Legislators have not—and likely cannot—identify other individuals with the same knowledge that the United States might seek to depose first." U.S. Opp'n 12. While it is not incumbent on third parties to provide a plaintiff with more permissible discovery strategies, counsel has made various

1

is currently considering "the wide range of uncertainties" regarding what §2 requires and what the Equal Protection Clause prohibits in redistricting. *See Merrill v. Milligan*, 142 S. Ct. 879, 883 (2022) (Roberts, C.J., dissenting); *id.* at 889 (Kagan, J., dissenting) (describing the stay in *Merrill* as based on the "view that the law needs to change"). Deposing legislators is a last resort, not a first resort. Mot. 10-17. The legislators do not rehash those arguments here but use this reply to briefly respond to evolving positions and new arguments in the opposition briefing.

**I. Interim relief is necessary while the motion is pending.** After the legislators filed their motion, the United States and private plaintiffs took the extraordinary position that the depositions must proceed on May 24 and May 25 even if there is no ruling from the Court. *See* Ex. A at 4 (5/10/22 email from D. Freeman); Ex. B at 2 (5/12/22 email from T. Meehan). So that this Court has the opportunity to fully consider this motion alongside the imminently forthcoming motion regarding the private plaintiffs' subpoenas to depose the same legislators, the legislators request an interim stay postponing the depositions until there is a decision. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (courts have "inherent" powers to "control … its docket with economy of time and effort for itself, for counsel, and for litigants"); *see, e.g.*, *MetroPCS v. Thomas*, 327 F.R.D. 600, 616 (N.D. Tex. 2018) (staying compliance with deposition subpoena pending decision on deponent's motion to quash).

The legislators' counsel has asked repeatedly why it would be appropriate for the depositions to proceed before the motions to quash are briefed and/or decided. That tack is an attempt to moot the issues before the Court, even though two months remain for discovery and without any effort to pursue alternative means of discovery including depositions of those outside the legislature. *See* Ex. A

---

suggestions: noticing a 30(b)(6) deposition for discussion of the non-privileged public record; deposing others living in the challenged districts, such as past candidates who are not sitting legislators; expert discovery, which will inevitably be center-stage for *Gingles*; making use of volumes of publicly available information regarding the districts from the public legislative record, publicly posted submissions by the public and by legislators, and the U.S. Census Bureau; and pursuing less intrusive discovery than depositions to seek non-privileged, relevant information from legislators themselves.

2

at 1, 3 (5/11/22 email from T. Meehan; 5/9/22 email from T. Meehan); Ex. B at 2 (5/12/22 email from T. Meehan). The only response has been timing. *See, e.g.*, Ex. A at 2 (5/10/22 email from D. Freeman). When pressed on timing, counsel stated that they believe a trial in another case demands that these legislators be deposed here and now in this case. Ex. B at 2 (5/12/22 email from T. Meehan). That is no response. Counsel's obligations in another case are not a reason to press ahead with a third-party legislator's deposition in this case, only to find that the deposition should not have occurred or will have to be reopened. *Cf.* Fed. R. Civ. P. 45(d)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."). The timing concerns also appear to be pretextual: Counsel has offered to discuss extending the discovery period by joint agreement so that legislator depositions could be postponed and alternative discovery pursued; as of this filing, the parties have not entertained that offer. *See* Ex. B at 1 (5/13/22 email from D. Fox) (confirming opposition to motion to quash).

Pressing ahead without a ruling transgresses Rule 45. The United States and private plaintiffs have an obligation to avoid undue burden and expense when it comes to third-party discovery. Fed. R. Civ. P. 45(d)(1). Pressing ahead also risks mooting the important legislative immunity and privilege issues, with all of the attendant federalism concerns, that are pending before this Court. The pending motion argues that the depositions should not proceed at all at this time. But the United States intends to press ahead anyway, order or no order, to depose legislators about the legislation, *i.e.*, "whether the policies underlying the House plan are 'tenuous.'" U.S. Opp'n 2-3. For perhaps the most egregious example, the United States confirms it intends to put one of the subpoenaed legislators under oath to ask him about switching parties—a legislator whom the United States concedes was the candidate of choice when affiliated with the Democratic party. U.S. Opp'n 11 n.9; *see* Compl. ¶117. That line of inquiry has no conceivable relevance to any constitutionally permissible version of the Voting Rights Act, implicates First Amendment associational privileges, and can only be meant to harass.

3

Accordingly, the legislators respectfully request that the Court issue an interim stay that postpones the depositions to allow the Court sufficient time to decide the legislators' motions.

