IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, | § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | Case No. 3:21-cv-00259 [Lead Case] |
| GREG ABBOTT, *et al.*, | § § § | |
| *Defendants.* | § § § | |

**LEGISLATORS' MOTION TO QUASH OR MODIFY PRIVATE PLAINTIFFS' DEPOSITION SUBPOENAS AND MOTION FOR PROTECTIVE ORDER**

## INTRODUCTION

Private plaintiffs in these consolidated cases join the United States in the pursuit to depose three sitting legislators before deposing anyone else. The legislators already moved to quash or modify subpoenas served by the United States, or in the alternative for a protective order. ECF 259 ("Mot."); ECF 277 ("Reply"). For the same reasons, the legislators request the same relief for subpoenas served by the private plaintiffs, which seek to depose the same legislators on the same dates. *See* Ex. A (Rep. Guillen subpoena); Ex. B (Rep. Landgraf subpoena); Ex. C (Rep. Lujan subpoena). The legislators' privilege arguments are no more "remarkable"[1] than binding Supreme Court precedent on the subject or decisions by courts of appeals abiding by that precedent. Legislative privilege and immunity safeguard the legislative process—safeguards "so essential" that they were written into state and federal constitutions. *Tenney v. Brandhove*, 341 U.S. 367, 372-75 (1951). Legislators engaged "in the sphere of legitimate legislative activity" are protected "not only from the consequences of litigation's results but also from the burden of defending themselves." *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967). For that reason, even in cases involving allegations of intentional discrimination, other courts of appeals have "concluded that the plaintiffs are generally barred from deposing legislators, even in 'extraordinary circumstances.'" *Lee v. City of Los Angeles*, 908 F.3d 1175, 1187-88 (9th Cir. 2018); *accord Am. Trucking Ass'n, Inc. v. Alviti*, 14 F.4th 76, 90-91 (1st Cir. 2021); *In re Hubbard*, 803 F.3d 1298, 1315 (11th Cir. 2015).

## BACKGROUND

Private plaintiffs brought the following suits, since consolidated, to enjoin redistricting legislation for congressional, senate, house, and/or State Board of Education (SBOE) districts:

- **The LULAC plaintiffs** (3:21-cv-259) challenge congressional, senate, house, and SBOE redistricting legislation. LULAC Second-Am. Compl., ECF 237. Among other allegations, they allege that legislation violates §2 of the VRA and the Fourteenth Amendment for failing to maximize majority-Latino house and congressional districts in certain locales and for

---

[1] Pls. Opp'n to Legislator's Mot. to Quash United States' Subpoenas 2, ECF 272 ("Pls. Opp'n").

1

weakening Latino voting strength in HD 31, 37, 90, and 118. *Id.* ¶¶7, 134-40, 142-45, 163-68. Their complaint also includes a malapportionment claim for house districts in West Texas, while averring that the aggregate population deviation of the house plan is less than 10%. *Id.* ¶¶148-50, 182-85; *but see Brown v. Thomson*, 462 U.S, 835, 842 (1983) ("apportionment plan with a maximum population deviation under 10% falls within this category of minor deviations"); *White v. Regester*, 412 U.S. 755, 764 (1973) ("we cannot glean an equal protection violation from the single fact that two legislative districts in Texas differ from one another by as much as 9.9% when compared to the ideal district"). Defendants have until May 18, 2022, to answer or move to dismiss.

