# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> GREG ABBOTT, *et al.*, <br><br> *Defendants.* | § § § § § § § § § § § § § | Case No. 3:21-cv-00259 <br> [Lead Case] |
| UNITED STATES OF AMERICA, <br><br> *Plaintiff,* <br><br> v. <br><br> STATE OF TEXAS, *et al.*, <br><br> *Defendants.* | § § § § § § § § § § § § | Case No. 3:21-cv-00299 <br> [Consolidated Case] |

## LEGISLATORS' EMERGENCY MOTION TO STAY
## LEGISLATORS' DEPOSITIONS PENDING APPEAL

House Members Ryan Guillen, Brooks Landgraf, and John Lujan are third parties to this redistricting litigation. The United States and all private plaintiffs in these consolidated suits issued subpoenas to depose these legislators. The legislators moved to quash the subpoenas. *See* Mot. to Quash United States' Subpoenas, ECF 259; Reply in support of Mot. to Quash United States' Subpoenas, ECF 277; Mot. to Quash Plaintiffs' Subpoenas, ECF 278. This Court has denied the motion. ECF 282. The legislators now intend to seek immediate relief from the Fifth Circuit. Accordingly, the legislators request a stay of the depositions pending the Fifth Circuit's review. *See* Fed. R. App. P. 8(a)(1).

A stay is necessary so that the legislators do not forfeit arguments underlying their motion to quash. Depositions are noticed for May 24 and May 25, 2022, and the United States and private

plaintiffs will not postpone. Whether those depositions can proceed, including whether legislators must answer privileged questions by the United States' and plaintiffs' counsel under seal, indisputably raises "serious legal questions" about the scope of legislative immunity and privilege. *Weingarten Realty Inv'rs v. Miller*, 661 F.3d 904, 910 (5th Cir. 2011). Because the legislators have presented a "substantial case on the merits" and the equities heavily favor a stay, a stay is warranted. *Id.*

## Background

The United States issued its first set of deposition subpoenas to depose Representatives Guillen, Landgraf, and Lujan—each of whom is a third party to these consolidated redistricting disputes. *See* ECF 259-1 (Guillen subpoena); ECF 259-2 (Landgraf subpoena), ECF 259-3 (Lujan subpoena).[1] To the legislators' knowledge, the United States has not subpoenaed any party or any other third parties at this time. The legislators moved to quash the deposition subpoenas, ECF 259, at which point private plaintiffs issued deposition subpoenas to depose the same House members. *See* ECF 278-1 (Guillen subpoena); ECF 278-2 (Landgraf subpoena), ECF 278-3 (Lujan subpoena).

The Court has denied the legislators' motion to quash the deposition subpoenas. ECF 282. Its order prescribes a deposition procedure requiring the legislators to "appear and testify for depositions, even if it appears likely that legislative privilege may be invoked in response to certain questions." ECF 282 at 4. Questions may be objected to on the basis of privilege, but despite the objection "the deponent invoking the privilege must then answer the question in full." *Id.* The privileged answers will be deemed confidential and then later examined by the Court under seal in future motions to compel. *Id.* at 5.

The United States' and private plaintiffs' have noticed the legislators' depositions for May 24 and May 25, 2022. The legislators asked the parties to postpone the depositions pending this Court's

---

[1] Since issuing the subpoenas, the United States and plaintiffs agreed that Representative Guillen's subpoena, initially noticed for May 19, 2022, could be taken instead on May 24, 2022. The United States and plaintiffs have refused requests to further postpone depositions to accommodate time for this Court's ruling and now appellate review.

decision, and the parties refused. *See* ECF 278-2 (Ex. B). After the Court's ruling, the United States and private plaintiffs confirmed that they continue to oppose a motion to postpone the depositions, now pending the Fifth Circuit's review. Accordingly, the legislators seek a stay of the depositions in this Court pending the legislators' request for review in the Fifth Circuit. *See* Fed. R. Civ. P. 8(a)(1). Given the exigency, the legislators also intend to seek immediate relief from the Fifth Circuit by filing an emergency stay motion in the Fifth Circuit tomorrow morning.

## Argument

Courts consider four factors for a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quotation marks omitted). Those factors are not to be applied "in a rigid, mechanical fashion." *United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 39 (5th Cir. 1983). For example, "where there is a serious legal question involved and the balance of the equities heavily favors a stay ... the movant only needs to present a substantial case on the merits." *Weingarten Realty Inv'rs v. Miller*, 661 F.3d 904, 910 (5th Cir. 2011); *see, e.g.*, *Baylor*, 711 F.2d at 40 (granting stay in case presenting "serious legal question that could have a broad impact upon federal/state relations"); *Vine v. PLS Fin. Servs., Inc.*, 226 F. Supp. 3d 708, 718 (W.D. Tex. 2016) (granting stay including because order involved issue "of first impression before the Fifth Circuit"). Applying those factors here, a stay of the legislators' depositions pending appeal is warranted.

