IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, | § § § § | |
| *Plaintiffs*, | § § | Case No. 3:21-cv-00259 |
| v. | § § | [Lead Case] |
| GREG ABBOTT, *et al.*, | § § | |
| *Defendants*. | § § | |

**OPPOSITION TO MOTIONS TO SEAL**

NAACP, Fair Maps, and LULAC move to file amended complaints under seal. ECF 321, 322, 326. Defendants respectfully request that those motions to seal be denied.

**INTRODUCTION**

Plaintiffs filed amended pleadings because, among other reasons, their previous complaints failed to allege facts that, if proven, would establish that the organizational plaintiffs have associational standing. Under this framework, the Court recently explained, an artificial entity may at times "assert the standing of its members." ECF 307 at 10; *see also id.* at 13 (a corporate entity "may assert [a member's] injury as its own."). But the complaint must still allege a factual basis for the *member*'s standing. That is, the "organization must identify 'a specific member' to assert standing on his behalf." *Id.* at 11 (quoting *NAACP v. City of Kyle*, 626 F.3d 233, 237 (5th Cir. 2010)). The organizational plaintiffs failed to identify specific members as to most of their claims, and so lacked standing to assert those claims.

NAACP, Fair Maps, and LULAC now name specific members who they claim have standing to challenge the configuration of their respective districts, but they ask the Court to keep those names under seal. The Court should deny the motions to seal for at least three reasons.

First, there is a strong public interest in the accessibility of judicial records. "Judicial records are public records. And public records, by definition, presume public access." *Bihn Hoa Le v. Exeter*

1

*Finance Corp.*, 990 F.3d 410, 416 (5th Cir. 2021). As Judge Willett explains, "[t]he public's right of access to judicial proceedings is fundamental." *Id.* at 418. Courts therefore, should be "ungenerous with their discretion to seal judicial records." *Id.* Plaintiffs' motion disregards this essential principle.

Second, Plaintiffs base their motions on the Supreme Court's decision in *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958), but the First Amendment interests underlying that case—preventing "physical hostility" or "economic reprisal" flowing from the compelled disclosure of the NAACP's entire member list in the Jim Crow South—do not apply here. *Id.* at 463. *NAACP* and the other cases plaintiffs cite arise in circumstances where an organization is *compelled* by state law to disclose their membership list. *See, e.g.*, *Familias Unidas v. Briscoe*, 619 F.3d 391, 399 (5th Cir. 1980) (explaining that *NAACP* applies to "compulsory disclosure of organizational ties."). But here, Defendants have not compelled Plaintiffs' members to do anything. These members chose to participate in this litigation by allowing Plaintiffs to assert claims on their behalf. Having affirmatively taken action against the State, these members cannot then invoke the defensive protection of *NAACP*.

Third, even if the concerns identified in *NAACP* could theoretically apply here, Plaintiffs have failed to show that their members in fact face those concerns. Indeed, Plaintiffs identify no specific instances where members were harassed or threatened based solely on their being named in a redistricting lawsuit. Rather, plaintiffs cite harassing messages sent to NAACP executive officers, ECF 321 at 5–6, general assertions of "racial violence," ECF 322 at 4, and comments posted on Facebook news articles, ECF 326 at 3. To be sure, these actions, if true, are reprehensible. But they do not show that individual members will be put at risk by these complaints being filed publicly.

In fact, the treatment of current named plaintiffs tends to show the opposite. By Defendants' count, across the private plaintiffs, there are seventy-one individually named plaintiffs (excluding organizations and legislative officials). These individuals are presumably more prominent than members named only for purposes of associational standing, yet there are no accounts of their being harassed

2

or threatened. Defendants are sensitive to the possibility of safety and economic concerns. But those concerns do not appear to be present here.

