IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.* <br><br> *Plaintiffs,* <br> V. <br><br> GREG ABBOTT, *et al.*, <br><br> *Defendants.* | § § § § § § § § § § | Case No. 3:21-cv-00259 <br> [Lead Case] |
| TEXAS STATE CONFERENCE OF THE NAACP, <br><br> *Plaintiff,* <br> V. <br><br><br> GREG ABBOTT, *et al.*, <br><br> *Defendants.* | § § § § § § § § § § § § | Case No. 1:21-cv-01006 <br> [Consolidated Case] |

**REPLY BRIEF OF PLAINTIFF TEXAS NAACP IN SUPPORT OF TEXAS NAACP'S MOTION TO FILE FIRST AMENDED COMPLAINT UNDER SEAL**

**INTRODUCTION**

The Fifth Circuit has recognized that while judicial records are "public, not private, documents" some cases favor keeping certain information private especially when it is "sensitive information that, if disclosed, could endanger lives or threaten national security." *Binh Hoa Le v. Exeter Finance Corp.*, 990 F.3d 410, 417 (5th Cir. 2021). Defendants minimize the threat of harm to Texas NAACP members—many of whom agreed to participate in the case solely for the purpose of supporting Texas NAACP's status of associational standing and only on condition that their names remain sealed from public documents—suggesting that this Court should view this case and

1

the attendant privacy issues as run-of-the-mill. This case is anything but a "run-of-the-mill" case "where the parties simply prefer to keep things under wrap" without any good reason. *See id.*

This case presents a different sort of issue. On May 23, the Court instructed Plaintiff to "identif[y] with specificity" members who reside and vote in challenged districts." Dkt. 307 at 14. In response, Texas NAACP sought out and spoke with hundreds of its members over the course of two weeks. Through this process, Texas NAACP identified forty-nine members, many of whom agreed to be named and associated with the district in which they live, but only on the condition that their names remain private.[1] Defendants now would have this Court issue an order compelling the disclosure of all individuals' names simply because Defendants disregard, without any legal or evidentiary basis to do so, the threat of harm so clearly articulated in NAACP's General Counsel Janette McCarthy Wallace's Declaration. Ex. A to Texas NAACP's Mot. to Seal ("McCarthy Wallace Decl.").

In furthering their argument, Defendants raise a specter of closed courtrooms and myriads of sealed records. That is simply not the case. Texas NAACP members are being identified solely for the purpose of meeting this Court's requirement for pleading associational standing that Texas NAACP identify members of voting age who reside in the affected districts. The entire discovery on this issue will be limited to verifying the individual's membership in the NAACP (which can easily be verified by declaration), and voter registration and residence location; information that is already within the Defendants' possession. The need for these individuals to testify at trial is virtually non-existent, and contingent on Defendants' decision to play games down-the-road on

---

[1] If the motion to seal, specifically redacting the names of members from the public document, is not granted, Texas NAACP requests that this Court not allow the public release of any of the members' names until Texas NAACP is provided a reasonable time to file for a stay of an appeal from such an order and, if a stay is not granted, a reasonable time to contact those members who agreed to have their names provided to the State on the condition of their membership affiliation not being made otherwise public and to take such other steps as may be necessary that flow from any such order.

this issue by refusing to accept sworn declaration as to this limited information. Defendants have failed to show that they are prejudiced by sealing from public disclosure this limited information, and therefore the equities at issue favor this Court granting this motion to seal.

## ARGUMENT

### A. Defendants Ignore the Prevailing Legal Standards and Governing Case Law Which Support Sealing When Disclosure Could Endanger Lives.

While there is a presumption of protecting the public's accessibility to judicial records, that presumption is not without limits. *Binh Hoa Le*, 990 F.3d at 417. That "presumption of openness" can be rebutted "by compelling countervailing interests favoring nondisclosure." *Id.* Where some cases "involve sensitive information that, if disclosed, could endanger lives or threaten national security," the fact-specific balancing test, requiring courts to weigh the privacy interests of individuals against the public interests in disclosure, tips in favor of nondisclosure. *Id.* Although here, theoretically the public might have some interest, however slight, in whether Texas NAACP has members in the affected districts so as to support associational standing, the public has no identifiable interest in the identity of the specific members—particularly when weighed against the dangers posed by such disclosure. Texas NAACP has demonstrated these dangers, citing to its compelling privacy interests in graphic detail, in the McCarthy Wallace Declaration. That Defendants refuse to accept this evidence of threats of violence and bodily harm in conclusory fashion—without any factual or legal basis for doing so—is not a basis upon which this Court should also discount this evidence.

These compelling privacy interests were articulated by the Supreme Court in *NAACP v. Alabama ex rel. Patterson* [hereinafter "*Patterson*"], 357 U.S. 449, 462 (1958) and more recently in *Americans for Prosperity Foundation v. Bonta* [hereinafter "*AFP*"], 141 S. Ct. 2373 (2021). Defendants attempt to distinguish these cases on the alleged basis that each supposedly involved a "purely defensive posture" in which the respective states had passed laws seeking compelled

disclosure of membership information from the two organizations, NAACP and Americans for Prosperity/Thomas More Law Center, Opp. at 5–6, but they do not and cannot explain why "the logic in these cases extends only to a defensive posture." Opp. at 5.

To the contrary, the rationale of these cases controls. In *Patterson*, the NAACP had shown that "on past occasions revelation of the identity of its rank-and-file members has exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility." 357 U.S. at 462. And in *AFP*, evidence that one of the organizations had received "threats, harassing calls, intimidating and obscene emails, and even pornographic letters" was sufficient for the Supreme Court to conclude that the organizations' donors might face a threat of harm. 41 S. Ct. 2381. Texas NAACP has made an uncontroverted showing that the organization, its executives, local branches, and individual members have faced threats of harassment, actual harassment both physical and economic, and death.[2] To mitigate these substantial dangers and provide some assurance of safety, NAACP tightly guards the identity of its members. *See id.* ¶¶ 20–21. Indeed, NAACP has gone to the highest court in the land (and prevailed) to protect its members. *See Patterson*.

Ignoring the prevailing legal standards, Defendants seek to create a new higher burden, asserting that Texas NAACP must demonstrate that members were "harassed or threatened based solely on their being named in a redistricting lawsuit." Opp. at 2. The Supreme Court has ***never*** adopted this exceptionally narrow, case-type specific standard of harm. Instead, the Court has

---

[2] If anything the proofs here of the threats against NAACP's members are much more specific than in *AFP*. The dissent in *AFP* said that the allegations there provided "scant evidence" of anything beyond "the specific harm" that petitioners' donors might experience. The dissent went on, "proof could include "specific evidence of past or present harassment of members due to their associational ties, or of harassment directed against the organization itself," *ibid.*, as well as evidence that "fear of community hostility and economic reprisals that would follow public disclosure. . . had discouraged new members from joining" an organization or caused "former members to withdraw." *AFP*, 141 S. Ct. at 2394. But the majority found the allegations put forth by AFP and Thomas More Law Center, which to be sure were general, sufficient.

4

made clear that the sorts of harassment and violence described by General Counsel McCarthy Wallace sufficiently stifle protected First Amendment activity to warrant protection against public disclosure of membership information. In *Patterson,* the Court explicitly named "threat of physical coercion, and other manifestations of public hostility" as examples of consequences which are "likely to affect adversely" the associational rights of NAACP members should their membership affiliation with NAACP be disclosed. 357 U.S. at 462-63. In *AFP*, the Court cited to *Patterson*, noting that it was "[b]ecause NAACP members faced a risk of reprisal if their affiliation with the organization became known" that the Court in *Patterson* "concluded that the State's demand violated the First Amendment." *AFP*, 141 S. Ct. 2372, 2387 (2021) (citing *Patterson,* 357 U.S. at 463). In these cases, the Court understood that the very harms experienced by Texas NAACP members as articulated in the McCarthy Wallace Declaration—i.e., "bomb threats, protests, stalking and physical violence"—sufficiently chilled First Amendment activity. *Id.* at 2388. Here, Texas NAACP has demonstrated that when membership information is made public, threats and violence often follow. That is enough.

Next, Defendants obfuscate the lack of legal support for their opposition claiming, without supporting evidence, that the harms to NAACP members are experienced only by "high ranking executives—like the Texas and Austin chapter presidents—[who] receive much more attention in part because of their highly public presence." Opp. at 7. Not true. In making this unsubstantiated argument, Defendants ignore the threats and violence to rank-and-file members specifically described by Texas NAACP. *See* McCarthy Wallace Decl. ¶ 11 (stating that the branch building itself was subject to arson—an act which affects all members, not just leadership); *id.* ¶ 13 (acknowledging the need for "police surveillance protection due to threats of violence against [a branch president] **and his members**") (emphasis added); *id.* ¶26 (noting "personal threats against

5

*members* both in Colorado Springs and the New York State Conference office") (emphasis added); and *id.* ¶¶ 30-33 (indicating a number of attacks against both office space and the general body membership that uses them rather than just leadership). It is not NAACP leadership's role that makes them targets, but rather the fact that being in leadership publicly connects them to the NAACP. Further, in *AFP*, the Court specifically noted that broad threats to the organization were sufficient and specific enough to establish a future threat to *individual* donors and expressly found that *Patterson* was decided as it was because "NAACP *members* faced a risk of reprisal if their affiliation with the organization became known." *AFP*, 141 S. Ct. at 2387 (2021) (citing *Patterson*, 357 U.S. at 463) (emphasis added). Defendants here are expressly seeking what the Supreme Court precluded, to have NAACP members' affiliation with the organization become known. Ironically, Defendants argue that threats, harassment and violence result from the "public presence" of NAACP leadership, Opp. at 7, then urge this Court to publicize the identities of individual members in a high profile, and highly public, lawsuit. Their dangerous argument should be rejected out-of-hand.

The cases cited by Defendants do not support their position. *Cowboys for Trump, Inc. v. Oliver*, 2022 WL 454169 (10th Cir. 2022), involved a question wholly separate from the compelled public disclosure of donors' names. That case concerned whether the member donors of the Cowboys, an organization, had standing to challenge New Mexico's compelled disclosure of an individual contributor's name, triggered only when that contribution was then used for independent expenditures related to public advertisements. *Id.* at *2. The Tenth Circuit noted, that on the record developed before the district court, the Cowboys had "failed to show an injury in fact to support constitutional standing, including that they had repeatedly alleged they had not and would not make independent expenditures." *Id.* The same is true of the case *Freedom Watch, Inc. v.*

*McAleenan*, 442 F. Supp. 3d 180 (D.D.C. 2020), which considered, among other things, whether the organization had alleged with sufficient specificity that its members would have standing to sue in their own right. There the court noted that Freedom Watch had "not identif[ied] a single member or provide[d] any declarations or statements to indicate the organization brings suit on behalf of their interests." *Id.* at 193. Texas NAACP, by contrast, has done that here. The first amended complaint names forty-nine members. So, the issue raised by the motion to seal is not whether Texas NAACP has associational standing, it is whether the names of these members should be redacted from the public docket.

In opposing Plaintiffs' motion to seal, Defendants willfully ignore more than a century of demonstrated violence against NAACP members because of those members' fight against injustice. And for what purpose? The public does not benefit from the public disclosure of this information at issue. The redacted complaint would contain all the information pertaining to why a member is injured because of the redistricting—only the member's name would be redacted. *Cf. Bin Hoa Lee*, 990 F.3d at 417 (three-quarters of the record was troublingly and automatically sealed from the public, by stipulation of the parties who preferred to keep filed materials under seal); *June Medical Servs., L.L.C. v. Phillips*, 22 F.4th 512, 517, 521 (5th Cir. 2022) ("entire categories of documents" including "newspaper articles, online news reports, public records available from the Board of Medical Examiners' website about non-party abortion providers, a journal article, a public court order, the sealing order itself, and a pleading that no one asked be sealed" were sealed). Here, Texas NAACP is not asking for the sealing of a majority of the record. Not even close. And Defendants already have the information they would see published. A simple risk/benefit analysis shows there is a great deal of risk to Texas NAACP members from disclosure and a benefit to no one.

**B. Defendants Will Not Be Prejudiced If Members' Names Are Kept from Public View.**

It is noteworthy that nowhere in their Opposition do Defendants claim that they are prejudiced in the slightest by shielding individual members' names from the public. This is because no such prejudice exists. Texas NAACP identified a sampling of its members to this Court *solely* for the purpose of showing associational standing. Such standing was established upon filing the first amended complaint. Publication of such names serves no purpose and certainly will have no effect on the Court's standing analysis. Indeed, the only effect it would have would be a threat to the safety of these individuals and a chilling effect on organizations like Texas NAACP from relying on associational standing in the future.

Defendants claim that by choosing to be named as members, these individuals, like individual plaintiffs, have no privacy interests in keeping their identities away from the public because they have "consented" to allow Texas NAACP to bring claims on their behalf. Opp. at 4. This argument demonstrates a lack of basic understanding of associational standing. The individuals whose identities Defendants want to publicize are ***not*** plaintiffs or otherwise parties to this litigation. Texas NAACP is suing on behalf of its members, but its members are not suing the State. Thus, Defendants' arguments about the public's right to know who the members are, and hypothetical testimony and sealed courtrooms miss the mark. Opp. at 5. Texas NAACP is not opposed to public access to the complaint, rather Texas NAACP proposes that all but members' names be placed on the public docket—thus, contrary to Defendants' contention, the public will be privy to the injury that, for example, "DOE 2" faces in being placed in a certain district. That should be sufficient information for the public to be able to "monitor how the judicial process affects these members and the State," as Defendants themselves state. Opp. at 4.

In truth, under binding Supreme Court precedent, members are not required to participate in the litigation. *See Int'l Union, UAW v. Brock*, 477 U.S. 274, 288 (1986) ("the UAW can litigate this case ***without the participation of those individual claimants*** and still ensure that 'the remedy, if granted, will inure to the benefit of those members of the association actually injured,'") (quoting *Warth v. Seldin*, 422 U.S. 490, 515 (1975) (emphasis added). In *Brock*, the Court went on to explain that "the doctrine of associational standing recognizes that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others." *Brock*, 477 U.S. at 290.  Texas NAACP is that vehicle.  It is "the medium through which its individual members seek to make more effective the expression of their views." *Patterson*, 357 U.S. at 459.  This Court required only that Texas NAACP provide names for the purposes of showing that the organization has standing. Having done so, Texas NAACP's individual members have no further role in this litigation.  As such, the general public has no genuine interest in knowing the names and voting districts of these non-parties, whose identities are constitutionally protected against disclosure. *See Bright Response, LLC v. Google Inc.*, 2009 WL 10741629, *1 (E.D. Texas 2009) (citing *Patterson*, 357 U.S. at 462, 466).

Disclosing members' names would have the effect of chilling participation in this lawsuit as well as in Texas NAACP. Texas NAACP members have First Amendment rights "to associate ***anonymously*** for the purpose of advocating the principles of the organization." *Bright Response, LLC v. Google Inc.*, 2009 WL 10741629, *1 (E.D. Texas 2009) (emphasis added) (citing *Patterson*, 357 U.S. at 462, 466). Congress has sought to "encourage individuals injured by racial discrimination to seek judicial relief" under federal civil rights statutes, including the Voting Rights Act. *See Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968) (addressing the Civil Rights Act of 1964; *Donnell v. U.S.*, 682 F.2d 240, 245 (D.D.C. 1982) (addressing the

9

Voting Rights Act). In stark contrast, Defendants are advocating a position that actually discourages individuals from fighting against racial discrimination and strips away the anonymity in association guaranteed by the First Amendment. Accepting Defendants' argument would amount to this Court warning civil rights organizations and its members that litigants must proceed at their own risks when challenging government discrimination. Given the chilling effect that would be brought on by such a decision, the Court should reject such arguments.

Dated: June 14, 2022

/s/ Lindsey B. Cohan
Lindsey B. Cohan
Texas Bar No. 24083903
DECHERT LLP
515 Congress Avenue, Suite 1400
Austin, TX 78701
(512) 394-3000
*lindsey.cohan@dechert.com*

Jon Greenbaum*
Ezra D. Rosenberg*
Pooja Chaudhuri*
Sofia Fernandez Gold*
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street, Suite 900
Washington, DC 20005
(202) 662-8600
*jgreenbaum@lawyerscommittee.org*
*erosenberg@lawyerscommittee.org*
*pchaudhuri@lawyerscommittee.org*
*sfgold@lawyerscommittee.org*

Neil Steiner*
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3822
*neil.steiner@dechert.com*

Robert Notzon

10

Texas Bar No. 00797934
THE LAW OFFICE OF ROBERT NOTZON
1502 West Avenue
Austin, Texas 78701
(512) 474-7563
*robert@notzonlaw.com*

Gary Bledsoe
Texas Bar No. 02476500
THE BLEDSOE LAW FIRM PLLC
6633 Highway 290 East #208
Austin, Texas 78723-1157
(512) 322-9992
*gbledsoe@thebledsoelawfirm.com*
*Attorney only as to Texas NAACP's claims related to Texas state senate and state house plans*

Janette M. Louard
Anthony P. Ashton
Anna Kathryn Barnes
NAACP OFFICE OF THE GENERAL COUNSEL
4805 Mount Hope Drive
Baltimore, MD 21215
(410) 580-577
*jlouard@naacpnet.org*
*aashton@naacpnet.org*
*abarnes@naacpnet.org*
*Attorneys appearing of counsel*

\*Admitted *pro hac vice*

*ATTORNEYS FOR THE TEXAS STATE CONFERENCE OF NAACP*

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing was filed on June 14, 2022 using the Court's CM/ECF system, which will provide automatic notification to all counsel of record.

<u>/s/ Lindsey B. Cohan</u>
Lindsey B. Cohan
