UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS (LULAC), et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>GREGORY W. ABBOTT et al.,<br><br>    Defendants. | Civil Action No. 3:21-cv-00259<br><br>(Lead Case) |
| FAIR MAPS TEXAS ACTION COMMITTEE, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>GREG ABBOTT et al.,<br><br>    Defendants. | Civil Action No. 3:21-cv-01038<br><br>(Consolidated case) |

**REPLY IN SUPPORT OF FAIR MAPS PLAINTIFFS' OPPOSED MOTION FOR LEAVE TO FILE UNDER SEAL ORGANIZATIONAL PLAINTIFFS' MEMBER IDENTIFYING INFORMATION**

Pursuant to the Court's May 23, 2022 Order regarding associational standing, Fair Maps Plaintiffs ("Plaintiffs") amended their complaint, naming individual members of the Fair Maps Texas Action Committee, OCA-Greater Houston, and Emgage ("Plaintiff Organizations"). Specifically, the First Amended Complaint identifies Plaintiffs Organizations' individual members and alleges which districts they reside in, their racial identification, and that they intend to vote—all of the factual allegations necessary to establish associational standing, per the Court's Order. To be clear, these named members are not themselves plaintiffs in this case. To protect member privacy, Plaintiffs seek leave to redact these members' names from three paragraphs of Plaintiffs'

1

Amended Complaint, which will be available on the docket for public review, and file an appendix or unredacted version of the Amended Complaint under seal, which will include the members' names and be available to the Court and the parties. *See* Am. Compl. ¶¶ 7(e), 12, 14; *see also* Fair Maps Mot. for Leave, Dkt. 322.

Defendants filed their Joint Opposition to Motions to Seal on June 10, 2022, discounting Plaintiffs' interests and arguing, without foundation, that identity information may only be redacted after a showing that members "were harassed or threatened based solely on their being named in a redistricting lawsuit." Defs.' Resp., Dkt. 328 at 2. This requirement is unsupported and incoherent. Redaction is a prophylactic measure that balances public and private interests. It would have no force if individuals could seek protection of their rights only after disclosure and resultant harm had been caused.

Instead, as Defendants' own citations make clear, Plaintiffs must demonstrate that their interest in redacting the members' names outweighs the public's interest disclosure of their association with Plaintiff Organizations. Limited redaction of the members' names carefully balances the need for the Court to assure itself of jurisdiction, Defendants' right to assess and challenge Plaintiffs' allegations, Plaintiff Organizations and their members' First Amendment and other rights, and the public interest in access to judicial records.

Plaintiffs' interests are clear and substantial. Plaintiffs' First Amended Complaint details a long and bending river of violence in reaction to racial and ethnic minorities' democratic representation and participation. *See* Am. Compl. ¶ 176 & n.21; Fair Maps Mot. for Leave, Dkt. 322 at 4. These threats are no less prevalent now than before. *See infra* pg. 5.

To be sure, the public has an interest in access to judicial records. Defendants' cases refer to public interests in "understanding the judicial process," Dkt. 328 at 3 (citations omitted), and

"monitor[ing] the exercise of judicial authority," *id.* at 4 (citations omitted). But Defendants cannot credibly maintain that the redaction or sealing of specific information is *per se* unreasonable. *Cf., e.g.*, Order on Defs.' Mot. to Quash, Dkt. 282, at 4–5 (adopting a procedure for the sealing and disclosure of deposition testimony). Plaintiffs' limited redaction of member names does not interfere with the public's right of access.

Defendants state that redistricting cases are "especially important." Dkt. 328 at 4. They are. These cases raise issues of race and identity, and implicate our political representation across political and community boundaries. The significance of these issues bolsters rather than undermines members' privacy interests. Where, as here, Plaintiffs have alleged and shown their standing to proceed on behalf of their members, the interests favoring nondisclosure far outweigh any interest in public identification. This Court has previously found as much. *See Perez v. Abbott*, 250 F. Supp. 3d 123, 200 (W.D. Tex. 2017).

### **Standard**

Filing information to a court under seal requires a detail-specific inquiry to balance the interests at stake. *See United States v. Sealed Search Warrants*, 868 F.3d 385, 395 (5th Cir. 2017) ("In the Fifth Circuit, the common law right of access to judicial records has consistently been addressed on a case-by-case basis."). "In exercising its discretion to seal judicial records, the court must balance the public's common law right of access against the interests favoring nondisclosure." *S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993). The public's right of access is not absolute, and courts have discretion to seal documents where "files might…become a vehicle for improper purposes." *Id*. "To decide whether something should be sealed, the court must undertake a 'document-by-document,' 'line-by-line' balancing" of these factors." *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 521 (5th Cir. 2022) (citing *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 419 (5th Cir. 2020)).

### I.     <u>Plaintiffs have Strong Interests in Safeguarding Member Identities.</u>

Plaintiffs' members have a First Amendment right to free association. *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958). As the Supreme Court has emphasized, "privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs." *Id.* at 462.

While acknowledging that public identification can burden the right to free association, Defendants suggest that the First Amendment extends only to such disclosure in "a defensive posture." Dkt. 328 at 4. They contend that "the State has taken no action to compel disclosure here," and instead that members have invited disclosure of their identities by supporting the Plaintiff Organizations. *Id.* at 6.

No principle supports Defendants' argument. Courts have long recognized that associations may bring suit on behalf of their members upon a showing that the association's members have standing and "neither the claim asserted nor the relief requested requires the *participation* of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977) (emphasis added). To state that association with and support for organizations that bring suit alone justifies public identification is to undermine the fundamental principles underscored by *NAACP*. The First Amendment guarantees that we may associate with others—including advocacy organizations that challenge unconstitutional and unlawful acts—without inviting of identification and a well-founded fear of reprisal.

Defendants' citations are not to the contrary. Defendants quote *Familias Unidas v. Briscoe*, 619 F.2d 391, 399 (5th Cir. 1980) to say that "*NAACP* applies to compulsory disclosure of organizational ties." Dkt. 328 at 2 (citations omitted). But Plaintiffs here are not extending *NAACP*; the principles apply with full force. Familias *Unidas* did not question—and in fact went to great lengths to emphasize—the power of precisely the same First Amendment associational interests

Plaintiffs seek to protect here. 619 F.2d at 399 ("Compulsory disclosure of organizational ties can constitute a significant encroachment on freedom of association."). Moreover, context is revealing. The Fifth Circuit first considered the case four years earlier. *See Familias Unidas v. Briscoe*, 544 F.2d 182, 192 (5th Cir. 1976). In *Familias Unidas I*, the Fifth Circuit explicitly rejected the limitation proposed by Defendants here, *id*. at 192 ("[W]e cannot agree with the trial court's distinction of [*NAACP*] on the basis that the N.A.A.C.P. was the defendant there."), and went on to find that "any interest [the government] had with regard to identity of the membership" was "completely dissipated" by other steps Familias Unidas had taken in the litigation. *Id*.[1]

Moreover, Defendants' putative distinction between action and omission, Dkt. 328 at 6, is unpersuasive. Here, Defendants in fact seek to compel disclosure of member identities. *See, e.g.*, *Sand Storage, LLC v. Trican Well Serv., L.P.*, 2015 U.S. Dist. LEXIS 56417 (S.D. Tex. 2015) (recognizing that courts "compel" the production of information, even when that information is being filed under seal). Defendants present a false choice between privacy and advocacy. Associational standing adds an alternative. This Court needs only to weigh members' undisputed privacy and First Amendment rights against as-yet unarticulated interests in disclosure of Organizational Plaintiffs' members' identities. The balance is determinative.

##### II.   Members Face Credible Risks Through Disclosure of Their Identity

---

[1] Defendants' additional citations likewise do not alter the balance Plaintiffs strike. *Cowboys for Trump, Inc. v. Oliver*, 2022 U.S. App. LEXIS 4149 (10th Cir. 2022), did not turn on the disclosure of member identities; instead, the court rejected the plaintiffs' challenge to a campaign finance statute because the statute did not apply to the plaintiffs. Defendants' citation here, with an added emphasis, implies that the case turned on the compelled nature of the disclosure, when in fact it turned on whether a disclosure was being made at all. *Id.* at *8–9 ("In contrast [to *NAACP*], [p]laintiffs alleged they had not made and would not make any independent expenditures that would trigger the reporting or disclaimer requirements."). *Freedom Watch v. McAleenan*, 442 F. Supp. 3d 180 (D.D.C. 2020), which Defendants aver "is similar," Dkt. 328 at 6, is likewise inapposite. In *Freedom Watch*, the Court rejected plaintiffs' associational standing theory because Freedom Watch failed to identify or allege any details about any member as required to allege an injury-in-fact. 442 F. Supp. 3d at 193. Here, Plaintiffs have suggested a process to assure the Court of its jurisdiction while balancing members' privacy.

Independent of Plaintiff Organizations' First Amendment interests, they also have a well-founded, well-documented concern for their members' safety. Plaintiffs have alleged that voters of color "have been the targets of historical and recent voting-related discrimination in the state" and that "levels of racial tension and discrimination against these communities are increasing." Am. Compl., Dkt. 322, ¶¶ 174–76. Unfortunately, this violence is not merely historical. The day after Plaintiffs' subject motion was filed, the U.S. Department of Homeland Security issued a National Terrorism Advisory System Bulletin warning of precisely the risks that Plaintiffs raise on behalf of their members here. *See* DHS, Summary of Terrorism Threat to the United States, National Terrorism Advisory System (June 7, 2022), available at https://www.dhs.gov/ntas/advisory/national-terrorism-advisory-system-bulletin-june-7-2022 ["DHS Advisory" or "Advisory"]. The Advisory references a tragic compendium of recent violence, including recent mass shootings in Buffalo and Uvalde, a January 2022 hostage situation at a Texas synagogue, a 2019 mass shooting in El Paso, and a May 2022 mass shooting at a Taiwanese church in California. *Id*. These incidents, along with other examples, demonstrate a heightened risk of "racially or ethnically motivated [] violent extremism." *Id.* The Advisory further assesses increased "calls for violence by domestic violent extremists directed at democratic institutions, political candidates, party offices, election events, and election workers." *Id*. Defendants may "regret" targeted acts of racial violence, including within their jurisdictions. Dkt 328 at 7. Plaintiffs' members demand more: the well-established right to freely associate.

### III. Judicial and Public Interests Can Be Balanced with Plaintiffs' Interests

To dismiss these credible fears, Defendants manipulate the applicable standard of review. Defendants argue members must already have been the victims of racially motivated violence "based solely on their being named in a redistricting lawsuit," Dkt. 328 at 2, a showing that is as

cruel as it is impossible. At this time, no member has been named and could not have been subject to a violent attack "solely" based on having been named.[2]

The true standard is articulated in several Fifth Circuit cases. To permit nondisclosure, courts make factual findings specific enough to explain the need to seal certain records. *See Sealed Search Warrants*, 868 F.3d at 397 (holding that "the requisite degree of specificity will vary from case to case" and that "[w]hile the district court need not conduct an exhaustive assessment, it must generally articulate its reasons to support sealing…with a level of detail that will allow for [appellate] review."). For example, financial records are frequently sealed in business disputes not because parties have been exposed to nefarious behavior from competitors who illicitly use that information, but because the risk of such behavior is foreseeable and reasonable to guard against. *See, e.g.*, *Dickey's Barbecue Pit v. Neighbors*, 2015 U.S. Dist. LEXIS 197161 (E.D. Tex. 2015).

Defendants write that "[i]t is a regrettable yet unavoidable fact that high-ranking executives," including the chapter presidents of the Texas and Austin NAACP chapters, "were harassed or received threats of physical harm" based upon their association with NAACP. Dkt. 328 at 7. They suggest that such can be expected: "high-ranking executives . . . receive much more attention in part because of their highly public presence." *Id*. Defendants see no irony in arguing that the potential costs of public exposure *diminish* individual members' interest in avoiding such attention.

No less, Defendants emphasize that such attention would be amplified here. *See, e.g.*, Dkt. 328 at 4 ("Keeping judicial records public is especially important in the redistricting context"). That these are matters of great public importance, touching on sensitive issues of race, identity,

---

[2] Nor is there any support for the suggestion that injured individuals must show that their harm is based "solely" on their participation in a redistricting lawsuit. Defendants cite no supporting law, and there is no basis in reason or principle to support such a requirement.

7

and participation, is a factor which counsels caution. Indeed, this Court has granted leave to file membership information under seal in the past, citing First Amendment and privacy concerns. *Perez*, 250 F. Supp. 3d at 200.

Instead, Defendants unabashedly suggest that Plaintiffs' members *deserve* identification, and thus the potential reprisal that may follow, for members' audacity to associate with organizations litigating to protect their federal rights. Dkt. 328, at 2 ("These members chose to participate in this litigation by allowing Plaintiffs to assert claims on their behalf. Having affirmatively taken action against the State, these members cannot then invoke the defensive protection of NAACP."); *id*. at 4 ("[T]o the extent these members have consented to allow Plaintiffs to bring claims against the State on their behalf, the public is entitled to know who they are and the basis of their alleged injury."); *id.* at 6 ("[D]isclosure is a result of those members' decision to allow Plaintiffs to assert injuries on their behalf. That is a voluntary choice, not a State-compelled disclosure."). Defendants' arguments miss the basic tenets of associational standing: individual members need not participate. *See Hunt*, 432 U. S. at 343. And Defendants' implication is unclear, insofar as they do not articulate any *interest* in "know[ing] who [members] are."

Defendants' citations identify unrelated public interests: the "working presumption that judicial records should not be sealed," Dkt. 328 at 3 (citations omitted), and the public interest in "monitor[ing] the exercise of judicial authority," *id.* at 4 (citations omitted). Plaintiffs' proposal balances these interests.

Finally, Defendants suggest that allowing membership lists to be filed under seal would create a cascade of possible administrative problems, including subsequent redactions and sealed testimony. Dkt. 328 at 5. Of course, this Court and its officers are able to maintain open proceedings while protecting sensitive information. *See* Dkt. 282 (Order on Defs.' Mot. to Quash).

But Courts commonly invoke pseudonyms and redactions, including related to testimony, to protect privacy.

### **Conclusion**

Plaintiffs respectfully request that their Motion for Leave to File Under Seal be granted. In the alternative, if the motion to seal, specifically redacting the names of members from the public document, is not granted, Fair Maps Plaintiffs request that this Court not allow the public release of any of the members' names until Plaintiffs are provided a reasonable time to file for a stay of an appeal from such an order and, if a stay is not granted, a reasonable time to contact those members who agreed to have their names provided to the State on the condition of their membership affiliation not being made otherwise public and to take such other steps as may be necessary that flow from any such order.

Dated: June 15, 2022

Respectfully submitted,

*/s/ Noor Taj*
Noor Taj
P.A. State Bar No. 309594*
Allison J. Riggs
N.C. State Bar No. 40028*
Hilary Harris Klein
N.C. State Bar No. 53711*
Mitchell Brown
N.C. State Bar No. 56122*
SOUTHERN COALITION FOR SOCIAL JUSTICE
1415 West Highway 54, Suite 101
Durham, NC 27707
Telephone: 919-323-3380
Fax: 919-323-3942
Allison@southerncoalition.org
Noor@scsj.org
hilaryhklein@scsj.org
mitchellbrown@scsj.org

9

David A. Donatti
TX Bar No. 24097612
Ashley Harris
TX Bar No. 24078344
Thomas Buser-Clancy
TX Bar No. 24123238
Adriana Pinon
TX Bar No. 24089768
ACLU FOUNDATION OF TEXAS, INC.
P.O. Box 8306
Houston, TX 77288
Tel. (713) 942-8146 Fax. (713) 942-8966
ddonnati@aclutx.org
aharris@aclutx.org
tbuser-clancy@aclutx.org
apinon@aclutx.org

Jerry Vattamala
N.Y. State Bar No. 4426458*
Susana Lorenzo-Giguere
N.Y. State Bar No. 2428688*
Patrick Stegemoeller
N.Y. State Bar No. 5819982*
ASIAN AMERICAN LEGAL DEFENSE AND EDUCATION FUND
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 966-5932 (phone)
(212) 966 4303 (fax)
jvattamala@aaldef.org
slorenzo-giguere@aaldef.org
pstegemoeller@aaldef.org

Yurij Rudensky*
N.Y. State Bar No. 5798210
BRENNAN CENTER FOR JUSTICE AT NYU SCHOOL OF LAW
120 Broadway, Suite 1750
New York, NY 10271
rudenskyy@brennan.law.nyu.edu

*Admitted Pro Hac Vice

*Counsel for Fair Maps Texas Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on June 15, 2022, the foregoing was served on all counsel of record via ECF.

*/s/Ashley Harris*

Ashley Harris