## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, | § § § § | |
| *Plaintiffs,* | § § | Case No. 3:21-cv-00259 [Lead Case] |
| V. | § § | |
| GREG ABBOTT, *et al.*, | § § | |
| *Defendants.* | § § | |
| UNITED STATES OF AMERICA, | § § | |
| *Plaintiff,* | § § | |
| V. | § § | Case No. 3:21-cv-00299 [Consolidated Case] |
| STATE OF TEXAS, *et al.*, | § § | |
| *Defendants.* | § § § | |

## MOTION BY TEXAS HOUSE SPEAKER DADE PHELAN, GENERAL COUNSEL TO THE HOUSE MARGO CARDWELL, AND HOUSE PARLIAMENTARIAN SHARON CARTER TO QUASH DEPOSITION SUBPOENAS AND, ALTERNATIVELY, MOTION FOR PROTECTIVE ORDER

## INTRODUCTION

Plaintiffs have issued additional deposition subpoenas to depose more Texas House Members and House employees in this redistricting dispute. Among them are deposition subpoenas directed toward the Speaker of the Texas House of Representatives, Dade Phelan, the General Counsel to the House, Margo Cardwell, and the House Parliamentarian, Sharon Carter. *See* Ex. A-C (Phelan, Cardwell, Carter subpoenas). For reasons independent of those already briefed by other state legislators, Speaker Phelan, Counsel Cardwell, and Parliamentarian Carter move to quash or modify those deposition subpoenas or, alternatively, for a protective order.[1]

Plaintiffs will be deposing more than a dozen other House Members and employees, including House Members who chaired the Redistricting Committee, House Members who served on the Committee, House Members whose districts plaintiffs challenge, and the House mapdrawer. Additional Senators and Senate employees will presumably also be deposed. The public record available to plaintiffs, moreover, is voluminous and includes draft proposals, amendments, data, the House Journal of proceedings, and video footage of the committee and floor proceedings. Expert discovery is also in full swing. In light of the ground to be covered by that ongoing discovery, subpoenas to depose the House Speaker, General Counsel to the House, and House Parliamentarian must be quashed. Plaintiffs have not articulated with any particularity or specificity what information they intend to obtain from the Speaker, one of Texas's highest-ranking public officials—let alone what information they have not or cannot obtain elsewhere. Nor can they articulate what nonprivileged information they intend to obtain from the General Counsel and House Parliamentarian that they will not otherwise obtain in

---

[1]   Movants also seek an administrative stay of the depositions if necessary to temporarily stay the depositions while the Court considers this motion. Ms. Carter has been subpoenaed to be deposed on June 30, 2022. Ex. C. With respect to Speaker Phelan and Ms. Cardwell, the parties have agreed to provisional deposition dates during the week of July 18, 2022, dependent on the resolution of this motion. Exs. A-B.

forthcoming depositions of other House Members and staff. In such circumstances, Fifth Circuit caselaw and Rule 45 requires that the deposition subpoenas be quashed.

BACKGROUND

Plaintiffs' first deposition subpoenas were for three sitting Texas legislators. The legislators moved to quash the subpoenas and requested a protective order in the alternative. *See* Legislators' Mot. to Quash U.S. Subpoenas, ECF 259; Reply in Support of Mot. to Quash U.S. Subpoenas, ECF 277; Legislators' Mot. to Quash Pls. Subpoenas, ECF 278. The Court denied the legislators' motions. *See* Order, ECF 282. The Court concluded it was "not [yet] positioned to rule on what information may or may not be the subject of state legislative privilege," including because "there are likely to be relevant areas of inquiry" for legislators "that fall outside of topics potentially covered by state legislative privilege." *Id.* at 2, 4. The Court ordered the legislators to appear for depositions, "even if it appears likely that legislative privilege may be invoked in response to certain questions." *Id.* at 4. During depositions, they "may invoke legislative privilege in response to particular questions, but the deponent invoking the privilege must then answer the question in full. The response will be subject to the privilege." *Id.* Portions of transcripts containing answers subject to privilege are subject to the existing protective order. *Id.* at 5. To use any such privileged testimony, plaintiffs must move to compel by August 1 or earlier. *Id.*[2]

On the heels of the Court's order denying the legislators' motion to quash, plaintiffs issued or intend to issue an additional 13 deposition subpoenas for the following Texas House Members and employees:

- Speaker of the House, Representative Dade Phelan. Ex. A.

---

[2]   The three initially subpoenaed Texas House Members have appealed the order to the Fifth Circuit. A stay of the depositions pending appeal was denied. Accordingly, with depositions to proceed in short order, the Texas House Members have moved to hold the appeal in abeyance pending the forthcoming depositions and any other appealable future orders related to the scope of legislative immunity and privilege.

- Current and former staff to the Speaker: former Deputy Chief of Staff Mark Bell and current Deputy Chief of Staff and Policy Advisor Jay Dyer. Ex. D (6/3/2022 email from D. Freeman).

- Chairman of the House Redistricting Committee, Representative Todd Hunter. Ex. E.

- Texas House Members serving on the House Redistricting Committee: Representatives Jacey Jetton and Andrew Murr, in addition to already-subpoenaed Representatives Brooks Landgraf and Ryan Guillen. Exs. F-I.

- Texas House Members who did not serve on the Redistricting Committee: Representatives J.M. Lozano and Daniel Huberty, in addition to already-subpoenaed Representative John Lujan. Exs. J-L.

- General Counsel to the Texas House, Margo Cardwell. Ex. B.

- House Parliamentarian, Sharon Carter. Ex. C.

- Current House employee and House mapdrawer, Adam Foltz. Ex. M.

- Current and former House employees associated with the Redistricting Committee: Colleen Garcia, former Redistricting Committee Chief Counsel and Clerk, and Angie Flores, Redistricting Committee Director and Chief of Staff to Chairman Hunter. Exs. N.-O.

All told, Plaintiffs so far intend to depose 16 legislators, legislative officials, and staff members from the House alone. Plaintiffs have reserved their right to subpoena more legislators, officials, and staff based on how the depositions proceed over the next month. That is in addition to plaintiffs' ongoing document discovery from legislators and their staff, likely depositions of Senate members and employees, and ongoing expert discovery. To movants' knowledge, plaintiffs have still not subpoenaed any non-legislative officials for depositions.

## ARGUMENT

Independent of the legislative immunity and privilege arguments already briefed by Representatives Guillen, Landgraf, and Lujan—arguments that all movants also adopt here—the deposition subpoenas for the Texas Speaker of the House, the General Counsel to the House, and the House Parliamentarian should be quashed for the following additional reasons. The Texas Speaker's deposition is barred by the well-settled rule that high-ranking public officials cannot be deposed absent extraordinary circumstances; no such circumstances exist here, where plaintiffs are poised to depose

more than a dozen other House legislators and staff, including the Speaker's current and former Deputy Chiefs of Staff, and perhaps a dozen more Senate members and staff. The General Counsel's deposition subpoena must be quashed because that subpoena targets largely privileged and confidential attorney-client communications; any nonprivileged information discoverable from Ms. Cardwell will already be the subject of the many forthcoming depositions of non-lawyers. Finally, the House Parliamentarian's deposition should be quashed. Plaintiffs have at their disposal hours of video footage of the floor proceedings culminating in the passage of the redistricting litigation, in addition to the proceedings transcribed in the House Journal. Any additional information they seek from the Parliamentarian regarding highly confidential conversations or decision-making with Members regarding floor proceedings is at the core of legislative privilege. Unlike the forthcoming depositions of legislators, there is no conceivable nonprivileged ground to cover by deposing the Parliamentarian that is not already publicly available to plaintiffs.

Additionally, movants seek in the alternative a protective order consistent with the procedure ultimately adopted in the last redistricting cycle, which would permit legislative privilege objections that, once raised, relieve the deponent from answering particular questions eliciting that objection. *See* Fed. R. Civ. P. 30(c)(2) (deponent may choose not to answer "when necessary to preserve a privilege"); *Perry v. Perez*, 2014 WL 106927, at *3 (W.D. Tex. Jan. 8, 2014) ("the deponent may choose not to answer specific questions, citing the privilege").

I.     **Subpoena to Depose Speaker Dade Phelan**

It is the "settled rule" in the Fifth Circuit that "exceptional circumstances" must exist before high-ranking public officials may be involuntarily deposed. *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995) (quoting *In re Office of Inspector Gen.*, 933 F.2d 276, 278 (5th Cir. 1991)). But here, plaintiffs cannot show any such extraordinary circumstances justify deposing the Speaker, one of Texas's highest-ranking public officials, especially in light of other forthcoming depositions.

**A.** The Courts of Appeals have uniformly applied that well-settled rule: "[A] high-ranking government official should not—absent exceptional circumstances—be deposed or called to testify regarding the reasons for taking official action, including the manner and extent of his study of the record and his consultation with subordinates." *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013) (collecting cases and affirming order barring deposition of New York City Mayor and former Deputy Mayor). That rule reflects the reality that high-ranking officials "'have greater duties and time constraints than other witnesses.'" *In re FDIC*, 58 F.3d at 1060. And it is animated by the concern that plaintiffs cannot be permitted to depose such senior government officials "to probe their decision-making processes and receiving reasons for their decisions" in just one or two cases without inviting such depositions "in a plethora of cases" challenging government action. *Id.* at 1061; *see In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993) ("In order to protect officials from the constant distraction of testifying in lawsuits, courts have required that defendants show a special need or situation compelling such testimony.").

That settled rule applies regardless of whether the high-ranking official serves in the executive or legislative branch of the government, or in some other capacity. Courts have barred depositions for high-ranking officials serving in an executive capacity, a legislative capacity, or some mix of both. "Courts have consistently recognized the undue burden that falls on public officials as a consequence of compulsion to attend depositions"—a burden that does not discriminate by branch of government. *Springfield Terminal Ry. Co. v. United Transp. Union*, 1989 WL 225031, at *2 (D.D.C. May 18, 1989) (collecting cases and barring deposition of congressman); *see, e.g.*, *Harding v. Dallas*, 2016 WL 7426127, at *8-9 (N.D. Tex. Dec. 23, 2016) (finding no extraordinary circumstances warranted deposing county redistricting commissioners); *Blankenship v. Fox News Network, LLC*, 2020 WL 7234270, at *8 (S.D. W. Va. Dec. 8, 2020) (barring depositions of U.S. Senators regarding alleged conspiracy to defame opponent in senatorial campaign); *Moriah v. Bank of China, Ltd.*, 72 F. Supp. 3d 437, 440-41 (S.D.N.Y. 2014)

(quashing a deposition subpoena issued to former House Majority Leader); *Springfield Terminal Ry. Co. v. United Transp. Union*, 1989 WL 225031, at *2 (D.D.C. May 18, 1989) (barring deposition of congressman and requiring less intrusive discovery through interrogatories); *Olivieri v. Rodriguez*, 122 F.3d 406, 409-10 (7th Cir. 1997) (Chicago police superintendent).

In considering whether a high-ranking official may be involuntarily deposed, the Court must consider (1) "the high-ranking status of the deponent[]," (2) "the potential burden" of a deposition, and (3) "the substantive reasons for taking the deposition[]." *In re FDIC*, 58 F.3d at 1060. As part of that inquiry, courts uniformly consider whether there are less-intrusive means for obtaining the information sought, short of deposing the high-ranking official, even if the high-ranking official has relevant knowledge. *Id.* at 1062 (noting that "it will be the rarest of cases … in which exceptional circumstances can be shown where the testimony is available from an alternate witness"); *see, e.g.*, *E.E.O.C. v. Exxon Corp.*, 1998 WL 50464, at *1 (N.D. Tex. Jan. 20, 1998) ("even if Defendants could sufficiently establish that Chairman Casellas did have personal knowledge of the lawsuit, this, in and of itself, is not enough to permit discovery from the Commission's high-level officials"); *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007) (even where high-ranking official has relevant first-hand knowledge, "discovery is permitted only where it is shown that other persons cannot provide the necessary information"); *In re United States (Holder)*, 197 F.3d 310, 314 (8th Cir. 1999) ("If other persons can provide the information sought, discovery will not be permitted against such an official.").

It is incumbent upon on the party seeking to depose the high-ranking government official to make the "strong showing" that extraordinary circumstances exist. *Exxon Corp.*, 1998 WL 50464, at *1; *see, e.g.*, *Lederman*, 731 F.3d at 203 (finding plaintiffs "did not identify with particularity the information they needed, nor did they contend that the [high-ranking officials] had first-hand knowledge about the litigated claims or that the relevant information could not be obtained elsewhere"). Plaintiffs cannot carry that burden here.

**B.** Applied here, Speaker Phelan is one of the highest-ranking government officials in Texas. The Speaker's office is created by the Texas Constitution. Tex. Const. art. 3, §9(b). He is third in line to succeed the Governor in cases of unavailability, after the Lieutenant Governor and the President *pro tempore* of the Senate. Tex. Gov't Code. §401.023(a)(1). In addition to his duties as legislator, he serves alongside the Lieutenant Governor as joint chair of the Legislative Budget Board, where he has significant and direct participation in the State's fiscal management, including the expenditure of emergency funds, school funding, funding limits, and grant approvals. Tex. Gov't Code §§322.001, 322.008, 322.010-.011, 322.017, 316.005, 317.002, 481.078(e); Tex. Educ. Code §48.266. By statute, he also serves on the State Preservation Board. Tex. Gov't Code §443.003(a). And he is responsible for appointing members to various statewide boards and commissions, including the Texas Ethics Commission, the Texas Judicial Council, the Legislative Budget Board, the State Preservation Board, the Texas Employment Retirement System, and the Texas Commission on Special Education Funding. Tex. Const. art. III, §24a(a)(3); Tex. Gov't Code §§71.012(5), 322.001(a), 443.003(a), 815.002; Tex. Educ. Code §48.402.

In the Texas House of Representatives, numbering 150 members, the Speaker serves as the presiding officer and highest-ranking member. *See* Ex. P, Phelan Decl. ¶6. As Speaker, he is responsible for "lay[ing] before the house its business" and "enfor[cing], apply[ing], and interpret[ing] the rules of the house in all deliberations." Tex. House Rule 1, §§1, 3. He is responsible for referring proposed legislation to the appropriate committee. *Id.* §4. He designates the chair, vice-chair, and membership of such committees. *Id.* §§15-16. He ultimately signs every bill passed by the House. *Id.* §13. And day to day, he commands a staff of more than 20 House employees, manages various requests from House Members, and attends events for constituents and others. Ex. P, Phelan Decl. ¶¶7-8. Speaker Phelan indisputably has "'greater duties and time constraints than other witnesses'" as required by his official role. *In re FDIC*, 58 F.3d at 1060.

Even so, plaintiffs have suggested that different rules apply to the Speaker because he is a high-ranking official of the *legislative* branch, not the *executive* branch. The rule is not so arbitrarily limited, *supra*. Courts across the country have treated both individual legislators and their staff as high-ranking officials, in both leadership positions and non-leadership positions. *See, e.g.*, *Blankenship*, 2020 WL 7234270, at *8 (Senate majority leader and senator); *Moriah*, 72 F. Supp. 3d at 440-41 (House majority leader); *McNamee v. Massachusetts*, 2012 WL 1665873, at *1 (D. Mass. May 10, 2012) (Massachusetts congressman and former chief of staff); *Feldman v. Bd. of Educ. Sch. Dist. #1 City & Cnty. of Denver*, 2010 WL 383154, at *1 (D. Colo. Jan 28, 2010) (senator); *Springfield Terminal Ry.*, 1989 WL 225031, at *2 (Maryland congressman). Rightly so. What matters is that Speaker Phelan has "'greater duties and time constraints'" given his role as the Speaker, and the deposition will necessarily take him away from those duties, just as it would take executive officials away from theirs. *In re FDIC*, 58 F.3d at 1060. The leader of the 150-member Texas House of Representatives is entitled to the same protections as federal and state cabinet members, city mayors, chiefs of staff, or myriad other public officials for whom courts have barred depositions.

Nor would it make any sense to exclude high-ranking legislative officials from the rule barring depositions of high-ranking public officials absent extraordinary circumstances. The rule depends on the official's duties and the burden imposed upon those duties, not the particular branch for which they perform those duties. For example, the rule has been applied to protect high-ranking *judicial* officers including Texas Supreme Court Justice Eva Guzman. *In re Guzman*, 2017 WL 2210519, at *2 (W.D. Tex. May 19, 2017). As *Guzman* aptly noted, "if every plaintiff … could subpoena [the] judges, then justice in Texas would grind to a halt." *Id.* The same is true of the Texas House—if in every case challenging legislation the Speaker of the Texas House could be deposed about that legislation, the Speaker's duties as a deponent would overtake his duties as leader of the Texas House. *See FDIC*, 58 F.3d at 1061 (rejecting subpoena proponent's assurances that deposing senior government officials in

case at hand would not lead to deposing senior government officials in other cases). Furthermore, such a rule would create a constitutional oddity in Texas: some of the State's highest-ranking officials (the Speaker, chief among them) would receive no protection, even though courts in this district have barred depositions of other Texas executive branch officials and staffers who do not even appear in the gubernatorial line of succession. *See, e.g.*, *Center for Juvenile Mgmt., Inc. v. Williams*, 2016 WL 8904968, at *5-6 (W.D. Tex. Sept. 22, 2016) (former Texas Commissioner of Education); *Tex. Entm't Ass'n, Inc. v. Hegar*, 2019 WL 13080576, at *2-3 (W.D. Tex. Oct. 18, 2019) (Texas Comptroller); Orders, *La Union Del Pueblo Entero v. Abbott*, No. 5:21cv-844 (W.D. Tex. Apr. 18, 2022 & May 2, 2022), ECF 372 & 390 (staying depositions of former and current Texas Secretaries of State).

Ultimately, there is no basis for distinguishing high-ranking executive branch officials from legislative branch officials for purposes of determining whether depositions of those high-ranking officials may proceed. The rule has barred depositions of executive branch officials even when acting within a group of multiple decisionmakers, as necessary to protect their deliberative processes. *In re FDIC*, 58 F.3d at 1060 (members of the Board of Directors for FDIC); *In re United States*, 542 F. App'x 944, 47-48 (Fed. Cir. 2013) (Chairman of the Board of Governors of the Federal Reserve); *Exxon Corp.*, 1998 WL 50464, at *1 (Chairman of EEOC). So too here. If anything, deposing Texas's highest-ranking House official raises additional concerns. Deposing legislative officials also implicates legislative immunity and privilege—safeguards of an independent legislature with taproots in 16th and 17th century England and deemed "so essential" that they were inscribed in the earliest state constitutions and the U.S. Constitution. *See Tenney v. Brandhove*, 341 U.S. 367, 372-77 (1951). Ultimately in the Fifth Circuit, what matters—legislative official, executive official, judicial officer, or otherwise—is the official's high-ranking status and responsibilities, from which he must be taken away should a deposition proceed. *In re FDIC*, 58 F.3d at 1060. Speaker Phelan indisputably fits that category.

**C.** The deposition will impede Speaker Phelan's ability to discharge his official duties. Described above, Speaker Phelan has numerous official duties in his role. Those duties do not cease during the summer months. Throughout the latter parts of June and through July alone, he will be traveling between his home district and various parts of the State to execute his official duties, which include regular meetings with his Office's large staff, fielding requests from House members, and attending various events in his capacity as Speaker. Ex. P, Phelan Decl. ¶¶7-9, 11. As the Speaker has averred, he plays a leading role in the current policy discussions regarding major issues facing the State, including issues at the border, issues of violence and school safety, and the reliability of the State's electric power grid. *Id.* ¶8. Throughout the summer, House committees continue meeting on interim charges that the Speaker has assigned to them, and there are ongoing discussions regarding the State's budget and the Sunset Advisory Commission's review of multiple state agencies. *Id.* ¶¶7-8.

Involuntarily subpoenaing the Speaker to testify for purposes of this litigation necessarily impedes the Speaker's ability to discharge these ongoing constitutional and statutory obligations. As courts have recognized time and again, deposing officials with duties like those of the Speaker, thereby requiring that they spend substantial time preparing for and then sitting for a deposition, takes away from those duties. *See In re FDIC*, 58 F.3d at 1061; *Olivieri*, 122 F.3d at 409-10; *Springfield Terminal Ry. Co.*, 1989 WL 225031, at *2 (collecting cases).

**D.** While there will inevitably be some exceptions to the general rule that could justify the Speaker's deposition in the extraordinary case, plaintiffs have not shown such extraordinary circumstances exist here. The Speaker possesses no specific and unique "first-hand personal knowledge" essential to plaintiffs' claims. The information plaintiffs seek is available through less-intrusive means. And his "deposition … would be a waste of time" in light of other depositions to occur. *Feldman*, 2010 WL 383154, at *1.

**1.** First, plaintiffs cannot "identify with particularity the information they need[]" from the Speaker specifically. *Lederman*, 731 F.3d at 203. Plaintiffs have not yet explained what specific information they intend to obtain beyond the same inquiry about redistricting legislation that plaintiffs will put to more than a dozen other deponents. Plaintiffs presumably intend to probe Speaker Phelan's motives and purposes behind decisions affecting redistricting—testimony that itself would be independently inadmissible in light of the Speaker's legislative privilege. Indeed, such "testimony as to 'the reasons for taking official action' is precisely the type of testimony that high-raking government officials are generally not required to provide." *Williams*, 2016 WL 8904968, at *6 (quoting *In re FDIC*, 58 F.3d at 1060); *see, e.g.*, *In re Dep't of Commerce*, 139 S. Ct. 16 (2018) (staying deposition of Commerce Secretary Ross).

Any such plans to depose the Speaker, along with many others, about redistricting legislation falls short of identifying what information the Speaker uniquely has that would be "essential to [their] case.'" *In re U.S. Dep't of Educ.*, 25 F.4th 692, 703-04 (9th Cir. 2022). "'Without establishing this foundation, 'exceptional circumstances' cannot be shown.'" *Id.* at 703 (quoting *Holder*, 197 F.3d at 312-13).

**2.** Second, even if plaintiffs could identify with better particularity what information they need, plaintiffs will not be able to show that Speaker Phelan possesses unique or superior knowledge of those relevant facts. *See Lederman*, 731 F.3d at 203. It is insufficient for plaintiffs to simply "speculat[e] that [an official] ha[s] direct personal knowledge of matters related to Plaintiff[s'] claim." *Blankenship*, 2020 WL 7234270, at *7. Rather, plaintiffs must make an "'actual showing'" that the official possesses such unique, first-hand knowledge. *Id.* And the unique knowledge must be more than simply participating in a decision-making process. *See, e.g.*, *In re FDIC*, 58 F.3d at 1061 (disallowing depositions, even though officials were "responsible for making the [challenged] decision"); *In re United States*, 542 F. App'x 944, 946 (Fed. Cir. 2013) (prohibiting deposition despite "personal involvement in the decision-making process").

Applied here, to simply allege that Speaker Phelan could have relevant information is not enough. *See In re Alcatel USA, Inc.*, 11 S.W.3d. 173, 179 (Tex. 2000) (requiring a "showing beyond mere relevance, such as evidence that a high-level executive is the only person with personal knowledge of the information sought … or greater in quality or quantity than other available sources"). Plaintiffs must show that Speaker Phelan somehow possesses unique or superior knowledge of the facts even though Plaintiffs will also be deposing various other House Members, including the House Redistricting Committee Chairman, and employees about the very same topics. That plaintiffs will not be able to do.

**3.** Third, and relatedly, plaintiffs cannot show that the information sought is unavailable through alternative sources or less burdensome means. Where less-intrusive means exist to discover information, short of deposing the House Speaker, those less-intrusive means must first be used, *supra*. Plaintiffs must do more than generally assert that they are "unable to obtain the information" through less-intrusive means. *In re FDIC*, 58 F.3d at 1061. Such conclusory assertions are not sufficient to show exceptional circumstances exist. *Id.*

Applied here, plaintiffs have myriad avenues of fact and expert discovery, in addition to the extensive public record, during which they will cover the same ground that they intend to cover with Speaker Phelan. Plaintiffs can assert no basis for deposing the Speaker, who did not even serve on the House Redistricting Committee, when the parties will soon be deposing the Committee Chair along with many of the Committee's members, in addition to House employees including the Speaker's current and former Deputy Chiefs of Staff, the House mapdrawer, and other personnel associated with the Redistricting Committee. In addition to that, plaintiffs will be deposing additional Texas House Members who did not serve on the Committee and presumably the Texas Senate too. As things stand now, during all of those other depositions, legislators will be required to answer plaintiffs' counsel's questions "in full," even if they object to such questions on legislative privilege grounds. *See* Order

4, ECF 282. Finally, plaintiffs are simultaneously engaged in substantial document discovery, in addition to the public record already available to plaintiffs. That public record for the redistricting legislation is voluminous and will continue to be mined as part of the expert discovery phase of this case.[3]

Plaintiffs have not explained why these alternative means of discovery have come up short; indeed, they have not even seen those alternative means of discovery through before subpoenaing the Speaker. Accordingly, at this time, plaintiffs cannot justify deposing Speaker Phelan. *See, e.g.*, *In re FDIC*, 58 F.3d at 1062 (considering "alternate witness"); *In re U.S. Dep't of Educ.*, 25 F.4th at 704 (requiring "[e]xhaustion of all reasonable alternative sources"); *Lederman*, 731 F.3d at 203; *Olivieri*, 122 F.3d at 410; Orders, *La Union Del Pueblo Entero v. Abbott*, No. 5:21cv-844 (W.D. Tex. Apr. 18, 2022 & May 2, 2022), ECF 372 & 390 (staying depositions pending other depositions to occur).

* * *

The subpoena to depose the Texas Speaker of the House should be quashed, in accordance with the well-settled rule that high-ranking public officials cannot be deposed absent plaintiffs' showing of extraordinary circumstances. No such circumstances justify deposing the Texas Speaker here, and plaintiffs have altogether failed to exhaust less-intrusive discovery. Additionally, the subpoena should be quashed because legislative immunity and privilege bar the Speaker's deposition, for the reasons briefed by fellow House Members. *See* Legislators' Mot. to Quash U.S. Subpoenas, ECF 259;

---

[3]   *See, e.g.*, TX HB1, Texas Legislature Online, capitol.texas.gov/BillLookup/History.aspx?LegSess=873&Bill=HB1 (containing bill history for passage of Texas house districts, including committee report and relevant house journal excerpts); "Texas Redistricting," redistricting.capitol.texas.gov/ (landing page for redistricting materials, including redistricting process and recordings of and notices for all redistricting hearings); "DistrictViewer," dvr.capitol.texas.gov/ (containing more than 100 plans for house and congressional districts, publicly introduced or submitted by legislators or members of the public throughout the legislative process); "Capitol Data Portal," data.capitol.texas.gov/ (containing redistricting datasets, including datasets for enacted plans and proposed alternatives); Texas House Journal, journals.house.texas.gov/hjrnl/home.htm (record of events occurring in the Texas House); Texas House Redistricting Committee, house.texas.gov/committees/committee/?committee=C080 (committee webpage containing various public materials).

Reply in Support of Mot. to Quash U.S. Subpoenas, ECF 277; Legislators' Mot. to Quash Pls. Sub-poenas, ECF 278. The Speaker adopts those arguments here too. The Speaker and fellow legislators are protected "from the burden of defending themselves" in litigation regarding the legislation they have passed. *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967); *see also E.E.O.C. v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 181 (4th Cir. 2011) (describing importance of "provid[ing] legislators with the breathing room necessary to make [legislative] choices in the public's interest" and "reinforc[ing] rep-resentative democracy" by "allow[ing] them to focus on their public duties by removing the costs and distractions attending lawsuits").

## II.    Subpoena to Depose General Counsel to the House Margo Cardwell

Plaintiffs have subpoenaed the General Counsel to the House, Margo Cardwell, to testify by deposition. The General Counsel to the House serves in a legal capacity, and Ms. Cardwell is herself an attorney. Ex. Q, Cardwell Decl. ¶¶5-7. As a legislative attorney, her private communications with House Members, Officers, and staff that entail the provision of legal advice or other legal services are attorney-client privileged and confidential, in addition to legislatively privileged. *See* Tex. Gov't Code §306.008(a)-(b). Even so, during the parties' meet-and-confer, plaintiffs indicated that they intended to depose Ms. Cardwell about conversations with House Members or staff regarding redistricting legislation. Plaintiffs' counsel stated that they believed such conversations would include discoverable information that was not all attorney-client privileged information.

In addition to the arguments previously raised by Representatives Guillen, Landgraf, and Lujan regarding legislative immunity and privilege, which the General Counsel adopts here, there are inde-pendent reasons for this Court to quash or modify the deposition subpoena. Deposing Ms. Cardwell conflicts with the Federal Rule's limitations on non-party discovery. Rule 26 limits the scope of dis-covery to "*nonprivileged* matter." Fed. R. Civ. P. 26(b)(1) (emphasis added). And Rule 45 prohibits sub-poenas that target "privileged or other protected matter" or are otherwise unduly burdensome. Fed.

R. Civ. P. 45(d)(3)(A)(iii)-(iv). A subpoena must be quashed where, as here, it would require disclosure of privileged matter, given Ms. Cardwell's role as General Counsel, and otherwise subjects her "to undue burden" because any nonprivileged knowledge held by Ms. Cardwell is cumulative of other discovery of legislators and staff. *Id.*

As Ms. Cardwell has averred, her involvement in redistricting was in her role as a legislative attorney. Ex. Q, Cardwell Decl. ¶11. Much of Ms. Cardwell's knowledge is privileged and confidential unless a House Member or Officer properly waives that privilege. *Id.* ¶8. And while Ms. Cardwell likely has nonprivileged knowledge as any attorney might—for example, knowledge of underlying facts or data about where Members lived or how populations shifted, which would not necessarily be privileged—such knowledge is not unique to Ms. Cardwell. It will be explored and explored again by plaintiffs' counsel in depositions of other House Members and legislative staff, including the Chairman of the Redistricting Committee, other legislators on the Committee, legislators whose districts are challenged here, and Redistricting Committee staff, including the House's mapdrawer, *supra*. Accordingly, the subpoena must be quashed. Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv).

When the federal discovery rules were adopted, "members of the bar in general certainly did not believe or contemplate that all the files and mental processes of lawyers were thereby opened to the free scrutiny of their adversaries." *Hickman v. Taylor*, 329 U.S. 495, 514 (1947). And while the fact that a "proposed deponent is a lawyer does not automatically insulate him or her from a deposition," the proposed deponent's role as a lawyer is nonetheless "a circumstance to be considered" in deciding whether the deposition ought to proceed under the Federal Rules. *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 (2d Cir. 2003) (considering "the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted"). Including because other avenues of discovery are often available, "federal courts have

disfavored the practice of taking the deposition of a party's attorney." *Theroit v. Par. of Jefferson*, 185 F.3d 477, 491 (5th Cir. 1999) (affirming decision to quash deposition subpoenas for attorneys for Jefferson Parish in redistricting case) (citing *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)).

Decisions by three district courts in this Circuit are instructive, where the courts have balanced the unique considerations implicated when an attorney's deposition is sought. First, in the Voting Rights Act dispute of *Hall v. Louisiana*, plaintiffs challenged Louisiana's Judicial Election Plan. 2014 WL 1652791 (M.D. La. Apr. 23, 2014). They subpoenaed an attorney who had represented state judges during the redistricting process and who then went on to represent defendants in the litigation. *Id.* at *3-4. Plaintiffs intended to depose the attorney about her involvement in the redistricting process, including testimony she gave on behalf of the judges. *Id.* The district court quashed the deposition subpoena. The court concluded that it was sufficient that "counsel had obtained a transcript of th[e] testimony" that the attorney had publicly given. *Id.* at *4. The court explained that, to the extent plaintiffs wanted to question the attorney "regarding the circumstances surrounding that [public] testimony such as any communications she had with her clients in preparation for such appearance," that "would necessarily infringe upon confidential attorney-client communications." *Id.*[4] Analogously here, there is no need to depose the General Counsel when forthcoming depositions of various other legislators and staff members, ongoing document discovery, and the robust public record will yield cumulative nonprivileged information; any remaining privileged information held by Ms. Cardwell is just that— privileged and thus non-discoverable. *See* Fed. R. Civ. P. 26(b)(1).

---

[4]   Also relevant here, the court in *Hall* added that any nonprivileged relevant knowledge held by the attorney was also not crucial to Plaintiffs' claims because such claims were provable in other ways. *Id.* at *5 (citing *Miller v. Johnson*, 515 U.S. 900, 916 (1995); *Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 266-67 (1977)).

Similarly, in *Gates v. Texas Department of Family and Protective Services*, the district court precluded plaintiffs from deposing counsel about information "either available from an alternate source" or otherwise "subject to the attorney-client privilege." 2010 WL 11598033, at *2 (W.D. Tex. 2010). The court explained that there were other fact witnesses "equally able to describe what happened" because they were also present for the relevant events about which plaintiffs wanted to depose counsel. *Id.* The court explained that, to the extent plaintiffs intended to ask counsel "about more than what did or did not happen at [those events] and seek to discover by her testimony *why* any particular course of action was or was not taken or how decisions were reached by [the defendant], they will necessarily invade territory covered by the attorney-client privilege." *Id.* The court concluded that whatever plaintiffs would ask counsel about regarding those events "either could be obtained through other sources or is covered by the attorney-client privilege, and therefore Plaintiffs cannot depose [counsel] about [those events]." *Id.*; *see also id.* (excluding questioning "about documents and correspondence she worked on in her capacity as legal counsel"). Ultimately, the court permitted only a limited line of inquiry about particular documents and, even then, only because movants had "put forward little argument or evidence to directly rebut" the subpoena proponent's arguments that (1) no other individuals could provide information related to that limited line of inquiry and (2) counsel could provide nonprivileged testimony regarding the same. *Id.*

Finally, in *National Western Life Insurance v. Western National Life Insurance*, 2010 WL 5174366 (W.D. Tex. Dec. 13, 2010), the district court applied the so-called *Shelton* factors to determine whether plaintiff's long-time outside counsel could be deposed in the case regarding "factual information about [a] 1963 merger and resulting name change." *Id.* at *2-3 (considering whether other means existed to obtain the information; the relevance of the information sought and whether it was nonprivileged; and whether the information was "crucial" to the preparation of the case). The court quashed the deposition subpoena. The court explained that the defendants, who subpoenaed the attorney, "failed

to persuade the Court that the only way to acquire such information would be to depose [plaintiff's] legal counsel." *Id.* at *3. The court found that defendants could obtain that information from other sources, including by deposing other corporate representatives or through document discovery. *Id.* And the court ultimately concluded that "it would be unduly burdensome for [the attorney] to sit for an all-day deposition," adding that "it would be extremely difficult" for the long-time attorney "to differentiate non-privileged matters from privileged matters in this case." *Id.* at *4.

The same considerations compel quashing the subpoena here. There is no benefit to deposing Ms. Cardwell that could outweigh the burden of an all-day deposition of the House's General Counsel. *See Nat'l W. Life Ins.*, 2010 WL 5174366, at *4. The parties will soon depose many House Members and legislative staff, including the following members of the House Redistricting Committee: Chairman Todd Hunter, Rep. Rafael Anchia, Rep. Ryan Guillen, Rep. Jacey Jetton, Rep. Brooks Landgraf, Rep. Joe Moody, Rep. Andrew Murr, and perhaps more still to come. The parties will also soon depose additional House Members, plus the legislative staff member primarily responsible for mapdrawing and other legislative employees staffed on the Redistricting Committee. The parties, moreover, have access to the robust public record, including publicly submitted proposals, redistricting-related data, proposed amendments, the House Journal, and video footage of committee hearings and floor proceedings. *Supra*, n.3. There are thus many alternatives for plaintiffs to discover the nonprivileged information they seek short of deposing the General Counsel to the House. *Id.* at *3-4; *see also, e.g.*, *Murphy v. Adelphia Recovery Trust*, 2009 WL 4755368, at *5 (N.D. Tex. Nov. 3, 2009) (explaining that if subpoena proponent "now lacks a 'viable alternative' to obtain additional information" without deposing counsel, "it is only because counsel squandered the opportunity to obtain that information from [non-attorneys] during their depositions"). Plaintiffs can offer no basis for why Ms. Cardwell must also be deposed. Any such deposition would re-tread ground to be covered by other House

deponents or otherwise already available, at the expense of Ms. Cardwell's ongoing duties as General

Counsel unrelated to this litigation. *See* Ex. Q, Cardwell Decl. ¶¶7, 12.

## III.    Subpoena to Depose House Parliamentarian Sharon Carter

Finally, private plaintiffs have also subpoenaed the House Parliamentarian to testify by depo-

sition. The Parliamentarian's role is to "advise and assist the presiding officer and the members of the

house on matters of procedure" for legislative proceedings. House Rule 2, §9. The Parliamentarian

owes a duty of confidentiality to all Members; all such communications with Members are privileged

and highly confidential. *Id.*; Tex. Gov't Code §301.041 (Parliamentarian's communications "confiden-

tial and subject to legislative privilege"). Even so, during the parties' meet-and-confer, private plain-

tiffs' counsel stated that they wished to depose the Parliamentarian regarding floor procedures during

the passage of the redistricting bills, including confidential conversations and decision-making regard-

ing those procedures. Counsel added that they did not believe that the Parliamentarian's legislative

acts were covered by legislative privilege, contrary to federal courts' uniform approach in this other-

wise non-uniform area of law and contrary to Texas law.

In addition to the arguments previously raised by Representatives Guillen, Landgraf, and Lujan

regarding legislative immunity and privilege, which the Parliamentarian adopts here, there remains an

independent basis for this Court to quash or modify the Parliamentarian's deposition subpoena. With

respect to the legislators, this Court decided that the scope of the legislators' privilege was "not yet

directly raised" until deposition questions were asked, including because legislators "may have rele-

vant, non-privileged information" relating to their districts. Order 3-4, ECF 282. The Parliamentarian,

on the other hand, will not be fielding questions about campaigning or questions about particular

districts. In light of the Parliamentarian's more limited role, and in light of Plaintiffs' proffered reasons

for taking her deposition, it is possible to assess at this time whether Rule 45 requires that the subpoena

be quashed. It must be. It "subjects a person to undue burden" and "requires disclosure of privileged or other protected matter." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv).

**A.** Plaintiffs confirm that they intend to ask the Parliamentarian about floor procedures. But the House floor proceedings are on video for everyone to see; the House proceedings are likewise inscribed in the House Journal. There is "no need" to depose the Parliamentarian about that which plaintiffs can already read and see. *Hall*, 2014 WL 1652791, at *4 (quashing subpoena when public hearing testimony was already available). Here, the already publicly accessible record of the Parliamentarian's acts "certainly would be enough." *Id.*; *see also, e.g., Nat'l W. Life Ins.*, 2010 WL 5174366, *4 (seeking information by deposition was unduly burdensome when information could be obtained through other means). Deposing the Parliamentarian about matters that are already part of the extensive public record is unduly burdensome. Fed. R. Civ. P. 45(d)(3)(A)(iv).

That undue burden is especially clear here, in light of the other depositions soon to take place, *supra*. Plaintiffs will be deposing more than one dozen legislators and aides, including the Chairman of the House Redistricting Committee and many other legislators, participating in the same floor proceedings about which plaintiffs intend to depose the Parliamentarian. Requiring the Parliamentarian to also sit for a day-long deposition to answer questions about the same proceedings is unnecessary, unduly burdensome, wasteful, and is the sort of cumulative discovery to be avoided for non-parties.

**B.** Plaintiffs also intend to ask the Parliamentarian about privileged and highly confidential conversations related to those floor procedures. Those communications are both "privileged and other protected matter" for purposes of Rule 45(d)(3)(A)(iii). Texas state law, including the House Rules, expressly confirm that communications with the House Parliamentarian are covered by legislative privilege and are to be kept highly confidential:

> COMMUNICATIONS WITH PARLIAMENTARIANS. **(a)** Communications, including conversations, correspondence, and electronic communications, between a member, officer, or employee of the legislative branch and a parliamentarian appointed by the presiding officer of either house

that relate to a request by the member, officer, or employee for information, advice, or opinions from a parliamentarian *are confidential and subject to legislative privilege*."

Tex. Gov't Code §301.041(a) (emphasis added); *accord* Tex. Gov't Code §306.008(a)(3)(C) (confirming legislative privilege applies to "an officer of the house," which includes parliamentarians). The House Rules prescribe that "parliamentarians have a duty of confidentiality" to the House Members and other officials, House Rule 2, §9—a duty that plaintiffs' subpoena would demand that the Parliamentarian breach. That further requires quashing the subpoena, as required by Fed. R. Civ. P. 45(d)(3)(A)(iii).[5]

As an initial matter, contrary to plaintiffs' suggestion, the Parliamentarian's legislative acts are eligible for the same privilege protections as those taken by the legislators. It is the *legislative act* itself that implicates legislative immunity and privilege, whether those acts are performed by the legislator or another legislative official or aide. *See United States v. Gravel*, 408 U.S. 606, 618 (1972) ("Speech or Debate Clause applies not only to a Member but also to his aides insofar as the conduct of the latter would be a protected legislative act"); *accord* Tex. Gov't Code §§301.041(a), 306.008(a)(3)(C) (confirming legislative privilege extends to Parliamentarian's legislative acts). As such, courts do not distinguish between privileged acts of legislators themselves and other legislative officials or aides. *See, e.g.*, *Plain Loc. Sch. Dist. Bd. of Educ. v. DeWine*, 464 F. Supp. 3d 915, 919 n.2 (S.D. Ohio 2020) (collecting cases for observation that the court's privilege analysis "applies to both the members of the General Assembly and their legislative aides because the privilege applies equally to both"); *Jeff D. v. Otter*, 643 F.3d 278, 290 (9th Cir. 2011) (affirming that legislative privilege applied to legislative budget analyst); *see also, e.g.*, *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 507 (1975) (concluding subcommittee

---

[5]   Additionally, certain communications to or from the House Parliamentarian that could be the subject of plaintiffs' deposition regarding floor procedures could also be attorney-client privileged communications, to the extent that they involved the "provision of legal advice or other legal services" regarding the House proceedings at the direction of "legislative attorney[s] or a legislative employee working at the direction of a legislative attorney." Tex. Gov't Code §306.008(b).

counsel's legislative acts were as privileged as acts of members themselves); *Nat'l Ass'n of Soc. Workers v. Harwood*, 69 F.3d 622, 631 n.10 (1st Cir. 1995) (rejecting "attempt to differentiate the [Rhode Island] Speaker from the doorkeeper, based on the fact that the latter is not a legislator").

Applied here, legislative "privilege protects the legislative process itself." *In re Hubbard*, 803 F.3d 1298, 1308 (11th Cir. 2015). Confidential decision-making for certain floor procedures, and related confidential conversations, are "indubitably part and parcel of th[at] legislative process." *Harwood*, 69 F.3d at 632; *see also Cushing v. Packard*, 30 F.4th 27, 53 (1st Cir. 2022) (en banc) (concluding New Hampshire Speaker was entitled absolute immunity for suit challenging voting rules); *McCarthy v. Pelosi*, 5 F.4th 34, 39 (D.C. Cir. 2021) (defining "quintessential[] legislative acts" to include those taken by the House Clerk and Sergeant at Arms related to proxy voting rules). The House Parliamentarian's duty to confidentially "advise and assist the presiding officer and the members of the house on matters of procedure" is central to that legislative process here. House Rule 2, §9. Even under the most strictly construed view of legislative privilege, such confidential communications and decision-making relating to the innerworkings of the legislative process are at the core of legislative privilege and are thus protected from compelled disclosure under both Federal Rules 26(b)(1), limiting the scope of discovery to "nonprivileged matter," and Rule 45(d)(3)(A)(iii), requiring that a subpoena be quashed or modified if it targets "privileged or other protected matter." Distinct from this Court's concern regarding the legislators' depositions, there is little doubt that plaintiffs' inquiry of the Parliamentarian's confidential advisement of Members will be covered by legislative privilege. There is no basis for requiring the Parliamentarian to sit for such a deposition, only to have sealed portions of the transcript (beyond that which is already publicly available) remain inadmissible.

In sum, there is no conceivably relevant, nonprivileged, and non-duplicative basis to justify the Parliamentarian's deposition. Plaintiffs' planned inquiry regarding floor procedures will merely (1) retread the Parliamentarian's already-public acts or (2) require disclosure of her privileged and highly

confidential legislative acts. Distinct from plaintiffs' arguments regarding the forthcoming legislators' depositions, there is no third category of information that can be gleaned only from the Parliamentarian that would be arguably nonprivileged. The subpoena thus "must" be quashed or modified. Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv). Plaintiffs cannot deploy a third-party subpoena to ask the deponent to replay that which is publicly available and, beyond that, to ask only about that which is "privileged or otherwise protected." If Rule 45 is to afford any protections to non-party subpoena recipients, it is in these circumstances.

## CONCLUSION

For the foregoing reasons, Speaker Phelan, Counsel Cardwell, and Parliamentarian Carter respectfully request that the Court quash or modify the deposition subpoenas. In the alternative, they seek a protective order following the procedure ultimately adopted in the last redistricting cycle, which would relieve deponents from answering questions eliciting legislatively privileged testimony. *See* Fed. R. Civ. P. 30(c)(2); *Perry v. Perez*, 2014 WL 106927, at *3 (W.D. Tex. Jan. 8, 2014) ("the deponent may choose not to answer specific questions, citing the privilege").

Date: June 14, 2022

Adam K. Mortara*
LAWFAIR LLC
125 South Wacker, Suite 300
Chicago, IL 60606
Tel: (773) 750-7154
mortara@lawfairllc.com

Respectfully submitted,

*/s/ Taylor A.R. Meehan*
J. Michael Connolly
Taylor A.R. Meehan*
Frank H. Chang*
Jeffrey S. Hetzel*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
Tel: (703) 243-9423
mike@consovoymccarthy.com
taylor@consovoymccarthy.com
frank@consovoymccarthy.com
jhetzel@consovoymccarthy.com

*Counsel for Movants*

**Admitted pro hac vice*

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
Tex. State Bar No. 00798537

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
Tex. State Bar No. 24088531

JACK B. DISORBO
Assistant Attorney General, Special Litigation Unit
Tex. State Bar No. 24120804

OFFICE OF THE ATTORNEY GENERAL

P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov
jack.disorbo@oag.texas.gov

*Counsel for Movants and Defendants*

**CERTIFICATE OF CONFERENCE**

I certify that counsel conferred with counsel for plaintiffs regarding the subject of this motion. Counsel for plaintiffs indicated it opposed any motion to quash or modify the subpoena, which confirms opposition to the relief sought here.

*/s/ Taylor A.R. Meehan*
TAYLOR A.R. MEEHAN

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on June 14, 2022, and that all counsel of record were served by CM/ECF.

*/s/ Taylor A.R. Meehan*
TAYLOR A.R. MEEHAN