IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> GREG ABBOTT, in his official capacity as Governor of the State of Texas, *et al.*, <br><br> *Defendants*. | CIVIL ACTION NO. <br> 3:21-cv-00259-DCG-JES-JVB <br> [Consolidated Action:  Lead Case] |

## LULAC PLAINTIFFS' REPLY IN SUPPORT OF THEIR OPPOSED MOTION FOR LEAVE TO FILE EXHIBIT UNDER SEAL (DKT. 326)

In their response to LULAC Plaintiffs' motion for leave to file under seal an exhibit to their Third Amended Complaint, Defendants simultaneously exaggerate the scope of LULAC Plaintiffs' request and minimize the First Amendment interests and protections at issue.[1]

LULAC Plaintiffs' Third Amended Complaint is publicly available on the Court's docket. LULAC Plaintiffs neither lodged nor sought to file their Third Amended Complaint under seal. Moreover, in their Third Amended Complaint, LULAC Plaintiffs identify with specificity an affected member for each associational plaintiff.  *See* Dkt. 338 ¶¶ 10-114 (describing in detail the affected association member's voter registration status, neighborhood and/or city of residence, voting district(s), ethnicity, plans to vote and injury under the challenged maps).  Instead of seeking to seal their entire amended complaint, LULAC Plaintiffs simply request that the names of the

---

[1] In light of the Court's June 15, 2022 Order stating that LULAC Plaintiffs may supplement their current briefing on the instant motion with evidence supporting their arguments, LULAC Plaintiffs also intend to file evidence, including evidence under seal, for the Court's consideration by June 22, 2022.  Dkt. 342 at 2.

1

affected members—provided in the exhibit to the Third Amended complaint—remain under seal. Doing so strikes the proper balance between providing the public access to all information that bears on the merits of LULAC Plaintiffs' claims, while protecting the First Amendment associational interest of the individuals whose names are included in this exhibit—an interest that Defendants inexplicably cabin to what they dub a "defensive posture." Because of the potential chilling effect of disclosure, along with the risk to the personal safety or livelihoods of the individual members, LULAC Plaintiffs respectfully urge the Court to seal the exhibit to their Third Amended Complaint.

### I. Defendants Mischaracterize the Scope of LULAC Plaintiffs' Request

As an initial matter, Defendants misrepresent the scope of LULAC Plaintiffs' request when Defendants wrongly assert in their response that "[other plaintiffs and] LULAC move to file amended complaints under seal." Dkt. 328 at 1, 4. Contrary to Defendants' assertion, LULAC Plaintiffs do not seek to file under seal any of their Third Amended Complaint. Instead, as LULAC Plaintiffs' motion makes clear, their Third Amended Complaint remains on the public docket, and the pertinent allegations to establish standing—including allegations related to the associational standing of plaintiffs who are membership organizations—remain in that publicly accessible document. Dkt. 326; *see also* Dkt. 338 ¶¶ 10-114 (identifying and describing specific members, alleging the cities and specific districts in which they live, and providing additional information demonstrating how the members are injured by Defendants' redistricting plans).[2] Contrary to

---

[2] Defendants also incorrectly assert that LULAC Plaintiffs filed a Third Amended Complaint "because, among other reasons, their previous complaint failed to allege facts that, if proven, would establish that the associational plaintiffs have associational standing." Dkt. 328 at 1. The Court's May 23, 2022 Order addressed neither the allegations in LULAC Plaintiffs' Second Amended Complaint nor the assertions in Defendants' motion to dismiss that complaint. *See* Doc. 307. Although, out of an abundance of caution, LULAC Plaintiffs took the opportunity afforded by the Court to file their now-operative complaint, Dkts. 324 and 324-1, LULAC Plaintiffs maintain that their Second Amended Complaint contained sufficient allegations to support their standing and their claims for relief—and have at no point indicated otherwise.

Defendants' misrepresentation, LULAC Plaintiffs put forth a limited request: to seal only an exhibit that contains the names of the affected members of associational plaintiffs. Thus, LULAC Plaintiffs' request will not lead to the situation in which, "if confidential information appeared 'in any affidavits, briefs, memoranda of law or other papers filed in court in this action,' the *entire document* [would be] filed under seal." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 419-20 (5th Cir. 2021) (noting that sealing order was inappropriate under those very different circumstances).

LULAC Plaintiffs' narrow request still affords the public the opportunity to assess whether the associational plaintiffs have standing. Defendants fail to address this fact, and, most telling, fail to respond to LULAC Plaintiffs' argument that, although there is certainly broad public interest in the outcome of the case, connecting the names of members to their detailed descriptions in the Third Amended Complaint has no bearing *at the pleading stage* on the merits of the LULAC Plaintiffs' claims or the Court's jurisdiction. *Cf. Perez v. Abbott*, 250 F. Supp. 3d 123, 200 (W.D. Tex. 2017) (noting that court had granted plaintiff organization leave to file under seal a list of its members at the *evidentiary* stage).

Defendants cannot argue otherwise. Consistent with the Court's requirements in its May 23, 2022 Order, LULAC Plaintiffs identify and describe specific injured association members in their Third Amended Complaint. *See* Dkt. 307 at 13-16. That approach is also consistent with the Fifth Circuit's statement that there is "no precedent holding that an association must set forth the *name* of a particular member in its complaint in order to survive a Rule 12(b)(1) motion to dismiss based on a lack of associational standing." *Hancock Cnty. Bd. of Sup'rs v. Ruhr*, 487 F. App'x 189, 198 (5th Cir. 2012) (emphasis added); *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 495 (2009) (reversing judgment *after full merits adjudication* because, aside from one plaintiff

3

member who had already settled his claims, "[respondents] identified no other application of the invalidated regulations that threatens imminent and concrete harm to the interests of their members."). The Court's analysis in its May 23, 2022 Order looked to the sufficiency of allegations with respect to the characteristics of the affected member and the district in which he or she lived, not the names of those individuals. *See, e.g., Dkt.* 307 at 16 (concluding that MALC had adequately pleaded standing with allegations that it has specific members who are "registered voter[s]," who "reside in the challenged districts[.]"). After all, names are immaterial at the pleading stage, as any allegation regarding residence must be taken as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, regardless of whether the names of associational plaintiff members are included in their complaint, LULAC Plaintiffs have sufficiently alleged their specific "members [and] their injuries" by stating each affected member's voter registration status, neighborhood and/or city of residence, voting district(s), ethnicity, plans to vote and injury under the challenged maps. *See* Dkt. 307 at 14, 18. Accordingly, the names of the individual members is "less a matter for public concern" and, for the reasons described in the instant motion and below, should remain sealed.[3] *See Am. C.L. Union of Mississippi, Inc. v. Mississippi*, 911 F.2d 1066, 1071 (5th Cir. 1990).

**II.    Defendants Inappropriately Minimize and Cabin the First Amendment Associational Rights at Stake for the Individual Members.**

---

[3] Further, just as they exaggerate the scope of LULAC Plaintiffs' request, Defendants also overstate its ramifications further along in the proceedings. For example, Defendants suggest that each of the 52 individual plaintiff organization members identified in the attachment would be called to testify at trial and, as a result, those proceedings would have to be sealed. Dkt. 282 at 5. That 52 individual organizational members, on behalf of just LULAC Plaintiffs, would be required to testify during a two-week trial is absurd, especially in light of the protocols in prior redistricting cycles to resolve the standing of associational plaintiffs. *See Perez*, 250 F. Supp. 3d at 200.

Defendants also incorrectly minimize the First Amendment associational interests at stake in LULAC Plaintiffs' request, asserting that those interests apply only in what Defendants describe as "a purely defensive posture." Dkt. 328 at 6. But the Supreme Court's jurisprudence around the First Amendment right to associate imposes no such constraint. In no uncertain terms, the Supreme Court has repeatedly emphasized "the vital relationship between freedom to associate and privacy in one's associations." *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2382 (quoting *Nat'l Ass'n for Advancement of Colored People (NAACP) v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958)). Further, the Court has broadly emphasized the deterrent effect of disclosing membership lists, *see NAACP*, 357 U.S. at 462, and that "disclosure requirements can chill association, '[e]ven if there [is] no disclosure to the general public,'" *Americans for Prosperity*, 141 S. Ct. at 2388 (quoting *Shelton v. Tucker*, 364 U.S. 479, 486 (1960)). This consistent and broad emphasis on the importance of the right to associate in no way contemplates Defendants' limitation.

Moreover, Defendants fail to offer any meaningful distinction between the chilling effect at issue in *NAACP* and its progeny, and at issue here. *Americans for Prosperity* highlights this point. In *Americans for Prosperity*, the plaintiffs alleged a chilling effect on donors' future decision to donate should the regulation at issue remain in place. 141 S. Ct. at 2373. Critically, an individual donor's decision in the first place is itself, in Defendants' framing, a "voluntary choice." Dkt. 328 at 6. After all, Defendants offer no reason to distinguish between the chilling effect that results from the disclosure following the "voluntary choice" to donate to an organization, and the chilling effect that results from the disclosure following the "voluntary choice" of being a member of an organization that filed a lawsuit.

5

Defendants' claimed distinction between 'offensive' and 'defensive' disclosure of membership information is both highly artificial and unsupported in caselaw.[4] Unsurprisingly, given the lack of any jurisprudential support of Defendants' purported "defensive posture" requirement, courts in this Circuit and other circuits have emphasized that, in *NAACP*, the Supreme Court "recognized a First Amendment privilege not to disclose associational information when disclosure may impede future collective expression." *Am. C.R. Union v. Martinez-Rivera*, No. 2:14-CV-026-AM-CW, 2015 WL 13650010, at *2 (W.D. Tex. Sept. 10, 2015); *see also In re Motor Fuel Temperature Sales Pracs. Litig.*, 641 F.3d 470, 479 (10th Cir. 2011) ("[T]he First Amendment privilege generally guarantees the right to maintain private associations when, without that privacy, there is a chance that there may be no association and, consequently, no expression of the ideas that association helps to foster."); *Perry v. Schwarzenegger*, 591 F.3d 1126, 1140 (9th Cir. 2009).

*American Civil Rights Union* is instructive. In that case, the defendant propounded interrogatories that sought, among other things, "information about which specific individual members of [the plaintiff organization] authorized suit, specific [plaintiff organization] members who [the plaintiff organization] relies upon to establish standing," and "how specific [plaintiff organization] members have been harmed." *Am. C.R. Union*, 2015 WL 13650010, at *2. The plaintiff organization objected to these interrogatories, "invok[ing] a First Amendment privilege not to disclose associational information." *Id.* Based on this privilege, the court denied the defendant's motion to compel regarding these interrogatories. *Id.* at *4. In other words, the First Amendment protection under *NAACP* and its progeny still applies even when a plaintiff

---

[4] Even if a First Amendment privilege not to disclose associational information were limited to a "defensive posture," and it is not, LULAC Plaintiffs are in a defensive posture here because they maintain that identifying and describing their affected association members in the complaint is sufficient to plead standing and Defendants insist that disclosure of names is required.

6

organization initiates a lawsuit on behalf of its members—just as associational plaintiffs have done here.

At most, Defendants quote excerpts out of context from inapposite caselaw to support their limitation of *NAACP*'s protections. For example, Defendants look to the Tenth Circuit for the proposition that "*NAACP* is 'distinguishable' from 'the associational standing' posture because the latter 'involved a compelled disclosure.'" Dkt. 328 at 6 (quoting *Cowboys for Trump, Inc. v. Oliver*, No. 21-2015, 2022 WL 454169, at *3 (10th Cir. Feb. 15, 2022)). But that completely distorts the analysis in *Cowboys for Trump*, which actually supports LULAC Plaintiffs' request. In that case, the plaintiffs challenged a state law's disclosure requirements triggered by certain threshold amounts of "independent expenditures," but acknowledged in their complaint that they "had not and would not make the independent expenditures that trigger" the disclosure requirements. *Id.* at *2. The district court held, and the Tenth Circuit affirmed, that the plaintiffs' "allegations that they had not made and would not make any independent expenditures were dispositive of their challenge to the reporting and disclaimer requirements," and concluded that the plaintiffs would not suffer any injury in fact—and therefore lacked "standing to assert either their own First Amendment rights or those of their donors." *Id.* at *3. Thus, the Tenth Circuit held that *NAACP* did not apply simply because the plaintiffs in no way had to disclose any information. *Id.* at *4 ("In contrast [to *NAACP*] here, Plaintiffs alleged that they had not made and would not make any independent expenditures that would trigger the reporting or disclaimer requirements."). But in contrast to *Cowboys for Trump*, and similar to *NAACP*, the associational plaintiffs here would be required to disclose their membership information in the event that the Court denies their motion to seal.

*Freedom Watch, Inc. v. McAleenan*, 442 F. Supp. 3d 180 (D.D.C. 2020) also does not support Defendants' limitation of *NAACP*. Of course, as that court acknowledged, *NAACP* "does not stand for the broad proposition that an organization *automatically* obtains Article III standing on behalf of its members." *Id.* at 194 (emphasis added). But in that case, the court emphasized that, rather than offering sufficient "information about its members that might establish how, if at all, at least one member has standing in her own right," the plaintiff organization "seems to contend that it has standing" simply "because it is protecting its members' identities," and therefore "failed to establish injury in fact to support associational standing." *Id.* In other words, the *Freedom Watch* court concluded that a nebulous assertion of an organization's members' freedom to associate, without more specificity, cannot confer associational standing for that organization.

By contrast, LULAC Plaintiffs have alleged how specific individual members have been injured in their Third Amended Complaint. More pertinent, however, is that LULAC Plaintiffs here rely on *NAACP* and its progeny not to confer standing, but instead to keep individual members' names under seal. *Freedom Watch*, thus, is inapposite.[5]

Accordingly, the First Amendment protections outlined in *NAACP* and its progeny apply to LULAC Plaintiffs' motion to seal.

### III. LULAC Plaintiffs Have Established That Their Exhibit Should Remain Under Seal.

LULAC Plaintiffs have shown that there is sufficient need for their narrow sealing request. *NAACP* set forth a standard that courts since have routinely followed: membership information

---

[5] In any event, the court's logic in *Freedom Watch* supports LULAC Plaintiffs' instant motion. As the court there emphasized, the plaintiff in that case failed to "articulate how this suit involves an underlying, individually-held constitutional right that is threatened by a state's demand that the organization reveal its membership list." *Freedom Watch*, 442 F. Sup. 3d at 194. For the reasons stated in their motion and the instant reply, LULAC Plaintiffs have shown that their individual members' associational rights would be chilled as a result of disclosure.

8

should not be disclosed where doing so "would 'affect adversely the ability of [the organization] and its members to pursue their collective effort to foster beliefs which they admittedly have the right to advocate, in that it may induce members to withdraw from the [organization] and dissuade others from joining it because of fear of exposure of their beliefs shown through their associations and of the consequences of this exposure.'" *Am. C.R. Union*, 2015 WL 13650010, at *2 (quoting *NAACP*, 357 U.S. at 462-63). Defendants construe this standard to mean that LULAC Plaintiffs must show "specific threats against the members of" the associational plaintiffs, Dkt. 328, but a motion to seal in light of the interests asserted in *NAACP* requires no such showing.

Instead, as courts in this Circuit have acknowledged, "there is no set criteria" for meeting this standard, affording parties asserting any First Amendment protection under *NAACP* various ways to show they would be harmed and their associational rights would be chilled. *See Am. C.R. Union*, 2015 WL 13650010, at *2. For example, in *American Civil Rights Union*, the court concluded that *NAACP*'s protection applied where members were "fearful or reluctant" as a result of "occasionally hostile and incendiary rhetoric used against advocates of" election-related measures the organization supported, as well as public articles criticizing the beliefs of individuals who were members of the organization's board. *Id.* at *3. Indeed, in the prior round of Texas redistricting litigation, the three-judge court—facing a similar request as here—granted a request to seal personal information regarding individual members of plaintiff organizations who had "First Amendment and privacy concerns about releasing member information." *See Perez*, 250 F. Supp. 3d at 200. Based on LULAC Plaintiffs' arguments in their motion, they have made a similar showing here, and the Court should likewise grant the request to keep the individual members'

9

personal information under seal in light of the "good reason[]" of preserving their associational rights.[6]  *See Binh Hoa Le*, 990 F.3d at 419.

IV. **Conclusion**

For the foregoing reasons, LULAC Plaintiffs respectfully request the Court grant their motion for leave to file under seal an exhibit to their Third Amended Complaint.

Dated: June 16, 2022                                    Respectfully submitted,

*/s/ Nina Perales*
Nina Perales
Samantha Serna
Fátima Menendez
Kenneth Parreno
Mexican American Legal Defense and Educational Fund (MALDEF)
110 Broadway Street, Suite 300
San Antonio, TX 78205
(210) 224-5476
Fax: (210) 224-5382

*Counsel for LULAC Plaintiffs*

---

[6] Evidence LULAC Plaintiffs intend to submit pursuant to the Court's June 15, 2022 Order will further support this conclusion.  Dkt. 342.

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that she has electronically submitted a true and correct copy of the above and foregoing via the Court's electronic filing system on the 16th day of June 2022.

*/s/ Nina Perales*
Nina Perales