IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

LEAGUE OF UNITED LATIN AMERICAN
CITIZENS (LULAC), et al.,

                    Plaintiffs,

        v.

GREG ABBOTT, et al.,

                    Defendants.

Civil Action No. 3:21-cv-259
(DCG-JES-JVB)
(consolidated cases)

## UNITED STATES' MOTION TO ENFORCE
## THIRD-PARTY SUBPOENAS *DUCES TECUM*

Texas legislators, their staff, and a staff member of the Texas Legislative Council (together, the Legislators) withheld hundreds of non-privileged documents in response to subpoenas, resulting in disclosure of merely one third of their responsive documents.[1]  The Legislators inappropriately 1) assert attorney-client privilege, work product protection, and state legislative privilege over factual data; 2) claim work product protections over materials not prepared in anticipation of litigation, including documents drafted almost two decades ago; and 3) advance an overbroad conception of the common-law state legislative privilege, withholding even communications with members of the public.  These privileges and protections do not fully cloak the work of the Texas Legislature from discovery.  Moreover, any legislative privilege concerning the 2021 Congressional plan must yield to the United States' interest in enforcing the constitutional prohibition on intentional racial discrimination in voting.  Therefore, the United States respectfully moves to enforce subpoenas issued to the Legislators.

I.      **BACKGROUND**

On December 6, 2021, the United States filed a Voting Rights Act enforcement action challenging Texas's 2021 Congressional and State House redistricting plans.  *See* U.S. Compl., *United States v. Texas*, No. 3:21-CV-299 (W.D. Tex. Dec. 6, 2021), ECF No. 1; *see also* U.S. Am. Compl., ECF No. 318.  In particular, the United States alleges that the 2021 Texas Congressional plan has a discriminatory purpose and discriminatory result and that the 2021 Texas House plan has a discriminatory result.  *See* U.S. Am. Compl. ¶¶ 197-199.

---

[1] The Legislators include Representative Steve Allison, Mark Bell, Representative Tom Craddick, Representative Philip Cortez, Darrell Davila, Jay Dyer, Adam Foltz, Colleen Garcia, Representative Ryan Guillen, Senator Joan Huffman, Representative Todd Hunter, Representative Jacey Jetton, Representative Ken King, Koy Kunkel, Representative Brooks Landgraf, Representative J.M. Lozano, Anna Mackin, Representative Geanie Morrison, Representative Andrew Murr, Sean Opperman, Lieutenant Governor Dan Patrick, Speaker Dade Phelan, and Julia Rathgeber.

In February and March, the United States served subpoenas on the Legislators, seeking documents including redistricting proposals, legislative communications, and data used during the redistricting process.  *See* Subpoenas (Ex. 1).  In response, the Legislators produced roughly 1,000 documents (excluding form letters and similar submissions) and provided privilege logs. *See* Privilege Logs (Ex. 2).  On May 10, the United States met and conferred with counsel for the Legislators, and on May 27, counsel for the Legislators provided updated privilege logs but no additional documents.  *See* Updated Privilege Logs (Ex. 3).  The updated privilege logs contain almost 2,000 entries, including redistricting data, communications with Members of Congress and other outsiders, retainers, invoices, press documents, and other non-privileged items.  *See id.*

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 45(d)(2)(B)(i) allows the party that served a subpoena to "move the court . . . for an order compelling production."  In turn, Rule 45(e)(2)(A) mandates that "a person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must (i) expressly make the claim; and (ii) describe the nature of the withheld documents. . . in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."

The party withholding documents has the burden to establish they are privileged or protected.  *See Hodges, Grant & Kaufmann v. IRS*, 768 F.2d 719, 721 (5th Cir. 1985).  To assert attorney-client privilege, a subpoena recipient "must prove: (1) that he made a confidential communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding."  *EEOC v. BDO USA, LLP*, 876 F.3d 690, 695 (5th Cir. 2017) (emphasis removed and citation omitted).  To establish work product protection, a recipient must show the document was created "in anticipation of

litigation" and not the mere possibility of a legal challenge.  *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981) (citations omitted).

"[L]egislative privilege . . . is an evidentiary privilege, governed by federal common law." *Jefferson Cmty. Health Care Centers, Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 624 (5th Cir. 2017) (internal quotation marks and citations omitted).  To assert legislative privilege, a recipient must show that a communication "contains or involves opinions, motives, recommendations or advice about legislative decisions between legislators or between legislators and their staff." *Jackson Mun. Airport Auth. v. Bryant*, No. 3:16-cv-246, 2017 WL 6520967, at *7(S.D. Miss. Dec. 19, 2017) (citations omitted).  Legislative privilege is "waived" as to "communications with any outsider." *Perez v. Perry* (*Perez III*), No. 5:11-cv-360, 2014 WL 106927, at *2 (W.D. Tex. Jan. 8, 2014) (three-judge court).  And legislative privilege is "qualified," not absolute, and "must be strictly construed." *Jefferson Cmty. Health Care Centers*, 849 F.3d at 624 (citation omitted); *see also LULAC v. Abbott*, No. 22-50407 (5th Cir. May 20, 2022) (Ex. 4) ("[T]he privilege must not be used as a cudgel to prevent the discovery of non-privileged information or to prevent the discovery of the truth in cases where the federal interests at stake outweigh the interests protected by the privilege.").

## III.    ARGUMENT

### A.  The Subpoenaed Documents are Relevant.

Draft redistricting plans, the data used in drafting those plans, the Legislators' communications (especially with map-drawers), and other legislative materials bear directly on whether "invidious discriminatory purpose was a motivating factor" in Congressional redistricting. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977). Indeed, "documents reflect[ing] the State Legislators' contemporaneous thoughts and motivations in drafting and enacting" legislation are "highly relevant" in cases involving a

discriminatory purpose. *La Unión Del Pueblo Entero v. Abbott* (*LUPE*), SA-21-CV-00844, 2022 WL 1667687, at *6 (W.D. Tex. May 25, 2022), *appeal docketed sub nom. LULAC v. Hughes*, No. 22-50435 (5th Cir. May 27, 2022), ECF No. 426.  Such legislative materials also bear on whether "the policy underlying the State's . . . use of the contested practice or structure is tenuous" under the discriminatory results test, here the State House and Congressional plans. *Thornburg v. Gingles*, 478 U.S. 30, 45 (1986) (citation omitted).  Thus, courts have consistently found that legislative materials are relevant in Voting Rights Act enforcement actions.  *See, e.g.*, *LUPE*, 2022 WL 1667687, at *6; *S.C. State Conf. of NAACP v. McMaster*, No. 3:21-cv-03302, 2022 WL 425011, at *6 (D.S.C. Feb. 10, 2022); *League of Women Voters of Mich. v. Johnson*, No. 17-14148, 2018 WL 2335805, at *4, 6 (E.D. Mich. May 23, 2018); *Veasey v. Perry*, No. 2:13-cv-193, 2014 WL 1340077, at *2 (S.D. Tex. Apr. 3, 2014); *Perez v. Texas* (*Perez II*), 891 F. Supp. 2d 808, 833 n.94 (W.D. Tex. 2012) (three-judge court).  There is little question that the documents sought here are relevant as well.

**B. The Legislators Assert Improper Claims of Attorney-Client Privilege.**

The Legislators improperly withheld documents far beyond the scope of the attorney-client privilege.  For example, Senator Huffman, Chair of the Senate Special Committee on Redistricting, her staff, and Adam Foltz—a Texas Legislative Council employee hand-picked by Representative Hunter, Chair of the House Redistricting Committee, to work on the House map, *see* House Redistricting Comm. Hearing Tr. at 18-19 (Oct. 4, 2021) (Ex. 5)—withheld over 300 documents relating to redistricting data—described only as "confidential" data—concerning House and Congressional redistricting proposals based on an assertion of attorney-client privilege.  *See* Challenged Document Index (Index) at 1-25 (Ex. 6).  But the attorney-client privilege "does not protect disclosure of the underlying facts."  *Upjohn Co. v. United States*, 449

U.S. 383, 395-96 (1981); *see BDO*, 876 F.3d at 696 (limiting the privilege to materials

"generated for the purpose of obtaining or providing legal assistance") (citation omitted); *Ohio*

*A. Philip Randolph Inst. v. Smith*, No. 1:18-cv-357, 2018 WL 6591622, at *3 (S.D. Ohio Dec.

15, 2018) (three-judge court) (requiring disclosure of "facts, data, and maps").  That these data—

admittedly "created, received, and/or gathered" for "the purpose of working on redistricting

legislation"—were "[a]lso used by counsel," Index at 26-47, does not render them privileged.

"[D]ocuments do not become cloaked with the lawyer-client privilege merely by the fact of their

being passed from client to lawyer."  *United States v. Robinson*, 121 F.3d 971, 975 (5th Cir.

1997).

　　　　The Legislators have withheld several other categories of documents under the aegis of

attorney-client privilege that are similarly subject to discovery.  They withheld around a dozen

"logistical" documents, such as calendar entries and other scheduling materials relating to

redistricting.  *See* Index at 48.  These are not privileged.  *See, e.g.*, *Pic Grp. v. LandCoast*

*Insulation, Inc.*, No. 1:09-cv-662, 2010 WL 1741703, at *2 (S.D. Miss. Apr. 28, 2010).  Nor are

the roughly 30 sets of talking points the Legislators have withheld.  *See Havana Docks Corp. v.*

*Carnival Corp.*, No. 19-cv-21724, 2021 WL 2940244, at *2, 4-5 (S.D. Fla. July 13, 2021); *see*

*also* Index at 49-50.  Retainer agreements and invoices related to legal services provided in

connection with redistricting legislation are also not protected, as they merely describe "financial

transactions between the attorney and client."  *Davis*, 636 F.2d at 1043-44; *see also In re Grand*

*Jury Subpoena*, 913 F.2d 1118, 1123 (5th Cir. 1990); *Crum & Forster Specialty Ins. Co. v. Great*

*W. Cas. Co.*, No. 3:15-cv-00325, 2016 WL 10459397, at *8 (W.D. Tex. Dec. 28, 2016); *see also*

Index at 51-52.

Finally, Legislators—including Chair Huffman and Mr. Foltz—have failed to establish that attorney-client privilege attaches to the approximately 250 documents containing some type of "input from attorneys" or "contributions from counsel." *See* Index at 53-71.  These log entries say nothing about legal advice, and legislative attorneys frequently play both a legal and policy role.  *See South Carolina v. United States*, No. 12-203, 2012 U.S. Dist. LEXIS 188558, at *12 (D.D.C. Aug. 10, 2012) (concluding that "attorney-client privilege does not apply in some instances to [state legislative] staff attorney work") (three-judge court); *see also BDO*, 876 F.3d at 696.[2]  Nor are communications with outside counsel Butler Snow LLP, *see* Index at 72-85, necessarily privileged, as the firm has a public policy practice that provides "legislative" services, like "drafting and reviewing legislation of interest to clients," in addition to a legal practice.  Butler Snow, Government Relations, https://www.butlersnow.com/services/practice-areas/government-relations/ (Ex. 6).  In fact, Representative Hunter made clear that consultants retained by Butler Snow actually drafted portions of the House redistricting plan, House Redistricting Comm. Hearing Tr., *supra*, but still withheld 60 documents exchanged with these consultants on the basis of attorney client privilege.  *See* Index at 86-91.  Thus, to the extent Legislators withheld "political" or policy communications from Butler Snow, those are not protected.  *Perez v. Perry* (*Perez IV*), No. 11-cv-360, 2014 WL 3359324, at *1-*2 (W.D. Tex. July 9, 2014) (three-judge court); *see also, e.g.*, *In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998); *South Carolina*, 2012 U.S. Dist. LEXIS 188558, at *5-*8.  Moreover, because consultants retained by Butler Snow provided "technical" advice, House Redistricting Hearing Tr., *supra*, their communications are not protected from disclosure by attorney-client privilege or the work

---

[2] To the extent that the Legislators' failure to establish privilege is not alone sufficient to warrant disclosure, in camera review may be necessary to distinguish between documents providing only legal advice versus those that concern policy, political, or technical matters.

product doctrine.  *See United States v. El Paso Cnty.*, 682 F.2d at 530, 541-42 (5th Cir. 1982);

*Chemtech Royalty Assocs., L.P. v. United States*, No. 06-258, 2009 WL 854358, at \*3-\*5 (M.D.

La. Mar. 30, 2009); *see also Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D.

292, 303 (D. Md. 1992) (three-judge court) (indicating that privilege does not extend to "active

participant[s] in the [redistricting] events").

Finally, the Legislators also erroneously withheld a handful of communications with

legislative outsiders under attorney-client privilege claims.  *See* Index at 92.  But

"communications made in the presence of third parties" are not protected by attorney-client

privilege.  *United States v. Pipkins*, 528 F.2d 559, 563 (5th Cir. 1976); *see also LUPE*, 2022 WL

1667687, at \*7.

**C.  The Work Product Doctrine Does Not Protect Any Withheld Documents.**

The Legislators also withheld documents that are not protected by the work product

doctrine.  Documents created during the legislative process are not protected by the work product

doctrine.  Moreover, the Legislators' overbroad or waived work product assertions lack merit.

**1.  Work Product Does Not Apply to Documents Pertaining to Pending
        Legislation.**

The Legislators inappropriately withheld roughly 900 documents created during

legislative proceedings, such as draft redistricting legislation and hearing notes, *see* Index at 93-

153, that are not protected attorney work product.  Work product protections do not cover

materials created by attorneys or their agents "in the ordinary course of business, or pursuant to

public requirements unrelated to litigation."  *United States v. El Paso Cnty.*, 682 F.2d at 530, 542

(5th Cir. 1982).  Thus, courts have therefore declined to extend work product protection to

documents "pertaining to pending legislation" because "[t]he [l]egislature could *always* have a

reasonable belief that any of its enactments would result in litigation."  *Bethune-Hill v. Va. State*

*Bd. of Elections*, 114 F. Supp. 3d 323, 348 (E.D. Va. 2015) (three-judge court) (internal citation

and quotation marks omitted).[3]  Moreover, the Legislators' use of outside counsel as an

insulating layer between the Legislature and outside map-drawers, *see, e.g.*, Index at 216-231

(describing the hundreds of documents exchanged among House staff and outside map-drawers

or their counsel), suggests that "relevant and non-privileged facts remain hidden" and that

"production of those facts is essential" to this litigation.  *Hickman v. Taylor*, 329 U.S. 495, 511

(1947).  Thus, documents produced by attorneys during the legislative process—and their non-

attorney consultants—should be produced.

### 2.   The Legislators Assert Overbroad or Waived Work Product Claims.

In any event, numerous assertions of work product protections are overbroad or waived.

For example, the work product doctrine does not protect the 300 factual documents the

Legislators withheld, *see Adams v. Mem'l Hermann*, 973 F.3d 343, 350 (5th Cir. 2020);

documents relating to "logistical matters," such as legislative calendar invites and scheduling

communications, *Pic Grp.*, 2010 WL 1741703, at *2; talking points, *see Havana Docks Corp.*,

2021 WL 2940244, at *2; or retainer agreements and invoices, *see, e.g.*, *Crum & Forster*

---

[3] *See also, e.g.*, *Ohio A. Philip Randolph Inst.*, 2018 WL 6591622, at *5 (declining to apply work product protection to documents prepared because of a "clients' statutory duty to draft Ohio's congressional map"); *Texas v. United States*, 279 F.R.D. 24, 33-35 (D.D.C. 2012) (three-judge court), *vacated in part*, 279 F.R.D. 176 (D.D.C. 2012) (three-judge court); *Baldus v. Brennan*, No. 11-cv-1011, 2011 WL 6385645, at *2-3 (E.D. Wisc. Dec. 20, 2011) (three-judge court); *D.G. ex rel. G. v. Henry*, No. 08-cv-74, 2010 WL 1257583, at *2 (N.D. Okla. Mar. 24, 2010) (declining to apply work product protection to documents created to "aide the legislative process," even if "counsel may have [had] litigation in mind while drafting [them]").  Tellingly, hundreds of relevant entries say nothing about litigation.  *See* Index at 154-215; *see also Davis*, 636 F.2d at 1040.  And it cannot be that Texas's persistent history of racial discrimination in redistricting—which has necessitated litigation to vindicate the rights of minority voters—yields greater protection for redistricting materials.  This perverse result would limit discovery after "a series of official actions taken for invidious purposes," even though this historical background is itself evidence of intentional discrimination.  *Arlington Heights*, 429 U.S. at 267.

*Specialty Ins. Co.*, 2016 WL 10459397, at *8.  *See also* Index at 232-259.[4]  Communication

involving third-parties may also waive work product protections.  *See, e.g.*, *Ecuadorian Plaintiffs*

*v. Chevron Corp.*, 619 F.3d 373, 378 (5th Cir. 2010); *see also* Index at 282-287.  And the

approximately 40 documents withheld that were drafted years before the Legislators were

notified of potential litigation over the 2021 plans—including redistricting proposals from

2004—are not protected by the work product doctrine.  *See, e.g.*, *Marquette Transportation Co.*

*v. M/V Century Dream*, No. 16-cv-522, 2017 WL 11536184, at *1 (E.D. La. Jan. 4, 2017); *see*

*also* Index at 288-290.

### D.  Legislative Privilege Does Not Protect Many Withheld Documents.

The Legislators also withheld documents that are outside the scope of legislative

privilege, such as documents that were exchanged with outsiders, that are not inherently

legislative, and that provide factual information.  Further, legislative privilege assertions

concerning Congressional redistricting must yield to the United States' interest in enforcing the

constitutional prohibition on intentional racial discrimination in voting.

#### 1.  Legislative Privilege Does Not Reach Communications with Outsiders, Non-Legislative Materials, or Factual Information.

The Legislators improperly claim legislative privilege over the almost 150 documents

exchanged with executive branch officials, private citizens, and other outsiders, despite the

limited reach of the privilege to communications "between legislators or between legislators and

their staff."  *TitleMax of Tex., Inc. v. City of Dallas*, No. 3:21-cv-1040, 2022 WL 326566, at *5-6

(N.D. Tex. Feb. 3, 2022); *see also Jackson Mun. Airport Auth.*, 2017 WL 6520967, at *7

---

[4] Relatedly, an assertion of work product protection over the hundreds of documents involving data "created, received, and/or gathered" for legislative redistricting purposes, *see* Index at 260-281, must fail because these data were admittedly not created in anticipation of litigation.  *See Davis*, 636 F.2d at 1040.

(collecting cases).  "To the extent, however, that any legislator, legislative aide, or staff member had conversations or communications with any outsider (*e.g.* party representatives, non-legislators, or non-legislative staff), any privilege is waived as to the contents of those specific communications."  *Perez III*, 2014 WL 106927, at *2; *see also LUPE*, 2022 WL 1667687, at *2; *Gilby v. Hughs*, 471 F. Supp. 3d 763, 767 (W.D. Tex. 2020).  Therefore, the Legislators must disclose documents exchanged with Members of Congress and Congressional staff, *see, e.g.*, *Perez v. Perry* (*Perez I*), No. 5:11-cv-360, 2011 WL 13112115, at *2 (W.D. Tex. Aug. 11, 2011) (three-judge court); counsel for nearly all Republican Members of the Texas delegation to the U.S. House of Representatives, who provided the initial draft of the Congressional map to Chair Huffman, *see* Senate Special Committee on Redistricting Tr. at 23 (Sept. 30, 2021)  (Ex. 7); state executive branch officials, *see, e.g.*, *LUPE*, 2022 WL 1667687, at *3, 5--6; consultants, *see, e.g.*, *Page v. Va. State Bd. of Elections*, 15 F. Supp. 3d 657, 664 (E.D. Va. 2014); and members of the public, *see, e.g.*, *Favors v. Cuomo*, No. 11-CV-5632, 2015 WL 7075960, at *8 (E.D.N.Y. Feb. 8, 2015) (three-judge court), among others.  *See* Index at 291-301.[5]

Legislative privilege also does not protect documents unrelated to the process of enacting legislation.  *See, e.g.*, *LULAC v. Abbott*, No. 5:21-cv-259, 2022 WL 1570858, at *2 (W.D. Tex. May 18, 2022) (three-judge court) (addressing information about "political behavior, the history of discrimination, and socioeconomic disparities").  Draft public statements and media strategy documents, *see* Index at 303-309, around 150 of which have been withheld, are not legislative; they inform "those outside the legislative forum."  *Favors*, 2015 WL 7075960, at *6-7; *see also,*

---

[5] In a unique instance, a legislative aide invokes the deliberative process privilege as grounds to withhold a document sent only to legislative staffers.  *See* Index at 302.  However, the deliberative process privilege applies only to "the internal decision-making process of the executive branch."  *Gilby*, 471 F. Supp. 3d at 767.

*e.g.*, *Texas v. Holder*, No. 12-128, 2012 WL 13070060, at *3 (D.D.C. June 5, 2012) (three-judge court). Similarly, documents "created after the date of [] enactment," including "confidential data," Index at 310, are not legislative. *League of Women Voters of Mich.*, 2018 WL 2335805, at *6 (citation omitted). Moreover, over 80 administrative documents withheld by the Legislators are insufficiently tied to the substance of legislation to fall within the privilege, including schedules and calendar entries, *see Favors*, 2015 WL 7075960, at *8, retainer agreements and engagement letters, *see, e.g.*, *BBC Baymeadows, LLC v. City of Ridgeland, Miss.*, No. 3:14-cv-676, 2015 WL 5943250, at *6 (S.D. Miss. Oct. 13, 2015); *R.F.M. v. Nielsen*, No. 18-cv-5068, 2020 WL 6393583, at *8 (S.D.N.Y. 2020), and employment communications, *see Kukla v. Vill. of Antioch*, No. 85 C 7946, 1987 WL 9596, at *1 (N.D. Ill. Apr. 15, 1987). *See* Index at 311-314.[6]

Finally, legislative privilege does not shield the almost 700 documents listed on the log containing "factually based information used in the decision-making process or disseminated to legislators or committees." *LUPE*, 2022 WL 1667687, at *2 (citation omitted); *see also Doe v. Nebraska*, 788 F. Supp. 2d 975, 984-85 (D. Neb. 2011). Examples of such documents include "committee reports," "minutes of meetings," "materials and information available [to lawmakers] at the time a decision was made," *LUPE*, 2022 WL 1667687, at *2 (citation omitted), and "alternative maps considered during the redistricting process," *LULAC*, 2022 WL 1570858, at *2. *See also, e.g.*, *League of Women Voters of Mich.*, 2018 WL 2335805, at *7 (ordering the production of "strictly factual materials and information available to lawmakers at the time the legislation was enacted"). *See* Index at 315-356.

---

[6] To the extent any documents contain annotations implicating legislative privilege or any other privilege, they should be produced in redacted form. *See, e.g.*, *BBC Baymeadows*, 2015 WL 5943250, at *6.

### 2.  Legislative Privilege Assertions Concerning Congressional Redistricting Must Yield.

"There can be no doubt that [the Supreme Court] has sanctioned intrusions by Congress, acting under the Civil War Amendments, into the judicial, executive, and legislative spheres of autonomy previously reserved to the States." *Fitzpatrick v. Bitzer*, 427 U.S. 445, 455 (1976). Here, the United States' interest in enforcing the constitutional prohibition on intentional racial discrimination in voting and the uniquely probative nature of the withheld documents must overcome assertions of a "qualified" legislative privilege over the 2021 Congressional redistricting documents the Legislators withheld, which include draft legislation and legislative communications. *Jefferson Cmty. Health Care Centers*, 849 F.3d at 624 (citation omitted); *see also United States v. Gillock*, 445 U.S. 360, 373 (1980) (holding that "where important federal interests are at stake . . . , comity yields" and no privilege is afforded to state legislators seeking to withhold relevant documents); *Jones v. City of College Park*, 237 F.R.D. 517, 521 (N.D. Ga. 2006) (finding that where Congress has placed "government intent" at the heart of a cause of action, the United States "has a compelling interest in discovery of evidence of such intent").

The factors typically applied to determine when legislative privilege must yield uniformly favor disclosure. Specifically, courts have analyzed, "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *Perez III*, 2014 WL 106927, at *2; *see also, e.g.*, *LUPE*, 2022 WL 1667687, at *6. As described above, the documents sought are highly relevant. *See* Part I, *supra*. They are also a unique source of evidence because officials "seldom, if ever, announce on the record . . . their desire to discriminate against a racial minority." *Smith v. Town of*

12

*Clarkton, N.C.*, 682 F.2d 1055, 1064 (4th Cir. 1982); *see also, e.g.*, *LUPE*, 2022 WL 1667687, at *6; *S.C. State Conf. of NAACP*, 2022 WL 425011, at *7; *Veasey*, 2014 WL 1340077, at *3.  The seriousness of this matter is also beyond question.  The Fourteenth and Fifteenth Amendments guarantee citizens the right to vote free of discrimination on the basis of race.  That right is "preservative of all rights."  *Harper v. Va. Bd. of Elections*, 383 U.S. 663, 667 (1966); *see also, e.g.*, *S.C. State Conf. of NAACP*, 2022 WL 425011, at *7; *Veasey*, 2014 WL 1340077, at *2.  And the role of the government is clear: this is a Voting Rights Act enforcement action brought by the United States against the State of Texas.  *See also LUPE*, 2022 WL 1667687, at *6; *S.C. State Conf. of NAACP*, 2022 WL 425011, at *7; *Veasey*, 2014 WL 1340077, at *2.  Finally, disclosure of legislative documents in past Voting Rights Act litigation establishes that production of such materials has not rendered Texas officials timid.  *See, e.g.*, *Veasey*, 2014 WL 134007, at *2.  This Court should order the roughly one hundred documents identified on the privilege logs as concerning the 2021 Congressional redistricting plan, as well as any other documents that concern that plan, to be produced.  *See* Index at 357-362.

## IV.    CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court grant its requested relief.  A proposed order is attached hereto.

Dated: June 17, 2022

PAMELA S. KARLAN
Principal Deputy Assistant Attorney General
Civil Rights Division

*/s/ Jacki L. Anderson*
T. CHRISTIAN HERREN, JR.
TIMOTHY F. MELLETT
DANIEL J. FREEMAN
JANIE ALLISON (JAYE) SITTON
MICHELLE RUPP
JACKI L. ANDERSON
JASMIN LOTT
HOLLY F.B. BERLIN
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530

## **CERTIFICATE OF CONFERRAL**

I hereby certify that on June 16, 2022, counsel for the United States met and conferred with counsel for the State of Texas concerning the subject of this motion.  Counsel for the State of Texas opposed the relief sought.

*/s/ Daniel J. Freeman*
Daniel J. Freeman
Voting Section
Civil Rights Division
U.S. Department of Justice
Daniel.Freeman@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 17, 2022, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system, which will send notification of this filing to counsel of record.

*/s/ Daniel J. Freeman*
Daniel J. Freeman
Voting Section
Civil Rights Division
U.S. Department of Justice
Daniel.Freeman@usdoj.gov
