IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS (LULAC), et al., <br><br> Plaintiffs, <br><br> v. <br><br> GREG ABBOTT, et al., <br><br> Defendants. | Civil Action No. 3:21-cv-259 (DCG-JES-JVB) (consolidated cases) |

## UNITED STATES' OPPOSITION TO
## SPEAKER DADE PHELAN'S MOTION TO QUASH

In this Voting Rights Act enforcement action concerning Texas's 2021 Congressional and State House redistricting plans, the United States issued a deposition subpoena to Speaker of the Texas House of Representatives Dade Phelan based on concrete indicia of his first-hand, personal involvement in passage of the challenged redistricting plans. Although this Court has already declined to quash depositions based on the state legislative privilege, Speaker Phelan now seeks an order quashing a deposition subpoena based on the *Morgan* Doctrine, which limits depositions of certain senior public officials. *See* Mot. to Quash, ECF No. 341. However, the *Morgan* Doctrine does not extend to legislators. *See, e.g.*, *In re Office of Inspector Gen.*, 933 F.2d 276, 278 (5th Cir. 1991) (per curiam) ("[E]xceptional circumstances must exist before the involuntary depositions of *high agency officials* are permitted." (emphasis added)). But even if the *Morgan* Doctrine were to apply, Speaker Phelan's motion to quash would be premature, as further discovery will determine the necessity for the Speaker's deposition. Therefore, the United States respectfully requests that this Court deny Speaker Phelan's motion to quash or—in

the alternative—hold the Speaker's motion in abeyance so that facts showing the necessity for the deposition may be further developed.

## I.     Background

The United States alleges that Texas's 2021 Congressional and State House redistricting plans violate Section 2 of the Voting Rights Act.  *See* U.S. Compl., *United States v. Texas*, No. 3:21-CV-299 (W.D. Tex. Dec. 6, 2021), ECF No. 1; *see also* U.S. Am. Compl., ECF No. 318.  In particular, the United States alleges that the 2021 Texas Congressional plan has a discriminatory purpose and discriminatory result and that the 2021 Texas House plan has a discriminatory result.  *See* U.S. Am. Compl. ¶¶ 197-199.

Speaker Phelan's role in the 2021 redistricting process remains opaque, due in substantial part to his implausible claim that the only documents concerning the 2021 redistricting process over which he has possession, custody, or control are 17 unanswered constituent emails and his account on Texas's RedAppl redistricting software.  *See* Phelan Privilege Log (Ex. 1).

The publicly available evidence suggests otherwise.  Speaker Phelan's public involvement in redistricting began with his selection of members of the Texas House of Representatives to serve on the House Redistricting Committee.  *See* Press Release, Representative Dade Phelan, *Speaker Dade Phelan Announces Committee Assignments for 87th Legislature* (Feb. 4, 2021), https://perma.cc/TU5R-LCT2.  Phelan also acknowledged in a press interview that one of Texas's new Congressional seats could be located in the Dallas-Fort Worth Metroplex, recognizing the population growth in that area.  *See* Michael McCardel, *Where Will Texas'[s] New Congressional Districts Be?  Phelan Says It Could Take Time to Figure Out*, WFAA, Sept. 4, 2021, https://perma.cc/ESR9-WQGS.  Yet the 2021 Congressional Plan effectively nullifies minority population growth in the Metroplex by linking heavily minority neighborhoods in Dallas, Irving, Grand Prairie, and Mansfield to several Anglo-dominated, rural

counties.  *See* U.S. Am. Compl. ¶¶ 63-86.  And after elimination of Latino voters' opportunity to elect their candidates of choice in House District 31, *see* U.S. Am. Compl. ¶¶ 138-155, Speaker Phelan personally lobbied incumbent Representative Ryan Guillen to change parties.  *See* Patrick Svitek, *State Rep. Ryan Guillen Switches to GOP in Latest Blow to South Texas Democrats*, Tex. Tribune, Nov. 15, 2021, https://perma.cc/A6DB-K2V7; *see also* Patrick Svitek, *Redistricting, Challenges from the Right Test Texas House GOP Incumbents Coming Off "Most Conservative Session Ever"*, Tex. Tribune, Feb. 23, 2022, ("Phelan's No. 1 priority is Rep. Ryan Guillen.").[1] These facts create a strong inference that Speaker Phelan was intimately involved in the redistricting process.

This Court has already rejected requests to bar all depositions of legislators based on the state legislative privilege.  *See LULAC v. Abbott* (*LULAC I*), No. 3:21-cv-259, 2022 WL 1570858 (W.D. Tex. May 18, 2022), *stay denied*, Order, No. 3:21-cv-259 (W.D. Tex. May 18, 2022), ECF No. 296, *stay denied*, No. 22-50407 (5th Cir. May 20, 2022), *stay denied sub nom. Guillen v. LULAC*, No. 21A756, 2022 WL 1738936 (U.S. May 31, 2022).  Thus, the United States has begun deposing Texas legislators and legislative employees concerning both the purpose and effect of the challenged plans, under the "deliberate and cautious approach" adopted by this Court.  *LULAC v. Abbott* (*LULAC II*), No. 22-50407 (5th Cir. May 20, 2022) (Ex. 2).  By agreement, the United States has issued a deposition subpoena to Speaker Dade Phelan for July 21, making him the last fact witness scheduled to be deposed in this matter.  *See* Phelan

---

[1] Speaker Phelan also rejected Governor Abbott's call to address subjects beyond redistricting during the Third Special Session of the 87th Texas Legislature, facilitating extraordinarily expedited consideration of the Congressional and House plans.  *See* Schaefer Edwards, *Texas House Speaker Phelan Rebukes Abbott and Patrick on Illegal Voting and Winter Storm Response*, Houston Press, Oct. 1, 2021, https://perma.cc/DZD7-RXGL.

Subpoena, ECF No. 341-1.  On June 14, Speaker Phelan moved to quash the deposition subpoena in full.  Mot. to Quash at 4, ECF No. 341.[2]

## II.    Legal Standard

Litigants may typically serve subpoenas commanding attendance at a deposition upon third parties who have knowledge of facts in dispute.  *See* Fed. R. Civ. P. 45.  However, under the *Morgan* Doctrine, "top executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions."  *In re Office of Inspector Gen.*, 933 F.2d at 278; *see also United States v. Morgan*, 313 U.S 409, 421-22 (1941).  Where the *Morgan* Doctrine applies, the Fifth Circuit has applied a two-step test to determine whether to permit high-ranking agency officials to be deposed.  "First, the proponent must demonstrate that the official has first-hand knowledge related to the claims being litigated that is unobtainable from other sources."  *In Re Bryant*, 745 F. App'x 215, 218 n.8 (5th Cir. 2018).  Then, proponents must show "exceptional circumstances" merit the deposition, considering "(1) 'the high-ranking status of the deponents,' (2) 'the potential burden that the depositions would impose upon them,' and (3) 'the substantive reasons for taking the depositions.'"  *Id.* at 221; *see also In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995).

## III.    The *Morgan* Doctrine Does Not Apply to Legislative Officials Like Speaker Phelan.

Speaker Phelan asks this Court to quash his deposition subpoena because he is a "high-ranking public official," Mot. to Quash at 3, but the *Morgan* Doctrine does not protect state legislators from otherwise proper deposition subpoenas.  "It is a settled rule in this circuit that exceptional circumstances must exist before the involuntary depositions of high agency officials

---

[2] The United States has subpoenaed Speaker Phelan.  Private plaintiffs have subpoenaed Margo Cardwell and Sharon Carter, and private plaintiffs will be addressing the pending motion to quash regarding depositions.

are permitted." *In re FDIC*, 58 F.3d at 1060 (internal citation and quotation marks omitted) (prohibiting depositions of FDIC Directors); *see also, e.g.*, *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007) ("Relying on *Morgan*, other courts have concluded that top executive department officials should not, absent extraordinary circumstances, be called to testify or deposed regarding their reasons for taking official action.").  However, no court within the Fifth Circuit has extended similar protections to state legislators.  Quite the contrary:  the Court of Appeals has suggested that legislators are "alternative sources" who should be deposed before a party is permitted to depose a high-ranking executive branch official.  *In re Bryant*, 745 F. App'x at 221-22.[3]  Because the *Morgan* Doctrine does not apply to legislators, the Speaker's motion to quash should be denied.[4]

The logic behind the *Morgan* Doctrine necessarily limits its scope to intrusions on executive branch decision-making.  In *United States v. Morgan*, the Supreme Court cautioned that to protect "the integrity of the administrative process," the Secretary of Agriculture "should never have been subjected" to a deposition during the underlying litigation there.  313 U.S. at 422.  Circuit courts have followed this guidance and protected administrative decision-making by barring depositions of senior executive officials, such as the Commissioner of the FDA, *In re*

---

[3] *See also, e.g.*, *Jackson Mun. Airport Auth. v. Reeves*, No. 3:16-cv-246, 2020 WL 5648329, at *3-4 (S.D. Miss. Sept. 22, 2020) (Mississippi Governor); *Freedom from Religion Found., Inc v. Abbott*, No. 1:16-cv-233, 2017 WL 4582804, at *10-12 (W.D. Tex. Oct. 13, 2017) (Texas Governor); *Hernandez v. Tex. Dep't of Aging & Disability Servs.*, No. 1:11-cv-856, 2011 WL 6300852 (W.D. Tex. Dec. 16, 2011) (Texas Governor).

[4] When seeking a protective order against a deposition of Secretary of State John Scott in another pending matter, the same counsel as represents Speaker Phelan here repeatedly acknowledged that the *Morgan* Doctrine applies to "executive department officials" and emphasized the Secretary's position within "the Executive Department of the State."  Mot. to Quash at 3-5, *LUPE v. Abbott*, No. 5:21-cv-844 (W.D. Tex. Mar. 21, 2022), ECF No. 334.  At the United States' request, that motion has been held in abeyance until the completion of other discovery concerning the Office of the Secretary of State.  *See LUPE v. Abbott*, No. 5:21-cv-844 (W.D. Tex. May 2, 2022), ECF No. 390.

*United States*, 985 F.2d 510, 512 (11th Cir. 1993), the Mayor and Deputy Mayor of New York

City, *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013), and

the Secretary of Labor, *Simplex Time Recorder Co. v. Sec. of Labor*, 766 F.2d 575, 586-87 (D.C.

Cir. 1985); *see also In re Dep't of Commerce*, 139 S. Ct. 16, 16-17 (2018) (staying deposition of

Secretary of Commerce).

However, no appellate court has extended the *Morgan* Doctrine beyond the executive

branch.  Rather, other protections bar unwarranted probing into legislative and judicial acts,

including the Speech or Debate Clause, *see, e.g.*, *Gravel v. United States*, 408 U.S. 606, 615-16

(1972), and judicial immunity, *see Bradley v. Fisher*, 80 U.S. 335, 354 (1871); *see also, e.g.*, *In

re Lickman*, 304 B.R. 897 (M.D. Fla. 2004) (barring certain judicial branch depositions).  State

legislative privilege affords some protections to Speaker Phelan, but it does not fully bar

depositions.  *See LULAC I¸* 2022 WL 1570858, at *2-3.

Speaker Phelan suggests that the *Morgan* Doctrine does not distinguish between

executive branch officials and state legislators, Mot. to Quash at 5-6, but the cases on which he

relies offer little support.  Most are district court decisions protecting Members of Congress from

nuisance depositions, seizing on shorthand references to "high ranking government officials" to

bar unduly burdensome discovery unrelated to official acts.  *Blankenship v. Fox News Network,

LLC*, 2020 WL 7234270, at *6-7 (S.D. W. Va. Dec. 8, 2020); *Moriah v. Bank of China Ltd.*, 72

F. Supp. 3d 437, 438 (S.D.N.Y. 2014); *see also Springfield Terminal Ry. Co. v. United Transp.

Union*, No. 89-mc-73, 1989 WL 225031 (D.D.C. May 18, 1989) (allowing limited discovery to

proceed).  And in *Harding v. County of Dallas*, plaintiffs did not contest the applicability of the

*Morgan* Doctrine to Dallas County Commissioners.  *See* 2016 WL 7426127, at *7 (N.D. Tex.

Dec. 23, 2016) (challenging only whether the doctrine could be overcome).  In light of that

concession, the court improperly applied the Morgan Doctrine to commissioners' "political campaigns over the past decade," despite expressly finding that campaign activities are not substantially "connected with the legislative process," *id.* at *4, *8-9.[5]  Thus, all four decisions erroneously applied the *Morgan* Doctrine to discovery unrelated to official acts, based merely on deponents' status as public officials.  *Cf. Clinton v. Jones*, 520 U.S. 681, 704-06 (1997); *Gravel*, 408 U.S. at 622-27.  The *Morgan* Doctrine merely protects against compelled testimony regarding an executive official's "reasons for taking official actions."  *In re FDIC*, 58 F.3d at 1060 (internal citation and quotation marks omitted).

Thus, it is no surprise that the Speaker of the Texas House of Representatives has been deposed in major Voting Rights Act litigation.  In litigation concerning the 2011 Texas redistricting, the United States conducted a half-day deposition of Speaker Joe Straus III.  *See* Straus Tr. Excerpt, *Texas v. United States*, No. 1:12-cv-128 (D.D.C.) (Ex. 3).  The United States also deposed Speaker Straus in litigation concerning SB 14, Texas's photographic voter identification law.  *See* Straus Tr. Excerpt, *Texas v. Holder*, No. 1:11-cv-1303 (D.D.C.) (Ex. 4); Straus Tr. Cover, *Veasey v. Perry*, No. 2:13-cv-193 (S.D. Tex.) (Ex. 5).  Although the State successfully asserted the *Morgan* Doctrine to bar the deposition of Lieutenant Governor David Dewhurst in a challenge to SB 14, *see Texas v. Holder*, No. 1:12-cv-128 (D.D.C. June 14, 2012) (three-judge court), ECF No. 186 (Ex. 6), the State made no such claim with respective to the Speaker.

---

[5] *Olivieri v. Rodriguez*, 122 F.3d 406 (7th Cir. 1997), on which Speaker Phelan also relies, does not address the *Morgan* Doctrine at all.  Moreover, the deposition tangentially at issue concerned a municipal executive branch official, not a legislator.  *See id.* at 409.

IV.      **In the Alternative, This Court Should Hold this Motion in Abeyance.**

Should this Court determine that the *Morgan* Doctrine does apply to the Speaker—and it should not—the Speaker's motion should be held in abeyance for further development of the factual record.  *See LUPE v. Abbott*, No. 5:21-cv-844 (W.D. Tex. May 2, 2022), ECF No. 390 (holding motion to quash deposition of Secretary of State based on the *Morgan* Doctrine in abeyance).  At this time, the United States lacks access to documents concerning the Speaker's involvement in redistricting and has not had the opportunity to depose other personnel from the Office of the Speaker.  As noted above, Speaker Phelan provided an implausibly meager response to a document subpoena—suggesting possibilities such as an inadequate search or systematic spoliation—which has required the United States to seek discovery by other means. The United States has moved to compel the production of hundreds of documents improperly withheld by other Legislators and Legislative Employees, some of which may shed light on the Speaker's involvement in the redistricting process.  *See* Mot. to Enforce, ECF No. 351. Moreover, the United States intends to depose Jay Dyer and Mark Bell, two of the Speaker's aides, on July 6 and July 7.  Such further discovery will permit the United States to determine whether information concerning the Speaker's role in redistricting is unobtainable from other sources, *see In Re Bryant*, 745 F. App'x at 218 n.8, and will inform this Court as to whether exceptional circumstances exist that warrant a deposition of Speaker Phelan, should this Court determine that he is protected by the *Morgan* Doctrine, *see, e.g.*, *In re FDIC*, 58 F.3d at 1060. *See also Greater Birmingham Ministries v. Merrill*, 321 F.R.D. 406, 413 (N.D. Ala. 2017) (permitting the deposition of the Alabama Secretary of State who was "hands-on" in implementing a challenged law, notwithstanding invocation of the *Morgan* Doctrine).

Therefore, should this Court determine that the *Morgan* Doctrine applies to Speaker Phelan, the United States respectfully requests that this Court hold Speaker Phelan's motion in

abeyance until the United States is in a position to submit a short statement either establishing that Speaker Phelan's unique knowledge is not available from alternative sources or inform the Court that it no longer seeks to depose Speaker Phelan.  Under these circumstances, the United States proposes to submit a notice or supplemental response by no later than July 15, 2022.

## V.      Conclusion

For the foregoing reasons, the United States respectfully requests this Court deny Speaker Phelan's motion to quash.  In the alternative, the United States requests that this Court hold Speaker Phelan's motion in abeyance until further discovery may be taken.

Dated: June 21, 2022

PAMELA S. KARLAN
Principal Deputy Assistant Attorney General
Civil Rights Division


*/s/ Daniel J. Freeman*
T. CHRISTIAN HERREN, JR.
TIMOTHY F. MELLETT
DANIEL J. FREEMAN
JANIE ALISON (JAYE) SITTON
MICHELLE RUPP
JACKI L. ANDERSON
JASMIN LOTT
HOLLY F.B. BERLIN
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 21, 2022, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system, which will send notification of this filing to counsel of record.

*/s/ Daniel J. Freeman*
Daniel J. Freeman
Voting Section
Civil Rights Division
U.S. Department of Justice
daniel.freeman@usdoj.gov
