UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| MEXICAN AMERICAN LEGISLATIVE CAUCUS, TEXAS HOUSE OF REPRESENTATIVES, | § § § § | |
| Plaintiffs | § § | Case No. 3:21-cv-259-DCG-JES-JVB |
| v. | § § | |
| STATE OF TEXAS, GREG ABBOTT, GOVERNOR OF THE STATE OF TEXAS, in his official capacity, and JOHN SCOTT, SECRETARY OF STATE OF TEXAS, in his official capacity | § § § § § § § | |
| Defendants | § | |

**PLAINTIFF MALC'S RESPONSE TO MOTION BY TEXAS HOUSE SPEAKER DADE PHELAN, GENERAL COUNSEL TO THE HOUSE MARGO CARDWELL, AND HOUSE PARLIAMENTARIAN SHARON CARTER TO QUASH DEPOSITION SUBPOENAS AND, ALTERNATIVELY, MOTION FOR PROTECTIVE ORDER**

Plaintiff Mexican American Legislative Caucus ("MALC") files this Response to Motion by Texas House Speaker Dade Phelan ("Speaker Phelan"), General Counsel to the House Margo Cardwell ("Cardwell"), and House Parliamentarian Sharon Carter ("Carter") to Quash Deposition Subpoenas and, Alternatively, Motion for Protective Order and shows the Court the following:

## I.  INTRODUCTION

The Court should allow the depositions of Speaker Phelan, Cardwell, and Carter. Cardwell did not meet her burden to establish the attorney-client privilege, and legislative privilege does not prevent her testimony. Likewise, legislative privilege does not prevent Carter from providing deposition testimony. MALC relies on and incorporates by reference all briefing done by the U.S. Department of Justice as to Speaker Phelan's deposition. The information that MALC seeks in the

subpoenaed deposition testimony is highly relevant.

## II.     ARGUMENT & AUTHORITIES

A party may serve a subpoena under Rule 45 to "command attendance at a deposition." Fed. R. Civ. P. 45(a)(1)(B).  The recipient of a subpoena may move to quash if the subpoena "requires disclosure of privileged or protected matter; or [] subjects a person to undue burden." *Tex. Keystone, Inc. v. Prime Nat. Res., Inc.*, 694 F.3d 548, 554 (5th Cir. 2012). "The proponent of a motion to quash must meet the heavy burden of establishing that compliance with the subpoena would be unreasonable and oppressive," *SEC v. Reynolds*, 3:08-CV-0438, 2016 WL 9306255, at *2 (N.D. Tex. Apr. 29, 2016), and the oppressiveness of a subpoena "must be determined according to the facts of the case." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

### A.     GENERAL COUNSEL TO THE HOUSE MARGO CARDWELL SHOULD BE DEPOSED.

#### 1. Cardwell does not meet her burden of establishing attorney-client privilege.

"The burden of demonstrating the applicability of the [attorney-client] privilege rests on the party who invokes it." *Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, I.R.S.*, 768 F.2d 719, 721 (5th Cir. 1985). The Court should deny the Motion to Quash the Deposition of Cardwell because Cardwell fails to meet her burden to establish that the attorney-client privilege should somehow entirely prevent her from sitting for a deposition or that even most of the information sought would be subject to privilege.  First, she fails to establish with whom her supposed attorney-client relationship formed.  Second, she fails to establish that all or even most of the information that would be the subject of the deposition constitutes what should be considered privileged legal advice, as opposed to policy advice or other non-privileged matter.

First, and significantly, Cardwell never identifies who her client is; legal advice given to a specific client is an inherent part of establishing the privilege. Instead, she states in her declaration, "In my role as General Counsel to the House, my general job responsibilities include advising Texas House member officers and committees, officers of the House, and other legislative employees in my capacity as a legislative attorney, as defined by Tex. Gov. Code § 306.008(2)." [Doc. 335-19, ¶ 7]. This is not sufficient to establish attorney-client privilege in a federal voting rights case. "Where, as here, the existence of a federal question provides the basis for federal subject matter jurisdiction, federal common law governs the resolution of the privilege issue." *S.E.C. v. Microtune, Inc.*, 258 F.R.D. 310, 315 (N.D. Tex. 2009) (citing *United States v. Zolin,* 491 U.S. 554, 562 (1989); Federal Rule of Evidence 501); *accord United States v. Robinson*, 121 F.3d 971, 974 (5th Cir.1997), cert. denied, 522 U.S. 1065 (1998). Cardwell is an employee within the Speaker's office and did not automatically form an attorney-client relationship with each and every individual house member, house staffer, outside consultant, or other parties that may have played a role in the redistricting process simply by donning the title General Counsel.

To invoke the attorney-client privilege, the claimant must establish the following elements:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is (the) member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. Kelly*, 569 F.2d 928, 938 (5th Cir. 1978). Cardwell has provided no basis to establish that every person she discussed matters relevant to the creation and adoption of the

challenged redistricting plans is or sought to become a client seeking a legal opinion or legal services.

Further, Cardwell does not demonstrate that, even if there were some attorney-client relationships formed with some unknown individuals other than the Speaker, that the information sought is privileged. Under federal common law, the elements of the attorney-client privilege are: (1) a confidential communication; (2) made to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion, legal services, or assistance in a legal proceeding. *Robinson*, 121 F.3d at 974 (5th Cir.1997). "Attorney-client privilege is not presumed, and ambiguities as to whether the elements of a privilege claim have been met are constructed against the proponent." *Id.* Instead, determining privilege is a highly fact-specific inquiry. *Id.* General allegations are never sufficient to meet the burden; instead, the proponent must provide sufficient facts by way of detailed affidavits or other evidence. *Id.* at *5.

Attorney-client privilege only protects a narrow form of communication between an attorney and her client. *See United States v. Pipki*ns, 528 F.2d 559, 562–63 (5th Cir. 1976) (quoting 8 Wigmore (McNaughton rev. ed. 1961) s 2192 at 70, 554) ("The attorney-client privilege, however, is not a broad rule of law which interposes a blanket ban on the testimony of an attorney. To the contrary, . . . the privilege stands in derogation of the public's 'right to every man's evidence', , and as 'an obstacle to the investigation of the truth,' thus, as Wigmore has said, 'It ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle.'"). For example, "[w]here business and legal advice are intertwined, the legal advice must predominate for the communication to be protected." *Neuder v. Battelle Pac. Nw. Nat. Lab.*, 194 F.R.D. 289, 292 (D.D.C. 2000). Accordingly, when legal advice is merely incidental to business advice, the privilege does not apply. *Id.* Further, it is well-settled that an in-house

counsel's presence in a meeting does not automatically create a privilege. *Id.* at 293. In an activity such as redistricting, not all consultation constitutes legal advice. Map drawing activities themselves are not per se legal advice unless a person with whom an attorney-client relationship has been formed is seeking a legal opinion on the map. There are numerous non-legal aspects to map-drawing, such as whether a particular district is acceptable to an incumbent or other stakeholder. Also, discussions centered around political decision making, such as whether there is support for a particular legislative proposal, or navigating the legislative process itself, are not legal advice.

In fact, there is precedent in prior Texas redistricting litigation for attorneys serving as key witnesses. During redistricting litigation over maps drawn in 2011, the attorney for the speaker, Gerardo Interiano, was identified as one of the key players in the map drawing process. *Perez v. Abbott*, No. SA-11-CV-360, 2017 WL 1406379, at *1 (W.D. Tex. Apr. 20, 2017) ("Key players in charge of drawing and putting together the House map were Burt Solomons, Gerardo Interiano, and Ryan Downtown, and to a lesser extent Bonnie Bruce, none of whom had any prior experience with redistricting. The House map drawers were drawing under the supervision of House Redistricting Committee ('HRC') Chairman Solomons. Speaker Joe Straus and Chairman Solomons were the ultimate decisionmakers on the number of districts in a county and on pairings.") Interiano's interactions supplied a key piece of evidence in prior redistricting litigation. *Perez v. Perry*, No. SA-11-CV-360, 2012 WL 13124278, at *7 (W.D. Tex. Mar. 19, 2012) ("In support of its claim that Texas acted with a discriminatory purpose, the United States relies on several pieces of evidence. The first piece is an email from Eric Opiela to Gerardo Interiano, sent in November 2010 when they were both on staff for Texas House Speaker Joe Strauss. Opiela suggested that they should calculate Spanish Surname Turnout/Total Turnout ratio for all

VTD's for the 2006 to 2010 general elections because '[t]hese metrics would be useful in identifying a 'nudge factor' by which one can analyze which Census blocks, . . . '").

Lastly, Cardwell fails to establish that all the potentially relevant discussions had with any purported clients were not in the presence of strangers.  Even if Cardwell did form a client relationship with certain members or legislative staffers outside the Speaker's office, there is no basis for assuming that she formed a relationship with Senators, Senate staff, or the non-state legislators who are known to have played a role in drawing Congressional maps.

### 2. Cases cited by Cardwell do not support her assertions.

Cardwell fails to cite to a single case that is truly analogous to this one; all the cases are distinguishable and do not serve as basis for preventing her from testifying.

Some of the cases relied on by Cardwell apply the *Shelton* rule for depositions of attorneys. Importantly, the *Shelton* rule is the test to be used when a party is trying to seek the deposition of current opposing counsel in active litigation.   In *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 (2nd Cir. 2003), the Second Circuit limited the stringent *Shelton* rule to cases in which the attorney trying to be deposed was current opposing counsel in active litigation.  The same is true in *Theroit v. Par. Of Jefferson*, 185 F.3d 477, 491 (5th Cir. 1999); the Fifth Circuit held that *Shelton* rule had not been met for purposes of requiring the deposition of current opposing counsel in active litigation.  Notably, though, a full reading of *Theroit* supports MALC's position in the matter.  In deciding whether one-person, one-vote considerations were paramount, the Court considered the testimony of a staff attorney who worked on redistricting plans. *Id.* at 487.  Finally, in *Hall v. Lousiana*, Civil Action No. 12-657-BAJ-RLB, 2014 WL 1652791, *4 (M.D. La. Apr. 23, 2014), the deposition of current opposing counsel in active litigation was also sought in connection with her work on behalf of former defendants.

Neither *Gates v. Tex. Dep't of Family and Protective Servs.*, A-09-CV-018 LY, 2010 WL 11598033, (W.D. Tex. Oct. 7, 2010) nor *Nat'l W. Life Ins. Co. v. W. Nat'l Life Ins.*, Cause No. A-09-CA-711LY, 2010 WL 5174366 (W.D. Tex. Dec. 13, 2010) dealt with the deposition of a staff attorney in the context of redistricting litigation. In *Gates*, the court allowed limited testimony of an attorney who served as Litigation Counsel in the General Counsel's Office of the Department of Family and Protective Services. *National Western Life Insurance Co.* addressed the deposition of outside legal counsel related to a 1963 merger and resulting name change. Neither case is factually analogous to the issues currently before this Court.

### 3. Alternatively, the Court should adopt the procedure used for other deponents.

On May 18, 2022, the Court adopted certain procedures for State Representatives claiming legislative privilege as a basis for quashing deposition subpoenas. [Doc. 282]. Given the narrow scope of the attorney-client privilege, Cardwell has not met her burden of establishing that she should not sit for a deposition at all. Since the Court may not be positioned to rule on which information possessed by Cardwell may be the subject of attorney-client privilege given the extremely conclusory nature of her declaration, MALC alternatively asks the Court to adopt the same procedures adopted in the May 18, 2022 Order [Doc. 282]. Given the nature of Cardwell's role, the attorney-client privilege would likewise not be "so broad as to compel the Court to quash the deposition subpoenas, modify them, or enter a protective order prohibiting questions about topics that are not strictly within the public records." [Doc. 282].

Federal courts have repeatedly refused to grant Texas legislators blanket protective orders barring depositions in voting rights cases. The Court should not treat Cardwell's request for a protective order any differently. In *Perez v. Perry*, prior statewide redistricting litigation in Texas under Section 2 of the Voting Rights Act, the State sought a protective order barring inquiries "on

the issue of individual legislators' motives or purposes . . . if it is based on information or communications other than those contained in the journals and publicly-available reports and acts of the 82nd Legislature." Mot. for Protective Order at 7, *Perez v. Perry*, No. 5:11-cv-360 (W.D. Tex. July 21, 2011), ECF No. 62. The *Perez* Court concluded that "any sort of blanket protective order that would insulate witnesses from testifying would be inappropriate." *Perez I* at 5 (citing *In re Grand Jury*, 821 F.2d 946, 957-58 (3d Cir. 1987)). The Court further ruled as follows:

- First, it found "that the assertion of the privilege is premature." It thus refused to "provide blanket protection to every person who may choose to assert the privilege during the discovery process."

- Second, the Court directed the parties to "proceed with depositions and the deponents must appear and testify even if it appears likely that the privilege may be invoked in response to certain questions."

- Third, the Court decided that a deponent "may invoke the privilege in response to particular questions, but the deponent must then answer the question subject to the privilege."

- Finally, the Court announced that with respect to portions of the transcript that the deponent claimed were privileged, that they "may then be sealed and submitted to the Court for in camera review, along with a motion to compel, if the party taking the deposition wishes to use the testimony in these proceedings. In other words, the testimony will not be disclosed or used unless the Court finds that the privilege does not apply, has been waived and/or should not be enforced."

*Id.* at 5-6 (internal footnote omitted).

Cardwell provides no basis for this Court to deviate from its prior decision and impose an effective prohibition on depositions in this case. *See Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) ("It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error."). The mere possibility that a deposition may "wander into impermissible terrain is not sufficient reason to halt [an otherwise] permissible inquiry." *EEOC v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 183 (4th Cir. 2011); *see also Fla. Ass'n of Rehabilitation Facilities, Inc. v. Florida*, 164 F.R.D. 257, 268 (N.D.

Fla. 1995) (permitting depositions while noting narrow issues that may be privileged).

### B.   HOUSE PARLIAMENTARIAN SHARON CARTER SHOULD BE DEPOSED.

Importantly, the Western District of Texas has repeatedly recognized that the legislative privilege is not an all-encompassing shield that should protect the discovery of highly relevant information. This court has already held as much in regard to state legislators themselves. [Doc. 282]. Similarly, in last decade's redistricting litigation the court wrote:

> [T]he legislative privilege is limited and qualified, and that even if it is asserted, 'it may be waived and/or the Court may find that it should not be enforced based on the information being sought and/or other circumstances that may not be readily apparent, such as whether the evidence is available from other sources.

*Perez v. Perry*, Civ. No. SA-11-CV-360-OLG, 2014 WL 106927, *1 (W.D. Tex. Jan. 8, 2014).

The legislative privilege is personal; it is not greater than the qualified privilege that the legislators themselves have. "A legislator cannot assert or waive the privilege on behalf of another legislator. Accordingly, counsel for the State of Texas may not invoke the privilege on behalf of the legislator, legislative aide, or staff member . . . To the extent, however, that any legislator, legislative aide, or staff member had conversations or communications with any outsider (e.g. party representatives, non-legislator, or non-legislative staff), any privilege is waived as to the contents of those specific communications." *Id.* at 1.

As observed in this Court's previous Order, whether legislative privilege will shield particular information is context and fact dependent and in part relies on the importance of the information to the case and its availability from other sources. [Doc. 282 at 2-3]. One factor that courts consider in assessing claims of intentional discrimination is departures from ordinary legislative procedures. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267, (1977) ("Departures from the normal procedural sequence also might afford evidence that improper purposes are playing a role."). Although legislators may have some knowledge of

parliamentary procedure, there can be no better source on it than the parliamentarian themselves. Whether a particular procedure constituted a departure from ordinary is not itself privileged information, and Carter represents a unique source of information on House procedures. Further, if Carter was instructed to depart from ordinary procedure by legislators, the importance of that information might outweigh any minimal interest of the legislator. *See* ECF 282 at 4 (citing *United States v. Gillock*, 445 U.S. 360, 373 (1980)) ("We recognize that denial of a privilege to a state legislator may have some *minimal* impact on the exercise of his legislative function." (emphasis added by district court)).

Lastly, Carter fails to acknowledge that MALC represents a caucus of legislators. While communications between parliamentarians and members of the legislative branch may be subjected to legislative privilege from the public, there is no authority for this privilege to prevent the sharing of information *among members of the same legislative branch*. Carter further tries to confuse the issue by arguing the floor procedure is publicly available. MALC is not attempting to merely re-create the floor procedure.

The Court should allow the deposition of House Parliamentarian Sharon Carter. The legislative privilege does not prevent her from sitting for a deposition.

### C.  SPEAKER DADE PHELAN SHOULD BE DEPOSED.

MALC refers to and incorporates by reference as if fully set forth herein the arguments made and authorities cited by the U.S. Department of Justices as it relates to Speaker Dade Phelan.

### III.  CONCLUSION & PRAYER

For the foregoing reasons, MALC asks this Court to deny the Motion by Texas House Speaker Dade Phelan, General Counsel to the House Margo Cardwell, and House Parliamentarian Sharon Carter to Quash Deposition Subpoenas and, Alternatively, Motion for Protective Order,

and for any further relief which it may be entitled.

Dated: June 22, 2022

        Respectfully submitted,

        SOMMERMAN, MCCAFFITY,
        QUESADA &GEISLER, L.L.P.

        */s/ Sean J. McCaffity*
        _____
        George (Tex) Quesada
        State Bar No. 16427750
        Email:  quesada@textrial.com

        Sean J. McCaffity
        State Bar No. 24013122
        Email:  smccaffity@textrial.com

        3811 Turtle Creek Boulevard, Suite 1400
        Dallas, Texas  75219-4461
        214/720-0720 (Telephone)
        214/720-0184 (Facsimile)
        -and-

        Joaquin Gonzalez
        Texas Bar No. 24109935
        1055 Sutton Dr.
        San Antonio, TX  78228
        jgonzalez@malc.org

        ***ATTORNEYS FOR PLAINTIFFS***

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Response to Motion by Texas House Speaker Dade Phelan, General Counsel to the House Margo Cardwell, and House Parliamentarian Sharon Carter to Quash Deposition Subpoenas and, Alternatively, Motion for Protective Order was filed and served via CM/ECF electronic service on June 22, 2022 to all counsel of record.

        */s/ Sean J. McCaffity*
        Sean J. McCaffity