## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, <br><br>        *Plaintiffs*, <br><br> v. <br><br> GREG ABBOTT, in his official capacity as Governor of the State of Texas, *et al.*, <br><br>        *Defendants*. | CIVIL ACTION NO. <br> 3:21-cv-00259-DCG-JES-JVB <br> [Consolidated Action:  Lead Case] |

## JOINT MOTION OF PLAINTIFFS LULAC, ET AL. ABUABARA ET AL., AND TEXAS NAACP TO COMPEL PRODUCTION OF DOCUMENTS FROM DEFENDANT ABBOTT

Plaintiffs LULAC, *et al.*, Abuabara, *et al*. and Texas NAACP (collectively, "Plaintiffs") brought suit to challenge the redistricting plans recently enacted by the Texas Legislature, alleging violations of the Voting Rights Act and the United States Constitution.[1]  Plaintiffs allege, among other things, that the Texas Legislature enacted the redistricting plans with the intent to discriminate against racial minorities, and assert that the totality of circumstances shows that those minorities have less opportunity to participate in the political process and to elect representatives of their choice.  To that end, Plaintiffs served their requests for production of documents on Defendant Greg Abbott.

Based on sweeping claims of privilege, Abbott withheld a number of responsive documents that fell into two categories:  (1) documents related to Abbott's proclamation calling the special legislative session in which the Texas Legislature enacted the challenged redistricting

---

[1] Abuabara Plaintiffs bring claims under only the Voting Rights Act.  Dkt. 356.

legislation, and (2) documents related to draft redistricting legislation.   However, Abbott—a member of the executive branch—has shared several of these documents with the legislative branch, and many of these documents were created to aid in calling the third special session or in enacting legislation—not for or in anticipation of litigation.   Accordingly, the privileges Abbott asserts over those documents do not apply—or if they ever did, they have since been waived.

After multiple "meet and confer" exchanges between the parties and correspondence outlining Plaintiffs' positions did not resolve the parties' dispute, Plaintiffs now respectfully request that the Court compel disclosure of those documents.   *See* Ex. A.

## I.   BACKGROUND

On March 3, 2022, Texas NAACP served its first set of document requests on Abbott. Ex. B.   On March 5, 2022, LULAC Plaintiffs served their first set of requests for production of documents on Abbott.   Ex. C.   On March 17, 2022, Abuabara Plaintiffs served their first set of requests for production on Abbott.   Ex. D.

On April 4, 2022, Abbott responded to LULAC Plaintiffs' discovery requests with a letter asserting various objections to those requests, including broad claims of the legislative privilege, deliberative-process privilege, attorney-client privilege, and protection from disclosure under Texas Government Code § 323.017.   Ex. E.[2]   LULAC Plaintiffs responded with their own letter on April 26, 2022, refuting, among other things, the basis for the assertion of legislative privilege, the deliberative-process privilege, and protection under Texas Government Code § 323.017.   Ex. G.   LULAC Plaintiffs explained that Abbott lacked standing or the ability to invoke the legislative privilege, that Abbott could not invoke the deliberative-process privilege over the context of legislation, and that Texas Government Code § 323.017 did not apply because the instant suit arises under federal law.   *See id.*

---

[2] Defendants similarly responded to Texas NAACP's document requests on April 4, 2022.   Ex. F.

On April 18, 2022, Abbott served his responses to Abuabara Plaintiffs' first set of requests for production.  Ex. H.  In his responses, Abbott asserted claims of legislative privilege, deliberative-process privilege, attorney-client privilege, attorney work-product privilege, and protection from disclosure by Texas Government Code § 323.017.  *See id.*  On April 22, 2022, Abuabara Plaintiffs and Defendants held their first meet and confer regarding Abbott's objections to Abuabara Plaintiffs' discovery requests, and Defendants stated that they would provide privilege logs detailing any documents withheld based on their various privilege objections within 30 days of the associated production.

On April 28, 2022, LULAC Plaintiffs and Defendants held a meet and confer regarding Abbott's objections to their discovery requests, during which Defendants emphasized that LULAC Plaintiffs' concerns were "largely academic" and indicated that their forthcoming privilege log would provide more information regarding their objections.  During that meeting, LULAC Plaintiffs reiterated the arguments in their letter and stated that they would revisit those concerns upon reviewing Defendants' privilege log.

On May 3, 2022, Abuabara Plaintiffs served their second set of requests for production. Ex. I.

On May 4, 2022, Abbott served his initial privilege log to LULAC Plaintiffs and Texas NAACP.  Ex. J.  In that log—which lacked details regarding several of the fields required under the parties' Stipulated Order Regarding Discovery of Electronically Stored Information ("Stipulated ESI Agreement") (Dkt. 203) and failed to comply with the requirements of Federal Rule of Civil Procedure 26(b)(5)—Abbott asserted at least one of the following privileges over each withheld document:  the legislative privilege, the deliberative-process privilege, the attorney-client privilege, and the work product doctrine.  *Id.*  On May 12, 2022, counsel for

LULAC Plaintiffs, Texas NAACP, and Defendants met and conferred regarding Abbott's objections in his privilege log, and LULAC Plaintiffs and Texas NAACP agreed to follow up with a letter further elaborating on their concerns with the objections asserted by Abbott.

On May 16, 2022, LULAC Plaintiffs and Texas NAACP sent their follow-up letter to Defendants.  Ex. K.  In that letter, LULAC Plaintiffs and Texas NAACP noted that Abbott's initial privilege log failed to comply with the requirements of Rule 26(b)(5), as it failed to provide sufficient information to enable LULAC Plaintiffs and Texas NAACP to assess Abbott's privilege claims, and it failed to comply with the parties' Stipulated ESI Agreement because it lacked, among other things, all authors, senders, recipients, dates of creation, and bases for privileges asserted.  *Id.* at 3–4.  LULAC Plaintiffs and Texas NAACP also identified specific documents Abbott improperly withheld in LULAC Plaintiffs' April 26, 2022 letter regarding the legislative privilege, the deliberative-process privilege, and Texas Government Code § 323.017.  *See id.* at 5–11.  And they argued that the attorney-client privilege and the work product doctrine did not apply, for the same reasons articulated below.  *See id.* at 7–11.

On May 18, 2022, Abbott served his initial privilege log on Abuabara Plaintiffs.  Ex. L.  Abbott's privilege log provided to the Abuabara Plaintiffs is identical to that provided to LULAC Plaintiffs and Texas NAACP, and it fails to comply with the requirements of the Federal Rule of Civil Procedure 26(b)(5) for the same reasons.

On May 19, 2022, Abuabara Plaintiffs and Defendants had a second meet and confer to further discuss the issues raised in their first meet and confer.  During that meeting, Defendants stated their intent to supplement their responses to Abuabara Plaintiffs' first set of requests for production along with responses to the second set of requests for production.  On June 2, 2022,

Defendants served their supplemental discovery responses and responses to Abuabara Plaintiffs'
second set of discovery requests.

On May 25, 2022, Abbott emailed a supplemental privilege log (the "Supplemental
Privilege Log") to LULAC Plaintiffs and Texas NAACP.  Exs. M and N.  In that email, Abbott
offered just two paragraphs of substance:  one that acknowledged that the Supplemental Privilege
Log still lacked information required under the Stipulated ESI Agreement, and the other that
"briefly address[ed]" LULAC Plaintiffs' and Texas NAACP's arguments regarding each
privilege Abbott asserted in their 13-page May 16, 2022 letter.  *See* Ex. N.  Regarding his
assertions of the legislative and deliberative-process privileges, Abbott argued that those
privileges applied to "documents and communications relating to the Governor's constitutional
authority to call special sessions of the legislature." *Id.*  Abbott also explained, presumably as
support for asserting the attorney-client privilege and work product doctrine, that "in many
instances, lawyers from the Governor's office gave legal advice on the content of the documents
and communications, and the legality of the actions pursued." *Id.*

On June 22, 2022, counsel for Plaintiffs emailed counsel for Defendants to attempt one
final meet and confer before filing the instant motion.  After conferring by email, counsel for
Plaintiffs and Defendants agreed on June 24, 2022 that they could not resolve their disagreement
over the documents at issue in the instant motion.  Ex. O.

After repeated meet and confer exchanges and multiple correspondence to address their
substantive concerns regarding each basis upon which Abbott withholds documents, and in the
face of Abbott's conclusory assertions of each privilege, Plaintiffs now seek to compel the
production of all but four of the documents Abbott has listed in his Supplemental Privilege Log.
Exhibit A lists the documents Plaintiffs seek in the instant motion.

## II.   LEGAL STANDARD

"A party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if the other party "fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34."  Fed. R. Civ. P. 37(a)(3)(B)(iv).  Rule 34 permits parties to serve upon each other "a request within the scope of Rule 26(b)" to produce certain items "in the responding party's possession, custody, or control."  Fed. R. Civ. P. 34(a)(1).  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).

Rule 26 requires a party that asserts a privilege to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and to do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A)(ii).  "It is well settled that the party asserting the privilege has the burden of establishing its applicability."  *Perez v. Perry*, No. SA-11-CV-360-OLG-JES-XR, 2014 WL 3495414, at \*2 (W.D. Tex. July 11, 2014) (citing *Hodges, Grant & Kaufman v. United States*, 768 F.2d 719, 721 (5th Cir. 1985)).  Conclusory assertions are "insufficient to carry out the proponent's burden of establishing" privilege. *E.E.O.C. v. BDO USA, L.L.P.*, 876 F.3d 690, 696 (5th Cir. 2017).

When a motion to compel "is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A).

### III.    ARGUMENT

**A. Abbott is not a Legislator and Thus Cannot Withhold Documents Based on the Legislative Privilege.**

*1.    Abbott Cannot Invoke the Legislative Privilege on Behalf of Legislators.*

Abbott inappropriately asserts the legislative privilege over several documents in the Supplemental Privilege Log.[3]  Abbott, however, lacks standing to assert the legislative privilege.

"State legislative privilege is a federal common law privilege, 'applied through Rule 501 of the Federal Rules of Evidence.'"[4]  Dkt. 282 at 2 (quoting *Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Parish Gov't*, 849 F.3d 615, 624 (5th Cir. 2017)).  "The privilege 'is, at best, one which is qualified.'"  *Id.* (quoting *Jefferson Cmty.*, 849 F.3d at 624).  To that end, the privilege "must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth."  *Id.* (quoting *Jefferson Cmty.*, 849 F.3d at 624).

Courts in this Circuit—including the three-judge court in the last round of redistricting litigation in Texas—have consistently held that "neither the Governor, nor the Secretary of State

---

[3]  Of the documents Plaintiffs seek, Abbott asserts the legislative privilege over:  DOC_356555, DOC_0356556, DOC_0356557, DOC_0356560, DOC_0356561, DOC_0356569, DOC_0356571, DOC_0356578, DOC_0356579, DOC_0356580, DOC_0356581, DOC_0356582, DOC_0356583, DOC_0356584, DOC_0356585, DOC_0356590, DOC_0356591, DOC_0356592, DOC_0356593, DOC_0356598, DOC_0356600, DOC_0356604, DOC_0356606, DOC_0356609, and DOC_0356610. Ex. A.

[4]  At various points, Defendants have asserted that Texas Government Code § 323.017 governs the scope of the legislative privilege.  *See, e.g.*, Ex. E at 8.  However, the Texas Government Code is irrelevant to any analysis of the privilege here.  As the Court previously emphasized, the state legislative privilege is a federal common law privilege, applied through Federal Rule of Evidence 501.  Dkt. 282 at 2.  Rule 501 "provides that federal common law of privilege applies in general in federal cases."  *Hobart v. City of Stafford*, 784 F. Supp. 2d 732, 764 n.22 (S.D. Tex. 2011); *see also TitleMax of Tex., Inc. v. City of Dallas*, No. 3:21-cv-1040-S-BN, 2022 WL 326566, at *2 (N.D. Tex. Feb. 3, 2022).  The instant suits are pending in federal court and arise under federal causes of action.  Accordingly, "the Court must apply the federal common law as to the legislative privilege."  *TitleMax*, 2022 WL 326566, at *4.  As such, Texas Government Code § 323.017 is inapplicable here.

or the State of Texas has standing to assert the legislative privilege on behalf of any legislator or staff member." *Perez v. Perry*, No. SA-11-cv-360, 2014 WL 106927, at *1 (W.D. Tex. Jan. 8, 2014); *see also La Union Del Pueblo Entero (LUPE) v. Abbott*, No. SA-21-CV-00844-XR, 2022 WL 1667687, at *2 (W.D. Tex. May 25, 2022), *appeal docketed sub nom. LULAC v. Hughes*, No. 22-50435 (5th Cir. May 27, 2022); *Gilby v. Hughes*, 471 F. Supp. 3d 763, 768 (W.D. Tex. 2020); *TitleMax of Tex., Inc. v. City of Dallas*, No. 3:21-cv-1040, 2022 WL326566, at *6 (N.D. Tex. Feb. 3, 2022). That is because the "privilege is a personal one and may be waived or asserted" only by each individual legislator. *Gilby*, 471 F. Supp. 2d at 767. Just as in those cases, Abbott cannot invoke the legislative privilege here.

Moreover, even if Abbott could invoke the legislative privilege on behalf of a legislator or legislative staff—and as just discussed, he cannot—that privilege has been waived. Each of the purportedly privileged documents has necessarily been shared with Abbott, who is a member of the executive branch, not of the legislative branch—otherwise they would not be in Abbott's possession, custody, or control, and thus would not appear on his privilege log. *See* Tex. Const. art. IV, § 1 ("The Executive Department of the State shall consist of a Governor," among others). After all, "[t]o the extent . . . that any legislator, legislative aide, or staff member had conversations or communications with any outsider (*e.g.* party representatives, non-legislators, or non-legislative staff), any privilege is waived as to the contents of those specific communications." *Perez*, 2014 WL 106927, at *2; *Gilby*, 471 F. Supp. 3d at 767; *Favors v. Cuomo*, 285 F.R.D. 187, 212 (S.D.N.Y. 2012) (noting that "communications with 'knowledgeable outsiders' . . . fall outside the privilege"). As such, "the legislative privilege is waived when a state legislator communicates with executive branch officials." *LUPE*, 2022 WL 1667687, at *4; *see also Perez*, 2014 WL 106927, at *2. Because the documents were shared

with the Office of the Governor—*i.e.*, with executive branch officials—any claim of legislative privilege has been waived.

### 2.   *Abbott Cannot Invoke the Legislative Privilege on His Own Behalf.*

Abbott has also asserted, mistakenly, that he can invoke the legislative privilege on his own behalf.  Abbott has argued that "the requested production directly relates to legislative activities" and therefore "is subject to legislative privilege," Ex. E at 3, and has stated that the privilege applies because those "documents and communications relat[e] to the Governor's constitutional authority to call special sessions of the legislature," Ex. N.  But Abbott is wrong.

As an initial matter, to support the proposition that the legislative privilege applies to a member of the *executive* branch, Abbott mistakenly conflates legislative *immunity* and legislative *privilege*, applying case law regarding the former to the latter.  *See, e.g.* Ex. E at 3, 17, 22.  But as the Court recently noted, the two are distinct concepts, and case law regarding legislative immunity does not apply to the legislative privilege.  Dkt. 282 at 2; *see also Jefferson Cmty.*, 849 F.3d at 624 (citing *Perez*, 2014 WL 106927, at *2).  Accordingly, Abbott cannot invoke the legislative privilege on this basis.  *See* Dkt. 282 at 2; *see also LUPE*, 2022 WL 1667687, at *5 ("As legislative immunity and legislative privilege are distinct concepts, the Court declines to extend the privilege to executive branch officials assisting the drafting of legislation.").

Further, to the extent that Abbott claims that he may invoke the legislative privilege because the documents he withholds relate to his performance of a legislative function, he has failed to establish that he or any member of his office performed such a function with respect to the communications at issue.  Abbott invokes the legislative privilege for certain documents and communications in two non-overlapping categories:  (1) documents he claims are related to "draft redistricting legislation,"[5] and (2) documents he claims are related to his constitutional

---

[5] DOC_0356598, DOC_0356600, and DOC_0356606.

authority to call special sessions of the Legislature, including the drafting of a proclamation to call the third special session.[6]

Abbott, however, cannot show that he performs any legislative function.  Abbott is a member of the executive branch who, under the Texas Constitution, lacks any enumerated functions regarding the "Legislative power of" Texas.  *See* Tex. Const. art. III, § 1.  Any activity that Abbott engages in related to legislation is therefore, by definition, executive rather than legislative under the Texas Constitution.

Regarding the first set of documents, Abbott has no authority to legislate, and he therefore performs no legislative function in communicating about draft legislation.  The Texas Constitution is explicit:  "The powers of the Government of the State of Texas shall be divided into three distinct departments . . . and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted."  Tex. Const. art. II, § 1.  The Texas Constitution also states that "[t]he Legislative power of this State shall be vested in a Senate and House of Representatives," Tex. Const. art. III, § 1, whereas the Governor is a member of the executive branch, Tex. Const. art. IV, § 1.  In other words, the Governor has no constitutional authority to legislate—indeed, the Texas Constitution proscribes any such authority.  *See In re Dean*, 393 S.W.3d 741, 747 (Tex. 2012) ("The separation of powers doctrine prohibits one branch of government from exercising a power belonging inherently to another.").  That includes the redistricting context:  as the Supreme Court of Texas recently emphasized, "[i]n apportioning legislative districts, the Legislature is exercising its legislative power to make laws, not 'a power

---

[6] DOC_356555, DOC_0356556, DOC_0356557, DOC_0356560, DOC_0356561, DOC_0356569, DOC_0356571, DOC_0356578, DOC_0356579, DOC_0356580, DOC_0356581, DOC_0356582, DOC_0356583, DOC_0356584, DOC_0356585, DOC_0356590, DOC_0356591, DOC_0356592, DOC_0356593, DOC_0356604, DOC_0356609, and DOC_0356610.

ordinarily and intrinsically belonging to another department of the government.'" *Abbott v. MALC*, No. 22-0008, slip op. at 34 (Tex. Jun. 24, 2022) (quoting *Walker v. Baker*, 196 S.W.2d 324, 328 (Tex. 1946)), *available at*:  https://www.txcourts.gov/media/1454472/220008.pdf.  As such, "[c]ommunications received by the [Governor] from legislators looking to obtain guidance in formulating legislation are not meaningfully different from communications received by constituents from legislators or communications received by lobbyists, think-tanks, or any outsider." *Gilby*, 471 F. Supp. 3d at 768; *see also LUPE*, 2022 WL 1667687, at *6 (noting that the withholding party had "not shown that the communications at issue involved any . . . legislative functions.  Rather, the communications involve the Lieutenant Governor's input on drafting legislation.").  After all, and as courts in this Circuit have consistently held, extending the legislative privilege to conversations between state legislators and members of the executive branch would be "inconsistent with the purposes of the privilege:  to protect the legislative branch from 'intimidation' by the executive and judicial branches." *LUPE*, 2022 WL 1667687, at *4; *see also Gilby*, 471 F. Supp. 3d at 767.  Accordingly, Abbott cannot invoke the legislative privilege on this basis, and must produce those documents.

Regarding the second set of documents—documents purportedly related to calling the third special session—Abbott's authority to call a special session does not implicate a legislative function either.  Abbott's authority to convene a special session comes from article IV of the Texas Constitution—which outlines the powers of the *executive* branch.  Tex. Const. art. IV, § 8 (providing that the governor "may, on extraordinary occasions, convene the Legislature" in a special session, and "[h]is proclamation" doing so "shall state specifically the purpose for which the Legislature is convened").  The authority to call a special session is therefore executive authority, not legislative:  it lies with the governor—a member of the executive branch—and the

Legislature has no role in convening a special session or crafting the proclamation to call a special session.  Thus, as the Supreme Court of Texas recently emphasized, the power to "call special legislative sessions belong[s] constitutionally to the Governor, *not* the Legislature."  *In re Turner*, 627 S.W.3d 654, 660 (Tex. 2021) (emphasis added).  In calling a special session or drafting a proclamation for that session, "[t]he Governor has expressed his view on legislative priorities, as he is entitled to do, but he has not exercised *the Legislature's power*" in doing so.  *Id.* (emphasis added).  Indeed, the Legislature is in no way obligated to "address[] any of the . . . items listed in the Governor's call" for a special session, *id.* at 660, and as noted above, Abbott plays no role in the deliberation or enactment of any legislation during the special session—that is, in effecting the "Legislative power of the State," *see* Tex. Const. art. III, § 1.  Thus, the power to call a special session (an executive function) is distinct from the power to legislate (a legislative function).  *See In re Turner*, 627 S.W.3d at 659 (noting that the Supreme Court of Texas has "uniformly held" that "the separation of powers doctrine prohibits one branch of government from exercising a power belonging inherently to another" (cleaned up)).  Accordingly, Abbott's role in calling a special session does not implicate a legislative function, so he cannot invoke the legislative privilege on that basis.

### 3. Even if Abbott Could Invoke the Legislative Privilege, That Privilege Should Yield.

Even were it applicable, the legislative privilege should yield to the need for discovery here.  To determine whether the privilege should yield, courts in this Circuit and elsewhere have consistently considered the following five factors:  (1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the seriousness of the litigation and issues involved; (4) the role of the government in the litigation; and (5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.  *Perez*,

2014 WL 106927, at *2; *see also LUPE*, 2022 WL 1667687, at *6; *Harding v. Cnty. of Dallas*, No. 3:15-CV-0131-D, 2016 WL 7426127, at *3 (N.D. Tex. Dec. 23, 2016); *Veasey v. Perry*, 2014 WL 1340077, at *2 (S.D. Tex. Apr. 3, 2014).   Further, as the Court recently emphasized, the legislative privilege "must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth."   Dkt. 282 at 2 (quoting *Jefferson Cmty.*, 849 F.3d at 624); *see also Perez*, 2014 WL 106927, at *2.

All five factors weigh in favor of disclosure.   First, the evidence sought is both relevant and vital to Plaintiffs' claims under the Voting Rights Act and the U.S. Constitution.   Indeed, in including the documents in their Supplemental Privilege Log, Defendants concede the relevance of the documents over which Abbott asserts the legislative privilege.   After all, Abbott attempts to shield documents under the legislative privilege because of their connection to his proclamation regarding the session in which the challenged redistricting plans were enacted, or because of their connection to the drafting of the very legislation itself.   Thus, Abbott's communications about the third special session or the redistricting legislation—and particularly communications with legislators—certainly bear on the determination of discriminatory purpose, the effect of discriminatory practices, and the extent to which race played a role in redistricting decisions.   *See Gilby*, 471 F. Supp. 3d at 766; *see also Veasey*, 2014 WL 1340077, at *2.

The second factor—the availability of other evidence—also weighs in favor of disclosure.   As other courts in this Circuit have concluded—including in the context of election law—this factor "weighs in favor of disclosure 'given the practical reality that officials seldom, if ever, announce on the record that they are pursuing a particular course of action because of their desire to discriminate against a racial minority.'"   *LUPE*, 2022 WL 1667687, at *6 (quoting

*Veasey*, 2014 WL 1340077, at *3). Plaintiffs have alleged that the Legislature enacted the challenged redistricting plans with an intent to discriminate against racial minorities and that those plans had a discriminatory effect, and Plaintiffs are therefore entitled to examine the most probative evidence regarding that legislation.

The third and fourth factors—the seriousness of the litigation and issues involved, and the role of the government in the litigation—also weigh in favor of disclosure. Defendants have already acknowledged the "substantial public interest" in redistricting litigation. Dkt. 328 at 4. And they could not argue otherwise: Plaintiffs "raise serious questions whether [the redistricting legislation] complies with the Voting Rights Act and the . . . Fourteenth Amendment[]." *LUPE*, 2022 WL 1667687, at *6; *see also Harding*, 2016 WL 7426127, at *6; *Veasey*, 2014 WL 1340077, at *2 ("[T]he importance of eliminating racial discrimination in voting—the bedrock of this country's democratic system of government—cannot be overstated."). And similarly, there is no question regarding the role of the government in this litigation: the Legislature enacted the challenged redistricting plans, and by Abbott's own admission, he was in communication with legislators regarding the process and substance of the legislation that enacted those plans. *See LUPE*, 2022 WL 1667687, at *6 ("As the LULAC Plaintiffs have alleged that the Texas legislature intentionally discriminated against minority voters, the decisionmaking process . . . *is* the case[.]" (quotation omitted)); *see also Veasey*, 2014 WL 1340077, at *2.

Finally, there is no possible chilling effect on governmental employees. Texas legislators and the Office of the Governor have participated in the discovery process—including through document production, depositions, and trial appearances—associated with redistricting challenges in dozens of cases for more than five decades of redistricting litigation. *See, e.g.*, *Bush v. Martin*, 251 F. Supp. 484, 495 (S.D. Tex. 1966); *Kilgarlin v. Martin*, 252 F. Supp. 404,

423 (S.D. Tex. 1966); *Graves v. Barnes*, 343 F. Supp. 704, 714 (W.D. Tex. 1972); *Seamon v. Upham*, 536 F. Supp. 931, 1023 (E.D. Tex. 1982); *In re TXU Elec. Co.*, 2001 WL 688128, at *1 (Tex. App.—Dallas 2001, no pet. h.); *Perez* 2014 WL 106927, at *1.  And yet, no chilling effect has occurred, even after courts have previously concluded that the legislative privilege should yield.  *See Veasey*, 2014  WL 1340077, at *2.  In any event, even if this factor weighed against disclosure, courts have repeatedly found—particularly in the voting rights context—"that the need for accurate fact finding outweighs any chill to the legislature's deliberations."  *LUPE*, 2022 WL 1667687, at *7; *see also Veasey*, 2014 WL 1340077, at *2; *Baldus v. Brennan*, No. 11-CV-562, 11-CV-1011, 2011 WL 6122542, at *2 (E.D. Wis. Dec. 8, 2011) (concluding that the potential "chilling effect" on the state legislature "is outweighed by the highly relevant and potentially unique nature of the evidence.").

Accordingly, the *Perez* factors strongly favor disclosure, and Plaintiffs' motion to compel should be granted as to any document withheld on the basis of the legislative privilege.

### B.  Deliberative-Process Privilege

Abbott also improperly invokes the deliberative-process privilege.[7]

First, Abbott inappropriately invokes the deliberative-process privilege over documents that his office has received or sent to members of the Legislature or their staff.[8]  However, the

---

[7] Of the documents Plaintiffs seek, Abbott asserts the deliberative-process privilege over:  DOC_0356555, DOC_0356556,  DOC_0356557,  DOC_0356569,  DOC_0356571,  DOC_0356578,  DOC_0356579, DOC_0356580,  DOC_0356581,  DOC_0356582,  DOC_0356583,  DOC_0356584,  DOC_0356585, DOC_0356586,  DOC_0356587,  DOC_0356588,  DOC_0356590,  DOC_0356591,  DOC_0356592, DOC_0356593,  DOC_0356594,  DOC_0356595,  DOC_0356596,  DOC_0356597,  DOC_0356598, DOC_0356599, DOC_0356600, DOC_0356604, DOC_0356606, DOC_0356609, and DOC_0356610. Ex. A.

[8] DOC_0356586, DOC_0356587, DOC_0356588, DOC_0356593, DOC_0356598, DOC_0356600, and DOC_0356610.  Because of their proximity to DOC_0356586 in the Supplemental Privilege Log and the temporal overlap of the documents, DOC_0356587 and DOC_0356588 appear to be attachments to the communication in DOC_0356586—and thus were shared with the same individuals and likewise should be disclosed.  Plaintiffs previously asserted that DOC_0356587 and DOC_0356588 were attached to DOC_0356586, Ex. K at 9, but Abbott failed to confirm or deny whether that was the case.

"[d]eliberative-process privilege protects candid discussions" only "*within* the executive branch needed for optimum administrative decision making." *Gilby*, 471 F. Supp. 3d at 767 (emphasis added). As such, "[t]his rationale does not support privilege for communications where the agency is not the decision maker and the separation of powers veil has been pierced." *Id.* More specifically, Abbott invokes the deliberative-process privilege over two categories of documents exchanged between his office and the legislative branch: (1) documents relating to his proclamation regarding the third special session, and (2) documents relating to draft redistricting legislation. Regarding both sets of documents, the "separation of powers veil has been pierced" because the communication occurred between members of the executive and legislative branch. *Id.* And regarding the second set, "[a]t issue here is not the internal decision-making processes of the executive branch, but instead a part of the legislative process" that, as noted above, falls outside the purview and constitutional authority of the executive branch. *Id.* Thus, Abbott essentially "asks the court to expand deliberative-process privilege to protect legislators' need for flexibility to obtain candid input about pending legislation from the Executive Branch," a position that "is inconsistent with the purposes of both legislative privilege and deliberative-process privilege." *Id.* at 767-68. Accordingly, the deliberative-process privilege cannot apply to documents that Abbott has exchanged with the legislative branch.

Second, the Supplemental Privilege Log fails adequately to support any claim to deliberative-process privilege. To be protected by deliberative-process privilege, a document must be "part of a process by which governmental decisions and policies are formulated." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1996)). To demonstrate that these requirements are met, parties claiming deliberative-process privilege generally provide, in addition to a privilege log,

"declarations from agency officials explaining 'what the documents are and how they relate to the [agency] decision.'"  *Ascom Hasler Mailing Sys., Inc. v. USPS*, 267 F.R.D. 1, 4 (D.D.C. 2010) (quoting *N.L.R.B. v. Jackson Hosp. Corp.*, 257 F.R.D. 302, 308 (D.D.C. 2009)); *see also Nevada Partners Fund, LLC v. United States,* No. 3:06-cv-379-HTW-MTP, 2008 WL 2484198, at *5 (S.D. Miss. May 12, 2008) (describing declarations of IRS officials submitted in support of deliberative-process privilege claims).  Here, however, Abbott's barebones privilege log provides no clear indication as to which decision any given document supposedly relates, or any explanation as to why the document was part of the process by which the decision was reached, rather than, *e.g.*, merely containing factual information or justifying a decision already made.

Moreover, "the deliberative process privilege may be invoked only by the agency head after personally reviewing the documents for which the privilege is asserted," or in some cases by another high-level official at the agency with delegated authority.  *In re McKesson Governmental Entities Average Wholesale Price Litig.*, 264 F.R.D. 595, 601 (N.D. Cal. 2009); *see also Nevada Partners Fund,* 2008 WL 2484198, at *5 ("[T]he head of the agency that has control over the requested document must assert the privilege, or in some circumstances, delegate the authority to assert the privilege.").  This requirement serves to "deter governmental units from too freely claiming a privilege that is not to be lightly invoked."  *McKesson*, 264 F.R.D. at 601 (citing *Coastal Corp. v. Duncan*, 86 F.R.D. 514, 516–17 (D. Del. 1980)).  For that reason, "[m]any courts have found that the deliberative process privilege may not be asserted by government counsel," at least counsel outside the relevant agency.  *Pac. Gas & Elec. Co. v. United States*, 70 Fed. Cl. 128, 135 (2006).  Yet the Supplemental Privilege Log contains no indication that anyone in the Governor's office, rather than litigation counsel at the Office of the

Attorney General, made the decision to claim deliberative-process privilege over the documents at issue.  *See id.*

Third, Abbott incorrectly invokes the deliberative-process privilege over documents that followed the enactment of the legislation at issue.  For the deliberative-process privilege to apply, a document must be both "predecisional" and "deliberative."  *In re Sealed Case*, 121 F.3d at 737; *see also Doe v. City of San Antonio*, No. SA-14-CV-102-XR, 2014 WL 6390890, at *2 (W.D. Tex. Nov. 17, 2014).  "A document is 'predecisional' if it precedes, in temporal sequence, the 'decision' to which it relates."  *Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. United States Dep't of Just.*, 823 F.2d 574, 585 (D.C. Cir. 1987).  A document is "deliberative" if "it reflects the  give-and-take of the consultative process."  *Id.*  (quotation omitted).

More specifically, Abbott asserts the deliberative-process privilege over two documents created in March 2022—well after the enactment of the challenged redistricting plans.[9]  Those documents by definition cannot be predecisional, and therefore the privilege cannot apply.  Further, regarding what Abbott describes as a "[c]onfidential communication regarding draft redistricting legislation" with Lieutenant Governor Dan Patrick,[10] at a minimum, Abbott lacks any constitutional authority over the enactment of legislation.[11]  Accordingly, because "[a]t issue here is not the internal decision-making process of the executive branch, but instead a part of the legislative process," the deliberative-process privilege cannot apply to the communication between Abbott and Patrick.  *Gilby*, 471 F. Supp. 3d at 767.

---

[9] DOC_0356599 and DOC_0356606.

[10] DOC_0356606.

[11] Plaintiffs note that Patrick's right to assert the legislative privilege is not at issue here:  even if he could invoke that privilege—and he cannot—the privilege would be waived by virtue of communicating with Abbott regarding pending legislation.  *See supra*, Section III.A.2.  Plaintiffs therefore do not concede that Patrick may assert the legislative privilege, and respectfully reserve the right to challenge Patrick's ability to assert the privilege when the issue is ripe for adjudication.

Fourth, to the extent that the deliberative-process privilege applies to any documents Abbott has withheld on that basis, the privilege should yield.  As with the legislative privilege, the deliberative-process privilege "is qualified; not absolute."  *Doe*, 2014 WL 6390890, at \*2. That means that the deliberative-process privilege "can be overcome 'by a sufficient showing of need.'"  *Harding v. Cnty. of Dallas*, No. 3:15-CV-0131-D, 2016 WL 7426127, at \*12 (N.D. Tex. Dec. 23, 2016) (quoting *In re Sealed Case*, 121 F.3d at 737) (collecting cases); *see also Favors*, 285 F.R.D. at 210 n.22 (citing *Rodriguez*, 280 F. Supp. 2d at 98).  To determine whether the deliberative-process privilege should yield, courts consider factors similar to those considered in evaluating the legislative privilege:  (1) the relevance of the evidence, (2) the availability of other evidence, (3) the seriousness of the litigation, (4) the role of the government, and (5) the possibility of future timidity by government employees.  *See In re Sealed Case*, 121 F.3d at 737–38; *see also Harding*, 2016 WL 7426127, at \*12; *Doe*, 2014 WL 6390890, at \*2.  Further, "where there is reason to believe the documents sought may shed light on government misconduct, the privilege is routinely denied, on the grounds that shielding internal government deliberations in this context does not serve the public's interest in honest, effective government." *In re Sealed Case*, 121 F.3d at 738 (quotation omitted).

For the same reasons as discussed regarding the legislative privilege, the deliberative-process privilege should yield.  *See supra*, Section II.A.3.  That is especially true given that, over the past five decades, courts have repeatedly concluded that Texas enacted redistricting legislation with the purpose of discriminating against racial minorities, *see, e.g.*, *Abbott v. Perez*, 138 S. Ct. 2305, 2334 (2018), and the communications regarding the third special session and drafts of the redistricting litigation would "shed light on" similar "government misconduct" here, *see In re Sealed Case*, 121 F.3d at 738.

Accordingly, the deliberative-process should yield with respect to all documents Plaintiffs seek to compel in the instant motion.

### C. Attorney-Client Privilege

Abbott incorrectly withholds several documents based on the attorney-client privilege.[12]

Abbott fails to meet his burden to show that the privilege applies.  "Because the attorney-client privilege has the effect of withholding relevant information from the fact-finder, it is interpreted narrowly so as to appl[y] only where necessary to achieve its purpose." *E.E.O.C. v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017) (quotation omitted).  To that end, "courts have stated that simply describing a lawyer's advice as 'legal,' without more, is conclusory and insufficient to carry out the proponent's burden of establishing attorney-client privilege," and that documents sent from one staff member to another are not privileged "merely because a copy is also sent to counsel."  *Id.* at 696.  As reflected in the Supplemental Privilege Log, Abbott offers no more than the same conclusory statement that the documents "[i]nclude[] legal advice from [Office of the Governor] attorneys on the substance, legal compliance, and strategy of the subject of the communication," Ex. A, and gave little more detail in the parties' final meet and confer, *see* Ex. O at 2.  Such a boilerplate invocation, especially where asserted simply because a lawyer may have at some point laid eyes on the document, is insufficient to satisfy the standard for invoking the privilege under this Circuit's law.  *See E.E.O.C.*, 876 F.3d at 695–96.

Even if the Court did not consider these privilege assertions conclusory—and they are—Abbott has still failed to show that the substance of the communications fall within the

---

[12] Of the documents Plaintiffs seek, Abbott asserts attorney-client privilege over:  DOC_356555, DOC_0356556, DOC_0356557, DOC_0356569, DOC_0356571, DOC_0356578, DOC_0356579, DOC_0356580, DOC_0356581, DOC_0356582, DOC_0356583, DOC_0356584, DOC_0356585, DOC_0356586, DOC_0356587, DOC_0356588, DOC_0356590, DOC_0356591, DOC_0356592, DOC_0356593, DOC_0356594, DOC_0356595, DOC_0356596, DOC_0356597, DOC_0356598, DOC_0356599, DOC_0356600, DOC_0356604, DOC_0356609, and DOC_0356610.  Ex. A.

scope of the attorney-client privilege.  Communications that relay "facts, not legal advice" are "not privileged," *LUPE*, 2022 WL 1667687, at \*7, "even if the client learned those facts through communications with counsel," *id.* (quoting *Thurmond v. Compaq Comput. Corp.*, 198 F.R.D. 475, 483 (E.D. Tex. 2000)).  Further, "documents concerning 'advice on political, strategic or policy issues . . . [are not] shielded from disclosure by the attorney-client privilege.'" *Baldus v. Brennan*, No. 11-CV-1011 JPS-DPW, 2011 WL 6385645, at \*3 (E.D. Wis. Dec. 20, 2011) (quoting *Evans v. City of Chicago*, 231 F.R.D. 302, 312 (N.D. Ill. 2005)); *cf. Perez v. Perry*, No. SA-11-CV-360-OLG-JES-XR, 2014 WL 3359324, at \*1-2 (W.D. Tex. July 9, 2014) (noting that attorney-client privilege does not protect communications between legislator and outside counsel where "the topics of these communications are political in nature").

By Abbott's own characterization, the withheld documents concerned either his constitutional authority to call a third special session or to issue a proclamation for that session, or his input on drafts of the redistricting legislation.  In other words, all of these documents, at most, concern "advice on political, strategic or policy issues" and therefore must be disclosed. *Baldus*, 2011 WL 6385645, at \*3 (quoting *Evans*, 231 F.R.D. at 312); *see also Perez*, 2014 WL 3359324, at \*1.  Further, as Abbott notes, several documents relate to "gathering information on the expected release of the Census data."[13]  Ex. N.  As such, by Abbott's own admission, these documents relay "facts, not legal advice," and are therefore "not privileged." *LUPE*, 2022 WL 1667687, at \*7.  Moreover, Abbott cannot "plausibly claim that a threat of litigation existed at the time of [these] communications," as they concerned, at most, "legislation that was still being debated and amended, and the legislation was not guaranteed to pass." *Id.*  Thus, the documents over which Abbott asserts the legislative privilege do not fall within the scope of that privilege.

---

[13] According to the Supplemental Privilege Log, those documents include but are not limited to: DOC_0356561, DOC_0356569, and DOC_0356599.

Further, for many of the documents over which Abbott asserts attorney-client privilege, that privilege is waived. "Disclosure of attorney-client communications to a third party who lacks a common legal interest waives the attorney-client privilege," and the "mere speculation that" every recipient of a document "shared a cognizable common interest is insufficient to establish that the privilege applies." *Perez*, 2014 WL 3495414, at *2. Moreover, parties have a "common legal interest" if they are "co-defendants in actual litigation" or "potential" co-defendants. *United States v. Newell*, 315 F.3d 510, 525 (5th Cir. 2002). To that end, courts in this Circuit have emphasized that there is no "Fifth Circuit case law concluding that parties may have a common legal interest in anything other than 'actual litigation.'" *LUPE*, 2022 WL 1667687, at *7 (citing *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710–13 (5th Cir. 2001)).

Here, even if it could initially be invoked, the attorney-client privilege has been waived for documents that reflect communications between the Office of the Governor and individuals who worked for the legislative branch.[14] Abbott has failed to establish that individuals from both branches shared a common legal interest at the time the communications were made. Indeed, Abbott has offered no justification for why members of the executive branch and legislative branch share a common legal interest when, as noted, they are discussing the use of their respective, independent constitutional authority with each other. *See supra*, Section III.A.3. And in any event, Abbott, his office, and individuals in the legislative branch could not "plausibly claim that a threat of litigation existed *at the time of the communications*," because, again, those "communications concerned," at most, "advice in drafting legislation that was still being debated and amended, and the legislation was not guaranteed to pass." *LUPE*, 2022 WL 1667687, at *7

---

[14] DOC_0356560, DOC_0356561, DOC_0356586, DOC_0356587, DOC_0356588, DOC_0356593, DOC_0356598, DOC_0356600. For the reasons discussed in footnote 8, the Court should conclude that DOC_0356587 and DOC_0356588 were attached to the communication in DOC_0356586—and therefore the privilege is similarly waived.

(emphasis added) (concluding that state legislators could not assert common-interest doctrine to protect communications regarding election-related legislation from disclosure).   Accordingly, communications between the Office of the Governor and any individual in the legislative branch over which Abbott asserts the attorney-client privilege are not covered by the privilege.

Because Abbott has failed to preserve confidentiality over communications that he now claims as privileged, and did not make any of these communications for a privileged purpose, the Court should compel disclosure of the documents identified in the instant motion.

### D.  Work Product Doctrine

Finally, Abbott's assertions of the work product doctrine are also unavailing.[15]  As with the legislative, deliberative-process, and attorney-client privileges, courts must strictly construe the work product doctrine.  *See Harding*, 2016 WL 7426127, at *11.  To qualify for protection under the work product doctrine, "'the primary motivating purpose' behind the creation of the document must be to aid in possible future litigation."  *Id.* at *10 (quoting *In re Kaiser Aluminum & Chem Co.*, 214 F.3d 586, 593 (5th Cir. 2000)).   "If the document would have been created without regard to whether litigation was expected to ensue, it was made in the ordinary course of business and not in anticipation of litigation."  *Id.* at *11; *see also Bethune-Hill v. Virginia State Bd. of Elections*, 114 F. Supp. 3d 323, 348 (E.D. Va. 2015) ("[o]therwise identical work by an attorney is not protected . . . if it was created in the ordinary course of business." (quotation omitted)).   Moreover, just as divulging records or communications with third parties waives any legislative privilege, such sharing also waives any work product protection claim.  *See, e.g.*,

---

[15] Of the documents Plaintiffs seek, Abbott asserts the work product doctrine over:  DOC_356555, DOC_356556, DOC_356557, DOC_356569, DOC_ 356571, DOC_356578, DOC_356579, DOC_356580, DOC_356581, DOC_356582, DOC_356583, DOC_356584, DOC_356585, DOC_356586, DOC_356587, DOC_356588, DOC_356590, DOC_356591, DOC_356592, DOC_356593, DOC_356594, DOC_356595, DOC_356596, DOC_356597, DOC_356598, DOC_356599, DOC_356600, DOC_356604, DOC_356609, and DOC_356610.  Ex. A.

*Finalrod IP, LLC v. John Crane, Inc.*, No. MO:15-CV-097-DC, 2019 WL 13074600, at *2 (W.D. Tex. Mar. 22, 2019) ("Generally, when privileged information is divulged to a third party, attorney-client and work-product protection cease to exist.").

In the context of the legislative process, courts have emphasized that "[l]egislative counsel could not, for example, withhold documents pertaining to pending legislation on the basis of the work product doctrine because the legislature could *always* have a reasonable belief that *any* of its enactments would result in litigation.  That is the nature of the legislative process," *Bethune-Hill*, 114 F. Supp. 3d at 348 (cleaned up), as "it often involves contentious issues that the public may challenge as unconstitutional," *Baldus*, 2011 WL 6385645, at *2; *see also Bethune-Hill*, 114 F. Supp. 3d at 348.  As such, "materials prepared in the ordinary course of a party's business"—for example, the Legislature enacting laws—"even if prepared at a time when litigation was reasonably anticipated, are not work product."  *See Baldus*, 2011 WL 6385645, at *2 (quotation omitted).

Here, Abbott asserts the work product doctrine over the same two categories of documents as the other privileges:  (1) documents related to calling the third special session and drafting a proclamation to do so, and (2) documents related to drafts of the redistricting legislation.  The primary purposes of those documents, then, were to call a legislative session or to provide input to the legislative branch regarding possible legislation—that is, activities in the ordinary course of business—and Abbott provides no information to show that the primary purpose of the documents is instead to aid in possible future litigation.  *See Baldus*, 2011 WL 6385645, at *2 (concluding that work product of government-relations specialist at law firm retained by legislature must be disclosed); *see also Bethune-Hill*, 114 F. Supp. 3d at 348; *Harding*, 2016 WL 7426127, at *11.  And to the extent that Abbott has exchanged documents

with the legislative branch, he has waived any claim he could make to the work product doctrine.[16]  *Finalrod IP,* 2019 WL 13074600, at *2.

Accordingly, Abbott may not withhold the documents based on the work product doctrine.

### E.  Abbott Must Provide All Documents Referenced in Dropbox

Finally, the Supplemental Privilege Log makes clear that Abbott has failed to disclose—or include in the log—all responsive information within his custody, possession, or control in response to Plaintiffs' document requests.  The descriptions for DOC_0356598 and DOC_0356600—"Confidential communication from Senate Redistricting Committee regarding materials related to draft redistricting legislation" and sent by "Senate Redistricting & Jurisprudence Committee (via Dropbox)"—indicate that the communications contain links to other documents or folders.  Ex. A at 6.  However, the Supplemental Privilege Log does not indicate whether any documents linked to in the communication—*i.e.*, that were accessible "via Dropbox"—are listed in the log or have been withheld.

"Rule 34 provides that, subject to the relevancy limitations of Rule 26, a party may serve on any other party a request 'to produce . . . items in the responding party's possession, custody, or control,'" and "a party can 'control' documents that are within the possession or custody of a non-party."  *Perez v. Perry*, No. SA-11-CV-360-OLG-JES, 2014 WL 1796661, at *1 (W.D. Tex. May 6, 2014) (quoting Fed. R. Civ. P. 34(a)(1)(A)).  "Documents are considered to be within a party's control when that party has the right, authority, or practical ability to obtain the documents from a nonparty."  *Id.* (quotation omitted).

---

[16] DOC_0356560, DOC_0356561, DOC_0356586, DOC_0356587, DOC_0356588, DOC_0356593, DOC_0356598, DOC_0356600.  For the reasons discussed in footnote 8, the Court should conclude that DOC_0356587 and DOC_0356588 were attached to the communication in DOC_0356586—and therefore the work product doctrine is similarly waived.

In their May 16, 2022 letter, LULAC Plaintiffs and Texas NAACP raised this issue and sought clarification on whether DOC_0356598 and DOC_0356600 contained links to other documents, Ex. K at 9–10, but Abbott failed to respond in his Supplemental Privilege Log or his counsel's May 25, 2022 email, *see* Exs. M and N.  Nevertheless, from the description in the Supplemental Privilege Log, it is apparent that the Office of the Governor received links via Dropbox from legislative staff.  And as described above, because Abbott communicated with the legislative branch about draft legislation, none of the privileges he asserts can justify withholding those documents.  Accordingly, Abbott must produce any document accessible via any Dropbox link in DOC_0356598 and DOC_0356600—along with listing any other individuals who had access to those Dropbox links or the documents accessible through those links.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion to compel.

Dated: June 27, 2022                    Respectfully submitted,

*/s/ Nina Perales*
Nina Perales
Samantha Serna
Fátima Menendez
Kenneth Parreno*
Mexican American Legal Defense and Educational
Fund (MALDEF)
110 Broadway Street, Suite 300
San Antonio, TX 78205
(210) 224-5476
Fax: (210) 224-5382

*Admitted *pro hac vice*

*Counsel for LULAC Plaintiffs*


*/s/ David R. Fox*

Aria C. Branch*
David R. Fox*
Francesca Gibson*
Richard A. Medina*
**ELIAS LAW GROUP LLP**
10 G Street NE, Suite 600
Washington, D.C. 20002
Telephone: (202) 968-4490
abranch@elias.law
dfox@elias.law
fgibson@elias.law
rmedina@elias.law

Kevin J. Hamilton*
**PERKINS COIE LLP**
1201 Third Avenue
Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
khamilton@perkinscoie.com

Renea Hicks
Attorney at Law
Texas Bar No. 09580400
**Law Office of Max Renea Hicks**
P.O. Box 303187
Austin, Texas 78703-0504
(512) 480-8231
rhicks@renea-hicks.com

*Counsel for Abuabara Plaintiffs*

*Admitted pro hac vice*

s/ Lindsey B. Cohan
Lindsey B. Cohan
Texas Bar No. 24083903
DECHERT LLP
515 Congress Avenue, Suite 1400
Austin, TX 78701
(512) 394-3000
*lindsey.cohan@dechert.com*

Jon Greenbaum*
Ezra D. Rosenberg*
Pooja Chaudhuri*
Sofia Fernandez Gold*
Alexander S. Davis*
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street, Suite 900
Washington, DC 20005
(202) 662-8600
*jgreenbaum@lawyerscommittee.org*
*erosenberg@lawyerscommittee.org*
*pchaudhuri@lawyerscommittee.org*
*sfgold@lawyerscommittee.org*
*adavis@lawyerscommittee.org*

Neil Steiner*
Margaret Mortimer*
Nicholas Gersh*
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3822
*neil.steiner@dechert.com*
*margaret.mortimer@dechert.com*
*nicholas.gersh@dechert.com*

Robert Notzon
Texas Bar No. 00797934
THE LAW OFFICE OF ROBERT NOTZON
1502 West Avenue
Austin, Texas 78701
(512) 474-7563
*robert@notzonlaw.com*

Gary Bledsoe
Texas Bar No. 02476500
THE BLEDSOE LAW FIRM PLLC
6633 Highway 290 East #208
Austin, Texas 78723-1157
(512) 322-9992
*gbledsoe@thebledsoelawfirm.com*

*Attorney only as to Texas NAACP's claims related to Texas state senate and state house plans*

Anthony P. Ashton*
NAACP OFFICE OF THE GENERAL COUNSEL
4805 Mount Hope Drive
Baltimore, MD 21215
(410) 580-577
*aashton@naacpnet.org*

Janette M. Louard
Anna Kathryn Barnes
NAACP OFFICE OF THE GENERAL COUNSEL
4805 Mount Hope Drive
Baltimore, MD 21215
(410) 580-577
*jlouard@naacpnet.org*
*abarnes@naacpnet.org*
*Attorneys appearing of counsel*

*Counsel for the Texas State Conference of NAACP*

*Admitted *pro hac vice*

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that, on June 23 and 24, 2022, counsel for LULAC Plaintiffs, Abuabara Plaintiffs, and Texas NAACP conferred with counsel for Defendants concerning the subject of the instant motion.  Counsel for Defendants stated that they opposed the relief sought.

*/s/ Nina Perales*
Nina Perales

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel hereby certifies that she has electronically submitted a true and correct copy of the above and foregoing via the Court's electronic filing system on the 27th day of June 2022.

*/s/ Nina Perales*
Nina Perales
