

**National Headquarters**
MALDEF Nonprofit Center
634 S. Spring Street, 12th Fl.
Los Angeles, CA 90014
*Tel:* 213.629.2512
*Fax:* 213.629.0266

**Atlanta
Program Office**
500 W. Lanier Ave.
Suite 908
Fayetteville, GA 30215
*Tel:* 470.878.0785

**Chicago
Regional Office**
11 East Adams Street
Suite 700
Chicago, IL 60603
*Tel:* 312.427.0701
*Fax:* 312.427.0691

**Los Angeles
Regional Office**
634 S. Spring Street,
11th Fl.
Los Angeles, CA 90014
*Tel:* 213.629.2512
*Fax:* 213.629.0266

**Sacramento
Program Office**
1512 14th Street
Sacramento, CA 95814
*Tel:* 916.444.3031
*Fax:* 916.444.7207

**San Antonio
Regional Office**
110 Broadway
Suite 300
San Antonio, TX 78205
*Tel:* 210.224.5476
*Fax:* 210.224.5382

**Washington, D.C.
Regional Office**
1016 16th Street, NW
Suite 100
Washington, DC 20036
*Tel:* 202.293.2828

May 16, 2022

Patrick K. Sweeten
Deputy Attorney General for Special Litigation
Eric A. Hudson
Senior Special Counsel
Office of the Attorney General
P.O. Box 12548 (MC-009)
Austin, TX 78711-2548

**RE: Defendant Greg Abbott's Privilege Log Regarding LULAC Plaintiffs' and Texas NAACP's First Requests for Production of Documents and Defendants' Objections to LULAC Plaintiffs' Discovery Requests,** *LULAC v. Abbott*, **No. 3:21-cv-259-DCG-JES-JVB (W.D. Tex.)**

Dear Counsel,

We write to respond to some of the objections you raised in the privilege log you served jointly on LULAC Plaintiffs and Texas NAACP on May 4, 2022 on behalf of Defendant Greg Abbott ("the Privilege Log"), in connection with their respective First Requests for Production of Documents.[1] Additionally, LULAC Plaintiffs reiterate concerns regarding some of Defendants' other objections to LULAC Plaintiffs' discovery requests; those concerns were previously discussed in their letter dated April 26, 2022.[2] Because the parties have already met and conferred regarding these issues, LULAC Plaintiffs and Texas NAACP request a response by May 20, 2022.

---

[1] LULAC Plaintiffs sent their First Set of Requests for Production to Defendants Greg Abbott and John Scott on March 5, 2022, and sent amended requests to Scott on March 7, 2022; Texas NAACP sent their First Set of Requests for Production to Defendants Abbott and Scott on March 3, 2022. Additionally, this letter references the following discovery responses: Defendant Greg Abbott's March 24, 2022 Objections and Answers to LULAC's First Set of Interrogatories ("Abbott Interrogatories Objections"); Defendant John Scott's March 24, 2022 Objections and Answers to LULAC's First Set of Interrogatories ("Scott Interrogatories Objections"); Defendant Abbott's April 4, 2022 Objections and Responses to LULAC Plaintiffs' First Request for Production of Documents ("Abbott RFP Objections"); and Defendant Scott's April 4, 2022 Objections and Responses to LULAC Plaintiffs' First Request for Production of Documents ("Scott RFP Objections").

On April 26, 2022, LULAC Plaintiffs sent a letter to Defendants outlining LULAC Plaintiffs' concerns regarding some of Defendants' objections to LULAC Plaintiffs' First Set of Requests for Production of Documents. On April 28, 2022, LULAC Plaintiffs held a meet and confer regarding those concerns, during which Defendants indicated that their forthcoming privilege log would provide more information regarding their objections; during that meeting, LULAC Plaintiffs reiterated the arguments in their letter and stated that they would revisit those concerns upon reviewing Defendants' privilege log.

On May 4, 2022, Abbott served the Privilege Log to LULAC Plaintiffs and Texas NAACP. On May 12, 2022, counsel for LULAC Plaintiffs, Texas NAACP, and Defendants met and conferred regarding the Privilege Log, and LULAC Plaintiffs and Texas NAACP agreed to follow up with a letter further outlining their concerns with the objections that Abbott asserted in the log.

Accordingly, we send this letter in the hope that we can narrow some of the areas of disagreement between the parties, and we look forward to a response by May 20, 2022.

I. **LULAC Plaintiffs' and Texas NAACP's Joint Concerns Regarding the Privilege Log**

*A. As a General Matter, the Privilege Log Fails to Comply with the Requirements of the Federal Rules of Civil Procedure and Parties' Stipulated ESI Order.*

When a party who withholds otherwise discoverable information by asserting a privilege or claiming protection of the material, the party must assert the privilege or claim and "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." FRCP 26(b)(5).

Per the Stipulated Order Regarding Discovery of Electronically Stored Information ("Stipulated ESI Agreement"), all documents withheld based on privilege or other protection require a privilege log that contains the following information:

> a) Bates number range, with the start and end bates numbers or, for native files, the Document ID number; b) Date the document was prepared or created; c) Document type; d) Name and title of author(s) e) Custodian; f) Name and title of recipient(s) (including all individuals in the "to" or "cc" or "BCC" fields); g) Name and title of any attorney(s) included in the communication; h) The privilege

---

[2] On April 20, 2022, LULAC Plaintiffs filed their Second Amended Complaint, adding the State of Texas as a defendant. Dkt. 237. No discovery has been propounded on the State of Texas as of the date of this letter. For ease of readability, unless otherwise noted, any use of "Defendants" in this letter shall refer to Defendants Greg Abbott and John Scott, upon whom LULAC Plaintiffs have served discovery requests.

>   or protection asserted; i) The basis for the privilege or protection asserted; j) A description of the document that, without revealing information itself privileged or protected, will enable the requesting party to assess the claim; k) Purpose of preparing the document.

Dkt. 203 at 15–16.

In several ways, the Privilege Log fails to comply with both the Federal Rules of Civil Procedure and the Stipulated ESI Agreement.

First, the Privilege Log lacks specificity regarding the type of documents that Abbott withheld. Without this information, Plaintiffs are unable to determine for each entry what kind of communication—an email, a letter, a document, or a native file—to which the "Control Number" column refers. The nature of the document is important because it will allow Plaintiffs to assess the basis for which Abbott withholds the document.

Second, the Privilege Log does not list a Bates number range for every "Control Number" entry or instead indicate that the entry is a native file. Bates number ranges help contextualize a particular document, including whether that document is part of a larger set of documents or was an individual document.

Third, of the 37 entries included in the Privilege Log, Abbott fails to list the dates that 21 of those were created or prepared. For example, some entries concerning "confidential communications" have no dates indicating when the communication was sent or received,[3] but other entries concerning "confidential communications" do have dates.[4] Confusingly, Defendants provide no information as to why some have dates and others do not, especially in light of the Stipulated ESI Agreement.

Fourth, the Privilege Log fails to include the authors, custodians, and name and title for every recipient in every entry. To the extent that any of the recipients or authors listed are attorneys, the Privilege Log fails to include the name and title of those individuals.

---

[3] Some entries described as "confidential communications" provide no dates at all. *See* DOC_0356555, DOC_0356560, DOC_0356569, DOC_0356571, DOC_0356575, DOC_0356579, DOC_0356581, DOC_0356583, DOC_0356586, DOC_0356590, DOC_0356592, DOC_0356593, DOC_0356594, DOC_0356595, DOC_0356596, DOC_0356597, DOC_0356598, DOC_0356600, DOC_0356604, DOC_0356606, DOC_0356609.

[4] *See* DOC_0356561 (date created field but no dates as to when communication sent or received); DOC_0356576 (same). Some entries described as "attachment" to "confidential communication" also have dates but it is unclear whether the date refers to the attachment or to the communication *See, e.g.*, DOC_0356587, DOC_0356588.

Fifth, and finally, Abbott fails to meet his burden for establishing that any of the privileges apply to the withheld documents. *See Hobart v. City of Stafford*, 784 F. Supp. 2d 732, 763 (S.D. Tex. 2011) ("A party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability." (quoting *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001)); *see also Perez v. Perry*, No. SA-11-CV-360-OLG-JES, 2014 WL 3495414, at *2 (W.D. Tex. July 11, 2014). While the Privilege Log lists a privilege or protection for every entry, Abbott fails to articulate the basis for the privilege or protection asserted—or relatedly, to articulate the purpose for which each entry was prepared. For example, Abbott withholds several documents based on the attorney-client privilege or work product doctrine, describing those documents in part as receiving "input from OOG attorneys."[5] As noted, the Privilege Log fails to indicate which individuals with access to the document are attorneys. Moreover, these entries fail to describe in sufficient detail the type of input any attorney provided to determine whether any privilege applies. Without even these basic fields of information required under the Stipulated ESI Agreement, Abbott has failed to meet his burden of establishing the basis for and scope of the privileges asserted.

The Privilege Log thus fails to comply with the Federal Rules of Civil Procedure and the Stipulated ESI Agreement. Accordingly, Abbott must supplement the Privilege Log to comply with the Stipulated ESI Agreement and Rule 26(b)(5), by providing information fully regarding: Bates stamp numbering; dates the documents were created or prepared; the name and title of the authors, senders, and recipients (including any attorneys); the bases for the privileges asserted; a description of the documents that, without revealing information itself privileged or protected, will enable the requesting party to assess the claims; and the purpose of preparing each document. *See* Dkt. 203 at 15–16.

**B. Regardless of the Privilege Log's Deficiencies, Abbott's Privilege Objections to Certain Documents Are Improper.**

Notwithstanding the deficiencies in the Privilege Log noted in Section I.A, and regardless of whatever additional information Abbott may supplement regarding the log, LULAC Plaintiffs and Texas NAACP have identified specific documents that Abbott has incorrectly withheld.[6] This letter addresses each of those errors in turn.[7]

---

[5] *See, e.g.*, DOC_0356556, DOC_0356557, DOC_0356558, DOC_0356559, DOC_0356569, DOC_0356571, DOC_0356575, DOC_0356576, DOC_0356578, DOC_0356579, DOC_0356580, DOC_0356581, DOC_0356582, DOC_0356583, DOC_0356584, DOC_0356585, DOC_0356586, DOC_0356587, DOC_0356588, DOC_0356590, DOC_0356591, DOC_0356592, DOC_0356593, DOC_0356594, DOC_0356595, DOC_0356596, DOC_0356597, DOC_0356604, DOC_0356609, DOC_0356610.

[6] LULAC Plaintiffs and Texas NAACP reserve the right to challenge the withholding of other documents in the event that Abbott continues to fail to provide sufficient information to meet his burden regarding the respective privileges asserted as to those documents.

[7] LULAC Plaintiffs previously raised several of the concerns in this section in their April 26, 2022 letter and their April 28, 2022 meet and confer with Defendants.

1. DOC_0356561

Abbott improperly asserts legislative privilege over DOC_0356561, which the Privilege Log describes as "Confidential communication from Senator Huffman to members of the Senate, as well as certain executive branch offices, regarding expected release of Census data," and lists Sean Opperman—an employee of the Legislature when the document was made—as the author. Privilege Log at 2.

As an initial matter, courts in this Circuit have concluded that Abbott lacks standing to assert legislative privilege. As the Fifth Circuit has made clear, common-law legislative privilege is "an evidentiary privilege, 'governed by federal common law, as applied through Rule 501 of the Federal Rules of Evidence.'" *Jefferson Cmty. Health Care Cntrs., Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 624 (5th Cir. 2017) (quoting *Perez v. Perry*, No. SA-11-cv-360, 2014 WL 106927, at *1 (W.D. Tex. Jan. 8, 2014)). And regarding this privilege, courts in this Circuit—including the three-judge court in the prior round of Texas redistricting litigation—have consistently held that "neither the Governor, nor the Secretary of State or the State of Texas has standing to assert the legislative privilege on behalf of any legislator or staff member." *Perez* 2014 WL 106927, at *1; *see also Gilby v. Hughes*, 471 F. Supp. 3d 763, 768 (W.D. Tex. 2020); *TitleMax of Tex., Inc. v. City of Dallas*, No. 3:21-cv-1040, 2022 WL326566, at *6 (N.D. Tex. Feb. 3, 2022). That is because "[l]egislative privilege is a personal one and may be waived or asserted" by only each individual legislator. *Gilby*, 471 F. Supp. 3d at 768 (citing *Perez*, 2014 WL 106927, at *1). And in any event, even if Abbott could invoke legislative privilege on behalf of a legislator (or staff), any privilege has been waived because of the legislative staff's communication with an individual outside of the legislative branch. *See id.* at 767 ("To the extent that legislators or legislative staff communicated with any outsider (e.g. non-legislators, non-legislative staff) any legislative privilege is waived as to the contents of those specific communications." (quoting *Perez*, 2014 WL 106927, at *2)).

Nor, of course, can Abbott assert the legislative privilege on his own behalf for documents within his own agencies, as he is a member of the executive branch—*not* the legislative branch. *See, e.g.*, *Perez*, 2014 WL 106927, at *2. And to the extent that Abbott asserts the legislative privilege because the documents involve both his office and the legislative branch communicating regarding actions that may be related to the Legislature, courts in this Circuit have already emphasized that that position "is inconsistent with the purposes of both legislative privilege and deliberative-process privilege." *Gilby*, 471 F. Supp. 3d at 767–68; *see also Favors v. Cuomo*, 285 F.R.D. 187, 212 (S.D.N.Y. 2012) (noting that "communications with 'knowledgeable outsiders' . . . fall outside the privilege"). After all, as the governor, Abbott has no role in enacting the substance of any legislation; indeed, the Texas Constitution explicitly disclaims any such role. *See* Tex. Const. art. II, sec. 1 ("The powers of the Government of the State of Texas shall be divided into three distinct departments . . . and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted."). Accordingly,

Abbott cannot invoke legislative privilege as a basis for withholding production of DOC_0356561.[8]

And nor does Texas Government Code § 323.017—upon which Abbott relied as a basis for asserting legislative privilege in his objections to LULAC Plaintiffs' and Texas NAACP's Requests for Production—counsel otherwise, as it is inapposite here.[9] "Federal Rule of Evidence 501 provides that federal common law of privilege applies in general in federal cases." *Hobart*, 784 F. Supp. 2d at 764 n.22; *see also TitleMax*, 2022 WL 326566, at *2. The instant suits are pending in federal court and arise under federal causes of action. Accordingly, "the Court must apply the federal common law as to legislative privilege, even though the privilege as applied under Texas law may offer more protection" to individuals who invoke it. *TitleMax*, 2022 WL326566, at *4. As such, Texas Government Code § 323.017 is inapplicable here, and Abbott cannot object to the production of this document on the basis of legislative privilege.

Accordingly, Abbott must withdraw his assertion of legislative privilege regarding DOC_0356561 and produce that document.

   *2. DOC_356586*

Abbott also improperly withholds DOC_356586, which the Privilege Log describes as "Confidential communication regarding potential third session," and lists

---

[8] Additionally, Abbott's mistaken invocation of legislative privilege appears to have resulted, at least in part, from a conflation of legislative *immunity* and legislative *privilege*, applying case law regarding the former to the latter. *See, e.g.*, Abbott RFP Objections at 3, 17, 22; Scott RFP Objections at 3, 17, 22. But as the Fifth Circuit has emphasized, the two are distinct concepts. *Jefferson Cmty.*, 849 F.3d at 624 (citing *Perez*, 2014 WL 106927, at *2). Indeed, while legislative immunity is absolute, legislative privilege for state lawmakers is "at best . . . qualified," and the "privilege 'must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth.'" *Id.* (quoting *Perez*, 2014 WL 106927, at *1). Thus, even if Abbott could invoke legislative privilege—and he cannot—he has failed to show why such a qualified privilege applies to any of the specific documents LULAC Plaintiffs and Texas NAACP identify in this section. *See Perez*, 2014 WL 106927, at *2 ("It is well settled that the party asserting the privilege has the burden of establishing its applicability.").

[9] Section 323.017 of the Texas Government Code provides, among other things:

> Communications, including conversations, correspondence, and electronic communications, between a member of the legislature or the lieutenant governor, an officer of the house or senate, a legislative agency, office, or committee or a member of the staff of any of those officers or entities and an assistant or employee of the council that relate to a request by the officer or entity for information, advice, or opinions from an assistant or employee of the council are confidential and subject to legislative privilege.

Tex. Gov't Code § 323.017(a).

Case 3:21-cv-00259-DCG-JES-JVB   Document 373-14   Filed 06/27/22   Page 7 of 13

Page 7 of 13

Sean Opperman as the sender and individuals in the Office of the Governor and Anna Mackin as recipients. Privilege Log at 6.

First, Abbott incorrectly asserts that he can withhold the document based on the deliberative process privilege. Notably, at no time between January 1, 2021 and the present did Sean Opperman and Anna Mackin work within the executive branch of the state of Texas; instead, during at least part of that time, they were employees of the Texas Senate. So, although the "[d]eliberative-process privilege protects candid discussions *within* the executive branch needed for optimum administrative decision making," that "rationale does not support privilege for communication where the agency is not the decision maker and the separation of powers veil has been pierced." *Gilby*, 471 F. Supp. 3d at 767 (emphasis added). "At issue here is not the internal decision-making processes of the executive branch, but instead a part of the legislative process." *Id.* By invoking the deliberative-process privilege in the context of decisionmaking related to the Legislature, Abbott essentially "asks the court to expand deliberative-process privilege to protect legislators' need for flexibility to obtain candid input about pending legislation from the Executive Branch that will ultimately enforce, implement, or provide interpretations of law." *Id.* (cleaned up). As noted in Section I.B.1, however, that position "is inconsistent with the purposes of both legislative privilege and deliberative-process privilege." *Id.* at 767–68. Accordingly, Abbott cannot withhold DOC_356586 on the basis of the deliberative-process privilege.

Second, Abbott incorrectly argues that he can withhold the document based on the attorney-client privilege. As an initial matter, Abbott bears the burden of establishing the applicability of the privilege, *see Perez*, 2014 WL 3495414, at *2, and the Fifth Circuit has explained that, "[b]ecause the attorney-client privilege has the effect of withholding relevant information from the fact-finder, it is interpreted narrowly so as to appl[y] only where necessary to achieve its purpose." *E.E.O.C. v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017) (quotation omitted). To that end, "courts have stated that simply describing a lawyer's advice as 'legal,' without more, is conclusory and insufficient to carry out the proponent's burden of establishing attorney-client privilege," and that documents sent from one staff member to another are not privileged "merely because a copy is also sent to counsel." *See id.* at 696. Of note, "documents concerning advice on political, strategic or policy issues . . . [are not] shielded from disclosure by the attorney-client privilege." *Baldus v. Brennan*, No. 11-CV-1011 JPS-DPW, 2011 WL 6385645, at *2 (E.D. Wis. Dec. 20, 2011) (citing *Evans v. Chicago*, 231 F.R.D. 302, 312 (N.D. Ill. 2005)). And critically, "[d]isclosure of attorney-client communications to a third party who lacks a common legal interest waives the attorney-client privilege," and the "mere speculation that" every recipient of a document "shared a cognizable common interest is insufficient to establish that the privilege applies." *Perez*, 2014 WL 3495414, at *2.

Abbott has failed to satisfy his burden to show that the attorney client privilege could apply to this document in the first instance, as discussed in Section I.A. Moreover, to the extent that the document constitutes political, strategic, or policy advice, it would not qualify for the privilege. *Baldus*, 2011 WL 6385645, at *2. But even if the privilege *could* apply to the document, the privilege is waived because Sean Opperman and Anna

*Advancing Latino Civil Rights for over 50 Years*
www.maldef.org

Mackin—individuals who were not part of the Office of the Governor and who worked for the legislative, not the executive, branch—shared the document with the Office of the Governor. *See Perez*, 2014 WL 3495414, at *2. Accordingly, Abbott cannot withhold DOC_356586 on the basis of the attorney-client privilege

Third, Abbott is wrong that he can withhold the document based on the work product doctrine. As with the legislative and attorney-client privileges, courts must strictly construe the work product doctrine. *See Harding v. Cnty. of Dallas*, No. 3:15-CV-0131-D, 2016 WL 7426127, at *11 (N.D. Tex. Dec. 23, 2016). Critically, to qualify for protection under the work product doctrine, "'the primary motivating purpose' behind the creation of the document must be to aid in possible future litigation." *Id.* at *10 (quoting *In re Kaiser Aluminum & Chem Co.*, 214 F.3d 586, 593 (5th Cir. 2000)). To that end, "[o]therwise identical work by an attorney is not protected . . . if it was created in the ordinary course of business." *Bethune-Hill v. Virginia State Bd. of Elections*, 114 F. Supp. 3d 323, 348 (E.D. Va. 2015) (quotation omitted). In the context of the legislative process, courts have emphasized that "[l]egislative counsel could not, for example, withhold documents pertaining to pending legislation on the basis of the work product doctrine because the legislature could *always* have a reasonable belief that *any* of its enactments would result in litigation. That is the nature of the legislative process," *id.* (quotation and alterations omitted), as "it often involves contentious issues that the public may challenge as unconstitutional," *Baldus*, 2011 WL 6385645, at *2. As such, "materials prepared in the ordinary course of a party's business—here, the Legislature enacting laws—even if prepared when litigation was reasonably anticipated, are not work product." *See id.* (cleaned up and citations omitted); *see also Bethune-Hill*, 114 F. Supp. 3d at 348.

Here, Abbott asserts that the work product doctrine applies to a communication about the third special session of the Texas Legislature between employees of the executive branch and legislative branch. Abbott provides no information to show that the primary purpose of the document is to aid in possible future litigation. Indeed, the document relates to a potential session Abbott could (and eventually did) call; as such, it is a document prepared in the ordinary course of business—and therefore not subject to the work product doctrine. *See Bethune-Hill*, 114 F. Supp. 3d at 348.

Accordingly, Abbott must withdraw his assertions of the deliberative process privilege, attorney-client privilege, and the work product doctrine regarding DOC_0356586 and produce that document.[10]

### 3. DOC_0356587 and DOC_0356588

Abbott also contends that DOC_0356587 and DOC_0356588—each described as "Attachment to confidential communication regarding potential third special session.

---

[10] During the May 12, 2022 meet and confer, counsel for Defendants suggested that the document could also be withheld on the basis of the legislative privilege. For the reasons stated in Section I.B.1, the legislative privilege could not be asserted or applied to DOC_0356586.

Includes input from OOG attorneys"—are protected from disclosure by the attorney-client privilege, the work product doctrine, and the deliberative process privilege. Privilege Log at 6. Again, Abbott is wrong.

As an initial matter, the Privilege Log lacks any information about the author, sender, or recipients of the documents, in violation of the Stipulated ESI Agreement. Assuming that the documents were originally attachments to the communication in DOC_0356386, Abbott incorrectly withholds DOC_0356587 and DOC_0356588, for the same reasons articulated in Section I.B.2.

Accordingly, Abbott must withdraw his assertions of the attorney-client privilege, work product doctrine, and deliberative process privilege regarding DOC_0356587 and DOC_0356588 and produce those documents.[11]

*4. DOC_0356593*

Additionally, Abbott erroneously withholds DOC_0356593—described as "Confidential communication regarding draft proclamation of special session. Includes input from OOG attorneys" and sent to employees of the Office of the Governor, Sean Opperman and Anna Mackin—based on: the attorney-client privilege, work product doctrine, legislative privilege, and deliberative process privilege.

For the reasons set forth in Section I.B.2, this document is not entitled to the attorney-client privilege, deliberative process privilege, or work product doctrine, as the document appears to constitute political, policy, or strategic advice; has been disclosed to individuals outside of the Office of the Governor; and pertains to a draft proclamation of the special session—*i.e.*, something in the ordinary course of calling the Legislature. And for the reasons set forth in Section I.B.1, Abbott cannot withhold the document on the basis of legislative privilege, as he lacks standing to assert the privilege, any privilege that could be asserted has been waived because the document has been shared with an individual outside the Legislature, he cannot invoke the privilege on his own behalf, and he has failed to show that—should the privilege apply—the privilege should not yield here.

Accordingly, Abbott must withdraw his assertions of the legislative privilege, attorney-client privilege, work product doctrine, and deliberative process privilege regarding DOC_0356593 and produce that document.

*5. DOC_0356598 and DOC_0356600*

Abbott also incorrectly withholds DOC_0356598 and DOC_0356600—described as "Confidential communication from Senate Redistricting Committee regarding

---

[11] In the event that these documents were originally attached to the communication in DOC_0356386, Abbott cannot withhold them based on the legislative privilege either, for the same reasons noted in Section I.B.1.

materials related to draft redistricting legislation" and sent by "Senate Redistricting and Jurisprudence Committee (via Dropbox)"—based on the following: the attorney-client privilege, the work product doctrine, the legislative privilege, and the deliberative process privilege. Privilege Log at 9.

As an initial matter, the Privilege Log does not indicate whether any documents linked to in the communication—*i.e.*, that were accessible "via Dropbox"—are listed in the log or have been withheld. *See id.* "Rule 34 provides that, subject to the relevancy limitations of Rule 26, a party may serve on any other party a request 'to produce . . . items in the responding party's possession, custody, or control,'" and "a party can 'control' documents that are within the possession or custody of a non-party." *Perez v. Perry*, No. SA-11-CV-360-OLG-JES, 2014 WL 1796661, at *1 (W.D. Tex. May 6, 2014) (quoting Fed. R. Civ. P. 34(a)(1)(A)); *see also St. Pierre v. Dearborn Nat'l Life Ins. Co.*, No. 3:19-cv-223-DCG, 2020 WL 6122555, at *4 (W.D. Tex. Apr. 14, 2020). "Documents are considered to be within a party's control when that party has the right, authority, or practical ability to obtain the documents from a nonparty." *Perez*, 2014 WL 1796661, at *1 (quotation omitted). Because the Office of the Governor received a link via Dropbox, Abbott must produce any document accessible via that link or state the reasons for withholding any such document in his Privilege Log (along with listing any other individuals who had access to that Dropbox link).

For the reasons set forth in Section I.B.2, DOC_0356598 and DOC_0356600—and any document included in the Dropbox link—are not entitled to the attorney-client privilege, deliberative process privilege, or work product doctrine, as the documents appear to constitute political, policy, or strategic advice; have been disclosed to individuals outside of the Office of the Governor; and pertain to draft redistricting legislation—*i.e.*, something in the ordinary course of the legislative process. And for the reasons set forth in Section I.B.1, Abbott cannot withhold the documents on the basis of legislative privilege, as he lacks standing to assert the privilege, any privilege that could be asserted has been waived because the document has been shared with an individual outside the Legislature, he cannot invoke the privilege on his own behalf, and he has failed to show that—should the privilege apply—the privilege should not yield here.

Accordingly, Abbott must withdraw his assertions of the legislative privilege, attorney-client privilege, work product doctrine, and the deliberative process privilege regarding DOC_0356598 and DOC_0356600 and produce those documents, along with any documents that were accessible through the Dropbox link referenced in those communications.

### 6. DOC_0356606

Abbott also incorrectly withholds DOC_0356606—described as "Confidential communication regarding draft redistricting legislation," dated March 10, 2022, and sent from Lieutenant Governor Dan Patrick to Abbott—based on the following: the attorney-client privilege, the work product doctrine, the legislative privilege, and the deliberative process privilege. Privilege Log at 10.

For the reasons set forth in Section I.B.1, Abbott may not withhold the document based on legislative privilege, as Abbot lacks standing to assert the privilege, he may not invoke the privilege on his own behalf, and, in any event, the privilege has been waived because he is a member of the executive branch. Moreover, the document is dated March 10, 2022, and thus reflects a communication *after* the enactment of the legislation at issue, and therefore is not subject to legislative privilege or deliberative process privilege. And for the reasons set forth in Section I.B.2, this document is not entitled to the attorney-client privilege or work product doctrine, as the communication does not include counsel for the Office of the Governor; appears to constitute political, policy, or strategic advice; has been disclosed to individuals outside of the Office of the Governor; and pertains to a draft legislation—*i.e.*, something in the ordinary course of enacting legislation.

Accordingly, Abbott must withdraw his assertions of the legislative privilege, attorney-client privilege, work product doctrine, and deliberative process privilege regarding DOC_0356606 and produce that document.

## II. LULAC Plaintiffs' Separate Objections and Concerns

The following pertain to only LULAC Plaintiffs' discovery requests.

### A. Confirmation of Date Range for Document Search

LULAC Plaintiffs reiterate the following objection raised in their April 26, 2022 meet and confer letter to Defendants: Defendants improperly object to LULAC Plaintiffs' instructions to search for documents from January 1, 2019 to the present, instead limiting their search to January 1, 2021 to October 25, 2021. Abbott RFP Objections at 6; Scott RFP Objections at 6. Testimony during the preliminary injunction hearing in this action revealed that legislators met prior to 2021 to discuss redistricting. Accordingly, documents prior to January 1, 2021 may provide evidence of legislators' intent and the development of the redistricting process, which is more than enough to satisfy the relevancy standard for discovery. *See St. Pierre*, 2020 WL 612255, at *3. Additionally, documents after October 25, 2021 are relevant to LULAC Plaintiffs' claims. Moreover, Defendants fail to explain how LULAC Plaintiffs' instructed period of time is unduly burdensome.

Accordingly, Defendants must withdraw their objections to the instructed period of time, indicate they have searched for documents during that period, and fully respond to LULAC Plaintiffs' Interrogatories and Requests for Production to Defendants.

### B. Defendants' Objection to the Term "Staff Member" in LULAC Plaintiffs' Interrogatories is Without Merit.

LULAC Plaintiffs reiterate the following objection raised in their April 26, 2022 meet and confer letter to Defendants: Defendants object to the definition of "you" or

"your" in LULAC Plaintiffs' interrogatories because it includes the phrase "staff member," claiming that the inclusion of "staff member" is vague and unduly burdensome. *See* Abbott Interrogatories Objections at 4; Scott Interrogatories Objections at 4. However, Defendants' objections are without merit, as they fail to articulate how the inclusion of the word "staff member" is unduly burdensome. *Heller v. City of Dallas*, 303 F.R.D. 466, 490 (N.D. Tex. 2014) ("A party resisting discovery must show specifically how each interrogatory or document request is overly broad, unduly burdensome, or oppressive."). Moreover, where terms are not defined, Defendants "should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories," *id.* at 491 (quotation omitted), just as they do in other portions of their responses to LULAC Plaintiffs' discovery requests, *see, e.g.*, Abbott RFP Objections at 9 (objecting to "but not limited to" as vague and overbroad but nevertheless stating that they "will use reasonable understanding of this request to search for any documents").

Accordingly, Defendants must withdraw their objections to LULAC Plaintiffs' definition of "you" and "your," indicate they have responded to LULAC Plaintiffs' discovery requests consistent with that definition, and fully respond to LULAC Plaintiffs' discovery requests.

\* \* \*

LULAC Plaintiffs and Texas NAACP reserve the right to raise additional issues with Abbott's Privilege Log and Defendants' other objections to discovery requests, as necessary. We hope that the parties can narrow the scope of disagreement or reach an amicable resolution without seeking Court intervention.

Sincerely,

*Nina Perales*

Nina Perales
Kenneth Parreno
Samantha Serna Uribe
Mexican American Legal Defense
and Educational Fund (MALDEF)
110 Broadway, Suite 300
San Antonio, TX 78205

*Counsel for LULAC Plaintiffs*

Ezra Rosenberg

Pooja Chaudhuri
Lawyers' Committee for Civil
Rights Under Law
1500 K Street N.W., Ste. 900
Washington, D.C. 20005

*Counsel for Texas NAACP*