IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> GREG ABBOTT, *et al.*, <br><br> *Defendants.* | § § § § § § § § § § § § § | Case No. 3:21-cv-00259 <br> [Lead Case] |
| UNITED STATES OF AMERICA, <br><br> *Plaintiff,* <br><br> v. <br><br> STATE OF TEXAS, *et al.*, <br><br> *Defendants.* | § § § § § § § § § § § § § | Case No. 3:21-cv-00299 <br> [Consolidated Case] |

**REPLY IN SUPPORT OF MOTION BY TEXAS HOUSE SPEAKER, GENERAL COUNSEL TO THE HOUSE, AND HOUSE PARLIAMENTARIAN TO QUASH DEPOSITION SUBPOENAS AND, ALTERNATIVELY, MOTION FOR PROTECTIVE ORDER**

The United States and MALC have subpoenaed the Speaker of the Texas House to sit for a deposition. MALC has also subpoenaed the General Counsel to the House and the House Parliamentarian. For the reasons that follow, Movants ask that the motion be held in abeyance with respect to certain deposition subpoenas (while other legislators' and legislative employees' depositions are unfolding), and that subpoenas be quashed for others. In particular, with respect to the House Parliamentarian, Movants request a decision on the motion before her deposition next Thursday, June 30, or a temporary administrative stay of the deposition in the alternative.

### I. Quashing Subpoena to Depose Speaker Phelan

The United States does not appear to dispute that the Speaker is one of Texas's highest-ranking public officials. The United States also does not appear to dispute that the Speaker has no uniquely relevant knowledge. Or that whatever the Speaker knows is discoverable from alternative sources—including his current and former deputy chiefs of staff who will be deposed in addition to the more than one dozen other Texas House Members and Senators to be deposed.[1] The United States instead rests its argument for deposing the Speaker on a categorical line in the sand: the State's highest-ranking *legislative* public officials may be deposed, even absent extraordinary circumstances, just not its *executive* officials. That is an arbitrary and unsupported distinction; the deposition subpoena should be quashed.

---

[1] For example, based on news articles, the United States contends (at 3) that the Speaker has knowledge of Rep. Ryan Guillen's decision to switch parties. But the United States will already be deposing Rep. Guillen himself about that very subject next week. *See* Mot. Ex. H (Guillen deposition subpoena). It's generous, moreover, to assume such facts are relevant; any such knowledge about the longtime, highly popular South Texas representative's decision to switch parties is not pertinent to the VRA claim. *See League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 999 F.2d 831, 854 (5th Cir. 1993) ("Section 2 is a balm for racial minorities, not political ones—even though the two often coincide. The Voting Rights Act does not guarantee that nominees of the Democratic Party will be elected, even if black voters are likely to favor that party's candidates." (quotation marks and citations omitted)); *see also* U.S. Am. Compl. ¶142, ECF 318 (adding allegation that Rep. Guillen has been historically supported by over 80 percent of Latino voters); *id.* ¶149 (alleging, without further explaining relevance, that "[a]lthough voters in District 31 had elected Guillen as a Democrat for nearly two decades, less than a month after enactment of the 2021 House plan, Guillen switched parties ….").

For another example, the United States argues (at 2) that Speaker Phelan was quoted in a news article for the common-sense observation that a new district could be added in locales where population increased. Resp. 2. And that same cited article further confirms Speaker Phelan's arguments here. As reported, the Speaker said he was "focused [in redistricting] on his own area in Southeast Texas in Jefferson and Orange counties surrounding Beaumont"—not at issue in this litigation.

The United States' only support for that arbitrary distinction is an unpublished Fifth Circuit decision involving distinguishable circumstances. *See* U.S. Resp. 5 (citing *In re Bryant*, 745 F. App'x 215, 221-22 (5th Cir. 2018). That unpublished decision is not precedential. 5th Cir. Rule 47.5.4; *Texas v. Biden*, 20 F.4th 928, 956 n.5 (5th Cir. 2021). It says nothing about the circumstances here. *Bryant* discussed seeking alternative discovery from particular "legislators," *Bryant*, 745 F. App'x at 221, not deposing the Speaker of the Texas House.[2] Here, plaintiffs are already deposing more than a dozen such legislators in the House and Senate. In light of that alternative discovery, a public official as high-ranking as the Speaker of the Texas House has an equally if not more compelling basis for avoiding the burden of a deposition than the chief of staff at issue in *Bryant*.

Other than *ipse dixit*, the United States offers no additional basis for distinguishing between a high-ranking official serving in the executive branch versus a high-ranking official serving in the State's co-equal legislative branch. What matters when considering whether there are sufficient circumstances to justify burdening a public official with a deposition is his high-ranking status and attendant responsibilities, not whether he leads a particular branch of Texas government. And here, the Speaker's high-ranking status is undisputed—serving as the presiding officer of the 150-member Texas House, co-chairing the State's Legislative Budget Board and serving on others, in line to succeed the Governor in cases of unavailability, and more. *See* Mot. 7. The concerns animating the rule against deposing high-ranking public officials apply just the same here, given the Speaker's role, as in cases involving an executive branch official. Both have "'greater duties and time constraints than other witnesses,'" making the burden particularly acute. *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995).

---

[2] As the Fifth Circuit's unpublished decision in *Bryant* acknowledged, 745 F. App'x at 221 n.6, a companion case to *Bryant* ultimately decided those "legislators" could *not* be required to submit to document discovery. There, a published decision of the Fifth Circuit held that the legislators were not required to respond to plaintiffs' document requests because they sought information "unrelated" to plaintiffs' claims for some, and plaintiffs lacked standing for others. *Stallworth v. Bryant*, 936 F.3d 224, 229 (5th Cir. 2019).

2

The United States argues that legislative privilege offers sufficient "protection[]" for the Speaker, indistinguishable from all other legislators. U.S. Resp. 6. But the interplay between legislative privilege and the settled rule against deposing high-ranking officials further confirms that the settled rule applies to Speaker Phelan too. Invoking legislative privilege is not mutually exclusive with that settled rule. Rather, the two are mutually reinforcing. For executive officials, courts are reticent to permit depositions because the burden to the official's duties outweighs the evidentiary benefit, including because litigants ordinarily cannot "probe [such officials'] decision-making processes and receiving reasons for their decisions," *In re FDIC*, 58 F.3d at 1061. So too for legislative officials, whose internal thoughts and motivations are ordinarily legislatively privileged and of limited evidentiary value. *See* Mot. 13-14. Just as the agency record ordinarily speaks for itself, the legislative record ordinarily speaks for itself. *Compare In re Dep't of Educ.*, 25 F.4th 692, 700, 701-02 (9th Cir. 2022) ("judicial review is generally limited to the administrative record"), *with United States v. Helstoski*, 442 U.S. 477, 489 (1979) (legislators "protect[ed] 'against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts'"), *and United States v. O'Brien*, 391 U.S. 367, 383-84 (1968) ("Inquiries into congressional motives or purposes are a hazardous matter."). No different than high-ranking executive officials, the burden of the Speaker's deposition well outweighs any conceivable evidentiary benefit—*especially* when so many other legislators and legislative employees tasked with redistricting responsibilities will be deposed and, as part of the deposition, must disclose legislatively privileged testimony. *See* Order 4-5, ECF 282; *accord* Mot. 6 (cases assessing whether there were alternative sources of discovery).

Ultimately, no court has drawn the distinction that the United States would draw here. Various authorities cited in the Speaker's motion refuse depositions of high-ranking public officials (and many less high-ranking than the Speaker). *See* Mot. 8-9. In response, the United States attempts to distinguish some of those authorities because they involved federal legislators versus state legislators, U.S. Resp.

3

6, failing to explain why federal legislators would be excepted from the United States' novel rule. As for other authorities, the United States simply writes those off as "erroneously" decided. U.S. Resp. 7. The truth remains that in these cases, courts quashed or modified deposition subpoenas for various high-ranking officials—without limitation to executive branch officials alone.

As for the United States' argument that another Texas Speaker was deposed in cases years ago, the United States concedes that the State did not seek the court's relief to bar or limit the deposition. U.S. Resp. 7. No court had any occasion to consider whether there were extraordinary circumstances warranting the former Speaker's deposition in that past redistricting process—involving a different Speaker, a different Legislature, a different decade, and different lawsuits. But here, in response to these lawsuits regarding this redistricting cycle, the current Speaker has averred he delegated redistricting responsibilities to the Redistricting Committee, Mot. Ex. P, Phelan Decl. ¶10, most of whose members and staff, including the Committee Chairman, will soon be deposed. To the extent plaintiffs want to ask legislators about the Speaker's role, they can do so in those depositions. Whatever transpired a decade ago does not bind the Court here.

Finally, the United States asserts that the Speaker's deposition is warranted based on a brazen and baseless accusation that there was "an inadequate search or systematic spoliation" of the Speaker's documents in response to the United States' subpoena *duces tecum*. U.S. Resp. 8. Ordinarily, such serious allegations require a plausible factual basis before they can be thrown around in court filings. *Cf. Mar. v. ABM Sec. Servs., Inc.*, 2011 WL 13356064, at *7 (S.D. Cal. Feb. 9, 2011) (describing "argument that ABM has destroyed relevant evidence appears to be frivolous and most likely sanctionable under Rule 11"). The United States has made no such allegation in its pending motion to compel the Speaker and others to turn over documents withheld as privileged. *See generally* Mot. to Enforce Subpoenas, ECF 351. The United States has never mentioned any such concern on any meet and confer with the Speaker's counsel. And any such theory of wrongdoing is belied by a simpler explanation: the Speaker

4

was not highly involved in redistricting; he delegated that work to the House Redistricting Committee. *See* Mot. Ex. P, Speaker Decl. ¶10. In all events, there are various alternatives far less intrusive on the Speaker's ongoing duties than deposing the Speaker himself about his response to a document subpoena. Counsel could start by conferring with counsel; beyond that, his deputy chiefs of staff will be deposed, written questions could be submitted, or any deposition substantially limited by time and scope. *See, e.g.*, *Blankenship v. Fox News Network, LLC*, 2020 WL 7234270, at *2 (S.D. W. Va. Dec. 8, 2020) (written interrogatories); *Brennan v. City of Philadelphia*, 388 F. Supp. 3d 516, 522-23 (E.D. Pa. July 25, 2019) (noting availability of written deposition); *In re FEMA Trailer Formaldehyde Prods. Liability Litig.*, 2009 WL 2602615 (E.D. La. Aug. 20, 2009) (written responses in lieu of a deposition).

## II.     Alternatively, Holding Speaker's Motion in Abeyance

In light of the foregoing, the Speaker's motion is ripe for decision now. But the Court could alternatively hold the motion with respect to the Speaker's deposition in abeyance, as the United States suggests (at 8-9). That said, holding the motion in abeyance should not have the effect of requiring the Speaker to spend time preparing for any deposition before the Court rules. After all, the basis for the rule against deposing high-ranking officials absent extraordinary circumstances is the intrusion on their "'greater duties and time constraints than other witnesses.'" *In re FDIC*, 58 F.3d at 1060.[3] Accordingly, holding the motion in abeyance as the United States proposes ought to include the following condition: if the Speaker is ultimately ordered to be deposed for some length of time, the subpoena should be modified so that the Speaker's deposition would not occur until a week has passed from any such Court order, or later, thereby giving the Speaker an appropriate amount of time to adjust his schedule and prepare.

---

[3]   Currently, the Speaker's deposition is noticed for July 21. If the United States decides on July 15 that it plans to proceed with the deposition (*see* U.S. Resp. 9), then that leaves little time to brief and decide the issue sufficiently in advance of the deposition date. On that schedule, the Speaker could not avoid potentially unnecessary preparation time.

**III.     Holding General Counsel's Motion in Abeyance**

**A.** Counsel have further met and conferred regarding this motion as it relates to the General Counsel to the House, Ms. Cardwell. (Counsel for MALC seeks the deposition of Ms. Cardwell.) Counsel for MALC and Ms. Cardwell agree that the motion should be held in abeyance pending forthcoming depositions of some legislators and legislative employees. Already in depositions, legislators have testified about the General Counsel's role. Similar testimony in the coming weeks should further aid the parties and the Court in deciding whether the deposition ought to proceed, as MALC's counsel argues, or not, as Ms. Cardwell's counsel argues. If the Court agrees, then the parties would supplement the motion with relevant deposition testimony about the nature of Ms. Cardwell's role no later than July 11. Ms. Cardwell's deposition is noticed for July 19.

**B.** Counsel have also agreed that, should the deposition proceed, Rule 30(c)(2) governs with respect to attorney-client privilege objections. Ms. Cardwell like all other deponents need not answer questions or portions of questions that would reveal the substance of her attorney-client communications, over an attorney-client privilege objection. Fed. R. Civ. P. 30(c)(2) (permitting deponent not to answer as "necessary to preserve a privilege"). Given the nature of the attorney-client privilege, including that it is not counsel's privilege to waive, it would not be appropriate to expand the deposition procedure for *legislatively* privileged testimony (Order, ECF 282) to *attorney-client* privileged testimony. *See Am. Can Co. v. Citrus Feed Co.*, 436 F.2d 1125, 1128 (5th Cir. 1971) (only client may waive privilege and "the lawyer's lips must continue to remain sealed").

**C.** On the merits, MALC contends that Ms. Cardwell has not sufficiently detailed the attorney relationship existing between Ms. Cardwell as the General Counsel to the House and House Members and employees. *See* MALC Resp. 3-4. To the contrary, state law confirms that an attorney-client relationship exists between the General Counsel and House Members and employees. *See* Mot. Ex. Q, Cardwell Decl. ¶8 (discussing Tex. Gov't Code §306.008(b)). And Ms. Cardwell has averred with

6

specificity that her duties are mainly the provision of legal advice and legal services. *See, e.g., id.* ¶7 (listing various General Counsel duties including "advising on officeholder ethics and conflicts of interest law, … responding to requests for public information, reviewing contracts, overseeing and working with the Office of the Attorney General and outside counsel in matters of litigation" involving House and members, "reviewing proposed legislation for Constitutional and other legal issues, reviewing and updating House and member policies, and generally promoting compliance with applicable state and federal laws in all legislative and administrative pursuits" by the House). Her involvement in redistricting was consistent with that predominantly legal role, *id.* ¶11, as will be confirmed by forthcoming depositions of legislators and employees.

MALC errs by likening Ms. Cardwell to those in other redistricting cases who "worked on redistricting plans" in a mapdrawing capacity (at 6) or who were "key players in the map drawing process" (at 5). Ms. Cardwell's declaration says something different: she was involved in redistricting in her capacity as a "legislative attorney," not a mapdrawer. Mot. Ex. Q, Cardwell Decl. ¶9. And she "viewed [her] responsibilities as helping to ensure that the House passed legislation that complied with applicable legal requirements under state and federal law." *Id.* ¶11. MALC cannot rebut Ms. Cardwell's declaration with unsupported assertions that her role was primarily as mapdrawer or policymaker. *See, e.g., EEOC v. Exxon Corp.*, 1998 WL 50464, at *1-2 (N.D. Tex. Jan. 20, 1998) ("speculation" insufficient to contradict official's affidavit); *Moriah v. Bank of China Ltd.*, 72 F. Supp. 3d 437, 440-41 (S.D.N.Y. 2014) (declaration refuted plaintiff's allegations from news articles).[4]

---

[4] Elsewhere, MALC argues that "not all consultation constitutes legal advice" and that counsel's presence in meetings "does not automatically create a privilege." MALC Resp. 5. All of that is true. Arguments with respect to Ms. Cardwell are not so categorical. Ms. Cardwell's role was largely to provide privileged attorney advice; to the extent she also has nonprivileged knowledge as many attorneys might, that knowledge is discoverable through other means. *See* Mot. 15; *see also, e.g., Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981) ("Upjohn has provided the IRS with a list of such employees, and the IRS has already interviewed some 25 of them. While it would probably be more convenient for the Government to secure the results of petitioner's internal investigation by simply subpoenaing the questionnaires and notes taken by petitioner's attorneys, such considerations of convenience do not overcome the policies served by the attorney-client privilege.").

MALC's attempt to distinguish relevant cases also falls short. The Fifth Circuit's decision in *Theroit v. Parish of Jefferson* did not turn only on the would-be deponents' status as trial counsel. The leading reason for refusing to depose lawyers in *Theroit* was that the parties had at least two alternative sources of information. 185 F.3d 477, 491 (5th Cir. 1999) ("entire record in the *EJC* case was available to the parties" and another individual had been identified "as the person who would have the best knowledge and information regarding the sought information"). Only after discussing those alternative sources of information did the Fifth Circuit add that deposing the lawyers "was *also* complicated by the fact that they were counsel for the opposing side." *Id.* (emphasis added).[5] Likewise in *Hall v. Louisiana*, the district court's decision turned on alternative sources of information available, short of deposing an attorney. 2014 WL 1652791, at *4 (M.D. La. Apr. 23, 2014) (noting "counsel ha[d] obtained a transcript of th[e] testimony" that the attorney had publicly given). To be sure, the attorney in *Hall* went on to serve as opposing counsel, but the discovery dispute was not about her opposing counsel role. *Id.* at *3-4. It was about her earlier role during the redistricting process—which was the subject of the litigation. *Id.* And the court's particular concern was that questioning the attorney about her legal advice during that earlier redistricting process "would necessarily infringe upon confidential attorney-client communications." *Id.* at *4. Nor should *Gates v. Texas Department of Family and Protective Services*, 2010 WL 11598033 (W.D. Tex. Oct. 7, 2010), or *National Western Life Insurance Co. v. Western. National Life Insurance*, 2010 WL 5174366 (W.D. Tex. Dec. 13, 2010), be ignored simply because they are not "in the context of redistricting litigation." MALC Resp. 7. Both are instructive insofar as they apply the general rule that deposing attorneys is generally disfavored when there are alternative ways

---

[5] MALC's observation (at 6) that *Theroit* relied on another staff attorney's non-privileged testimony is irrelevant. Ms. Cardwell has never argued that any and all attorney testimony is privileged and off-limits. Just the opposite. *See* Mot. 15. Any attorney is bound to have some non-privileged information; the question for purposes of Rule 45 is whether there are alternative and less burdensome means for obtaining that nonprivileged information than by subpoenaing an attorney who must disaggregate the nonprivileged from the privileged. *See, e.g.*, *Nat'l W. Life Ins. v. W. Nat'l Life Ins.*, 2010 WL 5174366, at *4 (W.D. Tex. Dec. 13, 2010) (noting "it would be extremely difficult" for attorney "to differentiate non-privileged matters from privileged matters in this case").

to acquire information. *See Gates*, 2010 WL 11598033, at *2 (noting plaintiffs could discover information "through other sources" and, to the extent they couldn't, it was because such information "is covered by the attorney-client privilege"); *Nat'l W. Life Ins.*, 2010 WL 5174366, at *3 (similar).

### IV.     Quashing Subpoena to Depose Parliamentarian Carter

Finally, the House Parliamentarian is set to be deposed next Thursday, June 30, 2022. *See* Mot. Ex. C (Carter subpoena). For the reasons already briefed, the subpoena should be quashed because it targets the disclosure of legislatively privileged and protected confidential matter and is otherwise unduly burdensome. Mot. 19-23. MALC responds that the Parliamentarian's deposition is necessary to ask whether the House departed "from ordinary legislative procedures" and whether the Parliamentarian was "instructed to depart from ordinary procedures by legislators." MALC Resp. 9-10. As to the former, that inquiry is answerable with the public record available to MALC. As to the latter, the Parliamentarian is duty bound to keep requests by House Members for advice or guidance regarding procedure confidential and privileged unless and until the legislator deems them not to be. House Rule 2, §9; *see also* Gov't Code Tex. Gov't Code §301.041(a). Contrary to MALC's novel argument (at 10), the Parliamentarian owes a duty of confidentiality to that legislator; she cannot divulge such conversations to a legislative caucus like MALC or anyone else, unless the legislator so approves. *Id.*

In response to the Parliamentarian's arguments, MALC cites *United States v. Gillock*, 445 U.S. 360 (1980), involving a federal criminal prosecution of a state legislator, for the proposition that the legislative privilege might yield in these circumstances. MALC Resp. 10. But the interests at play in a federal criminal prosecution are nothing like those involving MALC here: a private civil plaintiff seeking a deposition to ask about legislatively privileged information. *See Gillock*, 445 U.S. at 373 (Supreme Court had "drawn the line at civil actions" for legislative privilege). There is no basis for requiring the Parliamentarian to submit to a deposition when it will cover information already publicly available, including expert-like opinion testimony comparing past and present floor procedures. Nor is there a

basis for requiring the Parliamentarian to be deposed about any remaining topics, not publicly available, when her testimony about such topics is likely to remain inadmissible and under seal because it lies at the heart of the legislative privilege.

## CONCLUSION

For the foregoing reasons and those in the motion to quash, the Court should quash the subpoenas or, alternatively, hold the motion to quash with respect to Speaker Phelan in abeyance. With respect to the deposition subpoena of the General Counsel, the parties agree that the motion to quash should be held in abeyance and supplemented no later than July 11. With respect to the deposition subpoena of the House Parliamentarian, the subpoena should be quashed.

Date: June 24, 2022                                         Respectfully submitted,

                                                            */s/ Taylor A.R. Meehan*
Adam K. Mortara                                             J. Michael Connolly
LAWFAIR LLC                                                 Taylor A.R. Meehan
125 South Wacker, Suite 300                                 Frank H. Chang
Chicago, IL 60606                                           Jeffrey S. Hetzel
Tel: (773) 750-7154                                         CONSOVOY MCCARTHY PLLC
mortara@lawfairllc.com                                      1600 Wilson Blvd., Suite 700
                                                            Arlington, VA 22209
                                                            Tel: (703) 243-9423
                                                            mike@consovoymccarthy.com
                                                            taylor@consovoymccarthy.com
                                                            frank@consovoymccarthy.com
                                                            jhetzel@consovoymccarthy.com

                                                            *Counsel for House Legislators and Staff*


                                                            */s/ Patrick K. Sweeten*
KEN PAXTON                                                  PATRICK K. SWEETEN
Attorney General of Texas                                   Deputy Attorney General for Special Litigation
                                                            Tex. State Bar No. 00798537
BRENT WEBSTER
First Assistant Attorney General                            WILLIAM T. THOMPSON
                                                            Deputy Chief, Special Litigation Unit
                                                            Tex. State Bar No. 24088531

                                                            JACK B. DISORBO
                                                            Assistant Attorney General, Special Litigation Unit
                                                            Tex. State Bar No. 24120804

                                                            OFFICE OF THE ATTORNEY GENERAL

                                                            P.O. Box 12548 (MC-009)
                                                            Austin, Texas 78711-2548
                                                            Tel.: (512) 463-2100
                                                            Fax: (512) 457-4410
                                                            patrick.sweeten@oag.texas.gov
                                                            will.thompson@oag.texas.gov
                                                            jack.disorbo@oag.texas.gov

                                                            *Counsel for Defendants, Senate and House Legislators and Staff*

11

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on June 24, 2022, and that all counsel of record were served by CM/ECF.

*/s/ Taylor A.R. Meehan*
TAYLOR A.R. MEEHAN
