UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, <br><br> *Plaintiffs*, <br><br> EDDIE BERNICE JOHNSON, *et al.*, <br><br> *Plaintiff-Intervenors*, <br> v. <br><br> GREG ABBOTT, *in his official capacity as Governor of the State of Texas*, *et al.*, <br><br> *Defendants*. | § § § § § § § § § § § § § § § § | EP-21-CV-00259-DCG-JES-JVB <br> [Lead Case] |
| UNITED STATES OF AMERICA, <br><br> *Plaintiff*, <br> v. <br><br> STATE OF TEXAS, *et al.* <br><br> *Defendants*. | § § § § § § § § § § § § § | Case No. 3:21-CV-00299-DCG-JES-JVB <br> [Consolidated Case] |

**ORDER**

The United States and the other plaintiffs served a third-party subpoena on the Texas Legislative Council seeking both tangible and electronic documents. Dkt. 219-3. Citing custodianship and legislative-privilege concerns, Texas, on behalf of itself and 26 individual legislators (collectively, "the movants"), now moves to quash the subpoena or, in the alternative, issue a protective order that would limit the scope of the subpoena. The Court grants a protective order to those individuals claiming legislative privilege and otherwise modifies the subpoena.

### I. BACKGROUND

The Texas Legislative Council (TLC) is an agency of the Texas legislature. Tex. Gov't Code § 323.001(a). The TLC consists of the lieutenant governor, speaker of the house, chairman of the house administration committee, six senators appointed by the president of the senate, and five members of the house appointed by the speaker. *Id.* § 323.001(b). Its powers and duties include, among other things, conducting investigations and studies that may be useful to the legislative branch, assisting the legislature in drafting proposed legislation, providing legal advice and other legal services to the legislature, and providing data-processing services to aid members and legislative committees. *Id.* § 323.006(a). Specific to its data-processing role, the TLC "maintains the State's redistricting software, email servers, and other networked resources." Dkt. 227 at 2.

Pursuant to Federal Rule of Civil Procedure 45, the United States served a third-party subpoena on the TLC seeking eight categories of documents and electronically stored information (ESI):

(1) "All documents relating to any redistricting proposal for the Texas delegation to the U.S. House of Representatives or the Texas House, including but not limited to House Bill 1, Senate Bill 6, and any other Congressional or House redistricting proposal . . ." including, *inter alia*, "shapefiles, map images, any other files or datasets used in mapping software, RED reports not available on DistrictViewer, PAR reports, demographic data, . . . ."

(2) "All documents relating to the redistricting process . . . ."

(3) "All documents relating to voting patterns in Texas elections with respect to race, ethnicity, or language minority status," including "calculations, reports, audits, estimates, projections, or other analyses."

(4) "All documents relating to the criteria, requirements, priorities, or guidelines used or proposed to be used in redistricting . . . ."

(5) "All documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives exchanged between,

>
> among, with, or within the Texas Legislative Council, the Office of the Governor the Office of the Lieutenant Governor, the Office of the Secretary of State, the Office of the Attorney General, any legislator or their staff, the House Committee on Redistricting or members and staff thereof . . . any other political or community group or organization, or any member of the public."
>
> (6) "All other documents relating to redistricting . . . in the possession, custody, or control of the Texas Legislative Council, including documents located on any email server or on any shared or network drive, such as the "X-Drive" space assigned to individual legislators or their staff and the "Y-Drive" space shared between legislators and their staff. This request includes emails, memoranda, correspondence, calendar invitations, meeting minutes, agendas attendance sheets, call logs, notes, presentations, studies, advocacy, letters, public statements, or other communications.
>
> (7) "All documents relating to enumerations or estimates by the U.S. Census Bureau or the Texas Demographic Center . . . ."
>
> (8) "All documents relating to payment for services; agreements of representation, consultation, employment, services, confidentiality, or common interest" or "any other type of contract relating to redistricting."

Dkt. 219-3 at 11–14.

In response, Texas moved to quash on behalf of itself and 26 legislators and their staff who received subpoenas similar to that served on the TLC. *See* Dkt. 219. Texas's argument against the subpoena is twofold. First, Texas argues that the documents sought from the TLC are duplicative of those sought from the 26 individual legislators, rendering the subpoena an attempted end run around legislative privilege.[1] *Id.* at 9–10. Second, it argues that state law prevents the TLC from handing over those documents because the TLC does not have legal "possession, custody, or

---

[1] The individual statue officials already subpoenaed include Lieutenant Governor Dan Patrick; Speaker of the Texas House Dade Phelan; Senate Special Committee on Redistricting Chairwoman Joan Huffman; Texas House Redistricting Committee Chairman Todd Hunter; Texas House Representatives Tom Craddick, Philip Cortez, John Lujan, Geanie Morrison, Andrew Murr, Steve Allison, Jacey Jetton, Brooks Landgraf, Ken King, J.M. Lozano, and Gyan Guillen; and eleven staff members to the lieutenant governor, senators, and representatives. All of the individual subpoena recipients are currently represented by the Texas Office of the Attorney General. *See* Dkt. 219 at 2 n.3.

control" of the documents. *Id.* at 6–9. In the alternative, Texas asks the court to issue a protective order because the subpoena seeks documents and ESI subject to legislative privilege. *Id.* at 10–18.

The United States counters that Texas lacks standing to challenge a third-party subpoena under Rule 45 because it cannot assert legislative privilege on behalf of individual legislators. Dkt. 227 at 3. To the extent the legislators assert privilege, the United States adds, they lack standing to quash the subpoena in its entirety because the privilege would not extend to the sum total of responsive materials. The United States also argues that the TLC has possession, custody, or control of the relevant materials because it has the "practical ability" to obtain the documents. *Id.* at 4–9. Finally, the United States contends that the subpoena is not duplicative because the TLC retains technical files used for redistricting purposes that are not also found in the legislators' files. *Id.* at 9–10.

## II.  DISCUSSION

First, the Court must address whether, and to what extent, Texas has standing to challenge the subpoenas served on the non-parties. Rule 45 provides that a party may serve a subpoena commanding a nonparty "to whom it is directed to . . . produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). Here, the TLC has not objected to the subpoena it received. Instead, Texas is objecting on behalf of itself and 26 legislators and their staff.

Parties have limited standing to quash subpoenas served on non-parties under Rule 45. "A party may not ask for an order to protect the rights of another party or a witness if that party or witness does not claim protection for himself." *Gulf Coast Energy LLC v. Bank of Am. Corp.*, CV H-13-2985, 2014 WL 12616133, at *1 (S.D. Tex. Dec. 2, 2014) (quoting 8A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE 2035 (3d ed. 2014)). Thus, a party does not have standing to quash a non-party subpoena on the basis that the non-party would be subjected to

undue burden when the non-party has itself failed to so object. *Id.* A party may object to a subpoena issued to a non-party only if the party asserts a "personal right or privilege with respect to the materials subpoenaed." *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979); *see Total RX Care, LLC v. Great N. Ins. Co.*, 318 F.R.D. 587, 594 (N.D. Tex. 2017) ("A party, although not in possession or control of the materials sought in a subpoena and not the person to whom the subpoena is directed, has standing to file a motion to quash or modify under [Rule] 45(d)(3) if it has a personal right or privilege in the subject matter of the subpoena or a sufficient interest in it."). Nevertheless, a party has standing to move for a protective order pursuant to Rule 26(c) seeking to limit the scope of discovery, even if the party does not have standing pursuant to Rule 45(d) to bring a motion to quash. *Bounds v. Cap. Area Fam. Violence Intervention Ctr., Inc.*, 314 F.R.D. 214, 218 (M.D. La. 2016).

Here, Texas does not purport to argue on behalf of the TLC.[2] Instead, Texas alleges privilege in the subject matter of the subpoena on behalf of itself and 26 individual legislators. But Texas cannot assert a claim of legislative privilege as to the responsive documents and ESI, as legislative privilege is personal to a legislator and cannot be invoked by the State. *See Perez v. Perry*, No. 5:11-cv-360, 2014 WL 106927, at *1 (W.D. Tex. Jan. 8, 2014) ("[N]either the Governor, nor the Secretary of State or the State of Texas has standing to assert the legislative privilege on behalf of any legislator or staff member that may be deposed"). To the extent the 26 individual legislators and staff assert privilege as to some documents or ESI in their assigned shared drives, the Court finds that they have alleged a "sufficient interest" in at least some of the documents and ESI to have standing to bring this motion.

---

[2] This Court previously held that "[f]or the purposes of party discovery in this redistricting litigation, the 'State of Texas' is made up of state executive agencies or officials who have information that is relevant to the factual basis for this claim." *LULAC v. Abbott*, 2022 WL 1540589, at *3 (W.D. Tex. May 16, 2022). The Court has not held that state legislative agencies are "parties" for purposes of discovery in this litigation.

Next, the Court addresses whether the subpoena should be quashed in its entirety for being duplicative of the subpoenas served on 26 legislators. The legislators argue that because the TLC subpoena is "nearly identical to the subpoenas issued to [them]," it in essence seeks the same documents from the TLC that the United States was unable to retrieve from the individual legislators. Dkt. 219 at 4. By contrast, the United States argues that while the legislators "do have a personal interest in some documents at issue, their interest also does not extend to the full set of responsive materials held by the TLC, such as draft maps crafted by other legislators." Dkt. 227 at 3.

The requested documents and ESI can be broadly separated into two categories: (1) documents related to redistricting that the TLC possesses to carry out its functions and (2) documents in shared folders assigned to individual legislators. There is no *per se* prohibition preventing a party from seeking third-party discovery from the TLC. Notwithstanding this reality, the Court recognizes—and the United States seemingly admits—the legislators may have personal interest in at least some of the responsive documents. But certainly not all. Some of the responsive ESI is related to redistricting software, research, and mapping data that the legislative officials have not specifically objected to in their motion as encompassing legislative privilege. Nor does the fact that a specific folder is assigned to an individual legislator protect all files in that folder as falling within the scope of legislative privilege. *See Jefferson Cnty. Health Care Cntrs., Inc. v. Jefferson Par. Gov't*, 840 F.3d 615, 624 (5th Cir. 2017) ("legislative privilege for state lawmakers is, at best, one which is qualified"). Moreover, that some of the documents requested from multiple parties may be duplicative is not enough for a party to quash a third-party subpoena. *Braddick*, 595 F.2d at 967; *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 817–818 (5th Cir. 2004) (a court

may quash a subpoena under Rule 45 for "undue burden" if the motion is brought by the subpoena holder). Thus, the Court declines to quash the subpoena in its entirety for being duplicative.

The Court now turns to the movants' next argument for quashing the subpoena: Texas law makes the individual legislators, not the TLC, custodians of the documents in the shared drives assigned to each legislator, and thus the TLC lacks legal authority to produce those documents. Dkt. 219 at 6–9. Forcing the TLC to produce the documents, movants argue, would permit an end run around the legislative and attorney-client privileges already invoked by them. *Id.*

Rule 45 requires production of materials that are in a third-party subpoena-recipient's "possession, custody or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). The movants spend much of their briefing explaining how state law, specifically Texas Government Code § 323.021, places the shared-drive files in the individual legislators' "possession, custody, and control for purposes of litigation." That is so, the movants argue, "even if such documents are accessible to [the] TLC because they are transmitted, stored, or maintained on legislative computer systems." Dkt. 219 at 7.

The statute that the movants rely on provides that "[a] member of the legislature, the lieutenant governor, an officer of the house or senate, or a legislative agency, office, or committee that uses a system made available by the council to transmit, store, or maintain records . . . possesses, maintains, or controls the records for purposes of litigation." Tex. Gov't Code § 323.021.[3] By virtue of this provision, the movants argue that the TLC has no "right," "authority" or "practical ability" under its originating statute to turn over documents that state law puts in the possession, custody, or control of the individual members or other state officials. Dkt.

---

[3] Texas argues that Tex. Gov't Code § 306.009 is also applicable here, but that statute refers only to records transferred with or to the Legislative Reference Library or the Texas State Library and Archives Commission. *See* Tex. Gov't Code 306.009. So it is inapplicable here.

219 at 9 (citing *Perez v. Perry*, 5:11-cv-360, 2014 WL 1796661, at *2 (W.D. Tex. May 6, 2014)). This raises the question to what extent a federal court is bound by state law purporting to limit who possesses, maintains, or controls records for purposes of litigation.

Federal courts have looked to state law to determine whether a party has control, *i.e.* the ability to command release of documents, for purposes of federal discovery. *See, e.g.*, *Correia v. Town of Framingham*, No. 12-10828-NMG, 2013 WL 952332, at *3 (D. Mass. Mar. 8, 2013); *Robinson v. Moskus*, 491 F. Supp. 3d 359, 364 (C.D. Ill. 2020). But the question of whether state law creates an evidentiary privilege that federal courts are bound to follow is a separate and distinct inquiry. Texas argues that § 323.021 creates just such an evidentiary privilege as applied to all ESI found in any shared TLC folder assigned to a particular legislator.

"Privileges are strongly disfavored in federal practice." *ACLU v. Finch*, 638 F.2d 1336, 1344 (5th Cir. Unit A 1981). "Except with respect to an element of a claim or defense as to which State law supplies the rule of decision, privileges shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." *Id.* at 1342. Because the claims in this case arise under federal and not state law, federal common law determines whether any evidentiary privilege applies. "When a litigant seeks to assert a privilege 'not existent in the common law but enacted by the (state) legislature based on unique considerations of government policy,'" this Court must test the privilege "by balancing the policies behind the privilege against the policies favoring disclosure." *Id.* (quoting *Fears v. Burris Mfg. Co.*, 436 F.2d 1357, 1362 (5th Cir. 1971), and *Carr v. Monroe Mfg. Co.*, 431 F.2d 384, 388-89 (5th Cir. 1970), *cert denied*, 400 U.S. 1000 (1971)). Two questions help to guide the Court's analysis: (1) whether Texas courts' recognition of the privilege provides good reason for also respecting the privilege in federal court, regardless of this Court's independent judgment of

its desirability; and (2) whether, in this Court's independent judgment, the privilege is intrinsically meritorious. *Id.* at 1343.

Federal interest in an independent evaluation of the claimed privilege is strong where one of the purposes of the Voting Rights Act is to provide a federal forum for the adjudication of voting-rights violations by state officials. *Id.* (reasoning "there is a 'special danger' in permitting state governments to define the scope of their own privilege when the misconduct of their agents is alleged" (quoting *Carr*, 431 F.2d at 388–89); *United States v. Gillock*, 445 U.S. 360, 373 (1980) (holding that comity yields where important federal interests are at stake). As such, we find that § 323.021 is not a *per se* bar to seeking discovery from the TLC in this case.

Nevertheless, because at least some of the material in the shared drives assigned to the individual legislators or their staff may contain material subject to the legislative privilege, the Court grants the individual legislators' motion for a protective order. *See* Fed. R. Civ. P. 26(b)(2) (permitting a district court to limit the extent of discovery if it is outside the scope of Rule 26(b)(1)). Moreover, the Court takes this action in the exercise of its broad discretion to manage discovery in a way that maximizes its efficiency and effectiveness. *See Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001) (district courts have broad discretion in all discovery matters); *Kleppinger v. Texas Dep't of Transp.*, CV No. L-10-124, 2012 WL 12893652, at *1 (S.D. Tex. Mar. 12, 2012) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery."). Thus, the Court modifies the subpoena as follows:

(1)   For the 26 individual legislators who joined this motion to quash and have asserted legislative privilege as to individual documents in the shared TLC folders assigned to them, the Court orders that the TLC is not to produce any documents or ESI from those folders. Any information produced from those files shall be produced by the individual legislators themselves, subject to their assertions of legislative privilege.

(2)    The TLC shall consult with any other legislators with shared TLC folders for which the TLC has access to determine which items, if any, in those folders those legislators seek to withhold pursuant to legislative privilege, The TLC shall then produce all responsive documents and ESI for which no privilege is asserted, and provide a privilege log for all items withheld.

(3)    The TLC shall produce all other responsive documents and ESI that it has access to, *i.e.* all electronic folders not assigned to individual legislators. Individual members of the TLC may assert legislative or attorney-client privilege as to individual documents.

(4)    The United States and the other plaintiffs may challenge, as they see fit, any assertion of privilege or withholding of documents or ESI made in accordance with this order.

**So ORDERED and SIGNED this 27th day of June 2022.**

_____
**DAVID C. GUADERRAMA**
**UNITED STATES DISTRICT JUDGE**

*And on behalf of:*

| | | |
|---|---|---|
| **Jerry E. Smith** | | **Jeffrey V. Brown** |
| **United States Circuit Judge** | *-and-* | **United States District Judge** |
| **U.S. Court of Appeals, Fifth Circuit** | | **Southern District of Texas** |