# EXHIBIT

# 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

STATE OF TEXAS and JOHN SCOTT, in his
official capacity as Texas Secretary of State,

Defendants.

Civil Action No. 3:21-cv-299

## **COMPLAINT**

The United States of America, plaintiff herein, alleges:

1.       The 2020 Census confirmed that Texas is one of the most diverse states in the

nation.  Anglos—*i.e.*, non-Latino White Texans—are now less than 40 percent of the State's

population, and Latinos soon will be the State's largest population group.  Between 2010 and

2020, Texas grew by nearly 4 million residents, and the minority population represents 95% of

that growth.

2.       Soon after the release of 2020 Census data, the Texas Legislature enacted

redistricting plans for the Texas Congressional delegation and the Texas House through an

extraordinarily rapid and opaque legislative process.

3.       The Legislature refused to recognize the State's growing minority electorate.

Although the Texas Congressional delegation expanded from 36 to 38 seats, Texas designed the

two new seats to have Anglo voting majorities.  Texas also intentionally eliminated a Latino

electoral opportunity in Congressional District 23, a West Texas district where courts had

identified Voting Rights Act violations during the previous two redistricting cycles.  It failed to

draw a seat encompassing the growing Latino electorate in Harris County. And it surgically excised minority communities from the core of the Dallas-Fort Worth Metroplex (DFW) by attaching them to heavily Anglo rural counties, some more than a hundred miles away, placing them in a congressional district where they would lack equal electoral opportunity.

4.     Texas also eliminated Latino electoral opportunities in the State House plan through manipulation or outright elimination of districts where Latino communities previously had elected their preferred candidates. In the San Antonio region and in South Texas, Texas replaced Latinos in House Districts 118 and 31 with high-turnout Anglo voters, eliminating minority electoral opportunities. And in El Paso and West Texas, the State eliminated a Latino opportunity district entirely—reducing the number of districts in which Latinos make up a citizen voting-age population majority from six to five—by overpopulating and packing majority-Latino districts and under-populating nearby majority-Anglo districts.

5.     This is not the first time Texas has acted to minimize the voting rights of its minority citizens. Decade after decade, Texas has enacted redistricting plans that violate the Voting Rights Act.

6.     In enacting its 2021 Congressional and House plans, the State has again diluted the voting strength of minority Texans and continued its refusal to comply with the Voting Rights Act, absent intervention by the Attorney General or the federal courts.

7.     The Attorney General files this action pursuant to Sections 2 and 12(d) of the Voting Rights Act of 1965, as amended, 52 U.S.C. §§ 10301 and 10308(d), to enforce voting rights guaranteed by the Fourteenth and Fifteenth Amendments to the United States Constitution.

8.     Section 2 of the Voting Rights Act prohibits enforcement of any voting qualification, prerequisite to voting, standard, practice, or procedure that either has a purpose of

denying or abridging the right to vote on account of race, color, or membership in a language minority group or results in the denial or abridgment of the right to vote on account of race, color, or language minority status.  The districting decisions described in this complaint violate Section 2.

## JURISDICTION AND VENUE

9.     This Court has original jurisdiction of this action under 28 U.S.C. §§ 1331, 1345, and 2201(a) and 52 U.S.C. § 10308(f).

10.    Venue is proper in this Court under 28 U.S.C. §§ 124(d)(3) and 1391(b).

## PARTIES

11.    The Voting Rights Act authorizes the Attorney General to file a civil action on behalf of the United States of America seeking injunctive, preventive, and permanent relief for violations of Section 2 of the Act, 52 U.S.C. § 10308(d).

12.    Defendant the State of Texas is one of the states of the United States of America.

13.    Defendant John Scott is the Texas Secretary of State.  The Texas Secretary of State is the State's chief election officer.  The Office of the Texas Secretary of State is responsible for maintaining uniform application, operation, and interpretation of all state election laws.  Secretary Scott's relevant duties include, but are not limited to, preparing detailed and comprehensive written directives and instructions and distributing these materials to the appropriate state and local authorities having duties in the administration of state election laws.  Secretary Scott also is empowered to order a person performing official functions in the administration of any part of the electoral processes to correct any conduct that impedes the free exercise of a citizen's voting rights.  Secretary Scott is sued in his official capacity.

## ALLEGATIONS

**The State of Texas**

14.     According to the 2020 Census, Texas has a total population of 29,145,505, with a Hispanic/Latino population of 11,441,717 (39.3%), a non-Hispanic Black/African American population of 3,629,872 (12.4%), and a non-Hispanic Asian American population of 1,717,386 (5.9%).

15.     According to the 2020 Census, Texas has a voting-age population (VAP) of 21,866,700, with a Hispanic/Latino VAP of 7,907,319 (36.2%), a non-Hispanic Black/African American VAP of 2,661,244 (12.2%), and a non-Hispanic Asian American VAP of 1,289,444 (5.9%).

16.     The 2015-2019 American Community Survey (ACS) estimated that the citizen voting age population (CVAP) of Texas was 18,181,330, with a Hispanic/Latino CVAP of 5,429,160 (29.9%), a non-Hispanic Black/African American CVAP of 2,383,950 (13.1%), and a non-Hispanic Asian American CVAP of 674,830 (3.7%).

17.     Applying 2015-2019 ACS localized adult citizenship rates to 2020 Census data provides a more contemporaneous CVAP estimate of 19,053,145, with a Hispanic/Latino CVAP of 5,758,435 (30.2%), a non-Hispanic Black/African American CVAP of 2,543,628 (13.4%), and a non-Hispanic Asian American CVAP of 845,903 (4.4%).  Although Texas has used a different methodology to estimate CVAP, its method creates a substantial time lag in dynamic statistics, counts "some people who live outside the district . . . in the district estimates," and excludes "some people who live in the district . . . in the district estimates."  Tex. Legis. Council, *Estimating Citizen Voting Age Population Data (CVAP)* 1 (2013).

18.     Between 2010 and 2020, the population of Texas increased by 3,999,944, according to U.S. Census data.  The Hispanic/Latino population increased by 1,980,796, accounting for 49.5% of overall growth; the non-Hispanic Black/African American population increased by 654,133, accounting for 16.4% of overall growth; and the non-Hispanic Asian American population increased by 689,430, accounting for 17.2% of overall growth.  By contrast, the non-Hispanic White population increased by 187,252, accounting for only 4.7% of overall growth.

**Redistricting in Texas**

19.     In every redistricting cycle since 1970, courts have found that one or more of Texas's statewide redistricting plans violated the United States Constitution or the Voting Rights Act.[1]  Moreover, after each decennial census during the period when Texas was required to obtain preclearance of redistricting plans under Section 5 of the Voting Rights Act, 52 U.S.C. § 10304, the State enacted redistricting plans for the Texas House that violated Section 5. Following the 1980 Census and 1990 Census, Texas also submitted plans for the Texas Senate or the Texas Congressional delegation that violated Section 5.  And during the 38 years that Texas was covered by Section 5 of the Voting Rights Act, the Attorney General issued another 50 objection letters regarding local districting or redistricting plans.

---

[1] *See Texas v. United States*, 887 F. Supp. 2d 133 (D.D.C. 2012) (three-judge court), *vacated*, 570 U.S. 928 (2013); *LULAC v. Perry*, 548 U.S. 399 (2006); *Balderas v. Texas*, No. 6:01-cv-158, 2001 WL 36403750 (E.D. Tex. Nov. 14, 2001) (three-judge court) (per curiam); *Bush v. Vera*, 517 U.S. 952 (1996); *Terrazas v. Slagle*, 789 F. Supp. 828 (W.D. Tex. 1991) (three-judge court), *aff'd sub nom. Richards v. Terrazas*, 505 U.S. 1214 (1992); *Upham v. Seamon*, 456 U.S. 37 (1982); *Terrazas v. Clements*, 537 F. Supp. 514 (N.D. Tex. 1982) (three-judge court) (per curiam); *McDaniel v. Sanchez*, 452 U.S. 130 (1981); *White v. Regester*, 412 U.S. 755 (1973); *White v. Weiser*, 412 U.S. 783 (1973).

20.     The State of Texas's lengthy history of discrimination in redistricting has continued unabated into the twenty-first century, as the Supreme Court recognized when holding that the State's 2003 Congressional redistricting plan "undermined the progress of a racial group that has been subject to significant voting-related discrimination." *LULAC v. Perry*, 548 U.S. 399, 438-40 (2006); *see also Bush v. Vera*, 517 U.S. 952, 981-82 (1996) (plurality opinion); *White v. Regester*, 412 U.S. 755, 767-70 (1973).

21.     During the last redistricting cycle, a three-judge court in Washington, D.C. found that Texas failed to prove that its 2011 Congressional and House plans would not effect a retrogression in the position of racial minorities with respect to their effective exercise of the electoral franchise and failed to prove that its 2011 Congressional and Senate plans were not enacted with discriminatory intent, although this decision was vacated after the Supreme Court's decision in *Shelby County v. Holder*, 570 U.S. 529 (2013). *See Texas v. United States*, 887 F. Supp. 2d 133, 154 (D.D.C. 2012) (three-judge court), *vacated*, 570 U.S. 928 (2013). A second three-judge court in San Antonio then affirmatively found that the 2011 Congressional and House plans had been enacted with discriminatory intent and that the 2013 House plan contained an unconstitutional racial gerrymander. *See Abbott v. Perez*, 138 S. Ct. 2305, 2334-35 (2018) (2013 House); *Perez v. Abbott*, 253 F. Supp. 3d 864 (W.D. Tex. 2017) (three-judge court) (2011 Congress); *Perez v. Abbott*, 250 F. Supp. 3d 123 (W.D. Tex. 2017) (three-judge court) (2011 House); *see also Abbott*, 138 S. Ct. at 2317 (declining to address 2011 plans).

**2021 Redistricting in Texas**

22.     On September 7, 2021, Texas Governor Greg Abbott announced a special legislative session to begin on September 20, for the purpose of drawing statewide redistricting plans.

6

23.     Once the special session began, redistricting plans and amendments moved at a rapid pace with little transparency and limited opportunities for witness testimony.

24.     Minority legislators frequently decried the compressed timeline, changes made without traditional deference to local delegations, the inability to invite expert testimony, the minimal opportunities for public input, and an overall disregard for massive minority population growth in Texas over the last decade.

25.     Governor Abbott signed both Senate Bill 6, the 2021 Congressional Plan, and House Bill 1, the 2021 House Plan, on October 25, 2021.

**Congressional Redistricting Process**

26.     The Congressional redistricting process was truncated because of the special session.  Only three weeks passed between the unveiling of the initial proposal and the final passage of the conference committee map.

27.     Prior to the start of the special session and the release of the Census data used for redistricting, the House Redistricting Committee, chaired by Representative Todd Hunter, and the Senate Redistricting Committee, chaired by Senator Joan Huffman, each held five hearings to gather public testimony, including permitting the submission of written comments and alternative redistricting plans through an online portal.

28.     On September 27, 2021, Senator Huffman released the initial statewide Congressional proposal.

29.     The initial proposal had been drawn based in part on direction from Republican members of the Texas Congressional delegation.  As a result, while most Anglo members of the Texas delegation had an opportunity to provide input on their districts, only one Latino member

of the delegation and no Black members of the delegation had an opportunity to provide input concerning their districts.

30.     Upon information and belief, individuals outside of the Texas legislature drew the initial proposal, and the outside software used to draw this initial plan did not include the home addresses of incumbent members.  This resulted in the pairing of two of the four Black Members of Congress from Texas in the initial statewide proposal.

31.     The Senate Special Committee on Redistricting held only two public hearings on the Congressional plan, on September 30 and October 4, 2021.  The full Senate passed the Congressional plan on October 8, 2021.  The House received the bill the very same day.

32.     Senator Huffman stated that the redistricting plans complied with the Voting Rights Act, but she declined to explain the substantive basis for that conclusion.

33.     Although House Redistricting Chair Hunter initially told members of the House Redistricting Committee that the Texas House would generate its own statewide Congressional plan, the Redistricting Committee instead took up the plan already passed by the Senate.  The Texas House officially took up the map passed by the Texas Senate on the same day as floor consideration of the Texas House redistricting plan, limiting the opportunity for legislators to analyze the Congressional plan and generate proposed amendments.

34.     On October 13, 2021, the House Redistricting Committee held its only public hearing on the Congressional plan.  The public was provided with only 24 hours' notice of the hearing, and witnesses were given just 12 hours to register to testify virtually.  The House Redistricting Committee voted the Congressional plan out of committee without adopting any amendments.

35.     The full Texas House considered the Congressional plan on October 16, 2021. Although the House adopted several amendments, it rejected any proposals that would have provided for additional minority electoral opportunity.  The Texas House passed the amended Congressional plan early in the morning on October 17, 2021.

36.     The Senate did not concur with the House amendments, and the House and Senate appointed a conference committee immediately.  The conference committee reported out the final Congressional plan later that day, on October 17, 2021.

37.     The full House and Senate passed the conference committee's plan the next day, on October 18, 2021.

38.     Governor Abbott signed the final Congressional plan into law on October 25, 2021.

**Texas Congressional District 23 (West Texas)**

39.     Using many of the same techniques applied in adopting the redistricting plans in 2011 and 2003, Texas intentionally reconfigured the 2021 version of District 23 to eliminate a Latino electoral opportunity.  District 23 in both the 2011 and 2003 Congressional plans violated the Voting Rights Act.  By eliminating a Latino electoral opportunity for the third time in three decades, Texas has demonstrated a recalcitrant refusal to recognize the rights of Latino voters in this region.

40.     In 2006, the Supreme Court addressed a Section 2 challenge to the 2003 configuration of District 23.  In doing so, the Court stated that the State's actions bore "the mark of intentional discrimination that could give rise to an equal protection violation."  *LULAC v. Perry*, 548 U.S. at 440.

41.     In 2012, a three-judge Court in Washington, D.C. found that although the version

of District 23 created in 2006 as a remedy after *LULAC v. Perry* had provided Latino voters with the ability to elect their preferred candidates, the 2011 Congressional plan "took that ability away." *Texas*, 887 F. Supp. 2d at 154. A three-judge court in Texas subsequently found that the 2011 Congressional plan's "manipulation of Latino voter turnout and cohesion in [District] 23 denied Latino voters equal opportunity and had the intent and effect of diluting Latino voter opportunity." *Perez*, 253 F. Supp. 3d at 908.

42.     Under the current Congressional plan, adopted in 2013, District 23 encompasses 26 whole counties in West Texas and portions of La Salle, Bexar, and El Paso Counties. Figure 1 depicts current District 23.

**Figure 1: Current Congressional District 23 (Adopted 2013)**



43.     This current configuration of District 23 is based on an interim remedy for a "not insubstantial" retrogression claim under Section 5 that was then pending before the U.S. District Court for the District of Columbia. *Perez v. Perry*, 891 F. Supp. 2d 808, 826-27 (W.D. Tex.

2012) (three-judge court).

44.     2020 Census data and 2015-2019 ACS citizenship data indicate that District 23 in

the 2013 Congressional Plan has a Latino CVAP concentration of 62.1% (63.2% by Texas's

estimate).  In 2020, Spanish Surname Voter Registration (SSVR) in the district was 54.1%, and

Spanish Surname Turnout (SSTO) was 47.8%.[2]

45.     Under the current configuration of District 23, elections in this district have been

close, with the winner receiving either a plurality or narrow majority of the vote.

46.     A cohesive majority of Latino voters in current District 23 have preferred Latino

Democrats in most primary and general elections.  Nonetheless, voters in District 23 last elected

a Latino Democrat in 2012.  In the 2020 general election, voters in District 23 elected Tony

Gonzales, a Latino Republican, with 50.6% of the vote.  Latino voters in District 23 offered

cohesive support to Gonzales' opponent, Democrat Gina Ortiz Jones (API).

47.     In the enacted 2021 Congressional plan, District 23 includes the same 26 whole

counties found in the current configuration, as well as all of La Salle County, a sparsely

populated county between Laredo and San Antonio.  However, the enacted 2021 version of

District 23 contains very different portions of Bexar County and El Paso County than the 2013

version.  It is from these counties that the new district draws most of its population.  Figure 2

depicts enacted District 23.

---

[2] SSVR denotes the percentage of registered voters with a last name on the State's Spanish
surname list, in November 2020 unless otherwise noted.  Unless otherwise noted, SSTO denotes
the percentage of voters who cast a ballot in the November 2020 general election whose last
name appears on the State's Spanish surname list.

**Figure 2: Enacted Congressional District 23 (Adopted 2021)**



48.     2020 Census data and 2015-2019 ACS citizenship data indicate that the Latino CVAP concentration in enacted 2021 District 23 is 56.3%, 5.8 percentage points lower than the Latino CVAP in current District 23.  Texas's estimate indicates that enacted 2021 District 23 has a Latino CVAP concentration of 57.8%, a drop of 5.4 percentage points from the estimate for current District 23.  In 2020, SSVR in enacted 2021 District 23 was 49.2%, a decrease of 4.9 percentage points from the current configuration.  And SSTO was 42.9%, again a decrease of 4.9 percentage points from the current configuration.  Table 1 sets out these changes in full.

**Table 1: Congressional District 23 Comparison**

| Latino CVAP | | SSVR | | SSTO | |
|---|---|---|---|---|---|
| 2013 Plan | 2021 Plan | 2013 Plan | 2021 Plan | 2013 Plan | 2021 Plan |
| 62.1 | 56.3 | 54.1 | 49.2 | 47.8 | 42.9 |

49.     Latino voters in District 23 are cohesive in the most relevant elections, including elections for District 23.

50.     In enacted 2021 District 23, bloc voting by Anglo voters will enable them to usually defeat Latino voters' preferred candidates.

51.     As in 2011, the enacted Congressional plan deliberately makes District 23 more Anglo and more Republican, thereby eliminating the opportunity for minority voters to elect their preferred candidates.  After Governor Abbott signed the enacted Congressional plan into law, Adam Kincaid, the executive director of the National Republican Redistricting Trust, told the *New York Times* that the "competitive Republican seats are off the board."

52.     Also as in 2011, Texas made District 23 less of an electoral opportunity for minority-preferred candidates by consciously replacing many of the district's active Latino voters with low-turnout Latino citizens, in an effort to strengthen the voting power of Anglo citizens while preserving the superficial appearance of Latino control.  Although the enacted 2021 Congressional plan reduces District 23's Latino CVAP by 9.3%, the plan reduces District 23's SSTO by 10.3%.  The average SSTO for the precincts that Texas removed from District 23 is 59.9%, while the average SSTO for the precincts that the State added to the district is 33.8%.

53.     And as in 2011, Texas again relied on split precincts when crafting the new 2021 District 23.  The State nearly quadrupled the number of split precincts in the district, from four in the 2013 Congressional plan to 15 in the 2021 Congressional plan.  More importantly, the borders of District 23 split precincts in a manner that removed approximately half of Latino CVAP from District 23 but removed only around one-third of Anglo CVAP from District 23.  While accurate racial data is available below the precinct level, accurate political data is not, suggesting that many precinct splits have a racial basis.

54.     During the redistricting process, Latino legislators advocated in both the Texas House and the Texas Senate for District 23 to remain a Latino opportunity district.  Legislators

specifically warned that failure to do so would raise an inference of intentional discrimination, in light of the lengthy history of Voting Rights Act litigation in this region.  One legislator even pointed out to his colleagues that the proposed configuration of District 23 combined areas with low Latino participation rates and areas with high Anglo turnout.  The Texas Legislature rejected the relevant amendments.

55.     Rather than intentionally eliminating a Latino opportunity district, lawmakers could have drawn District 23 as an effective Latino district.  The Latino population in West Texas is sufficiently large and geographically compact to constitute a majority in an additional single-member district that would provide Latino voters with an electoral opportunity.

**Texas Congressional Districts in the Dallas-Fort Worth Metroplex**

56.     The enacted Congressional plan intentionally discriminates against minority voters in DFW by excising rapidly changing communities from DFW-based districts and attaching them instead through a narrow strip to several heavily Anglo counties.  By cracking minority communities and submerging urban minority voters among rural Anglos, the Congressional map effectively turns back a decade of rapid Latino population growth and preserves Anglo control of most remaining districts, particularly District 24.

57.     Between the 2010 Census and the 2020 Census, Dallas County's population increased by over 245,000 residents.  The Latino population increased by 151,895, making up over 60% of that growth, such that Latinos now comprise roughly 41% of Dallas County's population and 37% of County VAP.  The Black population of Dallas County increased by 53,226, consistent with the overall growth rate, such that African Americans continue to comprise 22% of Dallas County's population and VAP.  At the same time, the Anglo population of Dallas County decreased by 59,706.  As a result, the Anglo population share of Dallas County

14

decreased from 33% to 28%, and Anglo VAP share decreased from 38% to 32%.

58.     Between the 2010 Census and the 2020 Census, Tarrant County's population increased by over 300,000 residents.  The Latino population increased by 137,930, making up 46% of that growth, such that Latinos now comprise 29% of Tarrant County's population and 26% of County VAP.  The Black population of Tarrant County increased by 105,101, making up 35% of that growth, such that African Americans now comprise 18% of Tarrant County's population and 17% of County VAP.  At the same time, the Anglo population of Tarrant County decreased by 32,251.  As a result, the Anglo population share of Tarrant County decreased from 52% to 43%, and Anglo VAP share decreased from 57% to 47%.

59.     In the current (2013) Congressional plan, nine districts are located at least partially in Dallas or Tarrant Counties: Districts 5, 6, 12, 24, 25, 26, 30, 32, and 33.  No district has a Black or Latino eligible voter majority.  However, Black eligible voters make up a near-majority in District 30, located in south Dallas County, and Latino eligible voters make up a near-majority in District 33, which extends across Dallas and Tarrant Counties.  Both Districts 30 and 33 in the 2013 Congressional plan provide minority voters with electoral opportunities.  Districts 5, 6, 12, 24, 25, 26, and 32 are primarily Anglo.  Figure 3 depicts the current Congressional Districts in DFW.

**Figure 3: DFW Current Congressional Plan (Adopted 2013)**



60.     A three-judge court in Texas established the layout of current District 33 to address intentional discrimination in the 2011 Congressional plan.  Following a full trial, the Court found that the State had "acted at least in part with a racially discriminatory motive in enact[ing] [the 2011] Congressional plan" with regard to the districts in DFW in particular." *Perez*, 253 F. Supp. 3d at 962.  This finding rested in part on the deliberate assignment of dense Latino neighborhoods to a "lightning bolt" extension into Tarrant County from a heavily Anglo district based in Denton County, a district where Latino voters would not have the opportunity to elect their preferred candidates.  *Id.* at 934-38, 947, 953-55.

61.     2020 Census data and 2015-2019 ACS citizenship data indicate that District 30 in the 2013 Congressional plan has a Black CVAP of 49.3% (51.9% by Texas's estimate).  Latino CVAP in District 30 is also 24.4% (23.0% by Texas's estimate).  Voters in District 30 consistently have elected Representative Eddie Bernice Johnson (B) since 1992.

62.     2020 Census data and 2015-2019 ACS citizenship data indicate that District 33 in the 2013 Congressional plan has a Latino CVAP of 47.8% (48.0% by Texas's estimate).  Black

16

CVAP in District 33 is also 24.2% (23.8% by Texas's estimate).  In 2020, SSVR in this district was 41.5%, and SSTO was 38.9%.  District 33 voters have elected Marc Veasey (B) across the last decade.

63.     Districts 5, 6, 12, 24, 25, 26, and 32—the Anglo-controlled districts—in the 2013 Congressional plan have Latino CVAP concentrations of 17.6%, 18.3%, 16.8%, 16.2%, 15.5%, 14.5%, and 16.3%, respectively (15.8%, 16.8%, 16.0%, 15.7%, 14.8%, 13.3% and 15.4% by Texas's estimate).  Black CVAP concentrations in those districts are 16.4%, 22.0%, 10.3%, 13.6%, 7.2%, 9.6%, and 14.2%, respectively (16.5%, 20.9%, 8.9%, 12.8%, 7.2%, 8.5%, and 13.5% by Texas's estimate).  In 2020, voters in these districts elected Representatives Lance Gooden (A), J.K. "Jake" Ellzey (A), Kay Granger (A), Beth Van Duyne (A), Roger Williams (A), Michael Burgess (A), and Colin Allred (B).

64.     District 24, a suburban district straddling Dallas, Denton, and Tarrant Counties, saw a particularly close election in 2020 between an Anglo candidate, Beth Van Duyne, and a Black-Latina candidate, Candace Valenzuela.  Though the district had reliably elected Anglo candidates over the last decade, the 2020 race was hotly contested and deemed a toss-up in the days leading up to the election.  Ultimately, Van Duyne defeated Valenzuela but only by a razor-thin margin—less than two percentage points.

65.     The enacted 2021 Congressional plan reconfigures the districts based in DFW, using configurations similar to the "lightning bolt" found to be intentionally discriminatory in the 2011 Congressional plan.  Figure 2 depicts the enacted 2021 Congressional plan for DFW.  (The unnumbered orange district is District 6.)

**Figure 4: DFW Enacted Congressional Plan (Adopted 2021)**



66.     In the enacted 2021 Congressional Plan, Districts 30 and 33—the two minority opportunity districts—have Black CVAP concentrations of 46.7% and 26.8%, respectively (49.0% and 27.1% by Texas's estimate).  These districts also have Latino CVAP concentrations of 21.9% and 41.2%, respectively (20.4% and 41.7% by Texas's estimate).

67.     In the enacted 2021 Congressional Plan, Districts 5, 6, 12, 24, 25, 26, and 32—the Anglo-controlled districts—have Latino CVAP concentrations of 18.4%, 21.9%, 17.6%, 12.5%, 15.4%, 13.4%, and 21.0%, respectively (16.5%, 20.8%, 16.5%, 11.7%, 14.3%, 12.5%, and 20.2%, by Texas's estimate).  Black CVAP concentrations in those districts are 14.7%, 15.3%, 11.7%, 7.0%, 11.7%, 9.4%, and 22.3%, respectively (14.1%, 14.6%, 10.5%, 6.0%, 11.1%, 8.3%, and 22.5%, by Texas's estimate).  Table 2 sets out the demographic changes in DFW Congressional districts in full.

**Table 2: DFW Congressional District Comparison**

| District | Latino CVAP | | Black CVAP | |
|---|---|---|---|---|
| | 2013 Plan | 2021 Plan | 2013 Plan | 2021 Plan |
| 5 | 17.6 | 18.4 | 16.4 | 14.7 |
| 6 | 16.8 | 20.8 | 20.9 | 14.6 |
| 12 | 16.0 | 16.5 | 8.9 | 10.5 |
| 24 | 15.7 | 11.7 | 12.8 | 6.0 |
| 25 | 14.8 | 14.3 | 7.2 | 11.1 |
| 26 | 14.5 | 13.4 | 9.6 | 9.4 |
| 30 | 23.0 | 20.4 | 51.9 | 49.0 |
| 32 | 15.4 | 20.2 | 13.5 | 22.5 |
| 33 | 48.0 | 41.7 | 23.8 | 27.1 |

68.     Among numerous changes in DFW, the enacted 2021 Congressional plan reduces the presence of District 24 in northwest Dallas County, moving the district out of most of the City of Irving.  This is notable because the incumbent, Beth Van Duyne, is a former Mayor of Irving.  However, Irving changed dramatically between the 2010 Census and the 2020 Census, shifting from majority Anglo in 2010 to barely one-fifth Anglo in 2020.  Thus, removing most of Irving removed a substantial minority community from District 24, a community that had threatened the electoral prospects of the Anglo incumbent.

69.     Only 19 precincts in current District 24, under the 2013 Congressional Plan, have a Latino CVAP concentration over 40%.  The enacted 2021 Congressional plan removes all but two of these precincts from District 24.  As a result, the district's Latino CVAP decreased by approximately 23%.  Moreover, the two precincts left in District 24 in the 2021 Congressional plan with substantial Latino CVAP have near-zero Latino electoral participation.

70.     For District 24 to lose most of Irving, neighboring District 33 had to move north.  However, simply moving the border of District 33 north would have left the district with substantial excess population.  Therefore, the enacted 2021 Congressional plan inserts an extension of District 6 into the middle of the Dallas portion of District 33 to take in that excess

population.

71.    The District 6 appendage resembles a seahorse in Dallas County, and it incorporates several diverse neighborhoods.  Much of the seahorse configuration overlaps with current House District 105, which elected Anglos in 2012, 2014, and 2016, before electing Representative Thresa "Terry" Meza (L) in 2018 and 2020.  This shift is particularly notable, given that a three-judge court in Texas found that House District 105 had originally been drawn based on race in 2011 to dilute Latino voting strength by maximizing the Anglo population of the district. *See Perez*, 250 F. Supp. 3d at 169-71.  The remainder of District 6 in the enacted 2021 Congressional plan includes seven rural majority-Anglo counties outside of Dallas County and Tarrant County.  Nonetheless, due in part to the addition of this appendage, the enacted 2021 Congressional plan increases the Latino CVAP share of District 6 by roughly 20%.

72.    The enacted 2021 Congressional plan maintains Districts 30 and 33 as minority opportunity districts but deliberately prevents minority voters from impacting elections in District 24.

73.    Latino voters in DFW, including Latino voters in enacted 2021 Congressional District 24, are cohesive in the most relevant elections.

74.    Black voters in DFW, including Black voters in enacted 2021 Congressional District 24, are cohesive in the most relevant elections.

75.    In enacted 2021 Congressional District 24, bloc voting by Anglo voters will enable them usually to defeat Latino and Black voters' preferred candidates.

**Texas Congressional Districts in Harris County**

76.    The enacted 2021 Congressional plan situates one of the two new Texas Congressional districts in Harris County, in and around Houston, due to massive population

growth in the area.  Most of that population growth occurred within the Latino community, but Texas crafted the new 38th Congressional district to give Harris County's shrinking Anglo population control of yet another Congressional seat.  Creating an additional Anglo seat dilutes Latino voting strength in Harris County, particularly because the population growth occurred primarily in the Latino community.

77.     Between the 2010 Census and the 2020 Census, Harris County's population increased by nearly 640,000.  The Latino population increased by 363,169, making up the majority of that growth, such that Latinos now comprise 43% of Harris County's population and 40% of County VAP.  At the same time, the Anglo population of Harris County decreased by 40,053.  As a result, Anglo population share decreased from 33% to 28%, and Anglo VAP share decreased from 37% to 31%.

78.     In the current 2013 Congressional plan, nine districts are located at least partially in Harris County: Districts 2, 7, 8, 9, 10, 18, 22, 29, and 36.  District 29, in eastern greater Houston, is the only one in which a majority of eligible voters are Latino, and this district provides Latino voters with an opportunity to elect their preferred representatives.  District 9, in southwestern greater Houston, and District 18, in central Houston and the surrounding areas, provide Black voters with electoral opportunities.  Districts 2, 7, 8, 10, 22, and 36 are primarily Anglo.  Figure 5 depicts the current congressional districts in Harris County.  (The unnumbered green district is District 10, and the unnumbered red district is District 36.)

**Figure 5: Current Harris County Congressional Districts (Adopted 2013)**



79.     2020 Census data and 2015-2019 ACS citizenship data indicate that District 29 in the 2013 Congressional plan 2013 has a Latino CVAP majority of 64.4% (65.1% by Texas's estimate) and provides Latino voters with electoral opportunity.  In 2020, SSVR in this district was 58.8%, and SSTO was 55.8%.  District 29 voters elected Representative Sylvia Garcia (L) by wide margins over her general election opponents in 2018 and 2020.  Voters in this district had elected Representative Gene Green (A) for over two decades, until his decision not to run for reelection in 2018.

80.     Districts 9 and 18—the two Black opportunity districts—in the 2013 Congresional plan have Latino CVAP concentrations of 27% and 28.3%, respectively (25.8% and 27.6% by Texas's estimate).  2020 SSVR in these districts was 19.5% and 21.2%, and 2020 SSTO was 18.1% and 19.6%, respectively.  Districts 9 and 18 also have Black CVAP concentrations of 45.3% and 42.9%, respectively (46.6% and 44.0% by Texas's estimate).

Voters in District 18 have elected Representative Sheila Jackson Lee (B) for over 25 years, and voters in District 9 have elected Representative Al Green (B) for the past 16 years.

81.     Districts 2, 7, 8, 10, 22, and 36—the Anglo-controlled districts—in the 2013 Congresional plan have Latino CVAP concentrations of 24%, 22.6%, 16.3%, 21.0%, 21.4%, and 19.6%, respectively (22.2%, 21.2%, 14.3%, 19.2%, 21.2%, and 18.1%, by Texas's estimate).   In 2020, SSVR in these districts was 17.4%, 15.5%, 10.8%, 14.5%, 16.2%, and 13.8%, and SSTO was 15.7%, 13.9%, 9.1%, 13.0%, 14.4%, and 11.8%, respectively.   In 2020, voters in these districts elected Representatives Dan Crenshaw (A), Lizzie Fletcher (A), Kevin Brady (A), Michael McCaul (A), Troy Nehls (A), and Brian Babin (A).

82.     The enacted 2021 Congressional plan creates a new District 38 in outlying northern and western Harris County, areas in which a majority of eligible voters are Anglo, while maintaining Anglo eligible voter majorities in Districts 2 and 8 and preserving substantial Anglo pluralities in Districts 7, 22, and 36.   Figure 6 depicts the enacted 2021 Congressional District plan for Harris County.   (The unnumbered orange district is District 36.)

**Figure 6: Enacted Harris County Congressional Districts (Adopted 2021)**



83.     The enacted 2021 Congressional plan prevents the emergence of a second Latino opportunity district by establishing roughly 18% to 21% Latino CVAP concentrations in each Anglo-controlled district, often by combining portions of Harris County with other more heavily Anglo counties.  The enacted Congressional plan also maintains roughly 25% to 28% Latino CVAP concentrations in the two Black opportunity districts, while also packing District 29 by adding Latino population to a district that already allowed Latino voters to elect their preferred candidates to Congress.

84.     In the enacted 2021 Congressional plan, 2020 Census data and 2015-2019 ACS citizenship data indicate that the new Congressional district, District 38, has a Latino CVAP concentration of 18.9% (17.7% by Texas's estimate).  2020 SSVR and SSTO in the district were 13.2% and 12.1%, respectively.

85.     In the enacted 2021 Congressional plan, Districts 2, 7, 8, 22, and 36—the existing Anglo-controlled districts—have Latino CVAP concentrations of 21.7%, 20.8%, 22.4%, 23.1%,

and 22.0%, respectively (19.2%, 19.8, 20.7%, 23.2%, and 20.7% by Texas's estimate).  In 2020, SSVR in these districts was 14.8%, 14.3%, 16.0%, 17.1%, and 16.2%, and SSTO was 13.3%, 13.1%, 14.1%, 14.5%, and 14.2%, respectively.  District 10 in the enacted plan no longer enters Harris County.

86.     In the enacted 2021 Congressional Plan, Districts 9 and 18—the two Black opportunity districts—have Latino CVAP concentrations of 25.8% and 28.5% respectively (24.4% and 27.9% by Texas's estimate).  2020 SSVR in these districts was 19.0% and 21.5%, and 2020 SSTO was 17.1% and 19.9%, respectively.  Districts 9 and 18 also have Black CVAP concentrations of 45.4% and 40.3%, respectively (46.8% and 40.9% by Texas's estimate).

87.     In the enacted 2021 Congressional Plan, District 29 has a Latino CVAP concentration of 62.0% (62.2% by Texas's estimate).  2020 SSVR in this district was 56.2%, and 2020 SSTO was 53.1%.  Table 3 sets out the Latino demographic changes in Harris County Congressional districts.

**Table 3: Harris County Congressional District Comparison**

| District | Latino CVAP | | SSVR | |
|---|---|---|---|---|
| | 2013 Plan | 2021 Plan | 2013 Plan | 2021 Plan |
| 2 | 22.2 | 19.2 | 17.4 | 14.8 |
| 7 | 21.2 | 19.8 | 15.5 | 14.3 |
| 8 | 14.3 | 20.7 | 10.8 | 16.0 |
| 9 | 25.8 | 24.4 | 19.5 | 19.0 |
| 10 | 21.0 | n/a | 14.5 | n/a |
| 18 | 27.6 | 27.9 | 21.2 | 21.5 |
| 22 | 21.4 | 23.1 | 16.2 | 17.1 |
| 29 | 65.1 | 62.2 | 58.8 | 56.2 |
| 36 | 19.6 | 22.0 | 13.8 | 16.2 |
| 38 | | 17.7 | | 13.2 |

88.     Enacted District 38 does not provide an opportunity for Latino voters to elect representatives of their choice.

89.     The creation of another Latino electoral opportunity Congressional district in Harris County was discussed during the legislative redistricting process.  Indeed, minority legislators introduced alternative plans with the stated goal of creating a new Latino opportunity district in Harris County, without undermining minority electoral opportunities elsewhere in the Houston area.  The Texas House and the Texas Senate declined to adopt these amendments.

90.     Senator Huffman, the Chair of the Senate Special Committee on Redistricting, publicly stated that, after discussion with the Office of the Texas Attorney General, "we saw no strong basis in evidence that a new minority opportunity district should be drawn in the new maps."  However, she did not provide the relevant analysis to other members of the Senate.

91.     The Latino community in Harris County is sufficiently large and geographically compact to constitute a majority in a second single-member district that would provide Latino voters with an electoral opportunity, without undermining existing opportunity districts. Specifically, a second Latino opportunity district can be crafted in southeastern Harris County, composed of parts of current Districts 2, 29, and 36.

92.     In the past decade, multiple courts have found that voting is racially polarized in Harris County.  *See, e.g. Rodriguez v. Harris Cnty.*, 964 F. Supp. 2d 686, 754-75 (S.D. Tex. 2013).

93.     Latino voters in Harris County, including Latino voters in enacted District 38, are cohesive in the most relevant elections.

94.     In enacted 2021 District 38, bloc voting by Anglo voters will enable them usually to defeat Latino voters' preferred candidates.

**2021 Texas House Redistricting Process**

95.     Following Texas House tradition, House Redistricting Committee Chair Hunter solicited proposed maps from members, beginning on September 9, 2021.  This included both requests for individual proposed districts and requests for "consent plans," on which all members of a county delegation had agreed, to be dropped into a statewide proposal.  By tradition, the Texas House typically defers to consent redistricting plans submitted by a complete county delegation.

96.     Chair Hunter unveiled a statewide proposed House plan on September 30, 2021.

97.     The House Redistricting Committee held its sole hearing on the House plan on October 4, 2021.  When laying out his proposal, Chair Hunter repeatedly asserted that the Committee should rely on minority VAP, rather than CVAP, which he claimed "leave[s] out important information."  This ignored decades of Voting Rights Act precedent.

98.     During the October 4 hearing, Chair Hunter also acknowledged that he had hired Adam Foltz, a Wisconsin-based redistricting operative, to draw maps and placed him on the payroll of the nonpartisan Texas Legislative Council, rather than on the House Redistricting Committee.  This effectively hid Foltz's role from other members of the Redistricting Committee until the *Texas Tribune* published a story on September 29.

99.     The House Redistricting Committee adopted only two substantial changes to the statewide House proposal, neither of which improved electoral opportunities for minority voters.

100.    Consideration of the House redistricting plan on the Texas House floor began on October 12 and concluded with a final vote after 3 a.m. on October 13.  Overall, less than two weeks passed between introduction of the statewide proposal and the final substantive consideration.

101.    During floor debate, the House rejected numerous amendments proposed by minority members to increase minority voters' electoral opportunities and influence.  On the other hand, floor amendments substantially altered several majority-minority districts, against the wishes of most members of the local delegations.

102.    Of particular note, Representative Jacey Jetton of Fort Bend County carried an amendment to districts in Bexar County, although during debate he was unable to provide substantive details regarding the proposal.  The Bexar County delegation had agreed to a consent redistricting plan for Bexar County, and the Jetton Amendment substantially altered that plan.  The House approved the Amendment over the objection of most of the Bexar County delegation and established the final configuration of District 118.

103.    The Texas Senate passed the Texas House plan without amendment, and the Texas Legislature sent House Bill 1, the 2021 House Plan, to Governor Abbott on October 18, 2021.  Governor Abbott signed House Bill 1 into law on October 25, 2021.

**Texas House District 118 (Bexar County)**

104.    The enacted House plan eliminates Latino voters' opportunity to elect representatives of their choice in District 118, a Bexar County district in and around the City of San Antonio.  The enacted plan substantially reduces Latino population share to the point that the district no longer has a majority 2020 SSVR or SSTO, thereby enabling Anglo voters to defeat Latino voters' preferred candidates, even in high turnout general elections.

105.    In the current (2013) House plan, District 118 includes dense neighborhoods within Loop 410, southern San Antonio, outlying communities in southern Bexar County, and a small portion of eastern and northeastern Bexar County, including Randolph Air Force Base.  Figure 7 depicts current House District 118.

28

**Figure 7: Current House District 118 (Adopted 2013)**



106.     2020 Census data and 2015-2019 ACS citizenship data indicate that the 2013 version of District 118 has a Latino CVAP concentration of 68.1% (68.2% by Texas's estimate). In 2020, SSVR in District 118 was 59.5%, and SSTO was 55.7%.

107.     District 118 consistently elected Latino Democrats in regular elections through the past decade.  In the 2020 general election, voters in District 118 reelected Representative Leo Pacheco with 56.8% of the 58,558 votes cast.  However, in August 2021, Representative Pacheco resigned to take a full-time college teaching position.

108.     In low turnout special elections in 2016 and 2021, voters in District 118 elected a Latino Republican, John Lujan, who was not the Latino candidate of choice.  In January 2016, Lujan won a special election with 52.4% of only 3,589 votes cast, and his same Democratic opponent defeated him in the 2016 general election.  Lujan won again in a November 2021

special election, this time with 51.2% of the 11,569 votes cast, and he currently represents the district.

109.    The House Redistricting Committee plan in 2021 left District 118 largely intact, reflecting the agreed-upon plan of the Bexar County delegation.  However, Representative Jetton of Fort Bend County offered an amendment on the House floor that reconfigured District 118. Despite the objection of most members of the Bexar County delegation, the House adopted the Jetton Amendment, which established the final configuration of District 118.

110.    In the enacted 2021 House plan, District 118 loses much of its territory inside Loop 410, including nearly all of the dense Latino neighborhoods north of SW Military Drive. To replace this lost population, the enacted plan adds large portions of southwest Bexar County and increases the portion of the district on the eastern and northeastern boundary of Bexar County, particularly around Randolph Air Force Base.  Figure 8 depicts enacted House District 118.

### Figure 8: Enacted House District 118 (Adopted 2021)

111.    2020 Census data and 2015-2019 ACS citizenship data indicate that enacted 2021 District 118 has a Latino CVAP concentration of 57.5%, a reduction of 10.6 percentage points from the current plan.  Texas's estimate indicates that District 118 in the enacted 2021 House plan has a Latino CVAP concentration of 56.4%, a reduction of 11.8 percentage points from the current plan.  In 2020, SSVR in enacted 2021 District 118 was 47.6%, and SSTO was 43.9%.  Thus, the enacted 2021 House plan reduces SSVR in District 118 by 11.9 percentage points and reduces SSTO in District 118 by 11.8 percentage points, eliminating the Latino voting majority.  Table 4 sets out these changes in full.

**Table 4: House District 118 Comparison**

| Latino CVAP | | SSVR | | SSTO | |
|---|---|---|---|---|---|
| 2013 Plan | 2021 Plan | 2013 Plan | 2021 Plan | 2013 Plan | 2021 Plan |
| 68.1 | 57.5 | 59.5 | 47.6 | 55.7 | 43.9 |

112.    Enacted 2021 District 118 no longer provides an opportunity for Latino voters to elect representatives of their choice.

113.    The elimination of a Latino electoral opportunity in the 2021 version of District 118 was easily avoidable.  The House Redistricting Committee's statewide map preserved the Latino electoral opportunity in District 118, without undermining minority electoral opportunities elsewhere in Bexar County.

114.    District 118 in the statewide plan passed by the Texas House Redistricting Committee (H2176) can serve as an illustrative district demonstrating that the Latino community in southern Bexar County is sufficiently large and geographically compact to constitute a majority in an additional single-member district that would provide Latino voters with an electoral opportunity.

115.    Latino voters in District 118 under both the current 2013 House plan and the enacted 2021 House plan are cohesive in the most relevant elections in the last decade.

116.    In District 118 under the enacted 2021 House plan, bloc voting by Anglo voters will enable them usually to defeat Latino voters' preferred candidates.

**Texas House District 31 (South Texas)**

117.    The enacted 2021 House plan also eliminates Latino voters' opportunity to elect representatives of their choice in District 31, a South Texas district stretching from the Rio Grande to the San Antonio region.  The enacted 2021 plan substantially reduces Latino population share and takes advantage of extreme Anglo bloc voting to overwhelm the working-class Latino electorate.  Although Latino voters in District 31 reelected their preferred candidate by a comfortable margin in 2020, the incumbent switched parties shortly after Governor Abbott signed the House plan into law.

118.    In the current 2013 House plan, District 31 encompasses ten sparsely populated South Texas counties.  Figure 9 depicts current House District 31.

**Figure 9: Current House District 31 (Adopted 2013)**



119.  2020 Census data and 2015-2019 ACS citizenship data indicate that District 31 in the 2013 House plan has a Latino CVAP concentration of 75.4% (77.2% by Texas's estimate). In 2020, SSVR in District 31 was 74.1%, and SSTO was 68.7%.

120.  Representative Ryan Guillen has represented House District 31 since 2003.  In the 2020 general election, voters in District 31 reelected Guillen with over 58% of the vote.

121.  Representative Guillen served on the House Redistricting Committee, but he did not appear to have had significant input into the composition of his district.  District 31 did not change from the statewide initial proposal to the final enacted plan.

122.    In the enacted 2021 House plan, District 31 includes 11 counties, extending

further north than in the current configuration.  Figure 10 depicts enacted 2021 House District

31.

**Figure 10: Enacted House District 31 (Adopted 2021)**



123.    2020 Census data and 2015-2019 ACS citizenship data indicate that enacted 2021

District 31 has a Latino CVAP concentration of 64.5%, a reduction of 10.9 percentage points

from the current plan.  Texas's estimate indicates that 2021 District 31 has a Latino CVAP

concentration of 66.6%, a reduction of 10.6 percentage points from the current plan.  In 2020,

SSVR in enacted 2021 District 31 was 63.9%, and SSTO was 56.3%.  Thus, the enacted 2021

House plan reduces SSVR in District 31 by 10.2 percentage points and reduces SSTO in District

31 by 12.4 percentage points.  Table 5 sets out these changes in full.

### Table 5: House District 31 Comparison

| Latino CVAP | | SSVR | | SSTO | |
|---|---|---|---|---|---|
| 2013 Plan | 2021 Plan | 2013 Plan | 2021 Plan | 2013 Plan | 2021 Plan |
| 75.4 | 64.5 | 74.1 | 63.9 | 68.7 | 56.3 |

124.     Enacted 2021 District 31 no longer provides an opportunity for Latino voters to elect representatives of their choice.

125.     Soon after passage of the 2021 House plan, political observers identified the district as substantially less favorable to Representative Guillen.  Although voters in District 31 had elected Guillen as a Democrat for nearly two decades, less than a month after enactment of the 2021 House plan, Guillen switched parties from Democratic to Republican.

126.     The elimination of a Latino electoral opportunity in the 2021 version of District 31 was easily avoidable.  For example, by moving Jim Wells County and Kleberg County from District 43 to District 31 and moving Wilson County and Karnes County from District 31 to District 43, it would be possible to reduce overall population deviations in the two districts, improve compactness, and restore Latino voting strength in District 31.

127.     An illustrative district composed of the following eleven whole counties would establish that the Latino community in South Texas is sufficiently large and geographically compact to constitute a majority in an additional single-member district that would provide Latino voters with an electoral opportunity: Brooks, Duval, Kenedy, Jim Hogg, Jim Wells, Kleberg, La Salle, Live Oak, McMullen, Starr, and Zapata.

128.     Latino voters in District 31 are cohesive in the most relevant elections, including elections for House District 31.

129.    In District 31 under the enacted 2021 House plan, extreme bloc voting by Anglo voters will enable them usually to defeat Latino voters' preferred candidates, despite Latino voters making up a majority of the electorate.

130.    Latino voters in South Texas bear the effects of discrimination to an even greater degree than do minority voters in some other parts of the State, which hinders their ability to participate effectively in the political process despite population majorities.  For example, the estimated average per capita income for Latino residents of Starr County—the most populous border county in District 31—is only $14,126, according to 2015-2019 ACS data.  In Wilson County, a majority-Anglo County added to District 31 by the enacted House plan, the estimated average per capita income for Anglo residents is $37,788, according to the same data.

**Texas House Districts in El Paso and West Texas**

131.    The enacted 2021 House plan entirely removes District 76 from El Paso County, eliminating an effective Latino opportunity district and pairing two Latina incumbents.  This allowed the House plan to substantially overpopulate heavily Latino districts in El Paso County and West Texas and substantially underpopulate heavily Anglo districts in West Texas and the Panhandle, protecting Anglo voting strength and Anglo incumbents in a slow-growth region.

132.    Under the current 2013 House plan, El Paso County and West Texas are divided into six heavily Latino districts.

133.    Under the current 2013 House plan, five districts are contained entirely within El Paso County (Districts 75, 76, 77, 78, and 79), and a sixth, District 74, is spread across twelve counties.  Figure 11 depicts the current 2013 House districts in El Paso County and West Texas.

**Figure 11: Current El Paso and West Texas House Districts (Adopted 2013)**



134.    2020 Census data and 2015-2019 ACS citizenship data indicate that Districts 74, 75, 76, 77, 78, and 79 in the 2013 House plan have Latino CVAP concentrations of 74.5%, 87.7%, 86.7%, 74.3%, 66.5%, and 78.5%, respectively (74.5%, 89.4%, 85.8%, 73.3%, 65.4%, and 79.2% by Texas's estimate).  In 2020, SSVR in these districts was 67.7%, 76.6%, 79.7%, 62.4%, 53.2%, and 69.5%, and 2020 SSTO was 62.9%, 75.9%, 80.1%, 60.7%, 52.7%, and 70.6%.

135.    In 2020, voters in these districts elected Eddie Morales (L), Mary González (L), Claudia Ordaz Perez (L), Evelina "Lina" Ortega (L), Joe Moody (L), and Art Fierro (L).

136.    Few elections for the Texas House have been contested in these districts.

137.    In the current 2013 House plan, each of these districts provided Latino voters with the opportunity to elect their preferred representatives to the Texas House.

138.     In the enacted 2021 House plan, Districts 74, 75, 77, 78, and 79 include a portion of El Paso County.  District 76 has been removed entirely from the region.  Figure 12 depicts the enacted 2021 House districts in El Paso County and West Texas.

**Figure 12: Enacted El Paso and West Texas House Districts (Adopted 2021)**



139.     In the enacted 2021 House plan, the five remaining districts in El Paso and West Texas are uniformly overpopulated, by an average of 4.25% above the ideal population.  District 77 is overpopulated by 4.95% above the ideal, and District 78 is overpopulated by 4.88% above the ideal.

140.     Because the enacted 2021 House Plan overpopulated the El Paso and West Texas districts, it is possible to uniformly underpopulate heavily Anglo districts in West Texas and the Panhandle.  Specifically, Districts 69, 71, 72, 82, 83, 84, 86, 87, and 88 are underpopulated by an average of 3.75% below the ideal population.  District 69 is underpopulated by 4.52% below the

ideal, and District 86 is underpopulated by 4.63% below the ideal.  Both are less than 25% Latino CVAP.

141.    By removing District 76 from El Paso County, the enacted 2021 House plan pairs Representative Claudia Ordaz Perez of District 76 and Representative Lina Ortega of District 77.

142.    By moving District 74 into El Paso County, the enacted 2021 House plan pairs sizeable Latino communities in El Paso and Eagle Pass, which are nearly 500 miles apart.

143.     In the enacted 2021 House plan, 2020 Census data and 2015-2019 ACS citizenship data indicate that Districts 74, 75, 77, 78, and 79 have Latino CVAP concentrations of 75.6%, 87.9%, 86.0%, 67.4%, and 76.6%, respectively (77.4%, 89.8%, 85.6%, 66.4%, and 75.1% by Texas's estimate).  In 2020, SSVR in these districts was 68.2%, 76.9%, 76.6%, 53.9%, and 67.4%, and 2020 SSTO was 65.2%, 76.0%, 75.9%, 52.8%, and 69.0%, respectively.  Table 6 sets out those changes in full.

**Table 6: El Paso and West Texas House District Comparison**

| District | Latino CVAP | | SSVR | |
|---|---|---|---|---|
| | 2013 Plan | 2021 Plan | 2013 Plan | 2021 Plan |
| **74** | 74.5 | 75.6 | 67.7 | 68.2 |
| **75** | 87.7 | 87.9 | 76.6 | 76.9 |
| **76** | 86.7 | n/a | 79.7 | n/a |
| **77** | 74.3 | 86.0 | 62.4 | 76.6 |
| **78** | 66.5 | 67.4 | 53.2 | 53.9 |
| **79** | 78.5 | 76.6 | 69.5 | 67.4 |

144.    Latino voters in El Paso and West Texas are cohesive in the most relevant elections in the past decade.

145.    Latino voters in this region outside of Districts 74, 75, 77, 78, and 79 in the enacted 2021 House plan—most notably in Districts 53 and 81—will not be able to elect their preferred candidates due to Anglo bloc voting.

146.    The elimination of District 76 as a Latino electoral opportunity district in the enacted 2021 House plan could have been avoided.  The Latino community in El Paso and West Texas is sufficiently large and geographically compact to allow for six districts with Latino CVAP majorities that would provide an electoral opportunity to Latino voters.  In one such configuration, District 75 would include a portion of El Paso County and areas to the east, whereas District 74 would extend father north from the border, while still maintaining an adequate Latino population share to provide an electoral opportunity.

**Additional Facts Relevant to Inquiry into Discriminatory Purpose and Totality of Circumstances**

147.    Texas has a long history of official discrimination touching on the right to vote. Beyond redistricting, as described in Paragraphs 19-21, *supra*, federal intervention has been necessary to eliminate numerous other procedures or devices intentionally used to restrict minority voting in Texas.  *See, e.g.*, *White*, 412 U.S. at 768 (poll tax); *Terry v. Adams*, 345 U.S. 461 (1953) (private primary); *Smith v. Allwright*, 321 U.S. 649 (1944) (white primary); *Nixon v. Herndon*, 273 U.S. 536 (1927) (exclusion of minorities).  In recent years, courts have found that Texas's voter identification requirements discriminated against minority voters.  *See, e.g.*, *Veasey v. Abbott*, 830 F.3d 216, 243-65 (5th Cir. 2016) (en banc).

148.    Voting in Texas continues to be racially polarized throughout much of the State. By one recent estimate, Anglo voters and Latino voters in Texas differ in their support for statewide candidates by 30-40 percentage points.  *See, e.g.*, *Veasey*, 830 F.3d at 258.  This perpetuates a longstanding pattern of statewide polarization previously recognized by the Supreme Court.  *See LULAC*, 548 U.S. at 427.

149.    Based on 2020 Census data and 2015-2019 ACS citizenship data, proportional representation for Latino voters in Texas would be 11 Congressional seats and 45 Texas House

seats.  Under the enacted 2021 plans, Latino voters have the opportunity to elect their preferred candidates in 7 Congressional seats and 29 Texas House seats.  Latino voters also have the opportunity to contribute to the election of preferred candidates in coalition with other minority voters in one Congressional seat and 5 Texas House seats.

150.    Based on 2020 Census data and 2015-2019 ACS citizenship data, proportional representation for Black voters in Texas would be 5 Congressional seats and 20 Texas House seats.  Under the enacted plans, Black voters have the opportunity to elect their preferred candidates in roughly 3 Congressional seats and 13 Texas House seats.  Black voters also have the opportunity to contribute to the election of preferred candidates in coalition with other minority voters in one Congressional seat and 5 Texas House seats.

151.    Latinos and African Americans are underrepresented as elected officials in Texas, including in the Texas delegation to the U.S. House of Representatives and the Texas House.  Over sixty percent of Texas Legislators in the 87th Legislature are Anglo, even though Anglos make up only 40% of Texas's population, 43% of the State's VAP, and a bare majority of Texas's CVAP.

152.    According to the Census Bureau Current Population Survey, only 63% of eligible Latino Texans and 70% of eligible Black Texans were registered to vote in the 2020 Presidential election, as compared to over 78% of eligible Anglo Texans.  Overall, according to the Current Population Survey, only 53% of eligible Latino Texans and 61% of Black Texans voted in the 2020 Presidential elections, as compared to 72% of eligible Anglo Texans.

153.    As of November 2020, only 24% of registered voters in Texas had Spanish surnames (as defined by the State), substantially less than the Latino CVAP share.

154.     Significant socioeconomic disparities exist between Anglo and Latino residents of Texas.  These disparities hinder the ability of Latino residents to participate effectively in the political process.

155.     According to ACS data, Latinos and Blacks in Texas experience poverty at roughly twice the rate of Anglos, and the Anglo median household income is over one and one-half times Latino and Black median household levels.  Latinos and Blacks in Texas are also far more likely than Anglos to be unemployed and to lack a high school diploma.

156.     In the third quarter of 2021, the unemployment rate for Black Texas residents was 9.2%, more than double the 4.1% unemployment rate for Anglo Texans.  The unemployment rate for Latino Texans was 7.0%, again nearly twice as high as the rate for Anglo Texans.

157.     Minority Texans also lack health insurance at substantially higher rates than do Anglo Texas, with over a quarter of Latino Texans uninsured.

158.     In areas including education, employment, and housing, Texas and jurisdictions across the State similarly have engaged in widespread official discrimination.  *See, e.g.*, Consent Decree, *United States v. City of Austin*, No. 1:14-cv-533 (W.D. Tex. June 9, 2014), ECF No. 3-4 (employment); *United States v. Texas*, 601 F.3d 354, 373-74 (5th Cir. 2010) (education); *Dews v. Town of Sunnyvale*, 109 F. Supp. 2d 526, 571-73 (N.D. Tex. 2000) (housing).

159.     Some Texas Congressional and legislative districts are geographically enormous, which impedes the ability of minority voters to participate in the political process.

160.     Some political campaigns in Texas have been characterized by racial appeals.

**CAUSE OF ACTION**

161.     The United States realleges and incorporates by reference the allegations set forth above.

162.     Section 2 of the Voting Rights Act establishes that "[n]o voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race[,] color, [or membership in a language minority group]."  52 U.S.C. § 10301(a).

163.     A violation of Section 2 "is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by [Section 2] in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice."  52 U.S.C. § 10301(b).

164.     The 2021 Congressional Plan has the purpose of denying or abridging the right to vote on account of race, color, or membership in a language minority group in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301.

165.     The 2021 Congressional Plan results in a denial or abridgement of the right of citizens of the United States to vote on account of race, color, or membership in a language minority group, in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301.

166.     The 2021 House Plan results in a denial or abridgement of the right of citizens of the United States to vote on account of race, color, or membership in a language minority group, in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301.

167.     Unless enjoined by order of this Court, Defendants will continue to violate Section 2 by administering, implementing, and conducting elections for the Texas Congressional delegation and the Texas House using the 2021 Congressional Plan and the 2021 House Plan.

## PRAYER FOR RELIEF

WHEREFORE, the United States prays that the Court enter an order:

(1)    Declaring that the 2021 Congressional Plan has the purpose of denying or abridging the right to vote on account of race, color, or membership in a language minority group in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301;

(2)    Declaring that the 2021 Congressional Plan results in a denial or abridgement of the right of any citizen of the United States to vote on account of race, color, or membership in a language minority group, in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301;

(3)    Declaring that the 2021 House Plan results in a denial or abridgement of the right of any citizen of the United States to vote on account of race, color, or membership in a language minority group, in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301;

(4)    Enjoining Defendants, their agents and successors in office, and all persons acting in concert with them from administering, implementing, or conducting any future elections for the Texas Congressional Delegation under the 2021 Congressional Plan and for the Texas House and the 2021 House Plan;

(5)    Establishing interim redistricting plans for the Texas Congressional Delegation and the Texas House that remedy unlawful components of the 2021 Congressional Plan and 2021 House Plan;

(6)    Ordering Defendants to devise and implement permanent redistricting plans for the Texas Congressional Delegation and the Texas House that comply with Section 2 of the Voting Rights Act;

(7)    Directing Defendants, their agents and successors in office, and all persons acting in concert with them to take appropriate action to ensure uniform compliance with this Court's

order by state and local authorities administering the State's electoral processes; and

(8)     Granting such additional relief as the interests of justice may require.

Date: December 6, 2021

PAMELA S. KARLAN
Principal Deputy Assistant Attorney General
Civil Rights Division

*/s/ Daniel J. Freeman*
T. CHRISTIAN HERREN, JR.
TIMOTHY F. MELLETT
DANIEL J. FREEMAN
JANIE ALLISON (JAYE) SITTON
JACKI L. ANDERSON
JASMIN LOTT
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530