EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS (LULAC), et al.,<br><br>     Plaintiffs,<br><br>   v.<br><br>GREG ABBOTT, et al.,<br><br>     Defendants. | Civil Action No. 3:21-cv-259 (DCG-JES-JVB) (consolidated cases) |

## UNITED STATES' AMENDED COMPLAINT

The United States of America, plaintiff herein, alleges:

1.   The 2020 Census confirmed that Texas is one of the most diverse states in the nation. Anglos—*i.e.*, non-Hispanic White Texans—are now less than 40 percent of the State's population, and Latinos soon will be the State's largest population group. Between 2010 and 2020, Texas grew by nearly 4 million residents, and the minority population represents 95% of that growth.

2.   Soon after the release of 2020 Census data, the Texas Legislature enacted redistricting plans for the Texas Congressional delegation and the Texas House of Representatives through an extraordinarily rapid and opaque legislative process.

3.   The Legislature refused to recognize the State's growing minority electorate. Although the Texas Congressional delegation expanded from 36 to 38 seats, Texas designed the two new seats to have Anglo voting majorities. Texas also intentionally drew Congressional District 23, a West Texas district where courts had identified Voting Rights Act violations during the previous two redistricting cycles, to foreclose any Latino electoral opportunity. The State

also failed to draw a seat encompassing the growing Latino electorate in Harris County. And Texas surgically excised minority communities from the core of the Dallas-Fort Worth Metroplex (DFW), undermining their growing electoral strength and attaching them to heavily Anglo rural counties, some more than a hundred miles away, in a district where they would lack equal electoral opportunity.

4.      Texas also eliminated Latino electoral opportunities in the State House plan through manipulation or outright elimination of districts where Latino communities previously had elected their preferred candidates. In the San Antonio region and in South Texas, Texas replaced Latino voters in House Districts 118 and 31 with high-turnout Anglo voters, eliminating minority electoral opportunities. And in El Paso and West Texas, the State eliminated a Latino opportunity district entirely—reducing the number of opportunity districts from six to five—by overpopulating and packing majority-Latino districts and under-populating nearby majority-Anglo districts.

5.      This is not the first time Texas has acted to minimize the voting rights of its minority citizens. Decade after decade, Texas has enacted redistricting plans that violate the Voting Rights Act.

6.      In enacting its 2021 Congressional and House plans, the State has again diluted the voting strength of minority Texans and continued its refusal to comply with the Voting Rights Act, absent intervention by the Attorney General or the federal courts.

7.      The Attorney General files this action pursuant to Sections 2 and 12(d) of the Voting Rights Act of 1965, as amended, 52 U.S.C. §§ 10301 and 10308(d), to enforce voting rights guaranteed by the Fourteenth and Fifteenth Amendments to the United States Constitution.

8. Section 2 of the Voting Rights Act prohibits enforcement of any voting qualification, prerequisite to voting, standard, practice, or procedure that either has a purpose of denying or abridging the right to vote on account of race, color, or membership in a language minority group or results in the denial or abridgment of the right to vote on account of race, color, or language minority status. The districting decisions described in this complaint violate Section 2.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction of this action under 28 U.S.C. §§ 1331, 1345, and 2201(a) and 52 U.S.C. § 10308(f).

10. Venue is proper in this Court under 28 U.S.C. §§ 124(d)(3) and 1391(b).

## PARTIES

11. The Voting Rights Act authorizes the Attorney General to file a civil action on behalf of the United States of America seeking injunctive, preventive, and permanent relief for violations of Section 2 of the Act, 52 U.S.C. § 10308(d).

12. Defendant the State of Texas is one of the states of the United States of America.

13. Defendant John Scott is the Texas Secretary of State. The Texas Secretary of State is the State's chief election officer. The Office of the Texas Secretary of State is responsible for maintaining uniform application, operation, and interpretation of all state election laws. Secretary Scott's relevant duties include, but are not limited to, preparing detailed and comprehensive written directives and instructions and distributing these materials to the appropriate state and local authorities having duties in the administration of state election laws. Secretary Scott also is empowered to order a person performing official functions in the

administration of any part of the electoral process to correct any conduct that impedes the free exercise of a citizen's voting rights. Secretary Scott is sued in his official capacity.

## ALLEGATIONS

**The State of Texas**

14. According to the 2020 Census, Texas has a total population of 29,145,505, with a Hispanic/Latino population of 11,441,717 (39.3%), a non-Hispanic Black/African American population of 3,629,872 (12.4%), and a non-Hispanic Asian American population of 1,717,386 (5.9%).

15. According to the 2020 Census, Texas has a voting-age population (VAP) of 21,866,700, with a Hispanic/Latino VAP of 7,907,319 (36.2%), a non-Hispanic Black/African American VAP of 2,661,244 (12.2%), and a non-Hispanic Asian American VAP of 1,289,444 (5.9%).

16. The 2016-2020 American Community Survey (ACS) estimated that the citizen voting age population (CVAP) of Texas was 18,578,830, with a Hispanic/Latino CVAP of 5,671,640 (30.5%), a non-Hispanic Black/African American CVAP of 2,420,695 (13.0%), and a non-Hispanic Asian American CVAP of 703,155 (3.8%).

17. Applying 2016-2020 ACS localized adult citizenship rates to 2020 Census data provides a more contemporaneous CVAP estimate. By basing estimates on 2020 Census data—and using ACS data only for localized adult citizenship rates—this method uses the most recent and complete Census data as the foundation for CVAP estimates and ties CVAP estimates to the 2020 Census data used to determine district populations. This more contemporaneous estimate shows that Texas has a total CVAP of 18,976,453, with a Hispanic/Latino CVAP of 5,864,972 (30.9%), a non-Hispanic Black/African American CVAP of 2,578,322 (13.6%), and a non-

Hispanic Asian American CVAP of 788,898 (4.2%). Thus, this estimate also shows that the minority share of the CVAP in Texas is likely larger than indicated by an estimate based on ACS data alone.

18.     Between 2010 and 2020, the total population of Texas increased by 3,999,944, according to U.S. Census data. The Hispanic/Latino population increased by 1,980,796, accounting for 49.5% of overall growth; the non-Hispanic Black/African American population increased by 654,133, accounting for 16.4% of overall growth; and the non-Hispanic Asian American population increased by 689,430, accounting for 17.2% of overall growth. By contrast, the non-Hispanic White population increased by 187,252, accounting for only 4.7% of overall growth.

**Redistricting in Texas**

19.     In every redistricting cycle since 1970, courts have found that one or more of Texas's statewide redistricting plans violated the United States Constitution or the Voting Rights Act.[1] Moreover, after each decennial census during the period when Texas was required to obtain preclearance of redistricting plans under Section 5 of the Voting Rights Act, 52 U.S.C. § 10304, the State enacted redistricting plans for the Texas House that violated Section 5. Following the 1980 Census and the 1990 Census, Texas also submitted plans for the Texas Senate or the Texas Congressional delegation that violated Section 5. And during the 38 years

---

[1] *See Texas v. United States*, 887 F. Supp. 2d 133 (D.D.C. 2012) (three-judge court), *vacated*, 570 U.S. 928 (2013); *LULAC v. Perry*, 548 U.S. 399 (2006); *Balderas v. Texas*, No. 6:01-cv-158, 2001 WL 36403750 (E.D. Tex. Nov. 14, 2001) (three-judge court) (per curiam); *Bush v. Vera*, 517 U.S. 952 (1996); *Terrazas v. Slagle*, 789 F. Supp. 828 (W.D. Tex. 1991) (three-judge court), *aff'd sub nom. Richards v. Terrazas*, 505 U.S. 1214 (1992); *Upham v. Seamon*, 456 U.S. 37 (1982); *Terrazas v. Clements*, 537 F. Supp. 514 (N.D. Tex. 1982) (three-judge court) (per curiam); *McDaniel v. Sanchez*, 452 U.S. 130 (1981); *White v. Regester*, 412 U.S. 755 (1973); *White v. Weiser*, 412 U.S. 783 (1973).

that Texas was covered by Section 5 of the Voting Rights Act, the Attorney General issued

another 50 objection letters regarding local districting or redistricting plans.

20.     The State of Texas's lengthy history of discrimination in redistricting has

continued unabated into the twenty-first century, as the Supreme Court recognized when holding

that the State's 2003 Congressional redistricting plan "undermined the progress of a racial group

that has been subject to significant voting-related discrimination." *LULAC v. Perry*, 548 U.S.

399, 438-40 (2006); *see also Bush v. Vera*, 517 U.S. 952, 981-82 (1996) (plurality opinion);

*White v. Regester*, 412 U.S. 755, 767-70 (1973).

21.     During the last redistricting cycle, a three-judge court in Washington, D.C. found

that Texas failed to prove that its 2011 Congressional and House plans would not effect a

retrogression in the position of racial minorities with respect to their effective exercise of the

electoral franchise and failed to prove that its 2011 Congressional and Senate plans were not

enacted with discriminatory intent, although this decision was vacated after the Supreme Court's

decision in *Shelby County v. Holder*, 570 U.S. 529 (2013). *See Texas v. United States*, 887 F.

Supp. 2d 133, 154 (D.D.C. 2012) (three-judge court), *vacated*, 570 U.S. 928 (2013).  A second

three-judge court in San Antonio then affirmatively found that the 2011 Congressional and

House plans had been enacted with discriminatory intent and that the 2013 House plan contained

an unconstitutional racial gerrymander. *See Abbott v. Perez*, 138 S. Ct. 2305, 2334-35 (2018)

(2013 House); *Perez v. Abbott*, 253 F. Supp. 3d 864 (W.D. Tex. 2017) (three-judge court) (2011

Congress); *Perez v. Abbott*, 250 F. Supp. 3d 123 (W.D. Tex. 2017) (three-judge court) (2011

House); *see also Abbott*, 138 S. Ct. at 2317 (declining to address 2011 plans).

**2021 Redistricting in Texas**

22.    On September 7, 2021, Texas Governor Greg Abbott announced a special legislative session to begin on September 20, 2021, for the purpose of drawing statewide redistricting plans.

23.    Once the special session began, redistricting plans and amendments moved at a rapid pace with little transparency and limited opportunities for witness testimony.

24.    Minority legislators frequently decried the compressed timeline, changes made without traditional deference to local delegations, the inability to invite expert testimony, the minimal opportunities for public input, and an overall disregard for massive minority population growth in Texas over the last decade.

25.    Governor Abbott signed both Senate Bill 6, the 2021 Congressional Plan, and House Bill 1, the 2021 House Plan, on October 25, 2021.

**Congressional Redistricting Process**

26.    The Congressional redistricting process was truncated because of the special session.  Only three weeks passed between the unveiling of the initial proposal and the final passage of the conference committee map.

27.    Prior to the start of the special session and the release of the Census data used for redistricting, the House Redistricting Committee, chaired by Representative Todd Hunter, and the Senate Special Committee on Redistricting, chaired by Senator Joan Huffman, each held five hearings to gather public testimony, including permitting the submission of written comments and alternative redistricting plans through an online portal.

28.    On September 27, 2021, Senator Huffman released the initial statewide Congressional proposal.

29.     The initial proposal had been drawn based on direction from Republican members of the Texas Congressional delegation.  All Republican members of the Texas delegation—except for Representative Louie Gohmert—retained a common attorney for purposes of redistricting.  That attorney then retained the National Republican Redistricting Trust to perform map-drawing services.  The attorney ultimately provided an initial draft Congressional map to Senator Huffman.

30.     As a result of this external map-drawing process, while most Anglo members of the Texas Congressional delegation had an opportunity to provide input on their districts, only one Latino member of the delegation and no Black members of the delegation had an opportunity to provide input concerning their districts.

31.     The outside software used to draw the initial Congressional plan did not include the home addresses of all incumbent members.  This resulted in two of the four Black Members of Congress from Texas being paired in the same district in the initial statewide proposal.

32.     The Senate Special Committee on Redistricting held only two public hearings on the Congressional plan, on September 30 and October 4, 2021.  The full Senate passed the Congressional plan on October 8, 2021.  The House received the bill the very same day.

33.     Senator Huffman stated that the redistricting plan complied with the Voting Rights Act, but she declined to explain the substantive basis for that conclusion.

34.     Although House Redistricting Chair Hunter initially told members of the House Redistricting Committee that the Texas House would generate its own statewide Congressional plan, the House Redistricting Committee instead took up the plan already passed by the Senate.  The Texas House officially took up the Congressional map passed by the Texas Senate on the

same day as floor consideration of the Texas House redistricting plan, limiting the opportunity for legislators to analyze the Congressional plan and generate proposed amendments.

35.     On October 13, 2021, the House Redistricting Committee held its only public hearing on the Congressional plan.  The Committee provided only 24 hours' notice of the hearing and gave witnesses just 12 hours to register to testify virtually.  The House Redistricting Committee voted the Congressional plan out of committee without adopting any amendments.

36.     The full Texas House considered the Congressional plan on October 16, 2021. Although the House adopted several amendments, it rejected any proposals that would have provided for additional minority electoral opportunity in the Harris County area, in Congressional District 23, or in the Dallas-Fort Worth area.  The Texas House passed the amended Congressional plan early in the morning on October 17, 2021.

37.     The Senate did not concur with the House amendments, and the House and Senate appointed a conference committee immediately.  The conference committee reported out the final Congressional plan later that day, on October 17, 2021.

38.     The full House and Senate passed the conference committee's plan the next day, on October 18, 2021.

39.     Governor Abbott signed the final Congressional plan into law on October 25, 2021.

**Congressional District 23 (West Texas): Discriminatory Intent and Discriminatory Results**

40.     Using many of the same techniques applied in designing the redistricting plans in 2003 and 2011, Texas intentionally reconfigured the 2021 version of District 23 to preclude a Latino electoral opportunity.  District 23 in both the 2003 and 2011 Congressional plans violated the Voting Rights Act.  By deliberately precluding a Latino electoral opportunity for the third

time in three decades, Texas has demonstrated a recalcitrant resistance to the rights of Latino voters in this region.

41.    In 2006, the Supreme Court addressed a Section 2 challenge to the 2003 configuration of District 23.  In doing so, the Court stated that the State's actions bore "the mark of intentional discrimination that could give rise to an equal protection violation."  *LULAC v. Perry*, 548 U.S. at 440.

42.    In 2012, a three-judge court in Washington, D.C. found that although the version of District 23 created in 2006 as a remedy after *LULAC v. Perry* had provided Latino voters with the ability to elect their preferred candidates, the 2011 Congressional plan "took that ability away."  *Texas*, 887 F. Supp. 2d at 154.  A three-judge court in Texas subsequently found that the 2011 Congressional plan's "manipulation of Latino voter turnout and cohesion in [District] 23 denied Latino voters equal opportunity and had the intent and effect of diluting Latino voter opportunity."  *Perez*, 253 F. Supp. 3d at 908.

43.    Under the Congressional plan adopted in 2013 (the "former plan"), District 23 encompassed 26 whole counties in West Texas and portions of La Salle, Bexar, and El Paso Counties.  Figure 1 depicts former District 23.

**Figure 1: Former Congressional District 23 (Adopted 2013)**



44.     The former configuration of District 23 was based on an interim remedy adopted by a federal court in Texas for a "not insubstantial" retrogression claim under Section 5 that was then pending before the U.S. District Court for the District of Columbia. *Perez v. Perry*, 891 F. Supp. 2d 808, 826-27 (W.D. Tex. 2012) (three-judge court).

45.     2020 Census data and 2016-2020 ACS citizenship data indicate that former District 23 had a Latino CVAP concentration of 62.2%. Texas estimates that former District 23 had a Latino CVAP concentration of 63.6%. Texas produces CVAP estimates based only on ACS data, and its method creates a substantial time lag in dynamic statistics, counts "some people who live outside the district . . . in the district estimates," and excludes "some people who live in the district . . . in the district estimates." Tex. Legis. Council, *Estimating Citizen Voting Age Population Data (CVAP)* 1 (2013). In 2020, Spanish Surname Voter Registration (SSVR) in former District 23 was 54.1%, and Spanish Surname Turnout (SSTO) in former District 23 was

47.8%.[2]

46.    Under the former configuration of District 23, elections in the District were close, with the winner receiving either a plurality or narrow majority of the vote.  In 2020, voters in former District 23 elected Tony Gonzales, a Latino Republican, with 50.6% of the vote.

47.    Based on election analysis, Latino voters in District 23 last elected their candidate of choice in 2012, under the 2011 interim remedy, when they elected Latino Democrat Pete Gallego.

48.    Between 2014 and 2020, a cohesive majority of Latino voters in former District 23 preferred the same candidates in each general election.  On average, over 80% of Latino voters supported Latino Democrat Pete Gallego (2014 and 2016) or Filipino-American Democrat Gina Ortiz Jones (2018 and 2020).

49.    Nonetheless, Latino voters were not able to elect their candidate of choice in any of the District 23 elections between 2014 and 2020, due to high levels of bloc voting among Anglo voters against Latino-preferred candidates.  On average, less than 20% of Anglo voters supported Gallego or Ortiz Jones.  As a result, former District 23 elected Black Republican William Hurd in 2014, 2016, and 2018 and Latino Republican Tony Gonzales in 2020.

50.    In the 2021 Congressional plan (the "current plan"), District 23 includes the same 26 whole counties found in former District 23.  It also includes all of La Salle County, a sparsely populated county between Laredo and San Antonio, that was only partially included in former District 23.  However, current District 23 contains very different portions of Bexar County and

---

[2] SSVR denotes the percentage of registered voters with a last name on the State's Spanish surname list, in November 2020 unless otherwise noted.  Unless otherwise noted, SSTO denotes the percentage of voters who cast a ballot in the November 2020 general election whose last name appears on the State's Spanish surname list.  The Texas Legislative Council generates and provides these data as part of its RedAppl redistricting software.

El Paso County than former District 23. It is from these two counties that current District 23 draws most of its population. Figure 2 depicts current District 23.

**Figure 2: Current Congressional District 23 (Adopted 2021)**



51.     2020 Census data and 2016-2020 ACS citizenship data indicate that the Latino CVAP concentration in current District 23 is 56.7%, 5.5 percentage points lower than the Latino CVAP in former District 23. Texas's estimate indicates that current District 23 has a Latino CVAP concentration of 58.1%, a drop of 5.5 percentage points from former District 23. In 2020, SSVR in current District 23 was 49.2%, a decrease of 4.9 percentage points from former District 23. And SSTO in current District 23 was 42.9%, again a decrease of 4.9 percentage points from former District 23. Table 1 sets out these changes in full.

**Table 1: Congressional District 23 Comparison**

| Latino CVAP | | SSVR | | SSTO | |
|---|---|---|---|---|---|
| 2013 Plan | 2021 Plan | 2013 Plan | 2021 Plan | 2013 Plan | 2021 Plan |
| 62.2 | 56.7 | 54.1 | 49.2 | 47.8 | 42.9 |

52.     As in 2011, the 2021 redistricting plan joins together Latino voters in current District 23 who are less cohesive than Latino voters in former District 23.  *See Perez*, 253 F. Supp. 3d at 908.  Nonetheless, Latino voters in current District 23 have been cohesive in contested statewide contests between 2014 and 2020 that include Latino candidates, with more than 75% of Latino voters in the current district preferring the same candidates.

53.     Anglo voters in current District 23 engage in sufficient bloc voting to enable them to usually defeat Latino voters' preferred candidates.  On average, across contested statewide contests including Latino candidates between 2014 and 2020, less than 20% of Anglo voters in current District 23 supported the Latino-preferred candidate.  As a result of bloc voting and high Anglo voter turnout relative to Latino voter turnout, Latino-preferred Latino candidates did not receive the most votes within current District 23 in any statewide contest between 2014 and 2020.

54.     As in 2011, the current Congressional plan deliberately makes District 23 more Anglo and combines Anglo voters with less cohesive Latino voters, thereby precluding an opportunity for minority voters to elect their preferred candidates.  After Governor Abbott signed the current Congressional plan into law, Adam Kincaid, the executive director of the National Republican Redistricting Trust, told the *New York Times* that the "competitive Republican seats are off the board."

55.     Also as in 2011, Texas reduced Latino electoral strength in current District 23 by consciously replacing many of the district's active Latino voters with low-turnout Latino citizens, in an effort to strengthen the voting power of Anglo citizens while preserving the superficial appearance of Latino control.  The average SSTO for the precincts that Texas removed from District 23 during the 2021 redistricting is 62.3%, while the average SSTO for the

precincts that the State added to District 23 is 38.6%. Critically, precinct swaps in District 23 disproportionately lowered SSTO, as compared to Latino CVAP. This allowed the State to push SSTO in District 23 below 43% while keeping the Latino CVAP above 56%, strengthening the voting power of Anglo citizens while preserving the superficial appearance of Latino control.

56.     And as in 2011, Texas again relied on split precincts when crafting the new 2021 District 23. The State nearly quadrupled the number of split precincts in the district, from four in the former Congressional plan to 15 in the current Congressional plan. More importantly, the borders of District 23 split precincts in a manner that removed approximately half of the Latino CVAP in those precincts from District 23 but removed only around one-third of the Anglo CVAP in those precincts from District 23. While accurate racial data are available below the precinct level, accurate political data are not, suggesting that many of these precinct splits have a racial basis.

57.     During the redistricting process, Latino legislators advocated in both the Texas House and the Texas Senate for District 23 to be drawn as a Latino opportunity district. Legislators specifically warned that failure to do so would raise an inference of intentional discrimination, in light of the lengthy history of Voting Rights Act litigation in this region. One legislator even pointed out to his colleagues that the proposed configuration of District 23 combined areas with low Latino participation rates and areas with high Anglo turnout. The Texas Legislature rejected amendments that would have drawn District 23 as a Latino opportunity district.

58.     Rather than intentionally foreclosing Latino electoral opportunity, lawmakers could have drawn District 23 as an effective Latino opportunity district. The Latino population in West Texas is sufficiently large and geographically compact to constitute a majority in an

additional single-member district that would provide Latino voters with an electoral opportunity. Such a district could be drawn in the same counties as current District 23, albeit with different portions of Bexar County and El Paso County.  This configuration encompasses vast rural portions of West Texas and the larger population centers that connect and serve those communities.  Figure 3 depicts an illustrative District 23*.[3]  Figure 4 depicts the Bexar County portion of an illustrative District 23*, and Figure 5 depicts the El Paso County portion of an illustrative District 23*.

<u>**Figure 3: Illustrative Congressional District 23***</u>



---

[3] Illustrative districts have an asterisk after the number to signify clearly that they are illustratives.

**Figure 4: Illustrative Congressional District 23\* (Bexar County)**



**Figure 5: Illustrative Congressional District 23\* (El Paso County)**



59.     2020 Census data and 2016-2020 ACS citizenship data indicate that the Latino CVAP concentration in illustrative District 23* is 69.0%, 12.3 percentage points higher than the Latino CVAP concentration in current District 23.

60.     Latino voters within illustrative District 23* are highly cohesive.  On average, across contested statewide contests including Latino candidates between 2014 and 2020, over 80% of Latino voters preferred the same candidates.

61.     Although Anglo voters in illustrative District 23* also engage in bloc voting, with less than 20% of Anglo voters supporting Latino-preferred canddiates in statewide races between 2014 and 2020 that included Latino candidates, Latino-preferred Latino candidates would receive the most votes in these contests.  Therefore, illustrative District 23* would provide an opportunity for Latino voters to elect their candidates of choice.[4]

62.     In Bexar County and El Paso County, from which current District 23 draws most of its population, Latino voters bear the effects of discrimination, which hinders their ability to participate effectively in the political process.  For example, the mean per capita income of Latino residents of Bexar County is less than half the mean per capita income of Anglo residents. And the share of Latinos below the poverty line is more than twice as high as the Anglo share in Bexar County.  Similarly, the mean per capita income of Latino residents of El Paso County is roughly half the mean per capita income of Anglo residents.  And the share of Latinos below the poverty line is nearly twice as high as the Anglo share in El Paso County.  Similar patterns persist in other portions of current District 23 as well.

---

[4] This illustrative configuration unpacks adjacent Congressional Districts 16 and 20 while maintaining Latino voters' opportunity to elect their preferred candidates in illustrative District 16* and illustrative District 20*.  Latino-preferred Latino candidates would receive the most votes in all contested statewide contests including Latino candidates between 2014 and 2020 in illustrative District 16* and illustrative District 20*.

**Congressional Districts in the Dallas-Fort Worth Metroplex: Discriminatory Intent**

63.     The current Congressional plan intentionally discriminates against minority voters in DFW by excising rapidly changing communities from DFW-based districts and attaching them instead through a narrow strip to several heavily Anglo counties.  By cracking minority communities and submerging urban minority voters among rural Anglos, the current Congressional plan effectively turns back a decade of rapid Latino population growth and preserves Anglo control of most remaining districts, particularly District 24.

64.     Between the 2010 Census and the 2020 Census, Dallas County's total population increased by over 245,000 residents.  The Latino population increased by 151,895, making up over 60% of that growth, such that Latinos now comprise roughly 41% of Dallas County's population and 37% of VAP.  The Black population of Dallas County increased by 53,226, consistent with the overall growth rate, such that African Americans continue to comprise 22% of Dallas County's population and VAP.  At the same time, the Anglo population of Dallas County decreased by 59,706.  As a result, the Anglo population share of Dallas County decreased from 33% to 28%, and the Anglo VAP share decreased from 38% to 32%.

65.     Between the 2010 Census and the 2020 Census, Tarrant County's total population increased by over 300,000 residents.  The Latino population increased by 137,930, making up 46% of that growth, such that Latinos now comprise 29% of Tarrant County's population and 26% of VAP.  The Black population of Tarrant County increased by 105,101, making up 35% of that growth, such that African Americans now comprise 18% of Tarrant County's population and 17% of VAP.  At the same time, the Anglo population of Tarrant County decreased by 32,251. As a result, the Anglo population share of Tarrant County decreased from 52% to 43%, and the Anglo VAP share decreased from 57% to 47%.

66.     In the former Congressional plan, adopted in 2013, nine districts were located at least partially in Dallas or Tarrant Counties: Districts 5, 6, 12, 24, 25, 26, 30, 32, and 33.  No district has a Black or Latino eligible voter majority.  However, Black eligible voters made up a near-majority in former District 30, located in south Dallas County, and Latino eligible voters made up a near-majority in former District 33, which extended across Dallas and Tarrant Counties.  Both former District 30 and former District 33 provided minority voters with electoral opportunities.  Former Districts 5, 6, 12, 24, 25, 26, and 32 were primarily Anglo.  Figure 6 depicts the former Congressional districts in DFW.

### Figure 6: DFW Former Congressional Plan (Adopted 2013)



67.     A three-judge court in Texas established the layout of former District 33 to address intentional discrimination in the 2011 Congressional plan.  Following trial on the merits, the court found that the State had "acted at least in part with a racially discriminatory motive in enacting [the former Congressional plan], and with regard to the districts in DFW in particular." *Perez*, 253 F. Supp. 3d at 962.  This finding rested in part on the deliberate assignment of dense Latino neighborhoods to a "lightning bolt" extension into Tarrant County from a heavily Anglo

district based in Denton County, a district where Latino voters would not have had the opportunity to elect their preferred candidates. *Id.* at 934-38, 947, 953-55.

68.     2020 Census data and 2016-2020 ACS citizenship data indicate that former District 30 had a Black CVAP of 49.4% (50.8% by Texas's estimate). Latino CVAP in former District 30 was 24.8% (23.9% by Texas's estimate). Voters in former District 30 consistently elected Black Democrat Eddie Bernice Johnson across the last decade.

69.     2020 Census data and 2016-2020 ACS citizenship data indicate that former District 33 had a Latino CVAP of 48.9% (48.5% by Texas's estimate). Black CVAP in former District 33 was 24.1% (23.8% by Texas's estimate). In 2020, SSVR in former District 33 was 41.5%, and SSTO in former District 33 was 38.9%. Voters in former District 33 consistently elected Black Democrat Marc Veasey across the last decade.

70.     Former Districts 5, 6, 12, 24, 25, 26, and 32—the Anglo-controlled districts—had Latino CVAP concentrations of 17.8%, 18.4%, 16.9%, 16.2%, 15.5%, 14.5%, and 16.3%, respectively (17.0%, 17.5%, 17.1%, 16.2%, 15.4%, 13.9%, and 16.0% by Texas's estimate). Black CVAP concentrations in those districts were 16.1%, 21.5%, 9.8%, 13.0%, 6.5%, 9.1%, and 13.7%, respectively (16.9%, 21.9%, 8.9%, 14.0%, 7.5%, 9.3%, and 14.7% by Texas's estimate). In 2020, voters in those districts elected Anglo Republican Lance Gooden, Anglo Republican J.K. "Jake" Ellzey, Anglo Republican Kay Granger, Anglo Republican Beth Van Duyne, Anglo Republican Roger Williams, Anglo Republican Michael Burgess, and Black Democrat Colin Allred.

71.     District 24, a suburban district straddling Dallas, Denton, and Tarrant Counties, saw a particularly close election in 2020 between an Anglo Republican, Beth Van Duyne, and a Black-Latina Democrat, Candace Valenzuela. Though the district had reliably elected Anglo

candidates over the last decade, the 2020 race was hotly contested and deemed a toss-up in the days leading up to the election.  Ultimately, Van Duyne defeated Valenzuela by a narrow margin—less than two percentage points.

72.     The current Congressional plan reconfigures the districts based in DFW, using configurations similar to the "lightning bolt" found to be intentionally discriminatory in the 2011 Congressional plan.  *Perez*, 253 F. Supp. 3d at 934-38, 947, 953-55, 962.  Figure 7 depicts the current Congressional plan for DFW.

**Figure 7: DFW Current Congressional Plan (Adopted 2021)**



73.     Current District 30 and current District 33—the two minority opportunity districts—have Black CVAP concentrations of 46.7% and 26.8%, respectively (48.5% and 26.7% by Texas's estimate).  These districts also have Latino CVAP concentrations of 22.2% and 42.2%, respectively (21.4% and 42.8% by Texas's estimate).

74.     Current Districts 5, 6, 12, 24, 25, 26, and 32—the Anglo-controlled districts— have Latino CVAP concentrations of 18.5%, 22.0%, 17.6%, 12.5%, 15.4%, 13.6%, and 21.1%, respectively (17.5%, 21.3%, 17.6%, 11.9%, 15.3%, 13.1%, and 21.0% by Texas's estimate).

Black CVAP concentrations in those districts are 14.4%, 14.9%, 11.2%, 6.3%, 11.3%, 9.0%, and

21.9%, respectively (14.6%, 15.3%, 10.5%, 6.9%, 11.3%, 9.0%, and 23.6% by Texas's

estimate).  Table 2 sets out the demographic changes in DFW Congressional districts in full.

### Table 2: DFW Congressional District Comparison

| District | Latino CVAP | | Black CVAP | |
|---|---|---|---|---|
| | 2013 Plan | 2021 Plan | 2013 Plan | 2021 Plan |
| 5 | 17.8 | 18.5 | 16.1 | 14.4 |
| 6 | 18.4 | 22.0 | 21.5 | 14.9 |
| 12 | 16.9 | 17.6 | 9.8 | 11.2 |
| 24 | 16.2 | 12.5 | 13.0 | 6.3 |
| 25 | 15.5 | 15.4 | 6.5 | 11.3 |
| 26 | 14.5 | 13.6 | 9.1 | 9.0 |
| 30 | 24.8 | 22.2 | 49.4 | 46.7 |
| 32 | 16.3 | 21.1 | 13.7 | 21.9 |
| 33 | 48.9 | 42.2 | 24.1 | 26.8 |

75.    Current District 24 is a barely contiguous configuration that connects majority-

Anglo communities in northeast Tarrant County with the Park Cities, north of downtown Dallas.

Between these two areas, current District 24 excludes most of the City of Irving, in northwest

Dallas County.  This is notable because the incumbent, Beth Van Duyne, is a former Mayor of

Irving.  However, Irving changed dramatically between the 2010 Census and the 2020 Census,

shifting from majority Anglo in 2010 to barely one-fifth Anglo in 2020.  Thus, removing most of

Irving excludes a substantial minority community from District 24, a community that had

threatened the electoral prospects of the Anglo incumbent.

76.    Only 19 precincts in former District 24 had a Latino CVAP concentration over

40%.  Current District 24 excludes 17 of those 19 precincts.  As a result, the district's Latino

CVAP decreased by approximately 23%.  Moreover, the two precincts left in District 24 with

substantial Latino CVAP shares have near-zero Latino turnout.

77.    Current District 24 also splits 26 precincts along its boundaries in a manner that

retains a disproportionate share of the Anglo CVAP in those precincts within current District 24. Specifically, the borders of District 24 split precincts in a manner that removed nearly 65% of the Latino CVAP and over 85% of the Black CVAP in those precincts from District 24 but removed less than half of the Anglo CVAP in those precincts from District 24.  As noted above, while accurate racial data are available below the precinct level, accurate political data are not, suggesting that many of these precinct splits have a racial basis.

78.     For District 24 to shed most of Irving, neighboring District 33 had to move north. However, simply moving the border of District 33 north would have left District 33 with substantial excess population.  Therefore, the 2021 Congressional plan inserts an extension of District 6 into the middle of the Dallas portion of District 33, to take in that excess population.

79.     The District 6 appendage resembles a seahorse in Dallas County, and it incorporates several diverse neighborhoods.  Much of the "seahorse" configuration overlaps with former House District 105, which elected Anglo Republicans in 2012, 2014, and 2016, before electing Latina Democrat Thresa "Terry" Meza, a Latino candidate of choice, in 2018 and 2020. This shift is particularly notable, given that a three-judge court in Texas found that House District 105 had originally been drawn based on race in 2011 to dilute Latino voting strength by maximizing the Anglo population of the district.  *See Perez*, 250 F. Supp. 3d at 169-71. However, this rapidly diversifying area is now combined with seven rural majority-Anglo counties outside of Dallas County and Tarrant County, submerging Latino and Black voters in an overwhelmingly Anglo district.  Due in part to the addition of this appendage, the Latino CVAP share of current District 6 is roughly 20% higher than in former District 6, illustrating the use of rural Anglo counties to dilute Latino and Black votes.

80.     The current Congressional plan maintains Districts 30 and 33 as minority

opportunity districts but deliberately prevents minority voters from affecting elections in District 24.

81.     Latino voters in DFW, including Latino voters in current District 24 and current District 6, have been cohesive in contested statewide elections that include Latino or Black candidates.  On average, across such elections between 2014 and 2020, more than 80% of Latino voters across Dallas County and Tarrant County preferred the same candidates.  In the same elections, over 75% of Latino voters in former District 24 preferred the same candidates.  Although current District 24 has been redrawn to exclude the most cohesive minority communities, more than 60% of Latino voters remaining in current District 24 preferred the same candidates in these elections.  And in current District 6, more than 80% of Latino voters—most of whom reside in the "seahorse" within Dallas County and Tarrant County—preferred the same candidates.

82.     Black voters in DFW, including Black voters in Congressional District 24, have been cohesive in contested statewide elections that include Latino or Black candidates.  On average, across such elections between 2014 and 2020, more than 90% of Black voters in Dallas County and Tarrant County preferred the same candidates.  In the same elections, roughly 70% of Black voters in former District 24 preferred the same candidates.  Although the district has been redrawn to exclude the most cohesive minority communities, more than 60% of Black voters remaining in current District 24 preferred the same candidates.  And in current District 6, more than 85% of Black voters—most of whom reside in the "seahorse" within Dallas County and Tarrant County—preferred the same candidates.

83.     Current Congressional District 24 and current Congressional District 6 do not provide minority voters with an opportunity to elect their preferred candidates.

84.     In current Congressional District 24, bloc voting by Anglo voters will enable them usually to defeat Latino and Black voters' preferred candidates.  In contested statewide elections that include Latino or Black candidates between 2014 and 2020, only roughly 30% of Anglo voters supported the minority-preferred candidate.  As a result, minority-preferred candidates in these races never received the most votes within current District 24.

85.     In current Congressional District 6, bloc voting by Anglo voters will enable them usually to defeat Latino and Black voters' preferred candidates.  In contested statewide elections that include Latino or Black candidates between 2014 and 2020, less than 10% of Anglo voters supported the minority-preferred candidate.  As a result, minority-preferred candidates in these races never received the most votes within current District 6.

86.     In Dallas County and Tarrant County, Latino and Black voters bear the effects of discrimination, which hinders their ability to participate effectively in the political process.  For example, the mean per capita income of Latino residents of Dallas County is less than one-third of the mean per capita income of Anglo residents, and the share of Latinos below the poverty line is more than two-and-a-half times as high as the Anglo share in Dallas County.  Similarly, the mean per capita income of Latino residents of Tarrant County is less than half the mean per capita income of Anglo residents, and the share of Latinos below the poverty line is over twice as high as the Anglo share in Tarrant County.  The mean per capita income of Black residents of Dallas County is also less than half of the mean per capita income of Anglo residents, and the share of Black residents below the poverty line is more than two-and-a-half times as high as the Anglo share in Dallas County.  Finally, the mean per capita income of Black residents of Tarrant County is little more than half of the mean per capita income of Anglo residents, and the share of

Black residents below the poverty line is over twice as high as the Anglo share in Tarrant County.

**Congressional Districts in Harris County: Discriminatory Results**

87. The 2021 Congressional plan situates one of the two new Texas Congressional districts in Harris County, in and around Houston, due to massive population growth in the area. Most of that population growth occurred within the Latino community, but Texas crafted the new 38th Congressional District to give Harris County's shrinking Anglo population control of yet another Congressional seat. Creating an additional Anglo seat dilutes Latino voting strength in Harris County, particularly because the population growth that merited creating an additional Harris County-based seat occurred primarily in the Latino community.

88. Between the 2010 Census and the 2020 Census, Harris County's total population increased by nearly 640,000. The Latino population increased by 363,169, making up the majority of that growth, such that Latinos now comprise 43% of Harris County's population and 40% of VAP. At the same time, the Anglo population of Harris County decreased by 40,053. As a result, Anglo population share decreased from 33% to 28%, and Anglo VAP share decreased from 37% to 31%.

89. In the former Congressional plan, adopted in 2013, nine districts were located at least partially in Harris County: Districts 2, 7, 8, 9, 10, 18, 22, 29, and 36. Former District 29, in eastern greater Houston and the north side, was the only Congressional district in which a majority of eligible voters were Latino, and this district provided Latino voters with an opportunity to elect their preferred representatives. Former District 9, in southwestern greater Houston, and former District 18, in central Houston and the surrounding areas, provided Black

voters with electoral opportunities.  Former Districts 2, 7, 8, 10, 22, and 36 were primarily

Anglo.  Figure 8 depicts the former Congressional districts in Harris County.

**Figure 8: Harris County Former Congressional Districts (Adopted 2013)**



90.      2020 Census data and 2016-2020 ACS citizenship data indicate that former

District 29 had a Latino CVAP majority of 64.7% (67.1% by Texas's estimate) and provided

Latino voters with electoral opportunity.  In 2020, SSVR in former District 29 was 58.8%, and

SSTO in former District 29 was 55.8%.  Voters in former District 29 elected Representative

Sylvia Garcia, a Latina Democrat, by wide margins over her general election opponents in 2018

and 2020.  Voters in this district had elected Representative Gene Green, an Anglo Democrat, for

over two decades, until his decision not to run for reelection in 2018.

91.      Former District 9 and former District 18—the two Black opportunity districts—

had Latino CVAP concentrations of 27.1% and 28.4%, respectively (26.5% and 28.9% by

Texas's estimate).  2020 SSVR in these districts was 19.5% and 21.2%, and 2020 SSTO was

18.1% and 19.6%, respectively.  Former Districts 9 and 18 also had Black CVAP concentrations

of 45.1% and 42.5%, respectively (45.9% and 42.9% by Texas's estimate).  Voters in District 18 have elected Black Democrat Sheila Jackson Lee for over 25 years, and voters in District 9 have elected Black Democrat Al Green for over a decade.

92.     Former Districts 2, 7, 8, 10, 22, and 36—the Anglo-controlled districts—had Latino CVAP concentrations of 24.1%, 22.5%, 16.5%, 21.1%, 21.5%, and 19.8%, respectively (24.0%, 21.1%, 15.2%, 20.7%, 22.1%, and 18.5% by Texas's estimate).  In 2020, SSVR in these districts was 17.4%, 15.5%, 10.8%, 14.5%, 16.2%, and 13.8%, and SSTO was 15.7%, 13.9%, 9.1%, 13.0%, 14.4%, and 11.8%, respectively.  In 2020, voters in these districts elected Anglo Republican Dan Crenshaw, Anglo Democrat Lizzie Fletcher, Anglo Republican Kevin Brady, Anglo Republican Michael McCaul, Anglo Republican Troy Nehls, and Anglo Republican Brian Babin.

93.     The current Congressional plan creates a new District 38 in outlying northern and western Harris County, areas in which a majority of eligible voters are Anglo, while maintaining Anglo eligible voter majorities in Districts 2 and 8 and preserving substantial Anglo pluralities in Districts 7, 22, and 36.  Figure 9 depicts the current Congressional district plan for Harris County.

**Figure 9: Harris County Current Congressional Districts (Adopted 2021)**



94.    The current Congressional plan prevents the emergence of a second Latino opportunity district by establishing roughly 18% to 23% Latino CVAP concentrations in each Anglo-controlled district in Harris County, often by combining portions of Harris County with other more heavily Anglo counties.  The current Congressional plan also maintains roughly 25% to 28% Latino CVAP concentrations in the two Black opportunity districts and maintains District 29 as a packed district with over 60% Latino CVAP.

95.    2020 Census data and 2016-2020 ACS citizenship data indicate that the new Congressional district, District 38, has a Latino CVAP concentration of 18.9% (18.6% by Texas's estimate).  2020 SSVR and SSTO in new District 38 were 13.2% and 12.1%, respectively.

96.    Current Districts 2, 7, 8, 22, and 36—the existing Anglo-controlled districts— have Latino CVAP concentrations of 21.9%, 20.7%, 22.6%, 23.2%, and 22.3%, respectively (20.0%, 21.2%, 21.8%, 23.8%, and 21.1% by Texas's estimate).  In 2020, SSVR in these

districts was 14.8%, 14.3%, 16.0%, 17.1%, and 16.2%, and SSTO was 13.3%, 13.1%, 14.1%, 14.5%, and 14.2%, respectively.  Current District 10 no longer includes any portion of Harris County.

97.     Current Districts 9 and 18—the two Black opportunity districts—have Latino CVAP concentrations of 25.9% and 28.7%, respectively (24.6% and 29.1% by Texas's estimate). 2020 SSVR in these districts was 19.0% and 21.5%, and 2020 SSTO was 17.1% and 19.9%, respectively.  Current Districts 9 and 18 also have Black CVAP concentrations of 45.3% and 39.9%, respectively (47.0% and 40.3% by Texas's estimate).

98.     Current District 29 has a Latino CVAP concentration of 62.3% (64.6% by Texas's estimate).  2020 SSVR in current District 29 was 56.2%, and 2020 SSTO in current District 29 was 53.1%.  Table 3 sets out the Latino demographic changes in the Harris County Congressional districts.

**Table 3: Harris County Congressional District Comparison**

| District | Latino CVAP | | SSVR | | SSTO | |
|---|---|---|---|---|---|---|
| | 2013 Plan | 2021 Plan | 2013 Plan | 2021 Plan | 2013 Plan | 2021 Plan |
| 2 | 24.1 | 21.9 | 17.4 | 14.8 | 15.7 | 13.3 |
| 7 | 22.5 | 20.7 | 15.5 | 14.3 | 13.9 | 13.1 |
| 8 | 16.5 | 22.6 | 10.8 | 16.0 | 9.1 | 14.1 |
| 9 | 27.1 | 25.9 | 19.5 | 19.0 | 18.1 | 17.1 |
| 10 | 21.1 | n/a | 14.5 | n/a | 13.0 | n/a |
| 18 | 28.4 | 28.7 | 21.2 | 21.5 | 19.6 | 19.9 |
| 22 | 21.5 | 23.2 | 16.2 | 17.1 | 14.4 | 14.5 |
| 29 | 64.7 | 62.3 | 58.8 | 56.2 | 55.8 | 53.1 |
| 36 | 19.8 | 22.3 | 13.8 | 16.2 | 11.8 | 14.2 |
| 38 | n/a | 18.9 | n/a | 13.2 | n/a | 12.1 |

99.     Several of the current Congressional districts in Harris County do not provide opportunities for Latino voters to elect representatives of their choice.  This includes Districts 2, 22, 36, and 38.

31

100.    Latino voters throughout Harris County are cohesive in contested statewide elections that include Latino candidates.  On average, across such elections between 2014 and 2020, approximately 85% of Latino voters in Harris County voted for the same candidates.  In current District 36, over 70% of Latino voters voted for the same candidates in these contests, including nearly 80% of Latino voters in such contests since 2016, and within new District 38, more than 65% of Latino voters voted for the same candidates.  However, in current District 2 and current District 22, less than 60% of Latino voters voted for the same candidates in these contests.

101.    In current Congressional Districts 2, 22, 36, and 38, Anglo voters engage in sufficient bloc voting to enable them to usually defeat Latino voters' preferred candidates.  On average, across contested statewide contests including Latino candidates between 2014 and 2020, less than 20% of Anglo voters in current District 2, less than 20% of Anglo voters in current District 22, less than 10% of Anglo voters in current District 36, and less than 20% of Anglo voters in current District 38 supported the Latino-preferred candidate.  As a result of bloc voting, Latino-preferred Latino candidates did not receive the most votes in any statewide contest between 2014 and 2020 within current District 2, current District 22, current District 36, or current District 38.

102.    The creation of another Latino electoral opportunity Congressional district in Harris County was discussed during the legislative redistricting process.  Indeed, minority legislators introduced alternative plans with the stated goal of creating a new Latino opportunity district in Harris County, without undermining minority electoral opportunities elsewhere in the Houston area.  The Texas House and the Texas Senate declined to adopt these amendments.

103.    Senator Huffman, the Chair of the Senate Special Committee on Redistricting, publicly stated that, after discussion with the Office of the Texas Attorney General, "we saw no strong basis in evidence that a new minority opportunity district should be drawn in the new maps."  However, she did not provide the analysis she considered to other members of the Senate.

104.    The Latino community in Harris County is sufficiently large and geographically compact to constitute a majority in a second single-member district that would provide Latino voters with an electoral opportunity, without undermining existing opportunity districts. Specifically, a second Latino opportunity district can be crafted in southeastern Harris County, composed of portions of current Districts 2, 22, and 36, as well as portions of current District 9, a Black opportunity district, and current District 29, the existing Latino opportunity district. Illustrative District 38* connects growing Latino communities on the east and southeast side of Houston and along the Houston Ship Channel, including Jacinto City, Galena Park, Pasadena, Channelview, and La Porte.[5]  Figure 10 depicts Harris County, in an illustrative Congressional plan, including an additional Latino opportunity district labeled District 38*.

---

[5] In such a configuration, the inner loop and north side portion of current District 29 would be joined with growing Latino communities to the west, north of the Katy Freeway and primarily within Spring Branch ISD and Katy ISD.

**Figure 10: Harris County Illustrative Congressional Districts**



105.    Census data and 2016-2020 ACS citizenship data indicate that the Latino CVAP concentration in illustrative District 38* is 50.8%, 31.5 percentage points higher than the Latino CVAP concentration in current District 38.

106.    Latino voters in illustrative District 38* are highly cohesive.  On average, across contested statewide contests including Latino candidates between 2014 and 2020, over 80% of Latino voters in illustrative District 38* preferred the same candidates.

107.    Anglo voters in illustrative District 38* also engage in bloc voting, providing an average of less than 10% support for Latino-preferred candidates.  Nonetheless, Latino-preferred Latino candidates would receive the most votes in over 70% of the contested statewide contests

34

including Latino candidates between 2014 and 2020.  Therefore, illustrative District 38* would provide an opportunity for Latino votes to elect their candidates of their choice.[6]

108.    In Harris County, Latino voters bear the effects of discrimination, which hinders their ability to participate effectively in the political process.  For example, the mean per capita income of Latino residents of Harris County is little more than a third of the mean per capita income of Anglo residents.  And the share of Latinos below the poverty line is nearly three times as high as the Anglo share in Harris County.

**2021 Texas House Redistricting Process**

109.    Following Texas House tradition, House Redistricting Committee Chair Hunter solicited proposed maps from members, beginning on September 9, 2021.  This included both requests for individual proposed districts and requests for "consent plans," on which all members of a county delegation had agreed, to be dropped into a statewide proposal.  By tradition, the Texas House typically defers to consent redistricting plans submitted by a complete county delegation.

110.    Representative Hunter unveiled a statewide proposed House plan on September 30, 2021.

111.    The House Redistricting Committee held its sole hearing on the House plan on October 4, 2021.  When laying out his proposal, Representative Hunter repeatedly asserted that the Committee should rely on minority VAP, rather than CVAP, which he claimed "leave[s] out important information."  This ignored decades of Voting Rights Act precedent.

---

[6] This illustrative configuration unpacks current Congressional District 29, while maintaining Latino voters' opportunity to elect their preferred candidates in illustrative District 29*.  Latino-preferred Latino candidates would receive the most votes in all contested statewide contests including Latino candidates between 2014 and 2020 in illustrative District 29*.

112.     During the October 4 hearing, Representative Hunter also acknowledged that he had hired Adam Foltz, a Wisconsin-based redistricting operative, to draw maps. Mr. Foltz had been placed on the payroll of the nonpartisan Texas Legislative Council, rather than the House Redistricting Committee. This effectively hid Foltz's role from other members of the Redistricting Committee until the *Texas Tribune* published a story on September 29.

113.     During the October 4 hearing, Representative Hunter also acknowledged that he had hired outside legal counsel to assist him during the map-drawing process. However, he did not reveal at that time that his outside counsel had retained the services of two independent map-drawers, Eric Wienckowski and Thomas Bryan, who communicated directly with Foltz. The involvement of these individuals remained hidden from other members of the Texas House until after the House plan was signed into law.

114.     The House Redistricting Committee adopted only two substantial changes to the statewide House proposal, neither of which improved electoral opportunities for minority voters.

115.     Consideration of the House redistricting plan on the Texas House floor began on October 12 and concluded with a final vote after 3 a.m. on October 13. Overall, less than two weeks passed between introduction of the statewide proposal and the final substantive consideration.

116.     During floor debate, the House rejected numerous amendments proposed by minority members to increase minority voters' electoral opportunities and influence. On the other hand, floor amendments substantially altered several majority-minority districts, against the wishes of most members of the local delegations.

117.     Of particular note, Representative Jacey Jetton of Fort Bend County carried an amendment to districts in Bexar County, but during debate he was unable to provide substantive

details regarding the proposal.  The House approved the Amendment over the objection of most of the Bexar County delegation, thereby establishing the final configuration of District 118.

118.    The Texas Senate passed the Texas House plan without amendment, and the Texas Legislature sent House Bill 1, the 2021 House Plan, to Governor Abbott on October 18, 2021.  Governor Abbott signed House Bill 1 into law on October 25, 2021.

**House District 118 (Bexar County): Discriminatory Results**

119.    The current House plan, adopted in 2021, eliminates Latino voters' opportunity to elect representatives of their choice in District 118, a Bexar County district in and around the City of San Antonio.  Current District 118 substantially reduces Latino population share to the point that the district no longer has a majority 2020 SSVR or SSTO, thereby enabling Anglo voters to defeat Latino voters' preferred candidates, even in high turnout general elections.

120.    Former District 118 included dense neighborhoods within Loop 410 (including nearly all of Harlandale ISD), southern San Antonio, outlying communities in southern Bexar County, and a small portion of eastern and northeastern Bexar County, including Randolph Air Force Base.  Figure 11 depicts former House District 118.

**Figure 11: Former House District 118 (Adopted 2013)**



121.    2020 Census data and 2016-2020 ACS citizenship data indicate that former District 118 had a Latino CVAP concentration of 68.5% (67.5% by Texas's estimate).  In 2020, SSVR in former District 118 was 59.5%, and SSTO in former District 118 was 55.7%.

122.    Former District 118, adopted in 2013, consistently elected Latino Democrats in regular elections over the past decade.

123.    In the 2020 general election, voters in former District 118 reelected Latino Democrat Leo Pacheco with 56.8% of the 58,558 votes cast.  However, in August 2021, Representative Pacheco resigned to take a full-time college teaching position.

124.    In low turnout special elections in 2016 and 2021, voters in former District 118 elected John Lujan, a Latino Republican who was not the Latino candidate of choice.  In January 2016, Lujan won a special election with 52.4% of only 3,589 votes cast, but his same Democratic opponent then defeated him in the November 2016 general election.  Lujan won again in a

November 2021 special election, this time with 51.2% of the 11,569 votes cast, and he currently represents District 118.

125.    In contested elections in 2016, 2018, and 2020, a cohesive majority of Latino voters in former District 118 preferred the same candidates in each general election.[7]  On average, over 80% of Latino voters supported Latino Democrats Tomas Uresti (2016) or Leo Pacheco (2018 and 2020).

126.    During the 2021 redistricting process, the House Redistricting Committee passed a redistricting plan that left District 118 largely intact.  However, Representative Jacey Jetton of Fort Bend County offered an amendment on the House floor that reconfigured District 118. Despite the objection of most members of the Bexar County delegation, the House adopted the Jetton Amendment, which established the final configuration of current District 118.

127.    Current District 118 loses much of the portion of former District 118 inside Loop 410, including nearly all of the dense Latino neighborhoods north of SW Military Drive, and Harlandale ISD is now divided among three House districts.  To replace this lost population, current District 118 adds large portions of southwest Bexar County and increases the portion of the district on the eastern and northeastern boundary of Bexar County, particularly around Randolph Air Force Base.  Figure 12 depicts current House District 118.

---

[7] The 2014 election in former District 118 was uncontested.

**Figure 12: Current House District 118 (Adopted 2021)**



128.    2020 Census data and 2016-2020 ACS citizenship data indicate that current District 118 has a Latino CVAP concentration of 58%, a reduction of 10 percentage points from the former plan.  Texas's estimate indicates that current District 118 has a Latino CVAP concentration of 57.7%, a reduction of 10.8 percentage points from the former plan.  In 2020, SSVR in current District 118 was 47.6%, and SSTO in current District 118 was 43.9%.  Thus, as of the 2020 general election, current District 118 had 11.9 percentage points lower SSVR than former District 118, and current District 118 had 11.8 percentage points lower SSTO than former District 118, eliminating the Latino voting majority.  Table 4 sets out these changes in full.

**Table 4: House District 118 Comparison**

| Latino CVAP | | SSVR | | SSTO | |
|---|---|---|---|---|---|
| 2013 Plan | 2021 Plan | 2013 Plan | 2021 Plan | 2013 Plan | 2021 Plan |
| 68.5 | 57.7 | 59.5 | 47.6 | 55.7 | 43.9 |

129.    Current District 118 no longer provides an opportunity for Latino voters to elect representatives of their choice.

130.     Latino voters in current District 118 have been cohesive in contested statewide contests that include Latino candidates.  On average, across such elections between 2014 and 2020, more than 80% of Latino voters preferred the same candidates.

131.     However, Anglo voters in current District 118 engage in sufficient bloc voting to enable them to usually defeat Latino voters' preferred candidates.  On average, across contested statewide contests including Latino candidates between 2014 and 2020, less than 20% of Anglo voters in current District 118 supported the Latino-preferred candidate.  As a result of bloc voting and high Anglo turnout relative to Latino eligible voters, Latino-preferred Latino candidates did not receive the most votes within current District 118 in more than two-thirds of statewide contests between 2014 and 2020.

132.     The elimination of a Latino electoral opportunity in the 2021 version of District 118 was easily avoidable.  The House Redistricting Committee's statewide map preserved the Latino electoral opportunity in District 118 (prior to Reprsentative Jetton's floor amendment) without undermining minority electoral opportunities elsewhere in Bexar County.

133.     District 118 in the statewide plan passed by the Texas House Redistricting Committee (Plan H2176) demonstrates that the Latino community in southern Bexar County is sufficiently large and geographically compact to constitute a majority in an additional single-member district that would provide Latino voters with an electoral opportunity.  This configuration maintains the core of Harlandale ISD, while preserving historic linkages to less affluent communities in southern Bexar County.  Figure 13 depicts Bexar County in Plan H2176.

**Figure 13: House District 118 (Plan H2176)**



134.    2020 Census data and 2016-2020 ACS citizenship data indicate that the Latino CVAP concentration in H2176 District 118 is 64.5%, 7.1 percentage points higher than the Latino CVAP in current District 118.  In 2020, SSVR in H2176 District 118 was 55.0%, 7.4 percentage points higher than SSVR in current District 118, and SSTO in H2176 District 118 was 51.2%, 8.1 percentage points higher than SSVR in current District 118.

135.    Latino voters within H2176 District 118 are highly cohesive.  On average, across contested statewide elections including Latino candidates between 2014 and 2020, over 80% of Latino voters in H2176 District 118 preferred the same candidates.

136.    Anglo voters in H2176 District 118 also engage in bloc voting, offering less than 20% support for Latino-preferred candidates in contested statewide elections including Latino

candidates between 2014 and 2020.  Nonetheless, Latino-preferred Latino candidates received the most votes within H2176 District 118 in over 80% of such contests.  Therefore, H2176 District 118 would provide an opportunity for Latino votes to elect their candidates of their choice.

137.    As noted above, in Bexar County, Latino voters bear the effects of discrimination, which hinders their ability to participate effectively in the political process.  *See supra* Paragraph 62.

**House District 31 (South Texas): Discriminatory Results**

138.    The 2021 House plan also eliminates Latino voters' opportunity to elect representatives of their choice in District 31, a South Texas district stretching from the Rio Grande to the San Antonio region.  The 2021 House plan substantially reduces Latino population share and takes advantage of extreme Anglo bloc voting to overwhelm the Latino electorate. Although Latino voters in former District 31, adopted in 2013, reelected their preferred candidate by a comfortable margin in 2020, the incumbent switched parties shortly after Governor Abbott signed the 2021 House plan into law.

139.    In the former House plan, District 31 encompassed ten sparsely populated South Texas counties.  Figure 14 depicts former House District 31.

**Figure 14: Former House District 31 (Adopted 2013)**



140. 2020 Census data and 2016-2020 ACS citizenship data indicate that former District 31 had a Latino CVAP concentration of 75.6% (77.3% by Texas's estimate). In 2020, SSVR in former District 31 was 74.1%, and SSTO in former District 31 was 68.7%.

141. Latino Republican Ryan Guillen has represented House District 31 since 2003, although he was elected from 2002 to 2020 as a Democrat. In the 2020 general election, voters in District 31 reelected Guillen with over 58% of the vote.

142. In the 2020 contest—the only contested election for this seat between 2014 and 2020—a cohesive majority of Latino voters in former District 31 preferred the same candidate, with over 80% of Latino voters supporting Representative Guillen. In this heavily Latino

district, Representative Guillen was elected even though less than 10% of Anglo voters cast ballots for him.

143.    Representative Guillen served on the House Redistricting Committee, but he did not have significant input into the composition of his district.  District 31 did not change from the statewide initial proposal to the final enacted plan.

144.    Current District 31 includes 11 counties, extending further north than in the former configuration.  Figure 15 depicts current District 31.

**Figure 15: Current House District 31 (Adopted 2021)**



145.    2020 Census data and 2016-2020 ACS citizenship data indicate that current District 31 has a Latino CVAP concentration of 64.7%, a reduction of 10.9 percentage points from former District 31.  Texas's estimate indicates that current District 31 has a Latino CVAP concentration of 66.7%, a reduction of 10.6 percentage points from former District 31.  In 2020,

SSVR in current District 31 was 63.9%, and SSTO was 56.3%. Thus, current District 31 reduces SSVR by 10.2 percentage points from former District 31, and current District 31 reduces SSTO by 12.4 percentage points from former District 31. Table 5 sets out these changes in full.

### Table 5: House District 31 Comparison

| Latino CVAP | | SSVR | | SSTO | |
|---|---|---|---|---|---|
| 2013 Plan | 2021 Plan | 2013 Plan | 2021 Plan | 2013 Plan | 2021 Plan |
| 75.6 | 64.7 | 74.1 | 63.9 | 68.7 | 56.3 |

146.    Current District 31 no longer provides an opportunity for Latino voters to elect representatives of their choice.

147.    Latino voters in current District 31 have been cohesive in contested statewide contests that include Latino candidates. On average, across such elections between 2014 and 2020, more than three-quarters of Latino voters preferred the same candidates.

148.    However, Anglo voters in current District 31 engage in sufficient bloc voting to enable them to usually defeat Latino voters' preferred candidates, despite making up a minority of the voters in current District 31. This is because on average across contested statewide contests including Latino candidates between 2014 and 2020, less than 10% of Anglo voters in current District 31 supported the Latino-preferred candidate. As a result of extreme bloc voting and substantially higher Anglo turnout relative to Latino turnout, Latino-preferred candidates did not receive the most votes within current District 31 in more than two-thirds of statewide contests between 2014 and 2020.

149.    Soon after passage of the 2021 House plan, political observers identified the new district configuration as substantially less favorable to Representative Guillen. Although voters in District 31 had elected Guillen as a Democrat for nearly two decades, less than a month after enactment of the 2021 House plan, Guillen switched parties from Democratic to Republican.

150.     The elimination of a Latino electoral opportunity in the 2021 version of District 31 was easily avoidable.  For example, by moving Jim Wells County and Kleberg County from District 43 to District 31 and moving Wilson County and Karnes County from District 31 to District 43, it would be possible to reduce overall population deviations in the two districts, improve compactness, and restore Latino voting strength in District 31.

151.     An illustrative district composed of the following eleven whole counties would establish that the Latino community in South Texas is sufficiently large and geographically compact to constitute a majority in an additional single-member district that would provide Latino voters with an electoral opportunity: Brooks, Duval, Kenedy, Jim Hogg, Jim Wells, Kleberg, La Salle, Live Oak, McMullen, Starr, and Zapata.  This configuration combines rural South Texas counties into a compact district, rather than stringing the district north from the border to the outskirts of San Antonio.  Figure 16 depicts an illustrative District 31*.

**Figure 16: Illustrative House District 31\***



152.    2020 Census data and 2016-2020 ACS citizenship data indicate that the Latino CVAP concentration in illustrative District 31* is 79.7%, 14.6 percentage points higher than the Latino CVAP in current District 31.

153.    Latino voters in illustrative District 31* are highly cohesive.  On average, across contested statewide contests including Latino candidates between 2014 and 2020, 80% of Latino voters preferred the same candidates.

154.    Although less than 10% of Anglo voters in illustrative District 31* vote for Latino-preferred candidates, the increased concentration of Latino voters in the illustrative district (as compared to current District 31) would allow Latino-preferred Latino candidates to

receive the most votes in these contests.  Therefore, illustrative District 31* would provide an opportunity for Latino voters to elect their candidates of choice.[8]

155.    Latino voters in South Texas bear the effects of discrimination to an even greater degree than do minority voters in some other parts of the State.  This hinders their ability to participate effectively in the political process despite population majorities.  For example, the per capita income for Latino residents of current District 31 is less than $17,000, little more than half of the per capita income for Anglo residents of current District 31.  Moreover, more than a quarter of Latino residents of current District 31 live in poverty in an average year, nearly double the rate for Anglo residents of current District 31 and more than three times the rate for Anglo Texans statewide.

**House Districts in El Paso and West Texas: Discriminatory Results**

156.    The current House plan, adopted in 2021, entirely removes District 76 from El Paso County, eliminating an effective Latino opportunity district and pairing two Latina incumbents.  This allowed the House plan to substantially overpopulate heavily Latino districts in El Paso County and West Texas and substantially underpopulate heavily Anglo districts in West Texas and the Panhandle, protecting Anglo voting strength and Anglo incumbents in a slow-growth region.

157.    Under the former House plan, adopted in 2013, El Paso County and West Texas were divided into six heavily Latino districts.

158.    Under the former House plan, five districts were contained entirely within El Paso County (Districts 75, 76, 77, 78, and 79), and a sixth, District 74, was spread across twelve

---

[8] This illustrative configuration in Figure 16 reduces the Latino CVAP concentration in adjacent House District 43.  House District 43 does not provide a Latino electoral opportunity in either the current House Plan or in this illustrative configuration.

counties.  Figure 17 depicts the former House districts in El Paso County and West Texas, and Figure 18 depicts the former House districts in El Paso County.

### Figure 17: Former El Paso and West Texas House Districts (Adopted 2013)

**Figure 18: Former El Paso House Districts (Adopted 2013)**



159.     2020 Census data and 2016-2020 ACS citizenship data indicate that Districts 74, 75, 76, 77, 78, and 79 in the 2013 House plan have Latino CVAP concentrations of 74.5%, 87.8%, 87.1%, 74.2%, 66.9%, and 78.8%, respectively (74.8%, 88.8%, 86.9%, 74.3%, 66.3%, and 79.2% by Texas's estimate).  In 2020, SSVR in these districts was 67.7%, 76.6%, 79.7%, 62.4%, 53.2%, and 69.5%, and 2020 SSTO was 62.9%, 75.9%, 80.1%, 60.7%, 52.7%, and 70.6%, respectively.

160.     In 2020, voters in these districts elected Latino Democrat Eddie Morales, Latino Democrat Mary González, Latino Democrat Claudia Ordaz Perez, Latino Democrat Evelina "Lina" Ortega, Latino Democrat Joe Moody, and Latino Democrat Art Fierro.

161.     Few elections for the Texas House have been contested in these districts.

162.     In the former House plan, each of these districts provided Latino voters with the opportunity to elect their preferred representatives to the Texas House.

163.     In the current 2021 House plan, Districts 74, 75, 77, 78, and 79 each include a portion of El Paso County.  District 76 has been removed entirely from the region.  Figure 19 depicts the current House districts in El Paso County and West Texas, and Figure 20 depicts the current House districts in El Paso County.

**<u>Figure 19: Current El Paso and West Texas House Districts (Adopted 2021)</u>**



**Figure 20: Current El Paso House Districts (Adopted 2021)**



164.  In the current House plan, the five remaining districts in El Paso and West Texas are uniformly overpopulated, by an average of 4.25% above the ideal population.  District 77 is overpopulated by 4.95% above the ideal, and District 78 is overpopulated by 4.88% above the ideal.  This has the effect of packing unnecessarily large numbers of Latino voters into each district.

165.  Because the current House plan packs the majority-Latino El Paso and West Texas districts, it is able to uniformly underpopulate heavily Anglo districts in West Texas and the Panhandle.  Specifically, Districts 69, 71, 72, 82, 83, 84, 86, 87, and 88 are underpopulated by an average of 3.75% below the ideal population.  District 69 is underpopulated by 4.52%

below the ideal, and District 86 is underpopulated by 4.63% below the ideal.  Both are less than

25% Latino CVAP.

166.    By removing District 76 from El Paso County, the current House plan paired two

Latina incumbents, Representative Claudia Ordaz Perez of District 76 and Representative Lina

Ortega of District 77.

167.    By moving District 74 into El Paso County, the current House plan pairs sizeable

Latino communities in El Paso and Eagle Pass, which are nearly 500 miles apart.

168.     In the current House plan, 2020 Census data and 2016-2020 ACS citizenship data

indicate that Districts 74, 75, 77, 78, and 79 have Latino CVAP concentrations of 75.5%, 88.0%,

85.9%, 67.7%, and 77.1%, respectively (77.7%, 88.7%, 85.9%, 67.5%, and 76.2% by Texas's

estimate).  In 2020, SSVR in these districts was 68.2%, 76.9%, 76.6%, 53.9%, and 67.4%, and

2020 SSTO in these districts was 65.2%, 76.0%, 75.9%, 52.8%, and 69.0%, respectively.  Table

6 sets out those changes in full.

**Table 6: El Paso and West Texas House District Comparison**

| District | Latino CVAP | | SSVR | | SSTO | |
|---|---|---|---|---|---|---|
| | 2013 Plan | 2021 Plan | 2013 Plan | 2021 Plan | 2013 Plan | 2021 Plan |
| **74** | 74.5 | 75.5 | 67.7 | 68.2 | 62.9 | 65.2 |
| **75** | 87.8 | 88.0 | 76.6 | 76.9 | 75.9 | 76.0 |
| **76** | 87.1 | n/a | 79.7 | n/a | 80.1 | n/a |
| **77** | 74.2 | 85.9 | 62.4 | 76.6 | 60.7 | 75.9 |
| **78** | 66.9 | 67.7 | 53.2 | 53.9 | 52.7 | 52.8 |
| **79** | 78.8 | 77.1 | 69.5 | 67.4 | 70.6 | 69.0 |

169.    Current House District 81 is another majority-Latino district, adjacent to current

District 74.  2020 Census data and 2016-2020 ACS citizenship data indicate that current District

81 has a Latino CVAP concentration of 52.7% (52.8% by Texas's estimate).  In 2020, SSVR in

current District 81 was 43.7%, and SSTO in current District 81 was 36.5%.

170.     District 81 has been represented by Brooks Landgraf, an Anglo Republican, since 2015.  In the 2018 contest—the only contested election for this seat between 2014 and 2020—a cohesive majority of Latino voters in former District 81 preferred the same candidate.  In that contest, over two-thirds of Latino voters supported Armando Gamboa, a Latino Democrat.  However, less than 10% of Anglo voters supported Gamboa, who was soundly defeated.

171.     Latino voters across El Paso and West Texas—within current Districts 74, 75, 77, 78, 79, and 81—have been cohesive in contested statewide elections that include Latino candidates.  On average, across such elections between 2014 and 2020, more than 80% of Latino voters preferred the same candidates.  Current District 81 combines the least cohesive Latino voters in the region.  But even there, more than 60% of Latino voters in current District 81 favored the same candidates in contested statewide elections that included Latino candidates between 2014 and 2020.  For the same elections between 2016 and 2020, over 70% of Latino voters in current District 81 preferred the same candidates.

172.     Latino voters in Districts 74, 75, 77, 78, and 79 maintain an opportunity to elect their preferred candidates.  However, Latino voters in District 81 lack a similar electoral opportunity.  Anglo voters in current District 81 engage in sufficient bloc voting to enable them to usually defeat Latino voters' preferred candidates.  In 2014, statewide contests including Latino candidates were not clearly polarized in District 81.[9]  However, on average, across contested statewide contests including Latino candidates between 2016 and 2020, less than 10% of Anglo voters in current District 81 supported the Latino-preferred candidate.  As a result of bloc voting and high Anglo turnout relative to Latino eligible voters, Latino-preferred Latino

---

[9] SSTO in current District 81 was less than 20% of total turnout in the 2014 general election, despite the fact that contemporaneous SSVR in the District was nearly 40%.

candidates did not receive the most votes within current District 81 in any statewide contests between 2016 and 2020.

173. The State could have avoided the elimination of a sixth Latino electoral opportunity district in El Paso and West Texas. The Latino community in El Paso and West Texas is sufficiently large and geographically compact to allow for six districts with Latino CVAP majorities that would provide an electoral opportunity to Latino voters. In particular, House District 81 could be extended westward into El Paso County to become the sixth Latino electoral opportunity district.

174. In an illustrative configuration, Districts 75*, 77*, 78*, and 79* would remain wholly within El Paso County, while illustrative District 81*—rather than illustrative District 74*—would include a portion of El Paso County, along with counties to the east and north, up through Gaines County. Illustrative District 74* would remain outside of El Paso County, reincorporating Pecos County and including Latino communities in southern Ector County. This configuration would keep El Paso County as whole as possible, while not overpopulating House districts there. It would avoid pairing District 76 Representative Claudia Ordaz Perez with returning incumbents in illustrative District 75* or illustrative District 77*.

175. This illustrative configuration would combine portions of El Paso County and nearby rural counties in illustrative District 81*, connecting communities with shared economic interests, including in the oil and gas industry. Illustrative District 74* would maintain the core of current District 74 and its border focus, while restoring Pecos County to the district and joining a major transportation artery for the Latino communities in Odessa, Fort Stockton, Presidio, and Ojinaga, Mexico. Figure 21 depicts illustrative Districts 74*, 75*, 77*, 78*, 79*, and 81*. Figure 22 depicts the portion of this configuration in El Paso County.

56

**Figure 21: Illustrative El Paso and West Texas House Districts**



**Figure 22: Illustrative El Paso and West Texas House Districts (El Paso County)**



176.    2020 Census data and 2016-2020 ACS citizenship data indicate that the Latino CVAP concentrations in illustrative Districts 74*, 75*, 77*, 78*, 79*, and 81* are 73.5%, 87.0%, 86.6%, 70.1%, 70.4%, and 74.1%, respectively.  Of particular note, Latino CVAP in illustrative District 81* is 8.3% higher than the Latino CVAP in current District 81.

177.    Latino voters within the six districts in this illustrative map are highly politically cohesive.  On average, across contested statewide elections including Latino candidates between 2014 and 2020, over 70% of Latino voters preferred the same candidates in each district.[10]

178.    Although Anglo voters in the illustrative districts also engage in bloc voting to varying degrees, Latino-preferred Latino candidates would receive the most votes in most of these contests.  Specifically, Latino-preferred Latino candidates would receive the most votes in 57% of these contests in illustrative District 74*, 71% of these contests in illustrative District 81*, and 100% of these contests in illustrative Districts 75*, 77*, 78*, and 79*.  Therefore, the illustrative configuration would provide opportunities for Latino voters to elect candidates of their choice in six El Paso and West Texas districts.

179.    In El Paso County, Ector County, and Maverick County, from which the El Paso and West Texas districts draw most of their population, Latino voters bear the effects of discrimination, which hinders their ability to participate effectively in the political process.  El Paso statistics are provided above.  *See supra* Paragraph 62.  The mean household income of Latino residents of Ector County is less than two-thirds the mean household income of Anglo residents.  And the share of Latinos below the poverty line is more than one-and-a-half times as high as the Anglo share in Ector County.  Maverick County has few Anglo residents, but Latino per capita income is little more than $17,000 a year, and more than 25% of Latino residents

---

[10] In three of the six districts, 80% or more of Latino voters preferred the same candidates.

experience poverty during an average year.  Similar patterns persist in other portions of these districts as well.

**Additional Facts Relevant to Inquiry into Discriminatory Purpose and Totality of Circumstances**

180.     Texas has a long history of official discrimination touching on the right to vote. Beyond redistricting, as described in Paragraphs 19-21, *supra*, federal intervention has been necessary to eliminate numerous other procedures or devices intentionally used to restrict minority voting in Texas.  *See, e.g.*, *White*, 412 U.S. at 768 (poll tax); *Terry v. Adams*, 345 U.S. 461 (1953) (private primary); *Smith v. Allwright*, 321 U.S. 649 (1944) (white primary); *Nixon v. Herndon*, 273 U.S. 536 (1927) (exclusion of minorities).  In recent years, courts have found that Texas's voter identification requirements discriminated against minority voters.  *See, e.g.*, *Veasey v. Abbott*, 830 F.3d 216, 243-65 (5th Cir. 2016) (en banc).

181.     Voting in Texas continues to be racially polarized throughout much of the State. By one recent estimate, Anglo voters and Latino voters in Texas differ in their support for statewide candidates by 30-40 percentage points.  *See, e.g.*, *Veasey*, 830 F.3d at 258.  This perpetuates a longstanding pattern of statewide polarization previously recognized by the Supreme Court.  *See LULAC*, 548 U.S. at 427.

182.     Based on 2020 Census data and 2016-2020 ACS citizenship data, proportional representation for Latino voters in Texas would be 12 Congressional seats.  Under the former plan, Latino voters had the opportunity to elect their preferred candidates in roughly 8 of 36 Congressional seats.  Under the current plans, Latino voters have the opportunity to elect their preferred candidates in roughly 8 of 38 Congressional seats, representing a diminished share of the Texas Congressional delegation despite relative population gains that increased their share of Texas's population and CVAP.

183.     Based on 2020 Census data and 2016-2020 ACS citizenship data, proportional representation for Latino voters in Texas would be 46 Texas House seats.  Under the former plan, Latino voters had the opportunity to elect their preferred candidates in roughly 33 of 150 Texas House seats.  Under the current plans, Latino voters have the opportunity to elect their preferred candidates in roughly 31 of 150 Texas House seats, representing a diminished share of the Texas House seats despite relative population gains that increased their share of Texas's population and CVAP.

184.     Latinos are underrepresented as elected officials in Texas, including in the Texas delegation to the U.S. House of Representatives and the Texas House.  Over 60% of Texas Legislators in the 87th Legislature are Anglo, even though Anglos make up only 40% of Texas's population, 43% of the State's VAP, and a bare majority of Texas's CVAP.

185.     According to the Census Bureau Current Population Survey, only 63% of eligible Latino Texans and 70% of eligible Black Texans were registered to vote in the 2020 Presidential election, as compared to over 78% of eligible Anglo Texans.  Overall, according to the Current Population Survey, only 53% of eligible Latino Texans and 61% of Black Texans voted in the 2020 Presidential elections, as compared to 72% of eligible Anglo Texans.

186.     As of November 2020, only 24% of registered voters in Texas had Spanish surnames (as defined by the State), substantially less than the Latino CVAP share.

187.     Significant socioeconomic disparities exist between Anglo and Latino residents of Texas.  These disparities hinder the ability of Latino residents to participate effectively in the political process.

188.     According to ACS data, Latinos and Blacks in Texas experience poverty at roughly twice the rate of Anglos, and the Anglo median household income is over one and one-

half times Latino and Black median household levels.  Latinos and Blacks in Texas are also far more likely than Anglos to be unemployed and to lack a high school diploma.

189.    In the third quarter of 2021, the unemployment rate for Black Texans was 9.2%, more than double the 4.1% unemployment rate for Anglo Texans.  The unemployment rate for Latino Texans was 7.0%, again nearly twice as high as the rate for Anglo Texans.

190.    Minority Texans also lack health insurance at substantially higher rates than do Anglo Texans, with over a quarter of Latino Texans uninsured.

191.    In areas including education, employment, and housing, Texas and jurisdictions across the State similarly have engaged in widespread official discrimination.  *See, e.g.*, Consent Decree, *United States v. City of Austin*, No. 1:14-cv-533 (W.D. Tex. June 9, 2014), ECF No. 3-4 (employment); *United States v. Texas*, 601 F.3d 354, 373-74 (5th Cir. 2010) (education); *Dews v. Town of Sunnyvale*, 109 F. Supp. 2d 526, 571-73 (N.D. Tex. 2000) (housing).

192.    Some Texas Congressional and legislative districts are geographically enormous, which impedes the ability of minority voters to participate in the political process.  Most notably, current Congressional District 23 stretches roughly 500 miles from San Antonio to El Paso.

193.    Some recent political campaigns in Texas have been characterized by racial appeals, including advertisements that demonized Latino immigrants as being part of an "illegal invasion" and mailers that appeared to darken the skin of a Black Congressional candidate.

## CAUSE OF ACTION

194.    The United States realleges and incorporates by reference the allegations set forth above.

195.    Section 2 of the Voting Rights Act establishes that "[n]o voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State

or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race[,] color, [or membership in a language minority group]."  52 U.S.C. § 10301(a).

196.    A violation of Section 2 "is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by [Section 2] in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice."  52 U.S.C. § 10301(b).

197.    The 2021 Congressional Plan has the purpose of denying or abridging the right to vote on account of race, color, or membership in a language minority group, in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301.

198.    The 2021 Congressional Plan results in a denial or abridgement of the right of citizens of the United States to vote on account of race, color, or membership in a language minority group, in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301.

199.    The 2021 House Plan results in a denial or abridgement of the right of citizens of the United States to vote on account of race, color, or membership in a language minority group, in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301.

200.    Unless enjoined by order of this Court, Defendants will continue to violate Section 2 by administering, implementing, and conducting elections for the Texas Congressional delegation and the Texas House using the 2021 Congressional Plan and the 2021 House Plan.

### PRAYER FOR RELIEF

WHEREFORE, the United States prays that the Court enter an order:

(1)     Declaring that the 2021 Congressional Plan has the purpose of denying or abridging the right to vote on account of race, color, or membership in a language minority group, in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301;

(2)     Declaring that the 2021 Congressional Plan results in a denial or abridgement of the right of any citizen of the United States to vote on account of race, color, or membership in a language minority group, in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301;

(3)     Declaring that the 2021 House Plan results in a denial or abridgement of the right of any citizen of the United States to vote on account of race, color, or membership in a language minority group, in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301;

(4)     Enjoining Defendants, their agents and successors in office, and all persons acting in concert with them from administering, implementing, or conducting any future elections for the Texas Congressional Delegation under the 2021 Congressional Plan and for the Texas House under the 2021 House Plan;

(5)     Establishing interim redistricting plans for the Texas Congressional Delegation and the Texas House that remedy unlawful components of the 2021 Congressional Plan and 2021 House Plan;

(6)     Ordering Defendants to devise and implement permanent redistricting plans for the Texas Congressional Delegation and the Texas House that comply with Section 2 of the Voting Rights Act;

(7)     Directing Defendants, their agents and successors in office, and all persons acting in concert with them to take appropriate action to ensure uniform compliance with this Court's order by state and local authorities administering the State's electoral processes; and

(8)     Granting such additional relief as the interests of justice may require.

Date: June 6, 2022

PAMELA S. KARLAN
Principal Deputy Assistant Attorney General
Civil Rights Division

*/s/ Daniel J. Freeman*
T. CHRISTIAN HERREN, JR.
TIMOTHY F. MELLETT
DANIEL J. FREEMAN
JANIE ALLISON (JAYE) SITTON
MICHELLE RUPP
JACKI L. ANDERSON
JASMIN LOTT
HOLLY F.B. BERLIN
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 6, 2022, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system, which will send notification of this filing to counsel of record.

*/s/ Daniel J. Freeman*
Daniel J. Freeman
Voting Section
Civil Rights Division
U.S. Department of Justice
daniel.freeman@usdoj.gov
