UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **LEAGUE OF UNITED LATIN AMERICAN CITIZENS,** *et al.*, | § § § | |
| *Plaintiffs*, | § § | |
| **EDDIE BERNICE JOHNSON,** *et al.*, | § § | |
| *Plaintiff-Intervenors*, | § § | **EP-21-CV-00259-DCG-JES-JVB** |
| | § | **[Lead Case]** |
| **v.** | § § | |
| **GREG ABBOTT,** *in his official capacity as Governor of the State of Texas*, *et al.*, | § § § | |
| *Defendants*. | § § | |

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § § | |
| *Plaintiff*, | § § | |
| **v.** | § § | **Case No. 3:21-CV-00299-DCG-JES-JVB** |
| **STATE OF TEXAS,** *et al.* | § § | **[Consolidated Case]** |
| *Defendants*. | § § | |

**RESPONDENTS ERIC WIENCKOWSKI AND THOMAS BRYAN'S MEMORANDUM OF LAW IN OPPOSITION TO THE UNITED STATES' MOTION TO COMPEL COMPLIANCE WITH NON-PARTY SUBPOENA**

Respondents Eric Wienckowski and Thomas Bryan (collectively, "Respondents")

respectfully submit this Memorandum of Law in Opposition to the United States' Motion to

Compel Compliance with Non-Party Subpoena (Doc. No. 384).[1]  The United States has failed to carry its burden to show that Respondents must produce documents in their possession, all of which are subject to numerous privileges and protections.  For the reasons set forth below, the Court should deny the United States' Motion to Compel.

## I.       Background

Thomas Bryan is a demographer who was hired as a consulting expert by the law firm Butler Snow LLP to assist the firm in advising its client—the Chairman and his staff of the House Redistricting Committee of the Texas House of Representatives, including the General Counsel to the Texas House—in state legislative, board of education, and congressional reapportionment and redistricting matters.  Ex. 1, Bryan Decl.  Mr. Bryan's engagement letter with the firm explicitly states that the firm hired Mr. Bryan in anticipation of litigation.  Ex. 1A, Bryan Engagement Ltr.  After Mr. Bryan was retained by Butler Snow, he hired Mr. Wienckowski to assist him in providing advice and consulting to the firm and its clients.  Ex. 1, Bryan Decl.  Respondents provided services only as directed by Butler Snow to assist the firm in rendering legal advice and consultation to the firm's clients.  Ex. 2, Field Decl.

The United States served subpoenas on Respondents seeking documents and communications Respondents prepared in their course and scope of work for Butler Snow.  Ex. 3,

---

[1] Respondents recognize that the United States' motion to compel as to Respondent Thomas Bryan is not yet before this Court.  The United States served Respondents with identical subpoenas, Respondents served the United States with identical objections and responses, and the United States filed near identical enforcement actions in the Southern District of New York for Mr. Wienckowski and the Eastern District of Virginia for Mr. Bryan.  Pending in the Eastern District of Virginia is Mr. Bryan's unopposed motion to transfer to this Court the enforcement action as to his subpoena.  *See In re Subpoena to Thomas Bryan*, No.3:22mc007 (E.D. Va.), Doc. No. 5 (filed June 24, 2022).  Respondents anticipate the United States' enforcement action in the Thomas Bryan matter will be transferred to this Court at any moment.  Accordingly, in the interest of the Court's time, Respondents offer a combined response to the United States' enforcement actions as to both Mr. Wienckowski and Mr. Bryan.

Bryan & Wienckowski Subpoenas.  Respondents timely served objections and responses to the United States' subpoenas, in which Respondents explained that any document in their possession is shielded from disclosure under a number of protections and privileges, including the work-product immunity doctrine, the non-testifying expert protection, the attorney-client privilege, and the legislative privilege.  *See generally id.*  The United States subsequently filed nearly identical enforcement actions to compel responses to the subpoenas in the Eastern District of Virginia and the Southern District of New York, the districts in which Respondents reside.  Mot. at 1.  Upon a motion filed by Mr. Wienckowski, the Southern District of New York transferred the enforcement action to this Court, which the Court then consolidated with the underlying redistricting litigation.  *See United States v. Wienckowski*, No. 3:22-MC-00219 (W.D. Tex.), Doc. No. 17 (consolidating the enforcement action as to Mr. Wienckowski with the redistricting litigation pending in this Court).  Mr. Bryan's motion to transfer the enforcement action related to the subpoena issued to him is currently pending in the Eastern District of Virginia.  *In re Subpoena to Thomas Bryan*, No.3:22mc007 (E.D. Va.), Doc. No. 5 (filed June 24, 2022).

## II.    Legal Standard

Rule 45 of the Federal Rules of Civil Procedure sets forth numerous limitations and protections available to a non-party subjected to a Rule 45 subpoena.  *See generally* Fed. R. Civ. P. 45.  The rule prohibits subpoenas that target "privileged or other protected matter" or are otherwise unduly burdensome.  Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv).  Specifically, Rule 45 provides that a person may withhold subpoenaed information "under a claim the information is privileged or subject to protection as trial-preparation material."  Fed. R. Civ. P. 45(e)(2).  The person asserting a claim of privilege must expressly make the claim and describe the nature of the withheld documents such that the party seeking the documents will be able to assess the

applicability of the claimed privileges or protections.  Fed. R. Civ. P. 45(e)(2).

### III.   Argument

As outlined in Respondents' detailed objections and responses to the subpoenas, every document in Respondents' possession is protected from disclosure based on several overlapping protections and privileges.  Perhaps most significantly, due to the nature of Respondents' role as consulting experts to the Butler Snow law firm, any potentially responsive document in Respondents' possession is guarded from disclosure by Rule 45's work-product protection and the attorney-client privilege.

The United States has wholly failed to offer any legitimate basis on which any of Rule 45's protections may be overcome in this instance.  Respondents will address each of their objections, and the United States' arguments, in turn.

### A.  The United States seeks irrelevant information and documents.

The United States contends that the requested materials are relevant and must therefore be produced.  Mot. at 4.  But in making this categorical argument, the United States fails to address the specific relevancy objections Respondents raised in their objections and responses.  Ex. 4, Objections & Responses.  For example, the United States offers no explanation as to why any documents or communications dated prior to the release of the Census Bureau data in the late summer of 2021, or any documents created after October 25, 2021, the date the redistricting bills were enacted, are relevant.  *Perez v. Perry*, Civ. No. SA-11-CV-360-OLG-JES-XR, 2014 WL 3359324, at *2 (W.D. Tex. July 9, 2014) (concluding that communications after passage of legislative maps is irrelevant); *see* Ex. 4, Objections and Responses.  Similarly, the United States' overbroad requests for "all documents" relating to the redistricting process in Requests 6, 7, and 8 necessarily call for irrelevant documents.  Ex. 3, Bryan & Wienckowski Subpoenas at 9-12.  The

United States provides no justification for why Respondents should be compelled to undertake the arduous task of producing such irrelevant documents.

**B. Respondents have not waived any claimed privilege.**

The United States claims that by not producing a privilege log, Respondents waived any claim of privilege. Mot. at 5. But the United States' position is inconsistent with Rule 45 and the way in which courts in this Circuit have applied Rule 45. Rule 45(d)(2) requires that a person claiming any privilege or protection in response to a subpoena to "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(d)(2). Respondents are consulting-only experts who advised Butler Snow in the firm's legal advice to its clients, the Chairman of the House Redistricting Committee and his staff and the General Counsel to the Texas House, during the 2021 redistricting process. Ex. 2, Field Decl. As Respondents explain in their objections and responses, any document in Respondents' possession is subject to the work-product protection, the non-testifying expert protection, the attorney-client privilege, and the legislative privilege. Ex. 4, Objections and Responses. In other words, there is no document in Respondents' possession that is not privileged. Because Respondents asserted these specific protections and privileges to every document in their possession due to the nature of their role as consulting experts to Butler Snow, a privilege log would not provide any additional information that would enable the United States "to assess the claim" of privilege. Fed. R. Civ. P. 45(e)(2)(A).

Moreover, Rule 45 does not state that a privilege log is required every time a non-party individual claims protections or privileges, nor does the rule prescribe a time for producing a privilege log. The plain text of Rule 45 certainly does not suggest that a non-party individual

waives privileges or protections the individual specifically raised in his objections and responses to a Rule 45 subpoena by failing to produce a privilege log prior to the deadline to respond to the subpoena. *See id.* Instead, Rule 45 simply requires the person subject to the subpoena to expressly claim the privilege and describe the nature of the withheld documents so that the parties may asses the claim of privilege. *Id.*

The authority the United States cites does not support its contention that Respondents have waived any claimed protection or privilege. For example, *OneBeacon Ins. Co. v. Forman Int'l, Ltd.*, No. 1:04cv2271 (RWS), 2006 WL 3771010 (S.D. N.Y. Dec. 13, 2006), involved a subpoena targeted at a party to the litigation (and the party's attorneys)—not a third party such as Respondents. *Id.* at *1. Further, the court in *OneBeacon* did not order the target of the subpoena to produce privileged documents on the basis that any privilege was waived by the party's failure to produce a privilege log. *Id.* at *8. Instead, the court ordered the party to produce a privilege log. *Id.* at *8-9. Similarly, *Agee v. Wayne Farms, L.L.C.*, Nos. 2:06cv268KS-MTP, 2:07cv29KS-MTP, 2007 WL 2903208, at *1 (S.D. Miss. 2007), involved a subpoena targeting a party, which is an entirely different context than a subpoena targeting a non-party consulting expert. Moreover, the court in *Agee* concluded that the party waived its privilege by failing to produce a privilege log pursuant to the Court's local rules—*not* pursuant to Rule 45. *Id.* at *3.

Read together, the authority the United States relies on does not support the United States' position that Respondents waived any claimed privileges or protections by failing to produce a privilege log. To the contrary, courts in the Fifth Circuit have explained that "where a party has asserted a privilege but has simply failed to submit a complete and/or timely privilege log, courts often do not find a waiver of privilege." *Louisiana CNI, LLC v. Landmark Am. Ins. Co.*, No. 06-112-D-M2, 2006 WL 8435026, at *8 (M.D. La. Oct. 19, 2006) (collecting cases). Indeed, even if

a privilege log is required under Rule 45, it is unclear as to when the person subject to the subpoena should produce such a log. *See Am. Fed'n of Musicians of the U.S. & Can. v. Skodam Films, LLC*, 313 F.R.D. 39, 56 (N.D. Tex. 2015) (collecting cases analyzing the ambiguity on when and under what circumstances a privilege log is required under Rule 45). Here, a privilege log is not required because *every* document in Respondents' possession is protected by the various protections and privileges discussed below due to the nature of Respondents' relationship with Butler Snow. *See In re Hubbard*, 803 F.3d 1298, 1311 (11th Cir. 2015) (concluding that Rule 45 does not require a privilege log when "none of the information sought could have been outside of the privilege"). Because Rule 45 is explicitly concerned with ameliorating the burdens placed on non-party individuals served with a subpoena, a privilege log would serve no legitimate purpose here other than to add additional and unwarranted burden on Respondents. *See Medina v. Schnatter*, No. 1-22-CV-498-LY, 2022 WL 2161712, at *2 (W.D. Tex. June 15, 2022) (explaining that Rule 45 "affords non-parties greater protection in terms of the burden that can be imposed upon them"). In any event, to the extent a privilege log may ultimately be required, there is no support for the proposition that, under Rule 45, Respondents have waived any privilege by not producing a privilege log at this specific juncture.

## C. Respondents have asserted valid protections and privileges that apply to every document or communication requested in the subpoena.

The United States' motion to compel should be denied because several protections and privileges shield these documents and communications from disclosure, including the work-product protection, the trial preparation protection, the attorney client privilege, and the legislative privilege.

### 1.   The work-product protection applies to all documents in Respondents'
   possession.

Rule 45 expressly extends work-product protections to non-parties served with Rule 45

subpoenas by not requiring "disclosure of privileged or *other protected matter*."  Fed. R. Civ. P.

45(d)(3)(A)(iii) (emphasis added); *see also La Union Del Pueblo Entero v. Abbott*, No. SA-21-

CV-00844-XR, 2022 WL 1667687, at *1 (W.D. Tex. May 25, 2022) ("Rule 45(e)(2) governs a

non-party's withholding of information on the grounds of privilege or work-product protections."

(quoting *Skodam Films,* 313 F.R.D. at 46); *Spilker v. Medtronic, Inc.*, No. 4:13-CV-76-H, 2015

WL 12851391, at *3 (E.D.N.C. Jan. 6, 2015) ("Rule 45 expressly provides the work product of

non-parties . . . protection from discovery."); *Carnes v. Crete Carrier Corp.*, 244 F.R.D. 694, 699

(N.D. Ga. 2007) (extending work-product protection to non-party because "Rule 45 . . . suggest[s]

that the scope of protection should extend to a non-party"); *In re: Motor Fuel Temperature Sales*

*Pracs. Litig.*, No. 07-MD-1840-KHV, 2010 WL 11431875, at *4 n.27 (D. Kan. July 7, 2010)

("Rule 45(c)(3), (d)(2) extends the same work-product protection to non-parties served with a

subpoena.  Courts have therefore applied the work-product standards embodied in Rule 26(b)(3)

when a non-party objects to a subpoena on work-product grounds.").  "The work product doctrine

protects that which an attorney causes to be created in anticipation of litigation."  *King v. Odeco*

*Inc.*, 106 F.3d 396 (5th Cir. 1997).  In the redistricting context, work-product protections extend

to a consulting expert who was hired by lawyers advising legislators in the redistricting process.

*See Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 303 (D. Md. 1992)

(explaining that if a consulting expert is hired to advise in the redistricting process, and the expert

is hired in anticipation of litigation, the expert is protected from discovery by nature of the work-

product protection).

Butler Snow LLP retained Thomas Bryan as a consulting expert to provide advice to the

firm and its clients—the Chairman of the House Redistricting Committee, the Chairman's staff, and the General Counsel to the Texas House—as needed in state legislative, board of education, and congressional reapportionment and redistricting matters.  *See* Ex. 1A, Bryan Engagement Ltr.; Ex. 2A, Butler Snow Engagement Ltr.  Mr. Bryan, in turn, hired Mr. Wienckowski to assist Mr. Bryan in providing expert consulting services to Butler Snow LLP and its clients.  Ex. 1, Bryan Decl.  The engagement agreement between Mr. Bryan and Butler Snow explicitly states that Mr. Bryan was hired in anticipation of litigation: "The nature and history of redrawing political boundaries at the statewide level is such that litigation may result in the process and thus we are retaining you in anticipation of litigation."  Ex. 1A, Bryan Engagement Ltr.  Indeed, Mr. Bryan has understood since the onset of his engagement that he was retained in anticipation of litigation. *See* Ex. 1, Bryan Decl..  Mr. Bryan's engagement letter and his understanding of his role leave no doubt that Mr. Bryan was retained as a consulting expert in anticipation of litigation.  *See Wells Fargo Bank, N.A. v. ANC Vista I, LLC*, No. 2:14-CV-00840-JCM, 2015 WL 557069, at *2 (D. Nev. Feb. 11, 2015) (explaining that in determining whether a document was prepared in anticipation of litigation, "courts weigh factors such as the timing of the retention of the non-testifying expert and the existence of other evidence, such as supporting affidavits and engagement letters").  Because Mr. Wienckowski was hired by Mr. Bryan, any documents in Mr. Wienckowski's possession are subject to the same work-product protections afforded to Mr. Bryan by virtue of the engagement between Mr. Bryan and Butler Snow LLP.  Accordingly, all documents in Respondents' possession are protected work-product and thus protected from discovery under Rule 45.

Finally, the United States has not carried its burden to demonstrate that the work-product doctrine should be overcome based on the facts and circumstances of this case.  Indeed, the United

States does not even make such an argument in its motion to compel.

There are generally two categories of protected work-product: "fact" or "ordinary" work-product—any material "prepared in anticipation of litigation," and "core "or "opinion" work-product—which includes the "mental impressions, conclusions, opinions or legal theories of an attorney."  Fed. R. Civ. P. 26(b)(3)(A)&(B); *see Carnes*, 244 F.R.D. at 699 (applying Rule 26(b)(3)'s work product protections to a subpoena issued under Rule 45).  Because of Respondents' role as consulting experts hired by Butler Snow in anticipation of litigation, any document or communication potentially responsive to the subpoenas in Respondents' possession is necessarily either fact or opinion work-product.  To overcome the fact work-product protection, the United States must demonstrate a substantial need for the materials to prepare its case and that it cannot, without undue hardship, obtain their substantial equivalent by other means.  Fed. R. Civ. P. 26(b)(3)(A)(ii); *Doe 1 v. Baylor Univ*, 335 F.R.D. 476 (W.D. Tex. 2020).  Opinion, work-product, on the other hand, is generally afforded near absolute protection from discovery.  *See In re Int'l Sys. & Ctrls. Corp Securities Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982) (explaining that courts have described the protection afforded to opinion work product as "an almost absolute protection").  Belying any notion that the United States should be allowed to pierce the fact work-product protection is the availability of the information the United States seeks from other means.  Indeed, as discussed in Respondents' objections and responses, much of the information the United States seeks is publicly available.  Ex. 4, Objections & Responses.  The United States has wholly failed to carry its burden to demonstrate that it cannot obtain the materials it seeks from Respondents through other means or that it has a substantial need for the protected information.  Needless to say, the United States certainly has not satisfied the far higher standard to pierce the opinion work-product protection.  *Teleplus, Inc. v. Avantel, S.A.*, No. SA 98-CA-849 WWJ, 2003

WL 23282491, at *3 (W.D. Tex. Apr. 9, 2003) ("Opinion work product is protected absolutely from production[.]").

In sum, any potentially responsive document in Respondents' possession is guarded from disclosure under the Rule 45's well-settled work-product protection. Butler Snow's engagement letter with Mr. Bryan explicitly states that Mr. Bryan was retained in anticipation of litigation. The United States has not demonstrated any need, much less a substantial one, for the materials requested nor has it shown that it cannot obtain the information by other means.

### 2. The trial preparation protection extends to every document in Respondents' possession.

Alternatively, the trial preparation protection afforded to non-testifying experts extends to all documents in Respondents' possession. The United States contends that Rule 26(b)(4)(D) cannot apply to Respondents' documents because the rule applies only to interrogatories or depositions. Mot. at 6-7. But courts have explained that Rule 26(b)(4)(D)'s protections should not be so narrowly construed and may apply to attempts to discover documents beyond interrogatories or depositions. *See Liveperson, Inc. v. 24/7 Customer, Inc.*, No. 14 CIV. 1559 RWS, 2015 WL 4597546, at *2 (S.D.N.Y. July 30, 2015) ("Defendant's contention that Rule 26(b)(4)(D)'s disclosure limitations apply only to discovery requests is unconvincing."); *see ANC Vista*, 2015 WL 557069, at *3 (applying Rule 26(b)(4)(D)'s protections to a subpoena for document production). Indeed, Rule 26(b)(4)(D) essentially extends the work product protection codified in Rule 26(b)(3) to facts known and opinions held by non-testifying, consulting experts. *Lindon v. Kakavand*, No. 5:13-CV-26-DCR-REW, 2014 WL 12648464, at *1 (E.D. Ky. Apr. 29, 2014) (citing *William A. Gross Const., Assoc, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 262 F.R.D. 354, 361 (S.D.N.Y. 2009)); *see also Monarch Knitting Mach. Corp. v. Sulzer Morat GMBH*, No. 85 CIV. 3412 (LBS), 1998 WL 338106, at *2 (S.D.N.Y. June 25, 1998) ("Under this rule, a consulting

expert who will not testify at trial, 'is generally immune from discovery.'").

As discussed above, Mr. Bryan was expressly retained by Butler Snow in anticipation of litigation. Any documents prepared by Mr. Bryan in the course of his engagement with Butler Snow are, by definition, protected by Rule 26(b)(4)(D). And because Mr. Wienckowski was employed by Mr. Bryan, and any responsive document in Mr. Wienckowski's possession was created within the course and scope of his work for Mr. Bryan, Mr. Wienckowski's documents are also prohibited from discovery under Rule 26(b)(4)(D).

The United States also takes issue with the application of Rule 26(b)(4)(D) to Respondents' documents because it contends the rule only applies to information created "for a party" to the litigation. Mot. at 8. While Respondents themselves are not parties to the litigation, they produced work product for parties to this litigation and are thus subject to Rule 26(b)(4)(D)'s protections. Butler Snow's clients include the Chairman of the Texas House Redistricting Committee, Todd Hunter, the Chairman's staff, and the General Counsel to the Texas House of Representatives. Ex. 2A, Butler Snow Engagement Ltr.; Ex. 5, Hunter Decl. The State of Texas is a party to this litigation, and Chairman Hunter is a member of the House of Representatives of the State of Texas. Thus, Chairman Hunter is a representative of Defendant the State of Texas. Indeed, the specific allegations the United States made in its initial lawsuit specifically targeted actions by the Legislature on behalf of the State of Texas. *See United States v. State of Texas*, No. 3:21-CV-00299-DCG-JES-JVB, Doc. No. 1, at 1. The United States cannot avoid Rule 26(b)(4)'s protections on the basis that Chairman Hunter is himself not a named party, especially amid the United States' initiation of this litigation against the State of Texas based on actions taken by the State's duly elected legislature. Thus, the "facts known or opinions held" by Respondents are shielded from discovery because Respondents were retained to advise Chairman Hunter, a member

of the Texas Legislature and the Chairman of the Texas House Redistricting Committee.  *See* F. R. Civ. P. 26(b)(4)(D).

### 3. Documents and communications in Respondents' possession are protected by the attorney-client privilege.

The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law.  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.  *Id.*  The privilege recognizes that sound legal advice or advocacy serves public ends.  *Id.*

In the case of redistricting, the involvement of attorneys and expert consultants to ensure legal compliance of electoral maps should be encouraged as sound public policy.  The United States, however, wishes to undermine the confidential advice provided by attorneys and their consultants in determining the maps' legal compliance.  Instead, the United States asserts that attorneys and their clients' seeking advice from cartographic experts cannot qualify as an attorney-client relationship.  Mot. at 8.  The United States is wrong.

To invoke the attorney-client privilege, Respondents Bryan and Wienckowski must establish: (1) a confidential communication; (2) made to a lawyer or his subordinate; (2) for the primary purpose of securing either a legal opinion, legal services, or assistance in a legal proceeding.  *See United States v. Robinson,* 121 F.3d 971, 974 (5th Cir.1997).  Once Respondents establish the privilege, the burden shifts to the United States to prove any applicable exceptions. *Equal Emp. Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 695-96 (5th Cir. 2017).

An attorney may hire a professional or expert to assist him in providing legal advice, and the expert's communications to the attorney and client are likewise privileged and immune from production.  *United States v. Davis*, 636 F.2d 1028, 1043-44 (5th Cir. 1981); *Milburn v. United*

*States*, 804 F. Supp. 2d 544, 549-50 (W.D. Tex. 2010).  This protection will apply so long as the proponent of the privilege proves that the documents provided to the attorney and client were for purposes of the provision of legal advice.  *Davis*, 636 F.2d at 1043-44.

Butler Snow LLP has an attorney-client relationship with Representative Todd Hunter in his capacity as Chair of the House Redistricting Committee, "his staff . . . and the General Counsel to the House."  Ex. 3, Field Decl.  The "staff" includes Adam Foltz.  *Id.*; Ex. 5, Hunter Decl.  As part of Butler Snow's engagement, the firm was authorized to "retain any necessary experts."  *Id.* Butler Snow retained Thomas Bryan to consult in rendering legal services to its clients, including:

> (1) analysis, interpretation and application of Census data and advise on all data related issues; (2) preparation of benchmark plan and modeling to determine areas of state where most likely change to occur; (3) data set development for preparing redistricting plans; (4) preparation of draft plans; (5) analysis of draft plans submitted by others; (6) analysis of compliance with traditional redistricting criteria; (7) analysis of the traditional redistricting criterion of compactness, run compactness scores and advise on same; (7) [sic] any other demographic related issue(s) as directed by us.

Ex. 1A, Bryan Engagement Ltr.

Butler Snow used Respondent Tom Bryan, who later employed others, such as Respondent Eric Wienckowski, to assist Butler Snow in analyzing plan proposals and census data as the firm advised its clients on legal compliance.  Ex. 2, Field Decl.  This provision of legal advice sometimes required Butler Snow to share Respondents' work product directly with a client in the course of advising the client.  This was especially true in advising Adam Foltz or Chairman Hunter concerning the legal compliance of any particular map or member submission.  Neither Mr. Bryan nor Mr. Wienckowski took any action or provided any consultation without Butler Snow's direction that they do so.  *Id.*  Other than one introductory meeting between Chairman Hunter and Mr. Bryan at Butler Snow's direction, neither Mr. Bryan nor Mr. Wienckowski communicated with a Butler Snow client other than Adam Foltz, and again, even then, only under the direction

and supervision of Butler Snow attorneys. *Id.* Chairman Hunter has not waived any privilege relating to Butler Snow's work product or the firm's communications, including communications and work product by any consultants the firm hired in representing Chairman Hunter and his staff. Ex. 5, Hunter Decl.

The United States' strategy in seeking documents directly from consultants it knows were hired by a law firm in provision of advice to the Chair of the Texas House Committee on Redistricting and the Chairman's staff on legal compliance undermines the very purpose of the privilege. "But if the purpose of the attorney-client privilege is to be served, the attorney and client must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all." *Upjohn*, 449 U.S. at 393.

The writing of the Supreme Court in *Upjohn* is equally applicable to the situation this Court now faces amid the United States' strategy. "While it would probably be more convenient for the Government to secure the results of petitioner's internal investigation by simply subpoenaing the questionnaires and notes taken by petitioner's attorneys, such considerations of convenience do not overcome the policies served by the attorney-client privilege. As Justice Jackson noted in his concurring opinion in *Hickman v. Taylor*, 329 U.S., at 516, 67 S.Ct., at 396: 'Discovery was hardly intended to enable a learned profession to perform its functions . . . on wits borrowed from the adversary.'" *Id.* at 396.

Here, the United States has depositions scheduled for Adam Foltz on July 14 and Chairman Hunter on July 15. The United States can question these individuals on what communications, if any, they had with Respondents and, without divulging the content of those communications, the circumstances and general subject-matter of any such communications. Instead, the United States

seeks to short-cut the privilege as a matter of convenience; this convenience, however, does not vitiate the underlying purposes of the privilege, and it should not be disregarded so lightly. *Id.*

Respondents have carried their burden of establishing the attorney-client privilege, and the United States' motion should be denied.

### 4. The legislative privilege extends to every document and communication in Respondents' possession.

Finally, any potentially responsive documents in Respondents' possession are protected from disclosure under the legislative privilege. Legislative immunity, and the attending privilege, safeguard the legislative process. At the founding, legislative privilege and immunity were "deemed so essential" that these safeguards were "written into the Articles of Confederation and later into the Constitution." *Tenney v. Brandhove*, 341 U.S. 367, 372 (1951). Still today, they protect legislators from inquiries about what motivated or informed their legislative acts, based on the elementary principle that it is "not consonant with our scheme of government for a court to inquire into the motives of legislators." *Id.* at 377; *see, e.g., Biblia Abierta v. Banks*, 129 F.3d 899, 905 (7th Cir. 1997) ("An inquiry into a legislator's motives for his actions, regardless of whether those reasons are proper or improper, is not an appropriate consideration for the court."); *Lee v. City of L.A.*, 908 F.3d 1175, 1187-88 (9th Cir. 2018) (rejecting redistricting "Plaintiffs['] call for a categorical exception whenever a constitutional claim directly implicates the government's intent," which "would render the privilege 'of little value'" (quoting *Tenney*, 341 U.S. at 377)); *In re Hubbard*, 803 F.3d 1298, 1307-08, 1315 (11th Cir. 2015) (quashing subpoenas for legislators' documents); *Reeder v. Madigan*, 780 F.3d 799, 804 (7th Cir. 2015) (raising concerns that it would be "nearly impossible for a legislature to function" without privilege).

The legislative privilege extends to consultants hired to assist legislators in performing their legislative functions. *See, e.g.*, *ACORN v. Cnty. of Nassau,* No. 05CV2301 (JFB) (WDW),

2009 WL 2923435, at *5 (E.D.N.Y. Sept. 10, 2009) (concluding legislative privilege extended to private consulting firm hired to advise city in zoning issues).  In evaluating whether the legislative privilege extends to a particular individual, "courts are to evaluate the 'function' performed by the individual claiming the privilege, that is, whether the function performed was 'legislative' or 'administrative,' not whether the entity in which the individual was operating was necessarily solely a legislative body." *Johnson v. Metro. Gov. of Nashville and Davidson Cnty.*, Nos. 3:07–0979, 3:08–0031, 2009 WL 1952780, at *4 (M.D. Tenn. July 2, 2009).  Ultimately, "[l]egislators must be permitted to have discussions and obtain recommendations from experts retained by them to assist in their legislative functions, without vitiating or waiving legislative privilege." *ACORN*, 2009 WL 2923435, at *6.

Here, Respondents were hired by Butler Snow to assist the firm's client—Chairman Hunter and his staff and the General Counsel of the Texas House—in a quintessential and indeed mandatory legislative function: the reapportionment of the State's legislative, state board of education, and congressional districts.  Ex. 1A, Bryan Engagement Ltr.; *see also* Tex. Const. art. III, § 28 (requiring the Texas Legislature to apportion the state into senatorial and representative districts following publication of the decennial United States census).[2]  As a result of their work for Butler Snow on behalf of Chairman Hunter and his staff, the legislative privilege shields any documents in Respondents' possession from discovery.

## IV.    Conclusion

For the foregoing reasons, Respondents respectfully request that the Court deny the United

---

[2] The fact that Respondents were also assisting legislators in performing a legislative function does not mean that Respondents were not also engaged in the redistricting process in anticipation of litigation.  *See infra*, C.1; *Cf. Bush v. Vera*, 517 U.S. 952, 1038 (1996) (Stevens, J., dissenting) ("After . . . today's decisions, States may find it extremely difficult to avoid litigation flowing from decennial redistricting.").

States' Motion to Compel.


Dated: June 29, 2022

<div style="margin-left: 40%;">

Respectfully submitted,

/s/*Scott K. Field*
Scott K. Field
Tex. Bar No. 00793725
scott.field@butlersnow.com
Marshall A. Bowen
Tex. Bar No. 24096672
marshall.bowen@butlersnow.com
BUTLER SNOW LLP
1400 Lavaca St., Suite 1000
Austin, TX 78701
(737) 802-1800

*Counsel for Respondents Eric Wienckowski and Thomas Bryan*

</div>

## CERTIFICATE OF SERVICE

I hereby certify on June 29, 2022, copies of the foregoing Response to the United States' Motion to Compel was served on counsel of record through the Court's CM/ECF service.


/s/*Scott K. Field*
Scott K. Field