IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS (LULAC), et al., <br><br> Plaintiffs, <br><br> v. <br><br> GREG ABBOTT, et al., <br><br> Defendants. | Civil Action No. 3:21-cv-259 (DCG-JES-JVB) <br> (consolidated cases) |

**UNITED STATES' REPLY IN SUPPORT OF MOTION TO ENFORCE THIRD-PARTY SUBPOENAS *DUCES TECUM***

Texas legislators and legislative employees (collectively "Legislators") ask this Court to shield data, analysis, and administrative materials based on tenuous assertions of attorney-client privilege and to bar production of legislative materials.  But the Supreme Court decisions they cite are inapposite, and the arguments they make disregard Fifth Circuit precedent.  Opp. Br., ECF No. 375.  The United States' motion to compel should be granted.

## I. NEITHER THE ATTORNEY-CLIENT PRIVILEGE NOR THE WORK PRODUCT DOCTRINE PROTECT MANY OF THE WITHHELD DOCUMENTS.

The Legislators have not proven that some documents at issue were created "for the primary purpose of securing" legal advice.  Absent such proof, these documents are not protected by attorney-client privilege.  *EEOC v. BDO USA, LLP*, 876 F.3d 690, 695 (5th Cir. 2017).  Indeed, some of the Legislators' document descriptions are expressly legislative, not legal.  *See, e.g.*, Index at 22-23 (describing analyses "[p]repared for Senator Huffman by staff for the purpose of considering redistricting legislation").  Post-hoc and conclusory assertions that these documents were sent "for the purpose of giving or obtaining legal advice or services," Opp. Br. at 8, cannot establish protections unsubstantiated by privilege logs.  *See BDO USA*, 876 F.3d at 696-97.

**Facts and Data.**  The parties agree that attorney-client privilege does not shield underlying facts, but the Legislators would reduce this principle to a nullity by bringing under the privilege umbrella any data manipulated prior to transmittal and requesting this court "[a]ssume" that documents "used by counsel" were created purely to obtain legal advice.  Opp Br. 3.  This position is factually and legally baseless.  *See, e.g.*, *Ohio A. Philip Randolph Inst. v. Smith*, No. 1:18-cv-357, 2018 WL 6591622, at *3 (S.D. Ohio Dec. 15, 2018) (three-judge court) (requiring production of "facts, data, and maps" sent to counsel); *see also In re Fin. Oversight &*

1

*Mgmt. Bd.*, 386 F. Supp. 3d 175, 184 (D.P.R. 2019).[1]

**Scheduling Materials.** The Legislators concede that scheduling materials and calendar entries are not generally protected by attorney-client privilege and have agreed to produce some of these documents. Opp. Br. at 6 n.3. But calendar entries the Legislators continue to withhold—which disclose private meetings and "internal annotations"—also need not involve legal advice. They too should be produced. *See, e.g.*, *Pic Grp., Inc. v. LandCoast Insulation, Inc.*, No. 1:09-cv-662, 2010 WL 1741703, at *2 (S.D. Miss. Apr. 28, 2010). If any annotations implicate bona fide legal advice, the Legislators must produce a redacted version. *See, e.g.*, *Ill. Cent. R.R. Co. v. Harried*, No. 5:06-cv-160, 2010 WL 583938, at *2 (S.D. Miss. Feb. 16, 2010).[2]

**Talking Points.** The Legislators also argue that attorney review renders talking points confidential, but the principal decision on which they rely is limited to draft talking points "prepared and edited" by attorneys and targeted to participants in active litigation. *See In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-CV-20000, 2018 WL 10801570, at *3-4 (N.D. Ala. Jan. 29, 2018) (explaining that final talking points were produced); *see also Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 660 (D. Nev. 2013) (describing talking points "created at the direction of [] counsel"). Where the "reason or purpose" of talking points is unrelated to litigation, work product protections do not apply. *Havana Docks Corp. v. Carnival Corp.*, No. 19-cv-21724, 2021 WL 2940244, at *2, *4-5 (S.D. Fla. July 13, 2021).

---

[1] The Legislators have not established that the legislative documents at issue were created at the request of counsel or made "to aid in the providing the needed legal advice." *Butler v. Am. Heritage Life Ins. Co.*, No. 4:12-cv-199, 2016 WL 367314, at *6 (E.D. Tex. Jan. 29, 2016). Thus, the cases Legislators cite do not justify withholding the documents. Opp. Br. 4-5.

[2] Decisions cited by the Legislators either do not mention calendar invitations or scheduling communications, *see, e.g.*, *Chaudhry v. Gallerizzo*, 174 F.3d 394 (4th Cir. 1999), or actually support production of such materials, *see, e.g.*, *Est. of Robles ex rel. Montiel v. Vanderbilt Univ. Med. Ctr.*, No. 3:11-0399, 2012 WL 3067936, at *3 (M.D. Tenn. July 27, 2012).

2

**Retainers and Invoices.**  The Legislators also contend that retainers and invoices are subject to attorney-client privilege, *see* Opp. Br. at 7, but the out-of-circuit precedent on which they rely confirms that "the identity of the client and the amount of the fee paid" are not protected.  *See In re Grand Jury Witness*, 695 F.2d 359, 361 (9th Cir. 1982); *see also Smithkline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530 (N.D. Ill. 2000) (not addressing retainers or invoices).  Such materials must be produced.  *See, e.g.*, *In re Grand Jury Subpoena*, 913 F.2d 1118, 1123 (5th Cir. 1990).  To the extent invoices include descriptions that implicate legal advice, redaction is the appropriate solution.  *See, e.g.*, *Ill. Cent. R.R.*, 2010 WL 583938, at *2.

**Communications with Butler Snow.**  Some communications between the Legislators and Butler Snow attorneys (as well as the demographers retained by Butler Snow) are also not protected by attorney-client privilege.  Butler Snow maintained an attorney-client relationship only with House Redistricting Committee Chair Todd Hunter, his staff, and the House General Counsel.  *See* Butler Snow Engagement Letter, ECF No. 390-2, at 8-9.  Inclusion of additional legislators or staff on communications meant that the communications were not confidential, and no attorney-client privilege or work product protection ever existed.  Moreover, the demographers provided non-legal advice and consultation directly to the Legislators, unmediated by counsel.  *See also* Bryan Engagement Letter, ECF No. 390-2, at 15-17 (describing "advice and consultation to . . . our client" including "preparation of draft plans"); *see also* Opp. Br. at 9 (conceding that the "demographers" provided "technical" advice).  In any case, because Butler Snow and the demographers were "active participant[s] in the [redistricting] events"—and not merely consultants on legal compliance—their communications must be disclosed.  *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 303 (D. Md. 1992) (three-judge court); *see also Am. Elec. Power Co. v. Affiliated FM Ins. Co.*, No. CV 02-1133-D-M2, 2007 WL

3

9700756, at *4 (M.D. La. Apr. 9, 2007) (requiring production of "technical" communications).[3]

**Documents Created during the Legislative Process.**  Finally, the Legislators argue that documents created during the ordinary legislative process are protected work product.  *See* Opp. Br. at 9-10.  But all state legislation must comply with federal law and state constitutional principles.  *See* Tex. Const. Art. 16, § 1(a); *see also* Tex. Legis. Council, *Guide to 2021 Redistricting in Texas* 1-3 (Sept. 2021), https://perma.cc/9WER-X8QE; *see also* Tex. Const. Art. 16, § 1(a).  "[T]he legislature could *always* have a reasonable belief that any of its enactments would result in litigation," but that alone does not trigger attorney work product protections. *Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 348 (E.D. Va. 2015) (three-judge court); *see also United States v. Davis*, 636 F.2d 1028, 1040-42 (5th Cir. 1981) (applying this principle to tax returns).  *See generally United States v. El Paso Cnty.*, 682 F.2d 530, 542, 544 (5th Cir. 1982) (holding that analysis "not designed to prepare a specific case for trial or negotiation" is not protected).  On the other hand, Legislators did not initiate a litigation hold at the start of the 87th Legislature, evincing that litigation was not yet reasonably anticipated.  *See Spanish Peaks Lodge, LLC v. Keybank Nat. Ass'n*, No. 10-cv-453, 2012 WL 895465, at *2 (W.D. Pa. Mar. 15, 2012); *see also Ashton v. Knight Transp., Inc.*, 772 F. Supp.2d 772, 800 (N.D. Tex. 2011) ("A duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation.").  Thus, work product protection does not apply to the documents created during the legislative redistricting process.[4]

---

[3] Even the cases cited by the Legislators recognize that "[i]f what is sought is not legal advice but only [a professional] service, . . . no privilege exists." *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961); *see also Ferko v. NASCAR*, 218 F.R.D. 125, 135 (E.D. Tex. 2003) ("[A] lawyer may not render communications between the attorney's client and the accountant privileged just by placing an accountant on his or her payroll.").

[4] The Legislators do not expressly defend their assertion of work product protections over several specific categories of documents, addressing only the attorney-client privilege.  *See* Opp Br. 3-8.

## II. LEGISLATIVE PRIVILEGE DOES NOT PROTECT MANY WITHHELD DOCUMENTS.

State legislators possess a qualified privilege of limited scope, and both the Supreme Court and the Fifth Circuit have rejected the Legislators' absolute and expansive conception of the state legislative privilege. Distinguishing both federal Speech or Debate Clause protections and legislators' immunity from civil suit, the Supreme Court held in *United States v. Gillock* that "where important federal interests are at stake," any state legislative privilege must yield. 445 U.S. 360, 368-73 (1980). In turn, the Fifth Circuit has held that the existence of legislative privilege does not bar adjudication of claims to which legislators' "motivations and thought processes" are relevant. *Jefferson Cmty. Health Ctrs., Inc. v. Jefferson Parish Gov't*, 849 F.3d 615, 624 (5th Cir. 2017) ("[T]he legislative privilege for state lawmakers is, at best, one which is qualified." (internal citation and quotation marks omitted)).[5] Because federal criminal prosecution is only one example of "where important federal interests are at stake," *Gillock*, 334 U.S. at 373, state legislative privilege is not absolute in civil litigation. This Court should reject the Legislators' persistent and baseless conflation of legislative privilege with legislative immunity and Speech or Debate Clause protections.

The scope of the privilege is also far narrower than the Legislators claim. Legislators cannot cloak conversations with executive branch officials, lobbyists, and other interested outsiders in their privilege. *See, e.g.*, *Perez v. Perry*, No. 5:11-cv-360, 2014 WL 106927, at *2 (W.D. Tex. Jan. 8, 2014) (three-judge court). This is because the qualified legislative privilege—which lacks the separation of powers concerns driving Speech or Debate Clause jurisprudence—

---

[5] The Legislators repeatedly argue that the discussion of state legislative privilege in *Jefferson Community Health Centers* is mere dicta, Opp. Br. at 11-13, but "[a]lternative holdings are not dicta and are binding in this circuit," *Jaco v. Garland*, 24 F.4th 395, 406 n.5 (5th Cir. 2021).

focuses on "candor in . . . *internal* exchanges." *Gillock*, 445 U.S. at 373 (describing analogous analysis of Executive privilege) (emphasis added).[6] And while the United States does not assert that all draft legislation falls outside of the privilege, Opp. Br. 11, it remains the case that facts and data concerning public proposals—including statistical analysis—are not privileged. *See, e.g.*, *Comm. For a Fair & Balanced Map v. Ill. State Bd. of Elections*, No. 11-cv- 5065, 2011 WL 4837508, at *9 (N.D. Ill. Oct. 11, 2011); *cf. Quarles v. Dep't of Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990) ("[T]he prospect of disclosure is less likely to make an advisor omit or fudge raw facts, while it is quite likely to have just such an effect on 'materials reflecting deliberative or policy-making processes.'" (quoting *EPA v. Mink*, 410 U.S. 73, 89 (1973)).

In response to the United States' argument that the privilege is overcome with respect to the Congressional redistricting process, the Legislators do not engage with the five factors applied within this Circuit. *See, e.g.*, *Perez*, 2014 WL 106927, at *2.[7] Legislative statements are highly relevant to the United States' discriminatory intent claims, *see, e.g.*, *Vill. Of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 (1977); *Veasey v. Abbott*, 830 F.3d 216, 236-37 (5th Cir. 2016) (en banc).[8] Instances when the balance weighs against disclosure merely

---

[6] Merely because legislators obtain information from outsiders—paradigmatically in public hearings—does not place information-gathering under the aegis of the state legislative privilege. The decisions on which the Legislators uniformly address immunity, not privilege. *See Baraka v. McGreevey*, 481 F.3d 187, 196-97 (3d Cir. 2007); *Almonte v. City of Long Beach*, 478 F.3d 100, 107 (2d Cir. 2007); *Bruce v. Riddle*, 631 F.2d 272, 280 (4th Cir. 1980).

[7] With respect to the House redistricting, the United States only seeks documents outside the proper scope of the state legislative privilege. U.S. Mot. 9-11. While the United States has argued that the information sought would be relevant, it has not argued that the results claim in the House requires Legislators to divulge information covered by *legitimate* legislative privilege claims, as the Legislators suggest. Opp. Br. 12-13.

[8] *See also United States v. O'Brien*, 391 U.S. 367, 383 & n.30 (1968) (noting that "the Court will look to statements by legislators" "in a very limited and well-defined class of cases where the very nature of the constitutional question requires an inquiry into legislative purpose").

6

demonstrate that the test does not nullify the privilege. *See* Opp. Br. 14. In this case, "important federal interests are at stake," *Gillock*, 445 U.S. at 373, and the test weighs in favor of disclosure, U.S. Br. 12-13, ECF No. 351. The privilege must yield.[9]

Finally, the pending appeal in *La Unión del Pueblo Entero v. Abbott* (*LUPE*), No. 22-50435 (5th Cir.), does not warrant holding this motion in abeyance. This Court has already declined to stay this litigation to await outside appeals. *See* Order, ECF No. 246. Appellants in *LUPE* acknowledged that, "to ensure an orderly appellate process, plaintiffs [did] not oppose a stay pending appeal" and that the district court granted the stay "reluctantly." Appellants Br. 16, *LUPE v. Abbott*, No. 22-50435 (5th Cir. filed June 21, 2022) (Ex. 1). The stay does not suggest a "strong showing" that reversal is likely, *Freedom from Religion Found., Inc. v. Mack*, 4 F.4th 306, 311 (5th Cir. 2021) (internal citation and quotation marks omitted), or that the Court of Appeals is likely to depart from *Jefferson Community Health Care Centers*, *see Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). The Legislators have withheld documents for months. The documents should be produced.

## III. CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court grant the United States' Motion to Enforce Third-Party Subpoenas.

---

[9] Again, out of circuit precedent are unavailing. In *In re Hubbard*, the subpoenas did "not serve an important federal interest" because plaintiffs did not assert a valid claim. 803 F.3d 1298, 1312 (11th Cir. 2015); *see also Am. Trucking Assoc., Inc. v. Alviti*, 14 F.4th 76, 88-90 (1st Cir. 2021) ("[T]he need for the discovery requested here is simply too little to justify such a breach of comity."). No "categorical exemption" for constitutional cases, *Lee v. City of Los Angeles*, 908 F.3d 1175, 1187-88 (9th Cir. 2018), is needed for the privilege to be overcome here.

Dated: July 1, 2022

                                      PAMELA S. KARLAN
                                      Principal Deputy Assistant Attorney General
                                      Civil Rights Division

                                      */s/ Daniel J. Freeman*
                                      T. CHRISTIAN HERREN, JR.
                                      TIMOTHY F. MELLETT
                                      DANIEL J. FREEMAN
                                      JANIE ALLISON (JAYE) SITTON
                                      MICHELLE RUPP
                                      JACKI L. ANDERSON
                                      JASMIN LOTT
                                      HOLLY F.B. BERLIN
                                      Attorneys, Voting Section
                                      Civil Rights Division
                                      U.S. Department of Justice
                                      950 Pennsylvania Avenue NW
                                      Washington, DC 20530

## **CERTIFICATE OF SERVICE**

  I hereby certify that on July 1, 2022, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system, which will send notification of this filing to counsel of record.

                */s/ Daniel J. Freeman*
                Daniel J. Freeman
                Voting Section
                Civil Rights Division
                U.S. Department of Justice
                Daniel.Freeman@usdoj.gov