## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, | § § § | |
| *Plaintiffs,* | § § | |
| EDDIE BERNICE JOHNSON, *et al.*, | § § | Case No. 3:21-cv-00259 |
| *Plaintiff-Intervenors,* | § § § | [Lead Case] |
| v. | § § | |
| GREG ABBOTT, *et al.*, | § § | |
| *Defendants.* | § § | |
| ROY CHARLES BROOKS, | § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | Case No. 1:21-cv-991 [Consolidated Case] |
| GREG ABBOTT, *et al,* | § § § | |
| *Defendants.* | § | |

## MOTION TO DISMISS
## THE BROOKS PLAINTIFFS' SECOND AMENDED COMPLAINT

## TABLE OF CONTENTS

Introduction ..................................................................................................................................... 1

Argument ........................................................................................................................................ 2

    I.    Several of Plaintiffs' *Gingles* Claims Should be Dismissed .......................................... 2

        A.  Cultural Compactness ............................................................................................ 2

        B.  Political Cohesion .................................................................................................. 6

    II.  Most of Plaintiffs' Intentional Discrimination Claims Should be Dismissed .......................... 8

Conclusion ....................................................................................................................................... 9

Certificate of Service ..................................................................................................................... 10

# INTRODUCTION

Until recently, the Brooks plaintiffs focused their attention on Senate District 10. In their most recent amended complaint, they add claims regarding the new congressional and House maps, but many of these claims are deficient. The Court should dismiss those claims and narrow the scope of issues to be presented at trial.

First, the Court should dismiss the Brooks plaintiffs' *Gingles* claims as to the Dallas Fort Worth and Harris County congressional districts. As to both configurations, plaintiffs stitch together Latino and African American communities in order to achieve a mathematical majority, but they fail to allege that these crisscrossing neighborhoods are "culturally compact." ECF 307 (Memorandum Opinion and Order on Motions to Dismiss) ("Opinion"). Plaintiffs fail to satisfy the first *Gingles* precondition.

They also cannot satisfy the second precondition because they do not allege facts tending to show that African Americans and Latinos are politically cohesive. In the relevant parts of the second amended complaint, plaintiffs allege only that (i) African Americans and Latinos prefer the Democratic candidate in general elections, and (ii) that the Democratic candidate is likely to win in general elections in the proposed districts. *See, e.g.*, Compl. ¶¶ 134–35 ("Black and Latino voters in DFW strongly prefer Democratic candidates. For example, candidates preferred by Latino and Black voters would have carried [proposed] District 37 in Plan C2163 by large margins. President Biden would have received 69.8%."). But these allegations say nothing about what percentage of African American and Latino voters actually supported the Democratic candidate. Without specific factual allegations asserting that a "large majority," of minority voters support the same candidate, Opinion at 32, plaintiffs cannot satisfy the second *Gingles* precondition.

Second, the Brooks plaintiffs have failed to adequately plead their intentional discrimination claim as to House District 118. This claim, just like all redistricting claims, proceed "district by district." *Gill v. Whitford*, 138 S. Ct. 1916, 1930 (2018). As to SD10, plaintiffs point to specific circumstances in

1

the legislative process they believe support an inference of discriminatory intent. Defendants maintain that this claim fails on the merits, but the Court has ruled that such allegations are sufficient to proceed past the pleading stage. ECF 144 at 5–8. But plaintiffs fail to make specific allegations as to HD118. That is, plaintiffs' allegations regarding discriminatory intent are made only *generally*, and without application to the particular district. For instance, the Brooks plaintiffs allege that the restrictive schedule imposed on the Texas Legislature was really just a pretext to rush the redistricting legislation without fulsome consideration. Even if this were true—and it is not—it would go only to the general process, not to how any one particular district was drawn. Instead, plaintiffs must allege specific facts tending to show that the drawing of *the specific district* was the product of intentional discrimination. The Brooks plaintiffs fail to do so for HD118, so that claim should be dismissed.

## ARGUMENT

I. **Several of Plaintiffs'** *Gingles* **Claims Should be Dismissed**

    A. **Cultural Compactness**

Plaintiffs' *Gingles* claims as to Dallas Fort Worth and Harris County fail because plaintiffs fail to allege that the proposed districts are culturally compact. In the Court's Opinion, it explained that the first *Gingles* precondition requires a plaintiff to plead specific facts showing that the minority populations in the proposed district are "culturally compact." Opinion at 31 n.20 (citing *LULAC v. Perry*, 548 U.S. 399, 430–35 (2006)). The second amended complaint lacks any allegations addressing this requirement. Plaintiffs allege that Latinos or Latinos and African Americans typically vote for the Democratic candidate in general elections, but they fail altogether to allege that these minority populations share common interests, concerns, and beliefs, or are even part of the same communities. Their claims should be dismissed for failure to satisfy the first *Gingles* precondition.

A plaintiffs' proposed district must be culturally compact because "there is no § 2 right to a district that is not compact." *LULAC*, 548 U.S. at 430. In determining whether a proposed district is

compact, courts rely on "traditional districting principles such as maintaining communities of interest and traditional boundaries." *Id.* at 433 (quoting *Abrams v. Johnson*, 521 U.S. 74, 92 (1997)). Although that inquiry is fact-specific, it is clear that "a district that 'reaches out to grab small and apparently isolated minority communities' is not reasonably compact." *Id.* (quoting *Bush v. Vera*, 517 U.S. 952, 979 (1996)). This is so because an ethnic population in one part of the State may very well have other interests, concerns, and associations than a population of the same ethnicity in a different part of the State. *See id.* (stressing that "a State may not 'assum[e] from a group of voters' race that they 'think alike, share the same political interests, and will prefer the same candidates at the polls'") (quoting *Miller v. Johnson*, 515 U.S. 900, 920 (1995)). Setting aside that "prohibited assumption," there is "no basis to believe a district that combines two far-flung segments of a racial group with disparate interests provides the opportunity that § 2 requires or that the first Gingles condition contemplates." *Id.*

Therefore, a plaintiff fails to satisfy the first *Gingles* precondition where she fails to allege specific facts tending to show that the minority population in the proposed district is culturally compact under the standards recited above. *See, e.g.*, *Alabama State Conf. of the NAACP v. Alabama*, --- F. Supp. 3d ---, 2020 WL 583803, at *22–25 (granting judgment as to *Gingles* claim based on first precondition, explaining that plaintiffs failed to prove the African American population in proposed district was compact). For purposes of the first precondition, it does not suffice that it is *possible* to draw a district that composes a majority of a racial or ethnic group. "The mathematical possibility of a racial bloc does not make a district compact." *LULAC*, 548 U.S. at 435.

Dallas Fort Worth. The Brooks plaintiffs allege that Black and Latino voters can elect their candidate of choice three congressional districts in Dallas Fort Worth: CD30, CD32, and CD33. *See* Compl. ¶ 129. They further allege that the population in this area is such that Section 2 requires the creation of an additional Latino-majority district or Latino-African-American coalition district. *See id.* ¶ 131. To accomplish those respective goals, plaintiffs' propose two alternative maps, Plan C2163 and

3

Plan C2167.[1] Plan C2163 would create a new CD37 as a Latino majority district and Plan C2167 would create a new CD6 as a Latino and African American majority district.

**Figure 1. Dallas Fort Worth—Plan C2163**



**Figure 2. Dallas Fort Worth—Plan C2167**



The proposed CD37 and CD6 combined disparate portions of Tarrant and Dallas Counties, but plaintiffs fail to allege that these areas have any cultural similarities. There is no indication that

---

[1] Both plans were proposed as amendments during the third special session by members of the Democratic party. Plan C2163 was proposed by Representative Chris Turner and Plan C2167 was proposed by Representative Rafael Anchia. Both proposed amendments were voted down.

Latinos and African Americans in these areas share the same concerns, issues, or are similar in any way other than the fact that they are Latinos or African Americans. Indeed, the amended complaint fails to include any allegations whatsoever on this subject. *See* Compl. ¶¶ 129–39. Without any such allegations, it is improper to assume simply by virtue of these voters' race or ethnicity that they are culturally compact. Plaintiffs thus fail to satisfy the first *Gingles* precondition as to Dallas Fort Worth.

Harris County. The Brooks plaintiffs allege that CD29 in Harris County is a Latino opportunity district. *See* Compl. ¶ 140. They further allege that the population in Harris County is such that Section 2 requires an additional Latino-majority congressional district to be drawn. *Id.* ¶ 141. As with Dallas Fort Worth, they point to Plan C2163, saying that it would create a new CD29 and CD38 as Hispanic-majority districts. *Id.* ¶ 142.

**Figure 3. Harris County—Plan C2163**



The proposed district DC29 combines disparate Houston neighborhoods. It begins in the Greater Fifth Ward, extends South into the Second Ward, squeezes North through downtown,

continues to Aldine, loops around the Beltway to Jersey Village, then juts West toward Katy. The Brooks plaintiffs allege no specific facts tending to show that Latinos in the proposed CD29 have similar beliefs, concerns, and issues. *See* Compl. ¶¶ 140–47. Without such allegations, one is left to conclude that plaintiffs combined Latinos in this proposed district just because they are Latinos. That is impermissible, and does not satisfy the cultural compactness requirement of the first *Gingles* precondition.

*       *       *

As to Dallas Fort Worth and Harris County, the Brooks plaintiffs contend an additional Latino majority district or Latino-African-American coalition district can be drawn. They point to Plan C2163 and Plan C2167 as examples of such districts. But plaintiffs offer no allegations whatsoever that the Latino and African American populations combined in these plans are culturally compact. Without those allegations, plaintiffs cannot satisfy the first *Gingles* precondition.

### B. Political Cohesion

Second, plaintiffs fail to satisfy the second precondition because they fail to allege that Latinos and African Americans in the proposed districts are politically cohesive. To do so, they must allege specific facts showing that "a significant number of minority group members usually vote for the same candidates." *Gingles*, 478 U.S. at 56. *See also Kumar v. Frisco ISD*, 476 F. Supp. 3d 439, 503 (E.D. Tex. 2020) ("The notion of political cohesiveness contemplates that a specified group of voters shares common beliefs, ideals, principles, agendas, concerns, and the like such that they generally unite behind or coalesce around particular candidates and issues."). They fail to do so.

Dallas Fort Worth. Plaintiffs fail to allege political cohesion because, with respect to the proposed districts, they fail to allege the percentage of Latinos and African Americans who support the same candidate. Instead, they only allege that certain candidates are likely to win elections in those proposed districts. *See* Compl. ¶¶ 134–35 ("Black and Latino voters in DFW strongly prefer

6

Democratic candidates. For example, candidates preferred by Latino and Black voters would have carried [proposed] District 37 in Plan C2163 by large margins. President Biden would have received 69.8%."); *id.* ¶ 135 ("Likewise, candidates preferred by Latino and Black voters would have carried [proposed] District 6 in Plan C2167 by large margins. President Biden would have received 70.2%.").

As explained above, these numbers say nothing about the percentage of Latinos and African Americans who support the listed candidates. For example, in proposed CD37, it could be the case that President Biden would have received 69.8% of the vote, but that Latino voters only supported him by a margin of 55%-45%. A 55% figure would fall well short of the "large majority," required for political cohesion. Opinion at 32. Plaintiffs cannot satisfy the second *Gingles* precondition by alleging only that Democrat candidate is likely to win in the proposed district.

Harris County. The same defect is present in plaintiffs' claim as to Harris County. Just as with Dallas Fort Worth, plaintiffs allege only that the Democratic candidate will prevail in proposed CD29 and proposed CD38—not that "large majorities" of Latinos support that candidate. *See* Compl. ¶ 144 ("'This cohesion among Houston-area Latinos is illustrated by reconstituted election results in Plan C2163's CDs 29 and 38, in which the Latino preferred candidates prevail by large margins. For example, in Plan C2163's CD29, President Biden would have received 65.6% . . . In Plan C2163's CD 38, President Biden would have prevailed by 54.5%."). These allegations present the same problem: the numbers do not necessarily show that *Latinos* support the same candidate. All they allege is that the Democratic candidate would likely win in those districts. But it is entirely possible that Latinos in those districts did not prefer the Democratic candidate at all, or that they did so by a small margin.

To be sure, unlike with Dallas Fort Worth, plaintiffs allege that Latinos typically prefer the Democratic candidate. But they do so only with respect to *Harris County*, not as to the proposed districts. *See* Compl. ¶ 143 ("Latino voters in Plan C2163's CD29 and 38 are politically cohesive, and strongly prefer Democratic candidates. For example, ecological inference analysis shows that *Harris*

7

*County Latino voters* cohesively voted for the following Democratic candidates at the following percentages: Biden (70.1%) . . . .") (emphasis added). This allegation is also too general. To satisfy the second *Gingles* precondition, plaintiffs must allege that Latinos voters in the proposed districts are cohesive, not just that Latinos are cohesive in the surrounding metropolitan area. Plaintiffs fail to do so.

\*   \*   \*

As to Dallas Fort Worth and Harris County, the Brooks plaintiffs do not allege specific facts tending to show that Latinos (as to Harris County) and Latinos and African Americans (as to Dallas Fort Worth) usually vote for the same candidate. Plaintiffs allege that the Democratic candidate is likely to win in the proposed districts, but they fail to allege that "large majorities" the relevant minority groups tend to vote together. Thus, they cannot satisfy the second *Gingles* precondition.

## II.   Plaintiffs' Intentional Discrimination Claim as to HD118 Should be Dismissed

Plaintiffs bring intentional discrimination claims against HD118 under Section 2 and the Fourteenth and Fifteenth Amendments. *See* Compl. ¶¶ 267–72. But they allege no specific facts tending to show that the Legislature acted with discriminatory intent. The complaint addresses HD118 at length, *id.* ¶¶ 162–98, but the Legislature's intent is almost an afterthought. *See id.* ¶ 197 ("Moreover, the changes made to HD 118 were the product of intentional racial discrimination. The Legislature purposefully drew HD 118 to reduce its Hispanic population and increase its Anglo population to prevent Latino voters from being able to elect their candidates of choice."). But the above is nothing more than a legal conclusion. That "type of allegation is a '[t]hreadbare recital[ ] of [an] element[ ] of a cause of action'; it isn't worth anything." Opinion at 38 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

As explained above, discriminatory intent claims proceed "district by district." *Gill*, 138 S. Ct. at 1930. For this reason, plaintiffs must allege specific facts that the particular district was drawn "because of, not merely in spite of its adverse effects upon an identifiable group." *Personnel Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (quotation omitted). Plaintiffs point to general procedural

8

complaints, *see* Compl. ¶ 198 ("Moreover, the process by which the state house plan was adopted features significant procedural departures from normal procedures."), but this does not say anything about how *House District 118* was drawn. Without any specific factual allegations, plaintiffs cannot plausibly allege discriminatory intent. These claims should be dismissed.

## CONCLUSION

Defendants respectfully request that the Court dismiss the portions of the Brooks plaintiffs' second amended complaint identified by this motion.

Date: July 1, 2022

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
Tex. State Bar No. 24088531

RYAN D. WALTERS
Special Counsel, Special Litigation Unit
Tex. State Bar No. 24105085

ARI M. HERBERT
Assistant Attorney General, Special Litigation Unit
Tex. State Bar No. 24126093

JACK B. DISORBO
Assistant Attorney General, Special Litigation Unit
Tex. State Bar No. 24120804

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov
ryan.walters@oag.texas.gov
ari.herbert@oag.texas.gov
jack.disorbo@oag.texas.gov

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on July 1, 2022, and that all counsel of record were served by CM/ECF.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN