IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, <br><br>  *Plaintiffs,* <br><br> EDDIE BERNICE JOHNSON, *et al.*, <br><br> *Plaintiff-Intervenors,* <br><br> v. <br><br> GREG ABBOTT, *et al.*, <br><br> *Defendants.* | § § § § § § § § § § § § § § § | Case No. 3:21-cv-00259 <br> [Lead Case] |
| TEXAS STATE CONFERENCE OF THE NAACP, <br><br> *Plaintiff,* <br><br> v. <br><br> GREG ABBOTT, *et al*, <br><br> *Defendants.* | § § § § § § § § § § § | Case No. 1:21-cv-1006 <br> [Consolidated Case] |

**MOTION TO DISMISS
TEXAS NAACP'S FIRST AMENDED COMPLAINT**

TABLE OF CONTENTS

Table of Contents ..................................................................................................................................... i
Introduction ............................................................................................................................................ 2
Argument ................................................................................................................................................ 2
    I.   The NAACP Lacks Organizational Standing ........................................................................ 2
    II.  The NAACP Lacks Standing to Challenge HD57 as a Racial Gerrymander ....................... 3
    III. The NAACP Has Failed to Adequately Allege the *Gingles* Preconditions for Several Challenged Districts ................................................................................................................. 4
        A.   Senate Districts in Tarrant and Dallas Counties ............................................................. 5
        B.   Senate Districts in Fort Bend County and Adjacent Districts ....................................... 7
        C.   House Districts in Tarrant County .................................................................................. 8
        D.   House Districts in Wise and Denton Counties .............................................................. 9
        E.   House Districts in Brazoria County .............................................................................. 10
        F.   House Districts in Lubbock County ............................................................................. 11
        G.  Congressional Districts in Harris and Fort Bend Counties ......................................... 12
    IV. The NAACP has not adequately alleged cultural compactness for any of the challenged districts. ................................................................................................................................... 13
Conclusion ............................................................................................................................................ 15
Certificate of Service ........................................................................................................................... 16

**INTRODUCTION**

In its Memorandum Opinion and Order on Defendants' motions to dismiss, this Court provided guidance on what plaintiffs must plead to state a claim. *See generally* ECF 307. The Court gave the Texas State Conference of the NAACP ("NAACP") another bite at the apple, allowing it to file an amended complaint. Yet that amended complaint contains several deficiencies. First, although the NAACP appears no longer to assert organization standing, it still asserts organizational harm. To the extent this Court reads the NAACP's complaint to assert organizational standing, the NAACP has still failed to establish an organizational injury sufficient for Article III standing. Second, the NAACP lacks standing to bring one of its racial-gerrymandering claims. Third, the NAACP has failed to adequately allege the *Gingles* preconditions for many of the districts it challenges. And fourth, the NAACP has not adequately alleged cultural compactness for any of the challenged districts—thus independently failing the first *Gingles* precondition for each district challenged under Section 2. This Court should therefore grant the motion to dismiss and narrow the scope of issues to be tried.

**ARGUMENT**

**I.    The NAACP Lacks Organizational Standing**

In its recent order, this Court laid out what entity plaintiffs must plead to establish third-party standing. See ECF 307 at 9–11. An entity plaintiff can establish organizational standing or associational standing. See ECF 307 at 10–11. To establish organizational standing, an entity plaintiff must allege an injury that is "far more than simply a setback to the organization's abstract social interests." See ECF 307 at 10 (quoting NAACP v. City of Kyle, 626 F.3d 233, 238 (5th Cir. 2010)). And "even if an organization incurs some expense because of a defendant's conduct, that expense is not a cognizable Article III injury unless it 'detract[s] or differ[s] from its routine activities.'" ECF 307 at 10 (quoting *Tenth St. Residential Ass'n v. City of Dallas*, 968 F.3d 492, 500 (5th Cir. 2020)).

The NAACP appears to no longer assert organizational standing, but instead only associational

2

standing. *See* ECF 321 ¶ 22 ("Texas NAACP brings this action on behalf of its members . . . ."). Even so, the NAACP also still insists that it has sustained organizational injuries. *See* ECF 321 ¶ 21 ("Texas NAACP will have to commit significant time and resources to combatting the effects of these new maps on communities of color throughout the state. By allocating time and resources to these priorities, Texas NAACP will be unable to commit to other programs that are core to its mission."). Thus, to the extent that this Court reads the NAACP's complaint to still assert organizational standing, Plaintiffs have failed to successfully do so.

As with their last complaint, the NAACP merely reiterates the same abstract, boilerplate injury—frustration of and impediment to its core mission. *See* ECF 321 ¶ 21 (frustration of "programs core to its mission"). And this single rote assertion is the sole allegation of organizational injury. Therefore, the NAACP has still failed to show that Defendants' redistricting plans "significantly and 'perceptibly impaired'" its actual activities, rather than just its abstract interests. *See NAACP v. City of Kyle*, 626 F.3d 233, 238 (5th Cir. 2010); *see also OCA-Greater Hous. v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017); ECF 307 at 11 (quoting same). The NAACP has no standing to assert claims on its own behalf.

## II.   The NAACP Lacks Standing to Challenge HD57 as a Racial Gerrymander

The NAACP also lacks associational standing to challenge HD57 as an illegal racial gerrymander. "[A]n organization may assert the standing of its members, insofar as their interests in the suit are 'germane' to the organization's 'purpose.'" ECF 307 at 10–11 (quoting *OCA-Greater Hous. v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017)). But to do so, it is imperative that an organization "identify 'a specific member.'" ECF 307 at 11 (quoting *NAACP v. City of Kyle*, 626 F.3d 233, 237 (5th Cir. 2010)). And a plaintiff must do so on a district-by-district basis; this is true both for a *Gingles* claim and for a racial-gerrymandering claim. *See* ECF 307 at 33 (*Gingles*); ECF 307 at 56 (racial gerrymandering). "After all, to assess [its] power to decide a case, [the] Court must know who was injured and how." ECF 307 at 11. That is because the associational-standing doctrine "does not eliminate or attenuate the

3

constitutional requirement of a case or controversy." *Warth v. Seldin*, 422 U.S. 490, 511 (1975).

In its recent order, this Court allowed the NAACP to replead its case to establish associational standing for the districts it challenges. The NAACP has attempted to do so—naming "49 Texas NAACP members who live and vote in the state house, state senate, and congressional districts challenged in Texas NAACP's complaint." ECF 321 at 1–2. Even so, the NAACP still fails to establish associational standing against one district it challenges as a racial gerrymander.

The NAACP challenges three state house districts in Wise and Denton Counties as racial gerrymanders. ECF 321 ¶ 372 (Count I). Those three districts are HDs 57, 63, and 65. ECF 321 ¶ 372. The NAACP names members who live in HDs 63 and 65. *See, e.g.*, ECF 321 ¶¶ 125 (DOE 35), 129 (DOE 37). But the NAACP fails to identify a member who lives in HD57 (or even a member in the benchmark HD57), *see generally* ECF 321, and "plaintiffs do not have standing to bring racial-gerrymandering claims with regard to districts where they do not live," ECF 307 at 56. Therefore, the NAACP lacks standing to bring a racial-gerrymandering claim against HD57. And this Court should dismiss the NAACP's racial-gerrymandering claim against HD57.

## III. The NAACP Has Failed to Adequately Allege the *Gingles* Preconditions for Several Challenged Districts

This Court has clarified what allegations a plaintiff must plead for a vote-dilution claim under Section 2 of the Voting Rights Act. ECF 307 at 30–33. At this point, the three *Gingles* preconditions are well known:

> (1) The minority group must be able to demonstrate it is sufficiently large and geo-graphically compact to constitute a majority in a single-member district;
>
> (2) The minority group must be able to show that it is politically cohesive; and
>
> (3) The minority [group] must be able to demonstrate that the white majority votes sufficiently as a bloc to enable it—in the absence of special circumstances, such as the minority candidate running unopposed—usually to defeat the minority's preferred candidate.

4

*Thornburg v. Gingles*, 487 U.S. 30, 50–51 (1986); *see Growe v. Emison*, 507 U.S. 25, 39–41 (1993) (explaining that "*Gingles* preconditions" are required in "a § 2 dilution challenge to a single-member districting scheme"). As this Court has stressed, it is essential to allege concrete facts in support of each *Gingles* precondition. Otherwise, a plaintiff has failed to state a claim. It is not enough to simply allege that a racial group is "cohesive." That "type of allegation is a '[t]hreadbare recital[ ] of [an] element[ ] of a cause of action'; it isn't worth anything." ECF 307 at 38 (quoting *Iqbal*, 556 U.S. at 678).

As with its previous complaint, the NAACP brings an array of Section 2 *Gingles* claims. This time against Senate districts in Tarrant, Dallas, and Fort Bend Counties; House districts in Tarrant, Wise, Denton, Brazoria, and Lubbock Counties; and congressional districts in Tarrant, Dallas, Harris, and Fort Bend Counties. Yet despite this Court's recent order, the NAACP has still failed to satisfy the *Gingles* preconditions for several of these challenged district clusters.

### A. Senate Districts in Tarrant and Dallas Counties

The NAACP has failed to adequately allege a Section 2 claim for the senate districts in Tarrant and Dallas Counties. The NAACP identifies Senate Districts 9, 10, 12, 16, 22, 23, and 30. ECF 321 ¶ 250. Specifically, the NAACP proposes making SD10 a coalition district by pulling minority voters "from SD9 into SD10." ECF 321 ¶ 250. But the NAACP fails to adequately allege either the second or third *Gingles* precondition. "[O]ften discussed together," the second precondition "requires the minority group to be 'politically cohesive,'" and the third precondition requires that "the white majority votes sufficiently as a bloc to enable it usually to defeat the minority's preferred candidate." ECF 307 at 32 (quoting *Gingles*, 487 U.S. at 51) (cleaned up).

As for minority cohesion, a plaintiff bears the burden of satisfactorily alleging such cohesion. Doing so requires more than alleging simply that a minority racial group is "cohesive." Rather, an adequate cohesion allegation requires specific facts that support a showing of cohesion. Generally, a plaintiff must "show[] that 'a significant number of minority group members usually vote for the same

5

candidates.'" ECF 307 at 32 (quoting *Gingles*, 478 U.S. at 51). And crucially, as this Court has explained, "a *Gingles* plaintiff must show the second precondition for the minority population that would be included in its ***proposed*** district." ECF 307 at 33 (emphasis added). In other words, a plaintiff has to allege minority-group cohesion in the demonstrative district—not in the currently enacted district. What's more, a plaintiff must do so on a district-by-district basis. *See* ECF 307 at 33 ("It bears emphasizing that each of these preconditions must be shown on a district-by-district basis.").

Yet here, the NAACP alleges minority cohesion not within the proposed district—and not even in the currently enacted district—but rather with the previously enacted district. *See* ECF 321 ¶ 259 ("[O]ver the last 10 years, the black, Hispanic, and Asian coalition in SD10 under the previous decade's plan cohesively support a preferred candidate of choice with voting percentages over 85%."). Based on the previously enacted district, the NAACP calculates that there would have been "an estimated 86% of support for the same candidate of choice" among black, Latino, and Asian voters in the 2020 presidential election. *See* ECF 321 ¶ 259.

The closest that the NAACP comes to alleging minority cohesion in the proposed district are two bare-bones, conclusory allegations of cohesion. First, the NAACP alleges that minority voters in the "alternative configuration" of SD10 will have a chance to elect their candidates of choice "given the polarization discussed above and the specific electoral history in the precincts making up the district." ECF 321 ¶ 262. But again, the "polarization" referred to is for minority voters under the "previous decade's plan," ECF 321 ¶ 259, and in any event, polarization is not the same as cohesion. What's more, the NAACP never actually identifies any "specific electoral history" to support this contention. *See generally* ECF 321. Second, the NAACP alleges that "[v]oters of color are cohesive in this alternative drawing of SD10"—"typically supporting the same candidate with upwards of 80% cohesion." ECF 321 ¶ 263. But the NAACP makes no factual allegations supporting that figure of 80% cohesion. Whether it comes from one election, several elections, general elections, or primary

elections—that is for the Court and Defendants to speculate. Therefore, the NAACP has failed to satisfactorily allege the second *Gingles* precondition with respect to its challenge against the Tarrant and Dallas County senate districts.

But the NAACP has also failed to adequately allege the third *Gingles* precondition with respect to these challenged districts. To reiterate, *Gingles* requires that "the white majority votes sufficiently as a bloc to enable it . . . usually to defeat the minority's preferred candidate." ECF 307 at 32 (quoting *Gingles*, 478 U.S. at 51). "So the question posed by the third *Gingles* precondition is concrete: If the state's districting plan takes effect, will the voting behavior of the white majority cause the relevant minority group's preferred candidate 'usually to be defeated?'" *Robinson v. Ardoin*, --- F.4th ---, 2022 WL 2104123, at *9 (5th Cir. June 12, 2022). And crucially, "the third precondition must be established for the *challenged* districting." ECF 307 at 33.

Yet here, the NAACP has failed to allege white bloc-voting with respect to the enacted—i.e., challenged—district. Instead, the NAACP has alleged white bloc-voting with respect only to the previous—i.e., benchmark—district. In reference to "the previous decade's plan," the NAACP alleges that whites "consistently voted as a bloc." *See* ECF 321 ¶¶ 259–60. That is not a clear allegation of white cohesion in the enacted and challenged district. And so the NAACP has also failed to adequately allege the third *Gingles* precondition. For these reasons, this Court should dismiss the NAACP's Section 2 claims with respect to the Tarrant and Dallas County senate districts.

      **B.**     **Senate Districts in Fort Bend County and Adjacent Districts**

The NAACP has failed to adequately allege a Section 2 claim for the senate districts in Fort Bend County and the adjacent area. The NAACP specifically identify Senate Districts 6, 13, 15, 17, and 18. ECF 321 ¶ 270. And the NAACP alleges that "[a]n additional majority-minority district could have been drawn in [the Fort Bend senate] cluster by making SD17 into a majority coalition district." ECF 321 ¶ 270.  But the NAACP does not adequately allege the second *Gingles* precondition here.

7

The NAACP makes only two minority-cohesion allegations. First—that in the currently enacted SD 17, "the Black, Hispanic, and Asian Coalition in SD 17 has consistently supported their candidates of choice with at least 80% cohesion." ECF 321 ¶ 276. And second—that "over the last ten years, each subgroup voted cohesively to support their preferred candidates of choice in the previous decade's configuration of SD 17." ECF 321 ¶ 276. But neither the currently enacted SD17 nor the previous decade's SD17 matter for purposes of minority cohesion under *Gingles*. Rather, the question is minority cohesion under the proposed SD17. And in that regard, the NAACP fails to allege minority cohesion.

The closest the NAACP gets is alleging that the proposed "reconfiguration of SD 17 will provide coalition voters in the district with a reasonable opportunity to elect their candidate of choice, based on the polarization estimates and the electoral history of the precincts in the district that shows [*sic*] that the voters of color who are added to the proposed district vote cohesively." ECF 321 ¶ 279. But threadbare allegations that the voters "who are added to the proposed district vote cohesively" is not the same as an allegation that the overall minority coalition would vote cohesively. And even if it were, the NAACP fails to actually identify any "polarization estimates" or mention which precincts have an "electoral history" showing cohesion. *See* ECF 321 ¶ 279. At best these are mere recitals of the elements of cohesion. This Court should therefore dismiss the NAACP's Section 2 claims against the senate districts in the Fort Bend County area.

C.   **House Districts in Tarrant County**

The NAACP also identifies House Districts 90–99 and 101 in the Tarrant County area. ECF 321 ¶ 298. Namely, the NAACP alleges that "the new map cracked the minorities in at least two districts (HDs 94 and 96) and incorporated them into the surrounding POC-heavy districts." ECF 321 ¶ 306. But according to the NAACP, the map drawers "could have drawn two more coalition districts with sizeable Black contingents." ECF 321 ¶ 306. The NAACP says this "could have been

done by creating one district in the cities of Arlington and Grand Prairie and creating another district in the city of Fort Worth." ECF 321 ¶ 306. Specifically, "[o]ne possible reconfiguration . . . proposes an alternative drawing of HD94 that adds Black, Hispanic, and Asian voters who are in neighboring districts including HD91 to a new proposed configuration of HD94." ECF 321 ¶ 311.

But the NAACP fails to satisfactorily allege minority cohesion in this "new proposed configuration of HD94" as required by the second *Gingles* precondition; nor does the NAACP allege white bloc-coting as required by the third *Gingles* precondition. True, the NAACP alleges that "[p]ast election results in the precincts covered by HD94 and the proposed districts to be added . . . show that voters of color vote cohesively." ECF 321 ¶ 311. But the NAACP never identifies the precincts in HD91 that it would draw into HD94. Nor does it identify all the districts that it would pull into HD94; rather, the NAACP merely says that it would pull in "neighboring districts *including* HD 91" but presumably not limited to HD91. And critically, the NAACP fails to allege that the particular minority voters that it would draw into HD94 from HD91 actually vote at the same 80% cohesion; instead, the NAACP alleges merely that minorities "have voted cohesively in HD94 over the last 10 years" "in the previous decade's configuration of HD 94," ECF 321 ¶ 308; and that whites in enacted HD94 vote cohesively, ECF 321 ¶ 309 ("Anglo bloc voting was estimated at 73%"). That is the sum total of the NAACP's cohesion allegations for the house districts in Tarrant County. For that reason, the NAACP has failed to allege either the second or third *Gingles* precondition, and this Court should dismiss this portion of the NAACP's Section 2 claims.

### D. House Districts in Wise and Denton Counties

The NAACP also identifies House Districts 57, 63, 64, 65, and 106 in Wise and Denton Counties. ECF 321 ¶ 313. Namely, the NAACP alleges that HD65 "could have been drawn as a majority-minority seat in the new map." ECF 321 ¶ 317. The NAACP says that "voters of color from HD63" could be moved into HD65. ECF 321 ¶ 318. But the NAACP fails to allege the second *Gingles*

9

precondition—that the minority voters forming the proposed HD65 would vote cohesively.

The NAACP alleges merely that "Black, Hispanic, and Asian voters have voted cohesively in HD65 over the last 10 years." ECF 321 ¶ 319. But whether blacks, Latinos, and Asians in HD65 (as enacted or as previously enacted) have voted cohesively for the last 10 years is simply not the cohesion inquiry under *Gingles*. "[A] *Gingles* plaintiff must show the second precondition for the minority population that would be included it its proposed district." ECF 307 at 33. Yet the closest that the NAACP gets is a threadbare allegation that "the voters of color who would be added from the precincts in HD63 into HD64 vote cohesively, based on past election results that show that coalition voters in these precincts typically support the same candidates." ECF 321 ¶ 322. But there are two problems with this allegation.

First, this allegation asserts that minority voters in the proposed HD64 would vote cohesively. But the NAACP does not identify the proposed HD64 as a new majority-minority district. The NAACP argues that *HD65* "could have been drawn as a majority-minority seat in the new map." ECF 321 ¶ 317. And yet the NAACP alleges that minorities in HD64 would vote cohesively. From the face of the complaint, it is not clear whether this is merely a typo or an irrelevant point. But if a single typo renders the NAACP's cohesion allegations inadequate, that suggests that the single cohesion allegation is inadequate to begin with. Second, whether minority voters in the currently enacted HD63 vote cohesively is separate and distinct from whether the minority voters in the proposed HD65 would vote cohesively. For these reasons, the NAACP has failed to adequately allege the second *Gingles* precondition for the house districts in Wise and Denton Counties. This Court should dismiss these Section 2 claims accordingly.

E.   **House Districts in Brazoria County**

The NAACP alleges that "a reconfiguration of" HDs 25 and 29 "can make HD29 a majority-minority district." ECF 321 ¶ 329. To support this claim, the NAACP alleges that black, Latino, and

Asian voters are cohesive in HD29, but it is not clear which configuration of HD29 the NAACP is referring to—HD29 as it was previously enacted or HD29 as it is currently enacted. *See* ECF 321 ¶ 330 ("In particular, Black, Hispanic, and Asian voters have voted cohesively in HD29 over the last 10 years."). And the NAACP supports this allegation with electoral-history data. *E.g.*, ECF 321 ¶ 330 ("In the 2020 presidential election, the Black, Hispanic, and Asian coalition had an estimated 87.2% support for the same candidate of choice.") But however this Court interprets the NAACP's ambiguous allegation, neither of the possible interpretations is the same as alleging that minorities in the ***proposed*** "reconfiguration of the Brazoria cluster" vote cohesively. And yet that is precisely what the second *Gingles* precondition requires.

The closest that the complaint gets to this a threadbare allegation that "voters of color in the alternative district configuration are cohesive both in the district and in the precincts to be moved between HDs 25 and 29." ECF 321 ¶ 333. Allegations that amount to nothing more than "threadbare recitals" or "legal conclusion[s]" do not suffice for adequate *Gingles* allegations. ECF 307 at 42 (quoting *Iqbal*, 556 U.S. at 678–79). Thus, this Court should dismiss the Section 2 claims against the house districts in Brazoria County.

### F. House Districts in Lubbock County

The NAACP next challenges the Lubbock County house districts. It proposes a "reconfiguration of the Lubbock cluster"—"an alternative drawing of HDs 83 and 84 that moves precincts between them to make a majority-minority coalition district in HD 83." ECF 321 ¶ 342. Yet again, the ambiguous cohesion problem plagues this section of the NAACP's complaint.

The NAACP alleges that black, Latino, and Asian voters are cohesive in HD83, but it is not clear what configuration of HD83 the NAACP is referring to—HD83 as it was previously enacted or HD83 as it is currently enacted. *See* ECF 321 ¶ 339 ("Black, Hispanic, and Asian voters have voted cohesively in HD 83 over the last 10 years."). And again, the NAACP supports this allegation with

11

electoral-history data. *E.g.*, ECF 321 ¶ 339 ("In the 2020 presidential election, the Black, Hispanic, and Asian coalition had an estimated 78% support for the candidate of choice.").

This allegation may refer to minority cohesion in either the previously enacted HD 83 or the currently enacted HD 83. But neither is the correct allegation. Rather, this Court requires that the NAACP satisfactorily allege minority cohesion in the proposed HD 83. Yet in this vein, the closest that NAACP gets is the threadbare allegation that "voters of color are cohesive in this alternative drawing" of HD 83 "based on past electoral history"—without ever specifying that past electoral history as to the minority group reflecting the proposed new HD 83. That is not enough to plausibly allege the second *Gingles* precondition. And this Court should likewise dismiss the Section 2 claims against the house districts in Lubbock County.

### G. Congressional Districts in Harris and Fort Bend Counties

Lastly, the NAACP challenges the configuration of the congressional districts in the Harris and Fort Bend area—Congressional Districts 2, 7, 9, 14, 18, 22, 29, and 38. *See* ECF 321 ¶ 361. Namely, the NAACP alleges that "[a]n additional majority-coalition district could have been drawn in this cluster by moving voters of color from CDs 18 and 29 into CD2." ECF 321 ¶ 361. Once again, the NAACP's minority-cohesion allegations are ambiguous.

The NAACP alleges that black, Latino, and Asian voters are cohesive in CD2, but it is not clear what configuration of CD2 the NAACP is referring to—CD2 as it is currently enacted or CD2 as it was previously enacted. *See* para 355 ("Black, Hispanic, and Asian voters have voted cohesively in CD 2 over the last 10 years."). The NAACP supports this ambiguous and irrelevant allegation with electoral-history data. *E.g.*, ECF 321 ¶ 339 ("One example is the 2020 presidential election, in which, Black, Hispanic, and Asian voters voted with over 82% estimated support for the same candidate of choice."). But to reiterate, this allegation may refer to minority cohesion in either the previously enacted CD2 or the currently enacted CD2. Neither would be the correct allegation. This Court requires

12

that the NAACP satisfactorily allege minority cohesion in the proposed CD2. Yet here too, the closest that NAACP gets is the threadbare allegation that "voters of color in the precincts that would be moved into the alternate compositions of CD 2 vote cohesively with upwards of 80% cohesion." ECF 321 ¶ 370.

These ambiguous allegations are in stark contrast to the NAACP's other cohesion allegations. For example, when it came to the congressional districts in Dallas and Tarrant Counties, the NAACP explicitly alleged minority cohesion in the proposed reconfigured minority-majority district: "Voters of color are cohesive in this alternative drawing of CD12." ECF 321 ¶ 359. The NAACP fails to make a comparable assertion with respect to the congressional districts in Harris and Fort Bend Counties— let alone elsewhere throughout the complaint. In sum, the NAACP has failed to adequately allege the second *Gingles* precondition, and this Court should dismiss the NAACP's Section 2 claims accordingly.

## IV. The NAACP has not adequately alleged cultural compactness for any of the challenged districts.

In this Court's Opinion, it explained that the first *Gingles* precondition requires a plaintiff to plead specific facts showing that the minority populations in the proposed district are "culturally compact." ECF 307 at 31 n.20 (citing *LULAC v. Perry*, 548 U.S. 399, 430–35 (2006)). Indeed, "there is no § 2 right to a district that is not compact." *LULAC*, 548 U.S. at 430.

To determine if a proposed district is compact, courts rely on "traditional districting principles such as maintaining communities of interest and traditional boundaries." *Id.* at 433 (quoting *Abrams v. Johnson*, 521 U.S. 74, 92 (1997)). Although the inquiry is fact-specific, it is clear that "a district that 'reaches out to grab small and apparently isolated minority communities' is not reasonably compact." *Id.* (quoting *Bush v. Vera*, 517 U.S. 952, 979 (1996)). That is because an ethnic population in one part of a state may very well have other interests, concerns, and associations than a population of the same ethnicity in a different part of the state. *See id.* (stressing that "a State may not 'assum[e] from a group of voters' race that they 'think alike, share the same political interests, and will prefer the same

13

candidates at the polls'" (quoting *Miller v. Johnson*, 515 U.S. 900, 920 (1995))). Setting aside that "prohibited assumption," there is "no basis to believe a district that combines two far-flung segments of a racial group with disparate interests provides the opportunity that § 2 requires or that the first *Gingles* condition contemplates." *Id.*

Therefore, a plaintiff fails to satisfy the first *Gingles* precondition where she fails to allege specific facts tending to show that the minority population in the proposed district is culturally compact. *See, e.g.*, *Ala. State Conf. of the NAACP v. Alabama*, --- F. Supp. 3d ---, 2020 WL 583803, at *22–25 (holding that plaintiffs failed to prove the first *Gingles* precondition because they had not shown that the black population in the proposed district was compact). Under the first *Gingles* precondition, it is not enough simply to be able to draw a district with a racial or ethnic majority: "The mathematical possibility of a racial bloc does not make a district compact." *LULAC*, 548 U.S. at 435.

Yet here, the NAACP has not included a single allegation of cultural compactness for a single one of its proposed districts. *See generally* ECF 321 ¶¶ 249–68 (Tarrant/Dallas senate districts); ECF 321 ¶¶ 269–81 (Fort Bend area senate districts); ECF 321 ¶¶ 298–312 (Tarrant County house districts); ECF 321 ¶¶ 313–23 (Wise and Denton County house districts); ECF 321 ¶¶ 324–34 (Brazoria County house districts); ECF 321 ¶¶ 335–42 (Lubbock County house districts); ECF 321 ¶¶ 353–60 (Dallas/Tarrant congressional districts); ECF 321 ¶¶ 361–70 (Harris/Fort Bend congressional districts). Indeed, the NAACP has not even offered any proposed district maps. *See generally* ECF 321. Hence, not only are Defendants unaware of what the NAACP's proposed districts would look like, Defendants have no way to know which particular minority communities are being incorporated from one preexisting district into a new district. Without that, there is no way to even infer cultural compactness—let alone the possibility for an adequate allegation of cultural compactness. As a result, the NAACP has failed to allege the first *Gingles* precondition with respect to any of the challenged districts. And therefore, this Court should dismiss the NAACP's Section 2 claims accordingly.

## CONCLUSION

Defendants respectfully ask that the Court dismiss the portions of the NAACP's complaint that this motion identifies.

| | |
|---|---|
| Date: July 1, 2022 | Respectfully submitted. |
| KEN PAXTON<br>Attorney General of Texas | /s/ *Patrick K. Sweeten*<br>PATRICK K. SWEETEN<br>Deputy Attorney General for Special Litigation<br>Tex. State Bar No. 00798537 |
| BRENT WEBSTER<br>First Assistant Attorney General | WILLIAM T. THOMPSON<br>Deputy Chief, Special Litigation Unit<br>Tex. State Bar No. 24088531 |
| | RYAN D. WALTERS<br>Special Counsel, Special Litigation Unit<br>Tex. State Bar No. 24105085 |
| | ARI M. HERBERT<br>Assistant Attorney General, Special Litigation Unit<br>Tex. State Bar No. 24126093 |
| | JACK B. DISORBO<br>Assistant Attorney General, Special Litigation Unit<br>Tex. State Bar No. 24120804 |
| | OFFICE OF THE ATTORNEY GENERAL<br>P.O. Box 12548 (MC-009)<br>Austin, Texas 78711-2548<br>Tel.: (512) 463-2100<br>Fax: (512) 457-4410<br>patrick.sweeten@oag.texas.gov<br>will.thompson@oag.texas.gov<br>ari.herbert@oag.texas.gov<br>jack.disorbo@oag.texas.gov |

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on July 1, 2022, and that all counsel of record were served by CM/ECF.

/s/ *Patrick K. Sweeten*
PATRICK K. SWEETEN