IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| *In re* Subpoena to THOMAS BRYAN | Miscellaneous Action No.3:22mc007 |
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS (LULAC), et al., | |
| Plaintiffs, | (*Underlying Action:* W.D. Tex. Case No. 3:21-cv-259) |
| v. | |
| GREG ABBOTT, et al., | |
| Defendants. | |

**UNITED STATES' MEMORANDUM IN SUPPORT OF ITS
MOTION TO COMPEL COMPLIANCE WITH SUBPOENA**

The United States, by and through its undersigned attorneys, submits this memorandum

of law in support of its motion to compel the compliance of Thomas Bryan with a non-party

subpoena served pursuant to Federal Rule of Civil Procedure 45.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

On December 6, 2021, the United States filed a Voting Rights Act enforcement action

challenging Texas's 2021 Congressional and State House redistricting plans in the U.S. District

Court for the Western District of Texas.  *See* U.S. Compl., *United States v. Texas*, No. 3:21-cv-

299 (W.D. Tex. Dec. 6, 2021), ECF No. 1; *see also* U.S. Am. Compl., *LULAC v. Abbott*, No.

3:21-cv-259 (W.D. Tex. June 6, 2022), ECF No. 318.  The United States' case was then

consolidated with *LULAC v. Abbott*, No. 3:21-CV-259 (W.D. Tex.), another challenge to Texas's

statewide redistricting plans.  *See* Order, *LULAC v. Abbott*, No. 3:21-cv-259 (W.D. Tex. Dec. 10,

2021), ECF No. 83.  In its complaint, the United States alleges that the 2021 Texas House plan

has a discriminatory result and that the Texas Congressional plan has a discriminatory purpose and discriminatory result, in violation of Section 2 of the Act, 52 U.S.C. § 10301.  *See* U.S. Am. Compl. ¶¶ 3-4.  Discovery is ongoing and closes July 15, 2022.

During the 2021 redistricting process, Texas House Redistricting Committee Chair Representative Todd Hunter hired Butler Snow LLP, a law firm with an extensive public policy practice, to assist with his redistricting work.  *See* Tex. House Comm. Tr., Ex. 1, at 18.  In turn, Butler Snow hired consultant cartographer Thomas Bryan to provide demographic and analytic support.  Representative Hunter publicly acknowledged that his initial proposed redistricting plan for the Texas House was drawn, in part, by Butler Snow.  *See id.*

On May 3, 2022, the United States served a subpoena on Mr. Bryan requiring production of, among other things, "documents relating to any redistricting proposal for the Texas delegation to the U.S. House of Representatives or the Texas House."  Bryan Subpoena, Ex. 2 at 6.  Through counsel, Mr. Bryan sent responses and objections to the United States' subpoenas on May 17, 2022.  Bryan Responses and Objections, Ex. 3.  The deadline to produce responsive documents was June 2, 2022.  On June 3, 2022, Butler Snow, now counsel for Mr. Bryan, informed the United States that Mr. Bryan would refuse either to produce any responsive documents or to provide a privilege log.

This Court should grant the United States' motion to compel.  Mr. Bryan has documents that are highly relevant to the United States' claims in this case, and he has failed to articulate a valid basis to withhold them.

## II.    LEGAL STANDARD

A subpoena recipient who is not prepared simply to provide the requested material must serve on the requesting party "a written objection to" producing the documents requested.  Fed.

R. Civ. P. 45(d)(2)(B).  "An objection must state whether any responsive materials are being withheld on the basis of that objection.  An objection to part of a request must specify the part and permit inspection of the rest."  Fed. R. Civ. P. 34(2)(C).  "A person withholding subpoenaed information under a claim that it is privileged" is required to "expressly make the claim" and "describe the nature of the withheld documents" such that "the parties [may] assess the claim."  Fed. R. Civ. P. 45(e)(2)(A)(i)-(ii).  The party withholding documents has the burden to establish they are privileged or protected.  *See In re Grand Jury Proceedings*, 33 F.3d 342, 353 (4th Cir. 1994).  "At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production."  Fed. R. Civ. P. 45(d)(2)(B)(i).

## III.   ARGUMENT

Mr. Bryan's Responses and Objections to the United States' subpoena fail to establish grounds to withhold responsive documents.  Mr. Bryan lists boilerplate overbreadth and relevance objections that do not provide a basis for withholding documents.[1]  Mr. Bryan also claims broad privileges—without sufficient factual bases—that do not apply to third-party

---

[1] Mr. Bryan's objections include assertions that the information requested is "irrelevant," Ex. 3 at 4, "disproportionate," *id.*, and "publicly available," *id.* at 6; that the subpoena requests "all documents" in a given category, *id.* at 7, documents "created after October 25, 2021," *id.* at 5, and documents created before "the fall of 2021," *id.*; that the subpoena "does not list an end date," *id.* at 12, and "falls short of [a] more stringent proportionality standard," *id.* at 4; and that it is "harassing" to request employment-related contracts between particular individuals and the government, *id.* at 11.  None of these boilerplate or general objections establish grounds for withholding responsive documents.  *See Fidelity Nat'l Title Ins. Co. v. Barringer Land SC, LLC*, No. 2:13-cv-69, 2014 WL 12594207, at *1 (N.D. W. Va. Apr. 15, 2014); *see also Freydl v. Meringolo*, 09 Civ. 7196, 2011 WL 2566087, at *4 (S.D.N.Y. June 16, 2011) ("Asserting boilerplate objections to every request made in the plaintiff's . . . first set of requests for production of documents, without . . . producing any document, amounts to a blanket refusal to participate in discovery and is a paradigm of discovery abuse." (internal quotation marks and citation omitted)).

redistricting consultants.[2]  The Court should require immediate disclosure of documents responsive to the United States' requests.

**A.  The Subpoenaed Documents are Relevant.**

The United States seeks documents related to redistricting in the possession of Mr. Bryan, a consultant demographer.  These documents are likely to include—at minimum—draft maps and communications between Mr. Bryan and others about the map-drawing process.  Draft redistricting plans and the data and instructions given for creating those plans are highly relevant to whether "invidious discriminatory purpose was a motivating factor" in drawing the ultimately enacted maps.  *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977). Similarly, these materials bear on whether "the policy underlying the State's . . . use of the contested practice or structure is tenuous" under the discriminatory results test as to redistricting for both Congress and the Texas House.  *Thornburg v. Gingles*, 478 U.S. 30, 45 (1986) (citation omitted).  Courts have consistently found that legislative materials are relevant in Voting Rights Act enforcement actions.  *See, e.g.*, *S.C. State Conf. of NAACP v. McMaster*, No. 3:21-cv-03302, 2022 WL 425011, at *6 (D.S.C. Feb. 10, 2022); *League of Women Voters of Mich. v. Johnson*, No. 17-14148, 2018 WL 2335805, at *6 (E.D. Mich. May 23, 2018); *Veasey v. Perry,* No. 2:13-cv-193, 2014 WL 1340077, at *2 (S.D. Tex. Apr. 3, 2014); *Perez v. Perry* (*Perez II*), 891 F. Supp. 2d 808, 833 n.94 (W.D. Tex. 2012) (three-judge court).  The requested materials are likewise relevant here.

---

[2] For example, Mr. Bryan writes that "[a]dditional privileges, including but not limited to, attorney-client privilege, the attorney work product doctrine, and deliberative process *may also be implicated* by DOJ's request." Ex. 3 at 3 (emphasis added).  The United States disagrees that its requests implicate the named privileges, but more importantly, Mr. Bryan's vague invocations of a laundry list of privileges are insufficient to meet his burden and justify the withholding of responsive documents.

**B. Mr. Bryan Has Waived Any Claims of Privilege.**

"[C]ourts have generally found that the failure to produce a timely or sufficient privilege log may constitute a forfeiture of any claims of privilege." *Wellin v. Wellin*, 2:13-cv-1831, 2015 WL 9850704, at *2 (D.S.C. Dec. 4, 2015) (collecting cases); *Nance v. Thompson Med. Co.*, 173 F.R.D. 178, 182 (E.D. Tex. 1997). "[W]ithholding materials otherwise subject to disclosure" due to a party's assertion of "a claim of privilege or work product protection" absent notice to the requesting party "is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection." Fed. R. Civ. P. 26(b)(5), Advisory Committee Notes (1993 Amend.). Mr. Bryan's complete failure to produce a privilege log waives his privilege claims.

**C. Mr. Bryan's Claims of Privilege Fail on the Merits**

Even if Mr. Bryan's privilege claims were not waived, he is not entitled to the privileges he has claimed.

**1. Work-Product Protections Do Not Extend to Legislative Work.**

Mr. Bryan supported the State of Texas's legislative process, not its litigation defense, and so his materials are not protected by the work-product doctrine. To establish work-product protection, a subpoena recipient must show the document was created "*because* of the prospect of litigation," *Video Warehouse of Huntington, Inc. v. Boston Old Colony Ins. Co.*, 160 F.R.D. 83, 85 (S.D. W. Va. 1994) (quotation marks omitted), and not "in the ordinary course of business or pursuant to regulatory requirements or for other non-litigation purposes," *Solis v. Food Emp'rs Labor Relations Ass'n*, 644 F.3d 221, 232 (4th Cir. 2011) (quotation marks omitted). Nothing in Mr. Bryan's objections suggests that he was employed in anticipation of litigation. Instead, available materials—including a privilege log from another subpoena recipient— indicate that Mr. Bryan was employed to draft the redistricting plans that became law in House

Bill 1 and Senate Bill 6. *See* Privilege Log of Adam Foltz, Ex. 4.[3] Since these redistricting plans "would have been created in essentially the same form in the absence of litigation," the plans and related documents were not in anticipation of litigation. *In re Dominion Dental Servs. USA, Inc. Data Breach Litig.*, 429 F. Supp. 3d 190, 193 (E.D. Va. 2019); *see also Lloyd's of London v. Lowen Valley View, LLC*, No. 3:16-cv-465, 2017 WL 2504954, at *2 (N.D. Tex. June 9, 2017).[4] Furthermore, use of outside counsel as an insulating layer between the Legislature and outside map-drawers suggests that "relevant and non-privileged facts remain hidden" and that "production of those facts is essential" to this litigation. *Hickman v. Taylor*, 329 US. 495, 511 (1947). Because Mr. Bryan's work was legislative, not legal, documents related to that work are not entitled to work-product protection.

### 2. Mr. Bryan Cannot Invoke the Trial Preparation Expert Exemption.

Federal Rule of Civil Procedure 26(b)(4)(D) provides that "a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial." *Id.* This exemption does not apply to Mr. Bryan for three reasons.

First, by its terms, Rule 26(b)(4)(D) does not apply to the requested materials. The United States does not currently seek interrogatory responses from, or a deposition of, Mr.

---

[3] Adam Foltz is a political operative hired at the direction of Representative Todd Hunter, Chair of the House Redistricting Committee. *See, e.g.*, Alexa Ura, *Texas Appears to Be Paying a Secretive Republican Political Operative $120,000 Annually to Work Behind the Scenes on Redistricting*, Texas Tribune (Sep. 29, 2021), https://perma.cc/847D-RB9K. Mr. Foltz's privilege log indicates that he communicated with Mr. Bryan regarding redistricting.

[4] It would be perverse to say that that Texas's persistent history of racial discrimination in redistricting—which has necessitated litigation to vindicate the rights of minority voters— somehow transforms redistricting materials into protected work product. To the contrary, "a series of official actions taken for invidious purposes," is itself evidence of intentional discrimination. *Arlington Heights*, 429 U.S. at 267.

Bryan. *See Livingston v. City of Chi.*, No. 16-cv-10156, 2021 WL 3487347, at *4 (N.D. Ill. Aug. 9, 2021) ("The plain language of [Rule 26(b)(4)(D)] applies only to 'interrogatories or depositions,' and not to requests for documents."); *Evans Indus., Inc. v. Lexington Ins. Co.*, No. 07-6423, 2008 WL 11353736, at *1 (E.D. La. July 10, 2008) ("[Defendant] is requesting production of documents [from plaintiffs' expert], tangible items which Rule 26 does *not* prohibit.").

Second, experts employed by non-party Butler Snow—and indirectly by non-party Representative Hunter—are not "employed by another party," as set forth in the rule. *See Curtis Park Grp., LLC v. Allied World Specialty Ins. Co.*, No. 20-cv-00552, 2021 WL 1022703, at *7 (D. Colo. Mar. 17, 2021) (citing *Durflinger v. Artiles*, 727 F.2d 888, 891 (10th Cir. 1984); *Ark. River Power Auth. v. The Babcock and Wilcox Co.*, 310 F.R.D. 492, 497-98 (D. Colo. 2015) (collecting cases nationwide and stating "the court has not found[] any case in which a non-party has been permitted to invoke Rule 26(b)(4)(D) in a case where it was not a party.")).

Third, Mr. Bryan was not retained in anticipation of litigation or to prepare for trial, nor has any party designated him as an expert witness. Instead, he was an "active participant in the events which form the subject matter of this litigation"—namely, the passage of a redistricting plan alleged to have discriminatory purpose and result—and the United States is therefore "entitled to whatever discovery" it "may deem appropriate." *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 303 (D. Md. 1992) (three-judge court).

### 3. Mr. Bryan has failed to identify an attorney-client relationship

In the Fourth Circuit, attorney-client privilege "applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made" is an attorney or the attorney's subordinate and is acting as an attorney in connection with

the communication; "(3) the communication relates to" a client's informing the attorney of a fact in private "for the purpose of securing" a legal opinion or legal services; "and (4) the privilege has been (a) claimed and (b) not waived by the client." *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998) (quotation marks omitted). "The burden is on the proponent of the attorney-client privilege to demonstrate its applicability." *Id.* (quotation marks omitted).

Mr. Bryan has not shown that his documents reflect communications for the purpose of a legal opinion or legal services. "If what is sought is not legal advice but only [map-drawing] service . . . or if the advice sought is the [demographer's] rather than the lawyer's, no privilege exists." *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961); *accord Williams v. Big Picture Loans, LLC*, 303 F. Supp. 3d 434, 446 (E.D. Va. 2018). Mr. Bryan's general assertion of attorney-client privilege with no facts to support it falls short of the showing needed to benefit from the privilege.

### 4. Legislative Privilege Does Not Apply to Documents in Mr. Bryan's Possession.

Legislative privilege is a qualified evidentiary privilege that "protects a state legislative actor from discovery," but "only to the very limited extent that a public good transcends the normally predominant principle of utilizing all rational means for ascertaining truth." *Benisek v. Lamone*, 241 F. Supp. 3d 566, 574 (D. Md. 2017) (three-judge court); *Jefferson Cmty. Health Care Centers, Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 624 (5th Cir. 2017). Legislative privilege can extend to individuals other than legislators, but there remains "a requirement that a legislative assistant or aide be *directly* employed and paid by an individual legislator, a legislative committee, or the legislature as a whole." *Page v. Va. State Bd. of Elec.*, 15 F. Supp. 3d 657, 664 (E.D. Va. 2014) (emphasis added). This limitation "provides a sensible and defensible bulwark against excessive use of the legislative privilege," that "prevents legislators

8

from enveloping lobbyists and outside experts in a cloak of invisibility." *Id.*  Mr. Bryan was employed by Butler Snow, and was not "directly employed and paid by an individual legislator, a legislative committee, or the legislature as a whole." *Id.*  He is therefore not entitled to claim legislative privilege categorically over his documents.

Furthermore, to assert legislative privilege, an individual entitled to do so must show that a communication "contains or involves opinions, motives, recommendations or advice about legislative decisions between legislators or between legislators and their staff." *Jackson Mun. Airport Auth. v. Bryant*, No. 3:16-cv-246, 2017 WL 6520967, at *6 (S.D. Miss. Dec. 19, 2017) (citations omitted).  Mr. Bryan has not identified with specificity any responsive documents that are communications with legislators.  He has not identified which, if any, of these documents contain "opinions, motives, recommendations, or advice."  And he has not identified which, if any, of the documents are "about legislative decisions."  *See* Bryan's Responses and Objections to Subpoena, Ex. 3 at 3, 5-11 (invoking legislative privilege without reference to specific documents in Mr. Bryan's possession).  Mr. Bryan has not carried his burden, and, for that reason, any documents withheld on the basis of legislative privilege should be produced.

Additionally, some of the documents the United States has requested are categorically not subject to legislative privilege based on the documents' content, even if they reflect communications with legislators.  Technical advice, such as directions for how to use map-drawing software, read maps, and use demographic information in conjunction with mapping, is not protected from disclosure.  *See United States v. El Paso Cnty.*, 682 F.2d at 530, 542 (5th Cir. 1982); *Chemtech Royalty Assocs., L.P. v. United States*, No. 06-258, 2009 WL 854358, at *3-*6 (M.D. La. Mar. 30, 2009); *see also Committee for a Fair and Balanced Map v. Ill. State. Bd. of Elections*, No. 11-cv-5065, 2011 WL 4837508, at *10 (N.D. Ill. Oct. 12, 2011) (concluding that

the identities of retained experts and consultants used in the redistricting process were not privileged). Additionally, communications transmitting population demographic data and other statistics consist of primarily factual information. Courts have declined to apply legislative privilege to apply to factual documents. *Bethune-Hill v. Va. State Bd. of Elec.*, 114 F. Supp. 3d 323, 343 (E.D. Va. 2015); *Fair and Balanced Map*, 2011 WL 4837508, at *10. Mr. Bryan has not made an adequate showing to withhold any of his documents based on legislative privilege at all. But at a minimum, technical advice and factual information in his possession must be disclosed.

Finally, even if this Court were to determine that the qualified legislative privilege applies to some documents held by Mr. Bryan, the United States' interest in enforcing the constitutional prohibition on intentional racial discrimination in voting and the uniquely probative nature of the withheld documents must overcome assertions of a "qualified" legislative privilege as to documents concerning the 2021 Congressional redistricting plan. The factors typically applied to determine when legislative privilege must yield uniformly favor disclosure. Specifically, courts have analyzed,

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Page*, 15 F. Supp. 3d at 666 (internal citation and quotation marks omitted). The documents sought are highly relevant, and they are a unique source of evidence because officials "seldom, if ever, announce on the record . . . their desire to discriminate against a racial minority." *Smith v. Town of Clarkton, N.C.*, 682 F.2d 1055, 1064 (4th Cir. 1982). The seriousness of litigation to enforce the constitutional protection against racial discrimination in voting is beyond question,

and the role of the government in this matter is clear.  Finally, disclosure of legislative documents in past Voting Rights Act litigation establishes that production of such materials has not rendered Texas officials timid.  *See, e.g.*, *Veasey*, 2014 WL 134007, at *2.  This Court should, at a minimum, order Mr. Bryan to produce all documents in his possession, custody, or control that address the allegedly intentionally-discriminatory 2021 Texas Congressional redistricting.

## IV.    CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court order Thomas Bryan to produce all responsive documents for which his Responses and Objections have failed to establish a claim of privilege.  Given that fact discovery ends on July 15, the United States respectfully requests that the Court order production within seven days of the date of the Court's order.

Dated: June 14, 2022

JESSICA D. ABER
United States Attorney

By: */s/ Jonathan T. Lucier*
Jonathan T. Lucier, VSB No. 81303
Attorney for the Movant
Office of the United States Attorney
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Tel.: (804) 819-5400
Fax: (804) 771-2316
Email: jonathan.lucier@usdoj.gov

Respectfully submitted,

PAMELA S. KARLAN
Principal Deputy Assistant Attorney General
Civil Rights Division

*/s/ Holly F.B. Berlin*
T. CHRISTIAN HERREN, JR.
TIMOTHY F. MELLETT
DANIEL J. FREEMAN
JANIE ALLISON (JAYE) SITTON
MICHELLE RUPP
JACKI L. ANDERSON
JASMIN LOTT
HOLLY F.B. BERLIN
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

Tel.: (202) 532-3514
Email: holly.berlin@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on June 14, 2022, copies of the foregoing were served by electronic mail

on counsel for Thomas Bryan:

Scott K. Field
Butler Snow
1400 Lavaca Street, Suite 1000
Austin, TX 78701
scott.field@butlersnow.com

/s/_____
Jonathan T. Lucier, VSB No. 81303
Office of the United States Attorney
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Tel.: (804) 819-5400
Fax: (804) 771-2316
Email: jonathan.lucier@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| *In re* subpoena of Thomas Bryan | Miscellaneous Action No. |
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS (LULAC), et al., <br><br> Plaintiffs, <br><br> v. <br><br> GREG ABBOTT, et al., <br><br> Defendants. | (*Underlying Action:* W.D. Tex. Case No. 3:21-cv-259) |

**DECLARATION OF HOLLY F.B. BERLIN**

I, Holly F.B. Berlin, hereby declare as follows:

1.      I am a Trial Attorney with the United States Department of Justice, Civil Rights Division, Voting Section, attorney for the movant, the United States of America, in the above-referenced action.  I submit this declaration in support of Movant's Motion to Compel Thomas Bryan's Compliance with Subpoena, dated June 14, 2022.  I have personal knowledge of the matters stated within this Declaration, except as otherwise noted.  If called upon, I could and would testify competently to the facts contained in this Declaration.

2.      Attached hereto as Exhibit 1 is a true and correct copy of an excerpt of the Hearing Transcript for the October 4, 2021 hearing held in the House Redistricting Committee in the Texas Legislature.

1

3.      Attached hereto as Exhibit 2 is a true and correct copy of the subpoena served

on Thomas Bryan on May 3, 2022.

4.      Attached hereto as Exhibit 3 is a true and correct copy of Thomas Bryan's

Objections and Responses, received on May 17, 2022.

5.      Attached hereto as Exhibit 4 is a true and correct copy of excerpts of the

privilege log of Adam Foltz.

I declare under penalty of perjury that the foregoing is true and correct.


Dated:          Washington, D.C.
                June 13, 2022



                                    By:     */s/ Holly F.B. Berlin*_____
                                            HOLLY F.B. BERLIN
                                            Trial Attorney
                                            Voting Section
                                            Civil Rights Division
                                            United States Department of Justice
                                            holly.berlin@usdoj.gov
                                            (202) 532-3514

EXHIBIT

1

# Audio Transcript

# Date of Transcription

October 04, 2021

# Case:

HOUSE REDISTRICTING COMMITTEE HEARING 10/04

BILL_FILE-0016400

1

2

3

4

5

6                    House Redistricting Committee Hearing

7

8

9

10     ******************************************************************

11

12

13                             OCTOBER 4, 2021

14

15

16     ******************************************************************

17

18

19

20

21

22

23     TRANSCRIBED BY:

24     Kay Counseller

25     Certified Shorthand Reporter

Kim Tindall & Associates, Inc.        16414 San Pedro          San Antonio, Texas 78232
Phone (210) 697-3400                    Suite 900                 Fax (210) 697-3408

BILL_FILE-0016401

 1   public.  But I felt, rather than a point/counterpoint, you

 2   needed an overview of how we were looking at HB1.  And again,

 3   my office will remain open even beyond today to talk and visit

 4   with the members here.  And the public, certainly keep your

 5   input coming.  The process is the committee process right now.

 6   There is then a floor process which can be different.  So I

 7   want everybody to know you're in the process.

 8              The -- let me get this.  Let me stop there,

 9   Mr. Goldman.  And Mr. Jetton, do you have any comments about

10   the Fort Bend that you have to me or the new district that has

11   developed?  Nothing on that?  Mr. Goldman, do you have anything

12   on the North Texas?  Mr. Turner?

13              CHAIR TURNER:  I have -- I have several

14   questions, Mr. Chairman.

15              CHAIR HUNTER:  Sure.

16              CHAIR TURNER:  Is this now the --

17              CHAIR HUNTER:  Yes.

18              CHAIR TURNER:  -- right time to do this?  Okay.

19   Thank you.  Thank you, Mr. Chairman.  And I'll apologize for

20   having my back to you but I want to make sure my -- what I say

21   is clearly said in the microphone --

22              CHAIR HUNTER:  Absolutely.  Please, please.

23              CHAIR TURNER:  Thank you for the -- the layout

24   of House Bill 1, Mr. Chairman.  I'd like to start by trying to

25   better understand the process by which the House map was drawn.

BILL_FILE-0016417

 1   So I ask a basic question:  Who actually sat at the computer
 2   and physically constructed House Bill 1?
 3                  CHAIR HUNTER:  Let -- let me just give you a
 4   comprehensive answer.  Nobody saw the map until I filed it.  I
 5   heard this rumor going out, That's what they did 10, 20 years
 6   ago.  I've been watching a video on YouTube video about this.
 7   That's not how we do it today.
 8                  What I did, Mr. Turner, I continually asked
 9   House members and held the public hearings, which we listened
10   to, to submit into the Red Apple program concepts.  I received
11   regional groups, individuals.  I will tell you that some of the
12   areas of the state turned them in and then members of that
13   region came in and said they didn't agree with it.
14                  So what we did is we took the Red Apple
15   programming, I then have a law firm that advises me with their
16   technical folks.  With some of my staff, I got them to take a
17   look at it, had them run the legal and the data, give me the
18   suggestions, and then I made the decision.
19                  CHAIR TURNER:  Okay.  Thank you, Mr. Chairman.
20   So can I ask the name of the law firm?
21                  CHAIR HUNTER:  Butler Snow.
22                  CHAIR TURNER:  Butler Snow.  All right.  And so
23   in terms of who actually drew the plan, is that you or your
24   staff or someone at Butler Snow?
25                  CHAIR HUNTER:  It's a combination of all.

BILL_FILE-0016418

```
1              CHAIR TURNER:  All right.  Thank you.  And then
2    last week there was a media report that there's a gentleman
3    named Adam Foltz who works for either the Texas Legislative
4    Council or the Redistricting Committee.  I think there was some
5    confusion on that.  Was Mr. Foltz involved in drawing the maps?
6              CHAIR HUNTER:  Yes.  And he reports to me.
7              CHAIR TURNER:  Okay.  So is he an employee of
8    the House Redistricting Committee?
9              CHAIR HUNTER:  He is not an employees of the
10   House Redistricting Committee.  He is an employee through the
11   Legislative Council, assigned to me, which happens quite a bit.
12   It's not just in this situation.
13             CHAIR TURNER:  Okay.  So did -- did Legislative
14   Council hire him or did --
15             CHAIR HUNTER:  I think they actually -- you'll
16   have to check on the formality but I think they actually do the
17   contract and then he's assigned to me, just like they do with
18   all -- many of their employees who do the same.
19             CHAIR TURNER:  Okay.  So it was -- was it a
20   decision of Legislative Council to hire him or was it --
21             CHAIR HUNTER:  It was my request.
22             CHAIR TURNER:  It was your decision?
23             CHAIR HUNTER:  Yes.
24             CHAIR TURNER:  Okay.
25             CHAIR HUNTER:  Everything falls on me.
```

BILL_FILE-0016419

# EXHIBIT 2

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Western District of Texas

| | |
|---|---|
| League of United Latin American Citizens, et al. | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.    3:21-cv-259-DCG-JES-JVB |
| Greg Abbott, et al. | ) |
| | )    (If the action is pending in another district, state where: |
| *Defendant* | )                                      ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Thomas Bryan
      13106 Dawnwood Terrace, Midlothian, VA 23114

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See Attachment A

| Place: U.S. Attorney's Office for the Eastern District of Virginia<br>919 E Main St, Suite 1900<br>Richmond, VA 23219 | Date and Time:<br>           06/02/2022 5:00 pm |
|---|---|

❒ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:     05/03/2022

           *CLERK OF COURT*

                                     OR

                                                    /s/ Daniel J. Freeman

     *Signature of Clerk or Deputy Clerk*                                 *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*    the United States of America                           , who issues or requests this subpoena, are:

Daniel J. Freeman, U.S. Department of Justice, Civil Rights Division, Voting Section, 950 Pennsylvania Ave. NW, 4CON 8th Floor, Washington, D.C. 20530 Email: daniel.freeman@usdoj.gov Phone: 202-305-5451

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   3:21-cv-259-DCG-JES-JVB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

|  |  |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS (LULAC), et al., <br><br> Plaintiffs, <br><br> v. <br><br> GREG ABBOTT, et al., <br><br> Defendants. | Civil Action No. 3:21-cv-259 (DCG-JES-JVB) (consolidated cases) |

## ATTACHMENT A – SUBPOENA FOR DOCUMENTS AND RECORDS

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, you are commanded to produce to the United States of America the documents and electronically stored information described below in your possession, custody, or control.

## DEFINITIONS AND INSTRUCTIONS

1.     "Document" is defined to be synonymous in meaning and scope as the term "document" is used under Rule 34 of the Federal Rules of Civil Procedure and as the phrase "writings and recordings" is defined in Rule 1001 of the Federal Rules of Evidence and includes, but is not limited to, any computer files, memoranda, notes, letters, emails, printouts, instant messages, ephemeral messages (such as Slack, Signal, Snapchat, Telegram, and Wickr), social media messages, text messages, or databases, and any handwritten, typewritten, printed, electronically-recorded, taped, graphic, machine-readable, or other material, of whatever nature and in whatever form, including all non-identical copies and drafts thereof, and all copies bearing any notation or mark not found on the original.

1

2.      "Legislator" means a past or present elected member of the Texas House of Representatives ("Texas House") or the Texas Senate, including such member's past or present employees, legislative office staff, district office staff, committee staff, caucus staff, campaign staff, interns, representatives, designees, attorneys, advisors, consultants, contractors, agents, or other persons or entities acting or purporting to act on the member's behalf or subject to the member's control or on behalf of any committee or other body of which the elected member is a member.

3.      "Member of the U.S. House of Representatives" means a past or present elected member of the United States House of Representatives, including such member's past or present employees, legislative office staff, district office staff, committee staff, caucus staff, campaign staff, interns, representatives, designees, attorneys, advisors, consultants, contractors, agents, or other persons or entities acting or purporting to act on the member's behalf or subject to the member's control or on behalf of any committee or other body of which the elected member is a member.

4.      "Redistricting" means any consideration of the alignment of district boundaries for an entire legislative body, a single legislative district, or districts within a geographic area. Unless otherwise specified, the term does not include consideration of the alignment of district boundaries for the Texas Senate or the Texas State Board of Education.

5.      "Relating to" means referring to, regarding, consisting of, concerning, pertaining to, reflecting, evidencing, describing, constituting, mentioning, or being in any way logically or factually connected with the matter discussed, including any connection, direct or indirect, whatsoever with the requested topic.

6.      "Senate Bill 6" means the legislation setting forth the district boundaries for the Texas delegation to the U.S. House of Representatives that Governor Greg Abbott signed into law on October 25, 2021. *See* S.B. 6, 87th Leg., 3d Spec. Sess. (Tex. 2021).

7.      "House Bill 1" means the legislation setting forth the district boundaries for the Texas House that Governor Abbott signed into law on October 25, 2021. *See* H.B. 1, 87th Leg., 3d Spec. Sess. (Tex. 2021).

8.      In responding to these requests, please produce all responsive documents in your possession, custody, or control. This means that you must produce all responsive documents within your actual possession, custody, or control, as well as such documents which you have the legal right to obtain on demand or the practical ability to obtain from a third party, including but not limited to any and all documents that you and your counsel or other persons or entities acting or purporting to act on your behalf have actually reviewed.

9.      All references in these requests to an individual person include any and all past or present employees, staff, interns, representatives, designees, attorneys, advisors, consultants, contractors, agents, predecessors in office or position, and all other persons or entities acting or purporting to act on the individual person's behalf or subject to the control of such a person.

10.     All references in these requests to an entity, governmental entity, or any other type of organization include its past or present officers, executives, directors, employees, staff, interns, representatives, designees, attorneys, advisors, consultants, contractors, agents, and all other persons or entities acting or purporting to act on behalf of such an organization or subject to its control.

11.     In construing these document requests, apply the broadest construction, so as to produce the most comprehensive response. Construe the terms "and" and "or" either

disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside that scope. Words used in the singular include the plural.

12.     Words or terms used herein have the same intent and meaning regardless of whether the words or terms are depicted in lowercase or uppercase letters.

13.     Documents should be produced in their entirety, without abbreviation, redaction, or expurgation; file folders with tabs or labels identifying documents responsive to these requests should be produced intact with the documents; and documents attached to each other should not be separated.

14.     Each document produced should be categorized by the number of the document request in response to which it is produced.

15.     No portion of a request may be left unanswered because an objection is raised to another part of that request. If you object to any portion of a document request, you must state with specificity the grounds of the objection. Any ground not stated will be waived.

16.     For any document withheld from production on a claim of privilege or work product protection, provide a written privilege log identifying each document individually and containing all information required by Rule 45(e)(2)(A) of the Federal Rules of Civil Procedure, including a description of the basis of the claimed privilege and all information necessary for the United States to assess the claim of privilege.

17.     If you contend that it would be unduly burdensome to obtain and provide all of the documents called for in response to any document request or subsection thereof, then in response to the appropriate request: (a) produce all such documents as are available without undertaking what you contend to be an unduly burdensome request; (b) describe with

4

particularity the efforts made by you or on your behalf to produce such documents; and (c) state with particularity the grounds upon which you contend that additional efforts to produce such documents would be unduly burdensome.

18.     If any requested document or other potentially relevant document is subject to destruction under any document retention or destruction program, the documents should be exempted from any scheduled destruction and should not be destroyed until the conclusion of this lawsuit or unless otherwise permitted by court order.

19.     In the event that a responsive document has been destroyed or has passed out of your possession, custody, or control, please provide the following information with respect to each such document: its title, date, author(s), sender(s), recipient(s), subject matter, the circumstances under which it has become unavailable, and, if known, its current location and custodian.

20.     These requests are continuing in nature. Your response must be supplemented and any additional responsive material disclosed if responsive material becomes available after you serve your response. You must also amend your responses to these requests if you learn that an answer is in some material respect incomplete or incorrect.

21.     Unless otherwise specified, all document requests concern the period of time from January 1, 2019, to the present.

## DOCUMENT REQUESTS

1.      All documents relating to any redistricting proposal for the Texas delegation to

the U.S. House of Representatives or the Texas House, including but not limited to House Bill 1,

Senate Bill 6, and any other Congressional or House redistricting proposal drawn, discussed, or

considered. This request includes but is not limited to:

      a.   the origination(s) or source(s) of any such redistricting proposal;

      b.   the impetus, rationale, background, or motivation for any such redistricting
proposal;

      c.   all drafts in the development or revision of any such redistricting proposal,
including but not limited to shapefiles, files or datasets used in mapping
software, each RED report, each PAR report, demographic data (including but
not limited to Citizen Voting Age Population, Hispanic Citizen Voting Age
Population, Black Citizen Voting Age Population, Voting Age Population,
Hispanic Voting Age Population, and Black Voting Age Population), election
data (including but not limited to reconstituted election analyses), and files
related to precinct names, precinct lines, split precincts, partisan indexes,
population shifts, population deviations, voter registration, Spanish Surname
Voter Registration, voter affiliation, Spanish Surname Voter Turnout, or
changing census geography;

      d.   the pairing of any incumbents in any such redistricting proposal;

      e.   any redistricting amendment, whether partial or total, to each such proposal;

      f.   negotiations regarding any redistricting proposal; and

g. all calculations, reports, audits, estimates, projections, or other analyses, from any source, relating to the effect or impact, of any kind—including on (1) Texas minority voters, (2) existing or emerging minority opportunity districts, or (3) voter turnout (including Spanish Surname Voter Turnout)—that could result from the implementation of any such redistricting proposal.

2. All documents relating to the redistricting process for the Texas House or the Texas delegation to the U.S. House of Representatives, including but not limited to planning, timing, hearings, outreach, publicity, public or expert participation, deadlines, limitations, staffing, and persons or entities involved.

3. All documents relating to voting patterns in Texas elections with respect to race, ethnicity, or language minority status, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

4. All documents relating to whether House Bill 1, Senate Bill 6, or any other redistricting proposal drawn, discussed, or considered with respect to the Texas House or the Texas delegation to the U.S. House of Representatives complies with the Voting Rights Act, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

5. All documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives exchanged between, among, with, or within the Office of the Governor, the Office of the Lieutenant Governor, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative

Council, any member of the U.S. House of Representatives, any candidate to represent Texas in the U.S. House of Representatives, any candidate for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any local elected official in Texas, any consultant, any expert, any law firm or attorney, any vendor, any other political or community group or organization, or any member of the public.

6.      All other documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives from July 1, 2021, to the present, including but not limited to redistricting criteria, public statements, correspondence, calendar invitations, scheduling emails, meeting minutes, agendas, attendance sheets, call logs, notes, presentations, studies, advocacy, letters, or other communications.

7.      All documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes, race, ethnicity, language minority status, or United States citizenship that were exchanged between, among, with, or within the Office of the Governor, the Office of the Lieutenant Governor, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate for the Texas House,

any candidate to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any consultant, any expert, any law firm or attorney, any vendor, any group or organization, or any member of the public.

8.      All documents relating to payment for services; agreements of representation, consultation, employment, services, confidentiality, or common interest; or any other type of contract relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives that include any of the following individuals or entities: Adam Foltz, Chris Gober, The Gober Group, any consultant, any political operative, any expert, the Office of the Texas Attorney General, any other law firm, any other attorney, any other vendor, or any other person or entity.

9.      All non-privileged documents relating to the instant lawsuit or preceding investigation of Texas by the U.S. Department of Justice.

# EXHIBIT

# 3

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS *et al.*, | § § § | |
| *Plaintiffs*, | § § | Case No. 3:21-cv-259-DCG-JES-JVB |
| v. | § § | (Consolidated Cases) |
| GREG ABBOTT, *et al.*, | § § § | |
| *Defendants*. | § | |

---

**THOMAS BRYAN'S OBJECTIONS AND RESPONSES TO**
**THE UNITED STATES' SUBPOENA FOR DOCUMENTS AND RECORDS**

TO:   Daniel J. Freeman, U.S. Department of Justice, Voting Section, Civil Rights Division, 4 Constitution Square 150 M St. NE, Room 8.143, Washington, D.C. 20530 Email: Daniel.freeman@usdoj.gov   Phone: (202) 305-4355

Pursuant to the Federal Rules of Civil Procedure, Thomas Bryan serves Objections and

Responses to the United States' Subpoena for Documents and Records.

Date:  May 17, 2022

Respectfully submitted,

BUTLER SNOW LLP

By: */s/ Scott K. Field*
Scott K. Field
Texas State Bar No. 00793725
scott.field@butlersnow.com
Marshall A. Bowen
Texas State Bar No. 24096672
marshall.bowen@butlersnow.com
1400 Lavaca St., Suite 1000
Austin, Texas 78701
Tel: 737-802-1800

**COUNSEL FOR THOMAS BRYAN**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 17, 2022, the attached Objections and Responses to the United States' Subpoena for Documents and Records was served on opposing counsel via electronic mail.

*/s/ Scott K. Field*
Scott K. Field

## OBJECTIONS RELEVANT TO EACH REQUEST

Thomas Bryan asserts that each of the following objections applies specifically to each request below.  In the interest of brevity, these objections are offered here to avoid unnecessary repetition of objections to definitions, scope, and similar issues that afflict each request.  These objections are as follows:

Mr. Bryan is a consulting-only expert hired by Butler Snow LLP to assist it in representing its clients at the Texas Legislature.  Federal Rule of Civil Procedure 26(b)(4)(D) prohibits a party from discovering facts known or opinions held by an expert who is not expected to be called as a witness at trial.  Fed. R. Civ. P. 26(b)(4)(D).  *See Hartford Fire Ins. Co. v. Pure Air on the Lake Ltd. P'ship*, 154 F.R.D. 202, 208 (N.D. Ind. 1993) ("Rule 45 of the Federal Rules of Civil Procedure cannot be utilized for obtaining an expert's files where Rule 26(b)(4) remains the limitation on discoverability.").  Documents in Mr. Bryan's possession and information known to him are protected from discovery under this rule.  Additional privileges, including but not limited to, attorney-client privilege, the attorney work product doctrine, and deliberative process may also be implicated by DOJ's requests, and Mr. Bryan anticipates asserting all applicable privileges implicated by the DOJ's requests.

Given Mr. Bryan's role as a consulting expert, and that the requested production directly relates to legislative activities, much of the requested production is subject to legislative privilege.  That privilege traces its roots to before the founding of the Republic, as it has "taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries."  *Tenney v. Brandhove*, 341 U.S. 372 (1951).  The privilege protects not only legislators, but their staff and aides as well.  *See Gravel v. United States*, 408 U.S. 606, 615-16 (1972).  Here, DOJ's attempt to compel disclosure of Mr. Bryan's "thought processes or [his] communications . . . with . . . legislators" falls squarely within the well-established contours of legislative privilege.  *Perez v. Abbott*, No. 5:11-cv-360, 2014 WL 3495414 (W.D. Tex. July 11, 2014).

The inadvertent production or disclosure of any privileged documents or information shall not constitute or be deemed to be a waiver of any applicable privilege with respect to such document or information (or the contents or subject matter thereof) or with respect to any other such document or discovery now or hereafter requested or provided.  Mr. Bryan reserves the right not to produce documents that are in part protected by privilege, except on a redacted basis, and to require the return of any document (and all copies thereof) inadvertently produced.  Mr. Bryan likewise does not waive the right to object, on any and all grounds, to (1) the evidentiary use of documents produced in response to these requests; and (2) discovery requests relating to those documents.

There is currently no protective order in place between the United States Department of Justice ("DOJ") and Mr. Bryan.  To the extent that documents may be identified that are discoverable but require additional protections to prevent public disclosure, any such documents that are identified will be withheld and described in the responses, with the clarification that such production will first require entry of a protective order before the documents may be disclosed.

The Federal Rules provide that the "attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). While nonparty subpoenas are governed by Rule 45, they are also subject to the parameters established by Rule 26. *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 607 (W.D. Tex. 2019) ("As with any other forms of discovery, the scope of discovery through a Rule 45 subpoena is governed by Rule 26(b)."). Therefore, the discovery sought here is still limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The twin demands for relevancy and proportionality "are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Thus, if the information sought is irrelevant to the party's claims or defenses, "it is not necessary to determine whether it would be proportional if it were relevant." *Walker v. Pioneer Prod. Servs., Inc.*, No. CV 15-0645, 2016 WL 1244510, at *3 (E.D. La. Mar. 30, 2016). Conversely, "relevance alone does not translate into automatic discoverability" because "[a]n assessment of proportionality is essential." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Accordingly, Mr. Bryan objects to these requests to the extent that the information sought is irrelevant or disproportionate.

A portion of the requested production is also irrelevant to DOJ's claims and is thus identified individually below. But a much larger portion of the request is not proportional to the needs of the case. The proportionality language was inserted into Rule 26(b) in 2015 "to emphasize the need for proportionality," *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017), and "highlight[] its significance," *Mannina v. D.C.*, 334 F.R.D. 336, 339 n.4 (D.D.C. 2020); *see also* Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States,[1] ("Rule 26(b)(1) crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality[.]"). As the Advisory Committee explained, this addition of overt "proportional" language was meant to better reflect the intent of the 1983 amendments, which were designed "to deal with the problem of over-discovery." Fed. R. Civ. P. 26(b) advisory committee's note (2015) (quoting the 1983 advisory notes). However, this "clear focus of the 1983 provisions may have been softened, although inadvertently, by the amendments made in 1993." *Id.* Thus, the 2015 amendment sought to "restore[] the proportionality factors to their original place in defining the scope of discovery" and reinforce the parties' obligation "to consider these factors in making discovery requests, responses, or objections." *Id.* As fully restored, the proportionality requirement "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019), cert. denied, 140 S. Ct. 672 (2019). Accordingly, Mr. Bryan objects to the DOJ's subpoena to the extent that it falls short of this more stringent proportionality standard.

---

[1] https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf

Mr. Bryan objects to the production of any documents or communications created after October 25, 2021, because any documents created after the passage of HB1 and SB6 are irrelevant to the United States' claims.

These responses and objections are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information or documents requested.  All answers are given without prejudice to Mr. Bryan's right to object to the discovery of any documents, facts, or information discovered after the date hereof.  Likewise, these responses and objections are not intended to be, and shall not be construed as, agreement with the DOJ's characterization of any facts, circumstances, or legal obligations.  Mr. Bryan reserves the right to contest any such characterization as inaccurate and object to the Requests insofar as they contain any express or implied assumptions of fact or law concerning matters at issue in this litigation.

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Mr. Bryan objects to the definition of "document" to the extent that it calls for documents protected from disclosure by legislative privilege, attorney-client privilege, attorney work-product privilege, consulting expert privilege, deliberative process privilege, or any other applicable privilege.

Mr. Bryan objects to the definitions of "Legislator," "Member of the U.S. House of Representatives," "individual person," "entity," and "organization," *see* ¶¶ 2–3, 9–10, because they are overbroad and inaccurate.  They improperly group all persons and entities having any relation to a particular person or entity, when in fact the particular person or entity is independent of those related persons or entities.  Mr. Bryan objects to the implied application to any related persons or entities without specific enumeration.

Mr. Bryan further objects to the time period in Instruction 21, which defines the relevant time period for these responses as beginning on January 1, 2019.  The claims and issues in this litigation pertain to redistricted maps that were drawn based upon data received from the United States Census Bureau in the late summer of 2021 and finalized in the fall of 2021. Accordingly, it is unreasonable and disproportionate to the needs of this case to look back to January of 2019 for documents responsive to these requests.

## RESPONSES

**Document Request 1**: All documents relating to any redistricting proposal for the Texas delegation to the U.S. House of Representatives or the Texas House, including but not limited to House Bill 1, Senate Bill 6, and any other Congressional or House redistricting proposal drawn, discussed, or considered. This request includes but is not limited to:

   a. the origination(s) or source(s) of any such redistricting proposal;

   b. the impetus, rationale, background, or motivation for any such redistricting proposal;

   c. all drafts in the development or revision of any such redistricting proposal, including but not limited to shapefiles, files or datasets used in mapping software, each RED report, each

PAR report, demographic data (including but not limited to Citizen Voting Age Population, Hispanic Citizen Voting Age Population, Black Citizen Voting Age Population, Voting Age Population, Hispanic Voting Age Population, and Black Voting Age Population), election data (including but not limited to reconstituted election analyses), and files related to precinct names, precinct lines, split precincts, partisan indexes, population shifts, population deviations, voter registration, Spanish Surname Voter Registration, voter affiliation, Spanish Surname Voter Turnout, or changing census geography;

d.   the pairing of any incumbents in any such redistricting proposal;

e.   any redistricting amendment, whether partial or total, to each such proposal;

f.   negotiations regarding any redistricting proposal; and

g.   all calculations, reports, audits, estimates, projections, or other analyses, from any source, relating to the effect or impact, of any kind—including on (1) Texas minority voters, (2) existing or emerging minority opportunity districts, or (3) voter turnout (including Spanish Surname Voter Turnout)—that could result from the implementation of any such redistricting proposal.

**Response:** Mr. Bryan objects to this request because it calls for the production of documents that are subject to legislative privilege, attorney-client privilege, attorney work-product privilege, consulting only expert privilege under Federal Rule of Civil Procedure 26(b)(4)(D), deliberative process privilege, or are protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501.  In particular, requesting analyses "from any source" is likely to encompass documents that are protected by the legislative privilege or the consulting only expert privilege.  Requesting "the origination(s)" and "the impetus, rationale, background, or motivation" of certain legislative proposals would impermissibly expose thought processes and mental impressions, which are also subject to legislative privilege.  Requesting analyses that were "considered by" the Legislature, "draft in the development or revision of" redistricting proposals, "negotiations" and "calculations, reports, audits, estimates, projections, or other analyses" would be subject to legislative privilege for the same reason.

Mr. Bryan further objects to this request because it asks him to gather publicly available documents that are equally accessible to the United States.  Insofar as the request generally seeks shapefiles, data sets, reconstituted election analyses, amendments, information concerning the pairing of incumbents, and other general information, Mr. Bryan directs DOJ to the Texas Legislative Council's Capitol Data Portal, https://data.capitol.texas.gov/organization/tlc, where such information may be found. Insofar as the request seeks such information specifically considered by any legislator or staff, the request calls for information subject to the legislative privilege.  To the extent the request seeks information specific to Mr. Bryan, the request calls for information protected from disclosure under Federal Rule of Civil Procedure 26(b)(4)(D).

Lastly, insofar as the request seeks legal analysis concerning the "effect or impact" of redistricting proposals on "minority voters," "existing or emerging minority opportunity districts," or "voter

turnout," it seeks information that may be subject to the attorney-client privilege or constitute attorney work product.

**Document Request 2:** All documents relating to the redistricting process for the Texas House or the Texas delegation to the U.S. House of Representatives, including but not limited to planning, timing, hearings, outreach, publicity, public or expert participation, deadlines, limitations, staffing, and persons or entities involved.

**Response:** Mr. Bryan objects to this request because it calls for documents that are subject to the legislative privilege. The request seeks documents relating to the "planning" and "timing" of the redistricting process. These go to mental impressions and legislative strategy, which are at the core of the legislative privilege. Mr. Bryan objects to this request to the extent that documents that are subject to attorney-client privilege, consulting only expert privilege under Federal Rule of Civil Procedure 26(b)(4)(D), attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Mr. Bryan also objects to this request because it asks him to gather publicly available documents that are equally accessible to Plaintiff. Insofar as the request seeks information on the attendance and date of hearings, and persons and entities involved, such information may be found at the Texas Senate and Texas House of Representatives websites, as well as on the Texas Legislature Online ("TLO") website. *See* https://senate.texas.gov/index.php (Senate); https://house.texas.gov/ (House); https://capitol.texas.gov/Home.aspx (TLO).

**Document Request 3:** All documents relating to voting patterns in Texas elections with respect to race, ethnicity, or language minority status, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response:** Insofar as this request asks for calculations, reports, audits, estimates, projections, or other analyses used as part of the redistricting process, Mr. Bryan objects on the basis that such a request calls for documents that are subject to the legislative privilege. Documents used for the purpose of formulating legislation are at the core of the legislative privilege. Mr. Bryan objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, consulting expert privilege under Federal Rule of Civil Procedure 26(b)(4)(D), deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Mr. Bryan also objects to this request because it is facially overbroad. It calls for "all" documents relating to voting patterns, without any temporal limitation (other than the one included in the instructions) or further specification. For this reason, documents relating to voting patterns in Texas may well be irrelevant to the United States' claims—which are limited to several districts in the Texas House of Representatives map and Congressional map.

**Document Request 4:** All documents relating to whether House Bill 1, Senate Bill 6, or any other redistricting proposal drawn, discussed, or considered with respect to the Texas House or the Texas

delegation to the U.S. House of Representatives complies with the Voting Rights Act, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response:** Mr. Bryan objects to this request because, by its very nature, it calls for documents that are subject to the attorney-client privilege, the legislative privilege, and constitute attorney work product.  Legal analysis concerning whether HB1, SB6, or other related redistricting bills comply with the VRA will necessarily implicate these privileges.  Further, communications between legislators and their staffs are privileged communications covered by the legislative privilege.

Finally, Mr. Bryan objects to this request on the basis of the consulting expert privilege under Federal Rule of Civil Procedure 26(b)(4)(D) because any documents in his possession are necessarily pursuant to his role as a consulting expert to Butler Snow LLP.

**Document Request 5:** All documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives exchanged between, among, with, or within the Office of the Governor, the Office of the Lieutenant Governor, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate to represent Texas in the U.S. House of Representatives, any candidate for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any local elected official in Texas, any consultant, any expert, any law firm or attorney, any vendor, any other political or community group or organization, or any member of the public.

**Response:** Mr. Bryan objects to this request because it is overbroad.  The request calls for "all documents relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients).  That is an extremely broad request and will necessarily apply to documents that are irrelevant to the United States' claims in this case.

Mr. Bryan also objects to this request because it calls for documents that are covered by the legislative privilege.  First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege.  *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991).  And requesting communications between the office of the Governor, the office of the Representative, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege.  Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions."

8

*Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

Mr. Bryan also objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, consulting expert privilege under Federal Rule of Civil Procedure 26(b)(4)(D), deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Mr. Bryan further objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to redistricting exchanged between the individuals and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

**Request 6:** All other documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives from July 1, 2021, to the present, including but not limited to redistricting criteria, public statements, correspondence, calendar invitations, scheduling emails, meeting minutes, agendas, attendance sheets, call logs, notes, presentations, studies, advocacy, letters, or other communications.

**Response:** Mr. Bryan objects to this request because it is overbroad. The request calls for "all documents relating redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request and will necessarily apply to make documents that are irrelevant to the United States' claims in this case.

Mr. Bryan also objects to this request because the request calls for documents that are subject to the legislative privilege. Among others, documents concerning "presentations," "redistricting criteria," and "meeting minutes" go directly to legislators' mental impressions and motivations concerning pending legislation, which is clearly covered by the privilege. Of course, communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991).

Mr. Bryan further objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, consulting only expert privilege under Federal Rule of Civil Procedure 26(b)(4)(D), deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

**Request 7:** All documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes, race, ethnicity, language minority status, or United States citizenship that were exchanged between, among, with, or within the Office of the Governor, the Office of the Lieutenant Governor, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members

thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate for the Texas House, any candidate to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any consultant, any expert, any law firm or attorney, any vendor, any group or organization, or any member of the public.

**Response:** Mr. Bryan objects to this request because it is overbroad.  The request calls for "all documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes," without any qualifications (other than the listed recipients).  That is an extremely broad request and will likely apply to make documents that are irrelevant to the United States' claims in this case.

Mr. Bryan also objects to this request because it calls for documents that are covered by the legislative privilege.  First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991).  And requesting communications between the office of the Governor, the office of the Representative, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege.  Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing Supreme Court of Virginia v. Consumers *Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

Mr. Bryan further objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, consulting expert privilege under Federal Rule of Civil Procedure 26(b)(4)(D), deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Mr. Bryan also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case.  Specifically, it is unclear without further specification why documents relating to demographic enumerations or estimates exchanged between the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Mr. Bryan further objects on the basis that much the information sought by this request may be made publicly available by the U.S. Census Bureau and the Texas Demographic Center.

**Request 8:** All documents relating to payment for services; agreements of representation, consultation, employment, services, confidentiality, or common interest; or any other type of contract relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives that include any of the following individuals or entities: Adam Foltz, Chris Gober, The Gober Group, any consultant, any political operative, any expert, the Office of the Texas Attorney General, any other law firm, any other attorney, any other vendor, or any other person or entity.

**Response:** Mr. Bryan objects to this request because it is overbroad and harassing. Although it appears to be bounded by specific persons and entities, the end of the request provides that the request applies to "any other attorney," "any other vendor," or "any other person or entity." The net effect is that the initial limitations are swallowed by the sheer breadth of a request that asks for "all documents" that "[relate] to redistricting" and that include "any other person or entity." Accordingly, this request is overly broad and conducting a search of this scope and breadth without any reasonable limitation is disproportionate to the needs of this case. Further, Mr. Bryan is not a party to this litigation, and should not be required to produce, for example, "all documents" that "[relate] to redistricting" that include "any political operative." Such a facially overbroad requests create an undue burden. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

In addition, Mr. Bryan objects to this request because it calls for documents that are subject to the legislative privilege and the attorney-client privilege. Documents relating to services provided by third parties for a legislative purpose are subject to the legislative privilege. *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)). And documents relating to Mr. Bryan and any legal representation is subject to the attorney-client privilege.

Mr. Bryan also objects on the basis that this request does not list an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any contracts or other agreements entered into after the filing of this complaint would necessarily be irrelevant.

Mr. Bryan further objects to this request to the extent that documents that are subject to attorney work-product privilege, the consulting expert privilege under Federal Rule of Civil Procedure 26(b)(4)(D), deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

**Request 9:** All non-privileged documents relating to the instant lawsuit or preceding investigation of Texas by the U.S. Department of Justice.

**Response:** Mr. Bryan objects to this request because it is overbroad. It is unclear from the face of this request why "all documents relating" to this lawsuit or the United States' preceding investigation would be relevant to the United States' claims. And insofar as these documents relate to the United States' investigation, these are documents that are more likely to be within the care, custody, or control of the United States. If such materials are more commonly held by others, including state and local law enforcement agencies, production should be requested from them rather than from an individual legislator. Given the availability of these documents from other sources, the burden of requiring Mr. Bryan to collect them far exceeds any benefit that might result.

*See Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (stating that courts should "consider what information is available to the requesting party from other sources" when analyzing "the benefit side of the ledger").

Mr. Bryan also objects on the basis that this request does not list an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973).  Any documents originating after the filing of this complaint would necessarily be irrelevant.

Mr. Bryan further objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, consulting expert privilege under Federal Rule of Civil Procedure 26(b)(4)(D), deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

# EXHIBIT 4

# Privilege Log - Adam Foltz

| Control Number | Author(s) | Date Created | To | From | CC | BCC | Privilege Claim | Description |
|---|---|---|---|---|---|---|---|---|
| PDOC_003927 | | | | | | | Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. |
| PDOC_003930 | | | | | | | Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. |
| PDOC_003936 | | | | | | | Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. |
| PDOC_003940 | | | | | | | Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| DOC_0351134 | Adam Foltz | 9/25/2021 | | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351135 | Adam Foltz | 9/25/2021 | | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351136 | Thomas Bryan | 7/21/2021 | | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351137 | Adam Foltz | 7/30/2021 | | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351138 | Adam Foltz | 9/28/2021 | | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| DOC_0351435 | | | | | | | Attorney Client; Work Product; Legislative | Document and related data relating to redistricting map proposal regarding redistricting for the Texas House. The document includes contributions from outside counsel. |
| DOC_0351436 | | 9/29/2021 | | | | | Attorney Client; Work Product; Legislative | Document and related data relating to redistricting map proposal regarding redistricting for the Texas House. The document includes contributions from outside counsel. |
| DOC_0351437 | | | Tommie Cardin; Parker Berry; Scott Field | Adam Foltz | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351443 | | | Tommie Cardin; Parker Berry; Scott Field | Adam Foltz | Thomas Bryan' <tom@bryangeodemo.com> | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351449 | | | Tommie Cardin; Parker Berry; Scott Field | Adam Foltz | Thomas Bryan | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| DOC_0351455 | | | Tommie Cardin; Parker Berry; Scott Field | Adam Foltz | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351461 | | | Tommie Cardin; Parker Berry; Scott Field | Adam Foltz | Thomas Bryan | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351470 | | | Tommie Cardin; Parker Berry; Scott Field | Adam Foltz | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351476 | | | Tommie Cardin; Scott Field; Parker Berry | Adam Foltz | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351482 | | | Tommie Cardin; Parker Berry; Scott Field | Adam Foltz | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| DOC_0351484 | | | Tommie Cardin; Parker Berry; Scott Field | Adam Foltz | Thomas Bryan | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351490 | | | Tommie Cardin; Parker Berry; Scott Field | Adam Foltz | Thomas Bryan | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351492 | | | Scott Field; Tommie Cardin; Parker Berry | Adam Foltz | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351494 | | | Tommie Cardin | Adam Foltz | Thomas Bryan | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351496 | | | Tommie Cardin; Scott Field; Parker Berry | Adam Foltz | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| DOC_0351500 | | | Thomas Bryan; Tommie Cardin; Parker Berry; Scott Field | Adam Foltz | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351501 | Adam Foltz | 9/30/2021 | | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351502 | | | Tommie Cardin; Parker Berry; Scott Field | Adam Foltz | Thomas Bryan | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351503 | Adam Foltz | 9/30/2021 | | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351504 | | | Tommie Cardin; Scott Field; Parker Berry | Adam Foltz | Thomas Bryan | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| DOC_0351517 | | | Tommie Cardin; Parker Berry; Scott Field | Adam Foltz | Thomas Bryan | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351522 | | | Tommie Cardin; Parker Berry; Scott Field | Adam Foltz | Thomas Bryan | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351529 | | | Adam Foltz; Tommie Cardin; Scott Field | Parker Berry | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351530 | | | Adam Foltz | Parker Berry | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351534 | Eric Wienckowski | 10/15/2021 | | | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| DOC_0351535 | | | Adam Foltz | Parker Berry | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351536 | Eric Wienckowski | 10/15/2021 | | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351537 | Eric Wienckowski | 10/14/2021 | | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351538 | | | Adam Foltz | Parker Berry | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351539 | | | Adam Foltz | Parker Berry | Tommie Cardin; Scott Field; Thomas Bryan | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| DOC_0351540 | | | Adam Foltz | Parker Berry | Tommie Cardin; Scott Field; Thomas Bryan | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351541 | | | | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351542 | | | Scott Field; Adam Foltz | Parker Berry | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351543 | | | Scott Field | Parker Berry | Adam Foltz | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351545 | | | Scott Field | Parker Berry | Adam Foltz | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| DOC_0351568 | | | Adam Foltz | Parker Berry | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351569 | | | Adam Foltz | Parker Berry | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351570 | | | Adam Foltz | Parker Berry | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351571 | | | Adam Foltz | Parker Berry | Scott Field; Tommie Cardin | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351572 | Thomas Bryan | 10/3/2021 | | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| DOC_0351573 | | | Adam Foltz | Parker Berry | Scott Field; Tommie Cardin | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. | |
| DOC_0351574 | Thomas Bryan | 10/3/2021 | | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. | |
| DOC_0351575 | | | Adam Foltz | Parker Berry | Tommie Cardin; Scott Field | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. | |
| DOC_0351576 | Eric Wienckowski | 9/29/2021 | | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. | |
| DOC_0351577 | | | Adam Foltz | Parker Berry | Tommie Cardin; Scott Field | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| DOC_0351578 | | | Adam Foltz | Parker Berry | Tommie Cardin; Scott Field | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351579 | | | Scott Field | Parker Berry | Adam Foltz; Tommie Cardin | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351580 | | | Adam Foltz | Parker Berry | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351581 | | | Scott Field | Parker Berry | Tommie Cardin; Adam Foltz; Thomas Bryan | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351582 | Thomas Bryan | 9/24/2021 | | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| DOC_0351583 | | | Adam Foltz | Parker Berry | Tommie Cardin; Scott Field | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351584 | | | Scott Field | Parker Berry | Adam Foltz; Tommie Cardin | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351586 | | | Adam Foltz | Parker Berry | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351587 | Thomas Bryan | 9/27/2021 | | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351588 | | | Adam Foltz | Parker Berry | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |

| DOC_0351589 | Thomas Bryan | 9/27/2021 | | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351590 | | | Adam Foltz | Parker Berry | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351591 | Thomas Bryan | 9/26/2021 | | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351592 | | | Adam Foltz | Parker Berry | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351593 | Thomas Bryan | 9/26/2021 | | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| DOC_0351594 | | | Adam Foltz | Parker Berry | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351595 | Thomas Bryan | 9/24/2021 | | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351596 | | | Thomas Bryan' <tom@bryangeodemo.com>; Adam Foltz; Tommie Cardin; Scott Field | Parker Berry | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351597 | | | Adam Foltz | Parker Berry | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351598 | Thomas Bryan | 9/24/2021 | | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| DOC_0351599 | | | Adam Foltz | Parker Berry | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351600 | Thomas Bryan | 9/24/2021 | | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351601 | | | Margo Cardwell | Scott Field | Adam Foltz; Tommie Cardin; Parker Berry | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351602 | | | Adam Foltz; Tommie Cardin; Parker Berry | Scott Field | Margo Cardwell | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351603 | | | Adam Foltz; Tommie Cardin; Parker Berry | Scott Field | Margo Cardwell | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |

| DOC_0351636 | | | Adam Foltz | Scott Field | Tommie Cardin | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351637 | | | Adam Foltz; Tommie Cardin; Parker Berry | Scott Field | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351638 | | | Parker Berry; Adam Foltz | Thomas Bryan | Tommie Cardin; Scott Field | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351639 | | | Parker Berry; Adam Foltz; Tommie Cardin; Scott Field | Thomas Bryan | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351640 | | | Adam Foltz; Tommie Cardin; Parker Berry; Scott Field | Thomas Bryan | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| DOC_0351641 | | | Adam Foltz; Tommie Cardin; Parker Berry; Scott Field | Thomas Bryan | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351642 | | | Adam Foltz; Tommie Cardin; Parker Berry; Scott Field | Thomas Bryan | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351643 | | | Adam Foltz; Tommie Cardin; Parker Berry; Scott Field | Thomas Bryan | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351644 | | | Adam Foltz; Tommie Cardin; Parker Berry; Scott Field | Thomas Bryan | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351645 | | | Tommie Cardin; Parker Berry; Scott Field; Adam Foltz; Eric Wienckowski | Thomas Bryan | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| DOC_0351646 | | 9/30/2021 | | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351647 | | | Tommie Cardin; Parker Berry; Scott Field; Adam Foltz | Thomas Bryan | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351648 | | | Tommie Cardin; Parker Berry; Scott Field; Adam Foltz | Thomas Bryan | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351649 | | | Adam Foltz | Tommie Cardin | Scott Field; Parker Berry | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351650 | Wilson Montjoy | 10/8/2021 | | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| DOC_0351662 | Thomas Bryan | 9/28/2021 | | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351663 | Thomas Bryan | 9/28/2021 | | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351664 | | | Adam Foltz | Tommie Cardin | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351665 | Eric Wienckowski | 9/28/2021 | | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0351666 | | | Scott Field; Tommie Cardin; Parker Berry; Adam Foltz | Colleen Garcia | Margo Cardwell | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |

| DOC_0352004 | | | Tommie Cardin; Parker Berry; Scott Field | Adam Foltz | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0352009 | | | Tommie Cardin; Parker Berry; Scott Field | Adam Foltz | Thomas Bryan | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0352010 | Adam Foltz | 9/26/2021 | | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0352011 | | | Tommie Cardin; Parker Berry; Scott Field | Adam Foltz | Thomas Bryan | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0352012 | Adam Foltz | 9/25/2021 | | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| DOC_0352013 | | | Tommie Cardin; Parker Berry; Scott Field | Adam Foltz | Thomas Bryan | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0352014 | Adam Foltz | 9/25/2021 | | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0352015 | | | Tommie Cardin; Parker Berry; Scott Field | Adam Foltz | Thomas Bryan | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0352016 | | 9/24/2021 | | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0352017 | | 9/24/2021 | | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| DOC_0352018 | | | Tommie Cardin; Parker Berry; Scott Field | Adam Foltz | Thomas Bryan | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0352019 | | | Tommie Cardin; Parker Berry; Scott Field | Adam Foltz | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0352020 | Adam Foltz | 9/30/2021 | | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0352021 | | | Tommie Cardin; Scott Field | Adam Foltz | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0352022 | | 9/29/2021 | | | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| DOC_0352028 | | | Tommie Cardin; Scott Field; Parker Berry | Adam Foltz | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0352029 | | | Tommie Cardin; Scott Field; Parker Berry | Adam Foltz | Thomas Bryan | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0352034 | | | Tommie Cardin | Adam Foltz | 'tom@bryangeodemo.com' <tom@bryangeodemo.com> | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0352042 | | | Tommie Cardin | Adam Foltz | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |
| DOC_0352043 | | | tom@bryangeodemo.com' <tom@bryangeodemo.com>; Tommie Cardin; Parker Berry; Scott Field | Adam Foltz | | | Attorney Client; Work Product; Legislative | Confidential analysis of draft redistricting legislation for Texas House districts prepared for and at the direction of Chairman Hunter reflecting and implicating legislative privileged thoughts, opinions, and mental impressions. Includes contributions from outside counsel. |