UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **LEAGUE OF UNITED LATIN AMERICAN CITIZENS,** *et al.*, | § § § § | |
| *Plaintiffs,* | § § § | |
| **EDDIE BERNICE JOHNSON,** *et al.*, | § § § | **EP-21-CV-00259-DCG-JES-JVB** [Lead Case] |
| *Plaintiff-Intervenors,* | § § | |
| **v.** | § § | **&** |
| | § § | **All Consolidated Cases** |
| **GREG ABBOTT,** *in his official capacity as Governor of the State of Texas*, *et al.*, | § § § § | |
| *Defendants.* | § | |

## ORDER REGARDING MOTIONS TO QUASH DEPOSITION SUBPOENAS

Two of the Plaintiffs in these consolidated cases—the United States and the Mexican American Legislative Caucus ("MALC")—have issued deposition subpoenas to Dade Phelan, the Speaker of the Texas House of Representatives.  ECF No. 341-1.  MALC has also issued deposition subpoenas to Margo Cardwell (General Counsel to the Texas House of Representatives) and Sharon Carter (Parliamentarian of the Texas House of Representatives). ECF Nos. 341-2 & 341-3.

Speaker Phelan, General Counsel Cardwell, and Parliamentarian Carter (collectively, the "Movants") move to quash or modify these subpoenas—or, in the alternative, for a protective order relieving the Movants from answering any questions that elicit legislatively-privileged testimony.  Mot., ECF No. 341.  The Court administratively stayed the challenged depositions to give the Court time to consider the parties' arguments.  ECF No. 381.  The Court now rules on the Motion as follows.

## I.     SPEAKER PHELAN

### A.     The *Morgan* Doctrine

#### 1.     Applicable Standard

Speaker Phelan primarily bases his request to quash the deposition subpoena on a legal principle called the "*Morgan* doctrine."[1]  Mot. at 5–15.[2]  The *Morgan* doctrine specifies that a party may not involuntarily depose "a high-ranking government official" absent "exceptional circumstances."  *E.g.*, *Freedom from Religion Found., Inc. v. Abbott*, No. A-16-CA-00233-SS, 2017 WL 4582804, at *10 (W.D. Tex. Oct. 13, 2017) ("*FFRF*") (quoting *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995)).  To determine whether such exceptional circumstances exist, courts in this Circuit consider:

(1)     The deponents' high-ranking status;

(2)     The potential burden the depositions would impose on the deponents; and

(3)     The substantive reasons for taking the depositions.

*In re Bryant*, 745 F. App'x 215, 220 (5th Cir. 2018).  Judges in this district "generally only consider subjecting a high ranking government official to a deposition if the official has first-hand knowledge related to the claims being litigated and other persons cannot provide the necessary information."  *FFRF*, 2017 WL 4582804, at *11.

---

[1] *See, e.g.*, *United States v. Morgan*, 313 U.S. 409 (1941) (the doctrine's namesake); *Blankenship v. Fox News Network, LLC*, No. 2:19-cv-00236, 2020 WL 7234270, at *6 (S.D. W. Va. Dec. 8, 2020) (using the phrase "*Morgan* doctrine").  Some courts call this principle the "apex doctrine."  *See, e.g.*, *FDIC v. Galan-Alvarez*, No. 1:15-mc-00752, 2015 WL 5602342, at *3 (D.D.C. Sept. 4, 2015).

[2] References to page numbers in this Order refer to the page numbers assigned by the Court's CM/ECF system, rather than to the cited document's internal pagination.

The United States[3] does not contest that Speaker Phelan qualifies as "high-ranking" for the purposes of the *Morgan* doctrine. *See* U.S. Resp., ECF No. 358, at 1–9. *Cf. Moriah v. Bank of China Ltd.*, 72 F. Supp. 3d 437, 438, 440 (S.D.N.Y. 2014) (holding that the former Majority Leader of the U.S. House of Representatives was a "high-ranking government official"). The United States thus bears the burden to prove exceptional circumstances justifying Speaker Phelan's deposition. *FFRF*, 2017 WL 4582804, at *11 ("Once the court has determined the government official qualifies as 'high-ranking,' the burden shifts to the party seeking to depose the high-ranking official to demonstrate extraordinary circumstances.").

### 2. The *Morgan* Doctrine Applies to High-Ranking Legislative Officials

The United States effectively concedes that it cannot presently meet that burden. *See* U.S. Resp. at 8 ("At this time, the United States lacks access to documents concerning the Speaker's involvement in redistricting . . . ."); *id.* (claiming that "further discovery" is necessary "to determine whether information concerning the Speaker's role in redistricting is unobtainable from other sources"). The United States thus attempts to entirely avoid its burden to satisfy *Morgan*'s prerequisites by arguing that *Morgan*'s analytical framework only applies to *executive* branch officials, *not* legislative officials like the Speaker. *Id.* at 4–7 ("[T]he *Morgan* doctrine does not apply to legislators . . . .").

We disagree. Numerous courts have applied the *Morgan* framework to deposition subpoenas targeted at legislative officials. *See, e.g.*, *Blankenship*, 2020 WL 7234270, at *6–8 (applying *Morgan* doctrine to prohibit depositions of U.S. Senators); *Moriah*, 72 F. Supp. 3d at 438–41 (applying doctrine to quash subpoena against former U.S. House Majority Leader); *McNamee v. Massachusetts*, No. 12-40050, 2012 WL 1665873, at *1–2 (D. Mass. May 10, 2012)

---

[3] MALC adopts by reference the United States' arguments against quashing Speaker Phelan's deposition subpoena. *See* MALC Resp., ECF No. 360, at 10.

(applying doctrine to quash subpoenas against U.S. Representative and his former Chief of Staff); *Feldman v. Bd. of Educ.*, No. 09-cv-01049, 2010 WL 383154, at \*1–2 (D. Colo. Jan. 28, 2010) (applying doctrine to prevent deposition of U.S. Senator). The United States has not directed the Court to any cases reaching the contrary conclusion; nor has the Court's independent research uncovered any such authority. *See* U.S. Resp. at 4–7.

Instead, the United States attacks the decisions applying the *Morgan* framework to legislative entities as "erroneous[]" and urges the Court to disregard them. *Id.* at 6–7. We are reluctant to break with the overwhelming weight of persuasive authority. In any event, these authorities are sound. As the Fifth Circuit has explained, the *Morgan* doctrine is based on the premise that "[h]igh ranking government officials have greater duties and time constraints than other witnesses." *FDIC*, 58 F.3d at 1060 (quoting *In re United States*, 985 F.2d 510, 512 (11th Cir. 1993)). If courts did not require litigants to demonstrate exceptional circumstances before deposing a high-level government official, "'such officials would spend an inordinate amount of time tending to pending litigation' to the impairment of their official responsibilities." *Blankenship*, 2020 WL 7234270, at \*6 (S.D. W. Va. Dec. 8, 2020) (quoting *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013)). *See also, e.g., Bryant*, 745 F. App'x at 220–21 (opining that protecting high-ranking officials "from undue burdens regarding . . . frequent litigation" is "why the 'exceptional circumstances' analysis exists in the first place"). High-ranking legislative officials—no less than executive officials—have formidable demands on their time, and forcing them to appear at depositions against their will would distract them from their critical governmental duties. We therefore reject the United States' assertion that "[t]he logic behind the *Morgan* doctrine necessarily limits its scope to intrusions on executive branch decision-making." *Contra* U.S. Resp. at 5.

- 4 -

The United States suggests that the concerns animating the *Morgan* doctrine have less force in the legislative context because "other protections bar unwarranted probing into legislative . . . acts, including the Speech and Debate Clause" and "State legislative privilege." *Id.* at 6.  But the *Morgan* doctrine is not merely about preventing "unwarranted probing" into official acts; it also aims to relieve high-ranking government officials from responsibilities—like attending and preparing for depositions—that could distract them from their official duties.  *See, e.g.*, *Jackson Mun. Airport Auth. v. Reeves*, No. 3:16-CV-246, 2020 WL 5648329, at *3 (S.D. Miss. Sept. 22, 2020) ("Courts are supposed to insulate high-ranking government officials 'from the constant distraction of testifying in lawsuits' in part because we need the government to function.") (quoting *United States*, 985 F.2d at 512); *Blankenship*, 2020 WL 7234270, at *6 ("The [*Morgan*] doctrine applies to testimony sought from Members of Congress in connection with matters *both related and unrelated to their official duties*.") (emphasis added).  As discussed above, that distraction concern applies to high-ranking legislative and executive officials alike.  In any event, the weight of persuasive authority applies the *Morgan* doctrine to legislative and executive officials equally, without indicating that legislative privileges or immunities bear on *Morgan*'s applicability.  *See Moriah*, 72 F. Supp. 3d at 440 n.16 ("Because I find that the deposition [against the former U.S. House Majority Leader] may be quashed under the exceptional circumstances doctrine, I need not determine whether the Speech or Debate Clause also bars his testimony."); *Blankenship*, 2020 WL 7234270, at *6–8; *McNamee*, 2012 WL 1665873, at *1–2; *Feldman*, 2010 WL 383154, at *1–2.

The United States also argues that the Fifth Circuit's unpublished opinion in *In re Bryant* indicates that the *Morgan* doctrine does not apply to high-ranking legislative officials.  U.S. Resp. at 5.  In *Bryant*, one of the plaintiffs moved to compel the Mississippi Governor's Chief of

Staff to appear for a deposition. 745 F. App'x at 218. The magistrate judge allowed the deposition to go forward with certain limitations not relevant here. *Id.* at 218–19. In so doing, the magistrate judge rejected the Governor's argument that the *Morgan* doctrine barred the deposition. *Id.* at 218.

The Governor asked the Fifth Circuit to issue a writ of mandamus blocking the deposition. *Id.* at 219. The Fifth Circuit denied the writ, but directed the magistrate judge to evaluate several considerations before allowing the deposition to proceed. *Id.* at 220–22 ("There are several important aspects of [the *Morgan*] analysis that the magistrate judge failed to fully consider."). As relevant here, the Fifth Circuit stated that "the magistrate judge should explicitly consider" whether certain legislators could serve as "alternative sources" for the information the plaintiff sought, thereby obviating the need to depose the Chief of Staff. *Id.* at 221–22.

The United States suggests that if the *Morgan* doctrine applied to legislative and executive officials alike, the *Bryant* court would not have directed the magistrate judge to consider whether the legislators were "alternate sources," since *Morgan* would have constrained the plaintiff from deposing the legislators too. U.S. Resp. at 5. Recall, however, that *Morgan* does not *categorically* bar litigants from deposing high-ranking government officials; it merely requires the litigant to show "*exceptional circumstances*" before doing so. *See, e.g.*, *FFRF*, 2017 WL 4582804, at *11 (determining that litigant "carried its burden of demonstrating exceptional circumstances . . . meriting the opportunity to depose" the Governor of Texas). The fact that the Fifth Circuit directed the magistrate judge to consider *whether* the legislators in *Bryant* could serve as "alternate sources" for the desired information does not imply that high-ranking legislators are *always* subject to depositions as the United States seems to suggest; it just means that courts need to evaluate the factual circumstances before allowing such depositions to

- 6 -

proceed. (Indeed, when the Magistrate Judge ultimately assessed whether the plaintiff could depose the legislators in *Bryant*, it answered that question "maybe, maybe not." *Jackson Mun. Airport Auth. v. Bryant*, No. 3:16-cv-00246, ECF No. 392, at 3–5 (Oct. 10, 2019)). Thus, *Bryant* is perfectly consistent with the conclusion we reach today: When a litigant seeks to depose a high-ranking legislative official, the court must examine the facts to determine whether "exceptional circumstances" justify that deposition.

### 3.     The United States' Request to Hold the Motion in Abeyance

The United States maintains that if "this Court determine[s] that the *Morgan* Doctrine does apply to the Speaker," the Court should hold the Speaker's Motion to Quash "in abeyance for further development of the factual record." U.S. Resp. at 8. The United States explains that it intends to depose two of the Speaker's aides on July 6 and 7, and that those depositions may render Speaker Phelan's deposition unnecessary—or, alternatively, uncover evidence of exceptional circumstances that justify deposing the Speaker. *Id.* The United States has also filed a pending motion enforce certain third-party subpoenas *duces tecum*. ECF No. 351. The United States predicts that, if the Court ultimately grants that motion, the documents the United States obtains may obviate or magnify the need to depose the Speaker. *See* U.S. Resp. at 8. The United States thus offers to submit a filing by July 15, 2022 that either (1) explains how any new evidence it obtains between now and then satisfies *Morgan*'s exceptional circumstances requirement or (2) announces that the United States no longer seeks to depose the Speaker. *Id.* at 9.

The Speaker does not object to holding his Motion to Quash in abeyance subject to the condition that, "if the Speaker is ultimately ordered to be deposed for some length of time, the subpoena should be modified so that the Speaker's deposition would not occur until a week has

passed from any such Court order, or later, thereby giving the Speaker an appropriate amount of time to adjust his schedule and prepare."  Reply, ECF No. 378, at 6.

The Court finds both the United States' request to hold the motion in abeyance and the Speaker's proposed condition reasonable.  The Court thus **HOLDS** the Motion **IN ABEYANCE** as to Speaker Phelan.  The Court further **ORDERS** the United States to file one of the following two documents by **July 15, 2022**:

> (1)   A notice that the Plaintiffs no longer seek to depose Speaker Phelan; or
>
> (2)   A supplemental response to Speaker Phelan's Motion to Quash setting forth the circumstances that, in the United States' view, are sufficiently exceptional to justify deposing the Speaker.

If the United States chooses Option (2), Speaker Phelan will have seven days from the date the United States files its supplemental response to file a supplemental reply.  If the Court ultimately orders Speaker Phelan to appear for a deposition, that deposition may not occur fewer than seven days after the Court issues its order.

## II.   GENERAL COUNSEL CARDWELL

Counsel have met and conferred regarding the deposition subpoena against General Counsel Cardwell.  Reply at 7.  The parties have agreed to hold the Motion to Quash in abeyance as to General Counsel Cardwell while the parties conduct further discovery.  *Id.*  The parties have further agreed to "supplement the motion with relevant deposition testimony about the nature of Ms. Cardwell's role no later than July 11."  *Id.*

The Court will honor the parties' agreement and **HOLD** the Motion **IN ABEYANCE** as to General Counsel Cardwell.  The Court **ORDERS** MALC to file one of the following two documents by **July 11, 2022**:

(1)     A notice that MALC no longer seeks to depose General Counsel Cardwell; or

(2)     A supplemental response to General Counsel Cardwell's Motion to Quash explaining why MALC believes the new discovery materials further support deposing the General Counsel.

The Court **ALLOWS** General Counsel Cardwell to file a supplemental reply by **July 11, 2022** arguing that the new discovery materials do not support deposing the General Counsel.  If MALC ultimately decides that General Counsel Cardwell's deposition is unnecessary, the Court **ORDERS** MALC to give General Counsel Cardwell sufficient notice of MALC's decision so that General Counsel Cardwell need not waste effort drafting an unnecessary supplemental reply.

### III.     PARLIAMENTARIAN CARTER

MALC seeks to depose the Parliamentarian of the Texas House of Representatives to determine whether the legislature "depart[ed] from ordinary legislative procedures" when creating the redistricting plans at issue here—and, if so, whether Texas legislators specifically instructed the Parliamentarian to deviate from those procedures.  MALC Resp. at 9–10.

Parliamentarian Carter argues that requiring her to sit for a deposition would be unduly burdensome because information about the House's procedures and whether the Legislature departed from them is already available in the public record.  Mot. at 21; Reply at 9. Parliamentarian Carter further maintains that she cannot answer questions about her conversations with legislators without divulging privileged and highly confidential information. Mot. at 21–24; Reply at 10–11.

As was true when three Members of the Texas Legislature asked us to quash certain deposition subpoenas on state legislative privilege grounds, *see* ECF Nos. 259 & 279, the Court is poorly positioned to assess the parties' respective arguments about the Parliamentarian's proposed deposition because the Court has no deposition questions in front of it.  *League of*

*United Latin Am. Citizens v. Abbott*, No. 21-CV-259, 2022 WL 1570858, at *1 (W.D. Tex. May 18, 2022) ("*LULAC*").  As this Court previously explained, the state legislative privilege is "fact-and context-specific" and "depends on the [deposition] question being posed." *Id.*  Thus, the Court is unable to conclude categorically that every conceivable question that MALC could ask the Parliamentarian would either elicit nothing but privileged material or merely restate the public record, as the Parliamentarian maintains.  *Contra* Reply at 23–24.

Thus, as it did when it denied the Legislators' motions to quash, the Court **DENIES** the Parliamentarian's Motion and allows MALC to depose the Parliamentarian.  The Court **ORDERS** the parties to comply with the following procedures:

    (1)    The parties shall proceed with the deposition of Parliamentarian Carter. Parliamentarian Carter must appear and testify even if it appears likely that she will invoke legislative privilege in response to certain questions.

    (2)    Parliamentarian Carter may invoke legislative privilege in response to particular questions, but she must then answer the question in full.[4]  Her response will be subject to the privilege.

    (3)    The portions of deposition transcripts containing questions and answers subject to the privilege shall be deemed to contain confidential information and shall therefore be subject to the "Consent Confidentiality and Protective Order" at ECF No. 202.

    (4)    If a party wishes to use any portion of deposition testimony that is subject to legislative privilege, that party must seal those portions and submit them to the Court for *in camera* review, along with a motion to compel.[5]

    (5)    Any such motion to compel shall be filed by **August 1, 2022**.  Though the Court sets this deadline, it encourages the parties to file earlier, if at all possible.

---

[4] The Court thus **REJECTS** the Movants' request for "a protective order . . . which would permit legislative privilege objections that, once raised, relieve the deponent from answering particular questions eliciting that objection." *See* Mot. at 5.  The Court will apply the same procedures to the House Parliamentarian as it has applied to the Legislator deponents.

[5] The party shall file a motion to compel for the purpose of asserting why information to which Parliamentarian Carter has raised a privilege objection should be disclosed because it is not subject to the privilege, the privilege has been waived, or the privilege should not be enforced.

*See LULAC*, 2022 WL 1570858, at \*2–3.

**In adopting this approach, the Court warns the parties that any public disclosure of information to which a privilege has been asserted may result in sanctions, including the striking of pleadings.  The Court ORDERS all counsel to spare no effort to ensure that no individual—whether he or she be counsel, a court reporter, a videographer, or any other person hearing or having access to information subject to privilege—disseminates information subject to privilege to any person not permitted to handle that information or in any manner (*e.g.*, disclosure to media, posting on social media).**

The parties should not construe anything in this Order as deciding any issue of state legislative privilege.  The Court will be better positioned to make decisions regarding state legislative privilege if the issue comes more squarely before the Court—that is, if the parties present the Court with specific questions and specific invocations of state legislative privilege.

Finally, MALC originally scheduled Parliamentarian Carter's deposition for June 30, 2022.  ECF No. 341-3.  The Court administratively stayed the Parliamentarian deposition while it considered the parties' arguments and drafted this Order.  ECF No. 381.  June 30, 2022 has now passed.  Therefore, the Court **ORDERS** the parties to agree on a mutually convenient date for Parliamentarian Carter's deposition.  To give Parliamentarian Carter and the parties time to prepare for the deposition, the deposition **SHALL NOT** occur fewer than seven days after the Court issues this Order.

## IV.    CONCLUSION

The Court **DENIES** the "Motion by Texas House Speaker Dade Phelan, General Counsel to the House Margo Cardwell, and House Parliamentarian Sharon Carter to Quash Deposition Subpoenas and, Alternatively, Motion for Protective Order" (ECF No. 341) **IN PART**.  MALC

**MAY DEPOSE** House Parliamentarian Sharon Carter in accordance with the procedures outlined in **Section III** of this Order.

The Court **HOLDS** the remainder of the Motion **IN ABEYANCE** as to the deposition subpoenas against Texas House Speaker Dade Phelan and General Counsel to the House Margo Cardwell.  The parties shall **COMPLY** with the requirements set forth in **Sections I and II** of this Order.

The Court directs the Clerk to keep the Motion **PENDING ON THE DOCKET** to that limited extent.

The Court **MODIFIES** its "Order Granting Administrative Stay of Subpoenas" (ECF No. 381) to the extent it is inconsistent with this Order.  In all other respects, the Administrative Stay Order **REMAINS IN EFFECT**.

**So ORDERED and SIGNED this 6th day of July 2022.**

_____
**DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE**

*And on behalf of:*

**Jerry E. Smith**                                                  **Jeffrey V. Brown**
**United States Circuit Judge**          *-and-*          **United States District Judge**
**U.S. Court of Appeals, Fifth Circuit**                **Southern District of Texas**