UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, et al.,<br><br>            Plaintiffs<br><br>    v.<br><br>GREG ABBOTT, et al.,<br><br>            Defendants. | Civil Action<br><br>Lead Case No.:<br>    3:21-CV-00259-DCG-JES-JVB |
| ROSALINDA RAMOS ABUABARA, et al.,<br><br>            Plaintiffs<br><br>    v.<br><br>JOHN SCOTT, et al.,<br><br>            Defendants. | Consolidated Case No.:<br>    1:21-CV-00965-RP-JES-JVB |

**ABUABARA AND LULAC PLAINTIFFS' MOTION TO COMPEL
DEFENDANT JOHN SCOTT TO PRODUCE DOCUMENTS**

Plaintiffs Rosalinda Ramos Abuabara et al. (the "Abuabara Plaintiffs") and Plaintiffs League of United Latin American Citizens, et al. (the "LULAC Plaintiffs"), by and through their undersigned counsel, respectfully move this Court for an order compelling Defendant John Scott to produce documents responsive to Plaintiffs' requests for the production of documents, under Federal Rule of Civil Procedure 37. Defendants have indicated that they oppose this motion.

**INTRODUCTION**

After months of negotiations over an appropriate set of comprehensive search terms for identifying responsive documents from the Secretary of State's office in these eight consolidated

lawsuits, Defendants abruptly refused to even review more than 2,500 such documents in total, contending that any broader search would be "unduly burdensome." Implicitly acknowledging that the Secretary of State's office has far more than 2,500 responsive documents, Defendants did not even attempt to propose a set of search terms narrow enough to bring the hit count so low. Rather, they proposed to use a sampling methodology under which they would review, and potentially produce, only a "random sample" of less than 5% of the approximately 60,000 documents that hit on Plaintiffs' most recent proposed search terms. The remaining 57,000-plus documents that hit Plaintiffs' search terms would never be reviewed or produced at all.

There is no justification for this extraordinary approach. The Secretary of State is Texas's chief election officer, and his office very likely has a variety of documents highly relevant to this case, including documents relating to racial voting patterns and voting discrimination. Defendants have refused to indicate whether there are particular search strings that, in their estimation, are returning irrelevant documents. Instead, Defendants have simply said that the "overall hit count" from Plaintiffs' proposed terms—a total of less than 60,000 documents under Plaintiffs' last proposal—is too high. As a result, Defendants have produced only 84 documents from the Secretary of State's office to Plaintiffs. The Court should order Defendants to review the documents identified in Plaintiffs' most recent proposal, attached as **Exhibit A,** and to produce responsive, non-privileged documents, and to provide a privilege log for any documents that are withheld.

## BACKGROUND

On March 5, 2022, LULAC Plaintiffs served on Scott their first set of requests for the production of documents, and amended those requests on March 7, 2022. **Exhibits B, C**. On April 4, 2022, Scott served his responses, raising several threshold and definitional objections to many

of LULAC Plaintiffs' document requests. **Exhibit D**. Scott also served 84 documents on LULAC Plaintiffs that same day. On April 26, 2022, LULAC Plaintiffs served on Defendants a letter regarding, among other things, Scott's objections, and LULAC Plaintiffs and Defendants met and conferred on April 28, 2022 regarding the issues identified in that letter. *See* **Exhibit E**.

The Abuabara Plaintiffs served their first set of requests for the production of documents on March 17, **Exhibit F**, and Defendants served their responses on April 18, **Exhibit G**. Defendants' responses raised several threshold and definitional objections to many of the Abuabara Plaintiffs' document requests, but Defendants agreed to "meet and confer concerning both custodians and reasonable search terms" in response to many requests. *E.g., id.* at 8. The Abuabara Plaintiffs and Defendants conferred on April 22, and Defendants agreed to reexamine many of their threshold objections. *See* **Exhibit H**.

On May 3, the Abuabara Plaintiffs served their second set of requests for the production of documents, which were identical to the first except that they added requests for materials relevant to Texas House redistricting along with Congressional redistricting, because the Abuabara Plaintiffs had since amended their complaint to include claims relating to the Texas House. **Exhibit I**. On June 9, Defendants responded to the Abuabara Plaintiffs' second set of requests for the production of documents and provided supplemental responses to the first set, addressing some of the remaining threshold issues the parties had discussed. **Exhibit J**.

Meanwhile, the Abuabara Plaintiffs attempted to reach agreement with Defendants on search terms for the Secretary of State's documents. The Abuabara Plaintiffs sent a set of proposed search terms on May 13 on behalf of all private plaintiffs. **Exhibit K**. Defendants objected that they were too broad and emphasized in particular that "the 'Other' category appears to be garnering the most hits." **Exhibit L**. They also objected that the United States would also have to agree to

any terms. *Id.* On June 9, again on behalf of all private plaintiffs, the Abuabara Plaintiffs—working blind, as they cannot see what documents are hitting which terms—attempted to narrow the search terms in the "Other" category and indicated that the United States would also accept the proposed terms. **Exhibit M**.

Nonetheless, Defendants again objected that the terms were too broad, and for the first time made clear that they objected to *all* of the terms, not just the "Other" category. **Exhibit N**. The Abuabara Plaintiffs requested a meet and confer to discuss which of the other terms (besides the "Other" category) Defendants believed were overbroad. **Exhibit O**. Defendants ignored that request. The Abuabara Plaintiffs then agreed to substantially narrow the "Other" category and asked which of the remaining specific terms Defendants objected to. **Exhibit P**. Defendants refused to provide that information, proposing instead to "search a random sample of 125 documents for each of the four search groups, for a total of 500 documents" as a full discharge of the Secretary of State's discovery obligations. **Exhibit Q**. Over the next two weeks, Defendants then refused multiple requests to provide particularized objections, explaining only that their "objection goes more to the overall hit count than it does to any one particular string" and that they "find the strings that yield the most hit counts the most objectionable." **Exhibit R**. Finally, in response to Plaintiffs' conferral over this Motion, Defendants provided a revised proposal, in which they increased their offer so that they would review 2,500 documents instead of 500 documents. **Exhibit S**. Defendants did not attempt to craft search terms that produce so few hits. *Id.* Rather, they still proposed to use a sampling methodology, under which less than 5% of documents that hit Plaintiffs' search terms will be reviewed for potential production.[1] As a result,

---

[1] Defendants proposed to draw the 2,500 document sample either from the approximately 60,000 documents (including family members) that hit on Plaintiffs' most-recent proposed search terms

4

after two months of fruitless negotiation, and with the discovery deadline approaching, the Abuabara Plaintiffs now turn to this Court for an order compelling production of these highly relevant documents.[2]

## ARGUMENT

### A. Defendants' refusal to review more than 2,500 documents is unreasonable.

After months of negotiations over search terms, Defendants abruptly changed course and insisted that they would review no more than 2,500 documents from the Secretary of State's office for potential production in response to the Abuabara Plaintiffs' or LULAC Plaintiffs' (or any other plaintiffs') requests. There is no basis for this refusal. And Defendants' stonewalling in negotiating for months before suddenly deciding that they would review only a relative handful of documents prejudiced Plaintiffs: had Plaintiffs known that was Defendants' position, they would have moved to compel months ago.

Rules 26 and 34 require parties to produce documents in response to document requests so long as the requested material is "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In important litigation like these cases, parties often must review tens or hundreds of thousands of potentially relevant documents for production. *See, e.g.*, *North Dakota v. United States*, No. 1:19-CV-150, 2021 WL 6278456 (D.N.D. Mar. 24, 2021) (granting motion to compel documents from United States even

---

or from a narrower search with 34,122 hits (including family members) that restricted the date ranges for some search terms, narrowed the custodians, and made a few changes to the terms. As explained below, Defendants' narrower search unduly limits the relevant date range for some terms, and removes custodians and important search strings without adequate basis.

[2] Depending on what the documents say and when the Abuabara Plaintiffs receive them, it is possible that the Abuabara Plaintiffs will also need to seek leave to conduct or reopen depositions out-of-time to address materials revealed in the documents at issue in this Motion. But no such dispute is yet ripe, and the Court need not address it now.

though it required the production of "documents expected to number in the tens of thousands and to comprise hundreds of thousands, if not millions, of pages"). Plaintiffs have worked hard to narrow their proposed search terms, with no real cooperation from Defendants, who refused to provide counterproposals until just this week, and who have responded to each of Plaintiffs' proposals with the same blunt objection: too broad.

Defendants' objection to providing meaningful discovery from the Secretary of State's office is unfounded. The Secretary of State is the chief election officer for the State of Texas, and his office is likely to possess documents relating to elections that are relevant to Plaintiffs' claims, including information about racial voting patterns in Texas and complaints about voting-related discrimination and racial appeals in politics. *See generally Thornburg v. Gingles*, 478 U.S. 30, 36–37 (1986); *see also Gilby v. Hughs*, 471 F. Supp. 3d 763, 766 (W.D. Tex. 2020) (concluding that documents from Secretary of State's office were relevant to voting rights case and granting motion to compel production of those documents). Moreover, Plaintiffs do not know the extent to which the Secretary of State's office was consulted by or provided information to the Legislature as part of the redistricting process. To the extent documents relating to such consultations exist—and Defendants have not denied that they do—they, too, would be relevant to Plaintiffs' claims.

According to Defendants' most recent hit report, Plaintiffs' current set of search terms hits on approximately 60,000 documents in the Secretary of State's office.[3] **Exhibit A**. It is Plaintiffs' understanding that this number does not reflect the use of software to consolidate separate emails into a single thread, a standard technique in discovery that can *substantially* reduce the number of documents that must be reviewed. Thus, Defendants would ultimately need to review fewer than

---

[3] This number includes "families"—that is, if an email message contains a search term, the number includes both the email message and any attachments to it, and vice versa.

60,000 documents. Regardless, Defendants have articulated no particularized burden from reviewing these documents and have refused to identify any particular search terms that they believe hit on irrelevant documents, choosing instead to stonewall discovery regarding the Secretary of State's office. This is flatly inappropriate. *See, e.g.*, *Tsanacas v. Amazon.com, Inc.*, No. 4:17-CV-00306, 2018 WL 324447, at *2 (E.D. Tex. Jan. 8, 2018) ("The party resisting discovery 'must show specifically . . . how each [request] is not relevant or how each question is overly broad, burdensome or oppressive.'" (alterations in original) (quoting *McLeod, Alexander, Power & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)); *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 575 (D. Kan. 2009) ("A party asserting undue burden must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request."). Plaintiffs submit that the Court should order Defendants to review documents based on Plaintiffs' most recent proposed set of search terms, and to produce or provide a privilege log for any responsive documents they identify.

### B. Defendants waived any other objection that could justify their refusal to search for and produce responsive documents.

In refusing to review more than 2,500 documents, Defendants have argued that documents from the Secretary of State's office are of limited relevance to this case. But Defendants have waived that argument. While they asserted a slew of objections in response to Plaintiffs' discovery requests, they also agreed that they were "prepared to meet and confer concerning both custodians and reasonable search terms" in response to the requests Ex. F at 9. Nowhere in Defendants' responses and objections did they suggest that they would refuse to review more than 2,500 documents. *See id.* Had they done so, Plaintiffs would have immediately sought relief from this Court, rather than spending months in a futile effort to negotiate reasonable search terms.

7

Moreover, Defendants have made clear that their objection is *not* that any particular search string seeks irrelevant documents. In response to repeated requests to identify such search strings, Defendants responded that their "objection goes more to the overall hit count than it does to any one particular string." Ex. N. They therefore should not be heard to complain about particular strings now, when they have refused to confer over such strings, to articulate any particularized objection that any string is overbroad in itself, or to propose any narrower sets of terms.

### C. Defendants' eleventh-hour proposed changes to the search parameters are inappropriate.

In response to Plaintiffs' conferral about this motion, Defendants proposed changes to Plaintiffs' search parameters that would reduce the total hit count, including families, to 34,122 documents. Ex. S. That hit count was still far too high for Defendants, who offered only to review a 2,500-document random sample drawn from that narrowed set (7.3%). *Id.* The remaining 31,622 documents hitting even the narrowed terms would never be reviewed or produced.

As explained above, there is no justification for Defendants' insistence on using a sampling methodology under which most potentially responsive documents would never be reviewed. But even aside from sampling, Defendants' changes to the search parameters are improper.

First, Defendants' changes unduly narrow the date ranges for Plaintiffs' searches. Plaintiffs' search parameters use different date ranges for different search terms, depending on the materials sought. For materials relating to the redistricting process, Plaintiffs limited their searches to January 12, 2021 to October 19, 2021—from the start of the regular legislative session to the end of the Third Special Session in which the redistricting legislation was enacted. *See* Ex. K. But for materials relating to past voting patterns and voting discrimination, Plaintiffs' proposed date ranges go back to 2019 and 2010 respectively, to capture documents relating to prior election cycles. *Id.* Defendants' narrowed proposal restricts all searches to January 1 2021 to October 25,

8

2021, and thus excludes any time period in which general elections were held, which is when documents regarding past voting patterns and voting discrimination would have been generated.

Second, Defendants' changes unjustifiably restrict the custodians whose documents will be searched. Defendants proposed to limit their review to the four custodians with the highest number of hits and to eliminate the remaining custodians. Ex. K. This was not based on any representation that, for example, the nature of the other custodians' work means they would not have responsive documents, or that their documents would be duplicative. *See id.* It was simply based on the raw hit counts. Such a limitation would leave tens of thousands of non-duplicative documents that hit on even Defendants' narrower search terms entirely unreviewed, for no better reason than that others in the Secretary of State's office had even more responsive documents.

Finally, Defendants' changes also made some alterations to Plaintiffs' proposed search terms. But Defendants did not indicate any basis for those alterations, nor did they provide information sufficient for Plaintiffs to determine whether the alterations had any meaningful effect on the hit counts separate from the other two changes (date ranges and custodians). And their changes deleted search terms (such as "Redistrict* OR gerrymander* OR reapportion*") that are highly likely to yield responsive documents. These changes thus do not seem to reflect a reasoned attempt to eliminate terms that were hitting irrelevant documents.

The Court should therefore order the use of Plaintiffs' final proposed parameters, Exhibit A, not the narrower terms that Defendants compiled at the last minute.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that the Court should order Defendants to review documents using the search terms and custodians in Exhibit A, to promptly

produce responsive non-privileged documents, and to provide a privilege log for any documents withheld on privilege grounds.

| | |
|---|---|
| Dated: July 6, 2022 | Respectfully submitted, |
| | |
| Renea Hicks | /s/ David R. Fox |
| Attorney at Law | |
| Texas Bar No. 09580400 | Abha Khanna* |
| Law Office of Max Renea Hicks | ELIAS LAW GROUP LLP |
| P.O. Box 303187 | 1700 Seventh Ave, Suite 2100 |
| Austin, Texas 78703-0504 | Seattle, WA 98101 |
| (512) 480-8231 | Telephone: (206) 656-0177 |
| rhicks@renea-hicks.com | akhanna@elias.law |
| | |
| | David R. Fox* |
| Kevin J. Hamilton* | Harleen Gambhir* |
| PERKINS COIE LLP | Richard A. Medina* |
| 1201 Third Avenue | ELIAS LAW GROUP LLP |
| Suite 4900 | 10 G Street NE, Suite 600 |
| Seattle, WA 98101-3099 | Washington, D.C. 20002 |
| Telephone: (206) 359-8000 | Telephone: (202) 968-4490 |
| khamilton@perkinscoie.com | dfox@elias.law |
| | hgambhir@elias.law |
| | rmedina@elias.law |

*Counsel for the Abuabara Plaintiffs*

s/ Nina Perales
Nina Perales
Samantha Serna
Fátima Menendez
Kenneth Parreno*
Mexican American Legal Defense and Educational
Fund (MALDEF)
110 Broadway Street, Suite 300
San Antonio, TX 78205
(210) 224-5476
Fax: (210) 224-5382

*Counsel for LULAC Plaintiffs*

*Admitted pro hac vice

## CERTIFICATE OF CONFERENCE

Counsel for the Plaintiffs conferred with counsel for the Defendants in a good-faith attempt to resolve the subject matter of this Motion, and counsel for the Defendants indicated that they oppose the Motion.

*/s/ David R. Fox*

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on July 6, 2022, and that all counsel of record were served by CM/ECF.

*/s/ David R. Fox*