## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, §<br><br>*Plaintiffs*, §<br><br>EDDIE BERNICE JOHNSON, *et al.*, §<br><br>*Plaintiff-Intervenors*, §<br><br>v. §<br><br>GREG ABBOTT, *et al.*, §<br><br>*Defendants*. § | | Case No. 3:21-cv-00259<br>[Lead Case] |
| ROSALINA RAMOS ABUABARA, *et al.*, §<br><br>*Plaintiffs*, §<br><br>v. §<br><br>JOHN SCOTT, *et al*, §<br><br>*Defendants*. § | | Case No. 1:21-cv-965<br>[Consolidated Case] |
| TEXAS STATE CONFERENCE OF THE NAACP, §<br><br>*Plaintiff*, §<br><br>v. §<br><br>GREG ABBOTT, *et al.*, §<br><br>*Defendants*. § | | Case No. 1:21-cv-1006<br>[Consolidated Case] |

## OPPOSITION TO MOTION TO COMPEL

**TABLE OF CONTENTS**

Introduction..........................................................................................................................................1

Background..........................................................................................................................................2

Argument .............................................................................................................................................4

    I.    Documents and Communications Regarding a Proclamation Calling a Special Session........4

        A.   These Documents Are Protected by the Attorney Client and Work Product Privileges4

        B.   These Documents Are also Protected by the Deliberative-Process Privilege..................6

        C.   In the Alternative, these Documents Are Protected by the Legislative Privilege..........10

    II.   Communications Regarding a Letter to the Census Bureau ...................................................12

    III.  Dropbox Documents.................................................................................................................12

Conclusion ...........................................................................................................................................12

Certificate of Service............................................................................................................................14

## INTRODUCTION

The LULAC, NAACP, and Abuabara plaintiffs move to compel the production of thirty-three documents in the possession of the Office of the Governor. ECF 380. As described in the privilege log produced by OOG, the motion should be denied because each of the documents at issue are protected by one or more of the privileges asserted.

The vast majority of these documents (23/33) are (i) drafts of the Governor's proclamation calling the third special session of the 87th Legislature, all of which were prepared by OOG attorneys and reflect the provision of legal advice to OOG staff, or (ii) emails between OOG attorneys and OOG staff attaching and discussing those drafts. These drafts and emails were prepared for the purpose of providing the OOG with legal advice on the Governor calling the third special session. As such, they are plainly subject to the attorney-client privilege.

These drafts and emails are also subject to the deliberative-process privilege because they were prepared in furtherance of the Governor's consideration of whether, when, and how to exercise the power to call a third special session. *See* Tex. Const. Article IV, § 8. The deliberative-process privilege, "a form of executive privilege," operates to "shield[] from disclosure 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *United States Fish & Wildlife Service v. Sierra Club, Inc.*, 141 S. Ct. 777, 785–86 (2021) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)). The focus of the protection is "predecisional, deliberative documents." *Id.* The drafts and emails are protected by the deliberative-process privilege because they constitute internal OOG deliberations about whether, when, and how to call a third special session.

Alternatively, documents relating to the convening of the legislature are protected by legislative privilege. Although Article IV, Section 1 of the Texas Constitution places the Governor in the executive department, other provisions give legislative prerogatives, such as the veto power. *See Jessen Assocs.,*

*Inc. v. Bullock*, 531 S.W.2d 593, 598 (Tex. 1975) (The governor's "veto power is a legislative function and not an executive function."). Other courts have understood the power to call special sessions of the legislature as a legislative power that supports the assertion of the legislative privilege. *Texas v. Holder*, No. 1:12-cv-128, 2012 WL 13070113, at *1 (D.D.C. June 7, 2012); *see also In re Turner*, 627 S.W.3d 654, 659–60 (Tex. 2021) (per curiam) (Legislative functions, like "[t]he powers to veto legislation and call special legislative sessions belong constitutionally to the Governor, not the Legislature."). Indeed, federal courts regularly recognize that state governors are entitled to the legislative privilege for actions done pursuant to their legislative powers. *See League of Women Voters of Florida, Inc. v. Lee*, 340 F.R.D. 446, 454 (N.D. Fla. 2021) (explaining that the legislative privilege "cover[s] 'both governors' and legislators' actions in the proposal, formulation, and passage of legislation.'") (quoting *In re Hubbard*, 803 F.3d 1298, 1308 (11th Cir. 2015)). As such, to the extent that convening the legislature is a legislative function, documents regarding the Governor's consideration and calling of the third special session are subject to the legislative privilege.

In addition, one withheld document is an internal email between OOG staff discussing the publication of a letter to the United States Census Bureau. The letter—which was produced—inquired of the Census Bureau when the Census data will be released. The withheld email is a predecisional, deliberative communication regarding the sending of the letter. It is therefore subject to the deliberative process-privilege.

## BACKGROUND

The NAACP, LULAC, and Abuabara plaintiffs served their first set of document requests on the Governor on March 3rd, March 5th, and March 17th, respectively. The Governor timely responded to each request, producing documents bates labelled STATE-REDISTRICTING_000001 to STATE-REDISTRICTING_000669, and serving responses and objections. On April 28th, the parties met to confer on the responses and objections, at which time Defendants explained that a forthcoming

privilege would likely more fulsomely address plaintiffs' concerns.

Accordingly, and consistent with the thirty-day deadline set forth by the Court's ESI order, *see* ECF 203, the Governor served his initial privilege log on the NAACP and LULAC plaintiffs on May 4th (and on May 18th for Abuabara). The parties met to confer on that privilege log on May 12th and May 19th. OOG agreed to supplement its privilege log in response to plaintiffs' concerns. It did so, providing a supplemental privilege on May 25th, providing substantial additional information for the privilege entries. Plaintiffs complain about the level of detail in the supplemental privilege log, but that complaint is undercut by plaintiffs' own privilege logs, which contain far less detail. *See* Ex. A (MALC privilege log); Ex. B (Representative Martinez Fischer privilege log); Ex. C (LULAC privilege log).

Delaying nearly a month, plaintiffs emailed counsel for the Governor on June 22nd, informing counsel that plaintiffs "intend to file a joint motion to compel tomorrow at 5pm CT." Ex. D (email). Counsel for the Governor attempted to limit the scope of the dispute, explaining that the twenty-three documents relating to the draft proclamation were (i) plainly privileged, and (ii) irrelevant to plaintiffs' claims. *See id.* Plaintiffs refused to narrow their motion, rejecting the assertions of attorney-client privilege as "boilerplate." *Id.* But LULAC's own privilege assertions are substantively similar to the Governor's. *Compare* ECF 380-14 (OOG privilege log) ("Document related to draft proclamation of special session. Includes legal advice from OOG attorneys on the substance, legal compliance, and strategy of the subject of the document."), *with* Ex. D (LULAC privilege log) ("Confidential email to Texas Latino Redistricting Task Force regarding legislative developments and upcoming redistricting communications, including attorney analysis, mental impressions, strategy and/or legal advice.").

In any event, the parties were unfortunately unable to limit the scope of their dispute. Plaintiffs filed their motion to compel on June 27th, which was docketed by the Clerk as ECF 380 later the same day. Upon further review, OOG has determined to withdraw privilege assertions over a number of

these documents.[1] These documents are being produced shortly after the filing of this brief. The proceeding portion of this brief addresses the remaining documents—all internal communications between OOG counsel and staff—over which OOG continues to withhold based on various privileges. Defendants are happy to make these documents available to the Court for *in camera* review should it be found necessary or helpful.

ARGUMENT

## I. Documents and Communications Regarding a Proclamation Calling a Special Session

As introduced above, twenty-three of the thirty-three documents plaintiffs seek are either drafts of the proclamation calling the third special session or emails attaching and discussing those drafts.[2] Three privileges apply to these documents: the attorney-client privilege, attorney work product, and either the deliberative-process or legislative privilege.

### A. These Documents Are Protected by the Attorney Client and Work Product Privileges

The drafts and emails are plainly subject to the attorney-client privilege. To establish that this privilege applies, the proponent must establish: "(1) that he made a confidential communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding." *EEOC v. BDO USA, LLP*, 876 F.3d 690, 695 (5th Cir. 2017) (quotation omitted). In addition, a "draft document is protected under the attorney-client privilege if 'the draft itself contains protected confidential communications from the client or the attorney.'" *Cause of Action Inst. v. United States DOJ*, 330 F. Supp. 3d 336, 350 (D.D.C. 2018) ("A) (quoting *Loftin v. Bande*, 258 F.R.D. 31, 35 (D.D.C. 2009); *see also SEC v. Beacon Hill Asset Mgmt.*, 231

---

[1]   These documents are as follows: DOC_0356598, DOC_0356600, DOC_0356606, DOC_0356560, DOC_0356561, DOC_0356586, DOC_0356587, and DOC_0356588. In addition, OOG has determined that DOC_0356599 may be produced with internal annotations redacted.

[2]   These documents are as follows: DOC_0356555, DOC_0356556, DOC_0356557, DOC_0356571, DOC_0356578, DOC_03565979, DOC_0356580, DOC_0356581, DOC_0356582, DOC_0356583, DOC_0356584, DOC_0356585, DOC_0356590, DOC_0356591, DOC_0356592, DOC_0356593, DOC_0356594, DOC_0356595, DOC_0356596, DOC_0356597, DOC_0356604, DOC_0356609, and DOC_0356610.

F.R.D. 134, 145 (S.D.N.Y. 2004) ("Drafts of documents prepared by an attorney for subsequent trans-

mission to third parties" are privileged where "the draft document contains confidential information

communicated by the client to the attorney that is maintained in confidence.").

The attorney client privilege applies to the drafts because they contain confidential information

communicated to the client (OOG) by attorneys. Indeed, these drafts reflect notes, edits, and annota-

tions from OOG attorneys that relate to the legal issues surrounding the calling of the third special

session. The privilege also applies to the email communications between OOG attorneys and staff

because they are confidential communications by OOG attorneys made the purpose of providing legal

advice regarding the calling of the third special session. The Court need go no further to determine

that the attorney client privilege applies.

Plaintiffs hardly dispute that the drafts and emails are privileged. Their main defense is to argue

that the privilege entries are "conclusory." Mot. at 20. That is simply wrong. The entries clearly com-

municate that the withheld documents are drafts of a proclamation calling a special session, and emails

discussing those drafts, both of which were prepared or sent for the purpose of providing legal advice

on issuing the call. In addition, as noted above, plaintiffs can hardly claim an inability to understand

these privilege assertions when their own attorney-client privilege assertions are substantially similar.

*Compare* ECF 380-14 (OOG privilege log), *with* Ex. D (LULAC privilege log).

Plaintiffs also contend that the attorney-client privilege does not apply because part of the

documents and communications concern "advice on political, strategic or policy issues." Mot. at 21

(quoting *Baldus v. Brennan*, No. 2:11-cv-562, 2011 WL 6385645, at *3 (E.D. Wis. Dec. 20, 2011). To be

sure, *part* of the purpose for these documents' creation was to deliberate and consider whether, when,

and how to call a third special session. But *Baldus* held only that the attorney-client protection was

unavailable if the *sole* purpose of the document was to communicate political advice. *See* 2011 WL

6385645, at *3. The privilege applies where, as here, a "primary purpose" of the communication is to

provide legal advice, *EEOC*, 876 F.3d at 695. As reflected in the privilege log, the communications reflect the provision of legal advice from OOG attorneys to staff. Moreover, as explained below, the fact that these drafts and emails were prepared in part to aid OOG policy deliberations means that they are also protected by the deliberative-process (or legislative) privilege.

The work product privilege also applies to these documents. Plaintiffs suggest that the work product doctrine is categorically inapplicable to such draft documents, Mot. 23–24, but documents relating to the legal compliance of a draft proclamation are documents created as part of assessing litigation risk. They are not categorically excluded from the work product protection. *See United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981) (asking whether "the primary motivating purpose behind the creation of the document was to aid in possible future litigation"). Accepting plaintiffs' arguments—that legal work related to draft proclamations is neither privileged nor protected as work product—would create perverse incentives for governmental officials. *See Upjohn Co. v. United States*, 449 U.S. 383, 392 (1981). It would make no sense to deny the privilege for documents created by attorneys for the purpose of ensuring the legal compliance of a future expected action. But ultimately, the Court need not resolve the parties' dispute about work product for the withheld documents, given the applicable attorney-client and legislative (or deliberative process) privileges justifying the withholding of the same documents.

### B.   These Documents Are also Protected by the Deliberative-Process Privilege

The drafts and emails are protected for the additional reason that they are subject to the deliberative-process privilege. That privilege protects "predecisional, deliberative" materials. *U.S. Fish & Wildlife Serv.*, 141 S. Ct. at 785. "Documents are 'predecisional' if they were generated before the agency's final decision on the matter, and they are 'deliberative' if they were prepared to help the agency formulate its position." *Id.* "In particular, it is well-settled that '[d]raft documents, by their very nature, are typically predecisional and deliberative. They reflect only the tentative view of their authors; views

that might be altered or rejected upon further deliberation either by their authors or by superiors.'" *MacNamara v. City of New York*, 249 F.R.D. 70, 78 (S.D.N.Y. 2008) (quoting *Exxon Corp. v. Dept. of Energy*, 585 F. Supp. 690, 698 (D.D.C.1983)).

The proclamation drafts and emails discussing them are quintessential deliberative materials. They reveal OOG mental impressions on the reasons why to call a special session, and the manner in which a special session should be called. Further, the communications are clearly pre-decisional given that they were created prior to September 7, 2021, which was the date the Governor issued the proclamation calling the third special session. Courts regularly uphold privilege assertions as to documents and communications regarding similar executive acts. *See e.g.*, *Citizens United for City of New York v. Att'y General of New York*, 269 F. Supp. 3d 124, 165–66 (S.D.N.Y. 2017) (upholding deliberative-process privilege as to draft executive order); *Reporters Committee for Freedom of the Press v. FBI*, 3 F.4th 350, 364–65 (D.C. Cir. 2021) (upholding deliberative-process privilege as to daft executive report).

Plaintiffs do not attempt to deny that the deliberative-process privilege applies to these drafts and emails. Mot. at 15–20. Instead, they argue that the privilege can only be asserted by the "agency head." *Id.* at 17 (quoting *In re McKesson Govt. Entities Average Wholesale Price Litig.*, 264 F.R.D. 595, 601 (N.D. Cal. 2009)). This position has been almost uniformly rejected. *Moorhead v. Lane*, 125 F.R.D. 680, n.1 (C.D. Ill. 1989) ("[T]he head of the agency need not assert the privilege. It is sufficient that an agency representative do so."); *Landry v. FDIC*, 204 F.3d 1125, 1135 (D.C. Cir. 2000) ("[I]t would be counterproductive to read "head of the department" in the narrowest possible way."); *Marriot Int'l Reports, LP v. United States*, 437 F.3d 1302, 1307 (Fed. Cir. 2006) ("Delegated review by a subordinate undoubtedly results in a more thorough, more consistent, and timelier review of potentially privileged documents than personal review by the Agency head."). Indeed, the very case plaintiffs cite has been criticized as inadvertently confusing the deliberative-process privilege with the state-secrets privilege. *See Scalia v. Int'l Longshore & Warehouse Union*, 336 F.R.D. 603, 610–11 (N.D. Cal. 2020). OOG

7

representatives have expressly reviewed the documents at issue and directed counsel to assert the deliberative-process privilege. That is all that is required.

In addition, plaintiffs argue that the deliberative-process should "yield." Mot. at 19; *see also id.* at 12–15 (making same argument as to legislative privilege). They further argue that piercing the privilege is necessary in order to "shed light on . . . government misconduct." *Id.* at 19 (quoting *In re Sealed Case*, 121 F.3d 729, 738 (D.C. Cir. 1997)). The problem is that plaintiffs offer absolutely no evidence of government misconduct. They cannot meet the required showing to defeat the deliberative-process privilege. *See, e.g., American Petroleum Tankers Parent, LLC v. United States*, 952 F. Supp. 2d 252, 268 (D.D.C. 2013) ("To invoke the government-misconduct exception, the party seeking discovery must provide an adequate factual basis for believing that the requested discovery would shed light upon government misconduct."); *see also Hinckley v. United States*, 140 F.3d 277, 285 (D.C. Cir. 1998) ("The deliberative process privilege would soon be meaningless, if all someone seeking information otherwise protected under the privilege had to establish is that there was disagreement within the governmental entity at some point in the decisionmaking process").

Plaintiffs identify no particular facts that support an inference of government misconduct. In other cases, parties attempting to pierce the privilege have pointed to concrete allegations of government wrongdoing. *See, e.g., Convertino v. United States Dept. of Justice*, 674 F.Supp.2d 97, 100 (D.D.C.2009) (allegations that the Department of Justice leaked information regarding an investigation into purported prosecutorial misconduct by an Assistant United States Attorney). Plaintiffs point to nothing of the sort here. *See* Mot. at 12–15. At most, plaintiffs recognize that OOG communicated with legislative staff on two occasions: to discuss the receipt of the Census data and, relatedly, to discuss the schedule for the potential third special session. They do not identify any direct or circumstantial evidence relating to those events that suggest misconduct on OOG's behalf.

Plaintiffs also ask the Court to disregard the privilege due to "the seriousness of the litigation

and issues involved." Mot. at 14. But that exception would swallow the rule and discourage thoughtful deliberation in the executive branch. "An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all." *Upjohn*, 449 U.S. at 393. As in all cases, executive officers are entitled to consider and deliberate their official actions and policies in private; only when a party provides particular reason of unique circumstances can the privilege be set aside.

Finally, plaintiffs argue that OOG concedes the relevance of the documents by listing them on the privilege log. Mot. at 13. Not so—OOG has consistently disputed the relevance of the documents plaintiffs seek, and expressly noted that any responses to plaintiffs' document requests were made subject OOG's objections. *See, e.g.*, ECF 380-6 (OOG's objections to LULAC plaintiffs' document requests) ("A portion of the requested production is also irrelevant to Plaintiffs' claims and is thus identified individually below.") ("These responses and objections are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information or documents requested."); ECF 380-7 (similar, as to NAACP); 380-9 (similar, as to Abuabara); *see also* Ex. E (email) ("Moreover, I do not understand how these documents are at all related to the LULAC, NAACP, and Abuabara plaintiffs' claims. What is your relevance basis for seeking these documents?"). Plaintiffs have consistently asserted relevance at a high level of generality, failing to identify any specific connection between their claims and the documents sought. *See id.* (plaintiffs' email response) ("Regarding the relevance of the 23 documents you listed, given their subject matter, they pertain to the process and/or circumstances surrounding the enactment of the challenged redistricting legislation.").

\*       \*       \*

The deliberative-process privilege protects deliberative, predecisional materials pertaining to the formation of executive decisions or policies. The proclamation drafts and emails discussing those drafts clearly fall within that protection. And plaintiffs' arguments for why the privilege should yield

are unavailing. The Court should uphold the privilege and deny the motion to compel on this basis.

###    C.    In the Alternative, these Documents Are Protected by the Legislative Privilege

These drafts and emails are also subject to the legislative privilege. As explained above, calling a special session of the legislature is best understood as an executive action. But in the alternative, it may also be understood as a legislative action. Indeed, the three-judge court in *Texas v. Holder* understood the issue exactly in this way:

> The Texas Constitution grants the Governor the power to call special legislative sessions, Tex. Const. art. IV § 8(a), and to declare emergency matters to be considered early in the legislative session, Tex. Const. art. III § 5(b). In our view, both of these functions—convening the legislature and placing items at the top of its agenda—constitute "integral steps in the legislative process," that come within the scope of the legislative privilege

*Texas*, 2012 WL 13070113, at *1 (quoting *Bogan v .Scott-Harris*, 523 U.S. 44, 55 (1998)); *see also Gray v. Mills*, No. 1:21-cv-71, 2021 WL 5166157, at *3 (D. Me. Nov. 5, 2021) (The Governor of Maine's "decisions around whether and when to convene the Legislature in the face of a global pandemic are the sort of 'quintessentially legislative conduct that [the legislative privilege] doctrine protects.'").

Insofar as the legislative privilege applies to the Governor's decision to call the third special session, the privilege plainly applies to the proclamation drafts and internal OOG emails discussing the drafts. The legislative privilege has long "protect[ed] 'against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts'" and "precludes any showing of how [a legislator] acted, voted, or decided." *United States v. Helstoski*, 442 U.S. 477, 489 (1979). It generally shields those that hold the privilege and their agents from undertaken when "acting in the sphere of legitimate legislative activity." *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951); *see also Texas*, 2012 WL 13070060, at *4 (the privilege protects against inquiry into "motivations with respect to a bill (*e.g.*, why a legislator voted a particular way, why a legislator supported or opposed different amendments, why a bill sponsor included different language in various Voter-ID bills, what factual information a legislator did or did not consider in supporting or opposing a bill, etc.)." Applying

legislative privilege, courts of appeals have precluded plaintiffs from seeking discovery from legislators in redistricting and other intentional discrimination suits. *See Lee v. City of Los Angeles*, 908 F.3d 1175, 1186-88 (9th Cir. 2018). The Eleventh Circuit, for example, has explained that "[t]he privilege protects the legislative process itself, and therefore covers both governors' and legislators' actions in the proposal, formulation, and passage of legislation." *In re Hubbard*, 803 F.3d at 1308.

The documents are protected by the legislative privilege for much the same reason that they would be protected by the deliberative-process privilege. That is, they reveal OOG mental impressions as to what the Governor considered in calling a third special session, and why he did so. Furthermore, these communications reflect pre-decisional discussions as they are dated prior to the September 7, 2021 proclamation calling the special session.  Whether the act is inherently executive or legislative makes little difference. The drafts and emails directly address considerations and motivations for calling the Legislature into session. For this reason, they are protected by the legislative privilege.

In arguing that the power to convene the legislature is not legislative in nature, plaintiffs fail to mention the authorities cited above. *See* Mot. at 11–12. They also misconstrue the Texas Supreme Court's decision in *In re Turner.* The quote the Court as saying the Governor "has not exercised the Legislature's power," *Id.* at 12, but that statement referred to the Legislature's power to *pass legislation. See* 627 S.W.3d at 660. Plaintiffs offer no other explanation why this power is not legislative.

As with the deliberative-process privilege, plaintiffs argue that the legislative privilege should yield, in this instance based on the five-factor balancing test applied in *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 100–01 (S.D.N.Y. 2003). Mot. at 12–15. Moreover, they rely in large part on the stayed decision in *La Union Del Pueblo Entero v. Abbott*, No. 5:21-cv-844, 2022 WL 1667687, at *2 (W.D. Tex. May 25, 2022), *appeal docketed sub nom. LULAC v. Hughes*, No. 22-50435 (5th Cir. May 27, 2022). But as before, plaintiffs present no compelling reason why the privilege should yield, or even why they need the documents at all. As explained above, plaintiffs fail to explain what documents they seek, or why those

documents are relevant to their claims. They further fail to identify any connection between redistrict-ing and OOG besides the Governor's calling the third special session. *See* Mot. at 13. Nor should the legislative privilege be pierced, as plaintiffs suggest, simply because this is a redistricting case. *Id.* at 14. Such a ruling would conflict with the Ninth Circuit's ruling in *Lee*, 908 F.3d at 1186–88.

The proclamation drafts and the emails discussing them give direct insight into OOG's mental impressions as to whether, when, and how to call a third special session. To the extent the power to convene the legislature is a legislative function, those documents are subject to the legislative privilege. Plaintiffs' arguments for why the privilege should be disregarded lack merit. The motion to compel should be for this independent reason.

## II.   Communications Regarding a Letter to the Census Bureau

In addition, one document is an email discussing a letter than was ultimately sent from OOG and other governors' offices to the United States Census Bureau. This letter (which was produced, *see* Ex. E) recognizes that the Bureau failed to timely deliver the Census data, and inquires when it will be delivered. The withheld document, DOC_0356569, is an OOG internal email discussing that draft.

This document is subject to the deliberative-process privilege because it is a predecisional, deliberative communication made for the purpose of considering a future policy action: sending an official letter. Executive offices regularly assert this privilege of documents and communications re-lating to government letters. *See, e.g.*, *Campaign Legal Center v. U.S. DOJ*, 34 F.4th 14, 23–24 (upholding assertion of deliberative-process privilege as to documents relating to draft letter); *Canning v. U.S. Dept. of State*, 346 F. Supp. 1, 25–26 (D.D.C. 2018) (same). As such, DOC_0356569 is subject to the delib-erative-process privilege and was properly withheld.

## III.   Dropbox Documents

Finally, two documents, DOC_0356598 and DOC_0356600, are email communications from Senate staff attaching a Dropbox link. Plaintiffs contend that OOG should be made to produce all

documents available through the link, *see* Mot. at 25–26, but those documents are not in OOG's cus-tody, possession or control. OOG never accessed the Dropbox site, and so never downloaded those documents. OOG has no knowledge of the contents of those documents. Indeed, OOG is not pres-ently aware that it even has access to those documents. As such, OOG neither has actual possession of those documents nor the ability to control them. Because OOG has complied with its Rule 34 obligations, this Court should deny the plaintiffs' motion to compel on this point.

## CONCLUSION

Defendants respectfully request that the Court deny plaintiffs' motion to compel. As stated above, Defendants are happy to make these documents available to the Court for *in camera* review should it be found necessary or helpful.

Date: July 8, 2022

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Respectfully submitted.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
Tex. State Bar No. 24088531

JACK B. DISORBO
Assistant Attorney General, Special Litigation Unit
Tex. State Bar No. 24120804

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov
jack.disorbo@oag.texas.gov

COUNSEL FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on July 8, 2022, and that all counsel of record were served by CM/ECF.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN