UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **LEAGUE OF UNITED LATIN AMERICAN CITIZENS**, *et al.*, | § § § | |
| *Plaintiffs*, | § § | |
| **EDDIE BERNICE JOHNSON**, *et al.*, | § § § | **EP-21-CV-00259-DCG-JES-JVB** [**Lead Case**] |
| *Plaintiff-Intervenors*, | § § | |
| **v.** | § § | **&** |
| **GREG ABBOTT**, *in his official capacity as Governor of the State of Texas*, *et al.*, | § § § | **All Consolidated Cases** |
| *Defendants*. | § § | |

**MEMORANDUM OPINION AND ORDER**

The Texas NAACP, Fair Maps, and LULAC Plaintiffs ("Plaintiffs") move to file certain information under seal. ECF Nos. 321 (Texas NAACP), 322 (Fair Maps), and ECF 326 (LULAC). Specifically, Plaintiffs seek leave to identify individual members of their organizations (the "Association Members") by pseudonyms in their amended complaints. Plaintiffs would then file the true names of the Association Members under seal, delivering a copy of the true names to the Court and Defendants. Plaintiffs propose identifying the Association Members for the purpose of showing that Plaintiffs have associational standing. Defendants oppose the motions for leave to file under seal. Resp., ECF No. 328.

After careful consideration of the parties' evidence and arguments, the Court GRANTS the LULAC Plaintiffs' Motion and DENIES the Texas NAACP and Fair Maps Plaintiffs' motions. The Court grants the Texas NAACP and Fair Maps Plaintiffs leave to comply with the LULAC Plaintiffs' approach.

## I.    BACKGROUND

This Court previously dismissed certain claims brought by the Texas NAACP and Fair Maps for failure to sufficiently allege associational standing.  *LULAC v. Abbott*, No. 3:21-CV-259-DCG-JES-JVB, 2022 WL 1631301, at *5–9 (W.D. Tex. May 23, 2022).  In dismissing claims on this ground, we reasoned that those plaintiffs failed to identify specific members that would have standing to sue in their own right—a prerequisite of associational standing.  *Id.* at *4–9.  We granted plaintiffs leave to cure these (and other) deficiencies the Court identified.  *Id.* at *29.

The Texas NAACP and Fair Maps Plaintiffs now move to file amended complaints.  ECF Nos. 321, 322.  The LULAC Plaintiffs already filed an amended complaint, ECF No. 338, in response to the Court's order resolving motions to dismiss other plaintiffs' complaints, *LULAC*, 2022 WL 1631301.  As part of their amended complaints, each Plaintiff names members of plaintiff-organizations—the Association Members—that they assert would have standing to sue in their own right.  LULAC Third Am. Compl. ¶¶ 14–22; Texas NAACP First Am. Compl. ¶¶ 23–156; Fair Maps First Am. Compl. ¶¶ 12, 14.

Each Plaintiff takes a slightly different approach to sealing the Association Members' names.  The Texas NAACP Plaintiffs seek to file two versions of their amended complaint: (1) a sealed version with the members' true names and (2) a public version with those names redacted.  ECF No. 321 at 2.  The Fair Maps Plaintiffs ask to pseudonymously identify members of the Fair Maps Texas Action Committee, OCA-Greater Houston, and Emgage in a publicly filed complaint.  ECF No. 332.  They seek leave to file an unredacted amended complaint in which they will identify those members by their true names.  *Id.*; ECF No. 332-1.  The LULAC Plaintiffs already filed a publicly available amended complaint.  ECF No. 338.  In that publicly filed version, the LULAC Plaintiffs identify association members by pseudonyms.  *Id.* at 11–17.

To identify their members' true names, the LULAC Plaintiffs move to file a key that links the pseudonyms to the individuals' true names under seal. *Id.* at 11 n.3; ECF No. 326. Though the approaches vary, each Plaintiff asks the Court for leave to permit them to maintain the anonymity of the Association Members on the public docket.

While the Association Members would remain anonymous to the public, each Plaintiff would provide the Court with the Association Members' true names. Moreover, each Plaintiff either says explicitly, or appears to indicate, that they will provide Defendants with the Association Members' true names. ECF No. 321 at 2; ECF No. 322 at 2; ECF No. 326 at 5.

After reviewing the parties' briefing, the Court issued an order inviting Plaintiffs to further develop the record. The Court allowed Plaintiffs to submit supplemental evidence in support of their assertions that the Association Members would face credible risks of violence and intimidation if the Court ordered Plaintiffs to publicly identify the Association Members by name. Order, ECF No. 342. Plaintiffs filed supplemental evidence.[1] ECF Nos. 362 (LULAC), 366 (Texas NAACP), and 367 (Fair Maps).

For instance, the Texas NAACP provides a declaration from its general counsel who is "the recipient of information concerning threats of violence against NAACP officers and members." Decl., ECF No. 321-1 ¶ 1. The declarant describes numerous instances of threats and intimidation lodged at the president of the Texas NAACP and at the Austin branch's president. *Id.* ¶¶ 7–10. In one instance, a threatening caller informed the Austin branch president that the caller knew his address and "promis[ed] that they would find him." *Id.* ¶ 10; Decl., Ex. C., ECF No. 366-2 ¶ 9. The declarant describes the "regular[] experience" of "[m]embers and leaders" being subject to "hatred and threats," including "violent attacks." ECF

---

[1] The Court allowed Defendant to file a response addressing any additional evidence. Order, ECF No. 342, at 2. The deadline to respond was June 29, 2022. *Id.* Defendants did not file a response.

No. 321-1 ¶ 15.  They describe other "threats of aggression" made to members of the NAACP.
*Id.* ¶ 26.  "Some members have suggested that jobs have been both threatened and lost because
of membership affiliation with the NAACP."  *Id.* ¶ 28.

A branch executive director describes "threats and hate mail" that "are directed at [the
NAACP's] membership broadly."  Decl., Ex. A, ECF No. 366 ¶ 4; *see also* Decl., Ex. C., ECF
No. 366-2 ¶ 5.  Members fear that they and their family would be in physical or economic danger
should their names be released to the public.  Decl., Ex. A, ECF No. 366 ¶ 5.  Some at the Texas
NAACP have experienced routine online harassment and threats, including from individuals
"encouraging violence from others" and posting bounties for information on a declarant.  Decl.,
Ex. B, ECF No. 366-1 ¶ 6, 8.  One individual posted a declarant's highly sensitive and personal
information online, including her "credit score, address, and social security number."  *Id.* ¶ 7.

Similarly, members of the Fair Maps Plaintiffs' organizations expressed fear of
intimidation, harassment, or physical violence should their names and places of residence be
publicly released.  Decl., Ex. 1, ECF No. 367 ¶¶ 12–13.  For at least one declarant, her fear is
related to past experiences of harassment tied to membership in her organization.  Decl., Ex. 4,
ECF No. 367-3 ¶ 7.  For others, their concern is also borne of recent election-related violence or
civic participation-related violence.  Decl., Ex. 2, ECF No. 367-1 ¶ 12; *see also* Decl., Ex. 3,
ECF No. 367-2 ¶¶ 11, 14; Decl. Ex. 4, ECF No. 367-3 ¶¶ 12, 14–15.

One declarant, who works for a minority-owned business, has experienced threats to her
place of business.  She fears public release of her name could lead to similar issues.  Decl., Ex. 2,
ECF No. 367-1 ¶¶ 8, 13.  Other declarants expressed fear of economic reprisal.  Decl., Ex. 3,
ECF No. 367-2  ¶¶ 16–17; Decl. Ex. 4, ECF No. 367-3 ¶¶ 17–18.

The LULAC Plaintiffs' declarant begins with providing background for the alleged fears of the organization's members.  The declarant explains the conditions under which many members of the organization live.  Decl., ECF No. 362-1 ¶¶ 5–10.  After providing the background, the declarant describes being verbally accosted for participation in the organization including by a man with "a visible gun on his waistband."  *Id.* ¶ 17.  In another instance, the declarant describes a scene where organization members were "welcoming immigrants," and were approached by individuals who shouted and intimated members.  *Id.* ¶ 19.  Those individuals also caused a member physical pain.  *Id*.  The declarant's organization has also received threatening calls in connection with its work.  *Id.* ¶ 20.

The declarant goes on to describe that members' "fear retaliation and the very real possibility that they could lose their jobs if their names are made public."  *Id.* ¶ 24.  Other members "worry that the government might target and investigate their family members" or otherwise retaliate if names are made public in this lawsuit.  *Id.* ¶¶ 25–26.

Besides the declaration, the LULAC Plaintiffs cite to public, online comments in which commentors speak of Latinos and civil rights groups in disparaging and derogatory ways.  LULAC Mot. at 3, n.1.  Other articles the LULAC Plaintiffs cite discuss harassment, intimidation, or violence that Latinos face.  Supp. Br., ECF No. 362 at 2–3.  This includes a United States Department of Justice press release regarding an individual who "was sentenced to 50 months in prison . . . for sending a series of threatening email communications to employees of five civil rights organizations."[2]

---

[2] U.S. Dep't of Justice, *New Jersey Man Sentenced for Threatening Employees of National Latino Civil Rights Organizations* (Apr. 18, 2011), https://www.justice.gov/opa/pr/new-jersey-man-sentenced-threatening-employees-national-latino-civil-rights-organizations.

Each Plaintiff contends that its evidence supports a finding that the Association Members should remain anonymous to the public, lest the Association Members face intimidation, harassment, physical violence, or economic reprisal.

## II.   DISCUSSION

The question for the Court is a narrow one: Can non-party individuals, named by plaintiffs for the purpose of showing associational standing, proceed anonymously?  In the context of this case, the answer is yes.

This question is connected to showing standing at the pleading stage.  When a defendant challenges standing on the pleadings, courts look to the allegations in the complaint.  *E.g.*, *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010).  For the purposes of associational standing, an entity plaintiff must "identify members who have suffered the requisite harm."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009); *LULAC*, 2022 WL 1631301, at *6.

Plaintiffs seek leave to pseudonymously identify members of their organizations that they allege have suffered the requisite harm.  What the Plaintiffs ask of the Court is no minor thing: to shield information from the public eye.  This is disfavored, but not invariably prohibited.  *June Med. Servs., LLC v. Phillips*, 22 F.4th 512, 519–20 (5th Cir. 2022); *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 419 (5th Cir. 2021) ("[T]he working presumption is that judicial records should not be sealed.").

### A.  Presumption in Favor of Public Access to Judicial Records

Complaints, as well as the exhibit the LULAC Plaintiffs want to file, are judicial records. "The public's right of access to judicial records is a fundamental element of the rule of law." *Binh Hoa Le*, 990 F.3d at 417 (quoting *In re Leopold to Unseal Certain Elec. Surveillance Applications & Orders*, 964 F.3d 1121, 1123 (D.C. Cir. 2020)).  Judicial records are, after all,

public records.  *Id.* at 416.  But the public right to access judicial records is not absolute.  *United States v. Sealed Search Warrants*, 868 F.3d 385, 391 (5th Cir. 2017) (criminal context); *SEC v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993) (civil context).

When determining whether to seal judicial records, courts employ a presumption in favor of public access which "can be rebutted only by compelling countervailing interests favoring nondisclosure."  *Binh Hoa Le*, 990 F.3d at 421.  In other words, courts balance the public's right against the asserted private interests.  *See June Med.*, 22 F.4th at 521.  Though the public's right to access prevails in most circumstances.  The decision to seal information is made on "a case-by-case, document-by-document, line-by-line" basis.  *Binh Hoa Le*, 990 F.3d at 419 (quotation omitted).

These rules are grounded in the recognition that the judicial branch is unelected, depends on real and perceived legitimacy, and, like all of our government, retains its power only with the consent of the people.  Ensuring judicial records are publicly available enhances accountability and the public's confidence in the judicial branch, its process, and results.  *Binh Hoa Le*, 990 F.3d at 417; *Van Waeyenberghe*, 990 F.2d at 849.  Public access fosters a check on judicial power.  *Van Waeyenberghe*, 990 F.2d at 849; *In re Sealing and Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d 876, 889 (S.D. Tex. 2008).  That is, it keeps the judicial branch accountable.  *Binh Hoa Le*, 990 F.3d at 417.  These rationales are amplified in cases of special public interest.  *June Med.*, 22 F.4th at 520.

### B.  Proceeding Anonymously

Additional rules apply when individuals seek to remain anonymous in a lawsuit.  The presumption of public access as it applies to party names is embodied in Rule 10(a) of the Federal Rules of Civil Procedure.  Rule 10(a) requires that "all the parties" be named in a

complaint.  FED. R. CIV. P. 10(a); *see also* FED. R. CIV. P. 17(a) ("An action must be prosecuted in the name of the real party in interest.").  Like the presumption in favor of public access to judicial records, however, Rule 10(a) is not absolute.  Courts recognize exceptions under which individuals can proceed anonymously.  *See Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. Unit A 1981) (discussing *S. Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe*, 599 F.2d 707 (5th Cir. 1979) [hereinafter "*SMU*"]).  Exceptions arise when protection of an individual's privacy interests outweigh the public's right to access judicial records.  *SMU*, 599 F.2d at 712–13.

Each request to proceed anonymously is "fact-sensitive."  *Stegall*, 653 F.2d at 185–86.  The Fifth Circuit has identified a few non-exhaustive factors courts should consider when analyzing a party's request for anonymity:

(1) whether the party is challenging the lawfulness of government activity;

(2) whether, during the course of the lawsuit, plaintiffs would be compelled to disclose sensitive and highly personal information;

(3) whether, during the course of the lawsuit, plaintiffs would be compelled to admit participation (or desired participation) in unlawful activity;

(4) whether there is a threat of hostile or violent public reaction; and

(5) whether the parties are children.

*Stegall*, 653 F.2d at 185–86; *SMU*, 599 F.2d at 712–13; *A.N. v. Landry*, 338 F.R.D. 347, 351 (M.D. La. 2021).  Very rarely will just one of the factors be dispositive.  *Stegall*, 653 F.2d at 186 ("The threat of hostile public reaction to a lawsuit, standing alone, will only with great rarity warrant public anonymity.").

In the context of individual anonymity, that presumption in favor of public access can be characterized as one in favor of identification.  There are distinct reasons for favoring identification.  Broadly, "[t]he people have a right to know who is using their courts."  *Doe v.*

*Megless*, 654 F.3d 404, 408 (3d Cir. 2011) (quoting *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir. 1997)).  More specifically, "[d]efendants have the right to know who their accusers are, as they may be subject to embarrassment or fundamental unfairness if they do not."  *Plaintiff B v. Francis*, 631 F.3d 1310, 1315 (11th Cir. 2011) (citing *Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2005)); *SMU*, 599 F.2d at 713.

Two of the non-exhaustive factors are applicable here: challenge to government activity and the potential for hostile or violent public reaction.  And as further discussed below, this case is particular for two additional reasons.  First, the Association Members have a discrete privacy interest embedded in their right to freedom of association.  Second, the presumption of identification applies with less force because that presumption focuses on *parties* to a lawsuit.  But here Plaintiffs have identified themselves.  Plaintiffs seek only to keep the *Association Members* anonymous.

### C.  Weighing the Competing Interests

Keeping with the command for line-by-line decisionmaking, *Bình Hoa Le*, 990 F.3d at 419, the Court turns to Plaintiffs' specific requests.  Though their methods differ, in the end Plaintiffs request only to seal the names of Association Members.  In other words, Plaintiffs request that the Association Members remain anonymous to the public and that Plaintiffs be permitted to proceed by pseudonymously naming the Association Members in public filings.

First, if made public, the Association Members' names would be connected with plaintiffs that are challenging the lawfulness of government action.  LULAC Third Am. Compl. ¶¶ 480–90 (challenging the constitutional and statutory validity of Texas's redistricting); Texas NAACP First Am. Compl. ¶¶ 371–96 (same); Fair Maps First Am. Compl. ¶¶ 179–89 (same).  And although Plaintiffs challenge the lawfulness of state action, Plaintiffs have committed to

providing the names of the Association Members to Defendants. This means Defendants will not be subject to a "fundamental unfairness" of not knowing who has agreed to be named for standing purposes. *Plaintiff B*, 631 F.3d at 1315. Defendants will be able to fully scrutinize whether Plaintiffs have associational standing.

On this factor, the interests of the Association Members outweighs the public's interest. Defendants are not harmed by the accusation of wrongdoing in the same way as a private defendant. *See, e.g.*, *SMU*, 599 F.2d at 713 (filing lawsuit against government does not involve reputational injury, unlike suits against private individuals); *C.M. v. United States*, SA-21-CV-00234-JKP, 2021 WL 1822305, at *2 (W.D. Tex. Mar. 31, 2021). Furthermore, the public can intelligently follow the proceedings without the Association Members' names. *E.B. v. Landry*, No. 19-862-JWD-SDJ, 2020 WL 5775148, at *2 (M.D. La. Sep. 28, 2020) ("[L]ike many cases challenging the constitutionality of government action, this case is 'largely legal in nature, and so knowing the Plaintiffs' identities lends little to the public's ability to follow the proceedings or understand the disposition of the case.'" (quoting *Doe v. City of Apple Valley*, No. 20-cv-499 (PJS/DTS), 2020 WL 1061442, at *2 (D. Minn. Mar. 5, 2020))).

Second, Plaintiffs provide ample evidence of the potential for hostile or violent public reaction against the Association Members. Defendants recognize that Plaintiffs allegations of potential harm are serious ones, and that there are some instances when anonymity may be appropriate. Resp., ECF No. 328, at 7–9. But, according to Defendants, this is not the appropriate case. *Id.* Defendants contend that Plaintiffs fall short of proving that the Association Members would face threats or actual harm if they are publicly identified. *Id.* That may necessarily be the result under Defendant's formulation of the evidentiary test. Defendants suggest that Plaintiffs must show "instance[s] where a member was threatened or harassed as a

result of the organization using his or her name to assert a claim in a redistricting lawsuit." *Id.* at 7–8 (suggesting evidence should name names and "advocate [] specific actions"). This formulation is too constrained.

Plaintiffs can show the potential for harm to the Association Members by providing evidence of past harm, whether it be intimidation, harassment, physical violence, or economic reprisal. Plaintiffs must also show how those past experiences relate to the alleged fear of proceeding under true names in the lawsuit at hand. *See, e.g.*, *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2381, 2388 (2021); *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 462–63 (1958) (preventing compelled disclosure of membership list where "[p]etitioner [] made an uncontroverted showing that on past occasions revelation of the identity of its rank-and-file members has exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility"); *SMU*, 599 F.2d at 711 (noting evidence at district court included "affidavits" that "express[ed] belief that" affiants would suffer harm if names were made public). The alleged fears must also be reasonable. *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1042 (9th Cir. 2010).

Plaintiffs present sufficient evidence to show the Association Members have a reasonable fear of harm if their names were publicly released.[3] The Texas NAACP's general counsel—who receives information about threats "against NAACP officers and members"—describes the troubling frequency with which members and leaders face threats and violence. Decl., ECF No. 321-1, at ¶¶ 1, 15, 26; *see also* Decl., Ex. A, ECF No. 366 ¶ 4; Decl., Ex. C ECF No. 366-2 ¶ 5. This experience is, at least at times, connected to their mere association with the organization. Decl., ECF No. 321-1, at ¶ 28. Fair Maps Plaintiffs' members have had similar experiences.

---

[3] This showing alone is insufficient to outweigh the public's right to access judicial records. *See Stegall*, 653 F.2d at 186.

Decl., Ex. 2, ECF No. 367-1 ¶¶ 8, 13; Decl., Ex. 4, ECF No. 367-3 ¶ 7.  So too have the LULAC Plaintiffs' members.  Decl., ECF No. 362-1 ¶¶ 17, 19.

This particular case exacerbates those concerns because the Association Members' names are connected with personal identifying information—namely, information about where they live.  *E.g.*, LULAC Third Am. Compl. ¶¶ 14–22 (describing areas and neighborhoods of residence); Texas NAACP First Am. Compl. ¶¶ 23–156 (describing districts of residence); Fair Maps First Am. Compl. ¶¶ 12, 14 (describing counties and districts of residence).

Plaintiffs submit evidence of the Association Members' concerns about identifying themselves in connection with information about where they live.  One declarant for the Texas NAACP, for instance, describes a threatening call during which the caller "promis[ed] that they would find him."  Decl., ECF No. 321-1 ¶ 10.  Another declarant faced online harassment and threats from an individual who "encourage[ed] violence from others," posted bounties for information about the declarant, and eventually posted online the declarant's highly sensitive and personal information, including her "credit score, address, and social security number."  *Id.* ¶ 17. Similarly, a declarant for the Fair Maps Plaintiffs describes threats experienced at work and fear that public release of her name could lead to more.  Decl., Ex. 2 , ECF No. 367-1 ¶¶ 8, 13.  The LULAC declarant also describes receiving threatening calls in connection with work.  Decl., ECF No. 362-1 ¶ 20.  This evidence suggest that the Association Members' fears of intimidation, harassment, physical violence, or economic reprisal are closely related to the connection between being named publicly and information about where they live and work. Given that plaintiff-organizations' members have experienced harm in connection with where they live and work, these past experiences are reasonably connected with the Association Members' current fears about being publicly identified.

Plaintiffs provide credible evidence of the Association Members' fear of intimidation, harassment, physical violence, or economic reprisal in connection with this lawsuit. Anyone even slightly proficient at using internet search engines may well be able to locate the Association Members. All they may need is the information provided in connection with the lawsuit, plus their names. *Bonta*, 141 S. Ct. at 2388 (risks of intimidation, harassment, and physical violence "are heightened in the 21st century and seem to grow with each passing years, as anyone with access to a computer can compile a wealth of information about anyone else, including such sensitive details as a person's home address . . . ."). Moreover, given the context of this case and the evidence Plaintiffs submitted to the Court, particularly in the form of declarations citing news articles that provide the context for their fears, the Court finds that the Association Members' fears are reasonable. *See id*. On this factor, the Association Members' privacy interests prevail over the public right to access judicial records.

Members of plaintiff-associations have an additional privacy interest. By virtue of being members of an association, the Association Members have a discrete and foundational interest in privacy in their chosen associations. *Cf. Bonta*, 141 S. Ct. at 2388 (recognizing "gravity of the privacy concerns" in the association context); *Patterson*, 357 U.S. at 462 (recognizing "the vital relationship between freedom to associate and privacy in one's associations"). Indeed, "privacy in that association[,] particularly with respect to groups championing unpopular causes[,] is a vital incident of the primary right [to freedom of association]." *Familias Unidas v. Briscoe*, 619 F.2d 391, 399 (5th Cir. 1980). Because the Plaintiffs name the Association Members in relation to their membership in Plaintiffs' organizations, the Association Members have a strong interest in privacy, or, in this instance, anonymity.

### D.  Reasons for Public Access Apply with Less Force in this Case

Anonymity of the Association Members does not forcefully undermine the rationales

undergirding public access to judicial records.  Indeed, even "*party* anonymity does not obstruct

the public's view of the issues joined or the court's performance in resolving them."  *Stegall*, 653

F.2d at 185 (cleaned up) (emphasis added).  Be that as it may, courts do not readily allow parties

to proceed anonymously.  Rightfully so, given the long-standing presumption of ensuring public

access.  *Id.* at 185–86; *see also Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580

(1980); *Craig v. Harney*, 331 U.S. 367, 372–75 (1947).  So, as we have done thus far, courts

balance the specific interests at play.

Engaging in that balancing, we recognize one more key fact: Plaintiffs name the

Association Members for a limited purpose.  Plaintiffs identify the Association Members only so

that they may confer associational standing on Plaintiffs—the named parties in the lawsuit.  *See,*

*e.g.*, *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977) (one factor for

associational standing being that "neither the claim asserted nor the relief requested requires the

participation of individual members in the lawsuit"); *OCA-Greater Hous. v. Texas*, 867 F.3d 604,

610 (5th Cir. 2017) ("*An association* . . . can establish an injury-in-fact . . . ." (emphasis added)).

With associational standing, it is the named entities (the plaintiffs) that are accessing the public's

judicial machinery.  And it is the named entities that accuse defendants of wrongdoing.  Thus,

the reasons for the presumption in favor of identification are diminished because those reasons

focus on the *parties* to the lawsuit.  *See, e.g.*, *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011)

(quoting *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir. 1997); *Plaintiff B*

*v. Francis*, 631 F.3d 1310, 1315 (11th Cir. 2011) (citing *Doe v. Smith*, 429 F.3d 706, 710 (7th

Cir. 2005)); *SMU*, 599 F.2d at 713; *see also* Fed. R. Civ. P. 10(a).  It is the information about

*Plaintiffs* that provide the public with insight into who is bringing claims and the basis of the alleged injury.

Defendants argue that as a consequence of the public's right to know the basis of Plaintiffs' alleged injury, the public also has a right to know the Association Members' identities. Resp. at 4. We agree the public generally has the right to know the basis of a claim. But the consequence of public identification does not necessarily follow. First, in this case, the public will have general information about the districts, counties, or regions where the Association Members reside, which is a fundamental element to whether they would have standing to sue in their own right. (Again, it's worth emphasizing, this is the only purpose of naming the Association Members.) That means the public will be able to follow the judicial proceedings. There is little need to know the Association Members' identity in order for the public to know the basis of Plaintiffs' claims. *See Stegall*, 653 F.2d at 185.

Anonymity in this case also does not cut strongly against the reasons for the general presumption in favor of public access to judicial records. At the center of the reasons for public access is the people's right to hold the judiciary accountable. *E.g.*, *Binh Hoa Le*, 990 F.3d at 417; *Van Waeyenberghe*, 990 F.2d at 849. This is not to be taken lightly, especially when, as here, the nature of the case buttresses the presumption in favor of public access. *See Bradley ex rel. AJW v. Ackal*, 954 F.3d 216, 233 (5th Cir. 2020). No doubt this case of great public importance. The public's stake in this case—both its process and results—cannot but understated. In this associational standing context, however, the public will have sufficient information to follow and assess the Court's analysis of Plaintiffs' standing. Information such as the Association Members' areas of residence, whether they are of voting age, and whether they are active voters will all remain available to the public.

- 15 -

Considering the reasons underlying the presumption in favor of public access, balanced against the interests favoring nondisclosure, the Court concludes that the names of the Association Members are not a primary matter of public concern.  *Cf. ACLU of Miss. v. Mississippi*, 911 F.2d 1066, 1071 (5th Cir. 1990) (vacating district court order requiring Mississippi to release information held by the State without redacting names or possibly other identifying information).  Here, the "public need to know [can] be satisfied by release of [] information in a more limited format."  *Cf. ACLU of Miss.*, 911 F.2d at 1071.

### E.  The Approach Going Forward

The LULAC Plaintiffs' approach best balances the appropriate considerations.  The LULAC Plaintiffs already filed an amended complaint identifying association members by pseudonyms; they seek leave only to file the list of members' true names under seal.  The Texas NAACP and Fair Maps Plaintiffs, on the other hand, seek leave to file an amended complaint under seal.  Although the Texas NAACP and Fair Maps Plaintiffs would only redact the names of association members in the publicly available amended complaint, the Court concludes that filing an entire amended complaint under seal would inappropriately hinder the public's access to judicial records.  *In re Sealing*, 562 F. Supp. 2d at 890.

If the Texas NAACP and Fair Maps Plaintiffs wish to keep their members' names private, they must follow the LULAC Plaintiffs' approach.  The Court will not permit Plaintiffs to file an amended complaint under seal, but they may identify association members by pseudonyms (*e.g.*, "Texas NAACP Member 1" or "Fair Maps Member 1") and separately file the appropriate identifying information under seal as an exhibit to their amended complaint.  All Plaintiffs must also provide Defendants with the sealed exhibits.  The sealed exhibits will be subject to the Confidentiality and Protective Order (ECF No. 202).

Like the Fifth Circuit in *SMU*, where the court affirmed then-District Judge Higginbotham's order limiting the disclosure of the plaintiff's membership list to only the parties to the lawsuit, "[w]e believe that this ruling strikes a sensible balance." *SMU*, 599 F.2d at 713. The public will have access to all information in Plaintiffs' complaints with the exception of the Association Members' true identities.

### III.    CONCLUSION

The Court emphasizes that none of the considerations discussed in this Order, standing alone, are sufficient to allow the Plaintiffs to maintain the anonymity of the Association Members in their publicly filed complaints. Rather, it is the confluence of all the considerations in this case that tip the scales against the presumption of the public's right to access judicial records and the presumption in favor of identification. The balance the Court strikes ensures accountability and access while also ensuring the documents do not "become a vehicle for improper purposes." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598–99 (1978).

Accordingly, **IT IS ORDERED** that the LULAC Plaintiffs' "Motion for Leave to File Exhibit Under Seal" (ECF No. 326) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Texas NAACP's "Motion to File First Amended Complaint Under Seal" (ECF No. 321) and Fair Maps' "Motion for Leave to File Under Seal" (ECF No. 322) are **DENIED**. The District Clerk **SHALL <u>NOT</u>** docket the documents associated with these motions. The Court **PERMITS** the Texas NAACP and Fair Maps to file public amended complaints in which they pseudonymously identify their association members. If the Texas NAACP and Fair Maps Plaintiffs choose to pseudonymously identify their association members, they **SHALL FILE**, under seal, the association members' identifying information. The Texas NAACP and Fair Maps **SHALL FILE** these documents, if they choose to do so, by **July 22, 2022**.

**IT IS FURTHER ORDERED** that the Texas NAACP, Fair Maps, and LULAC Plaintiffs shall **PROMPTLY DELIVER** to Defendants information filed under seal in accordance with this Order.

**So ORDERED and SIGNED this 18th day of July 2022.**

_____
**DAVID C. GUADERRAMA**
**UNITED STATES DISTRICT JUDGE**

*And on behalf of:*

| | | |
|---|---|---|
| **Jerry E. Smith** | | **Jeffrey V. Brown** |
| **United States Circuit Judge** | *-and-* | **United States District Judge** |
| **U.S. Court of Appeals, Fifth Circuit** | | **Southern District of Texas** |