**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,<br><br>      *Plaintiffs*,<br><br>v.<br><br>GREG ABBOTT, in his official capacity as Governor of the State of Texas, *et al.*,<br><br>      *Defendants*. | CIVIL ACTION NO.<br>3:21-cv-00259-DCG-JES-JVB<br>[Consolidated Action:  Lead Case] |

**REPLY IN SUPPORT OF JOINT MOTION OF PLAINTIFFS LULAC, ET AL.**
**ABUABARA ET AL., AND TEXAS NAACP TO COMPEL PRODUCTION OF**
**DOCUMENTS FROM DEFENDANT ABBOTT**

In response to the joint motion of Plaintiffs LULAC, *et al.*, Abuabara, *et al*. and Texas NAACP (collectively, "Plaintiffs"), Defendant Abbott released in full 8 documents that he had previously withheld.[1]   At issue now are the remaining documents from Plaintiffs' original request, along with documents that Abbott has the practical ability to obtain.  Those remaining documents can be found in Exhibit A.

As Abbott notes, "calling a special session of the legislature is best understood as an *executive* action."  Dkt. 423 at 12 (emphasis added).  Thus, the legislative privilege does not shield the remaining documents, and even if it could, neither that privilege nor the deliberative-process privilege can justify withholding those documents.  Further, Abbott even states that "*part* of the purpose of these documents' creation was to deliberate and consider

---

[1] Plaintiffs note that the arguments in their motion regarding those documents are nearly identical to their arguments put forth in their May 16, 2022 meet-and-confer letter.  *See* Dkt. 380-12 (May 16, 2022 letter); *see also* Dkt. 380-8 (April 26, 2022 letter).

whether, when, and how to call a third special session." *Id.* at 7. That much is obvious—as is the conclusion that these documents were created not for the primary purpose of litigation, but for the purpose of providing political, strategic, or policy advice, and were made in the ordinary course of business of the Office of the Governor. For these reasons and the reasons set forth in their motion, Abbott must disclose the remaining documents he has withheld.

## I.   Abbott must produce documents accessible via Dropbox links.

By disclosing two documents containing Dropbox links sent by the Senate Redistricting & Jurisprudence Committee to the Office of the Governor—DOC_0356598 and DOC_3056600—Abbott concedes that they cannot be withheld under the legislative privilege. *See* Exs. B and C. However, Abbott makes the astonishing argument that he is under no obligation to produce the underlying material accessible via those Dropbox links—or even, at the very least, to determine whether he still has access to it.

That argument flies in the face of Rule 34's requirements, and echoes the same failed argument Defendants made in the prior round of redistricting litigation. *Perez v. Perry*, No. SA-11-CV-360-OLG-JES-XR, 2014 WL 1796661, at *1 (W.D. Tex. May 6, 2014) ("Texas argues that it is not in possession of the legislative materials that the United states seeks."). But as the three-judge court emphasized there, for the purposes of Rule 34, "a party can 'control' documents that are within the possession or custody of a non-party." *Id.* (citations omitted). Indeed, and pertinent here, "[d]ocuments are considered to be within a party's control when that party has the right, authority, or *practical ability* to obtain the documents from a nonparty." *Id.* (emphasis added) (quotation omitted). Abbott has given no indication that he has lost access to the documents in these Dropbox links, and he has refused to take the most basic practical step to obtain these documents—clicking a link—despite Plaintiffs' initial requests to do so nearly two

months ago.  *See* Dkt. 380-12 (May 16, 2022 letter).  Because Abbott has the practical ability to access these documents, he must share any documents accessible through the link in DOC_0356598 and DOC_3056600.[2]

## II.   The legislative privilege does not protect the remaining documents from disclosure.

As for the remaining documents withheld under legislative privilege, Abbott fails to acknowledge what courts in this Circuit have consistently held:  "neither the Governor, nor the Secretary of State or the State of Texas has standing to assert the legislative privilege on behalf of any legislator or staff member."  *Perez v. Perry*, No. SA-11-CV-360-OLG-JES-XR, 2014 WL 106927, at *1 (W.D. Tex. Jan. 8, 2014); *see also La Union Del Pueblo Entero (LUPE) v. Abbott*, No. SA-21-CV-00844-XR, 2022 WL 1667687, at *2 (W.D. Tex. May 25, 2022), *appeal docketed sub nom. LULAC v. Hughes*, No. 22-50435 (5th Cir. May 27, 2022); *Gilby v. Hughes*, 471 F. Supp. 3d 763, 768 (W.D. Tex. 2020); *TitleMax of Tex., Inc. v. City of Dallas*, No. 3:21-cv-1040-S-BN, 2022 WL 326566, at *6 (N.D. Tex. Feb. 3, 2022).  For that reason alone, Abbott cannot assert the legislative privilege.

Abbott argues that he can assert the legislative privilege because his ability to call a special session is a legislative function.  But as Abbott concedes in his opposition to Plaintiffs' motion, "calling a special session of the legislature is best understood as an *executive* action."  Dkt. 423 at 12 (emphasis added); *see also id.* at 9 (describing proclamation drafts and emails as "executive acts").

Both the plain language of the Texas Constitution and caselaw in this Circuit require this conclusion.  The Texas Constitution explicitly states that "[t]he Legislative power of this State

---

[2] At a minimum, Abbott must verify whether he still has access to those documents.  In the event that Abbott only lost access to the documents following the delay in production, despite the documents' availability when Plaintiffs first made their requests, Plaintiffs respectfully reserve the right to move for additional relief in relation to these documents.

shall be vested in a Senate and House of Representatives," Tex. Const. art. III, § 1, and an executive official shall not exercise that power except where "expressly permitted," *see id.* art. II, § 1.  As the Supreme Court of Texas has recently reiterated, "the Legislature is vested with 'all legislative power—the power to *make, alter and repeal laws*—not expressly or impliedly forbidden by other provisions of the State and Federal Constitutions.'" *Abbott v. Mexican Am. Legis. Caucus, Tex. House of Reps.*, No. 22-0008, 2022 WL 2283221, at *14 (Tex. June 24, 2022) (slip op.) (emphasis added) (quoting *Walker v. Baker*, 196 S.W. 2d 324, 328 (Tex. 1946)). To that end, the Texas "Constitution is designed such that *core legislative power*—the power to enact laws—is vested in the Legislature, while the executive is charged with enforcing those laws." *In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 482 (Tex. 2011) (Willett, J., concurring) (emphasis added).  As a result, courts in this Circuit have concluded that, at most, executive officials may invoke the legislative privilege only when exercising core legislative power.  *See LUPE*, 2022 WL 1667687, at *5 (noting legislative powers of the lieutenant governor such as appointing committee chairs, referring bills to committee, voting on legislation in event of senate tie, or participating and voting on all questions before Committee of the Whole).

By contrast here, although the "[t]he Governor has expressed his view on legislative priorities" through his proclamation, "he has not exercised the Legislature's power," as he has not made, altered, or repealed laws through his proclamation.  *See In re Turner*, 627 S.W.3d 654, 660 (Tex. 2021).[3]  Because the power to call a special session (an executive function) is distinct

---

[3] In his opposition, Abbott includes a parenthetical implying that the Supreme Court of Texas in *In re Turner* concluded that the governor's authority to call a special legislative session is a legislative function, *see* Dkt. 423 at 4, but the court reached no such conclusion.  In that case, the court simply stated that "[t]the powers to veto legislation and call special legislative sessions belong constitutionally to the Governor, not the Legislature."  *In re Turner*, 527 S.W.3d at 660.  There is no statement even suggesting that the ability to call a special session and issue a proclamation constitute legislative functions.  Indeed, unlike the veto authority, which allows the governor to approve portions of a bill that "contains several items of appropriation," *see Jessen Assocs., Inc. v. Bullock*, 531 S.W.2d 593, 598 (Tex. 1975), the

from the power to legislate—that is, to *make, alter and repeal laws*—Abbott cannot invoke the legislative privilege over documents relating to the drafting of the proclamation calling the third special session.[4]

Abbott relies on inapposite caselaw to argue otherwise. As noted in Plaintiffs' motion, Abbott continues to conflate legislative *immunity* and legislative *privilege*, applying cases regarding the former to the latter, and relying on out-of-circuit case law that makes the same mistake, *see* Dkt. 423 at 12-13. But again, the two are distinct concepts, and case law regarding legislative immunity does not apply to the legislative privilege. Dkt. 282 at 2; *see also Jefferson Cmty.*, 849 F.3d at 624 (citing *Perez*, 2014 WL 106927, at *2). That is why, in part, courts in this Circuit—including the *Perez* court—have concluded that Abbott lacks standing even to invoke the legislative privilege. *See, e.g.*, 2014 WL 106927, at *1. Accordingly, Abbott cannot invoke the privilege on this basis. *See* Dkt. 282 at 2.

In any event, even if the legislative privilege applies, it should yield under the *Perez* factors, and Abbott fails to meaningfully refute Plaintiffs' arguments on this point. Instead, he states, in a cursory fashion, only that Plaintiffs "present no compelling reason why the privilege should yield, or even why they need the documents at all," Dkt. 423 at 13, seemingly ignoring Plaintiffs' analysis in their joint motion that the privilege indeed must yield under the *Perez* factors, *see* Dkt. 380 at 12-15. At most, Abbott disputes only the relevance of the documents sought, but as Plaintiffs emphasized, the documents potentially reveal coordination between Abbott and members of the Legislature regarding the process surrounding and the substance of the challenged redistricting maps. Indeed, Abbott emphasizes in his opposition that "the drafts

---

governor's proclamation does not implicate the passage, substance, or alteration of legislation, *see In re Turner*, 527 S.W.3d at 660.

[4] Tellingly, Abbott does not even invoke the legislative privilege for all documents relating to the draft proclamation of the third special session. *See* Ex. A at 5-6.

and emails directly address considerations and motivations for calling the Legislature into session," Dkt. 423 at 13, and, at a minimum, the Supplemental Privilege Log and the documents Abbott has produced so far suggest some degree of coordination between his office and Senate staff.  *See* Dkt. 380-2; *see also* Ex. D (showing communication between legislative staff and the Office of the Governor on the timing of the proclamation).  Accordingly, for the reasons stated in Plaintiffs' motion, the *Perez* factors compel disclosure of the documents at issue.

### III.    The deliberative-process privilege does not protect the remaining documents from disclosure.

As just discussed, Abbott is correct about one thing:  "calling a special session of the legislature is best understood as an executive action."  Dkt. 423 at 12.  Nevertheless, Abbott cannot rely on the deliberative-process privilege to withhold any documents in the Supplemental Privilege Log, either.

Courts have repeatedly held that the deliberative process privilege may be invoked "only by the agency head after personally reviewing the documents for which the privilege is asserted." *In re McKesson Gov't Entities Average Wholesale Price Litig.*, 264 F.R.D. 595, 601 (N.D. Cal. 2009); *see also Mayfield v. Cnty. of Los Angeles*, No. 2:19-cv-1298-FMO, 2020 WL 2510649, at *1 (C.D. Cal. Mar. 20, 2020) (same); *Nevada Partners Fund, LLC v. U.S.*, No. 3:06cv379-HTW-MTP, 2008 WL 2484198, at *5 (S.D. Miss. May 12, 2008) ("[T]he head of the agency that has control over the requested document must assert the privilege, or in some circumstances, delegate the authority to assert the privilege."). Abbott complains that *McKesson* has been "criticized" for "confusing the deliberative-process privilege with the state-secrets privilege," Dkt. 423 at 7, but the case Abbott cites in fact recognizes that the procedures for invoking the two privileges are the same. *See Scalia v. Int'l Longshore & Warehouse Union*, 336 F.R.D. 603, 610 (N.D. Cal. 2020). And while the agency head may sometimes delegate his

authority to invoke the privilege, the requirement remains that the privilege be claimed by the agency itself after personal review, not by litigation counsel. *See Landry v. FDIC,* 204 F.3d 1125, 1135 (D.C. Cir. 2000) (upholding application of the deliberative process privilege based on the affidavit of the Memphis regional director of the FDIC's division of supervision, claiming to have personally reviewed each of the withheld documents, formally invoking the law enforcement and deliberative process privileges, and explaining how each privilege applied). Abbott makes no showing that any such review occurred and that anyone aside from litigation counsel made the decision to invoke the privilege here.

Regardless, the deliberative-process privilege does not apply.  In their opening brief, Plaintiffs emphasized that the deliberative-process privilege cannot apply to documents that Abbott has exchanged with the legislative branch.  *See* Dkt. 380 at 15-16; *see also Gilby*, 471 F. Supp. 3d at 767-68, yet Abbott failed to respond to this point.  Accordingly, Abbott has conceded that the deliberative-process does not apply to any communications between the Office of the Governor and legislative staff, and any such documents withheld by Abbott must be disclosed.[5]

Further, for all documents over which Abbott asserts the deliberative-process privilege, even if that qualified privilege applied, it should still yield.  *See* Dkt. 380 at 19; *see also Harding v. Cnty. of Dallas*, No. 3:15-CV-0131-D, 2016 WL 7426127, at *12 (N.D. Tex. Dec. 23, 2016) (quoting *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997)) (collecting cases); *see also Favors v. Cuomo*, 285 F.R.D. 187, 210 n.22 (E.D.N.Y. 2012) (citing *Rodriguez*, 280 F. Supp. 2d 89, 98 (S.D.N.Y. 2003)).  As with the legislative privilege, Defendants hardly respond to Plaintiffs' analysis that all factors regarding the deliberative-process privilege require disclosure, ignoring several of the factors and arguing again that the documents are not relevant to Plaintiffs' claims.  Dkt. 423 at 10-11.  But for the reasons described above regarding the *Perez* factors, *see*

---

[5] Those documents include:  DOC_0356593.

*supra,* Section III, and in Plaintiffs' opening brief, *see* Dkt. 380 at 12-15, 19, the deliberative-process privilege—if it applies—must yield.

In opposing disclosure, Abbott focuses primarily on whether Plaintiffs have sufficiently shown that there is governmental misconduct justifying disclosure—but courts in this Circuit, and the circuits of the cases on which Abbott relies, require no such showing.  Instead, and as Plaintiffs have noted, those courts require a balancing of several factors, *see, e.g.*, *Doe*, 2014 WL 6390890, at *2, and have noted merely that the *possibility* of governmental misconduct is one example of a situation when that balance favors disclosure, *see In re Sealed Case*, 121 F.3d at 738 ("*For example*, where there is reason to believe the documents sought *may* shed light on government misconduct, the privilege is routinely denied" (quotation omitted) (emphasis added)).  In any event, given Plaintiffs' allegations regarding the drafting of the redistricting plans, and the details listed on the Supplemental Privilege Log suggesting coordination between the legislative branch and the Office of the Governor on the process and substance related to those plans, *see* Dkt. 380-2, Plaintiffs have shown that this factor in fact strongly favors disclosure.  *Doe*, 2014 WL 6390890, at *4 (concluding that factor favors disclosure in § 1983 case where "governmental misconduct is *alleged* due to the custom or policy that might fail to prevent sexual misconduct" (emphasis added)).

Accordingly, Abbott cannot withhold the remaining documents based on the deliberative-process privilege, and must disclose them.

## IV.    Neither the attorney-client privilege nor work product doctrine bar disclosure.

As an initial matter, Abbott has failed to address Plaintiffs' argument that he waived the attorney-client privilege and work product doctrine by sharing DOC_035693 with the legislative

branch.  *See* Dkt. 380 at 22-23.  Accordingly, Abbott has conceded the issue and failed to meet his burden, so the document must be disclosed.

Further, regardless of whether Abbott's assertions of attorney-client privilege are conclusory or boilerplate—and they are, for the reasons expressed in Plaintiffs' opening brief—Abbott has still failed to show that the attorney-client privilege should apply to these documents.  *See  E.E.O.C. v. BDO USA, L.L.P.*, 876 F.3d 690, 696 (5th Cir. 2017) (emphasizing "that simply describing a lawyer's advice as 'legal,' without more, is conclusory").  After all, "documents concerning 'advice on political, strategic or policy issues . . . [are not] shielded from disclosure by the attorney-client privilege.'"  *Baldus v. Brennan*, Nos. 11–CV–562 JPS–DPW–RMD, 11–CV–1011 JPS–DPW–RMD, 2011 WL 6385645, at *3 (E.D. Wis. Dec. 20, 2011) (quoting *Evans v. City of Chicago*, 231 F.R.D. 302, 312 (N.D. Ill. 2005)); *cf. Perez v. Perry*, No. SA-11-CV-360-OLG-JES-XR, 2014 WL 3359324, at *1-2 (W.D. Tex. July 9, 2014). Further, communications that relay "facts, not legal advice" are "not privileged," *LUPE*, 2022 WL 1667687, at *7, "even if the client learned those facts through communications with counsel," *id.* (quoting *Thurmond v. Compaq Comput. Corp.*, 198 F.R.D. 475, 483 (E.D. Tex. 2000)).  As Plaintiffs argued in their opening brief, the very nature of these communications—pertaining to calling a special session, issuing a proclamation, or providing input on drafts of legislation—renders them "advice on political, strategic or policy issues," and they therefore must be disclosed.  *Baldus*, 2011 WL 6385645, at *3 (quoting *Evans*, 231 F.R.D. at 312); *see also Perez*, 2014 WL 3359324, at *1.  And to the extent that any information contains "underlying facts," Abbott cannot withhold that information.  *See Upjohn v. United States*, 449 U.S. 383, 395-96 (1981); *see also LUPE*, 2022 WL 1667687, at *7.

In any event, where there is a mixed discussion of legal and non-legal advice (*e.g.*, business, political, strategic, or policy), "courts should consider the 'context . . . key,' ultimately seeking to glean the 'manifest purpose' of the communication." *See E.E.O.C.*, 876 F.3d at 696 (quoting *Exxon Mobil Corp. v. Hill*, 751 F.3d 379, 382 (5th Cir. 2014)).[6] Here, Abbott concedes that, "*part* of the purpose for the documents' creation was to deliberate and consider whether, when, and how to call a third special session," and that the documents "were prepared in part to aid OOG policy deliberations," Dkt. 423 at 7-8 (emphasis added). Those are not legal questions, and Abbott fails to address how the "manifest purpose" of these documents involved legal advice. *See E.E.O.C.*, 876 F.3d at 695. Nor could he: at bottom, and as reflected in the Supplemental Privilege Log, these documents were created to convene the third special session and draft a proclamation for that session. Accordingly, Abbott cannot withhold these documents based on the attorney-client privilege.

Finally, Abbott makes largely the same arguments in support of the work product doctrine—but to no avail. The work product doctrine requires that the primary motivating purpose behind the creation of a document be to aid in possible future litigation. *See Harding*, 2016 WL 7426127, at *10 (citing *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000)). Work product protections do not cover materials created by attorneys or their agents "in the ordinary course of business, or pursuant to public requirements unrelated to litigation." *United States v. El Paso Cnty.*, 682 F.2d 530, 542 (5th Cir. 1982). Abbott fails to acknowledge that the primary motivating purpose of these documents was to call a legislative session and provide input to the legislative branch regarding possible legislation—that is, activities in the ordinary course of the Office of the Governor. *See Bethune-Hill*, 114 F. Supp. 3d at 348; *see also*

---

[6] Because of the framework set forth in *E.E.O.C.*, the Court need not address Abbott's mischaracterization of *Baldus*. Dkt. 423 at 7 (stating incorrectly that *Baldus* requires a document be made for "the sole purpose" of communicating political advice in order for the attorney-client privilege not to apply).

*Baldus*, 2011 WL 6385645, at *2.   At most, Abbott argues that the documents "relat[e] to the legal compliance of a draft proclamation" and therefore were "created as part of assessing litigation risk."  Dkt. 423 at 6.  But by that logic, Abbott "could *always* have a reasonable belief that any of his" actions around a special session "would result in litigation."  *Bethune-Hill*, 114 F. Supp. 3d at 348 (quotations omitted).  In those circumstances, courts have concluded that the work product doctrine does not apply.  *See Baldus*, 2011 WL 6385645, at *2; *see also Bethune-Hill*, 114 F. Supp. 3d at 348.  Abbott must therefore disclose these documents.

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion to compel for the remaining items Abbott has withheld—either in full or in part—or failed to provide despite the practical ability to obtain them.  *See* Ex. A.


Dated: July 15, 2022                    Respectfully submitted,

                                        */s/ Nina Perales*
                                        Nina Perales
                                        Fátima Menendez
                                        Kenneth Parreno*
                                        Mexican American Legal Defense and Educational
                                        Fund (MALDEF)
                                        110 Broadway Street, Suite 300
                                        San Antonio, TX 78205
                                        (210) 224-5476
                                        Fax: (210) 224-5382

                                        *Admitted *pro hac vice*

                                        *Counsel for LULAC Plaintiffs*


                                        */s/ David R. Fox*

                                        Abha Khanna*
                                        David R. Fox*

Richard A. Medina*
Harleen K. Gambhir*
**ELIAS LAW GROUP LLP**
10 G Street NE, Suite 600
Washington, D.C. 20002
Telephone: (202) 968-4490
akhanna@elias.law
dfox@elias.law
rmedina@elias.law
hgambhir@elias.law

Kevin J. Hamilton*
**PERKINS COIE LLP**
1201 Third Avenue
Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
khamilton@perkinscoie.com

Renea Hicks
Attorney at Law
Texas Bar No. 09580400
**Law Office of Max Renea Hicks**
P.O. Box 303187
Austin, Texas 78703-0504
(512) 480-8231
rhicks@renea-hicks.com

*Counsel for Abuabara Plaintiffs*

*Admitted pro hac vice*


s/ Lindsey B. Cohan
Lindsey B. Cohan
Texas Bar No. 24083903
DECHERT LLP
515 Congress Avenue, Suite 1400
Austin, TX 78701
(512) 394-3000
*lindsey.cohan@dechert.com*

Jon Greenbaum*
Ezra D. Rosenberg*
Pooja Chaudhuri*

Sofia Fernandez Gold*
Alexander S. Davis*
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street, Suite 900
Washington, DC 20005
(202) 662-8600
*jgreenbaum@lawyerscommittee.org*
*erosenberg@lawyerscommittee.org*
*pchaudhuri@lawyerscommittee.org*
*sfgold@lawyerscommittee.org*
*adavis@lawyerscommittee.org*

Neil Steiner*
Margaret Mortimer*
Nicholas Gersh*
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3822
*neil.steiner@dechert.com*
*margaret.mortimer@dechert.com*
*nicholas.gersh@dechert.com*

Robert Notzon
Texas Bar No. 00797934
THE LAW OFFICE OF ROBERT NOTZON
1502 West Avenue
Austin, Texas 78701
(512) 474-7563
*robert@notzonlaw.com*

Gary Bledsoe
Texas Bar No. 02476500
THE BLEDSOE LAW FIRM PLLC
6633 Highway 290 East #208
Austin, Texas 78723-1157
(512) 322-9992
*gbledsoe@thebledsoelawfirm.com*
*Attorney only as to Texas NAACP's claims related
to Texas state senate and state house plans*

Anthony P. Ashton*

NAACP OFFICE OF THE GENERAL COUNSEL
4805 Mount Hope Drive
Baltimore, MD 21215
(410) 580-577
*aashton@naacpnet.org*

Janette M. Louard
Anna Kathryn Barnes
NAACP OFFICE OF THE GENERAL COUNSEL
4805 Mount Hope Drive
Baltimore, MD 21215
(410) 580-577
*jlouard@naacpnet.org*
*abarnes@naacpnet.org*
*Attorneys appearing of counsel*

*Counsel for the Texas State Conference of NAACP*

*Admitted *pro hac vice*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned counsel hereby certifies that she has electronically submitted a true and correct copy of the above and foregoing via the Court's electronic filing system on the 15th day of July 2022.

<u>*/s/ Nina Perales*            </u>
Nina Perales