IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>GREG ABBOTT, in his official capacity as Governor of the State of Texas, *et al.*,<br><br>*Defendants*. | CIVIL ACTION NO.<br>3:21-cv-00259-DCG-JES-JVB<br>[Consolidated Action: Lead Case] |

**LULAC PLAINTIFFS' MOTION TO COMPEL
THIRD-PARTY SUBPOENAS *DUCES TECUM***

LULAC Plaintiffs brought suit to challenge the redistricting plans recently enacted by the Texas Legislature, alleging violations of the Voting Rights Act and the United States Constitution. LULAC Plaintiffs allege, among other things, that the Texas Legislature enacted the redistricting plans with the intent to discriminate against Latinos, and further assert that the totality of circumstances shows that those minorities have less opportunity to participate in the political process and to elect representatives of their choice. To that end, LULAC Plaintiffs served document subpoenas to the following individuals: Lieutenant Governor Dan Patrick, Senator Joan Huffman, House Speaker Dade Phelan, Representative Todd Hunter, Representative Brooks Landgraf, Representative J.M. Lozano, Representative Jacey Jetton, and Representative Ryan Guillen (together, "Respondents").

Based on sweeping claims of privilege, Respondents withheld a number of responsive documents. Broadly, Respondents inappropriately (1) advance an overbroad interpretation of the

1

legislative privilege, withholding even communications with third parties; (2) assert the attorney-client privilege, work product doctrine, and the legislative privilege over factual data; (3) assert the attorney-client privilege over advice on political, strategic, or policy issues; and (4) claim work product protection over materials prepared for legislation—not in anticipation of litigation. These privileges do not protect from disclosure here, and LULAC Plaintiffs now respectfully request that the Court compel disclosure of those documents. *See* Ex. A.

## I.  BACKGROUND

On April 13, 2022, LULAC Plaintiffs served subpoenas on Respondents, seeking documents including redistricting proposals, legislative communications, and data used during the redistricting process. Ex. B. On May 13, 2022, Respondents produced some documents in response to LULAC Plaintiffs' subpoenas. On June 17, 2022, Respondents served a privilege log in connection with that production (the "Privilege Log"), claiming privilege with respect to 1,243 documents. That same day, the United States filed a motion to enforce document subpoenas served on Respondents, among others. Dkt. 351. That motion remains pending.

On July 5, 2022, LULAC Plaintiffs met and conferred by letter with Respondents, noting which documents they sought, including but not limited to some documents the United States seeks in its pending motion to enforce. Ex. C. Additionally, LULAC Plaintiffs identified several documents that are not the subjects of the United States' motion that Respondents inappropriately withheld, and noted why disclosure was required for those documents. *Id.* at 5-6.

On July 14, 2022, Respondents responded to LULAC Plaintiffs' letter. Ex. D. Respondents stated that they did not produce the documents at issue in the United States' motion to enforce, and asserted that LULAC Plaintiffs' arguments in favor of disclosure of the other documents they sought were incorrect. *Id.* at 1, 3.

On July 17, 2022, LULAC Plaintiffs responded to Respondents' letter, confirming the list of documents they sought. *See* Exs. E, F, and G. On July 18, 2022, Respondents declined to produce any documents, with the exception of some documents they also intended to produce in response to the United States' motion to enforce. *See* Ex. H at 1.[1]

In light of the disagreement over whether the requested documents must be disclosed, LULAC Plaintiffs now seek to compel the production of several documents Respondents have improperly withheld. Exhibit A lists the documents LULAC Plaintiffs seek in the instant motion.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 45(d)(2)(B)(i) allows the party that served a subpoena to "move the court . . . for an order compelling production." In turn, Rule 45(e)(2)(A) mandates that "a person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents . . . in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."

"It is well settled that the party asserting the privilege has the burden of establishing its applicability." *Perez v. Perry*, No. SA-11-CV-360-OLG-JES-XR, 2014 WL 3495414, at *2 (W.D. Tex. July 11, 2014) (citing *Hodges, Grant & Kaufman v. United States*, 768 F.2d 719, 721 (5th Cir. 1985)). Conclusory assertions are "insufficient to carry out the proponent's burden of establishing" privilege. *E.E.O.C. v. BDO USA, L.L.P.*, 876 F.3d 690, 696 (5th Cir. 2017).

When a motion to compel "is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard,

---

[1] In that email, counsel for Respondents indicated that they would produce those documents "by the end of today." Ex. H at 1. At the time of filing, however, LULAC Plaintiffs have not received those documents. LULAC Plaintiffs respectfully request the opportunity to file an amended Exhibit A when they receive those documents.

3

require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).

### III. ARGUMENT

#### A. Respondents Must Disclose All Documents That are the Subjects of the Motion to Enforce by the United States.

As an initial matter, LULAC Plaintiffs seek a number of documents that are the subject of the motion to enforce by the United States. Ex. J. LULAC Plaintiffs incorporate by reference and urge here the arguments made by the United States in support of its motion regarding any document also at issue here. *See* Dkts. 351 and 394. LULAC Plaintiffs also assert additional reasons why some of those documents should be disclosed.

First, Lieutenant Governor Patrick cannot invoke the legislative privilege over the documents he has withheld.[2] Lieutenant Governor Patrick is a member of the executive branch, not of the legislative branch. Tex. Const., art. IV, § 1. Because "[t]he separation of powers doctrine prohibits one branch of government from exercising a power belonging inherently to another," Lieutenant Governor Patrick's authority in the legislative sphere—and thus his ability to invoke the legislative privilege—is, at most, limited to the areas enumerated under the Texas Constitution. *See In re Turner*, 627 S.W.3d 654, 659 (Tex. 2021) (quotation omitted); *see also* Tex. Const., art. II, § 1; Tex. Const., art. IV, § 16(b) (emphasis added) ("The Lieutenant Governor shall by virtue of his office be President of the Senate, and shall have, when in *Committee of the Whole*, a right to debate and vote on all questions; and when the Senate is equally divided to give

---

[2] Respondents have also asserted that Texas Government Code § 323.017 governs the scope of the legislative privilege. However, the Texas Government Code is irrelevant to any analysis of the privilege here. *See Hobart v. City of Stafford*, 784 F. Supp. 2d 732, 764 n.22 (S.D. Tex. 2011) (stating "that federal common law of privilege applies in general in federal cases").

the casting vote."). However, the Lieutenant Governor's authority does not include drafting, revising, or proposing changes to legislation—the subject of several of the communications in the Privilege Log. *See* Ex. K; *see also La Union Del Pueblo Entero (LUPE) v. Abbott*, No. SA-21-CV-00844-XR, 2022 WL 1667687, at *2 (W.D. Tex. May 25, 2022), *appeal docketed sub nom. LULAC v. Hughes*, No. 22-50435 (5th Cir. May 27, 2022). Further, none of the communications involved legislation pending before the Senate's Committee of the Whole Accordingly, and as other courts in this Circuit have concluded, the Lieutenant Governor cannot withhold such documents based on the legislative privilege. *LUPE*, 2022 WL 1667687, at *6.

Furthermore, any assertion of the legislative privilege over documents shared between the legislative branch and Lieutenant Governor Patrick has been waived. "To the extent . . . that any legislator, legislative aide, or staff member had conversations or communications with any outsider (*e.g.* party representatives, non-legislators, or non-legislative staff), any privilege is waived as to the contents of those specific communications." *Perez*, 2014 WL 106927, at *2; *see also Gilby v. Hughs*, 471 F. Supp. 3d 763, 767 (W.D. Tex. 2020); *Favors v. Cuomo*, 285 F.R.D. 187, 212 (E.D.N.Y. 2012) (noting that "communications with 'knowledgeable outsiders' . . . fall outside the privilege"). As such, "the legislative privilege is waived when a state legislator communicates with executive branch officials." *LUPE*, 2022 WL 1667687, at *4; *see also Perez*, 2014 WL 106927, at *2. Accordingly, the legislative privilege has been waived for all documents shared between legislators or their staff and Lieutenant Governor Patrick. *See* Ex. K.[3]

In addition, for some entries, the Privilege Log lists authors or recipients who appear not to have been included in the privilege log provided to the United States in connection with its motion to enforce. For example, unlike the privilege log provided to the United States, the

---

[3] Exhibit K includes documents not subject of the motion to enforce brought by the United States. *See* Dkt. 351. LULAC Plaintiffs assert the same arguments in support of the disclosure of documents not subject of that motion.

Privilege Log lists the "State of Texas" as the author of the following documents: DOC_0001982, DOC_0006868, and DOC_0006873. *See* Ex. A. For the reasons set forth above regarding the legislative privilege, and the reasons set forth below regarding the attorney-client privilege and work product doctrine, those protections have been waived to the extent these additional individuals are not legislators, legislative aides, or legislative staff members. *See Perez*, 2014 WL 106927, at *2; *see also infra*, Section III.D and E.

Regarding the State of Texas in particular, the Court has already noted that, "[f]or the purposes of discovery in this redistricting litigation, 'the State of Texas' is made up of state executive agencies or officials who have information that is relevant to the factual basis for the claim." Dkt. 279 at 6. In response to LULAC Plaintiffs' request for clarification of which specific official or executive agency authored DOC_0001982, DOC_0006868, and DOC_0006873, Respondents stated that they "are not advised what those names mean." Ex. D at 2. Based on the definition of the "the State of Texas" set forth by the Court, the author is a member of the executive branch. Accordingly, any communication with the State of Texas constitutes a waiver of the legislative privilege, and documents reflecting such communications must be disclosed.

      **B.**   **The Remaining Documents are Relevant to LULAC Plaintiffs' Claims.**

Documents sought by only LULAC Plaintiffs are also relevant and vital to Plaintiffs' claims under the Voting Rights Act and the U.S. Constitution. *See* Ex. L. Draft redistricting plans, the data used in drafting those plans, Respondents' communications (especially with map-drawers), and other legislative materials bear directly on whether "invidious discriminatory purpose was a motivating factor" in redistricting. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977). Such legislative materials also bear on whether "the policy

underlying the State's . . . use of the contested practice or structure is tenuous" under the discriminatory results test for the challenged redistricting plans. *Thornburg v. Gingles*, 478 U.S. 30, 45 (1986) (citation omitted). Thus, as other courts in this Circuit have concluded in similar circumstances, these documents certainly bear on the determination of discriminatory purpose, the effect of discriminatory practices, and the extent to which race played a role in redistricting decisions. *See LUPE*, 2022 WL 1667687, at *6; *see also Gilby*, 471 F. Supp. 3d at 766; *Veasey v. Perry*, No. 2:13-CV-193, 2014 WL 1340077, at *2 (S.D. Tex. Apr. 3, 2014).

### C. Respondents May Not Withhold the Remaining Challenged Documents Based on the Legislative Privilege.

#### 1. *All Documents Shared Between the Legislative Branch and any Third Parties Must be Disclosed.*

With respect to waiver of privilege for withheld documents that were shared between the legislative branch and any third parties. *See supra*, Section III.A. LULAC Plaintiffs conferred with Respondents regarding the identity of several individuals listed in Exhibit M. *See* Ex. C at 3-4. Respondents indicated that several of those individuals did not work for the Texas Legislature at the time the communications were made. *See* Ex. D at 2.[4] For some individuals—including the "State of Texas," abbreviations, and alphanumeric combinations—counsel for Respondents stated that they were "not advised what those names mean." *Id.* To the extent that the identity of these individuals cannot be determined, Respondents have failed to show that the legislative privilege applies, because they have not shown that those individuals are legislators or legislative staff. Accordingly, Respondents cannot withhold any of the documents listed in Exhibit M on the basis of the legislative privilege.

#### 2. *The Legislative Privilege Does Not Apply to Documents Containing Fact-Based Information.*

---

[4] Those individuals include: Michael Hankins, Lewis Luckenbach, Allison Schmitz, Zachary Stephenson, Alelhie Lila Valencia, and James Whitehorne. *See* Ex. D at 2.

The Privilege Log lists several documents that contain fact-based information that must be disclosed. Ex. N. The legislative privilege "does not apply . . . to 'documents containing factually based information used in the decision-making process or disseminated to legislators or committees, such as committee reports and minutes of meetings,' or 'the materials and information available [to lawmakers] at the time a decision was made." *LUPE*, 2022 WL 1667687, at *2 (quoting *Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, No. 11 C 5065, 2011 WL 4837508, at *9 (N.D. Ill. Oct. 11, 2011)). Respondents list several such documents, such as calendar entries (Ex. O), invoices, contracts, and retention letters (Ex. P).

Additionally, Respondents state that several of the documents contain data that was used by the legislators in enacting the challenged redistricting legislation. Ex. N. Further, when LULAC Plaintiffs sought clarification regarding certain entry descriptions—such as "[c]onfidential bill draft and related materials" and "confidential bill draft and related materials," Respondents acknowledged that those documents included but were not limited to data, reports, analyses, notes, figures and other information, and stated that they could not "reveal the specific substance of the materials because doing so would reveal the substance of what the [Respondents] considered" in enacting the challenged redistricting legislation. Ex. D at 3. Because all of the documents included in Exhibit N—as well as Exhibits O and P—include "factually based information used in the decision-making process or disseminated to legislators or committees," that information must be disclosed. *LUPE*, 2022 WL 1667687, at *2.

       3. *The Legislative Privilege Should Yield for any Document to Which it Applies.*

Even if applicable, the legislative privilege should yield to the need for discovery here. To determine whether the privilege should yield, courts in this Circuit and elsewhere have

consistently considered the following five factors: "(1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the seriousness of the litigation and issues involved; (4) the role of the government in the litigation; and (5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *Perez*, 2014 WL 106927, at *2. Further, as the Court recently emphasized, the legislative privilege "must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." Dkt. 282 at 2 (quoting *Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Parish Gov't.*, 849 F.3d 615, 624 (5th. Cir. 2017)); *see also Perez*, 2014 WL 106927, at *2.

All five factors weigh in favor of disclosure. First, the evidence sought is both relevant and vital to Plaintiffs' claims under the Voting Rights Act and the U.S. Constitution, as discussed above. *See supra*, Section III.B. The second factor—the availability of other evidence—also weighs in favor of disclosure. As other courts in this Circuit have concluded—including in the context of election law—this factor "weighs in favor of disclosure 'given the practical reality that officials "seldom, if ever, announce on the record that they are pursuing a particular course of action because of their desire to discriminate against a racial minority."'" *LUPE*, 2022 WL 1667687, at *6 (quoting *Veasey*, 2014 WL 1340077, at *3). LULAC Plaintiffs have alleged that the Legislature enacted the challenged redistricting plans with an intent to discriminate against racial minorities and that those plans had a discriminatory effect, and LULAC Plaintiffs are therefore entitled to examine the most probative evidence regarding that legislation.

The third and fourth factors—the seriousness of the litigation and issues involved, and the role of the government in the litigation—also weigh in favor of disclosure. Plaintiffs "raise

9

serious questions whether [the redistricting legislation] complies with the Voting Rights Act and the . . . Fourteenth Amendment[].." *LUPE*, 2022 WL 1667687, at *6; *see also Harding v. Cnty. of Dallas*, No. 3:15-CV-1031-D, 2016 WL 7426127, at *6 (N.D. Tex. Dec. 23, 2016); *Veasey*, 2014 WL 1340077, at *2 ("[T]he importance of eliminating racial discrimination in voting—the bedrock of this country's democratic system of government—cannot be overstated."). And similarly, there is no question regarding the role of the government in this litigation: the Legislature enacted the challenged redistricting plans. *See LUPE*, 2022 WL 1667687, at *6 ("As the LULAC Plaintiffs have alleged that the Texas legislature intentionally discriminated against minority voters, the decisionmaking process . . . *is* the case[.]" (quotation omitted)).

Finally, there is no possible chilling effect on governmental employees. Texas legislators and executive officials have participated in the discovery process—including through document production, depositions, and trial appearances—associated with redistricting challenges in dozens of cases for more than five decades of redistricting litigation. *See, e.g.*, *Perez* 2014 WL 106927, at *1. And yet, even after courts have previously concluded that the legislative privilege should yield, no chilling effect has occurred. *See Veasey*, 2014 WL 1340077, at *2. In any event, even if this factor weighed against disclosure, courts have repeatedly found—particularly in the voting rights context—"that the need for accurate fact finding outweighs any chill to the legislature's deliberations." *LUPE*, 2022 WL 1667687, at *7; *see also Veasey*, 2014 WL 1340077, at *2; *Baldus v. Brennan*, No. 11-CV-562, 11-CV-1011, 2011 WL 6122542, at *2 (E.D. Wis. Dec. 8, 2011) (concluding that the potential "chilling effect" on the state legislature "is outweighed by the highly relevant and potentially unique nature of the evidence").

### D. Attorney-Client Privilege

Respondents incorrectly assert the attorney-client privilege over several documents. "Because the attorney-client privilege has the effect of withholding relevant information from the fact-finder, it is interpreted narrowly so as to appl[y] only where necessary to achieve its purpose." *E.E.O.C.*, 876 F.3d at 695 (quotation omitted). To that end, "courts have stated that simply describing a lawyer's advice as 'legal,' without more, is conclusory and insufficient to carry out the proponent's burden of establishing attorney-client privilege," and that documents sent from one staff member to another are not privileged "merely because a copy is also sent to counsel." *Id.* at 696. "Ambiguities as to whether the elements of a privilege claim have been met are construed against the proponent." *Taylor Lohmeyer L. Firm P.L.L.C. v. United States*, 957 F.3d 505, 510 (5th Cir. 2020) (cleaned up).

Several types of information do not fall within the scope of the attorney-client privilege. For instance, communications that relay "facts, not legal advice" are "not privileged," *LUPE*, 2022 WL 1667687, at *7, "even if the client learned those facts through communications with counsel," *id.* (quoting *Thurmond v. Compaq Comput. Corp.*, 198 F.R.D. 475, 483 (E.D. Tex. 2000)). Additionally, "documents concerning 'advice on political, strategic or policy issues . . . [are not] shielded from disclosure by the attorney-client privilege.'" *Baldus v. Brennan*, No. 11-CV-1011 JPS-DPW, 2011 WL 6385645, at *3 (E.D. Wis. Dec. 20, 2011) (quoting *Evans v. City of Chicago*, 231 F.R.D. 302, 312 (N.D. Ill. 2005)); *cf. Perez v. Perry*, No. SA-11-CV-360-OLG-JES-XR, 2014 WL 3359324, at *1-2 (W.D. Tex. July 9, 2014) (noting that attorney-client privilege does not protect communications between legislator and outside counsel where "the topics of these communications are political in nature").

As noted above, several of the documents relay "facts, not legal advice" and are therefore not privileged. *LUPE*, 2022 WL 1667687, at *7; *see supra*, Section III.C.2. Respondents

11

withhold some of those documents because they are invoices, contracts, or retention letters, Ex. P, but those documents are also generally not protected as privileged—and the rare exception applies only when the arrangement "would itself reveal a confidential communication." *Taylor*, 957 F.3d at 510 (quotation omitted).

Further, several of these documents (all listed in Exhibit Q) concern, at most, "advice on political, strategic or policy issues" and therefore must be disclosed. *Baldus*, 2011 WL 6385645, at *3 (quoting *Evans*, 231 F.R.D. at 312); *see also Perez*, 2014 WL 3359324, at *1. Indeed, several of those entries do not even provide a boilerplate statement that the communications were made for legal advice, stating simply that they include "input from attorneys" or failing to mention an attorney anywhere in the description. *See* Ex. Q. Moreover, Respondents cannot "plausibly claim that a threat of litigation existed at the time of [these] communications," as they concerned, at most, "legislation that was still being debated and amended, and the legislation was not guaranteed to pass." *LUPE*, 2022 WL 1667687, at *7.

In any event, where there is a mixed discussion of legal and non-legal advice (*e.g.*, business, political, strategic, or policy), "courts should consider the 'context . . . key,' ultimately seeking to glean the 'manifest purpose' of the communication." *See E.E.O.C.*, 876 F.3d at 696 (quoting *Exxon Mobil Corp. v. Hill*, 751 F.3d 379, 382 (5th Cir. 2014)). The documents in question are not legal documents, as these documents were created for the purpose of enacting legislation.[5] Accordingly, Respondents cannot withhold these documents based on the attorney-client privilege.

Further, for many of the documents over which Respondents assert attorney-client privilege, that privilege is waived. "Disclosure of attorney-client communications to a third

---

[5] To the extent that Respondents' failure to establish privilege is not alone sufficient to warrant disclosure, *in camera* review may be necessary to distinguish between documents providing only legal advice versus those that concern policy, political, strategic, or technical matters.

party who lacks a common legal interest waives the attorney-client privilege," and the "mere speculation that" every recipient of a document "shared a cognizable common interest is insufficient to establish that the privilege applies." *Perez*, 2014 WL 3495414, at *2 (quotation omitted). Moreover, parties have a "common legal interest" if they are "co-defendants in actual litigation" or "potential" co-defendants. *United States v. Newell*, 315 F.3d 510, 525 (5th Cir. 2002). To that end, courts in this Circuit have emphasized that there is no "Fifth Circuit case law concluding that parties may have a common legal interest in anything other than 'actual litigation.'" *LUPE*, 2022 WL 1667687, at *7 (citing *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710–13 (5th Cir. 2001)).

Here, even if it could initially be invoked, the attorney-client privilege has been waived for documents that reflect communications between the legislative branch and individuals outside of the legislative branch. *See* Ex. M. Those individuals could not "plausibly claim that a threat of litigation existed *at the time of the communications*," because, again, those "communications concerned," at most, "advice in drafting legislation that was still being debated and amended, and the legislation was not guaranteed to pass." *LUPE*, 2022 WL 1667687, at *7 (emphasis added). Accordingly, communications between the legislators and individuals outside of the legislative branch are not covered by the attorney-client privilege, and those documents should be disclosed.

### E. Work Product Doctrine

Finally, Respondents' assertions of the work product doctrine are also unavailing. *See* Ex. R. As other courts in this Circuit have concluded, "[d]ocuments prepared for one who is not a party to the present suit are wholly unprotected" by the work product doctrine. *LUPE,* 2022

WL 1667687, at *8 (quotation omitted). "The State Legislators are not parties to the underlying suit, nor can they be. Thus, any assertions of work-product protections are improper." *Id.*

Further, as with the legislative and attorney-client privileges, courts must strictly construe the work product doctrine. *See Harding*, 2016 WL 7426127, at *11. To qualify for protection under the work product doctrine, "'the primary motivating purpose' behind the creation of the document must be to aid in possible future litigation." *Id.* at *10 (quoting *In re Kaiser Aluminum & Chem Co.*, 214 F.3d 586, 593 (5th Cir. 2000)). "If the document would have been created without regard to whether litigation was expected to ensue, it was made in the ordinary course of business and not in anticipation of litigation." *Id.* at *10; *see also Bethune-Hill v. Virginia State Bd. of Elections*, 114 F. Supp. 3d 323, 348 (E.D. Va. 2015) ("[o]therwise identical work by an attorney is not protected . . . if it was created in the ordinary course of business." (quotation omitted)). Moreover, just as divulging records or communications with third parties waives any legislative privilege, such sharing also waives any work product protection claim. *See, e.g.*, *Finalrod IP, LLC v. John Crane, Inc.*, No. MO:15-CV-097-DC, 2019 WL 13074600, at *2 (W.D. Tex. Mar. 22, 2019) ("Generally, when privileged information is divulged to a third party, attorney-client and work-product protection cease to exist.").

In the context of the legislative process, courts have emphasized that "[l]egislative counsel could not, for example, withhold documents pertaining to pending legislation on the basis of the work product doctrine because the legislature could *always* have a reasonable belief that *any* of its enactments would result in litigation. That is the nature of the legislative process," *Bethune-Hill*, 114 F. Supp. 3d at 348 (cleaned up), as "it often involves contentious issues that the public may challenge as unconstitutional," *Baldus*, 2011 WL 6385645, at *2; *see also Bethune-Hill*, 114 F. Supp. 3d at 348. As such, "materials prepared in the ordinary course of a

party's business"—for example, the Legislature enacting laws—"even if prepared at a time when litigation was reasonably anticipated, are not work product." *See Baldus*, 2011 WL 6385645, at *2 (quotation omitted).

Here, the documents withheld on the basis of the work product doctrine were prepared for pending legislation—and Respondents provide no information to show that the primary purpose of the documents is instead to aid in possible future litigation. *See Baldus*, 2011 WL 6385645, at *2 (concluding that work product of government-relations specialist at law firm retained by legislature must be disclosed); *see also Bethune-Hill*, 114 F. Supp. 3d at 348; *Harding*, 2016 WL 7426127, at *11. And to the extent that Respondents have exchanged documents with individuals outside of the legislative branch, they have waived any claim they could make to the work product doctrine. Ex. R; *see also Finalrod IP,* 2019 WL 13074600, at *2.

Accordingly, Respondents may not withhold the documents based on the work product doctrine.

### IV.   CONCLUSION

For the foregoing reasons, LULAC Plaintiffs respectfully request that the Court grant their motion to compel.

Dated: July 18, 2022                                    Respectfully submitted,

*/s/ Nina Perales*
Nina Perales
Fátima Menendez
Kenneth Parreno*
Mexican American Legal Defense and Educational Fund (MALDEF)
110 Broadway Street, Suite 300
San Antonio, TX 78205
(210) 224-5476
Fax: (210) 224-5382

*Admitted *pro hac vice*

*Counsel for LULAC Plaintiffs*

## CERTIFICATE OF CONFERENCE

I hereby certify that, on July 5, 2022, July 14, 2022, July 17, 2022, and July 18, 2022, counsel for LULAC Plaintiffs conferred with counsel for Respondents concerning the subject of the instant motion. Counsel for Respondents stated that they opposed the relief sought.

*/s/ Nina Perales*
Nina Perales

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that she has electronically submitted a true and correct copy of the above and foregoing via the Court's electronic filing system on the 18th day of July 2022.

*/s/ Nina Perales*
Nina Perales