

## KEN PAXTON

ATTORNEY GENERAL OF TEXAS

July 14, 2022

VIA EMAIL

Nina Perales
*Counsel of Record, LULAC Plaintiffs*
Vice President of Litigation, MALDEF
110 Broadway, Suite 300
San Antonio, TX 78205
*All Other Counsel to LULAC Plaintiffs*

*Re: Privilege Log for Documents Withheld in Connection with LULAC Subpoenas*

Counsel,

This message is to respond to your letter of July 5th, 2022. Counsel for the legislators and legislative staff ("Legislators") trust that this letter will address plaintiffs' concerns, and that presentation of any conflict to the Court can be avoided.

As an initial matter, the Legislators do not intend to produce any of the documents that are presently the subject of the United States' motion to compel other than those already produced after further review. ECF 351. Those documents are withheld based on similar arguments here. As we explained in our email of July 12th, the most efficient course of action is to postpone any formal dispute regarding those documents until the Court rules on the motion to compel. To the extent the Court orders the Legislators to produce documents to the United States that the LULAC plaintiffs also seek, the Legislators will of course produce them, while preserving all arguments for appeal. To the extent there are additional documents responsive to the LULAC subpoenas that have been withheld for privilege, the Legislators will of course consider the Court's order and produce those additional documents to the extent they fall within the reasoning of the Court's order, while preserving all arguments for appeal.

With respect to the Lieutenant Governor, although the Texas Constitution places him in the executive department, he plainly exercises many legislative duties, and is entitled to the legislative privilege in connection with actions taken in furtherance of those duties. He is, among other things, President of the Senate, appoints chairs and members of committees, and participates in debate and votes in some circumstances. His legislative powers encompass the actions stated in the privilege assertions.

With respect to the individuals about whom the LULAC plaintiffs seek clarification, Letter at 3, the Legislators understand those individuals to have the following positions:

| Name | Position | Time Period |
|------|----------|-------------|
| Ashley Brooks | Legislative Director to Joan Huffman | 2018 to Feb. 2022 |
| Sophia Copeland | Deputy Legislative Director to Representative Gervin-Hawkins | 2019 to April 2022 |
| John Gibbs | Policy Director to the Lieutenant Governor | 2017 to Present |
| Michael Hankins | Research Data Analyst, Texas Legislative Council | Not advised |
| Lewis Luckenbach | Not employed by the Texas Legislature | N/A |
| Jared May | Deputy Director, Texas Legislative Council | 2006 to Present |
| Allison Schmitz | Legislative Director and General Counsel to Representative Jessica Farrar | 2013 to 2015 |
| Zachary Stephenson | General Counsel to Senator Brandon Creighton and Representative Will Metcalf | 2014 to 2016 2016 to 2019 |
| Alelhie Lila Valencia | Senior Demographer, Texas Demographic Center | 2009 to March 2021 |
| James Whitehorne | U.S. Census Bureau, Redistricting Office | 2015 to Present |
| Sarah Wilcox | Clerk, Senate Redistricting Committee | Not advised. |

For the authors with indeterminate names, see Letter at 4, counsel for the Legislators are not advised what those names mean. They have provided the information available to them. The same is true of documents bearing the author "State of Texas." All counsel can do is provide the information they have access to.

Plaintiffs also seek clarification on the meaning of the description "confidential bill draft and related materials." <u>Letter at 4</u>. These are materials that the Legislators used in furtherance of their consideration of the confidential bill drafts, including but not limited to data, notes, figures, and other information. The Legislators cannot reveal the specific substance of the materials because doing so would directly reveal the substance of *what* the Legislators considered as they considered whether and why to support certain legislative redistricting initiatives. The same is true of "confidential document[s] relating to draft redistricting legislation." These documents include but are not limited to data, reports, analyses, notes, figures, and other information, not considered as data alone and instead inextricably intertwined with the creation and consideration of draft redistricting legislation. Describing the substance of the document would necessarily reveal what motivated the Legislators in the creation of legislation.

Plaintiffs also seek clarification about several documents that are listed on separate privilege logs sent to the United States and LULAC plaintiffs. <u>Letter at 5</u>. As an initial matter, any perceived differences do not appear to be material to the privilege analysis. Whether a document contains a draft amendment, data, figures, notes, talking points, or other materials, those documents are all subject to the legislative privilege if used in furtherance of the legislative duty to consider, formulate, and inform a Legislator's vote on draft redistricting legislation. Likewise, to the extent attorneys used the draft amendment, data, figures, notes, talking points, or other materials in furtherance of providing legal advice on the draft redistricting legislation, those materials (and any related communications) are subject to the attorney client privilege. Subject to those explanations, the Legislators confirm that DOC_0002023 is confidential data used in furtherance of the consideration of redetecting legislation and that DOC_0352895 is draft talking points on draft redistricting legislation, prepared for Senator Huffman to address the Senate on the particular bill at issue, and in furtherance of her duty to consider and facilitate the passage of redistricting legislation. The Legislators address only these documents because these are the only documents mentioned in plaintiffs' letter.

Plaintiffs list several other reasons for seeking the documents described in the privilege log. <u>Letter at 5–6</u>. The Legislators do not purport to give the full argument for why plaintiffs' assertions are incorrect—nor are they required to do so here. But to briefly, though not exhaustively, address those assertions:

- Communications with non-legislators do not waive the legislative privilege where purpose of the communication is in furtherance of legislative duties;

- The Lieutenant Governor is entitled to assert the legislative privilege in the circumstances presented in the privilege log;

- A communication that involves political, strategic, or policy issues may still be subject to the attorney client privilege if a primary purpose of the

communication was to provide legal advice. Moreover, communications regarding political, strategic, or policy issues are subject to the legislative privilege because they are made in furtherance of the legislators' duty to formulate, consider, and pass redistricting legislation;

- Invoices are subject to the attorney-client and legislative privilege to the extent that the descriptions of the work provided and the scope and purpose of the representation reveal legal advice, legal strategy, or confidential communications regarding draft legislation;

- Calendar invitations for confidential meetings held to discuss redistricting legislation are subject to the legislative privilege;

- The legislative privilege should not yield even if the Court were to apply the balancing test set forth in *Rodriguez v. Pataki*, 280 F. Supp. 2d 89 (S.D.N.Y. 2003).

Plaintiffs also purport to "reserve the right to assert additional reasons not mentioned in this letter to support the disclosure of any document included in the Privilege Log." Letter at 6 n.2. To the extent plaintiffs assert additional reasons for the disclosure of the documents at issue, the Federal Rules require them to confer with the Legislators before seeking relief from the Court based on those reasons. Fed. R. Civ. P. 37(a).

Finally, plaintiffs ask the Legislators to search documents in the custody of former legislators, employees, staff members, interns, or agents. Letter at 6–7. However, the Legislators are not required to search for such documents because they are not within the Legislators' possess, custody, or control and there does not appear to be any indication that there are any responsive documents in the custody of former legislators, employees, staff members, interns, or agents.

Most importantly, any motion to compel would be premature at this stage and an inefficient use of the parties' and the Court's resources. A motion to compel the same or similar categories of documents by the United States is currently pending before the Court. The Court's resolution of the United States' motion to compel will address many—if not all—of the issues presented in the LULAC plaintiffs' letter. To understand why a motion to compel would not burden the parties and the Court with the cost of litigating the same issues twice, could you please address the following:

i.   Which documents, if any, do the LULAC plaintiffs seek that are not at issue in the United States' motion to compel? Please identify using Control Numbers or the "Entry" field listed in each privilege log.

ii.  Which additional arguments, if any, do the LULAC plaintiffs advance in support of disclosure that you contend are distinct from the issues advanced by the United States?

iii.   Besides DOC_0002023 and DOC_0352895—which are addressed above—which documents do you contend have materially different descriptions from the privilege log provided to the United States? Please identify using Control Numbers or the "Entry" field listed in each privilege log. In addition, please explain your understanding of a "material" difference, as you used that term in earlier correspondence.

Sincerely,

/s/ Jack DiSorbo

Jack DiSorbo
Assistant Attorney General
Special Litigation Unit
Office of the Attorney General
(713) 628-7407

*Counsel for Defendants and Legislators*