IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, | § § § § § | |
| Plaintiffs, | § § | |
| EDDIE BERNICE JOHNSON, *et al.*, | § § § | Case No. 3:21-cv-00259 |
| Plaintiff-Intervenors, | § § | [Lead Case] |
| v. | § § § | |
| GREG ABBOTT, *et al.*, | § § § | |
| Defendants. | § | |
| ROSALINA RAMOS ABUABARA, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § § | Case No. 1:21-cv-965 [Consolidated Case] |
| JOHN SCOTT, *et al*, | § § § | |
| Defendants. | § | |

**OPPOSITION TO MOTION TO COMPEL**

## TABLE OF CONTENTS

Introduction ..................................................................................................................................1

Background ..................................................................................................................................2

Argument .....................................................................................................................................5

    I.   The SOS Documents Are Irrelevant .................................................................................5

    II.  Plaintiffs Delayed in Seeking the SOS Documents .......................................................7

    III. The Volume of Documents Plaintiffs Demand is Unduly Burdensome .................9

    IV. If Some Production is Warranted, a Sampling Approach is Reasonable ...............10

Conclusion .................................................................................................................................11

Certificate of Service ................................................................................................................11

**INTRODUCTION**

The LULAC and Abuabara plaintiffs move to compel the production of approximately 60,000 documents within the custody of the Texas Secretary of State. ECF 410. That motion should be denied because (i) the documents plaintiffs' seek are irrelevant, (ii) plaintiffs consistently delayed in seeking the documents, and (iii) being made to review and produce so many documents when discovery has already closed is unduly burdensome and disproportionate to the needs of the case.

As an initial matter, the documents plaintiffs seek are not relevant to the redistricting claims at issue here. Documents already produced by the Secretary confirm as much. They consist of, for instance, election advisories sent to county election administrators, giving guidance on how to conduct elections in light of the new electoral maps. Ex. A, B. The SOS also sends emails to county election officials, explaining various election deadlines, line the candidate filing period. Ex. C. The Texas Secretary of State had no role in the legislative redistricting process, and no party has offered evidence to the contrary at any point during the litigation.

Also, the record reflects that plaintiffs do not seriously want or need these documents. The Abuabara and LULAC plaintiffs have substantially delayed in seeking the documents at issue. On at least two occasions, plaintiffs delayed three weeks in responding to emails addressing the SOS documents. Only now, after the close of discovery, do plaintiffs' press their requests and demand the review of tens of thousands of documents they do not actually need. In addition, although counsel for the Abuabara plaintiffs has purported to act on behalf of all plaintiffs in seeking the SOS documents, only the LULAC plaintiffs join in their motion. All other plaintiff groups sent document requests to SOS but have apparently decided not to pursue the production of these irrelevant materials.

Finally, it is unduly burdensome for plaintiffs to demand the review of 60,000 documents at the close of discovery, and in the presence of many other pressing exigencies. The general industry standard for document review is 40–60 documents per hour. *See Lawson v. Spirit AeroSystems, Inc.*, No.

1

6:18-cv-1100, 2020 WL 6343292, at *4 (D. Kan. Oct. 29, 2020) (collecting sources). Assuming a review rate of sixty documents per hour, it would take 1,000 hours to review the SOS documents. Perhaps the review would take more time, perhaps it would take less. But it is beyond debate that plaintiffs are demanding that Defendants reallocate substantial resources away from depositions, expert disclosures, dispositive motions, trial preparation, and other critical obligations. Especially under this compressed trial schedule, plaintiffs' demand is not reasonable. The Court should deny the motion to compel.

## BACKGROUND

The record of the parties' correspondence reveals that plaintiffs consistently delayed in seeking the documents at issue. The United States was the first party to seek documents from SOS, sending document requests on January 12th, 2022. Defendants timely served objections and responses to those documents, and made their first production in response to those requests. STATE-REDISTRICT-ING_000001 to STATE-REDISTRICTING_000394.

The United States sent the first proposed search terms on March 2nd. The initial search terms yielded 324,107 unique hit counts plus family. This number presented a plainly unreasonable number of documents to search, and so the parties met to confer on the subject of revised terms on March 18th. After March 2nd, the LULAC and Abuabara plaintiffs also sent document requests to SOS, similar in substance to the United States' requests. ECF 410-3, 410-7. They joined Defendants and the United States at the March 18th meet and confer. Ex. D (previously filed as ECF 231-4).[1]

At the March 18th meeting, Defendants specifically objected to the 324,107 hit count as being unreasonable and unduly burdensome. The United States directed Defendants *not* to search the SOS documents, explaining that they were not presently pressing those documents requests. No counsel for private plaintiffs objected to that direction. On March 29th, Defendants followed up with the

---

[1] Counsel for the Abuabara plaintiffs dispute that they attended the March 18th meet and confer. Ex. E at 6, 7–8 (emails of 06/24 1:39 pm and 06/24 9:07 am). But Defendants' email of March 29th indicates that counsel was present. *See* Ex. D at 1, 3. Nor did counsel for the Abuabara plaintiffs ever seek to correct Defendants' email.

parties, reminding all relevant plaintiffs the requests remained pending, and that revised search terms were needed to facilitate a reasonable review. In pertinent part, the email provided as follows: "Regarding the SOS emails, in the meet and confer, we agreed that plaintiffs don't intend for Defendants to review the 324,000 records. And as Dan [Freeman, counsel to United States] directed, we are not presently reviewing these recording according to DOJ's initial proposed search terms for responsiveness to the DOJ subpoena [RFPs]. Whenever we receive amended search terms, or limitations on the present terms, we would be happy to discuss a mutually acceptable volume of records for review." Ex. D at 3. Defendants did not receive a response to this email.

Defendants timely responded to the LULAC and Abuabara document requests, serving objections, *see* Ex. ECF 410-5, 410-8, and producing documents STATE-REDISTRICTING_000001 to STATE-REDISTRICTING_000669. The Abuabara plaintiffs requested to confer on the responses, and the parties did so on April 22nd. At that meeting, Defendants agreed to amend or withdraw a number of objections.[2] On April 25th, the Abuabara plaintiffs sent a letter summarizing that call from their perspective. There, counsel explains the parties discussed the search terms for the SOS documents, and committed to follow up with revised search terms. That same day, Defendants responded to plaintiffs' email, and reiterated, among other things, the need for revised search terms. Ex. E at 26.

Delaying three weeks, the Abuabara plaintiffs responded to the April 25th email on May 13th and attached revised proposed search terms. Defendants responded to the email on May 17th, reporting hit counts for the revised search terms. Ex. E at 20–25. The new terms yielded 240,096 unique hit counts plus family, not substantially reduced from the hit counts from the original proposed search terms. Defendants explained that these hit counts were still unduly burdensome, especially in light of the limited relevance to the underlying issues. Plaintiffs' responded to ask a clarifying question

---

[2] In the interest of efficiency, the parties agreed for Defendants to serve the amended objections and responses, *see* ECF 410-11, by June 2nd because the Abuabara plaintiffs served additional document requests, *see* ECF 410-10, which were also due that day. The amended requests did not affect the substance of the dispute over the SOS documents.

3

regarding the scope of the hits, and Defendants responded the same day (May 17th). Ex. E at 20.

The Abuabara plaintiffs again delayed in sending revised search terms, waiting a full twenty-three days to eventually send new terms on June 9th. Ex. E at 19. Defendants responded on June 14th, attaching the hit counts on the revised terms. *Id.* at 13–18. The terms yielded 231,708 unique hit counts plus family, hardly reduced from the previous 240,096. Plaintiffs responded on June 14th that they would revert back with new terms. They did so a full week later, on June 21st. *Id.* at 12.

The new terms yielded 59,733 unique hit counts plus family. With three weeks left before the close of discovery, Defendants explained that this total was disproportionate to the needs of the case in light of the documents' minimal probative value and Defendants' many other pressing obligations. For instance, counsel have defended or taken thirty-four depositions since the beginning of June, and will defend or take at least thirty more. Defendants have also responded to over forty document requests and subpoenas, and produced tens of thousands of documents. To summarize:

- TEX_LEG_REDISTRICTING_000001 to TEX_LEG_REDISTRICTING_018258;
- LULAC_REDISTRICTING_000001 to LULAC_REDISTRICTING_015165;
- MALC_REDISTRICTING_000001 to MALC_REDISTRICTING_013850;
- NAACP_REDISTRICTING_000001 to NAACP_REDISTRICTING_018188;
- BILL_FILE_0000001 to BILL_FILE_0018874; and
- STATE-REDISTRICTING_000001 to STATE-REDISTRICTING_000669

Defendants have also filed responsive pleadings to seven amended complaints, designed experts to respond to twenty-one plaintiffs' experts, will take each of those expert's deposition, and will file dispositive motions after that.

Defendants explained that reviewing the 60,000 documents would require counsel to dedicate substantial resources. To illustrate that none of the documents were relevant to plaintiffs' claims, Defendants offered to search a sample of 500 documents (125 for each of the four search groups

4

plaintiffs' proposed). Ex. E at 10. Plaintiffs flatly rejected this offer. Seeking compromise, Defendants offered to search a random sample of 2,500 documents, which would offer a larger volume of documents, which still making the same point (the irrelevance of the *other* documents). *Id.* at 1–2.

Defendants proposed two methods for calculating these samples. First, Defendants proposed to sample the 60,000 documents that hit on plaintiffs' revised search terms, according the proportionate size of the search groups. Plaintiffs' four search groups yielded 24,681, 6,079, 20,266, and 8,707 hits, so a proportional sample (using 2,500 documents as the denominator) equates to 1,050, 250, 850, and 350 hits. Ex. E at 1–4. Second, Defendants proposed placing several limitations on plaintiffs' search, designed to target documents most likely to be relevant. Specifically, Defendants proposed:

- To limit the date range to 01/01/2021 to 10/25/2021 (instead of 01/01/2019 to present);

- To limit custodians to the four people who yielded the most hits: Election Internet, Kristy Hart, Christina Adkins, and Keith Ingram; and

- To make certain amendments to the Boolean search terms, restricting several strings that yielded especially high hit counts.

*Id.* at 2–4. These revised terms would yield 34,122 unique hit counts plus family. Under this new sum, Defendants proposed to search a sample of 2,500 documents, divided among the search groups. *Id.* Plaintiffs also rejected this offer. *Id.* at 1. They refused to limit their search terms in order to reduce the overall hit count, instead insisting that searching 60,000 documents does not impose an unreasonable burden. The LULAC and Abuabara plaintiffs then filed the instant motion on July 6th.

## ARGUMENT

### I. The SOS Documents Are Irrelevant

The motion to compel should be denied because plaintiffs have failed to show that the documents they seek are relevant. "The party seeking discovery bears the initial burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence." *Crossland v. Nationwide Mut. Ins. Co.*, No. 3:18-cv-85, 2018 WL 4905354, at *1 (W.D. Tex.

5

Oct. 9, 2018) (Guaderrama, J.); *see also Trilegiant Corp. v. Sitel Corp.*, 275 F.R.D. 428, 431 (S.D.N.Y.2011).

Plaintiffs' relevance argument is weak: "The Secretary of State is the chief election officer for the State of Texas, and his office is likely to possess documents relating to elections." Mot. at 6. Although SOS certainly has election data, that data is available to the public, and thus equally available to plaintiffs. For example, see Texas Secretary of State Election Results, sos.state.tx.us/elections/historical/index.shtml. Moreover, plaintiffs *already have* the election data they seek. The Abuabara and LU-ALC plaintiffs have both disclosed expert reports that assess election data at length. The notion that plaintiffs need the SOS documents to analyze voting patterns is not credible.

Plaintiffs suggest that Defendants have waived any relevance argument. Mot. at 7–8. That contention is baseless. Defendants have consistently objected to searching and producing the SOS documents on the basis that they are of only minimal relevance, if at all. Indeed, the Abuabara plaintiffs' April 25th letter directly responds to Defendants' relevance objection. *See* Ex. ECF 410-9 at 2 ("We will address your general concerns about relevance and burden in connection with our discussion of search terms and custodians."); *see also* Ex. E at 10 (email of 06/24 12:52 am) ("It is evident that the documents in the possession of the Secretary of State are not a priority for plaintiffs. And rightly so—Defendants have consistently objected to these requests on the basis that the SOS documents have little to no relevance to plaintiffs' claims."); ECF 410-5, 410-8, 410-11 (RFP objections).

Plaintiffs also seek support from *Gilby v. Hughes*, 471 F. Supp. 3d 763 (W.D. Tex. 2020); Mot. at 6, but that case only highlights the irrelevance of the documents they demand. In *Gilby*, unlike here, the Secretary of State had direct involvement in the legislative process. That case involved House Bill 1888, which provided regulations on permissible hours of operation for temporary polling places. *See* 86th Tex. Leg., Reg. Sess., H.B. 1888 (2019). In furtherance of drafting that legislation, several legislators consulted with officials from SOS, due to the agency's expertise in providing guidance on conducting elections. The movants in *Gilby* sought the production of SOS communications with

6

legislators and related documents. 471 F. Supp. 3d at 765–68.

The difference here is that plaintiffs offer absolutely no evidence that SOS was involved in the legislative redistricting process. Defendants consistently conveyed in written and oral communications that SOS neither consulted with legislators and legislative staff nor gave any input in furtherance of the consideration of the draft electoral maps. Plaintiffs have not offered a single exhibit they contend shows SOS involvement in the redistricting process. Indeed, the legislators whom plaintiffs sent subpoenas have produced tens of thousands of documents, but none of them are addressed to, received from, or authored by anybody in SOS. (And the same is true of the entries in the legislators' privilege logs.) Plaintiffs have not made the required relevance showing.

But even if the SOS documents meet the threshold for relevance, they are still of minimal probative value. It is well-established that searching for and producing documents of little relevance imposes a greater burden on the party responding to the discovery request. *See, e.g.*, *Crownover v. Crownover*, No. 2:15-cv-132, 2017 WL 10575859, at *5 n.6 (W.D. Tex. July 12, 2017); *U.S. EEOC v. AutoZone, Inc.*, No. 1:14-cv-3385, 2016 WL 7231576, at *6 (N.D. Ill. Dec. 14, 2016) (denying motion to compel) ("The Court is not convinced of the relevance of these records to AutoZone's defenses, and what relevance they have, if any, does not outweigh the potential burdens on the third party employers and the Claimants."). And so to the extent the Court determines that the SOS documents are conceptually relevant, it should deny the motion to compel because, as explained below, any *de minimis* relevance is outweighed by the substantial burden reviewing these documents at this late stage would impose.

## II. Plaintiffs Delayed in Seeking the SOS Documents

The motion to compel should be denied for the additional reason that plaintiffs have substantially delayed in seeking the SOS documents. Federal courts regularly deny motions to compel where the movant delays in seeking the instant discovery. *See, e.g.*, *Garrett v. Judson ISD*, No. 5:06-cv-174, 2007 WL 172542, at *1 (W.D. Tex. Jan. 17, 2007); *Biggers v. Napier*, No. 5:16-cv-170, 2018 WL 4701844, at

7

*1 (M.D. Ga. July 30, 2018) ("[G]iven also Plaintiff's undue delay in seeking discovery relief, Plaintiff's motions to compel are denied."); *Knight v. Illinois Dept. of Nat. Resources*, No. 2:11-cv-2071, 2014 WL 1282554, at *3–4 (C.D. Ill. Mar. 31, 2014) (denying motion to compel because plaintiff's "need for additional discovery was caused solely by her own delays in conducting discovery and because granting her request at this very late date would prejudice Defendants").

The record shows that plaintiffs did not meaningfully pursue the SOS documents until near the end of the discovery period. Plaintiffs delayed <u>three weeks</u> after the April 25th email to send the first set of revised search terms, which yielded a still-unreasonable sum of 240,096 unique hit counts plus family. Ex. E at 26. Defendants promptly responded, explaining the new hit count was plainly much too high. *Id.* at 25. Plaintiffs then waited <u>twenty-three days</u> to send the second set of revised search terms. *Id.* at 19. Despite plaintiffs' contention that they "worked hard to narrow their proposed search terms," Mot. at 6, the second set of search terms were hardly changed, yielding 231,708 unique hit counts plus family, a reduction of only 3.49% from the previous terms. Ex. E at 14.

Only on June 21st, a little over three weeks before the close of discovery, did plaintiffs propose new search terms. Ex. E at 12–13. Plaintiffs accuse Defendants of "stonewalling in negotiating," Mot. at 5, but in reality plaintiffs did not suggest a significantly modified proposal until late in the process. Relatedly, Plaintiffs suggest that they might have moved to compel "months ago," *id.*, but this allegation ignores the increased burden of demanding that Defendants review all the SOS documents in the limited time before discovery closed. Had plaintiffs suggested more reasonable search terms earlier in the process, (say, 10,000 or 20,000 documents) Defendants certainly would have been better equipped to assess the burden of reviewing those documents, and provide a more informed counterproposal. But they did not, instead waiting until to eleventh hour to meaningfully amend the proposed search terms, and pretending as if the burden imposed on Defendants to complete the search in three weeks (from June 21st) was the same as the burden imposed if plaintiffs had made the same proposal in April.

8

On the contrary, a request made at the end of the discovery period necessarily imposes a larger burden on the responding party. *See, e.g.*, *Vinson v. Taylor*, 753 F.2d 141, 143 n.12 (D.C. Cir. 1985) (affirming district court's denial of motion to compel) (Motion to compel was filed "shortly before the close of discovery. . . . a grant of the motion here would have subjected the defendants to the burden of additional discovery, preparation and expense."); *Marten v. Haire*, 329 F.R.D. 256, 259–60 (D. Mont. 2018) (quashing subpoena due to "timing of Plaintiff's service of a Rule 45 subpoena, combined with Plaintiff's failure to bring this issue to the Court's attention sooner").

### III.     The Volume of Documents Plaintiffs Demand is Unduly Burdensome

The motion to compel should also be denied because the volume of documents plaintiffs seek is unduly burdensome, especially at this late stage in the litigation. Federal courts routinely deny motions to compel or order a reduced production where a movant seeks a volume of documents similar to those plaintiffs seek here. *See, e.g.*, *General Electric Co. v. Mitsubishi Heavy Indus., Ltd.*, No. 3:10-cv-276, 2011 WL 13201860, at *3 (N.D. Tex. Aug. 18, 2011) (ordering movants to narrow their document requests, as to 66,000 documents); *City of Seattle v. ZyLAB North America, LLC*, No. 2:17-cv-790, 2017 WL 4418636, at *3–4 (W.D. Wash. Oct. 5, 2017) (50,000 documents); *Moore v. Publicis Groupe*, 287 F.R.D. 182, 185 (S.D.N.Y. 2012) (40,000 documents).

Plaintiffs insist that "parties often must review tens or hundreds of thousands of potentially relevant documents," but their only citation does not support their assertion. Mot. at 5 (citing *North Dakota v. United States*, No. 1:19-cv-150, 2021 WL 6278456 (D.N.D. Mar. 24, 2021)). First, that case involved "tens of thousands" of documents, not hundreds of thousands. *Id.* at *5. Second, recognizing that the "requests are indeed broad," the court ordered the parties to confer and discuss suggestions on how to reduce the overall volume of documents for review. *Id.* at *6. And so even though the court nominally granted the motion to compel, it does not appear it contemplated the United States would actually be made to review the tens of thousands of documents.

Being made to review 60,000 SOS documents is unduly burdensome, especially when considered along with the documents' minimal relevance, plaintiffs' delay in seeking them, the late stage of the litigation, and the parties' many other pressing obligations. As explained above, reviewing 60,000 documents at 60 documents per hour would require 1,000 hours. The trial is only about ten weeks away, so producing the documents before trial would require the equivalent of 2.5 full-time lawyers doing nothing but reviewing documents in this critical pre-trial period. Producing the documents before dispositive motions are due (about three weeks from now) would require more than 8 full-time lawyers devoted entirely to reviewing immaterial documents. The Court should deny the motion to compel or, in the alternative, order only the production of a 2,500 document sample.

**IV.     If Some Production is Warranted, a Sampling Approach is Reasonable**

The motion to compel should be denied in full, but if the Court determines that some production is warranted, it should order the production of a 2,500 document sample, as outlined above. A sampling approach is a common and reasonable method, used to allow the movant to obtain some documents from what would otherwise be an unreasonable total. *See, e.g.*, *Old Republic Nat'l Title Ins. Co. v. Kensington Vanguard Nat'l Land Servs. of Tex., LLC*, No. 3:17-cv-1014, 2017 WL 8677357, at *2 (N.D. Tex. May 10, 2017); *Moore*, 287 F.R.D. at 202–03 (ordering respondents to produce 2,400 document sample out of 40,000 total documents).

Plaintiffs oppose using a sampling method, complaining that some documents "would never be reviewed or produced." Mot. at 8. The one and only option, in plaintiffs' view, is for Defendants to review all 60,000 documents. Plaintiffs fail to recognize the basis for the sampling. Because the current total of documents plaintiffs demand is unreasonably high—both in general and in these specific circumstances—the parties must determine some method to lower the volume. A random selection of the four search groups will provide plaintiffs with a representative sample of the rest of the documents. This is a reasonable alternative to being made to review all 60,000 documents.

**CONCLUSION**

Defendants respectfully request that the Court deny plaintiffs' motion to compel. But if the Court finds that some production is warranted, Defendants request that the Court order the production of a random sample of 2,500 documents, as outlined above.

Date: July 20, 2022

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Respectfully submitted.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
Tex. State Bar No. 24088531

JACK B. DISORBO
Assistant Attorney General, Special Litigation Unit
Tex. State Bar No. 24120804

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov
jack.disorbo@oag.texas.gov

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on July 20, 2022, and that all counsel of record were served by CM/ECF.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN