# EXHIBIT D

Exhibit to Fair Maps Motion to Compel



1415 W. Hwy 54, Suite 101
Durham, NC 27707
919-323-3380
southerncoalition.org

June 15, 2022

<u>Via Electronic Mail and Secure Electronic File Transfer</u>

To:   PATRICK K. SWEETEN
      Deputy Attorney General for Special Litigation
      Tex. State Bar No. 00798537

      WILLIAM T. THOMPSON
      Deputy Chief, Special Litigation Unit
      Tex. State Bar No. 24088531
      Office of the Attorney General
      P.O. Box 12548 (MC-009)
      Austin, Texas 78711-2548
      Tel.: (512) 463-2100
      Fax: (512) 457-4410
      patrick.sweeten@oag.texas.gov
      will.thompson@oag.texas.gov

**Re:   State Defendants' Response to *Fair Maps* Plaintiffs' First Request for Production in *LULAC* v. *Abbott*, Case No. 3:21-cv-00259 (lead case), 1:21-cv-01038 (consolidated) (W.D. Tex. 2021)**

Counsel:

We received and have had opportunity to review the State Defendants' Responses and Objections (the "Responses") to the *Fair Maps* Plaintiffs' First Request for Production (the "Requests") in the above captioned matter. Below I have outlined several areas of concern in your Responses that we raise here in an effort to resolve these issues without the need to involve the Court. We also would look forward any additional opportunity to confer regarding custodians and search terms that may be necessary.

First, we respectfully request an update on whether State Defendants have withheld any documents for those Requests in which you have indicated you will be conducting a diligent search, as indicated in your Responses and as required by the applicable Rules of Civil Procedure. *See* Fed. R. Civ. P. 26(b)(5)(A). Furthermore, we respectfully request information regarding the scope and parameters of the State Defendants' searches for responsive documents to date, especially as they relate to the State Defendants' proportionality objections to the Requests, as the objections included in the Responses lack the necessary specificity for Plaintiffs to assess whether they are consistent with the Rules of Civil Procedure and applicable law.

**About Us:** The Southern Coalition for Social Justice partners with communities of color and economically disadvantaged communities in the South to defend and advance their political, social, and economic rights through the combination of legal advocacy, research, organizing, and communications.



Second, regarding State Defendants' objection to the temporal scope of the Requests, you state that "Plaintiffs have not explained why they seek documents created before January 1, 2021." These documents are relevant because public sources confirm preparations for the 2021 redistricting cycle by elected officials began long before January 2021. For example, the state Senate and House Redistricting committees began taking public testimony in preparation for redistricting as early as September of 2019. Accordingly, any correspondence or other documentation related to pre-2021 redistricting activities has obvious relevance to the maps enacted in 2021, and are not protected from disclosure based on a limitation that, within the context of these activities, is arbitrary. State Defendants should therefore search for and produce relevant documents from this public comment period as well.

Third, *Fair Maps* Plaintiffs respectfully request further clarification on the State Defendants' objection to Plaintiffs' Instruction No. 9, which alludes to Plaintiffs' right to secure documentation via a Freedom of Information Act request. "It is [] settled law that FOIA was not intended to be a substitute for discovery." *Cooper Cameron Corp. v. U.S. Dep't of Lab., Occupational Safety & Health Admin.*, 280 F.3d 539, 548 (5th Cir. 2002). To be clear, *Fair Maps* Plaintiffs are not contending the State Defendants are required to submit FOIA requests to other governmental entities in order to respond to the Requests. However, to the extent that State Defendants are withholding information they otherwise have a legal right to obtain on demand or the practical ability to obtain from a nonparty to this action and are withholding that information merely because that information would hypothetically be available to Plaintiffs via a FOIA request, this would be contrary to applicable law. State Defendants should therefore produce all relevant documents that were withheld based on this objection, or confirm that they do not possess any such documents.

Fourth, State Defendants' assertion of legislative privilege is improper for several reasons. As an initial matter, legislative privilege is a personal one and may be waived or asserted by each individual legislator. *Perez v. Perry*, 2014 U.S. Dist. LEXIS 1838, at *1 (W.D. Tex. Jan. 8, 2014). A legislator cannot assert or waive the privilege on behalf of another legislator and "neither the Governor, nor the Secretary of State or the State of Texas has standing to assert the legislative privilege on behalf of any legislator or staff member that may be deposed." *Id*. State Defendants' contention that "the Supreme Court has repeatedly recognized that officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions'" is inapposite here as the cases you rely on—*Bogan v. Scott-Harris*, 523 U.S. 44 (1998) and *Supreme Court of Virginia v. Consumers Union of U.S., Inc.*, 446 U.S 719 (1980)—because both discuss legislative immunity, not the issue of legislative privilege relevant here. Ultimately, State Defendants have no grounds on which to claim a blanket legislative privilege over documents requested. *See also Gilby v. Hughs*, 471 F. Supp. 3d 763, 767 (W.D. Tex. 2020) (holding the Secretary of State did not have standing to invoke legislative privilege and granting motion to compel production of documents in challenge to state voting law).

But even assuming it were appropriate for State Defendants to assert legislative privilege here (which it is not), State Defendants' generalized objection to producing any manner of communications is improper given that the Fifth Circuit Court of Appeals has already held in this matter that "the state legislative privilege is not absolute," and that particular areas of inquiry may fall outside topics potentially covered by legislative privilege. *See* Doc. 311 at 7. As observed by the U.S. Supreme Court, "Members of Congress are constantly in touch with the Executive Branch of the Government and with administrative agencies—they may cajole, and exhort with respect to the administration of a federal statute—but such conduct, though generally done, is not protected

legislative activity." *Gravel v. U S.*, 408 U.S. 606, 625, 92 S. Ct. 2614, 33 L. Ed. 2d 583 (1972). Furthermore, to the extent that legislators or legislative staff communicated with non-legislators or non-legislative staff, including agents of the State Defendants, any legislative privilege is waived as to the contents of those specific communications. *Perez,* 2014 U.S. Dist. LEXIS 1838, at *2.

Fifth, and similarly, State Defendants' assertion of deliberative privilege in response to the Requests, as stated, appears overly broad. As recently held by the Court: "Communications received by the Secretary from legislators looking to obtain guidance in formulating legislation are not meaningfully different from communications received by constituents from legislators or communications received by lobbyists, think-tanks, or any outsider," and not subject to the deliberative privilege. *Gilby v. Hughs*, 471 F. Supp. 3d 763, 768 (W.D. Tex. 2020) (granting motion to compel production of documents by the Secretary of State).

In light of the above, *Fair Maps* Plaintiffs respectfully request the exact scope of documents withheld on the basis of the deliberative privilege, and the immediate production of all documents withheld on the basis of legislative privilege. To date, counsel for Fair Maps has not received a privilege log, as required by the Stipulated Order Regarding Discovery of Electronically Stored Information, Doc. 203.

Finally, State Defendants objected to Request 5 by contending it calls for "documents that are irrelevant to Plaintiffs' claims" in this case because it is "unclear without further specification why documents relating to redistricting exchanged between candidates, political parties, lobbyists, and the other third parties mentioned would be relevant." Put plainly, these documents are relevant to the intent of line-drawers, including any purported defense asserted by the State that district lines in the challenged plans were drawn based on predominantly political, not racial reasons, and whether such a defense is "more of a post-hoc rationalization than an initial aim." *Harris. v. McCrory*, 159 F. Supp. 3d 600, 620 (M.D.N.C. 2016). Such information is squarely within permissible discovery as it pertains to the anticipated defenses at issue. *See* Fed. R. Civ. P. 26(b)(1) (defining the scope of discovery as "any nonprivileged matter that is relevant to any party's claim *or defense* . . . . (emphasis added)). If the State Defendants will represent that they do not intend to raise such a defense in their anticipated Answers or otherwise at trial, *Fair Maps* plaintiffs are willing to negotiate on the scope of this request. Otherwise, State Defendants should produce these documents.

We hope to discuss the above issues, as well as additional questions and concerns we have regarding your Objections and Responses, in a meet and confer, and the above should not be considered an exhaustive list; Plaintiffs reserve the right to bring additional issues to the Court's attention if and when required. We are available for a meet and confer and to find a time at your convenience to do so.

Kind Regards,

*/s/ Hilary Klein*
Hilary Klein

*Counsel for Fair Maps Plaintiffs*

