UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| League of United Latin American Citizens, et al., *Plaintiffs,* | ) ) ) ) | |
| Eddie Bernice Johnson, *et al.*, *Plaintiff-Intervenors,* | ) ) ) ) | No. 3:21-cv-259-DCG-JES-JVB [Lead Case] |
| v. | ) ) ) | |
| Greg Abbott, in his official capacity as Governor of the State of Texas, et al., *Defendants.* | ) ) ) ) ) | |

| | | |
|---|---|---|
| United States of America, *Plaintiff,* | ) ) ) | |
| v. | ) ) | No. 3:21-cv-299-DCG-JES [Consolidated Case] |
| State of Texas, *et al.* *Defendants.* | ) ) ) | |

# NON-PARTIES TEXAS LEGISLATIVE COUNCIL AND JEFFREY ARCHER'S OPPOSED MOTION TO QUASH DEPOSITION SUBPOENA OF JEFFREY ARCHER AND, ALTERNATIVELY, MOTION FOR PROTECTIVE ORDER

Pursuant to Fed. R. Civ. P. 26 and 45, non-parties Texas Legislative Council and Jeffrey Archer (collectively "Movants"), move this Court to quash the U.S. Department of Justice's ("DOJ") deposition subpoena to Mr. Archer, or, in the alternative, to issue a protective order limiting the scope and timing of his deposition.

## I. BACKGROUND

### A. The Non-Partisan Texas Legislative Council

Texas Legislative Council ("TLC") is a nonpartisan legislative agency of the State of Texas established under Chapter 323 of the Texas Government Code. TLC offers all Texas legislators legal, research, and printing services, information technology services such as providing a system to the legislators in which the legislators may transmit, store, or maintain records, and other legislative services. *See* Declaration of Jeffrey Archer ("Archer Decl."), filed herewith as Exhibit A at ¶ 1.

TLC staff assist legislators in drafting and analyzing proposed legislation and in obtaining information on specific legislative problems and on matters affecting the general welfare of the state. *Id.* at ¶ 5. TLC staff also handle the printing, processing, and distribution of official house printings and other legislative documents and provide computer support to the legislature and all of the other legislative agencies. TLC has approximately 375 employees. *Id.*

TLC has specialized divisions, including administration, document production, information systems, legal, and research. *Id.* at ¶ 6. The research division is tasked with data analysis and digital content, editing, mapping and redistricting, policy research and bill analysis, and resolutions and publications. *Id.* As part of mapping

1

and redistricting, the staff of this section prepare district and policy issue maps and maintain election, census, and geographic databases and mapping and redistricting applications. *Id.*

Mr. Archer is the Executive Director of the agency and head of the leadership team, which is responsible for both directing and coordinating the operations of TLC, for coordinating TLC operations with House and Senate leadership, and for fielding media and public information inquiries. *Id.* at ¶ 3. The team consists of himself, assistant executive director, general counsel, and division directors. *Id.*

**B.     Mr. Archer's Role at Texas Legislative Council and Redistricting**

Mr. Archer has been with TLC for almost forty years. *Id.* at ¶ 2. He worked in the legal division most of his career and was Chief Legislative Counsel prior to becoming Executive Director. *Id.*

TLC is in charge of the tools and technology needed to meet the needs of legislators who are seeking assistance during the redistricting process. *Id.* at ¶ 7. TLC has developed a sophisticated mapping software for redistricting projects in the State of Texas. The redistricting application, RedAppl, is used to assist legislators and their staffs to create maps for various districts. *Id.* Mr. Archer's primary role in redistricting is advising and directing the staff. *Id.* at ¶ 8. TLC staff, including Mr. Archer, are instructed not to propose or advance policy positions, to include suggesting how redistricting lines might be drawn to accomplish a policy outcome. *Id.*

In his former roles as Senior Legislative Counsel and Chief Legislative Counsel, Mr. Archer was deposed in redistricting cases in the last three redistricting

cycles. *Id.* at ¶ 9. Mr. Archer previously testified as to the tools at the public and legislators' disposal, including RedAppl, and the role of TLC in the process. *Id.*

While Mr. Archer was involved in providing legal analysis regarding redistricting in previous decades, he had fewer than ten conversations in 2021 with legislators or legislators' staff members in which he provided incidental generic legal advice regarding redistricting laws. *Id.* at ¶ 10. He did not provide legal advice or analysis to House or Senate leadership or the redistricting committees regarding any plans developed or proposed by the committees. *Id.* Mr. Archer's limited conversations with individual members are subject to attorney-client privilege. *Id.*

Mr. Archer had a few conversations in 2021 with legislative staff or legislative caucus staff in which he negotiated RedAppl system downtimes. *Id.* at ¶ 11. Mr. Archer had fewer than five conversations in 2021 with legislators or legislative staff in which he provided technical or administrative information. *Id.* Mr. Archer had extensive conversations with House and Senate officers and committee staff regarding purely technical and administrative aspects of proposing and moving redistricting legislation. *Id.* at ¶ 12. This assistance addressed amendments to redistricting measures, the format of bills, what statistical data would be included in amendment packets, how redistricting amendments would be laid before the body electronically, and how amended redistricting bills would be engrossed. *Id.*

Mr. Archer had extensive conversations with House and Senate leadership regarding the retention of outside counsel or other experts to assist the redistricting committees with issues like reimbursement rates and contract terms. *Id.* at ¶ 13. TLC

paid for legal and policy experts in redistricting to work at the direction of the House, but, as specified in their retention contracts, those experts did not work with Mr. Archer or at Mr. Archer's direction. *Id.*

DOJ has been provided access to the RedAppl system, so DOJ is fully capable of evaluating the software's capabilities without Mr. Archer's assistance. *Id.* at ¶14. TLC has already provided DOJ with all of the training materials regarding redistricting data and RedAppl that it provided to the Texas legislature. *Id.*

While Mr. Archer is an expert on legislative procedure and redistricting, he is not in possession of any substantively different or greater amount of information than any other person with regard to the 2021 Texas redistricting process. *Id.* at ¶ 15.

Mr. Archer regularly provides privileged advice and recommendations to legislative offices that are outside the scope of the extant lawsuit. *Id.* at ¶ 16.

**C.     Legislative Privileges Afforded to TLC and Mr. Archer**

As a legislative agency, TLC is afforded legislative privilege protection. Sections 306.008 and 323.017 specifically establish TLC's legislative privilege and codify the attorney-client privilege for TLC's attorneys and staff. Tex. Gov. Code § 306.008 and §323.017. Pursuant to Section 323.017 of the Texas Government Code, all communications relating to a legislative request for "information, advice, or opinions" from a TLC employee are confidential and subject to legislative privilege. Tex. Gov. Code § 323.017. Pursuant to Section 323.018, all records relating to requests to TLC regarding the "drafting of proposed legislation or for assistance, information, advice, or opinion" are protected by legislative privilege and not public information. Tex. Gov. Code § 323.018. Section 323.021 of the Texas Government

4

Code establishes that TLC is not the custodian of information possessed, maintained, and controlled by Texas legislative offices and committees.

Each Texas state legislator and the lieutenant governor has signed a directive with TLC that (A) clarifies that TLC acts as an extension of each legislative office when performing services for the office; (B) defines the legislative privilege relationship between the legislative office and TLC; (C) defines the attorney-client relationship between the legislative office and TLC; (D) clarifies that the legislator or lieutenant governor, as appropriate, is the custodian of records in the context of litigation; and (E) directs TLC to assert all applicable privileges and obligations of confidentiality on behalf of the legislative office. *See, e.g.,* Dkt. 244-2.

Given TLC's statutory role in providing services to legislators in connection with performing their duties as legislators, much of the information and communications created or provided by TLC staff relates directly to legislative activities and are subject to legislative privilege. Further, TLC provides legal services to legislators and that information is likewise protected by the attorney-client privilege and attorney-work product doctrine.

D.   **The DOJ's Request for Mr. Archer's Deposition**

On July 8, 2022, the DOJ served Jeffrey Archer, the Executive Director of TLC, with a subpoena to testify at deposition. During a meet and confer with counsel for Movants, the DOJ explained that it wanted to depose Mr. Archer on three primary topics: (1) basic information relating to the process, training, and data input into RedAppl; (2) confirmation of his involvement (or lack thereof) in approving any maps

5

during this redistricting process; and (3) his opinion on what "is or isn't normal" for redistricting. The DOJ objects to the relief sought herein.

## II. ARGUMENT

The request to depose Mr. Archer is unduly burdensome and unjustifiable. First, Mr. Archer was previously deposed on the first topic of information sought. Not only does the DOJ have the previous transcripts, but the information is in the public record and has been provided as part of the document subpoena. Second, Mr. Archer lacks superior or unique information related to this redistricting process, a fact that does not need a lengthy and burdensome deposition to confirm. And third, as a State employee, Mr. Archer does not have any authority to provide definitive or binding legal opinions on the legality of redistricting processes and decisions.

**A.  The Court Should Quash the Deposition Subpoena Because It Is Not Calculated to Lead to the Discovery of Relevant, Non-Privileged Information.**

Under Rule 45 of the Federal Rules, "the court . . . must quash or modify a subpoena that: . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv); *see also In re FDIC*, 58 F.3d 1055, 1057 (5th Cir. 1995) (holding it was an abuse of discretion to "declin[e] to quash notices of deposition").

### *1.  Mr. Archer should not be deposed about privileged actions and conversations.*

Mr. Archer serves not only as the head of the agency, but also in a legal capacity, and Mr. Archer is himself an attorney. *See* Archer Decl. at ¶¶ 1-3.

As explained above, Mr. Archer had no relevant conversations with legislators, including requests for advice or guidance on issues relevant to the claims in this lawsuit. *Id.* at ¶¶ 10-16. But even if there were, attorney-client and legislative privileges would apply. *Id.* In his role as head of the agency and as a lawyer, Mr. Archer is often asked to provide legal advice. Mr. Archer's communications with other lawyers at TLC, or with staff members at TLC, may be privileged. Communications with Mr. Archer related to his role as attorney with TLC would necessarily infringe upon confidential attorney-client communications and are non-discoverable. *See* Fed. R. Civ. P. 26(b)(1).

To the extent the DOJ seeks to depose Mr. Archer as to his communications with legislators in order to determine originations, rationales, or motivations for particular map proposals, that would impermissibly seek to expose his (and their) thought processes and mental impressions, making them subject to legislative privileges. Analyses considered in drafting redistricting proposals are similarly subject to legislative privilege. Private communications related to legal advice or legal services between TLC and members of the legislature including their staff, assistants, and employees are both legislatively and attorney-client privileged under statute. *See* Tex. Gov't Code Ann. § 323.017(a)-(c).

Mr. Archer's role as an attorney does not preclude him from giving a deposition, but it is considered a factor in whether to quash the subpoena. District courts within this circuit have used a balancing approach when considering the need to depose a party's lawyer. In *Gates v. Texas Department of Family and Protective Services*, the

7

court ordered a protective order for information sought from counsel for Department of Family and Protective Services that was "either available from an alternate source" or "subject to the attorney-client privilege." *Gates v. Tex. Dep't of Family & Protective Services*, No. A-09-CV-018 LY, 2010 WL 11598033, at *2 (W.D. Tex. Oct. 7, 2010). The court decided that if plaintiffs were to "seek to discover by [the attorney's] testimony *why* any particular course of action was or was not taken or how decisions were reached by DFPS, they will necessarily invade territory covered by the attorney-client privilege." *Id.* Mr. Archer had no direct involvement in this controversy, any relevant information he could have had if he were involved would be privileged under statute, and more appropriate testimony will come from parties that have been or will be deposed. *See* Tex. Gov't Code § 323.017(a)-(c).

### 2. *Mr. Archer should not be required to provide legal analysis.*

To the extent the DOJ seeks Mr. Archer to opine or provide legal analysis concerning the effect or impact of redistricting proposals or compliance of the Voting Rights Act, that information is protected by the attorney-client privilege or work product doctrine, or it is impermissibly burdensome.

The DOJ appears to want to depose Mr. Archer to seek his opinions or impressions about this case and his legal opinion on the law. As a State employee, Mr. Archer does not have any authority to provide definitive or binding legal opinions on the legality of redistricting processes and decisions. It is an undue burden to notice depositions that would provide only irrelevant information. *See INTL FCStone Fin., Inc. v. OptionSellers.com, Inc.*, No. 6:21-mc-0004-JDK, 2021 WL 1540528, at *2 (E.D.

8

Tex. Apr. 20, 2021) ("Irrelevance is a ground for quashing a deposition as unduly burdensome."). As discussed, Mr. Archer lacks unique or superior knowledge related to this case. Having him guess or theorize on motives or provide his legal opinion is both irrelevant and improper.

### 3. *Mr. Archer should not be deposed to seek public or duplicative information.*

Rule 45 imposes a duty on party counsel that when issuing a subpoena to a non-party, the party "must take reasonable steps to avoid imposing undue burden or expense on" the subpoena recipient. Fed. R. Civ. P. 45(d)(1). That Rule corresponds with Rule 26, which empowers courts to limit discovery where the discovery proponent seeks information that "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

The House and the Senate both retained non-council attorneys and map-drawers and both have averred to the fact that those individuals, not TLC, were the ones responsible for developing and evaluating the maps. Archer Decl. at ¶ 13. These individuals are being or have been deposed. Deposing Mr. Archer about matters that are already part of the extensive public record is unduly burdensome. Fed. R Civ. P. 45(d)(3)(A)(iv).

The DOJ has not complained about the non-legal, non-policy services provided by TLC. The raw data that the DOJ wants is in the public data portal. *Securus Techs., Inc. v. Glob. Tel\*Link Corp.*, 331 F. Supp. 3d 633, 638 (N.D. Tex. 2017) ("These are publicly available documents and their scope is evident from the documents

9

themselves. . . . This weights in favor of quashing these depositions."). Information such as the procedures and processes for creating maps has been produced and previous testimony obtained. To the extent the DOJ seeks details about any particular actions taken in this case, Mr. Archer has no knowledge; there is nothing productive to be accomplished by deposing Mr. Archer.

### B. In the Alternative, the Court Should Limit the Scope of Mr. Archer's Deposition.

A court must limit the "extent of discovery" where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(c)(1). Such an order could include "forbidding the disclosure or discovery . . . forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." *Id.*

If the Court decides not to quash the deposition subpoena of Mr. Archer, then Movants ask that the scope of his deposition be limited to three (3) hours and only to topics on which Mr. Archer was not previously deposed. Movants also request that Mr. Archer not be asked his legal opinions or asked about privileged actions or communications. Limiting the scope of the subpoena to this will not harm the DOJ and will protect Mr. Archer from the possibility of "annoyance, embarrassment, oppression, [and] undue burden or expense." *See* Fed. R. Civ. P. 26(c)(1).

### IV.  CONCLUSION

For the foregoing reasons, the Texas Legislative Council and Jeffrey Archer respectfully request that the Court quash the deposition subpoena.

Dated: July 21, 2022

        Respectfully submitted.

        KEN PAXTON
        Attorney General of Texas

        BRENT WEBSTER
        First Assistant Attorney General

        LESLEY FRENCH
        Chief of Staff

        JUSTIN GORDON
        Interim Division Chief
        Financial Litigation and Charitable Trusts Division

        */s/ Alyssa Bixby-Lawson*
        ALYSSA BIXBY-LAWSON
        Assistant Attorney General
        State Bar No. 24122680
        Financial Litigation and Charitable Trusts Division
        Office of the Attorney General
        P.O. Box 12548 (MC 017)
        Austin, TX 78711-2548
        Tel: (210) 270-1118
        Division Fax: (512) 477-2348
        Alyssa.Bixby-Lawson@oag.texas.gov

        *Counsel for Non-Parties Texas Legislative Council and Jeffrey Archer*

## CERTIFICATE OF CONFERENCE

I certify that I conferred with counsel for the United States regarding the subject of this motion. Counsel for the United States indicated it opposed any motion to quash or for protective order, which confirms opposition to the relief sought here.

*/s/ Alyssa Bixby-Lawson*
Assistant Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2022, the foregoing *Non-Parties Texas Legislative Council and Jeffrey Archer's Motion to Quash Deposition Subpoena and, in the Alternative, Motion for Protective Order* was electronically filed with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Alyssa Bixby-Lawson*
Assistant Attorney General