UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| LULAC, *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> GREG ABBOTT, in his official capacity as Governor of Texas, *et al.*, <br><br> *Defendants.* | Case No.: 3:21-CV-00259-DCG-JES-JVB <br> [Lead Case] |
| ROY CHARLES BROOKS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> GREG ABBOTT, in his official capacity as Governor of Texas, *et al.*, <br><br> *Defendants.* | Case No.1-21-CV-00991-DCG-JES-JVB <br> [Consolidated Case] |

**BROOKS PLAINTIFFS' OPPOSITION TO STATE DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1
STANDARD OF REVIEW .................................................................................................... 1
ARGUMENT .......................................................................................................................... 1
I.   The motion to dismiss the Brooks Plaintiffs' DFW and Harris County Section 2 congressional claims should be denied. ......................................................................... 1

   A.   The State Defendants "cultural compactness" argument misapprehends the elements of a Section 2 claim and is foreclosed by the reasonable inferences that must be drawn in Brooks Plaintiffs' favor. ............................................................................... 1

   B.   The Brooks Plaintiffs sufficiently alleged political cohesion for their DFW and Houston congressional claims. ...................................................................... 10

III. The Brooks Plaintiffs have sufficiently alleged intentional discrimination with respect to HD118. ....................................................................................................... 11
CONCLUSION .................................................................................................................... 12
CERTIFICATE OF SERVICE ............................................................................................. 14

**INTRODUCTION**

The State Defendants' motion to dismiss the Brooks Plaintiffs' DFW and Harris County Section 2 congressional claims and their HD118 intentional discrimination claims should be denied. Their arguments misapprehend the legal requirements for Section 2 liability, are foreclosed by this Court's prior order denying their motion to dismiss the Brooks Plaintiffs' original complaint, and are contrary to Rule 8(a)(2)'s "plain statement" standard for pleading allegations.

**STANDARD OF REVIEW**

"To survive a motion to dismiss, a complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2017) (quoting *Phillips v. City of Dallas*, 781 F.3d 772, 776 (5th Cir. 2015)). "In reviewing the complaint [courts] 'draw all inferences in favor of the nonmoving party, and view all facts and inferences in the light most favorable to the nonmoving party." *Id.* (quoting *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009)).

**ARGUMENT**

**I.    The motion to dismiss the Brooks Plaintiffs' DFW and Harris County Section 2 congressional claims should be denied.**

    **A.    The State Defendants "cultural compactness" argument misapprehends the elements of a Section 2 claim and is foreclosed by the reasonable inferences that must be drawn in Brooks Plaintiffs' favor.**

The State Defendants' "cultural compactness" argument regarding the Brooks Plaintiffs' DFW and Harris County Section 2 congressional claims misapprehends the elements of Section 2 and is foreclosed by the reasonable inferences that must be drawn in the Brooks Plaintiffs' favor. The State Defendants contend that this Court, in a footnote in its prior opinion dismissing portions of other plaintiffs' complaints, "explained that the first *Gingles* precondition requires a plaintiff to

1

plead *specific facts* showing that the minority populations in the proposed district are 'culturally compact.'" Mot at 2, Doc. 400 (quoting Order, Doc. 307 at 31 n.20) (emphasis added). Not so.

First, this Court did not set forth a "specific facts" standard regarding "cultural compactness" because such a standard would violate Rule 8(a)(2). "[A] pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard that Rule 8 announces does not require 'detailed factual allegations' . . . ." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Indeed, the Fifth Circuit has explicitly rejected the "specific facts" standard State Defendants advance (and attribute to this Court's footnote), explaining that Rule 8's "notice pleading" standard "does not require pleading specific facts." *Anderson v. HUD*, 554 F.4d 525, 528 (5th Cir. 2008). Contrary to State Defendants' conception of the pleading standard, Brooks Plaintiffs were not required to prove their case with evidence in their complaint; they were required to place State Defendants on notice of their claims. The granularity with which State Defendants are now critiquing the Brooks Plaintiffs' complaint is strong evidence that they have sufficient notice about the nature of the Brooks Plaintiffs' Section 2 claims.

Second, "cultural compactness" is not a standalone element of Section 2 liability; it does not need to be pled in a complaint where the proffered illustrative districts do not combine geographically disparate communities. In *LULAC*, Texas defended against a Section 2 challenge to CD23 by alleging that its map contained the six Latino opportunity districts that were required. *Id.* at 430. The Court rejected that argument, holding that one of those six—CD25—was not "reasonably compact." *Id.* The challenged map contained "a 300-mile gap between the Latino communities in District 25, and a similarly large gap between the needs and interests of the two

2

groups." *Id.* at 432. The district combined "Latinos in the Rio Grande Valley and those in Central Texas," which the district court had found to have "differences in socio-economic status, education, employment, health, and other characteristics." *Id.* (internal quotation marks omitted); *id.* at 434 (noting that "the different characteristics, needs, and interests of the Latino community near the Mexican border and the one in and around Austin are well supported and uncontested). In doing so, the Court noted that "in some cases members of a racial group in different areas—for example, rural and urban communities—could share similar interests and therefore form a compact district if the areas are in reasonably close proximity." *Id.* at 435. It concluded its discussion of CD25 with this critical caveat: "We *emphasize* it is the *enormous geographical distance* separating the Austin and Mexican-border communities, *coupled* with the disparate needs and interests of these populations—*not either factor alone*—that renders District 25 noncompact for § 2 purposes." *Id.*

The rule announced in *LULAC* is therefore this: if a plaintiffs' *Gingles* 1 illustrative district covers an "enormous geographical distance" combining "distant, disparate communities" of minority voters (such as the 300-mile gap between Austin and the Mexican border), then the plaintiff must establish that the two distant groups share common cultural needs and interests in order to overcome the effect of their geographical distance. The Court was precise in limiting its holding in this regard, expressly stating that cultural compactness considerations "alone" would not defeat Section 2 liability in proposed districts that combine minority voters "in reasonably close proximity." *Id.* at 435. This makes sense, because the Court's concern was that a district combining minorities who live an "enormous geographical distance" apart would have race as the sole reason for the connection. *Id.* That concern does not arise when the district respects recognized communities of interest—such as a district that stays within a recognized metropolitan area—

3

because such a district will necessarily respect "nonracial communities of interest" that come with sharing the same metropolitan area as the districts' other voters. The State Defendants' "cultural compactness" argument thus misapprehends Section 2's requirements because it directly contravenes the *LULAC* Court's express limitation of that consideration.

**_DFW Districts._** The State Defendants do not contend that the two DFW illustrative districts offered by the Brooks Plaintiffs extend over an "enormous geographical distance" combining far-flung minority groups. Nor could they. The two districts, proposed CD37 in Plan C2163 (a majority Latino CVAP district) and proposed CD6 in Plan C2167 (a Black/Latino majority CVAP coalition district) are contained within a single community—the DFW metroplex—as shown below.

**Plan C2163**

4

**Plan C2167**



State Defendants do not dispute that the DFW metroplex is a community of interest, and both districts are substantially urban within that metroplex, including parts of just two counties. Indeed, CD6 in Plan C2167 is almost entirely contained within Dallas County. The districts are so geographically small that you cannot even see them on TLC's DistrictViewer unless you zoom in to the DFW metroplex. *See* DistrictViewer, Plan C2163, https://dvr.capitol.texas.gov/Congress/0/PLANC2163; DistrictViewer, Plan C2167, https://dvr.capitol.texas.gov/Congress/0/PLANC2167. These are nothing like the version of CD25—stretching across 300 miles from the Mexican border to Austin and including part or all of nine counties—that triggered the additional requirement to show "cultural compactness" in *LULAC*. That district is shown below:

**2004 Plan 1374C**[1]



Because State Defendants do not—and cannot—contend that either of the Brooks Plaintiffs' DFW illustrative districts combine disparate minority populations "an enormous geographical distance" apart, *LULAC*, 548 U.S. at 435, their "cultural compactness" argument must fail. The Supreme Court clearly held that this was not a standalone Section 2 element, but rather a consideration triggered when the plaintiff's illustrative district contained geographically distant—at an "enormous" scale—minority communities.

In any event, the Court is obligated to draw all reasonable inferences in Brooks Plaintiffs' favor, and the only reasonable inference from the maps themselves is that the Latino population in

---

[1] Tex. Legislative Council, https://redistricting.capitol.texas.gov/docs/maps/map_c_2004_2006.pdf.

proposed CD37 in Plan C2163 and the Black and Latino population in proposed CD6 in Plan C2167 "share similar interests." *LULAC*, 548 U.S. at 435. This is so because the two proposed districts—as the maps themselves reveal—"maintain[] communities of interest and traditional boundaries," *LULAC*, 548 U.S. at 433, by confining their borders to a single, widely recognized, urban metroplex. This alone creates an inference of shared interests, because it is indisputable that DFW is a community of interest and DFW voters, without regard to race, have shared needs and interests in political representation.[2]

State Defendants' "cultural compactness" argument fails with respect to the Brooks Plaintiffs' DFW districts because it contravenes the Supreme Court's limitation on that consideration in *LULAC* and it requires this Court to draw inferences *against* plaintiffs. The map itself demonstrates the communities of interest respected by the Brooks Plaintiffs' two DFW illustrative districts. There is no requirement—particularly at the *pleading stage*—that the Brooks Plaintiffs *also* establish "specific facts" regarding "cultural compactness." Mot. at 2, Doc. 400.

**_Harris County District_**. State Defendants contend that Brooks Plaintiffs must also allege specific facts about cultural compactness with regard to their illustrative Harris County Latino opportunity district, proposed CD29 in Plan C2163, because they contend the district "combines disparate Houston neighborhoods." Mot. at 5, Doc. 400. State Defendants note that the district extends from "the Greater Fifth Ward" in the east to near "Katy" in the west. *Id.* The district is shown below:

---

[2] Notably, State Defendants themselves use the "DFW" abbreviation in describing the two illustrative districts, reflecting the undeniable community of interest these districts reflect.

**Plan C2163: Houston**



The distance between proposed CD29's western- and eastern-most points is just *32.5 miles*.³ The geographic proximity of the district's residents is apparent from the map itself, which was included in the Brooks Plaintiffs' complaint. The district is wholly contained within a single county, Harris County, and includes parts of a single metropolitan area—the Houston metropolitan area. This district bears no resemblance to CD25 considered by the *LULAC* Court. *See supra.* That district's Latino population was separated by seven counties and 300 miles.

Because the Latino population—indeed the entire population—of proposed CD29 is geographically proximate—as with the proposed DFW districts, proposed CD29 is so small it

---

³ The Court can take judicial notice of the distance between the two points, which can be gathered from the map of Plan C2163 on TLC's District Viewer site. *See* Google Maps, https://www.google.com/maps/dir/29.7855499,-95.777471/29.7778516,-95.2916054/@29.738832,-95.5762227,12.29z/data=!4m2!4m1!3e0; District Viewer, Plan C2163, https://dvr.capitol.texas.gov/Congress/0/PLANC2163.

cannot be seen on TLC's District Viewer website without zooming in—there is no obligation for Brooks Plaintiffs to plead additional facts in their complaint about "cultural compactness." *See LULAC*, 548 U.S. at 435 ("We emphasize it is the enormous geographical distance separating the Austin and Mexican-border communities, coupled with the disparate needs and interests of these populations—not either fact alone—that renders District 25 noncompact for § 2 purposes).

In any event, the reasonable inferences that can be drawn from the map itself show there to be non-racial communities of interest respected by CD29. All its voters live in Harris County and the Houston metropolitan area—an indisputable community of interest based upon shared economic, transportation, and other needs that bind together metropolitan areas.

\* \* \*

The Supreme Court has expressly rejected the State Defendants' contention that "cultural compactness" is a standalone element of Section 2 that must be pled in a complaint to avoid dismissal. But even if it were a separate element—notwithstanding a geographically small proposed district—the Court must draw all reasonable inferences in Brooks Plaintiffs' favor. The map itself demonstrates the proposed districts include voters who all live in the same metropolitan areas, and thus share the same non-racial interests that always attend sharing such a similar bond. "[T]he *Twombly/Iqbal* 'plausibility' standard does not require magic words or detailed facts in most cases." *Agredano v. State Farm Lloyds*, 975 F.3d 504, 506 (5th Cir. 2020). "Instead, it prohibits speculative claims." *Id.* It is not speculative that voters in the DFW metroplex and the Houston metropolitan areas share needs and interests beyond their race. The Brooks Plaintiffs were not required to use magic words related to "cultural compactness" in order to plead their Section 2 claims. Complaints are supposed to be short and plain, not law review articles.

### B. The Brooks Plaintiffs sufficiently alleged political cohesion for their DFW and Houston congressional claims.

The Brooks Plaintiffs sufficiently alleged political cohesion for their DFW and Houston congressional claims. State Defendants contend otherwise because Brooks Plaintiffs "fail to allege the percentage of Latinos and African Americans who support the same candidate. Instead, they only allege that certain candidates are likely to win elections in those proposed districts." Mot. at 6, Doc. 400.

This Court has already rejected this argument. In denying the State Defendants' motion to dismiss the Brooks Plaintiffs' original complaint, this Court reasoned that "the complaint does list the results of several recent elections in which, it says, minority-preferred candidates have succeeded. Reading those election results favorably to Plaintiffs, they plausibly indicate that SD 10's black and Hispanics vote cohesively for Democratic candidates." Order at 4, Doc. 144.

Here, the Brooks Plaintiffs alleged that DFW- and Houston-area Black and Hispanic voters "strongly prefer Democratic candidates," SAC, Doc. 357 ¶ 134 & 143,[4] provided detailed reconstituted election results showing that those candidates would carry the proposed illustrative districts by wide margins, *id.* ¶¶ 135, 144, and provided the demographic makeup of the proposed districts, *id.* ¶¶ 132, 133, 142. The only fair inference from the election results detailed in the Brooks Plaintiffs' second amended complaint, together with the demographic data and the

---

[4] State Defendants wrongly contend that the complaint fails to allege that Latino voters in DFW support Democratic candidates. Mot. at 7, Doc. 400. But it does precisely that. Brooks Pl. 2d Am. Compl, ¶ 134. Moreover, they contend that Brooks Plaintiffs only alleged Latino cohesion in Harris County, not proposed CD 29. Mot. at 7-8. But the Brooks Plaintiffs provide detailed reconstituted election results for proposed CD 29, which together with the demographic data allows the inference of strong political cohesion among Latinos that is sufficient for the pleading stage.

10

estimated Anglo support for Republican candidates detailed in the complaint, *see, e.g.,* SAC, Doc. 357 ¶¶ 137 & 145, is that Black and Latino voters are strongly politically cohesive.

In doing so, the Brooks Plaintiffs were responding to concerns State Defendants themselves raised in their motion to dismiss the Brooks Plaintiff's First Amended Complaint—the motion that was denied as moot given the parties' agreement to a new amendment deadline. In that motion, State Defendants acknowledged this Court's ruling that election results were sufficient to infer political cohesion at the pleading stage. Mot. at 7, Doc. 286. But State Defendants objected that the Brooks Plaintiffs' First Amended Complaint—which is now superseded—"does not replicate this with regard to the challenged House and Congressional Districts—no results of elections within the relevant areas are cited." *Id.*

The Brooks Plaintiffs did precisely what the State Defendants requested and what this Court has already determined to be sufficient for the pleading stage. The Court should reject the State Defendants' invitation to move to goalposts in their third motion to dismiss.

**III. The Brooks Plaintiffs have sufficiently alleged intentional discrimination with respect to HD118.**

The Brooks Plaintiffs have sufficiently alleged intentional discrimination with respect to HD118. State Defendants acknowledge that the Brooks Plaintiffs' complaint addresses "HD188 at length," Mot. at 8, Doc. 400, but contend that its allegations about intentional discrimination are too focused on how the House map was adopted, and not HD118 specifically. *Id.* at 8-9. Not so.

Just today, this Court denied a motion to dismiss intentional discrimination claims, citing facts in a complaint that relate to the *Arlington Heights* framework. Order at 11-12, Doc. 468. Likewise here, the Brooks Plaintiffs have alleged a number of facts that state a plausible claim of intentional discrimination with respect to HD118. For example, the Brooks Plaintiffs allege that Texas has a history of discrimination. SAC, Doc 357 ¶ 1, 115, 150, 198; *see Vill. of Arlington*

11

*Heights v. Metropolitan Housing Develop. Corp.*, 429 U.S. 252, 267 (1977) (explaining that historical background is relevant to intent claim). Second, Brooks Plaintiffs allege that the "last minute changes to the district that diluted Latino voting power," SAC, Doc. 357 ¶ 198, the refusal of the sponsor to explain the changes, SAC, Doc. 357 ¶ 179, and the rejection of the plan approved by the county delegation, SAC, Doc. 357 ¶ 178, reflect an intent to discriminate, *see Arlington Heights*, 429 U.S. at 267 (noting "specific sequence of events leading up to challenged decision" as relevant to intent finding). Third, the Brooks Plaintiffs allege procedural departures in the process by which the map was adopted, including the "refus[al] to allow invited expert witness testimony or resource witnesses at the Committee hearing at which the state house plan was adopted." SAC, Doc. 357 ¶ 198; *see Arlington Heights*, 429 U.S. at 267 (noting that procedural departures are relevant to intent inquiry). Fifth, the complaint details how the district departed substantively from the benchmark district. SAC, Doc. 357 ¶ 192; *see Arlington Heights*, 429 U.S. at 267 (substantive departures are relevant to intent inquiry). Sixth, the complaint details the reduction in Latino population and voter registration that was apparent from the TLC reports accompanying the map amendments, SAC, Doc. 357 ¶¶ 165-176, which is relevant to the legislature's intent of the foreseeable effects of its actions, *see Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 n.25 (1979).

      These allegations are more than sufficient to state a plausible claim for intentional discrimination in the adoption of HD118.

## CONCLUSION

      For the foregoing reasons, the State Defendants' motion to dismiss should be denied.

July 25, 2022                                    Respectfully submitted,

*/s/ Chad W. Dunn*
Chad W. Dunn (Tex. Bar No. 24036507)
Brazil & Dunn
4407 Bee Caves Road
Building 1, Ste. 111
Austin, TX 78746
(512) 717-9822
chad@brazilanddunn.com

*/s/ Mark P. Gaber*
Mark P. Gaber*
Mark P. Gaber PLLC
P.O. Box 34481
Washington, DC 20043
(715) 482-4066
mark@markgaber.com

Jesse Gaines* (Tex. Bar. No. 07570800)
P.O. Box 50093
Fort Worth, TX 76105
817-714-9988
gainesjesse@ymail.com

Molly E. Danahy*
P.O. Box 26277
Baltimore, MD 21211
(208) 301-1202
danahy.molly@gmail.com

Sonni Waknin*
10300 Venice Blvd. # 204
Culver City, CA 90232
732-610-1283
sonniwaknin@gmail.com


*Admitted *pro hac vice*

*Counsel for Plaintiffs*

13

## CERTIFICATE OF SERVICE

The undersigned here by certifies that a true and correct copy of the foregoing has been served on all counsel of record this 25th day of July, 2022, via the Court's CM/ECF system.

*/s/ Mark P. Gaber*

Mark P. Gaber