# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, et al., <br><br> Plaintiffs <br><br> v. <br><br> GREG ABBOTT, et al., <br><br> Defendants. | Civil Action <br><br> Lead Case No.: <br> 21-CV-00259-DCG-JES-JVB |
| ROSALINDA RAMOS ABUABARA, et al., <br><br> Plaintiffs <br><br> v. <br><br> JOHN SCOTT, et al., <br><br> Defendants. | Consolidated Case No.: <br> 1:21-CV-00965-RP-JES-JVB |

**ABUABARA PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
AND, IN THE ALTERNATIVE, CROSS-MOTION FOR LEAVE TO AMEND**

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... ii
TABLE OF AUTHORITIES ................................................................................................ iii
INTRODUCTION ................................................................................................................. 1
ARGUMENT ......................................................................................................................... 2
   I.     The Abuabara Plaintiffs adequately allege compactness as required by Section 2. ........... 2
   II.    The Abuabara Plaintiffs adequately allege the *Gingles* preconditions in Illustrative
        CD10. ............................................................................................................................ 8
CONCLUSION ................................................................................................................... 12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ala. State Conf. of the NAACP v. Ala.*,
No. 2:16-CV-731-WKW, 2020 WL 583803 (M.D. Ala. Feb. 5, 2022) ...................................4

*Arthur v. Maersk, Inc.*,
434 F.3d 196 (5th Cir. 2006) ...............................................................................................10

*Doe v. Columbia-Brazoria Indep. Sch. Dist.*,
855 F.3d 681 (5th Cir. 2017) .................................................................................................7

*Hale v. King*,
642 F.3d 492 (5th Cir. 2011) .................................................................................................5

*Hernandez v. Casey*,
No. 3:16-CV-452-M-BH, 2017 WL 685679 (N.D. Tex. Jan. 12, 2017) .................................7

*Inclusive Cmtys. Project, Inc. v. U.S. Dep't of Treasury*,
No. 3:14-CV-3013-D, 2016 WL 6397643 (N.D. Tex. Oct. 28, 2016) ....................................7

*Lormand v. US Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009) .................................................................................................5

*LULAC v. Perry*,
548 U.S. 399 (2006) ................................................................................................2, 3, 4, 5

*Mullenix v. Univ. of Tex. at Austin*,
No. 1:19-CV-1203-LY, 2021 WL 2172835 (W.D. Tex. Mar. 30, 2021) ................................7

*Residents of Gordon Plaza, Inc. v. Cantrell*,
25 F.4th 288 (5th Cir. 2022) ................................................................................................11

*Sanchez Oil & Gas Corp. v. Crescent Drilling & Prod., Inc.*,
7 F.4th 301 (5th Cir. 2021) ..................................................................................................10

*VeroBlue Farms USA, Inc. v. Wulf*,
465 F. Supp. 3d 633 (N.D. Tex. 2020) ..................................................................................7

**Other Authorities**

Fed. R. Civ. P. 12(g)(2) ................................................................................................................7

Fed. R. Civ. P. 15(a)(2) ..............................................................................................................10

Fed. R. Civ. P. 15(b)(1) ..............................................................................................................11

Plaintiffs Rosalinda Ramos Abuabara, Akilah Bacy, Orlando Flores, Marilena Garza, Cecilia Gonzales, Agustin Loredo, Cinia Montoya, Ana Ramón, Jana Lynne Sanchez, Jerry Shafer, Debbie Lynn Solis, Angel Ulloa, Mary Uribe, Luz Moreno, and Maria Montes (the "Abuabara Plaintiffs"), file this opposition to Defendants' Motion to Dismiss, ECF No. 399[1] ("Mot."), and in the alternative, cross-motion for leave to amend their complaint.

## INTRODUCTION

Apparently recognizing that the Abuabara Plaintiffs' Second Amended Complaint ("Complaint") cures the supposed deficiencies Defendants targeted in their previous motions to dismiss, Defendants have conjured two new arguments based upon a misreading of this Court's earlier opinion, which granted, in part, motions to dismiss claims raised by other plaintiffs in these consolidated cases. Neither of Defendants' new arguments can withstand scrutiny.

First, Defendants argue that the Abuabara Plaintiffs have failed to allege their illustrative majority-minority districts are "culturally compact." As a threshold matter, there is no reason why Defendants could not have raised this argument in either one of their two earlier-filed motions to dismiss the Abuabara Plaintiffs' claims. As a result, Defendants waived it by not raising it earlier. But regardless, the argument lacks merit. It would impose a novel, heightened pleading requirement for "cultural compactness" that has never before been adopted by any court. It depends upon assertions of fact—about differences between Latino communities—that fall outside of the four corners of the Complaint and may not properly be considered on a motion to dismiss. And it ignores the Abuabara Plaintiffs' ample allegations of Latino voters' cultural and political similarities in the illustrative districts.

---

[1] All ECF No. citations are to the docket for *LULAC v. Abbott*, No. 3:21-cv-259, unless otherwise specified.

1

Second, Defendants contend that the Abuabara Plaintiffs' challenge to Enacted CD27 must be dismissed because they have failed to allege that illustrative CD10, into which a portion of Enacted CD27's population is placed in the Abuabara Plaintiffs' demonstration maps, is a politically cohesive majority-minority district. Defendants' Motion is based on an oversight—the Abuabara Plaintiffs accidentally omitted specific cohesion figures for Latino voters in illustrative CD10. But the Abuabara Plaintiffs do allege that illustrative CD10 is a majority-Latino district and that Latino voters in that district—and across Texas—are politically cohesive. Taken as a whole, the Complaint includes ample factual allegations to render those allegations more than plausible. And if the Court thinks the omission of specific cohesion figures is dispositive, it should allow the Abuabara Plaintiffs to amend to add one. There can be no prejudice to Defendants, who have had those figures, from one of the Abuabara Plaintiffs' expert reports, for months.

The Abuabara Plaintiffs therefore respectfully request that the Court deny Defendants' Motion or, in the alternative, grant the Abuabara Plaintiffs leave to amend their complaint.

## ARGUMENT

**I.     The Abuabara Plaintiffs adequately allege compactness as required by Section 2.**

To satisfy the first *Gingles* precondition for a Section 2 claim, the Abuabara Plaintiffs need to establish that the minority group at issue is "'sufficiently large and geographically compact to constitute a majority in a single-member district.'" *LULAC v. Perry*, 548 U.S. 399, 427–28 (2006) (quoting *Thornburg v. Gingles*, 478 U.S. 30, 50 (1986)). This requirement focuses on "the compactness of the minority population, not . . . the compactness of the contested district." *Id.* at 433 (quoting *Bush v. Vera*, 517 U.S. 952, 997 (1996) (Kennedy, J., concurring)).

Defendants do not dispute that the demonstration maps described in the Abuabara Plaintiffs' Complaint show that additional majority-Latino or majority–Black and Latino districts may be drawn in each of the geographic areas in which the Abuabara Plaintiffs bring Section 2

2

claims. *See* Second Am. Compl. ¶¶ 84, 127, 134, 136, 160, 165-66, 178-79, 181, 186-88, 197-98, 201 & Exs. 1-4. And Defendants do not deny that those illustrative districts are geographically compact. Nor could they: in nearly all cases, they are more compact than the districts they replace. *See id.* ¶¶ 96, 102, 116-17, 140, 160, 187, 198.[2] Rather, Defendants argue that the illustrative districts are not "culturally compact," contending that they combine distinct Latino communities with disparate interests. Mot. at 2–7. There are at least four problems with this argument, each independently sufficient to warrant denial of this motion.

*First*, Defendants' "cultural compactness" argument overreads the U.S. Supreme Court's decision in *LULAC*, which does not impose a freestanding "cultural compactness" requirement, much less one that must be specifically alleged at the pleading stage. *LULAC*'s application of Section 2's compactness requirement was a fact-bound determination based on the extensive trial record in that case. It concerned an extraordinarily non-compact district: a "long, narrow strip that winds its way from McAllen and the Mexican-border towns in the south to Austin, in the center of the State and 300 miles away." *LULAC*, 548 U.S. at 424. And the district court, *after a trial*, made specific "findings regarding the different characteristics, needs, and interests of the Latino community near the Mexican border and the one in and around Austin." *Id.* at 434. Yet despite the

---

[2] Defendants complain, in passing, about the geographic size of certain districts, particularly in El Paso, and about the division of certain cities. Mot. at 4–5. But large districts in West Texas, and the division of some cities, are the unavoidable consequence of Texas's geography combined with the equal-population requirement. El Paso is too populous for one district and too small for two, and it is surrounded by very sparsely populated counties. Any map, including the enacted map, will therefore include at least one congressional district stretching from El Paso far to the east. The enacted map combined parts of El Paso with substantial parts of Bexar County in CD23; the Abuabara Plaintiffs' illustrative plan instead reinforces CD23's status as a border district by incorporating portions of Webb County. Defendants' other complaints about geographic splits are no more meritorious; many apply at least equally—if not more so—to Texas's own map. Regardless, these are issues for trial, as the relevant facts go far beyond the face of the Abuabara Plaintiffs' Complaint.

unusual shape of the district and specific findings about differences between communities within it, the district court in *LULAC* did not evaluate compactness for Section 2 purposes *at all*, concluding that "a district would satisfy § 2 no matter how noncompact it was, so long as all the members of a racial group, added together, could control election outcomes." *Id.* at 432.

The Supreme Court held that the district court's failure in *LULAC* to assess compactness was error, and that the district in question was not, under those extreme facts, compact. *Id.* at 434. But its holding was limited. It recognized that "in some cases members of a racial group in different areas—for example, rural and urban communities—could share similar interests and therefore form a compact district if the areas are in reasonably close proximity." *Id.* at 435. And it specifically "emphasize[d] it is the enormous geographical distance separating the Austin and Mexican-border communities, coupled with the disparate needs and interests of these populations—*not either factor alone*—that render[ed] District 25 noncompact for § 2 purposes." *Id.* (emphasis added).[3]

*LULAC*'s analysis was therefore heavily fact dependent and based on a complete evidentiary record following a trial. Defendants do not cite any case that has required allegations of "cultural compactness" at the pleading stage, and the Abuabara Plaintiffs are aware of none. In fact, *none* of the operative complaints filed in the last two decades of Texas redistricting litigation have specifically alleged "cultural compactness," rather than (like the Abuabara Plaintiffs'

---

[3] The other case on which Defendants rely, *Alabama State Conference of the NAACP v. Alabama*, No. 2:16-CV-731-WKW, 2020 WL 583803, at *22–25 (M.D. Ala. Feb. 5, 2022), is similarly inapt. There, the Middle District of Alabama found, again after a trial, that the plaintiffs had failed to prove a particular Black community was "sufficiently compact" due to a range of factors, including that the district was not "spatially concentrated" and was "formulated based upon a misconception concerning population deviations among districts," and because the map drawer did not consider "the regional, cultural, social, economic or political ties, if any" of the Black community in the proposed district." *Id.* at *21–25. The case provides further support for the Supreme Court's conclusion that there is "no precise rule" for Section 2 compactness. *LULAC*, 548 U.S. at 433.

4

complaint) geographic compactness and general "cohesiveness."[4]

*Second*, and relatedly, Defendants' "cultural compactness" argument violates the cardinal rule of motions to dismiss: it relies on assertions of fact that do not appear in the Complaint, and that contradict the Abuabara Plaintiffs' allegations. In deciding Defendants' motion, the Court must "confine [its] analysis to the complaint and its proper attachments," *Hale v. King*, 642 F.3d 492, 498 (5th Cir. 2011), and must "draw all reasonable inferences in the [Abuabara Plaintiffs'] favor." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). Yet Defendants' "cultural compactness" argument relies entirely on *Defendants'* own unsupported assertions that the Abuabara Plaintiffs' illustrative districts combine "many different Latino communities," Mot. at 3, "many disparate populations," *id.* at 4, and neighborhoods with "unique interests, concerns, and history," *id.* at 6. As Defendants admit, *id.* at 5–6, none of those assertions on which their argument depends appear anywhere in the Complaint, and they are not properly before the Court at the pleading stage. In contrast, in *LULAC*, there were specific factual findings on each of those issues. *See* 548 U.S. at 434.

*Third*, the Abuabara Plaintiffs' allegations, which must be taken as true at the pleading stage, support the inference that the minority communities at issue have similar "characteristics, needs, and interests"—which is all that *LULAC* requires even after a full trial. *See* 548 U.S. at 434.

---

[4] *See, e.g.*, First Am. Compl. ¶¶ 19, 22, *Session v. Perry*, No. 2:30-CV-254 (E.D. Tex. Nov. 7, 2003), ECF No. 39; Pl.'s First Am. Compl. ¶¶ 14-16, *Session v. Perry*, No. 2:30-CV-254 (E.D. Tex. Nov. 7, 2003), ECF No. 33; Texas-NAACP First Am. Compl., Req. for Declaratory Judgement Relief, and Req. for Injunctive Relief ¶¶ 3, 21, *Session v. Perry*, No. 2:03-CV-354 (E.D. Tex. Nov. 7, 2003), ECF No. 37; Pls.' Sixth Am. Compl. ¶ 27, *Perez v. Texas*, No. 5:11-CV-0360 (W.D. Tex. Feb. 25, 2014), ECF No. 960; LULAC Intervenors' Third Am. Compl. ¶ 17, *Perez v. Texas*, No. 11-CA-360 (W.D. Tex. Sep. 15, 2013), ECF No. 894; Pl. MALC's Third Am. Compl. ¶¶ 40, 44, 50, 52, 54, 55, 63, *Perez v. Texas*, No. SA-11-CA-360 (W.D. Tex. Sep. 17, 2013), ECF No. 897; Third Am. Compl. of Pl.-Intervenors Texas State Conference of NAACP Branches, Et Al. ¶¶ 42, 43, *Perez v. Texas*, No. SA-11-CA-360 (W.D. Tex. Sep. 18, 2013), ECF No. 900.

The Complaint alleges that Latino voters in each of the Abuabara Plaintiffs' illustrative majority-Latino districts—and Black and Latino voters in each of the Abuabara Plaintiffs' illustrative Latino-Black coalition districts—are politically cohesive, overwhelmingly supporting the same candidates in general elections. Compl. ¶¶ 89, 99, 107, 114, 128. The Complaint also alleges that those voting patterns "are driven in significant part by attitudes about race and ethnicity," including views on Texas' voting laws, Confederate monuments in public spaces, and immigration policy, *id*. ¶ 207, and that Latino and Black voters in Texas share a long history of marginalization and discrimination, *id*. ¶ 8, which has touched upon "[their] rights . . . to register, to vote, or to participate in the electoral process," *id.* ¶ 210. Finally, the Complaint alleges that Latino and Black communities across Texas have similar political needs, as they "make up a disproportionate number of individuals living in poverty," have lower median incomes and higher unemployment rates, *id.* ¶¶ 239–240, and are underrepresented in the State's elected offices. *Id.* ¶ 242. These allegations that the minority communities in the illustrative districts vote cohesively and share similar characteristics like economic status, employment, political representation, and a history with discrimination at the very least give rise to a plausible inference of "cultural compactness." No more would be needed to survive a motion to dismiss even if allegations of "cultural compactness" were required at the pleading stage.

*Finally*, Defendants waived any pleading-stage "cultural compactness" argument when they failed to include it in their first two motions to dismiss for failure to state a claim. The Abuabara Plaintiffs' allegations regarding "cultural compactness" were no more detailed in prior complaints than they are in the present Complaint. Defendants' "cultural compactness" argument has therefore been available to them since Plaintiffs filed their original complaint. Yet Defendants opted not to raise it until now.

6

Under Federal Rule of Civil Procedure 12(g), "a party that makes a motion under [Rule 12] must not make another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). And while Rule 12(h)(2) allows a defendant to raise a failure to state a claim in other ways as well, it does not authorize a successive Rule 12(b)(6) motion like the one Defendants bring here.[5] Courts in this circuit have therefore repeatedly held that a defendant may not move to dismiss an amended complaint on grounds that could have been, but were not, raised in moving to dismiss an earlier complaint. *See, e.g.*, *Mullenix v. Univ. of Tex. at Austin*, No. 1:19-CV-1203-LY, 2021 WL 2172835, at *2 (W.D. Tex. Mar. 30, 2021) ("The University omitted the Equal Pay Act retaliation argument from its first motion to dismiss and therefore Rule 12(g)(2) bars the argument in the University's second motion to dismiss," even though "Mullenix amended her complaint between the first and second motions to dismiss"); *VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 649 (N.D. Tex. 2020); *Hernandez v. Casey*, No. 3:16-CV-452-M-BH, 2017 WL 685679, at *3 (N.D. Tex. Jan. 12, 2017), *report and recommendation adopted*, No. 3:16-CV-452-M, 2017 WL 680309 (N.D. Tex. Feb. 21, 2017); *Inclusive Cmtys. Project, Inc. v. U.S. Dep't of Treasury*, No. 3:14-CV-3013-D, 2016 WL 6397643, at *8 (N.D. Tex. Oct. 28, 2016). Thus, the Court should not consider Defendants' argument regarding "cultural compactness."

---

[5] In *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 686 (5th Cir. 2017), the Fifth Circuit concluded that "Rule 12(h)(2) allows the filing of a second motion" to dismiss for failure to state a claim in at least some cases and held that a district court did not abuse its discretion by considering a defendant's successive motion to dismiss for failure to state a claim in a case where "there was no harm in allowing the second motion." Here, however, there is clear prejudice to the Abuabara Plaintiffs: had the issue been raised earlier, the Abuabara Plaintiffs could have addressed it, if necessary, in their Second Amended Complaint.

## II. The Abuabara Plaintiffs adequately allege the *Gingles* preconditions in Illustrative CD10.

The Abuabara Plaintiffs have also adequately alleged the first and second *Gingles* preconditions—the possibility of an additional, compact majority-Latino district and Latino cohesion within such a district—with respect to their Section 2 challenge to CD27. Defendants argue that the Abuabara Plaintiffs fail to adequately describe one of the majority-Latino districts that replaces CD27 in the Abuabara Plaintiffs' demonstration maps. Mot. at 7–8. Defendants are wrong.

At the outset, Defendants' argument is narrower than they let on. As the Complaint makes clear, the Abuabara Plaintiffs' demonstration maps place portions of enacted CD27 into two separate, majority-Latino illustrative districts: CD10 and CD34. Compl. ¶ 114. Plaintiffs Garza and Montoya, who live in Nueces County in enacted CD27, would reside in CD34 under the Abuabara Plaintiffs' illustrative map, while Plaintiff Moreno, who lives in Gonzales County in enacted CD27, would reside in illustrative CD10. *Id.* Defendants do not challenge the adequacy of the Abuabara Plaintiffs' allegations with respect to illustrative CD34. *See* Mot. at 7–8. Thus, their arguments regarding illustrative CD10 could not possibly justify the complete dismissal of the Abuabara Plaintiffs' challenge to CD27 that Defendants request. *See id.*

In any event, the Abuabara Plaintiffs also adequately allege the first two *Gingles* preconditions with respect to illustrative CD10. The Complaint attaches, as Exhibits 1 and 2, full images of the Abuabara Plaintiffs' demonstration maps showing what counties and portions of counties would be included within illustrative CD10. Compl. ¶ 84 & Ex. 1 & 2.[6] And the Complaint specifically alleges that illustrative CD10 is an "additional majority-Latino district," *id.*

---

[6] The two demonstration maps are identical in the South and West Texas area, including illustrative CD10. *Id.* ¶ 84.

8

¶ 108,[7] and that "Latino voters in Proposed CD10 are politically cohesive and may elect their candidates of choice," *id.* ¶ 114.

Moreover, other allegations in the Complaint reinforce the reasonable inference that Latinos in illustrative CD10 are politically cohesive. The Complaint specifically alleges that Latino voters *across Texas* are politically cohesive, explaining that "ecological regression analysis suggests that in the 2020 presidential election, more than 70 percent of Latino voters and more than 95 percent of Black voters statewide supported President Biden, the Latino and Black candidate of choice," and that "in the 2018 governor's race, more than 70 percent of Latino voters and more than 95 percent of Black voters supported candidate Lupe Valdez, the Latino and Black candidate of choice." *Id.* ¶ 205. And the Complaint explains that this is "driven in significant part by attitudes about race and ethnicity," because "[m]embers of the Democratic Party—which Latino and Black voters in the state overwhelmingly prefer—are significantly more likely to view Texas's voting laws as racially discriminatory, support removing Confederate monuments from public spaces, oppose immediate deportation of undocumented immigrants, and support comprehensive immigration reform with a pathway to citizenship than members of the Republican Party, which white voters overwhelmingly prefer." *Id.* ¶ 207. The Complaint provides specific numbers to support Latino cohesion in each of the other illustrative districts that the Abuabara Plaintiffs allege. *See id.* ¶¶ 89, 99, 107, 122, 128, 137, 141-44, 150-51, 154, 161, 163-64, 166, 168, 172, 174, 177, 180, 182, 189, 190, 199-200, 203. That detail makes it more than plausible that Latinos in illustrative CD10, too, are politically cohesive.

---

[7] The Complaint elsewhere explains that the additional majority-Latino districts in the demonstration maps, which include illustrative CD10, are ones in which Latino voters "form a numerical majority of eligible voters"—that is, a majority of the citizen voting-age population. *Id.* ¶ 84.

At best, Defendants' arguments about illustrative CD10 arise from a mere oversight: the Abuabara Plaintiffs' unintentional omission from their 61-page Complaint of specific descriptions of Latino cohesion in illustrative CD10, along the lines of such paragraphs that were included for all other illustrative districts. *See, e.g.*, Compl. ¶¶ 163-64. The Complaint specifically cross-references such a discussion for illustrative CD10, *see id.* ¶ 114 ("*As explained below*, Latino voters in Proposed CD10 are politically cohesive and may elect their candidates of choice." (emphasis added)), but that discussion was unintentionally left out of the filed Complaint. As Defendants well know, the Abuabara Plaintiffs have done the necessary analysis to specifically allege facts showing Latino cohesion in illustrative CD10—such analysis was included in one of the Abuabara Plaintiffs' expert reports that was served on Defendants on May 20. *See* Expert Rep. of Dr. Stephen Ansolabehere, tbl. 14, 15 (May 20, 2022), Exhibit A hereto. Given the level of detail provided throughout the Complaint and in the demonstration maps attached thereto, Defendants have no plausible reason to wonder about the contours of Plaintiffs' claim or illustrative districts. *See Sanchez Oil & Gas Corp. v. Crescent Drilling & Prod., Inc.*, 7 F.4th 301, 309 (5th Cir. 2021) (The purpose of Rule 8's pleading requirements is "to give the defendant fair notice of what the claim is and the grounds upon which it rests." (quotation marks and alteration omitted)).

If the Court concludes that the Abuabara Plaintiffs' omission of additional factual detail regarding Latino cohesion in illustrative CD10 is dispositive of Defendants' newest motion to dismiss, it should allow the Abuabara Plaintiffs to file an amended complaint adding the omitted information. Amending for that limited purpose would in no way prejudice Defendants or alter the course of this litigation. A proposed amended complaint showing the changes in redline is attached as Exhibit B.

Leave to amend should be freely given. Fed. R. Civ. P. 15(a)(2). Rule 15 helps "ensure that an inadvertent error in pleading will not preclude a party from securing relief on the merits of a claim." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 202 (5th Cir. 2006). A district court "may only deny leave for a substantial reason, such as undue delay, repeated failures to cure deficiencies, undue prejudice, or futility." *Residents of Gordon Plaza, Inc. v. Cantrell*, 25 F.4th 288, 302 (5th Cir. 2022) (quotation omitted). Indeed, Rule 15 makes clear that, even during trial itself, "[t]he court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits." Fed. R. Civ. P. 15(b)(1).

None of the reasons for denying leave to amend apply here. The Abuabara Plaintiffs have not delayed in seeking leave to further amend. Nor have they "repeatedly failed to cure deficiencies": the issue that Defendants raise with illustrative CD10 was an error introduced only in the Abuabara Plaintiffs' latest Complaint. Defendants will not be prejudiced by allowing further amendment, which will only add additional factual detail on cohesion that has been available to Defendants, via the Ansolabehere Report, for months.[8] And amending at this juncture will not delay these proceedings. Fact discovery in this matter is already closed, Plaintiffs will serve their rebuttal expert reports just two days from today, and Dr. Ansolabehere is scheduled to be deposed later this week. By the time this motion is fully briefed, both fact and expert discovery will be concluded, and the parties will have filed summary judgment motions. Plaintiffs do not seek to add any additional claims or grounds for relief, but rather to conform their pleadings to reflect data that Defendants have had for over two months. Nothing that the Abuabara Plaintiffs would add in

---

[8] Defendants do not suggest that it would be futile for the Plaintiffs to further amend their complaint. And they do not argue that the ecological inference analysis Plaintiffs alleged for any other illustrative districts is insufficient to plead political cohesion.

a third amended complaint will come as a surprise to Defendants. In short, granting leave for further amendment would not in any way affect the litigation of this case or Defendants' ability to prepare for trial.

## CONCLUSION

For these reasons, the Court should deny Defendants' Motion to Dismiss the Abuabara Plaintiffs' Second Amended Complaint in its entirety, or, in the alternative, should the Court find their allegations deficient with respect to illustrative CD10, grant leave to amend for the limited purpose of alleging demographic data and ecological inference estimates for illustrative CD10, as shown by Exhibit B hereto.

Dated: July 25, 2022.                    Respectfully submitted,
                                         /s/ David R. Fox

                                         Renea Hicks
                                         Attorney at Law
                                         Texas Bar No. 09580400
                                         **Law Office of Max Renea Hicks**
                                         P.O. Box 303187
                                         Austin, Texas 78703-0504
                                         (512) 480-8231
                                         rhicks@renea-hicks.com

                                         Abha Khanna*
                                         **ELIAS LAW GROUP LLP**
                                         1700 Seventh Ave, Suite 2100
                                         Seattle, WA 98101
                                         Telephone: (206) 656-0177
                                         akhanna@elias.law

                                         David R. Fox*
                                         Richard A. Medina*
                                         Harleen K. Gambhir*
                                         **ELIAS LAW GROUP LLP**
                                         10 G Street NE, Suite 600
                                         Washington, D.C. 20002
                                         Telephone: (202) 968-4490
                                         dfox@elias.law
                                         rmedina@elias.law
                                         hgambhir@elias.law

                                         Kevin J. Hamilton*
                                         **PERKINS COIE**
                                         1201 Third Avenue
                                         Suite 4900
                                         Seattle, WA 98101-3099
                                         Telephone: (206) 359-8000
                                         khamilton@perkinscoie.com

                                         *Counsel for Plaintiffs*

                                         *Admitted Pro Hac Vice*

## CERTIFICATE OF CONFERENCE

Counsel for the Abuabara Plaintiffs conferred with counsel for Defendants on the Abuabara Plaintiffs' alternative request for leave to amend their complaint, and counsel for Defendants indicated that they oppose the relief sought.

*/s/ David R. Fox*

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on July 25, 2022, and that all counsel of record were served by CM/ECF.

*/s/ David R. Fox*