# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, et al., <br><br> Plaintiffs <br><br> v. <br><br> GREG ABBOTT, et al., <br><br> Defendants. | Civil Action <br><br> Lead Case No.: <br>     3:21-CV-00259-DCG-JES-JVB |
| ROSALINDA RAMOS ABUABARA, et al., <br><br> Plaintiffs <br><br> v. <br><br> JOHN SCOTT, et al., <br><br> Defendants. | Consolidated Case No.: <br>     1:21-CV-00965-RP-JES-JVB |

**ABUABARA AND LULAC PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL DEFENDANT JOHN SCOTT TO PRODUCE DOCUMENTS**

The Abuabara and LULAC Plaintiffs seek documents from Texas's chief elections officer regarding redistricting and Texas's history of voting-related discrimination. After months of stringing Plaintiffs along in negotiations on search terms, Defendants abruptly declared at the close of discovery that they would review for potential production only a small fraction of documents identified by Plaintiffs' (substantially narrowed) search terms. Now, Defendants raise a litany of excuses: that the documents are irrelevant, that Plaintiffs somehow delayed seeking the documents, that production would be burdensome, and that Defendants for some reason need only produce a small portion of the documents. *See* Opp'n to Mot. to Compel, ECF No. 452 ("Opp."). None of this is remotely sufficient to justify Defendants' failure to comply with their discovery obligations. Plaintiffs seek documents directly relevant to their claims and have worked diligently with Defendants to narrow the applicable search terms. Defendants could have started production weeks ago and avoided this dispute, but they chose not to do so. Finally, Defendants' sampling proposal is not a "reasonable alternative" to production of requested documents. They cite only cases in which sampling was permitted as an *initial* step in an ongoing discovery process, rather than a final step. The Court should order Defendants to promptly produce the requested documents.

I. **The requested documents are relevant to Plaintiffs' claims.**

Under Rule 26(b), "[r]elevant information encompasses any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Crossland v. Nationwide Mut. Ins. Co.*, No. EP-18-CV-00085-DCG, 2018 WL 4905354, at *1 (W.D. Tex. Oct. 9, 2018) (Guaderrama, J.) (citation omitted); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *Crossland*, 2018 WL 4905354, at *1 (citation omitted).

It can hardly be disputed that the documents Plaintiffs seek are relevant. Both the Abuabara

1

and LULAC Plaintiffs bring claims under Section 2 of the Voting Rights Act. Consequently, they must present evidence that under the totality of the circumstances, Latino and Black voters in Texas have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. 52 U.S.C. § 10301(b). Factors relevant to this analysis include the history of official voting-related discrimination in the state, the extent to which minority group members bear the effects of discrimination, and the use of overt or subtle racial appeals in political campaigns. *See* S. Rep. No. 97-417, at 29 (1982).

The Secretary of State is Texas's chief election officer and likely has documents "relating to racial voting patterns and voting discrimination." *See* Abuabara & LULAC Pls.' Mot. to Compel Def. John Scott to Produce Documents at 2, ECF No. 410 ("Mot."). For example, as the state's chief election administrator, the Secretary likely received complaints regarding racial discrimination in voting or comments regarding the effects of redistricting that may be directly relevant to the totality of the circumstances analysis. The Secretary also likely engaged in internal analysis and discussion with county election officials with respect to restrictions on voting, voter identification programs, the opening or closing of polling places, the impact of polling place lines, and a myriad of other factors that may have erected barriers to voting by minority populations. This material is directly relevant to Section 2's totality of the circumstances analysis, and to the LULAC Plaintiffs' claims that Defendants violated the 14th Amendment of the U.S. Constitution.

Plaintiffs' narrow search terms regarding redistricting and Texas's history of discrimination resulted in numerous hits, suggesting that the Secretary's office possesses a significant body of responsive documents. *See* ECF No. 410-2 (listing search terms and hits). Defendants broadly claim the documents Plaintiffs seek are not relevant, *see* Opp. at 6, but they identify no particular search term or string as resulting in irrelevant documents – nor do they

provide any examples of supposed "irrelevant" documents that resulted from the search terms. Defendants' remaining arguments regarding relevance are non-sequiturs. Defendants claim certain election data is publicly available, *id.*, but have never indicated that Plaintiffs' search terms resulted in such publicly available election data, which Plaintiffs would have agreed to exclude from any search. Defendants also point to documents that were *not* produced in response to Plaintiffs' search terms, *see id.* at 1, which demonstrates nothing about whether Plaintiffs' search terms result in responsive documents.

## II. Defendants have not established that production would be unduly burdensome.

"The party resisting discovery 'must show specifically . . . how each [request] is not relevant or how each question is overly broad, burdensome or oppressive.'" *Tsanacas v. Amazon.com, Inc.*, No. 4:17-CV-00306, 2018 WL 324447, at *2 (E.D. Tex. Jan. 8, 2018) (alterations in original) (quoting *McLeod, Alexander, Power & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)). Defendants have failed at that task. Defendants have not even attempted to demonstrate that reviewing the documents in question and producing those that are responsive and nonprivileged would be unduly burdensome, particularly given the importance of this litigation.[1]

In any event, the volume of documents here is hardly excessive. It is not unusual for defendants to produce tens of thousands of documents in federal litigation, *e.g.*, *Howard v. Cook*

---

[1] Defendants claim federal courts routinely deny motions to compel that seek a similar volume of documents as here, but each case they cite is easily distinguishable. *See General Electric Co. v. Mitsubishi Heavy Indus., Ltd.*, No. 3:10-cv-276, 2011 WL 13201860, at *3 (N.D. Tex. Aug. 18, 2011) (requiring movants to narrow document requests due to Germany privacy laws, and requiring opposing party to make all documents available for inspection so that movant could issue new request); *City of Seattle v. ZyLAB North America, LLC*, No. 2:17-cv-790, 2017 WL 4418636, at *3–4 (W.D. Wash. Oct. 5, 2017) (denying motion to compel where many of the requested documents had already been produced in response to other requests, and where claim related to how the same documents had been produced in the past); *Moore v. Publicis Groupe*, 287 F.R.D. 182, 184, 187 (S.D.N.Y. 2012) (allowing software to review over three million documents, and explaining that the court *rejected* producing party's request that production be capped at 40,000 documents).

*Cnty. Sheriff's Off.*, No. 17 C 8146, 2020 WL 1445620, at *1 (N.D. Ill. Mar. 25, 2020); *Counts v. Gen. Motors, LLC*, No. 16-CV-12541, 2018 WL 2717484, at *2 (E.D. Mich. June 6, 2018), and, as explained below, any time-related burdens are of the Defendants' own making.

### III. Plaintiffs worked continuously with Defendants to narrow search terms.

Plaintiffs served the document requests at issue in early March 2022 and have diligently negotiated with Defendants since that time. Defendants claim Plaintiffs "substantially delayed" in proposing new search terms, Opp. at 7-9, but fail to mention their insistence that proposed search terms be presented together on behalf of all private plaintiff groups and the United States together. *See* ECF No. 410-12 at 2. Doing so required considerable coordination during an extraordinarily busy discovery period. And despite Plaintiffs' multiple proposals, Defendants provided no guidance on which search terms were objectionable, despite having access to the results of the searches, thereby forcing Plaintiffs to guess at what would satisfy Defendants' demand for "more reasonable search terms." *See* Opp. at 8.

Defendants suggest that the timing of Plaintiffs' motion precludes relief but cite cases that are either inapplicable or involve delay far more extreme than this case.[2] Defendants also fault Plaintiffs for filing the present motion near the end of the discovery period. *See* Opp. at 9. But Defendants continually rebuffed Plaintiffs' requests for particularized objections to search terms and waited until Plaintiffs' conferral over this motion to provide a revised proposal. Mot. at 4. Plaintiffs can hardly be faulted for Defendants' sandbagging and are entitled to receive documents responsive to their requests.

---

[2] *See Garrett v. Judson ISD*, No. 5:06-cv-174, 2007 WL 172542, at *1 (W.D. Tex. Jan. 17, 2007) (denying motion to extend discovery deadlines); *Biggers v. Napier*, No. 5:16-cv-170, 2018 WL 4701844, at *1 (M.D. Ga. July 30, 2018) (denying motion to compel filed six months after opposing party moved for summary judgment, and where moving party failed to confer with opposing party); *Knight v. Ill. Dep't of Nat. Res.*, No. 2:11-cv-2071, 2014 WL 1282554, at *3–4 (C.D. Ill. Mar. 31, 2014) (denying motion to compel filed after close of discovery where motion sought documents that were never the subject of a request for production).

4

IV. **Sampling cannot be used as a final method of production.**

Finally, Defendants suggest use of a novel sampling methodology. There is no justification for such an approach here. Indeed, under Defendants' proposed sampling methodology, most of the potentially responsive documents would never even be reviewed. Defendants claim sampling is a "reasonable alternative" to reviewing responsive documents, Opp. at 10, but in support they cite cases in which sampling was used as a first step to direct further discovery. In *Moore v. Publicis Groupe*, the court approved an agreement between the parties to use a 2,400-document sample to train software that would then review over 3,000,000 documents. 287 F.R.D. 182, 184, 187 (S.D.N.Y. 2012). And in *Old Republic National Title Insurance Company v. Kensington Vanguard National Land Services of Texas LLC*, the court ordered respondents to produce a sample of documents but also provided that "[i]f, after obtaining the reasonable random sample, [the requesting parties] ha[d] a basis to request that [respondents] produce a larger sample of, or all, documents . . . they may serve requests for the production of such documents." No. 3:17-CV-1014-D, 2017 WL 8677357, at *2 (N.D. Tex. May 10, 2017). Defendants do not propose sampling as an initial tool to adjust search terms—had they done so at the outset, Plaintiffs would have considered it. Instead, Defendants proposed it after months of negotiation over search terms, as a complete discharge of their production obligations. In any event, at this point in the case, a multistep process is impractical.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that the Court should order Defendants to review documents using the search terms and custodians in Exhibit A to their Motion, to promptly produce responsive non-privileged documents, and to provide a privilege log for any documents withheld on privilege grounds.

Dated: July 27, 2022

Renea Hicks
Attorney at Law
Texas Bar No. 09580400
Law Office of Max Renea Hicks
P.O. Box 303187
Austin, Texas 78703-0504
(512) 480-8231
rhicks@renea-hicks.com


Kevin J. Hamilton*
PERKINS COIE LLP
1201 Third Avenue
Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
khamilton@perkinscoie.com

Respectfully submitted,

/s/ David R. Fox

Abha Khanna*
ELIAS LAW GROUP LLP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
Telephone: (206) 656-0177
akhanna@elias.law

David R. Fox*
Harleen Gambhir*
Richard A. Medina*
ELIAS LAW GROUP LLP
10 G Street NE, Suite 600
Washington, D.C. 20002
Telephone: (202) 968-4490
dfox@elias.law
hgambhir@elias.law
rmedina@elias.law


*Counsel for the Abuabara Plaintiffs*

s/ Nina Perales
Nina Perales
Samantha Serna
Fátima Menendez
Kenneth Parreno*
Mexican American Legal Defense and Educational
Fund (MALDEF)
110 Broadway Street, Suite 300
San Antonio, TX 78205
(210) 224-5476
Fax: (210) 224-5382

*Counsel for LULAC Plaintiffs*

*Admitted pro hac vice

6

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on July 27, 2022, and that all counsel of record were served by CM/ECF.

*/s/ David R. Fox*
