IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| THE LEAGUE OF UNITED LATIN AMERICAN CITIZENS (LULAC), et al., <br><br> Plaintiffs, <br><br> v. <br><br> GREG ABBOTT, et al., <br><br> Defendants. | Civil Action No. 3:21-cv-259 (DCG-JES-JVB) <br> (consolidated cases) |

**UNITED STATES' MEMORANDUM IN OPPOSITION TO TEXAS LEGISLATIVE COUNCIL AND JEFFREY ARCHER'S MOTION TO QUASH AND FOR PROTECTIVE ORDER**

# INTRODUCTION

The Texas Legislative Council (TLC) has historically played a critical role in Texas' legislative redistricting process. Its structure and capabilities reflect that role: it has a dedicated research division that includes mapping and redistricting among its tasks and makes available a number of redistricting-related services to legislators. It also developed, supports, and trains legislators and staff to use sophisticated mapping software for Texas redistricting known as RedAppl. Its instrumental place in the redistricting process has made the TLC and specifically Jeffrey Archer—now Executive Director of the TLC—an important deponent in prior redistricting litigation.

In light of the TLC's role in Texas redistricting and Mr. Archer's unique historical insight into the process, the United States has subpoenaed Mr. Archer for deposition testimony regarding Texas' 2021 redistricting. It has not done so lightly. Mr. Archer is the individual best positioned to describe the role that the TLC did or did not play in the most recent redistricting cycle, and how it compares with or differs from prior redistricting cycles. Mr. Archer may also testify about the decisions made to hire outside counsel and his understanding of those decisions, as well as answer questions about the RedAppl system and documents and data provided to legislators along with RedAppl access.

The United States previously agreed to limit the duration of any deposition of Mr. Archer, which is relief Mr. Archer now requests from this Court. While limiting the topics about which Mr. Archer may be deposed in advance is not appropriate, a sharp time limitation should resolve Mr. Archer's concerns; it will by necessity focus questioning and preclude redundancy. The Court should accordingly deny Mr. Archer's motion to quash and for a protective order, subject to an agreement to limit Mr. Archer's deposition to three hours of record time.

## BACKGROUND

Movant Jeffrey Archer is the Executive Director and a longtime employee of the Texas Legislative Council (TLC), a nonpartisan Texas agency that provides research and services to the Texas Legislature and legislative agencies, such as legislative drafting assistance, policy research, and bill analysis. *See* Archer Decl. ¶¶ 1-2, 5-6. A division of the TLC assists with data analysis, mapping, and redistricting, including "prepar[ing] district and policy issue maps and maintain[ing] election, census, and geographic databases and mapping and redistricting applications." Archer Decl. ¶ 6. The TLC is also "in charge of the tools and technology" that it makes available to legislators who need assistance with redistricting, including "a sophisticated mapping software" called RedAppl. Archer Decl. ¶¶ 6-7. The TLC's redistricting-related expertise, capabilities, and Texas-specific software development reflect the unique and important role the TLC has historically played in Texas' redistricting process, which are the reason Mr. Archer has been deposed in prior redistricting litigation, *see* Archer Decl. ¶ 9.

The United States served a Rule 45 deposition subpoena on Mr. Archer on July 8, 2022. *See* Ex. 1. The parties met and conferred regarding Mr. Archer's deposition, and the United States offered to limit the time of Mr. Archer's deposition to a half day. The parties could not reach agreement, and Mr. Archer's motion follows.

## LEGAL STANDARD

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The Court may limit the "frequency or extent of discovery" if it determines that "the discovery sought would be unreasonably cumulative or duplicative, or can be obtained from

some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C).

A party may serve a subpoena under Rule 45 to "command attendance at a deposition." Fed. R. Civ. P. 45(a)(1)(B). The recipient of a subpoena may move to quash for one of four reasons specified in Rule 45: the subpoena "(1) fails to allow a reasonable time for compliance; (2) requires a person who is not a party to travel more than 100 miles from where the person resides; (3) requires disclosure of privileged or protected matter; or (4) subjects a person to undue burden." *Tex. Keystone, Inc. v. Prime Nat. Res., Inc.*, 694 F.3d 548, 554 (5th Cir. 2012). "The proponent of a motion to quash must meet the heavy burden of establishing that compliance with the subpoena would be unreasonable and oppressive," *SEC v. Reynolds*, 3:08-CV-0438, 2016 WL 9306255, at *2 (N.D. Tex. Apr. 29, 2016), and the oppressiveness of a subpoena "must be determined according to the facts of the case." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). Thus, "a court should give a wider berth of discovery to subpoenas that concern substantial national, rather than merely parochial, interests." *In re Subpoenas to Plains All Am. Pipeline, L.P.*, No. 3:13-2975, 2014 WL 204447, at *3 (S.D. Tex. Jan. 17, 2014). "It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error." *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979).

## ARGUMENT

### I. The United States Will Limit Mr. Archer's Deposition to Three Hours and a Protective Order Is Therefore Unnecessary.

This dispute can be narrowed considerably. In an effort to avoid a motion to quash Mr. Archer's subpoena, the United States had offered prior to the motion to limit Mr. Archer's deposition to a half-day. Even though the motion has materialized, the United States will

3

stipulate to the three-hour limitation that Mr. Archer proposes without the need to enter a protective order. While the United States cannot agree to limit the scope of the questions it plans to ask Mr. Archer in advance, this sharp limitation on deposition time will require the United States to focus on the most relevant questions.

In other respects, a protective order is not warranted and has the potential to cause substantial confusion, especially at a deposition far shorter than Rule 30 allows. Limiting Mr. Archer's testimony to "topics on which Mr. Archer was not previously deposed" in prior litigation, Archer Mot. at 10, is unnecessary and could cause administrability problems. First, allowing prior-litigation testimony to foreclose new and fresh inquiry regarding the most recent redistricting cycle is not consistent with the liberal discovery regime of the Federal Rules, and could substantially inhibit the United States' ability to discover facts relevant to this litigation. Second, even if testimony in a prior litigation were theoretical grounds to limit the inquiry here, Mr. Archer has not shown that the United States will only restate questions to which he has provided full answers with no unchanged facts since his depositions in earlier litigation, and indeed that is not the United States' intention. Topics such as the role of the TLC in the 2021 redistricting, how that role compares or contrasts with its role in prior redistricting cycles, and how any of the underlying facts about the TLC's services have or have not changed since Mr. Archer was deposed in prior litigation cannot be addressed by prior-litigation deposition transcripts. And finally, the proposed limitation could create administrability problems over when a "topic" was part of the questioning in the prior litigation and the extent to which any questions about that "topic" in prior litigation foreclose new or different questions on the same topic, let alone questions about changes in the underlying facts. For example, that the TLC's role in redistricting may have been discussed in prior litigation should not foreclose questions

4

about how that role may have differed in 2021 from prior redistricting cycles, which specific actions the TLC undertook, or aspects of its role that were not explored in detail in prior litigation that may be more relevant here. Rather than risk disruption and the need to parse prior testimony—off-record time that would prolong the deposition and burden Mr. Archer—the three-hour time limitation will necessarily have the burden-limiting effect that Mr. Archer seeks.[1]

The Court should also deny a protective order that prevents asking questions about Mr. Archer's "legal opinions or . . . privileged actions or communications." Archer Mot. at 10. Such an order would create two problems. First, the United States cannot know in advance about the topics or conversations over which Mr. Archer will claim privilege. Insofar as Mr. Archer intends to claim legislative privilege, consistently applying the procedures established in this Court's May 18, 2022 Order, ECF No. 282, would better protect Mr. Archer and all parties from undue burden. If a party intends to use deposition testimony subject to a claim of legislative privilege, a host of issues may be involved, including the scope of the privilege, whether the qualified privilege is overcome, and whether non-legislators are entitled to assert the privilege at all. Rather than risk the possibility that legislators and non-legislators alike will need to sit for additional depositions following determination of these issues, the court's established procedure safeguards witnesses' time without prejudicing third-party legislators' ability to assert the privilege against use of the testimony to resolve disputed issues in this case. To the extent Mr. Archer wishes to claim a privilege from disclosure such as the attorney-client privilege, it can be asserted using the standard procedures for depositions. No protective order is needed. *See* Fed. R. Civ. P. 30(c)(2) ("[T]he testimony is taken subject to any objection. An objection must be

---

[1] Furthermore, because Mr. Archer has been subpoenaed in his individual capacity rather than as a Rule 30(b)(6) witness for the TLC, there is not any burden on him to research or gain knowledge in preparation for his testimony as there would be with a corporate representative.

5

stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."). Indeed, objections that information is covered by the attorney-client privilege or by the hypothetical protective order would seem to collapse into one, rendering a protective order redundant.

Second, the United States needs the opportunity to probe assertions of privilege. To the extent Mr. Archer intends to assert attorney-client privilege or other privileges from disclosure in response to questions about the TLC's involvement in redistricting, redistricting conversations with legislators or staff, or other matters, follow-up questioning to help determine whether the privilege applies as asserted is appropriate and often necessary. *See, e.g.*, *Advocare Int'l, L.P. v. Horizon Lab'ys, Inc.*, No. 3:04-cv-1988, 2006 WL 8437063, at *4 (N.D. Tex. Jan. 23, 2006) ("[A] record that lacks follow-up questions impedes the Court's ability to determine the applicability of attorney-client privilege."); *see also Kaiser v. Mut. Life Ins. Co. of New York*, 161 F.R.D. 378, 380 (S.D. Ind. 1994) ("Protective orders prospectively suppressing depositions are rarely granted; deponents are expected instead to assert their objections during the deposition and to allow questioning parties to develop circumstantial facts in order to explore the propriety of the assertion of the privilege, immunity, or other objection."); *cf. N.L.R.B. v. Mod. Drop Forge Co.*, 108 F.3d 1379 (7th Cir. 1997) (collecting cases). Accordingly, prospective limitation of Mr. Archer's deposition to prevent inquiry into "privilege actions or communications" would unduly limit the United States' ability to ask these follow-up questions.

## II. Mr. Archer's Motion to Quash Should Be Denied.

Mr. Archer has not demonstrated that extraordinary circumstances warrant quashing his deposition subpoena. Mr. Archer contends that his deposition should be quashed because (1)

Mr. Archer has been deposed in prior matters regarding RedAppl, and therefore deposing him in connection with the 2021 redistricting cycle would be unduly burdensome, (2) Mr. Archer "lacks superior or unique information related to this redistricting process," and (3) Mr. Archer lacks authority to provide "definitive or binding legal opinions" with respect to the legality of Texas' 2021 redistricting "processes and decisions." Mot. at 6. However, given Mr. Archer's and the TLC's importance to the Texas redistricting process and his unique insight into how and why that role changed or remained the same in 2021, these are not reasons to quash his deposition. The United States intends to ask Mr. Archer relevant questions about the 2021 redistricting process, and to the extent Mr. Archer is burdened by the need to testify, the agreed time limitation on Mr. Archer's deposition should address those concerns while safeguarding the United States' ability to discover important information.

### A. Potential Privilege Assertions Are Not Grounds to Quash.

Mr. Archer has not shown that potential privilege assertions should bar his deposition. Although Mr. Archer has identified categories of information over which he anticipated asserting privilege, he has not shown that he possesses only privileged information, and the United States understands there to be relevant topics—such as Mr. Archer's observations of the differences between the most recent and prior redistricting cycles—that do not call for privileged information. Moreover, as discussed above, *supra* Part I, privilege assertions can be appropriately addressed under the Federal Rules, and doing so would be most efficient for all parties. At minimum, and particularly because it is not possible to know in advance the full scope of the privilege Mr. Archer will assert when asked specific questions, the United States must have the opportunity to "develop circumstantial facts in order to explore the propriety of

7

the assertion of the privilege, immunity, or other objection." *Alexander v. F.B.I.*, 186 F.R.D. 78, 97 (D.D.C. 1998) (quoting *Kaiser*, 161 F.R.D. at 380).

Mr. Archer also asserts that his conversations with legislators "in order to determine originations, rationales, or motivations for particular map proposals" and "analyses considered in drafting redistricting proposals" are subject to the legislative privilege. Mot. at 7. This Court has already established a procedure for asserting legislative privilege which does not require withholding testimony, much less quashing a deposition. *See* May 18, 2022 Order, ECF No. 282. Mr. Archer offers no reason why this procedure would be inadequate at his deposition, and straying from this procedure could substantially increase the burden on Mr. Archer and the parties in the event certain conversations or information is later found to be outside the scope of the privilege, or the qualified privilege is overcome.

Finally, although the United States understands Mr. Archer is an attorney and may provide legal counsel as part of his role at the TLC, the authority cited regarding depositions of attorneys for a party are inapposite to this motion. Mr. Archer does not represent a party to this action, and he has been served with a Rule 45 third-party subpoena.[2] The cases Mr. Archer relies upon set forth the test for depositions of opposing counsel. *See Gates v. Tex. Dep't of Family & Protective Servs.*, No. A-09-cv-018, 2010 WL 11598033, at *1-2 (W.D. Tex. Oct. 7, 2010) ("Litigation Counsel" for defendant); *Securus Techs., Inc. v. Glob. Tel*Link Corp.*, 331 F. Supp. 3d 633, 638 (N.D. Tex. 2017) (applying factors under *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986), to deposition of lawyer who represented plaintiff during *inter partes* review of patent). The concerns that underlie *Shelton*, such as disruption of the adversarial system and

---

[2] The TLC was similarly served with a Rule 45 third-party document subpoena earlier in this litigation. *See* Subpoena to Texas Legislative Council (Feb. 28, 2022), ECF No. 219-3; *see also* Order Denying Motion to Quash TLC Subpoena, ECF No. 377.

8

improper insight into opposing counsel's strategy, detraction from one of the litigants' attorney-client relationship, and substantial delay, *see* 805 F.2d at 1327, are not present here, where the witness to be deposed is not counsel to an opposing party involved in litigating this case, but rather a witness to the underlying facts. Moreover, there is no reasonable alternative to Mr. Archer's testimony to compare the TLC's role in this case to prior redistricting, given his intimate familiarity with the TLC's past role, as well any reasons for that change from the TLC's perspective. Mr. Archer's testimony is also required to answer questions about the RedAppl-related documents and materials that have been produced.

### B. Mr. Archer Will Not Be Asked to Analyze the United States' Claims.

Mr. Archer's motion does not identify the grounds for his belief that the United States will depose him to "seek his opinions or impressions about this case," Mot. at 8. Mr. Archer may be asked about topics including how his or TLC's involvement in Texas' 2021 redistricting was similar or dissimilar to prior redistricting cycles, his understanding of why that may or may not have been so, what guidance the TLC prepared around the Voting Rights Act, nonprivileged conversations he had about Voting Rights Act compliance (including whether any such conversations occurred), and other questions that may bear on the legality of Texas' 2021 redistricting. These questions bear on, among other potentially relevant inquiries, the "totality of the circumstances" analysis under Section 2 of the Voting Rights Act. 52 U.S.C. § 10301(b); *Thornburg v. Gingles*, 478 U.S. 30, 46 (1986); *see also Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 267 (1977) (categorizing the "specific sequence of events leading up to the challenged decision" and "[d]epartures from the normal procedural sequence" as circumstantial evidence of a racially discriminatory purpose).

That Mr. Archer cannot bind Texas to a position on the legality of the 2021 redistricting does not render his testimony irrelevant.  Mr. Archer is a unique witness to a host of relevant non-privileged facts that are highly pertinent to a Voting Rights Act analysis.  Mr. Archer is not being subpoenaed by the United States to provide his opinions or impressions of the United States' claims here.  This concern should stand as no obstacle to his deposition.

### C.  Mr. Archer's Testimony Is Not Duplicative.

Mr. Archer also suggests that the United States does not need to depose him because (a) the United States already has access to the RedAppl system made available to legislators and their staffs for legislative mapping, and (b) others have testified that the TLC was not responsible for developing and evaluating Texas' 2021 maps.  *See* Archer Mot. 3, 4; Archer Decl. ¶ 14.  But these are not the only topics about which Mr. Archer possesses discoverable knowledge; he possesses unique knowledge about a variety of topics, as described above.  And others' testimony that the TLC did not draw maps does not demonstrate that the TLC played no role whatsoever in the 2021 redistricting, nor that any differences in the TLC's role from prior cycles is irrelevant or beyond exploration.  Mr. Archer, with his wealth of unique experience and firsthand involvement in redistricting, is not a replaceable deponent.

## CONCLUSION

For the foregoing reasons, the United States will stipulate to a three-hour deposition of Mr. Archer, and the Court should deny his motions to quash and for a protective order.

Date:  July 28, 2022

        JOHNATHAN SMITH
Acting Principal Deputy Assistant Attorney General
Civil Rights Division

REBECCA B. BOND
Acting Deputy Assistant Attorney General
Civil Rights Division

*/s/ Michael E. Stewart*
T. CHRISTIAN HERREN, JR.
TIMOTHY F. MELLETT
DANIEL J. FREEMAN
JANIE ALLISON (JAYE) SITTON
MICHELLE RUPP
JACKI L. ANDERSON
JASMIN LOTT
HOLLY F.B. BERLIN
MICHAEL E. STEWART
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530
(800) 253-3931
michael.stewart3@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on July 28, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to counsel of record.

*/s/ Michael E. Stewart*
Michael E. Stewart
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave, NW
Washington, DC 20530
(800) 253-3931
michael.stewart3@usdoj.gov