UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| League of United Latin American Citizens, et al., *Plaintiffs,* | ) ) ) ) | |
| Eddie Bernice Johnson, *et al.*, *Plaintiff-Intervenors,* | ) ) ) ) | No. 3:21-cv-259-DCG-JES-JVB [Lead Case] |
| v. | ) ) | |
| Greg Abbott, in his official capacity as Governor of the State of Texas, et al., *Defendants.* | ) ) ) ) ) | |

| | | |
|---|---|---|
| United States of America, *Plaintiff,* | ) ) ) | |
| v. | ) ) | No. 3:21-cv-299-DCG-JES [Consolidated Case] |
| State of Texas, *et al.* *Defendants.* | ) ) ) ) | |

## NON-PARTIES TEXAS LEGISLATIVE COUNCIL AND JEFFREY ARCHER'S REPLY IN SUPPORT OF MOTION TO QUASH DEPOSITION SUBPOENA OF JEFFREY ARCHER AND, ALTERNATIVELY, MOTION FOR PROTECTIVE ORDER

The Federal Rules require the United States to limit the scope of the discovery it seeks to only that which is "nonprivileged," "relevant to [a] party's claim or defense and proportional to the needs of the case," considering "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). A party causing a subpoena to be served is required to take reasonable steps to avoid imposing undue burden or expense on the person or entity served, and the Rules afford non-parties special protection against the time and expense of complying with subpoenas. Fed. R. Civ. P. 45(d)(1). The Rules provide that this Court should quash or limit discovery when, as here, the discovery sought is "unduly burdensome," "unreasonably cumulative or duplicative," and not "proportional" to the needs or issues in this case.

**A.      The "Historical" Role of the TLC in the Redistricting Process is Not Relevant to the Redistricting Cycle at Issue in this Case.**

Information is not discoverable if it is not relevant. The first sentence of the United States' opposition makes clear that it seeks Mr. Archer's deposition for the role that the TLC has played "historically" in the Texas redistricting process. Dkt. 485 at 1. The United States requests Mr. Archer to "describe the role that the TLC did or did not play in the most recent redistricting cycle, and how it compares with or differs from prior redistricting cycles." *Id*. But Mr. Archer has already confirmed, under penalty of perjury, in his Affidavit submitted along with the Motion to Quash, that the TLC did not play a similar role in the 2021 redistricting cycle that it did in previous cycles. Dkt. 455-1 (Archer Decl.) at ¶ 10 (stating in 2021 he only provided "incidental generic legal advice regarding redistricting law" in fewer than ten

conversations with legislators or legislators' staff members); *id.* ("I did not provide legal advice or analysis to House or Senate leadership or the Redistricting Committees regarding any plans developed or proposed by the Committees. My limited conversations with individual members are subject to attorney-client privilege."), compare *id.* ("I was involved in providing legal analysis regarding redistricting in previous decades."). "[H]ow it compares with or differs" from the TLC's previous role is obvious. Why it differed is irrelevant.

## B. Other Subjects of Proposed Inquiry are Privileged, Duplicative, or Information which Mr. Archer Has Limited or No Knowledge.

The United States claims it needs Mr. Archer's testimony to explain why the House and Senate leadership decided to hire outside counsel during this redistricting cycle and to understand those decisions. Opp. at 1. Not only are these conversations subject to the attorney-client and legislative privileges, but they are also cumulative or duplicative of testimony that the United States has or should have received from the Legislators it has sought to depose in this case. Mr. Archer is not needed to opine on why House and Senate leadership decided to hire outside counsel when the United States can seek that testimony directly from them. Forcing Mr. Archer to testify on this cumulative or duplicative information is unduly burdensome and should not be permitted. Fed. R. Civ. P. 45(d)(1).

Furthermore, in his Declaration, Mr. Archer explained that while the TLC paid for legal and policy experts in redistricting to work at the direction of the House, as specified in their retention contracts, those experts did not work for or at Mr. Archer's direction. *See* Archer Decl. at ¶ 13. Should the United States have questions for those

3

legal and policy experts related to their redistricting work, it should obtain that testimony directly from them. Moreover, the United States makes no assertion and provides no evidence contradicting Mr. Archer's affidavit. Through its own efforts to compel the production of legislative records, the United States reveals where it believes the relevant evidence can be found: ". . . Representative Hunter made clear that consultants retained by Butler Snow actually drafted portions of the House redistricting plan . . . ." (i.e., not the TLC or Mr. Archer). Dkt. 351 at 6. The contractual terms and reimbursement rates for said experts and counsel are self-explanatory and should not require Mr. Archer's testimony.

The United States also claims it needs Mr. Archer's testimony to "answer questions about "the RedAppl system and documents and data provided to legislators along with RedAppl access." Opp. at 1, 9. Mr. Archer is the Executive Director of the TLC, and while he may have generic knowledge or information related to the RedAppl system, he is not the individual at the TLC that could speak to the specific RedAppl documents and data at issue in this case, including how the data was allocated or the steps used to update it. *See* Archer Decl. at ¶ 11 (discussing limited conversations related to negotiating RedAppl system downtimes); *id.* ("I had fewer than five conversations in 2021 with legislators or legislative staff in which I provided technical or administrative information to legislators or staff."). Nevertheless, there appears to be no claim in this lawsuit related to the adequacy of the RedAppl data, which is publicly available. Accordingly, the relevance of asking Mr. Archer to testify on this topic does not appear proportional to the needs and issues of the case. This Court should quash Mr. Archer's subpoena for deposition.

Dated: August 4, 2022

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

LESLEY FRENCH
Chief of Staff

JUSTIN GORDON
Interim Division Chief
Financial Litigation and Charitable Trusts Division

*/s/ Alyssa Bixby-Lawson*
ALYSSA BIXBY-LAWSON
Assistant Attorney General
State Bar No. 24122680
Financial Litigation and Charitable Trusts Division
Office of the Attorney General
P.O. Box 12548 (MC 017)
Austin, TX 78711-2548
Tel: (210) 270-1118
Division Fax: (512) 477-2348
Alyssa.Bixby-Lawson@oag.texas.gov
*Counsel for Non-Parties*
*Texas Legislative Council and Jeffrey Archer*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2022, the foregoing *Non-Parties Texas Legislative Council and Jeffrey Archer's Reply in Support of Motion to Quash Deposition Subpoena and, in the Alternative, Motion for Protective Order* was electronically filed with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Alyssa Bixby-Lawson*
Assistant Attorney General