# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, | § § § | |
| *Plaintiffs,* | § § | |
| EDDIE BERNICE JOHNSON, *et al.*, | § § | Case No. 3:21-cv-00259 |
| *Plaintiff-Intervenors,* | § § § | [Lead Case] |
| v. | § § | |
| GREG ABBOTT, *et al.*, | § § | |
| *Defendants.* | § § | |
| MEXICAN AMERICAN LEGISLATIVE CAUCUS, *et al.*, | § § § | |
| *Plaintiffs,* | § § | Case No. 1:21-cv-988 |
| v. | § § | [Consolidated Case] |
| STATE OF TEXAS, *et al*, | § § § | |
| *Defendants.* | § | |

**REPLY IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF CONTENTS

Introduction ...................................................................................................................................1

Argument .....................................................................................................................................2

    I.    The *Gingles* Claims Identified in the Motion Should be Dismissed ...........................2

    II.   MALC's *Larios* Claim Should be Dismissed ................................................................4

    III.  Leave to Amend Should be Denied ................................................................................6

Conclusion ....................................................................................................................................7

Certificate of Service ....................................................................................................................8

**INTRODUCTION**

As explained in Defendants' motion to dismiss, the Mexican American Legislative Caucus's second amended complaint fails to allege facts that, if proven, would satisfy the third precondition set forth in *Thornburg v. Gingles*, 478 U.S. 30 (1985). That is, with respect to HD37, HD90, CD15, ED2, and ED3, MALC fails to allege that the minority-preferred candidate will usually lose because of white bloc voting. MALC misconstrues its error, contending that Defendants' make "factual arguments based on contested issues of fact." Opp. at 12. But this misunderstands the nature of a complaint: that it sets forth factual allegations the plaintiff intends to prove. These facts do not change over the course of litigation—just what showing is required to support them. *Comcast Corp. v. Nat'l Assoc. of African American-Owned Media*, 140 S. Ct. 1009, 1014 (2020) ("[T]o determine what the plaintiff must plausibly allege at the outset of a lawsuit, we usually ask what the plaintiff must prove in the trial at its end."). The problem is not Defendants' disagree with MALC's factual allegations—it is that MALC has not made the necessary factual allegations at all.

MALC's malapportionment claim also suffers fatal defects. Because the maximum population deviation in the enacted Texas House of Representatives map is less than 10%, the districts are "presumed to be constitutionally valid absent a showing of 'arbitrariness or discrimination.'" *League of Women Voters of Chicago v. City of Chicago*, 757 F.3d 722, 725 (7th Cir. 2014) (quoting *Voinovich v. Quilter*, 507 U.S. 146, 161 (1993)). As explained before, this claim fails because, as evidence of discrimination, the amended complaint cites only population deviations in El Paso and West Texas. For one thing, "the grouping is inherently arbitrary," as the Court has recognized. ECF 307 at 58. And because the maximum deviation is less than 10%, these statistics are not enough to prove a *Larios* claim.

In response, MALC highlights that in Plan H2316, the enacted House map, House District 76 is assigned to Fort Bend County instead of El Paso County, arguing that this decision was made to retain Anglo-majority districts in other areas of the State. Opp. at 7. That fact does not support an

1

assertion of intentional discrimination. At the very most, it shows an *effect* of the new map. But it says nothing about the *why* the new map was drawn as it was. This dooms MALC's claim because discriminatory intent requires that the legislature act "because of, not merely in spite of" an adverse effect on a racial or ethnic group. *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 279 (1979). And even if the removal of HD76 did bear on intent (which it does not) MALC fails to rebut to "obvious alternative explanation"—that the district was removed because the area could no longer support six districts; due in large part to the City of El Paso's historically low population growth from 2010 to 2020.[1]

## ARGUMENT

### I. The *Gingles* Claims Identified in the Motion Should be Dismissed

In the Motion to Dismiss, Defendants explained that, as to several claims, MALC fails to allege facts that would satisfy the third *Gingles* precondition. Mot. at 1-7. That precondition requires that "the white majority votes sufficiently as a bloc to enable it . . . *usually* to defeat the minority's preferred candidate." ECF 307 at 32 (quoting *Gingles*, 478 U.S. at 51) (emphasis added).

And *usually* means something more than just 51%. *See, e.g.*, *Lewis v. Alamance County*, 99 F.3d 600, 606 n.4 (4th Cir. 1996) ("We do not imply that the third *Gingles* element is met if plaintiffs merely show that white bloc voting defeats the minority-preferred candidate more often than not.") (Luttig, J.) (collecting cases); *Gingles*, 478 U.S. at 99-100 (O'Connor, J., concurring) ("The Court must find that even substantial minority success will be *highly infrequent*.") (emphasis added); *Uno v. City of Holyoke*, 72 F.3d 973, 985 (1st Cir. 1995) ("[T]o be legally significant, racially polarized voting in a specific community must be such that, over a period of years, whites vote sufficiently as a bloc to defeat minority [-preferred] candidates *most of the time*.") (emphasis added).

---

[1] For publicly available data showing that the El Paso area lost population relative to the rest of the State, *see* Mot. at 11 fig.2, 12. Moreover, the reason plaintiffs cannot deny this trend is that their own document production demonstrates their awareness of it. *See* LULAC_000157 ("Explosive growth in Houston, DFW, and Central Texas while El Paso has the slowest growth rate in 80 years.").

Applying this principle, Defendants showed that MALC fails to allege that the minority group will usually lose because of white bloc voting in each of the following districts:

- <u>HD37</u>. MALC alleges only that that the Latino preferred candidate *might* lose: "It is possible for the Anglo majority to control elections in HD37." Compl. ¶ 118. That is not the same thing as alleging the minority group will usually lose because of white bloc voting;

- <u>HD90</u>. MALC alleges only that, as to the Democratic primary, the Plan H2316 "reduced Latino voting power in the district." Compl. ¶ 123. It fails to allege that the Latino-preferred candidate will usually lose than election.[2] Defendants further explained that even if the Latino-candidate were to lose, it would be due to the formation of a coalition of Anglo and African American voters, not due to white bloc voting. Mot. at 5;

- <u>CD15</u>. MALC alleges only that the Latino candidate will lose 50% of the time. *See* Compl. ¶ 176 (alleging defeat in 4 of 8 analyzed elections). Even if proven, that fact does not show that the Latino-preferred candidate will usually lose due to white bloc voting;

- <u>ED2 and ED3</u>. MALC alleges only that the Latino preferred candidate will lose 55% and 22% of the time, respectively. Compl. ¶¶ 188, 190. That is insufficient in both cases. Merely alleging that the Latino candidate of choice would lose *some* elections is not the same thing as showing that the same candidate would usually lose, absent exceptional circumstances. Rather, MALC must allege that the Latino preferred candidate will suffer "usual and predictable defeat." *LULAC v. Clements*, 999 F.3d 831, 888 (5th Cir. 1993) (en banc).

*See also* Mot. at 4-7 (addressing the particular claims).

MALC fails to respond to the vast majority of these arguments. Opp. at 1-5. It spends three pages addressing legal principles, *see id.* at 1-3, but fails to respond to Defendants' explanation of the requirements for the third *Gingles* precondition. Instead, MALC argues that the Court should "account for the circumstances of each" of its claims. *Id.* at 2. This appears to be a reference to the totality of the circumstances analysis that comes *after* a plaintiff has satisfied the *Gingles* preconditions. *See, e.g.*, *Harding v. Dallas County*, 48 F.3d 302, 308-09 (5th Cir. 2020) ("*After meeting the three prongs of Gingles*, a plaintiff must establish that the "totality of the circumstances" supports a finding of vote dilution.") (emphasis added). If so, the reference is misapplied. For each of its claims, MALC must plausibly allege that the minority-preferred will *usually* lose because of white bloc voting. Allegations relating to

---

[2] Indeed, Representative Ramon Romero—the HD90 incumbent—ran unopposed in the Democratic primary election. *See* Texas Secretary of State Election Results, https://results.texas-election.com/races.

3

"systematic statewide vote dilution," Opp. at 2, and other totality circumstances are simply independent of the precondition analysis.

> MALC dedicates only one sentence to addressing HD37, HD90, ED2, and ED3. It says:
>
> Similarly, [Plaintiffs'] allegations that the 8.3% reduction in SSTO and diminished electoral performance in HD 37, *id.* at ¶¶ 113, 118, that the 10.2% reduction in SSTO in HD 90 combined with the historical composition, performance, and legal background of that district, *id.* at ¶¶ 120-21, 125, 130, and the diminished performance of SBOE districts, *id.* at ¶188, are sufficient to survive the pleadings stage and be the subject of further factual development.

Opp. at 5. Again, MALC ignores the applicable legal standard. Alleging that SSTO has been reduced is not the same thing as alleging that the Latino-preferred candidate will usually lose due to white bloc voting. Those allegations are simply not present for these districts. These claims must be dismissed.

MALC addresses CD15 at somewhat more length, *see* Opp. at 4-5, but its only argument is that, if allowed to proceed to trial, it might present better facts than those alleged in the complaint. *See id.* at 4 ("At the pleadings stage, Plaintiffs picked a somewhat arbitrary sampling of election results, unguided by an expert opinion."). As an initial matter, MALC certainly could have consulted its expert in deciding which elections to cite; It designated its expert on May 20th, *see* ECF 302, and the expert result is presumably where it received the data it used to make the statistical allegations in its complaint. But the substance of MALC's argument is to promise that, if allowed to proceed, it "will ultimately be able to show," facts that might satisfy the third precondition. *Id.* That is not how complaints work. *See Comcast Corp.*, 140 S. Ct. at 1014. As to each district, MALC must set forth specific facts that, if proven, would show that the Latino-preferred candidate will usually lose due to white bloc voting. It did not do as to CD15. That claim should be dismissed too.

## II.   MALC's *Larios* Claim Should be Dismissed

MALC also fails to state a malapportionment claim. Where, as here, "the maximum deviation is less than 10%, the population disparity is considered *de minimis* and the plaintiff cannot rely on it alone to prove invidious discrimination or arbitrariness." *Daly v. Hunt*, 93 F.3d 1212, 1220 (4th Cir.

4

1996) (quoting *Roman v. Sincock*, 377 U.S. 695, 710 (1964) and *Reynolds v. Sims*, 377 U.S. 533, 577 (1964)). As explained in the motion to dismiss, MALC's claim relies solely on the population deviations of an arbitrary grouping of House Districts in West Texas and the Panhandle. Mot. at 7-12. It relies on no other alleged facts to support its assertion of intentional discrimination. To be sure, MALC uses all the right legal terms. *See* Compl. at ¶ 102 ("systemic overpopulation"); *id.* ¶ 259 (the "pernicious effect is obvious"); *id.* ¶ 260 ('impermissible regional bias"); *id.* ¶ 261 (the districts "deprive[] these communities of equal representation"). But these are nothing more than unadorned legal conclusions. That "type of allegation is a '[t]hreadbare recital[ ] of [an] element[ ] of a cause of action'; it isn't worth anything." ECF 307 at 38 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Besides listing the population deviations themselves (and putting them in a figure, Compl. Figure 4), MALC alleges no specific facts tending to show that the deviations in House map are "arbitrary" or "discriminatory." *Roman*, 377 U.S. at 710.

In response, MALC again points to the statistical population deviations, referencing the figure from its complaint. Opp. at 8. Defendants addressed this exact figure in the motion. *See* Mot. at 10 (MALC also adds a figure depicting the population deviations in what it believes to be the pertinent districts, *see* Compl. Figure 4, but this is just a visualization of arbitrarily selected population numbers. And despite the Court's observation that the omission of HD53 from MALC's analysis is "striking," Opinion at 58, MALC leaves HD53—which is both majority Anglo and overpopulated—out of its new figure."). MALC fails to respond to those points, and fails to recognize that the population deviation figures cannot support its claim by themselves.

MALC also stresses the fact that HD76 is no longer included in El Paso County. Opp. at 7. But the fact that this district is now located in Fort Bend County does not support an inference of intentional discrimination. That relocation is the nature consequence of the City of El Paso's historically low growth from 2010 to 2020. *Supra* note 1. Indeed, MALC cannot dispute that, due to El Paso's

5

negative population change relative to the rest of the state, the 2021 Legislature could not assign six districts to El Paso County, as the 2013 Legislature had. *Compare* Mot. at 12, *generally with* Opp. (not responding to this point).

Moreover, to the extent that the relocation of HD76 constitutes a discriminatory effect—and it does not—it does not by itself support an inference of intentional discrimination. MALC alleges no facts in the amended complaint tending to show that the Legislature acted "because of, not merely in spite of," any adverse effects on Hispanics. *Feeney*, 442 U.S. at 279. As explained in the Motion, at 14-15, MALC alleges no discriminatory legislative statements, no procedural irregularities, or any other similar facts that are commonly used to support *Larios* claims.

To defend against its lack of allegations going to intent, MALC argues that it should be allowed more time to develop the factual record. Opp. at 9-11. It points to an expert report and alleges that it has developed supporting evidence in deposition testimony. As an initial matter, as MALC concedes, it is improper for such evidence to be considered in response to a motion to dismiss. Opp. at 11. In addition, even the evidence it cites do not support its claim. The excerpt of the expert report cites nothing more than the exact same statistics that MALC cites in its report. Opp. at 10. This is not proper expert testimony because it is merely a recitation of facts that are already available to the parties. But more to the point, the testimony provides nothing more than the population deviation statistics, which cannot establish a malapportionment claim by themselves. *Daly*, 93 F.3d at 1220. The evidence cited in the opposition—which should not be considered here—does not show that MALC would be able to state a *Larios* claim even if allowed to replead.

### III.     Leave to Amend Should be Denied

Leave to amend should be denied "when it would cause undue delay, be the result of bad faith, represent the repeated failure to cure previous amendments, create undue prejudice, or be futile." *Morgan v. Chapman*, 969 F.3d 238, 248 (5th Cir. 2020). If MALC's claims are dismissed, leave to amend should

be denied. At the time of this filing, trial is less than 60 days away. Fact discovery has closed. Like all plaintiffs, MALC has had more than enough opportunities to develop its case and state legally valid claims. In fact, MALC has already twice received leave to amend its complaint. Further factual development at this late stage is inappropriate.

## CONCLUSION

Defendants respectfully request that the Court grant their motion and dismiss the claims identified in the opening brief.

Date: August 8, 2022

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Respectfully submitted,

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
Tex. State Bar No. 24088531

RYAN D. WALTERS
Special Counsel, Special Litigation Unit
Tex. State Bar No. 24105085

ARI M. HERBERT
Assistant Attorney General, Special Litigation Unit
Tex. State Bar No. 24126093

*/s/ Jack DiSorbo*
JACK B. DISORBO
Assistant Attorney General, Special Litigation Unit
Tex. State Bar No. 24120804

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410

patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov
ryan.walters@oag.texas.gov

7

ari.herbert@oag.texas.gov
jack.disorbo@oag.texas.gov

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on August 8, 2022, and that all counsel of record were served by CM/ECF.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN

*/s/ Jack DiSorbo*
JACK B. DISORBO