# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, | § § § | |
| *Plaintiffs,* | § § | |
| EDDIE BERNICE JOHNSON, *et al.*, | § § | Case No. 3:21-cv-00259 |
| *Plaintiff-Intervenors,* | § § | [Lead Case] |
| V. | § § § | |
| GREG ABBOTT, *et al.*, | § § § | |
| *Defendants.* | § | |

**REPLY IN SUPPORT OF MOTION TO DISMISS**

TABLE OF CONTENTS

Table of Contents ............................................................................................................................. i
Introduction ................................................................................................................................... 2
Argument ....................................................................................................................................... 2
    I.    The LULAC Plaintiffs have not plausibly alleged standing. ...................................... 2
        A.    The Entity Plaintiffs lack organizational standing. ................................................ 3
        B.    Several of the Entity Plaintiffs also lack associational standing. ......................... 4
        C.    None of the LULAC Plaintiffs have alleged standing to challenge HD118 ...................... 4
    II.    The *Larios* malapportionment claim should be dismissed. ........................................... 5
    III.    The *Gingles* claims should be dismissed because the LULAC Plaintiffs do not allege that Hispanic populations in any of the proposed districts are culturally compact. ........................ 6
    IV.    The challenges to several districts fail to satisfy the third *Gingles* precondition. ...................... 7
    V.    The challenge to HD31 should be dismissed. ............................................................ 8
    VI.    The Court should not permit any further amendment. ............................................... 9
Conclusion .................................................................................................................................... 9
Certificate of Service .................................................................................................................. 10

**INTRODUCTION**

The LULAC Plaintiffs' memorandum in opposition to Defendants' motion to dismiss only serves to confirm the serious flaws in its third amended complaint, as foreshadowed by this Court previous opinion relating to motions to dismiss. *See* ECF 307 (the "Opinion").

First, all LULAC Plaintiffs lack organizational standing for all for their claims. Several also lack associational standing. And, of course, any Entity Plaintiff has associational standing limited to challenging districts in which their identified members reside and have alleged injury, just as any of their Individual Plaintiffs are also limited to challenging districts where they live.

Second, the LULAC Plaintiffs fail to allege a viable claim of malapportionment of state legislative districts.

Finally, the LULAC Plaintiffs also fail to plead facts in support of essential elements of their claims under *Thornburg v. Gingles*, 478 U.S. 30 (1986). All such claims should be dismissed because they fail to plead any facts in support of their required element of the first *Gingles* precondition of showing cultural compactness of their proposed districts. Additionally, challenges to several districts should be dismissed because the LULAC Plaintiffs fail to allege facts in support of the third *Gingles* precondition as they do not plausibly demonstrate that the Hispanic-preferred candidate will usually be defeated by Anglo bloc-voting.

**ARGUMENT**

**I.     The LULAC Plaintiffs have not plausibly alleged standing.**

Sensing the difficulties with adequately alleging standing, the LULAC Plaintiffs maintain that the Court need not examine each of the Plaintiffs' standing because "the standing of one plaintiff establishes the jurisdiction of the Court to hear that claim." ECF 477 at 6–7 (citing *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2379 n.6 (2020)). But that principle only applies where the scope of the claim asserted by the plaintiffs is identical. This does not obviate the

2

requirement that "at least one party must demonstrate Article III standing for each claim for relief." *Little Sisters of the Poor*, 140 S. Ct. at 2379 n.6. This Court has noted that "[s]tanding is assessed plaintiff by plaintiff and claim by claim." Opinion at 9 (citing *In re Gee*, 941 F.3d 153, 171 (5th Cir. 2019)). And in ruling on a slew of motions to dismiss on standing grounds, the Court has dismissed various Plaintiffs' claims on standing grounds, even while finding others had standing. *See* Opinion at 13–25, 58–59. The LULAC Plaintiffs' standing should be evaluated the same way.

### A.   The Entity Plaintiffs lack organizational standing.

The LULAC Plaintiffs continue to argue that they have organizational standing, ECF 477 at 4–7, but never address Defendants' argument that—despite boilerplate recitals to the contrary in the third amended complaint—the activities they cite as their injuries fall within the routine activities they cite as part of their missions. ECF 398 at 5–6. It is difficult to imagine how the new maps will "cause them to devote additional time and resources in which they would not otherwise have engaged," ECF 477 at 5. Unlike the challenged restriction in *OCA-Greater Houston v. Texas*, 867 F.3d 604 (5th Cir. 2017), which the court found to lead plaintiff to explain a restriction on interpreters at polling places that it would not have previously had to discuss with voters, *id.* at 610, the LULAC Plaintiffs make no specific allegations of anything new they must discuss with voters due to the redistricting maps—what would they be able to say to voters to overcome the demographics of a particular map that would be different from their routine get-out-the-vote efforts? They don't say.

Although the LULAC Plaintiffs maintain that they are not required to identify specific projects that have been impaired nor that have been undertaken to ameliorate their purported injuries, ECF 477 at 4, the Court has indicated otherwise—at least when, as here, the challenged action does not directly regulate the entities' activities. *See* Opinion at 11 (finding lack of sufficient allegations for organizational standing where "Plaintiffs have [neither] specified projects that Defendants' redistricting plan has compelled them to commence … [n]or have they specified how Defendants' conduct

3

directly" frustrates their activities).

Nor do the LULAC Plaintiffs' naked allegations that they will now make new expenditures (without any specifics) sufficient. *See* Opinion at 12 (rejecting "legal conclusion" that NAACP would "have to commit significant time and resources to combatting the effects of these new maps" and therefore "unable to commit to other programs that are core to its mission"). The litany of such allegations referenced in the LULAC Plaintiffs' opposition, ECF 477 at 5–6, lack any factual support to make plausible their legal conclusions that they are diverting resources due to the maps.

Finally, the LULAC Plaintiffs dismiss Defendants' argument that they were required to plead in which challenged districts their diverted expenditures in response to the new maps were made. ECF 477 at 5 n.3. But they never address how the relevant case law makes injuries in this context district-specific, *see* ECF 398 at 6–7. If the LULAC Plaintiffs are making those expenditures within unchallenged districts, they cannot be caused by the enactment of any of the challenged districts.

### B.  Several of the Entity Plaintiffs also lack associational standing.

As none of the Entity Plaintiffs satisfy the requirements for organizational standing, those that also fail to allege associational standing should be dismissed from this case altogether. This includes SVREP (ECF 324-1 at ¶ 25 ("SVREP does not have members")), Mi Familia Vota (*id.* at ¶ 27 ("MI FAMILIA VOTA does not have members")), WCVI (*id.* at ¶ 71 ("WCVI does not have members")), and Proyecto Azteca (*id.* at ¶ 85 ("PROYECTO AZTECA does not have members")).

The LULAC Plaintiffs argue that FIEL can satisfy the requirements for associational standing even though they identify no members by name. ECF 477 at 3–4. But, as Defendants pointed out in their motion, ECF 398 at 7, that is contrary to this Court's previous ruling. *See* Opinion at 14.

### C.  None of the LULAC Plaintiffs have alleged standing to challenge HD118.

Defendants pointed out the third amended complaint's failure to allege any voter residing in HD118. ECF 398 at 7. The LULAC Plaintiffs confirm this omission but rely on their sealed list of the

4

true names of their pseudonymous members as sufficient for pleading purposes. ECF 477 at 7–8. But that sealed list was approved because "the LULAC Plaintiffs … s[ought] leave only to file the list of members' true names under seal." ECF 439 at 16. Allegations of injury must be in the pleadings in this case. *See id.* at 15 (noting that "[i]nformation such as the Association Members' areas of residence, whether they are of voting age, and whether they are active voters will all remain available to the public"). As there are none relating to injuries of any particular voter in HD118, all claims relating to that district must be dismissed for lack of standing.

## II.     The *Larios* malapportionment claim should be dismissed.

The Court dismissed the *Larios* claim of MALC, Opinion at 57–58, and the LULAC Plaintiffs' claim in Count 2 should suffer the same fate because it is indistinguishable from MALC's, as explained in the motion to dismiss. *See* ECF 398 at 7–15.

First, the LULAC Plaintiffs flatly ignore this Court's previous analysis of the pleading requirements of a malapportionment claim, Opinion at 57–58. Their argument is directly contradicted by the Court's determination that MALC's claim was implausible because it had cherry-picked fifteen districts out of 150 in the Texas House, and had inexplicably omitted HD53 from the analysis, Opinion at 58—the very same districts (and omitted districts) that serve as the basis for the LULAC Plaintiffs' malapportionment claim here. Instead, the LULAC Plaintiffs argue that *Perez v. Abbott*, 250 F. Supp. 3d 123 (W.D. Tex. 2017) (three-judge court) allows them to make a "localized challenge" rather than a statewide one. ECF 477 at 9–10.

This strategy contradicts the LULAC Plaintiffs' allegations that malapportionment was done "to facilitate creating fewer Latino opportunity districts statewide," ECF 338 at ¶ 486. And, as this Court recognized, choosing comparator districts with no explanation—where "the grouping is inherently arbitrary," Opinion at 58—does not create a plausible malapportionment claim where, as here, the districting plan is under 10% population deviation. Opinion at 57–58.

5

Second, the LULAC Plaintiffs strain to distinguish their claim from MALC's by pointing to alleged procedural irregularities and other assertions of discriminatory intent. ECF 477 at 11–12. But these assertions are not connected specifically to the malapportionment of the particular districts cited by the LULAC Plaintiffs. Regardless, MALC made the same allegations about procedural impropriety in the overall redistricting process (*see* ECF 247 at ¶¶ 31–87) and they were not sufficient to save its malapportionment claim.

### III.   The *Gingles* claims should be dismissed because the LULAC Plaintiffs do not allege that Hispanic populations in any of the proposed districts are culturally compact.

The LULAC Plaintiffs aim their fire on this argument at Defendants, but their ultimate target is the Opinion of this Court. In deciding various motions to dismiss, the Court raised *sua sponte* the requirement that the minority group is "culturally compact," noting that it would not address the issue because "that requirement [was] not at issue in Defendants' motions [to dismiss]." Opinion at 31 n.20. the LULAC Plaintiffs were on notice of that "requirement" when they filed their third amended complaint but chose to omit any allegations on this aspect of the first precondition of *Gingles*.

As an initial matter, the LULAC Plaintiffs appear to argue that their allegations regarding "lower voter turnout rates, home ownership rates and home values, lower educational achievement rates, and lower median income" averages for Hispanics in particular counties serve to satisfy the cultural compactness requirement. ECF 477 at 13. But this information constitutes averages of the indicators of the whole Hispanic population in a county. None of these allegations support the precondition that the particular groupings of Hispanics in the proposed districts share particular needs or interests or on which end of the averages they are.

The LULAC Plaintiffs argue that cultural compactness is not a pleading requirement, but instead an evidentiary question. ECF 477 at 14. But it was the Court that raised the issue of cultural compactness *sua sponte* at the dismissal stage. In line with this Court's recognition, the Supreme Court has made clear that compactness is a necessary element for a § 2 violation. *League of United Latin Am.*

6

*Citizens (LULAC) v. Perry*, 548 U.S. 399, 433 (2006) (explaining that the "compactness" required "to show" an equal-protection violation, "which concerns the shape or boundaries of a district," is distinct from the "compactness" that must be alleged for a § 2 violation, "which concerns a minority group's compactness" (quoting *Abrams v. Johnson*, 521 U.S. 74, 111 (1997) (Breyer, J., dissenting))). Because a plaintiff must plead facts in support of each element of a claim to survive a motion to dismiss, cultural compactness is not a pure evidentiary question—it is also a pleading requirement. *See Comcast Corp. v. Nat'l Assoc. of African American-Owned Media*, 140 S. Ct. 1009, 1014 (2020) ("[T]o determine what the plaintiff must plausibly allege at the outset of a lawsuit, we usually ask what the plaintiff must prove in the trial at its end.").

True, the precise phrase "cultural compactness" does not appear in *LULAC*—it comes from a law-review article. *See* Daniel R. Ortiz, *Cultural Compactness*, 105 Mich. L. Rev. First Impressions 48 (2006). But as this Court recognized, the concept is rooted in the Supreme Court's holding in *LULAC*. And as the Supreme Court explained, "there is no basis to believe a district that combines two farflung segments of a racial group with disparate interests provides the opportunity that § 2 requires or that the first *Gingles* condition contemplates." *LULAC*, 548 at 433. Therefore, the LULAC Plaintiffs were required to allege cultural compactness, and for the reasons explained in the motion to dismiss, ECF 398 at 15–17, they have failed to do so.

**IV.     The challenges to several districts fail to satisfy the third *Gingles* precondition.**

The LULAC Plaintiffs argue that the small number of past elections they cite as supporting the element that requires that "the white majority votes sufficiently as a bloc to enable it … usually to defeat the minority's preferred candidate." ECF 477 at 15 (quoting *Gingles*, 478 U.S. at 50–51). But the election results cited show the success of Hispanic-preferred candidates in several of the new districts. ECF 398 at 18. And in several others, the Hispanic-preferred candidates came close to victory. *Id.* The LULAC Plaintiffs dismiss these latter data points on the grounds that close losses cannot undercut an

7

allegation of usual defeat. ECF 477 at 15–18. But particular elections within a small sample may have weak candidates, or a poor climate for a particular political party, and do not plausibly indicate "usual" losses by Hispanic-preferred candidates. Coming close to victory—when considered in the context a small sample of elections—makes such results insufficient to make plausible allegations of "usual and predictable defeat." *LULAC v. Clements*, 999 F.3d 831, 888 (5th Cir. 1993) (en banc). For "the usual predictability of the majority's success distinguishes structural dilution from the mere loss of an occasional election." *Gingles*, 478 U.S. at 51; *cf.* Opinion at 45 (noting the allegations that elections in benchmark district being "very close" sufficed to demonstrate second *Gingles* precondition).

**V.      The challenge to HD31 should be dismissed.**

The LULAC Plaintiffs fault the motion to dismiss this claim because Defendants rely on "unproven facts and speculation as to future events." ECF 477 at 17. But such is the nature of a *Gingles* claim: no general elections have taken place under the new maps, so all parties necessarily rely on predictions of future election results based on past events. *See* ECF 338 *passim* (LULAC Plaintiffs relying on past election results to predict whether Hispanic-preferred candidates will win future elections).

The LULAC Plaintiffs mischaracterize their legal conclusions regarding the intent behind the drawing of this district as factual allegations, ECF 477 at 17–18 (pointing to ECF 338 at ¶¶ 237, 239, 247), but the salient facts are that HD31 is a 66.7% HCVAP district and that they concede that Rep. Guillen has been the Hispanic candidate of choice for two decades, receiving the support of "75% of Latino voters" in 2020. ECF 338 at ¶ 233. Guillen is a current candidate in HD31 and there are no allegations that could plausibly indicate that he—as the Hispanic candidate of choice in a district where Hispanics "outnumber all other voters by about two-to-one," Opinion at 49—is likely to be defeated. The LULAC Plaintiffs have failed to plausibly allege that Anglo bloc voting is likely to defeat the Hispanic candidate of choice, and the *Gingles* claim relating to this district should be dismissed.

8

### VI. The Court should not permit any further amendment.

Because the LULAC Plaintiffs have chosen to claim sufficiency of their third amended complaint as is, this Court need not provide them further leave to file an additional amended complaint now. *Spiller v. Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Jacquez v. Procunier*, 801 F.2d 789, 792–93 (5th Cir. 1986)) (affirming district court's denial of leave to amend plaintiff's complaint because plaintiff asserted sufficiency of complaint in response to motion to dismiss). Leave to amend should be denied "when it would cause undue delay, be the result of bad faith, represent the repeated failure to cure previous amendments, create undue prejudice, or be futile." *Morgan v. Chapman*, 969 F.3d 238, 248 (5th Cir. 2020).

If the LULAC Plaintiffs' claims are dismissed, leave to amend should be denied. At the time of this filing, trial is less than 60 days away. Fact discovery has closed. Like all plaintiffs, the LULAC Plaintiffs have had more than enough opportunities to develop their case and state legally valid claims. Further factual development at this late stage is unwarranted.

### CONCLUSION

Defendants respectfully request that the Court dismiss the relevant portions of the LULAC Plaintiffs' third amended complaint.

Date: August 8, 2022                                      Respectfully submitted.

KEN PAXTON                                                 */s/ Patrick K. Sweeten*
Attorney General of Texas                                  PATRICK K. SWEETEN
                                                           Deputy Attorney General for Special Litigation
BRENT WEBSTER                                              Tex. State Bar No. 00798537
First Assistant Attorney General

                                                           WILLIAM T. THOMPSON
                                                           Deputy Chief, Special Litigation Unit
                                                           Tex. State Bar No. 24088531

                                                           RYAN D. WALTERS
                                                           Special Counsel, Special Litigation Unit
                                                           Tex. State Bar No. 24105085

9

        ARI M. HERBERT
Assistant Attorney General, Special Litigation Unit
Tex. State Bar No. 24126093

*/s/ Jack DiSorbo*
JACK B. DISORBO
Assistant Attorney General, Special Litigation Unit
Tex. State Bar No. 24120804

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov
ari.herbert@oag.texas.gov
jack.disorbo@oag.texas.gov

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on August 8, 2022, and that all counsel of record were served by CM/ECF.

        */s/ Patrick K. Sweeten*
PATRICK K. SWEETEN

        */s/ Jack DiSorbo*
JACK B. DISORBO