# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.* <br><br> *Plaintiffs,* <br> v. <br><br> GREG ABBOTT, *et al.*, <br><br> *Defendants.* | § § § § § § § § § § | Case No. 3:21-cv-00259 <br> [Lead Case] |
| ROY CHARLES BROOKS, *et al.* <br><br> *Plaintiffs,* <br> v. <br><br> GREG ABBOTT, *et al.*, <br><br> *Defendants.* | § § § § § § § § § § | Case No. 1:21-cv-00988 <br> [Consolidated Case] |

**REPLY IN SUPPORT OF MOTION TO DISMISS**


**TABLE OF CONTENTS**

Introduction ........................................................................................................................................... 1
Argument .............................................................................................................................................. 1
I.      Plaintiffs' Section 2 claims should be dismissed ................................................................ 1
        A.  Plaintiffs have not plausibly alleged cultural compactness. ......................................... 1
        B.  Plaintiffs have not plausibly alleged political cohesion. ............................................. 3
II.     Plaintiffs' Intentional Discrimination Claim as to HD118 Should be Dismissed ....... 4
Conclusion ............................................................................................................................................ 4
Certificate of Service ........................................................................................................................... 6

**INTRODUCTION**

The Brooks Plaintiffs' Section 2 claims do not satisfy the pleading standards this Court has previously explained. In ruling on previous motions to dismiss, the Court has recognized the need for allegations of cultural compactness, but the Brooks Plaintiffs claim they can get by with allegations of geographic compactness alone. Similarly, the Court has already explained that plaintiffs must plausibly allege that a large majority of minority voters in a proposed district would support the same candidates, but the Brooks Plaintiffs conspicuously omitted such allegations from their Second Amended Complaint. Defendants respectfully request that the Court grant their motion to dismiss.

**ARGUMENT**

**I.     Plaintiffs' Section 2 claims should be dismissed**

   **A.     Plaintiffs have not plausibly alleged cultural compactness.**

Defendants moved to dismiss the Brooks Plaintiffs' *Gingles* claims regarding the Dallas-Fort Worth metroplex and Harris County because the Second Amended Complaint does not plausibly allege that the relevant minority populations are culturally compact. *See* ECF 400 at 2–6. Effectively conceding that their complaint does not directly plead cultural compactness, the Brooks Plaintiffs contend that they do not need to allege cultural compactness because it "is not a standalone element of Section 2 liability." ECF 470 at 2. But that contradicts this Court's previous ruling that cultural compactness is a "requirement." ECF 307 at 31 n.20. "The Supreme Court has also interpreted the first *Gingles* precondition to include that the minority group is culturally compact." *Id.* (citing *LULAC v. Perry*, 548 U.S. 399, 430–35 (2006)).

On the Brooks Plaintiffs' theory, they need not plead *cultural* compactness because their demonstration districts allegedly do not cover an "enormous geographic distance." ECF 470 at 3 (quoting *LULAC*, 548 U.S. at 435). But that conflates *cultural* compactness with *geographic* compactness. *See* ECF 307 at 31 & n.20 (contrasting the two requirements). The Brooks Plaintiffs ask the

1

Court to draw an "inference from the maps themselves" regarding whether minority voters in their proposed districts "'share similar interests,'" but that contradicts the very case on which they rely. ECF 470 at 6–7 (quoting *LULAC*, 548 U.S. at 435).

In *LULAC*, the Supreme Court did not hold that geographic compactness automatically established that cultural compactness was also present. On the contrary, it explained that "in some cases" cultural compactness would coincide with geographic compactness. *LULAC*, 548 U.S. at 435. It "accept[ed] that *in some cases* members of a racial group in different areas—for example, rural and urban communities—*could* share similar interests and therefore form a compact district if the areas are in reasonably close proximity." *Id.* (emphasis added). By noting that cultural and geographic compactness "could" coincide, the Supreme Court made clear that they do not necessarily do so. Accordingly, alleging geographic compactness does not discharge the Brooks Plaintiffs' burden to plausibly allege cultural compactness in this case.[1]

Relieving the Brooks Plaintiffs of that burden would require improperly presuming that voters share a common culture simply because they belong to the same race and live in the same metropolitan area. The Supreme Court criticized such stereotyping in *LULAC*. "[A] State may not assum[e] from a group of voters' race that they think alike, share the same political interests, and will prefer the same candidates at the polls." *LULAC*, 548 U.S. at 433 (quotation marks omitted).

Presuming cultural compactness would be especially inappropriate for the Brooks Plaintiffs' proposed coalition of Hispanic and black voters in Harris County. When courts analyze cohesion, they "may not presume bloc voting within even a single minority group," and they certainly cannot

---

[1] The Brooks Plaintiffs emphasize that *LULAC*'s fact-specific holding ("that District 25 [was] noncompact for § 2 purposes") was based on "the enormous geographical distance separating the Austin and Mexican-border communities, coupled with the disparate needs and interests of these populations—not either factor alone." *Id.* That does not help the Brooks Plaintiffs here. True, the *LULAC* Court weighed evidence concerning both types of compactness when holding that a particular district was insufficiently compact overall. That does not change the plaintiffs' burden to address both types of compactness, which the Brooks Plaintiffs' allegations do not do.

"indulge that presumption as to bloc voting within an agglomeration of distinct minority groups." *Growe v. Emison*, 507 U.S. 25, 41 (1993). The Court should be equally rigorous in its demand for plausible allegations regarding cultural compactness. At the motion-to-dismiss stage, the Court must presume the truth of the Brooks Plaintiffs' factual allegations. But it should not presume the truth of the Brooks Plaintiffs' unpled assumption that minority voters in a metroplex all have "similar interests."

The Brooks Plaintiffs' only other response is that they need not plead "specific facts." ECF 470 at 2. They quibble with Defendants' use of the adjective "specific," but they do not claim to have alleged "general" facts relevant to cultural compactness either. The Second Amended Complaint is entirely devoid of factual allegations on this point. Arguing about the best way to describe pleading requirements after *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), is beside the point.

### B. Plaintiffs have not plausibly alleged political cohesion.

The Brooks Plaintiffs' allegations of political cohesion do not suffice because they do not allege that large majorities of minority voters support the same candidates. *See* ECF 400 at 6–8. The Brooks Plaintiffs point to two types of allegations, but neither satisfies their burden. First, they cite allegations about the preferences of minority voters *at the county level*, *see* ECF 470 at 10, but this Court has already ruled that cohesion is analyzed "*in the proposed district*." ECF 307 at 41; *accord id.* at 33.

Second, the Brooks Plaintiffs point to allegations that Democratic "candidates would carry the proposed illustrative districts by wide margins" and allegations "the demographic makeup of the proposed districts." ECF 470 at 10. But the Brooks Plaintiffs do not allege whether those victories would be attributable to cohesion among minority voters or support from white voters. As this Court has already ruled, allegations about whether "districts have consistently elected Hispanic-preferred candidates" do not "say anything about how unified Hispanic voters are in supporting those candidates." ECF 307 at 38. Such election results may mean that only "51% of Hispanic voters supported those candidates—far short of the large majority typically required to show political cohesion." *Id.* at 39.

Although the Brooks Plaintiffs ask the court to drawn an "inference" about minority cohesion, ECF 470 at 10, they do not include any math suggesting that the Court can estimate the percentage of minority voters who would support the Democratic candidate in its proposed districts based on the numbers it provides in its complaint. Sometimes, a court may be able to make such an inference, *cf.* ECF 144 at 4, as the Brooks Plaintiffs emphasize, *see* ECF 470 at 10. But this Court has already made clear it cannot draw such inferences in every case, *see* ECF 307 at 38–39, and the Brooks Plaintiffs have not explained how the Court could mathematically draw such an inference here.

## II. Plaintiffs' Intentional Discrimination Claim as to HD118 Should be Dismissed

Plaintiffs' intentional discrimination claim as to HD118 should be dismissed because the allegations are not district specific. As previously explained, ECF 400 at 8–9, like all redistricting claims, discriminatory intent claims proceed "district by district." *Gill v. Whitford*, 138 S. Ct. 1916, 1930 (2018). To state a discriminatory intent claim, then, requires allegations relating to how the particular district at issue was drawn. The amended complaint addresses HD118 only generally, in the context of how the whole House map was drawn.

In response, Plaintiffs largely cite only generally applicable allegations. *See* ECF 470 at 11 ("history of discrimination"); *id.* at 12 ("procedural departures"); *id.* ("substantive departures"). These say nothing about how HD118 in particular was drawn. And any other allegations do not by themselves support a plausible inference of intentional discrimination. *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009) (An allegation of parallel conduct is thus much like a naked assertion . . . it gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of entitlement to relief."). Plaintiffs also allege "last minute changes" and associated statements, ECF 470 at 12, but nothing in the amended complaint suggests these changes were made "because of, not merely in spite of," any adverse effect on an identifiable minority group. *Iqbal*, 556 U.S. at 677–78 (quoting *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)).

4

## CONCLUSION

Defendants respectfully request that the Court grant their motion and dismiss the Brooks Plaintiffs' Second Amended Complaint. Leave to amend should not be granted, especially in light of the Brooks Plaintiffs' decision not to seek such leave in their response or by separate motion.

Date: August 8, 2022

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Respectfully submitted.

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
Tex. State Bar No. 24088531

RYAN D. WALTERS
Special Counsel, Special Litigation Unit
Tex. State Bar No. 24105085

ARI M. HERBERT
Assistant Attorney General, Special Litigation Unit
Tex. State Bar No. 24126093

/s/ Jack DiSorbo
JACK B. DISORBO
Assistant Attorney General, Special Litigation Unit
Tex. State Bar No. 24120804

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410

patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov
ryan.walters@oag.texas.gov
ari.herbert@oag.texas.gov
jack.disorbo@oag.texas.gov

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on August 8, 2022, and that all counsel of record were served by CM/ECF.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN

*/s/ Jack DiSorbo*
JACK B. DISORBO