# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, | § § § § | |
| *Plaintiffs,* | § § | |
| EDDIE BERNICE JOHNSON, *et al.*, | § § § | Case No. 3:21-cv-00259 |
| *Plaintiff-Intervenors,* | § § | [Lead Case] |
| v. | § § § | |
| GREG ABBOTT, *et al.*, | § § § | |
| *Defendants.* | § § | |
| FAIR MAPS TEXAS ACTION COMMITTEE, *et al.*, | § § § | |
| *Plaintiffs,* | § § § | Case No. 3:21-cv-1038 |
| v. | § § | [Consolidated Case] |
| GREG ABBOTT, *et al*, | § § § | |
| *Defendants.* | § § | |

**REPLY IN SUPPORT OF MOTION TO DISMISS**

TABLE OF CONTENTS

Argument ................................................................................................................................................1

    I.    Cultural Compactness Is Indeed a Requirement of the First *Gingles* Precondition ..................1

    II.   The *Fair Maps* Plaintiffs Have Not Adequately Alleged the Second and Third *Gingles* Preconditions for the Congressional Districts in Dallas–Fort Worth or the Senate Districts in Tarrant County ........................................................................................................................2

Conclusion .............................................................................................................................................4

Certificate of Service..............................................................................................................................6

**ARGUMENT**

**I.      Cultural Compactness Is Indeed a Requirement of the First *Gingles* Precondition**

The *Fair Maps* plaintiffs accuse Defendants of trying to establish an "[un]just[]" "pleading standard" that "create[s] insurmountable barriers to federal judicial review." ECF 476 at 9. Not so. Rather, it was this Court that first identified that "[t]he Supreme Court has also interpreted the first *Gingles* precondition to include that the minority group is culturally compact." ECF 307 at 31 n.20. Defendants acknowledge that until now they had not argued cultural compactness under the first *Gingles* precondition—a "requirement" of *Gingles*, as this Court put it, *see id.* But the *Fair Maps* plaintiffs have filed an amended complaint responding to this Court's order giving guidance on what a plaintiff must allege to state a § 2 claim. And in that spirit only do Defendants now argue that the *Fair Maps* plaintiffs have not alleged the first *Gingles* precondition because they have failed to allege cultural compactness for their proposed districts.

The *Fair Maps* plaintiffs argue that cultural compactness is not a pleading requirement, but instead an evidentiary question—"the inquiry is fact-intensive, conducted *after* extensive record development at trial, and within the totality of the circumstances." ECF 476 at 9. But it was the Court that raised the issue of cultural compactness *sua sponte* at the dismissal stage. *See generally* ECF 307. Confirming this Court's characterization of the issue, the Supreme Court in *LULAC* made clear that a plaintiff must indeed allege compactness to bring a § 2 violation. *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 433 (2006) (explaining that the "compactness" required "to show" an equal-protection violation, "which concerns the shape or boundaries of a district," is distinct from the "compactness" that must be alleged for a § 2 violation, "which concerns a minority group's compactness" (quoting *Abrams v. Johnson*, 521 U.S. 74, 111 (1997) (Breyer, J., dissenting))). Thus, cultural compactness is not a pure evidentiary question; it is also a pleading requirement.

True, the precise phrase "cultural compactness" does not appear in *LULAC*—it comes from

1

a law-review article. *See* Daniel R. Ortiz, *Cultural Compactness*, 105 MICH. L. REV. FIRST IMPRESSIONS 48 (2006). But as this Court recognized, the concept is rooted in the Supreme Court's holding in *LULAC*. And as the Supreme Court explained, "there is no basis to believe a district that combines two farflung segments of a racial group with disparate interests provides the opportunity that § 2 requires or that the first *Gingles* condition contemplates." *LULAC*, 548 at 433. Therefore, the *Fair Maps* plaintiffs had to allege cultural compactness, and for the reasons explained in the motion to dismiss, they have failed to do so.

The *Fair Maps* plaintiffs also argue that even if they do have to allege cultural compactness, they successfully did so. Part of their reasoning is that the Supreme Court in *LULAC* "emphasized the enormous geographical distance separating the Austin and Mexican-border communities." ECF 476 at 12 (cleaned up) (quoting *LULAC*, 548 U.S. at 435). And therefore, according to the *Fair Maps* plaintiffs, their "demonstrative districts cannot be compared to the 300-mile long" district the Supreme Court was referencing in *LULAC*. ECF 476 at 12. But a district need not be 300 miles long to fail to be culturally compact. For example, one federal district court noted that a "roughly 40-mile distance" between communities coupled with "a lack of regional public transit connecting the two population centers," and with "the divergent priorities in industrial and commercial development," could be interpreted to show that the minority group in a particular district did not represent "a single community of interest." *Luna v. County of Kern*, No. 1:16-cv-568, 2017 WL 2379934, at *7 (E.D. Cal. June 1, 2017).

II. **The *Fair Maps* Plaintiffs Have Not Adequately Alleged the Second and Third *Gingles* Preconditions for the Congressional Districts in Dallas–Fort Worth or the Senate Districts in Tarrant County**

The *Fair Maps* plaintiffs accuse Defendants of proposing an "untenable pleading requirement" that calls for factual allegations "beyond [the] districts plaintiffs are challenging or proposing." ECF 476 at 17. Not true. In their complaint, the *Fair Maps* plaintiffs allege that minority voters in CDs 6,

30, 32, and 33 vote cohesively. *See* ECF 322 at 64. But those are not the only districts that the *Fair Maps* plaintiffs challenge in that section. Instead, the *Fair Maps* plaintiffs challenge an entire group of congressional districts: CDs 3, 4, 6, 12, 24, 26, 30, 32, and 33. ECF 322 ¶ 162. And Defendants called attention to the fact that, for example, even though plaintiffs allege that CD3 violates § 2, plaintiffs fail to allege minority cohesion or even propose a demonstrative district for CD3. *See* ECF 401 at 20.

Put simply, Defendants are not "demand[ing] that" plaintiffs allege facts satisfying "the second and third *Gingles* preconditions" for unrelated, surrounding districts. *Contra* ECF576 at 17. Rather, Defendants contend that if a plaintiff challenges a cluster of districts—grouped and considered jointly in one section of a complaint—then the plaintiff must include sufficient factual allegations against all the challenged districts. Here, the *Fair Maps* plaintiffs have conspicuously failed to do so.

Likewise, the *Fair Maps* plaintiffs challenge a six-district cluster in Tarrant County under the enacted Senate map. *See* ECF 322 at 52 (figure). Yet they omit electoral-performance allegations for all the challenged Senate districts. *See generally* ECF 322 at 52–54. By contrast, in their challenge to a cluster of House districts in the Fort Bend area, the plaintiffs allege CVAP and cohesion figures along with electoral performance for all demonstrative districts in the cluster they challenge. *See, e.g.*, ECF 322 at 33–34 (incl. figures). Notably, the *Fair Maps* plaintiffs sought leave to amend their complaint to (1) correct a labeling error regarding the demonstrative map of Bell County for House Districts 54 and 55, and (2) correct the demonstrative map of Congressional District 22 in the Fort Bend County region and corresponding demographic charts. The State Defendants did not oppose.[1] And yet the *Fair Maps* plaintiffs did not seek to amend the complaint to correct any error or omission in the figures and charts for the congressional districts in Dallas–Fort Worth or the Tarrant County senate districts.

---

[1] As noted in the *Fair Maps* plaintiffs' motion to amend, Defendants did not oppose Fair Maps plaintiffs' motion to amend in order to (1) correct the labeling error regarding the demonstrative map of Bell County for House Districts 54 and 55, and (2) correct the demonstrative map of Congressional District 22 in the Fort Bend County region and corresponding demographic charts. The parties agreed that the amended complaint does not moot any other issues raised in the motion to dismiss.

3

Despite all this, the *Fair Maps* plaintiffs assert that it is Defendants who are "ask[ing] the Court to speculate" about the consequences of their proposed "plan." ECF 476 at 18. In truth, it is the *Fair Maps* plaintiffs' complaint that calls for speculation. A complaint need not include evidence proving that the plaintiff is entitled to relief. But the complaint does have to include factual allegations that, if true, would entitle the plaintiff to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, the plaintiffs' allegations must leave the Court with "more than a sheer possibility that a defendant has acted unlawfully." *Id.* But with respect to the DFW Congressional districts and the Tarrant County Senate districts, the complaint offers only that: a possibility. Therefore, for the reasons explained in the motion to dismiss, the plaintiffs have failed to adequately allege a § 2 violation.

## CONCLUSION

Defendants respectfully ask that the Court dismiss the parts of the *Fair Maps* plaintiffs' complaint identified in the motion to dismiss, except insofar as a limited subset of Defendants' arguments have been mooted by the agreed-to *Fair Maps* plaintiffs' motion to amend.

| | |
|---|---|
| Date: August 8, 2022 | Respectfully submitted. |
| | |
| KEN PAXTON | /s/ *Patrick K. Sweeten* |
| Attorney General of Texas | PATRICK K. SWEETEN |
| | Deputy Attorney General for Special Litigation |
| BRENT WEBSTER | Tex. State Bar No. 00798537 |
| First Assistant Attorney General | |
| | WILLIAM T. THOMPSON |
| | Deputy Chief, Special Litigation Unit |
| | Tex. State Bar No. 24088531 |
| | |
| | RYAN D. WALTERS |
| | Special Counsel, Special Litigation Unit |
| | Tex. State Bar No. 24105085 |
| | |
| | ARI M. HERBERT |
| | Assistant Attorney General, Special Litigation Unit |
| | Tex. State Bar No. 24126093 |
| | |
| | /s/ *Jack DiSorbo* |
| | JACK B. DISORBO |
| | Assistant Attorney General, Special Litigation Unit |
| | Tex. State Bar No. 24120804 |
| | |
| | OFFICE OF THE ATTORNEY GENERAL |
| | P.O. Box 12548 (MC-009) |
| | Austin, Texas 78711-2548 |
| | Tel.: (512) 463-2100 |
| | Fax: (512) 457-4410 |
| | patrick.sweeten@oag.texas.gov |
| | will.thompson@oag.texas.gov |
| | ryan.walters@oag.texas.gov |
| | ari.herbert@oag.texas.gov |
| | jack.disorbo@oag.texas.gov |
| | |
| | **COUNSEL FOR DEFENDANTS** |

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on August 8, 2022, and that all counsel of record were served by CM/ECF.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN

*/s/ Jack DiSorbo*
JACK B. DISORBO
