# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, | § § § § § | |
| *Plaintiffs,* | § § | |
| EDDIE BERNICE JOHNSON, *et al.*, | § § | Case No. 3:21-cv-00259 |
| *Plaintiff-Intervenors,* | § § | [Lead Case] |
| v. | § § § | |
| GREG ABBOTT, *et al.*, | § § § | |
| *Defendants.* | § | |
| TEXAS STATE CONFERENCE OF THE NAACP, | § § § | |
| *Plaintiff,* | § § § | Case No. 1:21-cv-1006 |
| v. | § § | [Consolidated Case] |
| GREG ABBOTT, *et al*, | § § § | |
| *Defendants.* | § | |

**REPLY IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS

Argument ..................................................................................................................................................1

    I.    Fuller Quotations from the Complaint Show That the NAACP Has Not Alleged the Second and Third *Gingles* Preconditions .......................................................................1

    II.   Cultural Compactness Is Indeed Part of the First *Gingles* Precondition...................................4

Conclusion ................................................................................................................................................6

Certificate of Service.................................................................................................................................7

**ARGUMENT**

I.  **Fuller Quotations from the Complaint Show That the NAACP Has Not Alleged the Second and Third *Gingles* Preconditions**

The NAACP has not satisfactorily alleged the second and third *Gingles* preconditions. Namely, the NAACP has failed to allege specific facts showing that: minorities in their proposed or demonstrative districts would vote cohesively; and that whites in the currently enacted districts vote as a bloc to overcome the minority group as currently configured. *See generally* ECF 402. This is despite the fact that the NAACP has been on notice about this issue since December of last year.

State Defendants first argued that the NAACP must plead such specific facts in its original motion to dismiss in 2021. *See* ECF 82 at 13 ("[The NAACP's cohesion] allegations are nothing more than a 'formulaic recitation' of the second *Gingles* element." (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). In response, the NAACP insisted that it had in fact done so—that "specific allegations [were] spelled out as to the cohesion of voters of color as to particular districts," and that "the entire Complaint [was] replete with allegations specific to each challenged district as to how racial polarization affects the elections in each district." ECF 107 at 23.

But this Court dismissed the NAACP's *Gingles* claims because the Court "agree[d]" that the allegations were "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." ECF 307 at 40 (quoting ECF 82 at 13–15; *Iqbal*, 556 U.S. at 678). Nor, as this Court explained, had the NAACP "alleged anything about the voting behavior of the minorities it would add to the benchmark" districts—i.e., about the "minority population[s] *in the proposed district[s]*." ECF 307 at 41 (emphasis in original). So when this Court gave the NAACP one more bite at the apple, the NAACP was on notice about: (a) the level of factual specificity it had to plead; and (b) that it had to plead those facts for the minority group in the proposed districts in particular.

And yet the NAACP has still not satisfactorily alleged the second and third *Gingles* preconditions for all challenged districts. Instead, just like before, the NAACP insists that it has specifically

1

alleged facts satisfying these preconditions. In its opposition, the NAACP cherry-picks quotation fragments from discrete parts of the complaint, then splices them into seemingly clear allegations of minority cohesion in the proposed districts. *See generally* ECF 475 at 6–15. In effect, the NAACP is trying to amend its complaint through its opposition to the motion to dismiss.

Yet "[i]n considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 598 (5th Cir. 2000) (per Smith, J.); *see also Amezaga v. Reliance Standard Life Ins. Co.*, No. 17-cv-120, 2017 WL 7789270, at *1 (W.D. Tex. Sept. 7, 2017) (per Guaderrama, J.) ("[I]n ruling on a motion to dismiss, courts must limit their inquiry to the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."). The NAACP wants this Court to interpret the complaint through the lens of its opposition brief. But turning to the amended complaint itself, the only pertinent factual allegations of cohesion that the NAACP makes are mere threadbare, conclusory remarks that simply recite the elements of the cause of action. Therefore, as this Court has explained, they do not suffice. *See* ECF 307 at 42.

As for the more detailed minority-cohesion allegations that the NAACP makes in its amended complaint, the full text of the allegations reveals that, at best, they are not clearly related to proposed districts; and at worst, they are entirely unrelated to proposed districts. The following table contains the relevant complaint excerpts.

**Table 1**

| DISTRICTS | LONGER QUOTATIONS FROM COMPLAINT |
|---|---|
| Tarrant & Dallas Senate Districts | "Over the last 10 years, the Black, Hispanic, and Asian coalition in SD10 under the previous decade's plan cohesively supported a preferred candidate of choice with voting percentages over 85%. . . . Even regarding each subgroup individually, over the last 10 years, each subgroup voted cohesively to support their preferred candidates of choice **in the previous decade's configuration of SD10**." ECF 321 ¶ 259 (emphasis added). |

| DISTRICTS | LONGER QUOTATIONS FROM COMPLAINT |
|---|---|
| Fort Bend Senate Districts | "By manipulating the district boundaries to include more Anglo voters from rural counties and exclude voters of color in Fort Bend County, the new plan for SD17 once again diminishes the opportunity for voters of color to elect their candidate of choice. . . . Over the last 10 years, the Black, Hispanic, and Asian coalition in SD17 has consistently supported their candidates of choice with at least 80% cohesion. . . . Even regarding each subgroup individually, over the last ten years, each subgroup has voted cohesively to support their preferred candidates of choice *in the previous decade's configuration of SD17*." ECF 321 ¶¶ 274, 276 (emphasis added). |
| Tarrant House Districts | "Under the State's enacted plan, the cluster contains four majority-minority districts. One alternative mapping shows that HD94 could have also been made into a majority-minority district by moving in voters of color from HD91. In particular, Black, Hispanic, and Asian voters have voted cohesively in HD94 over the last 10 years. . . . Even regarding each subgroup individually, over the last ten years, each subgroup voted cohesively to support their preferred candidates of choice *in the previous decade's configuration of HD94*." ECF 321 ¶¶ 307, 308 (emphasis added). |
| Wise & Denton House Districts | "In particular, Black, Hispanic, and Asian voters have voted cohesively in HD65 over the last 10 years. . . . Even regarding each subgroup individually, over the past ten years, each subgroup voted cohesively to support their preferred candidates of choice *in the previous decade's configuration of HD65*." ECF 321 ¶ 319 (emphasis added) |
| Brazoria House Districts | "In particular, Black, Hispanic, and Asian voters have voted cohesively in HD29 over the last 10 years. . . . Even regarding each subgroup individually, over the last ten years, each subgroup voted cohesively to support their preferred candidates of choice *in the previous decade's configuration of HD29*." ECF 321 ¶ 330 (emphasis added). |
| Lubbock House Districts | "Under the State's enacted plan, the Lubbock cluster (HDs 83 and 84) did not contain any majority-minority districts. However, a reconfiguration of these two districts can make HD83 a majority-coalition district. Black, Hispanic, and Asian voters have voted cohesively in HD83 over the last 10 years. . . . Even regarding each subgroup individually, over the last ten years, each subgroup voted cohesively to support their preferred candidates of choice *in the previous decade's configuration of HD83*." ECF 321 ¶¶ 338, 339 (emphasis added). |

3

| DISTRICTS | LONGER QUOTATIONS FROM COMPLAINT |
|---|---|
| Harris & Fort Bend Congressional Districts | "In particular, Black, Hispanic, and Asian voters have voted cohesively in CD2 over the last 10 years. . . . Even regarding each subgroup individually, over the last 10 years, each subgroup voted cohesively to support their preferred candidates of choice *in the previous decade's configuration of CD2*." ECF 321 ¶ 365 (emphasis added). |

Despite these quotations, the NAACP now insists that it has "specifically allege[d] cohesion" for minority voters in the respective proposed districts. *See, e.g.*, ECF 475 at 6. Admittedly, the NAACP does throughout its complaint discuss "alternative drawings" and "proposed reconfigurations" of challenged districts. *See, e.g.*, ECF 321 ¶¶ 279–81 (Fort Bend Senate), 342 (Lubbock House), 368–70 (Harris–Fort Bend Congressional). But in all those instances, repeated nearly verbatim each time, the only accompanying allegations of minority cohesion are the most conclusory and threadbare allegations that each reconfiguration would provide minorities with "a reasonable opportunity to elect their candidate of choice." ECF 321 ¶¶ 279, 280, 281, 342, 368, 369, 370. These are not the sort of factual allegations that this Court has plainly explained must be made, and for that reason, the complaint should be dismissed as requested in the motion to dismiss.

## II.     Cultural Compactness Is Indeed Part of the First *Gingles* Precondition

The NAACP has accused Defendants of "unfair[ly]" "playing a form of whack-a-mole in reverse." ECF 475 at 18. While it is true that arguments may not be raised for the first time in a reply brief,[1] a motion to reconsider,[2] or a motion to alter,[3] that is not true for a motion to dismiss an amended pleading. *See* 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND

---

[1] *E.g.*, *Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016) ("Reply briefs cannot be used to raise new arguments.")

[2] *E.g.*, *Davidson v. Fairchild Controls Corp.*, 882 F.3d 180, 185 (5th Cir. 2018) ("[W]e generally do not consider an issue or a new argument raised for the first time in a motion for reconsideration in the district court." (cleaned up)).

[3] *E.g.*, *Trevino v. City of Fort Worth*, 944 F.3d 567, 570 (5th Cir. 2019) (per curiam) ("[A motion to alter or amend a judgment] is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." (cleaned up)).

4

PROCEDURE § 1476 ("Once an amended pleading is interposed, the original pleading no longer performs any function in the case . . . .").

Defendants acknowledge that until now they had not argued cultural compactness under the first *Gingles* precondition. But the NAACP has filed an amended complaint. And although Defendants do not challenge the fairness of that amendment, Defendants must be permitted—out of fairness—to muster whatever defenses they have in response to it. In that spirit only do Defendants now argue that the NAACP has not alleged the first *Gingles* precondition because it has failed to allege cultural compactness for its proposed districts.

As it happens, the NAACP misreads the Supreme Court's opinion in *LULAC*. The NAACP proffers a supposed distinction: according to the NAACP, the Supreme Court in *LULAC* was discussing the ***defense*** of the compactness of an enacted district; but here, the question is ***pleading*** compactness for a demonstrative district. This distinction is irrelevant and appears nowhere within the Supreme Court's opinion. In fact, the Supreme Court in *LULAC* makes clear that a plaintiff must indeed allege compactness to bring a § 2 violation. *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 433 (2006) (explaining that the "compactness" required "to show" an equal-protection violation, "which concerns the shape or boundaries of a district," is distinct from the "compactness" that must be alleged for a § 2 violation, "which concerns a minority group's compactness" (quoting *Abrams v. Johnson*, 521 U.S. 74, 111 (1997) (Breyer, J., dissenting))). Thus, cultural compactness is not a pure evidentiary question; it is also a pleading requirement.

And true, the precise phrase "cultural compactness" does not appear in *LULAC*—it comes from a law-review article. *See* Daniel R. Ortiz, *Cultural Compactness*, 105 MICH. L. REV. FIRST IMPRESSIONS 48 (2006). But as this Court recognized *sua sponte* in its recent motion-to-dismiss order, the concept is rooted in the Supreme Court's holding in *LULAC*. And as the Supreme Court explained, "there is no basis to believe a district that combines two farflung segments of a racial group with

5

disparate interests provides the opportunity that § 2 requires or that the first *Gingles* condition contemplates." *LULAC*, 548 at 433. Therefore, the NAACP was required to allege cultural compactness, and for the reasons explained in the motion to dismiss, the NAACP has failed to do so.

## CONCLUSION

Defendants respectfully ask the Court to dismiss the parts of the NAACP's complaint identified in the motion to dismiss.

Date: August 8, 2022

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Respectfully submitted.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
Tex. State Bar No. 24088531

RYAN D. WALTERS
Special Counsel, Special Litigation Unit
Tex. State Bar No. 24105085

ARI M. HERBERT
Assistant Attorney General, Special Litigation Unit
Tex. State Bar No. 24126093

*/s/ Jack DiSorbo*
JACK B. DISORBO
Assistant Attorney General, Special Litigation Unit
Tex. State Bar No. 24120804

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov
ari.herbert@oag.texas.gov
jack.disorbo@oag.texas.gov

**COUNSEL FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on August 8, 2022, and that all counsel of record were served by CM/ECF.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN

*/s/ Jack DiSorbo*
JACK B. DISORBO