UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **LEAGUE OF UNITED LATIN AMERICAN CITIZENS,** *et al.*, <br><br>*Plaintiffs*, <br><br>**EDDIE BERNICE JOHNSON,** *et al.*, <br><br>*Plaintiff-Intervenors*, <br>v. <br><br>**GREG ABBOTT,** *in his official capacity as Governor of the State of Texas*, *et al.*, <br><br>*Defendants*. | EP-21-CV-00259-DCG-JES-JVB <br>[Lead Case] <br><br>& <br><br>All Consolidated Cases |

# ORDER

The LULAC, Abuabara, and Texas NAACP Plaintiffs ("Plaintiffs") move to compel Defendant Governor Abbott to produce certain documents. Mot. Compel, ECF No. 380 ("Motion"). Plaintiffs want Governor Abbott to produce documents related to his proclamation calling the special legislative session during which the Texas Legislature enacted the challenged redistricting legislation.[1] Governor Abbott, however, maintains that the documents related to his proclamation are covered by various privileges: legislative privilege, deliberative process privilege, attorney-client privilege, and/or the work product doctrine. *See generally* Resp.; Mot. Ex. A (privilege log).

---

[1] Since Plaintiffs filed their Motion, Governor Abbott produced some the documents Plaintiffs demanded—namely, those related to draft redistricting legislation. Resp., ECF No. 423, at 4 n.1. Governor Abbott has produced the following documents: DOC_0356598, DOC_0356600, DOC_0356606, DOC_0356560, DOC_0356561, DOC_0356586, DOC_0356587, DOC_0356588, DOC_0356599 (with internal annotations redacted).

Plaintiffs also maintain that Governor Abbott must produce documents to which he has access via a Dropbox link that the Senate Redistricting and Jurisprudence Committee sent to the Office of the Governor ("OOG").  Mot. at 25–26; Reply, ECF No. 441, at 2.  Governor Abbott says he does not have possession, custody, or control of those documents and therefore is not required to produce them.  Resp. at 12–13.

For the reasons that follow, the Court GRANTS Plaintiffs' Motion and REQUIRES Governor Abbott to submit certain documents to the Court for *in camera* review.

## I. DOCUMENTS RELATED TO GOVERNOR ABBOTT'S PROCLAMATION CALLING THE SPECIAL LEGISLATIVE SESSION

### A. Legislative Privilege

Governor Abbott asserts legislative privilege over most of the documents he has withheld.[2]  Mot. Ex. A.  Legislative privilege is a personal privilege.  *Perez v. Perry*, No. SA-11-CV-360-OLG, 2014 WL 106927, at *1 (W.D. Tex. Jan. 8, 2014).  Governor Abbott cannot, therefore, assert legislative privilege *on behalf* of legislators.  *Id.* ("[N]either the Governor, nor the Secretary of State or the State of Texas has standing to assert the legislative privilege on behalf of any legislator or staff member.").  To the extent he does so, the Court grants Plaintiffs' Motion.[3]

Governor Abbott also contends that he can invoke the legislative privilege himself.  Resp. at 10–12.  He says he can do so because calling a special legislative session can "be understood

---

[2] Governor Abbott does not assert legislative privilege over the following documents: DOC_0356594, DOC_0356595, DOC_0356596, and DOC_0356597.  Mot. Ex. A.

[3] Even if Governor Abbott could invoke the legislative privilege on behalf of legislators, the Legislature has waived the privilege to the extent it provided any of the disputed documents to Governor Abbott.  *Gilby v. Hughs*, 471 F. Supp. 3d 763, 767 (W.D. Tex. 2020) ("To the extent that legislators or legislative staff communicated with any outside (e.g., non-legislators, non-legislative staff)[,] any legislative privilege is waived as to the contents of those specific communications.").

as a legislative action." *Id.* at 10. If calling a special session is a legislative action, Governor Abbott argues, then "the [legislative] privilege plainly applies to the proclamation drafts and internal OOG emails discussing the drafts." *Id.* Plaintiffs contend that the Supreme Court of Texas's interpretation of the relevant clauses of the Texas Constitution forecloses Governor Abbott's argument. Mot. at 11–12. We agree.

For an undecided issue of Texas law, our job is to guess what Texas courts would do. *See, e.g.*, *Fire Prot. Serv., Inc. v. Survitec Survival Prods., Inc.*, 18 F.4th 802, 804 (5th Cir. 2021) (noting that "when no decision [of the Supreme Court of Texas] gives enough guidance" courts can "make an *Erie* guess"). In a recent case, the Supreme Court of Texas explained:

> The powers to veto legislation and call special legislative sessions belong constitutionally to the Governor, not the Legislature. [In doing either,] [t]he Governor has expressed his view on legislative priorities, as he is entitled to do, but he has not exercised the Legislature's power to order its own proceedings.

*In re Turner*, 627 S.W.3d 654, 660 (Tex. 2021). Though *Turner* is not directly on point because the Supreme Court of Texas did not decide the separation of powers issue presented to it, *id.* at 660–61, the Court's statement about the basis of the Governor's constitutional power is quite strong, *see id.* at 660 ("The Governor has *expressed his views* . . . but [] has *not exercised* the Legislature's power . . . ."). It seems to us that the Supreme Court of Texas would conclude that the Governor does not exercise legislative power when calling a special session. Because we so conclude, Governor Abbott cannot invoke the legislative privilege. *See Gilby* 471 F. Supp. 3d at 767 ("Legislative privilege . . . may be waived or asserted by *each individual legislator*." (emphasis added)). Governor Abbott must produce any documents he withheld for legislative privilege reasons that are not otherwise covered by a validly asserted privilege addressed in this Order.

### B. Deliberative Process Privilege

The deliberative process privilege is an executive privilege. *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021) (federal); *Gilby*, 471 F. Supp. 3d at 767–68 (assuming application of federal deliberative process privilege to state agencies); *Harding v. County of Dallas, Texas*, No. 3:15-CV-0131-D, 2016 WL 7426127, at *12–13 (N.D. Tex. Dec. 23, 2016) (same).[4] Deliberative process privilege protects internal deliberations so that executive officials' discussions will be candid and result in what's best for the public. *See, e.g.*, *Gilby*, 471 F. Supp. 3d at 767. For the deliberative process privilege to apply, the documents must be both "deliberative" and "predecisional." *U.S. Fish & Wildlife*, 141 S. Ct. at 786. "Documents are 'predecisional' if they were generated before the [executive's] final decision on the matter, and they are 'deliberative' if they were prepared to help the [executive] formulate its position." *Id*.

Governor Abbott invokes the deliberative process privilege over every document he has withheld. Mot. Ex. A. He says the deliberative process privilege covers the documents because they contain "internal OOG deliberations about whether, when, and how to call a third special session." Resp. at 1. With the exception of two documents that Governor Abbott has since produced,[5] Plaintiffs do not challenge that the documents he is withholding are "deliberative" and "predecisional." Mot. at 18; Reply at 6–8. In that limited sense, Defendant is correct that

---

[4] Some courts have concluded the deliberative process privilege is inapplicable to state agencies. *E.g.*, *Buford v. Holladay*, 133 F.R.D. 487, 494 (S.D. Miss. 1990) ("[T]his Court concludes that the deliberative process privilege should not be extended to include state governmental agencies."); *Fish v. Kobach*, No. 16-2105-JAR, 2017 WL 1373882, at *5 (D. Kan. Apr. 17, 2017). The Court need not further address this because no party raised the issue.

[5] DOC_0356599 and DOC_0356606.

Plaintiffs do not challenge whether the deliberative process privilege might apply to the documents Governor Abbott is withholding.  Resp. at 7.

But Plaintiffs do challenge Governor Abbott's assertion of deliberative process privilege for failure to properly raise the privilege.  Asserting the deliberative process privilege "requires: (1) a formal claim of privilege by the 'head of the department' having control over the requested information; (2) assertion of the privilege based on actual personal consideration by that official; and (3) a detailed specification of the information for which the privilege is claimed, with an explanation why it properly falls within the scope of the privilege." *Landry v. FDIC*, 204 F.3d 1125, 1135 (D.C. Cir. 2000); *see also Branch v. Phillips Petrol. Co.*, 683 F.2d 873, 882–83 (5th Cir. Unit A 1981) ("The purpose of this procedural requirement is to ensure that subordinate officials do not lightly or mistakenly invoke the government's privilege in circumstances not warranting its application.").

Plaintiffs argue that Governor Abbott has failed to comply with this procedural requirement and thus has not adequately supported his deliberative process privilege claim.  Mot. at 16–18.  Specifically, Plaintiffs point out that neither Governor Abbott nor any other person at OOG has indicated that they reviewed the withheld documents or are personally asserting the deliberative process privilege.  *Id.* at 17–18.  Rather, Plaintiffs contend the Governor's trial counsel is asserting the privilege.  *Id.*  Defendant counters that Plaintiffs misread the procedural requirement as mandating that the head of the agency (Governor Abbott) invoke the privilege, which Defendant says is not the case.  Resp. at 7–8.

The head of the department or agency does not have to invoke the deliberative process privilege; instead, lower-level members of the relevant department or agency may invoke the privilege so long as they had knowledge of the deliberations they seek to protect from disclosure.

*See Landry*, 204 F.3d at 1135–36 ("Insistence on an affidavit from the very pinnacle of agency authority would surely start to erode the substance of 'actual personal' involvement."). So Governor Abbott is correct that we should not strictly construe "agency head" to mean the top dog. Resp. at 7. But here, *no* individual in the OOG has claimed the deliberative process privilege. *See, e.g.*, Mot. Ex. A (privilege log showing trial counsel asserted the privilege).

Trial counsel cannot invoke the privilege on OOG's behalf. *United States ex rel. Poehling v. UnitedHealth Grp., Inc.*, No. CV 16-8697 MWF (SSx), 2018 WL 8459926, at *12 (C.D. Cal. Dec. 14, 2018) ("[C]ourts have not permitted staff attorneys, especially those who are participating in pending litigation, to assert the privilege on behalf of the agency."); *Kaufman v. City of New York*, No. 98CIV.2648(MJL)(KNF), 1999 WL 239698, at *4 (S.D.N.Y. Apr. 22, 1999) ("[T]he privilege has been asserted solely by counsel to . . . defendants, which . . . is impermissible."); *Exxon Corp. v. Dep't of Energy*, 91 F.R.D. 26, 43 (N.D. Tex. 1981) ("The affirmations of staff attorneys, especially those participating in pending litigation are legally insufficient."); *Pierson v. United States*, 428 F. Supp. 384, 395 (D. Del. 1977) ("To permit any government attorney to assert the privilege would derogate [the interests served by the privilege]. . . . Moreover, the judgment of attorneys engaged in litigation is very likely to be affected by their interest in the outcome of the case."). Because only trial counsel has invoked the deliberative process privilege, Governor Abbott has not validly asserted the privilege. Consequently, Governor Abbott must produce documents withheld on the basis of the deliberative process privilege.[6] *See Kaufman*, 1999 WL 239698, at *4–5.

---

[6] Because we conclude that Governor Abbott has not validly asserted the deliberative process privilege, we decline to address the parties' arguments regarding whether the deliberative process privilege should yield to the need for discovery in this case or whether Plaintiffs have shown that these documents may shed light on government misconduct. Mot. at 19–20; Resp. at 8–9; Reply at 7–8.

The Court also notes that Governor Abbott has waived the deliberative process privilege for materials shared outside the executive branch. The purpose of the deliberative process privilege is to promote open and honest discussion within the executive branch. *See, e.g., U.S. Fish & Wildlife Serv.*, 141 S. Ct. at 785–86; *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (deliberative process "cases *uniformly* rest the privilege on the policy of protecting the decision-making process of government *agencies*" (cleaned up) (emphasis added)). Because the privilege is an executive one, the executive waives that privilege when it shares materials outside of the executive branch, including with the legislature. *Gilby*, 471 F. Supp. 3d at 767–68 (concluding that the "rationale [for the deliberative process privilege] does not support privilege for communications where . . . the separation of powers veil has been pierced"). Indeed, with respect to the deliberative process privilege, communications between the executive and legislative branch "are not meaningfully different from communications received by constituents from legislators or communications received by lobbyists, think-tanks, or any outsider." *Id.* at 768. Governor Abbott must produce documents shared outside the executive branch to which he asserts the deliberative process privilege.

**C. Attorney-Client Privilege**

Attorney-client privilege is another limit on the scope of discovery. FED. R. CIV. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter . . . ."); *EEOC v. BDO USA, LLP*, 876 F.3d 690, 695 (5th Cir. 2017). In federal question cases, like this one, "[q]uestions of privilege . . . are 'governed by the principles of the common law.'" *United States v. Zolin*, 491 U.S. 554, 562 (1989) (quoting FED. R. EVID. 501)). The party invoking attorney-client privilege "must prove: (1) that he made a *confidential* communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services,

or assistance in some legal proceeding." *BDO USA*, 876 F.3d at 695 (quoting *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997)).

The proponent of the privilege has the burden to prove the privilege applies. *Id.* At minimum, to meet its burden, the proponent must provide a privilege log that "set[s] forth specific facts that, if credited, would suffice to establish each element of the privilege . . . that is claimed." *NLRB v. Interbake Foods, LLC*, 637 F.3d 492, 502 (4th Cir. 2011) (cleaned up); *BDO USA*, 876 F.3d at 696. "[B]ecause the privilege 'has the effect of withholding relevant information from the fact-finder, it applies only where necessary to achieve its purpose.'" *Robinson*, 121 F.3d at 974 (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)); *BDO USA*, 876 F.3d at 695 (attorney-client privilege "is interpreted narrowly").

Governor Abbott invokes the attorney-client privilege over all the documents he has withheld. Mot. Ex. A. Plaintiffs challenge Governor Abbott's use of attorney-client privilege on two grounds: (1) at least some of the documents were not confidential communications and (2) the documents were not created for the primary purpose of legal advice. Mot. at 20–23.

   1. ***Whether the Documents are Confidential***

The attorney-client privilege attaches only if the people involved in the communication intended it to be confidential. *BDO USA*, 876 F.3d at 695. That means "the presence of a third person . . . or the disclosure of an otherwise privileged communication to a third person eliminates the intent for confidentiality on which the privilege rests." *Hodges, Grant & Kaufmann v. IRS*, 768 F.2d 719, 721 (5th Cir. 1985); *see also In re Auclair*, 961 F.2d 65, 70 (5th Cir. 1992). "The privilege is not, however, waived if a privileged communication is shared with a third person who has a common legal interest with respect to the subject matter of the communication." *Hodges, Grant & Kaufmann*, 768 F.2d at 721. "Parties have a 'common legal

interest' if they are 'co-defendants in actual litigation' or 'potential' co-defendants." *LUPE v. Abbott*, SA-21-CV-00844-XR, 2022 WL 1667687, at *7 (W.D. Tex. May 25, 2022) (quoting *United States v. Newell*, 315 F.3d 510, 525 (5th Cir. 2002)).

Plaintiffs argue that the attorney-client privilege does not cover any communications or documents that OOG shared with the Legislature. Mot. at 22–23. We agree. Legislators and their staff are not individuals with common legal interests to OOG with respect to the drafting of the proclamation because they are not co-defendants; nor could they "plausibly claim that a threat of litigation existed at the time of the communications." *See LUPE*, 2022 WL 1667687, at *7. Governor Abbott does not dispute this, perhaps because he may have already produced documents that OOG shared with the Legislature or that the Legislature shared with OOG. *See* Resp. at 4–6. But to the extent Governor Abbott has not produced documents that passed between OOG and the Legislature (or others lacking a common legal interest), the Court concludes that Governor Abbott waived the attorney-client privilege. *SEC v. Brady*, 238 F.R.D. 429, 439 (N.D. Tex. 2006). Governor Abbott must produce any such documents if they are not otherwise covered by a privilege addressed in this Order.[7]

### 2. *The Documents' Purpose*

The mere fact that an attorney touches a document does not necessarily mean that the attorney-client privilege protects that document. *See, e.g.*, *BDO USA*, 876 F.3d at 695–96. In that vein, "documents concerning 'advice on political, strategic or policy issues . . . [are] not [] shielded from disclosure by the attorney-client privilege.'" *Evans v. City of Chicago*, 231 F.R.D.

---

[7] Plaintiffs contend that Governor Abbott has still not produced DOC_035693, which Plaintiff say the OOG shared with the Legislature. Reply at 8–9. The Court has been unable to identify "DOC_035693" in the privilege log. To the extent that the OOG shared this document (or the document Plaintiffs intended to refer to), or any other disputed document, with the Legislature, Governor Abbott must produce it.

302, 312 (N.D. Ill. 2005) (quoting *In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998)); *see also In re County of Erie*, 473 F.3d 413, 421–23 (2d Cir. 2007) (recognizing that attorneys can serve as policy advisors and that advice an attorney provides in that capacity may or may not be privileged); *Republican Party of N.C. v. Martin*, 136 F.R.D. 421, 426 (E.D.N.C. 1991) ("If the communication essentially involves the giving of political advice, then it is not privileged."). When there are dual reasons (say, legal and policy) for creating a document, "courts should consider the context" and determine the document's "manifest purpose." *BDO USA*, 876 F.3d at 696 (quoting *Exxon Mobil Corp. v. Hill*, 751 F.3d 379, 382 (5th Cir. 2014)) (cleaned up).

By Defendant's own admission in his privilege log, the disputed documents and communications have a mixed purpose: legal and strategy advice. Mot. Ex. A (describing documents as containing "advice . . . on the substance of legal compliance, *and* strategy of the subject . . . ." (emphasis added)); *see also* Resp. at 5 ("To be sure, *part* of the purpose of these documents' creation was to deliberate and consider whether, when, and how to call a third special session."). Plaintiffs assert that this mixed purpose means the attorney-client privilege does not apply. Reply at 9–10. Plaintiffs also say that Governor Abbott waived the attorney-client privilege because he failed to brief the manifest purpose of the withheld documents. *Id.* at 10. As to the waiver argument, Defendant did assert the *primary* purpose of the documents were to provide legal advice which is sufficient to preserve the issue of documents' manifest purpose. Resp. at 5–6. Thus, the dispute between the parties is really about the manifest purpose of the documents Governor Abbott has withheld and whether that purpose means the attorney-client privilege attached.

Governor Abbott does not provide enough detail in his privilege log for the Court to assess whether the "manifest purpose" of the documents is legal, strategy, or policy. At the same

time, the Court cannot categorically conclude that the privilege does not apply. The Court must therefore conduct an *in camera* review. *See BDO USA*, 876 F.3d at 697 n.4. The Court orders Governor Abbott to provide the Court all documents for which he asserts the attorney-client privilege and for which that privilege has not been waived. Governor Abbott must produce to Plaintiffs all documents for which the privilege has been waived.

### D. Work Product Doctrine

Governor Abbott asserts that the work product doctrine covers all the documents he has withheld. Mot. Ex. A. "The work product privilege applies to documents 'prepared in anticipation of litigation.'" *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000) (quoting FED. R. CIV. P. 26(b)(3)). While "the privilege can apply where litigation is not imminent," that is true only if "the *primary* motivating purpose behind the creation of the document was to aid in possible future litigation." *Id.* (quotation omitted) (emphasis added); *see also United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. Unit A 1981).

Documents created "in the ordinary course of business" are not covered by the work product doctrine. *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982). This includes documents created in the ordinary course of government business. *See, e.g.*, *Maine v. U.S. Dep't of Interior*, 298 F.3d 60, 69–70 (1st Cir. 2002) (analyzing work product doctrine in relation to documents withheld by U.S. Department of Interior); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 864–66 (D.C. Cir. 1980) (same but for Department of Energy); *Sharp v. Gov't of Virgin Islands*, 77 F. App'x 82, 85–86 (3d Cir. 2003) (appraisals prepared by government contractor not covered by work product doctrine). For instance, courts have held that the work product doctrine does not apply to "documents pertaining to pending legislation . . . because 'the legislature could *always* have a reasonable belief that *any* of its

enactments would result in litigation.'" *Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 348 (E.D. Va. 2015) (quoting *Baldus v. Brennan*, Nos. 11-CV-562 JPS-DPW-RMD, 11-CV-1011 JPS-DPW-RMD, 2011 WL 6385645, at *2 (E.D. Wis. Dec. 20, 2011)). This reasoning applies equally to the facts here. The OOG drafted an executive proclamation to call a special session of the Legislature—which is the business of the Governor. TEX. CONST., art. IV, § 8. The OOG could "always have a reasonable belief that" calling a special session may result in litigation, even if that litigation attacks legislation and not the proclamation itself. *Cf. Bethune-Hill*, 114 F. Supp. 3d at 348 (quotation omitted); *Mims v. Dallas County*, 230 F.R.D. 479, 484 (N.D. Tex. 2005) ("Like all privileges, the work product doctrine must be strictly construed.") (collecting cases). The Court concludes that the work product doctrine is inapplicable to all of the disputed documents.

## II.    DROPBOX DOCUMENTS

Plaintiffs assert that Governor Abbott has possession, custody, or control over documents the Senate Redistricting and Jurisprudence Committee sent to the Office of the Governor via a Dropbox link.[8] Mot. at 25–26; Reply at 2. According to Plaintiffs, Governor Abbott has not only refused to produce documents accessible via the link, but he has also refused to attempt to access the documents despite Plaintiffs' May 16 request that he do so. Reply at 2–3; Mot. Ex. K at 9–10. Governor Abbott counters that OOG does not have possession, custody, or control of the documents because OOG never accessed the Dropbox site and is currently unaware whether it has access. Resp. at 12–13.

---

[8] The privilege log indicates that the Senate Redistricting and Jurisprudence Committee sent Governor Abbott document links "via Dropbox." Mot. Ex. A (DOC_0356598 and DOC_0356600); *see also* Mot. Ex. K at 9–10. Though Governor Abbott has since produced the documents identified in the privilege log, Resp. at 4 n.1, Plaintiffs maintain that Governor Abbott has an obligation, imposed by Rule 34 of the Federal Rules of Civil Procedure, to produce the documents shared with him via the Dropbox link, Reply at 2–3.

Rule 34 of the Federal Rules of Civil Procedure permits a party to request an opposing party to produce documents they have in their "possession, custody, or control." FED. R. CIV. P. 34(a)(1)(A). Possession, custody, or control are broad terms. They "include[] more than actual possession or control of the materials; [the terms] also contemplate[] a party's legal right or *practical ability to obtain* the materials from a nonparty to the action." *E.g.*, *Mir v. L-3 Commc'ns Integrated Sys., LP*, 319 F.R.D. 220, 230 (N.D. Tex. 2016) (quoting *Edwards v. Bossier City*, No. CV 15-1822, 2016 WL 3951216, at *3 (W.D. La. July 20, 2016)) (emphasis added); *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007).

In the previous round of redistricting litigation, the district court said that "Texas may be presumed to have 'control' over [electronically-stored information ("ESI")] contained on official state government servers." *Perez v. Perry*, No. SA-11-CV-360-OLG-JES-XR, 2014 WL 1796661, at *1 (W.D. Tex. May 6, 2014). In a prior order, this panel agreed with that presumption. *LULAC v. Abbott*, EP-21-CV-00259-DCG-JES-JVB, 2022 WL 1540589, at *2 n.1 (W.D. Tex. May 16, 2022). While Dropbox is not an official government server, the Legislature's use of Dropbox to send documents to OOG is similar to the use of an official server to share and access documents. Dropbox is a third-party file storage system that can be used to share documents with others. *See* Mot. at 25–26. The Court, therefore, concludes that OOG has the practical ability to obtain documents from Dropbox links that the Legislature sent to OOG. *See Perez*, 2014 WL 1796661, at *2 (requiring attorney general's office to provide "ESI stored on private servers" that were "in the possession of the 23 individual legislators represented by the Attorney General's office"). Governor Abbott shall produce documents from the Dropbox links in accordance with limitations under Rule 26(b). Governor Abbott may produce a privilege

log to Plaintiffs but he shall not withhold documents on the basis of privilege in manner that is inconsistent with this Order.

## III. CONCLUSION

The Court **GRANTS** the LULAC, Abuabara, and Texas NAACP Plaintiffs' "Motion to Compel Production of Documents from Defendant Abbott" (ECF No. 380).

The Court **ORDERS** Governor Abbott to produce documents that he shared outside OOG, as the deliberative process and attorney-client privileges were waived and the legislative privilege and work product doctrine are inapplicable.

The Court further **ORDERS** Governor Abbott to submit all other documents to the Court for *in camera* review within **seven (7) days** of this Order. The Court will determine whether the attorney-client privilege applies to these documents. All other asserted privileges are either waived or inapplicable.

**So ORDERED and SIGNED this 10th day of August 2022.**

*[signature]*

DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE

*And on behalf of:*

| | | |
|---|---|---|
| **Jerry E. Smith**<br>**United States Circuit Judge**<br>**U.S. Court of Appeals, Fifth Circuit** | *-and-* | **Jeffrey V. Brown**<br>**United States District Judge**<br>**Southern District of Texas** |