IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS (LULAC), et al., <br><br> Plaintiffs, <br><br> v. <br><br> GREG ABBOTT, et al., <br><br> Defendants. | Civil Action No. 3:21-cv-259 (DCG-JES-JVB) <br> (consolidated cases) |

**UNITED STATES' MOTION TO ENFORCE ORDER COMPELLING THE PRODUCTION OF OAG DOCUMENTS FROM THE STATE OF TEXAS**

## INTRODUCTION

On May 16, 2022, this Court ordered the State of Texas to "produce any nonprivileged, responsive documents and [electronically stored information] held by the Office of the Attorney General." OAG Order 6, ECF No. 279. Nearly three months later, Texas has still produced no such OAG documents, instead withholding all 812 OAG documents under claims of privilege.

Texas's privilege claims are unjustified or unsubstantiated. The attorney-client privilege does not apply where documents contain factual, non-legal information or—by Texas's own admission—do not involve communications with a client. The work-product doctrine does not apply to documents created during a legislative process, rather than in anticipation of litigation. And legislative privilege also does not apply to factual information and should be overcome where the strong federal interest in eliminating discrimination in voting outweighs the interests underpinning the qualified privilege. More broadly, generalized assertions that communications concern legal advice may not support the attorney-client privilege, and legislative privilege may be waived by seeking legal advice from executive branch officials.

Because Texas has failed to demonstrate that the claimed privileges and protections apply to most of the OAG documents, the United States respectfully requests that this Court enforce its May 16 order and compel production of 793 OAG documents that Texas has improperly withheld. The United States is unable to discern whether the remaining 19 documents should be turned over because of insufficient descriptions, so the United States requests that this Court review those documents *in camera*.

## BACKGROUND

On December 6, 2021, the United States filed this Voting Rights Act ("VRA") enforcement action challenging Texas's 2021 redistricting plans. *See* U.S. Compl., *United States*

1

*v. Texas*, No. 3:21-cv-299 (W.D. Tex. Dec. 6, 2021), ECF No. 1; U.S. Am. Compl., ECF No. 318. The United States alleges that the Congressional plan has a discriminatory purpose and result and the House plan has a discriminatory result. *See* U.S. Am. Compl. ¶¶ 197-99.

On January 12, 2022, the United States sent Texas its first request for production of documents, seeking materials including redistricting proposals, analyses related to voting patterns, and estimates related to population changes. *See* U.S. First Reqs. for Prod. 7-10, ECF No. 213-2. The State resisted providing discovery, so the United States moved to compel production. *See* U.S. Mot. to Compel, ECF No. 79. On May 16, this Court found that "Texas has control over" responsive items held by OAG and ordered the State to produce them. OAG Order 4. Nonetheless, nearly seven months after the United States' request and almost three months after the Court's order, Texas has still not produced any OAG documents.[1]

On August 2, Texas produced a revised privilege log identifying 812 withheld documents. *See* OAG Rev. Log (Ex. 3). The identified documents fall in two general categories. 793 documents—the "Expert Documents"—are "statistical analys[e]s" of "demographics" and "voting behavior" for various redistricting plans plus "draft map[s]," all of which were "prepared internally by in-house OAG consulting experts" and used by Chris Hilton, an OAG attorney, in "providing legal assistance" to Senator Joan Huffman, Chair of the Senate Special Committee on

---

[1] Three days after the Court's May 16 order compelling production, the United States asked Texas to begin an "immediate rolling production" of responsive OAG documents, "with privilege logs provided within 20 days." Counsel Emails 8 (Ex. 1). The State instead treated this Court's order akin to a new request for production, allotting 30 days to produce any discoverable documents and another 30 days to produce privilege logs. *See id.* at 5, 7. After failing to meet even those deadlines, the State produced a privilege log on July 20 indicating that it had withheld 811 documents under various claims of privilege. *See* OAG Initial Log (Ex. 2). That log contained hundreds of identical document descriptions and failed to identify authors, senders, and recipients. *See id.* The parties met and conferred, and OAG agreed the log was deficient.

Redistricting, on "redistricting legislation." OAG Rev. Log 2-200 (Documents 6-798). These factual documents were not shared with the client, Senator Huffman. *See id.* Nineteen additional documents—the "Interbranch Documents"—are "document[s] regarding [C]ongressional redistricting" and "email communications" shared between Mr. Hilton and Anna Mackin, a Senate attorney, "containing legal advice" on "talking points," a "draft [Congressional] map," and "analysis of redistricting legislation," plus "communications" between "in-house OAG consulting experts and [the] Texas Legislative Council" regarding "analyses of draft redistricting legislation." *Id.* at 1-2, 200-03 (Documents 1-5 and 799-812). According to the State, the attorney-client privilege and legislative privilege protect each document, and all but Documents 799, 800, 805, and 806 are protected work product. *See id.*

## LEGAL STANDARD

"A party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if the opposing party "fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv). A party withholding materials as privileged or protected as attorney work product must "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). The party withholding documents has the burden to establish they are privileged or protected. *See Hodges, Grant & Kaufmann v. IRS*, 768 F.2d 719, 721 (5th Cir. 1985). Privilege claims, particularly involving the attorney-client relationship, are to be construed narrowly, and "[a]mbiguities as to whether the elements of a privilege claim have been met are construed against the proponent." *EEOC v. BDO USA, LLP*, 876 F.3d 690, 695

3

(5th Cir. 2017) (citation omitted).  Even where privilege claims are valid, "a privilege log's description of each document and its contents must provide sufficient information to permit courts and other parties to 'test the merits of' the privilege claim." *Id.* at 697 (citation omitted). "[A]n independent evaluation of the claimed privilege" is particularly important "where one of the purposes of the [VRA] is to provide a federal forum for the adjudication of voting-rights violations by state officials."  TLC Order 9, ECF No. 377.

To establish attorney-client privilege, the recipient of a request for production "must prove: (1) that he made a confidential communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding."  *BDO USA*, 876 F.3d at 695 (emphasis removed and citation omitted).  To establish work-product protection, a recipient must show a document was created "in anticipation of litigation."  *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982).  And to establish legislative privilege, a recipient must show that a communication "contains or involves opinions, motives, recommendations or advice about legislative decisions between legislators or between legislators and their staff."  *Jackson Mun. Airport Auth. v. Bryant*, No. 16-cv-246, 2017 WL 6520967, at *7 (S.D. Miss. Dec. 19, 2017) (citations omitted).

**ARGUMENT**

Texas has failed to demonstrate that the Expert Documents are subject to the attorney-client privilege, the work-product doctrine, or the legislative privilege.  These documents are purely factual analyses and maps created as part of the legislative process, and they were not sent to legislative branch officials.  While the Expert Documents may have been the factual basis for discussions between OAG counsel and certain legislative staff, that does not protect Texas from having to release these factual documents.  In addition, the State has failed to carry its burden

4

that the Interbranch Documents are uniformly subject to privilege, warranting *in-camera* review.

### I. The Expert Documents Are Not Privileged or Protected.

Texas asserts the attorney-client privilege, work-product doctrine, and legislative privilege over the Expert Documents. *See* OAG Rev. Log. But blackletter law bars each of the State's privilege claims. Texas must produce these documents.

#### A. The Attorney-Client Privilege Does Not Apply.

The attorney-client privilege does not apply to the Expert Documents because those documents contain purely factual, non-legal information. The privilege "does not protect disclosure of the underlying facts." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). The statistical analyses and draft maps withheld—all prepared by non-lawyer experts—are textbook factual documents. *See Ohio A. Philip Randolph Inst. v. Smith*, No. 18-cv-357, 2018 WL 6591622, at *3 (S.D. Ohio Dec. 15, 2018) (three-judge court) (requiring disclosure of "facts, data, and maps"); Docs. Order 13-14, ECF No. 467, *administratively stayed*, No. 22-50662 (5th Cir. July 27, 2022). Attorney-client privilege does not justify withholding these documents.[2]

The attorney-client privilege also does not apply to the Expert Documents because the documents were never provided to OAG's client, Senator Huffman. It is axiomatic that the privilege applies only to communications *between* attorneys and clients. *See BDO USA*, 876 F.3d at 695; *Taylor Lohmeyer L. Firm P.L.L.C. v. United States*, 957 F.3d 505, 510 (5th Cir.

---

[2] Indeed, during prior redistricting litigation, courts ordered the State to produce in discovery similar racially polarized voting analyses and reconstituted election analyses prepared by OAG, and these analyses played a pivotal role in those cases. *See Texas v. United States*, 279 F.R.D. 24, 34-35 (D.D.C. 2012) (three-judge court), *vacated in part due to agreement*, 279 F.R.D. 176 (D.D.C. 2012) (three-judge court); *Texas v. United States*, 887 F. Supp. 2d 133, 143 (D.D.C. 2012) (three-judge court), *vacated and remanded on other grounds*, 570 U.S. 928 (2013).

2020) ("[T]he Firm must establish that the document contains a confidential communication, between it and a client."). Documents kept "hidden in an attorney's file" thus "fall outside the scope of the attorney-client privilege." *Hickman v. Taylor*, 329 U.S. 495, 508, 512 (1947).[3] The Expert Documents were not shared with anyone outside of OAG, "not even the client." OAG Rev. Log 2-200. Accordingly, they are not subject to attorney-client privilege.

### B. The Work-Product Doctrine Does Not Apply.

The work-product doctrine does not apply to the Expert Documents because they pertain to then-pending legislation. Work-product doctrine "is not . . . an umbrella that shades all materials prepared by a lawyer." *Tonti Mgmt. Co. v. Soggy Doggie, LLC*, No. 19-cv-13134, 2020 WL 9172077, at *5 (E.D. La. June 25, 2020) (internal quotation marks and citations omitted). The doctrine does not cover materials created by attorneys or their agents "in the ordinary course of business, or pursuant to public requirements unrelated to litigation." *El Paso Co.*, 682 F.2d at 542. Thus, this Court has declined to extend work-product protection to documents "pertaining to pending legislation . . . because the legislature could *always* have a reasonable belief that *any* of its enactments would result in litigation." OOG Order 11-12, ECF No. 526 (quoting *Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 348 (E.D. Va.

---

[3] *See also, e.g.*, *Natta v. Zletz*, 418 F.2d 633, 637-38 (7th Cir. 1969) (determining that memoranda "limited to intra-office circulation" are not subject to attorney-client privilege); *Trib. Co. v. Purcigliotti*, No. 93-cv-7222, 1997 WL 10924, at *11 (S.D.N.Y. Jan. 10, 1997) ("[C]ounsel conceded that the memoranda were, in fact, never sent to the client [so] they do not come within the parameters of the attorney-client privilege."), *modified*, 1998 WL 175933 (S.D.N.Y. Apr. 14, 1998) (not addressing attorney-client privilege); *Dexcom, Inc. v. AgaMatrix, Inc.*, No. 16-cv-5947, 2018 WL 11350028, at *4 (C.D. Cal. Aug. 6, 2018), *vacated due to settlement*, *Dexcom, Inc. v. AgaMatrix, Inc.*, No. 16-cv-5947, 2020 WL 10728639 (C.D. Cal. Apr. 2, 2020) (declining to apply attorney-client privilege to "uncommunicated documents").

2015) (three-judge court)); *see Ohio A. Philip Randolph Inst.*, 2018 WL 6591622, at *5 (declining to apply protection to documents prepared because of a "clients' statutory duty to draft Ohio's [C]ongressional map"). The Expert Documents concern "redistricting legislation." OAG Rev. Log 2-200. The work-product doctrine does not apply. *See* Docs. Order 22-24.[4]

### C.  The Legislative Privilege Does Not Apply.

The legislative privilege does not apply to any of the Expert Documents because the privilege applies only to communications "between legislators or between legislators and their staff." *TitleMax of Tex., Inc. v. City of Dallas*, No. 21-cv-1040, 2022 WL 326566, at *5-6 (N.D. Tex. Feb. 3, 2022). The Expert Documents were maintained within Texas's executive branch, unseen by legislators or their staff. As a result, the legislative privilege does not protect the Expert Documents from disclosure.

The legislative privilege also does not apply to the Expert Documents because they are purely factual. As this Court has recognized, the privilege does not apply to "documents containing factually based information used in the decision-making process." Docs. Order 5 (citation omitted). So the privilege does not cover the statistical analyses and draft maps

---

[4] Because the Expert Documents were prepared to facilitate the legislative process, they were not primarily prepared in anticipation of litigation. As this Court previously recognized, "circuit precedent require[es] that the anticipation of litigation be the *primary* motivating purpose to qualify for work-product protection." *Id.* at 24 (citation omitted). Indeed, Texas has not shown that it issued a litigation hold before these documents were created, evincing that litigation was not reasonably anticipated at that time. *See id.* at 23; *Baricuatro v. Indus. Pers. & Mgmt. Servs., Inc.*, No. 11-cv-2777, 2013 WL 3367137, at *2 (E.D. La. July 5, 2013) (noting that whether litigation is simply "foreseeable" is immaterial (citation omitted)). The State acknowledges that the Expert Documents were created to "assist . . . Senator Huffman regarding redistricting legislation" and "used in furtherance of [her] legislative duties." OAG Rev. Log 2-200. "[E]ven if the party is aware that the document may also be useful in the event of litigation," the existence of another purpose negates work-product protection. *Soto v. Liberty Mut. Fire Ins. Co.*, No. 06-cv-819, 2007 WL 9710181, at *3 (W.D. Tex. May 23, 2007).

prepared by non-lawyers. *See* OAG Rev. Log 2-200; *see* Docs. Order 7 (ruling that the privilege does not cover "alternative maps considered during the redistricting process"); *see also League of Women Voters of Mich. v. Johnson*, No. 17-cv-14148, 2018 WL 2335805, at *7 (E.D. Mich. May 23, 2018).

Finally, even if legislative privilege were available—and it is not—it should be overcome. Legislative privilege is a "qualified" privilege, to be "strictly construed and accepted only to the limited extent that . . . excluding relevant evidence has a public good[.]" *Gilby v. Hughs*, 471 F. Supp. 3d 763, 766 (W.D. Tex. 2020) (citation omitted); *see* Docs. Order 4-5. The United States has alleged that the Congressional plan has a discriminatory purpose and result and the House plan has a discriminatory result. *See* U.S. Am. Compl. ¶¶ 197-99. And evidence of state officials' foreknowledge of a discriminatory impact is "an important starting point" to the analysis. *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977) (citation omitted); *see N.C. State Conf. of NAACP v. McCrory*, 831 F.3d 204, 227-30 (4th Cir. 2016). This Court has already determined that "the overall balance of factors weighs in favor of disclosure" of documents related to the Congressional plan. Docs. Order 12. The same is true here with respect to the House plan, as analysis demonstrating foreknowledge of a loss of minority electoral opportunities suggests that public rationales are tenuous, a factor considered as part of the "totality of the circumstances" analysis applicable to discriminatory results claims. *See, e.g.*, *LULAC v. Perry*, 548 U.S. 399, 441 (2006); *see also Nevett v. Sides*, 571 F.2d 209, 224 (5th Cir. 1978). This Court's analysis concerning evidence of intent relevant to the Congressional plan applies as well to tenuousness evidence relevant to the House plan.

Thus, the typical balancing test weighs in favor of disclosure: the evidence is relevant and unavailable from other sources, the litigation is serious and implicates unlawful conduct by

government actors, and disclosure is unlikely to have a chilling effect on legislative officials who were rarely involved with the challenged documents in the first place. *See Perez v. Perry*, No. 11-cv-360, 2014 WL 106927, at *2 (W.D. Tex. Jan. 8, 2014) (three-judge court); Docs. Order 8-12. Therefore, legislative privilege should yield with respect to the Expert Documents involving the Congressional or House plans.

## II. Texas's Revised Privilege Log Does Not Establish That the Interbranch Documents Are Privileged or Protected.

The State has failed to substantiate the privileges and protections it asserts over the Interbranch Documents. "[P]rivilege may not be tossed as a blanket over an undifferentiated group of documents" and must instead "be specifically asserted with respect to particular documents." *El Paso Co.*, 682 F.2d at 539. Failure "to particularize its assertion of . . . privilege and prove its case with respect to any specific document" invalidates the State's privilege claims. *Id.* at 540. A log must allow the opposing party to test privilege claims and "discover the scope of the privilege." *Steward ex rel. Minor v. Smith*, No. 10-cv-1025, 2018 WL 11361754, at *3 (W.D. Tex. July 31, 2018). "[C]onclusory assertions of privilege do not satisfy a claimant's burden." *In re Royce Homes, LP*, 449 B.R. 709, 726 (Bankr. S.D. Tex. 2011).

Here, Texas's revised log repeats conclusory and boilerplate language. The State merely describes most documents as "containing legal advice," "requesting legal advice," "offering legal advice," or "facilitating the rendition of legal advice." OAG Rev. Log 1-2, 200-03. This is inadequate. *See BDO USA*, 876 F.3d at 696 ("[S]imply describing a lawyer's advice as 'legal,' without more, is conclusory and insufficient to carry out the proponent's burden."). Particularly where communications concern talking points, unspecified analyses, and draft maps, it is likely that the entirety of the documents do not concern only efforts to secure legal advice and that redactions of any legal advice are possible. *See* OAG Rev. Log 200-03 (Documents 799-810);

9

*see also* OOG Order 10-11; Docs. Order 16.  Communications between non-lawyers concerning factual, statistical analyses is similarly unlikely to fall within the privilege, boilerplate assertions notwithstanding.  *See* OAG Rev. Log at 203 (Documents 811-812).

Neither do the work-product doctrine or legislative privilege block disclosure of the Interbranch Documents.  As with the Expert Documents, the Interbranch Documents concern a legislative process, and boilerplate assertions that they were "prepared in anticipation of litigation" cannot establish work-product protections, particularly when the ostensible client, Senator Huffman, is immune from suit.  *Id.* at 1-2, 200-03; *see also* Section I.B, *supra*.  Moreover, by seeking legal counsel from an executive branch official—rather than legislative branch experts at the Texas Legislative Council, attorneys on her staff, or private counsel— Senator Huffman waived legislative privilege with respect to the Interbranch Documents.  *See Gilby*, 471 F. Supp. 3d at 768 (declining to extend legislative privilege to cover "input about pending legislation from the [e]xecutive [b]ranch"); *La Unión del Pueblo Entero v. Abbott*, No. 21-cv-844, 2022 WL 1667687, at *4 (W.D. Tex. May 25, 2022) (same), *appeal pending*, No. 22-50435 (5th Cir. argued Aug. 2, 2022).  Therefore, the work-product doctrine and legislative privilege do not protect the Interbranch Documents from disclosure.

## CONCLUSION

For these reasons, the United States respectfully requests that the Court grant its motion, enforce its May 16 order compelling Texas to produce responsive OAG documents, and order Texas to (1) produce the Expert Documents (Documents 6-798) to the United States and (2) provide the Interbranch Documents (Documents 1-5 and 799-812) to the Court for *in camera* review.  A proposed order is attached hereto.

Dated: August 10, 2022

JOHNATHAN SMITH
Acting Principal Deputy Assistant Attorney General
Civil Rights Division

REBECCA B. BOND
Acting Deputy Assistant Attorney General
Civil Rights Division

*/s/ Jaywin Singh Malhi*
T. CHRISTIAN HERREN, JR.
TIMOTHY F. MELLETT
DANIEL J. FREEMAN
JANIE ALLISON (JAYE) SITTON
MICHELLE RUPP
JACKI L. ANDERSON
JASMIN LOTT
HOLLY F.B. BERLIN
JAYWIN SINGH MALHI
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530
(800) 253-3931
jaywin.malhi@usdoj.gov

**CERTIFICATE OF CONFERRAL**

      I hereby certify that, on August 8, 2022, counsel for the United States met and conferred with counsel for the State of Texas concerning the subject of this motion. Counsel for the State of Texas opposed the relief sought.

      */s/ Jaywin Singh Malhi*
Jaywin Singh Malhi
Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave, NW
Washington, DC 20530
(800) 253-3931
jaywin.malhi@usdoj.gov

## **CERTIFICATE OF SERVICE**

   I hereby certify that, on August 10, 2022, I electronically filed the foregoing under seal with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to counsel of record.

                    */s/ Daniel J. Freeman*
                    Daniel J. Freeman
                    Voting Section
                    Civil Rights Division
                    U.S. Department of Justice
                    950 Pennsylvania Ave, NW
                    Washington, DC 20530
                    (800) 253-3931
                    daniel.freeman@usdoj.gov