UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **LEAGUE OF UNITED LATIN AMERICAN CITIZENS,** *et al.*, | § § § § | |
| *Plaintiffs*, | § § | |
| **EDDIE BERNICE JOHNSON,** *et al.*, | § § § | EP-21-CV-00259-DCG-JES-JVB [Lead Case] |
| *Plaintiff-Intervenors*, | § § | & |
| v. | § § | All Consolidated Cases |
| **GREG ABBOTT,** *in his official capacity as Governor of the State of Texas*, *et al.*, | § § § § | |
| *Defendants*. | § § | |

### ORDER

The United States moves to compel Thomas Bryan and Eric Wienckowski ("Respondents") to comply with non-party subpoenas. Mot. Compel Wienckowski, ECF No. 384; Mot. Compel Bryan, ECF No. 407; *see also* Reply, ECF No. 411. Respondents are opposed. Resp., ECF No. 390. For the reasons that follow, the Court GRANTS the motions in part and ORDERS Respondents to produce documents and/or a privilege log to the United States within seven days of this Order.

### I. BACKGROUND

Respondents' relationship to this litigation starts in the Texas House of Representatives. Texas Representative Todd Hunter hired a law firm, Butler Snow LLP, to assist in redistricting matters.[1] Field Decl., Resp. Ex. 2, ECF No. 390-2 ¶ 2. Butler Snow hired Bryan, who is an

---

[1] It appears that the formal engagement was through the Texas Legislative Council. Resp. Ex. 2A (Contract Addendum).

- 1 -

expert demographer. Bryan Decl., Resp. Ex. 1, ECF No. 390-1 ¶¶ 1–2, 5. Bryan, in turn, hired Wienckowski. *Id.* ¶ 4.

Butler Snow hired Bryan to work on all four of the maps subject to this litigation. *Id.* ¶ 2–3; Bryan Engagement Letter, Resp. Ex. 1A. Bryan's services were technical:

> We are retaining you as a consulting expert to provide advice and consultation to our firm and our client as needed in state legislative, board of education[,] congressional reapportionment[,] and redistricting matters in the State of Texas, including but not limited to: (1) analysis, interpretation and application of Census data and advice on all data related issues; (2) preparation of benchmark plan and modeling to determine areas of state where most likely change to occur [sic]; (3) data set development for preparing redistricting plans; (4) preparation of draft plans; (5) analysis of draft plans submitted by others; (6) analysis of compliance with traditional redistricting criteria; (7) analysis of the traditional redistricting criterion of compactness, run compactness scores and advice on same; [(8)] any other demographic related issue(s) directed by us.

Bryan Engagement Letter at 1. Because Bryan hired Wienckowski for assistance, his duties were the same or similar. *See, e.g.*, Obj. Subpoena, Resp. Ex. 4, ECF No. 390-4, at 16 ("Mr. Wienckowski is a consulting-only expert who was hired by Butler Snow LLP's consulting-only expert to assist Butler Snow LLP . . . .").

On May 3, 2022, the United States subpoenaed Thomas Bryan for documents in the Eastern District of Virginia. Bryan Subpoena, Resp. Ex. 3, ECF No. 390-3, at 2. The United States subpoenaed Eric Wienckowski on the same day in the Southern District of New York. Wienckowski Subpoena, Resp. Ex. 3, ECF No. 390-3, at 14. Respondents served their objections and responses to the subpoenas on May 17, 2022. Obj. Subpoena at 2–13 (Bryan); *id.* at 14–25 (Wienckowski). Respondents made broad privilege claims and asserted that they would not produce any documents the United States had requested because all of the documents are subject to numerous, overlapping privileges. *See generally id.* at 2–13, 14–25. The deadline to produce documents came and went on June 2, 2022. U.S. Substitute Mem. L. Compel Wienckowski ("U.S. Wienckowski Mem."), ECF No. 392, at 2; U.S. Mem. Supp. Mot. Compel

Bryan ("U.S. Bryan Mem."), ECF No. 408, at 2.  Neither Bryan nor Wienckowski produced a privilege log.  U.S. Wienckowski Mem. at 2; U.S. Bryan Mem. at 2.

On June 14, 2022, the United States filed a motion to compel Bryan's compliance with its subpoena in the Eastern District of Virginia.  *United States v. Bryan*, No. 3:22-mc-00007-MHL, ECF No. 1 (E.D. Va. 2022).  The next day, the United States filed a motion to compel Wienckowski's compliance with its subpoena in the Southern District of New York.  *United States v. Wienckowski*, No. 7:22-mc-00164-PMH, ECF No. 8 (S.D.N.Y. 2022).  The Southern District of New York transferred Wienckowski's case to the Western District of Texas on June 24, 2022.  *Wienckowski*, No. 7:22-mc-00164-PMH, ECF No. 15.  The Eastern District of Virginia transferred Bryan's case to this Court on July 5, 2022.  *Bryan*, No. 3:22-mc-00007-MHL, ECF No. 8.  This Court consolidated both cases with the above-captioned action.  ECF Nos. 405 (Wienckowski), 406 (Bryan).

## II.   DISCUSSION

Federal Rule of Civil Procedure 45 authorizes parties to obtain discovery from a non-party by issuing a subpoena.  *See, e.g.*, *Leonard v. Martin*, 38 F.4th 481, 486–90 (5th Cir. 2022) (characterizing Rule 45 subpoenas as a discovery tool); *Kendrick v. Heckler*, 778 F.2d 253, 254–58 (5th Cir. 1985) (same).  Federal Rule of Civil Procedure 26(b)'s limitations on the scope of discovery apply to discovery under Rule 45.  *Kendrick*, 778 F.2d at 257 ("[A] Rule 45 subpoena duces tecum . . . may go to matters within the scope of examination provided by Rule 26(b)." (quotation omitted)); *MetroPCS v. Thomas*, 327 F.R.D. 600, 609–10 (N.D. Tex. 2018).

Discovery rules are permissive.  *See Hickman v. Taylor*, 329 U.S. 495, 507 (1947).  Under Rule 26(b), discovery is permitted "regarding any nonprivileged matter that is relevant to

any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b).  In other words, two of the principal limitations on discovery are relevancy and privilege.

### A. Relevancy

Relevant information "encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  "A discovery request is relevant when the request seeks admissible evidence or 'is reasonably calculated to lead to the discovery of admissible evidence.'" *Crosby v. La. Health Servs. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011) (quoting *Wiwa v. Royal Dutch Petrol. Co.*, 392 F.3d 812, 820 (5th Cir. 2004)).  Said another way, "[u]nless it is clear that the information sought can have no possible bearing on the claim or defense of a party, the request for discovery should be allowed."[2] *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005).

Respondents challenge the relevancy of the United States' document requests.  Specifically, Respondents say that (1) documents dated after the enactment of redistricting legislation are irrelevant; (2) documents dated before the release of Census data are irrelevant; and (3) three of the United States' document requests that mention "all documents" "necessarily call for irrelevant documents."  Resp. at 4.  The Court will address each in turn.

Generally, documents dated after the enactment of redistricting legislation are irrelevant. *Perez v. Perry*, No. SA-11-CV-360-OLG-JES-XR, 2014 WL 3359324, at *2 (W.D. Tex. July 9, 2014).  But, as the prior panel to hear Texas redistricting challenges said, "where post-enactment documents specifically refer back to the pre-enactment process, those communications may be relevant and must be disclosed."  *Id.*  We agree and think this approach "is reasonably calculated

---

[2] There are, of course, other discovery exceptions that may shield the information, such as a privilege.  *See generally* Fed. R. Civ. P. 26(b).

to lead to the discovery of admissible evidence." *Crosby*, 647 F.3d at 262 (quotation omitted). While Respondents are generally not required to produce documents created after October 25, 2021, Respondents shall produce responsive documents dated after October 25, 2021, if they specifically refer back to the pre-enactment process.[3]

Documents dated before the U.S. Census Bureau released Census data may be relevant and Respondents must produce them.[4] *See Perez*, 2014 WL 3359324, at *2 ("[Third party] must produce all communication in the[] [described] categories that occurred prior to the enactment of the 2011 plans on July 18, 2011."). As the United States points out, the Texas Legislature worked on redistricting well before the release of Census data. *See, e.g.*, Reply at 1 n.1; Tex. H. Comm. on Redistricting, *Notice of Public Hearing* (Feb. 28, 2019), https://perma.cc/A2W8-H853. Requests for documents dated prior to the release of Census data are "reasonably calculated to lead to the discovery of admissible evidence." *Crosby*, 647 F.3d at 262 (quotation omitted).

Finally, Respondents protest that three of the United States' document requests are overbroad and will necessarily elicit irrelevant documents.[5] Resp. at 4. The burden is on Respondents to "show specifically" how the United States' requests are overbroad. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (quotation omitted); *Heller v. City of Dallas*, 303 F.R.D. 466, 483–84 (N.D. Tex. 2014) ("[B]oilerplate or unsupported objections . . . are . . . improper and ineffective."). Respondents fail to meet their burden. They provide a single sentence for the Court to work with: "[T]he United States'

---

[3] The requirement to produce is subject to any privileges or other discovery exceptions.

[4] The requirement to produce is subject to any privileges or other discovery exceptions.

[5] Those document requests are numbers six, seven, and eight. Resp. at 4; *see also* Obj. Subpoena at 10–11, 22–24.

overbroad requests for 'all documents' relating to the redistricting process in Requests 6, 7, and 8 necessarily call for irrelevant documents." Resp. at 4. This is a text-book boilerplate objection.[6] *See, e.g.*, *Heller*, 303 F.R.D. at 490–91 (holding party's "unduly burdensome and overbroad" objections "to almost every discovery request" "were simply boilerplate objections"). The Court thus overrules Respondents overbreadth objections. *See id.* at 483–84. Respondents shall produce documents responsive to the United States' requests.[7]

### B. Privilege

#### 1. Failure to Produce a Privilege Log

Under Rule 45, the proponent of a privilege must "(i) expressly make the claim [to privilege]; and (ii) describe the nature of the withheld documents . . . in a manner that . . . will enable the parties to assess the claim." FED. R. CIV. P. 45(e)(2)(A). Rule 26(b)(5)(A) imposes the same requirement. FED. R. CIV. P. 26(b)(5)(A). To comply with this requirement, litigants quite often produce a privilege log. *See, e.g.*, CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2016.1 (3d ed.) (describing privilege log practice as "broad[]"); *Comcast Cable Commc'ns, LLC v. BT Ams., Inc.*, 3:12-CV-1712-M, 2013 WL 12129283, at *1 (N.D. Tex. July 10, 2013) ("A privilege log *must* be produced for any

---

[6] While it's true that the United States wrote the words "all documents," its requests are narrower than Respondents suggest. For example, the United States requests:

> All documents relating to payment for services; agreements of representation, consultation, employment, services, confidentiality, or common interest; or any other type of contract relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives that include any of the following individuals or entities: Adam Foltz, Chris Gober, The Gober Group, any consultant, any political operative, any expert, the Office of the Texas Attorney General, any other law firm, any other attorney, any other vendor, or any other person or entity.

Obj. Subpoena at 24 (Request No. 8).

[7] The requirement to produce is subject to any privileges or other discovery exceptions.

- 6 -

documents, communications, or other materials withheld from production on the grounds of attorney-client, work product, or other privilege or immunity." (emphasis added)). Whether a privilege log must be in a certain form (like a chart or index) is up for debate, but what is clear is that an assertion of privilege must be detailed enough so that parties can properly assess the claim. *EEOC v. BDO USA, LLP*, 876 F.3d 690, 697 (5th Cir. 2017) ("[A] privilege log's description of each document and its contents must provide sufficient information to permit courts and other parties to test the merits of the privilege claim." (quotation omitted)).

Take attorney-client privilege as an example. Under federal common law, the party invoking attorney-client privilege "must prove: (1) that he made a *confidential* communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding." *Id.* at 695 (quoting *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997)). The proponent has the burden of "demonstrat[ing] how *each* document satisfies all three elements of the privilege." *SEC v. Microtune, Inc.*, 258 F.R.D. 310, 315 (N.D. Tex. 2009) (emphasis added); *see also Hodges, Grant & Kaufmann v. IRS*, 768 F.2d 719, 721 (5th Cir. 1985) (remanding for determination of "whether *the first document* is shielded by the attorney-client privilege (emphasis added)); *United States v. El Paso Co.*, 682 F.2d 530, 541–42 (5th Cir. 1982) (holding attorney-client privilege waived where "[defendant] failed to *particularize* its assertion of the privilege and prove its case with respect to any *specific* document" (emphasis added)). That is, a party must assert privilege claims with a level of granularity that allows the other parties and the court to determine the exact document(s) for which the party asserts the privilege.

Privilege claims must be detailed. "[S]imply describing a [document] as 'legal,' without more, is conclusory and insufficient to carry out the proponent's burden of establishing attorney-

client privilege." *BDO USA*, 876 F.3d at 696. Moreover, a claim that attorneys worked on or reviewed documents does not alone establish attorney-client privilege. *El Paso Co.*, 682 F.2d at 541 ("A general claim that the tax department funnels tax work through its attorneys will not do."). The Fifth Circuit has been clear about its disapproval of blanket claims of privilege: "Such assertions disable the court and the adversary party from testing the merits of the claim of privilege." *Id.* They are "simply inadequate." *Id.*

This makes sense when one considers that opposing parties and courts have to determine whether *specific* documents are subject to a privilege. Continuing with the attorney-client privilege example: A communication must be for the *primary* purpose of *legal* advice for attorney-client privilege to attach. *BDO USA*, 876 F.3d at 695. So documents that are instead "concerning 'advice on political, strategic or policy issues . . . [are] not [] shielded from disclosure by the attorney-client privilege.'" *Evans v. City of Chicago*, 231 F.R.D. 302, 312 (N.D. Ill. 2005) (quoting *In Re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998)). So too "[f]acts within the client's knowledge are not protected by the attorney-client privilege, 'even if the client learned those facts through communications with counsel.'" *LUPE v. Abbott*, SA-21-CV-00844-XR, 2022 WL 1667687, at *7 (W.D. Tex. May 25, 2022) (quoting *Thurmond v. Compaq Comput. Corp.*, 198 F.R.D. 475, 483 (E.D. Tex. 2000)); *see also Ohio A. Philip Randolph Inst. v. Smith*, No. 1:18cv357, 2018 WL 6591622, at *3 (S.D. Ohio Dec. 15, 2018) (ordering production of "facts, data, and maps" over assertions of attorney-client privilege). Under Respondents' blanket assertion of privilege, the Court cannot determine whether the documents they are withholding fall into any of these categories.

The United States argues that Respondents waived all claims to privilege. U.S. Bryan Mem. at 5; U.S. Wienckowski Mem. at 4–5. It's true that Respondents' claims to privilege are

strikingly broad.  *Every* document is subject to privilege?  *E.g.*, Obj. Subpoena at 2–13, 14–25; Resp. at 5 ("[T]here is no document in Respondents' possession that is not privileged.").  No one can be sure because Respondents have failed to provide sufficient detail to allow the Court to assess their claims.  Respondents have not "prove[n] [their] case with respect to any specific document."  *El Paso Co.*, 682 F.2d at 541.

Even still, Respondents have not yet waived their privilege claims.  The United States has not argued that Respondents have "[c]ontinually fail[ed] to adhere to Rule 26's prescriptions." *BDO USA*, 876 F.3d at 697; U.S. Bryan Mem. at 5; U.S. Wienckowski Mem. at 4–5.

The Court ORDERS Respondents to produce any documents not subject to privilege and produce a compliant privilege log within seven days of this Order.  If Respondents assert privilege, they must have a *good faith basis* for doing so.

### 2. Work Product Doctrine

Respondents contend that all documents in their possession are covered by the work product doctrine.  Resp. at 9.  Respondents *repeatedly* assert that their work was done in anticipation of litigation.  *Id.* at 2, 9–11.  In support, Respondents point to Bryan's engagement letter: "The nature and history of redrawing political boundaries at the statewide level is such that litigation may result in the process and thus we are retaining you in anticipation of litigation."  *Id.* at 9; Bryan Engagement Letter at 1.

The work product doctrine only "applies to documents 'prepared in anticipation of litigation.'"  *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000) (quoting FED. R. CIV. P. 26(b)(3)).  Nonetheless, documents created in the ordinary course of drafting legislation—including redistricting legislation—are not covered by the work product doctrine, even when "the Legislature may have reasonably believed that litigation would result from its

redistricting efforts." *Baldus v. Brennan*, Nos. 11-CV-562 JPS-DPW-RMD, 11-CV-1011 JPS-DPW-RMD, 2011 WL 6385645, at *2 (E.D. Wis. Dec. 20, 2011) (three-judge court); *Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 348 (E.D. Va. 2015).[8] That is "because the legislature could *always* have a reasonable belief that *any* of its enactments would result in litigation." *Bethune-Hill*, 114 F. Supp. 3d at 348 (cleaned up).

The legislation exception applies here. The work product doctrine is inapplicable because Respondents created the documents the United States seeks while assisting the Texas Legislature with redistricting legislation. *See Bethune-Hill*, 114 F. Supp. 3d at 348; Bryan Decl. ¶ 2 ("I was retained by the law firm Butler Snow LLP to provide advice and consultation to the firm as a consultant so that it could advise its clients—the Chairman and his staff of the House Redistricting Committee . . . —in state legislative, board of education and congressional reapportionment and redistricting matters in the State of Texas.").

That rule cannot be overcome by the engagement letter. For obvious reasons, the fact that Bryan's engagement letter with Butler Snow says that he was "retain[ed] [] in anticipation of litigation," Bryan Engagement Letter at 1, does not *automatically* render all documents subject to the work product doctrine, *see Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 620 (7th Cir. 2010) ("[A]n engagement letter cannot reclassify nonprivileged communications . . . ."). Nor does Bryan's declaration of the same fact. Bryan Decl. ¶ 3. Nor do Respondents' repeated blanket assertions.

The Court GRANTS the United States' motions to compel insofar as Respondents assert that the work product doctrine shields their responsive documents from discovery.

---

[8] *See also El Paso Co.*, 682 F.2d at 542 (work product doctrine does not apply to documents created "in the ordinary course of business").

### 3. *Trial Preparation Exception*

Generally, a party cannot obtain discovery regarding "facts known or opinions held by an expert who has been retained or specifically employed by another party in anticipation of litigation or to prepare for trial." FED. R. CIV. P. 26(b)(4)(D). As an initial matter, it's unclear to the Court whether Respondents qualify as experts within the meaning of Rule 26(b)(4)(D) because they were hired to work on redistricting legislation well before litigation ensued. Neither the United States nor Respondents address this point.

In any event, by its plain terms, the trial preparation exception applies only to experts hired by a party to the case. *Id.* (rule applicable to expert "employed by *another party*" (emphasis added)); *Durflinger v. Artiles*, 727 F.2d 888, 891 (10th Cir. 1984) ("The rule is designed to promote fairness by precluding unreasonable access to *an opposing party*'s diligent trial preparation." (emphasis added)); *Ark. River Power Auth. v. The Babcock & Wilcox Co.*, 310 F.R.D. 492, 497–98 (D. Colo. 2015) (noting that neither the proponent nor the court "found[] any case in which a non-party has been permitted to invoke Rule 26(b)(4)(D)"). Respondents are not parties to this case.

Respondents' attempt to shoehorn themselves into party status is unavailing. Respondents insist that they created material for Representative Hunter who is a party to this case by virtue of being a representative of Defendant State of Texas. Resp. at 12. Because of that relationship, Respondents argue, their documents are covered by Rule 26(b)(4)(D). *Id.* The problem Respondents have is that Representative Hunter is a non-party. As we held in a prior order, "[f]or the purposes of party discovery in this redistricting litigation, 'the State of Texas' is made up of state executive agencies or officials . . . ." *LULAC v. Abbott*, EP-21-CV-00259-DCG-JES-JVB, 2022 WL 1540589, at *3 (W.D. Tex. May 16, 2022). Thus, Rule 26(b)(4)(D)

does not protect Respondents' documents.  The Court **GRANTS** the United States' motions to compel insofar as Respondents assert that Rule 26(b)(4)(D) shields their responsive documents from discovery.

### III.   CONCLUSION

The Court **GRANTS IN PART** the United States' "Motion to Compel Eric Wienckowski's Compliance with Non-Party Subpoena" (ECF No. 384) and "Motion to Compel [Thomas Bryan's] Compliance with Subpoena" (ECF No. 407).  The Court grants the motions insofar as Eric Wienckowski and Thomas Bryan assert that the work product doctrine and Rule 26(b)(4)(D) of the Federal Rules of Civil Procedure apply to their responsive documents.

The Court **OVERRULES** Respondents' relevancy objections except to the extent the United States seeks documents created after October 25, 2021 that do not specifically refer back to the pre-enactment process.

The Court **ORDERS** Respondents to produce any documents not subject to privilege and produce a compliant privilege log within **seven days** of this Order.  Respondents must have a *good faith basis* for claiming a privilege, lest the claim be waived.

The United States **MAY RENEW** its motions to compel after Respondents produce documents and/or a compliant privilege log or otherwise fail to comply with this Order.

**So ORDERED and SIGNED this 12th day of August 2022.**

_____
DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE

*And on behalf of:*

| | | |
|---|---|---|
| **Jerry E. Smith** | | **Jeffrey V. Brown** |
| **United States Circuit Judge** | *-and-* | **United States District Judge** |
| **U.S. Court of Appeals, Fifth Circuit** | | **Southern District of Texas** |