IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>GREG ABBOTT, in his official capacity as Governor of the State of Texas, *et al.*,<br><br>*Defendants*. | CIVIL ACTION NO.<br>3:21-cv-00259-DCG-JES-JVB<br>[Consolidated Action:  Lead Case] |

**LULAC PLAINTIFFS' MOTION TO COMPEL
THIRD-PARTY SUBPOENAS *DUCES TECUM* TO LEGISLATORS**

LULAC Plaintiffs brought suit to challenge the redistricting plans recently enacted by the Texas Legislature, alleging violations of the Voting Rights Act and the United States Constitution. LULAC Plaintiffs allege, among other things, that the Texas Legislature enacted the redistricting plans with the intent to discriminate against Latinos, and further assert that the totality of circumstances shows that those minorities have less opportunity to participate in the political process and to elect representatives of their choice.  To that end, LULAC Plaintiffs served document subpoenas to the following individuals:  Representative Mike Schofield, Senator Bryan Hughes, Senator Paul Bettencourt, Senator Donna Campbell, Senator Jane Nelson, Senator Brian Birdwell, Senator Charles Perry, and Senator Robert Nichols (together, the "Legislators").

Based on sweeping claims of the legislative privilege, the Legislators withheld a number of responsive documents.  Broadly, the Legislators inappropriately (1) advance an overbroad interpretation of the legislative privilege, withholding even communications with third parties; (2)

1

assert the privilege over fact-based information; and (3) assert the legislative privilege over communications that occurred after the enactment of the challenged redistricting plans. In light of the parties' disagreement regarding the scope and applicability of the legislative privilege, LULAC Plaintiffs respectfully request that the Court compel disclosure of the documents listed in Exhibit A.

## I.   BACKGROUND

On April 26, 2022, LULAC Plaintiffs served document subpoenas on the Legislators, seeking documents including redistricting proposals, legislative communications, and data used during the redistricting process. Ex. B. On May 26, 2022, counsel for the Legislators produced some documents to LULAC Plaintiffs in response to those subpoenas but did not timely produce a privilege log.

On June 28, 2022, counsel LULAC Plaintiffs met and conferred by email with counsel for the Legislators, requesting the privilege log in connection with the Legislators' production. Ex. C. On July 1, 2022, the Legislators produced a partial privilege log—which contained 20 documents from only Senator Perry—and indicated they would supplement the privilege log at a later date. Exs. D and E (partial privilege log).

On July 10, 2022, counsel for LULAC Plaintiffs emailed counsel for the Legislators requesting an update on the status of the supplemental privilege log. Ex. F. On July 15, 2022, counsel for the Legislators served a supplemental privilege log (the "Privilege Log"), which listed documents for all Legislators. Exs. G (email) and H (the Privilege Log).

On August 9, 2022, counsel for LULAC Plaintiffs met and conferred by email with counsel for the Legislators, noting which documents they sought and seeking additional information to assess further the Legislators' assertions of the legislative privilege over some of the documents

listed in the Privilege Log.  Ex. I.  On August 12, 2022, counsel for the Legislators responded to LULAC Plaintiffs' letter, indicating, among other things, that they would not disclose any of the documents listed in the Privilege Log.  Ex. J.

In light of the disagreement over whether the requested documents must be disclosed, LULAC Plaintiffs now seek to compel the production of several documents the Legislators have improperly withheld.  Exhibit A lists the documents LULAC Plaintiffs seek in the instant motion.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 45(d)(2)(B)(i) allows the party that served a subpoena to "move the court . . . for an order compelling production."  In turn, Rule 45(e)(2)(A) mandates that "a person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:  (i) expressly make the claim; and (ii) describe the nature of the withheld documents . . . in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."

"It is well settled that the party asserting the privilege has the burden of establishing its applicability."  *Perez v. Perry*, No. SA-11-CV-360-OLG-JES-XR, 2014 WL 3495414, at *2 (W.D. Tex. July 11, 2014) (citing *Hodges, Grant & Kaufman v. United States*, 768 F.2d 719, 721 (5th Cir. 1985)).  Conclusory assertions are "insufficient to carry out the proponent's burden of establishing" privilege.  *E.E.O.C. v. BDO USA, L.L.P.*, 876 F.3d 690, 696 (5th Cir. 2017).

When a motion to compel "is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A).

3

### III.     ARGUMENT

#### A. The Documents are Relevant to LULAC Plaintiffs' Claims.

The documents sought by LULAC Plaintiffs are relevant and vital to Plaintiffs' claims under the federal Voting Rights Act and the U.S. Constitution. Draft redistricting plans, the data used in drafting those plans, Legislators' communications (especially with map-drawers), and other legislative materials bear directly on whether "invidious discriminatory purpose was a motivating factor" in redistricting. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977). Such legislative materials also bear on whether "the policy underlying the State's . . . use of the contested practice or structure is tenuous" under the discriminatory results test for the challenged redistricting plans. *Thornburg v. Gingles*, 478 U.S. 30, 45 (1986) (citation omitted). Thus, as other courts in this Circuit have concluded in similar circumstances, these documents certainly bear on the evaluation of whether official actors are motivated by a discriminatory purpose, the effect of challenged practices, and the extent to which race played a role in challenged decisions. *See LUPE*, 2022 WL 1667687, at *6; *see also Gilby*, 471 F. Supp. 3d at 766; *Veasey v. Perry*, No. 2:13-CV-193, 2014 WL 1340077, at *2 (S.D. Tex. Apr. 3, 2014).

#### B. The Legislators May Not Withhold the Challenged Documents Based on the Legislative Privilege.[1]

*1. All Documents Shared Between the Legislative Branch and any Third Parties Must be Disclosed.*

The Legislators have waived any claim to the legislative privilege with respect to communications with third parties. "To the extent that legislators or legislative staff communicated with any outsider (*e.g.*, non-legislators, non-legislative staff), any legislative

---

[1] At various points, Defendants have asserted that Texas Government Code § 323.017 governs the scope of the legislative privilege. For the reasons already discussed in LULAC Plaintiffs' prior motions to compel, Texas Government Code § 323.017 is inapplicable, as federal common law—not state law—governs the scope of the privilege here. *See, e.g.*, Dkt. 447 at 4 n.2.

4

privilege is waived as to the contents of those specific communications." Dkt. 526 at 2 n.3 (cleaned up) (quoting *Gilby v. Hughs*, 471 F. Supp. 3d 763, 767 (W.D. Tex. 2020)); *see also Perez*, 2014 WL 106927, at *2; *Favors v. Cuomo*, 285 F.R.D. 187, 212 (E.D.N.Y. 2012) (noting that "communications with 'knowledgeable outsiders' . . . fall outside the privilege").

The Legislators have failed to meet their burden to show that the legislative privilege applies to documents shared with Brad Shields and Bryan Dunaway. Ex. K. In their August 9, 2022 letter to the Legislators, LULAC Plaintiffs noted that the Privilege Log "lists individuals who appear not to have been legislators or legislative staff at the time certain documents were created or shared"—including the documents in Exhibit K—and sought clarification from the Legislators on "what time period, if any," either Mr. Shields or Mr. Dunaway "was an employee of the Texas Legislature." *See* Ex. I at 2. In response, the Legislators stated that "Brad Shields and Bryan Dunaway are consultants, who have been employed at various times by Representative Schofield and Senator Bettencourt, respectively," but failed to specify whether either individual worked for the legislative branch at the time the documents were shared. *See* Ex. J at 1. Because the Legislators have failed to provide adequate information to support the assertion of legislative privilege, the documents in Exhibit K must be disclosed. *See LUPE*, 2022 WL 1667687, at *2.

> 2. *The Legislative Privilege Does Not Apply to Documents Related to Publicly Available Information.*

Similarly, the legislative privilege does not protect documents related to publicly available information. Ex. L. Such information necessarily reflects communications that are not *internal* exchanges potentially covered by the privilege, as that information has been shared with individuals outside of the Legislature. *See Perez*, 2014 WL 106927, at *2; *see also Bethune-Hill v. Virginia State Bd. of Elections*, 114 F. Supp. 3d 323, 343 (E.D. Va. 2015) (requiring disclosure of any "communications shared with, or received from, any individual or organization outside the

5

employ of the legislature"); *Favors v. Cuomo*, 285 F.R.D. at 212 ("The law is clear that a legislator waives his or her legislative privilege when the legislator publicly reveals documents related to internal deliberations."); *Favors v. Cuomo*, No. 11-CV-5632 DLI RR, 2015 WL 7075960, at *7 (E.D.N.Y. Feb. 8, 2015) (noting that the legislative privilege does not extend to public statements).

Exhibit L lists two documents that are "[t]yped notes from senate redistricting committee hearing." The information contained in these documents necessarily reflects information that is publicly available, as Senate redistricting committee hearings are open to the public. Because these documents relate to information that is publicly available, they do not reflect internal exchanges within the Texas Legislature and therefore cannot be withheld based on the legislative privilege. .

> 3. *The Legislative Privilege Does Not Apply to Documents Containing Fact-Based Information.*

The Privilege Log lists several documents that contain fact-based information that must be disclosed. The legislative privilege "does not apply . . . to 'documents containing factually based information used in the decision-making process or disseminated to legislators or committees, such as committee reports and minutes of meetings,' or 'the materials and information available [to lawmakers] at the time a decision was made." *LUPE*, 2022 WL 1667687, at *2 (quoting *Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, No. 11 C 5065, 2011 WL 4837508, at *9 (N.D. Ill. Oct. 11, 2011)). The Privilege Log lists several such documents, such as calendar entries (Exhibit M), data used to draw maps (Exhibit N), and alternate maps (Exhibit O). Accordingly, those documents must be disclosed.

In addition, to the extent that other documents contain both fact-based information and privileged information, the fact-based information is not privileged. In their August 9, 2022 meet-and-confer letter, LULAC Plaintiffs requested clarification regarding whether documents

described as "internal notes" (Exhibit P) and "[c]onfidential communication[s]" (Exhibit Q) "contain underlying data or other fact-based information that is not subject to the legislative privilege, including data relating to redistricting legislation (including but not limited to demographic data, alternative maps, information on voting behavior, or data on election performance)." Ex. I at 2, 3.  In response, the Legislators asserted that "[a]dditional information" was "unnecessary and improper," and stated that "it is beyond debate that a legislator's personal notes regarding draft legislation are subject to legislative privilege." Ex. J at 2 (citing *LUPE*, 2022 WL 1667687, at \*6.).  However, to the extent that those "internal notes" and "[c]onfidential communication[s]" contain underlying data or other fact-based information that is not subject to the legislative privilege, the fact-based information must still be disclosed.[2] Exs. P and Q.

    4. *The Legislative Privilege Does not Apply to Documents Created or Communication that Occurred after the Enactment of the Challenged Redistricting Plans.*

The Legislators improperly seek to withhold documents and communications that post-date enactment of the challenged redistricting plans.[3]  *See* Ex. R.  As noted, the legislative privilege only "protects 'integral steps' in the legislative process and does not extend to commentary or analysis following the legislation's enactment." *Bethune-Hill Bd. of Elections*, 114 F. Supp. 3d

---

[2] Further, for the reasons described in Section III.C.5, *infra*, any information subject to the legislative privilege must still be disclosed under the *Perez* factors.  *See LUPE*, 2022 WL 1667687, at \*8 (holding that the legislative privilege must yield for internal notes and talking points after applying the *Perez* factors).

[3] Plan H2316, Plan S2168, and Plan E2106 were sent to the Governor on October 18, 2021, and Plan C2193 was sent to the Governor on October 19, 2021. *See* Texas Legislature Online, "Bill: SB 4, Legislative Session: 87(3)," available at https://capitol.texas.gov/BillLookup/History.aspx?LegSess=873&Bill=SB4 (last visited Aug. 15, 2022); Texas Legislature Online, "Bill: HB1, Legislative Session: 87(3)," available at https://capitol.texas.gov/BillLookup/History.aspx?LegSess=873&Bill=HB1 (last visited Aug. 15, 2022); Texas Legislature Online, "Bill: SB6, Legislative Session: 87(3)," available at https://capitol.texas.gov/BillLookup/History.aspx?LegSess=873&Bill=SB6 (last visited Aug. 15, 2022); Texas Legislature Online, "Bill: SB7, Legislative Session: 87(3)," available at https://capitol.texas.gov/BillLookup/History.aspx?LegSess=873&Bill=SB7 (last visited Aug. 15, 2022).

323, 343 (E.D. Va. 2015); *see also League of Women Voters of Mich. v. Johnson*, No. 17-14148, 2018 WL 2335805, at *6 (E.D. Mich. May 23, 2018) (requiring disclosure of "communications created after the date of enactment").

The documents included in Exhibit Q were created after the challenged redistricting plans were passed by the Texas Legislature and sent to the Governor. Under the Texas Constitution, once a bill has been "passed [by] both houses of the Legislature," that bill "shall be presented to the Governor for his approval." Tex. Const. art. IV, § 14. In other words, once sent to the Governor, the Legislature has no authority over the enactment of the legislation unless the Governor vetoes the legislation, and only then may vote to override the Governor's veto. *See id.* Any communications that occur after a bill has been sent to the Governor does not fall within the scope of the legislative privilege, as those communications do not reflect "integral steps" in the legislative process. *Bethune-Hill Bd. of Elections*, 114 F. Supp. 3d at 343. Any document relating to the Texas House, Texas Senate, and State Board of Education that was created after October 18, 2021, and any document relating to the congressional plan that was created after October 19, 2021, must be disclosed. Ex. R.[4]

> 5. *The Legislative Privilege Should Yield With Respect to Certain Documents.*

Even if applicable, in certain instances the legislative privilege should yield to the need for discovery here. To determine whether the privilege should yield, courts in this Circuit and elsewhere consider the following five factors: "(1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the seriousness of the litigation and issues

---

[4] Documents created on October 18, 2021 relating to the redistricting of the Texas House, Texas Senate, or State Board of Education, or documents created on October 19, 2021 relating to the congressional redistricting plan, would also fall outside the scope of the legislative privilege if they were created after those respective bills were sent to the Governor. However, no such document is at issue in the instant motion.

8

involved; (4) the role of the government in the litigation; and (5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *Perez*, 2014 WL 106927, at *2. Further, as the Court recently emphasized, the legislative privilege "must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." Dkt. 282 at 2 (quoting *Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Parish Gov't.*, 849 F.3d 615, 624 (5th. Cir. 2017)); *see also Perez*, 2014 WL 106927, at *2. For the same reasons articulated in LULAC Plaintiffs' July 18, 2022 Motion to Compel Third-Party Subpoenas *Duces Tecum*, the *Perez* factors strongly favor disclosure, and LULAC Plaintiffs incorporate by reference and re-urge here all such arguments. *See* Dkts. 447 at 8-10; *see also LUPE*, 2022 WL 1667687, at *6.

As noted above, the documents listed in Exhibit A are both relevant and vital to LULAC Plaintiffs' claims under the Voting Rights Act and the U.S. Constitution. *See supra*, Section III.A. Further, as discussed in LULAC Plaintiffs' prior motion to compel: the documents in Exhibit A are among the most probative evidence regarding the challenged litigation; this suit raises serious questions about whether the challenged plans comply with the Voting Rights Act and the U.S. Constitution; there is no question about the government's role in the litigation; and there is no possible chilling effect that can result from disclosure, *see* Dkt. 447 at 8-10. In any event, even if there were such an effect, courts have repeatedly found—particularly in the voting rights context— "that the need for accurate fact finding outweighs any chill to the legislature's deliberations." *LUPE*, 2022 WL 1667687, at *7; *see also Veasey*, 2014 WL 1340077, at *2; *Baldus v. Brennan*, No. 11-CV-562, 2011 WL 6122542, at *2 (E.D. Wis. Dec. 8, 2011) (concluding that the potential

9

"chilling effect" on the state legislature "is outweighed by the highly relevant and potentially unique nature of the evidence").

Moreover, the *Perez* factors especially favor disclosure where, as here, there is evidence that "pertains to, or 'reveals an awareness' of racial considerations employed in the districting process, sorting of voters according to race, or the impact of redistricting upon the ability of minority voters to elect a candidate of choice." See *Bethune-Hill*, 114 F. Supp. 3d at 344 (citing *Favors v. Cuomo*, No. 11-cv-5632, Dkt. 559 (E.D.N.Y. 2013)); *see also League of Women Voters*, 2018 WL 2335805, at *7; *see also LUPE*, 2022 WL 1667687, at *7. Accordingly, the legislative privilege should yield for all documents listed in Exhibit A for which the privilege does apply.

## IV. CONCLUSION

For the foregoing reasons, LULAC Plaintiffs respectfully request that the Court grant their motion to compel.

Dated: August 15, 2022

Respectfully submitted,

*/s/ Nina Perales*
Nina Perales
Fátima Menendez
Kenneth Parreno*
Julia Longoria
Mexican American Legal Defense and Educational Fund (MALDEF)
110 Broadway Street, Suite 300
San Antonio, TX 78205
(210) 224-5476
Fax: (210) 224-5382

*Admitted *pro hac vice*

*Counsel for LULAC Plaintiffs*

**CERTIFICATE OF CONFERENCE**

I hereby certify that, on June 28, 2022, August 9, 2022, August 12, 2022, and August 15, 2022, counsel for LULAC Plaintiffs conferred with counsel for the Legislators concerning the subject of the instant motion. Counsel for the Legislators stated that they opposed the relief sought.

/s/ Nina Perales
Nina Perales

### CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that she has electronically submitted a true and correct copy of the above and foregoing via the Court's electronic filing system on the 15th day of August 2022.

/s/ Nina Perales
Nina Perales