IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, | § § § § | |
| *Plaintiffs,* | § § | Case No. 3:21-cv-00259 |
| v. | § § | [Lead Case] |
| GREG ABBOTT, *et al.*, | § § § | |
| *Defendants.* | § § | |

**DEFENDANTS' OPPOSITION TO
THE UNITED STATES' MOTION TO ENFORCE ORDER COMPELLING THE
PRODUCTION OF OAG DOCUMENTS FROM THE STATE OF TEXAS**

**INTRODUCTION**

The United States has moved to compel privileged documents belonging to the Office of the Attorney General of Texas (OAG) that reflect, among others, core attorney–client privileged material. *See generally* ECF No. 527. The attorney–client privilege dates to the 16th century.[1] Writing 44 years ago in the *California Law Review*, Professor Geoffrey Hazard noted that the privilege has historically been recognized as "necessary to the lawyer's function as confidential counselor in law" to his client.[2] "There is no responsible opinion," he wrote, "suggesting that the privilege be completely abolished." But today, the motion to compel before the Court in effect seeks to do just that for OAG.

The OAG occupies a special position of trust and responsibility for the people of Texas. The Attorney General is constitutionally charged with "represent[ing] the State in all suits and pleas in the Supreme Court of the State in which the State may be party." TEX. CONST. art. IV, § 22. In that vital role, OAG serves as legal counsel to Texas governmental agencies and legislators upon request. And as counselors in law, OAG affords its clients the same ability to assert the attorney–client privilege as any other lawyer would. If those privileges are abrogated, OAG could not provide effective counsel.

In the last decade's redistricting, the three-judge panel found that by widely sharing analyses prepared for rendering legal advice to its client, OAG had waived attorney–client privilege. *See generally Texas v. United States*, 279 F.R.D. 24 (D.D.C. 2012), *vacated in part*, 279 F.R.D. 176 (D.D.C. 2012). In this decade's redistricting, mindful of that decision, OAG shared no materials prepared at attorney direction with anyone. In fact, it maintained the utmost confidentiality of materials prepared for rendering legal advice to its client. Despite those material differences, the United States now argues, in part, that the failure to transmit such materials to the client—i.e., maintaining too great a confidentiality—renders them entirely unprotected and subject to production. It appears to be the

---

[1] A. Kenneth Pye, *Fundamentals of the Attorney–Client Privilege*, THE PRACTICAL LAWYER, Nov. 1969, at 16.
[2] Geoffrey Hazard, *An Historical Perspective on the Attorney-Client Privilege*, 66 CAL. L. REV. 1061, 1061 (1978).

1

United States' view that the lawyer for the Chairman of the Senate Redistricting Committee may not engage in his own efforts to assess the legality of proposed legislation—despite the extraordinary complexities associated with federal and state redistricting law—without later being compelled to share those materials with opposing counsel. That view is contrary to law, and it is unclear how under that novel view, future redistricting counsel could fully and frankly advise their clients.

At the heart of this discovery dispute are confidential statistical analyses of numerous redistricting plans that were considered during the Third Special Session of the 87th Legislature. *See* Ex. A ¶ 3 (Declaration of Christopher Hilton). These analyses were not transmitted to anyone. Instead, they formed the basis of, and thus reflect, OAG attorney Chris Hilton's oral communications of legal advice to his client, Senator Huffman. *See id.* Defendants acknowledge that this Court has previously ruled that documents such as statistical reports and draft maps held by legislators constituted underlying facts that must be produced. ECF No. 467, *administratively stayed*, No. 22-50662 (5th Cir. July 27, 2022). Even so, the documents relating to that ruling did not reside solely in the hands of attorneys. These do. And the documents subject to the Court's prior rulings were not created by attorneys or employees of attorneys solely for attorney use in providing legal advice. These were.

Compelling OAG to produce these documents would incentivize its clients to simply not seek legal advice. That would undermine both the attorney–client and attorney work-product privileges as established by Supreme Court precedent. And it would also do a great disservice to future legislatures and all Texans, who have a strong interest in ensuring that the laws that are enacted are lawful.

## ARGUMENT

### I. The Attorney–Client Privilege Applies

The attorney-client privilege "protects communications made in confidence by a client to his lawyer," and vice versa, "for the purpose of obtaining legal advice." *Hodges, Grant & Kaufmann v. IRS*, 768 F.2d 719, 720–21 (5th Cir. 1985). "There are a number of ways to organize the essential elements

2

of the attorney–client privilege to provide for an orderly analysis." 24 Charles Alan Wright & Kenneth W. Graham Jr., *Federal Practice and Procedure* § 5473, at 103–04 (1986). But "there is some question as to whether [such schema] completely state[] the modern privilege." *Id.* Ultimately, the privilege is "supported in part by its traditional utilitarian justification, and in part by the integral role it is perceived to play in the adversary system itself." John W. Strong, *McCormick on Evidence* § 87, at 121–22 (4th ed. 1992). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The documents that the Office of the Attorney General (OAG) has withheld, and that the United States seeks, are protected by the attorney–client privilege because they are (i) communications (ii) that were kept confidential and (iii) were made for the primary purpose of providing legal advice to the client.

The United States disagrees. It contends that the documents sought are not "communications" within the meaning of the privilege because they "contain purely factual, non-legal information" and because "they were never provided to OAG's client, Senator Huffman." ECF No. 527 at 5. But the documents sought are not mere "underlying facts," and attorney–client privileged material is not limited to emails between the lawyer and the client.

### A.   Communications, Not "Underlying Facts"

It is true that "underlying facts" are not protected by the attorney–client privilege. *See, e.g.*, ECF No. 467 at 14. As the Supreme Court in *Upjohn* explained, "a client . . . may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney." 449 U.S. at 396. But there is a critical distinction between (1) pre-existing documents a client gives to a lawyer and (2) documents a lawyer created solely for his own use because a client sought legal advice. *Cf. id.* ("[T]he Government . . . [may not] subpoena[] the questionnaires and notes taken by petitioner's attorneys."). In *Upjohn*, the Supreme Court explained

3

that although subpoenaing the attorneys' notes "would probably be more convenient for the Government," "such considerations of convenience do not overcome the policies served by the attorney–client privilege." *Id.* After all, "[d]iscovery was hardly intended to enable a learned profession to perform its functions . . . on wits borrowed from the adversary." *Id.*

Here, OAG is not trying to hide facts that exist independently. Rather, OAG is withholding materials that would never have existed but for OAG's staff creating them at the attorney's behest in service of the client's legal representation. The United States groups the withheld documents into "two general categories": "Expert Documents" and "Interbranch Documents." ECF No. 527 at 2–3.

The former category refers to confidential statistical analyses of numerous redistricting plans considered during the Third Special Session of the 87th Legislature. *See* Ex. A ¶ 3. The analyses were prepared by in-house consulting experts employed by OAG, who did so solely at the discretion of attorney Chris Hilton. *Id.* Those internal consulting experts were members of OAG's Legal Technical Support Division, and they included the Division Chief, Dr. David Falk, and Data Analysts Dr. Joshua Zahn and Mr. Todd Giberson. *Id.* The OAG experts transmitted these analyses directly to Mr. Hilton. *Id.* And the analyses formed the basis of and reflect the content of Mr. Hilton's oral communications to the client, Senator Huffman. *Id.* ¶ 4 ("[Chris Hilton] directed Dr. Falk, Dr. Zahn, and Mr. Giberson to produce these analyses so that [he] could form mental impressions, form legal opinions and conclusions, formulate legal strategy, and render legal advice to Senator Huffman and her staff in anticipation of litigation connected to the redistricting plans."). These analyses "exist only because Senator Huffman and her staff sought legal advice from the Office of the Attorney General." *Id.*

The latter category of "Interbranch Documents" is a misnomer. The name suggests that the documents were shared outside the attorney–client relationship, and the United States describes Anna Mackin as merely "a Senate attorney." ECF No. 527 at 3. But as Special Counsel to the Senate Redistricting Committee, Ms. Mackin was a member of Senator Huffman's staff since Senator

4

Huffman served as the Chair of the Senate Redistricting Committee. *See* Ex. A ¶ 2. Therefore, this category of materials includes the exchange of documents and email communications reflecting legal advice from Mr. Hilton to Senator Huffman and her staff.

Accordingly, all these withheld documents constitute attorney–client privileged material. And "communications," for purpose of the privilege, are not defined as narrowly as the United States insists. For example, a communication need not be an email between lawyer and client for it to be privileged. Indeed, the attorney–client privilege also covers documents that simply reveal communications between lawyer and client. As the Supreme Court explained in *Upjohn*, "[i]f [notes and memoranda] reveal communications, they are . . . protected by the attorney–client privilege." 449 U.S. at 401; *see also Regeneron Pharms., Inc. v. Merus B.V.*, No. 14-cv-1650, 2014 WL 11344040, at *2 (S.D.N.Y. Dec. 5, 2014) (quoting same); *In re Grand Jury Subpoena*, 419 F.3d 329, 340 (5th Cir. 2005) (considering the scope of the crime-fraud exception to the attorney–client privilege for a subpoena compelling all attorney–client communications, "written, oral, **or otherwise**" (emphasis added)).

What's more, a "document need not be authored or addressed to an attorney in order to be properly withheld on attorney–client privilege grounds." *Santrade, Ltd. v. Gen. Elec. Co.*, 150 F.R.D. 539, 545 (E.D.N.C. 1993). And the attorney–client privilege also covers oral communications. *See Ward v. Succession of Freeman*, 854 F.2d 780, 787–88 (5th Cir. 1988) (reiterating the rule for waiver of "the attorney–client privilege with respect to all communications, whether written or oral"); *Musco Propane, LLP v. Town of Wolcott*, No. 3:10-cv-1400, 2011 WL 6300235, at *3 (D. Conn. Dec. 15, 2011).

Hence, a document not authored by the attorney, but prepared by his staff, that forms the basis of and reflects an oral communication of legal advice to the client is subject to the attorney–client privilege. And "[t]o the extent [such notes and memoranda] do not reveal communications, they reveal the attorneys' mental processes in evaluating the communications." *Upjohn Co.*, 449 U.S. at 401. The withheld documents are thus "communications" protected by attorney–client privilege because

5

they reflect and reveal the oral communications of legal advice Mr. Hilton rendered to his client.

### B. The Confidentiality of Materials Created Solely for Providing Legal Advice

The United States believes that because a large portion of the withheld materials were never transmitted to the client, they cannot be privileged attorney–client material. ECF No. 527 at 5–6 (regarding "Expert Documents"). The United States invokes the Supreme Court's decision in *Hickman v. Taylor* for the proposition that "[d]ocuments kept 'hidden in an attorney's file' thus 'fall outside the scope of the attorney–client privilege.'" ECF No. 527 at 6 (quoting 329 U.S. 495, 508, 512 (1947)). But these two quotation segments from *Hickman* refer to discrete ideas. First, the Court held that the attorney's "memoranda" and notes on "statements" from witnesses in the case "fall outside the scope of the attorney–client privilege" because they were made "in anticipation of litigation" and for the attorney's "own use in prosecuting his client's case." 329 U.S. at 499, 501–03, 508. And second, the Court held that when "relevant and non-privileged *facts* remain hidden in an attorney's file," production is appropriate. *Id.* at 511 (emphasis added). In other words, the Court was discussing the "underlying fact" versus "communication" distinction. The Court did not hold that by mere virtue of being kept confidential, a document is not privileged under the attorney–client privilege. It is also worth noting that in *Hickman*, the Supreme Court refused to require the attorney to turn over his files from the representation of his client. *Id.* at 514.

Here, what the United States calls "hiding in an attorney's file" is in truth the OAG's earnest attempt at guarding the confidentiality of the advice it provided to its client. The withheld analyses were never themselves transmitted to the client because Mr. Hilton kept his legal advice absolutely as confidential as possible. As this Court has long warned, "disclosure of any significant portion of a confidential communication waives the privilege as to the whole." *United States v. El Paso Co.*, 682 F.2d 530, 538 (5th Cir. 1982) (quoting *United States v. Davis*, 636 F.2d 1028, 1043 n.18 (5th Cir. 1981)).

Mr. Hilton's strict policy of utmost confidentiality was particularly a result of the last decade's

6

redistricting litigation. *See generally Texas v. United States*, 279 F.R.D. 24 (D.D.C. 2012), *vacated in part*, 279 F.R.D. 176 (D.D.C. 2012). In that case, OAG had conducted racially polarized voting analyses plus a set of reconstituted election analyses known as the "OAG 10." *Id.* at 34–35. The United States complained that "the summaries and other reports prepared by the OAG's technicians" were shared with map drawers, the State's expert, the redistricting committee chairs, and "any legislator upon request." *Texas v. United States*, 279 F.R.D. 24 (D.D.C. 2012), ECF No. 134. The three-judge panel agreed, ordering the State to produce those documents. 279 F.R.D. at 34–35.

For this decade's redistricting, the OAG provided its legal advice in a completely different manner. The analyses were used by Mr. Hilton solely to provide legal advice to Senator Huffman alone, and as such, they reflect Mr. Hilton's legal advice. Ex. A ¶ 3. The analyses were never provided to legislators, map drawers, experts retained in this case, or anyone else. Ex. A ¶ 3. And Mr. Hilton provided legal advice solely to Senator Huffman. Ex. A ¶ 2. He did not meet, let alone give advice to, other Senators, the Republican Caucus, or House members. Ex. A ¶ 2. For these reasons, the withheld material is core attorney–client privilege material.

## II.   The Attorney Work-Product Privilege Applies

The attorney work-product doctrine "protects documents produced by or for an attorney preparing for litigation." *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991). "It protects materials prepared in anticipation of litigation, whether those materials were prepared by the attorney or by agents of the attorney." *Adams v. Mem'l Hermann*, 973 F.3d 343, 349 (5th Cir. 2020). A document is prepared in anticipation of litigation when the purpose in its preparation is "because of the prospect of litigation." *Stampley v. State Farm & Cas. Co.*, 23 F. App'x 467, 470 (6th Cir. 2001). Just because a document is prepared "before a suit is filed does not mean that it was not done because of the prospect of litigation." *Id.* On the flip side, litigation was not anticipated if the document "would have been created regardless of whether the litigation was also expected to ensue." *Tonti Mgmt. Co. v.*

7

*Soggy Doggie*, No. 19-cv-13134, 2020 WL 9172077, at *5 (E.D. La. June 25, 2020). Thus, the key issue is if the lawyer had a "subjective anticipation of litigation" and if "that subjective anticipation was objectively reasonable." *Ohio A. Philip Randolph Inst. v. Smith*, No. 1:18-cv-357, 2018 WL 6591622, at *2 (S.D. Ohio Dec. 15, 2018) (quoting *In re Profs. Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009)).

Here, Mr. Hilton had a subjective anticipation of litigation. *See* Ex. A ¶ 5. For one thing, Mr. Hilton expected another round of redistricting litigation as had occurred from the last decade's redistricting, and thus took extra precautions to ensure the confidentiality of documents prepared at his direction. *Id.* ¶ 5. Indeed, the manner in which Mr. Hilton directed his experts to create analyses was fundamentally informed by the previous decade's redistricting litigation. But for that expectation of litigation, Mr. Hilton would not have directed his experts to create these analyses. *Id.* ¶ 4 ("[He] directed Dr. Falk, Dr. Zahn, and Mr. Giberson to produce these analyses so that [he] could . . . render legal advice to Senator Huffman and her staff in anticipation of litigation."). In addition, Mr. Hilton was aware "that litigation had already begun regarding redistricting at the time [he] directed Dr. Falk, Dr. Zahn, and Mr. Giberson to perform the analyses." *Id.* ¶ 5. Therefore, Mr. Hilton's subjective anticipation of litigation was also reasonable—litigation from last decade's redistricting was known to him, litigation from this decade's redistricting had already begun, and more litigation from this decade's redistricting was soon to follow.

But the United States points to this Court's citation to *Bethune-Hill v. Va. State Board of Elections* for the proposition that the work-product doctrine cannot apply to "legislative counsel" since "the legislature could *always* have a reasonable belief that *any* of its enactments would result in litigation." ECF No. 526; *see also* 114 F. Supp. 3d 323, 348 (E.D. Va. 2015) (quoting *Baldus v. Brennan*, No. 11-cv-562, 2011 WL 6385645, at *2 (E.D. Wis. Dec. 20, 2011)). Even so, this assertion of attorney work-product privilege is fundamentally different than the work-product assertion from the case that *Bethune-Hill* was quoting. In that case, *Baldus v. Brennan*, a nonlawyer was hired by the Wisconsin

Legislature at large. 2011 WL 6385645, at *1. The nonlawyer, Mr. Handrick, provided the Legislature with independent consulting services for its redistricting efforts. *Id.* And because Mr. Handrick happened to be an employee of a law firm, Mr. Handrick attempted to assert attorney work-product privilege over his files on behalf of the Legislature. *Id.*

Mr. Handrick did so even though he himself was directly hired and "consulted by the Legislature independently"—no lawyers were ever involved with the engagement whatsoever. *Id.* The court held that "[t]he Legislature may not shield the opinions and conclusions of an individual hired with taxpayer money, simply by funneling the hiring of that individual through outside counsel." *Id.* Because "the Legislature was the client paying Mr. Handrick—a non-lawyer—[] his opinions and conclusions [were] not subject to any work-product or attorney–client privilege." *Id.* Furthermore, Mr. Handrick was hired by the entire Legislature, and the court was not willing to allow the entire Legislature to "shield all of its actions from any discovery." *Id.* at *2. In that sense—speaking about the Legislature as a whole—the court explained that "[t]he Legislature could *always* have a reasonable belief that *any* of its enactments would result in litigation." *Id.*

None of that is the case here. Unlike Mr. Handrick, Mr. Hilton is a lawyer. Unlike Mr. Handrick, Mr. Hilton was not hired by the Legislature at large. Mr. Hilton has one client, the Chair of the Senate Redistricting Committee. Ex. A ¶ 2. And unlike Mr. Handrick, Mr. Hilton was not providing consulting services, he was giving legal advice. *Id.* For these reasons, this work-product assertion is qualitatively different—even from the privilege assertion this Court considered for the Governor documents, *see* ECF No. 526. Mr. Hilton's documents are core attorney work-product material.

### III. The Legislative Privilege Applies

Legislators are entitled to the legislative privilege when they seek confidential legal advice in furtherance of their legislative responsibilities. Contrary to the United States' position, the privilege does apply to the materials OAG is withholding. *Contra* ECF No. 527 at 7. The United States cites a

case for the proposition that "the privilege applies only to communications 'between legislators or between legislators and their staff.'" *Id.* (quoting *TitleMax of Tex., Inc. v. City of Dallas*, No. 21-cv-1040, 2022 WL 326566, at *5–6 (N.D. Tex. Feb. 3, 2022)). But when the court said "between legislators and their staff," it was explaining a distinction between communications that stay confidential versus communications that are public and thus nonconfidential. *See* 2022 WL 326566, at *5 (quoting *Jackson Mun. Airport Auth. v. Bryant*, No. 3:16-cv-246, 2017 WL 6520967 (S.D. Miss. Dec. 19, 2017)). The court was concerned about "conversations or communications with any outsider[s]"—e.g., "lobbyists" or "constituents." 2017 WL 6520967, at *7; *see also Gilby v. Hughs*, 472 F. Supp. 3d 763, 767 (W.D. Tex. 2020) (explaining that privilege is waived if the legislator "communicated with any outsider"). But Mr. Hilton is not an "outsider." He is Senator Huffman's attorney. Hence, Senator Huffman may still assert the legislative privilege over materials reflecting legal advice her lawyer gave her, which she used in furtherance of her legislative duties.

To reiterate, these materials are not mere underlying facts. "All documents or communications reflecting strictly factual information—regardless of source—are to be produced." *League of Women Voters of Mich. v. Johnson*, No. 17-cv-14148, 2018 WL 2335805, at *6 (E.D. Mich. May 23, 2018) (quoting *Bethune-Hill*, 114 F. Supp. 3d at 343). Factual information would still exist independent of the client's legal representation. To the contrary, the materials that OAG is withholding would never have existed in the first place but for Mr. Hilton's representation of Senator Huffman.

Finally, disclosure of these documents is certain to have a chilling effect on legislators. OAG's clients would be incentivized to simply not seek legal advice moving forward. This would therefore also have an extreme deleterious effect on the public. Texans have a deep interest in ensuring that their legislators receive effective counsel to assess the legality of the laws the Legislature enacts.

## CONCLUSION

For the reasons explained above, Defendants respectfully ask that the Court deny the motion.

| | |
|---|---|
| Date: August 17, 2022 | Respectfully submitted. |
| KEN PAXTON<br>Attorney General of Texas | PATRICK K. SWEETEN<br>Deputy Attorney General for Special Litigation<br>Tex. State Bar No. 00798537 |
| BRENT WEBSTER<br>First Assistant Attorney General | CHRISTOPHER D. HILTON<br>Chief, General Litigation Division<br>Tex. State Bar No. 24087727 |
| | WILLIAM T. THOMPSON<br>Deputy Chief, Special Litigation Unit<br>Tex. State Bar No. 24088531 |
| | */s/ Ari M. Herbert*<br>ARI M. HERBERT<br>Special Counsel, Special Litigation Unit<br>Tex. State Bar No. 24126093 |
| | OFFICE OF THE ATTORNEY GENERAL<br>P.O. Box 12548 (MC-009)<br>Austin, Texas 78711-2548<br>Tel.: (512) 463-2100<br>Fax: (512) 457-4410<br>patrick.sweeten@oag.texas.gov<br>christopher.hilton@oag.texas.gov<br>will.thompson@oag.texas.gov<br>ari.herbert@oag.texas.gov |
| | **COUNSEL FOR DEFENDANTS** |

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on August 17, 2022, and that all counsel of record were served by CM/ECF.

*/s/ Ari M. Herbert*
ARI M. HERBERT