**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **LEAGUE OF UNITED LATIN AMERICAN CITIZENS,** *et al.*, | § § § § | |
| *Plaintiffs*, | § § | |
| **EDDIE BERNICE JOHNSON,** *et al.*, | § § § | **EP-21-CV-00259-DCG-JES-JVB** **[Lead Case]** |
| *Plaintiff-Intervenors*, | § § | **&** |
| v. | § § | **All Consolidated Cases** |
| **GREG ABBOTT,** *in his official capacity as Governor of the State of Texas*, *et al.*, | § § § § | |
| *Defendants*. | § § | |

**ORDER**

The Abuabara and LULAC Plaintiffs ("Plaintiffs") move to compel Defendant John Scott, Texas Secretary of State, to review and produce certain documents. Mot., ECF No. 410; *see also* Reply, ECF No. 480. Secretary Scott opposes. Resp., ECF No. 452. For the reasons that follow, the Court GRANTS in part and DENIES in part Plaintiffs' Motion.

### I. BACKGROUND

Plaintiffs want documents from Secretary Scott pertaining to redistricting and the history of discrimination in Texas's elections. *See generally* Mot.; Proposed Search Terms, Mot. Ex. A, ECF No. 410-2. The parties have spent months negotiating discovery parameters for document requests targeted at Secretary Scott. *See* Mot. Ex. B, ECF No. 410-3 (initial discovery request dated March 5, 2022); Mot. Ex. S, ECF No. 410-20 (Secretary Scott's final counterproposal dated July 5, 2022). During negotiations, the parties were able to whittle down the search parameters so that the results dropped from around 324,000 documents, Mot Ex. Q, ECF No. 410-18 at 2, to around 60,000 documents, Mot. at 2; Resp. at 1.

Secretary Scott objected to producing those documents. As a counteroffer, Secretary Scott suggested reviewing "a random sample of plaintiffs' most recent proposed search terms." Resp. Ex. D, ECF No. 452-5 at 2; *see also* Mot. Ex. Q at 3. Secretary Scott first limited his offer to a review of 500 documents. Mot. Ex. Q at 7. Later, Secretary Scott offered to review a random sample of 2,500 documents. Mot. Ex. S at 1. It appears that Secretary Scott offered the random sampling as a complete discharge of his production obligations under Plaintiffs' document requests. *See* Mot. Ex. R, ECF No. 410-19, at 4; Mot. at 4; Resp. at 10 (not refuting that producing a random sample of 2,500 documents would satisfy production obligations). Unhappy with Secretary Scott's final proposal to provide a random sample of 2,500 documents, Plaintiffs filed their present motion to compel. Secretary Scott says Plaintiffs' document requests are irrelevant and disproportionate to the needs of the case. *See generally* Resp.

## II.   STANDARDS

### A. Limitations on the Scope of Discovery

"Generally, the scope of discovery is broad and permits the discovery of 'any nonprivileged matter that is relevant to any party's claim or defense.'" *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011) (quoting FED. R. CIV. P. 26(b)(1)). The scope of discovery must also be "proportional to the needs of the case." FED. R. CIV. P. 26(b)(1); *see also Mir v. L-3 Commc'ns Integrated Sys., LP*, 319 F.R.D. 220, 225–26 (N.D. Tex. 2016) ("[A] court can—and must—limit proposed discovery that it determines is not proportional to the needs of the case.").

Relevant information "encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "A discovery request is relevant when the

request seeks admissible evidence or 'is reasonably calculated to lead to the discovery of admissible evidence.'" *Crosby*, 647 F.3d at 262 (quoting *Wiwa v. Royal Dutch Petrol. Co.*, 392 F.3d 812, 820 (5th Cir. 2004)).  Said another way, "[u]nless it is clear that the information sought can have no possible bearing on the claim or defense of a party, the request for discovery should be allowed."[1]  *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005).

Courts assess proportionality by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  FED. R. CIV. P. 26(b)(1); *e.g.*, *Mir*, 319 F.R.D. at 226.

### B.  Which Party Bears the Burden

The parties dispute who bears the initial burden to establish whether the documents Plaintiffs seek are relevant.  *Compare* Reply at 3 ("The party *resisting* discovery must show specifically how each request is not relevant or how each question is overly broad, burdensome or oppressive." (emphasis added) (quoting *Tsanacas v. Amazon.com, Inc.*, No. 4:17-CV-00306, 2018 WL 324447, at *2 (E.D. Tex. Jan. 8, 2018) (cleaned up)) *with* Resp. at 5–6 ("The party *seeking* discovery bears the initial burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence." (emphasis added) (quoting *Crossland v. Nationwide Mut. Ins. Co.*, No. 3:18-cv-85, 2018 WL 4905354, at *1 (W.D. Tex. Oct. 9, 2018))).

---

[1] This is, of course, subject to other discovery exceptions, such as a privilege.  *See generally* FED. R. CIV. P. 26(b).

District courts are split on who bears the initial burden to establish relevance. Many district courts in the Fifth Circuit apply a burden-shifting test under which the party seeking discovery bears the initial burden.[2] Once the moving party establishes relevance, "the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive." *E.g.*, *Allen*, 2017 WL 7789280, at *1. Other district courts in the Fifth Circuit place the initial burden on the party resisting discovery.[3]

Defendant cites *Crossland* for the proposition that the initial burden rests with Plaintiffs. Resp. at 5–6; *see also* 2018 WL 4905354, at *1. In *Crossland*, the court said, "The party seeking discovery bears the initial burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence." 2018 WL 4905354, at *1 (quoting *Reynolds v. Cactus Drilling Co.*, No. M0:15-CV-00101-DAE-DC, 2015 WL 12660110, at *2 (W.D. Tex. Dec. 21, 2015)). But *Crossland* does not acknowledge a Fifth

---

[2] *E.g.*, *Williams v. Jeld-Wen, Inc.*, No. 1:17-CV-01366, 2022 WL 509373, at *1 (W.D. La. Feb. 18, 2022) ("The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence."); *Hsieh v. Apache Deepwater, LLC*, No. 19-00408-BAJ-DPC, 2021 WL 3502467, at *7 (M.D. La. Aug. 9, 2021); *Dortch v. Wells Fargo Bank, N.A.*, No. 4:18-CV-00452, 2020 WL 1289431, at *2 (E.D. Tex. Mar. 18, 2020); *Alaniz v. U.S. Renal Care, Inc.*, No. 1:17-cv-00146, 2018 WL 8622313, at *1 (S.D. Tex. Aug. 20, 2018); *Lou v. Lopinto*, No. 21-80, 2022 WL 1447554, at *8 (E.D. La. Mar. 24, 2017); *Allen v. Priority Energy Servs., LLC*, No. MO:16-CV-00047-DAE-DC, 2017 WL 7789280, at *1 (W.D. Tex. Jan. 30, 2017); *Abraham v. Alpha Chi Omega*, 271 F.R.D. 556, 559 (N.D. Tex. 2010); *Baptist Health v. BancorpSouth Ins. Servs., Inc.*, 270 F.R.D. 268, 272 (N.D. Miss. May 28, 2010) ("Where relevance is at issue, the burden is on the moving party to show the materials and information sought are relevant to a claim or defense or will lead to the discovery of admissible evidence.").

[3] *E.g.*, *Moss v. Medline Indus. Inc.*, No. 3:21-CV-1055-E-BH, 2022 WL 2919493, at *3 (N.D. Tex. May 26, 2022); *Samsung Elecs. Am. Inc. v. Yang Kun "Michael" Chung*, 325 F.R.D. 578, 595 (N.D. Tex. 2017) ("[T]he Court disagrees . . . that, as part of a burden-shifting test, an initial burden lies with the party moving to compel to show clearly that . . . the information sought is relevant to any party's claim or defense and proportional to the needs of the case."); *Dotson v. Edmonson*, No. 16-15371, 2017 WL 11535244, at *2 (E.D. La. Nov. 21, 2017); *McKinney/Pearl Rest. Partners, LP v. Metro. Life Ins. Co.*, 322 F.R.D. 235, 244 (N.D. Tex. 2016) ("[I]n order to . . . successfully resist a motion to compel," "the burden [is] on the party resisting discovery to . . . show that the requested discovery does not fall within Rule 26(b)(1)'s scope of relevance . . . ."); *Merrill*, 227 F.R.D. at 477.

Circuit opinion that addresses allocation of the burden: *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482 (5th Cir. 1990).

In *McLeod*, the Fifth Circuit said, "the party *resisting* discovery must show specifically how . . . [the request] is not relevant or how each [request] is overly broad, burdensome or oppressive."[4]  894 F.2d at 1485 (emphasis added) (quoting *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982)).  This strongly suggests the initial burden is on the resisting party to establish whether a document request is relevant.  As further indication that the Fifth Circuit adopted that approach, it said, "*even if* some of the [party's] requests for production were irrelevant" (which suggests there's no initial burden on the requesting party to show relevance), "[the resisting party] *must have* a valid objection to each [request] in order to escape the production requirement" (which suggests the burden is on party resisting a discovery request to show it is irrelevant).  *Id.* (emphasis added).  This Court finds *McLeod* controlling and thus agrees with its sister courts that place the initial burden of showing whether a document request is relevant on the party *resisting* discovery.[5]  *E.g.*, *Merrill*, 227 F.R.D. at 477 (stating that

---

[4] The quote from *McLeod* addresses interrogatories, not document requests, but the court made clear that was not a material difference: "We see no reason to distinguish the standards governing responses to interrogatories from those that govern responses to production requests."  894 F.2d at 1485.

[5] Two things.  First, the Court recognizes that it has previously applied the burden-shifting approach.  *Crossland*, 2018 WL 4905354, at *1.  "A decision of a federal district court judge[, however,] is not binding precedent in . . . the same judicial district, or even upon the same judge in a different case."  *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (quotation omitted).

Second, in a later Fifth Circuit opinion, the court hinted at a potential move to a burden-shifting framework.  *Outland v. Henderson*, 180 F.3d 265, 1999 WL 301848, at *2 (5th Cir. 1999) (unpublished).  In *Outland*, the Fifth Circuit affirmed a denial of a motion to compel, stating that the plaintiff had "not explained why" certain information "would be relevant to her case."  *Id.*  This certainly suggests the placement of the initial burden on the party seeking discovery.  But because the *Outland* court did not clearly address the burden framework and because it is an unpublished and non-precedential opinion, we decline to follow the burden-shifting approach.  5th Cir. R. 47.5.4 (with an exception not relevant here, "[u]npublished opinions . . . are not precedent").  That said, because of the district court split and the tension between *McLeod* and *Outland*, this issue would doubtless benefit from guidance from the Fifth Circuit.

"*McLeod* is contrary to a number of other courts which employ the burden-shifting analysis urged by Defendant").

Similarly, the burden of "showing that [a] discovery [request] fails the proportionality calculation mandated by Rule 26(b)" falls on the party resisting discovery. *E.g.*, *McKinney/Pearl*, 322 F.R.D. at 243; *see also McLeod*, 894 F.2d at 1485.

### III.  DISCUSSION

Plaintiffs' document requests can be sorted into two categories: (1) documents related directly to matters that could bear on Plaintiffs' Fourteenth Amendment claims, intentional vote dilution claims under Section 2 of the Voting Rights Act, and the three *Gingles* preconditions[6] ("Category 1 Documents") and (2) those more tangentially related to the current redistricting cycle but nonetheless may bear on Section 2's totality of the circumstances test ("Category 2 Documents"). *See generally* Mot.; Reply; Proposed Search Terms at 1–4 (Category 1 Documents), 5 (Category 2 Documents).

**A. Category 1 Documents**

**1. *Relevance***

Secretary Scott argues that the Category 1 Documents Plaintiffs want are irrelevant. Resp. at 5–7. Secretary Scott contends that the "Texas Secretary of State had no role in the legislative redistricting process" and maintains that "Plaintiffs have not offered a single exhibit they contend shows [the Secretary of State's] involvement in the redistricting process." *Id.* at 1,

---

[6] The three *Gingles* preconditions Plaintiffs must prove are:

(1) a minority electorate that is sufficiently large and compact to form a majority in a single district;
(2) the minority electorate is politically cohesive; and
(3) the majority votes as a bloc to defeat the minority electorate's preferred candidates.

*Thornburg v. Gingles*, 478 U.S. 30, 50–51 (1986).

6–7. For support, Secretary Scott points to documents he has already produced that have no bearing on the Texas Legislature's drafting of the challenged redistricting legislation. *Id.* Ex. A (letter from Director of Elections Division regarding precinct chairs), Ex. B (letter from Director of Elections Division regarding impact of redistricting on certain election deadlines and procedures), Ex. C (email reminder for candidate filing period).

By Plaintiffs' own admission, they do not know whether the Legislature consulted the Secretary of State about redistricting. Mot. at 6. And when Plaintiffs had the opportunity to offer documents rebutting Secretary Scott's contention that Category 1 Documents are irrelevant, they did not do so. *See generally* Reply. Moreover, except for a cursory sentence,[7] Plaintiffs do not address how the Category 1 Documents relate to their claims that the Legislature intentionally discriminated against minority electorates. *See id.* at 1–3. They instead focus on the documents' relevance to Plaintiffs' Section 2 effects claims. *Id.*; Mot. at 6 ("The Secretary of State . . . is likely to possess documents relating to elections that are relevant to Plaintiffs' claims, including information about racial voting patterns in Texas and complaints about voting-related discrimination and appeals in politics."); *see also Gingles*, 478 U.S. at 43  (quoting 52 U.S.C. § 10301(b)).[8]

---

[7] Plaintiffs maintain that

> The Secretary also likely engaged in internal analysis and discussion with county election officials with respect to restrictions on voting, voter identification programs, the opening or closing of polling places, the impact of polling place lines, and a myriad of other factors that have erected barriers to voting by minority populations. This material is directly relevant to Section 2's totality of the circumstances analysis, and to the LULAC Plaintiffs' claims that Defendants violated the [Fourteenth] Amendment of the U.S. Constitution.

Reply at 2. Plaintiffs never explain *why* these documents are relevant to their Fourteenth Amendment claims or their intentional vote dilution claims under Section 2.

[8] Plaintiffs also contend that Secretary Scott waived his relevance objections because "[n]owhere in Defendants' responses and objections did they suggest that they would refuse to review more than 2,500

Secretary Scott has met his burden to show that Plaintiffs' request for Category 1 Documents are not relevant to Plaintiffs' claims that the Legislature intentionally discriminated against minority voters in violation of the Fourteenth Amendment and Section 2. Secretary Scott produced documents, Resp. Exs. A–C, that show it's unlikely that *the Secretary of State* has documents that would help establish that *the Legislature* was motivated by a discriminatory purpose. That is, Secretary Scott has shown that Plaintiffs' requests for Category 1 Documents are not "reasonably calculated to lead to the discovery of admissible evidence," *Crosby*, 647 F.3d at 262, that shows the Legislature intentionally discriminated against minority voters, *see, e.g.*, *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265–66 (1977) ("When there is [] proof that a discriminatory purpose has been a motivating factor in the [legislature or administrative body's] decision, [] judicial deference is no longer justified."); *LULAC v. Perry*, 548 U.S. 399, 513–14 (2006) (Scalia, J., concurring in part) (noting the difference of degree of the "legislature's motivation" that plaintiffs must establish under an intentional vote dilution claim and a gerrymandering claim).

As to Category 1 Documents that may be relevant to the *Gingles* preconditions—such as documents relating to racial voting patterns in Texas—Secretary Scott has not met his burden. Secretary Scott says that the Secretary of State played no role in redistricting, Resp. at 1, 6–7, but that does not necessarily mean the Office does not possess documents relevant to the size and

---

documents." Mot. at 7–8. Defendants counter that they have "consistently objected to searching and producing the [Secretary of State] documents on the basis that they are of only minimal relevance." Resp. at 6. The Court concludes that Secretary Scott did not waive his objections because he preserved such objections during the discovery process. *See, e.g.*, Mot. Ex. H, ECF No. 410-9, at 2 (recognizing Secretary Scott's "relevance and proportionality objections"); Mot. Ex. Q at 3 ("Defendants have consistently objected to these requests on the basis that the [Secretary of State] documents have little to no relevance to plaintiffs' claims."); *see also Amin v. United Parcel Serv., Inc.*, 3:19-CV-2578-X-BK, 2021 WL 3629731, at *2 (N.D. Tex. Jun. 3, 2021) (generally, a party waives "potential discovery objections" only if that party "fails to timely respond to the request" (quoting *In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989))).

compactness of minority electorates across Texas or voting patterns of the minority and majority electorates—all of which would be relevant to Plaintiffs' *Gingles* claims. *See Gingles*, 478 U.S. at 50–51. Indeed, the mere fact that Secretary Scott's document search produced hits under Plaintiffs' proposed search terms relating to Texas's demographics and the Voting Rights Act suggests that the Secretary may have relevant documents. Proposed Search Terms at 5. Specifically, the following proposed search parameters are relevant to the *Gingles* preconditions:

- (Census OR "Texas Demographic Center" OR TDC OR "Texas population estimates program" OR "American Community Survey" OR ACS) AND (grow* OR increas* OR drop* OR declin* OR change* OR count OR counts OR enumerat* OR estimat* OR deviat* OR ideal OR race OR racial* OR ethnic* OR national* OR language OR minority OR citizen OR immigrant* OR Black OR African OR Hispanic OR Latin* OR Spanish OR Mexican OR Asian OR white* OR Anglo*)

- ("Texas Legislative Council" OR TLC) W/100 (district* OR map OR boundar* OR apportion* OR race OR racial* OR Black OR African OR Hispanic OR Latin* OR Spanish OR Mexican OR Asian OR white* OR Anglo* OR ethnic* OR national* OR language OR minority OR citizen* OR immigrant* OR pattern* OR partisan OR party OR Republican* OR Democratic* OR "voter registrat*")

- (Race OR Racial* OR VRA OR "Voting Rights Act" OR "Section 2" OR RPV) w/10 (impact* OR effect* OR stud* OR analysis OR calculat* OR project* OR report* OR audit* OR estimat* OR project* OR memo*)

- District* w/10 (Hispanic* OR Latin* OR Spanish OR Mexican* OR Black* OR African* OR Asian* OR white* OR Anglo* OR coalition* OR minori* OR opportun*)

- (Census OR ACS OR "American Community Survey") w/10 (district* OR House OR Congress*)

- bloc* w/10 vot*

- "majority-minority" OR "majority minority" OR "minority-majority" OR "minority majority" OR MMD

- "Spanish Surname" OR SSVR OR SSTO OR "Citizen voting age population" OR CVAP OR HCVAP OR BCVAP OR "voting age population" OR VAP OR HVAP OR BVAP

- polariz* w/10 (race OR racial* OR vot*)

*Id.* at 1–3.

In sum, the Court concludes that Secretary Scott has met his burden of showing that Plaintiffs' Category 1 Document requests that pertain to intentional discrimination claims are not "reasonably calculated to lead to the discovery of admissible evidence."[9] *Crosby*, 647 F.3d at 262 (quotation omitted). Secretary Scott, however, has not met his burden to show that Plaintiffs' document requests related to their *Gingles* claims are not "reasonably calculated to lead to the discovery of admissible evidence." *Id.* Thus, documents associated with the search terms the Court identified above are relevant for discovery purposes.

### 2. *Proportionality*

Calculating from Plaintiffs' Exhibit A, the relevant search strings discussed above yield a total of 12,621 documents. *See* Proposed Search Terms at 1–3. The question now is whether these document requests are "proportional to the needs of the case." FED. R. CIV. P. 26(b)(1).

Plaintiffs suggest that this volume of documents is consistent with the scope and importance of this litigation. *See* Mot. at 5–6 ("In important litigation like these cases, parties often must review tens or hundreds of thousands of potentially relevant documents for production." (citing *North Dakota v. United States*, No. 1:19-CV-150, 2021 WL 6278456 (D.N.D. Mar. 24, 2021)); *see also* Reply at 3–4. Secretary Scott contends that these documents have "minimal probative value" and it would be "unduly burdensome" to review large numbers of documents "at the close of discovery, and in the presence of many other pressing exigencies." Resp. at 1, 4, 7 ("It is well-established that searching for and producing documents of little relevance imposes a greater burden on the party responding to the discovery request."), 9–10. Secretary Scott also suggests that Plaintiffs have alternative sources for these documents. *Id.* at 6

---

[9] The Court does not conclude that Category 1 Documents in Secretary Scott's possession are necessarily always irrelevant. Rather, the Court simply concludes that Defendants have met their burden in this instance and that Plaintiffs have not done enough to counter Defendants' evidence.

(arguing that election data is public and that "plaintiffs have [] disclosed expert reports that assess election data at length").

While the importance of the issues at stake in this litigation, FED. R. CIV. P. 26(b)(1), are undoubtedly "paramount," *see Stringer v. Cascos*, No. SA-16-CA-257-OG, 2016 WL 8914448, at *2 (W.D. Tex. Dec. 14, 2016), it appears Plaintiffs have alternative sources for much of the information they might obtain from the Secretary of State, *see, e.g.*, Expert Rep. Stephen Ansolabehere, ECF No. 471-1 (analyzing demographic and election data). The availability of alternative sources counsels against allowing the discovery Plaintiffs request. *See, e.g.*, *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) ("Courts should also consider what information is available to the requesting party from other sources."); *Stringer*, 2016 WL 8914448, at *2 (suggesting alternative access to information may support finding of disproportionality); *Gen. Elec. Co. v. Mitsubishi Heavy Indus., Ltd.*, No. 3:10-cv-276, 2011 WL 13201860, at *2 (N.D. Tex. Aug. 18, 2011) (same). Moreover, because the information Plaintiffs seek is likely to be largely available from other sources, "the burden . . . of the proposed discovery outweighs the likely benefit." *See Mitsubishi Heavy Indus.*, 2011 WL 13201860, at *2. Thus, the Court concludes that requiring Secretary Scott to review all 12,621 documents associated with the search strings the Court identified would not be proportional to the needs of the case.

However, because the Court cannot conclude that all relevant documents Secretary Scott has in his possession are duplicative of information obtainable from other sources, the Court ORDERS Secretary Scott to review and produce (or provide a privilege log for) a random sample of 1,300 documents, consistent with the approach it has previously offered to Plaintiffs, from the search strings the Court identified as likely relevant to the *Gingles* preconditions. *Cf.*

*Moore v. Publicis Groupe*, 287 F.R.D. 182, 184–86 (S.D.N.Y. 2012) (permitting random sample for protective coding protocol); *Old Republic Nat'l Tire Ins. Co. v. Kensington Vanguard Nat'l Land Servs. of Tex. LLC*, No. 3:17-CV-1014-D, 2017 WL 8677357, at *1–2 (N.D. Tex. May 10, 2017) (mandating a random sampling in a preliminary injunction discovery context). Secretary Scott shall comply within fourteen days of this Order. "If, after obtaining the reasonable random sample, [Plaintiffs] have a basis to request . . . all [of the] documents in" the search strings, then the parties shall negotiate an appropriate subsequent production or, if such negotiations fail, Plaintiffs may move to compel the production of those documents. *See Old Republic*, 2017 WL 8677357, at *2.

### B. Category 2 Documents

#### 1. Relevance

Plaintiffs principally contend that Secretary Scott has documents relevant to Section 2's totality of the circumstances analysis. Reply at 1–3; *see also* Mot. at 6 ("The Secretary of State . . . is likely to possess documents relating . . . [to] complaints about voting-related discrimination and appeals in politics."). Secretary Scott does not directly address whether these documents are relevant; instead he objects to Plaintiffs' entire document request as irrelevant. *See* Resp. at 5–7 (focusing on lack of "evidence that [the Secretary of State] was involved in the legislative process").

To prove a Section 2 claim, Plaintiffs must establish that "the totality of the circumstances reveal that the political processes leading to nomination or election . . . are not equally open to participation by members of a protected class." *Gingles*, 478 U.S. at 43 (cleaned up) (quoting 52 U.S.C. § 10301(b)). Whether "elected officials are unresponsive to the particularized needs of the members of the minority group" is just one of many factors that a

court can evaluate under the totality of the circumstances analysis. *Id.* at 45 (citing S. Rep. No. 97-417, at 29). Thus, to the extent Plaintiffs seek "complaints regarding racial discrimination in voting or comments regarding the effects of redistricting" that the Secretary of State may have received, Reply at 2, those documents are relevant. So too is the information Plaintiffs are seeking about potential internal discussions about "restrictions on voting, voter identification programs, the opening or closing of polling places, the impact of polling place lines," and other related information. Reply at 2; *see also* Mot. at 6. If that information exists, it may well help Plaintiffs describe "the history of voting-related discrimination," "the extent to which the State . . . has used voting practices or procedures that tend to enhance the opportunity for discrimination against the minority group," "the extent to which minority group members bear the effects of past discrimination," or any other similar factors that may be pertinent. *Gingles*, 478 U.S. at 44–45 (citing S. Rep. No. 97-417, at 28–29). Thus, the Court concludes that Plaintiffs proposed search terms labeled "History of Discrimination" and "Other," Proposed Search Terms at 5, are "reasonably calculated to lead to the discovery of admissible evidence"— this is, Category 2 documents are relevant. *Crosby*, 647 F.3d at 262 (quotation omitted).

### 2. *Proportionality*

Plaintiffs' two search strings targeted at information pertaining to Section 2's totality of the circumstances test yields 28,973 documents. *See* Proposed Search Terms at 5. As already recognized, the importance of the issues at stake in this litigation are "paramount." *See Stringer*, 2016 WL 8914448, at *2; *see also* FED. R. CIV. P. 26(b)(2) (providing that "the importance of the issues at stake" should be considered when assessing proportionality). Unlike the demographic and election data discussed above, it is unlikely Plaintiffs will have alternative access to the information they seek through these requests. *See, e.g.*, Reply at 2 (seeking internal discussions

about "restrictions on voting, voter identification programs, the opening or closing of polling places, the impact of polling place lines," etc.); *see also* Mot. at 6. Furthermore, the information Plaintiffs seek is probably important for resolving merits issues because Plaintiffs must show that "the totality of the circumstances . . . , based upon a searching practical evaluation of the past and present realty, [that] the political process is [not] equally open to minority voters." *Gingles*, 478 U.S. at 79 (cleaned up).

Secretary Scott contends that even if the documents are relevant, the Court should deny Plaintiffs' motion to compel "because the volume of documents plaintiffs seek is unduly burdensome, especially at this stage in the litigation." Resp. at 9–10 (suggesting that review of approximately 30,000 documents would take about 500 hours). Plaintiffs counter that Secretary Scott has not met his burden of showing that this document production would be unduly burdensome and disproportionate. Mot. at 3. Plaintiffs also note that it's common to have voluminous document productions in cases like this one.[10] *See* Mot. at 5–6; Reply at 3–4.

The Court concludes that Plaintiffs' document request is proportionate to the needs of the case. Plaintiffs are correct that some cases warrant voluminous discovery. *See, e.g.*, *North Dakota*, 2021 WL 6278456, at *5 (finding, in Federal Tort Claims Act case involving the Dakota Access Pipeline, discovery requests proportional even though they "involve documents expected to number in the tens of thousands and to comprise hundreds of thousands, if not millions, of

---

[10] The parties also trade allegations that the other is responsible for delay in discovery related to the Secretary of State. *See* Mot. at 1–5, 7–8; Resp. at 7–9; Reply at 4. The Court need not wade into this fight, as it appears there were delays on both sides. *Compare* Mot. at 4 (explaining that "[o]ver . . . two weeks, Defendants [] refused multiple requests to provide particularized objections) *with* Resp. at 8 ("Plaintiffs delayed three weeks after the April 25th email to send the first set of revised terms."); *see also Days Inn Worldwide, Inc. v. Sonia Invs.*, 237 F.R.D. 395, 397–99 (N.D. Tex. 2006) (describing discovery deadline as typical deadline for "considering whether a motion to compel has been timely filed"). On the record before the Court, the Court cannot conclude which, if any, of the parties is primarily responsible for the delay in bringing this dispute to the Court's attention. Thus, the alleged delays do not tip the balance in either direction.

pages" (quotation omitted)); *Howard v. Cook Cnty. Sheriff's Off.*, No. 17 C 8146, 2020 WL 1445620, at *1 (N.D. Ill. Mar. 25, 2020) (recognizing production of over 90,000 documents in Title VII and Equal Protection Clause case).  None of the cases Secretary Scott cites to support his argument that Plaintiffs' document requests are too burdensome were anywhere near as complex and politically salient as this redistricting case, and each of the cases is distinguishable because no court outright capped the volume of relevant document productions.  *See, e.g.*, *Mitsubishi Heavy Inuds.*, 2011 WL 13201860, at *1, 3 (ordering narrower document request in patent case where initial document request yielded 66,000 documents); *City of Seattle v. ZyLAB N. Am., LLC*, No. C17-0790-JCC, 2017 WL 4418636, at *3–4 (denying motion to compel 50,000 documents in contract dispute where "relevance of the documents would be limited"); *Moore*, 287 F.R.D. at 185–87 (in gender discrimination case, allowing random sample of 2,500 out of 40,000 documents for protective coding protocol and rejecting production be capped at 40,000 documents).

The Court ORDERS Secretary Scott to produce (or provide a privilege log for) the documents associated with Plaintiffs' search strings targeted at information pertaining to Section 2's totality of the circumstances test.  Secretary Scott shall comply within fourteen days of this Order.  However, because trial in this case is rapidly approaching, the Court strongly encourages the parties to meet and confer before Secretary Scott produces the documents to see if they can narrow the search parameters.

### IV.  CONCLUSION

The Court **GRANTS IN PART and DENIES IN PART** the Abuabara and LULAC Plaintiffs' "Motion to Compel Defendant John Scott to Produce Documents" (ECF No. 410).

The Court **DENIES** the Motion insofar as Plaintiffs ask Secretary Scott to produce Category 1 Documents not identified by the Court as relevant to the *Gingles* preconditions. The Court **GRANTS IN PART** the Motion insofar as Plaintiffs ask Secretary Scott to produce Category 1 Documents relevant to the *Gingles* preconditions. The Court **ORDERS** Secretary Scott to, within **fourteen days** of this Order, produce (or provide a privilege log for) a random sample of 1,300 documents from the search strings the Court identified as relevant. In accordance with the limitations the Court establishes in this Order, Plaintiffs **MAY RENEW** their motion to compel as to the Category 1 Documents relevant to the *Gingles* preconditions.

The Court **GRANTS** the Motion insofar as it asks Secretary Scott to produce documents related to Section 2's totality of the circumstances test. The Court **ORDERS** Secretary Scott to produce the documents (or provide a privilege log) within **fourteen days** of this Order. The Court **ENCOURAGES** the parties to **MEET AND CONFER** in attempt to reduce the number of documents associated with Plaintiffs' requests.

**So ORDERED and SIGNED this 22nd day of August 2022.**

_____
DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE

*And on behalf of:*

| | | |
|---|---|---|
| **Jerry E. Smith** | | **Jeffrey V. Brown** |
| **United States Circuit Judge** | *-and-* | **United States District Judge** |
| **U.S. Court of Appeals, Fifth Circuit** | | **Southern District of Texas** |