UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **LEAGUE OF UNITED LATIN AMERICAN CITIZENS,** *et al.*, | § § § § | |
| *Plaintiffs*, | § § | |
| **EDDIE BERNICE JOHNSON,** *et al.*, | § § | EP-21-CV-00259-DCG-JES-JVB [Lead Case] |
| *Plaintiff-Intervenors*, | § § | & |
| v. | § § | All Consolidated Cases |
| **GREG ABBOTT,** *in his official capacity as Governor of the State of Texas*, *et al.*, | § § § § | |
| *Defendants*. | § | |

**ORDER**

The United States issued a deposition subpoena to Jeffrey Archer, the Executive Director of the Texas Legislative Council ("TLC"). ECF No. 485-1. Archer and TLC (the "Movants") ask the Court either to quash the deposition subpoena or, in the alternative, to issue a protective order limiting the scope and length of the questioning. Mot., ECF No. 455. The Movants claim that the deposition will seek information protected by both attorney-client and legislative privilege and will be unduly burdensome. *Id.*; *see also* Reply, ECF No. 507. The United States opposes the motion. Opp., ECF No. 485. For the following reasons, both the motion to quash and the motion seeking a protective order are DENIED.

**I.    BACKGROUND**

TLC is a nonpartisan state agency that, among other things, assists the Texas legislature with redistricting. Archer Decl., ECF No. 455-1 ¶¶ 1, 6–7. A dedicated division of TLC provides data, research, assistance, and technology to legislators during the redistricting process.

*Id.* ¶ 7; Mot. at 2.  TLC also manages RedAppl, the software it designed to help legislators map the state.  Mot. at 2.

Jeffrey Archer has worked for TLC for nearly forty years.  Archer Decl. ¶ 2.  During those decades of service, he oversaw and directed agency staff as they assisted the Texas legislature in creating state election maps.  *Id.* ¶¶ 7–10.  He also provided legal analysis to legislators regarding redistricting law.  *Id.* ¶ 10.  Given that involvement, Archer has proved to be a popular target of discovery—he was deposed in each of the last three redistricting cycles.  *Id.* ¶ 9.  Though Archer claims his advisory role was more limited during the most recent redistricting, his own affidavit indicates that he remained involved in the redistricting process.  *See id.* ¶¶ 10–13. He spoke with individual legislators and their staff in 2021 about redistricting law and the technical aspects of RedAppl; he also had "extensive conversations" with Texas legislators regarding "technical and administrative aspects of proposing and moving redistricting legislation."  *Id.* ¶¶ 10–12.  He also has the unique perspective of having witnessed both the redistricting at issue in this case and the prior redistricting cycles.  *See id.* ¶¶ 10–12.

As part of this consolidated litigation, the United States served Archer with a subpoena to testify at a deposition under Federal Rule of Civil Procedure 45.  ECF No. 455-1.  The goals of the deposition are somewhat disputed.  Based on their meet and confer, the Movants claim that the United States seeks information regarding (1) the RedAppl redistricting application, (2) Archer's involvement in the 2021 redistricting process, and (3) what "is or isn't normal" for redistricting in the state.  Mot. at 5–6.  The United States counters that its aims are slightly broader.  Opp. at 4, 7.  It alleges that Archer can also provide relevant testimony on TLC's role in the 2021 redistricting, how that role compared to prior redistricting cycles, and what guidance TLC gave regarding Voting Rights Act compliance.  *Id.* at 9.  It has also proffered that Archer

may have relevant information about the legislature's choice to hire outside counsel. *Id.* at 1.

The parties met and conferred regarding the terms of the deposition, and the United States offered to limit Archer's deposition to a half day. Opp. at 2. After the parties failed to agree to that restriction, Archer and TLC moved to quash the deposition subpoena or limit the questioning. *Id.*; *see also* Mot. at 5–6. The United States opposed the motion. Opp. at 1.

## II.   DISCUSSION

### A.   Motion to Quash

Prohibiting a deposition *ex ante* is an abnormal remedy. *See Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979). Generally, parties may seek all relevant and non-privileged information through discovery that is proportional to the needs of the case. FED. R. CIV. P. 26(b)(1). They may do so by deposing non-parties. FED. R. CIV. P. 45(c). While courts must quash a deposition subpoena if it requires the disclosure of privileged materials or if it would place an "undue burden" on the deponent, FED. R. CIV. P. 45(d)(3)(A)(iii)–(iv), parties should be given wide bandwidth to conduct depositions, as "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507–08 (1947). In this Circuit, "[i]t is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error." *Salter*, 593 F.2d at 651. Therefore, a party seeking to quash a deposition subpoena bears a "heavy burden." *Bucher v. Richardson Hosp. Auth.*, 160 F.R.D. 88, 92 (N.D. Tex. 1994). It must show a "particular and compelling need for such an order"—"[c]onclusory assertions of injury are insufficient." *Id.*

Here, the Movants cannot carry that burden. Neither assertions of privilege nor the alleged burden on Archer justifies the motion to quash.

### *1. Privilege*

The Movants first assert that all of Archer's relevant communications are protected by legislative and attorney-client privilege. Mot. at 8. They claim that TLC is "afforded legislative privilege protection" under state law as a legislative agency, and this prevents the disclosure of communications relating directly to legislative activities. Mot. at 4–5 (citing Tex. Gov't Code §§ 306.008, 323.017). Meanwhile, as Archer is himself an attorney, any guidance he gave to legislators relevant to the claims in this lawsuit is supposedly protected by the double layer of attorney-client and legislative privileges. Mot. at 6–8.

But the contentions about legislative privilege are not meaningfully different from ones that this Court has already rejected.[1] Whether a communication is privileged is fact-specific and depends on the nature of the statement and the context in which it was made. *League of United Latin Am. Citizens v. Abbott*, No. 21-cv-00259, 2022 WL 1570858, at *1 (W.D. Tex. May 18, 2022) (three-judge court) ("*LULAC*"). In a deposition, whether a query implicates privileged communications "depends on the question being asked." *Id.* Without knowing the United States' deposition questions or the information those questions will probe, this court is ill-positioned to judge whether the privilege attaches. What's more, legislative privilege is not absolute. *Perez v. Perry*, No. SA-11-cv-360-OLG, 2014 WL 106927, at *2 (W.D. Tex. Jan. 8, 2014). Even where it applies, it "must be strictly construed," *Jefferson Cmty. Health Care Centers, Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 624 (5th Cir. 2017) (quotation omitted), and requires careful interest balancing to determine whether the privilege "precludes disclosure,"

---

[1] State legislators previously moved to quash deposition subpoenas on the grounds of legislative privilege, *see* ECF Nos. 259, 278, and this Court was clear that it could not adjudge privilege claims in the absence of actual deposition questions and denied the motion, *see* ECF No. 282. Additional Texas House Members made a similar request, *see* ECF No. 333, and again this court rejected it, ECF No. 340. The House Parliamentarian also tried that reasoning, *see* ECF No. 341, and the result was the same, *see* ECF No. 409.

*Perez*, 2014 WL 106927, at *2.  Without knowing the specifics of the United States' questioning, that calculus is nearly impossible.

The same goes for the attorney-client privilege.  A statement enjoys attorney-client privilege if it was made to a lawyer, in confidence, and primarily for the purpose of seeking legal advice or services.  *See EEOC v. BDO USA, LLP*, 876 F.3d 690, 695 (5th Cir. 2017).  Other communications, including "advice on political, strategic, or policy issues," are "not . . . shielded from disclosure."  *In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998).  Additionally, the privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts."  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1985).  That is why a party asserting privilege must be specific.  *BDO USA, LLP*, 876 F.3d at 695.  "Blanket assertions of the attorney-client privilege" are "unacceptabl[e]."  *United States v. El Paso Co.*, 682 F.2d 530, 541 (5th Cir. 1982).  They must describe the specific communications to be revealed and why they are privileged.  *See BDO USA, LLP*, 876 F.3d at 697.  But the Movants do not provide a detailed list of communications.  Instead, they offer a list of hypotheticals—questions the government might ask, and categories of statements that might be privileged.  *See* Mot. at 7.  Those will not do.

There is already an established process for handling claims of privilege in a deposition.  If a question requires the disclosure of privileged information, Archer's counsel may object and instruct Archer not to answer the question, at which point this Court can more accurately assess the privilege dispute on an appropriate motion.  *See* 8A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2102, Westlaw (section updated May 23, 2022); *see also EEOC v. Greater Metroplex Interiors, Inc.*, No. 3-08-CV-1362, 2009 WL 412934, at *2 & n.1 (N.D. Tex. Feb. 17, 2009) (prescribing that approach for a claim of deliberate-process

- 5 -

privilege). For claims of legislative privilege, specifically, the Court has repeatedly required a special procedure for counsel to object and preserve their privilege claims while allowing questioning to continue. *See* ECF Nos. 282, 409. We continue to insist on this approach.

### 2. *Undue Burden*

In addition to their claims about privilege, the Movants contend that the deposition of Archer will be unduly burdensome. Mot. at 6 (quoting FED. R. CIV. P. 45(d)(3)(A)(iv) ("[T]he court . . . must quash . . . a subpoena that . . . subjects a person to undue burden.")). This Court weighs multiple factors to determine whether a subpoena poses an undue burden: "(1) [the] relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). How those factors balance out depends on the facts of each case. *See id.*

The Movants consolidate their objections into three reasons that the deposition would be too burdensome, but none is a reason to quash the deposition entirely.

First, Movants point out that Archer was already deposed regarding the RedAppl software in previous redistricting litigation, and the United States already has access to the application through the public record and prior document subpoenas. Mot. at 6. But even if the United States already has access to the RedAppl application and associated documents, Archer can provide context and answer questions about the data that the United States has. Opp. at 1. More importantly, Archer can testify to more than just RedAppl. The United States has claimed that it would like to ask Archer about the involvement of TLC in the 2021 redistricting, how that compared to prior cycles, and the legal guidance that TLC prepared for the Texas legislature.

Opp. at 1, 10.  This is relevant and discoverable information.[2]

Second, Movants insist that Archer "lacks superior or unique information related to this redistricting process," and that several other individuals could testify to the same information as can Archer.  Mot. at 6.  Just because there are other possible deponents, however, does not mean that Archer faces an undue burden.  Furthermore, Archer does indeed have a unique perspective.  His role as Executive Director of TLC during the 2021 redistricting gives him a bird's-eye view of the relationship between the legislature and the agency, and his forty-year tenure allows him to comment on the extent to which the Texas legislature deviated from standard practice in previous redistricting cycles.  *See* Archer Decl. ¶¶ 1–3, 8–13.  Moreover, he can testify to his own conversations with legislators and their staff, even if he claims that the discussions were "incidental."  *See id.* ¶ 10.

Movants' third and final burden position is that Archer does not have any authority to "provide definitive or binding . . . opinions on the legality of redistricting processes and decisions."  Mot. at 6.  But there is no clear basis for Movants' assertion that the United States seeks Archer's "opinions or impressions about this case."  *Compare* Mot. at 8, *with* Opp. at 10.  As the Court has already stated, the United States seeks alternative, discoverable information about the redistricting process based on Archer's personal knowledge.

In the end, the Motion boils down to a repeated refrain that deposing Archer will produce only irrelevant information.  Mot. at 7–8.  That is even more apparent in the Reply.  Movants claim that Archer and TLC had less to do with redistricting in 2021 than they did in previous years, and so nothing will be gained by asking Archer this time around.  *See id.* at 2–3.  But

---

[2] Just because Movants find TLC's relationship to the 2021 redistricting "obvious" does not make it so.  *See* Reply at 3.

relevancy in discovery is construed broadly. *See Crosby v. La. Health & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). Relevant information "encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The applicable legal standard for the United States' Voting Rights Act claim is the totality of the circumstances. Opp. at 9 (citing *Thornburg v. Gingles*, 478 U.S. 30, 46 (1986)). That is, on the merits, the Court must consider the entire process of redistricting in the Texas legislature. Thus, Archer's testimony regarding the standard redistricting procedure and any deviations from it in 2021 is relevant information to this lawsuit, as is the legal guidance that the legislature had access to during the process. *See* Opp. at 1. Archer himself has also acknowledged the vital role that TLC has played in redistricting in Texas. *See* Archer Decl. ¶¶ 1–7. Even if he were to testify only to the fact that TLC's role in 2021 was more limited than in past years, that would be potentially relevant information.

      Meanwhile, the burden on Archer is relatively minor. Since he is a non-party, this court "must be sensitive to the . . . compliance costs." *Leonard v. Martin*, 38 F.4th 481, 489 (5th Cir. 2022). But the United States has agreed to stipulate a 3-hour limit on Archer's deposition— indeed, that is the first component of the relief that the Movants requested in the alternative. Opp. at 3; Mot. at 10. Moreover, Archer is being deposed in his personal capacity, and has not been asked to produce or review documents. Opp. at 5 n.1. That contrasts with other cases where depositions were quashed because the deponent was expected to review or produce copious records in preparation for questioning. *See, e.g.*, *Leonard*, 38 F.4th at 490 (finding an undue burden where a non-party was required to spend an estimated sixty hours reviewing files in preparation for the deposition). Here, Archer can merely testify to his personal knowledge,

and the burden on him outside of the deposition is limited.[3]

Therefore, as with the legislators' previous motions to quash deposition subpoenas, the Court **DENIES** the motion and permits the United States to proceed with the deposition of Archer. The Court **ORDERS** the parties to comply with the following procedures:

(1) The parties shall proceed with the deposition of Jeffrey Archer. Archer must appear and testify even if it appears likely that he will invoke legislative or attorney-client privilege in response to certain questions.

(2) Jeffrey Archer may invoke legislative privilege in response to particular questions, but he must then answer the question in full. His response will be subject to the privilege.

(3) The portions of deposition transcripts containing questions and answers subject to legislative privilege shall be deemed to contain confidential information and shall therefore be subject to the "Consent Confidentiality and Protective Order" at ECF No. 202.

(4) If a party wishes to use any portions of deposition testimony that are subject to legislative privilege, that party must seal those portions and submit them to the Court for *in camera* review, along with a motion to compel.[4]

(5) Any such motion to compel shall be filed within seven days after the deposition. But given the proximity of trial, the Court encourages the parties to file earlier, if at all possible.

*See LULAC*, 2022 WL 1570858, at *2–3.

**In adopting this approach, the Court warns the parties that any public disclosure of information to which a privilege has been asserted may result in sanctions, including the**

---

[3] The Movants suggest that special caution is appropriate when deciding whether to allow the deposition of a party's lawyer. *See* Mot. at 7–8 (citing *Gates v. Texas Dep't of Fam. & Protective Servs.*, No. A-09-CV-018 LY, 2010 WL 11598033, at *2 (W.D. Tex. Oct. 7, 2020). But the United States correctly notes that *Gates* dealt with the special situation of a request to depose the opposing party's litigation counsel. *See id.* at *2; Opp. at 8–9. Here, although Archer is a lawyer, he is not involved as an attorney in this case, and the United States seeks to depose Archer as a "witness to the underlying facts." Opp. at 9. The ordinary balancing test applied by this Court is appropriate to resolve the motion.

[4] A motion to compel shall be filed for the purpose of asserting why information, to which a privilege objection has been raised, should be disclosed because it is not subject to the privilege, the privilege has been waived, or the privilege should not be enforced.

**striking of pleadings.  All counsel are ORDERED to spare no effort to ensure that no individual—whether that person be counsel, court reporter, videographer, witness, or any other person hearing or having access to information subject to privilege—disseminates information subject to privilege to any person not permitted to handle that information or in any manner (e.g., disclosure to media, posting on social media).**

Additionally, nothing in this Order should be construed as resolving any claim of legislative or attorney-client privilege.  The Court will be better positioned to decide such questions once there are specific questions and specific invocations of privilege.

### B. Motion for a Protective Order

Movants' alternative request for a protective order is based on essentially the same grounds as their motion to quash, and it fails for similar reasons.  To justify a protective order, the movant bears the burden to show "good cause and a specific need for protection." *Anzures v. Prologis Texas I LLC*, 300 F.R.D. 316, 317 (W.D. Tex. 2012).  "'Good cause' exists when justice requires the protection of 'a party or person from any annoyance, embarrassment, oppression, or undue burden or expense.'" *Bucher*, 160 F.R.D. at 92 (N.D. Tex. 1994) (quoting FED. R. CIV. P. 26(c)).  Though that bar is slightly lower than the "extraordinary circumstances" requirement to quash a deposition subpoena, *see Salter*, 593 F.2d at 651, the requirement is still stringent.  "[T]he federal courts have superimposed a somewhat demanding balancing of interests approach to the Rule." *Cazorla v. Koch Foods of Miss., LLC*, 838 F.3d 540, 555 (5th Cir. 2016) (quotation omitted) (alteration in original).  "The movant bears the burden of showing that a protective order is necessary, 'which contemplates a particular and specific demonstration of fact.'" *BDO USA*, 876 F.3d at 698.

The Movants have not made such a demonstration.  Their request for relief has four

components.  Their opening request is to limit Archer's deposition to three hours.  Mot. at 10.  But the United States has already stipulated to that limitation, Opp. at 3, so the only question is whether the additional three requests are necessary.  Movants' remaining requests are (1) that Archer not be asked about topics on which he was deposed in previous litigation, (2) that he not be asked for his legal opinions, and (3) that he not be asked about "privileged actions or communications."  Mot. at 10.  To justify those restrictions, Movants offer little.  Indeed, they support them with a single sentence of their Motion, asserting that "[l]imiting the scope . . . will protect Mr. Archer from the possibility of 'annoyance, embarrassment, . . . [and] undue burden'" without inconveniencing the United States.  *Id.* (quoting FED. R. CIV. P. 26(c)).  That is the kind of "conclusory statemen[t]" that does not satisfy the standard for a protective order.  *Cf. BDO USA*, 876 F.3d at 698.

       What's more, their requested relief would be unworkable.  Even if Archer was deposed about similar topics in other litigation, the facts on the ground might have changed such that the same question would produce a different answer this time around.  Movants' requested limitation would also invite debate during the deposition about what topics have already been covered and what questions have been asked and answered, prolonging the actual burden on Archer.  *See* Opp. at 4–5.  The same is true of the requested prohibition on seeking Archer's legal opinion.  Imposing that restriction would require in-deposition debate over what constitutes a legal opinion.  Archer's lawyers are free to object, in the deposition, to questions that elicit inadmissible testimony, but there are no clear grounds for a preexisting protective order.  Indeed, it is also not evident how the purported burden on Archer would be solved by those limitations.  Even with a protective order in place, Archer would still have to sit for the deposition and be subject to questioning.  It is just a matter of which questions he is asked once he is on the record.

And finally, to the extent that the Movants seek to avoid violations of attorney-client or legislative privilege, a protective order is not the proper solution. As discussed in the previous section, if Archer wishes to assert a privilege, he can do so in the deposition under the procedures in Rule 30 and the strictures of Section II of this order. *See* FED. R. CIV. P. 30(c)(2). Not only is a protective order unnecessary, but it would stymie the United States' legitimate interest in discovery. Because the United States does not know precisely which communications Archer will claim are privileged, a protective order may prevent it from asking certain legitimate questions out of fear of getting tangled up in additional litigation over the protective order. *See* Opp. at 6. The United States may also wish to contest claims of privilege, in which case it needs to be able to ask follow-up questions to probe whether the requested information is really subject to privilege. *Id.*

Movants have demonstrated neither an inappropriate burden on Archer nor that ordinary deposition procedures are insufficient to protect privileged information. A protective order is not warranted.

### III.   CONCLUSION

The Court **DENIES** the motion by the Texas Legislative Council and Jeffrey Archer to quash the deposition subpoena and **DENIES** the alternative motion for a protective order. The United States **MAY DEPOSE** Jeffrey Archer in accordance with the procedures outlined in **Section II** of this order.

Archer's deposition was original scheduled for July 29, 2022, which has now passed. Instead, the Court **ORDERS** the parties to agree on a mutually convenient date to proceed with the deposition. Because of the proximity of the trial, the deposition **SHALL NOT** occur later than 14 days after the issuance of this Order.

**So ORDERED and SIGNED this 23rd day of August 2022.**

_____
**DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE**

*And on behalf of:*

| | | |
|---|---|---|
| **Jerry E. Smith** | | **Jeffrey V. Brown** |
| **United States Circuit Judge** | *-and-* | **United States District Judge** |
| **U.S. Court of Appeals, Fifth Circuit** | | **Southern District of Texas** |