IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| THE LEAGUE OF UNITED LATIN AMERICAN CITIZENS (LULAC), et al.,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>GREG ABBOTT, et al.,<br><br>　　　　　　Defendants. | Civil Action No. 3:21-cv-259 (DCG-JES-JVB)<br>(consolidated cases) |

**UNITED STATES' REPLY IN SUPPORT OF MOTION TO ENFORCE
ORDER COMPELLING THE PRODUCTION OF OAG
DOCUMENTS FROM THE STATE OF TEXAS**

It is undisputed that Texas has refused to produce 812 responsive OAG documents for over seven months, including over three months after this Court ordered such production.  In its response to the United States' motion, the State offers a mixture of reasons to try to justify withholding these documents.  But in doing so, it conflates the asserted privileges and protections and makes arguments that fly in the face of settled law, including in this very case.  Equally uncompelling is Texas's suggestion that an adverse ruling would chill legislators from obtaining legal counsel in future redistricting, as the United States here seeks only nonlegal documents or portions of documents kept or shared with an executive agency.  This Court should not grant its imprimatur on the State's discovery recalcitrance by allowing it to continue withholding these highly relevant, nonprivileged, and unprotected documents.  Now roughly a month before trial, the appropriate remedy is to require Texas to produce the Expert Documents to the United States and provide the Interbranch Documents to the Court for *in-camera* review within seven days.  Nothing in the State's response changes that result.

## I.     The Attorney-Client Privilege Does Not Apply.

Texas's response leaves two principles of the attorney-client privilege undisturbed.  First, the privilege does not apply to factual information, even where that information is communicated between attorney and client.  *See* U.S. Mot. 5, ECF No. 527.  Second, the privilege does not extend to documents never shared with a client.  *See id.* at 5-6.  Accordingly, the privilege applies neither to the Expert Documents, nor to the entirety of the Interbranch Documents.

As an initial matter, even the State concedes that "'underlying facts' are not protected by the attorney-client privilege."  Texas Resp. 3, ECF No. 549.  Indeed, it is well established that facts must be disclosed even where incorporated into attorney-client communications.  *See* Texas Resp. 3; *see also Thurmond v. Compaq Computer Corp.*, 198 F.R.D. 475, 481 (E.D. Tex. 2000)

1

(collecting cases holding the same). But here, Texas argues that it is "not trying to hide facts that exist independently" and instead simply "withholding materials that would never have existed but for OAG's staff creating them at [an] attorney's behest in service of the client's legal representation." Texas Resp. 4.

The core issue with the State's argument is that it moves the goalposts, seemingly confusing the attorney-client privilege and work-product doctrine. In determining whether a given document here is subject to attorney-client privilege, it is immaterial *how* the document was created; that matters only in assessing whether work-product protections apply. *Compare EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017) (for the attorney-client privilege, asking only whether confidential, primarily legal communications occurred) *with United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982) (for the work-product doctrine, asking whether a document was created in anticipation of litigation). The relevant inquiry for attorney-client privilege is *what* a document contains. *See Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981) (explaining that factual information is not protected by the attorney-client privilege).[1]

Here, there is no dispute that the Expert Documents reflect purely factual information. Even Mr. Hilton admits as much. In his declaration, he specifies that he "used these [documents] solely to develop [his] legal analysis." Hilton Decl. ¶ 5; *see id.* at ¶ 7 (stating that Mr. Hilton had in-house OAG experts produce statistical analyses "so that [he] could form mental impressions, form legal opinions and conclusions, [and] formulate legal strategy"). By Mr. Hilton's own words, the Expert Documents on their own contain no legal information; he simply used those

---

[1] Relatedly, Texas is also incorrect in arguing that documents are protected by the attorney-client privilege where "they reveal the attorneys' mental processes in evaluating [oral] communications" providing legal advice. Texas Resp. 5. That line from *Upjohn* concerns the work-product doctrine, not attorney-client privilege. *See* 449 U.S. at 401. And even putting the State's blurring of the concepts aside, neither applies to these documents. *See* U.S. Mot. 5-10.

documents to later develop legal opinions. Indeed, the Expert Documents are purely factual statistical analyses and draft maps prepared by nonlawyers. That some information in these documents may have been later used to develop and furnish legal advice does not alter their fundamentally factual nature. Accordingly, these documents are not privileged. *See* U.S. Mot. 5; *Upjohn*, 449 U.S. at 395-96 ("A fact is one thing and a communication concerning that fact is an entirely different.").[2]

Moreover, it is of no moment that Mr. Hilton subjectively believed that the factual work conducted by OAG staff would be protected by the attorney-client privilege. At length, Texas details efforts Mr. Hilton undertook to claim privilege over these documents in this litigation. *See* Texas Resp. 6-7. But similar statistical analyses were subject to production during the last decade's redistricting litigation not only because they had been shared widely, but also because they are factual. *See* U.S. Mot. 5 n.2.[3]

## II. The Work-Product Doctrine Does Not Apply.

Also unchanged by Texas's response is the axiom that the work-product doctrine only applies where "the *primary* motivating purpose behind the creation of [a] document was to aid in possible future litigation." Docs. Order 23 (emphasis added) (quoting *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981); *see* Texas Resp. 7 (conceding that "litigation was not anticipated if [a] document 'would have been created regardless of whether the litigation was

---

[2] The same is true for the Interbranch Documents, which consist of communications regarding talking points, unspecified analyses, and draft maps. It is unlikely that the entirety of these documents concerns the provision of legal advice such that the documents cannot be redacted. *See* OOG Order 10-11, ECF No. 526; Docs. Order 16, ECF No. 467.

[3] In discussing *Hickman v. Taylor*, 329 U.S. 495 (1947), the State agrees that facts that remain hidden in an attorney's file must be produced. *See* Texas Resp. 6. Texas, however, disagrees that *Hickman* stands for the principle that a document unshared with a client is not a communication. *See id.* But as the cases cited in the United States' motion convey, the attorney-client privilege does not apply to documents not shared with a client. *See* U.S. Mot. 6 n.3.

also expected to ensue'").

At core, the work-product doctrine does not apply to the challenged documents because Texas has not satisfied its burden. The State claims that Mr. Hilton directed in-house OAG experts to create the Expert Documents because he had a "subjective anticipation of litigation." Texas Resp. 8; *see* Hilton Decl. ¶ 8. But that is beside the point. The relevant inquiry is whether aiding litigation was "the primary motivating purpose" behind creating those documents. *Davis*, 636 F.2d at 1040. Nowhere does Texas say that. That is for good reason, because the State's revised privilege log already admitted that the documents were created "in furtherance of Senator Huffman's legislative duties to formulate, consider, and pass redistricting legislation." OAG Rev. Log 2-200, ECF No. 527-4; *see* Hilton Decl. ¶ 7 (conceding that the "documents exist only because Senator Huffman and her staff sought legal advice").

Absent a showing that the documents were created *primarily* because of litigation, Texas has not carried its burden and the challenged documents are not protected by the work-product doctrine. *See Soto v. Liberty Mut. Fire Ins. Co.*, No. 06-cv-819, 2007 WL 9710181, at *3 (W.D. Tex. May 23, 2007) (noting that, "even if [a] party is aware that [a] document may also be useful in the event of litigation," the existence of another purpose negates work-product protection).[4]

### III. The Legislative Privilege Does Not Apply or Should Yield.

Finally, Texas concedes that the legislative privilege does not apply to purely factual information. *See* Texas Resp. 10; U.S. Mot. 7-8. Still, the State again tries to recharacterize the

---

[4] For this reason, Texas's attempt to distinguish *Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323 (E.D. Va. 2015) (three-judge court), is also unavailing. *See* Texas Resp. 8-9. Indeed, the decision in *Bethune-Hill* did not turn on whether the party asserting work-product protection was a lawyer or consultant. *See Bethune-Hill,* 114 F. Supp. 3d at 348. Nor did this Court reinterpret the case that way in previously ruling that similar documents must be produced by another executive agency. *See* OOG Order 11-12.

4

Expert Documents as being nonfactual because they "would have never have existed in the first place but for Mr. Hilton's representation of Senator Huffman." Texas Resp. 10. But *why* the statistical analyses and draft maps were created cannot make the documents nonfactual. Instead, these documents, which were created by nonlawyers, are definitionally factual. *See* Section I, *supra*. So legislative privilege does not apply to the Expert Documents.[5]

Even if the legislative privilege did apply to these documents, it should yield with respect to documents involving the Congressional or House plans. *See* U.S. Mot. 8-9. In response, the State claims that ordering production of these documents would incentivize legislators to "simply not seek legal advice moving forward." Texas Resp. 10. But that concern is misplaced, as the United States here only seeks factual documents prepared and kept by an executive agency—not legal documents maintained within the legislative branch. Moreover, per the Texas Legislative Council's instructions to legislators, redistricting plans must comply with the Voting Rights Act ("VRA"). *See* Texas Legislative Council, *Guide to 2021 Redistricting*, https://perma.cc/T9D4-F5T4. Therefore, any suggestion that legislators may not ensure compliance with the VRA by refusing to seek legal advice rings hollow.

For these reasons, the Court should grant the United States' motion.[6]

---

[5] The legislative privilege also does not apply to these documents because they were maintained exclusively within OAG, an executive agency. U.S. Mot. 7. Texas tries to recharacterize Mr. Hilton as "not an 'outsider'" through his representation of Senator Huffman. Texas Resp. 10. But the State cites no authority in support of that novel view, which would turn the privilege on its head. *See La Union Del Pueblo Entero v. Abbott,* No. 21-cv-844, 2022 WL 1667687, at *4 (W.D. Tex. May 25, 2022) ("Expanding the [legislative] privilege to protect state legislators' communications with the executive branch is inconsistent with the purposes of the privilege: to protect the legislative branch from 'intimidation' by the executive and judicial branches.").

[6] Texas does not address the United States' arguments regarding the deficiencies of the revised privilege log. *See* U.S. Mot. 9-10. Accordingly, the State has waived any rebuttal and the Interbranch Documents must be provided for *in-camera* inspection. *Cf. Carter v. BPCL Mgmt., LLC*, No. 19-cv-60887, 2021 WL 7502560, at *8 (S.D. Fla. Sept. 28, 2021).

Dated: August 24, 2022                         JOHNATHAN SMITH
                                               Acting Principal Deputy Assistant Attorney General
                                               Civil Rights Division

                                               REBECCA B. BOND
                                               Acting Deputy Assistant Attorney General
                                               Civil Rights Division

                                               */s/ Jaywin Singh Malhi*
                                               T. CHRISTIAN HERREN, JR.
                                               TIMOTHY F. MELLETT
                                               DANIEL J. FREEMAN
                                               JANIE ALLISON (JAYE) SITTON
                                               MICHELLE RUPP
                                               JACKI L. ANDERSON
                                               JASMIN LOTT
                                               HOLLY F.B. BERLIN
                                               JAYWIN SINGH MALHI
                                               L. BRADY BENDER
                                               Attorneys, Voting Section
                                               Civil Rights Division
                                               U.S. Department of Justice
                                               950 Pennsylvania Avenue NW
                                               Washington, D.C. 20530
                                               (800) 253-3931
                                               jaywin.malhi@usdoj.gov

**CERTIFICATE OF SERVICE**

   I hereby certify that, on August 24, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to counsel of record.

                */s/ Jaywin Singh Malhi*
                Jaywin Singh Malhi
                Voting Section
                Civil Rights Division
                U.S. Department of Justice
                950 Pennsylvania Ave, NW
                Washington, DC 20530
                (800) 253-3931
                jaywin.malhi@usdoj.gov