IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.* § § § *Plaintiffs*, § v. § § GREG ABBOTT, *et al.*, § § *Defendants*. § | | Case No. 3:21-cv-00259 [Lead Case] |

## DECLARATION OF CHRISTOPHER HILTON

I, Christopher Hilton, am over the age of eighteen and am fully competent to make this declaration. I submit this declaration in support of Defendant State of Texas' Response in Opposition to the LULAC Plaintiffs' Motion to Compel Production of Documents by the State of Texas (ECF No. 548). I have personal knowledge of the facts stated herein and declare the following to be true and correct:

1. I am the Division Chief of the General Litigation Division of the Office of the Attorney General of Texas. I have served in that capacity since March 2022. Prior to that, I served as the Deputy Division Chief of the General Litigation Division.

2. As Senator Huffman has discussed publicly, I was responsible for advising Senator Joan Huffman and her staff on legal compliance matters regarding draft redistricting legislation during the 87th Legislature's Third Special Session in 2021. I provided legal advice and counsel to Senator Huffman, the Chair of the Senate Special Committee on Redistricting, and her staff throughout the redistricting process. Her staff included Anna Mackin, an attorney serving as Special Counsel to the Senate Redistricting Committee. I understand that, in that role, Ms. Mackin provided legal advice to Senator Huffman, the Chair of the Senate Redistricting

Committee, and my conversations with Ms. Mackin regarding redistricting were for the sole purpose of providing legal advice to Senator Huffman.

3. An attorney–client relationship exists between myself and Senator Huffman and her staff. Senator Huffman and members of her staff sought my advice on numerous legal matters with the understanding and expectation that their communications and my legal advice were confidential and would be protected from disclosure by the attorney–client privilege, the attorney work-product doctrine, and the legislative privilege. I did not provide legal advice to any other Senator or to a member of any other Senator's staff, or to any member of the House of Representatives or House staffer during the redistricting process.

4. I worked with internal consulting experts employed by the Office of the Attorney General in the Legal Technical Support Division to provide legal advice regarding redistricting to Senator Huffman and her staff during the Third Special Session. These in-house consulting experts include the Division Chief, Dr. David Falk, and Data Analysts Dr. Joshua Zahn and Todd Giberson. These experts are employees of my "law firm" and at all times acted as my agents in developing legal analysis and providing legal advice.

5. To facilitate my rendition of legal advice to Senator Huffman and her staff, I directed Dr. Falk, Dr. Zahn, and Mr. Giberson to prepare statistical analyses of redistricting data and numerous redistricting plans throughout the entire Third Special Session. I used these analyses solely to develop my legal analysis and assist me in providing legal advice to Senator Huffman and her staff regarding the complicated legal compliance matters that arise in the process of redistricting. Their work product is not a mere recitation of facts but rather a proprietary analysis that is inextricably intertwined with the legal advice I provided and reflects my thoughts and mental impressions.

6. I communicated directly with Dr. Falk, Dr. Zahn, and Mr. Giberson to request these statistical analyses. They communicated directly with me concerning the reports they produced. The Office of the Attorney General did not share these documents with Senator Huffman, Senator Huffman's staff, any map drawers, any legislator other than Senator Huffman, any experts retained in this case, or any person outside of the Office of the Attorney General. If any person had done so—which to my knowledge they did not—it would have been in direct contravention of my instructions. Within the Office of the Attorney General, the documents have only been provided to the members of the litigation team in these consolidated cases.

7. I have reviewed the Office of the Attorney General's amended privilege log, which was served upon the United States on August 2, 2022. I have also reviewed the documents associated with each entry in the amended privilege log. Numerous entries in the amended privilege log reflect the statistical analyses I directed Dr. Falk, Dr. Zahn, and Mr. Giberson to prepare concerning the proposed and benchmark redistricting plans. Dr. Falk, Dr. Zahn, and Mr. Giberson provided each of these analyses to me during the 87th Legislature's Third Special Session in 2021. I directed Dr. Falk, Dr. Zahn, and Mr. Giberson to produce these analyses so that I could form mental impressions, form legal opinions and conclusions, formulate legal strategy, and render legal advice to Senator Huffman and her staff in anticipation of litigation connected to the redistricting plans. These documents exist only because Senator Huffman and her staff sought legal advice from the Office of the Attorney General. Producing these documents would reveal information about the specific legal advice Senator Huffman and her staff sought, the contents of my communications with Senator Huffman and her staff, and my thoughts and mental impressions formed in anticipation of litigation and the bases therefor.

8. Furthermore, I directed Dr. Falk, Dr. Zahn, and Mr. Giberson to produce these analyses because of the certainty of litigation connected to the redistricting plans. I was also concerned

that in the last decade's redistricting, a three-judge panel in the District of Columbia federal district court had ordered OAG to produce internal documents. Expecting a lawsuit in which plaintiffs would seek internal OAG documents, I took the above-described confidentiality precautions to ensure that OAG documents would not be subject to production. Moreover, I was cognizant of the fact that litigation *had already begun* regarding redistricting at the time I directed Dr. Falk, Dr. Zahn, and Mr. Giberson to perform the analyses. The first redistricting lawsuit was filed on September 1, 2021 in the United States District Court for the Western District of Texas, and remained pending throughout the entire Third Special Session. *See* Complaint, ECF No. 1, *Gutierrez et al., v. Abbott, et al.*, Civil Action No. 1:21-CV-00769 (W.D. Tex. September 1, 2021). Each document in the amended privilege log categorized as protected by the attorney work product doctrine was prepared so that I could appropriately counsel my client in anticipation of additional litigation challenging redistricting legislation—an anticipation that ultimately proved correct.

9. The documents described in the amended privilege log also reflect the legal advice I provided to Senator Huffman or her staff regarding draft talking points and communications about requests for legal advice. These documents reflect information shared with me confidentially for the purpose of receiving confidential legal advice from the Office of the Attorney General. Moreover, any draft documents I reviewed cannot be produced without revealing the substance of my legal advice and my communications with my client. Any comments, "redlines," additions, edits, or suggestions contained in those documents—and equally as important, any lack thereof—reflect my legal analysis and my legal advice to Senator Huffman. It would be impossible to produce any portion of those documents without revealing the substance of my legal advice to my client or my thoughts and mental impressions regarding pending and impending litigation.

10. Senator Huffman relied on my legal advice and counsel regarding draft redistricting legislation and legal compliance matters related to redistricting to inform her mental impressions, her opinions, and her decision-making regarding redistricting legislation throughout the course of the Third Special Session.

11. To the best of my knowledge, the Office of the Attorney General has preserved all applicable privileges protecting each withheld document from disclosure. I am unaware of any circumstances that would constitute a waiver of the attorney–client privilege, the attorney work-product doctrine, or the legislative privilege with regard to the documents referenced in the amended privilege log. Furthermore, my client has instructed me to assert and preserve the attorney–client privilege, the attorney work-product privilege, the legislative privilege, and all other applicable privileges.

12. My personal opinion is that, were my privileged documents disclosed, it would irrevocably undermine the trust that my clients place in the Office of the Attorney General. My colleagues and I would no longer be free to conduct any legal analysis and develop the advice that we give to our clients without fear that these private deliberations may one day become public. That would hamper my ability to provide effective counsel. And more than that, I expect that going forward my clients would simply stop seeking legal advice.

I declare under penalty of perjury under the laws of the United States of America that to the best of my personal knowledge, the foregoing is true and correct.

Executed on August 24, 2022, in Austin, Texas.

*/s/ Christopher D. Hilton*

CHRISTOPHER HILTON