IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>GREG ABBOTT, in his official capacity as Governor of the State of Texas, *et al.*,<br><br>*Defendants*. | CIVIL ACTION NO.<br>3:21-cv-00259-DCG-JES-JVB<br>[Consolidated Action: Lead Case] |

**LULAC PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY THE STATE OF TEXAS**

Throughout its opposition to LULAC Plaintiffs' motion to compel, the State emphasizes that the Office of the Attorney General ("OAG")—an executive agency—"shared no material prepared at attorney direction with anyone." Dkt. 561 at 1-2; *see also* Dkt. 548-12 (listing 793 documents shared with no person "outside of the Office of the Attorney General, not even the client"). In other words, nearly 800 documents were never shared with the legislative branch, meaning they did not reflect communications between attorneys and clients and could not reflect a legislator's mental impression or judgment; at most, OAG conveyed some information in those documents to Senator Huffman to assist in the enactment of legislation. Accordingly, neither the attorney-client privilege, nor the legislative privilege, nor the work product doctrine applies to those documents, and those and the remaining documents that LULAC Plaintiffs seek must be disclosed. *See* Dkt. 548-1 (Exhibit A, Documents Sought by LULAC Plaintiffs).

**I.  The Challenged Documents Relate to Assisting the Texas Legislature with Legislation and Therefore Do Not Qualify for the Work Product Doctrine.**

1

The State repeatedly acknowledges that the documents in its privilege log (Exhibit A of LULAC Plaintiffs' opening brief) relate to assisting Senator Huffman with redistricting legislation. *See, e.g.*, Dkt. 561 ¶ 10 (stating that Senator Huffman relied on advice to inform "her decision-making regarding redistricting throughout the course of the Third Special Session"); *see also* Dkt. 548-1.

The Court has already concluded that the work product doctrine does not apply in these circumstances. "[D]ocuments created in the ordinary course of drafting legislation—including redistricting legislation—are not covered by the work product doctrine, even when 'the Legislature may have reasonably believed that litigation would result from its redistricting efforts.'" Dkt. 530 at 9-10 (quoting *Baldus v. Brennan*, Nos. 11-CV-562 JPS-DPW-RMD, 11-CV-1011 JPS-DPW-RMD, 2011 WL 6385645, at *2 (E.D. Wis. Dec. 20, 2011)). "That is 'because the legislature could *always* have a reasonable belief that *any* of its enactments would result in litigation.'" *Id.* at 10 (quoting *Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 348 (E.D. Va. 2015)).[1] Accordingly, "[t]he work product doctrine is inapplicable" here because OAG "created the documents" LULAC Plaintiffs seek "while assisting the Texas Legislature with redistricting legislation." Dkt. 530 at 10; *see also* Dkt. 526 at 12.

Notwithstanding the Court's unambiguous ruling, the State emphasizes OAG's "subjective anticipation of litigation," but that is immaterial. Dkt. 561 at 11. As the Court

---

[1] In its opposition, the State erroneously attempts to distinguish the facts here from cases that the Court has cited when concluding that the work product doctrine does not apply to documents related to the enactment of legislation, emphasizing that, here, Mr. Hilton is a lawyer who is purportedly providing legal advice. Dkt 561 at 10-11. As an initial matter, the State ignores that the Court provided for no such distinction to its holding, *see* Dkt. 530 at 9-10, including when it concluded that the work product doctrine did not apply to documents created by attorneys in the Office of the Governor related to calling the third special session, *see* Dkt. 526 at 11-12. Moreover, as the United States notes in its reply in support of its motion to compel documents from the State, *see* Dkt. 560, the analysis in *Baldus* did not turn on the identity of the individual asserting the work product doctrine—instead, and consistent with the Court's approach in the instant suit, those courts emphasized that the work product doctrine did not apply because the documents at issue related to the enactment of legislation. *See* 2011 WL 6385645, at *2.

acknowledged, the Texas Legislature could always have a reasonable belief that legislation could result in litigation, but that belief does not protect documents created to assist the Legislature with redistricting legislation under the work product doctrine. *See* Dkt. 530 at 10. Moreover, the Court has refused to conclude otherwise even when presented with a declaration emphasizing that work was done "in anticipation of litigation." *Id.* at 10. The work product doctrine does not apply to the documents at issue.

## II. The Attorney-Client Privilege Does Not Apply to Documents Never Shared Outside of OAG or Documents that Do Not Contain Bona Fide Legal Advice.

The State does not dispute that the attorney-client privilege requires a communication between an attorney (or her agent) and a client, or that "'underlying facts' are not protected by the attorney-client privilege." *See* Dkt. 561 at 4, 6. But the State attempts to characterize incorrectly the nearly 800 documents that were never provided to clients as communications covered by the privilege, *see* Dkt. 548-12, asserting that these documents "form[ed] the basis of and reflect[] an oral communication of" advice to a client, *see* Dkt. 561 at 8.

The Court should reject the State's flawed interpretation of the privilege. As the Supreme Court has emphasized, "[a] fact is one thing and a communication concerning that fact is an entirely different thing," *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) (quotation omitted), and the attorney-client privilege protects only *communications*. *See id.* Documents that are never shared with a client—even if they inform an attorney's legal analysis—are by definition not communications. Indeed, in each of the cases on which the State relies for its flawed interpretation of the attorney-client privilege, the documents themselves were shared with a client or memorialized conversations that had occurred with a client. *See* Dkt. 561 at 8.

As a last-ditch effort, the State relies on *Upjohn* to assert that "notes and memoranda" that "do not reveal communications" but "reveal the attorneys' mental processes in evaluating

3

the communications" are covered by the privilege. *Id.* at 8 (quoting *Upjohn*, 449 U.S. at 401). But the State omits the Court's statement that such documents "are *work product* based on oral statements." *Upjohn*, 449 U.S. at 401 (emphasis added). The State cannot impermissibly expand the scope of the attorney-client privilege by conflating the privilege with the work product doctrine. *See BDO*, 876 F.3d at 695 (emphasizing privilege must be "interpreted narrowly so as to apply only where necessary to achieve its purpose" (cleaned up)).[2]

Even if the Court concludes that these documents constitute communications, the underlying factual information in those documents must still be disclosed. "Facts within the client's knowledge are not protected by the attorney-client privilege, 'even if the client learned those facts through communications with counsel.'" Dkt. 530 at 8 (quoting *LUPE*, 2022 WL 1667687, at *3); *see also Ohio A. Philip Randolph Inst. v. Smith*, No. 1:18cv357, 2018 WL 6591622, at *3 (S.D. Ohio Dec. 15, 2018) (ordering production of "facts, data, and maps"). The documents never shared outside of OAG—as well as other documents containing underlying factual information—must be disclosed. *See* Dkts. 548-12 (Exhibit K), 548-14 (Exhibit M), 548-15 (Exhibit N), and 548-16 (Exhibit O).

Regarding all the documents LULAC Plaintiffs seek, the State fails to address how the documents do not concern primarily "advice on political, strategic, or policy issues" that "are not . . . shielded from disclosure." Dkt. 557 (quotation omitted). At bottom, the information in these documents was used "in furtherance of [Senator Huffman's] legislative duties" regarding the challenged redistricting plans. *See* Dkt. 561 at 14; *see also* Dkt 561-1 ¶ 10. Accordingly, to the extent that the documents are not for the primary purpose of legal advice, the attorney-client privilege does not apply. *See* Dkts. 557 at 5 and 530 at 8.

---

[2] As discussed above, the work product doctrine does not apply here. *See supra*, Section I.

Finally, the State has failed to show a common legal interest between OAG or Senator Huffman and the Texas Legislative Council. *See LUPE*, 2022 WL 1667687, at *7 (holding that "State Legislators cannot assert . . . common-interest doctrine" in suit challenging legislation). As such, the State has conceded that those documents are not privileged. *See* Dkt. 548-20.

### III. The Legislative Privilege Does Not Bar Disclosure.

*A. Post-Enactment Documents are Not Subject to the Legislative Privilege.*

The State fails to address LULAC Plaintiffs' argument that documents created after the Texas Legislature sent the challenged plans to the Governor fall outside the scope of the legislative privilege. *See* Dkt. 548 at 9 (citing Exhibit P, Dkt. 548-17). Thus, the State has conceded that issue.

*B. OAG is an Executive Agency that Cannot Assert the Legislative Privilege, and the Privilege has been Waived Over Any Documents the Legislature Shared with OAG.*

The State provides no authority or basis for rejecting a holding reached consistently in this Circuit: "[n]either the Governor, nor the Secretary of State or *the State of Texas* has standing to assert the legislative privilege *on behalf of any legislator or staff member*." Dkt. 526 at 2 (emphasis added) (quoting *Perez v. Perry*, No. SA-11-cv-360, 2014 WL 106927, at *1 (W.D. Tex. Jan. 8, 2014)).[3] Nevertheless, in its opposition, the State states simply that it seeks to "assert[] the legislative privilege on [Senator Huffman's] behalf." Dkt. 561 at 13. As a result, and as courts in this Circuit have consistently held, the State cannot assert the legislative privilege here, whether on its own or Senator Huffman's behalf.[4]

---

[3] *See also La Union Del Pueblo Entero (LUPE) v. Abbott*, No. SA-21-CV-00844-XR, 2022 WL 1667687, at *2 (W.D. Tex. May 25, 2022), *appeal docketed sub nom. LULAC v. Hughes*, No. 22-50435 (5th Cir. May 27, 2022); *Gilby v. Hughes*, 471 F. Supp. 3d 763, 768 (W.D. Tex. 2020); *TitleMax of Tex., Inc. v. City of Dallas*, No. 3:21-cv-1040, 2022 WL 326566, at *6 (N.D. Tex. Feb. 3, 2022).

[4] LULAC Plaintiffs note that the State failed to respond to their argument that the State cannot assert the legislative privilege on its own behalf. *See* Dkt. 548 at 5-6.

5

Furthermore, because OAG is an executive agency, the legislative privilege has been waived for any communications between OAG and any legislator or legislative staff.  *See* Dkt. 548-13 (Exhibit L).  The State asserts that OAG is not an "outsider" for the purposes of waiver, but in doing so, the State ignores the well-settled principle that "the Office of the Attorney General" is a "member[] of the executive branch" and thus constitutes an "outsider[]" for the purpose of the privilege.  *LUPE*, 2022 WL 1667687, at *4; *see also* Tex. Const. art. IV, § 1; Dkt. 526 at 2 n.3 (concluding that privilege was waived where legislative branch communicated with Office of the Governor).  The legislative privilege therefore does not apply to communications between OAG and the legislative branch.

### C. Documents Never Relied on by the Legislative Branch Cannot Qualify for the Legislative Privilege, and any Fact-Based Information Must Be Disclosed.

The State continues to argue mistakenly that the legislative privilege applies to documents that Senator Huffman never saw.  However, as this Court and other courts in this Circuit have observed, the legislative privilege applies only to "documents or information that contains or involves opinions, motives, recommendations or advice between legislators or between legislators and their staff."  *LUPE*, 2022 WL 1667687, at *2 (quoting *Jackson Mun. Airport Auth. v. Bryant*, No. 3:16-CV-246-CWR-FKB, 2017 WL 6520967, at *7 (S.D. Miss. Dec. 19, 2017)); *see also* Dkt. 467 at 5.  By the State's own characterization, neither Senator Huffman nor her staff relied on these documents; instead, OAG used these documents to provide advice that in turn "inform[ed] [Senator Huffman's] mental impressions, her opinions, and her decision-making regarding redistricting legislation."  Dkt. 561 at 14 (emphasis added) (quoting Dkt. 561-1 ¶ 10).  These documents cannot themselves reflect a mental impression of legislation or reveal a legislative judgment.  *Cf.* Dkt. 467 at 9; *see also LUPE*, 2022 WL 1667687, at *2.

At most, the challenged documents are "documents containing factually based information used in the decision-making process . . . or the materials and information available [to lawmakers] at the time a decision was made"—none of which is protected by the legislative privilege. *LUPE*, 2022 WL 1667687, at *2 (quotation omitted); *Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, No. 11 C 5065, 2011 WL 4837508, at *9 (N.D. Ill. Oct. 11, 2011). Indeed, the State "acknowledge[s] that this Court previously ruled that documents such as statistical reports and draft maps held *by legislators* constituted underlying facts that must be produced." Dkt. 561 at 3 (emphasis added) (citing Dkt. 467). Despite asserting otherwise, the State provides no basis for why information relied on by a member of the executive branch who then advised a legislator would more likely qualify for the legislative privilege. The State therefore cannot withhold these documents based on the legislative privilege.[5] Dkts. 548-14 (Exhibit M) and 548-15 (Exhibit N).

### D. Where Applicable, the Legislative Privilege Should Yield.

The State largely fails to respond to LULAC Plaintiffs' argument that, even if applicable, the legislative privilege should yield for all of the challenged documents, instead focusing solely on the fifth *Perez* factor. *See* 2014 WL 106927, at *2. But as the Court already noted, "disclosure of legislative documents in past Voting Rights Act litigation has not rendered Texas officials 'timid.'" Dkt. 467 at 12 at n.5 (quoting *Veasey*, 2014 WL 1340077, at *2). And in any event, even if there were a chilling effect, courts have repeatedly found—particularly in the voting rights context—"that the need for accurate fact finding outweighs any chill to the legislature's deliberations." *LUPE*, 2022 WL 1667687, at *7; *see also Veasey*, 2014 WL

---

[5] In addition, the State fails to address the argument that any fact-based information in the other documents sought by LULAC Plaintiffs must be disclosed. For the reasons set forth in LULAC Plaintiffs' opening brief, the State must also produce that information. *See* Dkt. 548 at 8 (citing Exhibit O, Dkt. 548-16).

1340077, at *2; *Baldus v. Brennan*, No. 11-CV-562, 2011 WL 6122542, at *2 (E.D. Wis. Dec. 8, 2011). That is especially so where, as here, the withheld information likely "pertains to, or 'reveals an awareness' of: racial considerations employed in the districting process, sorting of voters according to race, or the impact of redistricting upon the ability of minority voters to elect a candidate of choice." *See Bethune-Hill*, 114 F. Supp. 3d at 344–45 (citing *Favors v. Cuomo*, No. 11-cv-5632, 2013 WL 5818773 (E.D.N.Y. 2013)); *see also League of Women Voters of Michigan v. Johnson*, No. 17-14148, 2018 WL 2335805, at *7 (E.D. Mich. May 23, 2018); *see also LUPE*, 2022 WL 1667687, at *6. Thus, for the reasons articulated in LULAC Plaintiffs' opening brief, the legislative privilege—where applicable—must yield. *See* Dkt. 548 at 9-11.

## IV. CONCLUSION

For the foregoing reasons, LULAC Plaintiffs respectfully request that the Court grant their motion to compel. Dkt. 548.

Dated: September 1, 2022

Respectfully submitted,

*/s/ Nina Perales*
Nina Perales
Fátima Menendez
Kenneth Parreno*
Julia Longoria
Mexican American Legal Defense and Educational Fund (MALDEF)
110 Broadway Street, Suite 300
San Antonio, TX 78205
(210) 224-5476
Fax: (210) 224-5382

Nikolas Youngsmith*
1016 16th Street NW, Suite 100
Washington, DC 20036
(202) 293-2828
Fax: (202) 293-2848
nyoungsmith@maldef.org

*Admitted *pro hac vice*

*Counsel for LULAC Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that she has electronically submitted a true and correct copy of the above and foregoing via the Court's electronic filing system on the 1st day of September 2022.

/s/ Nina Perales
Nina Perales