IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>GREG ABBOTT, in his official capacity as Governor of the State of Texas, *et al.*,<br><br>*Defendants*. | CIVIL ACTION NO.<br>3:21-cv-00259-DCG-JES-JVB<br>[Consolidated Action: Lead Case] |

**LULAC PLAINTIFFS' MOTION TO COMPEL
THIRD-PARTY SUBPOENA *DUCES TECUM* TO ANNA MACKIN**

LULAC Plaintiffs brought suit to challenge the redistricting plans enacted in 2021 by the Texas Legislature, alleging violations of the Voting Rights Act and the United States Constitution. LULAC Plaintiffs allege, among other things, that the Texas Legislature enacted the redistricting plans with the intent to discriminate against Latinos, and further assert that the totality of circumstances shows that Latinos have less opportunity to participate in the political process and to elect representatives of their choice. To that end, LULAC Plaintiffs served a document subpoena on Anna Mackin, Special Counsel to the Senate Redistricting Committee.

Based on sweeping claims of the legislative privilege and a misapplication of the work product doctrine and the attorney-client privilege, Ms. Mackin withheld a number of responsive documents. Broadly, Ms. Mackin inappropriately (1) claims work product protection over materials prepared for legislation—not in anticipation of litigation; (2) advances an overbroad interpretation of the legislative privilege, withholding even communications with third parties

1

and fact-based information; and (3) asserts the attorney-client privilege over fact-based information, documents that were not created for the primary purpose of legal advice, and communications with third parties.  In light of the parties' disagreement regarding the scope and applicability of those privileges, LULAC Plaintiffs respectfully request that the Court compel disclosure of the documents listed in Exhibit A.

## I.  BACKGROUND

On July 1, 2022, LULAC Plaintiffs served a document subpoena on Ms. Mackin, seeking documents including redistricting proposals, communications related to the redistricting process, and data used during the legislative process.  Ex. B.  On July 11, 2022, counsel for Ms. Mackin produced some documents to LULAC Plaintiffs in response to that subpoena but did not timely produce a privilege log.  On August 11, 2022, counsel for LULAC Plaintiffs met and conferred by email with counsel for Ms. Mackin, requesting the privilege log in connection with Ms. Mackin's production.  On August 16, 2022, Ms. Mackin produced a privilege log (the "Privilege Log").  Ex. C.

On September 7, 2022, counsel for LULAC Plaintiffs met and conferred by email with counsel for Ms. Mackin, noting which documents they sought and seeking additional information to assess further Ms. Mackin's privilege assertions over some of the documents listed in the Privilege Log.  Ex. D.  On September 14, 2022, counsel for Ms. Mackin stated that they would not disclose any of the documents listed in the Privilege Log.

LULAC Plaintiffs now seek to compel the production of several documents Ms. Mackin has improperly withheld.  Exhibit A lists the documents LULAC Plaintiffs seek in the instant motion.[1]

---

[1] Some of the documents that LULAC Plaintiffs seek are also the subject of the United States' Motion to Enforce Third-Party Subpoenas *Duces Tecum*, Dkt. 351, which the Court adjudicated in its stayed July 25, 2022 Order, Dkt. 467.  To preserve LULAC Plaintiffs' right to those documents, LULAC Plaintiffs have

2

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 45(d)(2)(B)(i) allows the party that served a subpoena to "move the court . . . for an order compelling production." In turn, Rule 45(e)(2)(A) mandates that "a person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents . . . in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."

"It is well settled that the party asserting the privilege has the burden of establishing its applicability." *Perez v. Perry*, No. SA-11-CV-360-OLG-JES-XR, 2014 WL 3495414, at *2 (W.D. Tex. July 11, 2014) (citing *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985)). Conclusory assertions are "insufficient to carry out the proponent's burden of establishing" privilege. *E.E.O.C. v. BDO USA, L.L.P.*, 876 F.3d 690, 696 (5th Cir. 2017).

When a motion to compel "is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).

## III.     ARGUMENT

### A.  The Documents are Relevant to LULAC Plaintiffs' Claims.

The documents sought by LULAC Plaintiffs are relevant and vital to their claims under the federal Voting Rights Act and the United States Constitution. Draft redistricting plans, the

---

included them here. Exhibit E lists documents in the possession of Ms. Mackin that are sought in both the instant motion and the United States' motion; Exhibit F lists the documents sought in only the instant motion. LULAC Plaintiffs also incorporate by reference and assert all arguments regarding any overlapping documents sought in the instant motion and the United States' motion to enforce. *See* Dkt. 351.

data used in drafting those plans, Ms. Mackin's communications, and other legislative materials bear directly on whether "invidious discriminatory purpose was a motivating factor" in redistricting. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977). Such legislative materials also bear on whether "the policy underlying the State's . . . use of the contested practice or structure is tenuous" under the discriminatory results test for the challenged redistricting plans. *Thornburg v. Gingles*, 478 U.S. 30, 45 (1986). Thus, these documents bear on the evaluation of whether official actors are motivated by a discriminatory purpose, the effect of challenged practices, and the extent to which race played a role in challenged decisions. Dkt. 467 at 8–12.

### B. The Work Product Doctrine does not Apply to Documents Created while Assisting the Legislature With Redistricting Legislation.

Ms. Mackin's assertions of the work product doctrine are unavailing. Ex. G. "[D]ocuments created in the ordinary course of drafting legislation—including redistricting legislation—are not covered by the work product doctrine, even when 'the Legislature may have reasonably believed that litigation would result from its redistricting efforts.'" Dkt. 530 at 9–10 (quoting *Baldus v. Brennan*, Nos. 11-CV-562 JPS-DPW-RMD, 11-CV-1011 JPS-DPW-RMD, 2011 WL 6385645, at *2 (E.D. Wis. Dec. 20, 2011) (three-judge court)). "That is 'because the legislature could *always* have a reasonable belief that *any* of its enactments would result in litigation.'" *Id.* at 10 (quoting *Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 348 (E.D. Va. 2015)). Here, Ms. Mackin asserts the work product doctrine over several documents that, by her own characterization, relate to the enactment of redistricting legislation. *See* Ex. G. Accordingly, Ms. Mackin may not withhold those documents based on the work product doctrine.

4

### C. Ms. Mackin May Not Withhold the Challenged Documents Based on the Legislative Privilege.

1. *All Documents Shared Between the Legislative Branch and any Third Parties Must be Disclosed.*

Ms. Mackin had waived any claim to the legislative privilege with respect to communications with third parties. Ex. H. "To the extent that legislators or legislative staff communicated with any outsider (*e.g.*, non-legislators, non-legislative staff), any legislative privilege is waived as to the contents of those specific communications." Dkt. 526 at 2 n.3 (cleaned up) (quoting *Gilby v. Hughes*, 471 F. Supp. 3d 763, 767 (W.D. Tex. 2020)); *see also Perez v. Perry*, No. SA-11-CV-360-OLG-JES, 2014 WL 106927, at *2 (W.D. Tex. Jan. 8, 2014); *Favors v. Cuomo*, 285 F.R.D. 187, 212 (E.D.N.Y. 2012) (noting that "communications with 'knowledgeable outsiders' . . . fall outside the privilege").

Ms. Mackin has failed to meet her burden to show that the legislative privilege applies to documents shared with Wroe Jackson, Jeff Hillery, Wendy Underhill and Brad Lockerbie, as she has made no showing that these individuals were employees of the Texas Legislature at the time they shared or received the documents listed in Exhibit H.[2] Indeed, in their September 7, 2022 letter to Ms. Mackin, LULAC Plaintiffs sought clarification from Ms. Mackin on whether these individuals were employed by the Texas Legislature at the time the documents were created, *see* Ex. D at 1, but Ms. Mackin provided no information in response. In addition, Ms. Mackin may not assert the privilege over documents received from Casey Contres (a former staffer of a member of the United States House of Representatives) or Alelhie Lila Valencia (an employee of the Texas Demographic Center, a governmental entity not part of the legislative branch), as these individuals constitute outsiders not subject to the privilege. *See* Dkt. 526 at 2 n.3. And the

---

[2] The Privilege Log states that Wendy Underhill is "Senator Huffman['s] former general counsel" and that Jeff Hillery is "Senator Huffman['s] former communication director," but the log fails to state whether they were in those roles at the time the documents were shared. See Ex. H.

remaining documents in Exhibit H were shared with or by the Office of the Governor or staff for the Lieutenant Governor—*i.e.*, members of the executive branch who also are outside of the scope of the privilege.  *See* Dkt. 526 at 2 n.3; *see also LUPE v. Abbott*, No. SA-21-CV-00844-XR, 2022 WL 1667687, at *6 (W.D. Tex. May 25, 2022), *appeal docketed sub nom. LULAC v. Hughes*, No. 22-50435 (5th Cir. May 27, 2022).  Accordingly, Ms. Mackin has failed to support her assertions of the legislative privilege over the documents in Exhibit H, and as such those documents must be disclosed.  *See* Dkt. 526 at 2 n.3.

> 2. *The Legislative Privilege Does Not Apply to Documents Containing Fact-Based Information.*

The Privilege Log lists several documents that contain fact-based information that must be disclosed.  Ex. I.  The legislative privilege "does not apply . . . to 'documents containing factually based information used in the decision-making process or disseminated to legislators or committees, such as committee reports and minutes of meetings,' or 'the materials and information available [to lawmakers] at the time a decision was made."  *LUPE*, 2022 WL 1667687, at *2 (quoting *Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, No. 11 C 5065, 2011 WL 4837508, at *9 (N.D. Ill. Oct. 11, 2011)).  The Privilege Log lists several such documents, such as calendar entries (Exhibit J), and invoices, contracts, and retention letters (Exhibit K).  Accordingly, those documents must be disclosed.

Furthermore, to the extent that other documents contain both fact-based information and privileged information, that fact-based information is also not privileged.  In their September 7, 2022, meet-and-confer letter, LULAC Plaintiffs requested clarification regarding whether documents described as "[a]nalysis of draft redistricting legislation relating to proposed districts, with related data . . . contain underlying data or other fact-based information that is not subject to the legislative privilege, including data relating to redistricting legislation (including but not

6

limited to demographic data, alternative maps, information on voting behavior, or data on election performance)." Ex. D at 2. Counsel for Ms. Mackin failed to provide any information in response to LULAC Plaintiffs request for clarification. To the extent that the documents in Exhibits I, J, and K contain underlying data or other fact-based information that is not subject to the legislative privilege, that information must still be disclosed.[3]

> 3. *The Legislative Privilege Does not Apply to Documents Created or Communication that Occurred after the Enactment of the Challenged Redistricting Plans.*

Ms. Mackin improperly seeks to withhold DOC_0000001, which was created after the enactment of the challenged redistricting plans. *See* Ex. L. The legislative privilege only "protects 'integral steps' in the legislative process and does not extend to commentary or analysis following the legislation's enactment." *Bethune-Hill*, 114 F. Supp. 3d 323, 343 (E.D. Va. 2015); *see also League of Women Voters of Mich. v. Johnson*, No. 17-14148, 2018 WL 2335805, at *6 (E.D. Mich. May 23, 2018) (requiring disclosure of "communications created after the date of enactment"). More specifically, DOC_0000001 was created on November 16, 2021—after Defendant Abbott signed the challenged redistricting plans.[4] As such, the document must be disclosed.

> 4. *The Legislative Privilege Should Yield With Respect to Certain Documents.*

Even if applicable, the legislative privilege should yield to the need for discovery here. To determine whether the privilege should yield, courts in this Circuit and elsewhere consider the

---

[3] To the extent that these documents contain privileged and non-privileged information, LULAC Plaintiffs respectfully request *in camera* review and, if necessary, the production of redacted versions of such documents.

[4] Because no documents at issue were created during the time period between when the Legislature sent the documents to the Governor and the Governor signing the challenged plans, the Court need not address whether, as LULAC Plaintiffs have argued in other briefs in this suit, the legislative privilege does not apply to any documents created in that time period. *See, e.g.*, Dkt. 540 at 7–8.

following five factors: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the seriousness of the litigation and issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *Perez*, 2014 WL 106927, at *2. Moreover, the *Perez* factors especially favor disclosure where, as here, there is evidence that "pertains to, or 'reveals an awareness' of: racial considerations employed in the districting process, sorting of voters according to race, or the impact of redistricting upon the ability of minority voters to elect a candidate of choice." *See Bethune-Hill*, 114 F. Supp. 3d at 344–345; *see also League of Women Voters*, 2018 WL 2335805, at *7; *LUPE*, 2022 WL 1667687, at *6–7.

For the reasons previously articulated in various motions by LULAC Plaintiffs, the *Perez* factors strongly favor disclosure, and LULAC Plaintiffs incorporate by reference and re-urge here all such arguments. *See* Dkts. 548 at 9–11; 540 at 8–10; 447 at 8–10; *see also* Dkt. 467 at 8–12. To restate briefly those arguments: the evidence here—listed in Exhibit A—is relevant and vital to LULAC Plaintiffs' claims under the Voting Rights Act and the United States Constitution and is among the most probative evidence regarding the challenged legislation; this suit raises serious questions about whether the challenged plans comply with the Voting Rights Act and the United States Constitution; there is no question about the government's role in the litigation; and there is no possible chilling effect resulting from disclosure. Further, even if there were a chilling effect, courts have repeatedly found—particularly in the voting rights context—"that the need for accurate fact finding outweighs any chill to the legislature's deliberations." *LUPE*, 2022 WL 1667687, at *7. Accordingly, the legislative privilege should yield for all documents listed in Exhibit A for which the privilege does apply.

### D. Attorney-Client Privilege

Ms. Mackin incorrectly asserts the attorney-client privilege over several documents. "Because the attorney-client privilege has the effect of withholding relevant information from the fact-finder, it is interpreted narrowly so as to appl[y] only where necessary to achieve its purpose." *BDO USA*, 876 F.3d at 695 (quotation omitted). To that end, "courts have stated that simply describing a lawyer's advice as 'legal,' without more, is conclusory and insufficient to carry out the proponent's burden of establishing attorney-client privilege," and that documents sent from one staff member to another are not privileged "merely because a copy is also sent to counsel." *Id.* at 696.

Several types of information do not fall within the scope of the attorney-client privilege. For instance, "the attorney-client privilege protects only *communications*, not the underlying facts." Dkt. 578 at 5 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981)). For example, information about the "empirical features of the redistricting plans," *id.* at 7, information about the "*process* of certain legislative decisions," *id.* at 13, and "mere statistical conclusion[s]—i.e. voting patterns by race," *id.* at 10, are not privileged. *See also id.* (noting that questions about whether "attorneys found 'racially polarized voting' in various areas of Texas" did not seek privileged information); *Ohio A. Philip Randolph Inst. v. Smith*, No. 1:18cv357, 2018 WL 6591622, at *3 (S.D. Ohio Dec. 15, 2018) (ordering production of "facts, data, and maps" over assertions of attorney-client privilege). Here, Ms. Mackin improperly seeks to withhold such fact-based information that is not covered by the privilege. *See* Ex. I (underlying analyses and data); Ex. J (calendar entries); Ex. K (contracts, retention agreements, and invoices).

In addition, "a lawyer's 'advice on political, strategic, or policy issues [is not] shielded from disclosure." Dkt. 578 at 5 (cleaned up).  Many of the documents pertain to "the legislative process" and "judgements."  Ex. I.  Ms. Mackin fails to explain how these documents were created "for the *primary* purpose of *legal* advice," Dkt. 530 at 8, and not communications related to political, strategic, or policy advice that should be disclosed.  Moreover, to the extent that any of the documents contain a mixed discussion of legal and non-legal advice, "courts should consider the 'context . . . key,' ultimately seeking to glean the 'manifest purpose' of the communication."  *See BDO USA*, 876 F.3d at 696 (quoting *Exxon Mobil Corp. v. Hill*, 751 F.3d 379, 382 (5th Cir. 2014)).[5]

Furthermore, for many of the documents over which Ms. Mackin asserts attorney-client privilege, that privilege is waived.  "Disclosure of attorney-client communications to a third party who lacks a common legal interest waives the attorney-client privilege," and the "mere speculation that" every recipient of a document "shared a cognizable common interest is insufficient to establish that the privilege applies."  *Perez*, 2014 WL 3495414, at *2 (quotation omitted).  Here, even if it could initially be invoked, the attorney-client privilege has been waived for documents that reflect communications between the legislative branch and individuals outside of the legislative branch.  *See* Ex. M; *see also* Dkt. 526 at 9.  Moreover, other courts in this Circuit have concluded that state legislators "cannot assert that the common-interest doctrine protects" communications regarding pending legislation from disclosure.  *LUPE*, 2022 WL 1667687, at *7.

Ms. Mackin therefore may not assert the attorney-client privilege over any documents included in Exhibit A—and those documents must be produced.

---

[5] To the extent that Ms. Mackin's failure to establish privilege is not alone sufficient to warrant disclosure, *in camera* review may be necessary to distinguish between documents providing only legal advice and those that concern policy, political, strategic, or technical matters.

IV.    **CONCLUSION**

For the foregoing reasons, LULAC Plaintiffs respectfully request that the Court grant their motion to compel third-party subpoena *duces tecum* to Ms. Mackin.

Dated: September 15, 2022           Respectfully submitted,

*/s/ Nina Perales*
Nina Perales
Fátima Menendez
Kenneth Parreno*
Julia Longoria
Mexican American Legal Defense and Educational Fund (MALDEF)
110 Broadway Street, Suite 300
San Antonio, TX 78205
(210) 224-5476
Fax: (210) 224-5382
nperales@maldef.org
fmenendez@maldef.org
kparreno@maldef.org
jlongoria@maldef.org

Nikolas Youngsmith*
1016 16th Street NW, Suite 100
Washington, DC 20036
(202) 293-2828
Fax: (202) 293-2848
nyoungsmith@maldef.org

*Admitted *pro hac vice*

*Counsel for LULAC Plaintiffs*

**CERTIFICATE OF CONFERENCE**

I hereby certify that, on September 7, 2022, September 12, 2022, September 13, and September 14, 2022, counsel for LULAC Plaintiffs conferred with counsel for Ms. Mackin concerning the subject of the instant motion. Counsel for Ms. Mackin stated that they opposed the relief sought.

<i>/s/ Nina Perales</i><br>
Nina Perales

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that she has electronically submitted a true and correct copy of the above and foregoing via the Court's electronic filing system on the 15th day of September 2022.

<i>/s/ Nina Perales</i><br>
Nina Perales