UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **LEAGUE OF UNITED LATIN AMERICAN CITIZENS,** *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> **GREG ABBOTT,** *in his official capacity as Governor of the State of Texas*, *et al.*, <br><br> *Defendants.* | § § § § § § § § § § § § | No. 3:21-CV-259-DCG-JES-JVB <br> [Lead Case] |
| **ROY CHARLES BROOKS,** *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> **GREG ABBOTT,** *in his official capacity as Governor of the State of Texas*, *et al.*, <br><br> *Defendants.* | § § § § § § § § § § § § § § | No. 1:21-CV-991-LY-JES-JVB <br> [Consolidated Case] |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss the Brooks Plaintiffs' Second Amended Complaint. Dkt. 400. The Brooks Plaintiffs are one of several groups suing Governor Greg Abbott, Secretary of State John Scott ("Defendants"), and the State of Texas over the 2021 redistricting. *See* Dkt 357; *see also* Dkt. 16 (consolidating cases). Defendants moved to dismiss the Brooks Plaintiffs' claims once already, *see* Dkt. 43, but the Court denied that motion, finding that all but two of the parties had standing and that they had stated a plausible claim for relief, *see* Dkts. 119, 144.[1] The Brooks Plaintiffs subsequently amended their pleading, changing some of

---

[1] Defendants also moved to dismiss all claims against them by private plaintiffs on the theory that the Voting Rights Act contains no private right of action, Dkt. 12, a motion we denied, Dkt. 58.

the plaintiffs and adding challenges to several additional districts (among other revisions). *Compare* Dkt. 7-7 (original Complaint), *with* Dkt. 357 (Second Amended Complaint). Now, Defendants have again moved to dismiss the complaint on a handful of new grounds. Dkt. 400. Only one of those theories, however, holds water. The Defendants' motion to dismiss is accordingly GRANTED in part and DENIED in part.

## I. BACKGROUND

Roy Brooks and his fellow plaintiffs ("Brooks Plaintiffs" or "Plaintiffs") are a group of thirteen Black and Latino citizens, each of whom is a registered and regular voter in the State of Texas. *See* Dkt. 357 ¶¶ 12–44. Following Texas' 2021 redistricting, Plaintiffs challenged several districts under section 2 of the Voting Rights Act ("VRA") and the United States Constitution, alleging racial gerrymandering, racially discriminatory intent, racially discriminatory effects, and vote dilution. *See* Dkt. 7-7 ¶¶ 94–109; Dkt. 357 ¶¶ 231–72.

Just two of those claims are relevant here. First, Plaintiffs contend that Texas' redistricting diluted the votes of minorities in certain areas, as prohibited by the VRA and *Thornburg v. Gingles*, 478 U.S. 30 (1986). *See* Dkt. 357 ¶¶ 247–55. According to Plaintiffs, the VRA requires the state to draw several new minority-opportunity Congressional districts, including one in Dallas/Fort Worth (DFW) and two in Harris County (i.e. the Houston area). *Id.* ¶¶ 129–47. Second, Plaintiffs claim that House District 118 in Bexar County was drawn with the intent to discriminate on the basis of race in violation of both the Constitution and the VRA. *Id.* ¶¶ 267–72.

Defendants' motion to dismiss targets each of those two claims. First, Defendants allege that Plaintiffs cannot satisfy the preconditions for a vote-dilution claim laid out in *Gingles*, as the complaint does not plausibly allege that the minority groups in DFW and Houston are "culturally compact," nor does it allege that minority voters are politically cohesive. Dkt. 400 at 2–8. Second,

Defendants ask this Court to dismiss the challenge to HD 118 since, according to Defendants, the complaint identifies no specific factual allegations of intentional racial discrimination in the drawing of HD 118. *Id.* at 8–9.

## II.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter which, when taken as true, states 'a claim to relief that is plausible on its face.'" *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible when "well-pleaded factual allegations" permit the court to "infer more than the mere possibility" of wrongdoing and instead "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  "[C]onclusory allegations, unwarranted factual inferences, or legal conclusions" are not well-pleaded. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quotation omitted).  Likewise, "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice to carry a complaint across the plausibility threshold. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  But at the motion to dismiss stage, we must "accept all well-pleaded facts as true and view them in the light most favorable to the non-movant." *Turner v. Driver*, 848 F.3d 678, 684 (5th Cir. 2017).

## III.     DISCUSSION

Defendants maintain that Plaintiffs did not allege sufficient facts to support either (a) their *Gingles* claims regarding DFW and Harris County or (b) their intentional discrimination claims specific to HD 118. Dkt. 400 at 2, 8.  Both arguments raise separate issues, so we will deal with each in turn.

### A. *Gingles* Claims (Dallas/Fort Worth and Harris County)

A key feature of the Brooks Plaintiffs complaint is a series of "*Gingles* claims," named after the seminal case. *See* Dkt. 357 ¶¶ 241–266; *see also Gingles*, 478 U.S. at 46–51. The requirements of the VRA and the *Gingles* framework have been detailed in prior orders, *see, e.g.*, Dkt. 307 at 30–33, but a short treatment of the governing law frames the precise question here.

Section 2 of the VRA "prohibit[s] the distribution of minority voters into districts in a way that dilutes their voting power." *Wis. Legislature v. Wis. Elections Comm'n*, 142 S. Ct. 1245, 1248 (2022) (per curiam). A successful *Gingles* plaintiff can require the offending state to remedy vote dilution by drawing a new majority-minority district in which minority groups will have the opportunity to elect their candidates of choice. *See Bartlett v. Strickland*, 556 U.S. 1, 13 (2009) (plurality opinion); *see also Cooper v. Harris*, 137 S. Ct. 1455, 1470–71 (2017) (treating plurality opinion in *Bartlett* as the controlling opinion).

To win on a *Gingles* claim, plaintiffs must establish three "preconditions." *Wis. Legislature*, 142 S. Ct. at 1248. *First*, the minority group "must be sufficiently large and compact to constitute a majority in a reasonably configured district." *Id.* Not only must the minority group constitute a majority of voters by citizen voting age population ("CVAP") in the proposed district, but "putting the minority population into one district" should be "consistent with 'traditional districting principles such as maintaining communities of interest and traditional boundaries.'" *Robinson v. Ardoin*, 37 F.4th 208, 218 (5th Cir. 2022) (per curiam) (quoting *LULAC v. Perry*, 548 U.S. 399, 433 (2006)). *Second*, the minority group must be "politically cohesive" in the proposed district. *Wis. Legislature*, 142 S. Ct. at 1248; *Harris*, 137 S. Ct. at 1470. And *third*, the majority group "must vote sufficiently as a bloc" in the challenged district "to enable it to usually defeat

the minority group's preferred candidate." *Wis. Legislature*, 142 S. Ct. at 1248; *see also Harris*, 137 S. Ct. at 1470.

Defendants' motion to dismiss focuses on the first two prongs of *Gingles*. They contend that the Brooks Plaintiffs failed to plead that minorities in their proposed districts are "compact" because there are no facts suggesting that the minority groups are "culturally compact." Dkt. 400 at 2. Furthermore, they claim that Plaintiffs have not alleged sufficient facts to make a plausible case that the minority will be politically cohesive in the proposed DFW and Harris County districts. *Id.* at 6.

Defendants' first contention fails entirely; the second fails with regard to Harris County.

### 1. *Cultural Compactness*

Defendants emphasis on cultural compactness is misplaced. Their argument relies primarily on a single footnote in a prior order from this Court. Dkt. 400 at 2. That footnote stated, in relevant part, "The Supreme Court has also interpreted the first *Gingles* precondition to include that the minority group is culturally compact, *see LULAC*, 548 U.S. at 430–35." Dkt. 307 at 31 n.20. Defendants not only seize on the phrase "culturally compact," they take this language one step further and assert that "a plaintiff fails to satisfy the first *Gingles* precondition where she fails to allege specific facts tending to show that the minority population in the proposed district is culturally compact." Dkt. 400 at 3.

But Defendants overread both our prior order and *LULAC*. Our prior order only identified cultural compactness as a factor that the Supreme Court has historically considered under the first step of a *Gingles* analysis. *See* Dkt. 307 at 31 n.20. The leading example of this is *LULAC*. *See* 548 U.S. at 430–35. But *LULAC* did not treat "cultural compactness" as a standalone requirement of the VRA. Instead, it concluded that a sprawling, 300-mile remedial district that stretched from

Austin to the Mexican border was not "reasonably compact" under the first prong of *Gingles* because of "the enormous geographical distance separating the Austin and Mexican-border communities, coupled with the disparate needs and interests of these populations—*not either factor alone*." *LULAC*, 548 U.S. at 435 (emphasis added). In other words, the absence of common cultural needs and interests can be evidence of a non-compact district, but it is not a necessary condition of a compact one. *See id.*; *see also Robinson*, 37 F.4th at 219–220 (treating common cultural ties between voters in a district as one of several indicators of compactness).[2]

Furthermore, the districts that Defendants have objected to do not raise the same compactness concerns as the district in *LULAC* (at least on the allegations pleaded so far). Plaintiffs have pleaded sufficient facts tending to show that the proposed districts are "reasonably compact." *LULAC*, 548 U.S. at 430. Plaintiffs have submitted two alternative redistricting plans, C2163 and C2167, both of which propose additional districts in the DFW and Houston metro areas. Dkt. 357 ¶¶ 132–33, 142. While each district runs through multiple neighborhoods, the proposed Harris County districts are limited to stretches of the Houston area and the proposed DFW districts are contained within the DFW metroplex.[3] *See id.* Drawing all inferences in favor of Plaintiffs at this stage, as we must, *see Turner*, 848 F.3d at 684, it is reasonable to suppose that racial minorities living within the same urban area share common interests. Thus, even if cultural compactness

---

[2] The only other authority Defendants cite for their argument that "cultural compactness" must be independently pled is *Ala. State Conf. of NAACP v. Alabama*, No. 2:16-CV-731-WKW, 2020 WL 583803 (M.D. Ala. Feb. 5, 2020). *See* Dkt. 400 at 3. But the court in that case considered a long list of traditional redistricting factors to determine if a district was "compact"—cultural compactness was not treated as an independent, necessary condition. *Ala. State Conf. of NAACP*, 2020 WL 583803, at *21–25. And besides, the *Gingles* claim in that case was rejected after trial, so it does not speak to the pleading requirements at the motion to dismiss stage. *Id.* at *4.

[3] Notably, no proposed district is more than 50 miles, end-to-end, measured lengthwise (using Google Maps' "Measure Distance" function and the boundary points provided by Plaintiffs). *See* Dkt. 470 at 5; *see also* DISTRICTVIEWER, *Plan C2163* (last visited Sept. 24, 2022), https://dvr.capitol.texas.gov/Congress/0/PLANC2163; DISTRICTVIEWER, *Plan C2167* (last visited Sept. 24, 2022), https://dvr.capitol.texas.gov/Congress/0/PLANC2167.

were a necessary factor to consider at the pleading stage, there is no reason to dismiss Plaintiffs' claim.

### 2. *Political Cohesion*

In contrast to the previous factor, the requirement that minorities in a proposed district are *politically* cohesive is a well-established element of a *Gingles* claim. *See, e.g.*, *Gingles*, 478 U.S. at 51; *Wis. Legislature*, 142 S. Ct. at 1248. A *Gingles* plaintiff typically shows political cohesion by demonstrating "that a significant number of minority group members usually vote for the same candidates." *Gingles*, 478 U.S. at 56. But Plaintiffs pleaded slightly different facts about cohesion for each district. That difference turns out to be dispositive.

Harris County

We begin with Harris County. Plaintiffs request additional minority opportunity districts for Latino voters in and around Houston. *See* Dkt. 357 ¶ 141. To prove that Latinos are politically cohesive in this geographic area, Plaintiffs make a number of relevant allegations. First, they claim that Latino voters in their proposed districts "strongly prefer Democratic candidates." *Id.* ¶ 143. As support, they allege that Latino voters cohesively voted for Democrats in past elections at percentages ranging from 54.6% to 81.5%, depending on the candidate. *Id.* They also provide reconstituted election results showing that, in Plaintiff's proposed opportunity districts, those same candidates would have won by comfortable margins. *See id.* ¶ 144.

While Defendants insist that it is still "entirely possible" that Latinos would not consistently prefer the Democratic candidate in the proposed districts, Dkt. 400 at 7, Plaintiffs' allegations are sufficient for the pleading stage. Critically, Plaintiffs supported their legal conclusion about political cohesion with data suggesting consistent voting patterns among Latinos. Dkt. 357 ¶¶ 143–44. Defendants already tried to dismiss a different claim from Plaintiffs using a

similar argument, and the Court found that comparable facts pleaded in the complaint were sufficient to survive a motion to dismiss on the second *Gingles* factor. *See* Dkt. 144 at 4.[4] If anything, Plaintiffs have provided more detailed allegations on this claim, as they have substantiated exactly what percentage of minority voters vote together. Dkt. ¶¶ 143–44. Those facts move Plaintiffs' claims across the line from conceivable to plausible.[5] *See Twombly*, 550 U.S. at 557.

Dallas/Fort Worth

Plaintiffs' claims regarding DFW are a slightly different story. They seek either a Latino opportunity district or a coalition Black and Latino opportunity district that stretches across Dallas and Tarrant Counties. *Id.* ¶¶ 129–33. But while the Harris County portion of the complaint includes precise figures showing what percentage of Latino voters actually vote for Democratic candidates, the allegations here are more bare-bones.

Twice, Plaintiffs insist that minority voters in the DFW area are "politically cohesive." *Id.* ¶¶ 108, 134. But that is just a legal conclusion, a "threadbare recita[l]" of an element of the *Gingles* cause of action. *Iqbal*, 556 U.S. at 678. To their conclusory allegations, Plaintiffs add the statement: "Black and Latino voters in DFW strongly prefer Democratic candidates." Dkt. 357 ¶ 134; *see also id.* ¶ 116 (noting the same voters in Tarrant County "prefer[] Democratic candidates by wide margins"). But no further data is added. Although that is at least a factual statement in form, it straddles the line between a factual allegation (to be taken as true on a motion to dismiss)

---

[4] The part of the original complaint in dispute alleged that a majority of minority voters in the state's Senate District 10 historically supported specific Democratic candidates and that such "candidates of choice" won regularly in past elections. Dkt. 7-7 ¶ 37.

[5] Defendants point out that Plaintiffs' data about Latino voting patterns comes from Harris County as a whole, rather than their specific proposed district within the county. Dkt. 400 at 7–8. But this dispute about the weight of Plaintiffs' evidence is suited for summary judgment or trial, not a 12(b)(6) motion. The whole-to-part inference from the county to the district, while not bulletproof, is enough to make Plaintiffs' claims about cohesion plausible.

and a legal conclusion that a "large majority" of minority voters vote together, *i.e.* minority voters are politically cohesive (which is conclusory and cannot support a plausibility finding). *See* Dkt. 307 at 38; *cf. Twombly*, 550 U.S. at 557 (holding that a "naked assertion . . . without some further factual enhancement . . . stops short of the line between possibility and plausibility"). But even if we were to treat Plaintiffs' allegation as true, it would not make the Plaintiffs' claim plausible. Unlike with Harris County, where Plaintiffs explicitly alleged the levels of Latino support for the same candidates, Dkt. 357 ¶ 143, here there is no data showing just how "strongly" minority voters "prefer" the same candidates, *id.* ¶ 134. Is it an influential plurality? A simple majority? A supermajority? Plaintiffs do not say. Further, there is an obvious difference between *preferring* a political party in the abstract and consistently voting for that parties' candidates. *Gingles* requires the latter. *See* 478 U.S. at 56–57. Plaintiffs only pleaded the former.

Plaintiffs point out that the complaint includes reconstituted election data, claiming that a slate of Democratic candidates would have won their proposed districts by comfortable margins in 2020, 2018, 2016, and 2014. Dkt. 470 at 10 (citing Dkt. 357 ¶ 135). This misses a critical step, however. It does not demonstrate at what rates minorities would have supported such candidates. It could be that the Democratic candidates would have won in the DFW district with 70% Anglo support and a small fraction of the minority vote. Obviously, it is conceivable that Democrats would have won in the proposed districts with a politically cohesive Black and Hispanic vote. But Plaintiffs must show that their claim is not just conceivable, but plausible. *Twombly*, 550 U.S. at 570. As we stated in a previous order, a mere allegation that a minority's preferred candidates "consistently" win cannot survive a motion to dismiss if "it doesn't say anything about how unified [minority] voters are in supporting those candidates." Dkt. 307 at 38. Failure to "state 'the level or degree of alleged cohesion' . . . is fatal to [the] complaint." *Id.* at 45–46 (quoting Dkt. 111 at

4). Because of their failure to provide any information showing that a "significant number" of Black and Hispanic voters in DFW usually vote for the Democratic party (or equivalent indicia of cohesion), *see Gingles*, 478 U.S. at 56, Plaintiffs have inadequately pleaded the second prong of *Gingles* with regard to their vote-dilution claims in Dallas and Tarrant Counties. Therefore, this count of their complaint must be dismissed for failure to state a claim. *See* FED. R. CIV. P. 12(b)(6).

### B. Intentional Discrimination Claims (HD 118)

Defendants' motion also challenges Plaintiffs' allegation of intentional racial discrimination in the drawing of HD 118. Dkt. 400 at 8–9. Intentional discrimination can be difficult to prove. *See Perez v. Abbott*, 253 F. Supp. 3d 864, 942, 955 (W.D. Texas 2017) (three-judge court). But Plaintiffs can demonstrate a racially discriminatory purpose by pointing to the "impact of the official action," the "historical background of the decision" (including "[d]epartures from the normal procedural sequence"), and the "legislative or administrative history" (including "contemporary statements by members of the decisionmaking body"). *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266–68 (1977). At the motion to dismiss stage, we have said that "[i]t is sufficient for Plaintiffs to point to circumstantial evidence, such as procedural irregularities or apparent subterfuge, from which discriminatory intent can be plausibly inferred." Dkt. 307 at 53 (citing *Arlington Heights*, 429 U.S. at 266–68).

Plaintiffs identify five sources of potential evidence of intentional discrimination: (1) Texas' history of racial discrimination; (2) the last-minute nature of changes to HD 118 and the failure to explain those changes; (3) departures from normal procedures in the passage of the challenged maps; (4) the extent of HD 118's departure from the benchmark district; and (5) that legislators were on notice that the maps would reduce Latino population and voter registration. *See* Dkt. 470 at 11–12.

Defendants are wrong to insist that such allegations are insufficient. Defendants contend that all five of these sources of potential evidence pertain to the general redistricting process in the legislature and are not specific to HD 118 in any way. Dkt. 400 at 8–9; Dkt. 517 at 4. As they point out, claims of unlawful racial redistricting must be proven "district-by-district." *Gill v. Whitford*, 138 S. Ct. 1916, 1930 (2018) (quoting *Ala. Leg. Black Caucus v. Alabama*, 575 U.S. 254, 262 (2015)). However, structural abnormalities and general deviations from legislative procedure can raise a plausible inference of racial discrimination in the redistricting process. *See Arlington Heights*, 429 U.S. at 267. We have said so in prior orders. *See* Dkt. 307 at 53. Here, the Brooks Plaintiffs emphasize similar facts. *See* Dkt. 357 ¶¶ 162–98. Furthermore, Plaintiffs' complaint is not completely devoid of district-specific allegations. Plaintiffs point to specific ways in which HD 118 deviated from its benchmark, as well as how the Texas legislature knowingly rejected amendments that would have kept HD 118 a Latino-opportunity district. Dkt. 357 ¶¶ 163–69, 174–80. We express no opinion on whether such facts, if substantiated, will ultimately be sufficient to prove Plaintiffs' case. At this point, the Court's only task is to determine whether Plaintiffs have "stated a legally cognizable claim that is plausible, not to evaluate [their] likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Iqbal*, 556 U.S. at 677–78). Following our reasoning in similar orders, the Court finds that the combination of allegations about general procedural irregularities and specific steps to change HD 118 are sufficient to state a claim under Federal Rule of Civil Procedure 8(a)(2). The Court declines to dismiss the HD 118 claims at this stage.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED** with respect to Plaintiffs' *Gingles* claims concerning Dallas/Fort Worth. Count 6 of Plaintiffs' Second Amended

Complaint is **DISMISSED** without prejudice, but only to the extent that it pleads violations of Section 2 of the VRA in the Dallas/Fort Worth area.

Insofar as it relates to the rest of Plaintiffs' claims, Defendants' motion to dismiss is **DENIED.**

Because the Court concludes that giving Plaintiffs leave to amend would not be futile, the Court also **GRANTS** Plaintiffs leave to amend their filing within **14 days**.

**So ORDERED and SIGNED this 29th day of September 2022.**

_____
**DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE**

*And on behalf of:*

| | | |
|---|---|---|
| **Jerry E. Smith**<br>**United States Circuit Judge**<br>**U.S. Court of Appeals, Fifth Circuit** | *-and-* | **Jeffrey V. Brown**<br>**United States District Judge**<br>**Southern District of Texas** |