# United States District Court
# for the Western District of Texas
## El Paso Division

| | | |
|---|---|---|
| **LEAGUE OF UNITED LATIN AMERICAN CITIZENS,** *et al.*, | § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | No. 3:21-CV-259-DCG-JES-JVB |
| **GREG ABBOTT,** *in his official capacity as Governor of the State of Texas*, *et al.*, | § § § § § | [Lead Case] |
| *Defendants*. | § § | |
| **ROSALINDA RAMOS ABUABARA,** *et al.*, | § § § | |
| *Plaintiffs*, | § § § | |
| v. | § § | No. 1:21-CV-988-RP-JES-JVB |
| **JOHN SCOTT,** *in his official capacity as Texas Secretary of State*, *et al.*, | § § § § | [Consolidated Case] |
| *Defendants*. | § | |

### MEMORANDUM OPINION AND ORDER
### GRANTING IN PART AND DENYING IN PART
### DEFENDANTS' MOTION TO DISMISS

Before the Court is Defendants' motion to dismiss the second amended complaint of Plaintiffs Rosalinda Ramos Abuabara, Akilah Bacy, Orlando Flores, Marilena Garza, Cecilia Gonzales, Agustin Loredo, Cinia Montoya, Ana Ramón, Jana Lynne Sanchez, Jerry Schafer, Debbie Lynn Solis, Angel Ulloa, Mary Uribe, Luz Moreno, and Maria Montes ("Abuabara Plaintiffs") under Federal Rule of Civil Procedure 12(b)(6). Dkt. 399. The Court grants in part and denies in part.

## I.   BACKGROUND[1]

The Abuabara Plaintiffs allege that Texas Senate Bill 6 and House Bill 1, which established new Congressional and state House districts for Texas after the 2020 census, intentionally discriminated against Texas's Latino and Black communities. Dkt. 356 at 1–2. The Abuabara Plaintiffs allege that the redistricting maps established by Senate Bill 6 and House Bill 1 for the Texas Congressional delegation and the Texas House of Representatives deny Black and Latino voters an equal opportunity to participate in the political process and to elect candidates of their choice. *Id.* at 2.

The Abuabara Plaintiffs sued Secretary of State John Scott and Governor Greg Abbott, bringing claims under Section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301 ("VRA"). *Id.* at 58–61.

This Court's opinion issued May 23, 2022, dealt with the Abuabara Plaintiffs' First Amended Complaint and Defendants' first motion to dismiss. *See* Dkt. 307 at 58. All of the Plaintiffs in that omnibus opinion were given fourteen days to amend their complaints in response to that Order. *Id.* at 60. Defendants now move to dismiss the Abuabara Plaintiffs' Section 2 vote-dilution claims as raised in their Second Amended Complaint. Dkt. 399.

## II.   LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially

---

[1] On a motion to dismiss under Rule 12(b)(6), well-pleaded, non-conclusory factual allegations in the complaint must be taken as true and construed favorably to the plaintiff. *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). The facts in this section are taken from the Abuabara Plaintiffs' pleadings.

plausible when well-pleaded facts allow the court to reasonably infer that the defendant is liable for the alleged conduct. *Id.* "The court does not 'strain to find inferences favorable to the plaintiffs' or 'accept conclusory allegations, unwarranted deductions, or legal conclusions.'" *Vanskiver v. City of Seabrook*, No. CV H-17-3365, 2018 WL 560231, at *2 (S.D. Tex. Jan. 24, 2018) (quoting *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)). Naked assertions and formulaic recitals of the elements of the cause of action will not suffice. *Iqbal*, 556 U.S. at 678. Even if the facts are well-pleaded, the court must still determine plausibility. *Id.* at 679.

## III.  ANALYSIS

Defendants argue that the Abuabara Plaintiffs have failed to adequately plead all their vote-dilution claims brought under *Thornburg v. Gingles*, 478 U.S. 30 (1986). Dkt. 399 at 1–2.

### A.  *Gingles* Claims

The Abuabara Plaintiffs bring vote-dilution claims under Section 2 of the VRA. Dkt. 356 58–61. Such claims are often called *Gingles* claims after *Thornburg v. Gingles*, 478 U.S. 30 (1986), because that case provides the "framework" for evaluating Section 2 vote-dilution claims. *Wis. Legislature v. Wis. Elections Comm'n*, 142 S. Ct. 1245, 1248 (2022) (per curiam).[2]

#### 1.  Governing Law

Section 2 prohibits any "voting qualification or prerequisite to voting or standard, practice, or procedure" that "results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color." 52 U.S.C. § 10301(a). That occurs when "the totality of circumstances" shows that a state's "political processes . . . are not equally open to participation

---

[2] *Gingles* involved Section 2 challenges to multimember districts, 478 U.S. at 46, but the Supreme Court later extended the analysis to apply to Section 2 challenges to single-member districts like the ones at issue here. *See Growe v. Emison*, 507 U.S. 25, 40–41 (1993).

by" members of a minority group "in that [they] have less opportunity . . . to participate in the political process and to elect representatives of their choice." *Id*. § 10301(b).

In *Gingles*, the Court "construed" Section 2 to prohibit the "dispersal of a [minority] group's members into districts in which they constitute an ineffective minority of voters." *Cooper v. Harris*, 137 S. Ct. 1455, 1464 (2017) (alteration adopted) (quoting *Gingles*, 478 U.S. at 46 n.11). When "minority and majority voters consistently prefer different candidates" in such districts, "the majority, by virtue of its numerical superiority, will regularly defeat the choices of minority voters," thus depriving minorities of an equal opportunity to elect representatives of their choice. *Gingles*, 478 U.S. at 48.

A successful *Gingles* claim remedies that situation by undoing the dispersal of minorities. It does so by requiring the state to concentrate them in a new, majority-minority district that will allow the group, usually, to be able to elect its preferred candidates. *See Bartlett v. Strickland*, 556 U.S. 1, 13 (2009) (plurality opinion). Such Section 2–required districts are often described as "opportunity districts." *See, e.g.*, *LULAC v. Perry*, 548 U.S. 399, 428–29 (2006); Nicholas O. Stephanopoulos, *The South After* Shelby County, 2013 SUP. CT. REV. 55, 75 n.84 (2013).

*Gingles* claims are complicated and analytically intensive. A *Gingles* plaintiff must make two showings to require a state to draw its proposed district. *First,* it must establish three preconditions. *Wis. Legislature*, 142 S. Ct. at 1248. Those preconditions—described below—are necessary to show that the *Gingles* theory describes the proposed district, *see Gingles*, 478 U.S. at 48–49, so each must be met for the claim to succeed, *Harris*, 137 S. Ct. at 1472. *Second*, the plaintiff must show that, under the "totality of circumstances," the "political process is [not] equally open to minority voters" without the proposed district. *Wis. Legislature*, 142 S. Ct. at 1248 (quoting *Gingles*, 478 U.S. at 79).

The first precondition is that the minority group "is sufficiently large and geographically compact to constitute a majority in a single-member district." *Gingles*, 478 U.S. at 50. That is "needed to establish that the minority has the potential to elect a representative of its own choice." *Growe*, 507 U.S. at 40. Accordingly, the minority group must be able to constitute a majority by CVAP.[3] *Valdespino v. Alamo Heights Indep. Sch. Dist.*, 168 F.3d 848, 852–53 (5th Cir. 1999); *see also LULAC*, 548 U.S. at 428–29 (analyzing CVAP and noting that "only eligible voters affect a group's opportunity to elect candidates"). And the population for which that must be shown is the population in the proposed district. *See Harris*, 137 S. Ct. at 1470; *LULAC*, 548 U.S. at 427–28; *Growe*, 507 U.S. at 40.

Additionally, a plaintiff must also allege that its proposed majority-minority district "is consistent with 'traditional districting principles such as maintaining communities of interest and traditional boundaries.'" *Robinson v. Ardoin*, 37 F.4th 208, 218 (5th Cir. 2022) (quoting *LULAC*, 548 U.S. at 433). "[C]ombining 'discrete communities of interest'—with 'differences in socio-economic status, education, employment, health, and other characteristics'—is impermissible." *Id.* (quoting *LULAC*, 548 U.S. at 432); *see also id.* at 219 (concluding that testimony indicating that the proposed alternative district was "culturally compact" supported the finding that the proposed district "preserve[d] communities of interest").

The second and third preconditions are often discussed together. The second requires the minority group to be "politically cohesive." *Gingles*, 478 U.S. at 51. The third is that "the white majority votes sufficiently as a bloc to enable it . . . usually to defeat the minority's preferred candidate." *Gingles*, 478 U.S. at 51 (citation omitted). Unless both are met, "the challenged

---

[3] Citizen Voting Age Population, or CVAP, is the segment of the population that is, by virtue of age and citizenship, eligible to vote.

districting [does not] thwart[] a distinctive minority vote by submerging it in a larger white voting population." *Growe*, 507 U.S. at 40.

Plaintiffs typically demonstrate minority political cohesion by showing that "a significant number of minority group members usually vote for the same candidates." *Gingles*, 478 U.S. at 56; *see also Campos v. City of Baytown*, 840 F.2d 1240, 1244 (5th Cir. 1988). That is described as "bloc voting" (just like the third precondition)[4] and typically means that a large majority of the group favors the same candidates.[5] When both minorities and Anglos vote in blocs, courts conclude that voting is "racially polarized"[6] and typically hold that both the second and third preconditions have been met.[7]

Even so, the second and third preconditions are not mirror-image requirements for different racial groups. As relevant here, a *Gingles* plaintiff must show the second precondition for the minority population that would be included in its proposed district. *See Harris*, 137 S. Ct. at 1470; *LULAC*, 548 U.S. at 427; *Growe*, 507 U.S. at 40. By contrast, the third precondition must be established for the *challenged* districting. *See Harris*, 137 S. Ct. at 1470; *LULAC*, 548 U.S. at

---

[4] *E.g.*, *Strickland*, 556 U.S. at 19 (plurality opinion); *Fusilier v. Landry*, 963 F.3d 447, 458 (5th Cir. 2020).

[5] *Compare, e.g.*, *LULAC*, 548 U.S. at 427 (finding "especially severe" bloc voting when roughly 90% of each racial group votes for different candidates), *with, e.g.*, *Strickland*, 556 U.S. at 16 (plurality opinion) (noting "skeptic[ism]" about Anglo bloc voting when 20% of Anglos would need to cross over to satisfy the first *Gingles* precondition); *Abrams v. Johnson*, 521 U.S. 74, 92 (1997) (noting that only 22–38% crossover by Anglos and 20–23% crossover by Black voters supported a finding that voting was not racially polarized). The necessary size of the majority, however, is a district-specific inquiry. *See Gingles*, 478 U.S. at 55–56.

[6] *See, e.g.*, *Strickland*, 556 U.S. at 19 (plurality opinion); *Voinovich v. Quilter*, 507 U.S. 146, 158 (1993); *Gingles*, 478 U.S. at 52 n.18; *Fusilier*, 963 F.3d at 458. The existence of racially polarized voting is also one of the factors that *Gingles* highlights as relevant to the totality-of-circumstances inquiry. *See* 478 U.S. at 44–45, 80.

[7] *See, e.g.*, *LULAC*, 548 U.S. at 427; *Gingles*, 478 U.S. at 56; *Fusilier*, 963 F.3d at 458–59; *Campos*, 840 F.2d at 1243; *but see LULAC v. Clements*, 999 F.2d 831, 849–51 (5th Cir. 1993) (en banc) (emphasizing that the plaintiff must still show that the bloc voting is "legally significant").

427; *Growe*, 507 U.S. at 40.  Importantly, Fifth Circuit precedent does not preclude a plaintiff from establishing the third precondition even if the challenged district is not majority Anglo by CVAP. *See Salas v. Sw. Tex. Jr. Coll. Dist.*, 964 F.2d 1542, 1555 (5th Cir. 1992).  Even so, such a plaintiff faces an "obvious, difficult burden" in establishing that situation.  *Id*.

One last note.  It bears emphasizing that each of these preconditions must be shown on a district-by-district basis.  *See Wis. Legislature*, 142 S. Ct. at 1250; *Perez*, 138 S. Ct. at 2332; *LULAC*, 548 U.S. at 437; *Gingles*, 478 U.S. at 59 n.23.  Because *Gingles* claims relate to the political experiences of a minority group in a particular location, a "generalized conclusion" cannot adequately answer "'the relevant local question' whether the preconditions would be satisfied as to each district." *Wis. Legislature*, 142 S. Ct. at 1250 (quoting *Harris*, 137 S. Ct. at 1471 n.5).

### 2. Challenged Claims

Defendants challenge all the Abuabara Plaintiffs' *Gingles* Claims for their proposed remedial Congressional and House districts. Dkt. 399 at 1–2.  Defendants argue that the Abuabara Plaintiffs have failed to allege facts which, if proven, would satisfy the first *Gingles* precondition. *Id.* at 2–3.  In Defendants' eyes, the Abuabara Plaintiffs have failed to plead that their proposed majority-minority districts are consistent with traditional redistricting criteria.  *Id.* at 3; *see also Robinson*, 37 F.4th at 218.  Specifically, Defendants contend that the Abuabara Plaintiffs have failed to plead any facts that the Latino, or Latino and Black combined, populations in their proposed districts are "culturally compact," relying on a footnote from this Court's prior opinion.[8] Dkt. 399 at 2.

---

[8] The full footnote is reproduced here: "The Supreme Court has also interpreted the first *Gingles* precondition to include that the minority group is culturally compact, *see LULAC*, 548 U.S. at 430–35, but that requirement is not at issue in Defendants' motions." Dkt. 307 at 31 n.20 (citing *LULAC*, 548 U.S. at 430–35).

Defendants also maintain that the Abuabara Plaintiffs failed to satisfy the first and second *Gingles* threshold conditions for their challenge against Enacted Congressional District 27 (reconfigured as Proposed Congressional District 10). Dkt. 399 at 7–8. Defendants assert that the Abuabara Plaintiffs failed to allege specific facts showing that their proposed district would be majority Latino, failing the first *Gingles* prong. Moreover, Defendants aver the Abuabara Plaintiffs failed to allege specific facts showing that their proposed district would be politically cohesive, failing the second *Gingles* prong. *Id.*

### i. Cultural Compactness Challenge

Defendants argue that the Abuabara Plaintiffs failed to plead sufficient facts to satisfy the first *Gingles* prong for all proposed remedial districts, Congressional and House. *Id.* at 2–3. Defendants use this Court's footnote in a prior opinion as support for the contention that VRA Section 2 requires a State to draw a majority-minority district "only if the racial or ethnic group is of sufficient size *and* geographically and culturally compact." *Id.* at 1 (citing Dkt. 307 at 31 n.20 (citing *LULAC*, 548 U.S. at 430–35)). Defendants thus aver that "cultural compactness" is dispositive within the traditional redistricting criteria portion of *Gingles*, and failure "to include any allegations tending to show the pertinent minority communities are 'culturally compact'" warrants dismissal. *Id.*

The footnote cannot bear the weight that Defendants place on it. This Court's opinion indicated that a showing of cultural compactness is a relevant factor included within the traditional redistricting criteria requirement in the first *Gingles* prong. *See* Dkt. 307 at 31; *see also Robinson*, 37 F.4th at 219 (concluding that presented evidence demonstrating cultural compactness in the proposed district supported the finding that the proposed district met traditional redistricting criteria).

It is not a required factor, though. At this stage in the litigation, it is not fatal to allege no facts tending to show that Latino and Latino-Black combined populations are culturally compact in a proposed district. The Abuabara Plaintiffs were merely required to plead facts that make it plausible that proposed remedial maps meet the first *Gingles* requirement.

Defendants do not note any deficiencies, aside from cultural compactness, in the Abuabara Plaintiffs' proposed Congressional and House District maps that indicate the proposed districts do not meet the traditional redistricting criteria. In all proposed districts, bar Proposed Congressional District 10 (discussed below), the Abuabara Plaintiffs have alleged sufficient facts to indicate that the minority group in each district is "sufficiently large and geographically compact to constitute a majority in a single-member district." *Gingles*, 478 U.S. at 50. Those allegations are sufficient to clear the low bar of plausibility.

    ii. **Enacted Congressional District 27 (Proposed Congressional District 10)**

Separately, Defendants contend that the Abuabara Plaintiffs fail to satisfy the first and second *Gingles* prongs for Enacted Congressional District 27 (Proposed Congressional District 10). Dkt. 399 at 7. Defendants contend that the Abuabara Plaintiffs fail to allege any facts indicating the Latino population in the proposed district would constitute a majority of the CVAP or any facts showing the political cohesion of the Latino voters in the proposed district. *Id.* Indeed, the Abuabara Plaintiffs solely allege that "Latino voters in Proposed CD10 are politically cohesive" with no further explanation or factual support. Dkt. 356 at 28. Seeing no facts pleaded to support this legal conclusion, the Court agrees that this claim concerning Enacted Congressional District 27 (Proposed Congressional District 10) should be dismissed for failing to plausibly satisfy the first and second *Gingles* requirements.

## IV. CONCLUSION

For the reasons above, Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. Dkt. 399. The Abuabara Plaintiffs' *Gingles* claims as to Enacted Congressional District 27 (Proposed Congressional District 10) are **DISMISSED WITHOUT PREJUDICE** for failure to state a claim. In all other respects, Defendants' motion to dismiss is **DENIED**.

As the Court is no longer on the eve of trial, the Abuabara Plaintiffs shall have fourteen days to amend their complaint pertaining to the dismissed claims.

**So ORDERED and SIGNED on this 30th day of September 2022.**

_____
DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE

*And on behalf of:*

| | | |
|---|---|---|
| **Jerry E. Smith**<br>**United States Circuit Judge**<br>**U.S. Court of Appeals,**<br>**Fifth Circuit** | *-and-* | **Jeffrey V. Brown**<br>**United States District Judge**<br>**Southern District of Texas** |