# United States District Court
# for the Western District of Texas
## El Paso Division

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, <br> *Plaintiffs*, <br> v. <br> GREG ABBOTT, *in his official capacity as Governor of the State of Texas*, *et al.*, <br> *Defendants*. | § § § § § § § § § § § § | No. 3:21-CV-259-DCG-JES-JVB <br> [Lead Case] |
| TEXAS STATE CONFERENCE OF THE NAACP <br> *Plaintiff*, <br> v. <br> GREG ABBOTT, *in his official capacity as Governor of the State of Texas*, *et al.*, <br> *Defendants*. | § § § § § § § § § § § § | No. 1:21-CV-1006-RP-JES-JVB <br> [Consolidated Case] |

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS**

Before the Court is the Defendants' motion to dismiss the first amended complaint of the Texas State Conference of the NAACP ("the NAACP") under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  Dkt. 402.  The Court grants in part and denies in part.

I.     **BACKGROUND**

This motion is a part of several consolidated challenges to the 2021 Texas Legislature's statewide redistricting maps for the State House, the State Senate, and the U.S. Congress.  On

November 5, 2021, the NAACP filed a complaint for declaratory and injunctive relief. The NAACP alleged that all three plans

> are racial gerrymanders in violation of the Fourteenth and Fifteenth Amendments to the United States Constitution; that these redistricting plans dilute the voting strength of voters of color and deny them the opportunity to elect preferred candidates of their choice in violation of Section 2 of the Voting Rights Act of 1965; and that these redistricting plans were drawn by legislators and adopted by the Governor for the express purpose of impermissibly discriminating against voters of color in violation of the Fourteenth Amendment to the United States Constitution and the intent prong of Section 2 of the Voting Rights Act.

*Texas NAACP v. Abbott*, 1:21-cv-01006-RP-JES-JVB, NAACP Compl., Dkt. 1, at 4.

Texas moved to dismiss the NAACP's complaint, Dkt. 82, and this Court granted the motion in part. This Court dismissed the NAACP's Voting Rights Act ("VRA") claims with leave to amend. Dkt. 307 at 39–42. The NAACP then submitted a motion to file its First Amended Complaint under seal and attached the amended complaint as Exhibit B to that order. Dkt. 321-2. The Plaintiff filed its actual First Amended Complaint on July 22, 2013. Dkt. 461.

Texas has now moved to dismiss several of the claims raised in the NAACP's First Amended Complaint.[1] Dkt. 402 at 2.

## II.    Standing

The Court begins with standing. Standing is a constitutional prerequisite for jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To demonstrate standing, a plaintiff must

---

[1] Note that Texas filed its Motion to Dismiss the NAACP's First Amended Complaint before the NAACP had filed the official version. Texas's motion, filed on July 1, thus refers to and cites the Plaintiff's exhibit to its Motion to File Under Seal, which is not the filed version of Plaintiff's First Amended Complaint. Dkt. 402. And confusingly, the Plaintiff's filed First Amended Complaint appears to have the occasional minor change from the one attached as an exhibit to its Motion to File Under Seal. Specifically, the Plaintiff's actual First Amended Complaint (1) neglects to include the statistics that were originally part of ¶ 259, cutting the paragraph off mid-sentence, and (2) adds ¶ 281, which means that Texas's citations to the exhibit complaint do not correspond to the paragraph numbers in the filed First Amended Complaint. *Compare* Dkt. 321-2 *with* Dkt. 461. Regardless, the NAACP likewise cites to its exhibit complaint (Dkt. 321-2) instead of its filed complaint (Dkt. 461). To avoid confusion, the Court will follow the parties' lead and use the numbering from the exhibit complaint.

show (1) an "injury in fact," (2) a "causal connection between the injury and the conduct complained of," and (3) a likelihood that the injury will be "redressed by a favorable decision." *Id.* at 560–61 (quotations omitted). Standing is assessed plaintiff by plaintiff and claim by claim. *See In re Gee*, 941 F.3d 153, 171 (5th Cir. 2019). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element" of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 516 (1975)).

An organization may show injury in fact in two ways. First, for organizational standing, the organization may show that the defendants' acts injured the organization itself. *See NAACP v. City of Kyle*, 626 F.3d 233, 238 (5th Cir. 2010). Second, associational standing allows an organization to assert the standing of its members, insofar as their interests in the suit are "germane" to the organization's "purpose." *OCA-Greater Hous. v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017). For associational standing, an organization must identify "a specific member" to assert standing on his behalf. *City of Kyle*, 626 F.3d at 237; *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) ("[T]he Court has required plaintiffs claiming an organizational standing to identify members who have suffered the requisite harm . . . .").

Texas alleges that the NAACP lacks organizational standing. Dkt. 402 at 2–3. The NAACP concedes that it has not pleaded organizational standing but maintains that it has sufficiently pleaded associational standing. Dkt. 475 at 1. The Defendants make no effort to rebut the NAACP's contention that it has sufficiently pleaded associational standing. Dkt. 519. Still, courts have an "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).

To satisfy the requirements of associational standing to challenge a redistricting plan, a

plaintiff must identify an injured member in each challenged district. *See City of Kyle,* 626 F.3d at 237. As Texas points out, the NAACP has failed to identify a member in HD 57.[2] Dkt. 402 at 3–4. The NAACP agrees that it failed to identify a member in HD 57 but claims it just "inadvertently left one off" and asks the Court for leave to amend its complaint. Dkt. 475 at 1.

The Court dismisses the NAACP's claims relating to HD 57 in its First Amended Complaint for lack of associational standing. However, as with all other claims dismissed in this order, the Court will grant the NAACP 14 days to amend its filing. *See* FED. R. CIV. P. 15(a)(2).

### III. The Merits: *Gingles* Claims

Moving to the merits, the Defendants claim that the NAACP has failed to adequately plead all its vote dilution claims brought under section 2 of the Voting Rights Act ("VRA"). A successful section 2 vote dilution claim requires a plaintiff to satisfy three so-called *Gingles* preconditions. *See Wis. Legislature v. Wis. Elections Comm'n,* 142 S. Ct. 1245, 1248 (2022) (per curiam).[3]

#### A. Standard of Review

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when well-pleaded facts allow the court to reasonably infer that the defendant is liable for the alleged conduct. *Id.* "[C]onclusory allegations, unwarranted factual inferences, or legal conclusions" are not well-pleaded. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Plotkin v. IP Axcess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Likewise, "'naked assertion[s]'

---

[2] The NAACP has identified a plaintiff for all other challenged districts, thus satisfying associational standing. Dkt. 321-2 5-46.

[3] *Gingles* involved section 2 challenges to multimember districts, 478 U.S. at 46, but the Supreme Court later extended the analysis to apply to section 2 challenges to single-member districts like the ones at issue here. *See Growe v. Emison*, 507 U.S. 25, 40–41 (1993).

devoid of 'further factual enhancement'" will not suffice to carry a complaint across the plausibility threshold. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Nevertheless, at the motion to dismiss stage, the Court must "accept all well-pleaded facts as true and view them in the light most favorable to the non-movant." *Turner v. Driver*, 848 F.3d 678, 684 (5th Cir. 2017). This requires the Court to resolve "every doubt . . . in his behalf." *Kaufman ex rel. Kaufman v. Robinson Prop. Grp. Ltd. P'ship*, 331 F. App'x 276, 277 (5th Cir. 2008) (per curiam).

**B. Governing Law**

Section 2 of the VRA prohibits any "voting qualification or prerequisite to voting or standard, practice, or procedure" that "results in a denial or abridgement of the right of any citizen of United States to vote on account of race or color." 52 U.S.C. § 10301(a). A plaintiff proves such a violation by showing that "members [of a minority group] have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." *Id.* § 10301(b).

This Court has thoroughly detailed what is needed to make out such a 'vote dilution' claim in previous opinions, *see, e.g.,* Dkt. 307, but the Court will review in brief. In *Thornburg v. Gingles*, the Supreme Court laid out what a plaintiff must show to prove vote dilution. 478 U.S. 30 (1996). These requirements make up the "*Gingles* framework." If a plaintiff can satisfy each requirement, the defendant must draw a new majority-minority district where minority groups will have the opportunity to elect their candidates of choice. *See Bartlett v. Strickland*, 556 U.S. 1, 13 (2009) (plurality opinion). These are referred to as *Gingles* districts.

At issue are the three *Gingles* preconditions, each of which must be proved on a district-by-district basis for each *Gingles* claim. *See Wis. Elec. Comm'n*, 142 S. Ct. at 1250. The preconditions are as follows.

First, "[t]he minority group must be able to demonstrate it is sufficiently large and geographically compact to constitute a majority in a single-member district." *Gingles*, 478 U.S. at 50. This refers to the proposed district. *See Cooper v. Harris*, 137 S. Ct. 1455, 1470 (2017); *LULAC v. Perry*, 548 U.S. 339, 427–28 (2006); *Growe*, 507 U.S. at 40. It requires the plaintiff to show that the minority group constitutes a majority by CVAP.[4] *Valdespino v. Alamo Heights Indep. Sch. Dist.*, 168 F.3d 848, 852–53 (5th Cir. 1999); *see also LULAC*, 548 U.S. at 428–29. At trial, the plaintiff must also show that the proposed majority-minority district is "is consistent with 'traditional districting principles such as maintaining communities of interest and traditional boundaries.'" *Robinson v. Ardoin*, 37 F.4th 208, 218 (5th Cir. 2022) (quoting *LULAC*, 548 U.S. at 433).

Second, "[t]he minority group must be able to show that it is politically cohesive." *Gingles*, 478 U.S. at 51. This also refers to the proposed district and requires the plaintiff to show that "a significant number of minority group members usually vote for the same candidates." *Id.* at 56, *see also Campos v. City of Baytown*, 840 F.2d 1240, 1244 (5th Cir. 1988).

Third, "[t]he minority [group] must be able to demonstrate that the white majority votes sufficiently as a bloc to enable it—in the absence of special circumstances, such as the minority candidate running unopposed—usually to defeat the minority's preferred candidate." *Gingles*, 478 U.S. at 51. This refers to the current redistricting plan. Together, the *Gingles* preconditions show that "the challenged districting thwarts a distinctive minority vote by submerging it in a larger white voting population." *Growe*, 507 U.S. at 40.

**C. The Claims**

Texas moves to dismiss all of the NAACP's *Gingles* claims. First, Texas contends that the

---

[4] "CVAP" stands for citizen voting age population and refers to the segment of the population that is, by virtue of age and citizenship, eligible to vote. Similarly, "BVAP" refers to the Black voting age population, "HVAP" is the Hispanic voting age population, and "AVAP" is the Asian voting age population.

NAACP has failed to establish the first *Gingles* precondition for any challenged district because the NAACP has not pleaded cultural compactness. Dkt. 402 at 13–15. Second, Texas alleges that the NAACP has failed to establish the second *Gingles* precondition for:

(1) the Senate Districts in Tarrant and Dallas Counties, *id.* at 5;

(2) the Senate Districts in Fort Bend County and Adjacent Districts, *id.* at 7;

(3) the House Districts in Tarrant County, *id.* at 8,

(4) the House Districts in Wise and Denton Counties, *id.* at 9;

(5) the House Districts in Brazoria County, *id.* at 10;

(6) the House Districts in Lubbock County, *id.* at 11; and

(7) the Congressional Districts in Harris and Fort Bend Counties, *id.* at 12.

Finally, Texas claims that the NAACP has failed to establish the third *Gingles* precondition for the Senate Districts in Tarrant and Dallas Counties or the House Districts in Tarrant County. *Id.* at 5, 9. The Court discusses Texas's contentions regarding the first *Gingles* preconditions together before turning to its contentions as to the second and third *Gingles* preconditions on a district-by-district basis.

### 1. Cultural Compactness Challenges

The first *Gingles* precondition requires that the minority group "demonstrate that it is sufficiently large and geographically compact to constitute a majority in a single-member district." *Gingles*, 478 U.S. at 50. In our omnibus order on the Defendants' previous motions to dismiss, this Court included a footnote that Texas has seized upon. The footnote states: "The Supreme Court has also interpreted the first *Gingles* precondition to include that the minority group is culturally compact." Dkt. 307 at 31 n.20 (citing *LULAC*, 548 U.S. at 430–35).

Texas thus posits that since "the NAACP has not included a single allegation of cultural

compactness for a single one of its proposed districts . . . the NAACP has failed to allege the first *Gingles* precondition." Dkt. 402 at 11. But *LULAC* involved what is needed to prove the first *Gingles* precondition at trial, not what a plaintiff is required to allege at the motion to dismiss stage. *See generally LULAC*, 548 U.S. 399. While minority cultural compactness may be a relevant factor at trial, the Plaintiff is not required to allege facts tending to show cultural compactness at this stage. At this stage in the litigation, it is not fatal to allege no facts tending to show that the combined minority populations are *culturally* compact in a proposed district. *See* Dkt. 591 at 10–12. The Plaintiff is merely required to plead facts that make it plausible that its proposed maps are geographically compact and can "constitute a majority by CVAP." Dkt. 307 at 31 (citing *Valdespino*, 168 F.3d at 852–53 and *LULAC*, 548 U.S. at 428–29). *See* Dkt. 591 at 10–12; Dkt. 593 at 5–7 (reaching the same conclusion).

The NAACP has pleaded that the minority group constitutes a majority by CVAP for each proposed district. Dkt. 321-2 ¶ 262 (outlining minority coalition CVAP for the proposed district in the Tarrant/Dallas senate districts); *id.* ¶¶ 279–80 (same for Fort Bend County and adjacent senate districts), ¶ 311 (same for Tarrant County house districts); *id.* ¶ 321 (same for Wise and Denton Counties house districts), ¶ 333 (same for Brazoria County house districts); *id.* ¶ 342 (same for Lubbock County house districts), ¶¶ 358–58 (same for Dallas/Tarrant Counties congressional districts); *id.* ¶ 368 (same for Harris/Fort Bend Counties congressional districts). Furthermore, each proposed district occurs in a small geographic cluster, making it plausible that the proposed districts themselves are geographically compact. *See generally id.* The Plaintiff has therefore alleged sufficient facts to indicate that the minority group in each district is "sufficiently large and geographically compact to constitute a majority in a single-member district." *Gingles*, 478 U.S. at 50. Those allegations are sufficient to clear the low bar of plausibility.

### 2. Senate Districts in Tarrant and Dallas Counties

The NAACP first proposes to reconfigure a *Gingles* district in the Senate Districts for Tarrant and Dallas Counties. Dkt. 321-2 ¶¶ 249–68. According to the NAACP, "the map drawers significantly reshaped SDs 9 and 10 by bringing in more Anglo voters from surrounding rural counties and moving voters of color" out of the districts. *Id.* ¶ 258. The NAACP claims that a *Gingles* district could be formed by "bringing voters of color from SD 9 into SD 10." *Id.* ¶ 250. Texas wants this Court to dismiss this claim because "the NAACP fails to adequately allege either the second or third *Gingles* precondition." Dkt. 402 at 5.

To satisfy the second *Gingles* precondition, "the minority group must be able to show that it is politically cohesive" in a proposed remedial district. *Gingles*, 478 U.S. at 51; *see also* Dkt. 307 at 33. The NAACP has pleaded the following facts, which, at this stage of the proceedings, the Court must accept as true:

> (1) that over the past decade, the minority coalition in the previous SD 10 voted cohesively for "a preferred candidate of choice with voting percentages over 85%," Dkt. 321-2 ¶ 259;[5]
>
> (2) that the proposed district would be formed by bringing voters of color from the existing SD 9 into the existing SD 10, *id.* ¶ 250; and
>
> (3) "[v]oters of color are cohesive in this alternative drawing of SD 10, which, in part, includes those voters who were cracked and placed in SD 9 under the State's enacted plan. Based on past electoral history in the precincts that were in SD 10 under the previous decade's plan and have since been added to SD 9 under the

---

[5] The Plaintiff appears to have inadvertently left this part out of its filed First Amended Complaint (Dkt. 461). But it appears in full in the exhibit complaint, which is what both Texas and the NAACP cite to. The Court accepts this but reminds the NAACP to include the full paragraph as originally included in its exhibit complaint if it chooses to file a second amended complaint.

State's enacted plan, coalition voters typically support the same candidate with upwards of 80% cohesion," *id.* ¶ 263.

There are leaps in this logical progression—for example, it is possible that the NAACP's plan involves bringing non-cohesive minorities from SD 9 into SD 10 or that the current SD 10 contains few members from the old SD 10—but at this stage in the litigation, the NAACP does not have to make a watertight case. It merely must show that its claim is at least plausible with the facts alleged. With the facts above assumed true, the Court can infer that it is at least plausible that a minority coalition in the proposed SD 10 would be politically cohesive. Thus, the NAACP has sufficiently pleaded the second *Gingles* precondition.

Texas also asserts that the NAACP has not sufficiently pleaded facts to render the third *Gingles* precondition plausible for this claim. This precondition requires the Plaintiff to show that "the white majority votes sufficiently as a bloc to enable it . . . usually to defeat the minority's preferred candidate." *Gingles*, 478 U.S. at 51. Texas claims that NAACP has only demonstrated that the Anglo electorate in the *previous* SD 10 (prior to the challenged redistricting plan) was a cohesive bloc. Dkt. 402 at 6. The NAACP says this is an incorrect reading of the phrase and that the sentence refers to the current SD 10. Dkt. 475 at 6. The sentence at issue is as follows:

> During this same time period, Anglos consistently voted as a bloc in the geographic area covered by SD 10 to defeat the candidate of choice of Black, Hispanic and Asian voters. For example, in the 2020 presidential election, the Anglo bloc was estimated at 71%, which was enough to defeat the coalition candidate. Dkt. 321-2 ¶ 260.

It is this Court's opinion that this sentence clearly refers to the previous SD 10. And the previous SD 10 is distinct from the current SD 10—Plaintiff alleges that the current SD 10 "now encompasses seven additional rural counties." Dkt. 321-2 ¶ 252. Even with the allegation that the previous SD 10 had a cohesive Anglo voting bloc, without any facts tending to show the voting

patterns of the Anglo bloc in those additional counties, or facts showing how much of the current SD 10 is made up partially from the previous SD 10, this Court cannot infer that the current SD 10 has a cohesive voting bloc. This claim is thus dismissed.

### 3. Senate Districts in Fort Bend County and Adjacent Districts

The NAACP has alleged that "an additional majority-minority district could have been drawn in [the Fort Bend senate] cluster by making SD 17 into a majority coalition district." Dkt. 321-2 ¶ 270. Texas wants this claim dismissed because "the NAACP does not adequately allege the second *Gingles* precondition." Dkt. 402 at 7.

According to the NAACP, the current SD 17 was formed partly by moving part of the former SD 17 into SD 13, "an already reliable Democratic seat," and "more Anglo populations" from former SD 18 into SD 17. Dkt. 321-2 ¶¶ 271, 273. The NAACP's proposed district would create a majority-minority SD 17 by bringing "Black, Hispanic, and Asian voters who were in SDs 6, 13, and 15 into SD 17." *Id.* ¶ 279.

The NAACP states, "[o]ver the last 10 years, the Black, Hispanic, and Asian coalition in SD 17 has consistently supported their candidates of choice with at least 80% cohesion." *Id.* ¶ 276. Additionally, "polarization estimates and the electoral history of the precincts in the districts . . . shows that the voters of color who are added to the proposed district vote cohesively." *Id.* ¶ 279. Moreover, the NAACP asserts that because it has alleged facts showing that old SD 17's minority voters voted cohesively and facts showing that the minority voters from the precincts that will be moved into the various proposed SD 17s vote cohesively, the "plausible inference from these two facts is that the proposed district would contain a cohesive minority coalition population." Dkt. 475 at 9.

Yet the allegations cannot support such an inference. Though the Court "accept[s] all well-

pleaded facts as true," *Turner*, 848 F.3d 678 at 684, the Court cannot accept "'naked assertions' . . . 'devoid of further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557); *see also LULAC v. Abbott*, EP-21-CV-00259-DCG-JES-JVB, 2022 WL 2922522, at *3–4 (W.D. Tex. July 25, 2022) (a plaintiff cannot satisfy a pleading burden by referring to unidentified empirical data "without citation or explanation."). The second sentence of paragraph 279 is merely conclusory without any further enhancement, citation, or elaboration. And alone, the statement that the minority coalition in the previous SD 17 voted cohesively, even overwhelmingly so, is not sufficient. The NAACP has not told the Court (1) how many voters are being removed from SD 17 or (2) the cohesiveness of the minority electorate added. While the minority bloc in the proposed SD 17 may remain cohesive, the Court cannot infer this from the NAACP's complaint. This claim is dismissed.

### 4. House Districts in Tarrant County

The NAACP next proposes a *Gingles* district in the Tarrant County house districts. Dkt. 321-2 ¶¶ 298–312. Texas moves to dismiss, alleging that the NAACP has not provided sufficient facts to allege the second and third *Gingles* preconditions. Dkt. 402 at 8–9.

The NAACP alleges that Texas "cracked the POC populations in . . . HD 94 . . . and incorporated them into the surrounding POC-heavy districts." Dkt. 321-2 ¶ 306. The Plaintiff posits that Texas could create one *Gingles* district by bringing voters of color from "neighboring districts including HD 91 to a new proposed configuration of HD 94." *Id.* ¶ 311. As relevant here, the NAACP has alleged the following:

(1) the minority bloc in the old HD 94 had "upwards of 87% cohesion" over the past decade, *id.* ¶ 308,

(2) the minority bloc in the old HD 94 was "cracked" and "incorporated" into neighboring

districts, *id.* ¶ 306,

(3) the proposed HD 94 would consist of the current HD 94 and voters of color "who are in neighboring districts including HD 91," *id.* ¶ 311, and

(4) the proposed HD 94 would "allow coalition voters in the district the opportunity to elect their candidate of choice, based on the polarization described above and the specific electoral history of the precincts," *id*.

According to the NAACP, "[p]ast election results in the precincts covered by HD 94 and the proposed precincts to be added to the alternative drawing of HD 94 show that voters of color vote cohesively, both together and within their subgroup, to elect their candidate of choice." *Id.*

These allegations narrowly survive Texas's motion to dismiss. As above, the Court finds the first allegation to be a "'naked assertion' . . . 'devoid of any factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557); *see also LULAC*, 2022 WL 2922522, at *3–4. But the NAACP tells this Court that the minority bloc in the prior HD 94 was overwhelmingly cohesive, Dkt. 321-2 ¶ 308, and as distinct from above, the Plaintiff gives the Court grounds to infer that the voters brought into the new HD 94 are also cohesive. The NAACP asserts that the minority coalition was spread into the neighboring districts and that the new HD 94 will be formed by bringing the minority voters into HD 94 from the surrounding districts. *See id.* ¶¶ 305, 311. From this, it is plausible that the proposed HD 94's minority coalition will be cohesive.

Nonetheless, Texas further contends that the NAACP did not plead facts sufficient for this Court to infer the plausibility of meeting the third *Gingles* precondition. That precondition requires that "the minority [group] must be able to demonstrate that the white majority votes sufficiently as a bloc to enable it—in the absence of special circumstances, such as the minority candidate running unopposed—usually to defeat the minority's preferred candidate." *Gingles*, 478 U.S. at

50–51 (internal citations removed).  Regarding the third *Gingles* precondition, the NAACP's only allegation seems to be:

> Over the last 10 years, Anglos consistently voted as a bloc in the geographic area covered by HD 94 to defeat the candidate of choice of Black, Hispanic and Asian voters.  In the 2020 presidential election, Anglo bloc voting was estimated at 73%, and the candidate of choice of voters of color lost by a margin of nine percentage points.

Dkt. 321-2 ¶ 309.

It is the Court's opinion that this sentence clearly refers to the previous HD 94.  And the current HD 94 is distinct from the old HD 94—the Plaintiff alleges that as compared to the old HD 94, the current "HD 94 has arms that reach into surrounding districts in nearly every direction." Dkt. 321-2 ¶ 299.  However, the Plaintiff has still pleaded sufficient facts to push its claim from possible to plausible.  Because the map the Plaintiffs provides in ¶ 289 shows the previous HD 94 was surrounded by HDs 93, 95, 101, and 96, and Plaintiff has pleaded that the current HD 94 was formed from the old HD 94 and "arms . . . into surrounding districts," Dkt. 321-2 ¶ 299, the Court can assume that the current HD 94 is likely made up of parts of the old HDs 94, 93, 95, 101 and 96.  The Plaintiff provides a table showing that the previous HDs 93, 94, and 96 were majority White CVAP and that each had a Republican victory.  Dkt. 321-2 ¶ 306.  The Plaintiff also shows that the current HD 94 is 70.0% White CVAP. Dkt. 321-2 ¶ 306.  From this, it is at least plausible that the current HD 94 satisfies the third *Gingles* precondition.  Texas's motion to dismiss the *Gingles* claims for the House Districts in Tarrant County is thus denied.

    5.  **House Districts in Wise and Denton Counties**

Next, the NAACP proposes a *Gingles* district for the House Districts of Wise and Denton Counties by moving voters of color from HD 63 to HD 65.  Dkt. 321-2 ¶ 318.  Texas moves to dismiss, asserting that the NAACP has not pleaded sufficient facts for the second *Gingles* precondition.  Dkt. 402 at 9–10.

The NAACP pleads that "Black, Hispanic, and Asian voters have voted cohesively in HD 65 over the last 10 years . . . generally supporting the same candidate with upwards of 85% cohesion." Dkt. 321-2 ¶ 319. The Plaintiff further alleges that "the voters of color who would be added from the precincts in HD 63 into HD 64 . . . typically support the same candidates of choice with upwards of 85% cohesion." *Id.* ¶ 322. As Texas points out, this appears to be a typographical error because the NAACP earlier alleged that its remedial *Gingles* district would require moving the voters of color from HD 63 into HD 65, not HD 64. Dkt. 402 at 9 (citing Dkt. 321-2 ¶ 322).

If the NAACP had alleged that the voters of color from HD 65 that would be moved into HD 63 voted cohesively at "upwards of 85% cohesion," this claim would survive the motion to dismiss. As discussed in parts III.C.2 and III.C.4, given the allegations that (1) the minority bloc in the current district votes cohesively and (2) the minority bloc in the precincts that are to be moved into the current district to create the proposed district vote cohesively, this Court can infer that it is at least plausible that the minority bloc in the proposed district would vote cohesively as a whole. Still, the NAACP has not pleaded this, and as unfortunate as this typographical error may be, the Court cannot pretend the NAACP has alleged something it has not.[6] Accordingly, the NAACP's claim regarding House Districts in Wise and Denton Counties is dismissed.

### 6. House District in Brazoria County

Next, Texas moves to dismiss the NAACP's proposed *Gingles* district for the House Districts in Brazoria County, claiming that the NAACP has failed to plead sufficient facts regarding

---

[6] The Federal Rules of Civil Procedure require that pleadings "be construed so as to do justice." FED. R. CIV. P. 8(e). As the Court dismisses this claim without prejudice, there is no need to reach the thorny issue of whether it is injustice to dismiss a claim without leave to amend due to a small but substantive typographical error. *Cf. Chapman v. Ulta Salon Cosms. & Fragrance Inc.*, No. 6:22-CV-00996, 2022 WL 2112808, at *2 (W.D. La. May 23, 2022), *report and recommendation adopted*, No. 6:22-CV-00996, 2022 WL 2112805 (W.D. La. June 10, 2022).

the second *Gingles* precondition. Dkt. 402 at 10–11.

The NAACP has claimed that a *Gingles* district could be created by "mov[ing] precincts between [HDs 25 and 29] to make a majority coalition district in HD 29." Dkt. 321-2 ¶ 333. Again, as discussed in Parts III.C.2, III.C.4 and III.C.5, if the Plaintiff alleges that the minority coalition in the current district is overwhelmingly cohesive, as the NAACP has here ("voters of color generally support . . . the same candidate with upwards of 80% cohesion [in HD 29 over the past 10 years]"), *id.* ¶ 330, then this Court can find it plausible that the minority coalition that remains in the district will also be cohesive, despite who might be moved out of the district. However, to infer that the minority coalition as a whole in the proposed district will be cohesive, the Plaintiff must also provide sufficient facts to infer that the voters moving into the proposed district are cohesive. Here, the NAACP does not clear that bar. All the NAACP says regarding the voters to be moved into the district is that "voters of color in the alternative district configuration are cohesive . . . in the precincts to be moved between HDs 25 and 29." *Id.* ¶ 333. That statement is a "'naked assertion' . . . 'devoid of any factual enhancement'" and cannot clear 12(b)(6)'s low bar of plausibility. *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557). This claim is dismissed.

      **7. House Districts in Lubbock County**

The NAACP contends a *Gingles* district could be formed for the House Districts in Lubbock County by moving precincts between HDs 83 and 84 to "make a majority-minority coalition district in HD 83." Dkt. 321-2 ¶ 342. Texas moves to dismiss this claim, arguing that the NAACP has not plausibly pleaded the second *Gingles* precondition. Dkt. 402 at 11–12.

The NAACP has alleged that "Black, Hispanic, and Asian voters have voted cohesively in HD 83 over the last 10 years . . . with voters of color generally supporting the same candidate with

upwards of 78% cohesion." Dkt. 321-2 ¶ 339. The Court finds that this refers to the previous HD 83, and the Plaintiff needs to show that the new HD 83 has a cohesive minority population. However, given the Plaintiff's allegation that the differences between the old and current HD 83 are minor, Dkt. 321-2 ¶ 337, and because the new HD 83 will be formed merely by "mov[ing] precincts between" HDs 83 and 84, Dkt. 321-2 ¶ 342, and finally, because HD 83 is so much larger than 84, it is at least plausible that the proposed HD 83 will retain the cohesive minority population that the old HD 83 allegedly had.

Texas's motion to dismiss the Plaintiff's claims against the House Districts in Lubbock County is therefore denied.

### 8. House Districts in Harris and Fort Bend Counties

Finally, the NAACP has alleged that a *Gingles* district could be drawn in the congressional districts of Harris and Fort Bend Counties by "moving voters of color from CDs 18 and 29 into CD 2." Dkt. 321-2 ¶ 361. Texas moved to dismiss, asserting that the NAACP has not pleaded sufficient facts to satisfy the second *Gingles* precondition for this claim. Dkt. 402 at 12.

The NAACP alleges that "Black, Hispanic, and Asian voters have voted cohesively in CD 2 over the last 10 years . . . consistently support[ing] their candidates of choice with ≥ 80% cohesion." Dkt. 321-2 ¶ 365. The Court interprets this sentence to refer to the previous CD 2. The NAACP has further alleged that "voters of color in the precincts that would be moved into the alternate compositions of CD 2 vote cohesively with upwards of 80% cohesion." Dkt. 321-2 ¶ 370.

This Court could make the logical assumption that if (1) the precincts that would be pulled into the new district are cohesive and (2) the current district is cohesive, then the new district would be cohesive, but the NAACP has provided this Court no grounds to determine if in fact the current CD 2 is cohesive. The NAACP has pleaded no facts showing how the current CD 2 was formed,

and the provided maps are not clear enough to plead it for them. The NAACP's *Gingles* claims against the House Districts in Harris and Fort Bend Countries are therefore dismissed.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's "Opposed Motion for Leave to File a Second Amended Complaint" (Dkt. 473) is **DENIED**, and Defendants' "Motion to Dismiss Texas NAACP's First Amended Complaint" (Dkt. 402) is **GRANTED** with respect to Plaintiff's *Gingles* claims concerning (1) the Senate Districts in Tarrant and Dallas Counties, (2) the Senate Districts in Fort Bend County and Adjacent Districts, (3) the House Districts in Wise and Denton Counties, and (4) the House Districts in Brazoria County, and (4) the Congressional Districts in Harris and Fort Bend Counties, along with (5) all claims relating to House District 57.

Insofar as it relates to the rest of Plaintiff's claims, Defendants' motion to dismiss is **DENIED.**

Because the Court concludes that giving Plaintiff leave to amend would not be futile, the Court **GRANTS** the Plaintiff leave to amend its filing within **14 days**. *See* FED. R. CIV. P. 15(a)(2).

For the reasons laid out in the "Memorandum Opinion and Order" (Dkt. 439) this Court also **GRANTS** Plaintiff's "Motion to File Document Under Seal" (Dkt. 474).

**So ORDERED and SIGNED this 20th day of October 2022.**

_____
DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE

*And on behalf of:*

| | | |
|---|---|---|
| **Jerry E. Smith** <br> **United States Circuit Judge** <br> **U.S. Court of Appeals,** <br> **Fifth Circuit** | -and- | **Jeffrey V. Brown** <br> **United States District Judge** <br> **Southern District of Texas** |