IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.* <br><br> *Plaintiffs,* <br> v. <br><br> GREG ABBOTT, *et al.*, <br><br> *Defendants.* | Case No. 3:21-cv-00259 <br> [Lead Case] |

## DEFENDANTS' RESPONSE IN OPPOSITION TO LULAC PLAINTIFFS' MOTION TO REOPEN DISCOVERY

In 2020—years before State Defendants retained him as an expert and before census data was even released—Sean Trende drew a few Texas congressional districts and tweeted about it. When asked at his deposition, Trende explained that he drew them "entirely for [his] own entertainment." After the deposition, LULAC asked for the corresponding maps. Although LULAC was not entitled to the maps, that issue was irrelevant because neither Mr. Trende nor Dave's Redistricting, LLC ("Dave's") had retained copies.

Reopening discovery would not lead to relevant evidence, and the factors LULAC cites do not support reopening discovery. For these reasons, LULAC has not shown good cause. State Defendants therefore respectfully ask that the Court deny the motion to reopen discovery.

### BACKGROUND

On July 18, 2022, State Defendants designated Sean Trende as a testifying expert. ECF 444. Five days later, State Defendants served Mr. Trende's expert report and related materials on the plaintiffs. Expert discovery closed on August 3, 2022. ECF 325. But the parties agreed to hold Mr. Trende's deposition out of time on September 2, 2022. *See* Ex. 1, Transcript of the Deposition of Sean Trende

1

("Tr.").

During that deposition, the Texas NAACP questioned Mr. Trende first. Tr. 7:8–10. The United States asked questions second. Tr. 93:5–6. Then LULAC asked questions third. Tr. 150:18–21. After that, the Fair Maps Texas Action Committee asked questions. Tr. 207:18–20. And MALC questioned Mr. Trende last. Tr. 258:15–17.

Going second, the United States introduced as an exhibit a copy of three tweets from Mr. Trende in 2020. Tr. 146:6–11; *see* Fig. 1 (ECF 617, Ex. B). The tweets revealed that Mr. Trende had drawn a few congressional districts while "playing around with Texas maps."

**Fig. 1 (Trende Tweet from 2020)**



In other words, the United States did not learn about these 2020 maps by virtue only of the deposition. Rather, the United States knew of them in advance—the United States came prepared with an exhibit referencing them. Tr. 146:6–11. And the United States asked a variety of questions about them. *See* Tr. 146:6–150:10. During the exchange, Mr. Trende repeatedly explained that he had drawn them "entirely for [his] own entertainment." Tr. 148:6.

Immediately after the United States asked about the 2020 maps, it passed the witness to LULAC. LULAC and subsequent plaintiffs asked about the tweets and related maps. *See* Tr. 205:7–12 (LULAC); Tr. 258:19–260:9 (MALC). After the deposition, neither the United States nor MALC

sought copies of the 2020 maps.[1]

When LULAC asked for the shapefiles for the 2020 districts that Trende drew, State Defendants disputed that LULAC was entitled to the documents but nonetheless conferred with Mr. Trende who, after a thorough and diligent review, confirmed that he no longer had those maps in his possession. *See* ECF 617, Ex. D, at 9 (Sept. 20, 2022 email); *see also* Ex. 2, Declaration of Sean Trende ("Trende Decl.") ¶ 2. This included confirming that the 2020 maps did not remain in Mr. Trende's folders on Dave's Redistricting App, where he would have drawn the 2020 districts. *See* ECF 617, Ex. D, at 7 (Sept. 21, 2022 email); *see also* Trende Decl. ¶ 2. In hopes of saving the parties and the Court time, State Defendants relayed their understanding to LULAC. *See* ECF 617, Ex. D, at 7 (Sept. 21, 2022).

About a week and a half later, LULAC emailed State Defendants on a new issue. *See* ECF 617, Ex. D, at 7 (Sept. 30, 2022). LULAC explained that it had "spoken to counsel for Dave's," who noted that Dave's "ha[d] in its possession five maps related to Texas redistricting connected to Mr. Trende's account(s)"—all of which "were created on or after July 1, 2022." *Id.* State Defendants again conferred with Mr. Trende. Mr. Trende is not able to see map-creation dates in his Dave's Redistricting App. *See* Trende Decl. ¶ 4. But Dave's told him that there had been a misunderstanding and that there are no Texas redistricting maps in his account created on or after July 1, 2022. Trende Decl. ¶ 4. Confirming this, LULAC's motion includes a copy of its exchange with counsel for Dave's, who explained "that the earlier statement that there are five Texas maps connected to Mr. Trende's account created after July 1, 2022 was based on misreading of the data and is incorrect." ECF 617, Ex. D, at 14. Dave's also requested that LULAC "not rely on that [incorrect] information in drafting [its] subpoena." *Id.*

## ARGUMENT

Discovery should not be reopened. A scheduling order may be modified only for good cause.

---

[1] Nor has the United States or MALC joined LULAC's motion to reopen.

FED. R. CIV. P. 16(b)(4). Yet LULAC has not—and cannot—show good cause for two reasons. First, reopening discovery will not lead to relevant evidence. Second, the factors that LULAC cites in support of reopening discovery actually cut against reopening discovery. Moreover, this Court has repeatedly made clear that, although "[c]ounsel may by agreement continue discovery beyond the deadline" in the scheduling order," "there will be no intervention by the Court except in extraordinary circumstances." ECF 325 ¶ 6; ECF 69 ¶ 6. LULAC has not demonstrated extraordinary circumstances. For these reasons, the motion should be denied.

### I. Reopening Discovery Will Not Yield Relevant Evidence

"In determining whether to amend the scheduling order to allow more time to conduct discovery, courts consider a number of factors, including . . . the likelihood that discovery will lead to relevant evidence[.]" 3 MOORE'S FEDERAL PRACTICE § 16.14 (2022). The mere possibility that discovery will lead to relevant evidence is not enough to satisfy the good-cause requirement. *See Sanford v. Pershing LLC*, No. 3:15-cv-3832, 2022 WL 1590752, at *3 (N.D. Tex. Jan. 14, 2022) (finding no good cause where the movant "merely speculate[d]" that reopening discovery "might 'yield relevant evidence'"). Here, there is not even a possibility of relevant evidence.

LULAC seeks to reopen discovery because it has "been unsuccessful in obtaining Mr. Trende's maps" in which "he created two new majority-minority Texas congressional districts." *See* ECF 617 at 1. LULAC believes that these 2020 maps will show that Trende "concluded that the minority populations in the Houston and Dallas areas are sufficiently compact that it is 'easy' to create two new majority-minority congressional districts." *See* ECF 617 at 8. That is wrong for two reasons.

First, reopening discovery would be futile because neither Mr. Trende nor Dave's has the maps that LULAC seeks. Mr. Trende cannot locate the 2020 maps in his personal files. *See* Trende Decl. ¶ 2. Nor can he locate them in his folders on Dave's Redistricting App. *See* Trende Decl. ¶ 2. Mr. Trende only ever drew "these lines . . . for [his] own entertainment." *See* Trende Decl. ¶ 3. In fact, he did not

4

recall drawing these 2020 maps until he was reminded of his old tweet during the deposition. *See* Tr. 148:15–16 ("I don't even remember really [drawing these] until you reminded me."). Indeed, the map referenced in the tweet was "an earlier map drawn for the 39-seat configuration that Texas was previously to be awarded." *See* Trende Decl. ¶ 3. And he "was not able to locate or identify the maps referenced in the tweet" as they "do not appear in [his] personal files or in [his] folders on Dave's Redistricting App." *See id.*

Second, even if LULAC could obtain the maps through reopened discovery, they likely would not be probative of anything. Mr. Trende was not involved in the Legislature's process for drawing districts, and the maps were not part of the analysis provided in his expert report. *See* Trende Decl. ¶ 3 ("[T]he map referenced in my tweet was not among the facts or data I considered in forming the opinions I set forth in my expert report."). And when he drew the districts in question "for [his] own entertainment," Tr. 148:6, the census numbers relevant to this case had not yet even been released, *see* Trende Decl. ¶ 3 ("[T]he 2020 Census results . . . were not released until April 26, 2021[.]"). Indeed, at the time, it was expected that Texas would have 39 congressional districts to draw. *See* Trende Decl. ¶ 3. In any event, LULAC has its own experts and mapdrawers who can determine the feasibility of drawing any demonstrative districts it desires. *See* ECF 305.

LULAC also seeks five Texas maps connected to Mr. Trende's account that it was initially told were created after July 1, 2022. *See* ECF 617 at 5. But as Dave's informed LULAC, there are no Texas congressional maps connected to Mr. Trende's account that were created on or after July 1, 2022. *See* ECF 617, Ex. D at 14 (Oct. 3, 2022 email) ("[T]he earlier statement that there are five Texas maps connected to Mr. Trende's account created after July 1, 2022, was based on misreading of the data and is incorrect."). And Mr. Trende has "provided [to State Defendants] all materials that [he] relied on in preparing [his] expert report," *see* Trende Decl. ¶ 1, and State Defendants in turn provided all such materials to plaintiffs. "This included all facts or data that [he] considered when forming the

opinions expressed in [his] report." *See id.*

To the extent LULAC is seeking those five maps in particular regardless of creation date, they would not be discoverable. An expert witness's report "must contain" "the facts or data considered by the witness in forming" "all opinions the witness will express." FED. R. CIV. P. 26(a)(2). And courts in the Western District of Texas have not "permit[ted] discovery of documents and information that are not enumerated in Rule 26(a)(2)(B)" that also lack "a close nexus to the items enumerated therein." *D'Souza v. Marmaxx Operating Corp.*, No. , 2017 WL 1322243, at *5 (Apr. 7, 2017) (Guaderrama, J.). But the five maps LULAC purports to seek are not part of "the facts or data that [Trende] considered when forming the opinions expressed in his report." *See* Trende Decl. ¶ 4. Nor are they "[]connected to [his] work as an expert witness in this matter." *See id.* Nor are they "[]related to the opinions that [he has] expressed in [his] report." *See id.* For these reasons, even setting the date issue aside, the five maps originally identified as created in 2022 would not be discoverable.

In sum, this is not an instance in which a plaintiff is seeking "the opportunity to obtain discovery that [it] should have already received." *Contra Ormeno v. 3624 Georgia Ave., Inc.*, 309 F.R.D. 29, 34 (D.D.C. 2015). Rather, this is an exercise in futility. The evidence sought is not relevant. As such, good cause does not exist to reopen discovery, and the motion should be denied.

## II.     The Factors That LULAC Cites Counsel Against Reopening Discovery

LULAC agrees that there must be good cause to modify a scheduling order and reopen discovery. *See* ECF 617 at 6. LULAC focuses on four factors that district courts frequently evaluate in deciding whether to modify a scheduling order—"(1) the explanation for the failure to timely move for a modification of the scheduling order; (2) the importance of the modification; (3) potential prejudice in allowing the modification; and (4) the availability of a continuance to cure such prejudice." *Id.* (quoting *Gibson v. United States*, No. 1:18-cv-626, 2021 WL 6617723, at *1 (W.D. Tex. Mar. 15, 2021)). But these factors cut against granting the motion to reopen.

6

For one thing, LULAC has not adequately explained its failure to move for a modification of the scheduling order until now. LULAC underscores that it "first learned that Mr. Trende used his Dave's Redistricting App account to draw two additional minority opportunity Texas congressional districts during his September 2, 2022 deposition—after the close of fact discovery on July 15, 2022." *See* ECF 617 at 6. That Mr. Trende drew Texas congressional districts in 2020 was public information. It was available on Mr. Trende's Twitter account. That is how the United States raised the issue at Mr. Trende's deposition. LULAC does not explain why it could not have discovered this information and thus sought the maps sooner. *See Tolan v. Cotton*, No. 4:09-cv-1324, 2015 Wl 4874925, at *3 (S.D. Tex. Aug. 14, 2015) (holding that, in effectively what was "nothing more than an effort to re-open discovery," the facts sought by the movants were "facts that [they] should have discovered").

What is more, LULAC mischaracterizes the second factor they cite. It argues that "the importance of the evidence sought also weighs strongly in favor of modifying the scheduling order." *See* ECF 617 at 8. But the factor does not inquire into the importance of the evidence. Rather, it is "the importance of the modification." *Gibson*, 2021 WL 6617723, at *1. Since the evidence is not otherwise discoverable, modifying the scheduling order to reopen discovery is inconsequential—and thereby not important. But even if the issue were the importance of the evidence, the evidence is not important. Maps that were (1) drawn based on out-of-date data, (2) unrelated to the Legislature's drafting efforts, and (3) not the basis for Mr. Trende's expert report are not material to this case. That is presumably why no other plaintiffs have sought this information, moved to reopen discovery, or joined LULAC's motion.

Prolonging discovery would prejudice both Defendants and Dave's by requiring them to spend more resources on irrelevant discovery. A continuance would not cure that prejudice because it would not allow them to recover the resources once expended.

Lastly, "[w]hat constitutes good cause sufficient to justify the modification of a scheduling order necessarily varies with the circumstances of each case." 6A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1522.2 (3d ed.). In *Gibson*, the movant sought to reopen discovery because of changes in the minor plaintiff's medical conditions that raised new issues "previously believed to be unnecessary" to consider. 2021 WL 661723, at *1. But the circumstances here are meaningfully different. To reiterate, even if LULAC could obtain the maps through reopened discovery, the maps are unlikely to be probative of anything. Again, Mr. Trende was not involved in the Legislature's process for drawing districts, and he has already provided all materials that were a part of the analysis provided in his expert report. The districts in question he drew merely "for [his] own entertainment." Tr. 148:6.

## CONCLUSION

For the reasons explained above, Defendants respectfully ask that the Court deny the motion.

| | |
|---|---|
| Date: October 24, 2022 | Respectfully submitted. |
| | |
| KEN PAXTON<br>Attorney General of Texas | PATRICK K. SWEETEN<br>Deputy Attorney General for Special Litigation<br>Tex. State Bar No. 00798537 |
| BRENT WEBSTER<br>First Assistant Attorney General | WILLIAM T. THOMPSON<br>Deputy Chief, Special Litigation Unit<br>Tex. State Bar No. 24088531 |
| | */s/ Ari M. Herbert*<br>ARI M. HERBERT<br>Special Counsel, Special Litigation Unit<br>Tex. State Bar No. 24126093 |
| | OFFICE OF THE ATTORNEY GENERAL<br>P.O. Box 12548 (MC-009)<br>Austin, Texas 78711-2548<br>Tel.: (512) 463-2100<br>Fax: (512) 457-4410<br>patrick.sweeten@oag.texas.gov<br>will.thompson@oag.texas.gov<br>ari.herbert@oag.texas.gov<br>zachary.berg@oag.texas.gov |
| | COUNSEL FOR DEFENDANTS |

### CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on October 24, 2022, and that all counsel of record were served by CM/ECF.

*/s/ Ari M. Herbert*
ARI M. HERBERT