**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, | § § § | |
| *Plaintiffs,* | § § | Case No. 3:21-cv-259-DCG-JES-JVB |
| V. | § § | [Lead Case] |
| GREG ABBOTT, *et al.*, | § § | |
| *Defendants.* | § § | |
| ROSALINDA RAMOS ABUABARA, AKILAH BACY, ORLANDO FLORES, MARILENA GARZA, CECILIA GONZALES, AGUSTIN LOREDO, CINIA MONTOYA, ANA RAMÓN, JANA LYNNE SANCHEZ, JERRY SHAFER, DEBBIE LYNN SOLIS, ANGEL ULLOA, MARY URIBE, LUZ MORENO, AND MARIA MONTES, | § § § § § § § § § | |
| *Plaintiffs,* | § § § | Case No. 1:21-cv-965 |
| V. | § § | [Consolidated Case] |
| JOHN SCOTT, *et al.*, | § § § | |
| *Defendants.* | § § § § § § § § | |

**DEFENDANTS' ANSWER TO ABUABARA PLAINTIFFS'**
**THIRD AMENDED COMPLAINT**
**FOR DECLARATORY AND INJUNCTIVE RELIEF**

Defendants John Scott, in his official capacity as Secretary of State of Texas, and Gregory Wayne Abbott, in his official capacity as Governor of Texas, ("Defendants") file this original answer to the Abuabara Plaintiffs' Third Amended Complaint for Declaratory and Injunctive Relief (ECF 613).

**ANSWER**

Pursuant to Federal Rule of Civil Procedure 8(b), Defendants deny each and every allegation in Plaintiffs' Second Amended Complaint except for those expressly admitted here. The headings and paragraphs below directly correlate to the sections and numbered paragraphs of Plaintiffs' Third Amended Complaint. Titles that are reproduced in this original answer are included for organizational purposes only, and Defendants do not admit any matter contained in reproduced titles.

1. Defendants admit that Plaintiffs purport to bring claims challenging Senate Bill 6 and House Bill 1, pursuant to 52 U.S.C. § 10301, but Defendants deny that any violation of law occurred. Defendants further deny that Plaintiffs' causes of action referenced in this paragraph are meritorious and deny that Plaintiffs are entitled to relief on any of their claims. Defendants deny any remaining allegations in this paragraph.

2. Defendants admit that according to census data, the demographics of Texas changed between 2010 and 2020.  Defendants admit that Texas added two new congressional districts as a result of congressional reapportionment from the 2020 Census.  Defendants deny the remaining allegations in this paragraph.

3. Denied.

4. Denied.

5. Denied.

6. Denied.

7. Denied.

1

8. Denied.

9. Defendants admit that Plaintiffs purport to seek the relief described in this paragraph and deny that Plaintiffs are entitled to the relief they request. Defendants deny any remaining allegations in this paragraph.

## JURISDICTION AND VENUE

10. Defendants admit that Plaintiffs purport to bring an action pursuant to 52 U.S.C. § 10301, but Defendants deny that any violation of law occurred. Defendants further deny that Plaintiffs' causes of action referenced in this paragraph are meritorious and deny that Plaintiffs are entitled to relief on any of their claims.

11. Defendants admit that Plaintiffs purport to assert claims under 28 U.S.C. §§ 1331 and 1343, but deny that Plaintiffs' causes of action references in this paragraph are meritorious and deny that Plaintiffs are entitled to relief on any of their claims. Defendants deny any remaining allegations in this paragraph.

12. Admitted.

13. Defendants admit that venue is proper in the El Paso Division of the United States District Court for the Western District of Texas. Defendants deny that Plaintiffs are entitled to relief on any of the claims referenced in this paragraph. Defendants deny any remaining allegations in this paragraph.

14. Defendants admit that Plaintiffs purport to seek declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Fed. R. Civ. P. 57 and 65, and deny that Plaintiffs are entitled to relief on any of the claims referenced in this paragraph. Defendants deny any remaining allegations in this paragraph.

**PARTIES**

15. Defendants lack knowledge or sufficient information to form a belief about the truth of these allegations, and therefore deny them.

16. Defendants lack knowledge or sufficient information to form a belief about the truth of these allegations, and therefore deny them.

17. Defendants lack knowledge or sufficient information to form a belief about the truth of these allegations, and therefore deny them.

18. Defendants lack knowledge or sufficient information to form a belief about the truth of these allegations, and therefore deny them.

19. Defendants lack knowledge or sufficient information to form a belief about the truth of these allegations, and therefore deny them.

20. Defendants lack knowledge or sufficient information to form a belief about the truth of these allegations, and therefore deny them.

21. Defendants lack knowledge or sufficient information to form a belief about the truth of these allegations, and therefore deny them.

22. Defendants lack knowledge or sufficient information to form a belief about the truth of these allegations, and therefore deny them.

23. Defendants lack knowledge or sufficient information to form a belief about the truth of these allegations, and therefore deny them.

24. Defendants lack knowledge or sufficient information to form a belief about the truth of these allegations, and therefore deny them.

25. Defendants lack knowledge or sufficient information to form a belief about the truth of these allegations, and therefore deny them.

26. Defendants lack knowledge or sufficient information to form a belief about the truth of these allegations, and therefore deny them.

27. Defendants lack knowledge or sufficient information to form a belief about the truth of these allegations, and therefore deny them.

28. Defendants lack knowledge or sufficient information to form a belief about the truth of these allegations, and therefore deny them.

29. Defendants lack knowledge or sufficient information to form a belief about the truth of these allegations, and therefore deny them.

30. Defendants admit that Plaintiffs appear to sue John Scott in his official capacity as Secretary of State of Texas.  Defendants admit that Section 31.001(a) of the Texas Election Code states, "The secretary of state is the chief election officer of the state."  Defendants admit that Section 31.003 of the Texas Election Code states the following:

> The secretary of state shall obtain and maintain uniformity in the application, operation, and interpretation of this code and of the election laws outside this code.  In performing this duty, the secretary shall prepare detailed and comprehensive written directives and instructions relating to and based on this code and the election laws outside this code.  The secretary shall distribute these materials to the appropriate state and local authorities having duties in the administration of these laws.

Defendants admit that Section 31.005(b) of the Texas Election Code states the following:

> The secretary of state may order a person performing official functions in the administration of any part of the electoral processes to correct offending conduct if the secretary determines that the person is exercising the powers vested in that person in a manner that:
> (1)  impedes the free exercise of a citizen's voting rights; or
> (2)  unless acting under an order of a court of competent jurisdiction, delays or cancels an election that the person does not have specific statutory authority to delay or cancel.

Defendants admit that Section 141.031 of the Texas Election Code

states the following:

> (a)  A candidate's application for a place on the ballot that is required by this code must:
> (1)  be in writing;
> (2)  be signed and sworn to before a person authorized to administer oaths in this state by the candidate and indicate the date that the candidate swears to the application;
> (3)  be timely filed with the appropriate authority; and
> (4)  include:
> (A)  the candidate's name;
> (B)  the candidate's occupation;
> (C)  the office sought, including any place number or other distinguishing number;
> (D)  an indication of whether the office sought is to be filled for a full or unexpired term if the office sought and another office to be voted on have the same title but do not have place numbers or other distinguishing numbers;
> (E)  a statement that the candidate is a United States citizen;
> (F)  a statement that the candidate has not been determined by a final judgment of a court exercising probate jurisdiction to be:
> (i)  totally mentally incapacitated; or
> (ii)  partially mentally incapacitated without the right to vote;
> (G)  an indication that the candidate has either not been finally convicted of a felony or if so convicted has been pardoned or otherwise released from the resulting disabilities;
> (H)  the candidate's date of birth;
> (I)  the candidate's residence address or, if the residence has no address, the address at which the candidate receives mail and a concise description of the location of the candidate's residence;
> (J)  the candidate's length of continuous residence in the state and in the territory from which the office sought is elected as of the date the candidate swears to the application;
> (K)  the statement: "I, _____, of _____ County, Texas, being a candidate for the office of _____, swear that I will support and defend the constitution and laws of the United States and of the State of Texas";
> (L)  a statement that the candidate is aware of the nepotism law, Chapter 573, Government Code; and
> (M)  a public mailing address at which the candidate receives correspondence relating to the candidate's campaign,

if available, and an electronic mail address at which the candidate receives correspondence relating to the candidate's campaign, if available.

(a-1)   A person who has been convicted of a felony shall include in the application proof that the person is eligible for public office under Section 141.001(a)(4).

(b)   Instead of the statement required by Subsection (a)(4)(F), a candidate eligible for office because of Section 1.020(a) shall include in the application a statement that the person's mental capacity has been completely restored by a final judgment of a court.

(c)   Instead of the statement required by Subsection (a)(4)(F), a candidate eligible for office because of Section 1.020(b) shall include in the application a statement that the person's guardianship has been modified to include the right to vote or the person's mental capacity has been completely restored, as applicable, by a final judgment of a court.

(d)   The secretary of state may prescribe a different form for an application for a place on the ballot for each of the following:

(1)   an office of the federal government;

(2)   an office of the state government; or

(3)   an office of a political party.

Defendants admit that Section 172.021 of the Texas Election Code states the following:

(a)   To be entitled to a place on the general primary election ballot, a candidate must make an application for a place on the ballot.

(b)   An application must, in addition to complying with Section 141.031, be accompanied by the appropriate filing fee or a petition in lieu of the filing fee that satisfies the requirements prescribed by Section 141.062.  A political party may not require payment of a fee as a condition to applying for a place on the ballot as a candidate for county chair or precinct chair.

(b-1)   Except as provided by Subsection (b-2), the authority receiving an application shall return it to the applicant as incomplete if the applicant submits payment of a fee that is returned for insufficient funds.  The applicant may resubmit the application before the end of the filing period, but payment of the filing fee may not be made in the form of a check from the same account as that of the payment previously returned for insufficient funds.

(b-2)   If a payment of a filing fee is returned for insufficient funds after the end of the filing period, the application is not considered to be timely filed, and the authority receiving the application shall inform the applicant that the application was not valid.

(c)   An application filed by mail is considered to be filed at the time of its receipt by the appropriate authority.

(d)  The circulation of a petition to be filed under this subchapter in connection with a candidate's application for a place on the ballot does not constitute candidacy or an announcement of candidacy for purposes of the automatic resignation provisions of Article XVI, Section 65, or Article XI, Section 11, of the Texas Constitution.

(e)  A candidate for an office specified by Section 172.024(a)(8), (10), or (12), or for justice of the peace in a county with a population of more than 1.5 million, who chooses to pay the filing fee must also accompany the application with a petition for a place on the primary ballot as a candidate for judicial office that complies with the requirements prescribed for the petition authorized by Subsection (b), except that the minimum number of signatures that must appear on the petition required by this subsection is 250.  If the candidate chooses to file the petition authorized by Subsection (b) in lieu of the filing fee, the minimum number of signatures required for that petition is increased by 250. Signatures on a petition filed under this subsection or Subsection (b) by a candidate covered by this subsection may not be obtained on the grounds of a county courthouse or courthouse annex.

(f)  A political party's state executive committee by rule may require that an application for the office of county chair be accompanied by a nominating petition containing the signatures of at least 10 percent of the incumbent precinct chairs serving on the county executive committee.

(g)  A candidate for the office of chief justice or justice, supreme court, or presiding judge or judge, court of criminal appeals, who chooses to pay the filing fee must also accompany the application with a petition that complies with the requirements prescribed for a petition authorized by Subsection (b), except that the minimum number of signatures that must appear on the petition required by this subsection is 50 from each court of appeals district.

Defendants admit that Section 172.022 of the Texas Election Code states the following:

(a)  An application for a place on the general primary election ballot must be filed with:

(1)  the state chair, for an office filled by voters of more than one county;  or

(2)  the county chair or the secretary, if any, of the county executive committee, for an office filled by voters of a single county.

(b)  Not later than the day before the last day of the filing period, the county chair shall post on the political party's Internet website or in the location where a candidate files for a place on the ballot notice of the address at which the county chair or secretary will be available to receive applications on the last day of the filing period.  If both the county chair and the secretary will be available, the notice must contain the address at which each will be available.  Section 1.006 does not apply to this subsection.

Defendants admit that Section 172.0221 of the Texas Election Code states the following:

The authority with whom an application is filed must inform the candidate that the candidate's public mailing address and, if provided on the application, the candidate's electronic mail address will be posted by the secretary of state on the secretary's publicly viewable website.

Defendants admit that Section 172.0222 of the Texas Election Code states the following:

(a)  If the application of this section conflicts with the application of Section 141.032, this section prevails.

(b)  On the filing of an application for a place on the general primary election ballot, the authority with whom the application is filed shall review the application to determine whether it complies with the requirements as to form, content, and procedure that it must satisfy for the candidate's name to be placed on the general primary election ballot.

(c)  Except as provided by Subsection (d) or (e), the review shall be completed not later than the fifth business day after the date the application is received by the authority.

(d)  If an application is submitted fewer than five business days before the regular filing deadline, the review shall be completed not later than the first Friday after the regular filing deadline.

(e)  If an application is accompanied by a petition, the petition is considered part of the application, and the review shall be completed as soon as practicable after the date the application is received by the authority. However, the petition is not considered part of the application for purposes of determining compliance with the requirements applicable to each document, and a deficiency in the requirements for one document may not be remedied by the contents of the other document. Unless the petition is challenged, the authority is only required to review the petition for facial compliance with the applicable requirements as to form, content, and procedure.

(f)   A determination under this section that an application complies with the applicable requirements does not preclude a subsequent determination that the application does not comply, subject to Section 172.0223.

(g)   If an application does not comply with the applicable requirements, the authority shall reject the application and immediately deliver to the candidate written notice of the reason for the rejection.

(h)   This section does not apply to a determination of a candidate's eligibility.

(i)   After the filing deadline:

(1)   a candidate may not amend an application filed under Section 172.021; and

(2)   the authority with whom the application is filed may not accept an amendment to an application filed under Section 172.021.

Defendants admit that Section 172.0223 of the Texas Election Code states the following:

(a) If the application of this section conflicts with the application of Section 141.034, this section prevails.

(b)   An application for a place on the general primary election ballot may not be challenged for compliance with the applicable requirements as to form, content, and procedure after the 50th day before the date of the election for which the application is made.

(c)   This section does not apply to a determination of a candidate's eligibility.

(d)   A challenge must state with specificity how the application does not comply with the applicable requirements as to form, content, and procedure. The authority's review of the challenge is limited to the specific items challenged and any response filed with the authority by the challenged candidate.

Defendants admit that Section 172.023 of the Texas Election Code states the following:

(a)   An application for a place on the general primary election ballot must be filed not later than 6 p.m. on the second Monday in December of an odd-numbered year unless the filing deadline is extended under Subchapter C.

(b)   An application, other than an application for the office of precinct chair, may not be filed earlier than the 30th day before the date of the regular filing deadline.   An

9

application for the office of precinct chair may not be filed earlier than the 90th day before the date of the regular filing deadline.

Defendants admit that Section 172.024 of the Texas Election Code states the following:

> (a)  The filing fee for a candidate for nomination in the general primary election is as follows:
> (1)  United States senator $5,000
> (2)  office elected statewide, except United States senator 3,750
> (3)  United States representative 3,125
> (4)  state senator 1,250
> (5)  state representative 750
> (6)  member, State Board of Education 300
> (7)  chief justice or justice, court of appeals, other than a justice specified by Subdivision (8) 1,875
> (8)  chief justice or justice of a court of appeals that serves a court of appeals district in which a county with a population of more than one million is wholly or partly situated 2,500
> (9)  district judge or judge specified by Section 52.092(d) for which this schedule does not otherwise prescribe a fee 1,500
> (10)  district or criminal district judge of a court in a judicial district wholly contained in a county with a population of more than 1.5 million 2,500
> (11)  judge, statutory county court, other than a judge specified by Subdivision (12) 1,500
> (12)  judge of a statutory county court in a county with a population of more than 1.5 million 2,500
> (13)  district attorney, criminal district attorney, or county attorney performing the duties of a district attorney 1,250
> (14)  county commissioner, district clerk, county clerk, sheriff, county tax assessor-collector, county treasurer, or judge, constitutional county court:
> (A)  county with a population of 200,000 or more 1,250
> (B)  county with a population of under 200,000 750
> (15)  justice of the peace or constable:
> (A)  county with a population of 200,000 or more 1,000
> (B)  county with a population of under 200,000 375
> (16)  county surveyor 75
> (17)  office of the county government for which this schedule does not otherwise prescribe a fee 750
> (b)  If a fee prescribed by Subsection (a) is declared invalid by a final judgment of a court, the secretary of state shall prescribe a filing fee consistent with the judgment to replace the invalidated fee.

Defendants admit that Section 172.002 of the Texas Election Code states the following:

> (a)   Except as otherwise provided by this code, a political party's nominees in the general election for offices of state and county government and the United States Congress may be nominated by primary election, held as provided by this code, if the party's nominee for governor in the most recent gubernatorial general election received at least two percent but less than 20 percent of the total number of votes received by all candidates for governor in the election.
>
> (b)  If any nominee of a party is nominated by primary election, none of that party's nominees may be nominated that year by convention.
>
> (c)  For a political party to be entitled to hold a primary election under this section, the state chair, not later than one year before general election day, must deliver written notice to the secretary of state that the party will hold a primary election in the general election year.

Defendants admit that Section 172.028 of the Texas Election Code states the following:

> (a)   Except as provided by Subsection (c), the state chair shall certify to the secretary of state for placement on the general primary election ballot the name of each candidate who files with the chair an application that complies with Section 172.021(b).  The secretary of state shall post on the secretary's Internet website that is viewable by the public:
>
> (1)  the certified list; and
>
> (2)   for each certified candidate, the public mailing address and, if provided by the candidate, the electronic mail address at which the candidate receives correspondence relating to the candidate's campaign.
>
> (b)  Not later than the ninth day after the date of the regular filing deadline, the state chair shall notify the county chair in each county in which the candidate's name is to appear on the ballot that the certification has been posted by the secretary of state.
>
> (c)  A candidate's name may not be certified:
>
> (1)  if, before delivering the certification, the state chair learns that the name is to be omitted from the ballot under Section 172.057;  or
>
> (2)  for an office for which the candidate's application is invalid under Section 141.033.

(d)   A copy of each certification shall be made available on request, without charge, to each newspaper published in this state and to each licensed radio and television station in this state.

Defendants admit that Section 142.005 of the Texas Election Code states the following:

An application for a place on the ballot must be filed with:
(1)   the secretary of state, for a statewide or district office;  or
(2)   the county judge, for a county or precinct office.

Defendants admit that Section 42.037 of the Texas Election Code states the following:

(a)   Not later than the 120th day after the date an order changing a county election precinct boundary is adopted, the county clerk shall deliver to the secretary of state a map depicting the affected precinct's boundary as changed and showing the number of the precinct.
(b)   The secretary of state shall retain each map for 10 years after receipt.  After that period, the secretary shall transfer the map to the state library.
(c)   The state librarian shall retain the map for 20 years after receipt.

Defendants deny any remaining allegations in this paragraph.

31.   Defendants admit that Plaintiffs appear to sue Governor Greg Abbott in his official capacity as the Governor of Texas.  Defendants admit that Section 3.003 of the Texas Election Code states the following:

(a)  The governor shall order:
(1)   each general election for officers of the state government, members of the United States Congress, and electors for president and vice-president of the United States;
(2)   each election on a proposed constitutional amendment; and
(3)   each special election to fill a vacancy in the legislature or in congress.
(b)  The order shall be made by proclamation.
(c)  Not later than the 36th day before election day, a copy of the proclamation ordering an election shall be mailed to the county judge of each county wholly or partly in the territory covered by the election.

Defendants deny any remaining allegations in this paragraph.

## LEGAL BACKGROUND

32.  Defendants admit that 52 U.S.C. § 10301 states the following:

> (a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 10303(f)(2) of this title, as provided in subsection (b).
>
> (b) A violation of subsection (a) is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered: Provided, That nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population.

Defendants deny any remaining allegations in this paragraph.

33.  Denied.

34.  Denied..

35.  Defendants admit that 52 U.S.C. § 10301(b) states the following:

> A violation of subsection (a) is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered: Provided, That nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population.

Defendants admit that the Senate Judiciary Committee issued a committee report that discussed the 1982 amendments to the Voting Rights Act.  *See* S. Rept. 97-417.  Defendants deny the remaining allegations in this paragraph.

36. Defendants admit that the Senate Judiciary Committee issued a committee report that discussed the 1982 amendments to the Voting Rights Act.  *See* S. Rept. 97-417.  Defendants deny the remaining allegations in this paragraph.

37. Defendants deny Plaintiffs' characterization of *United States v. Marengo Cnty. Comm'n*, 731 F.2d 1546 (11th Cir. 1984) and the Senate Report it cites.  Defendants deny any remaining allegations in this paragraph.

## FACTUAL ALLEGATIONS

38. Defendants admit that the United States Census Bureau released apportionment data for congressional districts on April 26, 2021.   Defendants admit that according to the results of congressional reapportionment from the 2020 Census, Texas added two new congressional districts. Defendants admit that the U.S. Census Bureau released the initial Public Law 94-171 data on August 12, 2021 (as distinguished from the full redistricting toolkit, which was released on September 16, 2021).  Defendants admit that according to U.S. census data, the Texas population increased by 3,999,944 people between 2010 and 2020.  Defendants deny any remaining allegations in this paragraph.

39. Defendants admit that according to U.S. census data the non-Hispanic white population in Texas grew by 187,252 people from 2010 to 2020.  Defendants admit that according to U.S. census data, the Hispanic population in Texas increased by 1,980,796 people from 2010 to 2020.  Defendants admit that according to U.S. census data, the non-Hispanic Asian population in Texas increased by 613,092 people from 2010 to 2020.  Defendants admit that according to U.S. census data, the non-

14

Hispanic black population in Texas increased by 557,887 people from 2010 to 2020. Defendants deny the remaining allegations in this paragraph.

40. Denied.

41. Defendants admit that the 2020 Census did not collect citizenship information. Defendants deny the remaining allegations in this paragraph.

42. Denied.

43. Defendants admit that the Texas Legislature began holding public hearings to solicit public input on the 2021 legislative redistricting process in January 2021. Defendants deny any remaining allegations in this paragraph.

44. Admitted.

45. Defendants admit that the notices of public hearings held by the Senate Special Committee on Redistricting from January to solicit public input on the legislative redistricting process contained the following language regarding public testimony and the submission of written comments:

> Public Testimony: No in-person testimony will be taken at the hearing. All testimony will be taken by two-way videoconference. To provide testimony by videoconference, witnesses need access to a computer or other device with an internet connection and video/audio capability (e.g., smartphone, tablet, etc.). If you do not have access to such a device at home, work, or school, please visit your local public library. Please note that witnesses must have both audio and video capabilities in order to provide testimony by videoconference.
> Written Comments: Any member of the public may submit written comments and attachments to the Committee at any time throughout the legislative redistricting process via the public-input portal at https://senate.texas.gov/redistrictingcomment/. All comments and attachments received via the public-input portal are shared with all committee members and maintained in the Committee's official records.

> Defendants deny any remaining allegations in this paragraph.

46. Denied.

47. Defendants admit that Governor Abbott issued a proclamation on September 7, 2021, which

announced a third special session to commence on September 20, 2021, for the purpose of considering "[l]egislation relating to the apportionment of the State of Texas into districts used to elect members of the Texas House of Representatives, the Texas Senate, the State Board of Education, and the United States House of Representatives." Defendants admit that Senator Joan Huffman released Plan C2101, filed Senate Bill 6 on September 27, 2021, and scheduled the bill for public hearing on September 30, 2021. Defendants deny any remaining allegations in this paragraph.

48. Admitted.

49. Denied.

50. Denied.

51. Defendants admit that the Senate Special Committee on Redistricting met to consider Senate Bill 6 on October 4, 2021, and reported it favorably as substituted. Defendants deny the remaining allegations in this paragraph.

52. Defendants admit that the full Senate considered Senate Bill 6 on October 8, 2021. Defendants admit that Senate Bill 6 was amended in accordance with Floor Amendments 1 and 2. Defendants admit that Floor Amendments 3, 4, 5, 6, 7, 8, 10, 11, and 12 failed of adoption. Defendants admit that the Senate passed Senate Bill 6 with 18 yeas and 13 nays. Defendants deny the remaining allegations in this paragraph.

53. Defendants admit that the Texas House received Senate Bill 6 from the Senate on October 8, 2021.

54. Defendants admit that the Texas House Redistricting Committee held hearings at which the public was invited to offer testimony on redistricting via video conference, and that those hearings were held before the House received Senate Bill 6 from the Senate on October 8, 2021. Defendants deny any remaining allegations in this paragraph.

55. Denied.

56. Denied.

57. Defendants admit that Adam Foltz was an employee of the Texas Legislative Council and assigned to Representative Todd Hunter, who is the Chair of the House Redistricting Committee. Defendants deny any remaining allegations in this paragraph.

58. Denied.

59. Defendants admit that the Texas House received Senate Bill 6 from the Senate on October 8, 2021, and referred it to the House Redistricting Committee on October 8, 2021.  Defendants deny the remaining allegations in this paragraph.

60. Denied.

61. Defendants admit that the House considered Senate Bill 6 on October 16, 2021.  Defendants admit that twenty-six amendments were offered on that day, some of which were amendments to amendments, and five amendments were adopted as amended.  Defendants admit that the House met on October 17, 2021 and passed Senate Bill 6 with a vote of 79 yeas, 56 nays, and 1 present and not voting.  Defendants deny any remaining allegations in this paragraph.

62. Defendants admit that on October 17, 2021, the Senate refused to concur in the House amendments to Senate Bill 6 and a conference committee was appointed.  Defendants admit that on October 17, 2021 the conference committee filed a report.  Defendants deny any remaining allegations in this paragraph.

63. Denied.

64. Defendants admit that on October 18, 2021, the Senate and House adopted the conference committee report.  Defendants deny the remaining allegations in this paragraph.

65. Defendants admit that Governor Abbott signed Senate Bill 6 on October 25, 2021.

66. Defendants admit that the House Committee on Redistricting held a hearing on September 9, 2021, for the purpose of hearing public testimony regarding the 2020 U.S. Census data about any area of the State.  Defendants deny any remaining allegations in this paragraph.

67. Defendants admit that Representative Hunter filed House Bill 1, which was a proposed redistricting plan for the Texas House, on September 30, 2021.  Defendants admit that House Bill 1 was referred to the House Redistricting Committee on September 30, 2021.

68. Defendants admit that the House Redistricting Committee held a public hearing on House Bill 1 on October 4, 2021, at which the Committee invited testimony from the public.  Defendants admit that during the hearing on October 4, 2021, Chair Hunter stated that Adam Foltz "is an employee through the Legislative Council" and that the Legislative Council hired Mr. Foltz at Chair Hunter's request.  Defendants deny the remaining allegations in this paragraph.

69. Defendants admit that a committee substitute was considered in committee on October 5, 2021, and it was reported favorably as substituted.  Defendants deny the remaining allegations in this paragraph.

70. Defendants admit that the Texas House considered House Bill 1 on October 12, 2021. Defendants deny the remaining allegations in this paragraph.

71. Defendants admit that the House met on October 13, 2021, and that House Bill 1 passed with a vote of 83 yeas, 63 nays, and 1 present and not voting.  Defendants admit that according to the Texas Legislative Council, based on 2016-2020 American Community Survey data, Plan H2316 contains 30 Texas House districts that have a Hispanic CVAP of greater than 50%.  Defendants admit that according to the Texas Legislative Council, based on 2016-2020 American Community Survey data, Plan H2100 contains 33 Texas House districts that have a Hispanic CVAP of greater than 50%. Defendants deny the remaining allegations in this paragraph.

72. Defendants admit that the Texas Senate Special Committee on Redistricting considered House Bill 1 in a public hearing on October 15, 2021, and that testimony was taken in committee.  Defendants admit that on October 15, 2021, the Senate Special Committee on Redistricting reported House Bill 1 favorably without amendments and the Senate passed the bill with a vote of 18 yeas and 13 nays. Defendants deny any remaining allegations in this paragraph.

73. Defendants admit that Governor Abbott signed House Bill 1 on October 25, 2021.

74. Defendants admit that Section 2 of the Voting Rights Act states the following:

> (a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 10303(f)(2) of this title, as provided in subsection (b).
>
> (b) A violation of subsection (a) is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered: Provided, That nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population.

Defendants deny any remaining allegations in this paragraph.

75. Defendants admit that ecological regression and ecological inference are statistical methods used by some social scientists.  Defendants deny the remaining allegations in this paragraph.

76. Denied.

77. Denied.

78. Denied.

79. Denied.

80. Denied.

81. Defendants admit that according to the Texas Department of Transportation, Texas and Mexico share 1,254 miles of common border.  Defendants deny the remaining allegations in this paragraph.

82. Defendants admit that in Plan C2193, congressional districts 16, 23, 28, 15, and 34 include locations along the U.S.-Mexico border.  Defendants deny the remaining allegations in this paragraph.

83. Denied.

84. Defendants admit that Plaintiffs have appended as Exhibits 1 and 2 maps that purport to be demonstration maps of congressional districts. Defendants deny any remaining allegations in this paragraph.

85. Defendants admit that in Plan C2193, part of El Paso is located in Congressional District 16. Defendants deny the remaining allegations in this paragraph.

86. Denied.

87. Denied.

88. Defendants admit that Plaintiffs' demonstration maps purport to contain the referenced areas. Defendants deny any remaining allegations in this paragraph.

89. Denied.

90. Denied.

91. Defendants admit that in Plan C2193, Congressional District 23 is located east of Congressional District 16 and includes some areas along the Texas-Mexico border.  Defendants admit that Congressional District 23 includes Maverick County and a portion of El Paso County. Defendants deny the remaining allegations in this paragraph.

92. Denied.

93. Denied.

94. Denied.

95. Denied.

96. Denied.

97. Defendants admit that Plaintiffs submitted an expert report that alleges Hispanic voters are 72% of the CVAP in proposed congressional district 23 in a demonstration map but Defendants deny the accuracy of those numbers.  Defendants deny any remaining allegations in this paragraph.

98. Defendants admit that Plaintiffs' demonstration map purports to contain the referenced areas. Defendants deny any remaining allegations in this paragraph.

99. Denied.

100. Denied.

101. Defendants admit that in Plan C2193, Congressional District 28 includes the City of Laredo, Starr County, and a portion of Bexar County.  Defendants deny the remaining allegations in this paragraph.

102. Defendants admit that in Plan C2193, Congressional District 15 is located to the east of Congressional District 28 and includes Guadalupe County and a portion of the City of McAllen. Defendants admit that the Hispanic CVAP of Congressional District 15 in Plan C2193 is more than 70 percent according to the Texas Legislative Council.  Defendants deny the remaining allegations in this paragraph.

103. Defendants admit the in Plan C2193, Congressional District 34 includes the southernmost portion of the Texas Gulf Coast.  Defendants deny the remaining allegations in this paragraph.

104. Defendants lack knowledge or sufficient information to form a belief as to the truth of the allegations in the first and second sentences of this paragraph and therefore deny them.  Defendants deny the remaining allegations in this paragraph.

105. Defendants lack knowledge or sufficient information to form a belief as to the truth of the allegations in this paragraph and therefore deny them.  Defendants deny any remaining allegations in this paragraph.

106. Defendants admit that Plaintiffs submitted an expert report that alleges Hispanic voters are 72% of the CVAP in proposed congressional district 34 in a demonstration map but Defendants deny the accuracy of those numbers.  Defendants deny any remaining allegations in this paragraph.

107. Denied.

108. Denied.

109. Defendants admit that in Plan C2193, Congressional District 27 is located to the north of Congressional District 34 and includes Nueces County.  Defendants deny the remaining allegations in this paragraph.

110. Defendants lack knowledge or sufficient information to form a belief as to the truth of the allegations in this paragraph and therefore deny them.  Defendants deny any remaining allegations in this paragraph.

111. Denied.

112. Denied.

113. Denied.

114. Denied.

115. Denied.

116.  Defendants lack knowledge or sufficient information to form a belief as to the truth of the allegations in the first and second sentences in this paragraph and therefore deny them.  Defendants deny the remaining allegations in this paragraph.

117. Denied.

118. Denied.

119. Denied.

120. Denied.

121. Denied.

122. Denied.

123. Denied.

124. Defendants lack knowledge or sufficient information to form a belief as to the truth of the allegations in the first and second sentences in this paragraph and therefore deny them.  Defendants deny the remaining allegations in this paragraph.

125. Defendants admit that Plaintiffs' demonstration map purports to include the referenced areas.  Defendants deny any remaining allegations in this paragraph.

126. Defendants admit that Plaintiffs submitted an expert report that alleges Hispanic voters are 50.7% of the CVAP in proposed congressional district 20 in a demonstration map but Defendants deny the accuracy of those numbers.  Defendants deny any remaining allegations in this paragraph.

127. Denied.

128. Denied.

129. Denied.

130. Denied.

131. Denied.

132. Denied.

133. Denied.

134. Denied.

135. Denied.

136. Denied.

137. Denied.

138. Denied.

139. Denied.

140. Denied.

141. Denied.

142. Denied.

143. Denied.

144. Defendants admit the allegations in the first sentence of this paragraph.  Defendants deny the remaining allegations in this paragraph.

145. Denied.

146. Denied.

147. Denied.

148. Denied.

149. Denied.

150. Defendants admit that Congressional District 12 in Plan C2193 includes portions of Parker and Tarrant Counties.  Defendants deny the remaining allegations in this paragraph.

151. Denied.

152. Defendants lack knowledge or sufficient information to form a belief as to the truth of the allegations in the first and second sentences in this paragraph and therefore deny them.  Defendants deny the remaining allegations in this paragraph.

153. Defendants lack knowledge or sufficient information to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

154. Denied.

155. Denied.

156. Denied.

157. Defendants lack sufficient knowledge or information to form a belief as to the allegation in this paragraph, and therefore deny the allegation.

158. Denied.

159. Denied.

160. Defendants admit that Harris County is the most populous county in Texas. Defendants deny the remaining allegations in this paragraph.

161. Defendants admit that under Plan C2193, Harris County includes part or all of Congressional Districts 2, 7, 8, 9, 18, 29, 36, and 38. Defendants deny the remaining allegations in this paragraph.

162. Denied.

163. Denied.

164. Defendants admit that white voters in CD 29 do not vote as a block in opposition to black and Latino voters' preferred candidates. Defendants deny the remaining allegations in this paragraph.

165. Denied.

166. Denied.

167. Denied.

168. Denied.

169. Denied.

170. Denied.

171. Denied.

172. Denied.

173. Denied.

174. Denied.

175. Denied.

176. Denied.

177. Denied.

178. Denied.

179. Denied.

180. Denied.

181. Denied.

182. Defendants lack sufficient knowledge or information to form a belief as to the allegation in the first sentence of this paragraph, and therefore deny it. Defendants deny the remaining allegations in this paragraph.

183. Defendants lack sufficient knowledge or information to form a belief as to the allegation in the second sentence of this paragraph, and therefore deny it. Defendants deny the remaining allegations in this paragraph.

184. Denied.

185. Denied.

186. Denied.

187. Denied.

188. Denied.

189. Defendants admit that under Plan H2316, Tarrant County includes House Districts 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, and 101. Defendants deny the remaining allegations in this paragraph.

190. Denied.

191. Defendants admit that Plaintiffs have appended as Exhibit 3 a map that purports to be a demonstration map of Texas House Districts in Tarrant County. Defendants deny any remaining allegations in this paragraph.

192. Denied.

193. Denied.

194. Denied.

195. Denied.

196. Defendants admit that Harris County is the most populous county in Texas. Defendants admit that under Plan H2316, Harris County includes House Districts 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, and 150. Defendants deny the remaining allegations in this paragraph.

197. Denied.

198. Denied.

199. Denied.

200. Denied.

201. Denied.

202. Defendants admit that Plaintiffs have appended as Exhibit 4 a map that purports to be a demonstration map of Texas House Districts in Harris County. Defendants deny any remaining allegations in this paragraph.

203. Denied.

204. Denied.

205. Denied.

206. Denied.

207. Denied.

208. Denied.

209. Denied.

210. Denied.

211. Denied.

212. Denied.

213. Defendants lack sufficient knowledge or information to form a belief as to the allegations in this paragraph, and therefore deny them.

214. Denied.

215. This paragraph contains Plaintiffs' characterizations of court decisions. Those decisions speak for themselves. Defendants deny Plaintiffs' characterizations of those decisions to the extent they are inconsistent with the decisions themselves. Defendants deny any remaining allegations in this paragraph.

216. Denied.

217. This paragraph purports to characterize an unspecified court opinion.  Defendants lack knowledge or sufficient information to form a belief as to the truth of the allegations regarding the unspecified court opinion in this paragraph and therefore deny them.  Defendants deny any remaining allegations in this paragraph.

218. Denied.

219. Denied.

220. Denied.

221. Denied.

222. Denied.

223. Denied.

224. This paragraph purports to characterize four court decisions: *Perez v. Abbott*, 253 F. Supp. 3d 864 (W.D. Tex. 2017); *Perez v. Abbott*, 250 F. Supp. 3d 123 (W.D. Tex. 2017); *Texas v. United States*, 887 F. Supp. 2d 133 (D.D.C. 2012), *vacated and remanded*, 570 U.S. 928 (2013); *Perez v. Abbott*, 390 F. Supp. 3d 803, 807 (W.D. Tex. 2019).  Defendants deny Plaintiffs' characterization of these decisions. Defendants further deny the allegations in the second sentence of this paragraph. Defendants deny any remaining allegations in this paragraph.



225. Denied.

226. Denied.

227. Denied.

228. Denied.

229. Denied.

230. Defendants lack knowledge or sufficient information to form a belief about the truth of the allegations in this paragraph, and therefore deny them.

231. Defendants lack knowledge or sufficient information to form a belief about the truth of these allegations, and therefore deny them.

232. Defendants lack knowledge or sufficient information to form a belief about the truth of the allegations in the second sentence of this paragraph, and therefore deny them.  Defendants deny the remaining allegations in this paragraph.

233. Defendants lack knowledge or sufficient information to form a belief about the truth of these allegations, and therefore deny them.

234. Defendants lack knowledge or sufficient information to form a belief about the truth of these allegations, and therefore deny them.

235. Denied.

236. Denied.

237. Defendants lack knowledge or sufficient information to form a belief about the truth of these allegations, and therefore deny them.

238. Defendants lack knowledge or sufficient information to form a belief about the truth of these allegations, and therefore deny them.

239. Denied.

240. Denied.

241. Denied.

242. Denied.

243. Denied.

244. This Paragraph purports to characterize the U.S. Census Bureau's American Community Survey data, which speaks for itself. Defendants deny Plaintiffs' characterization of the data. Defendants deny the remaining allegations in this paragraph.

245. This Paragraph purports to characterize the U.S. Census Bureau's American Community Survey data, which speaks for itself. Defendants deny Plaintiffs' characterization of the data. Defendants lack knowledge or sufficient information to form a belief about the truth of the allegations in the third sentence of this paragraph.  Defendants deny the remaining allegations in this paragraph.

246. Denied.

247. Denied.

## CLAIMS FOR RELIEF

### COUNT I

248. Defendants repeat and reaffirm their answers to each and every allegation contained in the paragraphs above and incorporate them by reference as though fully set forth herein.

249. Defendants admit that 52 U.S.C. § 10301(a) states the following:

> No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 10303(f)(2) of this title, as provided in subsection (b).

Defendants deny any remaining allegations in this paragraph.

250. Denied.

251. Denied.

252. Denied.

253. Denied.

254. Denied.

255. Denied.

256. Denied.

257. Denied.

## COUNT II

258. Defendants repeat and reaffirm their answers to each and every allegation contained in the

paragraphs above and incorporate them by reference as though fully set forth herein.

259. Defendants admit that 52 U.S.C. § 10301(a) states the following:

> No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 10303(f)(2) of this title, as provided in subsection (b).

Defendants deny any remaining allegations in this paragraph.

260. Denied.

261. Denied.

262. Denied.

263. Denied.

264. Denied.

265. Denied.

266. Denied.

## PRAYER FOR RELIEF

Defendants deny that Plaintiffs are entitled to any of the relief requested herein.

31

a. Defendants deny that Plaintiffs are entitled to any of the relief requested herein.

b. Defendants deny that Plaintiffs are entitled to any of the relief requested herein.

    i. Defendants deny that Plaintiffs are entitled to any of the relief requested herein.

    ii. Defendants deny that Plaintiffs are entitled to any of the relief requested herein.

    iii. Defendants deny that Plaintiffs are entitled to any of the relief requested herein.

    iv. Defendants deny that Plaintiffs are entitled to any of the relief requested herein.

c. Defendants deny that Plaintiffs are entitled to any of the relief requested herein.

d. Defendants deny that Plaintiffs are entitled to any of the relief requested herein.

    i. Defendants deny that Plaintiffs are entitled to any of the relief requested herein.

    ii. Defendants deny that Plaintiffs are entitled to any of the relief requested herein.

e. Defendants deny that Plaintiffs are entitled to any of the relief requested herein.

f. Defendants deny that Plaintiffs are entitled to any of the relief requested herein.

g. Defendants deny that Plaintiffs are entitled to any of the relief requested herein.

## DEFENDANTS' AFFIRMATIVE AND OTHER DEFENSES

1. This Court lacks subject-matter jurisdiction to consider all claims asserted in Plaintiffs' Third Amended Complaint.

2. Plaintiffs lack standing to assert all claims asserted in their Third Amended Complaint.

3. Plaintiffs have failed to state a claim upon which relief can be granted.

4. Defendants assert all applicable immunities to Plaintiffs' claims, including but not limited to their entitlement to Eleventh Amendment and sovereign immunity.

5. Pursuant to 42 U.S.C. § 1988(b) and 52 U.S.C. § 10310(e), Defendants will be entitled to recover their attorney's fees if they are the prevailing parties.

6.  Defendants assert that imposing liability under § 2 of the Voting Rights Act is, in this case, unconstitutional because it is inconsistent with the Equal Protection Clause of the 14th Amendment to the U.S. Constitution.

7.  Defendants assert that imposing liability under § 2 of the Voting Rights Act is, in this case, unconstitutional because it would exceed Congress's enforcement power under the 14th and 15th Amendments to the U.S. Constitution. Imposing liability here would not be congruent and proportional to the enforcement of the 14th Amendment or 15th Amendment.

8.  Defendants reserve the right to assert additional affirmative and other defenses as they may become apparent in the factual development of this case.

Date: October 27, 2022

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
Tex. State Bar No. 24088531

MUNERA AL-FUHAID
Special Counsel, Special Litigation Unit
Tex. State Bar No. 24094501

ARI M. HERBERT
Special Counsel, Special Litigation Unit
Tex. State Bar No. 24126093

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
patrick.sweeten@oag.texas.gov
will.thompson@oag.texas.gov
munera.al-fuhaid@oag.texas.gov
ari.herbert@oag.texas.gov

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via

CM/ECF on October 27, 2022, and that all counsel of record were served by CM/ECF.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN