IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>GREG ABBOTT, in his official capacity as Governor of the State of Texas, *et al.*,<br><br>*Defendants*. | CIVIL ACTION NO.<br>3:21-cv-00259-DCG-JES-JVB<br>[Consolidated Action: Lead Case] |

**LULAC PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION TO REOPEN DISCOVERY FOR THE LIMITED PURPOSE OF SEEKING
SPECIFIC DOCUMENTS FROM DAVE'S REDISTRICTING, LLC**

LULAC Plaintiffs seek a limited number of documents that are confirmed to be in the possession of Dave's Redistricting, LLC ("Dave's Redistricting") and that are relevant to the testimony of Sean Trende—one of the State's experts. *See* Dkt. 617. In its opposition, the State mischaracterizes the relevance of these documents, and obfuscates the nature and number of the documents that Dave's Redistricting says it has. Because the documents fall well within the bounds of Rule 26(b), and the good cause factors strongly weigh in LULAC Plaintiffs' favor, LULAC Plaintiffs respectfully request that the Court grant their motion.

**I.  The State Fails to Show that the Documents Sought by LULAC Plaintiffs do not Exist.**

In support of its contention that "Dave's [does not have] the maps that LULAC seeks," Dkt. 622 at 4, the State points only to the declaration of Mr. Trende, who states that he does not now have access to the requested maps in his Dave's Redistricting account. However, whether or not Mr. Trende can access the requested maps does not answer the question whether Dave's

1

Redistricting possesses information responsive to LULAC Plaintiffs' proposed subpoena, which asks for documents related to Texas congressional districts Mr. Trende created. *See* Dkt. 617-2.

Dave's Redistricting has answered that question in the affirmative. After being contacted by both LULAC Plaintiffs and Mr. Trende, the final word from Dave's Redistricting is that "we've preserved all documents subject to the litigation hold and are awaiting your subpoena." Dkt. 617-5, Ex. D-2 at 1. As Mr. Trende stated in his declaration in support of the State's response, "I have no reason not to believe Dave's." Dkt. 622-2 ¶ 4.

The precise number of documents sought by LULAC Plaintiffs--five maps or some number greater or less than five—as well as the creation dates of the maps, are not dispositive if the maps, as determined by Dave's Redistricting, are responsive.[1]

The State relies only on its contention that "[f]rom [Mr. Trende's] discussion with [Dave's Redistricting], there are no Texas maps connected to [his] account that were created on or after July 1, 2022." Dkt. 622-2 ¶ 4. This is simply not enough to demonstrate that there are no responsive documents, particularly in light of the State's apparent acknowledgement that some such documents exist, *see* Dkt. 622 at 5 ("even if LULAC could obtain the maps through reopened discovery, they likely would not be probative of anything").

Further, although Mr. Trende states that the files referenced in his December 2020 tweet "do not appear in my personal files or in my folders on Dave's Redistricting App," Dkt. 622-2 ¶ 2, he is silent as to whether he deleted the files after he testified in his deposition. In any event, the State has not ruled out that Dave's Redistricting has possession of the map referenced in Mr. Trende's December 2020 tweets or other responsive records.

---

[1] Although Dave's Redistricting stated that "the earlier statement that there are five Texas maps connected to Mr. Trende's account created after July 1, 2022, was based on a misreading of the data and is incorrect," Dkt. 617-5, Ex. D-2 at 1, that statement does not prove that there are zero documents responsive to the proposed subpoena, as the State suggests; instead, the statement by Dave's Redistricting indicates only that there are not *five* Texas maps created *after* July 1, 2022.

2

Because Dave's Redistricting says it "can't provide that information" but is "awaiting [LULAC Plaintiffs'] subpoena," Dkt. 617-5, Ex. D-2 at 1, absent intervention from the Court, LULAC Plaintiffs cannot obtain information regarding these documents—which, for the reasons discussed below, are plainly discoverable.

## II. The Documents in the Possession of Dave's Redistricting are Discoverable.

There are two problems with the State's argument that, in essence, the Court should restrict discovery related to Mr. Trende to only the information that he relied on to form the opinions he expressed in his report. First, Mr. Trende's previous explorations of whether it is possible to draw compact minority opportunity districts in the Houston and Dallas areas, and his conclusion that "it's pretty easy to draw . . . two new minority opportunity districts" in those areas, Dkt. 617-4 at Tr. 146:6-147:1, necessarily inform Mr. Trende's expert opinion that the minority populations in those regions do not support new compact opportunity districts. Thus, the records sought by LULAC Plaintiffs fall within the scope of Rule 26(a)(2). Second, courts in this Circuit—including in opinions cited in the State's opposition—have rejected the State's proposed limitation. *See D'Souza v. Marmaxx Operating Corp.*, No. EP-15-CV-00256-DCG, 2017 WL 1322243, at *5 (W.D. Tex. Apr. 7, 2017) (Guaderrama, J.) (cited at Dkt. 622 at 6); *see also Maes v. Lowe's Home Centers LLC*, No. EP-17-CV-00107-FM, 2018 WL 3603113, at *8 (W.D. Tex. Feb. 9, 2018). Consistent with the analysis of those courts, LULAC Plaintiffs seek a limited set of records that are discoverable.

*D'Souza* is instructive. In *D'Souza*, the plaintiff served a document subpoena on the defendants' testifying expert. 2017 WL 1322243, at *1. As here, the defendants argued, "[i]n essence," "that Rule 26(a)(2)(B) imposes an upper limit on what is discoverable from a testifying expert and therefore, that [the plaintiff] may not obtain the requested discovery through a Rule

3

45 subpoena *duces tecum*." *Id.* at *3. The court rejected that argument, emphasizing that "[t]he history of Rule 26's provisions governing expert witness discovery and the accompanying Advisory Committee Notes belie [the defendants'] suggestion that Rule 26(a)(2)(B) imposes an upper limit." *Id.* at *4. As such, the court "permit[ted] discovery of documents and information that are not enumerated in Rule 26(a)(2)(B)" that had "a close nexus to the items enumerated therein—so long as their discovery remains within the bounds of Rule 26(b)(1)." *Id.* at *5.

To the extent that they do not fall squarely within the scope of Rule 26(a)(2)—and they do—the documents sought by LULAC Plaintiffs have a close nexus to the items enumerated in Rule 26(a)(2)(B), and are well within the bounds of Rule 26(b)(1), *see St. Pierre v. Dearborn Nat'l Life Ins. Co.*, No. EP-19-CV-00223-DCG, 2020 WL 6122555, at *3 (W.D. Tex. Apr. 14, 2020) (Guaderrama, J.) ("Relevant information encompasses any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." (quotation omitted)). The maps referenced in Mr. Trende's tweets—as well as any other files showing potential configurations of Texas majority minority congressional districts drawn by Mr. Trende—may undermine his testimony that minority populations cannot support additional compact districts in these areas, where LULAC Plaintiffs assert that section 2 of the Voting Rights Act requires the creation of two new Latino majority congressional districts. *See Maes*, 2018 WL 3603113, at *8 (requiring production of, among other things, documents related to "background information on the expert and his qualifications," "copies of all scientific and technical publications that the expert authored," and "all records in [the expert's] custody concerning the subject of the litigation").

The State unsuccessfully attempts to undercut the discoverable nature of these documents. First, the State emphasizes that Mr. Trende was not involved in drawing the enacted

4

maps. But whether or not Mr. Trende had any role in that process, the documents inform and may undermine his opinions about the possibility of drawing additional compact minority opportunity districts in the Houston and Dallas areas. For example, Mr. Trende's expert opinion is that minority groups in Dallas are too spread out to form a compact minority opportunity congressional district. Dkt. 622-1 at Tr. 58:23-59:20. Mr. Trende's past exploration of the possibility of drawing new minority opportunity districts in the same areas where Plaintiffs seek new districts is highly relevant to his expert opinion regarding compactness. *See id.* at Tr. 62:21-63:17.

Second, the State emphasizes that the maps referenced in his December 2020 tweets do not reflect data from the 2020 Census, and reflect a 39-district configuration (rather than the 38-district configuration in the enacted congressional plan). But those maps are still relevant because they reflect Mr. Trende's perspective on the compactness of minority populations, as well as which neighborhoods are appropriately combined in one congressional district. Mr. Trende fails to indicate how 2020 Census data would change the Houston-area and Dallas-area configurations in that map, *see* Dkt. 622-2, and records sought by LULAC Plaintiffs still may provide information that undercuts Mr. Trende's opinion regarding compactness of additional minority opportunity districts. *See* Dkt. 530 at 5 ("Requests for documents dated prior to the release of Census data are reasonably calculated to lead to the discovery of admissible evidence." (quotation omitted)).

Third, as discussed in Section I, Dave's Redistricting may possess Texas congressional maps by Mr. Trende reflecting data from the 2020 Census, and the State has refused to rule out that possibility. Fourth, the State suggests that, because LULAC Plaintiffs' own experts "can determine the feasibility" of their demonstrative maps, LULAC Plaintiffs need not seek any

5

documents regarding Mr. Trende's analysis. *See* Dkt. 622 at 5. However, this misses the point that Mr. Trende opines that Plaintiffs' demonstrative maps do not satisfy the first *Gingles* precondition, and LULAC Plaintiffs must have the opportunity to explore information underlying his opinions. This information plainly falls within the scope of Rule 26(b). *See St. Pierre*, 2020 WL 6122555, at *3. Accordingly, the documents that LULAC Plaintiffs seek in their proposed subpoena to Dave's Redistricting are discoverable. *See* Dkt. 617-2.

### III. The Good Cause Factors Favor Reopening Discovery.

The State fails to refute that the good cause factors strongly weigh in favor of modifying the scheduling order. Regarding the first factor, the State emphasizes that Mr. Trende's December 2020 tweets were publicly accessible prior to the close of discovery. However, the State ignores that the tweets do not indicate that Mr. Trende used Dave's Redistricting App to draw the additional minority opportunity districts referenced in those tweets, and that Mr. Trende's use of Dave's Redistricting App for that map was otherwise not publicly known. *See* Dkt. 617-3. As articulated in LULAC Plaintiffs' opening brief, Plaintiffs first learned that Dave's Redistricting could have possession of any files reflecting that map at Mr. Trende's September 2, 2022 deposition—well after the fact discovery deadline. *See* Dkt. 617 at 2-3; *see also Gibson v. United States*, No. 1:18-CV-626-RP, 2021 WL 6617723, at *1 (W.D. Tex. Mar. 15, 2021). And the State does not dispute that, since then, LULAC Plaintiffs have acted diligently to obtain files from Dave's Redistricting absent intervention from the Court.

The State's arguments also fail as to the remaining factors. The State asserts that LULAC Plaintiffs mischaracterize the second factor when they emphasized the importance of the evidence sought. But courts have routinely focused on the importance of the evidence sought to determine the importance of any modification. *See, e.g., id.* at *1 (emphasizing "importance" of

6

information "in resolving [plaintiff's] claims"). Again, the documents sought by LULAC Plaintiffs bear on the analysis of one of the State's experts regarding areas challenged by LULAC Plaintiffs; thus, this factor weighs in favor of modification. Regarding the third and fourth factors, the State emphasizes that it and Dave's Redistricting would be prejudiced for spending more time on "irrelevant discovery." Dkt. 622 at 7. Of course, the State cannot speak on behalf of Dave's Redistricting—and in fact, Dave's Redistricting has already preserved all responsive documents and is "awaiting [LULAC Plaintiffs'] subpoena." Dkt. 617-5, Ex. D-2 at 1. More important, for the reasons already discussed, the documents sought by LULAC Plaintiffs are relevant. Thus, all four factors favor reopening discovery.

**IV.    Conclusion**

LULAC Plaintiffs respectfully request that the Court grant their motion to reopen discovery. *See* Dkt. 617.

Dated: October 31, 2022                                 Respectfully submitted,

*/s/ Nina Perales*
Nina Perales
Fátima Menendez
Kenneth Parreno*
Julia Longoria
Mexican American Legal Defense and Educational Fund (MALDEF)
110 Broadway Street, Suite 300
San Antonio, TX 78205
(210) 224-5476
Fax: (210) 224-5382

Nikolas Youngsmith*
1016 16th Street NW, Suite 100
Washington, DC 20036
(202) 293-2828
Fax: (202) 293-2848

*Admitted *pro hac vice*

7

*Counsel for LULAC Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that she has electronically submitted a true and correct copy of the above and foregoing via the Court's electronic filing system on the 31st day of October 2022.

*/s/ Nina Perales*
Nina Perales

8