IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS (LULAC), et al., | |
| Plaintiffs, | Civil Action No. 3:21-cv-259 (DCG-JES-JVB) (consolidated cases) |
| v. | |
| GREG ABBOTT, et al., | |
| Defendants. | |

**UNITED STATES' RENEWED MOTION TO COMPEL PRODUCTION
OF BRYAN AND WIENCKOWSKI DOCUMENTS**

For over six months, the United States has sought relevant, discoverable documents from Thomas Bryan and Eric Wienckowski ("Respondents"), a demographer and a cartographer who were intimately involved in the 2021 redistricting process in Texas.  Rejecting "broad privilege claims," this Court recently ordered Respondents to produce "any documents not subject to privilege" and "a compliant privilege log" articulating "a *good faith basis* for claiming a privilege, lest the claim be waived."  Bryan Order 2-3, 12, ECF No. 530.

Respondents have failed to comply with the Court's order.  They continue to withhold nearly a thousand relevant documents based on claims of attorney-client privilege and work-product protection identical to those already rejected by this Court.  *See* 2d Rev. Priv. Log (Ex. 1); *cf.* Hunter Order, ECF No. 578 (holding that the attorney-client privilege does not apply to factual information or strategic, policy, or political information); Bryan Order 9-10 (holding that the work-product doctrine does not apply to Respondents' documents).  Respondents have failed to produce a compliant privilege log, as hundreds of entries use the same vague and conclusory language, and have improperly redacted those few documents that have been disclosed.  The United States thus requests that the Court enforce its prior order and compel Respondents to produce in full approximately 974 withheld documents and 74 redacted documents.

## BACKGROUND

This Voting Rights Act ("VRA") enforcement action challenges Texas's 2021 redistricting plans.  *See* U.S. Am. Compl., ECF No. 318.  The United States alleges that the Congressional plan has a discriminatory purpose and result and the House plan has a discriminatory result.  *See id.* at ¶¶ 197-99.

During the 2021 redistricting cycle, Representative Todd Hunter, Chair of the House Redistricting Committee, hired Butler Snow LLP to assist with redistricting.  *See* Bryan Order 1.

In turn, Butler Snow hired Mr. Bryan, a demographer, and Mr. Bryan hired Mr. Wienckowski, a cartographer. *See id.* at 1-2. The United States sent document subpoenas to Respondents on May 3, 2022. *See id.* at 2. Among other relevant documents, the United States sought redistricting proposals, analyses related to voting patterns, estimates regarding population changes, scheduling emails, consulting agreements, and invoices. *See* Subpoenas, ECF No. 390-3. But Respondents refused to produce documents or a privilege log. *See* Bryan Order 2-3.

The United States promptly moved to compel compliance in local federal courts. Following transfer, this Court ruled that Respondents' privilege claims were "strikingly broad" and rejected most of their bases for withholding documents, including the work-product doctrine. *Id.* at 8-12. Consequently, the Court ordered Respondents to "produce any documents not subject to privilege and produce a compliant privilege log." *Id.* at 12. In so doing, the Court cautioned that "Respondents must have a *good faith basis* for claiming a privilege, lest the claim be waived," and authorized the United States to renew its motion in response to deficiencies. *Id.*

On August 19, Respondents produced documents and an initial privilege log, which indicated they had withheld 1,092 documents, based solely on the attorney-client privilege. *See* Priv. Log. (Ex. 2). The parties held a meet and confer on August 30, during which the United States identified specific deficiencies, as well as broader concerns regarding application of the privilege. Respondents produced 119 previously withheld emails on August 31 and September 7, many of which contained substantial redactions. *See, e.g.*, Resps. Docs. (Ex. 3). Also on September 7, Respondents produced a revised privilege log, which again asserted only the attorney-client privilege. *See* Rev. Priv. Log (Ex. 4).

Over the next several weeks, the parties conferred over issues emanating from the revised privilege log. *See* Counsel Emails (Ex. 5). On October 19, Respondents finally produced

documents identified by the United States using attachment notations on produced emails; Respondents had neither logged nor produced these attachments.  *See id.* at 2-7.  In most cases, Respondents heavily redacted the newly produced documents.  *See* Resps. Docs. 40-70.  Also on October 19, Respondents produced a second revised privilege log, which asserted work-product protection over individual documents for the first time.  *See* 2d Rev. Priv. Log.

The United States now seeks approximately 974 withheld documents and requests removal of redactions from 74 additional documents.  First, Respondents continue to withhold approximately 974 relevant documents, based on both the attorney-client privilege and work-product doctrine.  *See id.*  603 documents are draft maps and statistical analyses, as indicated by their file names and confirmed by Respondents in the August 30 meet and confer.  *See id.* at 30-70 (PRIV_0491 to PRIV_1092).  Another 371 documents are emails between Respondents, Butler Snow employees, other consultants, and at least one outsider, concerning "preliminary planning based on estimates," "working concepts of districts," and "scheduling meeting[s]."  *See id.* at 1-30 (PRIV_0001 to PRIV_0490).  Second, Respondents have redacted 74 produced emails and their attachments.  *See, e.g.*, Resps. Docs. 4, 9, 12-13, 16, 18, 20-21, 26-27, 33 & 39-70.  Redacted information includes hourly rates, hours spent on particular tasks, and descriptions of services performed, as well as unidentifiable blocks of text.  *See id.*

## LEGAL STANDARD

Federal Rule of Civil Procedure 45(e)(2)(A) mandates that "a person withholding subpoenaed information under a claim that it is privileged . . . must (i) expressly make the claim; and (ii) describe the nature of the withheld documents . . . in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."  Following such an objection, Rule 45(d)(2)(B)(i) permits the party that served a subpoena to "move the

court . . . for an order compelling production."

To substantiate a claim of attorney-client privilege, a subpoena recipient "must prove: (1) that he made a *confidential* communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding."  *EEOC v. BDO USA, LLP*, 876 F.3d 690, 695 (5th Cir. 2017); *see Hodges, Grant & Kaufmann v. IRS*, 768 F.2d 719, 721 (5th Cir. 1985) (noting burden on the respondent); Hunter Order 4-5.  Such claims are construed narrowly: "Ambiguities as to whether the elements of a privilege claim have been met are construed against the proponent."  *BDO USA*, 876 F.3d at 695.

Because "one of the purposes of the [VRA] is to provide a federal forum for the adjudication of voting-rights violations by state officials," "an independent evaluation of [any] claimed privilege[s]" is particularly important in VRA cases.  TLC Order 9, ECF No. 377.  Even where privilege claims are valid, "a privilege log's description of each document and its contents must provide sufficient information to permit courts and other parties to 'test the merits of' the privilege claim."  *BDO USA*, 876 F.3d at 697.

## ARGUMENT

Respondents are improperly withholding 974 documents.  The attorney-client privilege does not apply to the 603 statistical analyses and draft maps, as they are purely factual documents.  The privilege also does not apply to 371 withheld emails because Respondents have not carried their burden to prove that they provide primarily legal advice, as opposed to strategic, policy, or political information.  Respondents have also improperly redacted 74 documents because they contain nonlegal information.  Finally, Respondents have waived any work-product claims and, in any event, this Court has already rejected the doctrine's application here.

### I.    The Attorney-Client Privilege Does Not Apply to the Documents.

#### A.    Statistical Analyses and Draft Maps Are Not Privileged.

4

The attorney-client privilege does not extend to the withheld statistical analyses and draft maps, which contain factual, nonlegal information. *See* 2d Rev. Priv. Log 30-70 (PRIV_0491 to PRIV_1092). Indeed, the privilege "does not protect disclosure of the underlying facts." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981); *see* Hunter Order 7-10. Statistical analyses and draft maps—prepared by a demographer and a cartographer—are textbook factual documents. *See Ohio A. Philip Randolph Inst. v. Smith*, No. 18-cv-357, 2018 WL 6591622, at *3 (S.D. Ohio Dec. 15, 2018) (three-judge court); Docs. Order 13-14, ECF No. 467, *administratively stayed*, No. 22-50662 (5th Cir. July 27, 2022). These documents must be produced.

To be clear, it is of no moment whether Butler Snow attorneys relied on these documents in providing legal advice to Chair Hunter. Facts must be disclosed even if they were incorporated in "attorney-client communications." Hunter Order 10 (concluding that statistical conclusions conveyed by attorneys are not privileged); *see also Thurmond v. Compaq Computer Corp.*, 198 F.R.D. 475, 481 (E.D. Tex. 2000) (collecting cases). Thus, boilerplate notations that the statistical analyses and draft maps were created "at the direction of Butler Snow attorneys" and "relied upon in providing advice to their clients" do not substantiate Respondents' privilege claims. 2d Rev. Priv. Log 30-70 (PRIV_0491 to PRIV_1092).

### B.   Invoicing Information Is Not Privileged.

Respondents have improperly redacted descriptions of services performed, Resps. Docs. 40-70, as well as hourly rates and amounts billed, *see id.* at 8, 15, 17, 19, 25, 32 & 38. *See also* 2d Rev. Priv. Log 2, 5-6, 9, 12-13 & 70 (PRIV_0028, PRIV_0068, PRIV_0082, PRIV_0141, PRIV_0177, PRIV_0199, PRIV_0208, and PRIV_1093 to PRIV_1100).[1] But the Fifth Circuit

---

[1] Such materials are relevant to the United States' claims insofar as they describe the nature, quantity, and value of analysis requested by Chair Hunter and performed on his behalf.

has "long recognized" that "matters involving the payment of fees" are not subject to the attorney-client privilege. *In re Grand Jury Subpoena*, 913 F.2d 1118, 1123 (5th Cir. 1990); *see also Stonehenge/Fasa-Texas, JDC, LP v. Miller,* No. 94-cv-912, 1998 WL 826880, at *2 (N.D. Tex. Nov. 23, 1998). This includes "the descriptive narratives" of time entries because the "general purpose of the work performed" is not protected by the privilege. *IPS Grp., Inc. v. Duncan Sols., Inc.*, No. 15-cv-1526, 2018 WL 3956019, at *3 (S.D. Cal. Aug. 17, 2018); *see also Tonti Properties v. Sherwin-Williams Co.*, No. 99-cv-892, 2000 WL 506015, at *2 (E.D. La. Apr. 27, 2000) (recognizing that "rates" and "hours spent" are "not confidential communications"). These redactions must be removed.

### C.   Scheduling Emails Are Not Privileged.

Respondents have also improperly withheld at least two emails regarding "scheduling meeting[s]." 2d Rev. Priv. Log 2, 9 (PRIV_0018 and PRIV_0129). But these materials are outside the scope of the attorney-client privilege. *See* Docs. Order 15; *see also, e.g.*, *Pic Grp. v. LandCoast Insulation, Inc.*, No. 09-cv-662, 2010 WL 1741703, at *2 (S.D. Miss. Apr. 28, 2010) (noting that communications related to scheduling do not contain "privileged information"). These emails must be produced.

### D.   The Remaining Emails Are Not Privileged.

Respondents have failed to prove that the attorney-client privilege applies to the remaining emails exchanged with Butler Snow consultants and attorneys. To do so, as a procedural matter, Respondents must "specifically assert[ privilege] with respect to particular documents." *United States v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982). And substantively, Respondents must show that the emails were made "for the *primary* purpose of securing either a legal opinion or legal services." *BDO USA*, 876 F.3d at 695 (emphasis added);

*see* Hunter Order 4.  Having done neither, Respondents have failed to substantiate their privilege claims over these emails.

As an initial matter, Respondents have not carried their burden because the second revised privilege log is deficient.  First, the log repeats boilerplate across all of the logged emails. *See* 2d Rev. Priv. Log 1-30 ("Confidential email communication between Butler Snow lawyers(s) and consultant(s) on behalf of client . . . to enable attorneys to provide client advice regarding legal compliance.").  But "privilege may not be tossed as a blanket over an undifferentiated group of documents."  *El Paso Co.*, 682 F.2d at 539.  In fact, failure "to particularize [their] assertion of . . . privilege and prove [their] case with respect to any specific document" invalidates Respondents' privilege claims.  *Id.* at 540; *see also United States Sec. & Exch. Comm'n v. Commonwealth Advisors, Inc.*, No. 12-cv-700, 2016 WL 1364141, at *1 (M.D. La. Apr. 6, 2016) (noting "the trend in modern federal jurisprudence" of treating "blanket boilerplate" as "effectuating absolute and unconditional waiver[] of any relevant privilege").

Second, the second revised privilege log relies on vague descriptions.  For example, the log describes 336 withheld emails as concerning "working concepts of districts" and 35 withheld emails as concerning "preliminary planning based on estimates."  2d Rev. Priv. Log. 1-30.  But the log does not explain what these ambiguous descriptors even mean.  Indeed, Respondents' description for PRIV_0262 exemplifies the vagueness problem.  According to the log, that document is a "[c]onfidential email communication between Butler Snow consultants at the direction of counsel regarding *scheduling meeting or working concepts of districts or preliminary planning based on estimates* to enable attorneys to provide clients advice regarding legal [compliance]."  *Id.* at 16 (emphasis added).  Rather than picking one of the ambiguous descriptions Respondents developed, it appears they combined three into one.  The outcome of

this approach is a description that says nothing at all.  At core, such vagueness prevents the United States from discerning the basic subject of these emails and thus compels their production.  *See Commonwealth Advisors*, 2016 WL 1364141, at *1 & n.3.

Third, the second revised privilege log is replete with conclusory language.  In particular, the log asserts that all of the logged emails "enabled . . . legal advice."  2d Rev. Priv. Log. 1-30.  But "simply describing a lawyer's advice as 'legal,' without more, is conclusory and insufficient to carry out the proponent's burden."  *BDO USA*, 876 F.3d at 696; Bryan Order 7.  Overall then, Respondents have forfeited any privileges over the logged emails by once again failing to produce "a compliant privilege log."  Bryan Order 12.

Even putting the second revised privilege log's deficiencies aside, Respondents have not carried their burden of proving that all of the emails are primarily legal, as there are strong bases to believe they instead engaged in political/partisan, nonlegal analysis.  Most notably, Respondents have produced a spreadsheet reflecting block-level estimates of the political and ethnic makeup of census blocks in Texas.  *See* L2 Spreadsheet (Ex. 6) (excerpt of BRY-WIEN_0000347).  As compared to the source file from the Redistricting Data Hub, the produced spreadsheet has been altered to highlight data columns showing partisanship estimates.  *Compare id.* (highlighting "party_dem" and "party_rep") *with* Redistricting Data Hub, *2021 Texas L2 Voter File Aggregated to 2010 Census Blocks*, https://perma.cc/W2J8-H8S4.  But merely ensuring "legal compliance" does not require estimation of the partisan composition of districts.  *See, e.g.*, *LULAC v. Perry*, 548 U.S. 399, 440-41 (2006) (distinguishing between VRA compliance and incumbency protection).  Consequently, this spreadsheet belies any claim that Respondents performed only legal compliance work.

An April 2021 Butler Snow invoice produced by the Texas Legislative Council confirms

the same.  *See* Butler Snow Invoice (Ex. 7).  That invoice indicates that Butler Snow consultants "advis[ed] on the mechanics of the legislative process, political dynamics of the legislative body, political behavior in the various geographical areas of the state, [and] historical perspective[s] of prior redistricting processes."  *Id.* at 2.  Mr. Bryan in particular "advise[d] on [the] analysis and application of Census data for the redistricting process and related demographic issues."  *Id.* Such analysis goes to the broader work of redistricting, not merely to legal compliance.[2]

The end result is that Respondents have not shown that all of the remaining emails were for the primary purpose of rendering legal advice.  Therefore, all withheld emails must be produced and all redactions must be removed from all produced emails.  *See Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 303 (D. Md. 1992) (three-judge court) (indicating that privilege does not extend to "active participant[s] in the [redistricting] events").[3]

## II.     Respondents Have Waived Any Work-Product Protection.

By relying solely on the attorney-client privilege in their first two logs, Respondents have waived work-product protection over individual documents or redactions.  Indeed, the Court ordered Respondents to "produce a compliant privilege log within seven days" of its August order and cautioned Respondents that an inadequate log would trigger waiver.  Bryan Order 12. Respondents' October 19 assertions of work-product protection on their second revised log are therefore barred.  *See id.*; *see also, e.g.*, *Neuberger Berman Real Est. Income Fund, Inc. v. Lola Brown Tr. No. 1B*, 230 F.R.D. 398, 418 (D. Md. 2005) (collecting cases).  Moreover, even if Respondents could now claim work-product protection over individual documents, this Court has

---

[2] As noted in prior motions, Butler Snow also publicly touts itself for its "legislative" services, including "drafting and reviewing legislation of interest to clients" and "providing strategic and political guidance."  Butler Snow LLP, *Government Relations*, https://perma.cc/X5MX-LHZZ.

[3] Alternatively, the Court may consider ordering Respondents to produce all emails, both withheld or produced with redactions, for *in-camera* review.  *See, e.g.*, Docs. Order 27-29.

already ruled that the doctrine is inapplicable to these documents, which were created "while assisting the Texas Legislature with redistricting legislation."  Bryan Order 9-10.

### III.   Respondents Have Waived Any Discovery Protections Over Any Other Unlogged, Unproduced Documents.

Documents already produced by Respondents suggest that they may continue to withhold other relevant documents that have not been logged.  Although Respondents eventually produced a dozen previously unlogged and unproduced documents identified by the United States via unredacted attachment notations in produced emails, Respondents did not produce any additional documents that may have been attached to other redacted or withheld emails.  *See* Counsel Emails 2-7.  Yet redacted documents appear to withhold information regarding attachments, *compare, e.g.*, Resps. Docs. 4 (showing a redaction the size and shape of an attachment notation at the bottom of an email) with *id.* at 39 (illustrating an unredacted attachment notation), and past experience raises concerns as to whether such documents have been produced or logged.  Any such documents should be ordered produced, as Respondents have waived any discovery protections over them.  *See, e.g.*, *Wellin v. Wellin*, 2:13-cv-1831, 2015 WL 9850704, at *2 (D.S.C. Dec. 4, 2015) ("[T]he failure to produce a timely or sufficient privilege log may constitute a forfeiture of any claims of privilege.").  In the alternative, Respondents should produce unredacted versions of these documents *in camera* to ensure that they do not continue to withhold attachments not reflected on their second revised privilege log.

### CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court grant the instant motion and order prompt production, without redactions, of all documents listed on Respondents' second revised privilege log, as well as any unlogged and unproduced documents attached to any logged emails.  A proposed order is attached.

Dated: November 9, 2022

ELISE C. BODDIE
Principal Deputy Assistant Attorney General
Civil Rights Division

*/s/ Jaywin Singh Malhi*
T. CHRISTIAN HERREN, JR.
TIMOTHY F. MELLETT
DANIEL J. FREEMAN
JANIE ALLISON (JAYE) SITTON
MICHELLE RUPP
JACKI L. ANDERSON
JASMIN LOTT
HOLLY F.B. BERLIN
JAYWIN SINGH MALHI
L. BRADY BENDER
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530
(800) 253-3931
jaywin.malhi@usdoj.gov

## CERTIFICATE OF CONFERRAL

I hereby certify that, between August 30 and November 8, 2022, the United States met and conferred with Respondents on numerous occasions concerning the subject of this motion. Respondents oppose the relief sought.

*/s/ Jaywin Singh Malhi*
Jaywin Singh Malhi
Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave, NW
Washington, DC 20530
(800) 253-3931
jaywin.malhi@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 9, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to counsel of record.

/s/ Jaywin Singh Malhi
Jaywin Singh Malhi
Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave, NW
Washington, DC 20530
(800) 253-3931
jaywin.malhi@usdoj.gov