UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, | § § § | |
| *Plaintiffs*, | § § | |
| EDDIE BERNICE JOHNSON, *et al.*, | § § | |
| *Plaintiff-Intervenors*, | § § | EP-21-CV-00259-DCG-JES-JVB [Lead Case] |
| v. | § § | |
| GREG ABBOTT, *in his official capacity as Governor of the State of Texas, et al.*, | § § § | |
| *Defendants.* | § § | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| *Plaintiff*, | § § | |
| v. | § § | Case No. 3:21-CV-00299-DCG-JES-JVB [Consolidated Case] |
| STATE OF TEXAS, *et al.*, | § § | |
| *Defendants.* | § § | |

**RESPONSE IN OPPOSITION TO THE UNITED STATES' RENEWED MOTION TO COMPEL PRODUCTION OF CONSULTING EXPERT COMMUNICATIONS AND THEIR WORK PRODUCT**

TO THE HONORABLE ASSIGNED JUDGES:

This Response addresses the Government's efforts to invade the attorney-client communications privilege and other applicable privileges with respect to experts who consulted with the Butler Snow LLP law firm ("Butler Snow") as part of Butler Snow's representation of its clients, including the Chair of the Texas House of Representatives Redistricting Committee.

In blunderbuss fashion, the Government seeks production of every communication Butler Snow ever had with consulting experts Eric Wienckowski and Thomas Bryan (the "Consulting Experts").[1]  The Government has filed a Renewed Motion to Compel Production of Bryan and Wienckowski Documents (Doc. No. 634), in which it seeks production of all documents listed on a revised privilege log.  This "renewal" of a motion on which the Court has already issued rulings is the latest effort in the Government's months-long saga to obtain privileged documents from the Consulting Experts.  Respondents have done what the Court ordered be done on the Government's motion:  produce what they can without violating privilege and a privilege log with respect to withheld documents.  That detailed and comprehensive privilege log and the evidence accompanying this motion establish that the withheld documents are protected from disclosure in litigation by, at a minimum, the attorney-client privilege.  The Court should deny the Government's motion.

## **BACKGROUND**

Respondent Thomas Bryan is an expert demographer whom Butler Snow hired as a consultant to assist the firm in providing legal advice to its clients under a written retention agreement.  **Ex. 1**, Cardin Decl.  Those documented clients are the Chairman of the House Redistricting Committee of the Texas House of Representatives, as well as the General Counsel to the Texas House.  *Id*.  The documented subject of legal representation was with respect to state legislative, board of education, and congressional reapportionment and redistricting matters.  **Ex. 2**, Bryan Decl.; **Ex. 1**, Cardin Decl.  Bryan's engagement letter with Butler Snow explicitly states that the firm retained him as a consultant for purposes of its attorney-client relationship with its

---

[1] Counsel for Respondents have attempted in good faith to suggest to the Government that if they have questions concerning particular entries on Respondents' privilege log, Government counsel could raise those and the parties could discuss them.  The Government has apparently abandoned such an approach in favor of a global challenge to any and all assertions of privilege.

clients and in anticipation of litigation.  **Ex. 1B**, Bryan Engagement Ltr.  (That anticipation of litigation obviously proved to be prescient.)  After Bryan was retained by Butler Snow to assist the firm in providing legal advice to the firm's clients, Bryan hired Wienckowski to assist him. **Ex. 2**, Bryan Decl.  The Consulting Experts provided services as directed by Butler Snow to assist the firm in rendering legal advice to the firm's clients.  **Ex. 3**, Field Decl.

The Government served subpoenas on the Consulting Experts, seeking numerous documents and communications they prepared in their course and scope of work for Butler Snow. **Ex. 4**, Bryan & Wienckowski Subpoenas.  Respondents timely served objections and responses to the Government's subpoenas.  **Ex. 5**, Responses and Objections to U.S. Subpoenas.  In these detailed objections and responses, Respondents explained that *every* document and communication in their possession is shielded from disclosure under several overlapping protections and privileges, including the attorney-client privilege, the work-product immunity doctrine, the non-testifying expert protection, and the legislative privilege.  *See generally id.*  The Government subsequently filed enforcement actions on the subpoenas.

After the briefing on the Government's original motion to compel concluded, this Court ordered Respondents to produce documents not subject to privilege and produce a compliant privilege log.  Doc. 530 at 12.  In compliance with the Court's order, Respondents produced an initial privilege log to the United States on August 19, 2022.  Respondents subsequently agreed, in good faith, to produce limited documents that contained data only with no analysis or documents related to travel, invoices redacted to omit descriptions of the work performed by the Consulting Experts, and emails related to the scheduling meetings, with privileged communications redacted. Respondents also revised their privilege log twice to address requests for more detail from the Government:  one on September 7, 2022 (**Ex. 6**), and another on October 19, 2022 (**Ex. 7**).

On November 9, 2022, the Government filed its renewed motion to compel production, without redactions, of *every* document and communication on Respondents' October 19, 2022, privilege log:

> For the reasons set forth above, the United States respectfully requests that the Court grant the instant motion and order prompt production, without redactions, of all documents listed on Respondents' second revised privilege log, as well as any unlogged and unproduced documents attached to any logged emails.  A proposed order is attached.

Doc. 634 at 10.

## LEGAL STANDARD

Rule 45 of the Federal Rules of Civil Procedure sets forth numerous limitations and protections available to a non-party subjected to a subpoena.  As the Court has recognized in prior orders (*e.g.*, Doc. 467), the rule explicitly prohibits subpoenas that target "privileged or other protected matter" or are otherwise unduly burdensome.  FED. R. CIV. P. 45(d)(3)(A)(iii)-(iv). Specifically, Rule 45 provides that a person may withhold subpoenaed information "under a claim the information is privileged or subject to protection as trial-preparation material."  FED. R. CIV. P. 45(e)(2).  The person asserting a claim of privilege expressly makes the claim and describes the nature of the withheld documents such that the party seeking the documents can assess the applicability of the claimed privileges or protections.  FED. R. CIV. P. 45(e)(2).  Respondents have done so.

## ARGUMENT

**I.** **The Government's position that attorney-client privilege could never apply to any communication with the Consulting Experts is unsupported by law and is contrary to the record before the Court.**

The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. *Id.* The privilege recognizes that sound legal advice or advocacy serves public ends. *Id.* The consistent application of the attorney-client privilege is thus critical to preserving the ability for lawyers to serve their clients fully with legal advice, as well as the public's continued trust in the legal profession. "These benefits dissipate if clients are not 'free from the consequences or the apprehension' that a court might order their confidential communications involuntarily disclosed." *In re Schlumberger Tech. Corp.*, 818 Fed. Appx. 304, 308 (5th Cir. 2020) (quoting *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888)).

The attorney-client privilege applies to every (1) confidential communication; (2) made to a lawyer or his subordinate; (2) for the primary purpose of securing either a legal opinion, legal services, or assistance in a legal proceeding. *E.g., United States v. Robinson,* 121 F.3d 971, 974 (5th Cir. 1997). The law is clear that the attorney-client communications privilege can extend to consulting experts who are "agents" of an attorney, such as the Consulting Experts here:

> The attorney-client privilege prohibits the disclosure of the substance of communications made in confidence by a client to his attorney for the purpose of obtaining legal advice. *United States v. Hodgson*, 492 F.2d 1175, 1177 (10th Cir. 1974); *Clanton v. United States*, 488 F.2d 1069, 1071 (5th Cir. 1974), *cert. denied*, 419 U.S. 877, 95 S. Ct. 140, 42 L. Ed.2d 116 (1974); *United States v. Kendrick*, 331 F.2d 110, 113 (4th Cir. 1964); *J. P. Foley & Co. v. Vanderbilt*, 65 F.R.D. 523, 526 (S.D.N.Y.1974). In appropriate circumstances the privilege may bar disclosures made by a client to non-lawyers who, like Somerford, had been employed as agents of an attorney. *United States v. Kovel*, 296 F.2d 918, 921 (2d

Cir. 1961); *Burlington Industries v. Exxon Corp.*, 65 F.R.D. 26, 40 (D.Md.1974); *United States v. Schmidt*, 360 F. Supp. 339, 346 (M.D.Pa.1973); 8 Wigmore, Evidence (McNaughton rev. 1961) § 2301.

*United States v. Pipkins*, 528 F.2d 559, 563 (5th Cir. 1976); *see also Harding v. County of Dallas*, No. 3:15-CV-0131-D, 2016 WL 7426127, at *10 (N.D. Tex. 2016) (noting, in case involving efforts to obtain consulting expert materials relating to a redistricting case, that "[i]n their reply, plaintiffs agree that the attorney-client privilege applies to 'communications that "enabled the attorney to give legal advice" between a party's lawyer and third-party non-lawyers like Angle Strategies'"). Here, there is unequivocal evidence before this Court that the communications between the Consulting Experts and Butler Snow enabled Butler Snow to give legal advice to its clients. **Ex. 1**, Cardin Decl.; **Ex. 3**, Field Decl.

Federal courts recognize the attorney-client communications privilege extends to consultants working for or with a law firm. *See, e.g., Goldstein v. F.D.I.C.*, 494 B.R. 82, 89–90 (D.D.C. 2013) ("[I]if a consultant is so intertwined with the attorney in a case, such that he is providing assistance in developing litigation and legal strategies in a manner similar to multiple attorneys working on a case at a law firm, the attorney-client privilege extends to those consultants."); *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 476-77 (E.D. Pa. 2005) ("Presence of a third-party, such as a consultant, does not destroy the attorney-client privilege where that party is the client's agent or possesses 'a commonality of interest with the client.'" (quoting *In re Grand Jury Investigation,* 918 F.2d 374, 386 n. 20 (3d Cir.1990)); *American Standard, Inc. v. Pfizer Inc.*, No. 83–834, 1986 WL 9713, at *4 (D. Del. 1986) (extending privilege to "material prepared by outside consultant in response to a request by [defendant's] counsel"); *accord Eutectic Corp. v. Metro, Inc.*, 61 F.R.D. 35, 41 (E.D.N.Y. 1973) (concluding the attorney-client privilege extended to documents shared among non-lawyer corporate employees containing

"information collected for the dominant purpose of facilitating the attorney's efforts to provide service to the client, and the information in every instance was, in one form or another, communicated to the attorney").

Indeed, unsurprisingly the Government itself has sought to avoid disclosure of work product performed by its experts that contained statistical analysis in prior cases. *E.g., E.E.O.C. v. FAPS, Inc.,* No. CIV.A. 10-3095 PGS, 2012 WL 1656738, at *10-13 (D.N.J. May 10, 2012) (Government arguing that analysis performed by EEOC consultants should be shielded from disclosure by several privileges and protections).

In the case of redistricting—which as the Court well knows in the modern age is always the subject of controversy and litigation—the involvement of attorneys, and expert consultants who are retained by attorneys in order to give legal advice, should be encouraged as sound public policy. The Government, however, seeks to undermine the very principle that the work performed by consulting experts that forms a basis of legal advice provided by attorneys to their clients is shielded from discovery requests that seek to intrude on that attorney-client relationship. The extension of the attorney-client privilege to consultants retained by the law firm of course makes practical sense. If, as the Government asserts here, documents prepared by a consultant at the direction of and in conjunction with a law firm that were integral to the law firm's provision of legal services to a client were always discoverable, in a manner that allows the invasion of attorney-client privilege, such a rule would serve as a *disincentive* to lawyers from hiring consultants needed (because of their expertise) to effectively furnish legal services and advice to a client. Under the Government's strained view of the attorney-client privilege, any communications between a law firm and its consultants engaged for the purpose of providing legal advice to clients on redistricting matters would be discoverable. Respondents have not located

any precedent to support such a position, or a precedent of the Government having taken a position in any other redistricting litigation (or otherwise) that the attorney-client privilege could never attach to work done by consulting experts to enable lawyers to provide the legal advice for which they were hired by their clients.

**A.     Documents containing statistical analyses and draft maps Respondents prepared at the direction of Butler Snow attorneys are privileged.**

Respondents' most recently revised privilege log—the Second Revised Privilege Log— sets out descriptions of 603 documents that the Consulting Experts prepared at Butler Snow's direction that were necessary for the firm's lawyers to provide legal advice to their clients.  These 603 documents fit squarely within the confines of the attorney-client privilege.  The Government claims, without any proper basis for doing so, that the documents contain merely "factual, nonlegal information" that falls outside the protection of the attorney client privilege.  Doc. 634 at 5.  The Government's conclusory argument is belied by the actual evidence before the Court.  These documents contain expert consulting analysis that is inseparable from, is connected to, and underlies legal advice Butler Snow provided to its clients.  **Ex.1**, Cardin Decl.

The case law cited by the Government likewise does not support its position that these 603 documents fall outside the protections of the attorney-client privilege.  First, the Government cites an Ohio redistricting case, which held that factual records that were created prior to the existence of the attorney-client relationship at issue should be produced.  *Ohio A. Philip Randolf Inst. v. Smith*, No. 1:18cv357, 2018 WL 6591622, at *4 (S.D. Ohio Dec. 15, 2018).  The Ohio three-judge panel's decision is readily distinguishable.  After conducting an *in-camera* review, the court concluded that the "documents appear to be preexisting factual records that would not be privileged <u>even if</u> . . . they were sent to the [lawyer] for the purpose of obtaining legal advice."  *Id.*  Unlike the documents at issue in *Smith*, the documents on Respondents' revised privilege log are not

preexisting factual records—rather, these documents contain analysis that Butler Snow's experts conducted at the law firm's direction *after having been retained by the law firm* and in consultation with Butler Snow lawyers.

Similarly, the decision in *Thurmond v. Compaq Computer Corporation,* 198 F.R.D. 475, 481 (E.D. Tex. 2000), a product liability case, is inapposite to the documents in question.  That case stands for the proposition that a party may not avoid disclosing underlying facts during discovery that are relevant to the subject matter of the litigation, even if the party learned those facts through discussions with counsel.  *Id.* at 479-81.  The information the plaintiff sought to discover in *Thurmond* concerned whether the defendant was aware of problems in the computer industry related the claims in that product liability case.  *Id.* at 482.  The situation here is readily distinguishable.  The Government does not seek underlying facts within the Consulting Experts' knowledge, or facts the Consulting Experts learned from speaking with Butler Snow lawyers.  Rather, the Government seeks the consulting analysis the Consulting Experts performed, at the direction of Butler Snow attorneys that formed a basis for legal advice Butler Snow provided its client.

In sum, the Government cannot end-run the attorney-client communications privilege and other protections by simply re-casting the work the Consulting Experts performed for Butler Snow as merely "factual, nonlegal information."  Doc. 634 at 5.  The Consulting Experts are not lawyers, by definition.  They are non-lawyer experts *in areas other than the law* hired by lawyers so that the lawyers can do their job in representing and advising their clients.  The 603 documents listed

on Respondents' Third Revised Privilege Log are all privileged, under the factual record and legal precedent, and thus shielded from disclosure.[2]

**B.    The withheld invoicing information is privileged.**

For similar reasons, redacted material on invoices the Consulting Experts submitted to Butler Snow describing in detail the work performed for the law firm are likewise privileged.  As evidenced in the redacted invoices Respondents produced, there are two categories of redacted information: (1) the narratives describing in detail the work Respondents performed for Butler Snow; and (2) the line-item hourly payments to Butler Snow made to Respondents.  **Ex. 7**, revised privilege log; **Ex. 1**, Cardin Decl.  Both categories of information are shielded from disclosure.

First, the redacted narratives on the produced invoices contain detailed descriptions of the specific work Respondents performed for Butler Snow.  This information is privileged.  The Government points to several cases in support of its contention that this information must be produced, but this authority does not support this position.   Doc. 634 at 5.  The Government cites one case suggesting that "descriptive narratives" in time entries are not privileged.  *See* Doc. 634 (quoting *IPS Grp., Inc. v. Duncan Sols., Inc.*, No.: 15-cv-1526-CAB (MDD), 2018 WL 3956019, at *3 (S.D. Cal. Aug. 17, 2018)).  As the Court is undoubtedly aware from other privilege disputes, federal courts routinely hold that narratives on invoices describing legal work fall within the scope of the attorney-client privilege.  *See, e.g.*, *Gunter v. Bemis Co., Inc.*, No. 4:16-cv-00037, 2017 WL 6521178, at *1 (E.D. Tenn. Sept. 21, 2017) ("Defendant's detailed billing records—which include

---

[2]As the Court is aware, in responding to the Government's subpoenas to the Consulting Experts, Respondents have asserted that documents generated by the Consulting Experts as part of their work under the direction of Butler Snow is protected by a number of overlapping privileges and protections, including work product protection.  Respondents recognize that the Court previously ruled that the work product doctrine does not apply to the documents in the Consulting Experts' possession.  Doc. 530.  Respondents fully respect the Court's ruling but have not waived—and do not waive—their assertion of work product protection and other protections Respondents have asserted.

narrative time descriptions of each task performed—undoubtedly contain a great deal of information that is privileged by virtue of either the Attorney-Client Privilege or the Work Product Doctrine."); *Cottier v. City of Martin,* No. 02–5021, 2007 WL 4568989, at *2 (D.S.D. Dec. 19, 2007) ("Attorney billing records are protected by the attorney-client privilege and the work product doctrine insofar as they reveal the nature of the services provided."); *United States v. Trenk*, No. 06-1004 (MLC), 2009 WL 485375, at *6 (D. N.J. Feb. 26, 200) ("To the extent the time entry narratives pertain to other work performed by counsel on behalf of Techtron, Inc., those entries are protected by the attorney-client privilege."). The same conclusion holds for contractors or agents of attorneys, such as the Consulting Experts.

Similarly, the Government has not demonstrated a basis for the request that Respondents disclose line-item charges on invoices reflecting the number of hours spent on each task. As an initial matter, the Government fails to articulate how this line-item accounting is relevant or responsive to the subpoenas. Respondents left unredacted the total amount of each monthly invoice. As a result, the Government has information as to how much Respondents were paid during each month of the engagement.

Moreover, the cases cited by the Government do not support a request that the Consulting Experts must reveal their hourly rates. The Fifth Circuit's 1990 case, *In re Grand Jury Subpoena*, 913 F.2d 1118 (5th Cir. 1990), does not support the Government's argument that confidential invoices submitted to a law firm by a consultant hired to assist the law firm in providing legal advice to its client are outside the realm of the attorney-client privilege. That case involved the issue of whether a lawyer whose client was the target of a grand jury proceeding was required to disclose whether the lawyer's client or an anonymous third party paid the lawyer's fees—an

entirely different issue than whether the hourly rates of a consulting expert hired by a law firm are protected from disclosure.  *Id.* at 1123.

The Government's position regarding redactions on invoices is inconsistent with positions the Government has taken in prior cases.  The Government has asserted the attorney-work product protection to resist producing DOJ attorney billing records in the past.  *See Judicial Watch, Inc. v. United States Dep't of Just.*, 118 F.Supp.3d 266, 275 (D.C.D. 2015).  In *Judicial Watch*, the time records at issue were from attorneys within DOJ's Civil Rights Division—the same division of DOJ handling the Government's role in the present litigation.  *Id.* at 269.  In a manner consistent with the Government's position in prior cases, the attorney work-product protection should apply here to shield Respondents' confidential invoices from disclosure.

## C.     All emails on the Second Revised Privilege Log are privileged.

All of the remaining emails in Respondents' Second Revised Privilege Log are privileged and exempt from disclosure.  The revised privilege log provides more than a sufficient basis for discerning the applicability of the attorney-client privilege.  Because these emails pertain directly to Butler Snow's rendering of legal services to the firm's clients, all the emails are privileged.

### 1.     *Respondents produced a compliant privilege log.*

First, the Government contends that Respondents' revised privilege log is deficient.  Doc. 634 at 7-8.  This contention is misplaced.  Respondents' revised privilege log contains more than enough information to discern the nature and applicability of the attorney-client privilege to the logged emails.  For example, a typical entry on the revised privilege log provides as follows:

| Re: Confidential: Attorney-Client Communication - It's a map | tom@bryangeodemo.com | parker.berry@butlersnow.com | tommie.cardin@butlersn ow.com | Friday, October 1, 2021 at 08:29 PM EDT | Attorney-Client; Work Product | Confidential email communication between Butler Snow attorney(s) and consultant(s) on behalf of client regarding working concepts of districts to enable attorneys to provide clients advice regarding legal compliance. |
| --- | --- | --- | --- | --- | --- | --- |

Ex. 7.  These entries (1) identify the participants in the communication at issue; (2) identify the date of the communication, (3) describe the nature of the communication is a way that does not affect a waiver of privilege, and (4) list the privilege or privileges asserted.  This meets every Rule 45 requirement that "[a] person withholding subpoenaed information under a claim that it is privileged . . . must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."  FED. R. CIV. P. 45(e)(2)(A).

The Government attempts to impose an amorphous and far more exacting standard for a privilege log than either Rule 45 or the orders of this Court require.  Although the Court's ESI order does not apply to Respondents, who are not parties to this litigation, the revised privilege log complies with nearly every privilege log requirement in the Court's ESI order.  *See* Doc. 203. Specifically, the log contains: (1) Bates numbers or Document ID numbers for each document; (2) the file date; (3) the document type (as identified in the document name); (4) the name and title of the sender and recipient of each email; (5) the privilege asserted; (6) the basis for the privilege; (7) and a description of the document.  Doc. 203.

Putting aside Respondents' good-faith effort to comply with the Court's ESI order, even as non-parties, the revised privilege log is more than sufficient to "enable the parties to assess the claim" of privilege as required under Rule 45.  FED. R. CIV. P. 45(e)(2)(A).  As a starting point, none of the cases that the United States cites in support its contention that Respondents' privilege log is deficient concern a Rule 45 subpoena issued to a non-party.  *See United States v. El Paso Co.*, 682 F.2d 530 (5th Cir. 1982) (discussing general notions of privilege in the context of an IRS investigation and not the requirements of a privilege log under Rule 45); *EEOC v. BDO USA,*

*L.L.P.*, 876 F.3d 690 (5th Cir. 2017) (discussing the attorney-client privilege in the context of a federal agency investigation); *SEC v. Commonwealth Advisors, Inc.*, No. 12-cv-700, 2016 WL 1364141, at *1 (M.D. La. Apr. 6, 2016) (privilege log produced in response to a request for production of documents served on a defendant during discovery). The discovery before the Court on this motion is not discovery served on a party nor a government agency's investigative subpoena. *Cf. Total Rx Care, LLC v. Great N. Ins. Co.*, 318 F.R.D. 587, 601 (N.D. Tex. 2017) (assuming without deciding that "a party moving to quash a subpoena to a third party does not have the same burden to specifically identify and log particular communications in the third party's possession, custody, or control").

Next, the Government's effort to recast the detailed descriptions of the privileged emails as "boilerplate" or "vague" is unavailing. *See* Doc. 634 at 7. "Typically, a privilege log must identify each document and provide basic information, including the author, recipient, date and general nature of the document." *Manufacturers Collection Co., LLC v. Precision Airmotive, LLC*, No. 3:12-CV-853-L, 2014 WL 2558888, at *3 (N.D. Tex. June 6, 2014). The revised privilege log contains more than the necessary information for the Government to assess the claimed privilege. Specifically, Respondents use different descriptions to articulate, in as much detail as possible without waiving the privilege being asserted, the different categories of documents and communications in the log. The mere fact that certain entries on the log share the same description does not render the description "vague" or "boilerplate." Doc. 634 at 7. Logged entries that share the same characteristics—both in the content of the communication or document and the applicability of the privilege to the document or communication—can share the same description. *See Nvision Biomedical Techs., LLC v. Jalex Med., LLC*, No. SA-15-CA-284-RP, 2016 WL 8259334, at *4 (W.D. Tex. Jan. 28, 2016) ("[R]ecording details about the information withheld

may be unduly burdensome when, for example, voluminous documents are claimed to be protected that might be reported in categories or classifications and requiring too many details to be set out in the log effectively could force a breach the privilege."). Respondents' revised privilege log articulates: (1) the type of document or communication; (2) the purpose of that document or communication; and (3) that the document or communication was necessary for Butler Snow to render legal services to its client. Providing any further detail would disclose the privileged information itself, which Rule 45 prohibits. FED. R. CIV. P. 45(e)(2)(A).[3]

## 2. *All emails on Respondents' Second Revised Privilege Log are protected from disclosure.*

As demonstrated above, the Government's claim that every email on Respondents' log is not protected by any protection or privilege is untethered from well-established principles that extend the attorney-client privilege to communications between a law firm and the law firm's retained experts or consultants. An attorney may of course hire a professional or expert to assist him in providing legal advice, and the expert's communications to the attorney and client are likewise privileged and immune from production. *See United States v. Davis*, 636 F.2d 1028, 1043-44 (5th Cir. 1981); *Milburn v. United States*, 804 F. Supp. 2d 544, 549-50 (W.D. Tex. 2010). This protection will apply so long as the proponent of the privilege establishes, as Respondents have here, that the documents provided to the attorney and client were for purposes of the provision of legal advice. *Davis*, 636 F.2d at 1043-44.

Butler Snow has an attorney-client relationship with Representative Todd Hunter in his capacity as Chair of the House Redistricting Committee, "his staff[,] . . . and the General Counsel

---

[3]Given the showing of attorney-client privilege presented in the record, the Court need not conduct an *in-camera* inspection of the withheld documents in order to uphold the assertions of privilege. Should the Court conclude that any *in-camera* production is necessary, Respondents will of course comply with the Court's requirement.

to the House." **Ex. 3**, Field Decl.  The "staff" includes Adam Foltz.  *Id.*; **Ex. 8**, Hunter Decl.  As

part of Butler Snow's engagement, the firm was authorized to "retain any necessary experts."  *Id.*

Such an arrangement is commonplace in a law firm's representation of its client.  Butler Snow

retained Thomas Bryan to consult in rendering legal services to its clients, including:

> (1) analysis, interpretation and application of Census data and advise on all data related issues; (2) preparation of benchmark plan and modeling to determine areas of state where most likely change to occur; (3) data set development for preparing redistricting plans; (4) preparation of draft plans; (5) analysis of draft plans submitted by others; (6) analysis of compliance with traditional redistricting criteria; (7) analysis of the traditional redistricting criterion of compactness, run compactness scores and advise on same; (7) [sic] any other demographic related issue(s) as directed by us.

**Ex. 1B**, Bryan Engagement Ltr.

The Consulting Experts assisted Butler Snow in analyzing plan proposals and census data

as the firm advised its clients on legal compliance.  **Ex. 3**, Field Decl.  This provision of legal

advice sometimes required Butler Snow to share the Consulting Experts' work product directly

with the client in the course of advising the client.  This was especially true in advising Adam Foltz

or Chairman Hunter concerning the legal compliance of any particular map or member submission.

Neither of the Consulting Experts took any action or provided any consultation without Butler

Snow's direction that they do so.  *Id.*  Other than one introductory meeting between Chairman

Hunter and Bryan at Butler Snow's direction, neither of the Consulting Experts communicated

directly with a Butler Snow client other than Adam Foltz, and again, even then, only under the

direction and supervision of Butler Snow attorneys.  *Id.*  Chairman Hunter has not waived any

privilege relating to Butler Snow's work product or the firm's communications, including

communications and work product by any consultants the firm hired in representing Chairman

Hunter and his staff.  **Ex. 8**, Hunter Decl.

The Government's strategy in seeking documents directly from consultants it knows were hired by a law firm in provision of advice to the Chair of the Texas House Committee on Redistricting and the Chairman's staff on legal compliance undermines the very purpose of the privilege. "But if the purpose of the attorney-client privilege is to be served, the attorney and client must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all." *Upjohn*, 449 U.S. at 393.

The writing of the Supreme Court in *Upjohn* is equally applicable to the situation this Court now faces amid the Government's strategy. "While it would probably be more convenient for the Government to secure the results of petitioner's internal investigation by simply subpoenaing the questionnaires and notes taken by petitioner's attorneys, such considerations of convenience do not overcome the policies served by the attorney-client privilege. As Justice Jackson noted in his concurring opinion in *Hickman v. Taylor*, 329 U.S. 495, 516 (1947): 'Discovery was hardly intended to enable a learned profession to perform its functions . . . on wits borrowed from the adversary.'" *Id.* at 396 (Jackson, J., concurring).

The Government attempts to retrofit Butler Snow's role as legal advisors to the firm's clients in the redistricting process—and the Consulting Experts' role as consultants doing work to allow Butler Snow to do that work—to fit a narrative the Government believes will lead to the discovery of privileged documents and communications. Specifically, the Government continues to contend, despite the Court's prior rulings (Doc. 467), that Butler Snow's work did not involve rendering legal advice. Respectfully, the Government is not entitled to redefine a relationship between Butler Snow and its clients, nor can the Government properly dictate the way the firm and its consultants rendered legal services to its clients. Adopting the Government's position

would require a finding that no attorney-client relationship existed between Butler Snow and their clients. There is no basis for such a finding, which would be wholly undermined by the record.

"An attorney-client relationship depends on a contract, express or implied, between the parties." *Simpson v. James*, 903 F.2d 372, 376 (5th Cir. 1990). The attorney-client relationship between Butler Snow and its clients is well-established in this case both by the firm's engagement letter with Chairman Hunter and the conduct of the parties. The engagement letter leaves no question that the firm was hired specifically to provide legal—not "political/partisan, nonlegal analysis"—to Chairman Hunter and his staff. Doc. 634 at 8. Butler Snow's engagement letter with Charmain Hunter states, in relevant part: "The Law Firm hereby agrees to furnish **legal counsel** and other **legal services** . . . to Todd Hunter, Chair of the House Redistricting Committee, his staff, and the General Counsel to the House[.]" **Ex. 1A**, Butler Snow Engagement Ltr. (emphasis added). Moreover, Chairman Hunter and Butler Snow's conduct throughout the redistricting process demonstrates the mutual understanding that an attorney-client relationship existed between the parties, and that Butler Snow provided only legal services to Chairman Hunter. *See Hill v. Hunt*, No. CIVA 307-CV-02020-O, 2008 WL 4108120, at *8 (N.D. Tex. Sept. 4, 2008) (explaining that in addition to an engagement letter, an attorney-client relationship can also be implied from the conduct of the parties). Chairman Hunter has made clear in a declaration that he and his staff have had, and maintain, an attorney-client relationship with Butler Snow, and "he has not waived any privilege related to Butler Snow's work product or their communications." **Ex. 8**, Hunter Decl. Similarly, the Hon. Scott K. Field, one of the Butler Snow lawyers who provided legal services to Chairman Hunter during the redistricting process and who is now the Presiding Judge of the 480th Judicial District Court of the State of Texas, has confirmed that Butler Snow was hired "as outside counsel for Representative Todd Hunter," and that "the firm maintained

attorney-client relationships with Chairman Hunter and his staff, as well as the General Counsel to the House of Representatives." **Ex. 3**, Field Decl.

The Government suggests that a spreadsheet Respondents produced to the Government in a good-faith effort to comply with a prior order from this Court demonstrates that Butler Snow was not providing legal advice to Chairman Hunter.   Not so.   The spreadsheet—which Respondents produced following this Court's prior order as containing publicly available data— does not prove that Butler Snow never provided legal services to Chairman Hunter.   This document was merely one document in the hundreds of documents in Respondents' possession that related to the redistricting process.  Nor does this spreadsheet say anything about the documents and communications logged on Respondents' revised privilege log, all of which were part of the consulting work the Consulting Experts performed at the direction of Butler Snow and that Butler Snow used in providing legal advice to its client. **Ex. 1**, Cardin Decl. [4]

The Government's other claimed bases for its expressed conclusion that Butler Snow did not provide legal services and advice to its clients are specious.  That Butler Snow as a law firm has practice groups within the firm that provide a host of professional services to its diverse clientele has nothing to do with the legal services Butler Snow was hired to provide to Charmin Hunter and his staff during the redistricting process.   Butler Snow's engagement letter with Chairman Hunter—and the parties' understanding of the services rendered, as expressed in

---

[4] In a telling departure from its unwarranted global attack on privilege, the Government asserts that there are two scheduling-related emails on Respondents' revised privilege log that are "scheduling" emails and should be produced.   Doc. 634 at 6.   Respondents' counsel have reviewed the two emails the government cites, PRIV_0018 and PRIV_0129, and have determined that two emails on the revised privilege log—PRIV_0018 and PRIV_0455—are scheduling-related emails, and Respondents will produce those, as it has other scheduling-related emails, in an effort to resolve these discovery matters without requiring Court intervention.   The other email the Government references as a "scheduling" email in its renewed motion, PRIV_0129, is not a scheduling email and contains privileged communications.

evidence before this Court—define the scope of the representation, not unrelated descriptions of the law firm's host of services listed on its website.

The Government seeks to end-run the attorney-client privilege as a matter of convenience. The federal rules favor production of relevant discovery material, but not at the expense or in derogation of attorney-client privilege. Respondents have established the existence of attorney-client privilege with respect to the withheld documents (and withheld content, in the case of redacted documents). The Government has failed to undercut that showing, with evidence or law. Accordingly, the Government's motion should be denied.

## <u>CONCLUSION</u>

For the foregoing reasons, and those stated in prior briefing on the issues related to the Government's subpoenas to the Consulting Experts, Respondents respectfully request that the Court deny the Government's Renewed Motion to Compel, and that the Court grant them all other relief to which Respondents may show themselves to be entitled.

Respectfully submitted,

BUTLER SNOW LLP

/s/*Eric J.R. Nichols*
Eric J.R. Nichols
Tex. Bar No. 14994900
eric.nichols@butlersnow.com
Marshall A. Bowen
Tex. Bar No. 24096672
marshall.bowen@butlersnow.com
1400 Lavaca Street, Suite 1000
Austin, TX 78701
(737) 802-1800

*Counsel for Respondents*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on November 16, 2022, copies of the foregoing Response to the United States' Renewed Motion to Compel were served on counsel of record through the Court's CM/ECF service.


/s/*Eric J.R. Nichols*
Eric J.R. Nichols

66421316.v1