# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS *et al.*, | § § § | |
| *Plaintiffs*, | § § | Case No. 3:21-cv-259-DCG-JES-JVB |
| v. | § § | (Consolidated Cases) |
| GREG ABBOTT, *et al.*, | § § § | |
| *Defendants*. | § | |

## THOMAS BRYAN'S OBJECTIONS AND RESPONSES TO THE UNITED STATES' SUBPOENA FOR DOCUMENTS AND RECORDS

TO:   Daniel J. Freeman, U.S. Department of Justice, Voting Section, Civil Rights Division, 4 Constitution Square 150 M St. NE, Room 8.143, Washington, D.C. 20530 Email: Daniel.freeman@usdoj.gov   Phone: (202) 305-4355

Pursuant to the Federal Rules of Civil Procedure, Thomas Bryan serves Objections and Responses to the United States' Subpoena for Documents and Records.

Date:  May 17, 2022

Respectfully submitted,

BUTLER SNOW LLP

By: */s/ Scott K. Field*
Scott K. Field
Texas State Bar No. 00793725
scott.field@butlersnow.com
Marshall A. Bowen
Texas State Bar No. 24096672
marshall.bowen@butlersnow.com
1400 Lavaca St., Suite 1000
Austin, Texas 78701
Tel: 737-802-1800

**COUNSEL FOR THOMAS BRYAN**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 17, 2022, the attached Objections and Responses to the United States' Subpoena for Documents and Records was served on opposing counsel via electronic mail.

*/s/ Scott K. Field*
Scott K. Field

## **OBJECTIONS RELEVANT TO EACH REQUEST**

Thomas Bryan asserts that each of the following objections applies specifically to each request below.  In the interest of brevity, these objections are offered here to avoid unnecessary repetition of objections to definitions, scope, and similar issues that afflict each request.  These objections are as follows:

Mr. Bryan is a consulting-only expert hired by Butler Snow LLP to assist it in representing its clients at the Texas Legislature.  Federal Rule of Civil Procedure 26(b)(4)(D) prohibits a party from discovering facts known or opinions held by an expert who is not expected to be called as a witness at trial.  Fed. R. Civ. P. 26(b)(4)(D).  *See Hartford Fire Ins. Co. v. Pure Air on the Lake Ltd. P'ship*, 154 F.R.D. 202, 208 (N.D. Ind. 1993) ("Rule 45 of the Federal Rules of Civil Procedure cannot be utilized for obtaining an expert's files where Rule 26(b)(4) remains the limitation on discoverability.").  Documents in Mr. Bryan's possession and information known to him are protected from discovery under this rule.  Additional privileges, including but not limited to, attorney-client privilege, the attorney work product doctrine, and deliberative process may also be implicated by DOJ's requests, and Mr. Bryan anticipates asserting all applicable privileges implicated by the DOJ's requests.

Given Mr. Bryan's role as a consulting expert, and that the requested production directly relates to legislative activities, much of the requested production is subject to legislative privilege. That privilege traces its roots to before the founding of the Republic, as it has "taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries."  *Tenney v. Brandhove*, 341 U.S. 372 (1951).  The privilege protects not only legislators, but their staff and aides as well.  *See Gravel v. United States*, 408 U.S. 606, 615-16 (1972).  Here, DOJ's attempt to compel disclosure of Mr. Bryan's "thought processes or [his] communications . . . with . . . legislators" falls squarely within the well-established contours of legislative privilege.  *Perez v. Abbott*, No. 5:11-cv-360, 2014 WL 3495414 (W.D. Tex. July 11, 2014).

The inadvertent production or disclosure of any privileged documents or information shall not constitute or be deemed to be a waiver of any applicable privilege with respect to such document or information (or the contents or subject matter thereof) or with respect to any other such document or discovery now or hereafter requested or provided.  Mr. Bryan reserves the right not to produce documents that are in part protected by privilege, except on a redacted basis, and to require the return of any document (and all copies thereof) inadvertently produced.  Mr. Bryan likewise does not waive the right to object, on any and all grounds, to (1) the evidentiary use of documents produced in response to these requests; and (2) discovery requests relating to those documents.

There is currently no protective order in place between the United States Department of Justice ("DOJ") and Mr. Bryan.  To the extent that documents may be identified that are discoverable but require additional protections to prevent public disclosure, any such documents that are identified will be withheld and described in the responses, with the clarification that such production will first require entry of a protective order before the documents may be disclosed.

The Federal Rules provide that the "attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). While nonparty subpoenas are governed by Rule 45, they are also subject to the parameters established by Rule 26. *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 607 (W.D. Tex. 2019) ("As with any other forms of discovery, the scope of discovery through a Rule 45 subpoena is governed by Rule 26(b)."). Therefore, the discovery sought here is still limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The twin demands for relevancy and proportionality "are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Thus, if the information sought is irrelevant to the party's claims or defenses, "it is not necessary to determine whether it would be proportional if it were relevant." *Walker v. Pioneer Prod. Servs., Inc.*, No. CV 15-0645, 2016 WL 1244510, at *3 (E.D. La. Mar. 30, 2016). Conversely, "relevance alone does not translate into automatic discoverability" because "[a]n assessment of proportionality is essential." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Accordingly, Mr. Bryan objects to these requests to the extent that the information sought is irrelevant or disproportionate.

A portion of the requested production is also irrelevant to DOJ's claims and is thus identified individually below. But a much larger portion of the request is not proportional to the needs of the case. The proportionality language was inserted into Rule 26(b) in 2015 "to emphasize the need for proportionality," *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017), and "highlight[] its significance," *Mannina v. D.C.*, 334 F.R.D. 336, 339 n.4 (D.D.C. 2020); *see also* Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States,[1] ("Rule 26(b)(1) crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality[.]"). As the Advisory Committee explained, this addition of overt "proportional" language was meant to better reflect the intent of the 1983 amendments, which were designed "to deal with the problem of over-discovery." Fed. R. Civ. P. 26(b) advisory committee's note (2015) (quoting the 1983 advisory notes). However, this "clear focus of the 1983 provisions may have been softened, although inadvertently, by the amendments made in 1993." *Id.* Thus, the 2015 amendment sought to "restore[] the proportionality factors to their original place in defining the scope of discovery" and reinforce the parties' obligation "to consider these factors in making discovery requests, responses, or objections." *Id.* As fully restored, the proportionality requirement "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019), cert. denied, 140 S. Ct. 672 (2019). Accordingly, Mr. Bryan objects to the DOJ's subpoena to the extent that it falls short of this more stringent proportionality standard.

---

[1] https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf

Mr. Bryan objects to the production of any documents or communications created after October 25, 2021, because any documents created after the passage of HB1 and SB6 are irrelevant to the United States' claims.

These responses and objections are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information or documents requested. All answers are given without prejudice to Mr. Bryan's right to object to the discovery of any documents, facts, or information discovered after the date hereof. Likewise, these responses and objections are not intended to be, and shall not be construed as, agreement with the DOJ's characterization of any facts, circumstances, or legal obligations. Mr. Bryan reserves the right to contest any such characterization as inaccurate and object to the Requests insofar as they contain any express or implied assumptions of fact or law concerning matters at issue in this litigation.

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Mr. Bryan objects to the definition of "document" to the extent that it calls for documents protected from disclosure by legislative privilege, attorney-client privilege, attorney work-product privilege, consulting expert privilege, deliberative process privilege, or any other applicable privilege.

Mr. Bryan objects to the definitions of "Legislator," "Member of the U.S. House of Representatives," "individual person," "entity," and "organization," *see* ¶¶ 2–3, 9–10, because they are overbroad and inaccurate. They improperly group all persons and entities having any relation to a particular person or entity, when in fact the particular person or entity is independent of those related persons or entities. Mr. Bryan objects to the implied application to any related persons or entities without specific enumeration.

Mr. Bryan further objects to the time period in Instruction 21, which defines the relevant time period for these responses as beginning on January 1, 2019. The claims and issues in this litigation pertain to redistricted maps that were drawn based upon data received from the United States Census Bureau in the late summer of 2021 and finalized in the fall of 2021. Accordingly, it is unreasonable and disproportionate to the needs of this case to look back to January of 2019 for documents responsive to these requests.

## RESPONSES

**Document Request 1**: All documents relating to any redistricting proposal for the Texas delegation to the U.S. House of Representatives or the Texas House, including but not limited to House Bill 1, Senate Bill 6, and any other Congressional or House redistricting proposal drawn, discussed, or considered. This request includes but is not limited to:

a. the origination(s) or source(s) of any such redistricting proposal;

b. the impetus, rationale, background, or motivation for any such redistricting proposal;

c. all drafts in the development or revision of any such redistricting proposal, including but not limited to shapefiles, files or datasets used in mapping software, each RED report, each

5

PAR report, demographic data (including but not limited to Citizen Voting Age Population, Hispanic Citizen Voting Age Population, Black Citizen Voting Age Population, Voting Age Population, Hispanic Voting Age Population, and Black Voting Age Population), election data (including but not limited to reconstituted election analyses), and files related to precinct names, precinct lines, split precincts, partisan indexes, population shifts, population deviations, voter registration, Spanish Surname Voter Registration, voter affiliation, Spanish Surname Voter Turnout, or changing census geography;

d.  the pairing of any incumbents in any such redistricting proposal;

e.  any redistricting amendment, whether partial or total, to each such proposal;

f.  negotiations regarding any redistricting proposal; and

g.  all calculations, reports, audits, estimates, projections, or other analyses, from any source, relating to the effect or impact, of any kind—including on (1) Texas minority voters, (2) existing or emerging minority opportunity districts, or (3) voter turnout (including Spanish Surname Voter Turnout)—that could result from the implementation of any such redistricting proposal.

**Response:** Mr. Bryan objects to this request because it calls for the production of documents that are subject to legislative privilege, attorney-client privilege, attorney work-product privilege, consulting only expert privilege under Federal Rule of Civil Procedure 26(b)(4)(D), deliberative process privilege, or are protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501.  In particular, requesting analyses "from any source" is likely to encompass documents that are protected by the legislative privilege or the consulting only expert privilege.  Requesting "the origination(s)" and "the impetus, rationale, background, or motivation" of certain legislative proposals would impermissibly expose thought processes and mental impressions, which are also subject to legislative privilege.  Requesting analyses that were "considered by" the Legislature, "draft in the development or revision of" redistricting proposals, "negotiations" and "calculations, reports, audits, estimates, projections, or other analyses" would be subject to legislative privilege for the same reason.

Mr. Bryan further objects to this request because it asks him to gather publicly available documents that are equally accessible to the United States.  Insofar as the request generally seeks shapefiles, data sets, reconstituted election analyses, amendments, information concerning the pairing of incumbents, and other general information, Mr. Bryan directs DOJ to the Texas Legislative Council's Capitol Data Portal, https://data.capitol.texas.gov/organization/tlc, where such information may be found. Insofar as the request seeks such information specifically considered by any legislator or staff, the request calls for information subject to the legislative privilege.  To the extent the request seeks information specific to Mr. Bryan, the request calls for information protected from disclosure under Federal Rule of Civil Procedure 26(b)(4)(D).

Lastly, insofar as the request seeks legal analysis concerning the "effect or impact" of redistricting proposals on "minority voters," "existing or emerging minority opportunity districts," or "voter

turnout," it seeks information that may be subject to the attorney-client privilege or constitute attorney work product.

**Document Request 2:** All documents relating to the redistricting process for the Texas House or the Texas delegation to the U.S. House of Representatives, including but not limited to planning, timing, hearings, outreach, publicity, public or expert participation, deadlines, limitations, staffing, and persons or entities involved.

**Response:** Mr. Bryan objects to this request because it calls for documents that are subject to the legislative privilege. The request seeks documents relating to the "planning" and "timing" of the redistricting process. These go to mental impressions and legislative strategy, which are at the core of the legislative privilege. Mr. Bryan objects to this request to the extent that documents that are subject to attorney-client privilege, consulting only expert privilege under Federal Rule of Civil Procedure 26(b)(4)(D), attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Mr. Bryan also objects to this request because it asks him to gather publicly available documents that are equally accessible to Plaintiff. Insofar as the request seeks information on the attendance and date of hearings, and persons and entities involved, such information may be found at the Texas Senate and Texas House of Representatives websites, as well as on the Texas Legislature Online ("TLO") website. *See* https://senate.texas.gov/index.php (Senate); https://house.texas.gov/ (House); https://capitol.texas.gov/Home.aspx (TLO).

**Document Request 3:** All documents relating to voting patterns in Texas elections with respect to race, ethnicity, or language minority status, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response:** Insofar as this request asks for calculations, reports, audits, estimates, projections, or other analyses used as part of the redistricting process, Mr. Bryan objects on the basis that such a request calls for documents that are subject to the legislative privilege. Documents used for the purpose of formulating legislation are at the core of the legislative privilege. Mr. Bryan objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, consulting expert privilege under Federal Rule of Civil Procedure 26(b)(4)(D), deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Mr. Bryan also objects to this request because it is facially overbroad. It calls for "all" documents relating to voting patterns, without any temporal limitation (other than the one included in the instructions) or further specification. For this reason, documents relating to voting patterns in Texas may well be irrelevant to the United States' claims—which are limited to several districts in the Texas House of Representatives map and Congressional map.

**Document Request 4:** All documents relating to whether House Bill 1, Senate Bill 6, or any other redistricting proposal drawn, discussed, or considered with respect to the Texas House or the Texas

delegation to the U.S. House of Representatives complies with the Voting Rights Act, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response:** Mr. Bryan objects to this request because, by its very nature, it calls for documents that are subject to the attorney-client privilege, the legislative privilege, and constitute attorney work product. Legal analysis concerning whether HB1, SB6, or other related redistricting bills comply with the VRA will necessarily implicate these privileges. Further, communications between legislators and their staffs are privileged communications covered by the legislative privilege.

Finally, Mr. Bryan objects to this request on the basis of the consulting expert privilege under Federal Rule of Civil Procedure 26(b)(4)(D) because any documents in his possession are necessarily pursuant to his role as a consulting expert to Butler Snow LLP.

**Document Request 5:** All documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives exchanged between, among, with, or within the Office of the Governor, the Office of the Lieutenant Governor, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate to represent Texas in the U.S. House of Representatives, any candidate for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any local elected official in Texas, any consultant, any expert, any law firm or attorney, any vendor, any other political or community group or organization, or any member of the public.

**Response:** Mr. Bryan objects to this request because it is overbroad. The request calls for "all documents relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients). That is an extremely broad request and will necessarily apply to documents that are irrelevant to the United States' claims in this case.

Mr. Bryan also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of the Representative, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions."

8

*Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

Mr. Bryan also objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, consulting expert privilege under Federal Rule of Civil Procedure 26(b)(4)(D), deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Mr. Bryan further objects to this request because it calls for documents that are irrelevant to the United States' claims in this case.  Specifically, it is unclear without further specification why documents relating to redistricting exchanged between the individuals and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

**Request 6:**  All other documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives from July 1, 2021, to the present, including but not limited to redistricting criteria, public statements, correspondence, calendar invitations, scheduling emails, meeting minutes, agendas, attendance sheets, call logs, notes, presentations, studies, advocacy, letters, or other communications.

**Response:**  Mr. Bryan objects to this request because it is overbroad.  The request calls for "all documents relating redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients).  That is an extremely broad request and will necessarily apply to make documents that are irrelevant to the United States' claims in this case.

Mr. Bryan also objects to this request because the request calls for documents that are subject to the legislative privilege.  Among others, documents concerning "presentations," "redistricting criteria," and "meeting minutes" go directly to legislators' mental impressions and motivations concerning pending legislation, which is clearly covered by the privilege.  Of course, communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege.  *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991).

Mr. Bryan further objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, consulting only expert privilege under Federal Rule of Civil Procedure 26(b)(4)(D), deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

**Request 7**:  All documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes, race, ethnicity, language minority status, or United States citizenship that were exchanged between, among, with, or within the Office of the Governor, the Office of the Lieutenant Governor, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members

thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate for the Texas House, any candidate to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any consultant, any expert, any law firm or attorney, any vendor, any group or organization, or any member of the public.

**Response:** Mr. Bryan objects to this request because it is overbroad. The request calls for "all documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes," without any qualifications (other than the listed recipients). That is an extremely broad request and will likely apply to make documents that are irrelevant to the United States' claims in this case.

Mr. Bryan also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of the Representative, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing Supreme Court of Virginia v. Consumers *Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

Mr. Bryan further objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, consulting expert privilege under Federal Rule of Civil Procedure 26(b)(4)(D), deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Mr. Bryan also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to demographic enumerations or estimates exchanged between the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Mr. Bryan further objects on the basis that much the information sought by this request may be made publicly available by the U.S. Census Bureau and the Texas Demographic Center.

**Request 8:** All documents relating to payment for services; agreements of representation, consultation, employment, services, confidentiality, or common interest; or any other type of contract relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives that include any of the following individuals or entities: Adam Foltz, Chris Gober, The Gober Group, any consultant, any political operative, any expert, the Office of the Texas Attorney General, any other law firm, any other attorney, any other vendor, or any other person or entity.

**Response:** Mr. Bryan objects to this request because it is overbroad and harassing. Although it appears to be bounded by specific persons and entities, the end of the request provides that the request applies to "any other attorney," "any other vendor," or "any other person or entity." The net effect is that the initial limitations are swallowed by the sheer breadth of a request that asks for "all documents" that "[relate] to redistricting" and that include "any other person or entity." Accordingly, this request is overly broad and conducting a search of this scope and breadth without any reasonable limitation is disproportionate to the needs of this case. Further, Mr. Bryan is not a party to this litigation, and should not be required to produce, for example, "all documents" that "[relate] to redistricting" that include "any political operative." Such a facially overbroad requests create an undue burden. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

In addition, Mr. Bryan objects to this request because it calls for documents that are subject to the legislative privilege and the attorney-client privilege. Documents relating to services provided by third parties for a legislative purpose are subject to the legislative privilege. *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)). And documents relating to Mr. Bryan and any legal representation is subject to the attorney-client privilege.

Mr. Bryan also objects on the basis that this request does not list an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any contracts or other agreements entered into after the filing of this complaint would necessarily be irrelevant.

Mr. Bryan further objects to this request to the extent that documents that are subject to attorney work-product privilege, the consulting expert privilege under Federal Rule of Civil Procedure 26(b)(4)(D), deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

**Request 9:** All non-privileged documents relating to the instant lawsuit or preceding investigation of Texas by the U.S. Department of Justice.

**Response:** Mr. Bryan objects to this request because it is overbroad. It is unclear from the face of this request why "all documents relating" to this lawsuit or the United States' preceding investigation would be relevant to the United States' claims. And insofar as these documents relate to the United States' investigation, these are documents that are more likely to be within the care, custody, or control of the United States. If such materials are more commonly held by others, including state and local law enforcement agencies, production should be requested from them rather than from an individual legislator. Given the availability of these documents from other sources, the burden of requiring Mr. Bryan to collect them far exceeds any benefit that might result.

11

*See Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (stating that courts should "consider what information is available to the requesting party from other sources" when analyzing "the benefit side of the ledger").

Mr. Bryan also objects on the basis that this request does not list an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any documents originating after the filing of this complaint would necessarily be irrelevant.

Mr. Bryan further objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, consulting expert privilege under Federal Rule of Civil Procedure 26(b)(4)(D), deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS *et al.*, | § § § | |
| *Plaintiffs*, | § § § | Case No. 3:21-cv-259-DCG-JES-JVB |
| v. | § § | (Consolidated Cases) |
| GREG ABBOTT, *et al.*, | § § § | |
| *Defendants*. | § | |

**ERIC WIENCKOWSKI'S OBJECTIONS AND RESPONSES TO
THE UNITED STATES' SUBPOENA FOR DOCUMENTS AND RECORDS**

TO:    Daniel J. Freeman, U.S. Department of Justice, Voting Section, Civil Rights Division, 4 Constitution Square 150 M St. NE, Room 8.143, Washington, D.C. 20530 Email: Daniel.freeman@usdoj.gov    Phone: (202) 305-4355

Pursuant to the Federal Rules of Civil Procedure, Eric Wienckowski serves Objections and

Responses to the United States' Subpoena for Documents and Records.

Date:  May 17, 2022                    Respectfully submitted,

BUTLER SNOW LLP

By: */s/ Scott K. Field*
Scott K. Field
Texas State Bar No. 00793725
scott.field@butlersnow.com
Marshall A. Bowen
Texas State Bar No. 24096672
marshall.bowen@butlersnow.com
1400 Lavaca St., Suite 1000
Austin, Texas 78701
Tel: 737-802-1800

**COUNSEL FOR ERIC WIENCKOWSKI**

1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 17, 2022, the attached Objections and Responses to the United States' Subpoena for Documents and Records was served on opposing counsel via electronic mail.

*/s/ Scott K. Field*
Scott K. Field

## OBJECTIONS RELEVANT TO EACH REQUEST

Eric Wienckowski asserts that each of the following objections applies specifically to each request below.  In the interest of brevity, these objections are offered here to avoid unnecessary repetition of objections to definitions, scope, and similar issues that afflict each request.  These objections are as follows:

Mr. Wienckowski is a consulting-only expert who was hired by Butler Snow LLP's consulting-only expert to assist Butler Snow LLP in representing its clients at the Texas Legislature.  Federal Rule of Civil Procedure 26(b)(4)(D) prohibits a party from discovering facts known or opinions held by an expert who is not expected to be called as a witness at trial.  Fed. R. Civ. P. 26(b)(4)(D).  *See Hartford Fire Ins. Co. v. Pure Air on the Lake Ltd. P'ship*, 154 F.R.D. 202, 208 (N.D. Ind. 1993) ("Rule 45 of the Federal Rules of Civil Procedure cannot be utilized for obtaining an expert's files where Rule 26(b)(4) remains the limitation on discoverability.").  Documents in Mr. Wienckowski's possession and information known to him are protected from discovery under this rule.  Additional privileges, including but not limited to, attorney-client privilege, the attorney work product doctrine, and deliberative process may also be implicated by DOJ's requests, and Mr. Wienckowski anticipates asserting all applicable privileges implicated by the DOJ's requests.

Given Mr. Wienckowski's role as a consulting expert, and that the requested production directly relates to legislative activities, much of the requested production is subject to legislative privilege.  That privilege traces its roots to before the founding of the Republic, as it has "taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries."  *Tenney v. Brandhove*, 341 U.S. 372 (1951).  The privilege protects not only legislators, but their staff and aides as well. *See Gravel v. United States*, 408 U.S. 606, 615-16 (1972).  Here, DOJ's attempt to compel disclosure of Mr. Wienckowski's "thought processes or [his] communications . . . with . . . legislators" falls squarely within the well-established contours of legislative privilege.  *Perez v. Abbott*, No. 5:11-cv-360, 2014 WL 3495414 (W.D. Tex. July 11, 2014).

The inadvertent production or disclosure of any privileged documents or information shall not constitute or be deemed to be a waiver of any applicable privilege with respect to such document or information (or the contents or subject matter thereof) or with respect to any other such document or discovery now or hereafter requested or provided.  Mr. Wienckowski reserves the right not to produce documents that are in part protected by privilege, except on a redacted basis, and to require the return of any document (and all copies thereof) inadvertently produced.  Mr. Wienckowski likewise does not waive the right to object, on any and all grounds, to (1) the evidentiary use of documents produced in response to these requests; and (2) discovery requests relating to those documents.

There is currently no protective order in place between the United States Department of Justice ("DOJ") and Mr. Wienckowski.  To the extent that documents may be identified that are discoverable but require additional protections to prevent public disclosure, any such documents

that are identified will be withheld and described in the responses, with the clarification that such production will first require entry of a protective order before the documents may be disclosed.

The Federal Rules provide that the "attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). While nonparty subpoenas are governed by Rule 45, they are also subject to the parameters established by Rule 26. *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 607 (W.D. Tex. 2019) ("As with any other forms of discovery, the scope of discovery through a Rule 45 subpoena is governed by Rule 26(b)."). Therefore, the discovery sought here is still limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The twin demands for relevancy and proportionality "are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Thus, if the information sought is irrelevant to the party's claims or defenses, "it is not necessary to determine whether it would be proportional if it were relevant." *Walker v. Pioneer Prod. Servs., Inc.*, No. CV 15-0645, 2016 WL 1244510, at *3 (E.D. La. Mar. 30, 2016). Conversely, "relevance alone does not translate into automatic discoverability" because "[a]n assessment of proportionality is essential." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Accordingly, Mr. Wienckowski objects to these requests to the extent that the information sought is irrelevant or disproportionate.

A portion of the requested production is also irrelevant to DOJ's claims and is thus identified individually below. But a much larger portion of the request is not proportional to the needs of the case. The proportionality language was inserted into Rule 26(b) in 2015 "to emphasize the need for proportionality," *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017), and "highlight[] its significance," *Mannina v. D.C.*, 334 F.R.D. 336, 339 n.4 (D.D.C. 2020); *see also* Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States,[1] ("Rule 26(b)(1) crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality[.]"). As the Advisory Committee explained, this addition of overt "proportional" language was meant to better reflect the intent of the 1983 amendments, which were designed "to deal with the problem of over-discovery." Fed. R. Civ. P. 26(b) advisory committee's note (2015) (quoting the 1983 advisory notes). However, this "clear focus of the 1983 provisions may have been softened, although inadvertently, by the amendments made in 1993." *Id.* Thus, the 2015 amendment sought to "restore[] the proportionality factors to their original place in defining the scope of discovery" and reinforce the parties' obligation "to consider these factors in making discovery requests, responses, or objections." *Id.* As fully restored, the proportionality requirement "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019), cert. denied, 140 S. Ct. 672 (2019). Accordingly, Mr. Wienckowski objects to the DOJ's subpoena to the extent that it falls short of this more stringent proportionality standard.

---

[1] https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf

Mr. Wienckowski objects to the production of any documents or communications created after October 25, 2021, because any documents created after the passage of HB1 and SB6 are irrelevant to the United States' claims.

These responses and objections are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information or documents requested. All answers are given without prejudice to Mr. Wienckowski's right to object to the discovery of any documents, facts, or information discovered after the date hereof. Likewise, these responses and objections are not intended to be, and shall not be construed as, agreement with the DOJ's characterization of any facts, circumstances, or legal obligations. Mr. Wienckowski reserves the right to contest any such characterization as inaccurate and object to the Requests insofar as they contain any express or implied assumptions of fact or law concerning matters at issue in this litigation.

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Mr. Wienckowski objects to the definition of "document" to the extent that it calls for documents protected from disclosure by legislative privilege, attorney-client privilege, attorney work-product privilege, consulting expert privilege, deliberative process privilege, or any other applicable privilege.

Mr. Wienckowski objects to the definitions of "Legislator," "Member of the U.S. House of Representatives," "individual person," "entity," and "organization," *see* ¶¶ 2–3, 9–10, because they are overbroad and inaccurate. They improperly group all persons and entities having any relation to a particular person or entity, when in fact the particular person or entity is independent of those related persons or entities. Mr. Wienckowski objects to the implied application to any related persons or entities without specific enumeration.

Mr. Wienckowski further objects to the time period in Instruction 21, which defines the relevant time period for these responses as beginning on January 1, 2019. The claims and issues in this litigation pertain to redistricted maps that were drawn based upon data received from the United States Census Bureau in the late summer of 2021 and finalized in the fall of 2021. Accordingly, it is unreasonable and disproportionate to the needs of this case to look back to January of 2019 for documents responsive to these requests.

## RESPONSES

**Document Request 1**: All documents relating to any redistricting proposal for the Texas delegation to the U.S. House of Representatives or the Texas House, including but not limited to House Bill 1, Senate Bill 6, and any other Congressional or House redistricting proposal drawn, discussed, or considered. This request includes but is not limited to:

a.  the origination(s) or source(s) of any such redistricting proposal;

b.  the impetus, rationale, background, or motivation for any such redistricting proposal;

c.  all drafts in the development or revision of any such redistricting proposal, including but

not limited to shapefiles, files or datasets used in mapping software, each RED report, each PAR report, demographic data (including but not limited to Citizen Voting Age Population, Hispanic Citizen Voting Age Population, Black Citizen Voting Age Population, Voting Age Population, Hispanic Voting Age Population, and Black Voting Age Population), election data (including but not limited to reconstituted election analyses), and files related to precinct names, precinct lines, split precincts, partisan indexes, population shifts, population deviations, voter registration, Spanish Surname Voter Registration, voter affiliation, Spanish Surname Voter Turnout, or changing census geography;

d.  the pairing of any incumbents in any such redistricting proposal;

e.  any redistricting amendment, whether partial or total, to each such proposal;

f.  negotiations regarding any redistricting proposal; and

g.  all calculations, reports, audits, estimates, projections, or other analyses, from any source, relating to the effect or impact, of any kind—including on (1) Texas minority voters, (2) existing or emerging minority opportunity districts, or (3) voter turnout (including Spanish Surname Voter Turnout)—that could result from the implementation of any such redistricting proposal.

**Response:** Mr. Wienckowski objects to this request because it calls for the production of documents that are subject to legislative privilege, attorney-client privilege, attorney work-product privilege, consulting only expert privilege under Federal Rule of Civil Procedure 26(b)(4)(D), deliberative process privilege, or are protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501.  In particular, requesting analyses "from any source" is likely to encompass documents that are protected by the legislative privilege or the consulting only expert privilege.  Requesting "the origination(s)" and "the impetus, rationale, background, or motivation" of certain legislative proposals would impermissibly expose thought processes and mental impressions, which are also subject to legislative privilege.  Requesting analyses that were "considered by" the Legislature, "draft in the development or revision of" redistricting proposals, "negotiations" and "calculations, reports, audits, estimates, projections, or other analyses" would be subject to legislative privilege for the same reason.

Mr. Wienckowski further objects to this request because it asks him to gather publicly available documents that are equally accessible to the United States.  Insofar as the request generally seeks shapefiles, data sets, reconstituted election analyses, amendments, information concerning the pairing of incumbents, and other general information, Mr. Wienckowski directs DOJ to the Texas Legislative Council's Capitol Data Portal, https://data.capitol.texas.gov/organization/tlc, where such information may be found. Insofar as the request seeks such information specifically considered by any legislator or staff, the request calls for information subject to the legislative privilege.  To the extent the request seeks information specific to Mr. Wienckowski, the request calls for information protected from disclosure under Federal Rule of Civil Procedure 26(b)(4)(D).

Lastly, insofar as the request seeks legal analysis concerning the "effect or impact" of redistricting proposals on "minority voters," "existing or emerging minority opportunity districts," or "voter

turnout," it seeks information that may be subject to the attorney-client privilege or constitute attorney work product.

**Document Request 2:** All documents relating to the redistricting process for the Texas House or the Texas delegation to the U.S. House of Representatives, including but not limited to planning, timing, hearings, outreach, publicity, public or expert participation, deadlines, limitations, staffing, and persons or entities involved.

**Response:** Mr. Wienckowski objects to this request because it calls for documents that are subject to the legislative privilege. The request seeks documents relating to the "planning" and "timing" of the redistricting process. These go to mental impressions and legislative strategy, which are at the core of the legislative privilege. Mr. Wienckowski objects to this request to the extent that documents that are subject to attorney-client privilege, consulting only expert privilege under Federal Rule of Civil Procedure 26(b)(4)(D), attorney work-product privilege, deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Mr. Wienckowski also objects to this request because it asks him to gather publicly available documents that are equally accessible to Plaintiff. Insofar as the request seeks information on the attendance and date of hearings, and persons and entities involved, such information may be found at the Texas Senate and Texas House of Representatives websites, as well as on the Texas Legislature Online ("TLO") website. *See* https://senate.texas.gov/index.php (Senate); https://house.texas.gov/ (House); https://capitol.texas.gov/Home.aspx (TLO).

**Document Request 3:** All documents relating to voting patterns in Texas elections with respect to race, ethnicity, or language minority status, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response:** Insofar as this request asks for calculations, reports, audits, estimates, projections, or other analyses used as part of the redistricting process, Mr. Wienckowski objects on the basis that such a request calls for documents that are subject to the legislative privilege. Documents used for the purpose of formulating legislation are at the core of the legislative privilege. Mr. Wienckowski objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, consulting expert privilege under Federal Rule of Civil Procedure 26(b)(4)(D), deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Mr. Wienckowski also objects to this request because it is facially overbroad. It calls for "all" documents relating to voting patterns, without any temporal limitation (other than the one included in the instructions) or further specification. For this reason, documents relating to voting patterns in Texas may well be irrelevant to the United States' claims—which are limited to several districts in the Texas House of Representatives map and Congressional map.

**Document Request 4:** All documents relating to whether House Bill 1, Senate Bill 6, or any other redistricting proposal drawn, discussed, or considered with respect to the Texas House or the Texas

delegation to the U.S. House of Representatives complies with the Voting Rights Act, including but not limited to any calculations, reports, audits, estimates, projections, or other analyses.

**Response:** Mr. Wienckowski objects to this request because, by its very nature, it calls for documents that are subject to the attorney-client privilege, the legislative privilege, and constitute attorney work product.  Legal analysis concerning whether HB1, SB6, or other related redistricting bills comply with the VRA will necessarily implicate these privileges.  Further, communications between legislators and their staffs are privileged communications covered by the legislative privilege.

Finally, Mr. Wienckowski objects to this request on the basis of the consulting expert privilege under Federal Rule of Civil Procedure 26(b)(4)(D) because any documents in his possession are necessarily pursuant to his role as a consulting expert to Butler Snow LLP.

**Document Request 5:** All documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives exchanged between, among, with, or within the Office of the Governor, the Office of the Lieutenant Governor, the Office of the Secretary of State, the Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate to represent Texas in the U.S. House of Representatives, any candidate for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any local elected official in Texas, any consultant, any expert, any law firm or attorney, any vendor, any other political or community group or organization, or any member of the public.

**Response:** Mr. Wienckowski objects to this request because it is overbroad.  The request calls for "all documents relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients).  That is an extremely broad request and will necessarily apply to documents that are irrelevant to the United States' claims in this case.

Mr. Wienckowski also objects to this request because it calls for documents that are covered by the legislative privilege.  First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege.  *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991).  And requesting communications between the office of the Governor, the office of the Representative, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege.  Indeed, the Supreme Court has repeatedly recognized that "officials outside

the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

Mr. Wienckowski also objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, consulting expert privilege under Federal Rule of Civil Procedure 26(b)(4)(D), deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Mr. Wienckowski further objects to this request because it calls for documents that are irrelevant to the United States' claims in this case.  Specifically, it is unclear without further specification why documents relating to redistricting exchanged between the individuals and the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

**Request 6:** All other documents relating to redistricting for the Texas House or the Texas delegation to the U.S. House of Representatives from July 1, 2021, to the present, including but not limited to redistricting criteria, public statements, correspondence, calendar invitations, scheduling emails, meeting minutes, agendas, attendance sheets, call logs, notes, presentations, studies, advocacy, letters, or other communications.

**Response:** Mr. Wienckowski objects to this request because it is overbroad.  The request calls for "all documents relating redistricting for the Texas House or Texas delegation to the U.S. House of Representatives," without any qualifications (other than the listed recipients).  That is an extremely broad request and will necessarily apply to make documents that are irrelevant to the United States' claims in this case.

Mr. Wienckowski also objects to this request because the request calls for documents that are subject to the legislative privilege.  Among others, documents concerning "presentations," "redistricting criteria," and "meeting minutes" go directly to legislators' mental impressions and motivations concerning pending legislation, which is clearly covered by the privilege.  Of course, communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege.  *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991).

Mr. Wienckowski further objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, consulting only expert privilege under Federal Rule of Civil Procedure 26(b)(4)(D), deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

**Request 7**: All documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes, race, ethnicity, language minority status, or United States citizenship that were exchanged between, among, with, or within the Office of the Governor, the Office of the Lieutenant Governor, the Office of the Secretary of State, the

Office of the Attorney General, any legislator, the House Committee on Redistricting or members thereof, the Senate Special Committee on Redistricting or members thereof, the Conference Committee regarding Senate Bill 6 or members thereof, the Texas Legislative Council, any member of the U.S. House of Representatives, any candidate for the Texas House, any candidate to represent Texas in the U.S. House of Representatives, any campaign for the Texas House, any campaign to represent Texas in the U.S. House of Representatives, any national political party, any state political party organization, any local political party organization, any national congressional campaign committee, any national organization dedicated to supporting state legislative candidates, the National Republican Redistricting Trust, the National Democratic Redistricting Committee, any political action committee, any lobbyist, any political activist or operative, any other governmental entity, any consultant, any expert, any law firm or attorney, any vendor, any group or organization, or any member of the public.

**Response:** Mr. Wienckowski objects to this request because it is overbroad. The request calls for "all documents relating to enumerations or estimates by the U.S. Census Bureau or Texas Demographic Center related to population changes," without any qualifications (other than the listed recipients). That is an extremely broad request and will likely apply to make documents that are irrelevant to the United States' claims in this case.

Mr. Wienckowski also objects to this request because it calls for documents that are covered by the legislative privilege. First, with respect to communications between legislators, it is clear that communications and deliberations by legislators about pending bills are "legislative acts" protected by legislative privilege. *See Gravel v. United States*, 408 U.S. 606, 624-25 (1972); *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991). And requesting communications between the office of the Governor, the office of the Representative, the office of the Secretary of State, and other similar parties, their staff or agents, encompasses documents that are protected by legislative privilege. Indeed, the Supreme Court has repeatedly recognized that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing Supreme Court of Virginia v. Consumers *Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)).

Mr. Wienckowski further objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, consulting expert privilege under Federal Rule of Civil Procedure 26(b)(4)(D), deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

Mr. Wienckowski also objects to this request because it calls for documents that are irrelevant to the United States' claims in this case. Specifically, it is unclear without further specification why documents relating to demographic enumerations or estimates exchanged between the many third parties listed on page 8 of the United States' requests (that is, candidates, political parties, lobbyists, and the rest) would be relevant.

Mr. Wienckowski further objects on the basis that much the information sought by this request may be made publicly available by the U.S. Census Bureau and the Texas Demographic Center.

**Request 8:** All documents relating to payment for services; agreements of representation, consultation, employment, services, confidentiality, or common interest; or any other type of contract relating to redistricting for the Texas House or Texas delegation to the U.S. House of Representatives that include any of the following individuals or entities: Adam Foltz, Chris Gober, The Gober Group, any consultant, any political operative, any expert, the Office of the Texas Attorney General, any other law firm, any other attorney, any other vendor, or any other person or entity.

**Response:** Mr. Wienckowski objects to this request because it is overbroad and harassing. Although it appears to be bounded by specific persons and entities, the end of the request provides that the request applies to "any other attorney," "any other vendor," or "any other person or entity." The net effect is that the initial limitations are swallowed by the sheer breadth of a request that asks for "all documents" that "[relate] to redistricting" and that include "any other person or entity." Accordingly, this request is overly broad and conducting a search of this scope and breadth without any reasonable limitation is disproportionate to the needs of this case. Further, Mr. Wienckowski is not a party to this litigation, and should not be required to produce, for example, "all documents" that "[relate] to redistricting" that include "any political operative." Such a facially overbroad requests create an undue burden. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

In addition, Mr. Wienckowski objects to this request because it calls for documents that are subject to the legislative privilege and the attorney-client privilege. Documents relating to services provided by third parties for a legislative purpose are subject to the legislative privilege. *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731–34 (1980)). And documents relating to Mr. Wienckowski and any legal representation is subject to the attorney-client privilege.

Mr. Wienckowski also objects on the basis that this request does not list an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973). Any contracts or other agreements entered into after the filing of this complaint would necessarily be irrelevant.

Mr. Wienckowski further objects to this request to the extent that documents that are subject to attorney work-product privilege, the consulting expert privilege under Federal Rule of Civil Procedure 26(b)(4)(D), deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

**Request 9:** All non-privileged documents relating to the instant lawsuit or preceding investigation of Texas by the U.S. Department of Justice.

**Response:** Mr. Wienckowski objects to this request because it is overbroad. It is unclear from the face of this request why "all documents relating" to this lawsuit or the United States' preceding investigation would be relevant to the United States' claims. And insofar as these documents relate to the United States' investigation, these are documents that are more likely to be within the care, custody, or control of the United States. If such materials are more commonly held by others, including state and local law enforcement agencies, production should be requested from them

rather than from an individual legislator.  Given the availability of these documents from other sources, the burden of requiring Mr. Wienckowski to collect them far exceeds any benefit that might result.  *See Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (stating that courts should "consider what information is available to the requesting party from other sources" when analyzing "the benefit side of the ledger").

Mr. Wienckowski also objects on the basis that this request does not list an end date. *See Doe v. McMillan*, 412 U.S. 306, 313–14 (1973).  Any documents originating after the filing of this complaint would necessarily be irrelevant.

Mr.  Wienckowski further objects to this request to the extent that documents that are subject to attorney-client privilege, attorney work-product privilege, consulting expert privilege under Federal Rule of Civil Procedure 26(b)(4)(D), deliberative process privilege, or protected from disclosure by Texas Government Code § 323.017, which is privileged under Fed. R. Evid. 501 are implicated by this request.

64306812.v2