IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS (LULAC), et al.,<br><br>      Plaintiffs,<br><br>   v.<br><br>GREG ABBOTT, et al.,<br><br>      Defendants. | Civil Action No. 3:21-cv-259<br>(DCG-JES-JVB)<br>(consolidated cases) |

## MOTION TO COMPEL TEXAS LEGISLATIVE COUNCIL DOCUMENTS

This Court has already issued three orders requiring the Texas Legislative Council ("TLC") and its Executive Director to respond to certain discovery requests in this case. *See* TLC Doc. Order, ECF No. 377; TLC Reconsideration Order, ECF No. 415; Archer Order, ECF No. 557. TLC now invokes legislative privilege and attorney-client privilege over draft redistricting plans, shape files, and other legislative materials—categories of documents produced and relied upon in past Voting Rights Act litigation. TLC has not met its burden to establish these privileges; it asserts them over documents that do not qualify for protection. This Court should once again order TLC to produce withheld documents relevant to the United States' Voting Rights Act claims.

**I. Background**

On February 28, 2022, the United States served a subpoena *duces tecum* on TLC seeking documents related to Texas's 2021 redistricting. Several legislators moved to quash the subpoena, or in the alternative, sought a protective order. *See* Defs.' and Legislators' Mot., ECF No. 219. This Court denied the motion to quash but modified the subpoena to require that TLC

consult with legislators prior to production. *See* TLC Doc. Order 9-10. Moreover, the Court cautioned that "'[p]rivileges are strongly disfavored in federal practice'" and that the Court would conduct an "independent evaluation" of any "claimed privilege." TLC Doc. Order 8-9 (quoting *ACLU v. Finch*, 638 F.2d 1336, 1343-44 (5th Cir. Unit A 1981). Following denial of reconsideration, *see* TLC Reconsideration Order, TLC produced a set of responsive documents and a privilege log.

TLC continues to withhold 424 documents under claims of legislative privilege and attorney-client privilege that should be produced. *See* TLC Privilege Log (Ex. 1). In particular, TLC claims either legislative or attorney-client privilege for 400 factual documents created by TLC, which are not privileged because these documents concern factual information to which the United States is entitled.

## II. Legal Standard

Federal Rule of Civil Procedure 45(d)(2)(B)(i) allows the party that served a subpoena to "move the court . . . for an order compelling production." In turn, Rule 45(e)(2)(A) mandates:

> [A] person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must (i) expressly make the claim; and (ii) describe the nature of the withheld documents . . . in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

The party withholding documents has the burden to establish they are privileged or protected. *See Hodges, Grant & Kaufmann v. IRS*, 768 F.2d 719, 721 (5th Cir. 1985).

"[L]egislative privilege . . . is an evidentiary privilege, governed by federal common law." *Jefferson Cmty. Health Care Centers, Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 624 (5th Cir. 2017) (internal quotation marks and citations omitted). The party asserting legislative privilege must show that the document "contains or involves opinions, motives,

recommendations or advice about legislative decisions between legislators or between legislators and their staff." *Jackson Mun. Airport Auth. v. Bryant*, No. 16-cv-246, 2017 WL 6520967, at *7 (S.D. Miss. Dec. 19, 2017) (citations omitted). Moreover, the legislative privilege is qualified, not absolute, and must be strictly construed. *Jefferson Cmty. Health Care Centers*, 849 F.3d at 624 (citation omitted); *see also LULAC v. Abbott*, No. 22-50407, 2022 WL 2713263, at *2 (5th Cir. May 20, 2022) ("[T]he privilege must not be used as a cudgel to prevent the discovery of non-privileged information or to prevent the discovery of the truth in cases where the federal interests at stake outweigh the interests protected by the privilege.").

A party asserting attorney-client privilege must prove: "(1) that he made a confidential communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding." *EEOC v. BDO USA, LLP*, 876 F.3d 690, 695 (5th Cir. 2017). "Ambiguities as to whether the elements of a privilege claim have been met are construed against the proponent." *Id.* (internal citation omitted).

**III.   Argument**

   **A.   The Subpoenaed Documents Are Relevant.**

Draft redistricting plans, shape files, and other legislative materials bear directly on whether "invidious discriminatory purpose was a motivating factor" in Congressional redistricting. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977). These legislative materials also bear on the discriminatory results test's inquiry into "whether the policy underlying . . . use of the contested practice or structure is tenuous." *Thornburg v. Gingles*, 478 U.S. 30, 45 (1986) (citation omitted). Thus, courts have consistently found that legislative materials are relevant in Voting Rights Act enforcement actions. *See, e.g.*, *La Unión Del Pueblo Entero v. Abbott* (*LUPE*), No. 21-cv-844, 2022 WL 1667687, at *6 (W.D. Tex. May

25, 2022), appeal docketed sub nom. *LULAC v. Hughes*, No. 22-50435 (5th Cir. May 27, 2022); *S.C. State Conf. of NAACP v. McMaster*, 584 F.Supp.3d 152, 163 (D.S.C. 2022); *League of Women Voters*, 2018 WL 2335805, at *4, 6 (E.D. Mich. May 23, 2018); *Veasey v. Perry*, No. 2:13-cv-193, 2014 WL 1340077, at *2 (S.D. Tex. Apr. 3, 2014); *Perez v. Texas (Perez II)*, 891 F. Supp. 2d 808, 833 n. 94 (W.D. Tex. 2012) (three-judge court).  A three-judge court that addressed Voting Rights Act claims against Texas's 2011 redistricting plans relied on the same categories of TLC documents that TLC continues to withhold in this litigation, most notably draft redistricting plans and shape files that illustrated the development of districts alleged to be discriminatory.  *See, e.g.*, *Perez v. Abbott*, No. 5:11-cv-360, 2017 WL 1406379, at *4, *30-31, *49-57 (W.D. Tex. Apr. 20, 2017) (three-judge court).  Documents that the United States continues to seek from TLC are relevant.

### B.  TLC's Legislative Privilege Assertions are Improper.

TLC broadly asserts legislative privilege without establishing the requisite elements, in some instances over documents categorically outside the privilege.  For example, TLC asserts legislative privilege over 88 documents or communications without identifying the legislator on whose behalf it purports to claim a privilege.  But the privilege is personal to the legislator and cannot be asserted without identifying the legislator who requested the documents be withheld. *See, e.g.*, *Perez v. Perry*, No. 11-cv-360, 2014 WL 106927, at *1 (W.D. Tex. Jan. 8, 2014) (three-judge court) ("The legislative privilege is a personal one and may be waived or asserted by each individual legislator.").  Thus, this Court ordered TLC "to determine which items, if any, . . . *legislators* seek to withhold pursuant to legislative privilege." TLC Doc. Order 10 (emphasis added).  To the extent that TLC claims to possess independent authority to invoke the legislative privilege, it is mistaken.  *See, e.g.*, *TitleMax of Tex., Inc. v. City of Dallas*, No. 3:21-cv-1040,

4

2022 WL 326566, at *6 (N.D. Tex. Feb. 3, 2022) ("[A] legislator must properly assert the privilege."). Documents withheld based on an unknown legislator's legislative privilege should be produced. *See* Challenged Document Index (Index) at 1-17 (Ex. 2).

As discussed in the United States' motion to unseal portions of Jeffrey Archer's deposition in which legislative privilege was claimed, ECF Nos. 600 and 616, documents containing factually based information also lie outside the scope of legislative privilege, including documents "used in the decision-making process or disseminated to legislators or committees." *LUPE*, 2022 WL 1667687, at *2; *see also, e.g.*, *League of Women Voters*, 2018 WL 2335805, at *7 (ordering the production of "strictly factual materials and information available to lawmakers at the time the legislation was enacted"). There are 400 of these factual documents for which TLC claims privilege. For example, in document PRIV 89, TLC asserts legislative privilege over a draft of the Statewide Congressional map C2101: "Legislative draft prepared by Author at the direction of Recipient, constituting legal advice and legislative services: PlanC2101 Sen. Huffman Statewide Congressional Proposal 87(3)." These maps and materials include information available to lawmakers at the time a decision was made as well as alternative maps considered during a redistricting process, *see LULAC v. Abbott*, No. 21-cv-259, 2022 WL 2921793, at *3 (W.D. Tex. July 25, 2022), and thus should be produced, *see* Index at 18-73.

Similarly, logistical documents not sufficiently tied to legislative substance, including communications requesting and coordinating assistance in the legislative process, are not covered by legislative privilege. *See, e.g.*, *Pic Grp. v. LandCoast Insulation, Inc.*, No. 1:09-cv-662, 2010 WL 1741703, at *2 (S.D. Miss. Apr. 28, 2010). These factual documents should be produced. *See* Index at 74-75.

TLC has also claimed legislative privilege over documents that post-date passage of the challenged plans, which fall outside the scope of the privilege. "Documents and communications created after the date of enactment are outside the scope of the legislative privilege…" *League of Women Voters v. Johnson*, No. 17-14148, 2018 WL 2335805, at *6 (E.D. Mich. May 23, 2018) (citation omitted); *see also LULAC v. Abbott*, 2022 WL 2921793, at *3. These documents should also be produced. *See* Index at 76.

Finally, because the legislative privilege is at best qualified, it must yield in some instances to the United States' interest in enforcing the constitutional prohibition on intentional race discrimination in voting. Courts typically consider five factors to determine whether the privilege must yield:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*LUPE*, 2022 WL 1667687, at *2 (citations omitted).

The five factors favor disclosure here. First, as discussed in Section III.A, *supra*, the documents sought are highly relevant to the United States' intentional discrimination claims. Second, the documents are a unique source of evidence offering insight into the legislative decision-making process, especially important because officials "seldom, if ever, announce on the record . . . their desire to discriminate against a racial minority." *Smith v. Town of Clarkson*, 682 F.2d 1055, 1064 (4th Cir. 1982); *see also LUPE*, 2022 WL 1667687, at *6. Third, the issues involved in this litigation center on the guarantees of the Fourteenth and Fifteenth Amendments, providing the right to vote free of racial discrimination. Fourth, the role of the government here is clear in that the United States brought this enforcement action under the Voting Rights Act.

Fifth, disclosure of legislative documents in past Voting Rights Act litigation demonstrates that the disclosure has not led Texas officials to become timid. *See., e.g.*, *Veasey*, 2014 WL 134007, at *2. This Court should order TLC to produce the documents related to the 2021 Congressional redistricting plan identified in TLC's privilege log as well as any other documents concerning that plan. *See* Index at 77-87.

### C. TLC Has Not Met its Burden to Establish Attorney-Client Privilege.

TLC has failed to establish that the attorney-client privilege applies to the documents it has withheld. TLC has invoked attorney-client privilege over documents and communications without identifying the purported client, akin to its freestanding legislative privilege claims. The identity of a client does not typically fall within the scope of attorney-client privilege. *In re Grand Jury Proc.*, 517 F.2d 666, 670–71 (5th Cir. 1975). Although the client's identity may be withheld in rare instances when a disclosure would necessarily reveal privileged information, *see In re Grand Jury Subpoena*, 926 F.2d 1423, 1431 (5th Cir. 1991), TLC has not even claimed that revealing client identities would reveal other privileged information. By failing to identify its client, TLC has failed to meet its burden to establish attorney-client privilege over those documents at issue. *See* Index at 88.

TLC also improperly withholds factual and logistical information in 316 documents under the aegis of attorney-client privilege. But the attorney-client privilege does not protect against the disclosure of underlying facts. *See Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981); *Ohio A. Philip Randolph Inst. v. Smith*, No. 1:18-cv-357, 2018 WL 6591622, at *3 (S.D. Ohio Dec. 15, 2018) (three-judge court) (requiring disclosure of "facts, data, and maps"). Redistricting maps and corresponding textual descriptions of maps (*i.e.*, the metes and bounds of districts) are factual in nature and therefore do not properly fall within the scope of the privilege,

and the involvement of a TLC attorney in preparing a map or its corresponding textual description does not convert fundamentally factual information into legal advice.  As discussed in the section above on legislative privilege, TLC also asserts attorney-client privilege over a draft of the Statewide Congressional map C2101: "Legislative draft prepared by Author at the direction of Recipient, constituting legal advice and legislative services: PlanC2101 Sen. Huffman Statewide Congressional Proposal 87(3)."  This draft does not constitute legal advice but rather the end product of a legislative service and the fact that such drafts may contain "contributions" or "input" from a TLC attorney does not entitle them to protection.  *See* Index at 89-128.

Similarly, draft legislation related to redistricting is not categorically privileged, as the draft bill itself does not constitute legal advice; rather, it is the end product of the legislative service provided by TLC.  *See, e.g., Tonti Mgmt. Co., Inc. v. Soggy Doggie, LLC,* 19-13134, 2020 WL 9172077, at *5 (E.D. La. June 25, 2020); *cf. South Carolina v. United States*, No. 12-203, 2012 U.S. Dist. LEXIS 188558, *10 (D.D.C. Aug. 10, 2012) (finding that a request to a legislative attorney to draft an amendment to legislation would not be covered by attorney-client privilege).  Indeed, TLC's description does not even reference input or advice from a TLC attorney, instead it describes these documents as having been drafted by the TLC attorney at the legislator's direction.  *See* Index at 129-31.

TLC also withheld communications simply described as "soliciting legal advice," a "conclusory" label "insufficient to carry out the proponent's burden of establishing attorney-client privilege."  *BDO USA*, 876 F.3d at 696.  TLC should be required to produce these documents *in-camera* for inspection.  *See* Index at 132.

Finally, TLC has not carried its burden to establish that six documents over which it asserts attorney-client privilege in fact contain confidential communications exchanged for the primary purpose of securing either a legal opinion or legal services.  These privilege log entries reference both legal advice and "coordinating the legislative process for redistricting," suggesting the documents at most contain a mixture of privileged and non-privileged materials.  *See Pic Grp.*, 2010 WL 1741703, at *2 (deeming logistical information to be factual in nature).  TLC should be required to produce these documents *in-camera* for inspection.  *See* Index at 133.

## IV.     Conclusion

For the foregoing reasons, the United States respectfully requests that this Court order TLC to produce documents improperly withheld under claims of legislative privilege and attorney-client privilege.  With respect to the nine documents concerning soliciting legal advice referenced above, the United States requests that TLC produce these documents *in-camera* for inspection.  A proposed order is attached.

Date:  November 17, 2022

ELISE C. BODDIE
Principal Deputy Assistant Attorney General
Civil Rights Division

*/s/    Jasmin Lott*
T. CHRISTIAN HERREN, JR.
TIMOTHY F. MELLETT
DANIEL J. FREEMAN
JANIE ALISON (JAYE) SITTON
MICHELLE RUPP
JACKI L. ANDERSON
JASMIN LOTT
HOLLY F.B. BERLIN
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530

## CERTIFICATE OF CONFERRAL

I hereby certify that between October 13 and November 2, the United States met and conferred with counsel for TLC several times about the subject this motion.  TLC opposes the relief sought.

/s/   Jasmin Lott
Jasmin Lott
Voting Section
Civil Rights Division
U.S. Department of Justice
Jasmin.lott@usdoj.gov

## CERTIFICATE OF SERVICE

  I hereby certify that on November 17, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to counsel of record.

                */s/ Jasmin Lott*
                Jasmin Lott
                Voting Section
                Civil Rights Division
                U.S. Department of Justice
                Jasmin.lott@usdoj.gov