IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS (LULAC), et al., <br><br>  Plaintiffs, <br><br> v. <br><br> GREG ABBOTT, et al., <br><br> Defendants. | Civil Action No. 3:21-cv-259 (DCG-JES-JVB) <br> (consolidated cases) |

**UNITED STATES' REPLY IN SUPPORT OF RENEWED MOTION TO COMPEL PRODUCTION OF BRYAN AND WIENCKOWSKI DOCUMENTS**

Respondents have refused to produce approximately a thousand responsive documents for over three months since this Court rejected their blanket objections. In response to the United States' renewed motion to compel, Respondents ignore the Court's prior rulings, resorting instead to a series of fallacious arguments. But Respondents have not established that the withheld or redacted documents are subject to the attorney-client privilege. Most of the documents the United States seeks are exclusively factual; this Court has already concluded that the privilege does not extend to such materials. And despite three privilege logs and a 20-page brief, Respondents have not shown that the remaining documents primarily contain legal advice. Respondents' repeated failures to satisfy their burden mandate the production of all responsive documents, free of redactions. This Court should grant the United States' motion in full.[1]

## I. The United States Seeks Relevant, Nonprivileged Documents.

As an initial matter, Respondents mischaracterize the United States' motion as seeking "every communication Butler Snow ever had with [Respondents]." Resps. Resp. at 2. Not so. Rather, the United States seeks only nonprivileged documents responsive to its subpoenas, which this Court has already concluded are relevant to this VRA action. *See* Bryan Order 4-6, ECF No. 530. The contours of this dispute are not as wide as Respondents contend.

Relatedly, Respondents erroneously aver that the United States aims to "end-run" the attorney-client privilege. Resps. Resp. 9, 20; *see also id.* at 1, 17. They chiefly assert that the United States' position is that the privilege "could never apply to any communication[s] with [consultants]" and that "[a]dopting the [United States'] position would require a finding that no attorney-client relationship existed between Butler Snow and their clients." *Id.* at 5, 17-18. But

---

[1] Respondents concede, as they must, that this Court has foreclosed their belated work-product claims. *See* Resps. Resp. 10 n.2, ECF No. 640. Respondents also waived these assertions of work-product protection. *See* U.S. Mot. 9-10, ECF No. 634.

1

nowhere in this litigation has the United States taken the position that work by consultants is categorically nonprivileged. Nor has the United States asserted that Butler Snow did not have an attorney-client relationship with Chair Hunter. Rather, this motion concerns the application of two foundational principles of the attorney-client privilege: it does not apply to factual materials or documents not primarily legal in nature. *See* Hunter Order 5, ECF No. 578.

## II. The Statistical Analyses and Draft Maps Are Not Privileged.

The 603 statistical analyses and draft maps at issue are not subject to the attorney-client privilege because they are purely factual. *See* U.S. Mot. 5. Respondents do not dispute that the privilege does not apply to facts, including those incorporated into attorney-client communications. *See* Resps. Resp. 8-10. Nor can they. *See* Hunter Order 7-10. Instead, Respondents attempt to recharacterize these factual documents as legal in nature by claiming that the documents "underl[aid]" or "formed a basis for" legal advice later rendered. Resps. Resp. 8-9; *see* Cardin Decl. ¶ 6, ECF No. 640-1 (noting that Butler Snow's legal counsel was "predicated on" Respondents' work). But these documents contain no legal information within their four corners; at most, Butler Snow used these documents to later develop legal opinions. Indeed, Respondents emphasize that they are "non-lawyer experts." Resps. Resp. 9. Because the statistical analyses and draft maps are fundamentally factual, they must be produced. *See* U.S. Mot. 5; *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981) ("A fact is one thing and a communication concerning that fact is an entirely different thing.").[2]

---

[2] Respondents' attempts to distinguish *Ohio A. Philip Randolph Institute v. Smith*, No. 18-cv-357, 2018 WL 6591622 (S.D. Ohio Dec. 15, 2018) (three-judge court), and *Thurmond v. Compaq Computer Corp.*, 198 F.R.D. 475 (E.D. Tex. 2000), are unsuccessful. *Smith* did not turn on whether the disputed documents predated the existence of an attorney-client relationship; rather, *Smith* compelled disclosure for the independent reason that the documents "contain[ed] only facts, data, and maps," which are not privileged. 2018 WL 6591622, at *3-4; *see also* Docs.

### III.     Invoicing Information Is Not Privileged.

Respondents have improperly redacted all descriptions of services performed, hourly rates, and amounts billed on produced invoices and emails.  *See* U.S. Mot. 5.  The United States has explained why this information is relevant and nonprivileged.  *See id.* at 5-6.  Yet again, Respondents have failed to substantiate their privilege claims over this information.

With respect to descriptions of services, the relevant inquiry is whether Respondents' narratives disclose confidential and primarily legal attorney-client communications.  *See EEOC v. BDO USA, LLP*, 876 F.3d 690, 695 (5th Cir. 2017); *Cottier v. City of Martin,* No. 02-cv-5021, 2007 WL 4568989, at *3 (D.S.D. Dec. 19, 2007) ("Billing records and hourly statements which do not reveal client communications usually are not privileged.").  The mere fact that an invoice "describe[es] legal work" does not place it within the scope of the privilege, as Respondents claim.  Resps. Resp. 10-11.  As an initial matter, Respondents performed technical services, not legal work.  *See id.* at 9.  Moreover, "[t]he general purpose of the work performed [is] usually not protected from disclosure by the attorney-client privilege."  *IPS Grp., Inc. v. Duncan Sols., Inc.*, No. 15-cv-1526, 2018 WL 3956019, at *3 (S.D. Cal. Aug. 17, 2018) (citing *Clarke v. American Commerce Nat. Bank*, 974 F.2d 127 (9th Cir. 1992)).[3]  But here, Respondents have redacted nearly everything in their invoices, including all narratives.  *See* Resps. Docs. 40-70,

---

Order 14, ECF No. 467 (citing *Smith* for the proposition that the privilege "does not shield underlying facts"), *administratively stayed*, No. 22-50662 (5th Cir. July 27, 2022).  And although *Thurmond* addressed the specific principle that facts learned through communications with counsel are not privileged, it also embraced the broader proposition of "hornbook law" that the attorney-client privilege does not protect "facts."  198 F.R.D. at 479, 483.

[3] Respondents' cases do not conclude otherwise.  In *United States v. Trenk*, No. 06-cv-1004, 2009 WL 485375 (D.N.J. Feb. 26, 2009), the court concluded only after *in-camera* review that specific time entry narratives were privileged.  *See id.* at *1, *6.  And *Gunter v. Bemis Co.*, No. 16-cv-37, 2017 WL 6521178 (E.D. Tenn. Sept. 21, 2017), turned on the burden of discovery outweighing any potential benefit; any discussion of privilege was dicta.  *See id.* at *1.

ECF No. 634-4.  This Court should be "highly skeptical" of Respondents' position "that the descriptive narratives of *every single* time entry . . . constituted an attorney-client privileged communication."  *IPS Grp.*, 2018 WL 3956019, at *3 (emphasis added).  At core, Respondents have not demonstrated that the information beneath these redactions would reveal confidential, primarily legal client communications.  Absent that showing, the redactions must be removed.[4]

As to hourly rates and amounts billed, Respondents ignore this Court's prior order and attempt to flip the burden to establish privilege.  First, they claim that the United States has not demonstrated relevance.  *See* Resps. Resp. 11.  Not so.  *See* Bryan Order 4-6 (rejecting relevance objections); U.S. Mot. 5 n.1 (explaining that this information shows the quantity and value of the analyses performed).  Second, the burden is on Respondents to demonstrate that the redacted invoicing information is privileged.  Yet Respondents do not even attempt to carry that burden, limiting their argument to refutations of a subset of cases the United States cites.  *See* Resps. Resp. 10-12.[5]  As a result, redactions of hourly rates and amounts billed must also be removed.

## IV.     The Remaining Emails Are Not Privileged.

### A.     The Second Revised Privilege Log Is Deficient.

Respondents have not satisfied their burden as to the remaining emails because their second revised privilege log is replete with boilerplate, vague, and conclusory language.  *See* U.S. Mot. 6-8.  Nothing in their response cures that basic and fatal flaw.

As a threshold matter, Respondents attempt to lower the bar for an adequate privilege log

---

[4] The Court may alternatively consider ordering Respondents to produce for *in-camera* inspection all documents with redactions over invoicing information.  *See* Docs. Order 27-29.

[5] Respondents leave unrebutted *Tonti Properties v. Sherwin-Williams Co.*, No. 99-cv-892, 2000 WL 506015 (E.D. La. Apr. 27, 2000), which recognized that "rates" and "hours spent" are "not confidential communications."  *Id.* at *2.  On the other hand, Respondents' reliance on *Judicial Watch, Inc. v. U.S. Department of Justice*, 118 F. Supp. 3d 266 (D.D.C. 2015), is inapt.  *Judicial Watch* concerned the work-product doctrine, not the attorney-client privilege.  *See id.* at 271-76.

4

produced by the recipient of a Rule 45 subpoena. *See* Resps. Resp. 13-14. But "what is required to . . . properly respond to discovery requests appl[ies] equally to nonparties subject to a Rule 45 subpoena" as to parties subject to Rule 34 document requests. *MetroPCS v. Thomas*, 327 F.R.D. 600, 607 (N.D. Tex. 2018). Even Respondents recognize that the sole case they cite merely "assum[ed]" for the sake of argument that a lesser logging requirement may apply. Resps. Resp. 14 (citing *Total Rx Care, LLC v. Great N. Ins. Co.*, 318 F.R.D. 587 (N.D. Tex. 2017)).

Even on Respondents' second revised privilege log, "description[s] of each document and its contents" do not "provide sufficient information to permit [the United States] to 'test the merits of' the privilege claim[s]." *BDO USA*, 876 F.3d at 697.[6] Respondents do not meaningfully explain why hundreds of repetitive descriptions in the operative log are not vague and conclusory boilerplate. Resps. Resp. at 14-15.[7] Rather, they assert that in each and every case, "[p]roviding any further detail would disclose the privileged information itself." Resps. Resp. 15. Yet other parties to this litigation have provided substantial additional information without invading any purported privilege, *see, e.g.*, OAG Rev. Log, ECF No. 527-4 (describing plans and districts at issue), and Respondents could have disentangled legal and partisan analysis by sharing the types of data, maps, or factual issues they explored.

After months of litigation, Respondents have not satisfied their discovery obligations. At this point, privilege claims have been waived and these emails should be produced. *See* Bryan

---

[6] Respondents suggest that basic elements such as identification numbers, subject lines, sender and recipient information, and dates render their log sufficient. *See* Resps. Resp. 13. Although such information is necessary, it is not sufficient to establish that privileges apply.

[7] Notably, Respondents repeat the same description they provide as an example in their response 336 times in their second revised privilege log: "Confidential email communication between Butler Snow attorney(s) and consultant(s) on behalf of client regarding working concepts of districts to enable attorneys to provide clients advice regarding legal compliance." *Id.* at 12; 2d Rev. Priv. Log 1-30, ECF No. 634-2.

5

Order 2-3, 12; *see also, e.g.*, *SEC v. Commonwealth Advisors, Inc.*, No. 12-cv-700, 2016 WL 1364141, at *1 (M.D. La. Apr. 6, 2016).

### B. The Remaining Emails Are Not Primarily Legal.

Respondents have also not carried their burden of demonstrating that the remaining emails were made for the primary purpose of securing a legal opinion. *See* U.S. Mot. 6. In each instance, Respondents had to establish that a withheld document was *primarily* legal in nature, *see BDO USA*, 876 F.3d at 695; Hunter Order 4, and not merely "for purposes of the provision of legal advice," Resps. Resp. 15. In other words, an email that primarily provides "advice on political, strategic, or policy issues," while also noting underlying legal issues, is not privileged in its entirety. Hunter Order 5. The uncontested fact that Butler Snow had an attorney-client relationship with Chair Hunter, *see* Resps. Resp. 15-19, does not mean that every single line of 371 withheld emails between Respondents, Butler Snow employees, and other consultants conveyed primarily legal information, particularly in light of evidence that Respondents engaged in partisan analysis, *see* U.S. Mot. 8-9. By misstating the legal standard, Respondents have failed to carry their burden. These emails must be produced.[8]

### V. Any Unlogged, Unproduced Documents Must be Produced.

Respondents do not address the United States' argument that they have waived discovery protections over any remaining unlogged and unproduced responsive documents. *See* U.S. Mot. 10. Accordingly, these documents must be produced in full. *See, e.g.*, *Slaughter v. Torres*, 592 F. Supp. 3d 515 (M.D. La. 2022). Even so, it is worth noting that Respondents now rely on a complete version of an engagement letter between Butler Snow and Mr. Bryan, *see* Cardin Decl.

---

[8] In the alternative, this Court could order Respondents to produce these emails for *in-camera* review and identification of materials to be withheld or redacted. *See* Docs. Order 27-29.

15-17, despite having previously provided only the signature page in their productions, *see* Eng. Ltr. Sig. Page (Ex. 1). That relevant documents become available at this late hour reinforces that this Court should order Respondents to produce all responsive documents they have neither produced nor logged to date.

*   *   *

For these reasons, the Court should grant the United States' motion.

Dated: November 23, 2022

ELISE C. BODDIE
Principal Deputy Assistant Attorney General
Civil Rights Division

*/s/ Jaywin Singh Malhi*
T. CHRISTIAN HERREN, JR.
TIMOTHY F. MELLETT
DANIEL J. FREEMAN
JANIE ALLISON (JAYE) SITTON
MICHELLE RUPP
JACKI L. ANDERSON
JASMIN LOTT
HOLLY F.B. BERLIN
JAYWIN SINGH MALHI
L. BRADY BENDER
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530
(800) 253-3931
jaywin.malhi@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that, on November 23, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to counsel of record.

/s/ *Jaywin Singh Malhi*
Jaywin Singh Malhi
Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave, NW
Washington, DC 20530
(800) 253-3931
jaywin.malhi@usdoj.gov