UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS (LULAC), et al.,<br><br>                Plaintiffs,<br><br>        v.<br><br>GREG ABBOTT, et al.,<br><br>                Defendants. | Civil Action No. 3:21-cv-259 (DCG-JES-JVB) (consolidated cases) |

## NON-PARTY TEXAS LEGISLATIVE COUNCIL'S RESPONSE IN OPPOSITION TO THE UNITED STATES' MOTION TO COMPEL TEXAS LEGISLATIVE COUNCIL DOCUMENTS

It should not have to bear repeating that the Texas Legislative Council is a non-partisan legislative agency that provides services and legal advice to the whole of the Texas Legislature, including legislators on both sides of the aisle (and in fact both sides of the "v" in this lawsuit). But yet again, the United States tries to pierce the privileges held by both the Texas Legislative Council and its staff, and indeed the entirety of the Texas Legislature, without consideration as to how such a ruling would render all legislators (including some plaintiffs and those legislators and their staff who are not involved with this lawsuit) without privileges fundamental to the legislative process and the provision of legal services.

This time the United States seeks to compel the disclosure of documents listed on the Texas Legislative Council's privilege log, served September 16, 2022. For the following reasons, the United States' motion to compel should be denied.

A.    **The Legislative Privilege Plainly Bars the Disclosure of These Documents, which were Created by the Texas Legislative Council at the Direction of Legislators and their Staff.**

The United States' motion appears to rely on a number of misconceptions about the role and function of the Texas Legislative Council and the protections it and its staff are afforded.

**First, the Texas Legislative Council has a signed directive for every member of the Texas Legislature requiring it to not disclose these documents.**

The Texas Legislative Council is a nonpartisan agency that supports the Texas Legislature, including by providing bill drafting and redistricting services to every Texas state legislator and the lieutenant governor. Regarding redistricting, the Texas Legislative Council assists legislators and staff in drafting and analyzing proposed legislation, including maps, and provides computer support, among other services. Tex. Gov't Code § 323.001. Each Texas state legislator and the lieutenant governor have signed a directive clarifying that the Texas Legislative Council acts as an extension of each legislative office when performing services for the office. The directive further defines the legislative privilege and attorney-client relationship between the legislative office and the Texas Legislative Council and directs the Texas Legislative Council to assert all applicable privileges.

All legislators, including on both sides of the "v" in this case, have signed a directive requiring the Texas Legislative Council invoke legislative privileges on their behalf. Two examples of directives are attached to the Affidavit of Jeff Archer, filed herewith: one from Representative Trey Martinez Fischer, a party to this case, and

one from Speaker Dade Phelan. *See* Affidavit at ¶ 4 and Exhibits A and B. The directives instruct the Texas Legislative Council to "assert all applicable privileges . . . on behalf of [their] office when an individual or entity from outside [their] office requests information maintained by the council that relates to privileged . . . services provided by the council to [their] office, unless [they] provide [their] consent for disclosure of the information." *See id*. The Texas Legislative Council has followed the directives and has not received consent for any disclosure in this litigation. *Id.* at ¶ 5.

**<u>Second, because it acts as an extension of each legislator's office, the legislative services and documents produced by the Texas Legislative Council are covered by legislative privilege.</u>**

As a legislative agency providing core legislative services to legislators, the legislative services and documents produced by the Texas Legislative Council are afforded legislative privilege protection. Sections 306.008 and 323.017 of the Texas Government Code specifically establish the legislative privilege as it applies to documents and services produced by the Texas Legislative Council for its clients in the legislature and similarly codify the attorney-client privilege as it applies to the Texas Legislative Council attorneys and staff. Tex. Gov. Code §§ 306.008, §323.017.

Pursuant to Section 323.017 of the Texas Government Code, all communications relating to a legislative request for "information, advice, or opinions" from a Texas Legislative Council employee are confidential and subject to legislative privilege. *Id.* at § 323.017. Pursuant to Section 323.018 of the Texas Government Code, all records relating to requests to TLC regarding the "drafting of proposed

legislation or for assistance, information, advice, or opinion" are protected by legislative privilege and not public information. Tex. Gov. Code § 323.018.

Given the Texas Legislative Council's statutory role in providing services to legislators in connection with performing their duties as legislators, much of the information and communications created or provided by the Texas Legislative Council staff relate directly to legislative activities and are subject to privilege.

**The documents are legislatively privileged whether or not a legislator or legislative employee is identified as a service recipient.**

Specifically with regard to redistricting, the Texas Legislative Council only drafts legislative language or produces maps at the specific direction of legislators and their staff. Affidavit at ¶ 2. Accordingly, no document would be created but for a communication from a legislator or their staff requesting that it be created by the Texas Legislative Council.

The United States alleges that those documents that the Texas Legislative Council asserts legislative privilege over that do not identify the requestor cannot be withheld as legislatively privileged without identifying the *specific* legislator that requested it. Dkt. 644 ("Mot.") at 4. While the Texas Legislative Council endeavors to document the legislator or legislative employee who requests Council services, the time constraints and workload demands associated with the exigencies of the legislative process occasionally prevent this documentation, thereby making it unavailable for a privilege log. Affidavit at ¶ 6. Regardless, because of Texas Legislative Council policy and practice, those documents necessarily were created at the request of a legislator or its staff. *Id.* at ¶ 2. The document would not exist

otherwise. Accordingly, the United States' demand that the Texas Legislative Council identify each legislator on the privilege log[1] (and obtain permission to withhold the document from each legislator) is simply not feasible for the types of services TLC provides. And as already explained, it is unnecessary given the directives, combined with the absence of any waiver, require the Texas Legislative Council to assert the applicable privileges. Affidavit at ¶¶ 3-5.

**The documents contain analysis and advice provided by the Texas Legislative Council regarding bill drafting and redistricting services.**

The United States claims certain of the withheld documents contain merely factual information, logical information not sufficiently tied to legislative substance, and documents created after the enactment of the challenged redistricting plans. Mot. at 5-6. While the United States might believe that what the Texas Legislative Council provides is merely a "legislative service" (Mot. at 8), it fails to recognize that Texas considers the legislative drafting services provided by the Texas Legislative Council as providing important legal and legislative advice and analysis such that it codified its own legislative and attorney-client privileges. Tex. Gov. Code §§ 306.008; 323.017.

The documents created by the Texas Legislative Council, and requested by the United States to be disclosed, are reviewed by council staff for compliance with the

---

[1] Similarly, the fact that the Texas Legislative Council cannot identify the specific legislator or its staff that requested a document be created begs the question of whether the documents are related to the claims at issue in this case. The documents could have been requested by legislators whose interests are aligned with the United States, legislators aligned in interest with the State but from whom the United States has expressed no interest in obtaining discovery, and, more concerning, parties to the case, including Senator Powell, Representative Martinez-Fischer, and the members of the Mexican-American Legislative Caucus.

Texas Constitution and the United States Constitution. Affidavit at ¶ 7. Thus, drafting the legislation necessarily includes certain legal analyses and decisions based on the requirements of the respective constitutions. *Id.* Every single draft of a map drawn by the Texas Legislative Council has to go through this analysis. *Id.* The Texas Legislative Council creates it based on the request from the legislator but ultimately that legislator decides whether they intend to file it or not—the reason they do is up to them to make. Affidavit at ¶ 2. The drafts themselves are therefore privileged recommendations made by Council staff that can be accepted or rejected by the legislator receiving the service. *Id.*

Similarly, the United States is incorrect that logistical documents are not tied to legislative substance and therefore should not be withheld. Mot. at 5 (Index at 74-75). The United States too narrowly applies the legislative privilege in these instances. The privilege applies to the legislature's procedure and discussions of legislative processes, not just the policy underlying the bill. If a legislator seeks input and advice from the Texas Legislative Council in anticipation or consideration of legislation, this communication relates to a core legislative duty and is privileged. And as the United States' own briefing acknowledges, one way that the United States may identify a violation of the Voting Rights Act is by showing deviation from accepted processes. Mot. at 3 (citing *Vill. Of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977) and *Thornburg v. Gingles*, 478 U.S. 30, 45 (1986)). Thus, documents related to logistics (i.e., processes) must have mixed legislative and legal advice, including requests from the Legislature on how to comply with the Voting Rights Act.

The United States also improperly requests that the Texas Legislative Council be ordered to produce documents related to the 2021 Congressional redistricting plan, set forth on pages 77-87 of the United States' Document Index. Mot. at 5. However, these documents are legislative drafts prepared by attorneys at the Texas Legislative Council at the direction of a legislator or their staff and are withheld both under the attorney-client privilege and legislative privilege. Dkt. 644-2 (Privilege Log) at 29-96. They constitute legal advice and legislative services related to drafts of congressional proposals, plans, and amendments. *Id*. The documentation required to create the amendments (which themselves may be public) is what is being withheld; whereas the amendment and plan themselves are public and not withheld. Affidavit at ¶ 8. Because the amendments have to comply with the rules of the legislature, the statutes relating to the legislative process, and the Texas constitution, they constitute legislative and legal advice and are properly withheld as privileged. *See also Comm. for a Fair & Balanced Map*, 2011 WL 4837508, at *11 (applying the legislative privilege to "plans" and "reports … created, formulated or used by lawmakers"); *Puente Arizona v. Arpaio*, 314 F.R.D. 664, 670 (D. Ariz. 2016).

Additionally, the United States improperly requests that the Texas Legislative Council be ordered to produce documents that are dated after the passage of the challenged plans. Mot. at 6 (Index at 76).  RedAppl is a standalone redistricting application that creates and maintains metadata and other documentary information that is not intended to be exported into another format. It was therefore necessary to create documents in response to the United States' non-party subpoena. Affidavit at ¶ 9. These documents were therefore created *after* the passage of the challenged plans

but contain information from *before* the passage of the challenged plans. *Id*. This is clear from the descriptions which state the documents are an "excel spreadsheet providing tabular RedAppl information about the [] shapefiles above, including a description, related comments, and provenance of each shapefile." Dkt. 644-2 at 6, 11-13, 29. Those "shapefiles above" are shapefiles created before the passage of the challenges plans and, accordingly the collection of that data suggests that spreadsheets were created for the lawsuit with data and information that was created during the relevant time periods before the passage of the plans.

The documents the United States seeks to compel are inextricably and necessarily interwoven in the legislative discussion and analysis. Accordingly, these documents are properly withheld.

## The legislative privilege should not be pierced only because the United States claims that it is a matter of public importance.

The United States claims, "because the legislative privilege is at best qualified, it must yield in some instances to the United States' interest in enforcing the constitutional prohibition on intentional race discrimination." Mot. at 6. Again, merely raising a claim related to an important public interest or the decision-making of a state legislature is insufficient to defeat legislative privilege. Courts have developed a variety of balancing factors to determine whether legislative privilege should be recognized in a particular case. Generally, these factors consider (1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the seriousness of the litigation and the issues involved; (4) the role of the government in the litigation; and (5) the possibility of future timidity by government

employees who will be forced to recognize that their secrets are violable. *See Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 100-101 (S.D.N.Y 2003).

The United States has not attempted to consider the *Pataki* factors in asking the court to unseal or pierce the legislative privilege over these documents. It is clearly burdensome on the Texas Legislative Council operations as a nonpartisan agency and not participating in the policy development of the relevant bill to have its legislative privilege pierced. The Texas Legislative Council staff are instructed not to propose or advance policy positions, to include suggesting how redistricting lines might be drawn to accomplish a policy outcome. Dkt. 455 at ¶ 8. And the fact is, the Texas Legislative Council staff communicated less with their clients in the legislature this redistricting cycle based largely on the expectation—based on previous redistricting cycles—that the legislative privilege would be pierced. Affidavit at ¶ 10. It is clear that the piercing of the Texas Legislative Council's privilege has already directly and adversely impacted the ability of the Texas Legislative Council to provide candid legal and legislative advice to its clients within the legislature. *Id.* The general assumption that the legislative privilege is likely to be set aside in litigation has created an environment in which legislators are extremely reluctant to seek advice from their own nonpartisan professional staff.

**B.    The Attorney-Client Privilege Plainly Bars the Disclosure of Documents and Communications between Attorneys at TLC and Legislators and their Staff Providing or Seeking Legal Advice.**

The Texas Legislative Council provides legal services to legislators, and that information is protected by the attorney-client privilege and attorney-work product doctrine. Tex. Gov. Code § 306.008 and §323.017. The Texas Legislative Council has

9

properly invoked the attorney-client privilege in instances where a legislator or its staffer made a confidential communication to a lawyer at the Texas Legislative Council for the primary purpose of securing a legal advice or legal services. *See EEOC v. BDO USA*, 876 F.3d 690, 695 (5th Cir. 2017) (citation omitted).

The United States wrongly seeks the disclosure of documents that contain legal advice and conclusions of the Texas Legislative Council attorneys to legislators and their staff. Certain documents were created at the direction of a state legislative office, the disclosure of which would divulge the legislative strategy of at least one Texas legislator as well as confidential legal advice. The information was exchanged privately between a legislative office and an attorney for the Texas Legislative Council. *See, e.g.,* Dkt. 644-2 at 11. For the same reasons as stated above, the identity of the legislator or staffer is not available, but the document would not have been created but for a request for legal advice from a legislator or its staff to the Texas Legislative Council. Affidavit at ¶ 2.

The United States again argues that redistricting maps and corresponding textual descriptions of the maps are merely "factual in nature" and thus the involvement of an attorney in preparing a map or its corresponding textual description cannot convert it into legal advice. Mot. at 7-8. For the same reasons as explained above, the United States is wrong. The drafts of the maps are recommendations from an attorney and require analysis as to whether they comply with the state and federal constitutions. Providing this "legislative service" is most certainly providing legal advice, despite the fact that it is inextricably intertwined with factual elements.

As for the United States' request to produce certain documents *in-camera* for inspection, this is the first time the Texas Legislative Council has been put on notice that the United States' believes the descriptions to be insufficient. To the extent that the United States seeks additional detail in the descriptions so that it can further evaluate whether the assertions of privilege are proper, the Texas Legislative Council is willing to provide amended descriptions without having to burden the court with *in-camera* review.

For the foregoing reasons, the Texas Legislative Council respectfully requests that the Court deny the United States' motion to compel.


Dated: November 30, 2022

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

CHRISTOPHER D. HILTON
Chief, General Litigation Division

*/s/ Alyssa Bixby-Lawson*
ALYSSA BIXBY-LAWSON
Attorney-in-Charge
Texas Bar No. 24122680
Assistant Attorney General

11

General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(210) 270-1118 | FAX: (512) 320-0667
Alyssa.Bixby-Lawson@oag.texas.gov

*Counsel for Texas Legislative Council*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 30, 2022, the foregoing *Non-Party Texas Legislative Council Response in Opposition to the United States' Motion to Compel Texas Legislative Council Documents* was electronically filed with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Alyssa Bixby-Lawson*
Assistant Attorney General