## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, | § § § | |
| *Plaintiffs*, | § § | |
| EDDIE BERNICE JOHNSON, SHEILA JACKSON-LEE, ALEXANDER GREEN, AND JASMINE CROCKETT, | § § § § | Case No. 3:21-cv-00259 [Lead Case] |
| *Plaintiff-Intervenors*, | § § § | |
| v. | § § | |
| GREG ABBOTT, *et al.*, | § § | |
| *State Defendants*. | § | |
| | | |
| MEXICAN AMERICAN LEGISLATIVE CAUCUS, TEXAS HOUSE OF REPRESENTATIVES; SERGIO MORA; AND BOBBIE GARZA-HERNANDEZ, | § § § § | |
| *Plaintiffs*, | § § | Case No. 3:21-cv-00988 [Consolidated Case] |
| v. | § § | |
| STATE OF TEXAS, *et al.*, | § § | |
| *State Defendants*. | § | |

## STATE DEFENDANTS' ANSWER TO THE MALC PLAINTIFFS' SECOND AMENDED COMPLAINT

Greg Abbott, in his official capacity as Governor of Texas, John Scott, in his official capacity as Texas Secretary of State, and the State of Texas (collectively "State Defendants") file this Answer to the Second Amended Complaint, *LULAC v. Abbott*, No. 3:21-cv-259, ECF 319 (W.D. Tex. Jun. 6, 2022), filed by MALC, Sergio Mora, and Bobbie Garza-Hernandez (the "Plaintiffs").

## ANSWER

Pursuant to Federal Rule of Civil Procedure 8(b), State Defendants deny each and every allegation in Plaintiffs' Second Amended Complaint except for those expressly admitted here. State Defendants deny any allegation against them contained in the unnumbered introductory paragraphs in pages 1 through 4 of Plaintiffs' Second Amended Complaint. The headings, subheadings, and paragraphs below directly correlate to those contained in Plaintiffs' Second Amended Complaint. However, State Defendants have chosen not to include Plaintiffs' erroneous descriptions within their own titles, headings, and subheadings and deny any allegations contained in those descriptions. Any titles, headings, or subheadings that remain in this original answer are reproduced for organizational purposes only, and State Defendants do not admit any matter contained in reproduced titles.

## PARTIES

1. State Defendants lack sufficient knowledge or information to form a belief about the truth of these allegations, and therefore deny them.

2. State Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in the first and second sentences of this paragraph, and therefore deny them. State Defendants deny the allegations in the third sentence of this paragraph.

3. State Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in the first sentence of this paragraph, and therefore deny them. State Defendants deny the remaining allegations in this paragraph.

4. Denied.

5. State Defendants deny each and every allegation in the subparts below except those specifically admitted.

a. State Defendants admit that Abel Herrero is the incumbent State Representative for Texas House District 34. State Defendants lack sufficient knowledge or information to form a belief about the remaining allegations in paragraph 5(a), and therefore deny them.

b. State Defendants admit that Alex Dominguez is the incumbent State Representative for Texas House District 37. State Defendants lack sufficient knowledge or information to form a belief about the remaining allegations in paragraph 5(b), and therefore deny them.

c. State Defendants admit that Erin Gamez is the incumbent State Representative for Texas House District 38, and that she replaced Eddie Lucio as the State Representative for Texas House District 38. State Defendants lack sufficient knowledge or information to form a belief about the remaining allegations in paragraph 5(c), and therefore deny them.

d. State Defendants admit that Oscar Longoria is the incumbent State Representative for Texas House District 35. State Defendants lack sufficient knowledge or information to form a belief about the remaining allegations in paragraph 5(d), and therefore deny them.

e. State Defendants admit that Terry Canales is the incumbent State Representative for Texas House District 40. State Defendants lack sufficient knowledge or information to form a belief about the remaining allegations in paragraph 5(e), and therefore deny them.

f. State Defendants admit that Eddie Morales is the incumbent State Representative for Texas House District 74. State Defendants lack sufficient knowledge or information to form a belief about the remaining allegations in paragraph 5(f), and therefore deny them.

g. State Defendants admit that Mary González is the incumbent State Representative for Texas House District 75. State Defendants lack sufficient knowledge or information to form a belief about the remaining allegations in paragraph 5(g), and therefore deny them.

h.   State Defendants admit that Claudia Ordaz-Perez is the incumbent State Representative for Texas House District 76. State Defendants lack sufficient knowledge or information to form a belief about the remaining allegations in paragraph 5(h), and therefore deny them.

i.   State Defendants admit that Lina Ortega is the incumbent State Representative for Texas House District 77. State Defendants lack sufficient knowledge or information to form a belief about the remaining allegations in paragraph 5(i), and therefore deny them.

j.   State Defendants admit that Joe Moody is the incumbent State Representative for Texas House District 78. State Defendants lack sufficient knowledge or information to form a belief about the remaining allegations in paragraph 5(j), and therefore deny them.

k.   State Defendants admit that Art Fierro is the incumbent State Representative for Texas House District 79. State Defendants lack sufficient knowledge or information to form a belief about the remaining allegations in paragraph 5(k), and therefore deny them.

l.   State Defendants admit that Ramon Romero is the incumbent State Representative for Texas House District 90. State Defendants lack sufficient knowledge or information to form a belief about the remaining allegations in paragraph 5(l), and therefore deny them.

m.   State Defendants admit that Rafael Anchía is the incumbent State Representative for Texas House District 103. State Defendants lack sufficient knowledge or information to form a belief about the remaining allegations in paragraph 5(m), and therefore deny them.

n.   State Defendants admit that Terry Meza is the incumbent State Representative for Texas House District 105. State Defendants lack sufficient knowledge or information to form a belief about the remaining allegations in paragraph 5(n), and therefore deny them.

o.  State Defendants admit that Armando Walle is the incumbent State Representative for Texas House District 140. State Defendants lack sufficient knowledge or information to form a belief about the remaining allegations in the first sentence of paragraph 5(o), and therefore deny them. State Defendants lack sufficient knowledge or information to form a belief about the allegations in the second, third, and fourth sentences of paragraph 5(o), and therefore deny them. State Defendants deny the remaining allegations in this paragraph.

p.  State Defendants admit that Christina Morales is the incumbent State Representative for Texas House District 145. State Defendants lack sufficient knowledge or information to form a belief about the remaining allegations in paragraph 5(p), and therefore deny them.

q.  State Defendants admit that Penny Morales Shaw is the incumbent State Representative for Texas House District 148. State Defendants lack sufficient knowledge or information to form a belief about the remaining allegations in paragraph 5(q), and therefore deny them

6. State Defendants lack sufficient knowledge or information to form a belief about the truth of these allegations, and therefore deny them.

7. State Defendants lack sufficient knowledge or information to form a belief about the truth of these allegations, and therefore deny them.

8. Denied.

9. State Defendants admit that Greg Abbott is the Governor of Texas. State Defendants admit that Article 4, Section 1 of the Texas Constitution states the following:

> The Executive Department of the State shall consist of a Governor, who shall be the Chief Executive Officer of the State, a Lieutenant Governor, Secretary of State, Comptroller of Public Accounts, Commissioner of the General Land Office, and Attorney General.

State Defendants admit that Section 3.003(a) of the Texas Election Code states the following:

> The governor shall order: (1) each general election for officers of the state government, members of the United States Congress, and electors for president and vice-president of the United States; (2) each election on a proposed constitutional amendment; and (3) each special election to fill a vacancy in the legislature or in congress.

State Defendants admit that Plaintiffs purport to sue Governor Abbott in his official capacity as Governor of Texas and that process may be served at the referenced address.

10. State Defendants admit that John Scott is the Secretary of State of Texas and that he was appointed to his position by Governor Abbott on October 21, 2021. State Defendants admit that Section 31.001(a) of the Texas Election Code states, "The secretary of state is the chief election officer of the state." State Defendants admit that Plaintiffs purport to sue Secretary Scott in his official capacity and that he may be served at the referenced address. State Defendants deny the remaining allegations in this paragraph.

## JURISDICTION AND VENUE

11. State Defendants admit that Plaintiffs purport to assert claims pursuant to the United States Constitution and federal statutes, but State Defendants deny that any violation of law occurred. State Defendants admit that Plaintiffs purport to assert claims under 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(5), and 1988 but deny that Plaintiffs' causes of action referenced in this paragraph are meritorious and deny that Plaintiffs are entitled to relief on any of their claims. State Defendants deny any remaining allegations in this paragraph.

12. State Defendants admit that venue is proper in the El Paso Division of the United States District Court for the Western District of Texas. State Defendants deny any remaining allegations in this paragraph.

13. State Defendants admit that Plaintiffs purport to seek declaratory and injunctive relief

pursuant to 28 U.S.C. §§ 2201 and 2202 and deny that Plaintiffs are entitled to relief on any of their claims. State Defendants deny any remaining allegations in this paragraph.

## FACTS

**A.**

14. State Defendants admit that the U.S. Census Bureau released the initial Public Law 94-171 data on August 12, 2021 (as distinguished from the full redistricting toolkit, which was released on September 16, 2021). State Defendants admit that according to the referenced U.S. Census data, the Texas population increased by about 15.9%, from 25,145,561 in 2010 to 29,145,505 in 2020. State Defendants deny the remaining allegations in this paragraph.

15. State Defendants admit that according to U.S. Census data, the Hispanic population in Texas grew from 9,460,921 in 2010 to 11,441,717 in 2020, which is an increase of about 20.9%. State Defendants admit that according to 2020 U.S. Census data, growth in the Hispanic population contributed to 49.5% of the increase in the Texas population from 2010 to 2020.

16. State Defendants admit that according to 2020 U.S. Census data, Hispanic Texans are 39.3% of the total population of Texas. State Defendants admit that the total population numbers released by the U.S. Census Bureau were used as the measure of the Texas population during the redistricting process. State Defendants deny the remaining allegations in this paragraph.

17. Denied.

18. Denied.

19. Denied.

20. State Defendants admit that according to 2020 U.S. Census data, Congressional District 23 had a census self-response rate of 57.2%, and the Texas state self-response rate was 62.8%. State

Defendants deny the remaining allegations in this paragraph.

21. Denied.

22. Denied.

23. Denied.

**B.**

24.  State Defendants admit that *Veasey v. Abbott*, 830 F.3d 216, 240 (5th Cir. 2016), contains the quoted sentence but deny Plaintiffs' allegations. Further, State Defendants deny that this supports a conclusion that any enacted district or map was enacted with discriminatory intent or has a discriminatory effect. State Defendants deny all remaining allegations in this paragraph.

25.  State Defendants admit that *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 440 (2006) contains the text quoted in the second sentence of this paragraph and deny that this supports a conclusion that any enacted district or map was enacted with discriminatory intent or has a discriminatory effect. State Defendants admit that the dissenting opinion referenced in the third sentence of this paragraph, *Shelby Cnty., Ala. v. Holder*, 570 U.S. 529, 574 (2013) (Ginsburg, J., dissenting) contains the text quoted in the third sentence of this paragraph and deny that it supports a conclusion that any enacted district or map was enacted with discriminatory intent or has a discriminatory effect. State Defendants deny Plaintiffs' characterizations of these opinions. State Defendants deny all remaining allegations in this paragraph.

26.  State Defendants admit that in a vacated ruling, *see Texas v. U.S.*, 887 F. Supp. 2d 133 (D.D.C. 2012), relying on a legal standard that is not applicable in this case, a federal court ruled on redistricting plans passed in 2011. State Defendants deny that the vacated ruling supports a conclusion that any enacted district or map was enacted with discriminatory intent or has a discriminatory effect. State Defendants deny all remaining allegations in this paragraph.

27.  State Defendants admit that the U.S. Supreme Court found that the Texas Legislature racially gerrymandered HD90 in favor of Latinos in response to pressure from MALC, *Abbott v. Perez*, 138 S. Ct. 2305, 2333-35 (2018), reasoning that the chair of the Texas House Redistricting Committee had been "too solicitous of changes with respect to HD90" when he "adopted changes to HD90 at the behest of *minority groups*, not out of a desire to discriminate," *id.* at 2329 n.24. State Defendants deny Plaintiffs' characterization of the opinion and deny that it supports a conclusion that any enacted district or map was enacted with discriminatory intent or has a discriminatory effect. State Defendants deny all remaining allegations in this paragraph.

28.  State Defendants admit that Senator Huffman introduced a bill relating to the composition of the court of appeals districts during the regular session of the 87th Texas Legislature. State Defendants deny the remaining allegations in this paragraph.

## C.

### 1.

29.  Admit.

30.  State Defendants admit that *Perez v. Abbott*, 253 F. Supp. 3d 864, 960 (W.D. Tex. 2017), contains the text quoted in the first sentence of this paragraph, and deny that this supports a conclusion that any enacted district or map was enacted with discriminatory intent or has a discriminatory effect. State Defendants deny Plaintiffs' characterization of this case. State Defendants deny all remaining allegations in this paragraph.

31.  Denied.

32.  Denied.

33.  Denied.

**2.**

34.  State Defendants admit that Senator Joan Huffman, the Chair of the Senate Special Committee on Redistricting, filed Senate Bill 6 on September 27, 2021, and the bill was referred to the Senate Special Committee on Redistricting on September 27, 2021.

35.  State Defendants admit that the Senate Special Committee for Redistricting scheduled a public hearing on Senate Bill 6 at 9:00 a.m. on Thursday, September 30, 2021. State Defendants deny all remaining allegations in this paragraph.

36.  State Defendants admit that sixty people were on the witness list for the Senate Special Committee on Redistricting hearing on September 30, 2021, to testify against or register against but not testify against Senate Bill 6, and one person was on the witness list to testify for Senate Bill 6. State Defendants deny the remaining allegations in this paragraph.

37.  Denied.

38.  Denied.

39.  State Defendants admit that the Senate Special Committee on Redistricting scheduled a public hearing to meet to consider Senate Bill 6 on October 4, 2021, at 9:00 a.m. State Defendants deny that a Texas House Committee hearing on House Bill 1 and the referenced Senate committee hearing were conducted at times that completely overlapped with one another. State Defendants deny any remaining allegations in this paragraph.

40.  Denied.

41.  State Defendants admit that Senator Zaffirini offered Committee Amendment 2 (Plan C2109). State Defendants admit that Senator Huffman opposed the amendment and the adoption of Committee Amendment 2 (Plan C2109) failed with votes of 5 ayes, 9 nays, and 1 absent. State Defendants deny all remaining allegations in this paragraph.

42. State Defendants admit that Senator Zaffirini offered Committee Amendment 3 (Plan C2110). State Defendants admit that Senator Huffman opposed the amendment and the adoption of Committee Amendment 3 (Plan C2110) failed with votes of 6 ayes and 9 nays.

43. Denied.

44. State Defendants admit that on October 8, 2021, the Texas Senate suspended the printing rule, Senate Rule 7.12(a). State Defendants deny all remaining allegations in this paragraph.

45. Denied.

46. State Defendants admit that according to the Senate Journal, the Committee Substitute for Senate Bill 6 on second reading was passed to engrossment as amended. State Defendants deny any remaining allegations in this paragraph.

47. State Defendants admit that on October 8, 2021, the Senate adjourned at 2:27 p.m. until 2:28 p.m. State Defendants admit that on October 8, 2021, Senate Bill 6 was reported engrossed, the House received Senate Bill 6 from the Senate, and the House referred Senate Bill 6 to the House Redistricting Committee. State Defendants deny any remaining allegations in this paragraph.

48. Denied.

49. Denied.

50. Denied.

51. Denied.

52. Denied.

53. State Defendants admit that according to the witness list for the House Redistricting Committee hearing on October 13, 2021, one person registered in favor of Senate Bill 6. State Defendants deny the remaining allegations in this paragraph.

54. Denied.

55. State Defendants admit that on October 13, 2021, the House Redistricting Committee reported Senate Bill 6 favorably without amendments. State Defendants deny any remaining allegations in this paragraph.

56. Denied.

57. Denied.

58. Denied.

59. Denied.

60. Denied.

61. Denied.

62. Denied.

63. Denied.

64. State Defendants admit that the House passed Senate Bill 6 on third reading on October 17, 2021, and that the Senate did not concur. State Defendants admit that a conference committee was appointed. State Defendants deny all remaining allegations in this paragraph.

65. Denied.

66. State Defendants admit that according to the House Journal, Representative Anchia raised a point of order against further consideration of the conference committee report on Senate Bill 6 on October 18, 2021, under Rule 13, Section 9(d)(1) of the House Rules on the grounds that the conferees exceeded their authority without permission and the point of order was overruled. State Defendants deny the remaining allegations in this paragraph.

67.  State Defendants admit that the House Journal states the following:

> Mr. Anchia notes that the structure of Congressional District 20 was the same in both the Senate and House versions of the bill and thus was not a matter in disagreement between the two houses. He concedes that the structure of Congressional District 35, which abuts Congressional District 20, was a matter in disagreement.
>
> He argues, however, that the report's swap of territory between Congressional District 20 and Congressional District 35 to resolve disagreement over the latter was not permitted under the rule because it was not "essential to the effective resolving of the matter in disagreement."
>
> The rule grants conferees wide latitude to resolve differences in redistricting bills and expressly relaxes the usual rule of strict construction. Congressional District 35 abuts three districts, including Congressional District 20. Congressional District 20 abuts Congressional District 23, the western portion of which was in disagreement and was adjusted by the conferees. The conferees exercised their discretion in determining the districts essential to resolving all matters in disagreement in Bexar County. The Chair declines to disturb that determination absent manifest evidence that they abused that discretion.
>
> Accordingly, the point of order is respectfully overruled.

State Defendants deny all remaining allegations in this paragraph.

68.  State Defendants lack sufficient knowledge or information to form a belief regarding the allegations in the first sentence of this paragraph and therefore deny them. State Defendants deny the remaining allegations in this paragraph.

69. Denied.

70. Admit.

**3.**

71. Denied.

72.  State Defendants lack sufficient knowledge or information to form a belief regarding the allegations in this paragraph, and therefore deny them.

73. State Defendants lack sufficient knowledge or information to form a belief regarding the allegations in this paragraph, and therefore deny them.

74. Denied.

75. State Defendants admit that House Bill 1, relating to the composition of district for the election of members of the Texas House of Representatives, was filed on September 30, 2021. State Defendants admit that the House Redistricting Committee held a public hearing on Monday, October 4, 2021, beginning at 9:00 a.m., to hear public testimony on House Bill 1. State Defendants deny the remaining allegations in this paragraph.

76. Denied.

77. State Defendants lack sufficient information or knowledge to form a belief regarding the allegations in the first sentence of this paragraph, and therefore deny them. State Defendants admit that the Senate Special Committee on Redistricting allowed testimony from witnesses from the Mexican American Legal Defense and Education Fund, the Texas NAACP, LULAC, and the Brennan Center. State Defendants deny any remaining allegations in this paragraph.

78. State Defendants admit that the House Redistricting Committee held a public hearing regarding House Bill 1. State Defendants deny the remaining allegations in this paragraph.

79. Denied.

80. Denied.

81. Denied.

82. Denied.

83. State Defendants admit that House Bill 1 was placed on the Major State Calendar for floor consideration on October 12, 2021, and admit that according to the House Journal, the Texas House

Committee on Calendars adopted a rule that stated, "For each original amendment that will be offered during second reading consideration of the bill, the amendment elements required by Section 3(a) must be submitted to the chief clerk by 6 p.m. on Sunday, October 10." State Defendants deny the remaining allegations in this paragraph.

84.  State Defendants admit that the Texas House passed House Bill 1, enacting Plan H2316. State Defendants deny the remaining allegations in this paragraph.

85. Denied.

86.  State Defendants admit that the Texas Senate received House Bill 1 from the Texas House on October 13, 2021, and House Bill 1 was scheduled for public hearing on October 15, 2021. State Defendants admit that on October 15, 2021, the Senate Special Committee on Redistricting reported House Bill 1 favorably without amendments. State Defendants admit that the Senate suspended the regular order of business and the three-day rule. State Defendants deny all remaining allegations in this paragraph.

**4.**

87. State Defendants deny the allegations in the first sentence of this paragraph. State Defendants admit that the Senate suspended Senate Rule 7.12(a) and that Senate Bill 7 was laid before the Senate for its second and third readings on October 4, 2021. State Defendants deny all remaining allegations in this paragraph.

88.  State Defendants admit that the Texas House Redistricting Committee held a public hearing on Senate Bill 7 on October 11, 2021 and reported it favorably without amendments on October 11, 2021. State Defendants deny the remaining allegations in this paragraph.

89. Denied.

90. Denied.

**D.**

91. Denied.

92. Denied.

    **1.**

        **a.**

93.  State Defendants admit that in the benchmark plan, Plan H2100, El Paso County contains five Texas House districts.

94.  State Defendants admit that according to the Texas Legislative Council Red-119 report, using 2016-2020 American Community Survey data, in Plan H2100, Texas House District 75 has 76.6% 2020 General Election Spanish Surname Voter Registration ("SSVR") and 75.9% 2020 General Election Spanish Surname Turnout ("SSTO"); Texas House District 76 has 79.7% SSVR and 80.1% SSTO; Texas House District 77 has 62.4% SSVR and 60.7% SSTO; Texas House District 78 has 53.2% SSVR and 52.7% SSTO; the Hispanic Citizen Voting Age Population ("HCVAP") of Texas House District 79 in Plan H2100 is 79.2%, 69.5% SSVR, and 70.6% SSTO. State Defendants deny the remaining allegations in this paragraph.

95.  State Defendants admit that in the enacted plan, Plan H2316, Texas House District 76 is not located in El Paso and is located in Fort Bend County. State Defendants admit that according to the Texas Legislative Council Red-100 report, using 2016-2020 American Community Survey data, in Plan H2316, the SSVR in the 2020 General Election and SSTO in the 2020 General Election of Texas House District 76 are less than 20%. State Defendants deny the remaining allegations in this paragraph.

96. Denied.

97. Denied.

98. Denied.

99. Denied.

100. Denied.

101. Denied.

102. Denied.

103. Denied.

104. Denied.

105. Denied.

106. Denied.

**b.**

107.  State Defendants admit that according to the House Journal, Amendment No. 37, which offered Plan No. H2308 as an amendment to Amendment No. 36 was adopted by a vote of 86 yeas, 57 nays, and 2 present and not voting. State Defendants deny the remaining allegations in this paragraph.

108.  State Defendants admit that in Plan H2100, part of Texas House District 35 was located in Hidalgo County and part of Texas House District 35 was located in Cameron County. State Defendants admit that in Plan H2100, Texas House Districts 37 and 38 were located in Cameron County. State Defendants deny the remaining allegations in this paragraph.

109. Denied.

110. Denied.

111.  State Defendants admit that according to the Texas Legislative Council Red-119 report,

using 2016-2020 American Community Survey data, in Plan H2100, Texas House District 37 has 85.7% HCVAP; had 78.9% SSVR in the 2020 General Election and 74.1% SSTO in the 2020 General Election.

112. Denied.

113. State Defendants admit that according to the Texas Legislative Council Red-119 report, using 2016-2020 American Community Survey data, in Plan H2316, Texas House District 37 has 70.5% SSVR and 65.8% SSTO in the 2020 General Election. State Defendants deny the remaining allegations in this paragraph.

114. Denied.

115. Denied.

116. Denied.

117. Denied.

118. Denied.

119. Denied.

c.

120. Denied.

121. State Defendants admit that the U.S. Supreme Court found that the Texas Legislature racially gerrymandered HD90 in favor of Latinos in response to pressure from MALC, *Abbott v. Perez*, 138 S. Ct. 2305, 2333-35 (2018), reasoning that the chair of the Texas House Redistricting Committee had been "too solicitous of changes with respect to HD90" when he "adopted changes to HD90 at the behest of *minority groups*, not out of a desire to discriminate," *id.* at 2329 n.24. State Defendants deny Plaintiffs' characterization of the opinion and deny that it supports a conclusion that any enacted

district or map was enacted with discriminatory intent or has a discriminatory effect. State Defendants deny all remaining allegations in this paragraph.

122. Denied.

123. Denied.

124. State Defendants admit that according to the Texas Legislative Council Red-119 report, using 2016-2020 American Community Survey data, in Plan H2100, Texas House District 90 had 2020 General Election SSVR of 50.8 and SSTO of 48.1%. State Defendants deny the remaining allegations in this paragraph.

125. State Defendants admit that according to the Texas Legislative Council Red-119 report, using 2016-2020 American Community Survey data, in Plan H2316, Texas House District 90 would have a 2020 General Election SSVR of 41.8, which is a decrease of 9% from the benchmark HD 90; and 2020 General Election SSTO of 37.9%, which is a decrease of 10.2% from the benchmark HD 90. State Defendants deny the remaining allegations in this paragraph.

126. Denied.

127. Denied.

128. Denied.

129. Denied.

130. Denied.

**d.**

131. State Defendants admit that Plan H2100 features four districts that contain portions of Harris County that are majority HCVAP. State Defendants deny all remaining allegations in this paragraph.

132. State Defendants admit that, based on total population figures, there were 2,034,709 Latinos

in Harris County according to the 2020 Census. State Defendants admit that Latinos accounted for approximately 43% of the total population of Harris County according to the 2020 Census. State Defendants deny all remaining allegations in this paragraph.

133. State Defendants lack sufficient knowledge or information to form a belief about the percentage of growth Harris County over the last decade that is attributable to Latinos, and Plaintiffs do not cite the source of their allegation, therefore State Defendants deny this allegation.

134. State Defendants admit that the total population of Harris County according to the 2020 Census (4,731,145) divided by the ideal district population for Texas House districts equals 24.35 districts (rounded to the nearest hundredth). State Defendants admit that both Plan H2100 and Plan H2316 contain 24 districts in Harris County. State Defendants admit that 29.9% of 24 districts equates to at least 7 districts. State Defendants deny all remaining allegations.

135. Denied.

136. Denied.

137. Denied.

138. State Defendants admit that HCVAP in benchmark HD145 was 61.3% according to the Texas Legislative Council's Hispanic Population Profile dated August 31, 2021. State Defendants admit that Spanish Surname Voter Registration in benchmark HD145 for the 2020 General Election was 53.9% according to the Texas Legislative Council's Hispanic Population Profile dated August 31, 2021. State Defendants admit that Spanish Surname Voter Registration Turnout in benchmark HD145 for the 2020 General Election was 50.4% according to the Texas Legislative Council's Hispanic Population Profile dated August 31, 2021. State Defendants lack sufficient knowledge or information to form a belief about the remaining allegations and therefore deny those allegations.

139. State Defendants deny that enacted HD145 was drawn with the intention to achieve a particular percentage of any racial or ethnic group. State Defendants admit that HCVAP in enacted HD145 was 55.7% according to the Texas Legislative Council's Hispanic Population Profile dated October 13, 2021. State Defendants admit that Spanish Surname Voter Registration in enacted HD145 for the 2020 General Election was 45.3% according to the Texas Legislative Council's Hispanic Population Profile dated October 13, 2021. State Defendants admit that Spanish Surname Voter Registration Turnout in enacted HD145 for the 2020 General Election was 39.3% according to the Texas Legislative Council's Hispanic Population Profile dated October 13, 2021. State Defendants lack sufficient knowledge or information to form a belief about the remaining allegations and therefore deny those allegations.

140. State Defendants admit that HCVAP in benchmark HD148 was 45.5% according to the Texas Legislative Council's Hispanic Population Profile dated August 31, 2021. State Defendants admit that Spanish Surname Voter Registration in benchmark HD148 for the 2020 General Election was 36.1% according to the Texas Legislative Council's Hispanic Population Profile dated August 31, 2021. State Defendants admit that Spanish Surname Voter Registration Turnout in benchmark HD148 for the 2020 General Election was 30.1% according to the Texas Legislative Council's Hispanic Population Profile dated August 31, 2021. State Defendants lack sufficient knowledge or information to form a belief about the remaining allegations and therefore deny those allegations.

141. State Defendants deny that enacted HD148 was drawn with the intention to achieve a particular percentage of any racial or ethnic group. State Defendants admit that HCVAP in enacted HD148 was 37.7% according to the Texas Legislative Council's Hispanic Population Profile dated October 13, 2021. State Defendants admit that Spanish Surname Voter Registration in enacted HD148 for the 2020 General Election was 32.4% according to the Texas Legislative Council's Hispanic Population Profile dated October 13, 2021. State Defendants admit that Spanish Surname Voter

Registration Turnout in enacted HD148 for the 2020 General Election was 28.9% according to the Texas Legislative Council's Hispanic Population Profile dated October 13, 2021. State Defendants lack sufficient knowledge or information to form a belief about the remaining allegations and therefore deny those allegations.

142. Denied.

143. Denied.

144. Denied.

145. Denied.

146. Denied.

        **e.**

147. Denied.

148. Denied.

149. State Defendants admit that enacted districts HD17, HD44, HD45, and HD51 are not majority HCVAP according to both the Texas Legislative Council's Hispanic Population Profile for Plan H2316 dated October 13, 2021, and the Texas Legislative Council's Hispanic Population Profile for Plan H2316 dated April 18, 2022.

150. Denied.

151. Denied.

    **2.**

        **a.**

152. State Defendants admit that CD23 has been challenged by various Plaintiffs in prior litigation but deny all remaining allegations in this paragraph.

153. State Defendants admit that a prior Texas Legislature conducted reapportionment of Texas congressional districts in 2003. State Defendants admit that the Supreme Court invalidated a previous version of CD23. State Defendants deny that any discrimination occurred or that the prior legislative enactments are relevant to the issues in this litigation. State Defendants deny all remaining allegations in this paragraph.

154. Denied.

155. State Defendants admit that a prior Texas Legislature conducted a reapportionment of Texas congressional districts in 2011. State Defendants admit that in a vacated ruling, relying on a legal standard not applicable in this case, *see United States v. Texas*, 887 F. Supp. 2d 133 (D.D.C. 2012), a three-judge federal court found a previous version of CD23 to have a retrogressive effect. State Defendants deny that the court ruled on the issue of discriminatory intent as to CD23. State Defendants deny that any discrimination occurred. State Defendants deny all remaining allegations in this paragraph.

156. State Defendants admit that a vacated ruling, relying on a legal standard not applicable in this case, *see United States v. Texas*, 887 F. Supp. 2d 133 (D.D.C. 2012), included the partial quote Plaintiffs referenced in this paragraph, but State Defendants deny Plaintiffs' characterization of that quote. State Defendants deny that any discrimination occurred. State Defendants deny all remaining allegations in this paragraph.

157. State Defendants admit that a three-judge panel issued an interim congressional map in February 2012 and then ordered the 2012 elections to proceed under that map in September of the same year. State Defendants deny that the court's adoption of those maps remained in place for the rest of the decade. State Defendants deny all remaining allegations in this paragraph.

158. State Defendants admit that the case cited includes the partial quote Plaintiffs reference in

this paragraph. State Defendants admit that this paragraph also contains a partial recitation of some of the factors considered by the court in that decision but deny that other considerations did not also factor into the court's decision. State Defendants admit that the three-judge panel in that case found that the configuration of CD 23 previously adopted by the Texas Legislature complied with the Voting Rights Act.

159. State Defendants admit that Spanish Surname Voter Registration in benchmark CD23 for the 2020 General Election was 54.1% according to the Texas Legislative Council's Hispanic Population Profile dated April 18, 2022. State Defendants admit that Spanish Surname Voter Registration Turnout in benchmark CD23 for the 2020 General Election was 47.8% according to the Texas Legislative Council's Hispanic Population Profile dated April 18, 2022. State Defendants deny all remaining allegations in this paragraph.

160. State Defendants admit that HCVAP in enacted CD23 was 57.8% according to the Texas Legislative Council's Hispanic Population Profile dated October 18, 2021. State Defendants admit that Spanish Surname Voter Registration in enacted CD23 for the 2020 General Election was 49.2% according to the Texas Legislative Council's Hispanic Population Profile dated October 18, 2021. State Defendants admit that Spanish Surname Voter Registration Turnout in enacted CD23 for the 2020 General Election was 42.9% according to the Texas Legislative Council's Hispanic Population Profile dated October 18, 2021. State Defendants deny all remaining allegations in this paragraph.

161. Denied.

162. Denied.

163. Denied.

164. Denied.

165. Denied.

166. Denied.

167. Denied.

**b.**

168. Denied.

169. Denied.

170. Denied.

171. State Defendants admit that both benchmark CD27 and enacted CD27 have an HCVAP of below 49%. State Defendants admit that both benchmark CD27 and enacted CD27 partially contain Bastrop County. State Defendants deny all remaining allegations in this paragraph.

172. Denied.

173. Denied.

174. Denied.

175. Denied.

176. Denied.

177. Denied.

**c.**

178. State Defendants lack sufficient knowledge or information to form a belief about the percentage of growth in Dallas and Tarrant Counties over the last decade that is attributable to Latinos, and Plaintiffs do not cite the source of their allegation, therefore State Defendants deny this allegation. State Defendants admit that the cities of Arlington, Grand Prairie, and Irving are contained in more

than one congressional district. State Defendants admit that Cherokee County is contained in enacted CD6. State Defendants deny all remaining allegations in this paragraph.

179. Denied.

180. Denied.

181. Denied.

       **d.**

182. Denied.

183. Denied.

184. Denied.

185. Denied.

    **3.**

       **a.**

186. State Defendants admit that three districts in Plan E2106 are majority Hispanic CVAP. State Defendants deny all remaining allegations in this paragraph.

187. Denied.

188. Denied.

189. Denied.

190. Denied.

191. Denied.

192. Denied.

**b.**

193. State Defendants admit that the combined total population of Harris County and Fort Bend County exceeds 5.5 million people. State Defendants lack sufficient knowledge or information to form a belief about what percentage of the growth in Harris and Fort Bend Counties over the last decade is attributable to particular racial or ethnic groups, and Plaintiffs do not cite the source of their allegation, therefore State Defendants deny this allegation. State Defendants deny all remaining allegations in this paragraph.

194. Denied.

195. Denied.

196. Denied.

197. Denied.

**E.**

    **1.**

198. State Defendants admit that Latinos account for approximately 30% of the Citizen Voting Age Population in Texas according to the Census Bureau's 2016-2020 American Community Survey.

199. State Defendants admit that Plan C2193 features 7 majority HCVAP districts according to the Texas Legislative Council's Hispanic Population Profile dated April 18, 2022. State Defendants deny all remaining allegations in this paragraph.

200. State Defendants admit that Plan H2316 features 30 majority HCVAP districts according to the Texas Legislative Council's Hispanic Population Profile dated April 18, 2022. State Defendants deny all remaining allegations in this paragraph.

201. State Defendants admit that Plan S2168 features 7 majority HCVAP districts according to

the Texas Legislative Council's Hispanic Population Profile dated April 18, 2022. State Defendants deny all remaining allegations in this paragraph.

202. State Defendants admit that Plan E2106 features 3 majority HCVAP districts according to the Texas Legislative Council's Hispanic Population Profile dated April 18, 2022. State Defendants deny all remaining allegations in this paragraph.

203. Denied.

204. Denied.

205. Denied.

   **2.**

206. Denied.

207. State Defendants admit that this paragraph accurately reflects information cited in a report authored by a paid expert retained by Plaintiffs in this case. However, Defendants lack sufficient knowledge, information, or the context of this assertion to form a belief about the truth of these allegations, and therefore deny them. Further, State Defendants deny that this information supports a conclusion that any district or map enacted by the Texas Legislature was enacted with discriminatory intent or has a discriminatory effect. State Defendants deny all remaining allegations in this paragraph.

208. State Defendants admit that this paragraph contains a quote from a report authored by a paid expert retained by Plaintiffs in this case. However, Defendants lack sufficient knowledge, information, or the context of this assertion to form a belief about the truth of these allegations, and therefore deny them. Further, State Defendants deny that this information supports a conclusion that any district or map enacted by the Texas Legislature was enacted with discriminatory intent or has a discriminatory effect. State Defendants deny all remaining allegations in this paragraph.

209. State Defendants admit that this paragraph accurately reflects information cited in a report authored by a paid expert retained by Plaintiffs in this case. However, Defendants lack sufficient knowledge, information, or the context of this assertion to form a belief about the truth of these allegations, and therefore deny them. Further, State Defendants admit that the Supreme Court struck down the Democratic Party's use of all-white party primaries in the cases cited. State Defendants deny that the holding in *Nixon v. Herndon* relied on the Fifteenth Amendment. State Defendants deny that any allegations in this paragraph support a conclusion that any district or map enacted by the Texas Legislature was enacted with discriminatory intent or has a discriminatory effect. State Defendants deny all remaining allegations in this paragraph.

210. State Defendants admit that this paragraph accurately reflects information cited in a report authored by a paid expert retained by Plaintiffs in this case. However, Defendants lack sufficient knowledge, information, or the context of this assertion to form a belief about the truth of these allegations, and therefore deny them. Further, State Defendants deny Plaintiffs' characterization of the cited report from the Texas Civil Rights Project. State Defendants deny that any allegations in this paragraph support a conclusion that any district or map enacted by the Texas Legislature was enacted with discriminatory intent or has a discriminatory effect. State Defendants deny all remaining allegations in this paragraph.

211. State Defendants admit that the 59th Texas Legislature passed Senate Bill 1, which required voters to register annually, in 1966 during its First Called Session. State Defendants admit that the case cited in this paragraph affirmed a lower court's decision to invalidate Article 5.11a of the Texas Election Code. State Defendants deny that any allegations in this paragraph support a conclusion that any district or map enacted by the Texas Legislature was enacted with discriminatory intent or has a discriminatory effect. State Defendants deny all remaining allegations in this paragraph.

212. State Defendants admit that a district court found intentional discrimination in the first case cited in this paragraph, which was a finding that an *en banc* panel of the Fifth Circuit later reversed and remanded. *See Veasey v. Abbott*, 830 F.3d 216, 272 (5th Cir. 2016). State Defendants admit that the same district court found intentional discrimination in the second case cited in this paragraph, which the Fifth Circuit later reversed and rendered in favor of the defendants in that litigation. *See Veasey v. Abbott*, 888 F.3d 792 (5th Cir. 2018). State Defendants deny that any allegations in this paragraph support a conclusion that any district or map enacted by the Texas Legislature was enacted with discriminatory intent or has a discriminatory effect. State Defendants deny all remaining allegations in this paragraph.

213. State Defendants admit that the first case cited in this paragraph—which was subsequently affirmed in part, reversed in part, vacated in part, remanded in part, and rendered in part by an *en banc* panel of the Fifth Circuit—includes the partial quote Plaintiffs reference in this paragraph, but State Defendants deny Plaintiffs' characterization of that quote. State Defendants deny Plaintiffs' characterization of the second decision cited in this paragraph. State Defendants deny that any allegations in this paragraph support a conclusion that any district or map enacted by the Texas Legislature was enacted with discriminatory intent or has a discriminatory effect. State Defendants deny all remaining allegations in this paragraph.

214. State Defendants deny Plaintiffs' characterization of the case cited in this paragraph and therefore deny this allegation. State Defendants deny that any allegations in this paragraph support a conclusion that any district or map enacted by the Texas Legislature was enacted with discriminatory intent or has a discriminatory effect.

215. Denied.

216. State Defendants admit that the parties in *LULAC v. Whitley* reached an agreement to settle

all the claims involved in that litigation. State Defendants deny Plaintiffs' characterization of the judicial decision cited in this paragraph. State Defendants deny that any allegations in this paragraph support a conclusion that any district or map enacted by the Texas Legislature was enacted with discriminatory intent or has a discriminatory effect. State Defendants deny all remaining allegations in this paragraph.

217. State Defendants admit that a temporary injunction was issued in the case referenced and that the court's order regarding precincts with fewer than 750 registered voters contained the partial quote included in this paragraph. State Defendants deny that any allegations in this paragraph support a conclusion that any district or map enacted by the Texas Legislature was enacted with discriminatory intent or has a discriminatory effect. State Defendants deny all remaining allegations in this paragraph.

218. State Defendants admit that Senate Bill 1 was enacted during the Second Called Session of the 87th Texas Legislature. State Defendants admit that Senate Bill 1 is the subject of ongoing litigation. State Defendants deny all remaining allegations in this paragraph.

   **3.**

219. Denied.

220. Denied.

221. State Defendants admit that the named individual made a public statement that included the partial quote Plaintiffs reference in this paragraph but deny Plaintiffs' characterization of that statement and all remaining allegations in this paragraph. State Defendants deny that any allegations in this paragraph support a conclusion that any district or map enacted by the Texas Legislature was enacted with discriminatory intent or has a discriminatory effect.

222. State Defendants admit that the named political candidate commented publicly that the judge referenced should recuse himself from litigation in which he was involved. State Defendants deny

Plaintiffs' characterization of that statement. State Defendants deny that any allegations in this paragraph support a conclusion that any district or map enacted by the Texas Legislature was enacted with discriminatory intent or has a discriminatory effect. State Defendants deny all remaining allegations in this paragraph.

223. State Defendants admit that the partial quote Plaintiffs reference was contained in a tweet by the individual named in this paragraph but deny Plaintiffs' characterization of that tweet. State Defendants lack sufficient knowledge or information to form a belief about whether the tweet was in reference to the congresswomen named in this paragraph, and therefore deny this allegation. State Defendants lack sufficient knowledge or information to form a belief about the birthplace of each congresswoman identified by Plaintiffs, and therefore deny this allegation. State Defendants deny that any allegations in this paragraph support a conclusion that any district or map enacted by the Texas Legislature was enacted with discriminatory intent or has a discriminatory effect. State Defendants deny all remaining allegations in this paragraph.

224. State Defendants lack sufficient knowledge or information to form a belief about the truth of these allegations, and therefore deny them. State Defendants deny that any allegations in this paragraph support a conclusion that any district or map enacted by the Texas Legislature was enacted with discriminatory intent or has a discriminatory effect.

225. State Defendants admit that a video was posted on Twitter from an account for the named individual on the date in question but deny Plaintiffs' characterization of that post. State Defendants deny that any allegations in this paragraph support a conclusion that any district or map enacted by the Texas Legislature was enacted with discriminatory intent or has a discriminatory effect. State Defendants deny all remaining allegations in this paragraph.

226. State Defendants lack sufficient knowledge or information to form a belief about the truth

of these allegations, and therefore deny them. State Defendants deny that any allegations in this paragraph support a conclusion that any district or map enacted by the Texas Legislature was enacted with discriminatory intent or has a discriminatory effect.

227. State Defendants lack sufficient knowledge or information to form a belief about the truth of these allegations, and therefore deny them. State Defendants deny that any allegations in this paragraph support a conclusion that any district or map enacted by the Texas Legislature was enacted with discriminatory intent or has a discriminatory effect.

228. State Defendants admit that the named individual has made comments that employ the terms quoted in this paragraph but deny Plaintiffs' characterization of those comments. State Defendants deny that any allegations in this paragraph support a conclusion that any district or map enacted by the Texas Legislature was enacted with discriminatory intent or has a discriminatory effect.

229. State Defendants lack sufficient knowledge or information to form a belief about the truth of these allegations, and therefore deny them. State Defendants deny that any allegations in this paragraph support a conclusion that any district or map enacted by the Texas Legislature was enacted with discriminatory intent or has a discriminatory effect.

230. State Defendants lack sufficient knowledge or information to form a belief about the truth of these allegations, and therefore deny them. State Defendants deny that any allegations in this paragraph support a conclusion that any district or map enacted by the Texas Legislature was enacted with discriminatory intent or has a discriminatory effect.

231. Denied.

232. State Defendants admit that the individual referenced was reported to have made the statement quoted in this paragraph. State Defendants deny that any allegations in this paragraph support a conclusion that any district or map enacted by the Texas Legislature was enacted with

discriminatory intent or has a discriminatory effect. State Defendants deny all remaining allegations in this paragraph.

233. State Defendants admit that the individual referenced was reported to have made the statements quoted in this paragraph. State Defendants deny that any allegations in this paragraph support a conclusion that any district or map enacted by the Texas Legislature was enacted with discriminatory intent or has a discriminatory effect.

234. State Defendants admit that the casualty figures cited of those killed or injured in the El Paso shooting are accurate and that media reports indicate that the individual referenced in this paragraph was reported to have written the statements quoted therein. State Defendants deny Plaintiffs' characterizations of those statements as "echoing" the statements referenced in Paragraph 220 and deny that any allegations in this paragraph support a conclusion that any district or map enacted by the Texas Legislature was enacted with discriminatory intent or has a discriminatory effect. State Defendants deny all remaining allegations in this paragraph.

235. Denied.

236. Denied.

237. State Defendants lack sufficient knowledge or information to form a belief about the truth of these allegations, and therefore deny them. State Defendants deny that any allegations in this paragraph support a conclusion that any district or map enacted by the Texas Legislature was enacted with discriminatory intent or has a discriminatory effect.

238. State Defendants lack sufficient knowledge or information to form a belief about the truth of these allegations, and therefore deny them. State Defendants deny that any allegations in this paragraph support a conclusion that any district or map enacted by the Texas Legislature was enacted with discriminatory intent or has a discriminatory effect.

239. Denied.

240. Denied.

**4.**

241. State Defendants admit that Representative Yvonne Davis offered an amendment that would have modified the boundaries between HD54 and HD55 in Bell County and that failed to pass, but State Defendants deny that this amendment would not have split Killeen between those two districts. State Defendants admit that Representative Nicole Collier offered an amendment that would have modified the boundaries between HD54 and HD55 in Bell County and that failed to pass, but State Defendants deny that this amendment would not have split both Killeen and Temple between those two districts. State Defendants deny all remaining allegations in this paragraph.

242. Denied.

243. State Defendants admit that Anglo individuals constitute a lower proportion of the Texas prison population than their proportion of the state's overall population. State Defendants deny all remaining allegations in this paragraph.

244. Denied.

245. Denied.

**G.**

246. Denied.

247. State Defendants admit that this paragraph contains an accurate quote from the individual named in this paragraph, but State Defendants deny Plaintiffs' characterization of that quote. State Defendants deny all remaining allegations in this paragraph.

248. State Defendants admit that this paragraph contains an accurate quote from the individual

named in this paragraph, but State Defendants deny any implication that this quote reflects a discriminatory purpose or violation of law.

249. Denied.

250. Denied.

251. Denied.

252. Denied.

253. Denied.

254. Denied.

255. Denied.

**H.**

256. State Defendants admit that the case cited includes the partial quote Plaintiffs reference in this paragraph, but State Defendants deny Plaintiffs' characterization of that quote. State Defendants deny all remaining allegations in this paragraph.

257. Denied.

258. State Defendants admit that the citizen voting age population of enacted HD53 is majority Anglo. State Defendants admit that Kerr, Bandera, Medina, and Llano Counties are the four counties contained within HD53 with the highest population. State Defendants admit that Representative Andrew Murr resides in the eastern half of enacted HD53. State Defendants deny all remaining allegations in this paragraph.

259. Denied.

260. State Defendants are unable to determine the exact parameters of the Trans Pecos, Plains,

and Panhandle regions as they are referenced by Plaintiffs in this paragraph. Accordingly, State Defendants lack sufficient knowledge or information to form a belief about the accuracy of the statistics cited and therefore deny all allegations associated with those statistics. State Defendants deny all remaining allegations in this paragraph.

261. State Defendants are unable to determine the exact parameters of the regions being referenced by Plaintiffs in this paragraph. Accordingly, State Defendants lack sufficient knowledge or information to form a belief about the truth of this allegation and therefore deny it.

262. State Defendants admit that enacted HD74 contains Maverick County. State Defendants admit that enacted HD74 contains a portion of El Paso. State Defendants admit that the Spanish Surname Turnout for the 2020 General Election in benchmark HD80 is 76.5% according to the Texas Legislative Council's Hispanic Population Profile for Plan H2100 dated April 18, 2022. State Defendants admit that the Spanish Surname Turnout for the 2020 General Election in enacted HD80 is 66.1% % according to the Texas Legislative Council's Hispanic Population Profile for Plan H2316 dated April 18, 2022. State Defendants admit that the Spanish Surname Turnout for the 2020 General Election in benchmark HD31 is 68.7% according to the Texas Legislative Council's Hispanic Population Profile for Plan H2100 dated April 18, 2022. State Defendants admit that the Spanish Surname Turnout for the 2020 General Election in enacted HD31 is 56.3% according to the Texas Legislative Council's Hispanic Population Profile for Plan H2316 dated April 18, 2022. State Defendants deny all remaining allegations in this paragraph.

263. Denied.

264. Denied.

LEGAL CLAIMS

### Count I
### (as to State Defendants Abbott and Scott)
*Intentional Racial Discrimination Violating the Fourteenth and Fifteenth Amendments to the United States Constitution*

265. State Defendants incorporate their answers to all preceding paragraphs as if fully set forth herein.

266. Denied.

### Count II
### (as to all State Defendants)
*Violations of Section 2 of the Voting Rights Act*

267. State Defendants incorporate their answers to all preceding paragraphs as if fully set forth herein.

268. State Defendants admit that Plaintiffs invoke Section 2 of the Voting Rights Act in this litigation. State Defendants deny all allegations that this statute has been violated and that Plaintiffs are entitled to any relief under this statute. State Defendants deny all remaining allegations in this paragraph.

269. Denied.

### Count III
### (as to State Defendants Abbott and Scott)
*Violations of Section 2 of the Voting Rights Act*

270. State Defendants incorporate their answers to all preceding paragraphs as if fully set forth herein.

271. State Defendants admit that *Shaw v. Reno* includes the partial quote contained in this paragraph. State Defendants deny that any violation of the legal standards announced in that case has occurred here. State Defendants deny that any other violation of law has occurred or that any relief is

due. State Defendants deny all remaining allegations in this paragraph.

272. Denied.

## Count IV
### (as State Defendants Abbott and Scott)
*Violations of the Fourteenth Amendment's One Person-One Vote Requirement*

273. State Defendants incorporate their answers to all preceding paragraphs as if fully set forth herein.

274. State Defendants admit that *Reynolds v. Sims* includes the partial quote contained in this paragraph. State Defendants deny that any violation of the legal standards announced in that case has occurred here. State Defendants deny that any other violation of law has occurred or that any relief is due. State Defendants deny all remaining allegations in this paragraph.

275. State Defendants admit that House Bill 1 adopted Plan H2316 and was signed by the governor on October 25, 2021. State Defendants admit that Plan H2316 features an overall deviation range of 9.98%. State Defendants deny that any violation of law has occurred or that any relief is due. State Defendants deny all remaining allegations in this paragraph.

276. Denied.

## PRAYER FOR RELIEF

a.   State Defendants deny that Plaintiffs are entitled to any of the relief requested herein.

b.   State Defendants deny that Plaintiffs are entitled to any of the relief requested herein.

c.   State Defendants deny that Plaintiffs are entitled to any of the relief requested herein.

d.   State Defendants deny that Plaintiffs are entitled to any of the relief requested herein.

e.   State Defendants deny that Plaintiffs are entitled to any of the relief requested herein.

f.   State Defendants deny that Plaintiffs are entitled to any of the relief requested herein.

g.   State Defendants deny that Plaintiffs are entitled to any of the relief requested herein.

h.   State Defendants deny that Plaintiffs are entitled to any of the relief requested herein.

i.   State Defendants deny that Plaintiffs are entitled to any of the relief requested herein.

j.   State Defendants deny that Plaintiffs are entitled to any of the relief requested herein.

## STATE DEFENDANTS' AFFIRMATIVE AND OTHER DEFENSES

1. This Court lacks subject-matter jurisdiction to consider all claims asserted in Plaintiffs' Second Amended Complaint.

2. Plaintiffs lack standing to assert all claims asserted in their Second Amended Complaint.

3. Plaintiffs have failed to state a claim upon which relief can be granted.

4. State Defendants assert all applicable immunities to Plaintiffs' claims, including but not limited to their entitlement to Eleventh Amendment and sovereign immunity.

5. Pursuant to 42 U.S.C. § 1988(b) and 52 U.S.C. § 10310(e), State Defendants will be entitled to recover their attorney's fees if they are the prevailing parties.

6. State Defendants assert that imposing liability under § 2 of the Voting Rights Act is, in this case, unconstitutional because it is inconsistent with the Equal Protection Clause of the 14th Amendment to the U.S. Constitution.

7. State Defendants assert that imposing liability under § 2 of the Voting Rights Act is, in this case, unconstitutional because it would exceed Congress's enforcement power under the 14th and 15th Amendments to the U.S. Constitution. Imposing liability here would not be congruent and proportional to the enforcement of the 14th Amendment or 15th Amendment.

8. State Defendants reserve the right to assert additional affirmative and other defenses as they may become apparent in the factual development of this case.

Date: December 20, 2022

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

WILLIAM T. THOMPSON
Acting Chief, Special Litigation Unit
Tex. State Bar No. 24088531

BRENT WEBSTER
First Assistant Attorney General

KATHLEEN T. HUNKER
Special Counsel
Tex. State Bar No. 24118415

ARI M. HERBERT
Special Counsel
Tex. State Bar No. 24126093

*/s/ J. Aaron Barnes*
J. AARON BARNES
Special Counsel
Tex. State Bar No. 24099014

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410
will.thompson@oag.texas.gov
kathleen.hunker@oag.texas.gov
ari.herbert@oag.texas.gov
aaron.barnes@oag.texas.gov

**COUNSEL FOR STATE DEFENDANTS**

### CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on December 20, 2022, and that all counsel of record were served by CM/ECF.

*/s/ J. Aaron Barnes*
J. AARON BARNES