**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| League of United Latin American Citizens, *et al.*, | § § § | |
| *Plaintiffs,* | § § | |
| Eddie Bernice Johnson, Sheila Jackson-Lee, Alexander Green, and Jasmine Crockett, | § § § § | Case No. 3:21-cv-00259 [Lead Case] |
| *Plaintiff-Intervenors,* | § § § | |
| v. | § § | |
| Greg Abbott, *et al.*, | § § | |
| *Defendants.* | § | |
| UNITED STATES OF AMERICA, | § § | |
| *Plaintiff,* | § § | |
| v. | § § | Case No. 3:21-cv-299 [Consolidated Case] |
| STATE OF TEXAS, *et al.*, | § § | |
| *Defendants.* | § § § | |

**DEFENDANTS' ANSWER TO PLAINTIFF UNITED STATES' AMENDED COMPLAINT**

The State of Texas and John Scott, in his official capacity as Secretary of State of Texas, (collectively "Defendants") file this Answer to the Amended Complaint, *LULAC v. Abbott*, No. 3:21-cv-259, ECF 318 (W.D. Tex. June 6, 2022), filed by the United States of America (the "Plaintiff").

# ANSWER

Pursuant to Federal Rule of Civil Procedure 8(b), Defendants deny each and every allegation in Plaintiff's Amended Complaint except for those expressly admitted here. The paragraphs below directly correlate to the numbered paragraphs of Plaintiff's Amended Complaint.

1. Defendants admit that according to U.S. Census data, the Texas population increased by approximately four million people between 2010 and 2020. Defendants deny the remaining allegations in this paragraph.

2. Defendants admit that after the release of the 2020 Census data, the Texas Legislature passed redistricting plans for the Texas Congressional map and the Texas House of Representatives map. Defendants deny the remaining allegations in this paragraph.

3. Defendants admit that Texas's congressional apportionment increased from 36 to 38 seats following the 2020 Census. Defendants deny the remaining allegations in this paragraph.

4. Denied.

5. Denied.

6. Denied.

7. Defendants admit that Plaintiff United States purports to bring claims pursuant to 52 U.S.C. §§ 10301 and 10308(d), but Defendants deny that any violation occurred. Defendants further deny that the Plaintiff's causes of action referenced in this paragraph are meritorious. Defendants deny any remaining allegations in this paragraph.

8. Denied.

## JURISDICTION AND VENUE

9. Defendants deny that Plaintiff can meet its burden of proof to demonstrate this Court's jurisdiction over all claims and relief sought in this case.

10. Defendants admit that venue is proper in this district.

## PARTIES

11. Defendants admit that 52 U.S.C. § 10308(d) allows the United States Attorney General to file a civil action to seek injunctive relief in some circumstances. Defendants however deny that they have engaged or that there are reasonable grounds to believe that they have engaged in any act or practice prohibited by the Voting Rights Act.

12. Admit.

13. Defendants admit that John B. Scott is the duly appointed Secretary State of the State of Texas. Defendants however deny any wrongdoing by Secretary Scott in his official duties and deny Plaintiff's characterization of state law. Texas Election Code § 31.003 provides: "The secretary of state shall obtain and maintain uniformity in the application, operation, and interpretation of this code and of the election laws outside this code.  In performing this duty, the secretary shall prepare detailed and comprehensive written directives and instructions relating to and based on this code and the election laws outside this code.  The secretary shall distribute these materials to the appropriate state and local authorities having duties in the administration of these laws." Texas Election Code § 31.005(b) provides: "The secretary of state may order a person performing official functions in the administration of any part of the electoral processes to correct offending conduct if the secretary determines that the person is exercising the powers vested in that person in a manner that: (1)  impedes the free exercise of a citizen's voting rights; or (2)  unless acting under an order of a court of competent jurisdiction, delays or cancels an election that the person does not have specific statutory authority to delay or cancel."

## ALLEGATIONS

14. Defendants admit that according to 2020 Census DEC Redistricting Data (PL 94-171), the population of Texas was 29,145,505 and the Hispanic or Latino population was 11,441,717. Defendants deny the remaining allegations in this paragraph.

15. According to the 2016-2020 ACS data, in 2020 Texas had a population of 21,253,960 of people 18 and over. Defendants therefore deny the allegation regarding the Total VAP in Texas. Defendants lack knowledge or sufficient information to form beliefs about the allegations regarding the VAP by race allegations made by Plaintiff and therefore deny these allegations.

16. Admit.

17. Defendants lack knowledge or sufficient information to form a belief about the veracity of the allegations regarding Plaintiff's alternative statistical model and therefore deny the allegations in this paragraph.

18. Defendants admit that according to U.S. Census data the total population of Texas increased by 3,999,944, the Hispanic or Latino population increased by 1,980,796, and the non-Hispanic White population increased by 187,252. Defendants deny the remaining allegations in this paragraph.

19. Defendants admit that some courts, under a different standard, found that former Legislatures improperly used racial data in violation of the U.S. Constitution or the Voting Rights Act. Defendants deny the remaining allegations in this paragraph.

20. Defendants deny Plaintiff's characterization of *LULAC v. Perry*, 548 U.S. 399 (2006), where the Supreme Court upheld the Texas Congressional map, enacted by the Texas Legislature, with almost no changes. Defendants deny the remaining allegations in this paragraph.

21. Defendants admit that the Supreme Court in *Shelby County v. Holder*, 570 U.S. 529 (2013), found that Section 4(b) of the Voting Rights Act was unconstitutional, which meant that Texas would not be subject to preclearance. Defendants also admit that the opinion of the Washington D.C.-based court in *Texas v. United States*, 887 F. Supp. 2d 133 (D.D.C. 2012), was vacated. Defendants deny the remaining allegations in this paragraph.

22. Defendants admit that on September 7, 2021, Governor Greg Abbott announced that he would convene a third special legislative session for the 87th Texas Legislature and that redistricting was one of the agenda items for this session.

23. Denied.

24. Denied.

25. Admit.

26. Defendants admit SB 6 was filed on September 27, 2021, and that the Conference Committee report was adopted on October 18, 2021. Defendants deny the remaining allegations in this paragraph.

27. Defendants admit that both Senator Joan Huffman and Representative Todd Hunter, while chairing the Legislature's Redistricting Committees, held many hearings during which they solicited public testimony and comments from all regions of Texas. Defendants further admit that an online portal was set up so members of the public could submit their input on the redistricting process. Defendants deny the remaining allegations in this paragraph.

28. Defendants admit that Senator Joan Huffman filed SB 6 on September 27, 2021.

29. Denied.

30. Denied.

31. Defendants presume, based on the description, that Plaintiff is referring to the filed version of SB 6, in which Representative Sheila Jackson Lee's Houston residence was placed in the 9th Congressional District, represented by Representative Al Green. Defendants admit that Representative Jackson Lee's residence was initially moved to the 9th District, before House Amendments 17 and 18 were adopted, which moved Representative Jackson Lee's residence back to the 18th District.

32. Defendants admit that the Senate Special Committee on Redistricting held public hearings on SB 6 on September 30, 2021, and October 4, 2021, in addition to the hearings Plaintiff referred to in

Paragraph 27. Defendants admit that the full Senate passed their version of SB 6 and referred it to the House on October 8, 2021, and later adopted the Conference Committee report of October 18, 2021. Defendants deny the remaining allegations in this paragraph.

33. Defendants admit that Senator Joan Huffman stated on the Senate floor that her process to complete the redistricting process complied with the Voting Rights Act. Defendants deny the remaining allegations in this paragraph.

34. Defendants admit that on October 8, 2021, the House received SB 6 and referred it to the House's Redistricting Committee. Defendants deny the remaining allegations in this paragraph.

35. Defendants admit that on October 13, 2021, the House Redistricting Committee held a public hearing on SB 6 in full compliance with House procedural rules. Defendants admit that the House Redistricting Committee did not adopt any amendments to SB 6 before referring it to the full House, which voted on 26 proposed amendments. Defendants deny the remaining allegations in this paragraph.

36. Defendants admit that the Texas House considered SB 6 on October 16, 2021, and adopted amendments proposed by both Democrats and Republicans. Defendants admit that the House passed the amended Congressional plan on October 17, 2021. Defendants deny the remaining allegations in this paragraph.

37. Defendants admit that the House and Senate appointed a Conference Committee to merge the two chambers' versions of SB 6. Defendants admit that this Conference Committee filed a report on a version of SB 6 agreeable to the Conference Committee on October 17, 2021. Defendants deny the remaining allegations in this paragraph.

38. Defendants admit that both the House and Senate adopted the Conference Committee's report on October 18, 2021.

39. Defendants admit that Governor Greg Abbott signed SB 6 into law on October 25, 2021.

40. Defendants lack knowledge or information sufficient to form a belief about which Congressional plans considered in 2003 and 2011 allegedly "violated the Voting Rights Act" and therefore deny this allegation. Defendants deny the remaining allegations in this paragraph.

41. Defendants admit that the Court in *LULAC v. Perry*, 548 U.S. 399 (2006), under a different standard, found that the use of racial data by a former Legislature during its redistricting process was improper, while upholding almost the entire enacted Congressional map. Defendants deny the remaining allegations in this paragraph.

42. Defendants admit that two courts, under a different standard, found that the use of racial data and racial shading by a former Legislature to draw Congressional maps was improper. Defendants deny the remaining allegations in this paragraph.

43. Admit.

44. This paragraph contains Plaintiff's characterizations of the *Perez v. Texas* court decision, which states the following:

> This interim plan is not a final ruling on the merits of any claims asserted by the Plaintiffs in this case or any of the other cases consolidated with this case. Nor is it intended to be a ruling on the merits of any claim asserted in the case pending in the United States District Court for the District of Columbia.

891 F. Supp. 2d 808, 812 (W.D. Tex. 2012). Defendants deny Plaintiff's characterization of that decision. Defendants admit that Section 5 of the Voting Rights Act does not apply to Texas. Defendants deny the remaining allegations in this paragraph.

45. Defendants admit that according to the Texas Legislative Council's analysis of 2016-2020 ACS data for PLANC2100, District 23 had a HCVAP of 63.6%. Defendants also admit that in the 2020 General Election, the SSVR in Congressional District 23 was 54.1% and the SSTO was 47.8%. Defendants deny the remaining allegations in this paragraph.

46. Defendants admit that in the 2020 General Election Representative Tony Gonzales was elected with 50.6% to represent the 23rd Congressional District. Defendants deny the remaining allegations in this paragraph.

47. Defendants lack sufficient knowledge or information about Plaintiff's generically described "election analysis" to form a belief about the allegations in this paragraph and therefore deny them.

48. Denied.

49. Defendants admit that Republican William Hurd won the general election for the 23rd Congressional District in 2014, 2016, and 2018, and that Republican Tony Gonzalez won the District in 2020. Defendants deny the remaining allegations in this paragraph.

50. Defendants admit that the enacted Congressional District 23 contains the same counties as in the benchmark plan. Defendants deny the remaining allegations in this paragraph.

51. Defendants admit that according to the Texas Legislative Council's analysis of 2016-2020 ACS data, the enacted Congressional District 23 has an HCVAP of 58.1%. Defendants also admit that in the 2020 General Election, the enacted District 23 had an SSVR of 49.2% and an SSTO of 42.9%. Defendants deny the remaining allegations in this paragraph.

52. Defendants lack knowledge or information sufficient to form a belief about whether Plaintiff's allegation about "statewide contests" includes primary elections and therefore deny this allegation. Defendants deny the remaining allegations in this paragraph.

53. Defendants lack knowledge or information sufficient to form a belief about whether Plaintiff's allegation about "statewide contests" includes primary elections and therefore deny this allegation. Defendants deny the remaining allegations in this paragraph.

54. Defendants lack knowledge or sufficient information to form a belief about when Adam Kincaid allegedly spoke these words to the *New York Times* and therefore deny this allegation. Defendants deny the remaining allegations in this paragraph.

55. Denied.

56. Defendants admit under PLANC2193 District 23 has four split precincts in Bexar County and eleven in El Paso County. Defendants deny the remaining allegations in this paragraph.

57. Denied.

58. Defendants deny the allegations in the first four sentences of paragraph 58. Defendants lack knowledge or information sufficient to form a belief about the allegations in the remaining sentences of paragraph 58 and therefore deny this allegation. Defendants admit this paragraph describes and refers to maps found in Figures 3, 4, and 5 but are unable to determine the source of these maps or to verify their accuracy. Defendants deny that the maps embedded in this paragraph supports the allegations made in Plaintiff's First Amended Complaint. Defendants deny the remaining allegations in this paragraph.

59. Defendants lack knowledge or information sufficient to form a belief about the HCVAP in Plaintiff's illustrative district and therefore deny this allegation. The Texas Legislative Council's analysis of 2016-2020 ACS Data for PLANC2193 states that Congressional District 23 has an HCVAP of 58.1%, which is fewer than 12.3% lower than 69.0%. Defendants therefore also deny this allegation, as well as the remaining allegations in this paragraph.

60. Defendants lack knowledge or information sufficient to form a belief about whether Plaintiff's allegation about "statewide contests" includes primary elections and therefore deny this allegation. Defendants lack knowledge or information sufficient to form a belief about the voter cohesion in Plaintiff's illustrative district and therefore deny this allegation. Defendants deny the remaining allegations in this paragraph.

61. Defendants lack knowledge or information sufficient to form a belief about whether fewer than 20% of Anglo voters in Plaintiff's illustrative district supported Latino-preferred candidates in

statewide races between 2014 and 2020 that included Latino candidates and therefore deny this allegation. Defendants deny the remaining allegations in this paragraph.

62. Denied.

63. Denied.

64. Defendants admit that according to the 2016-2020 ACS data, the population of Dallas County increased between 2010 and 2020 from 2,368,139 persons to 2,613,539 persons, for a total increase of 245,400. According to the 2016-2020 ACS data, the 2020 Hispanic or Latino population of Dallas County was 1,055,050. According to 2006-2010 ACS data, the 2010 Hispanic or Latino population of Dallas County was 860,131, out of a total population of 2,321,014. That yields an increase of 194,919 person who identify as Hispanic or Latino in Dallas County between 2010 and 2020, from the lower total population of 2,321,014. Defendants lack sufficient knowledge or information due to this discrepancy to admit more than that there was a significant increase in the Hispanic or Latino population in Dallas County between 2010-2020. According to the 2016-2020 ACS data, the 2020 Black or African American Alone number of persons in Dallas County was 587,820. Defendants deny the remaining allegations in this paragraph.

65. Defendants admit that according to 2016-2020 ACS data, the 2020 population of Tarrant County was 2,077,153, the Hispanic or Latino population was 602,315, and the Black or African-American Alone population was 339,475. Defendants deny the remaining allegations in this paragraph.

66. Defendants admit that under PLANC2100 Congressional Districts 5, 6, 12, 24, 25, 26, 30, 32, and 33 were located at least partially in Dallas County or Tarrant County. Defendants admit that according to the Texas Legislative Council's analysis of the 2016-2020 ACS data, for PLANC2100, the BCVAP of District 30 was 50.3% and the HCVAP of District 33 was 48.5%, and that Districts 5, 6, 12, 24, 25, and 26 were majority white. Defendants deny the remaining allegations in this paragraph.

67. This paragraph contains Plaintiff's characterizations of the *Perez v. Abbott* court decision, which states the following:

> Defendants have failed to show that the same lines would have been drawn in DFW or that minorities would not have been packed and cracked without this racial motive."

*Perez v. Abbott*, 253 F. Supp. 3d 864, 962 (W.D. Tex. 2017). Defendants deny Plaintiff's characterization of that decision. Defendants deny the remaining allegations in this paragraph.

68. Defendants admit that according to the Texas Legislative Council's analysis of 2016-2020 ACS data for PLANC2100, the BCVAP of Congressional District 30 was 50.3% and the HCVAP of District 30 was 23.9%. Defendants also admit that Representative Eddie Bernice Johnson has represented District 30 since 1993. Defendants deny the remaining allegations in this paragraph.

69. Defendants admit that according to the Texas Legislative Council's analysis of 2016-2020 ACS data for PLANC2100, the HCVAP of Congressional District 33 was 48.5% and the BCVAP of District 33 was 23.4%. Defendants also admit that Representative Marc Veasey has represented District 33 since 2013. Defendants deny the remaining allegations in this paragraph.

70. Defendants admit that according to the Texas Legislative Council's analysis of the 2016-2020 ACS data, under PLANC2100, Congressional Districts 5, 6, 12, 24, 25, 26, and 32 had HCVAPs of 17.0%, 17.5%, 17.1%, 16.2%, 15.4%, 13.9%, and 16.0%, respectively, as well as BCVAPs of 16.9%, 21.9%, 8.9%, 14.0%, 7.5%, 9.3%, and 14.7%, respectively. Defendants admit that during the 2020 General Election Districts 5, 6, 12, 24, 25, 26, and 32 elected Republican Lance Gooden, Republican Jake Ellzey, Republican Kay Granger, Republican Beth Van Duyne, Republican Roger Williams, Republican Michael Burgess, and Democrat Colin Allred, respectively. Defendants deny the remaining allegations in this paragraph.

71. Defendants admit in the 2020 General Election Republican Beth Van Duyne defeated Democrat Candace Valenzuela to represent Congressional District 24. Defendants deny the remaining allegations in this paragraph.

72. Denied.

73. Defendants admit that according to the Texas Legislative Council's analysis of the 2016-2020 ACS data, the enacted Congressional District 30 has a HCVAP of 21.4% and a BCVAP of 47.9%, while Congressional District 33 has a HCVAP of 42.8% and a BCVAP of 26.3%. Defendants deny the remaining allegations in this paragraph.

74.  Defendants admit that according to the Texas Legislative Council's analysis of the 2016-2020 ACS data, under PLANC2193, Congressional Districts 5, 6, 12, 24, 25, 26, and 32 have HCVAPs of 17.5%, 21.3%, 17.6%, 11.9%, 15.3%, 13.1%, and 21.0%, respectively,  and BCVAPs of 14.1%, 14.8%, 10.1%, 6.4%, 11.3%, 8.5%, and 23.0%, respectively. Defendants deny the remaining allegations in this paragraph.

75. Defendants admit that Congressional District 24 is located in Tarrant County and Dallas County, and that Congresswoman Beth Van Duyne was the Mayor of Irving from 2011 to 2017. Defendants deny the remaining allegations in this paragraph.

76. Denied.

77. Denied.

78. Defendants admit that under PLANC2193, Congressional District 6 borders Congressional District 33. Defendants deny the remaining allegations in this paragraph.

79. Defendants admit that Democrat Terry Meza won the General Election for Texas House District 105 in 2020 and 2018, while Republican Rodney Anderson won the District in 2014 and 2016 and Republican Linda Harper-Brown won the District in 2012. Defendants admit that the Court in *Perez v. Abbott*, 253 F. Supp. 3d 864, 901 n.45 (W.D. Tex. 2017), under a different standard, found that a former Legislature improperly used racial data in redistricting. Defendants also admit that Section 5 of the Voting Rights Act does not apply to Texas. Defendants deny the remaining allegations in this paragraph.

80. Denied.

81. Defendants lack knowledge or information sufficient to form a belief about whether Plaintiff's allegation about "statewide elections" includes primary elections and therefore deny this allegation. Defendants deny the remaining allegations in this paragraph.

82. Defendants lack knowledge or information sufficient to form a belief about whether Plaintiff's allegation about "statewide elections" includes primary elections and therefore deny this allegation. Defendants deny the remaining allegations in this paragraph.

83. Denied.

84. Defendants lack knowledge or information sufficient to form a belief about whether Plaintiff's allegation about "statewide elections" includes primary elections and therefore deny this allegation. Defendants deny the remaining allegations in this paragraph.

85. Defendants lack knowledge or information sufficient to form a belief about whether Plaintiff's allegation about "statewide elections" includes primary elections and therefore deny this allegation. Defendants deny the remaining allegations in this paragraph.

86. Denied.

87. Defendants admit that the 38th Congressional District is located in Harris County. Defendants deny the remaining allegations in this paragraph.

88. According to the 2006-2010 ACS data, the population of Harris County was 3,950,999. According to the 2015-2019 ACS data, the population of Harris County was 4,646,630, an increase of 695,631 residents. Defendant therefore deny Plaintiff's allegation that "Harris County's total population increased by nearly 640,000." According to the 2006-2010 ACS data, the Hispanic or Latino population of Harris County was 1,563,194. According to the 2015-2019 ACS data, the Hispanic or Latino population of Harris County was 1,995,115. Latinos therefore compromise 42.9% of Harris County's population and Defendants deny Plaintiff's claim that "Latinos now comprise 43%

of Harris County's population." According to the 2006-2010 ACS data, the White population of Harris County was 2,437,708. According to the 2015-2019 ACS data, the White population was 2,998,545. Defendants therefore deny the allegation that "[a]t the same time, the Anglo population of Harris County decreased by 40,053." Defendants deny the remaining allegations.

89. Defendants admit that according to the Texas Legislative Council's analysis of the ACS 2015-2019 Census data, under PLANC2100, Congressional Districts 2, 7, 8, 9, 10, 18, 22, 29, and 36 were located at least partially in Harris County, and that 29 was the only of those Districts to be Latino majority. Defendants further admit that Districts 2, 7, 8, 10, and 36 were primarily white, but deny that District 22 was primarily white. Defendants deny the remaining allegations in this paragraph.

90. Defendants admit that according to the Texas Legislative Council's analysis of 2016-2020 ACS data, under PLANC2100, Congressional District 29 had an HCVAP of 67.1%. Defendants admit that in the 2020 General Election District 29's SSVR was 58.8% and SSTO was 55.8%. Defendants further admit that Democrat Sylvia Garcia won District 29 in the 2018 and 2020 General Elections, and that Gene Green represented the District from 1993 until 2019. Defendants deny the remaining allegations in this paragraph.

91. Defendants admit that according to the Texas Legislative Council's analysis of the 2016-2020 ACS data, under PLANC2100, District 9 had a HCVAP of 26.5% and District 18 had an HCVAP of 28.9%). Defendants further admit that in the 2020 General Election, District 9 had a SSVR of 19.5% and an SSTO of 18.1%, while District 18 had an SSVR of 21.2% and SSTO of 19.6%. Defendants admit that Democrat Sheila Jackson Lee has represented District 18 from 1995 through the present and Al Green has represented District 9 from 2005 through the present. Defendants deny the remaining allegations in this paragraph.

92. Defendants admit that according to the Texas Legislative Council's analysis of the 2016-2020 ACS data, under PLANC2100, Districts 2, 7, 8, 10, 22, and 36 had HCVAPs of 24.1%, 22.5%, 16.5%,

21.1%, 21.5%, and 19.8%, respectively. Defendants further admit that during the 2020 General Election in 2020, SSVR in these districts was 17.4%, 15.5%, 10.8%, 14.5%, 16.2%, and 13.8%, and SSTO was 15.7%, 13.9%, 9.1%, 13.0%, 14.4%, and 11.8%, respectively. Defendants additionally admit that in the 2020 General Election, voters in these Districts elected Republican Dan Crenshaw, Democrat Lizzie Fletcher, Republican Kevin Brady, Republican Michael McCaul, Republican Troy Nehls, and Republican Brian Babin. Defendants deny the remaining allegations in this paragraph.

93. Defendants admit that the new Congressional District 38 is located in northwest Harris County and that white persons make up the majority of the citizens of voting age in this District. Defendants further admit that Districts 2 and 8 are majority white CVAP according to the Texas Legislative Council's analysis of the 2016-2020 ACS data. Defendants lack knowledge or sufficient information to form a belief about how Plaintiff defines "substantial Anglo pluralities" and therefore deny the allegations regarding Districts 7, 22, and 36. Defendants deny the remaining allegations in this paragraph.

94. Defendants admit that under the enacted map Congressional District 29 has an HCVAP of 62.2%, according to the Texas Legislative Council's analysis of the 2015-2019 ACS data. Defendants deny the remaining allegations in this paragraph.

95. Defendants admit that according to the Texas Legislative Council's analysis of the 2016-2020 ACS data, the enacted Congressional District 38 has an HCVAP of 18.6%. Defendants also admit that in the 2020 General Election, the SSVR was 13.2% and the SSTO was 12.1% in the new District 38. Defendants deny the remaining allegations in this paragraph.

96. Defendants admit that under PLANC2193 according to the Texas Legislative Council's analysis of the 2015-2019 ACS data, Districts 2, 7, 8, 22, and 36 have an HCVAP of 20.0%, 21.2%, 21.8%, 23.8%, and 21.1%, respectively. Defendants also admit that in the 2020 General Election, the SSVR of these districts was 14.8%, 14.3%, 16.0%, 17.1%, and 16.2%, respectively, and SSTO was

13.3%, 13.1%, 14.1%, 14.5%, and 14.2%, respectively. Defendants further admit that under PLANC2193, District 10 is not located in Harris County. Defendants deny the remaining allegations in this paragraph.

97. Defendants admit that under the enacted map, according to the Texas Legislative Council's analysis of the 2016-2020 ACS data, Congressional Districts 9 and 18 have HCVAPs of 24.6% and 29.1%, respectively. Defendants also admit that in the 2020 General Election, Districts 9 and 18 had SSVR of 19.0% and 21.5%, and SSTO of 17.1% and 19.9%, respectively. Defendants deny the remaining allegations in this paragraph.

98. Defendants admit that under the enacted map according to the Texas Legislative Council's analysis of the 2016-2020 ACS data, Congressional District 29 has an HCVAP 64.6%. Defendants also admit that in the 2020 General Election, District 29's SSVR was 56.2% and the SSTO was 53.1%. Defendants deny the remaining allegations in this paragraph.

99. Denied.

100. Defendants lack knowledge or information sufficient to form a belief about whether Plaintiff's allegation about "statewide elections" includes primary elections and therefore deny this allegation. Defendants deny the remaining allegations in this paragraph.

101. Defendants lack knowledge or information sufficient to form a belief about whether Plaintiff's allegation about "statewide elections" includes primary elections and therefore deny this allegation. Defendants deny the remaining allegations in this paragraph.

102. Defendants admit that certain legislators in the 87th Legislature had a stated goal of creating another "Latino electoral opportunity Congressional district" in Harris County. Defendants lack knowledge or information sufficient to form a belief about what any legislators' actual goal was in redistricting the Harris County portion of the Congressional map. Defendants lack knowledge or

information sufficient to form a belief about what "alternative plans" Plaintiffs are referring to and therefore deny this allegation.

103. Defendants deny that Senator Huffman made any reference to discussion with the OAG prior to making the quoted statement in this paragraph. Instead, the *entire* quote reads "Well, Senator Menendez, as I've explained before, the maps were drawn blind to race. Once they were drawn, they were checked for compliance. We were assured that all the existing minority opportunity districts, whether they be Black or Latino, were going to perform as such, and we saw no evidence, no strong basis in evidence that a new minority opportunity district should be drawn in the -- in the new maps." Defendants lack knowledge or information sufficient to form a belief about what "analysis" Plaintiff believes Senator Huffman considered but did not provide and therefore deny this allegation.

104. Defendants deny the allegations in the first two sentences of paragraph 104. Defendants lack knowledge or information sufficient to form a belief about the allegations in the remaining sentences of paragraph 104 and therefore deny the allegations. Defendants admit this paragraph describes and refers to the map found in Figure 10 but are unable to determine the source of this map or to verify its accuracy. Defendants deny that the map embedded in this paragraph supports the allegations made in Plaintiff's First Amended Complaint.

105. Defendants deny that the 2020 Census provides HCVAP figures. Defendants lack knowledge or information sufficient to form a belief about the HCVAP in Plaintiff's illustrative district and therefore deny this allegation. According to the Texas Legislative Council's analysis of 2016-2020 ACS Data for PLANC2193, Congressional District 38 has an HCVAP of 18.6%, which is not 31.5% from 50.8%. Defendants therefore also deny this allegation, as well as the remaining allegations in this paragraph.

106. Defendants lack knowledge or information sufficient to form a belief about whether Latino voters in illustrative district 38 are cohesive or how they have previously voted and therefore deny this

allegation. Defendants further lack knowledge or information sufficient to form a belief about whether Plaintiff's allegation about "statewide elections" includes primary elections and therefore deny this allegation.

107. Defendants lack knowledge or information sufficient to form a belief about whether Latino voters in illustrative district 38 are cohesive or how they have previously voted and therefore deny this allegation. Defendants further lack knowledge or information sufficient to form a belief about whether Plaintiff's allegation about "statewide elections" includes primary elections and therefore deny this allegation. This denial includes denial of footnote 6.

108. Denied.

109. Defendants admit the allegations in the first two sentences of paragraph 109. Defendants deny the remaining allegations in paragraph 109.

110. Admit.

111. Denied.

112. Defendants admit that Representative Hunter stated at the October 4 hearing that the Texas Legislative Council had hired Adam Foltz and that Rep. Hunter had asked it to do so. Defendants admit Adam Foltz was paid by the Texas Legislative Council, which hired him. Defendants deny that Foltz's role was "hidden" from members of the Redistricting Committee prior to September 29, 2021.

113. Defendants admit the first sentence of this paragraph. Defendants deny the second and third sentences in paragraph 113.

114. Denied.

115. Defendants deny that members of the House only considered House redistricting on October 12 and 13. Defendants admit that the final House redistricting plan was voted on by the House on October 13. Defendants admit that the introduction of the statewide proposal occurred on September 30, 2021.

116. Defendants lack knowledge or information sufficient to form a belief about what "numerous amendments" or "floor amendments" Plaintiff is referring to in this paragraph and therefore deny.

117. Defendants lack knowledge or information sufficient to form a belief about what "substantive detail" Plaintiff believed Rep Jetton did not provide and therefore deny. Defendants deny that the final configuration of HD118 was not approved of by a majority of the Bexar County delegation.

118. Admit.

119. Denied.

120. Defendants admit that former HD 118 was drawn in the way depicted but denies all remaining allegations in this paragraph.

121. Defendants admit that according to the 2016-2020 ACS Census data, the HCVAP of House District 118 under PLANH2100 was 67.5%. Defendants also admit that in the 2020 General Election, the SSVR was 59.5% and the SSTO was 55.7% in House District 118 under PLANH2100. Defendants deny the remaining allegations in this paragraph.

122. Defendants lack knowledge or information sufficient to form a belief about which "regular elections" Plaintiff is referring to and therefore deny this allegation.

123. Defendants admit the first paragraph. Defendants lack knowledge or information sufficient to form a belief about why Pacheco resigned and therefore deny this allegation.

124. Defendants admit John Lujan was elected to HD 118 in 2016 and 2021. Defendants lack knowledge or information sufficient to form a belief about how Plaintiff defines "low turnout" or determines a "Latino candidate of choice" and therefore deny these allegations.

125. Denied.

126. Defendants admit Rep. Jetton offered an amendment to HD118 during the House redistricting process. Defendants admit HD118 was left "largely intact" to the extent they understand

Plaintiff's meaning of that phrase. Defendants deny that a majority of the Bexar County delegation objected to HD 118's final configuration.

127. Defendants admit that current HD 118 is drawn in the way depicted but denies all remaining allegations in this paragraph

128. Defendants admit that according to the Texas Legislative Council's analysis of the 2016-2020 ACS data, under PLAN H2316, District 118 has a HCVAP of 55.9% and, under Plan H2100, 67.5%. Defendants further admit that in the 2020 General Election, former District 118 had a SSVR of 59.5 % and a SSTO of 55.7% and that current District 118 has a SSVR of 47.6% and SSTO of 43.9 %. Defendants deny the remaining allegations in this paragraph.

129. Denied.

130. Defendants lack knowledge or information sufficient to form a belief about whether Plaintiff's allegation about "statewide contests" includes primary elections and therefore deny this allegation. Defendants lack knowledge or information sufficient to form a belief about whether Plaintiff's claim that Latino voters "preferred" the same candidate means that they *voted* for that candidate and therefore deny this allegation.

131. Defendants lack knowledge or information sufficient to form a belief about whether Plaintiff's allegation about "statewide contests" includes primary elections and therefore deny this allegation. Defendants lack knowledge or information sufficient to form a belief about who Plaintiff believes are "Latino-preferred Latino candidates" and therefore deny this allegation. Defendants deny the remaining allegations

132. Defendants deny that HD 118 is no longer a Latino electoral opportunity district in the current map. Defendants deny the remaining allegations in this paragraph.

133. Defendants admit that the way in which HD 118 was drawn in H2176 is depicted in this paragraph and accompanying figure. Defendants deny the remaining allegations.

134. Defendants admit that the 2016-2020 ACS data, under PLAN H2176 District 118 has a 62.7.% HCVAP. Defendants further admit that in the 2020 General Election, under Plan H2176, District 118 had a SSVR of 55.0% and SSTO of 51.2%. Defendants deny the remaining allegations in this paragraph.

135. Defendants lack knowledge or information sufficient to form a belief about how Plaintiff defines "highly cohesive" and therefore deny this allegation. Defendants lack knowledge or information sufficient to form a belief about whether Plaintiff's allegation about "statewide contests" includes primary elections and therefore deny this allegation.

136. Defendants lack knowledge or information sufficient to form a belief about whether Plaintiff's allegation about "statewide contests" includes primary elections and therefore deny this allegation. Defendants lack knowledge or information sufficient to form a belief about who the "Latino-preferred Latino candidates" or what the "contests" are that Plaintiff references and therefore deny this allegation

137. Denied.

138. This claim has been dismissed – *see* Dkt. 675 at 20 – therefore, no answer will be provided. To the extent an answer is required, denied.

139. This claim has been dismissed – *see* Dkt. 675 at 20 – therefore, no answer will be provided. To the extent an answer is required, denied..

140. This claim has been dismissed – *see* Dkt. 675 at 20 – therefore, no answer will be provided. To the extent an answer is required, denied.

141. This claim has been dismissed – *see* Dkt. 675 at 20 – therefore, no answer will be provided. To the extent an answer is required, denied.

142. This claim has been dismissed – *see* Dkt. 675 at 20 – therefore, no answer will be provided. To the extent an answer is required, denied.

143. This claim has been dismissed – *see* Dkt. 675 at 20 – therefore, no answer will be provided. To the extent an answer is required, denied.

144. This claim has been dismissed – *see* Dkt. 675 at 20 – therefore, no answer will be provided. To the extent an answer is required, denied.

145. This claim has been dismissed – *see* Dkt. 675 at 20 – therefore, no answer will be provided. To the extent an answer is required, denied.

146. This claim has been dismissed – *see* Dkt. 675 at 20 – therefore, no answer will be provided. To the extent an answer is required, denied.

147. This claim has been dismissed – *see* Dkt. 675 at 20 – therefore, no answer will be provided. To the extent an answer is required, denied.

148. This claim has been dismissed – *see* Dkt. 675 at 20 – therefore, no answer will be provided. To the extent an answer is required, denied.

149. This claim has been dismissed – *see* Dkt. 675 at 20 – therefore, no answer will be provided. To the extent an answer is required, denied.

150. This claim has been dismissed – *see* Dkt. 675 at 20 – therefore, no answer will be provided. To the extent an answer is required, denied.

151. This claim has been dismissed – *see* Dkt. 675 at 20 – therefore, no answer will be provided. To the extent an answer is required, denied.

152. This claim has been dismissed – *see* Dkt. 675 at 20 – therefore, no answer will be provided. To the extent an answer is required, denied.

153. This claim has been dismissed – *see* Dkt. 675 at 20 – therefore, no answer will be provided. To the extent an answer is required, denied.

154. This claim has been dismissed – *see* Dkt. 675 at 20 – therefore, no answer will be provided. To the extent an answer is required, denied.

155. This claim has been dismissed – *see* Dkt. 675 at 20 – therefore, no answer will be provided. To the extent an answer is required, denied.

156. Defendants admit that underpopulation issues in El Paso required the removal of HD 76 from the final House plan. Defendants admit the final House plan included the pairing of two incumbents in the El Paso district. Defendants deny the remaining allegations.

157. Defendants admit that, under plan H2100, El Paso had six districts.

158. Defendants admit that the House districts in H2100 were drawn as depicted in this paragraph and accompanying figure.

159. Defendants admit that, based on ACS data, under plan H2100, Districts 74, 75, 76, 77, 78, and 79 have HCVAPs of 74.8%, 88.8%, 86.9%, 74.3%, 66.3%, and 79.2%, respectively. Defendants admit that, under plan H2100, Districts 74, 75, 76, 77, 78, and 79 have SSVRs and SSTOs as set forth in this paragraph. Defendants deny the remaining allegations in this paragraph.

160. Admit that these legislators won their elections in 2020.

161. Defendants lack knowledge or information sufficient to form a belief about how Plaintiff qualifies "few" in this paragraph and therefore denies this allegation.

162. Defendants lack knowledge or information sufficient to form a belief about how to measure whether a district "provide[s] Latino voters with the opportunity to elect their preferred representatives to the Texas House" and therefore deny this allegation. Defendants deny the remaining allegations in this paragraph

163. Admit.

164. Defendants admit that the El Paso districts in the final House map all deviate from the ideal population by less than 5%. Defendants deny the allegation in the last sentence of paragraph 164.

165. Defendants admit that Districts 69, 71, 72, 82, 83, 84, 86, 87, and 88 in the final House map all deviate from the ideal population by less than 5%. Defendants admit that, under Plan H2316, HD69 has a HCVAP of 15.1% and HD86 has a HCVAP of 24.1%.

166. Admit.

167. Defendants lack knowledge or information sufficient to form a belief about what Plaintiff means by "sizeable Latino communities" and therefore denies this allegation.

168. Defendants admit that, according to ACS data, under plan H2316, Districts 74, 75, 77, 78, and 79 have HCVAPs of 77.7%, 88.7%, 20.5%, 85.9%, 67.5%, and 76.2%, respectively. Defendants admit that, under plan H2316, Districts 74, 75, 77, 78, and 79 have SSVRs and SSTOs as set forth in this paragraph. Defendants deny the remaining allegations in this paragraph.

169. Defendants deny that the 2020 Census provided HCVAP data. Defendants admit that according to the Texas Legislative Council's analysis of the 2016-2020 ACS data, under PLAN H2316, District 81 has a 52.8% HCVAP. Defendants further admit that in the 2020 General Election, under Plan H2176, District 81 had a SSVR of 43.7% and SSTO of 36.5%.

170. Defendants admit that District 81 has been represented by Brooks Landgraf since 2015. Defendants deny the remaining allegations in paragraph 170.

171. Defendants lack knowledge or information sufficient to form a belief about whether Plaintiff's allegation about "statewide contests" includes primary elections and therefore deny this allegation. Defendants deny the remaining allegations.

172. Defendants admit Latino voters in Districts 74, 75, 77, 78, and 79 maintain an opportunity to elect their preferred candidates. Defendants lack knowledge or information sufficient to form a belief about whether Plaintiff's allegation about "statewide contests" includes primary elections and therefore deny this allegation. Defendants deny the remaining allegations.

173. Denied.

174. Defendants admit this paragraph describes and refers to maps found in Figures 21 and 22 but are unable to determine the source of these maps or to verify their accuracy. Defendants deny that the maps embedded in this paragraph support the allegations made in Plaintiff's First Amended Complaint. Defendants deny the remaining allegations in this paragraph.

175. Defendants admit this paragraph describes and refers to maps found in Figures 21 and 22 but are unable to determine the source of these maps or to verify their accuracy. Defendants deny that the maps embedded in this paragraph supports the allegations made in Plaintiff's First Amended Complaint. Defendants deny the remaining allegations in this paragraph.

176. Defendants lack knowledge or information sufficient to form a belief about the HCVAP in Plaintiff's illustrative districts and therefore deny the allegations in this paragraph.

177. Defendants deny that the 2020 Census provided HCVAP data. Defendants lack knowledge or information sufficient to form a belief about the "cohesiveness" of Latino voters in Plaintiff's illustrative districts and therefore deny the allegations in this paragraph.

178. Defendants lack knowledge or information sufficient to form a belief about the claims made in this paragraph regarding how Anglo and Latino voters would vote in the illustrative district in unspecified "contests" and therefore deny.

179. Denied.

180. Defendants admit the cases Plaintiff cites are cases involving voting and elections in Texas. Defendants deny the remaining allegations, including Plaintiff's characterization of those cases.

181. Defendants lack knowledge or information sufficient to form a belief about what Plaintiff believes constitutes "racially polarized voting" and therefore denies the allegations in this paragraph.

182. Denied.

183. Denied.

184. Defendants lack knowledge or information sufficient to form a belief about how Plaintiff has reached its conclusions in categorizing Texas legislators based on the color of their skin and therefore deny the allegations in this paragraph.

185. Defendants admit 63% of eligible Latino Texans and 70% of eligible Black Texans were registered to vote in the 2020 Presidential election, according to the Census Bureau Current Population Survey. Defendants deny the remaining allegations in this paragraph.

186. Defendants lack knowledge or information sufficient to form a belief about what Plaintiff considers to be a "Spanish surname" and what "Latino CVAP" share Plaintiff is referring to and, therefore, denies.

187. Denied.

188. Denied.

189. Denied.

190. Denied.

191. Denied.

192. Defendants admit certain congressional and legislative districts are geographically larger than others. Defendants deny the geography of any district impedes the ability of minority voters to participate in the political process.

193. Denied.

## CAUSE OF ACTION

194. Defendants incorporate their answers to all preceding paragraphs as if fully set forth herein.

195. Denied. Section 2 of the Voting Rights Act provides: "No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the

United States to vote on account of race or color, or in contravention of the guarantees set forth in section 10303(f)(2) of this title, as provided in subsection (b)."

196. Denied. Section 2 of the Voting Rights Act  provides: "A violation of subsection (a) is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice."

197. Denied.

198. Denied.

199. Denied.

200. Denied.

**PRAYER FOR RELIEF**

i.    Defendants deny that Plaintiff is entitled to any of the relief requested herein.

ii.   Defendants deny that Plaintiff is entitled to any of the relief requested herein.

iii.  Defendants deny that Plaintiff is entitled to any of the relief requested herein.

iv.   Defendants deny that Plaintiff is entitled to any of the relief requested herein.

v.    Defendants deny that Plaintiff is entitled to any of the relief requested herein.

vi.   Defendants deny that Plaintiff is entitled to any of the relief requested herein.

vii.  Defendants deny that Plaintiff is entitled to any of the relief requested herein.

viii. Defendants deny that Plaintiff is entitled to any of the relief requested herein.

**DEFENDANTS' AFFIRMATIVE AND OTHER DEFENSES**

1.    This Court lacks subject-matter jurisdiction to consider all claims asserted in Plaintiff's Amended Complaint.

2.  Plaintiff has failed to state a claim upon which relief can be granted.

3.  Defendants assert all applicable immunities to Plaintiff's claims, including but not limited to their entitlement to Eleventh Amendment and sovereign immunity.

4.  Pursuant to 42 U.S.C. § 1988(b) and 52 U.S.C. § 10310(e), Defendants will be entitled to recover their attorney's fees if they are the prevailing parties.

5.  Defendants assert that imposing liability under Section 2 of the Voting Rights Act is, in this case, unconstitutional because it is inconsistent with the Equal Protection Clause of the 14th Amendment to the U.S. Constitution.

6.  Defendants assert that imposing liability under Section 2 of the Voting Rights Act is, in this case, unconstitutional because it would exceed Congress's enforcement power under the 14th and 15th Amendments to the U.S. Constitution. Imposing liability here would not be congruent and proportional to the enforcement of the 14th Amendment or 15th Amendment.

7.  Defendants reserve the right to assert additional affirmative and other defenses as they may become apparent in the factual development of this case.

Date: December 28, 2022

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410

Respectfully submitted.

*/s/ William T. Thompson*
WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
will.thompson@oag.texas.gov
Tex. State Bar No. 24088531

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on December 28, 2022, and that all counsel of record were served by CM/ECF.

*/s/ William T. Thompson*
William T. Thompson