IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>GREG ABBOTT, in his official capacity as Governor of the State of Texas, *et al.*,<br><br>*Defendants*. | CIVIL ACTION NO.<br>3:21-cv-00259-DCG-JES-JVB<br>[Consolidated Action: Lead Case] |

## PRIVATE PLAINTIFFS' SECOND SUPPLEMENTAL BRIEF REGARDING THE LEGISLATIVE PRIVILEGE (*LULAC V. PATRICK* REMAND)

LULAC Plaintiffs previously filed motions to compel the production of documents withheld by legislators, legislative staff, and the Lieutenant Governor (collectively, the "Respondents") based on, among other things, assertions of the legislative privilege. *See* Dkts. 447 and 582.[1]  The United States, in a motion to enforce filed before LULAC Plaintiffs' motions, sought a number of the same documents.  Dkt. 351.

On July 25, 2022, the Court granted the United States' motion to enforce.  Dkt. 467 at 27. Respondents appealed, and the Fifth Circuit stayed this Court's July 25, 2022 Order pending the Fifth Circuit's resolution of *LULAC Texas v. Hughes*, 68 F.4th 228 (5th Cir. 2023).  *LULAC v. Patrick,* No. 22-50662, Dkt. 30 (5th Cir.).  After *Hughes* was decided, the United States proposed

---

[1] Those individuals are:  Lieutenant Governor Dan Patrick, State Senator Joan Huffman, Texas House of Representatives Speaker Dade Phelan, State Representative Todd Hunter, State Representative Brooks Landgraf, State Representative J.M. Lozano, State Representative Jacey Jetton, and State Representative Ryan Guillen (Dkt. 447); and Anna Mackin (Dkt. 582).

1

that the Fifth Circuit either remand the instant matter or allow the parties an opportunity to seek an indicative ruling from this Court. *See* Dkt. 715 at 1-2. On July 18, 2023, the Fifth Circuit vacated this Court's July 25, 2022 Order and remanded the matter back to this Court; in that two-sentence order, the Fifth Circuit did not address the merits of the parties' positions. *See* Dkt. 715-1. This Court then set forth a briefing schedule for the parties to address the impact of *Harkins* and *Hughes* on these documents. *See* Dkt. 719 at 1.

Pursuant to that schedule, Private Plaintiffs submit this brief to address documents that LULAC Plaintiffs sought and that were the subject of the Court's now-vacated July 25, 2022 Order. For the reasons in LULAC Plaintiffs' prior motions to compel, and in Private Plaintiffs' June 24, 2023 supplemental brief regarding the legislative privilege (Dkt. 709) ("First Supplemental Brief"),[2] Private Plaintiffs respectfully request that the Court grant their motions as to those documents. *See* Dkts. 447 and 582. Those documents are listed in Exhibit A.[3]

### I. After *Harkins* and *Hughes*, the Legislative Privilege Remains a Qualified Privilege That Must be Strictly Construed.[4]

Over 50 years ago, faced with the argument that the privilege protects "all conduct 'related to the due functioning of the legislative process,'" the Supreme Court emphasized that it had never "in any sense impl[ied] . . . that everything that 'related' to the office of a [legislator] was shielded

---

[2] In support of disclosure of the documents at issue here, Private Plaintiffs incorporate by reference and re-urge arguments made in LULAC Plaintiffs' motions to compel, Dkts. 447 and 582, and in Private Plaintiffs' First Supplemental Brief, Dkt. 709.

[3] Private Plaintiffs listed some of these documents in their exhibits to their First Supplemental Brief. To aid the Court's review, Private Plaintiffs note in the rightmost column of Exhibit A where in the First Supplemental Brief exhibits an entry previously appeared.

[4] Private Plaintiffs respectfully disagree with the decisions in *Harkins* and *Hughes* regarding the legislative privilege, and hereby preserve their arguments in their earlier briefing regarding the legislative privilege, incorporated by reference here. *See* Dkt. 709, Ex. A (listing pending motions). As to the documents at issue here, Private Plaintiffs also maintain their previously filed joinders in motions filed by the United States. Dkts. 447 and 582.

2

by the [Speech or Debate] Clause." *United States v. Brewster*, 408 U.S. 501, 513-14 (1972). The Court also noted that it would be neither "sound [nor] wise, simply out of an abundance of caution to doubly insure legislative independence, to extend the privilege beyond its intended scope, its literal language, and its history, to include all things in any way related to the legislative process." *Id.* at 516.

The Court then put a finer point on that, stating that the legislative privilege applies only to "integral part[s] of the deliberative and communicative processes" and "only when necessary to prevent indirect impairment of such deliberations." *Gravel v. United States*, 408 U.S. 606, 625 (1972). So, for example, "[a] promise to deliver a speech, to vote, or to solicit other votes at some future date is not" protected by the privilege. *United States v. Helstoski*, 442 U.S. 477, 490 (1979). "Likewise, a *promise* to introduce a bill is not a legislative act" protected by the privilege. *Id.* Thus, far from endorsing that the legislative privilege is "all-encompassing," *Gravel*, 408 U.S. at 625, Supreme Court precedent has long focused on protecting only "inquir[y] into the *motives* of legislators," *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (emphasis added) (quoting *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951)).

Neither *Harkins* nor *Hughes* deviated from that principle, especially in light of the Fifth Circuit's earlier statement that the legislative privilege is "qualified" and "must be strictly construed." *Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 624 (5th Cir. 2017) (quoting *Perez v. Perry*, No. SA-11-cv-360-OLG-JES-XR, 2014 WL 106927, at *1, 2 (W.D. Tex. Jan. 8, 2014)). After all, in noting that "the Speech or Debate Clause must be read broadly," the Supreme Court emphasized the clause could not be read to protect "all things in any way related to the legislative process." *Brewster*, 408 U.S. at 516. Thus, read in concert with Supreme Court precedent and *Jefferson*, statements from *Harkins* and *Hughes* must mean only one

3

thing: the privilege continues to protect only opinions, motives, recommendations, or advice about legislative decisions. *See* First Supplemental Brief, Dkt. 709 at 2-6.

## II. The Legislative Privilege Does Not Protect Fact-based Information.

Against that background, fact-based information must be disclosed. Fact-based information is not an integral part of the deliberative and communicative process and does not in and of itself reflect a legislator's opinions or motives. *See* First Supplemental Brief, Dkt. 709 at 8-13. The legislative privilege therefore does not shield this information. *See* Ex. B.

*Harkins* and *Hughes* did not change that principle, as discussed in Private Plaintiffs' First Supplemental Brief. *See* Dkt. 709 at 8-9. In *Hughes*, the parties "agree[d] that the documents [fell] within the privilege's scope," and the plaintiffs in that appeal argued only that the privilege "was waived" and that it "must yield." 68 F.4th at 236. Thus, in holding the documents were privileged, the *Hughes* court in no way rejected the notion that fact-based information is exempt from the privilege. Indeed, the Fifth Circuit noted that that "[t]he district court properly concluded that the documents at issue '[were] subject to legislative privilege,'" *see id.*, a conclusion the district court reached after articulating that fact-based information was *not* privileged, *La Union Del Pueblo Entero v. Abbott*, No. 5:21-cv-844-XR, 2022 WL 1667687, at *2 (W.D. Tex. May 25, 2022).[5]

Both the deliberative process and attorney-client privileges are instructive for this distinction between fact-based information and privileged thoughts, motives, or acts. First Supplemental Brief, Dkt. 709 at 10-13. Similar to the legislative privilege, the deliberative process

---

[5] Similarly, after *In re Hubbard*, 803 F.3d 1298 (11th Cir. 2015)—a case cited in the discussion regarding the legislative privilege in *Harkins* and *Hughes*—some courts in the Eleventh Circuit have continued to hold that fact-based information is exempt from the legislative privilege. *See Pernell v. Lamb*, No. 4:22-cv-304-MW, 2023 WL 2347487, at *3 (N.D. Fla. Feb. 22, 2023), *appeal filed sub nom.*, *Pernell v. Andrade*, No. 23-10616 (11th Cir. Mar. 1, 2023).

privilege "is rooted in 'the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news.'" *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001)). And for governmental officials, the attorney-client privilege is rooted in "encourag[ing] full and frank communication" and "aid[ing] government entities and employees in obtaining legal advice founded on a complete and accurate factual picture." *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 169-170 (2011). Courts have long emphasized the importance of being "free from the consequences or the apprehension of disclosure" when obtaining legal advice. *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888).[6] Thus, as with the deliberative and attorney-client privilege, fact-based information remains outside the scope of the legislative privilege. *See* Dkt. 709 at 10-13 (collecting examples of fact-based information subject to disclosure). The documents in Exhibit B therefore must be produced.

### III. The Lieutenant Governor May Not Assert on the Legislative Privilege

The Lieutenant Governor may not invoke the legislative privilege because he is an *executive branch* official, and he does not have a blank check to invoke the privilege simply because, at certain times, he interacted with legislators. *See* First Supplemental Brief, Dkt. 709 at 13-18. Documents in Exhibit C must therefore be produced.

"Legislatures may not of course acquire power by an unwarranted extension of privilege," *Tenney,* 341 U.S. at, 376, "nor may [the privilege's] limits be established by the Legislative Branch," *Gravel*, 408 U.S. at 624 n.15. Indeed, the Supreme Court has long emphasized that it is

---

[6] Counsel from the Office of the Attorney General appear to agree as much, since they recently attempted to draw an analogy between the attorney-client privilege and the legislative privilege in an appeal pending before the Fifth Circuit. *See La Union del Pueblo Entero v. Bettencourt*, No. 23-50201 (5th Cir.), Appellants' Opening Brief, Dkt. 68 at 37 ("That is sensible because the purpose of the [attorney-client] privilege is to encourage communications between two parties. . . . So it is the same with the legislative privilege.").

5

"essential" "that the persons intrusted with power in any" branch of government "shall not be permitted to encroach upon the powers confided to the others, but that each shall by the law of its creation be limited to the exercise of the powers appropriate to its own department and no other." *Kilbourn v. Thompson*, 103 U.S. 168, 191 (1880). To that end, the legislative privilege is "invocable only by the [legislator] or by [a legislative] aide on the [legislator's] behalf." *Gravel*, 408 U.S. at 622. And even where the privilege may be invoked, the privilege "belongs" only "to the legislator whose legislative act is involved in the evidence[.]" 26A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 5675 (1st ed. Apr. 2023 update). Consistent with that approach, *Hughes* speaks only of "[s]tate lawmakers" being able to "invoke [the] privilege." 68 F.4th at 235, 237.

To the extent that *Hughes* looks to caselaw regarding legislative *immunity*, the same is generally true, although in rare exceptions, courts have concluded that non-legislators may rely on legislative immunity only to the extent they "perform legislative functions." *Bogan*, 523 U.S. at 55. To determine whether one of those rare exceptions applies to federal executive branch officials, the Supreme Court has looked to the executive's responsibilities under the U.S. Constitution. *Edwards v. United States*, 286 U.S. 482, 490 (1932); *Kilbourn*, 103 U.S. at 190–91; *see also League of United Latin Am. Citizens v. Abbott ("LULAC")*, No. 3:21-cv-259-DCG-JES-JVB, 2022 WL 3233406, at *2 (W.D. Tex. Aug. 10, 2022) (Dkt. 526 at 2-3) (examining Texas Constitution and caselaw to determine that Governor performs executive—not legislative—function in calling special session). So, for example, the President performs a legislative function in signing or vetoing a bill. *Bogan*, 523 U.S. at 55 (citing *Edwards*, 286 U.S. at 490). But that does not mean, by extension, any action that the President performs relating to legislation constitutes a legislative function. That conclusion "would risk intrusion by the Executive . . . into

6

the sphere of protected legislative activities," and would fail "to preserve the constitutional structure of separate, coequal and independent branches of government" served by the Speech or Debate Clause, *Helstoski*, 442 U.S. at 491.

Allowing the Lieutenant Governor to invoke the privilege would defy that precedent. The Texas Constitution specifies that the Lieutenant Governor is a member of the executive branch. Tex. Const., art. IV, § 1. Although the Texas Constitution also identifies the Lieutenant Governor as "President of the Senate," the Texas Constitution explicitly restricts when the Lieutenant Governor may perform a legislative function, such that he may "debate and vote" only when the Senate is "in Committee of the Whole," and may "give the casting vote" only "when the Senate is equally divided[.]" Tex. Const., art. IV, § 16(b). Beyond that, no other branch "shall exercise any power properly attached" to the legislative branch, "except in the instances . . . expressly permitted" by the Texas Constitution. Tex. Const., art. II, § 1; *see also Aleman v. Texas Med. Bd.*, 573 S.W.3d 796, 810 n.1 (Tex. 2019) (Blacklock, J., concurring) ("Article II, Section 1 of the Texas Constitution, our state's separation-of-powers clause, has been understood to prohibit the legislature from delegating to executive branch agencies the authority to make law."). The Lieutenant Governor does not perform—and has not performed—a legislative function, *see* Tex. Const., art. II, § 1, and thus cannot invoke the legislative privilege, *see Bogan*, 523 U.S. at 55; *see also LULAC*, 2022 WL 3233406, at *2 (Dkt. 526 at 3).

Accordingly, the Texas Constitution forecloses the ability for the Lieutenant Governor to invoke the legislative privilege *carte blanche*. Concluding otherwise would result in "an unwarranted extension of [the] privilege," *Tenney*, 341 U.S. at 376, defying the "separation of powers" served by the privilege, *Hughes*, 68 F.4th at 237. In a similar vein, permitting a legislator to delegate the privilege to the Lieutenant Governor for tasks unrelated to his legislative function

runs afoul of the Supreme Court's admonition that the privilege's "limits" may not "be established by the Legislative Branch[.]" *Gravel*, 408 U.S. at 624 n.15.

In the privilege log and parties' meet and confers, the Lieutenant Governor made no attempt to show that withheld documents in Exhibit C relate to his serving on a Committee of the Whole or casting a tie-breaking vote. *See* Ex. C; *see also* Dkt. 447-5. The Lieutenant Governor therefore may not invoke the legislative privilege over those documents. And because all but a handful of the documents in the possession of the Lieutenant Governor were never shared with a legislator, those documents could not have been brought into the legislative process, and thus no legislator may claim these documents as privileged.[7] *See infra*, Section V (Waiver); *see also* First Supplemental Brief, Dkt. 709 at 13-18.

### IV. The Legislative Privilege Does Not Protect Information Outside the Period of Enactment of the Challenged Legislation.

Documents created outside the period of enactment of the redistricting legislation must be disclosed. *See* Ex. D; *see also* First Supplemental Brief, Dkt. 709 at 7-8. The Supreme Court has repeatedly emphasized that the legislative privilege covers only "integral steps in the legislative process." *Bogan*, 523 U.S. at 55; *see also Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 504 (1975); *Gravel*, 408 U.S. at 625. To determine whether evidence relates to an integral step in the legislative process—that is, whether it "fall[s] within the 'legitimate legislative sphere'"—courts must "look to see whether the activities took place 'in a session of the [Legislature] by one of its members in relation to the business before it.'" *Eastland*, 421 U.S. at 503–04 (citing *Kilbourn*, 103 U.S. at 204).

---

[7] Consequently, disclosure of those documents could not chill or stunt the legislative process because those documents were never brought into process.

*Hughes* squarely aligns with this precedent, as information preceding the Census release or following enactment of the challenged redistricting plans necessarily does not reflect "actions that occurred *within* the sphere of legitimate legislative activity or *within* the regular course of the legislative process." 68 F.4th at 235 (emphasis added) (quotations omitted). After all, a redistricting bill could not have been introduced or considered prior to the release of the Census, and a legislator's thoughts or actions would have no effect on any legislation *after* it was sent to the Governor.

In their response to Private Plaintiffs' First Supplemental Brief, Respondents have relied on reasoning from *Almonte v. City of Longbeach*—a case from the Second Circuit—to argue otherwise, but *Almonte* is inapposite. 478 F.3d 100 (2nd Cir. 2007). Primarily, Respondents have pointed to *Almonte's* statement that "legislative immunity cloaks . . . discussions the [city council members] may have held, and any agreements they may have made, regarding the new budget in the months preceding the actual vote." 478 F.3d at 107. But the Second Circuit's analysis runs afoul of the Supreme Court's statements that "[a] promise to deliver a speech, to vote, or to solicit other votes at some future date is not 'speech or debate'" and that "a *promise* to introduce a bill is not a legislative act." *Helstoski*, 442 U.S. at 490. And it ignores the Supreme Court's emphasis that "we look to see whether the activities took place 'in a session of the House by one of its members in relation to the business before it.'" *Eastland*, 421 U.S. at 503. Further, *Almonte* is distinguishable: unlike the budget at issue in *Almonte*, discussions of a new redistricting plan are merely theoretical before the Census releases the population data that determines where new district boundaries can and must be drawn. Moreover, *Almonte* does not address documents that *followed* the enactment of any challenged legislation. *See* 478 F.3d at 107. As such, *Almonte* does not change the rule that information outside the period of enactment must be disclosed.

9

Because documents outside the period of enactment cannot relate to *integral* steps in the legislative process, the documents listed in Exhibit D must be disclosed.

### V. Respondents Have Waived the Privilege Over Information Shared Outside the Legislative Process.

Respondents have waived the privilege over documents in Exhibit E. *See* First Supplemental Brief, Dkt. 709 at 17-18. The Fifth Circuit emphasized that communications with third parties may be privileged only where legislators have "brought third parties *into* the process," and that the privilege is waived when legislators "sen[t] privileged documents to third parties *outside* the legislative process." *Hughes*, 68 F.4th at 237. And as expressed in Private Plaintiffs' First Supplemental Brief, *Hughes* suggests that a legislator brings a third party into the process only when the legislator *solicits* the specific evidence at issue.[8] Dkt. 709 at 17-18.

That reasoning aligns with the Supreme Court's observation that, for example, "Members of Congress are constantly in touch with the Executive Branch of the Government and with administrative agencies—they may cajole, and exhort with respect to the administration of a federal statute—but such conduct, though generally done, is not protected legislative activity." *Gravel*, 408 U.S at 625. The reverse is also true. When a member of the executive branch "exhorts" or "cajoles" a legislator about redistricting, that activity likewise is not legislative and not legislatively privileged.

Because Respondents have failed to show that the documents in Exhibit E reflect instances where a legislator affirmatively brought a third party into the legislative process, the privilege has been waived for that evidence. *See* First Supplemental Brief, Dkt. 709 at 17-18.

---

[8] Further, even for information a legislator solicits regarding legislation, the privilege is less strong "when applied to officers or employees of a legislative body, rather than to legislators themselves." *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967).

10

## VI. In This Challenge to Statewide Redistricting Plans, the Privilege—Where Applicable—Must Yield.

Even where the privilege applies, this suit presents an extraordinary circumstance where the privilege must yield because it challenges a *sui generis* process: statewide redistricting. *See* First Supplemental Brief, Dkt. 709 at 18-21. All documents in Exhibit A must be produced.

Because "[r]edistricting involves the establishment of the electoral structure by which the legislative body becomes duly constituted," it "directly involves the self-interest of the legislators themselves." *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 304 (D. Md. 1992). And so, "the natural corrective mechanisms built into our republican system of government offer little check upon the very real threat of 'legislative self-entrenchment[.]'" *Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 337 (E.D. Va. 2015).

That is exactly when the legislative privilege must yield. Indeed, the Supreme Court has emphasized that the legislative privilege should not apply when "Congress is illequipped" to discipline or investigate itself. *Brewster*, 408 U.S. at 518. That is because "the shield" of the legislative privilege "does not extend beyond what is necessary to preserve the integrity of the legislative process." *Id.* at 517. Indeed, the legislative privilege ultimately must serve "the rights of the people to representation in the democratic process." *Spallone v. United States*, 493 U.S. 265, 279 (1990). Because racially discriminatory intent and effects in redistricting thwart that democratic process, the privilege must yield here.[9] *See* Ex. A.

Other cases on which Respondents have relied—all of which are outside of this Circuit— do not counsel otherwise. *See Lee v. City of Los Angeles*, 908 F.3d 1175 (9th Cir. 2018); *In re*

---

[9] As noted in Private Plaintiffs' First Supplemental Brief, neither in *Harkins* nor *Hughes* did the Fifth Circuit reject the five-fact balancing test to determine whether the privilege should yield. Dkt. 709 at 20 n.5. Regardless of whether that test governs the Court's analysis, the privilege should still yield.

11

*N.D. Legislative Assembly*, 70 F.4th 460 (8th Cir. 2023); *Common Cause Fla. v. Byrd*, 2023 WL 3676796 (N.D. Fla. May 25, 2023). *Lee* is distinguishable given that it involved local—not statewide—redistricting. First Supplemental Brief, Dkt. 709 at 21. And *Lee*, *In re North Dakota Legislative Assembly*, and *Common Cause Florida* all fail to acknowledge the unique nature of a redistricting lawsuit, especially given the risk of self-entrenchment and the threat to the democratic process. Thus, the reasoning in all three cases run afoul of *Brewster*, *Spallone*, and other Supreme Court precedent addressing when the privilege does not serve the public good, and contravene the law of this Circuit. Consistent with that precedent, the privilege must yield here. *See* Ex. A.

## VII. Conclusion

For the foregoing reasons, Private Plaintiffs respectfully request that the Court grant their prior motions to compel, Dkts. 447 and 582, and order the production of documents listed in Exhibit A.

Dated: August 10, 2023

Respectfully submitted,

*s/ Nina Perales*
Nina Perales
Texas Bar No. 24005046
Fátima Menendez
Texas Bar No. 24090260
Kenneth Parreno
Massachusetts Bar No. 705747
Julia Longoria
Texas Bar No. 24070166
MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL FUND
110 Broadway, Suite 300
San Antonio, TX 78205
(210) 224-5476
nperales@maldef.org
fmenendez@maldef.org
kparreno@maldef.org
jlongoria@maldef.org

*ATTORNEYS FOR LULAC PLAINTIFFS*

Chad W. Dunn (Tex. Bar No. 24036507)
Brazil & Dunn
4407 Bee Caves Road
Building 1, Ste. 111
Austin, TX 78746
(512) 717-9855
chad@brazilanddunn.com

Mark P. Gaber*
Mark P. Gaber PLLC
P.O. Box 34481
Washington, DC 20043
(715) 482-4066
mark@markgaber.com

Jesse Gaines* (Tex. Bar No. 07570800)
P.O. Box 50093
Fort Worth, TX 76105
(817) 714-9988
gainesjesse@ymail.com

Molly E. Danahy*
P.O. Box 26277
Baltimore, MD 21211
(208) 301-1202
danahy.molly@gmail.com

Sonni Waknin*
10300 Venice Blvd. # 204
Culver City, CA 90232
(732) 610-1283
sonniwaknin@gmail.com

*Admitted *pro hac vice*

*Counsel for Brooks Plaintiffs*

*ATTORNEYS FOR BROOKS PLAINTIFFS*

*/s/ Noor Taj*
Noor Taj*
P.A. State Bar No. 309594
Hilary Harris Klein*
N.C. State Bar No. 53711
Mitchell Brown*
N.C. State Bar No. 56122

13

Katelin Kaiser*
N.C. State Bar No. 56799*
SOUTHERN COALITION FOR SOCIAL JUSTICE
1415 West Highway 54, Suite 101
Durham, NC 27707
Telephone: 919-323-3380
Fax: 919-323-3942
noor@scsj.org
hilaryhklein@scsj.org
mitchellbrown@scsj.org
katelin@scsj.org

David A. Donatti
TX Bar No. 24097612
Ashley Harris
Texas Bar No. 24078344
Thomas Buser-Clancy
Texas Bar No. 24123238
ACLU FOUNDATION OF TEXAS, INC.
P.O. Box 8306
Houston, TX 77288
Tel. (713) 942-8146 Fax. (713) 942-8966
ddonnati@aclutx.org
aharris@aclutx.org
tbuser-clancy@aclutx.org

Jerry Vattamala*
N.Y. State Bar No. 4426458
Susana Lorenzo-Giguere*
N.Y. State Bar No. 2428688
Patrick Stegemoeller*
N.Y. State Bar No. 5819982
ASIAN AMERICAN LEGAL DEFENSE AND EDUCATION FUND
99 Hudson Street, 12th Floor
New York, NY 10013
jvattamala@aaldef.org
slorenzo-giguere@aaldef.org
pstegemoeller@aaldef.org

Yurij Rudensky*
New York Bar No. 5798210
BRENNAN CENTER FOR JUSTICE AT NYU SCHOOL OF LAW
120 Broadway, Suite 1750

New York, NY 10271
Tel: (646) 292-8310
Fax: (212) 463-7308
yurij.rudensky@nyu.edu
*Admitted *pro hac vice*

*ATTORNEYS FOR FAIR MAPS PLAINTIFFS*

s/ Lindsey B. Cohan
Lindsey B. Cohan
Texas Bar No. 24083903
DECHERT LLP
515 Congress Avenue, Suite 1400
Austin, TX 78701
(512) 394-3000
*lindsey.cohan@dechert.com*

Jon Greenbaum*
Ezra D. Rosenberg*
Pooja Chaudhuri*
Sofia Fernandez Gold*
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street, Suite 900
Washington, DC 20005
(202) 662-8600
*jgreenbaum@lawyerscommittee.org*
*erosenberg@lawyerscommittee.org*
*pchaudhuri@lawyerscommittee.org*
*sfgold@lawyerscommittee.org*

Neil Steiner*
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3822
*neil.steiner@dechert.com*

Robert Notzon
Texas Bar No. 00797934
THE LAW OFFICE OF ROBERT NOTZON
1502 West Avenue
Austin, Texas 78701
(512) 474-7563

15

*robert@notzonlaw.com*

Gary Bledsoe
Texas Bar No. 02476500
THE BLEDSOE LAW FIRM PLLC
6633 Highway 290 East #208
Austin, Texas 78723-1157
(512) 322-9992
*gbledsoe@thebledsoelawfirm.com*
*Attorney only as to Texas NAACP's claims related to Texas state senate and state house plans*

Janette M. Louard
Anthony P. Ashton
Anna Kathryn Barnes
NAACP OFFICE OF THE GENERAL COUNSEL
4805 Mount Hope Drive
Baltimore, MD 21215
(410) 580-577
*jlouard@naacpnet.org*
*aashton@naacpnet.org*
*abarnes@naacpnet.org*
*Attorneys appearing of counsel*

\*Admitted *pro hac vice*

*ATTORNEYS FOR THE TEXAS STATE CONFERENCE OF NAACP*

*s/ George Quesada*
George (Tex) Quesada
Texas Bar No. 16427750
Sean J. McCaffity
Texas Bar No. 24013122
SOMMERMAN, MCCAFFITY, QUESADA & GEISLER, L.L.P.
3811 Turtle Creek Boulevard, Suite 1400
Dallas, Texas 75219-4461
(214) 720-0720
*quesada@textrial.com*
*smccaffity@textrial.com*

Joaquin Gonzalez
Texas Bar No. 24109935

        Attorney at Law
        1055 Sutton Dr.
        San Antonio, TX 78228
        *jgonzalez@malc.org*

        *ATTORNEYS FOR MEXICAN AMERICAN LEGISLATIVE CAUCUS PLAINTIFFS*

        Gary Bledsoe
        Texas Bar No. 02476500
        THE BLEDSOE LAW FIRM PLLC
        6633 Highway 290 East #208
        Austin, Texas 78723-1157
        Telephone: 512-322-9992
        *gbledsoe@thebledsoelawfirm.com*

        *ATTORNEY FOR CONGRESSPERSONS*

        *s/ Martin Golando*
        Martin Golando
        Texas State Bar No. 24059153
        Attorney at Law
        2326 W. Magnolia
        San Antonio, Texas 78201
        (210) 471-1185
        *Martin.Golando@gmail.com*

        *ATTORNEY FOR TREY MARTINEZ FISCHER*

## **CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that she has electronically submitted a true and correct copy of the above and foregoing via the Court's electronic filing system on the 10th day of August 2023.

        */s/ Nina Perales*
        Nina Perales