**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, | § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | Case No. 3:21-cv-00259 [Lead Case] |
| GREG ABBOTT, *et al.*, | § § § | |
| *Defendants.* | § § | |
| UNITED STATES OF AMERICA, | § § | |
| *Plaintiff,* | § § | |
| v. | § § | Case No. 3:21-cv-00299 [Consolidated Case] |
| STATE OF TEXAS, *et al.*, | § § § | |
| *Defendants.* | § § | |

**STATE DEFENDANTS' AND LEGISLATIVE SUBPOENA RECIPIENTS'**
**SUPPLEMENTAL BRIEF REGARDING *LULAC v. PATRICK***

## INTRODUCTION

This Court ordered the parties to submit supplemental briefs to address the Fifth Circuit's order vacating this Court's July 25, 2022 Order, ECF 467. *See* Order, *LULAC v. Patrick*, No. 22-50662 (5th Cir. July 18, 2023). Plaintiffs repeat their prior arguments—and add very little—in their second supplemental briefs. The legislators already extensively addressed Plaintiffs' arguments and explained why the Fifth Circuit's recent decisions foreclose additional discovery from the legislators. *See* Defs & Legislators 1st Supp. Br. at 4-24; *see also La Union Del Pueblo Entero v. Abbott* ("*Hughes*"), 68 F.4th 228 (5th Cir. 2023). The legislators incorporate by reference the arguments they raised in their first supplemental brief and will focus on Plaintiffs' key arguments here. This Court should follow the Fifth Circuit's decisions in *Hughes* and *Patrick* and deny all pending discovery motions that implicate legislative-privilege assertions. The legislators also inform the Court that, on August 25, 2023, the panel in *Jackson Municipal Airport Authority v. Harkins* withdrew its May 10, 2023 published decision (67 F.4th 678) and substituted it with an unpublished decision (2023 WL 5522213). On August 29, 2023, the en banc Fifth Circuit vacated the unpublished *Harkins* decision and granted rehearing in that case. The legislators explain below why these developments further support denying all pending motions.

## BACKGROUND

Plaintiffs sought redistricting-related documents from legislators and staff. This Court granted the United States' motion to compel documents withheld for privilege, ECF 351, in large part and ordered the production of documents, ECF 467. The Court "'strictly construed'" the privilege and followed the district court's now-repudiated decision in *Hughes*, which also involved discovery requests of the Texas Legislature in another Voting Rights Act challenge. *Id.* at 5-7. The Court also applied the same five-factor balancing test as the *Hughes* district court to conclude that the legislative privilege should yield. *See id.* at 8-12. Private Plaintiffs served similar subpoenas and similar motions to compel. *See* ECF 447; ECF 582.

Legislators appealed the order compelling disclosure of documents. ECF 479. The Fifth Circuit stayed this Court's order pending its decision in *Hughes*. Stay Order, *LULAC v. Patrick*, No. 22-50662 (5th Cir. July 27, 2022) (ECF 30). The Fifth Circuit then decided *Hughes*, unanimously reversing the order compelling the disclosure of legislatively privileged documents in its entirety. In *Patrick*, after *Hughes* was decided, the Fifth Circuit vacated this Court's July 25 Order and remanded. *See* Order of July 18, 2023, *Patrick*, No. 22-50662.

## ARGUMENT

**I.    Plaintiffs' attempt to narrow the legislative privilege directly contradicts *Hughes*.**

Plaintiffs raise no groundbreaking arguments in their second supplemental briefs. They simply repeat their assertions that the legislative privilege is narrow or should yield in this case. *See* DOJ 2d Supp. Br. 6, 9-10; Private Pls. 2d Supp. Br. 2-4, 11-12. For instance, the United States asserts that *Hughes* "narrowly impacted the legislative privilege," that the privilege is "'qualified'" and should be "'strictly construed,'" and that it should "yield with respect to documents concerning the Congressional plan." DOJ 2d Supp. Br. 5, 6, 9-10. Private Plaintiffs similarly assert that the legislative privilege should be strictly construed, pretend as though *Hughes* did not change much, and argue that the privilege should yield. Private Pls. 2d Supp. Br. 2-3, 11-12. The legislators already extensively explained why these arguments are meritless. *See* Defs & Legislators 1st Supp. Br. 4-13. Nevertheless, the legislators briefly highlight why these arguments flatly contradict *Hughes*.

**A.** It bears repeating what *Hughes* held. Contrary to Plaintiffs' arguments that the legislative privilege should be strictly construed, the Fifth Circuit held that the privilege is "necessarily broad." *Hughes*, 68 F.4th at 236; *see* Defs & Legislators 1st Supp. Br. 4-8. Broad enough that it "'covers *all* aspects of the legislative process.'" *Hughes*, 68 F.4th 235 (emphasis added). "State lawmakers can invoke legislative privilege to protect actions that occurred within 'the sphere of legitimate legislative activity' or within 'the regular course of the legislative process,'" and the privilege "covers 'legislators' actions in the proposal, formulation, and passage of legislation,'" including consultation with third

parties. *Id.* at 235-37 (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951); *United States v. Helstoski*, 442 U.S. 477, 489 (1979)). *Hughes* stated that it was "'not consonant with our scheme of government for a court to inquire into the motives of legislators,'" and it observed that "courts are not to facilitate an expedition seeking to uncover a legislator's subjective intent in drafting, supporting, or opposing proposed or enacted legislation." 68 F.4th at 238 (quoting *Tenney*, 341 U.S. at 377). *Hughes* explained that "'[a] court proceeding that probes legislators' subjective intent in the legislative process is a 'deter-ren[t] to the uninhibited discharge of their legislative duty'" and that the privilege "serves the 'public good' by allowing lawmakers to focus on their jobs rather than on motions practice in lawsuits." *Hughes*, 68 F.4th at 237 (quoting *Tenney*, 341 U.S. at 377); *see also* Defs & Legislators 1st Supp. Br. 4-8.

Plaintiffs nevertheless argue that the privilege should be strictly construed by relying on a passing discussion from *Jefferson Community Health Care*, 849 F.3d 615 (5th Cir. 2017). *See* DOJ 2d Supp. Br. 4-5 (asserting "*Jefferson Community Health Care* remains good law" and privilege "'must be strictly construed'"); Private Pls. 2d Supp. Br. 3 ("[n]either *Harkins* nor *Hughes* deviated from" the "principle" of strictly construing the privilege). But their reliance is misplaced. *Hughes* clarified that that *Jefferson Community Health Care* "provides no support for the idea that state legislators can be compelled to produce documents concerning the legislative process *and* a legislator's subjective thoughts and mo-tives," 68 F.4th at 240 (emphasis added). Plaintiffs simply ignore these parts of *Hughes*.

**B.** The Fifth Circuit rejected the primary argument that all Plaintiffs press here—that legisla-tive privilege must yield in cases alleging "racially discriminatory intent" and violations of "the Con-stitution and the Voting Rights Act" brought by "[t]he United States" and "dozens of … plaintiffs." *Id.* at 232, 237-38; *see* DOJ 2d Supp. Br. 5, 6-7, 9-10; Private Pls. 2d Supp. Br. 11-12. *Hughes* discussed that the privilege yielded in the federal criminal prosecution in *United States v. Gillock*, 445 U.S. 360, 373 (1980). 68 F.4th at 238-39. It acknowledged that "'important federal interests' may be at stake in criminal as well as 'extraordinary' civil cases." *Id.* at 238. But *Hughes* held that "the qualifications do not subsume the rule" and concluded that the underlying Voting Rights Act challenge was not an

"extraordinary" case. *Id.* The Court considered the history of legislative privilege and various examples where the privilege held in cases involving allegations of intentional discrimination. *See Hughes*, 68 F.4th at 238-39. Examining the Supreme Court's decision in *Tenney*, the Fifth Circuit observed that "despite the important federal rights that §1983 aims to vindicate, the Supreme Court explained that the legislative privilege did not yield to those interests" in *Tenney. Id.* So too in the plaintiffs' Voting Rights Act challenge in *Hughes. Id.* at 239; *see also* Defs & Legislators 1st Supp. Br. 7-13.

Plaintiffs now effectively abandon their reliance on the balancing test from *Rodriguez v. Pataki*, 280 F. Supp. 2d 89 (S.D.N.Y. 2003), which this Court adopted in its July 25 Order. *See* DOJ 2d Supp. Br. 9-10; Private Pls. 2d Supp. Br. 11 & n.9. Indeed, this Court should also abandon the balancing test.

Plaintiffs nevertheless contend that *this case* is an extraordinary civil case requiring the legislative privilege to yield—but this is unavailing. *See* Defs & Legislators 1st Supp. Br. 9-14. Again, *Hughes* itself was a Voting Rights Act, but the Fifth Circuit did not think the privilege should yield. *Hughes*, 68 F.4th at 239; *see also In re N.D. Legis. Assembly*, 70 F.4th 460, 464 (8th Cir. 2023) (a Voting Rights Act case involving redistricting did not present an "'extraordinary instanc[e]'"). Plaintiffs attempt to distinguish this case as a redistricting case also fails. *See, e.g., N.D. Legis. Assembly*, 70 F.4th at 464; *Lee v. Los Angeles*, 908 F.3d 1175, 1187-88 (9th Cir. 2018) (privilege did not yield in the redistricting case); *Common Cause Fla. v. Byrd*, 2023 WL 3676796, at *2 (N.D. Fla. May 25) (three-judge panel) (same).

Plaintiffs' contention that the fact that this involves *statewide* redistricting also makes no difference. *See Common Cause Fla.*, 2023 WL 3676796, at *2. The allegation of discriminatory intent and effect also do not amount to an extraordinary circumstance because accepting such an argument would "'render the privilege of little value.'" *Hughes*, 68 F.4th at 239 (quoting *Lee*, 908 F.3d at 1188); *see also In re Hubbard*, 803 F.23d 1298, 1306 (11th Cir. 2015). The United States' involvement also makes no difference. The United States was involved in *Hughes*; it made no difference there. *See* 68 F.4th at 237. The United States itself didn't think its involvement should matter either. *See* DOJ CA5 Br. 44, *Hughes*, No. 22-50435 (ECF 47) (arguing that private suits are on an equal footing as DOJ enforcement).

Indeed, the United States' targeting of Texas and its public officials with extensive discovery requests unquestionably chills legislative efforts, harmonious operation of the government, and harms the public good by preventing Texas officials from "focus[ing] on their jobs." *Hughes*, 68 F.4th at 237; *see also* Defs & Legislators 1st Supp. Br. 10-12. Plaintiffs' duplicative arguments against the privilege simply contradict the Fifth Circuit's decisions and should be rejected.

**II.   *Hughes* forecloses Plaintiffs' remaining arguments.**

    **A.   *Hughes* forecloses Plaintiffs' category-by-category and document-by-document analysis.**

       *Hughes* now forecloses Plaintiffs' proposed category-by-category and document-by-document analysis of the legislative privilege. The analysis under *Hughes* is straightforward. The legislative privilege categorically bars the disclosure of documents if those documents concern "actions that occurred within 'the sphere of legitimate legislative activity.'" *Hughes*, 68 F.4th at 235 (quoting *Tenney*, 341 U.S. at 376). But rather than focusing on that, Plaintiffs seek to analyze the privilege by perusing each line item in the privilege logs. But *Hughes* did not endorse such an approach; rather, it cared only whether certain "actions" "occurred within 'the sphere of legitimate legislative activity' or within 'the regular course of the legislative process.'" *Id.* Plaintiffs don't argue that redistricting was not a legitimate legislative activity—nor can they. This should be the end of the analysis, and the privilege should apply.

       Both the Eleventh Circuit and Eighth Circuit have rejected the same type of analysis that Plaintiffs advance. In *Hubbard* (which *Hughes* heavily relied upon), the Eleventh Circuit explained that "there was no need for the lawmakers to peruse the subpoenaed documents, to specifically designate and describe which documents were covered by the privilege, or to explain why the privilege applied to those documents." *Hubbard*, 803 F.3d at 1311. Because "the factual heart of the retaliation claim and the scope of the legislative privilege were one and the same"—*i.e.*, "the subjective motivations of those acting in a legislative capacity"—"any [document] that did go to legislative motive was covered by the legislative privilege." *Id.* The Eighth Circuit similarly quashed subpoenas without requiring a privilege log justifying the invocation of the privilege document by document. *See N.D. Legis. Assembly*,

70 F.4th at 465; *see also id.* at 466 (Kelly, J., dissenting in part). The outcome should be the same here because Plaintiffs seek documents from the legislators to support their disputed allegations regarding the legislators' intent and motive in enacting the redistricting legislation. This is squarely foreclosed by the legislative privilege. *See Hughes*, 68 F.4th at 238-39 ("courts are not to facilitate an expedition seeking to uncover a legislator's subjective intent in drafting, supporting, or opposing proposed or enacted legislation"); *see also Hubbard*, 803 F.3d at 1311; *N.D. Legis. Assembly*, 70 F.4th at 465.

To be sure, the Fifth Circuit's *Harkins* decision, by a 2-1 vote, indicated that legislators could be required to produce a privilege log. *See* 67 F.4th at 687. But that decision has now been withdrawn and vacated by the en banc Fifth Circuit, which granted rehearing. *See* 2023 WL 5542823. The "vacated" opinion in *Hakrins* is "no longer binding." *Beiser v. Weyler*, 284 F.3d 665, 668 (5th Cir. 2002). And as the legislators in *Harkins* noted in their petition for rehearing, forcing legislators to produce a privilege log is in tension with *Hughes* and other circuits' decisions. Pet'n 10-17, No. 21-60312 (5th Cir. June 14, 2023), ECF 136-1; *see Hughes*, 68 F.4th at 236-37 (endorsing a categorical approach). The Fifth Circuit's en banc decision in *Harkins* is poised to provide further guidance on the boundaries of the legislative privilege. In the interest of judicial efficiency, this Court could wait for that guidance. But if the Court were to proceed now, Plaintiffs' arguments fail under *Hughes*.

**B. Plaintiffs' category-by-category arguments also fail.**

**1. Documents containing "factual information" are privileged.**

Plaintiffs also repeat their arguments that so-called "factual information" is not subject to the legislative privilege. *See* DOJ 2d Supp. Br. 7-8; Private Pls. 2d Supp. Br. 4-5. Again, the legislators already extensively addressed this argument. Defs & Legislators 1st Supp. Br. 13-16. At bottom, Plaintiffs misunderstand *Hughes*. They contend that the Fifth Circuit in those cases only addressed whether the privilege asserted over the communications with lobbyists and executive branch officials was waived or the privilege should have yielded. *See* DOJ 2d Supp. Br. 7; Private Pls. 2d Supp. Br. 4. They

assert that this Court is free to revert to the now-vacated July 25 Order's previous conclusion that "factual information" is not privileged. *See* DOJ 2d Supp. Br. 7-8; Private Pls. 2d Supp. Br. 4.

But this Court is bound by not only by the results reached by the Fifth Circuit but also its "*ratio decidendi*"—"portions of the opinion necessary to reach the result." *Gutierrez v. Ethicon, Inc.*, 535 F. Supp. 3d 608, 625 (W.D. Tex. 2021) (citing Garner et al., *The Law of Judicial Precedents* 44-47 (2016)). *Hughes* explained that the legislative privilege "'covers all aspects of the legislative process.'" 68 F.4th at 236. "[F]act-finding, information gathering, and investigative activities are essential prerequisites to the drafting of bills and the enlightened debate over proposed legislation." *Gov't of V.I. v. Lee*, 775 F.2d 514, 521 (3d Cir. 1985); *see also Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 504 (1975) (similar).

Unsurprisingly, the cases are legion holding that so-called factual information is properly subject to the legislative privilege. *See* Defs & Legislators 1st Supp. Br. 13-16 (citing cases); *Common Cause Fla.*, 2023 WL 3676796, at *2; *In re Ga. Sen. Bill 202*, 2023 WL 3137982, at *3 (N.D. Ga. Apr. 27); *Citizens Union of N.Y.C. v. Att'y Gen. of N.Y.*, 269 F. Supp. 3d 124, 161 (S.D.N.Y. 2017). Plaintiffs' arguments fail because they do not dispute that seeking information relating to "population and election data" and assessment of voting patterns, DOJ 2d Supp. Br. 8; *see* Private Pls. 2d Supp. Br. 4, is within the sphere of legitimate legislative activity and the regular course of the legislative process.

Plaintiffs also assert that this Court should treat the legislative privilege as it would the deliberative-process privilege or the attorney-client privilege, which they say only protects communications and deliberations. *See* DOJ 2d Supp. Br. 7; Private Pls. 2d Supp. Br. 4. This is wrong for two reasons. First, the legislative process is broader. *See* Defs & Legislators 1st Supp. Br. 15-16. The legislative privilege protects not only the legislators' ability to freely deliberate and communicate, but also the legislative *process* as a whole and the legislators' ability to focus on their jobs without the burdens of litigation. *Id.*; *Hughes*, 68 F.4th at 235-36, 237. Second, revealing factual information will necessarily reveal the legislators' thought processes, motives, opinions, and intent. *See* Defs & Legislators 1st

Supp. Br. 15-16; *see also Texas v. Holder*, 2012 WL 13070060, at *4 (D.D.C. June 5). The "factual information" that Plaintiffs demand is thus privileged under *Hughes*.

### 2. *Hughes* forecloses Plaintiffs' attempt to draw arbitrary time cutoffs.

Plaintiffs argue that documents that are allegedly unrelated to the substance of legislation—which Plaintiffs broadly describe as documents pre-dating the Census and post-dating the passage—should be produced. This argument is—again—substantially identical to what they argued in their first briefs. *See* DOJ 2d Supp. Br. 8-9; Private Pls. 2d Supp. Br. 8-10. The legislators already addressed these arguments. *See* Defs & Legislators 1st Supp. Br. 18-21.

*Hughes* did not draw such an arbitrary cutoff in the legislative timeline—and for good reason. As a general matter, redistricting that must follow a necessarily tight schedule—and that was doubly so here, where all parties knew that the delay in census data would require maps to be used in 2022 to be drawn during the 30-day window of a special session. Redistricting legislation wasn't "theoretical"—it loomed large over the Legislature even while it was waiting for the census data. *Cf.* DOJ 2d Supp. Br. 9; Private Pls. 2d Supp. Br. 9. Legislative privilege instead extends to "'all aspects of the legislative process.'" *Hughes*, 68 F.4th at 235. It is "'not limited to the casting of a vote on a resolution or bill[.]'" *Id.* Nor is the privilege limited to what Plaintiffs decide are the "'integral steps'" in the legislative process. Private Pls. 2d Supp. Br. 8[1]; *cf. Trump v. Mazars USA, LLP*, 140 S.Ct. 2019, 2031 (2020) ("The congressional power to obtain information is 'broad' and 'indispensable,'" and includes "studies of proposed laws.'"). Plaintiffs' refrain that post-enactment documents are not privileged also misses the point of the broad privilege. These supposed post-enactment documents are still within the sphere of the legitimate legislative activity, could reveal the legislators' motives and mechanics of

---

[1] Private Plaintiffs also mischaracterize what the Supreme Court said in *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998). There, the Court said that "Bogan's actions"—although Bogan was an executive official—"were legislative because they were integral steps in the legislative process." *Id.* The Supreme Court *did not* say that "only 'integral steps in the legislative process'" are privileged as Private Plaintiffs mischaracterize. Private Pls. 2d Supp. Br. 8. *Bogan* thus in no way limits the Fifth Circuit's holding that the privilege protects *all* aspects of the legislative process.

the legislative process, or concern efforts to find consensus on legislative policy. *See* Defs & Legislators 1st Supp. Br. 20; *Hughes*, 68 F.4th at 235; *Almonte v. City of Long Beach*, 478 F.3d 100, 107 (2d Cir. 2007); *Common Cause Fla*, 2023 WL 36767696, at *2-3.

The United States also repeats its argument that the administrative documents are not privileged. *See* DOJ 2d Supp. Br. 8. But such documents are privileged to the extent they—when placed in context—would reveal privileged motivations and mental impressions. *See* Defs & Legislators 1st Supp. Br. 21. And, in response to the United States' motion, the legislators produced administrative materials to the extent they didn't reveal the internal legislative processes. *See id.*; ECF 379, at 7.

### 3. The Lieutenant Governor may properly invoke the legislative privilege.

Although the United States served a subpoena on the Lieutenant Governor, it doesn't argue that he is precluded from invoking the legislative privilege because he is an executive-branch official. Private Plaintiffs, however, argue that the Lieutenant Governor cannot categorically invoke the legislative privilege. *See* Private Pls. 2d Supp. Br. 5-8. The legislators already addressed these arguments in detail, *see* Defs & Legislators 1st Supp. Br. 16-18, and will only briefly elaborate here.

Private Plaintiffs (at 6) draw an erroneous analogy to the President who, according to them, "performs a legislative function in signing or vetoing a bill" but not otherwise. This is incorrect. Courts have rejected such a limited view and held that governors also enjoy broad protection under the legislative privilege, including actions taken prior to signing or vetoing a bill. *See, e.g.*, *Hubbard*, 67 F.4th at 687; *Common Cause Fla.*, 2023 WL 3676796, at *2; *Citizens Union*, 269 F. Supp. 3d at 161.

The Lieutenant Governor's claim to the legislative privilege is even stronger than a governor's because—as Private Plaintiffs concede—he is constitutionally the President of the Senate. Yet they seek to minimize the Lieutenant Governor's legislative functions to debating and voting only when the Senate sits as the Committee of the Whole and casting the tie-breaking vote. Private Pls. 2d Supp. Br. 7. The legislators already explained why Private Plaintiffs are wrong. *See* Defs & Legislators 1st Supp. Br. 16-17. But even if Private Plaintiffs were right, the privilege still covers the Lieutenant

Governor. The "privilege is not limited to the casting of a vote on a resolution or bill"—it covers all aspects of the legislative process. *Hughes*, 68 F.4th at 235. If the Texas Constitution requires the Lieutenant Governor to be available to cast the tiebreaking vote, he must of course fully participate in the antecedent legislative process leading up to the casting of the vote just like any other legislators. *Cf. Common Cause Fla.*, 2023 WL 3676796, at *3. The Lieutenant Governor's actions preceding the ultimate casting of votes are protected just as a Senator's preceding actions. *See Hughes*, 68 F.4th at 235.

### 4.  Plaintiffs fail to show waiver.

The legislators do not dispute that the legislative privilege can be waived under certain circumstances. Private Plaintiffs, however, press an odd waiver argument that even the United States does not assert. *See* Private Pls. 2d Supp. Br. 10. Recall that *Hughes* specifically rejected the waiver argument based on the legislators' communications with third parties. 68 F.4th at 236-37; *see also id.* at 236 (meeting with "persons outside the legislature—such as executive officers …—to discuss issues that bear on potential legislation" is protected). Yet Private Plaintiffs argue that precisely the same type of communications operate as a waiver to the extent that executive officials cajoled or exhorted the legislators. This is incorrect. When legislators "cajole" and "exhort" executive branch officials about their "administration of [the law]," legislators are generally not engaged in legislative activity—because *administering* the law (as opposed to *making* it) is an executive function. *Gravel v. United States*, 408 U.S. 606, 625 (1972). However, contrary to Private Plaintiffs' assertion (at 10), the "reverse" is *not* true. When the legislators and executive officials communicate about proposed legislation, they are engaged in the process of making law. *See Hughes*, 68 F.4th at 236. This back-and-forth is a "'part and parcel of the modern legislative procedures.'" *Id.* To the extent that the communications concern the "'proposal, formulation, and passage of legislation,'" the privilege is not waived. *Id.* at 236; *Common Cause Fla.*, 2023 WL 3676796, at *3.

### CONCLUSION

This Court should hew close to *Hughes* and *Patrick* and deny all pending motions.

Date: August 31, 2023

Respectfully submitted,

*/s/ Taylor A.R. Meehan*
Taylor A.R. Meehan
Frank H. Chang
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
Tel: (703) 243-9423
taylor@consovoymccarthy.com
frank@consovoymccarthy.com

Patrick Strawbridge
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
Tel: (703) 243-9423
patrick@consovoymccarthy.com

Adam K. Mortara
LAWFAIR LLC
125 South Wacker, Suite 300
Chicago, IL 60606
Tel: (773) 750-7154
mortara@lawfairllc.com

*Counsel for the House Legislators*

ANGELA COLMENERO
Provisional Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

JAMES LLOYD
Interim Deputy Attorney General for Civil
Litigation

*/s/ Ryan G. Kercher*
RYAN G. KERCHER
Deputy Chief, General Litigation Division
Tex. State Bar No. 24060998

KATHLEEN HUNKER
Special Counsel
Tex. State Bar No. 24118415

Lanora Pettit
Principal Deputy Solicitor General
Tex. State Bar No. 24115221

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Ryan.Kercher@oag.texas.gov
Kathleen.Hunker@oag.texas.gov
Lanora.Pettit@oag.texas.gov

*Counsel for Defendants and the Senate Legislators*

11

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on August 31, 2023, and that all counsel of record were served by CM/ECF and email.

*/s/ Taylor A.R. Meehan*