UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **LEAGUE OF UNITED LATIN AMERICAN CITIZENS,** *et al.*, | § § § | |
| *Plaintiffs*, | § § | **EP-21-CV-00259-DCG-JES-JVB** [Lead Case] |
| **EDDIE BERNICE JOHNSON,** *et al.*, | § § | |
| *Plaintiff-Intervenors*, | § § | **&** |
| v. | § § | **All Consolidated Cases** |
| **GREG ABBOTT,** *in his official capacity as Governor of the State of Texas***,** *et al.*, | § § § § | |
| *Defendants*. | § § | |

## ORDER

The Mexican American Legislative Caucus ("MALC") issued deposition subpoenas to two non-party officials in the Texas House of Representatives, General Counsel Margo Cardwell ("Ms. Cardwell") and Parliamentarian Sharon Carter, and the United States issued a deposition subpoena to Speaker Dade Phelan. ECF Nos. 341-1, 341-2, 341-3. The three recipients moved to quash the subpoenas or, alternatively, for a protective order. ECF No. 341. In a series of orders, the Court[1] previously addressed the motion as it related to the subpoenas of Parliamentarian Carter and Speaker Phelan. *See League of United Latin Am. Citizens v. Abbott*, No. EP-21-CV-00259-DCG-JES-JVB, 2022 WL 2866673, at *1–4 (W.D. Tex. July 6, 2022) [hereinafter *LULAC II*], *appeal*

---

[1] "The Court" refers to the three-judge panel presiding over this statewide redistricting litigation under 28 U.S.C. § 2284.

All page citations in this Order refer to the page numbers assigned by the Court's CM/ECF system, not the document's internal pagination, when available.

*docketed*, No. 22-50648 (5th Cir. July 20, 2022)[2]; ECF Nos. 429, 446, 448. The only portion of the motion still pending relates to the subpoena of Ms. Cardwell. *See* ECF Nos. 448 at 1 n.1; 730 at 1 n.1.

For the reasons that follow, the Court denies the motion to quash the deposition subpoena of Ms. Cardwell, denies the alternative motion for a protective order relating to Ms. Cardwell's deposition, and orders the parties to proceed with Ms. Cardwell's deposition consistent with the procedures set forth in this order. *See infra* Section II.

## I.      BACKGROUND

Ms. Cardwell is the General Counsel to the Texas House of Representatives. ECF No. 341-17 ¶ 2. In this role, which is an "attorney position formally housed within the Office of the Speaker," Ms. Cardwell's responsibilities include providing legal advice and other legal services to Texas House member offices, committees, officers, and other legislative employees under Texas Government Code § 306.008(2). *Id.* ¶¶ 5, 7–8. As General Counsel to the House, Ms. Cardwell was involved in the redistricting process after the 2020 Census. *See id.* ¶¶ 9–11. As she asserts in her declaration, her role included "participating in private meetings and discussions with some House members, staff, and counsel regarding draft legislation and the legislative process." *Id.* ¶ 10. She also alleges that she provided "advice regarding legal compliance of redistricting plans" and "coordinat[ed] with other counsel engaged to advise on the same." *Id.* ¶ 11.

---

[2] On April 10, 2024, the movant-appellants filed an unopposed motion to voluntarily dismiss their appeal of the Court's July 6, 2022 order. *LULAC v. Hunter*, No. 22-50648, ECF No. 59. On May 2, 2024, the Fifth Circuit granted the motion without prejudice. *Id.* at ECF No. 67.

In an initial order addressing the three non-parties' subpoenas, the Court held in abeyance the motion to quash Speaker Phelan's subpoena pending additional briefing.[3] *LULAC II*, 2022 WL 2866673, at *3–4. The Court also denied the motion to quash Parliamentarian Carter's subpoena and permitted MALC to depose Parliamentarian Carter subject to various conditions and procedures for legislative-privilege objections. *Id.* at *4–6.

In that same initial order, the parties agreed to hold in abeyance the motion to quash Ms. Cardwell's subpoena while the parties conducted further discovery. *Id.* at *4. If MALC determined "the new discovery materials further support[ed] deposing the General Counsel," the Court ordered MALC and Ms. Cardwell to file briefing accordingly. *Id.* After additional discovery, MALC filed a supplemental response in support of deposing Ms. Cardwell, and Ms. Cardwell filed a supplemental reply in support of quashing the deposition subpoena. ECF Nos. 427, 428.

## II.    DISCUSSION

### A. Motion to Quash

Parties may seek discovery of any relevant, non-privileged information that is proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). This permissible discovery includes deposing non-parties through a subpoena issued under Rule 45. Fed. R. Civ. P. 45(c). At the same time, courts may quash a deposition subpoena if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or if it "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)–(iv). Similarly, a court may issue a protective order "to protect a party or

---

[3] Ultimately, the United States noticed the Court that it was no longer seeking Speaker Phelan's deposition. ECF No. 446. The Court subsequently denied the motion to quash his subpoena as moot. ECF No. 448.

person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). However, courts rarely quash deposition subpoenas or enter protective orders that effectively prohibit the taking of depositions in their entirety. *See League of United Latin Am. Citizens v. Abbott*, No. EP-21-CV-00259-DCG-JES-JVB, 2022 WL 3656395, at *2 (W.D. Tex. Aug. 23, 2022) [hereinafter *LULAC III*]. In the Fifth Circuit, "[i]t is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error." *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979). As a result, a party seeking to quash a deposition bears a "heavy burden" and "must show a particular and compelling need" for a protective order. *Bucher v. Richardson Hosp. Auth.*, 160 F.R.D. 88, 92 (N.D. Tex. 1994). "Conclusory assertions of injury are insufficient." *Id.*

This order is the fifth order addressing motions to quash non-party deposition subpoenas that the Court has issued in this litigation. *See League of United Latin Am. Citizens v. Abbott*, No. EP-21-CV-00259-DCG-JES-JVB, 2022 WL 1570858, at *2–3 (W.D. Tex. May 18, 2022) [hereinafter *LULAC I*], *appeal docketed*, No. 22-50407 (5th Cir. May 18, 2022)[4] (addressing the motions of Representatives Ryan Guillen, Brooks Landgraf, and John Lujan); ECF No. 340 (addressing the motions of additional Texas House members and legislative employees based on *LULAC I*); *LULAC II*, 2022 WL 2866673, at *5 (addressing the motion of Parliamentarian Carter); *LULAC III*, 2022 WL 3656395, at *5 (addressing the motion of Jeffrey Archer, Executive Director of the Texas Legislative Council). Each time, the movants sought to quash their deposition

---

[4] On April 10, 2024, the movant-appellants filed an unopposed motion to voluntarily dismiss their appeal of the Court's May 18, 2022 order. *LULAC v. Guillen*, No. 22-50407, ECF No. 156. On May 2, 2024, the Fifth Circuit granted the motion without prejudice. *Id.* at ECF No. 164.

subpoenas on the grounds of legislative privilege. Mr. Archer also sought to quash his deposition subpoena on the ground of attorney-client privilege. *See LULAC III*, 2022 WL 3656395, at *5. Again, each time, "this Court was clear that it could not adjudge privilege claims in the absence of actual deposition questions and denied the motion[s]." *Id.* at *2 n.1.

This order is no different. Despite Ms. Cardwell's arguments to the contrary, her assertions of the legislative and attorney-client privileges do not justify the relief she requests.

### 1. Privilege

Ms. Cardwell asserts that her relevant communications are "protected by the double layer" of legislative and attorney-client privileges. *LULAC III*, 2022 WL 3656395, at *2; *see* ECF Nos. 341 at 15–19; 376 at 6–9; 428 at 2–6. Regarding legislative privilege, Ms. Cardwell "adopts" the arguments that Representatives Guillen, Landgraf, and Lujan previously made in this litigation. ECF No. 341 at 15; *see* ECF No. 259 at 5–18. She does not elaborate on how legislative privilege or these adopted arguments apply specifically to her role in the redistricting process. *See* ECF Nos. 341 at 15–20; 376; 428.

Ms. Cardwell's primary argument relates to attorney-client privilege. "As a legislative attorney, her private communications with House Members, Officers, and staff that entail the provision of legal advice or other legal services are attorney-client privileged and confidential." ECF No. 341 at 15 (citing Tex. Gov't Code §§ 306.008(a)-(b)). According to Ms. Cardwell, any non-privileged information that she obtained during the redistricting process, such as "knowledge of underlying facts or data about where Members lived or how populations shifted," is "not unique" to her and is "provable in other ways," including through depositions of legislators and their staff, document discovery, and "the robust public record." *Id.* at 16, 17 n.4, 18. Moreover, she argues that courts have held that attorney-client privilege can be sufficient grounds for quashing a

- 5 -

deposition subpoena in its entirety when alternative sources could provide the non-privileged information sought from the quashed deposition. *Id.* at 17–19 (citing *Hall v. Louisiana*, No. 12–657–BAJ–RLB, 2014 WL 1652791, at *3–4 (M.D. La. Apr. 23, 2014); *Gates v. Texas Dep't of Family and Protective Servs.*, No. A–09–CV–018 LY, 2010 WL 11598033, at *2 (W.D. Tex. Oct. 7, 2010); *Nat'l W. Life Ins. v. W. Nat'l Life Ins.*, No. A–09–CA–711 LY, 2010 WL 5174366, at *2–3 (W.D. Tex. Dec. 13, 2010)).

MALC responds that Ms. Cardwell fails to establish attorney-client privilege because she neither identifies her specific clients nor explains how all of her testimony would be "privileged legal advice, as opposed to policy advice or other non-privileged matter." ECF No. 360 at 2. MALC contends that the title "General Counsel to the House" does not "automatically form an attorney-client relationship" between Ms. Cardwell and "each and every individual [H]ouse member, [H]ouse staffer, outside consultant, or other parties" involved in redistricting. *Id.* at 3. Rather, MALC argues, the attorney-client privilege is narrow and based on a "highly fact-specific inquiry." *Id.* at 4. Moreover, MALC asks the Court to distinguish the cases that Ms. Cardwell cites on the grounds that they address "the deposition of current opposing counsel in active litigation" rather than "the deposition of a staff attorney in the context of redistricting litigation." *Id.* at 6–7. In the alternative, MALC asks the Court to "adopt the same procedures adopted in its May 18, 2022 Order [Doc. 282]." *Id.* at 7.

After additional discovery, MALC maintains that deposing Ms. Cardwell is still necessary because Speaker Phelan's Legislative Director[5], Mark Bell, testified in his deposition that Ms.

---

[5] In her supplemental reply, Ms. Cardwell identifies Mr. Bell as Speaker Phelan's Deputy Chief of Staff. ECF No. 428 at 4–5.

Cardwell "took the lead on redistricting" in the Speaker's office. ECF No. 427 at 3. MALC also

obtained a declaration from Chris Turner, Texas State Representative for House District 101,

attesting that Ms. Cardwell "did not hold herself [out] as serving as [Mr. Turner's] attorney in

redistricting matters." ECF No. 427-2 ¶ 4. Ms. Cardwell counters that this additional testimony

does not justify the taking of her deposition "when there will be 15-plus depositions of House

members and employees, who were not acting as attorneys regarding the same topics." ECF No.

428 at 4. She also cites other deposition testimony in support of her contention that she played a

"predominantly legal role" in the redistricting process, as opposed to a "predominantly political

role" or policy role. *Id.* at 2–3.

The Court has already heard—and rejected—substantially the same privilege arguments

relating to motions to quash the deposition subpoenas of six legislators in the Texas House of

Representatives and seven legislative staff members.[6] *See LULAC I*, 2022 WL 1570858, at *1, 3;

*LULAC II*, 2022 WL 2866673, at *4–6; *LULAC III,* 2022 WL 3656395, at *2–3, 2 n.1 (addressing

attorney-client-privilege arguments, in addition to legislative-privilege arguments, that Mr. Archer

raised); *see also* ECF Nos. 259, 278, 333, 340, 455. The only difference here is Ms. Cardwell's

involvement in the redistricting process as an attorney for the Texas House of Representatives. But

this fact does not change the established processes—in general and in this litigation—for handling

privilege objections during depositions. As the Court has explained, it is unable to determine if a

privilege attaches to specific communications—and, if so, which privilege—without knowing the

deposition questions and the specific inquiry at issue, none of which MALC has provided to the

---

[6] Likewise, the Court has already set forth governing law on legislative and attorney-client privilege in response to motions to quash non-party deposition subpoenas. *See LULAC I*, 2022 WL 1570858, at *1; *LULAC III,* 2022 WL 3656395, at *2–3.

Court. *See LULAC III*, 2022 WL 3656395, at \*3 (rejecting a "list of hypotheticals—questions the government might ask, and categories of statements that might be privileged").

Moreover, the fact that Ms. Cardwell is an attorney for the Texas House of Representatives "is not an absolute bar to taking . . . her deposition." 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2102, Westlaw (section updated April 2023). As MALC correctly notes, "there is prior precedent in Texas redistricting litigation for attorneys serving as key witnesses." ECF No. 360 at 5 (citing *Perez v. Abbott*, No. SA-11-CV-360, 2017 WL 1406379, at \*1 (W.D. Tex. Apr. 20, 2017)). In that litigation, the United States deposed the Texas House of Representatives' Speaker's redistricting counsel as a non-party witness. *See Texas v. United States*, No. 1:11-cv-1303, ECF No. 94-8 (D.D.C. 2011). His deposition followed the same procedure for privilege objections, including attorney-client-privilege objections, that this Court has applied to privilege objections. *See id.* at 21:4–15; *LULAC I*, 2022 WL 1570858, at \*2–3 ("[T]he Court adopts the following [deposition] procedure, originally used by the last three-judge court to hear Texas redistricting cases.") (citing *Perez v. Perry*, No. SA-11-CV-360-OLG-JES, ECF No. 102 at 5–6 (W.D. Tex. Aug. 1, 2011)). The Court continues to insist that the parties follow this established procedure. *See infra* Section II(A)(2).

### 2. Undue Burden

In addition to her claims of privilege, Ms. Cardwell argues that sitting for a deposition will be unduly burdensome. *See* ECF No. 341 at 15–20 (citing Fed. R. Civ. P. 45(d)(3)(A)(iv)). Here again, she fails to demonstrate an undue burden sufficient to justify quashing her deposition in its entirety or, alternatively, entering a protective order.

Ms. Cardwell argues that sitting for a deposition would be unduly burdensome primarily because it would be a significant imposition on her time and responsibilities as General Counsel

to the House. *See* ECF No. 341-17 ¶ 12. In that role, she "provid[es] continual legal support to House members, committees, and [H]ouse administrative offices," including during the summer while "House committees continue to meet, member offices remain staffed to serve constituents, and the administrative offices carry on their work unabated." *Id.* This work also involves some travel. *Id.* Any time that she spends preparing and sitting for a deposition in this litigation would "take away from those important tasks." *Id.* In addition, Ms. Cardwell contends, the information MALC seeks is provable in other, non-privileged ways that would not require her to undertake the "extremely difficult" task of differentiating non-privileged information from privileged information. ECF No. 341 at 18–19 (citing *Natl. W. Life Ins. v. W. Natl. Life Ins.*, No. A–09–CA–711 LY, 2010 WL 5174366, at *4 (W.D. Tex. Dec. 13, 2010)). MALC does not respond directly to Ms. Cardwell's undue-burden arguments. *See* ECF Nos. 360 at 2–8; 427 at 1–4.

Because Ms. Cardwell is a non-party, the Court "must be sensitive to the . . . compliance costs." *Leonard v. Martin*, 38 F.4th 481, 489 (5th Cir. 2022). The Court is not aware of any stipulated time limit to her deposition, unlike previous non-party depositions in this litigation. *See LULAC III*, 2022 WL 3656395, at *4 (noting that the United States agreed to stipulate a three-hour limit on the deposition of Mr. Archer). Still, MALC has not asked Ms. Cardwell to produce documents or to review files in preparation for the deposition. *See* ECF No. 341-2; *cf. Leonard*, 38 F.4th at 490 (finding an undue burden where a non-party was required to spend an estimated 60 hours reviewing documents in preparation for a deposition). Other than the inconvenience of sitting for a deposition and the task of differentiating non-privileged information from privileged information, Ms. Cardwell provides no basis for her undue-burden argument. *See* ECF Nos. 341-17 ¶¶ 9–12.

While the Court appreciates the importance of Ms. Cardwell's time and responsibilities,

this reason alone is insufficient to quash the deposition in its entirety. As the Court has previously discussed, multiple case-specific factors determine whether a subpoena imposes an undue burden. *See LULAC III*, 2022 WL 3656395, at *3–4 (discussing these factors and applying them to deny the motion to quash the deposition subpoena of Mr. Archer). "[T]he Court does not think the burden of having to sit for a deposition outweighs the relevant information" that MALC may obtain by deposing Ms. Cardwell. *LULAC I*, 2022 WL 1570858, at *2 (finding that any burden was insufficient to quash or modify the deposition subpoenas of Representatives Guillen, Landgraf, and Lujan). At the same time, however, MALC should be mindful of the information it has already received from other witnesses and should avoid unnecessarily duplicative questioning.

Therefore, as with the legislators', Parliamentarian Carter's, and Mr. Archer's motions to quash their deposition subpoenas, the Court **DENIES** Ms. Caldwell's motion and permits MALC to proceed with her deposition. The Court **ORDERS** the parties to comply with the following procedures:

(1) The parties shall proceed with the deposition of Ms. Cardwell. Ms. Cardwell must appear and testify even if it appears likely that she will invoke legislative or attorney-client privilege in response to certain questions.

(2) Ms. Cardwell may invoke legislative or attorney-client privilege in response to particular questions.

    a) If Ms. Cardwell invokes legislative privilege in response to a particular question, she must then answer the question in full. Her response will be subject to the privilege.

    b) If Ms. Cardwell invokes attorney-client privilege in response to a particular question, she need not answer the question or portions of the question that would reveal the substance of her attorney-client communications. *See* Fed. R. Civ. P. 30(c)(2); ECF No. 376 at 6, ¶ B (advising the Court of the parties' agreement that Ms. Cardwell "need not answer questions or portions of questions that would reveal the substance of her attorney-client communications, over an attorney-client[-] privilege objection").

(3) The portions of deposition transcripts containing questions and answers subject to legislative- or attorney-client-privilege objections shall be deemed to contain confidential information and shall therefore be subject to the "Consent Confidentiality and Protective Order" at ECF No. 202.

(4) If a party wishes to use any portions of deposition testimony that are subject to legislative or attorney-client privilege, that party must seal those portions and submit them to the Court for *in camera* review, along with a motion to compel.[7]

(5) Any such motion to compel shall be filed within 14 days after the deposition, but the Court encourages MALC to file earlier, if possible.

**In adopting this approach, the Court warns the parties that any public disclosure of information to which a privilege has been asserted may result in sanctions, including striking of pleadings. All counsel are ORDERED to spare no effort to ensure that no individual— whether that person be counsel, court reporter, videographer, witness, or any other person hearing or having access to information subject to privilege—disseminates information subject to privilege to any person not permitted to handle that information or in any manner (e.g., disclosing to media, posting on social media, etc.).**

Additionally, nothing in this Order should be construed as resolving any claim of legislative or attorney-client privilege. The Court will be better positioned to decide such questions once there are specific questions and specific invocations of privilege.

## B. Motion for a Protective Order

Finally, Ms. Cardwell moves in the alternative for a protective order based on the same grounds as her motion to quash. ECF No. 341 at 5. Consistent with its prior orders in this litigation, the Court denies this alternative motion. *See LULAC I*, 2022 WL 1570858, at *2–3; *LULAC II*,

---

[7] A motion to compel shall be filed to assert that information to which a privilege objection has been raised should be disclosed because it is not subject to the privilege, the privilege has been waived, or the privilege should not be enforced.

2022 WL 2866673, at *5 n.4; *LULAC III*, 2022 WL 3656395, at *5–6.

Ms. Cardwell requests a protective order consistent with the procedure adopted during the litigation following the previous redistricting cycle. ECF No. 341 at 5. She suggests that a protective order of this sort "would permit legislative[-]privilege objections that, once raised, [would] relieve [her] from answering particular questions eliciting that objection." *Id.* In other words, Ms. Cardwell seeks a protective order that gives her the option "not to answer specific questions, citing the [legislative] privilege." *Perez v. Perry*, No. SA-11-CV-360-OLG, 2014 WL 106927, at *3 (W.D. Tex. Jan. 8, 2014).

To justify a protective order, the movant bears the burden to show "good cause and a specific need for protection." *Anzures v. Prologis Texas I LLC*, 300 F.R.D. 316, 317 (W.D. Tex. 2012). "'Good cause' exists when justice requires the protection of 'a party or person from any annoyance, embarrassment, oppression, or undue burden or expense.'" *Bucher*, 160 F.R.D. at 92 (N.D. Tex. 1994) (quoting Fed. R. Civ. P. 26(c)). Though that bar is slightly lower than the "extraordinary circumstances" requirement to quash a deposition subpoena, *see Salter*, 593 F.2d at 651, the requirement is still stringent. "The federal courts have superimposed a somewhat demanding balancing of interests approach to [Rule 26(c)]." *Cazorla v. Koch Foods of Miss., LLC*, 838 F.3d 540, 555 (5th Cir. 2016) (cleaned up). "The movant bears the burden of showing that a protective order is necessary, which contemplates a particular and specific demonstration of fact." *EEOC v. BDO USA, LLP*, 876 F.3d 690, 698 (5th Cir. 2017) (internal quotation marks and citation omitted).

At this stage, a blanket protective order on legislative-privilege grounds is a premature and inappropriate remedy. Ms. Cardwell fails to demonstrate how "ordinary deposition procedures," including those set forth *supra*, "are insufficient to protect privileged information" in the specific

context of her deposition. *LULAC III*, 2022 WL 3656395, at *6. This procedure, which the Court

has applied to every other deponent in this litigation who has made the same request, sets forth a

"[w]orkable" process that shields privileged information without "stym[ying]" the plaintiffs'

"legitimate interest in discovery." *LULAC II*, 2022 WL 2866673, at *5 n.4; *LULAC III*, 2022 WL

3656395, at *6; *see LULAC I*, 2022 WL 1570858, at *2; ECF No. 340. Ms. Cardwell's requested

relief would undermine this careful balance. The Court declines to adopt an "[im]proper solution"

to privilege issues "not yet ripe for decision." *LULAC I*, 2022 WL 1570858, at *1; *LULAC III*,

2022 WL 3656395, at *6.

### III.    CONCLUSION

The Court **DENIES** the "Motion by Texas House Speaker Dade Phelan, General Counsel

to the House Margo Cardwell, and House Parliamentarian Sharon Carter to Quash Deposition

Subpoenas and, Alternatively, Motion for Protective Order" (ECF No. 341) **IN PART**. The Court

**DENIES** the motion by Ms. Cardwell to quash the deposition subpoena and **DENIES** the

alternative motion for a protective order.

MALC **MAY DEPOSE** Ms. Cardwell in accordance with the procedures outlined in

**Section II(A)(2)** of this Order.

Because the Court previously ruled on the motion as it pertains to Speaker Phelan and

Parliamentarian Carter (ECF Nos. 409, 448), the Court directs the Clerk to redesignate the motion

(ECF No. 341) as **NO LONGER PENDING** on the docket.

The Court also **ORDERS** that its "Order Granting Administrative Stay of Subpoenas"

(ECF No. 381) is **NO LONGER IN EFFECT**.

**So ORDERED and SIGNED this 3rd day of June 2024.**

**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**

*And on behalf of:*

| | | |
|---|---|---|
| **Jerry E. Smith** | | **Jeffrey V. Brown** |
| **United States Circuit Judge** | *-and-* | **United States District Judge** |
| **U.S. Court of Appeals, Fifth Circuit** | | **Southern District of Texas** |