UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **LEAGUE OF UNITED LATIN AMERICAN CITIZENS**, *et al.*, | § § § § | |
| *Plaintiffs*, | § § | |
| **EDDIE BERNICE JOHNSON**, *et al.*, | § § | EP-21-CV-00259-DCG-JES-JVB [Lead Case] |
| *Plaintiff-Intervenors*, | § § | |
| v. | § § | & |
| **GREG ABBOTT**, *in his official capacity as Governor of the State of Texas*, *et al.*, | § § § § | All Consolidated Cases |
| *Defendants*. | § § | |

# ORDER

The LULAC Plaintiffs move to amend the Court's current Scheduling Order and "reopen discovery for the limited purpose of allowing the LULAC Plaintiffs to serve Dave's Redistricting with a subpoena for specific documents related to Mr. Trende and Texas redistricting."[1] Defendants oppose the Motion.[2] For the reasons that follow, the Court denies the LULAC Plaintiffs' Motion.

# DISCUSSION

Although fact discovery closed on July 15, 2022, and expert discovery closed on August 3, 2022, the parties agreed to depose Sean Trende, one of the State's expert witnesses, after those deadlines passed—on September 2, 2022.[3] In its Amended Scheduling Order, the Court allowed

---

[1] Mot., ECF No. 617, at 9.

[2] Resp., ECF No. 622.

[3] Mot. at 1; *see also* Am. Scheduling Order, ECF No. 325.

- 1 -

the parties "by agreement [to] continue discovery beyond the deadline."[4] However, the Court explicitly notified the parties in that Order that "there will be *no intervention by the Court* expect in extraordinary circumstances."[5]

During Mr. Trende's deposition, the United States introduced as an exhibit a copy of three tweets that Mr. Trende himself authored in December 2020.[6] In one of the tweets, Mr. Trende wrote:

> Been playing around with Texas maps, and it's pretty easy to draw three new R districts, draw two new minority opportunity districts by making 7 and 32 minority-majority, make 23 majority-Trump while keeping ~66% Hispanic and make TX-28 heavily Trump while keeping ~66% Hispanic.[7]

When asked more about these maps, Mr. Trende stated that he used Dave's Redistricting App to create the maps and draw the districts mentioned in his tweet—using whatever data Dave's Redistricting App had made available at that time.[8] It is *this* data—from Dave's Redistricting—that the LULAC Plaintiffs now seek.

The LULAC Plaintiffs thus ask the Court to reopen discovery so that they may serve a subpoena on Dave's Redistricting. In their Motion, the LULAC Plaintiffs argue that the data (or "shapefiles") Mr. Trende used from Dave's Redistricting "form part of the facts or data considered by Mr. Trende in forming his opinions regarding the compactness of minority communities."[9] Accordingly, the LULAC Plaintiffs argue that "[t]he maps referenced in Mr.

---

[4] Am. Scheduling Order at 1.

[5] *Id.* at 1-2 (emphasis added).

[6] Trende Tr., ECF No. 617-4, at 146:6-17.

[7] *Id.*; *see also* Tweet, ECF No. 617-3, at 2 (screenshot of the relevant Tweet).

[8] Mot. at 3; *see also* Trende Tr. 147:5-9.

[9] Mot. at 3.

Trende's tweets . . . may undermine his testimony that minority populations cannot support additional compact districts."[10]

## I. **Legal Standard**

"Federal Rule of Civil Procedure 16(b) authorizes the district court to control and expedite pretrial discovery through a scheduling order."[11]  "Because discovery-completion deadlines are set in scheduling orders, a court's order reopening discovery is an order to modify the scheduling order."[12]  In accordance with Rule 16, a scheduling order "may be modified only for good cause and with the judge's consent."[13]

"Trial courts have broad discretion to preserve the integrity and purpose of the pretrial order in making the good-cause determination."[14]  To show good cause, the movant must "show that the deadlines could not have reasonably been met despite the diligence of the party needing the extension."[15]  The Fifth Circuit considers four factors when determining whether a movant has met the good-cause standard under Rule 16(b)(4):

---

[10] Reply, ECF No. 627, at 4.

[11] *Le-Vel Brands, LLC v. DMS Natural Health, LLC*, No. 4:20-CV-398-SDJ, 2022 WL 949952, at *2 (E.D. Tex. Mar. 28, 2022) (cleaned up) (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990)).

[12] *Id.* (cleaned up) (quoting *Crawford v. C.R. Bard, Inc.*, No. 6:19-CV-412, 2020 WL 2468771, at *1 (E.D. Tex. May 13, 2020)).

[13] FED. R. CIV. P. 16(b)(4).

[14] *Le-Vel Brands*, 2022 WL 949952, at *2 (cleaned up) (quoting *Geiserman*, 893 F.2d at 790).

[15] *Id.* (cleaned up) (quoting *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003)).

(1)     "the explanation for the failure to timely comply with the scheduling order";

(2)     "the importance of the modification";

(3)     "the potential prejudice in allowing the modification"; and

(4)     "the availability of a continuance to cure such prejudice."[16]

## II.     Analysis

### A. The Explanation for Failing to Timely Comply with the Scheduling Order

Courts have found that "[t]he most important factor bearing on the 'good cause' inquiry under Rule 16(b)(4) is whether the party seeking to modify the scheduling order can show that it has been diligent in pressing its claims but despite its diligence could not reasonably have met the scheduling deadline."[17]  While the Court agrees that "*since learning that Mr. Trende used Dave's Redistricting App* to draw additional minority opportunity districts, [the LULAC] Plaintiffs have been diligent in pressing their claims," that is not enough for the Court to find good cause.[18]

As mentioned above, expert discovery closed on August 3, 2022.  Before that deadline, on July 18, 2022, State Defendants designated Mr. Trende as a testifying expert.[19]  Five days later, on July 23, 2022, State Defendants provided the LULAC Plaintiffs with Mr. Trende's

---

[16] *Squyres v. Heico Cos.*, 782 F.3d 224, 237 (5th Cir. 2015) (cleaned up) (quoting *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 167 (5th Cir. 2010)).

[17] *Allergan, Inc. v. Teva Pharms. USA, Inc.*, No. 2:15-CV-1455-WCB, 2017 WL 119633, at *3 (E.D. Tex. Jan. 12, 2017); *see also Ryan v. U.S. Dep't of Com.*, No. 3:18-CV-558-DPJ-FKB, 2021 WL 3134909, at *2 (S.D. Miss. July 23, 2021) ("Courts within the Fifth Circuit have described the explanation for needing more time as the most important factor." (cleaned up) (quoting *Allergan*, 2017 WL 119633, at *3)).

[18] Mot. at 7 (emphasis added) (cleaned up) (quoting *Le-Vel Brands*, 2022 WL 949952, at *3).

[19] Resp. at 1.

expert report and other related materials.[20]  Even so, the parties mutually agreed to depose Mr. Trende on September 2, 2022—after the expert discovery deadline had expired.[21]

The LULAC Plaintiffs maintain that they "could not have moved for modification of the scheduling order prior to the close of discovery" because they "first learned that Mr. Trende used his Dave's Redistricting App account to draw two additional minority opportunity Texas congressional districts during his September 2, 2022 deposition" which was "after the close of fact discovery on July 15, 2022."[22]  While that may be true, that problem is of the LULAC Plaintiffs' own making.[23]  Courts in this Circuit have commonly concluded that a party who decides to depose a witness outside of the discovery timeframe has failed to act diligently to the extent required to reopen discovery.[24]

Moreover, the LULAC Plaintiffs fail to address the obvious: that Mr. Trende's tweets were discoverable far before the close of discovery.  More specifically, Mr. Trende's tweets were available to the *public* as early as their date of publication—December 14, 2020.  Accordingly, the fact that Mr. Trende's tweets were published "'in the public domain' . . . shows that [their]

---

[20] *Id.*

[21] Mot. at 1; Resp. at 1.

[22] Mot. at 6 (emphasis omitted).

[23] *See StoneCoat of Tex., LLC v. ProCal Stone Design, LLC*, No. 4:17CV303, 2019 WL 9901442, at *9 (E.D. Tex. Sept. 9, 2019) (noting that "[h]ad Plaintiffs been diligent in seeking to depose Profanchik, they would have had the information in enough time to move to compel further information within the discovery period").

[24] *See id.* at *7 ("Plaintiffs have not shown they exercised diligence for purposes of Rule 16(b) in attempting to schedule the deposition in the first place so it could be completed before the . . . deadline in the scheduling order for completing discovery."); *see also Lafontaine v. Tween Brands, Inc.*, No. 4:16-CV-335, 2017 WL 2620325, at *4 (E.D. Tex. June 16, 2017) (finding that the defendant failed to explain why it could not have deposed the plaintiff earlier than it did and further noting that if the defendant *had deposed* the plaintiff during the *allotted time*, it would have learned the information it now seeks *before* the deadline).

discovery was not beyond the realm of reasonable diligence."[25]  Had the LULAC Plaintiffs been reasonably diligent in locating these tweets, they would have had more than enough time *before the close of discovery* to request the underlying data that they now seek.[26]  The Court thus rejects the LULAC Plaintiffs' argument that they "could not have moved for modification of the scheduling order prior to the close of discovery" because they "first learned that Mr. Trende used his Dave's Redistricting App account to draw two additional minority opportunity Texas congressional districts during his September 2, 2022 deposition—after the close of fact discovery on July 15, 2022."[27]

Even more significant, the LULAC Plaintiffs' timing allegation is misleading.  As Defendants correctly note, another party plaintiff in this action *did* learn about Mr. Trende's tweets before the close of discovery (and before Mr. Trende's deposition testimony).  Specifically, Defendants maintain that "the United States did not learn about these 2020 maps by virtue only of the deposition.  Rather, the United States knew of them *in advance*—the United States *came prepared with an exhibit referencing them*."[28]  Therefore, because the LULAC Plaintiffs have failed to provide the Court with any indication that *before* the close of discovery

---

[25] *See Golf Tech, LLC v. Edens Technologies, LLC*, No. 07-194-P-H, 2009 WL 10681806, at *2 (D. Me. Apr. 30, 2009).

[26] *See, e.g.*, *Mikell v. Baxter Healthcare Corp.*, No. CV 13-07611 MMM (PJWx), 2014 WL 12588640, at *11 (C.D. Cal. Sept. 16, 2014) (indicating that a plaintiff who wanted to reopen discovery to obtain original data in a report was "on notice" that such data existed once the report was published).

[27] Mot. at 6 (emphasis omitted).

[28] Resp. at 2 (emphasis added).

*See Balschmiter v. TD Auto Fin. LLC*, No. 13-CV-1186-JPS, 2015 WL 2451853, at *9 (E.D. Wis. May 21, 2015) ("Where a party is aware of the existence of documents or other information before the close of discovery and propounds requests after the deadline has passed, those requests should be denied." (quoting *Gucci Am., Inc. v. Guess?, Inc.*, 790 F. Supp. 2d 136, 139 (S.D.N.Y. 2011))).

they investigated or tried to obtain the Dave's Redistricting data they now seek, the LULAC Plaintiffs have failed to show that there is good cause to reopen discovery.[29]

### B.  The Importance of the Modification

The second factor—the importance of the modification—likewise weighs against reopening discovery. While the LULAC Plaintiffs allege that the Dave's Redistricting data "form part of the facts or data considered by Mr. Trende in forming his opinions regarding the compactness of minority communities,"[30] the Court is not convinced.

As an initial matter, Defendants maintain that "neither Mr. Trende nor Dave's has the maps that [the LULAC Plaintiffs] seek[]."[31] Defendants therefore claim that "reopening discovery would be futile."[32] Moreover, Defendants argue that even if the maps and underlying data *did exist*, "they would likely not be probative of anything" because "the maps were not part

---

[29] *See Moroughan v. County of Suffolk*, 320 F. Supp. 3d 511, 514 (E.D.N.Y. 2018) ("A party seeking to reopen discovery bears the burden of establishing good cause and *discovery should not be extended when there was ample opportunity to pursue the evidence during discovery*." (emphasis added)); *id.* at 512 ("As a general rule, discovery should only be re-opened for good cause, depending on the diligence of the moving party." (internal citation omitted) (quoting *Krawec v. Kiewit Constructors Inc.*, No. 11-CV-123, 2013 WL 1104414, at *8 (S.D.N.Y. Mar. 1, 2013))).

[30] Mot. at 3.

[31] Resp. at 4; *see also* Trende Decl. at 2-3.

[32] Resp. at 4. *See also Mikell*, 2014 WL 12588640, at *9 (indicating that the court took the defendant's statement—that the documents the plaintiff "seeks to discover do not exist"—at face value when denying the plaintiff's motion to reopen discovery); *Hartsell v. County of San Diego*, No. 16cv1094-LAB-LL, 2020 WL 4336167, at *2 (S.D. Cal. July 28, 2020) (finding that while the evidence sought "might be proper subjects for timely discovery, [] the bare possibility that facts *may exist* and may be admissible [wasn't] enough to support exercising discretion to reopen discovery" (emphasis added)); *Pastor v. Partnership for Children's Rights*, 538 F. App'x 119, 120 (2d Cir. 2013) (finding that "the magistrate judge did not abuse her discretion in her [] order denying [the plaintiff's] motion to re-open discovery on the basis that the documents in question did not exist").

of the analysis provided in [Mr. Trende's] expert report" and the maps were drawn using pre-2020 census data.[33]

Defendants' points are well-taken. As an initial matter, the LULAC Plaintiffs have failed to show that the discovery they seek actually exists.[34] Furthermore, according to the United States Census Bureau, the 2020 Census Apportionment Results were released on April 26, 2021.[35] The analysis referred to in Mr. Trende's tweets, which were published in December 2020, thus could not possibly have been referring to, or derived from, the 2020 census. Thus, any conclusions made by Mr. Trende in his tweets could not have been in relation to the most recent data (*i.e.*, the data currently at issue in the above-captioned case).

Because the maps created by Mr. Trende used *pre*-2020 census data (*i.e.*, "out-of-date data"), the Court is not convinced that the data the LULAC Plaintiffs seek from Dave's Redistricting is material to the instant matter (as the instant matter concerns only the 2020 census data, which reflects significant population and demographics changes since the 2010 census).[36] This factor thus weighs against reopening discovery.

---

[33] Resp. at 5 (noting that "the census numbers relevant to this case had not yet even been released").

[34] *See Doe v. Columbia-Brazoria Indep. Sch. Dist. ex rel. Bd. of Trs.*, 855 F.3d 681, 687 (5th Cir. 2017) (finding that plaintiff could "offer no support for his contention that the district court abused its discretion with respect to the discovery deadlines [because] [h]is motion for a continuance was opposed, and he *failed to show that the discovery he sought actually existed*" (emphasis added)); *see also Vickers v. Thompson*, No. 1:15-cv-00129-SAB (PC), 2018 WL 347778, at *4 (E.D. Cal. Jan. 10, 2018) (declining to reopen discovery in part because the plaintiff "[did] not provide any facts to show that the evidence or information he seeks actually exists").

[35] UNITED STATES CENSUS BUREAU, https://www.census.gov/programs-surveys/decennial-census/decade/2020/planning-management/release/about-2020-data-products.html (last visited May 21, 2024).

[36] *See* America Counts Staff, *Texas Added Almost 4 Million People in Last Decade*, UNITED STATES CENSUS BUREAU, (Aug. 25, 2021), https://www.census.gov/library/stories/state-by-state/texas-population-change-between-census-decade.html.

### C. Prejudice in Allowing the Modification

As to the third factor—the potential prejudice in allowing the modification—"[c]ourts have recognized increased litigation costs as a form of prejudice."[37] Defendants maintain that "[p]rolonging discovery would prejudice both Defendants and Dave's by requiring them to spend more resources on irrelevant discovery."[38] The Court agrees. Given the size of the case and resources already expended, reopening discovery to subpoena evidence that is not evidently relevant to the instant matter would prejudice Defendants and non-party Dave's Redistricting. This factor thus weighs against reopening discovery.

### D. Availability of a Continuance

Lastly, given the number of parties, the large amount of discovery, and the complex issues of the case, the Court has already had to move and extend deadlines (including the trial date) in the above-captioned case. While the Court has not yet determined a new trial date, the lack of diligence on the LULAC Plaintiffs' part is enough for this Court to deny their motion to reopen discovery. Moreover, courts in this Circuit have found that "whatever slight cure in prejudice a continuance may bring *does not outweigh the other factors* that weigh against good cause."[39] This Court agrees. Accordingly, this Court, like other district courts, "chooses to exercise its discretion to not grant a continuance in this case."[40]

---

[37] *Connell W. Trucking Co. v. Estes Express Lines*, 3:20-CV-312, 2022 WL 21712355, at *5 (W.D. Tex. Nov. 30, 2022).

[38] Resp. at 7.

[39] *StoneCoat of Texas*, 2019 WL 9901442, at *9 (emphasis added).

[40] *Id.*

**CONCLUSION**

Having considered the four factors, the Court does not find good cause to allow a deviation from the Court's Scheduling Order. The Court therefore **DENIES** the "LULAC Plaintiffs' Motion to Reopen Discovery for the Limited Purpose of Seeking Specific Documents from Dave's Redistricting, LLC" (ECF No. 617).

**So ORDERED and SIGNED this 21 day of June 2024.**

_____
**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**

*And on behalf of:*

| | | |
|---|---|---|
| **Jerry E. Smith** | | **Jeffrey V. Brown** |
| **United States Circuit Judge** | *-and-* | **United States District Judge** |
| **U.S. Court of Appeals, Fifth Circuit** | | **Southern District of Texas** |