IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, | § § § § | |
| *Plaintiffs,* | § | |
| v. | § § | Case No. 3:21-cv-00259 [Lead Case] |
| | § | |
| GREG ABBOTT, *et al.*, | § § | |
| *Defendants.* | § § | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| *Plaintiff,* | § | |
| v. | § § § | Case No. 3:21-cv-00299 [Consolidated Case] |
| GREG ABBOTT, *et al.*, | § § | |
| *Defendants.* | § § § | |

**REPLY IN SUPPORT OF THE STATE DEFENDANTS' MOTION TO DISMISS IN PART THE UNITED STATES' AMENDED COMPLAINT**

**INTRODUCTION**

The United States invites this Court to adopt a close-enough-for-government-work approach—insisting that, because some form of live dispute remains, we should not fuss over technicalities. But here those so-called technicalities are central to this Court's jurisdiction. The United States cannot deny that the relief requested in its operative complaint against the 2021 House Plan was mooted by enactment of the 2023 Plan. The Court must, therefore, dismiss those claims for lack of Article III jurisdiction. Any other result would amount to an advisory opinion about an inoperative law.

That dismissal should be without leave to amend. "Delay becomes fatal at some period of time." *Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1163 (5th Cir. 1982). The United States has had more than a year to update its pleadings to reflect the enactment of the 2023 House Plan, yet it has continuously refused to do so despite the urging of Defendants and the litigation decisions of its co-parties. The Court should hold the United States to its informed and deliberate choice not to assert claims against the 2023 Plan.

**ARGUMENT**

**I. The United States's Claims for Relief from Texas's 2021 House Plan are Moot.**

The parties still vigorously dispute the propriety of Texas's electoral districts. But an ongoing dispute does not a justiciable case make. The United States must demonstrate all three elements of standing for each of its claims at every stage of the litigation. *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006) (Smith, J.). And it must do so "separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs.*, 528 U.S. 167, 170 (2000). At this stage, the United States cannot meet the redressability requirement as to its claims for declaratory judgments against "the 2021 House Plan." Dkt. 318 at 62–63. The 2021 House Plan is no longer in effect, so a declaration that that the 2021 Plan is unlawful could not provide any meaningful relief.

The absence of on-point precedent speaks both to the oddity of the United States' refusal to amend its complaint and to the elementary nature of the legal principles at issue. Nevertheless, the

Fifth Circuit's decision in *Bayou Liberty Ass'n, Inc. v. Army Corps of Engineers* is instructive. 217 F.3d 393 (5th Cir. 2000). At issue in that case was a Clean Water Act permit for the construction of a retail complex. *Id.* at 395. An association of nearby homeowners sued the Army Corps of Engineers to halt issuance of the permit, *id.*, but by the time the litigation reached the Fifth Circuit the complex had already been completed, *id.* at 396. The Fifth Circuit concluded that each of the plaintiff's outstanding claims for relief were moot because they were all aimed at halting construction of the retail complex. *Id*. So too here. Absent some legally cognizable theory—which is nowhere alleged in the United States' operative complaint—a declaratory judgment denouncing just the old 2021 House Plan would leave the new 2023 Plan in place. Thus, such an order would do nothing to redress the United States' alleged injuries.

    That the United States may *think* the 2023 Plan infringes on the Voting Rights Act for the same reasons it thought the 2021 Plan did is jurisdictionally irrelevant. The plaintiffs in *New York State Rifle & Pistol Association* likewise had strong views about the many ways in which New York City's amended firearms regulation infringed on their Second Amendment rights. 590 U.S. 336, 337 (2020). But that did not stop the Supreme Court from holding that their claims for prospective relief against the old law became moot once the old law was amended by the new one. *Id*. Good order and proper respect for the limits of federal jurisdiction required that, before proceeding, the plaintiffs go back to the district court to amend their complaints and account for the change in the law. *Id*. Nor would the Supreme Court employ a blue pencil to circumvent those principles. The plaintiffs urged the Court to treat their existing complaint as seeking damages as well as prospective relief from the superseded firearms regulation. *Id*. But the Court refused to intervene on the plaintiffs' behalf to save the appeal, instead instructing the lower courts on remand to "consider whether petitioners may still add a claim for damages." *Id. Accord Bayou Liberty*, 217 F.3d at 398 ("[A] court may not fashion relief not requested below in order to keep a suit viable.").

    The United States insinuates (at 5) that Defendants are trying to win on a "technicality." Setting aside that this purported technicality—Article III of the United States Constitution—is the "central mechanism" of separating "what activities are appropriate to legislatures, to

executives, and to courts," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992), keeping one's pleadings up to date is one of those necessary housekeeping items that is easily accomplished but indispensable to orderly litigation—especially in a complex case such as this one. That is why the judicial panel hearing the litigation concerning Texas's previous redistricting cycle, when it permitted the plaintiffs there to update their pleadings to account for passage of the 2013 Plans, instructed that "Plaintiffs' amended complaints should clearly specify whether such claims are being maintained." *Perez v. Texas*, 970 F. Supp. 2d 593, 605 (W.D. Tex. 2013). Neither the Court nor Defendants should be put in the position of having to guess which parts of Plaintiffs' many complaints remain relevant despite the changing legal landscape.

The United States, no less than the New York State Rifle & Pistol Association, must go through the motions of updating its pleadings to reflect changes in the law. That is an everyday feature of American litigation from which no one is exempt.

## II. Dismissal Should be Without Leave to Amend.

The federal rules "evince[] a bias in favor of granting leave to amend." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872 (5th Cir. 2000) (quoting *Martin's Herend Imps., Inc. v. Diamond & Gem Trading U.S. Am. Co.*, 195 F.3d 765, 770 (5th Cir. 1999)). Even so, "[l]iberality in pleading does not bestow on a litigant the privilege of neglecting her case for a long period of time." *Daves v. Payless Cashways, Inc.*, 661 F.2d 1022, 1025 (5th Cir. 1981). "At some point in the course of litigation, an unjustified delay preceding a motion to amend goes beyond excusable neglect, even when there is no evidence of bad faith or dilatory motive." *Id. See also Chitimacha Tribe*, 690 F.2d at 1163–64 (listing examples of cases in which the district court acted within its sound discretion by refusing leave to amend after a long delay). This balance is designed to "give a party a fair chance to present claims and defenses," while also preventing "a busy district court (from being) imposed upon by the presentation of theories seriatim." *Id.* (quoting *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981)).

The United States has dangled the possibility of a supplemental complaint for over a year. Even now, after confirming by email that "[t]he United States does not intend to supplement or

amend its complaint to address the 88th Legislature's reenactment of the redistricting plans initially passed by the 87th Legislature," Dkt. 801 at Ex. 1, the United States explains that this position is "subject to change as this case progresses"—it may "warrant reconsideration" if this Court concludes (rightly) that the United States' claims are moot. Dkt. 802 at 6. Yet, at the same time, the United States, along with Private Plaintiffs, urge this Court to reopen discovery and schedule trial in 120 days. *See generally* Dkt. 798. This begs the question: how far must the case progress before State Defendants have certainty over the claims the United States intends to pursue? The United States made the deliberate choice not to amend its complaint and instead litigate its existing claims, despite Defendants having repeatedly inquired about the pleadings deficiency for over a year. The Governor, after all, signed the 88th Legislature's HB1000 into law back in June of 2023. And State Defendants first broached the subject of supplementation in a meet and confer on August 25, 2023, and again on March 28, 2024. *See* Dkt. 730 at 7 (informing this Court of plaintiffs' response).[1]

"When there has been an apparent lack of diligence, the burden shifts to the movant to prove that the delay was due to excusable neglect." *Chitimacha Tribe*, 690 F.2d at 1163. But the United States has not even attempted to explain its conduct here. Indeed, it has refused to act even in the face of Defendants' prompting. *Cf. id.* at 1164 (noting that "Chitmachas failed to correct pleading deficiencies when given the opportunity to do so"). "In light of plaintiff's unexplained dilatoriness," *Nilsen v. City of Moss Point*, 621 F.2d 117, 122 (5th Cir. 1980), the Court should dismiss the United States' complaint without leave to amend.

---

[1] The United States would blame State Defendants' motions to dismiss for delay in this case. Response at n.3. *First*, this Court partially granted State Defendants' previous motions to dismiss the United States' complaints, proving the motions meritorious rather than dilatory. *See* Dkts. 307 and 675. *Second*, the instant motion to dismiss could have been fully briefed and disposed of a year ago had the United States given a straight answer about its intent not to amend following passage of HB1000.

## CONCLUSION

Defendants respectfully move for dismissal without leave to amend the United States's claims against the 2021 House Plan.

Date: August 20, 2024

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Legal Strategy

RYAN WALTERS
Chief, Special Litigation Division

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
(512) 463-2100
ryan.kercher@oag.texas.gov
kathleen.hunker@oag.texas.gov
will.wassdorf@oag.texas.gov
lanora.pettit@oag.texas.gov
drew.mackenzie@oag.texas.gov

/s/ Ryan G. Kercher
RYAN G. KERCHER
Deputy Chief, Special Litigation Division
Tex. State Bar No. 24060998

Kathleen T. Hunker
Special Counsel
Tex. State Bar No. 24118415

William D. Wassdorf
Deputy Chief, General Litigation Division
Tex. State Bar No. 24103022

Lanora C. Pettit
Principal Deputy Solicitor General
Tex. State Bar No. 24115221

J. Andrew Mackenzie
Assistant Attorney General
Tex. State Bar No. 24138286

COUNSEL FOR STATE DEFENDANTS

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on August 20, 2024, and that all counsel of record were served by CM/ECF.

/s/ Ryan G. Kercher
RYAN G. KERCHER