

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **LEAGUE OF UNITED LATIN AMERICAN CITIZENS,** *et al.*, | § § § | |
| *Plaintiffs*, | § § § | **EP-21-CV-00259-DCG-JES-JVB** **[Lead Case]** |
| **EDDIE BERNICE JOHNSON,** *et al.*, | § § § | |
| *Plaintiff-Intervenors*, | § § | **&** |
| **v.** | § § | **All Consolidated Cases** |
| **GREG ABBOTT,** *in his official capacity as Governor of the State of Texas*, *et al.*, | § § § § | |
| *Defendants*. | § § | |

## ORDER

Before the Court is the United States' Renewed Motion to Compel hundreds of withheld

documents from Thomas Bryan and Eric Wienckowski (collectively "Respondents").[1]  As

background, Texas Representative Todd Hunter hired Butler Snow LLP (a law firm) to assist

with redistricting matters.[2]  Relevant here, Butler Snow hired Mr. Bryan (as an expert

demographer) "to work on all four of the maps subject to this litigation."[3]  Mr. Bryan then hired

---

[1] Renewed Mot., ECF No. 634.

[2] *See League of United Latin Am. Citizens v. Abbott*, No. 3:21-CV-00299-DCG-JES-JVB, 2022 WL 3353409, at *1 (W.D. Tex. Aug. 12, 2022) [hereinafter *First Order to Compel*] (Order requiring Thomas Bryan and Eric Wienckowski ("Respondents") to produce documents and/or a privilege log to the United States) (providing background on Respondents' relationship to this litigation).

[3] *See id.*

1

Eric Wienckowski, to assist in "duties [that] were the same or similar" to those of Mr. Bryan.[4]

Respondents thus served as expert consultants to Butler Snow.

In May 2022, the United States subpoenaed Respondents.[5]  In response, Respondents

"made broad privilege claims and asserted that they would not produce any documents the

United States had requested."[6]  After Respondents declined to produce any of the requested

documents by the deadline,[7] the United States moved to compel Respondents to comply with its

non-party document subpoenas.[8]

The Court granted the United States' motions in part and ordered Respondents "to

produce documents and/or a privilege log to the United States."[9]  In that Order, the Court further

indicated that the United States could renew its motions if Respondents failed to comply with the

Order.[10]

The United States has now filed a Renewed Motion to Compel arguing that "Respondents

have failed to comply with the Court's order" because Respondents:

(1) "continue to withhold nearly a thousand relevant documents based on claims of attorney-client privilege";

(2) "have failed to produce a compliant privilege log, as hundreds of entries use the same vague and conclusory language"; and

---

[4] *Id.* (outlining the terms of Mr. Bryan's Engagement Letter and noting that "'Mr. Wienckowski is a consulting-only expert who was hired by Butler Snow LLP's consulting-only expert [Mr. Bryan] to assist Butler Snow LLP'" (quoting Obj. Subpoena, Resp. Ex. 4, ECF No. 390–4, at 16)).

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *See* Mot. Compel Bryan, ECF No. 407; Mot. Compel Wienckowski, ECF No. 384.

[9] *First Order to Compel* at *1.

[10] *Id.* at *6.

(3) "have improperly redacted those few documents that have been disclosed."[11]

The United States thus asks the Court to "enforce its prior order and compel Respondents to

produce in full approximately 974 withheld documents and 74 redacted documents."[12]  For the

reasons that follow, the Court grants the United States' Renewed Motion in part.

## I.     LEGAL STANDARD

Federal Rule of Civil Procedure 45(d)(2)(B)(i) allows a party who has served a subpoena

on a non-party to "move the court . . . for an order compelling production."[13]  In turn, Rule

45(e)(2)(A) mandates that "[a] person withholding subpoenaed information under a claim that it

is privileged or subject to protection as trial-preparation material must (i) expressly make the

claim; and (ii) describe the nature of the withheld documents . . . in a manner that, without

revealing information itself privileged or protected, will enable the parties to assess the claim."[14]

## II.    DISCUSSION

In its Renewed Motion, the United States argues that Respondents have incorrectly

withheld approximately 974 relevant documents and improperly redacted an additional 74

documents based on claims of attorney-client privilege.  The United States specifically argues

that:

(1) "the attorney-client privilege does not apply to the 603 documents containing
statistical analyses and draft maps";

---

[11] Renewed Mot. at 2.

All page citations in this Order refer to the page numbers assigned by the Court's CM/ECF
system, not the document's internal pagination.

[12] *Id.*

[13] FED. R. CIV. P. 45(d)(2)(B)(i).

[14] FED. R. CIV. P. 45(e)(2)(A)(i)–(ii).

(2) "the attorney-client privilege also does not apply to the 371 withheld emails" concerning "preliminary planning based on estimates, working concepts of districts, and scheduling meetings" "because Respondents have not carried their burden to prove that they provide primarily legal advice, as opposed to strategic, policy, or political information"; and

(3) "Respondents have also improperly redacted 74 documents because they contain nonlegal information." These documents include emails and their attachments with information concerning "hourly rates, hours spent on particular tasks, and descriptions of services performed, as well as unidentifiable blocks of text" redacted.[15]

Respondents oppose the United States' Renewed Motion.[16] The Court will address the parties' arguments below.[17]

1. **Draft Maps and Statistical Analyses (603 Documents)**

Respondents argue that because the draft maps and statistical analyses at issue were prepared by Respondents *at the direction of* law firm Butler Snow and "were necessary for the firm's lawyers to provide legal advice to their clients," such documents "fit squarely within the confines of the attorney-client privilege" and thus need not be produced.[18] Notably, while Respondents themselves are not attorneys, they argue that their roles as expert consultants for attorneys (*i.e.*, for the Butler Snow law firm) shield their work and communications under the attorney-client privilege. The United States, on the other hand, argues that because these

---

[15] Renewed Mot. at 4–5 (cleaned up).

[16] The Court notes that while Respondents do not waive their claims of privilege under the work product doctrine, they "recognize that the Court previously ruled that the work product doctrine does not apply to the documents" at issue. Resp., ECF No. 640, at 10 n.2. The Court therefore notes, but does not address, Respondents' assertions of work product protections.

[17] *See supra* note 16.

[18] Resp. at 8.

documents contain factual and non-legal information, they are not covered by the privilege.[19]
The Court agrees with the United States.

As an initial matter, the Court has already rejected the proposition that "revealing the
analyses or data" underlying redistricting proposals "reveals [] privileged communication."[20]
Specifically, earlier in this case,[21] the Court rejected the argument that "redistricting documents
concerning redistricting proposals are not merely factual" but instead "are communications."[22]
Rather, the Court concluded that "[b]lanket protection for [such] documents as
'communications'" would reduce "to a nullity" "the principle that the privilege does not shield

---

[19] Renewed Mot. at 6.

[20] *See League of United Latin Am. Citizens v. Abbott*, No. 3:21-CV-00299-DCG-JES-JVB, 2022 WL 2921793, at *6–7 (W.D. Tex. July 25, 2022) [hereinafter *Legislators Order*], *vacated*, 2023 WL 4697109 (5th Cir. 2023) (vacating the Court's Order on legislative privilege grounds), *on remand*, 2023 WL 8880313 (W.D. Tex. Dec. 21, 2023) (resolving only issues of legislative privilege while declining to address the attorney-client privilege).

Accordingly, the Court adheres to its prior rulings regarding the attorney-client privilege, which the Fifth Circuit did not address.

*See also Ohio A. Philip Randolph Inst. v. Smith*, No. 1:18cv357, 2018 WL 6591622, at *3 (S.D. Ohio Dec. 15, 2018) (ordering the production of "facts, data, and maps" over assertions of attorney-client privilege); *First Order to Compel* at *4 (citing *Ohio A. Philip Randolph* approvingly for the proposition that facts, data, and maps are not covered by the attorney-client privilege).

[21] In February and March 2022, the United States served subpoenas *duces tecum* on Texas legislators, their staff, and a staff member of the Texas Legislative Council ("the Legislators") "seeking documents including redistricting proposals, legislative communications, and data used during the redistricting process." *See Legislators Order* at *1.

As noted above, the Court rejected the Legislator's claims of privilege based on attorney-client privilege, the work-product doctrine, and the legislative privilege. While the Fifth Circuit vacated the Court's Order as to its application of the *legislative* privilege, the Fifth Circuit did not address the Court's application of the *attorney-client privilege* or *work-product doctrine*. The Court thus follows its prior Order insofar as the attorney-client privilege and work-product doctrine apply. *See supra* note 20.

[22] *Id*. at *6; *see id.* (rejecting the Legislators' "several examples of how a document containing factual information might well also contain data further manipulated for purposes of describing or evaluating a particular proposal, to thereby effectuate a privileged communication between client and attorney" (cleaned up) (quoting Legislators' Resp., ECF No. 379, at 4)).

underlying facts."[23]  Accordingly, the Court held that documents containing redistricting data and

related factual information were "not categorically shielded by attorney-client privilege"[24] and

required the Legislators produce the data and analyses underlying redistricting proposals.[25]

However, to protect any valid claims of attorney-client privilege, the Court allowed the

Legislators to produce a redacted version "[t]o the extent any document has annotations or notes

implicating bona fide legal advice or containing privileged material."[26]

Thus, in an analogous context, the Court has already rejected the Respondents' argument

that documents containing statistical analyses and draft maps are protected by attorney-client

privilege.[27]  The Court thus follows its prior rulings on attorney-client privilege[28] and orders

Respondents to produce the 603 documents containing data and statistical analyses.  In

accordance with previous directives from the Court, Respondents may redact annotations or

notes implicating bona fide legal advice.

2. **Emails with Butler Snow Employees and Other Consultants (371 Documents)**

The United States additionally argues that "Respondents have failed to prove that the

attorney-client privilege applies to the remaining emails exchanged with Butler Snow consultants

and attorneys," which (according to the Respondents' privilege log) concern "working concepts

---

[23] *Id*. at *7.

[24] *Id.*

[25] *Id.* at *13 (ordering Legislators to produce documents "relating to underlying facts concerning the 2021 Texas State House Redistricting Plan and the 2021 Texas Congressional Redistricting Plan, including those set forth on pages 1–25, 232–255, and 315–356" of ECF No. 351-7).

[26] *Id.* at *7.

[27] Resp. at 8 (arguing that the documents "were necessary for the firm's lawyers to provide legal advice to their clients" and "contain[ed] expert consulting analysis that is inseparable from, is connected to, and underlies legal advice Butler Snow provided to its clients").

[28] *See generally Legislators Order* at *6–11.

of districts," "preliminary planning based on estimates," and "scheduling meetings."[29]  In

support of its claim, the United States argues that Respondents have failed to meet the privilege's

procedural and substantive requirements.[30]

Procedurally, the United States maintains that Respondents' second revised privilege log

is deficient because it "repeats boilerplate across all of the logged emails," "relies on vague

descriptions," and "is replete with conclusory language."[31]  Substantively, the United States

argues that "[e]ven putting the second revised privilege log's deficiencies aside, Respondents

have not carried their burden of proving that all of the emails are primarily legal, as there are

strong bases to believe they instead engaged in political/partisan, nonlegal analysis."[32]

To address the United States' substantive argument, the Court has already determined in a

prior Order that communications with Butler Snow and outside mapping consultants (like

Respondents)[33] "may well be privileged as containing legal advice."[34]  Thus, assuming, without

---

[29] Renewed Mot. at 4, 7–8.

[30] *Id.* at 7 ("[T]o prove that the attorney-client privilege applies to the remaining emails
exchanged with Butler Snow consultants and attorneys . . ., as a procedural matter, Respondents must
specifically assert privilege with respect to particular documents." (cleaned up) (quoting *United States v.
El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982))); *id.* ("And substantively, Respondents must show that the
emails were made for the primary purpose of securing either a legal opinion or legal services." (cleaned
up) (emphasis omitted) (quoting *Equal Emp. Opportunity Comm'n v. BDO USA*, 876 F.3d 690, 695 (5th
Cir. 2017))).

[31] *Id.* at 8–9.

[32] *Id.* at 9.

[33] Notably, Mr. Bryan (one of the Respondents in the instant matter) was also subject to the
Court's previous Order.  *See Legislators Order* at *11 (concluding that just because "these consultants
assisted on 'technical' matters does not categorically move their work beyond the scope of the attorney-
client privilege . . . [because] such technical work may well have been necessary in reviewing the legality
of the proposed legislation and compliance with the Voting Rights Act").

[34] *See id.* (ordering Legislators to produce documents from Butler Snow and its consultants to the
Court for *in-camera* inspection).

deciding, that Respondents' privilege log *is* deficient,[35] "a genuine question as to whether [the email communications] contain[] privileged communications" still remains.[36]

    When faced with an inadequate privilege log, the court may:

    (1) "permit the party another chance to submit a more detailed log";

    (2) "deem the inadequate log a waiver of the privilege";

    (3) "conduct an *in camera* inspection of the withheld documents"; or

    (4) "conduct an *in camera* inspection of a select sample of the withheld documents."[37]

Thus, the Court will conduct an *in-camera* review in order to determine whether emails with Butler Snow employees and consultants are privileged.[38]  The Court thus orders Respondents to produce the contested emails to the Court for *in-camera* inspection[39] (as it did last time such an issue came before the Court).[40]

---

[35] *See* Renewed Mot. at 8–9; Reply, ECF No. 657, at 5–7 (arguing that Respondents' second revised privilege log is still deficient and thus waives any privilege claims).

[36] *Logue v. Rand Corp.*, 610 F. Supp. 3d 399, 401 (D. Mass. 2022).

[37] *Civic Center Site Dev., LLC v. Certain Underwriters at Lloyd's London (Consortium #9226)*, No. 23-1071, 2023 WL 5974843, at *4 (E.D. La. Sept. 14, 2023).

[38] *Logue*, 610 F. Supp. 3d at 401 (indicating that when a "genuine question as to whether [an email] contains privileged communications" arises, courts "can and perhaps should conduct an in camera review to settle the issue" "[e]ven if the amended privilege log is now deemed to claim a legitimate privilege").

[39] *See In re Grand Jury Subpoena* (Mr. S.), 662 F.3d 65, 70 (1st Cir. 2011) ("[I]n camera reviews should be encouraged, not discouraged.  In that spirit, federal courts commonly—and appropriately— conduct such reviews to determine whether particular documents are or are not privileged.").

    *See also SEC v. Navellier Assoc., Inc.*, No. 17-cv-11633, 2019 WL 285957, at *4 (D. Mass. Jan. 22, 2019) ("[T]he decision to conduct an in camera review generally lies within the discretion of [the] court."); *In re Grand Jury Subpoena* (Mr. S.), 662 F.3d at 70 ("When, as in this case, the assertion of privilege is subject to legitimate dispute, the desirability of in camera review is heightened.  Even if the parties do not explicitly request such a step, a district court may be well advised to conduct an in camera review" (internal citations omitted)).

[40] *See Legislators Order* at *10–11 ("The Legislators have shown these documents may well be privileged as containing legal advice.  That these consultants assisted on 'technical' matters does not

### 3. **Redacted Invoicing Information (74 Documents)**

In its Renewed Motion, the United States further argues that Respondents produced 74 emails with improperly redacted descriptions of services performed, hourly rates, and amounts.[41] The United States argues that such documents are relevant to the United States' claims "insofar as they describe the nature, quantity, and value of analysis requested . . . and performed."[42]

Respondents, on the other hand, argue that the redacted materials on the invoices submitted to Butler Snow describe the work they performed for the law firm in detail and are thus privileged. Specifically, Respondents maintain that their redactions to "(1) the narratives describing in detail the work Respondents performed for Butler Snow; and (2) the line-item hourly payments . . . made to Respondents" were justified.[43]

When last faced with this issue, the Court required the Legislators to produce all retention agreements and invoices relating to any legal services provided throughout the redistricting legislation.[44] Still, the Court allowed the Legislators to redact such documents "[t]o the extent [any such] invoices include[d] descriptions that implicate[d] legal advice."[45]

---

categorically move their work beyond the scope of attorney-client privilege . . .. Nevertheless, just because attorneys are involved in the process does not automatically shield the work of such technical experts, nor does it necessarily protect all communications between the parties. The documents must be produced to the Court for *in-camera* inspection.").

[41] Renewed Mot. at 4.

[42] *Id.* at 6 & n.1.

[43] Resp. at 10.

[44] *See Legislators Order* at *13.

[45] *Id.*

In the instant matter, Respondents have already provided the United States with

responsive emails and attachments containing invoicing information.[46]  However, a cursory

review of the redacted documents at issue makes it clear that the Court must clarify the type of

information that the Respondents may redact.[47]

The Court uses one of the Respondents' produced emails to illustrate.[48]  For instance, an

email produced by Respondents regarding the "April 2021 Invoice for Texas Redistricting

Services" has been so heavily redacted that the Court cannot determine whether the contents are

protected by the attorney-client privilege; all but one paragraph in the two-page email have been

completely blacked-out.[49]  Not only that, but the contents of one of the email's attachments

(titled "Appendix 1 2010 to 2020 Census Block Geography Correspondence Changes") have

been completely redacted.[50]  Again, without more, it is impossible for the Court to determine

whether the redacted information is in fact privileged.  Finally, upon reviewing Respondents'

redactions on the email's second attachment (titled "Appendix 2 March 2021 Summary

Invoice"), it becomes clear to the Court that Respondents' redactions are plainly over-broad—at

---

[46] *Compare id.* at *8 (indicating that the Legislators *withheld* retention agreements and invoices and were thus ordered to produce such documents but were able to make any necessary redactions), *with* Renewed Mot. at 4 (indicating that the Respondents already *produced* 74 emails and attachments but with heavy redactions).

[47] *See, e.g.*, Exhibit 3, ECF No. 634-4 (documents with redactions produced by Respondents), at 42–71 (exemplifying, for instance, that Respondents incorrectly redact the "Description" column in its entirety on each invoice provided).

[48] *Id.* at 56–59 (example of Respondents' redactions on a two-page email with two appendices).

[49] *Id.* at 56–57 (providing only one paragraph of substantive text in a two-page email).

[50] *Id.* at 58 (illustrating that aside from the title, the entire document (Appendix 1) has been redacted).

least in this instance.[51]  In particular, Respondents have (incorrectly) redacted in their entirety the

columns describing (1) the service they provided to Butler Snow and (2) the number of hours

spent doing so.[52]

What's worse is that Respondents' privilege log contains near-identical boilerplate

claims of privilege for each entry of a similar type (*i.e.*, each monthly invoice email and its

related attachments are described with the same generalized boilerplate language).[53]  Thus, the

Court cannot determine whether Respondents' redactions are proper.

For one, the Fifth Circuit has specifically held that "the general nature of services

[provided] is not protected by the [attorney-client] privilege."[54]  "As another general rule, client

---

[51] *See id*. at 59 (illustrating that on the "March 2021 Summary Invoice," the date and net amount of money are provided, while the description of the task and the number of hours performed are redacted).

[52] *Id.* (redacting in full descriptions of the services provided and the amount of hours spent on each service).

In response to the United States' Renewed Motion, Respondents maintain that "federal courts routinely hold that narratives on invoices describing legal work fall within the scope of the attorney-client privilege." Resp. at 10–11 (citing cases).  However, Respondents' selective readings of the cases they cite is unavailing.  For example, one of the cases Respondents rely on to support their redactions describing the work performed and number of hours doing so also stands for the proposition that "[b]illing records and hourly statements which do not reveal client communications usually are not privileged." *Cottier v. City of Martin*, No. CIV 02-5021, 2007 WL 4568989, at *3 (D.S.D. Dec. 19, 2007); *see* Resp. at 10–11 (citing *Cottier* to justify redactions).  Furthermore, the same courts that Respondents rely on have held that "[a] blanket claim of privilege is not sufficient, and it is not the Court's responsibility to peruse the documents and pick out privileged information." *E.g.*, *Cottier*, 2007 WL 4568989, at *3.  Thus, without a more precise privilege log explaining Respondents' redactions, the Court cannot determine whether Respondents' redactions correctly fall within the scope of privilege.  *See infra* note 53 and accompanying text.

[53] *See, e.g.*, Exhibit 1, ECF No. 634-2 (Respondents' revised Privilege Log), at 71 (describing eight of the documents that Respondents produced with redactions with identical privilege log descriptions—"Confidential invoice from Butler Snow consultant describing work performed at the direction of Butler Snow attorneys that was relied upon by Butler Snow attorneys in providing advice to their clients").

[54] *Nguyen v. Excel Corp.*, 197 F.3d 200, 206 (5th Cir. 1999); *see also Monroe's Estate v. Bottle Rock Power Corp.*, No. 03-2682, 2004 WL 737463, at *11 (E.D. La. Apr. 2, 2004) ("[T]he purpose for which an attorney was retained and the steps taken by the attorney discharging his obligations are not privileged.").

identities and fee arrangements are not protected as privileged."[55]  Thus, "financial transactions

between the attorney and client, including the compensation paid by or on behalf of the client are

not within the privilege except in special circumstances not present here."[56]

In applying this standard, district courts have held that "[i]t follows that billing statements

and hourly records also fall short of attorney-client privilege protection."[57]  Accordingly,

"attorney[s'] retainer agreements," "information relating [to] billing, contingency fee contracts,

fee-splitting arrangements, hourly rates, hours spent by attorneys working on the litigation, []

payment [of] attorney's fees," "[b]illing statements, phone logs, transmittal letters, fax cover

sheets and/or records which simply reveal the amount of time spent, the amount billed and the

type of [fee] arrangement are fully subject to discovery."[58]  Thus, Respondents' claims of

---

[55] *Taylor Lohmeyer Law Firm P.L.L.C. v. United States*, 957 F.3d 505, 510 (5th Cir. 2020)
(cleaned up) (quoting *In re Grand Jury Subpoena for Att'y Representing Crim. Defendant Reyes-Requena*,
926 F.2d 1423, 1431 (5th Cir. 1991)); *see also Crum & Forster Specialty Ins. Co. v. Great W. Cas. Co.*,
No. EP-15-cv-00325-DCG, 2016 WL 10459397, at *8 (W.D. Tex. Dec. 28, 2016) ("The Fifth Circuit has
long recognized the general rule that matters involving the payment of attorney's fees are not generally
privileged." (cleaned up) (quoting *In re Grand Jury Subpoena*, 913 F.2d 1118, 1123 (5th Cir. 1990))); *Hill
v. Hunt*, No. 3:07-CV-02020-O, 2008 WL 4108120, at *7 (N.D. Tex. Sept. 4, 2008).

[56] *United States v. Davis*, 636 F.2d 1028, 1044 (5th Cir. Unit A Feb. 1981) (cleaned up); *see also
Hunter v. Copeland*, No. Civ.A. 03-2584, 2004 WL 1161368, at *5 (E.D. La. May 24, 2004)
("[S]tatements and invoices . . . [and] fee arrangements are [] outside the protection of the attorney-client
privilege."); *Reynolds v. State Farm Ins. Co.*, No. 06-3203, 2007 WL 9811024, at *3 (E.D. La. Oct. 29,
2007) ("Correspondence about, payments of and invoices for attorney's fees are not protected from
discovery by the attorney-client privilege.  The invoices themselves are merely a byproduct of the fact of
the representation and are not protected by any of the asserted privileges or doctrines." (cleaned up)
(quoting *Stonehenge/Fasa-Tex., JDC, L.P. v. Miller*, No. Civ.A. 3:94-CV-0912-G, 1998 WL 826880, at *1
(N.D. Tex. Nov. 23, 1998))).

[57] *Hunter*, 2004 WL 1161368, at *5; *see also Stonehenge/Fasa-Texas*, 1998 WL 826880, at *2–3
(holding that invoices are not protected from discovery by the attorney-client privilege or the work
product doctrine since they are "merely a byproduct of the fact of the representation").

[58] *Monroe's Estate v. Bottle Rock Power Corp.*, No. 03-2682, 2004 WL 737463, at *11 (E.D. La.
Apr. 2, 2004); *see also S. Scrap Material Co. v. Fleming*, No. Civ.A. 01-2554, 2003 WL 21474516, at *13
(E.D. La. June 18, 2003) ("Information relating to billing, contingency fee contracts, fee-splitting
arrangements, hourly rates, hours spent by attorneys working on litigation, and payment of attorney's fees
does not fall within the attorney-client or the work product privilege.").

attorney-client privilege as applied to their invoicing information (*e.g.*, the amount of time spent on a particular task and the descriptions of services performed) are misplaced.[59]

Accordingly, the Court orders Respondents to re-produce the 74 documents at issue to the United States *without* redactions as to the general description of each service performed,[60] the accompanying number of hours spent on each task,[61] and the respective hourly rate[62] (at the very least).[63]  The Court further orders Respondents to re-review these documents and ensure that any redactions are in accordance with this Order and the legal standard as described therein.[64]

---

[59] *See, e.g.*, *Taylor Energy Co., L.L.C. v. Underwriters at Lloyd's London Subscribing to Ins. Coverage Evidence by Pol'y No. HJ109303*, No. 09-6383, 2010 WL 3952208, at \*2 (E.D. La. Oct. 7, 2010) ("This Court finds that information such as contingency fee contracts, hourly rates, hours spent by attorneys working on this litigation, attorney's fees charged and costs incurred are not confidential communications and are therefore not privileged.  Invoices are not protected from discovery by the attorney-client privilege.  The invoices themselves are merely a byproduct of the fact of the representation and are not protected by any of the asserted privileges." (cleaned up) (quoting *Stonehenge/Fasa-Texas, JDC, L.P. v. Miller*, 1998 WL 826880, at \*1)).

[60] *Nguyen*, 197 F.3d at 206 (General descriptions of the work provided are not protected by the attorney-client privilege.).

[61] *Taylor Energy Co.*, 2010 WL 3952208, at \*2 (The number of "hours spent by attorneys working on this litigation . . . are not 'confidential communications' and are therefore not privileged.").

[62] *Id*. ("[H]ourly rates . . . are not 'confidential communications' and are therefore not privileged.").

[63] *E.g.*, *Chaudhry v. Gallerizzo*, 174 F.3d 394, 402 (4th Cir. 1999) ("Typically, the attorney-client privilege does not extend to billing records and expense reports.").

[64] The Court notes that Respondents' email correspondence about/associated with these payment documents may also be subject to disclosure.  *Reynolds*, 2007 WL 9811024, at \*3 ("Correspondence about, payments of and invoices for attorney's fees are not protected from discovery by the attorney-client privilege." (cleaned up) (quoting *Stonehenge/Fasa-Texas, JDC, L.P. v. Miller*, 1998 WL 826880, at \*1)).

Furthermore, any redactions must be indicated on a revised privilege log.  At present,

Respondents' most recent privilege log[65] fails to provide the level of specificity required.[66]

Specifically, Respondents' privilege log "does not set forth facts that suffice to establish that each

element of the privilege claimed is applicable."[67]  The Court thus reminds Respondents that they

may *only* redact information that reveals a "specific research or litigation strategy which would

be entitled to protection from disclosure."[68]  Should Respondents continue redacting documents

---

[65] *See, e.g.,* Exhibit 1 at 71 (providing the same non-specific description for eight entries); *id.* at 70 (indicating that all documents contain "[c]onfidential redistricting analysis performed at the direction of Butler Snow attorneys relied upon in providing advice to their clients").

[66] *See Taylor Energy Co.*, 2010 WL 3952208, at *2 ("For example, privilege log entries that state that the documents address 'legal advice' lack sufficient information. Further, the mere assertion of a lawyer that responsive materials or information are attorney-client privileged . . . is not evidence establishing that the information is privileged." (cleaned up) (quoting *Estate of Manship*, 232 F.R.D. 552, 561 (M.D. La. 2005))).

While Respondents argue that the privilege log standards for nonparties, such as themselves, are less rigorous than those for parties, *see* Resp. at 13–14, their argument is unavailing.  *See, e.g.*, *Am. Federation of Musicians of the U.S. & Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 46 (N.D. Tex. 2015) ("A non-party's Rule 45(d)(2)(B) objections to discovery requests in a subpoena are subject to the same prohibition on general or boiler-plate objections and requirements that the objections must be made with specificity and that the responding party must explain and support its objections.  The Court can see no reason to distinguish the specificity required in a non-party's written objections to document requests in a subpoena from that required in a party's objections to document requests that the Federal Rules authorize as to parties." (cleaned up)); *id.* (noting that "Rule 45(e)(2) governs a non-party's withholding of information on the grounds of privilege" and is "substantively identical to Rule 26(b)(5)'s requirements as to a responding party"); *id.* (concluding that "general or so-called boilerplate or unsupported objections are improper under Rule 45(d)(2)(B)").

[67] *Taylor Energy Co.*, 2010 WL 3952208, at *2 (indicating that "[d]ocument descriptions such as 'Email forwarding attorney client communication,' 'Email regarding attorney input and advice regarding anticipated litigation issues,' and 'Email forwarding attorney report' fail[ed] to set forth adequate facts for this Court—and for plaintiff—to determine whether the claimed privilege protects the document from disclosure").  *Compare id.* *with* Exhibit 1 at 70 (using the same vague and non-descript language for *each* entry (*e.g.*, "Confidential redistricting analysis . . . relied upon in providing advice to their clients") that courts have found insufficient).

[68] *Chaudhry*, 174 F.3d at 402 (4th Cir. 1999) (quoting *Clarke v. Am. Com. Nat'l Bank*, 974 F.2d 127, 130 (9th Cir. 1999)); *see also id.* 402–03 (citing *In re Grand Jury Proceedings*, 33 F.3d 342, 354 (4th Cir. 1994) for the proposition that "the determination as to whether attorney billing statements are privileged hinges on whether the statements reveal something about the advice sought or given").

under a claim of attorney-client privilege, the Court orders Respondents to provide an updated

privilege log "identifying any responsive documents, the author(s) of the document, the

recipient(s) . . . of the document, the subject matter of the document, the date of the document,

and *a specific explanation of why the document is privileged or excluded from discovery*" as

required by the Federal Rules of Civil Procedure.[69]

While Respondents argue that they have satisfied the aforementioned standard,[70] they are

incorrect.  As far as the Court can tell, Respondents have not addressed any of the redactions

they have made in the 74 documents at issue with the required specificity.  For instance, in the

example described above (a heavily redacted invoice email with two documents attached),

Respondents' privilege log merely recites a boilerplate "description" and adds: "Produced on

10.19 2022 with confidential/privileged information redacted."[71]  This, however, is not enough;

Respondents must provide the Court with enough information to be able to determine whether

the redacted information classifies as a *confidential* communication made for the *primary*

purpose of legal advice or services (and is thus protected by attorney-client privilege).[72]

Moreover, Respondents must provide the Court with a privilege log that explicitly explains why

---

[69] *Cinclips, LLC v. Z Keepers, LLC*, No. 8:16-cv-1067-T-23JSS, 2017 WL 1065560, at *2 (M.D. Fla. Mar. 21, 2017) (emphases added); *see, e.g.*, FED. R. CIV. P. 26(b)(5)(A) ("When a party withholds information otherwise discoverable by claiming that the information is privileged . . . the party must" "describe the nature of the documents, communications, or tangible things not produced or disclosed— and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.").

*See also supra* note 66 (noting that Rule 45(e)(2)'s requirements are "substantively identical" to those provided by Rule 26(b)(5)).

[70] *See* Resp. at 14–15.

[71] *See* Exhibit 1 at 71 (providing the same text for that document and seven separate log entries) *and supra* note 53 discussing the identical boilerplate "description" columns for those entries.

[72] *See, e.g.*, *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997) (providing the standard for attorney-client privilege).

the document is privileged in accordance with the directives in this Order.  The Court warns

Respondents that "where descriptions in the privilege log fail to meet this standard, then

disclosure [of the document in full] is an appropriate sanction."[73]

### 4.  **Withheld Documents**

Finally, the United States alleges that Respondents may still have unlogged and

unproduced documents in their possession—namely, unlogged and unproduced attachments to

emails.  According to the United States, "[d]ocuments already produced by Respondents suggest

that [Respondents] may continue to withhold other relevant documents that have not been

logged."[74]  Specifically, the United States claims that Respondents have redacted "attachment

notations" from the emails they have produced (*i.e.*, the United States claims Respondents have

redacted the area and associated text where attachments to an email are typically indicated).

Moreover, the United States maintains that Respondents have failed to indicate the existence of

such attachments (and their contents) in their privilege log.[75]  Respondents do not appear to

address the United States' argument.[76]

> The Court thus orders Respondents to:
>> (1) **re-review** each email they have produced to the United States and **remove**
>>     any redactions to "attachment notations" in those emails;
>> (2) **re-produce** the responsive emails (without redactions to any "attachment
>>     notations") and indicate any changes on the privilege log;
>> (3) **produce** and **log** any associated attachments; and

---

[73] *Taylor Energy Co.*, 2010 WL 3952208, at \*1 (cleaned up) (quoting *Smithkline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 534 (N.D. Ill. 2000)).

[74] Renewed Mot. at 11.

[75] *Id.* ("Respondents did not produce any additional documents that may have been attached to other redacted or withheld emails.  Yet redacted documents appear to withhold information regarding attachments." (internal citation omitted)).

[76] *See* Reply at 6 ("Respondents do not address the United States' argument that they have waived discovery protections over any remaining unlogged and unproduced responsive documents.").

>    (4) (if any redactions are made) **indicate** the *specific* reason that such
>    information is privileged and redacted on their privilege log.[77]

Furthermore, the Court prohibits Respondents from redacting any "attachment notations" in any

future productions.

The Court reminds Respondents of their obligation to produce a compliant privilege

log.[78] "Rule 26(b)(5)(A) <u>requires</u> production of a log when a party withholds information

otherwise discoverable by claiming that the information is privileged or subject to protection as

trial preparation material."[79] To be compliant, Respondents must include all documents *and* their

attachments in their privilege log. Furthermore, for *every* withheld document and *all* redactions,

Respondents must provide a description of the document/redaction detailed enough to enable the

United States to assess the validity of Respondents' attorney-client privilege claim.

The Court orders Respondents to file an updated privilege log once they have complied

with the directives in this Order and provided the United States with the documents this Order

requires. The Court warns Respondents that failure to comply with this Order and create a

sufficient privilege log may result in a waiver of Respondents' privilege claims.[80] Thus,

---

[77] *See AIDS Healthcare Found., Inc. v. City of Baton Rouge/Par. of E. Baton Rouge Through City of Baton Rouge Div. of Hum. Dev. & Servs.*, No. 17-229-BAJ-RLB, 2019 WL 1546937, at *1 (M.D. La. Apr. 9, 2019) ("[Defendant] must clarify whether any attachments have been withheld from production and, to the extent such attachments have been withheld, the subject matter of the attachment and the basis for withholding the attachment.").

[78] *First Order to Compel* at *4–5.

[79] *Lewis v. Galliano Marine Serv., LLC*, No. 19-7878, 2020 WL 6947428, at *2 (E.D. La. Apr. 24, 2020) (cleaned up) (quoting *Benson v. Rosenthal*, No. CV 15-782, 2016 WL 1046126, at *9 (E.D. La. Mar. 16, 2016)); *see also id.* ("The Federal Rules of Civil Procedure make clear that when documents are withheld *or information is redacted*, a privilege log needs to be produced." (emphasis added)).

[80] *See First Order to Compel* at *4 ("Respondents have not yet waived their privilege claims. The United States has not argued that Respondents have continually failed to adhere to Rule 26's prescriptions." (cleaned up) (quoting *BDO USA*, 876 F.3d at 697)).

Respondents must log and/or produce all documents and attachments that are responsive to the United States' request.  Any withheld and/or unlogged document must therefore be produced.

**CONCLUSION**

The Court **GRANTS** the United States' "Renewed Motion to Compel Production of Bryan and Wienckowski Documents" (ECF No. 634) **IN PART**.

Respondents are **ORDERED** to produce documents concerning draft maps and statistical analyses (603 documents).

Respondents are **ORDERED** to **RE-REVIEW** the documents they provided to the United States that contain redacted invoicing information.  Respondents must then **REMOVE** all redactions that: (1) describe the nature of the service provided; (2) provide an hourly rate; and (3) list the number of hours spent on each service/task.  Therefore, Respondents must **INCLUDE** general descriptions of the work provided and all line-item information relating to the payment/cost of such work *and* the amount of time spent.  Respondents must then **RE-PRODUCE** these unredacted versions of the documents (74 documents) to the United States and **INDICATE** any changes and remaining claims of privilege on an updated privilege log.

Respondents are **ORDERED** to produce to the Court for *in-camera* inspection all emails with Butler Snow attorneys and consultants (371 documents).

Respondents are **ORDERED** to produce any document where the work-product doctrine is Respondents' only claim of protection.

Respondents are **ORDERED** to remove any "attachment notation" redactions from the emails they previously provided to the United States and **RE-PRODUCE** unredacted versions of these documents to the United States.  Respondents must additionally **PRODUCE** and **LOG** any attachments associated with these emails.

Respondents are **ORDERED** to produce a revised privilege log for any withheld document and any document that contains redactions. Respondents' privilege log **MUST INCLUDE** specific and detailed descriptions of the document and any redactions so that the Court and the United States may assess the veracity of Respondents' claims of privilege.

Lastly, Respondents are **ORDERED** to **PRODUCE** any withheld or unlogged documents where no privilege validly applies under the terms of this Order.

Respondents may *only* redact documents where annotations or notes implicate bona fide legal advice.

Respondents are **ORDERED** to produce these documents within 14 days of this Order by **September 23, 2024**. Furthermore, Respondents **SHALL FILE** a revised privilege log also by that date on **September 23, 2024**.

**So ORDERED and SIGNED this 9th day of September 2024.**

_____
**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**

*And on behalf of:*

| | | |
|---|---|---|
| **Jerry E. Smith** | | **Jeffrey V. Brown** |
| **United States Circuit Judge** | *-and-* | **United States District Judge** |
| **U.S. Court of Appeals, Fifth Circuit** | | **Southern District of Texas** |