

KEN PAXTON
ATTORNEY GENERAL OF TEXAS

October 15, 2024

The Honorable Jerry E. Smith                                                             *via CM/ECF*
United States Circuit Judge
U.S. Court of Appeals, Fifth Circuit

The Honorable David C. Guaderrama
Senior U.S. District Judge
United States District Court
Western District of Texas, El Paso Division

The Honorable Jeffrey V. Brown
United States District Judge
Southern District of Texas, Galveston Division

Re:    Defendants' Brief Addressing the Effect of *Petteway*,
        Case No. 3:21-cv-00259, *League of United Latin American Citizens, et al. v. Greg Abbott, et al.*, USDC, W.D. Tex.—El Paso Division

To the Honorable Court:

The Fifth Circuit Court of Appeals sitting *en banc* recently decided *Petteway v. Galveston County*, 111 F.4th 596 (5th Cir. 2024), holding that coalition claims are impermissible under Section 2 of the Voting Rights Act and overruling its previous decision in *Campos v. City of Baytown*, 840 F.2d 1240 (5th Cir. 1988). "Given the manifest influence of *Petteway*" on resolution of Texas's motions to dismiss the Bacy and Fair Maps Plaintiffs' supplemental complaints, this Court directed parties to submit letter briefs addressing *Petteway*'s applicability to this case. *Order to Submit Letter Briefs*, ECF No. 810 at 2.

*Petteway* applies to this case by flatly precluding claims of the type that Plaintiffs raise here. Accordingly, this Court should grant Texas's Motion to Dismiss Bacy (formerly Abubara) Plaintiffs' Supplemental Complaint (ECF No. 785) and Texas's Motion to Dismiss Fair Maps Plaintiffs' Supplemental Complaint (ECF No. 799). The Court should also dismiss the coalition claims brought by three other Plaintiffs groups asserting such claims (but who have neither amended nor supplemented their complaints following the 2023 legislative session).

## I.  Petteway Abolishes Coalition Claims Arising Under Section 2 of the Voting Rights Act

"[I]n an unbroken line of decisions stretching four decades," *Bartlett v. Strickland*, 556 U.S. 1, 38 (2009), the Supreme Court has examined compliance with Section 2 of the Voting Rights Act under the multi-factor test first announced in *Thornburg v. Gingles*, 478 U.S. 30, 50–51 (1986). Over

Case 3:21-cv-00259-DCG-JES-JVB     Document 815     Filed 10/15/24     Page 2 of 5

Defendants' Brief re Effect of *Petteway*
October 15, 2024
P a g e | 2

that period, the Supreme Court has consistently stopped short of permitting people of different races, ethnicities, or languages to insist that their collective vote is being diluted. *Bartlett*, 556 U.S. at 19; *Growe v. Emison*, 507 U.S. 25, 40–41 (1993).

But for most of that period, binding Fifth Circuit precedent did not match the Supreme Court's caution. See *Campos*, 840 F.2d at 1241. Acting in the immediate aftermath of *Gingles*, "cit[ing] no authority and offer[ing] no reasoning to support its fiat," the Fifth Circuit held in *Campos* that "'nothing in the law . . . prevents plaintiffs from identifying [a] protected aggrieved minority to include both Blacks and Hispanics'"—a holding "notable for its meager reasoning and for the magnitude of its error." *Campos*, 849 F.2d at 944–45 (Higginbotham, J., dissenting from denial of rehearing) (quoting panel opinion); *Petteway*, 111 F.4th at 613.

In August of this year, the Fifth Circuit rectified that longstanding flaw in its jurisprudence by overturning *Campos* and its progeny, holding that for vote dilution claims brought under Section 2 of the Voting Rights Act, "coalition claims do not comport with Section 2′s statutory language or with Supreme Court cases interpreting Section 2." *Petteway*, 111 F.4th at 599. The Court found that Section 2 "identifies the subject of a vote dilution claim as 'a class,' in the singular, not the plural," that a class is "defined according to the characteristic that all its members share," and that the "defining characteristics for purposes of Section 2 are race, color, or membership in one of several language minority groups." *Id*. at 604. Therefore, the Court held,"[t]wo individuals who do not share the same defining characteristic are not members of the same 'class'; they are members of two distinct classes, and their vote dilution claims must be analyzed separately." *Id*. at 604–05. Under this holding, the relevant analysis is not whether disparate classes of minority plaintiffs can be aggregated into a coalition, but whether a single, distinct minority class satisfies the first *Gingles* precondition by constituting a majority of the voting-age population in a relevant geographical locality. *Id*. at 610 (referencing the "majority-minority" rule established in *Gingles* and reaffirmed in *Bartlett*, 556 U.S. at 18).

In so holding, the Fifth Circuit realigned its precedent with that of the Supreme Court and of the only other two other circuits since *Campos* to squarely address the validity of coalition claims under Section 2. The Supreme Court has twice held to a narrow, textualist interpretation of the Section 2 claims permitted under the first precondition of the *Gingles* multi-factor test. *Id*. at 608–09. In *LULAC v. Perry*, the Court held that to prosecute a claim of vote dilution pursuant to Section 2's guarantee of equal "opportunity 'to elect representatives of their choice,'" a minority group must be sufficiently large, compact, and cohesive to demonstrate "more than the ability to influence the outcome between some candidates, none of whom is their candidate of choice." 548 U.S. 399, 445 (2006) (citing provision now codified at 52 U.S.C. § 10301(b)). In other words, a Section 2 claim is unavailable to a group only capable of influencing—not determining—the outcome of the relevant election. The Court noted that to hold otherwise, and thus to expand the scope of Section 2 beyond its textual bounds, "would unnecessarily infuse race into virtually every redistricting, raising serious constitutional questions" such as those that Texas has raised in this case. *Id*. at 446; *see* Texas's MTD Fair Maps Pls.' Supp. Compl. (ECF No. 779) at 18–20; Texas's MTD Bacy Pls.' Supp. Compl. (ECF No. 785) at 13–15.

Providing even a closer corollary to this case, in *Bartlett v. Strickland* the Supreme Court held that the possibility of creating "crossover districts"—in which a minority group is not large enough to by itself elect the candidate of its choice but is large enough to do so "with help from voters who are members of the majority and who cross over to support the minority's preferred candidate"—is insufficient to maintain a claim under Section 2. 556 U.S. 1, 13 (2009). Though the Court explicitly did not reach the question of whether coalition claims made up of two or more minority groups were permissible under Section 2, it nonetheless decided that coalition claims based upon "crossover" majority voters joining with a class of minority voters did not satisfy the first *Gingles* precondition. Id. at 13–14. The Court applied the same "objective, numerical test" that the Fifth Circuit applied in *Petteway*—whether a minority group constitutes "more than 50 percent of the voting-age population in the relevant geographic area." *Id*. at 18; *Petteway*, 111 F.4th at 609–11.

In keeping with the guidance of the Supreme Court, the other two circuits to have directly confronted the issue of Section 2 coalition claims since *Campos* have declined to follow *Campos* based on the text and purpose of the Voting Rights Act. *Nixon v. Kent County*, 76 F.3d 1381 (6th Cir. 1996) (en banc); *Hall v. Virginia*, 385 F.3d 421 (4th Cir. 2004). In both cases, the circuit Courts definitively rejected the legitimacy of coalition claims under Section 2, finding such suits contrary to "the express prohibition against proportional representation in § 2," outside "Congress' remedial purpose," and ultimately insufficient to "satisfy the requirement established in *Thornburg v. Gingles* that a minority group seeking relief under Section 2 'demonstrate that it is sufficiently large and geographically compact to constitute a majority in a single-member district.'" *Nixon*, 76 F.3d at 1393; *Hall*, 385 F.3d at 423 (citing *Gingles,* 478 U.S. at 50). With *Petteway*, the Fifth Circuit became the third of three circuit courts to squarely address, and flatly reject, coalition claims under Section 2.

## II.   *Petteway* Precludes Plaintiffs' Coalition Claims

Five Plaintiffs' groups seek relief that includes creation of the coalition districts precluded by *Petteway*. Each of these putative districts relies on combining multiple races and ethnicities into coalitions that allegedly vote cohesively. As such, these claims fail to allege facts "that would, if proven, establish that the districts drawn by the [Texas Legislature] render the voting process 'not equally open to participation by members of a class of protected citizens.'" ECF 779 at 1 (quoting 52 U.S.C. § 10301(b)) (cleaned up).

The Brooks Plaintiffs seek to create seven coalition districts. ECF 612, ¶¶ 16, 18, 22 (CD 12); ¶¶ 105–25 (SD 10); ¶¶ 126–69 (CD 6, 24, 25, 37); and ¶¶ 229–60 (HD 54). *Petteway* precludes these coalition claims by the Brooks Plaintiffs.

The NAACP Plaintiffs seek to create eight coalition districts. ECF 646, ¶¶ 25–67 (SD 10); ¶¶ 268–78 (SD 17); ¶¶ 295–309 (HD 94); ¶¶ 310–20 (HD 65); ¶¶ 321–31 (HD 29); ¶¶ 332–39 (HD 83); ¶¶ 350–57 (CD 12); and ¶¶ 358–66 (CD 2). Additionally, their operative complaint makes clear all of the NAACP Plaintiffs' VRA claims are coalition claims. *Id*., ¶¶ 376–84. *Petteway* precludes these coalition claims by the NAACP Plaintiffs.

Case 3:21-cv-00259-DCG-JES-JVB   Document 815   Filed 10/15/24   Page 4 of 5

Defendants' Brief re Effect of *Petteway*
October 15, 2024
P a g e | 4

The Intervenor Plaintiffs seek to create three coalition districts. ECF 619, ¶¶ 31, 35 (CD 9, 18, 30). Additionally, their operative complaint makes clear all of the Intervenor Plaintiffs' VRA claims are coalition claims. *Id*. ¶¶ 72–73. *Petteway* precludes these coalition claims by the Intervenor Plaintiffs.

The Fair Maps Plaintiffs seek to create 11 coalition districts. ECF 502, ¶¶ 95–106 (HD 26, 27, 28, 76); ¶¶ 107–117 (HD 54); ¶¶ 118–26 (HD 33, 61); ¶¶ 131–37 (SD 17); ¶¶ 138–49 (SD 22); ¶¶ 153–60 (CD 22); and ¶¶ 161–67 (CD 6). *Petteway* precludes these coalition claims by the Fair Maps Plaintiffs.

The Bacy Plaintiffs seek to create five coalition districts. ECF 613, ¶¶ 136–40 (CD 25); ¶¶ 143–48 (CD 33); ¶¶ 150–59 (CD 12); ¶¶ 163–73 (CD 29); and ¶¶ 189–95 (HD 94). *Petteway* precludes these coalition claims by the Bacy Plaintiffs.[1]

Plaintiffs' coalition claims are entirely founded on grounds that have been entirely removed. *Petteway* has done away with the jurisprudential basis for the coalition claims that Plaintiffs assert. Plaintiffs' complaints offer no basis for sustaining their Section 2 coalition claims apart from the now-defunct *Campos* framework.

### III.  *Petteway* Requires Dismissal of Plaintiffs' VRA Coalition Claims

Accordingly, this Court should dismiss Plaintiffs' coalition claims under the VRA. Defendants respectfully move for such dismissal.

    Respectfully submitted,

    OFFICE OF THE ATTORNEY GENERAL OF TEXAS

    */s/ Ryan G. Kercher*
    RYAN G. KERCHER
    Deputy Chief, Special Litigation Division
    Texas State Bar No. 24060998
    ryan.kercher@oag.texas.gov

    KATHLEEN T. HUNKER
    Special Counsel
    Texas State Bar No. 24118415
    kathleen.hunker@oag.texas.gov

---

[1] State Defendants offer this accounting of Plaintiffs' many claims in an attempt to be exhaustive; however, any coalition claim inadvertently missed by this accounting is nevertheless subject to dismissal under *Petteway*.

Case 3:21-cv-00259-DCG-JES-JVB   Document 815   Filed 10/15/24   Page 5 of 5

Defendants' Brief re Effect of *Petteway*
October 15, 2024
P a g e | 5

WILLIAM D. WASSDORF
Deputy Chief, General Litigation Division
Texas State Bar No. 24103022
will.wassdorf@oag.texas.gov

LANORA C. PETTIT
Principal Deputy Solicitor General
Texas State Bar No. 24115221
lanora.pettit@oag.texas.gov

COUNSEL FOR STATE DEFENDANTS