IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, | § § § § | |
| *Plaintiffs,* | § | |
| v. | § § | Case No. 3:21-cv-00259-DCG-JES-JVB [Lead Case] |
| | § | |
| GREG ABBOTT, *et al.*, | § § | |
| *Defendants.* | § § | |

**FIRST AMENDED MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AND TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

Defendants, the State of Texas; Jane Nelson, in her official capacity as Secretary of State; and Dave Nelson, in his official capacity as Deputy Secretary of State, respectfully request that the Court: (1) dismiss all claims of vote dilution brought under Section 2 of the Voting Rights Act that involve aggregating distinct minority groups ("coalition claims"); and (2) dismiss all claims that challenge Texas House and/or Senate districts created by the obsolete redistricting legislation enacted by the 87th Legislature, *Relating to the composition of districts for the election of members of the Texas House of Representatives*, 87th 3d C.S. 2021 ("HB 1"); *Relating to the composition of districts for the election of members of the Texas Senate*, 87th 3d C.S. 2021 ("SB 4").

## INTRODUCTION

The adequacy of many Plaintiffs' operative pleadings has been overtaken by two events. *First*, the Fifth Circuit's law has changed with respect to vote dilution claims brought under Section 2 of the Voting Rights Act. *See generally, Petteway v. Galveston County*, 111 F.4th 596 (5th Cir. 2024). Coalition claims are now impermissible under Section 2 and this Court cannot grant relief on such claims. *Second*, in May 2023 the 88th Texas Legislature enacted new redistricting legislation that re-authorized the State House and Senate electoral maps. Despite prompting by State Defendants

and notice by the Court, all but two of the Plaintiffs failed to update their pleadings to redirect their House and Senate challenges against Texas's live redistricting statute. As a result, most Plaintiffs are tilting at abrogated House and Senate plans created by the 87th Legislature's superseded legislation, HB 1 and SB 4.

Therefore, this Court should narrow the issues before it by dismissing both coalition claims, foreclosed by *Petteway*, and claims against HB 1 or SB 4, mooted by subsequent legislation.

The Court's dismissal should be without leave to amend. "At some point a court must decide that a plaintiff has had a fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986). Given the lengthy pendency of this case and the futility of Plaintiffs revising their coalition claims, the instant litigation has reached the point where Plaintiffs should be made to stick to their pleadings.

## LEGAL STANDARD

"A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (citation omitted). "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001).

## ARGUMENT

I. **Following *Petteway*, the Court Must Dismiss All Remaining Coalition Claims Brought Under Section 2 of the VRA.**

"Section 2 of the Voting Rights Act does not authorize separately protected minority groups to aggregate their populations for purposes of a vote dilution claim." *Petteway*, 111 F.4th at 603. Accordingly, "coalition claims do not comport with Section 2′s statutory language or with Supreme Court cases interpreting Section 2," *id.* at 599, and Section 2 does not provide a right of action to seek an order compelling "political [bodies] to draw [district] lines for the electoral benefit of distinct minority groups that share political preferences but lack the cementing force of race or ethnicity." *Id.* at 614. Going forward, vote dilution claims brought under Section 2 must suffice

when pleaded on behalf of one minority group or else they do not suffice. *Id.*; *id.* at 604-05 (explaining that the text of Section 2 "identifies the subject of a vote dilution claim" as a singular "class").

Now that coalition claims are out, "Plaintiffs cannot prove the first *Gingles* precondition" for such claims, and other aspects of their coalition claims are "irrelevant." *Id.* at 612 (elucidating *Thornburg v. Gingles*, 478 U.S. 30 (1986)). Consequently, this Court may not grant relief under Section 2 of the VRA for any of Plaintiffs' claims that involve aggregating distinct minority populations to show size and compactness. *Id.* Accordingly, in the wake of *Petteway*, the Court must dismiss all such claims.

Having surveyed Plaintiffs' multitudinous pleadings, State Defendants count the following remaining coalition claims:

1.1  The Brooks Plaintiffs seek to create seven coalition districts. Dkt. 612, ¶¶ 16, 18, 22 (CD 12); ¶¶ 105–25 (SD 10); ¶¶ 126–69 (CD 6, 24, 25, 37); and ¶¶ 229–60 (HD 54).

1.2  The NAACP Plaintiffs seek to create eight coalition districts. Dkt. 646, ¶¶ 25–67 (SD 10); ¶¶ 268– 78 (SD 17); ¶¶ 295–309 (HD 94); ¶¶ 310–20 (HD 65); ¶¶ 321–31 (HD 29); ¶¶ 332–39 (HD 83); ¶¶ 350–57 (CD 12); and ¶¶ 358–66 (CD 2). Additionally, their operative complaint makes clear all of the NAACP Plaintiffs' VRA claims are coalition claims. *Id.* ¶¶ 376–84.

1.3  The Intervenor Plaintiffs seek to create three coalition districts. Dkt. 619, ¶¶ 31, 35 (CD 9, 18, 30). Additionally, their operative complaint makes clear all of the Intervenor Plaintiffs' VRA claims are coalition claims. *Id.* ¶¶ 72–73.

1.4  The Fair Maps[1] Plaintiffs seek to create 11 coalition districts. Dkt. 502, ¶¶ 95–106 (HD 26, 27, 28, 76); ¶¶ 107–117 (HD 54); ¶¶ 118–26 (HD 33, 61); ¶¶ 131–37 (SD 17); ¶¶ 138–49 (SD 22); ¶¶ 153– 60 (CD 22); and ¶¶ 161–67 (CD 6).

---

[1] State Defendants moved to dismiss Fair Maps Plaintiffs' coalition claims before the en banc Fifth Circuit ruled in *Petteway*. Defendants' earlier Motion to Dismiss remains pending before this Court. Dkt. 779.

1.5 The Bacy Plaintiffs[2] seek to create five coalition districts. Dkt. 613, ¶¶ 136–40 (CD 25); ¶¶ 143–48 (CD 33); ¶¶ 150–59 (CD 12); ¶¶ 163–73 (CD 29); and ¶¶ 189–95 (HD 94).

*Petteway* precludes these claims as well as any coalition claim that Defendants have inadvertently missed. State Defendants respectfully ask the Court to dismiss these claims with prejudice.

## II. The Court Should Dismiss All Claims Targeting the State's Obsolete Redistricting Legislation.

"It goes without saying that disputes concerning repealed legislation are generally moot." *Hous. Chron. Publ'g Co. v. League City*, 488 F.3d 613, 619 (5th Cir. 2007). When "as here, a statute or regulation is amended or repealed after plaintiffs bring a lawsuit challenging the legality of that statute or regulation…mootness is the default." *Freedom from Religion Found. v. Abbott*, 58 F.4th 824, 832 (5th Cir. 2023). Because "there is no longer an ongoing controversy…the source of the plaintiff's prospective injury has been removed, and there is no 'effectual relief whatever' that the court can order." *Ozinga v. Price*, 855 F.3d 730, 734 (7th Cir. 2017) (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)); *accord Perez v. Texas*, 970 F. Supp. 2d 593, 605 (W.D. Tex. 2013) (instructing plaintiffs challenging Texas redistricting legislation to "clearly specify" which "claims are being maintained" following the State's adoption of new redistricting plans).

Only the Bacy and Fair Maps Plaintiffs have amended to redirect their state House and Senate claims against the State's current redistricting legislation.[3] The Fischer and Intervenor Plaintiffs do not have live claims against Texas House or Senate districts. All remaining Plaintiffs maintain claims against Texas's defunct redistricting legislation. These claims are moot. The Court cannot grant relief against outmoded redistricting plans. Accordingly, the Court must dismiss all

---

[2] State Defendants moved to dismiss Bacy Plaintiffs' coalition claims before the en banc Fifth Circuit ruled in *Petteway*. Defendants' earlier Motion to Dismiss remains pending before this Court. Dkt. 785.

[3] Nonetheless, State Defendants argue herein that Bacy and Fair Maps Plaintiffs' coalition claims should be dismissed and reurge their Motion to Dismiss Fair Maps Plaintiff's Supplemental Complaint, Dkt. 779, with respect to their intentional discrimination claims.

remaining claims that challenge Texas House and Senate districts created by the State's obsolete redistricting statutes, HB 1 and SB 4.

LULAC Plaintiffs, MALC Plaintiffs, NAACP Plaintiffs, and Brooks Plaintiffs have all brought claims against the State's 2021 House and Senate districts.[4] *See* Dkt. 714; Dkt. 319; Dkt. 646; Dkt. 612. State Defendants respectfully request that the Court dismiss all claims by the Plaintiffs that challenge Texas House or Senate districts.

### III. In Particular, the Court Should Dismiss Intentional Discrimination Claims Targeting the State's Obsolete Redistricting Legislation.

Claims brought under the Fifteenth or Fourteenth Amendments alleging intentional discrimination turn on "legislative motivation or intent" *Prejean v. Foster*, 227 F.3d 504, 510 (5th Cir. 2000) (Fourteenth Amendment); *id.* at 519 (Fifteenth Amendment); *see also Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977) ("Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause"). These claims require showing that "race was the predominant factor motivating the legislature's" particular redistricting decisions. *Miller v. Johnson*, 515 U.S. 900, 916 (1995).

The requisite "legislative intent" cannot be imputed from one Legislature to another. *Abbott v. Perez*, 585 U.S. 579, 609-10 (2018) (reversing and criticizing the district court for "imputing the intent of the 2011 Legislature to the 2013 Legislature") (voting rights case); *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 101 (1991). Accordingly, allegations of racially discriminatory intent concerning the 87th Legislature cannot be repurposed to claim intentional discrimination against an act of the 88th Legislature.

Plaintiffs that have declined to amend or supplement have therefore failed to allege discriminatory intent on the part of the 88th Legislature. Because that is a required element of pleading claims for intentional discrimination under the Fourteenth or Fifteenth Amendment, unamended Plaintiffs do not meet the pleading standard for such claims. Therefore, the intentional

---

[4] Federal Plaintiff is also challenging the State's outdated redistricting legislation, but State Defendants have separately moved to dismiss those claims. Dkt. 801.

discrimination claims advanced by LULAC Plaintiffs, MALC Plaintiffs, NAACP Plaintiffs, and Brooks Plaintiffs should be dismissed.

### IV. Dismissal Should Be Without Leave to Amend.

"Liberality in pleading does not bestow on a litigant the privilege of neglecting her case for a long period of time." *Daves v. Payless Cashways, Inc.*, 661 F.2d 1022, 1025 (5th Cir. 1981). When "an unjustified delay preced[es] a motion to amend" the trial court should refuse further amendment "even when there is no evidence of bad faith or dilatory motive." *Id.* (affirming the district court's denial of leave to amend a complaint after "an unexplained nineteen-month delay"); *see also Matter of Southmark Corp.*, 88 F.3d 311, 315-16 (5th Cir. 1996) (affirming denial of leave when leave was sought "thirteen months after the original complaint was filed"). Absent a "reasonable explanation for [their] delay in amending [their] complaint[s]," Plaintiffs should be denied further leave. *Id.* at 316.

Here, Plaintiffs are surely without excuses for their delay. The 88th Legislature enacted HB 1000 and SB 375 in May 2023. Plaintiffs were on notice of this change, because the Court's December 5, 2022 Notice and Order informed the parties that "the Texas Legislature will likely redistrict the state house and senate during the 2023 regular legislative session." Dkt. 665 at 1. State Defendants have provided additional prodding by questioning counsel for Plaintiffs about their plans to amend in response to the Legislature's re-authorization both orally and in writing. *See* Exhibit A at 2 (counsel for Defendants asking counsel for all Plaintiffs about "their intent to supplement or amend their complaints to address HB 1000 of the 88th Texas Legislature").

While most Plaintiffs did not heed these promptings, two Plaintiffs did. *See* Dkt. 765; 777. Others decided against amendment, *see* Exhibit A at 1 (counsel for the United States communicating decision not to amend), while others committed to amendment but inexplicably failed to follow through. *See* Dkt. 730 at 7 (Plaintiffs notifying the Court that "one or more of the Plaintiffs groups plan to amend their pleadings to address the redistricting plans enacted by the 88th Legislature"). LULAC Plaintiffs, in particular, notified Defendants that they would amend in light of the change in legislation but never did so. *See* Exhibit B at 1-2.

Given this background, failure to amend "goes beyond excusable neglect" and lacks for any reasonable explanation of delay. *Payless Cashways*, 661 F.2d at 1025. More than nineteen months have elapsed since Texas passed its new redistricting statute. Despite notification by both Defendants and the Court, most Plaintiffs have not corrected their pleadings to reflect the State's new redistricting law. Whether this is a deliberate—though misinformed—choice or inattention to developments material to this case, Plaintiffs should not be permitted further opportunity to reconfigure their case. Rather, because each Plaintiff is master of his case, the Court should conclude that Plaintiffs have pled their best case, and that there is no cause to provide additional opportunity to supplement. *Morrison v. City of Baton Rouge*, 761 F.2d 242, 246 (5th Cir. 1985).

Furthermore, Plaintiffs' coalitional claims are unsalvageable. A "court need not grant a futile motion to amend…an amendment is considered futile if it would fail to state a claim upon which relief could be granted." *Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016). Since *Petteway* bars Section 2 coalition claims completely, amendment would be futile.

Date: February 15, 2025

K<small>EN</small> P<small>AXTON</small>
Attorney General

B<small>RENT</small> W<small>EBSTER</small>
First Assistant Attorney General

R<small>ALPH</small> M<small>OLINA</small>
Deputy First Assistant Attorney General

R<small>YAN</small> D. W<small>ALTERS</small>
Deputy Attorney General for Legal Strategy

Respectfully submitted,

*/s/ Ryan G. Kercher*
R<small>YAN</small> G. K<small>ERCHER</small>
Chief, Special Litigation Division
Tex. State Bar No. 24060998

K<small>ATHLEEN</small> T. H<small>UNKER</small>
Deputy Chief, Special Litigation Division
Tex. State Bar No. 24118415

W<small>ILLIAM</small> D. W<small>ASSDORF</small>
Deputy Chief, General Litigation Division
Tex. State Bar No. 24103022

O<small>FFICE OF THE</small> A<small>TTORNEY</small> G<small>ENERAL OF</small> T<small>EXAS</small>
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
ryan.kercher@oag.texas.gov
kathleen.hunker@oag.texas.gov
will.wassdorf@oag.texas.gov

## C<small>ERTIFICATE OF</small> S<small>ERVICE</small>

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on February 15, 2025 and that all counsel of record were served by CM/ECF.

*/s/ Ryan G. Kercher*
R<small>YAN</small> G. K<small>ERCHER</small>