IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, § § § | | |
| *Plaintiffs,* § | | |
| v. § § § | Case No. 3:21-cv-00259-DCG-JES-JVB [Lead Case] | |
| GREG ABBOTT, *et al.*, § § § | | |
| *Defendants.* § | | |

## REPLY IN SUPPORT OF MOTION TO DISMISS THE CLAIMS OF INTERVENOR-PLAINTIFFS EDDIE BERNICE JOHNSON AND SHEILA JACKSON LEE

Defendants, the State of Texas; Greg Abbott, in his official capacity as Governor of Texas; and Jane Nelson, in her official capacity as Secretary of State, hereby submit this reply in support of their pending motion to dismiss the claims of deceased Intervenor-Plaintiffs Eddie Bernice Johnson[1] and Sheila Jackson Lee.

### INTRODUCTION

On March 21, 2025, Defendants filed a motion to dismiss the claims of two deceased Intervenor-Plaintiffs—Representative Eddie Bernice Johnson, who at the time of that filing had been deceased for more than fifteen months, and Representative Sheila Jackson Lee, who then had been deceased for more than eight months.[2] ECF 888. On April 4, 2025, Intervenor-Plaintiffs filed a response to Defendants' motion to dismiss, implausibly arguing that Representative Jackson Lee's successor in office has been automatically substituted as a party to this suit, that an

---

[1] In their response to Defendants' motion to dismiss, Intervenor-Plaintiffs stated that they did not oppose dismissal of any claims related to Eddie Bernice Johnson, as Intervenor-Plaintiffs do not proceed on those claims. *See* ECF 907 at 1, 5.
[2] Abby Livingston and Pooja Salhotra, *Former U.S. Rep. Eddie Bernice Johnson, Black Democratic trailblazer, dies at 89*, THE TEXAS TRIBUNE (Dec. 29, 2023), https://www.texastribune.org/2023/12/31/texas-eddie-bernice-johnson-dies/; Matthew Choi and Sejal Govindarao, *U.S. Rep. Sheila Jackson Lee is dead at 74,* THE TEXAS TRIBUNE (Jul. 19, 2024), https://www.texastribune.org/2024/07/19/sheila-jackson-lee-dies/.

unidentified substitute for Representative Jackson Lee should be permitted to continue litigating the Representative's "personal" claims, and that considerations of judicial economy and equity impel substitution. ECF 907 at 1. None of these arguments hold water.

First, to the extent that any automatic substitution occurred, Representative Jackson Lee's successor—Representative Sylvester Turner—passed away on March 5, 2025, meaning that no person currently holds the office of Representative for Texas's 18th Congressional District.[3]

Second, all of Intervenor-Plaintiffs' claims are for injunctive relief: they are not claims over a "personal injury" to "health, reputation, or person" for which a successor in interest could seek recovery. *Perez v. Abbott*, No. SA-11-CV-360, 2017 WL 11886285, at *2 (W.D. Tex. May 1, 2017). In consequence, there is no party that could be substituted to recover for claims made in Representative Jackson Lee's unofficial capacity—which is perhaps why the declaration that "Congressional Intervenors are concurrently filing a Motion to Substitute regarding Sheila Jackson Lee's personal claims" has not materialized into a filed motion. ECF 907 at 4.

Third, judicial economy and equitable considerations inveigh against permitting substitution. Even if substitution were possible—and it is not—substitution at this stage would prejudicially burden Defendants, contribute little to the efficient or equitable resolution of this case, and needlessly expend the parties' and this Court's resources litigating claims for which there is now no live complainant.

Finally, Intervenor-Plaintiffs' Response contains several misstatements of law that undermine their attempt to resist dismissal of Representative Jackson Lee's claims.

**ARGUMENT**

**I.    There is no officeholder who can succeed Representative Jackson Lee.**

Intervenor-Plaintiffs place great weight on Federal Rule of Civil Procedure 25(d), which provides for automatic substitution following the death of a party to suit in his or her official capacity. Even in ordinary circumstances, Intervenor-Plaintiffs still would bear a significant burden

---

[3] Jasper Scherr, *Congressman and former Houston Mayor Sylvester Turner dies*, THE TEXAS TRIBUNE (Mar. 5, 2025) https://www.texastribune.org/2025/03/05/sylvester-turner-texas-houston-dies/.

2

to demonstrate that any of Representative Jackson Lee's claims were made in her official capacity. Intervenor-Plaintiffs' operative Second Amended Complaint never identifies any claims made in any Plaintiff's official capacity, and indeed uses the term "official capacity" only in reference to Defendants. *See* ECF 619 at 6. Further, commentary to the 1961 amendment that enacted the modern version of Rule 25(d) expresses that suits involving officers in their official capacities are those "brought by public officers *for the government*, and to any action brought in form *against* a named officer." Fed. R. Civ. P. 25(d) advisory committee's note to 1961 amendment. Representative Jackson Lee's claims were not brought for the government, she was certainly never a defendant in this action, and Intervenor-Plaintiffs cite no caselaw explaining why these claims would otherwise fit within the meaning of Rule 25(d). Further, that Intervenor-Plaintiffs assert that a future CD18 Representative—who would necessarily have won election under the current district map—will maintain the same motivations and standing to challenge the map as Representative Jackson Lee (*see infra* at 5-6) reinforces that the purpose of automatic substitution under Rule 25(d) is not to allow dead hand control of suits in federal court, but rather to maintain consistency when *the government* sues or is sued.

But even assuming that any relevant claim was made in Representative Jackson Lee's official capacity within the meaning of Rule 25(d), Intervenor-Plaintiffs can identify no official successor for Representative Jackson Lee because there is no successor to be identified. There is today no sitting representative for Texas's 18th Congressional District. For a short while following Representative Jackson Lee's death, Representative Sylvester Turner occupied the seat.[4] But since Representative Turner's passing, there has been no Representative for CD18 who could be automatically substituted for Representative Jackson Lee. And until the victor of the called

---

[4] S*ylvester Turner wins in Texas' 18th Congressional District*, FOX26 HOUSTON (Nov. 5, 2024) https://www.fox26houston.com/election/sylvester-turner-wins-texas-18th-congressional-district.

November 4, 2025, special election takes office, there will be no Representative who could be so substituted.[5]

## II.     Substitution is unavailable for Representative Jackson Lee's personal claims.

In like manner, there is no individual whom the Intervenor-Plaintiffs could substitute to carry Representative Jackson Lee's personal claims because those claims died with the Representative. The Federal Rules of Civil Procedure allow for substitution only "[i]f a party dies *and the claim is not extinguished*." Fed. R. Civ. P. 25(a)(1) (emphasis added). But the claims of Representative Jackson Lee are extinguished. As laid out in *Perez v. Abbott*, voting rights claims in Texas are subject to Texas survivorship law, which provides that claims purely for injunctive relief cannot survive the original claimant. *Perez*, 2017 WL 11886285 at *2–3; id. at *1 n.1 (noting that Texas's survivorship statute applies in both the Section 1983 and Voting Rights Act contexts).

Intervenor-Plaintiffs gesture vaguely to *Robertson v. Wegmann* for the proposition that "state survivorship rules should only be followed when not inconsistent with federal policy," and argue that—"given the compelling testimony provided by Congresswoman Jackson Lee"—allowing her claims to abate would contravene some unidentified federal policy. ECF 907 at 4. But this misreads *Robertson*, which actually holds that "the mere fact of abatement of a particular lawsuit is not sufficient ground to declare state law 'inconsistent' with federal law." *Robertson v. Wegmann*, 436 U.S. 584, 594–95 (1978). To assert that Texas's survivorship law is so inconsistent with federal policy that this Court is impelled to craft a new rule of federal common law, Intervenor-Plaintiffs must identify some overriding federal interest, such as the need for a uniform ability to obtain recovery where a constitutional violation causes a plaintiff's death. *See Carlson v. Green*, 446 U.S. 14, 24 (1980). But Intervenor-Plaintiffs point to no such overriding interest—and indeed no interest beyond their own goal of continuing to prosecute claims regarding a district in which no living Plaintiff resides. They also ignore that "[s]tanding under the Civil Rights Statutes is guided by 42

---

[5] Adam Zuvanich, *Texas governor calls November special election for Houston's vacant congressional seat*, HOUSTON PUBLIC MEDIA (Apr. 7, 2025) https://www.houstonpublicmedia.org/articles/news/politics/elections/2025/04/07/518132/texas-governor-calls-november-special-election-for-houstons-vacant-congressional-seat/.

U.S.C. § 1988, which provides that state common law is used to fill the gaps in administration of civil rights suits." *Pluet v. Frasier*, 355 F.3d 381, 383 (5th Cir. 2004); *see also Perez,* 2017 WL 11886285 at *2 (applying the same gap-filling mandate to VRA claims). Identifying a federal interest sufficient to overcome a clear statutory mandate is a tall order, and Intervenor-Plaintiffs fall well short.

  Intervenor-Plaintiffs likewise ignore that Texas's survivorship statute, much like the federal common law set out in *Carlson*, contains limited exceptions allowing survivorship for "constitutional claims seeking relief that can be meaningfully granted, such as constitutional claims for damages." *Perez,* 2017 WL 11886285 at *3. Texas's statute provides that an action over a "personal injury to the health, reputation, or person of an injured person . . . survives to and in favor of the heirs, legal representatives, and estate of the injured person." TEX. CIV. PRAC. & REM. CODE § 71.021(a)-(b). Legal remedies, such as damages, can "be fashioned in a manner to benefit plaintiff's successors;" equitable remedies cannot. *Hamilton v. Rogers*, 573 F. Supp. 452, 454 (S.D. Tex. 1983). Like the deceased plaintiff in *Perez*, Representative Jackson Lee requested only equitable remedies—specifically injunctions, a declaratory judgment, and an order for Texas to submit to preclearance under Section 3(c) of the Voting Rights Act—that cannot be meaningfully granted after her death. *Perez,* 2017 WL 11886285 at *3; ECF 619 at 28–29.

  In sum, substitution of a new party to carry forward Representative Jackson Lee's claims is impossible under binding law. Perhaps this impossibility is why—despite their claim that "the Congressional Intervenors are concurrently filing a Motion to Substitute regarding Sheila Jackson Lee's personal claims"—Intervenors have in fact filed no such motion. ECF 907 at 4.

## III. Intervenor-Plaintiffs' ancillary arguments do not impel substitution.

  Even if substitution were not impossible, Intervenor-Plaintiffs' judicial economy argument assumes that a future Representative for Congressional District 18 would necessarily wish to carry forward Representative Jackson Lee's claims—an assumption that inherently contradicts their assertion of standing. Further, permitting substitution at this stage of litigation would be unfairly

5

prejudicial to Defendants and would do little to advance the "policy" interest of providing a voice to the 18th Congressional District.

First, Intervenor-Plaintiffs' judicial economy argument presupposes that CD18's new Representative will be a minority candidate of choice, and concludes that that Representative having just won elected office under the existing district map, would nonetheless be motivated and have standing to challenge the boundaries under which he achieved electoral victory. The presupposition that CD18 as it is currently drawn will elect a minority candidate of choice is well-supported. Representative Sheila Jackson Lee won reelection in 2022 under this map, prior to her death.[6] Following her death, Representative Sylvester Turner—also a member of a minority group and a minority candidate of choice—won the special election to succeed her.[7] The reality of Congressional District 18's election results uniformly demonstrates that CD18 is still a performing majority-minority district that continues to provide minority voters an equal opportunity to elect the candidate of their choice. But that well-founded assumption is fatal to Intervenor-Plaintiffs' conclusion that any officeholder succeeding Representative Jackson Lee would have grounds to complain that CD18 unfairly denies minorities the opportunity to elect a candidate of their choice. The very fact of such a Representative's ascension to office would undercut any assertion of standing proffered by that Representative.

Second, even assuming that substitution is possible and is made immediately, permitting substitution a mere fourteen days before the close of discovery and forty days before the start of trial would be unfairly prejudicial to Defendants. A substituted Intervenor would either need to adopt wholesale Representative Jackson Lee's "compelling testimony" regarding CD18 or be immediately responsive to a brand-new set of discovery requests. Neither option is a sound path forward; the first would require Defendants to determine which of Representative Jackson Lee's statements are fairly within the personal knowledge of a newly substituted Intervenor and the

---

[6] *Texas 18th Congressional District Election Results*, THE NEW YORK TIMES (Nov. 30, 2022) https://www.nytimes.com/interactive/2022/11/08/us/elections/results-texas-us-house-district-18.html.
[7] *See supra* note 4.

second would add to Defendants' factfinding obligations on an already compressed discovery and pretrial timeline.

And finally, Intervenor-Plaintiffs' assertion that Representative Jackson Lee's claims must remain live in order to give voice to the concerns of African American Texans generally and CD18 voters in particular does not survive even passing scrutiny. There are dozens of other African American plaintiffs to the several consolidated suits that collectively make up with redistricting litigation who are more than capable of vindicating their own interests in this case. And nowhere do Intervenor-Plaintiffs explain why—if Representative Jackson Lee's claims are of such import to every resident of CD18—the Representative was the only resident to file suit on those claims. Intervenor-Plaintiffs had months to identify another individual with standing to challenge CD18. That Intervenor-Plaintiffs did not (or could not) speak volumes.

## IV.  Intervenor-Plaintiffs substantially misstate the law of substitution.

Intervenor-Plaintiffs' Response contains several erroneous—and frankly, puzzling—assertions of law. Discussing automatic substitution under Federal Rule of Civil Procedure 25(d), Intervenor-Plaintiffs state that "automatic substitution occurs by operation of law without any need for court intervention, as 'the court need not become aware of the substitution' and 'rule 25(d) expressly eliminates the abatement doctrine.'" ECF 907 at 3–4. Nothing about this claim is inherently contrary to the text of Rule 25(d) or the accompanying commentary, though Defendants have been unable to identify from where Intervenor-Plaintiffs derived the material that they quote as authoritative without providing citation. But immediately following that sentence, Intervenor-Plaintiffs assert the following (reproduced here exactly as it appears in Intervenor-Plaintiffs' Response:

> Substitution under Rule 25 is mandatory when properly requested. As established in Rhodes v. Collier, "if a party dies and the claim is not thereby extinguished, the court within two years after the death may order substitution of proper parties." The Congressional Intervenors are well within this timeframe in requesting substitution.

ECF 907 at 4.

That paragraph is confused, at best. Its placement within the structure of Intervenor-Plaintiffs' argument suggests that it addresses automatic substitution under Rule 25(d). But the assertion that substitution is only mandatory "*when properly requested,*" and is not an automatic function of law, implies that this argument falls outside the automatic substitution of Rule 25(d) and under the permissive substitution of Rule 25(a). Intervenor-Plaintiffs' reference to *Rhodes v. Collier*—presumably the *Rhodes v. Collier* found at 18 F.R.D. 50 (W.D. La. 1955), though Intervenor-Plaintiffs do not specify the citation—strengthens this implication, as *Rhodes* deals with substitution under Rule 25(a). But Rule 25(a) has never provided for mandatory substitution, instead providing that where a party's death leaves a claim unextinguished, a court "*may* order substitution." Fed. R. Civ. P. 25(a)(1) (emphasis added). *Rhodes* held only that Rule 25(a), like all Federal Rules, is mandatory—not that it mandates substitution upon request. *Rhodes*, 18 F.R.D. at 51 ("This rule is mandatory and if the proper representative or representatives of the deceased are not made parties within the delay provided, the court has no choice but to dismiss the demand.").

Finally, Intervenor-Plaintiffs assert that *Rhodes* "established" that "if a party dies and the claim is not thereby extinguished, the court within two years after the death may order substitution of proper parties." ECF 907 at 4. *Rhodes* did not so establish; the portion of the opinion referenced by Intervenor-Plaintiffs was instead a direct quote from the then-current text of Rule 25(a)(1). *Rhodes*, 18 F.R.D. at 51 (quoting Fed. R. Civ. P. 25(a)(1) (modified by amendment 1963)). *Rhodes* was decided in 1955, eight years before Rule 25(a) was changed by amendment to its modern form. Today's Rule 25(a) provides for substitution within 90 days of "the time information of the death is provided by means of a suggestion of death upon the record, i.e. service of a statement of the fact of the death"—not within two years of "the time of the death." Fed. R. Civ. P. 25(a)(1) advisory committee's note to 1963 amendment. To be sure, Defendants have made and served no suggestion of death upon the record; such a suggestion would be futile because no substitution can be made. But Intervenor-Plaintiffs' reliance on a substitution deadline that has not been good law in more than six decades is consistent with Plaintiffs' overall treatment of their redistricting claims, which they continue to litigate as if the 2020s were the 1960s.

**CONCLUSION**

Because no substitution on any of Representative Sheila Jackson Lee's claims is possible, Intervenor-Plaintiffs' judicial economy argument undermines their own standing, substitution would be prejudicial to Defendants and promote no compelling judicial policy, and Intervenor-Plaintiffs' misstatements of law inveigh against substitution, Defendants request that this Court dismiss entirely those claims related to CD 18 for lack of standing and dismiss Representative Lee as a party to this case.

Date: April 11, 2025

Respectfully submitted,

KEN PAXTON
Attorney General

*/s/ Ryan G. Kercher*
RYAN G. KERCHER
Chief, Special Litigation Division
Tex. State Bar No. 24060998

BRENT WEBSTER
First Assistant Attorney General

KATHLEEN T. HUNKER
Deputy Chief, Special Litigation Division
Tex. State Bar No. 24118415

RALPH MOLINA
Deputy First Assistant Attorney General

RYAN D. WALTERS
Deputy Attorney General for Legal Strategy

WILLIAM D. WASSDORF
Deputy Chief, General Litigation Division
Tex. State Bar No. 24103022

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
ryan.kercher@oag.texas.gov
kathleen.hunker@oag.texas.gov
will.wassdorf@oag.texas.gov

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on April 11, 2025 and that all counsel of record were served by CM/ECF.

*/s/ Ryan G. Kercher*
RYAN G. KERCHER