UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **LEAGUE OF UNITED LATIN AMERICAN CITIZENS,** *et al.*, | § § § § | |
| *Plaintiffs*, | § § | |
| **EDDIE BERNICE JOHNSON,** *et al.*, | § § § | EP-21-CV-00259-DCG-JES-JVB [Lead Case] |
| *Plaintiff-Intervenors*, | § § | & |
| v. | § § | All Consolidated Cases |
| **GREG ABBOTT,** *in his official capacity as Governor of the State of Texas*, *et al.*, | § § § § | |
| *Defendants*. | § § | |

## ORDER REQUIRING THE INTERVENOR PLAINTIFFS TO SUBMIT ADDITIONAL BRIEFING

The Fifth Circuit recently ruled in *Petteway v. Galveston County* that, for the purposes of establishing an effects-based racial-vote-dilution claim under Section 2 of the Voting Rights Act ("VRA"), a plaintiff may no longer define the relevant minority group as a coalition of two or more races.[1]  Defendants have therefore moved for partial judgment on the pleadings on any and all coalition claims that currently remain in the various Plaintiff Groups' operative complaints.[2]

---

[1] *See Petteway v. Galveston County*, 111 F.4th 596, 603 (5th Cir. 2024) (en banc) ("Section 2 of the Voting Rights Act does not authorize separately protected minority groups to aggregate their populations for purposes of a vote dilution claim.").

[2] *See* 1st Am. Mot., ECF No. 848, at 1, 2–4.

All page citations in this Order refer to the page numbers assigned by the Court's CM/ECF system rather than the cited document's internal pagination.

- 1 -

For the following reasons, the panel is having difficulty determining whether one of the Plaintiff Groups (the Intervenor Plaintiffs) are asserting effects-based vote-dilution claims in their operative pleading at all—let alone whether they've based those claims on impermissible coalition allegations. We therefore **ORDER** the Intervenor Plaintiffs to clarify those matters for the Court.

## I. DISCUSSION

The Intervenor Plaintiffs haven't amended their pleadings since they filed their Second Amended Complaint on October 19, 2022—nearly two full years before *Petteway*.³ Moreover, the Intervenor Plaintiffs didn't take advantage of their final opportunity to move to amend their pleadings one last time before trial by the March 20, 2025 deadline.⁴ As a result, the Second Amended Complaint is now locked into place as the Intervenor Plaintiffs' operative pleading in this case, and they may no longer amend that complaint to fix any pleading defects that may be lurking within it. Whether the Intervenor Plaintiffs may pursue effects-based vote-dilution claims at the rapidly approaching trial thus depends on whether the Second Amended Complaint contains well-pleaded allegations sufficient to support such claims.

The answer to that question isn't immediately obvious. As background, two of the six counts in the Intervenor Plaintiffs' *First* Amended Complaint explicitly asserted claims under VRA § 2.⁵ In a prior opinion, we construed both of those counts to raise effects-based vote-

---

³ *See* Intervenor Pls.' 2d Am. Compl., ECF No. 619, at 29.

⁴ *See* Order Setting Deadline File Mots. Leave Amend, ECF No. 877, at 1 ("The Court . . . orders that any Plaintiff Group that wishes to amend its pleadings before trial must move to do so before March 20, 2025." (emphases omitted)).

⁵ *See* Intervenor Pls.' 1st Am. Compl., ECF No. 209, at 21 ("Count I . . . . The 2021 Congressional redistricting plan *violates Section 2 of the Voting Rights Act* . . . ." (emphasis added)); *id.* at 21-22 ("Count II . . . . The 2021 Congressional redistricting plan . . . *violates Section 2 of the Voting Rights Act* . . . ." (emphasis added)).

dilution claims.[6] We then dismissed those counts because the First Amended Complaint didn't adequately plead the "*Gingles*" preconditions that are necessary to maintain such claims.[7] However, we granted the Intervenor Plaintiffs leave to amend their pleadings to attempt to salvage their defective *Gingles* allegations.[8]

When the Intervenor Plaintiffs filed their *Second* Amended Complaint, however, they omitted both of the effects-based vote-dilution counts that they had asserted in their prior pleading.[9] None of the four remaining counts in the Second Amended Complaint's "Causes of Action" section explicitly cite VRA § 2 at all.[10]

The Court might ordinarily infer that, by deleting the two VRA § 2 counts from their Second Amended Complaint, the Intervenor Plaintiffs were implicitly disclaiming any intention to pursue their effects-based vote-dilution claims any further. The issue, however, is that the Second Amended Complaint still contains numerous explicit references to VRA § 2 and the

---

[6] *See League of United Latin Am. Citizens v. Abbott*, No. 3:21-CV-00259, 2022 WL 4545757, at *1 (W.D. Tex. Sept. 28, 2022) [hereinafter *Intervenor MTD Op.*] ("We interpret the First Amended Complaint to assert the following challenges . . . (1) *Vote Dilution claims under Section 2 of the Voting Rights Act ('VRA') (Counts I and II)* . . . ." (emphasis added)).

*See also id.* (distinguishing the *effects*-based vote dilution claims in Count I and II of the First Amended Complaint from the *intentional* vote dilution claims in Count IV).

[7] *See id.* at *14–18.

[8] *See id.* at *32.

[9] *Compare* Intervenor Pls.' 1st Am. Compl. at 21–22, *with* Intervenor Pls.' 2d Am. Compl. at 25–28.

[10] *See* Intervenor Pls.' 2d Am. Compl. at 25–26 (Counts I and II, which raise intentional-discrimination claims under the U.S. Constitution); *id.* at 26 (Count III, which seeks to subject the State of Texas to federal preclearance of its voting laws as a remedy for its alleged constitutional violations); *id.* at 26–28 (Count IV, which raises a racial gerrymandering claim under the U.S. Constitution).

elements of an effects-based vote-dilution cause of action.[11]  Most notably, even though none of the four remaining counts in the complaint's "Causes of Action" section are explicitly based on VRA § 2, the complaint's "Prayer" section nonetheless asks us to issue "[a] declaratory judgment that State Defendants' actions violate the rights of Plaintiffs *as protected by Section 2 of the Voting Rights Act*."[12]  It's not immediately evident why the Second Amended Complaint would retain all those references to VRA § 2 and effects-based vote-dilution claims if the Intervenor Plaintiffs no longer want to pursue them.

Ultimately, "[p]leadings must be construed so as to do justice."[13]  It would be unjust for us to conclude reflexively that the Intervenor Plaintiffs intended to abandon their effects-based vote-dilution claims by deleting the two VRA § 2 counts from their pleadings when the Second Amended Complaint contains so many indications to the contrary.  Thus, before ruling on

---

[11] *See, e.g.*, *id.* at 1 ("This is an action to enforce Plaintiff-Intervenors rights [sic] under the Fourteenth and Fifteenth Amendments to the United States Constitution *and under Section 2 of the Voting Rights Act* . . . ." (emphasis added)); *id.* at 11 (referring to "districts that are required under Section 2 of the Voting Rights Act").

*See also, e.g.*, *id.* at 19 (alleging—presumably for the purposes of pleading *Gingles*'s majority-minority population requirement—that "[t]here is sufficient Latino population in the Dallas-Fort Worth metroplex to construct a reasonably-compact district in which Latino voters or Latino voters in cooperation with Black voters have an opportunity to elect their candidate of choice").

*See also, e.g.*, *id.* at 13 (alleging—presumably for the purposes of pleading *Gingles*'s political cohesiveness requirement—that "Black and Brown voters have voted cohesively" in recent elections).

*See also, e.g.*, *id.* at 15 (alleging—presumably for the purposes of pleading *Gingles*'s majority-bloc-voting requirement—that "Anglos . . . in the counties included in the [alleged] Houston/Fort Bend gerrymander and those in the [alleged] Dallas/Fort Worth Metroplex gerrymander . . . vote sufficiently as a block [sic] to defeat the preferred candidate of Latino and African-American voters").

*See also id.* at 14 (referring to "the Senate . . . Factors," which are relevant to the totality-of-the-circumstances element of an effects-based vote-dilution claim).

[12] *See id.* at 28 (emphasis added).

[13] FED. R. CIV. P. 8(e).

Defendants' Motion, we will order the Intervenor Plaintiffs to state on the docket whether they're still pursuing effects-based vote-dilution claims.

If the answer to that question is "yes," we'll then need to assess whether those claims survive Defendants' Motion for Partial Judgment on the Pleadings. That will in turn require us to determine whether the Intervenor Plaintiffs are basing those claims on coalition districts that are no longer permissible after *Petteway*—and, if so, whether the Second Amended Complaint contains any well-pleaded allegations to support those claims once the coalition allegations are excised.

Unfortunately, the answers to those questions aren't immediately obvious either. Some of the language in the Second Amended Complaint suggests that the Intervenor Plaintiffs do indeed seek to redraw at least some of the challenged districts as multiracial coalition districts.[14] Other language, however, suggests that the Intervenor Plaintiffs are proposing to redraw at least some of the challenged districts as *majority-Black* districts[15]—which remains permissible after

---

[14] *See, e.g.*, Intervenor Pls.' 2d Am. Compl. at 19 (alleging that "[t]here is sufficient Latino population in the Dallas-Fort Worth metroplex to construct a reasonably-compact district in which . . . *Latino voters in cooperation with Black voters* have an opportunity to elect their candidate of choice" (emphasis added)); *id.* at 13 (challenging the Texas Legislature's "fail[ure] to draw *minority coalition districts* between [sic] *Black and Brown* voters" (emphases added)); *id.* (alleging that "*Black and Brown voters* have voted cohesively in recent national, state and presidential elections," presumably for the purposes of pleading *Gingles*'s "political cohesiveness" precondition (emphasis added)); *id.* at 15 (similarly alleging that "*Latinos and African-Americans* . . . vote as a group and are politically cohesive" (emphasis added)).

[15] *See, e.g.*, *id.* at 9 (noting that "Intervenor Crockett unsuccessfully submitted an amendment . . . to the proposed State Congressional plan that would have . . . maintain[ed] [Congressional District 30's] status as a *majority African-American* CVAP District" (emphasis added)); *id.* at 15 (alleging that "*African-Americans* in Texas generally vote as a group and are politically cohesive," presumably for the purposes of pleading the "political cohesiveness" precondition for a proposed majority-Black district (emphasis added)).

*Petteway*.[16] Still other language suggests that the Intervenor Plaintiffs are proposing to satisfy the *Gingles* preconditions by constructing majority-*Latino* districts[17]—which they're not allowed to do because we've already ruled that the Intervenor Plaintiffs lack standing to pursue VRA § 2 claims on Latino voters' behalf.[18]

Nor is it immediately obvious whether the Intervenor Plaintiffs are pleading coalition districts *in the alternative* to single-race-majority districts, such that it might be possible to sever the *Petteway*-barred coalition claims from the non-*Petteway*-barred single-race claims.[19] Some of the language in the Second Amended Complaint suggests that the Intervenor Plaintiffs may

---

[16] *See League of United Latin Am. Citizens v. Abbott*, --- F. Supp. 3d ----, 2025 WL 630663, at *4 (W.D. Tex. Feb. 21, 2025) [hereinafter *Bacy & Fair Maps MTD Op.*] (explaining that while "demonstrative districts reliant on coalitions of disparate racial groups do . . . no good post-*Petteway*," an effects-based vote-dilution claim may still "survive dismissal" if the plaintiff "plausibly allege[s] that a single racial or ethnic group can constitute a majority in the proposed district" (cleaned up)).

[17] *See, e.g.*, Intervenor Pls.' 2d Am. Compl. at 19 ("There is sufficient *Latino* population in the Harris County-Fort Bend Area to construct a reasonably-compact district in which *Latino* voters have an opportunity to elect their candidate of choice." (emphases added)); *id.* (challenging "[t]he failure to create a new *Latino* opportunity district in the Dallas-Fort Worth region and/or the Harris County-Fort Bend County region" (emphasis added)); *id.* at 15 (alleging, presumably for the purposes of pleading *Gingles*'s "political cohesiveness" precondition for a majority-*Latino* district, that "*Latinos* in Texas vote as a group and are politically cohesive" (emphasis added)).

[18] *See Intervenor MTD Op.*, 2022 WL 4545757, at *13 ("Intervenors lack standing to pursue their section 2 vote dilution claims to the extent Intervenors challenge the Plan's dilutive effect on Latino voters . . . . Intervenors—as Black incumbents and candidates—lack standing to challenge the Plan's alleged dilutive effect on non-Black voters." (emphasis omitted)).

The Intervenor Plaintiffs *do* have standing to pursue *intent*-based *constitutional* vote-dilution claims on behalf of their Latino constituents, but *not* their *effects*-based *statutory* claims. *See id.*

[19] *Cf. Bacy & Fair Maps MTD Op.*, 2025 WL 630663, at *4–5 ("While alternative demonstrative districts reliant on coalitions of disparate racial groups do [the Bacy Plaintiffs] no good post-*Petteway*, Bacy's claims survive dismissal to the extent that they plausibly allege that a single racial or ethnic group can constitute a majority in the proposed district. Bacy is allowed to plead in the alternative, and where a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." (cleaned up)).

indeed be pleading coalition claims in the alternative to single-race claims.[20] Other language, by contrast, creates the impression that the Intervenor Plaintiffs are relying on coalition districts exclusively.[21] Still other language suggests that the Intervenor Plaintiffs are proposing *single-race-majority* districts exclusively.[22]

Without clarification on the foregoing matters from the Intervenor Plaintiffs, we would have to spend a significant amount of time and resources disentangling the seemingly inconsistent allegations in the Second Amended Complaint—time and resources that are becoming increasingly precious as the trial approaches. Rather than performing that interpretive exercise from scratch without any guidance from the Intervenor Plaintiffs, we will order the Intervenor Plaintiffs to tell us in the first instance what claims they're actually trying to assert in their operative pleading. Once we know that, we'll be in a much better position to determine whether the Second Amended Complaint pleads sufficient factual matter to support those claims.

---

[20] *See, e.g.*, Intervenor Pls.' 2d Am. Compl. at 3 (alleging that the Congressional Districts "in the Harris and Fort Bend Area as well as the Dallas Fort Worth Metroplex Area . . . were designed to prevent the creation of *either* a new *Latino* opportunity district *or* a new *Minority Coalition* District with a *plurality* of Latino population from being drawn in either area" (emphases added)); *id.* at 10 (alleging that "[a] seat could have been drawn in [the Harris County/Fort Bend] area that was *either* majority *Hispanic* CVAP *or* majority *BHCVAP*"—that is, majority Black *and* Hispanic (emphases added)); *id.* at 19 ("There is sufficient Latino population in the Dallas-Fort Worth metroplex to construct a reasonably-compact district in which *Latino* voters *or Latino voters in cooperation with Black voters* have an opportunity to elect their candidate of choice." (emphases added)).

*But see supra* note 17–18 (explaining that the Intervenor Plaintiffs lack standing to pursue claims based on any majority-Latino districts they they've pleaded in the alternative to Black-and-Latino coalition districts).

[21] *See* Intervenor Pls.' 2d Am. Compl. at 13 (challenging the Texas Legislature's "fail[ure] to draw *minority coalition districts* between [sic] *Black and Brown* voters" (emphases added)).

[22] *See id.* at 19 ("There is sufficient *Latino* population in the Harris County-Fort Bend Area to construct a reasonably-compact district in which *Latino* voters have an opportunity to elect their candidate of choice." (emphases added)); *id.* (challenging "[t]he failure to create a new *Latino* opportunity district in the Dallas-Fort Worth region and/or the Harris County-Fort Bend County region" (emphasis added)).

## II. CONCLUSION

By **April 24, 2025**, the Intervenor Plaintiffs **SHALL FILE** a document clarifying whether they still intend to pursue effects-based vote-dilution challenges under VRA § 2.

If the answer to that question is "yes," then the Intervenor Plaintiffs' filing **SHALL ALSO** clarify:

(1) the racial makeup of each of the Intervenor Plaintiffs' proposed *Gingles* districts—*i.e.*, majority-Black, majority-Latino, or a majority-Black-and-Latino coalition; and

(2) whether the Intervenor Plaintiffs are pleading any of those districts in the alternative to each other.

The Intervenor Plaintiffs **SHALL SUPPORT** those representations with citations to the relevant paragraphs of the Second Amended Complaint (and/or citations to the exhibits thereto), so that the Court can more easily determine whether the allegations in the complaint suffice to state the claims that the Intervenor Plaintiffs are attempting to pursue. The Court reiterates the Intervenor Plaintiffs' filing shall in no way be construed as a Third Amended Complaint, nor shall the filing include any new information not already plead in the Intervenor Plaintiffs' Second Amendment Complaint. This filing is for the Court's clarification purposes only.

If they wish, Defendants may respond to the Intervenor Plaintiffs' filing by **May 1, 2025**. But the Court reserves the right to rule on the issues identified in this Order without awaiting Defendants' response.

The Court emphasizes that this Order pertains only to Intervenor Plaintiffs' *effects*-based vote-dilution claims under *VRA § 2*. Defendants are *not* seeking a partial judgment on the pleadings on the Intervenor Plaintiffs' *intent*-based vote-dilution claims under the *Constitution*.[23]

Nor does anything in this Order pertain to the analytically distinct question of whether the Court should dismiss the claims of Intervenor-Plaintiffs Eddie Bernice Johnson and Sheila Jackson Lee now that they're deceased.[24] The Court will address that issue separately.

**So ORDERED and SIGNED this 17th day of April 2025.**

_____
**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**

*And on behalf of:*

| | | |
|---|---|---|
| **Jerry E. Smith** | | **Jeffrey V. Brown** |
| **United States Circuit Judge** | *-and-* | **United States District Judge** |
| **U.S. Court of Appeals, Fifth Circuit** | | **Southern District of Texas** |

---

[23] *See* 1st Am. Mot. at 3 (seeking to dismiss "the Intervenor Plaintiffs' *VRA* claims" only (emphasis added)).

*See also id.* at 5–6 (confirming that the only intentional discrimination claims at issue in Defendants' Motion are "the intentional discrimination claims advanced by [the] LULAC Plaintiffs, MALC Plaintiffs, NAACP Plaintiffs, and Brooks Plaintiffs").

[24] *See* Mot. Dismiss Johnson & Lee Claims, ECF No. 888.