Attachment 7

**EXPERT REBUTTAL REPORT OF ALLAN J. LICHTMAN**
*Abuabara et al. v. Scott et al.*, Case No. 1:21-cv-00965 (W.D. Tex.)

_____

Allan J. Lichtman

I.      **Statement of Purpose**

Earlier in this litigation, I filed an initial report which analyzed "Senate Factors" detailed in a report that accompanied the 1982 renewal of the Voting Rights Act (the "VRA") by the United States Senate Committee on the Judiciary as applied to the redistricting plans adopted by Texas in 2021. (Expert Report Of Allan J. Lichtman, *Voto Latino et al. v. Scott et al.*, Case No. 1:21-cv-00965 (W.D. Tex.)). This rebuttal report responds to the report of Dr. John Alford. The Alford report does not directly address any of the nine Senate Factors examined in my report. However, it does present material related to the assessment of **Factor 2: The extent to which voting in the elections of the state or political subdivision is racially polarized.**

This report also responds more briefly to the report of Sean Trende. Like Alford, Trende does not address the Senate Factors or refer to my initial report. However, his report has implications for three other Senate Factors that this report examines in the following order:

**Factor 9: Whether the policy underlying the state or political subdivision's use of such voting qualification, prerequisite to voting, or standard, practice, or procedure is tenuous.**

**Factor 8: Whether there is a significant lack of responsiveness on the part of elected officials to the particularized needs of the members of the minority group.**

**Factor 3: The extent to which the state or political subdivision has used voting practices or procedures that tend to enhance the opportunity for discrimination against the minority group, such as unusually large election districts, majority-vote requirements, and prohibitions against bullet voting.**

## II. The Alford Report: Senate Factor 2

The statistical analysis that Alford presents in his report corroborates the finding of my research that voting in general elections in Texas is highly polarized along racial lines. Anglo voters strongly vote for Republican candidates and Black and Hispanic voters for Democratic candidates. This corroboration is found in Table 3 of the Alford Report (p. 9-10), in which he presents his Ecological Inference (EI) estimates of Black, Hispanic, Asian, and Anglo voting for Democratic candidates in general elections for all 38 enacted congressional districts.

Table R1 summarizes his findings for all districts in which the concentration of the racial group is substantial enough for reliable estimation according to Alford (CVAP of more than 10%). Table R1 includes the mean Democratic vote across districts for Black, Hispanic, and Anglo voters. Asian voters are not included; in only one of 38 districts does the Asian CVAP exceed 10%, according to the Alford report. As shown in Table R1, the mean Anglo Democratic vote is 16.2%. The mean Black Democratic vote is 85.8%, for a polarization level with Anglos of 69.6 percentage points. The mean Hispanic Democratic vote is 73.2%, for a polarization level with Anglos of 57 percentage points.

Despite these extreme levels of polarization, Alford claims that they do not represent racially polarized voting because racial group voting by party is similar, regardless of the race of the candidates. He claims that general election results, which determine the final winners of elections, "only demonstrate partisan polarization, and partisan voting, in and of itself, does not establish racially polarized voting." Alford just asserts this claim. He provides no analysis for this claim that partisan voting is independent of race. He cites no authorities for this claim. Tellingly, Dr. Alford fails to challenge or even reference the section of my initial report (at p. 21-24) that demonstrates that racial groups vote along party lines not in spite of but because of race.

As I show in that uncontested section of my report: "The conjoining of party and race in Texas is demonstrated both by the policy positions held by Democratic and Republican officeholders and by the race-related attitudes and beliefs of rank-and-file Democratic and Republican voters." (p. 23).

Additional evidence ignored by the Alford Report corroborates this finding. My initial report cited the results of evaluations of U.S. Senators and Representatives by the NAACP and the Leadership Conference on Civil and Human Rights. In addition, for 2013-2014, the National Hispanic Leadership Agenda (NHLA), a coalition of 39 Latino advocacy organizations, released a Congressional Scorecard for issues of concern to Hispanics. The results of that scoring for U.S. Senators and House members from Texas is presented in Table R2. As shown in Table R2, Republicans receive scores on the NHLA scorecard that are at or close to zero. Republican U.S. Senator Ted Cruz scores zero and Republican U.S. Senator John Cornyn scores 15%. Cornyn's score is the highest among any Texas Republican legislator in the U.S. Congress. All Republican U.S. House members uniformly score zero. In contrast, all but one Democratic member of the U.S. House scored 100%, averaging 96%. As shown in Table R2 and Chart R1, these ratings translate to a polarization level of 96% between Republican and Democratic members of the U.S. House.

This extreme level of party polarization on Hispanic issues was independent of the race of Republican or Democratic incumbents. As shown in Table R2, Hispanic Republican Senator Ted Cruz scored zero, as did Bill Flores, the one Hispanic member of the Republican Texas House delegation. As further shown in Table R2, the three Anglo Democratic House members, Beto O'Rourke, Gene Green, and Lloyd Doggett, all scored 100%. The two Black Democratic U.S. House members, Sheila Jackson Lee and Eddie Bernice Johnson, likewise scored 100%.

4

Additional evidence demonstrates the inseparable ties between party and race in Texas. Republicans have long controlled statewide elections in Texas. All statewide election officials currently in Texas are Republicans. Yet as shown in Table R3 and Chart R2, Republicans have failed to advance minorities who comprise about half the state's citizen voting age population to statewide positions. Among nine statewide elected executive officials, only one – Hispanic Land Commissioner George P. Bush – is a minority (11.1%). However, Bush lost decisively in the 2022 Republican runoff for attorney general, garnering just 31.9% of the vote. Among nine statewide elected Texas State Supreme Court justices, only one (11.1%) is a minority – Hispanic Rebeca Aizpuru Huddle – who was appointed by Governor Greg Abbott in 2020. Among nine statewide elected judges of the Texas Court of Criminal Appeals, only one (11.1%) is a minority: African American Jesse McClure, who was appointed by Governor Abbott in 2020. Thus, among twenty-seven Republican statewide elected executive officials and judges, only three are minorities. This 11.1% representation trails the 49.9% minority CVAP in Texas by 38.8 percentage points. Among the federal officials elected statewide to the U.S. Senate, one (50%) is a minority, Senator Ted Cruz, achieving parity. When state and federal officials elected statewide are combined, minorities hold 4 of 29 positions – 13.8%, which trails the minority CVAP by 36.1 percentage points.

Texas Republicans have similarly failed to advance minorities to Congress and state legislature positions. As shown in Table R4, of 24 Republicans currently in Texas's congressional delegation, only two (8.3%) are minorities, which trails the minority CVAP by 41.6 percentage points. As additionally shown in Table R4, of 100 Republicans in the Texas State Legislature, 5 are minorities (5%), which trails the minority CVAP by 44.9 percentage points. As shown in Table R4 and Chart R3, this minimal minority representation among

Republican legislators stands in contrast to the substantial minority representation among Democratic legislators. Minorities comprise 83.3% of Democratic Texas representatives in Congress, ten times greater than Republican representation. Minorities comprise a similar 80% of Democratic Texas state legislators, sixteen times greater than Republican representation.

In addition to general elections, primary elections provide insight, independent of party, as to whether the presence of a minority candidate results in polarization between Anglo voters and voters of that candidate's race. Alford does not consider any primary elections with significant insight into racial polarization independent of party. One critical primary is the competitive, high-profile 2008 Democratic primary between Black candidate Barack Obama and Anglo candidate Hillary Clinton, for which exit poll data is available. As demonstrated in Table R5 and Chart R4, Black voters overwhelmingly voted for Obama at 84%, compared to 44% of Anglo voters, for a polarization gap of 40%. Obama lost the primary to Clinton in Texas but would have won handily among Black voters.

Further evidence of racially polarized voting untethered to party is provided by the voting of Black and Anglo Democrats and Independents in the general presidential election that followed the 2008 primaries. Table R6 and Chart R5 analyze Black and Anglo voting in the 2008 general election, holding party affiliation constant. As shown in the Table and Chart, 11% of Anglo Democrats voted for Anglo candidate McCain in the contest against Obama, compared to 1.8% of Black Democrats. As also shown in Table R6 and Chart R5, 62% of Anglo Independents voted for McCain, compared to 0% of Black Independents. Analysis cannot be conducted for Black and Anglo Republicans because there are so few Black Republicans. The 2008 Cooperative Congressional Election Study – an authoritative source in social science – on which this analysis is based, included only two Black Republicans.

Examination of the Democratic primary election EI results included in the Alford Report also demonstrates significant polarization between minority and Anglo voters when party is held constant. Table R7, Summary Table R8, and Chart R6 report racial bloc voting for Black candidates competing against Anglos in five county clusters included in the Alford Report. These results demonstrate that Black voters responded substantially more positively than Anglo voters to Black candidates competing against Anglo candidates in Democratic primary elections. Alford obtains the EI estimates for these elections and candidates from the Duchin Supplemental Report and affirms the results.

As reported in Table R7, in every cluster for every black candidate, with one exception (where the difference is 0.7%), Black voters gave more support to Black candidates than did Anglo voters.[1] The results reported in Summary Table R8 also show that for every Black candidate in the five clusters, the mean Black vote for the Black candidate exceeded the mean Anglo vote by an average of 28%.

As additionally reported in Summary Table R8, the Black candidate was the candidate of choice of Black voters in all 24 elections in the five clusters (100%). The Black candidate was the candidate of choice of Anglo voters in only 5 of 24 elections (20.8%). All five exceptions were for Black candidate Steve Brown in the 2014 Railroad Commission primary. Brown won

[1] The analysis does not include Black candidate Kesha Rogers, who was a disciple of Lyndon LaRouche and advocated for the impeachment of President Obama. She garnered 28% of the vote in the 2014 Democratic Railroad Commission runoff against candidate David Alameel, whose race is unclear. On Rogers see, David Weigel, "Fear of a LaRouche Planet," *Slate*, 4 March 2014, https://slate.com/news-and-politics/2014/03/texas-democrat-kesha-rogers-fear-of-a-larouche-planet.html. On Alameel see, "David Alameel Says He Lived in a Colonia While Working as a Farm Worker," PolitiFact, 2 July 2014, https://www.politifact.com/factchecks/2014/jul/02/david-alameel/alameel-lived-la-colonia-community-it-wasnt-coloni/. Rogers was a perennial losing candidate who obtained only 22% of the vote in the both the primary and runoff contests for U.S. Senate in 2014. Also, not every Black candidacy is analyzed in the five clusters included in Table R6. The Yarbrough 2016 Railroad Commission primary is analyzed in 3 clusters and the West 2020 US Senate primary is analyzed in one cluster. I have included the two county clusters reported by Alford and not separately each of the two counties, which would not consequentially change results.

the primary with 64% of the vote statewide against an Anglo opponent who spent no money on his campaign.[2] With the exception of Brown, the Black candidate was the candidate of choice of Anglo voters in none of the remaining 19 elections in the five clusters (0%).

The analysis of elections with Hispanic candidates competing against Anglo candidates in Democratic primaries is complicated by two relatively uncontested elections, among the four elections analyzed. In the 2014 primary for governor, Hispanic candidate Ray Madrigal garnered only 22% of the vote, compared to 78% for his Anglo opponent Wendy Davis. Madrigal was a local judge with no recognition statewide who made no expenditures for his campaign.[3] The opposite situation applies to the 2018 primary for Land Commissioner, where Hispanic candidate Miguel Suazo garnered 70% of the vote compared to 30% for his Anglo opponent Tex Morgan, who ran a very limited campaign.[4]

As reported in Table R9, in every cluster for every Hispanic candidate, with no exceptions (including the elections involving Madrigal and Suarez), Hispanic voters gave more support to Hispanic candidates than Anglo voters. The results reported in Summary Table R8 also show that for every Hispanic candidate in the five clusters, the mean Hispanic vote for the Hispanic candidate exceeded the mean Anglo vote by 25.3 percentage points.

As additionally reported in Summary Table R10 and Chart R7, even counting the two non-competitive elections involving Madrigal and Suarez, the Hispanic candidate was the candidate of choice of Hispanic voters in 14 of 20 elections in the five clusters (70%), whereas the Hispanic candidate was the candidate of choice of Anglo voters in only 5 of 20 elections

[2] Follow the Money, 2014 Elections, Texas, https://www.followthemoney.org/tools/election-overview?s=TX&y=2014.
[3] Alexa Ura and Maggie Smith, "Davis Losses in Border Counties Encourage GOP," Texas Tribune, 5 March 2014, https://www.texastribune.org/2014/03/05/davis-primary-losses-border-come-defeat-over-abbot/; Follow the Money, 2014 Elections, Texas, https://www.followthemoney.org/tools/election-overview?s=TX&y=2014.
[4] Texas Land Commissioner 2018 Democratic Primary, Campaign Spending, https://www.transparencyusa.org/tx/race/texas-land-commissioner?cycle=2018-election-cycle.

(25%). Absent Madrigal, the Hispanic candidate was the candidate of choice of Hispanic voters in 14 of the 15 elections in the five clusters (93%), whereas the Hispanic candidate was the candidate of choice of Anglo voters in 5 of the 15 elections (33%). Absent Madrigal and Suarez, the results reported in Summary Table R10 and Chart R7 also show that the Hispanic candidate was the candidate of choice of Hispanic voters in 9 of the 10 elections in the five clusters (90%), whereas the Hispanic candidate was the candidate of choice of Anglo voters in 0 of the 10 elections (0%).

### III. The Alford Report: Conclusions

This analysis of racially polarized voting for general elections in Texas discloses that partisan alignments along racial lines are not independent of race, but follow racial distinctions between political parties. Further evidence derives from the analysis of Democratic primary elections, in which minorities predominantly participate. This analysis discloses that the candidate's race substantially impacts the voting of minorities and Anglos in Texas when partisan affiliation is held constant. So too does the study of Black and Anglo voting in the 2008 general presidential election within, not between, partisan affiliated groups. Additional evidence of racial polarization voting derives from the analysis of the racial composition of Republican as compared to Democratic elected officials in Texas.

### IV. The Trende Report

The report submitted by Sean Trende does not address any of the Senate Factors probed in my initial report. However, the Trende report's suggestion that the enacted plans were motivated by the pursuit of partisan advantage is relevant to assessing three Senate Factors. This report will consider in turn, the following Senate Factors:

**Factor 9: Whether the policy underlying the state or political subdivision's use of such voting qualification, prerequisite to voting, or standard, practice, or procedure is tenuous.**

**Factor 8: Whether there is a significant lack of responsiveness on the part of elected officials to the particularized needs of the members of the minority group.**

**Factor 3: The extent to which the state or political subdivision has used voting practices or procedures that tend to enhance the opportunity for discrimination against the minority group, such as unusually large election districts, majority-vote requirements, and prohibitions against bullet voting.**

### V. Overview of the Trende Report

Trende devotes most of his 209-page report to an effort to prove that Republican decision-makers in Texas' designed their post-2020 congressional and legislative redistricting plans to achieve an advantage for Republicans through the partisan gerrymandering of districts. In his "Summary of Opinions," Trende states that "All three maps [Congress, State Senate, and State House] improve Republican performance by separating out Republican and Democratic partisans." (Trende Report at 7). For congressional districts, Trende concludes that "a close examination of the historical context behind the districts, of the districts themselves, and of their political and racial composition, clearly demonstrates that they are consistent with districts

drawn to substantially improve the political advantage of the Republican Party." (Trende Report, at 9) For State House districts, Trende finds that "Based on my review, it is my view that the districting choices made in the State House map appear to be consistent with a political explanation." (Trende Report, at 163). Finally, in his concluding paragraph, Trende states "The Enacted Plans are drawn in such a way that they shore up Republican performance in districts that had wavered by the end of the decade." (Trende Report, at 209).

### VI. The Trende Report: Analysis of Senate Factor 9

Senate Factor 9 probes whether the policy underlying the state or political subdivision's use of the challenged voting standard, practice, or procedure is tenuous. Taken at face value, Trende's claim that Texas's three redistricting plans represent partisan political gerrymanders demonstrates that the policy underlying the plans is not just tenuous but detrimental from a good government and pro-democracy perspective. Partisan gerrymandering is a widely denounced practice that takes choices out of the hands of voters in favor of partisan line-drawers, by letting politicians, rather than voters, dictate the outcomes of legislative elections.

Glenn C. Altschuler, the Thomas and Dorothy Litwin Professor of American Studies at Cornell University, notes that "partisan gerrymandering" is a "legal form of vote stealing [under a recent decision of the U.S. Supreme Court] used by politicians who disregard the political composition of the electorate in their state to ensure they retain power for themselves and their party." He concludes "that democracies cease to be democracies when the outcome of elections is predetermined."[5] Walter Olson, a Republican who is a senior fellow at the libertarian Cato Institute and co-chair of the Maryland Redistricting Reform Committee, concluded that "Partisan

---

[5] Glenn C. Altschuler, "Gerrymandering: A Legal Form of Vote Stealing is More Entrenched Than Ever," *The Hill*, 29 May 2022, https://thehill.com/opinion/campaign/3505157-gerrymandering-a-legal-form-of-vote-stealing-more-entrenched-now-than-ever/.

gerrymandering remains a distinctive political evil, a force for entrenching undeserving incumbency, and a worthy target for efforts at reform."[6] Nicholas Stephanopoulos, the Kirkland and Ellis Professor of Law at the Harvard Law School, states that "There are many practices that trouble good-government advocates: voting restrictions, unrestricted campaign expenditures, closed primaries, and so on. But few, if any, of these policies have the same confirmed connection with distorted representation as partisan gerrymandering." [7]

He concludes as follows:

"Recent advances in measuring partisan gerrymandering have not been matched by similar progress in understanding the practice's causes and consequences. Accordingly, this Article carries out the most rigorous examination to date of the factors that drive district plans' partisan skews and of these skews' representational implications. In a nutshell, the Article's conclusions are that single-party control of redistricting fosters partisan unfairness more than any other variable, and that such unfairness translates directly into ideologically distorted representation. These results are not necessarily surprising, but they establish that, at its core, gerrymandering is both a deliberate and a democratically debilitating phenomenon."[8]

In its 2019 decision in *Rucho v. Common Cause*, 139 S. Ct. 2484 (2019), the U.S. Supreme Court ruled that partisan gerrymandering is a "nonjusticiable" matter beyond the reach of federal courts. However, the majority opinion also warned of the pernicious consequences of partisan gerrymandering.[9] In his opinion for the Court's five-justice majority, Chief Justice John

---

[6] Walter Olson, "The Ghost Ship of Gerrymandering Law," *Cato Institute*, 2018, at 78, https://www.cato.org/sites/cato.org/files/serials/files/supreme-court-review/2018/9/2018-cato-supreme-court-review-3.pdf.
[7] Nicholas Stephanopoulos, "The Causes and Consequences of Gerrymandering," Public Law and Legal Theory Working Papers," 2017, at 21.
atathttps://chicagounbound.uchicago.edu/cgi/viewcontent.cgi?article=2119&context=public_law_and_legal_theory
[8] Id., at 22.
[9] I cite these finding for their substance, not to draw any legal conclusions.

Roberts noted that "The District Court nevertheless asserted that partisan gerrymanders violate 'the core principle of [our] republican government' preserved in Art. I, §2, 'namely, that the voters should choose their representatives, not the other way around.'" He did not challenge this substantive conclusion but instead noted, "That seems like an objection more properly grounded in the Guarantee Clause of Article IV, §4, which 'guarantee[s] to every State in [the] Union a Republican Form of Government.' This Court has several times concluded, however, that the Guarantee Clause does not provide the basis for a justiciable claim. Justice Roberts further noted that "Excessive partisanship in districting leads to results that reasonably seem unjust. But the fact that such gerrymandering is 'incompatible with democratic principles,' *Arizona State Legislature*, 576 U. S., at ___ (slip op., at 1), does not mean that the solution lies with the federal judiciary." He stressed that "Our conclusion does not condone excessive partisan gerrymandering," but rather that the cure rests with the states and Congress.[10]

Thus, Trende's assertion that the enacted plans are based on a policy of partisan gerrymandering shows that the policy underlying the plans is a tenuous one, rather than an important one.

### VII. The Trende Report: Analysis of Senate Factor 8

Senate Factor 8 asks whether there is a significant lack of responsiveness on the part of elected officials to the particularized needs of the members of the minority group. There is no dispute among experts for plaintiffs or defendants that minorities in Texas prefer to elect Democratic members of Congress and the State Legislature, and Anglos prefer to elect Republicans. Even taking Trende's conclusion at face value, by creating a partisan gerrymander

---

[10] *Rucho v. Common Cause*, No. 18-422, 588 U.S. ___ (2019), at 30-31.

that advantages Republicans, Texas has significantly impeded the ability of minorities to elect national and state legislators responsive to their particularized needs.

### VIII. The Trende Report: Analysis of Senate Factor 3

Senate Factor 3 probes a state's use of voting practices or procedures that tend to enhance the opportunity for discrimination against the minority group. Again, given the undisputed correlation between race and party in Texas, partisan gerrymandering by Texas Republicans creates a structural impediment to the opportunity for minority voters to participate fully in the political process and elect candidates of their choice. As Professor Stephanopoulos noted, partisan gerrymandering is more consequential for electoral fairness than other anti-democratic structural impediments.

### IX. The Trende Report: Conclusions

Although Trende does not address the Senate Factors, his assertion that the enacted plans are partisan gerrymanders raises significant issues under Senate Factors 3, 8 and 9.

### X. Overall Conclusions

Neither the Alford nor the Trende reports directly address any of the nine Senate Factors nor make any mention of my initial report. Nonetheless, the material presented in these two reports contain material relevant to several of the Senate Factors. Analysis of the Alford and Trende reports strengthens my findings with respect to four of the nine Senate Factors: Factors 2, 3, 8, and 9.

## APPENDIX: TABLES AND CHARTS

### TABLE R1
### AVERAGE VOTE FOR DEMOCRATIC CANDIDATES BY RACE, ALFORD
### ESTIMATES, CONGRESSIONAL DISTRICTS WITH RACIAL GROUP CVAP >10%,

| MEAN DEMOCRATIC VOTE RACIAL GROUP | RACIAL POLARIZATION, DIFFERENCE WITH ANGLO |
|---|---|
| | |
| ANGLOS | |
| 16.2% | NA |
| | |
| BLACKS 85.8% | +69.6% |
| | |
| HISPANICS 73.2% | +57.0% |
| | |
| Source: Alford Report, Table 3, Pp. 9-10. | |

**TABLE R2**
**NATIONAL HISPANIC LEADERSHIP AGENDA, SCORES, TEXAS, 2013-2014**

| TEXAS US SENATORS | | | |
|---|---|---|---|
| Ted Cruz R | 0% | | |
| John Cornyn R | 15% | | |

| TEXAS US HOUSE MEMBERS | | | |
|---|---|---|---|
| **REPUBLICANS** | **SCORES** | **DEMOCRATS** | **SCORES** |
| Louie Gohmert | 0% | Al Green | 100% |
| Ted Poe | 0% | Ruben Hinojosa | 100% |
| Sam Johnson | 0% | Beto O'Rourke | 100% |
| Ralph Hall | 0% | Sheila Jackson Lee | 100% |
| John Ratcliffe | 0% | Joaquin Castro | 100% |
| John Hensarling | 0% | Henry Cuellar | 57% |
| Joe L. Barton | 0% | Gene Green | 100% |
| John Culberson | 9% | Eddie Johnson | 100% |
| Kevin Brady | 0% | Marc Veasey | 100% |
| Michael McCaul | 0% | Filemon Vela | 100% |
| K. Michael Conaway | 0% | Lloyd Doggett | 100% |
| Kay Granger | 0% | | |
| Mac Thornberry | 0% | | |
| Randy Weber | 0% | | |
| Randy Neugebauer | 0% | | |
| Bill Flores | 0% | | |
| Lamar Smith | 0% | | |
| Pete Olson | 0% | | |
| Kenny Marchant | 0% | | |
| Roger Williams | 0% | | |
| Michael Burgess | 0% | | |
| Blake Farenthold | 0% | | |
| John Carter | 0% | | |
| Pete Sessions | 0% | | |
| Steven Stockman | 0% | | |
| **AVERAGE** | **0%** | | **96%** |

**DIFFERENCE DEMOCRATS VS. REPUBLICANS …..96%**

Source: National Hispanic Leadership Agenda, Senate And House Scores, Texas, 2013-2014,
http://files.ctctcdn.com/765b22b5001/bd3c6c9c-63f3-41c3-9b61-bcb6792d2f0e.pdf.

**CHART R1**

**TEXAS CONGRESSIONAL DELEGATION, REPUBLICAN V. DEMOCRATIC**
**NATIONAL HISPANIC LEADERSHIP AGENDA (NHLA) SCORES, FROM TABLE R2**



**TABLE R3**
**MINORITY REPRESENTATION AMONG TEXAS REPUBLICAN ELECTED STATEWIDE OFFICIALS**

| Public Office | % of Minorities Among Republicans | Minority CVAP | Percentage Point Difference | Difference # of Positions |
|---|---|---|---|---|
| State Executive Officials | 11.1% (1 of 9) | 49.9% | -38.8% | -3.5 |
| State Supreme Court | 11.1% (1 of 9) | 49.9% | -38.8% | -3.5 |
| State Ct of Criminal Appeals | 11.1% (1 of 9) | 49.9% | -38.8% | -3.5 |
| State Officials Elected Statewide | 11.1% (3 of 27) | 49.9% | -38.8% | -10.5 |
| US Senate | 50% (1 of 2) | 49.9% | +0.1% | 0 |
| All Elected Statewide | 13.8% (4 of 29) | 49.9% | -36.1% | -10.5 |

Sources: Texas Courts, https://www.txcourts.gov/supreme/about-the-court/, https://www.txcourts.gov/cca; Ballotpedia, United States Congressional Delegations From Texas, https://ballotpedia.org/United_States_congressional_delegations_from_Texas, Texas State Executive Offices, https://ballotpedia.org/Texas_state_executive_offices.

**CHART R2**
**MINORITY REPRESENTATION AMONG ALL REPUBLICAN STATEWIDE TEXAS ELECTED OFFICIALS COMPARED TO MINORITY CVAP, FROM TABLE R3**



**TABLE R4**
**MINORITY REPRESENTATION AMONG TEXAS REPUBLICAN ELECTED MEMBERS US CONGRESS, STATE LEGISLATURE**

| REPUBLICAN CONGRESSIONAL AND STATE LEGISLATORS | | | | |
|---|---|---|---|---|
| Public Office | % of Minorities Among Republicans | Minority CVAP | Percentage Point Difference | Difference # of Positions |
| U.S. Congress | 8.3% (2 of 24) | 49.9% | -41.6% | -10 |
| State Legislature | 5% (5 of 100) | 49.9% | -44.9% | -45 |

| DEMOCRATIC CONGRESSIONAL AND STATE LEGISLATORS | | | | |
|---|---|---|---|---|
| Public Office | % of Minorities Among Democrats | Minority CVAP | Percentage Point Difference | Difference # of Positions |
| U.S. Congress | 83.3% (10 of 12) | 49.9% | +33.4% | +4 |
| State Legislature | 80% (64 of 80) | 49.9% | +30.1% | +24 |

Sources: Ballotpedia, United States Congressional Delegations From Texas, https://ballotpedia.org/United_States_congressional_delegations_from_Texas, Alexa Ura and Carla Astudillo, "In 2021 White Men Are Still Overrepresented in the Texas Legislature, Texas *Tribune*, 11 January2021, https://apps.texastribune.org/features/2020/2021-texas-legislature-representation/; Texas State House of Representatives, Members," https://house.texas.gov/members/; "The Texas State Senate, Members" https://senate.texas.gov/members.php.

**CHART R3**
**REPUBLICAN VS. DEMOCRATIC MINORITY REPRESENTATION, TEXAS CONGRESS AND STATE LEGISLATURE, FROM TABLE R4**



**TABLE R5**
**TEXAS 2008 DEMOCRATIC PRIMARY FOR PRESIDENT, EXIT POLL RESULTS,**
**VOTING BY BLACKS AND ANGLOS**

| CANDIDATE | % OF BLACK VOTERS FOR | % OF ANGLO VOTERS FOR |
|---|---|---|
| | | |
| BARACK OBAMA | 84% | 44% |
| | | |
| HILLARY CLINTON | 16% | 55% |
| | | |
| POLARIZATION LEVEL: BLACK VS. ANGLO VOTING FOR OBAMA: 40% | | |

Source: Exit Poll: ABC News 2008 Democratic Primary Exit Poll Results - Key Groups,
https://abcnews.go.com/images/PollingUnit/08DemPrimaryKeyGroups.pdf.

**CHART R4**
**BLACK AND ANGLO VOTING FOR BARACK OBAMA, 2008 DEMOCRATIC**
**PRESIDENTIAL PRIMARY, TEXAS, FROM TABLE R5**



**TABLE R6**
**VOTE FOR ANGLO CANDIDATE MCCAIN IN 2008 GENERAL PRESIDENTIAL ELECTION IN TEXAS, ANGLOS AND BLACKS**

| VOTES FOR MCCAIN, DEMOCRATS | |
|---|---|
| | |
| ANGLO DEMOCRATS (N=210) | BLACK DEMOCRATS (N=165) |
| | |
| 11% | 1.8% |
| | |
| VOTES FOR MCCAIN, INDEPENDENTS | |
| | |
| ANGLO INDEPENDENTS (N=208) | BLACK INDEPENDENTS (N=33) |
| | |
| 62% | 0% |
| | |
| Source: Cooperative Congressional Election Study (CCES), 2008, https://cces.gov.harvard.edu/. | |
| Differences are statistically significant at <.001. | |

24

**CHART R5**
**VOTE FOR ANGLO CANDIDATE MCCAIN IN 2008 GENERAL PRESIDENTIAL ELECTION IN TEXAS, ANGLOS AND BLACKS, FROM TABLE R6**



**TABLE R7**
**BLACK CANDIDATES, DEMOCRATIC PRIMARIES WITH ANGLO CANDIDATES,
STUDIED IN ALFORD REPORT, BLACK & ANGLO VOTER SUPPORT**

| TARRANT/DALLAS COUNTY CLUSTER | | | | |
|---|---|---|---|---|
| ELECTION | CANDIDATE | % BLACK | % ANGLO[11] | POLARIZATION |
| RR Prim 2014 | S. Brown | 68.5% | 62.9% | 5.6% |
| RR Prim 2016 | G. Yarbrough | 50.0% | 33.6% | 16.4% |
| R.R. Runoff 2016 | G. Yarbrough | 70.0% | 48.9% | 21.1% |
| Lt Gov Prim 2018 | M. Cooper | 65.9% | 28.6% | 37.3% |
| U.S. Sen Prim 2020 | R. West | NA | NA | NA |
| U.S. Sen Runoff 2020 | R. West | 87.3% | 39.2% | 48.1% |
| HARRIS/FT. BEND COUNTY CLUSTER | | | | |
| ELECTION | CANDIDATE | % BLACK | % ANGLO | POLARIZATION |
| RR Prim 2014 | S. Brown | 69.9% | 61.2% | + 8.7% |
| RR Prim 2016 | G. Yarbrough | 54.5% | 35.6% | +18.9% |
| R.R. Runoff 2016 | G. Yarbrough | 72.3% | 39.1% | +33.2% |
| Lt Gov Prim 2018 | M. Cooper | 67.1% | 23.0% | +44.1% |
| U.S. Sen Prim 2020 | R. West | NA | NA | NA |
| U.S. Sen Runoff 2020 | R. West | 75.5% | 27.0% | +48.5% |
| DENTON/WISE COUNTY CLUSTER | | | | |
| ELECTION | CANDIDATE | % BLACK | % ANGLO | POLARIZATION |
| RR Prim 2014 | S. Brown | 70.6% | 66.1% | + 4.5% |
| RR Prim 2016 | G. Yarbrough | NA | NA | NA |
| RR Runoff 2016 | G. Yarbrough | 63.7% | 47.8% | +15.9% |
| Lt Gov Prim 2018 | M. Cooper | 65.6% | 29.2% | +36.4% |
| U.S. Sen Prim 2020 | R. West | 50.5% | 17.8% | +32.7% |
| U.S. Sen Runoff 2020 | R. West | 76.4% | 29.4% | 47.0% |
| LUBBOCK COUNTY CLUSTER | | | | |
| ELECTION | CANDIDATE | % BLACK | % ANGLO | POLARIZATION |
| RR Prim 2014 | S. Brown | 61.5% | 62.2% | -0.7% |
| RR Prim 2016 | G. Yarbrough | NA | NA | NA |
| RR Runoff 2016 | G. Yarbrough | 67.3% | 48.3% | +19.0% |
| Lt Gov Prim 2018 | M. Cooper | 63.2% | 25.7% | 37.5% |
| U.S. Sen Prim 2020 | R. West | NA | NA | NA |
| U.S. Sen Runoff 2020 | R. West | 76.5% | 30.0% | +46.5% |
| BRAZORIA COUNTY CLUSTER | | | | |
| ELECTION | CANDIDATE | % BLACK | % ANGLO | POLARIZATION |
| RR Prim 2014 | S. Brown | 66.9% | 62.2% | 4.7% |
| RR Prim 2016 | G. Yarbrough | 51.6% | 42.7% | 8.9% |
| R.R. Runoff 2016 | G. Yarbrough | 63.2% | 43.3% | 19.9% |
| Lt Gov Prim 2018 | M. Cooper | 65.3% | 27.6% | 37.7% |
| U.S. Sen Prim 2020 | R. West | NA | NA | NA |
| U.S. Sen Runoff 2020 | R. West | 80.3% | 34.2% | +46.1% |
| Source: Tables 5, 6, 8, 10, 11, 12, Alford Report, pp. 15-21. | | | | |

---

[11] As computed in the tables reported by Alford, the Anglo vote is technically the vote of voters who are not Black, Hispanic, or Asian. So, although overwhelmingly Anglo it will include a small percentage of others.

**SUMMARY TABLE R8**

**FIVE CLUSTER DEMOCRATIC PRIMARY, RESULTS FROM TABLE R7**

| BLACK CANDIDATE | AVERAGE POLARIZATION | MAJORITY CANDIDATE OF CHOICE, BLACK VOTERS | MAJORITY CANDIDATE OF CHOICE, ANGLO VOTERS |
|---|---|---|---|
| S. Brown RR Prim 2014 | +13.0% | 5 of 5 Clusters | 5 of 5 Clusters |
| G. Yarbrough  RR Prim 2016 | +14.7% | 3 of 3 Clusters | 0 of 3 Clusters |
| G. Yarbrough  RR Runoff 2016 | +21.8% | 5 of 5 Clusters | 0 of 5 Clusters |
| M. Cooper Lt Gov Prim 2018 | +38.6% | 5 of 5 Clusters | 0 of 5 Clusters |
| R. West U.S. Sen Prim 2020 | +32.7% | 1 of 1 Clusters | 0 of 1 Clusters |
| R. West 2020 U.S. Senate Runoff 2020 | +47.2% | 5 of 5 Clusters | 0 of 5 Clusters |
|  |  |  |  |
| Average All Clusters | +28.0% |  |  |
| Sum Candidates Of Choice |  | 24 OF 24 Clusters 100% | 5 OF 24 Clusters 20.8% |
| Sum Candidates Of Choice Without Brown |  | 19 of 19 Clusters 100% | 0  of 19 Clusters 0% |

27

**CHART R6**
**BLACK CANDIDATES, CHOICE OF BLACK VS. ANGLO VOTERS, FROM SUMMARY TABLE R8**



**TABLE R9**
**HISPANIC CANDIDATES, DEMOCRATIC PRIMARIES WITH ANGLO
CANDIDATES, STUDIED IN ALFORD REPORT, HISPANIC & ANGLO VOTER
SUPPORT**

| ELECTION | CANDIDATE | % HISPANIC | % ANGLO | POLARIZATION |
|---|---|---|---|---|
| **TARRANT/DALLAS COUNTY CLUSTER** | | | | |
| ELECTION | CANDIDATE | % HISPANIC | % ANGLO | POLARIZATION |
| Gov Prim 2014 | R. Madrigal | 26.8% | 3.3% | +23.5% |
| Gov Runoff 2018 | L. Valdez | 73.7% | 47.9% | +25.8% |
| Land Comm Prim 2018 | M. Suazo | 77.1% | 67.1% | +10.0% |
| R.R. Runoff 2020 | R. Alonzo | 50.8% | 18.0% | +32.8% |
| **HARRIS/FT. BEND COUNTY CLUSTER** | | | | |
| ELECTION | CANDIDATE | % HISPANIC | % ANGLO | POLARIZATION |
| Gov Prim 2014 | R. Madrigal | 25.2% | 4.7% | +20.5% |
| Gov Runoff 2018 | L. Valdez | 54.1% | 22.8% | +31.3% |
| Land Comm Prim 2018 | M. Suazo | 78.3% | 65.8% | +12.5% |
| R.R. Runoff 2020 | R. Alonzo | 49.3% | 16.5% | +32.8% |
| **DENTON/WISE COUNTY CLUSTER** | | | | |
| ELECTION | CANDIDATE | % HISPANIC | % ANGLO | POLARIZATION |
| Gov Prim 2014 | R. Madrigal | 46.5% | 6.2% | +40.3% |
| Gov Runoff 2018 | L. Valdez | 79.8% | 41.3% | +38.5% |
| Land Comm Prim 2018 | M. Suazo | 82.4% | 60.2% | +22.2% |
| R.R. Runoff 2020 | R. Alonzo | 55.1% | 21.6% | +33.5% |
| **LUBBOCK COUNTY CLUSTER** | | | | |
| ELECTION | CANDIDATE | % HISPANIC | % ANGLO | POLARIZATION |
| Gov Prim 2014 | R. Madrigal | 36.7% | 8.8% | +27.9% |
| Gov Runoff 2018 | L. Valdez | 72.9% | 49.3% | +23.6% |
| Land Comm Prim 2018 | M. Suazo | 82.4% | 60.2% | +22.2% |
| R.R. Runoff 2020 | R. Alonzo | 53.3% | 20.5% | +32.8% |
| **BRAZORIA COUNTY CLUSTER** | | | | |
| ELECTION | CANDIDATE | % HISPANIC | % ANGLO | POLARIZATION |
| Gov Prim 2014 | R. Madrigal | 21.0% | 4.7% | +16.3% |
| Gov Runoff 2018 | L. Valdez | 59.7% | 42.7% | +17.0% |
| Land Comm Prim 2018 | M. Suazo | 73.9% | 60.7% | +13.2% |
| R.R. Runoff 2020 | R. Alonzo | 50.8% | 21.1% | +29.7% |
| | | | | |
| **Source: Tables 5, 6, 8, 10, 11, 12, Alford Report, pp. 15-21.** | | | | |

**SUMMARY TABLE R10**
**FIVE CLUSTER DEMOCRATIC PRIMARY, RESULTS FROM TABLE R9**

| HISPANIC CANDIDATE | AVERAGE POLARIZATION | MAJORITY CANDIDATE OF CHOICE, HISPANIC VOTERS | MAJORITY CANDIDATE OF CHOICE, ANGLO VOTERS |
|---|---|---|---|
| R. Madrigal Gov Prim 2014 | +25.7% | 0 of 5 Clusters | 0 of 5 Clusters |
| L. Valdez Gov Runoff 2018 | +27.2% | 5 of 5 Clusters | 0 of 5 Clusters |
| M. Suazo Land Comm Prim 2018 | +16.0% | 5 of 5 Clusters | 5 of 5 Clusters |
| R. Alonzo RR Runoff 2020 | +32.3% | 4 of 5 Clusters | |
| | | | |
| Average All Clusters | +25.3% | | |
| Sum Candidates Of Choice | | 14 OF 20 Clusters 70% | 5 OF 20 Clusters 25% |
| | | | |
| Sum Candidates Of Choice Without Madrigal | | 14 of 15 Clusters 93% | 5 of 15 Clusters 33% |
| | | | |
| Sum Candidates Of Choice Without Madrigal and Suazo | | 9 of 10 Clusters 90% | 0 of 10 Clusters 0% |

**CHART R7**
**HISPANIC CANDIDATES, CHOICE OF HISPANIC VS. ANGLO VOTERS, FROM SUMMARY TABLE R10**

