**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | |
|---|---|
| LULAC, *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> GREG ABBOTT, in his official capacity as Governor of Texas, *et al.*, <br><br> *Defendants.* | Case No.: 3:21-CV-00259-DCG-JES-JVB <br> [Lead Case] |
| ROY CHARLES BROOKS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> GREG ABBOTT, in his official capacity as Governor of Texas, *et al.*, <br><br> *Defendants.* | Case No.1-21-CV-00991-DCG-JES-JVB <br> [Consolidated Case] |

***BROOKS* PLAINTIFFS' RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY**

Defendants move to exclude the March 31, 2025, expert report of Dr. Tye Rush and have "conditionally" moved to exclude Dr. Matt Barreto's March 2025 declaration. ECF 920 at 13, 20. Defendants also appear to suggest that Dr. Rush be precluded from testifying at trial. *See* ECF 920 at 15. Brooks Plaintiffs[1] respectfully request that the Court deny the motion, admit the expert

---

[1] This response is joined by Plaintiff MALC and LULAC Plaintiffs who intend to rely on the testimony of Drs. Barreto and Rush, in whole or in part.

1

reports, and allow Dr. Rush to testify at trial. Defendants' motion is particularly ill conceived in light of their own proffered expert, Dr. Alford, who during this litigation has testified that at least part of his analysis was conducted by the Texas Attorney General's Office based upon data gathered by defense counsel and whose expert report discloses much less than that of Dr. Rush.

## LEGAL STANDARD

A qualified expert may offer opinion testimony where doing so "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Expert testimony, like other evidence, is relevant where it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 587 (1993) (citing Fed. R. Civ. P. 401). This standard is "a liberal one." *Id*. All that is required is "a valid scientific connection to the pertinent inquiry." *Id.*

An expert report must contain "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; and (iii) any exhibits that will be used to summarize or support them" along with the witnesses qualifications and a list of publications and previous cases in which the expert testified. Fed. R. Civ. P. 26(a)(2)(B). An expert's report meets the requirements of Rule 26(a)(2)(B) when it is "sufficiently thorough 1) to indicate the boundaries of his direct examination and 2) to put the [opposing party] on notice of" the expert's ultimate conclusions. *Gay v. Stonebridge Life Ins. Co.*, 660 F.3d 58, 63 (2011); *see also Lohnes v. Level 3 Communications*, 272 F.3d 49, 59 (expert report must contain "the expert's qualifications, the gist of his opinion, and the sources of information underlying that opinion."). Moreover, so long as an opposing party has sufficient information and opportunity to "formulate a response," there is no prejudice to

allowing expert testimony in. *Jackson v. U.S.*, 708 F.3d 23, 31 (1st Cir. 2013) (finding district court did not abuse discretion in allowing expert to testify about opinions not contained in report, where opposing party was allowed opportunity to respond).

## ARGUMENT

**I.    All Plaintiffs who timely designated Dr. Rush, whether as a retained on non-retained expert, are entitled to rely on his opinions.**

Defendants ask this Court to exclude Dr. Rush's opinions with respect to CD 15, SD 27, and HD 37 as irrelevant because he was designated as a retained expert only by the Brooks Plaintiffs and the Brooks Plaintiffs do not have claims related to those districts. As an initial matter, Defendants are wrong as a matter of fact. Dr. Rush was disclosed as a retained expert by both the Brooks Plaintiffs and the MALC Plaintiffs. *See* Ex. 1 (Brooks Pls' 2d. Am. Expert Designation); Ex. 2 (MALC Pls' Suppl. Expert Designation). As such, his report is offered on behalf of both Plaintiff groups in support of their respective claims. Moreover, Dr. Rush was designated as a non-retained expert for other Plaintiffs. *See, e.g.*, Ex. 3 (LULAC Pls' Am. Expert Designation); ("LULAC Plaintiffs hereby designate and state that they intend to call for the purpose of fact and/or opinion testimony those persons listed in the witness disclosures of each party. LULAC Plaintiffs specifically give notice that they intend to rely on the expert testimony of other Plaintiffs groups and may independently call the experts designated by the other Plaintiffs . . . The designation of experts, reports and expert disclosures served by other Plaintiffs are incorporated herein for all purposes). Nothing precludes any Plaintiff who timely and properly designated Dr. Rush, either as a retained or non-retained expert, from relying on his testimony.

The standard for relevance of expert testimony, like the standard for relevance generally, is "a liberal one." *Daubert*, 509 U.S. at 587. There is no dispute that Dr. Rush's testimony and opinions will assist the Court to understand and resolve factual issues presented in this

consolidated action, regardless of which Plaintiff groups retained him. *Cf.* Fed. R. Evid. 702. Defendants' attempt to exclude relevant opinion testimony based on which parties disclosed Dr. Rush as a *retained* expert has no basis in the law or the rules and ignores the practical realities of this consolidated action. As Defendants are well aware, in an attempt to streamline the evidence, conserve party and judicial resources, and reduce redundancies, several Plaintiff groups in this consolidated case cross-designated other parties' experts and expect to rely on testimony and evidence of those experts, where relevant, in support of their claims.

Indeed, Dr. Rush's inclusion of his opinions and supporting facts and data related *exceed* what the Federal Rules require for non-retained experts. Under Federal Rule 26(a)(2)(B), only experts "retained . . . to provide expert testimony in the case" must issue a report disclosing the opinions about which they intend to testify at trial. Fed. R. Civ. P. 26(a)(2)(B). The LULAC Plaintiffs could have disclosed Dr. Rush as a non-retained witness to testify at trial without his report including *any* of the opinions he disclosed regarding the districts referenced above. So Defendants complain that they were given *more* information than the Federal Rules require.

Notably, Defendants have been on notice for weeks that several Plaintiffs have cross-designated other parties' experts. They raised no objection to any cross-designation, including in their motion to exclude. Nor could they—nothing precludes Plaintiffs from relying on the testimony and opinions of timely disclosed non-retained experts, and Defendants cannot reasonably claim that they lacked notice of Plaintiffs' intent to do so, nor of the topics upon which these experts would testify. *Cf.* Fed. R. Civ. P. 26(a)(2)(C). Dr. Rush's opinions are sufficiently summarized in his expert report and Defendants have already deposed him and will have the opportunity to cross-examine Dr. Rush at trial regarding the same.

The Court should deny Defendants' motion to exclude Dr. Rush's report, testimony, and opinions based on his retained vs. non-retained status. That said, in light of the fact that no Plaintiff has claims with respect to CD 15, SD 17, or HD 37, Plaintiffs are not aware of any party that intends to offer opinions from Dr. Rush with respect to those districts. The Court should therefore deny Defendants' motion as moot with respect to CD 15, SD, 17, and HD 37.

## II. Dr. Rush's opinions with respect to the in/out and SSVR and SSVRTO analyses for HD 118 are admissible.

Defendants ask this Court to exclude Dr. Rush's opinions with respect to changes made to HD 118 on the grounds that his analysis relies on inadmissible hearsay, namely the May 20, 2022 expert report of Dr. Henry Flores. Among other things, that report illustrated—based upon easily verifiable data—that Latino voters were shifted out of the relevant districts and Anglo voters were shifted in. Defendants do not offer a single legal citation in support of their argument, which is unsurprising since it is black letter law that experts may offer opinions based on facts and data they have been made aware of, even if otherwise inadmissible, so long as "experts in the field would reasonably rely on those kinds of facts or data." Fed. R. Civ. P. 703.

Dr. Rush independently reviewed the data and methodology used by Dr. Flores in his May 20 report, which "is commonly used by experts evaluating changes made between districting plans, and has widespread acceptance within the political science community." Ex. 4 (Rush Report at 5). He confirmed that the methodology is sound, reviewed the data presented in Dr. Flores's report, and offered his own independent opinions with respect to what the data shows, which confirmed the opinions stated in Dr. Flores's report. *Id.* Moreover, Dr. Rush provided the data he relied on to Defendants, who had the opportunity to depose him with respect to the data and the opinions summarized in his report, and who will have the opportunity to cross examine him regarding any such opinions at trial. If the state can credibly argue something is wrong in the analysis, they have

5

not done so despite having access to their experts. Notably, Defendants do not dispute the scientific validity, nor the reliability of the methodology, Dr. Rush's analysis, or the data upon which he relied. *See Daubert*, 509 U.S. at 594-95 ("the inquiry envisioned by Rule 702 . . . is a flexible one. Its overarching subject is the scientific validity—and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission."). Nor do they claim that allowing Dr. Rush to testify regarding these data would prejudice them in any way, much less in such a way that would outweigh the probative value of Dr. Rush's testimony. *See* Fed. R. Evid. 403; Fed. R. Evid.703. As such, there is no basis for the Court to exclude this portion of Dr. Rush's report and testimony, particularly in light of the fact that this is a bench trial. *Cf.* Fed. Rule Civ. P. 703 (recognizing limited restriction on presentation of inadmissible facts and data underlying an expert opinion to a jury).

Defendants attempt to exclude Dr. Rush's report and testimony on these grounds is particularly puzzling, given their own expert's (Dr. Alford's) admission in 2022 that he based his opinions on data and analyses compiled and conducted solely by the Texas Attorney General's office, that he did not know who the individual was in the office that conducted the analysis, and that he did not conduct any independent analysis or verification of that data before forming his opinions. *See* Jan. 27, 2022 Prelim. Inj. Hr'g Tr. at Vol. 7, 79-83. Similarly, during both the 2022 PI hearing and during his recent deposition, Dr. Alford testified that he has a colleague, Dr. Randy Stevenson, collect data and conduct his EI analysis for him. *See id*. The state has yet to disclose any material information (such as the data utilized and methodology) about this shadow analysis prepared by counsel.

### III. Dr. Rush's report and testimony sufficiently put Defendants on notice of the topics of his expert testimony and the opinions he will offer at trial.

Next, Defendants assert that Dr. Rush's report fails to comply with Fed. R. Civ. P. 26(a)(2)(B). ECF 920 at 15. Once again, Defendants offer no legal support for this claim other than their citation to the rule itself. The Court should deny the motion.

The purpose of an expert report is to preview the direct examination of the expert, minimize the expense of deposing the expert, and prevent trial by ambush. *See Doe by and through Pike v. Pike*, 405 F.Supp.3d 243, 248 (D. Mass 2019). A report satisfies these requirements where it puts the opposing party on notice of the topics of expert testimony and the "gist" of the opinions offered, and is accompanied by sufficient documentation of the sources relied on in forming the opinions. *Id.*; *see also Brenner v. Consol. Rail Corp.*, 806 F.Supp.2d 786, 791 (E.D. Penn. 2011) (finding two-and-a-half-page report containing recitation of relevant facts and summary of opinion stated with reasonable degree of certainty sufficient to comply with Rule 26); *Gay*, 660 F.3d at 64 (no abuse of discretion in allowing expert testimony where opposing party can reasonably anticipate testimony based on expert report); *Richman v Sheahan*, 415 F. Supp. 929, 939 (N.D. Ill. 2006) (finding expert reports sufficient where they provided statements of opinions, set forth the information considered, and indicated the experts' assessment of the evidence was based on their understanding of the facts and their experience and expertise). Dr. Rush's expert report indisputably complies with the facial requirements of Rule 26(a)(2)(B)—it contains a complete statement of the opinions he has formed and expects to testify to at trial, it explains the bases for his opinions including his reliance on geographical, demographic, compactness, and electoral data obtained directly from Defendants with respect to the various plans he analyzed, and was disclosed

alongside extensive documentation of the data Dr. Rush relied on, which was largely obtained from Defendants via the Texas Legislative Council. *See* Ex. 4 (Rush Report).[2]

Defendants' complaints regarding the adequacy of Dr. Rush's testimony center on his deposition testimony. But the alleged inadequacies complained of appear to largely be a result of Defendants' lack of preparation and organization in taking Dr. Rush's deposition, as well as their reluctance to examine Dr. Rush with respect to the data and methodologies he actually relied on.

First, Defendants complain that Dr. Rush was reluctant to answer questions without having access to his report and the data he relied on in producing his opinions. ECF 920 at 16. Defendants assert that "for obvious practical reasons, Dr. Rush did not take the time to consult these voluminous materials—which comprise thousands of pages of data—to answer question after question during the course of his deposition." *Id*. But the "obvious practical reason" that Dr. Rush did not do this is because Defendants never bothered to pull up the appendices to Dr. Rush's report, which contained the data, facts or evidence Dr. Rush relied on, nor did they ask him a single question about the data, facts, or evidence contained in the appendices. Instead, the deposing attorney repeatedly attempted to quiz Dr. Rush on the underlying data without allowing him access to it.[3] *See, e.g.*, ECF 920-1 at 176, Rush Dep. 107:6-109:6.

At bottom, Defendants appear to object to Dr. Rush's desire to present clear, accurate, and truthful testimony to the Court. *See, e.g.*, ECF 920-1 at 176-78, Rush Dep. 108:19-109:2 (Q: And

---

[2] Defendants claim that Dr. Rush's report consists of 12 pages, inclusive of appendices. While the report itself is 12 pages, containing a complete summary of Dr. Rush's opinions and the bases therefore, those 12 pages are exclusive of the appendices which were produced concurrently. For example, Dr. Rush's CV, which is four pages long, was included as Appendix A. *See id*. at 1 ¶ 6. Similarly, for each Plan referenced in Dr. Rush's report, he provided an Appendix labeled with the Plan number, and each Plan Appendix contained multiple data files containing hundreds of pages of data and information.

[3] This tactic was particularly egregious when defense counsel sought to quiz Dr. Rush about districts he did not analyze in his report. For example, at one point defense counsel asked Dr. Rush

8

without it, you can't answer? A: I can answer. But I – I'm under oath right now. And this is for the record, and so I just want to provide the court with the most accurate information."); *id.* at 173, Rush Dep. at 104:9-13 ("My conclusions are in my report and the information need is in that appendix. So off the top of my head, you're asking me to recall things without giving me access to those, and I just want to get the record right for the court."). His circumspection was particularly warranted given that Defendants repeatedly mixed up exhibits and plans during the course of the deposition. *See, e.g.*, ECF 920-1 at 174-175, Rush Dep. 104:18-106:12 (introducing enacted congressional plan C2193 but stating that it was proposed congressional plan C2163); ECF 920 at 98-99, Rush Dep. at 29:15-30:23 (providing Dr. Rush with a different copy of his CV than the one defense counsel was looking at and proceeding to ask questions rather than resolving the discrepancy); *see also* ECF 920-1 at 107, Rush Dep. at 38:19-24 (same issue), ECF 920-1 at 108-

---

to opine on whether the Texas Legislature created Latino opportunity districts in enacted CDs 35 and 37, which Dr. Rush did not analyze in his report:

Q: And do you know whether or not the Texas Legislature in fact accomplished that in CD35 and 37 as enacted, namely creating a Latino opportunity district where none existed in a way that complies with traditional redistricting principles?

A. My conclusions are in my report and the information needed is in that appendix. So off the top of my head, you're asking me to recall things without giving me access to those, and I just want to get the record right for the court.

Q. Okay. And you -- you don't know the answer without going back and looking at other things?

A. I don't know how to testify under oath to the veracity of something without being able to verify it.

ECF 920-1 at 173, Rush Dep. 104:4-17.

09, Rush Dep. 39:7-40:5 (Brooks' counsel clarifying the exhibits for the record); ECF 920-1 at 120-121, Rush Dep. 51:2-52:13 (same issue).

Instead of reviewing the actual data and appendices to Dr. Rush's report, Defendants spent a substantial amount of time presenting Dr. Rush with various news articles, Wikipedia summaries, and other non-official reports of election outcomes, quizzing him on which candidates won election to office, and asked him to opine on the ethnic and racial identities of those candidates. *See* ECF 920-1 at 191-197, 203-208, 213-217, 220-223, Rush Dep. 122:21-128:7, 134:19-139:8, 144:21-148:10, 151:21-154:1. Moreover, Defendants ended the deposition after just four hours and forty-five minutes of on-record time. At the end of the deposition, they preserved an objection to potential testimony regarding undisclosed opinions, but did not make any objection to the sufficiency of Dr. Rush's deposition testimony, did not request to hold the deposition open, and did not request any supplementation with respect to his report or the data he relied on. Had Defendants had serious concerns about the sufficiency of Dr. Rush's report and the support for his conclusions, they had ample opportunity to dive into the data and appendices and ask Dr. Rush specific questions related to his methodology and the bases for his opinions. They declined to do so. Defendants cannot now complain to this Court that they were unable to obtain testimony they did not seriously try to elicit.

As a general rule, expert testimony should not be excluded where the importance of the testimony outweighs any potential prejudice in allowing the testimony, and alternative means exist to cure the prejudice. *See Daubert.* at 596 (finding that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking" expert testimony"); *see also Gay*, 660 F.3d at 62 (finding that district courts have broad discretion to remedy a failure to adequately disclose expert testimony);

*cf. Certain Underwriters at Lloyd's, London v. Axon Pressure Products Inc.*, 951 F.3d 248, 270 (5th Cir. 2020) (finding abuse of discretion where court excluded untimely expert reports without balancing importance of evidence against prejudice to opposing party and considering alternative remedy). Here, Dr. Rush's testimony is important and will assist the court in resolving the factual issues in the case. His report was timely disclosed, complies with the requirements of Rule 26(a)(2)(B), and provides Defendants with ample notice of the topics and opinions he will testify to at trial. Any deficiency can be cured through alternative means, including a well-prepared cross-examination and/or opposing expert testimony.

Defendants' criticism of Dr. Rush's report for its length—11 pages—is peculiar given that Defendants' expert, Dr. Alford, disclosed a 10-page expert report the same day. *See* ECF 935-2 (3/31/25 Alford Report). That report consists mostly of italicized block quotes from the New York Times, Politico, and an online blog entry. By contrast, Dr. Rush efficiently disclosed the gist of his opinions and cited (and produced) the data upon which those opinions rely – most of which came from TLC.

The Court should reject Defendants' motion to exclude the testimony and opinions offered by Dr. Rush.

**IV.   The Court should deny Defendants' "conditional" motion to exclude Dr. Barreto's report.**

Finally, Defendants contend that "there is ample basis to question whether and to what extent Dr. Barreto is actually the sole author of his expert reports in this case." ECF 920 at 16. This is so, Defendants contend, because he and Dr. Rush have a long professional relationship. On this basis alone, Defendants contend that Dr. Rush may have authored part of Dr. Barreto's report. *Or,* they say, Dr. Barreto may have "contributed to or influenced the proffered expert report of Dr.

11

Tye Rush in this case." ECF 920 at 18.[4] Defendants ask the Court not to review either expert report until after Dr. Barreto's May 1, 2025 deposition, after which they promised to "promptly" supplement their April 30 motion.

The May 1 deposition of Dr. Barreto has come and gone with no "prompt" supplementation as Defendants promised. Indeed, today is the Court's deadline for Plaintiffs to respond to Defendants' motion and the section related to Dr. Barreto remains "conditional," with no elucidation, facts, or evidence in support. Plaintiffs cannot fairly respond to a "conditional" motion to exclude an expert report based exclusively on innuendo and Defendants' imagination.

In reality, the May 1 deposition of Dr. Barreto left Defendants empty handed. They should have immediately withdrawn their innuendo-laden "conditional" motion to exclude Dr. Barreto's report. Instead, they have allowed Plaintiffs' response deadline to arrive without the promised supplementation. Defendants' innuendo is particularly difficult to take seriously considering that the Texas Attorney General's Office has, for the past several redistricting cases, conducted data analysis for their proffered expert Dr. Alford. *See supra*. If that did not seem problematic to Defendants, then it is hard to understand how the fact that Plaintiffs' experts know each other warrants their exclusion from this case. Even had they worked together on their reports, which sworn testimony belies, the State fails to explain why this would make the opinions inadmissible.

---

[4] This assertion (added by Defendants as an aside in the section of their motion devoted to Dr. Barreto's report) is belied by Dr. Rush's deposition testimony, in which he testified that he had only discussed trial logistics with Dr. Barreto (and only subsequent to the submission of his expert report) and that his research assistant and counsel were the only people who contributed or provided feedback on his expert report. ECF 920-1 at 84-86.

Likewise, Dr. Barreto testified at his deposition that he was the primary author of his report and worked with co-author Mr. Michael Rios, MPP. Plaintiffs had no reason to order a rush transcript of Dr. Barreto's report and do not yet have the transcript.

At bottom, Defendants' objections rest on unremarkable allegations that Dr. Barreto and Dr. Rush viewed each other's reports in the course of preparing their testimony in this case, that they both analyzed, reviewed, and critiqued the same plans in their reports,[5] and that they have a longstanding professional relationship in which they have occasionally co-authored works in the past. This is wholly insufficient to warrant excluding reports and testimony. If Defendants think there is something untoward about experts knowing each other and working together in the past, they can use their cross-examination time to explore that topic.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court deny Defendants' motion to exclude with respect to Dr. Rush and Dr. Barreto.

Dated: May 6, 2025

Respectfully submitted,

*/s/ Chad W. Dunn*
Chad W. Dunn (Tex. Bar No. 24036507)
Brazil & Dunn
1900 Pearl Street
Austin, TX 78705
(512) 717-9822
chad@brazilanddunn.com

Mark P. Gaber*
Mark P. Gaber PLLC
P.O. Box 34481
Washington, DC 20043
(715) 482-4066
mark@markgaber.com

---

[5] Defendants assert that Dr. Rush "admitted it was 'possible' that he had done a review, critique, or analysis of Dr. Barreto's report or maps or plans in that report." ECF 920 at 19 (emphasis added). But this is entirely unremarkable, as both Dr. Rush and Dr. Barreto both reviewed certain maps or plans in their respective reports, *e.g.*, the maps and plans at issue in this case. This "admission" does not suggest, as Defendants imply, that Dr. Rush reviewed, critiqued, or analyzed Dr. Barreto's report or vice versa, but only that they reviewed, critiqued, or analyzed the same plans. *See, e.g.*, ECF 920-1 at 225-26, Rush Dep. 156:10-157:6; *see also id.* at 225, Rush. Dep.156:18-20 ("Objection that it's vague to the extent there is overlap between the plans discussed by Dr. Rush's report and Dr. Barreto's); *id.* at 226, Rush Dep. 157:3 ("same objection").

> Jesse Gaines* (Tex. Bar. No. 07570800)
> 6015 Meadowbrook Drive
> Fort Worth, Texas 76112
> (817) 654-1161
> gainesjesse@ymail.com
>
> Molly E. Danahy*
> P.O. Box 51
> Helena, MT 59624
> (406) 616-3058
> danahy.molly@gmail.com
>
> Sonni Waknin*
> 6417 N. Figueroa Street, #10
> Los Angeles, California 90042
> 732-610-1283
> sonniwaknin@gmail.com
>
> *Admitted pro hac vice*
>
> Counsel for *Brooks* Plaintiffs

## CERTIFICATE OF SERVICE

I certify that on May 6, 2025, the foregoing was served on all counsel of record via the Court's CM/ECF system.

> */s/ Chad W. Dunn*
> Chad W. Dunn