UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, <br><br> *Plaintiffs*, <br><br> EDDIE BERNICE JOHNSON, SHEILA JACKSON-LEE, ALEXANDER GREEN, AND JASMINE CROCKETT, <br><br> *Plaintiff-Intervenors*, <br><br> v. <br><br> GREG ABBOTT, *et al.*, <br><br> *Defendants*. | Case No. 3:21-cv-00259 <br> [Lead Case] |

**DEFENDANTS' FIRST AMENDED ANSWER TO PLAINTIFF-INTERVENORS'
SECOND AMENDED COMPLAINT**

Defendants, the State of Texas, Jane Nelson, in her official capacity as Secretary of State, and Dave Nelson, in his official capacity as Deputy Secretary of State, ("Defendants") respectfully file this First Amended Answer to the Second Amended Complaint, *LULAC v. Abbott*, No. 3:21-cv-259, ECF 619 (W.D. Tex. Oct. 19, 2022), filed by Eddie Bernice Johnson, Sheila Jackson Lee, Alexander Green, and Jasmine Crockett (the "Plaintiff-Intervenors").

**ANSWER**

Pursuant to Federal Rule of Civil Procedure 8(b), Defendants deny each and every allegation in Plaintiff-Intervenors' Second Amended Complaint except for those expressly admitted here. The headings and paragraphs below directly correlate to the sections and numbered paragraphs of Plaintiff-Intervenors' Second Amended Complaint. Titles that are reproduced in

1

this original answer are included for organizational purposes only, and Defendants do not admit any matter contained in reproduced titles.

## BACKGROUND

1. Defendants admit that Plaintiff-Intervenors seek declaratory and injunctive relief; invoke the Fourteenth and Fifteenth Amendments to the Constitution as bases for their claims, seek relief under the Voting Rights Act, and challenge Plan C2193, which is the redistricting plan that has been enacted for Texas's congressional districts. Defendants admit that Plaintiff-Intervenors Crockett and Green are current members of Congress. Defendants deny that Plaintiff-Intervenors are entitled to relief on any of their claims. Defendants lack knowledge or information sufficient to form a belief about Representative Crockett's residence or Plaintiff-Intervenors' voting histories or intentions and therefore deny those allegations. Defendants deny the remaining allegations in this paragraph.

2. Denied.

3. Defendants admit that CD9's enacted configuration includes areas in Fort Bend, Brazoria, and Harris Counties (including portions of benchmark CD18 and CD29) that were not part of CD18's benchmark configuration and that portions of benchmark CD18 in Fort Bend County are now part of Congressional District 22. Defendants deny all other remaining allegations in this paragraph.

4. Defendants admit that some areas that were previously located within the 30th Congressional District are now located within Congressional District 6 under Plan C2193. Defendants deny the remaining allegations in this paragraph.

5. Denied.

6. Defendants admit that Plaintiff-Intervenors seek a court-imposed redistricting plan, but Defendants deny that they are entitled to such relief. They deny the remaining allegations in this paragraph.

## I. Jurisdiction

7. Denied.

8. Admit.

9. Defendants admit that Plaintiff-Intervenors seek declaratory and injunctive relief. Defendants deny that Plaintiff-Intervenors are entitled to any such relief.

## II. Parties

10. Defendants admit that some voters in Congressional District 30 are black, Latino, or both. Because Representative Johnson is deceased, Defendants deny allegations regarding Representative Johnson's residence or status as a registered voter. Defendants lack knowledge or information sufficient to form a belief about the allegations regarding Representative Johnson's performance in office and therefore deny those allegations.

11. Defendants admit that some voters in Congressional District 18 are black, Latino, or both. Because Representative Jackson Lee is deceased, Defendants deny allegations relating to Representative Jackson Lee's residence or status as a registered voter. Defendants lack knowledge or information sufficient to form a belief about the allegations regarding Representative Jackson Lee's performance in office, ability as a representative, and pursuit of particular policies and therefore deny those allegations.

12. Defendants admit that some voters in Congressional District 9 are black, Latino, Asian-American, or a combination thereof. Defendants lack knowledge or information sufficient to form a belief as to Representative Green's residence or status as a registered voter and therefore deny those allegations. Defendants lack knowledge or information sufficient to form a belief about the allegation regarding Representative Green's judiciousness and therefore deny that allegation. Defendants lack knowledge or information sufficient to form a belief about the extent to which Representative Green's former positions contribute to his ability to represent Congressional District 9 and therefore deny that allegation. However, Defendants admit that Green previously served as an elected justice of the peace in Harris County and as president of the NAACP's Houston branch.

13. Defendants admit that Representative Crockett served in the Texas House of Representatives and that she introduced Plans C2139 and C2177, which, had they passed, would have resulted in a Congressional District 30 that differs from its present shape. Given Plaintiff-Intervenors' failure to specify the source of the demographic data on which they rely with regard to CD30, Defendants lack knowledge or information sufficient to form a belief about the truth of Plaintiff-Intervenors' contention that the changes advanced by Representative Crockett "would have permitted [CD30] to continue as a 50 percent African-American Citizen Voting Age population district" and therefore deny this allegation. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore deny them.

14. Denied.

15. Admit.

16. Admit.

### III. Facts

17. Denied.

18. This paragraph contains Plaintiff-Intervenors' characterizations of Section 2 of the Voting Rights Act as codified at 52 U.S.C. § 10301. Defendants admit that 52 U.S.C. § 10301 states the following:

> (a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 10303(f)(2) of this title, as provided in subsection (b).
>
> (b) A violation of subsection (a) is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance

>which may be considered: *Provided*, That nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population.

Defendants deny the remaining allegations in this paragraph.

19. Defendants admit that Texas's congressional apportionment increased from 32 to 36 seats following the 2010 census and from 36 to 38 seats following the 2020 census. Defendants deny the remaining allegations in this paragraph.

20. Denied.

### 9th and 18th Congressional Districts

21. Defendants admit that the lieutenant governor is the presiding officer in the Texas Senate. Defendants deny the remaining allegations in this paragraph.

22. Defendants deny the allegation that Exhibit B constitutes a representation from Representative Todd Hunter that the congressional district map proposed by the Texas Senate would not be "a basis for creating the Congressional Plan to be voted on by the House;" as Exhibit B contains no such explicit statement and no statement from which a reasonable person could infer such a representation. Defendants admit that Representative Senfronia Thompson introduced an amendment (Amendment No. 18) to amend her own amendment (Amendment No. 17) as a means of altering Districts 7, 9, 18, and 29 and that Amendment No. 18 was adopted thereafter. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph and therefore deny them.

23. Defendants admit that the boundaries of Congressional Districts 7 and 18 were adjusted during the redistricting process. Defendants deny the remaining allegations in this paragraph.

### 30th Congressional District

24. Defendants admit that Plaintiff-Intervenor Crockett unsuccessfully submitted an amendment, Plan C2139, to the proposed congressional plan. Defendants deny the remaining allegations in this paragraph.

25. Defendants admit that Plan C2193 created one new district in the Houston area and no new

districts in the Dallas-Fort Worth area. Defendants deny the remaining allegations in this paragraph.

### Retrogression

26. Denied.

27. Denied.

28. Denied.

### Vote Dilution

29. This paragraph contains Plaintiff-Intervenors' characterizations of a statement made by George Korbel. Defendants deny that Mr. Korbel's statement supports the allegations made in Plaintiff-Intervenors' Second Amended Complaint. Defendants deny the remaining allegations in this paragraph.

30. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation that Representative Jackson Lee "recently prevailed in Latino precincts when opposed by opponents with Spanish surnames" and therefore deny this allegation. Defendants deny the remaining allegations in this paragraph.

31. Denied.

### Other Factors

32. Denied.

33. Denied.

34. Denied.

35. Denied.

36. Denied.

37. Defendants do not have knowledge or information sufficient to form a belief as to what other congressional representatives said to Representative Jackson Lee and therefore deny that allegation. Defendants deny the remaining allegations in this paragraph.

38. Defendants admit that a conference committee reconciled differences in the congressional

plans passed by the Texas House and by the Texas Senate and that the conference committee's plan was passed by the Legislature and signed by the Governor. Defendants deny the remaining allegations in this paragraph.

39. Denied.

40. Denied.

41. Denied.

42. Denied.

43. Admit.

44. This paragraph contains Plaintiffs' characterizations of the *Texas v. United States* court decision, which states the following:

> The parties have provided more evidence of discriminatory intent than we have space, or need, to address here. Our silence on other arguments the parties raised, such as potential discriminatory intent in the selective drawing of CD 23 and failure to include a Hispanic ability district in the Dallas–Fort Worth metroplex, reflects only this, and not our views on the merits of these additional claims.

887 F. Supp. 2d 133, 162 n.32 (D.D.C. 2012). Defendants deny Plaintiffs-Intervenors' characterizations of that decision. Defendants admit that Section 5 of the Voting Rights Act does not apply to Texas. Defendants deny the remaining allegations in this paragraph.

45. Denied.

46. Denied.

47. Denied.

48. Denied.

49. Denied.

50. Denied.

51. Denied.

52. This paragraph contains Plaintiff-Intervenors' characterizations of this Court's Memorandum Opinion and Order Granting in Part and Denying in Part Defendants' Motion to

Dismiss Intervenors' First Amended Complaint at ECF 592. Defendants deny Plaintiff-Intervenors' characterizations of this Court's order and deny all remaining allegations in this paragraph.

53. Defendants admit that Dr. Richard Murray provided a report featuring analysis of CD9 and CD18. Defendants deny that Dr. Murray's analysis supports the allegations made in Plaintiff-Intervenors' Second Amended Complaint and deny all remaining allegations in this paragraph.

### Discriminatory Effect of the New CD 18

54. This paragraph contains Plaintiff-Intervenors' characterizations of Richard Murray's Amended Expert Report. Defendants deny that Dr. Murray's analysis supports the allegations made in Plaintiff-Intervenors' Second Amended Complaint and deny all remaining allegations in this paragraph.

55. This paragraph contains Plaintiff-Intervenors' characterizations of Howard Henderson's supplemental report on Texas congressional districts. Defendants deny that Dr. Henderson's analysis supports the allegations made in Plaintiff-Intervenors' Second Amended Complaint and deny all remaining allegations in this paragraph.

### Discriminatory Effect of the New CD 9

56. This paragraph contains Plaintiff-Intervenors' characterizations of Richard Murray's Amended Expert Report. Defendants deny that Dr. Murray's analysis supports the allegations made in Plaintiff-Intervenors' Second Amended Complaint and deny all remaining allegations in this paragraph.

### Racial Gerrymandering

57. Defendants lack knowledge or information sufficient to form a belief about whether Plaintiff-Intervenors have endeavored to satisfy this Court and therefore deny that allegation. The remainder of this paragraph contains Plaintiff-Intervenors' characterizations of this Court's Memorandum Opinion and Order Granting in Part and Denying in Part Defendants' Motion to Dismiss Intervenors' First Amended Complaint at ECF 592. Defendants deny Plaintiff-

Intervenors' characterizations of this Court's order and deny all remaining allegations in this paragraph.

58. Defendants admit that Plaintiff-Intervenors included an Exhibit C in their First Amended Complaint as well as their Second Amended Complaint. Defendants admit that another map is embedded in this paragraph, although Defendants are unable to determine the source of this map or to verify its accuracy. Defendants deny that either Exhibit C or the map embedded in this paragraph support the allegations made in Plaintiff-Intervenors' Second Amended Complaint.

59. This paragraph does not contain any allegations requiring a response. To the extent a response is required, Defendants admit that a map is embedded in this paragraph but are unable to determine the source of this map or to verify its accuracy. Defendants deny that the map embedded in this paragraph supports the allegations made in Plaintiff-Intervenors' Second Amended Complaint.

60. This paragraph does not contain any allegations requiring a response. Defendants are unable to ascertain whether the embedded map purporting to be CD30 is part of Paragraph 60 or Paragraph 61. To the extent that the map is embedded in this paragraph and requires a response, Defendants are unable to determine the source or accuracy of this map, which features a copyright symbol and the year 2019 on the bottom left-hand portion. Defendants deny that the embedded map supports the allegations made in Plaintiff-Intervenors' Second Amended Complaint.

61. This paragraph does not contain any allegations requiring a response. Defendants are unable to ascertain whether the embedded map purporting to be CD30 is part of Paragraph 60 or Paragraph 61. To the extent that the map is embedded in this paragraph and requires a response, Defendants are unable to determine the source or accuracy of this map, which features a copyright symbol and the year 2019 on the bottom left-hand portion. Defendants deny that the embedded map supports the allegations made in Plaintiff-Intervenors' Second Amended Complaint.

62. Denied.

63. This paragraph contains Plaintiff-Intervenors' characterizations of a compactness analysis of Plan C2193 that was conducted by the Texas Legislative Council. Defendants admit that the

area Rubber Band scores in paragraph 63 match the scores contained in the complaint's Exhibit F, but Defendants deny Plaintiff-Intervenors' characterizations of that analysis. Defendants deny that the analysis supports the allegations made in Plaintiff-Intervenors' Second Amended Complaint and deny any remaining allegations in paragraph 63.

64. Denied.

65. Denied.

66. Denied.

67. Denied.

## CAUSES OF ACTION

### Count I

68. Defendants incorporate their answers to all preceding paragraphs as if fully set forth herein.

69. Denied.

### Count II

70. Defendants incorporate their answers to all preceding paragraphs as if fully set forth herein.

71. Denied.

### Count III

72. Defendants incorporate their answers to all preceding paragraphs as if fully set forth herein.

73. Denied.

### Count IV

74. Defendants incorporate their answers to all preceding paragraphs as if fully set forth herein.

75. Denied.

76. Denied.

77. Denied.

78. Denied.

79. Denied.

## BASIS FOR EQUITABLE RELIEF

80. Denied.

81. Denied.

## ATTORNEYS' FEES

82. Defendants deny that Plaintiff-Intervenors are entitled to any of the relief requested herein.

## PRAYER

A. Defendants deny that Plaintiff-Intervenors are entitled to any of the relief requested herein.

B. Defendants deny that Plaintiff-Intervenors are entitled to any of the relief requested herein.

C. Defendants deny that Plaintiff-Intervenors are entitled to any of the relief requested herein.

D. Defendants deny that Plaintiff-Intervenors are entitled to any of the relief requested herein.

E. Defendants deny that Plaintiff-Intervenors are entitled to any of the relief requested herein.

F. Defendants deny that Plaintiff-Intervenors are entitled to any of the relief requested herein.

G. Defendants deny that Plaintiff-Intervenors are entitled to any of the relief requested herein.

## DEFENDANTS' AFFIRMATIVE AND OTHER DEFENSES

Defendants assert the following affirmative and other defenses to which they are entitled:

1. Plaintiff-Intervenors have failed to state a claim upon which relief can be granted.

2. This Court lacks subject-matter jurisdiction to consider all claims asserted in Plaintiff-Intervenors' Second Amended Complaint.

3. Plaintiff-Intervenors lack standing to assert all claims asserted in their Second Amended Complaint.

4. Because two major election cycles have taken place since Texas's maps took effect, if Plaintiff-Intervenors are unable to identify a candidate of their choice who did not get elected, then they lack a cognizable injury in fact to support a vote dilution claim vis-à-vis associational standing.

5. Plaintiff-Intervenors lack a right to bring their claims under Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, or under any other right of action in law or equity.

6. Defendants assert all applicable immunities to Plaintiff-Intervenors' claims, including but

    not limited to their entitlement to Eleventh Amendment and sovereign immunity.

7. Defendants assert that imposing liability under § 2 of the Voting Rights Act is, in this case, unconstitutional because it is inconsistent with Equal Protection Clause of the 14th Amendment to the U.S. Constitution. *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 206 (2023)

8. Defendants assert that imposing liability under § 2 of the Voting Rights Act is, in this case, unconstitutional because it would exceed Congress's enforcement power under the Fourteenth and Fifteenth Amendments to the U.S. Constitution. Imposing liability here would not be congruent and proportional to the enforcement of the Fourteenth Amendment or Fifteenth Amendment.

9. Defendants assert that § 2 of the Voting Rights Act is, as currently interpreted, unconstitutional because it does not give fair notice of the conduct proscribed, resulting in improper judicial intrusions on a purely legislative process.

10. Defendants assert that imposing liability under § 2 of the Voting Rights Act is, in this case, unconstitutional because it would violate separation of powers by having the courts intrude on properly exercised legislative powers reserved to the states.

11. Pursuant to 42 U.S.C. § 1988(b) and 52 U.S.C. § 10310(e), Defendants will be entitled to recover their attorney's fees if they are the prevailing parties.

12. Defendants reserve the right to assert additional affirmative and other defenses as they may become apparent in the factual development of this case.

| | |
|---|---|
| Date: May 6, 2025 | Respectfully submitted, |
| KEN PAXTON<br>Attorney General of Texas | /s/ Ryan G. Kercher<br>RYAN G. KERCHER<br>Chief, Special Litigation Division<br>Texas Bar No. 24060998 |
| BRENT WEBSTER<br>First Assistant Attorney General | |
| RALPH MOLINA<br>Deputy First Assistant Attorney General | KATHLEEN T. HUNKER<br>Deputy Chief, Special Litigation Division<br>Texas Bar No. 24118415 |
| RYAN D. WALTERS<br>Deputy Attorney General for Legal Strategy | WILLIAM D. WASSDORF<br>Deputy Chief, General Litigation Division<br>Texas Bar No. 24103022 |
| OFFICE OF THE ATTORNEY GENERAL OF TEXAS | |
| Special Litigation Division<br>P.O. Box 12548 (MC-009)<br>Austin, Texas 78711-2548<br>Phone: (512) 936-1700<br>Fax: (512) 457-4410 | COUNSEL FOR STATE DEFENDANTS |

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on May 6, 2025, and that all counsel of record were served by CM/ECF.

/s/ Ryan Kercher
RYAN KERCHER

1