IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, <br> *Plaintiffs,* <br><br> v. <br><br> GREG ABBOTT, *et al.*, <br> *Defendants.* | EP-21-cv-00259-DCG-JES-JVB <br> [Lead Case] <br><br> & <br><br> All Consolidated Cases |

**STATE DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF DR. TYE RUSH**

Defendants the State of Texas; Greg Abbott, in his official capacity as Governor of Texas; Jane Nelson, in her official capacity as Secretary of State; and Dave Nelson, in his official capacity as Deputy Secretary of State (collectively, "State Defendants"), hereby submit this reply in support of their pending motion to exclude the March 31, 2025, Expert Report of Dr. Tye Rush, ECF 920, for failing to meet the minimum standards of Federal Rule of Evidence 702 and of Federal Rule of Civil Procedure 26.

### INTRODUCTION

The Response is long on deflection and short on defense of Dr. Rush's actual Report and deposition testimony. The Response attempts to shift attention to State Defendants' expert report of Dr. Alford. If Plaintiffs believe that there were problems with Dr. Alford's report, the place to point them out would have been in a motion directed to Dr. Alford's report—a motion that they have not thought it worthwhile to file.

Plaintiffs are attempting to use Dr. Rush to adopt the opinions and analysis of Dr. Flores, who was retained as an expert witness by the LULAC Plaintiffs and has since retired and will not testify at trial. However, Dr. Rush's Report and deposition testimony make clear that Dr. Rush simply read and adopted Dr. Flores' Report without independently confirming its bases or

1

conclusions. More broadly, Dr. Rush's expert report and ensuing deposition testimony does not constitute sufficient notice of the subjects to which Dr. Rush may testify at trial under the standard of Federal Rule of Civil Procedure 26(a)(2)(B). Finally, Plaintiffs admit that Dr. Rush's report includes purported opinions regarding districts that are not at issue in this case. Those portions of Dr. Rush's Report are certainly inadmissible, and he should not be allowed to testify regarding those districts.

Because Dr. Rush's Report fails to meet the minimum standards set out in Federal Rule of Evidence 702 and Federal Rule of Civil Procedure 26, Dr. Rush's Report and testimony regarding the same should be excluded from trial evidence.

## ARGUMENT

**I.    Dr. Rush Improperly Attempts to Adopt an Inadmissible Expert Report of Dr. Flores.**

The attempt by Dr. Rush to "incorporate" the expert work and opinions of Dr. Henry Flores remains objectionable for several reasons. Dr. Rush claims to have "reviewed" Dr. Flores' 2022 expert report in this case, but in fact he only reviewed a preliminary version of the report that Dr. Flores himself later amended and supplemented. ECF 920 at 15 ("Dr. Rush did not review (and seemed unaware of) the Supplemental and Amended Expert Report of Dr. Flores submitted *after* the May 20, 2022 report that Dr. Rush *did* review."). Although experts are entitled to rely to some extent on hearsay in forming their opinions, they cannot rely on double hearsay, or hearsay within hearsay. "[A]n expert who parrots an out-of-court statement is not giving expert testimony; he is a ventriloquist's dummy." *Doe by & through Pike v. Pike*, 405 F. Supp. 3d 243, 251 (D. Mass. 2019) (quoting *United States v. Brownlee*, 744 F.3d 479, 482 (7th Cir. 2014)). And an expert cannot merely review the report of another expert and repeat it as if it were their own work. "Preparing a[n expert] witness report requires more than merely adopting another's report." *Mobility Workx, LLC v. Cellco P'ship*, 2019 WL 5721814, at *9 (E.D. Tex. Nov. 5, 2019). "Experts must undertake their own analysis and may not blindly rely on the opinions of others." *Id.* at *11 (internal citations omitted). "Preparation [of an expert report] implies involvement other than

perusing a report drafted by someone else and signing one's name at the bottom to signify agreement." *Quintel Tech. Ltd. v. Huawei Techs. USA, Inc.*, 2018 WL 626355, at *9 (E.D. Tex. Jan. 30, 2018) (internal citation omitted).

In his Report, Dr. Rush states: "I have reviewed the expert report of Dr. Henry Flores that was submitted on May 2022 on behalf of MALDEF in this case . . . . After reviewing Dr. Flores' observations of Texas House District 118 (HD118), I agree with his observations."[1] But as reflected below, Dr. Rush could not or would not provide substantive answers in his deposition regarding his independent analysis of Dr. Flores' report.

First, Dr. Rush confirmed that he did not communicate with Dr. Flores in connection with this case and only reviewed some of Dr. Flores' conclusions and evidence.

> Q: And part of your expert report in this case refers to work of Dr. Henry Flores. Do you recall that?
>
> A: I believe so, yes.
>
> Q: And is it certain that you have not communicated with Dr. Henry Flores regarding your work in this case?
>
> A. I'm certain that I've not communicated with him in this case.
>
> Q: Okay. And is it correct, then, that you have never communicated with Dr. Flores about his expert report in this case?
>
> A: I've – I've never communicated with him about my report.
>
> Q: Well my question is about whether you communicated with him about his report.
>
> A: I've never communicated with him about this matter.
>
> Q: Okay
>
> A: So I have not about his report.
>
> Q: Thanks. Now, in doing your work in his case, what exactly did you do with respect to Dr. Henry Flores' May 20th, 2022, expert opinion in this case?
>
> A: I was asked to look at his report and review it.

---

[1] In his Report, Dr. Rush makes similar conclusory statements that he agrees with Dr. Flores' observations for CD 15, HD37, and SD 27. As discussed herein, testimony regarding these districts is immaterial and irrelevant to the claims in this case. *See infra* Part III.

3

| | | |
|---|---|---|
| Q: | | Okay. And as part of that review, what steps did you take? |
| A: | | I – so I reviewed the report. I looked through some of the conclusions and evidence that he had and – and formed an opinion on that. |
| Q: | | What did you do? |
| A: | | I believe I looked at the TLC data and the things that were available there. |
| Q: | | Did you discuss Dr. Flores' report in your work in this case with anyone else? |
| A: | | No. |

ECF 920-1, Exh. 3 at 25:16–27:8.

It is clear from Dr. Rush's Report and deposition testimony that he merely read and agreed with Dr. Flores' May 20, 2022 Report. And Dr. Rush made no mention of Dr. Flores' Supplemental and Amended Report. Dr. Rush could not provide any details regarding his opinions in this case, other than that he agreed with Dr. Flores and Dr. Barreto:

| | | |
|---|---|---|
| Q: | | Yeah. But I'm asking about just what we're doing here today, without you going and doing research from TLC, do you have any knowledge or information on that subject today? |
| A: | | Yes. |
| Q: | | What is it? |
| A: | | I have knowledge through my review of the Flores report and through my review -- that Dr. Barreto report. So I do have that. |
| Q: | | Okay. Please tell me what you know today of the historical and electoral performance of proposed congressional district 37 in plan C2163. |
| A: | | I'm – I'm happy to scroll down in this report to the tables below, which I believe can provide some information on that. But without pulling up those reports and looking through them, I can't off the top of my head list everything. |

*Id.* at 82:7–23.

| | | |
|---|---|---|
| Q: | | Okay. Do you know -- can you provide any information about the differences, if any, between house district 118 as enacted by the Texas Legislature in 2021 and the proposed house district 118 that you describe in your expert report as part of plan H2176? |
| A: | | Yes, I can. |
| Q: | | Okay. Could you describe those generally? |

> A: It's a pretty open-ended question. But in my report, I come to conclusions, I believe even referencing this from the Flores report. I did an analysis with that.
>
> Q: Okay. And I'm glad you asked -- you said that because it appears to me that in your expert report, you do an evaluation of HD 118 and that Dr. Flores also did an evaluation of HD 118; is that right?
>
> A: I'm not exactly sure. So I had looked at -- I reviewed his report and then checked his findings. And I believe that there's a section in my report that separately -- where I address this district, but I'm not sure the specifics of where -- in what context.

*Id.* at 117:9–118:3.

> Q: Okay. In your expert report at paragraph 18, this is the portion where you reviewed Dr. Flores' analysis. You stated, quote, The changes to HD 118 make it such that while the district remains majority Latino on its face, the ability for Latinos to elect their candidates of choice has been diluted. Do you recall that opinion you expressed in your expert report?
>
> A: I'm reading -- I followed along under bullet point 18. And, yes, that's what it says.
>
> Q: Okay. And so this -- if this exhibit from C2316 is the enacted house district 118, it's your opinion that it remains majority Latino; is that right?
>
> A: I believe it -- what I had written was that on its face it -- it appears majority Latino.
>
> Q: Okay. And then your conclusion is, quote, The ability for Latinos to elect their candidates of choice has been diluted. What do you mean by the term diluted there?
>
> A: I believe this is referring to -- I had looked at different data points that are in the appendices and other experts' reports. And I believe this refers to the performance analyses or something of that nature on -- or racially polarized voting that I had looked at.
>
> Q: Okay. I'm asking you about just the meaning of the term diluted as you use it in your expert report. Can you explain what you mean by that?
>
> A: Yeah. So I agree with Dr. Flores' observations. So he does an in/out analysis showing the changes between the two, and I include those conclusions right under those bullet points.

*Id.* at 120:3–121:8.

The conclusion that Dr. Rush cannot be allowed to piggyback on the work of Dr. Flores, who will not testify at trial, is especially strong here because Dr. Rush failed or was unable to

answer deposition questions about the opinions of Dr. Flores that he aspires to adopt as his own. Here, these defects were worsened by the fact that Dr. Rush and Dr. Barreto were apparently collaborating in unspecified ways on each other's expert reports in this case. ECF 920 at 19–20. The court is entitled to expert opinion testimony based on the independent professional work and judgment of the expert before the court. That is simply not possible as to Dr. Rush's proposed expert report and testimony in this case. Accordingly, the Court should exclude both the expert report and any trial testimony by Dr. Rush.

**II.     Dr. Rush's Report and Deposition Testimony Does Not Comply with Rule 26.**

Plaintiffs claim that the only obligation of an expert report is to "summarize" the experts' opinions. ECF 953 at 4. But that is not what Rule 26(a)(2)(B) says, as Plaintiffs acknowledge at page 2. Rule 26 requires a *complete* statement of the expert's opinions, not a "summary." And it requires the expert to provide clarity as to the *basis and reasons* for those opinions in the form of "a detailed report"—as even Plaintiffs' cited caselaw reveals. *Doe*, 405 F. Supp. 3d at 248 ("A party retaining an expert must also submit . . . a detailed report covering . . . the expert's qualifications, the gist of his opinion, and the sources of information underlying that opinion." (alterations in original) (citing *Lohnes v. Level 3 Commc'ns, Inc.*, 272 F.3d 49, 59 (1st Cir. 2001))). Such a report could be brief as well as detailed: a two-and-a-half-page report on "bilateral knee pain" could well be sufficient, as could a ten-page supplemental report submitted to accompany a one-hundred-and-thirty-page primary expert report in this case. *See Brenner v. Consol. Rail Corp.*, 806 F. Supp. 2d 786, 791 (E.D. Pa. 2011); *see also* ECF 953 at 11 (citing ECF 935-2 (3/31/25 Alford Report)). Rule 26 does not feature a minimum page requirement; it has a disclosure requirement designed to provide fair notice sufficient to avoid prejudice. *Torres v. City of San Antonio*, 2014 WL 7339122, at *2 (W.D. Tex. Dec. 23, 2014).

Dr. Rush's expert report fails this standard because it purports to adopt the report of another (non-designated) expert witness without independent examination, *see supra* Part II, and because it provides insufficient notice of the bases for his conclusions. When given the opportunity to fill the gaps of his expert report with deposition testimony, Dr. Rush repeatedly failed to do so,

claiming inability to answer basic questions about his report without reviewing his voluminous supporting data—a condition wholly impractical for a time-limited deposition. As a result of Dr. Rush's inadequate expert report and almost entirely uninformative deposition testimony, State Defendants have been deprived of the essential expert discovery to which they are entitled under the Federal Rules. It would be fundamentally unfair to Defendants to allow the Rush expert report into evidence or allow Dr. Rush to testify at trial under these circumstances.

### III. Plaintiffs Concede that Dr. Rush's Report Includes Opinions Relating to Irrelevant Districts.

Finally, Plaintiffs readily admit that Dr. Rush's report includes purported expert opinions about districts that are irrelevant and immaterial to this case: "[I]n light of the fact that no Plaintiff has claims with respect to CD 15, SD 17, or HD 37, Plaintiffs are not aware of any party that intends to offer opinions from Dr. Rush with respect to those districts." ECF 953 at 5. Nevertheless, Dr. Rush purports to have "revived Dr. Flores' analysis" for these districts, three out of four of which are not now challenged. By Plaintiffs' own admission, the Rush Report as related to those south Texas Districts is inadmissible under Federal Rule 702, and any trial testimony related to any of those south Texas Districts should be excluded.

### CONCLUSION

State Defendants respectfully ask this Court to exclude from trial evidence the March 31, 2025 expert report of Dr. Tye Rush and testimony regarding the same.

Date: May 13, 2025

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

RYAN D. WALTERS
Deputy Attorney General for Legal Strategy

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
Special Litigation Division
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Phone: (512) 936-1700
Fax: (512) 457-4410
ryan.kercher@oag.texas.gov
kathleen.hunker@oag.texas.gov
william.wassdorf@oag.texas.gov

Respectfully submitted,

*/s/ Ryan G. Kercher*
RYAN G. KERCHER
Chief, Special Litigation Division
Texas Bar No. 24060998

KATHLEEN T. HUNKER
Deputy Chief, Special Litigation Division
Texas Bar No. 24118415

WILLIAM D. WASSDORF
Deputy Chief, General Litigation Division
Texas Bar No. 24103022

COUNSEL FOR STATE DEFENDANTS

**CERTIFICATE OF SERVICE**

I certify that on May 13, 2025, a true and accurate copy of the foregoing document was filed and served electronically (via CM/ECF).

*/s/ Ryan G. Kercher*
RYAN G. KERCHER
Chief, Special Litigation Division