IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, <br> *Plaintiffs,* <br><br> ALEXANDER GREEN, *et al.*, <br> *Plaintiff-Intervenors,* <br><br> v. <br><br> GREG ABBOTT, *et al.*, <br> *Defendants.* | EP-21-cv-00259-DCG-JES-JVB <br> [Lead Case] <br><br> & <br><br> All Consolidated Cases |

**STATE DEFENDANTS' MOTION TO STRIKE THE TESTIMONY OF MOON DUCHIN**

State Defendants respectfully request that the Court strike undisclosed, surprise testimony of Plaintiff NAACP's ("NAACP") expert witness, Dr. Moon Duchin, for failure to meet the minimum disclosure standards set out in Federal Rule of Civil Procedure 26. In addition, State Defendants ask the Court to draw an adverse inference concerning all undisclosed analysis that Dr. Duchin has performed.

## INTRODUCTION

During cross-examination at trial, Dr. Duchin volunteered unsolicited testimony regarding partisan analysis that she had not disclosed in either her expert reports or her deposition. This Court's scheduling order afforded Dr. Duchin ample opportunity to supplement her expert reports prior to trial, *see* ECF 880; nevertheless, Dr. Duchin's partisan analysis was never disclosed to State Defendants as required by Rule 26.

Due to NAACP's failure to comply with the disclosure requirements of Rule 26, neither State Defendants nor their experts were given the opportunity to review and challenge Dr. Duchin's "new conclusions." Because of this unfair surprise, Dr. Duchin's testimony regarding

1

this new information should be stricken from the record. Additionally, Dr. Duchin's answers on the stand indicate that she understands her undisclosed partisan analysis as material to her ensembles, which are in turn the basis of her opinion that the State's maps reflect racial intent. She therefore knew or should have known that she had a duty to disclose her partisan analysis as well as the other sensitivity checks she says she has performed. That she did not should lead the Court to draw an adverse inference that any work performed by Dr. Duchin after the disclosure of her expert reports did not support her conclusions in this case.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 26 provides that witnesses "retained or specially employed to provide expert testimony" must include in their expert reports, inter alia, a "complete statement of all opinions the witness will express and the basis and reasons for them; the facts or data considered by the witness in forming them; [and] any exhibits that will be used to summarize or support them." Fed. R. Civ. P. 26(a)(2)(B). The purpose of this rule "is to provide an opposing party with fair notice of the content of the experts' testimony; without the requisite information, [it] is greatly prejudiced because it is left unaware of the testimony each expert plans to offer." *Torres v. City of San Antonio*, 2014 WL 7339122, at *2 (W.D. Tex. Dec. 23, 2014). Insufficient notice leaves a party unable to "prepare to rebut the testimony" and therefore at a comparative disadvantage. *Id*. "For an expert whose report must be disclosed under Rule (a)(2)(B), the party's duty to supplement extends both to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pre-trial disclosures under 26(a)(3) are due." Fed. R. Civ. P. 26(e).

Failure to provide proper notice of expert testimony gives rise to a commensurate and predictable consequence—the offending party "is not allowed to use that information . . . to supply evidence on a motion . . . or at a trial, unless the failure was substantially justified or is harmless." *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 372 (5th Cir. 2016) (quoting Fed. R. Civ. P. 37(c)(1)). "Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove

harmlessness." *Current v. Atochem N. Am., Inc.*, No. CIV.A. WW-00-CA-332, 2001 WL 36101282, at *2 (W.D. Tex. Sept. 18, 2001).

## FACTUAL BACKGROUND

On May 20, 2022, NAACP submitted Dr. Duchin's initial expert report. Three days later, on May 23, 2022, NAACP submitted a corrected report for. NAACP then filed a supplemental report for Dr. Duchin on June 20, 2022 (collectively, "Expert Reports"). On August 16, 2022, State Defendants deposed Dr. Duchin on the opinions set forth in her Expert Reports.

The March 19, 2025, Pretrial Scheduling Order (ECF 880), which was based on the parties' agreement, reopened expert discovery. Plaintiffs were given a deadline of March 31, 2025, to disclose any supplemental expert reports along with dates the expert would be available for deposition regarding their supplemental reports. Because NAACP did not supplement Dr. Duchin's report or offer her for another deposition, State Defendants believed that Dr. Duchin's Expert Reports were the full and complete universe of information Dr. Duchin was working.

### A.   Dr. Duchin disclosed new information while on cross-examination.

Instead, Dr. Duchin 'supplemented' on the stand. On May 31, 2025, *during trial*, Dr. Duchin revealed that she had conducted a "robustness check" that made use of partisan information to confirm the opinions offered in her report. Specifically, Dr. Duchin testified that she "did try a version [of her ensemble analysis] … where the algorithm favors partisanship in addition to what I show here…" Dr. Duchin stated that she did not include this analysis in her report:

> *Q. I'm not sure I followed all of that. You never went back to the robot and said, please draw 100,000 partisan maps?*
>
> *A. I did try that, actually.*
>
> *Q. You did try that?*
>
> *A. Yes.*
>
> *Q. Is that in your report?*

3

> *A. No because it is consistent with the findings here. So I presented a simple and what I think is quite helpful, strongest table of many, many findings that are -- that I used for my sensitivity analysis.*

Exhibit A[1], at 108:4–8. In fact, Dr. Duchin explained that she could not have included the results of her partisanship analysis in her report because she had carried it out sometime after submitting it:

> *Q. ...as part of putting together your report you have the robot partisan data?*
> *A. No, that's not right. I did that as a robustness check after the fact.*

Exhibit A, at 111:17-22. And later she revealed that she had performed her new analysis in response to "Justice Thomas's" opinion in one of *Alexander v. S.C. State Conference of the NAACP* or *Allen v. Milligan,* which were released in 2023 and 2024 respectively.

> *Q. There is some testimony about the pairing of incumbents that you were just asked about. Did pairing of incumbents or not pairing of incumbents have any impact on your conclusions?*
>
> *A. So in these -- subsequent to my initial report, I have just testified that I did a number of robustness checks, additional sensitivity analysis. And since I had, indeed, read these sections of the decisions that just came up on cross, I actually took each of those criteria into account one at a time and in combination. So I looked at maps that had as little incumbent pairing as the State's plan. I looked at partisan ensembles created with partisan data up front. I looked at county splits. I looked at county subdivision splits...All of those outlier findings are robust to all of these variations. In fact, the list taken directly from these opinions, particularly in one of Justice Thomas's -- I forget if it's a concurrence or a dissent, but there is a list of things to take into account, and I tried each one.*

Exhibit A, at 117:8-118:9; *see also* Exhibit A at 119:18-24.

### C. Dr. Duchin concealed "extensive" senstivity analysis.

Dr. Duchin appears to have told two conflicting stories about the extent of her sensitivity analysis during her trial testimony. Initially, she represented that she did not have to create an entirely new ensemble that included partisanship data:

> *Q. And so when you went back to try and consider whether partisanship could explain what we've observed in the maps and in the box-and-whiskers, what did you do?*

---

[1] The trial transcript for the morning session of day 9 (May 31, 2025) is attached hereto as Exhibit A.

> *A. Okay. So, I do a fair amount of work trying to disentangle race and party. One thing you could do is make a new ensemble that's targeting more partisanship, but I didn't have to do that here.*

Exhibit A, at 54:16-22. During her cross-examination, Dr. Duchin repeated this answer:

> *Q. And you said this, I think, on direct. You did not go back to your robot and say, okay, robot, this time, I want for you to draw 100,000 districts taking into account partisan information, right?*
>
> *A. Right.*

Exhibit A, at 104:5-9. But later she stated:

> *Q. I'm not sure I followed all of that. You never went back to the robot and said, please draw 100,000 partisan maps?*
>
> *A. I did try that, actually.*

Exhibit A at 108:4-6. When pressed, she admitted that she has withheld other similar research:

> *Q. Dr. Duchin, it sounds like you did a lot of stuff that we haven't talked about -- or that is not in your report?*
>
> *A. Well, that's absolutely true. The sensitivity analysis is really quite extensive.*

Exhibit A, at 109:21-24.

### D.     **Dr. Duchin's undisclosed conclusions are material.**

This new information is material, because the witness had already established that providing the robot with partisan information would draw a different set of 100,000 maps:

> *Q. Okay. So, for example, if you tell the robot to draw maps and to obey the county-line rule, the 100,000 maps that you get may look very different than if you tell the robot to ignore the county-line rule, right?*
>
> *A. Absolutely.*
>
> *Q. And if you tell the robot to look at race, those maps could look different than if the robot is not looking at race, right?*
>
> *A. Right.*
>
> *Q. And, likewise, partisanship, true?*
>
> *A. True.*

Exhibit A, at 83:5-19.

### E.     **Dr. Duchin's new conclusions were not solicited on cross-examination.**

Dr. Duchin introduced her partisan sensitivity analysis without prompting from Defendant's counsel:

> *Q. If we're trying to figure out what the legislature intended to do when it was drawing the map, might it not be useful to look at the information that the legislators had in front of them as they drew the maps?*
>
> *A. Good. So just to clarify, I think what is important about my sort of data scientific techniques is that I'm not trying to read minds, and I'm not trying to simulate the judgment. I'm creating a kind of neutral baseline to compare against. And in this case, I'm subsetting to have certain attributes. It's maybe worth mentioning that as part of that sensitivity analysis we talked about earlier, I did try a version of this where the algorithm favors partisanship in addition to what I show here, which is a subset, and the results are consistent. And I did that with numerous attributes. I tried it this way, I tried it that way, and the results are consistent.*

Exhibit A, at 107:5-22.

## ARGUMENT AND AUTHORITIES

### I. Dr. Duchin's testimony regarding the new information should be stricken from the record.

Rule 26 requires that "expert report[s] be 'detailed and complete,' stating that the testimony will be presented during direct examination and the reasons therefor." *Honey-Love v. United States,* 664 Fed.Appx. 358, 361 (5th Cir. 2016) (quoting Fed. R. Civ. P. 26 Advisory Committee's Notes (1993 Amendments)). And "under Rule 37(c), the presumptive sanction for failing to disclose a testifying expert or supply a required expert report or summary disclosure is to exclude or limit the expert's testimony unless the failure was substantially justified or harmless." *Id.* at 362 (upholding exclusion of expert report for failure to disclose). This sanction upholds Rule 26's "basic purpose of preventing prejudice and surprise" as without adequate disclosure of an expert's testimony parties cannot prepare their rebuttal case. *Reed v. Iowa Marine & Repair Corp.*, 16 F.3d 82, 85 (5th Cir. 1994).

"Determining whether to impose the exclusionary effect of Rule 37(c)(1) is a two-step process committed to the sound discretion of the district court . . . First, the Court must determine whether a party has failed to comply with its Rule 26(a) disclosure requirement or its Rule 26(e) supplementation obligations . . . If so, the Court must next determine whether that failure is

6

'substantially justified' or 'harmless.'" *Silva v. United States*, No. 5:19-CV-151, 2022 WL 22298558, at *5 (S.D. Tex. Apr. 27, 2022) (citations omitted).

### A. Dr. Duchin's testimony regarding her partisanship analysis violated Rule 26.

Dr. Duchin's trial testimony volunteered the results of undisclosed research that was clearly material to the reliability of her ensemble analysis. The partisanship information she failed to disclose was an iteration of the "sensitivity analysis" that she conducted to verify the robustness of her ensembles. *See* Exhibit A at 108:9-13. In her words, "a sensitivity analysis or a robustness check . . . make sure that my conclusions are robust." Exhibit A, at 40:8–12. Dr. Duchin's Corrected Report references her sensitivity analysis and explains its purpose vis a vis her ensemble method was to "provide . . . high confidence that 100,000 steps is enough in each particular districting setting . . . to produce stable and reliable statistics." Rpt. at 64. Accordingly, Dr. Duchin characterizes her sensitivity analysis as a confirmatory quality check for her ensemble study.

Because the ensemble study in turn forms the basis of Dr. Duchin's opinion that the State Defendants' maps were likely drawn using racial criteria, the results of the sensitivity analysis fell under Rule 26's list of material required to be included in an expert report as "data considered by the witness in forming" her opinions. Fed. R. Civ. P. 26(a)(2)(B)(ii). On cross, Dr. Duchin offered her partisan sensitivity analysis as support for the cogency of her ensembles. Exhibit A at 107:15-22 (Duchin stating that the outcome of her partisan analysis was to confirm "the results [of her ensemble analysis] were consistent"). Because she used this analysis to strengthen the basis for her expert opinions, it is part of the information she has relied on to assert the opinions in her report

Revealingly, Dr. Duchin did include the sensitivity analysis that she had undertaken at the time she submitted her report, suggesting that she regards sensitivity analysis as material to her opinions. However, Rule 26(e) adds a duty to supplement "information included in the report," *id.* at 26(e)(2), and that duty extends to any additional information needed to render the report complete. *See e.g., Familias Unidas Por La Educacion v. El Paso Indep. Sch. Dist.*, No. EP-20-CV-170-DB, 2022 WL 2906505, at *4 (W.D. Tex. July 22, 2022). The Court's Scheduling Order provided Dr. Duchin an opportunity to disclose supplemental work that she had performed for this

7

case. Because Dr. Duchin treats her 'robustness checks' as a significant support for her ensembles—going so far as to include her first round of sensitivity analysis in her report—she had a duty to supplement when she reiterated these checks with different, partisan data.

Rule 26 requires a full and complete disclosure of the basis for an expert's opinion; accordingly, Dr. Duchin was required to share the results of her partisan analysis with Defendants.

### B. Plaintiff's failure to disclose was not justified or harmless

Courts evaluate the harm of undisclosed testimony using four factors: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003) (citing *United States v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir.1998)).

Each of these factors weigh in favor of excluding Dr. Duchin's undisclosed testimony. *First*, the centrality of partisanship to the State's redistricting ensures the importance of any analysis that tested the viability of Dr. Duchin's methodology against partisan data. Dr. Duchin has opined that her ensemble analysis shows a high likelihood that the enacted maps were created using racial criteria. That opinion is only as robust as the ensemble model's ability to incorporate the redistricting principles that the Legislature followed.

*Second*, allowing Dr. Duchin's testimony to remain in the record would greatly prejudice State Defendants. "The purpose of Rule 26 is to prevent unfair surprise at trial and to permit the opposing party to prepare for rebuttal reports, to depose the expert in advance of trial, and to prepare for cross-examination." *Payne v. Brayton*, No. 4:15-CV-00809, 2017 WL 194210, at *2 (E.D. Tex. Jan. 18, 2017). The first opportunity that State Defendants have had to engage with Dr. Duchin's partisan analysis was cross-examination. When pressed, Dr. Duchin acknowledged that State Defendants could not have gathered that she had done a partisan robustness check from her report, Exhibit A at 108:4-5, and unhelpfully suggested that Defendants should have asked her about it during her deposition, despite having no indication that she had made any use of partisan

information in creating her ensembles. Exhibit A at 108:18-20. Dr. Duchin's sudden, in-court disclosure is textbook unfair surprise.

Moreover, Dr. Duchin appears to have misstated the timing of her deposition and misled about Defendant's ability to discover her additional work. If she performed her partisan analysis in response to *Milligan* and *Alexander*—as she testified, Exhibit A at 108:6-9—then she did so no earlier than 2023, and Defendants could not have learned of Dr. Duchin's partisan analysis during her 2022 deposition even had they thought to enquire into secret research.

*Third*, trial is currently ongoing, so a cure through continuance is all but impossible.

*Finally*, Dr. Duchin's explanation for withholding her partisan analysis—that it did not change her opinions—does not provide a reason to retain her testimony in the record. In the first place, that proffered explanation is itself an exercise of Dr. Duchin's expert judgment which the State should have been afforded an opportunity to investigate. As it is, the only support for Dr. Duchin's assertion that her partisan robustness check was "consistent with the findings [in her report]" is her mere say-so. Exhibit A at 108:5-6. By performing further work to verify her conclusions, Dr. Duchin added to the material she relied on to support her expert opinions, even if ultimately her additional work was purely confirmatory.

Just as importantly, Dr. Duchin had ample time to supplement her disclosures. Dr. Duchin's trial testimony implies that she conducted her partisan analysis sometime in 2023 or 2024 following the Supreme Court's *Milligan* and *Alexander* decisions. She therefore had well over a year to provide Defendants notice of her additional research. She nevertheless failed to do so by the tie she was required to supplement her report.

## II. The Court should draw an adverse inference that any work Dr. Duchin did after her Expert Reports did not support the findings disclosed in her report.

The adverse inference standard can be paired with Rule 26's basic purpose of limiting expert testimony to the contents of expert reports of "preventing prejudice and surprise." *Reed*, 16 F.3d at 85. As noted herein, Dr. Duchin had ample opportunity to supplement her reports just prior to trial. Nevertheless, NAACP and Dr. Duchin decided not to disclose Dr. Duchin's supplemental

work. In Dr. Duchin's words, their only reason against disclosure was that the additional analysis did not lead Dr. Duchin to revise her ensembles or her opinions. The fact that Dr. Duchin undertook this second round of robustness analysis in the wake of Milligan implies that she realized analysis based on partisan data might be relevant to ensemble techniques applied to the VRA. She therefore engaged in additional research that she knew was material to her the techniques she relied on to form her opinions in this case. Dr. Duchin nonetheless withheld it from Defendants until ultimately using it as unfalsifiable evidence in the face of adverse questioning.

These facts indicate bad faith. Accordingly, State Defendants respectfully request that the Court make an adverse inference that additional analysis performed by Dr. Duchin not disclosed in her Expert Reports does not support her findings.

## Conclusion

State Defendants respectfully ask that this Court exclude from trial evidence Dr. Duchin's testimony found in Exhibit A at 54:6–22, 107:15–112:22, 117:8–118:11 and 119:6–122:4. In addition, State Defendants request that the Court make an adverse inference that any work Dr. Duchin performed for this case after her expert reports was not disclosed because it did not support the conclusions in her 2022 expert reports.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

RYAN D. WALTERS
Deputy Attorney General for Legal Strategy

RYAN G. KERCHER
Chief, Special Litigation Division
Texas Bar No. 24060998
ryan.kercher@oag.texas.gov

KATHLEEN T. HUNKER
Deputy Chief, Special Litigation Division
Texas Bar No. 24118415
kathleen.hunker@oag.texas.gov

*/s/William D. Wassdorf*
WILLIAM D. WASSDORF
Associate Deputy AG for Civil Litigation
Texas Bar No. 24103022
william.wassdorf@oag.texas.gov

DAVID BRYANT
Senior Special Counsel
Texas Bar No. 03281500
david.bryant@oag.texas.gov

ZACHARY L. RHINES
Special Counsel
Texas Bar No. 24116957
zachary.rhines@oag.texas.gov

MUNERA AL-FUHAID
Special Counsel
Texas Bar No. 24094501
munera.al-fuhaid@oag.texas.gov

ZACHARY W. BERG
Special Counsel
Texas Bar No. 24107706
zachary.berg@oag.texas.gov

ALI M. THORBURN
Assistant Attorney General
Texas Bar No. 24125064
ali.thorburn@oag.texas.gov

KYLE S. TEBO
Special Counsel
Texas Bar No. 24137691
kyle.tebo@oag.texas.gov

MARK A. CSOROS
Assistant Attorney General
Texas Bar No. 24142814
mark.csoros@oag.texas.gov

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
Special Litigation Division
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Phone: (512) 936-1700
Fax: (512) 457-4410
COUNSEL FOR STATE DEFENDANTS

## CERTIFICATE OF SERVICE

I certify that on June 8, 2025, a true and accurate copy of the foregoing document was filed and served electronically (via CM/ECF).

*/s/ William D. Wassdorf*
WILLIAM D. WASSDORF
Associate Deputy AG for Civil Litigation