UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| MEXICAN AMERICAN LEGISLATIVE CAUCUS, TEXAS HOUSE OF REPRESENTATIVES, SERGIO MORA, BOBBIE GARZA-HERNANDEZ, <br><br> Plaintiffs <br><br> v. <br><br> STATE OF TEXAS, *et al.* <br><br> Defendants. | § § § § § § § § § § § § § § § § | Civil Action No. <br> 3:21-cv-00259-DCG-JES-JVB <br> [Lead Case] <br><br><br> 3:21-cv-00988-DCG-JES-JVB <br> [Consolidated Case] |

**MEXICAN AMERICAN LEGISLATIVE CAUCUS'S RESPONSE TO THE STATE OF TEXAS'S ORAL MOTION FOR JUDGMENT AS A MATTER OF LAW**

Plaintiff Mexican American Legislative Caucus ("MALC") respectfully requests the Court deny the State of Texas's Oral Motion for Judgment as a Matter of Law raised on June 7, 2025, and would show the Court as follows:

### I.   INTRODUCTION

The Court should deny the State of Texas's June 7, 2025's Oral Motion for Judgment as a Matter of Law. MALC challenges the 2021 redistricting plans adopted by the 87th Texas Legislature for the Texas House of Representatives (Plan H2316) and the United States House of Representatives (Plan C2193). These challenges are brought under Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973, and the Fourteenth and Fifteenth Amendments to the United States Constitution.

These plans were drawn and adopted with the purpose of discriminating on the basis of race and ethnicity, dilute the voting power of Latinos and Spanish speakers, fail to provide

sufficient minority opportunity districts, and employ population variances and gerrymandering techniques to achieve a racial advantage.

The State of Texas made three arguments for dismissal in its oral motion to dismiss intent-based claims at the conclusion of the Plaintiffs' evidence. First, the State made two arguments that appear to be pure questions of law regarding the viability of intent claims under both the 15th Amendment of the U.S. Constitution and Section 2 of the Voting Rights Act. Second, the State made an argument about the factual sufficiency of the Plaintiffs' evidence concerning intent and its failure to satisfy a so-called evidentiary burden set forth in the United States Supreme Court's *Alexander* opinion. The Oral Motion did not challenge MALC's malapportionment claims under the 14th Amendment.

MALC incorporates by reference the legal arguments addressing the viability of intent-based claims under the 14th and 15th Amendments of the Constitution and Section 2 of the Voting Rights Act that are made in the response briefs of the co-Plaintiffs in this case. The State's interpretation of the law is wrong and does not justify dismissal of the claims in this case. Further, MALC presented legally sufficient evidence of its claims. Given the limited pages and the timing of this Response, it will focus on the circumstantial evidence presented in the case-in-chief that satisfies Federal Rules of Civil Procedure 50 or 52.

## II.   ARGUMENTS & AUTHORITIES

### A. Legal Standard.

Motions for judgment as a matter of law made during bench trials should be treated as motions for judgment on partial findings under Rule 52(c). *Miles-Hickman v. David Powers Homes, Inc.*, 613 F. Supp. 2d 872, 879 (S.D. Tex. 2009). Rule 52(c) states that "the court may,

however, decline to render any judgment until the close of the evidence. A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a)."

Ruling on the State's oral motion for judgment as a matter of law is inappropriate at this juncture because this Court's ruling should be based upon consideration of *all* the evidence. The State's request for dismissal of claims based on purely legal issues either should have been made pre-trial in a Rule 56 summary judgment motion or may be resolved after a full evidentiary record and the conclusion of the trial.[1]

**B. MALC Presented Legally Sufficient Evidence of the Claims.**

The Plaintiffs in this case presented significant evidence that provides strong circumstantial evidence of intent that justifies denial of the motion. In this context, intentional discrimination can be proved through either direct or circumstantial evidence. *Hunt v. Cromartie*, 526 U.S. 541, 546 (1999) (quoting *Arlington Heights v. Metropolitan Housing Development Corp.* 429 U.S. 252, 266 (1977)). This is consistent the Fifth Circuit's teaching in other intentional discrimination cases. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001) (explaining the sufficiency of direct or circumstantial evidence in the context of a Title VII employment claim).

**1.    Testimony from a well-qualified expert that the maps were drawn with intent.**

Substantial expert opinion testimony was presented during the Plaintiffs' case that supports a finding of legislative intent to discriminate. The expert report of J. Morgan Kousser was admitted

---

[1] Although unclear on the record during the oral motion, to the extent the motion is brought under Rule 50 the Plaintiffs contend the motion is procedurally improper. Rule 50 only allows judgment when a court finds that a reasonable fact finder "would not have a legally sufficient evidentiary basis to find for that party on that issue." FED. R. CIV. P. 50(a)(1). In considering a Rule 50 motion, a court "consider[s] all of the evidence, drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to the non-moving party." *Flowers v. S. Reg'l Physician Servs., Inc.*, 247 F.3d 229, 235 (5th Cir. 2001).

into evidence as MALC Exhibit 14. Dr. Kousser also testified during the trial. His conclusions and opinions are straight-forward and clear opinion evidence of legislative intent.

In MALC Exhibit 14, Dr. Kousser states clearly his opinion that intentional discrimination occurred in the drawing of the redistricting maps in 2021:

> 165. That leaves racial discrimination as a motive, and there is considerable evidence for it, especially the objective evidence of the graphs and maps, which show again and again that the redistricting made minorities worse off in politics. First, the history of racial discrimination in
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> districts of a particular type – where the racial threat is most concentrated and the response is most effective in countering that threat. Redistricting is a purposeful activity; the output of the framers' activity was to focus increases in the non-Hispanic white percentages in districts that were close to ethnic tipping points, which would likely escape Anglo control if demographic patterns continued the trends of the 2010s; the conclusion that the framers intended that outcome, and that it could only have been accomplished by concentrating on the races of those who were added to or subtracted from the marginal districts seems to follow as a syllogism.

See **MALC Exhibit 14** at 107, 108.

Dr. Kousser testified on direct consistent with this opinion that the Texas Legislature intentionally discriminated as well. This well-regarded expert identified evidence of Texas' intent.

Q:   Did Texas history support a presumption of good faith on the part of the legislature in drawing these election laws, these elections lines?

A:   No.

Q:   Explain why you say that—give us a short answer as to why you say that, please.

A:   Texas has a long history of racial discrimination in voting laws and in other parts of—areas where discrimination on the basis of race is possible.

See May 27, 2025 Tr. PM Session at 90:7-15; *see also id.* at 103:24-104:7 (decisions made "offstage" supports finding intent); 106-1ine 08 (districts drawn with similar intent strategy from earlier cycles); 113: 19-22 (Texas' approach made it more difficult for minorities to gain power).

MALC'S RESPONSE TO ORAL MOTION FOR JUDGMENT AS A MATTER OF LAW - 4

2. **Testimony from legislators supports an inference of intent to discriminate.**

Testimony from Rep. Rafael Anchia and from Rep. Joe Moody also support findings of intent. For example, Rep. Anchia testified that his personal observation and experiences Legislative Session gave him a distinct impression of conscious indifference towards the concerns and needs of minority populations. *See* June 4, 2025 Tr. PM Session at 71-72.

This is circumstantial evidence from which the Court could infer a legislature acting with ill intent, particularly when the legislators charged with the ill intent refuse to disclose any information revealing their mental processes or alleged legal advice justifying their actions. *See* June 4, 2025 Tr. PM Session at 9-10 (would expect transparent, collaborative process, but this was a departure).

Similarly, Rep. Moody testified that a pattern of racial discrimination exists to this day in the Texas Legislature:

```
11        Are you familiar generally, from your time both living
12   in El Paso and serving in the Texas House specifically, of
13   the history of racial discrimination in Texas voting
14   rights and redistricting cases?
15   A.   Yes, sir.  I've certainly heard quite a bit about it.
16   As I talked about, I mean, specifically with the last
17   round of redistricting, it was something that was fleshed
18   out right here in El Paso.
19   Q.   Based on your observations and experience serving in
20   the legislature from the 2013 litigation that you
21   mentioned to today, do you believe that there is still a
22   potential pattern of discriminatory action in the Texas
23   Legislature when drawing redistricting maps?
24   A.   Yes.  I would say so, I mean, based on the result of
25   the most recent redistricting maps.
```

June 5, 2025 PM Session Tr. at 139.

### 3. Willful disregard of minority population growth supports an inference of intent

As Dr. Kousser testified and also opined in his report, the State's disregard of minority population growth and not providing additional majority-minority opportunity districts is circumstantial evidence of intent to discriminate.

> 17. Basic demographic facts are even more obviously central to evaluating post-*Baker v. Carr*[20] redistricting than to understanding other kinds of election laws, because redistricters must equalize populations among districts. Three facts are most critical. First, the increase in the population of people of color and the corresponding decrease in the proportion of non-Hispanic whites in the state's population continues to be dramatic. As was often repeated in the Legislature and the press, 95% of the population growth in Texas from 2010 to 2020 was in people of color. Second, the minority population is strongly concentrated in major metropolitan areas, while more rural areas outside the Rio Grande Valley are overwhelmingly non-Hispanic white. Third, growth in the state's population was almost wholly within urban and suburban places. There was no need to stretch urban congressional, legislative, and Board of Education districts outside of the metropolises to meet equal population requirements. And of course, to dilute urban minority populations by adding them to rural and small-town non-Hispanic whites in the same districts would not preserve communities of interest; it would set different types of communities of interest against each other, insuring that one set of interests would always be underrepresented in legislative bodies.

MALC Exh. 14 at 8.

### 4. The rushed and truncated process served to limit minority participation and was a departure from the typical deliberative process.

Similarly, Dr. Kousser, and others, testified that the rushed and truncated process was circumstantial evidence of an intent to discriminate because it permitted the majority to ramrod maps that impinged on minority interests. *See e.g.,* **MALC Exh. 14** at 8-10; **Joint Exhibit 4238** at S12 (Rep. Anchia declaring need for more time and objection of rushed process by public) and S26 (Rep. Turner explaining rushed process); *see also* June 4, 2025 Tr. PM Session at 19.

### 5. The Legislature's Inconsistent Explanations Support An Inference of An Actual Intent to Discriminate.

Rep. Todd Hunter, Chairman of the House Redistricting Committee, gave inconsistent and inexplicable bases for the drawing of the maps. This inconsistency, coupled with an insistence on

hiding behind a privilege is more than sufficient to draw strong and reasonable inferences that House leadership is hiding its ill intent.

### a. Inconsistent and inexplicable use of Citizen Voting Age Population Data.

When laying out the initial proposed map for the Texas House of Representatives, Chairman Hunter explained that he did not use or consider Citizen Voting Age Population ("CVAP") in drawing the redistricting maps. *See* **Joint Exhibit 4230** at 6-8 (October 4, 2021 House Redistricting Committee Hearing Transcript). When pressed on the issue in Committee, Chairman Hunter explained only that he believed Voting Age Population ("VAP") stats were more accurate because the CVAP data was only an estimate. *Id*. Yet, just a week later, when laying out Plan H2316 before the full House on the floor, Chairman Hunter changed his explanation and described that CVAP was "considered." But he could not explain or would not explain how or when it was considered and why any such consideration would, in fact, show compliance with either the Voting Rights Act or the U.S. Constitution. *See* Joint Exhibit 4238 at S2-S3.

### b. Inconsistent and inexplicable use of "urban magnets" to explain away discriminatory racial impact.

Similarly, Chairman Hunter gave explanations for his map drawing that were inconsistent with the actual demographic facts. Hunter repeatedly explained that population growth in urban centers acted as "magnets" that drew population. *See* **Joint Exhibit 4230** at 12 ("all urban areas to act as a magnet"). Yet, when describing El Paso and attempting to justify why it was the one place where two minority districts were paired together and collapsed into one district, that El Paso lost population. *Id* at 11 ("**El Paso** or South Texas unfortunately had to lose a district **due to loss of population in these areas** and in slower-growth zones.") (emphasis added). The reality is that El Paso did not lose population, but only lost it relative to the major urban centers. *See* Joint Exhibit 4150 (Texas Demographer Presentation). The population deviations that were made were

MALC'S RESPONSE TO ORAL MOTION FOR JUDGMENT AS A MATTER OF LAW - 7

inconsistent with the population patterns in West Texas belied any non-racial explanation for the drawing of West Texas districts to maximize Anglo power.

### 6. Indifferent And Systematic Rejection of Minority Amendments Is Circumstantial Evidence of Intent to Discriminate.

Rep. Anchia also testified about indifferent and systematic rejection of minority amendments. June 4, 2025 Tr. PM Session at 84-85. This evidence is consistent with the factors set forth in *Arlington Heights* as evidence supporting an inference of intent derived from circumstantial evidence. *See* Exhibit 1 (Demonstrative Exhibit used during trial with Rep. Anchia).

### 7. Unexplained Objections And Votes Against Minority Amendments Is Circumstantial Evidence of Intent.

Rep. Anchia also testified about unexplained objections to unanimous minority delegation amendments and the consistent and systematic rejection of amendments aimed at demonstrating Plan H2316's non-compliance with the Voting Rights Act. June 4, 2025 Transcript[2] PM Session at 127-128 (inexplicable objection of Rep. Murr to defeat unanimous minority delegation amendment). Again, this evidence is consistent with the factors set forth in *Arlington Heights* as evidence supporting an inference of intent derived from circumstantial evidence. Once informed of the problematic racial impact of the redistricting maps, the House majority did not carefully consider those amendments; rather, they quickly and summarily overruled amendments inconsistent with their obligation to ensure compliance with the Voting Rights Act.

### 8. Willful Ignorance of Racial Data and Impact Concerning The Proposed and Enacted Maps Is Circumstantial Evidence of an Intent to Discriminate.

---

[2] References are to the Rough Drafts of the daily transcripts., hereinafter cited as "Tr. __"

When the House majority offered Committee amendments splitting minority communities in Bell County, it was quickly explained and demonstrated that the racial division would adversely impact a significant African American community. Nevertheless, the amendment was adopted notwithstanding the clear racial implication and despite the evidence of actual racial impact or disruption of this community of interest. *See* June 4, 2025 Tr. PM Session at 118-119. Again, these actions are consistent with racially motivated intentions, not mere partisanship.

9.  **Refusal To Explain Reasons or Basis For So-Called Compliance With the Voting Rights Act Justifies an Adverse Inference That The Shielded Information Contains Evidence of Intent.**

The Court has heard extensive testimony that the entire map drawing process was shrouded in secrecy. *See* Joint Exhibit 4238 (House Floor Debate) During the debates on the House and Senate Floor and in committee, the majority legislators refused to reveal the basis for their bare assertion that the maps complied with federal law. Instead, the legislators repeatedly invoked attorney-client privilege, while simultaneously asserting that the advice given to them by the Texas Attorney General's office proved the maps complied with the law. But as all of the Plaintiffs' experts opine, the secrecy and failure to have open, transparent deliberate debate on the issues is circumstantial evidence of the intent to discriminate itself. *See* MALC Ex. 14 (Kousser opining that secrecy is evidence of ill intent in redistricting process given Texas history of discrimination).

## CONCLUSION

For these reasons, and the others made by other Plaintiffs and incorporated herein, the Court should deny the State of Texas's Oral Motion for Judgment as a Matter of Law raised on June 7, 2025, and grant MALC all other relief to which it may be entitled.

Respectfully submitted,

SOMMERMAN, MCCAFFITY, QUESADA &GEISLER, L.L.P.

/s/ *Sean J. McCaffity*
_____
George (Tex) Quesada
State Bar No. 16427750
Sean J. McCaffity
State Bar No. 24013122
3811 Turtle Creek Blvd., Suite 1400
Dallas, Texas 75219-4461
214-720-0720 (Telephone)
214-720-0184 (Facsimile)

Joaquin Gonzalez
Texas Bar No. 24109935
1055 Sutton Dr.
San Antonio, TX 78228
jgonzalez@malc.org

**ATTORNEYS FOR PLAINTIFFS**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Pre-Trial Brief was filed and served via the Court's electronic filing system on June 9, 2025.

/s/ *Sean J. McCaffity*
Sean J. McCaffity