**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, | |
| | |
| *Plaintiffs*, | CIVIL ACTION NO. |
| | 3:21-cv-00259-DCG-JES-JVB |
| v. | [Lead Case] |
| | & |
| GREG ABBOTT, in his official capacity as Governor of the State of Texas, *et al.*, | All Consolidated Cases |
| | |
| *Defendants*. | |

**LULAC PLAINTIFFS' NOTICE OF JOINDER**

Plaintiffs LULAC, *et al.*, ("LULAC Plaintiffs") respectfully give notice of their joinder in

the memoranda filed by Plaintiff Mexican American Legislative Caucus ("MALC") and Brooks

Plaintiffs in response to State Defendants' motion for judgment as a matter of law.  Tr. June 7,

2025 (a.m.) at 123:18-147:2.

LULAC Plaintiffs present no claims of discrimination under the Fifteenth Amendment to

the U.S. Constitution.  Doc. 899 at 166-169.  LULAC Plaintiffs join the arguments made by MALC

and Brooks Plaintiffs with respect to the second and third arguments made by State Defendants in

support of their motion for judgment as a matter of law.

With respect to State Defendants' third argument, urging dismissal under *Alexander v. S.C.*

*State Conference of the NAACP*, 602 U.S. 1 (2024), LULAC Plaintiffs write further to emphasize

that there are two distinct claims of intentional discrimination in redistricting.  The first challenges

the use of race as a basis for separating voters into districts and was first recognized in *Shaw v.*

1

*Reno*, 509 U.S. 630 (1993). *See also Miller v. Johnson*, 515 U.S. 900, 911 (1995). The second claim of intentional discrimination targets actions "disadvantaging voters of a particular race," and is "analytically distinct" from claims under the *Shaw v. Reno* line of cases. *Miller*, 515 U.S. at 911 (distinguishing the two types of claims).

A *Shaw*-type racial gerrymandering claim is "that race was improperly used in the drawing of the boundaries of one or more specific electoral districts." *Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254, 262 (2015). The plaintiff's evidentiary burden is "to show, either through circumstantial evidence of a district's shape and demographics or more direct evidence going to legislative purpose, that race was the predominant factor motiving the legislature's decision to place a significant number of voters within or without a particular district." *Id*. at 266. In other words, "if a legislature gives race a predominant role in redistricting decisions, the resulting map is subjected to strict scrutiny and may be held unconstitutional." *Alexander*, 602 U.S. at 6 (2024).

Thus, states violate the 14th Amendment when their new district boundaries "move[] Latinos into the district to bring the Latino population" to a particular racial target without "good reasons to believe that this was necessary to satisfy § 2 of the VRA." *Abbott v. Perez*, 585 U.S. 579, 620 (2018); *see also Cooper v. Harris*, 581 U.S. 285, 304 (2017).

*Alexander*'s requirement to show that race was the "predominant factor motivating the legislature's decision to place a significant number of voters within or without a particular district" is limited to racial gerrymandering challenges. *Alexander*, 602 U.S. at.7.

Similarly, *Alexander*'s requirement that a plaintiff "untangle race from other permissible considerations" applies only when "the State raises a partisan-gerrymandering defense" to a claim that a district is a "racial gerrymander[.]" *Id.* at 9.

A.    Unconstitutionally Disadvantaging Voters of a Particular Race

A non-*Shaw* claim of intentional discrimination in redistricting asserts that the jurisdiction "enacted a particular voting scheme as a purposeful device 'to minimize or cancel out the voting potential of racial or ethnic minorities'" *Miller*, 515 U.S. at 911 (quoting *City of Mobile v. Bolden*, 446 U.S. 55 (1980)) *superseded in part by statute on other grounds* by 42 U.S.C. § 1973; *see also Rogers v. Lodge*, 458 U.S. 613, 617 (1982) (redistricting plan violates the Fourteenth Amendment if "'conceived or operated as purposeful device to further racial discrimination' by minimizing, canceling out or diluting the voting strength of racial elements in the voting population.'") (quoting *Whitcomb v. Chavis*, 403 U.S., 124, 149 (1971)); *Garza v. County of Los Angeles*, 918 F.2d 763 (9th Cir. 1990) (same).

For example, states intentionally discriminate when they "t[ake] away the Latinos' opportunity because Latinos were about to exercise it." *League of United Latin Am. Citizens v. Perry,* 548 U.S. 399, 440 (2006) ("*Perry*").

Courts have long recognized that public decision making bodies, like the State of Texas, can have more than one motive when enacting a statute. *See Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 265 (1977) ("Rarely can it be said that a legislature or administrative body operating under a broad mandate made a decision motivated solely by a single concern, or even that a particular purpose was the 'dominant' or 'primary' one.").

The Court in *Arlington Heights* continued:

> In fact, it is because legislators and administrators are properly concerned with balancing numerous competing considerations that courts refrain from reviewing the merits of their decisions, absent a showing of arbitrariness or irrationality. But racial discrimination is not just another competing consideration. When there is a proof that a discriminatory purpose has been a motivating factor in the decision, this judicial deference is no longer justified.

*Id.* at 265-266.

In *Arlington Heights*, the Supreme Court explained that when determining whether racially

discriminatory intent or purpose is a motivating factor behind an official action, a court must make

"a sensitive inquiry into such circumstantial and direct evidence as may be available." *Id.* at 266.

The Court explained further that, in addition to direct evidence, circumstantial evidence of

discriminatory intent includes:

- the impact of the official action, *i.e.* whether it "bears more heavily on one race than another" and whether "a clear pattern, unexplainable on grounds other than race emerges from the effect of the state action even when the governing legislation appears neutral on its face;"
- the historical background of the decision;
- the specific sequence of events leading up to the challenged decision;
- departures from the normal procedural sequence;
- substantive departures, "particularly if the factors usually considered important by the decisionmaker strongly favor a decision contrary to the one reached;" and
- The legislative or administrative history, especially where there are contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports.

*Id*. at 266-68.

*Alexander*, which resolved a racial gerrymandering claim, did not alter the applicability of

the *Arlington Heights* factors in a circumstantial case alleging intentional minority vote dilution.

*See Alexander* at 7–8 (citing *Shaw v. Hunt*, 517 U.S. 899, 907 (1996)).

When a state acts to disadvantage voters of a particular racial group, the State's actions are

unlawful even if the State can point to additional, purportedly non-racial purposes. *See Perry*, 548

U.S. at 441; *Garza v. County of L.A.*, 756 F. Supp. 1298, 1349 (C.D. Cal. 1990) *aff'd*, 918 F.2d

763 (9th Cir. 1990) ("racial discrimination is not just another competing consideration.") (citing

*Arlington Heights,* 429 U.S. at 265 (1977)).

Impermissible discrimination against minority voters includes, for example, creating a bare Latino majority district in which Latinos lack an equal opportunity to elect their candidate of choice. *Perry*, 548 U.S. at 440, 428 (recognizing that "it may be possible for a citizen voting-age majority to lack real electoral opportunity").

State Defendants rely exclusively on *Alexander* to argue for judgment on all of Plaintiffs' intentional discrimination claims. Because *Alexander* does not apply to intentional vote dilution claims, State Defendants are not entitled to judgment as a matter of law. And even where *Alexander* is relevant to the analysis, *i.e.* in racial gerrymandering claims, Plaintiffs have satisfied their burden, as described in the responses of MALC and Brooks Plaintiffs.

For these reasons, and those set out in the responses of MALC and Brooks Plaintiffs, LULAC Plaintiffs respectfully request that the Court deny State Defendants' motion for judgment as a matter of law.

Dated: June 9, 2025                                    Respectfully submitted

                                                       */s/ Nina Perales*
                                                       Nina Perales
                                                       Julia Longoria
                                                       Sabrina Rodriguez
                                                       Mexican American Legal Defense and Educational
                                                       Fund (MALDEF)
                                                       110 Broadway Street, Suite 300
                                                       San Antonio, TX 78205
                                                       (210) 224-5476
                                                       Fax: (210) 224-5382
                                                       nperales@maldef.org
                                                       jlongoria@maldef.org
                                                       srodriguez@maldef.org

                                                       Ernest I. Herrera
                                                       Mexican American Legal Defense and Educational
                                                       Fund (MALDEF)
                                                       634 S. Spring Street, 11th Floor

Los Angeles, CA  90014
(210) 629-2512
eherrera@maldef.org

Andrea E. Senteno*
Mexican American Legal Defense and Educational
Fund (MALDEF)
1016 16th Street, Suite 100
Washington, DC  20036
(202) 293-2828
Asenteno@maldef.org

Khrystan N. Policarpio*
Mexican American Legal Defense and Educational
Fund (MALDEF)
1512 14th Street
Sacramento, CA  95814
(916) 444-3031
kpolicarpio@maldef.org

*Admitted *pro hac vice*
*Counsel for LULAC Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that she has electronically submitted a true and correct copy of the above and foregoing via the Court's electronic filing system on the 9th day of June 2025.

*/s/ Nina Perales*
Nina Perales

6