IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,<br>*Plaintiffs,*<br><br>ALEXANDER GREEN, *et al.*,<br>*Plaintiff-Intervenors,*<br><br>v.<br><br>GREG ABBOTT, *et al.*,<br>*Defendants.* | EP-21-cv-00259-DCG-JES-JVB<br>[Lead Case]<br><br>&<br><br>All Consolidated Cases |

**STATE DEFENDANTS' MOTION FOR JUDGMENT AS MATTER OF LAW**

Defendants the State of Texas; Greg Abbott, in his official capacity as Governor of Texas; Jane Nelson, in her official capacity as Secretary of State; and Dave Nelson, in his official capacity as Deputy Secretary of State (collectively, "State Defendants"), respectfully file this Motion for Judgment as a Matter of Law.

## INTRODUCTION

At the close of Plaintiffs' case in chief, State Defendants are entitled to judgment as a matter of law on at least three categories of claims: (1) vote dilution claims under the Fifteenth Amendment, (2) intentional discrimination claims under § 2 of the Voting Rights Act ("VRA"), and (3) all intentional discrimination claims under both the Fourteenth and Fifteenth Amendments.

Importantly, if the Court grants judgment as a matter of law for State Defendants on the Fifteenth Amendment vote dilution and § 2 intent claims, Plaintiffs will still be able to pursue claims of vote dilution and intentional discrimination through their Fourteenth Amendment causes

of action. Judgment as a matter of law on the Fifteenth Amendment vote dilution and § 2 intent claims would serve to streamline the matters that this Court must consider and would prevent duplicative relief. Defendants are entitled to judgment as a matter of law on Plaintiffs' Fourteenth Amendment claims as a consequence of Plaintiffs' failure to carry their burden of proof in their case in chief—even before State Defendants' presentation of countervailing evidence.

ARGUMENT AND AUTHORITIES

### A. Plaintiffs' Vote Dilution Claims are Not Cognizable Under the Fifteenth Amendment.

Last redistricting cycle, in *Perez v. Texas*, a three-judge panel of the Western District of Texas found that binding circuit precedent precludes vote dilution claims brought under the Fifteenth Amendment. *Perez v. Texas*, No. SA-11-CV-360-OLG-JES-XR 2014 WL 12853571 *2-3 (W.D.T.X June 23, 2014). "'The Supreme Court has rejected application of the Fifteenth Amendment to vote dilution causes of action' because '[w]hen a legislative body is apportioned into districts, every citizen retains equal rights to vote for the same number of representatives, even if not for all of them, and every citizen's ballot is equally weighed.'" *Perez*, 2014 WL 12853571 at *2 (citing *Prejean v. Foster*, 227 F.3d 504, 519 (5th Cir. 2000); *see also Reno v. Bossier Par. Sch. Bd.*, 528 U.S. 320, 334 n. 3 (2000) ("we have never held that vote dilution violates the Fifteenth Amendment.").

The *Perez* court closely analyzed—and summarily dismissed—the now-defunct Fifteenth Amendment precedent of *Lodge v. Buxton*, 639 F.2d 1358 (5th Cir. Unit B. Mar. 1981) *aff'd sub nom. Rogers v. Lodge*, 458 U.S. 613 (1982). In *Lodge*, the Fifth Circuit held that "a cause of action under the Fourteenth or Fifteenth Amendment asserting unconstitutional vote dilution through the maintenance of an at-large electoral system is legally cognizable." *Perez*, WL 12853571 at *2

2

(citing *Lodge,* 639 F.2d at 1375). But as the *Perez* court noted, *Lodge*'s Fifteenth Amendment holding "directly flowed" from an incorrect conclusion. *Perez*, WL 12853571 at *2. The *Lodge* court wrongly relied on the mistaken premise that in *City of Mobile, Ala. v. Bolden*, 446 U.S. 55 (1980), five Justices of the Supreme Court indicated their belief that "the Fifteenth Amendment creates a right of action in voting dilution cases." *Id.* at *2 (quoting *Lodge*, 639 F.2d at 1373). In fact, "the plurality in *Bolden*, 446 U.S. at 65, specifically held that the Fifteenth Amendment *does not prohibit* vote dilution." *Id.* (emphasis added). The *Perez* court added: "[t]hat five justices in 1981 *would have held*, but did not hold, that the Fifteenth Amendment contemplates vote dilution claims cannot overcome subsequent Supreme Court opinions that clarify vote dilution claims are not, as of yet, cognizable under the Fifteenth Amendment." *Id.* (emphasis in original). Accordingly, *Perez*'s holding clarified that *Prejean v. Foster*, 227 F.3d 504 (5th Cir. 2000), best reflects intervening Supreme Court law. *Id.* at *2. In *Prejean*, the Fifth Circuit did not merely hint at how it would rule—it stated unambiguously that vote dilution claims are not cognizable under the Fifteenth Amendment. *Id.*

Plaintiffs' citation to *Allen v. Milligan*, 599 U.S. 1 (2023) in their oral argument does not support their contention that the Fifteenth Amendment creates a separate cause of action for vote dilution. In *Milligan*, the Supreme Court considered an as-applied challenge to the constitutionality of § 2 under the Fifteenth Amendment. *Milligan*, 599 U.S. at 41-42. The *Milligan* Court held that § 2 did not exceed the remedial authority of Congress. *Id.* at 41. It did *not* hold that the Fifteenth Amendment provides a separate cause of action for vote dilution claims. *See id.* at 41-42.

Plaintiffs also verbally referenced *Fusilier v. Landry*, 963 F.3d 447 (5th Cir. 2020), framing that case as a progeny of *Prejean* and as an indicator that Plaintiffs' vote dilution claims may be

3

cognizable under the Fifteenth Amendment. But *Fusilier* did not address the question at issue here: whether the Fifteenth Amendment creates a cause of action for intentional vote dilution claims. *Id.* at 452. At most, an isolated sentence ancillary to *Fusilier*'s holding could be read to assume—without analysis—that the Fifteenth Amendment cognizes claims of intentional vote dilution. *See id.* at 463. But even under a reading of *Fusilier* most favorable to Plaintiffs and calculated to engender maximal conflict with *Prejean*, *Prejean* would still control. "[U]nder the rule of orderliness, to the extent that a more recent case contradicts an older case, the newer language has no effect." *Arnold v. U.S. Dep't of Interior*, 213 F.3d 193, 196 n.4 (5th Cir. 2000) (citing *Teague v. City of Flower Mound, Texas,* 179 F.3d 377, 383 (5th Cir.1999)).

In sum, *Prejean*'s binding circuit precedent was sufficient for the *Perez* panel to grant summary judgment for the State Defendants and dismiss each of Plaintiffs' Fifteenth Amendment vote dilution claims. There is no intervening caselaw that should persuade this Court to deviate from *Perez*'s well-trod and clearly marked path. In consequence, this Court should grant judgment as a matter of law for State Defendants on Plaintiffs' Fifteenth Amendment vote dilution claims.

### B. Plaintiffs' Intentional Discrimination Claims are Not Cognizable Under Section 2 of the VRA.

The Supreme Court recently "reiterated that § 2 turns on the presence of discriminatory effects, not discriminatory intent." *Allen v. Milligan*, 599 U.S. 1, 25 (2023) (citing *Chisom v. Roemer*, 501 U.S. 380, 403–404 (1991)). Claims of discriminatory effect are distinct from claims of discriminatory intent for good reason: proving effect does not prove intent. Since § 2 claims "turn on the presence of discriminatory effects, not discriminatory intent," *Milligan*, 599 U.S. at 25, it follows that § 2 does not provide two separate causes of action, one for intentional claims and one for effects claims, but one single cause of action for discriminatory effects. The plain text of § 2

4

supports this conclusion, as it prohibits conduct which "results in"—not conduct "intended to cause"—a denial or abridgment of the right to vote on account of race. 52 U.S.C. § 10301(a).

Plaintiffs' oral argument gestured to a "plurality" opinion in *Bartlett v. Strickland*, 556 U.S. 1 (2009), for the proposition that intent-based factors have some impact on the *Gingles* precondition analysis. *See* Day 13 AM Trial Trans. 131:22-132:3 ("In *Bartlett versus Strickland*, a plurality of the Supreme Court, in that plurality opinion, commented that if there was a showing of intentional discrimination, it would not be necessary for a vote dilution Plaintiff to establish the first *Gingles* pre-condition."). But *Strickland* did not "involve allegations of intentional and wrongful conduct." 556 U.S. at 20. The Court, therefore, explicitly stated that it "need not consider whether intentional discrimination affects the *Gingles* analysis . . . . Our holding does not apply to cases in which there is intentional discrimination against a racial minority." *Id.*

Additionally, State Defendants recognize that coalition claims under § 2 have been dismissed pursuant to the Fifth Circuit's decision in *Petteway v. Galveston County* 111 F.4th 596 (2024) and understand that the Plaintiffs who continue to pursue § 2 coalition claims do so only as a means of preserving future argument. Accordingly, these claims are not ones with which this Court must seriously engage. However, it is important to note here that at least one of Plaintiffs' § 2 intentional discrimination claims relates to a coalition district. *See* ECF 982-2. Such claims are not cognizable under *Milligan* or *Petteway* and similarly may be disposed of as a matter of law.

### C. Plaintiffs Failed to Sufficiently Disentangle Race and Politics as is Required to Carry their Burden on Fourteenth and Fifteenth Amendment Intentional Discrimination Claims.

"[A] party challenging a map's constitutionality must disentangle race and politics if it wishes to prove that the legislature was motivated by race as opposed to partisanship." *Alexander v. S.C. State Conf. of the NAACP*, 602 U.S. 1, 6 (2024). "This showing can be made through some

combination of direct and circumstantial evidence." *Id.* at 8 (citing *Cooper v. Harris*, 581 U.S. 285, 291 (2017). "Direct evidence often comes in the form of a relevant state actor's express acknowledgement that race played a role in the drawing of district lines." *Id.* Such evidence is not present here. Plaintiffs' own witnesses, experts, and counsel have admitted there is no direct evidence of racial discrimination in this case. *See e.g.* Trial Trans. Day 5 PM 95:4-95:17; Day 10 PM 116:18-117:1; Day 11 AM 24:15-25:9. Instead of admitting this shortcoming—as their witnesses have done—Plaintiffs have instead resorted to mislabeling their circumstantial evidence as direct evidence of racial intent. But Plaintiffs' assertions are not alchemy, and Plaintiffs cannot wish away their lack of direct evidence merely by repeatedly insisting that what is circumstantial is in fact direct.

"A circumstantial-evidence-only case is especially difficult when the State raises a partisan-gerrymandering defense" as the State has done here. *Id.* at 9. "To prevail, a plaintiff must 'disentangle race from politics' by proving 'that the former *drove* a district's lines." *Id.* (citing *Cooper*, 581 U.S. at 308). To do so, expert reports must "replicate the 'myriad considerations' that a legislature must balance as part of its redistricting efforts." *Id.* at 24 (citing *Allen v. Milligan*, 599 U.S. 1, 35 (2023). For example, expert reports that fail to account for traditional redistricting principles such as partisanship and core retention have no probative force with respect to racial gerrymandering claims. *Id.* at 33. Further, another type of evidence that can go a long way toward helping plaintiffs disentangle race and politics is a map showing how the State could have achieved its legitimate political objectives while producing the significantly greater racial balance. *Id.* at 34. "The evidentiary force of an alternative map, coupled with its easy availability, means that trial courts should draw an adverse inference from a plaintiff's failure to submit one." *Id.* at 35.

6

Here, Plaintiffs' circumstantial evidence is lacking. For example, Representative Anchia testified that the MALC demonstration maps did not consider traditional redistricting principles. Trial Trans. Day 11 AM 29:16-37:13.[1] Dr. Ansolabehere testified that he drew the Gonzales demonstration maps without considering the traditional redistricting principles of core preservation, avoiding incumbent pairing, or maintaining communities of interest.[2] Trial Trans. Day 6 AM 90:20-91:3. And most poignantly, Representative Moody acknowledged that the unique institutional concerns of Texans about the redrawing of their districts—such as the longstanding ties between legislators like Chairman Craddick and Representative Thompson to the communities that they have represented for decades on end—are lost on a map-drawing robot from Boston entirely unplugged from the corporeal reality of Texas politics. Trial Trans. Day 12 AM 126:1-127:14.

Likewise, Plaintiffs' assertion that the legislative redistricting process consistently disfavored minority legislators is insufficient to overcome the legislative presumption of good faith. *Alexander*, 602 U.S. at 10. First, it is insufficient because it is untrue. Plaintiffs' own legislative witnesses repeatedly presented evidence that they fully participated in the legislative process and in many cases were successful in their aims to modify their districts prior to final passage of the maps. Trial Trans. Day 11 AM 135: 3-135:22; Day 11 PM 66:2-69:17. That many of those legislators—having secured favorable boundaries for their own districts—then voted against final passage of the maps does nothing to diminish those members' successful participation in the

---

[1] References are to the Rough Drafts of the daily transcripts., hereinafter cited as "Trial Trans. ___."
[2] State Defendants understand that Gonzales Plaintiffs do not bring claims of intentional discrimination. But because a variety of Plaintiff groups have indicated an intent to rely on cross-designated Plaintiff experts, the insufficiency of Dr. Ansolabehere's maps is relevant to the extent that other Plaintiff groups intend to rely on his testimony in support of their intentional discrimination claims.

legislative redistricting process.

Second, as the Supreme Court warned in *Alexander*, this Court "must be wary of plaintiffs who seek to transform federal courts into 'weapons of political warfare' that will deliver victories that eluded them 'in the political arena.'" *Alexander*, 602 U.S. at 11 (citing *Cooper*, 581 U.S. at 335 (Alito, J., concurring in part). Even if it were true—and it is not—that sitting minority legislators disproportionately lost out in the "political arena" of redistricting, such losses should not impel this court to short-circuit the democratic political process by granting Plaintiffs' claims for judicial intervention.

Finally, the presumption of legislative good faith "directs district courts to draw the inference that cuts in the legislature's favor when confronted with evidence that could plausibly support multiple conclusions." *Id.* at 10 (citing *Abbott v. Perez*, 585 U.S. 579, 610-12 (2018)). This approach ensures that should the Court insert itself into the essentially political process of redistricting, it is because "race for its own sake, and not other districting principles, was the legislature's dominant and controlling rationale in drawing its district lines." *Id.* (citing *Miller v. Johnson*, 515 U.S. 900, 913 (1995)).

## Conclusion

For these reasons, State Defendants respectfully request this Court grant judgment as a matter of law for State Defendants on Plaintiffs' claims for vote dilution under the Fifteenth Amendment, intentional discrimination claims under § 2, and intentional discrimination claims under the Fourteenth and Fifteenth Amendments.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

RYAN D. WALTERS
Deputy Attorney General for Legal Strategy

/s/Ali M. Thorburn
RYAN G. KERCHER
Chief, Special Litigation Division
Texas Bar No. 24060998
ryan.kercher@oag.texas.gov

KATHLEEN T. HUNKER
Deputy Chief, Special Litigation Division
Texas Bar No. 24118415
kathleen.hunker@oag.texas.gov

WILLIAM D. WASSDORF
Associate Deputy AG for Civil Litigation
Texas Bar No. 24103022
william.wassdorf@oag.texas.gov

DAVID BRYANT
Senior Special Counsel
Texas Bar No. 03281500
david.bryant@oag.texas.gov

ZACHARY L. RHINES
Special Counsel
Texas Bar No. 24116957
zachary.rhines@oag.texas.gov

MUNERA AL-FUHAID
Special Counsel
Texas Bar No. 24094501
munera.al-fuhaid@oag.texas.gov

ZACHARY W. BERG
Special Counsel
Texas Bar No. 24107706
zachary.berg@oag.texas.gov

ALI M. THORBURN
Assistant Attorney General
Texas Bar No. 24125064
ali.thorburn@oag.texas.gov

KYLE S. TEBO
Special Counsel
Texas Bar No. 24137691
kyle.tebo@oag.texas.gov

MARK A. CSOROS
Assistant Attorney General
Texas Bar No. 24142814
mark.csoros@oag.texas.gov

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
Special Litigation Division
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Phone: (512) 936-1700
Fax: (512) 457-4410
COUNSEL FOR STATE DEFENDANTS

## CERTIFICATE OF SERVICE

I certify that on June 10, 2025, a true and accurate copy of the foregoing document was filed and served electronically (via CM/ECF).

/s/ Ali M. Thorburn
ALI M. THORBURN
Assistant Attorney General