# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.* <br><br> *Plaintiffs,* <br> V. <br><br> GREG ABBOTT, *et al.*, <br><br> *Defendants.* | § § § § § § § § § § | Case No. 3:21-cv-00259 <br> [Lead Case] |
| TEXAS STATE CONFERENCE OF THE NAACP, <br><br> *Plaintiff,* <br> V. <br><br> GREG ABBOTT, *et al.*, <br><br> *Defendants.* | § § § § § § § § § § § § | Case No. 1:21-cv-01006 <br> [Consolidated Case] |

**PLAINTIFF TEXAS NAACP'S RESPONSE TO STATE DEFENDANTS' MOTION TO STRIKE THE TESTIMONY OF DR. MOON DUCHIN**

On direct examination, Plaintiff Texas NAACP's expert, Dr. Moon Duchin, testified truthfully that, as part of her rebuttal report, she conducted a sub-analysis of her original 100,000-map ensembles to "restrict to the maps that are as partisan as the [Enacted Plans]." 5/31/25 Tr. at 54:16-56:3. Defendants do not dispute, nor could they, that the results of and data underlying that sub-analysis were produced in this case. *See id.* at 53:21-54:11; PL_TXNAACP 138 at 14. On cross-examination, Defendants asked whether Dr. Duchin had, as part of the conclusions in her report, conducted an analysis of a 100,000-map ensemble comprised entirely of partisan maps. Dr. Duchin, again, testified truthfully that she had not, and that the conclusions in her report were based on her analysis of the sub-set of the original 100,000-map ensemble. *See* 5/31/25 Tr. at 103:24-104:14.

But rather than stop there, Defendants inexplicably asked Dr. Duchin whether, completely untethered to her conclusions and testimony in this case, she ***ever*** looked at a 100,000-map ensemble comprised entirely of partisan maps. *Id*. at 107:24-108:3. Dr. Duchin answered truthfully and succinctly that she had looked at such a 100,000-partisan-map ensemble following the submission of her reports. *Id*. When Defendants further pressed as to whether this analysis was included in her report, Dr. Duchin unequivocally testified that it was not, but that the findings of that subsequent analysis did not alter the conclusions in the report. *Id*. at 108:4-8.

Defendants' suggestion that Dr. Duchin's testimony regarding this subsequent analysis are undisclosed, "new conclusions" (Mot. at 1), is patently false. Dr. Duchin testified that this subsequent analysis was ***not*** undertaken as part of her report and is ***not*** the basis for the conclusions in her report. 5/31/25 Tr. at 112:6-12. She further testified that she stands by the conclusions in her report based on the analysis contained in the report and reflected in the data that was indisputably disclosed to Defendants. *Id.*

1

That Defendants asked about analyses done by Dr. Duchin that had no bearing on her conclusions in this case is a problem of their own making. Having opened and walked through this door, Defendants now ask the Court to not only disregard Dr. Duchin's truthful testimony—elicited as the result of their open-ended questioning—but to draw an adverse inference that her subsequent analysis, which, again, had no bearing on her conclusions in this case, yielded results that it simply did not. In this way, it is Defendants—not Texas NAACP—that seek impermissibly to bolster the expert testimony in this case by injecting false results from an analysis that Defendants' own expert could have performed, but failed to do.

Defendants are free to argue, and Texas NAACP readily concedes, that Dr. Duchin did not analyze such an ensemble as part of her opinions in this case. Dr. Duchin testified to that fact. Thus, there is nothing more for this Court to do.

**LEGAL STANDARD**

A motion to exclude expert testimony under Rule 37(c)(1) is governed by a two-step inquiry. *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563 (5th Cir. 2006); *Mission Toxicology, LLC v. UnitedHealthcare Ins. Co.*, 499 F. Supp. 3d 338, 344 (W.D. Tex. 2020). First, the court must determine whether a party has failed to comply with the disclosure obligations of Rule 26. *Id*. The moving party bears the burden of proving the evidence was required to be disclosed under Rule 26. *See Mission Toxicology, LLC v. UnitedHealthcare Insurance Co.*, 499 F.Supp 338, 344 (W.D. Tex. Nov. 4, 2020). Rule 26 requires a testifying expert witness to include in their report a "complete statement of all opinions the witness will express and the basis and reasons for them; the facts or data considered by the witness in forming them; [and] any exhibits that will be used to summarize or support them." FED. R. CIV. P. 26(a)(2)(B).

Second, if the court concludes that evidence that was required to be produced under Rule 26 was withheld, the court must then determine whether the failure to disclose was "substantially justified" or "harmless." *Id*.

## FACTUAL BACKGROUND

Texas NAACP retained Dr. Duchin as an expert in this case and, pursuant that retention, in 2022, Dr. Duchin produced a series of reports. Those reports were entered into evidence in this case without objection. *See* PL_TXNAACP 136 (5/23/22 Corrected Report); PL_TXNAACP 137 (6/20/22 Supplemental Report); PL_TXNAACP 138 (8/1/22 Rebuttal Report). In her initial report, produced in May 2022, Dr. Duchin conducted an analysis in which she generated a series of "ensembles," comprised of 100,000 alternative plans for each of the "clusters" of districts underlying Texas NAACP's claims. PL_TXNAACP 136 at 35; 5/31/25 Tr. at 36:25-37:9. In generating these ensembles, Dr. Duchin did not consider partisan or racial data. *See* 5/31/25 Tr. at 53:16-20. Based on comparing the minority CVAP of the Enacted Plans to the minority CVAP in each of the 100,000-map ensembles, Dr. Duchin concluded that there were "strong indicators that racial considerations predominated over traditional redistricting principles, to the detriment of electoral opportunity" for minority voters in Texas. PL_TXNAACP 136 at 62. It is undisputed that the data underlying Dr. Duchin's findings, including all data to replicate these ensembles, was provided to Defendants. *See* 5/31/25 Tr. at 54:12-15.

On July 23, 2022, in response to Dr. Duchin's initial report, Defendants' expert, Dr. Sean Trende, submitted his initial report. In that report, Dr. Trende opined that Dr. Duchin's 100,000-map ensembles did not consider partisanship, describing it as "a bug, rather than a feature." Defendants' Exhibit 8 at 41. But rather than conduct his own ensemble analysis that *did* consider partisanship (which Dr. Trende concedes was possible), Dr. Trende instead proceeded to replicate

3

Dr. Duchin's race- and party-blind ensemble analysis using a different coding mechanism. 6/9/25 Tr. at 104:6-104:13. At no time did Dr. Trende attempt to conduct any independent analysis of ensembles consisting entirely of partisan maps, despite acknowledging that he would have been able to do so. *Id.* at 104:14-105:5.

In response to Dr. Trende's claim that she failed to address the role of partisanship in the Legislature's line-drawing decisions, Dr. Duchin submitted a rebuttal report on August 1, 2022 to address whether the "extreme" results produced by the party-blind ensembles analyzed in her initial report could be explained by the Legislature's "pursui[t]of Republican advantage." PL_TXNAACP 138 at 13. To do this, Dr. Duchin analyzed the original full set of her existing race- and partisan- blind "ensembles and restricted them to *only* those plans that have at least as many districts where Trump beats Biden" or "where at least as many districts were won by Republicans across the 19 general contests overall." *Id.* at 14. Based on the results of that analysis, Dr. Duchin determined that "[t]he state's plan is an extreme outlier in its racial statistics, even controlling for partisanship" and that "[i]n no case does the mere focus on partisan advantage substantially mitigate the extreme racial statistics in the state's [Enacted Plans]." *Id.*; *see also* Texas NAACP's Response to Defendants' JMOL (Dkt. 1078) at 7-10 (discussing the specific findings of Dr. Duchin's rebuttal report analysis). It is undisputed that the results of Dr. Duchin's rebuttal report analysis were disclosed in that report, and that the data underlying that analysis had already been made available to Defendants. *See* 5/31/25 Tr. at 54:12-15.

At trial, Dr. Duchin testified regarding her ensemble method, the analysis she performed, and the opinions she formed as a result of that analysis, as reflected in the three reports produced in this case. *See* 5/30/25 Tr. at 133:2-12; 148:19-149:23. On direct examination Dr. Duchin explained that partisanship was not considered when generating the 100,000-map ensembles used

4

across her reports and that she controlled for partisanship in the analysis in her rebuttal report by using a sub-set of thousands of maps from her original 100,000-map ensembles. *See* 5/31/25 Tr. at 54:16-56:3. Specifically, Dr. Duchin explained that she was able to "[t]ake the original ensembles and just restrict to the maps that are as partisan as the [Enacted Plans]" by considering only those which produced "at least as Trump-favoring" based on the 2020 Trump/Biden contest, or "Republican-favoring" based on the outcomes of 19 general elections. *Id*. Dr. Duchin testified on direct that all of the materials necessary for Defendants to replicate that analysis were provided to Defendants. *Id*. at 54:12-15. While Dr. Duchin acknowledged that creating entirely new 100,000-map ensembles using an algorithm that favored partisanship was possible, she testified that "she didn't have to do that here" because she was able to use a sub-set of partisan maps from the original ensembles she generated. *Id*. at 54:16-56:3.

Dr. Duchin then testified to her findings as reflected in her report, concluding that the results of her partisan sub-analysis "were just as extreme, and sometimes even more extreme," than the results of her original partisan-blind analysis. *Id*. at 56:18-57:17. Dr. Duchin testified that there had been no changes to her conclusions since the production of those reports. 5/30/25 Tr. at 150:6-20; *see also* 5/31/25 Tr. at 113:7-12.

On cross-examination, Defendants questioned Dr. Duchin as to whether, in arriving at the conclusion in her rebuttal report that partisanship did not account for the results of her analysis, she had undertaken an analysis of a 100,000-map ensemble comprised entirely of partisan maps. *See* 5/31/25 Tr. at 103:24-104:14. As on direct, Dr. Duchin testified that she had not undertaken that analysis, and that the conclusions in her rebuttal report were based on her analysis of the sub-set of the original 100,000-map ensemble. *See id*. Defendants, however, then posed the broader question to Dr. Duchin whether, without limitation to the findings in her report, she

5

had *ever* gone back to conduct an analysis of 100,000-partisan-map ensembles. Dr. Duchin, under oath, answered truthfully:

> Q. . . . You never went back to the robot and said, please draw 100,000 partisan maps?
> A: I did try that, actually.
> Q. You did try that?
> A. Yes.

*Id*. at 107:23-108:3. Dr. Duchin then explained during cross and redirect examination that this separate partisan analysis was not done "as part of [her] report," but "after the fact" as a "sensitivity analysis" and "recent robustness check" subsequent to the Supreme Court's decisions in *Milligan* and *Alexander*, and that they did not affect her conclusions in her reports. *Id*. at 108:9-13, 111:15-20, 112:6-128, 117:7-118:9, 119:15-24. Indeed, Dr. Duchin reiterated that what was in her report was "complete" and that she" stood by [her] conclusions" in those reports. *Id*. at 112:6-12.

## ARGUMENT

Defendants claim that Dr. Duchin's testimony, elicited by Defendants themselves, concerning an analysis of partisanship that she conducted after her reports were submitted, and that thus had no bearing on her opinions in this case, should nevertheless be stricken under Rule 37(c)(1). As Defendants would have it, Texas NAACP was obligated under Rule 26 to disclose Dr. Duchin's analysis of a different partisan ensemble that was not considered or even performed at the time she proffered the reports containing her opinions in this case and that did not affect—and if anything, supported—her conclusions. That is not the law.

As Dr. Duchin repeatedly testified, her opinions are based on the analyses contained in the reports she produced in this case, and those opinions were not affected by any subsequent confirmatory analysis she conducted after producing those reports. If Defendants had exercised appropriate care in limiting their cross-examination to the scope of Dr. Duchin's opinions and the

6

analysis she undertook in this case, Dr. Duchin would never have testified that a subsequent analysis of a purely partisan ensemble confirmed her conclusions. Dr. Duchin's truthful testimony in that regard should not be stricken.

Moreover, Defendants' request for an adverse inference that any subsequent analysis performed by Dr. Duchin did "not support her findings" is entirely unwarranted and would introduce false and extraneous evidence into these proceedings. Dr. Duchin has repeatedly stated that those subsequent analyses were not considered in forming her opinions in this case, that her reports are complete, and that she stands by the conclusions in her report. An adverse inference would have the absurd result of bolstering ***Defendants'*** expert's opinions by falsely implying that an analysis that was immaterial to Dr. Duchin's opinion in this case revealed something that it simply did not. All of the data underlying the analyses that Dr. Duchin relied on in forming her opinions were produced to Defendants. If Defendants wanted to introduce evidence that a partisan-only ensemble analysis would have yielded a different result, they could have conducted that analysis with the data Dr. Duchin provided or their own data. That Dr. Trende did not even attempt such an analysis is telling. At bottom, Defendants should not be permitted to invent the findings of an analysis that no expert relied on in this case.

**A.      Dr. Duchin's later partisan ensemble analysis did not need to be disclosed under Rule 26 (a)(2)(B)(ii).**

The plain language of Rule 26 makes clear that Dr. Duchin's partisan ensemble analysis—completed after she formed her opinion and drafted her report—did not need to be disclosed. Rule 26(a)(2)(B)(ii) requires an expert witness to disclose "the facts or data considered by the witness in forming [their opinions]." While the requirements of Rule 26(a)(2)(B)(ii) are to be interpreted broadly, the rule only requires that experts produce materials they actually considered in forming their opinions. *See D'Souza v. Marmaxx Operating Corp.*, 2017 WL 1322243 at *7 (W.D. Tex.,

7

April 7, 2017) (declining to compel discovery of materials under Rule 26(a)(2)(B)(ii) because the plaintiff had "failed to show that the requested publications contain any facts or data and that [the expert] considered them in forming the opinions"). In fact, courts have excluded expert testimony when an expert piled on extra information not actually considered in forming his or her opinion because such "over-disclosure" makes it difficult for the opposing party to accurately determine what information the expert actually considered. *See SB IP Holdings, LLC v. Vivint, Inc.*, 2023 WL 6601415, **9–10 (E.D. Tex. 2023).

Here, Dr. Duchin did not consider her new partisan ensembles in forming any of the opinions contained in any of her reports. In fact, as Dr. Duchin testified, she did not even generate the partisan ensemble until after she had submitted her reports in this case. 5/31/25 Tr. at 112:6-18. And they in no way altered the opinions she expressed. *Id*. at. 107:25-108:8. Thus, it is plainly beyond the scope of disclosure required under Rule 26(a)(2)(B)(ii).

A standard that would require experts to disclose checks or tests of their findings ***after*** those findings were already disclosed and that do not alter the expert's opinions would create a slippery slope to needless supplemental disclosures and discovery fights. Information is material if it affects the witness's opinions. This information did not do so, and Dr. Duchin did not offer it in direct testimony or to bolster any opinion in this case, but rather in truthful response to a question posed by Defendants.

**B.     Dr. Duchin's partisan ensemble analysis did not give rise to a duty to supplement under Rule 26(e).**

Rule 26(e)(1) requires any party "who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission" to supplement this disclosure if they learn the disclosure is "incomplete or incorrect" in some material respect. FED. R. CIV. P. 26(e)(1). This requires that experts disclose "***changes***" in the opinions expressed

8

by the expert in their report or at a deposition." *See* Advisory Committee notes, 1993 Amendment to Rule 26(e) (emphasis added). Rule 26(e)(2) further requires supplementation where "parties learn that any information in their initial expert disclosures is inaccurate or incomplete." *Koenig v. Beckmans*, 2018 WL 297676 at *3 (W.D. Tex., Jan. 4, 2018) (citing *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 371 (5th Cir. 2016)).

None of these provisions apply here. As Dr. Duchin repeatedly testified, her subsequent partisan analysis did not change her opinions. Nor did her partisan ensemble analysis render any of her prior disclosures incomplete or incorrect. Her initial and supplement reports still contain a complete statement of all the opinions she expressed and the basis for them. *See* FED. R. CIV. P. 26(a)(2)(B)(i). And they still contain all the "facts or data considered by the witness in forming them." FED. R. CIV. P. 26(a)(2)(B)(ii). That there is additional information that Dr. Duchin did not base her opinions on, did not consider when forming them, and that Texas NAACP did not affirmatively offer as evidence to bolster her testimony, but instead was elicited by Defendants and ultimately was unfavorable to them, does not mean Texas NAACP was required to disclose it.

**C.    The Court should not draw any adverse inference.**

The Court should not draw any adverse inference because Dr. Duchin's analysis was plainly not required to be disclosed under Rule 26. Thus, any adverse inference in this case would be a remedy in search of a wrong.

Moreover, such an inference would introduce irrelevant and false evidence into this case. Dr. Duchin testified under oath that the subsequent partisanship analysis did not affect her findings and were not the basis of her opinions in this case. Thus, adversely inferring that this analysis did not support her conclusions would give significantly greater weight than that analysis ever had in Dr. Duchin's opinions in the first place. And it would also be contrary to the record as Dr. Duchin

testified that it ***did*** support her conclusions, though it did not form the basis for those conclusions. 5/31/25 Tr. at. 107:23-108:8. If Defendants wanted to introduce evidence that a partisanship-only ensemble analysis would have been inconsistent with Dr. Duchin's opinions in this case, they were free to have their expert do so. Dr. Trende first suggested in his initial report back in 2022, that a partisan ensemble would be more probative of racial intent. *See* Defendants' Exhibit 8 at 41. Dr. Trende acknowledged at trial that he could have performed this analysis, but did not do so. *See* 6/9/25 Tr. at 104:14-105:5. Defendants should not be permitted to bolster their expert's testimony by having this Court infer facts that are not true and that are not the subject or basis of either Plaintiffs' or Defendants' experts in this case.

## CONCLUSION

The disclosure requirements of Rule 26 are intended to "prevent trial by ambush." *Olivarez v. GEO Group, Inc.*, 844 F.3d 200, 205 (5th Cir. 2016). Here, Texas NAACP did not seek to introduce testimony that Dr. Duchin had conducted a partisan ensemble analysis. Dr. Duchin made clear that she did not consider any such analysis in forming her opinions or drafting her report. Defendants could have simply pointed to this omission—and indeed, they did. Instead, Defendants opened the door by asking whether Dr. Duchin had *ever* conducted a partisan ensemble analysis and she answered truthfully. That is not "trial by ambush," but a lack of discipline in failing to limit cross-examination to an expert's opinions in the case at issue.

Accordingly, for all the foregoing reasons this Court should DENY State Defendants' Motion to Strike in its entirety.

Dated: June 10, 2025

                              Respectfully submitted,

*/s/ Lindsey B. Cohan*
Lindsey B. Cohan
Texas Bar No. 24083903
DECHERT LLP
515 Congress Avenue, Suite 1400
Austin, TX 78701
(512) 394-3000
*lindsey.cohan@dechert.com*

David Rollins-Boyd*
Jennifer Nwachukwu*
Jeremy Lewis*
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street, Suite 900
Washington, DC 20005
(202) 662-8600
*drollins-boyd@lawyerscommittee.org*
*jnwachukwu@lawyerscommittee.org*
*jlewis@lawyerscommittee.org*

Neil Steiner*
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3822
*neil.steiner@dechert.com*

Robert Notzon
Texas Bar No. 00797934
THE LAW OFFICE OF ROBERT NOTZON
1502 West Avenue
Austin, Texas 78701
(512) 474-7563
*robert@notzonlaw.com*

Carroll Rhodes*
LAW OFFICES OF CARROLL RHODES
P.O. Box 588
Hazlehurst, MS 39083

Gary Bledsoe
Texas Bar No. 02476500
THE BLEDSOE LAW FIRM PLLC
6633 Highway 290 East #208
Austin, Texas 78723-1157
(512) 322-9992
*gbledsoe@thebledsoelawfirm.com*
*Attorney only as to Texas NAACP's claims related to Texas state senate and state house plans*

Anthony P. Ashton*
NAACP OFFICE OF THE GENERAL COUNSEL
4805 Mount Hope Drive
Baltimore, MD 21215
(410) 580-577
*aashton@naacpnet.org*

Janette M. Louard
NAACP OFFICE OF THE GENERAL COUNSEL
4805 Mount Hope Drive
Baltimore, MD 21215
(410) 580-577
*jlouard@naacpnet.org*
*Attorneys appearing of counsel*

*Admitted *pro hac vice*.

*ATTORNEYS FOR THE TEXAS STATE CONFERENCE OF NAACP*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served on counsel of record via the Court's ECF system on June 10, 2025.

>   */s/ Lindsey B. Cohan*
>   Lindsey B. Cohan
>   *Counsel for Plaintiff Texas NAACP*