# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,<br>*Plaintiffs,*<br><br>EDDIE BERNICE JOHNSON, *et al.*,<br>*Plaintiff-Intervenors,*<br><br>v.<br><br>GREG ABBOTT, *et al.*,<br>*Defendants.* | EP-21-cv-00259-DCG-JES-JVB<br>[Lead Case]<br><br>&<br><br>All Consolidated Cases |

## STATE DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE THE TESTIMONY OF MOON DUCHIN

State Defendants respectfully file this Reply in Support of Motion to Strike the Testimony of Moon Duchin, ECF No. 1068, addressing arguments raised by NAACP Plaintiffs, ECF No. 1088, and Plaintiff-Intervenors, ECF No. 1089, in their respective responses.

1. **Dr. Duchin broached her partisan sensitivity analysis on her own initiative, resulting in an unfair surprise to State Defendants at trial.**

State Defendants were unfairly surprised by Dr. Duchin's unsolicited declaration that she had performed sensitivity checks for her expert analysis in this case that involved creating partisan ensembles. Contrary to NAACP Plaintiffs' assertion, State Defendants' counsel never "open[ed] the door" to this testimony; instead, Dr. Duchin volunteered it midway through her answer to an unrelated question. The following exchange captures the moment Dr. Duchin inserts her partisan sensitivity analysis into the record:

> Q. If we're trying to figure out what the legislature intended to do when it was drawing the map, might it not be useful to look at the information that the legislators had in front of them as they drew the maps?
>
> A. Good. So just to clarify, I think what is important about my sort of data scientific techniques is that I'm not trying to read minds, and I'm not trying to simulate the judgment.

1

> I'm creating a kind of neutral baseline to compare against. And in this case, I'm subsetting to have certain attributes.
>
> *It's maybe worth mentioning that as part of that sensitivity analysis we talked about earlier, I did try a version of this where the algorithm favors partisanship in addition to what I show here, which is a subset, and the results are consistent.*
>
> And I did that with numerous attributes. I tried it this way, I tried it that way, and the results are consistent.

ECF No. 1068-1 at 107:5–22 (emphasis added).

Dr. Duchin's surprise reveal is not remotely responsive to the immediate question put to her—she had only been asked whether information legislators had before them might be germane to the Legislature's intent. And importantly, the Legislature never had a partisan iteration of her model.

NAACP starts the clock later and pretends that discussion of Dr. Duchin's partisan analysis began here:

> Q. . . . You never went back to the robot and said, please draw 100,000 partisan maps?
>
> A: I did try that, actually.
>
> Q. You did try that?
>
> A. Yes.

*See* ECF No. 1088 at 7 (quoting ECF No. 1068-1 at 107:23–108:3). This dialogue immediately follows Dr. Duchin's disclosure of her partisan analysis. NAACP mischaracterizes this exchange as "[d]efendants inexplicably ask[ing] Dr. Duchin whether, completely untethered to her conclusions and testimony in this case, she *ever* looked at a 100,000-map ensemble comprised entirely of partisan maps." *Id*. at 2. But Defendants' question is merely a follow-up to Dr. Duchin's surprising revelation that she had performed as-then undisclosed partisan sensitivity analysis.

That revelation was all the more surprising because Dr. Duchin previously testified that she had not created partisan ensembles:

> Q. And you said this, I think, on direct. You did not go back to your robot and say, okay, robot, this time, I want for you to draw 100,000 districts taking into account partisan information, right?
>
> A: Right.

ECF No. 1068-1 at 104:5–9; *see also id.* at 54:16–56:3. In light of that testimony, Defendants' Counsel reasonably expected that Dr. Duchin would clarify that she had not supplemented her analysis with a partisan iteration. More importantly, because the basis for Counsel's question was an unprompted declaration by the witness, Defendants cannot be blamed for eliciting information about Dr. Duchin's partisan analysis. In short, Dr. Duchin's testimony was freely offered and served to both bolster the results of her analysis and surprise State Defendants, leaving them with no recourse.

2. **Because the purpose of sensitivity analysis is to confirm the reliability of ensembles, Dr. Duchin's partisan sensitivity analysis is part of the basis of her opinions.**

Under Rule 26, expert disclosures must be "detailed and complete," to the point of "stating the testimony that will be presented during direct examination and the reasons therefor." *Honey-Love v. United States*, 664 Fed.Appx. 358, 361 (5th Cir. 2016) (quoting Fed. R. Civ. P. 26 Advisory Committee's Notes (1993 Amendments)).

Dr. Duchin's undisclosed analysis was intended to bolster, or, at the very last confirm, her opinions. By describing it as a "robustness check" and "sensitivity analysis" Dr. Duchin made clear that the purpose of her partisan ensembles was to substantiate the reliability of the ensembles in her Report. Dr. Duchin explained that the point of a sensitivity analysis was to verify the reliability of her results. ECF No. 1068-1 at 40:8–12. And on the stand, Dr. Duchin never denied that she performed her partisan sensitivity analysis to verify the reliability of the ensemble analysis in her report. Quite the reverse, she stated that her partisan analysis was "a version of this [referring to her ensemble analysis] where the algorithm favors partisanship." ECF 1068-1 at 107:17–18. There is no way to understand her remarks other than describing additional sensitivity analysis that she conducted to test or refine the conclusions in her report.

NAACP Plaintiffs also argue that Dr. Duchin's assurances that her partisan analysis did not change her opinions releases her from any duty to disclose under Rule 26(e). However, that Rule entitles Defendants to a "complete" disclosure of all information forming the basis of an expert's opinion. Rule 26(e)(2) calls for supplementation when "parties learn that any information

in their initial expert disclosures is inaccurate or incomplete." *Koenig v. Beekmans*, No. 5-15-cv-00822-RCL-RBF, 2018 WL 297616 at *3 (W.D. Tex., Jan. 4, 2018) (citation omitted). Plaintiff's disclosures for Dr. Duchin became incomplete when she undertook additional work meant to verify the opinions in her reports.

Dr. Duchin's statements that the partisan analysis she conducted confirmed her conclusions makes the instant Motion to Strike all the more necessary. By alleging the results were confirmatory, Dr. Duchin has entered fresh evidence for the reliability of her ensembles into the record. Allowing it to remain would be deeply unfair to Defendants.

The purpose of Rule 26 is to prevent ambush at trial by surprise testimony, and when this happens Rule 37(c) provides that it may not be "used as evidence . . . at a trial." Fed. R. Civ. P. 37(c)(1); *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 372 (5th Cir. 2016). Having been waylaid by hidden evidence, Defendants should be granted that traditional remedy.

### 3. An adverse inference in favor of State Defendants is appropriate.

Despite Plaintiffs' insistence, an adverse inference is an appropriate remedy here. At the outset, Plaintiffs cite no caselaw rebutting State Defendants' request for an adverse inference. And indeed, they cannot. Adverse inferences are generally utilized, in the context of Rule 37, when a party acts in bad faith and unduly prejudices the opposing party. *See Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015). And while much of the caselaw revolving around adverse inferences revolves around spoliation, *see id.*, it is nonetheless appropriate here. Plaintiffs, or at the very least Dr. Duchin, have acted in bad faith by failing to disclose this material information until Dr. Duchin volunteered it on the witness stand at trial. Neither State Defendants nor their experts have had the opportunity to challenge or otherwise examine Dr. Duchin's assertions, leaving them at a material disadvantage. Dr. Duchin's reliance on this information bolsters her testimony without any recourse on the part of State Defendants. Such an omission, revealed as a surprise at trial, should be treated as one done in bad faith. The testimony should be struck, and the Court should draw an adverse inference in relation to the relevant portions of Dr. Duchin's testimony.

Date: June 10, 2025

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

RYAN D. WALTERS
Deputy Attorney General for Legal Strategy

RYAN G. KERCHER
Chief, Special Litigation Division
Texas Bar No. 24060998
ryan.kercher@oag.texas.gov

KATHLEEN T. HUNKER
Deputy Chief, Special Litigation Division
Texas Bar No. 24118415
kathleen.hunker@oag.texas.gov

WILLIAM D. WASSDORF
Associate Deputy AG for Civil Litigation
Texas Bar No. 24103022
william.wassdorf@oag.texas.gov

DAVID BRYANT
Senior Special Counsel
Texas Bar No. 03281500
david.bryant@oag.texas.gov

/s/Zachary L. Rhines
ZACHARY L. RHINES
Special Counsel
Texas Bar No. 24116957
zachary.rhines@oag.texas.gov

Respectfully submitted,

MUNERA AL-FUHAID
Special Counsel
Texas Bar No. 24094501
munera.al-fuhaid@oag.texas.gov

ZACHARY W. BERG
Special Counsel
Texas Bar No. 24107706
zachary.berg@oag.texas.gov

ALI M. THORBURN
Assistant Attorney General
Texas Bar No. 24125064
ali.thorburn@oag.texas.gov

KYLE S. TEBO
Special Counsel
Texas Bar No. 24137691
kyle.tebo@oag.texas.gov

MARK A. CSOROS
Assistant Attorney General
Texas Bar No. 24142814
mark.csoros@oag.texas.gov

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
Special Litigation Division
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Phone: (512) 936-1700
Fax: (512) 457-4410
COUNSEL FOR STATE DEFENDANTS

2

## CERTIFICATE OF SERVICE

I certify that on June 10, 2025, a true and accurate copy of the foregoing document was filed and served electronically (via CM/ECF).

                                                                */s/ Zachary L. Rhines*
                                                                ZACHARY L. RHINES
                                                                Chief, Special Litigation Division