# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,<br>*Plaintiffs,*<br><br>ALEXANDER GREEN AND JASMINE CROCKETT,<br>*Plaintiff-Intervenors,*<br><br>v.<br><br>GREG ABBOTT, *et al.*,<br>*Defendants.* | EP-21-cv-00259-DCG-JES-JVB<br>[Lead Case]<br><br>&<br><br>All Consolidated Cases |

### STATE DEFENDANTS' POST-TRIAL BRIEFING ON
### PLAINTIFFS' LATE-DISCLOSED AND LATE-CREATED EXHIBITS

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

RYAN D. WALTERS
Deputy Attorney General for Legal Strategy

RYAN G. KERCHER
Chief, Special Litigation Division

KATHLEEN T. HUNKER
Deputy Chief, Special Litigation Division

WILLIAM D. WASSDORF
Deputy Chief, General Litigation Division

DAVID BRYANT
Senior Special Counsel

ZACHARY L. RHINES
Special Counsel

MUNERA AL-FUHAID
Special Counsel

ZACHARY W. BERG
Special Counsel

ALI M. THORBURN
Assistant Attorney General

KYLE S. TEBO
Special Counsel

MARK A. CSOROS
Assistant Attorney General

OFFICE OF THE
ATTORNEY GENERAL OF TEXAS
Special Litigation Division
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Phone: (512) 936-1700
Fax: (512) 457-4410
COUNSEL FOR STATE DEFENDANTS

## TABLE OF CONTENTS

Page

Introduction ................................................................................................................................... 1

Background ................................................................................................................................... 1

Argument ....................................................................................................................................... 3

    I.   Admitting late-created TLC documents into evidence is unduly prejudicial to State Defendants. ........................................................................................................... 3

        A.  LULAC Exhibits ................................................................................................. 4

        B.  Brooks Exhibits .................................................................................................. 5

        C.  MALC Exhibits .................................................................................................. 7

    II.  Plaintiffs should have known they needed the documents and could have obtained the documents prior to the close of discovery .................................................................. 8

Conclusion .................................................................................................................................... 9

Certificate of Service .................................................................................................................. 10

**INTRODUCTION**

Since the Court issued a trial setting earlier this year, State Defendants have worked cooperatively with Plaintiffs to minimize exhibit-related friction and maximize efficiency with agreed offers of admission. On the whole, Plaintiffs have been exceptionally obliging and have exemplified what it means to litigate as collegial opponents dedicated to productive conflict resolution. That collaborative framework has thus far produced excellent results, and State Defendants have every hope that this pattern of collegiality will continue unbroken. Nevertheless, near the eve of the close of evidence, Defendants received more than 600 exhibits from Plaintiffs, many of which were created after the close of discovery and, indeed, during the course of trial itself. The late receipt of these exhibits, the creation of these exhibits after the close of discovery and during trial, and the designation of these documents as trial exhibits after Plaintiffs had called their last trial witness necessitate Court intervention. Accordingly, State Defendants file this post-trial briefing on Plaintiffs' Late-Disclosed and Late-Created Exhibits ("Bucket Two Exhibits") at the Court's request and would respectfully show the Court as follows:

**BACKGROUND**

Both before and during trial, State Defendants worked with Plaintiffs to refine exhibit lists, identify new exhibits, and properly curate the Joint Exhibit List and the exhibit lists of each party. For example, at the close of discovery on May 3, 2025, State Defendants' initial exhibit list contained 717 exhibits. As of the start of trial, State Defendants had whittled that list down to 525 exhibits. Over the course of trial, working in consultation with Plaintiffs, State Defendants added 44 exhibits to State Defendants' Exhibit List, bringing their total to 569 exhibits. This pattern was common amongst all parties. For example, Brooks Plaintiffs listed 237 exhibits at the close of discovery and ended trial with 252; Intervenor-Plaintiffs listed 33 exhibits at the close of discovery and ended trial with 59; LULAC Plaintiffs listed 35 exhibits at the close of discovery and ended trial with 828.

Before adding documents to exhibit lists, parties came to general agreements outlining which types of documents could be offered without objection. State Defendants made clear that,

1

as a general rule, publicly available documents from the Texas Legislative Council may be offered without objection. However, Defendants clarified that they would object to the admission of TLC documents created after the close of discovery—particularly those documents custom-made upon the special request of Plaintiffs and not disclosed until after the completion of a Plaintiff group's case in chief—as the entry of those documents into evidence would be prejudicial to State Defendants. Such late and insufficient notice precluded Defendants' opportunity to depose or cross-examine Plaintiff witnesses and experts on the substance of those documents. It also prevented Defendants' own experts from incorporating this information into their own analysis and testimony.

State Defendants were nevertheless able to coordinate with LULAC Plaintiffs as LULAC Plaintiffs expanded their trial exhibit list from 35 to 194 over the course of trial. Yet, days before the close of evidence, State Defendants received hundreds of proposed exhibits from Plaintiffs. On the morning of June 6, Defendants received LULAC Exhibits 195–274. The evening of June 6, Defendants received LULAC Exhibits 275–400. On June 7, Defendants received LULAC Exhibits 401–805. On June 9, Defendants received LULAC Exhibits 809–26. On June 10, Defendants received LULAC Exhibits 807, 808, 827, and 828.

Due to the volume and speed at which Defendants were receiving exhibits, Defendants could not closely examine all 600-plus new exhibits during trial. Defendants examined a sample of the 400 exhibits received on June 7 and discovered that of the 175 exhibits examined, only one was created before the close of discovery and many were created during trial. Upon this realization, Defendants again informed Plaintiffs of Defendants' objection to newly created TLC documents and requested that LULAC Plaintiffs identify which exhibits were created prior to the close of discovery. Ex. 1 (State Defendants' June 8 Email to LULAC Plaintiffs). This identification would enable Defendants to determine which, if any, documents were created timely and which, if any, of those timely created documents were subject to more specific objections. *Id.* In response to Defendants' request, LULAC Plaintiffs merely indicated their intention to offer the exhibits into evidence and reiterated their belief that those exhibits are part of a standard set of documents

2

"missing" from the Joint Exhibit List. Ex. 2 (LULAC Plaintiffs' June 8 Email to State Defendants).

Defendants received similar documents from both Brooks Plaintiffs and MALC as trial was ending. Specifically, on June 10, Defendants received Brooks Exhibits 250–52 and on June 11 Defendants received three additional MALC exhibits. Because there were only 6 additional exhibits, Defendants were able to confirm the MALC exhibits were created on June 9 and the Brooks exhibits created on June 10.

## ARGUMENT

While Plaintiffs attempt to frame their set of late-noticed TLC exhibits as a mere extension of the "standard reports" commonly created by TLC, *see* Trial Tr. Day 16 AM 97:9–11, this framing confuses the issues. As State Defendants draft this brief, it is unclear what Plaintiffs' list of "standard" TLC documents includes. It seems that Plaintiffs wish that the set of "standard" TLC documents encompasses every TLC-created document that is now available either to the public or to the parties to this litigation. But such a broadly defined set elides several distinctions: between documents created by default and those specially requested, between documents available to all parties at the start of trial and those that were not, and between documents that are now publicly available and those that are not.

### I. Admitting late-created TLC documents into evidence is unduly prejudicial to State Defendants.

The Court should exclude all Plaintiffs' proffered TLC documents created after the close of discovery (the "bucket two" exhibits) because their probative value is substantially outweighed by a danger of unfair prejudice to Defendants. Fed. R. Evid. 403. Admitting exhibits of this type at this stage of litigation would be prejudicial because State Defendants never received an opportunity to depose or cross-examine Plaintiffs' witnesses and experts with the very evidence that Plaintiffs claim is integral to their case.

While Defendants are generally amenable to admission of publicly available TLC documents, many of Plaintiffs' newly created exhibits are not publicly available on TLC. Plaintiffs

3

had to email TLC and request their creation. Then, TLC transmitted the data to the requestor but did not necessarily upload the data to the public domain.

Importantly, Plaintiffs' untimely disclosure is not only prejudicial to Defendants, but it also undercuts Plaintiffs' assertion of need. If it were true that admission of these late-created and late-noticed documents is "critically important" to Plaintiffs' ability to make their case, *see* Trial Tr. Day 16 AM 95:6–8, Plaintiffs would not have waited until after their case in chief to offer such documents into evidence. Critically important evidence is disclosed early, is discussed by experts, and is relied upon throughout a party's affirmative case.

### A. LULAC Exhibits

As a representative example, LULAC Exhibit 826 is a Red-340 report that compares the voting age populations of House Districts 118, 119, and 120 under Plans H2276 and H2316. While this type of report is in fact "part of a menu that is available from the Texas Legislative Council," *see* Trial Tr. Day 16 AM 97:9–11, and some Red-340 reports are publicly available on TLC's public-facing site, the particular report that is LULAC Exhibit 826 is not one that is publicly available. To obtain this report, Plaintiffs needed to select Plans H2276 and H2316 as their subjects of comparison, submit a request to TLC for this particular comparison, and then wait to receive this custom-made report via email. The timestamp on this report displays its date of creation as June 9, 2025—just two days before the close of trial, more than a month after the close of discovery, and four days after LULAC Plaintiffs called Speaker Joe Moody as their final witness. It is these reports—created after the close of discovery, after the start of trial, even after the culmination of LULAC Plaintiff's affirmative case, and unavailable to the public—that LULAC Plaintiffs claim are part of a "standard" package of reports.

Similarly, LULAC Exhibits 372–374 are Red-116 reports for Plan H2156, and were created on May 19, 2025—the day preceding the pretrial hearing for this trial. Plan H2156 was drawn during the 2021 redistricting process and was presented to the House Redistricting Committee by Representative Ina Minjarez on October 4, 2021. Joint Exhibit 4231 at 282:11–15. Plaintiffs could have requested that TLC create Exhibits 372–374 after the plan was uploaded to District Viewer

in October of 2021. And yet, these exhibits were not created until May 19, 2025, nor were they disclosed to Defendants until June 6—nearly two weeks *after* Representative Minjarez took the stand. *See* Trial Tr. Day 3 PM 81:17. Nor are these exhibits available on the District Viewer website. State Defendants deposed several Plaintiffs witnesses (including Representative Minjarez) with other Red-116 reports, and likely would have used the LULAC Exhibits 372–374 reports to develop further lines of questioning for Representative Minjarez. But Plaintiffs' delayed disclosure left Defendants without any idea that such reports existed, much less that they had been created by Plaintiffs days earlier and held in reserve until after Representative Minjarez had been permanently excused.

It is clear that these are not the only examples of late-created and late-noticed LULAC exhibits—out of a sample of 175 of LULAC's June 7 exhibits, only one was created before the close of discovery, suggesting that the vast majority of LULAC's roughly 600 late-offered exhibits are of a kind with LULAC Exhibits 372-374 and 826. Defendants sought clarification as to which exhibits among this deluge could be offered without objection, informing LULAC Plaintiffs that "[i]f you can identify the documents that were produced, disclosed, or at least created before the close of discovery, we will let you know if we have objections to those. We maintain objections to all documents created after the close of discovery." Ex. 1? Email Ali to Nina June 8. LULAC Plaintiffs made no such identification. As such, State Defendants are left to object to LULAC's attempt at bulk admission, on grounds of prejudicial lack of fair notice.

### B. Brooks Exhibits

Brooks Exhibits 250–52 are so recently created that the map to which they correspond was created during Defendants' case in chief. These exhibits are TLC reports for the map created during the cross-examination of Defendants' expert Dr. Sean Trende. *See* Trial Tr. Day 14 PM 58:24-77:24. Since that map did not exist prior to June 9, 2023, Brooks Exhibits were not added to any exhibit list—or indeed even created—until June 10. Moreover, since the map was created live before this Court, it has not been made publicly available on District Viewer, and certainly was not publicly available in advance of trial.

This lack of prior notice meaningfully detracted from State Defendants' ability to elicit testimony about the feasibility of such an alternative map. For example, former Representative Minjarez testified that the border of HD 118 was drawn as a compromise among Representatives Barbara Gervin-Hawkins, Liz Campos, and Jacey Jetton—a bipartisan, multiracial consensus. Day 3 PM 158:20–159:16. Brooks Plaintiffs' trial-by-surprise tactics—which re-drew HD 118 in trial—prevented State Defendants (and the Court) from testing Plaintiffs' late-created map against the complex realities of redistricting in a large and diverse state like Texas. Plaintiffs could have drawn such a map with Dr. Trende at his deposition, in which case the parties could have considered the map in preparation for trial, and State Defendants could have posed questions to Representative Minjarez—or to any of a host of lay witnesses who testified regarding the fate of Harlandale—about whether such a map is nearly so practical as Plaintiffs' cross examination suggested.

Brooks Plaintiffs attempt to camouflage their efforts to admit late-noticed and late-created evidence by misapplying the "rebuttal" label to evidence that resists such a characterization. Trial Tr. Day 16 AM 78:17–79:5. But even his mischaracterization does not bolster Brooks' Plaintiffs' argument for admission. Fifth Circuit caselaw is clear that "[w]hen a plaintiff makes its prima facie case . . . it also must offer evidence on any other issue of potential importance to the outcome in its case in chief." *Tramonte v. Fibreboard Corp.*, 947 F.2d 762, 764 (5th Cir. 1991) (internal citation omitted). New evidence offered in rebuttal is disfavored, as "[t]he potential for unfairness to the opponent and confusion of the issues militates against admitting new or repetitive evidence at the rebuttal stage." *Id.* A "trial court acts within its discretion when it declines to allow plaintiff to remedy a defect in its case in chief through rebuttal evidence." *Id.* at 765 (citing *Page v. Barko Hydraulics,* 673 F.2d 134, 140 (5th Cir.1982)).

When a trial court does admit new rebuttal evidence, it is generally "either to counter facts presented in the defendant's case in chief, or to rebut evidence unavailable earlier through no fault of the plaintiff." *Id.* at 764 (5th Cir. 1991) (internal citations omitted). Neither reason is present here. The "rebuttal" exhibits offered by Brooks Plaintiffs do not *counter* facts presented in

6

Defendants' case in chief. Instead, these "rebuttal" exhibits *support* testimony elicited by Plaintiffs. The "rebuttal" exhibits would have been available earlier if Plaintiffs had chosen to elicit similar testimony from Dr. Trende prior to trial. Plaintiffs had ample opportunity to do so, either during the initial discovery period or during the re-opened discovery period after trial was set. But indeed, attorneys for Brooks Plaintiffs did not even attend Dr. Trende's 2025 deposition.

### C. MALC Exhibits

In similar fashion, on June 11, MALC offered for admission three new "rebuttal" exhibits—currently unstamped, but presumably MALC Exhibits 27, 28, and 29—that are also newly created TLC documents. Ex. 3 (MALC Plaintiff's June 11 Email to State Defendants). MALC's in-court argument indicated that more of the same variety of specially requested and late-created TLC reports would soon be offered for admission. Trial Tr. Day 16 AM 77:13–78:11. Defendants do not know which reports for which plans the forthcoming TLC documents relate to. Defendants had no opportunity—and now can have no opportunity—to test Plaintiffs' witnesses with the newly created information.

Like Brooks Plaintiffs, MALC similarly frames their late-offered exhibits as "rebuttal" exhibits. Trial Tr. Day 16 AM 77:13–78:11. But MALC's claim is even weaker. MALC does not identify what testimony these exhibits rebut. Rather, it appears these exhibits are offered as a supplement to the "standard package" of TLC documents Plaintiffs continuously reference. Not only is supplementing a "standard package" of TLC documents not rebuttal evidence, but it also raises again the question of what the "standard package" is.

Defendants considered TLC documents to be public and unobjectionable when a party could download them off the TLC website, *not* when a party could email TLC and request TLC create new documents specially for that party and without any notice to other parties until the special-order report landed on a trial exhibit list just days before the close of evidence. Plaintiffs have a different view—yet to this day, Defendants do not know which documents are included in this so-called "standard package" Plaintiffs continuously reference.

7

## II. Plaintiffs should have known they needed the documents and could have obtained the documents prior to the close of discovery.

Plaintiffs have orally argued that they could not know which TLC documents they needed until State Defendants cross-examined their witnesses. Trial Tr. Day 16 AM 89:20–23. This is untrue. First, Plaintiffs knew which amendments their witnesses proposed (and which witnesses they were actually going to call) and should have anticipated the subject of cross-examinations. Second, all information Plaintiffs could have possibly needed was uploaded to TLC by the end of February. That includes the 2024 election data—which is the latest data Plaintiffs could have possibly relied. Third, some of the exhibits Plaintiffs claim not to have known they needed until after cross examination *were created before cross-examination*.

Plaintiffs' selective ignorance of future need also bears on the aforementioned LULAC Exhibits 372–374. These exhibits are Red-116 reports for House Plan 2156, an alternative map proposed by Representative Minjarez as Committee Amendment 22 on October 4, 2021. Joint Exhibit 4231 at 282:11–15. LULAC Exhibits 372–374 were created on May 19, 2025 (the day of the pretrial hearing); Representative Minjarez was called by Plaintiffs on May 23. *See* Trial Tr. Day 3 PM 81:17. Since it is Plaintiffs' contention that minority amendments to redistricting plans were seldom accepted by the House of Representatives, they ought to have known that the amendments proposed by Representative Minjarez—a Latina Democrat—would be at issue well before the start of trial. And, it seems, Plaintiffs did: rather than waiting until after Representative Minjarez's testimony concluded to create the TLC exhibits that they now seek to admit, Plaintiffs proactively sought the creation of those exhibits before Representative Minjarez ever took the stand. They simply waited to provide notice of those newly created TLC reports until Representative Minjarez had been excused from the stand and was unavailable for further examination.

8

## CONCLUSION

Accordingly, Defendants respectfully request that this Court exclude from evidence all Texas Legislative Council documents offered by Plaintiffs that were created after the close of discovery.

Date: June 17, 2025

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

RYAN D. WALTERS
Deputy Attorney General for Legal Strategy

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
Special Litigation Division
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Phone: (512) 936-1700
Fax: (512) 457-4410
ryan.kercher@oag.texas.gov
kathleen.hunker@oag.texas.gov
william.wassdorf@oag.texas.gov
david.bryant@oag.texas.gov
zachary.rhines@oag.texas.gov
munera.al-fuhaid@oag.texas.gov
zachary.berg@oag.texas.gov
ali.thorburn@oag.texas.gov
kyle.tebo@oag.texas.gov
mark.csoros@oag.texas.gov

Respectfully submitted,

/s/ Ryan G. Kercher
RYAN G. KERCHER
Chief, Special Litigation Division
Texas Bar No. 24060998

KATHLEEN T. HUNKER
Deputy Chief, Special Litigation Division
Texas Bar No. 24118415

WILLIAM D. WASSDORF
Ass. Dep. Attorney General for Litigation
Texas Bar No. 24103022

DAVID BRYANT
Senior Special Counsel
Texas Bar No. 03281500

ZACHARY L. RHINES
Special Counsel
Texas Bar No. 24116957

MUNERA AL-FUHAID
Special Counsel
Texas Bar No. 24094501

ZACHARY W. BERG
Special Counsel
Texas Bar No. 24107706

ALI M. THORBURN
Assistant Attorney General
Texas Bar No. 24125064

KYLE S. TEBO
Special Counsel
Texas Bar No. 24137691

MARK A. CSOROS
Assistant Attorney General
Texas Bar No. 24142814

COUNSEL FOR STATE DEFENDANTS

## CERTIFICATE OF SERVICE

I certify that on June 17, 2025, a true and accurate copy of the foregoing document was filed and served electronically (via CM/ECF).

*/s/ Ryan G. Kercher*
RYAN G. KERCHER
Chief, Special Litigation Division
