IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> GREG ABBOTT, in his official capacity as Governor of the State of Texas, *et al.*, <br><br> *Defendants*. | CIVIL ACTION NO. <br><br> 3:21-cv-00259-DCG-JES-JVB <br><br> [Lead Case] <br><br> & <br><br> All Consolidated Cases |

**LULAC PLAINTIFFS' POST-TRIAL EXECUTIVE SUMMARY**

Plaintiffs the League of United Latin American Citizens, *et al*. ("LULAC Plaintiffs") file this Executive Summary pursuant to the Court's Order of June 16, 2025. ECF 1098.

## I.   INTRODUCTION

Following the 2020 Census, Texas was the only state apportioned two additional seats in the U.S. House of Representatives. JEX 4150 at 3. Texas's growth was largely driven by an increase in the Latino population, which outpaced that of White non-Hispanics ("Anglos") by a ratio of ten to one. JEX 4150 at 5. For example, in Harris County, where Defendants chose to locate one of Texas's two new congressional districts, the Latino population increased by 363,169 and the Anglo population *decreased* by 40,053. LULAC Ex. 36 at 6-7.

Despite the overwhelming increase in the Texas Latino population compared to the Anglo population, Defendants reduced the number of Hispanic citizen voting age (HCVAP) majority districts in both the congressional and State House redistricting plans. JEX 1529 (H2100 r116 ACS19); JEX 2236 (H2316 r116 ACS19); JEX 12 (C2100 r116 ACS19); and JEX 899 (C2193 r116 ACS19). And Defendants crafted Texas's two new congressional districts with Anglo majorities – one Democratic and the other Republican in partisan composition. Contorting the maps to thwart the growing Latino electorate, Defendants failed to create the number Latino opportunity districts required under Section 2 of the Voting Rights Act, impermissibly relied on race to craft district boundaries, and used district population deviations in the State House redistricting plan to discriminate against Latino voters and specific regions of Texas.

## II.   The Specific Relief Requested by LULAC Plaintiffs

LULAC Plaintiffs seek a declaration that the Texas State House plan H2316 and congressional plan C2193 illegally and unconstitutionally dilute the voting strength of Latinos and a declaration that H2316 is unconstitutionally malapportioned. LULAC Plaintiffs also seek a permanent

1

injunction of the challenged redistricting plans and the creation of new redistricting plans, either through legislative enactment or court order, that include: (1) an additional Latino opportunity state house district in Central Texas; (2) an additional Latino opportunity state house district in Harris County; (3) restoration of Latino opportunity to elect in State House District 118; (4) fair apportionment of State House districts in El Paso County, the Upper Rio Grande, and the Panhandle to the area of original Tom Green County in West Texas; (5) an additional Latino opportunity congressional district in Harris County; and (6) an additional Latino opportunity congressional district in the DFW Metroplex. LULAC Plaintiffs also seek 3(c) bail-in.

### III.  LULAC Plaintiffs Have Proved Their Entitlement to the Requested Relief

#### A. Section 2 of the Voting Rights Act ("VRA")

***Gingles* First Precondition: The Latino Population is Sufficiently Numerous and Compact to Comprise the Majority in two Additional State House Districts, HD118 and two Additional Congressional Districts**

Texas's failure to create additional Hispanic citizen voting age ("HCVAP") majority districts violates the effects standard of Section 2 of the VRA. *See Thornburg v. Gingles*, 478 U.S. 30 (1986); *Allen v. Milligan*, 599 U.S. 1 (2023).

1. Central Texas (Demo HD44)

LULAC Plaintiffs' demonstrative HD44 has a Hispanic CVAP of 51.0% (ACS23) and encompasses a compact Latino population in this geographic area. JEX 2432 (Plan H2326 r116 ACS23); Tr. 05/22/25PM at 34-64 (Joey Cardenas); Tr. 05/28/25AM at 125-53 (JoAnn Acevedo); Tr. 05/28/25PM at 6-11 (Acevedo, cont.).

The same is true for the similar (but differently-numbered) demonstrative HD17 in MALC's H2331. JEX 2568 (H2331 r116 ACS23). In MALC Demonstrative H2331, HD17 has a Hispanic CVAP of 51.8% (ACS23). JEX 2568 (H2331 r116 ACS23).

    2. Harris County (Demo HD138)

LULAC Plaintiffs' demonstrative HD138 has a Hispanic CVAP of 54.5% (ACS23) and encompasses a compact Latino population in this geographic area. JEX 2432 (H2326 r116 ACS23); *see also* Tr. 05/21/25PM at 82-127 (Cesar Espinosa); Tr. 05/21/25PM at 145-166 (Angelica Razo); Tr. 05/22/25AM at 15-33 (Razo, cont.); Tr. 05/22/25AM at 49-71 (Diana Martinez Alexander). MALC's demonstrative plans H2328 and H2330 also contain an additional HCVAP majority state house district in Harris County. *See* JEX 2553 (H2328 r116 ACS23); JEX 2563 (H2330 r116 ACS23)

    3. Harris County (Demo CD38)

LULAC Plaintiffs' demonstrative CD38 has a Hispanic CVAP of 52.0% (ACS23) and encompasses a compact Latino population in this geographic area. JEX1383 (Plan C2200 r116 ACS23). Similarly, the Gonzales Plaintiffs' demonstrative CD29 satisfies the *Gingles* first precondition. JEX 1315 (Gonzales Plaintiffs' Demo C2198 Rpt. Package); *see also* JEX 623 (Brooks/MALC Demo C2163 map Rpt. packet).

    4. Dallas and Tarrant Counties (Demo CD6)

LULAC Plaintiffs' demonstrative CD6 has a Hispanic CVAP of 53.5% (ACS23) and encompasses a compact Latino population in this geographic area. LULAC Ex. 81 at 4 (C2200 LULAC Demonstrative Congressional Plan Map Packet). *See also* JEX 622 (Brooks Plaintiffs' Demo C2163 Rpt. Package); Tr. 05/21/25AM at 8-50 (Sal Espino); Tr. 05/21/25AM at 65-93 (Candace Valenzuela); Tr. 05/21/25AM at 112-155 (Domingo Garcia); Tr. 05-21/25PM at 4-42

(Garcia, cont.); Tr. 06/04/25AM at 130-165 (Rafael Anchia); Tr. 06/04/25PM at 6-149 Anchia, cont.); Tr. 06/05/25AM at 6-81 (Anchia, cont.); Tr. 06/05/25PM at 28-54 (Ramon Romero).

### The Latino Population is Sufficiently Numerous and Compact to Constitute the Majority of Citizen Voting Age Population in HD118

As demonstrated in the benchmark State House redistricting plan, the Latino population is sufficiently numerous and compact to constitute the majority of CVAP in HD118. JEX 1680 (H2100 Rpt. Package). In the enacted plan, Defendants maintained an HCVAP majority in HD118, but dropped Latino voter registration and turnout below 50%—creating a district that no longer offers Latino voters an equal opportunity to elect the Latino-preferred candidate. *Compare* LULAC Ex. 151 (H2100 HD118 SSVR SSTO with Map) *with* LULAC Ex. 159 (H2316 HD118 SSVR SSTO with Map); *see* Tr. 05/30/25AM at p. 47-54 (Barreto re HD118); Tr. 05/24/25AM at p.78-82 (Carranza); and ECF 962-22, Ex. 22 39:14-40:6; 54:12-52:20; 74:20-76:2; 91:17-92:7; 104:17-105:25 (Dep. Designations of John Lujan). *See also Perez v. Abbott*, 250 F. Supp. 3d 123, 133–34 (W.D. Tex. 2017) ("the fact that a district is majority–HCVAP does not, standing alone, qualify it as a Latino opportunity district, and Plaintiffs may attempt to prove that it lacks "real electoral opportunity."). LULAC Plaintiffs' demonstrative HD118 further shows that the Latino population is sufficiently numerous and compact to constitute the majority of CVAP in HD118. JEX 2432 (H2326 r116 ACS23); *see also* JEX 1977 (Brooks H2176 Rpt. Package); JEX 1907 (Brooks H2176 r225).

### *Gingles* Second and Third Preconditions: Racially Polarized Voting

Plaintiffs' experts at trial testified that Latinos vote cohesively in Plaintiffs' demonstrative HCVAP majority districts and that Anglos bloc vote in the enacted districts that contribute geography to Plaintiffs' demonstrative districts. Dr. Matt Barreto found a "clear, consistent, and statistically significant pattern of racially polarized voting" across the State of

4

Texas. Brooks. Ex. 18 at 5-11. (Barreto Rpt., 3/31/25); *see also* MALC Ex. 16 (Barreto Rpt. 5.20.22); Tr. 05/30/25 at 42 (Barreto re HD118).

Similarly, Dr. Ansolabehere found racially polarized voting in the enacted congressional and State House Districts. Gonzales Ex. 6 at 18 (CD15, CD16, CD20, CD28, CD 29, and CD34; *id.* at 19 (CD23); *id.* at 20 (CD27); *id.* at 21 (CD35); *id.* at 50 (HD129); *id.* at 56 (HD94). (Ansolabehere expert Rpt. May 20, 2022).

**Under the Totality of the Circumstances, Latino Voters Have Less Opportunity to Participate in the Political Process and to Elect Representatives of Their Choice.**

Having satisfied the *Gingles* preconditions, Plaintiffs further proved that under the totality of circumstances, Latinos do not have an equal opportunity to elect in the challenged redistricting plans. *See League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 426 (2006).

With respect to Senate Factors 1 and 5, Dr. Andres Tijerina testified that there exists a long history of discrimination against Latinos in Texas and that Latinos bear the effects of that discrimination. Tr. 05/24/25AM (part 2) at 7-36; Tr. 05/27/25AM at 18-19; *see also* LULAC Ex. 4 at 3, 45(Expert Rpt. of Dr. Andres Tijerina). Much of that discrimination has been experienced directly by Latino voters alive today. *See* Tr. 05/24/25AM at 15-31.

The legacy of historical discrimination persists today in the form of lower socioeconomic status for Latinos in Texas. Dr. Rogelio Saenz testified that even among U.S.-born Latinos living in Texas, Latino educational achievement and earnings lag behind Anglos. Tr. 05/22/25AM at 79-117; Tr. 05/22/25PM at 22-32; *see also* LULAC Ex. 2 at 8-9, 13; LULAC Ex. 3 at 7-8, 12. Dr. Bernard Fraga further testified that Latino political participation rates remain below those of Anglos in Texas and that the present effects of past discrimination are a cause of the lower participation of Latinos relative to Anglos. Tr. 05/27/25PM at 48-69; *see also* LULAC Ex. 1 at 12-17. The Court heard similar testimony from lay witnesses. Tr. 05/23/25PM at 23-31 (Leo

5

Pacheco); Tr. 05/21/25AM at 112-25, 131-32 (Domingo Garcia); and Tr. 06/10/25PM at 125-140 (Brooks Landgraf).

At trial, the Court also heard testimony establishing additional Senate Factors, including Factor 2 (racially polarized voting), discussed above, and Factor 6: racial appeals in elections. *See e.g.* Tr. 05/21/25AM at 24-25 (Domingo Garcia) (election flyer accusing Ramon Romero of belonging to the Latin Kings street gang); Tr. 05/28/25PM at 99-100 (Dr. Lichtman) (describing darkened picture of candidate Candace Valenzuela); Gonzales Ex. 11 at 48, Figure 7 (picture).

With respect to proportionality, even with two additional HCVAP majority State House districts, and two additional HCVAP majority congressional districts, the total number of HCVAP majority State House and congressional districts would not come close to proportionality. *See* JEX 2432 (H2326 r116 ACS23); JEX 1378 (C2200 r116ACS23); MALC Ex. 18 at 4 (Barreto Expert Rpt. 3.31.25).

**B. Constitutional Violations: Disadvantaging Voters of a Particular Race and Unconstitutional Racial Gerrymandering (*Shaw v. Reno*)**

Only a few years before Texas enacted the current redistricting plans, the U.S. Supreme Court held that Texas intentionally discriminated against Latino voters by creating an impermissible racial gerrymander in Tarrant County. *Abbott v. Perez*, 585 U.S. 579, 622 (2018). And in the redistricting cycle before that one, the U.S. Supreme Court held that Texas violated Section 2 of the VRA by weakening Latino voting strength in West Texas. *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 439 (2006) ("The changes to District 23 undermined the progress of a racial group that has been subject to significant voting-related discrimination and that was becoming increasingly politically active and cohesive.").

6

The evidence at trial showed that Defendants engaged in the same race-based techniques to thwart Latino opportunity to elect in the challenged redistricting plans. Instead of heeding the Supreme Court's rulings, in 2021 Defendants again crafted districts with the purpose and effect of diluting Latino voting strength.

In Bexar County, Defendants reduced the Latino voting strength in HD118 such that Latinos no longer have an equal opportunity to elect their candidate of choice and are unequally burdened in the election process. Defendants employed the very same prohibited redistricting technique in the preceding redistricting cycle, where the district court held that Texas intentionally discriminated against Latino voters *in the adjacent district HD117* when it stretched the district to pick up Anglo voters while maintaining an ineffective Latino majority. *Perez v. Abbott*, 250 F. Supp. 3d 123, 148 (W.D. Tex. 2017) ("Hispanic population was manipulated to maintain exactly 50.1% SSVR while minimizing Hispanic turnout and electoral performance.") Texas did not appeal that ruling.

In this case, the Court heard that Defendants again created a "sham" Latino district in violation of the 14th Amendment and the purpose and effects tests of Section 2 of the VRA. Except this time, Defendants did not bother to maintain even a razor thin SSVR majority.

The reduction in Latino voting strength in HD118 was accomplished by fracturing a historic Latino neighborhood on San Antonio's South Side, and adding more distant neighborhoods with lower voter turnout and that shared few neighborhood, social-economic or demographic characteristics with the South Side. Tr. 05/23/25PM at 122-131 (Minjarez); Tr. 05/24/25AM at 53-67 (Carranza); Tr. 05/23/25PM at 23-66 (Pacheco).

As a result of map drawers' changes to HD118, the percentage of Spanish surname registered voters (SSVR) decreased from 60.40% to 48.1% and the share of votes cast by Latinos

7

in the district dropped from 55.70% to 43.90%. LULAC Ex. 151 (2020 H2100 HD118 SSVR SSTO with Map); LULAC Ex. 159 (2020 H2316 HD118 SSVR & SSTO with Map); JEX 1680 (H2100 Rpt. Package); and LULAC Ex. 28 (Demonstrative Map, State House District 118 in H2100 and H2316); *see also* Tr. 05/23/25PM at 54-66 (Leo Pacheco); Tr. 05/30/25AM at 58-59 (Dr. Barreto); Tr. 06/09/25PM at 56-80 (Dr. Trende). *See also Perez v. Abbott,* 250 F. Supp. 3d at 148-149 (W.D. Tex. 2017) ("By minimizing Hispanic voter registration and turnout, [the mapdrawer] successfully decreased the performance of HD117. . . the Court finds that mapdrawers intentionally diluted the Latino vote in HD117 in violation of § 2 and the Fourteenth Amendment.")

While drastically reducing the Spanish surnamed voter turnout in HD118 by more than ten percentage points, Defendants carefully maintained the district's HCVAP above 50%. JEX 1529 (H2100 r116 ACS19); JEX 2236 (H2316 r116 ACS19). Defendants' changes to HD118 were not to maximize partisan advantage. Tr. 06/09/25PM at 56-80 (Dr. Trende). Defendants' technique of creating a "sham" Latino district necessarily involved using race as the predominant factor in redistricting, although not to comply with Section 2's mandate to ensure equality of opportunity to elect. *See* Tr. 05/30/25AM at 43-59 (Dr. Barreto). Defendants offered no justification for their radical revisions to HD118. *See* Tr. 6/10/25PM at 142 (Landgraf) ("Q. And you also can't share anything with us about the redistricting decisions that you or other House members made in creating House District 118 in Bexar County in the enacted map, correct? A. Yes.").

Defendants' weakening of Latino voting strength in HD118, malapportionment of district population in West Texas, and failure to create additional Latino opportunity districts in the State House and congressional redistricting plans was driven by the intent to dilute and minimize Latino voting strength as demonstrated by Plaintiffs' showing under the *Arlington Heights* factors. *See*

8

*Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977); Tr. 05/23/25PM at 85-122 (Ina Minjarez); Tr. 06/4/25AM at 130-165; 06/4/25PM at 6-149; 6/5/25AM at 6-78 (Anchia).

### C. Unconstitutional Malapportionment

Defendants' State House redistricting plan purposefully underpopulated districts in order to preserve the political strength of voters in the Panhandle to the area of original Tom Green County. JEX 2225 (H2316 r100); LULAC Ex. 38 (WTX State House Population Deviations in H2316). This underpopulation was accomplished at the expense of voters in El Paso County and the Upper Rio Grande whose districts were overpopulated, thereby reducing their political strength. *Id; see also* Tr. 06/06/25AM at 68-80 (Joe Moody).

It is undisputed that redistricters sought to prevent the loss of representation from the Panhandle to the area of original Tom Green County. LULAC Ex. 31. Following the 2020 Census, the combined underpopulation of state house districts in that region was greater than one whole house district. Tr. 06/10/25PM at 125-40 (Landgraf). In order to achieve the goal of preserving representation in that region, Defendants systematically underpopulated districts from the Panhandle to original Tom Green County (Districts 69, 71, 72, 81, 82, 83, 84, 86, 87, and 88), and overpopulated districts in El Paso County and the Upper Rio Grande area (Districts 74, 75, 77, 78, and 79). Tr. 06/04/25AM at 110-15 (Anchia); Tr. 06/05/25PM at 135-170 (Joe Moody); Tr. 06/06/25AM Tr. 53-83 (Joe Moody). Defendants' over- and under-population of districts in these regions deliberately favored the interests of communities and voters from the Panhandle to the areas of original Tom Green County at the expense of communities and voters in El Paso and the Upper Rio Grande area. *See e.g.*, LULAC Demonstrative H2326 and MALC demonstrative plan 2329. *See also* Tr. 6/5/25PM at 137-138 (Joe Moody); 06/10/25PM at 125-152 (Landgraf); Tr. 06/11/25AM at 34-44 (Landgraf). Defendants' malapportionment also prevented over 41,000

9

predominantly Latino people from being placed into a district beyond El Paso County and the Upper Rio Grande.  Tr. 06/06/25AM at 68-72 (Joe Moody).  The malapportionment lacked any articulated rationale, and the Legislature rejected an amendment that would cure the malapportionment and also avoid pairing two Latina incumbents in El Paso County.  Tr. 06/10/25PM at 142 (Landgraf); Tr. 06/04/25AM at 113-14 (Anchia).

The purposeful use of population deviations to benefit voters in one region of the State at the expense of voters in another region violates the Equal Protection Clause of the 14th Amendment regardless of whether Defendants had a racial purpose.  In addition, the systematic underpopulation of districts to benefit Anglo voters, at the expense of Latino voters, is racial discrimination in violation of the 14th Amendment.

### D.  Standing

Finally, LULAC Plaintiffs have standing because they are individual voters (and organizations with members who are individual voters), whose votes are diluted because they: reside in areas where additional Latino opportunity districts can be created but were not; reside in challenged districts that are "packed;" or reside in malapportioned districts in El Paso County or the Upper Rio Grande.  LULAC Ex. 42-59; Tr. 05/22/25PM at 37-40; Tr. 05/21/25AM at 113-121, Tr. 06/06/25AM at 80-82.

Dated: June 30, 2025                                    Respectfully submitted,

*/s/ Nina Perales*
Nina Perales
Julia Longoria
Sabrina Rodriguez
Mexican American Legal Defense and Educational Fund (MALDEF)
110 Broadway Street, Suite 300
San Antonio, TX 78205
(210) 224-5476
Fax: (210) 224-5382

nperales@maldef.org
jlongoria@maldef.org
srodriguez@maldef.org

Ernest I. Herrera
Mexican American Legal Defense and Educational Fund (MALDEF)
634 S. Spring Street, 9th Floor
Los Angeles, CA 90014
(210) 629-2512
eherrera@maldef.org

Andrea E. Senteno*
Mexican American Legal Defense and Educational Fund (MALDEF)
1016 16th Street, Suite 100
Washington, DC 20036
(202) 293-2828
Asenteno@maldef.org

Khrystan N. Policarpio*
Mexican American Legal Defense and Educational Fund (MALDEF)
1512 14th Street
Sacramento, CA 95814
(916) 444-3031
kpolicarpio@maldef.org

*Admitted *pro hac vice*

*Counsel for LULAC Plaintiffs*

# CERTIFICATE OF SERVICE

I certify that on June 30, 2025, a true and accurate copy of the foregoing document was served via email to all counsel of record.

/s/ Nina Perales
Nina Perales

11