UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| LULAC, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>GREG ABBOTT, in his official capacity as Governor of Texas, *et al.*,<br><br>*Defendants*. | Case No. 3:21-CV-00259-DCG-JES-JVB<br>[Lead Case] |

**PLAINTIFFS'** *EMERGENCY* **MOTION TO REOPEN RECORD AND TAKE ADDITIONAL TESTIMONY**

The Brooks, Gonzales, and MALC Plaintiffs respectfully move the Court to reopen the record and schedule an expedited hearing to take additional testimony. New evidence reveals that witnesses, including Senator Huffman, Chris Gober, and Adam Kincaid, potentially falsely testified that Texas's congressional map was drawn without consideration of race. Specifically, the Governor has called a special session of the Legislature to take up redistricting of the congressional map, approvingly citing a letter from the United States Department of Justice asserting that evidence exists to prove that the current congressional map was drawn with race as a predominant consideration. The deposition and trial testimony of the relevant witnesses and this new evidence are flatly contradictory. One or the other is false, and Plaintiffs and the Court are entitled to probe whether key witnesses truthfully testified at deposition and at trial—on the central question in this case—given this new evidence. That testimony is not only probative to Plaintiffs' specific claims regarding the existing congressional map but is also probative to the credibility of these witnesses in general on all of Plaintiffs' claims.

1

Because the Legislature will be in special session beginning on July 21, 2025, Plaintiffs respectfully request that the Court schedule an expedited hearing before that date so as to not interfere with Senator Huffman's attendance and participation in the special session. Plaintiffs anticipate that no more than two days of testimony, but one day at a minimum, are needed. Senator Huffman and Mr. Gober both reside in Texas and are thus subject to the Court's subpoena power to testify live at trial in El Paso. *See* Fed. R. Civ. P. 45(c)(1)(B)(ii). Mr. Kincaid—the mapdrawer—resides in Virginia. If Mr. Kincaid is unwilling voluntarily to appear in El Paso before this Court, Plaintiffs request that the Court order that he testify live via remote means during the Court's scheduled hearing. If there are technological barriers to that live remote testimony, then Plaintiffs alternatively request that a videotaped trial deposition be ordered to occur at a time prior to the hearing scheduled by the Court during which Judge Guaderrama is available to rule on any privilege objections raised during that deposition.

Plaintiffs likewise move for leave to serve a subpoena duces tecum on Mr. Gober and Mr. Kincaid for any documents and communications related to the letter sent by the Department of Justice regarding the congressional map and its claims regarding the race-based purpose of the congressional map, with documents and communications to be produced at least two days in advance of the hearing (or deposition).

Plaintiffs' counsel contacted Defendants' counsel regarding this motion who indicated Defendants oppose this motion.

## BACKGROUND

On July 9, 2025, Governor Greg Abbott—a Defendant in this action—signed a Proclamation calling a special session of the Legislature to consider, *inter alia*, "[l]egislation that provides a revised congressional redistricting plan in light of constitutional concerns raised by the

U.S. Department of Justice." Ex. A (Proclamation). Those "constitutional concerns" refer to a July 7, 2025 letter from Harmeet K. Dhillon, the Assistant Attorney General for the Civil Rights Division of the U.S. Department of Justice to Governor Abbott and Attorney General Paxton. That letter asserts that four current congressional districts, CDs 9, 18, 29, and 33, are "unconstitutional 'coalition districts'" and demands that the State "rectify these race-based considerations from these specific districts." Ex. B at 1 (Dhillon Letter). The letter continues:

> It is the position of this Department that several Texas Congressional Districts constitute unconstitutional racial gerrymanders, under the logic and reasoning of *Petteway*. Specifically, the record indicates that TX-09 and TX-18 sort Houston voters along strict racial lines to create two coalition seats, while creating TX 29, a majority Hispanic district. Additionally, TX-33 is another racially-based coalition district that resulted from a federal court order years ago, yet the Texas Legislature drew TX-33 on the same lines in the 2021 redistricting. Therefore, TX-33 remains as a coalition district.

Ex. B. at 2. The letter asserts that the State "when configuring these districts" used racial data in order "to comply with Fifth Circuit precedent prior to the 2024 *Petteway* decision" but that these congressional districts are "nothing more than vestiges of an unconstitutional racially based gerrymandering past." Ex. B at 2.

The State's witnesses who were involved in drawing the 2021 congressional districts (which were ratified by the 2023 legislature) uniformly testified to the contrary, asserting that the congressional map was drawn blind to race, that racial data or information was never considered in its configuration, and that only political data was considered. Yet now Governor Abbott, a Defendant in this case, has approvingly cited the DOJ letter's citation to "record" evidence supporting the contention that race was the predominant motive in drawing these districts. He does so even though his primary defense at trial was that the maps were drawn race blind. And he does so for the purpose of dismantling these districts *because* of their racial composition, notwithstanding his trial defense that the districts were configured without consideration of race.

3

# ARGUMENT

I. **The Court should reopen the record to take additional testimony regarding the new evidence.**

The Court should reopen the record to take additional testimony regarding the new evidence. "Among the factors the trial court should examine in deciding whether to allow a reopening are the importance and probative value of the evidence, the reason for the moving party's failure to introduce the evidence earlier, and the possibility of prejudice to the non-moving party." *Garcia v. Woman's Hosp. of Texas*, 97 F.3d 810, 814 (5th Cir. 1996). All factors point in favor of granting a reopening of the record here.

First, the new evidence is important and of high probative value. The Dhillon letter, and Governor Abbott's Proclamation based on it, plainly asserts that there is evidence that race was the predominant consideration the drawing of certain congressional districts in the 2021 map. The Governor, a Defendant in this case, has called a special session of the Legislature based on this assertion of racial gerrymandering in the 2021 redistricting map. Yet State Defendants' (including Governor Abbott's) central defense at trial was that Texas's 2021 redistricting maps were drawn blind to race. The primary people involved in the configuration of the congressional map were Senator Joan Huffman, Chris Gober, and Adam Kincaid.

Adam Kincaid, who drew the congressional map, testified repeatedly that he did not consider race or VRA compliance in drawing the map. *See, e.g.*, Rough Draft Tr. 5/29/2025 Afternoon at 28:11-18 (Adam Kincaid, testifying he did not view racial data in drawing congressional map); *id.* at 74:18-75:5 (same); *id.* at 75:9-21 (same, testifying that he did not use racial information at Chris Gober's direction); *id.* at 91:14-92:3 (Adam Kincaid testifying: "I can only reiterate again that these maps were drawn with political data and no racial data, and . . . one thing I did want to say more precisely . . . was I didn't do a . . . VRA analysis . . . because that was

4

not something I was hired by Chris to do."). Mr. Kincaid expressly denied considering race in the drawing of the Dallas-Fort Worth congressional districts, which include CD-33. *Id.* at 118:25-119:6 (in response to whether there was "any affirmative effort to maintain minority voting strength" in DFW districts, testifying "I did not do any analysis on – on that in that area. So my objective with DFW was to create three heavily Democratic districts and then try to shore up the other Republicans around it").

Chris Gober, who advised the Republican congressional delegation and retained Adam Kincaid to draw the congressional map, testified that race played no part in the configuration of the congressional districts and that if any consideration of VRA compliance was to be done, it would have to be *after* the configuration of the congressional districts. *See, e.g.*, Rough Draft Tr. 5/24/2025 Morning at 29:23-30-22 ("I informed them that we were going to draw the map without the use of racial data in our system" and "without the use of racial data in the system, there was no way to ensure compliance with the Voting Rights Act with 100 percent certainty"); *id.* at 34:13-22 ("I can say, as a matter of public – non-privileged public record, we did not use racial data in order to draw the unified map."); *id.* at 35:11-13 ("[D]uring the actual drawing process per non-privileged information, we didn't use racial data to draw the unified map."); *id.* at 36:3-38:13 (same); *id.* at 41:3-11 (testifying that "the Unified Congressional Map was drawn entirely without the use of racial data").

Senator Huffman, who was the Chair of the Senate Redistricting Committee and involved in the configuration of the congressional map, likewise explained that "the congressional delegation's map was drawn blind to race, as my maps have been." Rough Draft Tr. 6/7/2025 Afternoon at 27:3-7; *id.* at 28:10-18 (Senator Huffman, on Senate floor, stating that the congressional map "was drawn race blind. Any work we did on it was race blind. But they have

5

been determined to be compliant under the Voting Rights Act"); *id.* at 28:25-29:12 (stating that Congressman Green's (CD-9) and Congresswoman Lee's (CD-18) districts were "dr[a]w[n] . . . race blind. And after they were drawn, we sent them for a compliance, and they were determined – the map was determined to comply with the Voting Rights Act"); *id.* at 29:23-30:9 (same); *id.* at 33:25-34:7 (Senator Huffman testifying that congressional map was drawn blind to race and "racial data was not considered at all during the drawing of the maps").

The new evidence—Governor Abbott's Proclamation and the Dhillon DOJ letter—flatly contradict the testimony of Senator Huffman, Adam Kincaid, and Chris Gober about whether or not race was a consideration in the drawing of the congressional map. The new evidence directly raises the question of whether Senator Huffman, Mr. Kincaid, and Mr. Gober truthfully testified that the congressional districts were drawn without consideration of race. The letter—cited approvingly by Governor Abbott, who signed the maps into law and is a Defendant— unequivocally states that the identified congressional districts were drawn specifically along racial lines and for the purpose of being minority coalition districts. The Legislature's purpose in how it configured the Dallas and Houston congressional districts is directly relevant to Plaintiffs' burden under the Section 2 totality of circumstances analysis—including whether the Legislature's rationale is tenuous—and thus the *true* motivation behind the districts' configuration is highly probative evidence. *See, e.g.*, *Thornburg v. Gingles*, 478 U.S. 30, 45 (1986) (holding that whether "the policy underlying the State's . . . use of the contested practice or structure is tenuous may have probative value" to Section 2 totality of circumstances analysis). Plaintiffs are entitled to question these witnesses about whether their testimony at trial and at deposition was in fact truthful, given the contrary assertions in the Dhillon DOJ letter and Governor Abbott's Proclamation about the

predominant use of race in configuring the congressional map, and about their understanding of the bases for the new evidence.

## II. The new evidence did not exist during the trial.

The new evidence did not exist during the trial and thus could not have been addressed or explored by Plaintiffs in questioning during the trial examination of Senator Huffman or during the depositions of Chris Gober and Adam Kincaid. Plaintiffs are therefore not at any fault for raising this issue now—immediately after their discovery of this new evidence that calls into question the veracity of these witnesses' deposition and trial testimony.

## III. Defendants face no prejudice from reopening the record to consider this new evidence.

Defendants face no prejudice from the record being reopened and this new evidence and testimony regarding it made part of the record. Governor Abbott is a Defendant in this case and he has cited with agreement the Dhillon DOJ letter asserting that racial considerations predominated in the drawing of the congressional map. Yet his entire defense at trial was that race played no part in the configuration of the maps. State Defendants cannot claim prejudice from the witnesses who testified to the contrary of the Governor's new assertion being asked to explain to the Court, under oath, whether their earlier testimony was true or false, in light of this new evidence.

## IV. The Court should schedule a hearing prior to July 21, 2025.

The Court should schedule a hearing prior to July 21, 2025, when the Legislature's special session is set to begin. Senator Huffman must be recalled to testify about this new evidence and so that Plaintiffs can probe the veracity of her prior testimony, which directly is contradicted by this new evidence. But she will be participating in the special session beginning on July 21 and lasting for at least a month. Plaintiffs are mindful of her schedule and her duties related to the special session, but at the same time it is necessary for the Court to have the record complete so that it can

expeditiously issue its decision in this case. Plaintiffs do not anticipate the need for lengthy testimony from any of the three witnesses—Senator Huffman, Mr. Gober, and Mr. Kincaid—regarding this new evidence and believe a one to two day hearing suffices. In order to balance not interfering with Senator Huffman's responsibilities during the upcoming special session and the need for expeditious closure of the evidentiary record and a decision in this case, it makes most sense to expeditiously schedule the hearing prior to the Legislature's special session.

Mr. Kincaid resides in Virgina. If he is unwilling voluntarily to appear before this Court in El Paso, Plaintiffs request that he testify by remote means during the hearing. If that is not technologically possible, Plaintiffs request that the Court order that a videotaped trial deposition be taken at a time prior to the Court's scheduled hearing and when Judge Guaderrama is available to rule on any objections.

Finally, Plaintiffs request that the Court grant Plaintiffs leave to serve subpoenas duces tecum on Mr. Gober and Mr. Kincaid for documents and communications related to the Department of Justice letter and the matters asserted within it, to be produced no less than two days prior to the scheduled hearing (or deposition).

\* \* \*

The Court must take seriously any evidence that suggests that witnesses potentially have not truthfully testified—or suggests that the Defendants' primary defense is pretextual. The Governor—a Defendant—has now publicly contradicted his trial defense in this case. And the three witnesses primarily responsible for the configuration of the congressional map, Senator Huffman, Chris Gober, and Adam Kincaid, have testified in a manner that is flatly contradicted by this new evidence. Either these witnesses falsely testified or the new evidence is false. Plaintiffs

are entitled to probe which is true, and the Court must protect the integrity of these proceedings by ordering the record reopened for that purpose.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be granted.

July 10, 2025

*/s/ David R. Fox*
David R. Fox*
Richard A. Medina*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
dfox@elias.law
rmedina@elias.law

Abha Khanna*
**ELIAS LAW GROUP LLP**
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
Telephone: (206) 656-0177
akhanna@elias.law

Renea Hicks
Attorney at Law
Texas Bar No. 09580400
Law Office of Max Renea Hicks
P.O. Box 303187
Austin, Texas 78703-0504
(512) 480-8231
rhicks@renea-hicks.com

*Counsel for Gonzales Plaintiffs*

SOMMERMAN, MCCAFFITY, QUESADA & GEISLER, L.L.P.

*/s/ Sean J. McCaffity*
Sean J. McCaffity
State Bar No. 24013122
George (Tex) Quesada
State Bar No. 16427750
3811 Turtle Creek Blvd., Suite 1400
Dallas, Texas 75219-4461
214-720-0720 (Telephone)
214-720-0184 (Facsimile)
SMcCaffity@textrial.com
Quesada@textrial.com

*Attorneys for MALC Plaintiffs*

Respectfully submitted,

*/s/ Chad W. Dunn*
Chad W. Dunn (Tex. Bar No. 24036507)
Brazil & Dunn
4407 Bee Caves Road
Building 1, Ste. 111
Austin, TX 78746
(512) 717-9822
chad@brazilanddunn.com

*/s/ Mark P. Gaber*
Mark P. Gaber*
Mark P. Gaber PLLC
P.O. Box 34481
Washington, DC 20043
(715) 482-4066
mark@markgaber.com

Jesse Gaines* (Tex. Bar. No. 07570800)
P.O. Box 50093
Fort Worth, TX 76105
817-714-9988
gainesjesse@ymail.com

Molly E. Danahy*
P.O. Box 51
Helena, MT 59624
(406) 616-3058
danahy.molly@gmail.com

Sonni Waknin*
10300 Venice Blvd. # 204
Culver City, CA 90232
732-610-1283
sonniwaknin@gmail.com

*Admitted pro hac vice

*Counsel for Brooks Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that the foregoing was served on all counsel of record on July 10, 2025 via the Court's CM/ECF system.

*/s/ Mark P. Gaber*
