# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, et al., | § § § | |
| Plaintiffs, | § § | Case No. 3:21-cv-00259-DCG-JES-JVV [Lead Case] |
| v. | § § | & |
| GREG ABBOTT, et al., | § § | |
| Defendants. | § | All Consolidated Cases |

**STATE DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION TO REOPEN RECORD AND TAKE ADDITIONAL TESTIMONY**

Defendants Greg Abbott, in his official capacity as Governor of Texas, Jane Nelson in her official capacity as Secretary of State of Texas, Dave Nelson, in his official capacity as Deputy Secretary of State, and the State of Texas file this response in opposition to Brooks, Gonzales, and MALC Plaintiffs' *Emergency Motion to Reopen Record and Take Additional Testimony*, and would show the Court as follows:

As established by the robust trial record, the Texas Legislature did not racially discriminate in drawing the current congressional electoral districts—full stop. Following that robust trial record, and perhaps because of it, the Brooks, Gonzales, and MALC Plaintiffs (Plaintiffs) have filed an Emergency Motion, requesting that this Court reopen the record and schedule an expedited hearing in response to "new evidence." This "new evidence" contains no alleged facts about how districts were drawn back in 2021. It does not even consist of any new, contradictory statements by the witnesses whose testimony they seek to reopen. Instead, it is a legal argument by the Department of Justice (DOJ)—a third party with no personal knowledge—about changes to redistricting caselaw in 2024, as well as Governor Abbott's call for the Legislature to consider congressional redistricting in an upcoming special session. Neither the DOJ letter nor the Governor's Proclamation—both of which come nearly four years after the Legislature passed the current maps—constitute new evidence requiring the Court to reopen the record. And neither in any way impugns the truthfulness of Chairwoman Joan Huffman, Chris Gober, and Adam Kincaid.

Moreover, Plaintiffs rely on a DOJ suggestion that directly contradicts their own claims. Of the Congressional Districts listed in the DOJ Letter (CDs 9, 18, 29, and 33), CD 9 is the only district individually challenged as a racial gerrymander. And Plaintiffs' challenge to CD 9—as is true for their challenges to every district—alleges minority vote dilution. The DOJ, on the other hand, suggests the Texas Legislature may have been overly solicitous of minority voting power by improperly maintaining or creating minority coalition districts to comply with a now-defunct reading of the Voting Rights Act.

Either Plaintiffs met their burden at trial—in which case, re-opening the record is unnecessary—or they did not, making this new "evidence" cold comfort to dead claims. These latest

straws at which Plaintiffs grasp cannot alter the fundamental truth that events in 2025 have no bearing on the Legislature's intent in 2021—about which Plaintiffs have extensively deposed and examined the witnesses at issue.

## BACKGROUND

Nearly four years after filing the instant suit in October of 2021, the Court afforded Plaintiffs a four-week trial to prove claims of racially discriminatory intent by the Texas Legislature in redrawing electoral districts. Plaintiffs failed to make their case; hence, the instant gambit. There is no new evidence for Plaintiffs to uncover. Even if there were, Plaintiffs had every opportunity to uncover it during the lengthy and thorough discovery periods that largely defined this litigation.

One hundred and five depositions were taken in this case. Altogether, Plaintiffs have had no fewer than three opportunities to examine Chairwoman Huffman. She testified—including an exhaustive cross-examination—at the preliminary injunction hearing in January 2022. *See* PI Trans. Vol. 6 1/27/2022 25:13–154:6; PI Trans. Vol. 7 1/27/2022 4:6–37:4. Her deposition lasted from 9:17 am until 6:08 pm on July 28, 2022. Finally, plaintiffs' attorney cross-examined her for the better part of two days at trial on June 7, June 9, and June 10, 2025. *See* Trial Tr. 6/9/2025 AM 10:16–64:20; Trial Tr. 6/9/2025 PM 160:3–193:8; Trial Tr. 6/10/2025 AM 7:4–105:5. Plaintiffs likewise deposed numerous additional State Senators and Representatives seeking evidence of invidious discrimination; they found none, or else surely such testimony would already be in the trial record.

Plaintiffs likewise had ample opportunity to question Chris Gober and Adam Kincaid, neither of whom is a party to this action. Mr. Gober sat for deposition on July 12, 2022. The deposition spanned ten hours and followed substantial written discovery. Mr. Kincaid sat for deposition twice on one day in November 2023. The combined depositions lasted even longer than Mr. Gober's, starting at 8:31 am and not concluding until 11:03 pm. These depositions also followed written discovery. Plaintiffs played hours of video excerpts from Mr. Gober's and Mr. Kincaid's depositions in trial—sometimes, it appeared, only to kill time until another live witness arrived. Trial Tr. 5/24/2025 AM 12:2–42:7; Trial Tr. 5/29/2025 PM 5:9–92:5.

As Plaintiffs admit in the Motion, these witnesses testified "uniformly" that race was not a basis for their proposed district maps. ECF 1114 at 3. Likewise, the legislative record already admitted as evidence soundly supports that uniform testimony. *See*, *e.g.*, State Ex. 568 at 13–16; State Ex. 569 at 3–6. Plaintiffs' experts acknowledged that State Defendants consistently asserted that Texas's maps were drawn blind to race. *See* Trial Tr. 5/27/2025 PM 134:24–135:11. Counsel for MALC conceded at trial that Plaintiffs could point to no direct evidence in the legislative record or elsewhere that the map drawers relied on race. Trial Tr. 5/27/2025 PM 95:4–95:17; 6/4/2025 PM 116:18–117:1; 6/5/2025 AM 24:15–26:23. Notably, Plaintiffs do *not* seek to depose African American Democratic State Representative Toni Rose, whom State Defendants deposed, and who affirmatively testified under oath that the Legislature did not draw the redistricted maps with intentional racial discrimination. *See* 7/12/2022 Depo. T. Rose at 160:19–161:23 (Exhibit B). Nor do they seek to depose African American Democratic State Representatives Senfronia Thompson (Mrs. T) or Nicole Collier, who introduced the House amendments that would become the final version of the subject districts. *See*, *e.g.*, Joint Ex. 4154 at 52; *see also* Joint Ex. 4072–74, 4103.

During trial, the New York Times reported that the current Presidential Administration in DC was encouraging Republican leaders in Texas to redraw district lines "to try and save the party's endangered minority."[1] According to the article, "[t]he push from Washington unnerved some Texas Republicans," who worried that reworked boundaries "could backfire." *Id.* Plaintiffs questioned Chairwoman Huffman about the New York Times piece during cross examination. Chairwoman Huffman testified that she read the article the previous night and did not believe that the Texas Legislature was interested in redrawing the congressional map. Trial Tr. 6/10/2025 AM 53:25–54:7.

Other news outlets soon picked up the story. The Texas Tribune reported on June 11, 2025, that President Donald Trump's political advisors were urging Governor Abbott to call a special session to redraw the congressional map, with the aim of giving Republicans a better chance to flip

---

[1] J. David Goodman and Shane Goldmacher, *White House Pushes Texas to Redistrict, Hoping to Blunt Democratic Gains*, N. Y. TIMES (June 9, 2025) https://www.nytimes.com/2025/06/09/us/politics/trump-texas-redistricting.html.

3

Democrat-held seats in the 2026 midterm elections.[2] The Tribune's reporting also noted that the Administration faced resistance to a mid-decade draw, particularly from the Texas GOP congressional delegation, who worried that a new map would overextend the party's advantage—a "dummymander," in the words of State Defendants' expert, Sean Trende. Trial Tr. 6/9/2025 AM 82:9–83:23.

Governor Abbott announced on June 23, 2025, that he planned on calling a special session the following month. The press release provided an initial list of possible agenda items to be taken up by the Legislature.[3] Redistricting was not among them. Not long after this announcement, DOJ sent out the correspondence on which Plaintiffs now rely. Specifically, DOJ sent a letter addressed to Governor Abbott and Attorney General Paxton, arguing that the Fifth Circuit's en banc decision in *Petteway v. Galveston County*, 111 F.4th 596 (5th Cir. 2024) (en banc) eliminated the legal justification for creating or maintaining coalition districts. It identified four congressional districts in Texas that DOJ believed rested on this now-unsettled premise: CDs 9, 18, 29, and 33. According to the legislative record, as well as deposition and trial testimony, the boundary lines for each district were drawn by minority members of the Texas House and later adopted by both chambers. *See*, *e.g.*, Joint Ex. 4154 at 52; Joint Ex.4253 at 4:53:26 – 5:03:09; *see also* Joint Ex. 4072–74, 4103.

On July 9, 2025, the Governor issued a Proclamation identifying eighteen items for a special session beginning on July 21. Much of the agenda focused on responses to tragic flooding in the Hill Country, as well as delivering property tax cuts and the elimination of the STAAR test. ECF 1114-1 In a single sentence, the Governor also directed the Legislature to consider "a revised congressional redistricting plan in light of constitutional concerns raised by the U.S. Department of Justice." *Id.* at 3. The Proclamation nowhere "approv[ed]" the DOJ's claims, indicated "agreement" with the letter, or made new "assertions" that "contradict[]" the testimony offered at trial.

---

[2] Owen Dahlkamp & Natalia Contreras, *Trump Aides Want Texas to Redraw Its Congressional Maps to Boost the GOP. What Would that Mean?*, TEX. TRIB. (June 11, 2025) https://www.texastribune.org/2025/06/11/texas-congress-midcycle-redistricting-trump-republicans/.
[3] Press Release, Governor Greg Abbott, "Governor Abbott Announces Special Session Date, Initial Agenda" (Jun. 23, 2025), https://gov.texas.gov/news/post/governor-abbott-announces-special-session-date-initial-agenda.

*Contra* Emergency Motion at 1, 3, 4, 6, 7, 8.

On July 11, 2025, the Texas Attorney General's office responded to the DOJ by letter, attached hereto as Exhibit A and incorporated herein by this reference. That letter reiterated what the trial evidence and legislative record already make clear: "the Texas legislature did not pass race-based electoral districts for any of [its] three political maps."

## STANDARD

In determining whether to reopen discovery, a trial court should examine, *inter alia*: (1) the importance and probative value of the evidence; (2) the reason for the moving party's failure to introduce the evidence earlier; and (3) the possibility of prejudice to the non-moving party. *Garcia v. Woman's Hosp. of Texas*, 97 F.3d 810, 814 (5th Cir. 1996); *see Rivera-Flores v. Puerto Rico Telephone Co.*, 64 F.3d 742, 746 (1st Cir.1995). Additionally, "[t]rial courts as a rule act within their discretion in refusing to reopen a case where the proffered 'new' evidence is insufficiently probative to offset the procedural disruption caused by reopening." *Garcia*, 97 F.3d at 814 (quoting *Rivera-Flores*, 64 F.3d at 746). Consideration should be given to orderly proceedings and a need for closure; movants therefore have the burden to show that the probative value of reopening a case offsets the disruption caused. *See generally*, *Corbett v. Peters*, 2008 WL 11349781 at *1 (N.D. Tex. Dec 16, 2008); *Alvarez v. AMB-Trans, Inc.*, 2012 WL 5453518 at *7 (W.D. Tex. November 7, 2022).

Evidence is sufficiently probative when the "new" evidence is critical to the case because it is the only evidence on an essential element of the claim. *Garcia*, 97 F.3d at 814. On the other hand, new evidence regarding the credibility of a witness is generally insufficient to require reopening a case. *See Thomas v. S.S. Santa Mercedes*, 572 F.2d 1331, 1336 (9th Cir. 1978) (denying a motion to reopen the trial and consider "new" evidence affecting the credibility of a witness).

## ARGUMENT AND AUTHORITIES

Plaintiffs have effectively accused a sitting Texas State Senator, and two additional fact-witnesses, of committing perjury. The primary basis for this accusation is an out-of-court legal argument about recent changes to redistricting caselaw made by a non-party four years after Texas reapportioned its congressional maps. A non-party's observations about 2024 changes in legal

5

doctrine are in no way probative about how Texas's maps were drawn in 2021. And the DOJ's arguments—that the Governor merely cites to—say nothing at all about these *witnesses'* beliefs.

The trial record belies Plaintiffs' contention that Chairwoman Huffman, Chris Gober and Adam Kincaid potentially gave false testimony. As Plaintiffs concede, each witness identified in their emergency motion was questioned about the redistricting process, and all answered "uniformly" that race was not a factor in their proposed maps. Their testimony is corroborated by SB 6's legislative history, including contemporaneous statements and documents made while the Legislature drafted SB 6 and submitted for this court's consideration at trial.

Against this evidentiary backdrop, there is simply no probative value to re-examining three witnesses—already examined at length—about post-trial events having nothing to do with them in hopes of unearthing as-of-yet undiscovered evidence of invidious intent now four years passed. Plaintiffs' alarmism cannot disguise their desperation: Plaintiffs' claims must rise or fall on the complete trial record, and Plaintiffs fail to articulate a basis to reopen that already immense record.[4]

There Is No New Evidence To Consider. Plaintiffs cite two pieces of "new evidence" they claim justify reopening the already extensive record in this case: a letter sent to the Texas Governor and the Texas Attorney General by the DOJ (the DOJ Letter) and the Governor's subsequent proclamation (the Proclamation). Neither piece of correspondence constitutes *evidence* and therefore the record should remain closed.

### A. DOJ's Legal Assertions Are Not Evidence.

*First*, neither the DOJ nor the Texas Governor have personal knowledge about how the maps were drawn. As Plaintiffs admit in their Motion, the actual principals involved in the process have been deposed, with some providing additional testimony either at the preliminary injunction hearing or at the more recent trial. Since the inception of this case, Plaintiffs have erroneously argued that the relevant Texas maps were drawn with racial intent. And in prosecuting their case, Plaintiffs have deposed every individual with knowledge of how the maps were drawn. The legislators and

---

[4] Plaintiffs offered testimony from 42 witnesses, prepared more than 1,350 Plaintiff Exhibits, offered Joint Exhibits numbering up to 4314, and concluded trial with a more than 4,700-page transcript.

staff involved in the process have also, in some cases, provided live testimony, either at the preliminary injunction hearing, at the most recent trial, or both.

DOJ—a third party with no actual knowledge of Texas's redistricting process—has no basis for this contention, nor does it cite one. Moreover, the DOJ was a *party* to this litigation for years and never brought a coalition claim—let alone a claim that Texas improperly *protected* coalitions of minority voters. Indeed, long after the *Petteway* decision, DOJ dismissed its claims in this case. DOJ's new argument—that the Texas Legislature unlawfully kept coalition districts together where it did not need to—is the exact opposite of Plaintiffs' and thus is wholly irrelevant to Plaintiffs' claims. The DOJ Letter's *ipse dixit* is therefore not evidence—new, or otherwise—of racial gerrymandering. Moreover, conclusory allegations are not competent evidence, even at the summary judgment phase. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The DOJ may claim the "record" evidences State-honored coalition districts, but: (1) the Plaintiffs have argued for four years that same "record" shows the State *destroyed* or failed to create coalition districts; and (2) that same "record" is already before the Court.

The DOJ Letter, like the Plaintiffs, does not disaggregate partisan motives from claimed racial ones. As discussed in the *New York Times* article cited above, the Presidential Administration wants to bolster a partisan advantage in upcoming elections and felt that the Texas Legislature had not been partisan *enough* in 2021. That is not meant as criticism. Indeed, Attorney General Paxton today publicly indicated his support for proposed redistricting efforts "to take advantage of recent changes to the legal and political landscape."[5] Seeking partisan advantage does not violate the Constitution and does not impugn the motives of the 2021 map drawers. *See Rucho v. Common Cause*, 588 U.S. 684 (2019).

### B. The Proclamation is Not Evidence.

Plaintiffs allege that Governor Abbott "approvingly" cited the DOJ Letter, but conveniently do not quote the language upon which they rely. Contrary to Plaintiffs' gross misrepresentation,

---

[5] Texas Attorney General (@TXAG), X ( Jul. 12, 2025 at 10:36 CT), https://x.com/TXAG/status/1944058275525193786.

the Proclamation simply added the topic of redistricting to the list of items to be considered in the upcoming special session "in light of Constitutional concerns" raised by the DOJ in its letter. *See* July 9, 2025, Proclamation, p.2. The Proclamation neither "approves" of the DOJ allegation nor confirms it. Instead, the Texas Legislature is now free to redistrict, or not, for additional partisan gain, or any reason it determines appropriate. Plaintiffs deliberately misconstrue the Governor's reference to the DOJ's statement as some sort of tacit admission of racially drawn map. The DOJ's letter noted that the caselaw surrounding federal redistricting has changed in recent years, and Governor Abbott's proclamation merely pointed to that letter when calling for the members of the Texas Legislature "to consider and act upon" a revised congressional redistricting plan.

The Texas Attorney General, meanwhile, provided a separate response to the DOJ Letter which clearly states that: "**the Texas Legislature did not pass race-based electoral districts for any of [its] political maps.**"[6]

### C. Additional Testimony from Previously-Deposed Witnesses Cannot Save Plaintiffs' Claims.

The DOJ Letter suggests that Texas—to comply with the VRA—may have racially gerrymandered Congressional Districts 9, 18, 29, and 33. Plaintiffs seize on this suggestion as grounds to demand re-examination of Adam Kincaid, Chris Gober, and Chairwoman Joan Huffman. The demand is baffling: Those witnesses did not write the Letter (or the Proclamation) upon which Plaintiffs seize, nor did they draw the Districts identified in DOJ's letter. Districts 9, 18, and 29 reached their final form through Floor Amendments 17 and 18, authored and offered by Democratic Representative Senfronia Thompson, an African American and Dean of the Texas House. *See* Joint Ex. 4154 at 52; *see also* Joint Exs. 4073–74, 4103. Amendment 17—and thus the final enacted map—made significant changes to CDs 9, 18, and 29 as compared with the initially proposed Plan C2101.[7] CD 33, in like fashion, is the result of Floor Amendment 16, authored by Democratic Representative Nicole Collier, also an African American. *See* Joint Ex. 4154 at 52, *see also* Joint Exs. 4072,

---

[6] *See* attached July 11, 2025, correspondence (Exhibit A) at p.2 (emphasis in original).
[7] *Compare* LULAC Ex. 196 at 17, 33 (C2101 Map Packet) *with* State Ex. 347 (C2153 Map Packet) at 7–10 *and* Joint. Ex. 1047 at 18, 34 (C2193 Map Packet).

4103. Amendment 16—and thus the final enacted map—made meaningful changes to CD 33, as compared with the initially proposed Plan C2101.[8]

The enacted versions of CDs 9, 18, 29, and 33 were not the result of the actions of any witness that Plaintiffs seek to reexamine. Instead, they were the product of individual members of the Texas House reaching consensus with members of the Congressional delegation and harnessing their unique knowledge of the constituencies they represent to develop performing districts. If Plaintiffs still need evidence about the intent behind these districts, Plaintiffs should have deposed the authors of those districts during discovery. Plaintiffs are certainly not now—post-trial—entitled to *re*-depose previously-deposed and -examined witnesses whose role in crafting the final districts at issue is well established and ultimately gave way to the changes made in the State House.

## I. Plaintiffs Had a More Than Sufficient Chance to Question Fact Witnesses.

The Plaintiffs allege that the DOJ's July 7, 2025, correspondence is new information that it could not use at trial, but Plaintiffs already knew about presidential pressure to redistrict when they cross examined Chairwoman Huffman, as shown above. Moreover, the core issue of whether the involved districts were racially gerrymandered, as opposed to drawn for partisan advantage and for the protection of incumbents, was an integral factual dispute at trial. Even taking Plaintiffs allegations at their best, a failure to adequately pursue their desired line of questioning at deposition or trial does not justify reopening the case. *See generally Alvarez*, 2012 WL 5453518 at *7. These subsequent developments are not new evidence. They also do not suggest that Plaintiffs lacked opportunity to discover the very motives that Plaintiffs say underlie these developments.

## II. Alleged "New Evidence" Would Prejudice Defendants and Disrupt the Proceedings.

Now, after trial, Plaintiffs demand additional discovery from non-parties after four years of litigation. They have already deposed the three witnesses named in their Motion. Their request is patently unreasonable. Compelling *more* testimony from these witnesses will necessarily cause the Defendants meaningless expense. This fact alone demonstrates "at least some prejudice." *Corbett*

---

[8] *Compare* LULAC Ex. 196 at 17, 28, 42 (C2101 Map Packet) *with* Joint Ex. 508 at 7, 9–13 (C2152 Map Packet) *and* Joint. Ex. 1047 at 18, 28, 43 (C2193 Map Packet).

*v. Peters*, No. 3:07-CV-0396-N, 2008 WL 11349781, at *1 (N.D. Tex. Dec. 16, 2008); *see also Garcia*, 97 F.3d at 814. Reopening the record to give Plaintiffs a second bite at the proverbial apple undoubtedly subjects Texas to undue burden, because Plaintiffs have already had a "full and fair opportunity" to investigate their baseless racial gerrymandering claims. *In Joy Technologies, Inc. v. Flakt, Inc.*, 901 F. Supp. 180, 183 (D. Del. 1995).

Further, reopening the case would require moving all the existing deadlines in the case. Findings of Fact and Conclusions of Law cannot be finalized if the case is left open. Likewise, responses to the Plaintiffs' present Executive Summaries would be problematic before the final close of evidence. In deciding whether to reopen a case, "some consideration should be given to orderly proceedings and a need for closure." *Corbett*, 2008 WL 11349781 at *1; *see also Rivera-Flores*, 64 F.3d at 746 (noting that requested additional discovery could well result in even more necessary discovery— "the proffered 'new' evidence is insufficiently probative to offset the procedural disruption [which may be] caused by reopening [the case].").

At the very least, this Court should not "schedule a hearing [to collect new evidence] prior to July 21, 2025." Plaintiffs rightly note that Chairwoman Huffman may soon be busy with legislative duties drawing new congressional maps. Emergency Motion at 7. But that only highlights the fact that there may be new maps in roughly one month's time. At most, then, Plaintiffs' own observations provide an argument for staying these proceedings rather than hastening them.

## CONCLUSION AND PRAYER

The Plaintiffs' claimed new evidence has no actual probative value, adds nothing to the four years' worth of evidence and testimony already introduced at the trial of this case, and would cause unnecessary disruption to the current post-trial schedule and unneeded expense to all parties. Plaintiffs have had more than adequate opportunity to question every person involved in the redistricting process. The Court should deny the Motion.

ACCORDINGLY, Defendants respectfully pray that the Court deny Plaintiffs' Emergency Motion to Reopen Record and Take Additional Testimony in all things, and for such other and further relief, either at law or in equity, as to which they are justly entitled.

Date: July 12, 2025

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

RYAN D. WALTERS
Deputy Attorney General for Legal Strategy

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
Special Litigation Division
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Phone: (512) 936-1700
Fax: (512) 457-4410
ryan.kercher@oag.texas.gov
kathleen.hunker@oag.texas.gov
william.wassdorf@oag.texas.gov
david.bryant@oag.texas.gov
zachary.rhines@oag.texas.gov
munera.al-fuhaid@oag.texas.gov
zachary.berg@oag.texas.gov
ali.thorburn@oag.texas.gov
kyle.tebo@oag.texas.gov
mark.csoros@oag.texas.gov

Respectfully submitted,

RYAN G. KERCHER
Chief, Special Litigation Division
Texas Bar No. 24060998

*/s/ Kathleen T. Hunker*
KATHLEEN T. HUNKER
Deputy Chief, Special Litigation Division
Texas Bar No. 24118415

WILLIAM D. WASSDORF
Associate Deputy AG for Civil Litigation
Texas Bar No. 24103022

DAVID BRYANT
Senior Special Counsel
Texas Bar No. 03281500

ZACHARY L. RHINES
Special Counsel
Texas Bar No. 24116957

MUNERA AL-FUHAID
Special Counsel
Texas Bar No. 24094501

ZACHARY W. BERG
Special Counsel
Texas Bar No. 24107706

ALI M. THORBURN
Assistant Attorney General
Texas Bar No. 24125064

KYLE S. TEBO
Special Counsel
Texas Bar No. 24137691

MARK A. CSOROS
Assistant Attorney General
Texas Bar No. 24142814

COUNSEL FOR STATE DEFENDANTS

## CERTIFICATE OF SERVICE

    I certify that on July 12, 2025, a true and accurate copy of the foregoing document was filed and served electronically (via CM/ECF).

                                            */s/ Kathleen T. Hunker*
                                            KATHLEEN T. HUNKER
                                            Deputy Chief, Special Litigation Division