IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, | § § § | |
| *Plaintiffs,* | § | Case No. 3:21-cv-00259-DCG-JES-JVV |
| | § | [Lead Case] |
| v. | § | |
| | § | & |
| GREG ABBOTT, *et al.*, | § | |
| *Defendants.* | § § | All Consolidated Cases |

**STATE DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR HEARING AND MOTION TO VACATE ORDER SUSPENDING DEADLINE TO FILE PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Defendants Greg Abbott, in his official capacity as Governor of Texas; Jane Nelson, in her official capacity as Secretary of State of Texas; Dave Nelson, in his official capacity as Deputy Secretary of State; and the State of Texas file this response to the Brooks, LULAC, and Gonzales Plaintiffs' Motion to Schedule Preliminary Injunction Hearing and to Vacate August 11, 2025 Order (ECF No. 1127).

**I.   Procedural History**

On August 11, 2025, this Court ordered the suspension of the September 3, 2025 deadline for the Parties' proposed findings of fact and conclusions of law. ECF No. 1126. "The viability of several claims in the case," the Court noted, "may now depend on whether the Texas Legislature enacts redistricting legislation in its current Called Session or a subsequent legislative session, the Supreme Court's pending decisions in *Louisiana v. Callais* . . . and *Robinson v. Callais* . . . and whether the plaintiffs seek (and the Supreme Court ultimately grants) *certiorari* in *Turtle Mountain Band of Chippewa Indians v. Howe*." ECF No. 1126, 1–2. The Court judged suspension of the briefing deadline to be the "prudent" course of action "pending resolution" of the referenced matters and "until the law in this area becomes more settled." *Id.* at 2.

1

After announcing that they "intend to expeditiously supplement their complaints," Plaintiffs requested in their August 18 motion not only that the Court vacate its August 11 Order suspending post-hearing briefing but also that it "set aside dates for an expedited September hearing to adjudicate forthcoming motions for preliminary injunctions" about those yet-to-be-articulated claims. ECF No. 1127, 2.

Issued in response, the Court's August 20 Order Scheduling Status Conference, ECF No. 1128, sets a non-evidentiary status conference for August 27, 2025, and noted that the discussion of Plaintiffs' motion to be had at that conference "will include the potential scheduling of an evidentiary hearing on an anticipated Motion for Preliminary Injunction." ECF No. 1126, 1–2. The Order announces the Court's availability for an evidentiary hearing the weeks of September 15, September 29, and October 6, 2025. *Id.* at 2.

Promptly upon receipt of the Court's August 20 Order, Defendants' counsel reached out to opposing counsel, and a meet and confer was scheduled for the morning of August 22 at Defendants' initiative to discuss matters likely to arise at the upcoming status conference. Plaintiffs declined to provide specifics regarding which districts under a new map they intended to challenge, or under what theories, or whether all or only some of such districts/claims would be at issue in their forthcoming motions.

Counsel stated that their analysis is ongoing, though counsel for the Brooks and Gonzales Plaintiffs suggested that Defendants would receive notice of which districts are being challenged before the status conference. It is unclear if this was an undertaking regarding pleading amendments solely or if it also covered service of a motion for injunctive relief. None of the other Parties' counsel made an explicit undertaking about the timing of amended Complaints or motions for a preliminary injunction.

For the reasons detailed below, it would be ill-advised to proceed with an evidentiary hearing within Plaintiffs' desired timeframe. Advancing now to such a hearing would be procedurally unfair for Defendants as well as impossible as a practical matter for all Parties.

## II.     The Circumstances Are Not Ripe for Scheduling a Preliminary Injunction Hearing

### A.

Plaintiffs have announced that they expect to amend their pleadings to account for changes to the Texas Congressional map under consideration by the Texas Legislature. If Plaintiffs do, in fact, amend their pleadings and thereafter seek injunctive relief, Defendants would not oppose a preliminary injunction hearing being held at an appropriate date and within an appropriate timeframe. Yet Defendants urge that it would be premature to set a September hearing now, in anticipation of those potential future events, as demanded by Plaintiffs.

It is hard for Defendants to imagine how any of the possible sets of hearing dates evoked in the Court's August 20 Order would allow adequate time for sufficient clarity to develop regarding the range of factual and legal matters that are in flux. Perhaps just as importantly, Defendants have difficulty conceiving how any of those hearing dates would permit the Parties to marshal their evidence and arguments properly, with Defendants' particular concern being an ability to prepare expert evidence timely.

Plaintiffs have offered no inkling about which Congressional districts they now believe are subject to challenge, nor have they provided any information about the factual and legal bases underlying any forthcoming challenges. A still further question mark hangs over the extent to which, in light of the evolving circumstances, the challenges, arguments, and theories put forward earlier in this civil action maintain their relevance.

This morning's meet and confer session described above unfortunately did little to inform Defendants about these key matters.

What is perhaps most striking about Plaintiffs' manner of proceeding is that they took the liberty of announcing a forthcoming challenge to maps well before those maps had made their way through the Legislative process—and, perforce, before any of the litigants could have assessed those maps' legal compliance. This suggests that Plaintiffs' disagreement is more with a particular partisan outcome than with any interpretation of the law.

**B.**

Only once Plaintiffs amend their claims and petition the Court for injunctive relief will Defendants be able to scrutinize the boundaries of the districts so placed in issue. Defendants cannot be expected today to engage in the extremely onerous, random, and cost-inefficient exercise of examining in a vacuum every last contour of every one of Texas's 38 proposed Congressional districts in the hope that they will correctly guess whatever "flaw" Plaintiffs might later identify.

Before crafting a response to any new claims or requests for injunctive relief that Plaintiffs may ultimately formulate, Defendants will need to undertake factual and legal analyses of the newly-challenged districts, which could involve, depending on the time available, significant factual inquiries, including the review of the Legislative record as well as, potentially, the deposing of significant expert and lay witnesses. Defendants will inevitably also need to furnish rebuttal expert reports, and those experts will need a reasonable amount of time to analyze and respond to Plaintiffs' new claims and/or expert support.

The necessity of conducting such detailed claim analysis is reinforced by the fact that a core consideration to be examined before granting or denying injunctive relief is the likelihood of success on the merits. *Lake Charles Diesel, Inc. v. GMC*, 328 F.3d 192, 195–96 (5th Cir. 2003). This necessity is compounded by the nature of the particular inquiry involved when assessing the legality of congressional district map-drawing exercises. Assessing the *prima facie* legality of dozens of districts, or of even a single district, involves fine data analyses and careful scrutiny of the specific choices made in drawing boundaries in one way as opposed to another. This is not an exercise that easily lends itself to the partial, summary, abbreviated, or truncated evidence-gathering approaches often employed to gain time in injunctive relief matters.

All of the foregoing is to say that assessing the legality of a legislative district and the likelihood of success on the merits necessarily and unavoidably entails, even at the preliminary injunction stage, the gathering and assessment of a significant corpus of factual and expert evidence. In a case like the present one, this is not something that can be compressed into a fortnight.

The impracticality—and indeed the impossibility—of rushing to a hearing in September becomes obvious, Defendants would posit, when one considers by analogy the extensive factual and expert evidence that all Parties had to compile in advance of the May–June 2025 evidentiary hearing in this case. Another useful comparator is the schedule the Court implemented in December 2021 to govern discovery and the subsequent hearing on the Brooks Plaintiffs' November 2021 Complaint for Declaratory and Injunctive Relief—which related to a single Texas senate district.

Finally, Plaintiffs' desire for speed must not unduly prejudice the Defendants' right, if and when amended pleadings are served, to consider and pursue the possibility of bringing a motion to dismiss or other dispositive motion.

Defendants therefore request that if new claims are raised and a motion for injunctive relief is filed, that any deadline to respond thereto be set by the Court only after the Defendants and the Court can make an informed determination about the amount of time Defendants will reasonably need to analyze the claims, to locate and gather any relevant factual evidence, and to solicit and obtain expert witness evidence. Defendants cannot make this assessment shooting in the dark—*i.e.*, before the final maps are enacted, new claims are raised, and injunctive relief is requested.

But even assuming clarity were to develop on all of these matters in the very near future, given the factual and legal analyses that will need to be undertaken, Defendants cannot envision any scenario, even under the best of circumstances, in which it could be prepared to proceed to a hearing on injunctive relief before the week of October 6, 2025.

Plaintiffs' latest demand for immediate action from the Court comes in the context of their years-long failure to seek relief on their previous claims. In 2021, Plaintiffs filed a flurry of lawsuits full of sturm and drang about intentional discrimination and vote dilution, but could not be bothered to seek preliminary injunction relief until weeks after the candidate filing period had opened. In the subsequent litigation, Plaintiffs repeatedly chose discovery fights over a trial date, and—indeed—only tried the case at the Court's prompting nearly four years after litigation began. Had the Court not set the matter for trial *sua sponte*, there is no reason to believe Plaintiffs would

have sought relief on the districts they challenged so heatedly in 2021. Now, the sturm and drang have returned, and Plaintiffs will argue they've learned from their 2021 mistakes by seeking injunctive relief before the upcoming candidate filing deadline in November. But in 2022, when Plaintiffs realized they could not immediately redraw Texas maps to salvage partisan losses in the 2022 and 2024 election cycles, their urgency to right supposed racial wrongs evaporated. Now, with five new congressional seats leaning towards Republican advantage, Plaintiffs again invoke alleged racial injustice to demand immediate action from the Court, and at the expense of State Defendants' ability to respond. This history should inform the Court's assessment of Plaintiffs' renewed vigor.

Additionally, in evaluating the necessity of expedited preliminary injunction proceedings, the Court should consider the measure of any relief Plaintiffs might receive from such proceedings. Should Plaintiffs succeed in enjoining a new 2025 map, the default will be the 2021 map that Plaintiffs just spent four weeks telling the Court was a vote-diluting racial gerrymander. Moreover, should Plaintiffs seek relief under the VRA, and should the Court be inclined to grant such relief, such a ruling may fall apart by the end of the current Supreme Court term—precisely between the 2026 primary and general elections.

### III. Deadline for the Proposed Findings of Fact and Conclusions of Law

Concerning the deadline for the Parties to present proposed findings of fact and conclusions of law, Plaintiffs ask that the Court "vacate its August 11 order suspending the deadline to submit proposed factual findings and legal conclusions regarding Plaintiffs' state legislative claims and proceed to expeditiously enter final judgment on those claims." ECF No. 1127, 6; *see also id.* at 1 (requesting vacatur of the August 11 Order "as to the state legislative challenges"). To support this request, Plaintiffs allege that "Plaintiffs' constitutional claims against the Texas House of Representatives and Senate maps . . . are unaffected by . . . the pending Supreme Court cases." *Id.* at 3; *see also id.* at 5 ("There is no justification whatsoever to withhold judgment on Plaintiffs' constitutional challenges to the state legislative map.").

Plaintiffs' proposal is impractical for two reasons.

First, it appears that what Plaintiffs are proposing is for the Parties to submit two separate sets of findings of fact and conclusions of law, the first dealing with the state legislative districts, and then a second set dealing with the U.S. House map. But doing so will necessarily involve both duplication from submission to submission as well as a loss of efficiency from the staggered/stop and start nature of the filings. The facts and law on the different claims are so intertwined that it will be difficult to disentangle the claims and treat them separately. Moreover, while staggered submissions may not pose a significant burden on those litigants that have asserted relatively few claims, like the Brooks Plaintiffs, the Defendants, by contrast, have to respond to all claims of all Plaintiffs, an already burdensome task that will be rendered even more so by proceeding in piece-meal fashion.

The second reason Plaintiffs' proposed approach is impractical is even more stark: it would require the Parties to proceed with the findings of fact and conclusions of law in the same very compressed period of time when they will be racing to prepare written submissions and oral argument for an upcoming hearing on Plaintiffs' announced requests for injunctive relief.

For all of these reasons, Defendants respectfully request that the Court maintain, for the time being, its August 11, 2025 suspension of the deadline for the Parties' proposed findings of fact and conclusions of law.

If the Court were nevertheless inclined to accede to Plaintiffs' request and order submission of limited-scope findings of fact and conclusions of law, the initially scheduled deadline of September 3, 2025, is no longer reasonably achievable for Defendants. Much of the trial team temporarily ramped down after the Court's August 11 order and was dispatched onto other urgent State matters. To complete limited-scope briefing, Defendants would need an additional amount of time to be added to the initial deadline of September 3, 2025 that is equal, at the very least, to the time that will have run between August 11 and the date of the Court's order setting a new deadline. And depending on how the Court elects to proceed with a hearing on any requested preliminary injunction, additional adjustment may be required in the Court's discretion.

<div style="display: flex;">
<div>

Date: August 22, 2025

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

RYAN D. WALTERS
Deputy Attorney General for Legal Strategy

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
Special Litigation Division
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Phone: (512) 936-1700
Fax: (512) 457-4410
ryan.kercher@oag.texas.gov
kathleen.hunker@oag.texas.gov
william.wassdorf@oag.texas.gov
david.bryant@oag.texas.gov
zachary.rhines@oag.texas.gov
munera.al-fuhaid@oag.texas.gov
zachary.berg@oag.texas.gov
ali.thorburn@oag.texas.gov
kyle.tebo@oag.texas.gov
mark.csoros@oag.texas.gov

</div>
<div>

Respectfully submitted,

*/s/ Ryan G. Kercher*
RYAN G. KERCHER
Chief, Special Litigation Division
Texas Bar No. 24060998

KATHLEEN T. HUNKER
Deputy Chief, Special Litigation Division
Texas Bar No. 24118415

WILLIAM D. WASSDORF
Deputy Chief, General Litigation Division
Texas Bar No. 24103022

DAVID BRYANT
Senior Special Counsel
Texas Bar No. 03281500

ZACHARY L. RHINES
Special Counsel
Texas Bar No. 24116957

MUNERA AL-FUHAID
Special Counsel
Texas Bar No. 24094501

ZACHARY W. BERG
Special Counsel
Texas Bar No. 24107706

ALI M. THORBURN
Assistant Attorney General
Texas Bar No. 24125064

KYLE S. TEBO
Special Counsel
Texas Bar No. 24137691

MARK A. CSOROS
Assistant Attorney General
Texas Bar No. 24142814

COUNSEL FOR STATE DEFENDANTS

</div>
</div>

## CERTIFICATE OF SERVICE

I certify that on August 22, 2025, a true and accurate copy of the foregoing document was filed and served electronically (via CM/ECF).

<div style="text-align:right">

*/s/ Ryan G. Kercher*
RYAN G. KERCHER
Special Counsel

</div>