**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,<br><br>    *Plaintiffs*,<br><br>v.<br><br>GREG ABBOTT, in his official capacity as Governor of the State of Texas, *et al.*,<br><br>    *Defendants*. | CIVIL ACTION NO.<br>3:21-cv-00259-DCG-JES-JVB<br>[Lead Case]<br>&<br>All Consolidated Cases |

<u>**LULAC PLAINTIFFS' FIRST SUPPLEMENTAL COMPLAINT**</u>

Pursuant to Federal Rule of Civil Procedure 15(d), LULAC Plaintiffs file this First Supplemental Complaint setting forth events that occurred after the filing of their Fifth Amended Complaint on March 26, 2025, and pleading additional claims based on those events. This First Supplemental Complaint is filed in addition to, not in replacement of, Plaintiffs' Original Complaint. LULAC Plaintiffs supplement their allegations as follows:

**INTRODUCTION**

1.    On August 23, 2025, the Texas Legislature enacted a new congressional redistricting map in a special legislative session.

2.    Despite public demands over several weeks from President Donald Trump that Texas re-draw its congressional map, Defendant Governor Abbott waited to call the Legislature into a special session to redistrict until he received a letter from the United State Department of Justice ("DOJ") that criticized majority minority congressional districts as racial gerrymanders.

3.     The new Plan C2333 abandons the State's obligation under Section 2 of the federal Voting Rights Act to provide Latino voters an equal opportunity to participate in elections and elect their candidate of choice.  The new map weakens or completely eliminates the ability of Latino voters to elect their preferred candidates in *existing* Latino majority districts across the state. The new district boundaries intentionally discriminate against Latino voters, including assigning them to districts based on their race to satisfy arbitrary numerical targets and without sufficient justification under the Voting Rights Act.

4.     Plan C2333 violates the federal Voting Rights Act, 52 U.S. Code § 10101 *et seq.* ("VRA") in intent and effect.  Plan C2333 also violates the 14th Amendment to the U.S. Constitution because it intentionally discriminates against and racially gerrymanders Latino voters.  Plan C2333:

    a.   eliminates CD29, a Latino majority district that provided Latino voters an equal opportunity to elect their candidate of choice in compliance with Section 2 of the VRA;

    b.   eliminates Latino majority CD35, a Latino majority district that provided Latino voters an equal opportunity to elect their candidate of choice in compliance with Section 2 of the VRA;

    c.   weakens Latino voting strength in CD34 with the goal of preventing Latino voters from electing their preferred candidate to Congress;

    d.   weakens Latino voting strength in CD27 with the goal of preventing the emergence of a Latino opportunity district in which Latino voters elect their preferred candidate to Congress;

e.  packs and cracks Latino population across the Rio Grande Valley and South Texas with the goal of preventing Latino voters from electing their preferred candidate to Congress;

f.  creates a new CD9 that is a prohibited "facade" district with a razor thin Hispanic citizen voting age majority that does not offer Latinos the opportunity to elect their preferred candidate;

g.  creates a new CD35 that is a prohibited "facade" district with a razor thin Hispanic citizen voting age majority that does not offer Latinos the opportunity to elect their preferred candidate;

h.  weakens Latino voting strength in CD33 while boosting Anglo voter influence in the district;

i.  fails to create additional Latino citizen voting age majority districts in:

    i.   Harris County;

    ii.  the Dallas-Ft. Worth Metroplex; and

    iii. South/Central Texas, encompassing a geographic area including portions of Nueces, San Patricio, Bee, Goliad, Karnes, Gonzales, Caldwell, Bastrop, Travis and Williamson counties.

5.    Although sponsors and supporters of Plan C2333 claim that the new map seeks to gain partisan advantage, Plan C2333 systematically and purposefully disadvantages Latinos and other voters of color when compared to Anglo voters.  Plan C2333 even maximizes Anglo voter influence by, in part, maintaining Democratic-leaning districts that elect Anglo members of Congress while eliminating or reducing the strength of minority voters in Democratic-leaning districts that elect Latino or Black members of Congress.

## SUPPLEMENTAL PLAINTIFF ALLEGATIONS

6.      In Plan C2333, LULAC Member A lives in CD27 which has 36.8% HCVAP and does not provide Latino voters an equal opportunity to elect their candidate of choice. LULAC Member A lives in an area where a HCVAP majority district can and should be created that will provide Latino voters an equal opportunity to elect their preferred candidate. One such example of a Latino opportunity district is LULAC Demonstrative District CD27 in C2199, where LULAC Member A also lives. Because LULAC Member A does not live in a Latino majority district that offers an equal opportunity to elect the Latino preferred candidate, LULAC Member A's vote is diluted. LULAC Member A is further injured by the changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos.  LULAC Member A lives and votes in Corpus Christi, Texas, in a majority Latino area that was carved out of CD34 and placed into CD27 to reduce the Latino population of CD34.  LULAC Member A is thus further injured by having been placed in CD27 because of her race in violation of the 14th Amendment to the U.S. Constitution.

7.      In Plan C2333, LULAC Member B lives in CD34, which has been crafted to reduce Latino voting strength and does not provide Latino voters an equal opportunity to elect their candidate of choice. LULAC Member B lives in an area where two or more balanced HCVAP majority districts can and should be created that provide Latino voters with an equal opportunity to elect their preferred candidate. One such example of a Latino opportunity district is LULAC Demonstrative District CD27 in C2199, where LULAC Member B also lives. Because LULAC Member B does not live in a Latino majority district that offers an equal opportunity to elect the Latino preferred candidate, LULAC Member B's vote is diluted. LULAC

Member B is further injured by the changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos.

8.    In Plan C2333, LULAC Member C lives in CD34, which has been crafted to reduce Latino voting strength and does not provide Latino voters an equal opportunity to elect their candidate of choice. LULAC Member C lives in an area where two or more balanced HCVAP majority districts can and should be created that provide Latino voters with an equal opportunity to elect their preferred candidate. One such example of a Latino opportunity district is LULAC Demonstrative District CD27 in C2199, where LULAC Member C also lives. Because LULAC Member C does not live in a Latino majority district that offers an equal opportunity to elect the Latino preferred candidate, LULAC Member C's vote is diluted. LULAC Member C is further injured by the changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos.

9.    In Plan C2333, LULAC Member D lives in CD36, which has 19.5% HCVAP and does not provide Latino voters an equal opportunity to elect their candidate of choice. LULAC Member D lives in an Harris County, where a HCVAP majority district can and should be created that will provide Latino voters an equal opportunity to elect their preferred candidate. One such example of a Latino opportunity district is LULAC Demonstrative District 29 in C2199, where LULAC Member D also lives. Because LULAC Member D does not live in a Latino majority district that offers an equal opportunity to elect the Latino preferred candidate, LULAC Member D's vote is diluted. LULAC Member D is further injured by the changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos.  LULAC Member D is further injured by having been placed in CD27 because of his race in violation of the 14th Amendment to the U.S. Constitution.  Redistricters assigned LULAC Member D to

CD36 as part of the effort to achieve (but not exceed) a mechanical racial target of 50%+1 Hispanic CVAP in CD9.

10.     In Plan C2333, LULAC Member E lives in CD9, which has 50.3% HCVAP and does not provide Latino voters an equal opportunity to elect their candidate of choice. LULAC Member E lives in Harris County, where two or more balanced HCVAP majority districts can and should be created that will provide Latino voters an equal opportunity to elect their preferred candidate. Because LULAC Member E does not live in a Latino majority district that offers an equal opportunity to elect the Latino preferred candidate, LULAC Member E's vote is diluted. LULAC Member E is further injured by the changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos.  LULAC Member E is further injured by having been placed in CD9 because of her race in violation of the 14th Amendment to the U.S. Constitution. Redistricters assigned LULAC Member E to CD9 as part of the effort to satisfy a mechanical racial target of 50%+1 Hispanic CVAP in CD9.

11.     In Plan C2333, LULAC Member F lives in CD18, which has 23.7% HCVAP and does not provide Latino voters an equal opportunity to elect their candidate of choice. LULAC Member F lives in Harris County, where two or more balanced HCVAP majority districts can and should be created that will provide Latino voters an equal opportunity to elect their preferred candidate. One such example of a Latino opportunity district is LULAC Demonstrative District CD38 in C2199, where LULAC Member F also lives. Because LULAC Member F does not live in a Latino majority district that offers an equal opportunity to elect the Latino preferred candidate, LULAC Member F's vote is diluted. LULAC Member F is further injured by the changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos.  LULAC Member F is further injured by having been placed in CD18 because of her

race in violation of the 14th Amendment to the U.S. Constitution. Redistricters assigned LULAC Member F to CD18 as part of the effort to achieve (but not exceed) a mechanical racial target of 50%+1 Hispanic CVAP in CD9.

12.    In Plan C2333, LULAC Member G lives in CD18, which has 23.7% HCVAP and does not provide Latino voters an equal opportunity to elect their candidate of choice. LULAC Member G lives in Harris County, where two or more balanced HCVAP majority districts can and should be created that will provide Latino voters an equal opportunity to elect their preferred candidate. One such example of a Latino opportunity district is LULAC Demonstrative District CD38 in C2199, where LULAC Member G also lives. Because LULAC Member G does not live in a Latino majority district that offers an equal opportunity to elect the Latino preferred candidate, LULAC Member G's vote is diluted. LULAC Member G is further injured by the changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos. LULAC Member G is further injured by having been placed in CD18 because of his race in violation of the 14th Amendment to the U.S. Constitution. Redistricters assigned LULAC Member G to CD18 as part of the effort to achieve (but not exceed) a mechanical racial target of 50%+1 Hispanic CVAP in CD9.

13.    In Plan C2333, LULAC Member H lives in CD18, which has 23.7% HCVAP and does not provide Latino voters an equal opportunity to elect their candidate of choice. LULAC Member H lives in Harris County, where two or more balanced HCVAP majority districts can and should be created that will provide Latino voters an equal opportunity to elect their preferred candidate. One such example of a Latino opportunity district is LULAC Demonstrative District CD38 in C2199, where LULAC Member H also lives. Because LULAC Member H does not live in a Latino majority district that offers an equal opportunity to elect the Latino preferred

candidate, LULAC Member H's vote is diluted. LULAC Member H is further injured by the changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos.  LULAC Member H is further injured by having been placed in CD18 because of her race in violation of the 14th Amendment to the U.S. Constitution.  Redistricters assigned LULAC Member H to CD18 as part of the effort to achieve (but not exceed) a mechanical racial target of 50%+1 Hispanic CVAP in CD9.

14.    In Plan C2333, LULAC Member I lives in CD35, which has 51.6% HCVAP and does not provide Latino voters an equal opportunity to elect their candidate of choice. LULAC Member I lives in an area where a HCVAP majority district can and should be created that will provide Latino voters an equal opportunity to elect their preferred candidate. One such example of a Latino opportunity district is LULAC Demonstrative District CD15 in C2199, where LULAC Member I also lives. Because LULAC Member I does not live in a Latino majority district that offers an equal opportunity to elect the Latino preferred candidate, LULAC Member I's vote is diluted. LULAC Member I is further injured by the changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos.  LULAC Member I is further injured by having been placed in CD35 because of his race in violation of the 14th Amendment to the U.S. Constitution.  Redistricters assigned LULAC Member I to CD35 as part of the effort to satisfy a mechanical racial target of 50%+1 Hispanic CVAP in CD35.

15.    In Plan C2333, LULAC Member J lives in CD35, which has 51.6% HCVAP and does not provide Latino voters an equal opportunity to elect their candidate of choice. LULAC Member J lives in an area where a HCVAP majority district can and should be created that will provide Latino voters an equal opportunity to elect their preferred candidate. Because LULAC Member J does not live in a Latino majority district that offers an equal opportunity to elect the

Latino preferred candidate, LULAC Member J's vote is diluted. LULAC Member J is further injured by the changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos. LULAC Member J is further injured by having been placed in CD35 because of his race in violation of the 14th Amendment to the U.S. Constitution. Redistricters assigned LULAC Member J to CD35 as part of the effort to achieve (but not exceed) a mechanical racial target of 50%+1 Hispanic CVAP in CD35.

16.    In Plan C2333, LULAC Member K lives in CD21, which has 30.9% HCVAP and does not provide Latino voters an equal opportunity to elect their candidate of choice. LULAC Member K lives in an area where a HCVAP majority district can and should be created that will provide Latino voters an equal opportunity to elect their preferred candidate. One such example of a Latino opportunity district is LULAC Demonstrative District CD35 in C2199, where LULAC Member K also lives. Because LULAC Member K does not live in a Latino majority district that offers an equal opportunity to elect the Latino preferred candidate, LULAC Member K's vote is diluted. LULAC Member K is further injured by the changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos.

17.    In Plan C2333, LULAC Member L lives in CD36, which has 19.5% HCVAP and does not provide Latino voters an equal opportunity to elect their candidate of choice. LULAC Member L lives in Harris County, where two or more balanced HCVAP majority districts can and should be created that will provide Latino voters an equal opportunity to elect their preferred candidate. One such example of a Latino opportunity district is LULAC Demonstrative District CD29 in C2199, where LULAC Member L also lives. Because LULAC Member L does not live in a Latino majority district that offers an equal opportunity to elect the Latino preferred candidate, LULAC Member L's vote is diluted. LULAC Member L is further injured by the

changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos. LULAC Member L is further injured by having been placed in CD36 because of his race in violation of the 14th Amendment to the U.S. Constitution. Redistricters assigned LULAC Member L to CD36 as part of the effort to achieve (but not exceed) a mechanical racial target of 50%+1 Hispanic CVAP in CD9.

18.    In Plan C2333, LULAC Member M lives in CD9, which has 50.3% HCVAP and does not provide Latino voters an equal opportunity to elect their candidate of choice. LULAC Member M lives in Harris County, where two or more balanced HCVAP majority districts can and should be created that will provide Latino voters an equal opportunity to elect their preferred candidate. One such example of a Latino opportunity district is LULAC Demonstrative District CD29 in C2199, where LULAC Member M also lives. Because LULAC Member M does not live in a Latino majority district that offers an equal opportunity to elect the Latino preferred candidate, LULAC Member M's vote is diluted. LULAC Member M is further injured by the changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos. LULAC Member M is further injured by having been placed in CD9 because of her race in violation of the 14th Amendment to the U.S. Constitution. Redistricters assigned LULAC Member M to CD9 as part of the effort to satisfy a mechanical racial target of 50%+1 Hispanic CVAP in CD9.

19.    In Plan C2333, LULAC Member N lives in CD33, which has 38.2% HCVAP and does not provide Latino voters an equal opportunity to elect their candidate of choice. LULAC Member N lives in an area where an HCVAP majority district can and should be created that will provide Latino voters an equal opportunity to elect their preferred candidate. One such example of a Latino opportunity district is LULAC Demonstrative District CD6 in C2199, where LULAC

Member N also lives. Because LULAC Member N does not live in a Latino majority district that offers an equal opportunity to elect the Latino preferred candidate, LULAC Member N's vote is diluted. LULAC Member N is further injured by the changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos.

20.    In Plan C2333, LULAC Member O lives in CD29, which has 43.3% HCVAP and does not provide Latino voters an equal opportunity to elect their candidate of choice. LULAC Member O lives in Harris County where two or more balanced HCVAP majority districts can and should be created that will provide Latino voters an equal opportunity to elect their preferred candidate. One such example of a Latino opportunity district is LULAC Demonstrative District CD38 in C2199, where LULAC Member O also lives. Because LULAC Member O does not live in a Latino majority district that offers an equal opportunity to elect the Latino preferred candidate, LULAC Member O's vote is diluted. LULAC Member O is further injured by the changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos.

21.    In Plan C2333, LULAC Member P lives in CD27 which has 36.8% HCVAP and does not provide Latino voters an equal opportunity to elect their candidate of choice. LULAC Member P lives in an area where a HCVAP majority district can and should be created that will provide Latino voters an equal opportunity to elect their preferred candidate. One such example of a Latino opportunity district is LULAC Demonstrative District CD27 in C2199, where LULAC Member P also lives. Because LULAC Member P does not live in a Latino majority district that offers an equal opportunity to elect the Latino preferred candidate, LULAC Member P's vote is diluted. LULAC Member P is further injured by the changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos.  LULAC Member P lives and votes in Corpus Christi, Texas, in a majority Latino area that was carved out of CD34 and

placed into CD27 to reduce the Latino population of CD34.  LULAC Member P is thus further injured by having been placed in CD27 because of her race in violation of the 14th Amendment to the U.S. Constitution.

22.    In Plan C2333, LUPE Member A lives in CD28 which has 89.5% HCVAP. LUPE Member A lives in a packed Latino district, where two or more balanced HCVAP majority districts can and should be created that provide Latino voters with an equal opportunity to elect their preferred candidate.  One such example of a Latino opportunity district is CD15 in LULAC demonstrative C2199, where LUPE Member A also lives.  Because LUPE Member A lives in a packed district, their vote is diluted.  LUPE Member A is further injured by the changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos.

23.    In Plan C2333, LUPE Member B lives in CD15 which has 78.3% HCVAP and does not provide Latino voters an equal opportunity to elect their candidate of choice. LUPE Member B lives in an area where two or more balanced HCVAP majority districts can and should be created that provide Latino voters with an equal opportunity to elect their preferred candidate.  One such example of a Latino opportunity district is CD15 in LULAC demonstrative C2199, where LUPE Member B also lives.  Because LUPE Member B does not live in a Latino majority district that offers an equal opportunity to elect the Latino preferred candidate, their vote is diluted.  LUPE Member B is further injured by the changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos.

24.    In Plan C2333, LUPE Member D lives in CD15 which has 78.3% HCVAP and does not provide Latino voters an equal opportunity to elect their candidate of choice. LUPE Member D lives in an area where two or more balanced HCVAP majority districts can and should be created that provide voters with an equal opportunity to elect their preferred candidate.

One such example of a Latino opportunity district is CD15 in LULAC demonstrative C2199, where LUPE Member D also lives.  Because LUPE Member D does not live in a Latino majority district that offers an equal opportunity to elect the Latino preferred candidate, their vote is diluted.  LUPE Member D is further injured by the changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos.

25.     In Plan C2333, LUPE Member E lives in CD34, which has been crafted to reduce Latino voting strength and does not provide Latino voters an equal opportunity to elect their candidate of choice. LUPE Member E lives in an area where two or more balanced HCVAP majority districts can and should be created that provide voters with an equal opportunity to elect their preferred candidate.  One such example of a Latino opportunity district is CD34 in LULAC demonstrative C2199, where LUPE Member E also lives.  Because LUPE Member E does not live in a Latino majority district that offers an equal opportunity to elect the Latino preferred candidate, their vote is diluted.  LUPE Member E is further injured by the changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos.

26.     In Plan C2333, LUPE Member F lives in CD34, which has been crafted to reduce Latino voting strength and does not provide Latino voters an equal opportunity to elect their candidate of choice. LUPE Member F lives in an area where two or more balanced HCVAP majority districts can and should be created that provide voters with an equal opportunity to elect their preferred candidate.  One such example of a Latino opportunity district is CD34 in LULAC demonstrative C2199, where LUPE Member F also lives.  Because LUPE Member F does not live in a Latino majority district that offers an equal opportunity to elect the Latino preferred candidate, their vote is diluted.  LUPE Member F is further injured by the changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos.

27.    In Plan C2333, LUPE Member G lives in CD28 which has 89.5% HCVAP. LUPE Member G lives in a packed Latino district, where two or more balanced HCVAP majority districts can and should be created that provide voters with an equal opportunity to elect their preferred candidate.  One such example of a Latino opportunity district is CD28 in LULAC demonstrative C2199, where LUPE Member G also lives.  Because LUPE Member G lives in a packed district, their vote is diluted.  LUPE Member G is further injured by the changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos.

28.    In Plan C2333, LUPE Member H lives in CD34, which has been crafted to reduce Latino voting strength and does not provide Latino voters an equal opportunity to elect their candidate of choice. LUPE Member H lives in an area where two or more balanced HCVAP majority districts can and should be created that provide voters with an equal opportunity to elect their preferred candidate.  One such example of a Latino opportunity district is CD34 in LULAC demonstrative C2199, where LUPE Member H also lives.  Because LUPE Member H does not live in a Latino majority district that offers an equal opportunity to elect the Latino preferred candidate, their vote is diluted.  LUPE Member H is further injured by the changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos.

29.    In Plan C2333, LUPE Member I lives in CD28 which has 89.5% HCVAP. LUPE Member I lives in a packed Latino district, where two or more balanced HCVAP majority districts can and should be created that provide voters with an equal opportunity to elect their preferred candidate.  One such example of a Latino opportunity district is CD28 in LULAC demonstrative C2199, where LUPE Member I also lives.  Because LUPE Member I lives in a packed district, their vote is diluted.  LUPE Member I is further injured by the changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos.

30.    In Plan C2333, LUPE Member J lives in CD28 which has 89.5% HCVAP. LUPE Member J lives in a packed Latino district, where two or more balanced HCVAP majority districts can and should be created that provide voters with an equal opportunity to elect their preferred candidate.  One such example of a Latino opportunity district is CD28 in LULAC demonstrative C2199, where LUPE Member J also lives.  Because LUPE Member J lives in a packed district, their vote is diluted.  LUPE Member J is further injured by the changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos.

31.    In Plan C2333, MABA-TX Member A lives in CD33, which has a 38.2% HCVAP and does not provide Latino voters an equal opportunity to elect their candidate of choice.  MABA-TX Member A lives in an area where an HCVAP majority district can and should be created that will provide Latino voters an equal opportunity to elect their preferred candidate.  One such example of a Latino opportunity district is CD6 in LULAC demonstrative C2199, where MABA-TX Member A also lives.  Because MABA-TX Member A does not live in a Latino majority district that offers an equal opportunity to elect the Latino preferred member candidate, MABA-TX Member A's vote is diluted.  MABA-TX Member A is further injured by the changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos.  MABA-TX Member A is further injured by having been placed in CD33 because of his race in violation of the 14th Amendment to the U.S Constitution.  MABA-TX Member A was moved out of CD30, where he previously lived, into CD33 as part of the State's effort to satisfy a mechanical racial target of 50%+1 Black CVAP in CD30.

32.    In Plan C2333, MABA-TX Member B lives in CD30, which has a 25.0% HCVAP and does not provide Latino voters an equal opportunity to elect their candidate of choice.  MABA-TX Member B lives in an area where a HCVAP majority district can and should be

created that will provide Latino voters an equal opportunity to elect their preferred candidate. One such example of a Latino opportunity district is CD6 in LULAC demonstrative C2199, where MABA-TX Member B also lives.  Because MABA-TX Member B does not live in a Latino majority district that offers an equal opportunity to elect the Latino preferred member candidate, MABA-TX Member B's vote is diluted.  MABA-TX Member B is further injured by the changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos.

33.    In Plan C2333, MABA-TX Member D lives in CD24, which has a 13.7% HCVAP and does not provide Latino voters an equal opportunity to elect their candidate of choice.  MABA-TX Member D lives in an area where a HCVAP majority district can and should be created that will provide Latino voters an equal opportunity to elect their preferred candidate. One such example of a Latino opportunity district is CD6 in LULAC demonstrative C2199, where MABA-TX Member D also lives.  Because MABA-TX Member D does not live in a Latino majority district that offers an equal opportunity to elect the Latino preferred member candidate, MABA-TX Member D's vote is diluted.  MABA-TX Member D is further injured by the changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos.

34.    In Plan C2333, TX HOPE Member A lives in CD12, which has a 23.7% HCVAP and does not provide Latino voters an equal opportunity to elect their candidate of choice.  TX HOPE Member A lives in an area where a HCVAP majority district can and should be created that provide Latino voters with an equal opportunity to elect their preferred candidate.  One such example of a Latino opportunity district is CD6 in LULAC demonstrative C2199, where TX HOPE Member A also lives.  Because TX HOPE Member A does not live in a Latino majority

district that offers an equal opportunity to elect the Latino preferred member candidate, TX HOPE Member A's vote is diluted. TX HOPE Member A is further injured by the changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos.

35.    In Plan C2333, TX HOPE Member C lives in CD37, which has a 28.6% HCVAP and does not provide Latino voters an equal opportunity to elect their candidate of choice. TX HOPE Member C lives in an area where a HCVAP majority district can and should be created that provide Latino voters with an equal opportunity to elect their preferred candidate. One such example of a Latino opportunity district is CD35 in LULAC demonstrative C2199, where TX HOPE Member C also lives. Because TX HOPE Member C does not live in a Latino majority district that offers an equal opportunity to elect the Latino preferred member candidate, TX HOPE Member C's vote is diluted. TX HOPE Member C is further injured by the changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos.

36.    In Plan C2333, TX HOPE Member D lives in CD27 which has 36.8% HCVAP and does not provide Latino voters an equal opportunity to elect their candidate of choice. TX HOPE Member D is injured by having been moved from CD22 into CD27 as part of a scheme to increase the Anglo voting strength and reduce the Latino voting strength in CD27 in violation of the 14th Amendment to the U.S. Constitution. TX HOPE Member D is further injured by the changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos.

37.    In Plan C2333, TX HOPE Member E lives in CD9, which has 50.3% HCVAP and does not provide Latino voters an equal opportunity to elect their candidate of choice. TX HOPE Member E lives in Harris County, where two or more balanced HCVAP majority districts can and should be created that will provide Latino voters an equal opportunity to elect their preferred candidate. Because TX HOPE Member E does not live in a Latino majority district that offers an

equal opportunity to elect the Latino preferred candidate, TX HOPE Member E's vote is diluted. TX HOPE Member E is further injured by the changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos.  TX HOPE Member E is further injured by having been placed in CD9 because of her race in violation of the 14th Amendment to the U.S. Constitution. Redistricters assigned TX HOPE Member E to CD9 as part of the effort to satisfy a mechanical racial target of 50%+1 Hispanic CVAP in CD9.

  38. In Plan C2333, Jose Olivares lives in CD34, which has been crafted to reduce Latino voting strength and does not provide Latino voters an equal opportunity to elect their candidate of choice. Jose Olivares lives in an area where two or more balanced HCVAP majority districts can and should be created that provide Latino voters with an equal opportunity to elect their preferred candidate.  One such example of a Latino opportunity district is CD27 in LULAC demonstrative C2199, where Jose Olivares also lives.  Because Jose Olivares does not live in a Latino majority district that offers an equal opportunity to elect the Latino preferred member candidate, Jose Olivares's vote is diluted.  Jose Olivares is further injured by the changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos.

  39. In Plan C2333, Paulita Sanchez lives in CD21, which has a 30.9% HCVAP and does not provide Latino voters an equal opportunity to elect their candidate of choice.  Paulita Sanchez lives in an area where a HCVAP majority district can and should be created that provide Latino voters with an equal opportunity to elect their preferred candidate.  One such example of a Latino opportunity district is CD35 in LULAC demonstrative C2199, where Paulita Sanchez also lives.  Because Paulita Sanchez does not live in a Latino majority district that offers an equal opportunity to elect the Latino preferred member candidate, Paulita Sanchez's vote is

diluted.  Paulita Sanchez is further injured by the changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos.

40.    In Plan C2333, JoAnn Acevedo James lives in CD35, which has a 51.6% HCVAP and does not provide Latino voters an equal opportunity to elect their candidate of choice.  JoAnn Acevedo James lives in an area where a HCVAP majority district can and should be created that provide Latino voters with an equal opportunity to elect their preferred candidate.  One such example of a Latino opportunity district is CD28 in LULAC demonstrative C2199, where JoAnn Acevedo James also lives.  Because JoAnn Acevedo James does not live in a Latino majority district that offers an equal opportunity to elect the Latino preferred member candidate, JoAnn Acevedo James's vote is diluted.  JoAnn Acevedo James is further injured by the changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos.  JoAnn Acevedo James is further injured by having been placed in CD35 because of her race in violation of the 14th Amendment to the U.S Constitution.  Redistricters assigned Ms. Acevedo James to CD35 as part of the effort to satisfy a mechanical racial target of 50%+1 Hispanic CVAP in CD35.

41.    In Plan C2333, David Lopez lives in CD38, which has a 20.5% HCVAP and does not provide Latino voters an equal opportunity to elect their candidate of choice.  David Lopez lives in Harris County, where two or more balanced HCVAP majority districts can and should be created that provide Latino voters with an equal opportunity to elect their preferred candidate.  One such example of a Latino opportunity district is CD38 in LULAC demonstrative C2199, where David Lopez also lives.  Because David Lopez does not live in a Latino majority district that offers an equal opportunity to elect the Latino preferred member candidate, David

Lopez's vote is diluted.  David Lopez is further injured by the changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos.

42.     In Plan C2333, Diana Martinez Alexander lives in CD38, which has a 20.5% HCVAP and does not provide Latino voters an equal opportunity to elect their candidate of choice.  Diana Martinez Alexander lives in an area where two or more balanced HCVAP majority districts can and should be created that provide Latino voters with an equal opportunity to elect their preferred candidate.  One such example of a Latino opportunity district is CD38 in LULAC demonstrative C2199, where Diana Martinez Alexander also lives.  Because Diana Martinez Alexander does not live in a Latino majority district that offers an equal opportunity to elect the Latino preferred member candidate, Diana Martinez Alexander's vote is diluted.  Diana Martinez Alexander is further injured by the changes in the challenged redistricting plan that bear more heavily on Latino voters than Anglos.

## SUPPLEMENTAL FACT ALLEGATIONS

43.     LULAC Plaintiffs filed this litigation in October, 2021 challenging, among other things, the Texas Legislature's congressional redistricting Plan C2193.  Following consolidation of later-filed cases and a lengthy discovery period, the parties tried the case from May 21 to June 11, 2025.

44.     On July 7, 2025, less than four weeks after the trial concluded, officials of the U.S. Department of Justice ("DOJ") wrote to Defendant Governor Abbott and Attorney General Paxton threatening "to seek legal action against the State" if Texas did not "rectify the racial gerrymandering" of four majority minority congressional districts in Plan C2193:  Congressional Districts 9, 18, 29,and 33.  The letter described these congressional districts as "unconstitutional

'coalition districts'" despite the fact that CD29 is a Latino majority district.  The letter "urge[d] the State of Texas to rectify these race-based considerations from these specific districts."

45.     In response, on July 9, 2025, Defendant Governor Abbott signed a Proclamation calling a special session of the Legislature to consider, among other things, "[l]egislation that provides a revised congressional redistricting plan *in light of constitutional concerns raised by the U.S. Department of Justice.*" (emphasis added)

46.     Almost ten months before the trial in this matter, on August 1, 2024, the Fifth Circuit issued its decision in *Petteway v. Galveston Cnty.*, 111 F.4th 596 (5th Cir. 2024).  The *Petteway* decision, and its impact on the claims in this case, became an immediate focus of the parties and the Court.  However, the United States passed on two opportunities to provide the Court its views on *Petteway*, including after the change in presidential administrations.[1]  Instead, on March 5, 2025, the United States informed the Court that it would voluntarily seek to dismiss its claims in the case.  The next day, the Court dismissed "all of the claims that the United States has asserted against Defendant in this case."  ECF 872 at 1.

47.     Although Texas legislators began discussing re-redistricting in light of the *Petteway* decision before the start of the 89th Texas Legislature in January 2025[2], the Legislature chose not

---

[1] On January 27, 2025, the Court directed "the United States to submit a letter brief setting forth the United States' position on each of its operative claims in the above-styled matter, including whether the United States intends to pursue its operative claims."  The United States chose not to file a brief setting forth its positions, including to say whether *Petteway* altered any of its legal positions, and instead requested an extension of five weeks, which the Court granted.  *See* ECF 839 and 844.

[2] *See* All Things Considered, National Public Radio, "A Texas Republican state lawmaker on the fight for redistricting," August 6, 2025 *available at* https://www.npr.org/2025/08/06/nx-s1-5493480/texas-democrats-quorum-oliverson (State Representative Tom Oliverson, Chair of the Texas House Republican Caucus, explaining that he began talking about redrawing the congressional map "before the legislative session in January as a result of the court case where a federal appeals court basically rejected the idea of the coalition on districts as being consistent with the Voting Rights Act.").

to redistrict, and the legislative session ended on June 2, 2025.  Defendant Governor Abbott also chose not to ask the Legislature to redistrict in light of *Petteway* or for any other reason.

48.     Similarly, although the Texas Attorney General told this Court in October 2024 that "*Petteway* has done away with the jurisprudential basis for [] coalition claims" (ECF 815 at 4), the Attorney General did not call for Texas to redistrict following *Petteway*.   On the contrary, on July 11, 2025, Attorney General Paxton sent a letter to DOJ stating that "[h]ad the Texas legislature felt compelled under pre-*Petteway* strictures to create coalition districts, the basis for such decisions— as you say—"no longer exists." However, my office has just completed a four-week trial against various plaintiff groups concerning the constitutionality of Texas's congressional districts . . . . The evidence at that trial was clear and unequivocal: the Texas legislature did not pass race-based electoral districts for any of those three political maps."

49.     Thus, following *Petteway*, neither the Texas Legislature, nor Defendant Abbot, nor the Texas Attorney General undertook or called for new congressional redistricting.  Instead, the State chose to go to trial and defended its maps as race-blind.

50.     Nevertheless, upon receiving a letter from DOJ that called for dismantling majority minority congressional districts, Defendant Governor Abbott summoned legislators back to the Capitol in Austin.

51.     The first Special Session started on July 21, 2025.  The following day, Defendant Governor Abbott stated in a television interview that "we want to make sure that we have maps that don't impose coalition districts . . . The map that was drawn [in 2021] was drawn before this recent court decision that said coalition districts were not required, and the map I believe as drawn

could be upheld.  That said, we are no longer compelled to have coalition districts and as a result we can draw maps to not have coalition districts[.]"[3]

52.    In the first Special Session, the congressional redistricting bill Plan C2308 was introduced by State Representative Todd Hunter.  On August 2, 2025 the House Redistricting Committee voted out Plan C2308 without amendment.

53.    On August 7, 2025, Defendant Governor Abbott stated in an interview, "Four of the five districts we're going to create are predominantly Hispanic districts that they're going to be voting for Republicans as opposed to Democrats. . . . We're creating four new Hispanic oriented districts that are gonna vote Republican."[4]

54.    During the first Special Session, the Texas Senate Redistricting Committee invited but declined to subpoena Harmeet Dhillon, who signed the DOJ letter, to testify regarding the assertions in her letter.  The Texas House Redistricting Committee also invited Ms. Dhillon to testify but she accepted neither invitation.  Instead, Ms. Dhillon announced on social media on August 8, 2025 that "[w]e sent a letter last month in July to Texas, noting that under a Fifth Circuit precedent that was passed in 2024, several of Texas's districts are no longer legal under Voting Rights Act analysis because they constitute illegal coalition districts. And so, that caused the Texas legislature to be called into session by the Governor . . . ."[5]

55.    The Texas Senate passed an identical senate version of Plan C2308 on August 12, 2025.

---

[3] Fox 4 Dallas-Fort Worth, "Abbott on THC, redistricting & the special session", July 22, 2025 *available at* https://www.youtube.com/watch?v=PHsYs0NTPTY (at 3:16).
[4] The Joe Pags Show, "Governor Abbott Talks Democrat Desperation" , Aug. 7, 2025, *available at* https://www.youtube.com/watch?app=desktop&v=kubKVtdGgBA.
[5] X.com, @AAGHarmeetDhillon, Aug. 8, 2025, 6:39 PM, https://x.com/AAGDhillon/status/1953949095238009285.

56.     Defendant Governor Abbott truncated the first Special Session when the Texas House lacked a quorum as a result of the departure from the state of protesting House members, and he immediately called a second Special Session that began at noon on Friday August 15, 2025.

57.     In the second Special Session, Representative Hunter again introduced a congressional redistricting bill, H.B. 4 (89 (2)), that contained Plan C2331.  The only difference between Plan C2308 and Plan C2331 was that several precincts were swapped between CD16 and CD23 to place Fort Bliss back into CD16, the same district to which it is assigned in the 2021 map.

58.     Representative Hunter filed H.B. 4 (89 (2)) on August 15, 2025, and the House referred the bill to the House Select Committee on Congressional Redistricting on August 18, 2025.

59.     That same day, the House Select Committee on Congressional Redistricting took up a committee substitute, Plan C2333, which made mostly minor changes to twelve districts in the Harris County area and also added Liberty County to CD9.  The committee voted Plan C2333 out of committee without taking public testimony.

60.     During the House floor debate on Plan C2333, the bill sponsor, Representative Hunter, focused his remarks on the racial composition of the districts in the new plan.  For example, he emphasized that Plan C2333 created five "new" Hispanic citizen voting age majority districts and announced their racial composition.  For example, Rep. Hunter stated, "It is important to note – Please note members. Four of the five new districts are majority minority Hispanic, what we call CVAP districts. That's the citizen voting age population. Each of these newly drawn districts now trend Republican in political performance."

61.     Rep. Hunter described the creation of two districts with razor thin HCVAP majorities: "CD 9, 50.15% what we call Hispanic citizen voting age population. That's HCVAP . . . . CD 35, 51.57% HCVAP."

62.     Rep. Hunter continued to explain the map in racial terms: "CD9, the Hispanic CVAP is 50.15%. It's a new Hispanic CVAP. Liberty County is now in CD9. There does show in this CD, Republican partisan performance. Previously though, CD9 was not a majority of a single group. So now, they are."

63.     In a colloquy with Rep. Hunter Rep. Spiller stated:  "And also, relative to Harris County, we talked about District 9 - which was also second one in Harris County, a coalition district – the district that was addressed in the Petteway case – and now under your HB 4, changes from a coalition district to a majority Hispanic CVAP district, is that correct?" Rep. Hunter answered: "Yes for the record the Hispanic CVAP for congressional district 9 under this plan, the Hispanic CVAP is 50.15%. In 2021, it was 25.73%."

64.      Plan C2333 passed to engrossment in the Texas House two days later, on August 20, 2025.  The House rejected all proposed amendments to C2333.  The final vote was 88 Yeas and 52 Nays.

65.     The Senate received the bill on the same day and referred it to the Senate Special Committee on Redistricting.  The following day, the Senate Special Committee on Redistricting voted Plan C2333 out of committee without taking public testimony and without amendment.

66.     On August 22, 2025, the Senate voted to suspend its regular order of business and took up Plan C2333.  Similar to the House, the Senate rejected every proposed amendment to C2333.  When a Latina State Senator announced on social media that she would filibuster Plan

C2333, the Senate instead moved final passage, took a vote on the bill and passed H.B. 4 (89 (2)) in the early morning hours of August 23, 2025.

67.    In the bill text, H.B. 4 (89 (2)) repeals the 2021 congressional redistricting Plan C2193. H.B. 4 (89 (2)) also provides that Plan C2333 (which did not receive a vote of two-thirds of all the members elected to each house) becomes effective "on the 91st day after the last day of the legislative session."

**The New Congressional Redistricting Plan C2333**

**Congressional District 29**

68.    In Plan C2333, Texas dismantles CD29 as a Latino citizen voting age majority district that provides Latino voters an equal opportunity to elect their candidate of choice as required by Section 2 of the VRA.

69.    In 2021 Plan C2193, CD29 had a Hispanic CVAP of 63.5% and contained a majority of Spanish-surnamed registered voters. In the 2024 General Election, a majority of the votes cast in CD29 were cast by Spanish-surnamed registered voters. The incumbent of CD29 is Sylvia Garcia, a Latina who is the candidate of choice of Latino voters.

70.    In C2193, CD29 encompassed predominantly Latino neighborhoods with common characteristics including Houston's Northside, Denver Harbor, Second Ward, Magnolia Park, Meadowbrook and Park Place.

71.    Senator Joan Huffman affirmed at trial in this case that C2193 was drawn race-blind except during a VRA compliance check "[t]o ensure that – yes, the existing opportunity districts were still existing opportunity districts." Tr. 6/9/25PM 172:2-173:1.

72.    Although CD29 in C2193 was a Hispanic CVAP majority district, and not a district in which multiple groups of minority voters combined to form a majority, the July 7, 2025 DOJ

letter described CD29 as an "unconstitutional 'coalition district[.]'" DOJ urged the State of Texas to "rectify these race-based considerations from these specific districts" which included CD29. The letter concluded by demanding that Texas "rectify the racial gerrymandering" of, among others, CD29.

73.    In response, Plan C2333 cuts CD29 in two, stranding eastern portions of the district in CD9, which is not a Latino opportunity district. CD29 in C2333 is 43.3% Hispanic CVAP and contains 36.2% Spanish-surnamed registered voters. In the 2024 General Election, less than one-third of the votes cast in the district were cast by Spanish-surnamed registered voters.

74.    In C2333, Texas purposefully dismantled CD29 because it was a Latino majority district that elected the Latino candidate of choice. Texas purposefully reduced the Latino population in CD29 so that it would be neither a Latino majority district nor a Latino opportunity district. CD29 in C2333 does not provide Latino voters an equal opportunity to participate in the political process and nominate and elect their candidate of choice.

**Congressional District 35**

75.    In Plan C2333, Texas dismantles Latino majority CD35, a district that provided Latino voters an equal opportunity to elect their candidate of choice in compliance with Section 2 of the VRA.

76.    Texas created the first CD35 following the 2010 Census, when Texas gained four new seats in the U.S. House of Representatives. CD35 encompassed communities along the I-35 corridor from San Antonio to Austin. Historically an Anglo majority district had connected San Antonio to Austin on the western side of I-35.[6] CD35 was a Hispanic CVAP majority district that did the same on the eastern side of I-35.

---

[6] *See, e.g.* Plan 1438C (2006-2010) *available at*
https://redistricting.capitol.texas.gov/docs/maps/map_c_2006G_2010.pdf

77.    Texas staunchly defended its configuration of CD35 in litigation brought by parties who wanted instead to preserve an Anglo majority crossover district in Travis County.  Texas argued that it had "good reasons" to believe that CD35 was required by the federal Voting Rights Act.  The U.S. Supreme Court agreed:

> "[The] Legislature had 'good reasons' to believe that the district at issue (here CD35) was a viable Latino opportunity district that satisfied the *Gingles* factors. CD35 was based on a concept proposed by MALDEF, and the Latino Redistricting Task Force (a plaintiff group) argued that the district is mandated by § 2. . . . In addition, the District Court extensively analyzed CD35 in 2012 and determined that it was likely not a racial gerrymander and that even if it was, it likely satisfied strict scrutiny. In other words, the 2013 Legislature justifiably thought that it had placed a viable opportunity district along the I–35 corridor.

*Abbott v. Perez*, 585 U.S. 579 (2018) (internal citations omitted).

78.    In 2021, the Texas Legislature maintained CD35 as a Latino opportunity district with a Hispanic CVAP of 48%.  The district elected the Latino candidate of choice, Greg Casar, in the 2022 and 2024 General Elections.  Greg Casar is Latino.

79.    Despite the fact that CD35 was a required district under Section 2 of the Voting Rights Act, and Texas maintained CD35 in its 2021 redistricting plan, the Legislature in 2025 dismantled it.

80.    In C2333, CD35 no longer connects similar communities along the I-35 corridor from San Antonio to Austin.  Instead, it encompasses Wilson, Karnes and Guadalupe counties, and enters Bexar County to gather enough Latino population to achieve a bare 51.6% Hispanic CVAP majority.

81.    In C2333, CD35 is a sham district with a razor thin Hispanic citizen voting age majority.  Texas purposefully dismantled CD35 because it was a Latino opportunity district that elected the Latino candidate of choice, and reconfigured CD35 so that it would not be a Latino

opportunity district. CD35 in C2333 does not provide Latino voters an equal opportunity to participate in the political process and elect their candidate of choice.

82.     In C2333, Texas also assigned Latinos to CD35 based on their race, to reach an arbitrary numerical target and not for a remedial purpose.

**Congressional District 34**

83.     In Plan C2333, Texas weakens Latino voting strength in CD34 with the goal of preventing Latino voters from electing their preferred candidate to Congress.

84.     In the 2021 Plan C2193, CD34 elected the Latino candidate of choice, Vicente Gonzalez, who is Latino.

85.     In Plan C2333, Texas reduced the Hispanic CVAP by 15 percentage points, and reduced the Spanish-surname votes cast in the 2024 General Election by 17 percentage points. Texas also increased the rate of Anglo bloc voting in the district by changing the composition of the non-Latino voters in the district. Although Spanish-surname voters cast the majority of votes in the 2024 General Election, their vote share is significantly reduced and Latino preferred candidates are more likely to lose when compared to CD34 in C2193.

86.     In C2333, Texas purposefully reconfigured CD34 because it elected the Latino candidate of choice. Texas purposefully reduced the Latino population in CD34 so that it would not be a Latino opportunity district. CD34 in C2333 does not provide Latino voters an equal opportunity to participate in the political process and elect their candidate of choice.

**Congressional District 27**

87.     In Plan C2333, Texas reduces the Latino population in CD27 with the goal of reducing Latino voting strength, creating an Anglo majority in the district, and preventing the

emergence of a Latino opportunity district in which Latino voters elect their preferred candidate to Congress.

88.     In 2021 Plan C2193, CD27 is 48.6% Hispanic CVAP and 44.1% Anglo CVAP.

89.     In Plan C2333, CD27 shifts almost completely out of Nueces County in South Texas and reaches farther north and east to become 36.8% Hispanic CVAP and 52.8% Anglo CVAP.  Instead of a district with no majority racial group (like Texas at large), CD27 becomes a single race majority district with an Anglo majority.

90.     CD27 in C2333 is not an opportunity district and does not provide Latino voters an equal opportunity to participate in the political process and elect their candidate of choice.

91.     In Plan C2333, Texas also racially gerrymanders Latino voters, scooping them out of Corpus Christi and into CD27 on the basis of their race and in order to reduce the Hispanic CVAP of CD34.  The assignment of Latino voters from Corpus Christi to CD27 based on their race was not for a remedial purpose.

**Rio Grande Valley and South Texas**

92.     In Plan C2333, Texas packs and cracks Latino population across the Rio Grande Valley and South Texas with the goal of preventing Latino voters from electing their preferred candidate to Congress.

93.     In addition to the substantial reduction of Latino voters in CD34, C2333 pushes the northern portion of CD15 to the east to take in an area including Goliad, DeWitt and Lavaca counties.  The reconfiguration of CD15 increases Anglo bloc voting and reduces the ability of Latino candidates to elect their candidate of choice in CD15.

94.     In Plan C2333, Texas shifts Latino voters in the Rio Grande Valley from CD34 through CD15 and into CD28.  C2333's authors accomplished this by withdrawing CD34 from

Hidalgo County and swapping the portion of Hidalgo County encompassed by CD15 from west to east.

95.      As a result, the Hispanic CVAP of CD28 increased by 18 percentage points and the votes cast by Spanish-surnamed voters in the 2024 General Election increased by 20 percentage points.

96.      CD15 and CD34 in C2333 do not provide Latino voters an equal opportunity to participate in the political process and elect their candidate of choice.  However, it is possible to configure CD 15, CD28 and CD34 to provide Latino voters an equal opportunity to participate in the political process and elect their candidate of choice.

**Congressional District 9**

97.      Plan C2333 creates a new CD9 that is a prohibited "facade" district with a razor thin Hispanic citizen voting age majority that does not offer Latinos the opportunity to elect their preferred candidate.

98.      In 2021 Plan C2193, CD9 contained a 45.0% Black CVAP and elected Congressman Al Green, who is African American.  CD9 encompassed most of southern Houston as well as a portion of Fort Bend County containing Stafford and part of Missouri City.

99.      In Plan C2333, Texas relocated CD9 to the east, retaining only 3% of the previous population of CD9.  The CD9 in Plan C2333 is only 11.5% Black CVAP.

100.      In Plan C2333, CD9 has a razor thin Hispanic CVAP majority of 50.3% Hispanic CVAP.  CD9's Spanish-surnamed voter registration is 44.5% and Spanish-surnamed voters cast 37.1% of the votes in the 2024 General Election.

101.      In C2333, CD9 is a sham district with a razor thin Hispanic citizen voting age majority.  Texas purposefully created CD35 so that it would not be a Latino opportunity district.

CD9 in C2333 does not provide Latino voters an equal opportunity to participate in the political process and elect their candidate of choice.

102.    In Plan C2333, Texas also assigned Latinos to CD9 based on their race to reach an arbitrary numerical target and not for a remedial purpose.  The district takes in heavily-Anglo Liberty County and portions of Harris County and then reaches into Houston to take only enough Latino population to achieve a bare majority of Hispanic CVAP while carefully excluding nearby Latino population.

**Congressional District 33**

103.    In Plan C2333, Texas weakens Latino voting strength in CD33 while boosting Anglo voter influence in the district.

104.    In 2021 Plan C2193, CD33 contained 43.6 Hispanic CVAP, 25.2% Black CVAP, and 23.4% Anglo CVAP.  C2333 increases the Anglo CVAP of CD33 by 12 percentage points, to 35.5%, and decreases the Hispanic CVAP to 38.2%, weakening Latino voting strength.  C2333 also reduces Black CVAP to 19.6%.

105.    In Plan C2333, Texas reconfigures CD33's demographic composition to look more like CD32 in Plan C2193 (20.2% Hispanic CVAP, 22.5% Black CVAP and 48.1% Anglo CVAP) which elected an Anglo candidate, Julie Johnson, in 2024.

106.    In Plan C2333, Texas also assigned Latinos into CD33 and out of CD30 based on their race to reach an arbitrary numerical target of 50.2% Black CVAP for CD30 and not for a remedial purpose.

**Plan C2333 Fails to Create Additional Latino Citizen Voting Age Majority Districts**

107.    Plan C2333 fails to create additional Latino citizen voting age majority districts in:

      a.      Harris County, as described in paragraphs 391-406 of LULAC Plaintiffs' Fifth Amended Complaint (ECF 899);

      b.      the Dallas-Ft. Worth Metroplex as described in paragraphs 407-421 of LULAC Plaintiffs' Fifth Amended Complaint (ECF 899); and

      c.      South/Central Texas, encompassing a geographic area including portions of Nueces, San Patricio, Bee, Goliad, Karnes, Gonzales, Caldwell, Bastrop, Travis and Williamson counties as described in paragraphs 422-434 of LULAC Plaintiffs' Fifth Amended Complaint (ECF 899).

**Plan C2333 Unduly Burdens Latino and Other Minority Voters While Advantaging Anglo Voters Regardless of Political Party**

108.    Plan C2333 systematically and purposefully disadvantages Latinos and other voters of color when compared to Anglo voters.

109.    Both the DOJ letter and Texas took an inconsistent approach to districts where two or more racial minority groups combined to form a majority. For example, neither DOJ nor Texas targeted CD 7, CD22 or CD27 – three districts with an Anglo incumbent where two or more racial minority groups combined to form a majority. In Plan C2333, Texas protected the Anglo incumbents of these districts, maintaining the districts' partisan performance, even where, as in CD7, the district elected a Democrat to Congress. By contrast, in districts where two or more racial minority groups combined to form a majority and elected a Black or Hispanic candidate to Congress, Texas eliminated or radically reconfigured the districts to reduce minority voting strength, as in CD9, CD29 and CD33.

110.    Plan C2333 maximizes Anglo voter influence regardless of political party by, at least in part, maintaining Democratic-leaning districts that elect Anglo members of Congress while

eliminating or reducing the strength of minority voters in Democratic-leaning districts that elect Latino or Black members of Congress.

111.    Plan C2333 contains six pairings of incumbents.  Five of those pairings involve Latino or Black members of Congress.

## SUPPLEMENTAL CAUSES OF ACTION

### COUNT 1
*Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution*
*(racial discrimination)*

112.    Plaintiffs re-allege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though fully set forth herein.

113.    Texas Congressional Plan C2333 purposefully discriminates against Plaintiffs and other Latinos on the basis of race and national origin in violation of the 14th Amendment to the U.S. Constitution.

114.    Defendants purposefully discriminated against Latinos in Plan C2333 by eliminating CD29 as a Latino opportunity district, eliminating CD35 as a Latino opportunity district, weakening Latino voting strength in CD27, packing and cracking Latino population across the Rio Grande Valley and South Texas (CDs 15, 28, 34) to prevent Latino voters from electing their preferred candidate to Congress, creating a new CD9 with a sham Latino majority that cannot elect the Latino preferred candidate, creating a new CD35 with a sham Latino majority that cannot elect the Latino preferred candidate, weakening Latino voting strength in CD33, and  failing to create additional Latino citizen voting age majority districts that offer an equal opportunity to elect the Latino preferred candidate in Harris County, Dallas-Ft. Worth and South/Central Texas.

## COUNT 3
### *Section 2 of the Voting Rights Act*

115.    Plaintiffs re-allege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though fully set forth herein.

116.    Plan C2333 results in a denial or abridgment of the right to vote of individual plaintiffs and organizational plaintiffs' members on account of their race, color or ethnicity by having the intent and effect of canceling out or minimizing their voting strength as Latinos in Texas. Plan C2333 does not afford individual plaintiffs and organizational plaintiffs' members an equal opportunity to participate in the political process and to elect representatives of their choice, and denies individual plaintiffs and organizational plaintiffs' members the right to vote in elections without distinction of race, color or previous condition of servitude in violation of 52 U.S.C. § 10301.

117.    In Plan C2333, Texas discriminates purposefully and in effect against Latinos by eliminating CD29 as a Latino opportunity district, eliminating CD35 as a Latino opportunity district, weakening Latino voting strength in CD27, packing and cracking Latino population across the Rio Grande Valley and South Texas (CDs 15, 28, 34) to prevent Latino voters from electing their preferred candidate to Congress, creating a new CD9 with a sham Latino majority that cannot elect the Latino preferred candidate, creating a new CD35 with a sham Latino majority that cannot elect the Latino preferred candidate, weakening Latino voting strength in CD33, and  failing to create additional Latino citizen voting age majority districts that offer an equal opportunity to elect the Latino preferred candidate in Harris County, Dallas-Ft. Worth and South/Central Texas.

**COUNT 4**
***Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution***
***(Impermissible Use of Race)***

118.    Plaintiffs re-allege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though fully set forth herein.

119.    Race was the predominant consideration in the reconfiguration of CD9 and CD35, in that the predominant consideration was achieving a mechanical 50%+1 racial target for the districts' Hispanic CVAP with no compelling justification.  Latino voters already had the ability to elect their preferred candidates in CD9 and CD29 (which lost Latino population to CD9) in C2193, but Latino voters will no longer be able to elect their preferred candidates in Plan C2333's versions of CD9 and CD35. C2333 also separates Latino citizens into different voting districts on the basis of race, when it removed LULAC Plaintiffs from Black opportunity districts in the effort to achieve mechanical 50%+1 racial targets for Black CVAP in CD18 and CD30.  Neither Section 2 of the VRA nor any other interest justifies the predominant use of race in reconfiguring these districts.

120.    Race was also the predominant consideration in the reconfiguration of CD 27, with a 50%+1 Anglo CVAP majority target for this district that previously was 48.6% Hispanic CVAP and 44.1% Anglo CVAP but was converted into an Anglo CVAP majority district. No compelling interest that is narrowly tailored supports this race-based redistricting of CD 27.  CD 27 also uses race as a predominant consideration in assigning Latinos who live in Corpus Christi to CD27 instead of CD34 without a remedial purpose.

**VII. SUPPLEMENTAL REQUEST FOR THREE-JUDGE COURT**

121.    Plaintiffs request a three-judge trial court pursuant to 28 U.S.C. § 2284.

## VIII. SUPLEMENTAL REQUEST FOR ATTORNEY'S FEES

122.    In accordance with 42 U.S.C. § 1988 and 52 U.S.C. § 10310(e), Plaintiffs are entitled to recover reasonable attorney's fees, expenses and costs.

## IX. SUPPLEMENTAL REQUEST FOR RELIEF

Plaintiffs incorporate the relief requested in paragraphs (a) through (i) of their Fifth Amended Complaint, and request the following supplemental relief:

(a) assume jurisdiction over these supplemental claims as a three-judge panel pursuant to 28 U.S.C. § 2284;

(b) issue a declaratory judgment finding that the Texas Congressional Plan C2333 is unlawful, null and void because it:

1. Violates the Fourteenth Amendment to the United States Constitution because it was enacted with discriminatory intent as a motivating factor;

2. Violates the Fourteenth Amendment to the United States Constitution because racial considerations predominated without justification in drawing the district lines of multiple districts described above;

3. Violates Section 2 of the Voting Rights Act;

(c) preliminarily and permanently enjoin Defendants from calling, holding, supervising or certifying any elections under Texas Congressional Plan C2333. Plaintiffs have no adequate remedy at law other than the judicial relief sought herein, and unless the Defendants are enjoined from using Texas Congressional Plan C2333, individual plaintiffs and organizational plaintiffs' members will be irreparably harmed by the continued violation of their statutory and constitutional rights;

(d) pursuant to 52 U.S.C. § 10302(c), issue an order requiring Texas to preclear its election changes during the ten-year period following the issuance of such order;

(e) set a reasonable deadline for state authorities to enact or adopt a congressional redistricting plan that does not dilute, cancel out or minimize the voting strength of Latino voters or make unconstitutionally predominant use of race;

(f) Order a new redistricting plan for Texas congressional seats for the 2026 Primary and General Elections that does not dilute, cancel out or minimize the voting strength of Latino voters or make unconstitutionally predominant use of race;

(g) adjudge all costs against Defendants, including reasonable attorney's fees;

(h) retain jurisdiction to render any and all further orders that this Court may; and

(i) grant any and all further relief to which Plaintiffs may show themselves to be entitled.


Date:   August 25, 2025                      Respectfully submitted,

/s/ Nina Perales
Nina Perales
Julia Longoria
Sabrina Rodriguez
Mexican American Legal Defense and Educational
Fund (MALDEF)
110 Broadway Street, Suite 300
San Antonio, TX 78205
(210) 224-5476
Fax: (210) 224-5382
nperales@maldef.org
jlongoria@maldef.org
srodriguez@maldef.org

Ernest I. Herrera
Mexican American Legal Defense and Educational
Fund (MALDEF)
634 S. Spring Street, 9th Floor

Los Angeles, CA  90014
(210) 629-2512
eherrera@maldef.org

Khrystan N. Policarpio*
Mexican American Legal Defense and Educational
Fund (MALDEF)
1512 14th Street
Sacramento, CA  95814
(916) 444-3031
kpolicarpio@maldef.org

*Admitted *pro hac vice*

*Counsel for LULAC Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that she has electronically submitted a true and correct copy of the above and foregoing via the Court's electronic filing system on the 25th day of August 2025.

/s/ Nina Perales
Nina Perales