**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> GREG ABBOTT, *et al.*, <br><br> *Defendants*. | Civil Action No. <br> 3:21-cv-00259-DCG-JES-JVB <br> [Lead Case] <br><br> & <br><br> All Consolidated Cases |

**BRIEF OF ASIAN TEXANS FOR JUSTICE, OCA-GREATER HOUSTON, EMGAGE, SOUTH ASIAN AMERICAN JUSTICE COLLABORATIVE, CAIR ACTION TEXAS, AND FAIR MAPS TEXAS ACTION COMMITTEE, AS AMICI CURIAE <u>IN SUPPORT OF PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION</u>**

Sarah Xiyi Chen
Veronikah Warms
Zachary Dolling
**TEXAS CIVIL RIGHTS PROJECT**
P.O. Box 17757
Austin, Texas 78760

Nina L.M. Oishi
**TEXAS CIVIL RIGHTS PROJECT**
P.O. Box 1108
Houston, Texas 77251-1108
Telephone: (512) 474-5073

Patrick Stegemoeller
**ASIAN AMERICAN LEGAL DEFENSE
AND EDUCATION FUND**
99 Hudson Street, 12th Floor
New York, NY 10013
Telephone: (212) 966-5932

*Counsel for Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

Amici Curiae Asian Texans for Justice, OCA-Greater Houston, Emgage, South Asian American Justice Collaborative, CAIR Action Texas, and Fair Maps Texas Action Committee state that no party to this brief is a publicly held corporation, issue stock, or has a parent corporation.

# TABLE OF CONTENTS

Interest of Amici Curiae ........................................................................................... 1

I.      Introduction ................................................................................................. 3

II.     Changes to Asian Representation in Plan C2333 ........................................ 5

        A.    Greater Houston .................................................................................. 6

        B.    Dallas-Fort Worth ............................................................................... 7

        C.    Central Texas ...................................................................................... 9

III.    Argument ................................................................................................... 10

        A.    The Legislature intentionally discriminated against Asian communities in the process, substance, and impact of the new congressional map ............................................................................................................ 10

                1.    Texas has a deep and ongoing history of discrimination against Asians. ................... 11

                2.    The specific sequence of events and procedural and substantive departures from previous redistricting sessions indicate racially discriminatory intent. ............................... 15

                3.    The legislative history of HB 4 demonstrates awareness of redistricting's harm to Asian voters. ................................................................................................ 17

        B.    Irreparable harm ............................................................................... 20

IV.     Conclusion ................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. Perez*, 585 U.S. 579 (2018) ............................................................. 10

*Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) ............................................. 11

*Bartlett v. Strickland*, 556 U.S. 1 (2009) ........................................................ 10

*BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604 (5th Cir. 2021) ...................................... 20

*League of United Latin Am. Citizens v. Abbott*, 601 F. Supp. 3d 147 (W.D. Tex. 2022) .............. 10

*OCA-Greater Hou. v. Texas*, 867 F.3d 604 (5th Cir. 2017) ......................................... 14

*Petteway v. Galveston County*, 111 F.4th 596 (5th Cir. 2024) ...................................... 4

Pls.' Compl. at 6, *Wang v. Paxton*, No. 4:25-cv-03103 (S.D. Tex. July 3, 2025) ........................ 12

*Veasey v. Abbott*, 830 F.3d 216 (5th Cir. 2016) ........................................... 11, 12, 17

**Legislative Materials**

H. Floor Debate, 89th Leg. (Tex. May 9, 2025) ................................................. 13

H. Floor Debate, 89th Leg., 2nd Called Sess. (Tex. Aug. 20, 2025) ................................ 8, 20

Hrg. Before the H. Select Comm. on Cong. Redistricting, 89th Leg.,
    1st Called Sess. (Tex. July 24, 2025) .................................................. 3, 16, 18

Hrg. Before the H. Select Comm. on Cong. Redistricting, 89th Leg.,
    1st Called Sess. (Tex. July 26, 2025) .................................................. 6, 19

Hrg. Before the H. Select Comm. on Cong. Redistricting, 89th Leg.,
    1st Called Sess. (Tex. July 28, 2025) .................................................. 9, 18

Hrg. Before the H. Select Comm. on Cong. Redistricting, 89th Leg.,
    1st Called Sess. (Tex. Aug. 1, 2025) .................................................. passim

Hrg. Before the Sen. Special Comm. on Cong. Redistricting, 89th Leg.,
    1st Called Sess. (Tex. July 25, 2025) .................................................. 7

Hrg. Before the Sen. Special Comm. on Cong. Redistricting, 89th Leg.,
    1st Called Sess. (Tex. July 28, 2025) .................................................. 6, 18, 19

Hrg. Before. the Sen. Special Comm. on Cong. Redistricting, 89th Leg.,
1st Called Sess. (Tex. July 29, 2025) ..................................................................... 6, 9

Hrg. Before the Sen. Select Comm. on Cong. Redistricting, 89th Leg.,
1st Called Sess. (Tex. Aug. 7, 2025) ....................................................................... 9

Hrg. Before the Sen. Special Comm. on Cong. Redistricting, 89th Leg.,
2nd Called Sess. (Tex. Aug. 17, 2025) ........................................................... 9, 10, 18

**Other Authorities**

Alejandro Serrano, *Increased attention on Texas House Democratic leader Gene Wu comes with more anti-Asian insults*, Tex. Trib. (Aug. 6 2025, at 6:00 PM CST),
https://www.texastribune.org/2025/08/06/texas-house-democrat-gene-wu-anti-asian-mayes-middleton/ ............................................................................................................... 15

Alexa Ura et al., *People of Color Make Up 95% of Texas' Population Growth, and Cities and Suburbs Are Booming, 2020 Census Shows*, Tex. Trib. (Aug. 12, 2021, at 3:00 PM CST),
https://www.texastribune.org/2021/08/12/texas-2020-census ....................................... 3

Alexa Ura, *Chinese Americans Fight for Their Place in Texas as Lawmakers Push Restrictions on Foreign Land Ownership, Social Media Platforms*, Tex. Trib. (Apr. 3, 2023, at 5:00 AM CST), https://www.texastribune.org/2023/04/03/chinese-americans-texas-rights/ ................ 12

Ashley Lopez, *Immigrant Groups Push For Non-English Speakers To Have A Say As Texas Prepares To Redraw Political Districts*, KUT News (Mar. 17, 2021, at 5:01AM),
https://www.kut.org/politics/2021-03-17/immigrant-groups-push-for-non-english-speakers-to-have-a-say-as-texas-prepares-to-redraw-political-districts ....................................... 16

Berenice Garcia, *Fastest growing group in Texas: Asian American*s, Tex. Trib. (June 26, 2024, at 11:00 PM CST), https://www.texastribune.org/2024/06/26/texas-asian-american-growth-census/ ........................................................................................................... 3, 5

Governor Abbott (@GregAbbott_TX), X (May. 11, 2025, at 7:32 PM CST),
https://x.com/gregabbott_tx/status/ 1921725041474949329?s=46 ............................... 12

Governor Abbott Press Off. (@GovAbbottPress), X (Sept. 8, 2025, at 8:48 AM CST),
https://x.com/govabbottpress/status/1965049562307178565?s=61. ............................ 13

Neelam Bohra, *Congressional gerrymandering by Texas Republicans cut out the heart of Houston's Asian community*, Tex. Trib. (Nov. 22, 2021, at 5:00 AM CST),
https://www.texastribune.org/2021/11/22/texas-redistricting-congressional-asian/ ................ 6

Neil G. Ruiz *et al.*, *Asian Americans and the 'Forever Foreigner' Stereotype*, PEW RSCH CTR. (Nov. 30, 2023), https://www.pewresearch.org/2023/11/30/asian-americans-and-the-forever-foreigner-stereotype ................................................................................................... 14

Penelope Rivera & Caroline Love, *EPIC City: What to Know About the North Texas Muslim Community Gov. Greg Abbott Opposes*, KERA NEWS (Apr. 2, 2025, at 5:01 AM CST), https://www.keranews.org/news/2025-04-02/epic-city-plano-muslim-community-investigations. .................................................................................................................. 13

Press Release, Off. Of the Governor, *Governor Abbott Signs Law Banning Sharia Compounds In Texas* (Sept. 12, 2025), https://gov.texas.gov/news/post/governor-abbott-signs-law-banning-sharia-compounds-in-texas ................................................................................. 13

Race and Ethnicity in the United States: 2010 Census and 2020 Census, U.S. CENSUS BUREAU (Aug. 12, 2021), https://www.census.gov/library/visualizations/interactive/race-and-ethnicity-in-the-united-state-2010-and-2020-census.html ...................................................... 4

Sanford Nowlin, *Texas Republicans lob racist insults at Rep. Gene Wu as he leads Democrats' walkout*, S.A. CURRENT (Aug. 7, 2025), https://www.sacurrent.com/news/texas-republicans-lob-racist-insults-at-rep-gene-wu-as-he-leads-democrats-walkout-38211666/ ........................ 15

Sarah Bahari, *Tarrant County GOP Leader Takes Aim at Muslim Texas lawmaker in Online Tirade*, DALL. MORNING NEWS (Aug. 14, 2025, at 1:08 PM CST) https://www.dallasnews.com/news/politics/ 2025/08/14/tarrant-county-gop-leader-takes-aim-at-muslim-texas-lawmaker-in-online-tirade/ .......................................................... 15

## INTEREST OF AMICI CURIAE[1]

Below Amici Curiae submit this amicus brief in support of Plaintiffs' motions for preliminary injunction to enjoin Texas's recently adopted congressional map. Amici are nonprofit, nonpartisan civil rights organizations dedicated to equitable redistricting and representing diverse Asian American and Pacific Islander (AAPI) Texans—communities that are significantly affected by Defendants' actions and otherwise lack a voice in this litigation.

**Asian Texans for Justice** ("ATJ") grew out of organizing efforts within Texas's AAPI communities to support AAPI voting rights and civic engagement. ATJ strives to represent over 2 million AAPI Texans across the political spectrum, including more than 50 ethnicities and speakers of more than 100 languages. ATJ has helped AAPI Texans testify before the Legislature on a range of issues, including on redistricting during the 2025 special sessions, and supported voter registration efforts in the 2023, 2024, and 2025 elections. ATJ's supporters and constituents include residents of the Houston, Dallas-Fort Worth, Austin, and San Antonio metropolitan areas whose voting capacity is diminished by the Legislature's discriminatory redistricting.

**OCA-Greater Houston** ("OCA-GH") is a chapter of OCA–Asian Pacific American Advocates, founded in 1973 as a national, membership-driven social justice organization of community advocates dedicated to advancing the social, political, and economic well-being of Asian Pacific Americans (APAs). OCA-GH works throughout Houston to implement programs that empower the APA community's civic engagement and representation in all levels of business, corporate, government, and community leadership, including education workshops, legal clinics, and scholarships. OCA-GH frequently litigates on behalf of its members' interests in free and fair

---

[1] No person or entity other than Amici Curiae and their counsel assisted in or made a monetary contribution to the preparation or submission of this brief, which is submitted in accordance with this Court's Order dated August 28, 2025, Dkt. 1146. On September 16, 2025, Counsel for Amici conferred with parties, who are unopposed to this filing.

elections in Texas. Its members in the Greater Houston area have testified against proposed congressional maps and been harmed by the adoption of a discriminatory map.

**Emgage Texas** is a chapter of the national nonprofit organization Emgage, which seeks to educate, engage, and empower Muslim American communities. Emgage Texas works to civically engage and mobilize the Muslim community, particularly in the Austin, Dallas, and Houston metro areas, with a key focus on protecting voting rights through voter education and empowerment campaigns. Emgage Texas seeks to illuminate the concerns of its members, many of whom are part of the AAPI community, who regularly vote and intend to vote in the future, testified against proposed maps in the 89th Legislature, and have been harmed by the discriminatory map.

The **South Asian American Justice Collaborative** ("SAAJCO") is a national legal nonprofit whose mission is to fight for the civil and human rights of the South Asian diaspora in the United States through impact litigation, direct legal services, and community engagement. SAAJCO files this amicus brief to help safeguard the right to vote and to ensure that South Asian communities in Texas can participate fully and equally in the electoral process.

**CAIR Action Texas** is an affiliate of CAIR Action, a 501(c)(4) organization. Our mission is to engage, educate, and mobilize Muslim voters, train emerging leaders, and champion policy priorities that enhance the well-being and representation of Muslim communities. Through our work, we aim to foster a more equitable and inclusive democratic society where the rights and voices of Muslims are acknowledged and respected.

**Fair Maps Texas Action Committee** ("Fair Maps") is a constituent of Fair Maps Texas, a nonpartisan coalition of organizations that study redistricting, educate about public participation in redistricting, and provide expertise to the public, organizational members, and lawmakers. The Action Committee comprises organizations and their members dedicated to racially equitable

redistricting, including representation for AAPI communities–Clean Elections Texas, Texans Against Gerrymandering, Emgage Action, MOVE Texas Action Fund, and the Fair Maps Texas Community Advocates–and worked with the above Amici on legislative advocacy during the 2025 redistricting process. As a former Plaintiff in this suit alongside Amici OCA-GH, Emgage, and other organizations and individuals, Fair Maps seeks to offer the Court evidence of the compounding harms of the recent congressional redistricting on the AAPI community after the 2021 maps already discriminated against this growing population.

## I.  INTRODUCTION

Asians are the fastest growing racial group in Texas.[2] As established by the 2020 Census and in testimony before the 87th Legislature when it took up regular decennial redistricting in 2021, Asian Texans are growing in number and political power, and fair redistricting should reflect that growth. However, as Plaintiffs demonstrate in regard to Black and Latino voters, Texas has similarly pursued the intentional suppression and separation of Asian communities through the creation and implementation of congressional map Plan C2333 under House Bill 4 ("HB 4"). Amici write to express the full scope of the malignant racial discrimination infecting the newly adopted map, and the nature of the harm suffered by marginalized communities across the state. In the decade preceding the 2020 census, the Asian population in Texas increased by nearly two-thirds to over 1.5 million,[3] and counties experienced tremendous growth in Asian populations, such as in Williamson (rate of growth of 169%), Collin (116%), Denton (115%), Fort Bend (84%),

---

[2] Hrg. Before the H. Select Comm. on Cong. Redistricting, 89th Leg., 1st Called Sess., 5:23:24–5:23:28 (Tex. July 24, 2025) (Sarah Syed of Woori Juntos); Berenice Garcia, *Fastest growing group in Texas: Asian American*s, TEX. TRIB. (June 26, 2024, at 11:00 PM CST), https://www.texastribune.org/2024/06/26/texas-asian-american-growth-census/.
[3] *See* Alexa Ura et al., *People of Color Make Up 95% of Texas' Population Growth, and Cities and Suburbs Are Booming, 2020 Census Shows*, TEX. TRIB. (Aug. 12, 2021, at 3:00 PM CST), https://www.texastribune.org/2021/08/12/texas-2020-census/.

Travis (71%), Dallas (54%), Tarrant (53%), and Harris (38%) Counties—Fort Bend County grew to more than 23.6% Asian. [4]

The congressional map adopted in 2021 (Plan C2193) failed to acknowledge this explosive growth in Asian communities and discriminated against Asian voters, despite overwhelming and undisputed public testimony demonstrating vote dilution and racial discrimination. The map featured deliberate cracking of Asian communities in Congressional Districts (CD) 7, 9, and 22 in Harris and Fort Bend Counties and CDs 3, 4, and 26 in Collin County. *See, e.g.*, Fair Maps Texas's Second Am. Compl. at ¶¶ 154–160, 168–69, Dkt. 502 (dismissed after change in law, Dkt. 853).

Throughout this litigation, Defendants have insisted the challenged maps were drawn race-blind. *See* Dkt. 986 at 8. Thus, Texans were shocked when the Department of Justice (DOJ) addressed a letter to Governor Abbott on July 7, 2025, insisting that several performing majority-minority districts were "racial gerrymanders" that must be dismantled. *See* Dkt. 1150-1 at 2. The Governor's subsequent call for the Legislature to return in special session to adopt a "revised congressional redistricting plan in light of constitutional concerns raised by the U.S. Department of Justice," Dkt. 1150-2 at 3, resulted in two special sessions characterized by: intentionally discriminatory pretextual adoption of the facially absurd DOJ assertion, *no* public testimony on the ultimately adopted map (C2333), racist taunts, and once again, both total disdain for the growth of the Asian population and deliberate attempts to break up this growing voting bloc and its hard-won political influence. While Asian Texans may not have the numerical concentration to assert new Voting Rights Act claims as now required by *Petteway v. Galveston County*, 111 F.4th 596 (5th Cir. 2024) (*en banc*), this politically cohesive community remains subject to intense racial

---

[4] Race and Ethnicity in the United States: 2010 Census and 2020 Census, U.S. CENSUS BUREAU (Aug. 12, 2021), https://www.census.gov/library/visualizations/interactive/race-and-ethnicity-in-the-united-state-2010-and-2020-census.html.

discrimination, vote dilution, and racial gerrymandering, including in the 2025 redistricting.

Amici therefore write in full support of Plaintiffs in this matter, who have established that the Texas congressional district map adopted in the 89th Legislature's second special session unconstitutionally discriminates against Black and Latino voters, and therefore must be enjoined. Dkts. 1142–43, 1149, 1150. Evidence from and pertaining to Asian Texans underscores the Plaintiffs' likelihood of success on the merits on their intentional discrimination claims, which affect all racial minorities who have created local communities of interest and voted in coalition for decades, and the irreparable harm that would ensue to the millions of Asians who live in Texas should the court fail to grant an injunction.[5] We ask the court to enjoin the newly enacted congressional map and mandate that any remedial map consider and protect the rights of Asian, Black, Latino, and all other minority communities across the state.

## II.  CHANGES TO ASIAN REPRESENTATION IN PLAN C2333

Asians bear greater impact of the changes in the new congressional map than Anglos, losing the ability to influence elections in seven districts across the state and maintaining *zero* opportunity districts despite substantial population growth. *See* Hrg. Before the H. Select Comm. On Cong. Redistricting, 89th Leg., 1st Called Sess., 2:53:49–2:54:06 (Tex. Aug. 1, 2025) (Rep. Jasmine Crockett noting the addition of two Anglo-majority districts). As high school student Ayaan Moledina testified, "Asian Americans like myself are the fastest growing population in Texas, but we don't have updated Census data to use at this time to ensure we are accurately represented." Hrg. Before. the Sen. Special Comm. on Cong. Redistricting, 89th Leg., 1st Called Sess., 2:01:49–2:04:01 (Tex. July 29, 2025).[6] The changes made across the largest Asian populations in Texas—

---

[5] Garcia, *supra* n.2.

[6] Neelam Bohra, *Congressional gerrymandering by Texas Republicans cut out the heart of Houston's Asian community*, TEX. TRIB. (Nov. 22, 2021, at 5:00 AM CST), https://www.texastribune.org/2021/11/22/texas-redistricting-congressional-asian/. This lack of representation is particularly pronounced among Middle Eastern and

Greater Houston, Dallas-Fort Worth, and Central Texas—further diminish Asian representation.

### A. Greater Houston

The largest number and concentration of Asians in Texas live in or around Houston, comprising over 7% of Harris County and over 22% of neighboring Fort Bend County in the 2020 Census. Still, Asians have never constituted a plurality in any Houston-based congressional district.[7] In the map already in place since 2021, Asian residents of Harris and Fort Bend Counties were already severely cracked among CDs 7, 9, and 22. *See* H. Hrg. on HB 4 (Tex. Aug. 1, 2025), 8:51:17–8:51:30 (Amatullah Contractor). Deborah Chen of OCA-GH specifically called out how "racially discriminatory redistricting" would "further dilute Asian voting power" in Houston, where the community was already "splintered across several districts." *Id.* at 7:50:47–7:7:52:07.

The 2025 proposed maps and adopted map exacerbated this cracking. CD 7 decreased from 19.0% Asian Citizen Voting Age Population (ACVAP)[8] to 17.8% ACVAP, continuing the split of Sugar Land across three districts and newly splitting the Alief neighborhood. *Compare* Dkt. 1149-2 *with* 1149-4 (CVAP data for the 2021 and 2025 maps); *see also* Hrg. Before the Sen. Special Comm. on Cong. Redistricting, 89th Leg., 1st Called Sess., 2:55:55–2:56:31 (Tex. July 28, 2025) (Jesus Zamora of Mi Familia Vota discussing his Alief community, with over 80 languages spoken including Mandarin and Vietnamese); H. Hrg. on HB 4 (Tex. Aug. 1, 2025), 7:50:47–7:51:27 (Deborah Chen of OCA-GH); *id.* at 8:51:17–8:51:30 (Amatullah Contractor).

---

North African ("MENA") Texans, many of whom also identify as Asian. Sameeha Rizvi of the Council on American-Islamic Relations (CAIR) Action noted that the previous Trump Administration's decision to remove the MENA category from the 2020 census "led to an undercount of these communities," meaning "the data [the Legislature is] using to draw the maps is flawed." Hrg. Before the H. Select Comm. on Cong. Redistricting, 89th Leg., 1st Called Sess., 5:40:48–5:41:20 (Tex. July 26, 2025).

[7] Colleen DeGuzman, *Texas House Redistricting Committee's Houston Hearing Draws Criticism Over Absence of Maps*, TEX. TRIB. (July 26, 2025, at 4:00 PM CST), https://www.texastribune.org/2025/07/26/texas-houston-redistricting-maps/.

[8] This figure includes those who select "Asian Alone" and "Asian + White," but not "Remainder 2 or More Other Races" on the 2019–2023 American Community Survey Special Tabulation by the U.S. Census Bureau.

CD 9 plunged to just 1.8% ACVAP from a sizable 9.6% ACVAP. *Compare* Dkt. 1149-2 *with* 1149-4. Plan C2333 moved *97% of the population* of CD 9, *see* Dkt. 1149 at 11, migrating from southwestern portions of the district containing plurality-Asian populations near Sugarland and Pearland to a completely different constituency to the northeast, with no opportunity for meaningful Asian representation, as discussed *infra*.

CD 18 also changed dramatically, with 74% of its population moved. *See* Dkt. 1149 at 11. Although the ACVAP increased slightly from 5.6% to 6.1%, *compare* Dkt. 1149-2 *with* 1149-4, this change failed to preserve the cohesive Asian community of interest that had voted together in CD 9, reducing the community's political influence in the region overall. *See, e.g.*, Dkt. 1149-14 at 11, 20 (showing changes to Houston area CD lines).

CD 29 lost a high-concentration Vietnamese population that CD 29's representative Sylvia Garcia recognized in her testimony, which highlighted it as a district of Latino, Black, and Asian voters where "shared values and culture outnumber our differences." Hrg. Before the Sen. Special Comm. on Cong. Redistricting, 89th Leg., 1st Called Sess., 57:36–57:53, 55:45–55:48 (Tex. July 25, 2025). The newly drawn CD 29 no longer contains those Vietnamese neighborhoods.

**B. Dallas-Fort Worth**

The Dallas-Fort Worth area's large Asian communities, particularly in Collin County, were also divided in the 2021 map, and that division continued in the 2025 redistricting. Under the 2021 map, CD 3 had 10.2% ACVAP; CD 4 had 7.4% ACVAP; CD 24 had 6.9% ACVAP; CD 26 had 7.7% ACVAP; CD 32 had 7.6% ACVAP; and CD 33 had 5.9% ACVAP. Dkt. 1149-4.

CD 4 was redrawn in 2021 to include most of the Asian community in Plano and Frisco, attaching it to a district stretching hundreds of miles north to the Oklahoma border. The eligible Asian voter share in the former District 3 was nearly halved. The changes to CD 3 and 4 in the

newly enacted Plan C2333 continue the discrimination against Asian voters from 2021, dividing communities of interest–particularly South Asian communities across the booming cities of McKinney and Frisco–without responsive representation.

The 2025 map makes dramatic changes to the Dallas-area CDs 30, 32, and 33, packing CD 30 with minority voters but reducing the minority populations of CD 32 and 33. These changes perpetuate cracking of Asian voters across numerous CDs and result in less responsive representation for Asian voters. CD 32 changed 57% of its population, morphing from a majority-minority district into a majority-Anglo CVAP one. Dkt. 1150 at 11. It is now 8.1% ACVAP, retaining some of its dense Asian communities in Richardson and gaining other Asian residents in the Dallas suburbs, but stretching over 150 miles into predominantly Anglo portions of East Texas to become 58.7% Anglo CVAP. *See id.*; *see also* Dkt. 1149-2, 1149-14 at 8; *see also* H. Floor Debate, 89th Leg., 2nd Called Sess., 4:47:48–4:48:03 (Tex. Aug. 20, 2025) (House District 107 Rep. Linda Garcia, "[U]nder the current map, CD 32 is a coalition district. . . . Black, Hispanic, and Asian communities come together and make up nearly 68% of the population, and nearly 64% of the voting age population.")

Plan C2333 cracks substantial portions of both Irving, Arlington, and southeastern Tarrant County, and puts the large cohesive Asian communities in that area into neighboring CD 6 and CD 25, majority Anglo districts under both the 2021 and 2025 Congressional maps. *See* Dkts. 1149-2, 1149-4. This maneuver could account for the 1% decrease in ACVAP in CD 33, and proportionally decreases Asian Texans' ability to elect a candidate of their choice in North Texas. CD 33 Representative Marc Veasey testified to the "heavy South Asian presence in the Irving area" in CD 33. Sen. Hrg. (Tex. July 29, 2025), 3:37:35–3:37:52. Moreover, Representative Veasey pointed out that CD 33 is "one of the most diverse in the state, spans Fort Worth, Arlington, Grand Prairie,

Irving, and Dallas and it was created by a court to fix past racial gerrymandering." *Id.* at 3:30:31–3:30:42. Yaseen Tasnif, Muslim student at the University of Texas at Arlington described the university as "one of the most diverse campuses in Texas" but "is actually diluted, tucked into a mostly rural district, Texas 25." Hrg. Before the H. Select Comm. on Cong. Redistricting, 89th Leg., 1st Called Sess., 3:34:27–3:34:37 (Tex. July 28, 2025). Under Plan C2333, UT Arlington is shifted into CD 6, another mostly rural district.

Plan C2333 nominally increases CD 24's ACVAP from 6.9% to 7.2%, but that increase is eclipsed by the substantial Anglo CVAP majority in the district, which under Plan C2333 would comprise 69.2% of the district's population. *See* Dkts. 1149-2, 1149-4.

### C. Central Texas

Although smaller in relative number than the populations in Greater Houston and DFW, the Asian population of Central Texas has steadily grown. Plan C2333 splits Central Texas voters among CDs 10, 11, 17, 31, 35, and 37. In the small region of Northwest Austin–which includes one of the largest concentrations of Asian voters in the area–Alice Yi with ATJ testified, "this bill hacks our [community] apart into five separate district[s]." Hrg. Before the Sen. Special Comm. on Cong. Redistricting, 89th Leg., 2nd Called Sess., 34:45–34:50 (Tex. Aug. 17, 2025); *see* Hrg. Before the Sen. Select Comm. on Cong. Redistricting, 89th Leg., 1st Called Sess., 3:22:29–3:22:43 (Tex. Aug. 7, 2025) (Tao Huang). Zhao Guo, a resident of Round Rock, testified about his expanding community, noting that "between 2010 and 2020, the Asian American population in Williamson County nearly doubled, growing from 21,312 [to] over 40,000 residents, now representing nearly 9% of the county's population. In Round Rock, Asians now make up over 8% of the population with continued growth. That's thousands of voters who want and deserve to be heard." Sen. Hrg. on HB 4 (Tex. Aug. 17, 2025), 1:05:22–1:05:51.

## III. ARGUMENT

In support of Plaintiffs' arguments for entitlement to preliminary injunctive relief, Amici offer additional evidence relating to the likelihood of success on the merits of Plaintiffs' claims of intentional discrimination against minority groups and the irreparable harm to Asian communities.

### A. The Legislature intentionally discriminated against Asian communities in the process, substance, and impact of the new congressional map.

The newly adopted congressional map constitutes intentional discrimination against Asian voters in violation of the Fourteenth and Fifteenth Amendments. Justice Samuel Alito recognized that "[t]he Equal Protection Clause . . . prohibits intentional 'vote dilution'—'invidiously . . . minimiz[ing] or cancel[ing] out the voting potential of racial or ethnic minorities.'" *Abbott v. Perez*, 585 U.S. 579, 585–86 (2018) (quoting *Mobile v. Bolden*, 446 U.S. 55, 66–67 (1980)).

"Plaintiffs may show intentional vote dilution merely by establishing that race was part of Defendants' redistricting calculus[.]" *League of United Latin Am. Citizens v. Abbott*, 601 F. Supp. 3d 147, 161 (W.D. Tex. 2022). Where "a State intentionally drew district lines in order to destroy otherwise effective crossover districts," in which a racial group "crossed over" to vote with a smaller racial group to achieve the same political goals, "that would raise serious questions under both the Fourteenth and Fifteenth Amendments." *Bartlett v. Strickland*, 556 U.S. 1, 24 (2009).

Plaintiffs' briefing describes the abundant direct evidence of unconstitutional intentional racial discrimination, found on the face of the DOJ letter, the State's response to it, and the State's intentional destruction of performing minority districts in the adopted map. *See* Dkt. 1149 at 8–10; Dkt. 1150 at 27–34. As one of the experts offered by the Brooks Plaintiffs concluded, "In regions across Texas that have sizable populations of both Anglo and minority voters, ecological inference models point to a clear pattern of racially polarized voting. Hispanic voters, but also Black and Asian American voters demonstrate unified and cohesive voting, siding for the same

10

candidates of choice with high support." Dkt. 928-1 at 7. This cohesion among Asian, Black, and Latino voters means that intentional discrimination aimed at destroying Black and Latino political power in performing districts often also constitutes discrimination against Asians.

Moreover, "[t]he impact of the official action," and "whether it 'bears more heavily on one race than another,' may provide an important starting point." *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977) (internal citation omitted). As discussed above, the partitioning and disenfranchisement of Asian communities demonstrates the discriminatory impact of Plan C2333. Building on that disparate-impact point, Amici focus on additional evidence highlighting intentional discrimination against Asian voters, per the *Arlington Heights* factors: (1) "the historical background of the decision," (2) "the specific sequence of events leading up to the decision," (3) "departures from the normal procedural sequence," (4) "substantive departures," and (5) "legislative history, especially where there are contemporary statements by members of the decision-making body." *Veasey v. Abbott*, 830 F.3d 216, 231 (5th Cir. 2016) (*en banc*).

### 1. Texas has a deep and ongoing history of discrimination against Asians.

The history of racial discrimination against Black and Latino communities in Texas is unfortunately well-established, but there has been less attention paid to discrimination against AAPIs. When Deborah Chen of OCA-GH was questioned by the House Committee on the history of Asian discrimination, she noted that Asians are mentioned only twice in history books, relating to Chinese labor building the Transcontinental Railroad and Japanese American internment and incarceration during World War II. H. Hrg. on HB 4 (Tex. Aug. 1, 2025), 8:02:11–8:04:28. But "Anti-Asian sentiment and disenfranchisement has deep roots in the Reconstruction era of Texas history[,]" noted Dr. Monica Muñoz Martinez, Associate Professor of History at the University of Texas at Austin, in an expert report submitted earlier in this litigation. Ex. D at 32; *see also* Dkt.

931-4.[9] For example, "[i]n Texas, exclusionary alien land laws were in effect from 1892 until 1965. The impact of these restrictive policies further fueled anti-Asian rhetoric, and created the false narrative that Asian immigrants were somehow immoral or inferior and ineligible of citizenship and voting rights." *Id.* at 34 (citations omitted).

Those anti-alien land laws are not confined to the past. *See Veasey*, 830 F.3d at 239 ("[C]ircumstantial evidence of discriminatory intent is augmented by contemporary examples of State-sponsored discrimination in the record."). The same Legislature that passed HB 4 passed anti-alien land law SB 17, which harkens back to pre-1965 by making it near-impossible for some Chinese, North Korean, and Iranian citizens to continue their studies in Texas and substantially increases the risk of housing discrimination against Asian and MENA Texans.[10] According to one estimate, this ban would have affected at most 0.126 percent of real estate transactions in 2024.[11] Yet proponents of SB 17 implicated *all* people from the targeted nations through rhetoric amplifying harmful stereotypes about Asian and MENA individuals.[12] Another law restricting residential property interests passed by the 89th Legislature arose out of official investigations of and intolerant rhetoric toward Muslim communities, many of whom are South Asian, Southeast Asian, or of MENA descent. HB 2411 is explicitly aimed to restrict a single residential development designed to serve Dallas's growing Muslim community.[13] Despite no evidence of

---

[9] Stephanie Swanson, Fair Maps Texas, submitted this expert report to the House Committee on Congressional Redistricting and Senate Committee on Congressional Redistricting during the first special session. *See* Ex. A–C.

[10] Alexa Ura, *Chinese Americans Fight for Their Place in Texas as Lawmakers Push Restrictions on Foreign Land Ownership, Social Media Platforms*, TEX. TRIB. (Apr. 3, 2023, at 5:00 AM CST), https://www.texastribune.org/2023/04/03/chinese-americans-texas-rights/.

[11] Pls.' Compl. at 6, *Wang v. Paxton*, No. 4:25-cv-03103 (S.D. Tex. July 3, 2025).

[12] For example, on May 11, 2025, Governor Abbott stated on X that "I will soon sign the toughest ban in the U.S. to prohibit people from hostile foreign nations like China, Russia, Iran, and North Korea from buying or owning land in Texas." Governor Abbott (@GregAbbott_TX), X (May. 11, 2025, at 7:32 PM CST), https://x.com/gregabbott_tx/status/ 1921725041474949329?s=46.

[13] Press Release, Off. Of the Governor, *Governor Abbott Signs Law Banning Sharia Compounds In Texas* (Sept. 12, 2025), https://gov.texas.gov/news/post/governor-abbott-signs-law-banning-sharia-compounds -in-texas.

wrongdoing, state officials launched five separate investigations into the developer,[14] and Governor Abbott falsely claimed that the community would ban non-Muslims from entering and referred to it as a "Sharia City" run by "foreign adversaries."[15]  During a debate on SB 17, Texas House Representative Gene Wu emphasized the harms of statements that invoke these stereotypes of Asians and Muslims as dangerous foreigners. *See* H. Floor Debate, 89th Leg., 2:50:04–2:50:43 (Tex. May 9, 2025). He cautioned the AAPI community that this discrimination would not end with SB 17: "[H]ere is the thing that is different for us: they will not stop at land, because it did not stop at land in the past." *Id*. at 2:52:06–2:52:57.

Hate crimes against Asian communities also spiked during and after the COVID-19 pandemic, including in Texas where three shootings in Dallas targeted AAPI-owned businesses between April and May of 2022. Ex. D at 61. When Asian U.S. Congress members brought forward a resolution condemning the murder of six Asian women in Atlanta, Georgia, almost every Texas Republican voted against the resolution. *Id.* Congressman Chip Roy of Texas instead commented that the Chinese Government was "patently evil" and placed the responsibility for the pandemic on China. *Id.* The Texas-based nonprofit South Asian Americans for Voter Empowerment reported that it heard more incidents of hate crimes after it began working to increase voter turnout among AAPI communities. *Id.* at 62.

Texas has also imposed legal restrictions on and objected to legal protections for Asian voters. In 1975, Texas objected to Congress extending the VRA to language minorities in 1975 via Section 203 and unsuccessfully sued to challenge that extension. Ex. D at 42. The U.S.

---

[14] Penelope Rivera & Caroline Love, *EPIC City: What to Know About the North Texas Muslim Community Gov. Greg Abbott Opposes*, KERA NEWS (Apr. 2, 2025, at 5:01 AM CST), https://www.keranews.org/news/2025-04-02/epic-city-plano-muslim-community-investigations.

[15] *Id.*; Governor Abbott Press Off. (@GovAbbottPress), X (Sept. 8, 2025, at 8:48 AM CST), https://x.com/govabbottpress/status/1965049562307178565?s=61.

Supreme Court rejected Texas's claim, noting that the extension was adopted due to "overwhelming evidence showing the 'ingenuity and prevalence of discriminatory practices that have been used to dilute the voting strength and otherwise affect the voting rights of language minorities[,]'" including Asians. *Id.* (citing *Briscoe v. Bell*, 432 U.S. 404, 405–06 (1977)). Yet as recently as 2014, Williamson County applied Texas law to deny a citizen of South Asian descent the opportunity to vote with the interpreter of her choice, as guaranteed by federal law. *Id.* at 44. In the ensuing lawsuit, the Fifth Circuit found that "the limitation on voter choice expressed in Tex. Elec. Code § 61.033 impermissibly narrow[ed] the right guaranteed by Section 208 of the VRA." *OCA-Greater Hou. v. Texas*, 867 F.3d 604, 615 (5th Cir. 2017). In defiance of that ruling, the Texas Legislature passed SB 1 in 2021 to restrict interpreters once again. Ex. D at 45.

Attacks on Asian legislators during the 89th special sessions also provide glaring contemporaneous evidence of anti-Asian discrimination. Supporters of HB 4 attacked Texas House Representatives Gene Wu and Salman Bhojani in particular with the racist insinuation that Asian Americans' loyalty is more likely to be divided between the United States and the countries to which they have ancestral ties.[16] In a series of Tweets relating to Representative Wu blocking a vote on HB 4, Senator Mayes Middleton accused Representative Wu of aligning with the Chinese Communist Party and "fighting to put China first and Texas second[.]"[17] This, despite the fact that Representative "Wu's family emigrated to Texas from China shortly after he was born, and the lawmaker has publicly stated that they left their native country to escape oppression under its

---

[16] *See* Neil G. Ruiz *et al.*, *Asian Americans and the 'Forever Foreigner' Stereotype*, PEW RSCH CTR. (Nov. 30, 2023), https://www.pewresearch.org/2023/11/30/asian-americans-and-the-forever-foreigner-stereotype.

[17] Sanford Nowlin, *Texas Republicans lob racist insults at Rep. Gene Wu as he leads Democrats' walkout*, S.A. CURRENT (Aug. 7, 2025), https://www.sacurrent.com/news/texas-republicans-lob-racist-insults-at-rep-gene-wu-as-he-leads-democrats-walkout-38211666/.

communist government."[18] The head of the Tarrant County Republican Party similarly attacked House member Salman Bhojani, the first Muslim and first South Asian state representative in Texas, for not being present in the Capitol due to a family emergency, calling for a White House official to "denaturalize and deport Pakistan born, anti-American democrat, #txlege quorum breaking, @realDonaldTrump's agenda hating, redistricting blocking @SalmanBhojaniTX."[19]

The unapologetically discriminatory rhetoric during an unprecedented redistricting cycle is thus the latest installment in a long history of discrimination against Asians in Texas.

2.  **The specific sequence of events and procedural and substantive departures from previous redistricting sessions indicate racially discriminatory intent.**

Plaintiffs' Motions describe the rushed, nontransparent, and exclusionary process followed by the State throughout this mid-decade redistricting. *See* Dkt. 1142 at 6–11; Dkt. 1143 at 3–4; Dkt. 1149 at 5–6, 14–15; Dkt. 1150 at 33–35. Of particular note, the Legislature departed substantively from usual redistricting practice by responding to the DOJ's mid-decade call to redraw several performing majority-minority districts on the basis of race. *See* Dkt. 1142 at 4–6, 10; Dkt. 1149 at 8–10; Dkt. 1150 at 3–21. It also abandoned historic core preservation and targeted minority incumbents. *See* Dkt. 1143 at 7. Amici focus on two procedural and substantive failures that particularly harmed Asian voters not emphasized in other briefs, which support Plaintiffs' claims by pointing to a coherent vein of racial discrimination throughout Plan C2333's creation.

First, the Legislature provided even less language access than in the 2021 sessions. After the original version of HB 4 was filed, legislators provided only a nominal opportunity for public

---

[18] *Id.*; *see also* Alejandro Serrano, *Increased attention on Texas House Democratic leader Gene Wu comes with more anti-Asian insults*, TEX. TRIB. (Aug. 6 2025, at 6:00 PM CST), https://www.texastribune.org/2025/08/06/texas-house-democrat-gene-wu-anti-asian-mayes-middleton/.

[19] Sarah Bahari, *Tarrant County GOP Leader Takes Aim at Muslim Texas lawmaker in Online Tirade*, DALL. MORNING NEWS (Aug. 14, 2025, at 1:08 PM CST), https://www.dallasnews.com/news/politics/2025/08/14/tarrant-county-gop-leader-takes-aim-at-muslim-texas-lawmaker-in-online-tirade/.

input during a single ten-hour hearing, which was scheduled just 48 hours after the map was released. Despite Texas's large number of Vietnamese and Chinese speakers and HB 4's significant impact on multi-lingual districts, notice of the hearing and subsequent hearings was published only in English and Spanish. Sarah Syed of Woori Juntos, a Houston-based nonprofit that aims to empower Asian and immigrant communities across Texas, criticized the legislature for the lack of multilingual materials and failure to provide translation or interpretation services, despite Harris County alone containing speakers of 145 languages. H. Hrg. (Tex. July 24, 2025), 5:23:35–5:24:56. During the 2021 redistricting process, the Senate Committee had refused to provide an interpreter to allow Texans to testify in their native language.[20] Despite Chair Joan Huffman's claim that translation services were available upon request,[21] members of the public who tried to access such services to testify were told "there was no interpreter support[.]"[22] During the 2025 process, there was even less time or acknowledgement given to the need for language access. The lack of transparency and rushed process particularly disadvantaged citizens with limited proficiency in either English or Spanish to advocate for their communities.

In addition, while some witnesses were barred from displaying signs and other protected speech materials during the hearing, one witness was allowed to testify while displaying the Confederate flag and wearing a t-shirt defending Confederate monuments. H. Hrg. on HB 4 (Tex. Aug. 1, 2025), 9:13:29–9:16:37; *see also id.* at 9:16:45–9:17:41 (Rep. Senfronia Thompson: "Mister chairman, everybody else has had to leave their signs and their things out, but he gets a chance to come in with his flags." . . . Rep. Cody Vasut: "We will, to the maximum extent we can,

---

[20] *See* Ex. E, Fair Maps Coalition Letter regarding language access in 2021 redistricting progress.
[21] *See* Ex. F, Letter from the Senate Special Committee on Redistricting (March 10, 2021).
[22] Ashley Lopez, *Immigrant Groups Push For Non-English Speakers To Have A Say As Texas Prepares To Redraw Political Districts*, KUT NEWS (Mar. 17, 2021, at 5:01AM), https://www.kut.org/politics/2021-03-17/immigrant-groups-push-for-non-english-speakers-to-have-a-say-as-texas-prepares-to-redraw-political-districts.

maintain the rules of decorum.") The entire interaction and inconsistent application of "rules of decorum" could be viewed as, at least, a toleration of racial animus by Chairman Vasut.

### 3. The legislative history of HB 4 demonstrates awareness of redistricting's harm to Asian voters.

Plaintiffs' briefs point to the statements by House Committee Chair Todd Hunter and other legislators relating to intentional dismantling of performing coalition districts as proof of their racialized intent against Black and Latino voters. *See, e.g.*, Dkt. 1150 at 16–19, 28–29. That discriminatory animus also targets those districts' Asian voters who voted alongside their Black and Latino neighbors.

Even without this direct race-based language, extensive and passionate testimony by Asian constituents at the limited public hearings during this redistricting process indicates that legislators should have been aware of the effect of their redistricting on Asian voters. Where a legislature is "aware of the likely disproportionate effect of the law on minorities, and . . . nonetheless passed the bill without adopting a number of proposed ameliorative measures that might have lessened this impact[,]" it is highly probative of intentional discrimination. *Veasey*, 830 F.3d at 236. Despite understanding the already significant underrepresentation of Asian communities and having a responsibility to consider it, the proponents of HB 4 systematically dismantled diverse districts where large concentrations of Asian voters formed unified communities of interest with other minority racial groups. Legislators plowed ahead with this plan even after hearing testimony that redistricting "risks diluting the voting strength of communities that are just beginning to build visibility and voice." H. Hrg. (Tex. July 24, 2025), 5:23:55–5:24:01 (Sarah Syed of Woori Juntos).

Deborah Chen of OCA-GH asked whether legislators were "intentionally targeting Asian, Latino, and Black communities" to reduce the number of legislators representing communities of color. H. Hrg. on HB 4 (Tex. Aug. 1, 2025), 7:50:34–7:50:46. Alice Yi, representing ATJ, described

HB 4 as "a deliberate attack on Asian American and Pacific Islander communities and the people of color across Texas." Sen. Hrg. on HB 4 (Tex. Aug. 17, 2025), 34:07–34:17. These accusations were based on the "surgical" way that HB 4 "slice[d] through community lines" to carve up areas with large concentrations of Asian voters in a "direct violation of redistricting principals." H. Hrg. (Tex. July 28, 2025), 5:27:36–5:28:01 (Kendyll Locke). At one early hearing, Houston-area high school student Kira Dang pleaded with legislators to abandon the purposeful targeting of minority voters: "Please don't divide us across districts that don't represent who we are. Keep our communities whole."  Sen. Hrg. (Tex. July 28, 2025), 4:00:22–4:00:28. Zhao Guo of Round Rock noted that "the only change that's occurred since [the] 2020 redistricting cycle is the community of color, including Asian Americans like me, have grown more visible and more politically active. That seems to be what the process is reacting to." Sen. Hrg. on HB 4 (Tex. Aug. 17, 2025), 1:05:07–1:05:21.

Asian voters also lost powerful representation by the Legislature dismantling CD 9, one of the performing coalition districts targeted by the DOJ letter. Upon questioning by the House Committee about the impact of HB 4 on AAPI communities, Deborah Chen of OCA-GH testified that OCA-GH's offices are in CD 9, and praised Congressman Al Green's responsiveness in particular: "If you look back at every time there has been some kind of disaster, the most recent being, you know, at the height of anti-Asian hate, Representative Green was one of the first to come out and say, this is wrong. This type of anti-Asian hate is simply wrong." H. Hrg. on HB 4 (Tex. Aug. 1, 2025), 7:54:29–7:54:48. She continued, "He's always been there to speak for our community." *Id.* at 7:54:51–7:54:55. In an example of responsiveness and inclusion, Congressman Green also testified about the diversity of his district. He noted that CD 9 is home to over 120 languages, and the "ballot is printed in four languages, English, Spanish, Vietnamese, and

Chinese. . . . We recognize the importance of culture in the community. You know, we live in a country where you can have unity without uniformity." Sen. Hrg. (Tex. July 28, 2025), 48:47–49:02, 58:16–58:23, 58:33–58:38.

Speakers, including Niloufar Hafizi with Emgage Action, warned legislators that dividing Asian communities among multiple districts "has policy implications that impact people's lives." H. Hrg. on HB 4 (Tex. Aug. 1, 2025), 11:11:12–11:11:20. Multiple speakers emphasized that HB 4 would be particularly damaging now, when hundreds of thousands of Asian Texans are at risk of losing critical benefits such as health care and food assistance or facing threats such as anti-Asian hate. *Id.*; *id.* at 7:51:16–7:51:37, 7:54:19–7:54:49 (Deborah Chen of OCA-GH).

People also described the ways in which the 2025 redistricting would harm civic engagement among Asian communities. Congresswoman Lizzie Fletcher of CD 7 emphasized that breaking up communities would undercut voters' ability to build relationships with elected officials. H. Hrg. (Tex. July 26, 2025), 1:49:23–1:49:56. Houston student Kira Dang expressed a similar concern that she would one day "be represented by someone who doesn't reflect or care about the places [we] call home." Sen. Hrg. (Tex. July 28, 2025), 3:58:58–3:59:13.

In his closing on HB 4, House Representative Diego Bernal drew a direct line between the redistricting fight, and SB 17 (when his colleagues "didn't want Asian folks to own property"), and the many other discriminatory laws enacted during his tenure as a legislator. H. Floor Debate (Tex. Aug. 20, 2025), 5:49:14–5:51:42. He called out how HB 4 continues a pattern of racially motivated targeting by "going through cities, counties, parts of town, and even neighborhoods, and drawing them away from one another, linking them up with people and places they have nothing to do with. And we are telling you, if you knew these places, if you know those people, you are singling them out. You're using race." *Id.* at 5:52:53–5:53:21.

### B.  Irreparable harm

As discussed in each of the motions before this Court, minority communities across Texas face imminent irreparable harm in the absence of a preliminary injunction. "[T]he loss of constitutional freedoms 'for even minimal periods of time . . . unquestionably constitutes irreparable injury.'" *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  Amici's members and constituents will be irreparably harmed if they are forced to vote under unconstitutional districts in the March and November 2026 elections, and if their votes are diluted by such discriminatory redistricting. *See* Dkt. 1142 at 18–19; Dkt. 1143 at 15; Dkt. 1149 at 24–25; Dkt. 1150 at 42–43. This harm would compound the existing harm of dilution of Asian and MENA representation caused by the congressional map enacted in 2021. As Niloufar Hafizi of Emgage Action testified, "I oppose this map not because our current congressional map is perfect or fair, but because this map falls even further short of fairly representing Texans." H. Hrg. on HB 4 (Tex. Aug. 1, 2025), 11:11:05–11:11:12.

### IV.  CONCLUSION

Amici therefore respectfully request that this Court grant Plaintiffs' motions for preliminary injunction and enjoin the new, discriminatory congressional map from taking effect.

In addition, Amici request that in any remedial stage of this litigation to draw and implement a new congressional or other map, the evidence proffered above relating to Asian communities of interest and political power in Greater Houston, North Texas, and Central Texas is taken into account so that these communities are respected and made equal participants in our democratic process, effectuating Plaintiffs' pleading for a new redistricting plan that does not unconstitutionally discriminate on the basis of race.

Dated:   September 17, 2025                    Respectfully submitted,

*/s/ Sarah Xiyi Chen*
Sarah Xiyi Chen (TX Bar No. 24144784)
Veronikah Warms (TX Bar No. 24132682)*
Zachary Dolling (TX Bar No. 24105809)
Texas Civil Rights Project
P.O. Box 17757
Austin, Texas 78760
Telephone: (512) 474-5073
Fax: (512) 474-0726
schen@texascivilrightsproject.org
veronikah@texascivilrightsproject.org
zachary@texascivilrightsproject.org

Nina L.M. Oishi (TX Bar No. 24142250)
Texas Civil Rights Project
P.O. Box 1108
Houston, Texas 77251-1108
Telephone: (512) 474-5073
Fax: (512) 474-0726
noishi@texascivilrightsproject.org

Patrick Stegemoeller*
Asian American Legal Defense and
Education Fund
99 Hudson Street, 12th Floor
New York, NY 10013
Telephone: (212) 966-5932
Fax: (212) 966 4303
pstegemoeller@aaldef.org

*Counsel for Amici Curiae*

*admitted pro hac vice

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 17, 2025, I electronically filed the original of this brief with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

      Executed this 17 day of September, 2025.

/s/ *Sarah Xiyi Chen*
Sarah Xiyi Chen
*Counsel for Amici Curiae*
