IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, | § § § | |
| *Plaintiffs,* | § § | Case No. 3:21-cv-00259-DCG-JES-JVV [Lead Case] |
| v. | § § | &  |
| GREG ABBOTT, *et al.*, | § § | All Consolidated Cases |
| *Defendants.* | § | |

**STATE DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO STRIKE EXPERT REPORTS OF DR. BARRETO**

Defendants Greg Abbott, in his official capacity as Governor of Texas, Jane Nelson, in her official capacity as Secretary of State of Texas, Dave Nelson, in his official capacity as Deputy Secretary of State, and the State of Texas file this Reply in Support of their Motion to Strike the "August 2025 Declaration of Dr. Matt A. Barreto and Michael B. Rios, MPP" (Aug. 24, 2025, Brooks Ex. 269) and the "September 2025 Supplemental Declaration of Matt Barreto and Michael Rios" (Sep. 5, 2025) (the "Reports"), ECF No. 1169.

**INTRODUCTION**

Conclusions only become fact when they are confirmed by data. It is difficult for Defendants to understand why, if Barreto is so convinced of the results produced by his algorithmic study, he refuses to share either the outputs of that study, or information sufficient to explain how they were derived; instead, his Reports consist of the presentation of bare conclusions that are unaccompanied by any material explanation of the process leading to them. Brooks Plaintiffs' ("Plaintiffs") Opposition to the Motion to Strike (ECF No. 1193) does nothing to fill in the gaps and serves to confirm that the Reports should indeed be stricken.

Just as Barreto does in his Reports, Plaintiffs in their Opposition describe Barreto's conclusions without the data to substantiate them, talking about the results of simulations (i.e., the

1

robot's outputs) that no one has seen, and no one can recreate. ECF No. 1193 at 1-3. Similarly, if Barreto has such confidence in the parameters he designed to conduct the study and that led to those outputs—whether it be a shapefile or a seed or the inputs themselves—why is he refusing to disclose that information? The Opposition also does not address why Barreto is insisting on distinguishing himself in this regard from Professor Duchin, who has, as Defendants noted, disclosed massive quantities of data to support her opinions.

Further, while it appears Barreto did produce his code, he exploits the Court's technical unfamiliarity to elide central issues. Barreto says he has produced the data he ran through his code; he has not. Instead, he has vaguely gestured at an enormous bank of data that are publicly available and stated simply that he used some of it. Even assuming this gesture were sufficient, Barreto further waves away State Defendants' request to see how he prepared his data to run through his code; instead, he insists Dr. Trende is capable of performing such data preparation. While State Defendants are heartened to learn that Barreto and his lawyers concede that Dr. Trende knows what he is doing, Dr. Trende's competence is an entirely separate issue from how Barreto performed his work and whether he performed it correctly.

There is more than one way to skin a cat, not all of them effective. Barreto has never attempted a simulation analysis before but insists that the world assume his competence at each stage of the process. Without a clear statement of Barreto's data manipulation—both the data used and the method of manipulation—State Defendants are hamstrung to reproduce his methods or results.

Barreto's obfuscation of his methodology and underlying data undermines confidence that his study is irreproachable and can withstand scrutiny. Rule 26 requires that experts, including Barreto, facilitate the opposing party's and the Court's substantive comprehension of the study and, hence, their review of the reliability of his evidence. But Barreto's approach appears designed to do precisely the opposite—to slow down, or prevent altogether, any critical review of the evidence.

Plaintiffs instead project that Defendants "seek to obscure" Barreto's reports by not attaching them to the Motion to Strike. ECF No. 1193 at 1. It is common however not to attach as exhibits the reports that the moving party is arguing are prejudicial; State Defendants did likewise in their Motion to Exclude the reports of Dr. Jacob Grumbach, ECF No. 920. And as State Defendants are arguing here that Barreto failed to supply his output data or a means of recreating it, it is unclear why State Defendants would include the Reports, which likewise do not contain that information.[1] Plaintiffs argue that Dr. Trende can and likely has replicated Barreto's results and "that (Trende's) analysis is why Defendants chose to seek to strike Dr. Barreto's report, because the result confirms what Dr. Barreto reported and is incredibly harmful to their case." ECF No. 1193 at 14. This does not logically follow. Again, the case of Dr. Grumbach is instructive. State Defendants moved to exclude his reports not because results are only challenged if they are harmful, but because of problems with his data, as verified by the fact that LULAC Plaintiffs withdrew Dr. Grumbach and did not call him at trial. ECF No. 952.

I. **The emails included in the Opposition show that Barreto has not supplied State Defendants with sufficient information.**

Plaintiffs evidently intended for the headline aspect of their Opposition to be the inclusion of an email from each of the two professors, Kosuke Imai and Cory McCarten, responsible for developing the "redist" software that both Drs. Barreto and Trende use to conduct their analyses in this case. These two emails were, we are told, designed to set Barreto's mind at rest that he had supplied everything that Dr. Trende would need to scrutinize Barreto's August and September 2025 Reports. ECF No. 1193 at 10.

Plaintiffs offer no reason to believe that either of these professors is qualified to opine on the scope of disclosure obligations under Rule 26. Further, both Drs. Imai and McCarten were

---

[1] State Defendants have the attached the Sept. 5, 2025 supplemental report as Exhibit A to this Reply to demonstrate that the time it would take for Barreto to re-run his analysis is greater than the time until the preliminary injunction hearing begins.

3

unable or unwilling to provide substantive backing for Barreto's analysis but instead offered tepid and noncommittal statements of support.

Dr. Imai's email, which is integrated it in its entirety in the Opposition at p. 11, states unequivocally that it is a "standard requirement" for the proponent of the redistricting simulation analysis published in an academic journal to "provide the code and data necessary to reproduce the results reported." That email to Barreto continues by noting that as the proponent of the simulation, he is "expected to deposit [his] code and the original input data (shapefiles, VTD election data, census data, etc.)." The reason for this is that "running the code with the data will reproduce *the* simulated plans" (emphasis added), such that "there is no need to deposit the simulated plans themselves."

Dr. McCartan's email is equally unhelpful to Plaintiffs. He confirms that "running the same code twice might produce different simulated output," though he suggests that "[w]hen simulation methods are applied properly," the simulations' output can be compared to one another. But critically, Dr. McCartan suggests that for two sets of simulated output to be considered as outputs that can be compared and from which conclusions can be drawn, the individual running the second simulation must have access to both "the code and the underlying shapefiles" employed by the first. Dr. McCartan confirms that in such cases "the actual simulated plans" are not needed, because the code and the shapefile data "suffice to recreate the analysis and the conclusions [drawn]."[2]

These two emails collectively sustain the fundamental criticism that State Defendants make in their Motion to Strike—namely, that they cannot reproduce Barreto's results, which necessarily places them and their experts at a great disadvantage in rebutting the Reports. As State Defendants have repeatedly informed opposing counsel, if Barreto neither produces his output file

---

[2] It is also worth noting that Dr. McCartan's conclusions are couched in a number of hedges, qualifications, and conditional language, including the caveat that he only "briefly reviewed the code and report" Barreto sent and the lukewarm endorsement that Barreto's "process seems consistent with what [Dr. McCartan] has seen from, inter alia, "other expert reports using simulation methods."

4

nor produces seed (as described in the Motion to Strike), Dr. Trende will never be able to obtain or assess the same results as Barreto.

Barreto did not provide a shapefile from which his maps were generated—indeed, his lawyers insisted "There is no foundational shapefile, aside from redistricting plan (e.g., Plan C2333)." ECF No. 1169.6 at 1. However, it is clear that Barreto had to merge data to create his simulations (as discussed earlier regarding the different choices governed by the instructions/criteria fed into the robot to generate the random districts). Yet Plaintiffs and Barreto refuse to explain how the simulations were created or to identify the types of data that were used to do so. In their Opposition, Plaintiffs simply dodge this fundamental issue and repeat their mantra that State Defendants have everything they need to rebut the Reports.

As State Defendants have repeatedly told Plaintiffs, ultimately and fundamentally, the result of Plaintiffs' recalcitrant withholding of disclosable information is that Dr. Trende cannot reproduce the simulated plans with the limited information provided. The best he can do is to develop his own outputs that approximate the characteristics of Dr. Barreto's outputs; he cannot reproduce and analyze the same set of outputs. Plaintiffs' counsel seems to encourage this result.

**II. Plaintiffs admit that Barreto cannot replicate his own results.**

Plaintiffs propose that instead of striking Barreto's reports, the Court order him to re-run them with the seed used by Dr. Trende. ECF No. 1193 at 15. At no point in the underlying conference among counsel did Plaintiffs offer this seeming compromise. That they only suggest a middle ground at this late hour underscores the purpose of Barreto's disclosure shell game: delay. Indeed, the possibility of such a compromise undercuts Barreto's own description of why he submitted the September 2025 supplemental report almost two weeks after the August 2025 report: "Given the high computing demands required to complete analysis on the newly passed maps for the second most populous state in the country with nearly 19 million registered voters and 38 congressional districts, we have now completed our full analysis." Ex. A. Barreto refused to provide basic data when it would have been useful and only offers a compromise position when it is too late. All this gamesmanship, despite the weeks provided for civil exchange of basic

5

information before the PI hearing—during which time Plaintiffs have compounded their expert reports—demonstrates clearly Plaintiffs' time-wasting tactics. These tactics are incompatible with the insistent certitude of Plaintiffs' claims.[3]

Plaintiffs' offer to have Barreto re-run his results (and presumably issue a new report) is impractical with just over a week until the October 1, 2025, preliminary injunction hearing. Unless the Reports are stricken, State Defendants will be prejudiced.

## CONCLUSION

For the reasons above, and those listed in their Motion to Strike, ECF No. 1169, State Defendants respectfully request the Court strike the Aug. 24, 2025, and Sep. 5, 2025 declarations and reports of Barreto and his assistant, Michael Rios.

---

[3] "It is statistically *impossible* that the racially skewed outcomes of Plan C2333 could arise absent an overriding focus on race." ECF No. 1193 at 2.

| | |
|---|---|
| Date: September 23, 2025 | Respectfully submitted, |

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

RYAN D. WALTERS
Deputy Attorney General for Legal Strategy

WILLIAM D. WASSDORF
Associate Deputy Attorney General for Civil Litigation
Texas Bar No. 24103022
william.wassdorf@oag.texas.gov

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
Special Litigation Division
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Phone: (512) 936-1700
Fax: (512) 457-4410
ryan.kercher@oag.texas.gov
kathleen.hunker@oag.texas.gov
david.bryant@oag.texas.gov
zachary.rhines@oag.texas.gov
munera.al-fuhaid@oag.texas.gov
zachary.berg@oag.texas.gov
ali.thorburn@oag.texas.gov

/s/ Ryan G. Kercher
RYAN G. KERCHER
Chief, Special Litigation Division
Texas Bar No. 24060998

KATHLEEN T. HUNKER
Deputy Chief, Special Litigation Division
Texas Bar No. 24118415

DAVID BRYANT
Senior Special Counsel
Texas Bar No. 03281500

ZACHARY L. RHINES
Special Counsel
Texas Bar No. 24116957

MUNERA AL-FUHAID
Special Counsel
Texas Bar No. 24094501

ZACHARY W. BERG
Special Counsel
Texas Bar No. 24107706

ALI M. THORBURN
Special Counsel
Texas Bar No. 24125064

COUNSEL FOR STATE DEFENDANTS

## CERTIFICATE OF SERVICE

I certify that on September 23, 2025, a true and accurate copy of the foregoing document was filed and served electronically (via CM/ECF).

*Ryan G. Kercher*
RYAN G. KERCHER
Special Counsel