# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.* § § § | | |
| *Plaintiffs,* § § | Case No. 3:21-cv-00259 [Lead Case] | |
| V. § | | |
| GREG ABBOTT, *et al.*, § § | | |
| *Defendants.* § § | | |
| TEXAS STATE CONFERENCE OF THE NAACP, § § § | | |
| *Plaintiff,* § § | Case No. 1:21-cv-01006 [Consolidated Case] | |
| V. § | | |
| GREG ABBOTT, *et al.*, § § | | |
| *Defendants.* § § | | |

**REPLY BRIEF IN SUPPORT OF TEXAS NAACP'S MOTION FOR A PRELIMINARY INJUNCTION**

**INTRODUCTION**

The central issue in this case is straightforward. Even if the U.S. Department of Justice's July 7, 2025 letter ("DOJ Letter") was "bogus," as language quoted by the State suggests, it directed Texas to eliminate certain majority-minority districts based on their racial composition. In response, Governor Abbott explicitly pledged to "remove" those coalition districts—that is, to target districts based on race. Legislator after legislator, including the sponsors of the plan, echoed this objective. As much as the State might try, it cannot obscure or retract these admissions by persons with authority, influence, and decision-making power over and within the legislature that the redistricting plan was predominantly directed at race as to the districts Texas NAACP challenges—particularly where, as here, the State did exactly what DOJ directed and what the Governor and Legislators said they intended.

The State's response to this unequivocal evidence is to cast irrelevant aspersions and to deny that they said what they said, even though they were recorded saying it. These accusations include their broad characterization of Plaintiffs as an extension or agent of the Democratic Party. Def. Br. at 1-2, 19. Texas NAACP is a non-partisan membership organization founded in 1915 to address discrimination against Black people. It has a long, distinguished, and non-partisan history of advancing desegregation of Texas schools, facing down the racist terrorism of the Ku Klux Klan, and protecting the rights of Black people to vote and to have their vote counted equally. And contrary to the State's claim, the voting rights of Black people have needed that protection. This Court found in its prior preliminary injunction Order, ECF No. 258 at 25, that there is a recent history of discrimination in Texas. Texas NAACP's expert witness Dr. Monica Munoz Martinez and Texas NAACP member Linda Lewis testified to the recent discrimination related to voting. Opening Br. at 15.

The State's effort at rewriting history also includes their assertion that the redistricting here is just a partisan squabble. Aside from the statements of the Governor and legislators establishing that the redistricting targeted districts based on race, Dr. Duchin's unrebutted analysis confirms that race was the operative criterion. Plan C2333 not only intentionally dilutes the voting strength of Black and other voters of color in the Dallas-Fort Worth Metro area, Harris and Fort Bend counties, and Travis and Bexar counties, but also demonstrates that race predominated in the creation of the Congressional districts in these areas.

This discrimination must not stand. The harm to Plaintiffs necessitates injunctive relief.

## ARGUMENT

### I. Defendants Misinterpret the Legal Standards for Intentional Discrimination and Racial Gerrymandering Claims.

Defendants misconstrue Texas NAACP's position on the legal standard for intentional discrimination and racial gerrymandering as applying the *Arlington Heights* factors to both types of claims. Def. Br. at 7. This Court held in the prior preliminary injunction proceeding that, "[w]hile intentional discrimination means only that a decisionmaker acted 'at least in part' with a discriminatory purpose, racial gerrymandering requires that the decisionmaker 'subordinated' other redistricting considerations to race, 'Thus, Plaintiffs may show intentional vote dilution merely by establishing that race was part of Defendants' redistricting calculus, but to show racial gerrymandering they must go further and prove that race predominated over other considerations such as partisanship." ECF 258 at 20 (citations omitted). As explained below, the direct evidence of intent based on Defendants' own statements, coupled with Dr. Duchin's analysis, support not only a claim of intentional vote dilution, but also racial gerrymandering.

2

### II. The DOJ Letter Directed the State to Redistrict Based on Race and Plan C2333 Complies with that Mandate.

Defendants cannot distance themselves fast enough—try as they may—from the DOJ Letter, but they trip over their own prior espousal of it and the map they produced that does what DOJ mandated. DOJ told the State which districts to redraw, misconstruing *Petteway* as its basis for demanding redistricting. Opening Br. at 4-5. Defendant Abbott explicitly relied on this demand in amending the special session proclamation to include "[l]egislation that provides a revised congressional redistricting plan in light of constitutional concerns raised by the U.S. Department of Justice." Opening Br. at 15. The record thus contradicts Defendants' assertion that "[n]o letter from the U.S. Department of Justice constitutes the position of the State of Texas." Def. Br. at 12. The State cannot wish the DOJ Letter away, ignore the outpouring of statements from the Governor and legislators echoing it, or pretend that their redistricting plan did not target Congressional districts CD 9, CD 18, CD 29, and CD 33 based on their racial composition. *See* Opening Br. at 5, 9.

Defendants correctly acknowledge that the DOJ Letter rests on "faulty legal reasoning." Def. Br. at 13. The *Petteway* case provides no excuse for targeting districts based on race. Despite the Governor's and legislators' assertions to the contrary, *Petteway* stands *only* for the proposition that "Section 2 does not authorize separately protected minority groups to aggregate their populations for purposes of a vote dilution *claim*," *not* that coalition *districts* (multiracial majority districts) are impermissible as a matter of law. *Petteway v. Galveston Cnty.*, 111 F.4th 596, 603 (5th Cir. 2024) (emphasis added). However, that did not stop Defendants and legislators alike from relying on the DOJ Letter and *Petteway* both before and during the 2025 mid-decade redistricting cycle. Defendant Abbott made multiple statements in media interviews echoing DOJ's flawed reasoning, claiming that *Petteway* no longer requires coalition districts, and that the State would

3

"remove" them. Opening Br. at 5-6; *see also* Governor Abbott Talks Democrat Desperation on the Joe Pags Show, Aug. 7, 2025, https://www.youtube.com/watch?app=desktop&v=kubKVtdGgBA ("…courts decided that Texas is no longer required to have what are called coalition districts. And as a result, we're able to take the people who were in those coalition districts and make sure they're going to be in districts that fully represent the voting preference of those people who live here in Texas."). Coalition districts, by definition, are majority-minority districts comprised of multiple racial and ethnic groups. Pledging to eliminate them targets those districts based on their racial composition. *See, e.g. Bartlett v. Strickland*, 556 U.S. 1, 24 (2009) ("[I]f there were a showing that a State, intentionally drew district lines in order to destroy otherwise effective crossover districts, that would raise serious questions under both the Fourteenth and Fifteenth Amendments.").

Legislators repeated this misinterpretation of *Petteway* throughout both legislative sessions. Opening Br. at 7, 9-11. For example, C2333 lead bill sponsor Representative Todd Hunter stated the following during the August 20, 2025 House floor debate:

> Well, according to Petteway, which I believe was 2024, which has now changed the law, 5th Circuit, it says, 'coalition districts can no longer be used as Voting Rights Act Section 2 violations.' And it also says there's not a requirement that you have to use coalition [districts]…So, today, this map is taking those in factor.

Tex. House of Representatives Floor Debate at 2:14:22-2:15:08 (Aug. 20, 2025), https://house.texas.gov/videos/22491. Senate Special Committee Chair Phil King echoed this sentiment, describing every district in Plan C2333 as compliant "in light of Petteway." Senate Floor Debate, Aug.22,2025, Part I at 1:50:00-1:50:11, https://senate.texas.gov/videoplayer.php?vid=22513&lang=en. These statements that Plaintiffs have quoted extensively, among many others made on the House and Senate floor, are not by any stretch of imagination taken out of context as Defendants argue. The context is the

4

Legislature's successful attempt to dismantle coalition districts. The statements explain the impetus and the excuse for the redistricting effort, and the decision-making reflected in Plan C2333. This map does exactly what the DOJ Letter demanded of the State—eliminate coalition districts CD 9, CD 18, and CD 33 and reconfigure CD 29 by virtue of its geographic proximity to CD 9 and CD 18. A full recounting of the sequence of events, contemporaneous statements, and legislative record reveals that race was not merely "one purpose" of the redistricting—which would be sufficient to establish intentional vote dilution—but rather predominated in the drawing of Plan C2333. *See Veasey v. Abbott*, 830 F.3d 216, 230 (5th Cir. 2016), citing *U.S. v. Brown*, 561 F.3d 420, 433 (5th Cir. 2009) (establishing that "'[r]acial discrimination need only be one purpose, and not even a primary purpose,' of an official action" in assessing an intentional discrimination claim); *Miller v. Johnson*, 515 U.S. 900, 916 (1995) (requiring "that race was the predominant factor motivating the legislature's decision[s]" for a racial gerrymandering claim).

### III. Dr. Duchin's Analysis Supports a Likelihood of Success on the Merits of Texas NAACP's Intentional Discrimination and Racial Gerrymandering Claims.

Dr. Duchin's findings demonstrate that C2333 has a disproportionately negative effect, not explainable by partisanship, on the ability of Black and other voters of color to elect their candidates of choice. In analyzing split precincts, she notes that the significant increase in precinct splits is "indicative of a focus on race than partisanship," particularly given that the Texas Legislative Council provides racial data at the Census block level but not partisan data at this level. Duchin Expert Report, Exh. A at 6-7. She also found that C2333 causes a net loss of three Congressional districts—one district in each area of interest—that performed for Black and other voters of color. *Id.* at 9. Both her dot density maps and ensemble analysis illustrate the cracking and packing of Black and other voters of color in each area of interest, and her robustness checks confirm the findings of her ensemble analysis. *Id.* at 10-15, 23-24.

5

Defendants argue that Texas NAACP does not disentangle race from partisanship to prove discriminatory effect under *Arlington Heights* but offers the Court no evidence whatsoever that refutes Dr. Duchin's analysis. The report of the State's expert witness, Sean Trende, responds to the analyses of other Plaintiffs' experts Barreto, Rios, and Ely, but not at all to Dr. Duchin. Indeed, the only reference to Dr. Duchin in either of the State's expert reports is that "Dr. Duchin has provided her chains to defense to examine." Supplemental Expert Reply of Sean P. Trende at 40. Dr. Duchin's report captures Republican performance in terms of "Republicans overall hav[ing] at least as many wins in each [district] cluster as in C2333." Exh. A at 16. Similarly, she factors in Trump performance by ensuring that "at least as many districts have a plurality win for Donald Trump from the 2024 election as in C2333." *Id.* A distinct pattern of cracking and packing exists even when controlling for partisanship in tens of thousands of maps that "match or exceed the partisanship of C2333, and…whether or not a long checklist of traditional districting principles is incorporated in map generation." *Id.* at 16. When these criteria are taken into account, the racial composition of the challenged districts are outliers in comparison to millions of neutral alternative maps. *Id.* at 14. Texas NAACP has met its burden on discriminatory effects to support its claim of intentional discrimination.

Moreover, Dr. Duchin's analysis also establishes that race predominated over traditional redistricting criteria, stating that the evidence in her report "suggests that the C2333 plan uses race to achieve its ends and is dilutive of minority voting strength, beyond the mere consequences of intensified partisan gerrymandering." *Id.* at 16. The use of race, even to advance political goals, is improper when analyzing claims of racial gerrymandering. *See Bush v. Vera*, 517 U.S. 952, 968-70 (1996); *Miller*, 515 U.S. at 914. Dr. Duchin's ensembles include an extensive list of traditional redistricting criteria based on the criteria discussed in *Alexander v. S.C. State Conf. of the NAACP*,

6

602 U.S. 1, 43-44. Exh. A at 22-23. As explained above, racial data is still an outlier even when controlling for these criteria. As regarding Defendants' claim in their brief that Dr. Duchin overlooks the durability of Republican majorities in the challenged districts, Defendants offer no evidence from the legislative record that legislators treated durability as a criterion for redistricting. Both Rep. Hunter and Senate Committee Chair Phil King even admit that there is no guarantee that the map would yield five additional Republican seats. Tex. House of Representatives Floor Debate at 31:06-31:15 (Aug. 20, 2025), https://house.texas.gov/videos/22491; Senate Floor Debate, Aug. 22, 2025, Part II at 11:34-12:07, https://senate.texas.gov/videoplayer.php?vid=22513&lang=en. Moreover, this point is merely the argument of the State's lawyers. Nothing in the State's expert reports articulates or supports this criticism of Dr. Duchin's analysis. The supposedly "neutral analyses" Defendants quote from political commentators do not compensate for the absence of analysis by the State's expert witnesses. In any event, Dr. Duchin in fact performed the assessment Defendants assert she should have performed as part of her robustness checks. She assessed ran simulations using a 55% vote share from the Trump 2024 election as the target for the Republican majority in the districts, and the racial makeup in each of those districts was still an outlier. Exh. A at 23. In other words, the effort to gain partisan advantage did not explain the racial composition of the challenged districts.

## CONCLUSION

Texas NAACP has shown that the Justice Department directed Texas to eliminate districts based on their racial composition, that the Governor and State legislators said subsequent to receiving the letter that they were going to do that, and that they carried out that objective. The plan they enacted diminishes the voting power of people of color in a manner that partisan objectives can neither explain nor excuse. For these reasons and the others presented above, and

7

in Texas NAACP's initial brief in support of its motion for a preliminary injunction, Plaintiff's motion should be granted.

Dated: September 29, 2025

                                      Respectfully submitted,

                                      */s/ Lindsey B. Cohan*
                                      Lindsey B. Cohan
                                      Texas Bar No. 24083903
                                      DECHERT LLP
                                      515 Congress Avenue, Suite 1400
                                      Austin, TX 78701
                                      (512) 394-3000
                                      *lindsey.cohan@dechert.com*

                                      Robert Weiner
                                      David Rollins-Boyd*
                                      Jennifer Nwachukwu*
                                      Jeremy Lewis*
                                      LAWYERS' COMMITTEE FOR
                                      CIVIL RIGHTS UNDER LAW
                                      1500 K Street, Suite 900
                                      Washington, DC 20005
                                      (202) 662-8600
                                      *robert.weiner@lawyerscommittee.org*
                                      *drollins-boyd@lawyerscommittee.org*
                                      *jnwachukwu@lawyerscommittee.org*
                                      *jlewis@lawyerscommittee.org*

                                      Neil Steiner*
                                      DECHERT LLP
                                      1095 Avenue of the Americas
                                      New York, NY 10036
                                      (212) 698-3822
                                      *neil.steiner@dechert.com*

                                      Robert Notzon
                                      Texas Bar No. 00797934
                                      THE LAW OFFICE OF ROBERT NOTZON
                                      1502 West Avenue
                                      Austin, Texas 78701
                                      (512) 474-7563
                                      *robert@notzonlaw.com*

Gary Bledsoe
Texas Bar No. 02476500
THE BLEDSOE LAW FIRM PLLC
6633 Highway 290 East #208
Austin, Texas 78723-1157
(512) 322-9992
*gbledsoe@thebledsoelawfirm.com*
*Attorney only as to Texas NAACP's claims*
*related to Texas state senate and state house*
*plans*

Anthony P. Ashton*
NAACP OFFICE OF THE GENERAL COUNSEL
4805 Mount Hope Drive
Baltimore, MD 21215
(410) 580-577
*aashton@naacpnet.org*

Janette M. Louard
NAACP OFFICE OF THE GENERAL COUNSEL
4805 Mount Hope Drive
Baltimore, MD 21215
(410) 580-577
*jlouard@naacpnet.org*
*Attorneys appearing of counsel*

*Admitted *pro hac vice*.

*ATTORNEYS FOR THE TEXAS STATE*
*CONFERENCE OF NAACP*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing and all attachments were filed and served on counsel of record via the Court's electronic filing system on September 29, 2025.

*/s/ Lindsey B. Cohan*
Lindsey B. Cohan
*Counsel for Plaintiff Texas NAACP*