UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **LEAGUE OF UNITED LATIN AMERICAN CITIZENS**, *et al.*, | § § § § | |
| *Plaintiffs*, | § § | |
| **EDDIE BERNICE JOHNSON**, *et al.*, | § § | EP-21-CV-00259-DCG-JES-JVB [Lead Case] |
| *Plaintiff-Intervenors*, | § § | & |
| v. | § § | All Consolidated Cases |
| **GREG ABBOTT**, *in his official capacity as Governor of the State of Texas*, *et al.*, | § § § § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANTS' MOTION TO DISMISS GONZALES PLAINTIFFS'**
**COUNT IV FOURTEENTH AMENDMENT CLAIM**

Before the court is the State Defendants' motion to dismiss the Gonzales Plaintiffs' malapportionment claim under the Equal Protection Clause of the Fourteenth Amendment.[1] For the following reasons, the court **GRANTS** the motion.

### I.   BACKGROUND

The Gonzales Plaintiffs have filed a Second Supplemental Complaint challenging the Texas Legislature's mid-decade redrawing of the State's congressional districts ("HB 4").[2] This complaint includes a malapportionment claim ("Count IV") alleging the new congressional map violates the one-person, one-vote rule because it relies on the decennial census without accounting for intervening population changes and, therefore, fails to make a good-faith effort to achieve

---

[1] *See generally* Defs.' Mot., ECF No. 1162.

[2] *See generally* Gonzales Pls.' 2d Suppl. Compl., ECF No. 1147.

mathematical equality.³ On September 8, the State Defendants moved to dismiss Count IV for failure to state a claim under FED. R. CIV. P. 12(b)(6).⁴ On September 22, the Gonzales Plaintiffs responded.⁵ The motion is now ripe for the court's consideration.

## II.  LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, a plaintiff must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A plaintiff must also plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the pleaded facts allow the court to reasonably infer that the defendant is liable for the alleged conduct. *Id.* In reviewing the pleadings, a court accepts all well-pleaded facts as true, "construing all reasonable inferences in the complaint in the light most favorable to the plaintiff." *White v. U.S. Corrs., L.L.C.*, 996 F.3d 302, 306–07 (5th Cir. 2021). But the court does not accept "[c]onclusory allegations, unwarranted factual inferences, or legal conclusions" as true. *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

## III.  DISCUSSION

The Gonzales Plaintiffs argue that Texas's new congressional map is malapportioned because it is the product of mid-decade redistricting that uses decennial census data that does not reflect intervening changes in Texas's population.⁶ As a result, HB 4 allegedly "places many

---

³ *Id.* ¶¶ 49–54, 251–61.

⁴ Defs.' Mot., ECF No. 1162.

⁵ Gonzales Pls.' Resp., ECF No. 1194.

⁶ *See* Gonzales Pls.' 2d Suppl. Compl., ECF No. 1147 ¶¶ 49–54, 251–61.

Texans in overpopulated congressional districts where their votes are diluted relative to Texans in other, underpopulated congressional districts."[7] The State Defendants urge the court to dismiss the malapportionment claim because it is not based on a viable legal theory.[8] The court agrees with the State Defendants.

### A. Governing Law

"The conception of political equality from the Declaration of Independence, to Lincoln's Gettysburg Address, to the Fifteenth, Seventeenth, and Nineteenth Amendments can mean only one thing—one person, one vote."[9] "Over time, the Supreme Court and lower courts have spoken extensively on this principle, violations of which are justiciable through the Fourteenth Amendment's Equal Protection Clause."[10] "In short, the theory behind the principle is that 'the vote of any citizen [must be] approximately equal in weight to that of any other citizen in the State.'"[11]

Applying the one-person, one-vote rule to congressional districts, state legislatures "must draw congressional districts with populations as close to perfect equality as possible."[12] The standard for doing so is "a good-faith effort to achieve precise mathematical equality."[13] "Unless population variances among congressional districts are shown to have resulted despite such effort,

---

[7] Gonzales Pls.' Resp., ECF No. 1194 at 4; *see* Gonzales Pls.' 2d Suppl. Compl., ECF No. 1147 ¶¶ 259–60.

[8] *See generally* Defs.' Mot., ECF No. 1162.

[9] *Gray v. Sanders*, 372 U.S. 368, 381 (1963).

[10] *Perez v. Abbott*, 250 F. Supp. 3d 123, 185 (W.D. Tex. 2017) (quoting *Baker v. Carr*, 369 U.S. 186, 237 (1962)).

[11] *Id.* (quoting *Reynolds v. Sims*, 377 U.S. 533, 579 (1964)).

[12] *Evenwel v. Abbott*, 578 U.S. 54, 59 (2016).

[13] *Kirkpatrick v. Preisler*, 394 U.S. 526, 530–31 (1969).

the State must justify each variance, no matter how small."[14] To make this good-faith effort, "all States use total-population numbers from the census when designing congressional . . . districts."[15]

### B. Mid-Decade Redistricting Based on the Decennial Census

According to the State Defendants, the Supreme Court's ruling in *LULAC v. Perry* disposes of the Gonzales Plaintiffs' malapportionment claim.[16] The appellants in *LULAC* challenged the congressional districting map that Texas enacted in 2003 to replace a court-drawn plan.[17] Much like the Gonzales Plaintiffs do here, the *LULAC* appellants argued that "because the population of Texas ha[d] shifted since the 2000 census, the 2003 redistricting, which relied on that census, created unlawful interdistrict population variances" that "violate[d] the one-person, one-vote requirement."[18]

---

[14] *Id.* at 531.

[15] *Evenwel*, 578 U.S. at 60 (noting that only seven States adjust the census numbers to reach a total population count).

[16] Defs.' Mot., ECF No. 1162 at 1–2; 548 U.S. 399, 420–23 (2006) (plurality opinion). The Texas Legislature's motivations for mid-decade redistricting are a separate legal issue that does not bear on the outcome of the State Defendants' motion to dismiss. The court, therefore, sets aside the *LULAC* court's fragmented opinions on that issue and focuses instead on whether the act of mid-decade redistricting using the decennial census is a theoretical basis for a malapportionment claim.

[17] 548 U.S. at 411–13 (plurality opinion).

[18] *Id.* at 420–21.

A plurality of the Supreme Court rejected that argument.[19] The plurality reasoned that States must operate under the "legal fiction" that redistricting plans based on the most recent census data remain "constitutionally apportioned throughout the decade"—notwithstanding whatever inevitable population shifts occur within that timeframe.[20] A contrary rule would require States to "constant[ly] redistrict[]" throughout the decade to account for intervening population fluctuations—"with accompanying costs and instability."[21] Based on that legal fiction, the plurality concluded it was lawful for the Texas Legislature to base the 2003 plan on population data from the 2000 census.[22]

Resisting that conclusion, the appellants argued that the aforementioned "legal fiction" "should not provide a safe harbor for a legislature that enacts a voluntary, mid-decade plan overriding a legal court-drawn plan, thus unnecessarily creating population variance when there was no legal compulsion to do so"—especially where, as the appellants alleged, "a legislature acts because of an exclusively partisan motivation."[23] The *LULAC* plurality reasoned, however, that

---

[19] *See id.* at 420–23.

Due to the proximity of the October 1, 2025 Preliminary Injunction Hearing, our panel has not had time to conduct a full-fledged analysis to determine which of the various *LULAC* opinions is binding under the "*Marks* rule." *See Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." (citation modified)). However, the Fifth Circuit appears to treat Justice Kennedy's plurality opinion as the binding one, so we will do the same. *See, e.g.*, *Nairne v. Landry*, --- F.4th ----, No. 24-30115, 2025 WL 2355524, at *11 (5th Cir. Aug. 14, 2025); *Petteway v. Galveston County*, 111 F.4th 596, 609 (5th Cir. 2024) (en banc).

[20] 548 U.S. at 421 (plurality opinion); *see also Georgia v. Ashcroft*, 539 U.S. 461, 488 n.2 (2003) ("[B]efore the new census, States operate under the legal fiction that even 10 years later, the plans are constitutionally apportioned.").

[21] 548 U.S. at 421 (plurality opinion).

[22] *See id.* at 420–23.

[23] *Id.* at 421–22 (citation modified).

the appellants' argument was not aimed at whether the enacted map complied with equal protection principles, but was instead attacking the Legislature's reasons for redistricting mid-decade.[24] Because the U.S. Constitution vests the "primary responsibility for apportionment for apportionment of . . . federal congressional districts" "with the States," and because neither the Constitution nor any other source of federal law prohibits States from conducting "mid-decade redistricting to change districts drawn earlier in conformance with a decennial census,"[25] the fact that Texas voluntarily redrew its congressional maps mid-decade did not warrant disregarding the legal fiction that a map based on decennial census data is lawfully apportioned.[26]

The instant case involves nearly the same circumstances. Here too, the Texas Legislature engaged in redistricting mid-decade. And here too, Texas reportedly drew the new maps based on population data from the most recent census, rather than more recent population figures. If, due to the "legal fiction" that maps based on the most recent census data remain lawfully apportioned until the next decennial census, post-census population shifts didn't render the maps in *LULAC* unconstitutional, then post-census population shifts don't render Texas's 2025 congressional maps unlawful either.

In response, the Gonzales Plaintiffs argue that *LULAC* doesn't apply because the nature of the mid-decade redistricting at issue here is "fundamentally different."[27] Following the 2000

---

[24] *See id.* at 422 ("[The appellants' argument] turns not on whether a redistricting furthers equal-protection principles but rather on the justification for redrawing a plan in the first place. In that respect appellants' approach merely restates the question whether it was permissible for the Texas Legislature to redraw the districting map." (citation omitted)).

[25] *Id.* at 414–15 (citation modified).

[26] *See id.* at 422 ("Appellants' [argument], which mirrors their attack on mid-decennial redistricting solely motivated by partisan considerations, is unsatisfactory for reasons we have already discussed.").

[27] Gonzales Pls.' Resp., ECF No. 1194 at 8.

census, the Texas Legislature failed to pass a new congressional map, requiring a federal court to create one.[28] In 2003, the Texas Legislature drew a new plan to replace the court-ordered plan.[29] Taking into account that "a lawful, legislatively-enacted plan should be preferable to one drawn by the courts," the plurality permitted the mid-decade redistricting despite the population deviations.[30] Here, however, the Texas Legislature already had a legislatively-enacted congressional map in place. The mid-decade redistricting was entirely "voluntary" and did not render any legal benefit, such as replacing a court-drawn map.[31] Therefore, the Gonzales Plaintiffs argue, the *LULAC* plurality opinion "does not address" the type of mid-decade redistricting at issue here.[32]

The Gonzales Plaintiffs further argue that applying *LULAC* in this case would undermine the purpose of the decennial census's "legal fiction."[33] To reiterate, this legal fiction espouses the idea that a redistricting plan based on the decennial census data remains properly apportioned throughout the entire decade, so that state legislatures don't have to redraw the plan before each election to account for intervening population shifts.[34] If the court were to permit the Texas Legislature's mid-decade redistricting, state legislatures would be authorized to redistrict mid-

---

[28] *Id.* at 7–8.

[29] *Id.* at 8.

[30] *LULAC*, 548 U.S. at 416.

[31] Gonzales Pls.' Resp., ECF No. 1194 at 8.

[32] *Id.*

[33] *Id.* at 3, 8–9.

[34] *See Georgia v. Ashcroft*, 539 U.S. 461, 488 n.2 (2003) ("[B]efore the new census, States operate under the legal fiction that even 10 years later, the plans are constitutionally apportioned.").

decade without making any effort to equalize populations based on post-census population changes.[35]

The Gonzales Plaintiffs' attempt to distinguish *LULAC* on these grounds misses the mark. As in this case, *LULAC* dealt with a "voluntary, mid-decade plan" that allegedly "unnecessarily create[ed] population variance when there was no legal compulsion to do so."[36] Despite the Court's fractured opinions, the Court did not call into question the "basic principles" of "how congressional districts are to be drawn," including the fact that "[w]ith respect to a mid-decade redistricting to change districts drawn earlier in conformance with a decennial census, the Constitution and Congress state no explicit prohibition."[37] The Gonzales Plaintiffs have not pointed the court to any legal authority that overrides the legislature's prerogative to redraw congressional districts mid-decade using the decennial census. As far as the court is aware, no court has ever invalidated a congressional redistricting plan on these grounds, and the court has not identified sufficient legal support to blaze that trail.

The Gonzales Plaintiffs' argument that the Texas Legislature violated the one-person, one-vote rule by basing its mid-decade redistricting on the 2020 census rather than a more recent population measure also fails. The Gonzales Plaintiffs suggest that the Texas Legislature "could have sought to equalize district populations based on more recent population data that reflected post-census growth."[38] In particular, the Gonzales Plaintiffs reference the American Community

---

[35] *Id.*

[36] *LULAC*, 548 U.S. at 421 (cleaned up).

[37] *Id.* at 415; *see also id.* at 456 (Stevens, J., joined by Breyer, J., dissenting) (noting that the three-judge District Court panel "correctly found that the Constitution does not prohibit a state legislature from redrawing congressional districts in the middle of a census cycle").

[38] Gonzales Pls.' Resp., ECF No. 1194 at 5.

Survey ("ACS") to support their claim that Texas's new congressional map is malapportioned.[39] But the ACS is not a legally viable alternative to the decennial census when analyzing redistricting. As courts have observed, the ACS is not a reliable data source for redistricting because it is based on estimates, whereas the decennial census is an actual population count.[40] The court declines to permit the Gonzales Plaintiffs to challenge the Texas Legislature's method of redistricting because the legislature measured total population using data that "does not achieve equality as measured by [the Gonzales Plaintiffs'] chosen metric."[41] Moreover, it is well-settled that the decennial census is presumed accurate.[42] This legal fiction makes apportionment reliable—regardless of when the apportionment occurs.

Finally, the Gonzales Plaintiffs argue that they can meet their burden to show that HB 4's population differences could have "practicably [been] avoided" because the Texas Legislature could have chosen not to "[draw] a new map altogether."[43] But just because the Texas Legislature had the choice not to conduct mid-decade redistricting does not mean its choice to redistrict mid-

---

[39] Gonzales Pls.' 2d Suppl. Compl., ECF No. 11471 ¶¶ 259, 260.

[40] *See, e.g., Miss. State Conf. of the NAACP v. Ferguson-Florissant Sch. Dist.*, 894 F.3d 924, 932–33 (8th Cir. 2018) (finding no clear error in the district court's finding "that changes in the ACS did not show, with any reliable degree of certainty, that the population within the district had shifted since the [prior] Census); *Pope v. Cnty. of Albany*, No. 1:11-CV-0736 LEK/CFH, 2014 WL 316703, at *13 (N.D.N.Y. Jan. 28, 2014) ("The Census Bureau acknowledged that its American Community Survey, a collection of survey estimates on statistics such as CVAP, is less reliable than Census data and not intended to be used in redistricting.").

[41] *Evenwel*, 578 U.S. at 62–63 (affirming a three-judge panel's dismissal of a malapportionment claim for failure to state a claim because it "rel[ied] upon a theory never before accepted by the Supreme Court or any circuit court").

[42] *See Perez v. Pasadena Indep. Sch. Dist.*, 958 F. Supp. 1196, 1210 (S.D. Tex. 1997), *aff'd*, 165 F.3d 368 (5th Cir. 1999) (collecting cases).

[43] Gonzales Pls.' Resp., ECF No. 1194 at 4–5 (quoting *Karcher v. Daggett*, 462 U.S. 725, 734 (1983)).

decade flouts the standard for equal apportionment. Again, the Supreme Court's *LULAC* plurality rejected a very similar argument.[44]

For all of these reasons, the Gonzales Plaintiffs have not established a legally viable basis for their malapportionment claim. Accordingly, Count IV does not state a claim on which relief may be granted.[45]

## IV.   CONCLUSION

The Court therefore **GRANTS** Defendants' Motion to Dismiss the Gonzales Plaintiffs' Count IV Fourteenth Amendment Claim. (ECF No. 1162).

---

[44] *See* 548 U.S. at 421–22 (plurality opinion) ("In appellants' view, . . . [the aforementioned legal] fiction should not provide a safe harbor for a legislature that enacts a *voluntary*, mid-decade plan . . . thus *unnecessarily* creating population variance *when there was no legal compulsion to do so*. . . . [The appellants' argument] turns not on whether a redistricting furthers equal-protection principles but rather on the justification for redrawing a plan in the first place. In that respect appellants' approach merely restates the question whether it was permissible for the Texas Legislature to redraw the districting map. Appellants' answer, which mirrors their attack on mid-decennial redistricting solely motivated by partisan considerations, is unsatisfactory for reasons we have already discussed." (emphases added) (citation modified)).

[45] The State Defendants offer additional arguments, including (1) the Gonzales Plaintiffs' characterization of the mid-decade redistricting as "unnecessary" carries no legal weight, (2) the Gonzales Plaintiffs' Count IV is "a rank political judgment" since they have not brought the same claim against Democratic-led mid-decade redistricting, and (3) historical and current examples of mid-decade redistricting. *See* Defs.' Mot., ECF No. 1162 at 8–10. The court does not address each of these arguments independently because the malapportionment claim fails as a matter of law independent of these arguments.

**So ORDERED and SIGNED this 30th day of September 2025.**

_____
**JEFFREY V. BROWN
U.S. DISTRICT JUDGE
SOUTHERN DISTRICT OF TEXAS**

*And on behalf of:*

| | | |
|---|---|---|
| **Jerry E. Smith**<br>**United States Circuit Judge**<br>**U.S. Court of Appeals, Fifth Circuit** | *-and-* | **David C. Guaderrama**<br>**Senior United States District Judge**<br>**Western District of Texas** |