IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, | § § § | |
| *Plaintiffs*, | § § | Case No. 3:21-cv-259-DCG-JES-JVB [Lead Case] |
| v. | § § | |
| GREG ABBOTT, *et al*, | § § | |
| *Defendants.* | § | |

## GOVERNOR GREG ABBOTT'S RESPONSE TO GONZALES PLAINTIFFS' MOTION TO RECONSIDER

Governor Greg Abbott submits this Response to Gonzales Plaintiffs' Motion to Reconsider pursuant to Civil Rule 54(b), and would respectfully show the following:

### INTRODUCTION

This Court correctly protected the Governor's privileged communications concerning redistricting. Plaintiffs now seek reconsideration on two grounds. Each is meritless. First, Plaintiffs rely on the law-of-the-case doctrine to allege that this Court resolved the Governor's legislative privilege in an interlocutory order in prior litigation, and that the doctrine now bars the Governor from asserting legislative privilege in a different proceeding challenging a different map. That doctrine has no application to interlocutory orders and in any event would not bind this court. Second, Plaintiffs claim this should ignore Supreme Court precedent because "nothing has changed since" 2022. But more recent, and binding, Fifth Circuit precedent requires this Court to heed the very cases Plaintiffs run from, and which support

1

the Court's privilege ruling issued yesterday. Law of the case is not a weapon to tie the Court's hands and prevent it from getting the law right. This Court should deny the motion.

## BACKGROUND

During the preliminary injunction hearing on October 7, 2025, Plaintiffs' counsel attempted to elicit testimony from Defendants' witness, Adam Kincaid, bearing on the content of conversations Mr. Kincaid had with Governor Greg Abbott in June 2025. The Governor's counsel objected and invoked legislative privilege. After brief argument, this Court sustained the objection. Around 11:00 P.M. last night, Gonzales Plaintiffs ("Plaintiffs") moved this Court to reconsider its oral ruling.

## LEGAL STANDARD

While the Federal Rules of Civil Procedure do not formally recognize a general motion for reconsideration, *St. Paul Mercury Ins. Co. v. Fair Grounds Co.*, 123 F.3d 336, 339 (5th Cir. 1997), courts customarily consider such motions under Rules 54(b), 59(e), or 60(b), *Fishman Jackson PLLC v. Israely*, 180 F. Supp. 3d 476, 481 (N.D. Tex. 2016). Because Plaintiffs move to reconsider an interlocutory order, this motion is controlled by Rule 54(b). *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). Courts considering a motion under Rule 54(b) are permitted "to reconsider and reverse its decision for any reason it deems sufficient." *McClendon v. United States*, 892 F.3d 775, 781 (5th Cir. 2018).

## ARGUMENT

**1.** Plaintiffs' motion focuses almost exclusively on the panel's (unpublished) 2022 decision, where it denied legislative privilege based on an *Erie* guess about how state courts would classify the Governor's veto power. *LULAC v. Abbott*, 2022 WL 3233406, at *1–2 (W.D. Tex. Aug. 10, 2022). The state case the panel relied on—*In re Turner*, 627 S.W.3d 654

2

(Tex. 2021)—did not involve a Governor's assertion of legislative privilege at all. Plaintiffs' reliance on that prior interlocutory ruling ignores how much has changed since 2022.

In 2024, one member of this panel wrote for the Fifth Circuit that legislative privilege protects against the disclosure of "documents shared, and communications made," by legislative actors throughout "all aspects of the legislative process." *La Union del Pueblo Entero v. Abbott*, 93 F.4th 310, 321–323 (5th Cir. 2024) (Smith, J.). Because inputs for the modern lawmaking process are necessarily broad, the privilege also encompasses those performing legislative work at the direction of legislative actors. *Id.* at 321. Of course, that includes staff, but it likewise includes "third parties" furnishing information that facilitates consideration of potential legislation. *Id.* at 322. And in 2023, the Fifth Circuit directed courts to consult the Supreme Court's legislative-immunity precedent when construing legislative privilege. *La Union del Pueblo Entero v. Abbott*, 68 F.4th 228, 237 (5th Cir. 2023). As Judge Willett noted there, "the Supreme Court has often analyzed [legislative immunity] in parallel to legislative privilege." *Ibid.* For that reason, the Court held: "[W]e follow the Supreme Court's lead in drawing on both strands even though this case involves a privilege from disclosure rather than an immunity from suit or liability." *Ibid.* In other words, this Court must apply Supreme Court precedent concerning legislative immunity to the Governor's claim for legislative privilege.

That defeats Plaintiffs effort to evade the Supreme Court precedent that undergirds yesterday's ruling—and that the panel's 2022 ruling did not discuss. Nearly a century ago, the Supreme Court of the United States recognized that a Governor is part of the "legislative action in districting the state for congressional elections." *Smiley v. Holm*, 285 U.S. 355, 372–373 (1932). In *Smiley*, the Minnesota Legislature passed congressional maps and claimed the authority to make them law without the Governor's approval. The Supreme Court disagreed.

3

Although Article I, Section 4 of the U.S. Constitution assigns redistricting power to "the Legislature,"† the Governor is *part* of the lawmaking process. *Id.* at 365. That was a sound interpretation of the Constitution. And the Supreme Court specifically relied on it in *Scott v. Bogan-Harris*, 523 U.S. 44 (1998). There, the Court considered whether an executive officer, like the Governor, could invoke legislative immunity for legislative functions. *Id.* at 55. And it concluded that an "official[] outside the legislative branch" could invoke legislative immunity "*even though he [is] an executive official*." *Id.* at 55 (citing *Smiley*, 285 U.S. at 372–373) (emphasis added). The Supreme Court has never overruled either decision. Only that Court may do so—"even if [a] lower court thinks the precedent is in tension with 'some other line of decisions.'" *Mallory v. Norfolk Southern Ry. Co.*, 600 U.S. 122, 136 (2023).

This binding Supreme Court precedent—applicable in legislative immunity and legislative privilege cases alike—is presumably *why* federal circuits across the country hold that a Governor may invoke legislative privilege. *See, e.g.*, *In re Hubbard*, 803 F.3d 1298, 1308 (11th Cir. 2015) ("The privilege protects the legislative process itself, and therefore covers both governors' and legislators' actions in the proposal, formulation, and passage of legislation."); *Am. Trucking Ass'n v. Alviti*, 14 F.4th 76, 87, 91 n.8 (1st Cir. 2021) (holding that "legislative privilege applies" to a "former Governor, though not a member of the state

---

† This provision explains the Governor's initial proclamation language. At the outset, the Governor maintains that any proclamation is irrelevant to Plaintiffs' claims. Indeed, Plaintiffs ignore the *operative* proclamation: H.B. 4 passed pursuant to the proclamation issued on August 15, 2025, which announced a second Special Session and does not contain the language plaintiffs seize upon. Even assuming the initial proclamation issued on July 9, 2025, and which produced no legislation, is somehow relevant, Plaintiffs' either misunderstand or distort its fleeting reference to "constitutional concerns." Whether the Texas Legislature has more leeway in 2025 than it had in 2021 implicates the U.S. Constitution—namely, Article I, Section 4, which assigns redistricting authority to the Legislature. If new precedent governing that constitutional power gives the Legislature more freedom, but existing congressional maps remain under a now-defunct legal regime, that is plainly a "constitutional concern."

4

legislature"); *Texas v. Holder*, 2012 WL 13070113, at *1 (D.D.C. 2012) (legislative privilege applied to communications with Texas Governor Rick Perry concerning a possible special session); *cf. Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) ("We believe Governor McGreevey's … actions are properly characterized as legislative and are entitled to immunity."). Several members of the Fifth Circuit have cited these holdings approvingly. *See, e.g.*, *Veasy v. Abbott*, 830 F.3d 216, 287 n.14 (5th Cir. 2016) (en banc) (Jones, Jolly, Smith, Clement, Owen, J.J., concurring in part and dissenting in part) (citing *In re Hubbard*).

The undersigned represented to this Court yesterday that he was unaware of any circuit court holding to the contrary. Now, even after researching the matter independently and preparing a written brief urging reconsideration, Plaintiffs likewise identify no such case. They offer no good reason to accept their invitation to begin steering the Fifth Circuit away from its sister circuits.

Finally, the panel's prior opinion is not law of the case. The doctrine has no application to interlocutory orders like the one that Plaintiffs endeavor to rely on. "Pretrial rulings, often based on incomplete information, don't bind district judges for the remainder of the case. Given the nature of such motions, it could not be otherwise." *Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014) (en banc). Put simply "the law-of-the-case doctrine 'does not apply to interlocutory orders ... for they can always be reconsidered and modified by a district court prior to entry of a final judgment.'" *Keepseagle v. Perdue*, 856 F.3d 1039, 1048 (D.C. Cir. 2017) (quoting *First Union Nat'l Bank v. Pictet Overseas Tr. Corp.*, 477 F.3d 616, 620 (8th Cir. 2007)).

Even if the law of the case was somehow implicated, it still would not carry an interlocutory ruling over to what is functionally a different case. The Supreme Court has repeatedly described the doctrine this way: "[W]hen a court decides upon a rule of law, that

decision should continue to govern the same issues *in subsequent stages in the same case*." *Pepper v. United States*, 562 U.S. 476, 506 (2011) (emphasis added); *see also* BLACK'S LAW DICTIONARY, *Law of the Case* (12th ed. 2024). This dispute—resting on different complaints, pressing different claims, against a different map, using different witnesses—is not "the same case" as the one that already proceeded through a completed trial. *See* ECF Nos. 1147, 1148, 1151, 1152, 1153, 1154; *Watkins v. Elmore*, 745 Fed. App'x 100, 103 (11th Cir. 2018). And this *preliminary injunction* hearing on the 2025 map is in no sense a "subsequent stage" of stayed litigation over the 2021 map. *See Edmonds v. Smith*, 922 F.3d 737, 739 (6th Cir. 2019). The fact that plaintiffs chose to file a new challenge to a different map in the same cause number changes nothing. The law deals with "substance, not shadows." *See SFFA, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181, 230 (2023).

The notion that law of the case somehow restricts arguments in a different case would be reversible error in courts across the country. *See, e.g.*, *In re Lipitor Antitrust Litig.*, 868 F.3d 231, 268 n.18 (3d Cir. 2017); *United States v. Burroughs*, 810 F.3d 833, 838 (D.C. Cir. 2016); *Washington v. Countrywide Home Loans, Inc.*, 747 F.3d 955, 957–958 (8th Cir. 2014); *Jarrad v. CDI Telecom., Inc.*, 408 F.3d 905, 912 (7th Cir. 2005). Contrary to plaintiffs' suggestion, therefore, counsel need not "seek reconsideration of [a] Court's order" in a different case.

In any event, plaintiffs do not acknowledge that the constraint imposed in the law-of-the-case doctrine "is a matter of discretion," and "not a limit on power." 18B WRIGHT & MILLER, FED. PRAC. & PROC. § 4478 (3d ed.). Accordingly, even where that doctrine could otherwise apply, courts routinely choose not to adhere to a prior decision based on new events, novel legal issues, additional evidence, clear error, or some manifest injustice. *Ibid.* Nothing obligated this Court to adhere to an opinion that has been outpaced by subsequent

Fifth Circuit precedent, conflicts with a century of Supreme Court thinking, and invites a split with three federal circuits.

**2.** This Court could just as easily have rested its ruling on deliberative process privilege, which protects against disclosure of documents and information that are both deliberative (*i.e.*, helping the executive formulate its position) and pre-decisional (*i.e.*, generated before a final decision on the matter at hand). *LULAC*, 2022 WL 3233406, at *2. That obviously includes executive deliberations concerning (1) whether to issue a proclamation to consider possible redistricting legislation, (2) how to exercise the authority to approve or disapprove of such legislation, and (3) and how to negotiate the details of such legislation in the shadow of the Governor's veto power. *See* TEX. CONST. art. III, § 40; *id.* art. IV, § 14; *LULAC*, 2022 WL 3233406, at *2; *cf. Jeff D v. Otter*, 643 F.3d 278, 289 (9th Cir. 2011). Plaintiffs do not dispute that the Governor's deliberative process privilege is squarely implicated.

Instead, they argue only that the privilege has been waived by discussion with parties outside of the executive branch. That is wrong. Such information remains privileged when it is disclosed to third parties with a "common legal interest" who are "potential co-defendants" in eventual litigation. Mr. Kincaid (whose stated purpose was to develop Republican-favored legislation) and the Governor (who was considering calling a special session to develop such legislation) "shared a vital common interest." *McDowell v. Texas*, 465 F.2d 1342, 1344–1345 (5th Cir. 1971). At the time of communications, threats of litigation were open and imminent. *E.g.*, Owen Dahlkamp, *Trump Aides Want Texas to Redraw Its Congressional Maps to Bost the GOP. What Would That Mean?*, TEX. TRIB. (June 11, 2025), https://www.texastribune.org/2025/06/11/texas-congress-midcycle-redistricting-trump-republicans/ (discussing likelihood of plaintiffs "fil[ing] new legal claims for the updated maps").

Because the risk was imminent, counsel for the parties involved met in advance of the privileged communications to discuss their common interest in light of potential litigation. That, too, attests to "a palpable threat of litigation at the time of the communication." *United States v. Brown*, — F.4th —, 2025 WL 2318686, at *5 (5th Cir. 2025).

## CONCLUSION

For the foregoing reasons, Governor Abbott respectfully requests that this Court deny Plaintiffs' Motion to Reconsider. If the Court is inclined to grant it, the Governor respectfully requests that the Court stay any such ruling to allow time to seek a writ of mandamus. *See In re Kleberg County*, 86 Fed. App'x 29, 34 (5th Cir. 2004).

DATE: October 8, 2025                Respectfully submitted,

*/s/ Trevor W. Ezell*
TREVOR W. EZELL*
General Counsel
Office of the Governor
Texas Bar No. 24109849
P.O. Box 12428
Austin, Texas 78711
(512) 463-3329
Trevor.Ezell@gov.texas.gov

ANTHONY J. RODREGOUS
Deputy General Counsel
Office of the Governor
Texas Bar No. 24146382
P.O. Box 12428
Austin, Texas 78711
(512) 936-3306
Anthony.Rodregous@gov.texas.gov

*Admitted *pro hac vice*

*Counsel for Greg Abbott, in his official capacity as Governor of the State of Texas*

8

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served on the **8th day of October, 2025**, upon all parties who have entered an appearance, using the CM/ECF system.

                                                */s/ Trevor W. Ezell*
                                                TREVOR W. EZELL
                                                General Counsel
                                                Office of Governor Greg Abbott