**II. Legislative immunity and privilege hang together.** The United States and private plaintiffs wrongly fault the legislators for "conflating" immunity with privilege. Pls. Opp'n 7; U.S. Opp'n 5.[4] It would be serious legal error to deem legislative immunity irrelevant here. In *Tenney*, the Supreme Court described "[t]he privilege of legislators to be free from arrest *or civil process* for what they do or say in legislative proceedings." 341 U.S. at 372 (emphasis added). The American origins of that "privilege" began with the state constitutions. The Maryland Declaration of Rights, for example, declared that "'freedom of speech, and debates or proceedings in the Legislature ought not be impeached in any other court or judicature.'" *Id.* at 372 (quoting Md. Decl. of Rights art. VIII (1776)). Likewise, in New Hampshire: "The freedom of deliberation, speech, and debate, in either house of the legislature is so essential to the rights of the people that it cannot be the foundation of *any action*, complaint, or prosecution…." *Id.* at 374 (emphasis added) (quoting N.H. Const. Part I, art. XXX). Neither *Tenney* nor those constitutional origins distinguish between "immunity" and "privilege," much less deem principles of legislative immunity irrelevant. *Tenney*, and the privilege's constitutional foundations, apply equally to actions in which the legislator is himself a defendant and actions where the legislator is called to testify by power of a subpoena. The third-party legislators have no fewer protections here than the legislator who is sued as a defendant. Whether described as legislative immunity or privilege, they are twin safeguards. Subpoenaing a legislator to answer for his legislative acts poses the same

---

[4] They are likewise wrong to suggest that the principle that "legislators … should be protected not only from the consequences of litigation's results, but also from the burden of defending themselves," *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967), doesn't apply to state legislators. U.S. Opp'n 5. *Dombrowski* does not single out federal legislators; it relies on *Tenney*, a decision specific to legislative immunity and privilege for state legislators. 387 U.S. at 85; *see also Sup. Ct. of Va. v. Consumers Union*, 446 U.S. 719, 732-33 (1980) (relying on *Dombrowski*); *Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 405 (1978) (reasoning regarding legislative immunity "is equally applicable to federal, state, and regional legislators"); *Reeder v. Madigan*, 780 F.3d 799, 805 (7th Cir. 2015) ("There is no reason to find that [state] legislators along with their aides are entitled to lesser protection than their peers in Washington.").

threats to legislative independence and imposes the same burdens on his office by "detract[ing] from the performance of official duties" as would serving a legislator as a defendant. *In re Hubbard*, 803 F.3d 1298, 1310 (11th Cir. 2015); *see also* Mot. 11 (citing *E.E.O.C. v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 181 (4th Cir. 2011)).

**III. Evolving standards of privilege.** The crux of the parties' opposition appears to be that protections for state legislators have evolved (to seeming nonexistence). Quoting a Title VII case involving abrogation of state sovereign immunity, not legislative privilege, the United States argues that "[w]hatever protections eighteenth century law afforded state legislators," the Supreme Court "'has sanctioned intrusions by Congress, acting under the Civil War Amendments, into the judicial, executive, and legislative spheres of autonomy previously reserved to the States.'" U.S. Opp'n 4-5 (quoting *Fitzpatrick v. Bitzer*, 427 U.S. 445, 455 (1976)). That too contradicts what the Supreme Court has said about protections for state legislators. Time and again, the Court has explained that the Civil Rights Act of 1871, known today as §1983 and contemporaneous with the Reconstruction Amendments, did *not* abrogate the state legislators' common law immunity and privilege. *See Sup. Ct. of Va.*, 446 U.S. at 732-33 (generally equating immunity for state legislators in §1983 actions to that accorded to Congressmen under the Constitution); *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998) (same).

**A.** Relatedly, the United States and private plaintiffs repeatedly quote favored *dictum* from *Jefferson Community Health Care Centers v. Jefferson Parish*, 849 F.3d 615 (5th Cir. 2017), while ignoring what actually happened in *Jefferson*, ignoring the Supreme Court rules actually binding on this Court, and ignoring recent decisions by the courts of appeals with far more analogous facts. *Jefferson* involved an eviction dispute against a Louisiana parish, including its councilmembers. Before reversing an injunction entered by the district court, the court addressed councilmembers' arguments that they could not be sued. *Id.* at 624. The United States' and private plaintiffs repeatedly quote *Jefferson*, which in turn only quotes *Perez v. Perry*, 2014 WL 106927 (W.D. Tex. Jan. 8, 2014), which in turn relies on the flawed

5

decision in *Rodriguez v. Pataki*, 280 F. Supp. 2d 89 (S.D.N.Y. 2003): privileges must be "strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." *Id.* They ignore that this *dictum* is contrary to *Tenney* and progeny: "Legislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence *but for the public good*. One must not expect uncommon courage even in legislators." 341 U.S. at 377 (emphasis added); *accord Lee v. City of Los Angeles*, 908 F.3d 1175, 1187-88 (9th Cir. 2018) ("we have likewise concluded that the plaintiffs are generally barred from deposing local legislators, even in 'extraordinary circumstances'"); *Hubbard*, 903 F.3d at 1310-11 (not qualifying privilege). And they ignore that the court in *Jefferson* ultimately assumed, without deciding, that privilege applied: "even assuming that the councilmembers' reasons for passing the revolutions are privileged in the sense that they cannot be directly compelled to disclose them, this evidentiary privilege cannot bar the adjudication of a claim" against the parish and local councilmembers. 849 F.3d at 624. *Jefferson* has no holding deciding any discovery issue, much less ordering depositions of state legislators.

      **B.** Finally, the United States and private plaintiffs believe that because legislators were deposed in past Texas voting rights disputes, they must be deposed again here. U.S. Opp'n 6-8; Pls. Opp'n 1. That logic reduces legislative immunity and privilege to nothing. This is not a continuation *Perez*. Nor a continuation of *Texas v. United States*. Nor a continuation of *Veasey*. Since then, the Supreme Court has cast further doubt on the relevance of evidence regarding individual legislators, affirming that such testimony is not to be equated to evidence pertaining to "the legislature as a whole" in *Brnovich v. Democratic National Committee*, 141 S. Ct. 2321, 2349-50 (2021). *See* Mot. 16-17; *accord Am. Trucking Ass'n v. Alviti*, 14 F.4th 76, 90 (1st Cir. 2021) (noting that the "Supreme Court has warned against relying too heavily on such evidence" of "individual lawmakers' motives to establish that the legislature as a whole [acted] with any particular purpose"). And courts of appeals have in the interim continued to

6

safeguard legislative privilege by quashing not only deposition subpoenas but also document subpoenas, in ways that cannot be reconciled with requiring legislator depositions at this stage of this case. *See* Mot. 15-16 (discussing First, Eleventh, and Ninth Circuit cases).

Most fundamentally, laser focus on past voting rights disputes leads the United States to ignore the particular question here: whether the United States may depose legislators, before anyone else, for their claim that house districts have a discriminatory effect under §2—a question ordinarily reserved for dueling expert witnesses. *See* Mot. 6-8. In the United States' words, it intends to ask legislators "whether the stated policies underlying the House plan are 'tenuous'" under the soon-to-be clarified *Gingles* framework. U.S. Opp'n 5 (quoting *Gingles*, 478 U.S. at 37). For the reasons stated in the legislators' motion, that inquiry is bound to implicate privileged testimony, probing what was really on the minds of legislators then and now about the reasons for the resulting district lines—expressly anticipated by Rule 45 as grounds for quashing the subpoenas. Fed. R. Civ. P. 45(d)(3)(A)(iii).[5]

---

[5] The United States argues that Representative Lujan "holds no legislative privilege with respect to the 2021 House plan" because he assumed office the month after the bill passed. U.S. Opp'n 9. For starters, that does not address the legislators' argument that deposing a sitting legislator is a last resort, not a first resort. *In re Perry*, 60 S.W.3d 857, 861-62 (Tex. 2001) ("all other available evidentiary sources must first be exhausted before extraordinary circumstances will be considered"); *Austin Lifecare, Inc. v. City of Austin*, 2012 WL 12850268 (W.D. Tex. Mar. 20, 2012) ("Plaintiffs have alternative methods for discovering the information they seek," including the public record); *Harding v. Dallas*, 2016 WL 7426127, at *8-9 (N.D. Tex. Dec. 23, 2016) (finding no extraordinary circumstances warranted deposing county redistricting commissioners). And on the merits, it remains to be seen how the United States could unscramble the egg with respect to Representative Lujan's privilege now. Questioning Representative Lujan about the "effects" of enacted districts is tantamount to asking him to opine, under oath, on both existing legislation and to pre-decide future legislation including any possible remedial legislation ordered by this Court. *Cf. ACORN v. Cnty. of Nassau*, 2007 WL 2815810, at *6 (E.D.N.Y. Sept. 25, 2007) (barring discovery of legislators, who had not "pre-determined their positions" and sought ought information to "begin their deliberations"); *Gov't Suppliers Consolidating Servs., Inc. v. Bayh*, 133 F.R.D. 531, 535-36 (S.D. Ind. 1990) (finding post-decisional materials protected by deliberative process privilege). And it no less offends one of the privilege's principal purposes to ensure sitting lawmakers can "focus on their public duties" rather than be called to testify to defend the legislature in civil suits. *Wash. Suburban Sanitary Comm'n*, 631 F.3d at 181; *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975) (protections ensure civil litigation will not cause members "to divert their time, energy, and attention from their legislative tasks to defend the litigation"). Legislative privilege safeguards "duly elected legislators" including Representative Lujan "to discharge their public duties without concern of adverse consequences outside the ballot box." *Lee*, 908 F.3d at 1187.

Even if privilege were parsed question-by-question, the burden of deposing the legislators to sit through hours of privileged questioning cannot outweigh any benefit of obtaining non-privileged, relevant (or irrelevant) information. Fed. R. Civ. P. 45(d)(3)(A)(iv) (quashing for burden). For example, the United States asserts that it is free to depose legislators to answer purportedly non-privileged questions that could be put to any fact witness, including questions about "political behavior, the history of discrimination, and socioeconomic disparities" in their districts. U.S. Opp'n 10-11. Even setting aside the ways in which such inquiries still "burden" legislators with "defending themselves" in lawsuits challenging legislative acts, *Dombrowski*, 387 U.S. at 85, the United States has no response to the legislators' argument that such information can be derived in alternative ways, *supra* n.3. In sum, the nature of that claim, the stated aims of the depositions, and the stage of proceedings makes this case nothing like previous instances in which legislators have testified, either because they waived privilege or otherwise chose not to move to quash or appeal adverse rulings. Mot. 14-16 & nn.8-9.[6]

**IV. Any adverse inference is improper.** Finally, to the extent the United States and private plaintiffs seek to use depositions as a face-to-face opportunity to pressure legislators to waive privilege, that is yet another reason for quashing the depositions altogether. Private plaintiffs suggest that they intend to ask privileged questions regarding intent and then pin legislators with an adverse inference if legislators invoke privilege. *See* Pls. Opp'n 5. They rely on the Court's recently issued preliminary injunction opinion for that assertion. *See id.* (stating that "refusal to answer a question may in and of itself 'strengthen[] the inference' that previously stated reasons for redrawing a map were 'at best, highly incomplete, and, at worst, disingenuous'" (quoting Op. 50, ECF 258)). Their threat of an

---

[6] The United States asserts that "Representative Guillen and Representative Landgraf have also waived privilege regarding specific communications with legislative outsiders, including executive branch officials, Members of Congress, party leaders, and other members of the public," without any further explanation or argument. U.S. Opp'n 10. The legislators have repeatedly invoked privilege. The United States' bald assertion without any supporting evidence or explanation is no basis for pressing ahead with depositions of legislators first and everyone else later.

8

adverse inference appears to derive from the opinion's observation that, "[t]hough courts may not draw negative inferences from a criminal defendant's assertion of his Fifth Amendment rights, no similar constraint binds our assessment of a civil witness's assertion of legislative privilege." ECF 258 at 49. To be sure, "*the Fifth Amendment* does not forbid adverse inferences against parties to *civil actions* when they refuse to testify in response to probative evidence offered against them," *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) (emphasis added), and more generally privileges cannot be used as both a sword and shield. But any inferences stop there.

For purposes of this motion involving third-party legislators involuntarily subpoenaed for depositions, it would be serious legal error to draw any adverse inference from the invocation of longheld and historically rooted privileges, or for the United States government or private plaintiffs to threaten the same during any deposition. The proper analogy is to other privileges in civil disputes. Various courts have held that it is impermissible to draw an adverse inference when attorney-client privilege is invoked. *See, e.g.*, *In re WR Grace & Co.*, 729 F.3d 332, 348 (3d Cir. 2013) ("A negative inference should not be drawn against Grace merely because it chose to protect the privacy of attorney-client communications."); *Knorr-Bremse v. Dana Corp.*, 383 F.3d 1337, 1344 (Fed. Cir. 2004); *Parker v. Prudential Ins.*, 900 F.2d 772, 775 (4th Cir. 1990). Other privileges have been similarly safeguarded, without any threat of an adverse inference. *See, e.g.*, *Jaffee v. Redmond*, 51 F.3d 1346, 1344, 1358 (7th Cir. 1995) (remanding for new trial after trial court gave jury adverse inference instruction for invocation of psychotherapist-patient privilege); *Jewell v. Holzer Hosp. Found., Inc.*, 899 F.2d 1507, 1514 (6th Cir. 1990) (refusing to permit jury to draw adverse inference for invocation of physician-patient privilege); *Black v. Sheraton Corp. of Amer.*, 564 F.2d 550, 556 (D.C. Cir. 1977) (stating it was "dubious that an adverse inference can be drawn from a fully justified assertion of a privilege" by the Government and concluding, in any event, that "[i]t would be irrational and unfair to drawn an adverse inference against [the non-government defendant] for the government's assertion of privilege"). That is consistent with

the federal rules, permitting discovery of only "nonprivileged" information. Fed. R. Civ. P. 26(b)(1); *see Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1087 (5th Cir. 1979) (finding "no provision in the federal discovery rules which authorizes a court to impose sanctions on a party who resists discovery by asserting a valid claim of privilege").

The same rules apply for legislative privilege. It is no safeguard at all if legislators' mere invocation of privilege is sufficient to assume the worst in legislators. It would eviscerate the required presumption of legislative good faith. *But see Miller v. Johnson*, 515 U.S. 900, 915 (1995) (requiring presumption); *Abbott v. Perez*, 138 S. Ct. 2305, 2324-25 (2018) (same). The Supreme Court's warning in *Tenney* remains as true today as when it was decided: "The privilege would be of little value if [legislators] could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives." 341 U.S. at 377.

\* \* \*

The root of the parties' disagreement is whether legislative privilege as prescribed by the common law and our constitutional structure governs here, or whether the United States and private plaintiffs' bespoke test for (non) privilege in redistricting disputes does. To require the third-party legislators to sit for depositions in this case at this time—with the parties having failed to pursue any alternative means of discovery, with motions to dismiss pending, and with the Supreme Court poised to resolve persistent confusion about the limits of the §2 claims here—would depart from Supreme Court precedent, it would depart from decisions by courts of appeals in analogous cases, and it would perpetuate the redistricting-is-different discovery fallacy that has long evaded appellate review. For these reasons and those in the pending and forthcoming motions, the legislators respectfully request that the Court issue an interim order postponing the depositions to allow adequate time to brief and decide these important issues of legislative privilege and then grant the legislators' motion.

Date: May 13, 2022                                Respectfully submitted,

                                                  */s/ Taylor A.R. Meehan*
Adam K. Mortara*                                  J. Michael Connolly
LAWFAIR LLC                                       Taylor A.R. Meehan*
125 South Wacker, Suite 300                       Frank H. Chang*
Chicago, IL 60606                                 Jeffrey S. Hetzel*
Tel: (773) 750-7154                               CONSOVOY MCCARTHY PLLC
mortara@lawfairllc.com                            1600 Wilson Blvd., Suite 700
                                                  Arlington, VA 22209
                                                  Tel: (703) 243-9423
                                                  mike@consovoymccarthy.com
                                                  taylor@consovoymccarthy.com
                                                  frank@consovoymccarthy.com
                                                  jhetzel@consovoymccarthy.com

                                                  *Counsel for Reps. Guillen, Landgraf, and Lujan*

                                                  **Admitted pro hac vice*

                                                  */s/ Patrick K. Sweeten*
KEN PAXTON                                        PATRICK K. SWEETEN
Attorney General of Texas                         Deputy Attorney General for Special Litigation
                                                  Tex. State Bar No. 00798537
BRENT WEBSTER
First Assistant Attorney General                  WILLIAM T. THOMPSON
                                                  Deputy Chief, Special Litigation Unit
                                                  Tex. State Bar No. 24088531

                                                  JACK B. DISORBO
                                                  Assistant Attorney General, Special Litigation Unit
                                                  Tex. State Bar No. 24120804

                                                  OFFICE OF THE ATTORNEY GENERAL

                                                  P.O. Box 12548 (MC-009)
                                                  Austin, Texas 78711-2548
                                                  Tel.: (512) 463-2100
                                                  Fax: (512) 457-4410
                                                  patrick.sweeten@oag.texas.gov
                                                  will.thompson@oag.texas.gov
                                                  jack.disorbo@oag.texas.gov

                                                  *Counsel for Reps. Guillen, Landgraf, and Lujan*
                                                     *and Defendants*

11

## CERTIFICATE OF CONFERENCE

I certify that counsel conferred with counsel for the United States regarding the subject of this motion. Counsel for the United States indicated it opposed any motion to quash or modify the subpoena, which confirms opposition to the relief sought here.

/s/ Taylor A.R. Meehan
TAYLOR A.R. MEEHAN

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on May 13, 2022, and that all counsel of record were served by CM/ECF.

/s/ Taylor A.R. Meehan
TAYLOR A.R. MEEHAN