- **The MALC plaintiffs** (1:21-cv-988) challenge congressional, house, and SBOE redistricting legislation. MALC First-Am. Compl., ECF 247. With respect to congressional districts, MALC challenges CD 15 and 23, even though both districts exceed 50% HCVAP. *Id.* ¶¶156, 160. MALC also alleges that certain Dallas/Tarrant and Harris County districts should be redrawn to increase Latino voting strength. *Id.* ¶¶163-66. With respect to house districts, MALC challenges the failure to add opportunity districts in different locales and the configuration of El Paso house districts, mirroring the United States' allegations. *Id.* ¶¶89-97. MALC also challenges HD 31, 37, 80, 90, 118, and 145, all of which MALC avers maintain HCVAP exceeding 66%, 77%, 77%, 49%, 56%, and 55% respectively. *Id.* ¶¶101, 110, 117, 126, 131, 140; *see also id.* ¶120 (conceding that legislation "would *not* make HD 80 unwinnable by the Latino/Spanish language community candidate of choice" (emphasis added)). MALC further alleges that the number of majority-Latino congressional, house, and senate districts is disproportionate to the Latino citizen voting age population. *Id.* ¶¶167, 176-79; *but see* 52 U.S.C. §10301(b) ("nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population"). The complaint concludes that the congressional, house, and SBOE districts violate §2 and the Fourteenth and Fifteenth Amendments, *id.* ¶¶238-45, and that house districts are unconstitutionally malapportioned, *id.* ¶¶246-49. Defendants have until May 18, 2022, to answer or move to dismiss.

- **The Brooks plaintiffs** (1:21-cv-991) challenge changes to SD 10, as well as HD 54, 55, and 118, and congressional districts in Dallas/Fort Worth and Houston. Brooks First-Am. Compl., ECF 236. The complaint alleges that SD10, HD 54, HD55, and HD 118 violate §2 of the VRA and the Fourteenth and Fifteenth Amendments, *id.* ¶¶211-26, 236-52, and that the failure to create a congressional coalition district and another majority-Latino congressional district violates §2, *id.* ¶¶227-35. This Court denied plaintiffs' preliminary injunction motion regarding SD 10. ECF 176, 258. Defendants have until May 18, 2022, to answer or move to dismiss.

- **The Voto Latino plaintiffs** (1:21-cv-965) allege that congressional and house redistricting legislation violates §2. Voto Latino First-Am. Compl., ECF 235. The complaint does not include intentional discrimination claims. *Id.* ¶¶155-63. They challenge the resulting concentration of Latino voters in CD 15, 16, 20, 21, 23, 27, 28, 34, and 35 as either too high or too low. *Id.* ¶¶78-89. They fault the legislation for failing to create additional majority-minority or coalition districts in Dallas, Houston, and Tarrant County, *id.* ¶¶90-101, and for failing to disperse (and thereby maximize) Latino votes in Harris County, *id.* ¶¶102-06. Defendants have until May 18, 2022, to answer or move to dismiss.

- **The Texas State Conference of the NAACP** (1:21-cv-1006) has filed a complaint premised on the theory that redistricting legislation can violate §2 for failure to maximize voting strength

for "people of color" generally, or "POC CVAP." NAACP Compl. ¶¶27-28, No. 1:21-cv-1006, ECF 1. The complaint alleges in conclusory terms that "[t]he vast majority of voters of color in Texas vote cohesively" and that §2 prohibited "add[ing] more white voters" to districts. *Id.* ¶¶96, 101. Reciting the number of representatives by race, the complaint alleges that myriad senate, house, and congressional districts with majority "POC CVAP" are disproportionate to the overall population. *Id.* ¶¶106-204; *but see* 52 U.S.C. §10301(b) (disclaiming proportionality as basis for claim). The complaint concludes that senate, house, and congressional redistricting legislation violates §2 and the Fourteenth and Fifteenth Amendments, including for failure to create "minority coalition districts." *Id.* ¶¶205-30. Defendants' motion to dismiss, including for lack of standing and for failure to state a claim, is pending. *See* ECF 82, 107, 117.

- **The Fair Maps Texas Action Committee plaintiffs** (1:21-cv-1038) allege that the congressional, senate, and house redistricting legislation "discriminate[s] against voters of color by failing to create additional districts that afford opportunities for voters of color to elect their candidates of choice, whether by single racial or ethnic group or by voting in coalition…." Fair Maps Compl. ¶83, No. 1:21-cv-1038, ECF 1. The complaint describes "imbalance in representation" and states that "Black, Latino, and AAPI voters continue to be proportionality [*sic*] underrepresented in the Texas legislature and congressional delegation." *Id.* ¶¶85, 110, 112, 147; *but see* 52 U.S.C. §10301(b) ("nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population"). The complaint concludes that congressional, senate, and house redistricting legislation violates §2, including for failure to maximize majority-minority districts and for failure to create coalition districts, as well as the Fourteenth and Fifteenth Amendments. *Id.* ¶¶151-61. Defendants' motion to dismiss the complaint, including for lack of standing and failure to state a claim, is pending. *See* ECF 181, 191, 193.

- **Plaintiff Fischer** (3:21-cv-306) challenges only CD 35 as a violation of §2 and the Equal Protection Clause. *See* Fischer First-Am. Compl. ¶¶92, 139, ECF 217 ("Plaintiff is *only* challenging the enacted configuration of CD 35 in SB 6."). Defendants' motion to dismiss Rep. Fischer's amended complaint is pending. ECF 233, 260, 267.

- **The Escobar plaintiffs** (3:22-cv-22) challenges neighboring CD 16 and 23 as violating §2 and the Equal Protection Clause. Escobar Compl., No. 3:22-cv-22, ECF 1. After Defendants moved to dismiss the complaint, plaintiffs filed a motion to amend. ECF 223, 229. The motion has been granted but the amended complaint has not yet been re-docketed. Defendants have until May 18, 2022, to answer or move to dismiss.

- **Plaintiff-Intervenors** allege that CD9, 18, and 30 violate §2 and the Equal Protection Clause based in part on allegations of retrogression. Johnson First-Am. Compl., ECF 209. Defendants have moved to dismiss, including because the complaint does not allege that Black voters are unable to elect their candidate of choice in those congressional districts. ECF 225.

Until late last month, there was relatively little discovery of third-party legislators by the private plaintiffs. A few weeks ago, the LULAC plaintiffs issued subpoenas for legislative documents, and subpoena recipients will be producing non-privileged, responsive documents and invoking applicable

3

privileges for others. The NAACP has since issued similar subpoenas. Then last week—before the ink was dry on the document subpoenas and after the United States issued deposition subpoenas for Texas House Representatives Ryan Guillen, Brooks Landgraf, and John Lujan—the private plaintiffs issued their own deposition subpoenas for the same representatives. *See* Exs. A-C.

Counsel have met and conferred. Counsel for the legislators asked what basis there could be for deposing a sitting legislator now and whether plaintiffs would be open to alternatives. *See* Ex. D at 6-7 (5/9/22 email from J. DiSorbo). In response, Plaintiffs stated they believe depositions should proceed on May 24 and 25 even without a ruling from this Court, unless this Court issues an interim stay. *Id.* at 2 (5/12/22 email from T. Meehan). Plaintiffs further stated that they plan to ask legislators otherwise-privileged questions about what motivated them during the redistricting process, about the *Gingles* standard, and other topics that plaintiffs could not enumerate during the parties' meet and confer. *Id.* at 1-2 (5/12/22 email from T. Meehan; 5/13/22 email from D. Fox). Meanwhile, Plaintiffs filed a brief in support of the United States' opposition to the legislators' motion to quash the United States' deposition subpoenas. *See generally* Pls. Opp'n, ECF 272. In that brief, they distinguished their intent claims from the United States' effect claims, endorsed a non-binding multi-factor balancing test that has evaded appellate review, and suggested that an adverse inference would be appropriate if legislators invoke privilege. *Id.* at 4-5, 7-11.

## ARGUMENT

The legislators incorporate by reference the arguments made in their pending motion (ECF 259) and reply brief (ECF 277) regarding the United States' deposition subpoenas. As an initial matter, the legislators request interim relief postponing the depositions to allow for adequate time to brief and decide the pending motions. *See* Reply 2-3. Plaintiffs' insistence that depositions proceed even without a ruling from this Court transgresses Rule 45's requirement that they take reasonable steps to avoid undue burden and cost and risks mooting the issues pending before this Court. *Id.*

On the merits, the legislators have not asked for a categorical ban on legislator depositions for cases of all types and in all circumstances, contrary to plaintiffs' arguments (Pls. Opp'n 3-4). The legislators have instead moved for orders quashing or modifying the subpoenas in light of the particular circumstances here. *See* Reply 1-2. Among other reasons, plaintiffs must pursue alternative means of discovery before attempting the "extraordinary" step of deposing sitting legislators. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 (1977); *see, e.g., Austin Lifecare, Inc. v. City of Austin*, 2012 WL 12850268, at *2 (W.D. Tex. Mar. 20, 2012) (quashing deposition subpoenas based, in part, because "Plaintiffs have alternative methods for discovering the information they seek," including the public record); *see In re Perry*, 60 S.W.3d 857, 861-62 (Tex. 2001) (relying on *Arlington Heights* for requirement that "all other available evidentiary sources must first be exhausted"). Plaintiffs' first move cannot be legislator depositions. It remains to be decided whether certain plaintiffs have standing or whether certain plaintiffs have even stated a claim; Defendants haven't even had an opportunity to move to dismiss recently amended pleadings, *supra*, let alone know what the rules will be for plaintiffs' redistricting claims after the Supreme Court decides *Merrill v. Milligan*, No. 21-1086. *See* Mot. 7-9. At this time, quashing the deposition subpoenas altogether would be consistent with the practice of other courts abiding by the Supreme Court's privilege precedents. *Id.* at 10-17. At the very least, should any depositions proceed, the legislators request a protective order prohibiting deposing legislators about privileged matters, including matters beyond the public record. *Id.* at 9-10.

**I.     Intent claims do not trump legislative privilege.**

Plaintiffs contend that their allegations of intentional discrimination (as compared to the United States' effects-only claim) allow them to probe what motivated the legislators: "In intent cases, knowledge about what motivated a decisionmaker at the time of the decision is relevant and subject to discovery." Pls. Opp'n 4; *see also* Ex. D at 2 (5/12/22 email from T. Meehan). They wrongly suggest

5

that refusal to answer questions about intent warrants an adverse inference. Pls. Opp'n 5.[2] And they wrongly contend that if privilege were to bar intent-based inquiries, that "would effectively bar any court from 'ever accurately and effectively determin[ing] intent.'" *Id.* (quoting Op. 50 n.14, ECF 258).

**A.** Legislative privilege no less applies to intentional discrimination claims than it does to other claims. The privilege applies with "full force" even in cases where legislators' motives are at the "factual heart" of plaintiffs' claims. *Hubbard*, 803 F.3d at 1310-11, 1315 (quashing subpoenas). Plaintiffs' "categorical exception whenever a constitutional claim directly implicates the governments intent … would render the privilege 'of little value.'" *Lee*, 908 F.3d at 1188; *see Am. Trucking*, 14 F.4th at 90 (describing "inherent challenges of using [deposition] evidence of individual lawmakers' motives to establish that the legislature as a whole enacted [law] with any particular purpose"). That is consistent with the Supreme Court's repeated observation that courts generally must "equate[]" protections afforded to federal legislators with protections afforded to state legislators for constitutional claims brought under §1983, Plaintiffs' constitutional claims included. *Sup. Ct. of Va. v. Consumers Union*, 446 U.S. 719, 732-33 (1980); *see Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998). While legislative privilege must bend for *federal criminal prosecutions*, the Supreme Court has never qualified state legislators' privilege as plaintiffs would in a civil matter such as this one. *See* Mot. 13-14 (discussing *Gillock*).

**B.** In these proceedings already, this Court rejected that privilege must bend to claims of intentional discrimination. The Brooks plaintiffs asked this Court to preliminarily enjoin SD 10 based on intentional discrimination claims. *See* Mot. for Prelim. Inj., ECF 39 at 24-43. At the hearing, this Court ruled that a state senator could testify about that "within the public record," but anything

---

[2] Fully explained in the legislators' reply brief in support of the motion to quash the United States' deposition subpoenas, any adverse inference would be legal error. Reply 8-10; *see, e.g.*, *In re WR Grace & Co.*, 729 F.3d 332, 348 (3d Cir. 2013) ("A negative inference should not be drawn against Grace merely because it chose to protect the privacy of attorney-client communications."); *Jaffee v. Redmond*, 51 F.3d 1346, 1358 (7th Cir. 1995) (remanding for new trial after erroneous adverse inference instruction).

beyond the public record would entail a waiver of legislative privilege. PI Tr. 152:1-5 (Vol. 5) ("Senator Huffman will be allowed to testify to everything within the public record; and if she goes outside the public record, she will waive her privilege."). The Court sustained objections to questions about the senator's mental impressions or opinions regarding legislation, or what otherwise motivated or informed her or others during the legislative process. *See, e.g.*, PI Tr. 152:2-7 (Vol. 6); PI Tr. 25:6-10 (Vol. 7); PI Tr. 29:6-20 (Vol. 7).

That ruling is consistent with Supreme Court precedent and the approaches taken by the courts of appeals in similar circumstances. *See Tenney*, 341 U.S. at 373-77; *Dombrowski*, 387 U.S. at 85; *see also In re Stone*, 986 F.2d 898, 904 (5th Cir. 1993) (warning officials "could never do their jobs" if subject to such discovery because they would be less willing to explore all options before them, lest they "be subpoenaed for every case involving their agency"). For example, in a recent redistricting challenge involving allegations of race-based intent, the Ninth Circuit followed its general rule that legislators could not be deposed. *See Lee*, 908 F.3d at 1187-88. Similarly, the Eleventh Circuit refused to require legislators to turn over privileged documents precisely *because* the legislators' privileged subjective intent could not be disentangled from the plaintiffs' claim. *See Hubbard*, 803 F.3d at 1310-11; *accord Am. Trucking Ass'n*, 14 F.4th at 91 (quashing deposition subpoenas); *Biblia Abierta v. Banks*, 129 F.3d 899, 905 (7th Cir. 1997) ("An inquiry into a legislator's motives for his actions, regardless of whether those reasons are proper or improper, is not an appropriate consideration for the court.").[3]

Plaintiffs disagree, based in part on a footnote in this Court's preliminary injunction opinion. *See* Pls. Opp'n 4-5. The Court recently said that it was "concerned about the scope of state legislative privilege" because "[s]tate legislative privilege in this context raises serious questions about whether this Court (or any court) could ever accurately and effectively determine intent." Op. 50 n.14.

---

[3] Plaintiffs have relied on the passing observation in *Jefferson Community Health Care Centers* that legislative privilege is strictly construed—inconsistent with Supreme Court precedent and straying from other appellate courts. That *dictum* does not require anything different of courts in the Fifth Circuit. *See* Reply 5-6.

The Supreme Court has answered those concerns. As a starting point, even "[t]he claim of an unworthy purpose does not destroy the privilege." *Tenney*, 341 U.S. at 377. "The privilege would be of little value" if legislators could be subject to "the hazard of a judgment against them based upon … speculation as to motives." *Id.* There are instead alternative means for probing legislative purpose, detailed by the Supreme Court in *Arlington Heights*—a case also involving allegations of invidious intent. 429 U.S. at 267-68. Those alternatives include "[t]he historical background of the decision," the "sequence of events leading up to the challenged decision," or "legislative or administrative history" including "contemporary statements by members of the decisionmaking body"—all materials from the public record. *Id.* Importantly, the Supreme Court cautioned that proving legislative purpose did not entail probing the minds of decisionmakers except in extraordinary circumstances: "In some extraordinary instances, the members might be called to the stand to testify concerning the purpose of the official action, although *even then such testimony frequently will be barred by privilege*." *Id.* at 268 (emphasis added); *accord Lee*, 908 F.3d at 1188 ("*Arlington Heights* itself also involved an equal protection claim alleging racial discrimination—putting the government's intent directly at issue—but nonetheless suggested that such a claim was not, in and of itself, within the subset of 'extraordinary instances' that might justify an exception to the privilege"). After all, such "judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government." *Arlington Heights*, 429 U.S. at 268 n.18. Simply put—the Supreme Court has already disclaimed that testimony from legislators is necessary to a court's truth-seeking mission regarding legislative purpose, versus other more reliable alternatives.[4]

---

[4] Plaintiffs have argued that *Arlington Heights* doesn't mean what it says because the decision elsewhere notes that board members were in fact questioned in discovery. Pls. Opp'n 4. *Arlington Heights* does not specify whether such discovery entailed depositions, whether public officials challenged or appealed any such discovery orders, whether there was any privilege waiver, or other relevant factors including whether the calculus would have been different had state legislators been the target of discovery. But here's what the Court's decision does say: the district court in *Arlington Heights* "forbade questioning Board members about their motivation at the time they cast their votes." 429 U.S. at 270 n.20. It is forbidden here too.

8

There is good reason that any one legislator's motivations or impressions are protected. The probative value is weak at best, while the affront to federalism and comity is at its zenith. Evidence of any one legislator's intent cannot be conflated with the legislature's purpose as a whole. *See Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2349-50 (2021); *accord Am. Trucking*, 14 F.4th at 90 (noting that the "Supreme Court has warned against relying too heavily on such evidence" of "individual lawmakers' motives to establish that the legislature as a whole [acted] with any particular purpose"). For "[w]hat motivates one legislator to make a speech about a statute," let alone his internal thoughts and impressions, "is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for [courts] to eschew guesswork." *United States v. O'Brien*, 391 U.S. 367, 384 (1968). Evidence of legislative purpose is instead divined from the public record, *see Arlington Heights*, 429 U.S. at 267-68, alongside the presumption that legislatures act in good faith, *see Miller v. Johnson*, 515 U.S. 900, 915 (1995); *Abbott v. Perez*, 138 S. Ct. 2305, 2324-25 (2018). Understood in that way, legislative privilege helps ensure that litigation remains focused on that which motivated the legislature as a whole, consistent with the obligation that courts not "strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive" by one or a few. *O'Brien*, 391 U.S. at 383-84.

## II. The Court must reject Plaintiffs' balancing test.

Plaintiffs endorse the flawed balancing test employed by some district courts, which has largely evaded appellate review. *See* Mot. 13-17. It has never been endorsed by the Supreme Court, nor employed by courts of appeals in analogous cases including the Ninth Circuit's redistricting decision in *Lee*. Illustrated by plaintiffs' own application of that test, Pls. Opp'n 7-10, it is easily manipulated to reduce privilege to a nullity. Plaintiffs' balancing of benefits and burdens for deposing legislators looks little different than the balancing that would occur under Rule 45 and other generally applicable federal

9

discovery rules.[5] It makes no sense, in light of *Tenney* and progeny, that legislators would be entitled no greater protection than any other target of third-party discovery.

Plaintiffs, moreover, are wrong that *Rodriguez*, the district court decision first adopting the nebulous multi-factored legislative privilege test, used it to justify legislative depositions. Pls. Opp'n 10. Exactly the opposite: the court emphasized that plaintiffs were "*not* seeking any depositions of legislators or their staff." 280 F. Supp. at 96 (emphasis added); *see also id.* (noting legislators had not moved to dismiss). Even in *Veasey v. Perry*, the privilege dispute initially involved legislators' documents, not depositions. 2014 WL 1340077, at *1 (S.D. Tex. Apr. 3, 2014). And in *Perez*, the Court refused to apply *Rodriguez* in a way that pierced legislative privilege entirely, contrary to plaintiffs' demands here. *See* Mot. 14-15 & n.8. At this stage of the proceedings—with motions to dismiss yet to be filed, with the Supreme Court currently considering the metes and bounds of redistricting claims, and with all parties having failed to first exhaust other discovery alternatives, *see* Reply 2 n.3; Ex. D at 2 (5/12/22 email from T. Meehan)—it would be error on top of error to apply *Rodriguez* to justify legislator depositions, let alone depositions exploring legislators' motivations and impressions regarding redistricting legislation.

## CONCLUSION

The legislators respectfully request that the Court issue an interim order postponing depositions pending resolution of these related motions. The legislators further request that the Court quash or modify the subpoenas, or in the alternative enter a protective order.

---

[5] *Compare Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 101 (S.D.N.Y. 2003) (first factor considers "relevance of the evidence sought to be protected,"), *with* Fed. R. Civ. P. 26(b)(1) (limiting "scope of discovery" generally to "relevant" material); *compare Rodriguez*, 280 F. Supp. 2d at 101 (second factor considers "availability of other evidence" and third factor considers "'seriousness' of the litigation and the issues involved"), *with* Fed. R. Civ. P. 45(d)(1) (requiring parties to avoid undue burden or expense when subpoenaing third parties), *and* Fed. R. Civ. P. 26(b)(1) (considering "importance of the discovery in resolving the issues").

Date: May 13, 2022                                    Respectfully submitted,

                                                      /s/ Taylor A.R. Meehan
Adam K. Mortara*                                      J. Michael Connolly
LAWFAIR LLC                                           Taylor A.R. Meehan*
125 South Wacker, Suite 300                           Frank H. Chang*
Chicago, IL 60606                                     Jeffrey S. Hetzel*
Tel: (773) 750-7154                                   CONSOVOY MCCARTHY PLLC
mortara@lawfairllc.com                                1600 Wilson Blvd., Suite 700
                                                      Arlington, VA 22209
                                                      Tel: (703) 243-9423
                                                      mike@consovoymccarthy.com
                                                      taylor@consovoymccarthy.com
                                                      frank@consovoymccarthy.com
                                                      jhetzel@consovoymccarthy.com

                                                      *Counsel for Reps. Guillen, Landgraf, and Lujan*

                                                      **Admitted pro hac vice*

                                                      /s/ Patrick K. Sweeten
KEN PAXTON                                            PATRICK K. SWEETEN
Attorney General of Texas                             Deputy Attorney General for Special Litigation
                                                      Tex. State Bar No. 00798537
BRENT WEBSTER
First Assistant Attorney General                      WILLIAM T. THOMPSON
                                                      Deputy Chief, Special Litigation Unit
                                                      Tex. State Bar No. 24088531

                                                      JACK B. DISORBO
                                                      Assistant Attorney General, Special Litigation Unit
                                                      Tex. State Bar No. 24120804

                                                      OFFICE OF THE ATTORNEY GENERAL

                                                      P.O. Box 12548 (MC-009)
                                                      Austin, Texas 78711-2548
                                                      Tel.: (512) 463-2100
                                                      Fax: (512) 457-4410
                                                      patrick.sweeten@oag.texas.gov
                                                      will.thompson@oag.texas.gov
                                                      jack.disorbo@oag.texas.gov

                                                      *Counsel for Reps. Guillen, Landgraf, and Lujan
                                                         and Defendants*

11

## CERTIFICATE OF CONFERENCE

I certify that counsel conferred with counsel for plaintiffs regarding the subject of this motion. Counsel for plaintiffs indicated they oppose any motion to quash or modify the subpoena, which confirms opposition to the relief sought here.

*/s/ Taylor A.R. Meehan*
TAYLOR A.R. MEEHAN

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on May 13, 2022, and that all counsel of record were served by CM/ECF.

*/s/ Taylor A.R. Meehan*
TAYLOR A.R. MEEHAN