**1.** The legislators are likely to succeed on the merits. For all of the reasons already briefed, it is extraordinary for legislators to be called to testify in litigation challenging legislation. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 (1977). And even in those "extraordinary instances," "such testimony frequently will be barred by privilege." *Id.* (citing *Tenney v. Brandhove*, 341 U.S. 367

3

(1951); *United States v. Nixon*, 418 U.S. 683, 705 (1974)). Since the first state constitutions, legislators have been "protected not only from the consequences of litigation's results, but also from the burden of defending themselves." *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967); *see Tenney*, 341 U.S. at 372-75 (detailing state constitutional provisions). That includes being called to testify as third parties in depositions. *See, e.g.*, *Lee v. City of Los Angeles*, 908 F.3d 1175, 1187-88 (9th Cir. 2018) (concluding "plaintiffs are generally barred from deposing local legislators, even in 'extraordinary circumstances'"); *see E.E.O.C. v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 181 (4th Cir. 2011) ("Because litigation costs do not fall on named parties alone, this privilege applies whether or not the legislators themselves have been sued."); *In re Hubbard*, 803 F.3d 1298, 1308 (11th Cir. 2015) (applying unqualified privilege "whether or not legislators themselves have been sued").

Further warranting a stay pending review, the legislators' arguments undoubtedly entail "serious legal question[s]" compelling a stay. *Weingarten*, 661 F.3d at 910; *see Baylor*, 711 F.2d at 40. There is a deepening split of authority about the scope of legislators' immunity and privilege. The First, Ninth, and Eleventh Circuits have rejected attempts to depose legislators or subpoena their documents; they have not required legislators to sit for depositions and assess privilege after-the-fact. *See Lee*, 908 F.3d at 1187-88 (affirming district court's refusal to make legislators sit for depositions in redistricting dispute with intent claims); *Am. Trucking Ass'n, Inc. v. Alviti*, 14 F.4th 76, 88-90 (1st Cir. 2021) (quashing legislator depositions); *In re Hubbard*, 803 F.3d at 1315 (quashing document subpoenas and refusing to burden legislators with detailed privilege log requiring "lawmakers to peruse the subpoenaed documents, to specifically designate and describe which documents were covered by the legislative privilege, or to explain why the privilege applied"); *accord Marylanders for Fair Representation v. Schaefer*, 144 F.R.D. 292, 299 (D. Md. 1992) (concluding legislators "deserve all of the protection the *Tenney* court extended to them" and "entirely barr[ing]" "*any* inquiry"). Likewise, the Texas Supreme Court has rejected attempts to depose legislative officials in analogous circumstances. *See In re Perry*,

60 S.W.3d 857, 858, 862 (Tex. 2001) (concluding plaintiffs failed to establish extraordinary circumstances warranted an exception to legislative privilege and immunity to depose officials in redistricting dispute). On the other side of the ledger, as detailed by the United States and private plaintiffs, other district courts instead employ a multi-factored balancing test regarding the scope of legislative privilege, which ordinarily leads those courts to permit depositions of legislators or subpoenas for their documents. *See* ECF 282 at 2-3.

The subject of this split of authority—the scope of a state legislators' immunity and privilege—is also undoubtedly serious, meriting "a detailed and in depth examination" by the Fifth Circuit. *Baylor*, 711 F.2d at 40. The Fifth Circuit has not previously considered the issues presented here—issues raising serious questions of federal-state relations of nationwide importance. That is, when may litigants bypass legislative privilege as it is ordinarily applied and instead compel state legislators not only to sit for depositions but also to answer their privileged questions? *See, e.g., Sup. Ct. of Va. v. Consumers Union*, 446 U.S. 719, 723-33 (1983) ("equat[ing]" protections afforded to state legislators in §1983 litigation with those afforded to federal legislators); *compare Hubbard*, 803 F.3d at 1307-08 (prohibiting discovery of legislators in case alleging First Amendment violation); *Am Trucking*, 14 F.4th at 91 (prohibiting depositions of legislators in case alleging Dormant Commerce Clause violation). That is no small question. The Supreme Court has described legislative privilege as "'indisputably necessary'" and "firmly established in the States" at the time of the founding. *Tenney*, 341 U.S. at 373 (quoting II Works of James Wilson 38 (Andrews ed. 1896)). Then and now, legislative privilege "would be of little value if [legislators] could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives." *Id.* That it is "not consonant with our scheme of government for a court to inquire into the motives of legislators, has remained unquestioned." *Id.*; *Arlington Heights*, 429 U.S. at 268 n.18 ("judicial inquiries into legislative or executive motivation represent a substantial intrusion into the

workings of other branches of government"). Whether Texas legislators or redistricting can work an exception to that rule—so far qualified by the Supreme Court only in federal *criminal* cases[2]—is a quintessential question of serious legal importance warranting the Fifth Circuit's review. So that this important question does not continue to evade review, and given the substantial federalism and comity interests at stake, a stay is warranted.

**2.** The legislators will be irreparably injured absent a stay. The legislators' very argument is that legislative immunity and privilege prevent the United States and private plaintiffs from calling the legislators to testify by deposition at this time in this case. *See* ECF 259 at 11-13; ECF 277 at 2-8. Without a court-ordered stay of the depositions pending appeal, the United States and private plaintiffs' position is that the legislators must sit for depositions next Tuesday and Wednesday, on May 24 and 25, 2022. The legislators will then be required to provide answers to the United States' and private plaintiffs' privileged questions under seal. ECF 282 at 4-5.

Once those depositions occur, pursuant to those procedures, the harm is done. *See In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 761 (D.C. Cir. 2014) (Kavanaugh, J.) ("appeal after final judgment will often come too late because the privileged materials will already have been released" and "'the cat is out of the bag'"); *In re U.S. Dep't of Educ.*, 25 F.4th 692, 705 (9th Cir. 2022) ("the harm to [former Secretary] DeVos is the intrusion of the deposition itself, and so the harm is not correctable on appeal, even if her testimony is excluded at trial"); *see also In re United States*, 542 F. App'x 944, 947 (Fed. Cir. 2013) (unpublished) ("The right to not appear during deposition would be lost if review was denied until final judgment."). Bypassing alternative means of discovery, requiring a legislator to sit for a deposition, and further requiring legislators' answers to privileged questions under seal transgresses

---

[2] *See United States v. Gillock*, 445 U.S. 360, 373 (1980); *accord Gravel v. United States*, 408 U.S. 606, 627 (1972) ("[W]e cannot carry a judicially fashioned privilege so far as to immunize criminal conduct proscribed by an Act of Congress or to frustrate the grand jury's inquiry into whether publication of these classified documents violated a federal criminal statute." (emphasis added)); *Trammel v. United States*, 445 U.S. 40, 51 (1980) (qualifying spousal privilege in federal criminal prosecution).

the very purposes of legislative privilege and immunity. It burdens the legislators with defending themselves in litigation over legislation, rather than sparing legislators from such discovery absent extraordinary circumstances. *Dombrowski*, 387 U.S. at 85; *see Tenney*, 341 U.S. at 377 (privilege necessary to safeguard legislative independence by immunizing legislators "from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good, for "[o]ne must not expect uncommon courage even in legislators"). Among other harms, pressing ahead no less harms the legislators' ability to "focus on their public duties," and "discharge th[ose] public duties without concern of adverse consequences outside the ballot box." *Wash. Suburban Sanitary Comm'n*, 631 F.3d at 181; *Lee*, 908 F.3d at 1187.

**3.** Staying depositions pending the Fifth Circuit's review will not substantially injure the other parties. There is ample time for the legislators to seek review before the depositions proceed. Indeed, one of the legislators' primary arguments here has been that the United States and private plaintiffs have other discovery to take; they should never have subpoenaed the legislators as their *very first* deponents. *See* ECF 259 at 6-7; ECF 277 at 1-2 & n.3; *see, e.g.*, *In re Perry*, 60 S.W.3d at 861-62 (relying on *Arlington Heights* for requirement that "all other available evidentiary sources must first be exhausted before extraordinary circumstances will be considered," noting that "plaintiffs have alternative information sources available" and that "plaintiffs have neither alleged nor demonstrated any extraordinary circumstance that might justify what would appear to be an almost unprecedented incursion into legislative immunity"); *Austin Lifecare, Inc. v. City of Austin*, 2012 WL 12850268, at *2 (W.D. Tex. Mar. 20, 2012) ("Plaintiffs have alternative methods for discovering the information they seek," including the public record). The United States and private plaintiffs have not offered any reason why they cannot pursue that alternative discovery while the Fifth Circuit considers reviews the legislators' immunity and privilege arguments. *Accord Baylor*, 711 F.2d at 40 (concluding "a delay of the investigation pending appeal will not substantially harm the investigatory process"). Discovery does not close in this case

until July 15, 2022, or later by agreement of the parties. Counsel for the legislators even offered to extend discovery for purposes of these legislator depositions should they be ruled permissible—with no response from the United States or private plaintiffs. *See* ECF 277 at 2-3; ECF 277-2 (5/12/22 email from T. Meehan).

**4.** Finally, the public interest favors a stay. As the Supreme Court observed decades ago in *Tenney*, legislative privilege serves "the public good." 341 U.S. at 377. The privilege is necessary to safeguard legislative independence, something "deemed so essential for representatives of the people" that it was codified in the federal constitution, and state constitutions before that. *Id.* at 372-77. It harms the public to put their legislators to the choice of forfeiting their legislative immunity and privilege and sitting for a deposition, thereby subjecting legislators to defending themselves not only at the ballot box but also here in litigation. *See Baylor*, 711 F.2d at 40 (finding stay will serve public interest to avoid "put[ting] Baylor Medical Center to the choice of foregoing its legal position or losing all Medicaid and Medicare funding until the appellate process has run its normal course," including because the "interest of the Medicaid and Medicare recipients would be seriously compromised").

Presumably, plaintiffs will contend that this is the extraordinary case, different from others. But history has proven that to be false. Time and again in Voting Rights Act disputes, Texas legislators have been ordered to sit for depositions as if those suits are exempt from the ordinary protections of legislative immunity and privilege. *See* ECF 282 at 2-3 (citing past VRA disputes). Indeed, the United States and plaintiffs' primary argument here has been that because legislators have been deposed before, it can happen again here. The scope of the legislators' immunity and privilege should not continue to evade the Fifth Circuit's review, as it did in past VRA disputes. A stay is warranted.

## Conclusion

For the foregoing reasons, the legislators seek a stay of the depositions pending the Fifth Circuit's review of the denial of the legislators' motion to quash the deposition subpoenas.

| | |
|---|---|
| Date: May 18, 2022 | Respectfully submitted, |
| | */s/ Taylor A.R. Meehan* |
| Adam K. Mortara* | J. Michael Connolly |
| LAWFAIR LLC | Taylor A.R. Meehan* |
| 125 South Wacker, Suite 300 | Frank H. Chang* |
| Chicago, IL 60606 | Jeffrey S. Hetzel* |
| Tel: (773) 750-7154 | CONSOVOY MCCARTHY PLLC |
| mortara@lawfairllc.com | 1600 Wilson Blvd., Suite 700 |
| | Arlington, VA 22209 |
| | Tel: (703) 243-9423 |
| | mike@consovoymccarthy.com |
| | taylor@consovoymccarthy.com |
| | frank@consovoymccarthy.com |
| | jhetzel@consovoymccarthy.com |
| | *Counsel for Reps. Guillen, Landgraf, and Lujan* |
| | **Admitted pro hac vice* |
| | */s/ Patrick K. Sweeten* |
| KEN PAXTON | PATRICK K. SWEETEN |
| Attorney General of Texas | Deputy Attorney General for Special Litigation |
| | Tex. State Bar No. 00798537 |
| BRENT WEBSTER | |
| First Assistant Attorney General | WILLIAM T. THOMPSON |
| | Deputy Chief, Special Litigation Unit |
| | Tex. State Bar No. 24088531 |
| | JACK B. DISORBO |
| | Assistant Attorney General, Special Litigation Unit |
| | Tex. State Bar No. 24120804 |
| | OFFICE OF THE ATTORNEY GENERAL |
| | P.O. Box 12548 (MC-009) |
| | Austin, Texas 78711-2548 |
| | Tel.: (512) 463-2100 |
| | Fax: (512) 457-4410 |
| | patrick.sweeten@oag.texas.gov |
| | will.thompson@oag.texas.gov |
| | jack.disorbo@oag.texas.gov |
| | *Counsel for Reps. Guillen, Landgraf, and Lujan and Defendants* |

### CERTIFICATE OF CONFERENCE

I certify that counsel conferred with counsel for the United States and private plaintiffs regarding the subject of this motion. Counsel indicated they opposed any motion to stay the depositions pending the Fifth Circuit's immediate review, which confirms opposition to the relief sought here.

*/s/ Taylor A.R. Meehan*
TAYLOR A.R. MEEHAN

### CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on May 18, 2022, and that all counsel of record were served by CM/ECF.

*/s/ Taylor A.R. Meehan*
TAYLOR A.R. MEEHAN