## STANDARD

A "strict[] balancing test" applies to a motion to seal a document "filed on the public record." *Bihn Hoa Le*, 990 F.3d at 419 (citing *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 450 (5th Cir. 2019)).[1] The beginning of this balancing test is a "presumption in favor of the public's common law right of access to court records." *SEC v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993). Bearing in mind the above, courts "must undertake a case-by-case, 'document-by-document,' 'line-by-line' balancing of 'the public's common law right of access against the interests favoring non-disclosure." *Bihn Hoa Le*, 990 F.3d at 419 (quoting *United States v. Sealed Search Warrants*, 868 F.3d 385, 390 (5th Cir. 2017)). To prevail, movants "must articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process." *Kroy IP Holdings, LLC v. Safeway, Inc.*, No. 2:12-cv-800, 2015 WL 432012, at *2 (E.D. Tex. Feb. 2, 2015) (quoting *Apple Inc. v. Samsung Electronics Co.*, 727 F.3d 1214, 1221 (Fed. Cir. 2013)).

## ARGUMENT

### I.  Judicial Records are Presumptively Public

"[T]he working presumption is that judicial records should not be sealed," *Bihn Hoa Le*, 990 F.3d at 419, and Plaintiffs have not rebutted that presumption. Plaintiffs hardly address this principle, dismissing the strong public interest in access to judicial records as unimportant. *See, e.g.*, ECF 321 at 4 (asserting that preserving public access to the complaints has "no legitimate benefit"). To the

---

[1] The NAACP cites the wrong standard, contending that a motion to seal may be supported by "good cause." ECF 321 at 3. But the good cause standard applies to protective orders and documents produced in discovery. By contrast, "at the *adjudicative* stage, when materials enter the court record, the standard for shielding records from public view is far more arduous. *June Med. Servs., LLC v. Phillips*, 22 F.4th 512, 521 (5th Cir. 2022).

3

contrary, to the extent these members have consented to allow Plaintiffs to bring claims against the State on their behalf, the public is entitled to know who they are and the basis of their alleged injury. Furthermore, the public is entitled to monitor how the judicial process affects these members (and the State). "[T]he public has a right to monitor the exercise of judicial authority," and that monitoring cannot exist where "important judicial decisions are made behind closed doors and, worse, [where] private litigants do the closing." *Bihn Hoa Le*, 990 F.3d at 418 (quotation omitted).

LULAC argues that a member's privacy interest is stronger when he is not a named plaintiff. ECF 326 at 4 (citing *Ins. Distributors Inter'l (Bermuda) LTD v. Edgewater Cons. Grp. LTD*, No. 1:08-cv-767, 2010 WL 3064003, at *2 (W.D. Tex. Aug. 2, 2010) (Austin, M.J.)). But the case LULAC cites does not distinguish between parties and non-parties at all. In fact, the case cuts *against* LULAC's position here. The district court sealed the sensitive investment and banking information, but summarily declined to seal mentions of the movants' name or other identifying references. *See Ins. Distributors*, 2010 WL 3064003 at *1 ("The Court finds that . . . references to [movant's] family . . . and references that would permit the reader to identify [movant's] family . . . are not proper candidates for redaction.").

Keeping judicial records public is especially important in the redistricting context because of the substantial public interest in these cases. "[T]he rationale for public access is even greater" where, as here, the case "involve[s] matters of particularly public interest." *Bradley ex rel. AJW v. Ackal*, 954 F.3d 216, 233 (5th Cir. 2020) (citation omitted); *see also Shane Grp. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016) ("[T]he greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access."). In this setting, perhaps as much as in any other, the public is entitled to know who brings claims against the State (or who allows organizations to do so on their behalf).

Sealing Plaintiffs' complaints also poses downstream problems. Of course, a "complaint is not evidence of the facts that are there alleged." *Turner v. Cincinnati Ins. Co.*, 9 F.4th 300, 315 (5th Cir.

4

2021); *Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020) ("Normally, too, the essential elements of a claim remain constant through the life of a lawsuit. What a plaintiff must do to satisfy those elements may increase as a case progresses from complaint to trial, but the legal elements themselves do not change."). Just as Plaintiffs must now *allege* they have specific members with standing to challenge the pertinent electoral districts, at trial, they must *prove* it.

Presumably, Plaintiffs will attempt to prove their standing by offering each members' testimony. But Plaintiffs' arguments would have the Court seal the courtroom each time such a witness is called to testify. The Court would also have to redact the trial transcript during each member's testimony, and at any mention of the member's name. Redaction of the findings of fact and conclusions of law would be necessary too.[2] The Court should not allow this substantial interference with the public's access to judicial records, especially in a case of particular public concern.

**II.   *NAACP v. Alabama ex rel. Patterson* Does Not Apply Here**

The Court should deny the motions to seal for the additional reason that the central basis for Plaintiffs' motions—*NAACP v. Alabama ex rel. Patterson*—does not apply here. *NAACP*'s logic extends only to a defensive posture. Bringing a lawsuit to enforce state corporate laws, the State of Alabama moved to compel the production of the NAACP's member list. But the Supreme Court explained that "compelled disclosure of affiliation with groups engaged in advocacy may constitute . . . a restraint on the freedom of association." 357 U.S. at 462. Notwithstanding the fact that downstream effects were caused by private actors, the Court was clear that Alabama's seeking the production of the member list was the act that triggered the First Amendment violation. *See id.* at 463 ("The crucial factor is the interplay of governmental and private action, for it is only after the initial exertion of state power represented by the production order that private action takes hold.").

---

[2]  The Court would also have to redact briefing on future dispositive motions, seal the courtroom if argument is presented, and redact any orders and opinions on the dispositive motions.

Plaintiffs also point to *Americans for Prosperity Foundation v. Bonta*, 141 S. Ct. 2373 (2021), as being a recent affirmance of *NAACP*, but the former is inapposite for the same reason as the latter. Like *NAACP*, *Americans for Prosperity* involved a purely defensive posture. There, the California Department of Justice passed a regulation requiring charitable organizations to disclose the identities of their major donors to the state attorney general. Several charitable organizations challenged the rule, arguing that the compelled disclosure of their donors violated the First Amendment. *See id.* at 2379–82. Just as in *NAACP*, it was affirmative state action (the California "Attorney General's disclosure requirement," *id.* at 2389) that triggered the First Amendment violation.

Courts have recently rejected Plaintiffs' exact argument. Earlier this year, the Tenth Circuit explained that *NAACP* is "distinguishable" from the "associational standing" posture because the latter "involved a *compelled disclosure.*" *Cowboys for Trump, Inc. v. Oliver*, No. 21-2015, 2022 WL 454169, at *3 (10th Cir. Feb. 15, 2022) (Tymkovich, C.J.) (emphasis added). The decision in *Freedom Watch, Inc. v. McAleenan*, 442 F. Supp. 3d 180 (D.D.C. 2020), is similar. There, the organizational plaintiff cited *NAACP*, arguing that it could establish associational standing without naming its members because its members would otherwise face "ridicule" and "possible retaliation." *Id.* at 194. The court rejected this argument, explaining that *NAACP* "does not stand for the broad proposition that an organization automatically obtains Article III standing on behalf of its members anytime that a member would prefer to avoid identification—as Plaintiff appears to assert." *Id.*

Although *NAACP v. Alabama ex rel. Patterson* prevents the government from compelling organizations to disclosure information that would threaten their associational rights, the State has taken no action to compel disclosure here. To be sure, Article III as applied to associational standing requires Plaintiffs to name the "specific member[s]" they contend are injured by the new electoral maps. ECF 307 at 11. But that disclosure is a result of those members' decision to allow Plaintiffs to assert injuries on their behalf. That is a voluntary choice, not a State-compelled disclosure.

6

### III. Plaintiffs Have Not Shown Their Members Face Threats or Harassment

Finally, even supposing *NAACP* applies here, Plaintiffs have not shown their members face the type of concerns that warrant nondisclosure. The Supreme Court in *NAACP* explained that compelled disclosure is unlawful where, based on specific circumstances, it "is likely to affect adversely the ability of [the organization] and its members to pursue their collective effort to foster beliefs which they admittedly have the right to advocate." 357 U.S. at 462. To evidence its concerns, the NAACP made a specific and "uncontroverted showing that on past occasions revelation of the identity of its rank-and-file members has exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility." *Id.*

In other words, the party seeking nondisclosure must provide specific evidence of serious concerns posed by the potential disclosure. The Fifth Circuit has explained that nondisclosure may be appropriate in the rare cases that "involve sensitive information that, if disclosed, could endanger lives or threaten national security," or where necessary to "protect[] trade secrets or the identities of confidential informants." *Bihn Hoa Le*, 990 F.3d at 418–19. But absent exceptional circumstances, the sealing of information "placed in the judicial record" is "heavily disfavored." *June Medical*, 22 F.4th at 519.

Plaintiffs fail to make this showing. The NAACP offers the declaration of its general counsel, pointing to instances where the presidents of the Texas and Austin NAACP chapters were harassed or received threats of physical harm. ECF 321 at 5–6. These allegations, if true, reflect deplorable conduct. Even so, it does not follow that NAACP members will be harassed or threatened solely as a result of their being named in an amended complaint. It is a regrettable yet unavoidable fact that high-ranking executives—like the Texas and Austin chapter presidents—receive much more attention in part because of their highly public presence. But the circumstances for individual members is apparently different. The NAACP points to no instance where a member was threatened or harassed as a result of the organization using his or her name to assert a claim in a redistricting lawsuit.

Fair Maps likewise fails to substantiate its alleged concerns with any specific evidence. It points exclusively to the report of its expert, Dr. Monica Muñoz Martínez. ECF 322 at 4. As a preliminary matter, Fair Maps contends Dr. Martínez's report can be considered here because the Court "may take judicial notice" of "recent" events. ECF 322 at 4. But an expert report is not within the public record or subject to judicial notice. Indeed, the expert report is not evidence at all.

Moreover, that report addresses alleged racial violence generally (much of it is not specific to Texas) without specifically addressing Fair Maps' claim that its members will be threatened or harassed if their names are used in an amended complaint.[3] This too is insufficient to carry Fair Maps' heavy burden to show that nondisclosure is warranted.

LULAC's evidence is also insufficient. It offers only comments made on Facebook news articles, and one other article published online. ECF 326 at 3. To be sure, the comments quoted in LULAC's motion are offensive and deserving of great censure. But they fall well short of constituting specific threats against the members of any organization. These comments list no names, and advocate no specific actions. Indeed, they are not addressed to anyone at all. These comments simply do not show that LULAC's members face threats or harassment if named in the amended complaint.

If plaintiffs' generalized evidence here were sufficient, then courts would need to routinely seal public records in countless cases involving racial issues. But that is not the law. On the contrary, federal courts "heavily disfavor sealing information placed in the judicial record." *June Medical*, 22 F.4th at 519–20; *see also* Bihn Hoa Le, 990 F.3d at 418 ("[T]he working presumption is that judicial records should not be sealed. That must be the default because the opposite would be unworkable: With automatic sealing, the public may never know a document has been filed that might be of interest.").

---

[3] Fair Maps highlights Dr. Martínez's inflammatory and baseless insinuation that the Governor and Lieutenant Governor's "use of appeals on immigration" have "inflamed [racial] tensions" and "mirror those of the mass shooter in El Paso." ECF 322 at 4; *see also* Martínez Report at 77–78. Such unfounded assertions are not evidence of anything, much less evidence that the public should be denied access to presumptively public court records.

8

There are some circumstances in which substantiated physical or economic concerns warrant the nondisclosure of organizations' members, but Plaintiffs fail to show those concerns apply here. Even assuming the First Amendment issues noted in *NAACP v. Alabama ex rel. Patterson* apply in an offensive posture—which they do not—Plaintiffs offer no specific evidence tending to show their members will face threats or harassment as a result of their being named in the amended complaints.

## CONCLUSION

Defendants respectfully request that the Court deny Plaintiffs' motions to seal.

Date: June 10, 2022

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
Tex. State Bar No. 24088531

JACK B. DISORBO
Assistant Attorney General, Special Litigation Unit
Tex. State Bar No. 24120804

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov
jack.disorbo@oag.texas.gov

**COUNSEL FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on June 10, 2022, and that all counsel of record were served by CM/ECF.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN